## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## CHARLESTON DIVISION

| | |
|---|---|
| **IN RE: AQUEOUS FILM-FORMING FOAMS PRODUCTS LIABILITY LITIGATION** | ) **MDL No. 2:18-mn-2873-RMG**<br>)<br>)<br>) **This Document Relates To:**<br>) *Tyco Fire Prods. LP v. AIU Ins. Co., et al.*<br>) **Civil Action No. 2:23-cv-02384-RMG**<br>) |

### DEFENDANT GREAT AMERICAN ASSURANCE COMPANY'S
### MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS

Defendant Great American Assurance Company ("Great American"), pursuant to Federal Rule of Civil Procedure 12(b)(1), (2), and (6) and S.C. Code Ann. § 15-5-150,[1] hereby respectfully moves this Court to dismiss the Complaint filed by Tyco Fire Products LP ("Tyco") against Great American in its entirety for lack of jurisdiction and in deference to the first-filed and more comprehensive action pending in Wisconsin state court.

### INTRODUCTION

The Honorable James Morrison, the presiding judge in the first-filed Wisconsin state court action (the "Wisconsin Action"), advised the parties on July 13, 2023 by Order that Your Honor requested Judge Morrison to stay the Wisconsin action as to the defendants who were sued by Tyco here.[2] While Great American appreciates Your Honor's efforts to resolve the issues

---

[1]    It is unclear whether a motion to dismiss based on the Court's discretionary jurisdiction over declaratory judgment actions is considered under Rule 12(b)(1) or Rule 12(b)(6). *Compare Hanover Ins. Co. v. Castle Hill Studios, LLC*, No. 3:18-cv-00072, 2019 WL 302510, at *1, *3 (W.D. Va. Jan. 23, 2019) (considering Rule 12(b)(1) motion), *with Rose Acre Farms, Inc. v. N.C. Dep't of Env't & Nat. Res.*, 131 F. Supp. 3d 496, 500 (E.D.N.C. 2015) (considering Rule 12(b)(6) motion). Similarly, it is unclear whether challenges based on South Carolina's door-closing statute and Tyco's direct filing in the MDL are considered under Rule 12(b)(1) or Rule 12(b)(6). Great American therefore moves under both Rules 12(b)(1) and 12(b)(6).

[2]    The Wisconsin Action is captioned *Century Indemnity Company, et al. v. Tyco Fire Products LP f/k/a Ansul, LLC f/k/a Ansul Incorporated, Wormald US, Inc., The Ansul Company*

properly before you in the MDL, in fact, the insurance coverage issues between Great American

and Tyco are properly before Judge Morrison and should be decided there, not here.  Your Honor

is correct that one of the courts should stay its hand in favor of the other, but, respectfully, it is

this Court that should stay its hand by dismissing this action in accord with United States

Supreme Court, Fourth Circuit and South Carolina precedent, so that the state-law insurance

coverage issues that were placed at issue first in Wisconsin may be resolved there without the

specter of duplicative litigation here.  Just as Chief Justice Toal deferred to the Wisconsin Action

only eight weeks ago (the first time Tyco sought to plead these coverage issues in South

Carolina), so, too, should Your Honor so that Tyco ceases its unseemly forum shopping gambit.

## **FACTUAL BACKGROUND**

**A.    The MDL**

On December 7, 2018, the Judicial Panel on Multidistrict Litigation ("JPML") entered an

Order (the "JPML Transfer Order") creating the multidistrict litigation pending before this Court,

captioned *In re Aqueous Film-Forming Foams Products Liability Litigation*, No. 2:18-mn-02873-

RMG (the "MDL").  *See* JPML Transfer Order (Dec. 7, 2019) (MDL Dkt. No. 1).  The JPML

Transfer Order initially permitted the centralization of 75 cases in this court for plaintiffs alleging

that aqueous film-forming foam ("AFFF") products used at airports, military bases, or certain

industrial locations caused the release of PFOA and PFOS into local groundwater and

contaminated drinking water supplies.  *Id.* at 3.  The JPML stated that each of the actions shared

factual questions concerning "*the toxicity of PFOA and PFOS and their effects on human health;*

---

*and Ansul Chemical Company, et al.*, Case No. 2022CV00283 (Wis. Cir. Ct., Marinette Cnty.).
Judge Morrison's July 13, 2023 Order is attached as **Exhibit A** hereto.  In reviewing a motion to
dismiss, "a court may properly take judicial notice of matters of public record without converting
a motion to dismiss into a motion for summary judgment."  *Halscott Megaro, P.A. v. McCollum*,
66 F.4th 151, 157 (4th Cir. 2023).

*the chemical properties of these substances and their propensity to migrate into groundwater supplies; the knowledge of the AFFF manufacturers regarding the dangers of PFOA and PFOS; their warnings, if any, regarding proper use and storage of AFFFs; and to what extent, if any, defendants conspired or cooperated to conceal the dangers of PFOA and PFOS in their products.*" *Id.* (emphasis in original).  As of July 17, 2023, 5,376 cases involving alleged personal injury, property damage and/or environmental contamination have been transferred to the MDL, but this is the only insurance coverage action.[3]

Cases brought by underlying water provider plaintiffs in the MDL have been the subject of a Court-ordered mediation process and, pursuant to the Court's Local Rules, insurance carriers for defendants, such as Tyco, are ordered to attend those mediations.  *See* D.S.C. Local Civ. Rule 16.08.  While Great American could have declined to participate as a non-party to the MDL, it did not, participating in every mediation to which was invited, including the May 16, 2023 and June 15, 2023 sessions.  That participation, however, does not mean Great American believes this Court has jurisdiction over the insurance coverage issues, or that the Court should supplant the Wisconsin court, where the insurance coverage issues are properly placed at issue.

### B.    The South Carolina State Court Action

On October 7, 2022, Tyco filed a complaint against its insurers, including Great American, in the Court of Common Pleas in Richland County, South Carolina before Chief Justice Jean Hoefer Toal, who presides over the State's asbestos litigation docket.  *See* Compl.

---

[3]    As recently as June 2023, the JPML has declined to transfer lawsuits to this MDL that include allegations of exposure to PFAS, but that do not on their face "involve allegations pertaining to the manufacture, use or disposal of AFFFs," out of continued concern for the "manageability of this [MDL] litigation," which the Panel noted already "involves a wide range of claims and parties."  *See* Order Denying Transfer at 1-2, MDL No. 2873 [MDL Dkt. No. 1928] (J.P.M.L. June 5, 2023) (incorporating prior orders denying transfer).

¶ 28, *Ansul, LLC, et al. v. ACE Am. Ins. Co., et al.*, No. 2022-CP-40-05289 (S.C. Ct. Com. Pl. Richland Cnty. Oct. 7, 2022) (the "South Carolina State Court Action") (**Ex. B**).  Tyco later dismissed Great American from the South Carolina State Court Action, but pressed ahead against other insurers.  *See* Stipulation of Dismissal Without Prejudice Of (Mar. 3, 2023), South Carolina State Court Action (**Ex. C**).  On May 22, 2023, the Court dismissed the remainder of the case without prejudice in favor of the Wisconsin Action:

> A comprehensive coverage action is already pending in Marinette, Wisconsin, which is where Tyco is located.  That case deals with the PFAS coverage issues asserted in this action, including the cause of action asserted in this case seeking a declaration regarding coverage for underlying lawsuits filed in Wisconsin alleging environmental contamination taking place in Marinette, Wisconsin.  Because the Wisconsin action is already going forward on the PFAS-related issues, the Court finds that dismissal of this case is appropriate.

*See* Order at 2 (May 22, 2023), South Carolina State Court Action (**Ex. D**).

### C.    The Wisconsin Action

On December 16, 2022, Century Indemnity Company, ACE American Insurance Company, ACE Property & Casualty Company, and Federal Insurance Company (collectively, the "Chubb Insurers") filed the Wisconsin Action against Tyco and its insurers, including Great American.  *See* Complaint for Injunctive and Declaratory Relief (Jan. 13, 2023) (WI Action Dkt. No. 58, Public Redacted Version) (**Ex. E**).  That action has seen a lot of activity, including responsive pleadings, entry of a case management order, service of discovery and the production of documents, and a summary judgment motion on the number of "occurrences" issue, which is an issue at the heart of the parties' dispute over coverage for the underlying lawsuits.[4]

---

[4]    *See, e.g.*, Defendant Great American Assurance Company's Answer and Defenses and Its Cross-Claim against Tyco Fire Products LP and TFP QSF, LLC (Mar. 3, 2023) (WI Action Dkt. No. 224) (**Ex. F**); *see* Answer, Affirmative Defenses, and Other Defenses of Tyco Fire Products LP and TFP QSF, LLC to Cross-Claim of Defendant Great American Assurance Company (Mar. 13, 2023) (WI Action Dkt. No. 242) (**Ex. G**); Case Management Order at 3 (May 22, 2023) (WI Action Dkt.

On July 13, 2023, Judge Morrison issued an Order temporarily suspending the Wisconsin Action, pending a hearing on August 17, 2023, based on a request from Your Honor that the Wisconsin Action be stayed as to Great American and as to the other insurer defendants who are now in both the Wisconsin Action and this action.  *See* **Ex. A** at 2.

## ARGUMENT

Great American shares this Court's objective of resolving the insurance coverage issues as expeditiously as possible, but for a host of reasons, believes that the proper place for those issues to be resolved is the Wisconsin Action.  The insurance coverage disputes between Tyco and its insurers are not the proper subject of MDL No. 2873, as those disputes involve discrete issues outside the scope of the JPML Transfer Order, which necessarily limits this Court's MDL jurisdiction.  In addition, Great American knows that this Court has entered Case Management Order 3, which permits the filing of actions directly in the MDL.  Respectfully, that CMO does not confer personal jurisdiction over Great American, which must be measured by the Constitutional and statutory limitations of general and specific jurisdiction.  If the Court were to proceed, it also would violate South Carolina's door-closing statute, which is a limitation on this Court's ability to hear a case regarding foreign corporations.  Additionally, under longstanding Supreme Court precedent establishing the *Brillhart-Wilton* abstention doctrine, the Court should defer to the Wisconsin Action in the interest of federalism, efficiency and comity.  Respectfully, this Court should dismiss this action so that Judge Morrison, without the specter of interference, may resolve the cross-claims properly filed in the Wisconsin Action and poised to be resolved there.

_____

No. 307) (**Ex. H**); Defendant Great American Assurance Company's Responses and Objections to London Market Companies' First Set of Requests for Production (Mar. 30, 2023) (**Ex. I**).

I.      **ASSERTIONS OF PERSONAL JURISDICTION OVER GREAT AMERICAN VIOLATE DUE PROCESS**

This Court's jurisdiction is limited to the JPML Transfer Order, which does not confer this Court with personal jurisdiction over Great American to resolve issues of insurance coverage.  *See* JPML Transfer Order at 3.  Indeed, while the intent of the MDL is to consolidate cases for pretrial purposes, there is a recognition in doing so that personal jurisdiction must be respected as part of the process:

> In our view, plaintiff's request for transfer is not motivated by a desire to achieve the purposes for which Section 1407 was designed, but rather, by a desire to circumvent obstacles of personal jurisdiction which necessitated her institution of two separate action.  Although the propriety of *in personam* jurisdiction in a proposed transferee district is not a criterion in considering transfer of actions to the district under Section 1407, it appears that in this particular litigation plaintiff's ulterior motive for seeking transfer amounts to an attempted misuse of the statute.

*See In re Highway Acc. Near Rockville, Conn., on Dec. 30, 1972*, 388 F. Supp. 574, 576 (J.P.M.L. 1975); 28 U.S.C § 1407(c) (explaining how a transfer of an action may be initiated); *see also* J.P.M.L. R. 1.1(i), (j), (h) (defining "transferee district," "transferor district" and "tag-along action")).  That Tyco filed this action directly in the MDL "pursuant to this Court's Case Management Order No. 3," does not and cannot dispense with the personal jurisdiction limitations of this Court's power to preside over Great American.[5]  *See* Complaint ¶ 24 (May 31, 2023) [Dkt. No. 1] ("Compl.").

---

[5]      Specifically, a "transferee court" administering cases consolidated for pretrial purposes (assuming those cases are properly consolidated under 28 U.S.C. §1407) must exercise personal jurisdiction to the same extent as a "transferor court" could and, where an action is directly filed, the Court must determine whether it can exercise general jurisdiction over the defendants.  *See Cannon v. Ethicon, Inc.*, No. 2:15-CV-05858, 2020 WL 7322726, at *1 (S.D. W. Va. Dec. 11, 2020) ("Specifically, in cases that are consolidated for pretrial purposes under 28 U.S.C. § 1407, a transferee court can exercise personal jurisdiction only to the same extent as the transferor court could." (internal quotation marks omitted)); *In re Takata Airbag Prods. Liab. Litig.*, 396 F. Supp. 3d 1101, 1137 (S.D. Fla. 2019) ("[F]or the Transferor Actions the Court must determine whether the transferor district court had general jurisdiction over the corresponding [defendants];

Nonetheless, Tyco alleges in its Complaint that this court may exercise personal jurisdiction over Great American because (i) Great American deliberately licensed itself to do business in South Carolina and engages in substantial business activities in the State; (ii) Great American included South Carolina within the coverage territory of its policy and (iii) Great American promised, through its policy, to provide insurance benefits in or relating to South Carolina, including through payment of damages. *See* Compl. ¶22. But the Supreme Court of the United States recognizes only "two types of personal jurisdiction: 'general' (sometimes called 'all-purpose') jurisdiction and 'specific' (sometimes called 'case-linked') jurisdiction." *Bristol-Myers*, 137 S. Ct. at 1780. On these allegations, neither type exists here.

### A.     Great American is Not Subject to General Jurisdiction in South Carolina.

The Supreme Court has repeatedly held that the Due Process Clause precludes a court from exercising general jurisdiction over a defendant—even one who does extensive business in the state—unless the defendant is "at home" in the forum state.[6] Recently, the Supreme Court held that, under its prior decision in *Pennsylvania Fire Insurance Co. v. Gold Issue Mining & Milling Co.*, 243 U.S. 93 (1917), a court may exercise personal jurisdiction over a foreign corporation when that corporation registers to do business in a state and that state's law subjects it to personal jurisdiction based on its registration. *See Mallory v. Norfolk S. Ry.*, 143 S. Ct. 2028, 2037 (2023). That decision is not relevant to this Court's jurisdictional analysis over Great American because, while Tyco alleges that Great American is licensed to do business in South Carolina, Compl. ¶22, the Fourth Circuit clearly

---

and for the [actions filed directly in the transferee court], the Court must determine whether it can exercise general jurisdiction over the [defendants].").

[6]     *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). A corporation is "at home" in the state or states "where it is incorporated and . . . where it has its principal place of business," which are the "paradigm forum[s] for the exercise of general jurisdiction." *Fidrych v. Marriott Int'l, Inc.*, 952 F.3d 124, 133 (4th Cir. 2020) (citing *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014)).

has stated that, "under the rules set out in *Pennsylvania Fire*, obtaining a certificate of authority operates as consent to general jurisdiction only if state law so provides," and "South Carolina law does not make consent to general jurisdiction a consequence of obtaining a certificate of authority to transact business." *Fidrych*, 952 F.3d at 137–38.

The paradigm forum for general jurisdiction, per prevailing United States Supreme Court precedent (*see Daimler AG v. Bauman*, 571 U.S. 117 (2014); *Bristol-Myers Squibb Co. v. Super Ct. of Cal.*, 582 U.S. 255 (2017); and *Ford Motor Co. v. Mont. Eighth Jud. Dist.*, 141 S. Ct. 1017 (2021)), is where the defendant is domiciled.  For a corporation, that is its place of incorporation and principal place of business.[7]  Tyco's allegation that Great American was and is licensed to do and is doing business in South Carolina, *see* Compl. ¶14, is not enough for general jurisdiction.  Great American is incorporated and maintains its principal place of business in Ohio (which Tyco does not dispute), meaning Great American is "at home" in Ohio and that is where general jurisdiction would lie.  *See id.; see also* **Affidavit of Vicki G. Stropko** ¶¶2-3, 5, attached hereto.

### B.    Great American is Not Subject to Specific Jurisdiction in South Carolina.

Specific jurisdiction "depends on an affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation."  *Goodyear*, 564 U.S. at 919 (internal quotation marks and brackets omitted).  In two recent cases, the United States Supreme Court imposed significant

---

[7]    *See Ford Motor Co.*, 141 S. Ct. at 1024 ("In what we have called the 'paradigm' case, an individual is subject to general jurisdiction in her place of domicile. . . . And the 'equivalent' forums for a corporation are its place of incorporation and principal place of business."); *Bristol-Myers Squibb Co.*, 582 U.S. at 262 ("[F]or a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home."); *Daimler AG*, 571 U.S. at 757 ("Although the placement of a product into the stream of commerce 'may bolster an affiliation germane to specific jurisdiction,' . . . such contacts 'do not warrant a determination that, based on those ties, the forum has *general* jurisdiction over a defendant.' . . . As *International Shoe* itself teaches, a corporation's 'continuous activity of some sorts within a state is not enough to support the demand that a corporation be amenable to suits unrelated to that activity.'").

new restrictions on the exercise of specific jurisdiction.  In the landmark case *Bristol-Myers*, which

has been described as a "paradigm shift,"[8] the Supreme Court of the United States explained that

specific jurisdiction exists only when the lawsuit arises out of or relates to the defendant's contacts

with the forum:

> In order for a state court to exercise specific jurisdiction, the suit
> must arise out of or relate to the defendant's contacts with the
> forum.  In other words, there must be an affiliation between the
> forum and the underlying controversy, principally, an activity or an
> occurrence that takes place in the forum State and is therefore
> subject to the State's regulation.

*Bristol-Myers*, 137 S. Ct. at 1780 (citations and internal quotation marks omitted); *see also*

*Fidrych*, 952 F.3d at 138 ("[T]he *suit* must arise out of or relate to the defendant's contacts with

the *forum*.").   In *Bristol-Myers*, the defendant drug manufacturer was sued in California by some

600 plaintiffs, most of them non-residents of California.  The California Supreme Court held

that, even though the allegedly defective drug was neither made nor consumed nor caused injury

in California, the defendant's extensive contacts with California sufficed to create specific

jurisdiction.  The Supreme Court of the United States reversed, holding that only the defendant's

contacts with the foreign state *relating to the lawsuit* are relevant to establishing specific

jurisdiction, and in the absence of such contacts, specific jurisdiction does not exist:

> [T]he nonresidents were not prescribed Plavix in California, did
> not purchase Plavix in California, did not ingest Plavix in
> California, and were not injured by Plavix in California.  The mere
> fact that other plaintiffs were prescribed, obtained, and ingested
> Plavix in California—and allegedly sustained the same injuries as
> did the nonresidents—does not allow the State to assert specific
> jurisdiction over the nonresidents' claims. As we have explained, a
> defendant's relationship with a third party, standing alone, is an
> insufficient basis for jurisdiction.  This remains true even when

---

[8]     Philip S. Goldberg et. al., *The U.S. Supreme Court's Personal Jurisdiction Paradigm Shift to End Litigation Tourism*, 14 Duke J. Const. L. & Pub. Pol'y 51, 60 (2019).

third parties (here, the plaintiffs who reside in California) can bring
claims similar to those brought by the nonresidents.

*Bristol-Myers*, 137 S. Ct. at 1781 (citations and internal quotation marks omitted).  In *Ford*, the

Supreme Court clarified that the relationship between defendant's conduct in the forum state and

the injury need not be causal.  *See Ford*, 141 S. Ct. at 1031.  It was enough that the automobile

manufacturer had done extensive business in the forum state, and that the plaintiffs' injuries

occurred in the forum state.

Here, however, South Carolina has no relevance to Plaintiffs' claims against Great

American.  Tyco is a limited partnership organized under Delaware law with its principal place of

business in Marinette, Wisconsin.  *See* Compl. ¶10.  Tyco seeks a declaration as to the

"interpretation and meaning" of its insurance contract with Great American.  *Id.* ¶40.  That contract

was not negotiated, executed, or delivered in South Carolina and Tyco does not contend otherwise.

Indeed, wherever the underlying claims may have arisen is not relevant to a jurisdictional analysis

because those claimants are not parties to this action and they are not in contractual privity with

Tyco's insurers thereunder.  *See Major v. Nat'l Indem. Co.*, 267 S.C. 517, 520–21 (1976) ("We find

no right, either statutory or under the common law, to maintain an action solely against the

insurer."); *S.C. Dep't of Health and Env't Control v. Com. and Indus. Ins. Co.*, 372 F.3d 245, 259

(4th Cir. 2004) (following *Major*).  If Tyco has experienced a compensable injury, it experienced

that injury at home in Wisconsin, where a coverage action is already pending against it; if Great

American breached any duty, which it does not concede (and Tyco does not allege), it breached

that duty at home in Ohio.  Indeed, whether Tyco feels the effects of any alleged injury or alleged

breach in South Carolina is not enough.  *See, e.g.*, *Young v. New Haven Advocate*, 315 F.3d 256,

262 (4th Cir. 2002) ("[A]lthough the place that the plaintiff feels the alleged injury is plainly

relevant to the jurisdictional inquiry, it must ultimately be accompanied by the defendant's own

sufficient minimum contacts with the state if jurisdiction . . . is to be upheld."); *see also Hawkins v. i-TV Digitalis Tavkozlesi zrt.*, 935 F.3d 211, 230 (4th Cir. 2019) ("[A defendant] cannot be haled into the forum simply because he knew that his conduct would have incidental effects there; he must have 'expressly aimed' his conduct at the forum. . . . Put differently, the forum must be the 'focal point' of the conduct." (internal citations omitted)).

Tyco purportedly places great relevance on a territory of coverage provision in the Great American policy that it claims confers this Court with jurisdiction – Compl. ¶22 – but the Great American policy contains no such provision and to the extent territory of coverage provisions were relevant to a jurisdictional analysis, which they are not, Tyco cannot in good faith attribute any relevance in any other party's policies to the Great American policy. *See* Great American Policy No. EXC 7-30-62-19-00 (Oct. 19, 1992 to July 1, 1993) (**attached to Stropko Aff. as Exhibit 1**).[9] The only "underlying controversy" here concerns the meaning of the contract embodied in the Great American policy, as it is written. Under this analysis, it is impossible to discern any "affiliation between the forum and the underlying controversy" or any "activity or occurrence" that took place in the forum state.

## II.     THE COURT SHOULD DISMISS THIS CASE AS IMPROPERLY FILED IN THE MDL

Tyco's decision to file its Complaint directly in the MDL is improper because it did not follow

---

[9]     The Court may consider certain matters outside the pleadings when assessing a motion to dismiss on personal jurisdiction grounds. *See, e.g.*, *United States ex rel. Fadlalla v. DynCorp Int'l LLC*, 402 F. Supp. 3d 162, 176 (D. Md. 2019); *IHFC Props., LLC v. APA Mktg., Inc.*, 850 F. Supp. 2d 604, 616 (M.D.N.C. 2012); *Rich Food Servs., Inc. v. Rich Plan Corp.*, No. 5:99-CV-677-BR, 2001 WL 36210598, at *9 n.2 (E.D.N.C. May 12, 2001). That includes matters incorporated by reference in the complaint. *See* Compl. ¶31 (identifying Great American policy); *Halscott Megaro P.A.*, 66 F.4th at 157; *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011) (same); *Tate v. Am. Gen. Life Ins. Co.*, 627 F. Supp. 3d 480, 489 (D. Md. 2022) (accepting policy attached to insurer's motion to dismiss because policy was incorporated into the complaint by reference).

the proper procedures under 28 U.S.C § 1407 and the JPML's Rules of Procedure, and also because this action does not square with the JPML Transfer Order creating this MDL or the Court's Case Management Order No. 3, Applicability and Scope of Order (Apr. 26, 2019) [MDL Dkt. No. 72] ("CMO 3").

28 U.S.C. § 1407(c) contemplates only two ways to initiate transfer of an action to an MDL:

> (c) Proceedings for the transfer of an action under this section may be initiated by—
>> (i) the judicial panel on multidistrict litigation upon its own initiative, or
>> (ii) motion filed with the panel by a party in any action in which transfer for coordinated or consolidated pretrial proceedings under this section may be appropriate. A copy of such motion shall be filed in the district court in which the moving party's action is pending.

*See* 28 U.S.C. § 1407(c). Additionally, to the extent that an action can be considered a "tag-along" under the JPML's Rules, Tyco was required to "promptly notify the Clerk of the Panel of any potential tag-along actions in which [Tyco] is also named or in which that counsel appear" under J.P.M.L. R. 7.1.(a), or under J.P.M.L. R. 7.2(a), request assignment of this action as a potential tag-along action with the transferee court in accordance with applicable local rules. Tyco did not comply with 28 U.S.C. § 1407(c), J.P.M.L. R. 7.1(a) or R. 7.2(a), denying Great American and the other co-defendant insurers the opportunity to be heard by the JPML.[10]

---

[10]     The JPML has held that while it does not consider issues of personal jurisdiction, it may decline to transfer cases to an MDL where the purpose of transfer clearly is an attempt at forum-shopping. *See In re: Klein*, 923 F. Supp. 2d 1373, 1374 (J.P.M.L. Feb. 7, 2013) ("After considering all argument of counsel, we will deny the motion for centralization. As the seventh paragraph in the complaint in the second-filed Middle District of Florida action makes clear, the action was filed for the sole (and, in our view, improper) purpose of effecting the creation of an MDL in the District of District of Columbia, and thus circumventing a possible unfavorable decision on a motion to dismiss for lack of personal jurisdiction filed by Fidelity National in the first-filed District of Columbia action . . . ."); *In re Truck Acc. Near Alamagordo, N.H., on June 18, 1969*, 387 F. Supp. 732 (J.P.M.L. Jan. 9, 1975) ("[I]n light of the history of this litigation we suspect that plaintiffs' dominant reason for seeking transfer of the Texas actions under Section 1407 is to accomplish, at least for pretrial purposes, what is not otherwise possible in the Oklahoma federal courts because of lack of in personam jurisdiction over defendant Strick. Although the propriety of in personam

Tyco instead uses CMO 3 as a vehicle to claim it has a right to directly file this coverage action in the MDL, effectively asking the Court to assume the action is "subject to these MDL proceedings" and was proper as either a "tag-along action" or a "related case."  *See* CMO 3 ¶ 25 ("[A]ny plaintiff whose case would be subject to *these MDL proceedings* may file his or her case directly in the District of South Carolina." (emphasis added)); *see also* Case Management Order No. 1, Pretrial Consolidation (Jan. 2, 2019) [MDL Dkt. No. 3] ("CMO 1") at 1 ("This Order shall govern all cases . . . (2) any tag-along actions subsequently transferred to this Court by the Judicial Panel on Multidistrict Litigation; and (3) all related cases (i.e., civil actions where plaintiff(s) allege injuries or damages caused by groundwater contaminated with chemicals found in [AFFF] products) originally filed in this Court or transferred or removed to this Court, including related cases filed in, removed to, or transferred to this Court after the date of this Order.").

The Court should decline Tyco's request.[11]  Tyco's coverage action is not subject to "these

---

jurisdiction in a proposed transferee district is not a criterion in considering transfer of actions to that district under Section 1407, it appears that in this particular litigation plaintiff'[s] ulterior motive for seeking transfer amounts to an attempted misuse of the statute."); *see also In re Highway Acc. Near Rockville, Conn., on December 30, 1972*, 388 F. Supp. 574, 576 (J.P.M.L. 1975) (same).

[11]     *See, e.g.*, *In re Jan. 2021 Short Squeeze Trading Litig.*, 580 F. Supp. 3d 1243, 1249-50 (S.D. Fla. 2022) (granting motion to dismiss for lack of subject matter jurisdiction because the "Court – sitting in its capacity not as an ordinary district court, but as an MDL transferee court – plainly only has jurisdiction over MDL member cases properly transferred or consolidated under Section 1407 and the accompanying JPML rules."); *In re FCA US LLC Monostable Electronic Gearshift Litig.*, MDL No. 2744, 2017 WL 6402992, at *3 (E.D. Mich. Mar. 21, 2017) ("The idea that an MDL proceeding is an environment that can spawn fresh actions by new plaintiffs is at odds with [the section 1407 statutory] scheme."); *In re Farmers Ins. Exch. Claims Reps. Overtime Pay Litig.*, MDL No. 33-1439, 2008 WL 4763029, at *5 (D. Or. Oct. 28, 2008) (noting there was "no authority for this court, as an MDL transferee court, to exercise subject matter jurisdiction over state law claims not transferred by the MDL Panel and over which this court lacks original jurisdiction."); *In re Packaged Ice Antitrust Litig.*, No. 08-MDL-1952, 2011 WL 6178891, at *9 (E.D. Mich. Dec. 12, 2011) (holding attempt to add new named plaintiffs to a consolidated amended complaint "ignored basic Article III principles and . . . bypassed the appropriate MDL process for consolidation of these plaintiffs' claims.").

MDL proceedings" because the JPML Transfer Order limited transfer to cases with common questions of fact regarding, succinctly, PFOA and PFOS in humans and the environment and any culpability on the part of AFFF manufacturers with respect to their knowledge, failure to warn, and any conspiracy or cooperation in concealing the dangers.  *See* JPML Transfer Order at 3.  Additionally, the JPML Transfer Order contemplates only plaintiffs who are "alleging that . . . AFFF . . . products used at airports, military bases, or certain industrial locations caused the release of PFOA and PFOS into local groundwater and contaminated drinking water supplies."[12]  *Id.*  The Court also recognized this limitation in its first CMO when it described "all related cases" as "civil actions where plaintiff(s) allege injuries or damages caused by groundwater contaminated with chemicals found in [AFFF] products."  *See* CMO 1 at 1.

Tag-along actions, as defined by the JPML Rules, are limited to actions that "involve[] common questions of fact with either (1) actions on a pending motion to transfer to create an MDL or (2) actions previously transferred to an existing MDL, and which the Panel would consider transferring under Section 1407."  J.P.M.L. R. 1.1(h).  This *insurance* coverage action (*i.e.*, whether Great American owes coverage to Tyco for any of the underlying AFFF lawsuits) does not share "common questions of fact" with the *tort liability* actions at issue in the MDL, which seek to determine whether Tyco caused the injuries alleged by underlying plaintiffs.  The legal questions presented in Tyco's coverage

---

[12]     Great American understands that in addition to these cases, the MDL includes cases brought by plaintiff individuals, including firefighters and military servicemembers, alleging direct exposure to PFAS-containing AFFF during training and other firefighting and/or military activities.  On their face, these lawsuits contain allegations arguably consistent with the "common questions of fact" the JPML enumerated in its Transfer Order and therefore, could be considered tag-along cases.  This does not mean all cases, including issues concerning coverage, are proper tag-along cases.  Indeed, the Panel previously has declined to transfer cases to this MDL not related to "AFFF actions," as that term is defined by the Panel, over concern that the expansion to non-AFFF actions would affect the manageability of this litigation.  *See, e.g.*, footnote 3, *supra.*

dispute against Great American are the same as those alleged in the Wisconsin Action and distinct from those legal questions presented against Tyco by underlying plaintiffs in the MDL.  *See In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, MDL No. 2047, 2010 WL 11747797, at \*2 (J.P.M.L. June 15, 2010) ("*Chinese Drywall*") (holding transfer of insurance coverage actions "would not achieve sufficient conveniences or other benefits to justify transfer," despite an acknowledgement that the insurance coverage cases shared "a common factual backdrop involving the general circumstances of imported Chinese drywall and the damage it is alleged to have caused" and "appear[ed] to implicate similar legal issues.").  And "significantly," Great American would have opposed the transfer, had it been given that opportunity.  *See id.* (stating coverage lawsuits "seem[ed] to present strictly legal questions," required "little or no centralized discovery," and, "[s]ignificantly, the insurance companies that might benefit the most from the efficiencies of centralization, all oppose[d] these motions.").[13]

Great American appreciates that this Court has an interest in the expeditious resolution of the tort claims properly before it, including through the facilitation of mediation and settlement between parties.  But that is also not grounds for transfer to the MDL.  Nor is it a reason to assume that Tyco and Great American cannot engage in productive settlement discussions, or that Tyco cannot mediate with underlying plaintiffs.  *See id.* (holding that there is no "statutory rationale" for transfer to an MDL to leverage settlement discussions because "[s]ettlement of the underlying products liability claims can

---

[13]     Tyco may seek to rely on the JPML's decisions in *In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico, on April 20, 2010*, 764 F. Supp 2d 1352 (J.P.M.L. Feb. 8, 2011) and *In re Helicopter Crash Near Weaverville, California on Aug. 5, 2008*, 626 F. Supp. 2d 1355 (J.P.M.L. June 18, 2009), both of which transferred insurance coverage actions to MDLs that included underlying claims.  But those cases are inapposite because, "[s]ignificantly, the plaintiff insurers support[ed] transfer of the actions to the MDL" and arose from one discreet alleged accident.  *See In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico, on April 20, 2010*, 764 F. Supp 2d at 1353; *see also In re Helicopter Crash Near Weaverville, C.A. on Aug. 5, 2008*, 626 F. Supp. 2d at 1356 ("Plaintiff . . . Liberty Mutual . . . has moved, pursuant to 28 U.S.C. § 1407, for coordinated or consolidated pretrial proceedings of this litigation . . . .").

proceed quite well without transfer of the insurance actions.  The parties can engage in settlement discussions regardless of the pendency of the declaratory judgment actions in other courts.")  In fact, they had, although settlement discussions between Great American and Tyco have paused, ostensibly because Tyco has switched coverage counsel.

## III.     SOUTH CAROLINA'S DOOR-CLOSING STATUTE DOES NOT PERMIT TYCO TO SUE GREAT AMERICAN IN SOUTH CAROLINA

In addition to lack of personal jurisdiction warranting dismissal, Tyco is precluded from litigating claims against Great American in South Carolina under South Carolina's door-closing statute.  The statute limits a party's capacity to sue a foreign corporate defendant in the state, providing that a non-resident of South Carolina may not sue a foreign corporation in South Carolina unless "the cause of action shall have arisen or the subject of the action shall be situated within the State."  S.C. Code Ann. § 15-5-150; *McCall v. State Farm Mut. Auto. Ins. Co.*, 597 S.E.2d 181, 186 (S.C. Ct. App. 2004); *Farmer v. Monsanto Corp.*, 579 S.E.2d 325, 327-28 (S.C. 2003).

Courts analyzing application of the door-closing statute find it necessary to consider "three basic objectives":  (1) "favor[ing] resident plaintiffs over non-resident plaintiffs," (2) "provid[ing] a forum for wrongs connected with the state while avoiding the resolution of wrongs in which the state has little interest," and (3) "encourag[ing] activity and investment within the state by foreign corporations without subjecting them to actions unrelated to their activity within the state."  *McCall*, 597 S.E.2d at 187.   Tyco's lack of capacity to sue under these objectives is evident from its own allegations:  Tyco is not a resident of South Carolina and neither is Great American.  Compl. ¶¶ 10, 14; Stropko Aff. ¶¶2-3.  The "cause of action" is Great American's alleged wrongful denial of insurance coverage to Tyco and the "subject of the action" is the meaning of the insurance policy Great American issued to Tyco and its purported application to Tyco's PFAS-related liability; and the

excess policy that Tyco seeks to have this Court interpret was neither negotiated nor issued to Tyco in South Carolina.[14]  *See* Compl. ¶¶ 31, 39, 40; *see also* **Stropko Aff., Ex. 1** at GAAC000001, GAAC000017-18 (showing named insured and address as Tyco Laboratories, Inc. at One Tyco Park, Exeter, New Hampshire and New Hampshire-specific endorsement); *McCall*, 597 S.E.2d at 186 (dismissing case of non-resident plaintiff under the door-closing statute because cause of action relates to a North Carolina insurance policy provision and the subject matter of the suit is a North Carolina insurance policy); *Snell v. Golden Rule Ins. Co.*, No. C.A. 6:08-3555-MHM, 2009 WL 185723, at *3 (D.S.C. Jan. 23, 2009) (dismissing lawsuit brought by non-resident plaintiff insured against a non-resident defendant insurer because health insurance policy was made in Virginia).

The door-closing statute applies to federal courts sitting in diversity unless countervailing federal interests preclude such application.  *See Tuttle Dozer Works, Inc. v. Gyro-Trac, Inc.*, 463 F. Supp. 2d 544, 549 (D.S.C. 2009) (collecting Fourth Circuit cases).  There are no countervailing federal interests here because, as Fourth Circuit precedent explains, they are limited almost exclusively to circumstances in which the plaintiff does not have an alternative forum in which to assert claims.  *See Boisvert v. Techtronic Indus. N. Am., Inc.*, 56 F. Supp. 3d 750, 752 (D.S.C. 2014) (holding door-closing statute barred exercise of diversity jurisdiction where plaintiff admitted he could have brought the action in his home jurisdiction).  Tyco has an alternative forum in the Wisconsin Action – where it has admitted it is content to litigate and where it has answered Great American's cross-claim on the very issue it seeks to litigate here.  *See* Letter from Patrick Murphy to Honorable James Morrison, Attachment A at 3 (WI Action

---

[14]     The "cause of action" is the "legal wrong threatened or committed against the complaining party," while the "subject of the action" is the "matter or thing, differing both from the wrong and the relief, in regard to which the controversy has arisen, concerning which the wrong has been done; and this is, ordinarily, the property, or the contract and its subject matter, or the thing involved in the dispute."  *McCall*, 597 S.E.2d at 186.

Dkt. No. 352) (**Exhibit J**) ("To be clear, [Tyco] is fully content to litigate its coverage claims in either this Court or the MDL Court . . . ."); *see also, e.g.*, **Exhibit G** ¶¶ 24-32 (answering Great American's cross-claim).  In filing suit against Great American here, Tyco disrespected South Carolina's door-closing statute.  The Court should dismiss this action on that ground.

## IV.    THE COURT SHOULD ABSTAIN FROM EXERCISING JURISDICTION OVER THIS DECLARATORY JUDGMENT PURSUANT TO THE *BRILLHART-WILTON* ABSTENTION DOCTRINE

The Court also should deny Tyco's declaratory judgment action under the *Brillhart-Wilton* abstention doctrine, which has been settled federal law for more than half a century.  That doctrine derives its name from two Supreme Court cases, *Brillhart v. Excess Insurance Co. of America*, 316 U.S. 491 (1942) and *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995), which held that when a plaintiff brings a declaratory judgment action, the district court enjoys discretion in deciding whether to assert jurisdiction over the action or abstain from hearing it.  *See Wilton*, 515 U.S. at 286 ("The Declaratory Judgment Act is understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants.").  Repeatedly characterized as an enabling Act, the Declaratory Judgment Act "is an authorization, not a command.  It gives the federal courts competence to make a declaration of rights; it does not impose a duty to do so."  *Riley v. Dozier Internet Law, PC*, 371 Fed. Appx. 399, 405 (4th Cir. 2010) (quoting *Pub. Affairs Assocs., Inc. v. Rickover*, 369 U.S. 111, 112 (1962) (brackets omitted)).  That is particularly so where a federal court is being asked to proceed in a declaratory judgment suit when another suit is pending in state court presenting the same issues between the same parties.  *See Brillhart*, 316 U.S. at 495 (noting a federal action is unwarranted); *Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 256-57 (4th Cir. 1996) ("It should not be used 'to try a controversy by piecemeal, or to try particular issues without settling the entire controversy, or to interfere with an action which has already been instituted.'").

18

In this Circuit, district courts have considered at least the following four factors (often referred to as the *Nautilus* factors) when deciding whether to hear a declaratory judgment action:

> (1) whether the state has a strong interest in having the issues decided in its courts; (2) whether the state courts could resolve the issues more efficiently than the federal courts; (3) whether the presence of "overlapping issues of fact or law" might create unnecessary "entanglement" between the state and federal courts; and (4) whether the federal action is mere "procedural fencing," in the sense that the action is merely the product of forum-shopping.

*Med. Mut. Ins. Co. of N.C. v. Littaua*, 35 F.4th 205, 208-09 (4th Cir. 2022) (quoting *Nautilus Ins. Co. v. Winchester Homes, Inc.*, 15 F.3d 371, 377 (4th Cir. 1994)). The *Nautilus* factors collectively weigh in favor of dismissal of this action.

Applying the first *Nautilus* factor, Wisconsin's interest in the resolution of this action is strong because, as Tyco alleges, the underlying lawsuits for which it seeks coverage all "aris[e] out of its manufacture, design, sale, supply, use or distribution of fire safety products." Compl. ¶2, 10. That conduct specifically arises out of Tyco's facilities in Wisconsin, and one of its courts (the first-filed Wisconsin Action) already is poised to answer the questions tied to insurance liability for the manufacture of Tyco's alleged PFAS-containing products.[15] More broadly, the claims for coverage for PFAS-related injury raise unsettled principles of Wisconsin insurance law that have the potential to affect not just Tyco, but other plaintiffs, defendants and insurers in other PFAS-related cases. *See Littaua*, 35 F.4th at 209 ("States hold a strong interest when the question of state law is 'difficult, complex, or unsettled.'"); *Amerisure Mut. Ins. Co. v.*

---

[15]    A recent decision by the Sixth Circuit is instructive. There, the district court declined to exercise its discretionary jurisdiction over a declaratory judgment action concerning insurance coverage for the underlying PFAS litigation, including in the MDL. *See Admiral Ins. Co. v. Fire-Dex, LLC*, No. 22-3992, 2023 WL 3963623, at *1-3 (6th Cir. June 13, 2023). The Sixth Circuit affirmed, reasoning that "Ohio courts have yet to answer questions tied to insurance liability for PFAS manufacturing, and accordingly, that those matters are best resolved by an Ohio court in the first instance." *Id.*, at *3.

*Metal Masters, Inc.*, 2022 WL 270908, at *4 (D.S.C. Jan. 28, 2022) (declining to hear declaratory judgment action in favor of state court action applying unsettled insurance law); *see also Admiral Ins. Co.*, 2023 WL 3963623, at *1-3.

Applying the second *Nautilus* factor, the Wisconsin Action is more comprehensive and involves additional defendants and claims not present here.  Efficiency dictates that because the Wisconsin Action is more comprehensive – a "particularly salient" factor[16] – the Wisconsin Action can more effectively resolve common issues of coverage – such as the AIG Insurers' motion for partial summary judgment on number of "occurrences" that is currently pending there.  *See Metal Masters, Inc.*, 2022 WL 270908, at *4 ("The State Court Coverage Action is more comprehensive, involving additional defendants and claims, would resolve all of the issues that are present in this instant action, and would bring all relevant insurers and parties together in one action.").   Indeed, in addition to issues of insurance coverage for Tyco, the Wisconsin court is being asked to resolve potential contribution issues among Tyco's insurance carriers and TFP QSF, LLC, a limited liability company operating as a qualified settlement fund that purportedly holds contribution rights against the insurers as a result of Tyco's settlements with certain historic liability insurance carriers.  TFP QSF, LLC is not a party to this action, but Great American also has filed a cross-claim against TFP QSF, LLC in the Wisconsin Action, seeking a declaration as to Great American's rights and obligations with respect to TFP QSF, LLC.  *See* **Ex. H ¶¶** 6, 24-32.  Therefore, despite what this Court decides to do, the Wisconsin court still will be required to resolve issues of coverage with respect to Tyco, TFP QSF, LLC, Great American and Tyco's other insurers.

---

[16]     *Centennial Life*, 88 F.3d at 258.

Applying the third *Nautilus* factor, Tyco's attempt to "gratuitous[ly] interfere[]" with the Wisconsin Action by filing here means that two courts are being asked to decide the same issues of state law on an insurance contract between the exact same parties.[17]   But the application of the *Brillhart-Wilton* abstention doctrine is especially important in the area of insurance law because Congress has vested the regulation of the business of insurance solely in the states under the McCarran-Ferguson Act, 15 U.S.C. §§ 1011-1015.  *See, e.g.*, *Hyrne v. Allstate Ins. Co.*, Case No. 2:06-CV-0584-DCN, 2006 WL 1889179, at *1 (D.S.C. Jul. 7, 2006) ("Courts have been reluctant to exercise jurisdiction over declaratory judgment actions relating to state law insurance issues."); *Metal Masters, Inc.*, 2022 WL 270908, at *4 ("[T]he instant action would result in entanglement between the federal and state court systems and 'retention of federal jurisdiction could frustrate portions of the state court proceedings.'" (internal citations omitted)).  Because both actions involve the same issues of coverage for the same underlying lawsuits, involving a "wealth of overlapping factual and legal issues," this Court, in the interest of federalism, efficiency and comity should defer to the Wisconsin court to complete the comprehensive action before it.  *See id.*

Finally, applying the fourth *Nautilus* factor, the Court should defer this action in favor of the Wisconsin Action because Tyco has been engaged in a forum-shopping gambit since it filed its first action against its insurance carriers on South Carolina's asbestos docket more than nine months ago.  If Tyco thought it had grounds to file this action in the MDL, then presumably it would and could have done so then.  Instead, Tyco tried its hand before Chief Justice Toal, who

---

[17]     *Wilton*, 515 U.S. at 283; *Brillhart*, 316 U.S. at 495; *see also Littaua*, 35 F.4th at 207 (noting that "federalism" "efficiency" and "comity" underlie the doctrine and that exercising discretionary declaratory judgment jurisdiction where there is a pending state court action "risks a 'gratuitous interference' with state court litigation") (internal citations omitted).

recognized the limits to her jurisdiction and deferred to a "comprehensive coverage action" involving PFAS-related coverage issues pending before Judge Morrison in Wisconsin, Tyco's home jurisdiction. *See* **Ex. D** at 2. Tyco's repeated attempts to litigate coverage outside its home jurisdiction clearly raise the specter of forum shopping, and for its part, Tyco has given only one reason, albeit a disingenuous one: in a letter to Judge Morrison advising him of the filing of this action, Tyco represented that it filed this action because "several . . . insurance carriers" issuing policies to MDL defendants "objected to the [MDL] Court's jurisdiction" over the mediation and therefore, Tyco filed the action as a means to "address those objections and out of an abundance of caution." *See* Letter from P. Murphy to Judge Morrison (June 26, 2023) [WI Dkt. No. 312] at 3 (**Ex. K**). That could not be further from the truth. Great American has never declined to participate in the mediations to which it was invited, and Tyco's Complaint did not limit this action to addressing the authority of this Court to require insurance carriers who declined to participate, to participate in any underlying mediation.

**CONCLUSION**

For the foregoing reasons, Great American respectfully requests that the Court dismiss Tyco's Complaint in its entirety.

Date: July 31, 2023

**SWEENY, WINGATE & BARROW, P.A.**

s/Christy Mahon
Mark S. Barrow (#1220)
Christy E. Mahon (#7896)
**Sweeny, Wingate & Barrow, P.A.**
1515 Lady Street
Columbia, SC  29201
Tel:  (803) 256-2233
CEM@swlaw.com

and

James P. Ruggeri (*pro hac vice* forthcoming)
Annette P. Rolain (*pro hac vice* forthcoming)
**Ruggeri Parks Weinberg LLP**
1875 K Street NW, Suite 600
Washington, DC 20006
Tel: (202) 984-1400
jruggeri@ruggerilaw.com
arolain@ruggerilaw.com

*Counsel for Defendant Great American*
*Assurance Company*