**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| IN RE: AQUEOUS FILM-FORMING FOAMS PRODUCTS LIABILITY LITIGATION | ) ) ) ) ) ) ) ) ) ) |

MDL No. 2:18-mn-2873-RMG

**CASE MANAGEMENT ORDER NO. 4**

**This Order Relates to All Actions.**

**Discovery**

1. The Court's previously ordered stay of all discovery proceedings in actions in this multidistrict litigation (Case Management Order No. 1 ¶ 16) is hereby lifted.

2. Discovery shall be conducted in compliance with the Order Establishing Protocol for Document Collection and Production (Attachment "A") and the Protective Order (Attachment "B").

**Status Conference on June 21, 2019**

3. The next status conference in this matter will be held on **June 21, 2019 at 9:00 A.M.**

**Notice in Future Cases**

4. In any action that is (a) filed in or transferred to this Court after this Order is entered and (b) consolidated with this action for pretrial purposes, the Clerk shall include a statement in the initial notice to counsel that Case Management Orders No. 1, No. 2, No. 3 and this Order govern all cases in the MDL proceedings and can be viewed on the Court's MDL website.

**AND IT IS SO ORDERED.**

Richard Mark Gergel
United States District Court Judge

May ᴇᴏ, 2019
Charleston, South Carolina

1

# Attachment "A"

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| **IN RE: AQUEOUS FILM-FORMING FOAMS PRODUCTS LIABILITY LITIGATION** | MDL No. 2:18-mn-2873-RMG<br><br>**This Order relates to ALL CASES** |

## ORDER ESTABLISHING PROTOCOL FOR DOCUMENT

## COLLECTION AND PRODUCTION

This Order Establishing Protocol for Document Collection and Production ("Order" or

"Protocol") is intended to govern the discovery, collection, and production of documents,

including electronically-stored information ("ESI"), in this multidistrict litigation. This Protocol

supplements the Federal Rules of Civil Procedure and the Local Rules of the District of South

Carolina. The Parties mutually seek to reduce the time, expense, and other burdens of discovery

of certain hard copy documents and ESI, and to better define the scope of their obligation with

respect to producing such information and materials. This Protocol is intended to promote a

"just, speedy, and inexpensive determination" of this action. Fed. R. Civ. P. 1. This Protocol

does not prevent the Parties from negotiating additional agreements regarding discovery as may

be necessary in the course of this action. This Protocol is not intended to expand any document

storage, preservation, or production requirement beyond the common law or the Federal Rules of

Civil Procedure or to limit any protections otherwise available to a Party under the Federal Rules

of Civil Procedure or the Federal Rules of Evidence.

1

I.       **Preservation and Production of Data**

1.       By preserving information that is reasonably anticipated to be subject to discovery in this action in accordance with the terms of this Stipulation and Order, no Party shall be deemed to have waived any objection to particular discovery requests or the scope of discovery.

2.       Absent a showing of good cause by a Party, activities undertaken in compliance with the duty to preserve information are protected from disclosure and discovery.

3.       The Parties shall confer regarding the identification and collection of sources of relevant ESI.  The Parties shall meet and confer regarding: (a) the identity and role of custodians possessing relevant information from whom documents will be collected and produced; (b) search methodology and search terms, if any, to be applied, and use of technology assisted review ("TAR") or similar technologies; (c) relevant data sources, including custodial, non-custodial, and third-party documents; and (d) any applicable and appropriate timeframes for the collection, review, and production of documents.

4.       The Parties will confer regarding search methodologies, search terms, date restrictions, and custodian restrictions.  Before implementing any search based on key word search terms, the Producing Party will provide a list of proposed search terms to the Receiving Party (*i.e.*, the party requesting or receiving documents) and the Parties will discuss those terms and any additional terms, or other requested changes, proposed by the Receiving Party.  The Parties shall participate in an iterative and cooperative approach in which the Parties will meet and confer regarding reasonable and appropriate methods to increase the relative precision or proportion of relevant and responsive documents within the search results and production sets, including exchanging "hit count" reports and having the Producing Party perform random sampling of nonresponsive sets and sharing those results.  A Producing Party will not, however,

2

be required to share the sampling of nonresponsive documents with the Receiving Party. The exchange of this information shall not waiver a Producing Party's or Receiving Party's objections or rights regarding the production of such documents.

5.      To the extent a Producing Party has served production sets and responsive information in other litigations that may be demanded in this MDL, a Party is not obligated to re-run or re-validate those production sets or responsive information and is not obligated to re-collect the documents that formed the basis for that production for the purpose of obtaining additional metadata as described in Part II.1 below. Provided, however, that should the Requesting Party come forward with a particularized need for additional metadata information as to a specific document the parties will meet and confer to discuss reasonable efforts to locate and recollect such information.

6.      Provided, however, that the Producing Party provides an explanation of the methodology and date ranges used to assemble the production(s). The utilization of prior productions by a Producing Party will not exempt that Party from having to run additional and/or supplemental productions to account for additional keyword searches, custodians, expanded date ranges, etc. that were not taken into account in assembling and serving the prior productions and relevant information, about which the parties shall meet and confer in good faith.

7.      The Parties shall meet and confer about any other technology or process that may be appropriate to streamline discovery consistent with the objectives of Rule 1.

## II.      ESI Production Specifications

1.      Except as set forth below, each Party will produce ESI in single-page TIFF format with corresponding load files and multi-page OCR text or extracted text files. TIFF files shall be created directly from the original electronic documents; a Party may not create a TIFF file from ESI by printing out paper copies of that electronic document and then scanning that paper copy

3

of the ESI. Unless not feasible in certain circumstances, all TIFF files will conform to the

following specifications:

      i.     All TIFF files will be single page, black and white TIFF at 300x300 dpi resolution and $8^{1}/_{2}$ x 11 inch page size, except and to the extent reasonably practicable for documents requiring color or different resolution or page size to be legible and comprehensible. Tracked changes, comments, or notes or other similar information shall be imaged so that this information is captured on the produced image file.

      ii.     Each production of ESI and Documents shall include a standard format load file (e.g., Opticon opt, Concordance.Dat, Summation Dii, etc.) containing the production Beginning and Ending Bates numbers and the additional Metadata fields detailed below and the appropriate unitization of the documents and family relationship shall accompany the TIFF production.

      iii.     Except as otherwise agreed by the parties, all productions shall be made in .opt and .dat file formats.

      iv.     All TIFF images shall be branded in the bottom right with a Bates number, beginning with "ABC_00000001." Each page will also be branded in the bottom left corner with the appropriate confidentiality designation consistent with any protective order entered. Bates numbers should contain an alphanumeric prefix followed by an 8 digit number. Any numbers with less than 8 digits will be front padded with zeros to reach the required 8 digits. All ESI produced in TIFF format shall contain a unique Bates Number on each page of the document, electronically "burned" onto the image at a location that does not obliterate, conceal, or interfere with any information from the source document.

      v.     Parties shall produce the following metadata fields to the extent they exist with respect to the original electronic document or information, including files produced natively pursuant to paragraph 1(vii) below:

         1.     BegAttach
         2.     EndAttach
         3.     From
         4.     To
         5.     Cc
         6.     Bcc
         7.     Subject
         8.     Datesent
         9.     Datecreated (documents)
        10.     DateModified (documents)
        11.     Custodian
        12.     FileName
        13.     FileType
        14.     OriginalFilePath

15. Bates Begin
16. Bates End
17. Dedupped Custodian
18. Dedupped Custodian Path
19. Custodian
20. MD5 Hash
21. Extracted Text Path
22. Native File link
23. Page Count
24. Confidential Designation
25. Redaction
26. File Size
27. File Extension
28. Author
29. Production Volume
30. Message ID
31. ESI Type

    vi.    Documents such as those that include hidden data, computer slide presentations (for example and without limitation PowerPoint files), spreadsheet files (for example and without limitation Excel files), audio files, video files, and other file types that cannot be accurately converted to image format as described in II.1.i. above shall be produced in native format  unless such documents are redacted.  The Producing Party shall produce a single page TIFF "placeholder" page for each such file bearing a Bates number and, if feasible, the placeholder page may also bear the file name, file type, and file extension.

    vii.    The Parties' E-Discovery Liaison(s), as set forth below, in consultation with their respective technical personnel shall promptly consult in good faith on a reasonable protocol for producing databases, and files that may not easily conform to the protocol above. In the event the Parties are unable to agree, either Party may promptly move the Court for an Order.

    viii.    The presumptive source of extracted text shall be from the native file. Where a document has been redacted and produced in a .TIFF format, OCR may be used to generate text for the text file.

    2.    **De-duplication:**

    i.    To the extent identical copies of ESI exist in a Producing Party's files, the Producing Party need only produce one such identical copy. Each Producing party may remove exact duplicate documents based on MD5 or SHA-1 hash values, at the family level. Attachments should not be eliminated as duplicates for purposes of production, unless the parent email and all attachments are also duplicates. An email that includes content in the BCC or other blind copy field shall not be treated as a duplicate of an email that does not include content in those fields, even if all remaining content in the email is

5

identical. Near-duplicate documents shall not be removed without prior agreement of the parties.

      ii.     Email thread suppression techniques will not be applied in production, although such techniques may be used as a review tool.

      iii.     If global de-duplication is done across the entire collection, the Dedupped Custodian field will list each custodian, separated by a semi-colon, who was a source of that document.

3.     **De-NISTing**. ESI collections will be De-NISTed, removing commercially available operating system and application file information contained on the current NIST file list.

4.     **Zero-byte Files**.  The Parties may filter out files identified as zero bytes in size and any logo files.

5.     **Embedded Objects.**  Embedded objects or files such as Excel spreadsheets, Word documents, audio and video files shall be extracted and searched consistent with its category of ESI.  Non-substantive embedded files, such as logos, need not be extracted.  All embedded files produced under this procedure shall be produced subject to the same requirements set forth in this Protocol.  For production purposes, embedded files shall be identified as attachments to the parent document in which the file was embedded, and load files for such embedded files shall refer to the parent document in which the file was embedded.

**III.    Supplemental Production of Specific Native Format Documents**

1.     Other than as set forth above, a Party may request native format files of electronic documents from a Producing Party in accordance with the provisions of this Section III (each, a "Requesting Party").

2.     No Requesting Party may seek to compel production of native format files on a wholesale or otherwise unreasonable basis.

3.     Any request for native documents will be carried out under the following

protocol:

     i.     The Requesting Party will identify the native files sought by Bates range.

     ii.     The Producing Party will respond in writing within ten (10) calendar days by either agreeing or refusing to produce the requested files.

     iii.     If the Producing Party agrees to the request, the production shall be made within fifteen (15) calendar days of the notification of agreement or as otherwise agreed by the parties.

     iv.     If the Producing Party refuses to produce the requested file(s), it shall provide a written statement of the reasons it declines the request. If the reason is technical difficulty in producing, the written statement shall detail the technical difficulty.

     v.     The Requesting Party may then move the Court for relief under LR Cv 37, and any objections shall be due seven days after service of the Motion. No reply briefs will be permitted.

### IV. Hard Copy Production Specifications

1.     Hard copy documents and attachments should be scanned as single-page, Group IV, 300 DPI TIFF images with an .opt image cross-reference file and a delimited database load file (*i.e.*, .dat). The database load file should contain the following information: Custodian(s), Bates Number Beginning, Bates Number Ending, Family Range Beginning (Parent/Child Order), Family Range Ending (Parent/Child Order), Confidential Designation, Redaction, OCR Text Path, and Production Volume. Where reasonably feasible, hard copy documents should be logically unitized (*i.e.*, distinct documents shall not be merged into a single record, and single documents shall not be split into multiple records) and be produced in the order in which they are kept in the usual course of business.  Where possible, original document orientation should be maintained (i.e., portrait to portrait and landscape to landscape) and the Bates number shall be outside of the portions of the imaged pages containing content.

7

At the request of the Receiving Party, document pages that have affixed notes, such as Post-it® Notes, shall be imaged with and without the note attached. If an original document contains color, then the document produced shall be in color, produced as single-page, 300 DPI JPG images with JPG compression and a high-quality setting as to not degrade the original image. Parties are under no obligation to enhance an image beyond how it was kept in the usual course of business.

Multi-page OCR text for each document will also be provided. OCR text files shall be provided as a single text file for each hard copy document, not one text file per page. The filename itself should match its respective TIFF or JPG filename. The OCR software shall maximize text quality. Settings such as "auto-skewing" and "auto-rotation" should be turned on during the OCR process. Notwithstanding the requirements set forth above, absent a showing of good cause, a Party is not obligated to re-scan and re-process hard copy documents that were scanned before the entry of this Protocol.

2.    If any Party determines that any of the specific requirements in this section impose an undue burden or otherwise present an issue with respect to compliance, the Parties shall meet and confer regarding that issue, including discussing any appropriate resolution of that issue or alternative process.

**V.    Costs**

The cost of preserving, collecting and producing documents shall be borne by the Producing Party. In the event, however, that a Party requests documents that would result in the production of cumulative or repetitive information that otherwise imposes an undue burden or expense, the Producing Party (*i.e.*, the party producing documents) may object. The Parties shall work to resolve any such objection. In the event that a Party is unable to resolve an objection, and upon substantiation of that objection, the Producing Party may move the Court for an Order

8

shifting the cost of producing such cumulative or repetitive information or information that otherwise imposes an undue burden or expense to the Receiving Party.

### VI. Redactions

1.    The Producing Party may redact from any TIFF image, metadata field, or native file material that is protected from disclosure by applicable privilege or immunity or that is required by applicable law or regulation or as permitted by the Protective Order governing these cases. Redactions must be limited to only language or information within document deemed protected. The Producing Party shall identify redactions clearly on the face of any TIFF image, either with "Redacted" or the redaction reason on the face of the document.

2.    If a document that otherwise would be produced in native format requires redaction, such document may be produced in TIFF format with an OCR text file in accordance with this Protocol. The native file version of redacted documents need not be produced unless the Parties agree otherwise.

### VII. Other Issues

1.    **Encryption.** To maximize the security of information in transit, any production may be encrypted. In such cases, the Producing Party shall transmit the encryption key or password to the Receiving Party, under separate cover, contemporaneously with sending the encrypted media.

2.    **English Language.** To the extent any Document exists in more than one language, the Document shall be produced in English, if available. If no English version of the Document is available, the Producing Party does not have an obligation to produce an English translation of that Document.

3.    **Time Zone Standardization:** The Parties acknowledge that if the processing time zone for this case is not standardized across the entire collection, then the email metadata

9

for custodians in the different time zones will be different, because the time (and possibly the date) would be different. As a result, two copies of the same email may fail to be de-duplicated, and the different time zones could create a convoluted chronology. As a result, to the extent reasonably practicable the Parties agree to produce their ESI standardized to Eastern Standard Time (EST).

4.     **Protective Order.**  The terms of any Stipulated Protective Order filed with the Court are incorporated herein by reference and also govern all production pursuant to this Document Production Protocol.

5.     **Further Conferral.**  If any Party determines that any of the requirements in this Protocol impose an undue burden or otherwise pose an issue with respect to compliance, the Parties shall meet and confer regarding that issue, including discussing, as appropriate, an alternative process or processes.

6.     **Privilege Log.**  The parties will meet and confer further regarding privileged-document logging.

7.     **E-Discovery Liaison**. The PEC and DCC will identify to each other liaisons who are and will be knowledgeable about and responsible for discussing their respective ESI ("E-Discovery Liaisons"). Each side's designated E-Discovery Liaison(s) will be, or will have access to, those who are generally familiar with their side's respective electronic systems and capabilities and knowledgeable about the technical aspects of e-discovery, including the location, nature, accessibility, format, collection, search methodologies, and production of ESI in this matter. The PEC and DCC will rely on the E-Discovery Liaisons, as needed, to confer about ESI and to help resolve disputes without court intervention, while recognizing that technical issues

relating to a particular party's ESI may have to be resolved through discussions specific to that party.

8.    Nothing contained herein limits a Producing Party's right to conduct a review of documents, ESI or information (including metadata) for relevance, responsiveness and/or segregation of privileged and/or protected information before production.

9.    Nothing in this Protocol shall be interpreted to require disclosure of irrelevant information or relevant information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity.

10.    Unless otherwise agreed, documents and ESI will be produced on optical media (CD/DVD), on an external hard drive, via a secure FTP site, or similar electronic format as mutually agreed upon by the E-Discovery Liaisons.

**AND IT IS SO ORDERED.**

May 17, 2019
Charleston, South Carolina

_____
Hon. Richard M. Gergel
United States District Judge

11

# Attachment "B"

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| **IN RE: AQUEOUS FILM-FORMING FOAMS PRODUCTS LIABILITY LITIGATION** | MDL No. 2:18-mn-2873-RMG |
| | **Protective Order** |
| | **This Order relates to ALL CASES** |

To enable the flow of discovery material and adequately protect material that is entitled to be kept confidential, and to promote compliance with Judge Richard Gergel's Special Instructions and the District of South Carolina's Local Civil Rules, the parties jointly enter this Protective Order pursuant to Fed. R. Civ. P. 26(c).

**Purposes and Limitations.** The parties anticipate producing documents and information to each other that contain confidential, proprietary, or sensitive information. The parties are willing to provide these documents to each other for inspection and review under a protective order containing the hereinafter stated terms and conditions. By entering this Protective Order, the Court is not ordering that any confidential and/or proprietary information that is sought by any party in their requests for production and inspection is, or is not, subject to the disclosure and discovery process.

It is hereby ORDERED as follows:

**1.**       This Order shall apply to Documents, Information, and other tangible things exchanged by the parties to this action or by third parties in discovery in this matter as further set forth below. Nothing in this Order creates a presumption or implies that material or information designated by a party as "confidential" actually constitutes protected information under applicable law, and such

1

determination may be made at a later time by this Court.

2.    **Definitions.** As used in this Protective Order, these terms have the following meanings:

a.    **"Action"** refers to this consolidated multi-district litigation captioned *In re: Aqueous Film-Forming Foams Products Liability Litigation*, Civil Action No. 18-mn-2873.

b.    **"Producing Party" or "Designating Party"** is the party or non-party producing Documents or Information and/or designating Documents or Information as Confidential, Highly Confidential, or Export Control Information.

c.    **"Receiving Party"** is a party or non-party receiving or having access to Documents or Information.

d.    **"Challenging Party"** is the party that challenges a particular designation of Documents or Information as Confidential, Highly Confidential, or Export Control Information pursuant to Section 10 of this Protective Order.

e.    **"Confidential Information"** means Documents, Information, and any other material designated as Confidential in accordance with this Order unless (a) the party which designated the material or information withdraws the confidential designation, or (b) the Court has determined that the material or information does not constitute confidential material or information.

A party may only designate a Document or Information Confidential if it has a good-faith basis to believe that the Document or Information is, constitutes, or contains Information that is confidential under statute, rule, or other applicable law, including Documents, Information, or other tangible things that are confidential,

2

proprietary, or commercially sensitive business or financial information, trade secrets, information that is not publicly available, Confidential Health Information, or information that otherwise meets the standard for protection set forth in Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure. Notwithstanding the foregoing, a Producing Party may not designate as confidential any documents that have been made publicly available, including through unsealed court filings, public EPA dockets, and/or other similar means by which information was placed in the public domain.

      f.     **"Highly Confidential Information"** means Documents, Information, and any other material designated as highly confidential in accordance with this Order unless (a) the party which designated the material or information withdraws the highly confidential designation, or (b) the Court has determined that the material or information does not constitute highly confidential material or information.

      A party may only designate a Document or Information Highly Confidential if it has a good-faith basis to believe that (a) the Document or Information is, constitutes, or contains Information that is confidential under statute, rule, or other applicable law, including Documents, Information, or other tangible things that are confidential, proprietary, or commercially sensitive business or financial information, trade secrets, Confidential Health Information, or information that otherwise meets the standard for protection set forth in Rule 26(c) of the Federal Rules of Civil Procedure; and (b) (i) the Document or Information could provide its Competitor(s) with an advantage (economic) or (ii) the document, if released would cause harm to the interests of a governmental entity. If Document(s) and/or Information are not designated as "Highly Confidential," then they may be shown to a Competitor(s). Further, only Document(s) and/or Information

3

designated as "Highly Confidential" pursuant to section (b)(i) of this paragraph are not permitted to be shown to a Competitor(s).

g.     **"Export Control Information"** means Documents, Information, and any other material designated as export control in accordance with this Order unless (a) the party that designated the material or information withdraws the export control designation, or (b) the Court has determined that the material or information does not constitute export control material or information.

A party may only designate a Document or Information "Export Control Information" if it has a good-faith basis to believe that the Document or Information is subject to United States' export control law and regulations. The regulatory obligations with regard to such documents are specified, respectively, in the Export Administration Regulations ("EAR") at 15 C.F.R. Parts 730-772, and the International Traffic in Arms Regulations ("ITAR") at 22 C.F.R. Parts 120-130. Except as to documents that have already been produced in other litigation and are being re-produced in this litigation, when a Producing Party produces Document(s) that it believes to be subject to an Expert Control designation, the Producing Party will likewise simultaneously provide a description log to the Receiving Party that provides the basis(es) upon which the Document(s) is subject to a claim of ITAR and/or EAR and which precisely identifies such Document(s) bastes number.

h.     A **"Competitor"** shall mean any manufacturer of or manufacturer (included its affiliates) involved in the sale of fire suppression products including aqueous film-forming foam ("AFFF"), fluorosurfactants that may be used in the manufacture of AFFF, or hardware or systems (including system components) that may accompany or be used in conjunction with AFFF.

4

   **i.**  **"Documents"** includes all materials within the scope of Rule 34(a) of the Federal Rules of Civil Procedure.

   **j.**  **"Information"** includes all materials within the scope of Documents, exhibits, evidence or things used at trial, depositions or other proceedings; any testimony, whether given at trial or a deposition; and any other means of presenting, producing or revealing information.

 **3.**  **Access to Confidential Information.** All "Confidential Information" produced in discovery, if any, shall not be further disclosed, disseminated, or used for any purpose other than in connection with the preparation for trial and litigation of this Action, consistent with the restrictions on use of "Confidential Information" contained in this Order. Access to any Confidential Information shall be limited to:

   **a.**  Judges, court reporters, court personnel, videographers, and special masters at trial, hearings, arguments, depositions and any other judicial proceedings in this Action.

   **b.**  The parties and counsel of record for the parties in this Action, including the outside and in-house counsel of the parties, and the attorneys, secretaries, paralegals, assistants, and other employees in the same firm/company of such counsel, in all cases only to the extent reasonably necessary to render professional services in this Action. Where relevant, no Confidential Information may be disclosed to any class member other than the named Plaintiffs.

   **c.**  Messenger, copy, and other clerical services vendors not employed by a party or its counsel of record, only to the extent reasonably necessary to assist the parties and counsel of record for the parties in rendering professional services in this Action.

   **d.**  The insurers or indemnitors of the defendants or any agents retained by the

5

insurers or indemnitors including independent claims management personnel.

      **e.**    Subject to paragraph 5 below, witnesses during depositions, hearings and trial testimony in this Action, either during deposition or trial testimony or to the extent reasonably necessary to prepare such persons to testify, and counsel for such persons to the extent not included in Section 3(b)

      **f.**    Subject to paragraph 5 below, consultants or experts retained for the purpose of assisting counsel of record in this Action, including consulting and testifying experts, jury/trial consultants, and mock jurors or focus group members.

      **g.**    Subject to paragraph 5 below, third-party contractors retained for the purpose of organizing, filing, coding, converting, storing, or retrieving Documents or Information or maintaining database programs for handling Documents or Information for this Action.

      **h.**    Other persons who may be designated by written consent of the Producing Party or pursuant to Court order so long as said persons agree to be bound as set forth in this Order, including paragraph 5 herein.

    **4.**    **Access to Highly Confidential Information.**    All "Highly Confidential Information" produced in discovery, if any, shall not be further disclosed, disseminated, or used for any purpose other than in connection with the preparation for trial and litigation of this Action, consistent with the restrictions on use of "Highly Confidential Information" contained in this Order. Access to any Highly Confidential Information shall be limited to:

      **a.**    Judges, court reporters, court personnel, videographers, and special masters at trial, hearings, arguments, depositions and any other judicial proceedings in this Action.

      **b.**    Counsel of record for the parties in this Action, including the outside

counsel of the parties and the attorneys, secretaries, paralegals, assistants, and other employees in the same firm/company of such counsel, and the in-house counsel of the parties who do not directly advise on business issues and the secretaries, paralegals, assistants, and other employees of such counsel, litigation counsel for insurers and indemnitors handling this litigation, and for all governmental entities, counsel in the governmental entity's department of law or justice and the secretaries, paralegals, assistants and other employees of such department, in all cases only to the extent reasonably necessary to render professional services in this Action.

      **c.**      Subject to paragraph 5 below, personnel of a party necessary to assist with the litigation who agree to not disclose any information to other personnel and to use the information disclosed solely for the purpose of assisting with the litigation may have access to "Highly Confidential Information" dated prior to January 1, 2006, to the extent necessary to assist with the litigation.

      **d.**      Messenger, copy, and other clerical services vendors not employed by a party or its counsel of record, only to the extent reasonably necessary to assist the parties and counsel of record for the parties in rendering professional services in this Action.

      **e.**      Subject to paragraph 5 below, witnesses during depositions and trial testimony in this Action.

      **f.**      Subject to paragraph 5 below, persons noticed for depositions or designated as trial witnesses in this Action to the extent reasonably necessary to prepare such persons to testify.

      **g.**      Subject to paragraph 5 below, consultants or experts retained for the purpose of assisting counsel of record in this Action, including consulting and testifying

7

experts, jury/trial consultants, and mock jurors or focus group members.

        **h.**      Subject to paragraph 5 below, third-party contractors retained for the purpose of organizing, filing, coding, converting, storing, or retrieving Documents or Information or designing database programs for handling Documents or Information for this Action.

        **i.**      Other persons who may be designated by written consent of the Producing Party or pursuant to Court order so long as said persons agree to be bound as set forth in this Order, including paragraph 5 herein.

    **5.**      **Access to Export Control Information.**  All "Export Control Information" produced in discovery shall not be further disclosed, disseminated, or used for any purpose other than in connection with the preparation for trial and litigation of this Action, consistent with the restrictions on use of "Export Control Information" contained in this Protective Order and under applicable United States law.  Export Control Information shall not be disclosed to any individual who is not a U.S. Person or stored on cloud servers or any media physically located outside of the United States.  By entering into this Protective Order, the parties and their counsel hereby give their assurances that they will implement practices and controls to ensure that access to Export Control Information is restricted to "U.S. persons" in compliance with the International Traffic in Arms Regulations and Export Administration Regulations.

    **6.**      **Signing Exhibit A.**    Before disclosing Confidential or Highly Confidential Information to any person listed in paragraphs 3(e)-(h) or paragraphs 4(e)-(h), the party proposing such disclosure must provide a copy of this Protective Order to such person, who must sign the attached Exhibit A. That party must retain a signed copy on file for inspection by the Court. If the person to whom disclosure is contemplated refuses to sign Exhibit A and is a witness being deposed or compelled

8

to testify pursuant to a subpoena, notice, or other order of this Court, then the parties will work cooperatively to seek a ruling on the issue by the Court prior to the person's scheduled testimony. While awaiting a ruling on the issue by the Court, no one may disclose Confidential Information or Highly Confidential information to the person at issue.

7.     **Filing Confidential Information or Export Control Information or Highly Confidential Information with the Court.** Pursuant to Judge Richard Gergel's Special Instructions and the District of South Carolina's Local Civil Rules, the parties may seek to restrict public access to Confidential Information, Export Control Information and Highly Confidential Information contained in Documents filed with the Court. Any request to restrict access must comply with the requirements of the District of South Carolina's Local Civil Rules and Judge Richard Gergel's Special Instructions. The parties agree to redact Confidential Information,   Export Control Information and Highly Confidential Information from any Document filed with the Court; except that if the filing party seeks to have the Court review Confidential Information, Export Control Information or Highly Confidential Information contained within the Document, then the Document shall be filed under seal pursuant to the District of South Carolina's Local Civil Rules, with the portion of the Document that the filing party seeks to have the Court review remaining unredacted. Any Party may from time to time initiate a review any Document(s) or Information(s) filed under seal and to unseal for the public record any Document for(s) which a prior confidentiality designation has since been lifted since the time of the under seal filing.

8.     **Designating Information as Confidential, Highly Confidential, or Export Control Information.** The parties may only designate Documents Confidential, Highly Confidential and/or Export Control if they have a good-faith basis to believe that the Documents are Confidential. Highly Confidential and/or Export Control Information, as the case may be, under statute, rule, or other

applicable law and subject to paragraph 2 above.

With respect to documents that are produced in TIFF format, the designation of confidentiality shall be made by including the words "CONFIDENTIAL - SUBJECT TO AFFF MDL PROTECTIVE ORDER" or "HIGHLY CONFIDENTIAL, SUBJECT TO AFFF MDL PROTECTIVE ORDER" and/or "EXPORT CONTROL – SUBJECT TO AFFF MDL PROTECTIVE ORDER" in the document in a manner reasonably calculated to be observed by anyone who obtains possession of the electronic document. The addition of any designation pursuant to this Order shall not be deemed an alteration of the document. With respect to documents that are produced in native format, the designation of confidentiality shall be made by including the words "CONFIDENTIAL - SUBJECT TO AFFF MDL PROTECTIVE ORDER" or "HIGHLY CONFIDENTIAL – SUBJECT TO AFFF MDL PROTECTIVE ORDER" and/or "EXPORT CONTROL – SUBJECT TO AFFF MDL PROTECTIVE ORDER" on a cover sheet produced in TIFF format along with the native file and may include, at the Producing Party's discretion, the words "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" and/or "EXPORT CONTROL" in the file name of the native file as produced. If a party adds a designation to the file name for documents produced in Native Format pursuant to the Document Production Protocol entered in this litigation, then such additions will not be considered an alteration of the file.

To the extent that any Defendant reproduces documents from other litigation(s), all such documents clearly marked as being "Confidential" and subject to a protective order in such litigation will be deemed designated as "Confidential" in this Action; all such documents clearly marked "Export Control Information" will be deemed designated as "Export Control" in this Action; and all such documents clearly marked "Highly Confidential" will be deemed designated as "Highly Confidential" in this Action. Nothing in this Protective Order shall permit a party to designate any

10

portion of Documents or Information produced from other litigation(s) as "Confidential," "Export Control Information," or "Highly Confidential" or to reassert/assert a Confidential, Highly Confidential, or Export Control claim over such Documents or Information from other litigation(s) if:

    **a.**    The Documents or Information from the other litigation(s) were not already designated as either "Confidential," "Highly Confidential," or "Export Control" under the protective order in the other litigation(s);

    **b.**    The confidentiality or Export Control designation for such Documents or Information from other litigation(s) had been withdrawn by the prior Producing Party during the other litigation in which it was produced; or

    **c.**    A Court overseeing another litigation(s) in which such Documents or Information was/were originally produced overruled the confidentiality or Export Control designation for such Document or Information previously.

    **9.**    **Designating Deposition Transcripts as Confidential, Highly Confidential, or Export Control.** All depositions or portions of depositions taken in this action and any Documents, things, or exhibits used at those depositions may be designated as "Confidential" or "Highly Confidential" and/or "Export Control Information" pursuant to the terms of this Protective Order. To designate deposition exhibits or transcripts as Confidential or Highly Confidential and/or Export Control Information, a party must make a "line and page" designation either on the record at the deposition, or by written notice to the other parties within 21 calendar days of receipt of the transcript of the deposition from the court reporter . Unless otherwise agreed, depositions and Documents, things, or exhibits used at those depositions shall be treated as "Highly Confidential" during the 21-calendar-day period following receipt of the transcript from the court reporter. The failure of a party to make

the above-required designation either on the record at the deposition or in writing within 21 days of its receipt of the deposition transcript shall result in the transcript and exhibits not being deemed either "Confidential," "Highly Confidential", or "Export Control Information," subject to paragraph 10 below.

10.     **Contesting Designation of Documents.** If any party believes that any Document or Information designated Confidential, Highly Confidential and/or Export Control Information does not constitute Confidential, Highly Confidential and/or Export Control Information, then that Challenging Party may challenge that designation by notifying the Designating Party in writing, identifying the Documents or Information contested, and articulating the reason(s) for challenging the designation. The parties shall promptly confer in good faith and use their best efforts to resolve any challenge to a designation. If the parties are unable to resolve the dispute within fourteen (14) days of the notice to the Designating Party of such challenge, or the Designating Party does not respond within such time, then the Challenging Party may request resolution of the dispute by the Court. The Designating Party shall have the burden of showing that the Documents or Information are Confidential, or Highly Confidential, or Export Control Information.

11.     **Inadvertent Failure to Designate Documents, Information or Things.** Any party who inadvertently fails to identify Documents as Confidential or Highly Confidential and/or Export Control Information shall have ten (10) business days from the discovery of its oversight to correct its failure. Such failure shall be corrected by providing written notice of the error and substituted copies of the inadvertently produced Documents with the appropriate confidentiality and/or Export Control Information designation. Any party receiving such inadvertently unmarked Documents shall make reasonable efforts to retrieve the original versions of such Documents from any person to whom they were provided that would not be entitled to receive the Documents or Information under this Protective

12

Order; provided, however, that any party who had received such inadvertently unmarked Documents shall have no liability for having received or shared any such Documents or Information contained within such documents prior to receipt of their proper designation as Confidential, Highly Confidential, or Export Control Information as provided herein, and subject to the Receiving Party's right to challenge any such Confidential, Highly Confidential or Export Control Information designation under the terms of this Protective Order. Such inadvertent or unintentional disclosure will not on its own be deemed a waiver in whole or in part of the Producing Party's claim of Confidentiality or Export Control status, either as to specific Documents or Information disclosed or on the same or related subject matter.   Within a reasonable time of receipt of such notice, the Receiving Parties will mark the Documents and all copies "Confidential" or "Highly Confidential" and/or "Export Control," as the case may be, and treat the document as Confidential Information or Highly Confidential and/or Export Control Information, as they case may be, under the terms of this Order, and subject to the Receiving Parties' right to challenge any such designation under the terms of this Protective Order.   Notice of inadvertent or erroneous disclosure will be deemed to apply to all copies of the Document or Information disclosed.

       **12.**       **No Waiver of Any Privilege Upon Inadvertent Production.** The parties have agreed that, in discovery in this lawsuit, they do not intend to disclose information subject to a claim of attorney-client privilege or attorney work product protection. Inadvertent or mistaken production of documents or electronically stored information ("ESI") (collectively "Inadvertently Produced Documents") subject to work-product or attorney-client privilege, shall not constitute a waiver of the privilege, provided that the Producing Party shall notify the Receiving Party in writing as set forth herein. In the event that a party inadvertently or mistakenly produces Inadvertently Produced Documents, the Producing Party shall, within fourteen (14) days of discovery of the inadvertent

13

mistake or disclosure, notify the other party in writing of the inadvertent or mistaken disclosure including a description of the Information that was produced (including the format of the production – e.g. paper, ESI) and the date(s) the Information was produced. The Producing Party may, in the notice, request a "clawback" of Inadvertently Produced Documents. A Receiving Party is under a good faith obligation to promptly alert the Producing Party if Information that is produced, disclosed, exhibited, or communicated by a Producing Party appears to be privileged or protected either on its face or in light of facts known to the Receiving Party. If the Producing Party claims that only a portion of a document, electronically stored information or tangible thing produced constitutes Inadvertently Produced Documents, the Producing Party shall provide a new copy of the Information with the allegedly privileged information or protected portions redacted. The party receiving such clawback notice shall immediately and diligently act to retrieve the Inadvertently Produced Documents, and all copies, including any loaded to databases, and return them to the Producing Party or destroy them as agreed between the parties. All notes or other work product of the Receiving Party reflecting the contents of such materials shall be destroyed and not used. No use shall be made of such Inadvertently Produced Documents during depositions or at trial, nor shall they be disclosed to anyone who was not given access to them prior to the request to return or destroy them unless otherwise ordered by the Court. The Receiving Party may, after receipt of the Producing Party's notice of the inadvertent or mistaken production, move the Court to dispute the claim of privilege. If the Receiving Party elects to file a motion, the Receiving Party may retain possession of the Inadvertently Produced Documents as well as any notes or other product of the Receiving Party reflecting the contents of such materials pending the resolution by the Court of the motion but shall segregate and not use them or further disclose them to any person pending resolution of the motion. If the Receiving Party's motion is denied, the Receiving Party shall promptly comply with the immediately preceding provisions of this

14

paragraph.

13.     **Legal Process for Designated Information.**    Subject to paragraph 15 below, if Confidential Information, Highly Confidential Information and/or Export Control Information of a Producing Party is sought from a Receiving Party by a discovery request, subpoena, order, or other form of legal process from or by any person, court, or administrative or legislative body, then the party receiving the discovery request, subpoena, order, or other form of legal process must not, except to the extent required by applicable law, provide or otherwise disclose such documents or information until 30 days after giving counsel for the Producing Party notice in writing, accompanied by a copy of the discovery request, subpoena, order or other form of legal process. If the Producing Party objects to disclosure, then the party to whom the discovery request, subpoena, order or other form of legal process is directed agrees not to make any disclosure in response to it until the resolution of the objection by the appropriate court.

14.     **Storage and Transmittal.**    To avoid security risks inherent in certain current technologies and to facilitate compliance with the terms of this Protective Order, all persons with access to Confidential Information, Highly Confidential Information, or Export Control Information are prohibited from storing or transmitting any Confidential Information, Highly Confidential Information, or Export Control Information in or via any online service (other than counsel or a parties' own firm/corporate email system) that is managed or maintained by any third party other than a litigation support service provider that uses (i) a secure document hosting facility, (ii) encrypted web-enabled software, (iii) secure sharing and collaboration among only authorized users, and (iv) does not employ public cloud computing services. Notwithstanding the foregoing provisions of this paragraph, the parties may temporarily store and/or transmit files with Confidential Information, Highly Confidential Information, or Export Control Information to persons authorized to receive Confidential

15

Information, Highly Confidential Information, or Export Control Information as email attachments, via secure FTP, Dropbox and/or Box.com, and/or by way of a third-party vendor that the parties agree may be used for encrypted and secure, domestic transmissions, provided that for any such transmissions the parties take all reasonable steps to protect Confidential Information, Highly Confidential Information, or Export Control Information from being disclosed to unauthorized third parties. The use of a third-party vendor may include short-term, incidental storage of files for the sole purpose of transmitting them, provided that the files are promptly deleted upon transmission. The parties may agree in writing to make mutual accommodations under this paragraph.

15.     **Use of Designated Information.**     Confidential Information, Highly Confidential Information and Export Control Information shall be maintained in confidence by counsel for the parties and by the parties themselves and may be used only for the purpose of this Action, and no other purpose. Confidential Information, Highly Confidential Information, and Export Control Information must not be used for any business, competitive, legal, or any other purpose unrelated to this Action without the express written consent of counsel for Producing Party or by order of the Court. Nothing in this Protective Order limits any party to this action from disclosing or otherwise using:

  **a.** its own Documents or Information produced or disclosed in this action;

  **b.** any Documents or Information produced or disclosed in this action not subject to this Protective Order and not designated as "Confidential" or "Highly Confidential" and/or "Export Control"; or

  **c.** Documents or Information that are not otherwise Confidential, Highly Confidential or Export Control that a party already possessed or that it obtained by proper means from other sources.

16

2:18-mn-02873-RMG    Date Filed 05/20/19    Entry Number 99    Page 31 of 37

16.    **Confidential Health Information**: The Parties desire to ensure the privacy of patient/insured/member medical records, patient/insured/member claims information, and other information that the Parties have determined might contain sensitive personal health information ("Confidential Health Information"). Confidential Health Information is intended to encompass any patient health information protected by any state or federal law, including, but not limited to, "Protected Health Information," as defined below, and the Parties agree that any Confidential Health Information whether contained in documents produced in this litigation or otherwise shall be deemed "Confidential" and, as such, subject to the terms of this Protective Order.

**Protected Health Information.** Protected Health Information, as used herein, has the same scope and definition as set forth in 45 C.F.R. §160.103. Without limiting the generality of the foregoing, Protected Health Information includes, but is not limited to, health information, including demographic information, relating to: the past, present, or future physical or mental health or condition of an individual; the provision of health care to an individual; or the past, present, or future payment for the provision of health care to an individual, which identifies or reasonably could be expected to identify the individual. It also includes, but is not limited to, medical bills, claims forms, charges sheets, medical records, medical charts, test results, notes, dictation, invoices, itemized billing statements, remittance advice forms, explanation of benefits, checks, notices, and requests, and includes all notes, summaries, compilations, extracts, abstracts or oral communications that are based on or derived from Protected Health Information, regardless of form or format, to the extent that they identify or reasonably could be expected to identify an individual. Protected Health Information also includes information that contains the following identifiers of a patient/insured/member or of a relative, employer, or household member of a patient/insured/member:

      i.  names;

17

ii.   all geographic subdivisions smaller than a State, including street address, city, county, precinct, and zip code;

iii.   all elements of dates (except year) for dates directly related to an individual, including birth date, admission date, discharge date, age to a level of detail greater than in years, and date of death;

iv.   telephone numbers;

v.   fax numbers;

vi.   electronic mail addresses;

vii.   social security numbers;

viii.   medical record numbers;

ix.   health plan beneficiary numbers;

x.   account numbers;

xi.   certificate/license numbers;

xii.   vehicle identifiers and serial numbers, including license plate numbers;

xiii.   device identifiers and serial numbers;

xiv.   web universal resource locators ("URLs");

xv.   internet protocol ("IP") address numbers;

xvi.   biometric identifiers, including finger and voice prints;

xvii.   full face photographic images and any comparable images;

xviii.   any other unique identifying number, characteristic, or code;

xix.   any other information that the Producing Party knows could be used alone or in combination with other information to identify an individual who is subject of the information; and

xx.   Family health or social information.

"Confidential Health Information" does not include any document or information in which the Producing Party has redacted the identifiers listed above and does not have actual knowledge that the information could be used alone or in combination with other information to identify an individual who is the subject of the information. A Producing Party may, but is not required to, perform such redactions before producing documents that originally contained "Confidential Health Information," but a Producing Party may not redact information that is relevant to any claim or defense in the Litigation.

17.    **Personally Identifiable Information**: The Parties also seek to ensure that any person who receives and stores Personally Identifiable Information in connection with this Proceeding will develop, implement, maintain, and use appropriate administrative, technical, and physical safeguards to preserve the privacy, integrity, and confidentiality of any Personally Identifiable Information, and to prevent unpermitted use or disclosure of any Personally Identifiable Information they may receive from any person in connection with this Proceeding. Personally Identifiable Information includes information that contains the following identifiers of an individual:

i.      social security numbers;

ii.     account numbers;

iii.    certificate/license numbers;

iv.     vehicle identifiers and serial numbers, including license plate numbers;

v.      device identifiers and serial numbers;

vi.     medical record numbers;

vii.    health plan beneficiary numbers;

viii.   web universal resource locators ("URLs");

ix.     internet protocol ("IP") address numbers;

x.      biometric identifiers, including finger and voice prints;

19

xi.    full face photographic images and any comparable images; and

xii.    any other unique identifying number, characteristic, or code.

Personally Identifiable Information concerning a party or third-party shall be designated as "Confidential."

**18.**    <u>**Designated Information Produced by a Non-Party.**</u>    Any non-party who may be called upon to make discovery herein or provide deposition or other testimony pursuant to subpoena or other formal or informal discovery device is entitled to avail itself of the provisions and protections of this Protective Order. All material designated by the non-party as Confidential Information or Highly Confidential Information and/or Export Control Information will be treated in the same manner as any Confidential Information or Highly Confidential Information and/or Export Control Information (as the case may be) produced by the parties.

**19.**    <u>**Non-Termination.**</u>    The duty to treat Confidential Information, Highly Confidential Information, and Export Control Information as set forth in this Protective Order survives the completion of this case. At the conclusion of this Action by settlement, jury verdict, judgment order, or otherwise, each party so requested must either return all Confidential Information, Highly Confidential Information and Export Control Information to counsel for the party that produced it; or must destroy it. The return or destruction of Confidential Information, Highly Confidential Information and Export Control Information under this paragraph will include, without limitation, all copies and duplicates thereof. The parties will certify, within 90 days of receipt of a written request for certification, or such other time frame agreed among the parties, that all Confidential Information, Highly Confidential Information, and Export Control Information required to be returned or destroyed has been so returned or destroyed. Unless otherwise ordered by the Court, this Paragraph does not apply to (a) copies of pleadings or other papers that have been filed with the Court and that contain Confidential Information or Highly Confidential Information and/or Export Control Information; (b)

20

their work product; (c) official deposition, trial or other Court transcripts and exhibits thereto. The terms and provisions of this Order will continue to apply to any such materials retained by counsel.

20.     **Non-Waiver of Objections.**  Neither this Protective Order nor any of the provisions described herein is a waiver of any party's right to object to the admissibility or discoverability of any Documents or Information; or to seek further protection from the Court before producing Documents or Information that any party believes may not be adequately protected by the provisions of this Protective Order, or to seek leave to refuse production of such Documents or Information.

21.     **Modification Permitted.** This Protective Order may be modified at any time by the Court on its own motion or, for good cause shown, on motion of a party or non-party or by agreement of the Parties with the Court's approval.

  **AND IT IS SO ORDERED.**


May 17, 2019

Charleston, South Carolina

  Hon. Richard M. Gergel

  United States District Judge

21

# UNITED STATES DISTRICT COURT

# DISTRICT OF SOUTH CAROLINA

## EXHIBIT A

### Acknowledgment and Agreement To Be Bound by Protective Order

_____declares that:

I reside at_____.  I am currently  employed

by_____, located at_____,

and my current job title is

_____.

I have read and understand the terms of the Protective Order (Dkt. ) entered in this  action.
I understand and agree to comply with and be bound by the provisions of the Protective Order. I
understand that any violation of the Protective Order may subject me to sanctions by the Court.

I will not divulge any information, documents, or copies of Confidential Information,
Highly Confidential Information, or Export Control Information obtained pursuant to such
Protective Order, or the contents of such documents, to any person other than those specifically
authorized by the Protective Order. I will not copy or use such information or documents except
for the purposes of this action and pursuant to the terms of the Protective Order.

As soon as practical, but no later than 90 days after final termination of this action, I will
return to the attorney from whom I have received them any documents in my possession that are
Confidential Information, Highly Confidential Information, or Export Control Information and all
copies, excerpts, summaries, notes, digests, abstracts, and indices relating to such documents.

1

I submit myself to the jurisdiction of the above Court for the purpose of enforcing or otherwise providing relief relating to the Protective Order.

I declare under penalty of perjury that the foregoing is true and correct.

_____          _____
Signature                                Date