UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| IN RE: AQUEOUS FILM-FORMING FOAM PRODUCTS LIABILITY LITIGATION | ) ) ) ) ) ) ) ) ) | MDL No. 2:18-mn-2873-RMG<br><br>This document relates to:<br><br>*City of Camden, et al. v. 3M Company*<br>Case No. 2:23-cv-03147-RMG |

### OBJECTION OF THE CITY OF NEWBURGH

The City of Newburgh, New York ("City"), by its counsel Knauf Shaw, LLP, submits the following objections to the proposed settlement agreement as amended ("3M Agreement") between Defendant 3M and public water providers in the above-captioned action pursuant to F.R.C.P. 23(e)(5). The Affidavit of Amy K. Kendall in support of these Objections, dated November 11, 2023, is attached as Exhibit 1. The City objects to the settlement because it is not fair, reasonable or adequate.

The City is an active public water system in the United States providing drinking water to approximately 29,000 people in the City of Newburgh, New York. The City discovered PFAS in its former, primary drinking water source in 2016 and brought an action in the Southern District of New York in 2018 against 3M and many others, now pending in this AFFF MDL (2:18-cv-3358).

**1. The Release in Section 11 ("Release") is Overly Broad.**

    **A. The Release Covers All Known and Unknown PFAS Chemicals.**

The 3M Agreement at ¶2.48 defines "PFAS" as "any per- or poly-fluoroalkyl substance that contains at least one fully fluorinated methyl or methylene carbon atom (without any hydrogen, chlorine, bromine, or iodine atom attached to it)." The Release is framed as relating to all current or

1

future Claims related to PFAS. There are thousands of known PFAS compounds, but only a few are reasonably understood. Compensation under the 3M Agreement is based primarily on PFOS and PFOA, and possibly one other PFAS. The Release would relieve defendants of *all* liability for *all* PFAS compounds, when there are not even available, approved testing methods for many of them, and the impacts of these chemicals on humans are barely understood. Upon information and belief, 3M manufactured PFAS compounds other than PFOS and PFOA which could be equally harmful and costly to remediate. The 3M Agreement is not fair, reasonable or adequate as it is asking the class participants to release 3M from future unknown liability for thousands of PFAS compounds that have not been effectively studied and understood based upon inadequate compensation for only a limited subset of PFAS compounds which have known treatment costs.

**B. The Release Includes Personal Injury Claims.**

It is unfair and unreasonable to require the Class Members to release claims arising from personal injury actions. *See generally* 3M Settlement ¶11.1. Personal injury claims relating to PFAS in drinking water fit within "any Claim that may have arisen or may arise at any time in the future out of, relates to, or involves PFAS that has entered or may reasonably be expected to enter Drinking Water or any Releasing Party's Public Water System…." 3M Agreement ¶11.1.1.

No water providers have alleged or could allege personal-injury claims in litigation against 3M. But the City has been sued by individuals alleging personal injuries related to PFAS in the City's drinking water in two separate actions which are also pending in this MDL, *Bermo, et al. v. 3M*, 2:18-cv-03522-RMG, and *Hebrank v. City of Newburgh,* 2:18-cv-2219-RMG.[1] The City denies liability for the claims in these actions, and further denies that the claims are viable. The

---

[1] While counsel has attempted to raise this issue before, in order to discharge any potential obligation under Rule 8.3 of the New York Rules of Professional Conduct, counsel advises this tribunal of a conflict of interest between Class Counsel Paul Napoli's representation of the class of "public water suppliers," including the City of Newburgh, and his representation of personal injury plaintiffs suing the City of Newburgh in the above-referenced actions which may affect the terms of the 3M Agreement as described herein.

City filed a third-party complaint against 3M in the *Hebrank* litigation seeking, among other things, contribution and indemnification for any amounts recovered by the *Hebrank* plaintiffs. By signing the 3M Agreement as it is currently written, the City would have to release its claims against 3M in those personal injury actions. This is fundamentally unfair because the 3M Agreement is purportedly limited to Drinking Water Claims.

The Court has recognized that the claims made by water providers are important and significantly different from those alleging personal injury, such that the Court ordered the claims of water providers proceed through discovery and to a bellwether trial first (though the trial did not proceed due to the settlements). Water providers, including the City, are facing considerable liability while bearing no fault. If they participate in a settlement including the current release language, they would have no contribution recourse against 3M, a predominant tortfeasor. *See* AFFF MDL FAQs at 3, https://afff-mdl.com/wp-content/uploads/PFAS-FAQ.pdf (last accessed Nov. 10, 2023) (3M responsible for more than 70% of PFAS liabilities).

For example, if the City participates in the 3M Agreement as the release language is currently written, it would not be able to recover from 3M for amounts that may be awarded to personal injury plaintiffs in existing cases in this MDL. The calculations of allocation amounts set forth in the 3M Agreement are predicated on the operation and maintenance of treatment systems—the drinking water system-- not potential damages associated with personal injury claims. *See generally* 3M Agreement Exhibit Q. Thus there is no identical factual predicate between the release of the water provider's Drinking Water claims and claims for indemnification for personal injury claims.

**C. Clause (ii) of Paragraph 11.1.1 of the 3M Agreement Is Overly Broad.**

Clause (ii) of Paragraph 11.1.1 releases claims that arise out of, relate to, or involve "the development, manufacture, formulation, distribution, sale, transportation, storage, loading,

3

mixing, application, or use of PFAS or any product (including AFFF) manufactured with or containing PFAS (to the extent such Claim relates to, arises out of, or involves PFAS)." 3M is a developer, manufacturer, formulator, distributor, and seller of PFAS. Exposure to and remediation of PFAS results from 3M's activities set out in Clause (ii) and therefore any claim against 3M will be released. This broad release extends impermissibly beyond the scope of alleged claims, which are limited to PFAS in Drinking Water and Public Water Systems.

### D. The Phrase "not related in any way" Contained in Paragraph 11.1.2.1(i) Is Overly Broad and Makes the Exemptions in Paragraph 11.1.2 Essentially Meaningless.

The City of Newburgh brought its actions as: 1) the owner of real property in the Towns of New Windsor and Newburgh containing the Washington Lake Reservoir ("Washington Lake"), the former primary water supply for the City, portions of the City's drinking water reservoir watershed, and other parts of the City's public water supply and distribution system; 2) a user of waters that flow through the City's watershed; and 3) the operator of the public water supply system for City residents, businesses and other water users.

Paragraph 11.1.1 of the 3M Agreement states that the City would have to release "any Claim that may have arisen or may arise at any time in the future out of, relates to, or involves PFAS that has entered or may reasonably be expected to enter Drinking Water or any Releasing Party's Public Water System...." Paragraph 1.1.2 states that the above paragraph does not apply to a Class Member's Claim "related to remediation, testing, monitoring, or treatment of real property to remove or remediate PFAS where (i) the Class Member owns or possesses real property and has a legal responsibility to remove contamination from or remediate contamination of such real property" and "such real property is *separate from and not related in any way* to the Class Member's Public Water System...."

The Recitals for the 3M Agreement reference the Safe Drinking Water Act ("SDWA"), 42 U.S.C. §§ 300f-300j-27 (¶1.1), and state that the 3M Agreement is intended to address Public Water

4

Systems' ("PWS") Claims regarding alleged PFAS-related harm to Drinking Water, "including [PWS's] potential costs of monitoring, treating or remediating PFAS *in Drinking Water*" (emphasis added). 3M Agreement, ¶1.2. The Agreement's definition of "Public Water System" found at ¶2.55 of the Agreement mirrors the definition of that term in the SDWA. The SDWA distinguishes between the "public water system" and the "source water." *See, e.g.* 42 U.S.C. §300i-3(1). Similarly, the Agreement distinguishes between "Public Water System" and "Water Source." Compare 3M Agreement ¶¶2.55 and 2.82.

For the City, its former Water Source, Washington Lake, is real property that is contaminated. It is not just the water in the lake that is contaminated—water which may never again become Drinking Water if the sources of the PFAS contamination are not removed and remediated. The sediment at the bottom of the lake is contaminated and the contaminants there can continue to move in to and contaminate the water. Washington Lake is "separate from" the City's Public Water System, because it is a "Water Source" but cannot be said to be "not related in any way" to the City's Public Water System. Similarly, property owned by the City in the City's watershed is "separate from" the City's Public Water System, but no property in the watershed meets the requirement of being "not related in any way" to the City's Public Water System. Paragraph 11.1.2.1(i) references an airport or fire training facility as being "not related in any way," but that ignores how groundwater and surface water flow and how PFAS contamination is spread. The discharge of PFAS-containing AFFF at airports and fire training facilities resulted in surface, stormwater and groundwater contamination that caused the contamination of the City's property and its former water supply, as well as the contamination of other water supplies. It probably cannot be said that airports and fire training facilities are "not in any way related" to the City's or other water suppliers' public water systems. The fact that they are intimately connected is the reason PFAS contamination is so widespread. This overly broad language carries with it the

5

potential to extinguish all of the Class Members' claims against 3M related to damage to real property.

### E. The Phrase "separate and not related in any way" Contained in Paragraph 11.1.2.2(ii) is Overly Broad.

Paragraph 11.1.2.2 of the 3M Agreement purports to exempt claims related to a Class Member's stormwater or wastewater facility, but clause (ii) conditions this exemption on the wastewater facility being "separate from and not in any way related to the Class Member's Public Water System or Water Sources." The City of Newburgh operates a wastewater treatment facility. Much of the water going into the wastewater treatment facility started in the City's Water Source and moved through its Public Water System as those terms are defined in the 3M Agreement. Additionally, to operate a Public Water System, filters, including those that become contaminated with PFAS, have to be flushed and at least some of the flushed water goes to the wastewater treatment facility. This is likely the case for other Class Members as well. Therefore, it probably cannot be said that a wastewater facility is "separate from and not in any way related" to the Public Water System or Water Sources. This again ignores how water flows. The condition in subparagraph (ii) effectively nullifies this exception. The Release is therefore not narrowly tailored to claims for Public Water Systems and Drinking Water, and therefore is not fair, reasonable or adequate.

## 2. The Claims-Over Provision Is Ambiguous and Potentially Overbroad.

Paragraph 11.6.1.2 uses the term "non-party." The City of Newburgh, like many other eligible class members, brought claims against government entities, including the federal government, state government and public authorities. These are all non-parties in this class action. Paragraph 11.6.2 uses the term "non-Released Party." This is not defined in the 3M Agreement, but presumably means a Party that is not a "Released Party." "Parties" is defined as 3M, Class

6

Representatives and Class Members. It is not clear what "Parties" are not either Released or Releasing for the purpose of the 3M Agreement such that they are "non-Released Parties." More clarity is required in this Claims-Over section.

Another ambiguity is how the responsibility of 3M in any Claim-Over would be offset. Section 11 references "applicable law" in multiple places. While under Paragraph 13.16 the 3M Agreement is to be interpreted under South Carolina law, in New York the effect of a release given to a joint tortfeasor is determined by New York General Obligations Law §15-108.

While Paragraph 11.6.5 was amended to state that the Claim-Over protections do not apply to Claims brought by a State, there is no mention of the federal government, or any public authority. It is fundamentally unfair and unreasonable to require water providers to protect 3M from claims by the federal government or other public authorities. Given the overly broad Release that implicates far more than the Public Water System or Drinking Water, as described above, it is entirely possible that the 3M Agreement would effectively insulate 3M from claims by the federal government or public authorities.

## CONCLUSION

For these reasons, the City of Newburgh requests that the Court reject the 3M Agreement.

Dated: November 11, 2023

*Amy K. Kendall*
Amy K. Kendall, Esq.
NY Reg. #2932317
Knauf Shaw LLP
2600 Innovation Square
100 S. Clinton Avenue
Rochester, NY 14604
Telephone: (585) 546-8430
Fax: (585) 546-4324
Email: akendall@nyenvlaw.com

## DECLARATION

I declare under penalty of perjury that I have been legally authorized to file the foregoing objections on behalf of the City of Newburgh and that the foregoing is true and correct, except as to those statements alleged upon information and belief, and those statements I believe to be true and correct.

*Amy K. Kendall*
Amy K. Kendall, Esq.

## CERTIFICATE OF SERVICE

      I hereby certify that on November 11, 2023, the foregoing document was filed via CM/ECF and by enclosing a copy of the same in a first-class, postage paid envelope addressed to the parties below and placing the envelope in an official depository of the U.S. Postal Service at 1335 Jefferson Road, Rochester, NY 14692.

**Clerk of the Court:**

      Clerk, United States District Court for the
      District of South Carolina
      85 Broad Street
      Charleston, SC 29401

**Counsel for 3M:**

Kevin H. Rhodes
Executive Vice President and Chief
Legal Affairs Officer
Legal Affairs Department
3M Company
3M Center, 220-9E-01
St. Paul, MN 55144-1000

Richard F. Bulger
Mayer Brown LLP
71 South Wacker Drive
Chicago, Illinois 60606

Thomas J. Perrelli
Jenner & Block LLP
1099 New York Avenue, N.W.,
Suite 900
Washington, DC 20001-4412

**Class Counsel:**

Scott Summy
Baron & Budd, P.C.
3102 Oak Lawn Ave., Ste. 1100
Dallas, Texas 75219

Elizabeth A. Fegan
Fegan Scott LLC
150 S. Wacker Drive, 24th Floor
Chicago, IL 60606

Michael A. London
Douglas & London
59 Maiden Lane, 6th Floor
New York, NY 10038

Joseph F. Rice
Motley Rice LLC
28 Bridgeside Blvd.
Mt. Pleasant, SC 2946

Paul J. Napoli
Napoli Shkolnik
1302 Av. Ponce de Leon
San Juan, Puerto Rico 00907

      /s/ *Amy K. Kendall*

9