**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | |
|---|---|
| **IN RE: AQUEOUS FILM-FORMING FOAMS PRODUCTS LIABILITY LITIGATION** | MDL No.  2:18-mn-2873-RMG<br><br>**SUPPLEMENTAL JOINT STATUS REPORT FOR**<br>**June 5, 2020 STATUS CONFERENCE**<br><br>**This Document relates to**<br>**ALL CASES** |

Pursuant to this Court's Order dated June 1, 2020 [Dkt 623], Co-lead counsel for Plaintiffs and the DuPont Related Entity Defendants provide this joint status report in advance of the telephonic status conference scheduled for June 5, 2020.

**Plaintiffs' Position:**

There are two categories of documents that are unquestionably in dispute:  (a) Conveyance Instruments and Agreements to transfer PFAS or AFFF-related assets; and (ii) Ancillary Agreements to the 2019 DowDuPont Separation Agreement.  Notwithstanding, Plaintiffs do not have confidence that all documents responsive to the AFFF Liability Notices have been produced, particularly in light of the obstruction Plaintiffs have faced over the last several months in connection with narrowly-tailored document requests.  Plaintiffs therefore continue to respectfully request that the Court grant the Motion to Compel in its entirety.  In addition, the contention that Plaintiffs have "shifted demands" throughout the discovery negotiations is simply false.  The DuPont Related Entities have been on notice of exactly what Plaintiffs are seeking since the Notices were served in February.

*A)  Conveyance Instruments and Agreements to Transfer PFAS or AFFF-Related Assets*
Requests for Production Nos. 3 and 5 seek, among other things, agreements,
related to each of the DuPont-Related sale or transfer of assets related to PFAS, AFFF, AFFF Products, or Fluorosurfactant Products.  The DuPont-Related Entities claim that, other than a handful of documents relating to Old DuPont's 2002 acquisition of Atofina, there are no conveyance instruments related to the transfer of assets associated with the use or manufacture of AFFF/PFAS.  This representation simply cannot be accurate.  Documents produced thus far demonstrate that Old DuPont and Chemours (or their subsidiaries and affiliates) executed many conveyance instruments to effectuate the transfer of AFFF/PFAS related assets.

In connection with the spinoff of Chemours, Old DuPont conducted an "Internal Reorganization" by which it transferred the assets comprising the Performance Chemicals business to Chemours prior to the spinoff.  The Chemours Separation Agreement specifically defines this Internal Reorganization as "the allocation and transfer or assignment of assets and liabilities,

*including by means of the Conveyance and Assumption Instruments* resulting in … the Chemours Group owning and operating the Chemours Business" (emphasis added).  Likewise, Chemours produced a "Real Property Conveyance Agreement," that specifically requires Old DuPont and Chemours to "execute, acknowledge and deliver, or cause the appropriate parties to execute, acknowledge and deliver, *all Conveyancing and Assumption Instruments* as may be reasonably requested by either party to effectuate the transfer" of 42 pieces of real estate related to the Performance Chemicals Business.  That Agreement contains form conveyance instruments, including a form Assignment and Assumption of Leases, and form deeds.  Yet the DuPont-Related Entities have not produced a single one of these instruments that was actually executed.  The PEC therefore seeks all conveyance instruments that effectuated the transfer of assets from Old DuPont (or its subsidiaries or affiliates) to Chemours (or its subsidiaries or affiliates).  These documents should be in possession of Old DuPont, Chemours and/or Chemours FC.

Today, on June 3, the DuPont-Related Entities agreed—for the first time—to produce certain real estate conveyance instruments.  In response, Plaintiffs explained that the AFFF Liability Notices call for all "conveyance instruments" in connection with any transfer of any assets that resulted in the Performance Chemicals segment being held by Chemours, and again pointed to the reference to these documents in the Chemours Separation Agreement.  (*See* RFP No. 5).  In an effort to obviate this issue Plaintiffs asked the DuPont-Related Entities to confirm that if other conveyance instruments existed they would be produced.  The DuPont Related Entities refused to do so.  Plaintiffs have not waived these request and have been consistent in their position.

### B)  Ancillary Agreements to the DowDuPont Separation Agreement

With regard to the Ancillary Agreements to the DowDuPont Separation Agreement, New DuPont, and Corteva admit there are "dozens and dozens" of agreements that they have not reviewed for responsiveness; yet Defendants have refused to produce these documents. Given the breadth and complexity of the DowDuPont Separation Agreement, which effectuated the separation of Corteva and Dow, Inc. from New DuPont, Plaintiffs should be entitled to conduct their own review of Ancillary Agreements that may concern assets or liabilities related to PFAS, AFFF, AFFF Products, or Fluorosurfactant Products.

## Old DuPont's, Corteva's, and New DuPont's Position:

Over the last few months, the DuPont entities have faced shifting demands from the Plaintiffs. Every time the DuPont entities offered a concession, compromise, or clarification to resolve Plaintiffs' concerns, Plaintiffs would raise new issues. This filing is yet another example.

### A)     The DuPont Entities Have Already Produced the Responsive Conveyance Instruments

The Plaintiffs' document request for "conveyance instruments" was "related to AFFF, AFFF Products, Fluorosurfactant Products or PFAS." That makes sense given that this MDL is about AFFF and PFAS in AFFF. The DuPont entities already produced the conveyance instruments from the transactions related to AFFF or PFAS, including documents related to the acquisition of Atofina in 2002 and to the spin-off of Chemours in 2015.

Now—despite no mention of them in their motion to compel—the PEC seems to be requesting real estate instruments between Old DuPont and Chemours, like an Assignment and Assumption of Leases and Deeds. Those types of documents do not relate to AFFF or PFAS, let

1

**Error! Unknown document property name.**

alone whether any company assumed liability for AFFF or PFAS. But once again, to try to resolve these issues, Old DuPont offered to produce the Assignment and Assumption of Leases and Deeds with Chemours for operational sites within the United States. But Plaintiffs continue to press for "all conveyance instruments," including documents that are not responsive to the document requests or relevant to the issues. For example, conveyance instruments that transferred intellectual property assets from Old DuPont to Chemours have nothing to do with these AFFF cases.

*B) The DuPont Entities Have Already Produced Nearly All the Ancillary Agreements Plaintiffs Requested Except for Two Sub-categories Where They Produced Exemplars*

The parties already produced over a dozen Ancillary Agreements in five sub-categories. The final two sub-categories are Site Services Agreements and Ground Leases from the DowDuPont separation. These sub-categories include dozens of repetitive form contracts with irrelevant, third-party confidential information, like detailed site schematics. Reviewing any one of these form agreements shows that there is nothing relevant to AFFF or PFAS. In addition, the agreements involve Dow Inc., which is not named as a defendant in any case in this MDL.

Trying to balance the PEC's request with the third-party confidentiality concerns, the DuPont entities produced an exemplar Site Services Agreement and Ground Lease. The DuPont entities offered to discuss producing the remaining documents if the PEC could point to anything relevant in the exemplars. The DuPont entities produced these exemplars weeks ago, but the PEC has still never provided an explanation of their relevance. Without that explanation, the burden of producing all the Site Services Agreements and Ground Leases in addition to the exemplars already produced outweighs any likely benefit. *See* Fed. R. Civ. P. 26(b)(1).

**Chemours' Position:**

With its initial draft status report, PEC provided the clarification that Chemours has been seeking throughout the meet and confer process as to the only outstanding issue as to Chemours.  As set forth above, PEC specifically clarified that it seeks the "conveyance instruments that effectuated the transfer of assets from Old DuPont (or its subsidiaries or affiliates) to Chemours (or its subsidiaries or affiliates)" in connection with the transfer of real estate.  Based on that clarification, Chemours then located and agreed to provide to PEC the deeds that effectuated the transfer of the real estate at the time of spin-off of those sites from Old DuPont (EID) to Chemours in connection with the operational sites for US operations that involved flourosurfactant products and for which we already provided Site Services Agreements. As to Assignment and Assumption of Leases, Chemours also agreed to produce those as between EID and Chemours for those same sites.  Therefore, no issues remained as to Chemours.

However, this morning, PEC sent an email in which it reverted back to the original requests, disregarding the meet and confer process and its earlier clarification, now asking for all unspecified "conveyance instruments" in connection with any transfer of *any* assets.  Chemours advised that PEC's email was different from its draft supplemental joint status report from yesterday which Chemours specifically addressed and resolved. Chemours further advised that it will not produce all documents regarding all assets, such as IP rights, as they are not relevant. Chemours attempted to resolve all issues and believes it did so, but it will be ready to discuss these issues further.

2

**Error! Unknown document property name.**

Dated: June 3, 2020

Respectfully submitted,

/s/ *Michael A. London*

Michael A London
Douglas and London PC
59 Maiden Lane
6th Floor
New York, NY 10038
P: (212)-566-7500
F: (212)-566-7501
mlondon@douglasandlondon.com

Paul J. Napoli
Napoli Shkolnik PLLC
1301 Avenue Of The Americas
10th Floor
New York, NY 10019
P: (212)-397-1000
F: (646)-843-7603
pnapoli@napolilaw.com

Scott Summy
Baron & Budd, P.C.
3102 Oak Lawn Avenue
Suite 1100
Dallas, TX 75219
P: (214)-521-3605
ssummy@baronbudd.com

*Co-lead Counsel for Plaintiffs*
Fred Thompson , III
Motley Rice LLC
28 Bridgeside Boulevard
Mt Pleasant, SC 29464
P: (843)-216-9000
F: (843)-216-9440
fthompson@motleyrice.com
*Liaison Counsel for Plaintiffs*

/s/ *Joseph G. Petrosinelli*

Joseph G. Petrosinelli
Williams & Connolly LLP
725 Twelfth Street, N.W.
Washington, DC 20005
P: (202) 434-5547
F: (202) 434-5029
jpetrosinelli@wc.com

Michael A. Olsen
Mayer Brown LLP
71 South Wacker Drive
Chicago, IL 60606
P: (312) 701-7120
F: (312) 706-8742
molsen@mayerbrown.com

*Co-lead Counsel for Defendants*
Brian Duffy
Duffy & Young LLC
96 Broad Street
Charleston, SC 29401
P: (843) 720-2044
F: (843) 720-2047
bduffy@duffyandyoung.com

David E. Dukes
Nelson Mullins Riley & Scarborough LLP
1320 Main Street, 17th Floor
Columbia, SC 29201
P: (803) 255-9451
F: (803) 256-7500
david.dukes@nelsonmullins.com
*Co-liaison Counsel for Defendants*

3

**Error! Unknown document property name.**

4

**Error! Unknown document property name.**