UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| IN RE: AQUEOUS FILM-FORMING FOAMS PRODUCTS LIABILITY LITIGATION | MDL No. 2:18-mn-2873-RMG<br><br>This Document relates to:<br>ALL CASES |

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO COMPEL DISCOVERY
FROM DEFENDANT DYNAX CORPORATION**

Plaintiffs submit this Reply in further Support of their Motion to Compel Discovery from Defendant Dynax Corporation ("Mot. to Compel") (Dkt. No. 1150), and in reply to Dynax's Response in Opposition to Plaintiffs' Motion to Compel ("Opp'n")(Dkt. No. 1260).

For the reasons set forth below, and in Plaintiffs' original papers, Plaintiffs respectfully request that their Motion to Compel be granted.

## I.    INTRODUCTION

Assuming the Court accepts Defendant Dynax Corporation's ("Dynax") position that its process sheets and related product development documents are trade secrets, under relevant state and federal law, Plaintiffs are nonetheless entitled to same. This is because, contrary to what is stated in Dynax's Opposition, the documents are relevant and necessary, a substantial need exists for them, and, as set forth below, the necessity of the production of these documents outweighs any potential risk of harm resulting from the limited production of this alleged trade secret information authorized by the protective order.

The protective order in this case highly curtails the circumstances under which any alleged trade secret material can be used, which, for information bearing a "Highly Confidential" stamp, is limited to use "in connection with the preparation for trial and litigation of this Action . . . ."[1] Despite the protective order's strict limitations regarding the use of "Highly Confidential" information, Dynax's Opposition appears to presuppose that either a party, an attorney, and/or a fact or expert witness will violate the duly-entered and agreed to protective order and misappropriate Dynax's alleged trade secrets. Beyond conjecture, Dynax offers no basis or reason to conclude that any signatory to the protective order intends to violate it resulting in any uncontrolled dissemination of trade secret information. As such, Plaintiffs respectfully request

---

[1] *See* Protective Order, ¶ 4. [Dkt. No. 99].

their Motion to Compel be granted, and allow the previously entered and agreed to protective order to safeguard Dynax from any misappropriation of its alleged trade secret information.

## II.     LEGAL STANDARD

To obtain the documents at issue, Plaintiffs are required to show that the documents "are material and relevant to the case," after which point "the court must balance the requesting party's need for information against the injury that might result if uncontrolled disclosure is compelled." *Wade v. Chase Bank USA, N.A.*, No. 2:12-cv-3565-RMG, 2013 U.S. Dist. LEXIS 202356, at *5 (D.S.C. Nov. 7, 2013) (citing *Ohio Valley Envtl. Coal. v. Elk Run Coal Co.,* 291 F.R.D. 114, 118(S.D.W. Va. Apr. 11, 2013)). Moreover, South Carolina law modifies the "material and relevant" requirements of the trade secret production burden slightly by requiring a showing of "substantial need." *Hartsock v. Goodyear Dunlop Tires N. Am. Ltd.,* 422 S.C. 643, 652 (2018).[2]

"If a substantial need is shown and the balancing test weighs in favor of the one requesting disclosure, the qualified privilege is overcome." *Id*. at 652-653 (citing S.C. Code Ann. § 39-8-60(E)). "Then, the trade secret holder will be compelled to disclose the trade secret, but the holder is nevertheless afforded protection under "an appropriate written protective order." *Id*.

---

[2] "A substantial need may be shown if four criteria are met:

(1) the allegations in the initial pleading setting forth the factual predicate for or against liability have been plead with particularity;

(2) the information sought is directly relevant to the allegations plead with particularity in the initial pleading;

(3) the information is such that the proponent of the discovery will be substantially prejudiced if not permitted access to the information; and

(4) a good faith basis exists for the belief that testimony based on or evidence deriving from the trade secret information will be admissible at trial."

*Id.* at 651.

Finally, and importantly, there is no absolute privilege to protect trade secrets from disclosure during the discovery process. *Ex parte Sealed Air Corp. & Cryovac, Inc.,* 220 F.R.D. 452, 453 (D.S.C. 2004) (citing *Duplan Corp. v. Deering Milliken, Inc.,* 397 F. Supp. 1146, 1185 (D.S.C. 1974))."Discovery [of confidential information] is virtually always ordered once the movant has established that the secret information is relevant and necessary." *Id*. (quoting *Coca-Cola Bottling Co. of Shreveport, Inc. v. Coca-Cola Co.,* 107 F.R.D. 288, 293 (D.Del. 1985)).

### III.   ARGUMENT

**A.   Dynax's Process Sheets are Relevant and Necessary and a Substantial Need for Them Exists.**

Dynax's process sheets and related research and development documents are both relevant and necessary. As set forth in Plaintiffs' Motion to Compel, the issue of the feasibility of using a C6-based fluorosurfactant for use in connection with MIL-Spec AFFF is a critical element of Plaintiffs' design defect cause of action.[3] This is particularly true for plaintiffs who reside in States where evidence of a reasonably safer feasible alternative design is required to prove a *prima facie* design defect cause of action.[4] Again, the argument being that AFFFs utilizing such 95-percent plus pure C6-based fluorosurfactants would be safer alternative AFFFs than those incorporating C8-based fluorosurfactants.

However, in addition to the process sheets and related development documents being relevant to establishing this particular element of Plaintiffs' design defect claims,[5] Dynax's process

---

[3] *See* Mot. to Compel at 1.

[4] *Id*. at 2.

[5] Plaintiffs submit that although Dynax acknowledges in its Opposition that Defendant BASF Corporation ("BASF"), as successor-in-interest to Ciba-Geigy Corporation ("Ciba"), did, in fact, manufacture a 95-percent plus C6-based fluorosurfactant for use in AFFF (*see*, Opp'n at 2, 16), which was capable of meeting even the most stringent requirements of MIL-Spec at least as early as the 1980s, that does not negate the relevancy of Dynax's process sheets and related development documents, which are not cumulative evidence as Dynax's Opposition suggests. First, Plaintiffs have no idea whether Ciba and Dynax process sheets were the same at any point in time without first being able to review and compare each companies' process and development documents. Second, Dynax is not relieved of

4

sheets and related research and development documents are likewise more broadly relevant and necessary in at least each of the following three ways: (1) Plaintiffs are entitled to explain to a jury what Dynax's role is in the overall AFFF landscape, including by explaining which AFFF fluorosurfactants Dynax has made historically, ***how*** those fluorosurfactants have been made over time (the question of how hinges on an understanding of Dynax's internal process documents like those at issue here), and when each such fluorosurfactant was made; (2) Plaintiffs are likewise entitled to show that the technological processes being used today by Dynax to manufacture 99-percent plus C6-based fluorosurfactants does not involve technology, which would have been unavailable in the 1980s (if not earlier); and (3) equally important to the Plaintiffs, is what Dynax concedes that the process sheets do not show, *i.e.*, that "Dynax has never used distillation,"[6] which goes directly to Dynax's own liability.

Specifically, Plaintiffs' anticipate that their experts will opine that Dynax could have used distillation and/or fractionation to achieve 99-percent plus C6 purity for its Mil-Spec AFFF fluorosurfactants as early as 1994, the year Dynax began to manufacture fluorosurfactants.[7] However, that opinion cannot be put into context without knowing what manufacturing processes Dynax uses to manufacture its AFFF fluorosurfactants today, what it has used historically, and

---

its own discovery obligations simply because a different defendant has produced similar information that is relevant to the same element of Plaintiffs' claims. To the contrary, as set forth in Plaintiffs' Motion to Compel, the fact that other defendants have produced similar information, including multiple process sheets, is evidence of the relevancy of these materials as they pertain to each individual defendant's potential liability. *See* Plaintiffs' Motion to Compel, at 14 (identifying three defendants that have produced the exact type of process sheets and manufacturing documents Plaintiffs seek from Dynax). In short, Plaintiffs are entitled to understand how each AFFF fluorosurfactant manufacturer makes its fluorosurfactants in order to assess each individual defendant's potential scope of liability, and, particularly, what changes, if any, to a defendant's manufacturing processes could have resulted ultimately in lower PFOA contamination. In order to assess what changes would have been necessary to effectuate this goal, Plaintiffs need to know what is presently being done and what has historically been done.

[6] *See* Opp'n at 2.

[7] *Id*.

what changes, if any, Dynax would have had to implement to its developments processes in order to achieve such results.

As discussed in Plaintiffs' Motion to Compel, by 2015, the Environmental Protection Agency ("EPA") required virtual elimination of PFOA and its precursors, the fact that Dynax did not take measures to decrease PFOA (and its precursors) content from its fluorosurfactants for use with AFFF until it was mandated by EPA, despite the historical availability of technology capable of doing so, speaks directly to Dynax's liability with respect to its contribution of nationwide PFOA contamination.

Finally, even taking Dynax at its word that its process sheets are not relevant to the specific percentages of homologue distribution,[8] Plaintiff would still be entitled to understand <u>how</u> Dynax incorporates the high purity C6 feedstock materials it receives from raw material providers into its AFFF fluorosurfactants in order to give context to the overall process of making AFFF.

Not only are Dynax's process sheets relevant and necessary, but Plaintiffs have also demonstrated a substantial need for same. Specifically, and as discussed above, Plaintiffs allege in their various respective complaints that their design defect causes of action turn, in part, on the availability of using safer AFFFs, including but not limited to safer fluorosurfactants that do not contain PFOA, PFOS and/or their precursors. The information sought in Plaintiffs' Motion to Compel is directly relevant to understanding in what way(s), Dynax, through its role as a fluorosurfactant manufacturer, could have effectuated the development of a reasonably feasible safer alternative AFFF -- a relevant and essential element to most Plaintiffs' design defect causes of action. Without such information Plaintiffs will be prejudiced because they will not be able to elucidate for a jury how easily Dynax could have implemented changes in its manufacturing and

---

[8] *Id*.

developing processes that would have resulted in less nationwide PFOA contamination. This information is clearly central to most Plaintiffs' claims, relevant and thus necessary. As such, Plaintiffs have demonstrated a substantial need for this process sheets at issue.

Finally, Dynax relies heavily on this Court's decision in *Wade* for the proposition that in circumstances like the instant case this Court has denied motions to compel. Dynax's Opposition greatly expands the holding in *Wade*, which is clearly distinguishable from the case at bar. Not only was that motion to compel not outright denied as Dynax mistakenly suggests, but the defendants were in fact required to produce supplemental interrogatory responses, which sought information clearly relevant and central to plaintiffs' claims. Just as is the case here.

Moreover, with respect to the two categories of documents that this Court found plaintiffs unentitled, namely, 1) a contract between two defendant parties, and 2) certain policies and procedures relating to insurance claims, the circumstances resulting in the denial of the request for those documents were entirely different than the situation here. With respect to the former, *i.e.*, the contract, the *Wade* plaintiffs agreed with the defendants that the only information in the contract at issue was *already* available in other documents that defendants had produced. As such, the plaintiffs themselves were not anticipating receipt of any new relevant information from the contract than what was already in their possession.

That is not the case here. Plaintiffs anticipate that Dynax process sheets will provide context to Dynax's overall role in the AFFF market by explaining how it makes AFFF fluorosurfactants, the documents will also elucidate for the jury how Dynax incorporates high purity C6 feedstock into AFFF fluorosurfactants, and will provide the jury with critical evidence of Dynax's own liability by illustrating that although it chose not to distill PFOA (and its

7

precursors) from its fluorosurfactants that it, nonetheless, could have done so had it chosen to do so. No such information is contained in any other documents produced to date.

Regarding the policies and procedures, *Wade* held that plaintiffs were not entitled to these documents, because there was no evidence that such documents even existed. Here, Dynax obviously does not dispute that the process sheets exist, in fact, to the contrary, Dynax represents them to be "crown jewels."[9] Thus, *Wade* is clearly distinguishable from the case at bar.

Dynax's reliance on *Sensormatic Elecs. Corp. v. Tag Co. LLC*, 4:07-mc-181-TLW-TER, 2008 U.S. Dist. LEXIS 5312 (D.S.C. Jan. 24, 2008) is similarly misleading. In its Opposition, Dynax correctly points out that in that case the court granted a protective/confidentiality order after applying a burden-shifting test.[10] However, Dynax fails to make clear that the court ordered a protective/confidentiality order be entered, because it <u>granted</u> a motion to compel an inspection of the processing facility at issue. In other words, *Sensormatic* held that the party seeking the discovery by way of a motion to enforce a subpoena and compel an inspection, was entitled to the discovery it sought. *Id*. at \*12-13. The court allowed for a protective/confidentiality order to issue as a result of granting the motion to compel. *Id*. at \*13. In this MDL, a protective order has already been issued to protect the process documents at issue, and thus different circumstances clearly exist.

**B.      The Necessity of Dynax's Process Sheets and Related Research and Development Documents Outweighs any Potential for Harm that Might Result from Disclosure of Same.**

As set forth above, Dynax's process sheets are relevant and a substantial

---

[9] *See* Opp'n at 1.

[10] *Id.* at 10.

need exists for them. Moreover, given the entry of the protective order in this case the risk of any uncontrolled dissemination of the process sheets is already addressed resulting in low financial risk to Dynax.

As noted above, the agreed to protective order entered in this case provides as follows with respect to documents marked "Highly Confidential:"

> All "Highly Confidential Information" produced in discovery, if any, ***shall not be further disclosed, disseminated, or used for any purpose other than in connection with the preparation for trial and litigation of this Action***, consistent with the restrictions on use of "Highly Confidential Information" contained in this Order.[11]

Pursuant to the protective order, any alleged trade secret information produced by Dynax can be produced bearing a "Highly Confidential" stamp, which will render any use of such documents outside this litigation a violation of an Order of this Court. Although there is no evidence or factual basis to suggest that any witness, party and/or attorney for the parties will misappropriate any alleged Dynax trade secrets, pursuant to Exhibit A of the protective order, a violation of the protective order can result in sanctions by the Court. As such, the existing protective order already protects the documents at issue and minimizes the risk of any type of misuse and/or misappropriation of Dynax's alleged trade secrets contained within its process sheets and related research and development documents. Whatever minimal risk of harm that Dynax speculates might exist, considering the operative protective order, when such risk is weighed against the clear relevancy and necessity the process sheets and related documents presents to the Plaintiffs, the need for this discovery far outweighs any potential harm that could theoretically result to Dynax.

As such, Plaintiffs respectfully request that their Motion to Compel be granted.

---

[11] *See* Protective Order, ¶ 4 [Dkt. No. 99] (emphasis added).

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their Motion to Compel and require Dynax to produce its process sheets and related research and development documents.

Dated:  March 26, 2021

/s/ Fred Thompson, III
Motley Rice LLC
28 Bridgeside Boulevard
Mt. Pleasant, SC 29464
P: (843) 216-9000
Fax: 843-216-9440
fthompson@motleyrice.com

*Plaintiffs' Liaison Counsel*

-and-

/s/ *Michael A. London*

Michael A. London
Douglas and London PC
59 Maiden Lane
6th Floor
New York, NY 10038
P: (212)-566-7500
F: (212)-566-7501
mlondon@douglasandlondon.com

Paul J. Napoli
Napoli Shkolnik PLLC
1301 Avenue of The Americas
10th Floor
New York, NY 10019
P: (212)-397-1000
F: (646)-843-7603
pnapoli@napolilaw.com

Scott Summy
Baron & Budd, P.C.
3102 Oak Lawn Avenue
Suite 1100
Dallas, TX 75219
P: (214)-521-3605
ssummy@baronbudd.com

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was electronically filed with this Court's CM/ECF on this 26th day March, 2021 and was thus served electronically upon counsel of record.

/s/ Fred Thompson, III