SMITH, ANDERSON, BLOUNT,
DORSETT, MITCHELL & JERNIGAN, L.L.P.     **EXHIBIT B**

LAWYERS

| OFFICES | | MAILING ADDRESS |
|---|---|---|
| Wells Fargo Capitol Center | | P.O. Box 2611 |
| 150 Fayetteville Street, Suite 2300 | | Raleigh, North Carolina |
| Raleigh, North Carolina 27601 | | 27602-2611 |

May 21, 2021

**ADDIE K. S. RIES**
DIRECT DIAL: (919) 821-6710
E-Mail: aries@smithlaw.com

TELEPHONE: (919) 821-1220
FACSIMILE: (919) 821-6800

Hon. Richard Mark Gergel
Blaise N. Barber, Esq.
U.S. District Court for the District of South Carolina
Blaise_Niosi@scd.uscourts.gov

Re:  *In re AFFF Products Liability Litigation*, MDL No. 2:18-mn-2873-RMG
       Plaintiffs' request for a second deposition of Dynax Corporation

Dear Judge Gergel and Ms. Barber:

I write on behalf of Defendant Dynax Corporation ("Dynax") in response to Mr. Thompson's letter of May 18, 2021.

Dynax is a small research and development company whose only business is the sale of fluorosurfactants, including to foam manufacturers for use as a component in their AFFF products. The company operates out of a single office in Pound Ridge, New York. Dynax's founder and President (and the company's only viable witness for events prior to 2014) is Dr. Eduard Kleiner. Dr. Kleiner, a native of Switzerland, is almost 89 years old and suffers from chronic health conditions.

In light of these facts, Plaintiffs agreed to conduct only a single, comprehensive Rule 30(b)(6) deposition of Dynax. That agreement was memorialized in multiple Joint Status Reports filed with the Court. As explained in the Joint Status Reports:

> In addition, the PEC also served a Fed. R. Civ. P. 30(b)(6) Notice of Deposition on defendant Dynax regarding their manufacturing process(es). In light of the advanced age of Dynax's only viable Rule 30(b)(6) witness on this and other topics, the PEC has agreed to withdraw the deposition notice and replace it with a comprehensive 30(b)(6) notice to Dynax.

(*See* JSRs for July 10, Aug. 7, Sept. 11 & Oct. 9, 2020, Status Conferences.) The PEC provided a comprehensive Rule 30(b)(6) deposition notice as agreed, and Dynax presented Dr. Kleiner for more than 7 hours of deposition testimony over the course of 2 days in November 2020. Following his testimony, the deposition transcript and the Joint Status Reports recorded that Dynax's Rule 30(b)(6) deposition was complete (except for a few topics regarding electronic discovery for which Dr. Kleiner was not designated as Dynax's designee).

Hon. Richard Mark Gergel
Blaise N. Barber, Esq.
May 21, 2021
Page 2

Despite the parties' agreement as represented to the Court, and without prior notice, on May 10, 2021, Plaintiffs served a second Rule 30(b)(6) notice on Dynax. A copy of the notice is attached as Exhibit 1.

In their recent letter to the Court, Plaintiffs seek to characterize this new notice as "jurisdictional discovery." But the new Rule 30(b)(6) deposition notice has nothing to do with Dynax's pending Motions to Dismiss in certain bellwether cases for lack of personal jurisdiction. It was not served with Plaintiffs' jurisdictional discovery in April 2021. It was not titled or noted as a jurisdictional deposition, and it was captioned for the MDL as a whole rather than for the individual bellwether cases. It was served at the same time as five other identical Rule 30(b)(6) deposition notices sent to other component manufacturers (Archroma, Arkema, BASF, Chemours, and E. I. DuPont de Nemours). Moreover, it requested a Rule 30(b)(6) deposition of Dynax on June 21, 2021 – almost a month after the due date for Plaintiffs' responses to Dynax's pending Motions to Dismiss. It was only after Dynax responded to Plaintiffs' counsel reminding them that Plaintiffs had already completed what was agreed to be Dynax's "comprehensive" 30(b)(6) deposition that Plaintiffs claimed that the new notice – or at least portions thereof – were intended as jurisdictional discovery. (*See* correspondence attached hereto as Exhibit 2.)

As an initial matter, characterizing the notice as "jurisdictional discovery" is no justification for breaching the parties' prior agreement. Plaintiffs have known all along that they bear the burden of proving personal jurisdiction, and were free to include topics related to personal jurisdiction in their comprehensive Rule 30(b)(6) deposition notice had they chosen to do so. And indeed, even though sales information was not among the listed topics, Plaintiffs asked questions related to sales during Dr. Kleiner's Rule 30(b)(6) deposition and he answered those questions.

Furthermore, even apart from the parties' prior agreement, Plaintiffs are not entitled to a second Rule 30(b)(6) deposition of Dynax without leave of Court. As this Court ruled earlier this month with respect to the deposition of Mitch Hubert, the parties cannot re-depose a witness whose deposition has concluded without seeking leave of Court and showing good cause. To the extent Plaintiffs' letter may be considered a request for leave of Court, it should be denied because good cause does not exist.

The only topics from the new Rule 30(b)(6) deposition notice that Plaintiffs contend are relevant in regard to Dynax's pending Motions to Dismiss are topics 5 and 6, which state:

5. The total dollar sales per year for each of YOUR COMPONENT PRODUCT(S).
6. The total volume sold per year for each of YOUR COMPONENT PRODUCT(S).

As the attachments to Plaintiffs' letter show, however, Plaintiffs have already received this data in detail from Dynax, in the form of Exhibits A and B to its fact sheet. A Rule 30(b)(6) witness could do no more than read the numbers from the charts and confirm that the numbers have been

Hon. Richard Mark Gergel
Blaise N. Barber, Esq.
May 21, 2021
Page 3

read correctly – a feat already accomplished by Dynax's Certification submitted with the data. While Plaintiffs complain that the Certification "notes specifically that the information contained in the exhibits is *not* based on personal knowledge," their argument and the Certification itself (which was approved by the Court in Case Management Order 5D) proves the point that no witness would be expected to have personal knowledge of this voluminous data.[1]

More fundamentally, the sales data contained in Exhibits A and B, which shows sales by dollar amount and by weight, has no relevance to Dynax's Motions to Dismiss for lack of personal jurisdiction, because none of those sales are to companies in any of the jurisdictions where Dynax has filed Motions to Dismiss.  And this should not come as a surprise to Plaintiffs, because Plaintiffs have had a complete list of Dynax's AFFF manufacturing customers since Dynax served its initial discovery responses on July 10, 2020.  Moreover, contrary to Plaintiffs' assertion, Dynax's responses to Plaintiffs' jurisdictional discovery did not refer Plaintiffs to either Exhibit A or B to Dynax's fact sheet.  Rather, one interrogatory response (out of 25 interrogatory responses and 20 responses to requests for production of documents) referred to the fact sheet itself, which was served on March 17, 2021, and contains the list of Dynax fluorosurfactants purchased by its customers for use in AFFF.  (*See* Response to Interrogatory 8 in sample Dynax jurisdictional discovery responses attached as Exhibits 3 and 4; Dynax's responses in other bellwether cases are substantively identical.)

In *Weirton Area Water Board v. 3M Company, et al*., 2020 WL 8184956 (N.D. W. Va. Nov. 20, 2020), a PFAS water contamination case filed by Mr. Napoli's firm that is now part of this MDL, the United States District Court for the Northern District of West Virginia found that Plaintiffs were not entitled to jurisdictional discovery and granted Dynax's motion to dismiss for lack of personal jurisdiction.  Although jurisdictional discovery was not needed as to Dynax in the bellwether cases for the same reasons identified by the Court in *Weirton*, in order to avoid an unnecessary discovery dispute, Dynax timely and fully responded to Plaintiffs' jurisdictional discovery.  Those responses, combined with the voluminous discovery already produced by Dynax in the MDL, confirms that Dynax is not subject to personal jurisdiction in the six bellwether cases in which it has filed Motions to Dismiss.  Plaintiffs' attempt to take a second Rule 30(b)(6) deposition of Dynax is not only a violation of the parties' agreement, but also an exercise in futility which would only serve to burden Dynax unnecessarily.

Very truly yours,

Addie K. S. Ries

---

[1] To the extent Plaintiffs seek information regarding the source of the voluminous data contained in Exhibits A and B, counsel for Dynax offered to obtain and provide such information (in verified form) during the parties' abbreviated meet and confer discussions.  Plaintiffs did not respond to that offer before sending their May 18th letter to the Court, but Dynax remains willing to provide such information.

# EXHIBIT 1

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | |
|---|---|
| **IN RE: AQUEOUS FILM-FORMING FOAMS PRODUCTS LIABILITY LITIGATION** | **MDL No. 2:18-mn-2873-RMG**<br><br>**This Document relates to:**<br>**ALL CASES** |

### PLAINTIFFS' NOTICE OF DEPOSITION OF DEFENDANT DYNAX CORPORATION REGARDING PRODUCTION AND SALE OF COMPONENTS USED IN AFFF

**PLEASE TAKE NOTICE THAT**, under Federal Rule of Civil Procedure 30, Plaintiffs will take the remote oral and videotaped deposition of Defendant Dynax Corporation ("Defendant") at 9:00am (EST) on June 21, 2021.

Defendant is directed to designate a person or persons to testify on its behalf on the matters listed in Schedule A attached to this Notice of Deposition. Plaintiffs request that Defendant provide the name(s) and title(s) of the person(s) it will designate to give testimony and summaries of the areas in which each designated person will give testimony. Under Federal Rules of Civil Procedure 30(b)(2) and 34, Defendant is requested to produce the documents responsive to the requests listed on Schedule B fourteen (14) days before the deposition is to take place. Exhibits for this deposition will be marked digitally by video teleconferencing/teleconferencing and all original exhibits will be maintained by the court reporter.

**PLEASE TAKE FURTHER NOTICE**, in order to participate in the remote deposition, please contact Laura Rodia at scheduling@golkow.com at least three (3) calendar days prior to the deposition to advise how you plan to attend the deposition either by (1) video with speaking privileges (not muted); (2) video without speaking privileges (muted); or (3) telephonically only without speaking privileges (muted). Further, failure to advise how you plan to attend three (3) calendar days prior to the deposition could impact your ability to attend because of the nature of remote deposition logistics, confidentiality, and security of the remote deposition.

Dated: May 10, 2021

*s/ Michael A. London*
Michael A. London
*Douglas and London PC*
59 Maiden Lane, 6th Floor
New York, NY 10038
212-566-7500
212-566-7501 (fax)
mlondon@douglasandlondon.com

Paul J. Napoli
*Napoli Shkolnik PLLC*
360 Lexington Avenue, 11th Floor
New York, NY 10017
212-397-1000
646-843-7603 (fax)
pnapoli@napolilaw.com

Scott Summy
*Baron & Budd, P.C.*
3102 Oak Lawn Avenue, Suite 1100
Dallas, TX 75219
214-521-3605
ssummy@baronbudd.com

*Plaintiffs' Co- Lead Counsel*

-and-

Fred Thompson, III
*Motley Rice*
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
843-216-9118
fthompson@motleyrice.com

*Plaintiffs' Liaison Counsel*

## SCHEDULE A

### Definitions

The following definitions apply to this Notice of Deposition and are deemed to be incorporated into each subject listed below:

1.      "You," "Your," "Defendant," and "Dynax" means Dynax Corporation and any of its directors, officers, agents (including attorneys, accountants, consultants, investment advisors or bankers), employees, representatives and any other PERSON purporting to act on its behalf. These terms also include present and former divisions, affiliates, subsidiaries, predecessor entities, acquired entities, related entities, successors, assigns, or any other entity acting or purporting to act on its behalf.

2.      "AFFF" means aqueous film-forming foam.

3.      "AFFF Products" means any product containing AFFF.

4.      "Component Product(s)" means any fluorotelomer and/or fluorosurfactant products that were ultimately incorporated into  AFFF or AFFF PRODUCTS.

5.      "Computer" means all devices utilizing microchips to facilitate processing, analysis, or storage of data, including microcomputers (also known as personal computers), laptop computers, portable computers, notebook computers, palmtop computers (also known as personal digital assistants or PDA's), smart phones, tablet computers or other mobile devices, minicomputers and mainframe computers.

6.      "Computer system," when used in reference to any computer, includes the following information: (a) the computer type, brand, and model, and (b) the brand and version of all software, including operating system, private- and custom-developed applications, commercial applications, and/or shareware.

7.      "Documents" as used in this Request is coextensive with the meaning of the terms

"documents" and "tangible things" in FRCP 34, and shall have the broadest possible meaning and interpretation ascribed to the terms "documents" and "tangible things" under FRCP 34. Consistent with the above definition, the term document shall include, without limitation, any written, printed, typed, photostatic, photographed, recorded, computer-generated, computer-stored, or otherwise maintained or reproduced communication or representation, any data compilation in any form, whether comprised of letters, words, numbers, pictures, sounds, bytes, e-mails, electronic signals or impulses, electronic data, active files, deleted files, file fragments, or any combination thereof including, without limitation, all memoranda, notes, records, letters, envelopes, telegrams, messages, studies, analyses, contracts, agreements, projections, estimates, working papers, accounts, analytical records, reports and/or summaries of investigations, opinions or reports of consultants, opinions or reports of experts, opinions or reports of accountants, other reports, trade letters, press releases, comparisons, books, diaries, articles, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, forecasts, drawings, diagrams, instructions, minutes of meetings or communications of any type, including inter- and intra-office communications, questionnaires, surveys, charts, graphs, photographs, phonographs, films, tapes, discs, data cells, drums, printouts, all other compiled data which can be obtained (translated, if necessary, through intermediary or other devices into usable forms), documents maintained on, stored in or generated on any electronic transfer or storage system, any preliminary versions, drafts or revisions of any of the foregoing, and other writings or documents of whatever description or kind, whether produced or authorized by or on behalf of you or anyone else, and shall include all non-identical copies and drafts of any of the foregoing now in the possession, custody or control of you, or the former or present directors, officers, counsel, agents, employees, partners, consultants, principals, and/or persons acting on your behalf.

       8.     "Electronic data" or "data" means the original (or identical duplicate when the

original is not available), and any non-identical copies (whether non-identical because of notes made on copies or attached comments, annotations, marks, transmission notations, or highlighting of any kind) of writings of every kind and description whether inscribed by mechanical, facsimile, electronic, magnetic, digital, or other means. Electronic data includes, by way of example only, computer programs (whether private, commercial, or work-in-progress), programming notes or instructions, activity listings of electronic mail receipts and/or transmittals, output resulting from the use of any software program, including word processing documents, spreadsheets, database files, charts, graphs and outlines, electronic mail, operating systems, source code of all types peripheral drivers, PIF files, batch files, ASCII files, and any and all miscellaneous files and/or file fragments, regardless of the media on which they reside and regardless of whether said electronic data consists in an active file, deleted file or file fragment. Electronic data includes any and all items stored on computer memories, hard disks, floppy disks, CD-ROMs, removable media such as Zip disks, Jaz cartridges, Bernoulli Boxes and their equivalent, magnetic tapes of all types, microfiche, punched cards, punched tape, computer chips, including, but not limited to EPROM, PROM, RAM and ROM, on or in any other vehicle for digital data storage and/or transmittal. The term electronic data also includes the file, folder tabs and/or containers and labels appended to, or associated with, any physical storage device associated with each original and/or copy.

9.      "Electronic media" means any magnetic or other storage media device used to record electronic data. Electronic media devices may include computer memories, hard disks, floppy disks, CD-ROM, removable media such as Bernoulli Boxes and their equivalent, magnetic tapes of all types, microfiche, punched cards, punched tape, computer chips, including, but not limited to EPROM, PROM, RAM and ROM, or on or in any other vehicle for digital data storage and/or transmittal.

10.      "End User(s)" means any PERSON to whom YOU delivered, tendered, and/or sold

6

AFFF PRODUCTS and/or TRAINING FOAM(S).

11.    "Identify" or "identity" with respect to PERSONS, means to give, to the extent known, the PERSON'S full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment.

12.    "Person(s)" means any individual, corporation (including any non-profit corporation), general or limited partnership, limited liability company, joint venture, estate, trust, association, organization, governmental authority or entity, or any other entity.

13.    "PFAS" shall refer to any and all Per- and polyfluoroalkyl substances, including but not limited to Perfluorooctane Sulfonate ("PFOS"), Perfluorooctanoic Acid ("PFOA"), Perfluorohexanoic acid ("PFHxA"), and Perfluorohexanesulfonic acid ("PFHxS").

14.    "Relating to," "relate to," "referring to," "refer to," "reflecting," "reflect," "concerning," or "concern" shall mean evidencing, regarding, concerning, discussing, embodying, describing, summarizing, containing, constituting, showing, mentioning, reflecting, pertaining to, dealing with, relating to, referring to in any way or manner, or in any way logically or factually, connecting with the matter described in that paragraph of these demands, including documents attached to or used in the preparation of or concerning the preparation of the documents.

15.    "Training Foam(s)" means foam concentrates intended to simulate AFFF concentrates for training purposes.

16.    "Or" and "and" will be used interchangeably.

17.    Unless otherwise indicated, the relevant time period for the information sought for each topic and request is from the date YOU first manufactured, processed, and/or sold any COMPONENT PRODUCT(S).

## **Topics**

Pursuant to Federal Rules of Civil Procedure 30(b)(6), Defendant shall be prepared to testify regarding the following subjects:

1. The brand names and/or product identification numbers for YOUR COMPONENT PRODUCT(S).

2. The chemical compositions and/or formulations of YOUR COMPONENT PRODUCT(S), including any changes to those compositions and/or formulations during the relevant time period.

3. The dates when YOU started and (if applicable) stopped manufacturing, processing, and/or selling YOUR COMPONENT PRODUCT(S).

4. The entities to whom YOU sold, processed, manufactured and/or distributed YOUR COMPONENT PRODUCT(S), including but not limited to, the name and address of the entity and the time period(s) where YOU sold or distributed YOUR COMPONENT PRODUCT(S) to said entity.

5. The total dollar sales per year for each of YOUR COMPONENT PRODUCT(S).

6. The total volume sold per year for each of YOUR COMPONENT PRODUCT(S).

7. YOUR current and former employees who have knowledge of facts relevant to YOUR sale, manufacture, and/or distribution of YOUR COMPONENT PRODUCT(S).

8. To the extent you have produced sales records in this litigation, a description of the categories of information kept in those sales records, including but not limited to spreadsheets reflecting sales information, how those records were compiled, kept, updated, and how YOU used that information.

## SCHEDULE B

## REQUESTS FOR PRODUCTION

1. All purchase agreements, purchase contracts, invoices, supply contracts, receipts, or other documentation evidencing YOUR sale, manufacture, and/or distribution of YOUR COMPONENT PRODUCT(S).

2. All DOCUMENTS reflecting any contracts and/or agreements that YOU had with suppliers, wholesalers, distributors, or any other entity that sold YOUR COMPONENT PRODUCT(S).

3. All purchase orders, invoices, contracts, and/or other related materials that provide information about the sale, manufacture, and/or distribution of YOUR COMPONENT PRODUCT(S), including but not limited to the dates when YOUR COMPONENT PRODUCT(S) were sold, the quantity YOU included in each shipment, and the amount (in dollars) YOU were paid for each shipment.

4. All DOCUMENTS relating to the procedures and protocols for maintaining sales, production, volume, and invoicing records for YOUR COMPONENT PRODUCT(S).

## CERTIFICATE OF SERVICE

I hereby certify that on May 10, 2021, a true and correct copy of Plaintiffs' Notice of Deposition of Defendant Dynax Corporation Regarding Production and Sale of Components Used in AFFF was served via electronic mail upon the following:

Addie K.S. Ries
Kirk Warner
Cliff Brinson
SMITH, ANDERSON, BLOUNT,
DORSETT, MITCHELL & JERNIGAN, LLP
150 Fayetteville Street, Ste. 2300
Raleigh, NC 27601
(919) 821-1220
aries@smithlaw.com
kwarner@smithlaw.com
cbrinson@smithlaw.com

*Counsel for Dynax Corporation*

Joseph G. Petrosinelli
Williams & Connolly LLP
725 Twelfth Street, N.W.
Washington, DC 20005
P: (202) 434-5547
F: (202) 434-5029
jpetrosinelli@wc.com

Michael A. Olsen
Mayer Brown LLP
71 South Wacker Drive
Chicago, IL 60606
P: (312) 701-7120
F: (312) 706-8742
molsen@mayerbrown.com

*Co-lead Counsel for Defendants*

Brian Duffy
Duffy & Young LLC
96 Broad Street
Charleston, SC 29401
P: (843) 720-2044

F: (843) 720-2047
bduffy@duffyandyoung.com

David E. Dukes
Nelson Mullins Riley & Scarborough LLP
1320 Main Street, 17th Floor
Columbia, SC 29201
P: (803) 255-9451
F: (803) 256-7500
david.dukes@nelsonmullins.com

*Co-liaison Counsel for Defendants*

s/ Michael A. London
Michael A. London
Douglas and London PC
59 Maiden Lane, 6th Floor
New York, NY 10038
212-566-7500
212-566-7501 (fax)
mlondon@douglasandlondon.com

*Plaintiffs' Co-Lead Counsel*

# EXHIBIT 2

**Cheryl Bona**

---

| | |
|---|---|
| **From:** | Addie Ries |
| **Sent:** | Sunday, May 16, 2021 1:30 PM |
| **To:** | Rebecca Newman; Michael London; Wesley Bowden |
| **Subject:** | RE: AFFF MDL: 30(b)(6) Deposition Notices |

Rebecca,
To the extent Plaintiffs are seeking a jurisdictional 30b6 deposition of Dynax, as you indicated is the purpose of Topics 5-6, we believe this is improper and Plaintiffs would need to seek leave of Court to do so. I understand that you do not have our Exhibit A in hand yet (which will tell you volumes sold to particular customers); however, the relevant question for jurisdictional purposes is where are Dynax's customers located (not how much they purchased). Plaintiffs have the list of Dynax customers in Dynax's responses to Plaintiffs' master discovery (which list would allow you to verify that none of Dynax's customers are located in the jurisdictions were Dynax filed jurisdictional motions to dismiss). You also have Dr. Kleiner's declaration confirming that Dynax has never made any sales to the jurisdictions at issue. Thus, to the extent Plaintiffs would claim the NOD to be jurisdictional discovery, we think it is both procedurally and substantively improper and would require leave of Court.
I am happy to discuss on Monday if you would like, but I think this issue is clear.

On a separate note, I spoke with Michael on Friday and agreed to get him dates for late June/early July for Dr. Kleiner's individual deposition.

Best regards,
Addie

---

**From:** Rebecca Newman [mailto:rnewman@douglasandlondon.com]
**Sent:** Friday, May 14, 2021 3:09 PM
**To:** Addie Ries <aries@smithlaw.com>; Michael London <mlondon@douglasandlondon.com>; Wesley Bowden <wbowden@levinlaw.com>
**Subject:** RE: AFFF MDL: 30(b)(6) Deposition Notices

Addie,

Topics 5 and 6 of the present 30(b)(6) deal with sales information both in regard to volume and revenue/sales. Those particular topics are part of the jurisdictional discovery that we have been forced to do now as a consequence of your filing of motions to dismiss. Those are not topics for which a 30(b)(6) witness has previously been produced, nor, has Dynax produced this sales information, which I understand to be what is in Exhibit A of the DFS. However, we have not seen this Exhibit A yet, so we have no way to know whether it will be sufficient for the purposes of establishing sales over time. We are happy to meet and confer to discuss, but at least as it pertains to Topics 5-6, this is discovery that we need now as part of the opposition effort in regards to the MTDs filed by Dynax. As such, we cannot withdraw this notice, but, of course, are happy to meet and confer to see if there are other areas of the notice that we may either be able to narrow or at least hold in abeyance until a later date.

We are available on either Monday or Tuesday to discuss further, let me know if either of those days work for you. Thank you.

---

**From:** Addie Ries <aries@smithlaw.com>
**Sent:** Friday, May 14, 2021 2:34 PM

1

**To:** Michael London <mlondon@douglasandlondon.com>; Wesley Bowden <wbowden@levinlaw.com>; Rebecca Newman <rnewman@douglasandlondon.com>
**Subject:** FW: AFFF MDL: 30(b)(6) Deposition Notices

Michael, Wes, and Rebecca,
As you may recall, Dynax is a little unique re: its 30b6 notice.  When the PEC served its "manufacturing issues" 30b6 NOD on Dynax last summer, I spoke with Wes and urged him to take it down and re-issue a comprehensive 30b6 notice so that we could do Dynax's 30b6 deposition in a single sitting, rather than with piecemeal 30b6 notices.  This was important and made sense for both sides because Dr. Kleiner is the only person at Dynax with historical knowledge of the company and its products.  The PEC agreed and withdrew the manufacturing 30b6 notice and replaced it with a single comprehensive 30b6 notice, and Dynax put Dr. Kleiner up for deposition over 2 days in November.  The JSR recorded this agreement for several months leading up to Dr. Kleiner's deposition as follows.

**Dynax:** Dynax served their Responses to the PEC's First Set of Interrogatories a[nd]
Production on July 10, 2020. These responses included the production of 1,709 do[cuments]
served amended responses to the PEC's First Set of Interrogatories and Requests
on July 24, 2020.    In addition, the PEC also served a Fed. R. Civ. P. 30(b)(6) Notic[e]
on defendant Dynax regarding their manufacturing process(es). In light of the a[...]
Dynax's only viable Rule 30(b)(6) witness on this and other topics, the PEC [...]
withdraw the deposition notice and replace it with a comprehensive 30(b)(6) n[otice]

Following Dr. Kleiner's 30b6 deposition for Dynax, the JSR has recorded that Dynax's 30b6 deposition was completed in November 2020 (except with respect to the topics regarding electronic discovery for which Dr. Kleiner was not designated).  Pursuant to these agreements and representations to the Court, we request that the PEC withdraw the attached notice.  Judge Gergel's ruling on Wednesday striking Tyco's notice for a second deposition of Mr. Hubert leaves no question that the parties cannot seek to re-depose a person (or entity in this case) without leave of Court.

As a practical matter, Dr. Kleiner answered questions related to the topics in your new NOD during his November deposition and we've provided exact information in our response to Interrogatory No. 2 of Plaintiffs' master discovery to Dynax and in our NMG Fact Sheet. I have exchanged emails separately with Wes regarding the exhibits to Dynax's NMG Fact Sheet and you will have those shortly.

Thanks,
Addie

---

**From:** Anne Accettella [mailto:aaccettella@douglasandlondon.com]
**Sent:** Monday, May 10, 2021 6:43 PM
**To:** jpetrosinelli@wc.com; molsen@mayerbrown.com; Brian Duffy <bduffy@duffyandyoung.com>; david.dukes@nelsonmullins.com; Pamela Jones <pjones@duffyandyoung.com>; derickson@shb.com; dbdwerlkotte@shb.com; jhackman@shb.com; Rushton, Maurissa J. (SHB) <MRUSHTON@shb.com>; Addie Ries <aries@smithlaw.com>; Kirk Warner <kwarner@smithlaw.com>; Cliff Brinson <cbrinson@smithlaw.com>; pcondron@crowell.com; czatz@crowell.com; LAradi@crowell.com; cwagner@crowell.com; robertjordan@parkerpoe.com; steveweber@parkerpoe.com; melaniedubis@parkerpoe.com; charlesraynal@parkerpoe.com; meaton@sidley.com; dspira@sidley.com; hlevine@sidley.com; arothman@sidley.com; Holian, Matt <matt.holian@dlapiper.com>; john.wellschlager@dlapiper.com
**Cc:** Michael London <mlondon@douglasandlondon.com>; Paul Napoli <PNapoli@NSPRLaw.com>; Scott Summy <ssummy@baronbudd.com>; Fred Thompson <fthompson@motleyrice.com>; Rebecca Newman <rnewman@douglasandlondon.com>; Tate Kunkle <tkunkle@douglasandlondon.com>; Andrew Croner

<acroner@napolilaw.com>; Ashley Campbell <acampbell@slenvironment.com>; Lisa Greenberg
<lgreenberg@douglasandlondon.com>; mbessis@motleyrice.com
**Subject:** AFFF MDL: 30(b)(6) Deposition Notices

Counsel,

Please see the attached 30(b)(6) deposition notices.

Regards,
Anne


Anne E. Accettella
Douglas & London, P.C.
59 Maiden Lane 6th Fl.
New York, NY 10038
Tel: (212) 566-7500 Ext. 287
Fax: (212) 566-7501


IMPORTANT: This e-mail message is intended solely for the individual or individuals to whom it is addressed. It may contain confidential attorney-client privileged information and attorney work product. If the reader of this message is not the intended recipient, you are requested not to read, copy or distribute it or any of the information it contains. Please delete it immediately and notify us by return e-mail or by telephone (919) 821-1220.

# EXHIBIT 3

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| **IN RE: AQUEOUS FILM- FORMING FOAMS PRODUCTS LIABILITY LITIGATON** | MDL NO. 2:18-mn-2873-RMG<br><br>This Document Relates to:<br>***City of Stuart, Florida v. 3M Company et al.,***<br>2:18-cv-03487-RMG |

**DEFENDANT DYNAX CORPORATION'S RESPONSES TO PLAINTIFF CITY OF
STUART, FLORIDA'S FIRST SET OF INTERROGATORIES (JURISDICTIONAL
DISCOVERY)**

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Defendant Dynax Corporation ("Defendant" or "Dynax") hereby responds and objects to Plaintiff's First Set of Interrogatories (the "Interrogatories"). The responses set forth below are provided in good faith and are based upon information Dynax has gathered to date. Dynax may, and reserves the right to, supplement these responses with different or additional information in the future.

**OBJECTIONS TO PLAINTIFF'S INSTRUCTIONS AND INTERROGATORIES**

1.      Dynax objects to Plaintiff's Instructions and Interrogatories in full because Dynax did not make or sell AFFF, PFOS, or PFOA and Plaintiff's Interrogatories seek to impose an undue burden upon Dynax which is not proportional to the needs of this case or "the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *See* F.R.C.P. 26 (b)(1).

2.      Dynax objects to Plaintiff's Instructions and Interrogatories to the extent they attempt to impose duties and obligations on Dynax that exceed those imposed or authorized by

the Federal Rules of Civil Procedure, the Local Rules of this Court, agreements between the Parties, or the Court's orders, including, but not limited to, the extent to which they exceed the permissible scope of discovery, and/or seek to impose duties of responding and/or supplementation different from or in excess of those imposed by the applicable rules, agreements, and orders.

3.      Dynax objects to Plaintiff's Instructions and Interrogatories to the extent they request information that is protected from discovery pursuant to the attorney-client privilege, work product doctrine, or any other applicable privilege under state or federal law.

4.      Dynax objects to each and every Instruction and Interrogatory that seeks third-party private, confidential, trade secret, or proprietary information, which information has been maintained in confidence and is subject to contractual or court-ordered limitations on disclosure.

5.      Dynax objects to each and every Instruction and Interrogatory to the extent that it seeks information that is equally obtainable by Plaintiffs from another source, including publicly available information and documents already produced in this litigation.

6.      Dynax objects to each and every Instruction and Interrogatory to the extent that it seeks information beyond applications relevant to aqueous film-forming foam or "AFFF." Dynax further objects to each and every Instruction and Interrogatory as overbroad, unduly burdensome, not relevant to the claims or defenses in this case, and not proportional to the needs of the case, to the extent it seeks information from outside of the United States. Except where otherwise indicated, Dynax's responses will be limited to information about Dynax's fluorosurfactants which may have been used in the United States in aqueous film-forming foam applications.

7.     Dynax objects to Plaintiff's Instruction defining the term "IDENTIFY" as overly broad and unduly burdensome to the extent it seeks to have Dynax provide information that is not within Dynax's possession, custody, or control and/or attempts to impose on Dynax obligations beyond those which are required under the Federal Rules of Civil Procedure.  Dynax further objects to Plaintiff's definition of "IDENTIFY" to the extent that it seeks to impose obligations on Dynax which are not proportional to the needs of this litigation.

8.     Dynax's responses to these Interrogatories are based upon its good faith interpretation of the Interrogatories. Should a different interpretation of any Interrogatory be asserted, Dynax reserves the right to add to, modify, or otherwise amend these responses.

9.     Dynax's responses to these Interrogatories are based only upon facts known at this time. Discovery in this MDL is ongoing, and during the course of subsequent discovery, Dynax may become aware of supplemental, additional, or other responsive information. Dynax reserves the right to update, amend, or supplement these responses. In addition, these Interrogatories are made without prejudice to Dynax's right to present further additional or other evidence or contentions in a motion for summary judgment, at trial, or otherwise, based upon information hereafter identified, obtained, or developed.

10.     In furnishing these responses, Dynax does not admit or concede the relevance, materiality, or admissibility in evidence of any Interrogatory, any information included in response thereto, or any document disclosed. All objections to the use, at trial or otherwise, of any document or piece of information disclosed in response to the Interrogatories are expressly reserved.

11.     Dynax's objections to Plaintiff's Instructions and Interrogatories are hereby incorporated by reference in its response to every Interrogatory as if fully set forth therein.

## OBJECTIONS TO PLAINTIFF'S DEFINITIONS

12.     Dynax objects to Plaintiff's definition of the term "DOCUMENT" to the extent it seeks information that is not relevant and/or proportional to the needs of the litigation and/or seeks information from individuals who are not subject to the control of Dynax. Dynax further objects to the extent the definition seeks more than is required under the Federal Rules of Civil Procedure and the applicable Orders in this case. Dynax further objects to the definition of "DOCUMENT" to the extent that it seeks information that is protected from discovery pursuant to the attorney-client, work-product, or any other applicable privilege under state or federal law. Dynax will answer this discovery using the term "DOCUMENT" as defined by Federal Rule of Civil Procedure 34(a) and consistent with the applicable Orders entered in this litigation.

13.     Dynax objects to Plaintiff's definition of the term "ELECTRONIC RECORDS" to the extent it seeks information that is not relevant and/or proportional to the needs of the litigation and/or seeks records from individuals who are not subject to the control of Dynax. Dynax further objects to the extent the definition seeks more than is required under the Federal Rules of Civil Procedure and the applicable Orders in this case. Dynax further objects to the definition of "ELECTRONIC RECORDS" to the extent that it seeks information that is protected from discovery pursuant to the attorney-client, work-product, or any other applicable privilege under state or federal law. Dynax will answer this discovery using the term "ELECTRONIC RECORDS" as defined by Federal Rule of Civil Procedure 34(a) and consistent with the applicable Orders entered in this litigation.

14.     Dynax objects to Plaintiff's definition of the term "COMMUNICATION(S)" to the extent it seeks information that is not relevant and/or proportional to the needs of the

litigation and/or seeks information regarding individuals who are not subject to the control of Dynax. Dynax further objects to the extent the definition seeks more than is required under the Federal Rules of Civil Procedure and the applicable Orders in this case. Dynax further objects to the definition of "COMMUNICATION(S)" to the extent that it seeks information that is protected from discovery pursuant to the attorney-client, work-product, or any other applicable privilege under state or federal law.

15.    Dynax objects to Plaintiff's definition of the term "INTERNAL COMMUNICATION(S)" to the extent it seeks information that is not relevant and/or proportional to the needs of the litigation. Dynax further objects to the extent the definition seeks more than is required under the Federal Rules of Civil Procedure and the applicable Orders in this case. Dynax further objects to the definition of "INTERNAL COMMUNICATION(S)" to the extent that it asks for information that is protected from discovery pursuant to the attorney-client, work-product, or any other applicable privilege under state or federal law.

16.    Dynax objects to Plaintiff's definition of "RELATING TO" and "CONCERNING" to the extent it relates to information that is not relevant and/or proportional to the needs of the litigation. Dynax further objects to the definition of "RELATING TO" and "CONCERNING" as overly broad and unduly burdensome to the extent it seeks to impose on Dynax obligations beyond those which are required under the Federal Rules of Civil Procedure.

17.    Dynax objects to Plaintiff's definition of the terms "YOU," "YOUR," and "DEFENDANT" as overly broad and unduly burdensome because it includes individuals and entities not parties to this suit and not under the control of Dynax. Dynax further objects to

this definition as it seeks to impose on Dynax discovery obligations beyond those required under the Federal Rules of Civil Procedure.

18.    Dynax objects to Plaintiff's definition of "ADVERSE EFFECT(S)" as overly broad, unduly burdensome, and not relevant and/or proportional to the needs of the litigation to the extent it seeks information about "possible" effects, which are speculative. If Dynax responds to any Interrogatories that include this term, Dynax does not concede or adopt any implication, suggestion, or assertion that an alleged causal relationship, increased risk, association, or other similar relationship exists, nor that Plaintiff has suffered injury or damage of any kind whatsoever.

19.    Dynax objects to Plaintiff's definitions of "AFFF" and "AFFF PRODUCT(s)" because they are vague, ambiguous, overbroad, not stated with reasonable particularity, and call for both speculation and expert opinion. In accordance with the common definitions of these terms, "AFFF" and "AFFF products" shall be construed to mean aqueous film-forming foam sold in the United States. Dynax never manufactured AFFF for sale or any product containing AFFF.

20.    Dynax objects to Plaintiff's definition of "ENVIRONMENTAL EFFECT(S)" as overly broad, unduly burdensome, and not relevant and/or proportional to the needs of the litigation to the extent it seeks information about "possible" effects, impacts, alternations, and/or changes, which are speculative. Dynax will construe the term "ENVIRONMENTAL EFFECT(S)" to mean any known, actual detrimental change or alteration to an environmental resource. Dynax will not consider the presence alone of a particular chemical, material, or compound to be an "ENVIRONMENTAL EFFECT." If Dynax responds to any Interrogatories that includes this term, Dynax does not concede or adopt any implication,

suggestion, or assertion in the Interrogatories that an alleged causal relationship, increased risk, association, or other similar relationship exists, nor that Plaintiff has suffered injury or damage of any kind whatsoever.

21.    Dynax objects to Plaintiff's definition of "HUMAN HEALTH EFFECT(S)" as overly broad, unduly burdensome, and not relevant and/or proportional to the needs of the litigation to the extent it seeks information about "possible" effects, impacts, alternations, changes, ailments, sicknesses, and/or diseases, which are speculative. Dynax will construe the term "HUMAN HEALTH EFFECT(S)" to mean any known, actual changes to physical health, ailments, sicknesses, or diseases relating to humans and human fetal development. Dynax does not consider the presence alone of a particular chemical, material, or compound to be "HUMAN HEALTH EFFECT(S)." If Dynax responds to any Interrogatories that includes this term, Dynax does not concede or adopt any implication, suggestion, or assertion that an alleged causal relationship, increased risk, association, or other similar relationship exists, nor that Plaintiff has suffered injury or damage of any kind whatsoever.

22.    Dynax objects to Plaintiff's definition of "MANUFACTURING DEFENDANTS" as overly broad and unduly burdensome to the extent it seeks to have Dynax provide information that is not within Dynax's possession, custody, or control. Dynax further objects to the term "MANUFACTURING DEFENDANTS" as overly broad, vague, and ambiguous in that it improperly lumps together two different types of defendants, specifically (1) defendants that "currently or formerly produced or manufactured AFFF," and (2) defendants that "currently or formerly produced or manufactured PFAS that were incorporated into any AFFF or AFFF PRODUCT." Dynax further objects to this definition to

the extent it seeks information that is not relevant and/or proportional to the needs of this litigation.

23.     Dynax objects to Plaintiff's definition of "PFAS" as overly broad, unduly burdensome, and seeks information that is not relevant and/or proportional to the needs of the litigation to the extent it includes chemicals not at issue in this litigation. Dynax further objects to the definition of "PFAS" as overly broad and unduly burdensome to the extent it seeks to have Dynax provide information that is not within Dynax's possession, custody, or control. Dynax further objects that the term "PFAS" includes thousands of diverse chemicals which are not at issue in this litigation. Dynax will construe the term "PFAS" to refer to the per- and polyfluoroalkyl substances identified in Plaintiff's complaint.

24.     Dynax objects to Plaintiff's definition of "PFOA" as overly broad and unduly burdensome to the extent it seeks to have Dynax provide information that is not within Dynax's possession, custody, or control. Dynax will construe the term "PFOA" to refer to perfluorooctanoic acid, in accordance with its generally accepted definition.

25.     Dynax objects to Plaintiff's definition of "PFOS" as overly broad and unduly burdensome to the extent it seeks to have Dynax provide information that is not within Dynax's possession, custody, or control. Dynax will construe the term "PFOS" to refer to perfluorooctanesulfonic acid, in accordance with its generally accepted definition.  Dynax further objects to all Interrogatories which include the term "PFOS" because PFOS molecules are created by the electrofluorination process and Dynax's fluorosurfactants do not include any molecules created by the electrofluorination process. Accordingly, Dynax's fluorosurfactants have never contained PFOS or substances which may break down into PFOS.

26.     Dynax objects to Plaintiff's definition of "PFOA/PFOS-CONTAINING PRODUCTS" as overly broad and unduly burdensome to the extent it seeks information that is not relevant to Plaintiff's claims or Dynax's defenses. Dynax further incorporates by reference its foregoing objections to Plaintiff's definitions of PFOS and PFOA. Dynax further objects to the extent Plaintiff's definition includes any compound that "breaks down into PFOA or PFOS" because, as it relates to PFOA, this phrase calls for speculation and/or assumptions that are not supported by scientific evidence.

27.     Dynax objects to Plaintiff's definition of "TOXICOLOGICAL EFFECT(S)" as overly broad and unduly burdensome to the extent it seeks information about "possible" effects, impacts, changes, and/or alterations, which are speculative. Dynax will construe the term "TOXICOLOGICAL EFFECT(S)" to mean any known, actual changes and/or alterations relating to the toxicity, poisonousness, and/or harm of chemicals or substances to living organisms. If Dynax responds to any Interrogatories that includes these terms, Dynax does not concede or adopt any implication, suggestion, or assertion that an alleged causal relationship, increased risk, association, or other similar relationship exists, nor that Plaintiff has suffered injury or damage of any kind whatsoever.

28.     Dynax's foregoing objections to Plaintiff's definitions are hereby incorporated by reference in its response to every Interrogatory which includes these defined terms (or variants thereof) as if fully set forth therein.

## FURTHER OBJECTIONS AND RESPONSES TO INTERROGATORIES

1.     Identify each PERSON who has supplied information used in answering these interrogatories and specify the interrogatories for which each PERSON is responsible.

**RESPONSE:**

Dynax objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, attorney work product doctrine, and/or any other applicable privilege. Subject to and without waiving this objection, Dynax responds that these responses were prepared by counsel based upon documents and information gathered with the assistance of Dynax.

2.     State whether YOU have ever conducted business in Florida, including but not limited to whether YOU maintained an office, a mailing address, or owned real property.

**RESPONSE:**

Dynax objects to this interrogatory as vague regarding the meaning of having "conducted business in" Florida.  Subject to and without waiving this objection, Dynax responds that it has never maintained an office, a mailing address, or owned real property in the State of Florida.

3.     State whether YOU have ever shipped or allowed YOUR products to be shipped to the State of Florida.

**RESPONSE:**

Dynax objects to this interrogatory insofar as it is asking about activities beyond Dynax's control.  Subject to and without waiving this objection, Dynax responds that it has never shipped any products to customers in the State of Florida.

4.     Identify all of YOUR employees responsible for the sale and/or delivery of YOUR products in the State of Florida. "IDENTIFY" for purposes of this interrogatory means

to state 1) sales to END USERS in Florida, 2) employees in Florida, and 3) facilities or real property located in Florida.

**RESPONSE:**

Dynax states that it has never sold or delivered any products to customers in the State of Florida.

5.    Identify every warehouse, distribution center, and/or common carrier YOU utilize(d) to ship YOUR products to YOUR customers.

**RESPONSE:**

Dynax objects to this interrogatory as irrelevant insofar as it asks for information about facilities outside the State of Florida.  Subject to and without waiving this objection, Dynax states that it has never utilized a warehouse or distribution center in the State of Florida to ship products to its customers.

6.    State whether YOU restrict the sale of YOUR products from any state, and if so, identify which state and the method by which YOU accomplish such restriction.

**RESPONSE:**

Dynax objects to this interrogatory as irrelevant insofar as it asks for information about states other than the State of Florida.  Dynax further objects to this interrogatory as vague. Subject to and without waiving these objections, Dynax states that it has not affirmatively sought to restrict sales of its products to the State of Florida, but has never sold or attempted to sell any products there.

7.      State whether YOU have ever registered a trade or service mark within the State of Florida.

**RESPONSE:**

Dynax states that it has never registered a trade or service mark with the State of Florida.

8.      Identify every AFFF manufacturer YOU have sold YOUR products to and the annual dollar value associated with those sales.

**RESPONSE:**

Dynax objects to this interrogatory insofar as it asks for information about states other than the State of Florida.  Subject to and without waiving this objection, Dynax directs Plaintiff to its Fact Sheet dated March 17, 2021.

9.      Identify each and every brand and/or product type of AFFF in which YOUR products are incorporated, and state whether those brands and/or product types of AFFF are sold in Florida.

**RESPONSE:**

Dynax objects to this interrogatory insofar as it asks for information about states other than the State of Florida, and because it calls for information not in Dynax's care, custody or control.  Subject to and without waiving these objections, Dynax states that once it sells its

fluorosurfactants to AFFF manufacturers, it does not determine whether or how the AFFF manufacturer uses its fluorosurfactant in its AFFF formulas or where any AFFF product that may contain its fluorosurfactants may be sold.

10.    State whether YOUR products are incorporated into any Mil-Spec AFFF appearing on the Qualified Products List and if so, identify each such product and the years it appeared on the QPL.

**RESPONSE:**

Dynax objects to this interrogatory insofar as it asks for information about states other than the State of Florida, and because it calls for information not in Dynax's care, custody or control. Subject to and without waiving these objections, Dynax believes that its products have been incorporated into numerous Mil-Spec AFFF products appearing on the QPL. However, because Dynax does not determine whether or how the AFFF manufacturer uses Dynax's fluorosurfactants in its AFFF formulas or where any AFFF product that may contain its fluorosurfactants may be sold, Dynax lacks sufficient information to answer the remainder of this Interrogatory.

11.    State whether YOU design, customize or modify any product (including its labeling or packaging) YOU sell for use within the State of Florida.

**RESPONSE:**

Dynax states that it has never sold any products to customers in the State of Florida and does not design, customize, or modify any of its products for use in the State of Florida.

12.    Identify every trade show YOU or any of YOUR employees has attended in Florida.

**RESPONSE:**

Dynax objects to this interrogatory insofar as it seeks information about activities of Dynax's employees outside of the course and scope of their employment for Dynax.  Subject to and without waiving this objection, Dynax states that neither Dynax nor any employee acting on behalf of Dynax has ever attended a trade show in Florida.

13.    Identify every trade publication in which YOUR company has appeared as an advertiser.

**RESPONSE:**

Dynax objects to this interrogatory on the grounds that it does not relate to Dynax's contacts with the State of Florida.  Subject to and without waiving this objection, Dynax states that it does not direct any advertisements specifically to the citizens, residents, or businesses of Florida.  Dynax further states pursuant to Rule 33(d) that it has already produced to Plaintiff copies of the documents from which the answer to this interrogatory may be ascertained.

14.     Identify any COMMUNICATIONS between YOU and the Florida's governmental agencies regarding whether PFOA, PFOS, and/or PFAS pose a risk to human health if found in drinking water.

**RESPONSE:**

Dynax states that it has not had any communications with the State of Florida's governmental agencies regarding whether PFOA, PFOS, and/or PFAS pose a risk to human health if found in drinking water.

15.     Identify any COMMUNICATIONS between YOU and the Florida's governmental agencies regarding whether AFFF and/or AFFF PRODUCT(S) pose a risk to human health.

**RESPONSE:**

Dynax states that it has not had any communications with the State of Florida's governmental agencies regarding whether AFFF or any AFFF products pose a risk to human health.

16.     State whether the technical data sheets or material safety data sheets for any product YOU sell that contains a warning specific to the State of Florida (Ex. California Safe Drinking Water & Toxic Enforcement Act - Proposition 65).

**RESPONSE:**

Dynax states that its technical data sheets and material safety data sheets do not contain any warnings specific to the State of Florida. Dynax further states pursuant to Rule 33(d) that it has already produced to Plaintiff the technical data sheets and material safety data sheets from which the answer to this interrogatory can be ascertained.

17.     State whether YOU directly or indirectly provide comments regarding proposed regulation of AFFF, AFFF Products, and/or **PFOA/PFOS-CONTAINING PRODUCTS** for proposed regulations within the State of Florida.

**RESPONSE:**

Dynax objects to this interrogatory as vague. Subject to and without waiving this objection, Dynax states that it has never communicated with the State of Florida's governmental agencies regarding proposed regulation of AFFF, AFFF products, or products containing PFOA or PFOS.

18.     Identify YOUR efforts to propose, draft, modify, affect, stop, or otherwise influence any ordinance regulation, legislation, policy, or law in the State of Florida related to PFOA, PFOS, and/or PFAS.

**RESPONSE:**

Dynax objects to this interrogatory as vague. Subject to and without waiving this objection, Dynax states that it has never communicated with the State of Florida's

governmental agencies regarding any ordinance, regulation, legislation, policy, or law related to PFOA, PFOA, or other PFAS.

19.     Identify YOUR efforts to propose, draft, modify, affect, stop, or otherwise influence any federal regulation, federal legislation, federal policy, or federal law related to PFOA, PFOS, and/or PFAS.

**RESPONSE:**

Dynax objects to this interrogatory on the grounds that it does not relate to Dynax's contacts with the State of Florida.  Dynax further objects to this interrogatory as vague.  Subject to and without waiving these objections, Dynax states pursuant to Rule 33(d) that it has already produced to Plaintiff copies of any documents from which the answer to this interrogatory may be ascertained.

20.     Identify all channels YOU established or utilize to provide advice to YOUR customers and potential customers regarding YOUR products in the State of Florida.

**RESPONSE:**

Dynax objects to this interrogatory as vague.  Subject to and without waiving this objection, Dynax states that it has never sold any products to customers in the State of Florida.

21.    State how YOU advertise YOUR products to customers and potential customers, identifying with specificity any DOCUMENTS YOU use to advertise.

**RESPONSE:**

Dynax objects to this interrogatory on the grounds that it does not relate to Dynax's contacts with the State of Florida.  Subject to and without waiving this objection, Dynax states that it does not direct any advertisements specifically to the citizens, residents, or businesses of Florida.  Dynax further states pursuant to Rule 33(d) that it has already produced to Plaintiff copies of the documents from which the answer to this interrogatory may be ascertained.

22.    Identify any distributors, suppliers, or retailers through whom YOU sell YOUR products and identify the volume of sales through those channels.

**RESPONSE:**

Dynax objects to this interrogatory on the grounds that it does not relate to Dynax's contacts with the State of Florida.  Subject to and without waiving this objection, Dynax states that it does not sell its products through distributors, suppliers, or retailers.

23.    Identify any contracts and/or agreements containing choice-of law clause(s) that select the State of Florida as the governing law.

**RESPONSE:**

Dynax objects to this interrogatory as vague and overbroad.  Subject to and without waiving these objections, Dynax states that it is unaware of any contracts or agreements for the sale of Dynax's products that contains a choice-of law clause that selects the law of the State of Florida as the governing law.  Dynax further states pursuant to Rule 33(d) that it has already produced to Plaintiff copies of the documents from which the answer to this interrogatory may be ascertained.

24.    Identify any and all contracts and/or agreements containing forum selection clause(s) that select the State of Florida as the chosen forum for any disputes concerning the contract.

**RESPONSE:**

Dynax objects to this interrogatory as vague and overbroad.  Subject to and without waiving these objections, Dynax states that it is unaware of any contracts or agreements for the sale of Dynax's products that contains a forum selection clause that selects the State of Florida as the chosen forum for any disputes concerning the contract.  Dynax further states pursuant to Rule 33(d) that it has already produced to Plaintiff copies of the documents from which the answer to this interrogatory may be ascertained.

25.     Identify any and all contracts and/or agreements executed and/or negotiated in the State of Florida.

**RESPONSE:**

Dynax objects to this interrogatory as vague and overbroad.  Subject to and without waiving these objections, Dynax states that it is unaware of any contracts or agreements for the sale of Dynax's products that were executed or negotiated in the State of Florida.

This the 5th day of May, 2021.

SMITH, ANDERSON, BLOUNT, DORSETT,
MITCHELL & JERNIGAN, L.L.P.

By:     /s/ Addie K.S. Ries
Addie K.S. Ries
  S.C. State Bar No. 103016
  N.C. State Bar No. 31759
Kirk G. Warner
  N.C. State Bar No. 16238
Clifton L. Brinson
  N.C. State Bar No. 34331
Post Office Box 2611
Raleigh, North Carolina 27602-2611
Telephone:    (919) 821-1220
Facsimile:    (919) 821-6800
Email:    aries@smithlaw.com
    kwarner@smithlaw.com
    cbrinson@smithlaw.com

*Attorneys for Dynax Corporation*

## CERTIFICATE OF SERVICE

I certify that on May 5, 2021, a copy of the foregoing was served via electronic mail upon the following individuals:

Frank M. Petosa
Morgan & Morgan, P.A.
4th Floor
Plantation, FL 33324
fpetosa@forthepeople.com

Nancy M. Christensen
Weitz & Luxenberg, P.C.
700 Broadway
New York, NY 10003
nchristensen@weitzlux.com

*Counsel for Plaintiff City of Stuart, Florida*

Jessica L. Pahl
Anna J. Hrom
Williams & Connolly LLP
725 Twelfth Street, N.W.
Washington, DC 20005
jphal@wc.com
ahrom@wc.com

*Bellwether Liaison Counsel for Defendants*

SMITH, ANDERSON, BLOUNT, DORSETT,
MITCHELL & JERNIGAN, L.L.P.

By:    /s/Addie K.S. Ries
        Addie K.S. Ries
         S.C. State Bar No. 103016
         N.C. State Bar No. 31759
        Kirk G. Warner
         N.C. State Bar No. 16238
        Clifton L. Brinson
         N.C. State Bar No. 34331
        Post Office Box 2611
        Raleigh, North Carolina 27602-2611
        Telephone:    (919) 821-1220
        Facsimile:    (919) 821-6800
        Email:        aries@smithlaw.com
                      kwarner@smithlaw.com
                      cbrinson@smithlaw.com

*Attorneys for Dynax Corporation*

# EXHIBIT 4

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

|  |  |
|---|---|
| **IN RE: AQUEOUS FILM- FORMING FOAMS PRODUCTS LIABILITY LITIGATON** | MDL NO. 2:18-mn-2873-RMG<br><br>This Document Relates to:<br>***City of Stuart, Florida v. 3M Company et al.,***<br>2:18-cv-03487-RMG |

## <u>DEFENDANT DYNAX CORPORATION'S RESPONSES TO PLAINTIFF CITY OF STUART, FLORIDA'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS (JURISDICTIONAL DISCOVERY)</u>

Defendant Dynax Corporation ("Dynax"), by and through undersigned counsel, and pursuant to Rule 34 of the Federal Rules of Civil Procedure, hereby responds to Plaintiff's First Set of Requests for Production ("Requests") as follows. The responses set forth below are provided in good faith and are based upon information Dynax has gathered to date. Dynax may, and reserves the right to, supplement these responses with different or additional information in the future.

### <u>OBJECTIONS TO PLAINTIFF'S INSTRUCTIONS AND REQUESTS</u>

1.     Dynax objects to Plaintiff's "Instructions" to the extent they seek more than is required under the Federal Rules of Civil Procedure and the applicable Orders in this case. Dynax further objects to the extent the instruction seeks information protected from discovery pursuant to the attorney-client, work-product, or any other applicable privilege under state or federal law.

2.     Dynax objects to Plaintiff's instruction in paragraphs 2-6 of the "Instructions" to the extent it requests any format or material inconsistent with the protocol set forth in the Protocol for Privileged Information, *see* CMO 8.

3.     Dynax objects to Plaintiff's instruction in paragraphs 9 and 10 of the "Instructions" as inconsistent with the protocol set forth in the Protocol for Privileged Information, *see* CMO 8. Dynax will produce documents consistent with the Protocol for Privileged Information.

4.     Dynax objects to each and every Request to the extent the Request is not relevant to the claims and defenses of any party. Any response to any Request shall not be construed as a concession or admission that any response, testimony, document related thereto is relevant or otherwise admissible in this action, nor shall any response constitute or be construed as a waiver of any objection to the admissibility of such responses, testimony, or documents related thereto.

5.     Dynax objects to each and every request to the extent it seeks information, testimony, or documents protected by the attorney-client privilege, the attorney work-product doctrine, and/or other evidentiary privileges or other applicable protections, immunities, or restrictions upon discovery. Nothing contained in either these objections, responses, or in any testimony or documents related thereto is intended as, or shall in any way be deemed, a waiver of any attorney-client privilege, attorney work product protection, or any other applicable privilege or doctrine. If Dynax withholds any documents on the basis of privilege, Dynax will provide a privilege log that identifies the documents in accordance with the Protocol on Privileged Information. If protected information or documents are inadvertently produced in response to the Requests, the production of such information or documents shall not constitute a waiver of Dynax's rights to assert the applicability of any privilege, protection, or immunity to the

information or documents, to seek return of such material, or to object to the use of such material at any stage of the action or in any other action or proceeding, as provided in the Protective Order Governing Confidential Information ("Protective Order").

6. Dynax objects to each and every request to the extent it seeks Dynax's private, confidential, trade secret, commercially sensitive, or proprietary information.

7. Dynax will limit any potential search for responsive documents and information to the sources and custodians identified by Dynax, agreed to by the parties, or ordered by the Court. Absent such agreement or order, Dynax will not search for or produce documents from any other source or location.

8. Dynax objects to each and every request to the extent it seeks third-party private, confidential, trade secret, or proprietary information, which information has been maintained in confidence and subject to contractual or court-ordered limitations on disclosure.

9. Dynax objects to each and every request to the extent it seeks responses, testimony, or documents related thereto not in Dynax's possession, custody, or control. In responding, Dynax will not attempt to provide testimony or documents that are unavailable or outside of its possession, custody, or control.

10. Dynax objects to each and every request to the extent that it seeks information that is equally obtainable by Plaintiff from another source, including publicly available information and documents already produced in this litigation.

11. Dynax objects to each and every request to the extent that it seeks information beyond products relevant to aqueous film-forming foam or "AFFF."

12. Dynax objects to each and every request as overbroad, unduly burdensome, not relevant to the claims or defenses in this case, and not proportional to the needs of the case, to the

extent it seeks information from outside of the United States. Except where otherwise indicated, Dynax's responses will be limited to information about Dynax's chemical products which may have been used in the United States in aqueous film-forming foam applications.

13.    Dynax objects to each and every request to the extent that it attempts to impose on Defendant obligations beyond those which are required under the Federal Rules of Civil Procedure and the applicable Orders in this litigation.

14.    Dynax's responses to these Requests are based upon its good faith interpretation of the Requests. Should a different interpretation of any Request be asserted, Dynax reserves the right to add to, modify, or otherwise change or amend these responses.

15.    Dynax's responses to these Requests are based only upon facts known at this time. Discovery in this matter is ongoing, and during the course of subsequent discovery, Dynax may become aware of supplemental, additional, or other responsive information. Dynax reserves the right to update, amend, or supplement these responses. In addition, these Requests are made without prejudice to Dynax's right to present further additional or other evidence or contentions in a motion for summary judgment, at trial, or otherwise, based upon information hereafter identified, obtained, or developed.

16.    In furnishing these responses, Dynax does not admit or concede the relevance, materiality, or admissibility in evidence of any Request, any information included in response thereto, or any document disclosed. All objections to the use, at trial or otherwise, of any document or piece of information disclosed in response to the Requests are expressly reserved.

17.    These objections are hereby incorporated into each Response to the specific Request below.

## OBJECTIONS TO PLAINTIFF'S DEFINITIONS

1.      Dynax objects to Plaintiff's Definitions and Requests in full because Dynax did not make or sell AFFF, PFOS, or PFOA and Plaintiff's Requests seek to impose an undue burden upon Dynax which is not proportional to the needs of this case or "the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *See* F.R.C.P. 26 (b)(1).

2.      Dynax objects to Plaintiff's "Definitions" to the extent they attempt to impose duties and obligations on Dynax that exceed those imposed or authorized by the Federal Rules of Civil Procedure, the Local Rules of this Court, agreements between the Parties, or the Court's orders, including, but not limited to, the extent to which they exceed the permissible scope of discovery, and/or seek to impose duties of responding and/or supplementation different from or in excess of those imposed by the applicable rules, agreements, and orders.

3.      Dynax objects to Plaintiff's "Definitions" to the extent they are overly broad and unduly burdensome because they seek to have Dynax provide information that is not within Dynax's possession, custody, or control and/or attempt to impose on Dynax obligations beyond those which are required under the Federal Rules of Civil Procedure. Dynax further objects to the extent they request information that is protected from discovery pursuant to the attorney-client privilege, work product doctrine, or any other applicable privilege under state or federal law.

4.      Dynax objects to Plaintiff's definition of the term "DOCUMENT" to the extent it seeks information that is not relevant and/or proportional to the needs of the litigation and/or seeks information from individuals who are not subject to the control of Dynax. Dynax further objects to the extent the definition seeks more than is required under the Federal Rules of Civil

Procedure and the applicable Orders in this case. Dynax further objects to the definition of "DOCUMENT" to the extent that it seeks information that is protected from discovery pursuant to the attorney-client, work-product, or any other applicable privilege under state or federal law. Dynax will answer this discovery using the term "DOCUMENT" as defined by Federal Rule of Civil Procedure 34(a) and consistent with the applicable Orders entered in this litigation.

5.     Dynax objects to Plaintiff's definition of the term "ELECTRONIC RECORDS" to the extent it seeks information that is not relevant and/or proportional to the needs of the litigation and/or seeks records from individuals who are not subject to the control of Dynax. Dynax further objects to the extent the definition seeks more than is required under the Federal Rules of Civil Procedure and the applicable Orders in this case. Dynax further objects to the definition of "ELECTRONIC RECORDS" to the extent that it seeks information that is protected from discovery pursuant to the attorney-client, work-product, or any other applicable privilege under state or federal law. Dynax will answer this discovery using the term "ELECTRONIC RECORDS" as defined by Federal Rule of Civil Procedure 34(a) and consistent with the applicable Orders entered in this litigation.

6.     Dynax objects to Plaintiff's definition of the term "COMMUNICATION(S)" to the extent it seeks information that is not relevant and/or proportional to the needs of the litigation and/or seeks information regarding individuals who are not subject to the control of Dynax. Dynax further objects to the extent the definition seeks more than is required under the Federal Rules of Civil Procedure and the applicable Orders in this case. Dynax further objects to the definition of "COMMUNICATION(S)" to the extent that it seeks information that is protected from discovery pursuant to the attorney-client, work-product, or any other applicable privilege under state or federal law.

6

7.      Dynax objects to Plaintiff's definition of the term "INTERNAL COMMUNICATION(S)" to the extent it seeks information that is not relevant and/or proportional to the needs of the litigation. Dynax further objects to the extent the definition seeks more than is required under the Federal Rules of Civil Procedure and the applicable Orders in this case. Dynax further objects to the definition of "INTERNAL COMMUNICATION(S)" to the extent that it asks for information that is protected from discovery pursuant to the attorney-client, work-product, or any other applicable privilege under state or federal law.

8.      Dynax objects to Plaintiff's definition of "RELATING TO" and "CONCERNING" to the extent it relates to information that is not relevant and/or proportional to the needs of the litigation. Dynax further objects to the definition of "RELATING TO" and "CONCERNING" as overly broad and unduly burdensome to the extent it seeks to impose on Dynax obligations beyond those which are required under the Federal Rules of Civil Procedure.

9.      Dynax objects to Plaintiff's definition of the terms "YOU," "YOUR," and "DEFENDANT" as overly broad and unduly burdensome because it includes individuals and entities not parties to this suit and not under the control of Dynax. Dynax further objects to this definition as it seeks to impose on Dynax discovery obligations beyond those required under the Federal Rules of Civil Procedure.

10.     Dynax objects to Plaintiff's definition of "AFFF" to the extent it is vague, ambiguous, overbroad, not stated with reasonable particularity, and call for both speculation and expert opinion. In accordance with its common definition, "AFFF" shall be construed to mean aqueous film-forming foam sold in the United States. Dynax never manufactured AFFF for sale and never sold AFFF or any product containing AFFF.

11.     Dynax objects to Plaintiff's definition of "AFFF PRODUCTS" for the reasons set forth in Objection No. 10 above.  Dynax further objects to the extent Plaintiff's definition includes "any product contained within AFFF."  Because Dynax did not manufacture or sell AFFF, it is without knowledge as to all products which may be contained in AFFF sold by the AFFF Manufacturers.  Dynax further objects to Plaintiff's definition to the extent that it is not limited to fluorosurfactants sold to the AFFF Manufacturers in the U.S. and broadly includes all types of fluorosurfactants.  As it relates to Dynax fluorosurfactants, Dynax will interpret the phrase "AFFF PRODUCTS" to refer to the fluorosurfactants listed in Dynax's response to Interrogatory No. 2 from the earlier discovery requests from Plaintiffs related to all cases in this litigation.

12.     Dynax objects to Plaintiff's definition of "ADVERSE EFFECT(S)" as overly broad, unduly burdensome, and not relevant and/or proportional to the needs of the litigation to the extent it seeks information about "possible" effects, which are speculative. If Dynax responds to any Requests that include this term, Dynax does not concede or adopt any implication, suggestion, or assertion that an alleged causal relationship, increased risk, association, or other similar relationship exists, nor that Plaintiff has suffered injury or damage of any kind whatsoever.

13.     Dynax objects to Plaintiff's definition of "ENVIRONMENTAL EFFECT(S)" as overly broad, unduly burdensome, and not relevant and/or proportional to the needs of the litigation to the extent it seeks information about "possible" effects, impacts, alternations, and/or changes, which are speculative. Dynax will construe the term "ENVIRONMENTAL EFFECT(S)" to mean any known, actual detrimental change or alteration to an environmental resource. Dynax will not consider the presence alone of a particular chemical, material, or

compound to be an "ENVIRONMENTAL EFFECT."  If Dynax responds to any Requests that include this term, Dynax does not concede or adopt any implication, suggestion, or assertion in the Requests that an alleged causal relationship, increased risk, association, or other similar relationship exists, nor that Plaintiff has suffered injury or damage of any kind whatsoever.

14.    Dynax objects to Plaintiff's definition of "HUMAN HEALTH EFFECT(S)" as overly broad, unduly burdensome, and not relevant and/or proportional to the needs of the litigation to the extent it seeks information about "possible" effects, impacts, alternations, changes, ailments, sicknesses, and/or diseases, which are speculative. Dynax will construe the term "HUMAN HEALTH EFFECT(S)" to mean any known, actual changes to physical health, ailments, sicknesses, or diseases relating to humans and human fetal development. Dynax does not consider the presence alone of a particular chemical, material, or compound to be "HUMAN HEALTH EFFECT(S)." If Dynax responds to any Requests that include this term, Dynax does not concede or adopt any implication, suggestion, or assertion that an alleged causal relationship, increased risk, association, or other similar relationship exists, nor that Plaintiff has suffered injury or damage of any kind whatsoever.

15.    Dynax further objects to Plaintiff's definition of "MANUFACTURING DEFENDANTS" as overly broad, vague, and ambiguous in that it improperly lumps together two different types of defendants, specifically (1) defendants that "currently or formerly produced or manufactured AFFF," and (2) defendants that "currently or formerly produced or manufactured PFAS that were incorporated into any AFFF or AFFF PRODUCT." Dynax has never manufactured AFFF for sale and has never manufactured or produced PFOS or PFOA.

16.    Dynax objects to Plaintiff's definition of "PFAS" as overly broad, unduly burdensome, and seeks information that is not relevant and/or proportional to the needs of the

litigation to the extent it includes chemicals not at issue in this litigation. Dynax further objects to the definition of "PFAS" as overly broad and unduly burdensome to the extent it seeks to have Dynax provide information that is not within Dynax's possession, custody, or control. Dynax further objects that the term "PFAS" includes thousands of diverse chemicals which are not at issue in this litigation.   Dynax will construe the term "PFAS" to refer to the per- and polyfluoroalkyl substances identified in Plaintiff's complaint.

17.    Dynax objects to Plaintiff's definition of "PFOA" as overly broad and unduly burdensome to the extent it seeks to have Dynax provide information that is not within Dynax's possession, custody, or control. Dynax will construe the term "PFOA" to refer to perfluorooctanoic acid, in accordance with its generally accepted definition.

18.    Dynax objects to Plaintiff's definition of "PFOS" as overly broad and unduly burdensome to the extent it seeks to have Dynax provide information that is not within Dynax's possession, custody, or control. Dynax will construe the term "PFOS" to refer to perfluorooctanesulfonic acid, in accordance with its generally accepted definition. Dynax further objects to all Interrogatories which include the term "PFOS" because PFOS molecules are created by the electrofluorination process and Dynax's fluorosurfactants do not include any molecules created by the electrofluorination process. Accordingly, Dynax's fluorosurfactants have never contained PFOS or substances which may break down into PFOS.

19.    Dynax objects to Plaintiff's definition of "PFOA/PFOS-CONTAINING PRODUCTS" as overly broad and unduly burdensome to the extent it seeks information that is not relevant to Plaintiff's claims or Dynax's defenses. Dynax further incorporates by reference its foregoing objections to Plaintiff's definitions of PFOS and PFOA.  Dynax further objects to Plaintiff's definition because it includes any compound that "breaks down into PFOA or PFOS"

to the extent this phrase calls for speculation and/or assumptions that are not supported by scientific evidence.

20.    Dynax objects to Plaintiff's definition of "TOXICOLOGICAL EFFECT(S)" as overly broad and unduly burdensome to the extent it seeks information about "possible" effects, impacts, changes, and/or alterations, which are speculative. Dynax will construe the term "TOXICOLOGICAL EFFECT(S)" to mean any known, actual changes and/or alterations relating to the toxicity, poisonousness, and/or harm of chemicals or substances to living organisms. If Dynax responds to any Requests that includes these terms, Dynax does not concede or adopt any implication, suggestion, or assertion that an alleged causal relationship, increased risk, association, or other similar relationship exists, nor that Plaintiff has suffered injury or damage of any kind whatsoever.

21.    Dynax's foregoing objections to Plaintiff's definitions are hereby incorporated by reference in its response to every Request which includes defined terms.

## FURTHER OBJECTIONS AND RESPONSES TO REQUESTS FOR PRODUCTION

1.    Produce an inventory of all of your real property located in the State of Florida.

**RESPONSE:**

Dynax states that it has no real property located in the State of Florida.

2.    Produce any and all contracts or agreements related to your ownership, operations, installation, lease and/or use of any real property or facility in the State of Florida.

**RESPONSE:**

None.

3.      Produce DOCUMENTS sufficient to show the dollar amount of revenues generated from sales in the State of Florida.

**RESPONSE:**

Dynax states that it has no sales in the State of Florida.

4.      Produce DOCUMENTS sufficient to show the dollar amount of revenues generated from sales related to YOUR products which may be used or incorporated into the manufacture of AFFF, broken down by customer name, product, date sold, and quantity sold within the State of Florida.

**RESPONSE:**

Dynax states that it has no sales in the State of Florida.

5.      Produce DOCUMENTS related the approval of YOUR products for use in Mil-Spec AFFF appearing on the Qualified Products list.

**RESPONSE:**

Dynax objects to this request on the grounds that it does not relate to Dynax's contacts with the State of Florida.  Dynax further objects to this request as vague.  Subject to and without waiving these objections, Dynax states that it does not manufacture Mil-Spec AFFF.  Dynax also refers Plaintiff to the Military Specification for AFFF and Dynax's prior document production (including but not limited to documents related to the Small Business Innovation Research grants performed by Dynax).

12

6.      Produce any sales or marketing data in your possession, custody, or control related to annual sales of Mil-Spec AFFF and the locations of those sales.

**RESPONSE:**

Dynax objects to this request insofar as it seeks information regarding sales of products outside the State of Florida.  Subject to and without waiving this objection, Dynax states that it does not market or sell AFFF.

7.      Produce any and all bills of lading, invoices, manifests, and/or waybills for YOUR products shipped to the State of Florida.

**RESPONSE:**

Dynax states that it does not and has not shipped any products to customers in the State of Florida.

8.      Produce any and all COMMUNICATIONS between YOU and the State of Florida's governmental agencies regarding whether PFOA, PFOS, and/or PFAS pose a risk to human health if found in drinking water.

**RESPONSE:**

None.

9.      Produce any and all COMMUNICATIONS between YOU and the State of Florida's governmental agencies regarding whether AFFF and/or AFFF PRODUCT(S) pose a risk to human health.

**RESPONSE:**

    None.

10.      Produce any and all COMMUNICATIONS between YOU and the State of Florida's governmental agencies regarding whether PFOA, PFOS, and/or PFAS pose a risk to human health.

**RESPONSE:**

    None.

11.      Produce any DOCUMENTS and/or CORRESPONDENCE related to any comments, proposals, or revisions YOU made regarding proposed regulation of AFFF, AFFF Products, and/or **PFOA/PFOS-CONTAINING PRODUCTS** for proposed regulations within the State of Florida.

**RESPONSE:**

    None.

14

12.     Produce any and all DOCUMENTS and/or CORRESPONDENCE related to YOUR efforts to propose, daft, modify, affect, stop, or otherwise influence any ordinance regulation, legislation, policy, or law in the State of Florida related to PFOA, PFOS, and/or PFAS.

**RESPONSE:**

None.

13.     Produce any and all DOCUMENTS and/or CORRESPONDENCE related to YOUR efforts to propose, daft, modify, affect, stop, or otherwise influence any federal regulation, federal legislation, federal policy, or federal law related to PFOA, PFOS, and/or PFAS.

**RESPONSE:**

Dynax objects to this request on the grounds that it does not relate to Dynax's contacts with the State of Florida.  Dynax further objects to this request as vague.  Subject to and without waiving these objections, Dynax states that, to the extent any documents which may be considered responsive to this request exist, they have already been produced to Plaintiff.

14.     Produce any DOCUMENTS and/or CORRESPODENCE related to technical data sheets or material safety data sheets for any product you sell that contains a warning specific to the State of Florida (Ex. California Safe Drinking Water & Toxic Enforcement Act - Proposition 65).

**RESPONSE:**

Dynax states that its technical data sheets and material safety data sheets do not contain any warnings specific to the State of Florida.  Dynax further states that it has already produced to Plaintiff all of its technical data sheets and material safety data sheets.

15.     Produce any and all DOCUMENTS and/or COMMUNICATIONS related to advertisements, brochures, or sales materials YOU used to educate customers and potential customers regarding YOUR products.

**RESPONSE:**

Dynax objects to this request on the grounds that it does not relate to Dynax's contacts with the State of Florida.  Subject to and without waiving this objection, Dynax states that it does not direct any advertisements, brochures, or sales material specifically to the citizens, residents, or businesses of Florida.  Dynax further states that it has already produced to Plaintiff documents responsive to this request.

16.     Produce any and all contracts and/or agreements containing choice-of law clause(s) that select the State of Florida as the governing law.

**RESPONSE:**

Dynax objects to this request as vague and overbroad.  Subject to and without waiving these objections, Dynax states that it is unaware of any contracts or agreements for the sale of Dynax's products that contains a choice-of law clause that selects the State of Florida as the governing law.  Dynax further states that it has already produced to Plaintiff copies of its relevant contracts and agreements.

16

17.    Produce any and all contracts and/or agreements containing forum selection clause(s) that select the State of Florida as the chosen forum for any disputes concerning the contract.

**RESPONSE:**

Dynax objects to this interrogatory as vague and overbroad.  Subject to and without waiving these objections, Dynax states that it is unaware of any contracts or agreements for the sale of Dynax's products that contains a forum selection clause that selects the State of Florida as the chosen forum for any disputes concerning the contract.  Dynax further states that it has already produced to Plaintiff copies of its relevant contracts and agreements.

18.    Produce any and all contracts and/or agreements executed and/or negotiated in the State of Florida.

**RESPONSE:**

Dynax objects to this request as vague and overbroad.  Subject to and without waiving these objections, Dynax states that it is unaware of any contracts or agreements for the sale of Dynax's products that were executed or negotiated in the State of Florida.

19.    Produce any and all DOCUMENTS in you possession, custody, and control which relate to the states in which you anticipate YOUR products would be used once incorporated into AFFF.

**RESPONSE:**

Dynax objects to this request insofar as it asks for information about states other than the State of Florida, and because it calls for information not in Dynax's care, custody or control. Subject to and without waiving these objections, Dynax states that because its fluorosurfactants are used as commercial intermediates, Dynax anticipates that its fluorosurfactants will be used only by the sophisticated AFFF manufacturers to which they are sold and none of those AFFF manufacturers are located in the State of Florida. Dynax further states that once it sells its fluorosurfactants to AFFF manufacturers, it does not determine whether or how the AFFF manufacturer uses Dynax's fluorosurfactant in its AFFF formulas or where any AFFF product which was made with Dynax's fluorosurfactants may be used.

20.    Produce any and all DOCUMENTS related to the use of YOUR products by YOUR customers within the State of Florida.

**RESPONSE:**

Dynax states that it does not have any customers within the State of Florida.

This the 5th day of May, 2021.

SMITH, ANDERSON, BLOUNT, DORSETT,
MITCHELL & JERNIGAN, L.L.P.

By:     /s/ Addie K.S. Ries
        Addie K.S. Ries
          S.C. State Bar No. 103016
          N.C. State Bar No. 31759
        Kirk G. Warner
          N.C. State Bar No. 16238
        Clifton L. Brinson
          N.C. State Bar No. 34331
        Post Office Box 2611
        Raleigh, North Carolina 27602-2611
        Telephone:    (919) 821-1220
        Facsimile:    (919) 821-6800
        Email:       aries@smithlaw.com
                    kwarner@smithlaw.com
                    cbrinson@smithlaw.com

*Attorneys for Dynax Corporation*

## CERTIFICATE OF SERVICE

I certify that on May 5th, 2021, a copy of the foregoing was served via electronic mail upon the following individuals:

Frank M. Petosa
Morgan & Morgan, P.A.
4th Floor
Plantation, FL 33324
fpetosa@forthepeople.com

Nancy M. Christensen
Weitz & Luxenberg, P.C.
700 Broadway
New York, NY 10003
nchristensen@weitzlux.com

*Counsel for Plaintiff City of Stuart, Florida*

Jessica L. Pahl
Anna J. Hrom
Williams & Connolly LLP
725 Twelfth Street, N.W.
Washington, DC 20005
jphal@wc.com
ahrom@wc.com

*Bellwether Liaison Counsel for Defendants*

SMITH, ANDERSON, BLOUNT, DORSETT,
MITCHELL & JERNIGAN, L.L.P.

By:   /s/Addie K.S. Ries
       Addie K.S. Ries
        S.C. State Bar No. 103016
        N.C. State Bar No. 31759
       Kirk G. Warner
        N.C. State Bar No. 16238
       Clifton L. Brinson
        N.C. State Bar No. 34331
       Post Office Box 2611
       Raleigh, North Carolina 27602-2611
       Telephone:   (919) 821-1220
       Facsimile:   (919) 821-6800
       Email:      aries@smithlaw.com
                  kwarner@smithlaw.com
                  cbrinson@smithlaw.com

       *Attorneys for Dynax Corporation*