June 16, 2021

*Via CM/ECF and E-Mail (gergel_ecf@scd.uscourts.gov; blaise_niosi@scd.uscourts.gov)*

The Honorable Richard M. Gergel
U.S. District Court for the District of South Carolina
J. Waties Waring Judicial Center
83 Meeting Street
Charleston, South Carolina 29401

Re:   *In re Aqueous Film-Forming Foams Product Liability Litigation* (MDL No. 2873)

Dear Judge Gergel:

Defense Leadership respectfully requests that the Court resolve a threshold issue regarding the schedule for discovery in the Water Provider bellwether cases by ordering that there be an eight-week extension on initial Tier One core bellwether fact discovery and an eight-month period for in-depth Tier Two bellwether fact discovery.[1] Although the parties agree that the deadline for Tier One discovery, as set forth in CMO 13, should be adjusted, they disagree as to how long that extension should be. Similarly, although CMO 13 calls for an additional period of fact discovery once the narrower subset of Water Provider Bellwether Trial Pool cases is selected for in-depth Tier Two workup, the parties disagree as to how long that period of fact discovery should be.

For over two years, Plaintiffs' Leadership has taken extremely broad discovery of Defendants, and that discovery continues to this day, with no signs of letting up. As the monthly Joint Status Reports make clear, Defendants have rolled up their sleeves and gotten this discovery done. But now that it is Defendants' turn to take discovery of specific plaintiffs (many of which are large, municipal entities), Plaintiffs' Leadership is seeking to compress and artificially limit discovery into these critical bellwether cases. This is both unfair and inconsistent with the Court's repeated guidance that discovery in this MDL will be robust, and equally so as to both sides.

This is not to say that Defense Leadership believes discovery cannot be efficiently accomplished in these cases. To the contrary, Defense Leadership's proposals seek to keep these cases on an accelerated track and set ambitious deadlines that will require dedication and coordination on the part of all parties to achieve. Defense Leadership believes that it would be reasonable to request even more time to work up these initial bellwethers, and the Defense Leadership's proposals already reflects significant compromise and willingness to commit to a tight timeline. But as described below, the pace of discovery to date has been slow, and even these extension proposals work only if the bellwether plaintiffs additionally commit to significantly accelerating the pace of discovery, starting with promptly completing their document productions.

---

[1] Pursuant to the parties' agreement and as previously discussed with chambers, this request is being made by letter-brief. If the Court prefers that the request be made by formal motion, Defense Leadership is happy to do so.

The Honorable Richard M. Gergel
June 16, 2021
Page 2

Although these two fact discovery periods represent critical, threshold issues, the parties also are currently unable to reach agreement as to a number of remaining aspects of a scheduling order for a Tier Two scheduling CMO. Defense Leadership believes that the parties should continue to meet-and-confer on these aspects of the schedule and that, after having clarity as to the timing of the fact discovery periods in Tier One and Tier Two, the parties can more concretely negotiate as to the remaining periods. Nevertheless, in the interests of completeness, Defense Leadership presents their position as to those additional aspects as well.

**Background**

CMO 13 permits the parties to take discovery in the ten cases the Court approved for the Water Provider Bellwether Discovery Pool. That Order divides discovery into two different tiers. Tier One permits "Core Discovery" and provides that "the parties will have the opportunity to conduct further Tier Two discovery if the case further is ultimately selected as Bellwether Trial Pool Case." CMO 13 ¶ F. The Court established a structure by which, in Tier One, the parties would obtain sufficient initial case-specific fact discovery to intelligently select a subset of cases as Trial Pool Cases. *See id.* at 1–2. Tier Two then allows for the in-depth fact discovery necessary to try the Tier Two cases, followed by other normal pre-trial phases such as expert discovery, *Daubert* motions, and dispositive motions. *Id.* ¶ I.

In keeping with this concept of a targeted and necessarily limited period of initial fact discovery, CMO 13 allocated only five months for Tier One fact discovery in all ten cases. This was to encompass written discovery, document productions, and initial depositions. *Id.* ¶ F. Because the schedule is ambitious, Defense Leadership worked quickly to initiate discovery—appointing specific case managers for each of the ten bellwether cases before discovery even began and serving requests for production and interrogatories on the very first day CMO 13 allowed.

Unfortunately, it has taken more time than anticipated for the ten bellwether plaintiffs to begin responding to this written discovery. Near the outset, the PEC asked for a one-month extension to serve objections and responses as they worked to appoint case managers for each of the cases. The PEC also indicated that the bellwether plaintiffs (all municipal or private entities with email systems to search) needed time to coordinate the logistics of the collection process, identify relevant custodians, and deal with other matters attendant to starting up initial discovery.

Defense Leadership agreed to the requested one-month extension but expressed significant misgivings about the August 6 deadline in light of that extension. In agreeing to the extension, Defense Leadership requested that the ten plaintiffs' responses and objections be accompanied shortly thereafter by substantial, and substantive, document productions to help keep the schedule on track.

The ten plaintiffs responded to the written discovery within the extended period, but they did not provide substantial or substantive document productions as the parties had discussed. For example, under the agreed extension, initial productions from the bellwether plaintiffs were due in or around the first week of May. But, as reported in the May JSR filed just five weeks ago, by that time the productions had only barely started. *See* Joint Status Report at 36 (May 7, 2021). There

The Honorable Richard M. Gergel
June 16, 2021
Page 3

still remains a significant way to go. Some plaintiffs have not made any further productions since their initial, limited productions. For others, Defendants are still awaiting promised search term hit reports. Some plaintiffs are having difficulties running search terms in the first place, given limitations inherent in their systems. And, in other cases, *collections* of emails and other electronic files happened only this past week (with no estimate as to when those documents will ultimately be searched, reviewed, and produced).

In short, although Defense Leadership assumes that the bellwether plaintiffs' counsel has worked diligently to start collection and review, progress has been slow. To be fair, this is often the case at the start of discovery, and particularly discovery conducted during the pandemic and with many clients that do not have sophisticated IT departments. Accordingly, the parties have worked cooperatively over the past few months, exchanging discovery letters, holding numerous telephonic meet-and-confers (including, in some cases, standing weekly calls between the respective case managers), and working to narrow the scope of good-faith disputes.[2] As of today, the parties are getting closer to agreement on key email search parameters, including search terms and custodians. And, in cases in which plaintiffs do not have IT departments that can handle document collection, as pandemic restrictions have eased, the plaintiff case managers were able to start visiting their clients in-person for the first time starting last week to help oversee and better understand the collection processes.

Regardless of the underlying cause of these delays, the bottom line is that even today, with seven weeks ostensibly left to go in the fact discovery period, none of the ten bellwether plaintiffs has been able to estimate when they can substantially complete their Tier One productions. And some have barely gotten started, with a number of plaintiffs still having not made any significant production of emails and/or having produced fewer than 500 documents.

Aside from document discovery, there also remain substantial questions around when depositions necessary to Tier One Core Discovery will occur. For example, the bellwether plaintiffs have noticed Rule 30(b)(6) depositions of each of the six foam manufacturing defendant groups regarding their sales into the "relevant geographic areas" for the various bellwether locations, but the PEC is still coordinating its outreach to each of the implicated defendants to negotiate the details, and dates have not yet been set for five of those depositions.[3] Likewise, although the bellwether plaintiffs' productions have barely begun, Defense Leadership has also served Rule 30(b)(6) notices on each of the bellwether plaintiffs to keep the process moving. Although Defense Leadership recognizes that not every document needs to be produced before these depositions occur, the document productions are certainly not advanced enough to allow those depositions to go forward any time soon, let alone by the current deadline or even close to

---

[2] The parties, however, may need to seek resolution of some of the disputes via motions filed with the Court.

[3] The sole Rule 30(b)(6) deposition that has been scheduled—for a defendant (Amerex) named in only two of the bellwether cases and that has no records of sales into those geographic areas—has been set for July 14, 2021, three weeks before the current Tier One Core Discovery deadline.

The Honorable Richard M. Gergel
June 16, 2021
Page 4

it. And this is to say nothing of other fact depositions that may be necessary during Tier One Core Discovery.

As just one final example of where things stand, Defense Leadership has also served dozens of third-party subpoenas and FOIA requests seeking additional case-specific testing, remediation, and investigation data necessary for Tier One Core Discovery. Negotiations as to those subpoenas are progressing, though many subpoena and FOIA request recipients have requested extensions of time in which to respond. Some have refused to produce documents at all, claiming that their contracts with the U.S. Government prevent them from doing so.

In short, although Defendants are working hard to keep on pace with an accelerated schedule for Tier One Core Discovery, it is indisputable that the current schedule needs to be adjusted to allow the targeted discovery Defense Leadership needs to properly assess which Discovery Pool cases are appropriate for inclusion in the Trial Pool. When this necessarily limited discovery is complete, and those cases have been selected, there will need to be an appropriate period for the intensive Tier Two fact discovery necessary to prepare these cases for trial.

### Tier One Should Be Extended by Eight Weeks

The PEC has contended that the parties are only a month behind the original Tier One schedule and that, therefore, the parties need only one additional month of discovery to be able to select cases for the Tier Two Trial Pool. But the parties have been a month behind schedule from the very outset when Plaintiff's Leadership requested a one-month extension for the bellwether plaintiffs to serve their written objections and responses to Defense Leadership's requests for production and interrogatories. This was then compounded by the bellwether plaintiffs' initial lack of substantial and substantive productions of documents. Only in the past week or so (more than three months after Defense Leadership served their discovery requests) has it appeared that the parties are starting to make real and significant progress with respect to the collection and review process. And, in many cases, that progress has not yet yielded meaningful production of documents.

Moreover, no bellwether plaintiff has been willing to commit, or even estimate, a date by which it can substantially complete document production. Substantial due diligence will be necessary—just as the PEC did with Defendants—to ensure that the bellwether plaintiffs conducted a robust collection, search, and production process, including confirming that plaintiffs are not having their non-IT employees search through their electronic files on their own (which Defense Leadership understands has been occurring in some cases). Therefore, an extension of only four weeks to complete everything required to reach substantial completion of production plus a limited set of depositions based on those productions is not realistic.

In truth, the progress to date indicates that Tier One should be extended by at least three months. Defense Leadership recognizes, however, that Tier One is meant to allow the parties to intelligently select cases for the Trial Pool and not to get every bit of discovery they might want to have in Tier One (although the selection of Trial Pool cases is a vitally important decision in

The Honorable Richard M. Gergel
June 16, 2021
Page 5

any MDL).  In addition, Defense Leadership has always intended that Tier Two allow for the in-depth, trial preparation discovery that necessarily cannot happen during this abbreviated Tier One.

In the interests of expediency, therefore, Defense Leadership proposes to complete Tier One Core Discovery with just a short, two-month extension of time.  That would give the parties the additional time necessary to resolve their ongoing discovery discussions in the next several weeks, to substantially complete document productions, and to take a limited set of initial depositions.  It would also permit Defense Leadership to obtain responses to the third-party discovery, including FOIA requests, that they have issued over the past few months.  This assumes, of course, that the bellwether plaintiffs are now in a position to significantly accelerate the progress of discovery and can promptly achieve substantial completion of their document productions.  Conversely, if discovery continues to proceed at the current pace, even an eight-week extension would not be sufficient to complete Tier One and an additional extension will be required.

### Tier Two Should Allow for Eight Months of Fact Discovery

Under CMO 13, the abbreviated Tier One Core Discovery timeframe was predicated upon receiving appropriate time in Tier Two for additional, more intensive factual discovery of Trial Pool cases.  The parties have agreed to propose a smaller subset of two to four cases for Tier Two, which will serve as the first pool to workup for trials in this MDL.  Thus, full and robust discovery in these cases is vitally important so that the parties can fully and fairly prepare them for trial.

An eight-month period for this additional, in-depth discovery also works to ameliorate the delays and other impediments faced in Tier One Core Discovery.  Rather than having to navigate this discovery across all ten cases, the parties can focus their efforts on just these two to four cases.  Without knowing which cases these will be, it is hard to say what this will entail.  Regardless of the cases selected, it will most certainly entail fully digesting and analyzing all of the documents and written discovery received, assessing what further document production and written discovery is necessary, conducting numerous additional fact depositions, and all the other tasks attendant to factually preparing cases for trial.  Aside from this additional discovery from the bellwether plaintiffs themselves, Tier Two discovery will also focus on additional third-party discovery.  Allowing such discovery to largely be deferred to Tier Two ensures that most of the burden on third-parties will be limited to the actual Trial Pool cases.

No one disputes that CMO 13 contemplates an additional fact discovery period in Tier Two.  The only question before the Court is how long that discovery should take, accounting for the limited discovery permitted in Tier One and the importance of the discovery necessary to Tier Two.  Notably, aside from limited fact sheet discovery conducted to date, the bellwether process is the very first time Defendants have had the opportunity to conduct discovery of any Plaintiff.  For more than two years (not counting voluminous discovery of some defendants conducted in some of the pre-MDL cases), Plaintiffs' Leadership has advocated for and taken in-depth document, written, and deposition discovery of Defendants, and that discovery continues today, both as to general liability issues and in the bellwether cases themselves.  Very few discovery disputes have been raised with the Court, because Defendants have simply produced essentially everything Plaintiffs' Leadership has asked for, no matter how long that has taken.

The Honorable Richard M. Gergel
June 16, 2021
Page 6

Discovery is a two-way street. Yet, now that they are on the receiving end of discovery requests, Plaintiffs' Leadership has gone from advocating for robust discovery to now insisting that Defendants' discovery period should be significantly constrained to as little as one or two months in Tier Two. Plaintiffs' suggestion that Defendants could take all the necessary Tier Two fact discovery of the bellwether plaintiffs themselves—let alone complete critical third-party discovery—within that timeframe is unfair and unrealistic.

As with the Tier One extension, although Defense Leadership believes that a fact discovery period in Tier Two of ten months would be reasonable in light of the rate of progress to date, in the interests of compromise and efficiency, Defense Leadership proposes to complete Tier Two fact discovery in eight months.

\* \* \* \* \* \* \* \*

Defense Leadership's proposals regarding fact discovery in Tiers One and Two fit CMO 13's structure, accommodate the nascent progress of Tier One discovery to date, and permit the in-depth and fulsome discovery necessary to fairly prepare these cases for trial. Rather than seek "scorched earth" discovery in Tier One, Defendants seek only an additional brief period for the targeted and limited discovery that will enable them to intelligently assess these cases for the Trial Pool. Then, as CMO 13 contemplates, Defendants will seek in-depth, trial preparation factual discovery as to the subset of cases in the Trial Pool. This approach enhances efficiency and minimizes unnecessary burden by limiting more extensive discovery to only those cases selected for the Trial Pool.

**The Parties Also Dispute Other Aspects of the Tier Two Scheduling CMO**

Defense Leadership and the PEC have held multiple meet-and-confers as to the format and substance of a scheduling order for Tier Two and have reached agreement on a number of aspects of that proposed CMO. Certain disputes remain, however. As noted above, Defense Leadership believes that further discussions with the PEC as to these aspects of the schedule—particularly once the parties have the Court's guidance regarding the timing for additional factual discovery in Tier One and Tier Two—may still result in agreement. So that the Court has a full picture of the range of disputes, however, Defense Leadership sets forth their positions on those remaining disputes.

*Schedule for Expert Discovery*

These bellwether cases present the first opportunity for any expert discovery in this MDL. It will therefore be a critical, and time-consuming, phase of the litigation given the large number of experts that are likely to be at issue and the complexity of the issues on which they will testify.

The parties have agreed on a structure for expert discovery to propose to the Court, but disagree as to the timeframes to use within that schedule. Defense Leadership proposes the following schedule, with the PEC's position noted as to each deadline:

The Honorable Richard M. Gergel
June 16, 2021
Page 7

      i. **Eight** weeks after completion of fact discovery for Plaintiffs to disclose general and case-specific expert witness reports.
- The PEC proposes just **four** weeks.[4]

      ii. **Eight** weeks after the Plaintiffs' disclosure of their expert witness reports for Defendants to disclose general and case-specific expert witness reports.
- The PEC again proposes just **four** weeks.

      iii. **Four** weeks for rebuttal expert witness reports, if any, and only for good cause shown.
- The PEC proposes **three** weeks.

      iv. All depositions of expert witnesses to be completed within **eight** weeks of completion of expert reports.
- As with other such deadlines, the PEC proposes **four** weeks.

This is, in Defense Leadership's view, the bare minimum of time that would be reasonable for expert discovery in a litigation such as this one. Although further discussions may result in an agreement, the PEC's proposed compressed timeframes are untenable.

*Timing of* Daubert *Motions and Dispositive Motions*

The parties also generally have reached agreement on the structure of a schedule for *Daubert* motions and dispositive motions to propose to the Court, but again disagree as to the amount of time to allocate for each of these stages.

Defense Leadership proposes that *Daubert* motions be filed within **eight** weeks of the close of expert discovery, with oppositions due **four** weeks later and replies due within **three** weeks. In contrast, Defense Leadership understands that the PEC proposes the schedule be compressed to **two** weeks for opening briefs, **four** weeks for oppositions, and **two** weeks for replies. Defense Leadership again believes that the PEC's proposed schedule is overly compressed, but there is likely room for the parties to reach agreement on the schedule for this briefing.

For summary judgment briefing, Defense Leadership proposes that briefing begin **twelve** weeks after the close of expert discovery, which would allow the sequenced filing of *Daubert* motions and the dispositive motions. Staggered briefing will also allow the parties to incorporate into their dispositive motions any arguments that might be predicated on a failure of proof due to

---

[4] Because this deadline applies only to the PEC's submission of its own expert reports, Defense Leadership may be able to reach agreement on this particular deadline but have not had a sufficient opportunity to discuss it within the defense group as a whole.

The Honorable Richard M. Gergel
June 16, 2021
Page 8

lack of competent expert evidence. The PEC, however, proposes that dispositive motions be filed at the same time as or before *Daubert* motions.[5]

*Timing of Trial*

The parties have not yet agreed on how to proceed with trial scheduling. Defense Leadership believes the Court is best suited to manage its docket and make the determinations regarding the timing of trial, and that the Court will be better able to do that after the cases have advanced further. Accordingly, Defense Leadership has proposed the following approach for trial setting:

> Within seven days of the completion of summary judgment briefing, the parties shall meet and confer regarding which of the remaining Bellwether Trial Pool cases should be selected for potential trial. On an agreed date, the parties shall promptly submit to the Court either agreed recommended case selections or their respective positions on what the sequence of trial settings should be.

Defense Leadership understands that the PEC, in contrast, proposes that the Court set a definitive trial date for the first Trial Pool case in the Tier Two scheduling CMO, with the others to be scheduled later. Defense Leadership believes that this is premature. Aside from all the threshold timing issues outlined above, the parties also do not know which cases will be in the Trial Pool and cannot intelligently suggest what an appropriate length of trial might be so that the Court might properly consider when a trial could be worked into its docket.

\* \* \* \* \* \* \* \*

In sum, the PEC's proposed schedule passes well beyond the bounds of what can reasonably be accomplished at this stage of the MDL, particularly given the importance of these initial bellwether cases to this large and complex MDL as a whole. It is difficult to negotiate the later deadlines in the case, however, without first having a better understanding of the factual discovery timeframes in Tier One and Tier Two.

Defense Leadership therefore respectfully requests that this Court (i) amend CMO 13 to allow for a close of Tier One Core Discovery on or after **October 1, 2021** and (ii) direct the parties to submit a proposed CMO governing the schedule for Tier Two that includes an additional fact discovery period for the Trial Pool cases of at least **eight months**. If this Court is inclined to reach the remaining scheduling disputes, Defense Leadership requests that this Court direct the parties to include—in their proposed CMO for Tier Two—Defense Leadership's proposed deadlines and schedule as to expert discovery, *Daubert* motions, dispositive motions, and trial setting as set forth herein.

---

[5] The parties also dispute the length of time for reply briefs, with Defense Leadership proposing three weeks and the PEC proposing two weeks.

The Honorable Richard M. Gergel
June 16, 2021
Page 9

                Respectfully submitted,

                /s/ *Jessica L. Pahl*
                on behalf of:

                /s/ *Joseph G. Petrosinelli*

                Joseph G. Petrosinelli
                Williams & Connolly LLP
                725 Twelfth Street, N.W.
                Washington, DC 20005
                P: (202) 434-5547
                F: (202) 434-5029
                jpetrosinelli@wc.com

                /s/ *Michael A. Olsen*

                Michael A. Olsen
                Mayer Brown LLP
                71 South Wacker Drive
                Chicago, IL 60606
                P: (312) 701-7120
                F: (312) 706-8742
                molsen@mayerbrown.com

                *Co-lead Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on June 16, 2021, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing upon counsel of record.

Dated: June 16, 2021

                                                    /s/ Jessica L. Pahl
                                                  Jessica L. Pahl