**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | | |
|---|---|---|
| | ) | MDL No. 2873 |
| EMERALD COAST UTILITES | ) | |
| AUTHORITY, | ) | Master Docket No. 2:18-mn-2873 |
| | ) | |
| | ) | JUDGE RICHARD M. GERGEL |
| Plaintiff, | ) | |
| v. | ) | This Document relates to: |
| | ) | |
| 3M COMPANY, et al., | ) | Civil Case No. 2:18-cv-3488-RMG |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT DYNAX**
**CORP.'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(2)**

## I.    <u>INTRODUCTION</u>

Plaintiff, Emerald Coast Utilities Authority ("ECUA" or "Plaintiff"), submits this brief in opposition to the motion to dismiss filed by Defendant Dynax Corporation ("Dynax") pursuant to Fed. R. Civ. P. 12(b)(2) [ECF No. 1287]. Dynax moves this Court to dismiss ECUA's case against Dynax in its entirety arguing that this Court does not have jurisdiction over Dynax (Mem. of Law in Support of Def. Dynax Corp.'s Mot. to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2) [ECF 1287-1]) ("Def's. Mem.")).   Dynax's argument is without merit and, therefore, ECUA, respectfully requests that this Court deny Dynax's motion.

## II.    <u>BACKGROUND</u>

Plaintiff is a local governmental body, corporate and politic, formed by the Florida Legislature to provide certain utility services in and around Escambia County. (Am. Compl. ¶ 1) [ECF No. 68]. More particularly, ECUA operates 31 wells, which pump groundwater from the Sand-And-Gravel Aquifer to supply drinking water to customers throughout Pensacola and certain areas within the County. (*Id*. ¶ 2). Combined ECUA provides drinking water to 180,000 customers, an average of 31 million gallons daily. (*Id*.) ECUA has at least four wells that are contaminated with perfluorooctane sulfonate ("PFOS") and perfluorooctanoic acid ("PFOA"). (*Id*. ¶¶ 3, 8).

Both PFOA and PFOS historically were used as components of aqueous film forming foams ("AFFF"), which is used to extinguish aviation, marine, fuel and other fires (*Id*.) Both chemicals are highly soluble in water, do not easily biodegrade and persist in the environment. (*Id*. ¶¶ 4, 54). The AFFF made by Defendants contained either PFOA or PFOS or manufactured their AFFF the fluorochemicals used in their AFFF through a telomerization which produces fluorochemicals that degrade into PFOA. (*Id*. ¶¶ 49-50).

Further, both chemicals are known animal carcinogens and likely human carcinogens. (*Id*.) The United States Environmental Protection Agency ("EPA") has stated that "human epidemiology data report associations between PFOA exposure and high cholesterol, increased liver enzymes, decreased vaccination response, thyroid disorders, pregnancy- induced hypertension and preeclampsia, and cancer (testicular and kidney)" and that "there is suggestive evidence of carcinogenic potential for PFOS." (*Id*.) Further, PFOA and PFOS persistent in the human body. (*Id*. ¶¶ 42, 44-45). The EPA has issued Health Advisory Values for PFOA and PFOS found in drinking water of 70 parts per trillion ("ppt") (*Id*. ¶ 47).

Pensacola International Airport, formerly Pensacola Gulf Coast Regional Airport and Pensacola Regional Airport (Hagler Field), has historically used, as directed by the manufacturers, PFOS/PFOA-containing AFFF in training exercises which resulted in PFOS and PFOA entering the environment. (*Id*. ¶¶ 5, 55) Both PFOA and PFOS, when sprayed onto outdoor surfaces, as intended, migrate through to the soil and into the groundwater, and thereby contaminate the underground aquifer and the water pumped into the Plaintiff's drinking water supply. (*Id*.)

Similarly, Bronson Field is a former Naval Auxiliary Air Station which likewise used PFOA/PFOS-containing AFFF in training activities and/or in responding to fire emergencies at its facility in Pensacola, Florida. (*Id*. ¶¶ 6, 56). Despite using the AFFF as directed by the AFFF manufacturers, this also resulted in PFOS and PFOA entering the environment. (*Id*.) As a result of this contamination, ECUA now seeks to recover the cost of remediating and/or treating its supply contaminated drinking water system. (*Id*. ¶ 7).

The Defendants in this action, including but not limited to Dynax, manufactured, marketed, promoted, distributed and/or sold AFFF containing PFOA and/or PFOS, components that convert

into PFOA or PFAS for use in AFFF products and/or supplied fluorosurfactant products for use in AFFF (*Id*. ¶¶ 9-21, 29-30).

The Defendants in this action, including but not limited to Dynax, knew, or reasonably should have known that both PFOA and PFOS are toxic when sprayed into the open environment and that both chemicals readily migrate through the subsurface to mix with groundwater, are resistant to natural degradation, make drinking water non-potable and can only be removed from drinking water at significant expense. (*Id*. ¶ 57). Further, Defendants should have known that both PFOS and PFOA can be absorbed into the lungs and gastrointestinal tract, potentially causing severe dame to the liver, kidney, and central nervous system in addition to other toxic effects. (*Id*.)

Dynax is a Delaware Corporation with its principal place of business located at 103 Fairview Park Drive, Elmsford, New York 10523-1544 *(Id*. ¶ 26).[1] Dynax was founded in 1991 and began selling fluorosurfactants for use in AFFF in 1994.[2] Between 1994-present, Dynax has sold its fluorosurfactants to the following AFFF manufacturers: **REDACTED**

.[3] These Dynax customers exist under the law of different states and have principal places of business throughout the United States.[4]

---

[1] Dynax Corporation currently identifies 103 Fairview Park Drive, Elmsford, N.Y., as its address for service of process with the Division of Corporations of the New York State Department of State. In the Declaration of Eduard Kleiner ("Kleiner Decl.") in Support of Dynax's Motion to Dismiss, Dr. Kleiner, the Founder and President of Dynax, claims that Dynax's headquarters now is located at 79 Westchester Avenue, Pound Ridge, New York 10576. *See* Kleiner Decl. ¶¶ 2-3 [ECF No. 1287-2]. Both addresses are located in Westchester County, New York.

[2] Kleiner Decl. ¶¶ 6, 8.

[3] Defendant Dynax Corporation's Responses to Plaintiff's First Set of Interrogatories at Response to Interrogatory No. 4, attached as Ex. A.

[4] *See e.g.,* Defendant Buckeye Fire Equipment Company is a Ohio corporation with its principal place of business at 110 Kings Road, Mountain, North Carolina 28086; *see also*, Defendant National Foam is a Pennsylvania corporation with its principal place of business at 350 East Union Street, West Chester Pennsylvania 19382, Defendant Tyco/Ansul is a Delaware limited partnership with its headquarters located at 1400 Pennbrook Parkway, Landsdale, Pennsylvania, Defendant Kidde is a Delaware corporation with its principal place of business at One Carrier Place, Farmington, Connecticut 06034. (Am. Compl. ¶¶ 10, 12, 12, 30.).

Dynax contends that it has never manufactured or sold PFOS, PFOA or AFFF.[5] While Dynax concedes that it does manufacture fluorosurfactants which are used by companies who make and sell AFFF,[6] Dynax fails to mention in its brief or the supporting Kleiner Dec. that the fluorosurfactants historically manufactured by Dynax and sold to AFFF concentrate manufacturers contain PFOA precursors, that is, starting feedstock that can breakdown into PFOA in the environment.[7] As the record before the Court makes clear, at least one fluorosurfactant sold by Dynax, namely, DX2200, is made with 100-percent C8-derived chemistry.[8] **REDACTED**

**REDACTED**

**REDACTED** .[9] In short, the fact that Dynax neither manufactures PFOA, PFOS or AFFF is of no moment with respect to whether the fluorosurfactants it manufactured contaminated Plaintiff's water supply.

In fact, the evidence to date[10] suggests that Dynax did contribute to the contamination of Plaintiff's water supply. In particular, the allegations in Plaintiff's Second Amended Complaint taken together with the record before the Court clearly establish that Dynax manufactures

---

[5] Def's Mem. at 2.

[6] *Id.*

[7] *See e.g.*, DYNAX0003082-3090, **REDACTED**

**REDACTED**

attached as Ex. B.

[8] *See* Dep. Tr. of Eduard Kleiner Dep. ("Kleiner Dep"), relevant pages attached as Ex. C, at 316:14-22.

[9] *See* Dep. Tr. of DuPont organic chemist Stephen Korzeniowski, relevant pages attached as Ex. D, at 153:6-20 **REDACTED**

[10] As the Court is aware, case-specific discovery, including case-specific product identification discovery is currently underway in the ten selected bellwether cases, including *ECUA*. *See* Case Management Order ("CMO") No. 13 [ECF No. 1049, ¶ F]; *see also*, Text Order extending deadline to October 5, 202[ECF No 1710] (noting that Core Discovery on the Water Provider Bellwether Discovery Pool Cases extends from February 2021 to October 2021). This product identification discovery will include identifying which AFFF products may have been used at either Pensacola International Airport and/or Bronson field, which may have incorporated Dynax fluorosurfactants, and thus contributed to the contamination of Plaintiff's water wells.

fluorosurfactants that contain C8-based chemistry, which are capable of degrading to PFOA in the environment, those fluorosurfactants have historically been incorporated into AFFF foam agents manufactured by foam manufacturers nationwide, including those used at Pensacola International Airport and/or Bronson Field, and both Pensacola International Airport and Bronson Filed are the identified sources of the contamination of Plaintiff's drinking water wells. (Am. Compl. ¶¶ 5-6, 55-56). Given the nationwide nature of its customer base, Dynax was clearly introducing products into the stream of commerce in a nationwide fashion through its fluorosurfactant sales.

Moreover, the record firmly establishes that Dynax manufactured fluorosurfactants that would be sold to AFFF manufacturers who make MIL-Spec AFFF agents appearing on the Department of Defense's Qualified Products List ("QPL").[11] Dr. Kleiner, as a founding member of the Fire-Fighting Foam Coalition ("FFFC"), would have known that such MIL-Spec AFFF was being manufactured specifically for use in military applications and, as required by Federal Aviation Administration ("FAA") guidelines, at all United States airports.[12] In fact, Dynax's website states that it is "…the largest supplier of specialty fluorochemicals to the fire-fighting foam industry in the world…."[13] Further, Dynax's fluorosurfactant business is a multi-million dollar a year business, is globally recognized, with the lion's share of the revenues coming from United States sales in particular.[14] As such, Dynax, and its founder, Dr. Kleiner, have always been

---

[11] *See* Dynax's Responses to Plaintiff ECUA's First Set of Interrogatories (Jurisdictional Discovery), at Response to Interrogatory No. 10, attached as Ex. E; *see also*, Dynax's Responses to Plaintiffs' First Request for Admissions; at Responses 14-24, attached as Ex. F.

[12] *See* Navy02-00002442-45, attached as Ex. G.

[13] *See* Ex G, at Response to Request for Admission No. 1.

[14] *See, e.g.,* AFFF-MDL-EID-04338109-11 **REDACTED** attached as Ex. H. In 2007, Dynax only had three employees, thus rendering these very high margins for a relatively small company. Notably, *Emerald Coast* references these sales figures only as illustrative numbers. Further, as set forth in Exhibit B to Dynax's March 17, 2021, Defense Fact Sheet ("DFS"), **REDACTED**

*See* Exhibit to the March 17, 2021 DFS, attached as Ex. I.

well aware of the likelihood of its products being utilized in any State with an airport or a military base or installation as those are the primary consumers of MIL-Spec AFFF.

As described in greater detail below, Dynax has failed to meet its burden to succeed on a motion to dismiss pursuant to Rules 12(b)(2) and, therefore, ECUA respectfully requests that this Court deny its motion in its entirety.

### III. <u>ARGUMENT</u>

**A.** <u>The Court has Personal Jurisdiction over Dynax.</u>

> **1.** **Plaintiffs Must Only Make a *Prima Facie* Showing of Personal Jurisdiction in the Transferee Court**

"When a court's personal jurisdiction is challenged under Rule 12(b)(2) the burden is on the plaintiff to establish that a ground for jurisdiction exists." *Booze Pops Ltd. Liab. Co. v. Real Estate Flipz, Inc*., No. 2:20-cv-691-RMG, 2020 U.S. Dist. LEXIS 108321, at *10 (D.S.C. June 21, 2020) (citing *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989)). Further, "[w]hen the court resolves the motion on written submissions (as opposed to an evidentiary hearing), the plaintiff need only make a 'prima facie showing of a sufficient jurisdictional basis.'" *Id.* "However, the plaintiff's showing must be based on specific facts set forth in the record." *Id.* (citing *Magic Toyota, Inc. v. S.E. Toyota Distribs., Inc.*, 784 F. Supp. 306, 310 (D.S.C. 1992)). "The Court may consider the parties' pleadings, affidavits, and other supporting documents but must construe them 'in the light most favorable to plaintiff, drawing all inferences and resolving all factual disputes in his favor, and assuming plaintiff's credibility.'" *Id.* (citing *Sonoco Prods. Co. v. ACE INA Ins.*, 877 F. Supp. 2d 398, 404-05 (D.S.C. 2012) (internal quotation and alteration marks omitted)); *see also*, *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003) (in deciding a motion to dismiss, "the court must take all disputed facts and reasonable inferences in favor of the plaintiff.").

Where "a defendant's sworn affidavit contests the allegations in the complaint…the plaintiff bears the burden to present an affidavit or other evidence showing jurisdiction exists over the non-resident defendant." *Id.* Personal jurisdiction is established by a preponderance of the evidence. *Id.* at 396.

As this is a multidistrict litigation, Plaintiff must show that the transferor court, where the case originated, would have personal jurisdiction over Dynax. *In re FMC Corp. Patent Litig.*, 422 F. Supp. 1163, 1165 (J.P.M.L. 1976) (per curiam) (citing *In re Sugar Indus. Antitrust Litig.*, 399 F. Supp. 1397, 1400 (J.P.M.L. 1976)). ECUA case was originally filed in the Northern District of Florida. [ECF No. 1]. Since that time, Plaintiff has since amended its complaint twice and filed it directly in the District of South Carolina pursuant to this Court's direct-filing orders [ECF Nos. 3D & 3E], the Second Amended Complaint specifically avers that jurisdiction is based on diversity and that ECUA is a citizen of Florida and no named Defendant is a citizen of Florida, and, moreover, a substantial part of the property at issue is within the Northern District of Florida. (Am. Compl. ¶¶ 36-39).

Personal jurisdiction exists over Dynax in the Northern District of Florida. "A federal district court sitting in diversity may exercise personal jurisdiction to the extent authorized by the law of the state in which it sits and to the extent allowed under the Constitution." *Waters Edge Living, LLC v. RSUI Indem. Co*., No. 4:06cv334-RH/WCS, 2007 U.S. Dist. LEXIS 23809, at *8-9 (N.D. Fla. Mar. 31, 2007) (citing *Meier ex rel. Meier v. Sun Intern. Hotels, Ltd.,* 288 F.3d 1264, 1269 (11th Cir. 2002)). "The court must determine whether the . . . Defendants' activities satisfy the Florida long-arm statute and, if satisfied, whether the extension jurisdiction comports with the due process requirements of the Fourteenth Amendment." *Id.* "There are two types of personal jurisdiction: specific and general." *Madara v. Hall,* 916 F.2d 1510, 1516 n.7 (11th Cir.

1990). "Specific personal jurisdiction is founded on a party's contacts with the forum state that are related to the cause of action. General personal jurisdiction arises from a party's contacts with the forum state that are unrelated to the litigation." *Id.*

## 2.    Florida's Long-Arm Statute

Florida's long-arm statute, Fla. Sta. § 48.193, provides for broad jurisdiction over Defendants. *Execu-Tech Business Systems, Inc. v. New Oji Paper Co., Ltd*., 752 So 582, 584 (Fla. 2000). Under Florida's long-arm statute, "specific jurisdiction arises where the defendant's activities in the forum are related to the cause of action alleged in the complaint." *Id.* (citing *Consolidated Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1292 (11th Cir. 2000).).

Fla. Stat. § 48.193(1)(a)(6)(b) provides, in relevant part, as follows:

(1) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:

****

6. Causing injury to persons or property within this state arising out of an act or omission by the defendant outside this state, if, at or about the time of the injury, either:

****

b. Products, materials, or things processed, serviced, or manufactured by the defendant anywhere were used or consumed within this state in the ordinary course of commerce, trade, or use.

Fla. Stat. § 48.193(1).

The plain language of the long-arm statute confers this Court with jurisdiction. The above-cited provision provides for jurisdiction in a Florida court where a defendant manufactures a product outside of Florida, which causes injury in Florida, in the ordinary course of commerce or

use. That is precisely the circumstances presented by the case at bar. More particularly, Plaintiff's Second Amended Complaint states that Defendants, including New York headquartered Dynax, manufactured, marketed, promoted, distributed and/or sold AFFF containing PFOA and/or PFOS, and/or components that convert into PFOA or PFAS for use in AFFF products and/or supplied fluorosurfactant products for use in AFFF (*Id*. ¶¶ 9-21, 29-30).

Plaintiff further alleges that use of such AFFF in fire training activities at Pensacola airport and at Bronson Field for both training and actual emergencies resulted in PFOA and PFOS entering the environment and migrating through the groundwater, and thereby contaminating the underground aquifer and the water that was pumped in Plaintiff's wells (*Id*. ¶¶ 5-6; 55-56). These allegations combined with the evidence in the record make a *prima facie* showing that Dynax caused injury in the State of Florida, *i.e.*, contamination of Plaintiff's water wells, by manufacturing products outside the State that were consumed within the State in the ordinary course of use. As such, personal jurisdiction under Florida's long-arm statute is proper.[15]

### 2. Exercising Jurisdiction over Dynax Comports with the Due Process Clause of the Fourteenth Amendment

In addition to jurisdiction being proper under Florida's long-arm statute, the exercise of jurisdiction over Dynax also comports with due process. "A district court may exercise in personam jurisdiction over a nonresident so long as the defendant has certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citations and internal quotations omitted). "A State generally has a 'manifest interest' in providing its residents

---

[15] To the extent that Dynax is arguing that the long-arm statute does not confer specific jurisdiction because it did not directly sell its fluorosurfactants to a Florida customer, this argument has been rejected by the Florida Supreme Court. *See Ford Motor Co. v. Atwood Vacuum Machine Co.*, 392 So. 2d 1305 (Fla. 1981).

with a convenient forum for redressing injuries inflicted by out-of-state actors." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473-74 (1985). "Moreover, where individuals 'purposefully derive benefit' from their interstate activities….it may well be unfair to allow them to escape having to account in other States for consequences that arise proximately from such activities; the Due Process Clause may not readily be wielded as a territorial shield to avoid interstate obligations that have been voluntarily assumed." *Id*.

"The minimum contacts requirement is satisfied where the defendant purposefully directs activities at the forum state and litigation arises out of those activities." *Transglobal Airways Corp. v. JAF, LLC*, No. 06-22592-CIV-UNGARO, 2007 U.S. Dist. LEXIS 110274, at *40-42 (S.D. Fla. Nov. 13, 2007) (citing *Green v. USF & G Corp.*, 772 F. Supp. 1258, 1262 (S.D. Fla. 1991).). "In other words, there are sufficient minimum contacts where the defendant 'purposefully avails' himself of the privilege of conducting activities within the forum state." *Id.* (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). "The activities must be such that the defendant would 'reasonably anticipate being haled into court' in Florida." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980); *Burger King Corp.*, 471 U.S. at 472.). "Where a forum seeks to assert specific jurisdiction over an out-of-state defendant who has not consented to suit there, this 'fair warning' requirement is satisfied if the defendant has 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Burger King Corp.*, 471 U.S. at 472-73 (citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770 (1984).).

Importantly, a strict causal nexus between contacts and claim is not necessary to support personal jurisdiction." *Ford Motor Co. v. Montana Eighth Judicial Dist. Court*, 141 S. Ct. 1017,

1026 (2021). Rather, in *Ford*, the Supreme Court adopted a more wholistic contacts analysis not limited to a causal showing. *Id.*

The issue of jurisdiction in the context of a groundwater contamination products liability case was thoroughly litigated in *In re: Methyl Tertiary Butyl Esther Prods. Liab. Litig.*, MDL No. 1358 (S.D.N.Y.) ("*In re: MTBE*"). In that multi-district litigation, dozens of public water suppliers sued defendants for damages to their drinking water supplies caused by the defendants' introduction of the toxic contaminant MTBE into the marketplace. *In re: MTBE*, 2005 U.S. Dist. LEXIS 753, at *2-3 (S.D.N.Y. Jan. 18, 2005). Out-of-state defendants filed a motion to dismiss under Rule 12(b)(2) which the court rejected under the laws of *seven* separate states. *Id.* at *73-74.[16]

In denying the defendants' motion, the court held that the various state courts interpret the provision of their respective long-arm statutes relating to the transaction of business broadly and the defendant's conduct of receiving financial revenue from the sale of its product used in each state constituted a transaction of business and constituted sufficient minimum contacts to exercise jurisdiction in each of the forum states. *Id.* at *48. The court recognized that the defendants benefited from the sale of MTBE which was distributed to every state in the nation. *Id.* at *48-49.

The court further stated as follows:

> The touchstone of determining whether a . . . court may exercise personal jurisdiction over a party is "whether the defendant purposefully established 'minimum contacts' in the forum State." In *World-Wide Volkswagen,* the Supreme Court explained that introducing a product into the stream of commerce may serve as the basis for personal jurisdiction if the sale of that product "is not simply an isolated occurrence, but arises from the efforts of the manufacturer . . . to serve, directly *or indirectly,* the market for its product."
>
> As Justice Brennan aptly explained in *Asahi,* the "stream of commerce refers not to unpredictable currents or eddies, but to the regular and anticipated flow of products from manufacture to distribution to retail sale." If a corporation "in this process is

---

[16] Florida was among the seven states the court considered.

aware that the final product is being marketed in the forum State, the possibility of a lawsuit there cannot come as a surprise." Common sense dictates that there are times when a corporation purposefully establishes minimum contacts with every state in the nation by introducing its products into the stream of commerce in vast amounts.

*Id.* at *37-39 (citations omitted).

The same reasoning applies in Plaintiff's case. ECUA alleges that Dynax marketed and sold fluorosurfactant additives. (Am. Compl. ¶¶ 71, 79.) Moreover, as noted above, since 1994 through today Dynax has sold its fluorosurfactants to AFFF customers nationwide. Florida has an obvious interest in providing safe drinking water to its customers and Dynax obviously financially benefitted from the sale and use of its products in Florida.

Moreover, Dynax concedes that its products were incorporated into MIL-Spec AFFF that appeared on the Qualified Products List ("QPL"),[17] Mr. Kleiner has been intimately familiar with the QPL since it sold its very first fluorosurfactant for use in AFFF,[18] and thus would have had knowledge of which AFFF are on the QPL, including    REDACTED

REDACTED ,[19]

REDACTED

REDACTED .[20]

Taken together, drawing all reasonable inferences in favor of the Plaintiff, it is clear that Dynax owner and founder, Dr. Kleiner, has been aware since Dynax's inception that its

---

[17] *See supra* note 13.

[18] Kleiner Dep. 312:4-315:11    REDACTED

relevant pages attached as Ex. J.

[19] *See* AFFF-MDL-CHE-00004462-65, at AFFF-MDL-CHE-00004465, attached as Ex. K.

[20] *See* Kleiner Dep. 86:16-88:8    REDACTED

relevant pages attached as Ex. L.

fluorosurfactants were used by AFFF manufacturers nationwide, that Dynax fluorosurfactants were used in AFFF agents on the QPL, which of its customers had QPL-listed AFFFs, and that QPL-listed AFFFs were mandated for military applications as well as all United States airports. As such, the logical inference to be drawn from such facts are that Dynax fluorosurfactants resultantly could be used in any State with an airport or any military location. Dynax did not restrict sales of its fluorosurfactants to Florida,[21] nor, did it restrict its fluorosurfactants sales to non-QPL listed foams and sold to customers nationwide. As such, by putting its fluorosurfactants into a marketplace, and by selling to customers who manufacture QPL-listed AFFF concentrate throughout the United States, Dynax had every reason to anticipate that its fluorosurfactants would end up in any State with an airport or a United States military base. As such, it should have anticipated being haled into court in any such State.

In light of the foregoing, this Court's exercise of jurisdiction is certainly foreseeable and comports with the Due Process clause of the United States Constitution.

### 3. The Exercise of Specific Jurisdiction over Dynax is Proper[22]

The Southern District of Florida has specific jurisdiction over Dynax. In the Eleventh Circuit, a court may exercise specific jurisdiction "'over a defendant in a suit arising out of or related to the defendant's contacts with the forum.'" *Lewis v. Mercedes-Benz United States*, No. 19-CIV-81220-RAR, 2021 U.S. Dist. LEXIS 60557, at *28-29 (S.D. Fla. Mar. 30, 2021) (citing *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414 n.9 (1984)).

Further, "[t]he Court can exercise specific jurisdiction over a nonresident domestic defendant if authorized by a state long-arm statute or a federal statute." *Id.* "When analyzing a

---

[21] *See* Ex. F, at Response to Interrogatory No. 6.

[22] Plaintiff does not contend that it has general jurisdiction over Dynax, and, as such, Def's Mem. as it pertains to general jurisdiction should be denied as moot. *See* Def's. Mem. at 6-7.

14

motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the Court must 'first determine whether the applicable statute potentially confers jurisdiction over the defendant, and then determine whether the exercise of jurisdiction comports with due process.'" *Id*. (citing *Republic of Pan. v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 942 (11th Cir. 1997)).

Here, as set forth in detail above, Florida's long-arm statute clearly confers this Court with specific jurisdiction, and the exercise of personal jurisdictional comports with Due Process. Further, although Dynax contends that injury in Florida is insufficient to confer specific jurisdiction, the Supreme Court recently underscored that while the place of injury alone may not be sufficient to confer specific jurisdiction, both the place of residence of the Plaintiff and the place of injury "may still be relevant in assessing the link between the defendant's forum contacts and the plaintiff's suit – including its assertions of who was injured where." *Ford Motor Co.,* 141 S. Ct. 1017, 1031 (2021). Here, Plaintiff is a resident of Florida and was injured in Florida, and, as such, these two factors weigh heavily in favor of the exercise of jurisdiction being proper.

Dynax relies on *Zanakis v. Scanreco, Inc*., Case No. 10-cv-2813-UU, 2019 U.S. Dist. LEXIS 89210 (S.D. Fla. Feb. 6, 2019) for the proposition that even Plaintiff could show that its products were used in an AFFF product that ended up in Florida that this is insufficient to establish personal jurisdiction, because Dynax, like the defendant in *Zanakis* had no reason to expect its component parts would be used by consumers in Florida.[23] However, Dynax's reliance on *Zanakis* is misplaced. First, as discussed above, Dynax had every reason to understand that its fluorosurfactants were being sold nationwide as it knew who its own customers were, and that those customers were located throughout the United States. Moreover, Dynax knew its fluorosurfactants were being incorporated into MIL-Spec AFFF, which is primarily used at

---

[23] *See* Def's. Mem. at 9-10.

military installations and airports. As such, Dynax had every reason to understand that its fluorosurfactants may very well wind up in any State with an airport or a military base as those are the primary end-users of MIL-Spec AFFF, which includes Florida, and more particularly, the Pensacola International Airport/Bronson Field.[24]

Finally, Dynax likewise relies heavily on *Weirton Area Water Bd. v. 3M Co*., No. 5:20-CV-102, 2020 U.S. Dist. LEXIS 247885 (N.D.W. Va. Nov. 20, 2020) in support of its motion to dismiss. Reliance on *Weirton* is unavailing. Both the factual allegations as well as the record before the Court are distinctly different as between *Weirton* and *ECUA*. As an initial matter, the *Weirton* case is not binding authority on this Court. Second, the plaintiffs in *Weirton* did not argue that as a result of both Dynax's multi-state customer base as well as its sales to AFFF manufacturers whose products are on the QPL, that Dynax should have anticipated that its fluorosurfactants' ultimate fate would be as component parts in AFFF agents used at airports and military bases, and, as such that it should be apparent that its products may end up in any State with an airport or military installation.

Third, and importantly, *Weirton* decision noted that the most important part of its decision hinged on the fact that the declaration from Dr. Kleiner that was submitted in that case stated that "Dynax Corp. has never manufactured or sold PFOS or PFOA, the compounds complained of in plaintiffs Complaint." *Weirton Area Water Bd.*, No. 5:20-CV-102, 2020 U.S. Dist. LEXIS 247885, at *30 (N.D.W. Va. Nov. 20, 2020). As set forth in detail above, the fact the Dynax neither manufactured nor sold PFOA or PFOS is a fact without consequence in this case. As the record

---

[24] Similar reasoning renders Dynax's reliance on *Smith v. Poly Expert, Inc*., 186 F. Supp. 3d 1297, 1299-1300, 1305 (N.D. Fla. 2016) and *Amtrust N. Am., on behalf of Douglas Wainwright v. Sennebogen Maschinenfabrik Gmbh, doing business as Sennebogen, LLC,* equally unpersuasive. *See* Def's. Mem. at 10.

makes clear, Dynax did manufacture fluorosurfactants using C8 telomer iodides,[25] which were incorporated into MIL-spec AFFF foams,[26] and those C8 telomer iodides are PFOA precursors, or, in other words, can breakdown to PFOA in the environment.[27] Because a central tenant of the *Weirton* decision did not consider the important fact that Dynax's fluorosurfactant products can breakdown to PFOA, the *Weirton* decision is factually flawed. That factual flaw does not exist in this case where clear evidence substantiates both Dynax's role in the AFFF marketplace as well as its contribution to overall PFOA contamination resulting from incorporation of its C8-based fluorosurfactants into MIL-Spec AFFF agents. As such, *Weirton* provides little support for Dynax's motion to dismiss.

In light of the foregoing, it is clear that Dynax is subject to jurisdiction in this Court and thus Plaintiff requests that its motion be denied.

### B.    Acts of a Co-Conspirator May Be Imputed to Nonresident

The acts of an in-state co-conspirator may be imputed to an out-of-state co-conspirator for the purpose of analyzing the nonresident's contacts with the forum under due process and long-arm statutes. *See Hammond v. Butler, Means, Evins & Brown,* 388 S.E.2d 796, 798 (S.C. 1990) ("an out-of-state defendant may be subject to jurisdiction under a long-arm statute on the theory that his co-conspirator conducted activities in a particular state pursuant to the conspiracy.") (citing *Ghazoul v. Int'l Mgmt. Servs.,* 398 F. Supp. 307 (S.D.N.Y. 1975)). "Florida courts have held that the state's long-arm statute can support personal jurisdiction over any alleged conspirator where any other co-conspirator commits an act in Florida in furtherance of the conspiracy, even if the defendant over whom personal jurisdiction is sought individually committed no act in, or had no

---

[25] *See* Ex A, at Response to Interrogatory No. 2.

[26] *See supra* note 18.

[27] *See supra* note 6-7.

relevant contact with, Florida." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1281–82 (11th Cir. 2009).

Emerald Coast alleged that all Defendants participated in a conspiracy. (Am. Compl. ¶¶ 117-20), as such, the in-state contacts of any defendant can be computed to its co-conspirators, including but not limited to the in-state actions of each of the AFFF manufacturers to which Dynax sold its fluorosurfactants.  Thus, jurisdiction is properly imputed to Dynax based on the in-state presence of, among others, Ansul/Tyco, Buckeye, Kidde Fire PA, Certol, Fire Service Plus, National Foam PA, Amerex/Solberg, Momar, Perimeter Solutions, Chemori, US Foam Technologies, and Verde,[28] thereby further buttressing the propriety of exercising jurisdiction over Dynax.

**C.    In the Alternative, the Court Should Deny Dynax's Motion to Dismiss as Moot.**

Should the Court determine that the exercise of personal jurisdiction over Dynax is improper, then the Court should deny Dynax's motion as moot. As the Court is aware, on December 7, 2018, the Judicial Panel on Multidistrict Litigation ("JPML") centralized for pretrial purposes all actions involving the use of AFFF products that caused releases, contamination and/or exposure and resultant harm from PFOA and/or PFOS. *In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, 357 F. Supp. 3d 1391 (J.P.M.L. 2018)("MDL 2873"). The JPML further held that such consolidation "will serve the convenience of the parties and witnesses and promote the just and efficient conduct of this litigation." *Id*. at 1394. As set forth below, Dynax's motion to dismiss does nothing more than frustrate the JPML's purpose.

On May 14, 2021, ECUA filed a protective action in the United States District Court for the Southern District of New York. As set forth in the Kleiner Decl., Dynax's principal place of

---

[28] Dynax sold its fluorosurfactants to each of these foam manufacturers.  *See* Ex. A, Response to Interrogatory No. 4.

business is 103 Fairview Park Drive, Elmsford, New York 10523-1544,[29] which is located in the Southern District of New York.[30] As such, Dynax is subject to general jurisdiction in New York.

On June 15, 2021, the protective action became part of MDL 2873; the case number is 2:21-cv-01790. Since there is no question that general jurisdiction can be asserted against Dynax where it is "essentially at home," *Ford Motor Co*., 141 S.Ct. at 1024, the specific jurisdiction challenge Dynax currently asserts against the ECUA is now essentially moot. Plaintiff submits that Defendant's Motion should be denied as moot to avoid expending unnecessary legal and judicial resources over a matter that is avoidable and contrary to the MDL's purpose. *See In re Aqueous Film-Forming Foams Prods. Liab. Litig*., 357 F. Supp. 3d 1391, 1394 (J.P.M.L. 2018) (consolidation "will serve the convenience of the parties and witnesses and promote the just and efficient conduct of this litigation.")

Dynax should not be heard to challenge this request as "[t]here is nothing necessarily inappropriate ... about filing a protective action." *Exxon Mobil v. Saudi Basic Industries,* 544 U.S. 280, 294 n.9 (2005). Such actions provide a "fall back plan" to jurisdictional challenges in the event that a lack of jurisdiction is found in a separate action. *Jones v. Cont'l Motors*, 2012 WL 2733670, at *2 (S.D. Ala. July 6, 2012).[31] The protective action provides a procedurally justified backstop and ensures this proceeding can continue without needless personal jurisdiction motions

---

[29] *Id*. ¶ 3.

[30] Dr. Kleiner's Declaration suggests that Dynax's headquarters has moved to 79 Westchester Avenue, Pound Ridge, New York 10576. *See* Kleiner Decl. ¶¶ 2-3 [ECF No. 1287-2]. Both addresses are located in Westchester County, New York.

[31] "It is common practice and one dictated by 'elementary prudence' for a plaintiff to file a second, protective action if personal jurisdiction over a defendant might reasonably be contested in the original action." *Campbell v. Fernandez*, 473 P.3d 675, 676 (Wash. Ct. App. 2020)(citing as example, *Saylor v. Dyniewski*, 836 F.2d 341, 345 (7th Cir. 1988)); *see also McFarlane v. Esquire Magazine*, 74 F.3d 1296, 1301 (D.C. Cir. 1996).

practice. Rather than dismissal, transfer and consolidation into this MDL is the appropriate remedy.

Given the filing of the protective action, Dynax's motion to dismiss is moot and should be denied as such.

## **CONCLUSION**

For the reasons set forth above, ECUA respectfully requests that the Court deny Dynax's motion in its entirety, or, in the alternative, deny the motion as moot in light of the filing of the protective action in the Southern District of New York and/or permit Plaintiff leave to amend its Complaint to include additional jurisdictional allegations.

Dated: July 23, 2021

/s/ Fred Thompson, III
Motley Rice LLC
28 Bridgeside Boulevard
Mt. Pleasant, SC 29464
P: (843) 216-9000
Fax: 843-216-9440
fthompson@motleyrice.com

*Plaintiffs' Liaison Counsel*

-and-

/s/ *Michael A. London*

Michael A London
Douglas and London PC
59 Maiden Lane
6th Floor
New York, NY 10038
P: (212)-566-7500
F: (212)-566-7501
mlondon@douglasandlondon.com

Paul J. Napoli
Napoli Shkolnik PLLC
1301 Avenue Of The Americas
10th Floor
New York, NY 10019

P: (212)-397-1000
F: (646)-843-7603
pnapoli@napolilaw.com

Scott Summy
Baron & Budd, P.C.
3102 Oak Lawn Avenue
Suite 1100
Dallas, TX 75219
P: (214)-521-3605
ssummy@baronbudd.com

*Co-lead Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was electronically filed with this Court's CM/ECF on this 23rd day July, 2021 and was thus served electronically upon counsel of record.

/s/ Fred Thompson, III