

28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
**o.** 843.216.9000   **f.** 843.216.9450

**Fred Thompson III**
*Licensed in South Carolina*
direct: 843.216.9118
fthompson@motleyrice.com

www.motleyrice.com

"I will stand for my client's rights.
I am a trial lawyer."
–Ron Motley (1944–2013)

February 11, 2022

**VIA ECF**
Hon. Richard Mark Gergel
U.S. District Court for the District of South Carolina
J. Waites Waring Judicial Center
83 Meeting Street
Charleston, South Carolina 29401

      City of Sioux Falls v. 3M Company et al
      Case No. 2:19-cv-1806-RMG
      AFFF MDL – USDC. South Carolina
      Our File Number: 19-2404.025

Dear Judge Gergel:

On behalf of the PEC and Plaintiffs City of Sioux Falls, City of Stuart, and the Town of Ayer ("Bellwether Plaintiffs"), we write to provide the Bellwether Plaintiffs' position concerning a recent discovery dispute regarding site inspections that requires your Honor's attention, and for which the parties have agreed to submit their dispute to the Court via simultaneous briefing.

Specifically, Defendants have informed Plaintiffs of their refusal to provide copies of photos and videos they will obtain during site inspections of certain properties owned and/or controlled by the three Bellwether Plaintiffs. These inspections are taking place this week (for Sioux Falls) and being scheduled within the next two weeks for both Town of Ayer and City of Stuart.[1,2]

**Background for *City of Sioux Falls*:**

On January 14th and 17th Defendants Tyco Fire Products LP and Chemguard Inc. issued notices of inspection to the City of Sioux Falls, the Sioux Falls Regional Airport Authority ("Airport"), and the South Dakota Air National Guard ("SDANG"), which requested access to a number of sites which are under the exclusive or joint control of the Plaintiff, the Airport, and the SDANG. The now completed inspection was limited to a visual inspection and did not include manipulation of any well infrastructure or excavations, sampling, or disturbance of the ground or soil at any of the

---

[1] Like that which was seen during the Tier One discovery efforts, the request by the DCC for site inspections of the Plaintiff Bellwether sites came last minute and on the verge of the February 21, 2022 Tier two discovery cut-off date.

[2] Of note, the PEC is still meeting and conferring with Defendant 3M over an inspection it has delayed to schedule for the past three months, yet the Plaintiffs have agreed to, and scheduled, these inspections when asked and without delay

MT. PLEASANT, SC | MORGANTOWN, WV | CHARLESTON, WV | PROVIDENCE, RI | WASHINGTON, DC | CHERRY HILL, NJ
PHILADELPHIA, PA | HARTFORD, CT | NEW ORLEANS, LA | KANSAS CITY, MO | NEW YORK, NY



February 11, 2022
Page 2

sites. Defendants requested to video and photograph these sites, and the Plaintiff agreed to photographs and videos of the relevant sites with few restrictions.[3]

The Plaintiff sites that the Defendants inspected include almost all of the city's wells[4], all of the city's current and former fire training areas, many of the city's fire stations, and the city's water purification plant and associated water infrastructure. Many of these locations are located in and adjacent to Joe Foss Field, site of the Airport and the SDANG base. The City's fire training center is also located at Joe Foss Field, as are many of their best water wells, which had to be shut down from contamination caused by AFFF. The Plaintiff's water purification plant is directly across the street from the Airport, and the remainder of the water wells and infrastructure are located in a broad area around the city of Sioux Falls.

Because most of the sites are located within an airport and Air National Guard Base and nearly all of the sites require the Plaintiff to provide access to secured, safety sensitive areas, the Defendants were under constant escort for their safety and the security of these sensitive areas. Consequently, Plaintiff's counsel was present with the Plaintiff's employees throughout these inspections to coordinate the inspections and observe their conduct.

Although prior to the inspection Plaintiff attempted to negotiate a comprehensive protocol for the inspection, the parties remained in disagreement regarding the exchange of photos and videos obtained during the inspection. The Defendants refuse to exchange photos and videos they took during the inspection and contend that photographs and videos obtained during the inspection, which was led and supervised by the Plaintiff and its attorneys, is protected work product. Additionally, after initially maintaining that the basis for refusing to produce the photos was the Defendants' work product privilege, the Defendants changed course recently and suggested that it was unfair that they would incur the costs of creating the photos and videos yet provide them to the Plaintiff "free of charge." Regardless of which position the Defendants ultimately pursue, Plaintiff disagrees, and the caselaw and prior case management orders[5] supports Plaintiff's entitlement to the photos and videos.

---

[3] Although the parties agreed that there would be no audio recordings except at the transition between sites to note the locations, audio recording was in fact conducted contrary to the agreed upon protocol for a significant portion of the inspection. After this was discovered by the Plaintiff, the Defendants assured the Plaintiff that the audio will be stripped out in processing by the videographer before they receive it, which is the workaround that Plaintiff rejected in favor of simply turning off the audio.

[4] Several of the wells were excluded from close inspection because it would potentially necessitate shutting down one or more of the Airport's runways.

[5] CMO 4 specifically provides that the "The costs of preserving, collecting, and producing documents shall be borne by the Producing Party."



February 11, 2022
Page 3

**Background for *City of Stuart*:**

Counsel for the City of Stuart is in the process of negotiating the terms of a site inspection protocol with Defendants.  Plaintiff Stuart requested and received on Wednesday night (February 9th) a more comprehensive list of sites the Defendants seek to inspect. Plaintiff is in the process of reviewing the list and intends to request an additional meet and confer with counsel for Defendants regarding issues that include Defendants' failure to identify all the specific sites they intend to inspect, while claiming their current list is not meant to be exhaustive and reserving their purported right to add additional areas and sites for inspection as they go. Plaintiff expects these issues to be resolved, leaving only this issue regarding copies of site inspection photos and videos before the Court now.

Plaintiff City of Stuart joins in requesting copies of photos and videos that Defendants will obtain during the site inspection, and the issue is, therefore, the same as in the City of Sioux Falls. Plaintiff City of Stuart posits the same arguments as City of Sioux Falls for its entitlement to copies of any photos or videos obtained during the Defendants' inspection.

**Background for *Ayer*:**

Unlike Plaintiffs Sioux Falls and City of Stuart, the Town of Ayer has not yet received a formal discovery request for a site inspection but has met and conferred with counsel on the matter in the last few weeks.  Nevertheless, Plaintiff has agreed to a site inspection contingent on a formal request and an agreed written protocol.

Defendants have just recently provided Plaintiff with the locations it seeks to inspect during the meet and confers. The Defendants seek to inspect all of the Town's wells, the Grove Pond PFAS Treatment Plant, the active construction site of the Spectacle Pond PFAS Treatment Plant, the Town's Fire Station, and local landfills within the Town's property lines. Plaintiff's counsel will be present with the Plaintiff's employee(s) throughout the inspections to coordinate the inspections and to similarly observe the inspection.

Like Plaintiffs Sioux Falls and City of Stuart, the Town of Ayer requests copies of all photos and videos obtained by Defendants during the site inspection.   Likewise, Plaintiff Town of Ayer posits the same arguments stated above by the City of Sioux Falls and City of Stuart with respect to its entitlement to copies of any photos or videos obtained by the Defendants during the site inspection.

**Legal Standard:**

In *Estate of Mazon v. Cty. of Riverside*, EDCV122240DMGSPX, 2014 WL 12966419, at *5 (C.D. Cal. Mar. 26, 2014) the Court was faced with a similarly "dubious" assertion of work product



February 11, 2022
Page 4

privilege for photos obtained during a site inspection, and the Court declined to extend work product protection to "a bulk collection of images of areas known to be at issue in this case." *Id.* at 5 citing to *Kartman v. State Farm Mut. Auto Ins. Co*., 247 F.R.D. 561, 563-65 (S.D. Ind. 2007) (citing cases holding that mere assembly of documents in investigation by attorney is not work product, whereas a small selection of subset of documents by counsel would be). The Court found that where the inspection has been noticed to all parties and will be made in the presence of other parties, the work product protection otherwise available to those protections is waived. *Id.*

The Court in *Estate of Mazon* cited extensively to *C&F Packing Co., Inc. v. IBP, Inc*., 93 C 1601, 1994 WL 36874, at *1 (N.D. Ill. Feb. 7, 1994), which also explored whether work product protection is afforded to photos and videos taken during an inspection attended by the parties. In *C&F Packing Co., Inc* the Court found that work product protection was unavailable where all parties were present to see the operating conditions when the photos and videos were taken. *Id.* at 10. Because the photographs and videotape depict conditions visible to all, the Court found that the material was not within the scope of work product protection. Even though an attorney may have directed its photographer's actions, those directions would have been obvious to those present. *Id.* This is precisely the situation at bar – all parties are present at these inspections.

As noted, the situation surrounding each inspection here is analogous. Since Defendants have noticed the inspection for all parties, with the exception of the Town of Ayer (but we understand the DCC wants this inspection just has not yet noticed it), and the Plaintiffs, their attorneys, the Air National Guard, and others have been and will be present at these inspections, no work product privilege attaches to these bulk collections of photos and videos.

However, if the Court disagrees and considers that the site inspection photos and video are work product, Plaintiffs are still entitled to the photos and videos as "virtually all courts have found that the 'substantial need' requirement [under Rule 26(b)(3)(A)(ii)] is satisfied and that [videos and photos] must be produced" when a party intends to use the material at trial. *Baker v. McDonald's Rest.*, No. 17-8131, 2021 U.S. Dist. LEXIS 146403, (D.N.J. June 30, 2021) (quoting *Harrington v. Atl. Sounding Co., Inc.*, No. 06-2900, 2011 U.S. Dist. LEXIS 149743, at *4 (E.D.N.Y. Dec. 30, 2011) (citing cases); *see also Roach v. Hughes*, 2015 U.S. Dist. LEXIS 199297, at *6 (W.D. Ky. Apr. 14, 2015) (quoting *Roa v. Tetrick*, 2014 U.S. Dist. LEXIS 24619, at *8-9 (S.D. Ohio Feb. 24, 2014) ("courts have uniformly ordered [video and film] discovery . . . recognizing that video or film can sometimes be misleading or incomplete, depending on editing or other circumstances."); *Papadakis v. CSX Transp., Inc.*, 233 F.R.D. 227, 229 (D. Mass. 2006) (quoting *Snead v. Am. Export-Isbrandtsen Lines, Inc.*, 59 F.R.D. 148, 150-51 (E.D. Pa. 1973)) ("The camera may be an instrument of deception. It can be misused. Distances may be minimized or exaggerated. Lighting, focal lengths and camera angles all make a difference . . . [and] that which purports to be a means to reach the truth may be distorted, misleading, and false."); *Smith v. CSX Transp., Inc.*, No. 93-373-CIV-5-F, 1994 U.S. Dist. LEXIS 21400, at *6 (E.D.N.C. May 19, 1994) ("films, when they are to be used as evidence, cease to be work product and become subject to an adversary's



February 11, 2022
Page 5

discovery." (citing *Dodson v. Persell*, 390 So. 2d 704, 706 (Fla. 1980)); *Bachir v. Transoceanic Cable Ship Co.*, 98 Civ. 4625, 1998 U.S. Dist. LEXIS 19528, at *3 (S.D.N.Y Dec. 15, 1998) ("permitting selective disclosure by a defendant may result in the fact finder only seeing those portions that support the defendant's position."); *Ward v. CSX Transp.*, 161 F.R.D. 38, 41 (E.D.N.C. Mar. 22, 1995) ("allowing discovery of [video or photos] . . . best meets the ends of justice and the spirit of the discovery rules to avoid surprise at trial."

Finally, while the DCC may argue by analogy that the parties did not agree to share their sampling and the PEC claimed work-product until such time that experts issued their opinions, this situation is completely different from the sampling situation. First, the issue with the sampling data was resolved by agreement between the parties following the DCC framing the issue in the December 2021 Joint Status Report. Of course, the parties are free to make agreements/stipulations that are exceptions to the federal rules. Thus, it is not analogous to rely on the parties' agreements on sample sharing as a basis for why the DCC does not want to provide copies of the videos and photos. Second, when environmental samples were collected previously, the PEC agreed to provide the DCC with a split sample – an exact copy of what the PEC sampled. Here, the PEC is asking for the same standard to be applied, and provide the PEC with an exact copy of any evidence obtained during this exercise.

**Conclusion:**
For the foregoing reasons, the PEC and the three Bellwether Plaintiffs respectfully request that the Court issue an order directing the Defendants to produce the photographs and videos obtained during the inspections,

We thank the Court for its time and continued courtesies.


Respectfully submitted,

*Fred Thompson IV* (signature)

Fred Thompson, III
*Plaintiffs' Liaison Counsel*

-and-

Michael A. London
Paul J. Napoli
Scott Summy
*Plaintiffs' Co- Lead Counsel*