**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | |
|---|---|
| **IN RE: AQUEOUS FILM-FORMING FOAMS PRODUCTS LIABILITY LITIGATION** | MDL No. 2:18-mn-2873-RMG<br><br>**This Document relates to**<br>**ALL CASES** |

**DEFENDANTS' OMNIBUS MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE SECOND AND THIRD ELEMENTS OF THE GOVERNMENT CONTRACTOR IMMUNITY DEFENSE**

**TABLE OF CONTENTS**

**TABLE OF CONTENTS** .................................................................................................................. ii
**INTRODUCTION** ........................................................................................................................... 1
**LEGAL STANDARDS** ................................................................................................................... 2
   **I.**    **The second element of the Government Contractor Immunity Defense is met when the manufacturer's "equipment conformed" to the United States-approved specification.** ........................................................................................................... 2
   **II.**   **The third element of the Government Contractor Immunity Defense is met when Defendants did not have actual knowledge of facts unknown to the government that were material to the government's decision to purchase and use MilSpec AFFF.** ...... 4
        **A.**   **The third *Boyle* element is met if the defendant lacked actual knowledge of the alleged product defects.** ................................................................................. 5
        **B.**   **The third *Boyle* element is also met if the government already knew of the alleged product defects.** ................................................................................. 5
        **C.**   **The third *Boyle* element is also met if the knowledge allegedly withheld by defendants was immaterial to the government's decision-making.** ........................ 7
**COMMON UNDISPUTED FACTS** .................................................................................................. 8
   **I.**    **The government can purchase AFFF products only after determining that the products conform to the MilSpec.** ............................................................................... 8
   **II.**   **Qualified MilSpec AFFF products are subject to additional quality conformance inspections.** .................................................................................................................. 10
**CONCLUSION** ............................................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Agent Orange Prod. Liab. Litig.*,
  304 F. Supp. 2d 404 (E.D.N.Y. 2004), *aff'd* 517 F.3d 76 (2d Cir. 2008).................................6

*In re Agent Orange Prod. Liab. Litig.*,
  517 F.3d 76 (2d Cir. 2008)..........................................................................................6, 7, 8

*Boyle v. United Technologies Corp.*,
  487 U.S. 500 (1988)............................................................................................... *passim*

*Cuomo v. Crane Co.*,
  771 F.3d 113 (2d Cir. 2014)...............................................................................................4

*Getz v. Boeing Co.*,
  654 F.3d 852 (9th Cir. 2011) .............................................................................................5

*Glassco v. Miller Equip. Co.*,
  966 F.2d 641 (11th Cir. 1992) .......................................................................................7, 8

*Guarisco v. Boh Bros. Constr. Co., LLC*,
  421 F. Supp. 3d 367 (E.D. La. 2019).................................................................................4

*Haltiwanger v. Unisys Corp.*,
  949 F. Supp.898 (D.D.C. 1996) .........................................................................................6

*Houghtaling v. Unisys Corp.*,
  955 F. Supp. 309 (D.N.J. 1996) ........................................................................................4

*Kerstetter v. Pac. Sci. Co.*,
  210 F.3d 431 (5th Cir. 2000) .........................................................................................4, 5

*Kleemann v. McDonnell Douglas Corp.*,
  890 F.2d 698 (4th Cir. 1989) ...................................................................................2, 3, 4

*Lewis v. Babcock Indus., Inc.*,
  1992 WL 142751 (S.D.N.Y. June 8, 1992), *aff'd*, 985 F.2d 83 (2d Cir. 1993).........................3

*Miller v. Diamond Shamrock Co.*,
  275 F.3d 414 (5th Cir. 2001) .........................................................................................3, 5

*Niemann v. McDonnell Douglas Corp.*,
  721 F. Supp. 1019 (S.D. Ill. 1989).....................................................................................6

*Ramey v. Martin-Baker Aircraft Co.*,
   874 F.2d 946 (4th Cir. 1989) ....................................................................................... 3, 6, 7

*Stone v. FWD Corp.*,
   822 F. Supp. 1211 (D. Md. 1993) ............................................................................................ 5

*Stout v. Borg-Warner Corp.*,
   933 F.2d 331 (5th Cir. 1991) ................................................................................................... 6

*Sundstrom v. McDonnell Douglas Corp.*,
   816 F. Supp. 587 (N.D. Cal. 1993) .......................................................................................... 5

*Szigedi v. Ensign-Bickford Co.*,
   2002 WL 32086774 (M.D.N.C. July 15, 2002) ...................................................................... 3

*Tozer v. LTV Corp.*,
   792 F.2d 403 (4th Cir. 1986) ................................................................................................... 3

*Yeroshefsky v. Unisys Corp.*,
   962 F. Supp. 710 (D. Md. 1997) ......................................................................................... 4, 6

# INTRODUCTION

As Defendants previously explained, the AFFF MilSpec is "reasonably precise" as a matter of law, both on its face and as demonstrated by the government's continuing use and purchase of AFFF knowing that it contained PFOS, PFOA, or other PFAS compounds that may degrade to PFOS or PFOA. As explained in this further briefing, there is no dispute of material fact that Defendants' MilSpec AFFF products "conformed to those specifications" and Defendants "warned the United States about the dangers in the use of [MilSpec AFFF] that were known to the [Defendants] but not to the United States." *Boyle v. United Technologies Corp.*, 487 U.S. 500, 512 (1988). As a matter of law, therefore, Defendants are entitled to partial summary judgment on any claim that arises from MilSpec AFFF.

In this case—where the government kept a detailed Qualified Products List ("QPL") and the MilSpec required a product to conform to the specification in order to be listed on that QPL—*Boyle*'s second element is straightforward. Because the military determined that every AFFF product on the QPL conformed to MilSpec requirements, Defendants meet the second element as a matter of law.

Each Defendant also meets the third *Boyle* element as a matter of law, because no Defendant knew any material facts concerning the alleged defects of MilSpec AFFF that were unknown to the government at the time. On the contrary, as Defendants showed in their prior briefing, the government has long had extensive knowledge of the possible risks of MilSpec AFFF to the environment and human health.

Although the first *Boyle* element focused, by definition, on the United States' knowledge over time, the second and third elements require Defendant-specific inquiries: (1) conformity of each Defendant's specific products with the AFFF MilSpec, and (2) a comparison of each

1

Defendant's knowledge of the alleged product defects with the government's knowledge over time. This omnibus memorandum sets forth the legal standards applicable to the second and third *Boyle* elements as well as certain common facts not already contained in Defendants' prior briefing relating to the military's testing and qualification of MilSpec AFFF. The additional accompanying memoranda apply these legal standards to facts specific to particular Defendants or categories of Defendants. Together, these briefs on *Boyle*'s three elements demonstrate that each Defendant meets the second and third *Boyle* elements as a matter of law.[1]

## LEGAL STANDARDS

**I.     The second element of the Government Contractor Immunity Defense is met when the manufacturer's "equipment conformed" to the United States-approved specification.**

To demonstrate the second element of the GCD, a contractor must show that its equipment "conformed to" the government's specifications. *Boyle*, 487 U.S. at 512. This element is met when the product at issue "conform[s] to the precise *quantitative* specifications" approved by the government. *Kleemann v. McDonnell Douglas Corp.*, 890 F.2d 698, 702–03 (4th Cir. 1989). In *Kleemann*, the plaintiff's spouse died in an accident resulting from the failure of a military aircraft's landing gear; the plaintiff argued that the second element of the GCD was not met because the landing gear did not conform to "general qualitative specifications," such as the requirement that it "withstand normal landing loads." *Id*. at 703. The Fourth Circuit rejected that argument, holding that "[o]nly the detailed, quantitative specifications—and not those calling for such vagaries as a fail-safe, simple or inexpensive product—are relevant to the government contractor defense." *Id*. As the court explained, otherwise, "[a] product involved in a design-

---

[1] As Defendants have previously stated, the GCD applies to all types of claims, including failure-to-warn claims. *See* Def. Reply 20 n.7. Under CMO 16C and 16D, the application of the GCD to specific claims and particular cases is a subject for later briefing. *Id.*

2

induced accident would, as a definitional matter, always be deemed not to comply with such generalities since no performance specifications approved by the government would purposely allow a design that would result in an accident." *Id.*

Moreover, in deciding whether *Boyle's* second element is met, courts should not second-guess the government's own finding that a product conformed to its specifications. Again, in *Kleeman*, the Fourth Circuit held that when the government actively participates in the development of the product, that "itself becomes persuasive evidence of product conformity to precise specifications." 890 F.2d at 702. More pointedly, in *Ramey v. Martin-Baker Aircraft Co.*, 874 F.2d 946 (4th Cir. 1989), after concluding that the second *Boyle* element was met because "[n]othing in the record suggest[ed]… that the Navy found the [allegedly defective military aircraft component] not to conform to specifications," the court noted: "It is not our province, of course, to make such a finding on the Navy's behalf." *Id.* at 951; *see also Tozer v. LTV Corp.*, 792 F.2d 403, 408 (4th Cir. 1986) ("Courts are ill equipped to make military judgments.").

Other courts likewise have held that "[e]vidence that the government inspected and accepted the products produced by the private contractor is sufficient to establish conformity with reasonably precise specifications." *Lewis v. Babcock Indus., Inc.*, 1992 WL 142751, at *7 (S.D.N.Y. June 8, 1992), *aff'd*, 985 F.2d 83 (2d Cir. 1993); *see, e.g.*, *Miller v. Diamond Shamrock Co.*, 275 F.3d 414, 420 (5th Cir. 2001) (the second element can be established by "[a]cceptance and use of an item following its production"); *Szigedi v. Ensign-Bickford Co.*, 2002 WL 32086774, at *8 (M.D.N.C. July 15, 2002) (same). In *Lewis*, for example, the Second Circuit affirmed summary judgment on the second *Boyle* element because, when the government "reordered" the product at issue, it not only "received exactly what it sought," but it "also approved the

3

replacement . . . shipments it received." 985 F.2d at 89; *see also, e.g.*, *Cuomo v. Crane Co.*, 771 F.3d 113, 117 (2d Cir. 2014).

Proof of conformance is generally straightforward and can come in a variety of forms These include testimony and affidavits from the contractor's employees, *Houghtaling v. Unisys Corp.*, 955 F. Supp. 309, 312 (D.N.J. 1996); evidence of government inspections or testing of the products, *Kleeman*, 890 F.2d at 702; "government payment to the contractor without set off," *Guarisco v. Boh Bros. Constr. Co., LLC*, 421 F. Supp. 3d 367, 378 (E.D. La. 2019); or the government's acceptance and continued use of the products over time, *Yeroshefsky v. Unisys Corp.*, 962 F. Supp. 710, 719 (D. Md. 1997); *Kerstetter v. Pac. Sci. Co.*, 210 F.3d 431, 435-36 (5th Cir. 2000).

**II.     The third element of the Government Contractor Immunity Defense is met when Defendants did not have actual knowledge of facts unknown to the government that were material to the government's decision to purchase and use MilSpec AFFF.**

To ensure that the GCD does not "cut[] off information highly relevant to the discretionary decision" by the government, the third *Boyle* element requires that "the supplier warned the United States about the dangers in the use of equipment that were known to the supplier but not to the United States." *Boyle*, 487 U.S. at 512-513. In other words, *Boyle* requires a contractor to warn the government about information about product "dangers" that are (1) "known to" the contractor, (2) "not [known] to the United States," and (3) "relevant to" the government's discretionary decision-making. *Id*.

There are, thus, three distinct ways that a contractor can satisfy *Boyle*'s third element. First, because *Boyle* imposes an "actual knowledge" standard, as opposed to a "should have known" standard, a defendant can demonstrate that it lacked actual knowledge of the alleged product defect. Second, a contractor can satisfy *Boyle* by showing that the government already knew what the contractor allegedly knew about an alleged product defect. Finally, a contractor can show that

4

information it allegedly had but the government lacked was not material to the government's decision-making.

### A. The third *Boyle* element is met if the defendant lacked actual knowledge of the alleged product defects.

With respect to a contractor's knowledge under the third element of the GCD, *Boyle* expressly adopted an "actual knowledge" standard, not a negligence-based "should have known" standard. *See* 487 U.S. at 512. That is, *Boyle* does not require the contractor to warn the government about a product's alleged defects unless the contractor has "actual knowledge" of those defects. *Getz v. Boeing Co.*, 654 F.3d 852, 866 (9th Cir. 2011). *Boyle* "does *not* require a contractor to warn about dangers of which it merely *should* have known." *Id.* (emphasis added); *Stone v. FWD Corp.*, 822 F. Supp. 1211, 1212 (D. Md. 1993) ("[A]doption of a 'should have known' standard would nullify [*Boyle*'s] *raison d'etre*."); *see Sundstrom v. McDonnell Douglas Corp.*, 816 F. Supp. 587, 593 (N.D. Cal. 1993). Thus, arguments based on constructive or imputed knowledge or what a manufacturer "should have known" cannot defeat summary judgment. *See Kerstetter*, 210 F.3d at 436; *Sundstrom*, 816 F. Supp. at 593.

In *Miller*, for example, the Fifth Circuit rejected the plaintiffs' argument that the third *Boyle* element was defeated by the defendants' "constructive knowledge" of Agent Orange's hazards. 275 F.3d at 422. The Fifth Circuit explained that "[t]he government contractor defense does not require a contractor to warn the government of defects about which it only *should* have known. After *Boyle*, a government contractor is *only* responsible for warning the government of dangers about which it has *actual* knowledge." *Id*. (citations and internal quotation marks omitted).

### B. The third *Boyle* element is also met if the government already knew of the alleged product defects.

The third *Boyle* element is also satisfied if the government knew about the product's alleged hazards—whether because the contractor warned the government of those hazards or

5

because the government independently became aware of them. As the Second Circuit put it in *Agent Orange*, "defendants can demonstrate a fully informed government decision by showing . . . that the government did not need the warnings because it already possessed that information." *In re Agent Orange Prod. Liab. Litig.*, 517 F.3d 76, 99 (2d Cir. 2008). "Proving either that the contractor lacked actual knowledge of the danger or that the government was independently aware of the defect demonstrates that the government was at least as aware as the contractor." *Haltiwanger v. Unisys Corp.,* 949 F. Supp.898, 904 (D.D.C. 1996). In other words, "[t]he third prong does not require contractors to warn the government of dangers already known to the government." *In re Agent Orange Prod. Liab. Litig.*, 304 F. Supp. 2d 404, 435 (E.D.N.Y. 2004), *aff'd* 517 F.3d 76 (2d Cir. 2008).

That is just what the defendant showed in *Ramey*, in which the Fourth Circuit affirmed summary judgment on the GCD because it concluded that the government already knew about the risk posed by the allegedly defective product. The Fourth Circuit did so despite a "potentially troublesome issue" about the third *Boyle* element—namely, that the defendant had been aware of safety risks it failed to convey to the military. 874 F.2d at 951 & n.10. The court explained: "Because we conclude that the Navy was already aware of the risk," "we need not consider whether [defendant] would otherwise have been required to warn the Navy directly of the risk in order to successfully assert" the GCD. *Id.* at 951 n.10. Numerous other cases uphold the GCD under this same principle. *See, e.g.*, *Stout v. Borg-Warner Corp.*, 933 F.2d 331, 336-337 (5th Cir. 1991); *Haltiwanger*, 949 F. Supp. at 904; *Yeroshefsky*, 962 F. Supp. at 721; *Niemann v. McDonnell Douglas Corp.*, 721 F. Supp. 1019, 1028 (S.D. Ill. 1989).

Indeed, in *Boyle* itself, the Supreme Court rejected the Eleventh Circuit's GCD formulation that would have required contractors to warn of all risks, regardless of whether the government

6

was already aware of them. 487 U.S. at 513. The Court determined that such a rule was not "designed to protect the federal interest embodied in the 'discretionary function' exemption" and instead adopted a rule under which a contractor need only warn the Government "about the dangers in the use of the equipment that were known to the supplier *but not to the United States*." *Id*. at 512-13 (emphasis added). Thus, government knowledge of the "dangers in the use of" a product establishes the third *Boyle* element independently of whether or not the defendants disclosed those "dangers" to the government. *Id*. at 512.

### C. The third *Boyle* element is also met if the knowledge allegedly withheld by defendants was immaterial to the government's decision-making.

The GCD requires only that a contractor apprise the government of "*material* circumstances not already known to it*." *Ramey*, 874 F.2d at 951 (emphasis added). Allegedly failing to warn the government of product risks that are not "material" to the government's decision to purchase and use the product will not undermine the GCD.

As with the first element of the GCD, *see* Def. Mem. 7–8, 46–47, *Agent Orange* is instructive on this point, holding that if the information a defendant has about a product's "hazards" was not "'substantial enough to influence the military decision' made," a defendant will satisfy the third *Boyle* element even if it did not disclose that information to the government. *In re Agent Orange*, 517 F.3d at 98 (quoting *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 187, 193 (2d Cir. 1987)). This rule recognizes the impracticality of requiring "that a manufacturer compile and present to the government in advance a list of each and every risk associated with a product it is producing for the government." *In re Agent Orange*, 517 F.3d at 98.

The Eleventh Circuit likewise has held that the GCD applies when it cannot be shown that knowledge purportedly withheld from the government "would have affected [the government's] decision." *Glassco v. Miller Equip. Co.*, 966 F.2d 641, 643 (11th Cir. 1992). Among other things,

7

the plaintiff argued that the manufacturer should have used a material other than leather, and that the GCD did not apply because the manufacturer knew (and the government did not know) "that leather may have a useful life of no more than 10 years." *Id*. The Eleventh Circuit rejected this argument because there was "no evidence . . . that knowledge by the government of a 10 year useful life would have affected the decision to use leather." *Id*.

## COMMON UNDISPUTED FACTS[2]

### I. The government can purchase AFFF products only after determining that the products conform to the MilSpec.

The military inspects AFFF products and determines that they conform to the AFFF MilSpec before it accepts them for government use. In fact, under the MilSpec, the military is allowed to purchase only those AFFF products that have been "qualified for listing on the applicable Qualified Products List" for the MilSpec. Def. Ex. 13 (2020 MilSpec) § 3.1. This requirement has not changed since the Navy first issued the current MilSpec in 1969. *See* Def. Ex. 1 (1969 MilSpec) § 3.1; *see also* Def. Ex. 15 Resp. 18 ("Since November 21, 1969, . . . all versions of the AFFF MilSpec have required all AFFF products furnished under the MilSpec to first be qualified for listing on the applicable Qualified Products List at the time set for opening bids.").

For the military to place an AFFF product on the QPL, the military first must determine that the product has passed qualification tests specified by the MilSpec. *See, e.g.*, Def. Ex. 13 (2020 MilSpec) § 4.3. Prior to listing on the QPL, the government examines, tests, and approves products for conformance with the MilSpec requirements. *See* Def. Ex. 143;[3] Def. Ex. 15 Resp. 19 ("to become qualified a product must be submitted for specified tests and examinations, all of which

---

[2] Defendants incorporate the common undisputed facts set forth in Defendants' opening and reply briefs on their motion for partial summary judgment on the first element of the GCD, Dkt. No. 1965-1 and Dkt. No. 2141.

[3] Available at https://quicksearch.dla.mil/Transient/97830B323AB64201B98086DE71C702D3.pdf.

8

must be successfully passed"); Def. Ex. 17 (Darwin Dep.) 652:8-17 (AFFFs "had to" meet the MilSpec or "they wouldn't have been on the qualified products list").

Naval Sea Systems Command ("NAVSEA") applies these criteria on behalf of the government and determines whether AFFF products satisfy the MilSpec's requirements. *See* Def. Ex. 15 Resp. 20 ("Since November 21, 1969, [NAVSEA] or one of its predecessor entities . . . have been responsible for making the determination that an AFFF product meets the requirements of the current AFFF MilSpec and is qualified to be placed on the Qualified Products List."). It is assisted by the Naval Research Laboratory ("NRL"), which has tested dozens of products for MilSpec qualification over the years. *See, e.g.,* Def. Ex. 99 (history of QPL list); Def. Ex. 144 (Farley Dep.) 55:23-58:23; 199:17-201:21 (describing the NRL's qualification testing). The NRL would generally receive samples of AFFF products, conduct its own testing, issue a report, and subsequently notify NAVSEA whether the products had met the MilSpec's qualification requirements. *See, e.g.*, Def. Ex. 145 (compilation of several NRL reports of qualification tests). Qualification testing was not simply a rubber-stamp process, for the NRL sometimes rejected QPL placement for AFFF products. *See, e.g.*, *id.* at -2040.

As the NRL reports demonstrate, qualification tests are extensive. *See e.g., id.*, *passim*. The list of required qualification tests has been revised and expanded from 1969 to 2020. For example, the 1969 MilSpec required qualification testing for over a dozen chemical and physical requirements, as well as three different fire performance tests. Def. Ex. 1 (1969 MilSpec) tbl. 1. The 2020 MilSpec now requires qualification testing for 18 separate requirements, including "PFOA content," "PFOS content," "Fluorine content," and "Environmental impact." Def. Ex. 13 (2020 MilSpec) tbl. 3.

9

## II.   Qualified MilSpec AFFF products are subject to additional quality conformance inspections.

In addition to qualification tests required to place a product on the AFFF QPL, the MilSpec provides that product lots "shall be subjected" to "quality conformance inspection." Def. Ex. 13 (2020 MilSpec) § 4.5. That requirement has remained unchanged since 1969. *See* Def. Ex. 1 (1969 MilSpec) § 4.6.2. Through such testing "[c]riteria for retention of qualification are applied on a periodic basis to ensure continued integrity of the qualification status." Def. Ex. 143 at 2; *see also* Def. Ex. 15 Resp. 21. NAVSEA "has always reserved the right to perform at any time any of the inspections set forth in the MilSpec whenever such inspections are deemed to be necessary to ensure AFFF supplies and services conform to the prescribed requirements." Def. Ex. 15 Resp. 22; *see also* Def. Ex. 13 (2020 MilSpec) § 4.1; Def. Ex. 1 (1969 MilSpec) § 4.1.

## CONCLUSION

For the reasons discussed in Defendants' prior briefing on the GCD, this omnibus brief, and the additional briefs by 3M and by Telomer AFFF Manufacturers that accompany this omnibus brief, the Court should hold that Defendants meet all three elements of the GCD as a matter of law and should enter summary judgment for Defendants to the extent that Plaintiffs' claims arise from MilSpec AFFF and its allegedly defective design.

Dated: May 13, 2022                                             Respectfully submitted,

/s/ *Michael A. Olsen*___

| | |
|---|---|
| Michael A. Olsen | Brian Duffy |
| Mayer Brown LLP | Duffy & Young LLC |
| 71 South Wacker Drive | 96 Broad Street |
| Chicago, IL 60606 | Charleston, SC 29401 |
| P: (312) 701-7120 | P: (843) 720-2044 |
| F: (312) 706-8742 | F: (843) 720-2047 |
| molsen@mayerbrown.com | bduffy@duffyandyoung.com |
| | |
| Joseph G. Petrosinelli | David E. Dukes |
| Williams & Connolly LLP | Nelson Mullins Riley & Scarborough LLP |
| 725 Twelfth Street, N.W. | 1320 Main Street, 17th Floor |
| Washington, DC 20005 | Columbia, SC 29201 |
| P: (202) 434-5547 | P: (803) 255-9451 |
| F: (202) 434-5029 | F: (803) 256-7500 |
| jpetrosinelli@wc.com | david.dukes@nelsonmullins.com |
| | |
| *Co-Lead Counsel for Defendants* | *Co-Liaison Counsel for Defendants* |

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on May 13, 2022, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify the foregoing document is being served this day on all counsel of record in this case via transmission of Notice of Electronic Filing generated by CM/ECF.

*/s/ Michael A. Olsen*
Michael A. Olsen