

28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
o. 843.216.9000  f. 843.216.9450

**Fred Thompson III**
*Licensed in South Carolina*
direct: 843.216.9118
fthompson@motleyrice.com

"I will stand for my client's rights.
I am a trial lawyer."
–Ron Motley (1944–2013)

June 22, 2022

**VIA ECF**
Hon. Richard Mark Gergel
U.S. District Court for the District of South Carolina
J. Waites Waring Judicial Center
83 Meeting Street
Charleston, South Carolina 29401

Re: *In re AFFF Products Liability Litigation*, MDL No. 2:18-mn-2873-RMG

Dear Judge Gergel:

The Plaintiffs' Executive Committee ("PEC") writes in response to 3M Company's ("3M") request that this Court compel the PEC to produce deposition transcripts of plaintiff's experts[1] in a separate case pending in the District of New Jersey, namely, *Middlesex Water Company v. 3M Company* (D.N.J. No. 2:18-cv-15366) ("*Middlesex*"), who likewise have been designated as experts in the *AFFF MDL* [ECF No. 2399] ("Mot. to Compel").[2]

**Factual Background:**

Plaintiff Middlesex Water Company ("MWC") alleges that 3M contaminated groundwater with PFOA and PFOS that is used by MWC as one of its drinking water sources. Importantly, MWC does *not* allege that this groundwater contamination resulted from the use of aqueous film-forming foams ("AFFF"), which, as the Court is aware, is a central tenet of all the cases pending in this MDL. This critical distinction was noted by the Judicial Panel on Multidistrict Litigation ("JPML") when it denied transfer of *Middlesex* to this transferee Court stating that, "Plaintiffs' claims in Middlesex are directed at 3M and its manufacture, marketing, and sales of PFOS and PFOA, not its manufacture of AFFF products."[3] This distinction is critically important because expert opinions relevant in the *AFFF MDL,* such as the source of PFOA and PFOS contamination, are simply not at issue in *Middlesex*, and, as such, the subject matter of plaintiff's experts' opinions in *Middlesex*, including their deposition testimony, differ in significant ways to the subject matter of the opinions that were offered by some of those same experts in this MDL. In fact, because

---

[1] The experts at issue are: (1) Linda Birnbaum, (2) Christopher Higgins, (3) Robert Johnson, (4) (5) David MacIntosh, (6) Jonathan Martin, (7) Stephen Petty, and (8) Michael Siegel. *See* Mot. to Compel at n. 1.

[2] 3M notes that the instant motion is necessary "because the Middlesex deposition transcripts are covered by a protective order in that case; otherwise, 3M would simply use the transcripts." *See* Mot. to Compel at 3. Plaintiff MWC is represented by, among others, the law firm Douglas & London, P.C., who designated these transcripts confidential under the protective order in the *Middlesex* case. As discussed below, Michael London of Douglas & London, who is also Co-Lead counsel of the PEC in the *AFFF MDL*, is amendable to production of these transcripts in the *AFFF MDL* with the caveats set forth below.

[3] *See* December 18, 2019, JPML Order Denying Transfer of *Middlesex* to the *AFFF MDL,* attached as Ex. A.



June 22, 2022
Page 2

*Middlesex* does not involve AFFF, Plaintiff's expert opinions specifically addressed the fact that while the *intermediate* source of the PFOA and PFOS contamination in MWC is unknown, 3M is the original source of the PFOA and PFOS in MWC's drinking water wells, as the majority of those compounds found in MWC's wells bear the chemical fingerprint of 3M's unique manufacturing process.

Similarly, because the only Defendant in *Middlesex* is 3M, certain of MWC's experts' opinions focus narrowly and specifically on *3M's* manufacture of PFOA and PFOS and *its* failure to warn of the toxic and dangerous properties of these chemicals, whereas the opinions proffered in this MDL are substantially broader given the multitude of Defendants. Additionally, certain of the experts have opined on *entirely* different subjects in *Middlesex* than they proffer in the MDL.[4]

However, notwithstanding the different nature of the claims at issue in *Middlesex* as compared to the *AFFF MDL*, MWC's counsel and the PEC are willing to produce the deposition transcripts of these experts for the *sole purpose of impeachment,* with two caveats. First, that the transcripts be marked and treated as highly confidential under the protective order in the *AFFF MDL*;[5] and, second, 3M agrees to a reciprocal arrangement whereby 3M provides the PEC with every transcript of its experts involving prior and current PFAS litigation.

Although the PEC is willing to reach an agreement with respect to use of these transcripts for impeachment purposes, the PEC wholly objects to 3M's request that it be permitted to use these transcripts substantively, "in support of *Daubert* motions to exclude those experts' testimony,"[6] or in lieu of or in addition to, the substantive testimony being elicited from the PEC's experts in the MDL. As discussed further below, this is an improper use of prior expert deposition testimony.

Moreover, of the eight (8) experts in *Middlesex* that are also experts in the *AFFF MDL*, four (4) of them have *already* been deposed in the MDL, and, as such, any argument that the production of these transcripts will allow more efficient use of time during depositions is not possibly accurate, and, in any event, use of them substantively in this manner would prejudice those parties who were not present at these depositions

---

[4] By way of example, in *Middlesex*, Mr. Stephen Petty's major opinions are cost estimates of the treatment system that MWC would require in order to treat its PFAS contamination. Conversely, in the MDL, Mr. Petty is a standard of care expert who opines on, *inter alia*, the inadequacy of warnings that accompanied AFFF products over time. There is simply nothing similar about the thrust of Mr. Petty's opinions across the two cases.

[5] On June 20, 2022, Co-Lead counsel for the PEC, Michael London, indicated to 3M's counsel that it would not oppose the production of the *Middlesex* expert deposition transcripts assuming agreement on the following two conditions: (1) the use of the deposition testimony would be limited to impeachment purposes only; and (2) 3M will reciprocally produce to the PEC the deposition transcripts of its experts from current and prior litigation involving PFAS who were likewise designated experts in this MDL. The PEC would, of course, limit its use of these transcripts to impeachment purposes only. On June 22, 2022, the PEC was informed through 3M's counsel that it would not agree to limit the use of the prior deposition testimony to impeachment only and believes use for *Daubert* is appropriate but was generally amenable to the rest of the PEC's proposal. As such, Court intervention is necessitated with respect to at least the issue of whether the *Middlesex* deposition testimony is usable in support of *Daubert* challenges, which the PEC submits it is not.

[6] *See* Mot. to Compel at 1.



June 22, 2022
Page 3

in the *Middlesex* case, including the three bellwether Plaintiffs. While Douglas & London, P.C., is one of MWC's counsel and is co-counsel of record for the bellwether Plaintiff, City of Stuart, none of the other bellwether counsel were present at these depositions (other than, of course, 3M's counsel), and thus those parties did not have a full and fair opportunity to conduct any potential examination of these expert witnesses.

Finally, pursuant to Case Management Order ("CMO") No. 22, the Parties negotiated time limits both for experts who provide purely generic opinions as well as additional deposition time for those experts who provide both generic opinions as well as case-specific opinions relating to the three bellwether Plaintiffs, namely, City of Stuart, Town of Ayer and City of Sioux Falls. Were the Defendants permitted to also use the deposition transcripts from *Middlesex* in support of their *Daubert* motions, they would, in essence, be reneging on the agreed to time limits set forth in CMO 22, and further would unfairly be permitted to cherry-pick and cite from another seven (7) hours of testimony in a case where there are very different issues at play, and, as noted above, different opinions and non-AFFF claims asserted.

In light of the foregoing, and as set forth further below, fairness dictates the conclusion that 3M's request to use the prior testimony from another litigation (with different parties that were not all present for these expert depositions) for *Daubert* challenges in this case should be denied.

**<u>Argument:</u>**

3M argues that production of these transcripts is proper under FED. R. CIV. P. 32(a)(2) for the purpose of impeachment.[7] As noted above, the PEC conditionally agrees to the production of the expert deposition transcripts from *Middlesex* for impeachment purposes only so long as 3M reciprocally produces current and prior expert testimony involving PFAS for those defense experts that have likewise been designated as experts here. Like 3M, the PEC does not oppose its experts' transcripts being designated confidential under the protective order in the *AFFF MDL* to the extent that 3M wants to maintain confidentiality claims over any such transcripts.

Next, 3M argues that pursuant to FED. R. CIV. P. 32(a)(8), it may use the deposition transcripts in support of its *Daubert* motions in this MDL because, it alleges, *Middlesex* involves the same subject matter and the same parties.[8] FED. R. CIV. P. 32(a)(8) provides no support for 3M's claim that it may use these transcripts in support of Defendants' *Daubert* motions.

FED. R. CIV. P. 32(a)(8) states that a party may use a deposition taken in an earlier action "in a later action involving the *same subject matter between the same parties*…."[9] In short, the Rule "requires that the prior and present lawsuits involve the 'same subject matter' and 'the same parties or their representatives or

---

[7] *See* Mot. to Compel at 3.

[8] *Id.*

[9] FED. R. CIV. P. 32(a)(8).



June 22, 2022
Page 4

successors in interest.'"[10] "These requirements have been construed liberally in light of the twin goals of fairness and efficiency."[11] "The accepted inquiry focuses on whether the prior cross-examination would satisfy a reasonable party who opposes admission in the present lawsuit."[12] "Consequently, courts have required only a substantial identity of issues . . . and the presence of an adversary with the same motive to cross-examine the deponent."[13]

"Additionally, Rule 32(a)(8) only authorizes the use of a deposition from a prior action to the same extent as if [the deposition was] taken in the later action."[14] "Thus…use of a deposition taken in the prior action must also be allowed by subparts two through seven of Rule 32(a), which delineate the circumstances in which a party may use deposition testimony…"[15] Finally, "[t]he decision whether to admit a deposition from a prior lawsuit is vested in the district court's sound discretion."[16] This Court's discretion should find against use of these transcripts for any matters beyond impeachment.

First, the only relevant subpart of Rule 32(a) (2-7) which would permit use of prior testimony in this case is subpart two, which permits the prior use of the testimony for impeachment purposes. Again, the PEC does not object to this use assuming 3M will reciprocate and provide prior deposition testimony of its experts from prior/current PFAS cases. None of the other subsections between subparts two and seven are applicable here and provide zero support for the position that such testimony can be used for *Daubert*. Because none of the other subparts of Fed. R. Civ. 32(a) are applicable here, to the extent that 3M's Mot. to Compel is granted in any respect, such ruling should be limited to the use of such prior testimony for impeachment purposes only.

Nonetheless, even assuming *arguendo* that some other subpart of 32(a) was applicable (which it is not), as discussed above, *Middlesex* does not involve the same subject matter as the cases pending in the *AFFF MDL*. Most notably, *Middlesex* does not involve AFFF contamination, which is the key aspect of the opinions of many of the PEC's experts in the MDL, which simply is not at issue in *Middlesex*.

---

[10] *Hub v. Sun Valley Co.,* 682 F.2d 776, 778 (9th Cir. 1982) (quoting FED. R. CIV. P. 32(a)(8)).

[11] *Id*.

[12] *Id.*

[13] *Id*. (citations omitted); *see also Murdoch v. Rosenberg & Assocs., LLC*, 2013 U.S. Dist. LEXIS 40825, at *22 (D. Md. 2013) ("the Court has grave reservations regarding whether this testimony is admissible under Rule 32 because it seems to come from an action involving different subject matters, parties, and/or representatives").

[14] *Knickerbocker v. Corinthian Colls., Inc.,* No. C12-1142JLR, 2013 U.S. Dist. LEXIS 203500, at *4-5 (W.D. Wash. July 10, 2013) (citing Fed. R. Civ. P. 32(a)(8)) (internal quotations omitted); *see also*, 7 Matthew Bender, Moore's Federal Practice § 32.63[1] (3d ed. 2013) ("Under Rule 32(a)(8), depositions taken in a former action may be used in a latter action as if the deposition was originally taken for the latter action . . . .").

[15] *Id*. at *5.

[16] *Hub*, 682 F.2d at 777-78 (citing *First Nat'l Bank in Greenwich v. Nat'l Airlines*, 22 F.R.D. 46, 49 (S.D.N.Y. 1958)).



June 22, 2022
Page 5

Further, *Middlesex* does not involve the same parties as those in the MDL. While 3M is a party to the *Middlesex* case, importantly, none of the three AFFF MDL bellwether Plaintiffs are parties to *Middlesex*. 3M's non-textual argument proves nothing. Simply because some of the same law firms that represent MWC are also involved in the *AFFF MDL* does not dispose of the requirement that the *parties* must be the same in the prior action and the current action for the use of the prior testimony to be proper.

Moreover, it also cannot be said that the bellwether Plaintiffs' interests were protected in *Middlesex* simply because some of the same counsel are involved in the *AFFF MDL* that represent MWC. In fact, none of the counsel that represent either Town of Ayer or the City of Sioux Falls are involved in *Middlesex* whatsoever, and, as such, those two bellwethers were entirely unrepresented in *Middlesex*. Further, counsel for MWC would have been entirely unaware of the issues at play in the three bellwether cases at the time the depositions of the *Middlesex* experts were conducted, and, therefore, would not have been in a position to conduct any sort of redirect of its expert relative to fact-specific issues in any of the three bellwether cases. The simple fact is, the final three (3) Tier Two Bellwether Trial Pool Cases were not even selected by the Court until October 13, 2021;[17] this was well after all of plaintiff's expert depositions in *Middlesex* had already been completed.

In support of its argument that it should be permitted to use the prior testimony for *Daubert* purposes, 3M relies on two non-binding cases, namely, *Cloud v. Fla. Dep't of Corr*., 2020 WL 12182757 (N.D. Fla. May 14, 2020) and *Oracle Am., Inc. v. Hewlett Packard Enter. Co*., 2017 WL 1436080 (N.D. Cal. Apr. 24, 2017), which do not support its position. First, in both *Oracle* and *Cloud*, the party seeking to use the prior testimony was requesting use of such prior testimony to significantly decrease the time and resources that would have been necessary to re-depose the witnesses at issue. Here, although 3M pays lip service to the idea that the production of these transcripts would lead to greater efficiency, the reality is that there is no indication in 3M's Motion to Compel that the production of these transcripts will limit the time needed to depose the PEC's experts, and, in any event, half of the experts at issue have already been deposed.[18] Second, here, the Defendants pre-negotiated with the PEC specific time limitations for each expert pursuant to CMO, and the PEC is making every expert fully available for their deposition at mutually convenient times.

Finally, the use of the *Middlesex* deposition transcripts for *Daubert* purposes here is also illogical. The expert reports that were issued by MWC in *Middlesex* were never re-produced and/or adopted by the PEC in the *AFFF MDL*, and thus the opinions contained in those reports and the accompanying depositions are not part of the proffered evidence in the *AFFF MDL*. As such, it would make little sense for the Defendants to move to exclude opinions in this MDL that were never proffered here. The Defendants cannot mandate

---

[17] *See* Order Selecting Tier Two Water Provider Bellwether Trial Pool Cases [ECF No. 1931].

[18] As noted in the PEC's opposition to 3M's request to hear this matter on an expedited basis [ECF No. 2400], 3M first met and conferred with counsel for MWC/MDL in mid-April. Almost immediately thereafter, 3M was advised that counsel for MWC was not amenable to the production of MWC's expert reports in the *AFFF MDL*. Nevertheless, despite this prompt response, 3M waited until after expert depositions were well under way, after seeing the PEC's opposition to its request in the Joint Status Report, and after the June case management conference with Your Honor to finally file this purportedly "urgent" motion to compel.



June 22, 2022
Page 6

that the PEC adopt MWC's opinions in the *AFFF MDL*, simply so that Defendants can move to exclude them.

The PEC anticipates that 3M may argue that the *Middlesex* expert deposition transcripts should be part of the *AFFF MDL* record, because the PEC once cited to the *Middlesex* deposition transcript of one of MWC's experts, Jonathan Martin, Ph.D., in Plaintiffs' Reply in Support of Motion to Compel Discovery from Defendant 3M Company ("Lehr Reply Brief") [ECF No. 2232], at 3. This argument should fail. First, Dr. Martin's *Middlesex* testimony was cited in this MDL against 3M, who is, in fact, a party in the *Middlesex* case, and thus did have full and fair opportunity for cross-examination. Second, the reference was part of a *discovery* motion relating to a factual issue, not an expert opinion, and thus, is entirely detached from any complex *Daubert*-type ruling. Moreover, the PEC cited to Dr. Martin's testimony responsively in its reply brief solely to correct a knowingly false claim by 3M about Dr. Martin's current opinions concerning the ability to detect PFOA and PFOS in the blood of the general population. In other words, the PEC did not affirmatively put Dr. Martin's opinions into the record, rather, was forced to cite to his testimony to correct a knowingly false claim made in 3M's opposition brief.[19]

For the foregoing reasons, the PEC respectfully requests that the Court deny 3M's Motion to Compel to the extent that it seeks to improperly use the *Middlesex* expert deposition testimony to support *Daubert* challenges in this MDL against three bellwether Plaintiffs that are not parties to *Middlesex* case and were not present at the *Middlesex* expert depositions. The PEC submits that granting of the motion should be conditioned on limiting use of the *Middlesex* expert deposition testimony for impeachment purposes only, providing access to such transcripts to all Defendants in the MDL under terms of the MDL's confidentiality order, and requiring that 3M produce prior and current testimony from its experts involving PFAS litigation to the extent those experts were likewise designated in the MDL.

We thank the Court for its continued time and courtesies.

Respectfully submitted,

s/ Fred Thompson
Fred Thompson
28 Bridgeside Blvd.
Mt. Pleasant, South Carolina 29464
Ph: 843-216-9000
Plaintiffs' Liaison Counsel

Encl.

cc:    All Counsel of Record (by ECF)
       Cary Kotcher, Esq. (via email) (Cary_Kotcher@scd.uscourts.gov)

---

[19] *See* Lehr Reply Brief at 3 (stating that it is "incredulous that 3M relies on a statement [by Dr. Martin] that it has first-hand knowledge is no longer accurate.")