**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | |
|---|---|
| **IN RE: AQUEOUS FILM-FORMING FOAMS PRODUCTS LIABILITY LITIGATION** | MDL No. 2:18-mn-2873-RMG<br><br>This Document relates to:<br>ALL CASES |

**PLAINTIFFS' EXECUTIVE COMMITTEE'S RESPONSE TO TELOMER MILSPEC AFFF MANUFACTURERS' SUPPLEMENTAL FILING AFTER AUGUST 19, 2022 ORAL ARGUMENT**

The Plaintiffs Executive Committee ("PEC") hereby responds to the Telomer MilSpec AFFF Manufacturers' (hereinafter "TMM") Supplemental Filing after the August 19, 2022 Oral Argument ("Supp. Filing") [ECF No. 2564] as follows:

On August 26, 2022, the TMM defendants submitted six (6) new documents, which they claim purport to show that the United States government knew, after October 30, 2003, that telomer AFFF could degrade to PFOA. These new documents only confirm the PEC's position that the TMM defendants continue to conflate two separate issues, that is, that the United States Environmental Protection Agency ("EPA") and the Department of Defense ("DoD") can on the one hand speculate as to whether it is possible that C8 precursors can degrade to PFOA, while at the same time believing that this phenomena is of no moment, because they are simultaneously being reassured that the TMM defendants' AFFFs were not made with PFOA precursors and thus would not degrade to PFOA. In short, despite potential degradation concerns, due to the Fire-Fighting Foam Coalition ("FFFC") and its members being "economical with the truth" (*see* Pl. Ex. 115) when it came to the presence of PFOA and its precursors in telomer AFFFs, DoD and its

branches bought hook, line, and sinker that PFOA was not a concern for the AFFFs being used by DoD.

In addition to the above, the TMM defendants likewise point to seven snippets from documents and testimony, including one excerpt from the deposition of Frederick Walker not previously submitted (TMM Ex. 73), regarding actions taken by DoD and its branches to mitigate the impact of training with MilSpec AFFF. As set forth below, these cherry-picked snippets are misleading.

I. **Response to the TMM Defendants' Six (6) Additional Documents Regarding PFOA Degradation:**

As set forth below, the TMM defendants' new submissions only highlight material issues of fact concerning when (if ever) the DoD had actual knowledge of the potential for PFOA degradation, and, further, when (if ever), prior to 2016, DoD had actual knowledge that telomer AFFFs contained PFOA and/or its precursors given that it was being told the opposite by the TMM defendants.

- **TMM Exhibit 67**: TMM Ex. 67 states that "PFOA *may* be formed." However, the PowerPoint goes on to state that EPA is "focus[ed] on understanding sources of PFOA in environment," thus, underscoring that EPA had no actual knowledge of PFOA degradation. (TMM Ex. 67 at 8). Further, the TMM defendants were simultaneously telling the EPA that their AFFFs did not contain PFOA and/or its precursors in any event, so, again, any such degradation was of no moment. (*See e.g.*, Pl. Ex. 229 (April 23, 2004 email from Robert Darwin, which post-dates TMM Ex. 67 by one month, and states that EPA excluded the current US AFFF manufacturers from the on-going EPA ECA process and acknowledges that the current AFFFs do not contain, nor do they degrade to, PFOAs.))

- **TMM Exhibit 68**: This May 2004 exhibit likewise suffers from the same fatal flaw. DoD can simultaneously be suspicious of PFOA degradation generally but not understand the AFFFs it employs to have such concerns due to the information it was provided by the TMM defendants. In fact, less than nine (9) months later, Doug Barylski of NAVSEA writes in an email, "PFOS and PFOA are not components/decomposition products in [non-3M] AFFF products." (*See* Pl. Ex. 261), which is precisely contrary to the language highlighted by the TMM defendants in TMM Ex. 68.

2

- **TMM Exhibit 69**: Initially, TMM 69 is a *draft* document and the cited language in the TMM defendants' Supp. Filing is contained in redline and/or comments and not part of any final document submitted by the TMM. Further, the TMM defendants omit the last sentence of Mary Dominiak's redline comment on the draft document, which states "[r]esearch is underway to determine whether the telomer polymer backbone itself may break to yield additional PFOA." Thus, even in 2006, the EPA was attempting to understand whether telomer products could break down to PFOA. This does not constitute actual knowledge, and again, is irrelevant to the extent that DoD understood it was not using PFOA-based products in any event.

- **TMM Exhibit 70**: Like TMM 67, the context of TMM Ex. 70 is EPA's 2006 patent acknowledgement that it does not know the source of PFOA in the environment. TMM Ex. 70 states that it is currently taking steps to reduce "***possible*** sources." (*See* TMM Ex. 70 at slide 8). And again, this possible concern is never truly realized. Even as late as 2008, an employee of one of the TMM defendants states that EPA's misunderstanding about PFOA and its relationship to AFFF is a "direct result of FFFC being economical with the truth, and leading EPA to believe that fire fighting foam agents were only made with C6 surfactants." (*See* Pl. Ex. 115).

- **TMM Exhibit 71**: The TMM defendants omit the portion of this exhibit that highlights the EPA's understanding in 2006 that products from the telomerization process were based on C6. (*See* Pl. Ex. 148, TMM Ex. 11). The entire sentence reads: "Ms. Dominiak recommended that the DAR identify the classes of AFFF concentrate formulations by their carbon chain lengths rather than the manufacturing process that created them (i.e., eight carbon chain vice [sic] ECF, six-carbon chain vice [sic] telomerization)." (*See* TMM Ex. 71 at PENNA-NAVY-020266).

- **TMM Exhibit 72**: The TMM defendants' latest document is another *draft* dated October 29, 2009, and thus does not represent any final EPA conclusion. Further, this draft document is dated six (6) years prior to Pl. Ex. 260, which states that, "[t]he fact that this chemist suggests that PFOA may be present in the material seems counter to ***most everyone's understanding*** of the manufacturing process, as well as the Fire Fighting Foam Coalition factsheet itself [(FFFC) www.FFFC.org], which states that PFOA/PFOS are NOT used in the manufacturing process." (Pl. Ex. 260 (emphasis added)).

In sum, the above highlights at best competing evidence raising a clear question of fact as to government knowledge of PFOA and its relationship to AFFF, but, more likely, demonstrates an evolution of knowledge on the part of the government that was consistently delayed because of the TMM defendants' failure to be forthright about their AFFF constituents. In

3

any event, it is the province of the jury to draw conclusions and/or inferences from competing evidence, and the TMM defendants' Supp. Filing only further underscores the myriad of material factual issues.

**II.     Response to the TMM Defendants' Snippets Suggesting the DoD and Its Branches Altered AFFF Training Practices:**

In their Supp. Filing, the TMM defendants conspicuously omit that efforts undertaken by the DoD in the 1980s and 90s relating to AFFF training were the result of concerns that the jet fuel used to ignite the live training fire scenarios would release benzene, toluene, ethylene, and xylene (collectively "BTEX") into the soil and groundwater. This concern thus prompted the lining of the pits where the props were ignited. These actions had nothing to do with PFOS, PFOA, and/or their precursors. (*See e.g.*, Pl. Ex. 70, Walker Dep. Tr. Vol. I. at 115:2-16; 121: 13-122:15).

Moreover, whether certain DoD branches may have modified their use of AFFF for training in certain ways over time, not even related to PFAS, is clearly an issue of fact, which culminated in the greater umbrella DoD policy in 2016 of "remove and replace." (*See* Pl. Ex. 266, Visual Aid, at Slide B9).

**III.    Response to TMM Defendants' Accusations Concerning Pl. Ex. 260 (DL1878)**

Grasping at straws, the TMM defendants accuse the PEC of taking Pl. Ex. 260 out of context by failing to include all of the language from the document. In fact, it is the TMM defendants that take the sentence out of context and extrapolate a meaning that does not exist. The sentence highlighted by TMM in no way contradicts or takes out of context the sentence quoted by the PEC because once again they conflate two separate concepts, *i.e.*, that the EPA and DoD can understand the potential that C8s can degrade to PFOA, but also believe that the specific telomer-based AFFFs they were purchasing and using, and which the author of Pl. Ex. 260 is clearly referring to, did not contain or degrade to PFOA. Again, the state of knowledge in this

4

regard on the part of DoD (and other customers) was caused by the FFFC being "economical with the truth" for the benefit of its members, and to the detriment of the DoD (and millions of citizens' drinking water in the United States) by leading them to believe the TMM defendants' AFFF did not contain and would not degrade to PFOA.

In conclusion, the TMM defendants' Supp. Filing failed to provide any insightful responsive answers to the Court's inquiries. It only raises additional material questions of fact.

Dated:  August 31, 2022

/s/ Fred Thompson, III
Motley Rice LLC
28 Bridgeside Boulevard
Mt. Pleasant, SC 29464
P: (843) 216-9000
Fax: 843-216-9440
fthompson@motleyrice.com

*Plaintiffs' Liaison Counsel*

-and-

/s/ *Michael A. London*

Michael A London
Douglas and London PC
59 Maiden Lane
6th Floor
New York, NY 10038
P: (212)-566-7500
F: (212)-566-7501
mlondon@douglasandlondon.com

Paul J. Napoli
Napoli Shkolnik PLLC
1301 Avenue of The Americas
10th Floor
New York, NY 10019
P: (212)-397-1000
F: (646)-843-7603

pnapoli@napolilaw.com

Scott Summy
Baron & Budd, P.C.

          3102 Oak Lawn Avenue
          Suite 1100
          Dallas, TX 75219
          P: (214)-521-3605
          ssummy@baronbudd.com

          *Co-lead Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was electronically filed with this Court's CM/ECF on this 31st day August 2022 and was thus served electronically upon counsel of record.

          /s/ Fred Thompson, III