# MAYER | BROWN

Mayer Brown LLP
71 South Wacker Drive
Chicago, IL 60606
United States of America

T: +1 312 782 0600
F: +1 312 701 7711
mayerbrown.com

**Michael A. Olsen**
Partner
T: +1 312 701 7120
F: +1 312 706 8742
molsen@mayerbrown.com

September 9, 2022

FILED VIA ECF

The Honorable Richard M. Gergel
U.S. District Court for the District of South Carolina
J. Waties Waring Judicial Center
83 Meeting Street
Charleston, South Carolina 29401

Re:     *In re Aqueous Film-Forming Foams Products Liability Litigation* (MDL No. 2873)

Dear Judge Gergel:

In accordance with CMO No. 19E, the PEC and Defense Co-Leads have conferred extensively regarding the potential order and ranking of the three water provider bellwether cases. Through these discussions, the PEC and Defense Co-Leads have been able to reach agreement that *Stuart* should be scheduled as the first trial, but disagree as to the order for the remaining two cases as further discussed below. The Defense Co-Leads maintain that *Ayer* should be given the second priority with *Sioux Falls* last and the PEC believes *Sioux Falls* should be given second priority.

Extensive Tier 1 and Tier 2 discovery has taken place in the three Water Provider Bellwether cases. As of today, approximately 190 water provider cases are pending in the MDL, with others in the process of being transferred, meaning that the water provider case pool has grown substantially larger and more diverse since the Court first selected the ten Tier 1 Water Provider Bellwether cases in early 2021. After careful analysis of that discovery and the overall water provider case docket, it is apparent that each of these three cases presents unique factual and legal scenarios, rendering it challenging to draw direct comparisons across the three cases or as compared to the docket as a whole.

Nevertheless, there are factual and legal aspects of each case that Defense Co-Leads believe will be helpful to the Court as it evaluates these three cases and support the rank preference proposed by the Defense Co-Leads over the proposal offered by the PEC. One factor Defense Co-Leads have attempted to capture below, for example, is the types of information that further motion practice and a jury trial might yield given not only the record in each case, but also ongoing

Mayer Brown is a global services provider comprising an association of legal practices that are separate entities including
Mayer Brown LLP (Illinois, USA), Mayer Brown International LLP (England), Mayer Brown (a Hong Kong partnership)
and Tauil & Chequer Advogados (a Brazilian partnership).

Mayer Brown LLP

Hon. Richard M. Gergel
September 9, 2022
Page 2

developments in the applicable law and regulations that might affect cases before this Court, some of which are still in flux given recent regulatory developments.[1]

As the Court considers these factors, Defense Co-Leads feel it is important to note that the various defendants occupy different positions both in the litigation generally and in particular cases, and thus do not share identical views as to each case, all cases, or the ranking of the three cases. In short, what may be relevant or informative to one defendant (or even differently situated plaintiffs) may not be as informative to another. Thus, in presenting the views below, the Defense Co-Leads have considered and balanced disparate views across the range of defendants and cases and present these views in their role as Co-Leads for the Defense.

1) *City of Stuart v. 3M Company, et al.* **(2:18-cv-3487-RMG).**

The Defense Co-Leads recommend that the *City of Stuart* (Florida) case be the first trial-set Tier 2 Water Provider Bellwether case. We understand the PEC to concur in this recommendation.

The City of Stuart brings claims for (i) Defective Product – Strict Liability Failure to Warn; (ii) Negligent Failure to Warn; (iii) Defective Product – Design Defect; (iv) Negligence; (v) Private Nuisance; and (vi) against only a subset of defendants, violation of Florida's Uniform Fraudulent Transfer Act. The City of Stuart brought suit against ten defendant groups, as contrasted to *Ayer* and *Sioux Falls*, where those plaintiffs sued 17 defendant groups in each case. Based on the facts adduced in discovery, it does not appear that the government contractor defense would be applicable to the Stuart site, which might, in combination with other factors and the smaller number of defendants, simplify the issues for the first bellwether trial.

There are currently approximately 10 water provider cases in this MDL from the state of Florida. The City of Stuart—like the majority of water providers in the country (and many in this MDL)—serves a relatively small population of fewer than 20,000 people, through approximately 4,300 metered accounts. The City alleges that 24 drinking water wells have been impacted by PFOS and/or PFOA. Although the City alleges its own use of AFFF at various locations to be the source of the PFOS and/or PFOA detected in the City's water, the locations of those uses are proximate to other, non-AFFF sources of PFAS such as landfills or industrial sites. In addition, several of the wells where PFAS have been detected are not hydro-geologically connected to the areas where the City claims to have used AFFF. Thus, this case, as with many others, will require the City to demonstrate that PFAS—which have been used in thousands of common products and industrial processes, including in Stuart itself—in its water is, in fact, related to AFFF usage by its fire department rather than some other source(s).

---

[1] With the passage of time while the parties litigate the first case the Court selects, the Defense Co-Leads' (and other defendants') views on the other two cases could change based on such things as further factual and legal developments in the other two cases and the lessons learned from that first trial.

Mayer Brown LLP

Hon. Richard M. Gergel
September 9, 2022
Page 3

Like most states, the State of Florida has not set a Maximum Contaminant Level ("MCL") for PFOS and/or PFOA and many of the City's detections of PFAS did not exceed the 2016 EPA lifetime health advisory that was in place until very recently. In addition, the City of Stuart is currently moving to an alternative source of drinking water for reasons unrelated to PFAS, such as saltwater intrusion from nearby ocean and bay water and the presence of other contaminants. That more reliable source of water is not affected by PFAS contamination. Nevertheless, the City installed an anion exchange plant to treat its drinking water in 2019 and claims the system needs to be expanded and operated for 40 years. These and other factors put at issue the reasonableness of the City's choice to treat for PFOS/PFOA and the damages theories the City is putting forth—important issues that will recur in most water provider cases.[2]

### 2) *Town of Ayer v. 3M Company, et al.* (2:19-cv-3120-RMG).

The Defense Co-Leads recommend that the *Town of Ayer* (Massachusetts) be given second priority for trial among the Tier 2 Water Provider Bellwether cases. The Town brings claims for (i) Breach of Implied Warranty of Merchantability – Defective Design; (ii) Breach of Implied Warranty of Merchantability – Failure to Warn; (iii) Negligence; (iv) Trespass; and (v) against only a subset of defendants, Fraudulent Transfer. As noted above, the Town of Ayer has sued 17 defendant groups.

There are currently approximately 41 water provider cases in this MDL from the Commonwealth of Massachusetts. Like Stuart, Ayer also serves a relatively small population: fewer than 10,000 people through approximately 3,500 metered accounts. The Ayer water supply comes from two different sources—Grove Pond (drawn from 4 wells) and Spectacle Pond (drawn from 2 wells).

PFAS were first detected in the Grove Pond water supply in 2016. Both the Grove Pond and Spectacle Pond wellfields are adjacent to numerous industrial, landfill, and other sources of PFAS. The United States Army has acknowledged its role in contributing PFAS to the Grove Pond wellfield through its use of MilSpec AFFF at Fort Devens, a former U.S. Army base closed in 1996, whereas Plaintiff contends the Spectacle Pond wellfield has been impacted by AFFF use by local fire departments in fighting actual fires over time. This case therefore involves sites with

---

[2] As stated above, the Defense Co-Leads advance the recommendations in this letter solely in their capacity as such and not on behalf of any particular defendant. Although not every individual defendant necessarily agrees with the Co-Leads' positions, National Foam, Inc. and the Kidde Defendants have specifically requested that the Co-Leads convey to the Court their disagreement with the Co-Leads' positions regarding *Stuart*, including as to the import of (i) the number and type of defendants; (ii) the lack of a government contractor defense (if not resolved by dispositive motion); and (iii) certain factual issues—including, for example, site-specific remediation costs.

Hon. Richard M. Gergel
September 9, 2022
Page 4

alleged AFFF contamination from both military and non-military sources, meaning that the case presents issues of proof involving both a site where the government contractor defense is at issue and one where it does not appear to be at issue.

The Town also has taken a series of actions in response to the detection of PFAS in both wellfields, which will permit the parties to litigate the use and cost of two different treatment technologies that have been used by other water providers to treat for PFAS. Specifically, the Town has installed (with funding from a U.S. Army grant) a temporary GAC system and later an anion exchange plant to treat PFAS in the Grove Pond wells. For Spectacle Pond, the Town has used a GAC system (funded by a zero-interest loan from the Massachusetts Department of Environmental Protection).

In addition, as with approximately one-third of water provider plaintiffs in this MDL, Massachusetts has a binding MCL. In Massachusetts, the MCL is 20 ppt for a combination of six PFAS,[3] which went into effect in October 2020.

### 3) *City of Sioux Falls v. 3M Company, et al.* (2:19-cv-1806-RMG).

The Defense Co-Leads recommend that the *City of Sioux Falls* (South Dakota) be given third priority for trial among the Tier 2 Water Provider Bellwether cases. The City brings claims for (i) Strict Liability – Design Defect and/or Defective Product; (ii) Strict Liability – Failure to Warn; (iii) Public Nuisance; (iv) Private Nuisance; (v) Trespass; (vi) Negligence; (vii) Negligence Per Se; and (viii) against only a subset of defendants, Fraudulent Transfer. As noted above, the City of Sioux Falls has sued 17 defendant groups.

Defense Co-Leads believe that there are two water provider cases involving South Dakota law. The City of Sioux Falls serves water to approximately 57,000 metered accounts, a water system that is atypically large as compared to other water provider cases and as compared to the typical size of water systems in the U.S. The City alleges that 18 drinking water wells in and around the Sioux Falls Regional Airport have been impacted by PFOS and/or PFOA. Like Florida, the State of South Dakota has not set an MCL for PFOS and/or PFOA.

Although the City first detected PFOS and PFOA in its drinking water in 2012 and shut down certain wells as a result, the City has not taken any steps to install a treatment system for PFOS and/or PFOA. Instead, the City has obtained and continues to obtain water (more than sufficient for its needs) from an alternate source not contaminated with any PFAS. Discovery also has revealed that the City of Sioux Falls has long been aware of the potential need for PFAS

---

[3] Perfluorooctane Sulfonic Acid (PFOS), Perfluorooctanoic Acid (PFOA), Perfluorohexane Sulfonic Acid (PFHxS), Perfluorononanoic Acid (PFNA), Perfluoroheptanoic Acid (PFHpA), and Perfluorodecanoic Acid (PFDA).

Mayer Brown LLP

Hon. Richard M. Gergel
September 9, 2022
Page 5

treatment but did not file suit until June 2019; defendants therefore anticipate moving on statute of limitations grounds to bar all causes of action in this case.

Based on the facts adduced in discovery, the PFOS and/or PFOA detections at issue are related to the South Dakota Air National Guard ("SDANG") Base, which is co-located with the Sioux Falls Regional Airport, a Part 139 Airport where the FAA still requires the use of MilSpec AFFF. The government contractor defense therefore applies to this case.

The SDANG initiated an investigation in 2016 that is currently at the Remedial Investigation stage. The United States government is actively considering its options for remediation, and its decision in this regard is likely to materially impact the nature and scope of damages in this case, including with respect to whether a treatment system will even be required. Moreover, should the EPA designate PFOA/PFOS as CERCLA hazardous substances, that will create numerous potentially responsible parties that may be liable for PFAS contamination at the airport. This includes the City of Sioux Falls itself, as well as the Sioux Falls Regional Airport Authority, which is a plaintiff in a property damage case in this MDL, *Sioux Falls Regional Airport Authority v. 3M et al.*, No. 19-1850.

***

The Defense Co-Leads appreciate the Court's consideration of their views on these three cases and welcome the opportunity to discuss these issues further should the Court find that helpful.

Mayer Brown LLP

Hon. Richard M. Gergel
September 9, 2022
Page 6

        Respectfully submitted,

        /s/ Michael A. Olsen

        Michael A. Olsen
        Mayer Brown LLP
        71 South Wacker Drive
        Chicago, IL 60606
        P: (312) 701-7120
        F: (312) 706-8742
        molsen@mayerbrown.com

        Co-lead Counsel for Defendants


        /s/ Joseph G. Petrosinelli

        Joseph G. Petrosinelli
        Williams & Connolly LLP
        725 Twelfth Street, N.W.
        Washington, DC 20005
        P: (202) 434-5547
        F: (202) 434-5029
        jpetrosinelli@wc.com

        Co-lead Counsel for Defendants