

28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
**o.** 843.216.9000  **f.** 843.216.9450

**Fred Thompson III**
*Licensed in South Carolina*
direct: 843.216.9118
fthompson@motleyrice.com

September 9, 2022

<u>VIA ECF</u>
Hon. Richard Mark Gergel
U.S. District Court for the District of South Carolina
J. Waites Waring Judicial Center
83 Meeting Street
Charleston, South Carolina 29401

            Re: *In re AFFF Products Liability Litigation*, MDL No. 2:18-mn-2873-RMG

Dear Judge Gergel:

The Plaintiffs Executive Committee ("PEC") writes in accordance with the Court's Order dated August 19, 2022 [Dtk. No. 2548] directing the parties to submit the sequence and ranking of the three water provider bellwether cases for trial.

The PEC understands that the Defense Coordinating Committee ("DCC") proposes that *the City of Stuart* ("*Stuart*") be the first bellwether case tried, *the Town of Ayer* ("*Ayer*") be the second case tried, and *the City of Sioux Falls* ("*Sioux Falls*") case be third case tried. The PEC submits that either *Stuart* or *Sioux Falls* is suitable for the first bellwether trial. However, in the spirit of agreement and compromise, the PEC has no objection to *Stuart* being the first bellwether trial case. As such, the PEC understands there to be agreement that *Stuart* be the first water provider bellwether trial.

The dispute lies with which case should be the second trial and which should be the third. As discussed below, unlike *Stuart* and *Sioux Falls*, *Ayer* will be less instructive of the remaining cases pending in the MDL. Accordingly, the PEC disagrees with the DCC that *Ayer* should be tried before *Sioux Falls* and proposes that it be scheduled as the third bellwether.

*<u>City of Stuart:</u>*

Before addressing our differences, the PEC wishes to explicate certain reasons and facts of why *Stuart* is representative. In particular, *Stuart* is highly representative of other water providers in the MDL, for at least the following reasons:

- The City of Stuart is a modest-sized municipality with a population of approximately 20,000;

- Like so many other locales, the contamination alleged at the City of Stuart is largely attributable to training with both 3M and telomer-based AFFFs, which includes both MIL-Spec and non-MIL-Spec AFFF;

September 9, 2022
Page 2

- Like most states nationwide, Florida follows the Environmental Protection Agency's ("EPA") Health Advisory Level ("HAL"). This federal regulatory standard is the most commonly applicable to the greatest number of water provider cases since most states have not yet implemented state-specific regulatory levels.[1] Further, the level of PFAS contamination above the HAL in the City of Stuart is also typical of other water providers that are over the EPA's HAL;

- Additionally, the City of Stuart, like many other municipalities with filed cases, owns the property where the AFFF releases occurred, and thus in addition to damages from the cost of water filtration and treatment, the City of Stuart also has a claim for the cost of soil and source remediation. Accordingly, adjudication of the *Stuart* case has the added benefit of helping to inform the Court and parties regarding claims for soil and source remediation; and

- The PEC is unaware of any novel issues of law or fact unique to the City of Stuart and/or the State of Florida that would render the case atypical.

These insights influence the PEC's approach to which case should be tried second and which should be tried third. The PEC submits the second case should be *Sioux Falls* followed by *Ayer;* this is because, as set forth below, the PEC submits that *Sioux Falls* is far more representative than *Ayer* and will, therefore, provide more information to the parties that likely will have greater global application.

To this end, certain general considerations militate towards *Sioux Falls* being a more appropriate second trial candidate. These considerations include, *inter alia*, the following:

- *Sioux Falls* involves use of MilSpec and non-MilSpec AFFF primarily through *training*, the most prominent historical method of AFFF use.[2]

- Unlike *Ayer*, *Sioux Falls* has not received any payments from the military (or any other sources) for treatment and collateral source evidence will not distract the jury from the crux of the case;

- Punitive damages are not available under Massachusetts law. Conversely, the State of South Dakota, allows for punitive damages as do forty-three other states and will, therefore, be more helpful in informing the Court and the parties as to this element of damages;

---

[1] At present, only ten states have adopted state-specific enforceable Maximum Contaminant Levels ("MCLs").

[2] AFFF was used on site in a small number of live fires and emergencies over the years as reflected by the testimony of city and military personnel.

September 9, 2022
Page 3

- Both *Ayer* and *Sioux Falls* are represented by PEC law firms Baron & Budd, P.C, and Cossich, Sumich, Parsiola and Taylor, LLC. To this end, because it is the same plaintiff's counsel, and presumably both cases will need to be tried, deference should be afforded to plaintiff's counsel to pick its poison. Likewise, plaintiff should also be afforded the selection under these circumstances (since both cases will likely be tried) because plaintiffs bear the burden of proof, and thus their bellwether selections should be given more weight;[3] and

- Like the majority of States nationwide, *Sioux Falls* involves the EPA's federal regulatory standards for PFOA and PFOS, and no state-specific standard for either compound. At the time of trial, the PEC anticipates that federal MCLs will be in place that will supersede any current state regulations.

In addition to these general considerations, the PEC likewise submits that the *Sioux Falls* case is also more representative for the reasons set forth below and thus should be tried second.[4]

**The *Sioux Falls* case:**

*Sioux Falls*, which the PEC understands to be the DCC's third choice, is a far more appropriate case to proceed to trial following the *Stuart* case. Some of the reasons supporting *Sioux Falls* being tried second and which make it far more representative than *Ayer* include the following:

First, there are twenty-one wells in the impacted field, all of which are located on the airport property where AFFF training and use took place. These wells were all eventually closed due to PFAS contamination and seventeen of the wells will require treatment to remove PFOS and PFOA. The fact that *Sioux Falls*, like *Stuart,* which the DCC has already agreed is representative (over 20 contaminated wells) also has a substantial number of wells at issue will provide instruction to future fact finders (and potentially settlement negotiators) as to how to value a larger variety of contaminated wells at differing sizes and contamination levels.

Second, contrary to *Ayer*, the use of AFFF at the City of Sioux Falls was almost exclusively for military and civilian training while AFFF was used in a small number of live fires or emergencies on site. There is evidence of AFFF use for training dating back to the 1970s from both the Sioux Falls Fire Department and the Air National Guard. All of the training took place on the site at issue. Given that

---

[3] Notably, there are no settlement discussions or offers on these cases, and thus the presumable course is trial of these cases. As such, there is no reason that the plaintiffs' designated sequence between *Sioux Falls* and *Ayer* should not be followed by the Court since both are seemingly headed to trial at some point.

[4] Of course, the massive discovery efforts in undertaken in *Ayer* were not for naught, but instead advised the bellwether/representativeness value of this case; for which trying this case will have far less relevance and applicability to other cases.



September 9, 2022
Page 4

the overwhelming majority of AFFF use is training related and not live fires, this fact pattern is more typical of most cases of AFFF contamination.

Third, due to the variety of foams used over the decades, the jury will hear evidence related to the roles and responsibilities of defendants at all levels of the litigation. This includes 3M, the telomer defendants, and those providing PFAS chemicals that were incorporated into AFFF. Again, this is the case with respect to *Stuart* as well, which as previously noted, the DCC has already agreed is representative.

Fourth, the damages presented by the *Sioux Falls* (and, again, as in *Stuart*) will encompass the primary clean-up options available to water provider claimants. Water providers typically consider clean-up of PFOS and PFOA contamination by one or more following methods: (a) treatment by GAC, RO or IO; (b) replacement of the contaminated water source/wells; and/or (c) remediation of soil or groundwater at the source of the contamination. *Sioux Falls* and its experts have considered and/or acted on each of these options, which will certainly be instructive in almost any water provider case before this or any other Honorable Court.

Finally, as noted unlike *Ayer*, South Dakota law (and the majority of other states) provides for punitive damages.

For these reasons, the PEC submits that *Sioux Falls* should be set for trial after *Stuart* and *Ayer* sequenced as the third trial case.

**The *Ayer* case:**

While the parties have obtained helpful information through the discovery of the *Ayer* case, the parties have learned that this case is less representative for a variety of reasons, and thus would not serve as an appropriate second bellwether trial.

First, Massachusetts has a MCL of 20ppt for a combination of six (6) different PFAS. Because this MDL centers around PFOA and PFOS specifically, a MCL that implicates four other PFAS needlessly over complicates a trial and is largely irrelevant evidence to any non-Massachusetts water provider case. To the extent that the state MCL is argued as an attribute of *Ayer* as the second trial case, the PEC anticipates the implementation of a federal MCL prior to trial which will apply to the case, making such an argument moot. Second, *Ayer* is complicated because it is essentially two cases in one. *Ayer* involves two separate wellfields that were contaminated by different contamination sources. This will involve different expert considerations, including but not limited to entirely different fate and transport analyses for each of the two wellfields. Third, one of the wellfields in *Ayer* involves wellfield contamination from the extinguishment of actual fires that took place at a tire recycling center, which implicates an atypical risk/benefit analysis as compared to most cases that involve contamination from AFFF resulting from fire-training exercises. Finally, *Ayer* also involves a collateral payment from the Army for the installation of an anion exchange system to treat *Ayer*'s PFOA and PFOS contamination. While the PEC submits that under Massachusetts law this collateral payment is not admissible, to the



September 9, 2022
Page 5

extent that such evidence is permitted at trial, this payment by the Army could become a distraction and devolve into a trial within a trial. In short, the unique circumstances involved in *Ayer* make it both atypical and complex to try and thus would likely require significantly more trial time.

The PEC maintains that the *Ayer* case was representative for bellwether discovery. *Ayer* involves AFFF contamination with military involvement in a state that takes an active role in PFAS regulation. The case provides a good illustration for a variety of fate and transport scenarios that could educate the parties on the nuances of this critical element of the case. That said, discovery has revealed that the fate and transport evidence will also add to the complexity of the case when considering the involvement of two separate fields and multiple pathways to contamination. As such, its representativeness for a time-consuming expensive jury trial is far less than *Sioux Falls*. Further, the unique case facts will have limited impact and advancement of global issues for other water provider plaintiffs, all of which was revealed following extensive discovery.

**Trial Dates:**

The PEC respectfully submits that a firm trial date for April 2023 should be set now for *Stuart* and trial date of June 2023 should be set for *Sioux Falls*. Given the complexity of issues in these cases, the number of witnesses that will likely be called, and the logistics involved in preparing for trial, blocking significant time with as much advance notice as possible will benefit all parties. In addition, this will allow the first two bellwether trials to be set (and ideally completed) within 4.5 years of this MDL's creation, rather than slipping to the Fall of 2023.

The PEC thanks the Court for its time and continued courtesies.

Respectfully submitted,

s/ Fred Thompson
Fred Thompson
28 Bridgeside Blvd.
Mt. Pleasant, South Carolina 29464
Ph: 843-216-9000
Plaintiffs' Liaison Counsel

cc:     All Counsel of Record (by ECF)
        Cary Kotcher, Esq. (via email) (Cary_Kotcher@scd.uscourts.gov)