UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| IN RE: AQUEOUS FILM-FORMING FOAMS PRODUCTS LIABILITY LITIGATION | MDL No. 2:18-mn-2873-RMG<br><br>This Document relates to:<br>ALL CASES |

**PLAINTIFFS' MOTION TO COMPEL DISCOVERY
FROM THE TOG DEFENDANTS**

Pursuant to Rules 26, 30 and 37 of the Federal Rules of Civil Procedure and Local Civil Rules 7.04 and 37.01, the Plaintiffs' Executive Committee ("PEC"), on behalf of various Plaintiffs, respectfully moves this Court for an Order compelling Defendants Allstar Fire Equipment, Fire-Dex, LLC, Globe Manufacturing Company LLC, Honeywell Safety Products USA, Inc., Lion Group, Inc., Mallory Safety and Supply LLC, Mine Safety Appliances Company, LLC, Municipal Emergency Services, Inc., PBI Performance Products, Inc., Southern Mills Inc. d/b/a TenCate Protective Fabrics, Stedfast USA Inc., and W. L. Gore & Associates Inc. (collectively, the "TOG Defendants") to promptly provide information and documents responsive to Plaintiffs' First of Set of Interrogatories and Requests for Production (the " Discovery Requests"), and ruling that the TOG Defendants have waived any objections they failed to include in their written responses to those requests to date.

**I.     INTRODUCTION**

More than four months ago, Plaintiffs, by and through the PEC, served an initial set of discovery requests on the TOG Defendants that were similar in scope and substance to those they have served on numerous other defendants in this MDL. In the time since, Plaintiffs have yet to receive a single document or piece of information responsive to those requests, as the TOG Defendants have taken a kitchen-sink approach to avoiding their discovery obligations in this MDL. Most egregiously, after receiving an extension of their deadline to provide written responses to the pending requests, the TOG Defendants informed Plaintiffs—on the day those responses were due, no less— that there were threshold "barriers" that needed to be resolved before they would be willing to provide discovery in this case. This type of blanket refusal to participate in discovery has no precedent in this MDL, nor is it consistent with the Court's guidance to the parties that MDLs require robust discovery. In addition, none of the barriers the TOG Defendants identify—which include being part of an active bellwether process and the absence of a turnout gear-specific Science Day and a turnout gear-specific Plaintiff Fact Sheet—have any bearing on their obligation or ability to provide responsive discovery in this case.

And while the TOG Defendants may claim they are not demanding prerequisites to discovery, that claim rings hollow when they have declined multiple requests from Plaintiffs to confirm their willingness to provide responsive discovery once all disputes over the scope of the requested discovery are resolved. The simple truth is the TOG Defendants are unwilling to commit to providing discovery absent the opportunity to participate in a turnout gear-specific Science Day and the adoption of a turnout gear-specific Plaintiff Fact Sheet. That the TOG Defendants have portrayed this position as an attempt to ensure a discovery process that "resembles what was done for every other case pending in this MDL" is completely disingenuous, as none of the other

defendants in this MDL have conditioned their willingness to provide discovery on these types of demands.

Despite the extreme and unprecedented nature of the positions they have taken, the TOG Defendants are right about one thing: they are no different than any other sub-group of defendants that Plaintiffs are entitled and obligated to conduct general discovery on. It is for this reason that Plaintiffs, by and through the PEC, have filed this motion seeking an order compelling the TOG Defendants to meet their discovery obligations in this MDL by providing information and documents responsive to Plaintiffs' Discovery Requests.

## II.    FACTUAL BACKGROUND

### A.    The TOG Defendants' Role in This MDL

The TOG Defendants are a group of companies alleged to have been involved in the manufacture, sale, and/or distribution of a type of protective clothing specifically designed for firefighters that is commonly referred to as "turnout gear" or "turnouts." Defendants Fire-Dex, LLC, Globe Manufacturing Company LLC, Mine Safety Appliances Company, LLC, Honeywell Safety Products USA, Inc., and Lion Group, Inc. are alleged to have manufactured turnout gear containing PFAS components. Defendants PBI Performance Products, Inc., Stedfast USA, Inc., Southern Mills Inc. d/b/a/ Ten Cate Protective Fabrics USA, W.L. Gore & Associates, Inc. are alleged to have supplied the PFAS components used by those manufacturers, and Defendants AllStar Fire Equipment, L.N. Curtis & Sons, Mallory Safety and Supply LLC, and Municipal Emergency Services Inc. are alleged to have acted as the distributors from whom firefighters purchased the PFAS-containing turnout gear.

The first case asserting claims against the TOG Defendants was transferred into this MDL on February 4, 2021. *See* Transfer Order, *In re Aqueous Film Forming Foams Prods. Liab. Litig.*, MDL No. 2873, ECF No. 54 (J.P.M.L. Feb. 4, 2021). Notably, the plaintiffs challenged the

transfer order in that case on the grounds that because it did not "involve allegations of groundwater contamination," the case did not "involve the same factual core as the actions pending in MDL No. 2873." *Id.* at 2. In denying that challenge, the JPML determined that the plaintiffs' "direct exposure" claims shared "several important factual questions with the groundwater contamination cases in MDL No. 2873," including "factual questions concerning the toxicity of PFOA and PFOS and their effects on human health; the chemical properties of these substances; . . . and to what extent, if any, defendants conspired or cooperated to conceal the dangers of PFOA and PFOS in their products." *Id.* The TOG Defendants did not join the plaintiffs in challenging the transfer order in that case and since then have declined to challenge the transfer of additional cases into this MDL that name them as defendants.

### B.     The TOG Defendants' Refusal to Provide Responsive Discovery

On May 13, 2022, the Plaintiffs served their First of Set of Interrogatories and Requests for Production (the "Discovery Requests") on each of the TOG Defendants except for Fire-Dex, LLC, who was served four days later.[1] Although focusing on a different type of product, the substance of the Discovery Requests are largely similar to the Master Set of Discovery Requests that the PEC previously propounded on other manufacturer defendants in this MDL. Shortly after service of the Discovery Request, each of the TOG Defendants requested an extension of their deadline to serve written responses to the Discovery Requests.[2] Plaintiffs agreed to each of those extension requests and the deadline for the TOG Defendants to serve their written responses was extended until July 8, 2022.[3] In granting the extension requests, Plaintiffs presumed that the

---

[1] Plaintiffs' Discovery Requests are attached to the Declaration of Andrew W. Croner ("Croner Decl.") as Exhibits A and B.

[2] Croner Decl., Exs. E–H.

[3] *Id.*

3

additional time was needed to prepare substantive responses to the Discovery Requests that complied with Federal Rules of Civil Procedure 33 and 34. The TOG Defendants did not suggest otherwise and, in one instance, represented that the additional time was necessary to collect responsive documents for production.[4]

On July 8, 2022—the very day their written responses were due to be served—Plaintiffs received a letter sent on behalf of all of the TOG Defendants raising for the first-time certain threshold "barriers" they claimed needed to be resolved before providing information and documents responsive to the Discovery Requests.[5] Specifically, the TOG Defendants claimed that the requested discovery was premature and unwarranted because: (1) it would not "materially advance" the MDL; (2) the TOG Defendants had not had the opportunity to participate in a Science Day before the Court; and (3) none of the existing Plaintiff Fact Sheets in the MDL included questions specific to the claims asserted against the TOG Defendants.[6] Although the TOG Defendants requested a meet and confer to discuss the issues they had outlined, they concluded their letter by stating: "Until such time as the barriers described above are addressed and removed, engaging in written discovery of the type served by Plaintiffs is overbroad, burdensome, premature, and unwarranted."[7]

That same day, eight of the TOG Defendants served written responses to the Discovery Requests, with another of the TOG Defendants serving a similar set of responses roughly a week

---

[4] *See* Croner Decl., Ex. E at 2 (5/17/2022 email from counsel for Defendant Mallory Safety Supply, LLC explaining that his client's rationale for requesting an extension of its deadline to respond to Plaintiffs' Discovery Requests was to "make sure we have sufficient time to get responsive documents together and produced").

[5] Croner Decl., Ex. I.

[6] *Id*. at pp. 1-3.

[7] *Id.* at p. 3.

4

later.[8] In each instance, the relevant TOG Defendant objected to the Discovery Requests in their entirety on largely the same grounds described in their July 8 letter. Although the responses included specific objections for some requests, each of the nine TOG Defendants reserved the right to assert additional objections to the requests "at the appropriate time."[9] In addition, none of the responses indicated whether responsive information and documents were being withheld on the basis of the objections asserted for each request.

### C. The Parties' Efforts to Resolve the Present Discovery Dispute

On July 22, 2022, Plaintiffs sent a letter responding to the TOG Defendants and explaining why none of the purported barriers they identified provided any justification for their refusal to provide information and documents responsive to the Discovery Requests.[10] Despite their strong disagreement with the TOG Defendants' position, Plaintiffs also confirmed that they were willing to meet and confer on the issues identified in the TOG Defendants' prior letter. That meet and confer eventually took place on August 10, 2022, where the parties addressed the issues raised in the TOG Defendants' July 8 letter along with certain objections the TOG Defendants had to the scope of the Discovery Requests. At the conclusion of the meet and confer, Plaintiffs asked the TOG Defendants to confirm that once their scope objections were resolved, they would willingly provide information and documents responsive to the Discovery Requests. The TOG Defendants declined to provide the requested confirmation and said they would respond to Plaintiffs' request at a later date.

---

[8] Croner Decl., Exs. C–D.

[9] Croner Decl., Ex. C at 2, 22, 39-40, 59-60, 77, 98, 114, 135, 152, 172, 189, 211, 227, 250, 268, 288, (stating that each of the respective TOG Defendants "expressly reserves its right to assert additional and/or more specific objections to these and any additional or related discovery at the appropriate time"); *id.*, Ex. D at 2, 21 (same for Defendant Fire-Dex, LLC).

[10] Croner Decl., Ex. J.

On August 12, 2022, Plaintiffs and the TOG Defendants outlined their respective positions on the present discovery dispute in competing inserts included in a Joint Status Report.[11] Although Plaintiffs largely kept to the positions outlined in their July 22 letter, the TOG Defendants' insert suggested that their position on the discovery barriers they identified earlier had changed. Specifically, the TOG Defendants criticized Plaintiffs for "recit[ing] a sentence from a now five-week old July 8 letter, but curiously ignores the subsequent series of letters, phone conversations, emails, and the meaningful meet and confer between representatives that resulted in significant progress toward a possible resolution of many issues."[12]

On August 16, 2022, the TOG Defendants sent another letter to Plaintiffs that focused primarily on advancing negotiations over the scope objections discussed during the August 10 meet and confer.[13] Nowhere in the letter did the TOG Defendants mention the discovery barriers they had earlier identified, nor did they address Plaintiffs' prior request to confirm their willingness to provide responsive discovery. On August 31, 2022, Plaintiffs responded by reiterating their request for confirmation of the TOG Defendants' willingness to provide responsive discovery once the scope issues were resolved, which they asked the TOG Defendants to provide within five days.[14] Plaintiffs also explained that absent the requested confirmation, they would need to file a motion to compel on the threshold issue of TOG Defendants' refusal to provide responsive discovery before continuing any negotiations over the scope of the pending requests.[15]

---

[11] Croner Decl., Ex. K.

[12] Id. at p. 32. The sentence Plaintiffs recited in their insert was the one stating: "Until such time as the barriers described above are addressed and removed, engaging in written discovery of the type served by Plaintiffs is overbroad, burdensome, premature, and unwarranted." Croner Decl., Ex. I at p. 3.

[13] Croner Decl., Ex. L.

[14] Croner Decl., Ex. M.

[15] Id. at p. 1.

6

On September 6, 2022, the TOG Defendants informed Plaintiffs that they were unable to meet the five-day deadline and would respond "as soon as circumstances permit."[16] The next day, Plaintiffs informed the TOG Defendants of their plans to file the present motion.[17] On September 13, 2022, the TOG Defendants sent a letter chastising Plaintiffs for the break down of negotiations over the scope of the Discovery Requests, and failing to provide input on the TOG Defendants' proposals for a TOG-specific Plaintiff Fact Sheet and Science Day.[18] In this most recent letter, TOG Defendants also expressly adopted the position that because "the PEC discovery, TOG-specific plaintiff fact sheet, and TOG-specific science day all relate to the proper timing and scope of discovery and the established process for other Defendants and products in the MDL, the parties should confer simultaneously on these issues to develop a cohesive plan, as was done for all other cases pending in the MDL."[19] Despite all of this time and ability to provide discovery responses, the TOG Defendants – unlike any Defendant in this MDL to date - are still refusing to respond to discovery. As such an order compelling the discovery responses should issues by this Court as well as a finding that any objections have been waived.

### III.     ARGUMENT

#### A.     Legal Standard

Rule 26 of the Federal Rules of Civil Procedure provides that a party may "obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case…." Fed. R. Civ. P. 26(b)(1). "[T]he discovery rules are given 'a broad and liberal treatment.'" *Harry v. Pilgrim's Pride Corp.*, No. 3:12-cv-2268-CMC-

---

[16] Croner Decl., Ex. N at 1.

[17] *Id.*

[18] *See* Croner Decl., Ex. O.

[19] *Id.* at p. 3.

7

SVH, 2013 U.S. Dist. LEXIS 22700, at *2 (D.S.C. Feb. 20, 2013) (quoting *Nat'l Union Fire Ins. Co. of Pittsburgh, P.A. v. Murray Sheet Metal Co. Inc*., 967 F.2d 980, 983 (4th Cir. 1992)). The scope of discovery permitted by Rule 26 is designed to provide a party with information reasonably necessary to afford a fair opportunity to develop its case. *Nat'l Union*, 967 F.2d at 983; *Ashmore v. Owens*, 2017 U.S. Dist. LEXIS 105543, at *2-3 (D.S.C. June 2, 2017). The TOG Defendants, as the parties resisting discovery, "ha[ve] the burden of showing the discovery should not be allowed and doing so through clarifying, explaining and supporting its objections with competent evidence. *Mach. Sols., Inc. v. Doosan Infracore Am. Corp.*, 323 F.R.D. 522, 526 (D.S.C. 2018). The TOG Defendants cannot meet this burden.

As this Court has previously recognized, the Rule 26 standard "shifts heavily toward production" in this MDL,[20] where there are more than 100 consolidated cases, important claims, and significant amounts in controversy. As the Court noted on April 3, 2020, "discovery in an MDL is robust."[21]

> **B.    The TOG Defendants Have Failed to Identify a Legitimate Justification for Their Refusal to Provide Discovery in Response to Plaintiffs' Requests**

As mentioned, the TOG Defendants have refused to provide discovery on the grounds that Plaintiffs' Discovery Requests are premature and unwarranted.[22] In support of that position, the TOG Defendants have offered three justifications, none of which has any basis in the Federal Rules of Civil Procedure or the discovery practices in this MDL. For the reasons discussed below, the Court should reject each of these justifications and compel the TOG Defendants to promptly provide information and documents responsive to Plaintiffs' Discovery Requests.

---

[20] Croner Decl., Ex. P at 6:13-15.

[21] Croner Decl., Ex. Q at 32:19-20.

[22] Croner Decl., Ex. I at p. 3.

8

The TOG Defendants' first justification is that the requested discovery will not advance this MDL because the cases where they are named as defendants are "distinctly different from and unrelated to" the "environmental" cases pending in the MDL.[23] As an initial matter, the TOG Defendants' assertion that the requested discovery must "materially advance the *entire* MDL" before they have an obligation to respond is patently false.[24] No such requirement exists in this MDL. In fact, when a group of non-manufacturing defendants tried to advance a similar theory in July 2019—arguing they should not be obligated to "engage in a large-scale document collection" where the requested discovery was not relevant to the government contractor defense—the Court was quick to reject it.[25]

In addition, the JPML has already determined that the cases involving the TOG Defendants "share several important factual questions with the groundwater contamination cases in MDL No. 2873." Transfer Order at 2, *In re Aqueous Film Forming Foams Prods. Liab. Litig.*, MDL No. 2873, ECF No. 54 (J.P.M.L. Feb. 4, 2021). If the TOG Defendants felt otherwise, they needed to make those arguments to the JPML during the transfer proceedings, not in response to discovery requests once the cases have already been pending in the MDL for over a year. Having supported the JPML's transfer of the TOG cases to this proceeding—either actively or by remaining silent during the transfer proceedings—the TOG Defendants cannot now refuse to participate in this MDL's discovery proceedings.

The TOG Defendants also claim that the requested discovery will not advance the MDL because they are not named in any of the pending bellwether water supplier cases.[26] In fact, the

---

[23] *Id.* at p. 1.

[24] Croner Decl., Ex. O at p. 2.

[25] Croner Decl. Ex. R at 33:19-39:6.

[26] Croner Decl., Ex. I at p. 2.

9

TOG Defendants argue that until cases they are involved in are "identified for bellwether activation," the requested discovery is not "warranted, appropriate, or consistent with the Court's desire to move the cases forward in an intentional streamlined fashion."[27] As support, the TOG Defendants have made the bald assertion that ever since the Court established the bellwether process, "additional discovery has proceeded only in those cases selected for the water provider Bellwether trial," and claimed to be unaware of "a single defendant being served with 'Master Discovery' or any other type of fact discovery who is not also a bellwether defendant."[28] These arguments are baseless, contrary to the well-developed record, including the years of Joint Status Reports that document much of this history, and fails to justify the TOG Defendants' continued failure to respond to Plaintiffs' Discovery Requests.

For one thing, it is simply not true that since the bellwether process was established fact discovery in the MDL has been limited only to the bellwether cases and the defendants named in those cases. As one example, on May 20, 2021, Plaintiffs served Master Discovery on Daikin America, Inc.—a MDL defendant not named in any of the bellwether cases—who has since provided written responses to that discovery and produced over 60,000 documents totaling more than 530,000 pages. Likewise, in the time since the bellwether process was established, Fire Service Plus, Inc., another MDL Defendant not named in any of the bellwether cases, has provided written responses to Master Discovery served by PEC and has produced close to 1,500 documents totaling more than 75,000 pages. There are more examples of fact discovery against Defendants outside of bellwether case discovery that has been undertaken  Thus, the TOG Defendants' lack of

---

[27] Croner Decl., Ex. I at p. 2.

[28] *Id.* at p. 2.

involvement in the bellwether cases has no bearing on their obligation to respond to discovery in this MDL.    This argument is lacking merit.

The TOG Defendants are also mistaken in suggesting that a defendants' discovery obligations in this MDL only commence once their respective cases are "identified for bellwether activation."  In fact, the discovery record in this case indicates that nothing could be further from the truth.  By the time the Court entered CMO 13 establishing a bellwether process for water provider r cases, the manufacturer defendants had already produced close to 2.5 million documents and Plaintiffs had already taken 28 depositions of defense witnesses.[29]  This is consistent with the practice in most MDLs, where a bellwether process providing for case-specific work ups are routinely established after significant progress has been made on general liability discovery.  In other words, the TOG Defendants put the cart before the horse in taking the position that general liability discovery should begin only after a bellwether process has been negotiated and started.  For this reason, the fact that the TOG Defendants are not presently implicated in any bellwether process or case in this MDL cannot be used to justify their refusal to provide discovery in response to Plaintiffs' Discovery Requests.

The second justification the TOG Defendants offer is that they should not be required to respond to Plaintiffs' Discovery Requests until they are given the opportunity to participate in a Science Day focusing specifically on the medical and scientific issues related to turnout gear exposure.  But there is no requirement that the Court even hold a Science Day, much less provide an opportunity for all  parties in the MDL to participate.  Further, the Science Day held in September 2019 was not an opportunity for the participating parties to litigate the scientific issues

---

[29] *See* Croner Decl., Ex. S (excerpts from Joint Status Report submitted on 12/4/2020 reporting that up to that point defendants and third parties had produced 2,472,973 documents, and Plaintiffs had taken 28 defense witness depositions).

in these cases;, it was to educate the Court on general cross-cutting matters;[30] nor was it a condition precedent to any defendants then or later added to providing discovery in this MDL, as some had already made document productions several months earlier.[31]  Indeed, a primary purpose of the Science Day held in September 2019 was to answer threshold questions the Court had on certain general scientific issues relevant to the case.[32]

Considering this, Plaintiffs fail to see how a Science Day focusing specifically on turnout gear exposure has any connection to the TOG Defendants' obligation to provide information and documents responsive to Plaintiffs' Discovery Requests.  Moreover, the fact that the TOG Defendants' urgent need to participate in a turnout gear-specific Science Day only surfaced after being served with the Discovery Requests—despite having joined the MDL more than 17 months before those requests were served is certainly curious —.  The Court should have little tolerance for delay tactics like this  Thus, the Court should reject the TOG Defendants' attempt to shirk their discovery obligations by making them contingent on the wholly unnecessary and unrelated scheduling of a turnout gear-specific Science Day.

Finally, the TOG Defendants argue that they should not be required to respond to Plaintiffs' Discovery Requests until a turnout gear-specific Plaintiff Fact Sheet ("PFS") is put in place.  As an initial matter, any suggestion that the current Personal Injury PFS fails to provide the TOG Defendants with any information that can be used to evaluate whether the plaintiffs in their cases have colorable claims is simply untrue.  The current Personal Injury PFS requires that plaintiffs provide information and documents that address, among other things, any past employment or

---

[30] Croner Decl., Ex. T at 5:8-15.

[31] *See, e.g.*, Croner Decl., Ex. U (6/28/2019 letter from counsel for Defendant 3M Company notifying the PEC that "3M today is making a document production in the [AFFF MDL] via FTP transmission").

[32] Croner Decl., Ex. V at 21:9-20.

training as a firefighter; the locations, sources, and approximate dates of any exposure to PFAS; the injuries they are claiming resulted from their exposure to PFAS; and the healthcare professionals that have treated them for those injuries. *See* CMO 5 at 19-21, 23-24, *In re Aqueous Film Forming Foams Prods. Liab. Litig.*, No. 18-mn-02873-RMG, ECF No. 205 (D.S.C. Aug. 7, 2019).

Plaintiffs also fail to understand why the absence of a turnout gear-specific PFS should have any impact on the TOG Defendants' obligation to providing information and documents responsive to Plaintiffs' Discovery Requests. In fact, courts have routinely rejected this sort of "tit for tat" approach to discovery. *See, e.g.*, *Wei-Ping Zeng v. Marshall Univ.*, 2019 U.S. Dist. LEXIS 4586, at *10 (S.D. W. Va. Jan. 10, 2019) (holding that parties were "not entitled to receive discovery on a tit-for-tat basis"); *Babcock Power, Inc. v. Kapsalis*, 2016 U.S. Dist. LEXIS 96378, at *8 (W.D. Ky. July 25, 2016) ("[C]onditioning responses to discovery requests on another party's agreement to do the same, in a tit-for-tat manner, will not be countenanced; each party has an independent duty to timely and in good-faith respond to discovery requests.").[33] Moreover, like their recent demand for a turnout gear-specific Science Day, the TOG Defendants' motivations are called into question where they only demanded a turnout gear-specific PFS once confronted with their own discovery obligations, even though they had already received several of the existing Personal Injury PFSs in the more than 17 months that had passed since they joined the MDL. As

---

[33] *Accord Gropper v. David Ellis Real Estate, L.P.*, 2014 U.S. Dist. LEXIS 16849, at *8 (S.D.N.Y. Feb. 10, 2014) ("Discovery is not equity: one party's noncompliance with discovery requirements does not excuse the other's failure to comply. Each party's obligation is independent, and any motion to compel will be determined on its own merits."); *Jayne H. Lee, Inc. v. Flagstaff Indus. Corp.*, 173 F.R.D. 651, 657 (D. Md. 1997) (condemning counsel's attempt to "convert pretrial discovery into a game of brinkmanship" by "hold[ing] his client's interrogatory answers and responsive documents hostage").

13

such, the Court should reject the TOG Defendants' attempt to justify their refusal to provide responsive discovery on the absence of a TOG-specific PFS.[34]

        **C.    The TOG Defendants Have Waived Any Objections Not Included in Their Written Discovery Responses**

In addition to compelling them to provide responsive discovery, the Court should find that the TOG Defendants have waived any objections that they have failed to include in written responses to Plaintiffs' Discovery Requests to date. Interrogatory objections are governed by Federal Rule of Civil Procedure 33(b)(4), which provides that the "grounds for objecting to an interrogatory must be stated with specificity," and that any ground "not stated in a timely objection is waived unless the court, for good cause, excuses the failure." Although waiver is not addressed in Federal Rule of Civil Procedure 34(b)(2)—which governs objections and responses to document requests—this Court has observed:

> Failure to raise an objection in response to a Rule 34 request for production of documents may constitute a waiver of objections not properly raised, including privilege claims or work product claims.

*Southampton Pointe Prop. Owners Ass'n v. Onebeacon Ins. Co.*, 2013 U.S. Dist. LEXIS 205868, at *5 (D.S.C. Aug. 27, 2013) (Gergel, J.).

Here, each of the TOG Defendants has failed—either in whole or in part—to assert timely objections to Plaintiffs' Discovery Requests and no good cause exists to excuse that failure. Defendants Allstar Fire Equipment and PBI Performance Products, Inc. failed entirely to serve written responses to Plaintiffs' Discovery Requests. Further, no good cause exists to excuse that

---

[34] Plaintiffs and the PEC are unwilling to negotiate with the TOG Defendants over the adoption of a brief turnout gear-specific PFS. And while they have been roundly criticized by the TOG Defendants for temporarily breaking off such negotiations, Plaintiffs have consistently maintained that: (a) the parties' negotiations over a turnout-gear specific PFS are entirely independent from the TOG Defendants' obligation to provide responsive discovery; and (b) that the TOG Defendants' refusal to provide responsive discovery presents a threshold issue that must be resolved before continuing negotiations over both a turnout gear-specific PFS, and any objections to the scope of the Plaintiffs' discovery requests. Thus, once the present discovery dispute is resolved, Plaintiffs have every intention of resuming negotiations with the TOG Defendants over a turnout gear-specific PFS.

failure considering that they requested—and were granted—an extension of their deadline to serve those responses and have continued to participate in the present discovery dispute.[35] All indications are that these two defendants deliberately chose not to provide written responses, and as a result, they should be deemed to have waived any and all objections to Plaintiffs' Discovery Requests.

The remaining TOG Defendants served written responses where they objected to each of Plaintiffs' Discovery Requests in their entirety based on the same threshold barriers identified in their July 8 discovery letter.[36] And while those responses made specific objections to some of Plaintiffs' Discovery Requests, they also included language reserving the right to assert additional objections to the requests "at the appropriate time."[37] This is not permissible under Rules 33 and 34, as courts have held that "[o]bjections not interposed in a timely initial response may not be held in reserve and interposed after the period allowed for response." *Safeco Ins. Co. of Am. v. Rawstrom*, 183 F.R.D. 668, 671 (C.D. Cal. 1998); *see also Garcia v. Yuba Cty. Sheriff's Dep't*, 2021 U.S. Dist. LEXIS 85492, at *2 (E.D. Cal. May 3, 2021) (same). As such, the reservation of rights these TOG Defendants included in their responses does nothing to alter the conclusion that any objections they failed to make have been waived.

Nor can these TOG Defendants show good cause for the Court to excuse that failure. In fact, by including the reservation of rights in their responses, these TOG Defendants only demonstrate that the decision to include some objections in their responses while excluding others

---

[35] *See* Croner Decl., Ex. I at p. 5 (7/8/2022 letter outlining the TOG Defendants' discovery position and signed by Allstar Fire Equipment and PBI Performance Products, Inc.).

[36] Croner Decl., Exs. C–D.

[37] Croner Decl., Ex. C at 2, 22, 39-40, 59-60, 77, 98, 114, 135, 152, 172, 189, 211, 227, 250, 268, 288, (stating that each of the respective TOG Defendants "expressly reserves its right to assert additional and/or more specific objections to these and any additional or related discovery at the appropriate time"); *id.*, Ex. D at 2, 21 (same for Defendant Fire-Dex, LLC).

was made deliberately and not by mistake. For this reason, the Court should find that any objections they failed to include in their written responses to date have been waived.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their Motion to Compel and issue an Order compelling the TOG Defendants to promptly provide information and documents responsive to Plaintiffs' Discovery Requests, finding that the TOG Defendants have waived any objections they failed to include in their written responses to those requests to date, and granting such other and further relief as may be just, appropriate and warranted under the circumstances.

Dated: September 16, 2022                    /s/ Fred Thompson, III
                                             Motley Rice LLC
                                             28 Bridgeside Boulevard
                                             Mt. Pleasant, SC 29464
                                             P: (843) 216-9000
                                             Fax: 843-216-9440
                                             fthompson@motleyrice.com

                                             *Plaintiffs' Liaison Counsel*

                                                     -and-

                                             /s/ Michael A. London
                                             Michael A London
                                             Douglas and London PC
                                             59 Maiden Lane
                                             6th Floor
                                             New York, NY 10038
                                             P: (212)-566-7500
                                             F: (212)-566-7501
                                             mlondon@douglasandlondon.com

                                             Paul J. Napoli
                                             Napoli Shkolnik PLLC
                                             1301 Avenue of The Americas
                                             10th Floor
                                             New York, NY 10019
                                             P: (212)-397-1000
                                             F: (646)-843-7603
                                             pnapoli@napolilaw.com

                                             Scott Summy
                                             Baron & Budd, P.C.
                                             3102 Oak Lawn Avenue
                                             Suite 1100
                                             Dallas, TX 75219
                                             P: (214)-521-3605
                                             ssummy@baronbudd.com

                                             *Co-lead Counsel for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was electronically filed with this Court's CM/ECF on this 16th day September 2022 and was thus served electronically upon counsel of record.

/s/ Fred Thompson, III