# EXHIBIT C

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | |
|---|---|
| IN RE:  AQUEOUS FILM-FORMING FOAMS PRODUCT LIABILITY LITIGATION | MDL No:  2:18-mn-2873-RMG <br><br> **This Document relates to:** **ALL CASES** |

**GLOBE MANUFACTURING COMPANY, LLC'S OBJECTIONS TO**
**PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Defendant Globe Manufacturing Company, LLC ("Globe") hereby serves the below objections to Plaintiffs' First Set of Requests for Production of Documents ("Document Requests").

## GENERAL OBJECTIONS

1.      In this Aqueous Film-Forming Foams ("AFFF") Products Liability Litigation ("MDL"), the Document Requests are objectionable for a number of reasons, including that they are premature.  While the Document Requests purport to relate to "All Cases," it is clear that they pertain only to the small number of cases involving allegations that plaintiffs were injured by both AFFF and firefighter turnout gear ("Turnout Gear" or "TOG").  These Turnout Gear claims, which are alleged against Globe and around thirteen other defendants ("Turnout Gear Defendants" or "TOG Defendants"), do not predicate liability on the use of or exposure to AFFF.  Accordingly, discovery, and in particular, broad sweeping discovery, into the distinctly unique TOG personal injury claims is not appropriate at this time, given the current status of the matters pending in the MDL.  Globe makes these objections subject to and without waiver of its position that discovery concerning alleged injuries from Turnout Gear is premature given the procedural posture of the MDL and expressly reserves its right to assert additional and/or more specific objections to these and any additional or related discovery at the appropriate time.

2.     The Court has conducted a "Science Day" with respect to AFFF only.  The scientific issues underlying the TOG claims, however, are fundamentally different from those underlying the AFFF claims.  Turnout Gear is not one product or one component, and it is not always used under the same conditions as AFFF.  Scientific questions underlying TOG personal injury claims involve different chemicals with different properties and toxicological profiles, different possible exposure pathways (if any), different theoretical exposure concentrations (if any), and a host of other issues that distinguish TOG claims from those involving AFFF.  The Science Day held for AFFF does not fully inform the questions of alleged exposure or adverse effects to the plaintiffs claiming harm caused by Turnout Gear.

3.      Discovery against the TOG Defendants is also premature because the existing plaintiff fact sheets are not relevant to Turnout Gear.  The plaintiff fact sheets focus on AFFF and contain little to no information pertaining to the TOG claims.  There is no information provided from which Globe can determine why it is named as a defendant or Globe's role in any of plaintiffs' alleged injuries from Turnout Gear.  Under the procedures and protocols applicable in this MDL, broad and burdensome discovery requests should not be served until after the plaintiffs have completed fact sheets that provide useful foundational information about the TOG claims, especially given the fact that defendants are precluded from serving their own discovery requests on the TOG plaintiffs at this time.  The TOG Defendants are prepared to meet and confer with plaintiffs' counsel to discuss an appropriate fact sheet for plaintiffs alleging TOG claims.

4.     The Document Requests are premature because Globe has not yet had the opportunity to demonstrate the speculative nature of the claims asserted against it, which should be dismissed by the MDL court on that basis.  Before being forced to engage in broad, expansive and burdensome discovery, Globe should be given an opportunity, if it opts to do so, to seek the Rule 12 dismissal of the claims against it.

5.     Case Management Order No. 2 (March 20, 2019) required the Plaintiffs' Executive Committee ("PEC") to "[d]evelop and propose to the Court schedules for the commencement, execution and completion of all discovery on behalf of all plaintiffs."  To Globe's knowledge, the

PEC has not satisfied that requirement as to any TOG claim or with respect to TOG Defendants; indeed, no TOG claim had been filed at the time CMO No. 2 was entered and discovery commenced against the AFFF defendants.  In short, there is no indication the Court contemplated, much less authorized, broad and one-sided general discovery against the TOG Defendants.

6.     Globe objects to the Document Requests to the extent that they seek documents protected from disclosure by the attorney-client privilege, work-product immunity, joint-defense privilege, common-interest privilege, or any other privilege or protection afforded by applicable law.   In the event of an inadvertent disclosure of privileged/protected documents, the privilege/protection shall not be waived, and such documents will be subject to clawback and other remedies, consistent with Federal Rule of Civil Procedure 26(b)(5)(B) and Federal Rule of Evidence 502(b).

7.     Globe objects to the Document Requests to the extent that they seek documents that constitute, contain, or otherwise disclose trade secrets or other proprietary or confidential information.  In the event Globe is required to produce such information in the MDL, Globe will only do so subject to an appropriate protective order.  Globe further objects to producing any document that is subject to a confidentiality obligation owed by Globe to a third party.

8.     The Document Requests are objectionable on the grounds that they are overly broad, unduly burdensome, and oppressive, particularly but not exclusively to the extent they demand the production of "all documents," "all communications," and similar sweeping sets of documents without limitation; seek a range of documents neither relevant to any claim or defense in the TOG cases; and impose obligations on Globe that are disproportionate to the needs of genuine TOG claim discovery.

9.     Several Requests are without any temporal limitation, and the general time period specified in the Document Requests (1970) (Instruction 13) is so early in time as to be overbroad, unduly burdensome, and virtually meaningless.

10.     Globe objects that several Requests are without any geographic limitation and therefore seek information that is not relevant to any claim or defense in this litigation.

11.    Globe objects that several Requests call for information about products not used by or associated with any plaintiff in this litigation or sold to any defendant in this litigation and, therefore, seek information that is not relevant to any claim or defense in this litigation.

12.    Globe objects to any Request to the extent that it improperly assumes facts, specifically, that TURNOUTS are associated with ADVERSE, HUMAN HEALTH, or TOXICOLOGICAL EFFECTS, and expressly rejects any such suggestion.

13.    Globe objects to the Requests to the extent that they assume or suggest that Globe had knowledge concerning PFAS or PFAS-containing products in components of Turnout Gear at any given time, or that it had any legal duty or obligation to provide PFAS-related warnings at any given time.  Further, Globe objects to the Requests to the extent they seek documents concerning Turnout Gear components that Globe may have purchased from others, where such documents are outside of Globe's possession, custody, or control and/or it would be less burdensome to obtain the documents from the manufacturers and/or sellers of those components.

## OBJECTIONS TO PLAINTIFFS' DEFINITIONS AND INSTRUCTIONS

Globe objects as specified below to the Definitions and Instructions in the Document Requests.  Documents may be withheld on the basis of these objections.

1.    Globe objects to each definition and each instruction to the extent that it purports to impose on Globe obligations beyond those set out in the Federal Rules of Civil Procedure, and therefore causes the Requests to be overly broad, unduly burdensome, or requires the production of documents or disclosure of information that is not reasonably accessible.  By way of example only, Globe objects to Instruction No. 7, which purports to require the creation of a log of "destroyed, lost, discarded," etc. documents, and Instruction No. 11, which purports to require Defendants to produce documents that are not "relevant or responsive to the[] Requests."

2.    Globe objects to each definition that is unintelligible, vague or ambiguous, or would so expand the scope of a Request as to impose an unreasonable burden or to seek information not relevant to the claims or defenses relative to the TOG personal injury claims.  Examples of such

problematic definitions include "Communications," "Internal Communications," "Plaintiffs," "Relating To" or "Concerning," and "You," "Your," and "Defendant."

3.      A number of the definitions are contradictory and render individual Document Requests unintelligible.  For example, the terms "Sale," "Sell," and "Sold" are limited to the sale of "Turnouts," but then those terms are used in Requests that do not pertain to Turnouts.  Other definitions, including the definitions of "Manufacturing Defendants," "PFAS," "PFOA," "PFOS," "PFAS-Containing Products," and "Turnouts," are vague and ambiguous.

4.      Globe objects to each definition and each instruction that purports to require the production of documents or information not within Globe's possession, custody, or control or from persons or entities not within Globe's control; calls for a legal conclusion regarding the relationship between certain persons and/or entities; or may encompass relationships of which Globe is not aware.  Furthermore, Globe objects to the Document Requests to the extent that they seek documents and information from Mine Safety Appliances Company, LLC, which is a separate entity distinct from Globe.  Globe will not respond on behalf of Mine Safety Appliances Company, LLC and will not provide documents or information on its behalf.

5.      Globe objects to each definition and each instruction, including but not limited to Instructions Nos. 4 and 5, that is inconsistent with the protocol set forth in the MDL court's ESI Order.

6.      Any eventual production by Globe, if any, would be on a rolling basis, subject to Globe's obligations to supplement, to include responsive documents identified and produced only after a reasonable search and production effort (and subject to all applicable objections).  Any such production would be made pursuant to the protective order in the MDL and Federal Rule of Civil Procedure 34.

## OBJECTIONS AND RESPONSES TO REQUESTS FOR PRODUCTION

## REQUEST FOR PRODUCTION NO. 1:

All DOCUMENTS CONCERNING warnings YOU provided about any HUMAN HEALTH EFFECTS of TURNOUTS containing PFAS or PFAS-CONTAINING PRODUCTS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 1:**

Globe objects to this Request based on General Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference. Globe also objects that the use of the undefined term "warnings," as used in this Request, is vague and ambiguous.

**REQUEST FOR PRODUCTION NO. 2:**

All DOCUMENTS CONCERNING warnings YOU provided about any TOXICOLOGICAL EFFECTS of TURNOUTS containing PFAS or PFAS-CONTAINING PRODUCTS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 2:**

Globe objects to this Request based on General Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference. Globe also objects that the use of the undefined term "warnings," as used in this Request, is vague and ambiguous.

**REQUEST FOR PRODUCTION NO. 3:**

All DOCUMENTS CONCERNING warnings YOU provided about any ADVERSE EFFECTS of TURNOUTS containing PFAS or PFAS-CONTAINING PRODUCTS, other than the HUMAN HEALTH and TOXICOLOGICAL EFFECTS discussed above.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 3:**

Globe objects to this Request based on General Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference. Globe objects further that the phrase "ADVERSE EFFECTS of TURNOUTS, other than the HUMAN HEALTH and TOXICOLOGICAL EFFECTS discussed above," is vague and unintelligible. Globe also objects that the use of the undefined term "warnings," as used in this Request, is vague and ambiguous.

**REQUEST FOR PRODUCTION NO. 4:**

All DOCUMENTS CONCERNING instructions YOU provided RELATING TO the HANDLING of any TURNOUTS containing PFAS or PFAS-CONTAINING PRODUCTS YOU SOLD.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 4:**

Globe objects to this Request based on General Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.

**REQUEST FOR PRODUCTION NO. 5:**

All DOCUMENTS YOU used and/or relied on in preparing instructions YOU provided CONCERNING the HANDLING of any TURNOUTS containing PFAS or PFAS-CONTAINING PRODUCTS YOU SOLD.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 5:**

Globe objects to this Request based on General Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.

**REQUEST FOR PRODUCTION NO. 6:**

All DOCUMENTS CONCERNING any contract and/or agreement between YOU and any MANUFACTURING DEFENDANT(S) for the SALE of TURNOUTS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 6:**

Globe objects to this Request based on General Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.

**REQUEST FOR PRODUCTION NO. 7:**

All DOCUMENTS CONCERNING any contract and/or agreement between YOU and any MANUFACTURING DEFENDANT(S) for the purchase of materials containing PFAS or PFAS-CONTAINING PRODUCTS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 7:**

Globe objects to this Request based on General Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.

**REQUEST FOR PRODUCTION NO. 8:**

All COMMUNICATIONS between YOU and any MANUFACTURING DEFENDANT(S) CONCERNING PFAS and/or the presence of PFAS or PFAS-CONTAINING PRODUCTS in TURNOUTS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 8:**

Globe objects to this Request based on General Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference. Globe also objects that the use of the undefined term "presence," as used in this Request, is vague and ambiguous.

**REQUEST FOR PRODUCTION NO. 9:**

All DOCUMENTS regarding any formulation and/or design of TURNOUTS that did not contain PFAS or PFAS-CONTAINING PRODUCTS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 9:**

Globe objects to this Request based on General Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference. Globe also objects that this Request uses the undefined and vague phrase "formulation and/or design."

**REQUEST FOR PRODUCTION NO. 10:**

All COMMUNICATIONS between YOU and any MANUFACTURING DEFENDANT(S) CONCERNING any formulation and/or design of TURNOUTS that did not contain PFAS or PFAS-CONTAINING PRODUCTS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 10:**

Globe objects to this Request based on General Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference. Globe also objects that this Request uses the undefined and vague phrase "formulation and/or design."

**REQUEST FOR PRODUCTION NO. 11:**

All DOCUMENTS identifying the SKUs for TURNOUTS containing PFAS or PFAS-CONTAINING PRODUCTS YOU SOLD.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 11:**

Globe objects to this Request based on General Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference. Globe also objects that this Request uses the undefined and vague terms "identifying" and "SKUs."

**REQUEST FOR PRODUCTION NO. 12:**

All DOCUMENTS CONCERNING the number and dollar value of sales of each TURNOUT SKU YOU SOLD.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 12:**

Globe objects to this Request based on General Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.

**REQUEST FOR PRODUCTION NO. 13:**

All purchase agreements, purchase contracts, invoices, supply contracts, receipts, or other documentation evidencing YOUR sale, manufacture, and/or distribution of YOUR TURNOUTS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 13:**

Globe objects to this Request based on General Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference. Globe also objects that the use of the undefined term "other documentation," as used in this Request, is vague and ambiguous.

**REQUEST FOR PRODUCTION NO. 14:**

All DOCUMENTS CONCERNING any contracts and/or agreements that YOU had with suppliers, wholesalers, distributors, or any other entity that sold YOUR TURNOUTS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 14:**

Globe objects to this Request based on General Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.

**REQUEST FOR PRODUCTION NO. 15:**

All purchase orders, invoices, contracts, and/or other related materials that provide information about the sale, manufacture, and/or distribution of YOUR TURNOUTS, including but not limited to the dates when YOUR TURNOUTS were sold, the quantity YOU included in each shipment, and the amount (in dollars) YOU were paid for each shipment.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 15:**

Globe objects to this Request based on General Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference. Globe also objects that the use of the undefined terms "other related materials" and "information about," as used in this Request, are vague and ambiguous.

**REQUEST FOR PRODUCTION NO. 16:**

All DOCUMENTS RELATING TO the procedures and protocols for maintaining sales, production, volume, and invoicing records for YOUR TURNOUTS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 16:**

Globe objects to this Request based on General Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference. Globe also objects that this Request uses the undefined and vague terms "procedures," and "protocols."

**REQUEST FOR PRODUCTION NO. 17:**

All DOCUMENTS reflecting any assessment and/or analysis of YOUR share of the market for TURNOUTS from 1970 to present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 17:**

Globe objects to this Request based on General Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference. Globe also objects that this Request uses the undefined and vague terms "assessment," "analysis," and "market."

**REQUEST FOR PRODUCTION NO. 18:**

All studies and/or reports CONCERNING any HUMAN HEALTH EFFECTS posed by PFAS or PFAS-CONTAINING PRODUCTS in TURNOUTS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 18:**

Globe objects to this Request based on General Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference. Globe also objects that the use of the undefined term "posed by," as used in this Request, is vague and ambiguous.

**REQUEST FOR PRODUCTION NO. 19:**

All studies and/or reports CONCERNING any TOXICOLOGICAL EFFECTS posed by PFAS or PFAS-CONTAINING PRODUCTS in TURNOUTS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 19:**

Globe objects to this Request based on General Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference. Globe also objects that the use of the undefined term "posed by," as used in this Request, is vague and ambiguous.

**REQUEST FOR PRODUCTION NO. 20:**

All COMMUNICATIONS between YOU and other PERSONS CONCERNING any HUMAN HEALTH EFFECTS of PFAS or PFAS-CONTAINING PRODUCTS in TURNOUTS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 20:**

Globe objects to this Request based on General Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.

**REQUEST FOR PRODUCTION NO. 21:**

All COMMUNICATIONS between YOU and other PERSONS CONCERNING any TOXICOLOGICAL EFFECTS of PFAS or PFAS-CONTAINING PRODUCTS in TURNOUTS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 21:**

Globe objects to this Request based on General Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.

**REQUEST FOR PRODUCTION NO. 22:**

All historic and current Material Safety Data Sheets ("MSDS") for any TURNOUTS containing PFAS or PFAS-CONTAINING PRODUCTS YOU SOLD.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 22:**

Globe objects to this Request based on General Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.

**REQUEST FOR PRODUCTION NO. 23:**

All DOCUMENTS, including but not limited to catalogues, statements[,] circulars, manuals, brochures, reports, and advertisements, which mention, describe, or otherwise refer to the virtues, qualities, characteristics, capabilities, and/or capacities of any TURNOUTS containing PFAS or PFAS-CONTAINING PRODUCTS YOU SOLD.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 23:**

Globe objects to this Request based on General Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.

**REQUEST FOR PRODUCTION NO. 24:**

All COMMUNICATIONS between YOU and any trade or industry organization CONCERNING HUMAN HEALTH EFFECTS of TURNOUTS containing PFAS or PFAS-CONTAINING PRODUCTS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 24:**

Globe objects to this Request based on General Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.

**REQUEST FOR PRODUCTION NO. 25:**

All COMMUNICATIONS between YOU and any trade or industry organization CONCERNING TOXICOLOGICAL EFFECTS of TURNOUTS containing PFAS or PFAS-CONTAINING PRODUCTS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 25:**

Globe objects to this Request based on General Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.

**REQUEST FOR PRODUCTION NO. 26:**

All COMMUNICATIONS between YOU and any trade or industry organization CONCERNING ADVERSE EFFECTS of TURNOUTS containing PFAS or PFAS-CONTAINING PRODUCTS, other than the HUMAN HEALTH and TOXICOLOGICAL EFFECTS addressed above.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 26:**

Globe objects to this Request based on General Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.

**REQUEST FOR PRODUCTION NO. 27:**

All COMMUNICATIONS between YOU and any trade or industry organization CONCERNING the safety of TURNOUTS containing PFAS or PFAS-CONTAINING PRODUCTS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 27:**

Globe objects to this Request based on General Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.

**REQUEST FOR PRODUCTION NO. 28:**

All DOCUMENTS CONCERNING statements issued by YOU or on YOUR behalf regarding the HUMAN HEALTH EFFECTS associated with exposure to PFAS or PFAS-CONTAINING PRODUCTS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 28:**

Globe objects to this Request based on General Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference. Globe also objects that the use of the undefined term "statements," as used in this Request, is vague and ambiguous.

**REQUEST FOR PRODUCTION NO. 29:**

All DOCUMENTS CONCERNING statements issued by YOU or on YOUR behalf regarding the TOXICOLOGICAL EFFECTS associated with exposure to PFAS or PFAS-CONTAINING PRODUCTS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 29:**

Globe objects to this Request based on General Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference. Globe also objects that the use of the undefined term "statements," as used in this Request, is vague and ambiguous.

**REQUEST FOR PRODUCTION NO. 30:**

All COMMUNICATIONS between YOU and any public relations and/or media consulting firms or agencies regarding any TOXICOLOGICAL EFFECTS of PFAS or PFAS-CONTAINING PRODUCTS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 30:**

Globe objects to this Request based on General Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.

**REQUEST FOR PRODUCTION NO. 31:**

All COMMUNICATIONS between you and any public relations and/or media consulting firms or agencies CONCERNING any HUMAN HEALTH EFFECTS of PFAS or PFAS-CONTAINING PRODUCTS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 31:**

Globe objects to this Request based on General Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.

**REQUEST FOR PRODUCTION NO. 32:**

All DOCUMENTS regarding the biopersistence and/or the bioaccumulation of PFAS, PFOA, and/or PFOS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 32:**

Globe objects to this Request based on General Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference. Globe also objects that this Request calls for information that is neither relevant nor proportional to the needs of this litigation to the extent it seeks information about PFAS, PFOA, and/or PFOS that are not components in TURNOUTS used by or associated with any plaintiff in this litigation or sold to any defendant in this litigation.

**REQUEST FOR PRODUCTION NO. 33:**

All DOCUMENTS regarding studies and/or reports CONCERNING the amount of PFAS or PFAS-CONTAINING PRODUCTS in any TURNOUTS YOU SOLD.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 33:**

Globe objects to this Request based on General Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference. Globe further objects to the phrase "amount of PFAS or PFAS-CONTAINING PRODUCTS" as vague and ambiguous.

**REQUEST FOR PRODUCTION NO. 34:**

All COMMUNICATIONS regarding studies and/or reports CONCERNING the amount of PFAS or PFAS-CONTAINING PRODUCTS in any TURNOUTS YOU SOLD.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 34:**

Globe objects to this Request based on General Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference. Globe further objects to the phrase "amount of PFAS or PFAS-CONTAINING PRODUCTS" as vague and ambiguous.

**REQUEST FOR PRODUCTION NO. 35:**

All DOCUMENTS regarding studies and/or reports of TOXICOLOGICAL EFFECTS of PFAS, PFOA and/or PFOS conducted by YOU or on YOUR behalf.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 35:**

Globe objects to this Request based on General Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.

**REQUEST FOR PRODUCTION NO. 36:**

All DOCUMENTS and COMMUNICATIONS between YOU and any MANUFACTURING DEFENDANT(S) CONCERNING any TOXICOLOGICAL EFFECTS of PFAS or PFAS-CONTAINING PRODUCTS in TURNOUTS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 36:**

Globe objects to this Request based on General Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference. Globe further objects that this Request is duplicative of Request No. 8.

**REQUEST FOR PRODUCTION NO. 37:**

All DOCUMENTS and COMMUNICATIONS between YOU and any MANUFACTURING DEFENDANT(S) CONCERNING any HUMAN HEALTH EFFECTS of PFAS or PFAS-CONTAINING PRODUCTS in TURNOUTS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 37:**

Globe objects to this Request based on General Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference. Globe further objects that this Request is duplicative of Request No. 8.

**REQUEST FOR PRODUCTION NO. 38:**

All DOCUMENTS and COMMUNICATIONS between YOU and any MANUFACTURING DEFENDANT(S) CONCERNING any adverse effects of PFAS or PFAS-CONTAINING PRODUCTS in TURNOUTS, other than the TOXICOLOGICAL and HUMAN HEALTH EFFECTS discussed above.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 38:**

Globe objects to this Request based on General Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference. Globe further objects that this Request is duplicative of Request No. 8.

**REQUEST FOR PRODUCTION NO. 39:**

All DOCUMENTS regarding studies or research conducted by YOU or on YOUR behalf CONCERNING the use of non-PFAS materials in the TURNOUTS YOU SOLD.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 39:**

Globe objects to this Request based on General Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference. Globe also objects that the use of the undefined term "non-PFAS materials," as used in this Request, is vague and ambiguous.

**REQUEST FOR PRODUCTION NO. 40:**

All DOCUMENTS CONCERNING the effectiveness of non-PFAS materials in the TURNOUTS YOU SOLD.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 40:**

Globe objects to this Request based on General Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference. Globe also objects that the use of the undefined terms "effectiveness" and "non-PFAS materials," as used in this Request, is vague and ambiguous.

**REQUEST FOR PRODUCTION NO. 41:**

All COMMUNICATIONS CONCERNING the use of non-PFAS materials in the TURNOUTS YOU SOLD.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 41:**

Globe objects to this Request based on General Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference. Globe also objects that the use of the undefined term "non-PFAS materials," as used in this Request, is vague and ambiguous.

**REQUEST FOR PRODUCTION NO. 42:**

All DOCUMENTS CONCERNING the development and adoption of warning DOCUMENTS, instructions, and/or labels on TURNOUTS containing PFAS or PFAS-CONTAINING PRODUCTS YOU SOLD.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 42:**

Globe objects to this Request based on General Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference. Globe also objects that the use of the undefined term "warning," as used in this Request, is vague and ambiguous.

**REQUEST FOR PRODUCTION NO. 43:**

All DOCUMENTS RELATING TO any insurance coverage or request for any insurance coverage in connection with any loss, claim, damage or request relating or referring to this MDL or any other action arising from the use of TURNOUTS containing PFAS or PFAS-CONTAINING PRODUCTS YOU SOLD.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 43:**

Globe objects to this Request based on General Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.

**REQUEST FOR PRODUCTION NO. 44:**

All DOCUMENTS RELATING TO any meetings or correspondence with, or submissions to, the National Fire Protection Association concerning TURNOUTS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 44:**

Globe objects to this Request based on General Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.

**REQUEST FOR PRODUCTION NO. 45:**

All COMMUNICATIONS between YOU and the National Fire Protection Association CONCERNING TURNOUTS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 45:**

Globe objects to this Request based on General Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.

**REQUEST FOR PRODUCTION NO. 46:**

All COMMUNICATIONS between YOU and any MANUFACTURING DEFENDANT(S) CONCERNING the National Fire Protection Association.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 46:**

Globe objects to this Request based on General Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.

**REQUEST FOR PRODUCTION NO. 46:**

All DOCUMENTS CONCERNING any financial contributions or payments from YOU to the National Fire Protection Association.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 47:**

Globe objects to this Request based on General Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.

**REQUEST FOR PRODUCTION NO. 47:**

All DOCUMENTS RELATING TO any meetings or correspondence with, or submissions to, the International Association of Fire Fighters concerning TURNOUTS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 48:**

Globe objects to this Request based on General Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.

**REQUEST FOR PRODUCTION NO. 48:**

All COMMUNICATIONS between YOU and the International Association of Fire Fighters concerning TURNOUTS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 49:**

Globe objects to this Request based on General Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.

**REQUEST FOR PRODUCTION NO. 49:**

All COMMUNICATIONS between YOU and any MANUFACTURING DEFENDANT(S) CONCERNING the International Association of Fire Fighters.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 50:**

Globe objects to this Request based on General Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.

**REQUEST FOR PRODUCTION NO. 50:**

All DOCUMENTS CONCERNING any financial contributions or payments from YOU to the International Association of Fire Fighters.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 51:**

Globe objects to this Request based on General Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.

**REQUEST FOR PRODUCTION NO. 51:**

All DOCUMENTS CONCERNING any disclosure that TURNOUTS YOU SOLD contained PFAS or PFAS-CONTAINING PRODUCTS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 52:**

Globe objects to this Request based on General Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference. Globe also objects that this Request uses the undefined, vague and ambiguous term "disclosure."

**REQUEST FOR PRODUCTION NO. 52:**

All DOCUMENTS RELATING TO any meetings or correspondence with, or submission to, any governmental body, trade association, industry group, or lobbying group regarding PFAS or PFAS-CONTAINING PRODUCTS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 53:**

Globe objects to this Request based on General Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.

Dated: July 8, 2022

Respectfully submitted,

ORRICK, HERRINGTON & SUTCLIFFE LLP

By:  */s/ Jennifer B. Jones*

    Jennifer B. Jones (PA Bar ID 82291)
    2121 Main Street
    Wheeling, WV  26003-2809
    jennifer.jones@orrick.com
    Telephone:    +1 304 231 2500
    Facsimile:    +1 304 231 2501

    James L. Stengel (NY Bar ID 1800556)
    51 West 52nd Street
    New York, NY  10019-6142
    jstengel@orrick.com
    Telephone:    +1 212 506 5000
    Facsimile:    +1 212 506 5151

    *Counsel for Defendants Globe Manufacturing
    Company, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on July 8, 2022, a true and correct copy of the foregoing was served via electronic mail upon the following:

Michael A. London
Tate J. Kunkle
Douglas and London PC
mlondon@douglasandlondon.com
tkunkle@douglasandlondon.com

Paul J. Napoli
Napoli Shkolnik
pnapoli@nsprlaw.com

Scott Summy
Baron & Budd, P.C.
ssummy@baronbudd.com
afffmdlproductions@baronbudd.com

*Plaintiffs' Co-Lead Counsel*

Fred Thompson III
Marissa Bessis
Motley Rice LLC
fthompson@motleyrice.com
mbessis@motleyrice.com

*Plaintiffs' Liaison Counsel*

Elizabeth C. Pritzker
Pritzker Levine LLP
ecp@pritzkerlevine.com

*Plaintiffs' Executive Committee Member*

/s/ *James L. Stengel*
James L. Stengel

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | |
|---|---|
| IN RE:  AQUEOUS FILM-FORMING FOAMS PRODUCT LIABILITY LITIGATION | MDL No:  2:18-mn-2873-RMG<br><br>**This Document Relates to:**<br>**ALL CASES** |

**GLOBE MANUFACTURING COMPANY, LLC'S OBJECTIONS**
**TO PLAINTIFFS' FIRST SET OF INTERROGATORIES**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure ("Federal Rules"), Defendant Globe Manufacturing Company, LLC ("Globe"), Globe hereby serves the below objections to Plaintiffs' First Set of Interrogatories ("Interrogatories").

**GENERAL OBJECTIONS**

1.      In this Aqueous Film-Forming Foams ("AFFF") Products Liability Litigation ("MDL"), the Interrogatories are objectionable for a number of reasons, including that they are premature.  While the Interrogatories purport to relate to "All Cases," it is clear that they pertain only to the small number of cases involving allegations that plaintiffs were injured by both AFFF and firefighter turnout gear ("Turnout Gear" or "TOG").  These Turnout Gear claims, which are alleged against Globe and around thirteen other defendants ("Turnout Gear Defendants" or "TOG Defendants"), do not predicate liability on the use of or exposure to AFFF.  Accordingly, discovery, and in particular, broad sweeping discovery, into the distinctly unique TOG personal injury claims is not appropriate at this time, given the current status of the matters pending in the MDL.  Globe makes these objections subject to and without waiver of its position that discovery concerning alleged injuries from Turnout Gear is premature given the procedural posture of the MDL and expressly reserves its right to assert additional and/or more specific objections to these and any additional or related discovery at the appropriate time.

1

2.     The Court has conducted a "Science Day" with respect to AFFF only. The scientific issues underlying the TOG claims, however, are fundamentally different from those underlying the AFFF claims. Turnout Gear is not one product or one component, and it is not always used under the same conditions as AFFF. Scientific questions underlying TOG personal injury claims involve different chemicals with different properties and toxicological profiles, different possible exposure pathways (if any), different theoretical exposure concentrations (if any), and a host of other issues that distinguish TOG claims from those involving AFFF. The Science Day held for AFFF does not fully inform the questions of alleged exposure or adverse effects to plaintiffs claiming harm caused by Turnout Gear.

3.     Discovery against the TOG Defendants is also premature because the existing plaintiff fact sheets are not relevant to Turnout Gear. The plaintiff fact sheets focus on AFFF and contain little to no information pertaining to the TOG claims. There is no information provided from which Globe can determine why it is named as a defendant or Globe's role in any of plaintiffs' alleged injuries from Turnout Gear. Under the procedures and protocols applicable in this MDL, broad and burdensome discovery requests should not be served until after the plaintiffs have completed fact sheets that provide useful foundational information about the TOG claims, especially given the fact that defendants are precluded from serving their own discovery requests on the TOG plaintiffs at this time. The TOG Defendants are prepared to meet and confer with plaintiffs' counsel to discuss an appropriate fact sheet for plaintiffs alleging TOG claims.

4.     The Interrogatories are premature because Globe has not yet had the opportunity to demonstrate the speculative nature of the claims asserted against it, which should be dismissed by the MDL court on that basis. Before being forced to engage in broad, expansive and burdensome discovery, Globe should be given an opportunity, if it opts to do so, to seek the Rule 12 dismissal of the claims against it.

5.     Case Management Order No. 2 (March 20, 2019) required the Plaintiffs' Executive Committee ("PEC") to "[d]evelop and propose to the Court schedules for the commencement, execution and completion of all discovery on behalf of all plaintiffs." To Globe's knowledge, the

PEC has not satisfied that requirement as to any TOG claim or with respect to TOG Defendants; indeed, no TOG claim had been filed at the time CMO No. 2 was entered and discovery commenced against the AFFF defendants.  In short, there is no indication the Court contemplated, much less authorized, broad and one-sided general discovery against the TOG Defendants.

6.    Globe objects to the Interrogatories to the extent that they seek documents protected from disclosure by the attorney-client privilege, work-product immunity, joint-defense privilege, common-interest privilege, or any other privilege or protection afforded by applicable law.  In the event of an inadvertent disclosure of privileged/protected information or documents, the privilege/protection shall not be waived, and such information or documents will be subject to clawback and other remedies, consistent with Federal Rule of Civil Procedure 26(b)(5)(B) and Federal Rule of Evidence 502(b).

7.    Globe objects to the Interrogatories to the extent that they seek the disclosure of information that constitutes, contains or otherwise discloses trade secrets or other proprietary or confidential information.  In the event Globe is required to produce such information in the MDL, Globe will only do so subject to an appropriate protective order.  Globe further objects to disclosing any information that is subject to a confidentiality obligation owed by Globe to a third party.

8.    Globe objects to each and every Interrogatory that seeks the address, telephone numbers, or other personal information of individuals.  In many or most cases, Globe does not possess such information, but where it may, Globe objects to any such Interrogatory as unduly invasive and unnecessarily violative of those individuals' privacy rights as well as of Globe's duty to safeguard the personal information of its employees or former employees.  Any current or former Globe employee should be contacted only through counsel of record in the Action.

9.    The Interrogatories are objectionable on the grounds that they are overly broad, unduly burdensome, and oppressive, particularly but not exclusively to the extent they demand that Globe "identify" or "describe" "all" documents, communications, persons or things listed in the Interrogatory or seek similar sweeping categories of information; seek a range of information

and documents neither relevant to any claim or defense in the TOG cases; and impose obligations on Globe that are disproportionate to the needs of proportional TOG claim discovery.

10.    Several Interrogatories are without any temporal limitation, and the general time period specified in the Interrogatories (1970) (Instruction 8) is so early in time as to be overbroad, unduly burdensome and virtually meaningless.

11.    Globe objects that several Interrogatories are without any geographic limitation and therefore seek information that is not relevant to any claim or defense in this litigation.

12.    Globe objects that several Interrogatories call for information about products not used by or associated with any plaintiff in this litigation or sold to any defendant in this litigation and, therefore, seek information that is not relevant to any claim or defense in this litigation.

13.    Globe objects to any Interrogatory to the extent that it improperly assumes facts, specifically, that TURNOUTS or PFAS-CONTAINING PRODUCTS are associated with ADVERSE, HUMAN HEALTH, or TOXICOLOGICAL EFFECTS, and expressly rejects any such suggestion.

14.    Globe objects to the Interrogatories to the extent that they assume or suggest that Globe had knowledge concerning PFAS or PFAS-containing products in components of Turnout Gear at any given time, or that it had any legal duty or obligation to provide PFAS-related warnings at any given time.  Further, Globe objects to the Interrogatories to the extent they seek information concerning Turnout Gear components that Globe may have purchased from others, where such information is outside of Globe's possession, custody, or control and/or it would be less burdensome to obtain from the manufacturers and/or sellers of those components.

15.    Globe objects to the Interrogatories because they exceed the number of interrogatories permitted by Fed. R. Civ. P. 33.  Globe also objects to these Interrogatories to the extent that they contain multiple discrete subparts, each of which requires a separate answer and constitutes a separate Interrogatory.

16.    Globe expressly reserves all rights, including, in particular but not exclusively, the right to respond to any Interrogatory, as appropriate, by "(1) specifying the records that must be

reviewed in sufficient detail to enable [Plaintiffs] to locate and identify them as readily as the responding party could; and (2) giving [Plaintiffs] a reasonable opportunity to examine and audit the records and to make copies, compilations, abstracts, or summaries." Federal Rule of Civil Procedure 33(d).

## OBJECTIONS TO PLAINTIFFS' DEFINITIONS AND INSTRUCTIONS

Globe objects as specified below to the Definitions and Instructions in the Interrogatories. Information may be withheld on the basis of these objections.

1.    Globe objects to each definition and each instruction to the extent that it purports to impose on Globe obligations beyond those set out in the Federal Rules of Civil Procedure, and therefore causes the Interrogatories to be overly broad, unduly burdensome, or requires the disclosure of information that is not reasonably accessible. By way of example only, Globe objects to Instruction Nos. 4 and 7, which purport to impose privilege log obligations beyond those required by Federal Rule of Civil Procedure 26(b)(5)(A).

2.    Globe objects to each instruction and each definition that is unintelligible, vague or ambiguous, or would so expand the scope of an interrogatory as to impose an unreasonable burden or to seek information not relevant to the claims or defenses relative to the TOG personal injury claims. Examples of such problematic instructions and definitions include Instruction Nos. 5 ("describe") and 6 ("identify") and the following definitions: "Communications," "Internal Communications," "Plaintiffs," "Relating To" or "Concerning," and "You," "Your," and "Defendant."

3.    A number of the definitions are contradictory and render individual Interrogatories unintelligible. For example, the terms "Sale," "Sell," and "Sold" are limited to the sale of "AFFF," but then those terms are used in Interrogatories that do not pertain to AFFF. Other definitions, including the definitions of "Manufacturing Defendants," "PFAS," "PFOA," "PFOS," "PFAS-Containing Products," and "Turnouts," are vague and ambiguous.

4.    Globe objects to each definition and each instruction that purports to require the disclosure of information not within Globe's possession, custody, or control or from persons or

entities not within Globe's control; calls for a legal conclusion regarding the relationship between certain persons and/or entities; or may encompass relationships of which Globe is not aware. Furthermore, Globe objects to the Interrogatories to the extent that they seek documents and information from Mine Safety Appliances Company, LLC, which is a separate entity distinct from Globe. Globe will not respond on behalf of Mine Safety Appliances Company, LLC and will not provide documents or information on its behalf.

5. Any eventual disclosure by Globe, if any, would be on a rolling basis, subject to Globe's obligations to supplement, to include responsive information identified and disclosed only after a reasonable search and disclosure effort (and subject to all applicable objections). Any such response would be made pursuant to the protective order in the MDL and Federal Rule of Civil Procedure 33.

## OBJECTIONS AND RESPONSES TO INTERROGATORIES

**INTERROGATORY NO. 1:**

Identify each PERSON who has supplied information used in answering these interrogatories and specify the interrogatories for which each PERSON is responsible.

**RESPONSE TO INTERROGATORY NO. 1:**

Globe objects to this Interrogatory based on General Objections 1-16 and Objections to Plaintiffs' Definitions and Instructions 1-5, which are incorporated herein by reference.

**INTERROGATORY NO. 2:**

Identify all TURNOUTS containing PFAS or PFAS-CONTAINING PRODUCTS that YOU SOLD to any MANUFACTURING DEFENDANT(S), stating for each: the trade name under which it was SOLD, the number and dollar value of SALES to each MANUFACTURING DEFENDANT(S), and the date(s) when it was SOLD.

**RESPONSE TO INTERROGATORY NO. 2:**

Globe objects to this Interrogatory based on General Objections 1-16 and Objections to Plaintiffs' Definitions and Instructions 1-5, which are incorporated herein by reference.

**INTERROGATORY NO. 3:**

Identify the specific PFAS or PFAS-CONTAINING PRODUCTS present in YOUR TURNOUTS.

**RESPONSE TO INTERROGATORY NO. 3:**

Globe objects to this Interrogatory based on General Objections 1-16 and Objections to Plaintiffs' Definitions and Instructions 1-5, which are incorporated herein by reference. Globe also objects to this Interrogatory as vague and ambiguous in its use of the term "present."

**INTERROGATORY NO. 4:**

Identify the names of all distributors that received (by purchase, delivery, or otherwise) TURNOUTS containing PFAS or PFAS-CONTAINING PRODUCTS from YOU from 1970 to present, including the quantity of TURNOUTS YOU delivered, tendered, and/or SOLD, as well as the name or type of the TURNOUTS YOU delivered, tendered, and/or SOLD.

**RESPONSE TO INTERROGATORY NO. 4:**

Globe objects to this Interrogatory based on General Objections 1-16 and Objections to Plaintiffs' Definitions and Instructions 1-5, which are incorporated herein by reference. Globe also objects to this Interrogatory as vague and ambiguous in its use of the term "tendered."

**INTERROGATORY NO. 5:**

Identify the entity or entities from which YOU or anyone on YOUR behalf purchased PFAS or PFAS-CONTAINING PRODUCTS for use in YOUR TURNOUTS.

**RESPONSE TO INTERROGATORY NO. 5:**

Globe objects to this Interrogatory based on General Objections 1-16 and Objections to Plaintiffs' Definitions and Instructions 1-5, which are incorporated herein by reference.

**INTERROGATORY NO. 6:**

For each entity identified in response to INTERROGATORY NO. 5, identify the PFAS or PFAS-CONTAINING PRODUCTS purchased, the volume and dollar value purchased, and the dates of purchase.

**RESPONSE TO INTERROGATORY NO. 6:**

Globe objects to this Interrogatory based on General Objections 1-16 and Objections to Plaintiffs' Definitions and Instructions 1-5, which are incorporated herein by reference.

**INTERROGATORY NO. 7:**

Identify all studies, analyses, tests, or reports YOU have ever conducted or contracted with another PERSON to conduct on YOUR behalf CONCERNING either the presence or the amount of PFAS or PFAS-CONTAINING PRODUCTS in YOUR TURNOUTS.

**RESPONSE TO INTERROGATORY NO. 7:**

Globe objects to this Interrogatory based on General Objections 1-16 and Objections to Plaintiffs' Definitions and Instructions 1-5, which are incorporated herein by reference. Globe also objects to this Interrogatory as vague and ambiguous in its use of the terms "presence" and "amount."

**INTERROGATORY NO. 8:**

Identify all COMMUNICATIONS YOU have had with any MANUFACTURING DEFENDANT(S) CONCERNING either the presence or the amount of PFAS or PFAS-CONTAINING PRODUCTS in YOUR TURNOUTS.

**RESPONSE TO INTERROGATORY NO. 8:**

Globe objects to this Interrogatory based on General Objections 1-16 and Objections to Plaintiffs' Definitions and Instructions 1-5, which are incorporated herein by reference. Globe also objects to this Interrogatory as vague and ambiguous in its use of the terms "presence" and "amount."

**INTERROGATORY NO. 9:**

Identify all COMMUNICATIONS YOU have had with any trade or industry organization CONCERNING either the presence or the amount of PFAS or PFAS-CONTAINING PRODUCTS in YOUR TURNOUTS.

**RESPONSE TO INTERROGATORY NO. 9:**

Globe objects to this Interrogatory based on General Objections 1-16 and Objections to Plaintiffs' Definitions and Instructions 1-5, which are incorporated herein by reference. Globe also objects to this Interrogatory as vague and ambiguous in its use of the terms "presence" and "amount."

**INTERROGATORY NO. 10:**

Identify all COMMUNICATIONS YOU have had with either the National Fire Protection Association or the International Association of Fire Fighters CONCERNING either the presence or the amount of PFAS or PFAS-CONTAINING PRODUCTS in YOUR TURNOUTS.

**RESPONSE TO INTERROGATORY NO. 10:**

Globe objects to this Interrogatory based on General Objections 1-16 and Objections to Plaintiffs' Definitions and Instructions 1-5, which are incorporated herein by reference. Globe also objects to this Interrogatory as vague and ambiguous in its use of the terms "presence" and "amount."

**INTERROGATORY NO. 11:**

Identify all information YOU provided to any purchaser or user of YOUR TURNOUTS containing PFAS or PFAS-CONTAINING PRODUCTS CONCERNING the formulation or design of YOUR TURNOUTS.

**RESPONSE TO INTERROGATORY NO. 11:**

Globe objects to this Interrogatory based on General Objections 1-16 and Objections to Plaintiffs' Definitions and Instructions 1-5, which are incorporated herein by reference. Globe also objects to this Interrogatory as vague and ambiguous in its use of the phrase "formulation or design."

**INTERROGATORY NO. 12:**

Identify all of the ways in which YOU informed purchasers or users of YOUR TURNOUTS containing PFAS or PFAS-CONTAINING PRODUCTS to ensure they were HANDLED and disposed of properly.

**RESPONSE TO INTERROGATORY NO. 12:**

Globe objects to this Interrogatory based on General Objections 1-16 and Objections to Plaintiffs' Definitions and Instructions 1-5, which are incorporated herein by reference.

**INTERROGATORY NO. 13:**

Describe any changes YOU made to the HANDLING and/or disposal methods YOU recommended to purchasers or users of YOUR TURNOUTS containing PFAS or PFAS-CONTAINING PRODUCTS from 1970 to present.

**RESPONSE TO INTERROGATORY NO. 13:**

Globe objects to this Interrogatory based on General Objections 1-16 and Objections to Plaintiffs' Definitions and Instructions 1-5, which are incorporated herein by reference. Globe also objects to this Interrogatory as vague and ambiguous in its use of the term "recommended."

**INTERROGATORY NO. 14:**

Identify all DOCUMENTS, instructions, training materials, or other information YOU provided to purchasers or users of YOUR TURNOUTS containing PFAS or PFAS-CONTAINING PRODUCTS CONCERNING the HANDLING and/or disposal of YOUR TURNOUTS.

**RESPONSE TO INTERROGATORY NO. 14:**

Globe objects to this Interrogatory based on General Objections 1-16 and Objections to Plaintiffs' Definitions and Instructions 1-5, which are incorporated herein by reference.

**INTERROGATORY NO. 15:**

Identify the PERSON most knowledgeable about the DOCUMENTS, instructions, training materials, or other information YOU provided to purchasers or users of YOUR TURNOUTS containing PFAS or PFAS-CONTAINING PRODUCTS CONCERNING the HANDLING and/or disposal of YOUR TURNOUTS.

**RESPONSE TO INTERROGATORY NO. 15:**

Globe objects to this Interrogatory based on General Objections 1-16 and Objections to Plaintiffs' Definitions and Instructions 1-5, which are incorporated herein by reference. Globe further objects that this Interrogatory prematurely calls for the identification of a person most knowledgeable.

**INTERROGATORY NO. 16:**

Identify all warnings or information YOU provided to purchasers or users of YOUR TURNOUTS containing PFAS or PFAS-CONTAINING PRODUCTS about any TOXICOLOGICAL EFFECTS of PFAS.

**RESPONSE TO INTERROGATORY NO. 16:**

Globe objects to this Interrogatory based on General Objections 1-16 and Objections to Plaintiffs' Definitions and Instructions 1-5, which are incorporated herein by reference. Globe also objects that the use of the undefined term "warnings or information," as used in this Interrogatory, is vague and ambiguous.

**INTERROGATORY NO. 17:**

Identify all warnings or information YOU provided to purchasers or users of YOUR TURNOUTS containing PFAS or PFAS-CONTAINING PRODUCTS about any HUMAN HEALTH EFFECTS of PFAS.

**RESPONSE TO INTERROGATORY NO. 17:**

Globe objects to this Interrogatory based on General Objections 1-16 and Objections to Plaintiffs' Definitions and Instructions 1-5, which are incorporated herein by reference. Globe also objects that the use of the undefined term "warnings or information," as used in this Interrogatory, is vague and ambiguous.

**INTERROGATORY NO. 18:**

Identify all warnings or information YOU provided to purchasers or users of YOUR TURNOUTS containing PFAS or PFAS-CONTAINING PRODUCTS about any ADVERSE EFFECTS of PFAS, other than the TOXICOLOGICAL and HUMAN HEALTH EFECTS discussed above.

**RESPONSE TO INTERROGATORY NO. 18:**

Globe objects to this Interrogatory based on General Objections 1-16 and Objections to Plaintiffs' Definitions and Instructions 1-5, which are incorporated herein by reference. Globe also objects that the use of the undefined term "warnings or information," as used in this Interrogatory, is vague and ambiguous.

**INTERROGATORY NO. 19:**

Are YOU aware of or have YOU ever conducted or contracted with another PERSON to conduct any studies, reports, and/or surveys to investigate the TOXICOLOGICAL EFFECTS of any PFAS present in TURNOUTS?

**RESPONSE TO INTERROGATORY NO. 19:**

Globe objects to this Interrogatory based on General Objections 1-16 and Objections to Plaintiffs' Definitions and Instructions 1-5, which are incorporated herein by reference. Globe also objects to this Interrogatory as vague and ambiguous in its use of the terms "aware of" and "present."

**INTERROGATORY NO. 20:**

If YOUR response to INTERROGATORY NO. 19 is in the affirmative, identify the study, who conducted the study, the results of the study, any PERSONS with knowledge of relevant facts about the study, and all DOCUMENTS RELATING TO or referencing the study.

**RESPONSE TO INTERROGATORY NO. 20:**

Globe objects to this Interrogatory based on General Objections 1-16 and Objections to Plaintiffs' Definitions and Instructions 1-5, which are incorporated herein by reference. Globe further objects that the phrase "PERSONS with knowledge of relevant facts" is vague, ambiguous and overbroad.

**INTERROGATORY NO. 21:**

For each TOXICOLOGICAL EFFECT YOU are aware of that is associated with the PFAS or PFAS-CONTAINING PRODUCTS present in YOUR TURNOUTS, identify the TOXICOLOGICAL EFFECT, the date YOU first became aware of that TOXICOLOGICAL EFFECT, the source of that knowledge, and any DOCUMENTS RELATING TO or referencing that TOXICOLOGICAL EFFECT.

**RESPONSE TO INTERROGATORY NO. 21:**

Globe objects to this Interrogatory based on General Objections 1-16 and Objections to Plaintiffs' Definitions and Instructions 1-5, which are incorporated herein by reference. Globe also objects to this Interrogatory as vague and ambiguous in its use of the terms "aware of" and "present."

**INTERROGATORY NO. 22:**

For each TOXICOLOGICAL EFFECT identified in response to INTERROGATORY NO. 21, identify the PERSON most knowledgeable about that TOXICOLOGICAL EFFECT and YOUR awareness of it.

**RESPONSE TO INTERROGATORY NO. 22:**

Globe objects to this Interrogatory based on General Objections 1-16 and Objections to Plaintiffs' Definitions and Instructions 1-5, which are incorporated herein by reference. Globe also objects to this Interrogatory as vague and ambiguous in its use of the term "awareness of." Globe further objects that this Interrogatory prematurely calls for the identification of a person most knowledgeable.

**INTERROGATORY NO. 23:**

Are YOU aware of or have YOU ever conducted or contracted with another PERSON to conduct any studies, reports and/or surveys to investigate the HUMAN HEALTH EFFECTS of any PFAS present TURNOUTS?

**RESPONSE TO INTERROGATORY NO. 23:**

Globe objects to this Interrogatory based on General Objections 1-16 and Objections to Plaintiffs' Definitions and Instructions 1-5, which are incorporated herein by reference. Globe also objects to this Interrogatory as vague and ambiguous in its use of the terms "aware of" and "present."

**INTERROGATORY NO. 24:**

If YOUR response to INTERROGATORY NO. 23 is in the affirmative, identify the study, who conducted the study, the results of the study, any PERSONS with knowledge of relevant facts about the study, and all DOCUMENTS RELATING TO or referencing the study.

**RESPONSE TO INTERROGATORY NO. 24:**

Globe objects to this Interrogatory based on General Objections 1-16 and Objections to Plaintiffs' Definitions and Instructions 1-5, which are incorporated herein by reference.

**INTERROGATORY NO. 25:**

For each HUMAN HEALTH EFFECT YOU are aware of that is associated with the PFAS or PFAS-CONTAINING PRODUCTS present in YOUR TURNOUTS, identify the HUMAN HEALTH EFFECT, the date YOU first became aware of that HUMAN HEALTH EFFECT, the source of that knowledge, and any DOCUMENTS RELATING TO or referencing that HUMAN HEALTH EFFECT.

**RESPONSE TO INTERROGATORY NO. 25:**

Globe objects to this Interrogatory based on General Objections 1-16 and Objections to Plaintiffs' Definitions and Instructions 1-5, which are incorporated herein by reference.  Globe also objects to this Interrogatory as vague and ambiguous in its use of the terms "aware of" and "present."

**INTERROGATORY NO. 26:**

For each HEALTH EFFECT identified in response to INTERROGATORY NO. 25, identify the PERSON most knowledgeable about that HEALTH EFFECT and YOUR awareness of it.

**RESPONSE TO INTERROGATORY NO. 26:**

Globe objects to this Interrogatory based on General Objections 1-16 and Objections to Plaintiffs' Definitions and Instructions 1-5, which are incorporated herein by reference.  Globe also objects to this Interrogatory as vague and ambiguous in its use of the term "awareness of."

**INTERROGATORY NO. 27:**

Identify all warnings or information YOU provided to purchasers of YOUR TURNOUTS containing PFAS or PFAS-CONTAINING PRODUCTS, including the date each such warning was given, CONCERNING any ADVERSE EFFECTS of PFAS, other than the TOXICOLOGICAL and HUMAN HEALTH EFECTS discussed above.

**RESPONSE TO INTERROGATORY NO. 27:**

Globe objects to this Interrogatory based on General Objections 1-16 and Objections to Plaintiffs' Definitions and Instructions 1-5, which are incorporated herein by reference.  Globe also objects that the use of the undefined term "warnings or information," as used in this Interrogatory, is vague and ambiguous.

**INTERROGATORY NO. 28:**

Identify any and all alternatives to PFAS or PFAS-CONTAINING PRODUCTS YOU investigated or otherwise considered for use in any TURNOUTS YOU SOLD.

**RESPONSE TO INTERROGATORY NO. 28:**

Globe objects to this Interrogatory based on General Objections 1-16 and Objections to Plaintiffs' Definitions and Instructions 1-5, which are incorporated herein by reference.  Globe also objects to this Interrogatory as vague and ambiguous in its use of the terms "alternatives," "investigated" and "otherwise considered."

**INTERROGATORY NO. 29:**

Identify any and all research YOU conducted or reviewed CONCERNING alternatives to PFAS or PFAS-CONTAINING PRODUCTS for use in any TURNOUTS YOU SOLD.

**RESPONSE TO INTERROGATORY NO. 29:**

Globe objects to this Interrogatory based on General Objections 1-16 and Objections to Plaintiffs' Definitions and Instructions 1-5, which are incorporated herein by reference. Globe also objects to this Interrogatory as vague and ambiguous in its use of the term "alternatives."

**INTERROGATORY NO. 30:**

Describe how and when YOU became aware that TURNOUTS YOU SOLD contained PFAS or PFAS-CONTAINING PRODUCTS.

**RESPONSE TO INTERROGATORY NO. 30:**

Globe objects to this Interrogatory based on General Objections 1-16 and Objections to Plaintiffs' Definitions and Instructions 1-5, which are incorporated herein by reference. Globe also objects to this Interrogatory as vague and ambiguous in its use of the term "aware."

**INTERROGATORY NO. 31:**

If YOU are aware, identify when YOU became aware of the TOXICOLOGICAL EFFECTS of PFAS or PFAS-CONTAINING PRODUCTS.

**RESPONSE TO INTERROGATORY NO. 31:**

Globe objects to this Interrogatory based on General Objections 1-16 and Objections to Plaintiffs' Definitions and Instructions 1-5, which are incorporated herein by reference. Globe also objects to this Interrogatory as vague and ambiguous in its use of the term "aware."

**INTERROGATORY NO. 32:**

If YOU are aware, identify when YOU became aware of the HUMAN HEALTH EFECTS of PFAS or PFAS-CONTAINING PRODUCTS.

**RESPONSE TO INTERROGATORY NO. 32:**

Globe objects to this Interrogatory based on General Objections 1-16 and Objections to Plaintiffs' Definitions and Instructions 1-5, which are incorporated herein by reference. Globe also objects to this Interrogatory as vague and ambiguous in its use of the term "aware."

**INTERROGATORY NO. 33:**

Identify any government law, regulation, or rule that requires or required the use of PFAS or PFAS-CONTAINING PRODUCTS in TURNOUTS.

**RESPONSE TO INTERROGATORY NO. 33:**

Globe objects to this Interrogatory based on General Objections 1-16 and Objections to Plaintiffs' Definitions and Instructions 1-5, which are incorporated herein by reference. Globe also objects to the extent this Interrogatory calls for information from public sources that are equally available to Plaintiffs as to Globe.

Dated: July 8, 2022                                  Respectfully submitted,

                                                    ORRICK, HERRINGTON & SUTCLIFFE LLP

                                                    By:  */s/ Jennifer B. Jones*
                                                        Jennifer B. Jones (PA Bar ID 82291)
                                                        2121 Main Street
                                                        Wheeling, WV  26003-2809
                                                        jennifer.jones@orrick.com
                                                        Telephone:        +1 304 231 2500
                                                        Facsimile:        +1 304 231 2501

                                                        James L. Stengel (NY Bar ID 1800556)
                                                        51 West 52nd Street
                                                        New York, NY  10019-6142
                                                        jstengel@orrick.com
                                                        Telephone:        +1 212 506 5000
                                                        Facsimile:        +1 212 506 5151

                                                        *Counsel for Defendant Globe Manufacturing*
                                                        *Company, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on July 8, 2022, a true and correct copy of the foregoing was served via electronic mail upon the following:

Michael A. London
Tate J. Kunkle
Douglas and London PC
mlondon@douglasandlondon.com
tkunkle@douglasandlondon.com

Paul J. Napoli
Napoli Shkolnik
pnapoli@nsprlaw.com

Scott Summy
Baron & Budd, P.C.
ssummy@baronbudd.com
afffmdlproductions@baronbudd.com

*Plaintiffs' Co-Lead Counsel*

Fred Thompson III
Marissa Bessis
Motley Rice LLC
fthompson@motleyrice.com
mbessis@motleyrice.com

*Plaintiffs' Liaison Counsel*

Elizabeth C. Pritzker
Pritzker Levine LLP
ecp@pritzkerlevine.com

*Plaintiffs' Executive Committee Member*

/s/ *James L. Stengel*
James L. Stengel

**UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | |
|---|---|
| IN RE: AQUEOUS FILM-FORMING FOAMS PRODUCTS LIABILITY LITIGATION | MDL No. 2:18-mn-2873-RMG |

**DEFENDANT HONEYWELL SAFETY PRODUCTS USA, INC.'S OBJECTIONS TO PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, **Defendant Honeywell Safety Products USA, Inc.** ("Honeywell") serves the below objections to Plaintiffs' First Set of Requests For Production ("Document Requests") without waiving and fully reserving all issues of personal jurisdiction as agreed by the parties and the Court.

**GENERAL OBJECTIONS**

1.      In this Aqueous Film-Forming Foams ("AFFF") Products Liability Litigation ("MDL"), the Document Requests are objectionable for a number of reasons, including that they are premature.  While the Document Requests purport to relate to "All Cases," it is clear they pertain only to the small number of cases involving allegations that plaintiffs were injured by both AFFF and firefighter turnout gear ("Turnout Gear" or "TOG").  These Turnout Gear claims, which are alleged against Honeywell and around thirteen other defendants ("TOG Defendants"), do not predicate liability on the use of or exposure to AFFF.  Accordingly, discovery, and in particular, broad sweeping discovery, into the distinctly unique TOG personal injury claims is not appropriate at this time, given the current status of the matters pending in the MDL.  Honeywell makes these objections subject to and without waiver of its position that discovery concerning alleged injuries from turnout gear is premature given the procedural posture of the MDL and expressly reserves its

1

right to assert additional and/or more specific objections to these and any additional or related discovery at the appropriate time.

2.    The Court has conducted a "Science Day" with respect to AFFF only.  The scientific issues underlying the TOG claims, however, are fundamentally different from those underlying the AFFF claims.  Turnout Gear is not one product or one component, and it is not always used under the same conditions as AFFF.  Scientific questions underlying TOG personal injury claims involve different chemicals with different properties and toxicological profiles; different possible exposure pathways (if any); different theoretical exposure concentrations (if any), and a host of other issues that distinguish TOG claims from those involving AFFF.  The Science Day held for AFFF does not inform the questions of alleged exposure or adverse effects to the plaintiffs claiming harm caused by turnout gear.

3.    Discovery against the TOG Defendants is also premature because the existing plaintiff fact sheets are not relevant to Turnout Gear.  The plaintiff fact sheets focus on AFFF and contain little to no information pertaining to the TOG claims and plaintiffs have not otherwise provided information concerning their alleged use of turnout gear, such as the types or brands of turnout gear that was used or when.  Accordingly, there is no information provided from which Honeywell can determine why Honeywell is named as a defendant or Honeywell's role in any plaintiff's alleged injuries from turnout gear.  Under the procedures and protocols applicable in this MDL, broad and burdensome discovery requests should not be served until after the plaintiffs have completed fact sheets that provide useful foundation information about the TOG claims, especially given the fact that defendants are precluded from serving their own discovery requests on the TOG plaintiffs at this time.  The TOG defendants are prepared to meet and confer with plaintiffs' counsel to discuss an appropriate fact sheet for plaintiffs alleging TOG claims.

4.    The Document Requests are premature because Honeywell has not yet had the opportunity to demonstrate the speculative nature of the claims asserted against it, which should be dismissed by the MDL court on that basis.  Before being forced to engage in broad, expansive

and burdensome discovery, Honeywell should be given an opportunity, if it opts to do so, to seek the Rule 12 motion dismissal of the claims against it.

5.      Case Management Order No. 2 (Mar. 20, 2019) required the Plaintiffs' Executive Committee ("PEC") to "[d]evelop and propose to the Court schedules for the commencement, execution and completion of all discovery on behalf of all plaintiffs." To Honeywell's knowledge, the PEC has not satisfied that requirement as to any TOG claim or with respect to TOG Defendants; indeed, no TOG claim had been filed at the time CMO 2 was entered and discovery commenced against the AFFF defendants. In short, there is no indication the Court contemplated, much less authorized, broad and one-sided general discovery against the TOG Defendants.

## ADDITIONAL RECURRING OBJECTIONS

6.      Honeywell objects to the Document Requests to the extent that they seek documents protected from disclosure by the attorney-client privilege, work-product immunity, joint-defense privilege, common interest privilege, or any other privilege or protection afforded by applicable law. In the event of an inadvertent disclosure of privileged/protected documents, the privilege/protection shall not be waived, and such documents will be subject to claw-back and other remedies, consistent with Federal Rule of Civil Procedure 26(b)(5)(B) and Federal Rule of Evidence 502(b).

7.      Honeywell objects to the Document Requests to the extent that they seek documents that constitute, contain, or otherwise disclose trade secrets or other proprietary or confidential information. In the event Honeywell is required to produce such information in the MDL, Honeywell will only do so subject to an appropriate protective order. Honeywell further objects to producing any document that is subject to a confidentiality obligation owed by Honeywell to a third party.

8.      The Document Requests are objectionable on the grounds that they are overly broad, unduly burdensome and oppressive, particularly but not exclusively to the extent they demand the production of "all documents," "all communications," and similar sweeping sets of

documents without limitation; seek a range of documents neither relevant to any claim or defense in the TOG cases; and impose obligations on Honeywell that are disproportionate to the needs of genuine TOG claim discovery and/or Rule 26(b)(1).

9.    Several requests are without any temporal limitation, and the general time period specified in the Document Requests (1970) (Instruction 13) is so early in time as to be overbroad, unduly burdensome and virtually meaningless.

10.    Honeywell objects that several requests are without any geographic limitation and therefore seek information that is not relevant to any claim or defense in this litigation.

11.    Honeywell objects that several requests call for information about products not used by or associated with any plaintiff in this litigation or sold to any defendant in this litigation and, therefore, seek information that is not relevant to any claim or defense in this litigation.

12.    Honeywell objects to any Request to the extent that it improperly assumes facts, specifically, that TURNOUTS are associated with adverse HUMAN HEALTH or TOXICOLOGICAL EFFECTS, and expressly rejects any such suggestion.

13.    Honeywell objects to Plaintiffs' Discovery to the extent that it seeks documents that are not subject to Honeywell's ownership, possession, custody, or control. In addition, some requests seek information that is publicly available and, where appropriate, Honeywell refers to documents available to Plaintiffs through public sources

## OBJECTIONS TO PLAINTIFFS' DEFINITIONS AND INSTRUCTIONS

Honeywell objects as specified below to the Definitions and Instructions in the Document Requests. Documents may be withheld on the basis of these objections.

1.    Honeywell objects to each definition and each instruction to the extent that it purports to impose on Honeywell obligations beyond those set out in the Federal Rules of Civil Procedure or any existing CMO, and therefore causes the requests to be overly broad, unduly

4

burdensome, or requiring the production of documents or disclosure of information that is not reasonably accessible. By way of example only, Honeywell objects to Instruction No. 7, which purports to require the creation of a log of "destroyed, lost, discarded," etc. documents, and Instruction No. 11, which purports to require Defendants to produce documents that are not "relevant or responsive to the[ ] Requests.".

2.       Honeywell objects to each definition that is unintelligible, vague or ambiguous, or would so expand the scope of a request as to impose an unreasonable burden or to seek information not relevant to the claims or defenses relative to the TOG personal injury claims. Examples of such problematic definitions include "Communications," "Internal Communications," "Plaintiffs," "Relating To" or "Concerning," and "You, "Your," and "Defendant."

3.       A number of the definitions are contradictory and render individual Document Requests unintelligible. For example, the terms "Sale," "Sell," and "Sold" are limited to the sale of "Turnouts," but then those terms are used in requests that do not pertain to Turnouts. The definitions of "Manufacturing Defendant(s)," "PFAS," "PFOA," "PFOS," "PFAS-Containing Products," "Produce," "Turnout Defendant," and "Turnouts" are vague, ambiguous, and/or incomplete.

4.       Honeywell objects to the definitions of "Adverse Effects," "Human Health Effect," and "Toxicological Effect(s) or Toxicological Impact(s)," as vague, ambiguous, and unsupported in science, medicine, law, and/or common usage.

5.       Honeywell will construe the terms used in the Document Requests based on their ordinary meaning, and based on the facts that are relevant to the TOG claims and defenses. Specifically:

      a.   Honeywell will construe the term "ADVERSE EFFECTS" to refer to harmful or negative consequences that are presently known to Honeywell, if any.

      b.   Honeywell will construe the term "PFAS-CONTAINING PRODUCTS" to refer to products presently known to Honeywell to be made with material that

5

is a PFAS and/or contain a residual of one or more PFAS, as that term is defined below.

c. Honeywell will construe the term "PFAS" to refer to the per- and polyfluoroalkyl substances that are or may be used as a component in certain products produced by Honeywell and sold in and for use in the United States. By construing this definition to correspond to multiple PFAS with different properties, SMI does not concede that any specific PFAS is present in TOG used by or associated with any plaintiff, or that the same specific PFAS chemicals are present in all TOG or any component thereof.

d. Honeywell will construe the term "PFOA" to refer to the chemical compound perfluorooctanoic acid.

e. Honeywell will construe the term "PFOS" to refer to the chemical compound perfluorooctanesulfonic acid.

6. Honeywell objects to each definition and each instruction that purports to require a legal conclusion regarding the relationship between certain persons and/or entities; or may encompass relationships of which Honeywell is not aware.

7. Honeywell objects to each definition and each instruction, including but not limited to Instructions Nos. 4 and 5, that is inconsistent with the protocol set forth in the MDL court's ESI Order.

8. Any eventual production by Honeywell will be on a rolling basis, subject to Honeywell's obligations to supplement, to include responsive documents identified and produced only after a reasonable search and production effort (and subject to all applicable objections). Any such production will be made pursuant to the protective order in the MDL and Federal Rule of Civil Procedure ("FRCP") 34.

## REQUESTS FOR PRODUCTION

**REQUEST NO. 1:**

All DOCUMENTS CONCERNING warnings YOU provided about any HUMAN HEALTH EFFECTS of TURNOUTS containing PFAS or PFAS-CONTAINING PRODUCTS.

**RESPONSE:** Honeywell objects to this request based on General and Additional Recurring Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference.

**REQUEST NO. 2:**

All DOCUMENTS CONCERNING warnings YOU provided about any TOXICOLOGICAL EFFECTS of TURNOUTS containing PFAS or PFAS-CONTAINING PRODUCTS.

**RESPONSE:** Honeywell objects to this request based on General and Additional Recurring Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference.

**REQUEST NO. 3:**

All DOCUMENTS CONCERNING warnings YOU provided about any ADVERSE EFFECTS of TURNOUTS containing PFAS or PFAS-CONTAINING PRODUCTS, other than the HUMAN HEALTH and TOXICOLOGICAL EFFECTS discussed above.

**RESPONSE:** Honeywell objects to this request based on General and Additional Recurring Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference. Honeywell objects further that the phrase "ADVERSE EFFECTS of any TURNOUTS, other than the HUMAN HEALTH and TOXICOLOGICAL EFFECTS discussed above," is vague and unintelligible.

**REQUEST NO. 4:**

All DOCUMENTS CONCERNING instructions YOU provided RELATING TO the HANDLING of any TURNOUTS containing PFAS or PFAS-CONTAINING PRODUCTS YOU SOLD.

**RESPONSE:** Honeywell objects to this request based on General and Additional Recurring Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference.

**REQUEST NO. 5:**

All DOCUMENTS YOU used and/or relied on in preparing instructions YOU provided CONCERNING the HANDLING of any TURNOUTS containing PFAS or PFAS-CONTAINING PRODUCTS YOU SOLD.

**RESPONSE:** Honeywell objects to this request based on General and Additional Recurring Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference.

**REQUEST NO. 6:**

All DOCUMENTS CONCERNING any contract and/or agreement between YOU and any MANUFACTURING DEFENDANT(S) for the SALE of TURNOUTS.

**RESPONSE:** Honeywell objects to this request based on General and Additional Recurring Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference.

**REQUEST NO. 7:**

All DOCUMENTS CONCERNING any contract and/or agreement between YOU and any MANUFACTURING DEFENDANT(S) for the purchase of materials containing PFAS or PFAS-CONTAINING PRODUCTS.

**RESPONSE:** Honeywell objects to this request based on General and Additional Recurring Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference.

**REQUEST NO. 8:**

All COMMUNICATIONS between YOU and any MANUFACTURING DEFENDANT(S) CONCERNING PFAS and/or the presence of PFAS or PFAS-CONTAINING PRODUCTS in TURNOUTS.

**RESPONSE:** Honeywell objects to this request based on General and Additional Recurring Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference. Honeywell also objects that this Request uses the undefined and vague phrase "presence."

**REQUEST NO. 9:**

All DOCUMENTS regarding any formulation and/or design of TURNOUTS that did not contain PFAS or PFAS-CONTAINING PRODUCTS.

**RESPONSE:** Honeywell objects to this request based on General and Additional Recurring Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference. Honeywell also objects that this Request uses the undefined and vague phrase "formulation and/or design." Honeywell further objects to the extent this Request calls for the production of documents about or referring to TURNOUTS not manufactured, distributed or sold by Honeywell.

**REQUEST NO. 10:**

All COMMUNICATIONS between YOU and any MANUFACTURING DEFENDANT(S) CONCERNING any formulation and/or design of TURNOUTS that did not contain PFAS or PFAS-CONTAINING PRODUCTS.

**RESPONSE:** Honeywell objects to this request based on General and Additional Recurring Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference. Honeywell also objects that this Request uses the undefined and vague phrase "formulation and/or design." Honeywell further objects to the extent this Request calls for the production of documents about or referring to TURNOUTS not manufactured, distributed or sold by Honeywell.

**REQUEST NO. 11:**

All DOCUMENTS identifying the SKUs for TURNOUTS containing PFAS or PFAS-CONTAINING PRODUCTS YOU SOLD.

**RESPONSE:** Honeywell objects to this request based on General and Additional Recurring Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference. Honeywell also objects that this Request uses the undefined and vague term "SKUs."

**REQUEST NO. 12:**

All DOCUMENTS CONCERNING the number and dollar value of sales of each TURNOUT SKU YOU SOLD.

**RESPONSE:** Honeywell objects to this request based on General and Additional Recurring Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference. Honeywell also objects that this Request uses the undefined and vague term "SKUs."

**REQUEST NO. 13:**

All purchase agreements, purchase contracts, invoices, supply contracts, receipts, or other documentation evidencing YOUR sale, manufacture, and/or distribution of YOUR TURNOUTS.

**RESPONSE:**  Honeywell objects to this request based on General and Additional Recurring Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference.  Honeywell also objects that this Request is overbroad and seeks information that is disproportionate to the claims and/or named plaintiffs.

**REQUEST NO. 14:**

All DOCUMENTS CONCERNING any contracts and/or agreements that YOU had with suppliers, wholesalers, distributors, or any other entity that sold YOUR TURNOUTS.

**RESPONSE:**  Honeywell objects to this request based on General and Additional Recurring Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference.  Honeywell also objects that this Request is overbroad and seeks information that is disproportionate to the claims and/or named plaintiffs.

**REQUEST NO. 15:**

All purchase orders, invoices, contracts, and/or other related materials that provide information about the sale, manufacture, and/or distribution of YOUR TURNOUTS, including but not limited to the dates when YOUR TURNOUTS were sold, the quantity YOU included in each shipment, and the amount (in dollars) YOU were paid for each shipment.

**RESPONSE:**  Honeywell objects to this request based on General and Additional Recurring Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference.  Honeywell also objects that this Request is overbroad and seeks information that is disproportionate to the claims and/or named plaintiffs.

**REQUEST NO. 16:**

All DOCUMENTS RELATING TO the procedures and protocols for maintaining sales, production, volume, and invoicing records for YOUR TURNOUTS.

**RESPONSE:**  Honeywell objects to this request based on General and Additional Recurring Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference.  Honeywell also objects that this Request uses the undefined and vague terms "procedures," and "protocols."  Further, Honeywell objects that this Request calls for "discovery about discovery."

**REQUEST NO. 17:**

All DOCUMENTS reflecting any assessment and/or analysis of YOUR share of the market for TURNOUTS from 1970 to present.

**RESPONSE:**  Honeywell objects to this request based on General and Additional Recurring Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference.  Honeywell also objects that this Request uses the undefined and vague terms "assessment," "analysis," and "market."  Further, Honeywell objects that this Request improperly seeks to impose any liability on it based on markets or any alleged share thereof.

**REQUEST NO. 18:**

All studies and/or reports CONCERNING any HUMAN HEALTH EFFECTS posed by PFAS or PFAS-CONTAINING PRODUCTS in TURNOUTS.

**RESPONSE:**  Honeywell objects to this request based on General and Additional Recurring Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference.  Honeywell also objects that this Request uses the undefined and vague phrase "studies and/or reports."

**REQUEST NO. 19:**

All studies and/or reports CONCERNING any TOXICOLOGICAL EFFECTS posed by PFAS or PFAS-CONTAINING PRODUCTS in TURNOUTS.

**RESPONSE:**  Honeywell objects to this request based on General and Additional Recurring Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference.  Honeywell also objects that this Request uses the undefined and vague phrase "studies and/or reports."

**REQUEST NO. 20:**

All COMMUNICATIONS between YOU and other PERSONS CONCERNING any HUMAN HEALTH EFFECTS of PFAS or PFAS-CONTAINING PRODUCTS in TURNOUTS.

**RESPONSE:**  Honeywell objects to this request based on General and Additional Recurring Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference.

**REQUEST NO. 21:**

All COMMUNICATIONS between YOU and other PERSONS CONCERNING any TOXICOLOGICAL EFFECTS of PFAS or PFAS-CONTAINING PRODUCTS in TURNOUTS.

**RESPONSE:** Honeywell objects to this request based on General and Additional Recurring Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference.

**REQUEST NO. 22:**

All historic and current Material Safety Data Sheets ("MSDS") for any TURNOUTS containing PFAS or PFAS-CONTAINING PRODUCTS YOU SOLD.

**RESPONSE:** Honeywell objects to this request based on General and Additional Recurring Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference.

**REQUEST NO. 23:**

All DOCUMENTS, including but not limited to catalogues, statements circulars, manuals, brochures, reports, and advertisements, which mention, describe, or otherwise refer to the virtues, qualities, characteristics, capabilities, and/or capacities of any TURNOUTS containing PFAS or PFAS-CONTAINING PRODUCTS YOU SOLD.

**RESPONSE:** Honeywell objects to this request based on General and Additional Recurring Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference.

**REQUEST NO. 24:**

All COMMUNICATIONS between YOU and any trade or industry organization CONCERNING HUMAN HEALTH EFFECTS of TURNOUTS containing PFAS or PFAS-CONTAINING PRODUCTS.

**RESPONSE:** Honeywell objects to this request based on General and Additional Recurring Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference.

**REQUEST NO. 25:**

All COMMUNICATIONS between YOU and any trade or industry organization CONCERNING TOXICOLOGICAL EFFECTS of TURNOUTS containing PFAS or PFAS-CONTAINING PRODUCTS.

**RESPONSE:**  Honeywell objects to this request based on General and Additional Recurring Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference.

**REQUEST NO. 26:**

All COMMUNICATIONS between YOU and any trade or industry organization CONCERNING ADVERSE EFFECTS of TURNOUTS containing PFAS or PFAS-CONTAINING PRODUCTS, other than the HUMAN HEALTH and TOXICOLOGICAL EFFECTS addressed above.

**RESPONSE:**  Honeywell objects to this request based on General and Additional Recurring Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference.

**REQUEST NO. 27:**

All COMMUNICATIONS between YOU and any trade or industry organization CONCERNING the safety of TURNOUTS containing PFAS or PFAS-CONTAINING PRODUCTS.

**RESPONSE:**  Honeywell objects to this request based on General and Additional Recurring Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference.  Honeywell also objects that this Request is overbroad and seeks information that is disproportionate to the claims and/or named plaintiffs.

**REQUEST NO. 28:**

All DOCUMENTS CONCERNING statements issued by YOU or on YOUR behalf regarding the HUMAN HEALTH EFFECTS associated with exposure to PFAS or PFAS-CONTAINING PRODUCTS.

**RESPONSE:**  Honeywell objects to this request based on General and Additional Recurring Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference.  Honeywell also objects that this Request uses the undefined and vague term "exposure."

**REQUEST NO. 29:**

All DOCUMENTS CONCERNING statements issued by YOU or on YOUR behalf regarding the TOXICOLOGICAL EFFECTS associated with exposure to PFAS or PFAS-CONTAINING PRODUCTS.

13

**RESPONSE:**  Honeywell objects to this request based on General and Additional Recurring Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference.  Honeywell also objects that this Request uses the undefined and vague term "exposure."

**REQUEST NO. 30:**

All COMMUNICATIONS between YOU and any public relations and/or media consulting firms or agencies regarding any TOXICOLOGICAL EFFECTS of PFAS or PFAS-CONTAINING PRODUCTS.

**RESPONSE:**  Honeywell objects to this request based on General and Additional Recurring Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference.

**REQUEST NO. 31:**

All COMMUNICATIONS between you and any public relations and/or media consulting firms or agencies CONCERNING any HUMAN HEALTH EFFECTS of PFAS or PFAS-CONTAINING PRODUCTS.

**RESPONSE:**  Honeywell objects to this request based on General and Additional Recurring Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference.

**REQUEST NO. 32:**

All DOCUMENTS regarding the biopersistence and/or the bioaccumulation of PFAS, PFOA, and/or PFOS.

**RESPONSE:**  Honeywell objects to this request based on General and Additional Recurring Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference. Honeywell also objects that this Request calls for information that is neither relevant nor proportional to the needs of this litigation to the extent it seeks information about PFAS, PFOA, and/or PFOS that are not components in turnouts used by or associated with any plaintiff in this litigation or sold to any defendant in this litigation.

**REQUEST NO. 33:**

All DOCUMENTS regarding studies and/or reports CONCERNING the amount of PFAS or PFAS-CONTAINING PRODUCTS in any TURNOUTS YOU SOLD.

**RESPONSE:** Honeywell objects to this request based on General and Additional Recurring Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference. Honeywell further objects to the phrase "amount of PFAS or PFAS-CONTAINING PRODUCTS" as vague and ambiguous. Honeywell also objects that this Request uses the undefined and vague phrase "studies and/or reports."

**REQUEST NO. 34:**

All COMMUNICATIONS regarding studies and/or reports CONCERNING the amount of PFAS or PFAS-CONTAINING PRODUCTS in any TURNOUTS YOU SOLD.

**RESPONSE:** Honeywell objects to this request based on General and Additional Recurring Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference. Honeywell further objects to the phrase "amount of PFAS or PFAS-CONTAINING PRODUCTS" as vague and ambiguous. Honeywell also objects that this Request uses the undefined and vague phrase "studies and/or reports."

**REQUEST NO. 35:**

All DOCUMENTS regarding studies and/or reports of TOXICOLOGICAL EFFECTS of PFAS, PFOA and/or PFOS conducted by YOU or on YOUR behalf.

**RESPONSE:** Honeywell objects to this request based on General and Additional Recurring Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference. Honeywell also objects that this Request uses the undefined and vague phrase "studies and/or reports."

**REQUEST NO. 36:**

All DOCUMENTS and COMMUNICATIONS between YOU and any MANUFACTURING DEFENDANT(S) CONCERNING any TOXICOLOGICAL EFFECTS of PFAS or PFAS-CONTAINING PRODUCTS in TURNOUTS.

**RESPONSE:** Honeywell objects to this request based on General and Additional Recurring Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference. Honeywell further objects that this request is duplicative of Request #7.

**REQUEST NO. 37:**

All DOCUMENTS and COMMUNICATIONS between YOU and any MANUFACTURING DEFENDANT(S) CONCERNING any HUMAN HEALTH EFFECTS of PFAS or PFAS-CONTAINING PRODUCTS in TURNOUTS.

2:18-mn-02873-RMG    Date Filed 09/16/22    Entry Number 2604-4    Page 53 of 302

**RESPONSE:** Honeywell objects to this request based on General and Additional Recurring Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference. Honeywell further objects that this request is duplicative of Request #7.

**REQUEST NO. 38:**

All DOCUMENTS and COMMUNICATIONS between YOU and any MANUFACTURING DEFENDANT(S) CONCERNING any adverse effects of PFAS or PFAS-CONTAINING PRODUCTS in TURNOUTS, other than the TOXICOLOGICAL and HUMAN HEALTH EFFECTS discussed above.

**RESPONSE:** Honeywell objects to this request based on General and Additional Recurring Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference. Honeywell further objects that this request is duplicative of Request #7.

**REQUEST NO. 39:**

All DOCUMENTS regarding studies or research conducted by YOU or on YOUR behalf CONCERNING the use of non-PFAS materials in the TURNOUTS YOU SOLD.

**RESPONSE:** Honeywell objects to this request based on General and Additional Recurring Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference. Honeywell also objects that this Request uses the undefined and vague terms "studies and/or reports" and "non-PFAS materials."

**REQUEST NO. 40:**

All DOCUMENTS CONCERNING the effectiveness of non-PFAS materials in the TURNOUTS YOU SOLD.

**RESPONSE:** Honeywell objects to this request based on General and Additional Recurring Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference. Honeywell also objects that this Request uses the undefined and vague terms "effectiveness" and "non-PFAS materials."

**REQUEST NO. 41:**

All COMMUNICATIONS CONCERNING the use of non-PFAS materials in the TURNOUTS YOU SOLD.

16

**RESPONSE:**  Honeywell objects to this request based on General and Additional Recurring Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference.  Honeywell also objects that the use of the undefined term "non-PFAS materials," as used in this Request, is vague and ambiguous.

**REQUEST NO. 42:**

All DOCUMENTS CONCERNING the development and adoption of warning DOCUMENTS, instructions, and/or labels on TURNOUTS containing PFAS or PFAS-CONTAINING PRODUCTS YOU SOLD.

**RESPONSE:**  Honeywell objects to this request based on General and Additional Recurring Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference.

**REQUEST NO. 43:**

All DOCUMENTS RELATING TO any insurance coverage or request for any insurance coverage in connection with any loss, claim, damage or request relating or referring to this MDL or any other action arising from the use of TURNOUTS containing PFAS or PFAS-CONTAINING PRODUCTS YOU SOLD.

**RESPONSE:**  Honeywell objects to this request based on General and Additional Recurring Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference.

**REQUEST NO. 44:**

All DOCUMENTS RELATING TO any meetings or correspondence with, or submissions to, the National Fire Protection Association concerning TURNOUTS.

**RESPONSE:**  Honeywell objects to this request based on General and Additional Recurring Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference.  Honeywell also objects that this Request is overbroad and seeks information that is disproportionate to the claims and/or named plaintiffs.

**REQUEST NO. 45:**

All COMMUNICATIONS between YOU and the National Fire Protection Association CONCERNING TURNOUTS.

**RESPONSE:**  Honeywell objects to this request based on General and Additional Recurring Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference.  Honeywell also objects that this Request is duplicative, overbroad and seeks information that is disproportionate to the claims and/or named plaintiffs.

**REQUEST NO. 46:**

All COMMUNICATIONS between YOU and any MANUFACTURING DEFENDANT(S) CONCERNING the National Fire Protection Association.

**RESPONSE:**  Honeywell objects to this request based on General and Additional Recurring Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference.  Honeywell also objects that this Request is overbroad and seeks information that is disproportionate to the claims and/or named plaintiffs.

**REQUEST NO. 47:**

All DOCUMENTS CONCERNING any financial contributions or payments from YOU to the National Fire Protection Association.

**RESPONSE:**  Honeywell objects to this request based on General and Additional Recurring Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference.

**REQUEST NO. 48:**

All DOCUMENTS RELATING TO any meetings or correspondence with, or submissions to, the International Association of Fire Fighters concerning TURNOUTS.

**RESPONSE:**  Honeywell objects to this request based on General and Additional Recurring Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference.  Honeywell also objects that this Request is overbroad and seeks information that is disproportionate to the claims and/or named plaintiffs.

**REQUEST NO. 49:**

All COMMUNICATIONS between YOU and the International Association of Fire Fighters concerning TURNOUTS.

**RESPONSE:**  Honeywell objects to this request based on General and Additional Recurring Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference.  Honeywell also objects that this Request is overbroad and seeks information that is disproportionate to the claims and/or named plaintiffs.

**REQUEST NO. 50:**

All COMMUNICATIONS between YOU and any MANUFACTURING DEFENDANT(S) CONCERNING the International Association of Fire Fighters.

**RESPONSE:** Honeywell objects to this request based on General and Additional Recurring Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference.  Honeywell also objects that this Request is overbroad and seeks information that is disproportionate to the claims and/or named plaintiffs.

**REQUEST NO. 51:**

All DOCUMENTS CONCERNING any financial contributions or payments from YOU to the International Association of Fire Fighters.

**RESPONSE:**  Honeywell objects to this request based on General and Additional Recurring Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference.  Honeywell also objects that this Request is overbroad and seeks information that is disproportionate to the claims and/or named plaintiffs.

**REQUEST NO. 52:**

All DOCUMENTS CONCERNING any disclosure that TURNOUTS YOU SOLD contained PFAS or PFAS-CONTAINING PRODUCTS.

**RESPONSE:**  Honeywell objects to this request based on General and Additional Recurring Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference. Honeywell also objects that this Request uses the undefined and vague term "disclosure."

**REQUEST NO. 53:**

All DOCUMENTS RELATING TO any meetings or correspondence with, or submission to, any governmental body, trade association, industry group, or lobbying group regarding PFAS or PFAS-CONTAINING PRODUCTS.

**RESPONSE:**  Honeywell objects to this request based on General and Additional Recurring Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference.

Respectfully submitted this the 8ᵗʰ of July 2022.

**WOMBLE BOND DICKINSON (US) LLP**

Kurt D. Weaver, N.C. Bar No. 27146
555 Fayetteville Street, Suite 1100
Raleigh, NC 27601
(919) 755-8163 Telephone
(919) 755-6770 Facsimile
Email: Kurt.Weaver@wbd-us.com

Sonny S. Haynes, N.C. Bar No. 41303
One West Fourth Street
Winston-Salem, NC 27101
(336) 721-3632 Telephone
(336) 726-2227 Facsimile
Email: Sonny.Haynes@wbd-us.com

*Attorneys for Defendant Honeywell Safety Products USA, Inc.*

## CERTIFICATE OF SERVICE

I certify that on July 8, 2022, a true and correct copy of the foregoing was served via electronic mail upon the following:

**Plaintiffs**
mlondon@douglasandlondon.com
pnapoli@nsprlaw.com
afffmdlproductions@baronbudd.com
ssummy@baronbudd.com
tkunkle@douglasandlondon.com
fthompson@motleyrice.com
mbessis@motleyrice.com
ecp@pritzkerlevine.com
**Defendants**
molsen@mayerbrown.com
dring@mayerbrown.com
bduffy@duffyandyoung.com
pjones@duffyandyoung.com
david.dukes@nelsonmullins.com
lmontgomery@wc.com
jpetrosinelli@wc.com
talfermann@mayerbrown.com
afffmdlproductions@duffyandyoung.com


**WOMBLE BOND DICKINSON (US) LLP**

Kurt D. Weaver, N.C. Bar No. 27146

*Attorneys for Defendant Honeywell Safety Products USA, Inc.*

21

**UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | |
|---|---|
| IN RE: AQUEOUS FILM-FORMING FOAMS PRODUCTS LIABILITY LITIGATION | MDL No. 2:18-mn-2873-RMG |

**DEFENDANT HONEYWELL SAFETY PRODUCTS USA, INC.'S OBJECTIONS TO PLAINTIFFS' FIRST SET OF INTERROGATORIES**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, **Defendant Honeywell Safety Products USA, Inc.** ("Honeywell") serves the below objections to Plaintiffs' First Set of Interrogatories ("Interrogatories").

**GENERAL OBJECTIONS**

1.      In this Aqueous Film-Forming Foams ("AFFF") Products Liability Litigation ("MDL"), the Interrogatories are objectionable for a number of reasons, including that they are premature.  While the Interrogatories purport to relate to "All Cases," it is clear they pertain only to the small number of cases involving allegations that plaintiffs were injured by both AFFF and firefighter turnout gear ("Turnout Gear" or "TOG").   These Turnout Gear claims, which are alleged against Honeywell and around thirteen other defendants (or "TOG Defendants"), do not predicate liability on the use of or exposure to AFFF.  Accordingly, discovery, and in particular, broad sweeping discovery, into the distinctly unique TOG personal injury claims is not appropriate at this time, given the current status of the matters pending in the MDL.  Honeywell makes these objections subject to and without waiver of its position that discovery concerning alleged injuries from turnout gear is premature given the procedural posture of the MDL and expressly reserves its

1

right to assert additional and/or more specific objections to these and any additional or related discovery at the appropriate time.

2.      The Court has conducted a "Science Day" with respect to AFFF only.  The scientific issues underlying the TOG claims, however, are fundamentally different from those underlying the AFFF claims.  Turnout Gear is not one product or one component, and it is not always used under the same conditions as AFFF.  Scientific questions underlying TOG personal injury claims they involve different chemicals with different properties and toxicological profiles, different possible exposure pathways (if any), different theoretical exposure concentrations (if any), and a host of other issues that distinguish TOG claims from those involving AFFF.  The Science Day held for AFFF does not inform the questions of alleged exposure or adverse effects to plaintiffs claiming harm caused by turnout gear. Before discovery is authorized against the TOG Defendants, the MDL court should conduct a Science Day relative to the Turnout Gear claims so the Court would have some idea about the nature and scope of the TOG claims.  It is difficult to fathom that the MDL court has authorized general liability discovery with respect to claims it does not understand and may not even know exist.

3.      Discovery against the TOG Defendants is also premature because the existing plaintiff fact sheets are not relevant to Turnout Gear.  The plaintiff fact sheets focus on AFFF and contain little to no information pertaining to the TOG claims and plaintiffs have not otherwise provided information concerning their alleged use of turnout gear, such as the types or brands of turnout gear that was used or when.  Accordingly, there is no information provided from which Honeywell can determine why Honeywell is named as a defendant or Honeywell's role in any plaintiff's alleged injuries from turnout gear.  Under the procedures and protocols applicable in this MDL, broad and burdensome discovery Interrogatories should not be served until after the plaintiffs have completed fact sheets that provide useful foundation information about the TOG claims, especially given the fact that defendants are precluded from serving their own discovery Interrogatories on the TOG plaintiffs at this time.  The TOG defendants are prepared to meet and

confer with plaintiffs' counsel to discuss an appropriate fact sheet for plaintiffs alleging TOG claims.

4.      The Interrogatories are premature because Honeywell has not yet had the opportunity to demonstrate the speculative nature of the claims asserted against it, which should be dismissed by the MDL court on that basis. Before being forced to engage in broad, expansive and burdensome discovery, Honeywell should be given an opportunity, if it opts to do so, to seek the Rule 12 motion dismissal of the claims against it.

5.      Case Management Order No. 2 (Mar. 20, 2019) required the Plaintiffs' Executive Committee ("PEC") to "[d]evelop and propose to the Court schedules for the commencement, execution and completion of all discovery on behalf of all plaintiffs." To Honeywell's knowledge, the PEC has not satisfied that requirement as to any TOG claim or with respect to TOG Defendants; indeed, no TOG claim had been filed at the time CMO 2 was entered and discovery commenced against the AFFF defendants. In short, there is no indication the Court contemplated, much less authorized, broad and one-sided general discovery against the TOG Defendants.

## ADDITIONAL RECURRING OBJECTIONS

6.      Honeywell objects to the Interrogatories to the extent that they seek documents protected from disclosure by the attorney-client privilege, work-product immunity, joint-defense privilege, common interest privilege, or any other privilege or protection afforded by applicable law. In the event of an inadvertent disclosure of privileged/protected documents, the privilege/protection shall not be waived, and such documents will be subject to claw-back and other remedies, consistent with Federal Rule of Civil Procedure 26(b)(5)(B) and Federal Rule of Evidence 502(b).

7.      Honeywell objects to the Interrogatories to the extent that they seek documents that constitute, contain, or otherwise disclose trade secrets or other proprietary or confidential information. In the event Honeywell is required to produce such information in the MDL, Honeywell will only do so subject to an appropriate protective order. Honeywell further objects

to producing any document that is subject to a confidentiality obligation owed by Honeywell to a third party.

8.      Honeywell objects to each and every Interrogatory that seeks the address, telephone numbers, or other personal information of individuals.  In many or most cases, Honeywell does not possess such information, but where it may, Honeywell objects to any such Interrogatory as unduly invasive and unnecessarily violative of those individuals' privacy rights as well as of Honeywell's duty to safeguard the personal information of Honeywell's employees or former employees.  Any current or former Honeywell employee should be contacted only through counsel of record in the MDL.

9.      The Interrogatories are objectionable on the grounds that they are overly broad, unduly burdensome and oppressive, particularly but not exclusively to the extent they demand that Honeywell "identify" or "describe" "all documents, communications," persons or things listed in the Interrogatory or seek similar sweeping sets of documents or records without limitation; seek a range of documents neither relevant to any claim or defense in the TOG cases; and impose obligations on Honeywell that are disproportionate to the needs of genuine TOG claim discovery and/or Rule 26(b)(1).

10.      Several Interrogatories are without any temporal limitation, and the general time period specified in the Interrogatories (1970) (Instruction 8) is so early in time as to be overbroad, unduly burdensome and virtually meaningless.

11.      Honeywell objects that several Interrogatories are without any geographic limitation and therefore seek information that is not relevant to any claim or defense in this litigation.

12.      Honeywell objects that several Interrogatories call for information about products not used by or associated with any plaintiff in this litigation or sold to any defendant in this

litigation and, therefore, seek information that is not relevant to any claim or defense in this litigation.

13.     Honeywell objects to any Interrogatory to the extent that it improperly assumes facts, specifically, that TURNOUTS or PFAS-CONTAINING PRODUCTS are associated with adverse HUMAN HEALTH or TOXICOLOGICAL EFFECTS, and expressly rejects any such suggestion.

14.     Honeywell objects to Plaintiffs' Discovery to the extent that it seeks documents that are not subject to Honeywell's ownership, possession, custody, or control.  In addition, some Interrogatories seek information that is publicly available and, where appropriate, Honeywell refers to documents available to Plaintiffs through public sources.

15.     Honeywell expressly reserves all rights, including, in particular but not exclusively, the right to respond to any Interrogatory, as appropriate, by "(1) specifying the records that must be reviewed in sufficient detail to enable [Plaintiffs] to locate and identify them as readily as the responding party could; and (2) giving [Plaintiffs] a reasonable opportunity to examine and audit the records and to make copies, compilations, abstracts, or summaries."  Federal Rule of Civil Procedure 33(d).

## OBJECTIONS TO PLAINTIFFS' DEFINITIONS AND INSTRUCTIONS

Honeywell objects as specified below to the Definitions and Instructions in the Interrogatories.  Documents may be withheld on the basis of these objections.

1.     Honeywell objects to each definition and each instruction to the extent that it purports to impose on Honeywell obligations beyond those set out in the Federal Rules of Civil Procedure or any existing CMO, and therefore causes the Interrogatories to be overly broad, unduly burdensome, or requiring the production of documents or disclosure of information that is

5

not reasonably accessible.  By way of example only, SMI objects to Instruction Nos. 4 and 7, which purport to impose privilege log obligations beyond those required by Federal Rule of Civil Procedure 26(b)(5)(A).

2.      Honeywell objects to each definition that is unintelligible, vague or ambiguous, or would so expand the scope of an Interrogatory as to impose an unreasonable burden or to seek information not relevant to the claims or defenses relative to the TOG personal injury claims. Examples of such problematic definitions include "Communications," "Internal Communications," "Plaintiffs," "Relating To" or "Concerning," and "You, "Your," and "Defendant."

3.      A number of the definitions are contradictory and render individual Interrogatories unintelligible.  For example, the terms "Sale," "Sell," and "Sold" are limited to the sale of "Turnouts," but then those terms are used in Interrogatories that do not pertain to Turnouts.  The definitions of "Manufacturing Defendant(s)," "PFAS," "PFOA," "PFOS," "PFAS-Containing Products," "Produce," "Turnout Defendant," and "Turnouts" are vague, ambiguous, and/or incomplete.

4.      Honeywell objects to the definitions of "Adverse Effects," "Environmental Effect(s)," "Human Health Effect," and "Toxicological Effect(s) or Toxicological Impact(s)," as vague, ambiguous, and unsupported in science, medicine, law, and/or common usage.

5.      Honeywell will construe the terms used in the Interrogatories based on their ordinary meaning and based on the facts that are relevant to the TOG claims and defenses. Specifically:

        a.   Honeywell will construe the term "ADVERSE EFFECTS" to refer to harmful or negative consequences that are presently known to Honeywell, if any.

        b.   Honeywell will construe the term "PFAS-CONTAINING PRODUCTS" to refer to products presently known to Honeywell to be made with material that

is a PFAS and/or contain a residual of one or more PFAS as a component, as that term is defined below.

c. Honeywell will construe the term "PFAS" to refer to the per- and polyfluoroalkyl substances that are or may be used as a component in certain products produced by Honeywell and sold in and for use in the United States. By construing this definition to correspond to multiple PFAS with different properties, Honeywell does not concede that any specific PFAS is present in TOG used by or associated with any plaintiff, or that the same specific PFAS chemicals are present in all TOG or any component thereof.

d. Honeywell will construe the term "PFOA" to refer to the chemical compound perfluorooctanoic acid.

e. Honeywell will construe the term "PFOS" to refer to the chemical compound perfluorooctanesulfonic acid.

f. Honeywell objects that the term "TURNOUT DEFENDANTS" is not defined and is therefore vague and ambiguous. Honeywell will construe the term "TURNOUT DEFENDANTS" to mean any current defendant in this MDL that currently or formerly produced or manufactured TURNOUTS.

6. Honeywell objects to each definition and each instruction that purports to require a legal conclusion regarding the relationship between certain persons and/or entities; or may encompass relationships of which Honeywell is not aware and not obligated to render.

7. Honeywell objects to each definition and each instruction, including but not limited to Instructions Nos. 4 and 5, that is inconsistent with the protocol set forth in the MDL court's ESI Order.

8.    Any eventual disclosure by Honeywell will be on a rolling basis, subject to Honeywell's obligations to supplement, to include responsive information identified and disclosed only after a reasonable search and disclosure effort (and subject to all applicable objections).  Any such production will be made pursuant to the protective order in the MDL and Federal Rule of Civil Procedure ("FRCP") 33.

## INTERROGATORIES

**INTERROGATORY NO. 1:**

Identify each PERSON who has supplied information used in answering these interrogatories and specify the interrogatories for which each PERSON is responsible.

**RESPONSE:**  Honeywell objects to this Interrogatory based on Objections 1-15 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference.

**INTERROGATORY NO. 2:**

Identify all TURNOUTS containing PFAS or PFAS-CONTAINING PRODUCTS that YOU SOLD to any MANUFACTURING DEFENDANT(S), stating for each: the trade name under which it was SOLD, the number and dollar value of SALES to each MANUFACTURING DEFENDANT(S), and the date(s) when it was SOLD.

**RESPONSE:**  Honeywell objects to this Interrogatory based on Objections 1-15 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference.

**INTERROGATORY NO. 3:**

Identify the specific PFAS or PFAS-CONTAINING PRODUCTS present in YOUR TURNOUTS.

**RESPONSE:**  Honeywell objects to this Interrogatory based on Objections 1-15 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference.

**INTERROGATORY NO. 4:**

Identify the names of all distributors that received (by purchase, delivery, or otherwise) TURNOUTS containing PFAS or PFAS-CONTAINING PRODUCTS from YOU from 1970 to present, including the quantity of TURNOUTS YOU delivered, tendered, and/or SOLD, as well as the name or type of the TURNOUTS YOU delivered, tendered, and/or SOLD.

**RESPONSE:**  Honeywell objects to this Interrogatory based on Objections 1-15 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference.

**INTERROGATORY  NO. 5:**

Identify the entity or entities from which YOU or anyone on YOUR behalf purchased PFAS or PFAS-CONTAINING PRODUCTS for use in YOUR TURNOUTS.

**RESPONSE:**  Honeywell objects to this Interrogatory based on Objections 1-15 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference.

**INTERROGATORY  NO. 6:**

For each entity identified in response to INTERROGATORY NO. 5, identify the PFAS or PFAS-CONTAINING PRODUCTS purchased, the volume and dollar value purchased, and the dates of purchase.

**RESPONSE:**  Honeywell objects to this Interrogatory based on Objections 1-15 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference.

**INTERROGATORY  NO. 7:**

Identify all studies, analyses, tests, or reports YOU have ever conducted or contracted with another PERSON to conduct on YOUR behalf CONCERNING either the presence or the amount of PFAS or PFAS-CONTAINING PRODUCTS in YOUR TURNOUTS.

**RESPONSE:**  Honeywell objects to this Interrogatory based on Objections 1-15 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference. Honeywell also objects to the undefined and vague phrase "studies, analyses, tests or reports."

**INTERROGATORY  NO. 8:**

Identify all COMMUNICATIONS YOU have had with any MANUFACTURING DEFENDANT(S) CONCERNING either the presence or the amount of PFAS or PFAS-CONTAINING PRODUCTS in YOUR TURNOUTS.

**RESPONSE:**  Honeywell objects to this Interrogatory based on Objections 1-15 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference. Honeywell also objects to this Interrogatory as overbroad and seeking information that is disproportionate to the claims and/or named plaintiffs.

9

**INTERROGATORY NO. 9:**

Identify all COMMUNICATIONS YOU have had with any trade or industry organization CONCERNING either the presence or the amount of PFAS or PFAS-CONTAINING PRODUCTS in YOUR TURNOUTS.

**RESPONSE:**  Honeywell objects to this Interrogatory based on Objections 1-15 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference. Honeywell also objects to this Interrogatory as overbroad and seeking information that is disproportionate to the claims and/or named plaintiffs.

**INTERROGATORY NO. 10:**

Identify all COMMUNICATIONS YOU have had with either the National Fire Protection Association or the International Association of Fire Fighters CONCERNING either the presence or the amount of PFAS or PFAS-CONTAINING PRODUCTS in YOUR TURNOUTS.

**RESPONSE:**  Honeywell objects to this Interrogatory based on Objections 1-15 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference. Honeywell also objects to this Interrogatory as overbroad and seeking information that is disproportionate to the claims and/or named plaintiffs.

**INTERROGATORY NO. 11:**

Identify all information YOU provided to any purchaser or user of YOUR TURNOUTS containing PFAS or PFAS-CONTAINING PRODUCTS CONCERNING the formulation or design of YOUR TURNOUTS.

**RESPONSE:**  Honeywell objects to this Interrogatory based on Objections 1-15 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference. Honeywell also objects to this Interrogatory as overbroad and seeking information that is disproportionate to the claims and/or named plaintiffs.

**INTERROGATORY NO. 12:**

Identify all of the ways in which YOU informed purchasers or users of YOUR TURNOUTS containing PFAS or PFAS-CONTAINING PRODUCTS to ensure they were HANDLED and disposed of properly.

**RESPONSE:**  Honeywell objects to this Interrogatory based on Objections 1-15 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference. Honeywell also objects to this Interrogatory as overbroad and seeking information that is disproportionate to the claims and/or named plaintiffs.

**INTERROGATORY NO. 13:**

Describe any changes YOU made to the HANDLING and/or disposal methods YOU recommended to purchasers or users of YOUR TURNOUTS containing PFAS or PFAS-CONTAINING PRODUCTS from 1970 to present.

**RESPONSE:** Honeywell objects to this Interrogatory based on Objections 1-15 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference. Honeywell also objects to this Interrogatory as overbroad and seeking information that is disproportionate to the claims and/or named plaintiffs.

**INTERROGATORY NO. 14:**

Identify all DOCUMENTS, instructions, training materials, or other information YOU provided to purchasers or users of YOUR TURNOUTS containing PFAS or PFAS-CONTAINING PRODUCTS CONCERNING the HANDLING and/or disposal of YOUR TURNOUTS.

**RESPONSE:** Honeywell objects to this Interrogatory based on Objections 1-15 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference. Honeywell also objects to this Interrogatory as overbroad and seeking information that is disproportionate to the claims and/or named plaintiffs. Honeywell also objects that the phrase "ADVERSE EFFECTS of PFAS or PFAS-CONTAINING PRODUCTS, other than the TOXICOLOGICAL and HUMAN HEALTH EFFECTS discussed above," is vague, ambiguous, overly broad and unintelligible.

**INTERROGATORY NO. 15:**

Identify the PERSON most knowledgeable about the DOCUMENTS, instructions, training materials, or other information YOU provided to purchasers or users of YOUR TURNOUTS containing PFAS or PFAS-CONTAINING PRODUCTS CONCERNING the HANDLING and/or disposal of YOUR TURNOUTS.

**RESPONSE:** Honeywell objects to this Interrogatory based on Objections 1-15 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference. Honeywell also objects to this Interrogatory as overbroad and seeking information that is disproportionate to the claims and/or named plaintiffs.

**INTERROGATORY NO. 16:**

Identify all warnings or information YOU provided to purchasers or users of YOUR TURNOUTS containing PFAS or PFAS-CONTAINING PRODUCTS about any TOXICOLOGICAL EFFECTS of PFAS.

**RESPONSE:**  Honeywell objects to this Interrogatory based on Objections 1-15 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference.

**INTERROGATORY NO. 17:**

Identify all warnings or information YOU provided to purchasers or users of YOUR TURNOUTS containing PFAS or PFAS-CONTAINING PRODUCTS about any HUMAN HEALTH EFFECTS of PFAS.

**RESPONSE:**  Honeywell objects to this Interrogatory based on Objections 1-15 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference.

**INTERROGATORY NO. 18:**

Identify all warnings or information YOU provided to purchasers or users of YOUR TURNOUTS containing PFAS or PFAS-CONTAINING PRODUCTS about any ADVERSE EFFECTS of PFAS, other than the TOXICOLOGICAL and HUMAN HEALTH EFECTS discussed above.

**RESPONSE:**  Honeywell objects to this Interrogatory based on Objections 1-15 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference.

**INTERROGATORY NO. 19:**

Are YOU aware of or have YOU ever conducted or contracted with another PERSON to conduct any studies, reports, and/or surveys to investigate the TOXICOLOGICAL EFFECTS of any PFAS present in TURNOUTS?

**RESPONSE:**  Honeywell objects to this Interrogatory based on Objections 1-15 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference. Honeywell also objects to the undefined and vague phrase "studies, reports, and/or surveys."

**INTERROGATORY NO. 20:**

If YOUR response to INTERROGATORY NO. 19 is in the affirmative, identify the study, who conducted the study, the results of the study, any PERSONS with knowledge of relevant facts about the study, and all DOCUMENTS RELATING TO or referencing the study.

**RESPONSE:**  Honeywell objects to this Interrogatory based on Objections 1-15 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference. Honeywell further objects that the phrase "PERSONS with knowledge of relevant facts" is vague, ambiguous and overbroad.

**INTERROGATORY NO. 21:**

For each TOXICOLOGICAL EFFECT YOU are aware of that is associated with the PFAS or PFAS-CONTAINING PRODUCTS present in YOUR TURNOUTS, identify the TOXICOLOGICAL EFFECT, the date YOU first became aware of that TOXICOLOGICAL EFFECT, the source of that knowledge, and any DOCUMENTS RELATING TO or referencing that TOXICOLOGICAL EFFECT.

**RESPONSE:** Honeywell objects to this Interrogatory based on Objections 1-15 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference.

**INTERROGATORY NO. 22:**

For each TOXICOLOGICAL EFFECT identified in response to INTERROGATORY NO. 21, identify the PERSON most knowledgeable about that TOXICOLOGICAL EFFECT and YOUR awareness of it.

**RESPONSE:** Honeywell objects to this Interrogatory based on Objections 1-15 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference. Honeywell further objects that this Interrogatory prematurely calls for the identification of a person most knowledgeable.

**INTERROGATORY NO. 23:**

Are YOU aware of or have YOU ever conducted or contracted with another PERSON to conduct any studies, reports and/or surveys to investigate the HUMAN HEALTH EFFECTS of any PFAS present TURNOUTS?

**RESPONSE:** Honeywell objects to this Interrogatory based on Objections 1-15 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference. Honeywell also objects to the undefined and vague phrase "studies, reports, and/or surveys."

**INTERROGATORY NO. 24:**

If YOUR response to INTERROGATORY NO. 23 is in the affirmative, identify the study, who conducted the study, the results of the study, any PERSONS with knowledge of relevant facts about the study, and all DOCUMENTS RELATING TO or referencing the study.

**RESPONSE:** Honeywell objects to this Interrogatory based on Objections 1-15 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference. Honeywell also objects to the undefined and vague phrase "study" and further objects that the phrase "PERSONS with knowledge of relevant facts" is vague, ambiguous and overbroad.

13

**INTERROGATORY NO. 25:**

For each HUMAN HEALTH EFFECT YOU are aware of that is associated with the PFAS or PFAS-CONTAINING PRODUCTS present in YOUR TURNOUTS, identify the HUMAN HEALTH EFFECT, the date YOU first became aware of that HUMAN HEALTH EFFECT, the source of that knowledge, and any DOCUMENTS RELATING TO or referencing that HUMAN HEALTH EFFECT.

**RESPONSE:** Honeywell objects to this Interrogatory based on Objections 1-15 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference.

**INTERROGATORY NO. 26:**

For each HEALTH EFFECT identified in response to INTERROGATORY NO. 25, identify the PERSON most knowledgeable about that HEALTH EFFECT and YOUR awareness of it.

**RESPONSE:** Honeywell objects to this Interrogatory based on Objections 1-15 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference. Honeywell further objects that this Interrogatory prematurely calls for the identification of a person most knowledgeable. Further, Plaintiffs have not obtained a stipulation or order permitting service of more than 25 interrogatories under Fed. R. Civ. P. 33(a)(1).

**INTERROGATORY NO. 27:**

Identify all warnings or information YOU provided to purchasers of YOUR TURNOUTS containing PFAS or PFAS-CONTAINING PRODUCTS, including the date each such warning was given, CONCERNING any ADVERSE EFFECTS of PFAS, other than the TOXICOLOGICAL and HUMAN HEALTH EFECTS discussed above.

**RESPONSE:** Honeywell objects to this Interrogatory based on Objections 1-15 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference. Honeywell also objects that the phrase "ADVERSE EFFECTS of PFAS . . . other than the TOXICOLOGICAL and HUMAN HEALTH EFFECTS discussed above" is vague, ambiguous, overly broad and unintelligible. Further, Plaintiffs have not obtained a stipulation or order permitting service of more than 25 interrogatories under Fed. R. Civ. P. 33(a)(1).

**INTERROGATORY NO. 28:**

Identify any and all alternatives to PFAS or PFAS-CONTAINING PRODUCTS YOU investigated or otherwise considered for use in any TURNOUTS YOU SOLD.

14

**RESPONSE:**  Honeywell objects to this Interrogatory based on Objections 1-15 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference. Honeywell further objects to the undefined, overbroad, and vague terms "TURNOUTS," "alternatives," "investigated" and "considered."  Further, Plaintiffs have not obtained a stipulation or order permitting service of more than 25 interrogatories under Fed. R. Civ. P. 33(a)(1).

**INTERROGATORY  NO. 29:**

Identify any and all research YOU conducted or reviewed CONCERNING alternatives to PFAS or PFAS-CONTAINING PRODUCTS for use in any TURNOUTS YOU SOLD.

**RESPONSE:**  Honeywell objects to this Interrogatory based on Objections 1-15 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference. Honeywell further objects to the undefined and vague terms "TURNOUTS" and "alternatives." Further, Plaintiffs have not obtained a stipulation or order permitting service of more than 25 interrogatories under Fed. R. Civ. P. 33(a)(1).

**INTERROGATORY  NO. 30:**

Describe how and when YOU became aware that TURNOUTS YOU SOLD contained PFAS or PFAS-CONTAINING PRODUCTS.

**RESPONSE:**  Honeywell objects to this Interrogatory based on Objections 1-15 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference. Honeywell also objects that this Interrogatory uses the undefined, vague and ambiguous term "alternatives."  Further, Plaintiffs have not obtained a stipulation or order permitting service of more than 25 interrogatories under Fed. R. Civ. P. 33(a)(1).

**INTERROGATORY  NO. 31:**

If YOU are aware, identify when YOU became aware of the TOXICOLOGICAL EFFECTS of PFAS or PFAS-CONTAINING PRODUCTS.

**RESPONSE:**  Honeywell objects to this Interrogatory based on Objections 1-15 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference. Further, Plaintiffs have not obtained a stipulation or order permitting service of more than 25 interrogatories under Fed. R. Civ. P. 33(a)(1).

**INTERROGATORY  NO. 32:**

If YOU are aware, identify when YOU became aware of the HUMAN HEALTH EFECTS of PFAS or PFAS-CONTAINING PRODUCTS.

15

**RESPONSE:** Honeywell objects to this Interrogatory based on Objections 1-15 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference. Further, Plaintiffs have not obtained a stipulation or order permitting service of more than 25 interrogatories under Fed. R. Civ. P. 33(a)(1).

**INTERROGATORY  NO. 33:**

Identify any government law, regulation, or rule that requires or required the use of PFAS or PFAS-CONTAINING PRODUCTS in TURNOUTS.

**RESPONSE:**  Honeywell objects to this Interrogatory based on Objections 1-15 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference.  Honeywell also objects to the extent this Interrogatory calls for information from public sources that are equally available to Plaintiffs as to Honeywell.  Further, Plaintiffs have not obtained a stipulation or order permitting service of more than 25 interrogatories under Fed. R. Civ. P. 33(a)(1).

Respectfully submitted this the 8th of July 2022.

WOMBLE BOND DICKINSON (US) LLP

Kurt D. Weaver, N.C. Bar No. 27146
555 Fayetteville Street, Suite 1100
Raleigh, NC 27601
(919) 755-8163 Telephone
(919) 755-6770 Facsimile
Email: Kurt.Weaver@wbd-us.com

Sonny S. Haynes, N.C. Bar No. 41303
One West Fourth Street
Winston-Salem, NC 27101
(336) 721-3632 Telephone
(336) 726-2227 Facsimile
Email:  Sonny.Haynes@wbd-us.com

*Attorneys for Defendant Honeywell Safety Products USA, Inc.*

16

## CERTIFICATE OF SERVICE

I certify that on July 8, 2022, a true and correct copy of the foregoing was served via electronic mail upon the following:

**Plaintiffs**
mlondon@douglasandlondon.com
pnapoli@nsprlaw.com
afffmdlproductions@baronbudd.com
ssummy@baronbudd.com
tkunkle@douglasandlondon.com
fthompson@motleyrice.com
mbessis@motleyrice.com
**Defendants**
molsen@mayerbrown.com
dring@mayerbrown.com
bduffy@duffyandyoung.com
pjones@duffyandyoung.com
david.dukes@nelsonmullins.com
lmontgomery@wc.com
jpetrosinelli@wc.com
talfermann@mayerbrown.com
afffmdlproductions@duffyandyoung.com


**WOMBLE BOND DICKINSON (US) LLP**

Kurt D. Weaver, N.C. Bar No. 27146
Email: Kurt.Weaver@wbd-us.com

*Attorneys for Defendant Honeywell Safety Products USA, Inc.*

17

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
### CHARLESTON DIVISION

|  |  |
|---|---|
| IN RE:  AQUEOUS FILM-FORMING FOAMS PRODUCTS LIABILITY LITIGATION, | MDL No. 2:18-mn-2873-RMG

**This document relates to:  ALL CASES** |

## DEFENDANT LION GROUP, INC.'S OBJECTIONS TO
## PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION

Defendant Lion Group, Inc. ("Defendant" or "LION") by and through its attorneys, and pursuant to Fed. R. Civ. P. 26 and 34, hereby submits the below objections to Plaintiffs' First Set of Requests for Production ("Document Request") in the above-captioned matter (the "Action").

LION reserves any and all rights pursuant to Fed. R. Civ. P. 26(e) and 34 to amend, revise, correct, supplement, and/or clarify any of its objections herein, including the assertion of additional general or specific objections arising from matters discovered during the course of this Action. Nothing herein shall be construed as an incidental or implied admission by LION regarding the competence, admissibility, or relevance of any fact or information, or any characterization of such sought by the Document Request.

### GENERAL OBJECTIONS

1.      In this Aqueous Film-Forming Foams ("AFFF") Products Liability Litigation ("MDL"), the Document Requests are objectionable for a number of reasons, including that they are premature.  While the Document Requests purport to relate to "All Cases," it is clear that they pertain only to the small number of cases involving allegations that plaintiffs were injured by both AFFF and firefighter turnout gear ("Turnout Gear" or "TOG").  These Turnout Gear claims, which are alleged against LION and around thirteen other defendants ("Turnout Gear Defendants" or "TOG Defendants"), do not predicate liability on the use of or exposure to AFFF. Accordingly, discovery, and in particular, broad sweeping discovery, into the distinctly unique

TOG personal injury claims is not appropriate at this time, given the current status of the matters pending in the MDL.  LION makes these objections subject to and without waiver of its position that discovery concerning alleged injuries from turnout gear is premature given the procedural posture of the MDL and expressly reserves its right to assert additional and/or more specific objections to these and any additional or related discovery at the appropriate time.

2.      The Court has conducted a "Science Day" with respect to AFFF only.  The scientific issues underlying the TOG claims, however, are fundamentally different from those underlying the AFFF claims.  Turnout Gear is not one product or one component, and it is not always used under the same conditions as AFFF.  Scientific questions underlying TOG personal injury claims involve different chemicals with different properties and toxicological profiles; different possible exposure pathways (if any); different theoretical exposure concentrations (if any); and a host of other issues that distinguish TOG claims from those involving AFFF.  The Science Day held for AFFF does not inform the questions of alleged exposure or adverse effects to the plaintiffs claiming harm caused by Turnout Gear.

3.       Discovery against the TOG Defendants is also premature because the existing plaintiff fact sheets are not relevant to Turnout Gear.  The plaintiff fact sheets focus on AFFF and contain little to no information pertaining to the TOG claims.  There is no information provided from which LION can determine why LION is named as a defendant or LION's role in any plaintiff's alleged injuries from turnout gear.  Under the procedures and protocols applicable in this MDL, broad and burdensome discovery requests should not be served until after the plaintiffs have completed fact sheets that provide useful foundational information about the TOG claims, especially given the fact that defendants are precluded from serving their own discovery requests on the TOG plaintiffs at this time.  The TOG Defendants are prepared to meet and confer with plaintiffs' counsel to discuss an appropriate fact sheet for plaintiffs alleging TOG claims.

4.      The Document Requests are premature because LION has not yet had the opportunity to demonstrate the speculative nature of the claims asserted against it, which should be dismissed by the MDL court on that basis.  Before being forced to engage in broad, expansive

and burdensome discovery, LION should be given an opportunity, if it opts to do so, to seek the Rule 12 dismissal of the claims against it.

5.     Case Management Order No. 2 (March 20, 2019) required the Plaintiffs' Executive Committee ("PEC") to "[d]evelop and propose to the Court schedules for the commencement, execution and completion of all discovery on behalf of all plaintiffs." To LION's knowledge, the PEC has not satisfied that requirement as to any TOG claim or with respect to TOG Defendants; indeed, no TOG claim had been filed at the time CMO No. 2 was entered and discovery commenced against the AFFF defendants. In short, there is no indication the Court contemplated, much less authorized, broad and one-sided general discovery against the TOG Defendants.

6.     LION objects to the Document Requests to the extent that they seek documents protected from disclosure by the attorney-client privilege, work-product immunity, joint-defense privilege, common interest privilege, or any other privilege or protection afforded by applicable law. In the event of an inadvertent disclosure of privileged/protected documents, the privilege/protection shall not be waived, and such documents will be subject to claw-back and other remedies, consistent with Federal Rule of Civil Procedure 26(b)(5)(B) and Federal Rule of Evidence 502(b).

7.     LION objects to the Document Requests to the extent that they seek documents that constitute, contain, or otherwise disclose trade secrets or other proprietary or confidential information. In the event LION is required to produce such information in the MDL, LION will only do so subject to an appropriate protective order. LION further objects to producing any document that is subject to a confidentiality obligation owed by LION to a third party.

8.     The Document Requests are objectionable on the grounds that they are overly broad, unduly burdensome and oppressive, particularly but not exclusively to the extent they demand the production of "all documents," "all communications," and similar sweeping sets of documents without limitation; seek a range of documents neither relevant to any claim or defense

in the TOG cases; and impose obligations on LION that are disproportionate to the needs of genuine TOG claim discovery.

9.     Several requests are without any temporal limitation, and the general time period specified in the Document Requests (1970) (Instruction 13) is so early in time as to be overbroad, unduly burdensome and virtually meaningless.

10.     LION objects that several requests are without any geographic limitation and therefore seek information that is not relevant to any claim or defense in this litigation.

11.     LION objects that several requests call for information about products not used by or associated with any plaintiff in this litigation or sold to any defendant in this litigation and, therefore, seek information that is not relevant to any claim or defense in this litigation.

12.     LION objects to any Request to the extent that it improperly assumes facts, specifically, that TURNOUTS or TURNOUT INTERMEDIATE PRODUCTS are associated with adverse HUMAN HEALTH or TOXICOLOGICAL EFFECTS, and expressly rejects any such suggestion.

### OBJECTIONS TO PLAINTIFFS' DEFINITIONS AND INSTRUCTIONS

LION objects as specified below to the Definitions and Instructions in the Document Requests.  Documents may be withheld on the basis of these objections.

1.     LION objects to each definition and each instruction to the extent that it purports to impose on LION obligations beyond those set out in the Federal Rules of Civil Procedure, and therefore causes the requests to be overly broad, unduly burdensome, or requiring the production of documents or disclosure of information that is not reasonably accessible.  By way of example only, LION objects to Instruction No. 7, which purports to require the creation of a log of "destroyed, lost, discarded," etc. documents, and Instruction No. 11, which purports to require Defendants to produce documents that are not "relevant or responsive to the[] Requests."

2.     LION objects to each definition that is unintelligible, vague or ambiguous, or would so expand the scope of a request as to impose an unreasonable burden or to seek information not relevant to the claims or defenses relative to the TOG personal injury claims.

Examples of such problematic definitions include "Communications," "Internal Communications," "Plaintiffs," "Relating To" or "Concerning," and "You, "Your," and "Defendant."

3.      A number of the definitions are contradictory and render individual Document Requests unintelligible. For example, the terms "Sale," "Sell," and "Sold" are limited to the sale of "Turnouts," but then those terms are used in requests that do not pertain to Turnouts. The definitions of "Manufacturing Defendants," "PFAS," "PFOA," "PFOS," "PFAS-Containing Products," "Turnout Intermediate Product," "Turnout Defendant," and "Turnouts" are vague and ambiguous.

4.      LION will construe the terms used in the Document Requests based on their ordinary meaning, and based on the facts that are relevant to the TOG claims and defenses. Specifically:

    a.      LION will construe the term "ADVERSE EFFECTS" to refer to harmful or negative consequences that are presently known to LION, if any.

    b.      LION will construe the term "PFAS-CONTAINING PRODUCTS" to refer to products presently known to LION to be made with material that is a PFAS and/or contain a residual of one or more PFAS, as that term is defined below.

    c.      LION will construe the term "PFAS" to refer to multiple types of per- and polyfluoroalkyl substances with different properties that may be contained in, or may be used as, or may be present on the surface of, a component in certain products produced by LION and sold in and for use in the United States. By construing this definition to correspond to multiple PFAS with different properties, LION does not concede that any specific PFAS is present in TOG used by or associated with any plaintiff, or that the same specific PFAS chemicals are present in all TOG or any component thereof.

       d.      LION will construe the term "PFOA" to refer to the chemical compound perfluorooctanoic acid.

       e.      LION will construe the term "PFOS" to refer to the chemical compound perfluorooctanesulfonic acid.

5.      LION objects to each definition and each instruction that purports to require the production of documents or information not within LION's possession, custody, or control or from persons or entities not within LION's control; calls for a legal conclusion regarding the relationship between certain persons and/or entities; or may encompass relationships of which LION is not aware.

6.      LION objects to each definition and each instruction, including but not limited to Instructions Nos. 4 and 5, that is inconsistent with the protocol set forth in the MDL court's ESI Order.

7.      Any eventual production by LION will be on a rolling basis, subject to LION's obligations to supplement, to include responsive documents identified and produced only after a reasonable search and production effort (and subject to all applicable objections). Any such production will be made pursuant to the protective order in the MDL and Federal Rule of Civil Procedure 34.

## REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 1:**

All DOCUMENTS CONCERNING warnings YOU provided about any HUMAN HEALTH EFFECTS of TURNOUTS containing PFAS or PFAS-CONTAINING PRODUCTS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 1:**

LION objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

**REQUEST FOR PRODUCTION NO. 2:**

All DOCUMENTS CONCERNING warnings YOU provided about any TOXICOLOGICAL EFFECTS of TURNOUTS containing PFAS or PFAS-CONTAINING

PRODUCTS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 2:**

LION objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

**REQUEST FOR PRODUCTION NO. 3:**

All DOCUMENTS CONCERNING warnings YOU provided about any ADVERSE EFFECTS of TURNOUTS containing PFAS or PFAS-CONTAINING PRODUCTS, other than the HUMAN HEALTH and TOXICOLOGICAL EFFECTS discussed above.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 3:**

LION objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference. LION objects further that the phrase "ADVERSE EFFECTS of TURNOUTS containing PFAS or PFAS-CONTAINING PRODUCTS, other than the HUMAN HEALTH and TOXICOLOGICAL EFFECTS discussed above," is vague and unintelligible.

**REQUEST FOR PRODUCTION NO. 4:**

All DOCUMENTS CONCERNING instructions YOU provided RELATING TO the HANDLING of any TURNOUTS containing PFAS or PFAS-CONTAINING PRODUCTS YOU SOLD.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 4:**

LION objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

**REQUEST FOR PRODUCTION NO. 5:**

All DOCUMENTS YOU used and/or relied on in preparing instructions YOU provided CONCERNING the HANDLING of any TURNOUTS containing PFAS or PFAS- CONTAINING PRODUCTS YOU SOLD.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 5:**

LION objects to this request based on General Objections 1-12 and Objections to Plaintiffs'

Definitions and Instructions 1-7, which are incorporated herein by reference.

**REQUEST FOR PRODUCTION NO. 6:**

All DOCUMENTS CONCERNING any contract and/or agreement between YOU and any MANUFACTURING DEFENDANT(S) for the SALE of TURNOUTS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 6:**

LION objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

**REQUEST FOR PRODUCTION NO. 7:**

All DOCUMENTS CONCERNING any contract and/or agreement between YOU and any MANUFACTURING DEFENDANT(S) for the purchase of materials containing PFAS or PFAS-CONTAINING PRODUCTS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 7:**

LION objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

**REQUEST FOR PRODUCTION NO. 8:**

All COMMUNICATIONS between YOU and any MANUFACTURING DEFENDANT(S) CONCERNING PFAS and/or the presence of PFAS or PFAS-CONTAINING PRODUCTS in TURNOUTS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 8:**

LION objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference. LION also objects that the use of the undefined term "presence," as used in this Request, is vague and ambiguous.

**REQUEST FOR PRODUCTION NO. 9:**

All DOCUMENTS regarding any formulation and/or design of TURNOUTS that did not contain PFAS or PFAS-CONTAINING PRODUCTS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 9:**

LION objects to this request based on General Objections 1-12 and Objections to Plaintiffs'

Definitions and Instructions 1-7, which are incorporated herein by reference. LION also objects that the use of the undefined terms "formulation" and "design" as used in this Request, is vague and ambiguous.

**REQUEST FOR PRODUCTION NO. 10:**

All COMMUNICATIONS between YOU and any MANUFACTURING DEFENDANT(S) CONCERNING any formulation and/or design of TURNOUTS that did not contain PFAS or PFAS-CONTAINING PRODUCTS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 10:**

LION objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference. LION also objects that this Request uses the undefined and vague phrase "formulation and/or design."

**REQUEST FOR PRODUCTION NO. 11:**

All DOCUMENTS identifying the SKUs for TURNOUTS containing PFAS or PFAS-CONTAINING PRODUCTS YOU SOLD.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 11:**

LION objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference. LION also objects that the use of the undefined terms "identifying" and "SKUs," as used in this Request, is vague and ambiguous.

**REQUEST FOR PRODUCTION NO. 12:**

All DOCUMENTS CONCERNING the number and dollar value of sales of each TURNOUT SKU YOU SOLD.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 12:**

LION objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference. LION also objects that this Request uses the undefined and vague term "SKU."

**REQUEST FOR PRODUCTION NO. 13:**

All purchase agreements, purchase contracts, invoices, supply contracts, receipts, or other documentation evidencing YOUR sale, manufacture, and/or distribution of YOUR TURNOUTS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 13:**

LION objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

**REQUEST FOR PRODUCTION NO. 14:**

All DOCUMENTS CONCERNING any contracts and/or agreements that YOU had with suppliers, wholesalers, distributors, or any other entity that sold YOUR TURNOUTS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 14:**

LION objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

**REQUEST FOR PRODUCTION NO. 15:**

All purchase orders, invoices, contracts, and/or other related materials that provide information about the sale, manufacture, and/or distribution of YOUR TURNOUTS, including but not limited to the dates when YOUR TURNOUTS were sold, the quantity YOU included in each shipment, and the amount (in dollars) YOU were paid for each shipment.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 15:**

LION objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

**REQUEST FOR PRODUCTION NO. 16:**

All DOCUMENTS RELATING TO the procedures and protocols for maintaining sales, production, volume, and invoicing records for YOUR TURNOUTS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 16:**

LION objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference. LION also objects that this Request uses the undefined and vague terms "procedures," and "protocols."

**REQUEST FOR PRODUCTION NO. 17:**

All DOCUMENTS reflecting any assessment and/or analysis of YOUR share of the market for TURNOUTS from 1970 to present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 17:**

LION objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference. LION also objects that this Request uses the undefined and vague terms "assessment," "analysis," and "market."

**REQUEST FOR PRODUCTION NO. 18:**

All studies and/or reports CONCERNING any HUMAN HEALTH EFFECTS posed by PFAS or PFAS-CONTAINING PRODUCTS in TURNOUTS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 18:**

LION objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

**REQUEST FOR PRODUCTION NO. 19:**

All studies and/or reports CONCERNING any TOXICOLOGICAL EFFECTS posed by PFAS or PFAS-CONTAINING PRODUCTS in TURNOUTS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 19:**

LION objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

**REQUEST FOR PRODUCTION NO. 20:**

All COMMUNICATIONS between YOU and other PERSONS CONCERNING any HUMAN HEALTH EFFECTS of PFAS or PFAS-CONTAINING PRODUCTS in TURNOUTS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 20:**

LION objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

**REQUEST FOR PRODUCTION NO. 21:**

All COMMUNICATIONS between YOU and other PERSONS CONCERNING any

TOXICOLOGICAL EFFECTS of PFAS or PFAS-CONTAINING PRODUCTS in TURNOUTS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 21:**

LION objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

**REQUEST FOR PRODUCTION NO. 22:**

All historic and current Material Safety Data Sheets ("MSDS") for any TURNOUTS containing PFAS or PFAS-CONTAINING PRODUCTS YOU SOLD.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 22:**

LION objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

**REQUEST FOR PRODUCTION NO. 23:**

All DOCUMENTS, including but not limited to catalogues, statements circulars, manuals, brochures, reports, and advertisements, which mention, describe, or otherwise refer to the virtues, qualities, characteristics, capabilities, and/or capacities of any TURNOUTS containing PFAS or PFAS-CONTAINING PRODUCTS YOU SOLD.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 23:**

LION objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

**REQUEST FOR PRODUCTION NO. 24:**

All COMMUNICATIONS between YOU and any trade or industry organization CONCERNING HUMAN HEALTH EFFECTS of TURNOUTS containing PFAS or PFAS-CONTAINING PRODUCTS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 24:**

LION objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

**REQUEST FOR PRODUCTION NO. 25:**

All COMMUNICATIONS between YOU and any trade or industry organization

CONCERNING TOXICOLOGICAL EFFECTS of TURNOUTS containing PFAS or PFAS-CONTAINING PRODUCTS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 25:**

LION objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

**REQUEST FOR PRODUCTION NO. 26:**

All COMMUNICATIONS between YOU and any trade or industry organization CONCERNING ADVERSE EFFECTS of TURNOUTS containing PFAS or PFAS-CONTAINING PRODUCTS, other than the HUMAN HEALTH and TOXICOLOGICAL EFFECTS addressed above.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 26:**

LION objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

**REQUEST FOR PRODUCTION NO. 27:**

All COMMUNICATIONS between YOU and any trade or industry organization CONCERNING the safety of TURNOUTS containing PFAS or PFAS-CONTAINING PRODUCTS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 27:**

LION objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

**REQUEST FOR PRODUCTION NO. 28:**

All DOCUMENTS CONCERNING statements issued by YOU or on YOUR behalf regarding the HUMAN HEALTH EFFECTS associated with exposure to PFAS or PFAS-CONTAINING PRODUCTS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 28:**

LION objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

**REQUEST FOR PRODUCTION NO. 29:**

All DOCUMENTS CONCERNING statements issued by YOU or on YOUR behalf regarding the TOXICOLOGICAL EFFECTS associated with exposure to PFAS or PFAS-CONTAINING PRODUCTS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 29:**

LION objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

**REQUEST FOR PRODUCTION NO. 30:**

All COMMUNICATIONS between YOU and any public relations and/or media consulting firms or agencies regarding any TOXICOLOGICAL EFFECTS of PFAS or PFAS-CONTAINING PRODUCTS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 30:**

LION objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

**REQUEST FOR PRODUCTION NO. 31:**

All COMMUNICATIONS between you and any public relations and/or media consulting firms or agencies CONCERNING any HUMAN HEALTH EFFECTS of PFAS or PFAS-CONTAINING PRODUCTS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 31:**

LION objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

**REQUEST FOR PRODUCTION NO. 32:**

All DOCUMENTS regarding the biopersistence and/or the bioaccumulation of PFAS, PFOA, and/or PFOS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 32:**

LION objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference. LION also objects

that this Request calls for information that is neither relevant nor proportional to the needs of this litigation to the extent it seeks information about PFAS, PFOA, and/or PFOS that are not components in TURNOUTS or TURNOUT INTERMEDIATE PRODUCT(S) used by or associated with any plaintiff in this litigation or sold to any defendant in this litigation.

**REQUEST FOR PRODUCTION NO. 33:**

All DOCUMENTS regarding studies and/or reports CONCERNING the amount of PFAS or PFAS-CONTAINING PRODUCTS in any TURNOUTS YOU SOLD.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 33:**

LION objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference. LION further objects to the phrase "amount of PFAS or PFAS-CONTAINING PRODUCTS" as vague and ambiguous.

**REQUEST FOR PRODUCTION NO. 34:**

All COMMUNICATIONS regarding studies and/or reports CONCERNING the amount of PFAS or PFAS-CONTAINING PRODUCTS in any TURNOUTS YOU SOLD.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 34:**

LION objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference. LION further objects to the phrase "amount of PFAS or PFAS-CONTAINING PRODUCTS" as vague and ambiguous.

**REQUEST FOR PRODUCTION NO. 35:**

All DOCUMENTS regarding studies and/or reports of TOXICOLOGICAL EFFECTS of PFAS, PFOA and/or PFOS conducted by YOU or on YOUR behalf.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 35:**

LION objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

**REQUEST FOR PRODUCTION NO. 36:**

All DOCUMENTS and COMMUNICATIONS between YOU and any MANUFACTURING DEFENDANT(S) CONCERNING any TOXICOLOGICAL EFFECTS of

PFAS or PFAS-CONTAINING PRODUCTS in TURNOUTS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 36:**

LION objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

**REQUEST FOR PRODUCTION NO. 37:**

All DOCUMENTS and COMMUNICATIONS between YOU and any MANUFACTURING DEFENDANT(S) CONCERNING any HUMAN HEALTH EFFECTS of PFAS or PFAS-CONTAINING PRODUCTS in TURNOUTS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 37:**

LION objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

**REQUEST FOR PRODUCTION NO. 38:**

All DOCUMENTS and COMMUNICATIONS between YOU and any MANUFACTURING DEFENDANT(S) CONCERNING any adverse effects of PFAS or PFAS-CONTAINING PRODUCTS in TURNOUTS, other than the TOXICOLOGICAL and HUMAN HEALTH EFFECTS discussed above.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 38:**

LION objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

**REQUEST FOR PRODUCTION NO. 39:**

All DOCUMENTS regarding studies or research conducted by YOU or on YOUR behalf CONCERNING the use of non-PFAS materials in the TURNOUTS YOU SOLD.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 39:**

LION objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference. LION also objects that the use of the undefined term "non-PFAS materials," as used in this Request, is vague and ambiguous.

**REQUEST FOR PRODUCTION NO. 40:**

All DOCUMENTS CONCERNING the effectiveness of non-PFAS materials in the TURNOUTS YOU SOLD.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 40:**

LION objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference. LION also objects that the use of the undefined term "non-PFAS materials," as used in this Request, is vague and ambiguous.

**REQUEST FOR PRODUCTION NO. 41:**

All COMMUNICATIONS CONCERNING the use of non-PFAS materials in the TURNOUTS YOU SOLD.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 41:**

LION objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference. LION also objects that the use of the undefined term "non-PFAS materials," as used in this Request, is vague and ambiguous.

**REQUEST FOR PRODUCTION NO. 42:**

All DOCUMENTS CONCERNING the development and adoption of warning DOCUMENTS, instructions, and/or labels on TURNOUTS containing PFAS or PFAS-CONTAINING PRODUCTS YOU SOLD.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 42:**

LION objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

**REQUEST FOR PRODUCTION NO. 43:**

All DOCUMENTS RELATING TO any insurance coverage or request for any insurance coverage in connection with any loss, claim, damage or request relating or referring to this MDL or any other action arising from the use of TURNOUTS containing PFAS or PFAS-

CONTAINING PRODUCTS YOU SOLD.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 43:**

LION objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

**REQUEST FOR PRODUCTION NO. 44:**

All DOCUMENTS RELATING TO any meetings or correspondence with, or submissions to, the National Fire Protection Association concerning TURNOUTS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 44:**

LION objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

**REQUEST FOR PRODUCTION NO. 45:**

All COMMUNICATIONS between YOU and the National Fire Protection Association CONCERNING TURNOUTS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 45:**

LION objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

**REQUEST FOR PRODUCTION NO. 46:**

All COMMUNICATIONS between YOU and any MANUFACTURING DEFENDANT(S) CONCERNING the National Fire Protection Association.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 46:**

LION objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

**REQUEST FOR PRODUCTION NO. 47:**

All DOCUMENTS CONCERNING any financial contributions or payments from YOU to the National Fire Protection Association.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 47:**

LION objects to this request based on General Objections 1-12 and Objections to Plaintiffs'

Definitions and Instructions 1-7, which are incorporated herein by reference.

**REQUEST FOR PRODUCTION NO. 48:**

All DOCUMENTS RELATING TO any meetings or correspondence with, or submissions to, the International Association of Fire Fighters concerning TURNOUTS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 48:**

LION objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

**REQUEST FOR PRODUCTION NO. 49:**

All COMMUNICATIONS between YOU and the International Association of Fire Fighters concerning TURNOUTS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 49:**

LION objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

**REQUEST FOR PRODUCTION NO. 50:**

All COMMUNICATIONS between YOU and any MANUFACTURING DEFENDANT(S) CONCERNING the International Association of Fire Fighters.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 50:**

LION objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

**REQUEST FOR PRODUCTION NO. 51:**

All DOCUMENTS CONCERNING any financial contributions or payments from YOU to the International Association of Fire Fighters.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 51:**

LION objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

**REQUEST FOR PRODUCTION NO. 52:**

All DOCUMENTS CONCERNING any disclosure that TURNOUTS YOU SOLD

contained PFAS or PFAS-CONTAINING PRODUCTS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 52:**

      LION objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference. LION also objects that this Request uses the undefined term "disclosure."

**REQUEST FOR PRODUCTION NO. 53:**

      All DOCUMENTS RELATING TO any meetings or correspondence with, or submission to, any governmental body, trade association, industry group, or lobbying group regarding PFAS or PFAS-CONTAINING PRODUCTS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 53:**

      LION objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference. LION also objects that this Request uses the undefined and vague phrases "trade association," "industry group" and "lobbying group."

Dated:  July 8, 2022

          Respectfully submitted,

          BY DEFENDANT LION GROUP, INC.

            */s/ Glenn A. Friedman*

          Glenn A. Friedman
          Paul A. Desrochers
          LEWIS BRISBOIS BISGAARD & SMITH LLP
          333 Bush Street, Suite 1100
          San Francisco, California 94104-2872
          P:  415.362.2580
          *glenn.friedman@lewisbrisbois.com*
          *paul.desrochers@lewisbrisbois.com*

          *Counsel for Defendant Lion Group, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 8, 2022, a true and correct copy of the foregoing

DEFENDANT LION GROUP, INC.'S OBJECTIONS TO PLAINTIFFS' FIRST SET OF

REQUESTS FOR PRODUCTION was served via electronic mail upon the following:

| <u>FOR PLAINTIFFS:</u> | <u>FOR DEFENDANTS:</u> |
|---|---|
| **Michael A. London**<br>Douglas and London PC<br>59 Maiden Lane, 6th Floor<br>New York, NY 10038<br>(212) 566-7500<br>mlondon@douglasandlondon.com | **Joseph G. Petrosinelli**<br>Williams & Connolly LLP<br>725 Twelfth Street, N.W.<br>Washington, DC 20005<br>(202) 434-5547<br>jpetrosinelli@wc.com |
| **Paul J. Napoli**<br>Napoli Shkolnik<br>1302 Avenida Ponce de León<br>Santurce, Puerto Rico 00907<br>(833) 271-4502<br>pnapoli@nsprlaw.com | **Michael A. Olsen**<br>Mayer Brown LLP<br>71 South Wacker Drive<br>Chicago, IL 60606<br>(312) 701-7120<br>molsen@mayerbrown.com |
| **Scott Summy**<br>Baron & Budd, P.C.<br>3102 Oak Lawn Avenue Suite 1100<br>Dallas, TX 75219<br>(214) 521-3605<br>ssummy@baronbudd.com | **Brian Duffy**<br>Duffy & Young LLC 96 Broad Street<br>Charleston, SC 29401<br>(843) 720-2044<br>bduffy@duffyandyoung.com |
| **Elizabeth C. Pritzker**<br>Pritzker Levine LLP<br>1900 Powell Street, Suite 450<br>Emeryville, CA 94608<br>(415) 692-0772<br>ecp@pritzkerlevine.com | **David E. Dukes**<br>Nelson Mullins Riley & Scarborough LLP<br>1320 Main Street, 17th Floor<br>Columbia, SC 29201<br>(803) 255-9451<br>david.dukes@nelsonmullins.com |
| tkunkle@douglasandlondon.com<br>fthompson@motleyrice.com<br>mbessis@motleyrice.com<br>afffmdlproductions@baronbudd.com | dring@mayerbrown.com<br>talfermann@mayerbrown.com<br>lmontgomery@wc.com<br>pjones@duffyandyoung.com<br>afffmdlproductions@duffyandyoung.com |

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

IN RE:  AQUEOUS FILM-FORMING
FOAMS PRODUCTS LIABILITY
LITIGATION,

MDL No. 2:18-mn-2873-RMG

**This document relates to:  ALL CASES**

## DEFENDANT LION GROUP, INC.'S OBJECTIONS TO
## PLAINTIFFS' FIRST SET OF INTERROGATORIES

Defendant Lion Group, Inc. ("Defendant" or "LION") by and through its attorneys, and pursuant to Fed. R. Civ. P. 26 and 33, hereby serves the below objections to Plaintiffs' First Set of Interrogatories (the "Interrogatories") in the above-captioned matter (the "Action").

LION reserves any and all rights pursuant to Fed. R. Civ. P. 26(e) and 33 to amend, revise, correct, supplement, and/or clarify any of its objections herein, including the assertion of additional general or specific objections arising from matters discovered during the course of this Action. Nothing herein shall be construed as an incidental or implied admission by LION regarding the competence, admissibility, or relevance of any fact or information, or any characterization of such sought by the Document Request.

## GENERAL OBJECTIONS

1.      In this Aqueous Film-Forming Foams ("AFFF") Products Liability Litigation ("MDL"), the Interrogatories are objectionable for a number of reasons, including that they are premature.  While the Interrogatories purport to relate to "All Cases," it is clear that they pertain only to the small number of cases involving allegations that plaintiffs were injured by both AFFF and firefighter turnout gear ("Turnout Gear" or "TOG").  These Turnout Gear claims, which are alleged against LION and around thirteen other defendants ("Turnout Gear Defendants" or "TOG Defendants"), do not predicate liability on the use of or exposure to AFFF.  Accordingly, discovery, and in particular, broad sweeping discovery, into the distinctly unique TOG personal

injury claims is not appropriate at this time, given the current status of the matters pending in the MDL. LION makes these objections subject to and without waiver of its position that discovery concerning alleged injuries from Turnout Gear is premature given the procedural posture of the MDL and expressly reserves its right to assert additional and/or more specific objections to these and any additional or related discovery at the appropriate time.

2.     The Court has conducted a "Science Day" with respect to AFFF only. The scientific issues underlying the TOG claims, however, are fundamentally different from those underlying the AFFF claims. Turnout Gear is not one product or one component, and it is not always used under the same conditions as AFFF. Scientific questions underlying TOG personal injury claims involve different chemicals with different properties and toxicological profiles; different possible exposure pathways (if any); different theoretical exposure concentrations (if any); and a host of other issues that distinguish TOG claims from those involving AFFF. The Science Day held for AFFF does not inform the questions of alleged exposure or adverse effects to plaintiffs claiming harm caused by Turnout Gear.

3.     Discovery against the TOG Defendants is also premature because the existing plaintiff fact sheets are not relevant to Turnout Gear. The plaintiff fact sheets focus on AFFF and contain little to no information pertaining to the TOG claims. There is no information provided from which LION can determine why LION is named as a defendant or LION's role in any plaintiff's alleged injuries from Turnout Gear. Under the procedures and protocols applicable in this MDL, broad and burdensome discovery requests should not be served until after the plaintiffs have completed fact sheets that provide useful foundational information about the TOG claims, especially given the fact that defendants are precluded from serving their own discovery requests on the TOG plaintiffs at this time. The TOG defendants are prepared to meet and confer with plaintiffs' counsel to discuss an appropriate fact sheet for plaintiffs alleging TOG claims.

4.     The Interrogatories are premature because LION has not yet had the opportunity to demonstrate the speculative nature of the claims asserted against it, which should be dismissed by the MDL court on that basis. Before being forced to engage in broad, expansive and burdensome

discovery, LION should be given an opportunity, if it opts to do so, to seek the Rule 12 dismissal of the claims against it.

5.     Case Management Order No. 2 (March 20, 2019) required the Plaintiffs' Executive Committee ("PEC") to "[d]evelop and propose to the Court schedules for the commencement, execution and completion of all discovery on behalf of all plaintiffs."  To LION's knowledge, the PEC has not satisfied that requirement as to any TOG claim or with respect to TOG Defendants; indeed, no TOG claim had been filed at the time CMO No. 2 was entered and discovery commenced against the AFFF defendants.  In short, there is no indication the Court contemplated, much less authorized, broad and one-sided general discovery against the TOG Defendants.

6.     LION objects to the Interrogatories to the extent that they seek documents protected from disclosure by the attorney-client privilege, work-product immunity, joint-defense privilege, common interest privilege, or any other privilege or protection afforded by applicable law.  In the event of an inadvertent disclosure of privileged/protected information or documents, the privilege/protection shall not be waived, and such information and documents will be subject to claw-back and other remedies, consistent with Federal Rule of Civil Procedure 26(b)(5)(B) and Federal Rule of Evidence 502(b).

7.     LION objects to the Interrogatories to the extent that they seek the disclosure of information that constitutes, contains, or otherwise discloses trade secrets or other proprietary or confidential information.  In the event LION is required to produce such information in the MDL, LION will only do so subject to an appropriate protective order.  LION further objects to disclosing any information that is subject to a confidentiality obligation owed by LION to a third party.

8.     LION objects to each and every Interrogatory that seeks the address, telephone numbers, or other personal information of individuals.  In many or most cases, LION does not possess such information, but where it may, LION objects to any such Interrogatory as unduly invasive and unnecessarily violative of those individuals' privacy rights as well as of LION's duty to safeguard the personal information of LION's employees or former employees.  Any current or former LION employee should be contacted only through counsel of record in the Action.

9.      The Interrogatories are objectionable on the grounds that they are overly broad, unduly burdensome and oppressive, particularly but not exclusively to the extent they demand that LION "identify" or "describe" "all" documents, communications, persons or things listed in the Interrogatory or seek similar sweeping categories of information; seek a range of information and documents neither relevant to any claim or defense in the TOG cases; and impose obligations on LION that are disproportionate to the needs of genuine TOG claim discovery.

10.     Several Interrogatories are without any temporal limitation, and the general time period specified in the Interrogatories (1970) (Instruction 8) is so early in time as to be overbroad, unduly burdensome and virtually meaningless.

11.     LION objects that several Interrogatories are without any geographic limitation and therefore seek information that is not relevant to any claim or defense in this litigation.

12.     LION objects that several Interrogatories call for information about products not used by or associated with any plaintiff in this litigation or sold to any defendant in this litigation and, therefore, seek information that is not relevant to any claim or defense in this litigation.

13.     LION objects to the extent any Interrogatory improperly assumes facts, specifically, that TURNOUTS, TURNOUT INTERMEDIATE PRODUCTS or PFAS-CONTAINING PRODUCTS are associated with adverse HUMAN HEALTH or TOXICOLOGICAL EFFECTS, and expressly rejects any such suggestion.

14.     LION expressly reserves all rights, including, in particular but not exclusively, the right to respond to any Interrogatory, as appropriate, by "(1) specifying the records that must be reviewed in sufficient detail to enable [Plaintiffs] to locate and identify them as readily as the responding party could; and (2) giving [Plaintiffs] a reasonable opportunity to examine and audit the records and to make copies, compilations, abstracts, or summaries."  Federal Rule of Civil Procedure 33(d).

## OBJECTIONS TO PLAINTIFFS' DEFINITIONS AND INSTRUCTIONS

LION objects as specified below to the Definitions and Instructions in the Interrogatories. Information may be withheld on the basis of these objections.

1.    LION objects to each definition and each instruction to the extent that it purports to impose on LION obligations beyond those set out in the Federal Rules of Civil Procedure, and therefore causes the Interrogatories to be overly broad, unduly burdensome, or requiring the disclosure of information that is not reasonably accessible.  By way of example only, LION objects to Instruction Nos. 4 and 7, which purport to impose privilege log obligations beyond those required by Federal Rule of Civil Procedure 26(b)(5)(A).

2.    LION objects to each instruction and each definition that is unintelligible, vague or ambiguous, or would so expand the scope of a request as to impose an unreasonable burden or to seek information not relevant to the claims or defenses relative to the TOG personal injury claims. Examples of such problematic instructions and definitions include Instruction Nos. 5 ("describe") and 6 ("identify") and the following definitions:  "Communications," "Internal Communications," "Plaintiffs," "Relating To" or "Concerning," and "You, "Your," and "Defendant."

3.    A number of the definitions are contradictory and render individual Interrogatories unintelligible.  For example, the terms "Sale," "Sell," and "Sold" are limited to the sale of "AFFF," but then those terms are used in Interrogatories that do not pertain to AFFF.  The definitions of "Manufacturing Defendants," "PFAS," "PFOA," "PFOS," "PFAS-Containing Products," and "Turnouts" are vague and ambiguous.

4.    LION will construe the terms used in the Interrogatories based on their ordinary meaning, and based on the facts that are relevant to the TOG claims and defenses.  Specifically:

    a.    LION will construe the term "ADVERSE EFFECTS" to refer to harmful or negative consequences that are presently known to LION, if any.

    b.    LION will construe the term "PFAS-CONTAINING PRODUCTS" to refer to products presently known to LION to be made with material that is a PFAS and/or contain a residual of one of more PFAS, as that term is defined below.

c.  LION will construe the term "PFAS" to refer to multiple types of per- and polyfluoroalkyl substances with different properties that may be contained in, or may be used as, or may be present on the surface of, a component in certain products produced by LION and sold in and for use in the United States.  By construing this definition to correspond to multiple PFAS with different properties, LION does not concede that any specific PFAS is present in TOG used by or associated with any plaintiff, or that the same specific PFAS chemicals are present in all TOG or any component thereof.

d.  LION will construe the term "PFOA" to refer to the chemical compound perfluorooctanoic acid.

e.  LION will construe the term "PFOS" to refer to the chemical compound perfluorooctanesulfonic acid.

f.  LION objects that the term "TURNOUT DEFENDANTS" is not defined and is therefore vague and ambiguous.  LION will construe the term "TURNOUT DEFENDANTS" to mean any current defendant in this MDL that currently or formerly produced or manufactured TURNOUTS.

5.  LION objects to each definition and each instruction that purports to require the disclosure of information not within LION's possession, custody, or control or from persons or entities not within LION's control; calls for a legal conclusion regarding the relationship between certain persons and/or entities; or may encompass relationships of which LION is not aware.

6.  Any eventual disclosure by LION will be on a rolling basis, subject to LION's obligations to supplement, to include responsive information identified and disclosed only after a reasonable search and disclosure effort (and subject to all applicable objections). Any such response will be made pursuant to the protective order in the MDL and Federal Rule of Civil Procedure 33.

## INTERROGATORIES

### INTERROGATORY NO. 1:

Identify each PERSON who has supplied information used in answering these interrogatories and specify the interrogatories for which each PERSON is responsible.

### RESPONSE TO INTERROGATORY NO. 1:

LION objects to this Interrogatory based on General Objections 1-14 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.

### INTERROGATORY NO. 2:

Identify all TURNOUTS containing PFAS or PFAS-CONTAINING PRODUCTS that YOU SOLD to any MANUFACTURING DEFENDANT(S), stating for each: the trade name under which it was SOLD, the number and dollar value of SALES to each MANUFACTURING DEFENDANT(S), and the date(s) when it was SOLD.

### RESPONSE TO INTERROGATORY NO. 2:

LION objects to this Interrogatory based on General Objections 1-14 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.

### INTERROGATORY NO. 3:

Identify the specific PFAS or PFAS-CONTAINING PRODUCTS present in YOUR TURNOUTS.

### RESPONSE TO INTERROGATORY NO. 3:

LION objects to this Interrogatory based on General Objections 1-14 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.

### INTERROGATORY NO. 4:

Identify the names of all distributors that received (by purchase, delivery, or otherwise) TURNOUTS containing PFAS or PFAS-CONTAINING PRODUCTS from YOU from 1970 to present, including the quantity of TURNOUTS YOU delivered, tendered, and/or SOLD, as well as the name or type of the TURNOUTS YOU delivered, tendered, and/or SOLD.

**RESPONSE TO INTERROGATORY NO. 4:**

LION objects to this Interrogatory based on General Objections 1-14 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.

**INTERROGATORY NO. 5:**

Identify the entity or entities from which YOU or anyone on YOUR behalf purchased PFAS or PFAS-CONTAINING PRODUCTS for use in YOUR TURNOUTS.

**RESPONSE TO INTERROGATORY NO. 5:**

LION objects to this Interrogatory based on General Objections 1-14 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.

**INTERROGATORY NO. 6:**

For each entity identified in response to INTERROGATORY NO. 5, identify the PFAS or PFAS-CONTAINING PRODUCTS purchased, the volume and dollar value purchased, and the dates of purchase.

**RESPONSE TO INTERROGATORY NO. 6:**

LION objects to this Interrogatory based on General Objections 1-14 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.

**INTERROGATORY NO. 7:**

Identify all studies, analyses, tests, or reports YOU have ever conducted or contracted with another PERSON to conduct on YOUR behalf CONCERNING either the presence or the amount of PFAS or PFAS-CONTAINING PRODUCTS in YOUR TURNOUTS.

**RESPONSE TO INTERROGATORY NO. 7:**

LION objects to this Interrogatory based on General Objections 1-14 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.

**INTERROGATORY NO. 8:**

Identify all COMMUNICATIONS YOU have had with any MANUFACTURING DEFENDANT(S) CONCERNING either the presence or the amount of PFAS or PFAS-CONTAINING PRODUCTS in YOUR TURNOUTS

**RESPONSE TO INTERROGATORY NO. 8:**

LION objects to this Interrogatory based on General Objections 1-14 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.

**INTERROGATORY NO. 9:**

Identify all COMMUNICATIONS YOU have had with any trade or industry organization CONCERNING either the presence or the amount of PFAS or PFAS-CONTAINING PRODUCTS in YOUR TURNOUTS

**RESPONSE TO INTERROGATORY NO. 9:**

LION objects to this Interrogatory based on General Objections 1-14 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.

**INTERROGATORY NO. 10:**

Identify all COMMUNICATIONS YOU have had with either the National Fire Protection Association or the International Association of Fire Fighters CONCERNING either the presence or the amount of PFAS or PFAS-CONTAINING PRODUCTS in YOUR TURNOUTS.

**RESPONSE TO INTERROGATORY NO. 10:**

LION objects to this Interrogatory based on General Objections 1-14 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.

**INTERROGATORY NO. 11:**

Identify all information YOU provided to any purchaser or user of YOUR TURNOUTS containing PFAS or PFAS-CONTAINING PRODUCTS CONCERNING the formulation or design of YOUR TURNOUTS.

**RESPONSE TO INTERROGATORY NO. 11:**

LION objects to this Interrogatory based on General Objections 1-14 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.

**INTERROGATORY NO. 12:**

Identify all of the ways in which YOU informed purchasers or users of YOUR TURNOUTS containing PFAS or PFAS-CONTAINING PRODUCTS to ensure they were HANDLED and

disposed of properly.

**RESPONSE TO INTERROGATORY NO. 12:**

LION objects to this Interrogatory based on General Objections 1-14 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.

**INTERROGATORY NO. 13:**

Describe any changes YOU made to the HANDLING and/or disposal methods YOU recommended to purchasers or users of YOUR TURNOUTS containing PFAS or PFAS-CONTAINING PRODUCTS from 1970 to present.

**RESPONSE TO INTERROGATORY NO. 13:**

LION objects to this Interrogatory based on General Objections 1-14 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.

**INTERROGATORY NO. 14:**

Identify all DOCUMENTS, instructions, training materials, or other information YOU provided to purchasers or users of YOUR TURNOUTS containing PFAS or PFAS-CONTAINING PRODUCTS CONCERNING the HANDLING and/or disposal of YOUR TURNOUTS.

**RESPONSE TO INTERROGATORY NO. 14:**

LION objects to this Interrogatory based on General Objections 1-14 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.

**INTERROGATORY NO. 15:**

Identify the PERSON most knowledgeable about the DOCUMENTS, instructions, training materials, or other information YOU provided to purchasers or users of YOUR TURNOUTS containing PFAS or PFAS-CONTAINING PRODUCTS CONCERNING the HANDLING and/or disposal of YOUR TURNOUTS.

**RESPONSE TO INTERROGATORY NO. 15:**

LION objects to this Interrogatory based on General Objections 1-14 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.

**INTERROGATORY NO. 16:**

Identify all warnings or information YOU provided to purchasers or users of YOUR TURNOUTS containing PFAS or PFAS-CONTAINING PRODUCTS about any TOXICOLOGICAL EFFECTS of PFAS.

**RESPONSE TO INTERROGATORY NO. 16:**

LION objects to this Interrogatory based on General Objections 1-14 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.

**INTERROGATORY NO. 17:**

Identify all warnings or information YOU provided to purchasers or users of YOUR TURNOUTS containing PFAS or PFAS-CONTAINING PRODUCTS about any HUMAN HEALTH EFFECTS of PFAS.

**RESPONSE TO INTERROGATORY NO. 17:**

LION objects to this Interrogatory based on General Objections 1-14 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.

**INTERROGATORY NO. 18:**

Identify all warnings or information YOU provided to purchasers or users of YOUR TURNOUTS containing PFAS or PFAS-CONTAINING PRODUCTS about any ADVERSE EFFECTS of PFAS, other than the TOXICOLOGICAL and HUMAN HEALTH EFFECTS discussed above.

**RESPONSE TO INTERROGATORY NO. 18:**

LION objects to this Interrogatory based on General Objections 1-14 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.  LION also objects that the phrase "ADVERSE EFFECTS of PFAS, other than the TOXICOLOGICAL and HUMAN HEALTH EFFECTS discussed above," is vague, ambiguous, overly broad and unintelligible.

**INTERROGATORY NO. 19:**

Are YOU aware of or have YOU ever conducted or contracted with another PERSON to conduct any studies, reports, and/or surveys to investigate the TOXICOLOGICAL EFFECTS of any

PFAS present in TURNOUTS?

**RESPONSE TO INTERROGATORY NO. 19:**

LION objects to this Interrogatory based on General Objections 1-14 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.

**INTERROGATORY NO. 20:**

If YOUR response to INTERROGATORY NO. 19 is in the affirmative, identify the study, who conducted the study, the results of the study, any PERSONS with knowledge of relevant facts about the study, and all DOCUMENTS RELATING TO or referencing the study.

**RESPONSE TO INTERROGATORY NO. 20:**

LION objects to this Interrogatory based on General Objections 1-14 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.

**INTERROGATORY NO. 21:**

For each TOXICOLOGICAL EFFECT YOU are aware of that is associated with the PFAS or PFAS-CONTAINING PRODUCTS present in YOUR TURNOUTS, identify the TOXICOLOGICAL EFFECT, the date YOU first became aware of that TOXICOLOGICAL EFFECT, the source of that knowledge, and any DOCUMENTS RELATING TO or referencing that TOXICOLOGICAL EFFECT.

**RESPONSE TO INTERROGATORY NO. 21:**

LION objects to this Interrogatory based on General Objections 1-14 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.

**INTERROGATORY NO. 22:**

For each TOXICOLOGICAL EFFECT identified in response to INTERROGATORY NO. 21, identify the PERSON most knowledgeable about that TOXICOLOGICAL EFFECT and YOUR awareness of it.

**RESPONSE TO INTERROGATORY NO. 22:**

LION objects to this Interrogatory based on General Objections 1-14 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference. LION further objects that

this Interrogatory prematurely calls for the identification of a person most knowledgeable.

## INTERROGATORY NO. 23:

Are YOU aware of or have YOU ever conducted or contracted with another PERSON to conduct any studies, reports and/or surveys to investigate the HUMAN HEALTH EFFECTS of any PFAS present TURNOUTS?

## RESPONSE TO INTERROGATORY NO. 23:

LION objects to this Interrogatory based on General Objections 1-14 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.

## INTERROGATORY NO. 24:

If YOUR response to INTERROGATORY NO. 23 is in the affirmative, identify the study, who conducted the study, the results of the study, any PERSONS with knowledge of relevant facts about the study, and all DOCUMENTS RELATING TO or referencing the study.

## RESPONSE TO INTERROGATORY NO. 24:

LION objects to this Interrogatory based on General Objections 1-14 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.  LION further objects that the phrase "PERSONS with knowledge of relevant facts" is vague, ambiguous and overbroad.

## INTERROGATORY NO. 25:

For each HUMAN HEALTH EFFECT YOU are aware of that is associated with the PFAS or PFAS-CONTAINING PRODUCTS present in YOUR TURNOUTS, identify the HUMAN HEALTH EFFECT, the date YOU first became aware of that HUMAN HEALTH EFFECT, the source of that knowledge, and any DOCUMENTS RELATING TO or referencing that HUMAN HEALTH EFFECT.

## RESPONSE TO INTERROGATORY NO. 25:

LION objects to this Interrogatory based on General Objections 1-14 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.

## INTERROGATORY NO. 26:

For each HEALTH EFFECT identified in response to INTERROGATORY NO. 25, identify

the PERSON most knowledgeable about that HEALTH EFFECT and YOUR awareness of it.

**RESPONSE TO INTERROGATORY NO. 26:**

LION objects to this Interrogatory based on General Objections 1-14 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference. LION further objects that this Interrogatory prematurely calls for the identification of a person most knowledgeable. LION further objects to this Interrogatory as being served in violation of Federal Rule 33(a)(1).

**INTERROGATORY NO. 27:**

Identify all warnings or information YOU provided to purchasers of YOUR TURNOUTS containing PFAS or PFAS-CONTAINING PRODUCTS, including the date each such warning was given, CONCERNING any ADVERSE EFFECTS of PFAS, other than the TOXICOLOGICAL and HUMAN HEALTH EFFECTS discussed above.

**RESPONSE TO INTERROGATORY NO. 27:**

LION objects to this Interrogatory based on General Objections 1-14 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference. LION also objects that the phrase "ADVERSE EFFECTS of PFAS . . . other than the TOXICOLOGICAL and HUMAN HEALTH EFFECTS discussed above" is vague, ambiguous, overly broad and unintelligible. LION further objects to this Interrogatory as being served in violation of Federal Rule 33(a)(1).

**INTERROGATORY NO. 28:**

Identify any and all alternatives to PFAS or PFAS-CONTAINING PRODUCTS YOU investigated or otherwise considered for use in any TURNOUTS YOU SOLD.

**RESPONSE TO INTERROGATORY NO. 28:**

LION objects to this Interrogatory based on General Objections 1-14 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference. LION also objects that this Interrogatory uses the undefined, vague, ambiguous and overly broad terms "alternatives," "investigated" and "considered." LION further objects to this Interrogatory as being served in violation of Federal Rule 33(a)(1).

**INTERROGATORY NO. 29:**

Identify any and all research YOU conducted or reviewed CONCERNING alternatives to PFAS or PFAS-CONTAINING PRODUCTS for use in any TURNOUTS YOU SOLD.

**RESPONSE TO INTERROGATORY NO. 29:**

LION objects to this Interrogatory based on General Objections 1-14 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference. LION also objects that this Interrogatory uses the undefined, vague, ambiguous and overly broad term "alternatives." LION further objects to this Interrogatory as being served in violation of Federal Rule 33(a)(1).

**INTERROGATORY NO. 30:**

Describe how and when YOU became aware that TURNOUTS YOU SOLD contained PFAS or PFAS-CONTAINING PRODUCTS.

**RESPONSE TO INTERROGATORY NO. 30:**

LION objects to this Interrogatory based on General Objections 1-14 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference. LION further objects to this Interrogatory as being served in violation of Federal Rule 33(a)(1).

**INTERROGATORY NO. 31:**

If YOU are aware, identify when YOU became aware of the TOXICOLOGICAL EFFECTS of PFAS or PFAS-CONTAINING PRODUCTS.

**RESPONSE TO INTERROGATORY NO. 31:**

LION objects to this Interrogatory based on General Objections 1-14 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference. LION further objects to this Interrogatory as being served in violation of Federal Rule 33(a)(1).

**INTERROGATORY NO. 32:**

If YOU are aware, identify when YOU became aware of the HUMAN HEALTH EF[F]ECTS of PFAS or PFAS-CONTAINING PRODUCTS.

**RESPONSE TO INTERROGATORY NO. 32:**

LION objects to this Interrogatory based on General Objections 1-14 and Objections to Plaintiffs'

Definitions and Instructions 1-6, which are incorporated herein by reference. LION further objects to this Interrogatory as being served in violation of Federal Rule 33(a)(1).

**INTERROGATORY NO. 33:**

Identify any government law, regulation, or rule that requires or required the use of PFAS or PFAS-CONTAINING PRODUCTS in TURNOUTS.

**RESPONSE TO INTERROGATORY NO. 33:**

LION objects to this Interrogatory based on General Objections 1-14 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference. LION also objects to the extent this Interrogatory calls for information from public sources that are equally available to Plaintiffs as to LION. LION further objects to this Interrogatory as being served in violation of Federal Rule 33(a)(1).

Dated: July 8, 2022                                     Respectfully submitted,

                                                        BY DEFENDANT LION GROUP, INC.


                                                        */s/ Glenn A. Friedman*
                                                        Glenn A. Friedman
                                                        Paul A. Desrochers
                                                        LEWIS BRISBOIS BISGAARD & SMITH LLP
                                                        333 Bush Street, Suite 1100
                                                        San Francisco, California 94104-2872
                                                        P: 415.362.2580
                                                        *glenn.friedman@lewisbrisbois.com*
                                                        *paul.desrochers@lewisbrisbois.com*

                                                        *Counsel for Defendant Lion Group, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on July 8, 2022, a true and correct copy of the foregoing Defendant

Lion Group, Inc.'s Objections to Plaintiffs' First Set of Interrogatories was served via electronic

mail upon the following:

**FOR PLAINTIFFS:**

**Michael A. London**
Douglas and London PC
59 Maiden Lane, 6th Floor
New York, NY 10038
(212) 566-7500
mlondon@douglasandlondon.com

**Paul J. Napoli**
Napoli Shkolnik
1302 Avenida Ponce de León
Santurce, Puerto Rico 00907
(833) 271-4502
pnapoli@nsprlaw.com

**Scott Summy**
Baron & Budd, P.C.
3102 Oak Lawn Avenue Suite 1100
Dallas, TX 75219
(214) 521-3605
ssummy@baronbudd.com

**Elizabeth C. Pritzker**
Pritzker Levine LLP
1900 Powell Street, Suite 450
Emeryville, CA 94608
(415) 692-0772
ecp@pritzkerlevine.com

tkunkle@douglasandlondon.com
fthompson@motleyrice.com
mbessis@motleyrice.com
afffmdlproductions@baronbudd.com

**FOR DEFENDANTS:**

**Joseph G. Petrosinelli**
Williams & Connolly LLP
725 Twelfth Street, N.W.
Washington, DC 20005
(202) 434-5547
jpetrosinelli@wc.com

**Michael A. Olsen**
Mayer Brown LLP
71 South Wacker Drive
Chicago, IL 60606
(312) 701-7120
molsen@mayerbrown.com

**Brian Duffy**
Duffy & Young LLC 96 Broad Street
Charleston, SC 29401
(843) 720-2044
bduffy@duffyandyoung.com

**David E. Dukes**
Nelson Mullins Riley & Scarborough LLP
1320 Main Street, 17th Floor
Columbia, SC 29201
(803) 255-9451
david.dukes@nelsonmullins.com

dring@mayerbrown.com
talfermann@mayerbrown.com
lmontgomery@wc.com
pjones@duffyandyoung.com
afffmdlproductions@duffyandyoung.com

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| IN RE: AQUEOUS FILM-FORMING FOAMS PRODUCTS LIABILITY LITIGATION | MDL NO. 2:18-mn-2873-RMG |
| | This Documents relates to: ALL CASES |

**MUNICIPAL EMERGENCY SERVICES, INC.'S RESPONSES TO**
**PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, **Defendant Municipal Emergency Services, Inc.** ("Defendant" or "MES") serves the below objections to Plaintiffs' First Set of Requests For Production ("Document Requests").

## GENERAL OBJECTIONS

1.     In this Aqueous Film-Forming Foams ("AFFF") Products Liability Litigation ("MDL"), the Document Requests are objectionable for a number of reasons, including that they are premature. While the Document Requests purport to relate to "All Cases," it is clear that they pertain only to the small number of cases involving allegations that plaintiffs were injured by both AFFF and firefighter turnout gear ("Turnout Gear" or "TOG"). These Turnout Gear claims, which are alleged against MES and around thirteen other defendants ("Turnout Gear Defendants" or "TOG Defendants"), do not predicate liability on the use of or exposure to AFFF. Accordingly, discovery, and in particular, broad sweeping discovery, into the distinctly unique TOG personal injury claims is not appropriate at this time, given the current status of the matters pending in the MDL. MES makes these objections subject to and without waiver of its position that discovery concerning alleged injuries from turnout gear is premature given the procedural posture of the MDL and expressly reserves its right to assert additional and/or more specific objections to these and any additional or related discovery at the appropriate time.

1

2.      The Court has conducted a "Science Day" with respect to AFFF only.  The scientific issues underlying the TOG claims, however, are fundamentally different from those underlying the AFFF claims.  Turnout Gear is not one product or one component, and it is not always used under the same conditions as AFFF.  Scientific questions underlying TOG personal injury claims involve different chemicals with different properties and toxicological profiles; different possible exposure pathways (if any); different theoretical exposure concentrations (if any); and a host of other issues that distinguish TOG claims from those involving AFFF.  The Science Day held for AFFF does not inform the questions of alleged exposure or adverse effects to the plaintiffs claiming harm caused by turnout gear.

3.      Discovery against the TOG Defendants is also premature because the existing plaintiff fact sheets are not relevant to Turnout Gear.  The plaintiff fact sheets focus on AFFF and contain little to no information pertaining to the TOG claims.  There is no information provided from which MES can determine why MES is named as a defendant or MES's role in any plaintiff's alleged injuries from turnout gear.  Under the procedures and protocols applicable in this MDL, broad and burdensome discovery requests should not be served until after the plaintiffs have completed fact sheets that provide useful foundational information about the TOG claims, especially given the fact that defendants are precluded from serving their own discovery requests on the TOG plaintiffs at this time.  The TOG Defendants are prepared to meet and confer with plaintiffs' counsel to discuss an appropriate fact sheet for plaintiffs alleging TOG claims.

4.      The Document Requests are premature because MES has not yet had the opportunity to demonstrate the speculative nature of the claims asserted against it, which should be dismissed by the MDL court on that basis.  Before being forced to engage in broad, expansive and burdensome discovery, MES should be given an opportunity, if it opts to do so, to seek the Rule 12 dismissal of the claims against it.

5.      Case Management Order No. 2 (March 20, 2019) required the Plaintiffs' Executive Committee ("PEC") to "[d]evelop and propose to the Court schedules for the commencement, execution and completion of all discovery on behalf of all plaintiffs."  To MES's knowledge, the

PEC has not satisfied that requirement as to any TOG claim or with respect to TOG Defendants; indeed, no TOG claim had been filed at the time CMO No. 2 was entered and discovery commenced against the AFFF defendants.  In short, there is no indication the Court contemplated, much less authorized, broad and one-sided general discovery against the TOG Defendants.

6.      MES objects to the Document Requests to the extent that they seek documents protected from disclosure by the attorney-client privilege, work-product immunity, joint-defense privilege, common interest privilege, or any other privilege or protection afforded by applicable law. In the event of an inadvertent disclosure of privileged/protected documents, the privilege/protection shall not be waived, and such documents will be subject to claw-back and other remedies, consistent with Federal Rule of Civil Procedure 26(b)(5)(B) and Federal Rule of Evidence 502(b).

7.      MES objects to the Document Requests to the extent that they seek documents that constitute, contain, or otherwise disclose trade secrets or other proprietary or confidential information.  In the event MES is required to produce such information in the MDL, MES will only do so subject to an appropriate protective order.  MES further objects to producing any document that is subject to a confidentiality obligation owed by MES to a third party.

8.      The Document Requests are objectionable on the grounds that they are overly broad, unduly burdensome, and oppressive, particularly but not exclusively to the extent they demand the production of "all documents," "all communications," and similar sweeping sets of documents without limitation; seek a range of documents neither relevant to any claim or defense in the TOG cases; and impose obligations on MES that are disproportionate to the needs of genuine TOG claim discovery.

9.      Several requests are without any temporal limitation, and the general time period specified in the Document Requests (1975) (Instruction 13) is so early in time as to be overbroad, unduly burdensome and virtually meaningless.

10.     MES objects that several requests are without any geographic limitation and therefore seek information that is not relevant to any claim or defense in this litigation.

11.    MES objects that several requests call for information about products not used by or associated with any plaintiff in this litigation or sold to any defendant in this litigation and, therefore, seek information that is not relevant to any claim or defense in this litigation.

12.    MES objects to any Request to the extent that it improperly assumes facts, specifically, that AFFF PRODUCTS or TURNOUTS are associated with adverse ENVIRONMENTAL IMPACTS, HUMAN HEALTH or TOXICOLOGICAL EFFECTS, and expressly rejects any such suggestion.

**OBJECTIONS TO PLAINTIFFS' DEFINITIONS AND INSTRUCTIONS**

MES objects as specified below to the Definitions and Instructions in the Document Requests. Documents may be withheld on the basis of these objections.

1.    MES objects to each definition and each instruction to the extent that it purports to impose on MES obligations beyond those set out in the Federal Rules of Civil Procedure, and therefore causes the requests to be overly broad, unduly burdensome, or requiring the production of documents or disclosure of information that is not reasonably accessible.  By way of example only, MES objects to Instruction No. 7, which purports to require the creation of a log of "destroyed, lost, discarded," etc. documents, and Instruction No. 11, which purports to require Defendants to produce documents that are not "relevant or responsive to the[] Requests."

2.    MES objects to each definition that is unintelligible, vague or ambiguous, or would so expand the scope of a request as to impose an unreasonable burden or to seek information not relevant to the claims or defenses relative to the TOG personal injury claims.  Examples of such problematic definitions include "Communications," "Internal Communications," "Plaintiffs," "Relating To" or "Concerning," and "You, Your," and "Defendant."

3.    A number of the definitions are contradictory and render individual Document Requests unintelligible.  For example, the terms "Sale," "Sell," and "Sold" are limited to the sale of "Turnouts," but then those terms are used in requests that do not pertain to Turnouts.  The definitions

of "Manufacturing Defendants," "PFAS," "PFOA," "PFOS," "PFAS-Containing Products," and "Turnouts" are vague and ambiguous.

4.    MES will construe the terms used in the Document Requests based on their ordinary meaning, and based on the facts that are relevant to the TOG claims and defenses.  Specifically:

    a.    MES will construe the term "ADVERSE EFFECTS" to refer to harmful or negative consequences that are presently known to MES, if any.

    b.    MES will construe the term "PFAS-CONTAINING PRODUCTS" to refer to products presently known to MES to be made with material that is a PFAS and/or contain a residual of one or more PFAS, as that term is defined below.

    c.    MES will construe the term "PFAS" to refer to the per- and polyfluoroalkyl substances that are or may be used as a component in certain products sold in and for use in the United States.  By construing this definition to correspond to multiple PFAS with different properties, MES does not concede that any specific PFAS is present in TOG used by or associated with any plaintiff, or that the same specific PFAS chemicals are present in all TOG or any component thereof.

    d.    MES will construe the term "PFOA" to refer to the chemical compound perfluorooctanoic acid.

    e.    MES will construe the term "PFOS" to refer to the chemical compound perfluorooctanesulfonic acid.

5.    MES objects to each definition and each instruction that purports to require the production of documents or information not within MES's possession, custody, or control or from persons or entities not within MES's control; calls for a legal conclusion regarding the relationship between certain persons and/or entities; or may encompass relationships of which MES is not aware.

6.    MES objects to each definition and each instruction, including but not limited to Instructions Nos. 4 and 5, that is inconsistent with the protocol set forth in the MDL court's ESI Order.

7.     Any eventual production by MES will be on a rolling basis, subject to MES's obligations to supplement, to include responsive documents identified and produced only after a reasonable search and production effort (and subject to all applicable objections). Any such production will be made pursuant to the protective order in the MDL and Federal Rule of Civil Procedure 34.

## **REQUESTS FOR PRODUCTION**

1.     All DOCUMENTS CONCERNING warnings YOU provided to purchasers about the HUMAN HEALTH EFFECTS of AFFF or TURNOUTS containing PFAS or PFAS-CONTAINING PRODUCTS.

**RESPONSE:**

MES objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

2.     All DOCUMENTS CONCERNING warnings YOU provided to purchasers about the ENVIRONMENTAL EFFECTS of AFFF or TURNOUTS containing PFAS or PFAS-CONTAINING PRODUCTS.

**RESPONSE:**

MES objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

3.     All DOCUMENTS CONCERNING warnings YOU provided to purchasers about any TOXICOLOGICAL EFFECTS of AFFF or TURNOUTS containing PFAS or PFAS-CONTAINING PRODUCTS.

**RESPONSE:**

MES objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

4.     All DOCUMENTS CONCERNING warnings YOU provided to purchasers about

any ADVERSE EFFECTS of AFFF or TURNOUTS containing PFAS or PFAS-CONTAINING PRODUCTS, other than the ENVIRONMENTAL, HUMAN HEALTH, and TOXICOLOGICAL EFFECTS discussed above.

**RESPONSE:**

MES objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference. MES objects further that the phrase "ADVERSE EFFECTS of AFFF or Turnouts, other than the ENVIRONMENTAL, HUMAN HEALTH and TOXICOLOGICAL EFFECTS discussed above," is vague and unintelligible.

5.    All DOCUMENTS CONCERNING instructions YOU provided RELATING TO the HANDLING and/or disposal of any AFFF PRODUCT(S) or TURNOUTS containing PFAS or PFAS-CONTAINING PRODUCTS YOU SOLD.

**RESPONSE:**

MES objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

6.    All DOCUMENTS YOU used and/or relied on in preparing instructions YOU provided to purchasers CONCERNING the HANDLING and/or disposal of any AFFF PRODUCT(S) or TURNOUTS containing PFAS or PFAS-CONTAINING PRODUCTS YOU SOLD.

**RESPONSE:**

MES objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

7.    All DOCUMENTS CONCERNING any contract and/or agreement between YOU and any MANUFACTURING DEFENDANT(S) for the SALE of AFFF and/or TURNOUTS.

**RESPONSE:**

MES objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by

reference. MES further craves references to the documents included with MES's Defense Fact Sheet.

8.    All DOCUMENTS regarding any formulation and/or design of AFFF that did not contain PFOS or PFOA.

**RESPONSE:**

MES objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference. MES also objects that this Request uses the undefined and vague phrase "formulation and/or design." MES further objects to the extent this Request calls for the production of documents regarding AFFF which is not manufactured, distributed or sold by MES.

9.    All DOCUMENTS regarding any formulation and/or design of TURNOUTS that did not contain PFAS or PFAS-CONTAINING PRODUCTS.

**RESPONSE:**

MES objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference. MES also objects that this Request uses the undefined and vague phrase "formulation and/or design."

10.    All DOCUMENTS identifying the SKUs for AFFF PRODUCT(S) and/or TURNOUTS containing PFAS or PFAS-CONTAINING PRODUCTS YOU SOLD.

**RESPONSE:**

MES objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference. MES further craves references to the documents included with MES's Defense Fact Sheet.

11.    All DOCUMENTS CONCERNING the number and dollar value of sales of each AFFF PRODUCT and/or TURNOUT SKU YOU SOLD.

**RESPONSE:**

MES objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference. MES further craves references to the documents included with MES's Defense Fact Sheet.

12.    All purchase agreements, purchase contracts, invoices, supply contracts, receipts, or other documentation evidencing YOUR purchase and acquisition of AFFF PRODUCT(S) and/or TURNOUTS.

**RESPONSE:**

MES objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference. MES further craves references to the documents included with MES's Defense Fact Sheet.

13.    All DOCUMENTS CONCERNING any contracts and/or agreements that YOU had with suppliers, wholesalers, or any other entity from whom YOU purchased and/or acquired AFFF PRODUCT(S) and/or TURNOUTS for distribution.

**RESPONSE:**

MES objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference. MES further craves references to the documents included with MES's Defense Fact Sheet.

14.    All purchase orders, invoices, contracts, and/or other related materials that provide information about AFFF PRODUCT(S) and/or TURNOUTS YOU SOLD, including but not limited to the dates when YOU SOLD AFFF PRODUCT(S) and/or TURNOUTS, the quantity YOU included in each shipment, and the amount (in dollars) YOU were paid for each shipment.

**RESPONSE:**

MES objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference. MES further craves references to the documents included with MES's Defense Fact Sheet.

15.    All DOCUMENTS RELATING TO the procedures and protocols for maintaining sales, production, volume, and invoicing records for AFFF PRODUCT(S) and/or

TURNOUTS YOU SOLD.

**RESPONSE:**

MES objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference. MES also objects that this Request uses the undefined and vague terms "procedures," and "protocols."

16.    All DOCUMENTS reflecting any assessment and/or analysis of YOUR share of the distribution market for AFFF PRODUCT(S) and/or TURNOUTS from 1970 to present.

**RESPONSE:**

MES objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference. MES also objects that this Request uses the undefined and vague terms "assessment," "analysis," and "market."

17.    ALL DOCUMENTS reflecting the SKUs, number, and dollar value of all AFFF PRODUCT(S) and/or TURNOUTS containing PFAS or PFAS-CONTAINING PRODUCT YOU SOLD to any of the following California fire departments and fire districts: Alameda County Fire Dept., Ben Lomond Fire Protection District, Sacramento Metro Fire Dept., San Francisco Fire Dept., City of Santa Clara Fire Dept., Sunnyvale Dept. of Public Safety, City of San Jose Fire Dept., Gilroy Fire Dept., and Zayante Fire Protection District.

**RESPONSE:**

MES objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference. MES further craves references to the documents included with MES's Defense Fact Sheet.

18.    All studies and/or reports CONCERNING any HUMAN HEALTH EFFECTS posed by PFAS or PFAS-CONTAINING PRODUCTS from AFFF and/or TURNOUTS.

**RESPONSE:**

MES objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

19.    All studies and/or reports CONCERNING any ENVIRONMENTAL EFFECT posed by PFAS or PFAS-CONTAINING PRODUCTS from AFFF.

**RESPONSE:**

MES objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

20.    All studies and/or reports CONCERNING any TOXICOLOGICAL EFFECTS posed by PFAS or PFAS-CONTAINING PRODUCTS from AFFF and/or TURNOUTS.

**RESPONSE:**

MES objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

21.    All COMMUNICATIONS between YOU and other PERSONS CONCERNING any HUMAN HEALTH EFFECTS of PFAS or PFAS-CONTAINING PRODUCTS from AFFF and/or TURNOUTS.

**RESPONSE:**

MES objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

22.    All COMMUNICATIONS between YOU and other PERSONS CONCERNING any ENVIRONMENTAL EFFECTS of PFAS or PFAS-CONTAINING PRODUCTS from AFFF.

**RESPONSE:**

MES objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

23.    All COMMUNICATIONS between YOU and other PERSONS CONCERNING any TOXICOLOGICAL EFFECTS of PFAS or PFAS-CONTAINING PRODUCTS from AFFF

11

and/or TURNOUTS.

**RESPONSE:**

MES objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

24.    All historic and current Material Safety Data Sheets ("MSDS") for any AFFF PRODUCT(S) and/or TURNOUTS containing PFAS or PFAS-CONTAINING PRODUCTS YOU SOLD.

**RESPONSE:**

MES objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

25.    All DOCUMENTS, including but not limited to catalogues, statements circulars, manuals, brochures, reports, and advertisements, which mention, describe, or otherwise refer to the virtues, qualities, characteristics, capabilities, and/or capacities of any AFFF PRODUCT(S) and/or TURNOUTS containing PFAS or PFAS-CONTAINING PRODUCTS YOU SOLD.

**RESPONSE:**

MES objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

26.    All COMMUNICATIONS between YOU and any trade or industry organization CONCERNING HUMAN HEALTH EFFECTS of AFFF and/or TURNOUTS containing PFAS or PFAS-CONTAINING PRODUCTS.

**RESPONSE:**

MES objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

27.    ALL COMMUNICATIONS between YOU and any trade or industry organization CONCERNING ENVIRONMENTAL EFFECTS of AFFF.

**RESPONSE:**

MES objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

28.    ALL COMMUNICATIONS between YOU and any trade or industry organization CONCERNING TOXICOLOGICAL EFFECTS of AFFF and/or TURNOUTS containing PFAS or PFAS-CONTAINING PRODUCTS.

**RESPONSE:**

MES objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

29.    All COMMUNICATIONS between YOU and any trade or industry organization CONCERNING ADVERSE EFFECTS of AFFF and/or TURNOUTS containing PFAS or PFAS-CONTAINING    PRODUCTS,    other    than    the    HUMAN    HEALTH, ENVIRONMENTAL, and TOXICOLOGICAL EFFECTS addressed above.

**RESPONSE:**

MES objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

30.    All COMMUNICATIONS between YOU and any trade or industry organization CONCERNING the safety of AFFF and/or TURNOUTS containing PFAS or PFAS-CONTAINING PRODUCTS.

**RESPONSE:**

MES objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

13

31.    All DOCUMENTS CONCERNING statements issued by YOU or on YOUR behalf RELATING TO the HUMAN HEALTH EFFECTS associated with exposure to AFFF, PFAS, and/or PFAS-CONTAINING PRODUCTS.

**RESPONSE:**

MES objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

32.    All COMMUNICATIONS between YOU and any public relations and/or media consulting firms or agencies CONCERNING any TOXICOLOGICAL EFFECTS of AFFF, PFAS, and/or PFAS-CONTAINING PRODUCTS.

**RESPONSE:**

MES objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

33.    All COMMUNICATIONS between YOU and any public relations and/or media consulting firms or agencies CONCERNING any ENVIRONMENTAL EFFECTS of AFFF, PFAS, and/or PFAS-CONTAINING PRODUCTS.

**RESPONSE:**

MES objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

34.    All COMMUNICATIONS between you and any public relations and/or media consulting firms or agencies CONCERNING any HUMAN HEALTH EFFECTS of AFFF, PFAS, and/or PFAS-CONTAINING PRODUCTS.

**RESPONSE:**

MES objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

35.    All DOCUMENTS CONCERNING the biopersistence and/or the bioaccumulation of PFAS, PFOA, and/or PFOS.

**RESPONSE:**

MES objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.  MES also objects that this Request calls for information that is neither relevant nor proportional to the needs of this litigation to the extent it seeks information about PFAS, PFOA, and/or PFOS that are not components in TURNOUTS, used by or associated with any plaintiff in this litigation or sold to any defendant in this litigation.

36.    All DOCUMENTS CONCERNING studies and/or reports of TOXICOLOGICAL EFFECTS of PFAS, PFOA and/or PFOS conducted by YOU or on YOUR behalf.

**RESPONSE:**

MES objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

37.    All DOCUMENTS and COMMUNICATIONS between YOU and any MANUFACTURING DEFENDANT(S) regarding any TOXICOLOGICAL EFFECTS of PFAS or PFAS-CONTAINING PRODUCTS from AFFF and/or TURNOUTS.

**RESPONSE:**

MES objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

38.    All DOCUMENTS and COMMUNICATIONS between YOU and any MANUFACTURING DEFENDANTS(S) CONCERNING any ENVIRONMENTAL EFFECTS of PFAS or PFAS-CONTAINING PRODUCTS from AFFF.

**RESPONSE:**

MES objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

15

39.    All  DOCUMENTS  and  COMMUNICATIONS  between  YOU  and  any MANUFACTURING  DEFENDANT(S)  CONCERNING  any  HUMAN  HEALTH EFFECTS of PFAS or PFAS-CONTAINING PRODUCTS from AFFF and/or TURNOUTS.

**RESPONSE:**

MES objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

40.    All  DOCUMENTS  and  COMMUNICATIONS  between  YOU  and  any MANUFACTURING DEFENDANT(S) CONCERNING any adverse effects of PFAS or PFAS-CONTAINING  PRODUCTS  from  AFFF  and/or  TURNOUTS,  other  than  the TOXICOLOGICAL, ENVIRONMENTAL, and HUMAN HEALTH EFFECTS discussed above.

**RESPONSE:**

MES objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

41.    All DOCUMENTS CONCERNING studies or research conducted by YOU or on YOUR behalf CONCERNING the use of surfactants other than PFOA or PFOS in the AFFF PRODUCT(S) YOU SOLD.

**RESPONSE:**

MES objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

42.    All DOCUMENTS CONCERNING the effectiveness of surfactants other than PFOA or PFOS for use in the AFFF PRODUCT(S) YOU SOLD.

**RESPONSE:**

MES objects to this request based on General Objections 1-12 and Objections to

Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

43.    All COMMUNICATIONS CONCERNING the use of surfactants other than PFOA or PFOS for use in the AFFF PRODUCT(S) YOU SOLD.

**RESPONSE:**

MES objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

44.    All DOCUMENTS CONCERNING the HANDLING and disposal of AFFF for firefighting training.

**RESPONSE:**

MES objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

45.    All DOCUMENTS CONCERNING the development and adoption of warning DOCUMENTS, instructions, and/or labels on AFFF PRODUCT(S) and/or TURNOUTS containing PFAS or PFAS-CONTAINING PRODUCTS YOU SOLD.

**RESPONSE:**

MES objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

46.    All DOCUMENTS CONCERNING the amount of PFAS in any AFFF PRODUCT(S) and/or TURNOUTS YOU SOLD.

**RESPONSE:**

MES objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

47.    All COMMUNICATIONS between YOU and any MANUFACTURING

17

DEFENDANT(S) CONCERNING the amount of PFAS in any AFFF PRODUCT(S) and/or

TURNOUTS YOU SOLD.

**RESPONSE:**

MES objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

48.    All DOCUMENTS CONCERNING any disclosure that the AFFF PRODUCT(S)

and/or TURNOUTS YOU SOLD contained PFAS.

**RESPONSE:**

MES objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.  MES also objects that this Request uses the undefined and vague term "disclosure."

49.    All DOCUMENTS RELATING TO any insurance coverage or request for any

insurance coverage in connection with any loss, claim, damage or request relating or referring

to this MDL or any other action arising from the use of AFFF PRODUCT(S) or TURNOUTS

containing PFAS or PFAS-CONTAINING PRODUCTS YOU SOLD.

**RESPONSE:**

MES objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

50.    All DOCUMENTS providing the formula(s) for AFFF YOU SOLD at any

time.

**RESPONSE:**

MES objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

51.    All DOCUMENTS that relate or refer to any meetings or correspondence

with, or submissions to, any governmental body, trade association, industry group, or lobbying group regarding AFFF, PFAS, or PFAS-CONTAINING PRODUCTS.

**RESPONSE:**

MES objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

**WILLIAMS MULLEN**

By: *s/Ruth A. Levy*_____
Richard H. Willis
Federal Bar: 4700
rwillis@williamsmullen.com
Ruth A. Levy
Federal Bar: 13275
rlevy@williamsmullen.com
1230 Main Street, Suite 330
Columbia, SC 29201
(T): 803-567-4600
(F): 804-567-4601

*Attorneys for Defendant Municipal Emergency Services, Inc.*

July 8, 2022
Columbia, SC

## <u>CERTIFICATE OF SERVICE</u>

I certify that on July 8, 2022, a true and correct copy of the foregoing was served via electronic

mail upon the following:

Michael A. London
Tate J. Kunkle
Douglas and London PC
mlondon@douglasandlondon.com

Paul J. Napoli
Napoli Shkolnik
pnapoli@nsprlaw.com

Scott Summy
Baron & Budd, P.C.
ssummy@baronbudd.com

Fred Thompson, III
Motley Rice
fthompson@motleyrice.com

*s/ Sara H. Tyer*
Sara H. Tyer, Paralegal

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| IN RE: AQUEOUS FILM-FORMING FOAMS PRODUCTS LIABILITY LITIGATION | MDL NO. 2:18-mn-2873-RMG |
| | This Documents relates to: ALL CASES |

**DEFENDANT MUNICIPAL EMERGENCY SERVICES, INC.'S OBJECTIONS TO
PLAINTIFFS' FIRST SET OF INTERROGATORIES**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, **Municipal Emergency Services, Inc.** ("Defendant" or "MES") serves the below objections to Plaintiffs' First Set of Interrogatories ("Interrogatories").

**GENERAL OBJECTIONS**

1.     In this Aqueous Film-Forming Foams ("AFFF") Products Liability Litigation ("MDL"), the Interrogatories are objectionable for a number of reasons, including that they are premature.  While the Interrogatories purport to relate to "All Cases," it is clear that they pertain only to the small number of cases involving allegations that plaintiffs were injured by both AFFF and firefighter turnout gear ("Turnout Gear" or "TOG").  These Turnout Gear claims, which are alleged against MES and around thirteen other defendants ("Turnout Gear Defendants" or "TOG Defendants"), do not predicate liability on the use of or exposure to AFFF.  Accordingly, discovery, and in particular, broad sweeping discovery, into the distinctly unique TOG personal injury claims is not appropriate at this time, given the current status of the matters pending in the MDL.  MES makes these objections subject to and without waiver of its position that discovery concerning alleged injuries from turnout gear is premature given the procedural posture of the

1

MDL and expressly reserves its right to assert additional and/or more specific objections to these and any additional or related discovery at the appropriate time.

2.     The Court has conducted a "Science Day" with respect to AFFF only.  The scientific issues underlying the TOG claims, however, are fundamentally different from those underlying the AFFF claims.  Turnout Gear is not one product or one component, and it is not always used under the same conditions as AFFF.  Scientific questions underlying TOG personal injury claims involve different chemicals with different properties and toxicological profiles; different possible exposure pathways (if any); different theoretical exposure concentrations (if any); and a host of other issues that distinguish TOG claims from those involving AFFF.  The Science Day held for AFFF does not inform the questions of alleged exposure or adverse effects to plaintiffs claiming harm caused by turnout gear.

3.     Discovery against the TOG defendants is also premature because the existing plaintiff fact sheets are not relevant to Turnout Gear.  The plaintiff fact sheets focus on AFFF and contain little to no information pertaining to the TOG claims.  There is no information provided from which MES can determine why MES is named as a defendant or MES's role in any plaintiff's alleged injuries from turnout gear.  Under the procedures and protocols applicable in this MDL, broad and burdensome discovery requests should not be served until after the plaintiffs have completed fact sheets that provide useful foundational information about the TOG claims, especially given the fact that defendants are precluded from serving their own discovery requests on the TOG plaintiffs at this time.  The TOG defendants are prepared to meet and confer with plaintiffs' counsel to discuss an appropriate fact sheet for plaintiffs alleging TOG claims.

4.     The Interrogatories are premature because MES has not yet had the opportunity to demonstrate the speculative nature of the claims asserted against it, which should be dismissed by the MDL court on that basis.  Before being forced to engage in broad, expansive and burdensome

discovery, MES should be given an opportunity, if it opts to do so, to seek the Rule 12 dismissal of the claims against it.

5.     Case Management Order No. 2 (March 20, 2019) required the Plaintiffs' Executive Committee ("PEC") to "[d]evelop and propose to the Court schedules for the commencement, execution and completion of all discovery on behalf of all plaintiffs." To MES's knowledge, the PEC has not satisfied that requirement as to any TOG claim or with respect to TOG Defendants; indeed, no TOG claim had been filed at the time CMO No. 2 was entered and discovery commenced against the AFFF defendants. In short, there is no indication the Court contemplated, much less authorized, broad and one-sided general discovery against the TOG Defendants.

6.     MES objects to the Interrogatories to the extent that they seek documents protected from disclosure by the attorney-client privilege, work-product immunity, joint-defense privilege, common interest privilege, or any other privilege or protection afforded by applicable law. In the event of an inadvertent disclosure of privileged/protected information or documents, the privilege/protection shall not be waived, and such information and documents will be subject to claw-back and other remedies, consistent with Federal Rule of Civil Procedure 26(b)(5)(B) and Federal Rule of Evidence 502(b).

7.     MES objects to the Interrogatories to the extent that they seek the disclosure of information that constitutes, contains, or otherwise discloses trade secrets or other proprietary or confidential information. In the event MES is required to produce such information in the MDL, MES will only do so subject to an appropriate protective order. MES further objects to disclosing any information that is subject to a confidentiality obligation owed by MES to a third party.

8.     MES objects to each and every Interrogatory that seeks the address, telephone numbers, or other personal information of individuals. In many or most cases, MES does not possess such information, but where it may, MES objects to any such Interrogatory as unduly invasive and unnecessarily violative of those individuals' privacy rights as well as of MES's duty to safeguard the personal information of MES's employees or former employees. Any current or former MES employee should be contacted only through counsel of record in the Action.

9.      The Interrogatories are objectionable on the grounds that they are overly broad, unduly burdensome and oppressive, particularly but not exclusively to the extent they demand that MES "identify" or "describe" "all" documents, communications, persons or things listed in the Interrogatory or seek similar sweeping categories of information; seek a range of information and documents neither relevant to any claim or defense in the TOG cases; and impose obligations on MES that are disproportionate to the needs of genuine TOG claim discovery.

10.     Several Interrogatories are without any temporal limitation, and the general time period specified in the Interrogatories (1970) (Instruction 8) is so early in time as to be overbroad, unduly burdensome and virtually meaningless.

11.     MES objects that several Interrogatories are without any geographic limitation and therefore seek information that is not relevant to any claim or defense in this litigation.

12.     MES objects that several Interrogatories call for information about products not used by or associated with any plaintiff in this litigation or sold to any defendant in this litigation and, therefore, seek information that is not relevant to any claim or defense in this litigation.

13.     MES objects to the extent any Interrogatory improperly assumes facts, specifically, that AFFF TURNOUTS, PRODUCTS or PFAS-CONTAINING PRODUCTS are associated with adverse ENVIRONMENTAL, HUMAN HEALTH, or TOXICOLOGICAL EFFECTS, and expressly rejects any such suggestion.

14.     MES expressly reserves all rights, including, in particular but not exclusively, the right to respond to any Interrogatory, as appropriate, by "(1) specifying the records that must be reviewed in sufficient detail to enable [Plaintiffs] to locate and identify them as readily as the responding party could; and (2) giving [Plaintiffs] a reasonable opportunity to examine and audit the records and to make copies, compilations, abstracts, or summaries."  Federal Rule of Civil Procedure 33(d).

## OBJECTIONS TO PLAINTIFFS' DEFINITIONS AND INSTRUCTIONS

MES objects as specified below to the Definitions and Instructions in the Interrogatories. Information may be withheld on the basis of these objections.

1.    MES objects to each definition and each instruction to the extent that it purports to impose on MES obligations beyond those set out in the Federal Rules of Civil Procedure, and therefore causes the Interrogatories to be overly broad, unduly burdensome, or requiring the disclosure of information that is not reasonably accessible.  By way of example only, MES objects to Instruction Nos. 4 and 7, which purport to impose privilege log obligations beyond those required by Federal Rule of Civil Procedure 26(b)(5)(A).

2.    MES objects to each instruction and each definition that is unintelligible, vague or ambiguous, or would so expand the scope of a request as to impose an unreasonable burden or to seek information not relevant to the claims or defenses relative to the TOG personal injury claims. Examples of such problematic instructions and definitions include Instruction Nos. 5 ("describe") and 6 ("identify") and the following definitions:  "Communications," "Internal Communications," "Plaintiffs," "Relating To" or "Concerning," and "You," "Your," and "Defendant."

3.    A number of the definitions are contradictory and render individual Interrogatories unintelligible.  For example, the terms "Sale," "Sell," and "Sold" are limited to the sale of "AFFF," but then those terms are used in Interrogatories that do not pertain to AFFF.  The definitions of "Manufacturing Defendants," "PFAS," PFOA," PFOS," "PFAS-Containing Products," and "Turnouts" are vague and ambiguous.

4.    MES will construe the terms used in the Interrogatories based on their ordinary meaning, and based on the facts that are relevant to the TOG claims and defenses.  Specifically:

        a.    MES will construe the term "ADVERSE EFFECTS" to refer to harmful or negative consequences that are presently known to MES, if any.

    b.  MES will construe the term "PFAS-CONTAINING PRODUCTS" to refer to products presently known to MES to be made with material that is a PFAS and/or contain a residual of one or more PFAS, as that term is defined below.

    c.  MES will construe the term "PFAS" to refer to the per- and polyfluoroalkyl substances that are or may be used as a component in certain products sold in and for use in the United States. By construing this definition to correspond to multiple PFAS with different properties, MES does not concede that any specific PFAS is present in TOG used by or associated with any plaintiff, or that the same specific PFAS chemicals are present in all TOG or any component thereof.

    d.  MES will construe the term "PFOA" to refer to the chemical compound perfluorooctanoic acid.

    e.  MES will construe the term "PFOS" to refer to the chemical compound perfluorooctanesulfonic acid.

5.    MES objects to each definition and each instruction that purports to require the disclosure of information not within MES's possession, custody, or control or from persons or entities not within MES's control; calls for a legal conclusion regarding the relationship between certain persons and/or entities; or may encompass relationships of which MES is not aware.

6.    Any eventual disclosure by MES will be on a rolling basis, subject to MES's obligations to supplement, to include responsive information identified and disclosed only after a reasonable search and disclosure effort (and subject to all applicable objections). Any such response will be made pursuant to the protective order in the MDL and Federal Rule of Civil Procedure 33.

## INTERROGATORIES

1.      Identify each PERSON who has supplied information used in answering these interrogatories and specify the interrogatories for which each PERSON is responsible.

**Answer:**

MES objects to this Interrogatory based on General Objections 1-14 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.

2.      Identify all AFFF PRODUCTS(S) and/or TURNOUTS YOU have SOLD to the following California fire departments and fire districts, state for each: the trade name under which it was SOLD, the number and dollar value of SALES to each fire department and/or district, and the dates during which it was SOLD: Alameda County Fire Dept., Ben Lomond Fire Protection District, Sacramento Metro Fire Dept., San Francisco Fire Dept., City of Santa Clara Fire Dept., Sunnyvale Dept. of Public Safety, City of San Jose Fire Dept., Gilroy Fire Dept., and Zayante Fire Protection District.

**Answer:**

MES objects to this Interrogatory based on General Objections 1-14 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference. MES further craves reference to the information contained within MES's Defense Fact Sheet.

3.      Identify the names of all California fire departments and fire districts that received, by purchase, delivery, or otherwise, AFFF PRODUCT(S) and/or TURNOUTS from YOU from 1970 to present, including the quantity of AFFF PRODUCT(S) and/or TURNOUTS YOU delivered, tendered, and/or SOLD, as well as the name or type of the AFFF PRODUCT(S) and/or TURNOUTS YOU delivered, tendered, and/or SOLD.

**Answer:**

MES objects to this Interrogatory based on General Objections 1-14 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.

MES further craves reference to the information contained within MES's Defense Fact Sheet.

4.    Identify the entity or entities from which YOU or anyone on YOUR behalf purchased and/or distributed for final sale AFFF PRODUCT(S) and/or TURNOUTS.

**Answer:**

MES objects to this Interrogatory based on General Objections 1-14 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference. MES further craves reference to the information contained within MES's Defense Fact Sheet.

5.    Identify all information YOU provided to any purchaser of user or the AFFF PRODUCT(S) YOU SOLD CONCERNING the formulation or design of those AFFF PRODUCT(S).

**Answer:**

MES objects to this Interrogatory based on General Objections 1-14 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference. MES further craves reference to the information contained within MES's Defense Fact Sheet.

6.    Identify all of the ways in which YOU informed purchasers of the AFFF PRODUCT(S) and/or TURNOUTS YOU SOLD to ensure they were HANDLED and disposed of properly.

**Answer:**

MES objects to this Interrogatory based on General Objections 1-14 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference. MES further craves reference to the information contained within MES's Defense Fact Sheet.

7.    Describe any changes YOU made to the HANDLING and/or disposal methods YOU recommended to purchasers or users of the AFFF PRODUCT(S) and/or TURNOUTS YOU SOLD from 1970 to present.

8

**Answer:**

MES objects to this Interrogatory based on General Objections 1-14 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference. MES further craves reference to the information contained within MES's Defense Fact Sheet.

8.      Identify all DOCUMENTS, instructions, training materials, or other information YOU provided to purchasers or users of the AFFF PRODUCT(S) and/or TURNOUTS YOU SOLD CONCERNING the HANDLING and/or disposal of those AFFF PRODUCT(S) and/or TURNOUTS.

**Answer:**

MES objects to this Interrogatory based on General Objections 1-14 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference. MES further craves reference to the information contained within MES's Defense Fact Sheet.

9.      Identify the PERSON most knowledgeable about the DOCUMENTS, instructions, training materials, or other information YOU provided to purchasers or users of the AFFF PRODUCT(S) and/or TURNOUTS YOU SOLD CONCERNING the HANDLING and/or disposal of those AFFF PRODUCT(S) and/or TURNOUTS.

**Answer:**

MES objects to this Interrogatory based on General Objections 1-14 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.

10.      Identify all warnings or information YOU provided to purchasers or users of the AFFF PRODUCT(S) YOU SOLD about any potential ENVIRONMENTAL EFFECTS of PFAS or PFAS-CONTAINING PRODUCTS.

**Answer:**

MES objects to this Interrogatory based on General Objections 1-14 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference. MES further craves reference to the information contained within MES's Defense Fact Sheet.

11.    For each warning identified in response to INTERROGATORY NO. 10, identify

the content of such warning and the date on which the warning was provided.

**Answer:**

MES objects to this Interrogatory based on General Objections 1-14 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference. MES further craves reference to the information contained within MES's Defense Fact Sheet.

12.    Identify all warnings or information YOU provided to purchasers or users of the

AFFF PRODUCT(S) and/or TURNOUTS YOU SOLD about any TOXICOLOGICAL EFFECTS

of PFAS or PFAS-CONTAINING PRODUCTS.

**Answer:**

MES objects to this Interrogatory based on General Objections 1-14 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.

13.    Identify all warnings or information YOU provided to purchasers or users of the

AFFF PRODUCT(S) and/or TURNOUTS YOU SOLD about any HUMAN HEALTH EFFECTS

of PFAS or PFAS-CONTAINING PRODUCTS.

**Answer:**

MES objects to this Interrogatory based on General Objections 1-14 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.

14.    Identify all warnings or information YOU provided to purchasers or users of the

AFFF PRODUCT(S) and/or TURNOUTS YOU SOLD about any ADVERSE EFFECTS of PFAS

or PFAS-CONTAINING PRODUCTS, other than the ENVIRONMENTAL, TOXICOLOGICAL,

and HUMAN HEALTH EFFECTS discussed above.

**Answer:**

MES objects to this Interrogatory based on General Objections 1-14 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.

MES also objects that the phrase "ADVERSE EFFECTS of PFAS . . . other than the ENVIRONMENTAL, TOXICOLOGICAL, and HUMAN HEALTH EFFECTS discussed above" is vague, ambiguous, overly broad and unintelligible.

15.    Are YOU aware or have YOU ever conducted or contracted with another PERSON to conduct any studies, reports, and/or surveys to investigate the TOXICOLOGICAL EFFECTS of any PFAS present in AFFF and/or TURNOUTS?

**Answer:**

MES objects to this Interrogatory based on General Objections 1-14 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.

16.    If YOUR response to INTERROGATORY NO. 15 is in the affirmative, identify the study, who conducted the study, the results of the study, any PERSONS with knowledge of relevant facts about the study, and all DOCUMENTS RELATING TO or referencing the study.

**Answer:**

MES objects to this Interrogatory based on General Objections 1-14 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.

17.    For each TOXICOLOGICAL EFFECT YOU are aware of that is associated with the PFAS or PFAS-CONTAINING PRODUCTS present in AFFF PRODUCT(S) and/or TURNOUTS, identify the TOXICOLOGICAL EFFECT, the date YOU first became aware of that TOXICOLOGICAL EFFECT, the source of that knowledge, and any DOCUMENTS RELATING TO or referencing that TOXICOLOGICAL EFFECT.

**Answer:**

MES objects to this Interrogatory based on General Objections 1-14 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.

18.    For each TOXICOLOGICAL EFFECT identified in response to INTERROGATORY NO. 17, identify the PERSON most knowledgeable about that TOXICOLOGICAL EFFECT and YOUR awareness of it.

11

**Answer:**

MES objects to this Interrogatory based on General Objections 1-14 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference. MES further objects that this Interrogatory prematurely calls for the identification of a person most knowledgeable.

19.     Are YOU aware of or have YOU ever conducted or contracted with another PERSON to conduct any studies, reports and/or surveys to investigate the HUMAN HEALTH EFFECTS of any PFAS present in AFFF and/or TURNOUTS?

**Answer:**

MES objects to this Interrogatory based on General Objections 1-14 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.

20.     If YOUR response to INTERROGATORY NO. 19 is in the affirmative, identify the study, who conducted the study, the results of the study, and PERSONS with knowledge of relevant facts about the study, and all DOCUMENTS RELATING TO or referencing the study.

**Answer:**

MES objects to this Interrogatory based on General Objections 1-14 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference. MES further objects that the phrase "PERSONS with knowledge of relevant facts" is vague, ambiguous, and overbroad.

21.     For each HUMAN HEALTH EFFECT YOU are aware of that is associated with the PFAS or PFAS-CONTAINING PRODUCTS present in AFFF PRODUCT(S) and/or TURNOUTS, identify the HUMAN HEALTH EFFECT, the date YOU first became aware of that HUMAN HEALTH EFFECT, the source of that knowledge, and any DOCUMENTS RELATING TO or referencing that HUMAN HEALTH EFFECT.

**Answer:**

MES objects to this Interrogatory based on General Objections 1-14 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.

12

22.    For each HEALTH EFFECT identified in response to INTERROGATORY NO. 21, identify the PERSON most knowledgeable about that HEALTH EFFECT and YOUR awareness of it.

**Answer:**

MES objects to this Interrogatory based on General Objections 1-14 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference. MES further objects that this Interrogatory prematurely calls for the identification of a person most knowledgeable.

23.    Are YOU aware of or have YOU ever conducted or contracted with another PERSON to conduct any studies, reports, and/or surveys to investigate the ENVIRONMENTAL EFFECTS of any PFAS present if AFFF PRODUCT(S)?

**Answer:**

MES objects to this Interrogatory based on General Objections 1-14 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.

24.    If YOUR response to INTERROGATORY NO. 23 is in the affirmative, identify the study, who conducted the study, the results of the study, any PERSONS with knowledge of relevant facts about the study, and all DOCUMENTS RELATING TO or referencing the study.

**Answer:**

MES objects to this Interrogatory based on General Objections 1-14 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference. MES further objects that this Interrogatory prematurely calls for the identification of a person most knowledgeable.  MES further objections that the phrase "PERSONS with knowledge of relevant facts" is vague, ambiguous, and overbroad.

25.    For each ENVIRONMENTAL EFFECT YOU are aware of that is associated with the PFAS or PFAS-CONTAINING PRODUCTS present in AFFF, identify the ENVIRONMENTAL EFFECT, the date YOU first became aware of that ENVIRONMENTAL EFFECT, the source of that knowledge, and any DOCUMENTS RELATING TO or referencing

that ENVIRONMENTAL EFFECT.

**Answer:**

MES objects to this Interrogatory based on General Objections 1-14 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.

26.    For each ENVIRONMENTAL EFFECT identified in response to INTERROGATORY NO. 25, identify the PERSON most knowledgeable about that ENVIRONMENTAL EFFECT and YOUR awareness of it.

**Answer:**

MES objects to this Interrogatory based on General Objections 1-14 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference. MES further objects that this Interrogatory prematurely calls for the identification of a person most knowledgeable.

27.    Identify all warnings or information YOU provided to purchasers or users of the AFFF PRODUCT(S) and/or TURNOUTS YOU SOLD, including the date each such warning was given, CONCERNING any ADVERSE EFFECTS of PFAS or PFAS-CONTAINING PRODUCTS, other than the ENVIRONMENTAL, TOXICOLOGICAL, and HUMAN HEALTH EFFECTS discussed above.

**Answer:**

MES objects to this Interrogatory based on General Objections 1-14 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference. MES also objects that the phrase "ADVERSE EFFECTS of PFAS . . . other than the ENVIRONMENTAL, TOXICOLOGICAL and HUMAN HEALTH EFFECTS discussed above" is vague, ambiguous, overly broad, and unintelligible.

28.    Identify any and all alternatives to PFAS or PFAS-CONTAINING PRODUCTS YOU investigated or otherwise considered for use in any AFFF PRODUCT(S) and/or TURNOUTS YOU SOLD.

14

**Answer:**

MES objects to this Interrogatory based on General Objections 1-14 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference. MES also objects that this Interrogatory uses the undefined, vague, ambiguous, and overly broad terms "alternatives," "investigated," and "considered."

29.    Identify any and all research YOU conducted or reviewed CONCERNING alternatives to PFAS or PFAS-CONTAINING PRODUCTS for use in any AFFF PRODUCT(S) and/or TURNOUTS YOU SOLD.

**Answer:**

MES objects to this Interrogatory based on General Objections 1-14 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference. MES also objects that this Interrogatory uses the undefined, vague, and ambiguous term "alternatives."

30.    Identify how and when YOU became aware that AFFF PRODUCTS YOU SOLD contained PFAS or PFAS-CONTAINING PRODUCTS.

**Answer:**

MES objects to this Interrogatory based on General Objections 1-14 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference. MES further objects to this Interrogatory as being served in violation of Federal Rule 33(a)(1).

31.    Identify how and when YOU became aware that TURNOUTS YOU SOLD contained PFAS or PFAS-CONTAINING PRODUCTS.

**Answer:**

MES objects to this Interrogatory based on General Objections 1-14 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference. MES further objects to this Interrogatory as being served in violation of Federal Rule 33(a)(1).

32.    If YOU are aware, identify when YOU became aware of the ENVIRONMENTAL EFFECTS of PFAS or PFAS-CONTAINING PRODUCTS.

**Answer:**

MES objects to this Interrogatory based on General Objections 1-14 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference. MES further objects to this Interrogatory as being served in violation of Federal Rule 33(a)(1).

33.      If YOU are aware, identify when YOU became aware of the TOXICOLOGICAL EFFECTS of PFAS or PFAS-CONTAINING PRODUCTS.

**Answer:**

MES objects to this Interrogatory based on General Objections 1-14 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference. MES further objects to this Interrogatory as being served in violation of Federal Rule 33(a)(1).

34.      If YOU are aware, identify when YOU became aware of the HUMAN HEALTH EFFECTS of PFAS or PFAS-CONTAINING PRODUCTS.

**Answer:**

MES objects to this Interrogatory based on General Objections 1-14 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference. MES further objects to this Interrogatory as being served in violation of Federal Rule 33(a)(1).

*[Signature Page to Follow]*

16

**WILLIAMS MULLEN**

By: *s/Ruth A. Levy*
Richard H. Willis
Federal Bar: 4700
rwillis@williamsmullen.com
Ruth A. Levy
Federal Bar: 13275
rlevy@williamsmullen.com
1230 Main Street, Suite 330
Columbia, SC 29201
(T): 803-567-4600
(F): 804-567-4601

*Attorneys for Defendant Municipal Emergency Services, Inc.*

July 8, 2022
Columbia, SC

## <u>CERTIFICATE OF SERVICE</u>

I certify that on July 8, 2022, a true and correct copy of the foregoing was served via electronic mail upon the following:

Michael A. London
Tate J. Kunkle
Douglas and London PC
mlondon@douglasandlondon.com

Paul J. Napoli
Napoli Shkolnik
pnapoli@nsprlaw.com

Scott Summy
Baron & Budd, P.C.
ssummy@baronbudd.com

Fred Thompson, III
Motley Rice
fthompson@motleyrice.com

*s/ Sara H. Tyer*
Sara H. Tyer, Paralegal

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | |
|---|---|
| IN RE:  AQUEOUS FILM-FORMING FOAMS PRODUCT LIABILITY LITIGATION | MDL No:  2:18-mn-2873-RMG<br><br>**This Document relates to:**<br>**ALL CASES** |

**MINE SAFETY APPLIANCES COMPANY, LLC'S OBJECTIONS TO**
**PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Defendant Mine Safety Appliances Company, LLC ("MSA LLC") hereby serves the below objections to Plaintiffs' First Set of Requests for Production of Documents ("Document Requests").

**GENERAL OBJECTIONS**

1.      In this Aqueous Film-Forming Foams ("AFFF") Products Liability Litigation ("MDL"), the Document Requests are objectionable for a number of reasons, including that they are premature.  While the Document Requests purport to relate to "All Cases," it is clear that they pertain only to the small number of cases involving allegations that plaintiffs were injured by both AFFF and firefighter turnout gear ("Turnout Gear" or "TOG").  These Turnout Gear claims, which are alleged against MSA LLC and around thirteen other defendants ("Turnout Gear Defendants" or "TOG Defendants"), do not predicate liability on the use of or exposure to AFFF.  Accordingly, discovery, and in particular, broad sweeping discovery, into the distinctly unique TOG personal injury claims is not appropriate at this time, given the current status of the matters pending in the MDL.  MSA LLC makes these objections subject to and without waiver of its position that discovery concerning alleged injuries from Turnout Gear is premature given the procedural posture of the MDL and expressly reserves its right to assert additional and/or more specific objections to these and any additional or related discovery at the appropriate time.

1

2.    The Court has conducted a "Science Day" with respect to AFFF only. The scientific issues underlying the TOG claims, however, are fundamentally different from those underlying the AFFF claims. Turnout Gear is not one product or one component, and it is not always used under the same conditions as AFFF. Scientific questions underlying TOG personal injury claims involve different chemicals with different properties and toxicological profiles, different possible exposure pathways (if any), different theoretical exposure concentrations (if any), and a host of other issues that distinguish TOG claims from those involving AFFF. The Science Day held for AFFF does not fully inform the questions of alleged exposure or adverse effects to the plaintiffs claiming harm caused by Turnout Gear.

3.    Discovery against the TOG Defendants is also premature because the existing plaintiff fact sheets are not relevant to Turnout Gear. The plaintiff fact sheets focus on AFFF and contain little to no information pertaining to the TOG claims. There is no information provided from which MSA LLC can determine why it is named as a defendant or MSA LLC's role in any of plaintiffs' alleged injuries from Turnout Gear. Under the procedures and protocols applicable in this MDL, broad and burdensome discovery requests should not be served until after the plaintiffs have completed fact sheets that provide useful foundational information about the TOG claims, especially given the fact that defendants are precluded from serving their own discovery requests on the TOG plaintiffs at this time. The TOG Defendants are prepared to meet and confer with plaintiffs' counsel to discuss an appropriate fact sheet for plaintiffs alleging TOG claims.

4.    The Document Requests are premature because MSA LLC has not yet had the opportunity to demonstrate the speculative nature of the claims asserted against it, which should be dismissed by the MDL court on that basis. Before being forced to engage in broad, expansive and burdensome discovery, MSA LLC should be given an opportunity, if it opts to do so, to seek the Rule 12 dismissal of the claims against it.

5.    Case Management Order No. 2 (March 20, 2019) required the Plaintiffs' Executive Committee ("PEC") to "[d]evelop and propose to the Court schedules for the commencement, execution and completion of all discovery on behalf of all plaintiffs." To MSA LLC's knowledge,

the PEC has not satisfied that requirement as to any TOG claim or with respect to TOG Defendants; indeed, no TOG claim had been filed at the time CMO No. 2 was entered and discovery commenced against the AFFF defendants.  In short, there is no indication the Court contemplated, much less authorized, broad and one-sided general discovery against the TOG Defendants.

6.    MSA LLC objects to the Document Requests to the extent that they seek documents protected from disclosure by the attorney-client privilege, work-product immunity, joint-defense privilege, common-interest privilege, or any other privilege or protection afforded by applicable law.    In the event of an inadvertent disclosure of privileged/protected documents, the privilege/protection shall not be waived, and such documents will be subject to clawback and other remedies, consistent with Federal Rule of Civil Procedure 26(b)(5)(B) and Federal Rule of Evidence 502(b).

7.    MSA LLC objects to the Document Requests to the extent that they seek documents that constitute, contain, or otherwise disclose trade secrets or other proprietary or confidential information.  In the event MSA LLC is required to produce such information in the MDL, MSA LLC will only do so subject to an appropriate protective order.  MSA LLC further objects to producing any document that is subject to a confidentiality obligation owed by MSA LLC to a third party.

8.    The Document Requests are objectionable on the grounds that they are overly broad, unduly burdensome, and oppressive, particularly but not exclusively to the extent they demand the production of "all documents," "all communications," and similar sweeping sets of documents without limitation; seek a range of documents neither relevant to any claim or defense in the TOG cases; and impose obligations on MSA LLC that are disproportionate to the needs of proportional TOG claim discovery.

9.    Several Requests are without any temporal limitation, and the general time period specified in the Document Requests (1970) (Instruction 13) is so early in time as to be overbroad, unduly burdensome, and virtually meaningless.

10.    MSA LLC objects that several Requests are without any geographic limitation and therefore seek information that is not relevant to any claim or defense in this litigation.

11.    MSA LLC objects that several Requests call for information about products not used by or associated with any plaintiff in this litigation or sold to any defendant in this litigation and, therefore, seek information that is not relevant to any claim or defense in this litigation.

12.    MSA LLC objects to any Request to the extent that it improperly assumes facts, specifically, that TURNOUTS are associated with ADVERSE, HUMAN HEALTH, or TOXICOLOGICAL EFFECTS, and expressly rejects any such suggestion.

13.    MSA LLC objects to the Requests to the extent that they assume or suggest that MSA LLC had knowledge concerning PFAS or PFAS-containing products in components of Turnout Gear at any given time, or that it had any legal duty or obligation to provide PFAS-related warnings at any given time.  Further, MSA LLC objects to the Requests to the extent they seek documents concerning Turnout Gear components that MSA LLC may have purchased from others, where such documents are outside of MSA LLC's possession, custody, or control and/or it would be less burdensome to obtain the documents from the manufacturers and/or sellers of those components.

**OBJECTIONS TO PLAINTIFFS' DEFINITIONS AND INSTRUCTIONS**

MSA LLC objects as specified below to the Definitions and Instructions in the Document Requests.  Documents may be withheld on the basis of these objections.

1.    MSA LLC objects to each definition and each instruction to the extent that it purports to impose on MSA LLC obligations beyond those set out in the Federal Rules of Civil Procedure, and therefore causes the Requests to be overly broad, unduly burdensome, or requires the production of documents or disclosure of information that is not reasonably accessible.  By way of example only, MSA LLC objects to Instruction No. 7, which purports to require the creation of a log of "destroyed, lost, discarded," etc. documents, and Instruction No. 11, which purports to require Defendants to produce documents that are not "relevant or responsive to the[] Requests."

4

2.      MSA LLC objects to each definition that is unintelligible, vague or ambiguous, or would so expand the scope of a Request as to impose an unreasonable burden or to seek information not relevant to the claims or defenses relative to the TOG personal injury claims. Examples of such problematic definitions include "Communications," "Internal Communications," "Plaintiffs," "Relating To" or "Concerning," and "You," "Your," and "Defendant."

3.      A number of the definitions are contradictory and render individual Document Requests unintelligible.  For example, the terms "Sale," "Sell," and "Sold" are limited to the sale of "Turnouts," but then those terms are used in Requests that do not pertain to Turnouts.  Other definitions, including the definitions of "Manufacturing Defendants," "PFAS," "PFOA," "PFOS," "PFAS-Containing Products," and "Turnouts," are vague and ambiguous.

4.      MSA LLC objects to each definition and each instruction that purports to require the production of documents or information not within MSA LLC's possession, custody, or control or from persons or entities not within MSA LLC's control; calls for a legal conclusion regarding the relationship between certain persons and/or entities; or may encompass relationships of which MSA LLC is not aware.  Furthermore, MSA LLC objects to the Document Requests to the extent that they seek documents and information from Globe Manufacturing Company, LLC, which is a separate entity distinct from MSA LLC.  MSA LLC will not respond on behalf of Globe Manufacturing Company, LLC and will not provide documents or information on its behalf.

5.      MSA LLC objects to each definition and each instruction, including but not limited to Instructions Nos. 4 and 5, that is inconsistent with the protocol set forth in the MDL court's ESI Order.

6.      Any eventual production by MSA LLC, if any, would be on a rolling basis, subject to MSA LLC's obligations to supplement, to include responsive documents identified and produced only after a reasonable search and production effort (and subject to all applicable objections).  Any such production would be made pursuant to the protective order in the MDL and Federal Rule of Civil Procedure 34.

## OBJECTIONS AND RESPONSES TO REQUESTS FOR PRODUCTION

### REQUEST FOR PRODUCTION NO. 1:

All DOCUMENTS CONCERNING warnings YOU provided about any HUMAN HEALTH EFFECTS of TURNOUTS containing PFAS or PFAS-CONTAINING PRODUCTS.

### RESPONSE TO REQUEST FOR PRODUCTION NO. 1:

MSA LLC objects to this Request based on General Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference. MSA LLC also objects that the use of the undefined term "warnings," as used in this Request, is vague and ambiguous.

### REQUEST FOR PRODUCTION NO. 2:

All DOCUMENTS CONCERNING warnings YOU provided about any TOXICOLOGICAL EFFECTS of TURNOUTS containing PFAS or PFAS-CONTAINING PRODUCTS.

### RESPONSE TO REQUEST FOR PRODUCTION NO. 2:

MSA LLC objects to this Request based on General Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference. MSA LLC also objects that the use of the undefined term "warnings," as used in this Request, is vague and ambiguous.

### REQUEST FOR PRODUCTION NO. 3:

All DOCUMENTS CONCERNING warnings YOU provided about any ADVERSE EFFECTS of TURNOUTS containing PFAS or PFAS-CONTAINING PRODUCTS, other than the HUMAN HEALTH and TOXICOLOGICAL EFFECTS discussed above.

### RESPONSE TO REQUEST FOR PRODUCTION NO. 3:

MSA LLC objects to this Request based on General Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference. MSA LLC objects further that the phrase "ADVERSE EFFECTS of TURNOUTS, other than the HUMAN HEALTH and TOXICOLOGICAL EFFECTS discussed above," is vague and unintelligible. MSA LLC also objects that the use of the undefined term "warnings," as used in this Request, is vague and ambiguous.

### REQUEST FOR PRODUCTION NO. 4:

All DOCUMENTS CONCERNING instructions YOU provided RELATING TO the HANDLING of any TURNOUTS containing PFAS or PFAS-CONTAINING PRODUCTS YOU SOLD.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 4:**

MSA LLC objects to this Request based on General Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.

**REQUEST FOR PRODUCTION NO. 5:**

All DOCUMENTS YOU used and/or relied on in preparing instructions YOU provided CONCERNING the HANDLING of any TURNOUTS containing PFAS or PFAS-CONTAINING PRODUCTS YOU SOLD.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 5:**

MSA LLC objects to this Request based on General Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.

**REQUEST FOR PRODUCTION NO. 6:**

All DOCUMENTS CONCERNING any contract and/or agreement between YOU and any MANUFACTURING DEFENDANT(S) for the SALE of TURNOUTS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 6:**

MSA LLC objects to this Request based on General Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.

**REQUEST FOR PRODUCTION NO. 7:**

All DOCUMENTS CONCERNING any contract and/or agreement between YOU and any MANUFACTURING DEFENDANT(S) for the purchase of materials containing PFAS or PFAS-CONTAINING PRODUCTS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 7:**

MSA LLC objects to this Request based on General Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.

**REQUEST FOR PRODUCTION NO. 8:**

All COMMUNICATIONS between YOU and any MANUFACTURING DEFENDANT(S) CONCERNING PFAS and/or the presence of PFAS or PFAS-CONTAINING PRODUCTS in TURNOUTS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 8:**

MSA LLC objects to this Request based on General Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference. MSA LLC also objects that the use of the undefined term "presence," as used in this Request, is vague and ambiguous.

**REQUEST FOR PRODUCTION NO. 9:**

All DOCUMENTS regarding any formulation and/or design of TURNOUTS that did not contain PFAS or PFAS-CONTAINING PRODUCTS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 9:**

MSA LLC objects to this Request based on General Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference. MSA LLC also objects that this Request uses the undefined and vague phrase "formulation and/or design."

**REQUEST FOR PRODUCTION NO. 10:**

All COMMUNICATIONS between YOU and any MANUFACTURING DEFENDANT(S) CONCERNING any formulation and/or design of TURNOUTS that did not contain PFAS or PFAS-CONTAINING PRODUCTS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 10:**

MSA LLC objects to this Request based on General Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference. MSA LLC also objects that this Request uses the undefined and vague phrase "formulation and/or design."

**REQUEST FOR PRODUCTION NO. 11:**

All DOCUMENTS identifying the SKUs for TURNOUTS containing PFAS or PFAS-CONTAINING PRODUCTS YOU SOLD.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 11:**

MSA LLC objects to this Request based on General Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference. MSA LLC also objects that this Request uses the undefined and vague terms "identifying" and "SKUs."

**REQUEST FOR PRODUCTION NO. 12:**

All DOCUMENTS CONCERNING the number and dollar value of sales of each TURNOUT SKU YOU SOLD.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 12:**

MSA LLC objects to this Request based on General Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.

**REQUEST FOR PRODUCTION NO. 13:**

All purchase agreements, purchase contracts, invoices, supply contracts, receipts, or other documentation evidencing YOUR sale, manufacture, and/or distribution of YOUR TURNOUTS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 13:**

MSA LLC objects to this Request based on General Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference. MSA LLC also objects that the use of the undefined term "other documentation," as used in this Request, is vague and ambiguous.

**REQUEST FOR PRODUCTION NO. 14:**

All DOCUMENTS CONCERNING any contracts and/or agreements that YOU had with suppliers, wholesalers, distributors, or any other entity that sold YOUR TURNOUTS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 14:**

MSA LLC objects to this Request based on General Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.

**REQUEST FOR PRODUCTION NO. 15:**

All purchase orders, invoices, contracts, and/or other related materials that provide information about the sale, manufacture, and/or distribution of YOUR TURNOUTS, including but not limited to the dates when YOUR TURNOUTS were sold, the quantity YOU included in each shipment, and the amount (in dollars) YOU were paid for each shipment.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 15:**

MSA LLC objects to this Request based on General Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference. MSA LLC also objects that the use of the undefined terms "other related materials" and "information about," as used in this Request, are vague and ambiguous.

**REQUEST FOR PRODUCTION NO. 16:**

All DOCUMENTS RELATING TO the procedures and protocols for maintaining sales, production, volume, and invoicing records for YOUR TURNOUTS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 16:**

MSA LLC objects to this Request based on General Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference. MSA LLC also objects that this Request uses the undefined and vague terms "procedures" and "protocols."

**REQUEST FOR PRODUCTION NO. 17:**

All DOCUMENTS reflecting any assessment and/or analysis of YOUR share of the market for TURNOUTS from 1970 to present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 17:**

MSA LLC objects to this Request based on General Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference. MSA LLC also objects that this Request uses the undefined and vague terms "assessment," "analysis," and "market."

**REQUEST FOR PRODUCTION NO. 18:**

All studies and/or reports CONCERNING any HUMAN HEALTH EFFECTS posed by PFAS or PFAS-CONTAINING PRODUCTS in TURNOUTS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 18:**

MSA LLC objects to this Request based on General Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference. MSA LLC also objects that the use of the undefined term "posed by," as used in this Request, is vague and ambiguous.

**REQUEST FOR PRODUCTION NO. 19:**

All studies and/or reports CONCERNING any TOXICOLOGICAL EFFECTS posed by PFAS or PFAS-CONTAINING PRODUCTS in TURNOUTS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 19:**

MSA LLC objects to this Request based on General Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference. MSA LLC also objects that the use of the undefined term "posed by," as used in this Request, is vague and ambiguous.

**REQUEST FOR PRODUCTION NO. 20:**

All COMMUNICATIONS between YOU and other PERSONS CONCERNING any HUMAN HEALTH EFFECTS of PFAS or PFAS-CONTAINING PRODUCTS in TURNOUTS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 20:**

MSA LLC objects to this Request based on General Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.

**REQUEST FOR PRODUCTION NO. 21:**

All COMMUNICATIONS between YOU and other PERSONS CONCERNING any TOXICOLOGICAL EFFECTS of PFAS or PFAS-CONTAINING PRODUCTS in TURNOUTS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 21:**

MSA LLC objects to this Request based on General Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.

**REQUEST FOR PRODUCTION NO. 22:**

All historic and current Material Safety Data Sheets ("MSDS") for any TURNOUTS containing PFAS or PFAS-CONTAINING PRODUCTS YOU SOLD.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 22:**

MSA LLC objects to this Request based on General Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.

**REQUEST FOR PRODUCTION NO. 23:**

All DOCUMENTS, including but not limited to catalogues, statements[,] circulars, manuals, brochures, reports, and advertisements, which mention, describe, or otherwise refer to the virtues, qualities, characteristics, capabilities, and/or capacities of any TURNOUTS containing PFAS or PFAS-CONTAINING PRODUCTS YOU SOLD.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 23:**

MSA LLC objects to this Request based on General Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.

**REQUEST FOR PRODUCTION NO. 24:**

All COMMUNICATIONS between YOU and any trade or industry organization CONCERNING HUMAN HEALTH EFFECTS of TURNOUTS containing PFAS or PFAS-CONTAINING PRODUCTS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 24:**

MSA LLC objects to this Request based on General Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.

**REQUEST FOR PRODUCTION NO. 25:**

All COMMUNICATIONS between YOU and any trade or industry organization CONCERNING TOXICOLOGICAL EFFECTS of TURNOUTS containing PFAS or PFAS-CONTAINING PRODUCTS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 25:**

MSA LLC objects to this Request based on General Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.

**REQUEST FOR PRODUCTION NO. 26:**

All COMMUNICATIONS between YOU and any trade or industry organization CONCERNING ADVERSE EFFECTS of TURNOUTS containing PFAS or PFAS-CONTAINING PRODUCTS, other than the HUMAN HEALTH and TOXICOLOGICAL EFFECTS addressed above.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 26:**

MSA LLC objects to this Request based on General Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.

**REQUEST FOR PRODUCTION NO. 27:**

All COMMUNICATIONS between YOU and any trade or industry organization CONCERNING the safety of TURNOUTS containing PFAS or PFAS-CONTAINING PRODUCTS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 27:**

MSA LLC objects to this Request based on General Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.

**REQUEST FOR PRODUCTION NO. 28:**

All DOCUMENTS CONCERNING statements issued by YOU or on YOUR behalf regarding the HUMAN HEALTH EFFECTS associated with exposure to PFAS or PFAS-CONTAINING PRODUCTS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 28:**

MSA LLC objects to this Request based on General Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference. MSA LLC also objects that the use of the undefined term "statements," as used in this Request, is vague and ambiguous.

**REQUEST FOR PRODUCTION NO. 29:**

All DOCUMENTS CONCERNING statements issued by YOU or on YOUR behalf regarding the TOXICOLOGICAL EFFECTS associated with exposure to PFAS or PFAS-CONTAINING PRODUCTS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 29:**

MSA LLC objects to this Request based on General Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.  MSA LLC also objects that the use of the undefined term "statements," as used in this Request, is vague and ambiguous.

**REQUEST FOR PRODUCTION NO. 30:**

All COMMUNICATIONS between YOU and any public relations and/or media consulting firms or agencies regarding any TOXICOLOGICAL EFFECTS of PFAS or PFAS-CONTAINING PRODUCTS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 30:**

MSA LLC objects to this Request based on General Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.

**REQUEST FOR PRODUCTION NO. 31:**

All COMMUNICATIONS between you and any public relations and/or media consulting firms or agencies CONCERNING any HUMAN HEALTH EFFECTS of PFAS or PFAS-CONTAINING PRODUCTS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 31:**

MSA LLC objects to this Request based on General Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.

**REQUEST FOR PRODUCTION NO. 32:**

All DOCUMENTS regarding the biopersistence and/or the bioaccumulation of PFAS, PFOA, and/or PFOS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 32:**

MSA LLC objects to this Request based on General Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.  MSA LLC also objects that this Request calls for information that is neither relevant nor proportional to the needs of this litigation to the extent it seeks information about PFAS, PFOA, and/or PFOS that are not

components in TURNOUTS used by or associated with any plaintiff in this litigation or sold to any defendant in this litigation.

**REQUEST FOR PRODUCTION NO. 33:**

All DOCUMENTS regarding studies and/or reports CONCERNING the amount of PFAS or PFAS-CONTAINING PRODUCTS in any TURNOUTS YOU SOLD.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 33:**

MSA LLC objects to this Request based on General Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.  MSA LLC further objects to the phrase "amount of PFAS or PFAS-CONTAINING PRODUCTS" as vague and ambiguous.

**REQUEST FOR PRODUCTION NO. 34:**

All COMMUNICATIONS regarding studies and/or reports CONCERNING the amount of PFAS or PFAS-CONTAINING PRODUCTS in any TURNOUTS YOU SOLD.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 34:**

MSA LLC objects to this Request based on General Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.  MSA LLC further objects to the phrase "amount of PFAS or PFAS-CONTAINING PRODUCTS" as vague and ambiguous.

**REQUEST FOR PRODUCTION NO. 35:**

All DOCUMENTS regarding studies and/or reports of TOXICOLOGICAL EFFECTS of PFAS, PFOA and/or PFOS conducted by YOU or on YOUR behalf.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 35:**

MSA LLC objects to this Request based on General Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.

**REQUEST FOR PRODUCTION NO. 36:**

All DOCUMENTS and COMMUNICATIONS between YOU and any MANUFACTURING DEFENDANT(S) CONCERNING any TOXICOLOGICAL EFFECTS of PFAS or PFAS-CONTAINING PRODUCTS in TURNOUTS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 36:**

MSA LLC objects to this Request based on General Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.  MSA LLC further objects that this Request is duplicative of Request No. 8.

**REQUEST FOR PRODUCTION NO. 37:**

All DOCUMENTS and COMMUNICATIONS between YOU and any MANUFACTURING DEFENDANT(S) CONCERNING any HUMAN HEALTH EFFECTS of PFAS or PFAS-CONTAINING PRODUCTS in TURNOUTS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 37:**

MSA LLC objects to this Request based on General Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference. MSA LLC further objects that this Request is duplicative of Request No. 8.

**REQUEST FOR PRODUCTION NO. 38:**

All DOCUMENTS and COMMUNICATIONS between YOU and any MANUFACTURING DEFENDANT(S) CONCERNING any adverse effects of PFAS or PFAS-CONTAINING PRODUCTS in TURNOUTS, other than the TOXICOLOGICAL and HUMAN HEALTH EFFECTS discussed above.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 38:**

MSA LLC objects to this Request based on General Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference. MSA LLC further objects that this Request is duplicative of Request No. 8.

**REQUEST FOR PRODUCTION NO. 39:**

All DOCUMENTS regarding studies or research conducted by YOU or on YOUR behalf CONCERNING the use of non-PFAS materials in the TURNOUTS YOU SOLD.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 39:**

MSA LLC objects to this Request based on General Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference. MSA LLC also objects that the use of the undefined term "non-PFAS materials," as used in this Request, is vague and ambiguous.

**REQUEST FOR PRODUCTION NO. 40:**

All DOCUMENTS CONCERNING the effectiveness of non-PFAS materials in the TURNOUTS YOU SOLD.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 40:**

MSA LLC objects to this Request based on General Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference. MSA LLC also

objects that the use of the undefined terms "effectiveness" and "non-PFAS materials," as used in this Request, is vague and ambiguous.

## REQUEST FOR PRODUCTION NO. 41:

All COMMUNICATIONS CONCERNING the use of non-PFAS materials in the TURNOUTS YOU SOLD.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 41:

MSA LLC objects to this Request based on General Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference. MSA LLC also objects that the use of the undefined term "non-PFAS materials," as used in this Request, is vague and ambiguous.

## REQUEST FOR PRODUCTION NO. 42:

All DOCUMENTS CONCERNING the development and adoption of warning DOCUMENTS, instructions, and/or labels on TURNOUTS containing PFAS or PFAS-CONTAINING PRODUCTS YOU SOLD.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 42:

MSA LLC objects to this Request based on General Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference. MSA LLC also objects that the use of the undefined term "warning," as used in this Request, is vague and ambiguous.

## REQUEST FOR PRODUCTION NO. 43:

All DOCUMENTS RELATING TO any insurance coverage or request for any insurance coverage in connection with any loss, claim, damage or request relating or referring to this MDL or any other action arising from the use of TURNOUTS containing PFAS or PFAS-CONTAINING PRODUCTS YOU SOLD.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 43:

MSA LLC objects to this Request based on General Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.

## REQUEST FOR PRODUCTION NO. 44:

All DOCUMENTS RELATING TO any meetings or correspondence with, or submissions to, the National Fire Protection Association concerning TURNOUTS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 44:**

MSA LLC objects to this Request based on General Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.

**REQUEST FOR PRODUCTION NO. 45:**

All COMMUNICATIONS between YOU and the National Fire Protection Association CONCERNING TURNOUTS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 45:**

MSA LLC objects to this Request based on General Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.

**REQUEST FOR PRODUCTION NO. 46:**

All COMMUNICATIONS between YOU and any MANUFACTURING DEFENDANT(S) CONCERNING the National Fire Protection Association.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 46:**

MSA LLC objects to this Request based on General Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.

**REQUEST FOR PRODUCTION NO. 46:**

All DOCUMENTS CONCERNING any financial contributions or payments from YOU to the National Fire Protection Association.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 47:**

MSA LLC objects to this Request based on General Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.

**REQUEST FOR PRODUCTION NO. 47:**

All DOCUMENTS RELATING TO any meetings or correspondence with, or submissions to, the International Association of Fire Fighters concerning TURNOUTS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 48:**

MSA LLC objects to this Request based on General Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.

**REQUEST FOR PRODUCTION NO. 48:**

All COMMUNICATIONS between YOU and the International Association of Fire Fighters concerning TURNOUTS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 49:**

MSA LLC objects to this Request based on General Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.

**REQUEST FOR PRODUCTION NO. 49:**

All COMMUNICATIONS between YOU and any MANUFACTURING DEFENDANT(S) CONCERNING the International Association of Fire Fighters.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 50:**

MSA LLC objects to this Request based on General Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.

**REQUEST FOR PRODUCTION NO. 50:**

All DOCUMENTS CONCERNING any financial contributions or payments from YOU to the International Association of Fire Fighters.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 51:**

MSA LLC objects to this Request based on General Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.

**REQUEST FOR PRODUCTION NO. 51:**

All DOCUMENTS CONCERNING any disclosure that TURNOUTS YOU SOLD contained PFAS or PFAS-CONTAINING PRODUCTS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 52:**

MSA LLC objects to this Request based on General Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference. MSA LLC also objects that this Request uses the undefined, vague and ambiguous term "disclosure."

**REQUEST FOR PRODUCTION NO. 52:**

All DOCUMENTS RELATING TO any meetings or correspondence with, or submission to, any governmental body, trade association, industry group, or lobbying group regarding PFAS or PFAS-CONTAINING PRODUCTS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 53:**

MSA LLC objects to this Request based on General Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.

Dated: July 8, 2022                          Respectfully submitted,

                                             ORRICK, HERRINGTON & SUTCLIFFE LLP

                                             By:  */s/ Jennifer B. Jones*
                                                  Jennifer B. Jones (PA Bar ID 82291)
                                                  2121 Main Street
                                                  Wheeling, WV  26003-2809
                                                  jennifer.jones@orrick.com
                                                  Telephone:        +1 304 231 2500
                                                  Facsimile:        +1 304 231 2501

                                                  James L. Stengel (NY Bar ID 1800556)
                                                  51 West 52nd Street
                                                  New York, NY  10019-6142
                                                  jstengel@orrick.com
                                                  Telephone:        +1 212 506 5000
                                                  Facsimile:        +1 212 506 5151

                                                  *Counsel for Defendant Mine Safety*
                                                  *Appliances Company, LLC*

## CERTIFICATE OF SERVICE

I certify that on July 8, 2022, a true and correct copy of the foregoing was served via electronic mail upon the following:

Michael A. London
Tate J. Kunkle
Douglas and London PC
mlondon@douglasandlondon.com
tkunkle@douglasandlondon.com

Paul J. Napoli
Napoli Shkolnik
pnapoli@nsprlaw.com

Scott Summy
Baron & Budd, P.C.
ssummy@baronbudd.com
afffmdlproductions@baronbudd.com

*Plaintiffs' Co-Lead Counsel*

Fred Thompson III
Marissa Bessis
Motley Rice LLC
fthompson@motleyrice.com
mbessis@motleyrice.com

*Plaintiffs' Liaison Counsel*

Elizabeth C. Pritzker
Pritzker Levine LLP
ecp@pritzkerlevine.com

*Plaintiffs' Executive Committee Member*

/s/ *James L. Stengel*
James L. Stengel

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| IN RE:  AQUEOUS FILM-FORMING FOAMS PRODUCT LIABILITY LITIGATION | MDL No:  2:18-mn-2873-RMG<br><br>**This Document Relates to:**<br>**ALL CASES** |

**MINE SAFETY APPLIANCES COMPANY, LLC'S OBJECTIONS
TO PLAINTIFFS' FIRST SET OF INTERROGATORIES**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure ("Federal Rules"), Defendant Mine Safety Appliances Company, LLC ("MSA LLC"), MSA LLC hereby serves the below objections to Plaintiffs' First Set of Interrogatories ("Interrogatories").

### GENERAL OBJECTIONS

1.      In this Aqueous Film-Forming Foams ("AFFF") Products Liability Litigation ("MDL"), the Interrogatories are objectionable for a number of reasons, including that they are premature.  While the Interrogatories purport to relate to "All Cases," it is clear that they pertain only to the small number of cases involving allegations that plaintiffs were injured by both AFFF and firefighter turnout gear ("Turnout Gear" or "TOG").  These Turnout Gear claims, which are alleged against MSA LLC and around thirteen other defendants ("Turnout Gear Defendants" or "TOG Defendants"), do not predicate liability on the use of or exposure to AFFF.  Accordingly, discovery, and in particular, broad sweeping discovery, into the distinctly unique TOG personal injury claims is not appropriate at this time, given the current status of the matters pending in the MDL.  MSA LLC makes these objections subject to and without waiver of its position that discovery concerning alleged injuries from Turnout Gear is premature given the procedural posture of the MDL and expressly reserves its right to assert additional and/or more specific objections to these and any additional or related discovery at the appropriate time.

2.     The Court has conducted a "Science Day" with respect to AFFF only.  The scientific issues underlying the TOG claims, however, are fundamentally different from those underlying the AFFF claims.  Turnout Gear is not one product or one component, and it is not always used under the same conditions as AFFF.  Scientific questions underlying TOG personal injury claims involve different chemicals with different properties and toxicological profiles, different possible exposure pathways (if any), different theoretical exposure concentrations (if any), and a host of other issues that distinguish TOG claims from those involving AFFF.  The Science Day held for AFFF does not fully inform the questions of alleged exposure or adverse effects to plaintiffs claiming harm caused by Turnout Gear.

3.      Discovery against the TOG Defendants is also premature because the existing plaintiff fact sheets are not relevant to Turnout Gear.  The plaintiff fact sheets focus on AFFF and contain little to no information pertaining to the TOG claims.  There is no information provided from which MSA LLC can determine why it is named as a defendant or MSA LLC's role in any of plaintiffs' alleged injuries from Turnout Gear.  Under the procedures and protocols applicable in this MDL, broad and burdensome discovery requests should not be served until after the plaintiffs have completed fact sheets that provide useful foundational information about the TOG claims, especially given the fact that defendants are precluded from serving their own discovery requests on the TOG plaintiffs at this time.  The TOG Defendants are prepared to meet and confer with plaintiffs' counsel to discuss an appropriate fact sheet for plaintiffs alleging TOG claims.

4.     The Interrogatories are premature because MSA LLC has not yet had the opportunity to demonstrate the speculative nature of the claims asserted against it, which should be dismissed by the MDL court on that basis.  Before being forced to engage in broad, expansive and burdensome discovery, MSA LLC should be given an opportunity, if it opts to do so, to seek the Rule 12 dismissal of the claims against it.

5.     Case Management Order No. 2 (March 20, 2019) required the Plaintiffs' Executive Committee ("PEC") to "[d]evelop and propose to the Court schedules for the commencement, execution and completion of all discovery on behalf of all plaintiffs."  To MSA LLC's knowledge,

the PEC has not satisfied that requirement as to any TOG claim or with respect to TOG Defendants; indeed, no TOG claim had been filed at the time CMO No. 2 was entered and discovery commenced against the AFFF defendants. In short, there is no indication the Court contemplated, much less authorized, broad and one-sided general discovery against the TOG Defendants.

6.     MSA LLC objects to the Interrogatories to the extent that they seek documents protected from disclosure by the attorney-client privilege, work-product immunity, joint-defense privilege, common-interest privilege, or any other privilege or protection afforded by applicable law. In the event of an inadvertent disclosure of privileged/protected information or documents, the privilege/protection shall not be waived, and such information or documents will be subject to clawback and other remedies, consistent with Federal Rule of Civil Procedure 26(b)(5)(B) and Federal Rule of Evidence 502(b).

7.     MSA LLC objects to the Interrogatories to the extent that they seek the disclosure of information that constitutes, contains or otherwise discloses trade secrets or other proprietary or confidential information. In the event MSA LLC is required to produce such information in the MDL, MSA LLC will only do so subject to an appropriate protective order. MSA LLC further objects to disclosing any information that is subject to a confidentiality obligation owed by MSA LLC to a third party.

8.     MSA LLC objects to each and every Interrogatory that seeks the address, telephone numbers, or other personal information of individuals. In many or most cases, MSA LLC does not possess such information, but where it may, MSA LLC objects to any such Interrogatory as unduly invasive and unnecessarily violative of those individuals' privacy rights as well as of MSA LLC's duty to safeguard the personal information of its employees or former employees. Any current or former MSA LLC employee should be contacted only through counsel of record in the Action.

9.     The Interrogatories are objectionable on the grounds that they are overly broad, unduly burdensome, and oppressive, particularly but not exclusively to the extent they demand that MSA LLC "identify" or "describe" "all" documents, communications, persons or things listed

3

in the Interrogatory or seek similar sweeping categories of information; seek a range of information and documents neither relevant to any claim or defense in the TOG cases; and impose obligations on MSA LLC that are disproportionate to the needs of proportional TOG claim discovery.

10.    Several Interrogatories are without any temporal limitation, and the general time period specified in the Interrogatories (1970) (Instruction 8) is so early in time as to be overbroad, unduly burdensome and virtually meaningless.

11.    MSA LLC objects that several Interrogatories are without any geographic limitation and therefore seek information that is not relevant to any claim or defense in this litigation.

12.    MSA LLC objects that several Interrogatories call for information about products not used by or associated with any plaintiff in this litigation or sold to any defendant in this litigation and, therefore, seek information that is not relevant to any claim or defense in this litigation.

13.    MSA LLC objects to any Interrogatory to the extent that it improperly assumes facts, specifically, that TURNOUTS or PFAS-CONTAINING PRODUCTS are associated with ADVERSE, HUMAN HEALTH, or TOXICOLOGICAL EFFECTS, and expressly rejects any such suggestion.

14.    MSA LLC objects to the Interrogatories to the extent that they assume or suggest that MSA LLC had knowledge concerning PFAS or PFAS-containing products in components of Turnout Gear at any given time, or that it had any legal duty or obligation to provide PFAS-related warnings at any given time.  Further, MSA LLC objects to the Interrogatories to the extent they seek information concerning Turnout Gear components that MSA LLC may have purchased from others, where such information is outside of MSA LLC's possession, custody, or control and/or it would be less burdensome to obtain from the manufacturers and/or sellers of those components.

15.    MSA LLC objects to the Interrogatories because they exceed the number of interrogatories permitted by Fed. R. Civ. P. 33.  MSA LLC also objects to these Interrogatories to

the extent that they contain multiple discrete subparts, each of which requires a separate answer and constitutes a separate Interrogatory.

16.     MSA LLC expressly reserves all rights, including, in particular but not exclusively, the right to respond to any Interrogatory, as appropriate, by "(1) specifying the records that must be reviewed in sufficient detail to enable [Plaintiffs] to locate and identify them as readily as the responding party could; and (2) giving [Plaintiffs] a reasonable opportunity to examine and audit the records and to make copies, compilations, abstracts, or summaries." Federal Rule of Civil Procedure 33(d).

## OBJECTIONS TO PLAINTIFFS' DEFINITIONS AND INSTRUCTIONS

MSA LLC objects as specified below to the Definitions and Instructions in the Interrogatories. Information may be withheld on the basis of these objections.

1.     MSA LLC objects to each definition and each instruction to the extent that it purports to impose on MSA LLC obligations beyond those set out in the Federal Rules of Civil Procedure, and therefore causes the Interrogatories to be overly broad, unduly burdensome, or requires the disclosure of information that is not reasonably accessible. By way of example only, MSA LLC objects to Instruction Nos. 4 and 7, which purport to impose privilege log obligations beyond those required by Federal Rule of Civil Procedure 26(b)(5)(A).

2.     MSA LLC objects to each instruction and each definition that is unintelligible, vague or ambiguous, or would so expand the scope of an interrogatory as to impose an unreasonable burden or to seek information not relevant to the claims or defenses relative to the TOG personal injury claims. Examples of such problematic instructions and definitions include Instruction Nos. 5 ("describe") and 6 ("identify") and the following definitions: "Communications," "Internal Communications," "Plaintiffs," "Relating To" or "Concerning," and "You," "Your," and "Defendant."

3.     A number of the definitions are contradictory and render individual Interrogatories unintelligible. For example, the terms "Sale," "Sell," and "Sold" are limited to the sale of "AFFF," but then those terms are used in Interrogatories that do not pertain to AFFF. Other definitions,

including the definitions of "Manufacturing Defendants," "PFAS," "PFOA," "PFOS," "PFAS-Containing Products," and "Turnouts," are vague and ambiguous.

4.      MSA LLC objects to each definition and each instruction that purports to require the disclosure of information not within MSA LLC's possession, custody, or control or from persons or entities not within MSA LLC's control; calls for a legal conclusion regarding the relationship between certain persons and/or entities; or may encompass relationships of which MSA LLC is not aware. Furthermore, MSA LLC objects to the Interrogatories to the extent that they seek documents and information from Globe Manufacturing Company, LLC, which is a separate entity distinct from MSA LLC. MSA LLC will not respond on behalf of Globe Manufacturing Company, LLC and will not provide documents or information on its behalf.

5.      Any eventual disclosure by MSA LLC, if any, would be on a rolling basis, subject to MSA LLC's obligations to supplement, to include responsive information identified and disclosed only after a reasonable search and disclosure effort (and subject to all applicable objections). Any such response would be made pursuant to the protective order in the MDL and Federal Rule of Civil Procedure 33.

## OBJECTIONS AND RESPONSES TO INTERROGATORIES

**INTERROGATORY NO. 1:**

Identify each PERSON who has supplied information used in answering these interrogatories and specify the interrogatories for which each PERSON is responsible.

**RESPONSE TO INTERROGATORY NO. 1:**

MSA LLC objects to this Interrogatory based on General Objections 1-16 and Objections to Plaintiffs' Definitions and Instructions 1-5, which are incorporated herein by reference.

**INTERROGATORY NO. 2:**

Identify all TURNOUTS containing PFAS or PFAS-CONTAINING PRODUCTS that YOU SOLD to any MANUFACTURING DEFENDANT(S), stating for each: the trade name under which it was SOLD, the number and dollar value of SALES to each MANUFACTURING DEFENDANT(S), and the date(s) when it was SOLD.

**RESPONSE TO INTERROGATORY NO. 2:**

MSA LLC objects to this Interrogatory based on General Objections 1-16 and Objections to Plaintiffs' Definitions and Instructions 1-5, which are incorporated herein by reference.

**INTERROGATORY NO. 3:**

Identify the specific PFAS or PFAS-CONTAINING PRODUCTS present in YOUR TURNOUTS.

**RESPONSE TO INTERROGATORY NO. 3:**

MSA LLC objects to this Interrogatory based on General Objections 1-16 and Objections to Plaintiffs' Definitions and Instructions 1-5, which are incorporated herein by reference. MSA LLC also objects to this Interrogatory as vague and ambiguous in its use of the term "present."

**INTERROGATORY NO. 4:**

Identify the names of all distributors that received (by purchase, delivery, or otherwise) TURNOUTS containing PFAS or PFAS-CONTAINING PRODUCTS from YOU from 1970 to present, including the quantity of TURNOUTS YOU delivered, tendered, and/or SOLD, as well as the name or type of the TURNOUTS YOU delivered, tendered, and/or SOLD.

**RESPONSE TO INTERROGATORY NO. 4:**

MSA LLC objects to this Interrogatory based on General Objections 1-16 and Objections to Plaintiffs' Definitions and Instructions 1-5, which are incorporated herein by reference. MSA LLC also objects to this Interrogatory as vague and ambiguous in its use of the term "tendered."

**INTERROGATORY NO. 5:**

Identify the entity or entities from which YOU or anyone on YOUR behalf purchased PFAS or PFAS-CONTAINING PRODUCTS for use in YOUR TURNOUTS.

**RESPONSE TO INTERROGATORY NO. 5:**

MSA LLC objects to this Interrogatory based on General Objections 1-16 and Objections to Plaintiffs' Definitions and Instructions 1-5, which are incorporated herein by reference.

**INTERROGATORY NO. 6:**

For each entity identified in response to INTERROGATORY NO. 5, identify the PFAS or PFAS-CONTAINING PRODUCTS purchased, the volume and dollar value purchased, and the dates of purchase.

**RESPONSE TO INTERROGATORY NO. 6:**

MSA LLC objects to this Interrogatory based on General Objections 1-16 and Objections to Plaintiffs' Definitions and Instructions 1-5, which are incorporated herein by reference.

**INTERROGATORY NO. 7:**

Identify all studies, analyses, tests, or reports YOU have ever conducted or contracted with another PERSON to conduct on YOUR behalf CONCERNING either the presence or the amount of PFAS or PFAS-CONTAINING PRODUCTS in YOUR TURNOUTS.

**RESPONSE TO INTERROGATORY NO. 7:**

MSA LLC objects to this Interrogatory based on General Objections 1-16 and Objections to Plaintiffs' Definitions and Instructions 1-5, which are incorporated herein by reference. MSA LLC also objects to this Interrogatory as vague and ambiguous in its use of the terms "presence" and "amount."

**INTERROGATORY NO. 8:**

Identify all COMMUNICATIONS YOU have had with any MANUFACTURING DEFENDANT(S) CONCERNING either the presence or the amount of PFAS or PFAS-CONTAINING PRODUCTS in YOUR TURNOUTS.

**RESPONSE TO INTERROGATORY NO. 8:**

MSA LLC objects to this Interrogatory based on General Objections 1-16 and Objections to Plaintiffs' Definitions and Instructions 1-5, which are incorporated herein by reference. MSA LLC also objects to this Interrogatory as vague and ambiguous in its use of the terms "presence" and "amount."

**INTERROGATORY NO. 9:**

Identify all COMMUNICATIONS YOU have had with any trade or industry organization CONCERNING either the presence or the amount of PFAS or PFAS-CONTAINING PRODUCTS in YOUR TURNOUTS.

**RESPONSE TO INTERROGATORY NO. 9:**

MSA LLC objects to this Interrogatory based on General Objections 1-16 and Objections to Plaintiffs' Definitions and Instructions 1-5, which are incorporated herein by reference. MSA LLC also objects to this Interrogatory as vague and ambiguous in its use of the terms "presence" and "amount."

**INTERROGATORY NO. 10:**

Identify all COMMUNICATIONS YOU have had with either the National Fire Protection Association or the International Association of Fire Fighters CONCERNING either the presence or the amount of PFAS or PFAS-CONTAINING PRODUCTS in YOUR TURNOUTS.

**RESPONSE TO INTERROGATORY NO. 10:**

MSA LLC objects to this Interrogatory based on General Objections 1-16 and Objections to Plaintiffs' Definitions and Instructions 1-5, which are incorporated herein by reference. MSA LLC also objects to this Interrogatory as vague and ambiguous in its use of the terms "presence" and "amount."

**INTERROGATORY NO. 11:**

Identify all information YOU provided to any purchaser or user of YOUR TURNOUTS containing PFAS or PFAS-CONTAINING PRODUCTS CONCERNING the formulation or design of YOUR TURNOUTS.

**RESPONSE TO INTERROGATORY NO. 11:**

MSA LLC objects to this Interrogatory based on General Objections 1-16 and Objections to Plaintiffs' Definitions and Instructions 1-5, which are incorporated herein by reference. MSA LLC also objects to this Interrogatory as vague and ambiguous in its use of the phrase "formulation or design."

**INTERROGATORY NO. 12:**

Identify all of the ways in which YOU informed purchasers or users of YOUR TURNOUTS containing PFAS or PFAS-CONTAINING PRODUCTS to ensure they were HANDLED and disposed of properly.

**RESPONSE TO INTERROGATORY NO. 12:**

MSA LLC objects to this Interrogatory based on General Objections 1-16 and Objections to Plaintiffs' Definitions and Instructions 1-5, which are incorporated herein by reference.

**INTERROGATORY NO. 13:**

Describe any changes YOU made to the HANDLING and/or disposal methods YOU recommended to purchasers or users of YOUR TURNOUTS containing PFAS or PFAS-CONTAINING PRODUCTS from 1970 to present.

**RESPONSE TO INTERROGATORY NO. 13:**

MSA LLC objects to this Interrogatory based on General Objections 1-16 and Objections to Plaintiffs' Definitions and Instructions 1-5, which are incorporated herein by reference. MSA LLC also objects to this Interrogatory as vague and ambiguous in its use of the term "recommended."

**INTERROGATORY NO. 14:**

Identify all DOCUMENTS, instructions, training materials, or other information YOU provided to purchasers or users of YOUR TURNOUTS containing PFAS or PFAS-CONTAINING PRODUCTS CONCERNING the HANDLING and/or disposal of YOUR TURNOUTS.

**RESPONSE TO INTERROGATORY NO. 14:**

MSA LLC objects to this Interrogatory based on General Objections 1-16 and Objections to Plaintiffs' Definitions and Instructions 1-5, which are incorporated herein by reference.

**INTERROGATORY NO. 15:**

Identify the PERSON most knowledgeable about the DOCUMENTS, instructions, training materials, or other information YOU provided to purchasers or users of YOUR TURNOUTS containing PFAS or PFAS-CONTAINING PRODUCTS CONCERNING the HANDLING and/or disposal of YOUR TURNOUTS.

**RESPONSE TO INTERROGATORY NO. 15:**

MSA LLC objects to this Interrogatory based on General Objections 1-16 and Objections to Plaintiffs' Definitions and Instructions 1-5, which are incorporated herein by reference. MSA LLC further objects that this Interrogatory prematurely calls for the identification of a person most knowledgeable.

**INTERROGATORY NO. 16:**

Identify all warnings or information YOU provided to purchasers or users of YOUR TURNOUTS containing PFAS or PFAS-CONTAINING PRODUCTS about any TOXICOLOGICAL EFFECTS of PFAS.

**RESPONSE TO INTERROGATORY NO. 16:**

MSA LLC objects to this Interrogatory based on General Objections 1-16 and Objections to Plaintiffs' Definitions and Instructions 1-5, which are incorporated herein by reference. MSA LLC also objects that the use of the undefined term "warnings or information," as used in this Interrogatory, is vague and ambiguous.

**INTERROGATORY NO. 17:**

Identify all warnings or information YOU provided to purchasers or users of YOUR TURNOUTS containing PFAS or PFAS-CONTAINING PRODUCTS about any HUMAN HEALTH EFFECTS of PFAS.

**RESPONSE TO INTERROGATORY NO. 17:**

MSA LLC objects to this Interrogatory based on General Objections 1-16 and Objections to Plaintiffs' Definitions and Instructions 1-5, which are incorporated herein by reference. MSA LLC also objects that the use of the undefined term "warnings or information," as used in this Interrogatory, is vague and ambiguous.

**INTERROGATORY NO. 18:**

Identify all warnings or information YOU provided to purchasers or users of YOUR TURNOUTS containing PFAS or PFAS-CONTAINING PRODUCTS about any ADVERSE EFFECTS of PFAS, other than the TOXICOLOGICAL and HUMAN HEALTH EFECTS discussed above.

**RESPONSE TO INTERROGATORY NO. 18:**

MSA LLC objects to this Interrogatory based on General Objections 1-16 and Objections to Plaintiffs' Definitions and Instructions 1-5, which are incorporated herein by reference. MSA LLC also objects that the use of the undefined term "warnings or information," as used in this Interrogatory, is vague and ambiguous.

**INTERROGATORY NO. 19:**

Are YOU aware of or have YOU ever conducted or contracted with another PERSON to conduct any studies, reports, and/or surveys to investigate the TOXICOLOGICAL EFFECTS of any PFAS present in TURNOUTS?

**RESPONSE TO INTERROGATORY NO. 19:**

MSA LLC objects to this Interrogatory based on General Objections 1-16 and Objections to Plaintiffs' Definitions and Instructions 1-5, which are incorporated herein by reference. MSA LLC also objects to this Interrogatory as vague and ambiguous in its use of the terms "aware of" and "present."

**INTERROGATORY NO. 20:**

If YOUR response to INTERROGATORY NO. 19 is in the affirmative, identify the study, who conducted the study, the results of the study, any PERSONS with knowledge of relevant facts about the study, and all DOCUMENTS RELATING TO or referencing the study.

**RESPONSE TO INTERROGATORY NO. 20:**

MSA LLC objects to this Interrogatory based on General Objections 1-16 and Objections to Plaintiffs' Definitions and Instructions 1-5, which are incorporated herein by reference. MSA LLC further objects that the phrase "PERSONS with knowledge of relevant facts" is vague, ambiguous and overbroad.

**INTERROGATORY NO. 21:**

For each TOXICOLOGICAL EFFECT YOU are aware of that is associated with the PFAS or PFAS-CONTAINING PRODUCTS present in YOUR TURNOUTS, identify the TOXICOLOGICAL EFFECT, the date YOU first became aware of that TOXICOLOGICAL EFFECT, the source of that knowledge, and any DOCUMENTS RELATING TO or referencing that TOXICOLOGICAL EFFECT.

**RESPONSE TO INTERROGATORY NO. 21:**

MSA LLC objects to this Interrogatory based on General Objections 1-16 and Objections to Plaintiffs' Definitions and Instructions 1-5, which are incorporated herein by reference. MSA LLC also objects to this Interrogatory as vague and ambiguous in its use of the terms "aware of" and "present."

**INTERROGATORY NO. 22:**

For each TOXICOLOGICAL EFFECT identified in response to INTERROGATORY NO. 21, identify the PERSON most knowledgeable about that TOXICOLOGICAL EFFECT and YOUR awareness of it.

**RESPONSE TO INTERROGATORY NO. 22:**

MSA LLC objects to this Interrogatory based on General Objections 1-16 and Objections to Plaintiffs' Definitions and Instructions 1-5, which are incorporated herein by reference. MSA LLC also objects to this Interrogatory as vague and ambiguous in its use of the term "awareness of." MSA LLC further objects that this Interrogatory prematurely calls for the identification of a person most knowledgeable.

**INTERROGATORY NO. 23:**

Are YOU aware of or have YOU ever conducted or contracted with another PERSON to conduct any studies, reports and/or surveys to investigate the HUMAN HEALTH EFFECTS of any PFAS present TURNOUTS?

**RESPONSE TO INTERROGATORY NO. 23:**

MSA LLC objects to this Interrogatory based on General Objections 1-16 and Objections to Plaintiffs' Definitions and Instructions 1-5, which are incorporated herein by reference. MSA

LLC also objects to this Interrogatory as vague and ambiguous in its use of the terms "aware of" and "present."

## INTERROGATORY NO. 24:

If YOUR response to INTERROGATORY NO. 23 is in the affirmative, identify the study, who conducted the study, the results of the study, any PERSONS with knowledge of relevant facts about the study, and all DOCUMENTS RELATING TO or referencing the study.

## RESPONSE TO INTERROGATORY NO. 24:

MSA LLC objects to this Interrogatory based on General Objections 1-16 and Objections to Plaintiffs' Definitions and Instructions 1-5, which are incorporated herein by reference.

## INTERROGATORY NO. 25:

For each HUMAN HEALTH EFFECT YOU are aware of that is associated with the PFAS or PFAS-CONTAINING PRODUCTS present in YOUR TURNOUTS, identify the HUMAN HEALTH EFFECT, the date YOU first became aware of that HUMAN HEALTH EFFECT, the source of that knowledge, and any DOCUMENTS RELATING TO or referencing that HUMAN HEALTH EFFECT.

## RESPONSE TO INTERROGATORY NO. 25:

MSA LLC objects to this Interrogatory based on General Objections 1-16 and Objections to Plaintiffs' Definitions and Instructions 1-5, which are incorporated herein by reference. MSA LLC also objects to this Interrogatory as vague and ambiguous in its use of the terms "aware of" and "present."

## INTERROGATORY NO. 26:

For each HEALTH EFFECT identified in response to INTERROGATORY NO. 25, identify the PERSON most knowledgeable about that HEALTH EFFECT and YOUR awareness of it.

## RESPONSE TO INTERROGATORY NO. 26:

MSA LLC objects to this Interrogatory based on General Objections 1-16 and Objections to Plaintiffs' Definitions and Instructions 1-5, which are incorporated herein by reference. MSA LLC also objects to this Interrogatory as vague and ambiguous in its use of the term "awareness of."

## INTERROGATORY NO. 27:

Identify all warnings or information YOU provided to purchasers of YOUR TURNOUTS containing PFAS or PFAS-CONTAINING PRODUCTS, including the date each such warning was given, CONCERNING any ADVERSE EFFECTS of PFAS, other than the TOXICOLOGICAL and HUMAN HEALTH EFECTS discussed above.

**RESPONSE TO INTERROGATORY NO. 27:**

MSA LLC objects to this Interrogatory based on General Objections 1-16 and Objections to Plaintiffs' Definitions and Instructions 1-5, which are incorporated herein by reference. MSA LLC also objects that the use of the undefined term "warnings or information," as used in this Interrogatory, is vague and ambiguous.

**INTERROGATORY NO. 28:**

Identify any and all alternatives to PFAS or PFAS-CONTAINING PRODUCTS YOU investigated or otherwise considered for use in any TURNOUTS YOU SOLD.

**RESPONSE TO INTERROGATORY NO. 28:**

MSA LLC objects to this Interrogatory based on General Objections 1-16 and Objections to Plaintiffs' Definitions and Instructions 1-5, which are incorporated herein by reference. MSA LLC also objects to this Interrogatory as vague and ambiguous in its use of the terms "alternatives," "investigated" and "otherwise considered."

**INTERROGATORY NO. 29:**

Identify any and all research YOU conducted or reviewed CONCERNING alternatives to PFAS or PFAS-CONTAINING PRODUCTS for use in any TURNOUTS YOU SOLD.

**RESPONSE TO INTERROGATORY NO. 29:**

MSA LLC objects to this Interrogatory based on General Objections 1-16 and Objections to Plaintiffs' Definitions and Instructions 1-5, which are incorporated herein by reference. MSA LLC also objects to this Interrogatory as vague and ambiguous in its use of the term "alternatives."

**INTERROGATORY NO. 30:**

Describe how and when YOU became aware that TURNOUTS YOU SOLD contained PFAS or PFAS-CONTAINING PRODUCTS.

**RESPONSE TO INTERROGATORY NO. 30:**

MSA LLC objects to this Interrogatory based on General Objections 1-16 and Objections to Plaintiffs' Definitions and Instructions 1-5, which are incorporated herein by reference. MSA LLC also objects to this Interrogatory as vague and ambiguous in its use of the term "aware."

**INTERROGATORY NO. 31:**

If YOU are aware, identify when YOU became aware of the TOXICOLOGICAL EFFECTS of PFAS or PFAS-CONTAINING PRODUCTS.

**RESPONSE TO INTERROGATORY NO. 31:**

MSA LLC objects to this Interrogatory based on General Objections 1-16 and Objections to Plaintiffs' Definitions and Instructions 1-5, which are incorporated herein by reference. MSA LLC also objects to this Interrogatory as vague and ambiguous in its use of the term "aware."

**INTERROGATORY NO. 32:**

If YOU are aware, identify when YOU became aware of the HUMAN HEALTH EFECTS of PFAS or PFAS-CONTAINING PRODUCTS.

**RESPONSE TO INTERROGATORY NO. 32:**

MSA LLC objects to this Interrogatory based on General Objections 1-16 and Objections to Plaintiffs' Definitions and Instructions 1-5, which are incorporated herein by reference. MSA LLC also objects to this Interrogatory as vague and ambiguous in its use of the term "aware."

**INTERROGATORY NO. 33:**

Identify any government law, regulation, or rule that requires or required the use of PFAS or PFAS-CONTAINING PRODUCTS in TURNOUTS.

**RESPONSE TO INTERROGATORY NO. 33:**

MSA LLC objects to this Interrogatory based on General Objections 1-16 and Objections to Plaintiffs' Definitions and Instructions 1-5, which are incorporated herein by reference. MSA LLC also objects to the extent this Interrogatory calls for information from public sources that are equally available to Plaintiffs as to MSA LLC.

Dated: July 8, 2022

Respectfully submitted,

ORRICK, HERRINGTON & SUTCLIFFE LLP

By: */s/ Jennifer B. Jones*

Jennifer B. Jones (PA Bar ID 82291)
2121 Main Street
Wheeling, WV  26003-2809
jennifer.jones@orrick.com
Telephone:      +1 304 231 2500
Facsimile:      +1 304 231 2501

James L. Stengel (NY Bar ID 1800556)
51 West 52nd Street
New York, NY  10019-6142
jstengel@orrick.com
Telephone:      +1 212 506 5000
Facsimile:      +1 212 506 5151

*Counsel for Mine Safety Appliances Company,*
*LLC*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on July 8, 2022, a true and correct copy of the foregoing was served via electronic mail upon the following:

Michael A. London
Tate J. Kunkle
Douglas and London PC
mlondon@douglasandlondon.com
tkunkle@douglasandlondon.com

Paul J. Napoli
Napoli Shkolnik
pnapoli@nsprlaw.com

Scott Summy
Baron & Budd, P.C.
ssummy@baronbudd.com
afffmdlproductions@baronbudd.com

*Plaintiffs' Co-Lead Counsel*

Fred Thompson III
Marissa Bessis
Motley Rice LLC
fthompson@motleyrice.com
mbessis@motleyrice.com

*Plaintiffs' Liaison Counsel*

Elizabeth C. Pritzker
Pritzker Levine LLP
ecp@pritzkerlevine.com

*Plaintiffs' Executive Committee Member*

/s/ *James L. Stengel*
James L. Stengel

**UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | |
|---|---|
| IN RE: AQUEOUS FILM-FORMING FOAMS PRODUCTS LIABILITY LITIGATION | MDL No. 2:18-mn-2873-RMG |

**DEFENDANT SOUTHERN MILLS, INC.'S OBJECTIONS TO**
**PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, **Defendant Southern Mills, Inc.** ("Defendant" or "SMI") serves the below objections to Plaintiffs' First Set of Requests For Production ("Document Requests").

**GENERAL OBJECTIONS**

1.      In this Aqueous Film-Forming Foams ("AFFF") Products Liability Litigation ("MDL"), the Document Requests are objectionable for a number of reasons, including that they are premature. While the Document Requests purport to relate to "All Cases," it is clear that they pertain only to the small number of cases alleging that plaintiffs were injured by both AFFF and protective firefighter turnout gear ("Turnout Gear" or "TOG"). These Turnout Gear claims, which are alleged against SMI and around thirteen other defendants ("Turnout Gear Defendants" or "TOG Defendants"), do not predicate liability on the use of or exposure to AFFF. Accordingly, discovery, and in particular broad sweeping discovery, into the distinctly unique TOG personal injury claims is not appropriate at this time, given the current status of the matters pending in the MDL. SMI makes these objections subject to and without waiver of its position that discovery concerning alleged injuries from Turnout Gear is premature given the procedural posture of the MDL, and SMI expressly reserves its right to assert additional and/or more specific objections to these and any additional or related discovery at the appropriate time.

2.      The Court has conducted a "Science Day" with respect to AFFF only.  The scientific issues underlying the TOG claims, however, are fundamentally different from those underlying the AFFF claims.  Turnout Gear is not one product or one component, and it is not always used under the same conditions as AFFF.  Scientific questions underlying TOG personal injury claims involve different chemicals with different properties and toxicological profiles; different possible exposure pathways (if any); different theoretical exposure concentrations (if any); and a host of other issues that distinguish TOG claims from those involving AFFF.  The Science Day held for AFFF does not inform the questions of alleged exposure or adverse effects to the plaintiffs claiming harm caused by Turnout Gear.

3.       Discovery against the TOG defendants is also premature because the existing plaintiff fact sheets are not relevant to Turnout Gear.  The plaintiff fact sheets focus on AFFF and contain little to no information pertaining to the TOG claims.  There is no information provided from which SMI can determine why SMI is named as a defendant or SMI's role in any plaintiff's alleged injuries from Turnout Gear.  Under the procedures and protocols applicable in this MDL, more broad and burdensome discovery requests should not be served until after the plaintiffs have completed fact sheets that provide useful foundational information about the TOG claims, especially given the fact that defendants are precluded from serving their own discovery requests on the TOG plaintiffs at this time.  The TOG defendants are prepared to meet and confer with plaintiffs' counsel to discuss an appropriate fact sheet for plaintiffs alleging TOG claims.

4.      The Document Requests are premature because SMI has not yet had the opportunity to demonstrate the speculative nature of the claims asserted against it, which should be dismissed by the MDL court on that basis.  Before being forced to engage in broad, expansive, and burdensome discovery, SMI should be given an opportunity, if it opts to do so, to seek the Rule 12 dismissal of the claims against it.

5.      Case Management Order No. 2 (March 20, 2019) required the Plaintiffs' Executive Committee ("PEC") to "[d]evelop and propose to the Court schedules for the commencement,

execution and completion of all discovery on behalf of all plaintiffs." To SMI's knowledge, the PEC has not satisfied that requirement as to any TOG claim or with respect to TOG Defendants; indeed, no TOG claim had been filed at the time CMO No. 2 was entered and discovery commenced against the AFFF defendants. In short, there is no indication the Court contemplated, much less authorized, broad and one-sided general discovery against the TOG Defendants.

**OTHER RECURRING OBJECTIONS**

6.     SMI objects to the Document Requests to the extent that they seek documents protected from disclosure by the attorney-client privilege, work-product immunity, joint-defense privilege, common interest privilege, or any other privilege or protection afforded by applicable law. Consistent with Federal Rule of Civil Procedure 26(b)(1), SMI will construe the Document Requests as seeking only the production of "nonprivileged" documents. Moreover, in the event of an inadvertent disclosure of privileged/protected documents, the privilege/protection shall not be waived, and such documents will be subject to claw-back and other remedies, consistent with Federal Rule of Civil Procedure 26(b)(5)(B) and Federal Rule of Evidence 502(b).

7.     SMI objects to the Document Requests to the extent that they seek documents that constitute, contain, or otherwise disclose trade secrets or other proprietary or confidential information. In the event SMI is required to produce such information in the MDL, SMI will only do so subject to an appropriate protective order. SMI further objects to producing any document that is subject to a confidentiality obligation owed by SMI to a third party.

8.     The Document Requests are objectionable on the grounds that they are overly broad, unduly burdensome and oppressive, particularly but not exclusively to the extent they demand the production of "all documents," "all communications," and similar sweeping sets of documents without limitation; seek a range of documents neither relevant to any claim or defense in the TOG cases; and impose obligations on SMI that are disproportionate to the needs of genuine TOG claim discovery.

9.      Several requests are without any temporal limitation, and the general time period specified in the Document Requests (1970) (Instruction 13) is so early in time as to be overbroad, unduly burdensome, and virtually meaningless.

10.     SMI objects that several requests are without any geographic limitation and therefore seek information that is not relevant to any claim or defense in this litigation.

11.     SMI objects that several requests call for information about products not used by or associated with any plaintiff in this litigation or sold to any defendant in this litigation and, therefore, seek information that is not relevant to any claim or defense in this litigation.

12.     SMI objects to any Request to the extent that it improperly assumes facts, specifically, that TURNOUTS or TURNOUT INTERMEDIATE PRODUCTS are associated with adverse HUMAN HEALTH or TOXICOLOGICAL EFFECTS, and expressly rejects any such suggestion.

### OBJECTIONS TO PLAINTIFFS' DEFINITIONS AND INSTRUCTIONS

SMI objects as specified below to the Definitions and Instructions in the Document Requests.  Documents may be withheld on the basis of these objections.

1.      SMI objects to each definition and each instruction to the extent that it purports to impose on SMI obligations beyond those set out in the Federal Rules of Civil Procedure, and therefore causes the requests to be overly broad, unduly burdensome, or requiring the production of documents or disclosure of information that is not reasonably accessible.  By way of example only, SMI objects to Instruction No. 7, which purports to require the creation of a log of "destroyed, lost, discarded," etc. documents, and Instruction No. 11, which purports to require Defendants to produce documents that are not "relevant or responsive to the[] Requests."

2.      SMI objects to each definition that is unintelligible, vague or ambiguous, or would so expand the scope of a request as to impose an unreasonable burden or to seek information not

4

relevant to the claims or defenses relative to the TOG personal injury claims.  Examples of such problematic definitions include "Communications," "Internal Communications," "Plaintiffs," "Relating To" or "Concerning," and "You, "Your," and "Defendant."

3.      A number of the definitions are contradictory and render individual Document Requests unintelligible.  For example, the terms "Sale," "Sell," and "Sold" are limited to the sale of "Turnouts," but then those terms are used in requests that do not pertain to Turnouts.  The definitions of "Manufacturing Defendants," "PFAS," "PFOA," "PFOS," "PFAS-Containing Products," "Turnout Intermediate Product," "Turnout Defendant," and "Turnouts" are vague and ambiguous.

4.      SMI will construe the terms used in the Document Requests based on their ordinary meaning, and based on the facts that are relevant to the TOG claims and defenses.  Specifically:

    a.  SMI will construe the term "ADVERSE EFFECTS" to refer to harmful or negative consequences that are presently known to SMI, if any.

    b.  SMI will construe the term "PFAS-CONTAINING PRODUCTS" to refer to products presently known to SMI to be made with material that is a PFAS and/or contain a residual of one or more PFAS, as that term is defined below.

    c.  SMI will construe the term "PFAS" to refer to the per- and polyfluoroalkyl substances that are or may be used as a component in certain products produced by SMI and sold in and for use in the United States.  By construing this definition to correspond to multiple PFAS with different properties, SMI does not concede that any specific PFAS is present in TOG used by or associated with any plaintiff, or that the same specific PFAS chemicals are present in all TOG or any component thereof.

    d.  SMI will construe the term "PFOA" to refer to the chemical compound perfluorooctanoic acid.

5

e.  SMI will construe the term "PFOS" to refer to the chemical compound perfluorooctanesulfonic acid.

5.  SMI objects to each definition and each instruction that purports to require the production of documents or information not within SMI's possession, custody, or control or from persons or entities not within SMI's control; calls for a legal conclusion regarding the relationship between certain persons and/or entities; or may encompass relationships of which SMI is not aware.

6.  SMI objects to each definition and each instruction, including but not limited to Instructions Nos. 4 and 5, that is inconsistent with the protocol set forth in the MDL court's ESI Order.

7.  Any eventual production by SMI will be on a rolling basis, subject to SMI's obligations to supplement, to include responsive documents identified and produced only after a reasonable search and production effort (and subject to all applicable objections). Any such production will be made pursuant to the protective order in the MDL and Federal Rule of Civil Procedure 34.

## **REQUESTS FOR PRODUCTION**

### **REQUEST NO. 1:**

All DOCUMENTS CONCERNING warnings YOU provided about any HUMAN HEALTH EFFECTS of any TURNOUT INTERMEDIATE PRODUCT.

### **RESPONSE:**

SMI objects to this request based on General and Recurring Objections 1-12 and Objections Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

### **REQUEST NO. 2:**

All DOCUMENTS CONCERNING warnings YOU provided about any TOXICOLOGICAL EFFECTS of any TURNOUT INTERMEDIATE PRODUCT.

6

**RESPONSE:**

SMI objects to this request based on General and Recurring Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

**REQUEST NO. 3:**

All DOCUMENTS CONCERNING warnings YOU provided about any ADVERSE EFFECTS of any TURNOUT INTERMEDIATE PRODUCT, other than the HUMAN HEALTH and TOXICOLOGICAL EFFECTS discussed above.

**RESPONSE:**

SMI objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference. SMI objects further that the phrase "ADVERSE EFFECTS of any TURNOUT INTERMEDIATE PRODUCT, other than the HUMAN HEALTH and TOXICOLOGICAL EFFECTS discussed above," is vague and unintelligible.

**REQUEST NO. 4:**

All DOCUMENTS CONCERNING instructions YOU provided RELATING TO the HANDLING of any TURNOUT INTERMEDIATE PRODUCT YOU SOLD.

**RESPONSE:**

SMI objects to this request based on General and Recurring Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

**REQUEST NO. 5:**

All DOCUMENTS YOU used and/or relied on in preparing instructions YOU provided CONCERNING the HANDLING of any TURNOUT INTERMEDIATE PRODUCT YOU SOLD.

**RESPONSE:**

SMI objects to this request based on General and Recurring Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

**REQUEST NO. 6:**

All DOCUMENTS CONCERNING any contract and/or agreement between YOU and any MANUFACTURING DEFENDANT(S) for the SALE of any TURNOUT INTERMEDIATE PRODUCT.

7

**RESPONSE:**

SMI objects to this request based on General and Recurring Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

**REQUEST NO. 7:**

All COMMUNICATIONS between YOU and any MANUFACTURING DEFENDANT(S) CONCERNING PFAS and/or the presence of PFAS in TURNOUTS or any TURNOUT INTERMEDIATE PRODUCT.

**RESPONSE:**

SMI objects to this request based on General and Recurring Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference. SMI also objects that the use of the undefined term "presence," as used in this request, is vague and ambiguous.

**REQUEST NO. 8:**

All DOCUMENTS identifying the TURNOUT INTERMEDIATE PRODUCTS YOU SOLD to any TURNOUT DEFENDANT.

**RESPONSE:**

SMI objects to this request based on General and Recurring Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference. SMI also objects that the use of the undefined term "identifying," as used in this Request, is vague and ambiguous.

**REQUEST NO. 9:**

All DOCUMENTS CONCERNING YOUR process for manufacturing YOUR TURNOUT INTERMEDIATE PRODUCTS.

**RESPONSE:**

SMI objects to this request based on General and Recurring Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference. SMI also objects that this Request uses the undefined and vague term "process."

8

**REQUEST NO. 10:**

All DOCUMENTS CONCERNING YOUR formulation and/or design of YOUR TURNOUT INTERMEDIATE PRODUCTS.

**RESPONSE:**

      SMI objects to this request based on General and Recurring Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.  SMI also objects that this Request uses the undefined and vague phrase "formulation and/or design."

**REQUEST NO. 11:**

All DOCUMENTS CONCERNING any formulation and/or design of TURNOUTS that did not contain PFAS or PFAS-CONTAINING PRODUCTS.

**RESPONSE:**

      SMI objects to this request based on General and Recurring Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.  SMI also objects that this Request uses the undefined and vague phrase "formulation and/or design." SMI further objects to the extent this Request calls for the production of documents about or referring to TURNOUTS, which are not manufactured, distributed or sold by SMI.

**REQUEST NO. 12:**

All COMMUNICATIONS between YOU and any MANUFACTURING DEFENDANT(S) regarding any formulation and/or design of TURNOUTS that did not contain PFAS or PFAS-CONTAINING PRODUCTS.

**RESPONSE:**

      SMI objects to this request based on General and Recurring Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.  SMI also objects that this Request uses the undefined and vague phrase "formulation and/or design." SMI further objects to the extent this Request calls for the production of documents about or referring to TURNOUTS, which are not manufactured, distributed or sold by SMI.

9

**REQUEST NO. 13:**

All DOCUMENTS identifying the SKUs for TURNOUTS containing PFAS or PFAS-CONTAINING PRODUCTS YOU SOLD.

**RESPONSE:**

SMI objects to this request based on General and Recurring Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference. SMI also objects that this Request uses the undefined and vague term "SKUs." SMI further objects to the extent this Request calls for the production of documents about or referring to TURNOUTS, which are not manufactured, distributed or sold by SMI.

**REQUEST NO. 14:**

All DOCUMENTS CONCERNING the number and dollar value of sales of each TURNOUT INTERMEDIATE PRODUCT SKU YOU SOLD to each TURNOUT DEFENDANT.

**RESPONSE:**

SMI objects to this request based on General and Recurring Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

**REQUEST NO. 15:**

All purchase agreements, purchase contracts, invoices, supply contracts, receipts, or other documentation evidencing YOUR sale, manufacture, and/or distribution of YOUR TURNOUT INTERMEDIATE PRODUCTS.

**RESPONSE:**

SMI objects to this request based on General and Recurring Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

**REQUEST NO. 16:**

All DOCUMENTS CONCERNING any contracts and/or agreements that YOU had with suppliers, wholesalers, distributors, or any other entity that sold YOUR TURNOUT INTERMEDIATE PRODUCTS.

**RESPONSE:**

SMI objects to this request based on General and Recurring Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

**REQUEST NO. 17:**

All purchase orders, invoices, contracts, and/or other related materials that provide information about the sale, manufacture, and/or distribution of YOUR TURNOUT INTERMEDIATE PRODUCTS, including but not limited to the dates when YOUR TURNOUT INTERMEDIATE PRODUCTS were sold, the quantity YOU included in each shipment, and the amount (in dollars) YOU were paid for each shipment.

**RESPONSE:**

      SMI objects to this request based on General and Recurring Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

**REQUEST NO. 18:**

All DOCUMENTS RELATING TO the procedures and protocols for maintaining sales, production, volume, and invoicing records for YOUR TURNOUT INTERMEDIATE PRODUCTS.

**RESPONSE:**

      SMI objects to this request based on General and Recurring Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference. SMI also objects that this Request uses the undefined and vague terms "procedures," and "protocols."

**REQUEST NO. 19:**

All DOCUMENTS reflecting any assessment and/or analysis of YOUR share of the market for TURNOUT INTERMEDIATE PRODUCTS from 1970 to present.

**RESPONSE:**

      SMI objects to this request based on General and Recurring Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference. SMI also objects that this Request uses the undefined and vague terms "assessment," "analysis," and "market."

**REQUEST NO. 20:**

All studies and/or reports concerning any HUMAN HEALTH EFFECTS posed by PFAS or PFAS-CONTAINING PRODUCTS in TURNOUTS or any TURNOUT INTERMEDIATE PRODUCT.

**RESPONSE:**

SMI objects to this request based on General and Recurring Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

**REQUEST NO. 21:**

All studies and/or reports concerning any TOXICOLOGICAL EFFECTS posed by PFAS or PFAS-CONTAINING PRODUCTS in TURNOUTS or any TURNOUT INTERMEDIATE PRODUCT.

**RESPONSE:**

SMI objects to this request based on General and Recurring Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

**REQUEST NO. 22:**

All COMMUNICATIONS between YOU and other PERSONS CONCERNING any HUMAN HEALTH EFFECTS of PFAS or PFAS-CONTAINING PRODUCTS in TURNOUTS or any TURNOUT INTERMEDIATE PRODUCT.

**RESPONSE:**

SMI objects to this request based on General and Recurring Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

**REQUEST NO. 23:**

All COMMUNICATIONS between YOU and other PERSONS CONCERNING any TOXICOLOGICAL EFFECTS of PFAS or PFAS-CONTAINING PRODUCTS in TURNOUTS or any TURNOUT INTERMEDIATE PRODUCT.

**RESPONSE:**

SMI objects to this request based on General and Recurring Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

**REQUEST NO. 24:**

All historic and current Material Safety Data Sheets ("MSDS") for any TURNOUT INTERMEDIATE PRODUCT YOU SOLD.

12

**RESPONSE:**

      SMI objects to this request based on General and Recurring Objections 1-12 and Objections

to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

**REQUEST NO. 25:**

All DOCUMENTS, including but not limited to catalogues, statements circulars, manuals, brochures, reports, and advertisements, which mention, describe, or otherwise refer to the virtues, qualities, characteristics, capabilities, and/or capacities of any TURNOUT INTERMEDIATE PRODUCT YOU SOLD.

**RESPONSE:**

      SMI objects to this request based on General and Recurring Objections 1-12 and Objections

to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

**REQUEST NO. 26:**

All COMMUNICATIONS between YOU and any trade or industry organization CONCERNING HUMAN HEALTH EFFECTS of TURNOUTS or any TURNOUT INTERMEDIATE PRODUCT containing PFAS or PFAS-CONTAINING PRODUCTS.

**RESPONSE:**

      SMI objects to this request based on General and Recurring Objections 1-12 and Objections

to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

**REQUEST NO. 27:**

All COMMUNICATIONS between YOU and any trade or industry organization CONCERNING TOXICOLOGICAL EFFECTS of TURNOUTS or any TURNOUT INTERMEDIATE PRODUCT containing PFAS or PFAS-CONTAINING PRODUCTS.

**RESPONSE:**

      SMI objects to this request based on General and Recurring Objections 1-12 and Objections

to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

**REQUEST NO. 28:**

All COMMUNICATIONS between YOU and any trade or industry organization CONCERNING ADVERSE EFFECTS of TURNOUTS or any TURNOUT INTERMEDIATE PRODUCT containing PFAS or PFAS-CONTAINING PRODUCTS, other than the HUMAN HEALTH and TOXICOLOGICAL EFFECTS addressed above.

**RESPONSE:**

SMI objects to this request based on General and Recurring Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

**REQUEST NO. 29:**

All COMMUNICATIONS between YOU and any trade or industry organization CONCERNING the safety of TURNOUTS or any TURNOUT INTERMEDIATE PRODUCT containing PFAS or PFAS-CONTAINING PRODUCTS.

**RESPONSE:**

SMI objects to this request based on General and Recurring Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

**REQUEST NO. 30:**

All DOCUMENTS CONCERNING statements issued by YOU or on YOUR behalf regarding the HUMAN HEALTH EFFECTS associated with exposure to PFAS or PFAS-CONTAINING PRODUCTS.

**RESPONSE:**

SMI objects to this request based on General and Recurring Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

**REQUEST NO. 31:**

All DOCUMENTS CONCERNING statements issued by YOU or on your behalf regarding the TOXICOLOGICAL EFFECTS associated with exposure to PFAS or PFAS-CONTAINING PRODUCTS.

**RESPONSE:**

SMI objects to this request based on General and Recurring Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

**REQUEST NO. 32:**

All COMMUNICATIONS between YOU and any public relations and/or media consulting firms or agencies regarding any TOXICOLOGICAL EFFECTS of PFAS or PFAS-CONTAINING PRODUCTS.

**RESPONSE:**

SMI objects to this request based on General and Recurring Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

**REQUEST NO. 33:**

All COMMUNICATIONS between you and any public relations and/or media consulting firms or agencies CONCERNING any HUMAN HEALTH EFFECTS of PFAS or PFAS-CONTAINING PRODUCTS

**RESPONSE:**

SMI objects to this request based on General and Recurring Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

**REQUEST NO. 34:**

All DOCUMENTS regarding the biopersistence and/or the bioaccumulation of PFAS, PFOA, and/or PFOS.

**RESPONSE:**

SMI objects to this request based on General and Recurring Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference. SMI also objects that this Request calls for information that is neither relevant nor proportional to the needs of this litigation to the extent it seeks information about PFAS, PFOA, and/or PFOS that are not present in TURNOUTS or TURNOUT INTERMEDIATE PRODUCT(S) used by or associated with any plaintiff in this litigation or sold to any defendant in this litigation.

**REQUEST NO. 35:**

All DOCUMENTS regarding studies and/or reports CONCERNING the amount of PFAS or PFAS-CONTAINING PRODUCTS in any TURNOUT INTERMEDIATE PRODUCT YOU SOLD.

**RESPONSE:**

SMI objects to this request based on General and Recurring Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference. SMI

further objects to the phrase "amount of PFAS or PFAS-CONTAINING PRODUCTS" as vague and ambiguous.

**REQUEST NO. 36:**

All COMMUNICATIONS regarding studies and/or reports CONCERNING the amount of PFAS or PFAS-CONTAINING PRODUCTS in any TURNOUT INTERMEDIATE PRODUCT YOU SOLD.

**RESPONSE:**

SMI objects to this request based on General and Recurring Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference. SMI further objects to the phrase "amount of PFAS or PFAS-CONTAINING PRODUCTS" as vague and ambiguous.

**REQUEST NO. 37:**

All DOCUMENTS regarding studies and/or reports of TOXICOLOGICAL EFFECTS of PFAS, PFOA and/or PFOS conducted by YOU or on YOUR behalf.

**RESPONSE:**

SMI objects to this request based on General and Recurring Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

**REQUEST NO. 38:**

All DOCUMENTS and COMMUNICATIONS between YOU and any MANUFACTURING DEFENDANT(S) CONCERNING any TOXICOLOGICAL EFFECTS of PFAS or PFAS-CONTAINING PRODUCTS in TURNOUTS.

**RESPONSE:**

SMI objects to this request based on General and Recurring Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference. SMI further objects that this request is duplicative of Request No. 7.

**REQUEST NO. 39:**

All DOCUMENTS and COMMUNICATIONS between YOU and any MANUFACTURING DEFENDANT(S) CONCERNING any HUMAN HEALTH EFFECTS of PFAS or PFAS-CONTAINING PRODUCTS in TURNOUTS.

16

**RESPONSE:**

SMI objects to this request based on General and Recurring Objections 1-9 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference. SMI further objects that this request is duplicative of Request No. 7.

**REQUEST NO. 40:**

All DOCUMENTS and COMMUNICATIONS between YOU and any MANUFACTURING DEFENDANT(S) CONCERNING any adverse effects of PFAS or PFAS-CONTAINING PRODUCTS in TURNOUTS, other than the TOXICOLOGICAL and HUMAN HEALTH EFFECTS discussed above.

**RESPONSE:**

SMI objects to this request based on General and Recurring Objections 1-9 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference. SMI further objects that this request is duplicative of Request No. 7.

**REQUEST NO. 41:**

All DOCUMENTS regarding studies or research conducted by YOU or on YOUR behalf CONCERNING the use of non-PFAS materials in the TURNOUTS YOU SOLD.

**RESPONSE:**

SMI objects to this request based on General and Recurring Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference. SMI also objects that the use of the undefined term "non-PFAS materials," as used in this request, is vague and ambiguous. SMI states further that it has never sold any TURNOUTS.

**REQUEST NO. 42:**

All DOCUMENTS CONCERNING the effectiveness of non-PFAS materials in any TURNOUT INTERMEDIATE PRODUCT YOU SOLD.

**RESPONSE:**

SMI objects to this request based on General and Recurring Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference. SMI

17

also objects that the use of the undefined term "non-PFAS materials," as used in this request, is vague and ambiguous.

## REQUEST NO. 43:

All COMMUNICATIONS CONCERNING the use of non-PFAS materials in any TURNOUT INTERMEDIATE PRODUCT YOU SOLD.

## RESPONSE:

SMI objects to this request based on General and Recurring Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

## REQUEST NO. 44:

All DOCUMENTS CONCERNING the development and adoption of warning DOCUMENTS, instructions, and/or labels on any TURNOUT INTERMEDIATE PRODUCT YOU SOLD.

## RESPONSE:

SMI objects to this request based on General and Recurring Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

## REQUEST NO. 45:

All DOCUMENTS RELATING TO any insurance coverage or request for any insurance coverage in connection with any loss, claim, damage or request relating or referring to this MDL or any other action arising from the use of TURNOUT INTERMEDIATE PRODUCTS containing PFAS or PFAS-CONTAINING PRODUCTS YOU SOLD.

## RESPONSE:

SMI objects to this request based on General and Recurring Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

## REQUEST NO. 46:

All DOCUMENTS RELATING TO any meetings or correspondence with, or submissions to, the National Fire Protection Association concerning TURNOUTS or any TURNOUT INTERMEDIATE PRODUCT.

18

**RESPONSE:**

SMI objects to this request based on General and Recurring Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

**REQUEST NO. 47:**

All COMMUNICATIONS between YOU and the National Fire Protection Association CONCERNING TURNOUTS or any TURNOUT INTERMEDIATE PRODUCT.

**RESPONSE:**

SMI objects to this request based on General and Recurring Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

**REQUEST NO. 48:**

All COMMUNICATIONS between YOU and any MANUFACTURING DEFENDANT(S) CONCERNING the National Fire Protection Association.

**RESPONSE:**

SMI objects to this request based on General and Recurring Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

**REQUEST NO. 49:**

All DOCUMENTS CONCERNING any financial contributions or payments from YOU to the National Fire Protection Association.

**RESPONSE:**

SMI objects to this request based on General and Recurring Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

**REQUEST NO. 50:**

All DOCUMENTS RELATING TO any meetings or correspondence with, or submissions to, the International Association of Fire Fighters concerning TURNOUTS or any TURNOUT INTERMEDIATE PRODUCT.

**RESPONSE:**

SMI objects to this request based on General and Recurring Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

19

**REQUEST NO. 51:**

All COMMUNICATIONS between YOU and the International Association of Fire Fighters concerning TURNOUTS or any TURNOUT INTERMEDIATE PRODUCT.

**RESPONSE:**

SMI objects to this request based on General and Recurring Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

**REQUEST NO. 52:**

All COMMUNICATIONS between YOU and any MANUFACTURING DEFENDANT(S) CONCERNING the the International Association of Fire Fighters.

**RESPONSE:**

SMI objects to this request based on General and Recurring Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

**REQUEST NO. 53:**

All DOCUMENTS CONCERNING any financial contributions or payments from YOU to the International Association of Fire Fighters.

**RESPONSE:**

SMI objects to this request based on General and Recurring Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

**REQUEST NO. 54:**

All DOCUMENTS CONCERNING any disclosure that any TURNOUT INTERMEDIATE PRODUCT YOUSOLD [SIC] contained PFAS or PFAS-CONTAINING PRODUCTS.

**RESPONSE:**

SMI objects to this request based on General and Recurring Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference. SMI also objects that this Request uses the undefined and vague term "disclosure."

20

**REQUEST NO. 55:**

All DOCUMENTS RELATING TO any meetings or correspondence with, or submission to, any governmental body, trade association, industry group, or lobbying group regarding PFAS or PFAS-CONTAINING PRODUCTS.

**RESPONSE:**

SMI objects to this request based on General and Recurring Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

Respectfully submitted this the 8th of July 2022.


/s/ *Benjamin M. Kleinman*
Benjamin M. Kleinman
CA State Bar No. 261846
**KILPATRICK TOWNSEND & STOCKTON LLP**
Two Embarcadero Center, Suite 1900
San Francisco, CA 94111
Telephone: (415) 576-0200
Facsimile: (415) 723-7122
bkleinman@kilpatricktownsend.com


James F. Bogan III
GA State Bar No. 065220
C. Allen Garrett Jr.
GA State Bar No. 286335
**KILPATRICK TOWNSEND & STOCKTON LLP**
1100 Peachtree Street NE, Suite 2800
Atlanta , GA 30309
P: (404) 815-6500
F: (404) 815-6555
jbogan@kilpatricktownsend.com
agarrett@kilpatricktownsend.com


*Counsel for Defendant Southern Mills, Inc.*

## CERTIFICATE OF SERVICE

I certify that on July 8, 2022, a true and correct copy of the foregoing was served via electronic mail upon the following:

*Plaintiffs*

Michael A. London
Tate J. Kunkles
Douglas and London PC
mlondon@douglasandlondon.com
tkunkle@douglasandlondon.com

Paul J. Napoli
Napoli Shkolnik
pnapoli@nsprlaw.com

Scott Summy
Baron & Budd, P.C.
ssummy@baronbudd.com
afffmdlproductions@baronbudd.com

*Plaintiffs' Co-Lead Counsel*

Fred Thompson III
Marissa Bessis
Motley Rice LLC
fthompson@motleyrice.com
mbessis@motleyrice.com

*Plaintiffs' Liaison Counsel*

Elizabeth C. Pritzker
Pritzker Levine LLP
ecp@pritzkerlevine.com

/s/ *Benjamin M. Kleinman*
Benjamin M. Kleinman

US2008 20373177 5

# UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA
### CHARLESTON DIVISION

| | |
|---|---|
| IN RE: AQUEOUS FILM-FORMING FOAMS PRODUCTS LIABILITY LITIGATION | MDL No. 2:18-mn-2873-RMG |

## DEFENDANT SOUTHERN MILLS, INC.'S OBJECTIONS TO PLAINTIFFS' FIRST SET OF INTERROGATORIES

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, **Defendant Southern Mills, Inc.** ("Defendant" or "SMI") serves the below objections to Plaintiffs' First Set of Interrogatories ("Interrogatories").

## GENERAL OBJECTIONS

1.      In this Aqueous Film-Forming Foams ("AFFF") Products Liability Litigation ("MDL"), the Interrogatories are objectionable for a number of reasons, including that they are premature. While the Interrogatories purport to relate to "All Cases," it is clear that they pertain only to the small number of cases alleging that plaintiffs were injured by both AFFF and protective firefighter turnout gear ("Turnout Gear" or "TOG"). These Turnout Gear claims, which are alleged against SMI and around thirteen other defendants ("Turnout Gear Defendants" or "TOG Defendants"), do not predicate liability on the use of or exposure to AFFF. Accordingly, discovery, and in particular, broad sweeping discovery, into the distinctly unique TOG personal injury claims is not appropriate at this time, given the current status of the matters pending in the MDL. SMI makes these objections subject to and without waiver of its position that discovery concerning alleged injuries from Turnout Gear is premature given the procedural posture of the MDL, and expressly reserves its right to assert additional and/or more specific objections to these and any additional or related discovery at the appropriate time.

2.     The Court has conducted a "Science Day" with respect to AFFF only.  The scientific issues underlying the TOG claims, however, are fundamentally different from those underlying the AFFF claims.  Turnout Gear is not one product or one component, and it is not always used under the same conditions as AFFF.  Scientific questions underlying TOG personal injury claims involve different chemicals with different properties and toxicological profiles; different possible exposure pathways (if any); different theoretical exposure concentrations (if any); and a host of other issues that distinguish TOG claims from those involving AFFF.  The Science Day held for AFFF does not inform the questions of alleged exposure or adverse effects to plaintiffs claiming harm caused by Turnout Gear.

3.     Discovery against the TOG defendants is also premature because the existing plaintiff fact sheets are not relevant to Turnout Gear.  The plaintiff fact sheets focus on AFFF and contain little to no information pertaining to the TOG claims.  There is no information provided from which SMI can determine why SMI is named as a defendant or SMI's role in any plaintiff's alleged injuries from Turnout Gear.  Under the procedures and protocols applicable in this MDL, broad and burdensome discovery requests should not be served until after the plaintiffs have completed fact sheets that provide useful foundational information about the TOG claims, especially given the fact that defendants are precluded from serving their own discovery requests on the TOG plaintiffs at this time.  The TOG defendants are prepared to meet and confer with plaintiffs' counsel to discuss an appropriate fact sheet for plaintiffs alleging TOG claims.

4.     The Interrogatories are premature because SMI has not yet had the opportunity to demonstrate the speculative nature of the claims asserted against it, which should be dismissed by the MDL court on that basis.  Before being forced to engage in broad, expansive and burdensome discovery, SMI should be given an opportunity, if it opts to do so, to seek the Rule 12 dismissal of the claims against it.

5.     Case Management Order No. 2 (March 20, 2019) required the Plaintiffs' Executive Committee ("PEC") to "[d]evelop and propose to the Court schedules for the commencement,

execution and completion of all discovery on behalf of all plaintiffs." To SMI's knowledge, the PEC has not satisfied that requirement as to any TOG claim or with respect to the TOG Defendants; indeed, no TOG claim had been filed at the time CMO No. 2 was entered and discovery commenced against the AFFF defendants. In short, there is no indication the Court contemplated, much less authorized, broad and one-sided general discovery against the TOG Defendants.

## OTHER RECURRING OBJECTIONS

6.    SMI objects to the Interrogatories to the extent that they seek information protected from disclosure by the attorney-client privilege, work-product immunity, joint-defense privilege, common interest privilege, or any other privilege or protection afforded by applicable law. Consistent with Federal Rule of Civil Procedure 26(b)(1), SMI will construe the Interrogatories as seeking only the disclosure of "nonprivileged" information. Moreover, in the event of an inadvertent disclosure of privileged/protected information or documents, the privilege/protection shall not be waived, and such information and documents will be subject to claw-back and other remedies, consistent with Federal Rule of Civil Procedure 26(b)(5)(B) and Federal Rule of Evidence 502(b).

7.    SMI objects to the Interrogatories to the extent that they seek the disclosure of information that constitutes, contains, or otherwise discloses trade secrets or other proprietary or confidential information. In the event SMI is required to produce such information in the MDL, SMI will only do so subject to an appropriate protective order. SMI further objects to disclosing any information that is subject to a confidentiality obligation owed by SMI to a third party.

8.    SMI objects to each and every Interrogatory that seeks the address, telephone numbers, or other personal information of individuals. In many or most cases, SMI does not possess such information, but where it may, SMI objects to any such Interrogatory as unduly invasive and unnecessarily violative of those individuals' privacy rights as well as of SMI's duty to safeguard the personal information of SMI's employees or former employees. Any current or former SMI employee should be contacted only through counsel of record for SMI in the MDL.

3

US2008 20395236 2

9.      The Interrogatories are objectionable on the grounds that they are overly broad, unduly burdensome and oppressive, particularly but not exclusively to the extent they demand that SMI "identify" or "describe" "all" documents, communications, persons or things listed in any Interrogatory or seek similar sweeping categories of information; seek a range of information and documents neither relevant to any claim or defense in the TOG cases; and impose obligations on SMI that are disproportionate to the needs of genuine TOG claim discovery.

10.     Several Interrogatories are without any temporal limitation, and the general time period specified in the Interrogatories (1970) (Instruction 8) is so early in time as to be overbroad, unduly burdensome and virtually meaningless.

11.     SMI objects that several Interrogatories are without any geographic limitation and therefore seek information that is not relevant to any claim or defense in this litigation.

12.     SMI objects that several Interrogatories seek information about products not used by or associated with any plaintiff in this litigation or sold to any defendant in this litigation and therefore seek information that is not relevant to any claim or defense in this litigation.

13.     SMI objects to the extent any Interrogatory improperly assumes facts, specifically, that TURNOUTS, TURNOUT INTERMEDIATE PRODUCTS or PFAS-CONTAINING PRODUCTS are associated with adverse HUMAN HEALTH or TOXICOLOGICAL EFFECTS, and expressly rejects any such suggestion.

14.     SMI expressly reserves all rights, including, in particular but not exclusively, the right to respond to any Interrogatory, as appropriate, by "(1) specifying the records that must be reviewed in sufficient detail to enable [plaintiffs] to locate and identify them as readily as the responding party could; and (2) giving [plaintiffs] a reasonable opportunity to examine and audit the records and to make copies, compilations, abstracts, or summaries."  Federal Rule of Civil Procedure 33(d).

## OBJECTIONS TO PLAINTIFFS' DEFINITIONS AND INSTRUCTIONS

SMI objects as specified below to the Definitions and Instructions in the Interrogatories. Information may be withheld on the basis of these objections.

1.      SMI objects to each definition and each instruction to the extent that it purports to impose on SMI obligations beyond those set out in the Federal Rules of Civil Procedure, and therefore causes the Interrogatories to be overly broad, unduly burdensome, or requiring the disclosure of information that is not reasonably accessible.  By way of example only, SMI objects to Instruction Nos. 4 and 7, which purport to impose privilege log obligations beyond those required by Federal Rule of Civil Procedure 26(b)(5)(A).

2.      SMI objects to each instruction and each definition that is unintelligible, vague or ambiguous, or would so expand the scope of a request as to impose an unreasonable burden or to seek information not relevant to the claims or defenses relative to the TOG personal injury claims. Examples of such problematic instructions and definitions include Instruction Nos. 5 ("describe") and 6 ("identify") and the following definitions:  "Communications," "Internal Communications," "Plaintiffs," "Relating To" or "Concerning," and "You, "Your," and "Defendant."

3.      A number of the definitions are contradictory and render individual Interrogatories unintelligible.  For example, the terms "Sale," "Sell," and "Sold" are limited to the sale of "AFFF," but then those terms are used in Interrogatories that do not pertain to AFFF.  The definitions of "Manufacturing Defendants," "PFAS," "PFOA," "PFOS," "PFAS-Containing Products," and "Turnouts" are vague and ambiguous.

4.      SMI will construe the terms used in the Interrogatories based on their ordinary meaning, and based on the facts that are relevant to the TOG claims and defenses.  Specifically:

   a. SMI will construe the term "ADVERSE EFFECTS" to refer to harmful or negative consequences that are presently known to SMI, if any.

b.  SMI will construe the term "PFAS-CONTAINING PRODUCTS" to refer to products presently known to SMI to be made with material that is a PFAS and/or contain a residual of one or more PFAS, as that term is defined below.

c.  SMI will construe the term "PFAS" to refer to the per- and polyfluoroalkyl substances that are or may be used as a component in certain products produced by SMI and sold in and for use in the United States.  By construing this definition to correspond to multiple PFAS with different properties, SMI does not concede that any specific PFAS is present in TOG used by or associated with any plaintiff, or that the same specific PFAS chemicals are present in all TOG or any component thereof.

d.  SMI will construe the term "PFOA" to refer to the chemical compound perfluorooctanoic acid.

e.  SMI will construe the term "PFOS" to refer to the chemical compound perfluorooctanesulfonic acid.

f.  SMI objects that the term "TURNOUT DEFENDANTS" is not defined and is therefore vague and ambiguous.  SMI will construe the term "TURNOUT DEFENDANTS" to mean any current defendant in this MDL that currently or formerly produced or manufactured TURNOUTS.

g.  SMI objects that the term "TURNOUT INTERMEDIATE PRODUCTS" is not defined and is therefore vague and ambiguous.  SMI will construe the term "TURNOUT INTERMEDIATE PRODUCTS" to refer to products containing PFAS or PFAS-CONTAINING PRODUCTS that SMI manufactured and sold to any defendant in this MDL that currently or formerly produced or manufactured TURNOUTS.

5.    SMI objects to each definition and each instruction that purports to require the disclosure of information not within SMI's possession, custody, or control or from persons or

6

entities not within SMI's control; calls for a legal conclusion regarding the relationship between certain persons and/or entities; or may encompass relationships of which SMI is not aware.

6.     Any eventual disclosure by SMI will be on a rolling basis, subject to SMI's obligations to supplement, to include responsive information identified and disclosed only after a reasonable search and disclosure effort (and subject to all applicable objections). Any such response will be made pursuant to the protective order in the MDL and Federal Rule of Civil Procedure 33.

## INTERROGATORIES

### INTERROGATORY NO. 1:

Identify each PERSON who has supplied information used in answering these interrogatories and specify the interrogatories for which each PERSON is responsible.

### RESPONSE:

SMI objects to this Interrogatory based on General and Recurring Objections 1-14 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.

### INTERROGATORY NO. 2:

Identify all TURNOUT INTERMEDIATE PRODUCT(S) that YOU SOLD to any MANUFACTURING DEFENDANT(S), stating for each: the trade name under which it was SOLD, the number and dollar value of SALES to each MANUFACTURING DEFENDANT(S), and the date(s) when it was SOLD.

### RESPONSE:

SMI objects to this Interrogatory based on General and Recurring Objections 1-14 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.

### INTERROGATORY NO. 3:

Identify the specific PFAS or PFAS-CONTAINING PRODUCTS present in each of YOUR TURNOUT INTERMEDIATE PRODUCT(S) for each year that each of YOUR TURNOUT INTERMEDIATE PRODUCTS was SOLD.

7

**RESPONSE:**

SMI objects to this Interrogatory based on General and Recurring Objections 1-14 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.

**INTERROGATORY NO. 4:**

Identify all TURNOUT DEFENDANTS to which YOU have SOLD TURNOUT INTERMEDIATE PRODUCTS.

**RESPONSE:**

SMI objects to this Interrogatory based on General and Recurring Objections 1-14 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.

**INTERROGATORY NO. 5:**

Identify all contracts or agreements between YOU and any TURNOUT DEFENDANTS for the sale and/or delivery of TURNOUT INTERMEDIATE PRODUCTS.

**RESPONSE:**

SMI objects to this Interrogatory based on General and Recurring Objections 1-14 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.

**INTERROGATORY NO. 6:**

For each TURNOUT DEFENDANT identified in response to INTERROGATORY NO. 4 and INTERROGATORY NO. 5, identify the TURNOUT INTERMEDIATE PRODUCT(S) YOU SOLD, licensed, or delivered directly to that TURNOUT DEFENDANT, including the name of the product, the amount, and the dates of sale.

**RESPONSE:**

SMI objects to this Interrogatory based on General and Recurring Objections 1-14 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.

**INTERROGATORY NO. 7:**

Identify all studies, analyses, tests, or reports YOU have ever conducted or contracted with another PERSON to conduct on YOUR behalf CONCERNING either the presence or the amount of PFAS or PFAS-CONTAINING PRODUCTS in YOUR TURNOUT INTERMEDIATE PRODUCT(S) or TURNOUTS manufactured using YOUR TURNOUT INTERMEDIATE PRODUCT(S).

**RESPONSE:**

SMI objects to this Interrogatory based on General and Recurring Objections 1-14 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.

**INTERROGATORY NO. 8:**

Identify all COMMUNICATIONS YOU have had with any MANUFACTURING DEFENDANT(S) CONCERNING either the presence or the amount of PFAS or PFAS-CONTAINING PRODUCTS in YOUR TURNOUT INTERMEDIATE PRODUCT(S).

**RESPONSE:**

SMI objects to this Interrogatory based on General and Recurring Objections 1-14 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.

**INTERROGATORY NO. 9:**

Identify all COMMUNICATIONS YOU have had with any trade or industry organization CONCERNING either the presence or the amount of PFAS or PFAS-CONTAINING PRODUCTS in YOUR TURNOUT INTERMEDIATE PRODUCT(S).

**RESPONSE:**

SMI objects to this Interrogatory based on General and Recurring Objections 1-14 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference

**INTERROGATORY NO. 10:**

Identify all COMMUNICATIONS YOU have had with either the National Fire Protection Association or the International Association of Fire Fighters CONCERNING either the presence or the amount of PFAS or PFAS-CONTAINING PRODUCTS in YOUR TURNOUT INTERMEDIATE PRODUCT(S).

**RESPONSE:**

SMI objects to this Interrogatory based on General and Recurring Objections 1-14 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.

**INTERROGATORY NO. 11:**

Identify all information YOU provided to any purchaser or user of YOUR TURNOUT INTERMEDIATE PRODUCT(S) CONCERNING the formulation or design of YOUR TURNOUT INTERMEDIATE PRODUCT(S).

US2008 20395236 2

**RESPONSE:**

SMI objects to this Interrogatory based on General and Recurring Objections 1-14 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.

**INTERROGATORY NO. 12:**

Identify all warnings or information YOU provided to purchasers or users of YOUR TURNOUT INTERMEDIATE PRODUCTS about any TOXICOLOGICAL EFFECTS of PFAS or PFAS-CONTAINING PRODUCTS or PFAS-CONTAINING PRODUCTS.

**RESPONSE:**

SMI objects to this Interrogatory based on General and Recurring Objections 1-14 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.

**INTERROGATORY NO. 13:**

Identify all warnings or information YOU provided to purchasers or users of YOUR TURNOUT INTERMEDIATE PRODUCTS about any HUMAN HEALTH EFFECTS of PFAS or PFAS-CONTAINING PRODUCTS.

**RESPONSE:**

SMI objects to this Interrogatory based on General and Recurring Objections 1-14 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.

**INTERROGATORY NO. 14:**

Identify all warnings or information YOU provided to purchasers or users of YOUR TURNOUT INTERMEDIATE PRODUCTS about any ADVERSE EFFECTS of PFAS or PFAS-CONTAINING PRODUCTS, other than the TOXICOLOGICAL and HUMAN HEALTH EFFECTS discussed above.

**RESPONSE:**

SMI objects to this Interrogatory based on General and Recurring Objections 1-14 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference. SMI also objects that the phrase "ADVERSE EFFECTS of PFAS or PFAS-CONTAINING PRODUCTS, other than the TOXICOLOGICAL and HUMAN HEALTH EFFECTS discussed above," is vague, ambiguous, overly broad and unintelligible.

**INTERROGATORY NO. 15:**

Are YOU aware of or have YOU ever conducted or contracted with another PERSON to conduct any studies, reports, and/or surveys to investigate the TOXICOLOGICAL EFFECTS of any PFAS present in YOUR TURNOUT INTERMEDIATE PRODUCT(S) or TURNOUTS manufactured from YOUR TURNOUT INTERMEDIATE PRODUCT(S)?

**RESPONSE:**

     SMI objects to this Interrogatory based on General and Recurring Objections 1-14 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.

**INTERROGATORY NO. 16:**

If YOUR response to INTERROGATORY NO. 15 is in the affirmative, identify the study, who conducted the study, the results of the study, any PERSONS with knowledge of relevant facts about the study, and all DOCUMENTS RELATING TO or referencing the study.

**RESPONSE:**

     SMI objects to this Interrogatory based on General and Recurring Objections 1-14 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.

**INTERROGATORY NO. 17:**

For each TOXICOLOGICAL EFFECT YOU are aware of that is associated with the PFAS or PFAS-CONTAINING PRODUCTS present in YOUR TURNOUT INTERMEDIATE PRODUCT(S) or TURNOUTS, identify the TOXICOLOGICAL EFFECT, the date YOU first became aware of that TOXICOLOGICAL EFFECT, the source of that knowledge, and any DOCUMENTS RELATING TO or referencing that TOXICOLOGICAL EFFECT.

**RESPONSE:**

     SMI objects to this Interrogatory based on General and Recurring Objections 1-14 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.

**INTERROGATORY NO. 18:**

For each TOXICOLOGICAL EFFECT identified in response to INTERROGATORY NO. 17, identify the PERSON most knowledgeable about that TOXICOLOGICAL EFFECT and YOUR awareness of it.

**RESPONSE:**

SMI objects to this Interrogatory based on General and Recurring Objections 1-14 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference. SMI further objects that this Interrogatory prematurely calls for the identification of a person most knowledgeable.

**INTERROGATORY NO. 19:**

Are YOU aware of or have YOU ever conducted or contracted with another PERSON to conduct any studies, reports and/or surveys to investigate the HUMAN HEALTH EFFECTS of any PFAS present in YOUR TURNOUT INTERMEDIATE PRODUCT(S) or TURNOUTS manufactured from YOUR TURNOUT INTERMEDIATE PRODUCT(S)?

**RESPONSE:**

SMI objects to this Interrogatory based on General and Recurring Objections 1-14 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.

**INTERROGATORY NO. 20:**

If YOUR response to INTERROGATORY NO. 19 is in the affirmative, identify the study, who conducted the study, the results of the study, any PERSONS with knowledge of relevant facts about the study, and all DOCUMENTS RELATING TO or referencing the study.

**RESPONSE:**

SMI objects to this Interrogatory based on General and Recurring Objections 1-14 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference. SMI further objects that the phrase "PERSONS with knowledge of relevant facts" is vague, ambiguous and overbroad.

**INTERROGATORY NO. 21:**

For each HUMAN HEALTH EFFECT YOU are aware of that is associated with the PFAS or PFAS-CONTAINING PRODUCTS present in YOUR TURNOUT INTERMEDIATE PRODUCT(S) or TURNOUTS, identify the HUMAN HEALTH EFFECT, the date YOU first became aware of that HUMAN HEALTH EFFECT, the source of that knowledge, and any DOCUMENTS RELATING TO or referencing that HUMAN HEALTH EFFECT.

**RESPONSE:**

SMI objects to this Interrogatory based on General and Recurring Objections 1-14 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.

**INTERROGATORY NO. 22:**

For each HEALTH EFFECT identified in response to INTERROGATORY NO. 21, identify the PERSON most knowledgeable about that HEALTH EFFECT and YOUR awareness of it.

**RESPONSE:**

SMI objects to this Interrogatory based on General and Recurring Objections 1-14 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference. SMI further objects that this Interrogatory prematurely calls for the identification of a person most knowledgeable.

**INTERROGATORY NO. 23:**

Identify all warnings or information YOU provided to purchasers of YOUR TURNOUT INTERMEDIATE PRODUCT(S) CONCERNING any ADVERSE EFFECTS of PFAS, including the date each such warning was given, other than the TOXICOLOGICAL and HUMAN HEALTH EFFECTS discussed above.

**RESPONSE:**

SMI objects to this Interrogatory based on General and Recurring Objections 1-14 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference. SMI also objects that the phrase "ADVERSE EFFECTS of PFAS . . . other than the TOXICOLOGICAL and HUMAN HEALTH EFFECTS discussed above" is vague, ambiguous, overly broad and unintelligible.

**INTERROGATORY NO. 24:**

Identify any and all alternatives to PFAS or PFAS-CONTAINING PRODUCTS YOU investigated or otherwise considered for use in any TURNOUT INTERMEDIATE PRODUCT(S) YOU SOLD.

**RESPONSE:**

SMI objects to this Interrogatory based on General and Recurring Objections 1-14 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference. SMI also objects that this Interrogatory uses the undefined, vague, ambiguous and overly broad terms "alternatives," "investigated" and "considered."

**INTERROGATORY NO. 25:**

Identify any and all research YOU conducted or reviewed CONCERNING alternatives to PFAS or PFAS-CONTAINING PRODUCTS for use in any TURNOUT INTERMEDIATE PRODUCT(S) YOU SOLD.

13

**RESPONSE:**

SMI objects to this Interrogatory based on General and Recurring Objections 1-14 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference. SMI also objects that this Interrogatory uses the undefined, vague and ambiguous term "alternatives."

**INTERROGATORY NO. 26:**

Describe how and when YOU became aware that TURNOUT INTERMEDIATE PRODUCT(S) YOU SOLD contained PFAS or PFAS-CONTAINING PRODUCTS.

**RESPONSE:**

SMI objects to this Interrogatory based on General and Recurring Objections 1-14 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference. SMI further objects to this Interrogatory as being served in violation of Federal Rule 33(a)(1). SMI also objects that this Interrogatory uses the undefined, vague and ambiguous term "alternatives."

**INTERROGATORY NO. 27:**

If YOU are aware, identify when YOU became aware of the TOXICOLOGICAL EFFECTS of PFAS or PFAS-CONTAINING PRODUCTS.

**RESPONSE:**

SMI objects to this Interrogatory based on General and Recurring Objections 1-14 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference. SMI further objects to this Interrogatory as being served in violation of Federal Rule 33(a)(1).

**INTERROGATORY NO. 28:**

If YOU are aware, identify when YOU became aware of the HUMAN HEALTH EFFECTS of PFAS or PFAS-CONTAINING PRODUCTS.

**RESPONSE:**

SMI objects to this Interrogatory based on General and Recurring Objections 1-14 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference. SMI further objects to this Interrogatory as being served in violation of Federal Rule 33(a)(1).

**INTERROGATORY NO. 29:**

Identify any and all promotional materials related to the sale of YOUR TURNOUT INTERMEDIATE PRODUCT(S). Attach a copy of any identified promotional materials.

14

**RESPONSE:**

SMI objects to this Interrogatory based on General and Recurring Objections 1-14 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference. SMI further objects to the Interrogatory's requirement of producing or otherwise attaching promotional materials as beyond the scope of Federal Rule 33. SMI further objects to this Interrogatory as being served in violation of Federal Rule 33(a)(1).

**INTERROGATORY NO. 30:**

Identify any government law, regulation, or rule that requires or required the use of PFAS or PFAS-CONTAINING PRODUCTS in YOUR TURNOUT INTERMEDIATE PRODUCT(S) or TURNOUTS manufactured from YOUR TURNOUT INTERMEDIATE PRODUCT(S).

**RESPONSE:**

SMI objects to this Interrogatory based on General and Recurring Objections 1-14 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference. SMI further objects to this Interrogatory as being served in violation of Federal Rule 33(a)(1). SMI also objects to the extent this Interrogatory calls for information from public sources that are equally available to Plaintiffs as to SMI.

Respectfully submitted this the 8th of July 2022.

/s/ *Benjamin M. Kleinman*
Benjamin M. Kleinman
CA State Bar No. 261846
**KILPATRICK TOWNSEND & STOCKTON LLP**
Two Embarcadero Center, Suite 1900
San Francisco, CA 94111
Telephone: (415) 576-0200
Facsimile: (415) 723-7122
bkleinman@kilpatricktownsend.com

James F. Bogan III
GA State Bar No. 065220
C. Allen Garrett Jr.
GA State Bar No. 286335
**KILPATRICK TOWNSEND & STOCKTON LLP**
1100 Peachtree Street NE, Suite 2800
Atlanta , GA 30309
P: (404) 815-6500
F: (404) 815-6555
jbogan@kilpatricktownsend.com
agarrett@kilpatricktownsend.com

*Counsel for Defendant Southern Mills, Inc.*

15

US2008 20395236 2

## CERTIFICATE OF SERVICE

I certify that on July 8, 2022, a true and correct copy of the foregoing was served via electronic mail upon the following:

*Plaintiffs*

Michael A. London
Tate J. Kunkles
Douglas and London PC
mlondon@douglasandlondon.com
tkunkle@douglasandlondon.com

Paul J. Napoli
Napoli Shkolnik
pnapoli@nsprlaw.com

Scott Summy
Baron & Budd, P.C.
ssummy@baronbudd.com
afffmdlproductions@baronbudd.com

*Plaintiffs' Co-Lead Counsel*

Fred Thompson III
Marissa Bessis
Motley Rice LLC
fthompson@motleyrice.com
mbessis@motleyrice.com

*Plaintiffs' Liaison Counsel*

Elizabeth C. Pritzker
Pritzker Levine LLP
ecp@pritzkerlevine.com

/s/ *Benjamin M. Kleinman*
Benjamin M. Kleinman

16

**UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | |
|---|---|
| IN RE: AQUEOUS FILM-FORMING FOAMS PRODUCTS LIABILITY LITIGATION | MDL No. 2:18-mn-2873-RMG |

**DEFENDANT STEDFAST USA, INC.'S OBJECTIONS TO**
**PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, **Defendant Stedfast USA, Inc.** ("Defendant" or "Stedfast") serves the below objections to Plaintiffs' First Set of Requests For Production ("Document Requests").

**GENERAL OBJECTIONS**

1.      In this Aqueous Film-Forming Foams ("AFFF") Products Liability Litigation ("MDL"), the Document Requests are objectionable for several reasons, including that they are premature.  While the Document Requests purport to relate to "All Cases," they pertain only to the small number of cases.  These Turnout Gear claims, which are alleged against Stedfast and around thirteen other defendants ("Turnout Gear Defendants" or "TOG Defendants"), do not predicate liability on the use of or exposure to AFFF.  Accordingly, discovery, and in particular, broad sweeping discovery, into the distinctly unique TOG personal injury claims is not appropriate at this time, given the current status of the matters pending in the MDL.  Stedfast makes these objections subject to and without waiver of its position that discovery concerning alleged injuries from turnout gear is premature given the procedural posture of the MDL and expressly reserves its right to assert additional and/or more specific objections to these and any additional or related discovery at the appropriate time.

2.      The Court has conducted a "Science Day" with respect to AFFF only.  The scientific issues underlying the TOG claims, however, are fundamentally different from those

1

underlying the AFFF claims. Turnout Gear is not one product or one component, and it is not always used under the same conditions as AFFF.  Scientific questions underlying TOG personal injury claims; involve different chemicals with different properties and toxicological profiles; different possible exposure pathways (if any), different theoretical exposure concentrations (if any), and a host of other issues that distinguish TOG claims from those involving AFFF. The Science Day held for AFFF does not inform the questions of alleged exposure or adverse effects to the plaintiffs claiming harm caused by turnout gear.

3.    Discovery against the TOG defendants is also premature because the existing plaintiff fact sheets are not relevant to Turnout Gear.  The plaintiff fact sheets focus on AFFF and contain little to no information pertaining to the TOG claims.  There is no information provided from which Stedfast can determine why Stedfast is named as a defendant or Stedfast's role in any plaintiff's alleged injuries from turnout gear.  Under the procedures and protocols applicable in this MDL, broad and burdensome discovery requests should not be served until after the plaintiffs have completed fact sheets that provide useful foundational information about the TOG claims, especially given the fact that defendants are precluded from serving their own discovery requests on the TOG plaintiffs at this time.  The TOG defendants are prepared to meet and confer with plaintiffs' counsel to discuss an appropriate fact sheet for plaintiffs alleging TOG claims.

4.    The Document Requests are premature because Stedfast has not yet had the opportunity to demonstrate the speculative nature of the claims asserted against it, which should be dismissed by the MDL court on that basis.  Before being forced to engage in broad, expansive, and burdensome discovery, Stedfast should be given an opportunity, if it opts to do so, to seek the Rule 12 dismissal of the claims against it.

5.    Case Management Order No. 2 (March 20, 2019) required the Plaintiffs' Executive Committee ("PEC") to "[d]evelop and propose to the Court schedules for the commencement, execution, and completion of all discovery on behalf of all plaintiffs."  To Stedfast's knowledge, the PEC has not satisfied that requirement as to any TOG claim or with respect to TOG Defendants; indeed, no TOG claim had been filed at the time CMO 2 was entered and discovery commenced

2

against the AFFF defendants.  In short, there is no indication the Court contemplated, much less authorized, broad, and one-sided general discovery against the TOG Defendants.

6.      Stedfast objects to the Document Requests to the extent that they seek documents protected from disclosure by the attorney-client privilege, work-product immunity, joint-defense privilege, common interest privilege, or any other privilege or protection afforded by applicable law.  In the event of an inadvertent disclosure of privileged/protected documents, the privilege/protection shall not be waived, and such documents will be subject to claw-back and other remedies, consistent with Federal Rule of Civil Procedure 26(b)(5)(B) and Federal Rule of Evidence 502(b).

7.      Stedfast objects to the Document Requests to the extent that they seek documents that constitute, contain, or otherwise disclose trade secrets or other proprietary or confidential information.  In the event Stedfast is required to produce such information in the MDL, Stedfast will only do so subject to an appropriate protective order. Stedfast further objects to producing any document that is subject to a confidentiality obligation owed by Stedfast to a third party.

8.      The Document Requests are objectionable on the grounds that they are overly broad, unduly burdensome, and oppressive, particularly but not exclusively to the extent they demand the production of "all documents," "all communications," and similar sweeping sets of documents without limitation; seek a range of documents neither relevant to any claim or defense in the TOG cases; and impose obligations on Stedfast that are disproportionate to the needs of genuine TOG claim discovery.

9.      Several requests are without any temporal limitation, and the general time frame specified in the Document Requests (1970) (Instruction 13) is so early in time as to be overbroad, unduly burdensome, and virtually meaningless.

10.     Stedfast objects that several requests are without any geographic limitation and therefore seek information that is not relevant to any claim or defense in this litigation.

11.    Stedfast objects that several requests call for information about products not used by or associated with any plaintiff in this litigation or sold to any defendant in this litigation and, therefore, seek information that is not relevant to any claim or defense in this litigation.

12.    Stedfast objects to any Request to the extent that it improperly assumes facts, specifically, that TURNOUTS or TURNOUT INTERMEDIATE PRODUCTS are associated with adverse HUMAN HEALTH or TOXICOLOGICAL EFFECTS, and expressly rejects any such suggestion.

**OBJECTIONS TO PLAINTIFFS' DEFINITIONS AND INSTRUCTIONS**

Stedfast objects as specified below to the Definitions and Instructions in the Document Requests.  Documents may be withheld based on these objections.

1.    Stedfast objects to each definition and each instruction to the extent that it purports to impose on Stedfast obligations beyond those set out in the Federal Rules of Civil Procedure, and therefore causes the requests to be overly broad, unduly burdensome, or requiring the production of documents or disclosure of information that is not reasonably accessible.  By way of example only, Stedfast objects to Instruction No. 7, which purports to require the creation of a log of "destroyed, lost, discarded," etc. documents, and Instruction No. 11, which purports to require Defendants to produce documents that are not "relevant or responsive to the [] Requests."

2.    Stedfast objects to each definition that is unintelligible, vague, or ambiguous, or would so expand the scope of a request as to impose an unreasonable burden or to seek information not relevant to the claims or defenses relative to the TOG personal injury claims.  Examples of such problematic definitions include "Communications," "Internal Communications," "Plaintiffs," "Relating To" or "Concerning," and "You, Your," and "Defendant."

3.    Several definitions are contradictory and render individual Document Requests unintelligible.  For example, the terms "Sale," "Sell," and "Sold" are limited to the sale of "Turnouts," but then those terms are used in requests that do not pertain to Turnouts.  The definitions of "Manufacturing Defendants," "PFAS," "PFOA," "PFOS," "PFAS-Containing

Products," "Turnout Intermediate Product," "Turnout Defendant," and "Turnouts" are vague and ambiguous.

4.     Stedfast will construe the terms used in the Document Requests based on their ordinary meaning and based on the facts that are relevant to the TOG claims and defenses. Specifically:

      a.  Stedfast will construe the term "ADVERSE EFFECTS" to refer to harmful or negative consequences that are presently known to SMI, if any.

      b.  Stedfast will construe the term "PFAS-CONTAINING PRODUCTS" to refer to products presently known to Stedfast to be made with material that is a PFAS and/or contain a residual of one or more PFAS, as that term is defined below.

      c.  Stedfast will construe the term "PFAS" to refer to the per- and polyfluoroalkyl substances that are or may be used as a component in certain products produced by Stedfast and sold in and for use in the United States.  By construing this definition to correspond to multiple PFAS with different properties, Stedfast does not concede that any specific PFAS is present in TOG used by or associated with any plaintiff, or that the same specific PFAS chemicals are present in all TOG or any component thereof.

      d.  Stedfast will construe the term "PFOA" to refer to the chemical compound perfluorooctanoic acid.

      e.  Stedfast will construe the term "PFOS" to refer to the chemical compound perfluorooctanesulfonic acid.

5.     Stedfast objects to each definition and each instruction that purports to require the production of documents or information not within Stedfast's possession, custody, or control or from persons or entities not within Stedfast's control; calls for a legal conclusion regarding the relationship between certain persons and/or entities; or may encompass relationships of which Stedfast is not aware.

6.      Stedfast objects to each definition and each instruction, including but not limited to Instructions Nos. 4 and 5, that is inconsistent with the protocol set forth in the MDL court's ESI Order.

7.      Any eventual production by Stedfast will be on a rolling basis, subject to Stedfast's obligations to supplement, to include responsive documents identified and produced only after a reasonable search and production effort (and subject to all applicable objections). Any such production will be made pursuant to the protective order in the MDL and Federal Rule of Civil Procedure 34.

## REQUESTS FOR PRODUCTION

### REQUEST NO.1:

All DOCUMENTS CONCERNING warnings YOU provided about any HUMAN HEALTH EFFECTS of any TURNOUT INTERMEDIATE PRODUCT.

### RESPONSE:

Stedfast objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

### REQUEST NO.2:

All DOCUMENTS CONCERNING warnings YOU provided about any TOXICOLOGICAL EFFECTS of any TURNOUT INTERMEDIATE PRODUCT.

### RESPONSE:

Stedfast objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

### REQUEST NO.3:

All DOCUMENTS CONCERNING warnings YOU provided about any ADVERSE EFFECTS of any TURNOUT INTERMEDIATE PRODUCT, other than the HUMAN HEALTH and TOXICOLOGICAL EFFECTS discussed above.

**RESPONSE:**

Stedfast objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference. Stedfast objects further that the phrase "ADVERSE EFFECTS of any TURNOUT INTERMEDIATE PRODUCT, other than the HUMAN HEALTH and TOXICOLOGICAL EFFECTS discussed above," is vague and unintelligible.

**REQUEST NO.4:**

All DOCUMENTS CONCERNING instructions YOU provided RELATING TO the HANDLING of any TURNOUT INTERMEDIATE PRODUCT YOU SOLD.

**RESPONSE:**

Stedfast objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

**REQUEST NO.5:**

All DOCUMENTS YOU used and/or relied on in preparing instructions YOU provided CONCERNING the HANDLING of any TURNOUT INTERMEDIATE PRODUCT YOU SOLD.

**RESPONSE:**

Stedfast objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

**REQUEST NO.6:**

All DOCUMENTS CONCERNING any contract and/or agreement between YOU and any MANUFACTURING DEFENDANT(S) for the SALE of any TURNOUT INTERMEDIATE PRODUCT.

**RESPONSE:**

Stedfast objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

**REQUEST NO.7:**

All COMMUNICATIONS between YOU and any MANUFACTURING DEFENDANT(S) CONCERNING PFAS and/or the presence of PFAS in TURNOUTS or any TURNOUT INTERMEDIATE PRODUCT.

**RESPONSE:**

Stedfast objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference. Stedfast also objects that the use of the undefined term "presence," as used in this Request, is vague and ambiguous.

**REQUEST NO.8:**

All DOCUMENTS identifying the TURNOUT INTERMEDIATE PRODUCTS YOU SOLD to any TURNOUT DEFENDANT.

**RESPONSE:**

Stedfast objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference. Stedfast also objects that the use of the undefined term "identifying," as used in this Request, is vague and ambiguous.

**REQUEST NO.9:**

All DOCUMENTS CONCERNING YOUR process for manufacturing YOUR TURNOUT INTERMEDIATE PRODUCTS.

**RESPONSE:**

Stedfast objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference. Stedfast also objects that this Request uses the undefined and vague term "process."

**REQUEST NO.10:**

All DOCUMENTS CONCERNING YOUR formulation and/or design of YOUR TURNOUT INTERMEDIATE PRODUCTS.

**RESPONSE:**

Stedfast objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference. Stedfast also objects that this Request uses the undefined and vague phrase "formulation and/or design."

**REQUEST NO.11:**

All DOCUMENTS CONCERNING any formulation and/or design of TURNOUTS that did not contain PFAS or PFAS-CONTAINING PRODUCTS.

**RESPONSE:**

Stedfast objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference. Stedfast also objects that this Request uses the undefined and vague phrase "formulation and/or design." Stedfast further objects to the extent this Request calls for the production of documents about or referring to TURNOUTS which are not manufactured, distributed, or sold by Stedfast.

**REQUEST NO.12:**

All COMMUNICATIONS between YOU and any MANUFACTURING DEFENDANT(S) regarding any formulation and/or design of TURNOUTS that did not contain PFAS or PFAS-CONTAINING PRODUCTS.

**RESPONSE:**

Stedfast objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference. Stedfast also objects that this Request uses the undefined and vague phrase "formulation and/or design."

Stedfast further objects to the extent this Request calls for the production of documents about or referring to TURNOUTS not manufactured, distributed, or sold by Stedfast.

**REQUEST NO.13:**

All DOCUMENTS identifying the SKUs for TURNOUTS containing PFAS or PFAS-CONTAINING PRODUCTS YOU SOLD.

**RESPONSE:**

Stedfast objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference. Stedfast also objects that this Request uses the undefined and vague term "SKUs." Stedfast further objects to the extent this Request calls for the production of documents about or referring to TURNOUTS, which are not manufactured, distributed, or sold by Stedfast.

**REQUEST NO.14:**

All DOCUMENTS CONCERNING the number and dollar value of sales of each TURNOUT INTERMEDIATE PRODUCT SKU YOU SOLD to each TURNOUT DEFENDANT.

**RESPONSE:**

Stedfast objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

**REQUEST NO.15:**

All purchase agreements, purchase contracts, invoices, supply contracts, receipts, or other documentation evidencing YOUR sale, manufacture, and/or distribution of YOUR TURNOUT INTERMEDIATE PRODUCTS.

**RESPONSE:**

Stedfast objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

**REQUEST NO.16:**

All DOCUMENTS CONCERNING any contracts and/or agreements that YOU had with suppliers, wholesalers, distributors, or any other entity that sold YOUR TURNOUT INTERMEDIATE PRODUCTS.

**RESPONSE:**

Stedfast objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

**REQUEST NO.17:**

All purchase orders, invoices, contracts, and/or other related materials that provide information about the sale, manufacture, and/or distribution of YOUR TURNOUT INTERMEDIATE PRODUCTS, including but not limited to the dates when YOUR TURNOUT INTERMEDIATE PRODUCTS were sold, the quantity YOU included in each shipment, and the amount (in dollars) YOU were paid for each shipment.

**RESPONSE:**

Stedfast objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

**REQUEST NO.18:**

All DOCUMENTS RELATING TO the procedures and protocols for maintaining sales, production, volume, and invoicing records for YOUR TURNOUT INTERMEDIATE PRODUCTS.

**RESPONSE:**

Stedfast objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference. Stedfast also objects that this Request uses the undefined and vague terms "procedures," and "protocols."

**REQUEST NO.19:**

All DOCUMENTS reflecting any assessment and/or analysis of YOUR share of the market for TURNOUT INTERMEDIATE PRODUCTS from 1970 to present.

**RESPONSE:**

Stedfast objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference. Stedfast also objects that this Request uses the undefined and vague terms "assessment," "analysis," and "market."

**REQUEST NO.20:**

All studies and/or reports concerning any HUMAN HEALTH EFFECTS posed by PFAS or PFAS-CONTAINING PRODUCTS in TURNOUTS or any TURNOUT INTERMEDIATE PRODUCT.

**RESPONSE:**

Stedfast objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

**REQUEST NO.21:**

All studies and/or reports concerning any TOXICOLOGICAL EFFECTS posed by PFAS or PFAS-CONTAINING PRODUCTS in TURNOUTS or any TURNOUT INTERMEDIATE PRODUCT.

**RESPONSE:**

Stedfast objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

**REQUEST NO.22:**

All COMMUNICATIONS between YOU and other PERSONS CONCERNING any HUMAN HEALTH EFFECTS of PFAS or PFAS-CONTAINING PRODUCTS in TURNOUTS or any TURNOUT INTERMEDIATE PRODUCT.

**RESPONSE:**

Stedfast objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

**REQUEST NO.23:**

All COMMUNICATIONS between YOU and other PERSONS CONCERNING any TOXICOLOGICAL EFFECTS of PFAS or PFAS-CONTAINING PRODUCTS in TURNOUTS or any TURNOUT INTERMEDIATE PRODUCT.

**RESPONSE:**

Stedfast objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

**REQUEST NO.24:**

All historic and current Material Safety Data Sheets ("MSDS") for any TURNOUT INTERMEDIATE PRODUCT YOU SOLD.

**RESPONSE:**

Stedfast objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

**REQUEST NO.25:**

All DOCUMENTS, including but not limited to catalogues, statements circulars, manuals, brochures, reports, and advertisements, which mention, describe, or otherwise refer to the virtues, qualities, characteristics, capabilities, and/or capacities of any TURNOUT INTERMEDIATE PRODUCT YOU SOLD.

**RESPONSE:**

Stedfast objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

**REQUEST NO.26:**

All COMMUNICATIONS between YOU and any trade or industry organization CONCERNING HUMAN HEALTH EFFECTS of TURNOUTS or any TURNOUT INTERMEDIATE PRODUCT containing PFAS or PFAS-CONTAINING PRODUCTS.

**RESPONSE:**

Stedfast objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

**REQUEST NO.27:**

All COMMUNICATIONS between YOU and any trade or industry organization CONCERNING TOXICOLOGICAL EFFECTS of TURNOUTS or any TURNOUT INTERMEDIATE PRODUCT containing PFAS or PFAS-CONTAINING PRODUCTS.

**RESPONSE:**

Stedfast objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

**REQUEST NO.28:**

All COMMUNICATIONS between YOU and any trade or industry organization CONCERNING ADVERSE EFFECTS of TURNOUTS or any TURNOUT INTERMEDIATE PRODUCT containing PFAS or PFAS-CONTAINING PRODUCTS, other than the HUMAN HEALTH and TOXICOLOGICAL EFFECTS addressed above.

**RESPONSE:**

Stedfast objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

**REQUEST NO.29:**

All COMMUNICATIONS between YOU and any trade or industry organization CONCERNING the safety of TURNOUTS or any TURNOUT INTERMEDIATE PRODUCT containing PFAS or PFAS-CONTAINING PRODUCTS.

**RESPONSE:**

Stedfast objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

**REQUEST NO.30:**

All DOCUMENTS CONCERNING statements issued by YOU or on YOUR behalf regarding the HUMAN HEALTH EFFECTS associated with exposure to PFAS or PFAS-CONTAINING PRODUCTS.

14

**RESPONSE:**

Stedfast objects to this request based on General Objections 1-12 and Objections to

Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

**REQUEST NO.31:**

All DOCUMENTS CONCERNING statements issued by YOU or on your behalf regarding the TOXICOLOGICAL EFFECTS associated with exposure to PFAS or PFAS-CONTAINING PRODUCTS.

**RESPONSE:**

Stedfast objects to this request based on General Objections 1-12 and Objections to

Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

**REQUEST NO.32:**

All COMMUNICATIONS between YOU and any public relations and/or media consulting firms or agencies regarding any TOXICOLOGICAL EFFECTS of PFAS or PFAS-CONTAINING PRODUCTS.

**RESPONSE:**

Stedfast objects to this request based on General Objections 1-12 and Objections to

Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

**REQUEST NO.33:**

All COMMUNICATIONS between you and any public relations and/or media consulting firms or agencies CONCERNING any HUMAN HEALTH EFFECTS of PFAS or PFAS-CONTAINING PRODUCTS

**RESPONSE:**

Stedfast objects to this request based on General Objections 1-12 and Objections to

Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

**REQUEST NO.34:**

All DOCUMENTS regarding the biopersistence and/or the bioaccumulation of PFAS, PFOA, and/or PFOS.

**RESPONSE:**

Stedfast objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference. Stedfast also objects that this Request calls for information that is neither relevant nor proportional to the needs of this litigation to the extent it seeks information about PFAS, PFOA, and/or PFOS that are not components in TURNOUTS or TURNOUT INTERMEDIATE PRODUCT(S) used by or associated with any plaintiff in this litigation or sold to any defendant in this litigation.

**REQUEST NO.35:**

All DOCUMENTS regarding studies and/or reports CONCERNING the amount of PFAS or PFAS-CONTAINING PRODUCTS in any TURNOUT INTERMEDIATE PRODUCT YOU SOLD.

**RESPONSE:**

Stedfast objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference. Stedfast further objects to the phrase "amount of PFAS or PFAS-CONTAINING PRODUCTS" as vague and ambiguous.

**REQUEST NO.36:**

All COMMUNICATIONS regarding studies and/or reports CONCERNING the amount of PFAS or PFAS-CONTAINING PRODUCTS in any TURNOUT INTERMEDIATE PRODUCT YOU SOLD.

**RESPONSE:**

Stedfast objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.  Stedfast further objects to the phrase "amount of PFAS or PFAS-CONTAINING PRODUCTS" as vague and ambiguous.

**REQUEST NO.37:**

All DOCUMENTS regarding studies and/or reports of TOXICOLOGICAL EFFECTS of PFAS, PFOA and/or PFOS conducted by YOU or on YOUR behalf.

**RESPONSE:**

Stedfast objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

**REQUEST NO.38:**

All DOCUMENTS and COMMUNICATIONS between YOU and any MANUFACTURING DEFENDANT(S) CONCERNING any TOXICOLOGICAL EFFECTS of PFAS or PFAS-CONTAINING PRODUCTS in TURNOUTS.

**RESPONSE:**

Stedfast objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference. Stedfast further objects that this request is duplicative of Request #7.

**REQUEST NO.39:**

All DOCUMENTS and COMMUNICATIONS between YOU and any MANUFACTURING DEFENDANT(S) CONCERNING any HUMAN HEALTH EFFECTS of PFAS or PFAS-CONTAINING PRODUCTS in TURNOUTS.

**RESPONSE:**

Stedfast objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference. Stedfast further objects that this request is duplicative of Request No. #7.

**REQUEST NO.40:**

All DOCUMENTS and COMMUNICATIONS between YOU and any MANUFACTURING DEFENDANT(S) CONCERNING any adverse effects of PFAS or PFAS-CONTAINING PRODUCTS in TURNOUTS, other than the TOXICOLOGICAL and HUMAN HEALTH EFFECTS discussed above.

**RESPONSE:**

Stedfast objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference. Stedfast further objects that this request is duplicative of Request No. #7.

**REQUEST NO.41:**

All DOCUMENTS regarding studies or research conducted by YOU or on YOUR behalf CONCERNING the use of non-PFAS materials in the TURNOUTS YOU SOLD.

**RESPONSE:**

Stedfast objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference. Stedfast also objects that the use of the undefined term "non-PFAS materials," as used in this Request, is vague and ambiguous.

**REQUEST NO.42:**

All DOCUMENTS CONCERNING the effectiveness of non-PFAS materials in any TURNOUT INTERMEDIATE PRODUCT YOU SOLD.

**RESPONSE:**

Stedfast objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference. Stedfast also objects that the use of the undefined term "non-PFAS materials," as used in this Request, is vague and ambiguous.

**REQUEST NO.43:**

All COMMUNICATIONS CONCERNING the use of non-PFAS materials in any TURNOUT INTERMEDIATE PRODUCT YOU SOLD.

**RESPONSE:**

Stedfast objects to this request based on General Objections 1-12 and Objections to

Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

**REQUEST NO.44:**

All DOCUMENTS CONCERNING the development and adoption of warning DOCUMENTS, instructions, and/or labels on any TURNOUT INTERMEDIATE PRODUCT YOU SOLD.

**RESPONSE:**

Stedfast objects to this request based on General Objections 1-12 and Objections to

Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

**REQUEST NO.45:**

All DOCUMENTS RELATING TO any insurance coverage or request for any insurance coverage in connection with any loss, claim, damage or request relating or referring to this MDL or any other action arising from the use of TURNOUT INTERMEDIATE PRODUCTS containing PFAS or PFAS-CONTAINING PRODUCTS YOU SOLD.

**RESPONSE:**

Stedfast objects to this request based on General Objections 1-12 and Objections to

Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

**REQUEST NO.46:**

All DOCUMENTS RELATING TO any meetings or correspondence with, or submissions to, the National Fire Protection Association concerning TURNOUTS or any TURNOUT INTERMEDIATE PRODUCT.

**RESPONSE:**

Stedfast objects to this request based on General Objections 1-12 and Objections to

Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

**REQUEST NO.47:**

All COMMUNICATIONS between YOU and the National Fire Protection Association CONCERNING TURNOUTS or any TURNOUT INTERMEDIATE PRODUCT.

**RESPONSE:**

Stedfast objects to this request based on General Objections 1-12 and Objections to

Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

**REQUEST NO.48:**

All COMMUNICATIONS between YOU and any MANUFACTURING DEFENDANT(S) CONCERNING the National Fire Protection Association.

**RESPONSE:**

Stedfast objects to this request based on General Objections 1-12 and Objections to

Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

**REQUEST NO.49:**

All DOCUMENTS CONCERNING any financial contributions or payments from YOU to the National Fire Protection Association.

**RESPONSE:**

Stedfast objects to this request based on General Objections 1-12 and Objections to

Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

**REQUEST NO.50:**

All DOCUMENTS RELATING TO any meetings or correspondence with, or submissions to, the International Association of Fire Fighters concerning TURNOUTS or any TURNOUT INTERMEDIATE PRODUCT.

**RESPONSE:**

Stedfast objects to this request based on General Objections 1-12 and Objections to

Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

**REQUEST NO.51:**

All COMMUNICATIONS between YOU and the International Association of Fire Fighters concerning TURNOUTS or any TURNOUT INTERMEDIATE PRODUCT.

**RESPONSE:**

Stedfast objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

**REQUEST NO.52:**

All COMMUNICATIONS between YOU and any MANUFACTURING DEFENDANT(S) CONCERNING the International Association of Fire Fighters.

**RESPONSE:**

Stedfast objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

**REQUEST NO.53:**

All DOCUMENTS CONCERNING any financial contributions or payments from YOU to the International Association of Fire Fighters.

**RESPONSE:**

Stedfast objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

**REQUEST NO.54:**

All DOCUMENTS CONCERNING any disclosure that any TURNOUT INTERMEDIATE PRODUCT YOUSOLD [SIC] contained PFAS or PFAS-CONTAINING PRODUCTS.

**RESPONSE:**

Stedfast objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference. Stedfast also objects that this Request uses the undefined and vague term "disclosure."

**REQUEST NO.55:**

All DOCUMENTS RELATING TO any meetings or correspondence with, or submission to, any governmental body, trade association, industry group, or lobbying group regarding PFAS or PFAS-CONTAINING PRODUCTS.

**RESPONSE:**

Stedfast objects to this request based on General Objections 1-12 and Objections to

Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

Respectfully submitted this the 8th of July 2022.

s/George V. Hanna, IV
George V. Hanna, IV, Fed, ID # 7419
Howser, Newman & Besley, LLC
1508 Washington Street
P.O. Box 12009
Columbia, South Carolina 29211
 (803) 758-6000
ghanna@hnblaw.com
Attorneys for Defendant Stedfast USA, Inc.

## CERTIFICATE OF SERVICE

I certify that on July 8, 2022, a true and correct copy of the foregoing was served via electronic mail upon the following:

Michael A. London
Douglas and London PC
59 Maiden Lane
6th Floor
New York, NY 10038
mlondon@douglasandlondon.com
Counsel for Plaintiffs

Scott Summy
Baron & Budd, P.C.
3102 Oak Lawn Avenue
Suite 1100
ssummy@baronbudd.com
Plaintiffs' Co-Lead Counsel

Paul J. Napoli
Napoli Shkolnik PLLC
1301 Avenue Of The Americas
10th Floor
New York, NY 10019
pnapoli@napolilaw.com
Plaintiffs' Co-Lead Counsel

Elizabeth C. Pritzker
Pritzker Levine LLP
Suite 450
Emeryville, CA 94608
ecp@pritzkerlevine.com
Plaintiffs' Executive Committee Member

Joseph G. Petrosinelli
Williams & Connolly LLP
725 Twelfth Street, N.W.
Washington, DC 20005
jpetrosinelli@wc.com
Co-Lead Counsel for Defendants

Michael A. Olsen
Mayer Brown LLP
71 South Wacker Drive
Chicago, IL 60606
molsen@mayerbrown.com
Co-Lead Counsel for Defendants

Brian Duffy
Duffy & Young LLC
96 Broad Street
Charleston, SC 29401
bduffy@duffyandyoung.com
Co-Liaison Counsel for Defendants

David E. Dukes
Nelson Mullins Riley & Scarborough LLP
1320 Main Street, 17th Floor
Columbia, SC 29201
David.dukes@nelsonmullins.com
Co-Liaison Counsel for Defendants

/s/ *George V. Hanna, IV*
George V. Hanna, IV

**UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | |
|---|---|
| IN RE: AQUEOUS FILM-FORMING FOAMS PRODUCTS LIABILITY LITIGATION | MDL No. 2:18-mn-2873-RMG |

## DEFENDANT STEDFAST USA, INC.'S OBJECTIONS TO PLAINTIFFS' FIRST SET OF INTERROGATORIES

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, **Defendant Stedfast USA, Inc.** ("Defendant" or "Stedfast") serves the below objections to Plaintiffs' First Set of Interrogatories ("Document Requests").

## GENERAL OBJECTIONS

1.      In this Aqueous Film-Forming Foams ("AFFF") Products Liability Litigation ("MDL"), the Interrogatories are objectionable for a number of reasons, including that they are premature. While the Interrogatories purport to relate to "All Cases," it is clear that they pertain only to the small number of cases involving allegations that plaintiffs were injured by both AFFF and firefighter turnout gear ("Turnout Gear" or "TOG"). These Turnout Gear claims, which are alleged against Stedfast and around thirteen other defendants ("Turnout Gear Defendants" or "TOG Defendants"), do not predicate liability on the use of or exposure to AFFF. Accordingly, discovery, and in particular, broad sweeping discovery, into the distinctly unique TOG personal injury claims is not appropriate at this time, given the current status of the matters pending in the MDL. Stedfast makes these objections subject to and without waiver of its position that discovery concerning alleged injuries from turnout gear is premature given the procedural posture of the MDL and expressly reserves its right to assert additional and/or more specific objections to these and any additional or related discovery at the appropriate time.

2.      The Court has conducted a "Science Day" with respect to AFFF only. The scientific issues underlying the TOG claims, however, are fundamentally different from those

1

underlying the AFFF claims. Turnout Gear is not one product or one component, and it is not always used under the same conditions as AFFF.  Scientific questions underlying TOG personal injury claims involve different chemicals with different properties and toxicological profiles; different possible exposure pathways (if any); different theoretical exposure concentrations (if any); and a host of other issues that distinguish TOG claims from those involving AFFF.  The Science Day held for AFFF does not inform the questions of alleged exposure or adverse effects to plaintiffs claiming harm caused by turnout gear.

3.      Discovery against the TOG defendants is also premature because the existing plaintiff fact sheets are not relevant to Turnout Gear.  The plaintiff fact sheets focus on AFFF and contain little to no information pertaining to the TOG claims.  There is no information provided from which Stedfast can determine why Stedfast is named as a defendant or Stedfast's role in any plaintiff's alleged injuries from turnout gear.  Under the procedures and protocols applicable in this MDL, broad and burdensome discovery requests should not be served until after the plaintiffs have completed fact sheets that provide useful foundational information about the TOG claims, especially given the fact that defendants are precluded from serving their own discovery requests on the TOG plaintiffs at this time.  The TOG defendants are prepared to meet and confer with plaintiffs' counsel to discuss an appropriate fact sheet for plaintiffs alleging TOG claims

4.      The Interrogatories are premature because Stedfast has not yet had the opportunity to demonstrate the speculative nature of the claims asserted against it, which should be dismissed by the MDL court on that basis.  Before being forced to engage in broad, expansive and burdensome discovery, Stedfast should be given an opportunity, if it opts to do so, to seek the Rule 12 dismissal of the claims against it.

5.      Case Management Order No. 2 (March 20, 2019) required the Plaintiffs' Executive Committee ("PEC") to "[d]evelop and propose to the Court schedules for the commencement, execution, and completion of all discovery on behalf of all plaintiffs."  To Stedfast's knowledge, the PEC has not satisfied that requirement as to any TOG claim or with respect to TOG Defendants; indeed, no TOG claim had been filed at the time CMO No. 2 was entered and discovery

commenced against the AFFF defendants.  In short, there is no indication the Court contemplated, much less authorized, broad, and one-sided general discovery against the TOG Defendants.

6.       Stedfast objects to the Interrogatories to the extent that they seek documents protected from disclosure by the attorney-client privilege, work-product immunity, joint-defense privilege, common interest privilege, or any other privilege or protection afforded by applicable law.  In the event of an inadvertent disclosure of privileged/protected information or documents, the privilege/protection shall not be waived, and such information and documents will be subject to claw-back and other remedies, consistent with Federal Rule of Civil Procedure 26(b)(5)(B) and Federal Rule of Evidence 502(b).

7.       Stedfast objects to the Interrogatories to the extent that they seek the disclosure of information that constitutes, contains, or otherwise discloses trade secrets or other proprietary or confidential information.  In the event Stedfast is required to produce such information in the MDL, Stedfast will only do so subject to an appropriate protective order.  Stedfast further objects to disclosing any information that is subject to a confidentiality obligation owed by Stedfast to a third party.

8.       Stedfast objects to each and every Interrogatory that seeks the address, telephone numbers, or other personal information of individuals.  In many or most cases, Stedfast does not possess such information, but where it may, Stedfast objects to any such Interrogatory as unduly invasive and unnecessarily violative of those individuals' privacy rights as well as of Stedfast's duty to safeguard the personal information of Stedfast's employees or former employees.  Any current or former Stedfast employee should be contacted only through counsel of record in the Action.

9.       The Interrogatories are objectionable on the grounds that they are overly broad, unduly burdensome, and oppressive, particularly but not exclusively to the extent they demand that Stedfast "identify" or "describe" "all" documents, communications , persons or things listed in the Interrogatory or seek similar sweeping categories of information; seek a range of information and

3

documents neither relevant to any claim or defense in the TOG cases; and impose obligations on Stedfast that are disproportionate to the needs of genuine TOG claim discovery.

10.     Several Interrogatories are without any temporal limitation, and the general time period specified in the Interrogatories (1970) (Instruction 8) is so early in time as to be overbroad, unduly burdensome, and virtually meaningless.

11.     Stedfast objects that several Interrogatories are without any geographic limitation and therefore seek information that is not relevant to any claim or defense in this litigation.

12.     Stedfast objects that several Interrogatories call for information about products not used by or associated with any plaintiff in this litigation or sold to any defendant in this litigation and, therefore, seek information that is not relevant to any claim or defense in this litigation.

13.     Stedfast objects to the extent any Interrogatory improperly assumes facts, specifically, that TURNOUTS, TURNOUT INTERMEDIATE PRODUCTS of PFAS-CONTAINING PRODUCTS are associated with adverse HUMAN HEALTH or TOXICOLOGICAL EFFECTS, and expressly rejects any such suggestion.

14.     Stedfast expressly reserves all rights, including, in particular but not exclusively, the right to respond to any Interrogatory, as appropriate, by "(1) specifying the records that must be reviewed in sufficient detail to enable [Plaintiffs] to locate and identify them as readily as the responding party could; and (2) giving [Plaintiffs] a reasonable opportunity to examine and audit the records and to make copies, compilations, abstracts, or summaries."  Federal Rule of Civil Procedure 33(d).

## OBJECTIONS TO PLAINTIFFS' DEFINITIONS AND INSTRUCTIONS

Stedfast objects as specified below to the Definitions and Instructions in the Interrogatories. Information may be withheld based on these objections.

1.      Stedfast objects to each definition and each instruction to the extent that it purports to impose on Stedfast obligations beyond those set out in the Federal Rules of Civil Procedure, and therefore causes the Interrogatories to be overly broad, unduly burdensome, or requiring the disclosure of information that is not reasonably accessible.  By way of example only, Stedfast objects to Instruction Nos. 4 and 7, which purport to impose privilege log obligations beyond those required by Federal Rule of Civil Procedure 26(b)(5)(A).

2.      Stedfast objects to each instruction and each definition that is unintelligible, vague, or ambiguous, or would so expand the scope of a request as to impose an unreasonable burden or to seek information not relevant to the claims or defenses relative to the TOG personal injury claims.  Examples of such problematic instructions and definitions include Instruction Nos. 5 ("describe") and 6 ("identify") and the following definitions: "Communications," "Internal Communications," "Plaintiffs," "Relating To" or "Concerning," and "You, "Your," and "Defendant."

3.      A number of the definitions are contradictory and render individual Interrogatories unintelligible.  For example, the terms "Sale," "Sell," and "Sold" are limited to the sale of "AFFF," but then those terms are used in Interrogatories that do not pertain to AFFF.  The definitions of "Manufacturing Defendants," "PFAS," PFOA," PFOS,"   "PFAS-Containing Products," and "Turnouts" are vague and ambiguous.

4.      Stedfast will construe the terms used in the Interrogatories based on their ordinary meaning and based on the facts that are relevant to the TOG claims and defenses.  Specifically:

        a.   Stedfast will construe the term "ADVERSE EFFECTS" to refer to harmful or negative consequences that are presently known to Stedfast, if any.

b.  Stedfast will construe the term "PFAS-CONTAINING PRODUCTS" to refer to products presently known to Stedfast to be made with material that is a PFAS and/or contain a residual of one or more PFAS, as that term is defined below.

c.  Stedfast will construe the term "PFAS" to refer to the per- and polyfluoroalkyl substances that are or may be used as a component in certain products produced by Stedfast and sold in and for use in the United States.  By construing this definition to correspond to multiple PFAS with different properties, Stedfast does not concede that any specific PFAS is present in TOG used by or associated with any plaintiff, or that the same specific PFAS chemicals are present in all TOG or any component thereof.

d.  Stedfast will construe the term "PFOA" to refer to the chemical compound perfluorooctanoic acid.

e.  Stedfast will construe the term "PFOS" to refer to the chemical compound perfluorooctanesulfonic acid.

f.  Stedfast objects that the term "TURNOUT DEFENDANTS" is not defined and is therefore vague and ambiguous.  Stedfast will construe the term "TURNOUT DEFENDANTS" to mean any current defendant in this MDL that currently or formerly produced or manufactured TURNOUTS.

g.  Stedfast objects that the term "TURNOUT INTERMEDIATE PRODUCTS" is not defined and is therefore vague and ambiguous.  Stedfast will construe the term "TURNOUT INTERMEDIATE PRODUCTS" to refer to products containing PFAS or PFAS-CONTAINING PRODUCTS.

h.  SMI objects that the term "TURNOUT INTERMEDIATE PRODUCTS" is not defined and is therefore vague and ambiguous.  SMI will construe the term "TURNOUT INTERMEDIATE PRODUCTS" to refer to products containing PFAS or PFAS-CONTAINING PRODUCTS that Stedfast manufactured and

6

sold to any defendant in MDL NO. 2:18-mn-2873-RMG that currently or formerly produced or manufactured TURNOUTS.

5.      Stedfast objects to each definition and each instruction that purports to require the disclosure of information not within Stedfast's possession, custody, or control or from persons or entities not within Stedfast's control; calls for a legal conclusion regarding the relationship between certain persons and/or entities; or may encompass relationships of which Stedfast is not aware.

6.      Any eventual disclosure by Stedfast will be on a rolling basis, subject to Stedfast's obligations to supplement, to include responsive information identified and disclosed only after a reasonable search and disclosure effort (and subject to all applicable objections). Any such response will be made pursuant to the protective order in the MDL and Federal Rule of Civil Procedure 33.

## **INTERROGATORIES**

### **INTERROGATORY NO. 1:**

Identify each PERSON who has supplied information used in answering these interrogatories and specify the interrogatories for which each PERSON is responsible.

### **ANSWER:**

Stedfast objects to this interrogatory based on General Objections 1-14 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.

**INTERROGATORY NO. 2:**

Identify all TURNOUT INTERMEDIATE PRODUCT(S) that YOU SOLD to any MANUFACTURING DEFENDANT(S), stating for each: the trade name under which it was SOLD, the number and dollar value of SALES to each MANUFACTURING DEFENDANT(S), and the date(s) when it was SOLD.

**ANSWER:**

Stedfast objects to this interrogatory based on General Objections 1-14 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.

**INTERROGATORY NO. 3:**

Identify the specific PFAS or PFAS-CONTAINING PRODUCTS present in each of YOUR TURNOUT INTERMEDIATE PRODUCT(S) for each year that each of YOUR TURNOUT INTERMEDIATE PRODUCTS was SOLD

**ANSWER:**

Stedfast objects to this interrogatory based on General Objections 1-14 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.

**INTERROGATORY NO. 4:**

Identify all TURNOUT DEFENDANTS to which YOU have SOLD TURNOUT INTERMEDIATE PRODUCTS.

**ANSWER:**

Stedfast objects to this interrogatory based on General Objections 1-14 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.

**INTERROGATORY NO. 5:**

Identify all contracts or agreements between YOU and any TURNOUT DEFENDANTS for the sale and/or delivery of TURNOUT INTERMEDIATE PRODUCTS.

**ANSWER:**

Stedfast objects to this interrogatory based on General Objections 1-14 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.

**INTERROGATORY NO. 6:**

For each TURNOUT DEFENDANT identified in response to INTERROGATORY NO. 4 and INTERROGATORY NO. 5, identify the TURNOUT INTERMEDIATE PRODUCT(S) YOU SOLD, licensed, or delivered directly to that TURNOUT DEFENDANT, including the name of the product, the amount, and the dates of sale.

**ANSWER:**

Stedfast objects to this interrogatory based on General Objections 1-14 and Objections to

Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.

**INTERROGATORY NO. 7:**

Identify all studies, analyses, tests, or reports YOU have ever conducted or contracted with another PERSON to conduct on YOUR behalf CONCERNING either the presence or the amount of PFAS or PFAS-CONTAINING PRODUCTS in YOUR TURNOUT INTERMEDIATE PRODUCT(S) or TURNOUTS manufactured using YOUR TURNOUT INTERMEDIATE PRODUCT(S).

**ANSWER:**

Stedfast objects to this interrogatory based on General Objections 1-14 and Objections to

Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.

**INTERROGATORY NO. 8:**

Identify all COMMUNICATIONS YOU have had with any MANUFACTURING DEFENDANT(S) CONCERNING either the presence or the amount of PFAS or PFAS CONTAINING PRODUCTS in YOUR TURNOUT INTERMEDIATE PRODUCT(S).

**ANSWER:**

Stedfast objects to this interrogatory based on General Objections 1-14 and Objections to

Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.

**INTERROGATORY NO. 9:**

Identify all COMMUNICATIONS YOU have had with any trade or industry organization CONCERNING either the presence or the amount of PFAS or PFAS-CONTAINING PRODUCTS in YOUR TURNOUT INTERMEDIATE PRODUCT(S).

9

**ANSWER:**

Stedfast objects to this interrogatory based on General Objections 1-14 and Objections to

Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.

**INTERROGATORY NO. 10:**

Identify all COMMUNICATIONS YOU have had with either the National Fire Protection Association or the International Association of Fire Fighters CONCERNING either the presence or the amount of PFAS or PFAS-CONTAINING PRODUCTS in YOUR TURNOUT INTERMEDIATE PRODUCT(S).

**ANSWER:**

Stedfast objects to this interrogatory based on General Objections 1-14 and Objections to

Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.

**INTERROGATORY NO. 11:**

Identify all information YOU provided to any purchaser or user of YOUR TURNOUT INTERMEDIATE PRODUCT(S) CONCERNING the formulation or design of YOUR TURNOUT INTERMEDIATE PRODUCT(S).

**ANSWER:**

Stedfast objects to this interrogatory based on General Objections 1-14 and Objections to

Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.

**INTERROGATORY NO. 12:**

Identify all warnings or information YOU provided to purchasers or users of YOUR TURNOUT INTERMEDIATE PRODUCTS about any TOXICOLOGICAL EFFECTS of PFAS or PFAS CONTAINING PRODUCTS or PFAS-CONTAINING PRODUCTS.

**ANSWER:**

Stedfast objects to this interrogatory based on General Objections 1-14 and Objections to

Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.

**INTERROGATORY NO. 13:**

Identify all warnings or information YOU provided to purchasers or users of YOUR TURNOUT INTERMEDIATE PRODUCTS about any HUMAN HEALTH EFFECTS of PFAS or PFAS CONTAINING PRODUCTS.

**ANSWER:**

Stedfast objects to this interrogatory based on General Objections 1-14 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.

**INTERROGATORY NO. 14:**

Identify all warnings or information YOU provided to purchasers or users of YOUR TURNOUT INTERMEDIATE PRODUCTS about any ADVERSE EFFECTS of PFAS or PFAS CONTAINING PRODUCTS, other than the TOXICOLOGICAL and HUMAN HEALTH EFECTS discussed above.

**ANSWER:**

Stedfast objects to this interrogatory based on General Objections 1-14 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference. Stedfast also objects that the phrase "ADVERSE EFFECTS of PFAS or PFAS-CONTAINING PRODUCTS, other than the TOXICOLOGICAL and HUMAN HEALTH EFFECTS discussed above," is vague, ambiguous, overly broad and unintelligible.

**INTERROGATORY NO. 15:**

Are YOU aware of or have YOU ever conducted or contracted with another PERSON to conduct any studies, reports, and/or surveys to investigate the TOXICOLOGICAL EFFECTS of any PFAS 10 present in YOUR TURNOUT INTERMEDIATE PRODUCT(S) or TURNOUTS manufactured from YOUR TURNOUT INTERMEDIATE PRODUCT(S)?

**ANSWER:**

Stedfast objects to this interrogatory based on General Objections 1-14 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.

**INTERROGATORY NO. 16:**

If YOUR response to INTERROGATORY NO. 15 is in the affirmative, identify the study, who conducted the study, the results of the study, any PERSONS with knowledge of relevant facts about the study, and all DOCUMENTS RELATING TO or referencing the study.

**ANSWER:**

Stedfast objects to this interrogatory based on General Objections 1-14 and Objections to

Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.

**INTERROGATORY NO. 17:**

For each TOXICOLOGICAL EFFECT YOU are aware of that is associated with the PFAS or
PFAS-CONTAINING PRODUCTS present in YOUR TURNOUT INTERMEDIATE
PRODUCT(S) or TURNOUTS, identify the TOXICOLOGICAL EFFECT, the date YOU first
became aware of that TOXICOLOGICAL EFFECT, the source of that knowledge, and any
DOCUMENTS RELATING TO or referencing that TOXICOLOGICAL EFFECT.

**ANSWER:**

Stedfast objects to this interrogatory based on General Objections 1-14 and Objections to

Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.

**INTERROGATORY NO. 18:**

For each TOXICOLOGICAL EFFECT identified in response to INTERROGATORY NO. 17,
identify the PERSON most knowledgeable about that TOXICOLOGICAL EFFECT and YOUR
awareness of it.

**ANSWER:**

Stedfast objects to this interrogatory based on General Objections 1-14 and Objections to

Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference. Stefast

further objects that this Interrogatory prematurely calls for the identification of a person most

knowledgeable.

**INTERROGATORY NO. 19:**

Are YOU aware of or have YOU ever conducted or contracted with another PERSON to conduct
any studies, reports and/or surveys to investigate the HUMAN HEALTH EFFECTS of any PFAS
present in YOUR TURNOUT INTERMEDIATE PRODUCT(S) or TURNOUTS manufactured
from YOUR TURNOUT INTERMEDIATE PRODUCT(S)?

**ANSWER:**

Stedfast objects to this interrogatory based on General Objections 1-14 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.

**INTERROGATORY NO. 20:**

If YOUR response to INTERROGATORY NO. 19 is in the affirmative, identify the study, who conducted the study, the results of the study, any PERSONS with knowledge of relevant facts about the study, and all DOCUMENTS RELATING TO or referencing the study.

**ANSWER:**

Stedfast objects to this interrogatory based on General Objections 1-14 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference. Stedfast further objects that the phrase "PERSONS with knowledge of relevant facts" is vague, ambiguous and overbroad.

**INTERROGATORY NO. 21:**

For each HUMAN HEALTH EFFECT YOU are aware of that is associated with the PFAS or PFAS-CONTAINING PRODUCTS present in YOUR TURNOUT INTERMEDIATE PRODUCT(S) or TURNOUTS, identify the HUMAN HEALTH EFFECT, the date YOU first became aware of that HUMAN HEALTH EFFECT, the source of that knowledge, and any DOCUMENTS RELATING TO or referencing that HUMAN HEALTH EFFECT.

**ANSWER:**

Stedfast objects to this interrogatory based on General Objections 1-14 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.

**INTERROGATORY NO. 22:**

For each HEALTH EFFECT identified in response to INTERROGATORY NO. 21, identify the PERSON most knowledgeable about that HEALTH EFFECT and YOUR awareness of it.

**ANSWER:**

Stedfast objects to this interrogatory based on General Objections 1-14 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference. Stedfast

further objects that this Interrogatory prematurely calls for the identification of a person most knowledgeable.

**INTERROGATORY NO. 23:**

Identify all warnings or information YOU provided to purchasers of YOUR TURNOUT INTERMEDIATE PRODUCT(S) CONCERNING any ADVERSE EFFECTS of PFAS, including the date each such warning was given, other than the TOXICOLOGICAL and HUMAN HEALTH 11 EFFECTS discussed above.

**ANSWER:**

Stedfast objects to this interrogatory based on General Objections 1-14 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference. Stedfast also objects that the phrase "ADVERSE EFFECTS of PFAS . . . other than the TOXICOLOGICAL and HUMAN HEALTH EFFECTS discussed above" is vague, ambiguous, overly broad, and unintelligible.

**INTERROGATORY NO. 24:**

Identify any and all alternatives to PFAS or PFAS-CONTAINING PRODUCTS YOU investigated or otherwise considered for use in any TURNOUT INTERMEDIATE PRODUCT(S) YOU SOLD.

**ANSWER:**

Stedfast objects to this interrogatory based on General Objections 1-14 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference. Stedfast also objects that this Interrogatory uses the undefined, vague, ambiguous and overly broad terms "alternatives," "investigated" and "considered."

**INTERROGATORY NO. 25:**

Identify any and all research YOU conducted or reviewed CONCERNING alternatives to PFAS or PFAS-CONTAINING PRODUCTS for use in any TURNOUT INTERMEDIATE PRODUCT(S) YOU SOLD.

**ANSWER:**

Stedfast objects to this interrogatory based on General Objections 1-14 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference. Stedfast also objects that this Interrogatory uses the undefined, vague and ambiguous term "alternatives."

**INTERROGATORY NO. 26:**

Describe how and when YOU became aware that TURNOUT INTERMEDIATE PRODUCT(S) YOU SOLD contained PFAS or PFAS-CONTAINING PRODUCTS.

**ANSWER:**

Stedfast objects to this interrogatory based on General Objections 1-14 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference. Stedfast further objects to this Interrogatory as being served in violation of Federal Rule 33(a)(1). Stedfast also objects that this Interrogatory uses the undefined, vague and ambiguous term "alternatives."

**INTERROGATORY NO. 27:**

If YOU are aware, identify when YOU became aware of the TOXICOLOGICAL EFFECTS of PFAS or PFAS-CONTAINING PRODUCTS.

**ANSWER:**

Stedfast objects to this interrogatory based on General Objections 1-14 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference. Stedfast further objects to this Interrogatory as being served in violation of Federal Rule 33(a)(1).

**INTERROGATORY NO. 28:**

If YOU are aware, identify when YOU became aware of the HUMAN HEALTH EFECTS of PFAS or PFAS-CONTAINING PRODUCTS.

15

**ANSWER:**

Stedfast objects to this interrogatory based on General Objections 1-14 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference. Stedfast further objects to this Interrogatory as being served in violation of Federal Rule 33(a)(1).

**INTERROGATORY NO. 29:**

Identify any and all promotional materials related to the sale of YOUR TURNOUT INTERMEDIATE PRODUCT(S). Attach a copy of any identified promotional materials.

**ANSWER:**

Stedfast objects to this interrogatory based on General Objections 1-14 and Objections to Plaintiffs' Definitions and Instructions 1-76 which are incorporated herein by reference. Stedfast further objects to the Interrogatory's requirement of producing or otherwise attaching promotional materials as beyond the scope of Federal Rule 33. Stedfast further objects to this Interrogatory as being served in violation of Federal Rule 33(a)(1).

**INTERROGATORY NO. 30:**

Identify any government law, regulation, or rule that requires or required the use of PFAS or PFAS CONTAINING PRODUCTS in YOUR TURNOUT INTERMEDIATE PRODUCT(S) or TURNOUTS manufactured from YOUR TURNOUT INTERMEDIATE PRODUCT(S).

**ANSWER:**

Stedfast objects to this interrogatory based on General Objections 1-14 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference. Stedfast further objects to this Interrogatory as being served in violation of Federal Rule 33(a)(1). Stedfast also objects to the extent the interrogatory calls for information from public sources that are equally available to Plaintiffs as to SMI.

(Signature page to follow)

16

Respectfully submitted this the 8th of July 2022.

<div style="margin-left: 40%;">

<u>s/George V. Hanna, IV</u>
George V. Hanna, IV, Fed, ID # 7419
Howser, Newman & Besley, LLC
1508 Washington Street
P.O. Box 12009
Columbia, South Carolina 29211
 (803) 758-6000
ghanna@hnblaw.com
Attorneys for Defendant Stedfast USA, Inc.

</div>

17

## <u>CERTIFICATE OF SERVICE</u>

I certify that on July 8, 2022, a true and correct copy of the foregoing was served via

electronic mail upon the following:

Michael A. London
Douglas and London PC
59 Maiden Lane
6th Floor
New York, NY 10038
mlondon@douglasandlondon.com
Counsel for Plaintiffs

Paul J. Napoli
Napoli Shkolnik PLLC
1301 Avenue Of The Americas
10th Floor
New York, NY 10019
pnapoli@napolilaw.com
Plaintiffs' Co-Lead Counsel

Joseph G. Petrosinelli
Williams & Connolly LLP
725 Twelfth Street, N.W.
Washington, DC 20005
jpetrosinelli@wc.com
Co-Lead Counsel for Defendants

Brian Duffy
Duffy & Young LLC
96 Broad Street
Charleston, SC 29401
bduffy@duffyandyoung.com
Co-Liaison Counsel for Defendants

Scott Summy
Baron & Budd, P.C.
3102 Oak Lawn Avenue
Suite 1100
ssummy@baronbudd.com
Plaintiffs' Co-Lead Counsel

Elizabeth C. Pritzker
Pritzker Levine LLP
Suite 450
Emeryville, CA 94608
ecp@pritzkerlevine.com
Plaintiffs' Executive Committee Member

Michael A. Olsen
Mayer Brown LLP
71 South Wacker Drive
Chicago, IL 60606
molsen@mayerbrown.com
Co-Lead Counsel for Defendants

David E. Dukes
Nelson Mullins Riley & Scarborough LLP
1320 Main Street, 17th Floor
Columbia, SC 29201
David.dukes@nelsonmullins.com
Co-Liaison Counsel for Defendants

/s/ *George V. Hanna, IV*
George V. Hanna, IV

**UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | |
|---|---|
| IN RE: AQUEOUS FILM-FORMING FOAMS PRODUCTS LIABILITY LITIGATION | MDL No. 2:18-mn-2873-RMG |

### DEFENDANT W.L. GORE & ASSOCIATES, INC.'S OBJECTIONS TO PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, **Defendant W.L. Gore & Associates, Inc.** ("Defendant" or "Gore") serves the below objections to Plaintiffs' First Set of Requests For Production ("Document Requests").

### GENERAL OBJECTIONS

1.    In this Aqueous Film-Forming Foams ("AFFF") Products Liability Litigation ("MDL"), the Document Requests are objectionable for a number of reasons, including that they are premature.  While the Document Requests purport to relate to "All Cases," it is clear that they pertain only to the small number of cases involving allegations that plaintiffs were injured by both AFFF and firefighter turnout gear ("Turnout Gear" or "TOG").  These Turnout Gear claims, which are alleged against Gore and around thirteen other defendants ("Turnout Gear Defendants" or "TOG Defendants"), do not predicate liability on the use of or exposure to AFFF.  Accordingly, discovery, and in particular, broad sweeping discovery, into the distinctly unique TOG personal injury claims is not appropriate at this time, given the current status of the matters pending in the MDL.  Gore makes these objections subject to and without waiver of its position that discovery concerning alleged injuries from turnout gear is premature given the procedural posture of the MDL and expressly reserves its right to assert additional and/or more specific objections to these and any additional or related discovery at the appropriate time.

1

2.      Case Management Order No. 2 (March 20, 2019) required the Plaintiffs' Executive Committee ("PEC") to "[d]evelop and propose to the Court schedules for the commencement, execution and completion of all discovery on behalf of all plaintiffs." To Gore's knowledge, the PEC has not satisfied that requirement as to any TOG claim or with respect to TOG Defendants; indeed, no TOG claim had been filed at the time CMO No. 2 was entered and discovery commenced against the AFFF defendants. In short, there is no indication the Court contemplated, much less authorized, broad and one-sided general discovery against the TOG Defendants.

3.      The Court has conducted a "Science Day" with respect to AFFF only. The scientific issues underlying the TOG claims, however, are fundamentally different from those underlying the AFFF claims. Turnout Gear is not one product or one component, and it is not always used under the same conditions as AFFF. Scientific questions underlying TOG personal injury claims involve different chemicals with different properties and toxicological profiles; different possible exposure pathways (if any); different theoretical exposure concentrations (if any); and a host of other issues that distinguish TOG claims from those involving AFFF. The Science Day held for AFFF does not inform the questions of alleged exposure or adverse effects to the plaintiffs claiming harm caused by turnout gear.

4.      Discovery against the TOG defendants is also premature because the existing plaintiff fact sheets are not relevant to Turnout Gear. The plaintiff fact sheets focus on AFFF and contain little to no information pertaining to the TOG claims. There is no information provided from which Gore can determine why Gore is named as a defendant or Gore's role in any plaintiff's alleged injuries from turnout gear. Under the procedures and protocols applicable in this MDL, broad and burdensome discovery requests should not be served until after the plaintiffs have completed fact sheets that provide useful foundational information about the TOG claims, especially given the fact that defendants are precluded from serving their own discovery requests on the TOG plaintiffs at this time. The TOG defendants are prepared to meet and confer with plaintiffs' counsel to discuss an appropriate fact sheet for plaintiffs alleging TOG claims.

5.     The Document Requests are premature because Gore has not yet had the opportunity to demonstrate the speculative nature of the claims asserted against it, which should be dismissed by the MDL court on that basis.  Before being forced to engage in broad, expansive and burdensome discovery, Gore should be given an opportunity, if it opts to do so, to seek the Rule 12 dismissal of the claims against it.

6.     Gore objects to the Document Requests to the extent that they seek documents protected from disclosure by the attorney-client privilege, work-product immunity, joint-defense privilege, common interest privilege, or any other privilege or protection afforded by applicable law.   In the event of an inadvertent disclosure of privileged/protected documents, the privilege/protection shall not be waived, and such documents will be subject to claw-back and other remedies, consistent with Federal Rule of Civil Procedure 26(b)(5)(B) and Federal Rule of Evidence 502(b).

7.     Gore objects to the Document Requests to the extent that they seek documents that constitute, contain, or otherwise disclose trade secrets or other proprietary or confidential information.  In the event Gore is required to produce such information in the MDL, Gore will only do so subject to an appropriate protective order.  Gore further objects to producing any document that is subject to a confidentiality obligation owed by Gore to a third party.

8.     The Document Requests are objectionable on the grounds that they are overly broad, unduly burdensome and oppressive, particularly but not exclusively to the extent they demand the production of "all documents," "all communications," and similar sweeping sets of documents without limitation; seek a range of documents neither relevant to any claim or defense in the TOG cases; and impose obligations on Gore that are disproportionate to the needs of genuine TOG claim discovery.

9.     Several requests are without any temporal limitation, and the general time period specified in the Document Requests (1970) (Instruction 13) is so early in time as to be overbroad, unduly burdensome and virtually meaningless.

10.     Gore objects that several requests are without any geographic limitation and therefore seek information that is not relevant to any claim or defense in this litigation.

11.     Gore objects that several requests call for information about products not used by or associated with any plaintiff in this litigation or sold to any defendant in this litigation and, therefore, seek information that is not relevant to any claim or defense in this litigation.

12.     Gore objects to any Request to the extent that it improperly assumes facts, specifically, that TURNOUTS or TURNOUT INTERMEDIATE PRODUCTS are associated with adverse HUMAN HEALTH or TOXICOLOGICAL EFFECTS, and expressly rejects any such suggestion.

## OBJECTIONS TO PLAINTIFFS' DEFINITIONS AND INSTRUCTIONS

Gore objects as specified below to the Definitions and Instructions in the Document Requests.  Documents may be withheld on the basis of these objections.

1.     Gore objects to each definition and each instruction to the extent that it purports to impose on Gore obligations beyond those set out in the Federal Rules of Civil Procedure, and therefore causes the requests to be overly broad, unduly burdensome, or requiring the production of documents or disclosure of information that is not reasonably accessible.  By way of example only, Gore objects to Instruction No. 7, which purports to require the creation of a log of "destroyed, lost, discarded," etc. documents, and Instruction No. 11, which purports to require Defendants to produce documents that are not "relevant or responsive to the[] Requests."

2.     Gore objects to each definition that is unintelligible, vague or ambiguous, or would so expand the scope of a request as to impose an unreasonable burden or to seek information not relevant to the claims or defenses relative to the TOG personal injury claims.  Examples of such problematic definitions include "Communications," "Internal Communications," "Plaintiffs," "Relating To" or "Concerning," and "You, "Your," and "Defendant."

4

3.    A number of the definitions are contradictory and render individual Document Requests unintelligible.  For example, the terms "Sale," "Sell," and "Sold" are limited to the sale of "Turnouts," but then those terms are used in requests that do not pertain to Turnouts.  The definitions of "Manufacturing Defendants," "PFAS," "PFOA," "PFOS," "PFAS-Containing Products," "Turnout Intermediate Product," "Turnout Defendant," and "Turnouts" are vague and ambiguous.

4.    Gore will construe the terms used in the Document Requests based on their ordinary meaning, and based on the facts that are relevant to the TOG claims and defenses.  Specifically:

a.    Gore will construe the term "ADVERSE EFFECTS" to refer to harmful or negative consequences that are presently known to Gore, if any.

b.    Gore will construe the term "PFAS-CONTAINING PRODUCTS" to refer to products presently known to Gore to be made with material that is a PFAS and/or contain a residual of one or more PFAS, as that term is defined below.

c.    Gore will construe the term "PFAS" to refer to the per- and polyfluoroalkyl substances which may be present in certain TOG products produced by Gore and sold in and for use in the United States, either as a material used to make the products or as a trace residual.  By construing this definition to correspond to multiple PFAS with different properties, Gore does not concede that any specific PFAS is present in TOG used by or associated with any plaintiff, or that the same specific PFAS chemicals are present in all TOG or any component thereof.

d.    Gore will construe the term "PFOA" to refer to the chemical compound perfluorooctanoic acid.

e.    Gore will construe the term "PFOS" to refer to the chemical compound perfluorooctanesulfonic acid.

5.    Gore objects to each definition and each instruction that purports to require the production of documents or information not within Gore's possession, custody, or control or from

persons or entities not within Gore's control; calls for a legal conclusion regarding the relationship between certain persons and/or entities; or may encompass relationships of which Gore is not aware.

6.      Gore objects to each definition and each instruction, including but not limited to Instructions Nos. 4 and 5, that is inconsistent with the protocol set forth in the MDL court's ESI Order.

7.      Any eventual production by Gore will be on a rolling basis, subject to Gore's obligations to supplement, to include responsive documents identified and produced only after a reasonable search and production effort (and subject to all applicable objections). Any such production will be made pursuant to the protective order in the MDL and Federal Rule of Civil Procedure 34.

## REQUESTS FOR PRODUCTION

**REQUEST NO.1:**

All DOCUMENTS CONCERNING warnings YOU provided about any HUMAN HEALTH EFFECTS of any TURNOUT INTERMEDIATE PRODUCT.

RESPONSE:

        Gore objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

**REQUEST NO.2:**

All DOCUMENTS CONCERNING warnings YOU provided about any TOXICOLOGICAL EFFECTS of any TURNOUT INTERMEDIATE PRODUCT.

RESPONSE:

        Gore objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

**REQUEST NO.3:**

All DOCUMENTS CONCERNING warnings YOU provided about any ADVERSE EFFECTS of any TURNOUT INTERMEDIATE PRODUCT, other than the HUMAN HEALTH and TOXICOLOGICAL EFFECTS discussed above.

RESPONSE:

Gore objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference. Gore objects further that the phrase "ADVERSE EFFECTS of any TURNOUT INTERMEDIATE PRODUCT, other than the HUMAN HEALTH and TOXICOLOGICAL EFFECTS discussed above," is vague and unintelligible.

**REQUEST NO.4:**

All DOCUMENTS CONCERNING instructions YOU provided RELATING TO the HANDLING of any TURNOUT INTERMEDIATE PRODUCT YOU SOLD.

RESPONSE:

Gore objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

**REQUEST NO.5:**

All DOCUMENTS YOU used and/or relied on in preparing instructions YOU provided CONCERNING the HANDLING of any TURNOUT INTERMEDIATE PRODUCT YOU SOLD.

RESPONSE:

Gore objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

**REQUEST NO.6:**

All DOCUMENTS CONCERNING any contract and/or agreement between YOU and any MANUFACTURING DEFENDANT(S) for the SALE of any TURNOUT INTERMEDIATE PRODUCT.

RESPONSE:

Gore objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

**REQUEST NO.7:**

All COMMUNICATIONS between YOU and any MANUFACTURING DEFENDANT(S) CONCERNING PFAS and/or the presence of PFAS in TURNOUTS or any TURNOUT INTERMEDIATE PRODUCT.

RESPONSE:

 Gore objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.  Gore also objects that the use of the undefined term "presence," as used in this Request, is vague and ambiguous.

**REQUEST NO.8:**

All DOCUMENTS identifying the TURNOUT INTERMEDIATE PRODUCTS YOU SOLD to any TURNOUT DEFENDANT.

RESPONSE:

 Gore objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.  Gore also objects that the use of the undefined term "identifying," as used in this Request, is vague and ambiguous.

**REQUEST NO.9:**

All DOCUMENTS CONCERNING YOUR process for manufacturing YOUR TURNOUT INTERMEDIATE PRODUCTS.

RESPONSE:

 Gore objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.  Gore also objects that this Request uses the undefined and vague term "process."

**REQUEST NO.10:**

All DOCUMENTS CONCERNING YOUR formulation and/or design of YOUR TURNOUT INTERMEDIATE PRODUCTS.

RESPONSE:

 Gore objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.  Gore also objects that this Request uses the undefined and vague phrase "formulation and/or design."

**REQUEST NO.11:**

All DOCUMENTS CONCERNING any formulation and/or design of TURNOUTS that did not contain PFAS or PFAS-CONTAINING PRODUCTS.

RESPONSE:

      Gore objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference. Gore also objects that this Request uses the undefined and vague phrase "formulation and/or design."

**REQUEST NO.12:**

All COMMUNICATIONS between YOU and any MANUFACTURING DEFENDANT(S) regarding any formulation and/or design of TURNOUTS that did not contain PFAS or PFAS-CONTAINING PRODUCTS.

RESPONSE:

      Gore objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference. Gore also objects that this Request uses the undefined and vague phrase "formulation and/or design."


**REQUEST NO.13:**

All DOCUMENTS identifying the SKUs for TURNOUTS containing PFAS or PFAS-CONTAINING PRODUCTS YOU SOLD.

RESPONSE:

      Gore objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference. Gore also objects that this Request uses the undefined and vague term "SKUs."

**REQUEST NO.14:**

All DOCUMENTS CONCERNING the number and dollar value of sales of each TURNOUT INTERMEDIATE PRODUCT SKU YOU SOLD to each TURNOUT DEFENDANT.

RESPONSE:

      Gore objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

**REQUEST NO.15:**

All purchase agreements, purchase contracts, invoices, supply contracts, receipts, or other documentation evidencing YOUR sale, manufacture, and/or distribution of YOUR TURNOUT INTERMEDIATE PRODUCTS.

RESPONSE:

Gore objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

**REQUEST NO.16:**

All DOCUMENTS CONCERNING any contracts and/or agreements that YOU had with suppliers, wholesalers, distributors, or any other entity that sold YOUR TURNOUT INTERMEDIATE PRODUCTS.

RESPONSE:

Gore objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

**REQUEST NO.17:**

All purchase orders, invoices, contracts, and/or other related materials that provide information about the sale, manufacture, and/or distribution of YOUR TURNOUT INTERMEDIATE PRODUCTS, including but not limited to the dates when YOUR TURNOUT INTERMEDIATE PRODUCTS were sold, the quantity YOU included in each shipment, and the amount (in dollars) YOU were paid for each shipment.

RESPONSE:

Gore objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

**REQUEST NO.18:**

All DOCUMENTS RELATING TO the procedures and protocols for maintaining sales, production, volume, and invoicing records for YOUR TURNOUT INTERMEDIATE PRODUCTS.

RESPONSE:

Gore objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference. Gore also objects that this Request uses the undefined and vague terms "procedures," and "protocols."

**REQUEST NO.19:**

All DOCUMENTS reflecting any assessment and/or analysis of YOUR share of the market for TURNOUT INTERMEDIATE PRODUCTS from 1970 to present.

RESPONSE:

Gore objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference. Gore also objects that this Request uses the undefined and vague terms "assessment," "analysis," and "market."

**REQUEST NO.20:**

All studies and/or reports concerning any HUMAN HEALTH EFFECTS posed by PFAS or PFAS-CONTAINING PRODUCTS in TURNOUTS or any TURNOUT INTERMEDIATE PRODUCT.

RESPONSE:

Gore objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

**REQUEST NO.21:**

All studies and/or reports concerning any TOXICOLOGICAL EFFECTS posed by PFAS or PFAS-CONTAINING PRODUCTS in TURNOUTS or any TURNOUT INTERMEDIATE PRODUCT.

RESPONSE:

Gore objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

**REQUEST NO.22:**

All COMMUNICATIONS between YOU and other PERSONS CONCERNING any HUMAN HEALTH EFFECTS of PFAS or PFAS-CONTAINING PRODUCTS in TURNOUTS or any TURNOUT INTERMEDIATE PRODUCT.

RESPONSE:

Gore objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

**REQUEST NO.23:**

All COMMUNICATIONS between YOU and other PERSONS CONCERNING any TOXICOLOGICAL EFFECTS of PFAS or PFAS-CONTAINING PRODUCTS in TURNOUTS or any TURNOUT INTERMEDIATE PRODUCT.

RESPONSE:

Gore objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

**REQUEST NO.24:**

All historic and current Material Safety Data Sheets ("MSDS") for any TURNOUT INTERMEDIATE PRODUCT YOU SOLD.

RESPONSE:

Gore objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

**REQUEST NO.25:**

All DOCUMENTS, including but not limited to catalogues, statements circulars, manuals, brochures, reports, and advertisements, which mention, describe, or otherwise refer to the virtues, qualities, characteristics, capabilities, and/or capacities of any TURNOUT INTERMEDIATE PRODUCT YOU SOLD.

RESPONSE:

Gore objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

**REQUEST NO.26:**

All COMMUNICATIONS between YOU and any trade or industry organization CONCERNING HUMAN HEALTH EFFECTS of TURNOUTS or any TURNOUT INTERMEDIATE PRODUCT containing PFAS or PFAS-CONTAINING PRODUCTS.

RESPONSE:

Gore objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

**REQUEST NO.27:**

All COMMUNICATIONS between YOU and any trade or industry organization CONCERNING TOXICOLOGICAL EFFECTS of TURNOUTS or any TURNOUT INTERMEDIATE PRODUCT containing PFAS or PFAS-CONTAINING PRODUCTS.

RESPONSE:

Gore objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

**REQUEST NO.28:**

All COMMUNICATIONS between YOU and any trade or industry organization CONCERNING ADVERSE EFFECTS of TURNOUTS or any TURNOUT INTERMEDIATE PRODUCT containing PFAS or PFAS-CONTAINING PRODUCTS, other than the HUMAN HEALTH and TOXICOLOGICAL EFFECTS addressed above.

RESPONSE:

Gore objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

**REQUEST NO.29:**

All COMMUNICATIONS between YOU and any trade or industry organization CONCERNING the safety of TURNOUTS or any TURNOUT INTERMEDIATE PRODUCT containing PFAS or PFAS-CONTAINING PRODUCTS.

RESPONSE:

Gore objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

**REQUEST NO.30:**

All DOCUMENTS CONCERNING statements issued by YOU or on YOUR behalf regarding the HUMAN HEALTH EFFECTS associated with exposure to PFAS or PFAS-CONTAINING PRODUCTS.

RESPONSE:

Gore objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

**REQUEST NO.31:**

All DOCUMENTS CONCERNING statements issued by YOU or on your behalf regarding the TOXICOLOGICAL EFFECTS associated with exposure to PFAS or PFAS-CONTAINING PRODUCTS.

RESPONSE:

Gore objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

**REQUEST NO.32:**

All COMMUNICATIONS between YOU and any public relations and/or media consulting firms or agencies regarding any TOXICOLOGICAL EFFECTS of PFAS or PFAS-CONTAINING PRODUCTS.

RESPONSE:

    Gore objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

**REQUEST NO.33:**

All COMMUNICATIONS between you and any public relations and/or media consulting firms or agencies CONCERNING any HUMAN HEALTH EFFECTS of PFAS or PFAS-CONTAINING PRODUCTS

RESPONSE:

    Gore objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

**REQUEST NO.34:**

All DOCUMENTS regarding the biopersistence and/or the bioaccumulation of PFAS, PFOA, and/or PFOS.

RESPONSE:

    Gore objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference. Gore also objects that this Request calls for information that is neither relevant nor proportional to the needs of this litigation to the extent it seeks information about PFAS, PFOA, and/or PFOS that are not components in TURNOUTS or TURNOUT INTERMEDIATE PRODUCT(S) used by or associated with any plaintiff in this litigation or sold to any defendant in this litigation.

**REQUEST NO.35:**

All DOCUMENTS regarding studies and/or reports CONCERNING the amount of PFAS or PFAS-CONTAINING PRODUCTS in any TURNOUT INTERMEDIATE PRODUCT YOU SOLD.

RESPONSE:

    Gore objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference. Gore further objects to the phrase "amount of PFAS or PFAS-CONTAINING PRODUCTS" as vague and ambiguous.

**REQUEST NO.36:**

All COMMUNICATIONS regarding studies and/or reports CONCERNING the amount of PFAS or PFAS-CONTAINING PRODUCTS in any TURNOUT INTERMEDIATE PRODUCT YOU SOLD.

RESPONSE:

Gore objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference. Gore further objects to the phrase "amount of PFAS or PFAS-CONTAINING PRODUCTS" as vague and ambiguous.

**REQUEST NO.37:**

All DOCUMENTS regarding studies and/or reports of TOXICOLOGICAL EFFECTS of PFAS, PFOA and/or PFOS conducted by YOU or on YOUR behalf.

RESPONSE:

Gore objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

**REQUEST NO.38:**

All DOCUMENTS and COMMUNICATIONS between YOU and any MANUFACTURING DEFENDANT(S) CONCERNING any TOXICOLOGICAL EFFECTS of PFAS or PFAS-CONTAINING PRODUCTS in TURNOUTS.

RESPONSE:

Gore objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference. Gore further objects that this request is duplicative of Request No. 7.

**REQUEST NO.39:**

All DOCUMENTS and COMMUNICATIONS between YOU and any MANUFACTURING DEFENDANT(S) CONCERNING any HUMAN HEALTH EFFECTS of PFAS or PFAS-CONTAINING PRODUCTS in TURNOUTS.

RESPONSE:

Gore objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference. Gore further objects that this request is duplicative of Request No. 7.

**REQUEST NO.40:**

All DOCUMENTS and COMMUNICATIONS between YOU and any MANUFACTURING DEFENDANT(S) CONCERNING any adverse effects of PFAS or PFAS-CONTAINING PRODUCTS in TURNOUTS, other than the TOXICOLOGICAL and HUMAN HEALTH EFFECTS discussed above.

RESPONSE:

Gore objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference. Gore further objects that this request is duplicative of Request No. 7.

**REQUEST NO.41:**

All DOCUMENTS regarding studies or research conducted by YOU or on YOUR behalf CONCERNING the use of non-PFAS materials in the TURNOUTS YOU SOLD.

RESPONSE:

Gore objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference. Gore also objects that the use of the undefined term "non-PFAS materials," as used in this Request, is vague and ambiguous.

**REQUEST NO.42:**

All DOCUMENTS CONCERNING the effectiveness of non-PFAS materials in any TURNOUT INTERMEDIATE PRODUCT YOU SOLD.

RESPONSE:

Gore objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference. Gore also objects that the use of the undefined term "non-PFAS materials," as used in this Request, is vague and ambiguous.

**REQUEST NO.43:**

All COMMUNICATIONS CONCERNING the use of non-PFAS materials in any TURNOUT INTERMEDIATE PRODUCT YOU SOLD.

RESPONSE:

Gore objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

**REQUEST NO.44:**

All DOCUMENTS CONCERNING the development and adoption of warning DOCUMENTS, instructions, and/or labels on any TURNOUT INTERMEDIATE PRODUCT YOU SOLD.

RESPONSE:

Gore objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

**REQUEST NO.45:**

All DOCUMENTS RELATING TO any insurance coverage or request for any insurance coverage in connection with any loss, claim, damage or request relating or referring to this MDL or any other action arising from the use of TURNOUT INTERMEDIATE PRODUCTS containing PFAS or PFAS-CONTAINING PRODUCTS YOU SOLD.

RESPONSE:

Gore objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

**REQUEST NO.46:**

All DOCUMENTS RELATING TO any meetings or correspondence with, or submissions to, the National Fire Protection Association concerning TURNOUTS or any TURNOUT INTERMEDIATE PRODUCT.

RESPONSE:

Gore objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

**REQUEST NO.47:**

All COMMUNICATIONS between YOU and the National Fire Protection Association CONCERNING TURNOUTS or any TURNOUT INTERMEDIATE PRODUCT.

RESPONSE:

Gore objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

**REQUEST NO.48:**

All COMMUNICATIONS between YOU and any MANUFACTURING DEFENDANT(S) CONCERNING the National Fire Protection Association.

RESPONSE:

 Gore objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

**REQUEST NO.49:**

All DOCUMENTS CONCERNING any financial contributions or payments from YOU to the National Fire Protection Association.

RESPONSE:

 Gore objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

**REQUEST NO.50:**

All DOCUMENTS RELATING TO any meetings or correspondence with, or submissions to, the International Association of Fire Fighters concerning TURNOUTS or any TURNOUT INTERMEDIATE PRODUCT.

RESPONSE:

 Gore objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

**REQUEST NO.51:**

All COMMUNICATIONS between YOU and the International Association of Fire Fighters concerning TURNOUTS or any TURNOUT INTERMEDIATE PRODUCT.

RESPONSE:

 Gore objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

**REQUEST NO.52:**

All COMMUNICATIONS between YOU and any MANUFACTURING DEFENDANT(S) CONCERNING the International Association of Fire Fighters.

RESPONSE:

 Gore objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

**REQUEST NO.53:**

All DOCUMENTS CONCERNING any financial contributions or payments from YOU to the International Association of Fire Fighters.

RESPONSE:

      Gore objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

**REQUEST NO.54:**

All DOCUMENTS CONCERNING any disclosure that any TURNOUT INTERMEDIATE PRODUCT YOUSOLD [SIC] contained PFAS or PFAS-CONTAINING PRODUCTS.

RESPONSE:

      Gore objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.  Gore also objects that this Request uses the undefined and vague term "disclosure."

**REQUEST NO.55:**

All DOCUMENTS RELATING TO any meetings or correspondence with, or submission to, any governmental body, trade association, industry group, or lobbying group regarding PFAS or PFAS-CONTAINING PRODUCTS.

RESPONSE:

      Gore objects to this request based on General Objections 1-12 and Objections to Plaintiffs' Definitions and Instructions 1-7, which are incorporated herein by reference.

      Respectfully submitted this 8th day of July, 2022.

                /s/ *Jeremy Esterkin*
                MORGAN LEWIS & BOCKIUS LLP
                Yardena R. Zwang-Weissman (CA SBN 247111)
                yardena.zwang-weissman@morganlewis.com
                Jeremy B. Esterkin (CA SBN 268530)
                jeremy.esterkin@morganlewis.com
                300 S. Grand Ave., Suite 2200
                Los Angeles, CA 90071
                T:  213.612.2500

                *Counsel for Defendant W.L. Gore & Associates, Inc.*

## CERTIFICATE OF SERVICE

I certify that on July 8, 2022, a true and correct copy of the foregoing was served via electronic mail upon the following:

Michael A. London
Tate J. Kunkle
Douglas and London PC
mlondon@douglasandlondon.com
tkunkle@douglasandlondon.com

Paul J. Napoli
Napoli Shkolnik
pnapoli@nsprlaw.com

Scott Summy
Baron & Budd, P.C.
ssummy@baronbudd.com
afffmdlproductions@baronbudd.com

Fred Thompson III
Marissa Bessis
Motley Rice LLC
fthompson@motleyrice.com
mbessis@motleyrice.com

Elizabeth C. Pritzker
Pritzker Levine LLP
ecp@pritzkerlevine.com

Michael A. Olsen
Daniel L. Ring
Tyler D. Alfermann
Mayer Brown LLP
molsen@mayerbrown.com
dring@mayerbrown.com
talfermann@mayerbrown.com

Brian Duffy
Pamela Jones
Duffy & Young, LLC
bduffy@duffyandyoung.com
pjones@duffyandyoung.com
afffmdlproductions@duffyandyoung.com

David E. Dukes
Nelson Mullins Riley & Scarborough LLP
david.dukes@nelsonmullins.com

Liam Montgomery
Joseph Petrosinelli
Williams & Connolly LLP
lmontgomery@wc.com
jpetrosinelli@wc.com

/s/ *Jeremy Esterkin*
MORGAN LEWIS & BOCKIUS LLP

*Counsel for Defendant W.L. Gore & Associates, Inc.*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | |
|---|---|
| IN RE: AQUEOUS FILM-FORMING FOAMS PRODUCTS LIABILITY LITIGATION | MDL No. 2:18-mn-2873-RMG |

## DEFENDANT W.L. GORE & ASSOCIATES, INC.'S OBJECTIONS TO PLAINTIFFS' FIRST SET OF INTERROGATORIES

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, **Defendant W.L. Gore and Associates, Inc.** ("Defendant" or "Gore") serves the below objections to Plaintiffs' First Set of Interrogatories ("Interrogatories").

## GENERAL OBJECTIONS

1.      In this Aqueous Film-Forming Foams ("AFFF") Products Liability Litigation ("MDL"), the Interrogatories are objectionable for a number of reasons, including that they are premature.  While the Interrogatories purport to relate to "All Cases," it is clear that they pertain only to the small number of cases involving allegations that plaintiffs were injured by both AFFF and firefighter turnout gear ("Turnout Gear" or "TOG").  These Turnout Gear claims, which are alleged against Gore and around thirteen other defendants ("Turnout Gear Defendants" or "TOG Defendants"), do not predicate liability on the use of or exposure to AFFF.  Accordingly, discovery, and in particular, broad sweeping discovery, into the distinctly unique TOG personal injury claims is not appropriate at this time, given the current status of the matters pending in the MDL.  Gore makes these objections subject to and without waiver of its position that discovery concerning alleged injuries from turnout gear is premature given the procedural posture of the MDL and expressly reserves its right to assert additional and/or more specific objections to these and any additional or related discovery at the appropriate time.

1

2.     Case Management Order No. 2 (March 20, 2019) required the Plaintiffs' Executive Committee ("PEC") to "[d]evelop and propose to the Court schedules for the commencement, execution and completion of all discovery on behalf of all plaintiffs." To Gore's knowledge, the PEC has not satisfied that requirement as to any TOG claim or with respect to TOG Defendants; indeed, no TOG claim had been filed at the time CMO No. 2 was entered and discovery commenced against the AFFF defendants. In short, there is no indication the Court contemplated, much less authorized, broad and one-sided general discovery against the TOG Defendants.

3.     The Court has conducted a "Science Day" with respect to AFFF only. The scientific issues underlying the TOG claims, however, are fundamentally different from those underlying the AFFF claims. Turnout Gear is not one product or one component, and it is not always used under the same conditions as AFFF. Scientific questions underlying TOG personal injury claims involve different chemicals with different properties and toxicological profiles; different possible exposure pathways (if any); different theoretical exposure concentrations (if any); and a host of other issues that distinguish TOG claims from those involving AFFF. The Science Day held for AFFF does not inform the questions of alleged exposure or adverse effects to plaintiffs claiming harm caused by turnout gear.

4.     Discovery against the TOG defendants is also premature because the existing plaintiff fact sheets are not relevant to Turnout Gear. The plaintiff fact sheets focus on AFFF and contain little to no information pertaining to the TOG claims. There is no information provided from which Gore can determine why Gore is named as a defendant or Gore's role in any plaintiff's alleged injuries from turnout gear. Under the procedures and protocols applicable in this MDL, broad and burdensome discovery requests should not be served until after the plaintiffs have completed fact sheets that provide useful foundational information about the TOG claims, especially given the fact that defendants are precluded from serving their own discovery requests on the TOG plaintiffs at this time. The TOG defendants are prepared to meet and confer with plaintiffs' counsel to discuss an appropriate fact sheet for plaintiffs alleging TOG claims.

5.     The Interrogatories are premature because Gore has not yet had the opportunity to demonstrate the speculative nature of the claims asserted against it, which should be dismissed by the MDL court on that basis.  Before being forced to engage in broad, expansive and burdensome discovery, Gore should be given an opportunity, if it opts to do so, to seek the Rule 12 dismissal of the claims against it.

6.     Gore objects to the Interrogatories to the extent that they seek documents protected from disclosure by the attorney-client privilege, work-product immunity, joint-defense privilege, common interest privilege, or any other privilege or protection afforded by applicable law.  In the event of an inadvertent disclosure of privileged/protected information or documents, the privilege/protection shall not be waived, and such information and documents will be subject to claw-back and other remedies, consistent with Federal Rule of Civil Procedure 26(b)(5)(B) and Federal Rule of Evidence 502(b).

7.     Gore objects to the Interrogatories to the extent that they seek the disclosure of information that constitutes, contains, or otherwise discloses trade secrets or other proprietary or confidential information.  In the event Gore is required to produce such information in the MDL, Gore will only do so subject to an appropriate protective order.  Gore further objects to disclosing any information that is subject to a confidentiality obligation owed by Gore to a third party.

8.     Gore objects to each and every Interrogatory that seeks the address, telephone numbers, or other personal information of individuals.  In many or most cases, Gore does not possess such information, but where it may, Gore objects to any such Interrogatory as unduly invasive and unnecessarily violative of those individuals' privacy rights as well as of Gore's duty to safeguard the personal information of Gore's employees or former employees.  Any current or former Gore employee should be contacted only through counsel of record in the Action.

9.     The Interrogatories are objectionable on the grounds that they are overly broad, unduly burdensome and oppressive, particularly but not exclusively to the extent they demand that Gore "identify" or "describe" "all" documents, communications, persons or things listed in the Interrogatory or seek similar sweeping categories of information; seek a range of information and

3

documents neither relevant to any claim or defense in the TOG cases; and impose obligations on Gore that are disproportionate to the needs of genuine TOG claim discovery.

10.     Several Interrogatories are without any temporal limitation, and the general time period specified in the Interrogatories (1970) (Instruction 8) is so early in time as to be overbroad, unduly burdensome and virtually meaningless.

11.     Gore objects that several Interrogatories are without any geographic limitation and therefore seek information that is not relevant to any claim or defense in this litigation.

12.     Gore objects that several Interrogatories call for information about products not used by or associated with any plaintiff in this litigation or sold to any defendant in this litigation and, therefore, seek information that is not relevant to any claim or defense in this litigation.

13.     Gore objects to the extent any Interrogatory improperly assumes facts, specifically, that TURNOUTS, TURNOUT INTERMEDIATE PRODUCTS or PFAS-CONTAINING PRODUCTS are associated with adverse HUMAN HEALTH or TOXICOLOGICAL EFFECTS, and expressly rejects any such suggestion.

14.     Gore expressly reserves all rights, including, in particular but not exclusively, the right to respond to any Interrogatory, as appropriate, by "(1) specifying the records that must be reviewed in sufficient detail to enable [Plaintiffs] to locate and identify them as readily as the responding party could; and (2) giving [Plaintiffs] a reasonable opportunity to examine and audit the records and to make copies, compilations, abstracts, or summaries."  Federal Rule of Civil Procedure 33(d).

## OBJECTIONS TO PLAINTIFFS' DEFINITIONS AND INSTRUCTIONS

Gore objects as specified below to the Definitions and Instructions in the Interrogatories. Information may be withheld on the basis of these objections.

4

1.    Gore objects to each definition and each instruction to the extent that it purports to impose on Gore obligations beyond those set out in the Federal Rules of Civil Procedure, and therefore causes the Interrogatories to be overly broad, unduly burdensome, or requiring the disclosure of information that is not reasonably accessible.  By way of example only, Gore objects to Instruction Nos. 4 and 7, which purport to impose privilege log obligations beyond those required by Federal Rule of Civil Procedure 26(b)(5)(A).

2.    Gore objects to each instruction and each definition that is unintelligible, vague or ambiguous, or would so expand the scope of a request as to impose an unreasonable burden or to seek information not relevant to the claims or defenses relative to the TOG personal injury claims. Examples of such problematic instructions and definitions include Instruction Nos. 5 ("describe") and 6 ("identify") and the following definitions:  "Communications," "Internal Communications," "Plaintiffs," "Relating To" or "Concerning," and "You, "Your," and "Defendant."

3.    A number of the definitions are contradictory and render individual Interrogatories unintelligible.  For example, the terms "Sale," "Sell," and "Sold" are limited to the sale of "AFFF," but then those terms are used in Interrogatories that do not pertain to AFFF.  The definitions of "Manufacturing Defendants," "PFAS," PFOA," PFOS," "PFAS-Containing Products," and "Turnouts" are vague and ambiguous.

4.    Gore will construe the terms used in the Interrogatories based on their ordinary meaning, and based on the facts that are relevant to the TOG claims and defenses.  Specifically:

   a.   Gore will construe the term "ADVERSE EFFECTS" to refer to harmful or negative consequences that are presently known to Gore, if any.

   b.   Gore will construe the term "PFAS-CONTAINING PRODUCTS" to refer to products presently known to Gore to be made with material that is a PFAS and/or contain a residual of one or more PFAS, as that term is defined below.

   c.   Gore will construe the term "PFAS" to refer to the per- and polyfluoroalkyl substances which may be present in certain TOG products

5

produced by Gore and sold in and for use in the United States, either as a material used to make the products or as a trace residual. By construing this definition to correspond to multiple PFAS with different properties, Gore does not concede that any specific PFAS is present in TOG used by or associated with any plaintiff, or that the same specific PFAS chemicals are present in all TOG or any component thereof.

d. Gore will construe the term "PFOA" to refer to the chemical compound perfluorooctanoic acid.

e. Gore will construe the term "PFOS" to refer to the chemical compound perfluorooctanesulfonic acid.

f. Gore objects that the term "TURNOUT DEFENDANTS" is not defined and is therefore vague and ambiguous. Gore will construe the term "TURNOUT DEFENDANTS" to mean any current defendant in this MDL that currently or formerly produced or manufactured TURNOUTS.

g. Gore objects that the term "TURNOUT INTERMEDIATE PRODUCTS" is not defined and is therefore vague and ambiguous. Gore will construe the term "TURNOUT INTERMEDIATE PRODUCTS" to refer to products containing PFAS or PFAS-CONTAINING PRODUCTS that Gore manufactured and sold to any defendant in MDL NO. 2:18-mn-2873-RMG that currently or formerly produced or manufactured TURNOUTS.

5.    Gore objects to each definition and each instruction that purports to require the disclosure of information not within Gore's possession, custody, or control or from persons or entities not within Gore's control; calls for a legal conclusion regarding the relationship between certain persons and/or entities; or may encompass relationships of which Gore is not aware.

6.    Any eventual disclosure by Gore will be on a rolling basis, subject to Gore's obligations to supplement, to include responsive information identified and disclosed only after a reasonable search and disclosure effort (and subject to all applicable objections). Any such

response will be made pursuant to the protective order in the MDL and Federal Rule of Civil Procedure 33.

## **INTERROGATORIES**

### **INTERROGATORY NO. 1:**

Identify each PERSON who has supplied information used in answering these interrogatories and specify the interrogatories for which each PERSON is responsible.

### **RESPONSE:**

Gore objects to this Interrogatory based on General Objections 1-14 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.

### **INTERROGATORY NO. 2:**

Identify all TURNOUT INTERMEDIATE PRODUCT(S) that YOU SOLD to any MANUFACTURING DEFENDANT(S), stating for each: the trade name under which it was SOLD, the number and dollar value of SALES to each MANUFACTURING DEFENDANT(S), and the date(s) when it was SOLD.

### **RESPONSE:**

Gore objects to this Interrogatory based on General Objections 1-14 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.

### **INTERROGATORY NO. 3:**

Identify the specific PFAS or PFAS-CONTAINING PRODUCTS present in each of YOUR TURNOUT INTERMEDIATE PRODUCT(S) for each year that each of YOUR TURNOUT INTERMEDIATE PRODUCTS was SOLD.

### **RESPONSE:**

Gore objects to this Interrogatory based on General Objections 1-14 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.

### **INTERROGATORY NO. 4:**

Identify all TURNOUT DEFENDANTS to which YOU have SOLD TURNOUT INTERMEDIATE PRODUCTS.

**RESPONSE:**

Gore objects to this Interrogatory based on General Objections 1-14 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.

**INTERROGATORY NO. 5:**

Identify all contracts or agreements between YOU and any TURNOUT DEFENDANTS for the sale and/or delivery of TURNOUT INTERMEDIATE PRODUCTS.

**RESPONSE:**

Gore objects to this Interrogatory based on General Objections 1-14 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.

**INTERROGATORY NO. 6:**

For each TURNOUT DEFENDANT identified in response to INTERROGATORY NO. 4 and INTERROGATORY NO. 5, identify the TURNOUT INTERMEDIATE PRODUCT(S) YOU SOLD, licensed, or delivered directly to that TURNOUT DEFENDANT, including the name of the product, the amount, and the dates of sale.

**RESPONSE:**

Gore objects to this Interrogatory based on General Objections 1-14 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.

**INTERROGATORY NO. 7:**

Identify all studies, analyses, tests, or reports YOU have ever conducted or contracted with another PERSON to conduct on YOUR behalf CONCERNING either the presence or the amount of PFAS or PFAS-CONTAINING PRODUCTS in YOUR TURNOUT INTERMEDIATE PRODUCT(S) or TURNOUTS manufactured using YOUR TURNOUT INTERMEDIATE PRODUCT(S).

**RESPONSE:**

Gore objects to this Interrogatory based on General Objections 1-14 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.

**INTERROGATORY NO. 8:**

Identify all COMMUNICATIONS YOU have had with any MANUFACTURING DEFENDANT(S) CONCERNING either the presence or the amount of PFAS or PFAS-CONTAINING PRODUCTS in YOUR TURNOUT INTERMEDIATE PRODUCT(S).

**RESPONSE:**

Gore objects to this Interrogatory based on General Objections 1-14 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.

8

**INTERROGATORY NO. 9:**

Identify all COMMUNICATIONS YOU have had with any trade or industry organization CONCERNING either the presence or the amount of PFAS or PFAS-CONTAINING PRODUCTS in YOUR TURNOUT INTERMEDIATE PRODUCT(S).

**RESPONSE:**

　　Gore objects to this Interrogatory based on General Objections 1-14 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference

**INTERROGATORY NO. 10:**

Identify all COMMUNICATIONS YOU have had with either the National Fire Protection Association or the International Association of Fire Fighters CONCERNING either the presence or the amount of PFAS or PFAS-CONTAINING PRODUCTS in YOUR TURNOUT INTERMEDIATE PRODUCT(S).

**RESPONSE:**

　　Gore objects to this Interrogatory based on General Objections 1-14 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.

**INTERROGATORY NO. 11:**

Identify all information YOU provided to any purchaser or user of YOUR TURNOUT INTERMEDIATE PRODUCT(S) CONCERNING the formulation or design of YOUR TURNOUT INTERMEDIATE PRODUCT(S).

**RESPONSE:**

　　Gore objects to this Interrogatory based on General Objections 1-14 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.

**INTERROGATORY NO. 12:**

Identify all warnings or information YOU provided to purchasers or users of YOUR TURNOUT INTERMEDIATE PRODUCTS about any TOXICOLOGICAL EFFECTS of PFAS or PFAS-CONTAINING PRODUCTS or PFAS-CONTAINING PRODUCTS.

**RESPONSE:**

　　Gore objects to this Interrogatory based on General Objections 1-14 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.

**INTERROGATORY NO. 13:**

Identify all warnings or information YOU provided to purchasers or users of YOUR TURNOUT INTERMEDIATE PRODUCTS about any HUMAN HEALTH EFFECTS of PFAS or PFAS-CONTAINING PRODUCTS.

**RESPONSE:**

Gore objects to this Interrogatory based on General Objections 1-14 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.

**INTERROGATORY NO. 14:**

Identify all warnings or information YOU provided to purchasers or users of YOUR TURNOUT INTERMEDIATE PRODUCTS about any ADVERSE EFFECTS of PFAS or PFAS-CONTAINING PRODUCTS, other than the TOXICOLOGICAL and HUMAN HEALTH EFFECTS discussed above.

**RESPONSE:**

Gore objects to this Interrogatory based on General Objections 1-14 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference. Gore also objects that the phrase "ADVERSE EFFECTS of PFAS or PFAS-CONTAINING PRODUCTS, other than the TOXICOLOGICAL and HUMAN HEALTH EFFECTS discussed above," is vague, ambiguous, overly broad and unintelligible.

**INTERROGATORY NO. 15:**

Are YOU aware of or have YOU ever conducted or contracted with another PERSON to conduct any studies, reports, and/or surveys to investigate the TOXICOLOGICAL EFFECTS of any PFAS present in YOUR TURNOUT INTERMEDIATE PRODUCT(S) or TURNOUTS manufactured from YOUR TURNOUT INTERMEDIATE PRODUCT(S)?

**RESPONSE:**

Gore objects to this Interrogatory based on General Objections 1-14 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.

**INTERROGATORY NO. 16:**

If YOUR response to INTERROGATORY NO. 15 is in the affirmative, identify the study, who conducted the study, the results of the study, any PERSONS with knowledge of relevant facts about the study, and all DOCUMENTS RELATING TO or referencing the study.

**RESPONSE:**

Gore objects to this Interrogatory based on General Objections 1-14 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.

10

**INTERROGATORY NO. 17:**

For each TOXICOLOGICAL EFFECT YOU are aware of that is associated with the PFAS or PFAS-CONTAINING PRODUCTS present in YOUR TURNOUT INTERMEDIATE PRODUCT(S) or TURNOUTS, identify the TOXICOLOGICAL EFFECT, the date YOU first became aware of that TOXICOLOGICAL EFFECT, the source of that knowledge, and any DOCUMENTS RELATING TO or referencing that TOXICOLOGICAL EFFECT.

**RESPONSE:**

　　Gore objects to this Interrogatory based on General Objections 1-14 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.

**INTERROGATORY NO. 18:**

For each TOXICOLOGICAL EFFECT identified in response to INTERROGATORY NO. 17, identify the PERSON most knowledgeable about that TOXICOLOGICAL EFFECT and YOUR awareness of it.

**RESPONSE:**

　　Gore objects to this Interrogatory based on General Objections 1-14 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.  Gore further objects that this Interrogatory prematurely calls for the identification of a person most knowledgeable.

**INTERROGATORY NO. 19:**

Are YOU aware of or have YOU ever conducted or contracted with another PERSON to conduct any studies, reports and/or surveys to investigate the HUMAN HEALTH EFFECTS of any PFAS present in YOUR TURNOUT INTERMEDIATE PRODUCT(S) or TURNOUTS manufactured from YOUR TURNOUT INTERMEDIATE PRODUCT(S)?

**RESPONSE:**

　　Gore objects to this Interrogatory based on General Objections 1-14 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.

**INTERROGATORY NO. 20:**

If YOUR response to INTERROGATORY NO. 19 is in the affirmative, identify the study, who conducted the study, the results of the study, any PERSONS with knowledge of relevant facts about the study, and all DOCUMENTS RELATING TO or referencing the study.

**RESPONSE:**

　　Gore objects to this Interrogatory based on General Objections 1-14 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.  Gore

11

further objects that the phrase "PERSONS with knowledge of relevant facts" is vague, ambiguous and overbroad.

## INTERROGATORY NO. 21:

For each HUMAN HEALTH EFFECT YOU are aware of that is associated with the PFAS or PFAS-CONTAINING PRODUCTS present in YOUR TURNOUT INTERMEDIATE PRODUCT(S) or TURNOUTS, identify the HUMAN HEALTH EFFECT, the date YOU first became aware of that HUMAN HEALTH EFFECT, the source of that knowledge, and any DOCUMENTS RELATING TO or referencing that HUMAN HEALTH EFFECT.

## RESPONSE:

Gore objects to this Interrogatory based on General Objections 1-14 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.

## INTERROGATORY NO. 22:

For each HEALTH EFFECT identified in response to INTERROGATORY NO. 21, identify the PERSON most knowledgeable about that HEALTH EFFECT and YOUR awareness of it.

## RESPONSE:

Gore objects to this Interrogatory based on General Objections 1-14 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference. Gore further objects that this Interrogatory prematurely calls for the identification of a person most knowledgeable.

## INTERROGATORY NO. 23:

Identify all warnings or information YOU provided to purchasers of YOUR TURNOUT INTERMEDIATE PRODUCT(S) CONCERNING any ADVERSE EFFECTS of PFAS, including the date each such warning was given, other than the TOXICOLOGICAL and HUMAN HEALTH EFFECTS discussed above.

## RESPONSE:

Gore objects to this Interrogatory based on General Objections 1-14 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference. Gore also objects that the phrase "ADVERSE EFFECTS of PFAS . . . other than the TOXICOLOGICAL and HUMAN HEALTH EFFECTS discussed above" is vague, ambiguous, overly broad and unintelligible.

## INTERROGATORY NO. 24:

Identify any and all alternatives to PFAS or PFAS-CONTAINING PRODUCTS YOU investigated or otherwise considered for use in any TURNOUT INTERMEDIATE PRODUCT(S) YOU SOLD.

**RESPONSE:**

Gore objects to this Interrogatory based on General Objections 1-14 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.  Gore also objects that this Interrogatory uses the undefined, vague, ambiguous and overly broad terms "alternatives," "investigated" and "considered."

**INTERROGATORY NO. 25:**

Identify any and all research YOU conducted or reviewed CONCERNING alternatives to PFAS or PFAS-CONTAINING PRODUCTS for use in any TURNOUT INTERMEDIATE PRODUCT(S) YOU SOLD.

**RESPONSE:**

Gore objects to this Interrogatory based on General Objections 1-14 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.  Gore also objects that this Interrogatory uses the undefined, vague and ambiguous term "alternatives."

**INTERROGATORY NO. 26:**

Describe how and when YOU became aware that TURNOUT INTERMEDIATE PRODUCT(S) YOU SOLD contained PFAS or PFAS-CONTAINING PRODUCTS.

**RESPONSE:**

Gore objects to this Interrogatory based on General Objections 1-14 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference.  Gore further objects to this Interrogatory as being served in violation of Federal Rule 33(a)(1).  Gore also objects that this Interrogatory uses the undefined, vague and ambiguous term "alternatives."

**INTERROGATORY NO. 27:**

If YOU are aware, identify when YOU became aware of the TOXICOLOGICAL EFFECTS of PFAS or PFAS-CONTAINING PRODUCTS.

**RESPONSE:**

Gore objects to this Interrogatory based on General Objections 1-14 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference. Gore further objects to this Interrogatory as being served in violation of Federal Rule 33(a)(1).

**INTERROGATORY NO. 28:**

If YOU are aware, identify when YOU became aware of the HUMAN HEALTH EFFECTS of PFAS or PFAS-CONTAINING PRODUCTS.

**RESPONSE:**

Gore objects to this Interrogatory based on General Objections 1-14 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference. Gore further objects to this Interrogatory as being served in violation of Federal Rule 33(a)(1).

**INTERROGATORY NO. 29:**

Identify any and all promotional materials related to the sale of YOUR TURNOUT INTERMEDIATE PRODUCT(S). Attach a copy of any identified promotional materials.

**RESPONSE:**

Gore objects to this Interrogatory based on General Objections 1-14 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference. Gore further objects to the Interrogatory's requirement of producing or otherwise attaching promotional materials as beyond the scope of Federal Rule 33. Gore further objects to this Interrogatory as being served in violation of Federal Rule 33(a)(1).

**INTERROGATORY NO. 30:**

Identify any government law, regulation, or rule that requires or required the use of PFAS or PFAS-CONTAINING PRODUCTS in YOUR TURNOUT INTERMEDIATE PRODUCT(S) or TURNOUTS manufactured from YOUR TURNOUT INTERMEDIATE PRODUCT(S).

**RESPONSE:**

Gore objects to this Interrogatory based on General Objections 1-14 and Objections to Plaintiffs' Definitions and Instructions 1-6, which are incorporated herein by reference. Gore further objects to this Interrogatory as being served in violation of Federal Rule 33(a)(1). Gore also objects to the extent this Interrogatory calls for information from public sources that are equally available to Plaintiffs as to Gore.

Respectfully submitted this 8th day of July, 2022.

/s/ *Jeremy Esterkin*
MORGAN LEWIS & BOCKIUS LLP
Yardena R. Zwang-Weissman (CA SBN 247111)
yardena.zwang-weissman@morganlewis.com
Jeremy B. Esterkin (CA SBN 268530)
jeremy.esterkin@morganlewis.com
300 S. Grand Ave., Suite 2200
Los Angeles, CA 90071
T: 213.612.2500

*Counsel for Defendant W.L. Gore & Associates, Inc.*

14

## <u>CERTIFICATE OF SERVICE</u>

I certify that on July 8, 2022, a true and correct copy of the foregoing was served via electronic mail upon the following:

Michael A. London
Tate J. Kunkle
Douglas and London PC
mlondon@douglasandlondon.com
tkunkle@douglasandlondon.com

Paul J. Napoli
Napoli Shkolnik
pnapoli@nsprlaw.com

Scott Summy
Baron & Budd, P.C.
ssummy@baronbudd.com
afffmdlproductions@baronbudd.com

Fred Thompson III
Marissa Bessis
Motley Rice LLC
fthompson@motleyrice.com
mbessis@motleyrice.com

Elizabeth C. Pritzker
Pritzker Levine LLP
ecp@pritzkerlevine.com

Michael A. Olsen
Daniel L. Ring
Tyler D. Alfermann
Mayer Brown LLP
molsen@mayerbrown.com
dring@mayerbrown.com
talfermann@mayerbrown.com

Brian Duffy
Pamela Jones
Duffy & Young, LLC
bduffy@duffyandyoung.com
pjones@duffyandyoung.com
afffmdlproductions@duffyandyoung.com

David E. Dukes
Nelson Mullins Riley & Scarborough LLP
david.dukes@nelsonmullins.com

Liam Montgomery
Joseph Petrosinelli
Williams & Connolly LLP
lmontgomery@wc.com
jpetrosinelli@wc.com

/s/  *Jeremy Esterkin*
MORGAN LEWIS & BOCKIUS LLP

*Counsel for Defendant W.L. Gore & Associates, Inc.*

15