# EXHIBIT D

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | |
|---|---|
| IN RE: AQUEOUS FILM-FORMING FOAMS PRODUCTS LIABILITY LITIGATION | MDL NO. 2:18-mn-02873-RMG |

**DEFENDANT FIRE-DEX, LLC'S OBJECTIONS TO**
**PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Defendant, Fire-Dex, LLC ("Defendant" or "Fire-Dex") serves the below objections to Plaintiffs' First Set of Requests for Production ("Document Requests") without waiving and fully reserving all issues of personal jurisdiction as agreed by the parties and the Court.

## GENERAL OBJECTIONS

1.      In this Aqueous Film-Forming Foams ("AFFF") Products Liability Litigation ("MDL"), the Document Requests are objectionable for a number of reasons, including that they are premature. While the Document Requests purport to relate to "All Cases," it is clear they pertain only to the small number of cases involving allegations that plaintiffs were injured by both AFFF and firefighter turnout gear ("Turnout Gear" or "TOG"). These Turnout Gear claims, which are alleged against Fire-Dex and around thirteen other defendants ("TOG Defendants"), do not predicate liability on the use of or exposure to AFFF. Accordingly, discovery, and in particular, broad sweeping discovery, into the distinctly unique TOG personal injury claims is not appropriate at this time, given the current status of the matters pending in the MDL. Fire-Dex makes these objections subject to and without waiver of its position that discovery concerning alleged injuries from turnout gear is premature given the procedural posture of the MDL and expressly reserves its right to assert additional and/or more specific objections to these and any additional or related discovery at the appropriate time.

2.      The Court has conducted a "Science Day" with respect to AFFF only. The scientific issues underlying the TOG claims, however, are fundamentally different from those underlying the AFFF claims. Turnout Gear is not one product or one component, and it is not always used under the same conditions as AFFF. Scientific questions underlying TOG personal injury claims involve different chemicals with different properties and toxicological profiles; different possible exposure pathways (if any); different theoretical exposure concentrations (if any), and a host of other issues that distinguish TOG claims from those involving AFFF. The Science Day held for AFFF does not inform the questions of alleged exposure or adverse effects to the plaintiffs claiming harm caused by turnout gear.

3.      Discovery against the TOG Defendants is also premature because the existing plaintiff fact sheets are not relevant to Turnout Gear. The plaintiff fact sheets focus on AFFF and contain little to no information pertaining to the TOG claims and plaintiffs have not otherwise provided information concerning their alleged use of turnout gear, such as the types or brands of turnout gear that was used or when. Accordingly, there is no information provided from which Fire-Dex can determine why Fire-Dex is named as a defendant or Fire-Dex's role in any plaintiff's alleged injuries from turnout gear. Under the procedures and protocols applicable in this MDL, broad and burdensome discovery requests should not be served until after the plaintiffs have completed fact sheets that provide useful foundation information about the TOG claims, especially given the fact that defendants are precluded from serving their own discovery requests on the TOG plaintiffs at this time. The TOG defendants are prepared to meet and confer with plaintiffs' counsel to discuss an appropriate fact sheet for plaintiffs alleging TOG claims.

4.      The Document Requests are premature because Fire-Dex has not yet had the opportunity to demonstrate the speculative nature of the claims asserted against it, which should be dismissed by the MDL court on that basis. Before being forced to engage in broad, expansive

and burdensome discovery, Fire-Dex should be given an opportunity, if it opts to do so, to seek the Rule 12 motion dismissal of the claims against it.

5.    Case Management Order No. 2 (Mar. 20, 2019) required the Plaintiffs' Executive Committee ("PEC") to "[d]evelop and propose to the Court schedules for the commencement, execution and completion of all discovery on behalf of all plaintiffs." To Fire-Dex's knowledge, the PEC has not satisfied that requirement as to any TOG claim or with respect to TOG Defendants; indeed, no TOG claim had been filed at the time CMO 2 was entered and discovery commenced against the AFFF defendants. In short, there is no indication the Court contemplated, much less authorized, broad and one-sided general discovery against the TOG Defendants.

## ADDITIONAL RECURRING OBJECTIONS

6.    Fire-Dex objects to the Document Requests to the extent that they seek documents protected from disclosure by the attorney-client privilege, work-product immunity, joint-defense privilege, common interest privilege, or any other privilege or protection afforded by applicable law. In the event of an inadvertent disclosure of privileged/protected documents, the privilege/protection shall not be waived, and such documents will be subject to claw-back and other remedies, consistent with Federal Rule of Civil Procedure 26(b)(5)(B) and Federal Rule of Evidence 502(b).

7.    Fire-Dex objects to the Document Requests to the extent that they seek documents that constitute, contain, or otherwise disclose trade secrets or other proprietary or confidential information. In the event Fire-Dex is required to produce such information in the MDL, Fire-Dex will only do so subject to an appropriate protective order. Fire-Dex further objects to producing any document that is subject to a confidentiality obligation owed by Fire-Dex to a third party.

8.    The Document Requests are objectionable on the grounds that they are overly broad, unduly burdensome and oppressive, particularly but not exclusively to the extent they demand the production of "all documents," "all communications," and similar sweeping sets of documents without limitation; seek a range of documents neither relevant to any claim or defense

in the TOG cases; and impose obligations on Fire-Dex that are disproportionate to the needs of genuine TOG claim discovery and/or Rule 26(b)(1).

9.      Several requests are without any temporal limitation, and the general time period specified in the Document Requests (1970) (Instruction 13) is so early in time as to be overbroad, unduly burdensome and virtually meaningless.

10.     Fire-Dex objects that several requests are without any geographic limitation and therefore seek information that is not relevant to any claim or defense in this litigation.

11.     Fire-Dex objects that several requests call for information about products not used by or associated with any plaintiff in this litigation or sold to any defendant in this litigation and, therefore, seek information that is not relevant to any claim or defense in this litigation.

12.     Fire-Dex objects to any Request to the extent that it improperly assumes facts, specifically, that TURNOUTS are associated with adverse HUMAN HEALTH or TOXICOLOGICAL EFFECTS, and expressly rejects any such suggestion.

13.     Fire-Dex objects to Plaintiffs' Discovery to the extent that it seeks documents that are not subject to Fire-Dex's ownership, possession, custody, or control. In addition, some requests seek information that is publicly available and, where appropriate, Fire-Dex refers to documents available to Plaintiffs through public sources.

## OBJECTIONS TO PLAINTIFFS' DEFINITIONS AND INSTRUCTIONS

Fire-Dex objects as specified below to the Definitions and Instructions in the Document Requests. Documents may be withheld on the basis of these objections.

1.      Fire-Dex objects to each definition and each instruction to the extent that it purports to impose on Fire-Dex obligations beyond those set out in the Federal Rules of Civil Procedure or any existing CMO, and therefore causes the requests to be overly broad, unduly burdensome, or requiring the production of documents or disclosure of information that is not

reasonably accessible. By way of example only, Fire-Dex objects to Instruction No. 7, which purports to require the creation of a log of "destroyed, lost, discarded," etc. documents, and Instruction No. 11, which purports to require Defendants to produce documents that are not "relevant or responsive to the[ ] Requests.".

2.     Fire-Dex objects to each definition that is unintelligible, vague or ambiguous, or would so expand the scope of a request as to impose an unreasonable burden or to seek information not relevant to the claims or defenses relative to the TOG personal injury claims. Examples of such problematic definitions include "Communications," "Internal Communications," "Plaintiffs," "Relating To" or "Concerning," and "You, "Your," and "Defendant."

3.     A number of the definitions are contradictory and render individual Document Requests unintelligible. For example, the terms "Sale," "Sell," and "Sold" are limited to the sale of "Turnouts," but then those terms are used in requests that do not pertain to Turnouts. The definitions of "Manufacturing Defendant(s)," "PFAS," "PFOA," "PFOS," "PFAS-Containing Products," "Produce," "Turnout Defendant," and "Turnouts" are vague, ambiguous, and/or incomplete.

4.     Fire-Dex objects to the definitions of "Adverse Effects," "Human Health Effect," and "Toxicological Effect(s) or Toxicological Impact(s)," as vague, ambiguous, and unsupported in science, medicine, law, and/or common usage.

5.     Fire-Dex will construe the terms used in the Document Requests based on their ordinary meaning, and based on the facts that are relevant to the TOG claims and defenses. Specifically:

      a.     Fire-Dex will construe the term "ADVERSE EFFECTS" to refer to harmful or negative consequences that are presently known to Fire-Dex, if any.

      b.     Fire-Dex will construe the term "PFAS-CONTAINING PRODUCTS" to refer to products presently known to Fire-Dex to be made with material that is a PFAS and/or contain a residual of one or more PFAS, as that term is defined below.

      c.     Fire-Dex will construe the term "PFAS" to refer to the per- and polyfluoroalkyl substances that are or may be used as a component in

certain products produced by Fire-Dex and sold in and for use in the United States. By construing this definition to correspond to multiple PFAS with different properties, Fire-Dex does not concede that any specific PFAS is present in TOG used by or associated with any plaintiff, or that the same specific PFAS chemicals are present in all TOG or any component thereof.

    d.    Fire-Dex will construe the term "PFOA" to refer to the chemical compound perfluorooctanoic acid.

    e.    Fire-Dex will construe the term "PFOS" to refer to the chemical compound perfluorooctanesulfonic acid.

6.    Fire-Dex objects to each definition and each instruction that purports to require a legal conclusion regarding the relationship between certain persons and/or entities; or may encompass relationships of which Fire-Dex is not aware.

7.    Fire-Dex objects to each definition and each instruction, including but not limited to Instructions Nos. 4 and 5, that is inconsistent with the protocol set forth in the MDL court's ESI Order.

8.    Any eventual production by Fire-Dex will be on a rolling basis, subject to Fire-Dex's obligations to supplement, to include responsive documents identified and produced only after a reasonable search and production effort (and subject to all applicable objections). Any such production will be made pursuant to the protective order in the MDL and Federal Rule of Civil Procedure ("FRCP") 34.

## REQUESTS FOR PRODUCTION

### REQUEST NO. 1:

All DOCUMENTS CONCERNING warnings YOU provided about any HUMAN HEALTH EFFECTS of TURNOUTS containing PFAS or PFAS-CONTAINING PRODUCTS.

**RESPONSE:** Fire-Dex objects to this request based on General and Additional Recurring Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference.

**REQUEST NO. 2:**

All DOCUMENTS CONCERNING warnings YOU provided about any TOXICOLOGICAL EFFECTS of TURNOUTS containing PFAS or PFAS-CONTAINING PRODUCTS.

**RESPONSE:** Fire-Dex objects to this request based on General and Additional Recurring Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference.

**REQUEST NO. 3:**

All DOCUMENTS CONCERNING warnings YOU provided about any ADVERSE EFFECTS of TURNOUTS containing PFAS or PFAS-CONTAINING PRODUCTS, other than the HUMAN HEALTH and TOXICOLOGICAL EFFECTS discussed above.

**RESPONSE:** Fire-Dex objects to this request based on General and Additional Recurring Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference. Fire-Dex objects further that the phrase "ADVERSE EFFECTS of any TURNOUTS, other than the HUMAN HEALTH and TOXICOLOGICAL EFFECTS discussed above," is vague and unintelligible.

**REQUEST NO. 4:**

All DOCUMENTS CONCERNING instructions YOU provided RELATING TO the HANDLING of any TURNOUTS containing PFAS or PFAS-CONTAINING PRODUCTS YOU SOLD.

**RESPONSE:** Fire-Dex objects to this request based on General and Additional Recurring Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference.

**REQUEST NO. 5:**

All DOCUMENTS YOU used and/or relied on in preparing instructions YOU provided CONCERNING the HANDLING of any TURNOUTS containing PFAS or PFAS-CONTAINING PRODUCTS YOU SOLD.

**RESPONSE:** Fire-Dex objects to this request based on General and Additional Recurring Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference.

**REQUEST NO. 6:**

All DOCUMENTS CONCERNING any contract and/or agreement between YOU and any MANUFACTURING DEFENDANT(S) for the SALE of TURNOUTS.

**RESPONSE:** Fire-Dex objects to this request based on General and Additional Recurring Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference.

**REQUEST NO. 7:**

All DOCUMENTS CONCERNING any contract and/or agreement between YOU and any MANUFACTURING DEFENDANT(S) for the purchase of materials containing PFAS or PFAS-CONTAINING PRODUCTS.

**RESPONSE:** Fire-Dex objects to this request based on General and Additional Recurring Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference.

**REQUEST NO. 8:**

All COMMUNICATIONS between YOU and any MANUFACTURING DEFENDANT(S) CONCERNING PFAS and/or the presence of PFAS or PFAS-CONTAINING PRODUCTS in TURNOUTS.

**RESPONSE:** Fire-Dex objects to this request based on General and Additional Recurring Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference. Fire-Dex also objects that this Request uses the undefined and vague phrase "presence."

**REQUEST NO. 9:**

All DOCUMENTS regarding any formulation and/or design of TURNOUTS that did not contain PFAS or PFAS-CONTAINING PRODUCTS.

**RESPONSE:** Fire-Dex objects to this request based on General and Additional Recurring Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference. Fire-Dex also objects that this Request uses the undefined and vague phrase "formulation and/or design." Fire-Dex further objects to the extent this Request calls for the production of documents about or referring to TURNOUTS not manufactured, distributed or sold by Fire-Dex.

**REQUEST NO. 10:**

All COMMUNICATIONS between YOU and any MANUFACTURING DEFENDANT(S) CONCERNING any formulation and/or design of TURNOUTS that did not contain PFAS or PFAS-CONTAINING PRODUCTS.

**RESPONSE:** Fire-Dex objects to this request based on General and Additional Recurring Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference. Fire-Dex also objects that this Request uses the undefined and vague phrase "formulation and/or design." Fire-Dex further objects to the extent this Request calls for the production of documents about or referring to TURNOUTS not manufactured, distributed or sold by Fire-Dex.

**REQUEST NO. 11:**

All DOCUMENTS identifying the SKUs for TURNOUTS containing PFAS or PFAS-CONTAINING PRODUCTS YOU SOLD.

**RESPONSE:** Fire-Dex objects to this request based on General and Additional Recurring Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference. Fire-Dex also objects that this Request uses the undefined and vague term "SKUs."

**REQUEST NO. 12:**

All DOCUMENTS CONCERNING the number and dollar value of sales of each TURNOUT SKU YOU SOLD.

**RESPONSE:** Fire-Dex objects to this request based on General and Additional Recurring Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference. Fire-Dex also objects that this Request uses the undefined and vague term "SKU."

**REQUEST NO. 13:**

All purchase agreements, purchase contracts, invoices, supply contracts, receipts, or other documentation evidencing YOUR sale, manufacture, and/or distribution of YOUR TURNOUTS.

**RESPONSE:** Fire-Dex objects to this request based on General and Additional Recurring Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference. Fire-Dex also objects that this Request is overbroad and seeks information that is disproportionate to the claims and/or named plaintiffs.

**REQUEST NO. 14:**

All DOCUMENTS CONCERNING any contracts and/or agreements that YOU had with suppliers, wholesalers, distributors, or any other entity that sold YOUR TURNOUTS.

**RESPONSE:** Fire-Dex objects to this request based on General and Additional Recurring Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference. Fire-Dex also objects that this Request is overbroad and seeks information that is disproportionate to the claims and/or named plaintiffs.

**REQUEST NO. 15:**

All purchase orders, invoices, contracts, and/or other related materials that provide information about the sale, manufacture, and/or distribution of YOUR TURNOUTS, including but not limited to the dates when YOUR TURNOUTS were sold, the quantity YOU included in each shipment, and the amount (in dollars) YOU were paid for each shipment.

**RESPONSE:** Fire-Dex objects to this request based on General and Additional Recurring Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are

incorporated herein by reference. Fire-Dex also objects that this Request is overbroad and seeks information that is disproportionate to the claims and/or named plaintiffs.

**REQUEST NO. 16:**

All DOCUMENTS RELATING TO the procedures and protocols for maintaining sales, production, volume, and invoicing records for YOUR TURNOUTS.

**RESPONSE:** Fire-Dex objects to this request based on General and Additional Recurring Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference. Fire-Dex also objects that this Request uses the undefined and vague terms "procedures," and "protocols." Further, Fire-Dex objects that this Request calls for "discovery about discovery."

**REQUEST NO. 17:**

All DOCUMENTS reflecting any assessment and/or analysis of YOUR share of the market for TURNOUTS from 1970 to present.

**RESPONSE:** Fire-Dex objects to this request based on General and Additional Recurring Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference. Fire-Dex also objects that this Request uses the undefined and vague terms "assessment," "analysis," and "market." Further, Fire-Dex objects that this Request improperly seeks to impose any liability on it based on markets or any alleged share thereof.

**REQUEST NO. 18:**

All studies and/or reports CONCERNING any HUMAN HEALTH EFFECTS posed by PFAS or PFAS-CONTAINING PRODUCTS in TURNOUTS.

**RESPONSE:** Fire-Dex objects to this request based on General and Additional Recurring Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference. Fire-Dex also objects that this Request uses the undefined and vague phrase "studies and/or reports."

**REQUEST NO. 19:**

All studies and/or reports CONCERNING any TOXICOLOGICAL EFFECTS posed by PFAS or PFAS-CONTAINING PRODUCTS in TURNOUTS.

**RESPONSE:** Fire-Dex objects to this request based on General and Additional Recurring Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference. Fire-Dex also objects that this Request uses the undefined and vague phrase "studies and/or reports."

**REQUEST NO. 20:**

All COMMUNICATIONS between YOU and other PERSONS CONCERNING any HUMAN HEALTH EFFECTS of PFAS or PFAS-CONTAINING PRODUCTS in TURNOUTS.

**RESPONSE:** Fire-Dex objects to this request based on General and Additional Recurring Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference.

## REQUEST NO. 21:

All COMMUNICATIONS between YOU and other PERSONS CONCERNING any TOXICOLOGICAL EFFECTS of PFAS or PFAS-CONTAINING PRODUCTS in TURNOUTS.

**RESPONSE:** Fire-Dex objects to this request based on General and Additional Recurring Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference.

## REQUEST NO. 22:

All historic and current Material Safety Data Sheets ("MSDS") for any TURNOUTS containing PFAS or PFAS-CONTAINING PRODUCTS YOU SOLD.

**RESPONSE:** Fire-Dex objects to this request based on General and Additional Recurring Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference.

## REQUEST NO. 23:

All DOCUMENTS, including but not limited to catalogues, statements circulars, manuals, brochures, reports, and advertisements, which mention, describe, or otherwise refer to the virtues, qualities, characteristics, capabilities, and/or capacities of any TURNOUTS containing PFAS or PFAS-CONTAINING PRODUCTS YOU SOLD.

**RESPONSE:** Fire-Dex objects to this request based on General and Additional Recurring Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference.

## REQUEST NO. 24:

All COMMUNICATIONS between YOU and any trade or industry organization CONCERNING HUMAN HEALTH EFFECTS of TURNOUTS containing PFAS or PFAS-CONTAINING PRODUCTS.

**RESPONSE:** Fire-Dex objects to this request based on General and Additional Recurring Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference.

## REQUEST NO. 25:

All COMMUNICATIONS between YOU and any trade or industry organization CONCERNING TOXICOLOGICAL EFFECTS of TURNOUTS containing PFAS or PFAS-CONTAINING PRODUCTS.

**RESPONSE:** Fire-Dex objects to this request based on General and Additional Recurring Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference.

## REQUEST NO. 26:

All COMMUNICATIONS between YOU and any trade or industry organization CONCERNING ADVERSE EFFECTS of TURNOUTS containing PFAS or PFAS-CONTAINING PRODUCTS, other than the HUMAN HEALTH and TOXICOLOGICAL EFFECTS addressed above.

**RESPONSE:** Fire-Dex objects to this request based on General and Additional Recurring Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference.

## REQUEST NO. 27:

All COMMUNICATIONS between YOU and any trade or industry organization CONCERNING the safety of TURNOUTS containing PFAS or PFAS-CONTAINING PRODUCTS.

**RESPONSE:** Fire-Dex objects to this request based on General and Additional Recurring Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference. Fire-Dex also objects that this Request is overbroad and seeks information that is disproportionate to the claims and/or named plaintiffs.

## REQUEST NO. 28:

All DOCUMENTS CONCERNING statements issued by YOU or on YOUR behalf regarding the HUMAN HEALTH EFFECTS associated with exposure to PFAS or PFAS-CONTAINING PRODUCTS.

**RESPONSE:** Fire-Dex objects to this request based on General and Additional Recurring Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference. Fire-Dex also objects that this Request uses the undefined and vague term "exposure."

## REQUEST NO. 29:

All DOCUMENTS CONCERNING statements issued by YOU or on YOUR behalf regarding the TOXICOLOGICAL EFFECTS associated with exposure to PFAS or PFAS-CONTAINING PRODUCTS.

**RESPONSE:** Fire-Dex objects to this request based on General and Additional Recurring Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are

incorporated herein by reference. Fire-Dex also objects that this Request uses the undefined and vague term "exposure."

**REQUEST NO. 30:**

All COMMUNICATIONS between YOU and any public relations and/or media consulting firms or agencies regarding any TOXICOLOGICAL EFFECTS of PFAS or PFAS-CONTAINING PRODUCTS.

**RESPONSE:** Fire-Dex objects to this request based on General and Additional Recurring Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference.

**REQUEST NO. 31:**

All COMMUNICATIONS between you and any public relations and/or media consulting firms or agencies CONCERNING any HUMAN HEALTH EFFECTS of PFAS or PFAS-CONTAINING PRODUCTS.

**RESPONSE:** Fire-Dex objects to this request based on General and Additional Recurring Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference.

**REQUEST NO. 32:**

All DOCUMENTS regarding the biopersistence and/or the bioaccumulation of PFAS, PFOA, and/or PFOS.

**RESPONSE:** Fire-Dex objects to this request based on General and Additional Recurring Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference. Fire-Dex also objects that this Request calls for information that is neither relevant nor proportional to the needs of this litigation to the extent it seeks information about PFAS, PFOA, and/or PFOS that are not components in turnouts used by or associated with any plaintiff in this litigation or sold to any defendant in this litigation.

**REQUEST NO. 33:**

All DOCUMENTS regarding studies and/or reports CONCERNING the amount of PFAS or PFAS-CONTAINING PRODUCTS in any TURNOUTS YOU SOLD.

**RESPONSE:** Fire-Dex objects to this request based on General and Additional Recurring Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference. Fire-Dex further objects to the phrase "amount of PFAS or PFAS-CONTAINING PRODUCTS" as vague and ambiguous. Fire-Dex also objects that this Request uses the undefined and vague phrase "studies and/or reports."

**REQUEST NO. 34:**

All COMMUNICATIONS regarding studies and/or reports CONCERNING the amount of PFAS or PFAS-CONTAINING PRODUCTS in any TURNOUTS YOU SOLD.

**RESPONSE:** Fire-Dex objects to this request based on General and Additional Recurring Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference. Fire-Dex further objects to the phrase "amount of PFAS or PFAS-CONTAINING PRODUCTS" as vague and ambiguous. Fire-Dex also objects that this Request uses the undefined and vague phrase "studies and/or reports."

**REQUEST NO. 35:**

All DOCUMENTS regarding studies and/or reports of TOXICOLOGICAL EFFECTS of PFAS, PFOA and/or PFOS conducted by YOU or on YOUR behalf.

**RESPONSE:** Fire-Dex objects to this request based on General and Additional Recurring Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference. Fire-Dex also objects that this Request uses the undefined and vague phrase "studies and/or reports."

**REQUEST NO. 36:**

All DOCUMENTS and COMMUNICATIONS between YOU and any MANUFACTURING DEFENDANT(S) CONCERNING any TOXICOLOGICAL EFFECTS of PFAS or PFAS-CONTAINING PRODUCTS in TURNOUTS.

**RESPONSE:** Fire-Dex objects to this request based on General and Additional Recurring Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference. Fire-Dex further objects that this request is duplicative of Request #7.

**REQUEST NO. 37:**

All DOCUMENTS and COMMUNICATIONS between YOU and any MANUFACTURING DEFENDANT(S) CONCERNING any HUMAN HEALTH EFFECTS of PFAS or PFAS-CONTAINING PRODUCTS in TURNOUTS.

**RESPONSE:** Fire-Dex objects to this request based on General and Additional Recurring Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference. Fire-Dex further objects that this request is duplicative of Request #7.

**REQUEST NO. 38:**

All DOCUMENTS and COMMUNICATIONS between YOU and any MANUFACTURING DEFENDANT(S) CONCERNING any adverse effects of PFAS or PFAS-CONTAINING PRODUCTS in TURNOUTS, other than the TOXICOLOGICAL and HUMAN HEALTH EFFECTS discussed above.

**RESPONSE:** Fire-Dex objects to this request based on General and Additional Recurring Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference. Fire-Dex further objects that this request is duplicative of Request #7.

**REQUEST NO. 39:**

All DOCUMENTS regarding studies or research conducted by YOU or on YOUR behalf CONCERNING the use of non-PFAS materials in the TURNOUTS YOU SOLD.

**RESPONSE:** Fire-Dex objects to this request based on General and Additional Recurring Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference. Fire-Dex also objects that this Request uses the undefined and vague terms "studies and/or reports" and "non-PFAS materials."

**REQUEST NO. 40:**

All DOCUMENTS CONCERNING the effectiveness of non-PFAS materials in the TURNOUTS YOU SOLD.

**RESPONSE:** Fire-Dex objects to this request based on General and Additional Recurring Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference. Fire-Dex also objects that this Request uses the undefined and vague terms "effectiveness" and "non-PFAS materials."

**REQUEST NO. 41:**

All COMMUNICATIONS CONCERNING the use of non-PFAS materials in the TURNOUTS YOU SOLD.

**RESPONSE:** Fire-Dex objects to this request based on General and Additional Recurring Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference. Fire-Dex also objects that the use of the undefined term "non-PFAS materials," as used in this Request, is vague and ambiguous.

**REQUEST NO. 42:**

All DOCUMENTS CONCERNING the development and adoption of warning DOCUMENTS, instructions, and/or labels on TURNOUTS containing PFAS or PFAS-CONTAINING PRODUCTS YOU SOLD.

**RESPONSE:** Fire-Dex objects to this request based on General and Additional Recurring Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference.

**REQUEST NO. 43:**

All DOCUMENTS RELATING TO any insurance coverage or request for any insurance coverage in connection with any loss, claim, damage or request relating or referring to this MDL or any other action arising from the use of TURNOUTS containing PFAS or PFAS-CONTAINING PRODUCTS YOU SOLD.

**RESPONSE:** Fire-Dex objects to this request based on General and Additional Recurring Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference.

## REQUEST NO. 44:

All DOCUMENTS RELATING TO any meetings or correspondence with, or submissions to, the National Fire Protection Association concerning TURNOUTS.

**RESPONSE:** Fire-Dex objects to this request based on General and Additional Recurring Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference. Fire-Dex also objects that this Request is overbroad and seeks information that is disproportionate to the claims and/or named plaintiffs.

## REQUEST NO. 45:

All COMMUNICATIONS between YOU and the National Fire Protection Association CONCERNING TURNOUTS.

**RESPONSE:** Fire-Dex objects to this request based on General and Additional Recurring Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference. Fire-Dex also objects that this Request is duplicative, overbroad and seeks information that is disproportionate to the claims and/or named plaintiffs.

## REQUEST NO. 46:

All COMMUNICATIONS between YOU and any MANUFACTURING DEFENDANT(S) CONCERNING the National Fire Protection Association.

**RESPONSE:** Fire-Dex objects to this request based on General and Additional Recurring Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference. Fire-Dex also objects that this Request is overbroad and seeks information that is disproportionate to the claims and/or named plaintiffs.

## REQUEST NO. 47:

All DOCUMENTS CONCERNING any financial contributions or payments from YOU to the National Fire Protection Association.

**RESPONSE:** Fire-Dex objects to this request based on General and Additional Recurring Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference.

**REQUEST NO. 48:**

All DOCUMENTS RELATING TO any meetings or correspondence with, or submissions to, the International Association of Fire Fighters concerning TURNOUTS.

**RESPONSE:** Fire-Dex objects to this request based on General and Additional Recurring Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference. Fire-Dex also objects that this Request is overbroad and seeks information that is disproportionate to the claims and/or named plaintiffs.

**REQUEST NO. 49:**

All COMMUNICATIONS between YOU and the International Association of Fire Fighters concerning TURNOUTS.

**RESPONSE:** Fire-Dex objects to this request based on General and Additional Recurring Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference. Fire-Dex also objects that this Request is overbroad and seeks information that is disproportionate to the claims and/or named plaintiffs.

**REQUEST NO. 50:**

All COMMUNICATIONS between YOU and any MANUFACTURING DEFENDANT(S) CONCERNING the International Association of Fire Fighters.

**RESPONSE:** Fire-Dex objects to this request based on General and Additional Recurring Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference. Fire-Dex also objects that this Request is overbroad and seeks information that is disproportionate to the claims and/or named plaintiffs.

**REQUEST NO. 51:**

All DOCUMENTS CONCERNING any financial contributions or payments from YOU to the International Association of Fire Fighters.

**RESPONSE:** Fire-Dex objects to this request based on General and Additional Recurring Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference. Fire-Dex also objects that this Request is overbroad and seeks information that is disproportionate to the claims and/or named plaintiffs.

**REQUEST NO. 52:**

All DOCUMENTS CONCERNING any disclosure that TURNOUTS YOU SOLD contained PFAS or PFAS-CONTAINING PRODUCTS.

**RESPONSE:** Fire-Dex objects to this request based on General and Additional Recurring Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are

incorporated herein by reference. Fire-Dex also objects that this Request uses the undefined and vague term "disclosure."

**REQUEST NO. 53:**

All DOCUMENTS RELATING TO any meetings or correspondence with, or submission to, any governmental body, trade association, industry group, or lobbying group regarding PFAS or PFAS-CONTAINING PRODUCTS.

**RESPONSE:** Fire-Dex objects to this request based on General and Additional Recurring Objections 1-13 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference.

Respectfully submitted this the 14 of July, 2022.

Kevin G. Kenneally, BBO #: 55050
Kevin.Kenneally@fmglaw.com
Freeman, Mathis & Gary, LLC
60 State Street, 6th Floor
Boston, MA 02109
(617) 962-5975

Joshua G. Ferguson, PA Bar #: 93188
Jferguson@fmglaw.com
Freeman, Mathis & Gary, LLC
1600 Market Street, Suite 1210
Philadelphia, PA 19130
(215) 279-8086
*Attorneys for Defendant, Fire-Dex, LLC*

## CERTIFICATE OF SERVICE

I certify that on July 14, 2022, a true and correct copy of the foregoing was served via electronic mail upon the following:

**Plaintiffs**

mlondon@douglasandlondon.com

pnapoli@nsprlaw.com

afffmdlproductions@baronbudd.com

ssummy@baronbudd.com

tkunkle@douglasandlondon.com

fthompson@motleyrice.com

mbessis@motleyrice.com

**Defendants**

molsen@mayerbrown.com

dring@mayerbrown.com

bduffy@duffyandyoung.com

pjones@duffyandyoung.com

david.dukes@nelsonmullins.com

lmontgomery@wc.com

jpetrosinelli@wc.com

talfermann@mayerbrown.com

afffmdlproductions@duffyandyoung.com

Joshua G. Ferguson, PA Bar #: 93188
Jferguson@fmglaw.com
Freeman, Mathis & Gary, LLC
1600 Market Street, Suite 1210
Philadelphia, PA 19130
(215) 279-8086
*Attorneys for Defendant, Fire-Dex, LLC*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| IN RE: AQUEOUS FILM-FORMING FOAMS PRODUCTS LIABILITY LITIGATION | MDL NO. 2:18-mn-2873-RMG |
| | This Document relates to: ALL CASES |

## DEFENDANT, FIRE-DEX, LLC'S OBJECTIONS TO PLAINTIFFS' FIRST SET OF INTERROGATORIES

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Defendant, Fire-Dex, LLC ("Fire-Dex") serves the below objections to Plaintiffs' First Set of Interrogatories ("Interrogatories") without waiving and fully reserving all issues of personal jurisdiction as agreed by the parties and the Court.

## GENERAL OBJECTIONS

1.      In this Aqueous Film-Forming Foams ("AFFF") Products Liability Litigation ("MDL"), the Interrogatories are objectionable for a number of reasons, including that they are premature. While the Interrogatories purport to relate to "All Cases," it is clear they pertain only to the small number of cases involving allegations that plaintiffs were injured by both AFFF and firefighter turnout gear ("Turnout Gear" or "TOG"). These Turnout Gear claims, which are alleged against Fire-Dex and around thirteen other defendants (or "TOG Defendants"), do not predicate liability on the use of or exposure to AFFF.  Accordingly, discovery, and in particular, broad sweeping discovery, into the distinctly unique TOG personal injury claims is not appropriate at this time, given the current status of the matters pending in the MDL. Fire-Dex makes these objections subject to and without waiver of its position that discovery concerning alleged injuries from turnout gear is premature given the procedural posture of the MDL and expressly reserves its right to assert additional and/or more specific objections to these and any additional or related discovery at the appropriate time.

2.      The Court has conducted a "Science Day" with respect to AFFF only. The scientific issues underlying the TOG claims, however, are fundamentally different from those underlying the AFFF claims. Turnout Gear is not one product or one component, and it is not always used under the same conditions as AFFF. Scientific questions underlying TOG personal injury claims they involve different chemicals with different properties and toxicological profiles, different possible exposure pathways (if any), different theoretical exposure concentrations (if any), and a host of other issues that distinguish TOG claims from those involving AFFF. The Science Day held for AFFF does not inform the questions of alleged exposure or adverse effects to plaintiffs claiming harm caused by turnout gear. Before discovery is authorized against the TOG Defendants, the MDL court should conduct a Science Day relative to the Turnout Gear claims so the Court would have some idea about the nature and scope of the TOG claims. It is difficult to fathom that the MDL court has authorized general liability discovery with respect to claims it does not understand and may not even know exist.

3.      Discovery against the TOG Defendants is also premature because the existing plaintiff fact sheets are not relevant to Turnout Gear. The plaintiff fact sheets focus on AFFF and contain little to no information pertaining to the TOG claims and plaintiffs have not otherwise provided information concerning their alleged use of turnout gear, such as the types or brands of turnout gear that was used or when. Accordingly, there is no information provided from which Fire-Dex can determine why Fire-Dex is named as a defendant or Fire-Dex's role in any plaintiff's alleged injuries from turnout gear. Under the procedures and protocols applicable in this MDL, broad and burdensome discovery Interrogatories should not be served until after the plaintiffs have completed fact sheets that provide useful foundation information about the TOG claims, especially given the fact that defendants are precluded from serving their own discovery Interrogatories on the TOG plaintiffs at this time. The TOG defendants are prepared to meet and confer with plaintiffs' counsel to discuss an appropriate fact sheet for plaintiffs alleging TOG claims.

4.      The Interrogatories are premature because Fire-Dex has not yet had the opportunity to demonstrate the speculative nature of the claims asserted against it, which should be dismissed by the MDL court on that basis. Before being forced to engage in broad, expansive and burdensome discovery, Fire-Dex should be given an opportunity, if it opts to do so, to seek the Rule 12 motion dismissal of the claims against it.

5.      Case Management Order No. 2 (Mar. 20, 2019) required the Plaintiffs' Executive Committee ("PEC") to "[d]evelop and propose to the Court schedules for the commencement, execution and completion of all discovery on behalf of all plaintiffs." To Fire-Dex's knowledge, the PEC has not satisfied that requirement as to any TOG claim or with respect to TOG Defendants; indeed, no TOG claim had been filed at the time CMO 2 was entered and discovery commenced against the AFFF defendants. In short, there is no indication the Court contemplated, much less authorized, broad and one-sided general discovery against the TOG Defendants.

## ADDITIONAL RECURRING OBJECTIONS

6.      Fire-Dex objects to the Interrogatories to the extent that they seek information protected from disclosure by the attorney-client privilege, work-product immunity, joint-defense privilege, common interest privilege, or any other privilege or protection afforded by applicable law. In the event of an inadvertent disclosure of privileged/protected documents, the privilege/protection shall not be waived, and such documents will be subject to claw-back and other remedies, consistent with Federal Rule of Civil Procedure 26(b)(5)(B) and Federal Rule of Evidence 502(b).

7.      Fire-Dex objects to the Interrogatories to the extent that they seek information that constitute, contain, or otherwise disclose trade secrets or other proprietary or confidential information. In the event Fire-Dex is required to produce such information in the MDL, Fire-Dex will only do so subject to an appropriate protective order. Fire-Dex further objects to producing any document that is subject to a confidentiality obligation owed by Fire-Dex to a third party.

8.      Fire-Dex objects to each and every Interrogatory that seeks the address, telephone numbers, or other personal information of individuals. In many or most cases, Fire-Dex does not possess such information, but where it may, Fire-Dex objects to any such Interrogatory as unduly invasive and unnecessarily violative of those individuals' privacy rights as well as of Fire-Dex's duty to safeguard the personal information of Fire-Dex's employees or former employees. Any current or former Fire-Dex employee should be contacted only through counsel of record in the MDL.

9.      The Interrogatories are objectionable on the grounds that they are overly broad, unduly burdensome and oppressive, particularly but not exclusively to the extent they demand

3

that Fire-Dex "identify" or "describe" "all documents, communications," persons or things listed in the Interrogatory or seek similar sweeping sets of documents or records without limitation; seek a range of documents neither relevant to any claim or defense in the TOG cases; and impose obligations on Fire-Dex that are disproportionate to the needs of genuine TOG claim discovery and/or Rule 26(b)(1).

10.    Several Interrogatories are without any temporal limitation, and the general time period specified in the Interrogatories (1970) (Instruction 8) is so early in time as to be overbroad, unduly burdensome and virtually meaningless.

11.    Fire-Dex objects that several Interrogatories are without any geographic limitation and therefore seek information that is not relevant to any claim or defense in this litigation.

12.    Fire-Dex objects that several Interrogatories call for information about products not used by or associated with any plaintiff in this litigation or sold to any defendant in this litigation and, therefore, seek information that is not relevant to any claim or defense in this litigation.

13.    Fire-Dex objects to any Interrogatory to the extent that it improperly assumes facts, specifically, that TURNOUTS or PFAS-CONTAINING PRODUCTS are associated with adverse HUMAN HEALTH or TOXICOLOGICAL EFFECTS, and expressly rejects any such suggestion.

14.    Fire-Dex objects to Plaintiffs' Discovery to the extent that it seeks documents that are not subject to Fire-Dex's ownership, possession, custody, or control. In addition, some Interrogatories seek information that is publicly available and, where appropriate, Fire-Dex refers to documents available to Plaintiffs through public sources.

15.    Fire-Dex expressly reserves all rights, including, in particular but not exclusively, the right to respond to any Interrogatory, as appropriate, by "(1) specifying the records that must be reviewed in sufficient detail to enable [Plaintiffs] to locate and identify them as readily as the responding party could; and (2) giving [Plaintiffs] a reasonable opportunity to examine and audit the records and to make copies, compilations, abstracts, or summaries." Federal Rule of Civil Procedure 33(d).

## OBJECTIONS TO PLAINTIFFS' DEFINITIONS AND INSTRUCTIONS

Fire-Dex objects as specified below to the Definitions and Instructions in the Interrogatories. Documents may be withheld on the basis of these objections.

1.     Fire-Dex objects to each definition and each instruction to the extent that it purports to impose on Fire-Dex obligations beyond those set out in the Federal Rules of Civil Procedure or any existing CMO, and therefore causes the Interrogatories to be overly broad, unduly burdensome, or requiring the production of documents or disclosure of information that is not reasonably accessible. By way of example only, Fire-Dex objects to Instruction Nos. 4 and 7, which purport to impose privilege log obligations beyond those required by Federal Rule of Civil Procedure 26(b)(5)(A).

2.     Fire-Dex objects to each definition that is unintelligible, vague or ambiguous, or would so expand the scope of an Interrogatory as to impose an unreasonable burden or to seek information not relevant to the claims or defenses relative to the TOG personal injury claims. Examples of such problematic definitions include "Communications," "Internal Communications," "Plaintiffs," "Relating To" or "Concerning," and "You, "Your," and "Defendant."

3.     A number of the definitions are contradictory and render individual Interrogatories unintelligible. For example, the terms "Sale," "Sell," and "Sold" are limited to the sale of "Turnouts," but then those terms are used in Interrogatories that do not pertain to Turnouts. The definitions of "Manufacturing Defendant(s)," "PFAS," "PFOA," "PFOS," "PFAS-Containing Products," "Produce," "Turnout Defendant," and "Turnouts" are vague, ambiguous, and/or incomplete.

4.     Fire-Dex objects to the definitions of "Adverse Effects," "Environmental Effect(s)," "Human Health Effect," and "Toxicological Effect(s) or Toxicological Impact(s)," as vague, ambiguous, and unsupported in science, medicine, law, and/or common usage.

5.     Fire-Dex will construe the terms used in the Interrogatories based on their ordinary meaning and based on the facts that are relevant to the TOG claims and defenses. Specifically:

        a.     Fire-Dex will construe the term "ADVERSE EFFECTS" to refer to harmful or negative consequences that are presently known to Fire-Dex, if any.

5

b.      Fire-Dex will construe the term "PFAS-CONTAINING PRODUCTS" to refer to products presently known to Fire-Dex to be made with material that is a PFAS and/or contain a residual of one or more PFAS as a component, as that term is defined below.

c.      Fire-Dex will construe the term "PFAS" to refer to the per- and polyfluoroalkyl substances that are or may be used as a component in certain products produced by Fire-Dex and sold in and for use in the United States. By construing this definition to correspond to multiple PFAS with different properties, Fire-Dex does not concede that any specific PFAS is present in TOG used by or associated with any plaintiff, or that the same specific PFAS chemicals are present in all TOG or any component thereof.

d.      Fire-Dex will construe the term "PFOA" to refer to the chemical compound perfluorooctanoic acid.

e.      Fire-Dex will construe the term "PFOS" to refer to the chemical compound perfluorooctanesulfonic acid.

f.      Fire-Dex objects that the term "TURNOUT DEFENDANTS" is not defined and is therefore vague and ambiguous. Fire-Dex will construe the term "TURNOUT DEFENDANTS" to mean any current defendant in this MDL that currently or formerly produced or manufactured TURNOUTS.

6.      Fire-Dex objects to each definition and each instruction that purports to require a legal conclusion regarding the relationship between certain persons and/or entities; or may encompass relationships of which Fire-Dex is not aware and not obligated to render.

7.      Fire-Dex objects to each definition and each instruction, including but not limited to Instructions Nos. 4 and 5, that is inconsistent with the protocol set forth in the MDL court's ESI Order.

8.      Any eventual disclosure by Fire-Dex will be on a rolling basis, subject to Fire-Dex's obligations to supplement, to include responsive information identified and disclosed only after a reasonable search and disclosure effort (and subject to all applicable objections). Any such production will be made pursuant to the protective order in the MDL and Federal Rule of Civil Procedure ("FRCP") 33.

## INTERROGATORIES

## INTERROGATORY NO. 1

Identify each PERSON who has supplied information used in answering these interrogatories and specify the interrogatories for which each PERSON is responsible.

## ANSWER NO. 1

Fire-Dex objects to this Interrogatory based on General Objections 1-15 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference.

## INTERROGATORY NO. 2

Identify all TURNOUTS containing PFAS or PFAS-CONTAINING PRODUCTS that YOU SOLD to any MANUFACTURING DEFENDANT(S), stating for each: the trade name under which it was SOLD, the number and dollar value of SALES to each MANUFACTURING DEFENDANT(S), and the date(s) when it was SOLD.

## ANSWER NO. 2

Fire-Dex objects to this Interrogatory based on General Objections 1-15 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference.

## INTERROGATORY NO. 3

Identify the specific PFAS or PFAS-CONTAINING PRODUCTS present in YOUR TURNOUTS.

## ANSWER NO. 3

Fire-Dex objects to this Interrogatory based on General Objections 1-15 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference.

## INTERROGATORY NO. 4

Identify the names of all distributors that received (by purchase, delivery, or otherwise) TURNOUTS containing PFAS or PFAS-CONTAINING PRODUCTS from YOU from 1970 to present, including the quantity of TURNOUTS YOU delivered, tendered, and/or SOLD, as well as the name or type of the TURNOUTS YOU delivered, tendered, and/or SOLD.

## ANSWER NO. 4

Fire-Dex objects to this Interrogatory based on General Objections 1-15 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference.

**INTERROGATORY NO. 5**

Identify the entity or entities from which YOU or anyone on YOUR behalf purchased PFAS or PFAS-CONTAINING PRODUCTS for use in YOUR TURNOUTS.

**ANSWER NO. 5**

Fire-Dex objects to this Interrogatory based on General Objections 1-15 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference.

**INTERROGATORY NO. 6**

For each entity identified in response to INTERROGATORY NO. 5, identify the PFAS or PFAS-CONTAINING PRODUCTS purchased, the volume and dollar value purchased, and the dates of purchase.

**ANSWER NO. 6**

Fire-Dex objects to this Interrogatory based on General Objections 1-15 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference.

**INTERROGATORY NO. 7**

Identify all studies, analyses, tests, or reports YOU have ever conducted or contracted with another PERSON to conduct on YOUR behalf CONCERNING either the presence or the amount of PFAS or PFAS-CONTAINING PRODUCTS in YOUR TURNOUTS.

**ANSWER NO. 7**

Fire-Dex objects to this Interrogatory based on Objections 1-15 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference. Fire-Dex also objects to the undefined and vague phrase "studies, analyses, tests or reports."

**INTERROGATORY NO. 8**

Identify all COMMUNICATIONS YOU have had with any MANUFACTURING DEFENDANT(S) CONCERNING either the presence or the amount of PFAS or PFAS-CONTAINING PRODUCTS in YOUR TURNOUTS.

**ANSWER NO. 8**

Fire-Dex objects to this Interrogatory based on Objections 1-15 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference. Fire-Dex also objects to this Interrogatory as overbroad and seeking information that is disproportionate to the claims and/or named plaintiffs.

**INTERROGATORY NO. 9**

Identify all COMMUNICATIONS YOU have had with any trade or industry organization CONCERNING either the presence or the amount of PFAS or PFAS-CONTAINING PRODUCTS in YOUR TURNOUTS.

## ANSWER NO. 9

Fire-Dex objects to this Interrogatory based on Objections 1-15 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference. Fire-Dex also objects to this Interrogatory as overbroad and seeking information that is disproportionate to the claims and/or named plaintiffs.

## INTERROGATORY NO. 10

Identify all COMMUNICATIONS YOU have had with either the National Fire Protection Association or the International Association of Fire Fighters CONCERNING either the presence or the amount of PFAS or PFAS-CONTAINING PRODUCTS in YOUR TURNOUTS.

## ANSWER NO. 10

Fire-Dex objects to this Interrogatory based on Objections 1-15 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference. Fire-Dex also objects to this Interrogatory as overbroad and seeking information that is disproportionate to the claims and/or named plaintiffs.

## INTERROGATORY NO. 11

Identify all information YOU provided to any purchaser or user of YOUR TURNOUTS containing PFAS or PFAS-CONTAINING PRODUCTS CONCERNING the formulation or design of YOUR TURNOUTS.

## ANSWER NO. 11

Fire-Dex objects to this Interrogatory based on Objections 1-15 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference. Fire-Dex also objects to this Interrogatory as overbroad and seeking information that is disproportionate to the claims and/or named plaintiffs.

## INTERROGATORY NO. 12

Identify all of the ways in which YOU informed purchasers or users of YOUR TURNOUTS containing PFAS or PFAS-CONTAINING PRODUCTS to ensure they were HANDLED and disposed of properly.

## ANSWER NO. 12

Fire-Dex objects to this Interrogatory based on Objections 1-15 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference. Fire-Dex also objects to this Interrogatory as overbroad and seeking information that is disproportionate to the claims and/or named plaintiffs.

**INTERROGATORY NO. 13**

Describe any changes YOU made to the HANDLING and/or disposal methods YOU recommended to purchasers or users of YOUR TURNOUTS containing PFAS or PFAS-CONTAINING PRODUCTS from 1970 to present.

**ANSWER NO. 13**

Fire-Dex objects to this Interrogatory based on Objections 1-15 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference. Fire-Dex also objects to this Interrogatory as overbroad and seeking information that is disproportionate to the claims and/or named plaintiffs.

**INTERROGATORY NO. 14**

Identify all DOCUMENTS, instructions, training materials, or other information YOU provided to purchasers or users of YOUR TURNOUTS containing PFAS or PFAS-CONTAINING PRODUCTS CONCERNING the HANDLING and/or disposal of YOUR TURNOUTS.

**ANSWER NO. 14**

Fire-Dex objects to this Interrogatory based on Objections 1-15 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference. Fire-Dex also objects to this Interrogatory as overbroad and seeking information that is disproportionate to the claims and/or named plaintiffs. Fire-Dex also objects that the phrase "ADVERSE EFFECTS of PFAS or PFAS-CONTAINING PRODUCTS, other than the TOXICOLOGICAL and HUMAN HEALTH EFFECTS discussed above," is vague, ambiguous, overly broad and unintelligible.

**INTERROGATORY NO. 15**

Identify the PERSON most knowledgeable about the DOCUMENTS, instructions, training materials, or other information YOU provided to purchasers or users of YOUR TURNOUTS containing PFAS or PFAS-CONTAINING PRODUCTS CONCERNING the HANDLING and/or disposal of YOUR TURNOUTS.

**ANSWER NO. 15**

Fire-Dex objects to this Interrogatory based on Objections 1-15 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference. Fire-Dex also objects to this Interrogatory as overbroad and seeking information that is disproportionate to the claims and/or named plaintiffs.

**INTERROGATORY NO. 16**

Identify all warnings or information YOU provided to purchasers or users of YOUR TURNOUTS containing PFAS or PFAS-CONTAINING PRODUCTS about any TOXICOLOGICAL EFFECTS of PFAS.

**ANSWER NO. 16**

Fire-Dex objects to this Interrogatory based on Objections 1-15 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference.

**INTERROGATORY NO. 17**

Identify all warnings or information YOU provided to purchasers or users of YOUR TURNOUTS containing PFAS or PFAS-CONTAINING PRODUCTS about any HUMAN HEALTH EFFECTS of PFAS.

**ANSWER NO. 17**

Fire-Dex objects to this Interrogatory based on Objections 1-15 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference.

**INTERROGATORY NO. 18**

Identify all warnings or information YOU provided to purchasers or users of YOUR TURNOUTS containing PFAS or PFAS-CONTAINING PRODUCTS about any ADVERSE EFFECTS of PFAS, other than the TOXICOLOGICAL and HUMAN HEALTH EFECTS discussed above.

**ANSWER NO. 18**

Fire-Dex objects to this Interrogatory based on Objections 1-15 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference.

**INTERROGATORY NO. 19**

Are YOU aware of or have YOU ever conducted or contracted with another PERSON to conduct any studies, reports, and/or surveys to investigate the TOXICOLOGICAL EFFECTS of any PFAS present in TURNOUTS?

**ANSWER NO. 19**

Fire-Dex objects to this Interrogatory based on Objections 1-15 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference. Fire-Dex also objects to the undefined and vague phrase "studies, reports, and/or surveys."

**INTERROGATORY NO. 20**

11

If YOUR response to INTERROGATORY NO. 19 is in the affirmative, identify the study, who conducted the study, the results of the study, any PERSONS with knowledge of relevant facts about the study, and all DOCUMENTS RELATING TO or referencing the study.

**ANSWER NO. 20**

Fire-Dex objects to this Interrogatory based on Objections 1-15 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference. Fire-Dex further objects that the phrase "PERSONS with knowledge of relevant facts" is vague, ambiguous and overbroad.

**INTERROGATORY NO. 21**

For each TOXICOLOGICAL EFFECT YOU are aware of that is associated with the PFAS or PFAS-CONTAINING PRODUCTS present in YOUR TURNOUTS, identify the TOXICOLOGICAL EFFECT, the date YOU first became aware of that TOXICOLOGICAL EFFECT, the source of that knowledge, and any DOCUMENTS RELATING TO or referencing that TOXICOLOGICAL EFFECT.

**ANSWER NO. 21**

Fire-Dex objects to this Interrogatory based on Objections 1-15 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference.

**INTERROGATORY NO. 22**

For each TOXICOLOGICAL EFFECT identified in response to INTERROGATORY NO. 21, identify the PERSON most knowledgeable about that TOXICOLOGICAL EFFECT and YOUR awareness of it.

**ANSWER NO. 22**

Fire-Dex objects to this Interrogatory based on Objections 1-15 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference. Fire-Dex further objects that this Interrogatory prematurely calls for the identification of a person most knowledgeable.

**INTERROGATORY NO. 23**

Are YOU aware of or have YOU ever conducted or contracted with another PERSON to conduct any studies, reports and/or surveys to investigate the HUMAN HEALTH EFFECTS of any PFAS present TURNOUTS?

**ANSWER NO. 23**

Fire-Dex objects to this Interrogatory based on Objections 1-15 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference. Fire-Dex also objects to the undefined and vague phrase "studies, reports, and/or surveys."

## INTERROGATORY NO. 24

If YOUR response to INTERROGATORY NO. 23 is in the affirmative, identify the study, who conducted the study, the results of the study, any PERSONS with knowledge of relevant facts about the study, and all DOCUMENTS RELATING TO or referencing the study.

## ANSWER NO. 24

Fire-Dex objects to this Interrogatory based on Objections 1-15 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference. Fire-Dex also objects to the undefined and vague phrase "study" and further objects that the phrase "PERSONS with knowledge of relevant facts" is vague, ambiguous and overbroad.

## INTERROGATORY NO. 25

For each HUMAN HEALTH EFFECT YOU are aware of that is associated with the PFAS or PFAS-CONTAINING PRODUCTS present in YOUR TURNOUTS, identify the HUMAN HEALTH EFFECT, the date YOU first became aware of that HUMAN HEALTH EFFECT, the source of that knowledge, and any DOCUMENTS RELATING TO or referencing that HUMAN HEALTH EFFECT.

## ANSWER NO. 25

Fire-Dex objects to this Interrogatory based on Objections 1-15 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference.

## INTERROGATORY NO. 26

For each HEALTH EFFECT identified in response to INTERROGATORY NO. 25, identify the PERSON most knowledgeable about that HEALTH EFFECT and YOUR awareness of it.

## ANSWER NO. 26

Fire-Dex objects to this Interrogatory based on Objections 1-15 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference. Fire-Dex further objects that this Interrogatory prematurely calls for the identification of a person most knowledgeable. Further, Plaintiffs have not obtained a stipulation or order permitting service of more than 25 interrogatories under Fed. R. Civ. P. 33(a)(1).

## INTERROGATORY NO. 27

Identify all warnings or information YOU provided to purchasers of YOUR TURNOUTS containing PFAS or PFAS-CONTAINING PRODUCTS, including the date each such warning was given, CONCERNING any ADVERSE EFFECTS of PFAS, other than the TOXICOLOGICAL and HUMAN HEALTH EFECTS discussed above.

**ANSWER NO. 27**

Fire-Dex objects to this Interrogatory based on Objections 1-15 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference. Fire-Dex also objects that the phrase "ADVERSE EFFECTS of PFAS . . . other than the TOXICOLOGICAL and HUMAN HEALTH EFFECTS discussed above" is vague, ambiguous, overly broad and unintelligible. Further, Plaintiffs have not obtained a stipulation or order permitting service of more than 25 interrogatories under Fed. R. Civ. P. 33(a)(1).

**INTERROGATORY NO. 28**

Identify any and all alternatives to PFAS or PFAS-CONTAINING PRODUCTS YOU investigated or otherwise considered for use in any TURNOUTS YOU SOLD.

**ANSWER NO. 28**

Fire-Dex objects to this Interrogatory based on Objections 1-15 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference. Fire-Dex further objects to the undefined, overbroad, and vague terms "TURNOUTS," "alternatives," "investigated" and "considered." Further, Plaintiffs have not obtained a stipulation or order permitting service of more than 25 interrogatories under Fed. R. Civ. P. 33(a)(1).

**INTERROGATORY NO. 29**

Identify any and all research YOU conducted or reviewed CONCERNING alternatives to PFAS or PFAS-CONTAINING PRODUCTS for use in any TURNOUTS YOU SOLD.

**ANSWER NO. 29**

Fire-Dex objects to this Interrogatory based on Objections 1-15 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference. Fire-Dex further objects to the undefined and vague terms "TURNOUTS" and "alternatives." Further, Plaintiffs have not obtained a stipulation or order permitting service of more than 25 interrogatories under Fed. R. Civ. P. 33(a)(1).

**INTERROGATORY NO. 30**

Describe how and when YOU became aware that TURNOUTS YOU SOLD contained PFAS or PFAS-CONTAINING PRODUCTS.

**ANSWER NO. 30**

Fire-Dex objects to this Interrogatory based on Objections 1-15 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference. Fire-Dex also objects that this Interrogatory uses the undefined, vague and ambiguous term "alternatives." Further, Plaintiffs have not obtained a stipulation or order permitting service of more than 25 interrogatories under Fed. R. Civ. P. 33(a)(1).

**INTERROGATORY NO. 31**

If YOU are aware, identify when YOU became aware of the TOXICOLOGICAL EFFECTS of PFAS or PFAS-CONTAINING PRODUCTS.

**ANSWER NO. 31**

Fire-Dex objects to this Interrogatory based on Objections 1-15 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference. Further, Plaintiffs have not obtained a stipulation or order permitting service of more than 25 interrogatories under Fed. R. Civ. P. 33(a)(1).

**INTERROGATORY NO. 32**

If YOU are aware, identify when YOU became aware of the HUMAN HEALTH EFECTS of PFAS or PFAS-CONTAINING PRODUCTS.

**ANSWER NO. 32**

Fire-Dex objects to this Interrogatory based on Objections 1-15 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference. Further, Plaintiffs have not obtained a stipulation or order permitting service of more than 25 interrogatories under Fed. R. Civ. P. 33(a)(1).

**INTERROGATORY NO. 33**

Identify any government law, regulation, or rule that requires or required the use of PFAS or PFAS-CONTAINING PRODUCTS in TURNOUTS.

**ANSWER NO. 33**

Fire-Dex objects to this Interrogatory based on Objections 1-15 and Objections to Plaintiffs' Definitions and Instructions 1-8, which are incorporated herein by reference. Fire-Dex also objects to the extent this Interrogatory calls for information from public sources that are equally available to Plaintiffs as to Fire-Dex. Further, Plaintiffs have not obtained a stipulation or order permitting service of more than 25 interrogatories under Fed. R. Civ. P. 33(a)(1).

Respectfully submitted this the 14 of July, 2022.

_____
Kevin G. Kenneally, BBO #: 55050
Kevin.Kenneally@fmglaw.com
Freeman, Mathis & Gary, LLC
60 State Street, 6th Floor
Boston, MA 02109
(617) 962-5975


_____
Joshua G. Ferguson, PA Bar #: 93188
Jferguson@fmglaw.com
Freeman, Mathis & Gary, LLC
1600 Market Street, Suite 1210
Philadelphia, PA 19130
(215) 279-8086
*Attorneys for Defendant, Fire-Dex, LLC*

<u>**CERTIFICATE OF SERVICE**</u>

I certify that on July 14, 2022, a true and correct copy of the foregoing was served via electronic mail upon the following:

**Plaintiffs**

mlondon@douglasandlondon.com

pnapoli@nsprlaw.com

afffmdlproductions@baronbudd.com

ssummy@baronbudd.com

tkunkle@douglasandlondon.com

fthompson@motleyrice.com

mbessis@motleyrice.com

**Defendants**

molsen@mayerbrown.com

dring@mayerbrown.com

bduffy@duffyandyoung.com

pjones@duffyandyoung.com

david.dukes@nelsonmullins.com

lmontgomery@wc.com

jpetrosinelli@wc.com

talfermann@mayerbrown.com

afffmdlproductions@duffyandyoung.com

Joshua G. Ferguson, PA Bar #: 93188
Jferguson@fmglaw.com
Freeman, Mathis & Gary, LLC
1600 Market Street, Suite 1210
Philadelphia, PA 19130
(215) 279-8086
*Attorneys for Defendant, Fire-Dex, LLC*