**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| IN RE: AQUEOUS FILM-FORMING FOAMS PRODUCTS LIABILITY LITIGATION | MDL No. 2:18-mn-2873-RMG |
| | *This Document Relates Only to Civil Action Nos.:* |
| | 2:21-cv-00366-RMG |
| | 2:21-cv-01572-RMG |
| | 2:21-cv-01573-RMG |
| | 2:22-cv-00710-RMG |
| | 2:22-cv-00711-RMG |
| | 2:22-cv-01303-RMG |
| | 2:22-cv-01589-RMG |
| | 2:22-cv-01590-RMG |
| | 2:22-cv-02473-RMG |

**JOINT OBJECTION AND OPPOSITION TO PLAINTIFFS'
MOTION TO COMPEL DISCOVERY FROM THE TOG DEFENDANTS**

Defendants Allstar Fire Equipment, Fire-Dex, LLC, Globe Manufacturing Company LLC, Honeywell Safety Products USA, Inc., Lion Group, Inc., Mallory Safety and Supply LLC, Mine Safety Appliances Company, LLC, Municipal Emergency Services, Inc., PBI Performance Products, Inc., Southern Mills Inc. *dba* TenCate Protective Fabrics, Stedfast USA Inc., and W. L. Gore & Associates Inc.[1] (collectively, the "Turnout Gear" or "TOG" Defendants), pursuant to Rules 26 and 37 of the Federal Rules of Civil Procedure and Local Civil Rules 7.02, 7.04, and 37.01, jointly object, respond to, and oppose the Motion to Compel Discovery from the TOG Defendants (the "Motion") (DE 2604) filed by the Plaintiffs' Executive Committee (the "PEC" or "Plaintiffs"). In the event this Court rules that Plaintiffs' discovery concerning TOG Claims ("Discovery") may move forward, the TOG Defendants respectfully request that the parties be

---

[1]  These Defendants have all been served with written discovery relating to claims that firefighters have been injured by turnout gear containing fabrics containing a per- or poly-fluoroalkyl substance ("PFAS"). These claims will be referred to as "TOG Claims."

ordered to discuss and negotiate a cohesive, coordinated approach to the Discovery in these nine cases, which assert TOG Claims.

## I.    OBJECTION

Rule 37(a)(1) requires all motions to "include a certification that the movant has in good faith conferred or attempted to confer with the . . . party failing to make discovery in an effort to obtain it without court action."  Local Rule 7.02 similarly requires an affirmation of counsel to that effect.  Plaintiffs' Motion fails to include such a certification or affirmation; *nor could it*.

The TOG Defendants have made repeated requests to hold meet and confer conferences with Plaintiffs to appropriately narrow the scope of Plaintiffs' 30 interrogatories and 55 demands for production (to be clear, Plaintiffs separately served each TOG Defendant with materially identical discovery requests directed to that TOG Defendant).  On August 10, 2022, Plaintiffs joined a single forty-minute telephone call where the TOG Defendants outlined their concerns. On that introductory call, Plaintiffs' counsel merely stated that they "needed to check with others."  Twenty-one days after the introductory call, Plaintiffs finally responded to the TOG Defendants in writing, rejecting outright every concern articulated by the TOG Defendants and proposing no compromise whatsoever to reasonably limit Plaintiffs' sweeping discovery demands in the nine cases with TOG Claims.  (DE 2604-14, Ex. M.)  Plaintiffs have refused all subsequent requests to meet and confer.  (DE 2604-16, Ex. O.)  An introductory meet and confer of forty minutes followed by two letters and an email from Plaintiffs (DE 2604-11, Ex. J; 2604-14, Ex. M; 2604-15, Ex. N), hardly constitutes compliance with the applicable rules, especially in such a massive MDL in which recently added TOG Claims encompass an entirely new industry.

Not only does Plaintiffs' Motion fail to satisfy L.R. 7.02 and Rule 37(a)(1), but it is also untimely.  Local Rule 37.1(A) requires that motions to compel discovery be filed within twenty-

one (21) days after receipt of the discovery response to which the motion to compel is directed. The TOG Defendants requested to meet and confer on July 8, 2022, the date their responses were served. Plaintiffs waited two weeks to respond to that request (until July 22, 2022), and then did so only by letter. This Court has "discretion to consider an untimely motion to compel if the movant offers an acceptable explanation for the motion's tardiness." *U.S. ex rel. Becker v. Westinghouse Savannah River Co.*, 305 F.3d 284, 290 (4th Cir. 2002) (brackets removed from quote). In this instance, however, Plaintiffs' intransigence and refusals to engage in a productive meet and confer process do not warrant the exercise of that discretion in their favor.

As such, the TOG Defendants respectfully request that the Court deny Plaintiffs' Motion and order the parties to meet and confer constructively and in good faith. *Waters at Magnolia Bay, LP v. Vaughn & Melton Consulting Eng'rs, Inc.*, No. 2:20-cv-2546-RMG, 2021 WL 5890847 (D.S.C. May 10, 2021) (denying plaintiff's motion to compel for failure to comply with L.R. 7.02).

In the event this Court does consider the Motion despite Plaintiffs' non-compliance with the applicable rules, the TOG Defendants respond below.

## II.    **INTRODUCTION**

The Court recently wrote: "This multi-district litigation concerns the presence of PFOA (perfluorooctanoic acid) and PFOS (perfluorooctane sulfonic acid), both types of per-and poly-fluoroalkyl substances ("PFAS"), in aqueous film forming foams ('AFFF')." (DE 2601, at 1.) In 2019, the Court described this MDL as "the most complex ***environmental*** cases . . . pending in the country." (Hearing Tr., Jul. 26, 2019, DE 168, at 5:3-7, pertinent pages attached as Ex. A-1, emphasis added.[2]) The discovery at issue here does not concern AFFF at all, nor does it concern any alleged "environmental injury." Plaintiffs style their Motion as relating to "All

---

[2] *See* Declaration of James F. Bogan III ("Bogan Decl.") attached as Exhibit A.

Cases," but it affects only nine of the MDL's 3,100+ cases and approximately only 120 of the MDL's over 4,000 plaintiffs.

The TOG Claims in these nine lawsuits involve (1) different products (not AFFF), (2) a completely new industry and supply chain (the turnout gear industry), (3) a different alleged mechanism of exposure (not water consumption or exposure), and (4) purported reliance by Plaintiffs on a handful of recently published scientific studies – the scientific conclusions about which even Plaintiffs' counsel concede are "still to be developed." (DE 2604-12, at 6, fn. 14.) The earliest lawsuit asserting a TOG Claim appears to have entered the MDL in February 2021, the most recent on August 2, 2022.

Also, the product liability personal injury cases asserting TOG Claims make "either and/or" claims – **either** the firefighter sustained injury from exposure to firefighting foam **and/or** the firefighter sustained injury from wearing turnout gear that contained a fabric or lining alleged to have been treated with a PFAS substance. TOG Claims are not asserted in most of the thousands of cases alleging injury caused by firefighting foam.

Notwithstanding the significant differences between the nine cases alleging TOG Claims and more than three thousand other cases currently in the MDL, Plaintiffs are demanding sweeping discovery on a nationwide basis over a period of seventy years from each of the twelve TOG Defendants. These demands ignore the long-established processes in the MDL that were followed for all other MDL defendants. Those processes do not only maintain an appropriate level of oversight and control over the proper timing and scope of discovery concerning AFFF, they also afforded those defendants an opportunity to learn basic information about the plaintiffs' allegations relating to AFFF so that discovery could be appropriately targeted to exchange the most important information on issues central to the cases. In contrast, the TOG Defendants have almost no information about the Plaintiffs' turnout gear claims – including, by way of example

only, the type of turnout gear they supposedly wore. And critically, the TOG Defendants have no means of discovering it, or other key information, due to CMO 5's bar on plaintiff discovery. No TOG Defendant should be compelled to respond to sweeping discovery into every nook and cranny of its nationwide TOG business over the past seventy years before it can even ask, let alone verify, that these Plaintiffs ever worked with or around a product that the TOG Defendant manufactured, distributed, or sold.

From their very first letter to Plaintiffs on July 8, 2022, the TOG Defendants have sought to meet and confer on numerous objections to the Plaintiffs' discovery requests. (*See, e.g.*, DE 2604-10, Ex. I, at 2 ("The TOG Defendants would welcome the opportunity to meet and confer on these Objections.").) The TOG Defendants made it clear that "in addition to the Objections," they also identified "a broader set of issues" that would substantially impact the scope of the Discovery, including a TOG-specific PFS and a TOG-specific science day. (*Id.*) Plaintiffs, however, would hear nothing of these concerns; Plaintiffs participated in a single telephonic meet and confer. Twenty-one days later, they insisted that the TOG Defendants are required to answer the Discovery in full and with no exceptions, limitations, tailoring, or restraints. (DE 2604-14, Ex. M.) Such an extreme position – especially given that the TOG Defendants are themselves prohibited from conducting any discovery – is neither condoned by the Federal Rules nor based on any practice or procedure in this MDL to date.

Plaintiffs' Motion should be denied. This Court should issue an order requiring the parties to designate a process that is bilateral and balanced in nature, reflects the unique aspects involved in these TOG cases, and is phased in a methodical and intentional manner to facilitate the exchange of key information. The TOG Defendants should not be required to submit to an unjustified nationwide and multi-decade fishing-expedition predicated solely on the scientifically weak TOG Claims asserted in the nine lawsuits at issue.

### III.     **STATEMENT OF FACTS**

The TOG Claims relate to a separate and unique group of products in the MDL, namely the jackets, pants, hoods, and certain other protective clothing (or components thereof) that are referred to in the fire protection industry as "turnout gear."  Turnout gear protects firefighters from the extreme heat, moisture, and contaminated conditions they face on the job. Despite being different companies and separate Defendants with independent counsel and points of view, the TOG Defendants, in the interest of efficiency, have agreed to this joint submission since all are impacted by Plaintiffs' discovery.

Since the inception of the AFFF MDL, the Court has expressed its desire to avoid doing "massive discovery" that would be unnecessary "if we had just answered a question early." (Hearing Tr., Feb. 25, 2019, DE 35, at 40:15-19, attached as Ex. A-2.) When faced with the mounting AFFF environmental claims, the Court sought to identify issues having the broadest applicability because "it helps carve and shape the litigation as it will ultimately become" and contribute to the overall management of the entire MDL.  (*Id.*, at 46:8-12.)[3]  At the same time, all TOG Defendants are aware that the Court expected "robust discovery" from Defendants to occur with "no privileged characters."  (*Id.*, at 19.)  However, and as explained below, discovery from other MDL Defendants has in fact been conditioned on and part of a balanced and mutual process.

### A.     **The Plaintiffs' Discovery Requests, Their Context, and Their Scope.**

---

[3]  Plaintiffs criticize the TOG Defendants' September 13, 2022, letter (2604-16, Ex. O, at 2) (which paraphrased the TOG's Defendants' initial July 8, 2022, letter), that focused on discovery activities that would "materially advance the entire MDL."  (Motion, 2604, at Page 10 of 19). But these are precisely the issues that the Court discussed with the parties.  Put another way, the TOG Defendants were (and are) asking the Plaintiffs to explain how serving massive discovery on twelve defendants in nine lawsuits pending only in three states is going to "move the battleship."  (Hearing Tr., Jul. 26, 2019, DE 168, at 20:6-7, Ex. A-1.)

At the outset, Plaintiffs make no showing under the Federal Rules or Local Rule 7.04 that "explain[s] why the discovery should be had in the context of the action." Plaintiffs' position is essentially, "we served it, they must answer it." Although there are thousands of cases within this "AFFF" MDL, the Discovery served at issue relates to TOG Claims asserted in only nine lawsuits pending in three states. In that context, the 30 interrogatories and 55 demands for documents that effectively seek all information and records about the TOG Defendants' businesses are untargeted, unjustifiable, facially burdensome, and disproportionate. (*See* Hearing Tr., Sept. 23, 2022, at 9, Ex. A-3 (urging the parties to not unduly complicate the MDL on things remote to the AFFF process).)

Plaintiffs assert, without support, that the Discovery served on the TOG Defendants is "similar in scope and substance," "largely similar," and "largely mirror[s]" the "Master Set of Discovery Requests that the PEC previously propounded on AFFF defendants in this MDL" in June 2019. (Motion, DE 2604, Page 2 of 19[4], Page 4 of 19; and DE 2604-12, at 28.)[5] But Plaintiffs improperly demand robust *unilateral* discovery and now create a false equivalency. AFFF discovery was served only after the parties negotiated mutual fact sheets, held a Science Day for the Court, and discussed and developed an organized and stepwise process for discovery with the Court. None of that has happened here.

The PEC does not dispute that it seeks nationwide discovery over a seventy-year period.[6] Plaintiffs also will not dispute that the nine filed cases asserting TOG Claims involve only

---

[4] Citations to the Motion itself (not its exhibits) refer only to the ECF page numbers (in the top-right corner) since the typewritten document numbers of the Motion (bottom-centered) appear to be in error.

[5] In doing so, the PEC essentially argues that "no one else has ever objected." Such a retort, however, is of no moment since no other defendant can waive the rights of the TOG Defendants. Nor, as explained, were those Defendants similarly situated to the TOG Defendants.

[6] *See* 2604-2 at ECF Pages 9, 130, and 161 of 308, Instruction 13.

firefighters from fire departments identified in specific regions in three states. Plaintiffs' 30 interrogatories and 55 requests for production are facially overbroad in their scope. The following are representative examples:

### REQUEST FOR PRODUCTION NO. 6
All DOCUMENTS CONCERNING any contract and/or agreement between YOU and any MANUFACTURING DEFENDANT(S) for the SALE of TURNOUTS.

### REQUEST FOR PRODUCTION NO. 12
All DOCUMENTS CONCERNING the number and dollar value of sales of each TURNOUT SKU YOU SOLD.

### REQUEST FOR PRODUCTION NO. 13
All purchase agreements, purchase contracts, invoices, supply contracts, receipts, or other documentation evidencing your sale, manufacture and/or distribution of YOUR TURNOUTS.

### REQUEST FOR PRODUCTION NO. 14
All DOCUMENTS CONCERNING any contracts and/or agreements that YOU had with suppliers, wholesalers, distributors, or any other entity that sold YOUR TURNOUTS.

### REQUEST FOR PRODUCTION NO. 15
All purchase orders, invoices, contracts, and/or other related materials that provide information about the sale, manufacture, and/or distribution of YOUR TURNOUTS, including but not limited to the dates when YOUR TURNOUTS were sold, the quantity YOU included in each shipment, and the amount (in dollars) YOU were paid for each shipment.

(DE 2604-2, at ECF Page 101-102 of 308.) These and other RFPs effectively seek all documents about the TOG Defendants' nationwide or even international TOG businesses - everything. (DE 2604-2, RFP 11-12.) *Oppenheimer v. Williams*, No. 2:20-cv-4219-DCN, 2021 WL 4086197 (D. S.C. Sept. 8, 2021) ("[A] request for all documents 'relating to' a subject is usually subject to criticism as overbroad since . . . all documents 'relate' to all others in some remote fashion," *citing Carter v. Archdale Police Dep't*, No. 1:13CV613, 2014 WL 1774471, at *5 (M.D.N.C. May 2, 2014).) The PEC has refused to limit them to the Plaintiffs in the TOG Cases, to the products used by those Plaintiffs, or in any other meaningful way.

Other Requests for Production are plainly overbroad in the context of how Plaintiffs have defined key terms. For example, the terms HUMAN HEALTH EFFECTS, ADVERSE EFFECTS and TOXICOLOGICAL EFFECTS are defined to mean "any possible or actual effect, impact, alteration, change, . . .". (DE 2604-2, at ECF Pages 2, 4-6 of 308.) As used in the following (and other) production demands, the scope expands well beyond any conceivable relationship with Plaintiffs' allegations:

> **REQUESTS FOR PRODUCTION NO. 1**
> All DOCUMENTS CONCERNING warnings YOU provided to purchasers about the HUMAN HEALTH EFFECTS of TURNOUTS containing PFAS or PFAS-CONTAINING PRODUCTS.
>
> **REQUESTS FOR PRODUCTION NO. 2**
> All DOCUMENTS CONCERNING warnings YOU provided to purchasers about any TOXICOLOGICAL EFFECTS TURNOUTS containing PFAS or PFAS-CONTAINING PRODUCTS.
>
> **REQUEST FOR PRODUCTION NO. 3**
> All DOCUMENTS CONCERNING warnings YOU provided to purchasers about any ADVERSE EFFECTS TURNOUTS containing PFAS or PFAS-CONTAINING PRODUCTS, other than the HUMAN HEALTH, and TOXICOLOGICAL EFFECTS discussed above.

(*Id.*, at ECF Page 100 of 308.) <u>Nowhere</u> do these requests ask for warnings that relate to a specific disease or condition alleged by <u>any</u> of the named Plaintiffs in the nine cases. In addition, the breadth and scope of the requests and related definitions would require any defendant answering them to speculate (*e.g.*, "any possible or actual effect") and answer for undefined phrases like "harm of chemicals or substances to living organisms" or any possible "impact that is harmful or negative." The TOG Defendants suggested different language for these phrases, but Plaintiffs rejected these suggestions. (2604-14, Ex. M, at 1-2.)

### B.    Requests to Meet and Confer.

As noted above, the TOG Defendants' July 8, 2022, letter requested to meet and confer on the specific discovery requests. (DE 2604-10, Ex. I, at 3, "We appreciate that Plaintiffs may

have a different view of this situation and, as such, would welcome the opportunity to meet and confer on all issues raised in this letter.")  During the August 10, 2022 telephonic meet and confer, the TOG Defendants raised several issues: (1) a TOG-specific fact sheet for TOG plaintiffs; (2) a TOG science day[7] to educate the Court as to the turnout gear science on which Plaintiffs rely to suggest potential links between diseases and fabric shedding or dermal uptake (that science is different from and is still under development and in its early stages compared to the AFFF science and, as Plaintiffs' own counsel admit, more speculative and less precise than the AFFF science); and (3) providing examples of specific discovery objections including (a) geographic or temporal limits, (b) commencing the negotiation of word searches, and (c) resolving the above-described problems with the definitions of health effects, adverse effects, etc.[8]  During this 40 minute conference, Plaintiffs initially suggested they were open to a TOG-specific PFS and recognized that they could not prevent the TOG Defendants from seeking a science day, but the Plaintiffs stated they "needed to check with others" on the issues discussed. (*Id.*)  No further conference occurred.  Three weeks later, on August 31, 2022, at about 3:00 p.m. (DE 2604-14, Ex. M), the Plaintiffs rejected all the questions and proposals made during the meet and confer and twice threatened a motion to compel unless the TOG Defendants "confirm . . . in writing" "within five days after receiving [Plaintiffs'] letter" that they "are even willing to provide discovery in response" to what was served.  (*Id.*, and DE 2604-15, Ex. N.)  Before that "deadline," the TOG Defendants wrote that a collective response on behalf of a diverse group of 12 defendants was impossible considering the Labor Day holiday but committed to promptly provide a substantive response.  (*Id.*)

---

[7]  Plaintiffs apparently misremember the meet and confer because TOG counsel was clear that "litigat[ing] the science" was not the point of a TOG science day and it should solely be for the Court's benefit.  (Bogan Decl. at ¶ 11.)

[8] Bogan Decl. at ¶ 11.

**C.     Plaintiffs Have Created a False Narrative That the TOG Defendants Refuse to Participate in Discovery.**

The TOG Defendants replied in a letter sent on the morning of September 13, 2022; in which they noted that the PEC's narrative about the TOG Defendants was in error:

> The PEC's suggestion that the TOG Defendants insist on resolution of threshold issues before considering any voluntary response to the PEC's discovery is simply not correct, as demonstrated by the TOG defendants' repeated meet and confer requests and the representations made to the Court in the August 2022 Joint Status Report.  To be clear, the TOG Defendants stated:
>
> > "The PEC's assertion that the TOG Defendants are refusing to participate in this MDL misses the point entirely and is incorrect.  *  *  *
> >
> > Contrary to the PEC's representation, the TOG Defendants are not unwilling to engage in discovery; rather, the TOG Defendants request a process that resembles what was done for every other case pending in this MDL, and some reasonable guardrails around the scope of what sort of discovery may be sought, and when.  *  *  *
> >
> > [T]he TOG Defendants clearly stated that they are willing to work with the PEC to tailor the discovery in an appropriate manner, and the TOG Defendants remain hopeful that a compromise can be reached before the Court is asked to address any issue.  *  *  *
> >
> > As expressly noted during the meet and confer, the TOG Defendants do not refuse to participate in discovery, rather they have their own obligations to fulfill to ensure that discovery is fair, proportional, reasonable, and conducted in a manner that is consistent with the process in this MDL."
>
> Joint Status Report, at 30 – 32, August 12, 2022.

(DE 2604-16, Ex. O, at 1-2.)  The TOG Defendants again requested that Plaintiffs engage in a meet and confer to discuss how that might be accomplished.  Two days later, Plaintiffs filed their motion to compel.  They have not otherwise responded to the TOG Defendants' letter. Plaintiffs' Motion persists in claiming that the TOG Defendants are refusing to participate in discovery.  Not only do the excerpts above (and numerous other communications) belie that

assertion, but the facts show that it is Plaintiffs who are seeking to deny the TOG Defendants the same processes, reciprocal exchanges, and disclosures that every other Defendant in this MDL has had to date.

## IV.     LAW AND ARGUMENT

The TOG Defendants do not take the position that no discovery will be permitted until certain "barriers" are removed.  Rather, as they have stated repeatedly, the TOG Defendants believe that any discovery at this time should proceed in a reasonable, stepwise fashion, focused first on threshold causation issues – which this Court has methodically explored as to AFFF and groundwater, but not as to turnout gear.  For the same reason, Plaintiffs should be required to provide basic information about their alleged use of turnout gear (including, but not limited to, the brands of turnout gear used) before the TOG Defendants are required to produce voluminous discovery to Plaintiffs who may never even have used their products.

### A.     The Parties Should Simultaneously Confer on All Issues Impacting the Appropriate Timing and Scope of Discovery.

#### 1.     A Science Day Would Reveal the Extreme Difficulty of Establishing General Causation Related to the Use of Turnout Gear.

The TOG Defendants asked Plaintiffs to join a request for a science day because the TOG science is truly in its earliest stages and the literature shows that any causal mechanism for alleged PFAS exposure via turnout gear is different from that for alleged PFAS contamination from water supply sources, a fact that Plaintiffs have repeatedly confirmed to the JPML.[9]

This request is reasonable and consistent with this Court's management of this MDL: the Court's October 4, 2019, Science Day was guided by its interest in understanding general causation questions relating to groundwater contamination.  All of the issues addressed during the October 4, 2019, Science Day, however, were focused on "what threshold of PFOA and

---

[9] DE 2604-13, ex. L, at 1.

PFOS *in the water* poses a health risk" and related AFFF issues. (Hearing Tr., Jun. 21, 2019, DE 129 at 18:25-19:2, (emphasis added), Ex. A-3.) None of the questions or issues identified by either the PEC's proposed science day CMO or the Court's July 24, 2019, Order (DE 157) related to any medical or scientific issue involving dermal exposure through fabric, turnout gear, or direct contact causation thresholds.[10] Instead, the issues focused exclusively on groundwater contamination and remediation.

Although AFFF groundwater contamination was described as being "at the forefront here on some of these medical and scientific issues" (*Id.*, at 25:11-12, Ex. A-3), the scientific issues relating to turnout gear and PFAS exposure are even more remote and undeveloped. The TOG Defendants' suggestion of a science day was no surprise; Plaintiffs' counsel publicly conceded the novelty of the science alleged to support their TOG Claims on an August 25, 2021, YouTube webcast show: "the turnout angle is really new," "[i]t's a very new issue." (2604-12, Ex. K, at 31, n.14.) Indeed, the first widely discussed scientific journal article related to turnout gear was published only in 2020 by a professor of physics and astronomy.[11] Since that time, however, even that professor has significantly retreated from his original conclusion that the moisture barrier of turnout gear increases a firefighter's exposure to fluorine from PFAS, which is the basis of these nine TOG lawsuits.[12]

---

[10]  The three basic exposure route pathways in humans are inhalation, ingestion, and the skin. *Reference Manual on Scientific Evidence*, at 524 (3rd ed.).

[11]  Peaslee GF, *et al.*, "Another pathway for firefighter exposure to per- and polyfluoroalkyl substances: firefighter textiles," *Environ. Sci. Technol. Lett.* 2020, 7:594−599.

[12]  Muensterman DJ, Titaley IA, Peaslee GF, et al., "Disposition of Fluorine on New Firefighter Turnout Gear," *Environ. Sci. Technol.* 2022, 2:974–983 (Concluding that because no formal exposure assessment has been conducted, "it is not yet possible to determine if the turnout gear is a significant source of occupational exposure to PFASs for firefighters.").

Just as the Court invited both sides to send it ten articles on AFFF scientific developments,[13] the TOG Defendants seek a similar opportunity to provide scientific guidance to the Court so that it can "inquire into whether the science involved is novel and still in development or whether the scientific issues for which expert testimony will be offered are well-settled." *Manual for Complex Litigation*, § 23.32, at 495 (4th ed.). As with water contamination claims, "if the plaintiffs can't win the sort of general causation arguments there, they don't have to prove individual customers are injured." (Hearing Tr. Jul. 26, 2019, DE 168, at 37:19-21, Ex. A-1.)[14] These basic causation questions should be answered before the TOG Defendants are required to undertake the time and expense of searching for "All DOCUMENTS CONCERNING the number and dollar value of sales of each TURNOUT INTERMEDIATE PRODUCT SKU YOU SOLD to each TURNOUT DEFENDANT," among other equally far-reaching and overbroad demands for information and documents.

### 2.     A Detailed TOG-Specific Plaintiff Fact Sheet is Warranted.

It appears that the Court required detailed PFSs from Plaintiffs in exchange for the prohibition on AFFF Defendants from otherwise serving discovery. (Hearing Tr., Jul. 26, 2019, DE 168, at 23:20-21, Ex. A-1.) Here, a TOG-specific PFS is required. "We're kind of narrowing and focusing and [the fact sheets] make[ ] everybody drill down in a way that narrows the case but focuses it, and it is in everybody's interests." (Hearing Tr., Jun. 21, 2019, DE 129, at 5:21-25, Ex. A-4.) A proper TOG PFS would provide basic information to the TOG Defendants including (but not limited to) questions addressing TOG use, specific product

---

[13] Hearing Tr. Feb. 25, 2019, DE 35, at 52, Ex. A-2.

[14] " 'Plaintiff must first demonstrate general causation because without general causation, there can be no specific causation.' Here, if Lipitor is not capable of causing diabetes, then it did not cause a particular plaintiff's diabetes." *In Re Lipitor*, MDL No. 2:14-mn-2502-RMG, 2015 WL 6941132, at *1 (D.S.C. Oct. 22, 2015) (cleaned up).

identification, frequency of use, and alternative exposures. "You [have] to have different fact sheets." (Hearing Tr., Apr. 5, 2019, DE 65, at 17:21, Ex. A-5.) A TOG-specific PFS should establish "people who really have claims" (Hearing Tr., May 17, 2019, DE 97, at 7:15, Ex. A-6), and "what you [have] and what you don't have." (*Id.*, at 22:13-14). The TOG Defendants "are entitled to make sure that the individual plaintiffs have a colorable claim," just like the other defendants in the MDL. (Hearing Tr., Jul. 26, 2019, DE 168, at 11:10-18; and 24:12-13 ("Well, give them the factual foundation to be able to assess their liability", Ex. A-1.)

No revealing TOG-specific questions exist anywhere on the current PFS form. This is not surprising because the PFS was drafted and negotiated with only AFFF claims in mind and prepared years before the first TOG lawsuit was filed.

To address this vacuum, on August 16, 2022, the TOG Defendants provided a draft TOG-specific plaintiff fact sheet to Plaintiffs.[15] Plaintiffs initially stated that they were not opposed to a TOG-specific PFS, and at one point promised responsive comments, but they reneged and now assert that "Plaintiffs have every intention of resuming negotiations . . . over a turnout gear-specific PFS" as soon as the TOG Defendants have responded to Plaintiffs' overbroad and premature discovery requests.[16] This type of "tit for tat" discovery is exactly what Plaintiffs wrongly assert the TOG Defendants are demanding.[17] The TOG Defendants are simply asking to be afforded a process similar to that granted to the other parties in this MDL, which in this situation would entail receiving the same kind of Plaintiff-specific information that the groundwater contamination Defendants received years ago – information that, as the Court has

---

[15] Plaintiffs attach the cover letter transmitting the proposed PFS but omit the draft PFS itself. The draft TOG-specific PFS is provided with this Opposition. (See *Bogan Decl.,* ¶ 4, Ex. A-7.)

[16] DE 2604 at 14, n.34

[17] DE 2604 at 13.

already recognized, will help weed out frivolous claims at the outset, rather than after burdensome discovery has already taken place.

      **B.**      **If TOG Discovery Moves Forward, It Should Be Relevant, Useful, and Proportional to the TOG Cases in This MDL -- Nationwide Discovery Spanning 70 Years is Unreasonable.**

The TOG Defendants understand and respect this Court's view of Rule 26(b)(1) proportionality requirements in the context of multi-district litigation. Cases transferred to an MDL court, however, retain their individual identities. Whether generally or in an MDL, the consolidation of cases does not merge the suits into a single cause. *See e.g., Johnson v. Manhattan Ry., Co.*, 289 U.S. 479, 496-97 (1933) (cleaned up). Discovery in all MDLs should relate to the particular claims in particular cases. *See, e.g.*, *In re Volkswagen "Clean Diesel,"* MDL 2676, 2017 WL 4680242, at *1 (N.D. Cal. Oct. 18, 2017); *In re Bard IVC Filters,* 317 F.R.D. 562, 566 (D. Ariz. 2016). Here, Plaintiffs' demands for the TOG Claims are patently unreasonable and overly broad – especially because of the nationwide scope and the demand for information going back to the 1950s.

      **1.**      **Nationwide Discovery Is Unreasonable.**

It is inappropriate to seek nationwide discovery in cases limited to particular geographic areas. The standard for whether certain issues are subject to discovery must include an analysis of whether that discovery is relevant to a *particular legal claim* and whether the discovery relates to *a particular case*. *See United States ex rel. CKD Project, LLC v. Fresenius Med. Care AG & Co. KGAA*, No. 14-cv-6646, 2019 WL 6223828, at *2 (E.D.N.Y. Nov. 8, 2019) (finding nationwide discovery inappropriate where claims were limited to a single state); *United States ex rel. Conroy v. Select Med. Corp.*, 307 F.Supp.3d 896, 904 (S.D. Ind. 2018) (complaint alleging fraudulent claims submitted for specific patients did not warrant nationwide discovery despite

allegation that fraud stemmed from a company policy in effect at over 100 hospitals in different states).

*In re National Prescription Opiate Litigation*, 956 F.3d 838 (6th Cir. 2020) is instructive. In *Opiate Litigation*, the district court required the production of nationwide data and reasoned that the nationwide scope was supported because the nationwide data "will be available for future trials of MDL cases." *Id.*, at 842. The Sixth Circuit granted a stay of the discovery order and, ultimately, a writ of mandamus as to the nationwide discovery.[18]

The TOG Complaints are each limited to use of turnout gear by firefighters in a specific fire department (or a small number of fire departments). For example, the *Babstock* (No. 2:22-cv-2743, DE 1) and *Mauldin* (No. 2:21-cv-366, DE 1-1) complaints (both at Bogan Decl. ¶¶ 9-10, Exs. A-8 and A-9, respectively), Plaintiffs allege harm to firefighters solely in specific localities in Massachusetts and California. (*Babstock* Comp. ¶ 1; *Mauldin* Am. Comp. ¶ 1.) The other complaints are similarly geographically limited. In total, only about 24 fire departments, in a total of three states, are at issue. As a result, discovery should be limited to those fire departments where a Plaintiff's claims are factually supported.[19]

### 2. Temporal Limits Are Appropriate.

The Discovery requests seek documents from between 50 and 70 years ago. None of the TOG Complaints contain allegations supporting discovery from such an expansive period of time. The demand for responsive documents dating to 1950 could lead to voluminous

---

[18] In granting petitioner's writ of mandamus, the Sixth Circuit also noted that motions properly filed under Rule 12 should be adjudicated. *Id.*, at 846.

[19] Many courts will initially limit discovery to a subset geographic area that may be widened depending upon the state of proof uncovered through discovery focused on the smaller geographic subset. *Select Med. Corp.*, 307 F.Supp.3d at 903 (signaling *United States ex rel. Spay v. CVS Caremark Corp.*, 2013 WL 4525226 at *7 (E.D. Pa. Aug. 27, 2013) (collecting cases where limited discovery addressed to a geographic region was permitted "while reserving for a later date broader nationwide discovery . . .").)

productions of purely irrelevant information.  Plaintiffs attempt to bootstrap earlier time periods for discovery of materials from TOG Defendants by repeatedly referring to companies that are AFFF Defendants.  Yet Plaintiffs make <u>no</u> <u>connection</u> between the AFFF Defendants and TOG Defendants despite being aware of the enormously different contexts for the AFFF and TOG Claims.

### C.    The TOG Defendants Have Not Waived Any Objections to Plaintiffs' Overbroad Discovery.

Plaintiffs' claim that the TOG Defendants have waived all objections is disingenuous and without merit.  The TOG Defendants timely raised objections to the Discovery in their July 8, 2022, objections and responses.  Further, Plaintiffs were fully informed and on notice of numerous objections, concerns, and issues raised by the TOG Defendants – by service of Defendants responses and by letter served the same day and other communications.  (*See e.g.*, 2604-10, 12, 13, 16, Exs. I, K, L, O.)  As explained above, in these communications Defendants sought to meet and confer and stated numerous bases for the request.  Plaintiffs ignored the objections served by the TOG Defendants, continued to refuse to meet and confer (other than their presence at the August 10, 2022, "listening session"), violated Local Rules 7.2, 7.4, and 37.1, and have failed to demonstrate any prejudice arising from the TOG Defendants' timely objections and responses.

It is well established that the Court has discretion to refuse to compel responses to requests that exceed the bounds of fair discovery.  *See, e.g., Allen v. Banner Life Ins. Co.*, 340 F.R.D. 232, 241 (D. N.J. 2022) (and cases cited therein).  The TOG Defendants raised timely objections, but this is true even where a party fails to do so.  (*Id.*)  Requests for "all documents and records" relating to case issues are quintessentially overly broad and unfair.  *See, e.g., Donnelly v. Arrington Dev., Inc.*, No. 1:04CV899 2005 WL 8167556 at *1 (M.D.N.C. Nov. 8, 2005) (noting "requests seeking 'any and all' documents 'relating to' are overly broad" and

denying the motion to compel responses to such requests) and *Sewell v. D'Alessandro & Woodyard, Inc.,* No. 2:07-cv-343-FtM-29SPC, 2011 WL 843962 at *2 (M.D.Fla. Mar. 8, 2011) (denying motion to compel the unreasonable discovery and noting that the motion failed to meet the requirement of the local rules). Notably, in the matter before this Court, the TOG Defendants have: (1) timely objected to the unreasonable and overly broad discovery; (2) explained their objections in their pleadings and in contemporaneous and subsequent correspondence with the Plaintiffs; and (3) received absolutely no clarification or limitation to the unreasonable and overly broad discovery from Plaintiffs through the meet and confer process, which the TOG Defendants initiated and remain willing to pursue. In such circumstances, Plaintiffs' waiver argument has no legal merit.

The cases Plaintiffs cite in support of their motion are clearly inapposite. In *Garcia v. Yuba County Sheriff's Dep't*, No. 2:19-cv-2621-KJM DB, 2021 U.S. Dist. LEXIS 85492 (E.D. Cal. May 3, 2021), a motion to compel was brought against a party who failed – by their own admission – to file ***any*** response or objections to discovery until five months after the responses were due. 2021 U.S. Dist. LEXIS 85492, at *2. Further, the party seeking to compel discovery had sought to meet and confer *multiple times,* but the non-responding party failed to respond to those meet and confer requests until a motion to compel was filed – five months after the responses were due. *Id.* at *3-*4. That is not the case in the situation at hand. The other cases Plaintiffs rely upon – *Safeco Ins. Co. of America v. Rawstrom*, 44 Fed.R.Serv.3d 286 (C.D.Cal. 1998), and *Southampton Pointe Property Owners Association, Inc. v. Onebeacon Ins. Co.*, No. 2:12-cv-03035-RMG, 2013 U.S. Dist. LEXIS 205868 (D.S.C. Aug. 27, 2013) - are similarly distinguishable. Neither involves cases in which the party opposing the motion to compel (1) timely filed objections to patently unreasonable and overly broad discovery, (2) repeatedly and in good faith sought to meet and confer with the opposing side, and (3) clearly articulated the

reasons for their timely and well-founded objections without receiving any concession from the opposing side.[20]

Plaintiffs acknowledge that the TOG Defendants' numerous discovery-related objections and concerns are over "the scope of requested discovery."  Motion, at ECF 2604 Page 2 of 19. However, Plaintiffs go on to characterize the TOG Defendants as taking "a kitchen-sink approach" to their objections – a description that is false and misleading. (*Id.*)  The TOG Defendants were very clear over the phone and in their subsequent correspondence:

> For example, we have tried to narrow global issues in dispute, such as those concerning the 50+ year time frame and the nationwide geographic scope.  The PEC has rejected any discussion or compromise.  We also asked to meet and confer concerning objections to individual discovery requests.  Indeed, the TOG Letter notes that there are many discovery requests that require clarification and/or discussion and we emphasized our intention to continue meaningful meet and confer to narrow the issues in dispute.  Again, the PEC rejected any discussion or compromise.
>
> \*          \*          \*
>
> To date, the PEC has not offered a single compromise on any issue raised in the TOG defendants' objections to the more than 50 requests for production or the more than 30 interrogatories which unreasonably span 52 years and encompass all fifty states.  Likewise, the PEC has not provided any support for its position that it should be permitted to take discovery concerning hypothetical and unfiled cases.

(2604-16, Ex. O, at 2-3).  It is beyond the pale for Plaintiffs to assert waiver in the face of (1) their refusals to constructively meet and confer, (2) their several violations of this Court's Local Rules, and (3) the absence of any claimed prejudice.  The TOG Defendants ask this Court to order the Plaintiffs to return in good faith to the meet and confer process that the TOG Defendants requested months ago and, if appropriate under the Court's rulings, to allow the individual TOG Defendants to supplement their objections and responses according to a timely but reasonable schedule.

---

[20] Notably, in *Southampton Pointe* this Court noted the filing party's failure to comply with the local rules and warned them that similar future failures would lead the Court to disregard the motion.  2013 U.S. Dist. LEXIS 205868, at *3 n.1.

## V.    CONCLUSION

WHEREFORE, for the foregoing reasons, the TOG Defendants respectfully request that

Plaintiffs' Motion be denied.

**WOMBLE BOND DICKINSON (US) LLP**

/s/ Kurt D. Weaver
Kurt D. Weaver (N.C. Bar No. 27146)
555 Fayetteville Street, Suite 1100
Raleigh, NC  27601
P: (919) 755-8163
F: (919) 755-6770
Email:  kurt.weaver@wbd-us.com

/s/ Sonny S. Haynes
Sonny S. Haynes (N.C. Bar No. 41303)
One West Fourth Street
Winston Salem, NC 27101
P: (336) 721-3632
F: (336) 726-2227
Email:  Sonny.Haynes@wbd-us.com

***Attorneys for Honeywell Safety Products USA, Inc. and Honeywell International, Inc.***

**KILPATRICK TOWNSEND & STOCKTON LLP**

/s/ James F. Bogan III
James F. Bogan III
GA State Bar No. 065220
1100 Peachtree Street NE, Suite 2800
Atlanta, GA 30309
P: (404) 815-6500
F: (404) 815-6555
jbogan@kilpatricktownsend.com

 /s/ Benjamin M. Kleinman
Benjamin M. Kleinman
CA State Bar No. 261846
Two Embarcadero Center, Suite 1900
San Francisco, CA 94111
Telephone: (415) 576-0200
Facsimile: (415) 723-7122
bkleinman@kilpatricktownsend.com

*Attorneys for Southern Mills Inc. dba TenCate Protective Fabrics*

*And solely for purposes of this filing, with the permission and jointly on behalf of Defendants:*

*Allstar Fire Equipment*
*Fire-Dex, LLC*
*Globe Manufacturing Company LLC*
*Honeywell Safety Products USA, Inc.*
*Lion Group, Inc.*
*Mallory Safety and Supply LLC*
*Mine Safety Appliances Company, LLC*
*Municipal Emergency Services, Inc.*
*PBI Performance Products, Inc.*
*Stedfast USA Inc.*
*Southern Mills Inc. dba TenCate Protective Fabrics*
*W. L. Gore & Associates Inc.*

## CERTIFICATE OF SERVICE

I certify that I caused the foregoing to be filed via the CM/ECF system this 30th day of September, 2022, which will automatically send e-mail notification to all counsel of record.

/s/ Kurt D. Weaver
Kurt D. Weaver

WBD (US) 59028997