UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

|   |   |
|---|---|
| IN RE: AQUEOUS FILM-FORMING FOAMS PRODUCTS LIABILITY LITIGATION | MDL No. 2:18-mn-2873-RMG<br><br>This Document relates to:<br>ALL CASES |

**PLAINTIFFS' REPLY IN FURTHER SUPPORT OF THEIR
MOTION TO COMPEL DISCOVERY FROM THE TOG DEFENDANTS**

The Plaintiffs' Executive Committee ("Plaintiffs"), on behalf of Plaintiffs, respectfully submits this reply in further support of its Motion to Compel Discovery from the TOG Defendants[1] ("Mot. to Compel") (Dkt. 2604), and in response to the TOG Defendants' Joint Objection and Opposition to Plaintiffs' Motion to Compel Discovery ("Opp'n") (Dkt. 2627). For the reasons set forth below, and in Plaintiffs' original papers, Plaintiffs respectfully request that their Motion to Compel be granted.

## I.     INTRODUCTION

In their opposition, the TOG Defendants attempt to shift the Court's focus from the dispute that is actually at issue in the present motion to one over the scope of the discovery Plaintiffs have requested. To be clear, Plaintiffs' motion is not about the TOG Defendants' scope objections—which Plaintiffs agree require further negotiations prior to any intervention from the Court—but rather their blanket refusal to provide discovery absent certain preconditions being met, namely a Science Day and fully negotiated Plaintiff Fact Sheet ("PFS") that are both specific to turnout gear issues. As they have maintained throughout this dispute, Plaintiffs view this blanket refusal as a separate, threshold issue where the parties are at an impasse and the Court's intervention is needed. And while the TOG Defendants devote much of their opposition to conflating their blanket refusal to provide discovery with their pending scope objections, they have not—and cannot—dispute that Plaintiffs' motion was precipitated by their failure to commit to providing discovery *even if the parties successfully resolve their scope objections*.

Additionally, in focusing their opposition on the scope of Plaintiffs' requests, the TOG Defendants offer no meaningful support for their position on the dispute that is actually at issue in

---

[1] The term "TOG Defendants" collectively refers to Defendants Allstar Fire Equipment, Fire-Dex, LLC, Globe Manufacturing Company LLC, Honeywell Safety Products USA, Inc., Lion Group, Inc., Mallory Safety and Supply LLC, Mine Safety Appliances Company, LLC, Municipal Emergency Services, Inc., PBI Performance Products, Inc., Southern Mills Inc. d/b/a TenCate Protective Fabrics, Stedfast USA Inc., and W. L. Gore & Associates Inc.

Plaintiffs' motion. Specifically, the only justification they offer for their blanket refusal to provide discovery is that they are entitled to the same "long-established processes" that have been "followed for all other MDL defendants," which they claim included both a Science Day and fully negotiated PFS that preceded Plaintiffs serving any discovery requests. (Opp'n at 4.) But as explained in Plaintiffs' original papers, it is simply not true that a Science Day and fully negotiated PFS were prerequisites to Plaintiffs obtaining discovery from the other MDL defendants. Thus, contrary to the claims made in their opposition, the "process" that the TOG Defendants argue they are entitled to has no precedent in this MDL and cannot be used to justify their blanket refusal to provide discovery.

The TOG Defendants fare no better in their attempt to rebut Plaintiffs' argument that they have waived any objections not included in the written discovery responses they served back in July 2022. Yet again, the TOG Defendants focus their arguments on the breadth of the discovery Plaintiffs have requested and the related issue of Plaintiffs tabling negotiations over their scope objections to file the present motion. But neither of these arguments establishes good cause for the TOG Defendants' failure to timely serve a complete set of objections to Plaintiffs' discovery requests, particularly where they had more than two months to prepare their objections and could have sought a further extension of their deadline to serve them but declined to do so. Accordingly, the Court should find that the TOG Defendants have waived any objections not included in their written discovery responses to date.

## II. ARGUMENT

### A. Plaintiffs' Motion to Compel Is Appropriate and Timely.

As a threshold matter, the TOG Defendants raise two "objections" that they claim provide a basis for denying Plaintiffs' motion. First, they argue that the present motion should be dismissed because it neither included nor could have included a certification under Federal Rule Civil

3

Procedure 37(a)(1) and Local Rule 7.02 that Plaintiffs made good faith efforts to resolve the subject dispute without court action.  (Opp'n at 2.)  The TOG Defendants argue that Plaintiffs have not acted in good faith because the efforts they made to resolve the present dispute only included a "meet and confer of forty minutes followed by two letters and an email."[2]  (*Id.* at 2 (internal citation omitted).)  It is clear from their opposition, however, that this objection is premised entirely on the TOG Defendants' belief that Plaintiffs had an obligation to continue meeting and conferring on their scope objections, even after they refused to commit to actually providing discovery once those objections were resolved.[3]  Plaintiffs can hardly be expected to invest the time and effort needed to resolve the TOG Defendants' scope objections only to find themselves in the exact same position they are in now; that is, forced to seek the Court's intervention in order to obtain discovery responsive to their requests.

More importantly, the subject of the present motion is not the TOG Defendants' scope objections but rather their blanket refusal to provide any discovery absent a Science Day and fully negotiated PFS that are specific to turnout gear issues.  (*See* Mot. to Compel at 6, 14 n.34.) Plaintiffs' motion provides a detailed account of their good faith efforts to resolve the TOG Defendants' refusal to provide discovery on this basis, (*id.* at 6–8), and the TOG Defendants do not dispute that the parties were at an impasse on this threshold issue.  Instead, the TOG Defendants claim that the parties should "simultaneously confer" on both their blanket refusal to provide discovery and their scope objections, (Opp'n at 12–16), an argument that has no merit for reasons discussed in the next section of this reply.  *See infra* § II(D).  As such, the TOG Defendants'

---

[2] That the TOG Defendants now characterize that meet and confer as an "introductory call" where Plaintiffs "merely stated that they 'needed to check with others'" is perplexing given that at the time they described it as "very helpful" and commented that the parties had made "great progress" in understanding each other.  (Second Decl. of Andrew W. Croner in Support of Pls.' Mot. to Compel ("Second Croner Decl.") at ¶ 5.)

[3] (*See* Opp'n at 2 ("The TOG Defendants have made repeated requests to hold meet and confer conferences with Plaintiffs to appropriately narrow the scope of Plaintiffs' 30 interrogatories and 55 demands for production . . . .").)

objection to the present motion based on Plaintiffs' purported failure to include a good faith certification misses the mark and should be disregarded.[4]

The TOG Defendants' second objection—that the present motion is untimely under Local Rule 37.1(A)—similarly fails to provide a basis for denying Plaintiffs' motion to compel. As an initial matter, it is entirely contradictory for the TOG Defendants to argue, on the one hand, that Plaintiffs have not acted in good faith because they failed to continue negotiations over their scope objections, while also claiming, on the other, that Plaintiffs waited too long to file the present motion. Further, the TOG Defendants are themselves responsible for Plaintiffs' failure to file their motion within the 21-day period prescribed by L.R. 37.1(A). Specifically, the TOG Defendants' opposition fails to mention that after Plaintiffs confirmed their willingness to meet and confer on July 22, 2022, and despite multiple follow up emails from Plaintiffs' counsel,[5] the earliest date the TOG Defendants would agree to schedule that meet and confer was August 10, 2022—a nineteen-day delay that single-handedly prevented Plaintiffs from filing their motion to compel within the period prescribed by L.R. 37.1(A). In addition, as alluded to in Plaintiffs' original papers, the TOG Defendants' obfuscation of their true position on providing discovery absent certain preconditions being met only further delayed the filing of the present motion. (*See* Mot. to Compel at 1, 6.) Because each of these factors provides an acceptable explanation for Plaintiffs' delay in filing the present motion, the TOG Defendants' timeliness objection should be disregarded.

---

[4] To the extent the form of Plaintiffs' existing description of their good faith efforts to resolve this dispute is deemed insufficient, they have provided a declaration from their counsel that attests to those good faith efforts. (*See* Second Croner Decl. at ¶ 6.)

[5] (Second Croner Decl., Ex. W.)

5

> **B.     The TOG Defendants' Scope Objections Are Neither the Subject of Plaintiffs' Motion to Compel Nor Ripe for Adjudication at This Time.**

The TOG Defendants devote a considerable portion of their opposition to arguing the merits of their objections to the scope of Plaintiffs' discovery requests, going so far as to claim that Plaintiffs "acknowledge that the TOG Defendants' numerous discovery-related objections and concerns are over 'the scope of the requested discovery.'" (Opp'n at 20 (quoting Mot. to Compel at 2).)  To be clear, Plaintiffs never made such an acknowledgment[6] and, to the contrary, have "consistently maintained that . . . the TOG Defendants' refusal to provide discovery presents a threshold issue that must be resolved before continuing negotiations over . . . any objections to the scope of the Plaintiffs' discovery requests." (Mot. to Compel at 14 n.34.)  In fact, what precipitated the present motion was the TOG Defendants' refusal to commit to providing discovery ***even if the parties successfully resolve their scope objections***. (Mot. to Compel at 5–7.)  Additionally, the TOG Defendants' refusal to make such a commitment undermines completely their argument that their scope objections are so intertwined with their refusal to provide discovery that the parties must confer on both issues simultaneously.

Yet, despite Plaintiffs' clear and consistent position that their refusal to provide discovery presents a separate, threshold issue requiring court intervention, the TOG Defendants still dedicate a significant portion of their opposition to arguing the merits of their scope objections.  But for the reasons just stated, in addition to falling outside the scope of the present motion, those objections are also not the true basis for the TOG Defendants' current refusal to provide discovery.  Further, in arguing the merits of their scope objections, the TOG Defendants only request that Plaintiffs be

---

[6] The portion of Plaintiffs' motion that the TOG Defendants quote from does not suggest otherwise. (*See* Mot. to Compel at 1 ("And while the TOG Defendants may claim they are not demanding prerequisites to discovery, that claim rings hollow when they have declined multiple requests from Plaintiffs to confirm their willingness to provide responsive discovery once all disputes over ***the scope of the requested discovery*** are resolved." (emphasis added)).

6

ordered "to return in good faith to the meet and confer process." (Opp'n at 20.) This confuses Plaintiffs' position, as they have never contended that additional negotiations over the TOG Defendants' scope objections are unwarranted, only that those negotiations should be tabled pending a ruling on the TOG Defendants' blanket refusal to provide discovery. (Mot. to Compel at 14 n.34.[7]) Because the parties agree that the TOG Defendants' scope objections require further negotiation,[8] those objections are not ripe for adjudication at this time and the Court should refrain from addressing them in ruling on Plaintiffs' motion.[9] *See, e.g.*, *In re Blue Cross Blue Shield Antitrust Litig*. 2015 U.S. Dist. LEXIS 197385, at *25 (N.D. Ala. Aug. 4, 2015) (finding dispute over "proper scope" of discovery was "not yet ripe" where there was "no pending motion to compel specific responses from the defendants" and the plaintiffs "acknowledged that there [were] ongoing discussions concerning the scope and burden" of the subject requests).

---

[7] (*See also* Decl. of Andrew W. Croner in Support of Pls.' Mot. to Compel ("Croner Decl."), Ex. M, ECF No. 2604-14; *id.*, Ex. N, ECF No. 2604-15.)

[8] Negotiations over the scope of Plaintiffs' discovery requests are complicated by the TOG Defendants' apparent intention to raise additional objections to those requests at a later date. (*See* Mot. to Compel at 5, 15.) Plaintiffs should not be forced to negotiate discovery objections that are a moving target, and for this reason, as well as the others discussed later in this reply, the Court should find that the TOG Defendants have waived any objections not included in their written discovery responses to date. *See infra* § II(D).

[9] For the sake of clarity, Plaintiffs are not suggesting that these arguments have any merit, and, in fact, contend that they are flawed and without merit. By way of example, the TOG Defendants rely on cases observing that requests for documents "relating to" a subject are often overbroad, yet that language appears nowhere in any of the "representative examples" they excerpt from Plaintiffs' requests. (Opp'n at 8–9.) As another example, in support of their argument that Plaintiffs' requests are overbroad because they "seek documents from between 50 and 70 years ago," the TOG Defendants argue that "[n]one of the TOG Complaints contain allegations supporting discovery from such an expansive period of time." (Opp'n at 17.) Yet, both of the TOG Complaints they included as exhibits to their opposition include allegations that the TOG Defendants began manufacturing PFAS-containing turnout gear in the 1960s and 1970s. (*See* Decl.of James F. Bogan III, Ex. A-8 at ¶¶ 115–116; *id.*, Ex. A-9 at ¶¶ 112–113.) As a third and final example, in support of their argument that nationwide discovery is unreasonable, (Opp'n at 16), the TOG Defendants rely on two cases outside of the MDL context and a third case where the Sixth Circuit declined to rule on the very issue for which the TOG Defendants have cited it. *See In re Nat'l Prescription Opiate Litig.,* 956 F.3d 838, 846 (6th Cir. 2020) ("That relief renders the petition moot as to the other grounds on which the Pharmacies sought relief—namely, that the district court had refused to adjudicate their motions to dismiss, and that the court had ordered nationwide discovery of prescription data in a case where the parties could use very little of that data.").

7

    **C.    The TOG Defendants Have Failed to Provide a Valid Justification for Their Refusal to Provide Discovery Responsive to Plaintiffs' Requests.**

        1.    <u>The "Process" the TOG Defendants Claim They Are Entitled Is Entirely Fictional and Has No Precedent in This MDL.</u>

The TOG Defendants claim that they "do not take the position that no discovery will be permitted until certain 'barriers' are removed." (Opp'n at 12.) Rather, the TOG Defendants argue that "discovery from other MDL defendants has in fact been conditioned on and part of a balanced and mutual process," (Opp'n at 6), and that they are only asking to be subject to the same "long-established processes" that have been "followed for all other MDL defendants."[10] (Opp'n at 4.) Specifically, the TOG Defendants claim—without citing any supporting documents or transcripts—that "AFFF discovery was served only after the parties negotiated mutual fact sheets, held a Science Day for the Court, and discussed and developed an organized and stepwise process for discovery with the Court." (Opp'n at 7.) Despite this lack of support, the TOG Defendants assert that this "precedent" requires a discovery process that is "bilateral and balanced in nature," "reflects the unique aspects involved in these TOG cases," and proceeds "in a reasonable, stepwise fashion, focused first on threshold causation issues." (Opp'n at 5, 12.)

As discussed in Plaintiffs' original papers, however, the "process" that the TOG Defendants claim they are entitled is entirely fictional and has no foundation in either Federal Rules of Civil Procedure or the discovery proceedings in this MDL. (Mot. to Compel at 1–2, 11–12.) The TOG Defendants' opposition ignores that Plaintiffs served their initial set of master discovery requests on the AFFF manufacturer defendants in June 2019,[11] almost two months

---

[10] (*See also* Opp'n at 12 (arguing that Plaintiffs "are seeking to deny the TOG Defendants the same processes, reciprocal exchanges, and disclosures that every other Defendant in this MDL has had to date"); *id.* at 15 ("The TOG Defendants are simply asking to be afforded a process similar to that granted to the other parties in this MDL, which in this situation would entail receiving the same kind of Plaintiff-specific information that the groundwater contamination Defendants received years ago.").)

[11] (*See, e.g.*, Second Croner Decl., Ex. X.)

8

before the Court entered Case Management Order ("CMO") No. 5 addressing fact sheet discovery and more than three months before it held its Science Day. (CMO 5, ECF No. 205 (Aug. 7, 2019); Text Order, ECF No. 358 (Oct. 4, 2019).) Their opposition similarly ignores that by the time the Court entered CMO 5 and held its Science Day, the AFFF manufacturer defendants had already begun making productions of documents responsive to Plaintiffs' discovery requests.[12] That the TOG Defendants ignore this history only demonstrates that the discovery "process" they claim to be entitled to is merely a pretext for setting preconditions to discovery that have no precedent in this case. For this reason alone, the Court should reject the TOG Defendants' arguments seeking to adopt such a process and instead compel them to comply with their discovery obligations in this MDL.

        2.    <u>The TOG Defendants' Request for a Science Day Is an Attempt to Prematurely Litigate the Merits of the TOG Plaintiffs' Causation Evidence.</u>

In their opposition, the TOG Defendants argue that "litigating the science" is "not the point of a TOG science day and it should solely be for the Court's benefit." (Opp'n at 10 n.7.) But even a cursory review of the TOG Defendants' opposition shows that their request for a turnout gear-specific Science Day is, in fact, an attempt to litigate the merits of the TOG Plaintiffs' claims without the benefit of discovery. Specifically, in support of their request for a turnout gear-specific Science Day, the TOG Defendants claim that the "scientific issues related to turnout gear and PFAS exposure are even more remote and undeveloped" than those related to AFFF groundwater contamination and that the "first widely discussed scientific journal article related to turnout gear was published only in 2020 by a professor of physics and astronomy," who they claim has "significantly retreated from his original conclusion" that turnout gear increases firefighters'

---

[12] (*See* Croner Decl., Ex. U, ECF No. (cover letter for document production made by Defendant 3M Company on June 28, 2019); Second Croner Decl., Ex. Y (cover letter for document production made by Defendants Tyco Fire Products LP and Chemguard, Inc. on July 15, 2019).)

9

exposure to PFAS.  (Opp'n at 13.)  The TOG Defendants further argue that "basic causation questions" about the TOG Plaintiffs' "scientifically weak" claims "should be answered before the TOG Defendants are required to undertake the time and expense" of providing discovery responsive to Plaintiffs' requests.  (Opp'n at 5, 14.)

In essence, the TOG Defendants' argument is that before discovery proceeds, they should be given the opportunity to challenge the TOG Plaintiffs' causation evidence at a turnout gear-specific Science Day because they subjectively believe that evidence is "scientifically weak."  But as this Court has held, a party:

> cannot use his position on the merits of the underlying dispute to avoid discovery obligations since the purpose of discovery is to investigate the merits.  If a party could avoid discovery based on his or his attorney's subjective views on the merits of the opposing party's position, the discovery mechanisms available in the Federal Rules of Civil Procedure would be rendered meaningless.

*Sonoco Prods. Co. v. Güven*, 2014 U.S. Dist. LEXIS 153382, at *14-16 (D.S.C. Oct. 28, 2014).[13]

This Court's ruling in *Sonoco* is consistent with the more general principle that a party cannot pursue the merits of its case "without an adequate opportunity to obtain evidence through the broad discovery contemplated by the Federal Rules."  *Stewart v. VCU Health Sys. Auth.*, 2011 U.S. Dist. LEXIS 153154, at *23-24 (E.D. Va. Nov. 22, 2011).  Here, the TOG Defendants seek to deprive Plaintiffs of that opportunity based solely on their subjective assessment of the merits of the TOG Plaintiffs' claims.  This Court has rejected other attempts to avoid discovery on these grounds and should reach the same result here.  Thus, in addition to being completely without precedent in this MDL, the TOG Defendants' request for a turnout gear-specific Science Day

---

[13] *See also Heller v. City of Dall.*, 303 F.R.D. 466, 489 (N.D. Tex. 2014) (acknowledging that "even if a party presently holds a strong belief in the merits of the party's litigation positions, the party's strong belief — whether ultimately justified or not — provides no basis for avoiding the party's discovery obligations created by the Federal Rules of Civil Procedure").

should be rejected because it seeks to prematurely litigate the merits of the TOG Plaintiffs' claims before they have had an adequate opportunity to conduct discovery.

### 3. The TOG Defendants' Assertion that They Have Not Received Discovery Relevant to the Claims Against Them Is Patently Untrue.

In their opposition, the TOG Defendants argue that "Plaintiffs should be required to provide basic information about their alleged use of turnout gear (including, but not limited to, the brands of turnout gear used) before the TOG Defendants are required to produce voluminous discovery to Plaintiffs who may never even have used their products." (Opp'n at 12.)  Specifically, they claim that a turnout gear-specific Plaintiff Fact Sheet ("PFS") is warranted because they have "almost no information about the Plaintiffs' turnout gear claims" and "[n]o revealing TOG-specific questions exist anywhere on the current PFS form." (Opp'n at 4, 15.)  But in doing so, the TOG Defendants fail to even mention Plaintiffs' argument that the current PFS being used for all personal injury plaintiffs—including the TOG Plaintiffs—includes questions addressing, among other things, "any past employment or training as a firefighter, the locations, sources, and approximate dates of any exposure to PFAS; the injuries they are claiming resulted from their exposure to PFAS; and the healthcare professionals that have treated them for those injuries." (Mot. at 13.)  And while these questions may not be "TOG-specific," they clearly require information and documents relevant to the TOG Plaintiffs' claims.[14]  Further, the TOG Defendants' opposition does not dispute that the TOG Plaintiffs have, in fact, served personal injury PFSs that include this information.  Thus, the TOG Defendants' assertion that they have received "almost no information" about the TOG Plaintiffs' claims is simply not true.

---

[14] Notably, at the outset of this MDL, this Court acknowledged that providing information about the nature of a plaintiff's injuries and whether they have a medical diagnosis were critical components for any fact sheet that would be used in personal injury cases. (*See* Second Croner Decl., Ex. Z at 52:15–21.)

11

Although the TOG Defendants' opposition acknowledges Plaintiffs' intention to continue negotiating a turnout gear-specific PFS, it also suggests that Plaintiffs are only willing to do so once the TOG Defendants have fully responded to Plaintiffs' discovery requests. (Opp'n at 15.) This misstates Plaintiffs' position, which is merely that negotiations over a turnout gear-specific fact sheet should not be used as a condition precedent to the TOG Defendants providing discovery in this MDL. (Mot. to Compel at 13–14.) In their opposition, the TOG Defendants fail to provide a valid explanation for why the absence of a turnout gear-specific PFS should have any impact on their obligation to provide discovery responsive to Plaintiffs' requests.[15] The TOG Defendants could have raised the need for a turnout gear-specific PFS at any point since joining this MDL in February 2021 and the Court should not condone their attempt to now use the absence of such a PFS to avoid their discovery obligations. (*Id.*) For this reason, and the others discussed in Plaintiffs' original papers, the Court should compel the TOG Defendants to provide discovery responsive to Plaintiffs' requests while the parties continue negotiating a turnout gear-specific PFS.[16]

---

[15] The TOG Defendants claim the precedent in this MDL has been for discovery to be "served only after the parties [have] negotiated mutual fact sheets" and that they are entitled to the same "process" as the AFFF manufacturer defendants. That argument is baseless and should be rejected for the reasons discussed earlier in this reply. *See supra* § II(A).

[16] Though irrelevant to the issue presently before the Court, the TOG Defendants misconstrue the Court's comments from prior status conferences about the benefit that plaintiff fact sheets can provide in narrowing the docket in large MDLs like this one. (Opp'n at 14–16.) Those comments do not instruct—as the TOG Defendants suggest—that the legal sufficiency of the responses provided in such fact sheets be assessed to "help weed out frivolous claims at the outset," but rather that the *obligation* of having to complete them can itself help narrow the docket in this type of MDL. Indeed, while the Court's Case Management Orders provide a process for dismissing the claims of plaintiffs that fail to submit a completed PFS, they do not include a process for dismissing a plaintiff's claims based on the legal sufficiency of the responses they provided in a completed PFS. (*See* CMO 5, ECF No. 205 (Aug. 8, 2019); CMO 5.A, ECF No. 568 (Apr. 30, 2020); CMO 5.E, ECF No. 1264 (Mar. 10, 2021).)

>    D.    **The TOG Defendants Have Not Shown Good Cause for Their Failure to Serve a Complete Set of Objections and Responses to Plaintiffs' Discovery Requests.**

In their opposition, the TOG Defendants argue that "Plaintiffs' claim that the TOG Defendants have waived *all* objections is disingenuous and without merit."  (Opp'n at 18 (emphasis added).)  Once again, the TOG Defendants mischaracterize and exaggerate Plaintiffs' actual position on this issue.  As their original papers clearly state, Plaintiffs motion seeks a "ruling that the TOG Defendants have waived any objections *they failed to include in their written responses to [Plaintiffs' discovery] requests to date*."  (Mot. to Compel at 1 (emphasis added).)  In other words, while Plaintiffs may dispute the merits of the objections the TOG Defendants included in the written discovery responses they served, they are not arguing that those objections have been waived.  (*See id.* at 14–16.)  Rather, Plaintiffs' waiver arguments are directed only at the objections that the TOG Defendants have purportedly reserved for the future and wish to supplement their existing responses with "according to a timely but reasonable schedule."  (Opp'n at 20.)  As Plaintiffs explained in the original papers, the Federal Rules of Civil Procedure do not permit such a raise-as-you-go approach to discovery objections and instruct that any objections a party fails to timely raise are waived absent a showing of good cause.  (Mot. to Compel at 14–16.)

As for the objections they reserved, the TOG Defendants make two principal arguments for why they have not been waived, neither of which provide a valid explanation for their failure to serve a complete set of objections to Plaintiffs' discovery requests.  First, the TOG Defendants argue against a finding of waiver based on the breadth and scope of Plaintiffs' discovery requests. (Opp'n at 18–19.)  But the TOG Defendants fail to explain how the scope of Plaintiffs' requests prevented them from serving a complete set of objections, particularly where: (a) the requests were no broader than those previously served on other defendants in this MDL; (b) they had more than two months to prepare their objections and responses; and (c) they could have requested a further

13

extension of their deadline to respond but declined to do so. Thus, the TOG Defendants' have failed to show good cause for their failure to assert a complete set of objections based on the breadth and scope of Plaintiffs' discovery requests.

The TOG Defendants' other argument is that the Court should excuse their failure to assert the objections they reserved based on Plaintiffs' unwillingness to continue negotiations over their scope objections and the absence of any claimed prejudice. Once again, the TOG Defendants do not explain how Plaintiffs' decision to table negotiations over their scope objections—which came well after they served their written discovery responses—prevented them from serving a complete set of objections to Plaintiffs' discovery requests. Further, setting aside that it is the TOG Defendants who have the burden on this issue, Plaintiffs have been, and continue to be, prejudiced by the TOG Defendants' failure to serve a complete set of objections to their discovery requests. For one thing, this failure has created a situation where Plaintiffs only option for obtaining discovery is to negotiate the resolution of a set of objections that are a moving target and for which they have incomplete information. Additionally, allowing the TOG Defendants to raise new objections in the future will only serve to delay even further the production of information and documents responsive to Plaintiffs' requests. For this reason, and the others set forth in this reply and Plaintiffs' original papers, the TOG Defendants have failed to establish good cause for their failure to serve a complete set of objections to Plaintiffs' requests and the Court should find they have waived any objections not included in their written discovery responses to date.

## III. CONCLUSION

For the reasons set forth in this reply and their original papers, Plaintiffs respectfully request that the Court grant their Motion to Compel and issue an Order compelling the TOG Defendants to promptly provide information and documents responsive to Plaintiffs' discovery requests, finding that the TOG Defendants have waived any objections they failed to include in

their written responses to those requests to date, and granting such other and further relief the Court deems proper under the circumstances.

Dated: October 7, 2022                               /s/ Fred Thompson, III
                                                               Motley Rice LLC
28 Bridgeside Boulevard
Mt. Pleasant, SC 29464
P: (843) 216-9000
Fax: 843-216-9440
fthompson@motleyrice.com

*Plaintiffs' Liaison Counsel*

-and-

*/s/ Michael A. London*
Michael A London
Douglas and London PC
59 Maiden Lane
6th Floor
New York, NY 10038
P: (212)-566-7500
F: (212)-566-7501
mlondon@douglasandlondon.com

Paul J. Napoli
Napoli Shkolnik PLLC
1301 Avenue of The Americas
10th Floor
New York, NY 10019
P: (212)-397-1000
F: (646)-843-7603
pnapoli@napolilaw.com

Scott Summy
Baron & Budd, P.C.
3102 Oak Lawn Avenue
Suite 1100
Dallas, TX 75219
P: (214)-521-3605
ssummy@baronbudd.com

*Co-lead Counsel for Plaintiffs*

15

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was electronically filed with this Court's CM/ECF on this 7th day of October 2022 and was thus served electronically upon counsel of record.

/s/ Fred Thompson, III