# EXHIBIT X

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| IN RE:  AQUEOUS FILM-FORMING FOAMS PRODUCTS LIABILITY LITIGATION | MDL No. 2:18-mn-2873-RMG |
| | This Document relates to: ALL CASES |

## PLAINTIFFS' FIRST SET OF INTERROGATORIES

PLEASE TAKE NOTICE that, pursuant to Rule 33 of the Federal Rules of Civil Procedure, Plaintiffs in the above-captioned consolidated MDL request that **Defendant The 3M Company f/k/a Minnesota Mining and Manufacturing Company** ("Defendant") answer the following interrogatories, separately and fully, under oath, within (30) days of service.

## INSTRUCTIONS

1.      These Interrogatories cover all information known to or available to Defendant and its agents or attorneys, and all information in documents in its actual or constructive possession, custody, or control, whether prepared by it or any other persons.

2.      All verbs used herein shall be construed to include all tenses.

3.      The singular shall include the plural and vice versa, and the conjunctive shall include the disjunctive and vice versa, in order to give these interrogatories their broadest scope.

4.      With respect to each document required to be identified by these Interrogatories to which a claim of privilege is asserted, separately state the following:

      a.      The type of document (*e.g.*, letter, memorandum, note, etc.);

      b.      Its date;

      c.      The name, business address and present position of its author(s);

      d.      The position of its author(s) at the time the document was prepared;

e.      The name, business address and present position of its addressee(s) and all other recipients of the document;

f.      The position of its addressee(s) and all other recipients at the time the document was prepared and at the time it was received.

g.      A general description of the subject of the document;

h.      The basis of the claim of privilege; and

i.      If the basis for the claim of privilege is the work product doctrine, identify the proceeding for which the document was prepared.

5.      Where the term **"describe"** is used in the interrogatories below, this term includes a request for a complete description and explanation of the facts, circumstances, analysis, opinion and other information CONCERNING the subject matter of a specific interrogatory

6.      Where the term **"identify"** is used in the interrogatories below, this term includes a request for a complete description and explanation of the facts, circumstances, analysis, opinion and other information CONCERNING the subject matter of a specific interrogatory and also includes a request for the following information, to the extent known:

a.      with respect to a person other than a natural person, its name, the address of its principal place of business (including zip code), its telephone number, and the name of its chief executive officer, as well as, if it has a person other than a natural person that ultimately controls it, that other person's name, the address of that person's principal place of business (including zip code), that other person's telephone number, and the name of that other person's chief executive officer;

b.      with respect to a natural person, his or her name, business address and telephone number, employer, and title or position;

c.      with respect to a DOCUMENT or other item of physical evidence, a description of the DOCUMENT or item of physical evidence with sufficient

specificity to enable the party propounding these Interrogatories to identify such DOCUMENT or item of physical evidence in a motion to compel its production or availability for inspection.

7.      With respect to any non-documentary information or communications required to be identified or described by these Interrogatories as to which a claim of privilege is asserted, separately state the following:

      a.     The basis of the claim of privilege;

      b.     A general description of the subject of the information or communication;

      c.     The identities of all persons with knowledge of the information or communication;

      d.     The date of the communication;

      e.     The identities of all persons present when the communication took place;

      f.     The type of communication (*e.g.* face-to-face conversation, telephone conversation) and the location of each party to the communication at the time it took place.

8.      Unless otherwise specified, these interrogatories are limited to the time period from 1950 to and including the date of service of these interrogatories.

## <u>DEFINITIONS</u>

1.      As used herein, the term **"PERSON(S)"** refers to any natural person, firm, agency, organization, association, partnership, joint venture, corporation, public entity, or any other kind of business, legal or governmental entity or association.

2.      As used herein, the term **"DOCUMENT(S)"** shall have the broadest meaning possible and shall mean all documents, electronically stored information, and tangible things discoverable under Rule 34 of the Federal Rules of Civil Procedure, including without limitation: all writings and all other means of recording information, whether written, transcribed, taped, filmed, microfilmed, or in any other way produced, reproduced, or recorded, and including but not

limited to originals (or identical duplicates when originals are not available), drafts, computer-stored and computer-retrievable information, copies and duplicates that are marked with any notation or annotation or otherwise differ in any way from the original, correspondence, memoranda, reports, notes, minutes, contracts, agreements, leases, subleases, lease assignments, amendments, books records, checks, vouchers, permits, invoices, purchase orders, hazardous waste manifests, timesheets, bills of lading, receipts, ledgers, diaries, logs, calendars, computer printouts, computer disks, card files, lists of persons attending meetings or conferences, site plans, floor plans, blueprints, equipment lists, maps, diagrams, drawings, photographs, videographs, sketches, calculations, evaluations, analyses, directions, work papers, press clippings, sworn or unsworn statements, requisitions, manuals or guidelines, audit work papers, financial analyses, tables of organizations, charts, graphs, indices, advertisements and promotional materials, audited and unaudited financial statements, trade letters, trade publications, newspapers and newsletters emails, electronic or mechanical records, facsimiles, telegrams and telecopiers, and audiotapes. Each draft, annotated, or otherwise non-identical copy is a separate DOCUMENT within the meaning of this term. DOCUMENTS shall also include any removable sticky notes, flags, or other attachments affixed to any of the foregoing, as well as the files, folder tabs, and labels appended to or containing any documents. DOCUMENTS expressly include all ELECTRONIC RECORDS.

3.      As used herein, the term "**ELECTRONIC RECORDS**" shall mean the original (or identical forensically unchanged duplicate when the original is not available) and any non-identical copies (whether non-identical because of notes made on copies or attached comments, annotations, marks, transmission notations, or highlighting of any kind) of writings of every kind and description inscribed by mechanical, facsimile, electronic, magnetic, digital, or other means. ELECTRONIC RECORDS include but are not limited to computer programs (whether private, commercial, or work-in-progress), programming notes and instructions, activity listings of email transmittals and receipts, output resulting from the use of any software program (including word processing documents, spreadsheets, slide presentations, database files, charts, graphs and

4

outlines), electronic mail, and any and all miscellaneous files and file fragments, regardless of the media on which they reside and regardless of whether said ELECTRONIC RECORDS exist in an active file, deleted file, or file fragment. ELECTRONIC RECORDS include without limitation any and all items stored on computer memories, hard disks, diskettes and cartridges, network drives, network memory storage, archived tapes and cartridges, backup tapes, floppy disks, CD-ROMs, removable media, magnetic tapes of all types, microfiche, and any other media used for electronic data storage or transmittal. ELECTRONIC RECORDS also include the file, folder tabs, and containers and labels appended to or associated with each original and non-identical copy.

4.     As used herein, the term **"COMMUNICATION(S)"** refers to any act, action, oral speech, written correspondence, contact, expression of words, thoughts, ideas, transmission or exchange of data or other information to another person, whether orally, person-to-person, in a group, by telephone, letter, personal delivery, telex, email, facsimile, text message, instant message, recorded message or any other process—electronic, computer, or otherwise. All such communications in writing shall include, without limitation, printed, typewritten, handwritten, electronic, or other DOCUMENT(S).

5.     As used herein, the phrase **"INTERNAL COMMUNICATION(S)"** means COMMUNICATIONS between or among officers, agents, affiliates, and/or employees of Defendant.

6.     As used herein, the terms **"RELATING TO"** or **"CONCERNING"** shall include within their meaning "containing," "alluding to," "responding to," "commenting upon," "discussing," "explaining," "mentioning," "analyzing," "constituting," "memorializing," "compromising," "reporting," "incorporating," "confirming," "listing," "evidencing," "setting forth," "summarizing," or "characterizing," either directly or indirectly, in whole or in part.

7.     As used herein, the term **"PLAINTIFFS"** refers to any and all named Plaintiffs in the above-captioned action and includes all PERSONS acting or purporting to act at the direction of or on behalf of the named Plaintiffs.

8.      As used herein, the terms **"YOU," "YOUR,"** and **"DEFENDANT"** refers to Defendant The 3M Company f/k/a Minnesota Mining and Manufacturing Company and includes all past and present officers, directors, employees, predecessors, successors, affiliates, agents, servants, and representatives, and all other PERSONS acting or purporting to act at the direction of or on behalf of Defendant The 3M Company f/k/a Minnesota Mining and Manufacturing Company.

9.      **"ADVERSE EFFECT(S)"** means any possible or actual effect, impact, alteration, and/or change that causes or results in an impact that is harmful or negative.

10.      **"AFFF"** means aqueous film-forming foam.

11.      **"AFFF PRODUCT(S)"** means any product containing AFFF.

12.      **"ENVIRONMENTAL EFFECT(S)"** means any possible or actual effect, impact, alteration, and/or change to any environmental resource, including but not limited to air, land (including recreational, transport, agricultural, residential, and/or commercial), soil, sediments, water (including surface water, groundwater, drinking water, and/or other aquatic bodies), and/or biota (including but not limited to plants and animals, including wildlife and aquatic organisms).

13.      **"HANDLE(D)"** or **"HANDLING"** shall mean to possess, store, use, operate, maintain, touch, place, move, or disturb in any manner.

14.      **"HUMAN HEALTH EFFECT(S)"** means any possible or actual effect, impact, alteration, change, ailment, sickness and/or disease relating to humans, including but not limited to effects on human fetal development and the bioaccumulation and/or biopersistence of a chemical compound in the human body.

15.      **"MANUFACTURING DEFENDANTS"** means any current or former defendant in this MDL that currently or formerly produced or manufactured AFFF, including, but not limited to, 3M Company, Buckeye Fire Equipment Co., Chemguard, Inc., Tyco Fire Products, L.P., the Ansul Company, Kidde-Fenwal, Inc., and/or National Foam, Inc., and their predecessors, subsidiaries, or parent companies; or that currently or formerly produced or manufactured PFAS

6

that were incorporated into any AFFF or AFFF PRODUCT, including but not limited to E.I. DuPont de Nemours & Co., and/or Chemours Co., and their predecessors, subsidiaries, or parent companies.

16. **"MILSPEC"** means a United States military specification.

17. **"PFAS"** refers to all per- and polyfluoroalkyl substances, including without limitation PFOA and PFOS and any compound that contains or breaks down into PFOA or PFOS.

18. **"PFOA"** refers to perfluorooctanoic acid and any compound that contains or breaks down into PFOA.

19. **"PFOS"** refers to perfluorooctanesulfonic acid/ perfluorooctane sulfonate and any compound that contains or breaks down into PFOS.

20. **"PFOA/PFOS-CONTAINING PRODUCTS"** means any product containing PFOA and/or PFOS or any compound that contains or breaks down into PFOA or PFOS, including any product that forms a component part of or that is subsequently incorporated into another product.

21. As used herein, the term **"SALE," "SELL"** or **"SOLD"** means the transfer of title, exchange pursuant to an agreement, distribution, marketing or sale of AFFF at both the wholesale and retail level.

22. As used herein, the term **"THE GOVERNMENT"** or **"GOVERNMENT"** means any branch of the United States military; any agency, department, authority, board, or bureau of the United States; and/or any officer, director, or employee of any such U.S. governmental entity.

23. **"TOXICOLOGICAL EFFECT(S)"** means any possible or actual effect, impact, change, and/or alteration (including but not limited to cellular, biochemical, and/or macromolecular effects) relating to the toxicity, poisonousness, and/or harm of chemicals or substances to living organisms.

## INTERROGATORIES

### INTERROGATORY NO. 1

Identify each PERSON who has supplied information used in answering these interrogatories and specify the interrogatories for which each PERSON is responsible.

### INTERROGATORY NO. 2

Identify all AFFF PRODUCT(S) and/or PFOA/PFOS-CONTAINING PRODUCT(S) YOU manufactured for SALE, stating for each: the trade name under which it was SOLD, the dates during which it was manufactured for SALE, and percentage of each chemical component contained within said product.

### INTERROGATORY NO. 3

Identify the specific PFAS present in each of YOUR AFFF PRODUCT(S) and the quantities in each AFFF PRODUCT for each year that each AFFF PRODUCT was made. The term "made" as used herein refers to its common-sense definition, including but not limited to manufactured, formulated, designed, blended, etc.

### INTERROGATORY NO. 4

Identify where each AFFF PRODUCT was distributed geographically in as much detail as possible (region, area, state, county, city, municipality, town, actual purchaser or some other way).

### INTERROGATORY NO. 5

Identify the annual quantities of each of YOUR AFFF PRODUCT(S) manufactured beginning each year that the AFFF PRODUCTS identified in Interrogatory No. 2 were manufactured.

### INTERROGATORY NO. 6

Identify the names of all PERSONS that received (by purchase, delivery, or otherwise) AFFF from YOU from 1950 to present, including the amount of AFFF YOU delivered, tendered, and/or SOLD, as well as the name or type of the AFFF YOU delivered, tendered, and/or SOLD.

### INTERROGATORY NO. 7

Identify the entity or entities from which YOU or anyone on YOUR behalf purchased fluorosurfactants, PFOS, PFOA, and/or any other PFAS for use in manufacturing YOUR AFFF PRODUCT(S), including the specific compound(s) purchased from each entity and the date(s) of those purchases.

### INTERROGATORY NO. 8

Identify the distributor or distributors from which YOUR AFFF PRODUCTS were sold to PERSONS that purchased YOUR AFFF PRODUCTS for final use.

**INTERROGATORY NO. 9**

Identify all information YOU provided to THE GOVERNMENT and/or any user of YOUR AFFF PRODUCT(S) CONCERNING the formulation or design of YOUR AFFF PRODUCT(S).

**INTERROGATORY NO. 10**

Identify all information requested by THE GOVERNMENT and/or any user of YOUR AFFF PRODUCT(S) from YOU CONCERNING the formulation or design of AFFF PRODUCT(S).

**INTERROGATORY NO. 11**

Identify all of the ways in which YOU informed the users of YOUR AFFF PRODUCTS to ensure they were HANDLED and disposed of properly. If the proper method of disposal changed over time, please so state.

**INTERROGATORY NO. 12**

Describe all instructions, training material or information YOU provided to THE GOVERNMENT and/or any user of YOUR AFFF PRODUCT(S) CONCERNING the HANDLING and/or disposal of YOUR AFFF PRODUCTS. Please identify the person most knowledgeable about this subject and identify all documents relating to the same.

**INTERROGATORY NO. 13**

Do YOU contend that any MILSPEC MIL-F-24385 required or requires the use of PFOS or PFOA in AFFF?

**INTERROGATORY NO. 14**

If YOUR response to the preceding interrogatory is in the affirmative, state all facts supporting that contention.

**INTERROGATORY NO. 15**

If YOUR response to the preceding interrogatory No. 13 is in the negative, state all facts supporting that contention.

**INTERROGATORY NO. 16**

Identify all warnings or information about any potential ENVIRONMENTAL EFFECTS of AFFF YOU provided THE GOVERNMENT or others. For each warning, identify the content of such warning and the date on which the warning was provided.

**INTERROGATORY NO. 17**

Identify all warnings or information about any TOXICOLOGICAL EFFECTS of AFFF YOU provided THE GOVERNMENT and/or any user of YOUR AFFF PRODUCT(S).

**INTERROGATORY NO. 18**
Identify all warnings or information about any HUMAN HEALTH EFFECTS of AFFF YOU provided THE GOVERNMENT and/or any user of YOUR AFFF PRODUCT(S).

**INTERROGATORY NO. 19**
Identify all warnings or information about any ADVERSE EFFECTS of AFFF YOU provided to THE GOVERNMENT and/or any user of YOUR AFFF PRODUCT(S) other than the ENVIRONMENTAL, TOXICOLOGICAL, AND HUMAN HEALTH EFECTS discussed above

**INTERROGATORY NO. 20**
Identify any changes to the design and/or formulation of YOUR AFFF PRODUCTS that THE GOVERNMENT requested.

**INTERROGATORY NO. 21**
Identify all COMMUNICATIONS between YOU and THE GOVERNMENT CONCERNING the formulation or design of MILSPEC AFFF and its predecessor products.

**INTERROGATORY NO. 22**
Identify all requests from THE GOVERNMENT for information regarding any HUMAN HEALTH EFFECTS of YOUR AFFF PRODUCTS.

**INTERROGATORY NO. 23**
Identify all requests from THE GOVERNMENT for information regarding any ENVIRONMENTAL EFFECTS of YOUR AFFF PRODUCTS.

**INTERROGATORY NO. 24**
Identify all requests from THE GOVERNMENT for information regarding any TOXICOLOGICAL EFFECTS of YOUR AFFF PRODUCTS.

**INTERROGATORY NO. 25**
Identify all requests from THE GOVERNMENT for information regarding any ADVERSE EFFECTS of YOUR AFFF PRODUCTS, other than the ENVIRONMENTAL, TOXICOLOGICAL, AND HUMAN HEALTH EFECTS discussed above.

**INTERROGATORY NO. 26**
Identify each instance in which THE GOVERNMENT refused to pay for an AFFF PRODUCT YOU SOLD or otherwise supplied.

**INTERROGATORY NO. 27**

Identify each instance in which THE GOVERNMENT returned an AFFF PRODUCT YOU SOLD or otherwise supplied.

**INTERROGATORY NO. 28**

Identify any complaints made to YOU by THE GOVERNMENT CONCERNING the quality of any AFFF PRODUCT.

**INTERROGATORY NO. 29**

Describe any complaints made to YOU by THE GOVERNMENT CONCERNING the formulation, and/or design of any AFFF PRODUCT.

**INTERROGATORY NO. 30**

Identify any complaints made to YOU by THE GOVERNMENT CONCERNING the HUMAN HEALTH EFFECTS of any AFFF PRODUCT.

**INTERROGATORY NO. 31**

Identify any complaints made to YOU by THE GOVERNMENT and/or any user of YOUR AFFF PRODUCT(S) CONCERNING the ENVIRONMENTAL EFFECTS of any AFFF PRODUCT.

**INTERROGATORY NO. 32**

Identify any complaints made to YOU by THE GOVERNMENT and/or any user of YOUR AFFF PRODUCT(S) CONCERNING the TOXICOLOGICAL EFFECTS of any AFFF PRODUCT.

**INTERROGATORY NO. 33**

Identify any complaints made to YOU by THE GOVERNMENT and/or any user of YOUR AFFF PRODUCT(S) CONCERNING any ADVERSE EFFECTS of any AFFF PRODUCT, other than the ENVIRONMENTAL, TOXICOLOGICAL, AND HUMAN HEALTH EFECTS discussed above.

**INTERROGATORY NO. 34**

Are YOU aware of or have YOU ever conducted or contracted with another PERSON to conduct any studies, reports, and/or surveys to investigate the TOXICOLOGICAL EFFECTS of any PFAS present in AFFF?

**INTERROGATORY NO. 35**

If YOUR response to the preceding interrogatory is in the affirmative, identify the study, identify who conducted the study, identify those with knowledge of relevant facts about the study, and identify all documents that relate to or reference the study.

**INTERROGATORY NO. 36**

For each TOXICOLOGICAL EFFECT of the PFAS present in AFFF of which YOU are aware, identify the TOXICOLOGICAL EFFECT, the date YOU first became aware of that effect, and the source of that knowledge. For each such effect, identify the individual with the most knowledge of relevant facts, and identify all documents which relate to or reference such effect.

**INTERROGATORY NO. 37**

For each HUMAN HEALTH EFFECT of the PFAS present in AFFF identify the HUMAN HEALTH EFFECT, the date YOU first became aware of that effect, and the source of that knowledge. For each such effect, identify the individual with the most knowledge of relevant facts, and identify all documents which relate to or reference such effect.

**INTERROGATORY NO. 38**

For each ENVIRONMENTAL EFFECT of the PFAS present in AFFF of which YOU are aware, identify the ENVIRONEMENTAL EFFECT, the date YOU first became aware of that effect, and the source of that knowledge. For each such effect, identify the individual with the most knowledge of relevant facts, and identify all documents which relate to or reference such effect.

**INTERROGATORY NO. 39**

For each ADVERSE EFFECT of the PFAS present in AFFF of which YOU are aware, other than the ENVIRONMENTAL, TOXICOLOGICAL, and HUMAN HEALTH EFECTS discussed above, identify the adverse effect, the date YOU first became aware of that effect, and the source of that knowledge. For each such effect, identify the individual with the most knowledge of relevant facts, and identify all documents which relate to or reference such effect.

**INTERROGATORY NO. 40**

Are YOU aware of or have YOU ever conducted or contracted with another PERSON to conduct any studies, reports, and/or surveys to investigate the ENVIRONMENTAL EFFECTS of any PFAS present in AFFF?

**INTERROGATORY NO. 41**

If YOUR response to the preceding interrogatory is in the affirmative, identify the study, identify who conducted the study, describe the results of the study, identify those with knowledge of relevant facts about the study, and identify all documents that relate to or reference the study.

**INTERROGATORY NO. 42**

Are YOU aware of or have YOU ever conducted or contracted with another PERSON to conduct any studies, reports, and/or surveys to investigate the environmental fate and transport of any PFAS present in AFFF? The phrase "fate and transport," as used in this interrogatory, means where and how chemicals travel and persist or degrade in the environment (including but not limited to all land, air, and water) when chemicals are released intentionally or unintentionally in the environment.

**INTERROGATORY NO. 43**

If YOUR response to the preceding interrogatory is in the affirmative, identify the study, identify who conducted the study, describe the results of the study, identify those with knowledge of relevant facts about the study, and identify all documents that relate to or reference the study.

**INTERROGATORY NO. 44**

Are YOU aware of or have YOU ever conducted or contracted with another PERSON to conduct any studies, reports, and/or surveys to investigate the effects on surface water and/or groundwater of any PFAS present in AFFF?

**INTERROGATORY NO. 45**

If YOUR response to the preceding interrogatory is in the affirmative, identify the study, identify who conducted the study, describe the results of the study, identify those with knowledge of relevant facts about the study, and identify all documents that relate to or reference the study.

**INTERROGATORY NO. 46**

Are YOU aware of or have YOU ever conducted or contracted with another PERSON to conduct any studies, reports and/or surveys to investigate the HUMAN HEALTH EFFECTS of any PFAS present in AFFF?

**INTERROGATORY NO. 47**

If YOUR response to the preceding interrogatory is in the affirmative, identify the study, identify who conducted the study, describe the results of the study, identify those with knowledge of relevant facts about the study, and identify all documents that relate to or reference the study.

**INTERROGATORY NO. 48**

Identify all warnings or information YOU provided to THE GOVERNMENT and/or any user of YOUR AFFF PRODUCT(S) CONCERNING any ADVERSE EFFECTS of PFAS from AFFF, including the date each such warning was given. This interrogatory does not include the ENVIRONMENTAL, TOXICOLOGICAL, AND HUMAN HEALTH EFECTS discussed above.

**INTERROGATORY NO. 49**

Identify all warnings or information YOU provided to THE GOVERNMENT and/or any user of YOUR AFFF PRODUCT(S) CONCERNING the TOXICOLOGICAL EFFECTS of PFAS from AFFF, including the date each such warning was given.

**INTERROGATORY NO. 50**

Identify all warnings or information YOU provided to THE GOVERNMENT and/or any user of YOUR AFFF PRODUCT(S) CONCERENING the ENVIRONMENTAL EFFECTS of PFAS from AFFF, including the date each such warning was given.

**INTERROGATORY NO. 51**

Identify all instructions YOU provided to THE GOVERNMENT and/or any user of YOUR AFFF PRODUCT(S) CONCERNING ENVIRONMENTAL EFFECTS posed by the HANDLING, and/or disposal of AFFF PRODUCTS.

**INTERROGATORY NO. 52**

Identify all instructions YOU provided to THE GOVERNMENT and/or any user of YOUR AFFF PRODUCT(S) CONCERNING HUMAN HEALTH EFFECTS posed by the HANDLING, and/or disposal of AFFF PRODUCTS.

**INTERROGATORY NO. 53**

Identify all instances in which YOU warned THE GOVERNMENT and/or any user of YOUR AFFF PRODUCT(S) about any effects to drinking water posed by PFAS from YOUR AFFF PRODUCTS.

**INTERROGATORY NO. 54**

Identify any and all alternatives to PFOA and/or PFOS YOU investigated or otherwise considered for use or used in YOUR AFFF PRODUCTS.

**INTERROGATORY NO. 55**

Identify any and all research YOU conducted or reviewed CONCERNING alternatives to PFOA and/or PFOS (potential or actual) for use in YOUR AFFF PRODUCTS.

**INTERROGATORY NO. 56**

Describe all information provided by THE GOVERNMENT to YOU CONCERNING the language of warnings, user's manuals, and/or instructions provided with YOUR AFFF PRODUCTS.

**INTERROGATORY NO. 57**

Identify all "toll" or "tolling" manufacturers of AFFF (e.g., ChemDesign).

**INTERROGATORY NO. 58**

If YOU are aware, identify when YOU became aware of the ENVIRONMENTAL EFFECTS of PFAS.

**INTERROGATORY NO. 59**

If YOU are aware, identify when YOU became aware of the TOXICOLOGICAL EFFECTS of PFAS.

**INTERROGATORY NO. 60**

If YOU are aware, identify when YOU became aware of the HUMAN HEALTH EFECTS of PFAS.

**INTERROGATORY NO. 61**

Identify the date, site and circumstances that you first became aware that PFAS chemicals:

      a. Are resistant to biodegradation;

      b. Contaminate groundwater when used;

      c. Have the propensity to contaminate private and public wells;

      d. Are bioaccumulative;

      e. Are carcinogenic;

      f. Are biopersistent; and

      g. Are toxic.

Dated: June 13, 2019

**Michael A. London**
Douglas and London PC
59 Maiden Lane
6th Floor
New York, NY 10038
212-566-7500
212-566-7501 (fax)
mlondon@douglasandlondon.com

**Paul J. Napoli**
Napoli Shkolnik PLLC
360 Lexington Avenue
11th Floor
New York, NY 10017
212-397-1000
646-843-7603 (fax)
pnapoli@napolilaw.com

**Scott Summy**
Baron & Budd, P.C.
3102 Oak Lawn Avenue
Suite 1100
Dallas, TX 75219
214-521-3605
ssummy@baronbudd.com

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| IN RE:  AQUEOUS FILM-FORMING FOAMS PRODUCTS LIABILITY LITIGATION | MDL No. 2:18-mn-2873-RMG |
| | This Document relates to: ALL CASES |

## PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Plaintiffs request that **Defendant The 3M Company f/k/a Minnesota Mining and Manufacturing Company** ("Defendant") produce and permit Plaintiff to inspect, copy, test, or sample the following items in Defendant's possession, custody, or control. The production and inspection shall take place at Douglas and London PC, 59 Maiden Lane, 6th Floor, New York, NY 10038, within thirty (30) days of service. In lieu of a personal appearance and production on the above date, compliance with this Request may be completed by mailing written responses and responsive documents to counsel at the above address.

## DEFINITIONS

1.      As used herein, the term **"PERSON(S)"** refers to any natural person, firm, agency, organization, association, partnership, joint venture, corporation, public entity, or any other kind of business, legal or governmental entity or association.

2.      As used herein, the term **"DOCUMENT(S)"** shall have the broadest meaning possible and shall mean all documents, electronically stored information, and tangible things discoverable under Rule 34 of the Federal Rules of Civil Procedure, including without limitation:

1

all writings and all other means of recording information, whether written, transcribed, taped, filmed, microfilmed, or in any other way produced, reproduced, or recorded, and including but not limited to originals (or identical duplicates when originals are not available), drafts, computer-stored and computer-retrievable information, copies and duplicates that are marked with any notation or annotation or otherwise differ in any way from the original, correspondence, memoranda, reports, notes, minutes, contracts, agreements, leases, subleases, lease assignments, amendments, books records, checks, vouchers, permits, invoices, purchase orders, hazardous waste manifests, timesheets, bills of lading, receipts, ledgers, diaries, logs, calendars, computer printouts, computer disks, card files, lists of persons attending meetings or conferences, site plans, floor plans, blueprints, equipment lists, maps, diagrams, drawings, photographs, videographs, sketches, calculations, evaluations, analyses, directions, work papers, press clippings, sworn or unsworn statements, requisitions, manuals or guidelines, audit work papers, financial analyses, tables of organizations, charts, graphs, indices, advertisements and promotional materials, audited and unaudited financial statements, trade letters, trade publications, newspapers and newsletters emails, electronic or mechanical records, facsimiles, telegrams and telecopiers, and audiotapes. Each draft, annotated, or otherwise non-identical copy is a separate DOCUMENT within the meaning of this term. DOCUMENTS shall also include any removable sticky notes, flags, or other attachments affixed to any of the foregoing, as well as the files, folder tabs, and labels appended to or containing any documents. DOCUMENTS expressly include all ELECTRONIC RECORDS.

     3.     As used herein, the term "**ELECTRONIC RECORDS**" shall mean the original (or identical forensically unchanged duplicate when the original is not available) and any non-identical copies (whether non-identical because of notes made on copies or attached comments, annotations, marks, transmission notations, or highlighting of any kind) of writings of every kind and description inscribed by mechanical, facsimile, electronic, magnetic, digital, or other means. ELECTRONIC RECORDS include but are not limited to computer programs (whether private,

commercial, or work-in-progress), programming notes and instructions, activity listings of email transmittals and receipts, output resulting from the use of any software program (including word processing documents, spreadsheets, slide presentations, database files, charts, graphs and outlines), electronic mail, and any and all miscellaneous files and file fragments, regardless of the media on which they reside and regardless of whether said ELECTRONIC RECORDS exist in an active file, deleted file, or file fragment. ELECTRONIC RECORDS include without limitation any and all items stored on computer memories, hard disks, diskettes and cartridges, network drives, network memory storage, archived tapes and cartridges, backup tapes, floppy disks, CD-ROMs, removable media, magnetic tapes of all types, microfiche, and any other media used for electronic data storage or transmittal. ELECTRONIC RECORDS also include the file, folder tabs, and containers and labels appended to or associated with each original and non-identical copy.

4.      As used herein, the term **"COMMUNICATION(S)"** refers to any act, action, oral speech, written correspondence, contact, expression of words, thoughts, ideas, transmission or exchange of data or other information to another person, whether orally, person-to-person, in a group, by telephone, letter, personal delivery, telex, email, facsimile, text message, instant message, recorded message or any other process - electronic, computer, or otherwise. All such communications in writing shall include, without limitation, printed, typewritten, handwritten, electronic, or other DOCUMENT(S).

5.      As used herein, the phrase **"INTERNAL COMMUNICATION(S)"** means COMMUNICATIONS between or among officers, agents, affiliates, and/or employees of Defendant.

6.      As used herein, the terms **"RELATING TO"** or **"CONCERNING"** shall include within their meaning "containing," "alluding to," "responding to," "commenting upon," "discussing," "explaining," "mentioning," "analyzing," "constituting," "memorializing," "compromising," "reporting," "incorporating," "confirming," "listing," "evidencing," "setting

forth," "summarizing," or "characterizing," either directly or indirectly, in whole or in part.

7.      As used herein, the term **"PLAINTIFFS"** refers to any and all named Plaintiffs in the above-captioned action and includes all PERSONS acting or purporting to act at the direction of or on behalf of the named Plaintiffs.

8.      As used herein, the terms **"YOU," "YOUR,"** and **"DEFENDANT"** refers to Defendant The 3M Company f/k/a Minnesota Mining and Manufacturing Company and includes all past and present officers, directors, employees, predecessors, successors, affiliates, agents, servants, and representatives, and all other PERSONS acting or purporting to act at the direction of or on behalf of Defendant The 3M Company f/k/a Minnesota Mining and Manufacturing Company.

9.      **"AFFF"** means aqueous film-forming foam.

10.     **"AFFF PRODUCT(S)"** means any product containing AFFF.

11.     **"ADVERSE EFFECTS"** means any possible or actual effect, impact, alteration, and/or change that causes or results in an impact that is harmful or negative.

12.     **"ENVIRONMENTAL EFFECT(S)"** or **"ENVIRONMENTAL IMPACT(S)"** means any possible or actual effect, impact, alteration, and/or change to any environmental resource, including but not limited to air, land (including recreational, transport, agricultural, residential, and/or commercial), soil, sediments, water (including surface water, groundwater, drinking water, and/or other aquatic bodies), and/or biota (including but not limited to plants and animals, including wildlife and aquatic organisms).

13.      **"HANDLE(D)"** or **"HANDLING"** shall mean to possess, store, use, operate, maintain, touch, place, move, or disturb in any manner.

14.     **"HUMAN HEALTH EFFECT(S)"** or **"HUMAN HEALTH IMPACT(S)"** means any possible or actual effect, impact, alteration, change, ailment, sickness and/or disease relating to humans, including but not limited to effects on human fetal development and the bioaccumulation and/or biopersistence of a chemical compound in the human body.

4

15. **"MANUFACTURING DEFENDANTS"** means any current or former defendant in this MDL that currently or formerly produced or manufactured AFFF, including, but not limited to, 3M Company, Buckeye Fire Equipment Co., Chemguard, Inc., Tyco Fire Products, L.P., the Ansul Company, Kidde-Fenwal, Inc., and/or National Foam, Inc., and their predecessors, subsidiaries, or parent companies; or that currently or formerly produced or manufactured PFAS that were incorporated into any AFFF or AFFF PRODUCT, including but not limited to E.I. DuPont de Nemours & Co., and/or Chemours Co., and their predecessors, subsidiaries, or parent companies.

16. **"MILSPEC"** means any United States military specification.

17. **"PFAS"** refers to all per- and polyfluoroalkyl substances, including without limitation PFOA and PFOS and any compound that contains or breaks down into PFOA or PFOS.

18. **"PFOA"** refers to perfluorooctanoic acid and any compound that contains or breaks down into PFOA.

19. **"PFOS"** refers to perfluorooctanesulfonic acid and any compound that contains or breaks down into PFOS.

20. **"PFOA/PFOS-CONTAINING PRODUCTS" means** any product containing PFOA and/or PFOS or any compound that contains or breaks down into PFOA or PFOS, including any product that forms a component part of or that is subsequently incorporated into another product.

21. As used herein, the term **"SALE," "SELL"** or **"SOLD"** means the transfer of title, exchange pursuant to an agreement, distribution, marketing or sale of AFFF at both the wholesale and retail level.

22. As used herein, the term "**SKU**" refers to a stock keeping unit or any other such method that enables the identification, tracking, and movement of inventory.

23. As used herein, the term **"THE GOVERNMENT"** or **"GOVERNMENT"**

means any branch of the United States military; any agency, department, authority, board, or bureau of the United States; and/or any officer, director, or employee of any such U.S. governmental entity.

24.    **"TOXICOLOGICAL EFFECT(S)"** or **"TOXICOLOGICAL IMPACT(S)"** means any possible or actual effect, impact, change, and/or alteration (including but not limited to cellular, biochemical, and/or macromolecular effects) relating to the toxicity, poisonousness, and/or harm of chemicals or substances to living organisms.

## INSTRUCTIONS

1.    Please produce all of the specified DOCUMENTS and ELECTRONIC RECORDS which are in YOUR possession, or available to YOU, or to which YOU may gain access through reasonable effort, including information in the possession of YOUR past and present attorneys, accountants, investigators, consultants, or other persons directly or indirectly employed or retained by YOU, or connection with YOU, or anyone else otherwise subject to YOUR control who maintains records on YOUR behalf, in YOUR name or otherwise under YOUR control.

2.    Any comments, notations or markings appearing on any DOCUMENTS or ELECTRONIC RECORDS, and not a part of the original, are considered a separate DOCUMENT or ELECTRONIC RECORD, and any draft, preliminary form or superseded version of any DOCUMENT is also considered a separate DOCUMENT or ELECTRONIC RECORD.

3.    All documents and electronic records requested herein should be produced in the same order as they are kept, or maintained, or stored, in the regular course of business.

4.    Electronically stored information shall be produced as single-page, 200 DPI or higher TIFF files, accompanied by a Concordance load file (.DAT) that denotes the appropriate information to allow the loading of the images into a document management system with all document breaks (document delimitation) preserved. The Concordance load file (.DAT file)

should include OCR and image control numbers. Metadata must be preserved and produced in the following delimited fields: BEGINPRODID, ENDPRODID, BEGINPRODATT, ENDPRODATT, AUTHOR, BCC, CC, CUSTODIAN, DATECREATED, DATELASTMOD, DATERCVD, DATESENT, DOCEXT, EMAILSUBJ, FILENAME, FROM, LASTAUTHOR, TIMECREATED, TIMELASTMOD, TIMERCVD, TI1\1ESENT, TITLE, TO, TEXT. However, electronically stored information that is not readily converted to images should be delivered in its native electronic format. This includes spreadsheets and databases like Excel, Access, DBase or any other open-source or proprietary data storage system which may be exported to a relational or flat file structure.

     5.     All DOCUMENTS requested herein should be produced in the file, folder, envelope, or other container in which the DOCUMENTS are kept or maintained. This includes email foldering structure maintained by original custodian. If for any reason the container cannot be produced, please produce copies of all labels or other identifying markings.

     6.     Any DOCUMENT attached to another DOCUMENT must not be separated.

     7.     In the event that any DOCUMENT or ELECTRONIC RECORD called for by these requests has been destroyed, lost, discarded, otherwise disposed of, or is otherwise unavailable, such DOCUMENT or ELECTRONIC RECORD is to be identified as completely as possible, including, without limitation, the following information: date of disposal; manner of disposal; reason for disposal; person authorizing the disposal; and person disposing of the DOCUMENT or ELECTRONIC RECORD.

     8.     Whenever possible, the singular form of a word shall be interpreted in the plural and vice versa; verb tenses shall be interpreted to include past, present, and future tenses; the terms "and' as well as "or" shall be construed either conjunctively or disjunctively, as necessary, to bring within the scope of these requests any DOCUMENTS that might otherwise be considered outside their purview; and words imparting the masculine shall include the feminine and vice versa.

     9.     If an objection is made to part or all of any request, the part should be specified

together with the reasons for the objection. If a claim of privilege is asserted with respect to part or all of any DOCUMENT on the grounds of attorney-client privilege, the attorney work product doctrine, or any other basis, describe the DOCUMENT with sufficient particularity to make it susceptible to identification by separately stating the following with respect any such DOCUMENT: (1) the type of DOCUMENT; (2) its date; (3) the name, address, and position of its author(s); (4) the name, address, and position of each recipient of the DOCUMENT; (5) a general description of the subject matter of the DOCUMENT; (6) the length in pages of the document; (7) the basis of any claim of privilege; and (8) if work product immunity is asserted, the proceeding for which the DOCUMENT was prepared.

10.     Any requested DOCUMENT(S) that YOU object to furnishing but which nonetheless contains non-objectionable information that is responsive to any Request must be produced, but that portion of the DOCUMENT(S) for which the objection is asserted may be withheld provided that it is clearly marked as redacted, that the above requested identification is furnished, and the objection is valid.

11.     Each DOCUMENT requested herein must be produced in its entirety and without deletions or excisions (except as qualified by the Instruction in 9, above), regardless of whether YOU consider the entire DOCUMENT to be relevant or responsive to these Requests.

12.     Where the term "identify" or "identifying" is used herein, it refers to a DOCUMENT or other item of physical evidence calls for the following information: description of the DOCUMENT or item of physical evidence with sufficient specificity to enable the party propounding these Interrogatories to identify such DOCUMENT or item of physical evidence in a motion to compel its production or availability for inspection.

13.     Unless otherwise specified, these Requests are limited to the time period from 1950 to and including the date of service of these Requests.

## REQUESTS FOR PRODUCTION

### REQUEST FOR PRODUCTION NO. 1

All DOCUMENTS YOU provided THE GOVERNMENT concerning the design and/or formulation of YOUR MILSPEC AFFF products.

### REQUEST FOR PRODUCTION NO. 2

All COMMUNICATIONS to or from THE GOVERNMENT concerning the design and/or formulation of MILSPEC AFFF.

### REQUEST FOR PRODUCTION NO. 3

All DOCUMENTS concerning YOUR AFFF PRODUCT(S)' compliance (including non-compliance) with any MILSPEC, including but not limited to MIL-F-24385.

### REQUEST FOR PRODUCTION NO. 4

All DOCUMENTS concerning warnings YOU provided to the government or non-government purchasers about the ENVIRONMENTAL IMPACTS of AFFF.

### REQUEST FOR PRODUCTION NO. 5

All DOCUMENTS concerning warnings YOU provided to THE GOVERNMENT or non-government purchasers about the HUMAN HEALTH IMPACTS of AFFF.

### REQUEST FOR PRODUCTION NO. 6

All DOCUMENTS concerning warnings YOU provided to THE GOVERNMENT or non-government users or bystanders about any TOXICOLOGICAL EFFECTS of AFFF.

### REQUEST FOR PRODUCTION NO. 7

All DOCUMENTS concerning warnings YOU provided to THE GOVERNMENT or non-government users or bystanders about any ADVERSE EFFECTS of AFFF, other than the ENVIRONMENTAL, HUMAN HEALTH, and TOXICOLOGICAL EFFECTS discussed above.

### REQUEST FOR PRODUCTION NO. 8

All DOCUMENTS concerning instructions YOU provided to THE GOVERNMENT or non-government users or bystanders concerning the HANDLING and/or disposal of YOUR AFFF PRODUCTS.

### REQUEST FOR PRODUCTION NO. 9

All DOCUMENTS YOU used and/or relied on in preparing instructions YOU provided to THE GOVERNMENT or non-government users concerning the HANDLING and/or disposal of YOUR AFFF PRODUCTS.

**REQUEST FOR PRODUCTION NO. 10**

All DOCUMENTS YOU provided to THE GOVERNMENT or non-government users or purchasers concerning the decision to require that MILSPEC AFFF contain fluorocarbon surfactants.

**REQUEST FOR PRODUCTION NO. 11**

All DOCUMENTS concerning the preparation and approval of all patents related to AFFF, including but not limited to Patent No. 3,258,423, filed September 4, 1963, and patented on June 28, 1966.

**REQUEST FOR PRODUCTION NO. 12**

All DOCUMENTS concerning any contract of sale or similar agreement between YOU and THE GOVERNMENT or any other person or entity for the provision of Defendants' AFFF to any federal entity, including bills of sale, invoices, and cancelled checks.

**REQUEST FOR PRODUCTION NO. 13**

All DOCUMENTS concerning any contract and/or agreement between YOU and third-party distributors for the SALE of AFFF.

**REQUEST FOR PRODUCTION NO. 14**

All DOCUMENTS regarding any formulation and/or design of AFFF that did not contain PFOS or PFOA or chemicals that do not break down into PFOS and/or PFOA.

**REQUEST FOR PRODUCTION NO. 15**

All DOCUMENTS YOU provided to THE GOVERNMENT in response to THE GOVERNMENT'S requests for information concerning the design and/or formulation of AFFF.

**REQUEST FOR PRODUCTION NO. 16**

Any DOCUMENTS not provided to THE GOVERNMENT that would have been responsive to the preceding Request for Production had they been provided to THE GOVERNMENT.

**REQUEST FOR PRODUCTION NO. 17**

All DOCUMENTS reflecting any proposed or actual warnings regarding any AFFF products that were required by THE GOVERNMENT.

**REQUEST FOR PRODUCTION NO. 18**

All DOCUMENTS reflecting any warnings regarding any AFFF PRODUCTS that were prohibited by THE GOVERNMENT.

10

**REQUEST FOR PRODUCTION NO. 19**

DOCUMENTS identifying the SKUs for AFFF PRODUCTS sold to THE GOVERNMENT.

**REQUEST FOR PRODUCTION NO. 20**

DOCUMENTS identifying the SKUs for AFFF PRODUCTS sold to non-governmental entities.

**REQUEST FOR PRODUCTION NO. 21**

All DOCUMENTS reflecting the number and value of sales of each AFFF SKU sold to THE GOVERNMENT.

**REQUEST FOR PRODUCTION NO. 22**

All DOCUMENTS reflecting the number of SALES of each AFFF SKU sold to non-governmental entities.

**REQUEST FOR PRODUCTION NO. 23**

DOCUMENTS concerning YOUR formulation and/or design of AFFF PRODUCTS sold to non-governmental entities.

**REQUEST FOR PRODUCTION NO. 24**

DOCUMENTS concerning YOUR process for manufacturing AFFF PRODUCTS sold to THE GOVERNMENT and non-governmental entities.

**REQUEST FOR PRODUCTION NO. 25**

DOCUMENTS reflecting the chemical composition of any AFFF product sold to THE GOVERNMENT and non-governmental entities, including any PFAS compound sold to YOU for use in the manufacture of MILSPEC AFFF.

**REQUEST FOR PRODUCTION NO. 26**

DOCUMENTS concerning the breakdown in the environment of any AFFF product or component thereof into PFOS and/or PFOA.

**REQUEST FOR PRODUCTION NO. 27**

DOCUMENTS concerning PFOS or PFOA as a byproduct of the manufacturing process for any AFFF product or a component thereof.

**REQUEST FOR PRODUCTION NO. 28**

All DOCUMENTS reflecting instances in which THE GOVERNMENT complained, criticized, disparaged, or otherwise took issue with YOU about the formulation and/or design of YOUR AFFF PRODUCT(S).

**REQUEST FOR PRODUCTION NO. 29**

All DOCUMENTS reflecting instances in which THE GOVERNMENT refused to pay for and/or returned AFFF products YOU sold to that governmental entity.

**REQUEST FOR PRODUCTION NO. 30**

All DOCUMENTS reflecting refunds and/or billbacks provided by YOU to THE GOVERNMENT concerning the sale of AFFF.

**REQUEST FOR PRODUCTION NO. 31**

All studies and/or reports conducted, commissioned, or drafted by YOU or on YOUR behalf concerning the fate and transport of PFAS, PFOA, and/or PFOS in the environment. The phrase "fate and transport," as used in this request, means where and how chemicals travel and persist or degrade in the environment (including but not limited to all land, air, and water) when chemicals are released intentionally or unintentionally in the environment.

**REQUEST FOR PRODUCTION NO. 32**

All studies and/or reports conducted, commissioned, and/or drafted by YOU or on YOUR behalf concerning any HUMAN HEALTH EFFECTS posed by PFAS from AFFF.

**REQUEST FOR PRODUCTION NO. 33**

All studies and/or reports conducted, commissioned, and/or drafted by YOU or on YOUR behalf concerning any ENVIRONMENTAL EFFECTS posed by PFAS from AFFF.

**REQUEST FOR PRODUCTION NO. 34**

All studies and/or reports conducted, commissioned and/or drafted by YOU or on YOUR behalf concerning any TOXICOLOGICAL EFFECTS posed by PFAS from AFFF.

**REQUEST FOR PRODUCTION NO. 35**

All COMMUNICATIONS between YOU and other PERSONS concerning any HUMAN HEALTH EFFECTS of PFAS from AFFF.

**REQUEST FOR PRODUCTION NO. 36**

All COMMUNICATIONS between YOU and other PERSONS concerning any ENVIRONMENTAL EFFECTS of PFAS from AFFF.

**REQUEST FOR PRODUCTION NO. 37**

All COMMUNICATIONS between YOU and other PERSONS concerning any TOXICOLOGICAL EFFECTS of PFAS from AFFF.

**REQUEST FOR PRODUCTION NO. 38**

All COMMUNICATIONS between YOU and THE GOVERNMENT concerning the HUMAN HEALTH EFFECTS of PFAS from AFFF.

**REQUEST FOR PRODUCTION NO. 39**

All COMMUNICATIONS between YOU and THE GOVERNMENT concerning the ENVIRONMENTAL IMPACTS of PFAS from AFFF.

**REQUEST FOR PRODUCTION NO. 40**

All COMMUNICATIONS between YOU and THE GOVERNMENT concerning the TOXICOLOGICAL EFFECTS of PFAS from AFFF.

**REQUEST FOR PRODUCTION NO. 41**

All DOCUMENTS concerning warnings provided by YOU to THE GOVERNMENT concerning the HUMAN HEALTH EFFECTS of PFAS from AFFF.

**REQUEST FOR PRODUCTION NO. 42**

All DOCUMENTS concerning warnings provided by YOU to THE GOVERNMENT concerning the ENVIRONMENTAL IMPACTS of PFAS from AFFF.

**REQUEST FOR PRODUCTION NO. 43**

All DOCUMENTS concerning warnings provided by YOU to THE GOVERNMENT concerning the TOXICOLOGICAL EFFECTS of PFAS from AFFF.

**REQUEST FOR PRODUCTION NO. 44**

All historic and current Material Safety Data Sheets ("MSDS") prepared for and approved for use with YOUR AFFF PRODUCTS from 1967 to date.

**REQUEST FOR PRODUCTION NO. 45**

All DOCUMENTS, including but not limited to catalogues, statements circulars, manuals, brochures, reports, and advertisements, which mention, describe, or otherwise refer to the virtues, qualities, characteristics, capabilities, and/or capacities of YOUR AFFF PRODUCTS.

**REQUEST FOR PRODUCTION NO. 46**

All COMMUNICATIONS between YOU and any trade or industry organization, including, but not limited to, the Manufacturing Chemists Association, Chemical Manufacturers Association, National Fire Protection Association, American Chemical Council, FluoroCouncil, and/or Fire Fighting Foam Coalition (FFFC), concerning HUMAN HEALTH EFFECTS of AFFF.

**REQUEST FOR PRODUCTION NO. 47**

All COMMUNICATIONS between YOU and any trade or industry organization, including but not limited to, the Manufacturing Chemists Association, Chemical Manufacturers Association, National Fire Protection Association, American Chemical Council, FluoroCouncil, and/or Fire Fighting Foam Coalition (FFFC), concerning ENVIRONMENTAL EFFECTS of AFFF,

**REQUEST FOR PRODUCTION NO. 48**

All COMMUNICATIONS between YOU and any trade or industry organization, including but not limited to, the Manufacturing Chemists Association, Chemical Manufacturers Association, National Fire Protection Association, American Chemical Council, FluoroCouncil, and/or Fire Fighting Foam Coalition (FFFC), concerning TOXICOLOGICAL EFFECTS of AFFF,

**REQUEST FOR PRODUCTION NO. 49**

All COMMUNICATIONS between YOU and any trade or industry organization, including, but not limited to, the Manufacturing Chemists Association, Chemical Manufacturers Association, National Fire Protection Association, American Chemical Council, FluoroCouncil, and/or Fire Fighting Foam Coalition (FFFC), concerning ADVERSE EFFECTS of AFFF, other than the HUMAN HEALTH, ENVIRONMENTAL, and TOXICOLOGICAL EFFECTS addressed above.

**REQUEST FOR PRODUCTION NO. 50**

All COMMUNICATIONS between you and any trade or industry organization, including, but not limited to, the Manufacturing Chemists Association, Chemical Manufacturers Association, National Fire Protection Association, American Chemical Council, FluoroCouncil, and/or Fire Fighting Foam Coalition (FFFC), concerning the safety of AFFF.

**REQUEST FOR PRODUCTION NO. 51**

All COMMUNICATIONS between you and any trade or industry organization, including, but not limited to, the Manufacturing Chemists Association, Chemical Manufacturers Association, National Fire Protection Association, American Chemical Council, FluoroCouncil, and/or Fire Fighting Foam Coalition (FFFC), concerning the breakdown in the environment and/or "fate and transport," as used in this request, means where and how chemicals travel and persist or degrade in the environment (including but not limited to all land, air and water) when chemicals are released intentionally or unintentionally in the environment of any AFFF product or component thereof into PFOA or PFOS.

**REQUEST FOR PRODUCTION NO. 52**

All DOCUMENTS concerning statements issued by you or on your behalf concerning the HUMAN HEALTH EFFECTS associated with exposure to AFFF, PFOA, PFOS, and/or any other PFAS.

**REQUEST FOR PRODUCTION NO. 53**

All COMMUNICATIONS between you and any federal regulatory authority, including, but not limited to, the U.S. Environmental Protection Agency, Agency for Toxic Substances and Disease Registry, and/or Centers for Disease Control regarding any TOXICOLOGICAL EFFECTS of AFFF, PFOA, PFOS, and/or any other PFAS, including any DOCUMENTS submitted by you to those regulatory authorities regarding PFOA and/or PFOS.

**REQUEST FOR PRODUCTION NO. 54**

All COMMUNICATIONS between you and any GOVERNMENT authority, including, but not limited to, the U.S. Environmental Protection Agency, Agency for Toxic Substances and Disease Registry, and/or Centers for Disease Control regarding any ENVIRONMENTAL EFFECTS of AFFF, PFOA, PFOS, and/or any other PFAS, including any DOCUMENTS submitted by you to those authorities regarding PFOA and/or PFOS.

**REQUEST FOR PRODUCTION NO. 55**

All COMMUNICATIONS between you and any GOVERNMENT authority, including, but not limited to, the U.S. Environmental Protection Agency, Agency for Toxic Substances and Disease Registry, and/or Centers for Disease Control regarding any HUMAN HEALTH EFFECTS of AFFF, PFOA, PFOS, and/or any other PFAS, including any DOCUMENTS submitted by you to those authorities regarding PFOA and/or PFOS.

**REQUEST FOR PRODUCTION NO. 56**

All COMMUNICATIONS between you and any public relations and/or media consulting firms or agencies regarding any TOXICOLOGICAL EFFECTS of AFFF, PFOA, PFOS, and/or any other PFAS.

**REQUEST FOR PRODUCTION NO. 57**

All COMMUNICATIONS between you and any public relations and/or media consulting firms or agencies regarding any ENVIRONMENTAL EFFECTS of AFFF, PFOA, PFOS, and/or any other PFAS.

**REQUEST FOR PRODUCTION NO. 58**

All COMMUNICATIONS between you and any public relations and/or media consulting firms or agencies regarding any HUMAN HEALTH EFFECTS of AFFF, PFOA, PFOS, and/or any other PFAS.

**REQUEST FOR PRODUCTION NO. 59**

All DOCUMENTS regarding community exposure guidelines or screening levels for PFOA or PFOS, including all COMMUNICATIONS with THE GOVERNMENT or other MANUFACTURING DEFENDANTS regarding community exposure guidelines or screening levels.

**REQUEST FOR PRODUCTION NO. 60**

All DOCUMENTS concerning your purchase of fluorosurfactants, PFOS, PFOA, and/or any other PFAS for use in manufacturing YOUR AFFF PRODUCT(S).

**REQUEST FOR PRODUCTION NO. 61**

All DOCUMENTS regarding the biopersistence and/or the bioaccumulation of PFOA and PFOS.

**REQUEST FOR PRODUCTION NO. 62**

All DOCUMENTS regarding studies and/or reports of TOXICOLOGICAL EFFECTS of PFOA and/or PFOS conducted by YOU or on YOUR behalf.

**REQUEST FOR PRODUCTION NO. 63**

All DOCUMENTS and COMMUNICATIONS between YOU and any other Defendant regarding any TOXICOLOGICAL EFFECTS of PFAS from AFFF.

**REQUEST FOR PRODUCTION NO. 64**

All DOCUMENTS and COMMUNICATIONS between YOU and any other Defendant regarding any ENVIRONMENTAL EFFECTS of PFAS from AFFF.

**REQUEST FOR PRODUCTION NO. 65**

All DOCUMENTS and COMMUNICATIONS between YOU and any other Defendant regarding any HUMAN HEALTH EFFECTS of PFAS from AFFF.

**REQUEST FOR PRODUCTION NO. 66**

All DOCUMENTS and COMMUNICATIONS between YOU and any other Defendant regarding any adverse effects of PFAS from AFFF, other than the TOXICOLOGICAL, ENVIRONMENTAL, and HUMAN HEALTH EFFECTS discussed above.

**REQUEST FOR PRODUCTION NO. 67**

All DOCUMENTS concerning studies or research conducted by you or on your behalf concerning the use of surfactants other than PFOA or PFOS for use in your AFFF products.

**REQUEST FOR PRODUCTION NO. 68**

All DOCUMENTS concerning the effectiveness of surfactants that are not or do not degrade into PFOA or PFOS for use in your AFFF products.

**REQUEST FOR PRODUCTION NO. 69**

All COMMUNICATIONS concerning the use of surfactants that are not or do not degrade into PFOA or PFOS for use in your AFFF products.

16

**REQUEST FOR PRODUCTION NO. 70**

All DOCUMENTS concerning the HANDLING and disposal of AFFF for firefighting training.

**REQUEST FOR PRODUCTION NO. 71**

All DOCUMENTS concerning the development and adoption of warning DOCUMENTS, instructions, and/or labels on AFFF PRODUCTS.

**REQUEST FOR PRODUCTION NO. 72**

All discovery requests, responses, DOCUMENTS, and depositions (both transcripts and exhibits) produced by you in *Bell v. 3M Company*, Case No. 16-cv-02351 (D. Colo.). These DOCUMENTS should be produced in the same format and with same metadata as originally produced, and accompanied by any corresponding privilege and/or redaction logs.

**REQUEST FOR PRODUCTION NO. 73**

All discovery requests, discovery responses, DOCUMENTS, and depositions (both transcripts and exhibits) produced by 3M Company in *State of Minnesota v. 3M Company*, Case No. 27-CV-10-28862 (Fourth Judicial District Court, Hennepin County, Minn.). These DOCUMENTS should be produced in the same format and with the same metadata as originally produced, and accompanied by any corresponding privilege or redaction logs.

**REQUEST FOR PRODUCTION NO. 74**

All discovery requests, responses, DOCUMENTS and depositions (both transcripts and exhibits) produced by you in *Scott et al. v. E. I. du Pont de Nemours and Co.*, Case No. 06-3080 (D.N.J.). These DOCUMENTS should be produced in the same format and with the same metadata as originally produced and accompanied by any corresponding privilege and/or redaction logs.

**REQUEST FOR PRODUCTION NO. 75**

All discovery requests, responses, DOCUMENTS and depositions (both transcripts and exhibits) produced by you in *Rhodes et al. v. E. I. du Pont de Nemours and Co.*, Case No. 06-0530 (D.N.J.). These DOCUMENTS should be produced in the same format and with the same metadata as originally produced and accompanied by any corresponding privilege and/or redaction logs.

**REQUEST FOR PRODUCTION NO. 76**

All discovery requests, responses, DOCUMENTS and depositions (both transcripts and exhibits) produced by you in *Rowe et al. v. E. I. du Pont de Nemours and Co.*, Case No. 06-1810 (D.N.J.). These DOCUMENTS should be produced in the same format and with the same metadata as originally produced and accompanied by any corresponding privilege and/or redaction logs.

**REQUEST FOR PRODUCTION NO. 77**

All discovery requests, responses, DOCUMENTS and depositions (both transcripts and exhibits) produced by you in *Leach, et al., v. E. I. du Pont de Nemours & Co*., Case No. 010-C-608. These DOCUMENTS should be produced in the same format and with the same metadata as originally produced and accompanied by any corresponding privilege and/or redaction logs.

**REQUEST FOR PRODUCTION NO. 78**

All discovery requests, responses, DOCUMENTS and depositions (both transcripts and exhibits) produced by you in *Tennant et al. v. E. I. du Pont de Nemours & Co., Inc*., Case No. 99-cv-0488 (S.D. W. Va). These DOCUMENTS should be produced in the same format and with the same metadata as originally produced and accompanied by any corresponding privilege and/or redaction logs.

**REQUEST FOR PRODUCTION NO. 79**

All discovery requests, responses, DOCUMENTS and depositions (both transcripts and exhibits) produced by you in *The Little Hocking Water Association, Inc., v. E. I. du Pont de Nemours and Co*., 09-cv-1081 (S.D. Oh). These DOCUMENTS should be produced in the same format and with the same metadata as originally produced, and accompanied by any corresponding privilege and/or redactions logs.

**REQUEST FOR PRODUCTION NO. 80**

All discovery requests, responses, DOCUMENTS and depositions (both transcripts and exhibits) produced by you in *In re E. I. du Pont de Nemours C-8 Personal Injury Litigation*, MDL 2433 (S.D. Oh.). These DOCUMENTS should be produced in the same format and with the same metadata as originally produced and accompanied by any corresponding privilege and/or redaction logs.

**REQUEST FOR PRODUCTION NO. 81**

All DOCUMENTS that relate or refer to any insurance coverage or request for any insurance coverage in connection with any loss, claim, damage or request relating or referring to this MDL.

**REQUEST FOR PRODUCTION NO. 82**

All DOCUMENTS that relate or refer to any legal proceedings, whether administrative or judicial (civil or criminal), involving AFFF, PFOS and/or PFOA, including any and all orders (whether consent orders or otherwise), fines, penalties, settlements issued or entered into by THE GOVERNMENT in connection with any such matter.

**REQUEST FOR PRODUCTION NO. 83**

All DOCUMENTS and/or COMMUNICATIONS between you and the Weinberg Group Inc. pertaining to any PFAS or product containing PFAS.

18

**REQUEST FOR PRODUCTION NO. 84**

All DOCUMENTS related to evaluation of the extent to which alleged contamination by AFFF, PFOA, PFOS, PFBS, PFHxS, or other PFAS or fluorocarbon polymers affects and/or impacts the market value of real property on or proximate to the alleged contamination.

**REQUEST FOR PRODUCTION NO. 85**

All DOCUMENTS related to disposal methods, protocols, assays and strategies for AFFF, PFOA, PFOS, PFBS, PFHxS, or other PFAS or fluorocarbon polymers and residues.

**REQUEST FOR PRODUCTION NO. 86**

All DOCUMENTS related to remediation methods, protocols, assays and strategies for AFFF, PFOA, PFOS, PFBS, PFHxS, or other PFAS or fluorocarbon polymers and residues in soil, household dust, and household plumbing or piping.

**REQUEST FOR PRODUCTION NO. 87**

All DOCUMENTS related to the effectiveness and cost of residential point-of-use or household water filtration systems for the mitigation of AFFF, PFOA, PFOS, PFBS, PFHxS, or other PFAS or fluorocarbon polymers and residues in household water.

**REQUEST FOR PRODUCTION NO. 88**

All DOCUMENTS concerning the collection of data related to market values of residential or commercial properties on or around or proximate to any site alleged to be contaminated with AFFF, PFOA, PFOS, PFBS, PFHxS, or other PFAS or fluorocarbon polymers or residues.

**REQUEST FOR PRODUCTION NO. 89**

All DOCUMENTS related to public relations firms you have used for the purpose of COMMUNICATIONS with communities near sites alleged to be impacted by AFFF, PFOA, PFOS, PFBS, PFHxS, or other PFAS or fluorocarbon polymers or residues.

**REQUEST FOR PRODUCTION NO. 90**

All DOCUMENTS regarding community exposure guidelines or screening levels for PFOA or PFOS, including all COMMUNICATIONS with THE GOVERNMENT or other MANUFACTURING DEFENDANTS regarding community exposure guidelines or screening levels.

**REQUEST FOR PRODUCTION NO. 91**

All DOCUMENTS regarding the tax assessment of property values, appraisal of property values, and/or fair market value of property(s) on or around or proximate to any site alleged to be contaminated with AFFF, PFOA, PFOS, PFBS, PFHxS, or other PFAS or fluorocarbon polymers or residues.

**REQUEST FOR PRODUCTION NO. 92**

All DOCUMENTS, including internal communications, related to YOUR knowledge that AFFF and/or PFAS from AFFF had been released to the environment, including but not limited to air, surface water, and/or groundwater at a particular site.

**REQUEST FOR PRODUCTION NO. 93**

All DOCUMENTS, including internal communications, related to YOUR knowledge that PFAS had been released to the environment and/or groundwater at a particular site.

**REQUEST FOR PRODUCTION NO. 94**

All DOCUMENTS, relating to your quality assurance/quality control ("QA/QC") for the production of AFFF.

**REQUEST FOR PRODUCTION NO. 95**

All bills of lading, shipping records, and/or invoices documenting SALES of AFFF to THE GOVERNMENT, including the DLA, and third-party distributors from 1967 through 2016.

**REQUEST FOR PRODUCTION NO. 96**

All DOCUMENTS providing the formula(s) for AFFF sold by YOU at any time.

**REQUEST FOR PRODUCTION NO. 97**

All DOCUMENTS that relate or refer to the use, release, spill, or other discharge of MILSPEC AFFF, including the locations, date, time, and quantity of all such uses, releases, spills, and discharges.

**REQUEST FOR PRODUCTION NO. 98**

All DOCUMENTS concerning testing of MILSPEC AFFF and predecessor products.

**REQUEST FOR PRODUCTION NO. 99**

All DOCUMENTS concerning MANUFACTURING DEFENDANTS' AFFF MILSPEC products compliance with MILSPECs.

**REQUEST FOR PRODUCTION NO. 100**

All DOCUMENTS and/or COMMUNICATIONS concerning *Membrane Treatment of Aqueous Film Forming Foam (AFFF) Wastes for Recovery of Its Active Ingredients* (Final Report October 1980), by Edward S. K. Chian and Ronald W. Rowland, Georgia Institute of Technology.

**REQUEST FOR PRODUCTION NO. 101**

All DOCUMENTS that identify the distributors, means of transport (including container types and sizes), storage, and storage locations of MILSPEC AFFF.

**REQUEST FOR PRODUCTION NO. 102**

All DOCUMENTS that relate or refer to written or oral instructions or practices (including directives, guidance, manuals, regulations, and standards) for training or other use of MILSPEC AFFF products provided by Defendants.

**REQUEST FOR PRODUCTION NO. 103**

All DOCUMENTS that relate or refer to investigations and reports regarding potential contamination from PFAS chemicals, including sampling data.

**REQUEST FOR PRODUCTION NO. 104**

All DOCUMENTS that relate or refer to any meetings or correspondence with, or submissions to, any governmental body, trade association (including the National Fire Protection Association, Manufacturing Chemists Association, the Chemical Manufacturers Association, and the American Chemistry Council), industry group, or lobbying group regarding AFFF, PFOS, PFOA, and/or other PFAS chemicals.

**REQUEST FOR PRODUCTION NO. 105**

All DOCUMENTS referenced in "Index of 3M Toxicology and Human Health Studies Submitted to US EPA as of 9-8-2000."

Dated: June 13, 2019

**Michael A. London**
Douglas and London PC
59 Maiden Lane
6th Floor
New York, NY 10038
212-566-7500
212-566-7501 (fax)
mlondon@douglasandlondon.com

**Paul J. Napoli**
Napoli Shkolnik PLLC
360 Lexington Avenue
11th Floor
New York, NY 10017
212-397-1000
646-843-7603 (fax)
pnapoli@napolilaw.com

**Scott Summy**
Baron & Budd, P.C.
3102 Oak Lawn Avenue
Suite 1100
Dallas, TX 75219
214-521-3605
ssummy@baronbudd.com