

**U.S. Department of Justice**

Marianne F. Kies
Trial Attorney
Civil Division, Environmental Torts

---

*Telephone: (202) 353-1819*     175 N Street, N.E.
*Facsimile: (202) 616-4473*      3 CON, Room 11.218
*Email: Marianne.f.kies@usdoj.gov*  Washington, DC 20002

November 25, 2022

**VIA ECF**
The Honorable Richard M. Gergel
U.S. District Court for the District of
   South Carolina
J. Waties Waring Judicial Center
83 Meeting Street
Charleston, SC 29401

     Re:   *In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, No. 2:18-mn-02873 (D.S.C.) – The United States' Jurisdictional Issues

Dear Judge Gergel,

     Over the past four months, the United States has exhausted every opportunity to confer with the Plaintiffs' Executive Committee ("PEC") about resolution of the United States' two global jurisdictional issues: the discretionary function exception of the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2680(a), and the "Timing of Review" provision of § 113(h) of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), 42 U.S.C. § 9613(h). However, it was not until the last two weeks that Plaintiffs, for the first time, asserted they needed vast amounts of additional discovery to respond to those jurisdictional issues. Yet Plaintiffs at the same time conceded that they have not yet reviewed the millions of pages of documents the United States has already produced concerning its immunity from suit and other jurisdictional issues.

     Because further site-specific discovery is unnecessary to consider *global* issues surrounding subject-matter jurisdiction over the United States, and because virtually all discovery relevant to those issues has already been produced, the United States respectfully requests that the Court set a briefing schedule as follows:

    **April 3, 2023:** US Opening Briefs; one 50-page brief per motion
    **May 15, 2023:** Plaintiffs' Oppositions; one 50-page opposition per motion
    **June 26, 2023:** US Replies; one 20-page reply per motion

     In further support of its request, the United States offers the following.

*Background*

Twenty-seven cases in this MDL name the United States. Most of these cases involve tort claims, putatively brought pursuant to the FTCA's limited waiver of sovereign immunity. Roughly half of the 27 cases are water provider cases. Some plaintiffs in the 27 cases have brought claims under federal environmental statutes such as CERCLA, the Resource Conservation and Recovery Act, and the Safe Drinking Water Act.

Since 2019, the United States repeatedly and consistently has expressed to the parties and to the Court that the Court lacks jurisdiction over the claims against it. *See*, *e.g.*, Hr'g Tr. at 27:25-28:11, 29:9-17 (June 21, 2019), ECF No. 129. The United States shared the details of its anticipated jurisdictional arguments in early public filings. *See*, *e.g.*, Preliminary Statement of Defenses by the United States of America at 1-5 (Aug. 29, 2019), ECF No. 244.

The Court has also acknowledged the importance of the United States' jurisdictional issues—stating that the United States' immunity should be considered "Number 1" alongside the government contractor defense and before even the claims of water providers. Hr'g Tr. at 55:4-12 (Dec. 13, 2019), ECF No. 452. Most recently, the Court reiterated that there is "considerable force to the Government's motion" and urged the parties to confer on a briefing schedule. Hr'g Tr. at 42:7-8 (Sept. 23, 2022), ECF No. 2614. Plaintiffs have themselves observed that issues surrounding "governmental immunity" would be ripe for resolution after the government contractor defense was decided—*i.e.*, now. *See* Hr'g Tr. at 11:10-15 (Feb. 19, 2021), ECF No. 1241 (Plaintiffs' Co-Lead, Mr. Paul Napoli, proposing that "we deal with the government contractor defense of the manufacturers, which is Phase 1. And then have 1B, if it's necessary, which would deal with the government's -- with the government's discretionary immunity motion. And they can prioritize what we're doing with governmental immunity.").

Consistent with its stated intentions, the United States has devoted thousands of person-hours to diligently producing discovery relevant to jurisdictional issues. The United States has produced to the PEC nearly 650,000 documents totaling more than 10,000,000 pages relating to the sites where the United States has been sued for the largest damages.[1] The United States even hired a historical records consultant to review its Federal Records Center indices to identify any boxes with possibly responsive material and will produce the results as

---

[1] Barnes Air National Guard Base, in Westfield, MA; Cannon Air Force Base, in Clovis, NM; Fairchild Air Force Base, in Airway Heights, WA; Francis S. Gabreski Air National Guard Base, in Westhampton Beach, NY; Joint Base Lewis-McChord, in Washington; the former Mather Air Force Base, in Sacramento, CA; Peterson Space Force Base, in Colorado Springs, CO; Stewart Air National Guard Base, in Newburgh, NY; and Wright-Patterson Air Force Base, in Dayton, OH.

soon as they are available. The United States volunteered detailed declarations and offered three current and former Navy witnesses, a former high-ranking Department of Defense ("DoD") official, and three former Air Force witnesses for deposition, including the long-serving fire protection engineer (who testified for three days). The United States' discovery efforts have been documented publicly in JSRs and at the monthly status conferences for the last three years. In addition, the United States intends to produce declarations from three additional global witnesses—two witnesses from the Army and one additional witness from the Air Force; the United States will make them available for deposition.

On July 7, 2022, after the close of the government contractor briefing, the United States, the Defendants' Co-Leads, and the Plaintiffs' Co-Leads had a call to discuss future bellwether tracks in this MDL. The United States observed that any such track must include time for the United States to brief its jurisdictional issues. During that call, the Plaintiffs' Co-Leads indicated they were unable to negotiate a briefing schedule because, they represented, they did not understand the bases of the United States' jurisdictional motions. On July 12, 2022, the United States sent a letter to the PEC explaining in detail its legal positions; identifying what evidence it would use to support its positions; and requesting that the Plaintiffs' Co-Leads identify what additional discovery—if any—they thought they needed to respond to the United States' motions. *See* Ex. 1.

Having received no response to its July 12, 2022 letter, the United States scheduled a call with the Plaintiffs' Co-Leads for October 5, 2022. On that call and in an October 7, 2022, letter, *see* Ex. 2, the Plaintiffs' Co-Leads continued to insist that they could not discuss a briefing schedule because they were confused about the legal bases for the motions. Among other things, Plaintiffs asked the United States to send Plaintiffs' counsel bullet points outlining the United States' argument and caselaw supporting it. In the spirit of cooperation, the United States complied with their request. *See* Ex. 3. On October 26, 2022, Plaintiffs stated that they needed additional discovery to oppose the United States' motions but were unable to specify exactly what. Plaintiffs agreed to send a discovery list to the United States on November 9, 2022.

On November 9, 2022, Plaintiffs' Co-Leads sent the United States "informal" discovery requests for eight cases. The "informal" requests contained 70 interrogatories, 103 requests for production, 56 requests for admission, and a Rule 30(b)(6) notice attaching six pages of topics.[2] The "informal" requests also disclosed that at least some of the plaintiffs propounding them had never received the document productions previously made by the United States. *See* Ex. 4 at 1, 3, & 5-6. A subsequent call on November 14, 2022, confirmed that—notwithstanding the

---

[2] On November 23, 2022, the United States received additional informal discovery requests for another case, comprising 25 requests for production and 24 requests for admission.

3

parties' four months of negotiations and Plaintiffs' decision to draft hundreds of discovery requests identifying what they supposedly need to respond to the United States' jurisdictional motions—the Plaintiffs' Co-Leads had not yet begun reviewing the United States' prior productions for purposes of resolving the jurisdictional issues. Plaintiffs would agree to discuss only a discovery schedule and refused to discuss a schedule for briefing. At that point, the United States decided to seek the Court's guidance.

### *Argument*

When the United States asserts its sovereign immunity, discovery is severely constrained. *See Seaside Farm, Inc. v. United States*, 842 F.3d 853, 860-61 (4th Cir. 2016) (citing cases). The same is true where a party asserts threshold jurisdictional defenses. *See, e.g.*, *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 64 (4th Cir. 1993) (noting "limited" availability of discovery on jurisdictional issues). Nevertheless, the United States has cooperated with all parties in this MDL to advance the entire litigation pending an opportunity for its jurisdictional issues to be resolved. The Court has recognized that, in so doing, the United States has exhibited "a lot of restraint." Hr'g Tr. at 42:5-6 (Sept. 23, 2022), ECF No. 2614. Plaintiffs' claimed discovery needs—which were drafted without even digesting the existing abundant discovery record on jurisdictional issues—are unnecessary and unduly burdensome on a sovereign asserting that jurisdiction does not lie.

1. *Discretionary function exception*

Under 28 U.S.C. § 2680(a), the United States is immune from a tort claim "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." There are two types of conduct where the discretionary function exception applies. *First*, "if a regulation mandates particular conduct, and the employee obeys the direction, the Government will be protected because the action will be deemed in furtherance of the policies which led to the promulgation of the regulation," and the claim must be dismissed. *United States v. Gaubert*, 499 U.S. 315, 324 (1991). *Second*, if the conduct is not required by a regulation or policy, but "it involves an element of judgement or choice and implicates considerations of public policy," the conduct is also protected. *Seaside Farm*, 842 F.3d at 858. This involves a two-step analysis: "We begin by asking whether any federal statute, regulation, or policy specifically prescribes a course of action. If not, we consider generally the nature of the actions taken and whether they are susceptible to policy analysis." *Id.* (cleaned up).

Based on the existing discovery record, the United States will establish that, until 2016, certain activities allegedly causing the damages Plaintiffs claim to have suffered—such as fire training—were actually mandated by DoD or Air Force policy and are thus clearly protected. Moreover, the specific contaminants alleged to have

harmed Plaintiffs' water (PFOS and PFOA) remain unregulated to this day under relevant federal statutes.[3] Global policies—applicable across the DoD and Air Force—confirm that there were no mandatory and specific directives governing the United States' use and handling of AFFF containing PFOS or PFOA during the relevant time period. Further, the United States' decisions on these matters are susceptible to policy analysis. Thus, tort claims arising from the United States' use and handling of AFFF are barred under the discretionary function exception. *See Oxendine v. United States*, C.A. No. 3:08–4036–CMC–PJG, 2009 WL 3757517, at *5-6 (D.S.C. Nov. 9, 2009) (collecting cases concerning the discretionary function exception and the military and finding that the plaintiffs failed to show use and handling of products containing TCE was not subject to the exception).

For the reasons set forth above, site-specific discovery is unnecessary to the United States' anticipated motion. Nevertheless, the United States has spent the last three years *voluntarily* producing discovery from the bases with major FTCA claims. The United States' document production regarding the discretionary function exception—which is almost entirely complete—is the result of thorough searches at each of those bases and multiple follow-up requests from the Department of Justice to confirm the available material has been provided. The Department of Justice supplemented that base-level effort with reviews of Federal Records Center material. The United States will rely on the depositions and declarations already produced and the three additional declarations noted above (*supra* at 3); if the United States decides to use any additional evidence, we will provide it in advance of filing the motion. This is more than adequate. As the Fourth Circuit said in *Seaside Farm*, discovery is not required before the United States moves to dismiss on discretionary function grounds. *See* 842 F.3d at 860-61.

The Court has repeatedly stated that the United States' immunity is an important issue to be addressed "Number 1." *E.g.*, Hr'g Tr. at 55:4-12 (Dec. 13, 2019), ECF No. 452. The United States and the Plaintiffs' Co-Leads have been meeting and conferring on a schedule for four months. With years of notice of the United States' assertion of immunity, Plaintiffs should have been prepared to respond to this issue without any discovery. Moreover, having the benefit of the United States' voluntary productions and extensive deposition testimony, Plaintiffs have no justification for failing to review this material over the past three years. Nonetheless, the United States' proposed schedule incorporates six months for the

---

[3] *See EPA's PFAS Strategic Roadmap: A Year of Progress* at 4-5 (Safe Drinking Water Act: "EPA is developing national drinking water standards for perfluorooctanoic acid (PFOA) and perfluorooctane sulfonate (PFOS)."), 5 (Clean Water Act: "In April 2022, EPA released draft recommended water quality criteria for PFOA and PFOS."), and 5-6 (CERCLA: "EPA took a foundational step in September 2022 by proposing to designate PFOA and PFOS as hazardous substances.") (November 2022), *available at* https://www.epa.gov/system/files/documents/2022-11/PFAS%20Roadmap%20Progress%20Report_final_Nov%2017.pdf.

Plaintiffs to review the discovery Plaintiffs already have at their disposal and, if necessary, to meet and confer with the United States further about *specific* and *narrow* requests for additional information.

2.    CERCLA § 113(h)

Under 42 U.S.C. § 9613(h), "[n]o Federal court shall have jurisdiction . . . to review any challenges to removal or remedial action" selected under the Superfund law, except for specific, enumerated exceptions.  CERCLA § 113(h), as it is commonly known, therefore bars "[c]hallenges to remedial actions under federal statutes other than [CERCLA]" and "state law challenges to cleanup plans in federal court." *Atl. Richfield Co. v. Christian*, 140 S. Ct. 1335, 1351 (2020).

Courts have interpreted this to include *any* cause of action that would question or interfere with a CERCLA response, including suits under other environmental statutes and tort actions. *See New Mexico v. Gen. Elec. Co.*, 467 F.3d 1223, 1249-50 (10th Cir. 2006) (tort); *McClellan Ecological Seepage Situation v. Perry*, 47 F.3d 325, 328-29 (9th Cir. 1995) (RCRA).  It even includes challenges to removal or remedial actions that are in initial planning or investigatory phases. *See Cannon v. Gates*, 538 F.3d 1328, 1334 (10th Cir. 2008).

The United States expects to establish that, at each site at which the United States intends to move, the DoD is carrying out CERCLA response actions to respond to releases of PFOS and PFOA as "pollutant[s] or contaminant[s] which may present an imminent and substantial danger to the public health or welfare." 42 U.S.C. § 9604(a)(1)(B).  The DoD has obligated more than $1 billion through fiscal year 2021, plans to obligate another $260 million in fiscal year 2022, and plans to obligate at least $734.7 million after fiscal year 2022, to address PFAS releases at bases across the country.  The money funds both the investigatory work and removal and remedial actions that benefit the surrounding communities, including Plaintiffs.  For example, near Peterson Space Force Base in Colorado Springs, Colorado, the Air Force has paid almost $22 million to construct, operate, and maintain a brand-new water treatment system recently given to Plaintiff Security Water District, in addition to paying to supply the water district with replacement water for several years.

The motion will establish that the relevant water provider and state cases should be dismissed for interfering with the DoD cleanup efforts by forcing cleanup officials to change remediation plans.  The motion would also describe the statutorily required continued work by the DoD for water providers with sufficiently high levels of PFOA and PFOS in their water for which DoD is a cause.

The United States will rely on the publicly available administrative record documents for these CERCLA response actions and one or more declarations from

senior DoD officials, who will describe what CERCLA work is being accomplished at each site for which the United States intends to move. Without even having seen the United States' motion or supporting declarations, Plaintiffs suggest that they need dozens and dozens of interrogatories, requests for production, and requests for admission to respond. But the discovery they seek could be accomplished through a deposition of the declarant or declarants. And ultimately, if they think the United States has not established something relevant to the CERCLA § 113(h) analysis, they can assert that failure of proof in their opposition.

### *Conclusion*

For these reasons, the United States requests that the Court enter the United States' proposed schedule. No additional formal discovery is necessary to decide the jurisdictional issues set forth above. Moreover, the United States' proposed schedule builds in sufficient time for the United States to disclose any additional testimony it intends to rely on, and to meet and confer on *specific, narrow* claimed gaps in the United States' 650,000 document production.

The United States is available at the Court's convenience to discuss these issues.

Respectfully submitted,

*/s/ Marianne F. Kies*

Marianne F. Kies
*Trial Attorney*

Attachments
cc: Counsel of Record (*via ECF*)