# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

|  |  |
|---|---|
| IN RE: AQUEOUS FILM-FORMING FOAMS PRODUCTS LIABILITY LITIGATION | MDL No. 2:18-mn-2873-RMG <br><br> **ORDER** <br><br> **This Order Relates to All Cases** |

Before the Court is the Plaintiff Executive Committee's ("PEC") motion to compel Defendants E.I. du Pont de Nemours and Company ("Old DuPont"), the Chemours Company and Chemours Company FC, LLC (together, "Chemours," and collectively with Old DuPont, "Defendants") to produce certain documents over which Defendants have asserted attorney-client privilege and attorney work product protection. (Dkt. No. 2318). For the reasons set forth below, and as detailed herein, the Court grants in part and denies in part the PEC's motion.

## I. Background

The PEC moves to compel the production of various categories of documents over which Defendants have asserted attorney-client privilege and attorney work product protection. The PEC states that Old Dupont "withheld or redacted approximately 8,500 documents . . . on purported privilege grounds"—a figure representing "more than one-third of its responsive documents." The PEC also states Chemours withheld or redacted "over 27,000 documents"—a figure accounting for "more than 40% of its responsive documents." (Dkt. No. 2318 at 6-7). Defendants oppose. (Dkt. No. 2368).

## II. Legal Standard

Generally, parties to a civil litigation "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Information is relevant if it has any tendency to make a fact of consequence to the action more or less probable than it would be otherwise. Fed. R. Evid. 401. The district court may broadly construe rules enabling discovery, but it "must limit the frequency of extent of discovery otherwise allowed" if it determines that the discovery sought is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive"; if the requesting party "had had ample opportunity to obtain the information by discovery in the action"; or if it is otherwise "outside the scope permitted by Rule 26(b)(1)." Fed R. Civ. P. 26(b)(2). "The scope and conduct of discovery are within the sound discretion of the district court." *Columbus-Am. Discovery Grp. V. Atl. Mut. Ins. Co.*, 56 F.3d 556, 568 n.16 (4th Cir. 1993). A transferee court presiding over a multi-district litigation has broad discretion to manage such a docket containing voluminous cases. *See, e.g., In re Guidant Corp. Implantable Defibrillators Prod Liab. Litig.,* 496 F.3d 863, 867 (8th Cir. 2007).

**III.    Discussion**

   **a. Pertinent Factual Information**

In October 2013, Old Dupont announced it would spin-off its Performance Chemicals segment, which included its business lines giving rise to PFAS[1] liabilities, into a separate public company. (Dkt. No. 2318 at 11); (Dkt. No. 2368-2 at 19). Old Dupont formed Chemours around

---

[1] This multidistrict litigation ("MDL") concerns the presence of PFOA (perfluorooctanoic acid) and PFOS (perfluorooctane sulfonic acid), both types of per-and poly-fluoroalkyl substances ("PFAS"), in aqueous film forming foams ("AFFF"). Plaintiffs allege that the AFFF products at issue in this litigation contain PFAS, are harmful to human health and the environment, and constitute defects of AFFF. Old DuPont and Chemours are defendants in many cases contained within this MDL.

February 2014 as a wholly owned subsidiary of Old Dupont, (Dkt. No. 2368 at 10) and, around July 2014, designated a management team for Chemours, (Dkt. No. 2318-42 at 6) (naming the Chemours Executive Leadership team including CEO Mark Vergnano and General Counsel & Corporate Secretary David Shelton).

On December 10, 2014, Skadden, Arps, Slate, Meagher & Flom LLP ("Skadden") sent David Shelton of Chemours a letter disclaiming any past, current, or future legal relationship with Chemours. (Dkt. No. 2318-43 at 2-5) (the "Skadden Letter"). The Skadden Letter reads in pertinent part:

> Skadden's provision of legal services to DuPont in connection with the Representation has been at the request and on behalf of DuPont alone. Skadden is not being asked to provide, has not provided, and will not be providing, legal advice to, or establishing an attorney-client relationship with, Chemours in connection with the Representation, and Chemours will not be relying on Skadden to advocate for it or to protect its interests in connection therewith. As such, no attorney-client relationship is created or otherwise exists between Skadden and Chemours.
>
> . . .
>
> Skadden does not have any legal duties to Chemours arising out of or relating to the Representation. Accordingly, there have been, and in the future may be, situations in which the individual interests of Chemours on a particular issue have not been or are not the same as, or adverse to, the interests of DuPont. In those circumstances, Skadden, as counsel to DuPont, has taken and will take the position that is in the best interests of DuPont, even where potentially adverse to the interests of Chemours.

(*Id.* at 2-3).

On July 1, 2015, Old DuPont completed its spin-off of Chemours. (Dkt. No. 2368 at 10).

On August 14, 2019, Chemours filed a verified complaint against Old DuPont in the Court of Chancery of the State of Delaware asserting that Old Dupont underestimated the liabilities Chemours assumed so that the spin could be carried out and, when liabilities predictably exploded, argued that Chemours' indemnity obligations were unlimited, threatening its viability. *See, e.g.*,

(Dkt. No. 2318-26 ¶¶ 1-6); (*Id.* ¶ 4) (noting that at the time of the spin-off, Old DuPont was defending a multi-district litigation related to PFOA, that Old Dupont certified a "maximum" liability for these cases of $128 million, but that the actual settlement amount just 19 months later was $671 million, "over five times the supposed 'maximum'"); (*Id.* ¶ 59) (alleging Old DuPont extracted a $4 billion dividend from the deal) (the "Delaware Action"). The Delaware Action was referred to arbitration and Skadden represented Old Dupont in the litigation. (Dkt. No. 2318-90).

### b. The Attorney-Client Privilege

The attorney-client privilege protects "confidential disclosures by a client to an attorney made in order to obtain legal assistance." U*nder Seal v. United States (In re Grand Jury Subpoena: Under Seal)*, 415 F.3d 333, 338 (4th Cir. 2005) (omitting internal quotations). Accordingly, "the person seeking to invoke the privilege must prove that he is a client or affirmatively sought to become a client." *Id.* But the attorney client privilege is an exception to the general rule that the law is entitled to every man's evidence. As an exception to the rule, it is construed narrowly and the burden of demonstrating that the privilege applies rests on the party who invokes it. *See Solis v. Food Emplrs. Labor Relations Ass'n*, 644 F.3d 221, 231 (4th Cir. 2011).

### c. Attorney-Work Product

To qualify as work product, a defendant must show that the documents were made "in anticipation of litigation or for trial." Fed. R. Civ. P. 26(b)(3). If they were not made in anticipation of litigation, "the inquiry ends because the material is not protected." *Sandberg v. Virginia Bankshares, Inc.,* 979 F.2d 332, 355 (4th Cir.1992). To determine the applicability of the work product doctrine, the court generally needs more than mere assertions by the party resisting discovery that documents or other tangible items were created in anticipation of litigation. *See Pacific Employers Ins. Co. v. P.B. Hoidale Co., Inc.,* 142 F.R.D. 171, 173–74 (D.

4

Kan. 1992). The attorney must create the document "because of" the impending litigation. Work product generally does not apply, unless the primary motivating purpose for creating the document is to assist in pending or impending litigation. *Id.* "To invoke the doctrine, a party must show that the document was prepared principally or exclusively to assist in anticipated or ongoing litigation." *Burton v. R.J. Reynolds Tobacco Co.,* 170 F.R.D. 481, 48 (D.Kan.1997), *reconsidered in part,* 175 F.R.D. 321, (D. Kan. 1997). The fact that defendant anticipated litigation with plaintiff does not make all documents thereafter "generated by or for its attorneys subject to work product immunity. A party claiming work product immunity must still establish the underlying nexus between the preparation of the document and the specific litigation." *Burton,* 175 F.R.D. at 328.

**d. Discussion**

First, in Section IV(A) of their motion, (Dkt. No. 2318 at 18-23), Plaintiffs argue that the following communications are not privileged: (1) pre-July 1, 2015 communications between Old DuPont and Chemours regarding the spin-off; (2) post-spin-off communications regarding "the financial impact of the transaction on Chemours and Defendants' dispute over Chemours' indemnification obligations to Old DuPont"[2]; and (3) communications among "Chemours and its lawyers or Old DuPont and its lawyers that were produced to each other in the Delaware action or subsequent arbitration."

As to points 1 and 3, Defendants argue that the challenged communications are subject to the attorney-client privilege because Old DuPont and Chemours shared a joint-privilege as parent/subsidiary, and because the parties signed a "Separation Agreement," dated June 26, 2015,

---

[2] *See, e.g*, Pl. Ex. 12, (Dkt. No. 2318-13 at entries 3926-27); (*Id.* at entries 3982-83); (*Id.* at 3930, 3933-34, 3938, 3967, 4008-09); Pl. Ex. 23, (Dkt. No. 2318-24 at entries 149-50, 155-58); (*Id.* at entries 3371, 3379); (*Id.* at entries 151-52, 1379-80); Pl. Ex. 25, (Dkt. No. 2318-26) ("Representative Samples of Non-Privileged Communications Among Old DuPont and Chemours).

5

which purportedly deemed or otherwise preserved the privilege of documents exchanged between the parties both pre- and post-separation. *See* (Dkt. No. 2368 at 18 & n.5) (arguing the analysis "is the same" regarding documents exchanged between Old DuPont and Chemours both pre-spin-off and in Delaware Action); *see, e.g.*, Separation Agreement, (Dkt. No. 2368-7 § 7.7(a)) (stating that "each of the members of the DuPont Group and the Chemours Group should be deemed to be the client with respect to . . . pre-distribution services"); (*Id.* § 7.1(c)) (stating that the exchange of any material "within the attorney-client or attorney work product privileges shall not operate as a waiver of any potentially applicable privilege" and permitting each party to use such material in litigations or disputes between the parties without waiving applicable privileges).

The Court rejects Defendants' argument that the Separation Agreement renders the disputed communications privileged. "[B]lanket confidentiality clauses invoking the attorney-client privilege and work product doctrine do not necessarily make it so." *NXIVM Corp. v. O'Hara*, 241 F.R.D. 109, 140 (N.D.N.Y. 2007) (noting "[i]t is the facts, circumstances, and purpose that determine whether a communication with an attorney will deserve protection and its the anticipation of litigation that will convert a document into legal work product"); *DRFP, LLC v. Republica Bolivariana de Venezuela*, No. 2:04-CV-793, 2015 WL 6122988, at *2 (S.D. Ohio Oct. 19, 2015) (same). Further, Defendants' contention that courts "regularly enforce . . . contractual provisions" like those in the Separate Agreement is inaccurate. To this point, Defendants cite *S'holder Representative Servs. LLC v. RSI Holdco*, No. CV 2018-0517-KSJM, 2019 WL 2290916 (Del. Ch. May 29, 2019). *RSI Holdco*, however, merely provides that after a merger, the acquired company's privileged communications become property of the new company absent agreement to the contrary. *Id.* at *1.

Accordingly, the Court proceeds to analyze whether Defendants have met their burden of establishing the parties held a joint privilege.

In *In re Teleglobe Communications Corp.*, 493 F.3d 345 (3d Cir. 2007), the Third Circuit held that parent and subsidiary entities could not be considered co-clients simply based on their corporate relationship. *Id.* at 357, 380. As the court explained, "treating members of a corporate family as one client fails to respect the corporate form" and the "bedrock principal" of entity separateness. *Id.* at 371. Moreover, there are scenarios in which the interests of parents and subsidiaries will inevitably diverge, including "spin-off … situations." *Id.* at 373. Thus, "the majority—and more sensible view—is that even in the parent-subsidiary context a joint representation only arises when common attorneys are affirmatively doing legal work for both entities on a matter of common interest." *Id.* at 379. In *Grand Jury Subpoena #06-1*, for example, the Fourth Circuit held that communications between parent and subsidiary entities were not privileged where the subsidiary failed to show that the communications at issue pertained to a matter of common interest. *United States v. Under Seal #4 (In re Grand Jury Subpoena #06-1)*, 274 Fed. Appx. 306, 311–12 (4th Cir. 2008).

The Court finds that Defendants' pre-spin communications and all communications shared between the parties during the Delaware Action are not privileged. Defendants have not met their burden of establishing that Old DuPont and Chemours shared a joint privilege regarding these communications. Defendants put forth no concrete evidence with which to meet their burden of establishing that Old DuPont and Chemours had an "identical" or near identical legal interest in the spin-off. *See* (Dkt. No. 2368 at 22, 25-26). On the other hand, Plaintiffs have put forth evidence to the contrary in the form of the Skadden Letter and allegations from the Verified Complaint, which establish that Chemours and Old Dupont did not share "identical (or nearly so)" legal

7

interests and that, therefore, the challenged communications between them are not privileged. *In re Grand Jury Subpoena*, 274 Fed. App'x at 311 (citing *Teleglobe*, 493 F.3d at 362-63); *In re Teleglobe Communications, Corp.*, 493 F.3d at 379 (noting "the majority—and more sensible view—is that even in the parent-subsidiary context a joint representation only arises when common attorneys are affirmatively doing legal work for both entities on a matter of common interest"); *see also, e.g.*, Verified Complaint from the Delaware Action, (Dkt. No. 2318-36 ¶ 3) (alleging Old DuPont's management had a "keen incentive to downplay or close its eyes to the true 'maximum' liabilities at the time of the spin-off" and Old DuPont "look[ed] to shift as much liability onto Chemours as possible . . . and . . . to extract for DuPont a multi-billion-dollar dividend payment"); *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991) (noting a "*verified* complaint is the equivalent of an opposing affidavit for summary judgment purposes, when the allegations contained therein are based on personal knowledge").

Defendants' attempt to explain away the Skadden Letter is unavailing. Most substantively, Defendants argue that the Skadden Letter was "prospective" in that it sought to disclaim Skadden's attorney-client relationship with Chemours only upon completion of the spin-off. *See* (Dkt. No. 2368 at 27-28). That argument, however, finds no support in the text of the Skadden Letter which states: "Skadden's provision of legal services to DuPont in connection with the Representation has been at the request and on behalf of DuPont alone. Skadden is **not being asked to provide, has not provided, and will not be providing**, legal advice to, or establishing an attorney-client relationship with, Chemours in connection with the Representation, and Chemours will not be relying on Skadden to advocate for it or to protects its interests in connection therewith. As such, no attorney-client relationship **is created or otherwise exists** between Skadden and Chemours." (Dkt. No. 2318-43 at 3) (emphasis added).

8

Accordingly, the Court **orders** Defendants to produce to Plaintiffs, within 15 days of the issuance of this Order, all requested pre-spin communications between Old Dupont and Chemours, including communications to which Skadden is a party, and all communications among Chemours and its lawyers or Old DuPont and its lawyers that were produced to each other in the Delaware Action, including the subsequent arbitration. As explained above, Defendants have failed to show a joint privilege applies to said documents and thus, to the extent any privileged documents were shared by the parties in the Delaware Action, that privilege was waived by the disclosure of those documents.

As to point 2, post-spin-off communications regarding "the financial impact of the transaction on Chemours and Defendants' dispute over Chemours' indemnification obligations to Old DuPont," Plaintiff argues the documents are not protected by a common interest because the "Defendants' interests were not aligned in connection with discussions over the ramifications of the Spinoff and each company's respective responsibility for liabilities related to the Performance Chemical segment." (Dkt. No. 2318 at 22-23) (noting Defendants withheld "emails from April 2019 concerning Old DuPont's demand for indemnification with respect to clean-up directives issued by the State of New Jersey" but that within a month of the exchange Chemours brought the Delaware Action "based on this and other indemnification demands, alleging that the demands were unlawful and threated Chemours's solvency").

In response, Defendants argue the challenged documents relate to "cases in which [Old DuPont and Chemours] were both named as defendants, like the Ohio MDL and this AFFF MDL." (Dkt. No. 2368 at 29-30). Defendants state:

> For example, Plaintiffs include 16 entries from Historic DuPont's logs that are post-spinoff communications. Upon further review, Historic DuPont will correct redactions for three of these documents. (Ex. K, List of Challenged Log Nos. Historic DuPont Will Correct/Produce.) The remaining 13 reflect, request, or

9

> discuss legal advice about potential liabilities or reserves for ongoing litigation, such as the Ohio MDL.
>
> . . .
>
> Plaintiffs' argument that the Delaware Litigation shows that Historic DuPont and Chemours could not have a common interest with respect to ongoing litigation is misplaced. Historic DuPont and Chemours indisputably have a common interest in cases involving alleged PFAS contamination, such as the Ohio MDL, this MDL, or other individual cases like those alleging natural resources damages in New Jersey. (See, e.g., Mot. at 18 n.72 (flagging concerns about Log No. 3982, which is a document related to pending litigation in New Jersey about the Pompton Lakes natural resource damages ("NRD") directive).)

(*Id.* at 29-30).

"The common interest doctrine permits parties whose legal interests coincide to share privileged materials with one another in order to more effectively prosecute or defend their claims." *Hunton & Williams v. U.S. Dep't of Justice,* 590 F.3d 272, 277 (4th Cir. 2010). "To be protected under the common interest privilege, 'shared or jointly created information,' or communication between the parties, 'must first satisfy the traditional requisites for the attorney-client or work product privilege.'" *Mainstreet Collection, Inc.,* 270 F.R.D. at 243 (quoting *Minebea Co., Ltd. v. Papst,* 228 F.R.D. 13, 16 (D.D.C.2005)). "Additionally, the proponent of the privilege must at least demonstrate that (1) the communicating parties shared an identical legal interest, (2) the communication was made in the course of and in furtherance of the joint legal effort, and (3) the privilege had not been waived." *Id.* (quoting *Glynn v. EDO Corp.,* 2010 WL 3294347, at *7 (D. Md. Aug. 20, 2010)).

Currently, the Court denies Plaintiffs' motion without prejudice on the above point. The documents specifically discussed in Plaintiffs' motion to this effect are all contained on Defendants' respective Delaware Action privilege logs and, per the Court's ruling *supra*, must be produced regardless of the Court's ruling on the common interest doctrine. Therefore, to the extent

10

challenges remain on this point as to documents on Defendants' respective General Privilege Logs, within 30 days of the issuance of this order Plaintiffs may file a renewed motion as to said documents for the Court's consideration.

**Second**, in Section IV(c) of their motion, Plaintiffs challenge Defendants' contention that the attorney-client privilege shields documents between Defendants and certain third party professionals.[3] (Dkt. No. 2318 at 29-32). The Court first addresses Plaintiffs' challenges toward Chemours and then addresses Plaintiffs' challenges toward Old DuPont.

As to Chemours, Plaintiffs argue it has failed to establish any direct relationship with the third-party entities on its privilege log. For example, as to Alix Partners, Credit Suisse, Deloitte, Ernst & Young, Goldman Sachs, Houlihan Lokey, Evercore, JP. Morgan, Kekst CNC, KPMG International and PriceWaterhouse Copper, Plaintiffs argue that the respective engagement letters which have been produced form contractual relationships with *Old DuPont*—not Chemours—and thus Chemours has no basis to withhold communications with these entities. *See* Pl. Ex. 29, (2318-30) (listing challenged documents). Plaintiffs also provide a list of third-party entities with whom Chemours has withheld communications including, inter alia, Law 360, Douglas & London (one of Plaintiffs' counsel here), and the Delaware State Government. Pl. Ex. 30, (Dkt. No. 2318-31).[4] Plaintiffs argue Chemours has put forth no valid reason for withholding said documents and that they must be produced.

---

[3] *See* Ex. 29, (Dkt. No. 2318-30) ("Representative Samples of Non-Privileged Communications Among Third Parties") and Ex. 30, (Dkt. No. 2318-31) (listing third-parties found on Chemours' privilege logs).

[4] To the extent Plaintiffs challenge documents on Chemours' Delaware Action Privilege Log involving third parties—both as to this point and elsewhere in their motion—the Court need not directly address those challenges because the Court has already ruled that all documents at issue in Plaintiff's motion produced by Chemours or Old DuPont in the Delaware Action are not privileged and must be produced.

In response, as to Alix Partners, Credit Suisse, Deloitte, Ernst & Young, Goldman Sachs, Houlihan Lokey, Evercore, JP. Morgan, Kekst CNC, KPMG International and PriceWaterhouse Copper, Chemours appears to argue it held a joint privilege with Old DuPont regarding communications with these entities as it related to the spin-off and further, that these communications were either attorney-client communications or attorney-work product. *See* (Dkt. No. 2368 at 43). Chemours also argues that certain log entries are "[non-privileged] enclosures to privileged communications between Chemours" and its lawyers "relating to ongoing litigation" and are therefore "privileged attorney client communications and work product." (*Id.* at 43-44). Additionally, as to Pl. Ex. 30 (Plaintiff document listing communications with approximately 100 third parties Chemours has withheld as privileged), Chemours states only that "each of these entities has a different role and relationship with Chemours" but provides no detail nor evidence, by way of affidavit, engagement letter, or otherwise demonstrating privilege. (*Id.* at 43).

Communications with non-lawyer third-party professionals, such as financial advisors and consulting firms, may be privileged under two circumstances. *See Williams v. Big Picture Loans*, LLC., 303 F. Supp. 3d 434, 446–47 (E.D. Va. 2018). First, where the non-lawyer professional is acting as the agent of the attorney, its communications may be privileged if the professional was "translating" information between the attorney and the client. *Black & Decker Corp. v. United States*, 219 F.R.D. 87, 90 (D. Md. 2003) (omitting internal quotation). Second, where the non-lawyer professional is acting as the agent of the client, its communications may be privileged where the professional provides information "for the purpose of assisting in the rendition of legal services rather than merely for the purpose of receiving accounting [or other business] advice." *Williams*, 303 F. Supp. at 446 (omitting internal quotation and alteration); *Brown-Thomas v. Hynie*, No. 1:18-cv-2191-JMC, 2020 WL 6737757, at *8 (D.S.C. Nov. 17, 2020).

The Court overrules Chemours' above objections. As noted *supra*, the Court finds Chemours has not met its burden of establishing a joint privilege with Old DuPont regarding pre-spin-off communications or communications exchanged in the Delaware Action. Nor has Chemours met its burden of establishing a privileged relationship with any of the entities listed by Plaintiffs in their Exhibit 30. Further, the Court rejects Chemours' argument that a non-privileged attachment becomes undiscoverable simply because it is attached to a privileged document. *See Johnson v. Ford Motor Co.*, No. 3:13-cv-6529, 2015 WL 5193568, at *4–5 (S.D.W. Va. Sept. 3, 2015) (holding that email communications between company's employee and in-house counsel were protected by attorney–client privilege, but attachments were not); *see also Parsons v. Columbia Gas Transmission, LLC,* No. 2:19-CV-00649, 2021 WL 1894244, at *3 (S.D.W. Va. May 11, 2021) ("And the fact that an email attachment may be privileged or work product does not insulate an otherwise unprotected email communication from disclosure."). Accordingly, Chemours' above privilege objections are overruled and the challenged material, Pl. Ex. 29, (Dkt. No. 2318-30); Pl. Ex. 30, (Dkt. No. 2318-31) must be produced within 15 days of the date of this Order. All material withheld on a similar basis must also be produced.

As to Old Dupont, Pl. Ex. 29, (Dkt. No. 2318-30 at 2) (listing challenged documents form Old DuPont's General Production Privilege Log), Plaintiffs first challenge the withholding of communications with Alix Partners, Credit Suisse, Deloitte, Ernst & Young, Goldman Sachs, Houlihan Lokey, Evercore, JP. Morgan, Kekst CNC, KPMG International and PriceWaterhouse Copper. Plaintiffs argue the engagement letters Old Dupont signed with each entity do not establish said entities worked to provide legal advice. (Dkt. No. 2318 at 30-31) (noting Old DuPont's agreement with Credit Suisse indicated the relationship was an "arm's length business relationship" which did not give rise to "any fiduciary duty" and that those with the remaining

entities disclaim any agency relationship and state said entities were hired as independent contractors).

Old DuPont argues in response that the challenged documents are "protected by the attorney-work product doctrine because they reflect attorneys' assessments of ongoing or anticipated litigation." (Dkt. No. 2368 at 40).

To begin, as to five entries on Old DuPont's Delaware Action Log (Nos. 924, 1061, 1075, 2264, 3808), Old Dupont argues the documents are "litigation assessments" prepared by its attorneys which were shared with third parties for "accounting purposes." Putting aside the merits of an attorney work product argument, because said documents were produced in the Delaware Action, any privilege arguably present therein was waived and Old DuPont must produce these documents.

Next, as to one entry from Old DuPont's General Privilege Log, (Entry No. 2834), Old DuPont argues this document relates to "ongoing PFOA-related litigation and settlement with a public relations consultant" and contends *Calvin Klein Trademark Trust v. Wachner*, 198 F.R.D. 53, 55 (S.D.N.Y. 2000) protects disclosure.

The Court overrules Old DuPont's objection. *Wachner* observed that, "[t]urning to the assertion of 'work product,' it is obvious that as a general matter public relations advice, even if it bears on anticipated litigation, falls outside the ambit of protection of the so-called 'work product' doctrine embodied in Rule 26(b)(3), Fed.R.Civ.P. That is because the purpose of the rule is to provide a zone of privacy for strategizing about the conduct of litigation itself, not for strategizing about the effects of the litigation on the client's customers, the media, or on the public generally." *Id.* at 55. Then, turning to the facts at hand, *Wachner* contemplated protection for attorney-work product shared with a public relationship firm only where "the public relations firm needs to know

14

the attorney's strategy in order to advise as to public relations, and the public relations impact bears, in turn, on the attorney's own strategizing as to whether or not to take a contemplated step in the litigation itself and, if so, in what form." *Id.* To the extent this Court were even to adopt *Wachner*'s reasoning, Old DuPont has not come close to establishing such circumstances here. Accordingly, the challenged document must be produced.

Next, as to eleven entries on Old DuPont's General Privilege Log (Nos. 2130, 2287, 2291, 2308, 2332) and (Nos. 1984, 2002, 2013, 2020, 2023), Old DuPont argues the documents relate to a "potential dispute with Chemours in late-2015" and are protected as attorney work product or attorney-client communications despite being shared with third-parties. Namely, Old DuPont says it shared the documents at issue "with Alix Partners and Goldman Sachs, professionals who provided financial expertise to assist the lawyers in evaluating the potential dispute and a potential resolution." (Dkt. No. 2368 at 41-42) (citing the Alix Partners' Agreement).

The Court overrules Old DuPont's objections. Old DuPont puts no forth no evidence—either *in camera* or otherwise—demonstrating Alix Partners or Goldman Sachs were acting as "translators" or assisting in rendering legal services as contemplated by the applicable case law cited above. The engagement letters with Alix Partners and Goldman Sachs do not support Old DuPont's arguments. The Alix Partners letter is heavily redacted[5] and states only that Alix Partners would provide "financial advisory and consulting services." (Dkt. No. 2318-52). And the Goldman Sachs engagement letter, dated April 25, 2014—over a year before the "potential dispute" Old DuPont claims it had with Chemours in "late 2015 and the beginning of 2016"—explicitly states Goldman Sachs was engaged as a "financial advisor in connection with a possible

---

[5] Though the burden rests on Old DuPont to establish privilege, Old DuPont did not provide an unredacted version of the engagement letter to the Court.

15

separation transaction," namely the Spin-Off. (Dkt. No. 2318-53 at 2); (Dkt. No. 2368-1 ¶ 14) (stating "a small number of professional at Alix Partners, along with Goldman Sachs, assisted Historic DuPont's General Counsel and outside counsel at [Skadden] and Jones Day LLP in responding to correspondence from Chemours that raised the possibility of a dispute between the companies and a resolution of that dispute"); *Williams*, 303 F. Supp. 3d at 477 (communications with third-party analytics firm not privileged where the firm's engagement letter reflected it was retained to perform business services). Further, while Old DuPont states that both Alix Partners and Goldman Sachs supposedly provided "financial expertise to assist the lawyers in evaluating [a] potential dispute and a potential resolution" with Chemours, Old DuPont provides no concrete details or evidence as to what the "dispute" consisted off and thus cannot demonstrate how the challenged materials were prepared because of potential litigation. *Burton,* 175 F.R.D. at 328 (noting the "party claiming work product immunity must [] establish the underlying nexus between the preparation of the document and the specific litigation.")  Accordingly, Old DuPont's objections are overruled.

Last, Old DuPont argues that four entries including individuals from Deloitte on Old DuPont's Delaware Action log (Nos. 4, 380, 381, 388) are protected as attorney-client communications because Skadden hired Deloitte to assist with valuation of Old DuPont's litigation liabilities in preparation for the spin-off. As noted above, however, the Court has already ruled that all documents produced in the Delaware Action are not privileged.  Accordingly, the Court overrules this objection.

In sum, as to Old DuPont and the challenged communications with respect to third parties, Pl. Ex. 29, (Dkt. No. 2318-30 at 2) (listing challenged documents on Old DuPont's General Production Privilege Log), and all documents withheld on a similar basis, the Court overrules Old

16

DuPont's objections and directs that Old DuPont produce said documents to Plaintiffs within 15 days of the issuance of this Order.

Next, in Section IV(D), Plaintiffs criticize what they characterize as Defendants' "abusive redaction tactics." Most substantively, Plaintiffs assert that for "numerous communications, Chemours logged only the top email but redacted subsequent communications in the chain—including the from, sent, cc and subject lines—such that plaintiffs are entirely unable to discern the basis for Chemours's assertion of privilege (or even how many communications have been withheld)." (Dkt. No. 2318 at 34 & nn. 111-12) (challenging various documents from Chemours Delaware Action privilege log on this basis). The Court finds such redactions improper. *See In re Vioxx Prod. Liab. Litig.*, 501 F. Supp. 2d 789, 812 (E.D. La. 2007) ("Simply because technology has made it possible to physically link these separate communications (which in the past would have been separate memoranda) does not justify treating them as one communication and denying the demanding party a fair opportunity to evaluate privilege claims raised by the producing party."). Accordingly, within 15 days of the issuance of this order, Defendants must amend their privilege logs and production accordingly.

Plaintiffs also point to redactions of publicly available material or to material produced in *both* redacted and unredacted form, purportedly "call[ing] into question the reliability of each and every entry" on Chemours's privilege log. *See* Pl. Ex. 23, (Dkt. No. 2318-24 at entry 23803) (withholding PowerPoint because it referenced "legal and other charges"); Pl. Ex. 60, (Dkt. No. 2318-61) (unredacted copy of PowerPoint listed on privilege log and available on Chemours' website); Pl. Ex. 64 (Dkt. No. 2318-65) (redacted version of April 2017 Chemours Q2 financial investor Q&A); Pl. Ex. 65, (Dkt. No. 2318-66) (unredacted version of same document demonstrating redacted portion was clearly not privileged and demonstrating Chemours' privilege

log entry did not accurately describe the document). These exemplar documents are concerning and Defendants are directed, within 15 days of the issuance of this order, and considering the rulings therein, to meet and confer with Plaintiffs regarding the remaining documents at issue on Pl. Ex. 31, (Dkt. No. 2318-32).  Within 30 days of this order, to the extent challenges remain on this point, Plaintiffs may file a renewed motion to compel on this issue.

Next, in Section IV(E), Plaintiffs challenge communications which Defendants have deemed privileged "merely" because in-house counsel was copied. Pl. Ex. 32, (Dkt. No. 2318-33). In their motion, Plaintiffs discuss exemplary documents only from Defendants' respective Delaware Action Logs. (Dkt. No. 2318 at 35-36 & nn. 115-17).  Plaintiffs do not, however, explain specific objections to Defendants' respective General Production Privilege Logs.  As the Court is unclear as to Plaintiffs' objections regarding communications *not* on Defendants' respective Delaware Action logs, the Court denies Plaintiffs' motion without prejudice on this point with leave to refile within 30 days to address specific challenges on the above basis per Defendants' General Production privilege logs.

Plaintiffs next argue, in Section IV(F), that Defendants have not met their burden of showing the attorney-client privilege applies to "large swaths of documents."  (Dkt. No. 2318 at 36-38). On this point, Plaintiffs argue that Old Dupont wrongfully withheld documents for which they have not identified "an attorney whose legal advice was sought or reflected." (*Id.* at 36).  To this point, Plaintiffs argue "Old DuPont . . . erroneously asserts that its log contain sufficient information because hundreds of communications were found in the custodial files of Michelle Olson, an account consultant, and Ms. Olson frequently communicated with lawyers." (*Id.* at 37); (Dkt. No. 2318-10 at 4) (Old DuPont correspondence regarding this challenge stating "Michelle Olson, an accounting consultant at Historic DuPont, is listed as the custodian of almost 600 of the

18

2,184 challenged documents, and a further 261 entries are emails where Michelle Olson was the sender or was a recipient. Historic DuPont's privilege log demonstrates that the vast majority of Ms. Olson's documents reflect consistent collaboration between Historic DuPont's attorneys and its in-house accounting team, during which Historic DuPont's counsel provided advice on issues such as Historic DuPont's SEC filings and the calculation of legal reserves and/or liabilities. (See, e.g., Log No. 6 ("Spreadsheet reflecting or discussing legal advice of counsel regarding litigation reserve."); Log No. 17 ("Draft document reflecting or discussing legal advice of counsel regarding SEC filing language.").) As such, those documents are covered by attorney-client privilege, even if the documents reflecting counsel's legal advice were shared between or among DuPont employees."). In their motion, Plaintiffs provide no further detail as to how Old DuPont's privilege log entries with Ms. Olson are deficient. *See* (Dkt. No. 2318 at 37).

The Court denies Plaintiffs' motion on the above point. Plaintiffs' motion does not describe for the Court specific examples of purportedly defective privilege log entries, while Defendants' opposition provides citations to entry Nos. 10, 38, 166, and 943 from Old DuPont's General Privilege Log which, if credited, would arguably establish privilege. *N.L.R.B. v. Interbake Foods, LLC*, 637 F.3d 492, 501–02 (4th Cir. 2011) (When a party relies on a privilege log to assert these privileges, the log must "as to each document set forth specific facts that, if credited, would suffice to establish each element of the privilege or immunity that is claimed.") (internal citation and alterations omitted).

As to Chemours, Plaintiffs challenge two entries. Pl. Ex. 33, (Dkt. No. 2318-34); Pl. Ex. 22, (Dkt. No. 2318-23 at entries 71, 2180). As to entry 71, the Court overrules Chemours' objections as the document is a pre-spinoff document between Chemours and Old DuPont and the Court ruled, *supra*, that no joint privilege applies to the document. As to entry 2180, the Court

19

finds the entry adequately describes a privileged communication, and Plaintiff's motion is denied as to this document.

Last, in Section IV(G), Plaintiffs challenge Defendants' work product assertions over various documents. (Dkt. No. 2318 at 38); Pl. Ex. 34, (Dkt. No. 2318-35) (listing work product challenges). Plaintiffs argue Defendants have not put forth specific facts showing said documents were prepared in anticipation of litigation.

As to Old DuPont's General Privilege Log entries on Pl. Ex. 34, (Dkt. No. 2318-35), the Court denies Plaintiff's motion on this point, finding the challenged entries are adequately logged.

As to the challenged entries on Chemours General Privilege Log, Pl. Ex. 34, (Dkt. No. 2318-35), the Court denies Plaintiffs' motion. In opposition, Chemours justifies the withholding of the challenged documents, (Dkt. No. 2368 at 55), justifications which Plaintiffs did not attempt to rebut in their reply, *see generally* (Dkt. No. 2402).[6]

### IV.  Conclusion

As detailed herein, the PEC's motion to compel (Dkt. No. 2318) is **GRANTED IN PART AND DENIED IN PART**.

**AND IT IS SO ORDERED.**

> s/ Richard Mark Gergel
> Richard Mark Gergel
> United States District Judge

December 1, 2022
Charleston, South Carolina

---

[6] Currently, the Court finds it unnecessary to address Plaintiffs' argument that all documents are discoverable under the crime-fraud exception. Further, to the extent Plaintiffs challenged a particular privilege log entry on more than one basis in their motion, and the Court denied the PEC's motion with prejudice as to one of those bases here, Plaintiffs may nevertheless challenge that entry again as to any basis on which the Court denied Plaintiffs' motion *without prejudice*.