

**William J. Jackson**

Kelley Drye & Warren LLP
515 Post Oak Boulevard
Suite 900
Houston, TX 77027

Tel: (713) 355-5050
Fax: (713) 355-5001

December 12, 2022

**Via ECF**

The Honorable Richard M. Gergel
U.S. District Court for the District of
    South Carolina
J. Waties Waring Judicial Center
83 Meeting Street
Charleston, SC 29401

    Re:    *In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, MDL No. 2:18-mn-2873-RMG (D.S.C.) (specifically relating to Civil Action No. 2:21-cv-146-RMG) — Plaintiff New Jersey Department of Environmental Protection's Response to the United States' Asserted Jurisdictional Issues and Requested Briefing Schedule

Dear Judge Gergel:

    Plaintiff New Jersey Department of Environmental Protection ("NJDEP") submits this response to the United States' letter, dated November 25, 2022, requesting a schedule for briefing the United States' potential jurisdictional motions based on its sovereign immunity. NJDEP files this response in addition to the PEC's response in order to raise a legal issue specific to NJDEP's case that NJDEP believes should also be addressed if the Court permits the United States to file motions regarding its immunity at this time. Specifically, NJDEP requests that, in the event the Court allows the United States to file any such motions, NJDEP be permitted to file a cross-motion for partial summary judgment that the United States has waived its sovereign immunity under the federal Safe Drinking Water Act ("Federal SDWA") and New Jersey's Safe Drinking Water Act ("NJSDWA"). Discharges by the United States have created "an imminent and substantial endangerment to public health" as defined by both federal and state statutes, so prompt action to address this endangerment is critical. Because the United States has expressly waived sovereign immunity as to the Federal SDWA and NJSDWA claims brought by NJDEP, NJDEP's proposed cross-motion directly relates to the issues sought to be adjudicated in the United States' Letter and can be resolved without the need for discovery as it is a purely legal issue.

    NJDEP is a national leader in responding to drinking water and other natural resources that have been contaminated by per- and poly-fluoroalkyl substances ("PFAS"). New Jersey was the first state to establish a maximum contaminant level ("MCL") for a PFAS chemical in 2018, and NJDEP has continued to lead the country in many aspects of the necessary response to and regulation of these pernicious chemicals.

Hon. Richard M. Gergel<br>December 12, 2022

In this MDL, NJDEP has brought claims against the United States pursuant to the Federal SDWA and NJSDWA, asserting that the United States' discharge of aqueous film-forming foam ("AFFF") containing perfluorooctanoic acid ("PFOA") and perfluorooctanesulfonic acid ("PFOS") that has contaminated drinking water, including above New Jersey's MCLs, constitutes an imminent and substantial endangerment to public health within the meaning of the Federal SDWA and NJSDWA. *See* 42 U.S.C. § 300i; N.J.S.A. 58:12A-6. Critically, **Congress has expressly waived the United States' sovereign immunity** from suit under the Federal SDWA and requires the United States to comply "with, all Federal, State, interstate, and local requirements, both substantive and procedural." 42 U.S.C. § 300j-6(a).

As this Court knows, the United States' Letter raises two issues related to its sovereign immunity. Those are, first, the "Timing of Review" provision of Section 113(h) of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), 42 U.S.C. § 9613(h), and, second, the discretionary function exception to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2680(a). The United States refers to these two issues as "*global* issues surrounding subject-matter jurisdiction over the United States." U.S. Letter (Doc. No. 2684) at 1. The United States acknowledges the various claims made against it, including FTCA claims and claims "under federal environmental statutes such as CERCLA, the Resource Conservation and Recovery Act, and the Safe Drinking Water Act" and broadly asserts sovereign immunity and a lack of subject matter jurisdiction (thereby implying a lack of jurisdiction for all claims), yet it only sets forth legal arguments under the FTCA and CERCLA. Nowhere does it allow for the resolution of the purely legal question of whether it is entitled to immunity from the claims by those plaintiffs seeking relief pursuant to the Federal SDWA and, where applicable, a state's SDWA-analog statute.

The United States argues that the Court has acknowledged that the United States' "immunity should be considered 'Number 1' alongside the government contractor defense," U.S. Letter at 2, and that an early ruling on whether the United States enjoys immunity against the claims brought against it and the Court's jurisdiction to hear them would provide an important initial gating function that will broadly affect the course of litigation. *See* Second Am. Statement of Defenses by the United States of America, at 2-3 & n.1 (Doc. No. 2628) (filed Sept. 30, 2022) [hereinafter, "U.S. Am. Statement of Defenses"].

NJDEP agrees that the United States' purported immunity is a critical threshold issue, especially as it applies to drinking water standards properly established pursuant to the Federal SDWA and state-analog SDWA statutes such as the NJSDWA. The United States and NJDEP have met and conferred on this issue since March 2021. NJDEP has consistently insisted that the United States follow New Jersey's MCLs, and the United States has consistently stated that the Department of Defense will not do so. This issue is ripe for determination.

In deference to the Court's decision to first address the manufacturers' government contractor defense and to the PEC's management of this matter, NJDEP has held its request for leave to file a motion for summary judgment based on the United States' express waiver of immunity from suit on NJDEP's federal and state SDWA claims. However, the fact that New Jersey's drinking water sources are contaminated by PFOA and PFOS at levels above New Jersey's MCLs raises an imminent and substantial endangerment issue, and NJDEP simply must advance this issue now, especially since the United States

Hon. Richard M. Gergel
December 12, 2022

wants its sovereign immunity adjudicated by the Court. Accordingly, NJDEP requests the Court to permit it to file a cross-motion to any motion filed by the United States on its immunity, so that NJDEP can timely address Congress's ***express waiver*** of the United States' sovereign immunity under the Federal SDWA and NJSDWA.

## BACKGROUND

NJDEP filed suit against the United States in this MDL to require the United States to address contamination of New Jersey's drinking water supplies by its discharge of AFFF that contains, among other things, PFOA and PFOS from the Joint Base McGuire-Dix-Lakehurst, Naval Weapons Station Earle, and the Naval Air Warfare Center Trenton (the "Bases"), among possible other sites. PFOA and PFOS contamination constitutes an "imminent and substantial endangerment" to public health within the meaning of the Federal SDWA and NJSDWA. *See* 42 U.S.C. § 300i; N.J.S.A. 58:12A-6.

New Jersey has established MCLs for PFOA of 14 parts per trillion ("ppt") and for PFOS of 13 ppt. The United States has discharged AFFF containing PFOA and PFOS in New Jersey, which has resulted, or which may result, in the contamination of water supplies in wellhead protection areas. But, the United States has consistently refused to follow state MCLs in several states. It has refused to follow the MCLs in New Jersey that are below the 70 ppt health advisory limit ("HAL") established by the U.S. Environmental Protection Agency ("EPA") in 2016, and it has since refused to follow the new .004 ppt and .010 ppt HALs for PFOA and PFOS, respectively. NJDEP brought this action on January 14, 2021 against the United States under the Federal SDWA and NJSDWA, seeking to require the United States to follow the State's properly promulgated drinking water standards. Every other citizen, water provider, and governmental entity in New Jersey must follow New Jersey's MCLs, and so should the United States.

Although the United States may enjoy sovereign immunity in many contexts, Congress has expressly waived the United States' sovereign immunity under the Federal SDWA and required the United States to comply "with, all Federal, State, interstate, and local requirements, both substantive and procedural." 42 U.S.C. § 300j-6(a). Specifically, Section 300j-6(a) provides that any federal agency that

> (1) own[s] or operat[es] any facility in a wellhead protection area; (2) engage[s] in any activity at such facility resulting, or which may result, in the contamination of water supplies in any such area; or (3) own[s] or operat[es] any public water system . . . ***shall be subject to, and comply with, all Federal, State, interstate, and local requirements***, both substantive and procedural (including any requirement for permits or reporting or any provisions for injunctive relief and such sanctions as may be imposed by a court to enforce such relief), respecting the protection of such wellhead areas, respecting such public water systems, and respecting any underground injection ***in the same manner and to the same extent as any person is subject to such requirements***, including the payment of reasonable service charges.

*Id.* (emphasis added).

Hon. Richard M. Gergel
December 12, 2022

This express waiver of sovereign immunity applies not only to claims that New Jersey is authorized to assert[1] pursuant to the Federal SDWA, but also claims pursuant to NJSDWA. *See id.* The United States has also waived its sovereign immunity for migration of contamination to offsite wellhead areas caused by onsite activities, as well as its immunity for State enforcement with respect to public and private wells. *See id.*

NJDEP seeks relief pursuant to 42 U.S.C. § 300i and N.J.S.A. 58:12A-6, both of which authorize NJDEP to "take such actions as [it] may deem necessary" to protect the health of New Jersey residents if it possesses information that a contaminant which is present in or is likely to enter" a water system "may present an imminent and substantial endangerment to the health of persons."   42 U.S.C. § 300i; N.J.S.A. 58:12A-6.

## ARGUMENT

For the reasons discussed below, NJDEP should be permitted to file a cross-motion regarding the United States' express waiver of immunity from suit as it relates to NJDEP's Federal SDWA and NJSDWA claims.

### A.   The Presence of PFOA and/or PFOS in New Jersey's Drinking Water Presents an Imminent and Substantial Endangerment to the Health of New Jersey's Residents

Under both the Federal SDWA and NJSDWA, NJDEP is charged with protecting New Jersey citizens from contaminants that cause an imminent and substantial endangerment. *See* 42 U.S.C. § 300i; N.J.S.A. 58:12A-6.

The presence of PFOA and/or PFOS in New Jersey's drinking water that exceeds an MCL presents an imminent and substantial endangerment to the health of New Jersey's citizens. The Federal SDWA's legislative history shows that Congress unambiguously intended that an exceedance of an MCL can constitute an imminent and substantial endangerment where the MCL applies to contaminants, like PFOA and PFOS, that, among other things, have carcinogenic effects.[2] Indeed, EPA has specifically singled out MCL exceedances of PFOA as an example of an imminent and substantial endangerment within the

---

[1] New Jersey passed its own Safe Drinking Water Act in 1977. *See* N.J.S.A. 58:12A-l et seq. Pursuant to NJSDWA, NJDEP has "primary enforcement responsibility under the Federal Safe Drinking Water Act." *Id.* 58:12A-2. Accordingly, New Jersey, acting through NJDEP and its Commissioner, can enforce both federal and state standards on its own behalf.

[2] *See* Legislative History of SDWA, H.R. Rep. No. 1185, 93rd Cong., 2d Sess. 36, *reprinted in* 1974 U.S.C.C.A.N. 6454, 6488 (H.R. 93-1185); House Comm. on Interstate and Foreign Commerce, H.R. Rep. No. 96-186, 96th Cong., 1st Sess. 4-6 (1979); Senate Comm. on Environment and Public Works, S. Rep. No. 96-161, 96th Cong., 1st Sess. 3 (1979). *See also United States v. Conservation Chem. Co.*, 619 F. Supp. 162, 194 (W.D. Mo. 1985) (citing legislative history of analog provision in the federal Resource Conservation and Recovery Act).

Hon. Richard M. Gergel
December 12, 2022

meaning of 42 U.S.C. § 300i. *See* EPA Memorandum, *Updated Guidance on Emergency Authority Under Section 1431 of the Safe Drinking Water Act*, EPA Office of Enforcement & Compliance Assurance, at 10 (May 30, 2018). And EPA also recognizes that ***any*** concentration of PFOA or PFAS may be an imminent and substantial endangerment pursuant to 42 U.S.C. § 300i.[3]

Information gathered to date by NJDEP concerning the impacts of PFOS in drinking water wells indicates there are exceedances of New Jersey's 13 ppt PFOS MCL, as well as PFOS detections below the MCL at public wells onsite and offsite at various U.S. Department of Defense facilities and at private wells offsite, that likewise present an imminent and substantial endangerment within the meaning of 42 U.S.C. § 300i and N.J.S.A. 58:12A-6. In some cases, the exceedances and detections are within wellhead protection areas onsite and/or offsite and, in certain cases, involve private wells within or outside wellhead protection areas. The undisputed facts show, at a minimum, that one or more of the Bases, or portions of them, are within a wellhead protection area and that PFOS contamination in excess of New Jersey's PFOS MCL is present within a wellhead protection area. *See* 42 U.S.C. § 300j-6(a)(2).

> **B. A Motion for Partial Summary Judgment Will Involve the Single Purely Legal Issue of Whether the Government Has Waived Sovereign Immunity Under the Federal SDWA and NJSDWA**

The United States asserts in its Letter that the issues of immunity and the Court's jurisdiction to hear such claims should be ruled on now and that "further site-specific discovery is unnecessary to consider the *global* issues surrounding subject-matter jurisdiction over the United States." U.S. Letter at 1. NJDEP's cross-motion for partial summary judgment limited to the single legal issue regarding whether the United States is immune from suit on its Federal SDWA and NJSDWA claims is appropriate at this juncture to provide a vital gating function that will affect not only the breadth of discovery, but also the

---

[3] For example, on or about November 2, 2022, EPA entered into an Administrative Order on Consent with 3M in which the U.S. Environmental Protection Agency ("EPA") expressly found that its June 15, 2002 interim updated drinking water health advisory level "indicate that some ***negative health effects*** may occur with concentrations of PFOA or PFOS in water ***that are near zero***." *In re 3M Company*, No. SDWA-HQ-2023-0001-EO, Administrative Order on Consent in Proceeding Under Section 1431(a)(1) of the Safe Drinking Water Act, 42 U.S.C. § 300i(a)(1), ¶ 38 (emphasis added), *available at* https://www.epa.gov/system/files/documents/2022-11/Final.signed.AOC%20SDWA%201431.3M%20Cordova%20IL.Nov_.%2003%202022_1.pdf (last visited Nov. 23, 2022). EPA noted that private well concentrations were "***non-detect*** to 25 ppt" for PFOA and "***non-detect*** to 30 ppt" for PFOS near 3M's Cordova, Illinois facility and, pursuant to 42 U.S.C. § 300i, concluded that "there is a contaminant present in, or likely to enter, a [Public Water Supply] or [Underground Source of Drinking Water] which may present an imminent and substantial endangerment to the health of persons living in the vicinity of the Facility where PFAS emissions, releases, discharges and land-application have occurred or may be occurring." *Id.* ¶ 61; *see also* EPA, 3M Cordova, *located* at https://www.epa.gov/il/3m-cordova (emphasis added) (last visited Nov. 23, 2002).

Hon. Richard M. Gergel
December 12, 2022

rights of other plaintiffs to pursue similar relief pursuant to the federal SDWA and/or state SDWA-analog statutes, like NJSDWA.

    C.    **The Requested Relief Will Narrow and Simplify Triable Issues for Claims Against the United States in Those States That, Like New Jersey, Have Enacted PFOA or PFOS MCLs**

A ruling by the Court concluding that the United States has waived its sovereign immunity with respect to federal SDWA and state SDWA-analog claims and that the Court has jurisdiction to hear them would simplify triable issues not only in NJDEP's case, but also for similar claims by states, like New Jersey, that have enacted PFOA or PFOS MCLs.[4] Consequently, in addition to the United States' assertion that issues bearing upon the Court's jurisdiction (like the United States' waiver of sovereign immunity) should be decided early, a ruling as to whether the United States has waived sovereign immunity is timely as a matter of judicial economy and efficiency. NJDEP, therefore, should be permitted leave to file a cross-motion for partial summary judgment to resolve the question of the United States' waiver of sovereign immunity for NJDEP's Federal SDWA and NJSDWA claims at this time.

## CONCLUSION

For the foregoing reasons, NJDEP respectfully requests that, if the Court permits the United States to file its motions regarding its immunity from suit with regards to any claims against it, the Court permit NJDEP to file a cross-motion for partial summary judgment regarding the United States' express waiver of immunity under the Federal SDWA.

    Respectfully submitted,

    William J. Jackson

cc:   Counsel of Record (via ECF)

---

[4] In addition to New Jersey, MCLs have been promulgated or enacted for PFOA and PFOS (as well as, in some cases, other PFAS) in Massachusetts, Michigan, New Hampshire, New York, and Vermont —all of which are plaintiffs with member cases in the multidistrict litigation. Other enforceable contaminant levels have been promulgated or enacted for PFOA, PFOS, and/or other PFAS in Alaska, California, Connecticut, and Rhode Island.