

**U.S. Department of Justice**

Frederick Gaston Hall
Trial Attorney
Civil Division, Environmental Torts

*Telephone: (202) 616-4211*  175 N Street, N.E.
*Facsimile: (202) 616-4473*  3 CON, Room 11.224
*Email: frederick.g.hall@usdoj.gov*  Washington, DC 20002

December 19, 2022

**VIA ECF**
The Honorable Richard M. Gergel
U.S. District Court for the District of
    South Carolina
J. Waties Waring Judicial Center
83 Meeting Street
Charleston, SC 29401

    Re:    *In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, No. 2:18-mn-02873 (D.S.C.) – Reply Concerning Briefing the United States' Motions

Dear Judge Gergel,

    The United States submits this reply letter in response to the Plaintiffs' Executive Committee's ("PEC") and State of New Jersey's letters (ECF Nos. 2719 & 2720) concerning a briefing schedule for the United States' two global jurisdictional issues: the discretionary function exception of the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2680(a), and the "Timing of Review" provision of § 113(h) of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), 42 U.S.C. § 9613(h).

    At the outset of discovery in this MDL, an accord was reached. Notwithstanding that the United States asserted sovereign immunity to the tort claims made against it—and a corresponding immunity to any discovery—the United States agreed to produce, in addition to discovery relevant to the United States' immunity claims, robust discovery concerning issues relevant to the government contractor defense. Thus, the United States produced documents and witnesses—and is *still* producing documents—many of which are unimportant to the claims against the United States, to allow the parties a full record on which to litigate their claims and defenses, including the government contractor defense. All parties made great use of that discovery in the recent summary judgment briefing.

    In return, the United States expected that its jurisdictional issues would be addressed next. And so, while producing the government contractor discovery, the United States also produced, in parallel, huge amounts of discovery from the Air

Force and Army facilities with substantial monetary damage claims, to fulfill any obligation to Plaintiffs for jurisdictional discovery.  We also expressly told the Court and the parties that, in advance of a government witness deposition, we would produce "detailed declarations . . . including exhibits, which [are] essentially a roadmap to our direct examination" for "issues that are pertinent to the . . . discretionary function immunity, but may not necessarily be relevant to what the parties are asking."  Hr'g Tr. at 14:14-23 & 15:7-12 (Apr. 16, 2021), ECF No. 1538.  Accordingly, a year and a half ago, we provided a 61-paragraph, 29-exhibit declaration of the long-standing Chief Fire Protection Engineer for the Air Force in advance of his three-day deposition.  We will do the same for the remaining declarants that the United States will rely on to support its motions to dismiss.

Now, the PEC is trying to go back on this long-standing accord.  The PEC's complaints about discovery are of their own making.  The United States has been transparent about its discovery efforts and the widely telegraphed jurisdictional motions in each of the monthly JSRs.  Now that the time has come for these issues to be decided, the PEC is not entitled to demand discovery that pretends the last three years and more than a hundred thousand documents produced for the jurisdictional motions never happened.  And in all events, the United States' proposed schedule still gives Plaintiffs five months to review that discovery to oppose the planned motions and to meet and confer with the United States on specific and narrow requests for additional discovery and information.

To be clear, under the FTCA, the United States' position is that the United States has not waived sovereign immunity because the military's use and handling of AFFF was "discretionary in nature." *United States v. Gaubert,* 499 U.S. 315, 322 (1991).  In order to defeat that proposition, Plaintiffs[1] must identify a mandatory "federal statute, regulation, or policy [that] specifically prescribes a course of action," *Berkovitz v. United States,* 486 U.S. 531, 536 (1988), and "expressly articulate[s a] standard to limit the Government's discretion," *Goldstar (Pan.) S.A. v. United States,* 967 F.2d 965, 970 (4th Cir. 1992).  The United States will show that, during the relevant time period, there was no mandatory and specific directive that dictated how the military trained with, or handled, AFFF.  Only if the Court were to find a mandatory and specific federal directive existed during the relevant time period would any more granular discovery be appropriate from the United States because "[t]he value of any kind of immunity, applied here as a jurisdictional bar, declines as litigation proceeds." *Seaside Farm, Inc. v. United States*, 842 F.3d 853, 861 (4th Cir. 2016).

---

[1] The PEC asks the Court (at 5 & n.16) not to follow the law of the Fourth Circuit that Plaintiffs bear the burden of establishing the discretionary function exception does not apply, noting that other Circuits may have different legal standards.  But it is well established that, when a case is transferred, the transferee court's substantive federal law governs. *See Belmora LLC v. Bayer Consumer Care AG*, 987 F.3d 284, 293 (4th Cir.), *cert. denied*, 142 S. Ct. 483 (2021).

Under CERCLA § 113(h), the United States will show that facilities for which the United States has been sued are undergoing investigations under CERCLA and that the relief sought by many Plaintiffs related to those facilities will interfere with the United States' response actions under CERCLA. *See, e.g., Broward Gardens Tenants Ass'n v. EPA*, 311 F.3d 1066, 1072 (11th Cir. 2002). There is no requirement that a specific removal or remedial action be formally selected for CERCLA § 113(h) to apply. Even responses in the planning and investigatory phases are protected. *See Cannon v. Gates*, 538 F.3d 1328, 1334 (10th Cir. 2008). New Jersey argues that the United States has waived sovereign immunity from claims under the Safe Drinking Water Act and its state analogue, but CERCLA § 113(h) is an antecedent question to waivers of immunity. If a lawsuit challenges ongoing CERCLA work, then CERCLA § 113(h) removes jurisdiction regardless of any waivers of immunity (if they exist). Thus, there is no need to address New Jersey's arguments unless the Court rules that CERCLA § 113(h) does not apply.

Two additional issues raised on the PEC's letter are worth mentioning:

***Stuart* and bellwethers.** The fact that the *Stuart* trial will start in June 2023 should be irrelevant to the schedule for the United States' jurisdictional motions. Two of the three members of the PEC have no claims against the United States and can continue to focus on *Stuart*. There are many plaintiffs' counsel who are not part of the *Stuart* trial and who could be tasked to lead, coordinate, or assist the oppositions to the United States' motions. *See, e.g.*, ECF No. 2684-1 at 5-13; ECF No. 2719-1. And because the United States' proposed schedule concludes at the end of June, the Court should be able to turn to the motions after its obligations in *Stuart* conclude. Finally, the United States has declined to participate in any bellwether cases because it is inappropriate to force the United States into a bellwether trial when the United States asserts immunity.

**Possible regulatory developments.** The anticipated regulatory developments that PEC describes are irrelevant to the jurisdictional issues the United States intends to raise. *First*, even after EPA's promulgation of national primary drinking water standards for PFOS and PFOA, any claims against the United States based on those standards would still be barred under CERCLA § 113(h) to the extent they challenge a response action selected under CERCLA. *Second*, EPA's potential classification of PFOS and PFOA as hazardous substances under CERCLA has no bearing on the United States' proposed motions. A hazardous substance designation would arguably provide a basis for parties to pursue claims for recovery of any response costs under CERCLA § 107. Thus, the United States does not intend to move to dismiss any claims for recovery of response costs under CERCLA § 107. Instead, the United States intends to move to dismiss the variety of tort and other environmental statute claims that Plaintiffs currently bring, that they have shown no indication they are prepared to drop voluntarily, and that should be dismissed.

3

The United States will be prepared to discuss these issues at the upcoming conference.

Respectfully submitted,

/s/ *Frederick G. Hall*
Frederick Gaston Hall
*Trial Attorney*

cc: Counsel of Record (*via ECF*)