IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| IN RE: AQUEOUS FILM-FORMING FOAMS PRODUCTS LIABILITY LITIGATION | MDL NO: 2:18-mn-2873-RMG<br><br>This filing relates to:<br><br>ALL CASES |

**REPLY IN SUPPORT OF MOTION FOR RECONSIDERATION
OR CERTIFICATION FOR INTERLOCUTORY APPEAL
BY HISTORIC DUPONT AND CHEMOURS**

**TABLE OF CONTENTS**

TABLE OF CONTENTS .................................................................................................................i

TABLE OF AUTHORITIES ......................................................................................................... ii

ARGUMENT ..................................................................................................................................2

I.      The Court Should Reconsider the Scope of Its Order ..........................................................2

          A.      Plaintiffs Did Not Move to Compel All Documents that Historic DuPont and Chemours Produced in the Arbitration ..............................................................2

          B.      The Order Requires Historic DuPont and Chemours to Produce Tens of Thousands of Documents that Plaintiffs Did Not Move to Compel and that Plaintiffs Continue to Concede Are Privileged or Protected ...................................5

          C.      At the Very Least, the Court Should Limit the Scope of Its Order to What Plaintiffs Sought in Their Motion to Compel ..........................................................11

II.     In the Alternative, the Court Should Certify the Order for Interlocutory Appeal .............11

III.    The Court Should Stay the Order .......................................................................................13

CONCLUSION .............................................................................................................................15

## TABLE OF AUTHORITIES

**Cases**

*Hilton v. Braunskill*,
   481 U.S. 770 (1987) .................................................................................................... 14

*In re Aqueous Film-Forming Foams Prod. Liab. Litig.*,
   No. 2:18-mn-02873-RMG (D.S.C. Dec. 7, 2018) ....................................................... 8

*In re Grand Jury Subpoena: Under Seal*,
   415 F.3d 333 (4th Cir. 2005) ........................................................................................ 11

*In re Pfizer Inc. Sec. Litig.*,
   No. 90 Civ. 1260 (SS), 1993 WL 561125 (S.D.N.Y. Dec. 23, 1993) ........................... 6

*In re Teleglobe Commc'ns Corp.*,
   493 F.3d 345 (3d Cir. 2007) ......................................................................................... 11

*Mohawk Indus., Inc. v. Carpenter*,
   558 U.S. 100 (2009) ..................................................................................................... 12

*N.J. Dep't Env't Prot. v. E. I. du Pont de Nemours and Co.*,
   No. 1:19-cv-14766-RMB-JBC (D.N.J. July 5, 2019) ................................................. 8

*Nat'l Urban League v. Ross*,
   977 F.3d 698 (9th Cir. 2020) ........................................................................................ 15

*Nix v. The Chemours Co.*,
   No. 7:17-cv-00189-D (E.D.N.C. Oct. 3, 2017) ........................................................... 8

*Small v. Hunt*,
   98 F.3d 789 (4th Cir. 1996) .......................................................................................... 10

*State of New Hampshire v. 3M Co.*,
   No. 1:22-cv-00145-LM (D.N.H. Apr. 29, 2022) ......................................................... 8

*State of North Carolina v. E. I. Du Pont de Nemours and Co.*,
   No. 20-cvs-5612 (N.C. Super. Ct. Oct. 13, 2020) ....................................................... 8

*State of Ohio v. E. I. du Pont de Nemours and Co.*,
   No. 18-OT-000032 (Ohio Ct. Common Pleas Feb. 8, 2018) ...................................... 8

*United States v. Jones*,
   No. 2:99-MC-71-11, 1999 WL 1057210 (D.S.C. Oct. 5, 1999) ........................... 14, 15

**Statutes**

28 U.S.C. § 1292(b) .............................................................................................................. 16

Although Plaintiffs moved to compel the production of only 545 privileged documents in the categories at issue, the Order that Historic DuPont and Chemours seek reconsideration of requires them to produce over 25,000 privileged documents. To do so, the Order concludes that Historic DuPont and Chemours waived privilege over all documents they produced to each other in a confidential arbitration. But Plaintiffs' waiver argument was much more limited. Plaintiffs claimed in two sentences in their motion to compel that Historic DuPont and Chemours waived privilege over only "*internal communications*—i.e. communications among Chemours and its lawyers or Old DuPont and its lawyers—that they produced to each other in the Delaware Action concerning any matter where they did not share a common interest and joint representation." (Dkt. 2318 at 18 (emphasis added).) Plaintiffs have never argued to the Court that Historic DuPont and Chemours waived privilege over every single document produced in the arbitration.

In going that far, the Order committed several clear errors. First, the Order failed to analyze the separate standard for waiver of the work-product doctrine. Second, it neglected to analyze the common-interest doctrine, which applies to matters where Historic DuPont and Chemours are co-defendants in litigation. Because of that, the Order swept in thousands of documents that even Plaintiffs implicitly recognize are protected—most of which do not relate to the spin-off at the heart of the Order's analysis. Those documents include communications between Historic DuPont and Chemours's joint outside counsel and their clients in this very MDL about litigation strategy.

Plaintiffs now claim that the Court can correct these clear errors by excluding about 4,000 documents from the Order, which are listed in exhibits prepared by Plaintiffs and attached to their response. But that does not correct all the errors. The Court should grant the motion in its entirety. If, however, the Court only grants partial relief to this motion, then it should at the very least limit the scope of the Order to the documents Plaintiffs moved to compel. To be clear, that would not

1

address the separate standard for work-product waiver or the common-interest doctrine that the Court has yet to analyze. If the Court does not do so, then documents protected by those doctrines should be excluded from the scope of any revised order.

## ARGUMENT

### I. The Court Should Reconsider the Scope of Its Order

#### A. Plaintiffs Did Not Move to Compel All Documents that Historic DuPont and Chemours Produced in the Arbitration

Although Historic DuPont and Chemours continue to respectfully disagree with the Order's conclusion that they did not share a joint privilege related to the spin-off, most of the documents affected by the Order are those produced in the confidential arbitration (referred to by Plaintiffs as the Delaware Action). The Order erroneously concluded that "all documents produced in the Delaware Action are not privileged" even though Plaintiffs did not move to compel *all* documents produced in the Delaware Action. (Dkt. 2687 at 16.) Plaintiffs correctly point out that they served a document request seeking these documents, (Dkt. 2761 at 5), but Plaintiffs did not move to compel that entire group of documents, recognizing that many of these documents are protected by the attorney-client privilege, work-product and common-interest doctrines. Instead, Plaintiffs were careful in their motion to compel to request only "*internal communications*—i.e. communications among Chemours and its lawyers or Old DuPont and its lawyers—that they produced to each other in the Delaware Action concerning any matter *where they did not share* a common interest and joint representation." (Dkt. 2318 at 18 (emphasis added).)

Even in responding to this motion, Plaintiffs repeatedly cabin their request with that precise language again. Plaintiffs explain that in their motion to compel, they "asserted that Defendants waived privilege over *internal communications* that they exchanged in the Delaware Action." (Dkt. 2761 at 3; *see also id.* at 20 ("[T]he PEC argued in its motion to compel that Defendants

2

must produce all communications among Chemours and its lawyers or Old DuPont and its lawyers that Defendants produced to each other in the Delaware Action concerning any matter in which they did not share a common interest and joint representation.").) Then, Plaintiffs included an entire section in response to this motion entitled, "Defendants Production Of *Internal Communications* To Each Other Constituted Waiver." (*Id.* at 20 (emphasis added).) Plaintiffs never sought to compel all the documents Historic DuPont and Chemours produced in the arbitration. They specifically carved out documents in which there is a common interest.

Plaintiffs used and continue to use that precise language for good reason. According to Plaintiffs' own exhibit, only 275 documents fall into this "internal communications" category. (*See* Dkt. 2318-28.) Those 275 documents are the only documents Plaintiffs argued were waived by production in the arbitration. (Dkt. 2318 at 18 ("Defendants must also produce all internal communications . . . [as] any such privilege was waived when Defendants produced them to each other." (citing Ex. 27, Dkt. 2318-28)).) In fact, Plaintiffs used the word "waive" only twice in their motion to compel, once in making this argument and once in discussing a legal standard. (*Id.* at 17, 18.) Yet, the Order's conclusion that Historic DuPont and Chemours waived all privileges and protections over all documents produced in the arbitration swept in over 25,000 unrelated documents where the legal standard and privilege analysis differs significantly. Indeed, many of the documents ordered produced do not concern the spin-off at all, so the Order did not consider the issues relevant to those. Plaintiffs try to dismiss Historic DuPont and Chemours's concerns about that increase in scope with numbers and percentages, when really the numbers underscore the problem—less than 1% of the privileged documents the Order concluded were waived are documents that Plaintiffs argued Historic DuPont and Chemours waived privilege.

3

Plaintiffs emphasize that the lists of challenged documents they attached to their motion to compel were "representative samples." (Dkt. 2761 at 7–9.) But representative means just that: typical of the group. Given the multiple rounds and types of errors that Historic DuPont and Chemours found in Plaintiffs' lists of challenged documents, (*see, e.g.*, Dkt. 2368 at 2, 36–37, 48),[1] Plaintiffs wanted to ensure that if they missed a few similar documents on the privilege logs that the parties could still meet and confer about those documents after the Court's ruling. But Plaintiffs did not and have not argued that the tens of thousands privileged documents ordered produced are "internal communications." Nor could they. The privilege log confirms the opposite.

For example, the documents listed on Plaintiffs' Exhibit 26 of "representative samples" largely follow the same pattern. They are communications between attorneys at Skadden, Arps, Slate, Meagher, & Flom LLP and employees who eventually went to Chemours after the spin-off. (*See* Dkt. 2318-27; Dkt. 2318-11; Dkt. 2727-2; Dkt. 2318-23; Dkt. 2727-5.) That aligns with Plaintiffs' description of this category as "communications between Chemours employees and Old DuPont's outside counsel, Skadden, including documents allegedly reflecting or requesting legal advice from Skadden that were shared with Chemours." (Dkt. 2318 at 34.) Other documents now ordered to be produced do not follow that rubric and have nothing to do with Skadden. As Historic DuPont and Chemours have explained and the privilege logs confirm, there are numerous documents between only their joint environmental counsel in PFAS cases like this one and their in-house clients. There are common-interest communications among unrelated joint defense groups, like the Lower Passaic River Study Area Cooperating Parties Group that moved to intervene. (*See* Dkt. 2747.) Those cannot fairly be categorized as similar to these "representative

---

[1] Historic DuPont and Chemours also identified many issues with Plaintiffs' lists in the months of communications back and forth between the parties before Plaintiffs filed their motion to compel. (*See, e.g.*, Dkt. 2318-16, Dkt. 2318-18, Dkt. 2318-20, Dkt. 2318-22.)

4

samples." They cannot be described as—in Plaintiffs' words—communications between Skadden and Chemours. Rather, they are the categories of documents that Plaintiffs *carved out* of their motion to compel.

### B. The Order Requires Historic DuPont and Chemours to Produce Tens of Thousands of Documents that Plaintiffs Did Not Move to Compel and that Plaintiffs Continue to Concede Are Privileged or Protected

By concluding that "all documents produced in the Delaware Action are not privileged," the Order went far beyond Plaintiffs' requested relief. (*See* Dkt. 2687 at 16.) The Order appeared to find that attorney-client "privilege was waived by the disclosure of those documents" in the arbitration. (*Id.* at 9.) But the Order did not analyze the separate standards for waiver of the work-product or common-interest doctrines. That was clear error.

Plaintiffs claim that when Historic DuPont and Chemours argued that "work product waiver is governed by a different standard" in this motion, that was a "new argument." (Dkt. 2761 at 22.) It was not. Historic DuPont and Chemours dedicated an entire section of their motion to compel response to the work-product doctrine and waiver of it. (Dkt. 2368 at 31–34.) In it, Historic DuPont and Chemours explained that "[d]isclosure of work-product protected material to third parties for accounting or other purposes does not result in waiver of the protection, so long as the disclosure does not cause the material to fall into an adversary's hands." (*Id.* at 33 (citing *In re Pfizer Inc. Sec. Litig.*, No. 90 Civ. 1260 (SS), 1993 WL 561125, at *6 (S.D.N.Y. Dec. 23, 1993).)

Plaintiffs attempt to brush the Order's failure to address this standard aside, but that attempt fails. Plaintiffs do not disagree that a different standard applies to the question of whether a party has waived work-product. Plaintiffs do not disagree that the Order fails to address that unique standard. And while Plaintiffs mention "the sole log entry" Historic DuPont and Chemours used as an example to discuss this issue, they fail to acknowledge how massive this problem is. In fact,

there are 5,153 documents on Historic DuPont's and Chemours's arbitration privilege logs protected by the work-product doctrine. (*See* Dkt. 2727-2; Dkt. 2727-5.) It was clear error for the Court to conclude that Historic DuPont and Chemours waived work-product protection over those thousands of documents without analyzing the correct standard.

The Order also failed to analyze the common-interest doctrine that protects thousands of communications shared only among Historic DuPont's and Chemours's outside counsel and in-house attorneys related to cases in which they are co-defendants or matters in which they share a common interest. Many are with firms representing Historic DuPont and Chemours jointly, like in this MDL. Even Plaintiffs agree that "[a]lthough the Court acknowledged the PEC's argument that Defendants did not share a common interest with respect to post-Spinoff communications, . . . the Court did not rule on the issue."[2] (Dkt. 2761 at 10.) It was also clear error for the Court to order Historic DuPont and Chemours to produce those documents without reaching this issue.

Although Plaintiffs avoid saying so explicitly, Plaintiffs' actions implicitly concede that these documents are protected by the attorney-client privilege and common-interest doctrine. First, when Historic DuPont and Chemours raised this very issue in the meet and confer process, Plaintiffs themselves confirmed they were not seeking these types of common-interest/joint-defense communications. (Dkt. 2727-5 at 1 (explaining that Plaintiffs "have not included documents shared with Shook Hardy or Squire Patton Boggs marked as 'common interest/joint defense'").) Then in responding to this motion—although Plaintiffs claim they never conceded

---

[2] Plaintiffs' argument that Historic DuPont and Chemours did not share a common interest "with respect to post-Spinoff communications" was limited to only certain types of communications. Plaintiffs claimed that Historic DuPont and Chemours did not share a common interest only in communications "relating to the financial impact of the Spinoff on Chemours" and the "dispute over Chemours's indemnification obligations." (Dkt. 2761 at 10.) That is a much more limited subset of documents than the roughly 25,000 documents produced in the arbitration.

6

anything—Plaintiffs state that they "elected to not contest Defendants' privilege assertions" over these types of documents. (Dkt. 2761 at 7.) Whatever words used to describe it, Plaintiffs did not argue in their motion to compel and are not arguing now that Historic DuPont and Chemours must produce communications with their outside counsel—often jointly retained—about the defense, management, and strategy of pending litigations in which they are co-defendants like this MDL.

Plaintiffs try to lay blame with Historic DuPont and Chemours for not "identify[ing] which law firms represented each of them" in these common-interest or joint-defense scenarios in responding to Plaintiffs' motion to compel. (*Id.* at 9.) But there is an obvious reason Historic DuPont and Chemours did not do so: Plaintiffs did not move to compel Historic DuPont and Chemours's common-interest or joint-defense communications. Rather, they "elected not to contest" these documents. (*Id.* at 7.) Plaintiffs said nothing about them in the motion to compel. Instead, Plaintiffs' waiver argument was limited to the "internal communications" category discussed above. (*See* Dkt. 2318 at 18.) So Historic DuPont and Chemours had no reason to explain what law firms' communications should be covered by the common-interest doctrine or a joint-defense privilege as it was not the subject of Plaintiffs' motion.

Plaintiffs claim that no evidence demonstrates that Historic DuPont and Chemours share a common interest as co-defendants in pending litigation or are represented jointly by the same counsel. Not only are these matters of public record, but the very same plaintiffs' attorneys involved in this MDL are involved in these cases across the country. *See, e.g.*, *In re Aqueous Film-Forming Foams Prod. Liab. Litig.*, No. 2:18-mn-02873-RMG (D.S.C. Dec. 7, 2018); *N.J. Dep't Env't Prot. v. E. I. du Pont de Nemours and Co.*, No. 1:19-cv-14766-RMB-JBC (D.N.J. July 5, 2019); *State of New Hampshire v. 3M Co.*, No. 1:22-cv-00145-LM (D.N.H. Apr. 29, 2022); *Nix v. The Chemours Co.*, No. 7:17-cv-00189-D (E.D.N.C. Oct. 3, 2017); *State of North Carolina v. E.*

7

*I. Du Pont de Nemours and Co.*, No. 20-cvs-5612 (N.C. Super. Ct. Oct. 13, 2020); *State of Ohio v. E. I. du Pont de Nemours and Co.*, No. 18-OT-000032 (Ohio Ct. Common Pleas Feb. 8, 2018) (all public dockets showing Historic DuPont and Chemours as co-defendants being represented by attorneys at Shook Hardy & Bacon, LLP, McCarter & English, Ballard Spahr LLP, Squire Batton Boggs LLP, Robinson, Bradshaw & Hinson, P.A., Ellis & Winters, LLP, Arnold & Porter Kaye Scholer LLP, Bartlit Beck LLP, or Norris McLaughlin, P.A. and showing plaintiffs being represented by attorneys at Douglas & London, P.C., Kelley Drye & Warren LLP, or Taft Stettinnius & Hollister LLP, among others).) Plaintiffs' counsel knows what law firms represent Historic DuPont and Chemours. In addition, Plaintiffs attached exhibits to their own motion to compel listing the firms representing Historic DuPont and Chemours in cases where they are both co-defendants. (*See* Dkt. 2318-19 at 1–2 (listing "Norris McLaughlin, Squire, Shook Hardy, Ballard Spahr, McCarter & English" as firms whose communications Plaintiffs were not seeking in their motion to compel given that they represent these companies in cases where they are co-defendants).) In addition, Historic DuPont and Chemours anticipated that documents would be submitted *in camera* given the Court's order about it, and those documents would have also supported these facts. (*See* Dkt. 2353.) Given all this, Plaintiffs' claim that no evidence shows these basic facts when they previously conceded (or "elected not to contest") that these situations were "joint privilege[d]" and themselves listed the law firms involved is disingenuous.

Plaintiffs also claim that Historic DuPont and Chemours only identified five log entries reflecting these types of communications related to cases in which they are co-defendants, but by Plaintiffs' own count there are over 3,500 of these documents at issue in the Order. (*See* Dkt. 2761 at 27.) The five entries Historic DuPont and Chemours discussed in their motion were examples indicative of the overall issue. (*See* Dkt. 2727 at 8 (emphasizing that "[a]s just a few examples

8

show," the communications are privileged).) Obviously, Historic DuPont and Chemours could not discuss every one of the thousands of documents at issue individually given page limits. But even assuming Plaintiffs' count is accurate—which Historic DuPont and Chemours doubt given the multitude of issues with Plaintiffs' prior lists of challenged documents—there are thousands of documents with privileged, strategic discussions about pending litigation that would be produced to the very adversaries these defendants are currently facing. In other words, Historic DuPont and Chemours would be forced to turn over a partial playbook for this litigation and many others pending around the country.

Given how much the scope of the Order expanded beyond Plaintiffs' waiver argument in their motion to compel, Historic DuPont and Chemours submitted a relevant arbitration panel order in this motion for the first time. Plaintiffs complain that Historic DuPont and Chemours should have used that evidence earlier, but one of the cases Plaintiffs cite in response to this motion shows why Historic DuPont and Chemours have a legitimate justification for not doing so. In *Small v. Hunt*, the State of North Carolina moved to modify a consent decree concerning prison conditions. 98 F.3d 789, 793 (4th Cir. 1996). The court initially denied part of the motion expressing concerns that the State's plan would require triple bunk beds instead of doubles. *Id.* at 794. After the Court's ruling, the State moved to amend the order and attached new evidence about a plan that would not require triple bunk beds. *Id.* On appeal, the Fourth Circuit concluded that the "state had a 'legitimate justification for not presenting' [that evidence] earlier because until the court expressed its concern about a center row of bunks, the state had no reason to present an alternative proposal for the court's consideration." *Id.* at 798. The same legitimate justification applies here. Plaintiffs did not argue in their motion to compel that Historic DuPont and Chemours waived privilege over *all* documents exchanged in the arbitration; the Plaintiffs' waiver argument in their motion

9

consisted of two sentences and affected only 275 documents. (*See* Dkt. 2318 at 18.) So Historic DuPont and Chemours had no reason to rely on the arbitration panel's order. Once the Order stretched that waiver argument to the more than 25,000 documents produced in the arbitration, Historic DuPont and Chemours found it necessary to rely on the panel's order to show the full context in which they produced documents in the arbitration. It was only after the arbitration panel concluded ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ ▬▬▬▬▬▬▬▬▬▬▬▬▬▬ (Dkt. 2727-2 at 27.) Historic DuPont and Chemours only did so because sharing privileged documents among holders of the joint privilege or among other parties that share a common interest does not waive attorney-client privilege as to third parties. *See In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 361, 369 (3d Cir. 2007); *In re Grand Jury Subpoena: Under Seal*, 415 F.3d 333, 341 (4th Cir. 2005).

Even now Plaintiffs implicitly concede that at least some documents subject to the Order should not be produced. Plaintiffs attach two exhibits listing the documents that they either would "not object" to being removed from the Order or that they suggest should be the only relief granted. (Dkt. 2761 at 7 n.23, 27.) In doing so, Plaintiffs recognize the multiple problems caused by the fact that the Order went far beyond what they requested in their motion to compel. But Plaintiffs' suggested resolution does not fully correct errors that even Plaintiffs recognize. For example, although Plaintiffs do not dispute that the Order failed to analyze the unique standard for work-product waiver, Plaintiffs' proposal to carve out the documents listed in their Exhibits 1 and 2 does not account for that error. This is no small issue, as it affects over 5,000 documents. Plaintiffs' Exhibit 2 also does not fully correct for the Order's failure to evaluate the common-interest doctrine. Plaintiffs' Exhibit 2 is limited to communications with only three law firms that jointly represent Historic DuPont and Chemours in PFAS litigation. (*See* Dkt. 2761 at 27.) But there are

numerous other firms that represent Historic DuPont and Chemours in cases where the two companies are co-defendants that share common interests. For these reasons, if the Court only grants partial relief to this motion, it should at the very least limit the scope of the Order to the relief Plaintiffs requested.

    **C.    At the Very Least, the Court Should Limit the Scope of Its Order to What Plaintiffs Sought in Their Motion to Compel**

If the Court does not grant this motion for reconsideration in full, then it should at the very least adjust the remedy to be limited to those documents Plaintiffs moved to compel. In other words, at the very least the Court should limit the Order to the documents Plaintiffs included in the three categories ordered to be produced—the documents listed on Plaintiffs' Exhibits 25a, 26, and 27. (*See* Dkt. 2687 at 5, Dkt. 2402-2, 2318-27, 2318-28.)[3] Historic DuPont and Chemours recognize that Plaintiffs claim that these lists of challenged documents only include "representative samples." Although Historic DuPont and Chemours believe that the lists are comprehensive given the months of discussions among the parties before Plaintiffs filed their motion to compel, if the Court limits the scope in this way, the parties could meet and confer to discuss whether there are any documents missing from those lists.

**II.    In the Alternative, the Court Should Certify the Order for Interlocutory Appeal**

If the Court is not inclined to grant reconsideration, then it should certify this issue for interlocutory appeal. This is not an ordinary privilege dispute. As the Supreme Court has explained, when "a privilege ruling . . . is of special consequence, . . . district courts should not

---

[3] To avoid any doubt, many of the documents referenced in these exhibits are protected by the work-product or common-interest doctrines, which Historic DuPont and Chemours have not and do not waive. Given that the Order fails to analyze those protections, many of those documents should remain protected and should be excluded from the scope of any revised order.

11

hesitate to certify an interlocutory appeal." *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 110–12 (2009). This ruling is of special consequence no matter how it is viewed.

Looking only at the numbers, Plaintiffs argued in just two sentences that Historic DuPont and Chemours waived privilege over only 275 documents. But the Order concluded that Historic DuPont and Chemours waived privilege over more than 25,000 documents. In all the categorical challenges at issue, Plaintiffs sought 545 documents in total. But again the Order compelled Historic DuPont and Chemours to produce over 25,000.

Looking at the substance makes those numbers even more concerning. The expanded scope of the Order swept in documents protected by work product without analyzing whether Historic DuPont and Chemours waived work product. The expanded scope swept in documents protected by the common-interest doctrine without analyzing common interest. The expanded scope swept in communications between outside counsel jointly representing Historic DuPont and Chemours and their in-house clients about pending PFAS litigation, including this very MDL. Those communications analyze Plaintiffs' expert in this case, discuss potential settlement values, and advise these clients about the scope of this MDL, just to name a few. The expanded scope swept in hundreds of documents related to a separate and unrelated joint-defense group's communications that affects eighty other companies. Overall, this Order does not just require the production of a handful of decades-old, stale privileged documents. The Order requires Historic DuPont and Chemours to turn over tens of thousands of privileged documents that Plaintiffs can use to piece together these defendants' (and others') playbook for defending against this litigation and other currently pending litigation across the country.

Finally, in trying to claim that interlocutory appeal is not appropriate, Plaintiffs say nothing of the fact that this Order was issued in a large, complex, and highly publicized MDL. This is not

an order compelling a small production to a single adversary in a single case. Historic DuPont and Chemours would be required to turn over tens of thousands of privileged documents in over 3,000 consolidated cases involving hundreds of plaintiffs' attorneys, many of whom are pursuing similar cases across the country. This Order will undoubtedly be cited in (and already has been cited in three of) those cases as well. Given the stakes, this is one of the privilege rulings that is of special consequence that justifies certifying it for interlocutory appeal.

### III.     The Court Should Stay the Order

Historic DuPont and Chemours have shown that, if the Court denies reconsideration, a stay pending any appellate proceedings is warranted given the gravity and scope of the privilege issues at stake. Courts, including courts in this district, recognize the unique circumstances of privilege rulings that necessitate stays to avoid disclosure of privileged material that can never be undone. *See, e.g.*, *United States v. Jones*, No. 2:99-MC-71-11, 1999 WL 1057210, at *3 (D.S.C. Oct. 5, 1999) (granting a stay given the "strong consideration to protecting the attorney/client privilege").

Plaintiffs attempt at opposing a stay relies on an inaccurate elevated standard. The first factor courts evaluate is "whether the stay applicant has made a strong showing that he is likely to succeed on the merits." *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987). Plaintiffs, however, characterize this factor as more than it is. Plaintiffs state that Historic DuPont and Chemours "are unlikely to prevail on the merits." (Dkt. 2761 at 33.) "However, this standard does not require the trial court to change its mind or conclude that its determination was erroneous." *Jones*, 1999 WL 1057210, at *2. "Nor does the requirement of a 'strong showing' require the movant to demonstrate that he will ultimately prevail." *Id.* Given how far the Order's scope expands the relief beyond what Plaintiffs sought in their motion to compel, given the Order's failure to analyze the unique work-product waiver standard, and given the Order's failure to address the common-interest

13

doctrine, Historic DuPont and Chemours have made a strong showing of a chance of success. And that is all that is required.

Plaintiffs' attempt at claiming that they would be harmed by a stay instead of Historic DuPont and Chemours being harmed by prematurely producing tens of thousands privileged documents gets the analysis backwards. The parties have agreed to dismiss the fraudulent transfer claims from the upcoming bellwether trial. (*See* Dkt. 2784.)[4] In addition, the parties agreed to set a separate track and separate deadlines for these fraudulent transfer claims. With no looming trial deadline and the discovery on these claims already set independently of the remaining environmental claims, there is no harm to Plaintiffs from a stay. Plaintiffs may be impatient in having these issues resolved, but that does not outweigh the "overwhelming concerns about protecting the sanctity of attorney/client privilege." *Id.* at *3.

Plaintiffs also do not respond at all to Historic DuPont and Chemours's request for an administrative stay. The only factor the Court need analyze to issue an administrative stay is whether doing so would "preserve the status quo." *Nat'l Urban League v. Ross*, 977 F.3d 698, 702 (9th Cir. 2020). Perhaps Plaintiffs say nothing about this because there is no denying that granting an administrative stay would preserve the status quo to allow Historic DuPont and Chemours to seek meaningful review of this Order.[5]

Finally, Plaintiffs wrongly claim that Historic DuPont and Chemours are "withholding documents that are not impacted" by this motion. (Dkt. 2761 at 34.) That is not true. Historic

---

[4] For this reason, there is no longer urgency in addressing these issues and they could be delayed until after the Court addresses the issues related to the upcoming bellwether trial.

[5] In addition, Chemours would need additional time to prepare this production, even if the Order stands, because some documents on its arbitration privilege log were not produced at all or were produced in redacted form to Historic DuPont in the arbitration, and those documents would need to be prepared and produced in the same format here as in the arbitration.

14

DuPont and Chemours produced the third-party documents ordered to be produced that are not impacted by this motion. But as explained in the motion and throughout this reply, Historic DuPont and Chemours challenge the Order's conclusion that they waived all privileges and protections over all documents produced in the arbitration. In addition, some of the supposed third-party documents are protected by the work-product doctrine. As explained above, Historic DuPont and Chemours challenge the Order's conclusion that they waived work-product protection without analyzing the standard for doing so. For those reasons, Historic DuPont and Chemours have not produced all the documents listed in Plaintiffs' Exhibit 29, which purports to be the representative samples of third-party documents. (*See* 2318-30.)[6] If the Court limits the scope of the Order to the 545 documents Plaintiffs originally moved to compel as suggested above, then the parties can meet and confer about the remaining issues related to these documents.

## CONCLUSION

Historic DuPont and Chemours respectfully request that the Court reconsider its ruling and deny Plaintiffs' motion to compel, or at least narrow it to the documents originally sought by Plaintiffs. Alternatively, Historic DuPont and Chemours respectfully request that the Court certify this Order for interlocutory review under 28 U.S.C. § 1292(b) and stay the Order pending any subsequent appellate review. If the Court does not issue a stay, then Historic DuPont and Chemours request at least a 14-day administrative stay to allow them to seek a stay from the court of appeals.

---

[6] Plaintiffs also mention Exhibit 30 in making this claim. But Exhibit 30 does not list documents or even "representative samples" of documents. Instead, Exhibit 30 lists law firms and companies that Plaintiffs claim are "third parties on Chemours's logs." (*See* Dkt. 2318-31.) The privileges and protections involved with each of these third parties cannot be analyzed on a one-size-fits-all basis. In any event, many of Plaintiffs' concerns with those third parties have already been resolved during the meet and confer process. To the extent that there are unresolved issues with them if the Court grants reconsideration, then Chemours can meet and confer with Plaintiffs about those issues.

Dated: January 17, 2023                          Respectfully Submitted,

| | |
|---|---|
| */s/ Margaret Raymond-Flood* | */s/ Katherine L.I. Hacker* |
| Martha N. Donovan | Katherine L.I. Hacker (CO No. 46656) |
| Margaret Raymond-Flood | BARTLIT BECK LLP |
| NORRIS MCLAUGHLIN, P.A. | 1801 Wewatta St., 12th Floor |
| 400 Crossing Boulevard, 8th Floor | Denver, Colorado 80202 |
| Bridgewater, New Jersey 08807 | (303) 592-3100 |
| (908) 722-0755 | kat.hacker@bartlitbeck.com |
| mdonovan@norris-law.com | |
| mraymondflood@norris-law.com | Katharine A. Roin (IL No. 6302872) |
| | BARTLIT BECK LLP |
| Steven DeGeorge | 54 W. Hubbard St. |
| ROBINSON BRADSHAW & HINSON | Chicago, Illinois 60654 |
| 202 East Main Street, Suite 201 | (312) 494-4400 |
| Rock Hill, South Carolina 29730 | kate.roin@bartlitbeck.com |
| (803) 325-2900 | |
| sdegeroge@robinsonbradshaw.com | Alice W. Parham Casey (Fed. I.D. #9431) |
| | WYCHE, P.A. |
| *Counsel for Defendants The Chemours Company and The Chemours Company FC, LLC (as to the Fraudulent Transfer claims)* | 807 Gervais St., Suite 301 |
| | Columbia, South Carolina 29201 |
| | (803) 254-6542 |
| | tcasey@wyche.com |
| | |
| | *Counsel for Defendant E. I. du Pont de Nemours and Company (as to the Fraudulent Transfer Claims)* |

**CERTIFICATE OF SERVICE**

A true and correct copy of the foregoing was electronically filed with this Court's CM/ECF system on January 17, 2023, and accordingly served automatically upon all counsel of record for this matter.

                                           */s/ Katherine L.I. Hacker*
                                           Katherine L.I. Hacker