IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| IN RE: AQUEOUS FILM-FORMING FOAMS PRODUCTS LIABILITY LITIGATION | ) MDL No. 2:18-mn-2873-RMG ) ) **ORDER** ) ) **This Order Relates to All Cases** ) ) ) ) |

Before the Court is Defendants E.I. du Pont de Nemours and Company ("Old DuPont"), the Chemours Company and Chemours Company FC, LLC (together, "Chemours," and collectively with Old DuPont, "Defendants")'s motion for reconsideration. (Dkt. No. 2727). Also before the Court is a motion to intervene by the Lower Passaic River Study Area Cooperating Parties Group ("CPG"). (Dkt. No. 2747). For the reasons set forth below, and as detailed herein, the Court grants in part and denies in part Defendants' motion for reconsideration and denies CPG's motion to intervene.

**I.     Background**[1]

On December 1, 2022, the Court granted in part and denied in part the Plaintiffs' Executive Committee ("PEC")'s motion to compel certain documents of Defendants. (Dkt. No. 2687) (the "Prior Order").

On December 16, 2022, Defendants moved for reconsideration in part of the Prior Order. (Dkt. No. 2727). Defendants challenge "two overarching legal conclusions: (1) 'Defendants have not met their burden of establishing that Old DuPont and Chemours shared a joint privilege

---

[1] The Court assumes the parties' familiarity with all pertinent facts. *See* (Dkt. No. 2687 at 2-4).

regarding [various] communications,' and (2) '[T]o the extent any privileged documents were shared by the parties in the Delaware Action, that privilege was waived by the disclosure of those documents[.]'" (Dkt. No. 2727 at 8). Defendants do not challenge the remainder of the Prior Order. (*Id.*). The PEC opposes. (Dkt. No. 2761). Defendants filed a reply. (Dkt. No. 2791).

On December 28, 2022, CPG filed a motion to intervene. (Dkt. No. 2747). The PEC opposes. (Dkt. No. 2769). CPG filed a reply. (Dkt. No. 2791).

Defendants and CPG's respective motions are fully briefed and ripe for disposition.

**II.    Legal Standard**

Rule 54(b) governs the Court's reconsideration of interlocutory orders. Fed. R. Civ. P. 54(b). Where a district court issues an interlocutory order such as one for partial summary judgment "that adjudicates fewer than all of the claims," the court retains discretion to revise such an order "at any time before the entry of a judgment adjudicating all the claims." Fed. R. Civ. P. 54(b). Compared to motions to reconsider final judgments pursuant to Rule 59(e), Rule 54(b)'s approach involves broader flexibility to revise interlocutory orders before final judgment as the litigation develops and new facts or arguments come to light. *Carlson v. Boston Sci. Corp.*, 856 F.3d 320, 326 (4th Cir. 2017).

The discretion Rule 54(b) provides is not limitless. Courts have cabined revision pursuant to Rule 54(b) by treating interlocutory rulings as law of the case. *Carlson*, 856 F.3d at 325 (citing *Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 515-16 (4th Cir. 2003)) (internal citations omitted). The law-of-the case doctrine provides that in the interest of finality, "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Carlson*, 856 F.3d at 325 (citing *TWFS, Inc. v. Franchot*, 572 F.3d 186, 191 (4th Cir. 2009)) (internal citations omitted). Thus, a court may revise an

interlocutory order under the same circumstances in which it may depart from the law of the case: (1) "a subsequent trial produc[ing] substantially different evidence;" (2) a change in applicable law; or (3) clear error causing "manifest injustice." *Carlson*, 856 F.3d 320. This standard closely resembles the standard applicable to motions to reconsider final orders pursuant to Rule 59(e), but it departs from such standard by accounting for potentially different evidence discovered during litigation as opposed to the discovery of "new evidence not available at trial." *Carlson*, 856 F.3d at 325 (citing *Pac. Ins. Co. v. Am. Nat. Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998)).

**III.     Discussion**

    a. **Defendants' Motion for Reconsideration**

First, Defendants argue that the Court committed clear error by concluding that Old DuPont and Chemours did not share a joint privilege over documents "related to the spin-off." (Dkt. No. 2727 at 16-18). To support the contention, Defendants cite a new document from the Delaware Action, "Procedural Order No. 10 (Arbitrability and Privilege Relating to Document Disclosure)" (the "Procedural Order"), which they claim supports their position that, because Chemours was a wholly owned subsidiary of Old DuPont until July 1, 2015, the parties shared a joint privilege over documents related to the spin-off. Defendants admit, however, that "this Court is not bound by an arbitration panel's decision." At bottom, Defendants contest the Court's finding that "pre-July 1, 2015 communications between Old DuPont and Chemours regarding the spin-off" are not protected by a joint privilege. (Dkt. No. 2687 at 5-9).

The Court denies Defendants' motion on this point. Defendants rehash arguments already presented to and rejected by the Court. (Dkt. No. 2687 at 5-9); (Dkt. No. 2727 at 19-20). In doing so, Defendants again misread *In re Teleglobe Communications Corp.*, 493 F.3d 345, 379 (3d Cir. 2007), ignore that *Teleglobe* held "the majority—and more sensible view—is even in the parent-

3

subsidiary context a joint representation only arises when common attorneys are affirmatively doing legal work for both entities on a matter of common interest," and again fail to demonstrate with specifical factual argument why or how Defendants shared "common interests," especially in light of the Skadden Letter and Chemours's Verified Complaint in the Delaware Action. *See also In re Grand Jury Subpoena # 06-1*, 274 Fed. App'x 306, 311 (4th Cir. 2008) (affirming district court finding that because subsidiary had "failed to demonstrate that the withheld communications pertained to a matter in which both Parent and Subsidiary shared a common legal interest," subsidiary lacked standing to quash subpoena for documents it claimed were privileged) (citing *In re Teleglobe*, 493 F.3d at 362-63).

As to the Procedural Order, the Court declines to consider it. The Procedural Order ruled on privilege issues related to *pre-spin* communications—a topic that was explicitly at issue in the PEC's motion to compel. *See Truist Bank v. Putillion*, No. 2:18-cv-1384, 2020 WL 3078384 (S.D.W. Va. June 10, 2020) ("A motion to reconsider is not a proper vehicle for presenting evidence that was available at the time of the previous ruling but, for whatever reason, was not proffered."); Procedural Order, (Dkt. No. 2727-1 at 2) (filed under seal) (ruling that "Section 7.7(a) [of the Separation Agreement] controls the application of the attorney client privilege for communications and documents **prior to the date of the spin off**") (emphasis added). To the extent Defendants believed the Procedural Order supported their argument regarding privilege over pre-spin communications, they could have submitted the document while opposing the PEC's motion. Further, to the extent Defendants now argue the Procedural Order somehow imbues post-spin communications with a joint privilege, the plain text of the Procedural Order refutes such an argument. (*Id.* at 34-35) ("The Tribunal . . . concludes that Section 7.7(a) applies to all pertinent **pre-Separation Agreement** legal and professional services rendered after Chemours came into

4

existence on February 18, 2004, but does not apply to any such services rendered before that date.") (emphasis added); *see also* (Dkt. No. 2727 at 6) (admitting the Procedural Order is not binding on this Court).

Accordingly, Defendants' motion is denied on this point.

Second, Defendants challenge the Court's ruling ordering that Defendants produce communications between "Chemours and its lawyers or Old DuPont and its lawyers that were produced to each other in the Delaware action or subsequent arbitration." (Dkt. No. 2727 at 11). Defendants note that the PEC sought a slightly narrower form of relief in its motion to compel, namely "communications among Chemours and its lawyers or Old DuPont and its lawyers [] that they produced to each other in the Delaware Action concerning any matter where they *did not share a common interest and joint representation*." (Dkt. No. 2318 at 23) (emphasis added); Ex. 27, (Dkt. No. 2318-28) (listing representative documents challenged on this basis); (Dkt. No. 2318-1 ¶ 36(c)) (describing Exhibit 27 as listing "[c]ommunications that Old DuPont or Chemours produced in the Delaware Action concerning matters in which Old DuPont and Chemours did not share a common interest").

The Court reconsiders the Prior Order to the extent that it finds Defendants must produce "communications among Chemours and its lawyers or Old DuPont and its lawyers [] that they produced to each other in the Delaware Action concerning any matter where they did not share a common interest and joint representation," namely the documents found on Exhibit 27, (Dkt. No. 2318-28). The Prior Order granted broader relief than that sought by the PEC. The Court does not reconsider, however, its rejection of Defendants' original argument that these documents were protected from disclosure by the Separation Agreement. *See* (Dkt. No. 2687 at 5-9). Accordingly,

5

Defendants must produce the documents listed on Exhibit 27, (Dkt. No. 2318-28) within 15 days of the date of this Order.

Third, Defendants challenge the Prior Order's finding that, "to the extent any privileged documents were shared by the parties in the Delaware Action, that privilege was waived by the disclosure of those documents." (Dkt. No. 2727 at 10); Prior Order, (Dkt. No. 2687 at 9). Defendants argue that, as relevant here, the PEC challenged three categories of documents: (1) Communications between Old DuPont and Chemours regarding the spin-off; (2) Communications between attorneys at Skadden and Chemours[2]; and (3) Communications among "Chemours and its lawyers or Old DuPont and its lawyers [] that they produced to each other in the Delaware Action concerning any matter where they did not share a common interest and joint representation."[3] Defendants contend that the PEC did not argue for waiver of privilege as to *all* documents exchanged by the parties in the Delaware Action, and specifically carved out exceptions for documents over which the Defendants held a common interest or a joint representation. *See* (Dkt. No. 2727 at 13-14, 20-21) ("Prior to filing their motion to compel, Plaintiffs recognized that these types of joint-defense documents should not be produced and were not being sought as part their motion.").

---

[2] In the PEC's words, "[c]ommunications involving Skadden, Old DuPont and Chemours—regardless of subject matter—are not privileged because Skadden never had an attorney-client relationship with Chemours." (Dkt. No. 2318 at 8).

[3] In their response in opposition to the PEC's motion to compel, Old DuPont and Chemours specifically argued that these communications were protected by a joint privilege. *See* (Dkt. No. 2368 at 18-26). Now, on reconsideration, Defendants improperly argue a new theory, namely that any privilege attached to said documents was not waived by their exchange because the Procedural Order "compelled" their production. (Dkt. No. 2727 at 19-20). Beyond being untimely raised on this motion for reconsideration and subject to rejection for that reason alone, the argument also fails because the Procedural Order ruled Defendants had to produce certain pre-spin communications by *contract* under the Separation Agreement.

6

The Court grants Defendants reconsideration on this point. A review of the PEC's motion shows that the PEC did not in-fact argue for waiver of privilege as to every document exchanged by Defendants in the Delaware Action. *See* (Dkt. No. 2727 at 9-10); (Dkt. No. 2318 at 23). Accordingly, the Court modifies the Prior Order to the extent that it overturns its holding that, "to the extent any privileged documents were shared by the parties in the Delaware Action, that privilege was waived by the disclosure of those documents." The Prior Order is further modified to the extent that its rulings ordering the production of "communications between Historic DuPont and Chemours relating to the spin-off" and "Communications between attorneys at Skadden and Chemours" are cabined to requiring Defendants produce the documents listed by the PEC at Exhibits 25a, (Dkt. No. 2402-2) and 26, (Dkt. No. 2318-27).[4] The Court also revisits three specific rulings from the Prior Order connected to this finding.

First, in the Prior Order, the Court found that 5 entries from Old DuPont's Delaware Action Log had to be produced because any privilege was waived by the sharing of those documents between Defendants in the Delaware Action. (Dkt. No. 2687 at 14). The Court has now reviewed entries 924, 1061, 1075, 2264, and 3808 on the merits. Defendants argue that these documents are protected by the attorney-work product doctrine because they contain "mental impressions" of Old DuPont's lawyers and that their sharing with third parties for "accounting purposes" did not waive the privilege. (Dkt. No. 2368 at 41). "Any voluntary disclosure of privileged or protected

---

[4] Though this relief likely resolves the following points, for the sake of clarity, the Court holds that the motion to reconsider is granted to the extent that Defendants need not produce "documents shared with Shook Hardy or Squire Patton Boggs marked as 'common interest/joint defense'" or communications with Norris McLaughlin, Ballard Spahr, or McCarter & English which were not shared with the third parties listed on the PEC's Exhibit 30. (Dkt. No. 2761 at 32); (Dkt. No. 2727-4 at 2-3). Nor are Defendants required to produce communications with CPG. (Dkt. No. 2727 at 13-14); (Dkt. No. 2318-7 at 3) (Old DuPont challenge to log entry 790 related to CPG; (Dkt. No. 2318-31) (not including CPG on the PEC's list of "Third Parties on Chemours's Logs")

7

information typically waives both attorney-client privilege and work-product protection." *In re Grand Jury 16-3817 (16-4)*, 740 F. App'x 243, 246 (4th Cir. 2018). To waive work product protection, the disclosure of "the contents of otherwise protected work product [must be] to someone with interests adverse to his or those of the client, knowingly increasing the possibility that an opponent will obtain and use the material." *Owens v. Mayor & City Council of Baltimore*, No. 11-3295-GLR, 2015 WL 6082131, at *2 (D. Md. Oct. 14, 2015). After a review of the challenged entries, the Court finds Defendants must produce the requested documents. Defendants' privilege log descriptions fail to establish the communications were prepared in anticipation of litigation as they lack any detail which identify actual or potential claims for which the documents were created. *CSX Transportation, Inc. v. Peirce*, No. 5:05-CV-202, 2012 WL 12892734, at *2 (N.D.W. Va. Aug. 1, 2012) (rejecting work product claim where defendants failed to establish documents were "motivated by the threat of specific litigation") (citing *Nat'l Union Fire Ins. Co. v. Murray Sheet Metal Co., Inc.*, 967 F.2d 980, 984 (4th Cir. 1992)). Further, one document, entry 2264, does not even concern litigation but rather "drafting CFO certificates."[5] Accordingly, Defendants must produce the requested documents within 15 days of this Order.

Second, in the Prior Order, the Court found that entries 4, 380, 831, and 388 on Old DuPont's Delaware Action Log had to be produced because the privilege was waived by the sharing of documents between Defendants in the Delaware Action. (Dkt. No. 2687 at 16). The Court has now reviewed the documents on the merits and finds they must be produced. Old DuPont

---

[5] In their motion for reconsideration, Defendants argue that the Prior Order failed to "evaluate the separate standard for waiver of attorney-work product" and that the Court should "reconsider its decision, apply the correct standards, and conclude that Historic DuPont and Chemours did not waive-work product doctrine by producing documents in a confidential arbitration only amongst themselves." (Dkt. No. 2727 at 21-22). Defendants, however, do not provide a single citation to any specific portion of the Prior Order affected by the alleged error. Accordingly, Defendants' motion for reconsideration is denied on this point.

argues these communications with Deloitte are protected by the attorney-client privilege because Skadden hired Deloitte to assist with the valuation of Old DuPont's litigation liabilities in preparation for the spin-off. (Dkt. No. 2368 at 42-43). The Court rejects Defendants' arguments. Defendants have put forth no evidence to support the contention Deloitte was "translating" information between the attorney and the client or that Deloitte was "assisting [the client] in the rendition of legal services rather than merely for the purposes of receiving accounting advice." (Dkt. No. 2687 at 12) (citing *Williams v. Big Pictures Loans, LLC*, 303 F. Supp. 3d 434, 446-47 (E.D. Va. 2018)); (Dkt. No. 2638-4 at 2, 6, 8) (filed under seal) (Deloitte PowerPoint noting its work was for "management planning purposes" and "did not involve analyzing specific case matters, their individual merits, or the probability of favorable or adverse outcomes of individual case matters"). While Defendants cite case law for the proposition that litigation reserve figures are protected, (Dkt. No. 2368 at 42-42), the descriptions on Old DuPont's privilege log do not mention "litigation reserves" but concern "separation analysis" and a "master transfer agreement." Accordingly, these documents must be produced within 15 days of this Order.

Third, in the Prior Order, the Court ordered Defendants produce various documents which the PEC alleged Defendants deemed privileged "merely" because in-house counsel was copied. The Court previously found that any privilege contained therein was waived by the sharing of documents between Defendants in the Delaware Action. (Dkt. No. 2687 at 18) (citing (Dkt. No. 2318 at 35-36 nn.115-17)). The Court has now reviewed the challenged documents on the merits, (Dkt. No. 2318 at nn. 115-17) and denies the PEC's motion on this point as the Court finds the challenged documents are adequately justified in Defendants' privilege logs.

Next, returning to the motion for reconsideration, the Court reconsiders that portion of the Prior Order concerning "post spin-off communications regarding the 'financial impact of the

9

transaction on Chemours and Defendants' dispute over Chemours' indemnification obligations to Old Dupont.'" (Dkt. No. 2687 at 9-11).  The PEC originally argued that Defendants had not established a "common interest" privilege over a handful of documents. (Dkt. No. 2318 at 22-23); (Dkt. No. 2368 at 28-30) (responding in opposition to this specific argument and as to these specific documents).[6] In the Prior Order, the Court ruled:

> [T]he Court denies Plaintiffs' motion without prejudice on the above point. The documents specifically discussed in Plaintiffs' motion to this effect are all contained on Defendants' respective Delaware Action privilege logs and, per the Court's ruling supra, must be produced regardless of the Court's ruling on the common interest doctrine. Therefore, to the extent challenges remain on this point as to documents on Defendants' respective General Privilege Logs, within 30 days of the issuance of this order Plaintiffs may file a renewed motion as to said documents for the Court's consideration.

(Dkt. No. 2687 at 10-11).  Given the instant order, the Court reconsiders the above ruling and hereby orders that Defendants produce *in camera*, within 15 days of this Order, the documents cited in footnote 6 for the Court's inspection.  At that time, the Court will review said documents and issue a final decision regarding the applicability of the common interest privilege as to the listed documents.

Last, Defendants argue that "[i]f the Court is not inclined to grant reconsideration, then it should certify this issue for interlocutory appeal."  (Dkt. No. 2788 at 14).

The standard for granting an interlocutory appeal is well-settled. To grant an interlocutory appeal, a district court must certify that the order sought to be appealed: "[1] involves a controlling

---

[6] These documents appear to include Exhibit 12 at Entries 3926-27; Exhibit 23 at Entries 150, 155-58; Exhibit 12 at Entries 3982-83; Exhibit 23 at 3371, 3379; Ex. 12 at Entries 3930, 3933-34, 3938, 3967, 4008-09; Exhibit 23 at Entries 1379-80.  Exhibit 12 is (Dkt. No. 2318-13) and Exhibit 23 is (Dkt. No. 2318-24).  These documents were listed on the PEC's Exhibit 25a, (Dkt. No. 2402-2).  For the sake of clarity, the Court notes that all other documents listed on Exhibit 25a must be produced per this Order and only the specific documents cited in this footnote are subject to *in camera* inspection.

question of law [2] as to which there is substantial ground for difference of opinion and [3] that an immediate appeal from the order may materially advance the ultimate termination of the litigation...." 28 U.S.C. § 1292(b). This language has been construed as granting district courts "circumscribed authority to certify for immediate appeal interlocutory orders deemed pivotal and debatable." *Swint v. Chambers County Comm'n,* 514 U.S. 35, 46, 115 S.Ct. 1203, 131 L.Ed.2d 60 (1995). It is also settled that because § 1292(b) is contrary to the general rule that appeals may be had only after a final judgment, it should be used sparingly and its requirements must be strictly construed. *Myles v. Laffitte,* 881 F.2d 125, 127 (4th Cir.1989). Put differently, the certification of an interlocutory appeal requires "exceptional circumstances that justify a departure from the basic policy limiting appellate review to final judgments." *Terry v. June,* 368 F.Supp.2d 538, 539 (W.D.Va.2005) (citing *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 475, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978)). And consistent with this principle, the Fourth Circuit has made clear that "certainly the kind of question best adapted to discretionary interlocutory review is a narrow question of pure law whose resolution will be completely dispositive of the litigation, either as a legal or practical matter, whichever way it goes." *Fannin v. CSX Transp., Inc.,* 873 F.2d 1438, 1989 WL 42583, at *5 (4th Cir.1989) (unpublished); *see also KPMG Peat Marwick, LLP v. Estate of Nelco, Ltd.,* 250 B.R. 74, 78 (E.D.Va.2000).

Defendants argue that there is "substantial ground for difference of opinion" about the Court's finding that Defendants did not share a joint privilege over pre-spin communications. Defendants argue that because the arbitration panel found Defendants shared a joint privilege related to the spin-off under the Separation Agreement, but this Court did not, a controlling question of law over which there is substantial ground for difference of opinion exists. (Dkt. No. 2727 at 23) (arguing that because the tribunal "compelled" the production of privileged documents,

11

there was no waiver of the privilege. As this Court observed *supra*, however, the tribunal did not "compel" the production of privileged documents but ruled Defendants had to produce certain pre-spin communications by *contract* under the Separation Agreement).

The Court denies Defendants' request for certification for interlocutory appeal. As to elements 1 and 2, the Court finds there is not a controlling question of law over which "there is substantial ground for difference of opinion." As articulated here and in the Prior Order, the Fourth Circuit has spoken to the issue of joint privilege in the parent-subsidiary context. *See In re Grand Jury Subpoena*, 274 Fed. App'x at 311 (affirming district court finding that because subsidiary had "failed to demonstrate that the withheld communications pertained to a matter in which both Parent and Subsidiary shared a common legal interest," subsidiary lacked standing to quash subpoena for documents it claimed were privileged) (citing *In re Teleglobe*, 493 F.3d at 362-63). As described in detail in the Prior Order, the question of whether Defendants shared a joint privilege over pre-spin communications is a factual inquiry, and one for which Defendants have not met their burden. *See* (Dkt. No. 2687 at 5-9) (noting "Defendants put forth no concrete evidence with which to meet their burden of establishing that Old DuPont and Chemours had an 'identical' or near identical legal interest in the spin-off. On the other hand, Plaintiffs have put forth evidence to the contrary in the form of the Skadden Letter and allegations from the Verified Complaint, which establish that Chemours and Old Dupont did not share 'identical (or nearly so)' legal interests"); *In re Grand Jury Subpoena*, 274 Fed. App'x at 311; *see also* (Dkt. No. 2727 at 6) (admitting "this Court is not bound by an arbitration panel's decision"). Additionally, as to element 3, Defendants have not cogently articulated nor can the Court fathom how the specific privilege issues described here related to Old DuPont and Chemours will materially advance the termination of this multidistrict

litigation. And, as described *supra*, the Court has granted Defendants' motion for reconsideration in large part, further vitiating any argument for interlocutory appeal.

### b. CPG's Motion to Intervene

CPG moves to intervene to argue against disclosure of communications involving itself. (Dkt. No. 2747-1). As this Order makes clear that Defendants are not required to produce communications with CPG, *see supra*, the motion to intervene is denied as moot.

### IV.  Conclusion

As detailed herein, Defendants' motion for reconsideration (Dkt. No. 2727) is **GRANTED IN PART AND DENIED IN PART** and CPG's motion to intervene (Dkt. No. 2747) is **DENIED** as moot. Defendants are directed to fully comply with this Order and all portions of the Prior Order which remain unchanged within 15 days of this Order. To the extent the PEC believes Defendants continue to withhold material subject to disclosure based on the rulings made herein and in the Prior Order, the PEC shall meet and confer with Defendants within the next 30 days and file any motion to compel as to said documents within 45 days of this Order.

**AND IT IS SO ORDERED.**

s/ Richard Mark Gergel
Richard Mark Gergel
United States District Judge

February 8, 2023
Charleston, South Carolina

13