**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | |
|---|---|
| **IN RE: AQUEOUS FILM-FORMING FOAMS PRODUCTS LIABILITY LITIGATION** | MDL No. 2:18-mn-2873-RMG<br><br>**This Document relates to:**<br><br>*City of Stuart, FL, v. 3M Company et al.*,<br>No. 2:18-cv-03487 |

**DEFENDANTS' OMNIBUS REPLY**
**IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

Page

INTRODUCTION ..................................................................................................................... 1

LEGAL ARGUMENT ............................................................................................................... 1

I.     Plaintiff's Nuisance Claim Fails As A Matter Of Law. ...................................................... 1

    A.     Florida law does not recognize a nuisance action based on the sale of products. ............................................................................................................ 1

    B.     Defendants did not maintain the requisite control to be liable for nuisance. .......... 3

II.     Defendants Are Entitled To Summary Judgment On Three Of Plaintiff's Four Damages Claims. .............................................................................................................. 5

    A.     Defendants Are Entitled To Summary Judgment On Plaintiff's Claim For More Than ███████ In Future Damages Related To The PFAS Treatment System. ............................................................................................... 5

        1.     Plaintiff cannot show a non-speculative right to use the Surficial Aquifer past the expiration of its current use permit in 2029. .................... 7

        2.     Plaintiff concedes it has already pursued, and is continuing to pursue, the Floridan Aquifer to replace water from the Surficial Aquifer, directly contradicting its damages theory. .................................. 8

    B.     Defendants Are Entitled To Summary Judgment On Plaintiff's Claims For ███████ Relating To Exploration Of The Floridan Aquifer. ............................ 10

    C.     Defendants Are Entitled To Summary Judgment On Plaintiff's Claims For ███████ For Potential Future Soil And/Or Groundwater Remediation. ......... 11

III.     Plaintiff Bears The Burden Of Establishing Causation As To Each Defendant. ............. 12

IV.     It Is Premature To Address The Application Of Joint And Several Liability ................. 13

CONCLUSION ........................................................................................................................ 14

CERTIFICATE OF SERVICE ................................................................................................ 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Aubin v. Union Carbine Corp.*,
　177 So.3d 489 (2015) ........................................................................................................... 12

*Barton v. Clancy*,
　632 F.3d 9 (1st Cir. 2011) ...................................................................................................... 4

*Camden Cnty. Bd. of Chosen Freeholders v. Beretta U.S.A. Corp.*,
　123 F. Supp. 2d 245 (D.N.J. 2000) ........................................................................................ 4

*Celotex Corp. v. Catrett*,
　477 U.S. 317 (1986) ............................................................................................................... 7

*City of Bloomington v. Westinghouse Elec. Corp.*,
　891 F.2d 611 (7th Cir. 1989) ................................................................................................. 4

*City of Huntington v. AmerisourceBergen Drug Corp.*,
　2022 WL 2399876 (S.D.W. Va. July 4, 2022) ...................................................................... 4

*Cloverleaf Car Co. v. Phillips Petrol. Co.*,
　213 Mich. App. 186 (1995) ................................................................................................... 5

*D'Amario v. Ford Motor Co.*,
　806 So. 2d 424 (Fla. 2001) .................................................................................................... 2

*Dash v. Mayweather*,
　731 F.3d 302 (4th Cir. 2013) ............................................................................................... 11

*Davey Compressor Co. v City of Delray Beach*,
　613 So. 2d 60 (Fla. Dist. Ct. App. 1993) ........................................................................... 7, 8

*Deese v. McKinnonville Hunting Club, Inc.*,
　874 So. 2d 1282 (Fla. Dist. Ct. App. 2004) ................................................................... 11, 13

*Del Monte Fresh Produce Co. v. Net Results, Inc.*,
　77 So. 3d 667 (Fla. Dist. Ct. App. 2011) ............................................................................... 9

*In re Dicamba Herbicides Litigation*,
　359 F. Supp. 3d 711 (E.D. Mo. 2019) ................................................................................... 4

*Gooding v. Univ. Hosp. Bldg., Inc.*,
　445 So. 2d. 1015 (Fla. 1984) .................................................................................... 11, 12, 13

*State ex rel. Hunter v. Johnson & Johnson*,
    499 P.3d 719 (Okla. 2021) ................................................................................................ 4

*Karpel v. Knauf Gips KG*,
    2022 WL 4366946 (S.D. Fla. Sept. 21, 2022) ............................................................ 2, 3, 4

*L'Henri, Inc. v. Vulcan Materials Co.*,
    2010 WL 924259 (D.V.I. Mar. 11, 2010) ......................................................................... 4

*Lawrence v. Wilson*,
    2016 WL 7489018 (D.S.C. Dec. 29, 2016) .................................................................. 9, 10

*Penelas v. Arms Tech.*,
    1999 WL 1204353 (Fla. Cir. Ct. Dec. 13, 1999) ...................................................... 1, 3, 12

*Southard v. Lester*,
    260 F. App'x 611 (4th Cir. 2008) ..................................................................................... 9

*State v. Lead Indus. Ass'n, Inc.*,
    951 A.2d 428 (R.I. 2008) .................................................................................................. 4

*In re Std. Jury Instr. In Civ. Cases—Report No. 13-01*,
    16 So.3d at 877 ............................................................................................................... 12

*In re Syngenta AG MIR 162 Corn Litig.*,
    131 F. Supp. 3d 1177 (D. Kan. 2015) ............................................................................... 4

*Thompson v. Potomac Elec. Power Co.*,
    312 F.3d 645 (4th Cir. 2002) ............................................................................................ 7

*Tioga Pub. Sch. Dist. No. 15 v. U.S. Gypsum Co.*,
    984 F.2d 915 (8th Cir. 1993) ............................................................................................ 4

*Town of Westport v. Monsanto Co.*,
    2015 WL 1321466 (D. Mass. Mar. 24, 2015) ................................................................... 4

*Walton for Est. of Smith v. Fla. Dep't of Corr.*,
    2020 WL 5255088 (M.D. Fla. Sept. 3, 2020) .................................................................. 13

**Statutes**

2011 Fla. Laws ch. 2011-215 ..................................................................................................... 2

Fla. Stat. § 768.81 ............................................................................................................... 2, 13

**Other Authorities**

Albert C. Lin & Michael Burger, *State Public Nuisance Claims & Climate Change Adaptation*, 36 Pace Envtl. L. Rev. 49, 91 (2018)..........................................................4

66 C.J.S. Nuisances § 118................................................................................................................4

# INTRODUCTION

In every respect, Plaintiff overreaches. It impermissibly tries to recast a products liability case into a claim for nuisance—directly contrary to binding Florida law. It advances wildly inflated damages claims based on theories that are directly contrary to the undisputed facts, that seek damages not caused by Defendants, or that seek double recovery. It seeks to hold all Defendants collectively responsible without adducing the causation evidence necessary as to each particular defendant. And it prematurely invokes application of joint and several liability principles in response to one individual defendant's motion for summary judgment—an important legal issue that need not and should not be decided at this time.

For the reasons set forth below and the reasons set forth in Defendants' opening brief, summary judgment is warranted in favor of Defendants.

# LEGAL ARGUMENT

## I.     Plaintiff's Nuisance Claim Fails As A Matter Of Law.

Defendants are entitled to summary judgment on Plaintiff's nuisance claim (Count V) for the separate and independent reasons that (1) Florida courts have expressly declined to apply nuisance law to the sale of products, and (2) Defendants did not possess the control needed to satisfy this element of nuisance. Plaintiff offers no meaningful response to either point and instead—incorrectly—argues that non-Florida case law has established a "modern trend" in favor of allowing nuisance claims like Plaintiff's. But it is Florida law that governs here and, in any event, the overwhelming weight of authority outside of Florida is in accord that nuisance claims fail in these types of cases.

### A.     Florida law does not recognize a nuisance action based on the sale of products.

Clear Florida case law holds that "nuisance does not apply to the design, manufacture, and the distribution of a lawful product." *Penelas v. Arms Tech.*, 1999 WL 1204353, at *4 (Fla. Cir.

Ct. Dec. 13, 1999); *see also Karpel v. Knauf Gips KG*, 2022 WL 4366946, at *7 (S.D. Fla. Sept. 21, 2022). Faced with this clear authority, Plaintiff perplexingly now claims that it has been "superseded" by the enactment of Florida's comparative fault statute. To the contrary (and to the extent the statute has any relevance to this issue at all), that statutory scheme supports Defendants' argument, not Plaintiff's.

The comparative fault statute broadly defines certain types of claims as "products liability action[s]" for the purpose of comparative fault, including civil actions "based upon a theory of strict liability, negligence, breach of warranty, ***nuisance***, or similar theories for damages caused by the manufacture, construction, design, formulation, installation, preparation, or assembly of a product." Fla. Stat. § 768.81(1)(d) (emphasis added). Thus, the statute merely makes clear that the formal label a plaintiff places on a claim does not control whether a case is subject to comparative fault principles. The statute does not address in any way whether would-be plaintiffs can sue product manufacturers or upstream suppliers for nuisance. To the contrary, the 2011 amendment to the statute—which added the provision on which Plaintiff relies—expressly did not create or codify any causes of action, but rather "affect[ed] only remedies." 2011 Fla. Laws ch. 2011-215, § 3. If the Florida legislature intended to "supersede" Florida case law by codifying a nuisance claim for the sale of products, it would not have used a phrase tucked into a fault allocation statute to do so, and it would not have specified that the amendment was intended to affect "only remedies." Indeed, when the legislature intends to overrule Florida law, it makes its intent crystal clear. *See, e.g.*, *id.* § 2 (stating that the "Legislature intends that this act be applied retroactively and overrule *D'Amario v. Ford Motor Co.*, 806 So. 2d 424 (Fla. 2001)").

Equally fatal to Plaintiff's theory, Florida case law decided after the enactment of this statute continues to reject efforts to dress up products liability claims under a "nuisance" theory.

2

Specifically, in *Karpel*, 2022 WL 4366946, at *7, the court noted that there was "no precedent in Florida" for allowing the plaintiff to sue a manufacturer "on a private nuisance theory by reason of the [product's] alleged defects." Plaintiff responds that *Karpel* "did not involve comparative liability, which would have invoked § 768.81[1](d)." ECF No. 2799 ("Opp.") 18. But the existence of a nuisance claim based on the sale of a product surely cannot turn on whether there are multiple alleged tortfeasors subject to comparative fault allocation or only a single defendant.[1] Florida law is clear in its rejection of any efforts to expand nuisance claims to cover causes of action that are based on the manufacture and/or sale of a product.

###    B.     Defendants did not maintain the requisite control to be liable for nuisance.

Plaintiff's nuisance claim also fails for the additional and independent reason that Defendants did not, post-sale, maintain the requisite control over their products. *See Penelas*, 1999 WL 1204353, at *4; *Karpel*, 2022 WL 4366946, at *8.

Plaintiff does not dispute that Defendants lacked control over the products at the time they were used, nor does Plaintiff contest that control is an element of a nuisance claim in Florida. Instead, Plaintiff accuses Defendants of "ignor[ing] the numerous court decisions" that have addressed the degree of control required in allegedly similar cases and permitted a nuisance claim. Opp. 19. But the only four cases Plaintiff cites—none of which applied Florida law—adopted a minority rule. They do not govern here in any event. Florida law applies in this action, and Florida law is clear: "a party cannot be held liable for nuisance absent control of the activity which creates the nuisance." *Penelas*, 1999 WL 1204353, at *4. Plaintiff protests that this rule is inconsistent with "a modern-day standard of nuisance in a groundwater contamination case," Opp. 20, but

---

[1] Plaintiff also asserts that *Karpel* is distinguishable because the plaintiff there was a subsequent purchaser of contaminated realty, not the original purchaser of the product. Opp. 18-19. But that distinction makes no difference: Florida law has not extended nuisance law to cover either scenario, and Plaintiff cites no Florida case law to the contrary.

3

Plaintiff's suggestion that the law elsewhere has "evol[ved]" (*id.*) in its favor cannot overcome the clear mandate of Florida law—reaffirmed as recently as last year, *see Karpel*, 2022 WL 4366946, at *8. Nor should this Court sitting in diversity accept Plaintiff's invitation to revise and expand Florida law. *See Barton v. Clancy*, 632 F.3d 9, 21 (1st Cir. 2011) ("As a federal court applying the law of the forum state, 'we will not create new rules or significantly expand existing rules.'").

In any event, the weight of "modern-day" (Opp. 20) authority outside Florida is fully consistent with Florida's rule. "Generally, if a commercial transaction is involved, a party *must* have control of the nuisance at the time of injury in order to be liable." 66 C.J.S. Nuisances § 118 (emphasis added); Albert C. Lin & Michael Burger, *State Public Nuisance Claims & Climate Change Adaptation*, 36 Pace Envtl. L. Rev. 49, 91 (2018) (the "majority view among the states" is that "control is required" to state a nuisance claim). "Because a manufacturer or seller in a commercial transaction relinquishes ownership and control of its products when it sells them, it is not liable in nuisance for whatever hazard its products may pose after the sale," 66 C.J.S. Nuisances § 118, as the vast majority of jurisdictions have repeatedly recognized. *See, e.g.*, *Tioga Pub. Sch. Dist. No. 15 v. U.S. Gypsum Co.*, 984 F.2d 915, 920 (8th Cir. 1993); *City of Bloomington v. Westinghouse Elec. Corp.*, 891 F.2d 611, 614 (7th Cir. 1989); *City of Huntington v. AmerisourceBergen Drug Corp.*, 2022 WL 2399876, at *67 (S.D.W. Va. July 4, 2022); *State ex rel. Hunter v. Johnson & Johnson*, 499 P.3d 719, 728-29 (Okla. 2021); *In re Dicamba Herbicides Litigation*, 359 F. Supp. 3d 711, 727–30 (E.D. Mo. 2019); *In re Syngenta AG MIR 162 Corn Litig.*, 131 F. Supp. 3d 1177, 1213 (D. Kan. 2015); *Town of Westport v. Monsanto Co.*, 2015 WL 1321466, at *4 (D. Mass. Mar. 24, 2015); *L'Henri, Inc. v. Vulcan Materials Co.*, 2010 WL 924259, at *5 (D.V.I. Mar. 11, 2010); *State v. Lead Indus. Ass'n, Inc.*, 951 A.2d 428, 449 (R.I. 2008); *Camden Cnty. Bd. of Chosen Freeholders v. Beretta U.S.A. Corp.*, 123 F. Supp. 2d 245, 266

4

(D.N.J. 2000); *Cloverleaf Car Co. v. Phillips Petrol. Co.*, 213 Mich. App. 186, 192 (1995).

For these reasons, Plaintiff's reliance on allegations that Defendants "controlled the AFFF market by virtue of their creation of AFFF-containing PFAS," "misled the government of the dangers associated with their product," and "created a trade group and marketing campaign to promote" their product are legally irrelevant (in addition to being untrue). Opp. 20. Instead, these allegations underscore that Plaintiff is attempting to invent a nuisance claim that does not exist in Florida and the strong majority of other jurisdictions, one that excises the requirement of control. Because Plaintiff has not made the requisite showing of control, Defendants are entitled to summary judgment on the nuisance claim.

## II. Defendants Are Entitled To Summary Judgment On Three Of Plaintiff's Four Damages Claims.

Plaintiff cannot establish a non-speculative entitlement to its claims for (1) ▌ in future damages based on expansion and operation of its PFAS treatment system for ▌; (2) nearly ▌ for the costs of investigating a move to the Floridan Aquifer; and (3) more than ▌ for soil and groundwater remediation.

### A. Defendants Are Entitled To Summary Judgment On Plaintiff's Claim For More Than ▌ In Future Damages Related To The PFAS Treatment System.

Plaintiff's claim for more than ▌ in future damages related to PFAS treatment has no basis in fact. That claim is impermissibly speculative because Plaintiff has produced no evidence to show that it will receive a permit to continue to draw water from the Surficial Aquifer once its current permit expires in six years. Further, that claim rests on ▌ ▌, which is contradicted by the undisputed facts—including the admissions of Plaintiff's experts themselves and Plaintiff's own publicly available website.

5

In response, Plaintiff contends that its experts Anthony Brown and Ronald Berryhill provide non-speculative evidence of █████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████ Opp. 21. As an initial matter, nothing in those reports changes the fact that Plaintiff's damages claim rests on a false narrative: that Plaintiff made the final decision to drill a Floridan well in response to PFAS. Plaintiff ignores the substantial and unrebutted evidence marshalled in Defendants' opening brief that ███████████████████ ███████████████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████.

However, the Court need not reach that issue to grant summary judgment as to the ████ ██████ in claimed future damages. Instead, the undisputed material facts and applicable law require summary judgment in Defendants' favor on those damages for two independent reasons. First, Plaintiff has not met its burden to show that it is more likely than not that its existing permit for the Surficial Aquifer will be renewed (which prevents Plaintiff here from recovering damages more than six years into the future ████████████████████████████). Second, the undisputed material facts demonstrate that (regardless of what motivated the decision) Plaintiff has in fact begun, and is continuing, to transition from the Surficial to the Floridan Aquifer. Along with this transition, Plaintiff indisputably plans to reduce the amount of water it draws from the Surficial—which is directly contrary to the theory for future damages Plaintiff's experts advance. Each ground independently dooms Plaintiff's claim for ██████████ in future damages.

1.   **Plaintiff cannot show a non-speculative right to use the Surficial Aquifer past the expiration of its current use permit in 2029.**

Plaintiff cannot seek ▇▇▇▇▇▇▇▇▇▇▇▇ because its current permit expires in just six years and Plaintiff has not met its burden to show that it is more likely than not that the District will renew the permit to allow Plaintiff to continue using the Surficial Aquifer (let alone to pump more water from the Surficial than it does now). This requires summary judgment as to any damages beyond that six-year horizon. *See Davey Compressor Co. v City of Delray Beach*, 613 So. 2d 60, 62 (Fla. Dist. Ct. App. 1993).

Plaintiff argues that "Defendants present zero evidence in support of their argument and do not suggest any scenario whatsoever that would result in the non-renewal of Plaintiff's permit beyond stating that Plaintiff's current permit contains 'numerous restrictions.'" Opp. 27. This is simply an improper attempt to shift the burden to Defendants. Under Florida law, a party seeking to recover future damages beyond the expiration date of its permit must "establish its legal interest in the groundwater beneath its well field beyond the expiration." *Davey Compressor Co.*, 613 So. 2d at 62. And to avoid summary judgment on its future-damages claim, *Plaintiff* must come forward with evidence to support its claims; Defendants are not required to provide evidence to rebut Plaintiff's claims. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002).

Plaintiff attempts to distinguish *Davey Compressor* on the ground that in that case, "there was evidence in the record showing that it was speculative if the plaintiff's permit would be renewed, presumably because of saltwater intrusion concerns," and argues that, here, "there is no immediate threat" to its Surficial wells. Opp. 27. However, the plaintiff in *Davey Compressor* actually attempted to meet its burden of proof on this point by deposing an official at the District, who testified that whether the permit would get renewed "would be speculative" (without any

7

mention of Plaintiff's extra presumption on saltwater intrusion). *Davey Compressor*, 613 So. 2d at 62. Plaintiff here, in contrast, did not even bother to seek out such evidence and instead essentially asks the Court to impose a negative inference on Defendants because of Plaintiff's failure to prosecute this case in that regard. That is improper and does not save Plaintiff's claim for future damages.[2]

> **2.    Plaintiff concedes it has already pursued, and is continuing to pursue, the Floridan Aquifer to replace water from the Surficial Aquifer, directly contradicting its damages theory.**

In any event, Plaintiff's claim for future damages fails because it is based on a theory that contradicts reality. Plaintiff's sole future damages theory is that ▮

▮ But there is *no evidence* that this is more likely than not to occur, given Plaintiff's stated intentions. To the contrary, Plaintiff's own experts admit that ▮

▮

Plaintiff's lawyers claim in their opposition brief that ▮

▮ Opp. 26 (emphasis omitted). But they do not, and cannot, cite any record evidence in support. To the contrary, Plaintiff's website states that the reverse osmosis treatment

---

[2] It is no wonder Plaintiff may have feared the answer a District official would have given in answer to this question and therefore avoided seeking out such discovery: Plaintiff's own website explains that it is necessary to shift away from the Surficial Aquifer because of potential saltwater intrusion, impact to wetlands, and other contaminants. *See* JX 84 (printout from Stuart's website) (last accessed 2/8/23). Indeed, Plaintiff concedes that ▮

8

facility for the Floridan wells is "100% on-schedule" with an estimated completion date of November 30, 2023.[3] According to that same website, Plaintiff is still "proactively planning to phase in a Reverse Osmosis Water Treatment Plant utilizing the Floridan Aquifer System as an alternative water source."[4] And in a January 2021 request for state funding, Plaintiff stated that its "alternative water supply" project "will reduce the dependence on the Surficial Aquifer which is considered a source of limited supply by the South Florida Water Management District." JX 88 (1/31/21 Florida Senate Local Funding Initiative Request).

These statements are consistent with the undisputed evidence adduced during discovery, in which Plaintiff and its experts repeatedly agreed that ███████████████████████ ███████████████████████████████████████████████[5] These admissions foreclose the unsupported assertion in a legal brief that ███████████████████████ ███████████████████████████████████████████████ Opp. 26; *see, e.g.*, *Southard v. Lester*, 260 F. App'x 611, 613-15 (4th Cir. 2008) (unsupported allegation directly contradicting the only evidence in the record was insufficient to create fact issue necessary to survive summary judgment); *Lawrence v. Wilson*, 2016 WL 7489018, at *2 (D.S.C. Dec. 29, 2016) (same). Disregarding this unsupported assertion, as the Court must, Plaintiff has no evidence of the future damages that it claims it will incur, and Defendants are entitled to summary judgment accordingly. Therefore, Mr. Berryhill's damages calculation for ███████████ in future damages, ███████████████████████████████████████████████ is not based in fact and cannot survive summary judgment. *Del Monte Fresh Produce Co. v. Net Results, Inc.*, 77

---

[3] JX 84 (printout from Stuart's website).
[4] *Id*.
[5] *See, e.g.*, JX 20 (Berryhill Dep.) at 515:13-518:23, 560:17-23, 573:24-575:8, 587:9-20; JX 89 (Peters 2/10/22 Dep.) at 238:3-7; JX 40 (Voelker 2/4/22 Dep.) at 78:5-25; JX 90 (Voelker 2/11/22 Dep.) at 93:14-15; JX 31 (Miller Dep.) at 57:13-16.

9

So. 3d 667, 675 (Fla. Dist. Ct. App. 2011) (damages theory must be based in fact).

\* \* \*

Because there is no reasonable basis in fact for Mr. Berryhill's assumptions as to future damages for ▮▮▮▮▮▮, Defendants are entitled to summary judgment on that damages claim. Specifically, summary judgment is warranted on Plaintiff's claim for damages based on ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

### B. Defendants Are Entitled To Summary Judgment On Plaintiff's Claims For ▮▮▮▮▮▮ Relating To Exploration Of The Floridan Aquifer.

The costs borne by Plaintiff in connection with its initial exploration of the Floridan Aquifer are not recoverable because the undisputed evidence is that Plaintiff was eventually going to shift to the Floridan Aquifer for reasons unrelated to PFAS and Plaintiff has shown no additional or unique costs associated with that move that can be attributed to PFAS. Plaintiff argues that it explored potential use of the Floridan—▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮—only in response to PFAS contamination. Opp. 28-29. This claim is wholly unsupported by the record evidence. Indeed, Plaintiff's *own public statements* on its website demonstrate that the move to the Floridan is required by the "threats" to the Surficial caused by (1) groundwater contamination, (2) potential saltwater intrusion, and (3) potential environmental impacts.[6] For all the reasons set forth in Defendants' opening brief, it is undisputed that Plaintiff was going to move to the Floridan Aquifer eventually. ECF No. 2695 ("Def. Br.") 19-21. Thus, even assuming, *arguendo*, that PFAS impacted the *timing* of that transition, the ▮▮▮▮▮▮ for these early exploration studies are costs that Plaintiff would

---

[6] JX 84 (printout from Stuart's website).

10

have incurred eventually—even if there had never been any PFAS contamination. These costs, therefore, cannot be fairly attributed to Defendants and summary judgment is warranted. *See Deese v. McKinnonville Hunting Club, Inc.*, 874 So. 2d 1282, 1287 (Fla. Dist. Ct. App. 2004) (damages must be caused by defendant's alleged misconduct); *see also Gooding v. Univ. Hosp. Bldg., Inc.*, 445 So. 2d. 1015, 1018 (Fla. 1984) (same).

### C. Defendants Are Entitled To Summary Judgment On Plaintiff's Claims For ▮▮▮▮▮▮ For Potential Future Soil And/Or Groundwater Remediation.

Plaintiff relies on an erroneous calculation by one of its other experts, Anthony Brown, to inflate its damages numbers by an additional ▮▮▮▮▮▮ for soil remediation. Plaintiff argues that there is a fact question as to whether soil contamination must be remediated, Opp. 29-30, but that is not so. Subject to the arguments in this motion showing Plaintiff cannot recover, the only specific harm for which Plaintiff may attempt to recover damages is alleged contamination of the water supply, and that is being treated at the water treatment plant. Plaintiff has presented no evidence that soil remediation is needed to remove contaminants from the water. In fact, citing its correspondence with the FDEP, Plaintiff acknowledges that it has not been formally required to remediate the soil and that all it can say is that it "*may*" be required to provide such remediation. Opp. 16 & n.69 (emphasis added). This underscores that Plaintiff's claim for damages for soil remediation is entirely speculative and summary judgment is therefore warranted. *Dash v. Mayweather*, 731 F.3d 302, 330 (4th Cir. 2013) (there must be a non-speculative connection between damages and injury).

Plaintiff claims (Opp. 29) that the primary basis for an award of damages is to make "the injured party whole," but Plaintiff seeks to be made more than whole, by attempting to recover not only the putative costs to remediate the water supply, but also the costs to remediate the soil that allegedly contains the PFAS causing the water contamination. Because Plaintiff has not presented

11

evidence that soil remediation is independently necessary, however, it has not shown an entitlement to damages for that remediation, which would result in an impermissible double recovery. *See* Def. Br. 23-24.

### III.    Plaintiff Bears The Burden Of Establishing Causation As To Each Defendant.

Plaintiff misstates and misapplies Florida causation law. Plaintiff claims "Florida courts follow the more likely than not standard of causation." Opp. 32. While it is true that Plaintiff must make out its case by a preponderance of the evidence, that does not address Defendants' argument. Longstanding Florida law requires proof that tortious conduct "directly and in natural and continuous sequence produces or **contributes substantially** to producing such … injury … so that it can reasonably be said that, **but for** the [tortious conduct], the injury would not have occurred." *Aubin v. Union Carbine Corp.*, 177 So.3d 489, 513 (2015) (quoting *In re Std. Jury Instr. In Civ. Cases—Report No. 13-01*, 16 So.3d at 877) (emphasis added); *see also Gooding*, 445 So. 2d. at 1018 (same). Yet none of Plaintiff's causation experts opines that ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ Plaintiff accordingly has not met its burden. This requires summary judgment in Defendants' favor on causation.

Plaintiff also ignores that it must prove causation against each Defendant specifically. *See Penelas*, 1999 WL 1204353, at *1. "A mere possibility of causation is not enough; and when the matter remains one of pure speculation or conjecture, or **the probabilities are at best evenly balanced**, it becomes the duty of the court to direct a verdict for the defendant." *Gooding*, 445 So. 2d. at 1018 (emphasis added). Plaintiff tries to distinguish the various cases cited by Defendants in their opening brief. Opp. 32. But Plaintiff does not and cannot dispute the fundamental underlying legal principle established in those (and other) cases—a plaintiff cannot rely on collective proof as to groups of defendants as a substitute for individual proof as to each. Nor does

12

Plaintiff dispute (indeed, it expressly concedes) that the Telomer Defendants did not cause any of the PFOS or branched PFOA present in its drinking water. *See* ECF No. 2803 ("Opp. to Kidde-Fenwal, MSJ") 1.  It is black-letter law that a plaintiff cannot hold a defendant liable for injuries that it indisputably did not cause. *See, e.g.*, *Deese*, 874 So. 2d at 1287; *Gooding*, 445 So. 2d. at 1018; *Walton for Est. of Smith v. Fla. Dep't of Corr.*, 2020 WL 5255088, at *17 (M.D. Fla. Sept. 3, 2020). The further application of these causation standards to the facts of this case is set forth in the individual motions for summary judgment, as well as the replies in support thereof.

**IV.     It Is Premature To Address The Application Of Joint And Several Liability**

In its opposition to the omnibus summary judgment motion, Plaintiff invokes Florida's statutory comparative fault scheme as it applies to "product liability" claims. Opp. 18 (citing Fla. Stat. § 768.81(d)).[7]  But, in response to a summary judgment motion filed by an individual defendant, Plaintiff alludes to the application of joint and several liability to these same claims, contending that this is a "pollution" case that falls within an exception to the comparative fault statute. *See* Opp. to Kidde-Fenwal MSJ 4 (citing Fla. Stat. § 768.81(4)).

Whether the "pollution" exception under Fla. Stat. § 768.81(4) applies to Plaintiff's claims in this action is a matter of first impression under Florida law, and Plaintiff cites no authority in support of its interpretation. Resolution of this issue is unnecessary to decide any of the pending summary judgment motions, and the Court therefore need not reach it at this stage.  Moreover, the application and interpretation of Florida Statute § 768.81(4) in the circumstances of this case is undeniably an important issue and should be resolved after full and appropriate briefing from all interested parties, rather than briefing as to only one individual defendant.  Defendants request that the Court not reach this issue until such an opportunity has been provided.

---

[7] In 2006, the Florida legislature largely abolished joint and several liability, including for products liability actions. *See* Fla. Stat. § 768.81(3)(b).

13

## CONCLUSION

For these reasons and those in Defendants' opening brief, the Court should grant Defendants' Omnibus Motion for Summary Judgment.

Dated: February 10, 2023                             Respectfully submitted,

/s/ *Michael A. Olsen*

| | |
|---|---|
| Michael A. Olsen | Brian Duffy |
| Mayer Brown LLP | Duffy & Young LLC |
| 71 South Wacker Drive | 96 Broad Street |
| Chicago, IL 60606 | Charleston, SC 29401 |
| P: (312) 701-7120 | P: (843) 720-2044 |
| F: (312) 706-8742 | F: (843) 720-2047 |
| molsen@mayerbrown.com | bduffy@duffyandyoung.com |
| | |
| Joseph G. Petrosinelli | David E. Dukes |
| Williams & Connolly LLP | Nelson Mullins Riley & Scarborough LLP |
| 680 Maine Ave., S.W. | 1320 Main Street, 17th Floor |
| Washington, DC 20024 | Columbia, SC 29201 |
| P: (202) 434-5547 | P: (803) 255-9451 |
| F: (202) 434-5029 | F: (803) 256-7500 |
| jpetrosinelli@wc.com | david.dukes@nelsonmullins.com |
| | |
| *Co-Lead Counsel for Defendants* | *Co-Liaison Counsel for Defendants* |

14

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on February 10, 2023, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify the foregoing document is being served this day on all counsel of record in this case via transmission of Notice of Electronic Filing generated by CM/ECF.

*/s/ Michael A. Olsen*
Michael A. Olsen