FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| CITY OF STUART, FLORIDA,<br><br>Plaintiff,<br><br>v.<br><br>3M COMPANY (f/k/a Minnesota Mining and Manufacturing, Co.), TYCO FIRE PRODUCTS LP, CHEMGUARD, INC., BUCKEYE FIRE EQUIPMENT COMPANY, NATIONAL FOAM, INC., KIDDE FENWAL, INC., DYNAX CORPORATION, E.I. DU PONT DE NEMOURS AND COMPANY, THE CHEMOURS COMPANY FC, L.L.C., CORTEVA, INC., DUPONT DE NEMOURS, INC., BASF CORPORATION, individually, and as successor in interest to Ciba Inc., and CLARIANT CORPORATION, individually, and as successor in interest to Sandoz Chemical Corporation.<br><br>Defendants. | MDL No. 2873<br><br>Master Docket No. 2:18-mn-2873<br><br>Judge Richard Mark Gergel<br><br>Civil Action No. 2:18-CV-03487 |

**PLAINTIFF CITY OF STUART'S RESPONSE TO
3M COMPANY'S MOTIONS IN LIMINE**.

**TABLE OF CONTENTS**

I.   **Motion *in Limine* No. 1 – 3M's Compliance With TSCA's Reporting Requirements and 3M's 2006 TSCA Settlement with EPA** ........................................................................ 1

    A.   The Evidence at Issue is Relevant. ...................................................................... 1

    B.   The Evidence Is Not Barred Under Evidence Rule 408. ..................................... 4

    C.   Evidence of the TSCA Action and Consent Agreement is not Unfairly Prejudicial. ......... 5

    D.   3M's Motion to Preclude 3M's TSCA Compliance More Generally Should be Denied. ... 6

II.  **Motion *in Limine* No. 2 – Richard Purdy's Resignation Letter** ........................................ 8

III. **Motion *in Limine* No. 3 – 3M's Recent Phaesout Annoucement** ..................................... 8

IV.  **Motion *in Limine* No. 4 – Payments to Experts** .................................................................. 8

V.   **Motion in *Limine* No. 5 – Dark Waters and the Devil We Know [ECF No. 2933]** ........ 11

i

## TABLE OF AUTHORITIES

**CASES**

*Behler v. Hanlon*, 199 F.R.D. 553 (D. Md. 2001) ........................................................ 9, 10

*Bilenky v. Ryobi Ltd.*, No. 2:13CV345, 2014 WL 12591078 (E.D. Va. Oct. 22, 2014)............... 10

*C&E Servs., Inc. v. Ashland, Inc.*, 539 F. Supp. 2d 316 (D.D.C. 2008) ........................................ 5

*Davis v. N.Y.C. Hous. Auth,* 90 Civ. 628 (RWS), 92 Civ. 4873 (RWS), 1997 U.S. Dist. LEXIS 10451 (S.D.N.Y. July 17, 1997)...................................................................................................... 3

*In re C8*, 2016 U.S. Dist. LEXIS 19880 (S.D. Ohio 2016) ............................................... 1, 2, 4, 6

*In re* C8, 345 F. Supp. 3d 897 (S.D. Ohio 2015) ..................................................................... 2

*Johnson v. Hugo's Skateway*, 974 F.2d 1408 (4th Cir. 1992) ......................................................... 4

*Martin v. Ball*, 326 Fed. Appx. 191 (4th Cir. 2009). ..................................................................... 5

*McCracken v. Depuy Orthopedics, Inc.*, 2013 WL 12141334 (N.D. Ohio July 26, 2013) ............ 8

*Seaman v. Duke Univ.*, No. 1:15CV462, 2018 WL 1441267 (M.D.N.C. Mar. 21, 2018).............. 9

*Spencer v. United States*, No. 02–2106, 2003 WL 23484640 (D. Kan. Dec. 16, 2003)............... 10

*U.S. v. Gilbert*, 668 F.2d 94 (2d Cir. 1981) ..................................................................................... 4

*UFORMA/Shelby Business Forms, Inc. v. NLRB,* 111 F.3d 1284 (6th Cir. 1997) ......................... 4

*United States v. Abel*, 469 U.S. 45 (1984) ...................................................................................... 9

*United States v. Greenwood*, 796 F.2d 49 (4th Cir. 1986)............................................................. 9

*Wiles v. Dep't of Educ.*, No. 04-00442 ACK-BMK, 2008 U.S. Dist. LEXIS 71567 (D. Haw. Sep. 11, 2008)....................................................................................................................................... 3

**RULES**

FED. R. CIV. P. 26 .............................................................................................................................. 9

FED. R. CIV. P. 30 .............................................................................................................................. 6

FED. R. EVID. 401 ............................................................................................................................. 2

FED. R. EVID. 402 ............................................................................................................................. 2

FED. R. EVID. 403 ........................................................................................................................... 10

FED. R. EVID. 408 .......................................................................................................................... 4, 5

**OTHER AUTHORITIES**

23 WRIGHT & MILLER Fed. Prac. & Proc. § 5314 (1st Ed. 1980) ............................................. 4

Plaintiff, City of Stuart, Florida, through Co-Lead Counsel, submits this memorandum in response to 3M Company's Motions *in limine*. [Stuart ECF 232 & ECF No. 2933].

## I. Motion *in Limine* No. 1 – 3M's Compliance With TSCA's Reporting Requirements and 3M's 2006 TSCA Settlement with EPA

In its motion to exclude its violations of the Toxic Substances Control Act ("TSCA"), 3M makes similar arguments to those that were considered and rejected by Judge Sargus in the C8 MDL. 3M has not raised any new significant arguments that would compel any different result and its motion should be denied as evidence relating to the TSCA violations are directly related to knowledge and notice and are substantive evidence that 3M withheld critical safety information pertaining to PFOA and PFOS, which ultimately resulted in a delayed regulatory process for PFOA and PFOS.

As it pertains to notice and knowledge, in the C8 MDL, Judge Sargus held that a consent decree that DuPont entered into with EPA was "directly relevant to DuPont's notice and knowledge of C-8's potential to cause harm" and was also relevant to "inquiry." *In re C8*, 2016 U.S. Dist. LEXIS 19880, at *1321 (S.D. Ohio 2016). The Court also held that the potential for unfair prejudice was addressed by giving the jury a limiting instruction that was read at the request of DuPont's counsel four times during trial. *Id*. at *1321-24 (quoting limiting instruction). Additionally, the version of the consent decree that was introduced as an exhibit was heavily redacted to eliminate any potential danger and/or concern of unfair prejudice and/or jury confusion. *Id.* at *1325. For these same reasons, 3M's motion should be denied.

### A. The Evidence at Issue is Relevant.

Plaintiff has asserted a common law claim against 3M alleging that 3M breached its duty of care owed to Plaintiff by introducing PFOA and PFOS into the marketplace which has

contaminated Plaintiff's drinking water supplies.[1] One of 3M's defenses to the existence of any such duty or breach is its argument that no duty existed because Plaintiff's damages were not "foreseeable."[2] Another defense is that "3M has complied with all applicable statutes and regulation set forth by [the] federal government . . . ."[3]  **REDACTED**

[4] This expert report also includes numerous selective quotations from EPA regarding the risk of harm from PFOA.[5] Considering the specific claims and defenses at issue in this case, evidence relating to EPA's actual position with respect to what risks or harms were reasonably foreseeable from PFAS and whether 3M complied with all laws and regulations relating to such risks/harms is clearly relevant. *See* FED. R. EVID. 401, 402; *In re C8*, 2016 U.S. Dist. LEXIS 19880, at \*1321. Also, "[t]he weight given to the [consent decree] may be appropriately explored on cross examination." *In re* C8, 345 F. Supp. 3d 897, 918 (S.D. Ohio 2015).

Further, the TSCA 8(e) violation is substantive and relevant evidence that 3M failed to timely report critical safety information to EPA as the terms of the consent decree required 3M to "self-audit" and disclose substantial risk information such audit would uncover.[6] That audit resulted in the disclosure of additional "substantial risk information" that the EPA went on to

---

[1] Second Am. Compl. ¶¶ 215, 216, 237, 238, 256, 257, 274 [*Stuart* ECF 54].

[2] 3M Co.'s Answer and Aff. Defenses to Plaintiff's Second Amended Complaint ¶¶ 24, 52 [*Stuart* ECF 75].

[3] *Id.* ¶ 29.

[4] Expert Report of Robert Rickard, dated Apr. 29, 2022, at 7, attached as Ex. A.

[5] *Id.* at 6.

[6] Consent Agreement and Final Order, Environmental Appeals Board,United States Environmental Protection Agency, Dkt. No. TSCA-HQ-2006-5004 at 2, (stating that "[o]n June 16, 1999, Complainant and Respondent entered into an "Agreement for TSCA Compliance Audit" (Audit Agreement) for Respondent to conduct an internal audit and to review and report on Respondent's compliance with TSCA…Pursuant to the Audit Agreement, Respondent undertook the audit and submitted a final report, dated September 20, 2000…[t]he final report identified disclosures made to EPA either during the course of the audit…"), attached as Ex. B.

describe as "valuable, previously unreported information that will help the scientific community to better understand the presence of toxic substances in the environment."[7] In this regard, such evidence is a crucial part of the underlying facts themselves and directly relevant to Plaintiff's claim that it was 3M's failure to timely report substantial risk information that delayed the regulatory process, and prevented the scientific community and the regulatory authorities from fully appreciating the true risk of harm presented by PFOA and PFOS in the environment and human blood. *See Wiles v. Dep't of Educ.*, No. 04-00442 ACK-BMK, 2008 U.S. Dist. LEXIS 71567, at *2-4 (D. Haw. Sep. 11, 2008) (holding a consent decree to admissible because it was relevant to a central issue in the case); *see also Davis v. N.Y.C. Hous. Auth,* 90 Civ. 628 (RWS), 92 Civ. 4873 (RWS), 1997 U.S. Dist. LEXIS 10451, at *33 (S.D.N.Y. July 17, 1997) (holding that a consent decree's disclaimer of liability does not bar consideration of underlying evidence for the purpose of establishing the existence of past discrimination.")

This evidence is especially important in light of 3M's position that it has at all times acted as a good corporate steward, having had the supposed foresight to have "phased out" of PFOA and PFOS years before EPA promulgated even a preliminary health advisory, and long before anyone understood the toxicity of PFOA and PFOS. Without evidence of this consent decree which required 3M to self-audit and disclose additional risk information in 2006, Plaintiff will be prejudiced and handicapped in that it will not be able to tell the true story and facts of how 3M delayed the regulatory process, and was not the good corporate steward it claims should be

---

[7] Press release regarding 3M's settlement states that "3M has corrected a number of violations, including failures to notify EPA on new chemicals, late reporting on substantial risk information, and other reporting violations. During the course of the audit, 3M produced valuable, previously unreported information that will help the scientific community to better understand the presence of toxic substances in the environment." *See* P1.LP511, EPA Settles Case Involving 3M Voluntary Disclosures of Toxic Substances Violations, attached as Ex. C.

celebrated for having had the foresight to phase out the manufacturer of these dangerous chemicals early on. To avoid any potential prejudice to 3M by the admissibility of this important evidence, a simple jury instruction and redaction of any problematic language in the consent decree, as was done in the nearly identical scenario involving the DuPont fine in the C8 trials before Judge Sargus, can be done as opposed to a complete exclusion of important evidence that speaks to the heart of Plaintiff's case.

**B.     The Evidence Is Not Barred Under Evidence Rule 408.**

Rule 408 relates only to actual "compromise offers and negotiations" relating to the settlement of claims, not to the assertion of the claims themselves. FED. R. EVID. 408. Yet, even as to evidence of such settlement terms, Rule 408 only precludes such evidence, if submitted "to prove or disprove the validity or amount of a disputed claim or to impeach a prior inconsistent statement or a contradiction," FED. R. EVID. 408(a)(1), and the Court retains the discretion to admit the evidence for any other purpose. FED. R. EVID. 408(b).

As such, the Court should deny 3M's motion to exclude the consent decree. *See In re C8*, 2016 U.S. Dist. LEXIS 19880 at *1327 (rejecting DuPont's 408 challenge because "[t]he Consent Decree was offered as evidence that DuPont had knowledge that the EPA *believed* DuPont's handling of C-8 was deficient – not that its handling of C-8 was actually deficient.") (emphasis in original). Such uses of this evidence are not barred under Rule 408. *UFORMA/Shelby Business Forms, Inc. v. NLRB,* 111 F.3d 1284, 1293-94 (6th Cir. 1997) (citing 23 WRIGHT & MILLER Fed. Prac. & Proc. § 5314 n.25 (1st Ed. 1980)). Thus, consent agreements and final orders often have been found admissible for such other purposes. *See, e.g., Johnson v. Hugo's Skateway*, 974 F.2d 1408, 1413 (4th Cir. 1992) (affirming district court's admission of consent decree to show motive and intent); *U.S. v. Gilbert*, 668 F.2d 94, 97 (2d Cir. 1981) (affirming trial court's admission

4

of prior consent decree because it showed defendant was aware of reporting requirements of the decree); *C&E Servs., Inc. v. Ashland, Inc.*, 539 F. Supp. 2d 316, 320-22 (D.D.C. 2008) (allowing evidence relating to defendant's prior settlement with United States for "other purpose" of establishing an element of plaintiff's fraud claim). Moreover, the evidence at issue would be used to inform the jury of statements and positions taken *by EPA* – not 3M, thus the policy reasons underlying Rule 408, to prevent use of a defendant's statements and compromise negotiations against it in later proceedings, are not implicated here.

The evidence is also not being used by a party to the agreement. Simply because 3M and EPA agreed that the consent decree would not be used against 3M, does not mean that this Court or Plaintiff is bound by that agreement. Plaintiff was not a party to the agreement and was not a third-party beneficiary to the agreement and therefore cannot be required to comply with the terms of any agreement between EPA and 3M. *Martin v. Ball*, 326 Fed. Appx. 191, 194 (4th Cir. 2009).

Evidence of the factual findings, that 3M withheld certain critical safety information is relevant to the liability story as against 3M, because it explains, in part, why EPA's regulation of PFOA and PFOS and the scientific community's understanding of the dangers of PFOA and PFOS, more generally, was delayed. Such critical evidence should not be excluded.

C.    **Evidence of the TSCA Action and Consent Agreement is not Unfairly Prejudicial.**

As noted above, 3M has made clear that one of its defenses is that no reasonable person, including EPA could have foreseen any risk of any kind from the PFAS contamination at issue, and that EPA believed 3M complied with all applicable standards. In this context, there is nothing unfairly prejudicial in showing the jury what EPA *actually said* it believed in this regard, nor does providing that evidence invite the jury to draw unfair inferences as to what EPA's position actually was on those points. And again, any potential unfair prejudice, such as the type identified in 3M's

5

motion can be addressed via a limiting instruction as Judge Sargus did in the C8 MDL. *In re C8*, 2016 U.S. Dist. LEXIS 19880, at \*1321-1325.

> **D.     3M's Motion to Preclude 3M's TSCA Compliance More Generally Should be Denied.**

To the extent 3M's motion seeks the exclusion of 3M's reporting requirements under TSCA, 3M's understanding of those requirements and/or 3M's actions and inactions with respect to those reporting requirements, it should also be denied. Separate and apart from seeking exclusion of 3M's fine for violating TSCA, 3M also seeks to exclude evidence of "TSCA compliance more generally."[8] In its motion, 3M has not provided the Court with *any* examples of such evidence it seeks to exclude. However, 3M's recently disclosed objections to Plaintiff's deposition designations makes clear how far reaching they intend their Motion *in Limine* to be. For example, Plaintiff conducted a 30(b)(6) deposition on the topic of 3M's TSCA obligations and actions and inactions related thereto and 3M is now invoking this Motion *in Limine* to exclude all of this highly relevant and probative testimony including 3M's.

For example, 3M has objected to the below testimony on the *sole* basis of this Motion *in Limine*:

> Q: True or false: By 1980, 3M was in possession of information that PFOS was a bioaccumluative compound, that it was widespread in the blood of the general population, and that it killed rhesus monkeys that were exposed to it. […]
>
> A: Based on my review of the documents, **3M had all of** – **had those pieces of information** […] but […] all of that information needs to be put together and judgment applied to making a TSCA 8(e) reporting decision.
>
> Q: Right. And 3M did that. 3M had all of that information and **decided not to disclose** it at that time in 1980, right?

---

[8] 3M Co.'s Motions in Limine [*Stuart* ECF No. 232] at 2.

A: **Yes**. I've reviewed documents that – you know, after the – those studies were conducted, that information was reviewed against EPA's reporting criteria, and the company made the determination that the information was not substantial risk information under TSCA 8(e).[9]

Similarly, 3M has objected to testimony discussing meeting minutes from a meeting hosted by EPA and attended by 3M wherein EPA provided guidance to industry (including 3M) on what was expected to be reported via TSCA. Again, the sole objection to this testimony is this Motion *in Limine*.

Q: Okay. So let's go to the second page please. It says – the third paragraph, it says, "The tone of the afternoon session can be summed up in the following statement: when in doubt, report." Did I read that correctly, sir?

A: Yes.

Q: And can you please underline that in red, "When in doubt, report?" Because I think this is critically important. Is that consistent with your understanding of what EPA expects from companies like 3M when it's trying to decide whether or not to report?

A: So I think this is a summary statement that needs to be linked back to EPA's other guidance and the statute itself where there needs to be reasonable support for a conclusion, but that doesn't have to be absolutely definitive. So that's how I would read this statement.

Q: Okay. But the 3M representative who attended this meeting summed it up with these four words, right?

A: I see that in this document.[10]

Mr. Gerber's testimony above is highly relevant because it is notice of 3M's regulatory and common law responsibilities, its knowledge of facts that were not reported pursuant to those regulatory and common law duties and goes to the foreseeability of harm associated with 3M's actions and inactions in the same regard. Because this evidence is relevant to these issues among others, 3M's amorphous request to exclude "TSCA compliance more generally," should be denied.

---

[9] Dep. Tr. of FED. R. CIV. P. 30(b)(6) witness John Gerber, dated Aug. 19, 2021, at 90:23-91:25, attached as Ex. D.
[10] Ex. D, *Id*. at 114:19-115:20.

## II.     Motion *in Limine* No. 2 – Richard Purdy's Resignation Letter

Plaintiff has no present intention of introducing evidence of Dr. Purdy's resignation from 3M and/or the resignation that accompanied it. As such, 3M's motion in this regard should be denied as moot and 3M should not be permitted to introduce evidence of his declaration from the *Guernsey* Litigation.

## III.     Motion *in Limine* No. 3 – 3M's Recent Phaesout Annoucement

Plaintiff has no present intention of introducing evidence of or referring to 3M's recent announcement that it will phaseout of all PFAS. As such, 3M' motion in this regard should be denied as moot.

## IV.     Motion *in Limine* No. 4 – Payments to Experts

3M seeks to exclude evidence of the amount of money it paid to experts in this MDL and in other PFAS cases in which it is embroiled.  **REDACTED**

[11] 3M contends that only payments in "this specific litigation" are proper and that the Court should exclude evidence of the fortunes paid by 3M to its experts defending similar causes. 3M Brf. at 9, quoting *McCracken v. Depuy Orthopedics, Inc.*, 2013 WL 12141334, at *3 (N.D. Ohio July 26, 2013). To 3M's mind, the total amount of money it has paid to its experts "has no bearing on the issues in this case." *Id.* Plaintiff wholeheartedly disagrees.

---

[11] Def. 3M Co.'s Supplemental Responses & Objections to Plaintiffs' Fourth Set of Interrogatories, dated Jul. 13, 2022, attached as Ex. E.

Evidence of any witness's total financial stake in a particular type of litigation is relevant to bias and should be admitted. *See United States v. Abel*, 469 U.S. 45, 52 (1984) ("Proof of bias is almost always relevant"). To artificially construct limits around 3M's expert witnesses' gross compensation derived from their expert-related services for 3M, as it suggests, would deprive the jury of the ability to accurately assess the bias inherent in 3M's experts receiving over $28 million.[12]

The Fourth Circuit agrees: "[t]he point of a bias inquiry is to expose to the jury the witness's special motive to lie by revealing facts *such as pecuniary interest in the trial*." *United States v. Greenwood*, 796 F.2d 49, 54 (4th Cir. 1986) (citations omitted; emphasis added). One of the leading authorities in this circuit (and elsewhere) on the *discovery* of evidence regarding expert compensation bias is *Behler v. Hanlon*, 199 F.R.D. 553, 556-57 (D. Md. 2001). Therein, the court thoroughly analyzed the scope of discovery of the income earned by a so-called "independent medical examiner (IME)" that had "significant financial ties" to counsel for the defendant. The court acknowledged:

> The fact that an expert witness may have…[a] history of earning significant income testifying primarily as a witness for defendants…certainly fits within recognized examples of bias/prejudice impeachment, making such facts relevant both to the subject matter of the litigation, and the claims and defenses raised, and placing it squarely within the scope of discovery authorized by Rule 26(b)(1), in either its present, or immediately preceding version.

---

[12] An expert's total compensation is relevant. "Although it may be common for attorneys to consider [the Rule 26(a)(2)(B)] requirement satisfied by the disclosure of the expert's hourly rate, the rule on its face refers to the expert's 'compensation,' not to the expert's billing rate. An expert's compensation is relevant to potential bias; that is why it is required as an initial disclosure." *Seaman v. Duke Univ.*, No. 1:15CV462, 2018 WL 1441267, at *8 (M.D.N.C. Mar. 21, 2018) (citations omitted).

*Id.* at 557 (internal footnote omitted). The court also noted that "no intellectually honest argument can be made that the information sought by plaintiff regarding [the IME's] activities as a defense expert witness is not relevant to bias/prejudice impeachment . . . ." *Id.* at 561. It therefore allowed a deposition limited in scope to the total percentage of the witness's gross income earned from providing expert services. Out of concern for discovery abuse and the disclosure of said witness's income from sources unrelated to litigation activities, the court also issued a protective order prohibiting the dissemination of the information produced. *Id.* at 562-63.

Later, in *Bilenky v. Ryobi Ltd.*, No. 2:13CV345, 2014 WL 12591078, at *4 (E.D. Va. Oct. 22, 2014) -- after noting the procedural distinction between the Rule 403 motion it was addressing from the discovery motion considered in *Behler* -- the court ruled that "when a court narrows the range of discoverable evidence at the discovery stage, as in *Behler*, the intuitive result is that the evidence produced will more likely be admissible at trial." Consequently, the *Bilenky* court permitted plaintiff to introduce evidence of all the income of the defendant's expert-related earnings for the past three years. It held:

> Because Mr. Nielsen's history of expert testimony for Husqvarna is highly probative evidence of his bias, the Court DENIES Defendants' motion to exclude this evidence. Any danger in misleading the jury or the jury's confusing the issues does not substantially outweigh the probative value of the impeachment evidence Plaintiff intends to offer. It is further ORDERED that Plaintiff's impeachment evidence, subject to Defendants' motion here, shall be limited to Mr. Nielsen's expert-related income earned on behalf of Husqvarna during the last three years.[13]

Other courts agree with the reasoning of *Bilenky*. *See, e.g., Spencer v. United States*, No. 02–2106, 2003 WL 23484640, at *11 (D. Kan. Dec. 16, 2003) ("a finder of fact should be permitted to assess possible bias on the part of an expert witness by hearing evidence regarding

---

[13] *Id.* at *4.

10

the expert's gross income derived from similar litigation activities."); *see also Hartman v. Janssen*, No. 150500362, Hrg Trans. at 135 (C.P. Phila. Nov. 13, 2017) (allowing defendant (represented by 3M's trial counsel in this case) to question former FDA Commissioner about his total income from work for plaintiffs in pharmaceutical litigation with the condition that "it's fair for the plaintiffs to redirect on the number of those cases.")[14]

Considering the importance money has on influencing behavior, it is no surprise that 3M wants to keep secret from the jury the enormous sums it has paid to its experts. However, the weight of authority is against 3M. Its motion should be denied.

**V.    Motion in *Limine* No. 5 – Dark Waters and the Devil We Know [ECF No. 2933].**

Plaintiff has no present intention of introducing evidence of or referring to either the major motion picture Dark Waters or the documentary the Devil We Know. As such, 3M's motion in this regard should be denied as moot. Plaintiff does, however, propose asking prospective jurors whether they are familiar with the movie Dark Waters and/or the Devil We Know as part of the jury questionnaire and *voir* dire.

Dated: April 7, 2023

Respectfully submitted,

*s/ Fred Thompson, III*
Fred Thompson, III
Motley Rice LLC
28 Bridgeside Boulevard
Mt. Pleasant, SC 29464
P: (843) 216-9000
Fax: 843-216-9440
fthompson@motleyrice.com

*Plaintiffs' Liaison Counsel*

---

[14] Trial Tr., *Hartman v, Janssen, et al*., Vol. V, dated Nov. 13, 2017, attached as Ex. F.

11

-and-

s/*Michael A. London*

Michael A. London
Douglas and London PC
59 Maiden Lane
6th Floor
New York, NY 10038
P: (212)-566-7500
F: (212)-566-7501
mlondon@douglasandlondon.com

Paul J. Napoli
Napoli Shkolnik PLLC
1301 Avenue of The Americas
10th Floor
New York, NY 10019
P: (212)-397-1000
F: (646)-843-7603
pnapoli@napolilaw.com

Scott Summy
Baron & Budd, P.C.
3102 Oak Lawn Avenue
Suite 1100
Dallas, TX 75219
P: (214)-521-3605
ssummy@baronbudd.com

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was electronically filed with this Court's CM/ECF on this 7th day of April 2023 and was thus served electronically upon all counsel of record.

/s/ *Fred Thompson*

Fred Thompson
*Plaintiffs' Liaison Counsel*

12