# Exhibit D

```
 1              UNITED STATES DISTRICT COURT
          FOR THE DISTRICT OF SOUTH CAROLINA
 2                   CHARLESTON DIVISION
 3    IN RE: AQUEOUS              )
      FILM-FORMING FOAMS          )
 4    (AFFF) PRODUCTS             )   MDL NO.
      LIABILITY LITIGATION        )   2:18-mn-2873-RMG
 5    _____    )
      THIS DOCUMENT RELATES       )
 6    TO ALL CASES                )
 7
 8             THURSDAY, AUGUST 19, 2021
 9    CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER
10                       - - -
11             Remote videotaped deposition of 3M
12    Company 30(b)(6) designee Jon Gerber, held
13    remotely at the location of the witness in
14    Cottage Grove, Minnesota, commencing at
15    9:02 a.m. Eastern, on the above date, before
16    Carrie A. Campbell, Registered Diplomate
17    Reporter and Certified Realtime Reporter.
18
19
20
21                       - - -
22
              GOLKOW LITIGATION SERVICES
23       877.370.3377 ph | 917.591.5672 fax
                 deps@golkow.com
24
25
```

```
 1   factors, and then the potential for
 2   widespread distribution and potential for
 3   widespread exposure.
 4        Q.    Okay.  We'll get to that.
 5              But death is a nontrivial
 6   adverse effect in Mr. Gerber's opinion,
 7   right?
 8        A.    Yes.
 9        Q.    Okay.  So let's keep reading.
10              Under Pronounced
11   Bioaccumulation it's written, "Measurements
12   and indicators of pronounced bioaccumulation,
13   heretofore unknown to the administrator,
14   including bioaccumulation in fish beyond
15   5,000 times water concentration in a 30-day
16   exposure or having an N-octanol/water
17   partition coefficient greater than 25,000,
18   should be reported when coupled with
19   potential for widespread exposure and any
20   nontrivial adverse effect."
21              Right?
22        A.    That's correct.
23        Q.    Okay.  Let's try this.  True or
24   false:  By 1980, 3M was in possession of
25   information that PFOS was a bioaccumulative
```

Confidential - Pursuant to Protective Order

1  compound, that it was widespread in the blood

2  of the general population, and that it killed

3  rhesus monkeys that were exposed to it.

4          True or false?

5      A.    Based on my review of the

6  documents, 3M had all of -- had those pieces

7  of information, although it --

8  bioaccumulation, again, I think that's

9  that -- maybe it was the slow elimination

10 rate that was recognized at the time, but all

11 of those informations need -- all of that

12 information needs to be put together and

13 judgment applied in making a TSCA 8(e)

14 reporting decision.

15     Q.    Right.  And 3M did that.

16           3M had all of that information

17 and decided not to disclose it at that time

18 in 1980, right?

19     A.    Yes.  I've reviewed documents

20 that -- you know, after the -- those studies

21 were conducted, that information was reviewed

22 against EPA's reporting criteria, and the

23 company made the determination that the

24 information was not substantial risk

25 information under TSCA 8(e).

```
 1   discussing interpretation of TSCA 8(e).
 2        Q.   Okay.  Let's read the first
 3   paragraph.
 4             It says, "Over 400 industry
 5   representatives heard the Environmental
 6   Protection Agency's toxic substances staff
 7   review issues related to enforcement of
 8   Section 8(e) of the Act in a sometimes stormy
 9   meeting on December 7th."
10             Did I read that correctly, sir?
11        A.   Yes.
12        Q.   And you knew, sir, that
13   industry was not a big fan of this law being
14   enacted because it put tremendous
15   requirements on the chemical industry, right?
16        A.   I really can't speak for the
17   state of mind of industry at the time, so
18   that's beyond my understanding.
19        Q.   Okay.  So let's go to the
20   second page, please.
21             It says -- the third paragraph,
22   it says, "The tone of the afternoon session
23   can be summed up in the following statement:
24   When in doubt, report."
25             Did I read that correctly, sir?
```

```
 1         A.    Yes.
 2         Q.    And can you please underline
 3   that in red, "When in doubt, report"?
 4   Because I think this is critically important.
 5               Is that consistent with your
 6   understanding of what EPA expects from
 7   companies like 3M when it's trying to decide
 8   whether or not to report?
 9         A.    So I think this is a summary
10   statement that needs to be linked back to
11   EPA's other guidance and the statute itself
12   where there needs to be reasonable support
13   for a conclusion, but that doesn't have to be
14   absolutely definitive.
15               So that's how I would read this
16   statement.
17         Q.    Okay.  But the 3M
18   representative who attended this meeting
19   summed it up with these four words, right?
20         A.    I see that in this document.
21         Q.    Okay.  So just so there's no
22   ambiguity here, uncertainty, 3M -- excuse me.
23   EPA made crystal clear to industry, including
24   3M, who was in attendance at this meeting,
25   that when in doubt, you must report, right?
```