**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| **IN RE: AQUEOUS FILM-FORMING FOAMS PRODUCTS LIABILITY LITIGATION** | MDL No. 2:18-mn-2873-RMG<br><br>**This Document relates to**:<br><br>*City of Stuart, FL, v. 3M Company et al.,*<br>No. 2:18-cv-03487 |

**DEFENDANTS' OMNIBUS OPPOSITIONS TO
PLAINTIFF'S MOTIONS IN LIMINE**

**TABLE OF CONTENTS**

**Page**

Opp. to Motion 1     The Court Should Deny Plaintiff's Motion To Exclude Evidence Relating To The Government Contractor Defense. ................................... 1

Opp. to Motion 2     The Court Should Deny Plaintiff's Motion To Preclude Evidence Of Other Possible Sources Of PFAS Contamination............................... 3

Opp. to Motion 3     The Court Should Deny, In Part, Plaintiff's Motion To The Extent It Seeks To Exclude Evidence Related To Plaintiff's Expert Dr. Linda Birnbaum's Submissions And Publications On Toxic Chemicals And Environmental Health. ....................................... 8

Opp. to Motion 4     The Court Should Permit General Causation Evidence, Which Plaintiff Itself Agrees Is Relevant And Admissible................................ 10

Opp. to Motion 5     The Court Should Deny Plaintiff's Motion To Preclude Defendants From Challenging Or Criticizing EPA's Health Advisory Levels For PFAS In Drinking Water. .................................................... 12

Opp. to Motion 6     The Court Should Deny Plaintiff's Motion To Exclude Evidence Or Argument Relating To Plaintiff's Receipt Of Funds From Florida Or Other Third Parties. ................................................. 14

Opp. to Motion 7, Part I ...................................................................................... 17

    A.    The Court Should Deny Plaintiff's Motion Regarding The Use Of Common Pronouns Like "We," "Us," Or "Our." ............................... 17

    B.    The Court Should Deny Plaintiff's Motion To Preclude All References To Counsel's Personal Backgrounds........................................................ 17

    C.    The Court Should Deny Plaintiff's Motion To Exclude Testimony Concerning Use Of AFFF Or About Consumption Of Water Containing PFAS. ........................................................................................ 18

    D.    Defendants Do Not Intend To Offer Evidence Concerning The Training And Education Available To Plaintiff's Attorneys............................... 21

    E.    Defendants Do Not Intend To Offer Evidence Concerning How Plaintiff Learned About Its Lawyers, Why It Decided To Retain Those Lawyers, Or Advertising By Plaintiff's Lawyers. .............................................. 21

Opp. to Motion 7, Part II     The Court Should Deny Plaintiff's Motion To Exclude Evidence Of How A Verdict Would Affect Defendants' Businesses And Evidence That This Case Is "Lawyer-Driven."................................................................. 23

Opp. to Motion 7, Part III ............................................................................... 26

i

# TABLE OF CONTENTS
(continued)

**Page**

A. The Court Should Deny Plaintiff's Motion To Introduce The Size And Scope Of The MDL If Defendants Cross-Examine Plaintiff's Experts On Their Compensation In Cases Other Than This One. .......................................... 26

B. The Court Should Allow Evidence And Argument Regarding Plaintiff's Experts' Failure To Publish And Publicize Their Opinions. .............................. 27

Opp. to Motion 7, Part IV     The Court Should Deny Plaintiff's Motion To Exclude All Evidence Plaintiff Characterizes As Relating To Corporate Character And Good Acts. ........................................................... 28

ii

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*In re 3M Combat Arms Earplug Prods. Liab. Litig.*,
2021 WL 918214 (N.D. Fla. Mar. 10, 2021) ..............................................................................24

*In re 3M Combat Arms Earplug Prods. Liab. Litig.*,
2022 WL 823474 (N.D. Fla. Mar. 19, 2022) ................................................................................4

*In re Actos (Pioglitazone) Prods. Liab. Litig.*,
2013 WL 5603823 (W.D. La. Oct. 10, 2013) .............................................................................25

*Adams v. Lab'y Corp. of Am.*,
760 F.3d 1322 (11th Cir. 2014) ...................................................................................................9

*Adinolfe v. United Techs. Corp.*,
768 F.3d 1161 (11th Cir. 2014) ..............................................................................................2, 11

*Am. Chemistry Council v. EPA*,
No. 22-1177 (D.C. Cir.) ..............................................................................................................14

*Aycock* v. *R.J. Reynolds Tobacco Co.*,
769 F.3d 1063 (11th Cir. 2014) ...................................................................................................4

*In re Bard IVC Filters Prods. Liab. Litig.*,
2018 WL 934795 (D. Ariz. Feb. 15, 2018).............................................................................29, 31

*Barnett v. Deere & Co.*,
2016 WL 6803152 (S.D. Miss. Nov. 16, 2016)...........................................................................23

*Bellew v. Ethicon, Inc.*,
2014 WL 6680356 (S.D. W. Va. Nov. 25, 2014) ........................................................................30

*Belville v. Ford Motor Co.*,
919 F.3d 224 (4th Cir. 2019) ........................................................................................................6

*Bloome v. Joshua's Haven, Inc.*,
2019 WL 6528602 (S.D. Miss. Dec. 4, 2019) ............................................................................14

*Bockweg v. Anderson*,
117 F.R.D. 563 (M.D.N.C. 1987)..................................................................................................9

*Bowe v. Pub. Storage*,
2015 WL 10857339 (S.D. Fla. June 2, 2015) ...............................................................................7

*Burton v. R.J. Reynolds Tobacco Co.*,
   183 F. Supp. 2d 1308 (D. Kan. 2002)...................................................................27

*Carnell Constr. Corp. v. Danville Redev. & Hous. Auth.*,
   745 F.3d 703 (4th Cir. 2014) ..............................................................................12

*Clark v. Hershey Co.*,
   2019 WL 6050763 (N.D. Cal. Nov. 15, 2019) ......................................................25

*Colombo v. CMI Corp.*,
   26 F. Supp. 2d 574 (W.D.N.Y. 1998)...................................................................28

*Crowell v. Ritz Carlton Hotel (Virgin Islands), Inc.*,
   2013 WL 5925265 (D.V.I. June 3, 2013) .............................................................23

*Cunningham Charter Corp. v. Learjet Inc.*,
   2012 WL 2830351 (S.D. Ill. July 10, 2012) .........................................................18

*Daubert v. Merrell Dow Pharms.*,
   509 U.S. 579 (1993)............................................................................................27

*Daubert v. Merrell Dow Pharms.*,
   43 F.3d 1311 (9th Cir. 1995) ..............................................................................28

*In re Davol, Inc./C.R. Bard, Inc., Polypropylene Hernia Mesh Prods. Liab. Litig.*,
   2021 WL 5577409 (S.D. Ohio Nov. 30, 2021).....................................................19

*In re Davol, Inc./C.R. Bard, Inc., Polypropylene Hernia Mesh Prods. Liab. Litig.*,
   510 F. Supp. 3d 538 (S.D. Ohio. 2020) ........................................................29, 30

*Deese v. McKinnonville Hunting Club, Inc.*,
   874 So. 2d 1282 (Fla. Dist. Ct. App. 2004) .........................................................25

*Dial Corp. v. News Corp.*,
   165 F. Supp. 3d 25 (S.D.N.Y. 2016)....................................................................27

*EEOC v. St. Joseph's/Candler Health Sys.*,
   2022 WL 17978822 (S.D. Ga. Dec. 28, 2022) .....................................................31

*Faddish v. Buffalo Pumps*,
   881 F. Supp. 2d 1361 (S.D. Fla. 2012) .............................................................2, 10

*Ferris v. Tenn. Log Homes, Inc.*,
   2010 WL 1049852 (W.D. Ky. Mar. 19, 2010) ........................................................9

*Greico v. Daiho Sangyo, Inc.*,
   344 So. 3d 11 (Fla. Dist. Ct. App. 2022) ..........................................................2, 10

iv

*Guthrie v. Ball*,
    2014 WL 11585620 (E.D. Tenn. Oct. 14, 2014) ...................................................................22

*Hall v. EPA*,
    273 F.3d 1146 (9th Cir. 2001) ........................................................................................12

*Hayes v. Colgate-Palmolive Co.*,
    2021 WL 298377 (Ky. Ct. App. Jan. 29, 2021)...........................................................19, 20

*Herrera v. Eli Lilly & Co.*,
    2015 WL 12911753 (C.D. Cal. Aug. 3, 2015)....................................................................25

*Hickerson v. Yamaha Motor Corp.*,
    2016 WL 4055025 (D.S.C. July 29, 2016) ........................................................................27

*Hipwell v. Air & Liquid Sys. Corp.*,
    2022 WL 3999955 (D. Utah Aug. 31, 2022) ......................................................................3

*Hockensmith v. Ford Motor Co.*,
    2003 WL 25639639 (N.D. Ga. Apr. 17, 2003)...................................................................31

*Horne v. Owens-Corning Fiberglas Corp.*,
    4 F.3d 276 (4th Cir. 1993) ..............................................................................................2

*Joerg v. State Farm Mut. Auto. Ins. Co.*,
    176 So. 3d 1247 (Fla. 2015)...........................................................................................15

*Johnson v. C.R. Bard Inc.*,
    2021 WL 2070448 (W.D. Wis. May 24, 2021) ..................................................................30

*Kritikos v. Andersen*,
    125 So. 3d 885 (Fla. Dist. Ct. App. 2013) ........................................................................11

*Linares v. Crown Equip. Corp.*,
    2017 WL 10403454 (C.D. Cal. Sept. 13, 2017) ..................................................................2

*Lindsey v. Normet*,
    405 U.S. 56 (1972)........................................................................................................20

*LNC Invs., Inc. v. First Fid. Bank*,
    2000 WL 1182772 (S.D.N.Y. Aug. 21, 2000).....................................................................9

*Marathon Petroleum v. Midwest Marine*,
    906 F. Supp. 2d 673 (E.D. Mich. 2012)...........................................................................7, 8

*MCI Worldcom Network Servs., Inc. v. Mastec, Inc.*,
    995 So. 2d 221 (Fla. 2008)............................................................................................11

*Merck Sharp & Dohme Corp. v. Albrecht*,
    139 S. Ct. 1668 (2019).......................................................................................1

*Metoyer v. Auto Club Fam. Ins. Co.*,
    536 F. Supp. 2d 664 (E.D. La. 2008)........................................................16

*Musgrave v. Breg, Inc.*,
    2011 WL 4620767 (S.D. Ohio Oct. 3, 2011).....................................24, 30

*Niles v. Owensboro Med. Health Sys., Inc.*,
    2011 WL 3205369 (W.D. Ky. July 27, 2011) ...........................................17

*Norris v. Baxter Healthcare Corp.*,
    397 F.3d 878 (10th Cir. 2005) ..................................................................10

*Penelas v. Arms Tech.*,
    1999 WL 1204353 (Fla. Cir. Ct. Dec. 13, 1999) .................................2, 11

*Philip Morris USA v. Williams*,
    549 U.S. 346 (2007)..................................................................................32

*Pierre v. Intuitive Surgical, Inc.*,
    476 F. Supp. 3d 1260 (S.D. Fla. 2020) ....................................................30

*R.J. Reynolds Tobacco Co. v. Nelson*,
    353 So. 3d 87 (Fla. Dist. Ct. App. 2022) ..............................................1, 10

*Slappy v. City of Detroit*,
    2021 WL 2986284 (E.D. Mich. July 15, 2021) ........................................17

*Smith v. Belterra Resort Ind., LLC*,
    2007 WL 4238959 (S.D. Ind. Nov. 27, 2007) ..........................................23

*State Farm Fire & Cas. Co. v. Bell*,
    30 F. Supp. 3d 1085 (D. Kan. 2014).........................................................27

*Tamraz v. Lincoln Elec. Co.*,
    620 F.3d 665 (6th Cir. 2010) ......................................................................8

*Tereskun-Arce v. KW Int'l, Inc.*,
    2019 WL 13245750 (M.D. Fla. Dec. 16, 2019).......................................22

*In re Testosterone Replacement Therapy Prods. Liab. Litig. Coordinated Pretrial Proc.*,
    2017 WL 2313201 (N.D. Ill. May 29, 2017)............................................31

*Town of East Troy v. Soo Line R.R. Co.*,
    653 F.2d 1123 (7th Cir. 1980) ..................................................................15

vi

*In re Tylenol (Acetominophen) Mktg.*,
   2016 WL 3125428 (E.D. Pa. June 3, 2016) ........................................................20, 21, 30

*United Prop. & Cas. Ins. v. Couture*,
   — F. Supp. 3d —, 2022 WL 16798204 (D.S.C. Nov. 8, 2022).............................................27

*United States v. Miller*,
   61 F.4th 426 (4th Cir. 2023) ...................................................................................................3

*United States v. Sanchez*,
   118 F.3d 192 (4th Cir. 1997) .................................................................................................17

*United States v. Stevens*,
   994 So. 2d 1062 (Fla. 2008)..................................................................................................10

*UPMC v. CBIZ, Inc.*,
   2021 WL 1176746 (W.D. Pa. Mar. 29, 2021) ......................................................................29

*In re Valsartan*,
   2023 WL 1818922 (D.N.J. Feb. 8, 2023) ...............................................................................8

*Vincent v. C.R. Bard, Inc.*,
   944 So. 2d 1083 (Fla. Dist. Ct. App. 2006) ...........................................................................1

*In re Vioxx Prods. Liab. Litig.*,
   2006 WL 8472994 (E.D. La. Nov. 22, 2006) .......................................................................25

*In re Vioxx Prods. Liab. Litig.*,
   2005 WL 3164251 (E.D. La. Nov. 18, 2005) .......................................................................25

*Weisberg v. Takeda Pharms. U.S.A., Inc.*,
   2018 WL 4043171 (C.D. Cal. Aug. 21, 2018).......................................................................25

*In re Welding Fume Prods. Liab. Litig.*,
   2010 WL 7699456 (N.D. Ohio June 4, 2010).........................................................................7

*Wendell v. GlaxoSmithKline LLC*,
   858 F.3d 1227 (9th Cir. 2017) ..............................................................................................27

*Woodruff v. R.J. Reynolds Tobacco Co.*,
   2015 WL 506281 (M.D. Fla. Feb. 6, 2015) ............................................................................4

*In re Xarelto (Rivaroxaban) Prods. Liab. Litig.*,
   2017 WL 11718344 (E.D. La. Apr. 18, 2017)..................................................................22, 26

*In re Xarelto (Rivaroxaban) Prods. Liab. Litig.*,
   2017 WL 2780760 (E.D. La. May 26, 2017).........................................................................28

*In re Yasmin & Yaz (Drospirenone) Mktg., Sales Pracs. & PMF Prods. Liab. Litig.*,
2011 WL 6740391 (S.D. Ill. Dec. 22, 2011).......................................................................3, 24

**STATUTES**

Fla. Stat. § 768.72(2)....................................................................................................................19

Fla. Stat. § 768.1257 .....................................................................................................................2

**RULES**

FED. R. APP. P. 17.........................................................................................................................14

FED. R. EVID. 403 .....................................................................................................................3, 16

**OTHER AUTHORITIES**

EPA, *Drinking Water Health Advisories (HAs)* (last updated June 15, 2022),
https://www.epa.gov/sdwa/drinking-water-health-advisories-has..........................................13

Fla. Standard Civil Jury Instruction No. 403.9...............................................................................1

Fla. Standard Civil Jury Instruction No. 403.15(e) ........................................................................1

Fla. Standard Civil Jury Instruction No. 503.2(c)(1)(A) ..............................................................30

Fla. Standard Civil Jury Instruction No. 503.2(c)(1)(B)...............................................................19

**Opp. to Motion 1**     **The Court Should Deny Plaintiff's Motion To Exclude Evidence Relating To The Government Contractor Defense.**

Defendants agree not to assert at trial that they are entitled to judgment under the government contractor defense. That stipulation should fully resolve Plaintiff's motion to exclude "the government contractor defense as an affirmative defense." Pl.'s Mot. in Limine No. 1 (Dkt. 226), at 1.[1] To the extent Plaintiff is asking the Court to exclude evidence or argument that might *relate to* the government contractor defense—that is, evidence or argument that the government designed or approved of AFFF, required Defendants to manufacture AFFF according to its specifications, or was aware of potential risks associated with AFFF—the Court should deny Plaintiff's motion. Such evidence is highly relevant and admissible.

Evidence that the government used, approved, designed, developed, or provided specifications for AFFF bears directly on Plaintiff's negligence claim, which requires the jury to decide whether Defendants exercised reasonable care in manufacturing AFFF or its component parts. *See Vincent v. C.R. Bard, Inc.*, 944 So. 2d 1083, 1085 (Fla. Dist. Ct. App. 2006); Fla. Standard Civil Jury Instruction No. 403.9. Evidence that Defendants manufactured AFFF pursuant to the government's own specification or design, or with the government's approval, tends to show that Defendants acted with the same level of care that a reasonable manufacturer would. For similar reasons, this evidence is also relevant to Plaintiff's strict liability design defect claim, which asks whether the "risk of danger in the design of the product outweighs the benefits." Fla. Standard Civil Jury Instruction No. 403.15(e); *see R.J. Reynolds Tobacco Co. v. Nelson*, 353 So. 3d 87, 89

---

[1] Plaintiff asserts that a recent Supreme Court decision "demands" that judges, rather than juries, decide whether the government contractor defense is applicable. Pl.'s Mot. No. 1, at 3 (citing *Merck Sharp & Dohme Corp. v. Albrecht*, 139 S. Ct. 1668, 1680 (2019)). But because Defendants do not affirmatively assert the defense here, the question of who must decide the applicability of the defense is beside the point.

(Fla. Dist. Ct. App. 2022) (strict liability design defect claim "requires the plaintiff to prove that" a product "created an unreasonably dangerous condition").  If the government knew about any potential risks associated with AFFF but continued using or approving AFFF anyway, the jury could draw the inference that the risk of danger did not outweigh the benefits.[2]

In addition, where, as here, a plaintiff asserts a design defect claim, the jury must also consider "the state of the art of scientific and technical knowledge and other circumstances that existed at the time of manufacture."  Fla. Stat. § 768.1257.  Government regulations, requirements, or specifications for AFFF are part of the body of "scientific, medical, engineering, and . . . other knowledge" that inform the "state of the art" at the "time" in question.  *Horne v. Owens-Corning Fiberglas Corp.*, 4 F.3d 276, 280–81 (4th Cir. 1993) (OSHA warning label regulations are state-of-the-art evidence); *see also Linares v. Crown Equip. Corp.*, 2017 WL 10403454, at *7 (C.D. Cal. Sept. 13, 2017) (evidence of manufacturer's "compliance" with "governmental standards" in designing forklift is "relevant" to balancing risks and benefits for design defect claim).

The government's knowledge of the risks of AFFF also bears on Plaintiff's failure to warn claims, which require Plaintiff to show the foreseeable risks of harm from AFFF (for strict liability) or what Defendants knew or should have known about the risks of harm (for negligence).  *See Greico v. Daiho Sangyo, Inc.*, 344 So. 3d 11, 20 (Fla. Dist. Ct. App. 2022) (strict liability failure to warn claim focuses on warnings about "the foreseeable risks of harm" posed by the product); *Faddish v. Buffalo Pumps*, 881 F. Supp. 2d 1361, 1369 (S.D. Fla. 2012) (negligent failure to warn

---

[2] Plaintiff's private nuisance claim requires unreasonable conduct.  *See Adinolfe v. United Techs. Corp.*, 768 F.3d 1161, 1174 (11th Cir. 2014).  Defendants have moved for summary judgment on that claim on the basis that "nuisance does not apply to the design, manufacture, and distribution of a lawful product."  *Penelas v. Arms Tech.*, 1999 WL 1204353, at *4 (Fla. Cir. Ct. Dec. 13, 1999).  If the Court denies that motion, evidence of the government's knowledge, use, or approval of, or specifications for, AFFF would also be relevant to Plaintiff's private nuisance claim.

asks whether the manufacturer gave "appropriate warnings about the particular risks of the product" about which the manufacturer "knew or should have known"). The evolution of the government's knowledge of the alleged risks of AFFF informs whether Defendants would have had reason to know about those risks. *See Hipwell v. Air & Liquid Sys. Corp.*, 2022 WL 3999955, at *3 (D. Utah Aug. 31, 2022) ("if the Navy had limited knowledge regarding the dangers of asbestos, it is less likely that Foster Wheeler knew or should have known about the risk"); *In re Yasmin & Yaz (Drospirenone) Mktg., Sales Pracs. & PMF Prods. Liab. Litig.*, 2011 WL 6740391, at *5 (S.D. Ill. Dec. 22, 2011) (memo showing government's knowledge is relevant to what manufacturer "should have known").

Evidence that the government designed, used, approved, or created specifications for AFFF, or knew about any risks associated with AFFF, would not unduly prejudice Plaintiff or cause unreasonable delay. Plaintiff argues that admitting this evidence would require "litigating" "collateral" issues. Pl.'s Mot. No. 1, at 3. But these issues are not collateral; they go to key considerations of Plaintiff's claims. Given the strong probative value of this evidence, "the balance under Rule 403 should be struck in favor of admissibility." *United States v. Miller*, 61 F.4th 426, 429 (4th Cir. 2023).

**Opp. to Motion 2**      **The Court Should Deny Plaintiff's Motion To Preclude Evidence Of Other Possible Sources Of PFAS Contamination.**

Plaintiff's counsel has repeatedly noted that PFAS is everywhere, regardless of any identifiable proximate release of AFFF. *See*, *e.g.*, Zobel Dep. Tr. (Ex. 1) 584:11–15 (PFAS is "in the blood of polar bears" at "the North Pole"). Plaintiff's experts have also acknowledged that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *See* Brown Rpt. (Ex. 2) 13. But Plaintiff seeks to preclude any suggestion at trial that PFAS in its groundwater could have come from any source other than AFFF used by the Stuart Fire Department. Pl.'s Mot. in Limine No. 2 (Dkt. 227). This

3

attempt to put blinders on the jury's consideration of the numerous other non-AFFF sources of PFAS should be rejected.

In fact, as explained in Defendants' Omnibus Motion to Exclude Plaintiff's Experts' Testimony, *see* Dkt. 163-1 at 11–16, Plaintiff's experts altogether failed to appropriately consider—let alone account for—likely sources of PFOA contamination independent of AFFF. Thus, in addition to keeping relevant evidence from the jury, Plaintiff apparently aims to conceal that failure of expert proof. That is not a basis to exclude relevant probative evidence.

Plaintiff's motion also ignores Plaintiff's burden of proof on this issue. "[A] defendant may offer evidence of potential alternative causes of . . . injury without needing to prove those alternative-cause theories with certainty or probability." *Woodruff v. R.J. Reynolds Tobacco Co.*, 2015 WL 506281, at *1 (M.D. Fla. Feb. 6, 2015) (denying motion *in limine* and permitting defense expert opinion about "unidentified occupational chemicals" that "may have contributed" to injury). Where, as here, a plaintiff has the burden to prove that a defendant's conduct was the "legal cause" of its injury, "courts treat evidence produced by plaintiffs to prove causation differently than they treat evidence produced by defendants to rebut causation." *Aycock* v. *R.J. Reynolds Tobacco Co.*, 769 F.3d 1063, 1069 (11th Cir. 2014). Whereas a plaintiff "bears the burden of proving" that a defendant "more likely than not caused the injury," it does not follow "that the *defendant* is precluded from offering evidence of [other] *possible* explanations." *Id.* Rather, "[i]t is entirely permissible" for defense experts to offer opinions "that contradict[] or rebut[] the opinions, methodology and/or assumptions" of plaintiff experts, regardless of whether an alternative cause explanation is offered as "definitive." *In re 3M Combat Arms Earplug Prods. Liab. Litig.*, 2022 WL 823474, at *4 (N.D. Fla. Mar. 19, 2022). Opinions of Defendants' experts about other sources

of PFAS in Stuart—which are grounded in science and the factual record—are clearly admissible at trial.

In their Rule 26 reports, Plaintiff's experts purport to identify the sources of PFAS in Stuart's groundwater by asserting, among other things, ███████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████.[3]  For example, Plaintiff's expert Dr. Jonathan Martin asserts ███████████████████████████████ ███████████████████████████  See Martin Rpt. (Ex. 3) 83.  With respect to all remaining PFOA, the reports of Plaintiff's other experts ignore potential impacts from sources other than AFFF, and assert that ██████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ██████████████████████████████  See Brown Rpt. (Ex. 2) 54; Higgins Rpt. (Ex. 4) 32, 34.

Far from "merely speculat[ing]" about potential non-AFFF sources of PFAS, Pl.'s Mot. No. 2, at 2, experts for Defendants describe in detail ████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ██████  See Tuit Rpt. (Ex. 5) 48–57; Love Rpt. (Ex. 6) 52–53; Thomas Rpt. (Ex. 7) 34–36, 47. Plaintiff cannot preclude the introduction of these well-supported opinions that "rest[] on a reliable

---

[3] Plaintiff's expert Dr. Martin describes ███████████████████████████████████ ████████████████████████████████████████████  See Martin Rpt. (Ex. 3) 85.

foundation and [are] relevant to the task at hand" of identifying the sources of PFAS in Stuart's groundwater. *Belville v. Ford Motor Co.*, 919 F.3d 224, 232 (4th Cir. 2019).[4]

For example, in rebutting Dr. Martin's assertion that ███████████████ ████████████████████ Dr. Caroline Tuit explains, ████████████████

████████████████████████████████████████████

███████████ Tuit Rpt. (Ex. 5) 13.  Dr. Tuit notes that ████████████

████████████████████████████████████████████

████████████████████████████████████ *Id.* at 14.  Dr. Tuit's report further details how ████████████████████████████

████████████████████████████████████████ *See id.* at 48–57.  Dr. Tuit concludes that ████████████████████

████████████████████████████████████ *Id.* at 58.

Likewise, Dr. Tiffany Thomas shows that ████████████████████

████████████████████████ Dr. Thomas explains that ███████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████ Thomas Rpt. (Ex. 7) 34–36; *see also*

---

[4] Plaintiff's contention that Defendants' experts do not render their opinions "to a reasonable degree of scientific certainty," Pl.'s Mot. 2, at 2 n.4, is equally baseless.  Defendants' experts opine with reasonable scientific certainty that Plaintiff's experts have failed to prove causation by ignoring numerous other sources of PFAS in Stuart.

Love Rpt. (Ex. 6) 50 (█████████████████████████████████████

████████████████████████████████).

Moreover, as Dr. Thomas explains, ██████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████ Thomas Rpt. (Ex. 7) 18. ████████████████████████

████████████████████████████████████████████ *Id.* at 37–40.

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████



*Id.* at 46–47.

The cases cited by Plaintiff are entirely inapposite. *See* Pl.'s Mot. No. 2, at 4–5. The "trial template" issued in *In re Welding Fume Products Liability Litigation*, for example, merely disallowed opinions that had "no evidentiary" or "factual basis," but *permitted* trial testimony "regarding various common activities" that plaintiff "was probably exposed to" that could have caused his injury. 2010 WL 7699456, at *73 (N.D. Ohio June 4, 2010). Similarly, *Bowe v. Public Storage* barred opinions that were not "expert analysis" at all, and were instead "musings" about what harm a "hypothetical" person "would suffer" in various scenarios. 2015 WL 10857339, at *4 (S.D. Fla. June 2, 2015). And Plaintiff points to a discussion in *Marathon Petroleum v. Midwest Marine* of a *different* case which excluded a *plaintiff* expert opinion—*i.e.*, the party with the

burden—that "was the product of a chain of inferences" "grounded in speculation." *See* 906 F. Supp. 2d 673, 685 (E.D. Mich. 2012) (discussing *Tamraz v. Lincoln Elec. Co.*, 620 F.3d 665 (6th Cir. 2010)).

Finally, *In re Valsartan* only highlights that the opinions of *Plaintiff's* experts regarding the sources of PFAS in Stuart's groundwater should be excluded for the reasons articulated by Defendants in their pending *Daubert* motion. *See* Mem. in Supp. of Defs.' Omnibus Mot. to Exclude Pl.'s Experts' Testimony (Dkt. 163-1) 11–16. In *Valsartan*, the court rejected an expert's "one-eye-shut approach" that "did not pursue" plausible alternatives in reaching a conclusion about cause. 2023 WL 1818922, at *42 (D.N.J. Feb. 8, 2023). Plaintiff's experts commit the same error here when they ignore other documented non-AFFF sources of PFAS to reach unsupported conclusions about Defendants' liability. At the very least, Defendants' experts' opinions, which highlight this omission, are relevant and admissible.

For the foregoing reasons, this Court should deny this motion.

**Opp. to Motion 3     The Court Should Deny, In Part, Plaintiff's Motion To The Extent It Seeks To Exclude Evidence Related To Plaintiff's Expert Dr. Linda Birnbaum's Submissions And Publications On Toxic Chemicals And Environmental Health.**

Defendants do not dispute that Dr. Siegel's and Mr. Petty's "controversial" views on "gun control" and the effectiveness of "surgical masks" and other protective measures in preventing the spread of COVID-19 have limited relevance. Pl.'s Mot. in Limine No. 3 (Dkt. 229), at 2, 4–5. Accordingly, Defendants will not seek to introduce evidence or argument concerning these views unless Plaintiff opens the door to this evidence and Defendants first alert Plaintiff and the Court.

Defendants oppose Plaintiff's motion to the extent it seeks to exclude any evidence or argument relating to Plaintiff's expert Linda Birnbaum's submissions and publications on toxic chemicals and environmental science. Pl.'s Mot. No. 3, at 1, 6–7. Dr. Birnbaum, the former

8

director of both the National Institute of Environmental Health Sciences and the National Toxicology Program, co-authored an editorial and commissioned a series of articles advocating policy change.  Pl.'s Mot. No. 3, Ex. 7, at 1.  ████████████████████████

████████████████████████████████████████████████████████████████

Birnbaum Dep. Tr. (Ex. 8) 99:15–19.  ████████████████████████████████

████████████████████████████████████████████████████████████████

████████  *Id.* at 99:2–100:6.

Dr. Birnbaum's call for scientists to serve as advocates for policy change, as well as the resulting congressional backlash and employment repercussions, are proper subjects of cross-examination. *Ferris v. Tenn. Log Homes, Inc.*, 2010 WL 1049852, at *2 (W.D. Ky. Mar. 19, 2010) ("questioning an expert about prior professional misconduct or disciplinary actions taken against the expert will be permitted").  Plaintiff has held out Dr. Birnbaum as a scientific expert on the subject of toxicology; the jury is entitled to know that Dr. Birnbaum has also advocated policy and regulatory change, including based on "uncertain" scientific evidence, while serving as a government scientist.  Pl's Mot. No 3, Ex. 7 at 1.  From this evidence, the jury may conclude that Dr. Birnbaum is willing to offer opinions based on less than "clear" scientific evidence, *id.*, or may infer bias or conclude that Dr. Birnbaum has "a credibility issue" based on her prior advocacy. *Adams v. Lab'y Corp. of Am.*, 760 F.3d 1322, 1332 (11th Cir. 2014).  "Indeed, prohibiting cross-examination of an expert concerning his biases . . . would normally be reversible error." *Bockweg v. Anderson*, 117 F.R.D. 563, 566 (M.D.N.C. 1987) (collecting cases); *see also LNC Invs., Inc. v. First Fid. Bank*, 2000 WL 1182772, at *2 (S.D.N.Y. Aug. 21, 2000) ("In cross-examining [Plaintiff's] witnesses, counsel for Defendants are entitled to very considerable latitude in inquiring into circumstances that may show bias").

**Opp. to Motion 4     The Court Should Permit General Causation Evidence, Which Plaintiff Itself Agrees Is Relevant And Admissible.**

While Plaintiff purports to move the Court to exclude "all evidence and arguments relating to general causation," Pl.'s Mot. in Limine No. 4 (Dkt. 230), at 1, Plaintiff acknowledges that "general causation is relevant to the extent it relates to evidence of risk," *id.* at 4, and it has proffered several experts to opine on that issue. Plaintiff can hardly argue, on the one hand, that such evidence is relevant to this case and, on the other hand, seek to preclude Defendants from offering evidence or arguments on the same issue.

General causation refers to "whether a substance is capable of causing a particular injury or condition in the general population." *Norris v. Baxter Healthcare Corp.*, 397 F.3d 878, 881 (10th Cir. 2005). Although Plaintiff concedes that it "does not allege that anyone has suffered a personal injury from drinking PFAS-contaminated water," Pl.'s Mot. No. 4, at 3, that does not mean evidence concerning general causation is irrelevant—far from it. At least four of the five claims in this case require Plaintiff to prove that PFAS poses a risk to human health or the environment. *See Greico v. Daiho Sangyo, Inc.*, 344 So. 3d 11, 20 (Fla. Dist. Ct. App. 2022) (strict liability failure to warn focuses on warnings about "the foreseeable risks of harm" posed by the product); *Faddish v. Buffalo Pumps*, 881 F. Supp. 2d 1361, 1369 (S.D. Fla. 2012) (negligent failure to warn asks whether the manufacturer gave "appropriate warnings about the particular risks of the product" about which the manufacturer "knew or should have known"); *R.J. Reynolds Tobacco Co. v. Nelson*, 353 So. 3d 87, 89 (Fla. Dist. Ct. App. 2022) (strict liability design defect claim "requires the plaintiff to prove that" a product "created an unreasonably dangerous condition"); *United States v. Stevens*, 994 So. 2d 1062, 1066 (Fla. 2008) (negligence claim seeks to hold defendant liable for failure to "conform to a certain standard of conduct, for the protection of others against unreasonable risks"); *see also*

10

Second Am. Compl. (Dkt. 54) ¶¶ 69–71, 196–98, 250, 256, 261, 277.[5] "Risk," in the context of this case, is the capability of PFAS to cause some sort of harm to human health or the environment—*i.e.*, general causation. Defendants are therefore plainly entitled to present expert opinions or other evidence on that issue.

General causation evidence is also probative of the reasonableness of Defendants' actions. The claims against Defendants span decades, and the state of the science and knowledge over that period with respect to PFAS chemicals will be vigorously litigated on both sides. Whether there was scientific evidence demonstrating that PFAS presented a risk to human health is highly relevant to and probative of any evaluation of Defendants' actions, including publications, disclosures, testing, and research practices.

Evidence relating to general causation is also relevant to Plaintiff's claim for damages. Damages "should be equal to and precisely commensurate with the injury sustained." *MCI Worldcom Network Servs., Inc. v. Mastec, Inc.*, 995 So. 2d 221, 224 (Fla. 2008). Damages are thus limited to "the reasonable cost of repair." *Kritikos v. Andersen*, 125 So. 3d 885, 888 (Fla. Dist. Ct. App. 2013). The extent to which PFAS does—or does not—pose any risk to human health is relevant to the reasonableness of the expenses Plaintiff has incurred, and alleges it will incur in the future, for removing PFAS from its water supply. *See* Pl.'s Mot. No. 4, at 6 (asserting

---

[5] Plaintiff's private nuisance claim requires unreasonable conduct related to interference with land use, *Adinolfe v. United Techs. Corp.*, 768 F.3d 1161, 1174 (11th Cir. 2014), which Plaintiff alleges occurred here by "the invasion of hazardous and toxic substances into the Plaintiff's wells," Second Am. Compl. ¶ 283. Defendants have moved for summary judgment on that claim because, under Florida law, "nuisance does not apply to the design, manufacture, and distribution of a lawful product." *Penelas v. Arms Tech.*, 1999 WL 1204353, at *4 (Fla. Cir. Ct. Dec. 13, 1999). Depending on the Court's disposition of that motion, evidence of general causation could also be relevant to Plaintiff's private nuisance claim.

that Plaintiff's decision "to install filtration for its drinking water because it is contaminated with PFAS" is "in the best interests of its community" and in keeping with federal and state guidance).

Evidence relating to general causation is not unduly prejudicial to Plaintiff—particularly given that Plaintiff intends to introduce such evidence itself. Because general causation evidence is highly relevant to multiple issues, any prejudice to Plaintiff from the introduction of this evidence would be far from "undue." *See Carnell Constr. Corp. v. Danville Redev. & Hous. Auth.*, 745 F.3d 703, 719–20 (4th Cir. 2014).

**Opp. to Motion 5**     **The Court Should Deny Plaintiff's Motion To Preclude Defendants From Challenging Or Criticizing EPA's Health Advisory Levels For PFAS In Drinking Water.**

The Court should deny Plaintiff's motion to exclude all evidence and argument "challenging or criticizing" the health advisory levels ("HALs") that the Environmental Protection Agency ("EPA") adopted for PFOA and PFAS. Pl.'s Mot. in Limine No. 5 (Dkt. 231), at 1. Plaintiff does not provide a single citation for its novel argument that Defendants should be precluded from challenging the HALs at trial because some Defendants already participated in EPA's public comment process. Nor should the Court become the first to adopt this position, which is meritless in at least three respects.

First, barring Defendants from making arguments to the jury about the HALs merely because some Defendants have previously presented their position to EPA would penalize those Defendants for the exercise of their First Amendment right to petition the government. Members of the public have a fundamental right to submit comments to federal agencies and petition for regulatory change. *See Hall v. EPA*, 273 F.3d 1146, 1163 (9th Cir. 2001) (discussing the public's "right to comment" on agency rulemaking). That right would be eviscerated if petitioning the government meant a party would forfeit the right to make the same arguments in subsequent litigation. Plaintiff's rule would also disserve the government's interest in receiving comments on

12

proposed regulatory action from a wide variety of interested parties. If participating in the public comment process would preclude commenters from presenting the same arguments to a court or jury, then some parties would decline to comment at all, to the detriment of sound public policymaking. Not surprisingly, Plaintiff has not identified a single case espousing the unsupported and ill-advised rule it proposes here.

Second, Defendants should be permitted to criticize or challenge the HALs precisely because these guidelines are merely advisory. The HALs "primarily serve as information to drinking water systems and officials responsible for protecting public health" and "are not to be construed as legally enforceable federal standards." EPA, *Drinking Water Health Advisories (HAs)* (last updated June 15, 2022), https://www.epa.gov/sdwa/drinking-water-health-advisories-has. If Defendants are prohibited from providing explanation and context for these advisory standards, the jury may be confused about their meaning and significance. In particular, barring Defendants from criticizing the HALs could leave the jury with the misimpression that Stuart is bound to follow the HALs, when in fact they are merely advisory.

Several of Defendants' experts are well equipped to provide necessary context for the HALs. These experts can explain that the HALs recommend that public water systems aim for PFAS concentrations at levels well below those that may be harmful to humans. As defense expert Robert Rickards explained, ███████████████████████████████████████████ ███████████████████████████ Rickard Rpt. (Pl.'s Mot. No. 5, Ex. 1) 41. Expert Adam Love opined that ███████████████████████████████████████████████ ███████████████████████████████████ Love Rpt. (Mot. Ex. 2) 39. And expert Steven Cook observed that ███████████████████████████████ ███████████████████████████████████████████

13

████████████████████████████████████████████ Cook Rpt. (Mot.

Ex. 3) 5–6 (quoting EPA Fact Sheet: PFOA & PFOS Drinking Water Health Advisories).

Defendants concur with Plaintiff that the HALs implicate "complex scientific issues."  Pl.'s Mot.

No. 5, at 3.  But that is precisely why expert testimony concerning the HALs is appropriate here.

*See Bloome v. Joshua's Haven, Inc.*, 2019 WL 6528602, at *3 (S.D. Miss. Dec. 4, 2019) ("If,

however, the standard contains technical or confusing concepts, expert testimony will be

appropriate.").

Finally, permitting Defendants to provide background and context for the HALs would not,

as Plaintiff argues, "unnecessarily lengthen the trial and potentially confuse the jury."  Pl.'s Mot.

No. 5, at 9.  Plaintiff argues that the Court "need only look to the record" in *American Chemistry

Council v. EPA*, No. 22-1177 (D.C. Cir.), for "an example of how complicated this case would be"

if Defendants were permitted to criticize the HALs.  But *American Chemistry Council* was a

challenge to the HALs themselves.  *See* Pet. for Review (Dkt. 1957228), *Am. Chemistry Council

v. EPA*, , No. 22-1177 (D.C. Cir.) (requesting that the court "vacate the [EPA's] 'interim' health

advisories for PFOA and PFOS").  Agencies are required by law to compile the entire

administrative record in cases where a party seeks to vacate a rule or standard, and these records

are often voluminous.  *See* Fed. R. App. P. 17.  But there is no need to import that record or

anything like it into this case; the parties can rely on their experts and the evidence already in the

record to provide necessary background and context on EPA's advisory guidelines to the jury.

Plaintiff's arguments to the contrary are unsupported and speculative.

**Opp. to Motion 6**     **The Court Should Deny Plaintiff's Motion To Exclude Evidence Or
                          Argument Relating To Plaintiff's Receipt Of Funds From Florida Or
                          Other Third Parties.**

Defendants do not intend to introduce evidence at trial regarding the amount of funds, if

any, that Plaintiff received from the State of Florida or other third parties to cover the cost of

14

building its water filtration system for the purpose of arguing to the jury that Defendants should not be liable for those amounts or that any damages award should be reduced by those amounts. The Court should, however, deny Plaintiff's motion to exclude "all evidence and arguments regarding the City of Stuart's receipt of funds from the State of Florida and/or other third parties" because Plaintiff concedes that the only such funding it has received "is not a collateral source constituting double recovery." Pl.'s Mot. in Limine No. 6 (Dkt. 233), at 1, 4. Evidence relating to these funds is also highly relevant to Plaintiff's damages theories.

Plaintiff argues that evidence of state or other third-party funding is not admissible under Florida's collateral source rule. *Id.* at 3. But the third-party funding Plaintiff seeks to exclude comprises loans and grants it received from Florida to help Plaintiff transition from the Surficial Aquifer to the Floridan Aquifer as its primary water source. *Id.* at 2–3. Plaintiff acknowledges that this funding does not constitute a "collateral source" because Plaintiff claims to have abandoned this transition plan. Instead, "the basis of Stuart's claim for damages" is the cost "of operating and maintaining the ion exchange filtration system" that serves the Surficial Aquifer. *Id.* at 4. Indeed, Plaintiff's "damages model assumes that *all* of Stuart's water going forward will be sourced from the [Surficial]," not the Floridan. *Id.* at 3 (emphasis added); *see also* Peters Dep. Tr. (Ex. 11) 117:6–119:18 (Apr. 4, 2023) (█████████████████████████████ █████████████████████████████).

Defendants agree that this third-party funding is not a collateral source. The collateral source rule is aimed at preventing prejudice to a plaintiff by suggesting that he will receive double (or triple) payment. *See Joerg v. State Farm Mut. Auto. Ins. Co.*, 176 So. 3d 1247, 1249 (Fla. 2015). Because the funding Plaintiff received from Florida was earmarked for a project for which Plaintiff seeks no damages, that funding does not implicate the collateral source rule. For this

15

reason, the cases that Plaintiff cites are inapposite. *See Town of East Troy v. Soo Line R.R. Co.*, 653 F.2d 1123, 1132 (7th Cir. 1980) (in nuisance case against railroad for toxic spill, excluding evidence of federal grant that town used to remedy spill); *Metoyer v. Auto Club Fam. Ins. Co.*, 536 F. Supp. 2d 664, 670–71 (E.D. La. 2008) (excluding evidence of government homeowner grant in case against insurance company for coverage of same damage to house).

Far from being barred under the collateral source rule, evidence related to state funding that Plaintiff received for the Floridan Aquifer is highly relevant. In its applications for state funding, Plaintiff made representations both before and after it learned about PFAS in its drinking water that it was planning to switch from the Surficial Aquifer to the Floridan Aquifer as the primary source of its water supply. *See* Mem. in Supp. of Defendants' Omnibus Mot. for Summ. J. (Dkt. 162-1) 10–11. Those representations undermine the claim by Plaintiff and its expert witness that Defendants should bear the cost of treating water sourced from the Surficial Aquifer for the next 40 years, *see* Berryhill Rpt. (Ex. 10) Tables 8-3, 10-5—a made-for-litigation treatment plan that represents a stark departure from Plaintiff's earlier decision to switch to the Floridan Aquifer. Defendants should be permitted to introduce those applications, along with the amounts Plaintiff received from the State of Florida, to show that Plaintiff has inflated its damages by abandoning the transition to the Floridan Aquifer and, more generally, to undermine Plaintiff's credibility.

Despite its central relevance, Plaintiff asserts that the Court should exclude its grant applications and related funding under Rule 403 because the applications supposedly reflect "outdated cost estimates." Pl.'s Mot. No. 6, at 4, 6–7. But the estimates are outdated at least in part because Plaintiff has made a late-breaking, litigation-driven decision to abandon its transition to the Floridan Aquifer. The applications are relevant precisely because they show that Plaintiff

16

has made strategic choices in order to inflate its claim for damages. At a minimum, Plaintiff's shifting story about its plans for supplying water to Stuart residents is relevant to Plaintiff's credibility. For these reasons, the Court should deny Plaintiff's motion.

**Opp. to Motion 7, Part I**

### A.     The Court Should Deny Plaintiff's Motion Regarding The Use Of Common Pronouns Like "We," "Us," Or "Our."

Defendants have no plans to engage in "improper vouching" on behalf of their clients by, for example, using a particular pronoun to "vouch" for the truthfulness of any evidence. But Plaintiff's motion seeking to prohibit the common practice of occasionally using the pronouns "we," "us," or "our" when referring to a client goes too far. Plaintiff has imported "vouching" from criminal law, where prosecutors are prohibited from indicating their "personal belief in the credibility or honesty of a witness" or suggesting that evidence not presented to the jury supports the witness's testimony. *United States v. Sanchez*, 118 F.3d 192, 198 (4th Cir. 1997). Regardless, however, in the unlikely event an issue regarding such pronoun use arises, the parties and the Court can address it at that time. Plaintiff's motion should be denied.

### B.     The Court Should Deny Plaintiff's Motion To Preclude All References To Counsel's Personal Backgrounds.

The Court should deny Plaintiff's motion to preclude defense counsel from referencing their military service or other "facts relating to . . . their personal backgrounds" in front of the jury. Pl.'s Omnibus Mot. in Limine No. 7, Part I.B (Dkt. 234). Defense counsel agree that they will not discuss with the jury any personal experience they had with AFFF at military "firefighting school." But the Court should not bar defense counsel from referencing their personal backgrounds or military service more generally as they introduce themselves to the jury. "Anecdotes and personal experiences . . . are common place in both opening and closing arguments." *Niles v. Owensboro Med. Health Sys., Inc.*, 2011 WL 3205369, at *5 (W.D. Ky. July 27, 2011) (permitting references

17

to the vocations of a lawyer's parents); *see also Slappy v. City of Detroit*, 2021 WL 2986284, at *9 (E.D. Mich. July 15, 2021) (permitting plaintiff's attorneys to refer to their "former careers in law enforcement" or "government," in light of counsel's "great latitude in opening statements"); *Cunningham Charter Corp. v. Learjet Inc.*, 2012 WL 2830351, at *2 (S.D. Ill. July 10, 2012) ("there is nothing wrong with the jury knowing that defense counsel is a pilot").  Brief allusions to counsel's personal background in opening statements or closing arguments or during voir dire create no risk of confusing the jury or prejudicing Plaintiff, because this Court's standard instructions make clear that "lawyers are not witnesses" and "arguments and statements by lawyers are not evidence."  *See* J. Gergel Preliminary and Boilerplate Instructions.  Plaintiff's motion should therefore be denied.

### C.    The Court Should Deny Plaintiff's Motion To Exclude Testimony Concerning Use Of AFFF Or About Consumption Of Water Containing PFAS.

Plaintiff asks the Court to exclude evidence or attorney commentary about the use of AFFF products "by Defendants' attorneys, employees, family members, and/or anyone other than Plaintiff," along with "all testimony and argument about witnesses, attorneys, and/or their family members and friends drinking PFAS-contaminated water."  Pl.'s Omnibus Mot. in Limine No. 7, Part I.C (Dkt. 234).  Defendants agree that their attorneys will not comment on their own or their friends' and families' personal use of AFFF products or consumption of water containing PFAS. But the Court should deny the motion to the extent it would prohibit Defendants from asking (1) whether Defendants' employees, particularly those with decision-making authority, consume water containing PFAS; or (2) whether Plaintiff's witnesses consume Stuart's drinking water.

1.    At first blush, Plaintiff's motion appears to be aimed at excluding commentary about Defendants' lawyers' personal use of AFFF or personal consumption of water containing PFAS. Defendants agree they will not seek to make such commentary or argument.  To the extent this

18

motion seeks to preclude Defendants from questioning their own employees with decision-making authority about whether they consume water with PFAS to show Defendants' knowledge or mental state, the Court should deny the motion. Plaintiff's strict liability failure to warn, negligent failure to warn, strict liability design defect, and negligence claims depend in part upon what Defendants knew about the risks associated with the products at issue. *See* Opp. to Pl.'s Mot. No. 4, *supra*. Plaintiff's claim for punitive damages also turns in part on the intent and knowledge of Defendants' policymaking employees. *See* Fla. Stat. § 768.72(2) (permitting punitive damages only if "the defendant was personally guilty of intentional misconduct or gross negligence"); Fla. Standard Civil Jury Instruction No. 503.2(c)(1)(B) (instructing jury to consider whether the "unreasonably dangerous nature of the conduct" and the "high likelihood of injury" were "actually known by" relevant decisionmakers as one factor in the punitive damages analysis). Evidence that corporate decisionmakers consumed a product or substance a plaintiff alleges is dangerous "may be used to show the Defendants' state of mind." *In re Davol, Inc./C.R. Bard, Inc., Polypropylene Hernia Mesh Prods. Liab. Litig.*, 2021 WL 5577409, at *2–3 (S.D. Ohio Nov. 30, 2021). If decisionmakers are willing to "expose themselves to the same risks," that is "some evidence" of whether the company "knew something was dangerous." *Id.* at *2.

Plaintiff relies on an inapposite state court decision, *Hayes v. Colgate-Palmolive Co.*, 2021 WL 298377, at *3–7 (Ky. Ct. App. Jan. 29, 2021), to argue that a defendant's decision-making employees should not be permitted to testify about their personal use of the product at issue.[6] But in that case, the court excluded the employee's testimony because he was a toxicologist whom the

---

[6] The other cases on which Plaintiff relies do not involve evidence of use by decision-making employees as a way to show a company's knowledge.

jury might mistake for an expert. *Id.* at *7. *Hayes* does not support Plaintiff's across-the-board motion to preclude *all* employees from testifying that they drink water containing PFAS.

2. The Court should also deny Plaintiff's motion to the extent it would prohibit Defendants from introducing evidence that *Plaintiff's* witnesses, particularly public officials or employees, consumed Stuart's drinking water. A central issue in this case is whether consuming water containing PFAS poses risks to human health. *See* Second Am. Compl. ¶¶ 69–71, 196–98, 250, 256, 261, 277. If public officials in Stuart were aware of the presence of PFAS in the City's water supply but continued to drink the water, especially prior to installation of Plaintiff's current PFAS treatment system, that fact might suggest that they considered the risk of harm to be remote or speculative. By way of example, at least one Stuart employee, Mike Woodside, who is responsible for water treatment plant operations and regulatory compliance, conceded at deposition ███████████████████████████████████. *See* Woodside Dep. Tr. (Ex. 9) 23:9–24:1, 113:8–114:3 (Jan. 20, 2022). At a minimum, this testimony and any similar testimony from Plaintiff's witnesses at trial is relevant to the credibility of these witnesses.

Plaintiff argues that this evidence would downplay the risk of AFFF, but because risk is at issue, Defendants have a due process right to present evidence to rebut it. *See Lindsey v. Normet*, 405 U.S. 56, 66 (1972). The cases on which Plaintiff relies all involve evidence about *defendants'* employees' personal use. But those same cases recognize that evidence "about use of" the product "by the *plaintiff's* witnesses" "could be highly probative with no discernible prejudice." *In re Tylenol (Acetominophen) Mktg.*, 2016 WL 3125428, at *4 (E.D. Pa. June 3, 2016) (emphasis added); *see also Hayes*, 2021 WL 298377, at *7 (citing *Tylenol* and noting "a distinction" between "the plaintiff's own relevant personal use of the product" and "defense witnesses' personal use").

20

*In re Tylenol* specifically permitted evidence of personal use when relevant to a witness's "credibility." *See* 2016 WL 3125428, at *4 (permitting evidence of experts' personal use).

This would not lead to a mini-trial about witnesses' health; there is no evidence that any Stuart employees are sick as a result of drinking the City's water, and Plaintiff admittedly "does not allege that anyone has suffered a personal injury from drinking PFAS-contaminated water." Pl.'s Mot. No. 4, at 3. Regardless, Defendants are entitled to test the credibility of a witness's testimony that PFAS poses risks to human health or that Plaintiff must reduce the concentration of PFAS in the water to zero—testimony that would be undermined if the witness drank the water in spite of these alleged risks.

### D. Defendants Do Not Intend To Offer Evidence Concerning The Training And Education Available To Plaintiff's Attorneys.

Plaintiff moves to exclude evidence concerning "the training and education available to Plaintiff's attorneys, including but not limited to, Mass Torts Made Perfect (MTMP), the American Association for Justice (AAJ), The Reptile, [and] the Jerry Spence Trial College." Pl.'s Omnibus Mot. in Limine No. 7, Part I.D (Dkt. 234). Defendants agree not to introduce such evidence unless Plaintiff attempts to introduce evidence concerning the number or qualifications of Defendants' attorneys, including that some of them practice at law firms in major cities such as Washington, D.C. Defendants have separately moved the Court to exclude such evidence in their Omnibus Motion in Limine No. 2 (Dkt. 228).

### E. Defendants Do Not Intend To Offer Evidence Concerning How Plaintiff Learned About Its Lawyers, Why It Decided To Retain Those Lawyers, Or Advertising By Plaintiff's Lawyers.

Defendants agree not to introduce evidence or argument concerning advertising by Plaintiff's attorneys, how Plaintiff learned about its attorneys or this litigation, or why or when

Plaintiff retained its attorneys.  Pl.'s Omnibus Mot. in Limine No. 7, Part I.E (Dkt. 234).  Accordingly, the Court should deny as moot Plaintiff's motion to exclude such evidence.

To the extent Plaintiff seeks to exclude *any* evidence or argument regarding Plaintiff and its attorneys, however, the Court should deny the motion.  Defendants intend to introduce non-privileged evidence that Plaintiff's attorneys participated in or influenced Plaintiff's decisions and actions relating to the issues in this case, such as Plaintiff's decision to abandon its transition to the Floridan Aquifer and seek damages for remediating water from the Surficial Aquifer.  *See* Opp. to Pl.'s Mot. No. 6, *supra*.  The involvement of Plaintiff's lawyers in those decisions is relevant to causation, damages, and Plaintiff's credibility, and Plaintiff has made no argument to the contrary.  In fact, one of the cases Plaintiff cites acknowledges that evidence of lawyer involvement is admissible when "relevant to the actions or inactions of the specific Plaintiff."  *See In re Xarelto (Rivaroxaban) Prods. Liab. Litig.*, 2017 WL 11718344, at *2 (E.D. La. Apr. 18, 2017).

**F.      The Court Should Deny Plaintiff's Motion To Preclude Defendants Or Their Counsel From Expressing Sympathy For Plaintiff.**

The Court should deny Plaintiff's motion to preclude defense counsel or Defendants from offering any expressions of sympathy for Plaintiff.  Pl.'s Omnibus Mot. in Limine No. 7, Part I.F (Dkt. 234).  Courts routinely reject such motions, *see, e.g.*, *Tereskun-Arce v. KW Int'l, Inc.*, 2019 WL 13245750, at *2 (M.D. Fla. Dec. 16, 2019); *Guthrie v. Ball*, 2014 WL 11585620, at *2 (E.D. Tenn. Oct. 14, 2014), and Plaintiff has offered no reason to reach a contrary conclusion here.  Indeed, preventing Defendants and their counsel from expressing their sympathy for Plaintiff would be unfair and prejudicial to Defendants because the jury may be more likely to award punitive damages if it fails to hear words of sympathy from Defendants.

Plaintiff contends that statements of sympathy would "serve only to diminish Defendants' culpability while encouraging the jury to base its decisions on factors other than the law and the

22

evidence." Pl.'s Mot. No. 7, Part I.F. But a defendant's "expression of concern and regret for those injured by its products is not an invitation to nullify the law." *Barnett v. Deere & Co.*, 2016 WL 6803152, at *5 (S.D. Miss. Nov. 16, 2016). It is particularly implausible that such statements would sway the jury to ignore the law or the evidence in this case because this Court's standard instructions advise jurors that they "must not be influenced by any personal likes or dislikes, opinions, prejudices or sympathy." *See* J. Gergel Preliminary and Boilerplate Instructions.

Plaintiff relies on *Smith v. Belterra Resort Indiana, LLC*, 2007 WL 4238959, at *1 (S.D. Ind. Nov. 27, 2007), in support of its argument that apologies or expressions of sympathy are inadmissible unless they qualify as "an admission against interest." But *Smith* addressed only whether *hearsay* statements of sympathy could be admitted, and the district court allowed such statements only if they fit within the hearsay exception for admissions against interest under Federal Rule of Evidence 804. That case said nothing about whether lawyers or witnesses appearing at trial could offer their sympathy for the plaintiff. The other case Plaintiff cites, *Crowell v. Ritz Carlton Hotel (Virgin Islands), Inc.*, 2013 WL 5925265, at *3 (D.V.I. June 3, 2013), is equally irrelevant. The district court granted the motion to exclude expressions of sympathy in that case only because the motion was unopposed. In short, Plaintiff has offered no persuasive reason for barring expressions of sympathy here.

**Opp. to Motion 7, Part II**     **The Court Should Deny Plaintiff's Motion To Exclude Evidence Of How A Verdict Would Affect Defendants' Businesses And Evidence That This Case Is "Lawyer-Driven."**

The Court should deny Plaintiff's motion to preclude Defendants from (1) explaining to the jury "how a verdict would economically affect either Defendants or society" and/or (2) introducing "any evidence or testimony" that this litigation is "lawyer-drive[n]." Pl.'s Omnibus Mot. in Limine No. 7, Part II (Dkt. 234). Both categories of evidence are relevant, and excluding them would unduly prejudice Defendants.

23

1.     Evidence explaining how a verdict would affect Defendants, their employees, or the public is relevant to the jury's decision as to the amount of punitive damages (if any). Plaintiff's own cases recognize that defendants "may argue the financial impact to their business from a punitive damages award." *In re 3M Combat Arms Earplug Prods. Liab. Litig.*, 2021 WL 918214, at *7 (N.D. Fla. Mar. 10, 2021); *see also In re Yasmin & Yaz (Drospirenone) Mktg., Sales Pracs. & PMF Prods. Liab. Litig.*, 2011 WL 6740391, at *16 (S.D. Ill. Dec. 22, 2011) (permitting defendant to argue "what impact a punitive damage verdict will have on the defendant"). Certain Defendants manufacture products that provide social value and save lives—3M, for example, makes masks and respirators that proved critical during the COVID-19 pandemic—as the jury might learn when Defendants introduce themselves to the jury. The jury should be permitted to hear how a substantial punitive damages award may affect the production of these products or have other downstream effects on Defendants' businesses or the consumers who rely on them. *See Musgrave v. Breg, Inc.*, 2011 WL 4620767, at *6 (S.D. Ohio Oct. 3, 2011) (evidence showing defendant "benefits society by making products that are life-saving or improve the quality of people's lives" "may be relevant to oppose Plaintiffs' punitive damages claims").

2.     Defendants agree not to argue that this case is part of a "litigation crisis" or "lawsuit crisis" or an example of "lawsuit abuse." Pl.'s Mot. No. 7, at 7. But Defendants should be permitted to introduce evidence that Plaintiff's decisions in this case have been "lawyer-drive[n]," *id.*, and to use that expression in front of the jury. The record reflects that Plaintiff's lawyers participated in Plaintiff's strategic decision to discontinue the transition to the Floridan Aquifer as Plaintiff's main water source and instead expand the PFAS treatment facilities at its existing water source, the Surficial Aquifer. Whether Plaintiff's lawyers directed, recommended, or drove the remedial measures and associated costs to remove PFAS from Plaintiff's water supply is highly

24

relevant to both causation and damages.  *See*, *e.g.*, *Clark v. Hershey Co.*, 2019 WL 6050763, at *3 (N.D. Cal. Nov. 15, 2019) (granting summary judgment for defendant in food-mislabeling case where plaintiff's "decision to stop purchasing the product was because he 'learned' from his lawyers following a laboratory testing that the products contained an artificial flavor," "not because of the label"); *Weisberg v. Takeda Pharms. U.S.A., Inc.*, 2018 WL 4043171, at *7 (C.D. Cal. Aug. 21, 2018) ("Plaintiff admits to having hired a lawyer after learning the cost of the 90-day supply—the purchase for which Plaintiff now seeks restitution and damages—six days before completing the purchase."); *see also Deese v. McKinnonville Hunting Club, Inc.*, 874 So. 2d 1282, 1287 (Fla. Dist. Ct. App. 2004) (holding that a plaintiff may recover damages only for harm caused by the defendant's alleged misconduct).  A lawyer's involvement in a plaintiff's strategic decision-making also bears on the plaintiff's credibility to the extent that the plaintiff fails to acknowledge the lawyer's role in its decision-making.  *Herrera v. Eli Lilly & Co.*, 2015 WL 12911753, at *4 (C.D. Cal. Aug. 3, 2015) (holding that evidence concerning lawyers' involvement in "Plaintiffs' decision to file the case" is "potentially relevant to Plaintiffs' credibility").

Plaintiff's cases do not compel a different result.  Most of the cases Plaintiff cites precluded the use of specific terms or phrases that Defendants have already agreed not to use.  For example, *In re Vioxx Products Liability Litigation*, 2005 WL 3164251, at *1 (E.D. La. Nov. 18, 2005), banned the terms "litigation crisis," "lawsuit crisis," and "lawsuit abuse" from the trial lexicon. *See also In re Actos (Pioglitazone) Prods. Liab. Litig.*, 2013 WL 5603823, at *2 (W.D. La. Oct. 10, 2013) (excluding any reference to the specific phrases "Litigation Crisis, Lawsuit Crisis, [and] Lawsuit Abuse"); *In re Vioxx Prods. Liab. Litig.*, 2006 WL 8472994, at *1 (E.D. La. Nov. 22, 2006) (same).  Defendants agree that they will not use those terms in front of the jury.  Only one of the cases Plaintiff cites, *In re Xarelto (Rivaroxaban) Products Liability Litigation*, 2017 WL

25

11718344, at \*2 (E.D. La. Apr. 18, 2017), excluded the phrase Defendants seek to use here—"lawyer-driven litigation"—and it did so without explanation. While references to "lawyer-driven litigation" could be irrelevant or unduly prejudicial in a case (unlike this one) where there is no evidence that lawyers drove the client's damages claim, the term is fair game here where Plaintiff's lawyers participated in Plaintiff's decision-making regarding the source of its water supply and the PFAS remediation measures it has decided to implement.

**Opp. to Motion 7, Part III**

> A.   **The Court Should Deny Plaintiff's Motion To Introduce The Size And Scope Of The MDL If Defendants Cross-Examine Plaintiff's Experts On Their Compensation In Cases Other Than This One.**

The Court should deny Plaintiff's request that, if Defendants cross-examine Plaintiff's experts on the compensation they received in cases other than this one, Plaintiff be permitted to introduce "the number of cases involved in the AFFF litigation" and "the scope and breadth of claims." Pl.'s Omnibus Mot. in Limine No. 7, Part III.A (Dkt. 234). Defendants do not intend to introduce evidence or argument regarding Plaintiff's experts' compensation for work performed outside of this specific litigation. *See, e.g.*, 3M Company's Mot. in Limine No. 4 (Dkt 232) (arguing that expert fee discussions should be limited to fees paid in this specific case). Defendants agree that Plaintiff is permitted to introduce evidence or argument regarding the compensation Defendants' experts received for their work in this specific case. But any evidence or argument regarding expert compensation for work performed for other cases, including other PFAS cases and other cases in this MDL, is irrelevant and unduly prejudicial. Defendants do not intend to question experts about their total compensation in PFAS cases and therefore do not intend to open the door to evidence concerning the number of cases or scope of claims in the MDL or PFAS-related litigation more broadly.

26

**B.     The Court Should Allow Evidence And Argument Regarding Plaintiff's Experts' Failure To Publish And Publicize Their Opinions.**

The Court should deny Plaintiff's motion to exclude evidence or argument that Plaintiff's experts have not published, publicized, or submitted their expert opinions to EPA or other third parties.  Pl.'s Omnibus Mot. in Limine No. 7, Part III.B (Dkt. 234).

The Court should permit Defendants to introduce evidence or argument that Plaintiff's experts have not published their opinions because this information may affect the weight and credibility the jury assigns these opinions.  Whether an expert's opinion "has been subject to peer review and publication" is one of the factors the Court considers in deciding whether to admit an expert's opinion in the first instance.  *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 593 (1993).  And even when an expert's opinion clears that threshold admissibility barrier, an expert's opinion remains subject to scrutiny through "[v]igorous cross-examination," which is "the traditional and appropriate means of attacking shaky but admissible evidence."  *Id.* at 596.

Following *Daubert*'s lead, numerous courts have recognized that whether an expert has published his opinion is fair game for cross-examination.  *See Wendell v. GlaxoSmithKline LLC*, 858 F.3d 1227, 1235–36 (9th Cir. 2017) (discussing lack of publication during expert's cross-examination); *United Prop. & Cas. Ins. v. Couture*, — F. Supp. 3d —, 2022 WL 16798204, at *4 (D.S.C. Nov. 8, 2022); *Hickerson v. Yamaha Motor Corp.*, 2016 WL 4055025, at *3 (D.S.C. July 29, 2016); *see also Dial Corp. v. News Corp.*, 165 F. Supp. 3d 25, 39–40 (S.D.N.Y. 2016); *State Farm Fire & Cas. Co. v. Bell*, 30 F. Supp. 3d 1085, 1095 (D. Kan. 2014); *Burton v. R.J. Reynolds Tobacco Co.*, 183 F. Supp. 2d 1308, 1315 (D. Kan. 2002).  When the "only place" an expert's "theories and studies have been published is in the pages of federal and state reporters," and "no one in the scientific community . . . has deemed these studies worthy of verification, refutation or

27

even comment," the jury is entitled to conclude that "what's going on here is not science at all, but litigation." *Daubert v. Merrell Dow Pharms.*, 43 F.3d 1311, 1318 (9th Cir. 1995).

One of the two cases Plaintiff cites in support of excluding this evidence actually supports *Defendants'* position that it should be permitted. In *Colombo v. CMI Corp.*, 26 F. Supp. 2d 574 (W.D.N.Y. 1998), the court acknowledged that an expert's opinion may be admissible even if his or her view has not been published, *id.* at 577. But the court did not end its analysis there, and instead went on to clarify that "criticisms" of the expert's "methodology and conclusions may be ammunition for cross-examination." *Id.* So too here, the Court should permit Defendants to cross-examine Plaintiff's experts on the ground that they have failed to make their opinions known outside the confines of this litigation.

Nor does Plaintiff's other case support the relief it seeks. In *In re Xarelto (Rivaroxaban) Products Liability Litigation*, 2017 WL 2780760 (E.D. La. May 26, 2017), the court excluded evidence that the plaintiff's experts had not published their opinions because the protective order in that case "neither obligated nor allowed" the experts "to publish *any* opinions," *id.* at *4 (emphasis added). Here, by contrast, the protective order enjoins these experts (like other participants in this litigation) only from sharing "'Confidential Information' produced in discovery"; it does *not* constrain them from publicly disseminating their opinions without reference to materials designated by the parties as confidential. *See* Case Management Order 4.A (MDL Dkt. 1523) 5. *Xarelto* is inapposite, and Plaintiff's motion to bar this evidence should be denied.

**Opp. to Motion 7, Part IV**     **The Court Should Deny Plaintiff's Motion To Exclude All Evidence Plaintiff Characterizes As Relating To Corporate Character And Good Acts.**

The Court should deny Plaintiff's motion to exclude all evidence that Plaintiff characterizes as relating to Defendants' "corporate character and good acts," including evidence that Defendants manufacture "products that can save people's lives," make "charitable contributions," or engage

28

in "other acts benefitting the world or community."  Pl.'s Omnibus Mot. in Limine No. 7, Part IV (Dkt. 234).  Plaintiff contends that these examples constitute impermissible propensity evidence with no "conceivable purpose" other than to persuade the jury that Defendants are good companies "incapable" of making harmful products.  *Id.*  Not so.  Defendants are entitled to provide background facts to the jury about the type of products they manufacture, and the fact that those products may be used to improve human health is relevant to both Plaintiff's design defect claim and its punitive damages claim.  Defendants' charitable contributions or other acts of corporate goodwill may also bear on the punitive damages claim.  That being said, Defendants agree to alert Plaintiff and the Court before introducing evidence of charitable contributions or acts of corporate goodwill unrelated to the products at issue in this case so that the Court may make a fact-specific judgment whether such evidence is relevant and admissible.

To begin, Defendants should be permitted to introduce themselves to the jury by describing where they are located and what kind of products they manufacture.  For example, 3M might introduce evidence that its product portfolio includes masks and respirators that were used to prevent the spread of COVID-19.  And Tyco manufactures a broad range of fire protection and life-saving products that can prevent injury or death from fires and other common hazards.  Parties are "generally allowed to describe the nature of their business," such as "what their companies do and produce, which may include some reference to COVID-19 related efforts . . . or the fact that their devices are designed to be useful."  *In re Davol, Inc./C.R. Bard, Inc., Polypropylene Hernia Mesh Prods. Liab. Litig.*, 510 F. Supp. 3d 538, 545–46 (S.D. Ohio. 2020); *see also UPMC v. CBIZ, Inc.*, 2021 WL 1176746, at *2 (W.D. Pa. Mar. 29, 2021) (evidence that provides "important background" on parties is admissible); *In re Bard IVC Filters Prods. Liab. Litig.*, 2018 WL 934795, at *2 (D. Ariz. Feb. 15, 2018) ("some evidence regarding the nature of Defendants' business is relevant to

29

the jury's understanding of the issues in this case"); *Bellew v. Ethicon, Inc.*, 2014 WL 6680356, at *7 (S.D. W. Va. Nov. 25, 2014) (refusing to exclude evidence that defendant "develops new products"). Such evidence is in "a different category" than general "good or charitable acts in the community." *In re Davol*, 510 F. Supp. 3d at 546; *In re Tylenol*, 2016 WL 3125428, at *11.[7]

Whether Defendants' *other* products "save people's lives" is also relevant to Plaintiff's punitive damages claim. Defendants provide social value by manufacturing life-saving products such as masks and respirators (3M). Jurors should be permitted to consider the potential downstream consequences for Defendants' businesses if they were to impose a substantial punitive damages award. *See Musgrave v. Breg, Inc.*, 2011 WL 4620767, at *6 (S.D. Ohio Oct. 3, 2011) (recognizing that evidence showing defendant "benefits society by making products that are life-saving or improve the quality of people's lives" "may be relevant to oppose Plaintiffs' punitive damages claims").

Similarly, evidence that Defendants make charitable contributions or perform other acts of service may also be relevant to the jury's consideration of a punitive damages award. If the jury decides that punitive damages are warranted against one or more Defendants, one factor the jury will need to consider in setting the amount of the punitive damages award is whether the supposedly "wrongful conduct was motivated solely by unreasonable financial gain." Fla. Standard Civil Jury

---

[7] Defendants plainly should be permitted to introduce evidence that the specific products at issue in this case "can save people's lives." Pl.'s Mot. No. 7, at 9. Plaintiff's motion would exclude evidence that is highly "relevant to the issues in this case, including the nature and usefulness of [Defendants'] products." *Johnson v. C.R. Bard Inc.*, 2021 WL 2070448, at *8 (W.D. Wis. May 24, 2021). In particular, one of the questions the jury must decide on Plaintiff's design defect claim is whether "the risk of danger in the design outweighs the benefits." *Pierre v. Intuitive Surgical, Inc.*, 476 F. Supp. 3d 1260, 1271 (S.D. Fla. 2020). Whatever risks may accompany Plaintiff's use or disposal of AFFF, the jury must be afforded the opportunity to balance those risks against the fact that AFFF "can save people's lives" or protect against the environmental catastrophe caused by uncontrolled oil and gas fires. For similar reasons, this evidence is also relevant to Plaintiff's negligence claim.

Instruction No. 503.2(c)(1)(A). If Plaintiff argues that a substantial punitive damages award is justified because one or more Defendants acted with an unreasonable profit motive, then those Defendants should be permitted to respond with evidence that they donated profits to charity or engaged in other good works. *See In re Bard IVC Filters Prods. Liab. Litig.*, 2018 WL 934795, at *2 (permitting defendants to rebut evidence of an alleged financial motive with evidence of good character and conduct); *see also EEOC v. St. Joseph's/Candler Health Sys.*, 2022 WL 17978822, at *5–6 (S.D. Ga. Dec. 28, 2022) (concluding that evidence of company's "presence and role in the Savannah community" may "be admissible on the issue of punitive damages"); *Hockensmith v. Ford Motor Co.*, 2003 WL 25639639, at *3 (N.D. Ga. Apr. 17, 2003) ("evidence of corporate conduct may be relevant in evaluating the appropriateness of punitive damages").

Defendants should also be permitted to introduce evidence of good corporate character to the extent Plaintiff opens the door to such evidence. For example, Defendants should be allowed "to rebut" any of Plaintiff's "themes" that call into question Defendants' corporate priorities, such as any suggestion that Defendants "knowingly disregarded [customer] safety" or "placed profits over safety." *In re Bard IVC Filters Prods. Liab. Litig.*, 2018 WL 934795, at *2; *see In re Testosterone Replacement Therapy Prods. Liab. Litig. Coordinated Pretrial Proc.*, 2017 WL 2313201, at *9 (N.D. Ill. May 29, 2017). Defendants have also moved to exclude testimony suggesting that Defendants made charitable contributions as a way to curry favor with certain state governments. *See* Defs.' Omnibus Mot. in Limine No. 9 (Dkt. 228); Bacon Dep. Tr. (Ex. 12) 235:8–241:10 (Plaintiff's attorney stating that "we understand what happens when people donate money to certain entities and that certain favors are given in return, right?"). If the Court admits such evidence over Defendants' objection, then Defendants should be permitted to introduce their other charitable donations into evidence to rebut Plaintiff's narrative that these contributions were self-

31

serving.  As noted above, Defendants would raise their intent to introduce such evidence with the Court and Plaintiff before attempting to do so.

Plaintiff argues that, if the Court allows evidence of Defendants' "good acts," then it must also permit Plaintiff "to present rebuttal evidence" about Defendants' supposed "bad acts."  Pl.'s Mot. No. 7, at 11.  But Defendants would introduce evidence of charitable contributions or other good acts *defensively*, if Plaintiff argues that they pursued profit over public health or otherwise attacks Defendants' corporate character.  If Plaintiff could then bring in other evidence of alleged "bad acts," it would incentivize Plaintiff to make inflammatory arguments about Defendants' motives in the first instance.  In addition, allowing evidence of allegedly wrongful conduct not related to this case, such as 3M's manufacturing of asbestos or DuPont's alleged "price fixing of neoprene products," would invite the jury to punish Defendants for conduct not at issue here in violation of constitutional requirements, *see Philip Morris USA v. Williams*, 549 U.S. 346, 353–54 (2007), and lead to mini-trials about Defendants' actions with respect to products not relevant to this litigation.  The Court should therefore deny this motion.

Dated: April 7, 2023

Respectfully submitted,

*/s/ Michael A. Olsen*

Michael A. Olsen
Mayer Brown LLP
71 South Wacker Drive
Chicago, IL 60606
P: (312) 701-7120
F: (312) 706-8742
molsen@mayerbrown.com

Brian Duffy
Duffy & Young LLC
96 Broad Street
Charleston, SC 29401
P: (843) 720-2044
F: (843) 720-2047
bduffy@duffyandyoung.com

Joseph G. Petrosinelli
Williams & Connolly LLP
680 Maine Ave., S.W.
Washington, DC 20024
P: (202) 434-5547
F: (202) 434-5029
jpetrosinelli@wc.com

David E. Dukes
Nelson Mullins Riley & Scarborough LLP
1320 Main Street, 17th Floor
Columbia, SC 29201
P: (803) 255-9451
F: (803) 256-7500
david.dukes@nelsonmullins.com

*Co-Lead Counsel for Defendants*

*Co-Liaison Counsel for Defendants*

33

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on April 7, 2023, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify the foregoing document is being served this day on all counsel of record in this case via transmission of Notice of Electronic Filing generated by CM/ECF.

/s/ *Michael A. Olsen*
Michael A. Olsen

2