

2001 M Street NW, 10th Floor
Washington, DC 20036

WWW.WILKINSONSTEKLOFF.COM
———
A LIMITED LIABILITY PARTNERSHIP

May 4, 2023

**VIA ECF**
Hon. Richard Mark Gergel
U.S. District Court for the District of South Carolina
J. Waites Waring Judicial Center
83 Meeting Street
Charleston, South Carolina 29401

Re:    *In re AFFF Products Liability Litigation*, MDL No. 2:18-mn-2873-RMG

Dear Judge Gergel:

Defendants 3M Company, Chemours, DuPont, Kidde-Fenwal, National Foam, and Tyco Fire Products (collectively, "Defendants") submit this letter brief in response to the Court's May 3, 2023 Order (Dkt. No. 3065) and Plaintiff's letter to the Court on the same date (Dkt. No. 3064). Plaintiff's letter is filled with unfounded allegations—among them, the false claim that counsel has not acted in good faith during the conferral process on exhibits and on deposition designations as they relate to exhibits. Plaintiff's letter includes accusations it has *never* raised with Defendants during the meet-and-confer process. Indeed, Plaintiff violated the Court's meet-and-confer rules with their May 3 letter itself.

Plaintiff appears to want this Court to rule now on evidentiary issues that are not ripe, and to chastise Defendants for doing what the Court expects—working through difficult issues within the assigned time period. Defendants were doing so, and thus had no warning that Plaintiff unilaterally determined the parties had reached an impasse. No such impasse exists. Defendants will continue meeting and conferring to make significant progress before the May 8 submissions.

Defendants strongly disagree with many of the characterizations set forth in Plaintiff's letter and we address a few points here.

***Plaintiff failed to raise concerns about Defendants' objections despite multiple requests by Defendants.*** Since April 20, Defendants have engaged in nine-days' worth of meet and confers regarding exhibit lists and deposition designations with counsel for Plaintiff. Defendants were therefore surprised to see Plaintiff's letter brief to this Court, as Defendants have been fully engaged in working with Plaintiff's counsel so that any remaining disputes could be properly submitted in accordance with the May 8 deadline set forth by the Court at last week's CMC. In fact, Plaintiff's counsel has ignored requests from Defendants for additional meet and confers about exhibits. On May 2, Defendants asked Plaintiff to identify documents with live objections so that the parties could try to resolve those disputes. Plaintiff did not respond. Ex. 1 (May 2,

2023 H. Bedard email). Defendants repeated the offer early on May 3. Plaintiff again did not respond. Ex. 2 (May 3, 2023 H. Bedard email). If Plaintiff had taken Defendants up on their offers, perhaps the parties could have resolved objections to several of the documents Plaintiff raised in its letter.

*Plaintiff incorrectly implied that Defendant 3M is reneging on a prior stipulation.* For example, regarding the stipulation attached as Exhibit 1 to Plaintiff's letter—a stipulation of authenticity and admissibility of a single document (P1.LP068)—3M's trial counsel was unaware of the stipulation when making objections to Plaintiff's list. The stipulation was entered into over two years ago on April 8, 2021. Needless to say, this litigation has advanced considerably since that date and 3M's trial counsel was unfortunately unaware of the stipulation when making objections to Plaintiff's list. That oversight is ours, but the decision to intentionally avoid correcting that oversight and instead raising it with the Court as an intentional act of reneging lies squarely with Plaintiff.

Had Plaintiff brought this stipulation to Defendants' attention, this matter would have been resolved. To be clear, by May 1, Defendants had already withdrawn their previous authenticity objection—as Plaintiff well knows because Defendants' May 1 spreadsheet no longer reflects any such objection. However, had trial counsel known about the stipulation, counsel would have removed the objection to *admissibility*, and have done so now.

Similarly, Plaintiff's other claims relating to the additional exhibits attached to its letter could have been (and still can be) addressed during the ongoing meet-and-confer process. Defendants remain available to discuss any similar documents with Plaintiff to narrow the scope of objections.

*The Parties reached numerous evidentiary agreements.* Indeed, the meet-and-confer process on exhibits has been fruitful thus far. The parties have been able to resolve a number of significant objections and have reached agreements that will make trial more efficient. Since the Thursday court hearing, Defendants provided on May 1 a spreadsheet of Plaintiff's exhibits that has an "Agreement" column added in which a document's status as authentic and a business record is now listed. Defendants have agreed that many of Defendants' internal company documents and certain third-party documents on both sides' lists can be deemed authentic and business records, and that a number of government documents are public records. These agreements will make trial flow more smoothly and avoid using trial time to establish foundation for these documents. Defendants memorialized these, and other, agreements reached between the parties in the email Plaintiff attached to its submission. *See* Dkt. No. 3064-2 (Plaintiff's Exhibit 2) at 2-3.

In addition, in keeping with CMO-19G ¶ V.B., Defendants proposed the parties agree to exchange documents anticipated to be used during direct examination of a witness 48 hours in advance of that examination. Dkt. No. 3064-2 (Plaintiff's Exhibit 2) at 3. As Defendants' counsel stated, that would allow the parties to work to resolve any remaining objections and at least reduce the number of objections that would be presented to the Court. *Id.* Plaintiff likewise did not provide its final position on this proposal.

***Plaintiff's newly reduced objections to Defendants' list.*** Defendants are pleased to hear that Plaintiff has pared down its objections to under 30 exhibits. But Defendants first learned of Plaintiff's significant progress by reading Plaintiff's May 3 letter to the Court. As of Plaintiff's most recent spreadsheet of Defendants' exhibits provided to Defendants on April 26, Plaintiff had lodged and was standing on objections to 289 of 598 Defendants' exhibits. Ex. 3 (April 26, 2023 S. Biehl email) at 1. Hours *after* Plaintiff's filing to the Court at 2:48 p.m. eastern time on May 3 (Dkt. No. 3064), Plaintiff provided Defendants at 6:00 p.m. eastern time Plaintiff's revised spreadsheet of Defendants' exhibits reflecting the greatly diminished number of objections. Ex. 4 (May 3, 2023 S. Biehl email) at 1. Plaintiff chose to mark its progress with the Court first, and only hours later provide the document memorializing that progress to Defendants. Contrary to Plaintiff's suggestion, Defendants remain willing to continue to work with Plaintiff to pare down their objections to Plaintiff's exhibit list.

***Defendant's position on preadmission.*** Plaintiff's letter also mischaracterizes Defendants' position with respect to the "preadmission" of evidence at trial and raises a baseless concern about having to call "possibly hundreds" of witness to lay the foundation for documents. Put simply, Plaintiff seeks an agreement that *all* documents without a specific objection should be marked for "preadmission" at trial, thereby allowing such a document to be used with any witness at any time, to be referenced during opening or closing statements, and even to be sent back to the jury without it ever having been properly presented through a witness or otherwise at trial. Defendants object to this procedure, and maintain that to be admitted at trial, a document must be properly used or introduced into evidence, including, and in most instances, through a fact witness with personal knowledge of the document.

As courts have recognized, the admissibility of evidence should be "measure[d] . . . in the context of trial." *United States v. Wick*, 2016 WL 10612608, at *2 (D. Mont. Mar. 11, 2016). "[B]y deferring evidentiary rulings until trial, courts can properly resolve questions of foundation, relevancy, and prejudice." *Francois v. Gen. Health Sys.*, 459 F. Supp. 3d 710, 719 (M.D. La. 2020); *see also Walton v. Saady*, 2006 WL 5112616, at *1 (M.D. Fla. Sept. 27, 2006) ("issues involving the admissibility of evidence are better resolved within the context of a trial when the Court can make a more informed decision"). For these reasons, and several others that Defendants can address in further briefing if requested by the Court, federal courts have declined to "preadmit" exhibits absent agreement among the parties. *See, e.g., Union Pac. R.R. Co. v. Winecup Ranch, LLC*, 2020 WL 7125918, at *6 (D. Nev. Dec. 4, 2020). Defendants' position is therefore consistent with the law and, contrary to Plaintiff's suggestion, does not reflect an attempt to back out of any evidentiary agreements they have already made.

Defendants' concern with Plaintiff's position is not simply conjecture. For example, at the deposition of DuPont witness Stephen Korzeniowski, Plaintiff's counsel presented the witness with a document he had never seen. After the witness responded, "I have not seen these documents before," Plaintiff's counsel continued on, reading excerpts from the documents to the witness and asking, "Do you see that?" *See* Ex. 5 (Sept. 11, 2020 S. Korzeniowski Dep. Tr.) at 225:7-229:14. Similarly, at the deposition of 3M witness Charles Kiester, Plaintiff's counsel presented Mr. Kiester with a document that he had not seen until just prior to the deposition, then proceeded to

read portions of the document to the witness and ask for the witness's interpretation of language used in the memo. *See* Ex. 6 (Oct. 8, 2020 C. Kiester Dep. Tr.) at 548:3-6, 549:1-17, 551:8-552.7. Likewise, at the deposition of 3M witness John Butenhoff, Plaintiff's counsel presented Mr. Butenhoff with a document that he had never seen; counsel proceeded to read portions of the document to the witness; and counsel then provided his own interpretation of events instead of letting the document speak for itself. *See* Ex 7 (July 23, 2020 J. Butenhoff Dep. Tr.) at 311:3-312:10, 312:19-313:7.

The problems with Plaintiff's approach are further underscored by reviewing the objections themselves. Plaintiff's exhibit list contains documents that Defendants admit are authentic and business records but nonetheless subject to other, legitimate objections. For example, some exhibits discuss possible reporting obligations under the Toxic Substances Control Act, which is the subject of 3M's motion in limine number 1. Dkt. No. 2923. For context, nearly 100 exhibits on Plaintiff's list relate to a MIL pending before the Court. As another example, numerous documents that 3M agrees are authentic and business records also include unidentified handwriting and underlining to which 3M maintained objections. Using Defendants' approach to these exhibits, the admissibility of such evidence would properly be determined in the context of trial if the parties were not otherwise able to resolve their objections.

Even if there are proper ways to use otherwise admissible documents at trial other than through witness testimony, attorney argument in the midst of trial is not one of them. Defendants respectfully suggest that these issues can only be addressed at the time of trial with due regard for the rule of completeness, considerations of cumulative evidence, and the context for how a party is seeking to use documentary evidence. To be clear, Defendants do not expect or intend to ask the Court to rule on all objections to the parties' "Core Exhibit List" (which contain over 1,000 exhibits collectively). As this Court undoubtedly knows, the number of exhibits actually used during trial is much smaller than what is put on an exhibit list. That is why Defendants' proposed 48-hour exchange rule would streamline the process and the number of objections the parties actually seek the Court's intervention on. Defendants would be happy to provide further briefing on this issue and will also be prepared to discuss their position with the Court at any time.

\* \* \*

Defendants have engaged in and continue to engage in the meet-and-confer process with diligence and in good faith so that trial can proceed as smoothly and efficiently as possible for the Court and the jury. The parties' outstanding issues are ones that can and should be resolved through the continuing meet-and-confer process, or by the Court in accordance with its pretrial procedures as set forth in prior Orders or at the time of trial. Defendants are available if the Court would like to discuss these, or any other, issues with the parties.

4

Respectfully,

*[signature]*

Tamarra Matthews Johnson

cc: Via ECF, all counsel of record

5