IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

|  |  |
|---|---|
| IN RE: AQUEOUS FILM-FORMING FOAMS PRODUCTS LIABILITY LITIGATION | MDL No. 2:18-mn-2873-RMG <br><br> **ORDER AND OPINION** <br><br> **This Order Relates to** <br> *City of Stuart, Fl. v. 3M Co., et al.*, <br> **Case No. 2:18-cv-3487-RMG** |

Before the Court is Defendants' omnibus motions in limine. (Dkt. No. 2919). For the reasons set forth below, and as detailed herein, the Court rules as follows.

**I.   Background**

Plaintiff the City of Stuart ("Plaintiff," "Stuart" or the "City) alleges that various Defendants manufactured and distributed aqueous film-forming foam ("AFFF") and/or fluorosurfactant additives for use in AFFF that contaminated the City's water supply with PFAS, including PFOS and PFOA. (*City of Stuart, Fl. v. 3M Co., et al.*, 2:18-cv-3487-RMG, Dkt. No. 54, ¶ 1).

On March 24, 2023, Defendants filed the instant motion in limine. (Dkt. No. 2919). Plaintiff opposes. (Dkt. No. 2963)

Defendants' motion is fully briefed and ripe for disposition.

## II.     Legal Standard

Although not specifically provided for in the Federal Rules of Evidence, motions in limine "ha[ve] evolved under the federal courts' inherent authority to manage trials." *United States v. Verges*, Crim. No. 1:13-222, 2014 WL 559573, at *2 (E.D. Va. Feb. 12, 2014). "The purpose of a motion in limine is to allow a court to rule on evidentiary issues in advance of trial in order to avoid delay, ensure an even-handed and expeditious trial, and focus the issues the jury will consider." *Id.* "Questions of trial management are quintessentially the province of the district courts." *United States v. Smith*, 452 F.3d 323, 332 (4th Cir. 2006); *see also United States v. McBride*, 676 F.3d 385, 403 (4th Cir. 2012) ("[A]ssessing [whether evidence is] relevan[t] is at the heart of the district court's trial management function."). A district court therefore has "broad discretion" in deciding a motion in limine. *Kauffman v. Park Place Hosp. Grp.*, 468 F. App'x 220, 222 (4th Cir. 2012). Nonetheless, a motion in limine "should be granted only when the evidence is clearly inadmissible on all potential grounds." *Verges*, 2014 WL 559573, at *3.

## III.     Discussion

In **Motion in Limine No. 1**, Defendants move to exclude evidence regarding EPA's proposed national drinking water standard for PFOS and PFOA, referred to as a maximum contaminant level ("MCL"), and related public statements. (Dkt. No. 2919 at 12). EPA's proposed rule would impose a legally enforceable MCL of 4 parts per trillion each. (*Id.*). Defendants argue evidence of the MCL should be excluded because it is "not final." (*Id.*). Defendants argue that the proposed MCL presents a risk of confusing the jury as to Plaintiff's negligence and products liability warning claims because those claims must be decided on information available to Defendants at the time those products were manufactured, not "government regulations proposed

long after the fact." (*Id.* at 13). Further, Defendants argue that because evidence of the MCL should be excluded, related public statements from EPA regarding the "regulation's potential benefits to public health[] should also be barred." (*Id.*).

The Court **denies** Defendants motion in limine no. 1.  Defendants are correct that evidence of the proposed MCL is not indicative of Defendants' knowledge at the time of the manufacture and distribution of their products. *See Thomas v. Bombardier Recreational Prod., Inc.*, 682 F. Supp. 2d 1297, 1300 (M.D. Fla. 2010) ("To establish strict liability for failure to warn, plaintiff must prove that defendant (a) is a manufacturer or distributor of the product at issue, and (b) did not adequately warn of a particular risk that was known or knowable in light of the generally recognized and prevailing best scientific and medical knowledge available at the time of the manufacture and distribution."); (Dkt. No. 2963 at 7) (admitting proposed MCL is "not determinative of Plaintiff's injury").  The Defendants are incorrect, however, that the proposed MCL is irrelevant because, as Plaintiff correctly contends, it speaks to EPA's position on PFOA and PFOS toxicity and "provides corroborative support for the reasonableness of Plaintiff's actions to remove PFAS from its water supply." (Dkt. No. 2963 at 7, 9). Relatedly, as the Court finds that evidence of the proposed MCL is relevant, it rejects Defendants' argument that EPA press releases and public statements regarding the MCL are per se inadmissible. At trial, as necessary, the Court will address challenges to specific documents related to this topic. Accordingly, Defendants' motion in limine no. 1 is denied**.**

In **Motion in Limine No. 2**, Defendants seek to preclude evidence regarding the "location, number, or cost of Defendants' attorneys and the presence, absence, or identify of a corporate representative at trial." (Dkt. No. 2919 at 14). Plaintiff states it does not intend to introduce such

evidence at trial. (Dkt. No. 2963 at 12). Accordingly, Defendants' motion in limine no. 2 is **granted** on this point.

In **Motion in Limine No. 3**, Defendants seek to exclude evidence concerning (1) the significance of this case as a "bellwether"; (2) the number of MDL or PFAS-related cases; and (3) "evidence concerning alleged PFAS contamination outside the City of Stuart." (Dkt. No. 2919 at 16). Plaintiff states it does not intend to introduce evidence as to (1) and (2) and the motion is **granted** on these points. Plaintiff does challenge subpoint (3).

The Court **denies** Defendants motion in limine no. 3 to the extent it seeks to bar all evidence of PFAS contamination outside of the City of Stuart. Defendants requested relief is overly broad and would, by means of example, automatically exclude evidence relevant to 3M's knowledge of the alleged dangers of PFAS despite said evidence not being unfairly prejudicial. (Dkt. No. 2963 at 13) (describing evidence that 3M falsely informed the EPA in 1998 that it had recently found PFOS in the blood of the general population when it acquired that information decades earlier); Order Denying Defendants' Motion for Summary Judgment on Government Contractor Immunity, (Dkt. No. 2601 at 15-18) (discussing similar evidence). Accordingly, Defendants' motion in limine is denied to the extent it seeks to bar evidence of alleged PFAS contamination outside of Stuart, including the fact that PFAS has been detected in people, animals, and places around the world.

In **Motion in Limine No. 4**, Defendants seek to exclude evidence regarding other litigation or conduct not at issue in this case. (Dkt. No. 2919 at 19). Defendants seek to exclude: (1) evidence regarding other litigation involving Defendants or PFAS; (2) evidence that Defendants have paid remediation costs in localities other than Stuart; and (3) representations concerning the *Leach* settlement, or the Science Panel established by that settlement.

4

As to point (1), Plaintiff states that, with "three caveats," it does not intend to introduce evidence of other PFAS litigation involving Defendants and/or PFAS and/or past settlement. (Dkt. No. 2963 at 14). First, Plaintiff states that many documents bear BATES stamps from prior litigations and argues it may be necessary to explain those BATES stamps for "incidental purposes." Second, Plaintiff argues it intends to introduce evidence of Defendants' submissions "challenging both State and Federal PFAS regulatory action." (*Id.* at 15) (contending this line of questioning is "intended to demonstrate . . . Defendants had an opportunity to participate in the regulatory process" and is further relevant to Defendants' "course of conduct and intent with respect to information relating to PFAS"). Third, Plaintiff states it intends to introduce evidence of TSCA fines imposed by the EPA on 3M and DuPont. (*Id.*at 16).

Regarding Defendants' MIL No. 4 and "other litigation," the Court **grants** that portion concerning "other PFAS litigation involving Defendants and/or PFAS and/or past settlement." As to documents bearing BATES stamps from other litigations, the motion is **denied without prejudice**. While no party will be barred from introducing a document into evidence solely because of a BATES stamp from a prior litigation, the Court will address at the pretrial conference the proper means of addressing concerns about redacting or explaining the significance of such stamps to the jury. As to evidence of Defendants' submissions challenging State and Federal PFAS action, the Court **denies without prejudice** Defendants' motion and will address any such documents Plaintiff seeks to introduce during trial to determine their admissibility. Last, as to evidence of TSCA fines imposed by the EPA, the Court **denies** the motion as to 3M per this Court's ruling on 3M's motion in limine, (Dkt. No. 3125), and **denies without prejudice** the motion as to DuPont/Chemours as that question is better addressed in the context of DuPont/Chemours's own motion in limine, which raises this same point.

As to point (2), Plaintiff states it does not intend to introduce evidence that Defendants have paid to remove PFAS from sites outside of Stuart. Accordingly, the motion is **granted** on this point.

As to point (3), Plaintiff states it does not intend to offer evidence (1) DuPont agreed as part of the *Leach* settlement agreement not to contest that exposure to PFOA is capable of causing harm; or (2) the C8 Science Panel found a causal link between PFOA and certain illnesses at .05ppb. Accordingly, the motion is **granted** on these points. Plaintiff does intend to offer, however, evidence that the C8 Science Panel found "statistically significant associations" with various diseases or medical conditions. (Dkt. No. 2963 at 17) (noting Plaintiff may also cite to the "publications published in the peer review by members of the C8 Science Panel in the same way"). As to Defendants' motion and the noted documents Plaintiff states it intends to introduce, the Court **denies without prejudice** Defendants' motion and will rule on specific documents/evidence at trial with proper context.

In **Motion in Limine No. 5**, Defendants seek to preclude "speculative, unsupported, or irrelevant evidence on scientific matters." (Dkt. No. 2919 at 23). Namely, Defendants seek to exclude: (1) evidence about a purported link between PFAS and COVID-19; (2) evidence about the precautionary principle; (3) evidence that AFFF used in Stuart or the PFAS in Plaintiff's water supply have caused harm to plans or animals; (4) evidence as to the supposed PFAS concentration in the bodies of trial participants; and (5) all reference to PFAS as "forever chemicals." (Dkt. No. 2919 at 24).

As to point (1), the Court **denies with prejudice** Defendants' motion because evidence of a link between PFAS and Covid-19 may be relevant to Stuart's need to remediate its groundwater. As to point (2), the Court **denies** Defendants' motion considering its ruling on Defendants'

6

omnibus motion to exclude Plaintiff's expert testimony, which addressed the precautionary principle. (Dkt. No. 3059).  As to point (3), the Court **grants** the motion as Plaintiff states it does not intend to introduce such evidence at trial. As to point (4), Plaintiff states it does not intend to "offer evidence of the supposed PFAS concentration in the blood of trial participants" but does intend to introduce evidence of historical background levels of PFAS in blood of the general population. (Dkt. No. 2963 at 20). Accordingly, the motion **granted** as to the "blood of trial participants" but **denied** to the extent Defendants seek to exclude relevant information about PFAS in the blood of the general population. As to point (5), and the term "forever chemicals," the Court **denies** Defendant's motion. Defendants argue the term is "misleading" and "inflammatory" and suggest Plaintiff instead refer to PFOA or PFOS as "persistent," "stable," "long-lasting," or "resistant to degradation." (Dkt. No. 2919 at 28-29). Plaintiff contends, however, that because it will introduce evidence suggesting PFAS may last centuries, the label "forever chemicals" is accurate. (Dkt. No. 2963 at 21).  Given Plaintiff's forecast evidence, the Court finds Defendants' cited cases distinguishable and the term "forever chemicals" not misleading or otherwise unfairly prejudicial. *See Evans v. Quintiles Transnat'l Corp.*, No. 4:13-CV-00987-RBH, 2015 WL 9455580, at *7 (D.S.C. Dec. 23, 2015) (precluding use of term "kickback" to refer to "hotel commissions and rebates" because term was "unnecessarily inflammatory" and "implies illegality"); *In re Testosterone Replacement Therapy Prod. Liab. Litig. Coordinated Pretrial Proc.*, No. 14 C 1748, 2018 WL 305503, at *10 (N.D. Ill. Jan. 6, 2018) (precluding during opening statements use of term "lobbying" to describe interactions between defendant and the FDA—"The appropriate time to address the contours of such argument is prior to closing arguments, when the Court will be able to assess the evidence that has been introduced" and determine if the term "lobbying" is appropriate).

In **Motion in Limine No. 6,** Defendants ask the Court to bar Plaintiff's witness from describing Defendants or their employees as "negligent," "reckless," "willful," "wanton," "immoral," or "unethical," or from otherwise characterizing Defendants' mental state, motives, or intentions. (Dkt. No. 2919 at 30). The Court **denies without prejudice** Defendants' motion. As Plaintiff correctly notes, Defendants fail to cite any testimony where Plaintiff's experts have used the above terms and the Court will address this point at trial as necessary. *See* (Dkt. No. 2693 at 22-24) (admitting that "negligence" is "a legal term that experts generally should not use" but noting that "experts may in appropriate circumstances opine that a defendant acted 'recklessly, in extreme disregard for human life' because 'the legal meaning of some terms is not so distinctive from the colloquial meaning'") (citing *United States v. Perkins*, 470 F.3d 150, 158 (4th Cir. 2006)). To the extent Defendants move to exclude testimony as to their mental states, the Court has already addressed this issue in its Order ruling on Defendants' omnibus motion to exclude Plaintiff's expert testimony and the Court directs the parties to that order. (Dkt. No. 3059 at 5-7).

In **Motion in Limine No. 7**, Defendants argue Plaintiff should be precluded from "employing inflammatory arguments and rhetoric." (Dkt. No. 2919 at 32). Specifically, Defendants object to: (1) any suggestion that taxpayers will cover costs not borne by Defendants; (2) use of "Golden Rule" or "Reptile Theory" arguments; (3) references to evidence subject to a pending objection during opening statements; (4) references to tobacco or asbestos manufacturers; and (5) arguments that Defendants have failed to take responsibility for Plaintiff's claims.

As to point (1), the Court **denies without prejudice** Defendants' motion. Plaintiff agrees that it will not attempt to "appeal to jurors' pecuniary interest as taxpayers" by suggesting any costs not borne by Defendants will be by taxpayers. (Dkt. No. 2693 at 24); *see Moore ex rel. Estate of Grady v. Tuelja*, 546 F.3d 423, 429 (7th Cir. 2008) (arguments as "to jurors' pecuniary interests

8

as taxpayers are, of course, generally improper"). Nevertheless, Plaintiff argues that it "must be permitted to explain the need for and importance of the requested damages . . . by presenting . . . the fact Stuart's water department generally operates on revenue generated by charges its customers and, when necessary, imposing rate increases." (*Id.*). At trial, as needed, the Court will address objections to the above line of testimony from Plaintiff to ensure it does not result in unfair prejudice to Defendants.

As to point (2), the Court **denies without prejudice** Defendants' motion. Golden Rule arguments are inappropriate and should not be used at trial. *Arnold v. E. Air Lines, Inc.*, 681 F.2d 186, 199 (4th Cir. 1982), *on reh'g*, 712 F.2d 899 (4th Cir. 1983). Defendants' motion as to "Reptile Theory" arguments, however, is overly vague and the Court will rule on specific challenges on this basis as raised at trial. *See* (Dkt. No. 2919 at 32). As to Defendants' attempt to preclude as improper "Reptile arguments" Plaintiff or its witnesses from referring to AFFF as "poison" or "witch's brew," or comparing the Fire Fighting Foam Coalition ("FFFC") to a "cartel," the Court also **denies without prejudice** Defendants' motion. Currently, it is not clear that the referenced testimony referring to AFFF as "poison" or a "witch's brew" is relevant. *See* (*id.*) (citing government witness testimony comparing *MilSpec AFFF* to "poison" or a "witch's brew." No party to this action, however, contends that MilSpec AFFF was used in Stuart); *United States v. Gartmon*, 146 F.3d 1015, 1021 (D.C. Cir. 1998) (noting Rule 403 does "does not generally require the government to sanitize its case, to deflate its witnesses' testimony, or to tell its story in a monotone"). As to referring to the FFFC as a "cartel," the Court also **denies without prejudice** Defendants' motion and will address this point as needed at trial.

As to point (3), the Court **denies** Defendants' motion to preclude reference to evidence subject to a pending objection. (Dkt. No. 2919 at 34). Defendants cite no authority supporting their

9

requested relief and identify no specific material which should not be mentioned during opening statements. At the pretrial conference in this matter, if Defendants believe any particular piece of evidence should not be mentioned in opening statements, they may identify it so that the matter can be argued and ruled on. *See Schenone v. Zimmer, Inc.*, No. 3:12-CV-1046-J-39MCR, 2014 WL 12619911, at *2 (M.D. Fla. Aug. 27, 2014) (declining to prohibit plaintiffs from referring to testimony subject to hearsay objection in opening statement but "caution[ing] that such a strategy may be fraught with peril").

As to point (4), Plaintiff agrees with Defendants that it will not reference or make comparisons to the tobacco or asbestos industries during trial. Accordingly, Defendants' motion is **granted** on this point.

Last, as to point (5), the Court **grants in part and denies in part** Defendants' motion. Plaintiff may not argue that Defendants are seeking to avoid responsibility for their actions by the sheer fact they dispute liability and damages. *Haro v. GGP-Tucson Mall LLC*, No. CV-17-00285-TUC-JAS, 2019 WL 369269, at *4 (D. Ariz. Jan. 30, 2019) (excluding said line of argument under Rule 403). The motion is otherwise denied. *See R.J. Reynolds Tobacco Co. v. Gerald,* 76 V.I. 656, 690 n. 19 (2022) ("While the Court agrees that argument that the defense of this lawsuit, in and of itself, is a basis for imposing liability or damages that Defendant has failed to apologize for its conduct would both be improper, the issue of whether Reynolds historically refused to admit proven harm caused by particular conduct is permissible. The Court will permit fair argument, but it will not permit inflammatory appeals to sympathy or outrage."); (Dkt. No. 2963 at 32-33) (arguing a defendant's failure to take subsequent remedial measures is probative of continuing wrongful conduct and arguing Plaintiff should not be precluded from introducing evidence to this effect on the basis that Plaintiff thereby seeks to hold "defendants" responsible for their actions).

In **Motion in Limine 8**, Defendants seek to preclude evidence concerning Defendants' size and financial resources. (Dkt. No. 2919 at 37). Defendants seek to exclude:

1) Plaintiff's economic expert Robert Johnson's determination that 3M holds and can sell approximately $30 billion in treasury stock;
2) Johnson's use of the term "free cash" to describe cash available, i.e., net cash flow from operating activities less capital expenditures;
3) Any evidence that the defendants can absorb large compensatory or punitive damages awards;
4) Any evidence of the Defendants' wealth, including Defendants' CEO compensation or severance packages;
5) Inflammatory questioning about Defendants' wealth;
6) Evidence of liability insurance; and
7) Any evidence or argument of corporate structure.

(Dkt. No. 2963 at 34). Plaintiff affirms it has no intention of introducing evidence regarding "collateral sources of Defendants' ability to pay judgments" and the motion is **granted** to this effect. (*Id.*).

In *Owens-Corning Fiberglas Corp. v. Ballard*, 749 So. 2d 483, 484–85 (Fla. 1999), in analyzing whether a particular award of punitive damages was excessive, the Supreme Court of Florida noted the trial court had directed the jury consider the following factors in assessing punitive damages:

> The factors instructed upon by the judge to the jury to consider in resolving the punitive damages issue included: (1) an amount reasonable in relation to the harm likely to result from [defendant]'s conduct as well as the harm that actually has occurred; (2) the degree of reprehensibility of [defendant]'s conduct, the duration of that harmful conduct, [defendant]'s awareness, any concealment and the existence and frequency of similar past conduct; (3) the profitability to [defendant] of the wrongful conduct and the desirability of removing that profit and of having [defendant] also sustain a loss; (4) the financial condition of [defendant] and the probable effect thereon of a particular judgment; (5) all the costs of litigation to defendant and to the plaintiff; (6) the total punishment [defendant] has or will probably receive from other sources, as a mitigating factor; (7) the seriousness of the hazard to the public, the attitude and conduct of [defendant] upon discovery of the misconduct; (8) the degree of [defendant]'s awareness of the hazard and of its excessiveness; (9) the number and level of employees involved in causing or covering up the marketing misconduct; (10) the duration of both the improper

marketing behavior and its cover-up; and (11) the existence of other civil awards against [defendant] for the same conduct.

The Court **denies without prejudice** the remainder of Defendants' motion on this point. The evidence Defendants seek to exclude is, generally speaking, potentially relevant to punitive damages. *Id.* At the appropriate time during trial, and to the extent needed, the Court will address specific objections to evidence Plaintiff attempts to introduce relative to punitive damages.

Last, in **Motion in Limine No. 9**, Defendants seek to exclude all evidence regarding Defendants' "PFAS-related lobbying efforts." (Dkt. No. 2919 at 39). Defendants claim the *Noerr-Pennington* doctrine renders such evidence inadmissible.

"The *Noerr-Pennington* doctrine derives from the Petition Clause of the First Amendment and provides that 'those who petition any department of the government for redress are generally immune from statutory liability for their petitioning conduct.'" *Kearney v. Foley & Lardner, LLP*, 590 F.3d 638, 643-44 (9th Cir. 2009) (quoting *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 929 (9th Cir. 2006)); *see also North Carolina Elec. Membership Corp. v. Carolina Power & Light*, 666 F.2d 50, 52 (4th Cir. 1981) (finding that the *Noerr-Pennington* doctrine "exempts from anti-trust liability any petitioning activity designed to influence legislative bodies or governmental agencies."). "This immunity extends to persons who petition all types of government agencies—legislatures, administrative agencies, and courts." *Cheminor Drugs, Ltd. v. Ethyl Corp.*, 168 F.3d 119, 122 (3d Cir. 1999); *see Merck-Medco Managed Care, Inc. v. Rite Aid Corp.*, 22 F. Supp.2d 447, 470 (D. Md. 1998) ("The *Noerr-Pennington* doctrine protects joint efforts at lobbying all branches of government, including administrative agencies and courts."). Furthermore, even though the doctrine emerged from the antitrust context, courts have "held that *Noerr-Pennington* principles 'apply with full force in other statutory contexts' outside antitrust." *Kearney*, 590 F.3d at 644 (quoting *Sosa*, 437 F.3d at 930).

12

The *Noerr-Pennington* doctrine, however, "has not been applied to bar otherwise admissible evidence. The *Noerr-Pennington* doctrine does not operate in this manner." *City of Huntington v. AmerisourceBergen Drug Corp.*, 3:17-01362, 2021 WL 1986425, at *1 (S.D.W. Va. May 18, 2021); *In re: General Motors LLC Ignition Switch Litigation*, 14-MD-2543 (JMF), 2015 WL 8130449, at *2 (S.D.N.Y. Dec. 3, 2015) (finding that New GM's argument to "exclude evidence of its 'lobbying'" of the National Highway Transportation Safety Administration fails because "[u]nder the *Noerr-Pennington* doctrine, a defendant may not be held liable based solely on conduct that is protected by the First Amendment, but that does not mean that such conduct is altogether inadmissible or necessarily lacking in evidentiary value"); *Merck-Medco Managed Care, Inc. v. Rite Aid Corp.*, 22 F. Supp. 2d 447, 470 n.55 (D. Md. 1998) ("Unless the evidence is unduly prejudicial to the defendants, activities covered by the *Noerr-Pennington* doctrine are nevertheless admissible to prove matters such as motive, opportunity, and intent."). Even the *Pennington* Court itself recognized that:

> [i]t would of course *still be within the province of the trial judge to admit this evidence*, if he deemed it probative and not unduly prejudicial, under the established judicial rule of evidence that testimony of prior or subsequent transactions, which for some reason are barred from forming the basis for a suit, may nevertheless be introduced if it tends reasonably to show the purpose and character of the particular transactions under scrutiny.

*United Mine Workers of America v. Pennington*, 381 U.S. 657, 670 n.3 (1965) (emphasis added).

The Court **denies** Defendants' motion on this final point. The *Noerr-Pennington* doctrine is not applicable here as Plaintiff "does not seek to hold [Defendants] *liable* for [their] alleged petitioning activity; [Plaintiff] intends to offer evidence of that activity to demonstrate [Defendants motive or intent" or knowledge. *In re Testosterone Replacement Therapy Prod. Liab. Litig. Coordinated Pretrial Proc.*, No. 14 C 1748, 2018 WL 305503, at *10 (N.D. Ill. Jan. 6, 2018); *In*

13

*re Tylenol (Acetaminophen) Mktg., Sales Practices & Prod. Liab. Litig.*, 181 F. Supp. 3d 278, 306 (E.D. Pa. 2016) ("It would be a stretch to say that *Noerr–Pennington* bars any use of any evidence of the defendants' petitioning of the government, and its agencies, or evidence of any communications with the FDA."); *In re: General Motors LLC Ignition Switch Litigation*, 2015 WL 8130449, at *2-3 (denying similar motion in limine and holding, "At bottom, New GM's *Buckman* and *Noerr-Pennington* arguments (and its related arguments under Rule 403 of the Federal Rules of Evidence) are premised on a concern that a jury could base a finding of liability on an inappropriate ground — either a ground that is preempted by federal law or a ground that is protected by the First Amendment. In the final analysis, however, the proper remedy for those concerns is care in instructing the jury with respect to what it must find in order to hold New GM liable and, if New GM requests it, perhaps also curative instructions making clear to the jury on what it may *not* base its verdict. The proper remedy is not exclusion of evidence that is otherwise relevant and admissible in connection with Plaintiff's claims") (internal citation omitted). Accordingly, Defendants' motion in limine no. 9 is denied.

**IV.     Conclusion**

For the foregoing reasons, the Court **GRANTS IN PART, DENIES IN PART, AND DENIES IN PART WITHOUT PREJUDICE** as detailed herein Defendants' omnibus motions in limine (Dkt. No. 2919).

**AND IT IS SO ORDERED.**

s/ Richard Mark Gergel
Richard Mark Gergel
United States District Judge

May 19, 2023
Charleston, South Carolina

14