IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| IN RE: AQUEOUS FILM-FORMING FOAMS PRODUCTS LIABILITY LITIGATION | ) ) ) ) ) ) ) ) ) ) ) ) | MDL No. 2:18-mn-2873-RMG <br><br> **ORDER** <br><br> **This Order Relates to Case Nos.** <br> **2:23-cv-1503-RMG** <br> **2:23-cv-1504-RMG** <br> **2:23-cv-1505-RMG** <br> **2:23-cv-1506-RMG** <br> **2:23-cv-1507-RMG** <br> **2:23-cv-1508-RMG** |

Before the Court are motions to remand filed by Plaintiffs in the above captioned matters (the "Cases"). (Dkt. No. 3292). For the reasons set forth below, the motions are denied.

**I.    Background**

The individual plaintiffs in the above captioned actions all bring claims against, inter alia, Defendant Tyco Fire Products LP ("Tyco"), for "contaminating their persons and their residence in Wisconsin with per- and poly-fluoroalkyl substances ('PFAS')." *See, e.g.*, (2:23-cv-1403, Dkt. No. 3 at 3).[1] Plaintiffs bring only state law claims against Tyco but Tyco removed the Cases to federal court on the basis of 28 U.S.C. § 1442(a)(1), commonly referred to as the "federal officer removal statute."

All Plaintiffs have moved to remand their respective cases. Tyco opposes Plaintiffs' motions.

Plaintiffs' motions are fully briefed and ripe for disposition.

---

[1] "Tyco" includes both Tyco in its own name and its predecessor in interest, the Ansul Company.

## II.     Legal Standard/Discussion

"The Supreme Court has provided clear instructions about removals under the federal officer removal statute." *Cnty. Bd. of Arlington Cnty., Virginia v. Express Scripts Pharmacy, Inc.*, 996 F.3d 243, 250–51 (4th Cir. 2021). "Although Defendants bear the burden of establishing jurisdiction as the party seeking removal, the federal officer removal statute must be 'liberally construed.'" *Id.* (quoting *Watson v. Philip Morris Companies, Inc.*, 551 U.S.142, 150 (2007)) (internal citation omitted); *see also Willingham v. Morgan*, 395 U.S. 402, 407 (1969) (noting that the liberal policy in favor of federal officer removal "should not be frustrated by a narrow, grudging interpretation of § 1442(a)(1)"). "As such, the ordinary 'presumption against removal' does not apply." *Express Scrips Pharmacy, Inc.*, 996 F.3d at 250 (quoting *Betzner v. Boeing Co.*, 910 F.3d 1010, 1014 (7th Cir. 2018)).

Under § 1442(a)(1), private actors can remove a case to federal court when they show that they: (1) acted under the direction of a federal officer; (2) possess a colorable federal defense; and (3) engaged in government-directed conduct that was causally related to the plaintiff's claims. *See Sawyer v. Foster Wheeler LLC*, 860 F.3d 249, 254 (4th Cir. 2017).

"The statutory phrase 'acting under' describes 'the triggering relationship between a private entity and a federal officer.'" *Mayor & City Council of Baltimore v. BP P.L.C.*, 952 F.3d 452, 462 (4th Cir. 2020) (quoting *Watson,* 551 U.S. at 149). Although that phrase is broad, "the Supreme Court has emphasized that [it is] not 'limitless.'" *Id.* (quoting *Watson*, 551 U.S. at 147). "In cases involving a private entity, the 'acting under' relationship requires that there at least be some exertion of 'subjection, guidance, or control' on the part of the federal government." *Id.* (quoting *Watson*, 551 U.S. at 151). Moreover, the private entity must be engaging in "an effort to *assist*, or to help *carry out*, the duties or tasks of the federal superior." *Watson*, 551 U.S. at 152.

2

Indeed, a private contractor may "act under" a federal officer when the relationship "is an unusually close one involving detailed regulation, monitoring, or supervision." *Id.* at 153.

In its notices of removal, Tyco alleges that: (1) In 1961 Tyco received a contract from the Navy to design and test fire suppression hardware and, in the summer of 1962, pursuant to that contract, the Navy invoked its rights to use the Ansul Fire Technology Center ("AFTC") to test experimental fire-suppression agents that included PFAS containing AFFF and to enlist Tyco's assistance in the testing, including on live fires. Navy representatives applied the AFFF themselves or directed Tyco personnel to apply the AFFF, with full awareness of the physical circumstances of the AFTC testing area; (2) In spring 1963, the Navy identified a PFAS-containing AFFF formulation that it deemed optimum on available materials, designated "FX-183" and, in November 1962, Air Force representatives went to the AFTC to witness testing of said product; (3) In April 1964, the Navy initiated a contract change with Tyco to add FX-183 AFFF to fire suppression hardware Tyco was developing pursuant to its contract and, in September 1964, Navy representatives invoked rights under the contract with Tyco to use the AFTC and enlist Tyco's assistance to test, observe, and evaluate a "dual system" that could extinguish various types of large-scale fires. Navy representatives applied the AFFF themselves or directed Tyco personnel to apply the AFFF, with full awareness of the physical conditions of the AFTC testing area; and (4) In 1995, the Air Force temporarily conducted testing of Series DX5216 3% AFFF-EMB agents at AFTC, where Air Force personnel tested the AFFF compositions, with full awareness of the physical circumstances of the AFTC testing area. *See, e.g.*, (2:23-cv-1505 at Dkt. No. 1 at 5-6). Tyco alleges that in conducting the above testing, "the military agencies acted within the scope of their statutory and other legal authority and made discretionary judgments to test the AFFF, to use Tyco's AFTC for that purpose, and to enlist Tyco's assistance in the testing." (*Id.*).

3

The Court finds that Tyco has met its burden of showing removal under § 1442 was proper. The above allegations demonstrate an "acting under" relationship between Tyco and the Navy. *Express Scripts Pharmacy, Inc.*, 996 F.3d at 251 (noting the "acting under" relationship requires "some exertion of 'subjection, guidance, or control' on the part of the federal government" and that the private entity "must be engaging in 'an effort to *assist*, or to help *carry out*, the duties or tasks of the federal superior"); *see Watson*, 551 U.S. at 153-54 (noting that, where a company "fulfill[s] the terms of a contractual agreement by providing the Government with a product that it used to help conduct a war," an "acting under" relationship arises. The Court further noted that "at least arguably, [the contractor] performed a job that, in the absence of a contract with a private firm, the Government itself would have had to perform."). Further, and without expressing any opinion as to the ultimate merits of its defense, Tyco has adequately alleged a colorable entitlement to derivative immunity. *W. Virginia State Univ. Bd. of Governors v. Dow Chem. Co.*, 23 F.4th 288, 297 (4th Cir. 2022) (noting that "proof of a 'colorable' federal defense does not require the defendant to 'win his case before he can have it removed' nor even establish that the defense is 'clearly sustainable.'"); *In re KBR, Incorporated, Burn Pit Litigation*, 744 F.3d 326, 342 (4th Cir. 2014) (noting that if "this authority to carry out the project was validly conferred, that is, if what was done was within the constitutional power of Congress, there is no liability on the part of the contractor for executing its will") (citing *Yearsley v. W.A. Ross Construction Co.*, 309 U.S. 18, 20-21 (1940)); *Id.* (noting that "contractors and common law agents acting within the scope of their employment for the United States have derivative sovereign immunity").

## IV. Conclusion

For the foregoing reasons, Plaintiffs' motions to remand (Dkt. No. 3293) in the Cases are **DENIED**.

**AND IT IS SO ORDERED.**

s/Richard Mark Gergel
Richard Mark Gergel
United States District Judge

June 14, 2023
Charleston, South Carolina