# EXHIBIT
# 2

*EXECUTION COPY*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## CHARLESTON DIVISION

|  |  |
|---|---|
| IN RE: AQUEOUS FILM-FORMING FOAMS PRODUCTS LIABILITY LITIGATION | ) ) ) ) ) MDL No. 2:18-mn-2873 |

## CLASS ACTION SETTLEMENT AGREEMENT

This Settlement Agreement (including its Exhibits) is entered into, subject to Preliminary and Final Approval of the Court, as of June 30, 2023 (the "Settlement Date"), by and among (i) Class Representatives, individually and on behalf of the Settlement Class Members, by and through Class Counsel, and (ii) defendants The Chemours Company, The Chemours Company FC, LLC, DuPont de Nemours, Inc., Corteva, Inc., and E.I. DuPont de Nemours and Company n/k/a EIDP, Inc. (each, a "Settling Defendant" and collectively, "Settling Defendants").

## 1.    RECITALS

1.1.    WHEREAS, Class Representatives are Public Water Systems that have filed or unfiled actions against Settling Defendants and other defendants, which filed actions are currently pending in the above-captioned multi-district litigation (as further defined below, the "MDL");[1]

1.2.    WHEREAS, Class Representatives have alleged that they have suffered harm resulting from the presence of PFAS in Drinking Water and that Settling Defendants are liable for damages and other forms of relief to compensate for such harm;

1.3.    WHEREAS, the Parties agree and Class Counsel have a reasonable basis to believe that the Settling Defendants collectively comprise a very small share of MDL defendants' total alleged PFAS-related liabilities, on the order of approximately 3-7%;

1.4.    WHEREAS, in addition to the MDL, certain other litigation is pending against Settling Defendants asserting Released Claims (collectively with the MDL, as further defined below, the "Litigation");

1.5.    WHEREAS, Settling Defendants deny the allegations in the Litigation and all other allegations relating to the Released Claims, and deny that they have any liability to Class Representatives, the Settlement Class, or any Settlement Class Member for any Claims of any kind, and would assert a number of legal and factual defenses against such Claims if

---

[1]    Terms not otherwise defined herein are defined in Section 2 of this Settlement Agreement.

they were litigated to conclusion (including against certification of any purported class for litigation purposes);

1.6.    WHEREAS, Class Counsel, Class Representatives, and Settling Defendants have engaged in extensive, arm's-length negotiations, including negotiations facilitated by a Court-appointed mediator, and have, subject to the Preliminary and Final Approval of the Court as provided for herein, reached an agreement to settle and release all Released Claims, on the terms and conditions set forth below;

1.7.    WHEREAS, Class Representatives and Class Counsel have concluded, after a thorough investigation and after carefully considering the relevant circumstances, including the Claims asserted, the legal and factual defenses thereto, and the applicable law, the burdens, risks, uncertainties, and expense of litigation, as well as the fair, cost-effective, and assured method of resolving the Claims, that it would be in the best interests of Settlement Class Members to enter into this Settlement Agreement in order to avoid the uncertainties of litigation and to assure that the benefits reflected herein are obtained for Settlement Class Members, and further, that Class Representatives and Class Counsel consider the Settlement set forth herein to be fair, reasonable, and adequate and in the best interests of Settlement Class Members; and

1.8.    WHEREAS, Settling Defendants, while continuing to deny any violation, wrongdoing, or liability with respect to any and all Claims asserted in the Litigation and all other Released Claims, either on their part or on the part of any of the Released Persons, have concluded that they will enter into this Settlement Agreement solely to avoid the expense, inconvenience, and distraction of further litigation.

1.9.    NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, IT IS HEREBY AGREED by the Parties, subject to the Preliminary and Final Approval of the Court, as follows:

## 2.    DEFINITIONS

As used in this Settlement Agreement and its Exhibits, the following capitalized terms have the defined meanings set forth below.  Unless the context requires otherwise, (a) words expressed in the masculine include the feminine and gender neutral, and vice versa; (b) the word "will" has the same meaning as the word "shall"; (c) the word "or" is not exclusive; (d) the word "extent" in the phrase "to the extent" means the degree to which a subject or other thing extends, and such phrase does not simply mean "if"; (e) references to any law include all rules, regulations, and sub-regulatory guidance promulgated thereunder; (f) the terms "include," "includes," and "including" are deemed to be followed by "without limitation"; and (g) references to dollars or "$" are to United States dollars.

2.1.    "AFFF" means aqueous film-forming foam.

2.2.    "Allocated Amount" means the amount of the Settlement Funds payable to the Qualifying Settlement Class Member at issue.

2

2.3.    "Allocation Procedures" means the process set forth in Exhibit C to this Settlement Agreement for determining the Allocated Amount payable to individual Qualifying Settlement Class Members from the Settlement Funds.

2.4.    "Business Day" means any day other than a Saturday, Sunday, or legal holiday in the United States of America as defined by Federal Rule of Civil Procedure 6(a)(6).

2.5.    "Claim-Over" has the meaning set forth in Paragraph 12.7.1 of this Settlement Agreement.

2.6.    "Claims" means any past, present or future claims, counterclaims, cross-claims, actions, rights, remedies, causes of action, liabilities, suits, proceedings, demands, damages, losses, payments, judgments, verdicts, debts, dues, sums of money, liens, costs and expenses (including attorneys' fees and costs), accounts, reckonings, bills, covenants, contracts, controversies, agreements, obligations, promises, requests, assessments, charges, disputes, performances, warranties, omissions, grievances, or monetary impositions of any sort, in each case in any forum and on any theory, whether legal, equitable, regulatory, administrative or statutory, arising under federal, state, or local common law, statute, regulation, guidance, ordinance, or principles of equity, filed or unfiled, asserted or unasserted, fixed, contingent, or non-contingent, known or unknown, discovered or undiscovered, suspected or unsuspected, foreseen, foreseeable, unforeseen, or unforeseeable, matured or unmatured, accrued or unaccrued, ripened or unripened, perfected or unperfected, choate or inchoate, developed or undeveloped, liquidated or unliquidated, now recognized by law or that may be created or recognized in the future by statute, regulation, judicial decision or in any other manner, including any of the foregoing for direct damages, indirect damages, consequential damages, incidental damages, punitive or exemplary damages, statutory and other multiple damages or penalties of any kind, or any other form of damages whatsoever, any request for declaratory, injunctive, or equitable relief, strict liability, joint and several liability, restitution, abatement, subrogation, contribution, indemnity, apportionment, disgorgement, reimbursement, attorneys' fees, expert fees, consultant fees, fines, penalties, expenses, costs or any other legal, equitable, civil, administrative, or regulatory remedy whatsoever, and whether direct, representative, derivative, class or individual in nature.

2.7.    "Claims Administrator" shall mean the independent neutral third-party Person selected and Court-appointed pursuant to Paragraph 8.3 of this Settlement Agreement responsible for allocating and distributing the Settlement Funds fairly and equitably amongst all Qualifying Settlement Class Members in accordance with the Allocation Procedures.

2.8.    "Claims Form" means the document or online form, in the form attached as Exhibit D to this Settlement Agreement, that Settlement Class Members are required to file to receive a payment under this Settlement Agreement as specified in Paragraph 11.4 of this Settlement Agreement.

2.9.    "Claims Period" means the period of time Settlement Class Members shall have to submit a Claims Form following the Effective Date.

2.10.    "Class Counsel" means, pending Court appointment, Michael A. London and the law firm of Douglas & London, 59 Maiden Lane, 6th Floor, New York, NY 10038; Scott Summy and the law firm of Baron & Budd, 3102 Oak Lawn Avenue, Suite 1100, Dallas, Texas, 75219; Paul J. Napoli and the law firm of Napoli Shkolnik, 1302 Ponce de Leon, San Juan, Puerto Rico 00907; Elizabeth A. Fegan and the law firm of Fegan Scott LLC, 150 S Wacker Dr., 24th Floor Chicago, Il 60606; and such other counsel as the Court may appoint to represent the Settlement Class.

2.11.    "Class Representatives" means City of Camden Water Services; City of Brockton; City of Sioux Falls; California Water Service Company; City of Delray Beach; Coraopolis Water & Sewer Authority; Verona; Dutchess County Water and Wastewater Authority and Dalton Farms Water System; South Shore; City of Freeport; Martinsburg Municipal Authority; Seaman Cottages; Village of Bridgeport; City of Benwood; Niagara County; City of Pineville; City of Iuka; and City of Amory, or such other or different Persons as may be appointed by the Court as the representatives of the Settlement Class.

2.12.    "CMO No. 3" means Case Management Order No. 3 (Entry No. 72) entered by the Court in the MDL on April 26, 2019.

2.13.    "Code" means the Internal Revenue Code of 1986, as amended.

2.14.    "Community Water System" means a Public Water System that has at least 15 service connections used by year-round residents or regularly serves at least 25 year-round residents.  A "Community Water System" shall include the owner and/or operator of that system.

2.15.    "Court" means the United States District Court for the District of South Carolina.

2.16.    "Drinking Water" means water that has entered or is provided by a Public Water System, including water collected, treated, or stored by a Public Water System for distribution to customers or users.

2.17.    "Effective Date" means the date of Final Judgment.

2.18.    "Entity" means any public entity, agency or office, including any county, municipality, local government, public utility, public corporation, or equivalent of any of the foregoing (or official of any of the foregoing acting in such capacity).

2.19.    "Escrow Agent" means the Person identified in Paragraph 7.1.2 of this Settlement Agreement.

2.20.    "Escrow Agreement" means the agreement by and among Class Counsel, the Settling Defendants, the Escrow Agent, and the Special Master attached as Exhibit H to this Settlement Agreement.

2.21.    "Final Approval" means the Court's entry of the Order Granting Final Approval.

2.22.    "Final Fairness Hearing" means the hearing scheduled by the Court to consider the fairness, reasonableness, and adequacy of the Settlement Agreement under Federal Rule of Civil Procedure 23(e)(2) and to determine whether the Order Granting Final Approval should be entered.  The date of the Final Fairness Hearing shall be set by the Court and communicated to the Settlement Class Members in a Court-approved Notice under Federal Rule of Civil Procedure 23(c)(2).

2.23.    "Final Judgment" means that the Order Granting Final Approval has become final and non-appealable and shall occur on (a) the day following the expiration of the deadline for appealing the entry by the Court of the Order Granting Final Approval (or for appealing any ruling on a timely motion for reconsideration of such Order Granting Final Approval, whichever is later), if no such appeal is filed; or (b) if an appeal of the Order Granting Final Approval is filed (i) the date upon which all appellate courts with jurisdiction (including the United States Supreme Court by petition for certiorari) affirm such Order Granting Final Judgment, or deny any such appeal or petition for certiorari, such that no further appeal is possible, or (ii) if no appeal is filed from the appellate court decision obtained pursuant to clause (i), the day following the expiration of the deadline for filing a petition for certiorari to the United States Supreme Court.

2.24.    "Inactive Water System" means a Public Water System that is not currently active in that it does not actively produce Drinking Water on a regular basis and is not expected to resume operation within the year.  Inactive Water Systems include systems that have gone out of business or been merged into other Drinking Water systems.

2.25.    "IRS" means the U.S. Internal Revenue Service.

2.26.    "Litigation" means collectively the MDL and all other pending litigation brought by or on behalf of a Releasing Person against a Released Person involving Released Claims.

2.27.    "MDL" means collectively all cases filed in or transferred to *In Re:  Aqueous Film-Forming Foams Products Liability Litigation*, MDL No. 2:18-mn-2873 (D.S.C.)

2.28.    "Non-Released Person" means any Person other than the Released Persons.

2.29.    "Non-Transient Non-Community Water System" means a Public Water System that is not a Community Water System and that regularly serves at least 25 of the same people over 6 months per year.  A "Non-Transient Non-Community Water System" shall include the owner and/or operator of that system.

2.30.    "Notice" means the Court-approved form of the notice, substantially similar to the form attached as Exhibit E to this Settlement Agreement, advising Settlement Class Members of their rights with respect to this Settlement Agreement in accordance with Paragraph 9.4 of this Settlement Agreement.

2.31.    "Notice Administrator" means the Person or Persons selected according to Paragraph 8.1 of this Settlement Agreement responsible for developing and administering the Notice Plan for this Settlement.

2.32.   "Notice Plan" means the plan for distribution of Notice, including direct mail and publication, as appropriate, which is set forth in Exhibit G to this Settlement Agreement and subject to Court approval as set forth in Paragraph 9.2.1 of this Settlement Agreement.

2.33.   "Objection" has the meaning set forth in Paragraph 9.6 of this Settlement Agreement.

2.34.   "Order Granting Final Approval" means an order, in the form attached as Exhibit B to this Settlement Agreement, with any modifications acceptable to all Class Representatives and Settling Defendants in their individual discretion, entered by the Court finally certifying the Settlement Class under Federal Rule of Civil Procedure 23(b)(3) for settlement purposes only, approving the terms and conditions of this Settlement Agreement in all respects under Federal Rule of Civil Procedure 23(e), entering judgment dismissing the Litigation as to the Released Persons, and including such other provisions as set forth in Exhibit B and described in Paragraph 9.8 of this Settlement Agreement.

2.35.   "Order Granting Preliminary Approval" means an order, in the form attached as Exhibit A to this Settlement Agreement, with any modifications acceptable to all Class Representatives and Settling Defendants in their individual discretion, entered by the Court preliminarily certifying the Settlement Class under Federal Rule of Civil Procedure 23(b)(3) for settlement purposes only, approving the terms and conditions of this Settlement Agreement, and including such other provisions as set forth in Exhibit A and described in Paragraph 9.2.1 of this Settlement Agreement.

2.36.   "Parties" means Settling Defendants, Class Representatives, and Class Counsel.  To the extent that Settling Defendants or Class Representatives discharge any of their obligations under this Settlement Agreement through agents, the actions of those agents shall be considered the actions of the Parties.

2.37.   "Person" means any type of person or entity, whether natural, legal, private or public.

2.38.   "PFAS" includes, for purposes of this Settlement Agreement only, any fluorinated organic substance that contains one or more carbon atoms on which at least one of the hydrogen substituents has been replaced by a fluorine atom, and which is included in the United States Environmental Protection Agency's list of "Per- and Polyfluoroalkyl Substances" to be monitored in its fifth Unregulated Contaminant Rule, codified at 40 C.F.R. § 141.40(a)(3) or is a per- or polyfluoroalkyl ether-based substance.  Solely for purposes of this Agreement, "PFAS" also includes, in addition to all substances described in the preceding sentence (along with each substance's conjugate acid and any salts, derivatives, isomers, or combinations thereof), perfluorooctanoic acid ("PFOA"), per- and polyfluoroalkyl acids (and any salts thereof), per- and polyfluoroalkyl halides, per- and polyfluoroalkyl alcohols, per- and polyfluoroalkyl olefins, per- and polyfluoroalkane sulfonyl fluorides (including any acids and salts thereof), perfluoroalkyl iodides, per- and polyfluoroalkyl ether-based substances, fluoropolymers, perfluoropolyethers, per- and polyfluoroalkanes, side-chain fluorinated aromatics, per- and polyfluorinated phosphates and phosphonates, per- and polyfluorinated sulfonamides, per- and polyfluorinated urethanes, and chemical precursors and degradation products of all such substances, including fluorinated monomers, polymers and side-chain fluorinated polymers and

metabolites of all such substances, as well as any substance asserted to be PFAS in Litigation.  It is the intention of this agreement that the definition of PFAS be as broad, expansive, and inclusive as possible.

2.39.  "Preliminary Approval" means the Court's entry of the Order Granting Preliminary Approval.

2.40.  "Public Water System" means a system for the provision of water to the public for human consumption through pipes or other constructed conveyances, if such system has at least fifteen (15) service connections or regularly serves at least twenty-five (25) individuals. Such term includes (i) any collection, treatment, storage, and distribution facilities under control of the operator of such system and used primarily in connection with such system, and (ii) any collection or pretreatment storage facilities not under such control which are used primarily in connection with such system.  A "Public Water System" shall include the owner and/or operator of that system and, for purposes of Paragraph 5.1.1 only, shall also include any Entity that is legally responsible for funding (by statute, regulation, other law, or contract), other than a State or the federal government, a Public Water System described in clauses (a) or (b) of such Paragraph or has authority to bring a Claim on behalf of such a Public Water System.  For purposes of this Settlement Agreement, "Public Water System" includes Community Water Systems, Non-Transient Non-Community Water Systems, and Transient Non-Community Water Systems (including, in each case, Inactive Water Systems).

2.41.  "Qualified Settlement Fund" means the qualified settlement fund described in Paragraph 7.1, which shall be established within the meaning of Treasury Regulations § 1.468B-1 for purposes of receiving the net funds for distribution to Settlement Class Members who have been found eligible to participate in the Settlement as agreed upon by the Parties and set forth in this Settlement Agreement.

2.42.  "Qualifying Settlement Class Members" means Settlement Class Members who submit a Claims Form that satisfies the requirements of Paragraph 11.4 and who have been determined by the Claims Administrator, under the oversight of the Special Master, to be eligible under the Allocation Procedures to receive an Allocated Amount.

2.43.  "Released Claims" has the meaning set forth in Paragraph 12.1 of this Settlement Agreement.

2.44.  "Released Persons" means Settling Defendants and (a) all past or present, direct or indirect, predecessors, successors (including successors by merger or acquisition), parents (including intermediate parents and ultimate parents), subsidiaries, affiliated or related companies or business entities, divisions, partnerships, or joint ventures of each Settling Defendant; and (b) all past or present officers, directors, shareholders, employees, partners, trustees, representatives, agents, servants, insurers, attorneys, subrogees, predecessors, successors, or assignees of any of the above.

2.45.  "Releasing Persons" means (a) Settlement Class Members; (b) each of their past, present, or future, direct or indirect, predecessors, successors (including successors by merger or

acquisition), departments, agencies, divisions, districts, parents, subsidiaries, affiliates, boards, owners, or operators; (c) any past, present, or future officer, director, employee, trustee, board member, shareholder, representative, agent, servant, insurer, attorney, subrogee, predecessor, successor, or assignee of any of the above, individually or in their official, corporate, or personal capacity; (d) anyone in privity with or acting on behalf of any of the foregoing, including in a representative or derivative capacity; (e) any Person, other than a State or the federal government, that is legally responsible for funding (by statute, regulation, other law, or contract) a Settlement Class Member or has authority to bring a Claim on behalf of a Settlement Class Member, or to seek recovery for harm to a Public Water System within the Settlement Class or the ability of such system to provide safe or compliant Drinking Water; and (f) any Person, other than a State or the federal government, seeking recovery on behalf of a Settlement Class Member or seeking recovery for harm to a Public Water System within the Settlement Class or the Public Water System's ability to provide safe or compliant Drinking Water.

2.46.  "Request for Exclusion" has the meaning set forth in Paragraph 9.7 of this Settlement Agreement.

2.47.  "Restitution Amount" has the meaning set forth in Paragraph 11.5.1 of this Settlement Agreement.

2.48.  "Settlement" means the settlement of the Released Claims provided for by this Settlement Agreement.

2.49.  "Settlement Agreement" means this document, which describes the Settlement between and among the Parties and the Settlement Class, and all Exhibits attached hereto.

2.50.  "Settlement Amount" means one billion one hundred eighty-five million dollars ($1,185,000,000).

2.51.  "Settlement Class" has the meaning set forth in Paragraph 5.1 of this Settlement Agreement.

2.52.  "Settlement Class Member" means any Public Water System or Entity that is a member of the Settlement Class; provided, however, that the term Settlement Class Member does not include any Public Water System or Entity that would otherwise be a Settlement Class Member but files and serves a timely and valid Request for Exclusion pursuant to Paragraph 9.7 of this Settlement Agreement.

2.53.  "Settlement Date" has the meaning set forth in the preamble to this Settlement Agreement.

2.54.  "Settlement Funds" means the amount of funds in the Qualified Settlement Fund.

2.55.  "Settling Defendants" has the meaning set forth in the preamble to this Settlement Agreement.

2.56.  "Settling Defendants' Counsel" means Wachtell, Lipton, Rosen & Katz, Kirkland & Ellis LLP, and Cravath, Swaine & Moore LLP, or any other law firm so designated in writing by Settling Defendants.

2.57.  "Special Master" means the Person selected and Court-appointed pursuant to Paragraph 8.7 of this Settlement Agreement who is responsible for overseeing the Claims Administrator in reviewing, analyzing, and approving Claims Forms, as well as for allocating and distributing the Settlement Funds to Qualifying Settlement Class Members pursuant to the Allocation Procedures.

2.58.  "State" means any state of the United States, the District of Columbia, the Commonwealth of Puerto Rico, American Samoa, Guam, the U.S. Virgin Islands, and the Commonwealth of the Northern Mariana Islands, including each such Entity's Attorney General's office.

2.59.  "Summary Notice" means the summary notice, in the form attached as Exhibit F to this Settlement Agreement, advising Settlement Class Members of their rights with respect to this Settlement Agreement in accordance with Paragraph 9.4 of this Settlement Agreement.

2.60.  "Taxes" has the meaning set forth in Paragraph 7.2.2 of this Settlement Agreement.

2.61.  "Tax Expenses" has the meaning set forth in Paragraph 7.2.2 of this Settlement Agreement.

2.62.  "Termination Refund" has the meaning set forth in Paragraph 9.9.2 of this Settlement Agreement.

2.63.  "Test Site" means groundwater well, surface water intake, and any other intake point from which the Public Water System draws or collects Drinking Water. For the avoidance of doubt, for each such Test Site, the water to be tested is raw water, *i.e.*, a water sample drawn from a location within the Test Site that is ahead of any treatment.

2.64.  "Testing Methodology" has the meaning set forth in Paragraph 12.6.1 of this Settlement Agreement.

2.65.  "Threshold A" through "Threshold K" shall each refer to a threshold to be set forth in a separate letter agreement between Class Representatives and Settling Defendants to be filed under seal with the Court.

2.66.  "Transient Non-Community Water System" means any Public Water System that is not a Community Water System and that does not regularly serve at least 25 of the same nonresident persons per day for more than six months per year.  A "Transient Non-Community Water System" shall include the owner and/or operator of that system.

2.67.  "UCMR 5" means the U.S. EPA's fifth Unregulated Contaminant Monitoring Rule, published at 86 Fed. Reg. 73131.

2.68.  "UCMR 5 Deadline" means (i) December 31, 2025, or (ii) such later date to which the deadline for completion of sample collection under UCMR 5 may be extended by the U.S. EPA.

2.69.    "U.S. EPA" means the United States Environmental Protection Agency.

2.70.    "Walk-Away Right" has the meaning set forth in Paragraph 10.1 of this Settlement Agreement.

2.71.    "Water Source" means any groundwater well, surface water intake, and any other intake point from which a Public Water System draws or collects Drinking Water.

**3.    SETTLEMENT AGREEMENT OVERVIEW**

3.1.    This Section 3 provides an overview of the Settlement Agreement for convenience only and is subject in all respects to the terms and conditions set forth in the other sections of this Settlement Agreement.

3.2.    **Settlement Consideration**.    Settling Defendants' obligation under this Settlement Agreement, subject to the Walk-Away Right and other terms and conditions as set forth herein, is to pay or cause to be paid a Settlement Amount of one billion one hundred eighty-five million dollars ($1,185,000,000).  In exchange, Settling Defendants shall receive from Settlement Class Members a release, covenant not to sue, and dismissal as provided in this Settlement Agreement.

3.3.    **Operation of the Settlement**.  Class Representatives will seek approval from the Court to certify the Settlement Class under Federal Rule of Civil Procedure 23(b)(3), for settlement purposes only.  Following the Effective Date, Settlement Class Members who wish to receive an Allocated Amount of the Settlement Funds may complete and submit a Claims Form, which is attached as Exhibit D.  The Claims Administrator shall be responsible for the processing of Claims Forms, including evaluation of the Claims Forms and supporting documentation as well as application of the Allocation Procedures, with oversight by the Special Master.  The Claims Form must be submitted to the Claims Administrator on or prior to the conclusion of the Claims Period and must adhere to and follow all other requirements set forth herein and/or by the Special Master, including providing all required information specified on the Claims Form.  The Claims Administrator will distribute the Settlement Funds to Qualifying Settlement Class Members in accordance with the Allocation Procedures in Exhibit C, which are subject to Court approval, and under the oversight of the Special Master.  Settlement Class Members will be bound by the release, covenant not to sue, and dismissal as provided in this Settlement Agreement whether or not they submit a Claims Form or qualify for or receive an Allocated Amount of the Settlement Funds.

**4.    REPRESENTATIONS AND WARRANTIES**

4.1.    **Class Representatives' Representations and Warranties**.    Class Representatives represent and warrant to Settling Defendants as follows:

4.1.1.    Each of the Class Representatives is a Settlement Class Member.

4.1.2.   Each of the Class Representatives has received legal advice from Class Counsel regarding the advisability of entering into this Settlement Agreement and the legal consequences of this Settlement Agreement.

4.1.3.   No portion of any of the Released Claims possessed by any of the Class Representatives and no portion of any relief under this Settlement Agreement to which any of the Class Representatives may be entitled has been assigned, transferred, or conveyed by or for any of the Class Representatives to any other Person, except pursuant to any contingency fee agreement with Class Counsel, or to any lawful grant from a governmental entity, loan or lien.

4.1.4.   None of the Class Representatives is relying on any statement, representation, omission, inducement, or promise by any of the Settling Defendants, their agents, or their representatives, except those expressly stated in this Settlement Agreement.

4.1.5.   Each of the Class Representatives, through Class Counsel, has investigated the law and facts pertaining to the Released Claims and the Settlement.

4.1.6.   Each of the Class Representatives has carefully read, and knows and understands, the full contents of this Settlement Agreement and is voluntarily entering into this Settlement Agreement after having consulted with Class Counsel or other attorneys.

4.1.7.   Each of the Class Representatives has all necessary competence and authority to enter into this Settlement Agreement on its own behalf and on behalf of the Settlement Class, has authorized the execution and performance of this Settlement Agreement, has authorized Class Counsel to sign this Settlement Agreement on its behalf, and has authority to release all Released Claims on behalf of itself and all other Persons who are Releasing Persons by virtue of their relationship or association with it.

4.1.8.   None of the Class Representatives will file a Request for Exclusion, file an Objection, nor otherwise challenge the Settlement.  None of the Class Representatives will solicit, or assist others in soliciting, Settlement Class Members to file a Request for Exclusion, file an Objection, or otherwise challenge the Settlement.

4.2.   **Class Counsel's Representations and Warranties**.  Class Counsel represents and warrants to Settling Defendants as follows:

4.2.1.   Class Counsel believes the Settlement is fair, reasonable, adequate, and beneficial to each Settlement Class Member and that participation in the Settlement would be in the best interests of each Settlement Class Member.

4.2.2.   Because Class Counsel believes that the Settlement is in the best interests of each Settlement Class Member, Class Counsel will not solicit, or assist others in

soliciting, Settlement Class Members to file a Request for Exclusion, file an Objection, or otherwise challenge the Settlement.

4.2.3.  Class Counsel has all necessary authority to enter into and execute this Settlement Agreement on behalf of Class Representatives and Settlement Class Members, including under CMO No. 3.

4.2.4.  Each of the Class Representatives has approved and agreed to be bound by this Settlement Agreement.

4.2.5.  The representations of each Class Representative in Paragraph 4.1 of this Settlement Agreement are true and correct to the best of Class Counsel's knowledge.

4.3.  **Settling Defendants' Representations and Warranties**.  Settling Defendants represent and warrant to Class Representatives as follows:

4.3.1.  Each of the Settling Defendants has received legal advice from its attorneys regarding the advisability of entering into this Settlement Agreement and the legal consequences of this Settlement Agreement.

4.3.2.  None of the Settling Defendants is relying on any statement, representation, omission, inducement, or promise by Class Representatives, Settlement Class Members, or Class Counsel, except those expressly stated in this Settlement Agreement.

4.3.3.  Each of the Settling Defendants, with the assistance of its attorneys, has investigated the law and facts pertaining to the Released Claims and the Settlement.

4.3.4.  Each of the Settling Defendants has carefully read, and knows and understands, the full contents of this Settlement Agreement and is voluntarily entering into this Settlement Agreement after having consulted with its attorneys.

4.3.5.  Each of the Settling Defendants has all necessary authority to enter into this Settlement Agreement, has authorized the execution and performance of this Settlement Agreement, and has authorized the person signing this Settlement Agreement on its behalf to do so.

5.  **CERTIFICATION FOR SETTLEMENT PURPOSES ONLY**

5.1.  **Settlement Class Definition**.  For the sole purpose of effectuating this Settlement, Class Representatives and Settling Defendants agree jointly to request that the Court certify the Settlement Class defined below under Federal Rule of Civil Procedure 23(b)(3):

5.1.1.  The Settlement Class shall consist of each of the following:

(a)    All Public Water Systems in the United States of America that draw or otherwise collect from any Water Source that, on or before the Settlement Date, was tested or otherwise analyzed for PFAS and found to contain any PFAS at any level; and

(b)    All Public Water Systems in the United States of America that, as of the Settlement Date, are (i) subject to the monitoring rules set forth in UCMR 5 (*i.e.*, "large" systems serving more than 10,000 people and "small" systems serving between 3,300 and 10,000 people), or (ii) required under applicable federal or state law to test or otherwise analyze any of their Water Sources or the water they provide for PFAS before the UCMR 5 Deadline.

5.1.2.    The following are excluded from the Settlement Class:

(a)    Any Public Water System that is located in Bladen, Brunswick, Columbus, Cumberland, New Hanover, Pender, or Robeson counties in North Carolina; provided, however, that any such system listed in this Paragraph 5.1.2(a) otherwise falling within clauses (a) or (b) of Paragraph 5.1.1 will be included within the Settlement Class if it so requests.

(b)    Any Public Water System that is owned and operated by a State government and cannot sue or be sued in its own name, which systems within Paragraph 5.1.1(a) or 5.1.1(b)(i) are listed in Exhibit I to this Settlement Agreement.

(c)    Any Public Water System that is owned and operated by the federal government and cannot sue or be sued in its own name, which systems within Paragraph 5.1.1(a) or 5.1.1(b)(i) are listed in Exhibit J to this Settlement Agreement.

(d)    In the event that a Public Water System not listed on Exhibit I or Exhibit J, including a Public Water System within Paragraph 5.1.1(b)(ii), claims that it is owned and operated by a State government or the federal government and cannot sue or be sued in its own name, the Parties will consider that claim as provided in Paragraph 5.1.3.

(e)    Any privately owned well or surface water system that is not owned by, used by, or otherwise part of, and does not draw water from, a Public Water System within the Settlement Class.

5.1.3.    In the event that the Parties agree that a Public Water System, including any within Paragraph 5.1.1(b)(ii), that is owned and operated by a State government or the federal government and cannot sue or be sued in its own name was omitted from Exhibit I or Exhibit J, the Parties may, at any time before Final Approval, amend such Exhibit to add such Public Water System. The Parties agree that they will act reasonably in considering any claim of such omission.

## 6.    CONSIDERATION

6.1.    **Settlement Amount**.  Within ten (10) Business Days after Preliminary Approval, Settling Defendants shall pay or cause to be paid the Settlement Amount in full, in accordance with the payment terms set forth in Paragraph 6.2.

6.2.    **Payment Terms**.

6.2.1.    Settling Defendants shall wire transfer the Settlement Amount to the Qualified Settlement Fund.  If the Qualified Settlement Fund has not been established pursuant to an order of, or approved by, the Court (including approval and execution of the Escrow Agreement) by the deadline for payment of the Settlement Amount, Settling Defendants shall not be obligated to pay such amount until seven (7) Business Days after the Qualified Settlement Fund is established pursuant to an order of, or approved by, the Court (including approval and execution of the Escrow Agreement).  In no event shall any Settling Defendant have any liability whatsoever with respect to the Settlement Amount once it is paid to the Qualified Settlement Fund in accordance with this Settlement Agreement.  The Escrow Agent shall provide Settling Defendants wire transfer instructions and any other documentation reasonably necessary to facilitate payment of the Settlement Amount to the Qualified Settlement Fund, which shall be delivered at least seven (7) Business Days before the deadline for payment specified herein.  If such wire transfer instructions and documentation have not been provided to Settling Defendants by the date seven (7) Business Days before the deadline for payment specified herein, Settling Defendants shall not be obligated to pay such amount until seven (7) Business Days after receiving the wire transfer instructions and documentation.

6.2.2.    Until the Effective Date, the Settlement Funds shall be used solely to fund the provision of Notice pursuant to the Notice Plan and the reasonable fees, costs, and expenses of the Notice Administrator incurred in connection therewith, the payment of Taxes imposed on the Qualified Settlement Fund, as well as the reasonable costs, fees, and expenses of the Escrow Agent and the Special Master.  The Escrow Agent shall disburse funds for Notice costs upon request by the Parties.  The Special Master shall keep a record of all such expenditures, shall report them periodically to Class Counsel and the Settling Defendants until the Effective Date, and shall certify to the Parties in each such report that the Settlement Funds were used only for purposes specified in the preceding sentence.  From and after the Effective Date, the Settlement Funds shall be allocated and used only as specified in Paragraphs 6.2.3, 11.1, 11.2 and 11.5.  All unused Settlement Funds, including all interest earned thereon, shall be refunded to Settling Defendants should a Termination Refund become payable under Paragraph 9.9.2, 9.10.2, or 10.4 of this Settlement Agreement.

6.2.3.    The "holdback assessment" required by CMO No. 3 shall be assessed upon the Effective Date, before any portion of the Settlement Funds is distributed to Settlement Class Members or Class Counsel.  Such Order requires a holdback

assessment of 6% of the amount of any settlement to be allotted for common benefit attorneys' fees and 3% of the amount of any settlement to be allotted for reimbursement of permissible common benefit costs and expenses. If accounts designated to receive such funds have not been established by the Effective Date, the Escrow Agent shall pay the applicable amount into such accounts by no later than ten (10) Business Days after the Court establishes such accounts.

6.3.    **No Additional Payment Obligations**. Paragraph 6.1 sets forth in full Settling Defendants' payment obligations under this Settlement Agreement. In no event shall the Settling Defendants be required to pay any amounts under this Settlement Agreement above the Settlement Amount. Any fees, costs, expenses, or incentive awards payable under this Settlement Agreement (including any holdback assessment(s)) shall be paid out of, and shall not be in addition to, the Settlement Amount.

## 7.    QUALIFIED SETTLEMENT FUND

7.1.    **Establishment of Qualified Settlement Fund**.

7.1.1.    The motion seeking an Order Granting Preliminary Approval described in Paragraph 9.2.1 shall seek (1) the approval of the Escrow Agreement, (2) the authorization that the escrow account established pursuant to the Escrow Agreement be established as a "qualified settlement fund" within the meaning of Treasury Regulations § 1.468B-1, and (3) the appointment of the Special Master as the "administrator" of the Qualified Settlement Fund within the meaning of Treasury Regulations § 1.468B-2(k)(3).

7.1.2.    Class Counsel and Counsel for Settling Defendants will jointly recommend the following Person to serve as Escrow Agent for the Qualified Settlement Fund, who shall be subject to appointment by the Court in the Order Granting Preliminary Approval:

**Robyn Griffin, The Huntington National Bank, One Rockefeller Center, 10th Floor, New York, NY 10020.**

7.1.3.    Any successor to the initial Escrow Agent shall be subject to appointment by the Court, with the consent of all Parties, shall fulfill the same functions from and after the date of succession, and shall be bound by the determinations made by the predecessor(s) to date.

7.1.4.    Upon Court approval of the proposed Escrow Agreement, appointment of the Escrow Agent, and authorization that the Qualified Settlement Fund established pursuant to the Escrow Agreement be established as a qualified settlement fund under § 1.468B-1 of the Treasury Regulations promulgated under IRC Section 468B, Class Counsel, Settling Defendants, the Escrow Agent, and the Special Master will execute the Escrow Agreement approved by the Court, thereby creating the Qualified Settlement Fund.

7.2.    **Tax Treatment of Settlement Fund**.

7.2.1.    The Qualified Settlement Fund will be structured and operated in a manner such that it qualifies as a "qualified settlement fund" within the meaning of Treasury Regulations § 1.468B-1 from the earliest date possible, and the Special Master, Settling Defendants, and all other relevant parties shall file any "relation-back election" (within the meaning of Treasury Regulations § 1.468B-1(j)(2)) required to treat the Qualified Settlement Fund as a qualified settlement fund from the earliest date possible. The "taxable year" of the Qualified Settlement Fund shall be the "calendar year" as such terms are defined in Section 441 of the Code. The Qualified Settlement Fund shall use the accrual method of accounting as defined in Section 446(c) of the Code.

7.2.2.    The Special Master shall be authorized to take any action that it determines necessary to maintain the status of the Qualified Settlement Fund as a "qualified settlement fund" within the meaning of Treasury Regulations § 1.468B-1. The Special Master shall (a) obtain a taxpayer identification number for the Qualified Settlement Fund, (b) prepare and file, or cause to be prepared and filed, all U.S. federal, state, local, and foreign Tax returns (as applicable) required to be filed for the Qualified Settlement Fund, consistent with Treasury Regulations § 1.468B-2(k) and corresponding or similar provisions of state, local, or foreign law, and in accordance with the Settlement Agreement and the Escrow Agreement, (c) prepare and file, or cause to be prepared and filed, any other statement, return, or disclosure relating to the Qualified Settlement Fund that is required by any governmental authority, including but not limited to information reporting as described in Treasury Regulations § 1.468B-2(l) (or any corresponding or similar provision of state, local, or foreign law), (d) obtain from Settling Defendants a statement required pursuant to Treasury Regulations § 1.468B-3(e) no later than February 15th of the year following the calendar year in which Settling Defendants transfer the Settlement Amount to the Qualified Settlement Fund, and (e) be responsible for responding to any questions from, or audits regarding Taxes by, the IRS or any state or local Tax authority. The Special Master also will be responsible for ensuring the Qualified Settlement Fund complies with all withholding requirements (including by instructing the Escrow Agent to withhold any required amounts) with respect to payments made by the Qualified Settlement Fund, as well as paying any associated interest and penalties. Any amounts deducted or withheld by the Escrow Agent (or any other withholding agent) with respect to payments made by the Qualified Settlement Fund shall be treated for all purposes as though such amounts had been distributed to the Person in respect of which such deduction or withholding was made. The Special Master shall direct the Escrow Agent to timely pay from the Qualified Settlement Fund any taxes (including but not limited to withholding taxes with respect to distributions from the Qualified Settlement Fund), interest, and penalties required to be paid to the IRS or any other governmental authority by the Qualified Settlement Fund (collectively, "Taxes") and any reasonable out-of-pocket expenses incurred to (i) cause any Tax returns and information reports to be prepared and filed, (ii) respond to any questions from, or represent the

Qualified Settlement Fund in any audit or similar proceeding regarding Taxes by, the IRS or any state or local governmental authority or (iii) otherwise satisfy any Tax compliance obligation of the Qualified Settlement Fund (such Taxes and other expenses, collectively, the "Tax Expenses"). In addition, the Special Master shall timely file with the IRS the information returns and shall timely provide to Settling Defendants the written statements, in each case, collected from Qualifying Settlement Class Members pursuant to Paragraph 11.6.2. Settling Defendants shall provide the Special Master with the statement required pursuant to Treasury Regulations § 1.468B-3(e) no later than February 15th of the year following the calendar year in which Settling Defendants transfer the Settlement Amount to the Qualified Settlement Fund.

7.2.3.    All Taxes arising with respect to the income earned by the Qualified Settlement Fund, including any Taxes or Tax detriments that may be imposed upon Settling Defendants, their insurers, or Settling Defendants' Counsel with respect to any income earned by the Qualified Settlement Fund for any period during which the Qualified Settlement Fund does not qualify as a "qualified settlement fund" for federal or state income Tax purposes and all Tax Expenses shall be paid out of the Qualified Settlement Fund. In all events, none of Settling Defendants, Class Representatives, Settling Defendants' insurers, Settling Defendants' Counsel, or Class Counsel shall have any liability or responsibility for Taxes or Tax Expenses. Taxes and Tax Expenses shall be treated as, and considered to be, a cost of administration of the Qualified Settlement Fund and shall be timely paid by the Special Master out of the Qualified Settlement Fund without prior order from the Court, and none of Settling Defendants, Class Representatives, their insurers, Settling Defendants' Counsel, or Class Counsel shall be responsible or have any liability therefor.

7.2.4.    Settling Defendants make no representations to Settlement Class Members or any other Person concerning any Tax consequences, Tax loss, or Tax treatment of any allocation or distribution of funds to Settlement Class Members or any other Person pursuant to this Settlement Agreement, the Settlement, or the Allocation Procedures. Settlement Class Members shall have no liability to Settling Defendants with respect to any Tax consequences, Tax loss, or Tax treatment of any amounts paid or received in accordance with the terms of this Settlement Agreement irrespective of how amounts are spent by Settlement Class Members.

## 8.    ADMINISTRATION

8.1.    **Selection of Notice Administrator**. Class Counsel shall nominate, subject to the consent of Settling Defendants, the following Person to serve as Notice Administrator who shall be subject to appointment by the Court in the Order Granting Preliminary Approval:

**Steven Weisbrot, Angeion Group, 1650 Arch Street, Suite 2210, Philadelphia, PA 19103**

8.2. **Requirements for Notice Administrator**:

    8.2.1.    The Notice Administrator may not be a Person who has acted as counsel, or otherwise represented a party, in claims relating to AFFF or PFAS.

    8.2.2.    The Notice Administrator shall have the authority to perform all actions consistent with the terms of this Settlement Agreement that the Notice Administrator deems to be reasonably necessary to effectuate the Notice Plan, which is subject to Court approval as provided in Paragraph 9.2.1 of this Settlement Agreement. Subject to the Court's approval, the Notice Administrator may retain any Person that the Notice Administrator deems to be reasonably necessary to provide assistance in developing and administering the Notice Plan.

    8.2.3.    Any successor to the initial Notice Administrator shall be subject to appointment by the Court, with the consent of all Parties, shall fulfill the same functions from and after the date of succession, and shall be bound by the determinations made by the predecessor(s) to date.

    8.2.4.    The Notice Administrator shall have no authority to alter in any way the Parties' or Settlement Class Members' rights and obligations under the Settlement Agreement.

    8.2.5.    Settling Defendants, Settling Defendants' Counsel, and Released Persons shall have no involvement with or responsibility for supervising the Notice Administrator and are not subject to the authority of the Notice Administrator.

    8.2.6.    All fees, costs, and expenses incurred in the administration and/or work by the Notice Administrator, including fees, costs, and expenses of the Notice Administrator, as well as the costs of distributing the Notice, shall be paid from the Settlement Funds. Settling Defendants shall have no obligation to pay any such fees, costs, and expenses other than the Settlement Amount described in Paragraph 6.1.

8.3. **Selection of Claims Administrator**. Class Counsel shall propose the following Person, subject to the consent of Settling Defendants, to serve as Claims Administrator who shall be subject to appointment by the Court in the Order Granting Preliminary Approval.

        **Dustin Mire, Eisner Advisory Group,[2] 8550 United Plaza Boulevard, Suite #1001, Baton Rouge, LA 70809**

8.4. The Claims Administrator's role generally shall include administration of the proposed Settlement, including reviewing, analyzing, and approving Claims Forms, including all supporting documentation as well as determining any Qualifying Settlement Class

---

[2]    Eisner Advisory Group includes Eisner Advisory Group LLC and its subsidiary entities that provide professional services, including EAC Gulf Coast, LLC.

Member's Allocated Amount and overseeing distribution of the Settlement Funds pursuant to the Allocation Procedures set forth in Exhibit C.

8.5.    The Claims Administrator may not be a Person who has acted as counsel, or otherwise represented a party, in claims relating to AFFF or PFAS.

8.6.    All fees, costs, and expenses incurred in the administration and/or work by the Claims Administrator, including fees, costs, and expenses of the Claims Administrator, shall be paid from the Settlement Funds.  Settling Defendants shall have no obligation to pay any such fees, costs, and expenses other than their obligation to pay the Settlement Amount as described in Paragraph 6.1.

8.7.    **Selection of Special Master**.  Class Counsel shall nominate the following Person, subject to the consent of Settling Defendants, to serve as Special Master who shall be subject to appointment by the Court in the Order Granting Preliminary Approval:

**Matthew Garretson, Wolf/Garretson LLC, P.O. Box 2806, Park City, UT 84060**

8.8.    The Special Master's role generally shall include overseeing the Settlement, including overseeing the work of the Claims Administrator and Notice Administrator, and in providing quasi-judicial intervention if and/or when necessary, such as for determinations (if any) related to appeals of Allocated Amounts.  The Special Master's decisions with respect to Allocated Amounts shall be final, binding and non-appealable on all Parties.

8.9.    The Special Master may not be a Person who has acted as counsel, or otherwise represented a party, in claims relating to AFFF or PFAS.

8.10.    The Special Master shall have the authority to perform all actions consistent with the terms of this Settlement Agreement that the Special Master deems to be reasonably necessary for the efficient and timely administration of the Settlement.  Subject to the Court's approval, the Special Master may retain any Person that the Special Master deems to be reasonably necessary to provide assistance in administering the Settlement.

8.11.    Any successor to the initial Special Master shall be subject to appointment by the Court, with the consent of all Parties, shall fulfill the same functions from and after the date of succession and shall be bound by the determinations made by the predecessor(s) to date.

8.12.    The Special Master shall have no authority to alter in any way the Parties' rights and obligations under the Settlement Agreement absent express and written agreement by the Parties, other than overseeing the Claims Administrator's process of reviewing, analyzing, and approving Claims Forms and determining any Settlement Class Member's Allocated Amount pursuant to the Allocation Procedures set forth in Exhibit C.

8.13.    Settling Defendants, Settling Defendants' Counsel, and Released Persons shall have no involvement with or responsibility for supervising the Special Master and are not subject to the authority of the Special Master.

8.14.   All fees, costs, and expenses incurred in the administration and/or work by the Special Master, including fees, costs, and expenses of the Special Master, shall be paid from the Settlement Funds.  Settling Defendants shall have no obligation to pay any such fees, costs, and expenses other than their obligation to pay the Settlement Amount as described in Paragraph 6.1.

8.15.   **Qualified Settlement Fund Administration**.  All fees, costs, and expenses incurred in the administration of the Qualified Settlement Fund, including fees, costs, and expenses of the Escrow Agent or the Special Master, shall be paid from the Settlement Funds.  Settling Defendants shall have no obligation to pay any such fees, costs, and expenses other than their obligation to pay the Settlement Amount as described in Paragraph 6.1.

## 9.    APPROVAL AND NOTICE

9.1.    **Approval and Effectiveness**.

9.1.1.   It is a condition to the Settlement that (a) within a reasonable time period after the Settlement Date, the Court approve and enter the Order Granting Preliminary Approval, in the form of Exhibit A, with any modifications acceptable to all Class Representatives and Settling Defendants in their individual discretion, and (b) the Order Granting Preliminary Approval remain in full force and effect until entry of the Order Granting Final Approval.

9.1.2.   It is a condition to the Settlement that (a) within a reasonable time period after the Order Granting Preliminary Approval, the Court approve and enter the Order Granting Final Approval, in the form of Exhibit B, with any modifications acceptable to all Class Representatives and Settling Defendants in their individual discretion, and (b) the Order Granting Final Approval remain in full force and effect until it reaches Final Judgment.

9.1.3.   It is a condition to the Settlement that the Order Granting Final Approval not be reversed, vacated, or modified on appeal, a motion for reconsideration, or other review and that Final Judgment be reached.

9.1.4.   The Parties agree that the Settlement is not final and enforceable until the Effective Date, except as to any provisions that the Settlement Agreement provides shall occur prior to the Effective Date.  Each of the Order Granting Preliminary Approval and the Order Granting Final Approval shall be enforceable upon entry in accordance with their terms.

9.2.    **Preliminary Approval**.

9.2.1.   Within ten (10) calendar days after the Settlement Date, Class Counsel shall submit to the Court a motion, which shall be consistent with this Settlement Agreement and which Settling Defendants shall have a reasonable right to review but agree not to oppose, seeking entry of the Order Granting Preliminary Approval in the form of Exhibit A, with any modifications acceptable to all Class Representatives and Settling Defendants in their individual discretion.  The

motion shall seek (a) preliminary certification, for settlement purposes only, of the Settlement Class; (b) Preliminary Approval of the Settlement; (c) approval of the form of Notice (attached as Exhibit E); (d) approval of the Notice Plan (attached as Exhibit G); (e) appointment of Class Counsel; (f) appointment of Class Representatives; (g) appointment of the Notice Administrator; (h) appointment of the Claims Administrator; (i) appointment of the Special Master; (j) appointment of the Escrow Agent; (k) approval of the Escrow Agreement; (l) establishment of the Qualified Settlement Fund; (m) scheduling of the Final Fairness Hearing, and (n) a stay of all proceedings brought by Releasing Persons in the MDL and in other Litigation in any forum as to Settling Defendants, and an injunction against the filing of any new such proceedings.

9.2.2.   The Parties agree to take all actions reasonably necessary to obtain Preliminary Approval; provided, however, that no Party shall be required to agree to any modification of the Order Granting Preliminary Approval attached as Exhibit A, the Notice attached as Exhibit E, or any other attached Exhibits.

9.3.   **Stay of Proceedings**.  Class Representatives agree to stay all proceedings in the MDL as to Settling Defendants, and any other Litigation brought by a Class Representative in any other forum, from the Settlement Date until the earlier of (a) the Effective Date, or (b) termination of this Settlement Agreement in accordance with its terms.  The foregoing stay shall be in addition to the stay provided for in the Order Granting Preliminary Approval attached as Exhibit A.

9.4.   **Notice**.  Notice of the Settlement shall be given as soon as practicable after Preliminary Approval; provided, however, that the Notice process shall commence no later than fourteen (14) calendar days following Preliminary Approval.  Notice shall be provided by the Notice Administrator to Settlement Class Members by first-class U.S. mail where available, and Summary Notice shall be provided by publication elsewhere to meet the requirements of Federal Rule of Civil Procedure 23.  The Notice and Summary Notice are attached as Exhibits E and F to this Settlement Agreement, and any modifications to them must be acceptable to all Class Representatives and Settling Defendants in their individual discretion.

9.5.   **CAFA Notice**.  Pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, Settling Defendants shall serve notice of the Settlement on the appropriate federal and state officials no later than ten (10) calendar days after the filing of this Settlement Agreement with the Court.

9.6.   **Objections to Settlement**.  Any Settlement Class Member who wishes to object to the Settlement or to an award of fees or expenses to Class Counsel must file a written and signed statement designated "Objection" with the Clerk of the Court and provide service on all Parties in accordance with Federal Rule of Civil Procedure 5.

9.6.1.    All Objections must certify, under penalty of perjury in accordance with 28 U.S.C. § 1746, that the filer has been legally authorized to object on behalf of the Settlement Class Member and must provide:

    9.6.1.1.    an affidavit or other proof of the Settlement Class Member's standing;

    9.6.1.2.    the name, address, telephone and facsimile number and email address (if available) of the filer and the Settlement Class Member;

    9.6.1.3.    the name, address, telephone, and facsimile number and email address (if available) of any counsel representing the Settlement Class Member;

    9.6.1.4.    all objections asserted by the Settlement Class Member and the specific reason(s) for each objection, including all legal support and evidence the Settlement Class Member wishes to bring to the Court's attention;

    9.6.1.5.    an indication as to whether the Settlement Class Member wishes to appear at the Final Fairness Hearing; and

    9.6.1.6.    the identity of all witnesses the Settlement Class Member may call to testify.

9.6.2.    All objections must be filed and served on such schedule as the Court may direct. In seeking Preliminary Approval, the Parties will request that the deadline for submission of Objections shall be set on a date no less than sixty (60) calendar days after commencement of dissemination of the Notice. Objections submitted by any Settlement Class Member to incorrect locations shall not be valid.

9.6.3.    Settlement Class Members may object either on their own or through any attorney hired at their own expense. If a Settlement Class Member is represented by counsel, the attorney must file a notice of appearance with the Clerk of Court no later than the date ordered by the Court for the filing of Objections and serve such notice on all Parties in accordance with Federal Rule of Civil Procedure 5 within the same time period.

9.6.4.    Any Settlement Class Member who fully complies with the provisions of this Paragraph 9.6 may, in the Court's discretion, appear at the Final Fairness Hearing to object to the Settlement or to the award of fees and costs to Class Counsel. Any Settlement Class Member who fails to comply with the provisions of this Paragraph 9.6 shall waive and forfeit any and all objections the Settlement Class Member may have asserted.

9.6.5.    The assertion of an objection under this Paragraph does not operate to opt the Person asserting it out of, or otherwise exclude that Person from, the Settlement Class. A Person within the Settlement Class can opt out of the Settlement Class and Settlement only by complying with the provisions of Paragraph 9.7.

9.7. **Requests for Exclusion**. Any Person within the Settlement Class who wishes to opt out of the Settlement Class and Settlement must file a written and signed statement entitled "Request for Exclusion" with the Notice Administrator and provide service on all Parties in accordance with Federal Rule of Civil Procedure 5.

9.7.1. The Request for Exclusion must certify, under penalty of perjury in accordance with 28 U.S.C. § 1746, that the filer has been legally authorized to exclude the Person from the Settlement and must:

9.7.1.1. provide an affidavit or other proof of the standing of the Person requesting exclusion and why they would be a Settlement Class Member absent the Request for Exclusion;

9.7.1.2. provide the filer's name, address, telephone and facsimile number and email address (if available);

9.7.1.3. provide the name, address, telephone number, and e-mail address (if available) of the Person whose exclusion is requested; and

9.7.1.4. be received by the Notice Administrator no later than the date designated for such purpose in the Notice.

9.7.2. All Requests for Exclusion must be filed and served on such schedule as the Court may direct. In seeking Preliminary Approval, the Parties will request that the deadline for submission of Requests for Exclusion shall be set on a date no less than sixty (60) calendar days after commencement of dissemination of the Notice. Requests for Exclusion submitted by any Settlement Class Member to incorrect locations shall not be valid.

9.7.3. Any Person that submits a timely and valid Request for Exclusion shall not (i) be bound by any orders or judgments effecting the Settlement; (ii) be entitled to any of the relief or other benefits provided under this Settlement Agreement; (iii) gain any rights by virtue of this Settlement Agreement; or (iv) be entitled to submit an Objection.

9.7.4. Any Settlement Class Member that does not submit a timely and valid Request for Exclusion submits to the jurisdiction of the Court and, unless the Settlement Class Member submits an Objection that complies with the provisions of Paragraph 9.6, shall waive and forfeit any and all objections the Settlement Class Member may have asserted.

9.7.5. No "mass," "class," "group" or otherwise combined Request for Exclusion shall be valid, and no Person within the Settlement Class may submit a Request for Exclusion on behalf of any other Settlement Class Member.

9.8. **Final Approval**.

    9.8.1.    At the Final Fairness Hearing, the Parties will request that the Court:  (a) enter the Order Granting Final Approval in the form attached as Exhibit B to this Settlement Agreement, with any modifications acceptable to all Class Representatives and Settling Defendants in their individual discretion; (b) conclusively certify the Settlement Class; (c) approve the Settlement Agreement as final, fair, reasonable, adequate, and binding on all Settlement Class Members; (d) enter judgment dismissing the Released Claims as set forth in this Settlement Agreement; and (e) permanently enjoin any Settlement Class Member from asserting or pursuing any Released Claim against any Released Person in any forum.

    9.8.2.    Pursuant to Federal Rule of Civil Procedure 23(h), Class Counsel may apply for a fee consisting of a portion of the Settlement Funds.  That application shall be filed not less than 20 Business Days before Objections are due pursuant to Paragraph 9.6.

    9.8.3.    The Parties agree to take all actions reasonably necessary to obtain Final Approval; provided, however, that no Party shall be required to agree to any modification of the Order Granting Final Approval attached as Exhibit B.

9.9. **Effect of Failure of Approval**.  If the Court declines or fails to enter an Order Granting Preliminary Approval or an Order Granting Final Approval in accordance with and in the reasonable time specified in Paragraphs 9.1.1 and 9.1.2, the Parties shall proceed as follows:

    9.9.1.    If the Court declines to or does not enter the Order Granting Preliminary Approval or the Order Granting Final Approval in accordance with Paragraphs 9.1.1 and 9.1.2, the Litigation against the Released Persons will resume unless within thirty (30) calendar days of such event the Parties mutually agree in writing to either (a) seek reconsideration or appellate review of any decision denying entry of such order; (b) attempt to renegotiate the settlement and seek Court approval of the renegotiated settlement; and/or (c) comply with other guidance or directives the Court has provided.

    9.9.2.    If the Litigation against the Released Persons resumes pursuant to Paragraph 9.9.1, or the Parties seek reconsideration and/or appellate review of any decision denying entry of the Order Granting Preliminary Approval or Order Granting Final Approval and such reconsideration and/or appellate review is denied:  (a) the Escrow Agent shall, within seven (7) calendar days of receiving written notice of such resumption or the denial of further reconsideration or appellate review, repay to Settling Defendants any unused portion of the Settlement Funds, including interest accrued thereon, as of the date on which notice is received (the "Termination Refund"), and (b) this Settlement Agreement shall terminate upon payment of the Termination Refund.

9.9.3.    If, for any reason, the Settlement is not approved by the Court, then no class will be deemed certified as a result of this Settlement Agreement, and the Litigation against the Released Persons for all purposes will revert to its status as of the Settlement Date. In such event, Settling Defendants will not be deemed to have consented to certification of any class, and will retain all rights to oppose, appeal, or otherwise challenge, legally or procedurally, class certification or any other issue in this case. Likewise, if the Settlement is not approved by the Court, then the participation in the Settlement by any Class Representative or Settlement Class Member cannot be raised as a defense to their Claims.

9.10.  **Effect of Failure of Order Granting Final Approval to Reach Final Judgment**. If the Order Granting Final Approval does not reach Final Judgment, the Parties shall proceed as follows:

9.10.1.  If the Order Granting Final Approval does not reach Final Judgment because it is reversed, vacated, or modified on appeal, a motion for reconsideration, or other review, the Litigation against the Released Persons will resume within thirty (30) calendar days unless the Parties mutually agree in writing to either (a) seek further reconsideration or appellate review of such decision (including in the U.S. Supreme Court by petition for writ of certiorari); and/or (b) attempt to renegotiate the settlement and seek Court approval of the renegotiated settlement.

9.10.2.  If the Litigation against the Released Persons resumes pursuant to Paragraph 9.10.1, or the Parties seek further reconsideration and/or appellate or other review of the decision reversing, vacating, or materially modifying the Order Granting Final Approval and such further reconsideration and/or appellate or other review is denied: (a) the Escrow Agent shall, within seven (7) calendar days of receiving written notice of such resumption repay to Settling Defendants the Termination Refund, and (b) this Settlement Agreement shall terminate upon payment of the Termination Refund.

9.10.3.  If, for any reason, the Order Granting Final Approval does not reach Final Judgment, then no class will be deemed certified as a result of this Settlement Agreement or the Order Granting Final Approval, and the Litigation against the Released Persons for all purposes will revert to its status as of the Settlement Date. In such event, Settling Defendants will not be deemed to have consented to certification of any class, and will retain all rights to oppose, appeal, or otherwise challenge, legally or procedurally, class certification or any other issue in this case. Likewise, if the Settlement does not reach Final Judgment, then the participation in the Settlement by any Class Representative or Settlement Class Member cannot be raised as a defense to their claims.

## 10.    SETTLING DEFENDANTS' WALK-AWAY RIGHT

10.1.  **Walk-Away Right**. The Settling Defendants shall have the option, in their sole discretion, to terminate this Settlement Agreement (the "Walk-Away Right") if any one of the following conditions is satisfied:

10.1.1.  **Very Large Community Systems**. With respect to Community Water Systems that serve more than 500,000 people, timely and valid Requests for Exclusion from the Settlement Class are received from:

(a)     More than Threshold A of such Community Water Systems that are either (x) identified in the U.S. EPA Safe Drinking Water Information System ("SDWIS") as having a surface water source, or (y) identified in SDWIS as having only groundwater source and do not meet the criteria set forth in Paragraph 10.1.1(b); or

(b)     More than Threshold B of such Community Water Systems (x) that are identified in SDWIS as having only groundwater source, and (y) have tested all of their Test Sites for PFAS under the Testing Methodology (as defined in Paragraph 12.6) before the deadline for submission of Requests for Exclusion and detected PFAS in four or fewer Test Sites.

10.1.2.  **Community Water Systems with Current Detections.** With respect to Community Water Systems described in Paragraph 5.1.1(a) of this Settlement Agreement (other than those serving more than 500,000 people), timely and valid Requests for Exclusion from the Settlement Class are received from:

(a)     More than Threshold C of such Community Water Systems that serve 100,001 to 500,000 people; or

(b)     More than Threshold D of such Community Water Systems that serve 10,001 to 100,000 people; or

(c)     More than Threshold E of such Community Water Systems that serve 3,300 to 10,000 people; or

(d)     More than Threshold F of such Community Water Systems that serve less than 3,300 people; or

(e)     More than Threshold G of the subset of such Community Water Systems that are a plaintiff as of the Settlement Date in any Litigation against any of the Settling Defendants.

10.1.3.  **Other Community Water Systems**. With respect to Community Water Systems described in Paragraph 5.1.1(b) of this Settlement Agreement that are not also within Paragraph 5.1.1(a) (other than those serving more than 500,000 people), timely and valid Requests for Exclusion from the Settlement Class are received from:

(a)     More than Threshold H of such Community Water Systems that serve 100,001 to 500,000 people; or

(b)     More than Threshold I of such Community Water Systems that serve 10,001 to 100,000 people; or

       (c)      More than Threshold J of such Community Water Systems that serve 3,300 to 10,000 people.

10.1.4.    **Transient Non-Community Water Systems and Non-Transient Non-Community Water Systems.** With respect to Transient Non-Community Water Systems and Non-Transient Non-Community Water Systems that are part of the Settlement Class (under either Paragraph 5.1.1(a) or (b)), timely and valid Requests for Exclusion from the Settlement Class are received from more than Threshold K of such Transient Non-Community Water Systems and Non-Transient Non-Community Water Systems, in the aggregate.

10.2.    For purposes of any of the conditions in Paragraph 10.1:

10.2.1.    percentages will be calculated using as the denominator the number of Public Water Systems in each category listed on Annex 1 to the separate letter agreement between Class Representatives and the Settling Defendants to be filed under seal with the Court; and

10.2.2.    a Public Water System otherwise within the Settlement Class will be counted towards the applicable threshold specified above if a timely and valid Request for Exclusion from the Settlement Class is received from either (a) the Public Water System itself or (b) from an Entity that is legally responsible for funding (by statute, regulation, other law, or contract) a Public Water System described in clauses (a) or (b) of Paragraph 5.1.1 or that has authority to bring a Claim on behalf of such a Public Water System.

10.3.    **Time Period to Exercise Walk-Away Right**.  Settling Defendants will have access to the Requests for Exclusion as they are served on the Notice Administrator and the Parties. Settling Defendants will have fourteen (14) Business Days after the deadline for submitting Requests for Exclusion to provide notice to Class Counsel of the exercise of the Walk-Away Right if any of the conditions in Paragraph 10.1 is satisfied.  If the Settling Defendants do not collectively provide notice of exercise of the Walk-Away Right to Class Counsel in accordance with this Paragraph 10.3, the Walk-Away Right shall be waived.

10.4.    **Effect of Exercising the Walk-Away Right**.  The Escrow Agent shall, within seven (7) calendar days of receiving written notice of the Settling Defendants' exercise of the Walk-Away Right, repay to Settling Defendants the Termination Refund.  This Settlement Agreement shall thereupon terminate, and this Settlement Agreement, Settling Defendants' obligations under it, and all Releases shall become null and void.  In the event of such a termination, no class will be deemed certified as a result of this Settlement Agreement, and the Litigation for all purposes will revert to its status as of the Settlement Date.  In such event, Settling Defendants will not be deemed to have consented to certification of any class, and will retain all rights to oppose, appeal, or otherwise challenge, legally or procedurally, class certification or any other issue in this case.  Likewise, the participation in the Settlement by any Class Representative or Settlement Class Member cannot be raised as a defense to their claims.

10.5.    **Walk-Away Right Disputes**.  Any disputes relating to whether the conditions to exercise of the Settling Defendants' Walk-Away Right have been satisfied shall be submitted to the Court, and said decision by the Court shall be final, binding, and non-appealable.

## 11.    DISTRIBUTIONS

11.1.    **Notice and Administration**.  All costs of notice and administration of the Settlement shall be paid from the Settlement Funds in accordance with the provisions of this Settlement Agreement.  Settling Defendants shall have no obligation for any such fees, costs, and expenses other than their payment obligations under Paragraph 6.1.

11.2.    **Attorneys' Fees and Costs**.  Interim Class Counsel intend to file a motion for fees and costs that will request that amounts due under the Holdback Provisions set forth in CMO No. 3, private attorney/client contracts, and fees of Class Counsel all be paid from the Qualified Settlement Fund, but any such costs and fees of Class Counsel must be approved by the Court.  Any such award shall be paid from the Qualified Settlement Fund by the Escrow Agent before any portion of the Settlement Funds are distributed to Qualifying Settlement Class Members, upon production to the Escrow Agent of a copy of the order, no later than seven (7) days after the Effective Date or such later date as the award may become payable under the Court's order.  Settling Defendants shall have no obligation for any such award other than their payment obligations under Paragraph 6.1.

11.3.    **Distribution to Qualifying Settlement Class Members.**  All monetary awards to Qualifying Settlement Class Members will be strictly governed by the Allocation Procedures, attached as Exhibit C.  The Allocation Procedures are designed to fairly and equitably allocate the settlement among Qualifying Settlement Class Members to resolve PFAS contamination in Drinking Water in Public Water Systems in such a way that reflects facts used in designing a water treatment system in connection with such contamination.  The Claims Administrator will provide a copy of submitted Claims Forms to Settling Defendants.

11.4.    **Submission of Claims**.  Qualifying Settlement Class Members will be required to comply with strict deadlines for Claims Forms.  The Allocation Procedures specify, among other requirements, that a Settlement Class Member will not be allocated nor receive any share of the Settlement Funds if it does not complete and timely submit a Claims Form.

11.5.    **Allocation**:

    11.5.1.    The Settlement Amount less the amounts paid out pursuant to Paragraphs 6.2.3, 11.1. and 11.2 (the "Restitution Amount") shall be allocated among the Qualifying Settlement Class Members pursuant to the Allocation Procedures as specified in Exhibit C to this Settlement Agreement.

    11.5.2.    Each of the Settling Defendants and the Settlement Class Members acknowledges and agrees that:

        (a)    The Class Representatives sought compensatory restitution and remediation (within the meaning of Section 162(f)(2)(A) of the Code) as

28

damages for alleged harms suffered by the Settlement Class Members relating to the Released Claims and PFAS manufactured or sold by Settling Defendants;

(b)    The Restitution Amount is being paid solely as compensatory restitution and remediation for the alleged harms described in Paragraph 11.5.2(a) allegedly suffered by the Settlement Class Members, and the portion of the Restitution Amount received by each Settlement Class Member is being paid solely as compensatory restitution and/or remediation for such alleged harms allegedly suffered by such Settlement Class Member.

(c)    The payment of the Restitution Amount by Settling Defendants constitutes, and is paid (i) as restitution for alleged PFAS contamination, and/or (ii) for remediation by the Settlement Class Members of alleged PFAS contamination (including the installation of upgraded filtration systems and increased operating expenses associated therewith), which restitution or remediation has had or will have a direct nexus or connection with the alleged harms described in Paragraph 11.5.2(a). Payment by Settling Defendants of the Restitution Amount is intended to restore, in whole or in part, the Settlement Class Members to the same or substantially similar position or condition they would have been in had the Settlement Class Members not suffered the alleged harms described in Paragraph 11.5.2(a). Each Settlement Class Member agrees that it will use the Allocated Amount it receives in a manner consistent with this Paragraph 11.5.

(d)    For the avoidance of doubt, no portion of the Restitution Amount constitutes disgorgement or is properly characterized as the payment of statutory or other fines, penalties, punitive damages, or other punitive assessments.

11.6.    **Tax Cooperation and Reporting**:

11.6.1.    Upon request by any Settling Defendant, the Qualifying Settlement Class Members agree to perform such further acts and to execute and deliver such further documents as may be reasonably necessary for Settling Defendants to establish the statements set forth in Paragraph 11.5.2 to the satisfaction of their tax advisors, their independent financial auditors, the IRS, or any other governmental authority, including as contemplated by Treasury Regulations § 1.162-21(b)(3)(ii) and any subsequently proposed or finalized relevant regulations or administrative guidance. Without limiting the generality of the foregoing, each Qualifying Settlement Class Member shall cooperate in good faith with any Settling Defendant with respect to any Tax claim, dispute, investigation, audit, examination, contest, litigation, or other proceeding relating to this Settlement Agreement.

11.6.2.    Each Qualifying Settlement Class Member agrees that, as a condition to its receipt of the Allocated Amount, it will provide the Claims Administrator with (a) a duly completed and executed IRS Form 1098-F with respect to each Settling Defendant (or other information return that may be required pursuant to Treasury Regulations Section 1.6050X-1(a)(1)) and a duly completed written statement that satisfies the requirements of Treasury Regulations Section 1.6050X-1(c) with respect to each Settling Defendant and (b) written authorization substantially in the form of Exhibit K attached hereto for the Claims Administrator to file such Forms 1098-F (or other information return that may be required pursuant to Treasury Regulations Section 1.6050X-1(a)(1)) with the IRS and to provide such written statement to each Settling Defendant on such Qualifying Settlement Class Member's behalf.  Each Qualifying Settlement Class Member agrees that it will prepare any IRS Form 1098-F (or other information return that may be required pursuant to Treasury Regulations Section 1.6050X-1(a)(1)) and written statement required to be delivered pursuant to the preceding sentence in a manner fully consistent with Paragraph 11.5.2, including by reporting its portion of the Restitution Amount as "Restitution/remediation amount" in Box 3 of IRS Form 1098-F.  The Claims Administrator shall advise each Qualifying Settlement Class Member of its Allocated Amount to facilitate compliance with this Paragraph 11.6.2.  As may be mutually agreed by the Parties, this clause may be modified to facilitate submission of IRS Forms 1098-F as may be necessary.

## 12.    RELEASE, COVENANT NOT TO SUE, AND DISMISSAL

12.1.    **Release**.

12.1.1.    Upon entry of the Final Judgment, the Releasing Persons shall have expressly, intentionally, voluntarily, fully, finally, irrevocably, and forever released, waived, compromised, settled, and discharged the Released Persons from any and all Claims arising out of or relating to conduct by, or liability of, Released Persons before the Settlement Date, (i) that arise from or relate to PFAS that entered Drinking Water of a Public Water System within the Settlement Class, its Water Sources, its facilities or real property, or any of its Test Sites at any time before the Settlement Date (as set forth in Paragraph 12.6); (ii) that arise from or relate to the development, manufacture, formulation, distribution, sale, transportation, storage, loading, mixing, application, or use of PFAS alone or in products that contain PFAS as an active ingredient, byproduct, or degradation product, including AFFF; (iii) for any type of relief with respect to the installation, maintenance, or operation of, and cost associated with any kind of treatment, filtration, remediation, testing, or monitoring of PFAS by any Settlement Class Member with respect to PFAS that entered Drinking Water of a Public Water System within the Settlement Class, its Water Sources, its facilities or real property, or any of its Test Sites at any time before the Settlement Date (as set forth in Paragraph 12.6); or (iv) that were or could have been asserted in the Litigation (all of the foregoing Claims, the "Released Claims").

12.1.2.    Without limiting Paragraph 12.1.1, the Released Claims include Claims that arise out of or relate to the discharge, remediation, testing, monitoring, treatment or processing of water by a Public Water System within the Settlement Class (including stormwater or wastewater) with respect to PFAS that entered its Water Sources, its facilities or real property, or any of its Test Sites at any time before the Settlement Date (as set forth in Paragraph 12.6), *except* (a) where a Settlement Class Member also owns real property or owns or operates a facility that is separate from and not related to a Public Water System and does not provide Drinking Water (*e.g.*, a separate wastewater or stormwater system or airports or fire training facilities that are  not related to a Public Water System), Claims relating to the discharge, remediation, testing, monitoring, treatment or processing of stormwater or wastewater at or by such separate real property or facility are preserved to the extent such Claims seek damages not arising from or relating to alleged harm to Drinking Water, or (b) if the EPA or a State establishes additional requirements (including a condition or requirement in a State-issued permit) after the Settlement Date with respect to the discharge, remediation, testing, monitoring, treatment or processing of PFAS-containing stormwater or wastewater, such Claims relating to stormwater or wastewater are preserved to the extent they seek to recover for additional compliance costs imposed on the Settlement Class Member by such new requirements above the compliance costs under laws, regulations, directives or requirements existing as of the Settlement Date.

12.1.3.    Notwithstanding Paragraphs 12.1.1 and 12.1.2, (x) the Released Claims shall not include Claims that arise from or relate to a Test Site as to which PFAS is deemed under Paragraph 12.6 to have entered the water or facilities or real property of the Public Water System after the Settlement Date; and (y) any Releasing Person that is not a Public Water System but that is legally responsible for funding (by statute, regulation, other law, or contract) or that has authority to bring a Claim on behalf of, or to seek recovery for harm to, a Public Water System in the Settlement Class or the Public Water System's ability to provide safe or compliant Drinking Water, gives the release only to the extent of Claims that seek to recover for alleged harm to such Public Water System, and "Released Claims" shall not include other Claims of such Releasing Person.

12.1.4.    This Agreement shall not release any Claims owned by a State or the federal government where brought, respectively, by the State or the federal government.

12.2.    **Covenant Not to Sue**.  The Releasing Persons shall not at any time hereafter, in any federal court, state court, arbitration, regulatory agency, or other tribunal or forum continue to prosecute, commence, file, initiate, institute, cause to be instituted, assist in instituting, or permit to be instituted on their, his, her, or its behalf, or on behalf of any other Person, any Claim alleging or asserting any Released Claims or challenging the validity of the release set forth in Paragraph 12.1 of this Settlement Agreement.  If any such Claim exists in any court, tribunal or other forum as of the Effective Date, the Releasing Persons covenant, promise and agree to withdraw, and seek a dismissal with prejudice of, such proceeding forthwith.  The Releasing Persons consent to the jurisdiction of this Court or, at Settling

Defendants' sole option, any other court having jurisdiction to enter an injunction barring them from commencing or prosecuting any Claim, or seeking other benefits, based upon the Released Claims.

12.3. **Dismissal**.  In accordance with the foregoing release and covenant not to sue, from and after the Effective Date, all pending Litigation shall be dismissed with prejudice to the extent it contains Released Claims against Released Persons.  The Order Granting Final Approval shall provide for such dismissals.  Any plaintiff in a Litigation asserting Claims against Released Persons that the plaintiff believes are preserved under Paragraphs 12.1.2(a) or 12.1.3(y) shall execute a stipulation of partial dismissal with prejudice in the form provided for in Exhibit L within thirty (30) calendar days of the Effective Date; provided, however, that in the event that any such plaintiff fails to file the required stipulation of dismissal in a Litigation within thirty (30) calendar days of the Effective Date, such Litigation shall be dismissed by operation of the Order Granting Final Approval (x) with prejudice to the extent it contains Released Claims against Released Persons, and (y) without prejudice to the extent it contains Claims against Released Persons that are preserved under Paragraphs 12.1.2(a) or 12.1.3(y).  With respect to any Claims that are not dismissed or that are dismissed without prejudice under this Paragraph, Released Persons shall retain all defenses, including the right to argue that the Claim is not preserved and is released.

12.4. **Injunction**.  From and after the Effective Date, by operation of the Order Granting Final Approval, the Parties agree that each and every Settlement Class Member will be permanently barred and enjoined from commencing, filing, initiating, instituting, prosecuting, and/or maintaining any judicial, arbitral, or regulatory action with respect to any and all Released Claims.

12.5. **Exclusive Remedy**.  The relief provided for in this Settlement Agreement shall be the sole and exclusive remedy for all Releasing Persons with respect to any Released Claims, and the Released Persons shall not be subject to liability or expense of any kind with respect to any Released Claims other than as set forth in this Settlement Agreement.  The Parties agree, and the Order Granting Final Approval shall provide, that the relief provided in this Settlement Agreement fairly and adequately remedies any harm arising out of or relating to Public Water Systems in the Settlement Class to the extent allegedly caused by any Released Person that arises from or relates to PFAS in or affecting each such Public Water System or otherwise arises from or relates to any Released Claim.  Nothing herein releases any Claim by any Releasing Person against any Non-Released Person.

12.6. **Future PFAS Discovery**.  The following shall apply for purposes of applying the release provisions of this Section 12:

12.6.1. Each Public Water System in the Settlement Class that submits a Claims Form (or any Entity that submits a Claims Form on behalf of such Public Water System) shall certify that it has tested all of its Test Sites for PFAS after U.S. EPA's announcement of the testing requirements of UCMR 5 using a methodology consistent with the requirements of UCMR 5 or applicable State requirements (if

stricter) (such methodology being the "Testing Methodology"); provided, however, that:

(a)    if a Test Site was tested on or before the Settlement Date and found to contain any PFAS at any level, such Test Site with a previous detection of PFAS need not be tested again and shall be treated for purposes of this Paragraph 12.6 as if it were tested under the Testing Methodology during the required time period, and

(b)    if a Public Water System has multiple Test Sites that are surface water intakes drawing from the same surface water source (*e.g.*, river, lake, reservoir), the Public Water System may perform the testing under the Testing Methodology required by this Paragraph 12.6.1 at either (i) each such Test Site; or (ii) an entry point to the distribution system fed by all such Test Sites, in which case the result of such testing (*i.e.*, detection or non-detection of PFAS) shall apply for purposes of this Paragraph 12.6 to all such Test Sites that feed the entry point.

12.6.2.    If for any reason, a Public Water System in the Settlement Class does not certify that it has tested all of its Test Sites under the Testing Methodology before the UCMR 5 Deadline, the Public Water System (and all other Persons who are Releasing Persons by virtue of their relationship or association with such Public Water System) will be deemed to give the release set forth in Paragraph 12.1 in full, including as to all Claims relating to each of its Test Sites. Any PFAS detected in any of such Public Water System's Drinking Water, Water Sources, Test Sites, facilities or real property, or discharge water after the Settlement Date shall be deemed to have entered the water or facilities or real property before the Settlement Date and thus to be within the temporal scope of the release.

12.6.3.    If a Public Water System in the Settlement Class tests all of its Test Sites under the Testing Methodology before the UCMR 5 Deadline and detects PFAS at any level in all such Test Sites, the Public Water System (and all other Persons who are Releasing Persons by virtue of their relationship or association with such Public Water System) will be deemed to give the release set forth in Paragraph 12.1 in full, including as to all Claims relating to each of its Test Sites. Any PFAS detected in any of such Public Water System's Drinking Water, Water Sources, Test Sites, facilities or real property, or discharge water after the Settlement Date shall be deemed to have entered the water or facilities or real property before the Settlement Date and thus to be within the temporal scope of the release.

12.6.4.    If a Public Water System in the Settlement Class tests all of its Test Sites under the Testing Methodology before the UCMR 5 Deadline but after U.S. EPA's announcement of the testing requirements of UCMR 5, and such testing detects no PFAS at any level in an individual Test Site, any PFAS subsequently detected in the same Test Site will be deemed to have entered the water after the Settlement Date and thus to be outside the temporal scope of the release. The Public Water System (and all other Persons who are Releasing Persons by virtue of their

relationship or association with such Public Water System) will be deemed to give the release set forth in Paragraph 12.1 as to all Claims except those Claims relating to the individual Test Site(s) in which no PFAS at any level was detected in testing under the Testing Methodology.

12.6.5.   Notwithstanding Paragraph 12.6.4, if a Public Water System in the Settlement Class chooses to treat PFAS contamination at an aggregation point, any preservation of Claims under Paragraph 12.6.4 as to a Test Site that feeds that aggregation point shall be limited to Claims for recovery of additional costs (if any) of treating PFAS contamination at that aggregation point that arise from the subsequent detection of PFAS at that Test Site.   Nothing in this Settlement Agreement shall obligate a Public Water System to treat PFAS contamination at an aggregation point.

12.6.6.   Nothing in this Paragraph 12.6 shall be interpreted to bring within the scope of the release any Claim that is excepted from the release under Paragraph 12.1.2(a) or (b).

12.7.   **Protection Against Claims-Over**.

12.7.1.   The Order Granting Final Approval will specify that the Settlement is a good-faith settlement that bars any Claim by any Non-Released Person against any Released Person for contribution, indemnification, or otherwise seeking to recover all or a portion of any amounts paid by or awarded against that Non-Released Person to any Settlement Class Member or Releasing Person by way of settlement, judgment, or otherwise (a "Claim-Over") on any Claim that would be a Released Claim were such Non-Released Person a Settling Defendant, to the extent that a good-faith settlement (or release thereunder) has such an effect under applicable law.

12.7.2.   If a Released Claim asserted by a Settlement Class Member gives rise to a Claim-Over against a Released Person and a court determines that the Claim-Over can be maintained notwithstanding the order referenced in Paragraph 12.7.1, the Settlement Class Member shall reduce the amount of any judgment it obtains against the Non-Released Person who is asserting the Claim-Over by whatever amount is necessary, or take other action as is sufficient, to fully extinguish the Claim-Over under applicable law.   Nothing herein prevents a Settlement Class Member from pursuing litigation against a Non-Released Person and collecting the full amount of any judgment, except to the extent it is necessary to protect the Released Person to fully extinguish a Claim-Over under applicable law.

12.7.3.   To the extent that, on or after the Settlement Date, any Settlement Class Member enters into a settlement with any Non-Released Person on any Claim that would be a Released Claim were such Non-Released Person a Settling Defendant, the Settlement Class Member will obtain from such Non-Released Person a prohibition on contribution or indemnity of any kind, substantially equivalent to that required from Settling Defendants in Paragraph 12.7.4, or a release from such

Non-Released Person in favor of the Released Persons (in a form equivalent to the releases contained in this Settlement Agreement) of any Claim-Over.

12.7.4.  No Released Person shall seek to recover for amounts paid under this Settlement Agreement based on contribution, indemnification or any other theory from any Non-Released Person; provided, however, that a Released Person shall be relieved of this prohibition with respect to any Non-Released Person that asserts a Claim-Over against it.  For the avoidance of doubt, nothing herein shall prohibit a Released Person from recovering amounts owed pursuant to insurance contracts.

12.8.  **Liens**.  Each Settlement Class Member agrees to be responsible for any liens, interests, actions, or claims asserted by any third party, in a derivative manner, for or against the portion of Settlement Funds allocated to that Settlement Class Member, including without limitation, any derivative actions or claims asserted by any financial institutions, lenders, insurers, agents, representatives, successors, predecessors, assigns, attorneys, bankruptcy trustees, and any and all other Persons who may claim through them in a derivative manner.

12.9.  **Waiver of Statutory Rights**.  To the extent the provisions apply, the Settlement Class Members (on behalf of themselves and their associated Releasing Persons) expressly, knowingly, and voluntarily waive the provisions of Section 1542 of the California Civil Code, which provides as follows:

> **A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.**

To the extent the provisions apply, the Settlement Class Members (on behalf of themselves and their associated Releasing Persons) likewise expressly, knowingly, and voluntarily waive the provisions of Section 20-7-11 of the South Dakota Codified Laws, which provides:

> **A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.**

To the extent the laws apply, the Settlement Class Members (on behalf of themselves and their associated Releasing Persons) expressly waive and relinquish all rights and benefits that they may have under, or that may be conferred upon them by, Section 1542 of the California Civil Code, Section 20-7-11 of the South Dakota Codified Laws, and all similar laws of other States, to the fullest extent that they may lawfully waive such rights or benefits pertaining to the Released Claims.  In connection with such waiver and relinquishment, the Settlement Class Members (on behalf of themselves and their associated Releasing Persons) acknowledge that they are aware that they or their attorneys

may hereafter discover claims or facts in addition to or different from those that they now know or believe to exist with respect to the Released Claims, but that it is their intention to accept and assume that risk and fully, finally, and forever release, waive, compromise, settle, and discharge all of the Released Claims against Released Persons. The release thus shall remain in effect notwithstanding the discovery or existence of any additional or different claims or facts.

## 13.    MISCELLANEOUS PROVISIONS

13.1.    **Continuing Jurisdiction**.    The Court shall have and retain jurisdiction over the interpretation and implementation of this Settlement Agreement, as well as any and all matters arising out of, or related to, the interpretation or implementation of the Settlement Agreement.

13.2.    **Cooperation**. The Parties shall cooperate fully with each other and shall use all reasonable efforts to obtain Court approval of the Settlement and all of its terms. Settling Defendants shall provide all information reasonably necessary to assist Class Representatives in the filing of any brief supporting approval of the Settlement. Class Representatives, Class Counsel, Settling Defendants, and Settling Defendants' Counsel agree to support this Settlement Agreement, to recommend its approval to the Court, and to use all reasonable efforts to give force and effect to its terms and conditions; provided, however, that no Party shall be required to agree to any modification to this Settlement Agreement or its Exhibits. Neither the Class Representatives, Class Counsel, Settling Defendants, Settling Defendants' agents, nor Settling Defendants' Counsel shall in any way encourage any objections to the Settlement (or any of its terms or provisions) or encourage any Settlement Class Member to file a Request for Exclusion.

13.3.    **No Admission of Wrongdoing or Liability**. Settling Defendants do not admit or concede any liability or wrongdoing, acknowledge any validity to the Claims asserted in the Litigation, acknowledge that certification of a litigation class is appropriate as to any Claim, or acknowledge any weakness in the defenses asserted in the Litigation or any other suit, action, or proceeding, and nothing in this Settlement Agreement, the Order Granting Preliminary Approval, or the Order Granting Final Approval shall be interpreted to suggest anything to the contrary.    Nothing in this Settlement Agreement, any negotiations, statements, communications, proceedings, filings, or orders relating thereto, or the fact that the Parties entered the Settlement Agreement and settled the Released Claims, shall be construed, deemed, or offered as an admission or concession by any of the Parties or Settlement Class Members or as evidentiary, impeachment, or other material available for use or subject to discovery in any suit, action, or proceeding (including the Litigation), except (i) as required or permitted to comply with or enforce the terms of this Settlement Agreement, the Order Granting Preliminary Approval, or the Order Granting Final Approval, or (ii) in connection with a defense based on *res judicata*, claim preclusion, collateral estoppel, issue preclusion, relative degree of fault, release, or other similar theory asserted by any of the Released Persons. The Settling Defendants retain full rights to contest the certification of any class for litigation purposes.

13.4.  **No Admission as to PFAS**.  Nothing in this Settlement Agreement, including the definition of PFAS, shall be used as evidence or an admission (or be construed as evidence or an admission) that any Settling Defendant developed, manufactured, formulated, distributed, sold, transported, stored, loaded, mixed, applied, or used PFAS alone or in products that contain PFAS as an active ingredient, byproduct, or degradation product, including AFFF, or otherwise had any contact or dealings with any particular PFAS.

13.5.  **Amendment of Settlement Agreement**.  No waiver, modification, or amendment of the terms of this Settlement Agreement or its Exhibits, made before or after Final Approval, shall be valid or binding unless in writing, signed by Class Counsel and by duly authorized signatories of each Settling Defendant, and then only to the extent set forth in such written waiver, modification or amendment, and subject to any required Court approval.

13.6.  **Other Settlements.**  In the event that any of Class Representatives or any of Class Counsel enter into another actual or proposed settlement with any defendant in the MDL between the Settlement Date and Final Approval that contains a definition of PFAS that differs from the definition set forth herein, Settling Defendants shall have the option, in their sole discretion, to substitute such different definition for the definition set forth herein.

13.7.  **Construction of Settlement Agreement**.  The Parties acknowledge as part of the execution hereof that this Settlement Agreement was reviewed and negotiated by their respective counsel and agree that the language of this Settlement Agreement shall not be presumptively construed against any of the Parties.  This Settlement Agreement shall be construed as having been drafted by all the Parties, so that any rule of construction by which ambiguities are interpreted against the drafter shall have no force and effect.

13.8.  **Arm's-Length Transaction**.  The Parties each acknowledge that the negotiations leading up to this Settlement Agreement were conducted in good faith and at arm's length; this Settlement Agreement is made and executed by and of each Party's own free will; each Party knows all of the relevant facts and its rights in connection therewith; and each Party has not been improperly influenced or induced to agree to this Settlement as a result of any act or action on the part of any other Party or employee, agent, attorney, or representative of any other Party.

13.9.  **Third-Party Beneficiaries**.  This Settlement Agreement does not create any third-party beneficiaries, except Settlement Class Members and Released Persons other than Settling Defendants.

13.10. **Entire Agreement**.  No representations, warranties, or inducements have been made to any of the Parties, other than those representations, warranties, and covenants contained in this Settlement Agreement.  This Settlement Agreement, including its Exhibits, constitutes the entire agreement among the Parties and Settlement Class Members with regard to the subject matter contained herein, and supersedes and cancels all prior and contemporaneous agreements, negotiations, commitments, and understandings among the Parties with respect to the specific subject matter hereof.

13.11. **Binding Effect**. This Settlement Agreement shall be binding upon and inure to the benefit of the Parties, the Settlement Class Members, and the Released Persons, and their respective heirs, successors and assigns. This Settlement Agreement shall have such effect as provided by applicable law (*e.g.*, res judicata, reduction of alleged damages) on Claims by all Persons (including any Person who is excepted from the definition of Releasing Persons or the release in Paragraph 12.1) whether or not such Claims are released hereunder, and no Settlement Class Member shall (a) authorize any such other Person to bring a Released Claim on its behalf or to seek damages arising from harm to it within the scope of the release in Paragraph 12.1, or (b) provide any material or financial support to any such other Person in taking any of the actions referenced in clause (a). Consistent with Paragraph 4.3, the individual signing this Settlement Agreement on behalf each Settling Defendant hereby represents and warrants that s/he has the power and authority to enter into this Settlement Agreement on behalf of such Settling Defendant, as well as the power and authority to bind such Settling Defendant to this Settlement Agreement. Likewise, consistent with Paragraph 4.2, Class Counsel executing this Settlement Agreement represents and warrants that s/he has the authority to enter into this Settlement Agreement on behalf of Class Representatives and to bind Class Representatives.

13.12. **Waiver**. Any failure by any of the Parties to insist upon the strict performance by any of the other Parties of any of the provisions of this Settlement Agreement shall not be deemed a waiver of any of the provisions of this Settlement Agreement and such Party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Settlement Agreement.

13.13. **Specific Performance**. The Parties agree that money damages would not be a sufficient remedy for any breach of this Settlement Agreement, other than as to any term requiring payment of money, and each non-breaching Party shall be entitled to specific performance and injunctive or other equitable relief as a remedy for any such breach in addition to any other remedy available at law or in equity, without the necessity of demonstrating the inadequacy of money damages.

13.14. **Force Majeure**. The failure of any Party to perform any of its obligations hereunder shall not subject any Party to any liability or remedy for damages, or otherwise, where such failure is occasioned in whole or in part by Acts of God, fires, accidents, pandemics, other natural disasters, interruptions or delays in communications or transportation, labor disputes or shortages, shortages of material or supplies, governmental laws, rules or regulations of other governmental bodies or tribunals, acts or failures to act of any third parties, or any other similar or different circumstances or causes beyond the reasonable control of such Party.

13.15. **Confidentiality**. The Parties shall keep confidential the content of the negotiations, points of discussion, documents, communications, and supporting data utilized or prepared in connection with the negotiations and settlement discussions taking place in this case, except as otherwise required by law. Nothing in this Settlement Agreement shall prevent Settling Defendants from disclosing such information to their insurers if requested by those insurers. The Parties may, at their discretion, issue publicity, press release, or other public statements regarding this Settlement, whether unilaterally or as jointly agreed to in writing

by all Parties.  Any jointly agreed or other statement shall not limit Settling Defendants' ability to provide information about the Settlement to their employees, accountants, attorneys, insurers, shareholders, or other stakeholders or in accordance with legal requirements, or to limit Class Counsel's ability to provide Notice or information about the Settlement to Settlement Class Members or in accordance with legal requirements.

13.16.  **Exhibits**.  All exhibits hereto are incorporated herein by reference as if set forth herein verbatim, and the terms of the exhibits are expressly made a part of this Settlement Agreement.

13.17.  **Notices to Parties**.  Any notice, request, instruction, or other document to be delivered pursuant to this Settlement Agreement shall be sent to the appropriate Party by (i) electronic mail; and (ii) overnight courier, delivery confirmation requested:

**If to Settling Defendants**:

The Chemours Company
Office of the General Counsel
1007 Market Street
Wilmington, DE 19801
Attn:  Kristine M. Wellman
       kristine.m.wellman@chemours.com

With a copy to:

Jeffrey M. Wintner
Graham W. Meli
Wachtell, Lipton, Rosen & Katz
51 West 52nd Street
New York, NY  10019
jmwintner@wlrk.com
gwmeli@wlrk.com


DuPont de Nemours, Inc.
974 Centre Rd.
Wilmington, DE 19806
Attn:  Erik T. Hoover
       erik.t.hoover@dupont.com

With a copy to:

Kevin T. Van Wart
Kirkland & Ellis LLP
300 North LaSalle
Chicago, IL  60654
kevin.vanwart@kirkland.com

Corteva Inc.
974 Centre Road
Building 735
Wilmington, DE 19805
Attn:  Cornel B. Fuerer
       cornel.b.fuerer@corteva.com

With a copy to:

Michael T. Reynolds
Cravath, Swaine & Moore LLP
825 Eighth Avenue
New York, NY  10019
mreynolds@cravath.com


EIDP, Inc.
974 Centre Road
Building 735
Wilmington, DE 19805
Attn:  Thomas A. Warnock
       thomas.a.warnock@corteva.com

With a copy to:

Michael T. Reynolds
Cravath, Swaine & Moore LLP
825 Eighth Avenue
New York, NY  10019
mreynolds@cravath.com

**If to the Class Representatives, Class Counsel, or Settlement Class Members**:

Michael A. London
Douglas & London, P.C.
59 Maiden Lane, 6th Floor
New York, New York 10038
mlondon@douglasandlondon.com

Paul J. Napoli
Napoli Shkolnik
1302 Avenida Ponce de Leon
San Juan, Puerto Rico 00907
PNapoli@NSPRLaw.com

Scott Summy
Baron & Budd
3102 Oak Lawn Avenue, Suite 1100
Dallas, Texas 75219
ssummy@baronbudd.com

Elizabeth A. Fegan
Fegan Scott
150 S Wacker Dr, 24th Floor
Chicago, Il 60606
Beth@feganscott.com

13.18. **Governing Law**.  This Settlement Agreement, including its construction and interpretation, shall be governed by and construed in accordance with the substantive law of the State of South Carolina, without regard to any choice-of-law rules that would require the application of the law of another jurisdiction.

13.19. **When Settlement Agreement Becomes Effective**.  This Settlement Agreement shall become effective upon its execution by Settling Defendants and Class Counsel on the Settlement Date, subject to the approval of the Court and the termination provisions set forth herein.

13.20. **Counterparts**.  This Settlement Agreement may be executed in any number of counterparts, each of which shall be an original and all of which shall together constitute one and the same instrument.  It shall not be necessary for any counterpart to bear the signature of all Parties.

13.21. **Captions**.  The captions, titles, headings, or subheadings of the sections and paragraphs of this Settlement Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Settlement Agreement.

13.22. **Electronic Signatures**.  Any Party may execute this Settlement Agreement by having their respective duly authorized signatory sign their name on the designated signature block below and transmitting that signature page electronically to counsel for all of the Parties. Any signature made and transmitted electronically for the purpose of executing this Settlement Agreement shall be deemed an original signature for purposes of this Settlement Agreement, and shall be binding upon the Party transmitting their signature electronically.

13.22 **Effect on Existing EPA Consent Order Obligations or *Leach* Settlement.** Nothing in this Settlement Agreement is intended to nor shall alter, change, or amend any obligations of any Settling Defendant or Released Persons under (a) the 2009 Administrative Order on

Consent entered into with the United States Environmental Protection Agency as set forth in Docket Nos. SDWA-03-2009-0127-DS and SDWA-05-2009-0001, and as amended, including the First Amendment of January 5, 2017; or (b) the November 17, 2004 Class Action Settlement Agreement in *Leach et al. v. E.I. du Pont de Nemours and Co.* et al., Case No. 01-C-608 (Wood Cty. W. Va. Cir. Ct.).

Agreed to this 30th day of June, 2023.

**CLASS COUNSEL:**

By: _____
    Michael A. London
    DOUGLAS & LONDON, P.C.
    59 Maiden Lane, 6th Floor
    New York, NY 10038

By: _____
    Scott Summy
    BARON & BUDD, P.C.
    3102 Oak Lawn Avenue
    Suite 1100
    Dallas, Texas, 75219

By: _____
    Paul J. Napoli
    NAPOLI SHKOLNIK
    1302 Ponce de Leon
    San Juan, Puerto Rico 00907

By: _____
    Elizabeth A. Fegan
    FEGAN SCOTT LLC
    150 S. Wacker Dr., 24th Fl.
    Chicago, IL 60606

**SETTLING DEFENDANTS**:

**The Chemours Company**

By: _____
    Name:  Kristine M. Wellman
    Title:   Senior Vice President, General Counsel
             and Corporate Secretary

**The Chemours Company FC, LLC**

By: _____
    Name:  Kristine M. Wellman
    Title:   Senior Vice President and
             General Counsel

**DuPont de Nemours, Inc.**

By: _____
    Name:  Erik T. Hoover
    Title:   Senior Vice President and
             General Counsel

**Corteva, Inc.**

By: _____
    Name:  Cornel B. Fuerer
    Title:   Senior Vice President, General Counsel

**E.I. DuPont de Nemours and Company n/k/a EIDP, Inc.**

By: _____
    Name:  Thomas A. Warnock
    Title:   Associate General Counsel and
             Assistant Secretary

Consent entered into with the United States Environmental Protection Agency as set forth in Docket Nos. SDWA-03-2009-0127-DS and SDWA-05-2009-0001, and as amended, including the First Amendment of January 5, 2017; or (b) the November 17, 2004 Class Action Settlement Agreement in *Leach et al. v. E.I. du Pont de Nemours and Co.* et al., Case No. 01-C-608 (Wood Cty. W. Va. Cir. Ct.).

Agreed to this 30th day of June, 2023.

| CLASS COUNSEL: | SETTLING DEFENDANTS: |
|---|---|

**The Chemours Company**

By: _____
Michael A. London
DOUGLAS & LONDON, P.C.
59 Maiden Lane, 6th Floor
New York, NY 10038

By: _Kristine M. Wellman_____
    Name:  Kristine M. Wellman
    Title:   Senior Vice President, General Counsel
         and Corporate Secretary

**The Chemours Company FC, LLC**

By: _____
Scott Summy
BARON & BUDD, P.C.
3102 Oak Lawn Avenue
Suite 1100
Dallas, Texas, 75219

By: _Kristine M. Wellman_____
    Name:  Kristine M. Wellman
    Title:   Senior Vice President and
         General Counsel

**DuPont de Nemours, Inc.**

By: _____
Paul J. Napoli
NAPOLI SHKOLNIK
1302 Ponce de Leon
San Juan, Puerto Rico 00907

By: _____
    Name:  Erik T. Hoover
    Title:   Senior Vice President and
         General Counsel

**Corteva, Inc.**

By: _____
Elizabeth A. Fegan
FEGAN SCOTT LLC
150 S. Wacker Dr., 24th Fl.
Chicago, IL 60606

By: _____
    Name:  Cornel B. Fuerer
    Title:   Senior Vice President, General Counsel

**E.I. DuPont de Nemours and Company
n/k/a EIDP, Inc.**

By: _____
    Name:  Thomas A. Warnock
    Title:   Associate General Counsel and
         Assistant Secretary

Consent entered into with the United States Environmental Protection Agency as set forth in Docket Nos. SDWA-03-2009-0127-DS and SDWA-05-2009-0001, and as amended, including the First Amendment of January 5, 2017; or (b) the November 17, 2004 Class Action Settlement Agreement in *Leach et al. v. E.I. du Pont de Nemours and Co.* et al., Case No. 01-C-608 (Wood Cty. W. Va. Cir. Ct.).

Agreed to this 30th day of June, 2023.

**CLASS COUNSEL**:

By: _____
    Michael A. London
    DOUGLAS & LONDON, P.C.
    59 Maiden Lane, 6th Floor
    New York, NY 10038

By: _____
    Scott Summy
    BARON & BUDD, P.C.
    3102 Oak Lawn Avenue
    Suite 1100
    Dallas, Texas, 75219

By: _____
    Paul J. Napoli
    NAPOLI SKOLNIK
    1302 Ponce de Leon
    San Juan, Puerto Rico 00907

By: _____
    Elizabeth A. Fegan
    FEGAN SCOTT LLC
    150 S. Wacker Dr., 24th Fl.
    Chicago, IL 60606

**SETTLING DEFENDANTS**:

**The Chemours Company**

By: _____
    Name: Kristine M. Wellman
    Title:  Senior Vice President, General Counsel
            and Corporate Secretary

**The Chemours Company FC, LLC**

By: _____
    Name: Kristine M. Wellman
    Title:  Senior Vice President and
            General Counsel

**DuPont de Nemours, Inc.**

By: _____
    Name: Erik T. Hoover
    Title:  Senior Vice President and
            General Counsel

**Corteva, Inc.**

By: _____
    Name: Cornel B. Fuerer
    Title:  Senior Vice President, General Counsel

**E.I. DuPont de Nemours and Company
n/k/a EIDP, Inc.**

By: _____
    Name:  Thomas A. Warnock
    Title:   Associate General Counsel and
             Assistant Secretary

Consent entered into with the United States Environmental Protection Agency as set forth in Docket Nos. SDWA-03-2009-0127-DS and SDWA-05-2009-0001, and as amended, including the First Amendment of January 5, 2017; or (b) the November 17, 2004 Class Action Settlement Agreement in *Leach et al. v. E.I. du Pont de Nemours and Co.* et al., Case No. 01-C-608 (Wood Cty. W. Va. Cir. Ct.).

Agreed to this 30th day of June, 2023.

CLASS COUNSEL:

By: _____
    Michael A. London
    DOUGLAS & LONDON, P.C.
    59 Maiden Lane, 6th Floor
    New York, NY 10038

By: _____
    Scott Summy
    BARON & BUDD, P.C.
    3102 Oak Lawn Avenue
    Suite 1100
    Dallas, Texas, 75219

By: _____
    Paul J. Napoli
    NAPOLI SHKOLNIK
    1302 Ponce de Leon
    San Juan, Puerto Rico 00907

By: _____
    Elizabeth A. Fegan
    FEGAN SCOTT LLC
    150 S. Wacker Dr., 24th Fl.
    Chicago, IL 60606

SETTLING DEFENDANTS:

**The Chemours Company**

By: _____
    Name:  Kristine M. Wellman
    Title:   Senior Vice President, General Counsel
         and Corporate Secretary

**The Chemours Company FC, LLC**

By: _____
    Name:  Kristine M. Wellman
    Title:   Senior Vice President and
         General Counsel

**DuPont de Nemours, Inc.**

By: _____
    Name:  Erik T. Hoover
    Title:   Senior Vice President and
         General Counsel

**Corteva, Inc.**

By: _____
    Name:  Cornel B. Fuerer
    Title:   Senior Vice President, General Counsel

**E.I. DuPont de Nemours and Company**
**n/k/a EIDP, Inc.**

By: _____
    Name:  Thomas A. Warnock
    Title:   Associate General Counsel and
         Assistant Secretary

42

Consent entered into with the United States Environmental Protection Agency as set forth in Docket Nos. SDWA-03-2009-0127-DS and SDWA-05-2009-0001, and as amended, including the First Amendment of January 5, 2017; or (b) the November 17, 2004 Class Action Settlement Agreement in *Leach et al. v. E.I. du Pont de Nemours and Co.* et al., Case No. 01-C-608 (Wood Cty. W. Va. Cir. Ct.).

Agreed to this 30th day of June, 2023.

**CLASS COUNSEL:**

By: _____
    Michael A. London
    DOUGLAS & LONDON, P.C.
    59 Maiden Lane, 6th Floor
    New York, NY 10038

By: _____
    Scott Summy
    BARON & BUDD, P.C.
    3102 Oak Lawn Avenue
    Suite 1100
    Dallas, Texas, 75219

By: _____
    Paul J. Napoli
    NAPOLI SHKOLNIK
    1302 Ponce de Leon
    San Juan, Puerto Rico 00907

By: _____
    Elizabeth A. Fegan
    FEGAN SCOTT LLC
    150 S. Wacker Dr., 24th Fl.
    Chicago, IL 60606

**SETTLING DEFENDANTS:**

**The Chemours Company**

By: _____
    Name:  Kristine M. Wellman
    Title:  Senior Vice President, General Counsel
           and Corporate Secretary

**The Chemours Company FC, LLC**

By: _____
    Name:  Kristine M. Wellman
    Title:  Senior Vice President and
           General Counsel

**DuPont de Nemours, Inc.**

By: _____
    Name:  Erik T. Hoover
    Title:  Senior Vice President and
           General Counsel

**Corteva, Inc.**

By: _____
    Name:  Cornel B. Fuerer
    Title:  Senior Vice President, General Counsel

**E.I. DuPont de Nemours and Company**
**n/k/a EIDP, Inc.**

By: _____
    Name:  Thomas A. Warnock
    Title:  Associate General Counsel and
           Assistant Secretary

## Table of Contents

| Exhibit | Document | Referenced in MSA Section |
|---|---|---|
| A | Proposed Preliminary Approval Order | § 2.35;<br>§ 9.1.1;<br>§ 9.2.1;<br>§9.2.2;<br>§ 9.3 |
| B | Proposed Final Approval Order | § 2.34;<br>§ 9.1.2;<br>§ 9.8.1;<br>§ 9.8.3 |
| C | Allocation Procedures | § 2.3;<br>§ 3.3;<br>§ 8.4;<br>§ 8.12;<br>§ 11.3;<br>§ 11.5.1 |
| D | Claims Forms | § 2.8;<br>§ 3.3 |
| E | Long Form Notice | § 2.30;<br>§ 9.2.1;<br>§ 9.2.2 |
| F | Summary Notice | § 2.59 |
| G | Notice Plan | § 2.32;<br>§ 9.2.1 |
| H | Escrow Agreement | § 2.20 |
| I | Excluded state-owned Public Water Systems | § 5.1.2(b);<br>§ 5.1.2(d);<br>§ 5.1.3 |
| J | Excluded federal-owned Public Water Systems | § 5.1.2(c);<br>§ 5.1.2(d);<br>§ 5.1.3 |
| K | IRS Form 1098-F Authorization Letter | § 11.6.2 |
| L | Stipulation of Dismissal | § 12.3 |

# EXHIBIT A

**EXHIBIT A: [PROPOSED] ORDER GRANTING PRELIMINARY APPROVAL**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## CHARLESTON DIVISION

| | | |
|---|---|---|
| | ) | |
| IN RE:  AQUEOUS FILM-FORMING | ) | **MDL No. 2:18-mn-2873** |
| FOAMS PRODUCTS LIABILITY | ) | |
| LITIGATION | ) | |
| | ) | |

## [PROPOSED] ORDER GRANTING
## PRELIMINARY APPROVAL OF SETTLEMENT AGREEMENT

Before the Court is the Motion of proposed Class Counsel for Preliminary Approval of Settlement Agreement (the "Preliminary Approval Motion"), pursuant to Rules 23(a), 23(b), and 23(e) of the Federal Rules of Civil Procedure, which seeks:  (1) Preliminary Approval of the Settlement Agreement; (2) preliminary certification, for settlement purposes only, of the Settlement Class; (3) approval of the form of Notice to the Settlement Class; (4) approval of the Notice Plan; (5) appointment of Class Counsel; (6) appointment of Class Representatives; (7) appointment of the Notice Administrator; (8) appointment of the Claims Administrator; (9) appointment of the Special Master; (10) appointment of the Escrow Agent; (11) approval of the Escrow Agreement; (12) establishment of the Qualified Settlement Fund; (13) scheduling of a Final Fairness Hearing; and (14) a stay of all proceedings brought by Releasing Persons in the MDL and in other Litigation in any forum as to Settling Defendants, and an injunction against the filing of any new such proceedings.

WHEREAS, a proposed Settlement Agreement has been reached by and among (i) Class Representatives, individually and on behalf of the Settlement Class Members, by and through Class Counsel, and (ii) defendants The Chemours Company, The Chemours Company FC, LLC,

DuPont de Nemours, Inc., Corteva, Inc., and E.I. DuPont de Nemours and Company n/k/a EIDP, Inc.;

WHEREAS, the Court, for the purposes of this Order Granting Preliminary Approval, adopts all defined terms as set forth in the Settlement Agreement;

WHEREAS, this matter has come before the Court pursuant to the Preliminary Approval Motion;

WHEREAS, Settling Defendants do not oppose the Court's entry of this Order Granting Preliminary Approval;

WHEREAS, the Court finds that it has jurisdiction over the action and each of the Parties for purposes of settlement and asserts jurisdiction over the Class Representatives for purposes of considering and effectuating the Settlement Agreement;

[WHEREAS, the Court held a hearing on the Preliminary Approval Motion on **_____, 2023**; and]

WHEREAS, the Court has considered all of the presentations and submissions related to the Preliminary Approval Motion and, having presided over and managed the proceedings in the MDL as Transferee Judge since December 7, 2018, pursuant to the Transfer Order of the same date, is familiar with the facts, contentions, claims, and defenses as they have developed in these proceedings, and is otherwise fully advised of all relevant facts in connection therewith;

**IT IS HEREBY ORDERED AS FOLLOWS:**

## I.    PRELIMINARY APPROVAL OF SETTLEMENT AGREEMENT

1.    The Court finds that the requirements of Rules 23(a)(1)-(4), 23(b), and 23(e) of the Federal Rules of Civil Procedure have been satisfied for purposes of preliminary approval of the Settlement Agreement, such that notice of the Settlement Agreement should be directed to Settlement Class Members and a Final Fairness Hearing should be set.

2.      The Settlement Agreement, including all Exhibits attached thereto, is preliminarily approved by the Court.

## II.    FINDINGS REGARDING THE SETTLEMENT CLASS

3.      The Settlement Class consists of, only for purposes of the Settlement Agreement:

(a)      All Public Water Systems in the United States of America that draw or otherwise collect from any Water Source that, on or before the Settlement Date, was tested or otherwise analyzed for PFAS and found to contain any PFAS at any level; and

(b)      All Public Water Systems in the United States of America that, as of the Settlement Date, are (i) subject to the monitoring rules set forth in UCMR 5 (*i.e.*, "large" systems serving more than 10,000 people and "small" systems serving between 3,300 and 10,000 people), or (ii) required under applicable state or federal law to test or otherwise analyze any of their Water Sources or the water they provide for PFAS before the UCMR 5 Deadline.

4.      The following are excluded from the Settlement Class:

(a)      Any Public Water System that is located in Bladen, Brunswick, Columbus, Cumberland, New Hanover, Pender, or Robeson counties in North Carolina; provided, however, that any such system otherwise falling within clauses (a) or (b) of Paragraph 3 of this Order will be included within the Settlement Class if it so requests.

(b)      Any Public Water System that is owned and operated by a State government and cannot sue or be sued in its own name, which systems

within clauses (a) and (b)(i) of Paragraph 3 of this Order are listed in Exhibit I to the Settlement Agreement.

(c)     Any Public Water System that is owned and operated by the federal government and cannot sue or be sued in its own name, which systems within clauses (a) and (b)(i) of Paragraph 3 of this Order are listed in Exhibit J to the Settlement Agreement.

(d)     Any privately owned well or surface water system that is not owned by, used by, or otherwise part of, and does not draw water from, a Public Water System within the Settlement Class.

5.     The Court finds that it will likely be able to certify the Settlement Class for purposes of judgment on the proposed Settlement Agreement. The Settlement Class is likely to meet the numerosity, commonality, typicality, and adequacy requirements of Rule 23(a)(1)-(4) of the Federal Rules of Civil Procedure and the predominance and superiority requirements of Rule 23(b)(3) of the Federal Rules of Civil Procedure.

6.     The following Class Representatives are preliminarily appointed for purposes of the Settlement: City of Camden Water Services; City of Brockton; City of Sioux Falls; California Water Service Company; City of Delray Beach; Coraopolis Water & Sewer Authority; Verona; Dutchess County Water and Wastewater Authority and Dalton Farms Water System; South Shore; City of Freeport; Martinsburg Municipal Authority; Seaman Cottages; Village of Bridgeport; City of Benwood; Niagara County; City of Pineville; City of Iuka; and City of Amory.

7.     Michael A. London and the law firm of Douglas & London; Scott Summy and the law firm of Baron & Budd; Paul J. Napoli and the law firm of Napoli Shkolnik; and  Elizabeth

Fegan and the law firm of Fegan Scott LLC are preliminarily appointed as Class Counsel under Rule 23(g)(3) of the Federal Rules of Civil Procedure.

## III. FINDINGS REGARDING THE SETTLEMENT AGREEMENT

8. Under Rule 23(e)(2) of the Federal Rules of Civil Procedure, in order to approve the proposed Settlement Agreement, the Court must determine whether it is fair, reasonable, and adequate. Rule 23(e)(2) sets forth factors that the Court must consider in reaching that determination.

9. The Parties have provided the Court sufficient information, including in the Preliminary Approval Motion and related submissions and presentations, to enable the Court to determine whether to give notice of the proposed Settlement Agreement to the Settlement Class. The proposed Settlement Agreement is the product of intensive, arm's-length, non-collusive negotiations overseen by the Court-appointed mediator, Honorable Layn Phillips; has no obvious deficiencies; does not improperly grant preferential treatment to the Class Representatives; and is fair, reasonable, and adequate. Accordingly, the Court has taken the Rule 23(e)(2) factors and applicable precedent into account in finding that it will likely be able to approve the proposed Settlement Agreement as fair, reasonable, and adequate.

10. The Court finds that it will likely be able to approve, under Rule 23(e)(2) of the Federal Rules of Civil Procedure, the proposed Settlement Agreement.

## IV. NOTICE TO SETTLEMENT CLASS MEMBERS

11. Under Rule 23(c)(2) of the Federal Rules of Civil Procedure, the Court finds that the Notice set forth in Exhibit E to the Settlement Agreement, the Summary Notice set forth in Exhibit F to the Settlement Agreement, and the Notice Plan set forth in Exhibit G to the Settlement Agreement, (a) is the best practicable notice; (b) is reasonably calculated under the circumstances to apprise Settlement Class Members of the pendency of this action and the Settlement Agreement

and of their right to object to or exclude themselves from the proposed Settlement Class; (c) is reasonable and constitutes due, adequate, and sufficient notice to all Persons entitled to receive notice; and (d) meets all applicable requirements of Rule 23 of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), and other applicable laws and rules.

12.     The Court approves the Notice, the Summary Notice, and the Notice Plan, and hereby directs that the Notice and the Summary Notice be disseminated pursuant to the Notice Plan to Settlement Class Members under Rule 23(e)(1) of the Federal Rules of Civil Procedure.

13.     The Notice Plan shall commence no later than fourteen (14) calendar days after entry of this Order Granting Preliminary Approval, on _____, **2023**, so as to commence the period during which Settlement Class Members may opt out from the Settlement Class and Settlement or object to the Settlement.

## V.    PROCEDURE FOR REQUESTS FOR EXCLUSION AND OBJECTIONS

14.     The procedure for Requests for Exclusion set forth in Paragraph 9.7 of the Settlement Agreement and the instructions in the Notice regarding the procedures that must be followed to opt out of the Settlement Class and Settlement are approved.

15.     Any Settlement Class Member wishing to opt out of the Settlement Class and Settlement must submit a written Request for Exclusion to the Notice Administrator, and serve a copy of such written request on Class Counsel and Settling Defendants' Counsel at the addresses set forth in the Notice.  Such written request must be received by the Notice Administrator no later than the date sixty (60) calendar days following the commencement of the Notice Plan (as described in Paragraph 13 of this Order), which is the last day of the opt out period.  The last day of the opt out period is _____, **2023**.

16.     To be effective, the Request for Exclusion must certify, under penalty of perjury in accordance with 28 U.S.C. § 1746, that the filer has been legally authorized to exclude the Person from the Settlement and must: (a) provide an affidavit or other proof of the standing of the Person requesting exclusion and why they would be a Settlement Class Member absent the Request for Exclusion; (b) provide the filer's name, address, telephone and facsimile number and email address (if available); (c) provide the name, address, telephone number, and e-mail address (if available) of the Person whose exclusion is requested; and (d) be received by the Notice Administrator no later than the date specified in Paragraph 15 of this Order.  No "mass," "class," "group" or otherwise combined Request for Exclusion shall be valid, and no Person within the Settlement Class may submit a Request for Exclusion on behalf of any other Settlement Class Member.  Any Settlement Class Member that does not submit a timely and valid Request for Exclusion submits to the jurisdiction of the Court and, unless the Settlement Class Member submits an Objection that complies with the provisions of Paragraphs 19 through 21 of this Order, shall waive and forfeit any and all objections the Settlement Class Member may have asserted.

17.     Pursuant to Section 10 of the Settlement Agreement, the Settling Defendants shall have the option, in their sole discretion, to terminate the Settlement Agreement following notice of Requests for Exclusion if any of the conditions set forth in Paragraph 10.1 of the Settlement Agreement are satisfied.  Settling Defendants shall have until fourteen (14) Business Days after the deadline for submitting Requests for Exclusion set forth in Paragraph 15 of this Order to provide Class Counsel notice of their exercise of the Walk-Away Right.  The Notice Administrator shall provide Settling Defendants access to all Requests for Exclusion as they are served on the Notice Administrator.

18.     The procedure for objecting to the Settlement or to an award of fees or expenses to Class Counsel, as set forth in Paragraph 9.6 of the Settlement Agreement, is approved.

19.     A Settlement Class Member who wishes to object to the Settlement or to an award of fees or expenses to Class Counsel must file a written and signed statement designated "Objection" with the Clerk of the Court and serve a copy of such Objection on Class Counsel and Settling Defendants' Counsel at the addresses set forth in the Notice.  All Objections must certify, under penalty of perjury in accordance with 28 U.S.C. § 1746, that the filer has been legally authorized to object on behalf of the Settlement Class Member and must provide (a)  an affidavit or other proof of the Settlement Class Member's standing; (b) the name, address, telephone and facsimile number and email address (if available) of the filer and the Settlement Class Member; (c) the name, address, telephone, and facsimile number and email address (if available) of any counsel representing the Settlement Class Member; (d) all objections asserted by the Settlement Class Member and the specific reason(s) for each objection, including all legal support and evidence the Settlement Class Member wishes to bring to the Court's attention; (e) an indication as to whether the Settlement Class Member wishes to appear at the Final Fairness Hearing; and (f) the identity of all witnesses the Settlement Class Member may call to testify.

20.     All Objections shall be filed and served no later than the date sixty (60) calendar days following the commencement of the Notice Plan (as described in Paragraph 13 of this Order), which is the last day of the objection period.   The last day of the objection period is _____, **2023**.  Any Objection not filed and served by such date shall be deemed waived.

21.     A Settlement Class Member may object either on its own or through an attorney hired at that Settlement Class Member's own expense, provided the Settlement Class Member has

not submitted a written Request for Exclusion.  An attorney asserting objections on behalf of a Settlement Class Member must, no later than the deadline for filing Objections specified in Paragraph 20 of this Order, file a notice of appearance with the Clerk of Court and serve a copy of such notice on Class Counsel and Settling Defendants' Counsel at the addresses set forth in the Notice.

22.    Any Settlement Class Member who fully complies with the provisions of Paragraph 9.6 of the Settlement Agreement and Paragraphs 19 through 21 of this Order may, in the Court's discretion, appear at the Final Fairness Hearing to object to the Settlement or to the award of fees and costs to Class Counsel.  Any Settlement Class Member who fails to comply with the provisions of Paragraph 9.6 of the Settlement Agreement and Paragraphs 19 through 21 of this Order shall waive and forfeit any and all objections the Settlement Class Member may have asserted.

23.    The assertion of an Objection does not operate to opt the Person asserting it out of, or otherwise exclude that Person from, the Settlement Class.  A Person within the Settlement Class can opt out of the Settlement Class and Settlement only by submitting a valid and timely Request for Exclusion in accordance with the provisions of Paragraph 9.7 of the Settlement Agreement and Paragraphs 15 to 16 this Order.

24.    No later than fifteen (15) calendar days prior to the date set for the Fairness Hearing, *i.e.*, by _____, 202__, the Notice Administrator shall prepare and file with the Court, and serve on Class Counsel and Settling Defendants' Counsel, a list of all Persons who have timely filed and served Requests for Exclusion or Objections.

## VI.    FINAL FAIRNESS HEARING

25.    A Final Fairness Hearing shall take place on the _____ **day of** _____, 202_ **at** _____ **o'clock in the a.m./p.m.**, at which the Court will consider submissions regarding the proposed Settlement Agreement, including any Objections, and whether:  (a) to approve thereafter

the Settlement Agreement as fair, reasonable, and adequate, pursuant to Rule 23 of the Federal Rules of Civil Procedure, (b) to certify the Settlement Class, and (c) to enter the Order Granting Final Approval; (d) enter judgment dismissing the Released Claims as set forth in the Settlement Agreement; and (e) permanently enjoin any Settlement Class Member from asserting or pursuing any Released Claim against any Released Person in any forum as provided in Paragraph 9.8 of the Settlement Agreement. The Final Fairness Hearing shall be subject to adjournment by the Court without further notice, other than that which may be posted by the Court on the Court's website.

26.     Class Counsel and Settling Defendants' Counsel shall file any response to any Objections, or any papers in support of Final Approval of the Settlement Agreement, no fewer than fourteen (14) calendar days prior to the date set for the Final Fairness Hearing, *i.e.*, by _____, 202__.

27.     Class Counsel shall file a motion for attorneys' fees, costs, and Class Representative service awards at least twenty (20) Business Days prior to the deadline for submitting Objections set forth in Paragraph 20 of this Order.

## VII.    STAY ORDER AND INJUNCTION

28.     All litigation in any forum brought by or on behalf of a Releasing Person and that asserts a Released Claim, and all Claims and proceedings therein, are hereby stayed as to the Released Persons, except as to proceedings that may be necessary to implement the Settlement. All Releasing Persons are enjoined from filing or prosecuting any Claim in any forum or jurisdiction (whether federal, state, or otherwise) against any of the Released Persons, and any such filings are stayed; provided, however, that this Paragraph shall not apply to any Person who files a timely and valid Request for Exclusion beginning as of the date such Request for Exclusion becomes effective. The provisions of this Paragraph will remain in effect until the earlier of (i) the Effective Date, in which case such provisions shall be superseded by the provisions of the Order

Granting Final Approval, and (ii) the termination of the Settlement Agreement in accordance with its terms. This Order is entered pursuant to the Court's Rule 23(e) findings set forth above, in aid of its jurisdiction over the members of the proposed Settlement Class and the settlement approval process under Rule 23(e).

## VIII.  OTHER PROVISIONS

29.    Matthew Garretson of Wolf/Garretson LLC, P.O. Box 2806, Park City, UT 8406 is appointed to serve as the Special Master and is appointed as the "administrator" of the Qualified Settlement Fund escrow account within the meaning of Treasury Regulations § 1.468B-2(k)(3).

30.    Dustin Mire of Eisner Advisory Group, 8550 United Plaza Boulevard, Suite #1001, Baton Rouge, LA is appointed to serve as the Claims Administrator.

31.    Robyn Griffin, The Huntington National Bank, One Rockefeller Center, 10th Floor, New York, NY 10020 is appointed to serve as the Escrow Agent.

32.    Steven Weisbrot, Angeion Group, 1650 Arch Street, Suite 2210, Philadelphia, PA 19103, is appointed to serve as the Notice Administrator.

33.    The Court has reviewed the proposed Escrow Agreement and Section 7 of the Settlement Agreement and approves the Escrow Agreement and Section 7 of the Settlement Agreement and authorizes that the escrow account established pursuant to the Escrow Agreement be established as a "qualified settlement fund" within the meaning of Treasury Regulations § 1.468B-1. Such account shall constitute the Qualified Settlement Fund as defined in the Settlement Agreement.

34.    The "holdback assessment" required by Case Management Order No. 3 (Entry No. 72), entered by the Court on April 26, 2019, shall be assessed upon the Effective Date, before any portion of the Settlement Funds is distributed to Settlement Class Members or Class Counsel.

35.     If the Settlement Agreement is terminated or is not consummated for any reason, the Court's findings with respect to certification of the Settlement Class shall be void, the Litigation against the Released Persons for all purposes will revert to its status as of the Settlement Date, and any unexpended Settlement Funds shall be returned to Settling Defendants as provided in Paragraphs 9.9, 9.10, or 10.4 of the Settlement Agreement, as applicable.  In such event, Settling Defendants will not be deemed to have consented to certification of any class, and will retain all rights to oppose, appeal, or otherwise challenge, legally or procedurally, class certification or any other issue in the Litigation.  Likewise, if the Settlement does not reach Final Judgment, then the participation in the Settlement by any Class Representative or Settlement Class Member cannot be raised as a defense to their claims.

36.     The deadlines set forth in Paragraphs 13, 15, 20, and 24 of this Order may be extended, and the Final Fairness Hearing may be adjourned, by Order of the Court, for good cause shown, without further notice to the Settlement Class Members, except that notice of any such extensions or adjournments shall be posted on a website maintained by the Notice Administrator, as set forth in the Notice.

37.     Class Counsel, Settling Defendants' Counsel, the Special Master, the Notice Administrator, and the Escrow Agent are authorized to take, without further Court approval, all actions under the Settlement Agreement that are permitted or required to be taken following entry of this Order Granting Preliminary Approval and prior to entry of the Order Granting Final Approval, including effectuation of the Notice Plan.

38.     Class Counsel and Settling Defendants' Counsel are authorized to use all reasonable procedures in connection with administration and obtaining approval of the Settlement Agreement that are not materially inconsistent with this Order Granting Preliminary Approval or

the Settlement Agreement, including making, without further approval of the Court or notice to Settlement Class Members, minor changes to the Settlement Agreement, to the form or content of the Notice, or otherwise to the extent the Parties jointly agree such minor changes are reasonable and necessary.

39.     The Court shall maintain continuing jurisdiction over these proceedings (including over the administration of the Qualified Settlement Fund) for the benefit of the Settlement Class.

**SO ORDERED** this _____ day of _____, 2023.

_____
The Honorable Richard M. Gergel
United States District Judge

# **EXHIBIT B**

**EXHIBIT B: [PROPOSED] ORDER GRANTING FINAL APPROVAL**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

|  |  |  |
|---|---|---|
| **IN RE:  AQUEOUS FILM-FORMING FOAMS PRODUCTS LIABILITY LITIGATION** | ) ) ) ) ) | **MDL No. 2:18-mn-2873** |

**[PROPOSED] FINAL ORDER AND JUDGMENT**
**APPROVING SETTLEMENT AGREEMENT**

Before the Court is the Motion of Class Counsel for Final Approval of Settlement Agreement (the "Final Approval Motion"), pursuant to Rules 23(a), 23(b), and 23(e) of the Federal Rules of Civil Procedure, which seeks (1) Final Approval of the Settlement Agreement; (2) final certification, for settlement purposes only, of the Settlement Class; (3) a judgment dismissing Claims in the Litigation asserted by Settlement Class Members against Released Persons, and (4) a permanent injunction prohibiting any Settlement Class Member from asserting or pursuing any Released Claim against any Released Person in any forum.

WHEREAS, a proposed Settlement Agreement has been reached by and among (i) Class Representatives, individually and on behalf of the Settlement Class Members, by and through Class Counsel, and (ii) defendants The Chemours Company, The Chemours Company FC, LLC, DuPont de Nemours, Inc., Corteva, Inc., and E.I. DuPont de Nemours and Company n/k/a EIDP, Inc.;

WHEREAS, the Court, for the purposes of this Final Order and Judgment, adopts all defined terms as set forth in the Settlement Agreement;

WHEREAS, on _____, **2023**, the Court entered an Order Granting Preliminary Approval that, among other things:  (1) preliminarily approved the Settlement Agreement; (2) preliminarily certified the Settlement Class, for settlement purposes only; (3) approved the Notice, Summary Notice, and Notice Plan and directed that notice be disseminated to Settlement Class Members according to the Notice Plan; (4) appointed Class Counsel and Class Representatives; (5) scheduled a Final Fairness Hearing to consider final approval of the Settlement Agreement; and (6) stayed all proceedings in the MDL and other Litigation as to Settling Defendants;

WHEREAS, in the Settlement Agreement, the Settlement Class is defined as follows:  (a) all Public Water Systems in the United States of America that draw or otherwise collect from any Water Source that, on or before the Settlement Date, was tested or otherwise analyzed for PFAS and found to contain any PFAS at any level; and (b) all Public Water Systems in the United States of America that, as of the Settlement Date, are (i) subject to the monitoring rules set forth in UCMR 5 (*i.e.*, "large" systems serving more than 10,000 people and "small" systems serving between 3,300 and 10,000 people), or (ii) required under applicable state or federal law to test or otherwise analyze any of their Water Sources or the water they provide for PFAS before the UCMR 5 Deadline;

WHEREAS, Paragraph 5.1.2 of the Settlement Agreement specifies certain exclusions from the Settlement Class;

WHEREAS, on _____, **202** , the Court held the Final Fairness Hearing to consider whether the Settlement Agreement was fair, reasonable, adequate, and in the best interests of the Settlement Class; and

WHEREAS, the Court has considered all of the presentations and submissions related to the Final Approval Motion, including arguments of counsel for the Parties and of the Persons who appeared at the Final Fairness Hearing, and having presided over and managed the proceedings in the MDL as Transferee Judge since December 7, 2018, pursuant to the Transfer Order of the same date, is familiar with the facts, contentions, claims, and defenses as they have developed in these proceedings, and is otherwise fully advised of all relevant facts in connection therewith;

**IT IS HEREBY ORDERED AS FOLLOWS:**

1.      This Final Order and Judgment certifies the Settlement Class under Rule 23 of the Federal Rules of Civil Procedure for settlement purposes only.

2.      The Court finds that the requirements of Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure are met.  The Court finds that for settlement purposes:  (a) the Settlement Class Members are ascertainable;  (b) the Settlement Class Members are so numerous that their joinder is impracticable; (c) there are questions of law and fact common to the Settlement Class; (d) the claims of the Class Representatives are typical of the Settlement Class Members; (e) the Class Representatives and Class Counsel have fairly and adequately represented and protected the interests of all Settlement Class Members; and (f) the questions of law or fact common to the Settlement Class predominate over any questions affecting only individual Settlement Class Members, and a class action is superior to other available methods for the fair and efficient resolution of the controversy.

3.      The Court confirms the appointment as Class Representatives of _____, who were preliminarily approved in the Order Granting Preliminary Approval.

4.      Pursuant to Rule 23(g) of the Federal Rules of Civil Procedure, the Court confirms the appointment as Class Counsel of Michael A. London and the law firm of Douglas &

London; Scott Summy and the law firm of Baron & Budd;  Paul J. Napoli and the law firm of Napoli Shkolnik; and Elizabeth Fegan and the law firm of Fegan Scott LLC, who were preliminarily approved in the Order Granting Preliminary Approval.

     5.     If a proposed settlement class satisfies Rules 23(a) and (b) of the Federal Rules of Civil Procedure, the Court must determine whether the settlement itself is fair, reasonable, and adequate.  *See* Fed. R. Civ. P. 23(e)(2) (enumerating factors the Court must consider).  The Court has analyzed the Rule 23(e)(2) factors in light of applicable precedent and has concluded that the Settlement Agreement is fair, reasonable, and adequate.

     a.     Class Counsel and the Class Representatives have adequately represented the Settlement Class;

     b.     The Settlement Agreement was negotiated at arm's length under the supervision of the Court-appointed mediator, Honorable Layn Phillips and is recommended by experienced Counsel;

     c.     The relief provided to the Settlement Class is reasonable, adequate, and fair, taking into account relative strength of the parties' cases as well as the uncertainties of litigation on the merits; the risk, complexity, expense and likely duration of the litigation; and the stage of the litigation, including the factual record developed by the parties; the costs, risks, and delay of trial and appeal in the absence of settlement; the effectiveness of the proposed methods of distributing the Settlement Agreement relief to the Settlement Class; the terms and timing of the proposed fee award; and any agreement required to be identified under Rule 23(e)(3).

     d.     The Settlement Agreement treats Settlement Class Members equitably relative to each other.

6.      Therefore, pursuant to, and in accordance with, Rule 23 of the Federal Rules of Civil Procedure, the Court hereby fully and finally approves the Settlement Agreement in its entirety and finds that the Settlement Agreement is fair, reasonable, and adequate.  The Court also finds that the Settlement Agreement is in the best interests of the Class Representatives and all Settlement Class Members, and is consistent and in compliance with all applicable laws and rules. The Court further finds that the Settlement Agreement is the product of intensive, thorough, serious, informed, and non-collusive negotiations overseen by the Court-appointed mediator.  The Court further finds that the Parties have evidenced full compliance with the Order Granting Preliminary Approval.

7.      The Settlement Class Members and Settling Defendants are ordered to implement, perform, and consummate each of the obligations set forth in the Settlement Agreement in accordance with its terms.

8.      All objections to the Settlement Agreement are found to be without merit and are overruled.

9.      Notice in the form of the Notice and Summary Notice was provided to Settlement Class Members pursuant to the Notice Plan approved in the Order Granting Preliminary Approval, including direct mailing where practicable.  Class Counsel worked together with the Notice Administrator to fashion a Notice Plan that was tailored to the Settlement Class Members. Class Counsel have established that the Notice Plan was implemented.

10.      The Court finds that the Notice and Summary Notice disseminated pursuant to the Notice Plan:  (a) was implemented in accordance with the Order Granting Preliminary Approval; (b) constituted the best notice practicable under the circumstances; (c) constituted notice that was reasonably calculated, under the circumstances, to apprise Settlement Class Members

(i) of the effect of the Settlement Agreement, (ii) of the amount of attorneys' fees and costs sought by Class Counsel, (iii) of their right to submit a Request for Exclusion or to object to any aspect of the Settlement Agreement, and (iv) of their right to appear at the Final Fairness Hearing; (d) constituted due, adequate, and sufficient notice to all Persons entitled to receive notice of the Settlement Agreement; and (e) satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause) and other applicable laws and rules.

11.    Settling Defendants complied with the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332(d), 1453, 1711-1715, and its notice requirements by providing appropriate federal and state officials with information about the Settlement Agreement.

12.    As set forth in Section 12 of the Settlement Agreement, the Releasing Persons have expressly, intentionally, voluntarily, fully, finally, irrevocably, and forever released, waived, compromised, settled, and discharged the Released Persons from any and all Released Claims. Accordingly, the Court hereby orders the dismissal, without further costs, of each case in the MDL and all other pending Litigation brought by or on behalf of a Releasing Person in any forum or jurisdiction (whether federal, state, or otherwise) with prejudice to the extent it contains Released Claims against Released Persons. Any plaintiff in a Litigation asserting Claims against Released Persons that the plaintiff believes are preserved under Paragraphs 12.1.2(a) or 12.1.3(y) of the Settlement Agreement shall execute a stipulation of partial dismissal with prejudice in the form provided for in Exhibit L to the Settlement Agreement within thirty (30) calendar days of the Effective Date; provided, however, that in the event that any such plaintiff fails to file the required stipulation of dismissal in a Litigation within thirty (30) calendar days of the Effective Date, such Litigation shall be dismissed by operation of this Order Granting Final Approval (x) with prejudice

to the extent it contains Released Claims against Released Persons, and (y) without prejudice to the extent it contains Claims against Released Persons that are preserved under Paragraphs 12.1.2(a) or 12.1.3(y) of the Settlement Agreement.  With respect to any Claims that are not dismissed or that are dismissed without prejudice under this Paragraph, Released Persons shall retain all defenses, including the right to argue that the Claim is not preserved and is released.

13.    All Releasing Persons are permanently barred and enjoined from commencing, filing, initiating, instituting, prosecuting, and/or maintaining any judicial, arbitral, or regulatory action, in any forum or jurisdiction (whether federal, state, or otherwise), with respect to any and all Released Claims or challenging the validity of the releases under the Settlement Agreement.   Upon the Effective Date, the injunction set forth in this Paragraph shall supersede the stay and injunction set forth in the Order Granting Preliminary Approval.

14.    The relief provided in the Settlement Agreement shall be the exclusive remedy by or on behalf of any and all Releasing Persons with respect to Released Claims, and the Released Persons shall not be subject to liability or expense of any kind with respect to any Released Claims other than as set forth in the Settlement Agreement.  The Court finds that the relief provided in the Settlement Agreement fairly and adequately remedies any harm arising out of or relating to Public Water Systems in the Settlement Class to the extent allegedly caused by any Released Person that arises from or relates to PFAS in or affecting each such Public Water System or otherwise arises from or relates to any Released Claim.  The Court finds that the Settlement is a good-faith settlement that, by operation of this Final Order and Judgment, has preclusive effect as to any other attempt to seek recovery from a Released Person for alleged harm to a Public Water System that is a Settlement Class Member.

15.     The Court finds that the Settlement is a good-faith settlement that bars any Claim by any Non-Released Person against any Released Person for contribution, indemnification, or otherwise seeking to recover all or a portion of any amounts paid by or awarded against that Non-Released Person to any Settlement Class Member or Releasing Person by way of settlement, judgment, or otherwise on any Claim that would be a Released Claim were such Non-Released Person a Settling Defendant, to the extent that a good-faith settlement (or release thereunder) has such an effect under applicable law, including, without limitation, S.C. Code Ann. § 15-38-50 and similar laws in other states or jurisdictions.

16.     As set forth in the Order Granting Preliminary Approval, the Court confirms the appointment of Matthew Garretson of Wolf/Garretson LLC as the Special Master; Steven Weisbrot of Angeion Group as the Notice Administrator; Dustin Mire of Eisner Advisory Group as the Claims Administrator; and Robyn Griffin of Huntington National Bank as the Escrow Agent.

17.     The Court retains continuing and exclusive jurisdiction over the Parties and their counsel, all Settlement Class Members, the Special Master, the Notice Administrator, the Claims Administrator, the Escrow Agent, and the Settlement Agreement, to interpret, implement, administer, and enforce the Settlement Agreement and this Final Order and Judgment.  In addition, the Parties and the Settlement Class Members are hereby deemed to have submitted to the exclusive jurisdiction of the Court for any suit, action, proceeding, or dispute arising from, resulting from, in any way relating to or in connection with the Settlement Agreement.  The Court also retains continuing jurisdiction over the Qualified Settlement Fund.

18.     This Final Order and Judgment incorporates and makes a part hereof the Settlement Agreement (which includes the Exhibits) filed with the Court on _____, 2023, including definitions of the terms used therein.  This Final Order and Judgment shall serve as an

enforceable injunction by the Court for purposes of the Court's continuing jurisdiction related to the Settlement Agreement.

19.     This Final Order and Judgment, the Order Granting Preliminary Approval, the Settlement Agreement, and the documents, filings, and proceedings relating thereto, and any actions taken by the Settling Defendants in the negotiation, execution, entry into, or satisfaction of the Settlement Agreement:  (a) do not, and shall not be construed or interpreted to, admit or concede any liability or wrongdoing of any Settling Defendant, acknowledge any validity to the Claims asserted in the Litigation, acknowledge that certification of a litigation class is appropriate as to any Claim, or acknowledge any weakness in the defenses asserted in the Litigation or any other suit, action, or proceeding; and (b) shall not be construed, deemed, or offered as an admission or concession by any of the Parties or Settlement Class Members or as evidentiary, impeachment, or other material available for use or subject to discovery in any suit, action, or proceeding (including the Litigation), except (i) as required or permitted to comply with or enforce the terms of the Settlement Agreement, the Order Granting Preliminary Approval, or this Final Order and Judgment, or (ii) in connection with a defense based on *res judicata*, claim preclusion, collateral estoppel, issue preclusion, relative degree of fault, release, or other similar theory asserted by any of the Released Persons.  In the event that the Settlement Agreement does not become effective pursuant to its terms, the Settling Defendants retain full rights to contest certification of any class for litigation purposes.

20.     Without further approval from the Court, and without the express written consent of Class Counsel and Settling Defendants' Counsel, on behalf of all Parties, the Settlement Agreement is not subject to any change, modification, amendment, or addition.

21.     The terms of the Settlement Agreement and of this Final Order and Judgment are forever binding on the Parties and Settlement Class Members, as well as their respective heirs, executors, administrators, predecessors, successors, affiliates, and assigns. Settlement Class Members include all Persons within the definition of the Settlement Class in Paragraph 5.1 of the Settlement Agreement and who did not submit timely and valid Requests for Exclusion that were recognized as such in accordance with the procedures in the Settlement Agreement and the Order Granting Preliminary Approval.

22.     Class Counsel are hereby awarded attorneys' fees, costs, and expenses in the amount of _____.  Pursuant to Paragraph 11.2 of the Settlement Agreement, such amount shall be paid from the Qualified Settlement Fund by the Escrow Agent to Class Counsel, upon production to the Escrow Agent of a copy of this Order, no later than fourteen (14) calendar days after the Effective Date, if such date occurs.  Settling Defendants shall have no obligation for such amounts.

23.     The "holdback assessment" required by Case Management Order No. 3 (Entry No. 72), entered by the Court on April 26, 2019, shall be assessed upon the Effective Date, before any portion of the Settlement Funds is distributed to Settlement Class Members or Class Counsel.

24.     In the event that the Settlement does not reach Final Judgment, this Final Order and Judgment, the Order Granting Preliminary Approval, and any other orders of the Court relating to the Settlement Agreement shall be deemed vacated, null and void, and of no further force or effect, except as otherwise provided by the Settlement Agreement, and any unexpended Settlement Funds shall be returned to Settling Defendants as provided in Paragraph 9.10 of the Settlement Agreement.

**SO ORDERED** this _____ day of _____, 202__.

_____
The Honorable Richard M. Gergel
United States District Judge

# **EXHIBIT C**

## EXHIBIT C:  ALLOCATION PROCEDURES

This Document describes the Allocation Procedures referred to in Section 11.5 of the Settlement Agreement.  All capitalized terms not otherwise defined herein shall have the meanings set forth in the Settlement Agreement (which are included in the Definitions Annex attached hereto).

The Court will appoint a Special Master and Claims Administrator pursuant to Rule 53 of the Federal Rules of Civil Procedure to oversee the allocation of the Settlement Funds. They will adhere to their duties set forth herein and in the Settlement Agreement. The Special Master will generally oversee the Claims Administrator and make any final decision(s) related to any appeals by Qualifying Settlement Class Members and any ultimate decision(s) presented by the Claims Administrator. The Claims Administrator will perform the actual modeling, allocation and payment functions described below. The Claims Administrator will seek assistance from the Special Master when needed. The Claims Administrator may also seek the assistance of Interim Class Counsel's consultants who assisted in designing the Allocation Procedures.

Qualifying Settlement Class Members fall into one of two categories, Phase One Qualifying Settlement Class Members or Phase Two Qualifying Settlement Class Members.  The Settlement Funds will be allocated between and among Phase One Qualifying Settlement Class Members and Phase Two Qualifying Settlement Class Members as set forth in the Settlement Agreement and these Allocation Procedures.

The Claims Administrator shall not allow for duplicate recoveries for PFAS in or entering a Settlement Class Member's Public Water System.

A Settlement Class Member will not be allocated or receive its share of the Settlement Funds if it does not submit a timely and complete Claims Form.

Claims Forms will be available online and can be submitted to the Claims Administrator electronically or on paper. Putative Settlement Class Members may submit Claims Forms at any time following Preliminary Approval, but will not be assessed (other than for deficiencies), scored or paid until after the Effective Date. The Claims Forms will vary depending on the applicable class membership category (Phase One or Phase Two) and on the specific fund(s) from which compensation is sought.

**DEFINITIONS**

As used in this Settlement Agreement and its Exhibits, the following capitalized terms have the defined meanings set forth below.  Unless the context requires otherwise, (a) words expressed in the masculine include the feminine and gender neutral, and vice versa; (b) the word "will" has the same meaning as the word "shall"; (c) the word "or" is not exclusive; (d) the word "extent" in the phrase "to the extent" means the degree to which a subject or other thing extends, and such phrase does not simply mean "if"; (e) references to any law include all rules, regulations, and sub-regulatory guidance promulgated thereunder; (f) the terms "include," "includes," and "including" are deemed to be followed by "without limitation"; and (g) references to dollars or "$" are to United States dollars.

All capitalized terms herein shall have the same meanings set forth in the Settlement Agreement or in the additional definitions set forth below.

"Adjusted Base Score" has the meaning set forth in Paragraph 4(h) of these Allocation Procedures.

Exhibit C                                                                                      Page 1

"Adjusted Flow Rate" has the meaning set forth in Paragraph 4(h) of these Allocation Procedures.

"Base Score" has the meaning set forth in Paragraph 4(h) of these Allocation Procedures.

"Baseline Testing" has the meaning set forth in Paragraph 4(b) of these Allocation Procedures.

"Capital Costs Component" has the meaning set forth in Paragraph 4(h) of these Allocation Procedures.

"Impacted Water Source" means a Water Source tested or otherwise analyzed for PFAS and found to contain any PFAS at any level.

"Litigation Bump" has the meaning set forth in Paragraph 4(h) of these Allocation Procedures.

"Operation and Maintenance Costs Component" has the meaning set forth in Paragraph 4(h) of these Allocation Procedures.

"PFAS Score" has the meaning set forth in Paragraph 4(h) of these Allocation Procedures.

"PFOA" means Chemical Abstracts Service registry number 45285–51–6 or 335–67–1, chemical formula C8F15CO2, perfluorooctanoate, along with its conjugate acid and any salts, isomers, or combinations thereof.

"PFOS" means Chemical Abstracts Service registry number 45298–90–6 or 1763–23–1, chemical formula C8F17SO3, perfluorooctanesulfonate, along with its conjugate acid and any salts, isomers, or combinations thereof.

"Proposed Federal PFAS MCLs" means the maximum level of a specific PFAS analyte (or a mixture containing one or more PFAS analytes) in Drinking Water that can be delivered to any user of a Public Water System without violating the rule proposed in 88 Fed. Reg. 18,638, 18,748 (Mar. 29, 2023) (proposing 40 C.F.R. § 141.61(c)(34)–(36) & n.1).  If the federal PFAS MCLs are finalized before the Court issues Final Approval, the final federal PFAS MCLs will be utilized instead of the Proposed Federal PFAS MCL; otherwise, the Proposed Federal PFAS MCLs will be used.

"Public Water Provider Bellwether Bump" has the meaning set forth in Paragraph 4(h) of these Allocation Procedures.

"Qualifying Test Result" means any result of a test conducted by or at the direction of a Qualifying Settlement Class Member or of a federal, state, or local regulatory authority, or any test result reported or provided to the Qualifying Settlement Class Member by a certified laboratory or other Person, that used any state- or federal agency-approved or -validated analytical method to analyze Drinking Water or water that is to be drawn or collected into a Qualifying Settlement Class Member's Public Water System.

"Regulatory Bump" has the meaning set forth in Paragraph 4(h) of these Allocation Procedures.

"Settlement Award" has the meaning set forth in Paragraph 4(h) of these Allocation Procedures.

"State MCL" means the Maximum Contaminant level of a specific PFAS analyte (or a mixture containing one or more PFAS analytes) in Drinking Water that can be delivered to any user of a Public Water System without violating the law of the state where that Public Water System is located as of the Settlement Date.

Exhibit C                                                                                                                  Page 2

1.    **Allocation Procedures Overview**

(a)    Qualifying Settlement Class Members fall into one of two categories:  Phase One Qualifying Settlement Class Members or Phase Two Qualifying Settlement Class Members, as defined below.  Phase One Qualifying Settlement Class Members will be allocated 55% of the Settlement Funds for Phase One, and the remainder of the Settlement Funds will be allocated to Phase Two Qualifying Settlement Class Members.[1]

(b)    A Settlement Class Member will not be allocated or receive its share of the Settlement Funds if it does not timely complete and submit the appropriate Claims Form(s).

(c)    The Claims Administrator will verify that each Person that submitted a Claims Form is a Qualifying Settlement Class Member and the category into which the Qualifying Settlement Class Member falls.

(i)    A Phase One Qualifying Settlement Class Member is a Public Water System in the United States of America that draws or otherwise collects from any Water Source that, on or before the Settlement Date, was tested or otherwise analyzed for PFAS and found to contain any PFAS at any level.

(ii)    Phase One Qualifying Settlement Class Members may receive an Allocated Amount of Settlement Funds from one or more of the following five separate payment sources as determined by the Claims Administrator using criteria described below:

(a)    Phase One Very Small Public Water System Payments;

(b)    Phase One Inactive Impacted Water System Payments;

(c)    Phase One Action Fund;

(d)    Phase One Supplemental Fund;

(e)    Phase One Special Needs Fund;

(iii)    .

(iv)    A Phase Two Qualifying Settlement Class Member is a Public Water System in the United States of America that:

(a)    is not a Phase One Qualifying Settlement Class Member and

(b)    is subject to the monitoring rules set forth in UCMR 5 or is required under applicable state or federal law to test or otherwise analyze any of their Water Sources or the

---

[1] This split is subject to adjustments by the Court.

Exhibit C                                                                                      Page 3

water they provide for PFAS before the UCMR 5 deadline.

(v)    Phase Two Qualifying Settlement Class Members may receive Settlement Funds from one or more of the following five separate sources, as as determined by the Claims Administrator using criteria described  below:

(a)    Phase Two Very Small Public Water System Payments;

(b)    Phase Two Baseline Testing Payments;

(c)    Phase Two Action Fund;

(d)    Phase Two Supplemental Fund; and

(e)    Phase Two Special Needs Fund

(d)    The initial step for establishing Class Membership and eligibility for compensation from any of the Settlement Funds is the completion of the appropriate Claims Form(s). The term "Claims Form" may refer to any of seven separate forms:

(i)    Phase One Public Water System Claims Form;

(ii)    Phase One Supplemental Fund Claims Form;

(iii)    Phase One Special Needs Fund Claims Form;

(iv)    Phase Two Testing Claims Form;

(v)    Phase Two Public Water System Claims Form;

(vi)    Phase Two Supplemental Fund Claims Form; and

(vii)    Phase Two Special Needs Fund Claims Form.

(e)    These Claims Forms will be available online and can be submitted to the Claims Administrator electronically or on paper. Putative Settlement Class Members can begin providing information required by the Claims Forms once an Order Granting Preliminary Approval has been issued, then finalize submission following the Effective Date.  The Claims Administrator will not assess (other than for deficiencies) or score Claims Forms or make any payment until after the Effective Date, although the Claims Administrator may notify the Settlement Class Member of any deficiency in the submission prior to that time.

(f)    The Claims Forms will vary depending on whether a Person is a Phase One Qualifying Settlement Class Member or Phase Two Qualifying Settlement Class Member and on the specific sources from which compensation is sought.

Exhibit C                                                                                                          Page 4

(g)    The Claims Administrator will review each Claims Form, verify the completeness of the data it contains, and follow up as appropriate. Based on this data, the Claims Administrator will then confirm whether each Person is a Phase One Qualifying Settlement Class Member or a Phase Two Qualifying Settlement Class Member, determine the amount each Person should be allocated from each source from which the Person seeks compensation.  Should any portion of the Settlement Funds remain following the completion of the claims process, it will be distributed to Phase One Qualifying Settlement Class Members who qualify for the Phase One Action Fund and Phase Two Qualifying Settlement Class Members who qualify for the Phase Two Action Fund in proportion to the Allocated Amount to each Person from each fund. None of any such remaining Settlement Funds shall be returned to the Settling Defendants.

(h)    The Claims Administrator shall not allow for duplicate recoveries for PFAS in or entering a Qualifying Settlement Class Member's Public Water System.

(i)    Submission of the relevant Public Water System Settlement Claims Forms will be considered timely if made within the Claims Period specified for each Claims Form below.

2.    **Verification of Qualifying Settlement Class Members**

(a)    The Claims Administrator will first verify that **each** Person is a Qualifying Settlement Class Member and meets all the following criteria:

    (i)    The Person is or owns  a Public Water System in the United States;

    (ii)    The Public Water System is identified in the U.S. EPA Safe Drinking Water Information System as one of the following:

        (a)    Community Water System,

        (b)    Non-Transient Non-Community Water System, or

        (c)    Transient Non-Community Water System?

(b)    The Claims Administrator will then determine whether the Qualifying Settlement Class Member meets at least one of the following criteria:

    (i)    The Public Water System draws or otherwise collects water from any Water Source that is an Impacted Water Source.

    (ii)    The Public Water System, as of June 30, 2023, is:

        (a)    Subject to the monitoring rules set forth in UCMR 5 (i.e., "large" systems serving more than 10,000 people and "small" systems serving between 3,300 and 10,000 people), or

(b)    Required under applicable federal or state law to test or otherwise analyze any of its Water Sources for PFAS before the UCMR 5 deadline.

(c)    The following Public Water Systems are excluded as Qualifying Settlement Class Members:

(i)    Any Public Water System that is in Bladen, Brunswick, Columbus, Cumberland, New Hanover, Pender, or Robeson counties in North Carolina; absent a request by these Public Water Systems to be included as a Qualifying Settlement Class Member.

(ii)    Any Public Water System owned and operated by a state government, that cannot sue or be sued in its own name.

(iii)    Any Public Water System owned and operated by the federal government, that cannot sue or be sued in its own name.

(iv)    Any privately owned well or surface water system that is not owned by, used by, or otherwise part of, and does not draw water from, a Public Water System within the Settlement Class.

3.    **Validation of Data**

(a)    The Claims Administrator will review the information provided on a Qualifying Settlement Class Member's relevant Claims Form(s) to ensure it is complete. Each Impacted Water Source identified by a Qualifying Settlement Class Member shall be submitted with verified supporting documentation as specified in the Claims Form(s).

(b)    The Claims Administrator will examine each Impacted Water Source's test results to confirm that all sample results are Qualifying Test Results. Test results must be submitted from untreated (raw) water samples, except that a result showing a detection of PFAS in a treated (finished) water sample may be used. However, all samples must be drawn from a source of water that is or was utilized by the Qualifying Settlement Class Member to provide Drinking Water.

(c)    The Claims Administrator will confirm each Qualifying Settlement Class Member's population served or number of service connections with information provided by the Qualifying Settlement Class Member to the U.S. EPA or state agency. Any conflicts in population served or service connections data will be resolved in favor of the data most recently reported to the United States EPA or state agency. For purposes of determining whether a Public Water System is subject to UCMR 5, a Public Water System's population served is determined by the SDWIS as of February 1, 2021.

(d)    For each Impacted Water Source identified by a Qualifying Settlement Class Member, the Claims Administrator will verify the maximum flow rate of a groundwater well or the flow rate of the water that enters the treatment plant of a surface water system. The Claims Administrator will also verify the three highest annual average flow rates of a groundwater well or the flow rate of the water that enters a treatment plant of a surface

Exhibit C                                                                      Page 6

water system over a ten-year period (2013-2022). Documentation related to the flow rates of each Impacted Water Source must be verified by each Qualifying Settlement Class Member as part of the Claims Form.

(e)      The Claims Administrator will notify Qualifying Settlement Class Members with incomplete Claims Forms of the requirements to cure deficiencies.

4.      **Phase One Allocation Methodology**

(a)      **Phase One Verification**

The Claims Administrator will verify each Phase One Qualifying Settlement Class Member's eligibility by confirming it has one or more Impacted Water Sources as of June 30, 2023.

(b)      **Phase One Baseline Testing**

(i)      Each Phase One Qualifying Settlement Class Member must test each of its Water Sources for PFAS, request from the laboratory that performs the analyses all analytical results, including the actual numeric values, and submit detailed PFAS test results to the Claims Administrator on a Claims Form by a date specified below. This process is referred to as "Baseline Testing."

(ii)      Any untreated or treated Water Source tested on or before the Settlement Date, using a state- or federal-approved methodology and found to contain a detection of PFAS, does not need to test that Water Source again for purposes of Baseline Testing.

(iii)      Non-Detections

(a)      Untreated Water Sources tested under the Testing Methodology on or after December 7, 2021 that have test results that do not show a detection of PFAS at any level do not have to retest.

(b)      Untreated and Treated Water Sources tested prior to December 7, 2021 that have test results that do not show a detection of PFAS at any level must retest.

(iv)      Baseline Testing requires the following:

(a)      PFAS analysis must be conducted at a minimum for PFAS analytes for which UCMR 5 requires,

(b)      the PFAS test results must report any measurable concentration of PFAS, regardless of whether the level of PFAS detected in the water is above or below UCMR 5's relevant minimum reporting level, and

(c)      testing shall be done on untreated (raw) water.

(v)      Failure to test and submit Qualifying Test Results for Water Sources will disqualify untested Water Sources from consideration for present and future payments.

(c)      **Phase One Supplemental Fund**

(i)      After the Effective Date, the Escrow Agent will transfer into the Phase One Supplemental Fund 5% of the total Settlement Funds allocated to Phase One Qualifying Settlement Class Members.

(ii)     The Phase One Supplemental Fund will be used to compensate the following Phase One Qualifying Settlement Class Member's Water Sources:

(a)      Those with Impacted Water Sources that do not exceed an applicable state MCL or the proposed federal PFAS MCLs at the time its Claims Form is submitted and because of later PFAS testing obtains a higher Qualifying Test Result with a measurable concentration of PFAS that exceeds the proposed federal PFAS MCLs or an applicable state MCL, or

(b)      Those with Impacted Water Sources that do not exceed an applicable state MCL or the proposed federal PFAS MCL at the time its Claims Form is submitted but later exceed a future state or federal PFAS MCL.

(iii)    If the federal PFAS MCLs are finalized before the Court issues Final Approval, the final federal PFAS MCLs will be utilized instead of the proposed federal PFAS MCL, otherwise the proposed federal PFAS MCLs will be used.

(iv)     A Phase One Qualifying Settlement Class Member may submit a Phase One Supplemental Fund Claims Forms to the Claims Administrator at any time up to and including December 31, 2030 or until the Supplemental Fund is exhausted.

(v)      For each Impacted Water Source that has submitted a Phase One Supplemental Claims Form, the Claims Administrator will individually calculate to approximate, as closely as is reasonably possible, the amount that each Impacted Water Source would have been allocated had it been in the Phase One Action Fund with an MCL exceedance.

(vi)     The Claims Administrator shall issue funds from the Phase One Supplemental Fund in amounts that reflect the difference between the amount the Impacted Water Source would have been allocated had it been in the Phase One Action Fund with

Exhibit C                                                                                    Page 8

an MCL exceedance and what the Qualifying Settlement Class Members has already received, if anything.

The Claims Administrator shall pay any money remaining in the Phase One Supplemental Fund as of December 31, 2030, to the Phase One Qualifying Settlement Class Members participating in the Phase One Action Fund.

(d)    **Phase One Special Needs Fund**

(i)    After the Effective Date, the Escrow Agent will transfer into the Phase One Special Needs Fund 5% of the total settlement funds allocated to Phase One Qualifying Settlement Class Members.

(ii)    Over the last decade, Qualifying Settlement Class Members may have taken different types of actions to address PFAS in their Impacted Water Sources. Many have also faced state PFAS advisories and regulations. Examples of such actions include, but are not limited to,: taking wells offline, reducing flow rates, drilling new wells, pulling water from other sources, and/or purchasing supplemental water.

(iii)    The Phase One Special Needs Fund is intended to compensate those Phase One Qualifying Settlement Class Members who spent money to address PFAS detections in their Impacted Water Sources. This is in addition to any other compensation provided by this settlement.

(iv)    Phase One Qualifying Settlement Class Members may submit to the Claims Administrator a Phase One Special Needs Fund Claims Forms up to 45 days after the deadline for the Public Water System Settlement Claims Form.

(v)    After receiving all timely Phase One Special Needs Fund Claims Forms, the Claims Administrator will review such forms and determine which Qualifying Settlement Class Members shall receive additional compensation and the amount of compensation.  The Claims Administrator will recommend the awards to the Special Master who will ultimately approve or reject them.

(vi)    Any monies leftover in the Phase One Special Needs Fund will be paid to Phase One Qualifying Settlement Class Members participating in the Phase One Action Fund on a pro rata basis. This does not include recipients of the Phase One Very Small Public Water System Payments or the Inactive Impacted Water System Payments.

(e)    **Phase One Public Water System Settlement Claims Forms**

Exhibit C                                                                      Page 9

(i)    The deadline for Phase One Qualifying Settlement Class Members to submit Phase One Public Water System Claims Forms for all Impacted Water Sources is 60 days after the Effective Date. This deadline can be extended by the Claims Administrator only if the Phase One Qualifying Settlement Class Member demonstrates that it has, prior to such deadline, submitted water samples necessary to meet the requirements of Baseline Testing and is awaiting analytical results from laboratory capable of issuing a Qualifying Test Result.

(ii)   The Claims Administrator will review each Phase One Public Water System Claims Form to determine whether the Phase One Qualifying Settlement Class Member should receive a Phase One Very Small Public Water System Payment, an Inactive Water System Payment or if they should participate in the Phase One Action Fund.

(f)    **Phase One Very Small Public Water System Payments**

(i)    All Phase One Qualifying Settlement Class Members that are listed in the SDWIS as Transient Non-Community Water Systems and Non-Transient Non-Community Water Systems serving less than 3,300 people may apply for Phase One Very Small Public Water System Payments.

(ii)   The Claims Administrator will issue Phase One Very Small Public Water System Payments for each Very Small Public Water System as follows:

(a)    Transient Non-Community Water Systems will receive $1,250.

(b)    Non-Transient Non-Community Water Systems serving less than 3,300 people will receive $1,750.

(iii)  Recipients of the Phase One Very Small Public Water System Payments are not eligible for any payments from the Phase One Supplemental Fund, Phase One Special Needs or the Phase One Action Fund.

(g)    **Inactive Impacted Water System Payments**

(i)    Qualifying Settlement Class Members that are classified in the SDWIS as Inactive that own one or more Impacted Water Source will receive a one-time payment of $500.

(ii)   Recipients of the Inactive Impacted Water Systems Payment are not eligible for any payments from the Phase One Supplemental Fund, Phase One Special Needs Fund, or the Phase One Action Fund.

---

Exhibit C                                                                                                    Page 10

(h)    **Phase One Action Fund**

(i)    The Claims Administrator will calculate the amount of the Phase One Action Fund after the Escrow Agent has transferred from that fund the amounts described above for the Phase One Special Needs Fund, the Phase One Supplemental Fund, the Inactive Impacted Water System Payments, and the Phase One Very Small Public Water System Payments. The Phase One Action Fund will be allocated to the Phase One Qualifying Settlement Class Member's Impacted Water Sources using the following allocation methodology.

(ii)    PFAS Score

(a)    For purposes of calculating each Impacted Water Source's PFAS Score, the Claims Administrator will examine the Phase One Qualifying Settlement Class Member's Phase One Public Water System Claims Form to determine the highest concentration, expressed in parts per trillion (ppt, or nanograms per liter), that the Impacted Water Source has shown, according to one or more Qualifying Test Results, for PFOA, for PFOS, and for any other single PFAS analyte listed on the Claims Form.

(b)    The Claims Administrator will determine each Impacted Water Source's PFAS Score by taking the **GREATER** result of either:

i)    the sum of the maximum levels of PFOA and PFOS, or

ii)    the sum of the maximum levels of PFOA and PFOS averaged with the square root of the maximum level of any other single PFAS analyte listed in the Claims Form.

Exhibit C                                                                 Page 11

**PFAS Score** = {[(PFOA (Max Level) + PFOS (Max Level)] + Other PFAS (Max level)$^{0.5}$} / 2

**Examples of Determining PFAS Score:**

CWS 1 owns and operates 4 water sources: Surface Water (SW) System A, Well B, Well C, and Well D. The maximum levels of each PFAS chemical of each water source and the PFAS Scores are listed below.

| Impacted Water Source | Sum of PFOS + PFOA | Avg. of (PFOA + PFOS) & Max Other PFAS | PFAS Score | Max PFOA | Max PFOS | Max PFNA | Max PFHxS | Max PFHxA |
|---|---|---|---|---|---|---|---|---|
| SW System A | 62 | 35.15 | 62 | 15 | 47 | 8.3 | 5 | 0 |
| Well B | 0.95 | .475 | 0.95 | 0.95 | 0 | 0 | 0 | 0 |
| Well C | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Well D | 15.2 | 27.6 | 27.6 | 12 | 3.2 | 0 | 1600 | 5.2 |

(iii)     **Adjusted Flow Rate**

(a)     Impacted Water Sources' flow rates can be reported in the Claims Forms in either gallons per minute (gpm) or million gallons per day (MGD). One thousand (1,000) gpm equals 1.44 MGD because there are one thousand four hundred forty (1,440) minutes in each day. The Claims Administrator must convert the MGD reported flow rates into gpm for all calculations.

(b)     Groundwater Impacted Water Sources should report flow rates from the groundwater well. Surface water Impacted Water Sources should report the flow rates from the water that enters the treatment plant.

(c)     The Claims Administrator will determine the adjusted flow rate of each Impacted Water Source by first averaging the three highest annual average flow rates that that the Qualifying Settlement Class Member drew from the groundwater Impacted Water Source or that entered the surface water treatment plant. The three highest annual average flow rates can be selected from a ten-year period from 2013-2022. This average will then be averaged with the verified maximum flow rate of a groundwater Impacted Water Source or the maximum flow rate entering a surface water Impacted Water Source.

(d)     If the Phase One Qualifying Settlement Class Member can demonstrate that an Impacted Water Source was taken offline or reduced its flow rate as a result of PFAS contamination and additional years are needed to obtain

Exhibit C                                                                 Page 12

accurate flow rates not impacted by PFAS, the Claims Administrator can consider years beyond the 2013-2022 timeframe.

(e)    For purposes if the Allocation Procedures, a purchased water connection from a seller that is a Water Source is not a Water Source.

(f)    For purposes of the Allocation Procedures, a Public Water System's multiple intakes from one distinct surface water source are deemed to be a single Impacted Water Source so long as the intakes supply the same water treatment plant and therefore only one adjusted flow rate is used.

(g)    For purposes of the Allocation Procedures, a Public Water System's intakes from one distinct surface water source that supply multiple water treatment plants, are deemed to each be a separate Impacted Water Source and therefore require an adjusted flow rate for each water treatment plant.

(h)    For purposes of the Allocation Procedures, a Public Water System's multiple groundwater wells (whether from one distinct aquifer or from multiple distinct aquifers) are deemed to each be a separate Impacted Water Source and therefore require an adjusted flow rate for each groundwater well.

(i)    If a water treatment plant is blending both surface water and groundwater before treatment, only one adjusted flow rate is required.

(j)    In the event a Public Water System owns both groundwater wells and surface water system(s) that have separate treatment plants, they shall be deemed to each be a separate Water Source.

(iv)    Base Score Calculations

(a)    The Base Score will be calculated using two primary components: a proxy for capital costs and a proxy for operation and maintenance (O&M) costs. Capital costs are driven primarily by the size of the Impacted Water Source. O&M costs are primarily driven by the size of the Impacted Water Source and the concentration of PFAS.

Base Score = Capital Costs Component + Operation and Maintenance Costs Component

Exhibit C                                                                                    Page 13

(b) **Capital Costs Component**

i) The EPA published a revision of its "Work Breakdown Structure-Based Cost Model for Granular Activated Carbon Drinking Water Treatment" in March 2023. This publication includes a Work Breakdown Structure (WBS) model that estimates the cost of treating PFAS contamination based on the flow rate of an Impacted Water System. A cost curve can be derived from the EPA WBS which expresses treatment costs in cost per thousand gallons produced. The below "Flow Rate Adjustment Factor" graph is the cost curve relating the treatment cost per thousand gallons as a function of overall size. This cost curve recognizes a decrease in unit cost as the flow rate for an Impacted Water Source increases. Each Impacted Water Source's capital costs component of the Base Score is calculated off this cost curve.

Capital Costs Component = (EPA unit cost * flow rate)

Treatment cost per thousand gallons $\underline{= 7.7245 * (\text{flow rate})^{-0.281}}$

Capital Costs Score = annual 1000 G units * treatment cost per thousand gallons



(c) Operation and Maintenance Costs Component

i) The factors that affect O&M can be complex and depend on a range of factors (including but not limited to influent source quality, pH,

Exhibit C                                                                 Page 14

temperature, type and concentration of PFAS influent, media used, etc.). However, the volume capacity of treatment media to remove PFAS decreases as the concentration of PFAS increases. This necessitates more frequent replacements of the treatment media, which increases the quantity of spent media that must be discarded. This increases the O&M costs of PFAS treatment.

ii)    There is an observed increase in O&M costs as PFAS concentrations increase. The available data suggests that as concentrations increase, O&M costs will increase in a non-linear, curved relationship as it is easier and less expensive to remove higher concentrations up to a certain level. The increase in O&M costs is thus a function of the PFAS levels and the size of the system (reflected in the capital cost component). The following equation represents this relative relationship which considers that all Qualifying Settlement Class Members will require basic O&M tied to the capital cost component as well as additional O&M driven by the level of PFAS concentrations.

O&M Cost Component = ((PFAS Modifier * PFAS Score) * Capital Cost Component + Capital Cost Component)

PFAS Modifier = 0.005

iii)    The result is an exponential reduction in the unit cost of PFAS removal as PFAS concentrations increase. This exponential effect is captured in part by the Allocation Procedures' nonlinear approach to flow rates and in part by the Allocation Procedures' use of a square-root factor for certain PFAS analytes.

(EPA unit cost * flow rate) + ((PFAS Modifier * PFAS Score) * Capital Cost Component + Capital Cost Component)

iv)    When the Base Score is calculated where the O&M Cost component and capital costs component are combined a roughly 3-fold difference is obtained over the regulatory threshold of 4ppt to 1000ppt. The results of this calculation are shown in the below example for the EPA WBS standard design system at 1494 GPM as a function of relative PFAS concentrations.

(EPA unit cost * flow rate) + ((PFAS Modifier * PFAS Score) * Capital Cost Component + Capital Cost Component)



<div style="background-color: yellow;">

**Example of Determining Base Score**

CWS 1's SW System A has a PFAS Score of 62 and an adjusted flow rate of 1,494 gpm.

Cost per 1,000 gallon production = 7.7245 * (1,494) $^{-0.281}$ = <u>.99</u>

Annual 1000 gallons units (1,494 * 60 * 24 *365) / 1,000 = <u>785,246</u>

Capital Costs Component = 785,246 * .99 = <u>777,828</u>

O&M Costs Component = ((62 * .005) * 777,828) +  777,828 = <u>1,018,955</u>

Base Score = 777,828 + 1,018,955 = <u>1,796,783</u>

</div>

   (v)    **Adjusted Base Score**

After calculating the Base Score of each Impacted Water Source, the Claims Administrator will apply any bumps to the based on certain factors defined below. This will yield the Adjusted Base Score for each Impacted Water Source.

     a)   **Regulatory Bump**:

       i)    An Impacted Water Source's Base Score will receive a regulatory bump if the Impacted Water Source:

         a.   exceeds the proposed federal PFAS MCL for PFOS or PFOA, (4 ppt PFOA, 4 ppt PFOS),

Exhibit C                                                                                                      Page 16

b. exceeds the proposed federal PFAS Hazard Index MCL (based on 9 ppt PFHxS, 10 ppt GenX chemicals, 10 ppt PFNA, 2000 ppt PFBS – applying the Hazard Index formula set forth in 88 Fed. Reg. 18,638, 18,748 (Mar. 29, 2023) (proposing 40 C.F.R. § 141.61(c)(36) & n.1 (2023)), or

c. exceeds an applicable state PFAS MCL that is below the proposed federal PFAS MCL for the same PFAS analyte, or exceeds an applicable state MCL for which there is no proposed federal PFAS MCL.

ii) The Claims Administrator will consider all proposed federal PFAS MCL and existing state MCLs for the same PFAS analyte existing on the date the Court issues a Final Approval to determine if an Impacted Water Source has ever exceeded any applicable standard.

iii) The Claims Administrator will adjust the Base Score for those Impacted Water Sources that are subject to the regulatory bump by a positive adjustment factor of 4.00.

(b) **Litigation Bump**

i) The litigation bump applies to all Impacted Water Sources of any Qualifying Settlement Class Members that as of the Settlement Date had pending litigation in the United States of America in which it asserts against any Released Party any claim related to alleged, actual, or potential PFAS contamination of Drinking Water.

ii) No more than one litigation bump may apply to an Impacted Water Source.

iii) For cases on file by December 31, 2020, the Claims Administrator will adjust the Base Score for those Impacted Water Sources by a positive adjustment factor of 0.25.

iv) For cases filed during 2021, the Claims Administrator will adjust the Base Score for those Impacted Water Sources by a positive adjustment factor of 0.20.

v)  For cases on filed during 2022, the Claims Administrator will adjust the Base Score for those Impacted Water Sources by a positive adjustment factor of 0.15.

vi)  For cases filed between January 1, 2023 and the Settlement Date, the Claims Administrator will adjust the Base Score for those Impacted Water Sources by a positive adjustment factor of 0.10.

(c)  **Public Water Provider Bellwether Bump**

i)  The Public Water Provider bellwether bump applies to the Impacted Water Sources that are owned or operated by Qualifying Settlement Class Members who served as one of the ten public water provider bellwether plaintiffs.

ii)  More than one Public Water Provider bellwether bump can be applied to an Impacted Water Source (i.e., the Settlement Class Member selected as the final public water provider bellwether plaintiff will receive all three adjustments provided below).

iii)  The Claims Administrator will adjust the Base Scores for Qualifying Settlement Class Members that were selected as one of the ten Tier One public water provider bellwether cases by a positive adjustment factor of 0.15.

iv)  The Claims Administrator will adjust the Base Scores for Qualifying Settlement Class Members that were selected as one of the three Tier Two public water provider bellwether cases by a positive adjustment factor of 0.20.

v)  For each Impacted Water Source, the Claims Administrator will adjust the Base Scores for the Qualifying Settlement Class Member that was selected as the final public water provider bellwether case by a positive adjustment factor of 0.25.

(d)  Claims Administrator will sum the applicable bump adjustments and multiply the summed adjustments by the Base Score. Then, the Claims Administrator will take this total and add it to the Base Score to determine the Adjusted Base Score.

Exhibit C                                                                 Page 18

Adjusted Base Score = (Sum of Adjustments * Base Score) + Base Score

**Example of Determining Adjusted Base Score**

CWS 1's SW System A's PFAS levels exceed the federal proposed MCL. CWS 1 filed a lawsuit in the AFFF MDL on November 1, 2022 against Settling Defendants and it was not selected as a Public Water Provider Bellwether Plaintiff. System A will receive the following Bumps:

| | |
|---|---|
| Regulatory Bump: | 4.00 |
| Litigation Bump: | 0.15 |
| Total Adjustment: | 4.15 |

Adjusted Base Score = (Sum of Adjustments * Base Score) + Base Score

(4.15 * 1,796,783) + 1,796,783 = **9,253,432.5**

    (v)       Settlement Award

          (a)      The Claims Administrator will first divide an Impacted Water Source's Adjusted Base Score by the sum of all Adjusted Base Scores. This number gives each Impacted Water Source its percentage of the Phase One Action Fund. Then, that percentage is multiplied by the Phase One Action Fund to provide the Allocated Amount for each Impacted Water Source.

          (b)      A Phase One Settlement Class Member participating in the Phase One Action Fund should NOT receive an Allocated Amount less than the Very Small Public Water System Payment for a Non-Transient Non-Community Water System.

**Allocated Award** = (Adjusted Base Score / Sum of All Adjusted Base Scores) x (Phase One Action Fund)

    (vi)      Claims Administrator Notification to Phase One Qualifying Settlement Class Members

               The Claims Administrator will notify each Phase One Qualifying Settlement Class Member of the Allocated Amount(s) for all its Impacted Water Sources.

    (vii)     Requests for Reconsideration to the Claims Administrator

          (a)      After a Phase One Qualifying Settlement Class Member receives notification of its Allocated Award from the Claims Administrator, it will have ten (10) business days from the receipt of such notification to request that the Special Master reconsider a part of the calculation based on a mistake/error alleged to have occurred.  (The Phase

Exhibit C                                                                                                      Page 19

One Qualifying Settlement Class Member has no other appellate rights.)

(b) After the Special Master receives all timely requests for reconsideration, the Special Master within ten (10) business days will request that the Claims Administrator correct any mistakes/errors and run the calculations again, if warranted.

(c) Within thirty (30) calendar days of completing the reconsideration process, the Claims Administrator will issue payment(s) to each Qualifying Settlement Class Member that has submitted an approved claim.

5.     **Phase Two Allocation Methodology**

(a)     **Phase Two Verification**

(i) The Claims Administrator will verify each Phase Two Qualifying Settlement Class Member's eligibility by determining the following:

(a) It is subject to the monitoring rules set forth in UCMR 5 (i.e., "large" systems serving more than 10,000 people and "small" systems serving between 3,300 and 10,000 people); or

(b) It is required under applicable state law to test or otherwise analyze any of its Water Sources or the water it provides for PFAS before the UCMR 5 Deadline?

(b)     **Phase Two Baseline Testing**

(i) Each Phase Two Qualifying Settlement Class Member must comply with Baseline Testing requirements and submit the results to the Claims Administrator within 45 calendar days after receiving the test results, absent what the Claims Administrator deems in writing to be an extraordinary circumstance, and no later than July 1, 2026.

(ii) Each Phase Two Qualifying Settlement Class Member will verify that it has tested all its Water Sources for PFAS prior to its submission of the Claims Form.

(iii) A Phase Two Qualifying Settlement Class Member that does not fully and timely satisfy Baseline Testing requirements may be declared by the Claims Administrator to be ineligible to receive further payment from Phase Two.

Exhibit C                                                                                    Page 20

(iv)     The Claims Administrator shall provide the Parties quarterly updates on the detailed Baseline Testing PFAS results and a final report on those results by July 1, 2026.

(c)     **Phase Two Baseline Testing Payments for Phase Two Qualifying Settlement Class Members**

(i)     A Phase Two Qualifying Settlement Class Member can use the Phase Two Baseline Testing Payments to conduct PFAS testing that could help it establish eligibility for payments from the Phase Two Action Fund.

(ii)     A Phase Two Qualifying Settlement Class Member may submit a Phase Two Testing Claims Form to the Claims Administrator for payments to offset part or all of the cost of conducting Phase Two Baseline Testing prior to January 1, 2026. A Phase Two Qualifying Settlement Class Member must list in its Phase Two Testing Claims Form each Water Source required to be tested under Baseline Testing requirements.

(iii)     The Claims Administrator will issue payment in the amount of $200 for each Water Source listed on the Phase Two Testing Claims Form within a reasonable time from submission.

(d)     **Phase Two Supplemental Fund**

(i)     After the Effective Date, the Escrow Agent will transfer into the Phase Two Supplemental Fund 5% of the total Settlement Funds allocated to Phase Two Qualifying Settlement Class Members.

(ii)     The Phase Two Supplemental Fund will be used to compensate the following Phase Two Qualifying Settlement Class Members' Impacted Water Sources:

(a)     Those with Impacted Water Sources that do not exceed an applicable state MCL or the proposed federal PFAS MCL at the time its Phase Two Claims Form is submitted and because of later PFAS testing obtains a Qualifying Test Result with a measurable concentration of PFAS that exceeds the proposed federal PFAS MCLs or applicable state MCL, or

(b)     Those with Impacted Water Sources that do not exceed an applicable state MCL or the proposed federal PFAS MCL at the time its Claims Form is submitted but later exceed a future state or federal PFAS MCL.

(iii)     A Phase Two Qualifying Settlement Class Member may submit a Phase Two Supplemental Fund Claims Form at any time up to and including December 31, 2030.

---

(iv)    Application to the Phase Two Supplemental Fund may be made by Qualifying Settlement Class Members on a continuous basis and one time for each Impacted Water Source until the funds are exhausted.

(v)    For each Impacted Water Source that has submitted a Phase Two Supplemental Claims Form, the Claims Administrator will individually calculate to approximate, as closely as is reasonably possible, the amount that each Impacted Water Source would have been allocated had it been in the Phase Two Action Fund with an MCL exceedance.

(vi)    The Claims Administrator shall issue funds from the Phase Two Supplemental Fund in amounts that reflect the difference between the amount the Impacted Water Source would have been allocated had it been in the Phase Two Action Fund with an MCL exceedance and what the Qualifying Settlement Class Members has already received, if anything.

(vii)    The Claims Administrator shall pay any money remaining in the Phase Two Supplemental Fund as of December 31, 2030, to the Phase Two Qualifying Settlement Class Members participating in the Phase Two Action Fund.

(e)    **Phase Two Special Needs Fund**

(i)    After the Effective Date, the Escrow Agent will transfer into the Phase Two Special Needs Fund 5% of the total Settlement Funds allocated to Phase Two Qualifying Settlement Class Members.

(ii)    The Phase Two Special Needs Fund is intended to compensate those Phase Two Qualifying Settlement Class Members who spent money to address PFAS detections in their Impacted Water Sources. This is in addition to any other compensation provided by this settlement.

(iii)    Phase Two Special Needs Fund Claims Forms must be received by August 1, 2026.

(iv)    After receiving all timely Phase Two Special Needs Fund Claims Forms, the Claims Administrator will review such forms and determine which Phase Two Qualifying Settlement Class Members shall receive additional compensation and the amount of compensation.  The Claims Administrator will recommend the awards to the Special Master who will ultimately approve or reject them.

(v)    Any monies leftover in the Phase Two Special Needs Fund will be paid to Phase Two Qualifying Settlement Class

Members participating in the Phase Two Action Fund on a pro rata basis. This does not include recipients of the Phase Two Very Small Public Water System Payments or of the Phase Two Testing Fund.

(f)    **Phase Two Public Water System Settlement Claims Forms**

    (i)    The deadline for Phase Two Qualifying Settlement Class Members to submit Phase Two Public Water System Claims Forms for all Impacted Water Sources is June 30, 2026.

    (ii)    The Claims Administrator will review each Phase Two Public Water System Claims Form to determine whether the Phase Two Qualifying Settlement Class Member should receive a Phase Two Very Small Public Water System Payment or if they should participate in the Phase Two Action Fund.

    (iii)    Any Phase Two Qualifying Settlement Class Member that fails to timely submit a Phase Two Action Fund Claims Form, will not be entitled to additional monies.

(g)    **Phase Two Very Small Public Water System Payments**

    (i)    All Phase Two Qualifying Settlement Class Members that are listed in the SDWIS as Transient Non-Community Water Systems that own an Impacted Water Source and Non-Transient Non-Community Water Systems serving less than 3,300 people that own an Impacted Water Source may apply for Phase Two Very Small Public Water System Payments.

    (ii)    The Claims Administrator will issue Phase Two Very Small Public Water System Payments for each Impacted Water Source as follows:

        (a)    Transient Non-Community Water Systems will receive $1,250 for each Impacted Water Source.

        (b)    Non-Transient Non-Community Water Systems serving less than 3,300 people will receive $1,750 for each Impacted Water Source.

    (iii)    Recipients of the Phase Two Very Small Public Water System Payments are not eligible for the Phase Two Supplemental Fund, the Phase Two Special Needs Fund or the Phase Two Action Fund.

(h)    **Phase Two Action Fund**

    (i)    The Claims Administrator will calculate the amount of the Phase Two Action Fund by subtracting the total amount of the Phase Two Very Small Public Water System Payments, the

Exhibit C                                                                 Page 23

Phase Two Baseline Testing Payments, the Phase Two Supplemental Fund, and the Phase Two Special Needs Fund from the total Settlement Funds allocated to Phase Two Qualifying Settlement Class Members.

(ii)   The Claims Administrator will individually calculate the amount for each Impacted Water Source owned or operated by a Phase Two Qualifying Settlement Class Member to approximate, as closely as is reasonably possible, the Allocated Amount that each Impacted Water Source would have been allocated had it been a Phase Two Qualifying Settlement Class Member applying for the Phase Two Action Fund.

(iii)   In the event that the Phase Two Action Fund is insufficient to compensate all Phase Two Qualifying Settlement Class Members' Allocated Amounts, the Claims Administrator will reduce all Phase Two Qualifying Settlement Class Members' Allocated Amounts on a pro rata basis.

6.   **Remaining Settlement Funds**

(a)   Should any portion of the Settlement Funds remain following the completion of the claims process, they will be distributed to Phase One Qualifying Settlement Class Members who qualify for the Phase One Action Fund and Phase Two Qualifying Settlement Class Members who qualify for the Phase Two Action Fund in proportion to the respective amounts awarded to each Person from each fund. None of any such remaining Settlement Funds shall be returned to the Settling Defendants.

Exhibit C                                                                                          Page 24

# **EXHIBIT D**

**EXHIBIT D:  CLAIMS FORMS**

| |
|---|
| *Aqueous Film-Forming Foam (AFFF) Products Liability Litigation (MDL 2873)* <br> Public Water System Settlement Claims Form |

| **INSTRUCTIONS** |
|---|

Please follow the instructions below to submit a claim for the AFFF Products Liability Litigation Settlement Program. A completed copy of this Claims Form must be submitted no later than the Claims Form Deadline. Late Claims Forms will not be considered.

TO RECEIVE BENEFITS FROM THIS SETTLEMENT, YOU MUST PROVIDE ALL OF THE REQUIRED (*) INFORMATION BELOW AND YOU MUST SIGN THIS Claims Form. THIS Claims Form SHOULD ONLY BE USED IF A CLAIM IS BEING MAILED IN AND IS NOT BEING FILED ONLINE. YOU MAY ALSO FILE YOUR CLAIM ONLINE AT www.PFASWaterSettlement.com.

For the Claims Form to be valid, Claimants must provide ALL information requested concerning the Public Water System (PWS) and its groundwater wells and/or surface water systems ("Water Source").

Baseline Testing: Any Water Source tested for PFAS prior to U.S. EPA's announcement of the testing requirements of UCMR 5 (December 2021), that did not result in a detection of PFAS, must re-test to meet Baseline Testing requirements. If a Water Source tested for PFAS after U.S. EPA's announcement of the testing requirements of UCMR 5 using a methodology consistent with the requirements of UCMR 5 or applicable State requirements (if stricter) (the "Testing Methodology") and it did not result in a Measurable Concentration of PFAS, no further testing is required on that Water Source. Test results must  be submitted from untreated (raw) water samples, except that a result showing a detection of PFAS in a treated (finished) water sample may be used. However, all samples must be drawn from a Water Source that has been used to provide drinking water.  BY SUBMITTING THIS CLAIMS FORM, YOU CERTIFY THAT THE PWS ON WHOSE BEHALF YOU ARE SUBMITTING THE CLAIMS FORM HAS TESTED ALL OF ITS TEST SITES FOR PFAS AFTER U.S. EPA'S ANNOUNCEMENT OF THE TESTING REQUIREMENTS OF UCMR 5 USING THE TESTING METHODOLOGY.

A PWS that does not timely return a completed Claims Form and all of the required documents forfeits any right to participate in this settlement.  For any questions about this Claims Form, you may contact _____ at _____.

| **SECTION 1. PUBLIC WATER SYSTEM (PWS) INFORMATION** |
|---|
| **SECTION 1.1 PWS GENERAL INFORMATION** |

| Public Water System (PWS) Name | |
|---|---|

| PWS Identification Number (PWSID) | | Employer Identification Number | __ __ - __ __ __ __ __ __ __ |
|---|---|---|---|
| PWS Facility Address | Street | | |
| | City | State | Zip |

| SECTION 1.2 PWS CONTACT INFORMATION | | | |
|---|---|---|---|
| *Please note that communication for this Settlement may extend into the year 2030. Please provide contact information with this in mind and contact the Claims Administrator if any updates are required.* | | | |
| Name of PWS Primary Contact | | Job Title of PWS Primary Contact | |
| Telephone Number for Primary Contact | ( __ __ __ ) __ __ __ - __ __ __ __ | Fax Number | ( __ __ __ ) __ __ __ - __ __ __ __ |
| Email Address for Primary Contact | | PWS "General" Email (if available) | |
| Name of PWS Secondary Contact | | Job Title of PWS Secondary Contact | |
| Telephone Number for Secondary Contact | ( __ __ __ ) __ __ __ - __ __ __ __ | Email Address for Secondary Contact | |
| PWS Mailing Address*Payments will be sent to this address | Street/PO Box | | |
| | City | State | Zip |

| SECTION 1.3 LAWSUIT INFORMATION (CHECK YES OR NO) | YES | NO |
|---|---|---|
| Has PWS filed a lawsuit to recover damages associated with PFAS contamination of its public drinking water wells or surface water systems? | | |
| If yes, is the lawsuit currently pending/filed in the AFFF MDL? | | |
| If the lawsuit is NOT currently in the AFFF MDL, in which court is it pending? | | |
| Case Number | | |

| SECTION 1.4 ATTORNEY INFORMATION (IF APPLICABLE) | YES | NO |
|---|---|---|
| Is the PWS Represented by an Attorney? (Check Yes or No) | | |

| Attorney Name | | Law Firm Name | |
|---|---|---|---|
| Telephone Number | (_____) _____ - _____ | Email Address | |
| Law Firm Employer Identification Number | | | |

| SECTION 2. QUALIFYING PWS INFORMATION | | |
|---|---|---|
| **QUALIFYING QUESTIONS  (CHECK YES OR NO)** | **YES** | **NO** |
| Is the PWS required to test under UCMR-5? | | |
| Is the PWS required to test for PFAS by state law? | | |
| Does the PWS serve at least 15 service connections used by year-round residents? | | |

| | | |
|---|---|---|
| Does the PWS serve at least 25 year-round residents? | | |
| Does the PWS serve fewer than 3,300 according to SDWIS as of {Settlement Date}? | | |
| Is the PWS in the United States of America or one of its territories? | | |
| Is the PWS owned or operated by a state (or territory of the United States) or the federal government? | | |

| **PWS CODES WITHIN THE SAFE DRINKING WATER INFORMATION SYSTEM (SDWIS)** | |
|---|---|
| What is the PWS Owner Type Code as listed in SDWIS?<br><br>*Please enter one of the following: "L-Local Government" or "M-Public/Private" or "P-Private" or "N-Native American" or "S-State Government" or "F-Federal Government"* | |
| If the PWS Owner Type Code is listed in SDWIS as either "S-State Government" or "F-Federal Government," does the PWS have the authority to sue or be sued in its own name?<br><br>*Please enter one of the following: "Yes" or "No"* | |
| What is the PWS Facility Activity Code as listed in SDWIS?*Please enter one of the following: "Active", "Inactive", "Change from public to non-public", "Merged with another system" or "Potential future system to be regulated"* | |
| What is the PWS classification as listed in SDWIS?<br>*Please enter one of the following: "Community Water System" or "Non-Transient Non-Community Water System" or "Transient Non-Community Water System"*<br><br><u>Note</u>: *If your type code is: (1) "Transient Non-Community Water System" OR (2) your type code is "Non-Transient Non-Community Water System" AND the PWS serves fewer than 3,300 people, skip to Section 6.* | |

| SECTION 3. WATER SOURCE SUMMARY INFORMATION | |
|---|---|
| **GROUNDWATER WELL SUMMARY** | **QUANTITY** |
| How many Groundwater Wells are owned or operated by the PWS? | |
| How many of these Groundwater Wells have been analyzed using a state or federal agency-approved analytical method consistent with the requirements of UCMR 5 (or stricter) and show a measurable concentration of PFAS prior to {Settlement Date}? | |
| How many of these Groundwater Wells have been analyzed using a state or federal agency-approved analytical method consistent with the requirements of UCMR 5 (or stricter) and **DO NOT** show a measurable concentration of PFAS since U.S. EPA's announcement of the testing requirements of UCMR 5? | |
| **SURFACE WATER SYSTEM SUMMARY** | **QUANTITY** |
| How many Surface Water Systems are owned or operated by the PWS? | |
| How many of these Surface Water Systems have been analyzed using a state or federal agency approved analytical method consistent with the requirements of UCMR 5 (or stricter) and show a measurable concentration of PFAS prior to {Settlement Date}? | |
| How many of these Surface Water Systems have been analyzed using a state or federal agency approved analytical method consistent with the requirements of UCMR 5 (or stricter ) and **DO NOT** show a measurable concentration of PFAS since U.S. EPA's announcement of the testing requirements of UCMR 5? | |

| SECTION 4. WATER SOURCE INFORMATION | |
|---|---|
| **Please complete and submit information from Section 4 for <u>EACH</u> Water Source. See "Addendum X" to provide information for each additional Water Source.**<br><br>_Note_: Groundwater Well Impacted Water Sources should report Flow Rates from the Groundwater Well. Surface Water System Impacted Water Sources should report treatment capacity from the surface water treatment plant. | |
| **Name or description of the Water Source.**<br>_Note_: This is the name or unique identifier listed on the testing laboratory chain of custody document. | |

| **Is this a Groundwater Well or Surface Water System?** *Please enter "Groundwater Well" or "Surface Water System."* <br><br> <u>Note</u>: *Please enter "Surface Water System" if a treatment plant is blending groundwater and surface water before treatment. Both systems are considered a Surface Water System.* | | |
|---|---|---|
| **WATER SOURCE QUESTIONS (CHECK YES OR NO)** | **YES** | **NO** |
| Does the PWS own this Water Source? | | |
| Does the PWS operate this Water Source? | | |
| Has the water from this Water Source ever been used as drinking water? | | |
| Was this Water Source tested or otherwise analyzed for PFAS using a state or federal agency approved analytical method  consistent with the requirements of UCMR 5 (or stricter) and found to contain any measurable concentration of PFAS on or before the {Settlement Date}? | | |
| Was this Water Source tested or otherwise analyzed for PFAS after U.S. EPA's announcement of the testing requirements of UCMR 5 using a state or federal agency approved analytical method  consistent with the requirements of UCMR 5 (or stricter) and found **NOT** to contain any PFAS at any level? | | |
| **FLOW RATE / CAPACITY** | | |
| Please answer the below questions indicating the maximum flow rate / capacity for the water source.  *Please indicate (check the correct box) if the measurement is in gallons per minute (GPM) or million gallons per day (MGD).* | | |

| **FLOW RATE / CAPACITY QUESTIONS** | **MAX FLOW RATE / CAPACITY** | **GPM** | **MGD** |
|---|---|---|---|
| If this Water Source is a Groundwater Well, please enter the maximum flow rate. | | | |
| If this Water Source is a Surface Water System, please enter the maximum capacity of the treatment system. | | | |

| How was the maximum flow rate or capacity determined? | |
|---|---|

For the following years, please enter the AVERAGE ANNUAL flow rate for the Impacted Water Source. If the flow rate was reduced or the source was taken offline due to PFAS contamination, please indicate by checking the box corresponding to that year. _Note: Please indicate if the measurement is in gallons per minute (GPM) or million gallons per day (MGD) by checking the corresponding box. If the source was not in a particular year, please enter "0" (zero) for the Average Annual Flow Rate._

| YEAR | AVERAGE ANNUAL FLOW RATE | GPM | MGD | Was the Avg. Annual Flow Rate reduced due to PFAS Contamination? |
|---|---|---|---|---|
| **Groundwater Well Example: 2013** | **1500** | ✔ | | |
| **Surface Water System Example: 2014** | **4.3** | | ✔ | |
| **2013** | | | | |
| **2014** | | | | |
| **2015** | | | | |
| **2016** | | | | |
| **2017** | | | | |
| **2018** | | | | |
| **2019** | | | | |

| | | | | |
|---|---|---|---|---|
| **2020** | | | | |
| **2021** | | | | |
| **2022** | | | | |

| ADDITIONAL FLOW RATE INFORMATION (IF NECESSARY) | | | |
|---|---|---|---|
| Each PWS is required to provide data for at least 3 years for which the Average Annual Flow Rate (AAFR) was <u>not</u> reduced due to PFAS contamination if available. If the PWS did not provide data for at least 3 years in which the AAFR was not reduced due to PFAS contamination (in the table above), please use the space below to provide additional information as needed. For example, if the AAFR for 9 of the previous 10 years has been reduced due to PFAS contamination, the PWS should provide 2 years of data below for the most recent unimpacted years. | | | |
| **YEAR** | **AVERAGE ANNUAL FLOW RATE** | **GPM** | **MGD** |
| EXAMPLE: 2009 | 3000 | ✔ | |
| EXAMPLE: 2010 | 3500 | ✔ | |
| | | | |
| | | | |
| | | | |

## SECTION 5. PFAS TESTING RESULTS

### PFOA CONTAMINATION TESTING

Please enter the below information to indicate **PFOA** contamination testing results. *If this water source was not found to contain any PFAS at any level in testing under the Testing Methodology (as defined above) after U.S. EPA's announcement of the testing requirements of UCMR 5, leave this section blank and skip to Section 6: Certification and Signature.*

**See Addendum X to provide information for each additional Water Source.**

| | | | |
|---|---|---|---|
| Highest historical PFOA concentration in lab issued documentation: | | | |
| Date of Sampling: | | | |
| Company of the person who took the sample: | | | |
| Date of analysis: | | | |
| Highest historical PFOA concentration converted to parts per trillion (PPT): | | _____ PPT | |
| Name of laboratory that performed the analysis: | | | |
| Facility address of laboratory that performed the analysis: | Street/PO Box | | |
| | City | State | Zip |
| What state or federal agency approved analytical method was used to measure the PFAS concentrations on the Impacted Water Source (e.g., EPA Method 537.1)? | | | |

| PFOS CONTAMINATION TESTING | |
|---|---|
| Please enter the below information to indicate **PFOS** contamination testing results. *If this water source was not found to contain any PFAS at any level in testing under the Testing Methodology (as defined above) after U.S. EPA's announcement of the testing requirements of UCMR 5, leave this section blank and skip to Section 6: Certification and Signature.* | |
| **See Addendum X to provide information for each additional Water Source.** | |
| Highest historical PFOS concentration in lab issued documentation: | |
| Date of Sampling: | |
| Company of the person who took the sample: | |
| Date of analysis: | |
| Highest historical PFOS concentration converted to parts per trillion (PPT): | _____ PPT |
| Name of laboratory that performed the analysis: | |

| Facility address of laboratory that performed the analysis: | Street/PO Box | | |
|---|---|---|---|
| | City | State | Zip |

| What state or federal agency approved analytical method was used to measure the PFAS concentrations on the Impacted Water Source (e.g., EPA Method 537.1)? | |
|---|---|

| OTHER PFAS CONTAMINATION TESTING | |
|---|---|
| Please enter the below information to indicate **other PFAS Chemical** contamination testing results. *If this water source was not found to contain any PFAS at any level in testing under the Testing Methodology (as defined above) after U.S. EPA's announcement of the testing requirements of UCMR 5, leave this section blank and skip to Section 6: Certification and Signature.*<br><br>**See Addendum X to provide information for each additional Water Source.** | |
| Highest historical concentration of **one** other PFAS Chemical in lab issued documentation: | |
| Date of Sampling: | |
| Company of the person who took the sample: | |
| Date of analysis: | |
| Highest historical concentration of one other PFAS Chemical concentration converted to parts per trillion (PPT): | _____ PPT |
| Name of laboratory that performed the analysis: | |

| Facility address of laboratory that performed the analysis: | Street/PO Box | | |
|---|---|---|---|
| | City | State | Zip |

| What state or federal agency approved analytical method was used to measure the PFAS concentrations on the Impacted Water Source (e.g., EPA Method 537.1)? | |
|---|---|

## SECTION 6. CERTIFICATION AND SIGNATURE

By signing this Claims Form, Settlement Class Member represents and warrants the following for the benefit of Settling Defendants:

· The Settlement Class Member has authority to release all Released Claims on behalf of itself and all other Persons who are Releasing Persons by virtue of their relationship or association with it.

· The Settlement Class Member authorizes the Claims Administrator and/or Special Master to take all necessary action to satisfy the Settlement Class Member's obligation with respect to Section 11.6 of the Settlement Agreement including, but not limited to, reporting any Allocated Amount in Box 3 of an IRS Form 1098-F and filing such forms with the IRS.

I hereby declare under penalty of perjury under the laws of the State of _____ that the information within this Claims Form and its attachments are true and correct to the best of my knowledge, information, and belief.

| | |
|---|---|
| Authorized Representative's Signature: | |
| Authorized Representative's Printed Name: | |

Executed this _____ day of _____ at _____ (County), _____ (State).

### DOCUMENTATION REQUIREMENTS

Please submit **ALL** documentation reflecting the information provided above including the following:
1. Lab issued documentation demonstrating historical maximum detections of PFOA, PFOS, and other PFAS
2. Lab issued testing chain of custody document
3. Documentation to support both Annual Average and Maximum Flow Rate or Treatment Plant Capacity of the Water Source
4. Filed and dated copy of the lawsuit filed by the PWS to recover damages associated with PFAS contamination of its public drinking water wells or surface water systems
5. A duly completed and executed IRS Form W-9 (or other information return required pursuant to Treasury Regulations Section 1.6050X-1(a)(1)) for the PWS with respect to each Settling Defendant,

6.  A duly completed written statement that satisfies the requirements of Treasury Regulations Section 1.6050X-1(c) with respect to each Settling Defendant

7.  A written authorization substantially in the form of Exhibit K attached to the Settlement Agreement for the Claims Administrator to file the forms set forth in item (5) with the IRS and to provide the written statements set forth in item (6) to each Settling Defendant

# *Aqueous Film-Forming Foam (AFFF) Products Liability Litigation (MDL 2873)* Public Water System Settlement <u>Supplemental</u> Claims Form

## INSTRUCTIONS

Please follow the instructions below to submit a Supplemental claim for the AFFF Products Liability Litigation Settlement Program. A completed copy of this Claims Form must be submitted no later than the {Supplemental Claims Form Deadline}. Late Claims Forms will not be considered.

A PWS should ONLY complete this Claims Form for Impacted Water Sources (IWS) with a positive PFAS detection as of {Settlement Date} that either (a) experienced a change in state or federal MCL regulations or (b) the PFAS contamination levels have shifted from below MCL regulations to above MCL regulations.

TO RECEIVE BENEFITS FROM THIS SETTLEMENT, YOU MUST PROVIDE ALL OF THE REQUIRED (*) INFORMATION BELOW AND YOU MUST SIGN THIS Claims Form. THIS Claims Form SHOULD ONLY BE USED IF A CLAIM IS BEING MAILED IN AND IS NOT BEING FILED ONLINE. YOU MAY ALSO FILE YOUR CLAIM ONLINE AT www.PFASWaterSettlement.com.

For the Claims Form to be valid, Claimants must provide ALL information requested concerning the Public Water System (PWS) and its Groundwater Wells and/or Surface Water Systems ("Water Source").

<u>Baseline Testing</u>: Any Water Source tested for PFAS prior to U.S. EPA's announcement of the testing requirements of UCMR 5 (December 2021), that did not result in a detection of PFAS, must <u>re-test</u> to meet Baseline Testing requirements. If a Water Source tested for PFAS after U.S. EPA's announcement of the testing requirements of UCMR 5 using a methodology consistent with the requirements of UCMR 5 or applicable State requirements (if stricter) (the "Testing Methodology") and it did not result in a Measurable Concentration of PFAS, no further testing is required on that Water Source. Test results must be submitted from untreated (raw) water samples, except that a result showing a detection of PFAS in a treated (finished) water sample may be used. However, all samples must be drawn from a Water Source that has been used to provide drinking water. BY SUBMITTING THIS CLAIMS FORM, YOU CERTIFY THAT THE PWS ON WHOSE BEHALF YOU ARE SUBMITTING THE CLAIMS FORM HAS TESTED ALL OF ITS TEST SITES FOR PFAS AFTER U.S. EPA'S ANNOUNCEMENT OF THE TESTING REQUIREMENTS OF UCMR 5 USING THE TESTING METHODOLOGY.

A PWS that does not timely return a completed Claims Form and all of the required documents forfeits any right to participate in this settlement. For any questions about this Claims Form, you may contact _____ at _____.

| SECTION 1. PUBLIC WATER SYSTEM (PWS) INFORMATION | | |
|---|---|---|
| SECTION 1.1 PWS GENERAL INFORMATION | | |
| Public Water System (PWS) Name | | |
| PWS Identification Number (PWSID) | | Employer Identification Number  __ __ - __ __ __ __ __ __ __ |

## SECTION 2. WATER SOURCE INFORMATION

**Please complete and submit information from Section 4 for <u>EACH</u> Water Source. See "Addendum X" to provide information for each additional Water Source.**

<u>Note</u>: *Groundwater Well Impacted Water Sources should report Flow Rates from the Groundwater Well. Surface Water System Impacted Water Sources should report treatment capacity from the surface water treatment plant.*

| | |
|---|---|
| **Name or description of the Water Source.**<br><u>Note</u>: *This is the name or unique identifier listed on the testing laboratory chain of custody document.* | |
| **Is this a Groundwater Well or Surface Water System?**<br>*\*Please enter "Groundwater Well" or "Surface Water System."*<br><br><u>Note</u>: *Please enter "Surface Water System" if a treatment plant is blending groundwater and surface water before treatment. Both systems are considered a Surface Water System.* | |

## SECTION 3. PFAS TESTING RESULTS

### PFOA CONTAMINATION TESTING

Please enter the below information to indicate **<u>PFOA</u>** contamination testing results. *If this water source was not found to contain any PFAS at any level on or before the {Settlement Date}, leave this section blank and skip to Section 6: Certification and Signature.*

**See Addendum X to provide information for each additional Water Source.**

| | |
|---|---|
| Highest historical PFOA concentration in lab issued documentation: | |

| Date of Sampling: | |
|---|---|
| Company of the person who took the sample: | |
| Date of analysis: | |
| Highest historical PFOA concentration converted to parts per trillion (PPT): | _____<br>PPT |
| Name of laboratory that performed the analysis: | |

| Facility address of laboratory that performed the analysis: | Street/PO Box | | |
|---|---|---|---|
| | City | State | Zip |

| What state or federal agency approved analytical method was used to measure the PFAS concentrations on the Impacted Water Source (e.g., EPA Method 537.1)? | |
|---|---|

### PFOS CONTAMINATION TESTING

Please enter the below information to indicate **PFOS** contamination testing results. *If this water source was not found to contain any PFAS at any level in testing under the Testing Methodology (as defined above) after U.S. EPA's announcement of the testing requirements of UCMR 5, leave this section blank and skip to Section 6: Certification and Signature.*

**See Addendum X to provide information for each additional Water Source.**

| Highest historical PFOS concentration in lab issued documentation: | |
|---|---|
| Date of Sampling: | |

| Company of the person who took the sample: | |
|---|---|
| Date of analysis: | |
| Highest historical PFOS concentration converted to parts per trillion (PPT): | _____ PPT |
| Name of laboratory that performed the analysis: | |

| Facility address of laboratory that performed the analysis: | Street/PO Box | | |
|---|---|---|---|
| | City | State | Zip |

| What state or federal agency approved analytical method was used to measure the PFAS concentrations on the Impacted Water Source (e.g., EPA Method 537.1)? | |
|---|---|

| **OTHER PFAS CONTAMINATION TESTING** |
|---|
| Please enter the below information to indicate **other PFAS Chemical** contamination testing results. *If this water source was not found to contain any PFAS at any level in testing under the Testing Methodology (as defined above) after U.S. EPA's announcement of the testing requirements of UCMR 5, leave this section blank and skip to Section 6: Certification and Signature.*<br><br>**See Addendum X to provide information for each additional Water Source.** |

| Highest historical concentration of **one** other PFAS Chemical in lab issued documentation: | |
|---|---|
| Date of Sampling: | |
| Company of the person who took the sample: | |

| | |
|---|---|
| Date of analysis: | |
| Highest historical concentration of one other PFAS Chemical concentration converted to parts per trillion (PPT): | _____ <br> PPT |
| Name of laboratory that performed the analysis: | |

| Facility address of laboratory that performed the analysis: | Street/PO Box | | |
|---|---|---|---|
| | City | State | Zip |

| | |
|---|---|
| What state or federal agency approved analytical method was used to measure the PFAS concentrations on the Impacted Water Source (e.g., EPA Method 537.1)? | |

## SECTION 4. CERTIFICATION AND SIGNATURE

By signing this Claims Form, Settlement Class Member represents and warrants the following for the benefit of Settling Defendants:

· The Settlement Class Member has authority to release all Released Claims on behalf of itself and all other Persons who are Releasing Persons by virtue of their relationship or association with it.

· The Settlement Class Member authorizes the Claims Administrator and/or Special Master to take all necessary action to satisfy  the Settlement Class Member's obligation with respect to Section 11.6 of the Settlement Agreement including, but not limited to, reporting any Allocated Amount in Box 3 of an IRS Form 1098-F and filing such forms with the IRS.

| | |
|---|---|
| I hereby declare under penalty of perjury under the laws of the State of _____ that the information within this Claims Form and its attachments are true and correct to the best of my knowledge, information, and belief. | |
| Authorized Representative's Signature: | |

| Authorized Representative's Printed Name: | |
|---|---|
| Executed this _____day of _____ at _____(County), _____ (State). | |

| **DOCUMENTATION REQUIREMENTS** |
|---|
| Please submit **<u>ALL</u>** documentation reflecting the information provided above including the following: <br> 1. Lab issued documentation demonstrating historical maximum detections of PFOA, PFOS, and other PFAS <br> 2. Lab issued testing chain of custody document <br> 3. A duly completed and executed IRS Form W-9 (or other information return required pursuant to Treasury Regulations Section 1.6050X-1(a)(1)) for the PWS with respect to each Settling Defendant, <br> 4. A duly completed written statement that satisfies the requirements of Treasury Regulations Section 1.6050X-1(c) with respect to each Settling Defendant <br> 5. A written authorization substantially in the form of Exhibit K attached to the Settlement Agreement for the Claims Administrator to file the forms set forth in item (3) with the IRS and to provide the written statements set forth in item (6) to each Settling Defendant |

# *Aqueous Film-Forming Foam (AFFF) Products Liability Litigation (MDL 2873)* Public Water System Settlement <u>Special Needs</u> Claims Form

## INSTRUCTIONS

Please follow the instructions below to submit a Special Needs claim for the AFFF Products Liability Litigation Settlement Program. A completed copy of this Claims Form must be submitted no later than the {Special Needs Claims Form Deadline}. Late Claims Forms will not be considered.

A Public Water System (PWS) may receive compensation for actions taken to reduce or eliminate the risk of supplying contaminated water. Special needs may include, but are not limited to, drilling new wells, purchasing supplemental water, taking wells offline or rerouting pipes. Detailed supporting documentation must be submitted.

TO RECEIVE BENEFITS FROM THIS SETTLEMENT, YOU MUST PROVIDE ALL OF THE REQUIRED (*) INFORMATION BELOW AND YOU MUST SIGN THIS Claims Form. THIS Claims Form SHOULD ONLY BE USED IF A CLAIM IS BEING MAILED IN AND IS NOT BEING FILED ONLINE. YOU MAY ALSO FILE YOUR CLAIM ONLINE AT www.PFASWaterSettlement.com.

For any questions about this Claims Form, you may contact _____ at _____.

## SECTION 1. PUBLIC WATER SYSTEM (PWS) INFORMATION

| Public Water System (PWS) Name | | | |
|---|---|---|---|
| PWS Identification Number (PWSID) | | Employer Identification Number | __ __ - __ __ __ __ __ __ __ |

| SECTION 2. SPECIAL NEEDS CLAIM INFORMATION | |
|---|---|
| **NARRATIVE OF NEED/ISSUE** | |
| | |
| **Total Amount Claimed** | $ _____ . ____ ____ |

## SECTION 3. CERTIFICATION AND SIGNATURE

By signing this Claims Form, Settlement Class Member represents and warrants the following for the benefit of Settling Defendants:

· The Settlement Class Member has authority to release all Released Claims on behalf of itself and all other Persons who are Releasing Persons by virtue of their relationship or association with it.

· The Settlement Class Member authorizes the Claims Administrator and/or Special Master to take all necessary action to satisfy the Settlement Class Member's obligation with respect to Section 11.6 of the Settlement Agreement including, but not limited to, reporting any Allocated Amount in Box 3 of an IRS Form 1098-F and filing such forms with the IRS.

I hereby declare under penalty of perjury under the laws of the State of _____ that the information within this Claims Form and its attachments are true and correct to the best of my knowledge, information, and belief.

| Authorized Representative's Signature: | |
| --- | --- |
| Authorized Representative's Printed Name: | |

Executed this _____day of _____ at _____(County), _____(State).

### DOCUMENTATION REQUIREMENTS

1. A duly completed and executed IRS Form W-9 (or other information return required pursuant to Treasury Regulations Section 1.6050X-1(a)(1)) for the PWS with respect to each Settling Defendant,
2. A duly completed written statement that satisfies the requirements of Treasury Regulations Section 1.6050X-1(c) with respect to each Settling Defendant
3. A written authorization substantially in the form of Exhibit K attached to the Settlement Agreement for the Claims Administrator to file the forms set forth in item (1) with the IRS and to provide the written statements set forth in item (6) to each Settling Defendant

## *Aqueous Film-Forming Foam (AFFF) Products Liability Litigation (MDL 2873)* Public Water System Settlement <u>Testing Compensation</u> Claims Form

### INSTRUCTIONS

Please follow the instructions below to submit a Testing Compensation claim for the AFFF Products Liability Litigation Settlement Program. A completed copy of this Claims Form must be submitted no later than the {Testing Compensation Claims Form Deadline}. Late Claims Forms will not be considered.

A Public Water System (PWS) should ONLY fill out this claim form if ALL testing of all Water Sources as of the {Settlement Date} indicated no detection of PFAS at any level OR the PWS has not yet completed baseline testing. Compensation from the Testing Fund is limited to one payment per water source owned and operated by the PWS during the Phase 2 Testing Period [dates].

TO RECEIVE BENEFITS FROM THIS SETTLEMENT, YOU MUST PROVIDE ALL OF THE REQUIRED (*) INFORMATION BELOW AND YOU MUST SIGN THIS CLAIM FORM. THIS CLAIM FORM SHOULD ONLY BE USED IF A CLAIM IS BEING MAILED IN AND IS NOT BEING FILED ONLINE. YOU MAY ALSO FILE YOUR CLAIM ONLINE AT www.PFASWaterSettlement.com.

For any questions about this Claims Form, you may contact _____ at _____.

### SECTION 1. PUBLIC WATER SYSTEM (PWS) INFORMATION

#### SECTION 1.1 PWS GENERAL INFORMATION

| Public Water System (PWS) Name | | | |
|---|---|---|---|
| PWS Identification Number (PWSID) | | Employer Identification Number | __ __ - __ __ __ __ __ __ __ |
| PWS Facility Address | Street | | |

| | City | | State | Zip |
|---|---|---|---|---|
| | | | | |

| **SECTION 1.2 PWS CONTACT INFORMATION** | | | | |
|---|---|---|---|---|
| *Please note that communication for this Settlement may extend into the year 2030. Please provide contact information with this in mind and contact the Claims Administrator if any updates are required.* | | | | |
| Name of PWS Primary Contact | | Job Title of PWS Primary Contact | | |
| Telephone Number for Primary Contact | ( __ __ __ ) __ __ __ - __ __ __ __ | Fax Number | ( __ __ __ ) __ __ __ - __ __ __ __ | |
| Email Address for Primary Contact | | PWS "General" Email (if available) | | |
| Name of PWS Secondary Contact | | Job Title of PWS Secondary Contact | | |
| Telephone Number for Secondary Contact | ( __ __ __ ) __ __ __ - __ __ __ __ | Email Address for Secondary Contact | | |
| PWS Mailing Address *Payments will be sent to this address* | Street/PO Box | | | |
| | City | | State | Zip |

| **SECTION 1.3 LAWSUIT INFORMATION (CHECK YES OR NO)** | **YES** | **NO** |
|---|---|---|
| Has PWS filed a lawsuit to recover damages associated with PFAS contamination of its public drinking water wells or surface water systems? | | |
| If yes, is the lawsuit currently pending/filed in the AFFF MDL? | | |
| If the lawsuit is NOT currently in the AFFF MDL, in which court is it pending? | | |

| Case Number | | | |
|---|---|---|---|
| **SECTION 1.4 ATTORNEY INFORMATION (IF APPLICABLE)** | | **YES** | **NO** |
| Is the PWS Represented by an Attorney? (Check Yes or No) | | | |

| Attorney Name | | Law Firm Name | |
|---|---|---|---|
| Telephone Number | (_____) _____ - _____ | Email Address | |
| Law Firm Employer Identification Number | | | |

| **SECTION 2. QUALIFYING PWS INFORMATION** | | | |
|---|---|---|---|
| **QUALIFYING QUESTIONS  (CHECK YES OR NO)** | | **YES** | **NO** |
| Is the PWS required to test under UCMR-5? | | | |
| Is the PWS required to test for PFAS by state law? | | | |
| Does the PWS serve at least 15 service connections used by year-round residents? | | | |
| Does the PWS serve at least 25 year-round residents? | | | |
| Does the PWS fewer than 3,300 peopleaccording to SDWIS as of {Settlement Date}? | | | |
| Is the PWS in the United States of America or one of its territories? | | | |
| Is the PWS owned or operated by a state (or territory of the United States) or the federal government? | | | |

| PWS CODES WITHIN THE SAFE DRINKING WATER INFORMATION SYSTEM (SDWIS) | |
|---|---|
| What is the PWS Owner Type Code as listed in SDWIS?<br><br>*Please enter one of the following: "L-Local Government" or "M-Public/Private" or "P-Private" or "N-Native American" or "S-State Government" or "F-Federal Government"* | |
| If the PWS Owner Type Code is listed in SDWIS as either "S-State Government" or "F-Federal Government," does the PWS have the authority to sue or be sued in its own name?<br><br>*Please enter one of the following: "Yes" or "No"* | |
| What is the PWS Facility Activity Code as listed in SDWIS?*Please enter one of the following: "Active", "Inactive", "Change from public to non-public", "Merged with another system" or "Potential future system to be regulated"* | |
| What is the PWS classification as listed in SDWIS?<br>*Please enter one of the following: "Community Water System" or "Non-Transient Non-Community Water System" or "Transient Non-Community Water System"*<br><br><u>Note</u>: *If your type code is: (1) "Transient Non-Community Water System" OR (2) your type code is "Non-Transient Non-Community Water System" AND the PWS serves 3,300 people or fewer, skip to Section 6.* | |
| **SECTION 3. WATER SOURCE SUMMARY INFORMATION** | |
| How many Groundwater Wells are owned or operated by the PWS? | |
| How many Surface Water Systems are owned or operated by the PWS? | |
| **SECTION 4. CERTIFICATION AND SIGNATURE** | |
| By signing this Claims Form, Settlement Class Member represents and warrants the following for the benefit of Settling Defendants:<br><br>· The Settlement Class Member has authority to release all Released Claims on behalf of itself and all other Persons who are Releasing Persons by virtue of their relationship or association with it. | |

· The Settlement Class Member authorizes the Claims Administrator and/or Special Master to take all necessary action to satisfy the Settlement Class Member's obligation with respect to Section 11.6 of the Settlement Agreement including, but not limited to, reporting any Allocated Amount in Box 3 of an IRS Form 1098-F and filing such forms with the IRS.

I hereby declare under penalty of perjury under the laws of the State of _____ that the information within this Claims Form and its attachments are true and correct to the best of my knowledge, information, and belief.

| | |
|---|---|
| Authorized Representative's Signature: | |
| Authorized Representative's Printed Name: | |

Executed this _____ day of _____ at _____ (County), _____ (State).

| **DOCUMENTATION REQUIREMENTS** |
|---|

1. A duly completed and executed IRS Form W-9 (or other information return required pursuant to Treasury Regulations Section 1.6050X-1(a)(1)) for the PWS with respect to each Settling Defendant,

2. A duly completed written statement that satisfies the requirements of Treasury Regulations Section 1.6050X-1(c) with respect to each Settling Defendant

3. A written authorization substantially in the form of Exhibit K attached to the Settlement Agreement for the Claims Administrator to file the forms set forth in item (1) with the IRS and to provide the written statements set forth in item (6) to each Settling Defendant

# **EXHIBIT E**

**EXHIBIT E: NOTICE**

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| **IN RE:  AQUEOUS FILM-FORMING FOAMS PRODUCTS LIABILITY LITIGATION** | )<br>)  **MDL No. 2:18-mn-02873**<br>)<br>)<br>) |

# NOTICE OF PROPOSED CLASS ACTION SETTLEMENT AND COURT APPROVAL HEARING

TO:    All Public Water Systems in the United States of America that draw or otherwise collect from any Water Source that, on or before June 30, 2023, was tested or otherwise analyzed for PFAS and found to contain any PFAS at any level; and

All Public Water Systems in the United States of America that, as of June 30, 2023, are (i) subject to the monitoring rules set forth in UCMR 5 (i.e., "large" systems serving more than 10,000 people and "small" systems serving between 3,300 and 10,000 people), or (ii) required under applicable state or federal law to test or otherwise analyze any of their Water Sources or the water they provide for PFAS before the UCMR 5 Deadline.

All capitalized terms not otherwise defined herein shall have the meanings set forth in the Settlement Agreement and the Allocation Procedures, available for review at **www.PFASWaterSettlement.com**.

**A FEDERAL COURT APPROVED THIS NOTICE. PLEASE READ THIS NOTICE CAREFULLY, AS THE PROPOSED SETTLEMENT DESCRIBED BELOW MAY AFFECT YOUR LEGAL RIGHTS AND PROVIDE YOU WITH POTENTIAL BENEFITS. THIS IS *NOT* A NOTICE OF A LAWSUIT AGAINST YOU OR A SOLICITATION FROM A LAWYER.**

## I.    WHAT IS THE PURPOSE OF THIS NOTICE?

The purpose of this Notice is (i) to advise you that a proposed settlement (referred to as the "Settlement") has been reached with the defendants The Chemours Company, The Chemours Company FC, LLC, DuPont de Nemours, Inc., Corteva, Inc., and E.I. DuPont de Nemours and Company n/k/a EIDP, Inc. (each, a "Settling Defendant" and collectively,

"Settling Defendants") in the above-captioned lawsuit (the "Action") pending in the United States District Court for the District of South Carolina (the "Court"); (ii) to summarize your rights in connection with the Settlement; and (iii) to inform you of a Court hearing to consider whether to grant final approval of the Settlement, to be held on DATE at TIME, before the Honorable Richard M. Gergel, United States District Judge of the United States District Court for the District of South Carolina, located at 85 Broad Street, Charleston, South Carolina 29401.

**_If you received this Notice about the proposed Settlement in the mail, then you have been identified as a potential Settlement Class Member according to the Parties' records. Please read this Notice carefully._**

## II.    WHAT IS THE ACTION ABOUT?

Class Representatives are Public Water Systems that have filed actions against Settling Defendants and other defendants, which actions are currently pending in the above-captioned multi-district litigation, In Re: Aqueous Film-Forming Foams Products Liability Litigation, MDL No. 2:18-mn-2873 (D.S.C.) (the "MDL").

Class Representatives have alleged that they have suffered harm resulting from the presence of PFAS in Drinking Water and/or are required to monitor for the presence of PFAS in Drinking Water and that Settling Defendants are liable for damages and other forms of relief to compensate for such harm and costs.

In addition to the MDL, certain other cases are pending against Settling Defendants asserting Released Claims (collectively with the MDL, all pending litigation brought by or on behalf of a Releasing Person against a Released Person involved Released Claims shall be referred to as the "Litigation").

There are numerous defendants in addition to Settling Defendants in the MDL and the cases comprising the Litigation. Those other defendants are not part of this Settlement Agreement. The Class Representatives and Settlement Class Members will remain able to seek separate and additional PFAS-related recoveries from those other defendants in addition to the Settlement Amount here. The Parties agree, and Class Counsel have a reasonable basis to believe, that the Settling Defendants collectively comprise a very small share of MDL defendants' total alleged PFAS-related liabilities, on the order of approximately 3-7% or less.

The Settling Defendants deny the allegations in the Litigation and all other allegations relating to the Released Claims and deny that they have any liability to Class Representatives, the Settlement Class, or any Settlement Class Member for any Claims of any kind, and would assert a number of legal and factual defenses against such Claims if they were litigated to conclusion (including against certification of any purported class for

litigation purposes).

This Notice should not be understood as an expression of any opinion by the Court as to the merits of the Class Representatives' claims or the Settling Defendants' defenses.

## III.    WHO IS PART OF THE PROPOSED SETTLEMENT?

The Class Representatives and Settling Defendants have entered into the Settlement Agreement to resolve Claims relating to PFAS contamination of Public Water Systems. The Court has preliminarily approved the Settlement Agreement as fair, reasonable, and adequate. The Court will hold a Final Fairness Hearing, as described below, to consider whether to make the Settlement final.

**The Settlement Class consists of each of the following:**

> **(a) All Public Water Systems in the United States of America that draw or otherwise collect from any Water Source that, on or before June 30, 2023, was tested or otherwise analyzed for PFAS and found to contain any PFAS at any level;**

> <u>**AND**</u>

> **(b) All Public Water Systems in the United States of America that, as of June 30, 2023, are (i) subject to the monitoring rules set forth in UCMR 5 (i.e., "large" systems serving more than 10,000 people and "small" systems serving between 3,300 and 10,000 people), or (ii) required under applicable state or federal law to test or otherwise analyze any of their Water Sources or the water they provide for PFAS before the UCMR 5 Deadline.**

Not all Public Water Systems are potential Settlement Class Members: specifically, Public Water Systems that are owned and operated by a State or the federal government, and cannot sue or be sued in their own name, as well as certain other systems set forth below, are <u>expressly **excluded**</u> from the Settlement Class.  In addition, Public Water Systems that do not fall within the Settlement Class definition set forth above are not Settlement Class Members.

The following are <u>excluded</u> from the Settlement Class:

> a) Any Public Water System that is located in Bladen, Brunswick, Columbus, Cumberland, New Hanover, Pender, or Robeson counties in North Carolina; provided, however, that any such system will be included within the Settlement Class if it so requests.
>
> b) Any Public Water System that is owned and operated by a State government and cannot sue or be sued in its own name, as listed in Exhibit

I to the Settlement Agreement.

c) Any Public Water System that is owned and operated by the federal government and cannot sue or be sued in its own name, as listed in Exhibit J to the Settlement Agreement.

d) Any privately owned well or surface water system that is not owned by, used by, or otherwise part of, and does not draw water from, a Public Water System within the Settlement Class.

"UCMR 5" means the United States Environmental Protection Agency's ("U.S. EPA") fifth Unregulated Contaminant Monitoring Rule, published at 86 Fed. Reg. 73131.

"UCMR 5 Deadline" means (i) December 31, 2025, or (ii) such later date to which the deadline for completion of sample collection under UCMR 5 may be extended by the U.S. EPA.

"Water Source" means any groundwater well, surface water intake, and any other intake point from which a Public Water System draws or collects Drinking Water, including water it provides or collects, treats or stores for distribution to customers or users.[1]

## IV.    WHAT ARE THE KEY TERMS OF THE PROPOSED  SETTLEMENT?

The key terms of the proposed Settlement are as follows.

**1.** ***Settlement Amount.*** Settling Defendants have agreed to pay the total and maximum dollar amount of one billion one hundred eighty-five million dollars ($1,185,000,000) (the "Settlement Amount"), subject to final approval of the Settlement by the Court and certain other conditions specified in the Settlement Agreement.  In no event shall the Settling Defendants be required under the Settlement Agreement to pay any amounts above the Settlement Amount.  Any fees, costs, expenses, or incentive awards payable under the Settlement Agreement shall be paid out of, and shall not be in addition to, the Settlement Amount.

**2.** ***Settlement Benefit.*** Each Settlement Class Member who has not excluded itself from the Settlement Class will be eligible to receive a settlement check(s) from the Claims Administrator based on the Allocation Procedures developed by Class Counsel, which are subject to final approval by the Court as fair and reasonable.  Each Settlement Class Member's settlement amount will be based on information submitted by Settlement Class Members in their Claims Forms and will depend on each Impacted Water Source's flow rate and level of concentration as compared to all other Settlement Class Members' Impacted Water Sources.  The allocation process is described below.  Precisely how much each Settlement Class Member will receive is unknown at this time because it depends on all the information submitted by all Settlement Class Members.

---

[1] Other capitalized terms have the meaning given those terms in the Settlement Agreement.

3. *__Settlement Administration.__* The Court will appoint a Special Master and Claims Administrator pursuant to Rule 53 of the Federal Rules of Civil Procedure (FRCP) to oversee the allocation of the Settlement Funds. They will adhere to their duties set forth herein and in the Settlement Agreement. The Special Master will generally oversee the Claims Administrator and make any final decision(s) related to any appeals by Qualifying Settlement Class Members and any ultimate decision(s) presented by the Claims Administrator. The Claims Administrator will perform the actual modeling, allocation and payment distribution functions. The Claims Administrator will seek assistance from the Special Master when needed. The Claims Administrator may seek the assistance of the Plaintiffs' Executive Committee ("PEC") consultants who assisted in providing guidance in designing the Allocation Procedures.

**Allocation Procedures Overview**

The Allocation Procedures were designed to fairly and equitably allocate the Settlement Funds among Qualifying Settlement Class Members to resolve PFAS contamination of Public Water Systems in such a way that reflects factors used in designing a water treatment system in connection with such contamination. Both the volume of contaminated water and the degree of contamination are the main factors in calculating the cost of treating PFAS contamination; the Allocation Procedures use scientific and EPA-derived formulas to arrive at Allocated Amounts that proportionally compensate Qualifying Settlement Class Members for PFAS-related treatment. The Allocation Procedures are appended as Exhibit C to the Settlement Agreement.

1. *__Claims Form Process.__* The Claims Administrator will verify that each Entity that submits a Claims Form is a Qualifying Settlement Class Member and will confirm the category into which the Settlement Class Member falls.

- Settlement Class Members fall into one of two categories: Phase One Qualifying Settlement Class Members or Phase Two Qualifying Settlement Class Members. Phase One Qualifying Settlement Class Members will be allocated 55% of the Settlement Funds and Phase Two Qualifying Class Members will be allocated 45% of the Settlement Funds.[2]

  - A Phase One Qualifying Settlement Class Member is a Public Water System that draws or otherwise collects from any Water Source that tested or otherwise analyzed on or before June 30, 2023 and found to contain any PFAS at any level. The Claims Administrator will establish five separate payment sources from

---

[2] This allocation between Phase One and Phase Two is subject to adjustment by the Court.

which Phase One Qualifying Settlement Class Members may receive Settlement Funds. Such Settlement Class Members will be eligible for compensation from at least one and potentially more of the payment sources. These sources, and the criteria the Claims Administrator will use to determine the amount each Phase One Qualifying Settlement Class Member will receive from them, are described below and fully in the Allocation Procedures.

o   A Phase Two Qualifying Settlement Class Member is a Public Water System that is not a Phase One Qualifying Settlement Class Member and is subject to the monitoring rules set forth in UCMR 5 or other applicable state or federal law. The Claims Administrator will establish five separate payment sources from which Phase Two Qualifying Settlement Class Members may receive Settlement Funds. Such Settlement Class Members will be eligible for compensation from at least one and potentially more of these payment sources, one of which will be to offset the costs of PFAS testing. These sources, and the criteria the Claims Administrator will use to determine the amount each Phase Two Qualifying Settlement Class Member will receive from them, are described below and fully in the Allocation Procedures.

The initial step for establishing Settlement Class Membership and eligibility for compensation from any of the Settlement Funds is the completion of the Claimant Information Form. After a Person completes the Public Water System Settlement Claims Form, the Settlement Class Member will be provided with additional relevant Claims Form(s) for the payment sources for which the Settlement Class Member may be eligible. The term "Claims Form" may refer to the Public Water System Settlement Claims Form and any of seven additional separate forms:

1. Phase One Action Fund Claims Form;
2. Phase One Supplemental Fund Claims Form;
3. Phase One Special Needs Fund Claims Form;
4. Phase Two Testing Claims Form;
5. Phase Two Action Fund Claims Form;
6. Phase Two Supplemental Fund Claims Form; and
7. Phase Two Special Needs Fund Claims Form

These Claims Forms will be available online and can be submitted to the Claims Administrator electronically or on paper. The Claims Forms will vary depending on the applicable Settlement Class Membership category (Phase One or Phase Two) and on the specific sources from which compensation is sought. The Claims Forms are appended as Exhibit D to the Settlement Agreement.

The Claims Administrator will review each Claims Form, verify the completeness of the data it contains, and follow up as appropriate, including to notify

Settlement Class Members of the need to cure deficiencies in their submission(s), if any. Based on this data, the Claims Administrator will then confirm whether each Settlement Class Member is a Phase One Qualifying Settlement Class Member or Phase Two Qualifying Settlement Class Member and determine the amount each Settlement Class Member is owed from each payment source from which the Settlement Class Member seeks compensation. Should any portion of the Settlement Funds remain following the completion of the Claims process, they will be distributed to certain Qualifying Settlement Class Members in a pro rata fashion in proportion to their respective Allocated Amounts. None of any such remaining Settlement Funds shall be returned to the Settling Defendants.

**4.** ___*Payment of Settlement Amount*___.  Within ten (10) Business Days after Preliminary Approval, Settling Defendants shall pay or cause to be paid the Settlement Amount in full, in accordance with the payment terms set forth in the Settlement Agreement.  If the Settlement does not become final, Settling Defendants are entitled to a refund of the unused Settlement Funds, and no distribution to Settlement Class Members will occur.

**5.** ___*Release*___.  All Settlement Class Members who have not excluded themselves from the Settlement Class will release certain Claims against the Settling Defendants, their affiliates, certain predecessors and successors, and other persons as set forth in the Settlement Agreement. This is referred to as the "Release." Generally speaking, the Release will prevent any Settlement Class Member from bringing any lawsuit against the Settling Defendants or making any claims resolved by the Settlement Agreement.

The Release, as set forth in Paragraphs 12.1 through 12.9 of the Settlement Agreement, will be effective as to every Settlement Class Member who has not excluded itself from the Settlement Class, regardless of whether or not that Settlement Class Member files a Claims Form or receives any distribution from the Settlement.

**6.** ___*Attorney Fee/Litigation Cost and Class Representative Awards*___. The Court will determine the amounts of attorneys' fees and expenses to award to Class Counsel from the Settlement Amount for investigating the facts and law in the Action, the massive amount of litigation surrounding the Action, the trial preparations, and negotiating the proposed Settlement. Class Counsel will request an award of all attorneys' fees and expenses in the amounts due under the Holdback Provisions set forth in CMO No. 3.  Class Counsel will make their request in a motion for attorneys' fees and costs in accordance with Section 11.2 of the Settlement Agreement. Class Counsel intend to file  a motion for an award of attorneys' fees and costs that will request that amounts due under the Holdback Provisions set forth in Case Management Order No. 3, private attorney/client contracts, and fees of Class Counsel all be paid from the Qualified Settlement Fund. Class Counsel intend to file such motion with the Court at least twenty (20) days before the Final Fairness Hearing. After the motion for attorneys' fees and costs is filed, copies will be available from Class Counsel, the Settlement website (www.PFASWaterSettlement.com), or from the Court docket for *City of Camden, et al., v. E.I. DuPont de Nemours and Company, et al.*, No. 2:23-cv-XXXX-RMG.

---

Any attorneys' fees, costs, and expenses approved by the Court will be paid from the Settlement Amount.

7.      ***Settlement Administration.*** All fees, costs, and expenses incurred in the administration and/or work by the Notice Administrator, including fees, costs, and expenses of the Notice Administrator, as well as the costs of distributing the Notice, shall be paid from the Settlement Amount.  All fees, costs, and expenses incurred in the administration and/or work by the Claims Administrator, including fees, costs, and expenses of the Claims Administrator, shall be paid from the Settlement Amount. All fees, costs, and expenses incurred in the administration and/or work by the Special Master, including fees, costs, and expenses of the Special Master, shall be paid from the Settlement Amount.  Settling Defendants shall have no obligation to pay any such fees, costs, and expenses other than the Settlement Amount.

8.      ***Dismissal of the Litigation.*** If the Settlement is approved by the Court and becomes final, all pending Litigation will be dismissed with prejudice to the extent it contains Released Claims. If the Settlement is not approved by the Court or does not become final for any reason, the Litigation will continue, and Class Members will not be entitled to receive any Settlement Benefit.

**THE PARAGRAPHS ABOVE PROVIDE ONLY A GENERAL SUMMARY OF THE TERMS OF THE PROPOSED SETTLEMENT. YOU CAN REVIEW THE SETTLEMENT AGREEMENT ITSELF FOR MORE INFORMATION ABOUT THE EXACT TERMS OF THE SETTLEMENT. THE SETTLEMENT AGREEMENT IS AVAILABLE AT WWW.PFASWATERSETTLEMENT.COM.**

## V.      HOW WILL SETTLEMENT FUNDS BE DIVIDED AMONG CLASS MEMBERS?

1.      ***Baseline Testing.*** Phase One and Phase Two Settlement Class Members must perform "Baseline Testing" – that is, Settlement Class Members must test every Water Source they own for PFAS.  By performing Baseline Testing to determine which Water Sources have current PFAS detections, each Settlement Class Member will be able to submit Claims Forms, have its Water Sources scored, and receive Allocated Awards based on those scores.

Baseline Testing requires that each Water Source be analyzed for at least the 29 PFAS chemicals required under UCMR 5, using a methodology consistent with the requirements of UCMR 5 or applicable State requirements (if stricter). Any Water Source tested before December 7, 2021 that did not result in a PFAS detection must retest. Any Water Source that tested before June 30, 2023 that did result in a PFAS detection does NOT need to retest. However, you would still be required to test any other Water Sources that have not previously had a detection.

Baseline Testing is different from what the EPA requires for UCMR 5. Under UCMR 5, a Public Water System is required to test for PFAS only at the entry points to its distribution system, but Baseline Testing requires Settlement Class Members to test every Water Source. Because Baseline Testing requires more testing than UCMR 5, Phase Two Settlement Class Members will be compensated out of the Settlement Funds for the costs of testing each Water Source to meet Baseline Testing requirements. **Baseline Testing Claims Forms must be received by DATE.**

Baseline Testing may be performed by any laboratory accredited by a state government or federal regulatory agency for PFAS analysis that uses any state- or federal agency-approved PFAS analytical method that is consistent with (or stricter) than the requirements of UCMR 5.

Class Counsel has arranged for discounted testing with the following laboratory to assist Settlement Class Members with Baseline Testing. The listed laboratory will forward the test results to the Claims Administrator. There is no requirement to use the listed laboratories.

**Eurofins**
Telephone Number: 916-374-4499
Website: https://www.eurofinsus.com/environment-testing/pfas-testing/pfas-water-provider-settlement/

**2.** ***Base Scores for Water Sources.*** The Allocation Procedures are designed to allocate money based on factors that dictate the costs of water treatment. It is well documented in the scientific literature and well known throughout the public water industry that the costs associated with water treatment consist of 1) capital costs and 2) operation and maintenance costs. Capital costs are mainly driven by the Impacted Water Source's flow rate. Operation and maintenance costs are mainly driven by the levels of PFAS in the water. The Allocation Procedures utilize capital costs and operation and maintenance costs to generate a score for each Impacted Water Source. The Claims Administrator will input the flow rates and PFAS concentrations from the Claims Forms into an EPA-derived formula that calculates a Base Score for each Impacted Water Source.

**3.** ***Adjusted Base Scores.*** Certain Class Members will be eligible for increased scores. Based on the Claims Forms submitted, the Claims Administrator will determine if a Settlement Class Member is eligible for three available enhancements to the score: the Litigation Bump, the Bellwether Bump, and the Regulatory Bump. A Settlement Class Member may qualify for none, one, or multiple bumps.

The Litigation Bump will apply to Settlement Class Members with a pending lawsuit against the Settling Defendants alleging PFAS contaminated Drinking Water. The Bellwether Bump will apply to the ten Settlement Class Members that served as the Public Water Provider Bellwether plaintiffs. The Regulatory Bump will apply when an Impacted Water Source exceeds an applicable state Maximum Contaminant Level (MCL) or the proposed federal MCL as of DATE.

After the Claims Administrator applies the appropriate bumps to each Impacted Water Source, the Claims Administrator will use the new Adjusted Base Scores to determine how much of the Settlement Funds each Impacted Water Source will receive.

**4.    _Very Small Public Water System Payments_.** All Phase One and Phase Two Settlement Class Members that are listed in the Safe Drinking Water Information System (SDWIS) as Transient Non-Community Water Systems (TNCWS) and Non-Transient Non-Community Water Systems (NTNCWS) serving less than 3,300 people may apply for Phase One or Phase Two Very Small Public Water System Payments. Phase One Very Small Public Water System Claims Forms are due by <mark>DATE</mark> and Phase Two Very Small Public Water System Claims Forms are due by <mark>DATE</mark>. The Claims Administrator will issue a payment of <mark>$1,250</mark> to the TNCWS and <mark>$1,750</mark> to the NTNCWS serving less than 3,300 people.

**5.    _Allocated Amounts_.** The information required to calculate Allocated Amounts is not publicly available and is only obtainable through the Claims Forms submitted by Settlement Class Members. Thus, the Allocated Amount that each Settlement Class Member will receive is not determinable until the Claims Administrator analyzes all the Claims Forms submitted by the Claims Form deadlines.

**6.    _Special Needs Funds_.** Special Needs Funds will be established by the Claims Administrator for Phase One and Phase Two Settlement Class Members that have expended monetary resources on extraordinary efforts to address PFAS contamination in their Impacted Water Sources. Settlement Class Members can file a Special Needs Fund Claims Form to be considered for reimbursement of these expenditures.

**7.    _Supplemental Funds_.** The Claims Administrator will also establish Phase One and Phase Two Supplemental Funds so that Settlement Class Members who did not initially exceed a state or federal MCL when it submitted its Claims Form can request additional funds if it later exceeds a state or federal MCL.

## VI.    WHO REPRESENTS THE SETTLEMENT CLASS?

The Court has appointed the attorneys from the following law firms to act as counsel for the Class (referred to as "Class Counsel" or "Plaintiffs' Counsel") for purposes of the proposed Settlement:

| Scott Summy<br>**Baron & Budd, P.C.**<br>3102 Oak Lawn Ave., Ste. 1100<br>Dallas, Texas 75219 | Michael A. London<br>**Douglas & London**<br>59 Maiden Lane, 6th Floor<br>New York, NY 10038 | Paul J. Napoli<br>**Napoli Shkolnik**<br>1302 Av. Ponce de Leon<br>San Juan, Puerto Rico 00907 |
|---|---|---|
|  | Elizabeth A. Fegan<br>**Fegan Scott LLC**<br>150 S. Wacker Drive, 24th<br>Floor |  |

| | Chicago, IL 60606 | |
|---|---|---|
| | | |

## VII.    WHAT ARE THE REASONS FOR THE PROPOSED SETTLEMENT?

Class Counsel, Class Representatives, and Settling Defendants have engaged in extensive, arm's-length negotiations, including negotiations facilitated by a Court-appointed mediator, and have, subject to the Preliminary and Final Approval of the Court, reached an agreement to settle and release all Released Claims, on the terms and conditions set forth in the Settlement Agreement.

Class Representatives and Class Counsel have concluded, after a thorough investigation and after carefully considering the relevant circumstances, including the Claims asserted, the legal and factual defenses thereto, the applicable law, the burdens, risks, uncertainties, and expense of litigation, as well as the fair, cost-effective, and assured method of resolving the Claims, that it would be in the best interests of Settlement Class Members to participate in the Settlement in order to avoid the uncertainties of litigation and to assure that the benefits reflected herein are obtained for Settlement Class Members. Further, Class Representatives and Class Counsel consider the Settlement set forth herein to be fair, reasonable, and adequate and in the best interests of Settlement Class Members.

The Settling Defendants, while continuing to deny any violation, wrongdoing, or liability with respect to any and all Claims asserted in the Litigation and all other Released Claims, either on their part or on the part of any of the Released Persons, entered into the Settlement Agreement to avoid the expense, inconvenience, and distraction of further litigation.

## VIII.    WHAT DO YOU NEED TO DO NOW?

*YOU CAN PARTICIPATE IN THE SETTLEMENT.*  You must file a Claims Form to be eligible to receive a payment under the Settlement Agreement. You can submit your Claims Form online at www.PFASWaterSettlement.com, or you can download, complete and mail your Claims Form to the Claims Administrator at AFFF Public Water System Claims, PO Box 4466, Baton Rouge, Louisiana 70821. The deadline to submit a Claims Form is DEADLINE DATE.

Regardless of whether you file a Claims Form or receive any distribution under the Settlement, unless you timely opt out as described below, you will be bound by any judgment or other final disposition of the Settlement, including the Release set forth in the Settlement Agreement, and will be precluded from pursuing claims against the Settling Defendants separately if those Claims are within the scope of the Release.

*YOU CAN OPT OUT OF THE SETTLEMENT.* If you do not wish to be a Settlement Class Member, and do not want to participate in the Settlement and receive a Settlement Benefit Check, you may exclude yourself from the Settlement Class by completing and mailing a notice of intention to opt-out (referred to as an "Opt-Out"). Any Person within the Settlement Class who wishes to opt out of the Settlement Class and Settlement must file a written and signed statement entitled "Request for Exclusion" with the Notice Administrator and provide service on all Parties in accordance with Federal Rule of Civil Procedure 5.

To be treated as valid, the Request for Exclusion must be sent via certified or first-class mail to the Notice Administrator, Counsel for the Settling Defendants, and Class Counsel at the addresses below.

**Counsel for the Settling Defendants**:

| | | |
|---|---|---|
| Jeffrey M. Wintner<br>Graham W. Meli<br>**Wachtell, Lipton, Rosen & Katz**<br>51 West 52nd Street<br>New York, NY 10019 | Kevin T. Van Wart<br>**Kirkland & Ellis LLP**<br>300 North LaSalle<br>Chicago, IL 60654 | Michael T. Reynolds<br>**Cravath, Swaine & Moore LLP**<br>825 Eighth Avenue<br>New York, NY 10019 |

**Class Counsel**:

| | | |
|---|---|---|
| Scott Summy<br>**Baron & Budd, P.C.**<br>3102 Oak Lawn Ave., Ste. 1100<br>Dallas, Texas 75219 | Michael A. London<br>**Douglas & London**<br>59 Maiden Lane, 6th Floor<br>New York, NY 10038 | Paul J. Napoli<br>**Napoli Shkolnik**<br>1302 Ponce de Leon<br>San Juan, Puerto Rico 00907 |
| | Elizabeth A. Fegan<br>**Fegan Scott LLC**<br>150 S. Wacker Drive, 24th Floor<br>Chicago, IL 60606 | |

**Notice Administrator:**

| |
|---|
| In re: Aqueous Film-Forming Foams Products Liability Litigation<br>c/o Notice Administrator<br>1650 Arch Street, Suite 2210<br>Philadelphia, PA 19103 |

The Request for Exclusion must be received by the Notice Administrator no later

than <mark>DEADLINE.</mark>

The Request for Exclusion must certify, under penalty of perjury in accordance with 28 U.S.C. § 1746, that the filer has been legally authorized to exclude the Person from the Settlement and must provide:

- an affidavit or other proof of the Settlement Class Member's standing;

- the filer's name, address, telephone, facsimile number and email address (if available);

- the name, address, telephone number, and e-mail address (if available) of the Person whose exclusion is requested; and

The Request for Exclusion must be received by the Notice Administrator no later than <mark>DEADLINE.</mark>

Any Person that submits a timely and valid Request for Exclusion shall not (i) be bound by any orders or judgments effecting the Settlement; (ii) be entitled to any of the relief or other benefits provided under this Settlement Agreement; (iii) gain any rights by virtue of this Settlement Agreement; or (iv) be entitled to submit an Objection.

If you own or operate more than one Public Water System and are authorized to determine whether to submit Requests for Exclusion on those Public Water Systems' behalf, you may submit a Request for Exclusion on behalf of some of those Public Water Systems but not the other(s). You must submit a Request for an Exclusion on behalf of each such Public Water System that you wish to opt out of the Settlement Class. Any Public Water System that is not specifically identified in a Request for Exclusion will remain in the Settlement Class.

Any Settlement Class Member that does not submit a timely and valid Request for Exclusion submits to the jurisdiction of the Court and, unless the Settlement Class Member submits an Objection that complies with the provisions of the Settlement Agreement, shall waive and forfeit any and all objections the Settlement Class Member may have asserted.

*YOU CAN OBJECT OR TAKE OTHER ACTIONS.* Any Settlement Class Member who has not successfully excluded itself ("opted out") may object to the Settlement. Any Settlement Class Member who wishes to object to the Settlement or to an award of fees or expenses to Class Counsel must file a written and signed statement designated "Objection" with the Clerk of the Court and provide service on Counsel for the Settling Defendants and Class Counsel at the addresses below in accordance with Federal Rule of Civil Procedure 5. Objections submitted by any Settlement Class Member to incorrect locations shall not be valid.

**Clerk of the Court:**

| |
|---|
| Clerk, United States District Court for the District of South Carolina<br>85 Broad Street<br>Charleston, SC 29401 |

**Counsel for the Settling Defendants**:

| Jeffrey M. Wintner<br>Graham W. Meli<br>**Wachtell, Lipton, Rosen & Katz**<br>51 West 52nd Street<br>New York, NY 10019 | Kevin T. Van Wart<br>**Kirkland & Ellis LLP**<br>300 North LaSalle<br>Chicago, IL 60654 | Michael T. Reynolds<br>**Cravath, Swaine & Moore LLP**<br>825 Eighth Avenue<br>New York, NY 10019 |
|---|---|---|

**Class Counsel**:

| Scott Summy<br>**Baron & Budd, P.C.**<br>3102 Oak Lawn Ave., Ste. 1100<br>Dallas, Texas 75219 | Michael A. London<br>**Douglas & London**<br>59 Maiden Lane, 6th Floor<br>New York, NY 10038 | Paul J. Napoli<br>**Napoli Shkolnik**<br>1302 Ponce de Leon<br>San Juan, Puerto Rico 00907 |
|---|---|---|
| | Elizabeth A. Fegan<br>**Fegan Scott LLC**<br>150 S. Wacker Drive, 24th Floor<br>Chicago, IL 60606 | |

All Objections must certify, under penalty of perjury in accordance with 28 U.S.C. § 1746, that the filer has been legally authorized to object on behalf of the Settlement Class Member and must provide:

- an affidavit or other proof of the Settlement Class Member's standing;

- the filer's name, address, telephone, facsimile number and email address (if available);

- the name, address, telephone, facsimile number and email address (if available) of the Person whose Objection is submitted;

- all objections asserted by the Settlement Class Member and the specific reason(s) for each objection, including all legal support and evidence the Settlement Class Member wishes to bring to the Court's attention;

- an indication as to whether the Settlement Class Member wishes to appear at the Final Fairness Hearing; and

- the identity of all witnesses the Settlement Class Member may call to testify.

The deadline to submit an Objection is DEADLINE DATE.

Settlement Class Members may object either on their own or through any attorney hired at their own expense. If a Settlement Class Member is represented by counsel, the attorney must file a notice of appearance with the Clerk of Court no later than the date ordered by the Court for the filing of Objections and serve such notice on all Parties in accordance with Federal Rule of Civil Procedure 5 within the same time period.

Any Settlement Class Member who fully complies with the provisions for objecting may, at the Court's discretion, appear at the Final Fairness Hearing to object to the Settlement or to the award of fees and costs to Class Counsel. Any Settlement Class Member who fails to comply with the provisions of the Settlement Agreement for objecting shall waive and forfeit any and all objections the Settlement Class Member may have asserted.

## IX.    WHAT WILL HAPPEN AT THE FINAL FAIRNESS HEARING?

Before deciding whether to grant final approval to the Settlement, the Court will hold the Final Fairness Hearing in Courtroom XX of the U.S. Courthouse, 85 Broad Street, Charleston, South Carolina 29401, on DATE. At that time, the Court will determine, among other things, (i) whether the Settlement should be granted final approval as fair, reasonable, and adequate, (ii) whether the Released Claims should be dismissed with prejudice pursuant to the terms of the Settlement Agreement, (iii) whether the Settlement Class should be conclusively certified, (iv) whether Settlement Class Members should be bound by the Release set forth in the Settlement Agreement, (v) the amount of attorneys' fees and costs to be awarded to Class Counsel, if any, and (vi) the amount of the award to be made to the Class Representatives for their services, if any. The Final Fairness Hearing may be postponed, adjourned, or continued by Order of the Court without further notice to the Class.

## X.    HOW CAN YOU GET ADDITIONAL INFORMATION ABOUT THE ACTION, THE PROPOSED SETTLEMENT, THE SETTLEMENT AGREEMENT, OR THE NOTICE?

The descriptions of the Action, the Settlement, and the Settlement Agreement in this Notice are only a general summary. In the event of a conflict between this Notice and the

Settlement Agreement, the terms of the Settlement Agreement control. All papers filed in this case, including the full Settlement Agreement, are available for you to inspect and copy (at your cost) at the office of the Clerk of Court, the Settlement website, or online through PACER. A copy of the Settlement Agreement may also be obtained from Class Counsel by contacting them at the addresses or telephone numbers set forth above. Any questions concerning this Notice, the Settlement Agreement, or the Settlement may be directed to Class Counsel. You may also seek the advice and counsel of your own attorney, at your own expense, if you desire.

**DO NOT WRITE OR TELEPHONE THE COURT, THE CLERK'S OFFICE, OR DEFENDANT WITH ANY QUESTIONS ABOUT THIS NOTICE, THE SETTLEMENT, OR THE SETTLEMENT AGREEMENT.**

## XI.    WHAT ARE THE ADDRESSES YOU MAY NEED?

**Counsel for the Settling Defendants**:

| | | |
|---|---|---|
| Jeffrey M. Wintner<br>Graham W. Meli<br>**Wachtell, Lipton, Rosen & Katz**<br>51 West 52nd Street<br>New York, NY 10019 | Kevin T. Van Wart<br>**Kirkland & Ellis LLP**<br>300 North LaSalle<br>Chicago, IL 60654 | Michael T. Reynolds<br>**Cravath, Swaine & Moore LLP**<br>825 Eighth Avenue<br>New York, NY 10019 |

**If to the Class Representatives, Class Counsel, or Settlement Class Members**:

| | | |
|---|---|---|
| Scott Summy<br>**Baron & Budd, P.C.**<br>3102 Oak Lawn Ave., Ste. 1100<br>Dallas, Texas 75219 | Michael A. London<br>**Douglas & London**<br>59 Maiden Lane, 6th Floor<br>New York, NY 10038 | Paul J. Napoli<br>**Napoli Shkolnik**<br>1302 Av. Ponce de Leon<br>San Juan, Puerto Rico 00907 |
| | Elizabeth A. Fegan<br>**Fegan Scott LLC**<br>150 S. Wacker Drive, 24th Floor<br>Chicago, IL 60606 | |

**If to the Notice Administrator:**

| |
|---|
| In re: Aqueous Film-Forming Foams Products<br>Liability Litigation<br>c/o Notice Administrator<br>1650 Arch Street, Suite 2210<br>Philadelphia, PA 19103 |

**If to the Claims Administrator:**

| |
|---|
| AFFF Public Water System Claims, PO Box 4466,<br>Baton Rouge, Louisiana 70821 |

## XII.    WHAT YOU MUST INCLUDE IN ANY DOCUMENT YOU SEND REGARDING THE ACTION.

In sending any document to the Notice Administrator, Claims Administrator, the Court, Class Counsel, or Settling Defendants' Counsel, you must include the following case

name and identifying number on any documents and on the outside of the envelope:

*In re: Aqueous Film-Forming Foams Products Liability Litigation*, MDL No. 2:18-mn-2873 (D.S.C.), this document relates to: *City of Camden, et al., v. E.I. DuPont de Nemours and Company, et al.*, No. 2:23-cv-XXXX-RMG.

You must also include your full name, address, email address, and a telephone number where you can be reached.

## XIII.    WHAT IMPORTANT DEADLINES YOU NEED TO KNOW.

| Deadline Description | Deadline Trigger | Deadline Date |
|---|---|---|
| Deadline to submit Requests for Exclusion | Start of Notice + 60 days | MM/DD/YYYY |
| Deadline to submit Objections | Start of Notice + 60 days | MM/DD/YYYY |
| Court's Final Fairness Hearing | TBD | MM/DD/YYYY |
| Phase One Public Water System Settlement Claims Form | Effective Date + 60 Days | MM/DD/YYYY |
| Phase One Special Needs Claims Form | Claims Form Deadline + 45 Days | MM/DD/YYYY |
| Phase One Supplemental Fund Claims Form | TBD | 12/31/2030 |
| Phase Two Testing Claims Form | TBD | MM/DD/YYYY |
| Phase Two Action Fund Claims Form | TBD | 6/30/2026 |
| Phase Two Special Needs Claims Form | Phase Two Action Fund Claims Form Deadline + 45 Days | 8/14/2026 |
| Phase Two Supplemental Fund Claims Form | TBD | 12/31/2030 |

_____
The Honorable Richard M. Gergel
UNITED STATES DISTRICT JUDGE

DATED: _____

# NOTICE OF DUPONT CLASS ACTION SETTLEMENT

## IN RE: [CLASS ACTION COMPLAINT CAPTION]
United States District Court, District of South Carolina – Charleston Division
MDL No. 2:18-mm-2873

**PLEASE NOTE, the enclosed correspondence relates to the Settlement with The Chemours Company, The Chemours Company FC, LLC, DuPont de Nemours, Inc., Corteva, Inc., and E.I. DuPont de Nemours and Company n/k/a EIDP, Inc. (each a "Settling Defendant").**

**YOU MAY RECEIVE ADDITIONAL CORRESPONDENCE RELATING TO ADDITIONAL SETTLEMENTS WITH OR JUDGMENTS INVOLVING OTHER DEFENDANT(S).**

Please be aware that documents associated with one Settling Defendant may appear similar to documents associated with another Settling Defendant. However, **each Settlement has its own specific terms and conditions, and each set of documents should be carefully reviewed with this in mind**. Please visit www.PFASWaterSettlement.com for more information and to review settlement-related documents.

**SETTLEMENT WEBSITE FOR FILING YOUR CLAIM FOR SETTLEMENT PAYMENT
WWW.PFASWATERSETTLEMENT.COM
Login ID: [insert from PNN]
Password: [insert from PNN]**

# **EXHIBIT F**

**EXHIBIT F:  SUMMARY NOTICE**

**NOTICE OF PROPOSED CLASS ACTION SETTLEMENT
AND COURT-APPROVAL HEARING**

*In re: Aqueous Film-Forming Foams Product Liability Litigation,* MDL No. 2:18-mn-02873
This Document relates to: *City of Camden, et al., v. E.I. DuPont de Nemours and Company, et al.,*
No. 2:23-cv-XXXX-RMG

UNITED STATES DISTRICT COURT, DISTRICT OF SOUTH CAROLINA, CHARLESTON DIVISION

**TO THE SETTLEMENT CLASS:**  All Public Water Systems in the United States of America that draw or otherwise collect from any Water Source that, on or before June 30, 2023, was tested or otherwise analyzed for PFAS and found to contain any PFAS at any level; and

All Public Water Systems in the United States of America that, as of June 30, 2023, are (i) subject to the monitoring rules set forth in the U.S. EPA's Fifth Unregulated Contaminant Monitoring Rule ("UCMR 5") (i.e., "large" systems serving more than 10,000 people and "small" systems serving between 3,300 and 10,000 people), or (ii) required under applicable state or federal law to test or otherwise analyze any of their Water Sources or the water they provide for PFAS before the deadline of sample collection under UCMR 5.

All capitalized terms not otherwise defined herein shall have the meanings set forth in the Settlement Agreement and the Allocation Procedures, available for review at **www.PFASWaterSettlement.com**.

As used above, "Public Water System" means a system for the provision of water to the public for human consumption through pipes or other constructed conveyances, if such system has at least fifteen (15) service connections or regularly serves at least twenty-five (25) individuals.  A "Public Water System" shall include the owner and/or operator of that system and any public entity that is legally responsible for funding (by statute, regulation, other law, or contract), other than a State or the federal government, a Public Water System described in such Paragraph or has authority to bring a claim on behalf of such a Public Water System.

**What Is the Purpose of This Notice?**  The purpose of this Notice is (i) to advise you of a proposed settlement of certain claims against The Chemours Company, The Chemours Company FC, LLC, DuPont de Nemours, Inc., Corteva, Inc., and E.I. DuPont de Nemours and Company n/k/a EIDP, Inc. (collectively the "Settling Defendants") in the United States District Court for the District of South Carolina (the "Court"); (ii) to summarize your rights in connection with the Settlement; and (iii) to inform you of a Court hearing to consider whether to grant final approval of the Settlement (the "Final Fairness Hearing"), to be held on DATE at TIME, before the Honorable Richard M. Gergel, United States District Judge of the United States District Court for the District of South Carolina, located at 85 Broad Street, Charleston, South Carolina 29401.

**What Are the Key Terms of the Proposed Settlement?**  The Settling Defendants have agreed to pay one billion one hundred eighty-five million dollars ($1,185,000,000) (the "Settlement Amount"), subject to final approval of the Settlement by the Court and certain other conditions specified in the Settlement Agreement.  In no event shall the Settling Defendants be required under the Settlement Agreement to pay any amounts above the Settlement Amount.  Any fees, costs, or expenses payable under the Settlement Agreement shall be paid out of, and shall not be in addition to, the Settlement Amount.  Each Settlement Class Member who has not excluded itself from the Class will be eligible to receive a settlement check(s) from the Claims Administrator based on the Allocation Procedures developed by Class Counsel, which are subject to final approval by the Court as fair and reasonable and which are under the oversight of the Special Master.

**What Are My Options?**

**YOU CAN PARTICIPATE IN THE SETTLEMENT.** You must file a Claims Form to be eligible to receive a payment under the Settlement. You can submit your Claims Form online at **www.PFASWaterSettlement.com**, or you can download, complete and mail your Claims Form to the Claims Administrator at AFFF Public Water System Claims, P.O. Box 4466, Baton Rouge, Louisiana 70821. The deadline to submit a Claims Form is DEADLINE DATE. Regardless of whether you file a Claims Form or receive any distribution under the Settlement, unless you timely opt out as described below, you will be bound by any judgment or other final disposition of the Released Claims, including the Release set forth in the Settlement Agreement, and will be precluded from pursuing claims against the Settling Defendants separately if those Claims are within the scope of the Release.

**YOU CAN OPT OUT OF THE SETTLEMENT.** If you do not wish to be a Settlement Class Member, and do not want to participate in the Settlement and receive a Settlement Benefit Check, you may exclude yourself from the Class by completing and mailing a notice of intention to opt out. Any Person within the Settlement Class who wishes to opt out of the Settlement Class and Settlement must file a written and signed statement entitled "Request for Exclusion" with the Notice Administrator and provide service on all Parties no later than DEADLINE DATE.

**YOU CAN OBJECT TO THE SETTLEMENT.** Any Settlement Class Member who has not successfully excluded itself ("opted out") may object to the Settlement. Any Settlement Class Member who wishes to object to the Settlement or to an award of fees or expenses to Class Counsel must file a written and signed statement designated "Objection" with the Clerk of the Court and provide service on all Parties in no later than DEADLINE DATE.

<u>VISIT WEBSITE URL FOR COMPLETE INFORMATION ABOUT YOUR RIGHTS</u>

**The Court's Final Fairness Hearing.** The Court will hold the Final Fairness Hearing in Courtroom XX of the United States District Court for the District of South Carolina, located at 85 Broad Street, Charleston, South Carolina 29401, on DATE. At that time, the Court will determine, among other things, (i) whether the Settlement should be granted final approval as fair, reasonable, and adequate, (ii) whether the Released Claims should be dismissed with prejudice pursuant to the terms of the Settlement Agreement, (iii) whether the Settlement Class should be conclusively certified, (iv) whether Settlement Class Members should be bound by the Release set forth in the Settlement Agreement, (v) the amount of attorneys' fees and costs to be awarded to Class Counsel, if any, and (vi) the amount of the award to be made to the Class Representatives for their services, if any. The Final Fairness Hearing may be postponed, adjourned, or continued by Order of the Court without further notice to the Class.

**How Do I Get More Information?** Please visit **www.PFASWaterSettlement.com** or call toll free 1-XXX-XXX-XXXX. You may also contact Class Counsel or the Notice Administrator for more information:

| Class Counsel | Class Counsel |
|---|---|
| Scott Summy<br>**Baron & Budd, P.C.**<br>3102 Oak Lawn Ave., Ste. 1100<br>Dallas, TX 75219<br>Email: ssummy@baronbudd.com | Michael A. London<br>**Douglas & London**<br>59 Maiden Lane, 6th Fl.<br>New York, NY 10038<br>Email: mlondon@douglasandlondon.com |
| Paul J. Napoli<br>**Napoli Shkolnik**<br>1302 Av. Ponce de Leon<br>San Juan, PR 00907<br>Email: pnapoli@NSPRLaw.com | Elizabeth A. Fegan<br>**Fegan Scott LLC**<br>150 S. Wacker Drive, 24th Floor<br>Chicago, IL 60606<br>beth@feganscott.com |

| Notice Administrator | Claims Administrator |
|---|---|
| In re: Aqueous Film-Forming Foams Products Liability Litigation c/o Notice Administrator 1650 Arch Street, Ste 2210 Philadelphia, PA 19103 Email: XXXXX | AFFF Public Water System Claims PO Box 4466 Baton Rouge, LA 70821 |

The paragraphs above provide only a general summary of the terms of the settlement. In the event of a conflict between this Notice and the Settlement Agreement, the terms of the Settlement Agreement control. You can review the Settlement Agreement itself for more information about the exact terms of the settlement. The Settlement Agreement is available at www.PFASWaterSettlement.com.

# **EXHIBIT G**

**EXHIBIT G:  NOTICE PLAN**

As detailed below, the Notice Plan provides for individual direct notice via USPS mail to all reasonably identifiable Settlement Class Members, outreach to national and local water organizations, a comprehensive media plan, and the implementation of a dedicated Settlement website and toll-free telephone line where Settlement Class Members can learn more about their rights and options pursuant to the terms of the Settlement.  Additional details are provided in the accompanying Declaration of Steven Weisbrot of Angeion Group, LLC, which will implement the Notice Plan. All capitalized terms not defined herein shall have the meaning set forth in the Settlement Agreement.

**MAILED NOTICE**

- Class Counsel will provide Angeion with a list of Public Water Systems that Class Counsel believes may be Settlement Class Members, based on information available to Class Counsel as of June 30, 2023 (the "Class List").  The Class List will include, at a minimum, all Public Water Systems that, as of June 30, 2023, are subject to the monitoring rules set forth in UCMR 5 and all Public Water Systems for which Class Counsel have information as of June 30, 2023, draw or otherwise collect from any Water Source that was found to contain any PFAS at any level.   The Class List will be updated if Class Counsel becomes aware of additional Public Water Systems that may be Settlement Class Members.

- The Class List will also include mailing addresses and email addresses for each Settlement Class Member on the Class List, based on address information maintained in the U.S. EPA's Safe Drinking Water Information System ("SDWIS").  Where SDWIS or information available to Class Counsel specifies an owner or operator of a Public Water System on the Class List whose mailing or email address is different from that of the Public Water System itself, the Class List will include the additional mailing and/or email address(es) as well.

- Notice will be sent via USPS certified mail with tracking and signature required to all Settlement Class Members for whom mailing addresses are included on the Class List.

Notice will be mailed via USPS first-class mail, postage prepaid, to any P.O. Box addresses.

- Angeion will employ the following best practices to increase the deliverability rate of the mailed Notices:

    o Angeion will cause the mailing address information for Settlement Class Members to be updated utilizing the USPS National Change of Address database, which provides updated address information for individuals or entities who have moved during the previous four years and filed a change of address with the USPS;

    o Angeion will also identify the address information included in SDWIS specified above and will monitor SDWIS for any updates;

    o Notices returned to Angeion by the USPS with a forwarding address will be re-mailed to the new address provided by the USPS and the Class List will be updated accordingly;

    o Notices returned to Angeion by the USPS without forwarding addresses will be subjected to an address verification search (commonly referred to as "skip tracing") utilizing a wide variety of data sources, including public records, real estate records, electronic directory assistance listings, etc., to locate updated addresses;

    o Notices will be re-mailed to Settlement Class Members for whom updated addresses were identified via the skip tracing process.

- Any mailed Notices that remain undeliverable after the above-described efforts will be subjected to manual internet searches, phone calls to obtain updated addresses and/or the identification of email addresses for providing backup notice if efforts to obtain a mailing address are not successful or where the Settlement Class Member requests notice be sent via email.

- A reminder postcard will be sent prior to applicable deadlines.

**EMAIL NOTICE**

- The Summary Notice will be sent via email to all Settlement Class Members for whom

email addresses are available.

- The email notice will be designed to avoid many common "red flags" that might otherwise cause a spam filter to block or identify the email notice as spam. For example, the email notice will not include attachments like the Long Form Notice to the email notice, because attachments are often interpreted by various Internet Service Providers ("ISP") as spam.

- Additional methods will be employed to help ensure that as many recipients as possible receive the Summary Notice via email. Specifically, prior to distributing the Summary Notice by email, an email updating process will be engaged to help ensure the accuracy of recipient email addresses. Angeion will review email addresses for mis-transcribed characters and perform other data hygiene, as appropriate. This process will include review of email address information available in SDWIS.

- The email notice process will also account for the real-world reality that some emails will inevitably fail to be delivered during the initial delivery attempt. Therefore, after the initial noticing campaign is complete, after an approximate 24- to 72-hour rest period (which allows any temporary block at the ISP level to expire) a second round of email noticing will continue to any email addresses that were previously identified as soft bounces and not delivered.

**OUTREACH EFFORTS**

- Angeion will perform personalized outreach to national and local water organizations will be performed, including to entities such as the Association of Metropolitan Water Agencies ("AMWA") and American Water Works Association ("AWWA") and similar third-party organizations that have a connection to the case, along with a request that they assist in providing notice, where appropriate.

**MEDIA CAMPAIGN**

***Publication Notice***

- The Summary Notice of the Settlement will be published one (1) time in key industry-specific titles, such as *Journal AWWA*, *Rural Water*, *The Municipal*, and *Water Environment*

*& Technology.*

- The Summary Notice of the Settlement will also be published one (1) time each in national publications such as the *Wall Street Journal*, *USA Today* and the *New York Times*.

- To satisfy the requirements of California's Consumer Legal Remedies Act, Angeion will cause the Summary Notice to be printed in the California regional edition of *USA Today* for four (4) consecutive weeks.

### Digital Notice

- Angeion will undertake a digital publication campaign utilizing key industry-specific titles, such as *American Water Works Association*, *National Rural Water Association*, *The Municipal*, *Water Environment & Technology, Water Quality Association, AWWA Opflow*, and/or *AWWA Source Book* will be used.

### Paid Search Campaign

- Angeion will implement a paid search campaign on Google will be used to help drive Settlement Class Members who are actively searching for information about the Settlement to the dedicated Settlement Website.

### Press Release

- Angeion will distribute a press release over PR Newswire's national and public interest circuits to further disseminate news of the Settlement. A second press release will also be issued before applicable deadlines.

## SETTLEMENT WEBSITE AND TOLL-FREE TELEPHONE SUPPORT

- The Notice Plan will also implement the creation of the Settlement website, where Settlement Class Members can easily view general information about this Settlement, review relevant Court documents, and view important dates and deadlines pertinent to the Settlement. The website will be designed to be user-friendly and make it easy for Settlement Class Members to find information about the case. The website will also have a "Contact Us" page whereby Settlement Class Members can send an email with any

additional questions to a dedicated email address.

- A toll-free hotline devoted to this case will be implemented to further apprise Settlement Class Members of their rights and options under the Settlement Agreement.  The toll-free hotline will utilize an interactive voice response ("IVR") system to provide Settlement Class Members with responses to frequently asked questions and will also provide other essential information regarding the Settlement. This hotline will be accessible 24 hours a day, 7 days a week, with live operator support during normal business hours.

# **EXHIBIT H**

## EXHIBIT H: ESCROW AGREEMENT

## CUSTODIAN/ESCROW AGREEMENT

This Custodian/Escrow Agreement dated [●], 2023, is made among (i) The Chemours Company, The Chemours Company FC, LLC, DuPont de Nemours, Inc., Corteva, Inc., and E.I. DuPont de Nemours and Company n/k/a EIDP, Inc. (each a "Settling Defendant" and collectively, the "Settling Defendants"), (ii) Michael A. London and the law firm of Douglas & London, 59 Maiden Lane, 6th Floor, New York, NY 10038; Scott Summy and the law firm of Baron & Budd, 3102 Oak Lawn Avenue, Suite 1100, Dallas, Texas, 75219; Paul J. Napoli and the law firm of Napoli Shkolnik, 1302 Avenida Ponce de Leon, San Juan, Puerto Rico 00907 (collectively, "Class Counsel"), Matthew Garretson (the "Special Master") and **THE HUNTINGTON NATIONAL BANK**, as Custodian/Escrow agent ("Custodian/Escrow Agent").

<p style="text-align:center">Recitals</p>

A.    This Custodian/Escrow Agreement governs the deposit, investment and disbursement of the Settlement Fund pursuant to the Settlement Agreement (the "Settlement Agreement") dated [●], 2023 attached hereto as Exhibit B, entered into by the Settling Defendants and certain other parties thereto, which has been submitted for approval to the United States District Court for the District of South Carolina, Charleston Division (the "Court"), in the multi-district litigation captioned *In Re:  Aqueous Film-Forming Foams Products Liability Litigation*, MDL No. 2:18-mn-2873 (D.S.C.) (the "MDL").

B.    Pursuant to the terms of the Settlement Agreement, the Settling Defendants have agreed to pay or cause to be paid the Settlement Amount to the Qualified Settlement Fund in full settlement of the claims brought against the Settling Defendants in the MDL and certain other Litigation.

C.    The Custodian/Escrow Account established pursuant to this Custodian/Escrow Agreement is intended to qualify as a "qualified settlement fund" within the meaning of Treasury Regulations §1.468B-1 *et seq.* for all U.S. federal and applicable state and local income tax purposes.

D.    The Settlement Amount is to be deposited into the Custodian/Escrow Account and used to satisfy payments to Settlement Class Members, payments for attorneys' fees and expenses approved by the Court, payments of tax liabilities and expenses of the Custodian/Escrow Account and certain other costs, in each case, subject to the terms and conditions of the Settlement Agreement and this Custodian/Escrow Agreement.

E.    The Court has approved the Custodian/Escrow Agent and this Custodian/Escrow Agreement.

F.    Unless otherwise defined herein, all capitalized terms shall have the meaning ascribed to them in the Settlement Agreement.

## **Agreement**

1.     <u>Appointment of Custodian/Escrow Agent</u>. The Custodian/Escrow Agent is hereby appointed to receive, deposit and disburse the Settlement Amount upon the terms and conditions provided in this Custodian/Escrow Agreement, the Settlement Agreement and any other exhibits or schedules later annexed hereto and made a part hereof. The Parties agree that the Custodian/Escrow Agent shall be the "Escrow Agent" as defined in the Settlement Agreement, this Custodian/Escrow Agreement shall be the "Escrow Agreement" as such term is defined in the Settlement Agreement, and the Custodian/Escrow Account shall be the "Qualified Settlement Fund" as such term is defined in the Settlement Agreement.

2.     <u>The Custodian/Escrow Account</u>. The Custodian/Escrow Agent shall establish and maintain a custodian/escrow account titled as [●] (the "Custodian/Escrow Account"). Pursuant to the Settlement Agreement, the Settling Defendants shall cause the Settlement Amount to be deposited into the Custodian/Escrow Account within the latest of (i) ten (10) "Business Days" (hours and days of the week that Custodian/Escrow Agent is open for business) following entry of the Court's order preliminarily approving the settlement (the "Preliminary Approval") and (ii) seven (7) Business Days following the establishment by the Custodian/Escrow Agent of the Custodian/Escrow Account and the Court approval of the Custodian/Escrow Agent and this Custodian/Escrow Agreement; provided that if the Custodian/Escrow Agent has not provided to Settling Defendants wire transfer instructions and any other documentation reasonably necessary to facilitate payment of the Settlement Amount by the date seven (7) Business Days before the deadline for payment specified herein, Settling Defendants shall not be obligated to pay such amount until seven (7) Business Days after receiving such wire transfer instructions and documentation. Custodian/Escrow Agent shall receive the Settlement Amount into the Custodian/Escrow Account; the Settlement Amount and all interest accrued thereon shall be referred to herein as the "Settlement Fund." The Settlement Fund shall be held and invested on the terms and subject to the limitations set forth herein, and shall be released by Custodian/Escrow Agent in accordance with the terms and conditions hereinafter set forth and set forth in the Settlement Agreement.

In no event shall any Settling Defendant have any liability whatsoever, whether to the Custodian/Escrow Agent, Class Counsel, any Settlement Class Member (as defined in the Settlement Agreement) or otherwise, with respect to the Settlement Amount or the Settlement Fund once the Settlement Amount is paid in full to the Custodian/Escrow Account in accordance with the Settlement Agreement and receipt of payment is verified by Custodian/Escrow Agent.

3.     <u>Investment of Settlement Fund</u>. The Custodian/Escrow Agent shall invest the Settlement Fund exclusively in interest-bearing instruments or accounts backed by the full faith and credit of the United States Government or fully insured by the United States Government or an agency thereof, including a U.S. Treasury Fund or a bank account that is either (a) fully insured by the Federal Deposit Insurance Corporation ("FDIC") or (b) secured by instruments backed by the full faith and credit of the United States Government, in each case, as further

provided in this Section 3. Prior to the Effective Date, unless otherwise mutually agreed by the parties, the Custodian/Escrow Agent shall invest the Settlement Fund in compliance with the preceding sentence as follows: (i) except for $5,000,000 covered in clause (ii), upon receipt of the Settlement Amount, exclusively in successive U.S. Treasury bonds or bills, each with a thirty-day maturity and (ii) $5,000,000 held in immediately available funds. Following the Effective Date, unless otherwise mutually agreed by the Custodian/Escrow Agent, Class Counsel and the Special Master, the Custodian/Escrow Agent shall invest the Settlement Fund, in compliance with this Section 3. To the extent the investment is not otherwise specified herein, the Settlement Fund will be invested conservatively in a manner designed to assure timely availability of funds in accordance with the distribution schedule contemplated by the Settlement Agreement, protection of principal, and avoidance of concentration risk, and shall be invested only in short-term instruments or accounts. To the extent the investment is not otherwise specified herein, the Settlement Fund shall at all times remain available for distribution in accordance with the terms hereof and the Settlement Agreement.

The Settling Defendants shall not bear any responsibility for or liability related to the investment of the Settlement Fund by the Custodian/Escrow Agent.

4.     <u>Custodian/Escrow Funds Subject to Jurisdiction of the Court</u>.  The Qualified Settlement Fund shall remain subject to the jurisdiction of the Court until such time as the Settlement Fund shall have been distributed, pursuant to the terms of the Settlement Agreement and order(s) of the Court contemplated thereby.

5.     <u>Tax Treatment & Reporting</u>.  The Custodian/Escrow Account shall be structured and operated at all times in a manner such that it qualifies as a "qualified settlement fund" within the meaning of Treasury Regulation §1.468B-1.  The Special Master, the Settling Defendants, and any other relevant parties shall cooperate to timely make such elections as necessary or advisable to fulfill the requirements of such Treasury Regulation, including making any "relation-back election" under Treasury Regulation § 1.468B-1(j)(2) required to treat the Custodian/Escrow Account as a qualified settlement fund from the earliest permitted date.  For purposes of §468B of the Internal Revenue Code of 1986, as amended (the "Code"), and the Treasury Regulations promulgated thereunder, the "administrator" of the qualified settlement fund shall be the Special Master.  The Special Master shall timely and properly prepare, deliver to all necessary parties for signature, and file all necessary documentation for any elections required under Treas. Reg. §1.468B-1.  The Special Master shall timely and properly prepare and file or cause to be prepared and filed any information and other tax returns necessary or advisable with respect to the Custodian/Escrow Account and the distributions and payments therefrom including without limitation the returns described in Treas. Reg. §1.468B-2(k), and to the extent applicable Treas. Reg. §1.468B-2(1), and as further provided in the Settlement Agreement.  The "taxable year" of the Custodian/Escrow Account shall be the "calendar year" as such terms are defined in Section 441 of the Code.  The Custodian/Escrow Account shall use the accrual method of accounting as defined in Section 446(c) of the Code.

6.     <u>Tax Payments</u>.  All Taxes and Tax Expenses (each as defined in the Settlement Agreement) with respect to the Custodian/Escrow Account, as more fully described in the Settlement

Agreement, shall be treated as and considered to be a cost of administration of the Custodian/Escrow Account and the Custodian/Escrow Agent shall timely pay such Taxes and Tax Expenses out of the Settlement Fund without prior order of the Court, as directed by the Special Master and in accordance with the Settlement Agreement. The Special Master shall be responsible for the timely and proper preparation and delivery of any necessary documentation for signature by all necessary parties, and the timely filing of all tax returns and other tax reports required by law with respect to the Custodian/Escrow Account. The Special Master shall be responsible for ensuring that the Custodian/Escrow Account complies with all withholding requirements (including by instructing the Custodian/Escrow Agent to withhold any required amounts) with respect to payments made by the Custodian/Escrow Account. The Custodian/Escrow Agent, as directed by the Special Master, will deduct and withhold any Taxes required to be deducted and withheld by applicable law, including but not limited to required withholding in the absence of proper Tax documentation, and shall remit such Taxes to the appropriate authorities in accordance with applicable law. Any amounts deducted or withheld by the Custodian/Escrow Agent (or any other withholding agent) with respect to payments made by the Custodian/Escrow Account shall be treated for all purposes as though such amounts had been distributed to the Person in respect of which such deduction or withholding was made. The Custodian/Escrow Agent shall not be responsible for any income reporting to the IRS with respect to income earned on the Settlement Fund, however the Custodian/Escrow Agent shall comply with all instructions received from the Special Master regarding the withholding of any amount on account of Taxes and shall cooperate with other requests made by the Special Master to enable the Special Master to fulfill its responsibilities under the Settlement Agreement with respect to tax matters.

7. <u>Disbursement Instructions</u>

(a)    The Custodian/Escrow Agent shall hold and release the Settlement Fund as follows:

i.   Solely to the extent the Custodian/Escrow Agent has previously received a notice from an Authorized Representative of each of the Settling Defendants confirming the occurrence of the Effective Date: upon receipt of a Special Master Release Instruction with respect to the Settlement Fund, the Custodian/Escrow Agent shall promptly, but in any event within two (2) Business Days after receipt of a Special Master Release Instruction, disburse all or part of the Settlement Fund in accordance with such Special Master Release Instruction. "Special Master Release Instruction" means written instruction executed by an Authorized Representative of the Special Master and by an Authorized Representative of Class Counsel directing the Custodian/Escrow Agent to disburse all or a portion of the Settlement Fund to pay, disburse, reimburse, hold, waive, or satisfy any monetary obligation provided for or recognized under any of the terms of the Settlement Agreement.

ii.  Upon receipt of a Joint Release Instruction with respect to the Settlement Fund, the Custodian/Escrow Agent shall promptly, but in

any event within two (2) Business Days after receipt of a Joint Release Instruction, disburse all or part of the Settlement Fund in accordance with such Joint Release Instruction. A "Joint Release Instruction" means the joint written instruction executed by an Authorized Representative of Class Counsel and by the necessary Authorized Representatives of the Settling Defendants, directing the Custodian/Escrow Agent to disburse all or a portion of the Settlement Fund.

iii.   Upon receipt of a Termination Release Instruction with respect to the Settlement Fund, the Custodian/Escrow Agent shall promptly, but in any event within two (2) Business Days after receipt of a Termination Release Instruction, disburse all of the Settlement Fund in accordance with such Termination Release Instruction. The Custodian/Escrow Agent will act on such Termination Release Instruction without further inquiry. "Termination Release Instruction" means written instruction executed by the necessary Authorized Representatives of the Settling Defendants directing the Custodian/Escrow Agent to disburse all or a portion of the Settlement Fund to the Settling Defendants or their respective designees pursuant to Paragraphs 9.9, 9.10 and/or 10.4 of the Settlement Agreement.

(b)     Any instructions setting forth, claiming, containing, objecting to, or in any way related to the transfer or distribution of any funds on deposit in the Custodian/Escrow Account under the terms of this Agreement must be in writing, executed by the appropriate Party or Parties (pursuant to Section 7(a)) as evidenced by the signatures of the person or persons set forth on Exhibit A-1, Exhibit A-2, Exhibit A-3, Exhibit A-4 and Exhibit A-5 (the "Authorized Representatives") and delivered to the Custodian/Escrow Agent. In the event funds transfer instructions are given (other than in writing at the time of execution of this Agreement), whether in writing, by facsimile, e-mail, telecopier or otherwise, Custodian/Escrow Agent will seek confirmation of such instructions by telephone call back when new wire instructions are established to the applicable Authorized Representatives only if it is reasonably necessary, and Custodian/Escrow Agent may rely upon the confirmations of anyone purporting to be the Authorized Representatives.  To assure accuracy of the instructions it receives, Custodian/Escrow Agent may record such call backs.  If Custodian/Escrow Agent is unable to verify the instructions, or is not satisfied with the verification it receives, it shall not execute the instruction until all issues have been resolved.  The persons and telephone numbers for call backs may be validly changed only in a writing that (i) is signed by the party changing its notice designations, and (ii) is received and acknowledged by Custodian/Escrow Agent.  If it is determined that the transaction was delayed or erroneously executed as a result of Custodian/Escrow Agent's error, Custodian/Escrow Agent's sole obligation is to pay or refund the amount of such error and any amounts as may be required by applicable law.  Any claim for interest payable will be at the then-published rate for United States Treasury Bills having a maturity of 91 days.

(c)    Except in the case of gross-negligence, willful misconduct or bad faith, the Custodian/Escrow Agent shall not be liable for any losses, costs or expenses arising directly or indirectly from the Custodian/Escrow Agent's reliance upon and compliance with such instructions notwithstanding such instructions conflict or are inconsistent with a subsequent written instruction. The party providing electronic instructions agrees; (i) to assume all risks arising out of the use of such electronic methods to submit instructions and directions to the Custodian/Escrow Agent, including, without limitation, the risk of the Custodian/Escrow Agent acting on unauthorized instructions, and the risk of interception and misuse by third parties; (ii) that it is fully informed of the protections and risks associated with the various methods of transmitting instructions to the Custodian/Escrow Agent and that there may be more secure methods of transmitting instructions than the method(s) selected by the Custodian/Escrow Agent; and (iii) that the security procedures (if any) to be followed in connection with its transmission of instructions provide to it a commercially reasonable degree of protection in light of its particular needs and circumstances.

8.    <u>Fees</u>.  The Custodian/Escrow Agent shall be entitled to compensation for its services as stated in the fee schedule attached as Exhibit C. All fees and expenses of Custodian/Escrow Agent shall be paid solely from the Settlement Fund.  The Custodian/Escrow Agent may pay itself such fees from the Settlement Fund only after such fees have been approved for payment pursuant to a Joint Release Instruction.  If Custodian/Escrow Agent is asked to provide additional services a separate agreement and fee schedule will be entered into.

9.    <u>Duties, Liabilities and Rights of Custodian/Escrow Agent</u>.  This Custodian/Escrow Agreement sets forth all of the obligations of Custodian/Escrow Agent, and no additional obligations shall be implied from the terms of this Custodian/Escrow Agreement or any other agreement, instrument or document.

(a)    Custodian/Escrow Agent may act in reliance upon any instructions, notice, certification, demand, consent, authorization, receipt, power of attorney or other writing delivered to it by the applicable Authorized Representatives, as provided herein, without being required to determine the authenticity or validity thereof or the correctness of any fact stated therein, the propriety or validity of the service thereof.  Custodian/Escrow Agent may act in reliance upon any signature which is reasonably believed by it to be genuine, and may assume that such person has been properly authorized to do so.

(b)    Custodian/Escrow Agent may consult with legal counsel of its selection in the event of any dispute or question as to the meaning or construction of any of the provisions hereof or its duties hereunder, and it shall incur no liability and shall be fully protected to the extent Custodian/Escrow Agent acts in accordance with the reasonable opinion and instructions of counsel.  Custodian/Escrow Agent shall have the right to reimburse itself for reasonable legal fees and reasonable and necessary disbursements and expenses actually incurred from the Custodian/Escrow Account only (i) upon a Joint Release Instruction or (ii) pursuant to an order of the Court.

(c)    The Custodian/Escrow Agent, or any of its affiliates, is authorized to manage, advise, or service any money market mutual funds in which any portion of the Settlement Fund may be invested.

(d)    Custodian/Escrow Agent is authorized to hold any treasuries held hereunder in its federal reserve account.

(e)    The Custodian/Escrow Agent will furnish monthly statements to the Parties setting forth the activity in the Custodian/Escrow Account.

(f)    Custodian/Escrow Agent shall not bear any risks related to the investment of the Settlement Fund in accordance with the provisions of paragraph 3 of this Custodian/Escrow Agreement.  The Custodian/Escrow Agent will be indemnified by the Settlement Fund, and held harmless against, any and all claims, suits, actions, proceedings, investigations, judgments, deficiencies, damages, settlements, liabilities and expenses (including reasonable legal fees and expenses of attorneys chosen by the Custodian/Escrow Agent) as and when incurred, arising out of or based upon any act, omission, alleged act or alleged omission by the Custodian/Escrow Agent or any other cause, in any case in connection with the acceptance of, or performance or non-performance by the Custodian/Escrow Agent of, any of the Custodian/Escrow Agent's duties under this Agreement, except as a result of the Custodian/Escrow Agent's bad faith, willful misconduct or gross negligence.

(g)    Upon distribution of all of the funds in the Custodian/Escrow Account pursuant to the terms of this Custodian/Escrow Agreement and any orders of the Court, Custodian/Escrow Agent shall be relieved of any and all further obligations and released from any and all liability under this Custodian/Escrow Agreement, except as otherwise specifically set forth herein.

(h)    In the event any dispute shall arise between the parties with respect to the disposition or disbursement of any of the assets held hereunder, the Custodian/Escrow Agent shall be permitted to interplead all of the assets held hereunder into the Court, and thereafter be fully relieved from any and all liability or obligation with respect to such interpleaded assets. The parties further agree to pursue any redress or recourse in connection with such a dispute, without making the Custodian/Escrow Agent a party to same.

10.    <u>Non-Assignability by Custodian/Escrow Agent</u>.  Custodian/Escrow Agent's rights, duties and obligations hereunder may not be assigned or assumed without the written consent of the persons necessary for a Joint Release Instruction.

11.    <u>Resignation of Custodian/Escrow Agent</u>.  Custodian/Escrow Agent may, in its sole discretion, resign and terminate its position hereunder at any time following 120 days prior written notice to the parties to the Custodian/Escrow Agreement herein.  On the effective date of such resignation, Custodian/Escrow Agent shall deliver this Custodian/Escrow Agreement together with any and all related instruments or documents and all funds in the Custodian/Escrow Account

to the successor Custodian/Escrow Agent, subject to this Custodian/Escrow Agreement. If a successor Custodian/Escrow Agent has not been appointed prior to the expiration of 120 days following the date of the notice of such resignation, then Custodian/Escrow Agent may petition the Court for the appointment of a successor Custodian/Escrow Agent, or other appropriate relief. Any such resulting appointment shall be binding upon all of the parties to this Custodian/Escrow Agreement.

12.     <u>Notices</u>.  Notice to the parties hereto shall be in writing and delivered by hand-delivery, facsimile, electronic mail or overnight courier service, addressed as follows:

If to Class Counsel:         Michael A. London
                             Douglas & London, P.C.
                             59 Maiden Lane, 6th Floor
                             New York, New York 10038
                             mlondon@douglasandlondon.com

                             Paul J. Napoli
                             Napoli Shkolnik
                             1302 Avenida Ponce de Leon
                             San Juan, Puerto Rico 00907
                             PNapoli@NSPRLaw.com

                             Scott Summy
                             Baron & Budd
                             3102 Oak Lawn Avenue, Suite 1100
                             Dallas, Texas 75219
                             ssummy@baronbudd.com

If to the Settling
Defendants:

The Chemours Company
Office of the General Counsel
1007 Market Street
Wilmington, DE 19801
Attn: Kristine M. Wellman
kristine.m.wellman@chemours.com

With a copy to:

Jeffrey M. Wintner
Graham W. Meli
Wachtell, Lipton, Rosen & Katz
51 West 52nd Street
New York, NY 10019
jmwintner@wlrk.com
gwmeli@wlrk.com

DuPont de Nemours, Inc.
974 Centre Rd.
Wilmington, DE 19806
Attn: Erik T. Hoover
erik.t.hoover@dupont.com

With a copy to:

Kevin T. Van Wart
Kirkland & Ellis LLP
300 North LaSalle
Chicago, IL 60654
kevin.vanwart@kirkland.com

Corteva Inc.
974 Centre Road
Building 735
Wilmington, DE 19805
Attn: Cornel B. Fuerer
cornel.b.fuerer@corteva.com

With a copy to:
Michael T. Reynolds
Cravath, Swaine & Moore LLP
825 Eighth Avenue
New York, NY 10019
mreynolds@cravath.com

EIDP, Inc.
974 Centre Road
Building 735
Wilmington, DE 19805
Attn: Thomas A. Warnock
thomas.a.warnock@corteva.com

With a copy to:
Michael T. Reynolds
Cravath, Swaine & Moore LLP
825 Eighth Avenue
New York, NY 10019
mreynolds@cravath.com

| If to the Special Master: | Matthew Garretson, Wolf/Garretson LLC P.O. Box 2806 Park City, UT 8406 |
|---|---|

If to the Special
Master:                    Matthew Garretson,
                           Wolf/Garretson LLC
                           P.O. Box 2806
                           Park City, UT 8406

If to
Custodian/Escrow
Agent:                     THE HUNTINGTON NATIONAL BANK
                           Robyn Griffin
                           Senior Managing Director
                           National Settlement Team
                           The Huntington National Bank
                           One Rockefeller Plaza 10th Fl
                           New York, NY 10020
                           Office: (312) 646-7288
                           Mobile: (646) 265-3817
                           E-mail:  robyn.griffin@huntington.com

                           Susan Brizendine, Trust Officer
                           Huntington National Bank
                           7 Easton Oval – EA5W63
                           Columbus, Ohio 43219
                           Telephone: (614) 331-9804
                           E-mail:  susan.brizendine@huntington.com

14.    <u>Patriot Act Warranties</u>.  Section 326 of the USA Patriot Act (Title III of Pub. L. 107-56), as amended, modified or supplemented from time to time (the "Patriot Act"), requires financial institutions to obtain, verify and record information that identifies each person or legal entity that opens an account (the "Identification Information").  The parties to this Custodian/Escrow Agreement agree that they will provide the Custodian/Escrow Agent with such

Identification Information as the Custodian/Escrow Agent may request in order for the Custodian/Escrow Agent to satisfy the requirements of the Patriot Act.

15.    <u>Entire Agreement</u>.  This Custodian/Escrow Agreement, including all Schedules and Exhibits hereto, constitutes the entire agreement and understanding of the parties hereto.  Any modification of this Custodian/Escrow Agreement or any additional obligations assumed by any party hereto shall be binding only if evidenced by a writing signed by each of the parties hereto.  To the extent this Custodian/Escrow Agreement conflicts in any way with the Settlement Agreement, the provisions of the Settlement Agreement shall govern.

16.    <u>Governing Law</u>.  This Custodian/Escrow Agreement shall be governed by the law of the State of Delaware in all respects.  The parties hereto submit to the jurisdiction of the Court, in connection with any proceedings commenced regarding this Custodian/Escrow Agreement, including, but not limited to, any interpleader proceeding or proceeding Custodian/Escrow Agent may commence pursuant to this Custodian/Escrow Agreement for the appointment of a successor Custodian/Escrow Agent, and all parties hereto submit to the jurisdiction of such Court for the determination of all issues in such proceedings, without regard to any principles of conflicts of laws, and irrevocably waive any objection to venue or inconvenient forum.

17.    <u>Termination of Custodian/Escrow Account</u>.  The Custodian/Escrow Account will terminate after all funds deposited in it, together with all interest earned thereon, are disbursed in accordance with the provisions of the Settlement Agreement and this Custodian/Escrow Agreement.

18.    <u>Miscellaneous Provisions</u>.

(a)    <u>Counterparts</u>.  This Custodian/Escrow Agreement may be executed in one or more counterparts, each of which counterparts shall be deemed to be an original and all of which counterparts, taken together, shall constitute but one and the same Custodian/Escrow Agreement.

(b)    <u>Further Cooperation</u>.  The Parties hereto agree to do such further acts to execute and deliver such other documents as Custodian/Escrow Agent may reasonably request from time to time in connection with the administration, maintenance, enforcement or adjudication of this Custodian/Escrow Agreement.

(c)    <u>Electronic Signatures</u>.  The parties agree that the electronic signature (provided by the electronic signing service DocuSign initiated by the Custodian/Escrow Agent) of a party to this Escrow Agreement shall be as valid as an original signature of such party and shall be effective to bind such party to this Escrow Agreement. The parties agree that any electronically signed document shall be deemed (i) to be "written" or "in writing," (ii) to have been signed, and (iii) to constitute a record established and maintained in the ordinary course of business and an original written record when printed from electronic files.

        (d)    <u>Non-Waiver</u>.  The failure of any of the parties hereto to enforce any provision hereof on any occasion shall not be deemed to be a waiver of any preceding or succeeding breach of such provision or any other provision.

[*Signature Page Follows*]

**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement as of the date first above written.

THE HUNTINGTON NATIONAL BANK, as Custodian/Escrow Agent

By: _____

      Robyn Griffin, Senior Managing Director

CLASS COUNSEL


By: _____
     Michael A. London
     Douglas & London, P.C.
     59 Maiden Lane, 6th Floor
     New York, NY 10038


By: _____
     Scott Summy
     Baron & Budd, P.C.
     3102 Oak Lawn Avenue
     Suite 1100
     Dallas Texas, 75219


By: _____
     Paul J. Napoli
     Napoli Shkolnik
     1302 Avenida Ponce de Leon
     San Juan, Puerto Rico 00907


THE SPECIAL MASTER

By: _____
     Name: Matthew Garretson

SETTLING DEFENDANTS

**The Chemours Company**

By: _____
      Name:
      Title:


**The Chemours Company FC, LLC**

By: _____
      Name:
      Title:


**DuPont de Nemours, Inc.**

By: _____
      Name:
      Title:


**Corteva, Inc.**

By: _____
      Name:
      Title:


**E.I. DuPont de Nemours and Company n/k/a EIDP, Inc.**

By: _____
      Name:
      Title:

**Exhibit A-1**

**AUTHORIZED REPRESENTATIVES**

Each of the Authorized Representatives is, with respect to Class Counsel, authorized to issue instructions, confirm funds transfer instructions by callback, and effect changes in Authorized Representatives of Class Counsel, all in accordance with the terms of the Escrow Agreement.

**Class Counsel**

By: _____

Name: _____

Law Firm: _____

Email: _____

Phone: _____


By: _____

Name: _____

Law Firm: _____

Email: _____

Phone: _____


By: _____

Name: _____

Law Firm: _____

Email: _____

Phone: _____

**Exhibit A-2**

**AUTHORIZED REPRESENTATIVES**

Each of the Authorized Representatives is, with respect to The Chemours Company and The Chemours Company FC, LLC (each a Settling Defendant), authorized to issue instructions, confirm funds transfer instructions by callback, and effect changes in Authorized Representatives of The Chemours Company and The Chemours Company FC, LLC, all in accordance with the terms of the Escrow Agreement.

**The Chemours Company and The Chemours Company FC, LLC**

By: _____

Name: _____

Law Firm: _____

Email: _____

Phone: _____


By: _____

Name: _____

Law Firm: _____

Email: _____

Phone: _____


By: _____

Name: _____

Law Firm: _____

Email: _____

Phone: _____

**Exhibit A-4**

**AUTHORIZED REPRESENTATIVES**

Each of the Authorized Representatives is, with respect to DuPont de Nemours, Inc. (a Settling Defendant), authorized to issue instructions, confirm funds transfer instructions by callback, and effect changes in Authorized Representatives of DuPont de Nemours, Inc., all in accordance with the terms of the Escrow Agreement.

**DuPont de Nemours, Inc.**

By: _____

Name: _____

Law Firm: _____

Email: _____

Phone: _____


By: _____

Name: _____

Law Firm: _____

Email: _____

Phone: _____


By: _____

Name: _____

Law Firm: _____

Email: _____

Phone: _____

**Exhibit A-4**

**AUTHORIZED REPRESENTATIVES**

Each of the Authorized Representatives is, with respect to DuPont de Nemours, Inc. and E.I. DuPont de Nemours and Company n/k/a EIDP, Inc. (each, a Settling Defendant), authorized to issue instructions, confirm funds transfer instructions by callback, and effect changes in Authorized Representatives of DuPont de Nemours, Inc. and E.I. DuPont de Nemours and Company n/k/a EIDP, Inc., all in accordance with the terms of the Escrow Agreement.

**Corteva, Inc. and E.I. DuPont de Nemours and Company n/k/a EIDP, Inc.**

By: _____

Name: _____

Law Firm: _____

Email: _____

Phone: _____


By: _____

Name: _____

Law Firm: _____

Email: _____

Phone: _____


By: _____

Name: _____

Law Firm: _____

Email: _____

Phone: _____

**Exhibit A-5**

**AUTHORIZED REPRESENTATIVES**

Each of the Authorized Representatives is, with respect to Matthew Garretson (a Settling Defendant), authorized to issue instructions, confirm funds transfer instructions by callback, and effect changes in Authorized Representatives of Matthew Garretson, all in accordance with the terms of the Escrow Agreement.

**Matthew Garretson**

By: _____

Name: _____

Law Firm: _____

Email: _____

Phone: _____


By: _____

Name: _____

Law Firm: _____

Email: _____

Phone: _____


By: _____

Name: _____

Law Firm: _____

Email: _____

Phone: _____

**Exhibit B**

**Settlement Agreement**

**Exhibit C**

**Fees of Custodian/Escrow Agent**

**Acceptance Fee:**                                                   **Waived**

The Acceptance Fee includes the review of the Custodian/Escrow
Agreement, acceptance of the role as Custodian/Escrow Agent,
establishment of Custodian/Escrow Account(s), and receipt of funds.

**Annual Administration Fee:**                                        **Waived**

The Annual Administration Fee includes the performance of
administrative duties associated with the Custodian/Escrow
Account including daily account management, generation of
account statements to appropriate parties, and disbursement of
funds in accordance with the Custodian/Escrow Agreement.
Administration Fees are payable annually in advance without
proration for partial years.

**Out of Pocket Expenses:**                                           **Waived**

Out of pocket expenses include postage, courier, overnight mail,
wire transfer, and travel fees.

# EXHIBIT I

**EXHIBIT I: EXCLUDED STATE-OWNED PUBLIC WATER SYSTEMS**

| PWS ID | PWS Name | Type | Owner |
|---|---|---|---|
| AR0000315 | ADC - CUMMINS UNIT MAINT | Community Water System | State Government |
| AS9711948 | Central ASG | Community Water System | State Government |
| AZ0407555 | ASPC LEWIS COMPLEX WATER SYSTEM | Community Water System | State Government |
| AZ0411705 | ADOC EYMAN UNIT | Community Water System | State Government |
| AZ0414099 | ASPC YUMA | Community Water System | State Government |
| AZ0420557 | ADOC TUCSON | Community Water System | State Government |
| CA1310800 | CALIPATRIA STATE PRISON | Community Water System | State Government |
| CA1310801 | CENTINELA STATE PRISON | Community Water System | State Government |
| CA1510800 | CCI - TEHACHAPI | Community Water System | State Government |
| CA1510801 | WASCO ST. PRISON RECEPTION CTR | Community Water System | State Government |
| CA1510802 | KERN VALLEY STATE PRISON | Community Water System | State Government |
| CA1805004 | CDCR-HIGH DESERT STATE PRISON | Community Water System | State Government |
| CA1910254 | HUNGRY VALLEY STATE VEHICULAR REC AREA | Non-Transient Non-Community Water System | State Government |
| CA2710850 | CORRECTIONAL TRAINING FACILITY - SOLEDAD | Community Water System | State Government |
| CA2710851 | SALINAS VALLEY STATE PRISON | Community Water System | State Government |
| CA3310800 | CALIFORNIA REHABILITATION CENTER - NORCO | Community Water System | State Government |
| CA3310802 | CHUCKAWALLA VALLEY STATE PRISON | Community Water System | State Government |
| CA3410032 | FOLSOM STATE PRISON | Community Water System | State Government |
| CA3610850 | CALIFORNIA INSTITUTION FOR MEN | Community Water System | State Government |
| CA4010830 | CALIFORNIA MENS COLONY | Community Water System | State Government |
| CA4010832 | ATASCADERO STATE HOSPITAL | Community Water System | State Government |
| CA4310302 | HENRY COE PARK RABBIT SPRING | Community Water System | State Government |
| CA4810800 | CALIFORNIA STATE PRISON - SOLANO | Community Water System | State Government |
| CA5510851 | CDCR - SIERRA CONSERVATION CENTER | Community Water System | State Government |
| CO0108350 | BUENA VISTA CORRECTIONAL FACILITY | Community Water System | State Government |
| CO0251466 | LAKE PUEBLO STATE PARK | Non-Transient Non-Community Water System | State Government |
| CT0780021 | UNIVERSITY OF CONNECTICUT - MAIN CAMPUS | Community Water System | State Government |
| FL2040372 | FLORIDA STATE PRISON | Community Water System | State Government |
| FL2630930 | RAIFORD STATE PRISON WATER SYS | Community Water System | State Government |
| FL2631207 | UNION CORRECTIONAL INSTITUTE | Community Water System | State Government |
| GA0090006 | CENTRAL STATE HOSPITAL | Community Water System | State Government |
| GA0310006 | GEORGIA SOUTHERN UNIVERSITY | Community Water System | State Government |
| GA2670005 | ROGERS STATE PRISON | Community Water System | State Government |
| GA2770004 | ABRAHAM BALDWIN AGRI. COLLEGE | Community Water System | State Government |
| IA8503528 | ISU | Community Water System | State Government |
| IL0875510 | VIENNA CORRECTIONAL CENTER | Community Water System | State Government |
| IN2460041 | PURDUE UNIVERSITY NORTH CENTRAL | Non-Transient Non-Community Water System | State Government |
| IN5279015 | PURDUE UNIV. WATER WORKS | Community Water System | State Government |
| KS2004513 | UNIVERSITY OF KANSAS | Community Water System | State Government |
| KS2010312 | LANSING CORRECTIONAL FACILITY | Community Water System | State Government |
| KS2014503 | LARNED STATE HOSPITAL | Community Water System | State Government |
| KY1030480 | MOREHEAD STATE UNIVERSITY | Community Water System | State Government |
| LA1061005 | GRAMBLING STATE UNIVERSITY WS | Community Water System | State Government |
| LA1125005 | LOUISIANA STATE PENITENTIARY | Community Water System | State Government |
| MA1004001 | DCR MT GREYLOCK STATE RESERVATION | Transient Non-Community Water System | State Government |
| MA1091003 | DCR ERVING STATE FOREST | Transient Non-Community Water System | State Government |
| MA1193015 | DCR BEARTOWN STATE FOREST | Transient Non-Community Water System | State Government |
| MA1203007 | DCR SANDISFIELD STATE FOREST | Transient Non-Community Water System | State Government |
| MA1236016 | DCR BERKSHIRE REGIONAL HQ | Transient Non-Community Water System | State Government |
| MA2153001 | DCR LEOMINSTER STATE FOREST | Transient Non-Community Water System | State Government |
| MA2208001 | MCI NORFOLK/CEDAR JUNCTION/WALPOLE | Community Water System | State Government |
| MA2270001 | MCI SHIRLEY | Community Water System | State Government |
| MA3051017 | DCR GREAT BROOK FARM STATE PARK | Transient Non-Community Water System | State Government |
| MA3295001 | TEWKSBURY HOSPITAL | Community Water System | State Government |
| MA4052022 | DCR MYLES STANDISH STATE FOREST | Transient Non-Community Water System | State Government |
| MA4102036 | DCR FREETOWN STATE FOREST | Transient Non-Community Water System | State Government |
| MA4334031 | DCR HORSENECK BEACH STATE RESERVATION | Transient Non-Community Water System | State Government |
| MA4334032 | DCR HORSENECK BEACH CAMPGROUND | Transient Non-Community Water System | State Government |

Exhibit I                                                                                                                                Page 1

| PWS ID | PWS Name | Type | Owner |
|---|---|---|---|
| MA4350001 | WRENTHAM DEVELOPMENTAL CENTER | Community Water System | State Government |
| MD0002772 | SPRINGFIELD STATE HOSPITAL | Community Water System | State Government |
| MD0002862 | SUPERINTENDANT OF CORRECTIONS | Community Water System | State Government |
| MD0190013 | EASTERN CORRECTIONAL INSTITUTE | Community Water System | State Government |
| MD1300004 | MSA-ORIOLE PARK/NORTH & SOUTH WAREHOUSES | Non-Transient Non-Community Water System | State Government |
| MD1300005 | MSA-M&T STADIUM | Non-Transient Non-Community Water System | State Government |
| ME0090342 | MOUNTAIN VIEW CORRECTIONAL FACILITY | Community Water System | State Government |
| MI0001510 | LAKELAND CORRECTIONAL FACILITY | Community Water System | State Government |
| MI0005989 | SECONDARY GOV'T COMPLEX | Community Water System | State Government |
| MO4061410 | BONNE TERRE PRISON | Community Water System | State Government |
| MO4069041 | FARMINGTON CORRECTIONAL CENTER | Community Water System | State Government |
| MP1008000 | DEPT OF PUBLIC WORKS | Community Water System | State Government |
| MP1009000 | DEPT OF PUBLIC WORKS | Community Water System | State Government |
| MS0110013 | ALCORN STATE UNIVERSITY | Community Water System | State Government |
| MS0250034 | UNIVERSITY OF MS MEDICAL CNTR | Non-Transient Non-Community Water System | State Government |
| MS0360015 | UNIVERSITY OF MISSISSIPPI | Community Water System | State Government |
| MS0530012 | MS STATE UNIVERSITY | Community Water System | State Government |
| MS0610032 | MS STATE HOSPITAL-WHITFIELD | Community Water System | State Government |
| MT0004204 | UNIVERSITY OF MONTANA | Non-Transient Non-Community Water System | State Government |
| MT0004790 | MONTANA STATE UNIVERSITY BOZEMAN | Non-Transient Non-Community Water System | State Government |
| NE3115505 | ASHLAND NATIONAL GUARD CAMP | Community Water System | State Government |
| NH0691010 | UNH/DURHAM WATER SYS | Community Water System | State Government |
| NH1034010 | HAMPSTEAD HOSPITAL | Non-Transient Non-Community Water System | State Government |
| NJ0339001 | NEW LISBON DEVELOPMENT CTR | Community Water System | State Government |
| NJ0436499 | NEW JERSEY MOTOR VEHICLE INSPECTION STAT | Non-Transient Non-Community Water System | State Government |
| NJ0609001 | NJ STATE PRISON BAYSIDE | Community Water System | State Government |
| NJ1008300 | DOVES RCH | Non-Transient Non-Community Water System | State Government |
| NJ1021435 | NEW JERSEY MOTOR VEHICLE COMMISSION | Non-Transient Non-Community Water System | State Government |
| NJ1025001 | EDNA MAHAN CORRECTIONAL | Community Water System | State Government |
| NJ1436365 | NJDOT @ ROXBURY CORP CENTER | Non-Transient Non-Community Water System | State Government |
| NM3590022 | OASIS STATE PARK | Transient Non-Community Water System | State Government |
| NV0005062 | SOUTHERN DESERT CORRECTIONAL CTR  NDOC | Community Water System | State Government |
| NY0017622 | STATE UNIVERSITY OF NEW YORK | Community Water System | State Government |
| NY0017628 | SUNY AT MORRISVILLE | Community Water System | State Government |
| NY0018369 | DELHI COLLEGE GOLF COURSE W.S. | Community Water System | State Government |
| NY0217051 | SUNY ALFRED | Community Water System | State Government |
| NY0220581 | ALFRED STATE COLLEGE | Community Water System | State Government |
| NY0420357 | RED HOUSE WATER SUPPLY - ASP | Non-Transient Non-Community Water System | State Government |
| NY0420358 | BARTON & WELLER TRAIL - ASP | Non-Transient Non-Community Water System | State Government |
| NY0904192 | CLINTON CORRECTIONAL FACILITY | Community Water System | State Government |
| NY0919482 | ALTONA CORRECTIONAL FACILITY | Community Water System | State Government |
| NY1303210 | HUDSON RIVER PSYCHIATRIC CTR | Community Water System | State Government |
| NY1312152 | TROOP K HEADQUARTERS | Non-Transient Non-Community Water System | State Government |
| NY1415379 | COLLINS/GOWANDA CORRECTIONAL FACILITIES | Community Water System | State Government |
| NY1911843 | NYS THRUWAY- NEW BALTIMORE SERVICE AREA | Non-Transient Non-Community Water System | State Government |
| NY2613319 | MORRISVILLE STATE COLLEGE | Community Water System | State Government |
| NY2908333 | JONES BEACH STATE PARK | Non-Transient Non-Community Water System | State Government |
| NY3530220 | FT. MONTGOMERY VISITORS CENTER | Transient Non-Community Water System | State Government |
| NY4317681 | BEAR MOUNTAIN WATER SUPPLY | Community Water System | State Government |
| NY4910589 | WILLARD DRUG TREATMENT CENTER | Community Water System | State Government |
| NY5117671 | ROBERT MOSES STATE PARK | Community Water System | State Government |
| NY5330074 | NYSDOT WEST OWEGO | Transient Non-Community Water System | State Government |
| NY5503015 | NYS OFFICE OF CHILDREN & FAMILY SERVICES | Community Water System | State Government |
| NY5704191 | GREAT MEADOW/WASHINGTON CORR. FACILITIES | Community Water System | State Government |
| NY5902878 | CAMP SMITH NYS | Non-Transient Non-Community Water System | State Government |
| OH6501712 | ODRC-PICKAWAY CORRECTION PWS | Community Water System | State Government |
| OH7101212 | CHILLICOTHE CORRECTIONAL INSTITUTION | Community Water System | State Government |
| OH8301012 | LEBANON CORRECTIONAL INSTITUTION | Community Water System | State Government |
| OK1020910 | OSU WATER PLANT | Community Water System | State Government |
| OK1021602 | OKLA ORDNANCE WORKS AUTHORITY | Community Water System | State Government |
| OK2001413 | OKLAHOMA UNIVERSITY | Community Water System | State Government |
| OK3001414 | OKLAHOMA UNIVERSITY | Community Water System | State Government |

Exhibit I

| PWS ID | PWS Name | Type | Owner |
|---|---|---|---|
| PA4140095 | PENN STATE UNIV. | Community Water System | State Government |
| PA4140098 | ROCKVIEW | Community Water System | State Government |
| PA7210046 | STATE CORRECTIONAL INST | Community Water System | State Government |
| RI1592012 | LADD CENTER WATER SYSTEM | Community Water System | State Government |
| RI1900003 | COVENTRY NATIONAL GUARD | Non-Transient Non-Community Water System | State Government |
| TX0010031 | TDCJ COFFIELD MICHAEL | Community Water System | State Government |
| TX0010044 | TDCJ BETO UNIT | Community Water System | State Government |
| TX0130002 | TDCJ CHASE FIELD | Community Water System | State Government |
| TX0200201 | TDCJ RAMSEY AREA | Community Water System | State Government |
| TX0210017 | TEXAS A&M UNIVERSITY MAIN CAMPUS | Community Water System | State Government |
| TX0790085 | TDCJ JESTER 1 UNIT | Community Water System | State Government |
| TX1050003 | TEXAS STATE UNIVERSITY - SAN MARCOS | Community Water System | State Government |
| TX1160008 | TEXAS A&M UNIVERSITY COMMERCE | Community Water System | State Government |
| TX2370002 | PRAIRIE VIEW A&M UNIVERSITY | Community Water System | State Government |
| VA1051070 | BREAKS INTERSTATE PARK | Non-Transient Non-Community Water System | State Government |
| VA1121835 | VPI & STATE UNIV-BLACKSBURG- | Community Water System | State Government |
| VA1169701 | NATURAL TUNNEL STATE PK-SYS 2 | Community Water System | State Government |
| VA3800810 | TIDEWATER COMMUNITY COLLEGE | Non-Transient Non-Community Water System | State Government |
| VA4075735 | JAMES RIVER CORRECTIONAL CTR | Community Water System | State Government |
| VA5009200 | LYNCHBURG TRAINING SCH & HOSP | Community Water System | State Government |
| WA5321900 | EASTERN WASHINGTON UNIVERSITY | Community Water System | State Government |
| WA5393200 | WASHINGTON STATE UNIVERSITY | Community Water System | State Government |
| WI1130235 | MENDOTA MENTAL HEALTH INST | Community Water System | State Government |
| WI1140142 | WAUPUN CORRECTIONAL INST | Community Water System | State Government |

Exhibit I

# **EXHIBIT J**

**EXHIBIT J:  EXCLUDED FEDERAL-OWNED PUBLIC WATER SYSTEMS**

| PWS ID | PWS Name | Type | Owner |
|---|---|---|---|
| AK2211423 | JBER-ELMENDORF | Community Water System | Federal Government |
| AK2370625 | EIELSON - AIR FORCE BASE | Community Water System | Federal Government |
| AK2372245 | EIELSON - BIRCH LAKE RECREATION AREA | Transient Non-Community Water System | Federal Government |
| AK2390594 | DENALI - MAIN / FRONT COUNTRY | Non-Transient Non-Community Water System | Federal Government |
| AL0000899 | US ARMY GARRISON-REDSTONE ARSENAL | Community Water System | Federal Government |
| AL0001421 | HOUSTON USFS REC AREA / FOX RUN | Transient Non-Community Water System | Federal Government |
| AL0001494 | ANNISTON ARMY DEPOT | Community Water System | Federal Government |
| AR0000690 | US AIR FORCE BASE LITTLE ROCK | Community Water System | Federal Government |
| AZ0402078 | US ARMY FORT HUACHUCA | Community Water System | Federal Government |
| AZ0403702 | GRAND CANYON NATIONAL PARK | Community Water System | Federal Government |
| AZ0403712 | GLEN CANYON NRA WAHWEAP | Community Water System | Federal Government |
| AZ0407305 | USAF LUKE AIR FORCE BASE | Community Water System | Federal Government |
| AZ0411303 | USSOCOM PARACHUTE TRAINING | Transient Non-Community Water System | Federal Government |
| AZ0413246 | USFS PNF AIRPORT FIRE CENTER | Transient Non-Community Water System | Federal Government |
| AZ0414082 | USMC YUMA MAIN SYSTEM | Community Water System | Federal Government |
| AZ0420549 | USAF DAVIS MONTHAN AFB | Community Water System | Federal Government |
| CA0900649 | SOUTH SHORE RECREATION AREA | Non-Transient Non-Community Water System | Federal Government |
| CA1510701 | EDWARDS AFB - MAIN BASE | Community Water System | Federal Government |
| CA1510703 | CHINA LAKE NAVAL AIR WEAPONS STATION | Community Water System | Federal Government |
| CA1610700 | LEMOORE NAVAL AIR STATION | Community Water System | Federal Government |
| CA1810700 | SIERRA ARMY DEPOT | Non-Transient Non-Community Water System | Federal Government |
| CA2110350 | NPS GGNRA | Community Water System | Federal Government |
| CA2710702 | FORT HUNTER LIGGETT | Community Water System | Federal Government |
| CA3610702 | USMC YERMO ANNEX | Non-Transient Non-Community Water System | Federal Government |
| CA3610703 | USMC - 29 PALMS | Community Water System | Federal Government |
| CA3610705 | US ARMY FORT IRWIN | Community Water System | Federal Government |
| CA3710700 | CAMP PENDLETON (NORTH) | Community Water System | Federal Government |
| CA3710701 | FACILITIES MAINTENANCE OFFICE | Community Water System | Federal Government |
| CA3710702 | CAMP PENDLETON (SOUTH) | Community Water System | Federal Government |
| CA3710706 | USN SERE CAMP WARNER SPRINGS | Transient Non-Community Water System | Federal Government |
| CA3710750 | NAS NORTH ISLAND & NAB CORONADO | Community Water System | Federal Government |
| CA4300997 | NASA AMES RESEARCH CENTER | Community Water System | Federal Government |
| CA5810700 | BEALE AIR FORCE BASE | Community Water System | Federal Government |
| CO0121845 | US AIR FORCE ACADEMY | Community Water System | Federal Government |
| CO0221445 | US DEPARTMENT OF THE ARMY FORT CARSON | Community Water System | Federal Government |
| DC0000003 | NAVAL STATION WASHINGTON - WNY | Community Water System | Federal Government |
| DC0000004 | JOINT BASE ANACOSTIA - BOLLING | Community Water System | Federal Government |
| FL1034107 | TYNDALL AIR FORCE BASE | Community Water System | Federal Government |
| FL1170548 | N.A.S. PENSACOLA | Community Water System | Federal Government |
| FL1170814 | NAS PENSACOLA / CORRY STATION | Community Water System | Federal Government |
| FL1460782 | HURLBURT FIELD WATER SYSTEM | Community Water System | Federal Government |
| FL1570708 | U.S. NAS WHITING FIELD | Community Water System | Federal Government |
| FL2161212 | N.A.S. JACKSONVILLE | Community Water System | Federal Government |
| FL3054024 | JOHN F KENNEDY SPACE CENTER (CONSEC) | Non-Transient Non-Community Water System | Federal Government |
| FL3054128 | PATRICK AIR FORCE BASE(CONSEC) | Community Water System | Federal Government |
| FL3054140 | CAPE CANAVERAL AFS (CONSEC) | Non-Transient Non-Community Water System | Federal Government |
| GA0390013 | USN-KINGS BAY SUBMARINE BASE | Community Water System | Federal Government |
| GA0510107 | USA-HUNTER ARMY AIRFIELD - MAIN | Community Water System | Federal Government |
| GA0950035 | USMC-LOGISTICS | Community Water System | Federal Government |
| GA1530042 | USAF-ROBINS AB MAIN | Community Water System | Federal Government |
| GA1790024 | USA-FORT STEWART MAIN | Community Water System | Federal Government |
| GA1850125 | USAF-MOODY AIR FORCE BASE-MAIN | Community Water System | Federal Government |
| GA2450028 | USA-FORT GORDON | Community Water System | Federal Government |
| GU0000009 | ANDERSEN AIR FORCE BASE WATER SYSTEM | Community Water System | Federal Government |
| GU0000010 | U.S. NAVY WATER SYSTEM | Community Water System | Federal Government |
| HI0000146 | HAWAII VOLCANOES NAT.PARK | Community Water System | Federal Government |
| HI0000337 | ALIAMANU | Community Water System | Federal Government |

| PWS ID | PWS Name | Type | Owner |
|--------|----------|------|-------|
| HI0000341 | FORT SHAFTER | Community Water System | Federal Government |
| HI0000345 | SCHOFIELD BARRACKS | Community Water System | Federal Government |
| HI0000346 | TRIPLER ARMY MEDICAL CNTR | Community Water System | Federal Government |
| HI0000350 | HICKAM | Community Water System | Federal Government |
| HI0000356 | MARINE CORPS BASE HAWAII | Community Water System | Federal Government |
| HI0000357 | NCTAMS EASTPAC | Community Water System | Federal Government |
| HI0000360 | JOINT BASE PEARL HARBOR-HICKAM | Community Water System | Federal Government |
| ID4200054 | MOUNTAIN HOME AIR FORCE BASE | Community Water System | Federal Government |
| IL0975227 | GREAT LAKES NAVAL TRAINING STATION | Community Water System | Federal Government |
| IL0975637 | US ARMY FT SHERIDAN | Community Water System | Federal Government |
| IL1615387 | ROCK ISLAND ARSENAL, US ARMY | Community Water System | Federal Government |
| IN5241015 | CAMP ATTERBURY | Community Water System | Federal Government |
| IN5251003 | NAVAL SUPPORT ACTIVITY, CRANE | Community Water System | Federal Government |
| KS2017323 | MCCONNELL AFB | Community Water System | Federal Government |
| KY0310940 | MAMMOTH CAVE/CENTRAL SYSTEM | Community Water System | Federal Government |
| KY0470624 | FT KNOX WATER DEPT | Community Water System | Federal Government |
| LA1015022 | BARKSDALE AFB WATER SYSTEM | Community Water System | Federal Government |
| MA3023002 | HANSCOM AFB | Community Water System | Federal Government |
| MA4086041 | CCNS DOANE ROCK PICNIC AREA | Transient Non-Community Water System | Federal Government |
| MA4096001 | OTIS AIR NATIONAL GUARD BASE | Community Water System | Federal Government |
| MA4318047 | CCNS MARCONI AREA | Non-Community Water System | Federal Government |
| MA4318088 | CCNS NAUSET LIGHT BEACH | Transient Non-Community Water System | Federal Government |
| MD0000024 | EDGEWOOD ARSENAL | Community Water System | Federal Government |
| MD0020042 | U.S. NAVAL ACADEMY | Community Water System | Federal Government |
| MD0080058 | NAVAL SUPPORT FACILITY, INDIAN HEAD | Community Water System | Federal Government |
| MD0100011 | FORT DETRICK | Community Water System | Federal Government |
| MD0120010 | A.P.G. - EDGEWOOD AREA | Community Water System | Federal Government |
| MD0180022 | PATUXENT NAVAL AIR STATION (NAVFAC-WASH) | Community Water System | Federal Government |
| MO1079501 | WHITEMAN AIR BASE | Community Water System | Federal Government |
| MS0230015 | STENNIS SPACE CENTER | Community Water System | Federal Government |
| MS0240049 | KEESLER AIR FORCE BASE | Community Water System | Federal Government |
| MS0240060 | NAVAL CONSTRUCTION BATTAL CTR | Community Water System | Federal Government |
| MS0440018 | COLUMBUS AIR FORCE BASE | Community Water System | Federal Government |
| MT0000515 | MALMSTROM AIR FORCE BASE | Community Water System | Federal Government |
| MT0004788 | MONTANA STATE UNIVERSITY BILLINGS | Non-Transient Non-Community Water System | Federal Government |
| NC0425035 | MARINE CORPS AIR STATION CHERRY POINT | Community Water System | Federal Government |
| NC0467040 | CAMP LEJEUNE | Community Water System | Federal Government |
| NC0467041 | USMC LEJEUNE--HADNOT POINT | Community Water System | Federal Government |
| NC0467042 | USMC LEJEUNE--NEW RIVER AIR ST | Community Water System | Federal Government |
| NC0467043 | USMC LEJEUNE--HOLCOMB BLVD | Community Water System | Federal Government |
| NC0496055 | SEYMOUR JOHNSON AFB | Community Water System | Federal Government |
| NE3105527 | OFFUTT AIR FORCE BASE | Community Water System | Federal Government |
| NE3105528 | CAPHART | Community Water System | Federal Government |
| NH0346030 | USFS WMNF ADMINISTRATIVE CMPLX | Non-Transient Non-Community Water System | Federal Government |
| NH0926010 | ANDROSCOGGIN RANGER STATION | Non-Transient Non-Community Water System | Federal Government |
| NH1646020 | USSF SPACE FORCE STN SAT TRKNG | Non-Transient Non-Community Water System | Federal Government |
| NJ0108352 | DOT FAA ATL BLD 33 & BLD 208 | Non-Transient Non-Community Water System | Federal Government |
| NJ0325001 | JBMDL-DIX MAIN SYSTEM | Community Water System | Federal Government |
| NJ0326006 | JBMDL - MCGUIRE AFB | Community Water System | Federal Government |
| NJ1511010 | JBMDL - LAKEHURST | Community Water System | Federal Government |
| NJ1511303 | LAKEHURST NAVAL AIR ENGINEERING STATION | Non-Transient Non-Community Water System | Federal Government |
| NM3562719 | HOLLOMAN AIR FORCE BASE | Community Water System | Federal Government |
| NM3567701 | KIRTLAND AIR FORCE BASE | Community Water System | Federal Government |
| NM3567905 | CANNON AIR FORCE BASE WATER SYSTEM | Community Water System | Federal Government |
| NM3568007 | WHITE SANDS MISSILE RANGE (MAIN POST)-FF | Community Water System | Federal Government |
| NV0001081 | CREECH AIR FORCE BASE | Non-Transient Non-Community Water System | Federal Government |
| NV0003028 | NELLIS AIR FORCE BASE | Community Water System | Federal Government |
| NY1319255 | CASTLE POINT MEDICAL CENTER | Community Water System | Federal Government |
| NY2212214 | FORT DRUM | Community Water System | Federal Government |
| NY2230111 | US COAST GUARD - WELLESLEY ISLAND | Non-Transient Non-Community Water System | Federal Government |
| NY5111891 | BROOKHAVEN NATIONAL LABS | Community Water System | Federal Government |

| PWS ID | PWS Name | Type | Owner |
|--------|----------|------|-------|
| NY7011882 | USCG SUPPORT CENTER | Community Water System | Federal Government |
| OK2005508 | TINKER AIR FORCE BASE | Community Water System | Federal Government |
| OK3003303 | ALTUS AFB | Community Water System | Federal Government |
| PA2450053 | TOBYHANNA ARMY DEPOT | Community Water System | Federal Government |
| PA5020955 | VA PITTSBURGH UD | Non-Transient Non-Community Water System | Federal Government |
| PA7210069 | NAVAL SUPPORT ACTIVITY 09M211 | Community Water System | Federal Government |
| PA7380444 | LEBANON VA MEDICAL CENTER | Non-Transient Non-Community Water System | Federal Government |
| PA7670151 | DEFENSE DISTRIBUTION EAST REG. | Community Water System | Federal Government |
| RI1000016 | NAVAL STATION, NEWPORT | Community Water System | Federal Government |
| SC0750039 | USMC HOUSING LAUREL BAY | Community Water System | Federal Government |
| SC4310501 | SHAW AFB (SC4310501) | Community Water System | Federal Government |
| SD4600623 | ELLSWORTH AIR FORCE BASE | Community Water System | Federal Government |
| SD4680004 | ELLSWORTH AFB | Community Water System | Federal Government |
| SD4680046 | NPS-MOUNT RUSHMORE NATIONAL MEMORIAL | Non-Transient Non-Community Water System | Federal Government |
| TN0000468 | NSA - MIDSOUTH | Community Water System | Federal Government |
| TN0000800 | DOE K-25 W.P., % A. TRIVETTE | Community Water System | Federal Government |
| TN0000820 | FORT CAMPBELL WATER SYSTEM | Community Water System | Federal Government |
| TN0001060 | OAK RIDGE NATIONAL LAB X-10 | Non-Transient Non-Community Water System | Federal Government |
| TN0004209 | WATTS BAR PROJECT,TVA | Non-Transient Non-Community Water System | Federal Government |
| TX1010250 | NASA JOHNSON SPACE CENTER | Non-Transient Non-Community Water System | Federal Government |
| TX1230092 | FEDERAL CORRECTIONAL COMPLEX-BEAUMONT | Community Water System | Federal Government |
| TX2200332 | NAVAL AIR STN JOINT RESERVE BASE | Community Water System | Federal Government |
| TX2210013 | DYESS AIR FORCE BASE | Community Water System | Federal Government |
| TX2260027 | GOODFELLOW AIR FORCE BASE | Community Water System | Federal Government |
| TX2330006 | LAUGHLIN AIR FORCE BASE | Community Water System | Federal Government |
| TX2430007 | SHEPPARD AIR FORCE BASE | Community Water System | Federal Government |
| UTAH18173 | VA MEDICAL CENTER SLC | Community Water System | Federal Government |
| UTAH27051 | ZION CANYON WATER SYSTEM | Community Water System | Federal Government |
| VA3710050 | NAVAL STATION NORFOLK | Community Water System | Federal Government |
| VA3740500 | NORFOLK NAVAL SHIPYARD | Community Water System | Federal Government |
| VA3740650 | NSA HAMPTON ROADS, PORTSMOUTH ANNEX | Community Water System | Federal Government |
| VA3810340 | LITTLE CREEK AMPHIBIOUS BASE - U.S. NAVY | Community Water System | Federal Government |
| VA3810430 | N A S OCEANA | Community Water System | Federal Government |
| VA6099340 | NAVAL SUPPORT FACILITY, DAHLGREN | Community Water System | Federal Government |
| VA6153060 | QUANTICO MCB-CAMP BARRETT | Community Water System | Federal Government |
| VA6153675 | QUANTICO MARINE BASE-MAINSIDE | Community Water System | Federal Government |
| WA5300100 | ENERGY DEPT OF/200W | Non-Transient Non-Community Water System | Federal Government |
| WA5302714 | NAVAL BASE KITSAP AT BANGOR | Community Water System | Federal Government |
| WA5303420 | NAVAL AIR STATION/WHIDBEY ISLAND | Community Water System | Federal Government |
| WA5303468 | NAVAL BASE KITSAP AT BREMERTON | Community Water System | Federal Government |
| WA5324350 | FAIRCHILD AIR FORCE BASE | Community Water System | Federal Government |
| WA5341866 | ENERGY DEPT OF/200E | Non-Transient Non-Community Water System | Federal Government |
| WA53NP580 | LONGMIRE | Non-Transient Non-Community Water System | Federal Government |
| WI6420302 | FORT MCCOY NORTH POST | Community Water System | Federal Government |
| WI7290120 | WI AIR NATIONAL GUARD VOLK FIELD | Community Water System | Federal Government |
| WV3300227 | VA MEDICAL CENTER | Community Water System | Federal Government |
| WV9917026 | FBI CENTER CLARKSBURG | Non-Transient Non-Community Water System | Federal Government |
| WY5680074 | YNP-CANYON VILLAGE | Non-Transient Non-Community Water System | Federal Government |
| WY5680085 | YNP-OLD FAITHFUL | Community Water System | Federal Government |
| WY5680095 | GTNP-COLTER BAY VILLAGE | Community Water System | Federal Government |
| WY5680122 | USAF  F.E. WARREN AFB | Community Water System | Federal Government |

# **EXHIBIT K**

## EXHIBIT K:  AUTHORIZATION LETTER

[Letterhead of Settlement Class Member]

[Date]

[Claims Administrator], as Claims Administrator
[Address]
[Address]

To the Claims Administrator:

Reference is made to Paragraph 11.6.2 of the Class Action Settlement Agreement, dated as of June 30, 2023, by and among (i) Class Representatives, individually and on behalf of the Settlement Class Members, by and through Class Counsel, and (ii) defendants The Chemours Company, The Chemours Company FC, LLC, DuPont de Nemours, Inc., Corteva, Inc., and E.I. DuPont de Nemours and Company n/k/a EIDP, Inc. (the "Agreement").  Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Agreement.

Attached are (i) a duly completed and executed Internal Revenue Service ("IRS") Form 1098-F (or other information return required pursuant to Treasury Regulations Section 1.6050X-1(a)(1)) of the undersigned with respect to each Settling Defendant (the "Forms 1098-F") and (ii) a duly completed written statement that satisfies the requirements of Treasury Regulations Section 1.6050X-1(c) of the undersigned with respect to each Settling Defendant (the "Written Statements").

You are hereby authorized and instructed to timely file with the IRS on behalf of the undersigned the Forms 1098-F and to timely provide to each Settling Defendant on behalf of the undersigned the Written Statement relating to such Settling Defendant.

The undersigned hereby certifies that the Forms 1098-F and the Written Statements have been prepared in compliance with the Agreement.

[SETTLEMENT CLASS MEMBER]

By: _____
Name:
Title:

# **<u>EXHIBIT L</u>**

## EXHIBIT L:  STIPULATION OF PARTIAL DISMISSAL

## [CAPTION OF MDL MEMBER CASE OR OTHER LITIGATION]

## STIPULATION OF DISMISSAL OF RELEASED CLAIMS WITH PREJUDICE PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 41(a)(1)(A)(ii)[1]

Pursuant to Rule 41(a)(1)(A)(ii) of the Federal Rules of Civil Procedure, Plaintiff in the above-captioned action and Defendants The Chemours Company, The Chemours Company FC, LLC, DuPont de Nemours, Inc., Corteva, Inc., and E.I. DuPont de Nemours and Company n/k/a EIDP, Inc. (collectively, the "DuPont Defendants") hereby stipulate and agree to a dismissal with prejudice of Plaintiff's claims against the DuPont Defendants that are "Released Claims" as defined in the Class Action Settlement Agreement between Class Representatives and the DuPont Defendants dated June 30, 2023, filed in *In re Aqueous Film-Forming Foams Products Liability Litigation*, MDL No. 2:18-mn-2873 (D.S.C) (the "Agreement").

The parties further stipulate and agree that any claims asserted by Plaintiff against the DuPont Defendants that are preserved under § 12.1.2(a) or 12.1.3(y) of the Agreement are not dismissed.  The DuPont Defendants shall retain all defenses with respect to any such claim, including the right to argue that the claim is not preserved and is released.  Plaintiff reserves its rights against all other Defendants in the above-captioned action.

---

[1] This stipulation shall be conformed to reference and comply with applicable rules in any Litigation pending in state court.

Exhibit L                                                                                              Page 1

Dated:

Respectfully submitted,

/s/ _____                    /s/ _____

[Plaintiff Counsel Signature Block]            [DuPont Counsel Signature Block]

*Counsel for Plaintiff*                        *Counsel for Defendants The Chemours Company, The Chemours Company FC, LLC, DuPont de Nemours, Inc., Corteva, Inc., and E.I. DuPont de Nemours and Company n/k/a EIDP, Inc.*

Exhibit L                                                                        Page 2

<u>**ANNEX**</u>

<u>**Separate Letter Agreement to be Filed Under Seal**</u>

Confidential Document Contemporaneously Submitted to the Court for In Camera Review in Compliance with CMO No. 17