**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| IN RE AQUEOUS FILM-FORMING FOAMS PRODUCTS LIABILITY LITIGATION | MDL No. 2:18-mn-2873-RMG<br><br>**This Document Relates to:**<br><br>*Town of East Hampton v. 3M Co.*<br>*Case No. 19-01639*<br><br>*Town of Harrietstown v. 3M Co.*<br>*Case No. 21-cv-00862 (RMG)*<br><br>*Town of Islip, New York v. 3M Co. et al.,*<br>*Case No. 21-01915 (RMG)* |

**AFFIRMATION IN SUPPORT OF THE OBJECTION OF THE TOWN OF EAST HAMPTON, TOWN OF ISLIP AND TOWN OF HARRIETSTOWN TO THE MOTION FOR PRELIMINARY APPROVAL OF THE 3M SETTLEMENT**

Nicholas C. Rigano, Esq., an attorney duly admitted to practice law in the State of New York, the Second Circuit Court of Appeals, the Eastern District of New York, and the Southern District of New York, hereby affirms under penalty of perjury as follows:

1. I am a Partner with the firm Rigano LLC, attorneys for Plaintiffs Town of East Hampton, Town of Islip, and Town of Harrietstown (collectively, the "Towns"). I am fully familiar with the facts and circumstances set forth herein and know them to be true, except for those stated to be based on information and belief, and as to those matters, I believe them to be true. This objection is submitted in opposition to Plaintiffs' request for preliminary approval of the proposed class action settlement (the "3M Settlement") between a putative class of public water systems and 3M Co. ("3M") (Doc. No. 3370) for the reasons set forth below.

1

**PRELIMINARY STATEMENT**

2. The proposed 3M Settlement class is comprised of public water systems that have or will incur costs to remediate PFAS. The proposed class, though, excludes Towns and those similarly situated that seek cost recovery for expenses to remediate PFAS contaminated superfund sites from AFFF.

3. This disparate treatment is unwarranted because there is no material difference among these categories of cases. In both, PFAS is contained in environmental media requiring plaintiffs to test and remediate to standards at the direction of government regulators.

4. The disparate treatment is also prejudicial as it permits water systems access to over $10 billion of 3M's limited assets to the exclusion of superfund plaintiffs. As discussed during the July 14, 2023 status conference, 3M's solvency is in question because 3M does not have enough assets to remediate the world. This is illustrated by the less than $4 billion in cash it has on hand.

5. While thousands of cases remain in this MDL, the vast majority of them are personal injury cases, which are not similar to remediation cases (whether water provider or superfund) because personal injury plaintiffs must prove that exposure caused their latent disease, a difficult burden. Further, personal injury is the subject of the next bellwether trials while superfund cases are not on the bellwether horizon. In other words, if superfund cases are not included in the instant proposed settlement, they will remain in this MDL for years.

6. Towns respectfully request that the Court direct the parties to correct this wrong. Preliminary approval of the 3M Settlement should be denied without prejudice until the parties expand the class definition to include both water provider and superfund remediation plaintiffs, which will resolve a larger portion of this MDL than is currently contemplated.

**BACKGROUND**

I. **3M Contaminated the World**

    7. Throughout this case, Plaintiffs have cited the following disturbing evidence:

- "3M was aware that PFOS, a unique compound made almost exclusively by 3M . . . was found in the blood of the general population." *See* Doc No. 2063, p. 6 (Pl. Government Contractor Brief).

- "3M is the likely source of PFOS in global environmental media." *See id.*, p. 6, n. 17 (citing Butenhoff Dep. Tr. Vol II, Ex. 7, at 542:6-17).

- "In 1998, 3M informed the EPA that PFOS, its proprietary chemical, had been found widespread in the environment and human blood." *See* Doc No. 2963, p. 9 (Pl. Motion in Limine Br.); *see also* Doc No. 2601, p. 15-16 (the Court's Order and Opinion on Defendant's Motion for Summary Judgment regarding Government Contractor Defense).

- 3M was the primary manufacturer of PFOA for decades. *See* Pl. Motion, Doc No. 3370, p. 5.

    8. In the Court's opinion denying Defendants' motion for summary judgment on the government contractor defense (Doc No. 2601), the Court found:

- 3M's Manager of Corporate Toxicology, Dr. John Butenhoff, concluded PFOS to be "insidiously toxic" and an internal 3M document found "PFOS 'water soluble', 'resistant to microbial degradation,' 'highly mobile' in soil and 'waterways [were an] environmental sink for the product.'" *See id.* at 17, 19.

- "'Plaintiffs note that 'PFOA and PFOS have been found in virtually every corner of the earth, in nearly every living thing: from house dust, to human blood, to wildlife everywhere, including in fish and animals as far away as the Arctic circle.'" *Id.* at 20, n.14.

### II.     3M's Anticipated Remediation Liabilities Are Enormous

9.     EPA has recently issued proposed drinking water standards for PFOA and PFOS of 4 ppt each.[1] Those standards may double-down as groundwater cleanup standards.[2]

10.     Plaintiffs state that the proposed settlement class comprises over 12,000 public water systems.[3] Similarly, a recent study published by the American Chemical Society on October 12, 2022 reveals that there are presumed to be over 57,000 sites with PFAS contamination in the United States alone.[4] In many instances, the owners of those sites, like Towns, may have strict liability to remediate such contamination regardless of fault, particularly when EPA soon designates PFOA and PFOS as CERCLA hazardous substances.[5]

11.     The United States Chamber of Commerce estimates that "[p]rivate sector cleanup costs at Superfund sites alone resulting from the proposed hazardous substance designation of PFOA and PFOS are estimated to cost between $700 million and $800 million in annualized costs ($11.1 billion and $22 billion present value costs)."[6] This cost estimate excludes: (i) remediation of airports, landfills and other properties by municipalities, such as Towns, and (ii) remediation

---

[1]     *See* US EPA, Proposed PFAS National Primary Drinking Water Regulation, available at https://www.epa.gov/sdwa/and-polyfluoroalkyl-substances-pfas (last accessed July 17, 2023).

[2]     *See, e.g.*, 6 N.Y.C.R.R. 702.3(a).

[3]     *See* Pl. Motion, Doc No. 3370, p. 20.

[4]     Salvatore, *et al.*, *Presumptive Contamination: A New Approach to PFAS Contamination Based on Likely Sources*, Environ. Sci. Technol. Lett. 2022, 9, 11, 983-990 (2022), available at https://pubs.acs.org/doi/10.1021/acs.estlett.2c00502 (last accessed July 17, 2023)

[5]     *See* 42 U.S.C. 9607(a); US EPA, Proposed Designation of Perfluorooctanoic Acid (PFOA) and Perfluorooctanesulfonic Acid (PFOS) as CERCLA Hazardous Substances, available at https://www.epa.gov/superfund/proposed-designation-perfluorooctanoic-acid-pfoa-and-perfluorooctanesulfonic-acid-pfos (last accessed July 17, 2023).

[6]     *See* United States Chamber of Commerce, PFOS and PFOA Private Cleanup Costs at Non-Federal Superfund Sites, Jun. 8, 2022, available at https://www.uschamber.com/environment/pfos-and-pfoa-private-cleanup-costs-at-non-federal-superfund-sites (last accessed July 17, 2023).

outside the United States, meaning this figure will likely be billions more.[7] Due to the events that have unfolded in this MDL, 3M has no apparent defense to contribution claims for these damages.

### III.     3M Has Insufficient Liquidity and May Be Insolvent

12.     In its 2022 10-K, 3M reported only $3.655 billion of cash on hand, a decline of approximately $1 billion from 2021. This suggests a lack of liquidity to satisfy the claims of excluded plaintiffs, including the Towns.[8]

13.     Further, 3M is a publicly traded company with a market cap of $56.44 billion. Its market cap has been in consistent decline since early 2018, dropping by approximately 50% during that period. The following is a screenshot from Google accessed on July 17, 2023 showing 3M's market cap decline:[9]

---

[7]     See id.

[8]     See 3M Co. Form 10-K dated February 9, 2023, available at https://d1io3yog0oux5.cloudfront.net/_72aef66556c78b4df67dd1e64ddfe0a6/3m/db/3235/30170/annual_report/3M+2022+Annual+Report_Updated.pdf, p. 50 (last accessed July 17, 2023).

[9]     Available at https://www.google.com/search?q=3m+stock+googler&rlz=1C1VDKB_enUS1028US1028&oq=3m+stock+googler&aqs=chrome..69i57j0i22i30l2j0i15i22i30l2j0i390i650l4.2989j1j4&sourceid=chrome&ie=UTF-8 (last accessed July 17, 2023)



14.     In addition to its remediation liabilities, 3M is the subject of a putative nationwide class action, styled *Hardwick v. 3M Co.,* Case No. 2:18-cv-1185-EASEPD, where the plaintiff seeks a nationwide medical monitoring program for virtually all individuals residing in the United States. The class has been certified for Ohio residents pending appeal and the court intends to schedule hearings to consider additional certification of classes for other jurisdictions.[10] 3M is also subject to potentially billions of dollars in liability in connection with the ongoing MDL styled, *3M Combat Arms Earplug Products Liability Litigation*, MDL No. 2885 (N.D. Fl.).

---

[10]     *See Hardwick v. 3M Co.*, 589 F. Supp. 3d 832 (S.D. Ohio 2022).

15.   3M's possible insolvency was referenced in an exchange between the Court and Plaintiff Co-Lead Counsel during the July 14, 2023 status conference:[11]

> **Mr. Summy**: . . . it is a lot of money that 3M and Dupont, when you start adding it together, are paying. And there's only so much money we can get from them. And that's just the reality.
>
> **The Court**: . . . [t]he scope of this problem . . . may be bigger than, when you get to the final analysis that the private industry that may be responsible for this, it just doesn't have the capacity to remediate this completely.
>
> **Mr. Summy**: You're exactly right Your Honor . . . [t]his problem is bigger than the defendants. It just is . . .
>
> . . .
>
> **Mr. Summy**: . . . if there are too many that opt out –
>
> **The Court**: The whole thing collapses.
>
> **Mr. Summy**: – this settlement won't go through. And at some point we could be looking at bankruptcy court in that situation. And it's just the reality of the situation. Look, these were discussions we had frankly with 3M in these settlement meetings . . . We hired specialized bankruptcy counsel to help us because it's a risk. And we have to be careful. And we fought very hard for adequate bankruptcy protections in the agreement in the event that that occurs. But it is certainly out there and it's something we all have to be aware of. And my own personal feeling is that, you know, if the settlement collapses, that's where we may all be headed if they've got to litigate all these cases individually.
>
> **The Court**: . . . 3M is addressing a large amount of its net worth [by] paying these claims.
>
> **Mr. Summy**: Your Honor you are exactly right . . . 3M has a market cap of $53 billion . . . When you take 12.5 billion here for the water providers, they're still facing -- there were claims that were carved out of the release here, they could be facing those claims. They're still facing the personal injury. They'll still facing the public and private property damages. They're still facing the attorney generals.

---

[11]   July 14, 2023 Hearing Tr., pp. 13, 14, 25-29.

7

> **The Court**: All which we're working on.
>
> **Mr. Summy**: All which is in this court. We're working on it. But these are additional liabilities that they also have to deal with. And at the same time –
>
> **The Court**: They've got a case in Florida.
>
> **Mr. Summy**: They've got a case in Florida on the earplug litigation which they're trying to deal with. So we all here have to be realistic about what this company can do and they can only do so much.
>
> **The Court**: And, you know, let me say, I've watched cases that end up in bankruptcy. It isn't pretty, isn't pretty for anybody. It's terrible for the company and it's terrible for the plaintiffs.
>
> **Mr. Summy**: It's terrible. It is incredibly frustrating. And I mean, if you -- if you think this settlement's bad, I mean, I'm just telling you, bankruptcy court would not be a good option for these water districts. It would be terrible.
>
> **The Court**: And I take it that that was always a restraint on y'all in terms of what you were demanding because you realized at some point 3M is left with no option.
>
> **Mr. Summy**: That is correct . . .

16.     In other words, a driving motivation for the instant settlement was 3M's plausible insolvency and potential chapter 11 bankruptcy filing. While the proposed settlement may be beneficial to public water systems included in the class, other remedial plaintiffs, such as the Towns, would be left in the dust if the settlement is approved.

## IV.     The Towns' Airport Superfund Cases

17.     Each of the Towns are municipalities located in New York that own and/or operate airports in their respective jurisdictions. The airports at issue are the East Hampton Airport, the Adirondack Regional Airport and MacArthur Airport (collectively, the "Airports"). Each of the Airports have been designated as superfund sites by the New York State Department of

Environmental Conservation ("NYSDEC") solely due to PFOA/S detected in soil and groundwater from AFFF. As a result, each of the Towns are forced to spend millions of dollars investigating and remediating thousands of acres of soil and groundwater at and emanating from the Airports, as well as impacted private drinking water wells downgradient therefrom. Towns are facing a monumental task as they have detected up to 22,600 ppt of PFOS and 1,320 ppt of PFOA in groundwater and are faced with remediating to the New York State groundwater criteria of 2.7 ppt and 6.7 ppt, respectively.[12]

18.     Like water systems, the Towns are forced to remediate to government standards under the direction of government regulators. And like water providers, Towns filed complaints asserting tort-based causes of action against the cast of defendants in this MDL, including 3M, for, *inter alia*, cost recovery resulting from defendants' AFFF products. From the outset of this MDL, the Court has prudently directed the parties to commence the bellwether process with remediation cases first, relying on the wisdom that if those plaintiffs cannot prove their case, no one can. That is because unlike damages for personal injury, cost recovery for remediation does not require proof that exposure causes latent disease. Towns cases fall into the remediation bucket.

19.     Within the City of Stuart case, all material global issues associated with Towns' remediation cases and other superfund cases have been adjudicated. Those issues include: (i) the constituents in AFFF, (ii) impacts of AFFF to environmental media, (iii) the characteristics of PFOA/S, (iii) defendant production of PFOA/S and AFFF, (iv) fate and transport of PFOA/S, (v) alternative sources of PFOA/S in the environment, etc.

---

[12]     *See* NYSDEC Final Ambient Water Quality Guidance Values for PFOA, PFOS, and 1,4-dioxane, available at
https://www.dec.ny.gov/press/127293.html#:~:text=In%202020%2C%20New%20York%20State,for%201%2C4%2DDioxane (last accessed July 17, 2023).

20. Defendants have enjoyed a case-specific stay of Towns' litigations for years without having any apparent meritorious defense to the claims. If the proposed 3M Settlement is approved in its current form, the Towns and others similarly situated will be unfairly prejudiced.

## ARGUMENT

21. As Plaintiffs note, preliminary approval is warranted if the Court will likely: (i) approve the proposed 3M Settlement as being fair, reasonable, and adequate under Rule 23(e)(2), and (ii) certify the class.[13] The goal in determining class certification is to "best serve the ends of justice for the affected parties and . . . promote judicial efficiency."[14] The court has wide discretion in deciding whether to certify a proposed class.[15] Indeed, this Court exercised that discretion by requiring the narrowing of the initially proposed release contemplated in the settlement of the action styled *Campbell v. Tyco Fire Products LP, et al.,* Case No 19-00422.[16]

22. Despite the substantial similarity between Towns' cases and water provider cases, Towns have been excluded from the proposed 3M Settlement. Towns are prejudiced.

23. Approval would permit over $10 billion dollars to be stripped from 3M's ability to pay Towns' damages (which exceed $100 million) and damages of other similarly situated plaintiffs. That money should be equitably distributed to *all* similarly situated remedial plaintiffs. No one can guarantee that 3M will have available funds to pay superfund plaintiffs if water systems are permitted to raid 3M's assets as currently proposed.

---

[13] *See* Federal Rule 23(e)(1).

[14] *In re A.H Robins Co., Inc.*, 880 F.2d 709, 740 (4th. Cir 1989).

[15] *See Ward v. Dixie Nat. Life Ins. Co.*, 595 F.3d 164, 179 (4th Cir. 2010).

[16] *See* Doc. No. 1814.

24. It has been represented to this Court that the proposed 3M Settlement is equitable.[17] But having a potentially insolvent defendant remit billions of dollars to certain plaintiffs seeking remedial cost recovery while excluding others that seek the same is anything but. Towns have been involved in this MDL for years and have severe detections of PFOS and PFOA requiring remediation of nearly 10,000 times regulatory criteria. There is no reason why superfund plaintiffs like the Towns should be forced to pay millions of dollars remediating PFAS at the direction of regulators while the assets of their primary named defendants are stripped for the benefit of similarly situated plaintiffs.

25. While thousands of cases remain in this MDL, the vast majority of them are personal injury cases. Unlike Towns' remediation cases, these cases are not similarly situated to water provider cases due to the personal injury causation burden. Further, personal injury bellwethers are on deck, while superfund cases have no schedule to proceed.[18] Absent being included in this settlement, Towns' cases and other superfund remediation cases will not be adjudicated for years with the very real prospect that 3M's and other defendants' assets will be dissipated.

26. Accordingly, the Court should deny preliminary approval of the proposed 3M Settlement without prejudice to require the expansion of the class definition to include superfund remediation plaintiffs (like Towns). Indeed, the Manual for Complex Litigation requires lead MDL attorneys to "act fairly, efficiently, and economically in the interests of all parties and parties' counsel."[19]

---

[17] *See* July 14, 2023 Hearing Tr., p. 11.

[18] *See id.*, pp. 47-49.

[19] David F. Herr, *Manual for Complex Litigation* (2018) at § 10.22.

**WHEREFORE,** the Towns respectfully request that the motion for preliminary approval of the 3M Settlement be denied without prejudice and for such other, further, and different relief as is deemed just and proper.

Dated: Melville, New York
July 17, 2023

                                                  **RIGANO LLC**
*Attorneys for Plaintiffs Town of East Hampton,*
*Town of Harrietstown and Town of Islip*

By:    */s/ Nicholas C. Rigano*
          Nicholas C. Rigano, Esq.
          Rigano LLC
          538 Broad Hollow Road, Suite 301
          Melville, New York 11747
          (631) 756-5900
          nrigano@riganollc.com

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was electronically filed with this Court's CM/ECF on this 17th day of July 2023 and was therefore served electronically upon counsel of record.

/s/ Nicholas C. Rigano
Nicholas C. Rigano, Esq.
Rigano LLC
538 Broad Hollow Road, Suite 301
Melville, New York 11747
(631) 756-5900
nrigano@riganollc.com