# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| IN RE AQUEOUS FILM-FORMING FOAMS PRODUCTS LIABILITY LITIGATION | ) Master Docket No.<br>) 2:18-mn-2873-RMG<br>)<br>) |
| CITY OF CAMDEN et al.,<br><br>        *Plaintiffs*,<br><br>    v.<br><br>3M COMPANY,<br><br>        *Defendant*. | ) Civil Action No.:<br>) 2:23-cv-03147-RMG<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**PLAINTIFFS' RESPONSE TO OBJECTION OF THE TOWN OF EAST HAMPTON, TOWN OF ISLIP AND TOWN OF HARRIETSTOWN TO THE MOTION FOR PRELIMINARY APPROVAL OF THE 3M SETTLEMENT**

**TABLE OF CONTENTS**

| | | | |
|---|---|---|---|
| I. | INTRODUCTION | | 1 |
| II. | RELEVANT FACTS | | 2 |
| | A. | The Settlement Class | 2 |
| | B. | Releasing Parties | 4 |
| III. | ARGUMENT | | 5 |
| | A. | The Town Objectors do not have standing to object to the Settlement because they are not Class Members. | 5 |
| | B. | The Town Objectors will not suffer plain legal prejudice from the Settlement because their legal rights are not impaired. | 5 |
| IV. | CONCLUSION | | 9 |

## I. INTRODUCTION

Fed. R. Civ. P. 23(e)(5) limits standing to object to class action settlements to class members. The Fourth Circuit has consistently enforced this limitation, recognizing "the unassailable premise that settlements are to be encouraged" which would be frustrated if non-class members were permitted "to inject their concerns via objection at the settlement stage…." *Gould v. Alleco, Inc.,* 883 F.2d 281, 284 (4th Cir. 1989). Here, the Town of East Hampton, Town of Islip, and Town of Harrietstown (collectively, the "Town Objectors") admit that they are not Settlement Class Members[1] under the Settlement Agreement Between Public Water Systems and 3M Company ("Settlement Agreement" or "S.A.").[2] Accordingly, their Objection should be overruled for lack of standing.

The Town Objectors lack standing because the Settlement Agreement neither releases the Town Objectors' claims nor precludes them from prosecuting their claims. Thus, the Town Objectors cannot demonstrate any plain legal prejudice which would support an exception to this rule. Rather, the fundamental premise of the Town Objectors' position is that they seek a schedule for the prosecution of their cases. At various points in the course of this litigation, the Plaintiff's Executive Committee ("PEC") has sought to advance other categories of cases with the Defense Coordinating Committee ("DCC").[3] The proposal and entry of additional Case

---

[1] All capitalized terms herein have the same meaning as provided for in the Settlement Agreement. Ex. 2 to Mot. for Settlement, Jul. 3, 2023, ECF No. 3370-3 ("S.A.").

[2] Affirmation In Support Of The Objection Of The Town Of East Hampton, Town Of Islip And Town Of Harrietstown To The Motion For Preliminary Approval Of The 3M Settlement ("Obj."), at ¶ 2, Jul. 17, 2023, ECF No. 3415.

[3] *See, e.g.,* Oct. 2, 2020 Joint Status Rep. at 21, attached as Ex. 1 (discussing early negotiations between the parties on "future bellwether waves" for "non-water provider cases" and noting the PEC's position was that "the most prudent and efficient cases to be selected might be various types of class action cases, state/sovereign cases, [and] larger scale property damage cases"); Mar. 18, 2022 Joint Status Rep. at 41, attached as Ex. 2 (acknowledging that "the PEC proposed to the DCC a bellwether process for future categories of cases, including personal injury cases,

1

Management Orders is irrelevant, however, to preliminary approval of the Class Settlement Agreement. Therefore, even if considered, the Objection should be overruled.

## II. RELEVANT FACTS

On July 3, 2023, Plaintiffs[4] filed a Motion for Preliminary Approval of a Class Action Settlement Agreement with 3M Company ("3M" or "Defendant"). ECF No. 3370. The Settlement is intended to provide the Settlement Class with compensation for 3M's contribution to the largest drinking water contamination threat in history involving chemicals known as per- and polyfluoroalkyl substances ("PFAS").

### A. The Settlement Class

The proposed Settlement Class includes:

> Every Active Public Water System in the United States of America that—
>
> (a)  has one or more Impacted Water Sources as of the Settlement Date; or
>
> (b)  does not have one or more Impacted Water Sources as of the Settlement Date, and
>
>     (i) is required to test for certain PFAS under UCMR-5, or
>
>     (ii) serves more than 3,300 people, according to SDWIS.

S.A. at 5.1. In defining the Settlement Class, the parties adopted definitions consistent

---

class actions, state/sovereign cases, and property damage cases"); Ltr. from Pl.'s Exec. Comm., at 2, Aug. 15, 2022. ECF No. 2534 (summarizing negotiations between the PEC and DCC on future bellwether tracks and explaining that "the PEC proposed a bellwether procedure that would include all categories of non-water provider cases, i.e., personal injury, property damage, medical monitoring, and the state/sovereign cases," which "[t]he DCC flatly rejected").

[4] Plaintiffs include City of Camden, City of Brockton, City of Sioux Falls, California Water Service Company, City of Del Ray Beach, Coraopolis Water & Sewer Authority, Township of Verona, Dutchess County Water & Wastewater Authority and Dalton Farms Water System, City of South Shore, City of Freeport, Martinsburg Municipal Authority, Seaman Cottages, Village of Bridgeport, City of Benwood, Niagara County, City of Pineville, and City of Iuka.

with the Safe Drinking Water Act ("SDWA"), an act that was established by the EPA to provide Drinking Water standards for certain contaminants, which, as of today, include PFAS. As defined in the Settlement Agreement, a "Public Water System" is "a system for the provision of water to the public for human consumption through pipes or other constructed conveyances, if such system has at least fifteen (15) service connections or regularly serves at least twenty-five (25) individuals daily at least sixty (60) days out of the year[.]" S.A. at § 2.54. A Public Water System "includes (i) any collection, treatment, storage, and distribution facilities under control of the operator of such system and used primarily in connection with such system, and (ii) any collection or pretreatment storage facilities not under such control which are used primarily in connection with such system." *Id.* In addition, "Water Source" is defined as "a groundwater well, a surface-water intake, or any other intake point from which a Public Water System draws or collects water for distribution as Drinking Water." *Id.* at § 2.80.[5]

By their own admission, the Town Objectors are "municipalities located in New York that own and/or operate airports," which "have been designated as superfund sites" by the state "solely due to PFOA/S detected in soil and groundwater from AFFF." Obj. at ¶ 17. The Town Objectors are not Public Water Systems and are therefore not members of the Settlement Class. Obj. at ¶ 2.

---

[5] Excluded from the definition of the proposed Settlement Class are: (a) a handful of Public Water Systems that are associated with a specific PFAS-manufacturing facility owned by 3M; (b) any Public Water System that is owned by any state government and cannot sue or be sued in its own name; (c) any Public Water System that is owned by the federal government and cannot sue or be sued in its own name; (d) any Public Water System that has previously settled its PFAS-related Claims against 3M; and (e) any privately-owned well that provides water only to its owner's (or its owner's tenant's) individual household and any other system for the provision of water for human consumption that is not a Public Water System.  S.A. at 5.1.

3

### B. Releasing Parties

Only Releasing Parties release Released Claims under the Settlement Agreement, S.A. at § 11.1.1, where the term "Releasing Parties" is defined as:

> Class Representatives, Class Members, and their respective past, present, or future administrators, affiliated business entities, affiliates, agencies, agents, assigns, attorneys, boards, commissions, counsel, departments, directors, districts, divisions, employees, entities, executors, heirs, institutions, instrumentalities, insurers, managers, members, officers (elected or appointed), owners, parents, partners, predecessors, principals, servants, shareholders, subdivisions, subrogees, subsidiaries, successors, trustees, water-system operators, any other representatives, individually or in their corporate or personal capacity, anyone acting on behalf of or in concert with a Class Member or its Public Water System (excluding states) to prevent PFAS from entering a Class Member's Public Water System or to seek recovery for alleged harm to the Class Member's Public Water System (including recovery of any funds that have already been expended to remove PFAS from the Class Member's Public Water System, one of which shall implicate the rights of any state or the federal government), and any Person or entity within their power to release.

S.A. § 2.60. The Town Objectors are not Releasing Parties.

Even for participating Class Members, Released Claims does not include, *inter alia,* remediation, testing, monitoring, or treatment of real property unrelated to a "Class Member's Public Water System (*such as an airport* or fire training facility)" to remove or remediate PFAS. S.A. at § 11.1.2 (emphasis added). The Town Objectors have pending cases in this MDL "asserting tort-based causes of action against the cast of defendants in this MDL, including 3M, for, *inter alia*, cost recovery resulting from defendants' AFFF products" for real property unrelated to a Public Water System. Obj. at ¶ 18. These are precisely the types of claims that are excluded from the Settlement. Thus, the definition of Released Claims does not impinge on the rights of the Town Objectors to continue to pursue their claims.

4

## III.  ARGUMENT

### A. The Town Objectors do not have standing to object to the Settlement because they are not Class Members.

Because the Town Objectors are not members of the Settlement Class, they lack standing to object to a settlement that will not affect them. *See* Fed. R. Civ. P 23(e)(5) (stating "[a]ny class member may object to the [settlement] proposal . . . ."). "Under Rule 23(e), only class members have standing to object to a proposed settlement." *In re: Mi Windows & Doors Inc. Prod. Liab. Litig.*, No. 2:12-MN-00001-DCN, 2015 U.S. Dist. LEXIS 184471, 2015 WL 12850547, at *10 (D.S.C. July 22, 2015), *aff'd*, 860 F.3d 218 (4th Cir. 2017). *See also Gould v. Alleco, Inc.,* 883 F.2d 281, 284 (4th Cir. 1989) ("Rule 23(e) clearly contemplates allowing only class members to object to settlement proposals."). "Cases involving non-class members' attempts to intervene and/or object to settlements are few, and the courts usually reject the outsiders' attempts to enter the litigation during the settlement phase." *Gould*, 883 F.2d at 285 (citing *Kusner v. First Penn Corp.*, 74 F.R.D. 606 (E.D. Pa. 1977); *Jones v. Amalgamated Warbasse Houses, Inc.*, 97 F.R.D. 355, 360 (E.D.N.Y. 1982); *Quad/Graphics, Inc. v. Fass*, 724 F.2d 1230 (7th Cir. 1983)).

As discussed *supra,* the Town Objectors are neither Settlement Class Members nor Releasing Parties, and their claims are not subject to release under the Settlement. S.A. at §§ 2.60, 11.1.1, 11.1.2. Thus, because Federal Rule of Civil Procedure 23(e)(5) only permits a class member to object to a proposed class settlement, the Town Objectors do not have standing to lodge the present objection.

### B. The Town Objectors will not suffer plain legal prejudice from the Settlement because their legal rights are not impaired.

"A 'settlement which does not prevent the later assertion of a non-settling party's claims, although it may force a second lawsuit against the dismissed parties, does not cause plain legal prejudice to the non-settling party.'" *Galloway v. Williams*, 2020 U.S. Dist. LEXIS 141856, *18-

5

19 (E.D. Va. 2020) (quoting *Agretti v. ANR Freight Sys., Inc*., 982 F.2d 242, 247 (7th Cir. 1992)).  As the Seventh Circuit has explained:

> Plain legal prejudice [sufficient to confer standing upon a non-settling litigant in a class action] has been found to include any interference with a party's contract rights or a party's ability to seek contribution or indemnification. A party also suffers plain legal prejudice if the settlement strips the party of a legal claim or cause of action, such as a cross-claim or the right to present relevant evidence at trial.

*Agretti*, 982 F.2d at 247. *See also Ball v. Dewine*, No. 20-3927, 2021 U.S. App. LEXIS 19556, *9-10 (6th Cir. June 30, 2021) (quoting and adopting Seventh Circuit's definition of plain legal prejudice). *Cf. Titlemax of S.C. v. Crowley,* 2021 U.S. Dist. LEXIS 244235, *2 (D.S.C. Nov. 30, 2021) (noting that "plain legal prejudice" requires "harm other than the mere prospect of a second lawsuit.").

Further, where the "Settlement Agreement does not strip [the objector] of its legal claims or causes of action and does not interfere with [the objector's] contract rights or ability to assert its claims, [the objector] has not suffered formal legal prejudice." *Galloway*, 2020 U.S. Dist. LEXIS 141856, *20. For this reason, courts regularly overrule objections seeking to expand settlements to cover excluded claims. *See, e.g., In re Mi Windows & Doors Prods. Liab. Litig*., 2015 U.S. Dist. LEXIS 184471, *32 ("Moreover, many of these objectors argue that the Class Period should be expanded to include their windows. However, the Class Period was crafted to the time the Glazing Tape at issue was in use. Therefore, the court overrules these objections.").

Here, the Town Objectors raise questions of 3M's ability to pay. However, 3M has not filed for bankruptcy and Plaintiffs do not seek approval of the Settlement under Federal Rule of Civil Procedure 23(b)(1)(B), which governs "limited fund" class actions. To that end, there has been no showing (nor could there be) that this Settlement falls within the conditions required for limited fund settlements set forth in *Ortiz v. Fibreboard Corp*., 527 U.S. 815, 119 S. Ct. 2295,

144 L. Ed. 2d 715 (1999). *See also Herrera v. Charlotte Sch. of Law, LLC,* 818 Fed. Appx. 165, 173 (4th Cir. 2020) (quoting *Ortiz*, 527 U.S. at 838-39) ("Those conditions include . . . 'the totals of the aggregated liquidated claims and the fund available for satisfying them, set definitely at their maximums, demonstrate the inadequacy of the fund to pay all the claims . . . .'").

Moreover, when non-settling plaintiffs raise concerns about a defendant's ability to pay, the proper course is not to defeat a pending settlement but instead to allow the non-settling plaintiffs to prosecute their cases. *See, e.g., In re Worldcom Sec. Litig.*, 234 F. Supp. 2d 301, 205-06 (S.D.N.Y. 2002) (granting securities plaintiff's motion to lift stay of discovery where a concern existed that other entities would exhaust what remained of the bankrupt defendant's financial resources before plaintiff could obtain judgment.). Here, the Town Objectors' concern is primarily focused on their ability to timely prosecute their claims. *See, e.g.,* Obj. at ¶ 19 ("Within the City of Stuart case, all material global issues associated with Towns' remediation cases and other superfund cases have been adjudicated."); *id.* at ¶ 25 ("Further, personal injury bellwethers are on deck, while superfund cases have no schedule to proceed." (citation omitted)). But as the Court itself has acknowledged throughout these proceedings, "if we try to bite all this off in one bite, we're going to choke." May 17, 2019 Status Conf. Tr. 17:16-20. For this reason, the Court made clear early on in this MDL that it wanted to focus initially on developing a bellwether track for one category of cases and that its strong preference was to start with the water supplier cases. *See, e.g.*, Oct. 4, 2019 Status Conf. Tr. 14:17-21 ("And in my view of this, and I've been candid about it, I think the individual party claims are probably towards the end of this process, that I see the water district claims, for instance, being an earlier kind of threshold issue."); Dec. 13, 2019 Status Conf. Tr. 55:7-12 ("I think the water districts are the first place we should focus . . . ."); June 5, 2020 Status Conf. Tr. 46:14-16 ("But my personal inclination is to

7

be -- is to be thinking about water districts as the first set of trials.");

In dismissing the Town Objectors' concerns at the July 14, 2023 Status Conference, this Court acknowledged that because the Settlement "doesn't do everything," the litigation they wish to pursue will be accomplished as "we're just doing one step at a time." July 14, 2023 Status Conf. Tr. at 42:6-19. The PEC has previously championed establishing tracks for other types of cases throughout this litigation. *See supra* note 3. The Defense Coordinating Committee ("DCC") rejected these proposals.

Instead, after meeting and conferring, it was determined based upon numerous factors—including sheer size, resources of the parties and other obligations of the Court—that the next bellwether track would focus on personal injury cases. *See, e.g.*, Sep. 23, 2022 Status Conf. Tr. 23:25-25:1 ("So let's talk about personal injury cases for just a moment. Y'all have your own strategic reasons, which I get, about why you'd like to do [Leach] and non-[Leach] and all this stuff, and whether you should go first with one or the other. . . . But I don't think we should do the non-[Leach] claims initially. I think we should -- and this is just the Court managing the litigation. I think we need to identify the [Leach] cases first. And we get the discovery moving."); Case Management Order No. 26, May 5, 2023, ECF No. 3080. Notwithstanding, there are plans to develop bellwether processes for other categories of cases, as this Court confirmed at the July 14, 2023 Status Conference. Indeed, as set forth in the July 7, 2023 Joint Status Report—which was submitted *before* the Town Objectors lodged the present objection—the PEC and DCC said the following in the Joint Status Report regarding future bellwether tracks:

> Future Bellwether Cases:
>
> The PEC and DCC will also engage in meet and confers to address other categories of cases.

8

Jul. 7, 2023 Joint Status Rep. at 45, attached as Ex. 3.

Although proposals for these additional bellwether tracks will be made shortly, they are not relevant to, nor should they defeat, the Plaintiffs' pending Motion for Preliminary Approval.

## IV. CONCLUSION

WHEREFORE, the Town Objectors' request should be denied.

Dated: July 20, 2023

                                                Respectfully submitted,

/s/ Michael A. London
Michael A. London
Douglas and London P.C.
59 Maiden Lane, 6th Floor
New York, NY 10038
212-566-7500
212-566-7501 (fax)
mlondon@douglasandlondon.com

/s/ Paul J. Napoli
Paul J. Napoli
Napoli Shkolnik
1302 Avenida Ponce de León
San Juan, Puerto Rico 00907
Tel: (833) 271-4502
Fax: (646) 843-7603
pnapoli@nsprlaw.com

/s/ Scott Summy
Scott Summy
Baron & Budd, P.C.
3102 Oak Lawn Avenue, Suite 1100
Dallas, TX 75219
214-521-3605
ssummy@baronbudd.com

/s/ Elizabeth A. Fegan
Elizabeth A. Fegan
Fegan Scott LLC
150 S. Wacker Dr., 24th Floor
Chicago, IL 60606
312-741-1019
beth@feganscott.com

*Proposed Class Counsel*

9

**CERTIFICATE OF
SERVICE**

I hereby certify that a true and correct copy of the foregoing was electronically filed with this Court's CM/ECF on this 20th day of July, 2023 and was thus served electronically upon counsel of record.

                */s/ Michael A. London*
                Michael A. London
                Douglas and London PC
                59 Maiden Lane, 6th Floor
                New York, NY 10038
                212-566-7500
                212-566-7501 (fax)
                mlondon@douglasandlondon.com