**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| IN RE: AQUEOUS FILM-FORMING FOAMS PRODUCTS LIABILITY LITIGATION | MDL No. 2-18-mn-2873-RMG<br><br>This Document Relates to:<br>*City of Camden, et al. v. 3M Company,*<br>Case No. 2:23-cv-03147-RMG |

**MEMORANDUM OF LAW IN SUPPORT OF THE SOVEREIGNS'
MOTION TO INTERVENE**

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................................ 1

II.   BACKGROUND ................................................................................................................ 3

   A.  The Sovereigns Have Sued, Intend to Sue, or Are Administering a Settlement with
       3M for Widespread PFAS Contamination ......................................................... 3

   B.  3M Proposed Settlement ................................................................................. 20

III.  STANDARD OF REVIEW ............................................................................................. 21

IV.   ARGUMENT .................................................................................................................. 21

   A.  The Sovereigns May Intervene As of Right ...................................................... 23

      1.  The Sovereigns' Motion to Intervene Is Timely ...................................... 23

      2.  The Sovereigns Have Significant Protectable Interests in This Action ...... 25

      3.  Denial of the Motion Would Impair the Sovereigns' Ability to Protect Their
          Interests .............................................................................................. 30

      4.  The Sovereigns' Interests Are Not Adequately Represented by the Plaintiffs ... 31

   B.  The Court Should Also Grant Permissive Intervention ..................................... 33

V.    CONCLUSION ................................................................................................................ 34

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*,
  458 U.S. 592 (1982) ................................................................................. 28, 29

*Aziz v. Trump*,
  231 F. Supp. 3d 23 (E.D. Va. 2017) ......................................................... 27, 32, 34

*Benjamin ex rel. Yock v. Dep't of Pub. Welfare of Pa.*,
  701 F.3d 938 (3d Cir. 2012) ...................................................................... 24

*California v. Intelligender, LLC*,
  771 F.3d 1169 (9th Cir. 2014) ................................................................... 29

*Carcaño v. McCrory*,
  315 F.R.D. 176 (M.D.N.C. 2016) .............................................................. 33

*Feller v. Brock*,
  802 F.2d 722 (4th Cir. 1986) ..................................................................... 23

*Gould v. Alleco, Inc.*,
  883 F.2d 281 (4th Cir. 1989) ..................................................................... 21, 23

*Houston Gen. Ins. Co. v. Moore*,
  193 F.3d 838 (4th Cir. 1999) ..................................................................... 21

*In re Aqueous Film-Forming Foams Prod. Liab. Litig.*,
  357 F. Supp. 3d 1391 (J.P.M.L. 2018) ...................................................... 34

*In re Flonase Antitr. Litig.*,
  879 F.3d 61 (3d Cir. 2017) ........................................................................ 29

*In re McKesson Governmental Entities Average Wholesale Price Litig.*,
  767 F. Supp. 2d 263 (D. Mass. 2011) ....................................................... 33

*N.C. Green Party v. N.C. State Bd. of Elections*,
  619 F. Supp. 3d 547 (E.D.N.C. 2022) ...................................................... 26

*N.C. Green Party v. N.C. State Bd. of Elections*,
  2022 WL 18586807 (4th Cir. Aug. 30, 2022) ........................................... 26

*N.C. State Conf. of NAACP v. Cooper*,
  332 F.R.D. 161 (M.D.N.C. 2019) .............................................................. 26, 32

*Ohio Valley Env't Coal., Inc. v. McCarthy*,
  313 F.R.D. 10 (S.D. W. Va. 2015) ............................................................ 29, 30, 31

*Outdoor Amusement Bus. Ass'n v. Dep't of Homeland Sec.*,
  No. ELH-16-1015, 2017 WL 2778820 (D. Md. June 26, 2017) ............... 24

*People ex rel. Deukmejian v. Brown*,
  29 Cal. 3d 150 (1981) ................................................................................ 4

*People of the State of Cal. v. United States*,
   180 F.2d 596 (9th Cir. 1950) ................................................................................ 28

*PPL Montana, LLC v. Montana*,
   565 U.S. 576 (2012) ......................................................................................... 34

*Rhode Island v. Atl. Richfield Co.*,
   357 F. Supp. 3d 129 (D.R.I. 2018) ....................................................................... 27

*Savannah Riverkeeper v. U.S. Army Corps of Eng'rs*,
   No. 9:12-610-RMG, 2012 WL 13008326 (D.S.C. Aug. 14, 2012) ................................... 26, 33

*Smith v. Pennington*,
   352 F.3d 884 (4th Cir. 2003) ............................................................................... 21

*State v. City of Dover*,
   891 A.2d 524 (N.H. 2006) ................................................................................... 33

*State v. Exxon Mobil Corp.*,
   126 A.3d 266 (N.H. 2015) ................................................................................... 27

*State v. Exxon Mobil Corp.*,
   406 F. Supp. 3d 420 (D. Md. 2019) ....................................................................... 27

*Teague v. Bakker*,
   931 F.2d 259 (4th Cir. 1991) ............................................................................... 25

*Trbovich v. United Mine Workers of Am.*,
   404 U.S. 528 (1972) ......................................................................................... 31

*United Airlines, Inc. v. McDonald*,
   432 U.S. 385 (1977) ......................................................................................... 24

*United Guar. Residential Ins. Co. of Iowa v. Phila. Sav. Fund Soc.*,
   819 F.2d 473 (4th Cir. 1987) ............................................................................... 31

*United States v. Carpenter*,
   298 F.3d 1122 (9th Cir. 2002) ............................................................................. 24

*Virginia v. Westinghouse Elec. Corp.*,
   542 F.2d 214 (4th Cir. 1976) ............................................................................... 32

*Vision Church v. Vill. Of Long Grove*,
   No. 03 C 5761, 2004 WL 742133 (N.D. Ill. Apr. 6, 2004) ............................................ 32

*Walker v. Liggett Grp., Inc.*,
   982 F. Supp. 1208 (S.D. W. Va. 1997) ................................................................... 32, 33

*Zimmerman v. GJS Grp., Inc.*,
   No. 2:17–cv–00304–GMN–GWF, 2017 WL 4560136 (D. Nev. Oct. 11, 2017) ......... 27, 28, 34

**Statutes**

10 Vt. Stat. Ann. § 1390(3) ................................................................................. 29

28 U.S.C. § 1715 ............................................................................................. 22, 29

iv

38 Me. Stat. § 401 ...................................................................................... 29

Cal. Gov't Code § 12511 ............................................................................ 4

Cal. Gov't Code § 12600 ............................................................................ 5, 28

Cal. Gov't Code § 12606 ............................................................................ 4, 28

N.J.S.A. 58:10A-1 ........................................................................................ 12

Pennsylvania Constitution, art. 1, § 27 ....................................................... 16

**Rules**

Fed. R. Civ. P. 24 ........................................................................................ 21

Fed. R. Civ. P. 24(a)(2) ............................................................................... passim

Fed. R. Civ. P. 24(b) ................................................................................... 21, 33

Fed. R. Civ. P. 24(b)(1)(B), (b)(3) .............................................................. 21, 33

**Other Authorities**

S. Rep. No. 109-14 ...................................................................................... 29

## I.    INTRODUCTION

Arizona, California, Colorado, Connecticut, Hawaii, Maine, Maryland, Massachusetts, Minnesota, New Hampshire, New Jersey, New Mexico, New York, Pennsylvania, Puerto Rico, Rhode Island, Tennessee, Texas, Vermont, Wisconsin, as well as the District of Columbia and the Commonwealth of the Northern Mariana Islands (collectively, the "Sovereigns"), by and through their respective Attorneys General and/or their respective counsel, move to intervene in *City of Camden, et al. v. 3M Company*, No. 2:23-cv-03147-RMG to protect the Sovereigns' interests in their separate, ongoing, or intended lawsuits against 3M Company to address contamination of the Sovereigns' natural resources, drinking water, and/or public water systems, among other contaminated resources and locations, with per- and polyfluoroalkyl substances ("PFAS"). The Sovereigns have sued or intend to sue as trustees of natural resources; as property owners; in their *parens patriae* capacities on behalf of all of their residents or subdivisions; and/or pursuant to their statutory, constitutional, common law, and other authorities and powers to protect public health and the environment in their states and territories.[1] The Sovereigns' cases include those seeking recovery for PFAS contamination of public drinking water, groundwater, surface water, and other impacted resources as described in Part II.A, *infra*. There are public water systems in each State that are putative class members of the proposed settlement between 3M and public water providers ("Settlement").[2]

---

[1] For ease of reference, the collective or individual jurisdictions of the states and territories will be referred to herein as the "States" or the "State."

[2] Settlement Agreement Between Public Water Systems and 3M Company ("Settlement Agreement"), ECF No. 3370-03, at Exs. E and F [hereinafter cited as "Settlement Agr."].

The Sovereigns' lawsuits—and other rights and interests—may be impacted by the current provisions of the proposed Settlement as explained in the concurrently filed States' and Sovereigns' Omnibus Opposition to Plaintiffs' Motion for Preliminary Approval of Class Settlement, for Certification of Settlement Class and for Permission to Disseminate Class Notice ("Sovereigns' Opposition" or "Opposition"). The Sovereigns seek to intervene to protect their own interests that are not represented by Plaintiffs in at least two primary ways.

*First*, there are overly broad release and indemnity provisions in the Settlement Agreement that could be interpreted to impact the Sovereigns' cases. The indemnity provision could be read to require public water systems to indemnify 3M against any damages awarded in any litigation that in any way concerns class member public water systems, rendering the Settlement amount illusory due to the uncapped nature of the indemnity. The overly broad release could be read to encroach into portions of the Sovereigns' cases that "relate" to public water systems.

*Second*, the Court observed at the July 14, 2023 Status Conference that it could include an All Writs Act injunction in an order granting the motion for preliminary approval. There is a clear risk that such an injunction could sweep in the entirety of the Sovereigns' cases, including those that are brought to address public drinking water but also those that seek relief that goes well beyond public drinking water.[3] The Sovereigns seek much broader relief to address PFAS-contaminated natural resources than the putative Settlement class members: in addition to injuries to drinking water and public water supply wells, the Sovereigns seek relief for injuries to groundwater, surface waters, private drinking water wells, and contaminated locations such as

---

[3] This result could be especially severe for Vermont, which has been devoting substantial resources and attorney hours to separately litigating its non-AFFF PFAS case in state court since 2019 and has a trial-ready date of October 16, 2024. That said, the Sovereigns do not concede that the injunction proposed in the DuPont settlement would stay their cases.

wastewater treatment plants, landfills, industrial sites, biosolid land application sites, and non-water natural resources. An All Writs Act injunction would severely curtail the Sovereigns' rights and interests in pursuing these important claims.

The Sovereigns seek intervention to protect the Sovereigns' interests in the Settlement, class certification, and class notice to ensure that those documents respect and do not impede the Sovereigns' separate PFAS cases, including cases outside the multidistrict litigation ("MDL")[4] that do not involve aqueous film-forming foam ("AFFF"). The Sovereigns through the Sovereign Committee and individually have expressed these concerns to Proposed Class Counsel and 3M but have not successfully reached a resolution. Thus, the Sovereigns respectfully request that the Court grant their Motion to Intervene and consider the Sovereigns' Opposition filed concurrently with this Motion.[5]

## II.    BACKGROUND

### A.  The Sovereigns Have Sued, Intend to Sue, or Are Administering a Settlement with 3M for Widespread PFAS Contamination

The Sovereigns seeking intervention have either filed or intend to file separate PFAS lawsuits against 3M and others to remedy widespread PFAS contamination in their States. While some of those lawsuits are related to AFFF and pending before this Court, many more are ***not*** related to AFFF and are pending before other federal or state courts. And, as previously noted, the Sovereigns' claims address PFAS contamination well beyond drinking water.

---

[4] For purposes of this Motion, the terms "MDL" and "AFFF MDL" refer to this litigation, *In re: Aqueous Film-Forming Foams Products Liability Litigation*, MDL No. 2-18-mn-2873-RMG.

[5] Two subsets of the signatories to the Motion to Intervene and Sovereigns' Opposition are also concurrently filing two supplemental oppositions. The sovereigns who have signed those oppositions also seek intervention for the purpose of providing those supplements to the Court.

*Arizona.* The State of Arizona filed a complaint against 3M and other defendants on May 26, 2023. Arizona has claims against the defendants for damages to state property and the State's natural resources, including its groundwater and sources of drinking water, and for costs for investigating, testing, monitoring, removal and disposal of PFAS contamination.[6]

*California.* On November 17, 2022, California's Attorney General sued 3M on behalf of the People to seek redress for a broad range of injuries, including harm caused by 3M to drinking water and other natural resources.[7] The suit was then tagged and transferred to the MDL.[8] As the People's chief law enforcement officer, the Attorney General is empowered to take "charge, as attorney, of all legal matters in which the State is interested." CAL. GOV'T CODE § 12511. He is a "guardian of the public interest." *People ex rel. Deukmejian v. Brown*, 29 Cal. 3d 150, 157 (1981) (quotations omitted). Accordingly, the California Legislature has specifically vested the Attorney General with authority to intervene "in any judicial or administrative proceeding in which facts are alleged concerning pollution or adverse environmental effects which could affect the public generally." CAL. GOV'T CODE § 12606.[9]

---

[6] *See* Compl. ¶¶ 10–17, 83–86, 98, 108,115, 125–127, 131–135, 144, 158, in *State of Arizona v. 3M Company*, No. 2:23-cv-01125 (D. Ariz.).

[7] *See* Compl., ECF No. 1-1, in *People ex rel. Bonta v. 3M*, No. 2:23-cv-01531-RMG (D.S.C.).

[8] *See* Transfer Order, ECF No. 36, No. 2:23-cv-01531-RMG (D.S.C. Apr. 12, 2023).

[9] Indeed, the Attorney General's interests in protecting the public from pollution or adverse environmental effects are so weighty that the California Legislature expressly found and declared:

> (a) It is the policy of this state to conserve, protect, and enhance its environment. It is the policy of this state to prevent destruction, pollution, or irreparable impairment of the environment and the natural resources of this state. (b) It is in the public interest to provide the people of the State of California through the Attorney General with adequate remedy to protect the natural resources of the State of California from pollution, impairment, or destruction. (c) Conservation of natural resources and protection of the environment are pursuits often beyond the scope of inquiry, legislation, or enforcement by local government; several local public

*Colorado.* The State of Colorado, through its Attorney General, filed a lawsuit against DuPont-related entities and others to address PFAS contamination in Colorado. The lawsuit was removed to federal court and is pending in the MDL. Colorado brought the lawsuit in its sovereign and proprietary capacities and in its *parens patriae* capacity on behalf of its citizens and residents to protect public health, safety, and welfare and to protect the state's waters, environment, wildlife, wildlife habitat, and other natural resources.[10] Colorado seeks damages and other relief for PFAS contamination to drinking water, ground water, surface water, soils, and other natural resources.[11] Colorado has not yet filed a lawsuit against 3M but has preserved its claims against 3M for PFAS contamination in a tolling agreement.

*Commonwealth of the Northern Mariana Islands.* The Commonwealth of the Northern Mariana Islands ("CNMI"), through its Attorney General, filed a lawsuit on November 12, 2019 against 3M and others responsible for PFAS contamination in drinking water, groundwater, and other natural resources found primarily on the island of Saipan from the use of AFFF. CNMI's lawsuit was thereafter removed and consolidated with these MDL proceedings.[12]

CNMI's claims are brought in its capacities as trustee of natural resources and *parens patriae.*[13] Further, CNMI brings claims under statutes providing expansive relief to address PFAS

---

entities existing in the same ecological community have acted in differing and, sometimes, conflicting manners; uniform, coordinated, and thorough response to the questions of protection of environment and preservation of natural resources must be assured; and these matters are of statewide concern.

CAL. GOV'T CODE § 12600.

[10] *See* Compl. ¶¶ 16–18, ECF No. 1-2, in *State of Colorado ex rel. Weiser v. E. I. du Pont de Nemours & Company, et al.*, No. 2:22-cv-01195-RMG (D.S.C.).

[11] *See id.* ¶¶ 93, 97–98, 106–115.

[12] *See* Compl., ECF No. 26, in *CNMI v. 3M, et al.*, No. 2:19-cv-3602-RMG. The operative complaint is CNMI's Second Amended Complaint (ECF No. 26).

[13] *See* CNMI Second Am. Compl. ¶ 30.

contamination in drinking water and other resources, including the CNMI Protection from PFAS Act, 2 CMC §§ 3901, *et seq*. and the federal Safe Drinking Water Act.

CNMI's case seeks to require the defendants to pay for all costs to investigate, clean up and remove, treat, monitor, and otherwise respond to PFAS contamination resulting from AFFF, including in drinking water, as well as restoration of natural resources, and compensatory damages.[14]

**Connecticut.** Connecticut is likely to pursue PFAS claims against 3M and others pursuant to its role as trustee of its natural resources and in its *parens patriae* capacity to redress PFAS contamination of its groundwater, surface waters, nearshore waters, soils, and other natural resources.

**District of Columbia.** The District of Columbia filed a PFAS case against 3M in the District of Columbia Superior Court on July 17, 2023. The District of Columbia seeks to recover for PFAS contamination of groundwater, surface water, soil, plants and animal life, and other natural resources and for costs related to treating and remediating PFAS contamination in drinking water, wastewater, and biosolids.[15]

**Hawaii.** Hawaii is likely to pursue PFAS claims against 3M and others pursuant to its role as trustee of its natural resources and in its *parens patriae* capacity to redress PFAS contamination of its groundwater, surface waters, nearshore waters, soils, and other natural resources.

**Maine.** The State of Maine, through its Attorney General, filed two separate lawsuits in state court against 3M and DuPont-related entities to address PFAS contamination within Maine. The first case addresses only PFAS contamination associated with the use of AFFF, was removed

---

[14] *See* CNMI Second Am. Compl. at Prayer for Relief 1-8.
[15] *See* Ex. 1, Compl. ¶¶ 4, 7, 48, 73, 81, 84–85 in *District of Columbia v. The 3M Company*, No. 2023-CAB-004322 (D.C. Super. Ct.).

to federal court, and is currently pending within the MDL.[16] Maine brought a separate lawsuit to address PFAS contamination caused by consumer and household products, as well as industrial uses that are ***not*** related to the use of AFFF.[17] The case is currently pending in Maine federal court subject to a motion to remand.

Maine has brought its AFFF and non-AFFF cases in its capacity as sovereign; as trustee of the State's natural resources; as owner of property (or of substantial interests in property); and pursuant to its *parens patriae* authority on behalf of its citizens and subdivisions, including public water systems, as well as its statutory authority to protect State natural resources and property, and its common law police power, including its power to prevent pollution of the State's natural resources and property; to prevent nuisances; and to prevent and abate hazards to public health, safety, welfare, and the environment.[18] The scope of damages and other relief sought by Maine extends to many natural resources and locations in addition to public drinking water wells, including PFAS contamination of groundwater, surface waters, soils, and other natural resources at locations including in its non-AFFF case private drinking water wells, wastewater treatment plants, landfills, industrial sites, and biosolid application sites, among other locations.[19]

---

[16] *See* Compl. ¶ 22, ECF No. 1-3, in *State of Maine v. 3M Company, et al.*, No. 2:23-cv-02573-RMG (D.S.C.) [hereinafter cited as "Maine AFFF Compl."] ("The State is not seeking to recover through this Complaint any relief for contamination and injury from PFAS that is not related to the manufacture and use of AFFF, which the State is addressing through a separate legal action.").

[17] *See* Ex. 2, Compl. ¶ 15, in *State of Maine v. 3M Company, et al.*, No. 2:23-cv-00210-JAW (D. Me.) [hereinafter cited as "Maine Non-AFFF Compl."] ("The State is not seeking to recover through this Complaint any relief for contamination or injury related to Aqueous Film Forming Foam, a firefighting material that contains PFAS.").

[18] *See* Maine AFFF Compl. ¶¶ 20, 23–26; Maine Non-AFFF Compl. ¶¶ 13, 16–19.

[19] *See* Maine AFFF Compl. ¶¶ 224, 232, 236, 239; Maine Non-AFFF Compl. ¶¶ 134–135, 141, 146, 149, 152.

*Maryland.* The State of Maryland, through its Attorney General and on behalf of the Maryland Department of Environment, the Maryland Department of Health, and the Maryland Department of Natural Resources, filed two separate lawsuits on May 30, 2023—one to address contamination across Maryland from PFAS due to the use of AFFF, and one to address statewide contamination from PFAS from non-AFFF sources, such as industrial use and consumer products. Maryland brought both suits directly, pursuant to its property rights in State-owned lands, and also pursuant to its police powers, its *parens patriae* authority, and as the trustee of Maryland's natural resources to protect the health and wellbeing of its residents and natural resources.

Maryland's AFFF case seeks to recover all damages and costs arising from PFAS contamination caused by 3M's AFFF products, including but not limited to drinking water and natural resource damages, as well as all past, present, and future costs of testing, monitoring, investigating, and treating for and/or abating PFAS contamination caused by 3M's AFFF products. Maryland's AFFF case is the subject of a Conditional Transfer Order and will proceed in the AFFF MDL.[20]

Maryland's Non-AFFF case was filed to address widespread contamination of Maryland's natural resources—particularly the drinking water supplies upon which its citizens depend—with PFAS. Maryland seeks to recover all damages and costs arising from PFAS contamination within the State, but "the State does not … seek any remediation, restoration, damages, or any other relief related to any PFAS contamination caused by AFFF or fluorosurfactants when used as ingredients

---

[20] *See* Ex. 3, Compl. ¶¶ 1, 4–9, 12, 13, 20, 93–134, 135–154, 158–240, 241–253, 255–272, 274–287, 289–297, 299–310, 312–318, 320–327, 329–332, 334–347, 349–361, 363–373, 375–386, in *State of Maryland v. 3M Company, et al.,* No. 1:23-CV-1834-BPG (D. Md.) ("Maryland AFFF Case"). The Maryland AFFF Case was removed from State court on July 10, 2023, and 3M tagged the case to the AFFF MDL, which motion resulted in the issuance of a Conditional Transfer Order ("CTO") on July 19, 2023.

of AFFF" as such "claims with respect to AFFF are the subject of a separate action."[21] 3M removed the Non-AFFF Case from state court and sought to tag it to the AFFF MDL. On July 19, 2023, the Judicial Panel on Multidistrict Litigation declined to issue a CTO for Maryland's Non-AFFF Case. Maryland intends to seek remand to state court of its Non-AFFF Case.

*Massachusetts.* The Commonwealth of Massachusetts direct-filed a lawsuit in the MDL on May 25, 2022 against 3M and other defendants, seeking to address PFAS contamination across the Commonwealth, including PFAS from AFFF.[22] Massachusetts has brought its suit in its sovereign and *parens patriae* capacity and in the public trust to protect and promote the Commonwealth's interests, including its interest in the health, safety, security, and well-being of its residents and the integrity of its natural resources.[23] The Commonwealth seeks to recover all damages sustained in its sovereign, *parens patriae*, public trustee, and other capacities, including but not limited to all costs associated with investigating, restoring, and responding to contamination of the State's natural resources, such as groundwater and other water resources.[24]

*Minnesota.* The State of Minnesota, through its Attorney General and the Commissioners of its Pollution Control Agency and Department of Natural Resources, brought a lawsuit for natural resources damages against 3M in state court for drinking water contamination in the eastern Twin Cities Metro area. Minnesota settled that case with 3M in February 2018. Minnesota is currently administering that settlement, and Exhibit G of the proposed Settlement Agreement excludes the

---

[21] *See* Ex. 4, Compl. ¶ 13, in *State of Maryland v. 3M Company, et al.,* No. 1:23-CV-1836-BPG (D. Md.) ("Maryland Non-AFFF Case").

[22] *Commonwealth of Massachusetts v. 3M Company, et al.*, No. 2:22-cv-01649-RMG (D.S.C.).

[23] Complaint ¶ 9, *Commonwealth of Massachusetts v. 3M Company, et al.*, No. 2:22-cv-01649-RMG (D.S.C. May 25, 2022).

[24] *Id.*, Prayer ¶¶ A–B.

public water systems serving the handful of communities that the 2018 settlement covers. But there are hundreds of other public water systems in the State, as inventoried in Exhibits E and F of the proposed 3M Settlement Agreement. Minnesota has an interest in protecting public water systems and its State interests to the extent provided in its settlement agreement.

*New Hampshire.* The State of New Hampshire filed two separate lawsuits on May 29, 2019—one to address contamination across New Hampshire from PFAS due to the use of AFFF and one to address statewide contamination from PFAS from non-AFFF sources, such as industrial use and consumer products. New Hampshire brought both of its lawsuits in its capacity as trustee of the waters of the State, as steward of other natural resources, and in its *parens patriae* capacity. In addition to damages to investigate, restore, and respond to contamination of the State's natural resources, the State seeks, inter alia, damages for the provision of potable drinking water where drinking water supplies have been or will be contaminated.[25]

New Hampshire's AFFF case is a member case in this MDL.[26] New Hampshire's non-AFFF case, on the other hand, has been proceeding in New Hampshire state and federal courts for over four years now.[27] In fact, last year, 3M unsuccessfully attempted to remove and tag New Hampshire's non-AFFF case to this MDL. The Judicial Panel on Multidistrict Litigation found that this non-AFFF case did ***not*** belong in this MDL and granted New Hampshire's motion to vacate the conditional transfer order.[28] Moreover, in March 2023, the federal district court in New

---

[25] *See* Ex. 5, Second Am. Compl. at Prayer ¶ A(2), in *State of New Hampshire v. 3M Company, et al.*, No. 216-2019-CV-00445 (N.H. Super. Ct.) (Aug. 25, 2021).

[26] *See State of New Hampshire v. 3M Company, et al.*, No. 2:19-cv-02285-RMG (D.S.C.).

[27] *See State of New Hampshire v. 3M Company, et al.*, No. 216-2019-CV-00445 (N.H. Super. Ct.), *remanded from* No. 1:22-cv-00145-LM (D.N.H.).

[28] *See* Order Vacating Conditional Transfer Order (ECF No. 22), in *State of New Hampshire v. 3M Company, et al.*, No. 1:22-cv-00145-LM (D.N.H.) (Aug. 3, 2022).

10

Hampshire found that 3M's assertion of federal officer removal jurisdiction did not give rise to federal subject matter jurisdiction and that 3M's removal was untimely and remanded the case to New Hampshire Superior Court.[29] 3M has appealed the district court's decision to the First Circuit Court of Appeals.[30] 3M has filed its appellate brief, and New Hampshire's responsive brief is due next month. In the meantime, New Hampshire's non-AFFF case is proceeding in state court.

*New Jersey*. The New Jersey Department of Environmental Protection ("NJDEP") issued a Statewide PFAS Directive to 3M and other PFAS manufacturers and users on March 25, 2019. The Statewide PFAS Directive sought to require 3M and the other responsible parties to fund the investigation, testing, treatment, cleanup, and removal of PFAS from New Jersey's environment, including in New Jersey's drinking water systems and private drinking water wells, as well as natural resources including groundwater, surface water, soil, sediments, and biota, pursuant to their obligations under various New Jersey environmental laws.[31] 3M has yet to satisfy the full requirements of the Directive.

Following the issuance of the Statewide PFAS Directive, on March 27, 2019, NJDEP further brought a series of lawsuits in New Jersey Superior Court focused on addressing PFAS contamination released from DuPont manufacturing sites known as Chambers Works and Parlin.[32] NJDEP named 3M as a defendant in those cases because, for decades, 3M supplied the PFAS used

---

[29] *See* Order, ECF No. 102, in *State of New Hampshire v. 3M Company, et al.*, No. 1:22-cv-00145-LM (D.N.H.) (Mar. 29, 2023).

[30] *See State of New Hampshire v. 3M Company*, No. 23-1362 (1st Cir.).

[31] *See* N.J. Statewide PFAS Directive, *available at* https://www.nj.gov/dep/docs/statewide-pfas-directive-20190325.pdf, ¶ 67.

[32] *See N.J. Dep't Envtl. Prot., et al. v. E. I. du Pont de Nemours & Co., et al.*, No. SLM-L-57-19 (N.J. Sup Ct.) (Chambers Works); *N.J. Dep't Envtl. Prot., et al. v. E. I. du Pont de Nemours & Co., et al.*, No. MID-L-2448-19 (N.J. Sup. Ct.) (Parlin).

and disposed by DuPont at these sites. These cases, which were removed to New Jersey federal district court, remain pending.[33] The federal district court confirmed 3M should remain in the case and may be held liable as a responsible party under the New Jersey Spill Compensation and Control Act, N.J.S.A. 58:10A-1, et seq.[34]

Additionally, on May 14, 2019, the New Jersey Attorney General and NJDEP brought a lawsuit in New Jersey Superior Court against 3M and others seeking redress for statewide PFAS contamination caused by AFFF.[35] New Jersey's AFFF case was removed and shortly thereafter consolidated with these MDL proceedings.[36] This Court recently granted NJDEP's motion for leave to pursue claims under the federal Safe Drinking Water Act and the New Jersey Safe Drinking Water Act to protect the health of New Jersey's residents from drinking water with PFAS above the State's maximum contaminant levels.[37]

Collectively as a result these actions, the State of New Jersey, through the Attorney General and NJDEP, has brought and is continuing to litigate expansive claims in its capacity as trustee of natural resources within its jurisdiction to protect the public trust and seek compensation for injury to New Jersey's natural resources, in its capacity as *parens patriae* to protect the health and

---

[33] *See N.J. Dep't Envtl. Prot., et al. v. E. I. du Pont de Nemours & Co., at al.*, No. 1:19-cv-14766 (D.N.J.) (Chambers Works); *N.J. Dep't Envtl. Prot., et al. v. E. I. du Pont de Nemours & Co., et al.*, No. 3:19-cv-14767 (D.N.J.) (Parlin).

[34] *See* ECF No. 156, in *N.J. Dep't Envtl. Prot., et al. v. E. I. du Pont de Nemours & Co., et al.*, No. 1:19-cv-14766.

[35] *See Grewal, et al. v. 3M, et al*., No. MER-L-953-19 (N.J. Sup. Ct.).

[36] New Jersey's AFFF case was assigned docket number 2:19-cv-02199-RMG (D.S.C.).

[37] *See* Order, ECF No. 58, 2:19-cv-02199-RMG (D.S.C.).

wellbeing of its residents, and in its capacity as regulator.[38] New Jersey seeks relief against 3M and others to address PFAS contamination in drinking water, groundwater, surface water sediments, soils, and biota, including in the form of costs necessary to investigate, remediate, and restore New Jersey's impacted natural resources, as well as damages for injuries to those resources.[39]

*New Mexico.* The State of New Mexico, through its Attorney General, filed a lawsuit against 3M and others to address PFAS contamination on May 26, 2023.[40] New Mexico has brought the suit pursuant to its authority to protect public trust resources and its police power; in its *parens patriae* capacity for the benefit of the citizens of the State, pursuant to the State's possessory interest in the public lands of the State; and as an exercise of other authorities and powers.[41] New Mexico seeks to recover for PFAS contamination of groundwater, surface water, sediments, soils, and other natural resources.[42]

---

[38] *See* Second Am. Compl. ¶ 14, ECF 57, in *N.J. Dep't Envtl. Prot., et al. v. E. I. du Pont de Nemours & Co., at al.*, No. 1:19-cv-14766 (D.N.J.) (Chambers Works); Second Am. Compl. ¶ 12, ECF 73, in *N.J. Dep't Envtl. Prot., et al. v. E. I. du Pont de Nemours & Co., at al.*, No. 3:19-cv-14767 (D.N.J.) (Parlin); AFFF Proposed Second Am. Compl. ¶ 20, ECF 57, Ex. A, in *N.J. Dep't Envtl. Prot., et al. v. E. I. du Pont de Nemours & Co., at al.*, 2:19-cv-02199-RMG (D.S.C.).

[39] *See* Second Am. Compl. ¶¶ 7-8, ECF 57, in *N.J. Dep't Envtl. Prot., et al. v. E. I. du Pont de Nemours & Co., at al.*, No. 1:19-cv-14766 (D.N.J.) (Chambers Works); Second Am. Compl. ¶ 6, ECF 73, in *N.J. Dep't Envtl. Prot., et al. v. E. I. du Pont de Nemours & Co., at al.*, No. 3:19-cv-14767 (D.N.J.) (Parlin); AFFF Proposed Second Am. Compl. ¶¶ 11-14, ECF 57, Ex. A, in *N.J. Dep't Envtl. Prot., et al. v. E. I. du Pont de Nemours & Co., at al.*, 2:19-cv-02199-RMG (D.S.C.).

[40] *See* Ex. 6, Compl. for (1) Public Nuisance, (2) Negligence, (3) Products Liability, (4) Violation of New Mexico Unfair Practices Act, (5), Trespass, and (6) Violation of New Mexico Uniform Fraudulent Transactions Act, in *The State of New Mexico ex rel. Torrez v. 3M Company*, No. D-101-CV-2023-01158 (1st Jud. Dist. Ct. Cnty. of Santa Fe May 26, 2023). New Mexico has a second pending action in the AFFF MDL, but that action only names as a defendant the U.S. Department of the Airforce. *The State of New Mexico v. United States*, No. 2:20-cv-02115-RMG (D.S.C.).

[41] *See id.* ¶¶ 9–12, & Request for Relief ¶ F.

[42] *See id.* ¶¶ 64–93, 152–153, 264, 271–274, 317–318.

***New York.*** The State of New York, through its Attorney General, is presently litigating four AFFF actions against 3M and other defendants in the MDL.[43] Each action is brought by the State, as *parens patriae* and representative of all residents and citizens of the State, as trustee and guardian of the State's natural resources, and on its own behalf in its sovereign and proprietary capacities, to redress the contamination of its soils, ground waters, and surface waters by discharges of AFFF containing PFAS. Through its actions, New York seeks to recover its past and future costs in responding to injuries and/or threats to public health and the environment caused by the defendants' AFFF products along with damages for harm to the State's natural resources, among other things.

***Ohio.*** The State of Ohio, through its Attorney General, filed a lawsuit on February 8, 2018 in the Court of Common Pleas, Washington County, Ohio. Through the Complaint, Ohio seeks injunctive relief, costs, and damages in connection with the contamination of Ohio's natural resources by perfluorooctanoic acid ("PFOA") emitted from the Washington Works facility located in Parkersburg, WV. *Ohio v. E.I. Du Pont De Nemours and Co.*, et al., Case No. 180T32 (Ct. of Common Pleas, Washington County, Ohio) (the "Washington Works Case"). This case is focused solely on the injury to Ohio caused by DuPont's releases of PFOA from that facility from 1951 to the present, including direct discharges to the Ohio River and decades of air emissions. Ohio does not seek, in its Washington Works Case, to recover for any contamination caused by AFFF. In addition, the only defendants are E.I. du Pont de Nemours and Co. ("DuPont"), The Chemours Company, DuPont de Nemours, Inc., and Corteva, Inc. 3M and other AFFF manufacturers are not defendants in the Washington Works Case.

---

[43] *See State of New York v. 3M Company*, No. 19-cv-01022-RMG; *State of New York v. 3M Company*, No. 19-cv-02123-RMG; *State of New York v. 3M Company*, No. 19-cv-02607-RMG; *State of New York v. 3M Company*, No. 20-cv-00048-RMG.

14

The Complaint in the Washington Works Case alleges that Ohio is the owner in trust of public lands, waters, and resources within Ohio. As *parens patriae*, the State has sued to protect its natural resources and the health, safety, and welfare of the citizens of Ohio. State-owned lands were also severely contaminated by DuPont's PFOA from Washington Works. The Complaint asserts claims for negligence, public nuisance, trespass, and unjust enrichment, and seeks damages for, among other things, the harm DuPont caused to Ohio natural resources. The Complaint also asks for punitive damages based on the fact that DuPont continued to release PFOA into the environment, for decades, despite knowing that it was toxic and harmful to the environment and human health. In addition, Ohio also seeks restitution as an alternative remedy, seeking disgorgement of DuPont's profits.

The Washington Works Case has been heavily litigated for the past five years. The defendants' motions to dismiss were denied in June 2019, motions for partial summary judgment have been ruled on in Ohio's favor, the State has taken 20 depositions of current and former DuPont employees, and the parties are nearing the end of fact discovery and will be submitting expert reports by the end of 2023. The case is set for trial in October 2024.

In addition, Ohio, through its Attorney General, has filed a separate lawsuit concerning PFAS contamination of its water systems and natural resources resulting from the use of AFFF, which is directed against 3M, the DuPont entities, and various AFFF manufacturers, manufacturers of PFAS for use in AFFF, and AFFF distributors. The matter was first filed in the Court of Common Pleas, Lucas County, Ohio, and removed to the District Court for the Northern District of Ohio, then transferred into the MDL. Ohio has brought its AFFF lawsuit in its capacity as sovereign, as owner of property (or of substantial interests in property), as trustee of the State's natural resources, and pursuant to its *parens patriae* authority on behalf of its citizens and

subdivisions. The State's lawsuit seeks to recover for harm to natural resources traceable to the use of AFFF on a statewide basis, including groundwater, surface waters, soils, sediments, biota, and other natural resources.[44]

*Pennsylvania.* Pennsylvania filed a PFAS lawsuit in state court against certain DuPont entities on May 30, 2023, which has been removed to federal court, and is likely to pursue similar claims against 3M.[45] Pennsylvania has sued in its capacity as a trustee of public natural resources pursuant to its trustee duties under the Pennsylvania Constitution, art. 1, § 27; in its *parens patriae* capacity; and pursuant to its police powers.[46] Pennsylvania seeks relief for PFAS contamination of public and private drinking water wells, groundwater, surface waters, sediment, and biota, among other natural resources.[47]

*Puerto Rico.* The Commonwealth of Puerto Rico filed a PFAS case lawsuit against 3M in the MDL on May 31, 2023. Puerto Rico sued as trustee of natural resources and in its *parens patriae* capacity to recover for PFAS contamination of soils, sediments, groundwater, surface water, and other natural resources and at locations including public drinking water wells, wastewater treatment plants, and industrial sites.[48]

---

[44] *See* Second Amended Complaint, ¶¶ 24-30, ECF No. 76, in *Ohio, ex rel. Dave Yost, Ohio Attorney General v. 3M Co.*, et al., 2:19-cv-00990-RMG (D.S.C.).

[45] *See* Ex. 7, Compl., ECF No. 1-1, in *The Commonwealth of Pennsylvania v. EIDP, Inc., et al.*, No. 1:23-cv-01131 (M.D. Pa.).

[46] *See id.* ¶¶ 12, 22–28.

[47] *See id.* ¶¶ 187, 199–204.

[48] *See* Compl. ¶¶ 1–3, 8, 59, 76, 81, 156, ECF No. 1, in *The Commonwealth of Puerto Rico v. The 3M Company*, No. 2:23-cv-02351-RMG (D.S.C.).

*Rhode Island.* On May 25, 2023, the State of Rhode Island. Through its Attorney General, sued 3M and others to redress PFAS contamination within Rhode Island.[49] Rhode Island brought suit as an exercise of its police power to enforce the laws, pursuant to its authority to protect public trust resources, and in its *parens patriae* capacity for the benefit of its citizens. Rhode Island seeks various remedies, including natural resource damages and the costs of investigating, treating, and remediating PFAS detected in groundwater, surface water, sediments, soils, and biota throughout Rhode Island.[50]

*Tennessee.* On May 31, 2023, the State of Tennessee, acting by and through its Attorney General, sued 3M and others to redress PFAS contamination from AFFF sources within the State, and the case was removed to the Middle District of Tennessee, *Tennessee v. 3M Company, et al.*, No. 3:23-cv-00676 (M.D. Tenn. 2023). Tennessee brought suit because it has property interest in the waters of the State, an interest as a sovereign, as public trustee to protect the natural resources for the public, and pursuant to its obligation to take steps to secure, protect, and preserve the right of the people of Tennessee to have unpolluted waters. Tennessee seeks various remedies, including the costs of investigating, treating, monitoring, and remediating PFAS detected in the State's natural resources including, but not limited to, groundwater, surface water, sediments, soils, and biota throughout Tennessee. Tennessee's case is pending transfer to the AFFF MDL. Conditional Transfer Order (ECF No. 1995).

---

[49] *See* Compl., ECF No. 1-1, in *State of Rhode Island ex rel. Neronha v. 3M Company*, 1:23-cv-00284-MSM-LDA (D.R.I.). On July 19, 2023, Rhode Island's case was conditionally transferred to the AFFF MDL.

[50] *See id.* ¶¶ 5, 6, 9, 12, 74–78, 92–98, 250–251, 259–260, 266, 268(a)-(b), 270–271, 276, 282, 286, 288(a)–(c), 289–290, 295–296, 297(a)–(b), 299, 300(a)–(b), 303, 308, 310, 312, 327–328, 352–353.

*Texas.* On May 30, 2023, the State of Texas, acting by and through its Attorney General, sued 3M and others to redress PFAS contamination from AFFF sources within the State. *Texas v. 3M Company, et al.*, No. 067-342633-23 (Tex.Dist. May 30, 2023). Texas brought suit as an exercise of its police power to enforce the laws, pursuant to its authority to protect public trust resources, and in its *parens patriae* capacity for the benefit of its citizens. Texas seeks various remedies, including environmental damages and the costs of investigating, treating, and remediating PFAS detected in groundwater, surface water, sediments, soils, and biota throughout Texas. The State anticipates that its case will be transferred to the MDL soon.

*Vermont.* The State of Vermont, through its Attorney General, filed two separate lawsuits in state court in June 2019 against 3M and others to address PFAS contamination within Vermont. The first case addresses only PFAS contamination associated with the use of AFFF, was removed to federal court, and is pending within the MDL.[51] Vermont brought a separate lawsuit to address PFAS contamination caused by consumer and household products, as well as industrial uses, that are ***not*** related to the use of AFFF.[52] Vermont has been litigating its PFAS consumer/industrial products case in state court for over four years, with upcoming deadlines for the close of fact discovery (October 2, 2023); the State's expert disclosures (October 3, 2023); and the defendants'

---

[51] *See* Compl. ¶ 17, ECF No. 1-1, in *State of Vermont v. 3M Company, et al.*, No. 2:19-cv-02281-RMG (D.S.C.) [hereinafter cited as "Vermont AFFF Compl."] ("The State is not seeking to recover through this Complaint any relief for contamination and injury from PFAS that is not related to the manufacture and use of AFFF, which the State is addressing through a separate legal action.").

[52] *See* Ex. 8, Second Am. Compl. ¶ 13, in *State of Vermont v. 3M Co., et al.,* No. 547-6-19 Cncv (Vt. Super. Ct. Chittenden Cnty.) [hereinafter cited as "Vermont Non-AFFF Compl."] ("The State is not seeking to recover through this Second Amended Complaint any relief for contamination or injury related to Aqueous Film Forming Foam, a firefighting material that contains PFAS and which the State is addressing through a separate legal action.").

expert disclosures (March 1, 2024).[53] The Vermont state court has set a trial-ready date of October 16, 2024.

Vermont has brought its AFFF and non-AFFF cases in its capacity as sovereign, as trustee of State natural resources; as owner of property (or of substantial interests in property); and pursuant to its *parens patriae* authority on behalf of its citizens, as well as its statutory authority to protect State natural resources and property and its common law police power, including its power to prevent pollution of the State's natural resources and property; to prevent nuisances; and to prevent and abate hazards to public health, safety, welfare, and the environment.[54] Vermont's non-AFFF case seeks damages and other relief for other natural resources and locations in addition to public drinking water wells, including PFAS contamination of groundwater, surface waters, soils, fish, and other natural resources and at locations including private drinking water wells, wastewater treatment facilities, landfills, industrial sites, and biosolid application sites, among other locations.[55]

*Wisconsin*. The State of Wisconsin, through its Attorney General, sued 3M and others on July 20, 2022 to redress PFAS contamination within Wisconsin.[56] Wisconsin brought suit in its sovereign capacity to enforce the law, as trustee of the State's public and natural resources, and pursuant to its *parens patriae* authority to protect the health and wellbeing of its residents. Wisconsin seeks to recover all damages and costs arising from PFAS contamination within the

---

[53] *See* Ex. 9, Discovery/Alternate Dispute Resolution Stipulation (Aug. 30, 2022).

[54] *See* Vermont AFFF Complaint ¶¶ 14, 18–21; Vermont Non-AFFF Complaint ¶¶ 10, 14–17.

[55] *See* Vermont AFFF Complaint ¶¶ 243–257; Vermont Non-AFFF Complaint ¶¶ 247–276.

[56] *See* Compl., ECF No. 1-1, in *State of Wisconsin v. 3M Company*, No. 2:23-cv-00028-RMG.

State, including natural resource damages and the costs of abating PFAS detected in groundwater, air, sediments, surface water, and drinking water throughout Wisconsin.[57]

### B.  3M Proposed Settlement

3M has reached an agreement in principle to settle PFAS-related claims of most public water systems across the country. 3M filed the proposed Settlement with the Securities and Exchange Commission ("SEC") on June 22, 2023. On June 30, Plaintiffs filed their class action complaint in this case that would effectuate the Settlement.[58] Plaintiffs subsequently moved for class certification and preliminary approval of the Settlement on July 3, 2023.[59] Fourteen Sovereigns filed a motion for an extension of time to respond to the preliminary approval motion (and were later joined by additional Sovereigns), which the Court granted in part, ordering that any response to the motion for preliminary approval is due on July 24. Plaintiffs then moved for an additional extension of time, which the Court granted, ordering the Sovereigns to file their response on July 26, 2023.[60]

Either individually or in various groups, the Sovereigns have engaged in good-faith efforts to resolve several serious concerns with the Settlement over the past ten days, including multiple conferrals with counsel for 3M and the plaintiff-movants ("Movants") and providing proposed revisions to the Settlement Agreement to 3M and the Movants. Unfortunately, while the parties have made some progress on some items, due in part to the short amount of time available to

---

[57] *See* Am. Compl., ECF No. 33 in *State of Wisconsin*, ¶¶ 1, 9–12, 15, 63–68, 151–154, 158, 164, 172, 184, 288(b)–(c), 289(b), 290, 296, 299(b)–(c), 300(b), 301, 308–309, 311(b)–(c), 313, 315, 323, 324(a), 339(a), 347(a).

[58] *See* Compl., ECF No. 3367, in *City of Camden v. 3M Co.*, No. 2:23-cv-03147-RMG (D.S.C).

[59] *See generally* Pls.' Mot. for Preliminary Approval, ECF No. 3370-1.

[60] *See* Order, ECF No. 3442 (July 25, 2023).

negotiate solutions to these significant issues, the Sovereigns have been unable to resolve their concerns about the Settlement as proposed in the Motion.

## III.          STANDARD OF REVIEW

On a timely motion, the Court "must permit anyone to intervene" who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." FED. R. CIV. P. 24(a)(2); *see also Houston Gen. Ins. Co. v. Moore*, 193 F.3d 838, 839 (4th Cir. 1999). Also on a timely motion, the Court "may permit anyone to intervene" who "has a claim or defense that shares with the main action a common question of law or fact," considering whether the intervention will "unduly delay or prejudice the adjudication of the original parties' rights." FED. R. CIV. P. 24(b)(1)(B), (b)(3). The decision whether to grant permissive intervention typically "lies within the sound discretion of the trial court." *Smith v. Pennington*, 352 F.3d 884, 892 (4th Cir. 2003) (citation omitted).

The Sovereigns meet all of the requirements to intervene in this action as of right under Rule 24(a)(2) and, in the alternative, for permissive intervention under Rule 24(b). As non-class members with interests impacted by the Settlement, the Sovereigns may properly raise their concerns through intervention. *See Gould v. Alleco, Inc.*, 883 F.2d 281, 284 (4th Cir. 1989) ("Interjection of the opposing views of non-class members should proceed via intervention under Rule 24.").

## IV.    ARGUMENT

To promote efficiency and judicial economy, the Sovereigns seek to intervene now so that they can raise and resolve several serious concerns with the Settlement prior to preliminary

approval and issuance of the class notice.[61] *First*, the Settlement contains a perpetual, uncapped, and overbroad indemnity clause that could shift billions of dollars of 3M's liability onto class members and, ultimately, the Sovereigns' taxpayers.[62] *Second,* the Settlement Agreement's ambiguous and overbroad release provisions may provide 3M a basis to argue that some of the Sovereigns' claims for the remediation or treatment of PFAS are released or precluded by the Settlement, even if state agencies that own or administer public water systems within the class definition opt out of the Settlement. *Third*, preliminary approval of the Settlement may be accompanied by an antisuit injunction[63] that would presumably stay cases brought by various Sovereigns pending in state and federal courts that seek a broad array of public costs and damages outside the ambit of the proposed class action, as well as damages for testing and treatment of public water systems that are within the class action. *Fourth*, the Settlement does not give putative class members reasonable time to evaluate their claims (including determining their respective fair shares using the model Class Counsel advised the Court at the last status conference would be

---

[61] The Sovereigns have sought to raise now the primary concerns with the Settlement Agreement that was submitted with the motion for preliminary approval. As set forth in the accompanying Sovereigns' Opposition, the Sovereigns submit that the Settlement Agreement contains obvious defects that, if not addressed, will ultimately require the denial of final approval of the Settlement. The Sovereigns also, however, reserve the right to submit additional comments to any settlement under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1715, which provides that the Final Approval Order may not be issued earlier than 90 days after CAFA notice is served to Sovereigns with proposed class members.

[62] Indeed, the value of the Settlement in the aggregate, and to each individual proposed class member, is incapable of even rough calculation in light of the uncapped indemnity obligations that potential class members (and, ultimately, the taxpayers) are required to assume under the clear and unambiguous terms of the Settlement Agreement.

[63] This was discussed by the Court at the July 14, 2023 hearing and sought in the settlement proposed by the DuPont entities. Any such antisuit injunction should be narrowly tailored in an effort to avoid impacting the claims of the Sovereigns that are proceeding both inside the AFFF MDL and outside the AFFF MDL in a variety of state and federal courts dealing with PFAS contamination from sources other than AFFF.

available for such purpose), evaluate their indemnity obligations, decide whether to opt out, or submit their claims forms—all of which impair the due process rights of public water suppliers across the country and ultimately would impact the issues identified herein.

### A.     The Sovereigns May Intervene As of Right

The Sovereigns satisfy the four requirements to intervene as of right under Rule 24(a)(2). The Sovereigns' Motion is timely, the Sovereigns have significant protectable interests in this action, denial of the Motion would impair the Sovereigns' ability to protect those interests, and the Sovereigns' interests are not adequately protected by Plaintiffs. The Sovereigns' intervention now prior to preliminary approval will promote efficiency and judicial economy consistent with the U.S. Court of Appeals for the Fourth Circuit's guidance that "liberal intervention is desirable to dispose of as much of a controversy involving as many apparently concerned persons as is compatible with efficiency and due process." *Feller v. Brock*, 802 F.2d 722, 729 (4th Cir. 1986) (internal quotations omitted).

### 1.     The Sovereigns' Motion to Intervene Is Timely

The timeliness of intervention is subject to the Court's discretion. *See Gould*, 883 F.2d at 286. This Motion is timely because it was filed just three weeks after Plaintiffs moved for class certification and preliminary approval of the Settlement and within the time allotted by the Court to respond to the motion for preliminary approval.[64] Prior to 3M's disclosure of the proposed Settlement through a filing with the SEC on June 22, 2023 and Plaintiffs' motion for preliminary approval on July 3, 2023 the Sovereigns were unaware of the Settlement's major flaws—namely, that the Settlement (1) encompasses some of the same public water systems, non-AFFF

---

[64] *See* Pls.' Mot. for Preliminary Approval, ECF No. 3370-1 (July 3, 2023); ECF No. 3408; ECF No. 3442.

contamination, and potentially other impacted resources that are included within some of the Sovereigns' cases; (2) contains overly broad release and indemnity provisions that could be interpreted to impact the Sovereigns' cases; and (3) the potential All Writs Act injunction that could impact the Sovereigns' separate PFAS cases. The Sovereigns, consistent with their duties and responsibilities as public authorities, have acted diligently to understand the terms of the proposed Settlement since the filing of the motion for preliminary approval and the Settlement documents on July 3, 2023 and the July 14, 2023 Status Conference that addressed the proposed Settlement. The Sovereigns acted promptly to evaluate the complex settlement, sought an extension of time to do so which the Court granted in part, and promptly conferred with Proposed Class Counsel in an effort to try to resolve their concerns. The Sovereigns have also concurrently filed their Opposition, detailing their concerns within the time allotted. Given the length and complexity of the proposed Settlement, the Sovereigns sought to intervene "as soon as it became clear" that the proposed Settlement could impair their interests. *United Airlines, Inc. v. McDonald*, 432 U.S. 385, 386 (1977); *see also United States v. Carpenter*, 298 F.3d 1122, 1125 (9th Cir. 2002) (intervention timely where proposed intervenors "acted as soon as they had notice" that settlement terms agreed to through confidential mediation were "contrary to their interests"); *Benjamin ex rel. Yock v. Dep't of Pub. Welfare of Pa.*, 701 F.3d 938, 948 (3d Cir. 2012) (intervention proper where intervenors "moved to intervene after they had received notice of the Settlement Agreement signed by the parties"); *Outdoor Amusement Bus. Ass'n v. Dep't of Homeland Sec.*, No. ELH-16-1015, 2017 WL 2778820, at *9 (D. Md. June 26, 2017) (intervention was timely "some ten months after the suit was initiated" in part because "public access to" relevant case information was "not available to Movants").

Intervention will not cause undue delay. The Sovereigns filed this Motion within the time allotted by the Court to oppose class certification and preliminary approval of the Settlement.[65] The Sovereigns' intervention promotes efficiency and judicial economy by allowing the Sovereigns to present their objections to the Settlement now before the Court decides whether to grant preliminary approval and notice is mailed to the proposed class. Conversely, denying intervention would risk undue delay and expense by delaying consideration of potential problems with the Settlement until after notice is sent to class members. In sum, intervention is timely.

### 2.     The Sovereigns Have Significant Protectable Interests in This Action

The Sovereigns have significant protectable interests in this action justifying intervention because they may "stand to gain or lose" based upon how the Settlement could be interpreted. *Teague v. Bakker*, 931 F.2d 259, 261 (4th Cir. 1991). An interest can be "significantly protectable" even though it is "contingent upon the outcome of other pending litigation." *Id.*

*First*, the Sovereigns have an interest in the success of the PFAS claims they have asserted or intend to assert in separate lawsuits against 3M. The proposed Settlement could be interpreted to impact these claims, in part because 3M could argue that the Settlement's overbroad release provisions could apply to or preclude certain portions of the Sovereigns' claims against 3M. *See* Sovereigns' Opposition at 13–15. For that reason, the Sovereigns may "stand to . . . lose" recoveries that they seek through their lawsuits. *See id.* Moreover, the Settlement's overbroad indemnification clause could be interpreted to give 3M the right to sue public water suppliers, including those located in each Sovereigns' States, to satisfy any judgment other plaintiffs (like personal injury plaintiffs) may obtain against 3M, rendering the Settlement largely illusory. Practically speaking, that indemnification clause could thus be interpreted to allow 3M to mostly

---

[65] *See* ECF No. 3408; ECF No. 3442.

exit the picture, leaving everyone else, including Sovereigns, state agencies, public water suppliers, the public, and ratepayers, responsible for cleaning up 3M's pollution. That potential outcome clearly implicates the Sovereigns' interests in ensuring their claims against 3M remain capable of shifting the cost onto 3M of addressing PFAS contamination caused by 3M.

*Second*, the Sovereigns have "significantly protectable interest[s]" at stake in this action because they have sued or intend to sue 3M as trustees of natural resources, as property owners, in their *parens patriae* capacities on behalf of all of their citizens or subdivisions, and/or pursuant to their statutory, constitutional, common law, and other authorities and powers to protect public health and the environment in their states. *See supra* Part II.A. The Sovereigns seek to recover for PFAS contamination of natural resources in addition to public drinking water systems, including groundwater, surface waters, private drinking water wells, soils, and other impacted natural resources, like locations near wastewater treatment plants, landfills, industrial sites, and biosolid land application sites. *See Id.* The Sovereigns' standing to sue to remedy pollution demonstrates a protectable interest under Rule 24(a)(2).[66] In this way, the Sovereigns' cases encompass broader harms than just PFAS contamination of public water systems, and a potential All Writs Act injunction could stay those Sovereigns' entire cases. *See* Sovereigns' Opposition at 16–17.[67]

---

[66] *See N.C. Green Party v. N.C. State Bd. of Elections*, 619 F. Supp. 3d 547, 562 (E.D.N.C. 2022) ("While the intervenors need not establish Article III standing to demonstrate they have a protectable interest in this action, an interest sufficient to demonstrate injury-in-fact for standing purposes likely suffices to show a protectable interest under Rule 24(a)(2)."), *dism'd*, No. 22-1830, 2022 WL 18586807 (4th Cir. Aug. 30, 2022); *N.C. State Conf. of NAACP v. Cooper*, 332 F.R.D. 161, 165 (M.D.N.C. 2019). *Cf. Savannah Riverkeeper v. U.S. Army Corps of Eng'rs*, No. 9:12-610-RMG, 2012 WL 13008326, at *2 (D.S.C. Aug. 14, 2012) (Gergel, J.) ("It is well settled that a state may have sufficient interest in 'preserving its sovereign territory' from environmental injury to support standing.").

[67] The effects of an All Writs Act injunction would be especially severe for Vermont's non-AFFF case to which Vermont has devoted substantial resources and time; that has been litigated in state court for over four years; that has a fact discovery deadline in early October, 2023; and that is scheduled to be trial ready in October 2024.

Importantly, some of the Sovereigns have exercised their rights to sue 3M based in part on their *parens patriae* authority and other laws authorizing them to seek damages for testing and treatment of their public drinking water. *See, e.g.*, *State v. Exxon Mobil Corp.*, 126 A.3d 266, 290 (N.H. 2015) (upholding judgment for State awarding damages for, inter alia, costs of monitoring and treating public water systems and holding that the "State was the proper party to bring suit against the MTBE defendants, because it has a quasi-sovereign interest in protecting the health and well-being, both physical and economic, of its residents with respect to the statewide water supply" (internal quotations omitted)). Courts in other recent pollution cases have held that states have standing to bring *parens patriae* lawsuits to remedy statewide contamination, including in public drinking water wells owned by municipalities. *See State v. Exxon Mobil Corp.*, 406 F. Supp. 3d 420, 470 (D. Md. 2019) ("The State brings this suit for the widespread contamination of its waters. This is an injury that is properly redressed in *parens patriae*."); *Rhode Island v. Atl. Richfield Co.*, 357 F. Supp. 3d 129, 135, 144 (D.R.I. 2018) (suit for statewide contamination of public drinking water wells; upholding trespass claim: "While possessory interests are usually for individual owners themselves to protect, when the harm to such interests is as widespread as alleged in the State's complaint, it counts as injury not just to the affected individuals, but to the state as a whole.").

Courts have held that states seeking to protect their *parens patriae* and proprietary interests have a sufficient protectable interest and satisfy the other factors for intervention as of right. *See Aziz v. Trump*, 231 F. Supp. 3d 23, 29 (E.D. Va. 2017) ("[T]he Commonwealth has an interest in the subject matter of the litigation both as parens patriae and as the proprietor of numerous public universities."); *Zimmerman v. GJS Grp., Inc.*, No. 2:17–cv–00304–GMN–GWF, 2017 WL 4560136, at *7–8 (D. Nev. Oct. 11, 2017) (holding that Nevada had the right to intervene in case

involving alleged discrimination given its *parens patriae* standing to "protect the interests of its residents and resident businesses when they are subjected to a systematic abuse of federal anti-discrimination laws"); *People of the State of Cal. v. United States*, 180 F.2d 596, 600 (9th Cir. 1950) (holding in water rights case that the "State of California is entitled to intervene as of right" in its "capacity as parens patriae"). The "Supreme Court has repeatedly held that the states have a right to appear as parens patriae regardless of the rights of individual and private appropriators or users of water." *People of the State of Cal.*, 180 F.2d at 601. This is because the "requirements for *parens patriae* standing are substantially similar to the second, third and fourth factors used in determining intervention by right under Rule 24(a)." *Zimmerman*, 2017 WL 4560136, at *5. *Parens patriae* and proprietary interests are significant protectable interests.

*Third*, the Sovereigns have a strong interest in ensuring the Settlement's terms are fair, adequate, and reasonable for the public water providers affected by the Settlement. Although the Sovereigns are not putative class members, they have significant environmental, public health, and pecuniary interests in intervening to ensure that putative class members located within the Sovereigns' States receive funds sufficient to treat PFAS contamination in their water supplies, and that the Sovereigns' quasi-sovereign interests are vindicated. *See Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*, 458 U.S. 592, 607 (1982).[68] For example, California law treats water pollution as a "matter[] of statewide concern" because it presents sweeping issues "beyond the scope of inquiry, legislation, or enforcement by local government." CAL. GOV'T. CODE § 12600.

---

[68] In an analogous California state court context, the People would have an unconditional *right* to intervene in such a scenario. The California Legislature has vested its Attorney General with special authority concerning the protection of the People's natural resources. *See* CAL. GOV'T CODE § 12606 ("The Attorney General *shall* be permitted to intervene in any judicial or administrative proceeding in which facts are alleged concerning pollution or adverse environmental effects that could affect the public generally." (emphasis added)).

28

Vermont holds its groundwater resources in trust for all citizens of the state, and the Vermont General Assembly has declared that it "is the policy of the State that the State shall protect its groundwater resources to maintain high-quality drinking water."[69] The Maine Legislature likewise has declared that the "protection of ground water resources is critical to promote the health, safety and general welfare of the people of the State"; that aquifers "provide a significant amount of the water used by the people of the State" and are "critical elements in the hydrologic cycle"; and that an "adequate supply of safe drinking water is a matter of the highest priority and that it is the policy of the State to protect, conserve and maintain ground water supplies in the State." 38 Me. Stat. § 401. The Sovereigns' interests in public health, natural resources, and drinking water, and the economic impacts of PFAS contamination in their States are, therefore, implicated by the proposed Settlement. *See Alfred L. Snapp & Son,* 458 U.S. at 607; *see also Ohio Valley Env't Coal., Inc. v. McCarthy*, 313 F.R.D. 10, 23 (S.D. W. Va. 2015) ("The economic injury directly threatened by one possible outcome of the litigation gives rise to a significantly protectable interest.").

*Fourth*, the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715, expressly recognizes the Sovereigns' interests in CAFA settlements like this one, which implicate the rights of the Sovereigns' citizens, and entitles the Sovereigns to "provide a check against inequitable settlements." *California v. Intelligender, LLC*, 771 F.3d 1169, 1172 (9th Cir. 2014) (citation omitted). This is especially so "if the settlement appears unfair to some or all class members or inconsistent with applicable regulatory policies." *In re Flonase Antitr. Litig.*, 879 F.3d 61, 64 (3d Cir. 2017) (quoting S. Rep. No. 109-14, at 31 (2005)).

The Sovereigns have significant protectable interests.

---

[69] 10 Vt. Stat. Ann. § 1390(3); *see also id.* § 1390(5) ("It is the policy of the State that the groundwater resources of the State are held in trust for the public.").

3.    **Denial of the Motion Would Impair the Sovereigns' Ability to Protect Their Interests**

The Sovereigns' interests will be impaired if intervention is denied because "disposing of the action may as a practical matter impair or impede the [Sovereigns'] ability to protect [their] interest[s]." FED. R. CIV. P. 24(a)(2). Intervention is justified where "disposition of the action would put the movant at a 'practical disadvantage' in protecting its interest" or the settlement could be interpreted to "preclude" the "would-be intervenor from protecting its interest later." *McCarthy*, 313 F.R.D. at 26 (citation omitted). This factor "requires a practical analysis, rather than a legal one." *Id.* The Sovereigns' interests in successfully prosecuting their claims against 3M may be impaired absent intervention.

*First*, as explained above, denying intervention may impair the Sovereigns' environmental, public health, and pecuniary interests in assuring that public water providers located within the Sovereign States obtain sufficient funds to treat PFAS contamination in their water supplies. As explained in the Sovereigns' concurrently filed Opposition, the Sovereigns are concerned that the proposed Settlement could be interpreted to require public water systems to indemnify 3M in perpetuity for any liabilities arising from PFAS that entered their water supplies, even if those indemnities far exceed the consideration received under the Settlement, rendering the Settlement amount illusory and incalculable. *See* Sovereigns' Opposition at 10–13.

*Second*, the proposed Settlement Agreement's overbroad release clause may well place the Sovereigns at a "practical disadvantage" as they litigate their claims against 3M, because 3M could argue (erroneously) that the Settlement releases certain of the Sovereigns' claims against 3M regarding natural resources and locations other than public drinking water. Since 3M could argue that the Settlement precludes certain of the Sovereigns' claims against 3M, the Sovereigns face a risk that the Settlement could be interpreted to "preclude" their ability to recover for certain PFAS

30

contamination sought by the Sovereigns' separate lawsuits. *See McCarthy*, 313 F.R.D. at 26. Although the Sovereigns would disagree with any such interpretation, Rule 24(a)(2) requires a "practical analysis, rather than a legal one," *id.*, and there is no question that the Sovereigns' interest in the success of their claims practically may be impaired by a proposed settlement that leaves the door open for 3M to assert such sweeping defenses.

*Third*, certain Sovereigns' *parens patriae* and public trust lawsuits, including but not limited to those brought by Maine, New Hampshire, and Vermont, already seek remedies to address contamination of public water systems that are included within the proposed class that extends to both non-AFFF and AFFF contamination. As a result, Vermont's non-AFFF, state court case (which is close to trial ready) could be subject to any antisuit injunction that is applied to cases implicating proposed class members, notwithstanding that Vermont's prosecution of that case will not impede the proposed Settlement here. Similarly, Maine's, New Hampshire's, and other Sovereigns' prosecution of their AFFF and non-AFFF cases will not impact this Settlement but could also nonetheless be stayed. To be clear, the Sovereigns' AFFF cases are not solely limited to water contamination claims, but an injunction could unintentionally stay the entirety of these cases as well.

The Sovereigns' ability to protect their interests will be impaired absent intervention.

### 4.    The Sovereigns' Interests Are Not Adequately Represented by the Plaintiffs

The fourth factor is satisfied where "representation of [the movant's] interest '*may be*' inadequate." *United Guar. Residential Ins. Co. of Iowa v. Phila. Sav. Fund Soc.*, 819 F.2d 473, 475 (4th Cir. 1987) (emphasis in original) (quoting *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972)). Representation may be inadequate where the "existing parties' interests are not completely identical to and may come into conflict with [the intervenor's] own

interests." *Vision Church v. Vill. Of Long Grove*, No. 03 C 5761, 2004 WL 742133, at *4 (N.D. Ill. Apr. 6, 2004). The burden to make this showing is "minimal." *See Virginia v. Westinghouse Elec. Corp.*, 542 F.2d 214, 216 (4th Cir. 1976); *N.C. State Conf. of NAACP v. Cooper*, 332 F.R.D. 161,168 (M.D.N.C. 2019). Plaintiffs' interest in securing approval of the Settlement conflicts with the Sovereigns' interests in prosecuting their PFAS cases and in modifying the Settlement's provisions that may adversely affect the Sovereigns.

*First*, the Sovereigns' PFAS lawsuits seek damages regarding natural resources that are broader than drinking water and extend to locations in addition to public drinking water wells, including private drinking water wells, wastewater treatment plants, landfills, hazardous waste sites, biosolid land application sites, and other non-water natural resources. None of this additional relief is sought by Plaintiffs. Thus, the Sovereigns' "broader" interests are not adequately represented by Plaintiffs and resolution of Plaintiffs' claims "might leave some of the [Sovereigns'] grievances unaddressed." *Aziz*, 231 F. Supp. 3d at 29. The differences in the Sovereigns' interests and remedies mean that the Sovereigns' litigation strategy and positions in settlement negotiations necessarily diverge from those of Plaintiffs.

*Second*, Plaintiffs are not authorized to represent the Sovereigns' interests. "Generally, no person or entity other than the Attorney General of a state is authorized to represent that state in any court or in any case." *Walker v. Liggett Grp., Inc.*, 982 F. Supp. 1208, 1210–11 (S.D. W. Va. 1997). To the extent that counsel for Plaintiffs "purport to represent the interests of the Sovereigns,

these counsel act *ultra vires*" under those Sovereigns' laws. *Id.* at 1211.[70] Indeed, Attorneys General in some of the Sovereigns' jurisdictions have the right to preclude public water systems from separately litigating when the State has already filed a case seeking damages to those systems. *See State v. City of Dover*, 891 A.2d 524, 531–32 (N.H. 2006). The Attorneys General object to Plaintiffs representing the Sovereigns' interests and seek to intervene to safeguard their own interests.

### B.    The Court Should Also Grant Permissive Intervention

The Court also should grant the Sovereigns permissive intervention pursuant to Rule 24(b) because the Motion is timely, the Sovereigns share common questions of law and fact with Plaintiffs' claims in this action, and intervention will not result in undue delay or prejudice to Plaintiffs. *See* FED. R. CIV. P. 24(b)(1)(B), (b)(3); *see also Carcaño v. McCrory*, 315 F.R.D. 176, 178 (M.D.N.C. 2016) (same). Permissive intervention "should be construed liberally in favor of intervention." *Savannah Riverkeeper v. U.S. Army Corps of Eng'rs*, No. 9:12-610-RMG, 2012 WL 13008326, at *2 (D.S.C. Aug. 14, 2012). For the reasons set forth in Part IV.A, *supra*, the Sovereigns have satisfied the requirements for permissive intervention.

*First*, there can be no reasonable dispute regarding the Motion's timeliness. Second, the Sovereigns' claims share common questions of law and fact with Plaintiffs' claims regarding drinking water contamination caused by 3M's PFAS products.[71] The Sovereigns have an interest

---

[70] *Cf. In re McKesson Governmental Entities Average Wholesale Price Litig.*, 767 F. Supp. 2d 263, 271 (D. Mass. 2011) (explaining that "as sovereigns, states have a strong interest in individually controlling the prosecution of their own cases" and that "most states have laws providing the Attorney General of the state with exclusive authority to represent the state in litigation[,]" and finding that "a class action that includes state agencies is not a superior way in which to conduct this litigation").

[71] Although the AFFF MDL was originally initiated to address PFOA and PFOS contamination resulting from the use of AFFF, *see In re Aqueous Film-Forming Foams Prod. Liab. Litig.*, 357 F.

in this action given their obligations as trustees for natural resources under the public trust doctrine. Indeed, each Sovereign is responsible for submerged land underneath navigable waters in its territories and this protection extends to fisheries. The Sovereigns' *parens patriae*, public trust, and similar interests demonstrate that permissive intervention is warranted. *See Aziz*, 231 F. Supp. 3d at 29 (granting permissive intervention to state that "has an interest in the subject matter of the litigation both as parens patriae and as the proprietor of numerous public universities"); *Zimmerman*, 2017 WL 4560136, at *9 (granting permission intervention to state seeking to protect *parens patriae* interests); *PPL Montana, LLC v. Montana*, 565 U.S. 576, 603 (2012) ("[P]ublic trust doctrine . . . concerns public access to the waters above those beds for purposes of navigation, fishing, and other recreational uses.").

*Finally*, the improvements to the Settlement that the Sovereigns seek can be achieved without undue delay or prejudice to Plaintiffs' rights.

## V.     CONCLUSION

Based upon the foregoing, the Sovereigns respectfully request that the Court grant their Motion for Intervention to allow the filing of (1) the Sovereigns' Opposition to Plaintiffs' Motion for Preliminary Approval of Class Settlement, for Certification of Settlement Class and for Permission to Disseminate Class Notice, and (2) the two supplemental oppositions referenced in footnote 5. The Sovereigns also request any other relief to which they are justly entitled.

Dated: July 26, 2023

---

Supp. 3d 1391 (J.P.M.L. 2018), the Settlement is structured to apply to a substantially broader set of PFAS (*see* Settlement Agr. ¶2.47 (defining PFAS to "be as broad, expansive, and inclusive as possible"), having implication for both 3M's AFFF-related PFAS and 3M's non-AFFF related PFAS contamination. This is part of the concern the Sovereigns have: the breadth and scope of the Settlement and its release.

Respectfully submitted,

**STATE OF ARIZONA**
**KRISTIN K. MAYES**
**Arizona Attorney General**
State of Arizona
*/s/ Curtis Cox*
Curtis Cox
Assistant Attorney General
2005 N. Central Avenue
Phoenix, Arizona 85004
Telephone: (602) 542-7781
Environmental@azag.gov

**THE PEOPLE OF THE STATE OF CALIFORNIA**
**ROB BONTA**
**Attorney General of California**
EDWARD H. OCHOA (SBN 144842)
Senior Assistant Attorney General
JEREMY M. BROWN (SBN 269159)
Supervising Deputy Attorney General
NICHOLAS G. CAMPINS (SBN 238022)
BRENDAN J. HUGHES (SBN 333690)
Deputy Attorneys General
1515 Clay Street, 20th Floor
Oakland, CA 94612
Telephone: (510) 879-0801
Fax: (510) 622-2270
Email: Nicholas.Campins@doj.ca.gov
*/s/ Nicholas G. Campins*
NICHOLAS G. CAMPINS
Deputy Attorney General
*Attorneys for the People of the State of California, ex rel.*
*Rob Bonta, Attorney General of California*

35

**STATE OF COLORADO**
**PHILIP J. WEISER**
**ATTORNEY GENERAL**
*/s/ Heather Kelly*
PHILIP J. WEISER, Attorney General
LESLIE EATON
HEATHER KELLY
CARRIE NOTEBOOM
First Assistant Attorneys General
Ralph L. Carr Judicial Center
1300 Broadway, 10th Floor
Denver, CO 80203
Telephone: (720) 508-6000
FAX: (720) 508-6040
*Counsel of Record

**STATE OF CONNECTICUT**
**WILLIAM TONG**
**Attorney General**
*/s/ Matthew I. Levine*
Matthew I. Levine
Deputy Associate Attorney General
Christopher Patrick Kelly
Assistant Attorney General
165 Capitol Avenue
Hartford, CT 06106
Telephone: 860-808-5052
Email: Matthew.Levine@ct.gov
           Christopher.Kelly@ct.gov

**DISTRICT OF COLUMBIA**
**BRIAN L. SCHWALB**
**Attorney General for the District of Columbia**
JENNIFER C. JONES
Deputy Attorney General
Public Advocacy Division
ARGATONIA D. WEATHERINGTON
Chief, Social Justice Section
By: */s/ Wesley Rosenfeld*
WESLEY ROSENFELD
Assistant Attorney General
LAUREN CULLUM
Special Assistant Attorney General
Office of the Attorney General for the District of Columbia
400 Sixth Street NW, 10th Floor
Washington, D.C. 20001
Tel: 202.368.2569
wesley.rosenfeld1@dc.gov
lauren.cullum@dc.gov

EDELSON PC
By: */s/ Jimmy Rock*
JIMMY ROCK
1255 Union St NE, 7th Floor
Washington, D.C. 20002
Tel: 202.270.4777
jrock@edelson.com


**STATE OF HAWAII**
**ANNE E. LOPEZ**
**Attorney General**
*/s/ Wade H. Hargrove III*
WADE H. HARGROVE, III
Deputy Attorney General
465 S. King Street, #200
Honolulu, Hawaii 96813
(808) 587-3050
Wade.H.Hargrove@hawaii.gov

**STATE OF MAINE**
**AARON M. FREY**
**ATTORNEY GENERAL**
*s/ Matthew F. Pawa*
Matthew F. Pawa
Benjamin A. Krass
Seeger Weiss LLP
1280 Centre Street, Suite 230
Newton Centre, MA 02459
(617) 641-9550
MPawa@seegerweiss.com
BKrass@seegerweiss.com

Scott Boak
Robert Martin
Assistant Attorneys General
6 State House Station
Augusta, Maine 04333
(207) 626-8566
(207) 626-8897
Scott.Boak@maine.gov
Robert.Martin@maine.gov

Kyle J. McGee
Viola Vetter
Jason H. Wilson
Grant & Eisenhofer, P.A.
123 Justison Street
Wilmington, DE 19801
(302) 622-7000
kmcgee@gelaw.com
vvetter@gelaw.com

**STATE OF MARYLAND**
**ANTHONY G. BROWN**
**Attorney General of Maryland**
*/s/ Patricia V. Tipon*
PATRICIA V. TIPON
Attorney No. 0806170244
JULIE KUSPA
Attorney No. 0912160009
MATTHEW ZIMMERMAN
Attorney No. 8005010219
Assistant Attorneys General
Office of the Attorney General
1800 Washington Boulevard, Suite 6048
Baltimore, Maryland 21230
patricia.tipon@maryland.gov
matthew.zimmerman@maryland.gov
julie.kuspa@maryland.gov
(410) 537-3061
(410) 537-3943 (facsimile)

ADAM D. SNYDER
Attorney No. 9706250439
Assistant Attorney General
Office of the Attorney General
301 West Preston Street, Suite 1101
Baltimore, Maryland 21201
adam.snyder1@maryland.gov
(410) 767-1409

**COMMONWEALTH OF MASSACHUSETTS**
**ANDREA JOY CAMPBELL**
**Attorney General**
*/s/ Nancy E. Harper*
**NANCY E. HARPER**
**Assistant Attorney General and Chief, Environmental**
**Protection Division**
I. ANDREW GOLDBERG
LOUIS DUNDIN
JILLIAN RILEY
Assistant Attorneys General
OFFICE OF THE ATTORNEY GENERAL
One Ashburton Place, 18th Floor
Boston, Massachusetts 02108
(617) 727-2200
(617) 727-9665 (facsimile)
betsy.harper@mass.gov
andy.goldberg@mass.gov
louis.dundin@mass.gov
jillian.riley@mass.gov
*Attorneys for Plaintiff Commonwealth of Massachusetts*


**STATE OF MINNESOTA**
**OFFICE OF THE ATTORNEY GENERAL**
**KEITH ELLISON, ATTORNEY GENERAL**
*/s/ Peter N. Surdo*
Special Assistant Attorney General
Office of the Minnesota Attorney General
445 Minnesota Street
Suite 1400
St. Paul, Minnesota 55101
peter.surdo@ag.state.mn.us
Phone: (651) 757-1061

**STATE OF NEW HAMPSHIRE**
By its attorney,
JOHN M. FORMELLA,
ATTORNEY GENERAL
*/s/ Christopher G. Aslin*
Christopher G. Aslin, NH Bar #18285
Senior Assistant Attorney General
Environmental Protection Bureau
NEW HAMPSHIRE DEPT. OF JUSTICE
33 Capitol Street
Concord, NH 03301
Tel: (603) 271-3650
christopher.g.aslin@doj.nh.gov

**STATE OF NEW JERSEY**
**MATTHEW J. PLATKIN**
**Attorney General**
By: */s/ Gwen Farley*
GWEN FARLEY
Deputy Attorney General
Division of Law
Environmental Enforcement &
Environmental Justice Section
Hughes Justice Complex
25 Market Street, 7th Floor
P.O. Box 093
Trenton, NJ 08625-0093
Telephone: (609) 376-2740
Gwen.Farley@law.njoag.gov

**STATE OF NEW MEXICO**
**RAÚL TORREZ**
**ATTORNEY GENERAL**
*/s/ William Grantham*
**William Grantham**
**Assistant Attorney General**
408 Galisteo Street
Santa Fe, NM 87501
wgrantham@nmag.gov
Phone: (505) 717-3520

41

**STATE OF NEW YORK**
**LETITIA JAMES**
**ATTORNEY GENERAL**
*/s/ Muhammad Umair Khan*
Muhammad Umair Khan
Senior Advisor & Special Counsel
Umair.Khan@ag.ny.gov
Philip Bein
Mihir Desai
Assistant Attorneys General
Philip.Bein@ag.ny.gov
Mihir.Desai@ag.ny.gov
Office of the New York Attorney General
28 Liberty St.
New York, NY 10005
(212) 416-6685

**OFFICE OF THE ATTORNEY GENERAL**
**COMMONWEALTH OF THE NORTHERN**
**MARIANA ISLANDS**
*/s/ Keisha Blaise*
**Keisha Blaise**
**Assistant Attorney General**
keisha_blaise@cnmioag.org
Hon. Juan A. Sablan Memorial Bid., Fl. 2
Caller Box 10007, Capitol Hill
Saipan, MP 96950
Telephone: (670) 237-7500

**STATE OF OHIO**
**ATTORNEY GENERAL DAVE YOST**
By:*/s/ Kyle J. McGee*
Kyle J. McGee
Viola Vetter
Jason Wilson
Grant & Eisenhofer P.A.
123 Justison Street
Wilmington, Delaware 19801
Tel.: (302) 622-7000
kmcgee@gelaw.com
vvetter@gelaw.com
jwilson@gelaw.com
*Attorneys for State of Ohio*

42

**COMMONWEALTH OF PENNSYLVANIA**
**MICHELLE A. HENRY**
**ATTORNEY GENERAL**
*/s/ James A. Donahue, III*
James A. Donahue, III
First Deputy Attorney General
Pennsylvania Office of Attorney General
Strawberry Square
Harrisburg, PA 17120
717-787-3391
jdonahue@attorneygeneral.gov

***FOR THE COMMONWEALTH OF PUERTO RICO***
**DOMINGO EMANUELLI HERNÁNDEZ**
**SECRETARY OF JUSTICE**
**DEPARTMENT OF JUSTICE OF PUERTO RICO**
By: /s/ Guarionex Diaz Martinez
GUARIONEX DÍAZ MARTÍNEZ
Assistant Secretary
Department of Justice
PO Box 9020192
San Juan, PR 00902-0192
Tel. 787.721.2900
gdiaz@justicia.pr.gov

EDELSON PC
By: */s/ Jimmy Rock*
JIMMY ROCK
1255 Union St NE, 7th Floor
Washington, D.C. 20002
Tel: 202.270.4777
jrock@edelson.com

**STATE OF RHODE ISLAND,**
**PETER F. NERONHA**
**ATTORNEY GENERAL**
By Its Attorneys,
*/s/ Alison Hoffman*
ADI GOLDSTEIN (Bar No. 6701)
MIRIAM WEIZENBAUM (Bar No. 5182)
SARAH W. RICE (Bar No. 10588)
ALISON HOFFMAN (Bar No. 9811)
DEPARTMENT OF THE ATTORNEY GENERAL
150 South Main Street
Providence, RI 02903
Tel. (401) 274-4400
agoldstein@riag.gov
mweizenbaum@riag.gov
srice@riag.gov
ahoffman@riag.gov

**JONATHAN SKRMETTI** (BPR No. 31551)
**ATTORNEY GENERAL AND REPORTER**
**STATE OF TENNESSEE**
*/s/ Sohnia Hong*
Sohnia W. Hong (BPR No. 17415)
Deputy Attorney General
Amanda E. Callihan (BPR No. 035960)
Senior Assistant Attorney General
Office of the Tennessee Attorney General
Environmental Division
P.O. Box 20207
Nashville, Tennessee 32707
Sohnia.Hong@ag.tn.gov
Amanda.Callihan@ag.tn.gov

**STATE OF TEXAS**
**ANGELA COLMENERO**
**PROVISIONAL ATTORNEY GENERAL**
*/s/ Katie B. Hobson*
KATIE B. HOBSON
Assistant Attorney General
State Bar No. 24082680
BRITTANY WRIGHT
Assistant Attorney General
State Bar No. 24130011
KELLIE E. BILLINGS-RAY
Deputy Chief
State Bar No. 24042447
Environmental Protection Division
P. O. Box 12548, MC-066
Austin, Texas 78711-2548
Tel: (512) 463-2012
Katie.Hobson@oag.texas.gov
Brittany.Wright@oag.texas.gov
Kellie.Billings-Ray@oag.texas.gov

**STATE OF VERMONT**
**CHARITY R. CLARK**
**ATTORNEY GENERAL**
*/s/ Laura B. Murphy*
Laura B. Murphy
Assistant Attorney General
109 State Street
Montpelier, VT 05609-1001
(802) 828-3186
laura.murphy@vermont.gov

Matthew F. Pawa
Benjamin A. Krass
Seeger Weiss LLP
1280 Centre Street, Suite 230
Newton Centre, MA 02459
(617) 641-9550
MPawa@seegerweiss.com
BKrass@seegerweiss.com

Kyle J. McGee
Viola Vetter
Jason H. Wilson
Grant & Eisenhofer, P.A.
123 Justison Street
Wilmington, DE 19801
(302) 622-7000
kmcgee@gelaw.com
vvetter@gelaw.com

**STATE OF WISCONSIN**
**JOSHUA L. KAUL**
**Attorney General of Wisconsin**
*/s/ Bradley J. Motl*
BRADLEY J. MOTL
Assistant Attorney General
State Bar #1074743
SARAH C. GEERS
Assistant Attorney General
State Bar #1066948
Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 267-0505 (Motl)
(608) 266-3067 (Geers)
(608) 267-2778 (Fax)
motlbj@doj.state.wi.us
geerssc@doj.state.wi.us

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 26, 2023, I electronically filed the foregoing document with the Clerk of the Court using the Court's CM/ECF system, which shall send notice to all counsel of record.

Dated: July 26, 2023                                    */s/ Nicholas G. Campins*
                                                        NICHOLAS G. CAMPINS