**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| IN RE: AQUEOUS FILM-FORMING FOAMS PRODUCTS LIABILITY LITIGATION | MDL No. 2-18-mn-2873-RMG<br><br>This document relates to:<br><br>*City of Camden, et al. v 3M Co.,* Case No. 2:23-cv-03147-RMG |

**SUPPLEMENTAL MEMORANDUM OF LAW BY STATES OF MAINE AND VERMONT IN OPPOSITION TO MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT**

## INTRODUCTION

Vermont and Maine ("States" or "Litigating States") have moved to intervene in this proposed settlement matter and are submitting this separate brief because of the possibility that the Court may issue an injunction staying lawsuits outside the MDL using language that poses a risk of inadvertently staying the States' cases.[1] Although there is no provision calling for a stay of other proceedings in the proposed 3M settlement, the Court has indicated it is inclined to issue a stay sua sponte as it has been asked to do in the DuPont settlement.[2] The DuPont language would stay cases brought "by or on behalf of" class members. In the event a stay is ordered in the 3M settlement, the States respectfully urge the Court to exclude their pending PFAS cases from any such stay, consistent with express language in the proposed DuPont settlement excluding States generally from the settlement and the representations of proposed class counsel to this Court with respect to the proposed 3M Settlement.[3] The injuries alleged in State non-AFFF PFAS cases pending in state courts around the country—such as those brought by Vermont and Maine—include substantial PFAS contamination that is outside public water systems (*e.g.*, in private wells, at cleanup sites, and at landfills). Yet both cases also include claims for damages to public drinking water pursuant to (among other authorities) the parens

---

[1] Vermont and Maine have also moved to intervene in order to join the States' and Sovereigns' Omnibus Opposition to Plaintiffs' Motion for Preliminary Approval ("Omnibus Brief").

[2] *See* Ex. 1 (July 14, 2023 Status Conf. Tr.) at 22:5-15 ("is there likely to be objection if I also enter [a stay order] in 3M?").

[3] *See* DuPont Settlement ¶ 2.45 (defining "releasing person" as "(e) any Person, other than a State or the federal government, that is legally responsible for funding (by statute, regulation, other law, or contract) a Settlement Class Member or has authority to bring a Claim on behalf of a Settlement Class Member, or to seek recovery for harm to a Public Water System within the Settlement Class or the ability of such system to provide safe or compliant Drinking Water"); Ex. 1 (July 14, 2023 Status Conf. Tr.) at 33:18-21 ("THE COURT: First of all, under the proposed [3M] settlement with the water districts, are the states included? MR. LONDON: No, they're not.").

patriae doctrine and the States' authority to protect public trust resources (including drinking water). For this reason, broad language in a stay order—like the language from the DuPont settlement—might be interpreted to cover the States' suits.[4]

A stay that arguably (if inadvertently) covers the States' suits would be improper for at least three reasons. First, broadly enjoining non-AFFF cases brought by States that are not part of this MDL would, it is respectfully submitted, exceed the Court's authority under the All Writs Act, 28 U.S.C. § 1651, and violate the Anti-Injunction Act, 28 U.S.C. § 2283. Second, even assuming the Anti-Injunction Act does not categorically prohibit it, such an injunction is not necessary to aid this Court's jurisdiction over the settlement and would violate principles of comity and federalism. Third, it would be particularly inappropriate to issue such an injunction at the preliminary approval stage, before the States are even aware of which public water systems have decided to remain in the class or have any opportunity to exclude recovery for such systems from their cases, if they choose to do so.

The States do not mean to suggest that they understood the Court's remarks to manifest a definite intent to stay their suits. Rather, they submit this brief to inform the Court of certain facts and caselaw, and because clarity on the scope of any stay order—should one be issued—is of vital importance. The States also note that they have had productive discussions with counsel for the proposed class and 3M on this issue and expect that some or all of the objections raised herein likely will be resolved through continued discussions. But until such resolution occurs, it is necessary for the States to make timely objection to any injunction that might issue.

---

[4] To be clear: the States do not concede that a stay patterned off of the DuPont settlement would, in fact, cover them. The States present these concerns in an abundance of caution.

## BACKGROUND

### I.     The Vermont and Maine lawsuits

Vermont filed two lawsuits against 3M, DuPont, and other entities in June 2019. One lawsuit seeks remedies for PFAS contamination attributable to AFFF sources; the other seeks remedies for PFAS contamination attributable to non-AFFF sources.[5] Vermont's AFFF complaint was removed and transferred to the MDL being managed by this Court. Vermont's non-AFFF suit, pending since 2019 in the Vermont Superior Court, is scheduled to be trial-ready by October 2024. Significant financial resources and thousands of staff and attorney hours have been invested in the diligent prosecution of this matter, in which Vermont seeks recovery for PFAS contamination (from non-AFFF sources) in not only public water systems but also private wells, landfills, hazardous sites, biosolids application sites, wastewater treatment facilities, and in natural resources beyond drinking water.

Maine has taken the same approach, filing separate AFFF and non-AFFF complaints in its state courts. Maine filed its cases in March 2023, so those actions are not as far advanced as Vermont's non-AFFF lawsuit. Maine's AFFF complaint has been removed to federal court and transferred to this Court.[6] After a failed removal attempt by 3M, the non-AFFF case has been remanded to state court, following an order entered today by the District of Maine.[7] Maine's

---

[5] *See* Compl. ¶ 17, ECF No. 1-1, in *State of Vermont v. 3M Company, et al.*, No. 2:19-cv-02281-RMG (D.S.C.); Second Am. Compl. ¶ 13, in *State of Vermont v. 3M Co., et al.,* No. 547-6-19 Cncv (Vt. Super. Ct. Chittenden Cnty.) (Motion to Intervene Ex. 8).

[6] *See* Compl., ECF No. 1-3, in *State of Maine v. 3M Company, et al.*, No. 2:23-cv-02573-RMG (D.S.C.).

[7] ECF No. 47, in *State of Maine v. 3M Company, et al.*, No. 2:23-cv-00210-JAW (D. Me.). The States' joint intervention motion was in the process of filing before the district court issued its remand order, and so could not be updated to reflect the grant of this motion.

3

non-AFFF suit, like Vermont's, also seeks recovery for PFAS contamination (from non-AFFF sources) in not only public water systems but also private wells, landfills, hazardous sites, biosolids application sites, wastewater treatment facilities, and in natural resources beyond drinking water.

## II.     The proposed injunction to stay other litigation

The States assume that any stay order in the 3M settlement matter would resemble the proposed order in the DuPont matter.  The DuPont proposed order would stay all PFAS-related litigation (whether related to AFFF or not) brought "by or on behalf of" a member of the settlement class against DuPont, unless and until the class member opts out of the settlement. This language, without further clarification excluding States, could be misread to cover State parens patriae and public trust suits, threatening to result in protracted disputes regarding the scope of any stay and thus prejudicing the States.

## ARGUMENT

## I.     This Court should not stay the States' suits.

The Court's power to issue an injunction staying state court litigation under the All Writs Act is limited by the Anti-Injunction Act.  *Kay Co., LLC v. Equitable Prod. Co.*, 27 F.4th 252, 260 (4th Cir. 2022).  The Anti-Injunction Act makes clear that a court "may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."  28 U.S.C. § 2283.  The Act "is a necessary concomitant of the Framers' decision to authorize, and Congress' decision to implement, a dual system of federal and state courts."  *Smith v. Bayer Corp.*, 564 U.S. 299, 306 (2011) (cleaned up).  "[F]or over two hundred years, the Act has helped to define our nation's system of federalism."  *Emps. Res. Mgmt. Co. v. Shannon*, 65 F.3d 1126, 1130 (4th Cir. 1995).  The Act's exceptions "are narrow and are not to be enlarged by

4

loose statutory construction." *Smith*, 564 U.S. at 306 (cleaned up). "These limitations rest on the fundamental constitutional independence of the States and their courts and reflect Congress' considered judgment as to how to balance the tensions inherent in such a system." *Kay*, 27 F.4th at 260 (cleaned up). "Any doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed." *Id.* (cleaned up).

Here, there is not an Act of Congress expressly authorizing an injunction. Nor is enjoining state court litigation necessary "to protect or effectuate [this Court's] judgments" at the preliminary approval stage because there is no "judgment" yet entered. *Harvey Specialty & Supply, Inc. v. Anson Flowline Equip. Inc.*, 434 F.3d 320, 323 (5th Cir. 2005). The "in aid of jurisdiction" exception also does not apply because the Court does not need to enjoin entire State cases in order to effectuate and preside over the 3M (or DuPont) settlement. There is a circuit split on the scope of this exception, but under either test an injunction is unnecessary.

The rule as stated by the Sixth, Eighth, and Tenth Circuits recognizes that this exception is designed to ensure federal courts can maintain jurisdiction in the limited set of cases—like *in rem* or interpleader—that must be decided by one court because they would otherwise lead to conflicting or inconsistent obligations over private property rights. *In re Fed. Skywalk Cases*, 680 F.2d 1175, 1183 (8th Cir. 1982); *In re Life Invs. Ins. Co. of Am.*, 589 F.3d 319, 330 (6th Cir. 2009); *Tooele Cnty. v. United States*, 820 F.3d 1183, 1188 (10th Cir. 2016).[8] The Fourth Circuit has not taken a position on this test, but a plurality of the U.S. Supreme Court recognized this limitation was the correct reading of the statute in *Vendo Co. v. Lektro-Vend Corp.*, 433 U.S.

---

[8] School desegregation cases, where a school may face irreconcilably conflicting orders from competing state and federal suits, are another example of when this exception is put in play. *Swann v. Charlotte-Mecklenburg Bd. of Ed.*, 501 F.2d 383, 384 (4th Cir. 1974).

5

623, 641 (1977) (plurality); *see also* Chemerinsky, Federal Jurisdiction § 11.2.3.[9] A consequence of this application is that "*in personam* actions in federal and state court may proceed concurrently, without interference from either court, and there is no evidence that the exception to [the Anti-Injunction Act] was intended to alter this balance." *Vendo*, 433 U.S. at 642. This action, and the States' actions, are unquestionably *in personam* cases.

The contrary position—*i.e.*, that MDL courts may enjoin other litigation to avoid disruption of a settlement under this exception—is primarily based on policy arguments about the importance of an MDL settlement. Respectfully, this theory would constitute an unwritten "MDL exception" to the Anti-Injunction Act. *See In re Nat'l Prescription Opiate Litig.*, 956 F.3d 838 (6th Cir. 2020) (holding that the important and valid interest in MDL efficiency does not allow divergence from Federal Rules of Civil Procedure, which are based upon the Rules Enabling Act); *In re Korean Air Lines Co., Ltd.*, 642 F.3d 685, 700 (9th Cir. 2011) (holding that MDL interests do not trump normal right to amend complaint). While Congress is permitted to add an MDL exception to the statute, this Court should follow the Supreme Court's guidance that the Anti-Injunction Act's exceptions "are narrow and are not to be enlarged by loose statutory construction." *Smith,* 564 U.S. at 306 (cleaned up); *accord In re Fed. Skywalk Cases*, 680 F.2d at 1183 ("legitimate concern" regarding difficulty of mass tort case management does not justify ignoring Anti-Injunction Act).

---

[9] The DuPont settlement approval papers incorrectly contend that the Fourth Circuit has accepted the contrary view, which extends the "in aid of jurisdiction" exception to *in personam* litigation. It has not. In the case Movants cite, the Fourth Circuit merely held that it was not plainly erroneous to issue an anti-suit injunction in an *in personam* case, given the appellant's total failure to raise the issue below. *In re Am. Honda Motor Co., Inc., Dealerships Rels. Litig.*, 315 F.3d 417, 440 (4th Cir. 2003).

But even if the Court were to adopt the position that federal courts may enjoin parallel *in personam* litigation in state court, an injunction would still be improper, because the States' lawsuits pose no threat to the proceedings in this Court. Courts have emphasized that such injunctions are proper only in response to a direct challenge to the federal court's resolution of a complex case—a threat that is simply not present here.

Courts that have issued injunctions of parallel state-court proceedings consider three factors: (1) the "nature of the federal action," (2) whether the state court actions "present a sufficient threat to the federal action," and (3) "principles of federalism and comity," insofar as a "primary aim of the Anti–Injunction Act is to prevent needless friction between the state and federal courts." *In re Diet Drugs*, 282 F.3d 220, 234 (3d Cir. 2002). In this inquiry, the party seeking the injunction bears a heavy burden of persuasion, because (as noted above) any doubts are "resolved in favor of permitting the state courts to proceed in an orderly fashion to finally determine the controversy." *Atl. Coast Line R. Co. v. Bhd. of Locomotive Engineers*, 398 U.S. 281, 295, 297 (1970).

The second factor is critical here. The sort of disruption sufficient to justify an injunction against parallel state proceedings must be extreme, and here there is none. For example, in *American Honda* the federal court had previously approved a class settlement agreement, and the approval order required all future disputes about the agreement to be adjudicated exclusively by that federal court—yet a state court purported to decide a dispute about the settlement, "in flagrant disregard of the district court's exclusive jurisdiction to resolve such interpretative question[s]." *In re Am. Honda Motor Co., Inc., Dealerships Rels. Litig.*, 315 F.3d at 438. Similarly, federal injunctions have issued to prevent state courts from issuing orders declaring that certain groups are not included within the settlement class being certified by the federal

7

court, as a "preemptive strike" against a prior federal decision establishing the class. *In re Diet Drugs*, 282 F.3d at 237 (quotation marks omitted); *Carlough v. Amchem Prod., Inc.*, 10 F.3d 189, 203 (3d Cir. 1993). There is no analogous dispute in the States' actions regarding the meaning of terms in the settlement agreements, and since the States are plainly intended to be excluded from those settlements as counsel for the proposed class has represented to the Court, there cannot conceivably be such a dispute presented for resolution in the state courts.

Critically, when this injunction was proposed in the DuPont action, plaintiffs could not even identify the actions covered by the injunction: at the recent status hearing, counsel for plaintiffs was unable to tell the Court anything in response to the Court's question about "what kind of litigation [is occurring] elsewhere" that would be stayed by the injunction, let alone how these cases might affect proceedings in this Court.[10] The proposed injunction is an extraordinarily broad and unnecessary feature of the settlement.

Moreover, the Vermont and Maine actions show that there is nothing in those actions that threaten proceedings here. No judgment is imminent in either case, and there is no pending request for an interlocutory order in either case that would conflict with the settlement proposed here. Although 3M and DuPont will have to continue litigating the Vermont and Maine actions while this settlement remains pending, that is the unexceptional consequence of resolving only a subset of the claims against them. This feature of our legal system does not constitute any threat, "extraordinary" or otherwise, to proceedings in this Court. Importantly, this is not a situation where the injunction would stay litigation that is inevitably going to be dismissed anyway as a

---

[10] *See* Ex. 1 (July 14, 2023 Status Conf. Tr.) at 20:23-21:16 (plaintiffs' counsel responding to question about cases covered by the injunction: "That's a good question that I don't know if I know"). Nor could DuPont, which has insisted on the provision with the problematic language. *Id.* (DuPont's counsel: "I am not prepared" to answer).

8

result of the settlement—on the contrary, these actions seek relief for (among other things) PFAS in multiple natural resources and facilities at different locations beyond public water systems, such as wastewater treatment facilities, cleanup sites, landfills, and private wells.  In other words, the States' claims should continue in all events; but even a temporary halt caused by an injunction issued at the preliminary approval stage would severely prejudice the States' cases and likely undo Vermont's hard earned trial-ready date of 2024.  In short, an injunction would throw a wrench in proceedings elsewhere while being unnecessary to protect this Court from any infringement on its authority to resolve the claims before it.

The third factor—"principles of federalism and comity"—also weighs heavily against issuing the proposed injunction.  These concerns would be particularly acute were the Court to stay certain *parens patriae* and public trust suits in state or federal court outside of this MDL. *See Ackerman v. ExxonMobil Corp.*, 734 F.3d 237, 252 (4th Cir. 2013) ("principles of comity, federalism, and equity always restrain federal courts' ability to enjoin state court proceedings[.]").  The State PFAS lawsuits—brought by States in their capacities as trustees of State natural resources and in their *parens patriae* capacities on behalf of their citizens— implicate paramount State interests.  The "prerogative of *parens patriae* is inherent in the supreme power of every State" and includes the ability to protect the "health and well-being" of its citizens. *Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez*, 458 U.S. 592, 600-08 (1982).[11]  That goes double for environmental suits, where "the state has an interest independent of and behind the titles of its citizens, in all the earth and air within its domain.  It has the last

---

[11] *Cf. Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 22 n.22 (1983) ("considerations of comity make us reluctant to snatch cases which a State has brought from the courts of that State, unless some clear rule demands it"); *Nevada v. Bank of Am. Corp.*, 672 F.3d 661, 676 (9th Cir. 2012) (remanding *parens patriae* case to state court; where an attorney general brings such a claim, "sovereign protection from removal arises in its most powerful form").

9

word as to whether its mountains shall be stripped of their forests and its inhabitants shall breathe pure air." *State of Ga. v. Tennessee Copper Co.*, 206 U.S. 230, 237 (1907).  These State interests have caused the States to invest extensive resources in litigating suits to hold accountable those responsible for PFAS contamination in their States.  For Vermont, its state courts have also invested significant judicial resources in Vermont's non-AFFF lawsuit.

In sum, a stay as applied to the Litigating States' cases would go beyond the lawful scope of the Anti-Injunction Act and All Writs Act, and would unnecessarily and substantially prejudice the Litigating States.

## II.     No injunction should issue before public water suppliers have been notified of the settlement or had a chance to opt out.

A final reason that an injunction should not issue is this: putative class members will not have received notice or had an opportunity to decide whether to remain in the class at the time any preliminary approval order would be entered.  Meanwhile, States' *parens patriae* and public trust actions would arguably be stayed immediately, even though they concern many damages claims that are not addressed in the proposed settlement, and before States are even aware of which public water systems have decided to remain in the class or have any opportunity to exclude recovery for such systems from their cases, if they choose to do so. Under the injunction proposed by DuPont, such a stay would endure until this Court enters a final judgment.  During that period, the PFAS lawsuits of Vermont and Maine potentially could be put on ice for months, and Vermont's approaching trial-ready date would be in jeopardy, to the detriment of State and her people.  This would burden two sovereign states without any legitimate benefit to the class or the defendants.  For all these reasons, the Court should at a minimum wait to issue any stay until a reasonable period after the end of the opt-out period.

## CONCLUSION

The Court should not issue an order staying other lawsuits against 3M and DuPont. In the alternative, if any such order does issue, the stay should not apply to the States' lawsuits in particular, and the order should not issue until a reasonable time after the end of the opt-out period.

Dated: July 26, 2023                             Respectfully submitted,

**STATE OF MAINE**
**AARON M. FREY**
**ATTORNEY GENERAL**
*s/ Matthew F. Pawa*
Matthew F. Pawa
Benjamin A. Krass
Seeger Weiss LLP
1280 Centre Street, Suite 230
Newton Centre, MA 02459
(617) 641-9550
MPawa@seegerweiss.com
BKrass@seegerweiss.com

Nigel Halliday (*pro hac vice* to be filed)
Seeger Weiss LLP
55 Challenger Road, 6th Floor
Ridgefield Park, NJ 07660
(212) 584-0755
nhalliday@seegerweiss.com

Scott Boak
Robert Martin
Assistant Attorneys General
6 State House Station
Augusta, Maine 04333
(207) 626-8566
(207) 626-8897
Scott.Boak@maine.gov
Robert.Martin@maine.gov

Kyle J. McGee
Viola Vetter
Jason Wilson
Grant & Eisenhofer P.A.

11

123 Justison Street
Wilmington, DE 19801
(302) 622-7000
kmcgee@gelaw.com
vvetter@gelaw.com
jwilson@gelaw.com

**STATE OF VERMONT**
**CHARITY R. CLARK**
**ATTORNEY GENERAL**
*/s/ Laura B. Murphy*
Laura B. Murphy
Assistant Attorney General
109 State Street
Montpelier, VT 05609-1001
(802) 828-3186
laura.murphy@vermont.gov

Matthew F. Pawa
Benjamin A. Krass
Seeger Weiss LLP
1280 Centre Street, Suite 230
Newton Centre, MA 02459
(617) 641-9550
MPawa@seegerweiss.com
BKrass@seegerweiss.com

Nigel Halliday (*pro hac vice* to be filed)
Seeger Weiss LLP
55 Challenger Road, 6th Floor
Ridgefield Park, NJ 07660
(212) 584-0755
nhalliday@seegerweiss.com

Kyle J. McGee
Viola Vetter
Jason Wilson
Grant & Eisenhofer P.A.
123 Justison Street
Wilmington, DE 19801
(302) 622-7000
kmcgee@gelaw.com
vvetter@gelaw.com
jwilson@gelaw.com

12