# EXHIBIT 4

**DECLARATION OF ANDREW ALTEVOGT**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | |
|---|---|
| IN RE: AQUEOUS FILM-FORMING FOAMS PRODUCTS LIABILITY LITIGATION | MDL No. 2-18-mn-2873-RMG<br><br>This Document Relates to:<br>*City of Camden, et al. v. 3M Company,*<br>Case No. 2:23-cv-03147-RMG |

## DECLARATION OF ANDREW ALTEVOGT

I, Andrew Altevogt, declare as follows:

1.      I am an Assistant Deputy Director in the California State Water Resources Control Board's Division of Drinking Water ("State Water Board"), and one of my primary roles is assisting small, failing water systems to ensure that their customers are provided safe and affordable drinking water in compliance with the federal and state Safe Drinking Water Acts. I am a California registered Civil Engineer, and I have a Ph.D. in Hydrologic Sciences. I have been with the Division of Drinking Water for 3 years and have been with the State Water Board for 10 years. As part of this role, I have authority to issue orders for the appointment of administrators, which are issued to economically disadvantaged community water systems that the Board has deemed unable to deliver safe drinking water as required by the federal and state Safe Drinking Water Acts due to operational constraints, funding issues, and management issues.

2.      Section 116686 of the California Health and Safety Code provides the authority for me to order the appointment of an administrator, under specified conditions, to operate failing public water systems that are often in rural communities whose residents already face disproportionate, adverse environmental conditions. Administrators appointed under section 116686 (hereafter, "administrators") have similar powers and duties to a receiver appointed by a court to take over a failing public water system, but by state law, administrators can apply for

1

state grant funding for operations, maintenance, improvements, and even the cost of the administration itself. This funding is not available to public water systems that are not under the control of an administrator. Access to these funds is crucial in many instances to facilitate the provision of safe and affordable drinking water. To qualify for administrator funding and for me to have authority to order the appointment of an administrator, among other things, the public water system must serve a "disadvantaged community," which is defined by statute with reference to median household income.

3.      State Water Board staff determines the operational constraints and management deficiencies that lead to the appointment of an administrator on a case-by-case basis, given limited resources. In addition to the statutory requirements, staff examine factors such as system financial heath, system governance, and management capacity. In practice, we have named administrators to small systems with under 300 service connections that do not have economies of scale to address drinking water violations with their own resources and management structures.

4.      Since January 2020, the State Water Board has begun the process for the appointment of an administrator for the 16 Community Water Systems listed in **Exhibit A**. We have completed the process for six of these systems, which now have administrators running the systems.  The State Water Board effectively directs operations of those Community Water Systems through its appointment of administrators and provision of grant funding.

5.      Of the 2,502 drinking water systems in California with fewer than 3,300 service connections, 282 (just over 10%) have sampled for PFAS compounds, with 124 systems (44%) detecting PFAS compounds. Once the federal EPA has adopted its proposed National Primary Drinking Water Standard for PFAS under the federal Safe Drinking Water Act, which will set a

Maximum Contaminant Level for PFAS ("PFAS MCL"), and all systems are required to monitor and sample for PFAS compounds, I expect the numbers of detections to increase.

6.    The sixteen systems referenced above and listed in Exhibit A are the first group that we have taken through the administrator process. Based on my knowledge of failing systems in California, within the next five years there are likely to be more than 100 additional systems that could be candidates for the appointment of an administrator.  I anticipate that some of those systems will be subject to randomized testing for PFAS under U.S. EPA's Fifth Unregulated Contaminant Monitoring Rule ("USMR-5").   Thus far, our program has been constrained by a shortage of both qualified administrators and funding.

7.    Depending on the level chosen for the upcoming PFAS MCL, and based on preliminary sampling results, there will likely be a large number of small water systems that will need options for dealing with PFAS contamination. They will need to treat their water to reduce PFAS levels to below the MCL to comply with the Safe Drinking Water Act, which may be costly. I expect that the vast majority of these systems will not have the wherewithal to address PFAS contamination without additional funding. Based on my experience, these systems will also have the hardest time applying for and accessing the funds from any settlement reached in the matter under consideration, and some portion of these will also need to have administrators appointed to help them get to a long-term solution. The appointment of administrators for these systems will divert administrators from other critical needs. It will also increase the need for greater funding from the state. If the state budget does not allow for such an increase, the State Water Board will have to choose between providing the needed funding for addressing PFAS contamination in administrator-run systems or reducing funding to other eligible disadvantaged public water systems.

8. Furthermore, in my judgment, even public water systems that do not qualify for an administrator will have increased financial burdens to comply with the upcoming PFAS MCL and indeed may not be able to comply with that MCL when it is promulgated, i.e., they serve populations that do not meet the "disadvantaged" criteria to qualify for an administrator but the systems are still too under-resourced to comply with the new MCL. I worry that public water systems that do not meet the administrator criteria—and therefore cannot access the resources associated with that program—but are nevertheless still struggling will have difficulty complying with the PFAS MCL, and hence the federal and state Safe Drinking Water Acts, if the funding for the settlement under consideration is insufficient. This would impact the State Water Board's ability to ensure compliance with the Safe Drinking Water Act and to ensure that Californians are drinking safe water. I can foresee that a significant number of systems currently deemed as failing and otherwise "at-risk" will likely face non-compliance with the PFAS MCL and hence the Safe Drinking Water Act in this regard if the settlement figure is insufficient.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 16th day of July, 2023, at _Sacramento_____, California.

_____

Andrew Altevogt

# EXHIBIT A

## Systems Under the State Water Resources Control Board's Administrator Program

| Water System Name | Administrator Appointment Date | Status | County | Primary Issue(s) | Population | Service Connections |
|---|---|---|---|---|---|---|
| North Edwards Water District | 12/22/2020 | Failing | Kern | Arsenic | 944 | 217 |
| Six Acres Water Company | 10/10/2022 | Failing | Sonoma | Surface water treatment | 66 | 22 |
| East Orosi CSD | 10/21/2022 | Failing | Tulare | Nitrate | 932 | 103 |
| Keeler Community Service District | 2/9/2023 | Failing | Inyo | Arsenic | 66 | 84 |
| Cazadero Water Company | 3/13/2023 | Failing | Sonoma | Surface water treatment | 250 | 159 |
| Teviston Community Service District | 6/15/2023 | Failing | Tulare | 1,2,3-TCP | 343 | 135 |
| Athal Mutual Water Company | | Failing | Kern | 1,2,3-TCP | 150 | 55 |
| Lake Morena Views Mutual Water Company | | Failing | San Diego | Monitoring, Operations | 360 | 125 |
| Las Deltas Mutual Water System | | Failing | Fresno | TTHM | 375 | 107 |
| NorCal Water Works | | Potentially At-Risk | Tehama | Monitoring, Operations | 45 | 17 |
| Old River Mutual Water Company | | Failing | Kern | Uranium | 128 | 14 |
| Sierra Vista Water Association | | Failing | Tulare | Nitrate, 1,2,3-TCP | 44 | 13 |

1

| | | | | | |
|---|---|---|---|---|---|
| South Kern Mutual Water Company | Failing | Kern | Uranium, 1,2,3-TCP | 32 | 15 |
| Valley Ford Water Association | Failing | Sonoma | Nitrate, TTHM, HAA5 | 61 | 23 |
| West Water Company | Potentially At-Risk | Sonoma | Bacteriological, Water Works Standards | 40 | 13 |
| William Fisher Memorial Water Company | Failing | Kern | Arsenic | 56 | 16 |