**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | |
|---|---|
| **IN RE: AQUEOUS FILM-FORMING FOAMS PRODUCTS LIABILITY LITIGATION** | )    **MDL No. 2:18-mn-2873-RMG** <br> ) <br> ) <br> )   **This Document Relates To:** <br> )   *Tyco Fire Prods., LP v. AIU Ins. Co., et al.* <br> )   Civil Action No. 2:23-cv-02384-RMG <br> ) |

**DEFENDANTS ZURICH AMERICAN INSURANCE COMPANY AND
AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY'S
<u>MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS</u>**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

I.    INTRODUCTION ................................................................................................ 2

II.   PROCEDURAL HISTORY ................................................................................ 5

III.  STATEMENT OF FACTS ................................................................................. 8

IV.   ARGUMENT ....................................................................................................... 11

    A.    This Court Should Dismiss the Tyco Complaint as Improperly Direct-
        Filed on the MDL Docket ....................................................................... 11

    B.    This Court Lacks Personal Jurisdiction over ZAIC and AGLIC ........................... 17

        1.    There is No General Jurisdiction Over ZAIC or AGLIC in South
            Carolina .......................................................................................... 18

        2.    There is No Specific Jurisdiction Over ZAIC and AGLIC in South
            Carolina for Tyco's Nationwide Coverage Claims ................................. 19

    C.    Tyco Lacks Standing to Sue Under South Carolina's Door-Closing Statute ....... 23

    D.    The Complaint Should be Dismissed Under the Doctrine of Forum Non
        Conveniens ............................................................................................. 24

    E     The Court Should Decline to Exercise Jurisdiction Over this Declaratory
        Judgment Action Based on the Doctrine of Abstention ........................................ 25

V.    CONCLUSION ................................................................................................... 25

## **TABLE OF AUTHORITIES**

*Aviation Assocs. & Consultants, Inc. v. Jet Time, Inc.*
    303 S.C. 502, 402 S.E.2d 177 (S.C. 1991) ...........................................................19

*Bristol-Myers Squibb Co. v. Superior Ct. of CA, San Francisco Cty.,*
    137 S. Ct. 1773 (2017) ...........................................................................................17

*Daimler AG v. Bauman,*
    571 U.S. 117 (2014) ...............................................................................................17

*Fidrych v. Marriott Int'l, Inc.,*
    952 F.3d 124 (4th Cir. 2020) ...........................................................................17, 18

*Halscott Megaro, P.A. v. McCollum,*
    66 F.4th 151 (4th Cir. 2023) ....................................................................................2

*Hanover Ins. Co. v. Castle Hill Studios, LLC*, No.
    3:18-cv-00072, 2019 WL 302510 (W.D. Va. Jan. 23, 2019) ..................................1

*In re Chinese-Manufactured Drywall Prods. Liab. Litig.,*
    MDL No. 2047, Doc. 257 (JPML June 15, 2010) ..................................................15

*In re Farmers Ins. Exch. Claims Reps. Overtime Pay Litig.,*
    No. MDL 33-1439, 2008 WL 4763029 (D. Or. Oct. 28, 2008)..............................16

*In re Jan. 2021 Short Squeeze Trading Litig.,*
    580 F. Supp. 3d 1243 (S.D. Fla. 2022) ..................................................................15

*In re Packaged Ice Antitrust Litigation,*
    No. 08-MDL-1952, 2011 WL 6178891 (E.D. Mich. Dec. 12, 2011) .....................16

*Johnson v. James B. Nutter & Co.,*
    438 F. Supp. 3d 697 (S.D. W. Va. 2020) .................................................................2

*Lexington Ins. Co. v. Hotai Ins. Co. Ltd.,*
    938 F.3d 874 (7th Cir. 2019) .................................................................................21

*Mallory v. Norfolk S. Ry,*
    __ S. Ct. __, 2023 U.S. LEXIS 2786 (U.S. June 27, 2023) ...................................18

*Maseng v. Lenox Corp.*,
    483 F . Supp. 3d 360 (D.S.C. 2020) .......................................................................18

*McCall v. State Farm, Mutual Automobile Company*,
    359 S.C. 372 (Ct. App. 2004) ...............................................................................23

*Rose Acre Farms, Inc. v. N.C. Dep't of Env't & Nat. Res.*,
    131 F. Supp. 3d 496 (E.D.N.C. 2015) .....................................................................1

*Rossman v. State Farm Mut. Auto. Ins. Co.*,
    832 F.2d 282 (4th Cir. 1987) .........................................................................20, 21

*Snell v. Golden Rule Ins. Co.*,
    No. C.A. 6:08-3555-MHM, 2009 WL 185723 (D.S.C. Jan. 23, 2009) ...................23

*State Auto. Mut. Ins. Co. v. Lennox*,
    422 F. Supp. 3d 948 (D. Md. 2019) ........................................................................2

## FEDERAL STATUTES

J.P.M.L. R. 6.2 .................................................................................................14, 15

J.P.M.L. R. 7.1 .......................................................................................................14

28 U.S.C. § 1407 .........................................................................................10, 11, 16

## STATE STATUTES

Fed. R. Civ. P. 12(b) ................................................................................................1

S.C. Code Ann. § 15-5-150................................................................................1, 22

S.C. Code Ann. § 36-2-802...................................................................................17

Defendants Zurich American Insurance Company ("ZAIC") and American Guarantee and Liability Insurance Company ("AGLIC") (for the purposes of this Motion only, ZAIC and AGLIC are referred to collectively as "Zurich"), through their undersigned counsel and pursuant to Rules 12(b)(1), 12(b)(2), and 12(b)(6) of the Federal Rules of Civil Procedure, and S.C. Code Ann. § 15-5-150  hereby respectfully move this Court to dismiss the Complaint filed by Tyco Fire Products

LP ("Tyco") in its entirety.[1]  This insurance coverage matter was improperly direct-filed before this Court in the AFFF MDL in an attempt to deprive Zurich of its due process rights, in a forum in which Zurich is not subject to specific personal jurisdiction for this dispute.  The case should be dismissed in favor of a first-filed and more comprehensive action addressing the same coverage issues pending in Wisconsin state court (the "Wisconsin Action ").

## I.    **INTRODUCTION**

The Complaint filed by Tyco and pending before this Court is the **_third_** iteration of the same insurance coverage lawsuit, and the second filed by Tyco in a forum lacking jurisdiction over ZAIC and AGLIC, for this specific insurance dispute.  The first lawsuit, filed October 7, 2022 in the Court of Common Pleas of Richland County, South Carolina – despite the coverage issues being almost entirely relating to PFAS –  was filed **_by Tyco_** on South Carolina's **_asbestos_** docket.  _See_ Docket Sheet, _Ansul, LLC, et al. v. Ace Am. Ins. Co., et al._ (Case No. 2022-CV-4005289), attached hereto as **Exhibit A** (the "South Carolina State Court Case").[2]  After extensive litigation on the issue of personal jurisdiction, former Chief Justice of the South Carolina Supreme Court Jean Toal dismissed the South Carolina State Court Case.  While the litigation was on-going, a

---

[1]    Fourth Circuit courts have addressed the Court's discretionary jurisdiction over declaratory judgment claims under either Rule 12(b)(1) or Rule 12(b)(6).  _Compare Hanover Ins. Co. v. Castle Hill Studios, LLC_, No. 3:18-cv-00072, 2019 WL 302510, at *1, 3 (W.D. Va. Jan. 23, 2019) (considering Rule 12(b)(1) motion), _with Rose Acre Farms, Inc. v. N.C. Dep't of Env't & Nat. Res._, 131 F. Supp. 3d 496, 500 (E.D.N.C. 2015) (considering Rule 12(b)(6) motion).  Likewise, it is unclear whether challenges based on South Carolina's door-closing statute and Tyco's direct filing in the MDL are considered under Rule 12(b)(1) or Rule 12(b)(6).  Zurich therefore moves under both Rules.

[2]    In reviewing a motion to dismiss, "a court may properly take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment." _Halscott Megaro, P.A. v. McCollum_, 66 F.4th 151, 157 (4th Cir. 2023); _see also, e.g._, _Johnson v. James B. Nutter & Co._, 438 F. Supp. 3d 697, 706 (S.D. W. Va. 2020); _State Auto. Mut. Ins. Co. v. Lennox_, 422 F. Supp. 3d 948, 960 (D. Md. 2019) (same).

Federal Insurance Company ("Federal") filed a second case in the Circuit Court of Marinette County, Wisconsin (the "Wisconsin Action"). Tyco – formerly known as Ansul – maintains its principal place of business in Marinette, Wisconsin and is at home in that jurisdiction. Tyco did not move to dismiss the Wisconsin Action, and indeed, the Wisconsin Action has been proceeding apace, with the entry of a comprehensive case management order, the service and production of discovery, and the filing of a dispositive motion. *See* Docket Sheet, *Century Indemnity Co., et al. v. Tyco Fire Products LP, et al.* (Case No. 2022-cv-000283, Marinette County, WI, Dec. 16, 2022), attached hereto as **Exhibit B**.[3]

Zurich was therefore surprised when, in the midst of ongoing and comprehensive coverage litigation in Wisconsin, Tyco filed the instant Complaint. All of the same personal jurisdictional defects which led to the dismissal of the South Carolina State Court Case are still present and unchanged. Moreover, there are even more procedural and jurisdictional issues presented by this Complaint. This Court should dismiss this Complaint for any or all of the following reasons:

1. Tyco improperly direct-filed this Complaint in this Court's Aqueous Form-Filming Foam ("AFFF") Multi-District Litigation ("MDL"), which does not extend to insurance coverage;

2. There is no specific personal jurisdiction over either ZAIC and AGLIC in South Carolina for an insurance coverage dispute with Tyco, a non-resident of South Carolina;

3. South Carolina's door-closing statute bars non-resident plaintiffs such as Tyco from bringing an action such as this one, which has limited connection to the state;

---

[3]     The Court previously ordered Tyco to file copies of all pleadings, motions, and orders from the Wisconsin Action. As Tyco's filing demonstrates, Zurich has answered the Wisconsin Action and asserted cross-claims against Tyco with respect to the same coverage issues Tyco now asserts in this action. *See* American Guarantee and Liability Company and Zurich American Insurance Company's Answer, Affirmative Defenses, and Cross Claim, ECF No. 5 at Ex. 39. Tyco did not move to dismiss those cross-claims, but instead filed an answer. ECF No. 5 at Ex. 64.

4. The doctrine of forum non conveniens strongly suggests that the first-filed, far more comprehensive, and more advanced Wisconsin Action – in Tyco's home jurisdiction – is the more efficient forum to litigate the identical disputes; and

5. This Court should exercise its discretion and decline to accept jurisdiction over a case without a federal law question, where there is an identical state court declaratory judgment action already pending.

First, Tyco's decision to file this action directly in the MDL was improper. The Joint Panel on Multi-District Litigation ("JPML") did not create an insurance coverage MDL, and this action would not be a tag-along action under the JPML Order creating this AFFF MDL. Moreover, this insurance coverage action cannot be filed directly in the MDL under this Court's Case Management Order No. 3 ("CMO3") because CMO3's provisions in this regard simply permits actions that would be tag-along actions to be filed directly in this MDL, to avoid the need to have cases transferred by the JPML. *See* Case Management Order No. 3, *In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, No. 2:18-mn-02873-RMG, Doc. 72 ¶ 25 (D.S.C. Apr. 26, 2019). This coverage action is not a tag-along action – it is an entirely new category of cases far different from those this Court is currently administering. Likewise, Tyco violated the JPML's Rules and the Court's Local Rules by filing this action directly in the MDL rather than following ordinary procedures, such as filing the case in a court of proper jurisdiction, and then seeking transfer of that matter to the MDL – a circumstance under which the defendants would have had an opportunity to object to such a transfer. By failing to do so, Tyco has not only violated the JPML's Rules, but also the Defendants' due process rights.

Second, this Court lacks personal jurisdiction over ZAIC and AGLIC, in the same way the South Carolina state court did. General jurisdiction is improper, as ZAIC and AGLIC are not incorporated in and do not maintain their principal places of business in South Carolina. *See* Compl. ¶¶ 12, 20 (AGLIC and ZAIC are each New York corporations with their principal places

of business in Illinois).  Moreover, there is no specific jurisdiction over ZAIC and AGLIC here because none of Tyco's insurance coverage claims arise out of ZAIC or AGLIC's contacts with South Carolina.

Third, South Carolina's door-closing statute bars non-resident plaintiffs, like Tyco, from suing foreign corporations – like ZAIC and AGLIC –  for causes of action that arose outside of the state and lack a nexus to South Carolina.  That is the exact circumstance presented here.

Fourth, even absent the MDL and jurisdictional defects, the doctrine of forum non conveniens weigh strongly in favor of continuing the Wisconsin Action to completion.  Not only is the Wisconsin Action free of jurisdictional defects – indeed, it is in Tyco's home state and Tyco did not move to dismiss it –it is also the first filed case, is far more comprehensive (it includes 21 insurers to this action's 9), and involves state law insurance questions.

Lastly, the Court should abstain from the present action in favor of the Wisconsin Action. This Court should abstain from exercising jurisdiction over a declaratory judgment action involving purely questions of state insurance law, when there is a parallel, more comprehensive, state case pending that includes more parties than before this court.  Those parties' and Zurich's rights are impaired if that Wisconsin Action is effectively stayed in favor of this one. Indeed, under settled law, considerations of federalism and comity suggest this Court should exercise its discretion and dismiss this case in favor of the Wisconsin Action.

For the reasons set forth below, as well as those set forth in the Motion to Dismiss by the AIG Insurers (which Zurich incorporates wholly herein), ZAIC and AGLIC respectfully request that this Court dismiss the Complaint.

## II.    <u>**PROCEDURAL HISTORY**</u>

As noted in the AIG Insurers Motion to Dismiss ("the AIG Motion"), which Zurich incorporates into this Motion to Dismiss, the procedural history underlying the instant Complaint

is critical to an understanding of this putative action.

This, remarkably, is the *third* lawsuit between Tyco and Zurich (and other carriers) concerning coverage for underlying PFAS claims. Almost ten months ago, when the slate was clean with regard to PFAS coverage litigation, Tyco first sued its insurers *not* in the MDL, which at that point had been pending for more than four years, *not* in its home jurisdiction of Marinette, Wisconsin, where it had litigated for almost a decade with its insurers over environmental claims, but on the South Carolina state court asbestos docket. Tyco did so by bundling thousands of PFAS claims with a handful of unrelated asbestos claims, only *one* of which involved a South Carolina claimant. The Wisconsin Action was thereafter filed by Federal Insurance Company. ZAIC and AGLIC, among others, asserted cross-claims in the Wisconsin Action against Tyco seeking a declaration resolving all PFAS-related coverage issues. Further, Federal secured a temporary preliminary injunction in the Wisconsin Action barring Tyco from suing it in any other forum.

While the insurer defendants' jurisdictional motions to dismiss were pending in the South Carolina state court action, Tyco answered the Wisconsin complaint and cross-claims, negotiated and agreed to a comprehensive case management order through trial, and participated in discovery. At no point has Tyco sought to stay the Wisconsin Litigation, nor requested that Zurich or the other insurers consent to the same.

Ultimately, Chief Justice Toal, faced with two duplicative insurance coverage cases when ruling on the insurers defendants' motions to dismiss, found that the Wisconsin Litigation rather than the South Carolina action pending before her should go forward. She thus dismissed her case, holding:

> A comprehensive coverage action is already pending in Marinette, Wisconsin, which is where Tyco is located. That case deals with the PFAS coverage issues asserted in this action, including the cause of action asserted in this case seeking a declaration regarding coverage for underlying lawsuits filed in Wisconsin alleging environmental

contamination taking place in Marinette, Wisconsin. Because the Wisconsin action is already going forward on the PFAS-related issues, the Court finds that dismissal of this case is appropriate.

See Order at 2, *Ansul, LLC, et al. v. ACE Am. Ins. Co., et al.*, No. 2022-CP-40-05289 (S.C. Ct. Com. Pl. May 22, 2023), attached hereto as **Exhibit C**.

Tyco did not appeal Justice Toal's ruling. Instead, Tyco waited a little over a week and then commenced this *third* action against only a *subset* of its insurers. It also did not include as a co-plaintiff the entity that Tyco previously asserted was a necessary party in the South Carolina State Court Action, TFP QSF, LLC. The South Carolina State Court Action included a second Tyco plaintiff, TFP QSF, LLC, who Tyco alleged had entered into "comprehensive settlements" with certain of Tyco's insurers, resulting in the transfer of certain subrogation and contribution rights to TFP QSF, LLC under the settling insurers' policies. Therefore, according to Tyco, TFP QSF was a necessary party to the case, and it has been named in the Wisconsin Action.

Tyco notably has not included TFP QSF, LLC as a co-plaintiff in the instant Complaint, presumably because CMO-3 contemplated only "Single-Plaintiff Complaints." Had Tyco included the formerly "necessary" TFP QSF, LLC, it likely would have not been able to avoid the proper procedure of filing through the JPML. Likewise, Tyco has plainly not included all of its insurers in its MDL Complaint because doing so would both destroy diversity and run afoul of the preliminary injunction already entered against it in the Wisconsin Action.

Tyco has thus created the present situation. Tyco chose not to originally bring its coverage action within the MDL when it first filed on the *South Carolina asbestos docket* nine months ago, and Tyco chose not to petition the JPML to expand the scope of the AFFF MDL to include insurance coverage disputes. Likewise, Tyco chose not to contest a Wisconsin state court action in its home jurisdiction involving substantially all of Tyco's insurers and the **_more than 100 insurance policies_** under which Tyco has sought coverage in connection with AFFF claims.

Instead, Tyco answered the Complaint and cross-claims, negotiated a comprehensive case scheduling order, and is currently participating in discovery, with certain dispositive motions already having been filed.  But for this Court's request that the Wisconsin court stay proceedings, two additional dispositive motions would have been filed already.[4]

These facts underscore why this Court should abstain under the *Brillhart-Wilton* abstention doctrine set forth in AIG's Motion.  Tyco has deliberately filed this action only to delay or supersede the Wisconsin Action (to which it did not object), and only after its first South Carolina litigation strategy was rejected by Justice Toal.  As courts have noted, application of *Brillhart-Wilton* abstention is especially appropriate where the second-filed suit is the result of forum shopping, which is present in the extreme in this instance.  This Court, respectfully, should reject this gambit by abstaining from jurisdiction here, thus permitting the Wisconsin court to finish its important work started six months ago.

## III.    **STATEMENT OF FACTS**

Zurich adopts and incorporates by reference the Statement of Facts set forth in the AIG Motion, with the exception of the jurisdictional facts relevant to ZAIC and AGLIC set forth herein.

Neither AGLIC nor ZAIC are residents of South Carolina or organized under the laws of this state; both companies are New York corporations with their principal places of business in

---

[4]    Pursuant to an April 17, 2023 Scheduling Order entered in the Wisconsin Action, the Wisconsin court set a deadline of July 31, 2023 for any party to "make a dispositive motion regarding whether any settlement agreement released or did not release any insurance claim that is the subject of this action[.]"  *See* Scheduling Order, ECF No. 5 at Ex. 48.  A full briefing schedule, including oral argument on October 31, 2023, was set for those dispositive motions.

Illinois. Compl. (ECF No. 1) ¶¶ 12, 20. Tyco is likewise not a South Carolina company or resident. *See* Compl. ¶ 10.

Tyco alleges that coverage is owed in connection with thousands of AFFF suits pending against it arising out of underlying lawsuits filed in state and federal courts across the country. Tyco seeks coverage under nine excess policies issued by AGLIC and ZAIC.

With respect to AGLIC, Tyco seeks coverage under the following policies: Policy No. AEC 5087987 00 (Policy Period: October 1, 2004 to October 1, 2005); Policy No. AEC 9260785 00 (Policy Period: June 29, 2007 to October 1, 2008); Policy No. AEC 9260785-01 (Policy Period: October 1, 2008 to October 1, 2009); Policy No. IPR 3792307-00 (Policy Period: October 1, 2011 to October 1, 2012); Policy No. AEC 5834021-00 (Policy Period: October 1, 2012 to October 1, 2013); and Policy No. AEC 5223121-00 (Policy Period: October 1, 2001 to October 1, 2002).[5] Compl. ¶¶ 29, 37. Copies of each of the foregoing policies are attached to the Declarations of John Ferguson, which are attached hereto as **Exhibit D** and **E**.[6]

Policy No. AEC 5223121 00 was issued to Tyco International Inc. at an address in New York. Ex. D ¶ 14. The other AGLIC policies were issued to Tyco International Ltd. at an address in New Jersey. Ex. D ¶ 15; Ex. E ¶ 7. Boston, Massachusetts-based employees of Thomas S. Sears, Inc. negotiated Policy No. IPR 3792307-00 and Policy No. AEC 5834021-00 on Tyco's behalf. Ex. D ¶ 13. New York, New York-based employees of Marsh USA, Inc. negotiated the

---

[5]    The Complaint erroneously identifies Policy No AEC 5223121-00 as a "Zurich American" policy. We assume this was merely a drafting error; that policy was issued by AGLIC.

[6]    Policy No. AEC 9260785-01 was one of the three AGLIC and ZAIC policies Tyco named in the South Carolina State Court Case. John Ferguson executed two Declarations in support of AGLIC and ZAIC's motion to dismiss filed in that case, dated December 12, 2022, attached hereto as **Exhibit E** (AGLIC Policy) and **F** (ZAIC Policies). Mr. Ferguson's July 28, 2023 Declaration, attached hereto as **Exhibit D**, includes copies of the additional policies Tyco has named in the instant Complaint, and addresses jurisdictional facts with respect to those policies.

other AGLIC policies on Tyco's behalf.   Ex. D  ¶ 12;  Ex. E  ¶ 6.  All of the AGLIC Authorized

Representatives identified on the AGLIC policies were based in New York, New York.  Ex. D  ¶¶

9-11;  Ex. E  ¶ 5.  None of the AGLIC policies reference South Carolina, were negotiated in South

Carolina, or delivered in South Carolina, and AGLIC does not maintain an office in the state.  Ex.

D  ¶¶  16-17;  Ex. E  ¶¶ 8-9.

       With respect to ZAIC, Plaintiffs seek coverage under Policy Nos. EUO 8472802-00 (Policy

Period: July 1, 1997 to July 1, 1998), EUO 8472802-01 (Policy Period: July 1, 1998 to July 1,

1999), and EUO 8472802-02 (Policy Period: July 1, 1999 to July 1, 2000).  Compl. ¶ 37.  To date,

Zurich's review of available records has not located a copy of Policy No. EUO 8472802-02.  Policy

No. EUO 8472802-00 was issued to Tyco International Ltd. at an address in New Hampshire.  Ex.

F ¶ 9.  Policy No. EUO 8472802-01 was issued to Tyco International U.S., Inc. at an address in

Florida. Ex. F ¶ 10.  Massachusetts and New York-based employees of J & H Marsh & McLennan,

Inc. negotiated the policies on behalf of Tyco.  Ex. F ¶¶ 7-8.  The policies do not reference South

Carolina, were not negotiated in South Carolina, and were not delivered in South Carolina, and

ZAIC does not maintain an office in the state.  Ex. F ¶¶ 11-12.

       Tyco does not allege that any of the events underlying the issuance of the policies or their

claim for coverage occurred in South Carolina.

## IV.  ARGUMENT

### A.  This Court Should Dismiss the Tyco Complaint as Improperly Direct-Filed on the MDL Docket

As set forth in the AIG Motion, this MDL Court lacks subject matter jurisdiction over Tyco's Complaint and the Complaint must accordingly be dismissed.  Zurich incorporates and adopts be reference all of the arguments set forth in the AIG Motion, which apply with equal force to Tyco's insurance coverage claims against Zurich.

As the AIG Motion notes, Tyco purports to bring this action by direct filing in the MDL pursuant to CMO-3.  However, CMO-3 was plainly designed to provide an efficient mechanism for single-plaintiff complaints that would otherwise be subject to the AFFF MDL.  In other words, cases that would otherwise be appropriately filed as tag-along actions.

Tyco's present Complaint is ***not*** a tag-along action.  The MDL involves thousands of lawsuits claiming bodily injury and property damage due to exposure to PFAS from dozens of defendants' products.  In contrast, the present action involves discrete issues of insurance coverage, such as, according to Tyco's own allegations, whether the relevant policies are triggered, whether Tyco can select the policies under which to assign loss, whether Tyco must pay or satisfy certain deductibles or self-insured retentions, and whether various exclusions and other provisions apply to bar or limit coverage (and the policy-related list goes on).  *See, e.g.*, Compl. ¶¶ 40.b, 40.c, 40.j, 40.l.  The present *insurance* coverage action would not be subject to the MDL proceedings as a tag-along action.  And if the Court were to open the floodgate to insurance coverage disputes, this Court's docket would be deluged with many complex insurance cases between the numerous defendants in the MDL and all of their insurers.  That would, in effect, create a second MDL within this MDL—a new MDL dealing with coverage issues.  But the JPML has not created that MDL, and this Court did not intend to create one (nor could it) under CMO3.

In fact, Tyco was one of the original parties to request consolidation of AFFF PFAS suits into an MDL – and did not request including of insurance coverage issues or actions. On September 25, 2018, Tyco filed its Motion for Transfer of Actions to the District of Massachusetts Pursuant to 28 U.S.C. § 1407 for Coordinated Pretrial Proceedings ("Transfer Motion"), a true and correct copy of which is attached hereto as **Exhibit G**. In the Transfer Motion, Tyco described the proposed subject matter of the MDL as falling into "three broad categories: putative class actions filed by individuals residing near the sites where AFFFs were used; actions brought by governmental entities such as municipalities or local water authorities; and individual personal injury claims." Ex. G at 1-2. Tyco went on to describe nine categories of issues it contended would be common and for which consolidation would support judicial efficiency. *Id.* Tyco later characterized the factual allegations of the cases for which it sought consolidation as follows:

> The plaintiffs in the 75 Actions allege that the Manufacturing Defendants manufacture or manufactured AFFF products that contained PFOS or PFOA; that these products were used at military bases, airports, or similar facilities near their residences or in their municipalities; that use of these products caused the release of PFOS/PFOA into local groundwater, ultimately contaminating drinking water supplies; that the Manufacturing Defendants knew or should have known that their AFFF products were unreasonably dangerous and/or failed to adequately warn about the products; and that the Manufacturing Defendants therefore caused and are responsible for present or latent personal injuries, property damage, or contamination of local water sources and associated remediation costs.

*Id.* at 8-9. Nowhere in Tyco's Transfer Motion did Tyco identify any issue relating to potential insurance coverage or arising under any insurance policies.[7] The Transfer Motion plainly ***did not*** request that the JPML include insurance coverage disputes between AFFF manufacturer defendants like Tyco and their insurers within the scope of the proposed consolidated action.

---

[7]    We note further that Tyco requested the case be assigned to either the United States District Court for the District of Massachusetts or the Southern District of New York. Tyco recognized there was no particular connection between the overwhelming majority of AFFF cases and South Carolina.

In considering Tyco's Transfer Motion, as well as another motion filed by 3M, the JPML determined it was appropriate to consolidate the AFFF actions into this MDL. The JPML's Transfer Order, attached hereto as **Exhibit H**, reasoned that consolidation was appropriate because:

> These actions thus share factual questions concerning the toxicity of PFOA and PFOS and their effects on human health; the chemical properties of these substances and their propensity to migrate in groundwater supplies; the knowledge of the AFFF manufacturers regarding the dangers of PFOA and PFOS; their warnings, if any, regarding proper use and storage of AFFFs; and to what extent, if any, defendants conspired or cooperated to conceal the dangers of PFOA and PFOS in their products.

Ex. H at 3. The JPML was not asked to include insurance coverage, insurers, or issues arising under insurance policies within the scope of the MDL and the Transfer Order makes no mention of those issues. In the absence of an order from the JPML, Tyco's attempt to unilaterally expand the MDL's scope is unsupported by JPML rules or MDL procedures. Zurich is not aware of any party requesting the JPML to expand the AFFF MDL to include insurance coverage disputes. If the MDL is to be expanded in this way, which Zurich submits it should not be, that decision should be made by the JPML, not by a single plaintiff attempting to circumvent the appropriate procedure through direct-filing.

Notably, the Transfer Order declined to expand the scope of the AFFF MDL beyond the pending AFFF liability claims. The JPML expressed concern that the number of AFFF cases in the action was "likely to grow significantly," noted that it "undoubtedly will be a complex litigation from a judicial management perspective" and declined 3M's request for a broader scope because the "MDL could quickly become unwieldy". Ex H at 4-6.

Simply put, the JPML's Transfer Order was limited in scope and does not include insurance coverage claims such as those Tyco asserts in its Complaint. This Court, therefore, lacks subject

matter jurisdiction over Tyco's Complaint.  If Tyco wanted to expand the scope of this MDL to include insurance coverage issues, the appropriate procedure for it to do so would have been to file a supplemental petition directly with the JPML and request such expansion, which would have also provided the insurers with the opportunity to be heard by the JPML as to why such an expansion is inappropriate.

Further, Zurich notes that, consistent with  the JPML's concern about the potential for this MDL to become unwieldy, the JPML has consistently declined to expand the original scope of the MDL.  Indeed, as early as December 18, 2019, the JPML denied 3M's request to expand the MDL, explaining that while it had transferred certain actions to the MDL, it had not "transferred an action to the MDL that contains *no* allegations or claims relating to AFFF use."  *See* Order Denying Transfer (J.P.M.L Dec. 18, 2019), attached hereto as **Exhibit I**.  The JPML went on to specifically note that it had concerns regarding the growth of the MDL and stated it had "no desire to unnecessarily complicate the transferee judge's task in efficiently managing this litigation, which already involves a wide range of parties."  *Id.* at 2.  Accordingly, given the JPML's "continued concern about the manageability of this litigation" a party seeking to expand the scope of the MDL "bears a significant burden to persuade us that transfer is appropriate and will not undermine the efficient progress of the AFFF MDL."  *Id.*

In the years following the foregoing order, the JPML has consistently emphasized the "significant burden" placed on moving parties who seek to expand the MDL's scope, including as recently as June 5, 2023, when it denied a motion by DuPont to consolidate a particular case, *Aqua North Carolina*, into the MDL because 3M did not meet this burden.  *See* Order Denying Transfer (J.P.M.L. June 5, 2023) at 2-3, attached hereto as **Exhibit J** (describing and applying "significant burden" standard).  Indeed, even in instances where the JPML has granted motions to transfer it

has expressed concerns that overexpansion of this MDL could "raise management concerns due to its breadth." *See* Transfer Order (J.P.M.L. June 5, 2023), at 1, 4, attached hereto as **Exhibit K** (noting that adding additional cases to MDL could "increase the complexity of this already complex litigation.") *see also* Order Denying Transfer (J.P.M.L. Dec. 13, 2022), at 2, attached hereto as **Exhibit L** (denying consolidation of bodily injury claim related to explosion of pressurized AFFF into MDL where it was "unlikely that transfer will yield significant efficiencies or conveniences for the parties and witnesses").

Zurich further notes that by purporting to utilize CMO-3's direct-filing mechanism, Tyco avoided following the typical tag-along procedure. Had it done so, it would have initiated its coverage action in an appropriate venue with proper jurisdiction over Zurich and the other insurer co-defendants from whom coverage is sought (for the reasons set forth below, that would ***not*** be South Carolina) and then filed either a Motion to Transfer under J.P.M.L. R. 6.2 or, if it contended this was appropriately a "tag-along" action, a Notice of Potential Tag-along pursuant to J.P.M.L. R. 7.1(a).

Had Tyco filed a Motion to Transfer, the Clerk of the JPML would have set a briefing schedule on the motion and Zurich and the other co-defendant insurers would have had notice and an opportunity to be heard ***before the JPML itself*** with respect to Tyco's request to expand the MDL to include coverage litigation. Likewise, if Tyco had filed a Notice of Potential Tag-along, the Clerk of the JPML would have entered a conditional transfer order (CTO) and Zurich and the other co-defendant insurers would have had an opportunity to file oppositions to the CTO ***before the JPML***. *See* J.P.M.L. R. 7.1(c). In either case, Tyco would have the obligation to demonstrate to the JPML that including insurance coverage litigation in this expansive and growing MDL would be in the interest of judicial economy and serve the underlying purposes of consolidation in

the first instance.  Tyco would have to satisfy the "significant burden" to expand the scope of this MDL.  Importantly, the other impacted parties then would have had an opportunity to be heard.[8]

Indeed, if Tyco had filed the appropriate procedure and petitioned the JPML to expand this MDL, it seems unlikely it would have succeeded.  As the AIG Motion notes, the JPML has declined to include insurance coverage litigation with existing consolidated dockets in the past. *See, e.g., In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, MDL No. 2047, Doc. 257 at 1 (JPML June 15, 2010).  There, despite the "common factual backdrop" involving imported Chinese drywall, the request for expansion was denied.  In reaching this conclusion, the JPML specifically noted that transfer of insurance coverage litigation in order to create leverage in settlement discussion was not a proper "statutory rationale" supporting transfer.  The legal questions presented in the parties' coverage dispute are distinct from any of the issues currently being litigated in the MDL.

By utilizing the direct-filing procedure, Tyco has circumvented the usual process for adding cases to a MDL, thus avoiding the inevitably scrutiny such a tactic would have received, particularly in light of the already pending comprehensive Wisconsin Action.  Given its prior unsuccessful attempt to bring nationwide PFAS coverage claims on South Carolina's state court asbestos docket, this new tactic is not altogether surprising.  But a defendant in an MDL does not have the authority or power to expand the subject matter jurisdiction of an MDL court or the scope of issues in an MDL as defined in a Transfer Order.  Respectfully, neither does an MDL court such as this one.  *See, e.g., In re Jan. 2021 Short Squeeze Trading Litig.*, 580 F. Supp. 3d 1243, 1249-50 (S.D. Fla. 2022) (granting motion to

---

[8]    J.P.M.L. R. 6.2(e) expressly provides an opportunity for interested parties, including amicus curiae, to file responses opposing transfer.  Zurich anticipates that the myriad carriers who are parties to the Wisconsin Action may oppose Tyco's attempts to avoid litigating in that forum. This is particularly true of those insurers who were set to file dispositive motions on July 31, 2023 and argue those motions in October.  As a result of Tyco's MDL Complaint and this Court's subsequent request that Judge Morrison stay the Wisconsin Action, the resolution of those dispositive issues is likely to be delayed.

dismiss for lack of subject matter jurisdiction because the "Court – sitting in its capacity not as an ordinary district court, but as an MDL transferee court – plainly only has jurisdiction over MDL member cases properly transferred or consolidated under Section 1407 and the accompanying JPML rules."); *In re Farmers Ins. Exch. Claims Reps. Overtime Pay Litig.*, No. MDL 33-1439, 2008 WL 4763029, at \*5 (D. Or. Oct. 28, 2008) (noting there was "no authority for this court, as an MDL transferee court, to exercise subject matter jurisdiction over state law claims not transferred by the MDL Panel and over which this court lacks original jurisdiction"); *In re Packaged Ice Antitrust Litigation*, No. 08-MDL-1952, 2011 WL 6178891, at \*9 (E.D. Mich. Dec. 12, 2011) (attempt to add new named plaintiffs to a consolidated amended complaint "ignored basic Article III principles and . . . bypassed the appropriate MDL process for consolidation of these plaintiffs' claims).

The subject matter of the AFFF MDL is narrowly defined by the JPML's Transfer Order. Unless and until Tyco makes an appropriate filing with the JPML  and unless the JPML grants such a request after due consideration of the counter points, insurance coverage litigation is ***not*** within the scope of the case.  Accordingly, the Court lacks subject matter jurisdiction over Tyco's Complaint and it must be dismissed.

### B.    This Court Lacks Personal Jurisdiction over ZAIC and AGLIC

Tyco alleges that "but for CMO 3 permitting direct filing", it would have filed this Complaint in the United States District Court of the District of South Carolina.  Compl. ¶ 24. Accordingly, for this Court to maintain personal jurisdiction over ZAIC and AGLIC for purposes of this dispute, Tyco has the burden of demonstrating South Carolina courts have personal jurisdiction over ZAIC and AGLIC for the nationwide coverage disputes alleged in the Complaint. They do not.

Zurich hereby adopts and incorporates by reference the arguments made regarding personal jurisdiction in AIG's Motion as if fully set forth herein, which apply with equal weight to ZAIC

and AGLIC.  We add some additional reasoning as to why personal jurisdiction is lacking below, but in addition to those points, for all the reasons personal jurisdiction is lacking as to the Limited AIG Insurers, so too is it lacking as to AGLIC and ZAIC.

        1.     There is No General Jurisdiction Over ZAIC or AGLIC in South Carolina

There is no general jurisdiction over AGLIC or ZAIC in South Carolina because neither company is "at home" in this state.  Therefore, AGLIC and ZAIC cannot be sued for any cause of action, even those unrelated to the forum.  *See Bristol-Myers Squibb Co. v. Superior Ct. of CA, San Francisco Cty.*, 137 S. Ct. 1773, 1780 (2017); *Daimler AG v. Bauman*, 571 U.S. 117, 118 (2014); *see* S.C. Code Ann. § 36-2-802 ("A court may exercise personal jurisdiction over a person domiciled in, organized under the laws of, doing business, or maintaining his or its principal place of business in, this State as to any cause of action.").

For corporations such as AGLIC and ZAIC, the two "paradigm all-purpose forums for general jurisdiction" are: 1) place of incorporation; and 2) principal place of business.  *Daimler AG*, 571 U.S. at 118.  Here, both AGLIC and ZAIC are New York corporations with their principal places of business in Illinois.  Compl.  ¶¶ 12, 20.  Neither AGLIC nor ZAIC is "at home" in South Carolina and thus neither of them is subject to general personal jurisdiction in the state.

The Complaint alleges that Zurich "was and is licensed to do and is doing business in the State of South Carolina."  Compl. ¶¶ 12, 20.  Registration to do business in South Carolina, however, does not subject foreign corporations to general jurisdiction in the state.  *See, e.g.*, *Fidrych v. Marriott Int'l, Inc.*, 952 F.3d 124, 132 (4th Cir. 2020) ("South Carolina law *does not* make consent to general jurisdiction a consequence of obtaining a certificate of authority to

transact business"); *see also Maseng v. Lenox Corp.,* 483 F. Supp. 3d 360, 367–68 (D.S.C. 2020).[9]

The Court lacks general jurisdiction over AGLIC and ZAIC.

> ### 2. There is No Specific Jurisdiction Over ZAIC and AGLIC in South Carolina for Tyco's Nationwide Coverage Claims

For a South Carolina federal court to have specific jurisdiction over AGLIC and ZAIC for Tyco's nationwide coverage claims, Tyco bears the burden to demonstrate that those claims arise out of AGLIC and ZAIC's contacts with South Carolina.  Here, for all the reasons set forth in the AIG Motion, which Zurich incorporates herein by reference, Tyco cannot meet its burden to establish specific personal jurisdiction over AGLIC or ZAIC.  Tyco's claim for insurance coverage over hundreds or thousands of PFAS suits pending around the country plainly does not arise out of any specific contact AGLIC or ZAIC has had with South Carolina.  The Complaint is simply devoid of *any* allegations drawing a connection between AGLIC or ZAIC and the state.

AGLIC and ZAIC have proffered the Declarations of John Ferguson in support of this motion, together with copies of the available policies at issue.  *See* Ex. D-F.  As those materials plainly demonstrate, the AGLIC and ZAIC excess policies were not issued to any entity in South Carolina, but rather to Tyco entities in New Hampshire, New Jersey, New York, and Florida.  The policies make no mention of any property, person, or risk located in South Carolina, and were not negotiated or delivered in the state.  In issuing such excess policies, AGLIC and ZAIC could not reasonable have anticipated being haled into court in South Carolina for coverage disputes.

---

[9]      The recent personal jurisdiction-related decision in *Mallory v. Norfolk S. Ry,* __ S. Ct. __, 2023 U.S. LEXIS 2786, at \*16, \*21 (U.S. June 27, 2023), has no impact on the personal jurisdiction analysis here.  That decision relied heavily on the personal jurisdiction issues addressed in *Pennsylvania Fire.*  But the Fourth Circuit clearly and expressly addressed those issues in the context of South Carolina's business registration statute in *Fidrych.*  *Mallory* does not upset that correctly decided case: registering to do business in South Carolina does not amount to consent to general jurisdiction in the state.

Moreover, the policies are not contracts formed in South Carolina or to be performed in South Carolina. Rather, the AGLIC and ZAIC employees negotiating the policies were based in Massachusetts and New York, and they were working with Tyco's broker, based in those same states. *See Aviation Assocs. & Consultants, Inc. v. Jet Time, Inc.*, 303 S.C. 502, 506, 402 S.E.2d 177 (S.C. 1991) ("It is well-settled that a 'contract is executed when the last act necessary for its formation is done and at the place where the final act is done.'"). All factors, therefore, weigh against finding any specific jurisdiction over AGLIC or ZAIC.

As set forth above, the Complaint acknowledges that Plaintiffs' claims for coverage have no connection to South Carolina. Indeed, Plaintiffs purport to seek coverage for nationwide disputes arising out of "hundreds" of PFAS suits, none of which is identified as involving a South Carolina resident or conduct in South Carolina. Regardless, even if Plaintiffs could identify some alleged connection between these hundreds of underlying suits and South Carolina, the Complaint draws no connection between any of those suits and any contacts ZAIC or AGLIC have had with the state of South Carolina.

Finally, Tyco's allegation that it has been named as a defendant in cases filed in South Carolina courts is insufficient to confer specific jurisdiction over AGLIC or ZAIC. The central inquiry to determine specific jurisdiction is the actions and contacts of defendant insurers with South Carolina, not those of Tyco or some other party. *Aviation Assocs. & Consultants,* 303 S.C. at 507-08 (reversing lower court's finding of jurisdiction and explaining the "focus must center on the contacts generated by the defendant, and not on the unilateral actions of some other entity").

In its briefing on the motions to dismiss filed in the South Carolina State Court Case, Tyco argued that there is jurisdiction over AGLIC and ZAIC based on prior cases in South Carolina and the Fourth Circuit finding specific jurisdiction over an out-of-state insurer where the policies at

issue contained both "territory of coverage" and duty-to-defend clauses.  *See, e.g., Rossman v. State Farm Mut. Auto. Ins. Co.*, 832 F.2d 282, 286 (4th Cir. 1987); *Leggett v. Smith*, 386 S.C. 63, 686 S.E.2d 699 (Ct. App. 2009).  We anticipate they will attempt a similar argument in response to this motion.  *See* Compl. ¶ 22 ("each insurer included South Carolina within the coverage territory of each of the Policies at issue").  Prior territory of coverage decisions finding personal jurisdiction, however, were focused on the question of whether it was "foreseeable" for the insurer to be called into court in the forum state and involved issues specific to auto insurance.  *See Rossman*, 832 F.2d at 286 ("As an automobile liability insurer, Consolidated could anticipate the risk that its clients would travel in their automobiles to different states and become involved in accidents and litigation there.").  Here, the policies at issue did not relate to "movable risks" such as automobiles.

More fundamentally, however, the AGLIC and ZAIC policies, which are all excess policies, do not include any duty to defend Tyco in underlying litigation.  Indeed, the Complaint implicitly recognizes this, alleging only that "[c]ertain of the policies contain a duty to defend" and that "one or more" – as opposed to all – "defendants has a duty to defend or to pay or reimburse defense costs[.]"  Compl. ¶¶ 4, 5.  Neither AGLIC's nor ZAIC's policies are primary policies, and the AGLIC and ZAIC policies contain no duty to defend.

The AGLIC  policies provide that AGLIC "will not be required to assume charge of the investigation of any claim or defense of any suit," and "will have the right, but not the duty, to be associated with you or your underlying insurer or both in the investigation of any claim or defense of any suit which in our opinion may create liability on us for payment under this policy."  *See, e.g.,* Ex. D at Ex. 1, Section III. Defense; Ex. E at Ex. 1, Endorsement #5.  Policy No. IPR 3792307

00 similarly provides that "it shall be the duty of the **Insureds** and not the duty of the Underwriter to defend **Claims** against the **Insureds**."  Ex. D at Ex. 4, F. Defense and Settlement.

Likewise, the "Defense" provision of the ZAIC excess policies provides:

> The Company shall not be required to assume charge of the investigation, settlement or defense or any claim made, or suits brought, or proceedings instituted against the Insured, but shall have the right and be given the opportunity to be associated in the defense and trial of any such claim, suits or proceedings relative to any claim made which, in the opinion of the Company, may create liability on the part of the Company under the terms of this policy.

*See* Ex. F at Ex. 1, at Conditions, 4. Defense.

The lack of a duty to defend in the AGLIC and ZAIC policies defeats any claim Tyco may make regarding specific jurisdiction arising out of an alleged defense obligation.  Indeed, this very issue has been addressed by courts in other jurisdictions.  *See Lexington Ins. Co. v. Hotai Ins. Co. Ltd.*, 938 F.3d 874, 882-83 (7th Cir. 2019) ("The absence of a duty-to-defend clause is decisive."). In *Lexington Ins. Co.*, the U.S. Court of Appeals for the Seventh Circuit interpreted language nearly identical to that at issue here and explained that because the parties had contracted for the right, but not the obligation, to control litigation against the insured, the "expectation of being haled into court in a foreign state was *not* an express feature" of the policy at issue.  *Id.* at 883 (citing and distinguishing *Rossman*).  Accordingly, the court lacked personal jurisdiction over the defendant insurers.

For all these reasons and for those set forth in the AIG Motion, Tyco cannot establish that AGLIC and ZAIC have sufficient minimum contacts with the state of South Carolina and that Tyco claims for nationwide coverage over PFAS suits arise out of any contacts defendants have had with the forum state.  Accordingly, South Carolina courts lack personal jurisdiction and the Complaint must be dismissed.

**C.**    **Tyco Lacks Standing to Sue Under South Carolina's Door-Closing Statute**

Tyco also lacks standing to sue AGLIC and ZAIC in South Carolina for this coverage dispute based on South Carolina's door-closing statute. That statute, S.C. Code Ann. § 15-5-150, limits a party's capacity to sue foreign corporate defendants in the state. *See Farmer v. Monsanto Corp.*, 353 S.C. 553, 557, 579 S.E.2d 325, 327–28 (S.C. 2003). The statute provides that a plaintiff who is not a resident of South Carolina may only sue a foreign corporation in South Carolina where "the cause of action shall have arisen or the subject of the action shall be situated within this State." S.C. Code Ann. § 15-5-150. The South Carolina Supreme Court has explained that one of the primary policy objectives of the statute is to avoid having South Carolina courts used for resolution of issues in which the state has little interest. *Farmer*, 353 S.C. at 557. The statute is also designed to encourage activity by foreign corporations within the state "without subjecting them to litigation unrelated" to that specific activity and to favor residents over non-residents. *Id.*

For all of the reasons set forth in the AIG Motion, which Zurich incorporates and adopts by reference, the door closing statute bars Tyco's claims here. Tyco is not a South Carolina resident. AGLIC and ZAIC are also not residents of the state, but rather are corporations organized under New York law, with their principal places of business in Illinois. This fits within the exact wording and intent of the door-closing statute: a non-resident suing a foreign corporation(s) in South Carolina. Accordingly, for Tyco to have standing to sue AGLIC or ZAIC in this court, Plaintiffs' cause of action must have arisen in South Carolina or the subject of the action must be in South Carolina. This is not the case here.

Rather, Tyco's causes of action against AGLIC and ZAIC arise out of the excess insurance policies identified in the Complaint. Those policies were not made, negotiated, or issued in South Carolina, nor do they provide for any specific performance in South Carolina. Accordingly, Plaintiffs have no standing to sue non-residents AGLIC and ZAIC in this state. *See, e.g., McCall*

*v. State Farm, Mutual Automobile Company*, 359 S.C. 372, 383 (Ct. App. 2004) (non-resident plaintiff lacked standing to sue under door-closing statute where auto policy was underwritten and issued in North Carolina); *Snell v. Golden Rule Ins. Co.,* No. C.A. 6:08-3555-MHM, 2009 WL 185723, at *3 (D.S.C. Jan. 23, 2009) (dismissing lawsuit brought by non-resident plaintiff/insured against a non-resident defendant/insurer pursuant to door-closing statute because health insurance policy was made in Virginia).  For these reasons, and for those set forth in the AIG Motion, the door-closing statute mandates dismissal of Tyco's Complaint.

    **D.**    **<u>The Complaint Should be Dismissed Under the Doctrine of Forum Non Conveniens</u>**

As set forth above, this matter should be dismissed in its entirety because AGLIC and ZAIC are not subject to personal jurisdiction in this Court and Tyco lacks standing to sue. Notwithstanding those considerations, even when a court may exercise jurisdiction, it is still appropriate to dismiss an action under the doctrine of forum non conveniens where doing so would further the ends of justice and promote the convenience of the parties.

Zurich adopts in full the arguments in AIG's Motion on forum non conveniens.  In addition, Zurich notes that the Wisconsin Action is a more appropriate and convenient forum because:

1.  It is the more comprehensive case, with all of Tyco and/or Ansul's potential insurers included in that litigation;

2.  It is the only case without any jurisdictional issues;

3.  It is the more advanced action, with a comprehensive case management order already in place and discovery already on-going.

For the foregoing reasons, the Court should dismiss the action pursuant to the doctrine of forum non conveniens and permit this dispute to proceed in an appropriate court in Wisconsin.

E    **The Court Should Decline to Exercise Jurisdiction Over this Declaratory Judgment Action Based on the Doctrine of Abstention**

Zurich adopts and incorporates by reference the arguments made regarding abstention in AIG's Motion. As set forth therein, this case is a model example of where the *Brillhart-Wilson* abstention doctrine should be applied. This Court should abstain from addressing the state law insurance coverage issues already pending and proceeding towards resolution in the Wisconsin Litigation.

V.    **CONCLUSION**

For the foregoing reasons, Zurich respectfully requests that the Court dismiss Tyco's Complaint in its entirety.

Dated:  July 31, 2023                    Respectfully submitted,

                                         */s/ Ian S. Ford*
                                         Ian S. Ford (Fed. Bar 9057)
                                         Ian.Ford@FordWallace.com
                                         Ainsley F. Tillman (SC Bar 70551)
                                         Ainsley.Tillman@FordWallace.com
                                         715 King Street
                                         Charleston, SC 29403
                                         (843) 277-2011 - Telephone

                                         Matthew J. Antonelli
                                         matt.antonelli@saul.com
                                         Clarence Y. Lee
                                         clarence.lee@saul.com
                                         Saul Ewing LLP
                                         1919 Pennsylvania Ave., NW, Suite 550
                                         Washington, DC 20006
                                         (202) 295-6608  - Telephone
                                         (202) 337-8085 - Telefax

                                         *Counsel for American Guarantee and Liability Insurance Company and Zurich American Insurance Company*