UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| IN RE: AQUEOUS FILM-FORMING FOAMS PRODUCT LIABILITY LITIGATION | MDL NO. 2:18-mn-02873-RMG |

| | |
|---|---|
| TYCO FIRE PRODUCTS LP, *Plaintiff*, v. AIU INSURANCE COMPANY, *et al.* *Defendants*. | Civil Action No. 2:23-cv-02384-RMG Hon. Richard M. Gergel |

**PLAINTIFF TYCO FIRE PRODUCT'S OMNIBUS RESPONSE IN OPPOSITION TO INSURER DEFENDANTS' MOTIONS TO DISMISS OR STAY**

August 14, 2023

COVINGTON & BURLING LLP

Allan B. Moore (admitted *pro hac vice*)
Timothy D. Greszler (admitted *pro hac vice*)
Alexis N. Dyschkant (admitted *pro hac vice*)
850 Tenth Street, NW
Washington, DC 20001
Tel:     (202) 662-5575
Email:  abmoore@cov.com

*Counsel for Tyco Fire Products LP*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................ ii

INTRODUCTION ................................................................................................................... 1

BACKGROUND ...................................................................................................................... 4

I.      The AFFF MDL Proceeding and Its Five-Year History ................................................ 4

II.     Tyco's South Carolina State Court Insurance Coverage Action ......................................... 5

III.    Chubb's Wisconsin State Court Action ......................................................................... 7

IV.    This Court's Mediation Orders and Process .................................................................... 8

V.     The AIG Defendants' Effort to Overtake this Coverage Action ...................................... 9

VI.    Tyco's Amended Complaint in this Coverage Action .................................................... 10

ARGUMENT ......................................................................................................................... 10

I.      Insurer Defendants' Argument that the Court Lacks Authority To Proceed Misunderstands Federal Venue Law, JPML Procedures, and this Court's Local Rules, All of Which Are Immaterial in Any Event to the Court's Jurisdiction. .............. 11

II.     The Court Has Personal Jurisdiction Over Each Insurer Defendant ................................ 16

        A.     Insurer Defendants Consented to General Personal Jurisdiction When They Obtained Licenses to Do Business in South Carolina. .............................. 16

        B.     Insurer Defendants are Subject to Specific Personal Jurisdiction Because They Sold Policies Covering the Risks in South Carolina at Issue. .................... 18

        C.     American Guarantee Agreed to be Sued Wherever Tyco Requests .................... 24

III.    The South Carolina "Door-Closing" Statute Does Not Apply. ........................................ 24

IV.    The Court Should Not Abstain from Exercising its Jurisdiction. .................................... 27

        A.     The *Colorado River* Test, Not the *Brillhart/Wilton* Test, Applies Here. .............. 27

        B.     Under the *Colorado River* Test, the Court has a "Virtually Unflagging Obligation" to Exercise Its Jurisdiction over this Action. ................................... 28

        C.     The *Brillhart/Wilton* Test Likewise Supports the Exercise of Jurisdiction. ......... 33

V.     The Forum Non Conveniens Doctrine Does Not Apply or Warrant Dismissal. ............. 35

CONCLUSION ....................................................................................................................... 35

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aviation Assocs. & Consultants, Inc. v. Jet Time, Inc.*,
 303 S.C. 502 (S.C. 1991) .................................................................23

*Baker Roofing Co. v. Am. Guarantee & Liab. Ins. Co.*,
 2017 WL 710541 (D.S.C. Feb. 23, 2017) ..........................................23

*Bristol-Myers Squibb Co. v. Super. Ct.*,
 582 U.S. 255 (2017) ..........................................................................23

*Del Webb Communities, Inc. v. Am. Home Assurance Co.*, 2016 WL 5407894
 (D.S.C. Sept. 28, 2016) ......................................................................23

*Chase Brexton HealthServs., Inc., v. Maryland*,
 411 F.3d 457 (4th Cir. 2005) .............................................................29

*Colorado River Water Conserv. Dist. v. United States*,
 424 U.S. 800 (1976) ................................................................ *passim*

*Compania Naviera Joanna SA v. Koninklijke Boskalis Westminster NV*,
 569 F.3d 189 (4th Cir. 2009) .............................................................35

*Eli Lilly & Co. v. Home Ins. Co.*,
 794 F.2d 710 (D.C. Cir. 1986) ...............................................20, 22, 24

*Equilease Corp. v. Weathers*,
 275 S.C. 478 (S.C. 1980) ...................................................................18

*ESAB Grp., Inc. v. Zurich Ins. PLC*,
 685 F.3d 376 (4th Cir. 2012) ...........................................18, 20, 21, 23

*Est. of Anderson by Brown v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA.*,
 2018 WL 1428497 (D.S.C. Mar. 22, 2018) ........................................23

*In re Farmers Ins. Exch. Claims Reps. Overtime Pay Litig.*,
 2008 WL 4763029 (D. Or. Oct. 28, 2008) ..........................................14

*Farmers Ins. Exch. v. Portage La Prairie Mut. Ins. Co.*,
 907 F.2d 911 (9th Cir. 1990) .........................................................21, 22

*Fidrych v. Marriott International, Inc.*,
 952 F.3d 124 (4th Cir. 2020) .........................................................17, 23

*Flexi-Van Leasing, Inc. v. Travelers Indem. Co.*,
    2017 WL 11707321 (D.S.C. Dec. 7, 2017) ....................................................24, 25

*Gannett Co. v. Clark Const. Grp., Inc.*,
    286 F.3d 737 (4th Cir. 2002) ......................................................................30, 31

*Gelboim v. Bank of America Corp.*,
    574 U.S. 405 (2015)...........................................................................................13

*Great Am. Ins. Co. v. Gross*,
    468 F.3d 199 (4th Cir. 2006) ..................................................................28, 29, 32

*Hartsock v. Am. Auto. Ins. Co.*,
    788 F. Supp. 2d 447 (D.S.C. 2011).....................................................................32

*In re Helicopter Crash Near Weaverville, Cal.*,
    626 F. Supp. 2d 1355 (J.P.M.L. 2009)................................................................15

*International Shoe v. State of Washington*,
    326 U.S. 310 (1945)............................................................................................16

*Leggett v. Smith*,
    386 S.C. 63 (S.C. Ct. App. 2009) .......................................................................20

*Lexington Insurance Company v. Hotai Insurance Company*,
    938 F.3d 874 (7th 2019)......................................................................................21

*Mallory v. Norfolk Southern Railway*,
    143 S. Ct. 2028 (2023)..........................................................................3, 16, 17, 18

*Marchant v. South Carolina Ins. Co.*,
    281 S.C. 585 (S.C. Ct. App. 1984) .....................................................................19

*Med. Mut. Ins. Co. of N.C. v. Littaua*,
    35 F.4th 205 (4th Cir. 2022) .........................................................................27, 33

*New Orleans Public Service, Inc. v. Council of City of New Orleans*,
    491 U.S. 350 (1989)............................................................................................27

*Oldfield Club v. TI Oldfield Dev., LLC*,
    2017 WL 5523045 (D.S.C. Nov. 17, 2017)........................................................29

*In re Packaged Ice Antitrust Litigation*,
    2011 WL 6178891 (E.D. Mich. Dec. 12, 2011) .................................................14

*Penn-Am. Ins. Co. v. Coffey*,
    368 F.3d 409 (4th Cir. 2004) ..............................................................................33

*Pennsylvania Fire Insurance Co. v. Gold Issue Mining & Milling Co.*,
  243 U.S. 93 (1917) ......................................................................................................16

*Proctor & Schwartz, Inc. v. Rollins*,
  634 F.2d 738 (4th Cir. 1980) ......................................................................................24

*Protopapas v. Zurich Am. Ins. Co.*,
  2023 WL 2206640 (D.S.C. Feb. 24, 2023) ................................................................23

*Rossman v. State Farm Mut. Auto. Ins. Co.*,
  832 F.2d 282 (4th Cir. 1987) ................................................................................19, 21

*Sangamo Weston, Inc. v. Nat'l Sur. Corp.*,
  307 S.C. 143 (S.C. 1992) ............................................................................................19

*In re Showa Denko K.K.*,
  953 F.2d 162 (4th Cir. 1992) ......................................................................................23

*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*,
  549 U.S. 422 (2007) ....................................................................................................35

*Sprint Commc'ns, Inc. v. Jacobs*,
  571 U.S. 69 (2013) ......................................................................................................27

*Starr Indem. & Liab. Co. v. Ocean Keyes Dev., LLC*,
  2017 WL 6324632 (D.S.C. Dec. 11, 2017) ................................................................23

*Stewart Organization, Inc. v. Ricoh Corp.*,
  487 U.S. 22 (1988) ......................................................................................................11

*In re Takata Airbag Prods. Liab. Litig.*,
  379 F. Supp. 3d 1333 (S.D. Fla. 2019) ......................................................................13

*TH Agric. & Nutrition, LLC v. Ace European Grp. Ltd.*,
  488 F.3d 1282 (10th Cir. 2007) ..................................................................................21

*VonRosenberg v. Lawrence*,
  781 F.3d 731 (4th Cir. 2015) ................................................................................28, 29

*VonRosenberg v. Lawrence*,
  849 F.3d 163 (4th Cir. 2017) ......................................................................................29

*White Oak Manor, Inc. v. Lexington Ins. Co.*,
  407 S.C. 1 (S.C. 2014) ................................................................................................17

*Wilton v. Seven Falls. Co.*,
  515 U.S. 277 (1995) ....................................................................................................33

**Statutes and Other Authorities**

28 U.S.C. § 1332 ...........................................................................................................11, 14

28 U.S.C. §§ 1391 ...............................................................................................................11

28 U.S.C. § 1407 .....................................................................................................11, 12, 13

28 U.S.C. § 2201 .................................................................................................................27

D.S.C Local Rule 16.08 .......................................................................................................8

D.S.C Local Rule 16.09 .......................................................................................................8

D.S.C. Local Rule 26.01 ....................................................................................................12

Fed. R. Civ. P. 12 ...............................................................................................................11

Fed. R. Civ. P. 15 ...............................................................................................................10

JPML Rule 7.2(a) ..........................................................................................................12, 13

S.C. Code § 15-5-150 ......................................................................................................3, 24

S.C. Code § 38-5-70 ...................................................................................................3, 17, 18

S.C. Code § 33-15-101 .......................................................................................................17

S.C. Code § 33-15-105 ..................................................................................................17, 18

S.C. Code § 38-61-10 ....................................................................................................19, 32

Plaintiff Tyco Fire Products LP ("Tyco") respectfully submits this Omnibus Response in Opposition to the four separate (and mostly duplicative) motions to dismiss that have been filed by: (1) Defendants AIU Insurance Company, American Home Assurance Company, Insurance Company of the State of Pennsylvania, National Union Fire Insurance Company of Pittsburgh, Pa., and New Hampshire Insurance Company ("AIG Defendants"), ECF 24; (2) Defendants American Guarantee and Liability Insurance Company and Zurich American Insurance Company ("Zurich Defendants"), ECF 26; (3) Defendant Great American Insurance Company ("Great American"), ECF 22; and (4) Defendant Starr Indemnity and Liability Insurance Company ("Starr"), ECF 27.[1] Tyco refers to the movants, collectively, as "Insurer Defendants."

## INTRODUCTION

Insurer Defendants are refreshingly candid about their objective. In the words of the AIG Defendants, who are Tyco's primary and umbrella insurers in most of the policy years at issue, Tyco can and should "pay a settlement" to underlying plaintiffs in this MDL proceeding and then "chase its insurers." AIG Mem., ECF 24-2 at 20. Tyco should do this, they say, because Tyco "can afford to settle with the underlying claimants without resolving coverage disputes." *Id.* at 20 n.12. "In any event," they assert:

> coverage, jurisdictional, and other issues will likely ultimately be resolved by the Fourth Circuit (and potentially by state Supreme Courts by way of certification), meaning that *any result here will not result in the availability of funds to Tyco to settle anytime soon* (not that it needs such funds to settle).

*Id.* at 21 (emphasis added).

In other words, even though Tyco purchased hundreds of millions of dollars of liability insurance from these very insurers to protect itself against massive liability exposures and

---

[1] Unless stated otherwise, ECF numbers in this Omnibus Response refer to the Court's member case docket for this coverage action in No. 2:23-cv-02384.

defense expenses—which Tyco has asserted rights to collect and deploy in response to the AFFF

claims at issue—Tyco should be required to put its insurance assets aside and self-fund a

settlement, and then "*chase its insurers*" because whatever this or any other Court may think and

decide, "any result here will not result in the availability of funds to Tyco to settle anytime

soon." *Id.* at 21 (emphasis added).

This is not how insurance is supposed to work. And it certainly is not what major insurers

like those here tell their policyholders when they sell policies with the sorts of coverages and

limits at issue here. Tyco is entitled to access its insurance assets now, in its time of need, and

Insurer Defendants' efforts to bury their policyholder and this Court in duplicative papers—and

their related promise to try to delay a resolution of this coverage action—are inappropriate.[2]

This Court has jurisdiction over the coverage dispute at hand, and it should exercise that

jurisdiction to resolve the coverage issues before it, consistent with its indication that it

"intend[s] to move expeditiously to address coverage issues" in advance of a possible spring

2024 water provider bellwether trial. Status Conference Tr., at 47:3–10 (July 14, 2023).

## SUMMARY OF POINTS

Insurer Defendants have invoked five different grounds upon which they contend this

Court should dismiss or stay this action.[3] None of these grounds applies.

<u>*First*</u>, Insurer Defendants claim that Tyco's action is subject to dismissal because it fails

to comply with the Rules of Procedure of the Judicial Panel on Multidistrict Litigation ("JPML

---

[2] As the AIG Defendants surely know, a judgment by this Court requiring the honoring of
contractual obligations or the payment of money is generally enforceable and collectible when
rendered, even pending appeal. *See* Arthur Wright et al., Federal Practice & Procedure § 3954
(5th ed.) ("The taking of an appeal does not by itself suspend the operation or execution of a
district-court judgment or order during the pendency of the appeal.").

[3] All Insurer Defendants seek dismissal. The AIG Defendants and Starr alternatively seek a stay.

Rules") and the Court's Case Management Order No. 3 ("CMO 3," MDL Management Case, ECF 72).[4] But Tyco did not need permission from the Judicial Panel on Multidistrict Litigation ("JPML") to file this action. Under the JPML Rules, CMO 3, and the Local Rules of this Court, venue is entirely proper in this district, and the Court has broad discretion to include this action within the AFFF MDL proceeding to which it unquestionably relates.

*Second*, the Court has personal jurisdiction over all Insurer Defendants. As the United States Supreme Court confirmed just six weeks ago, in *Mallory v. Norfolk Southern Railway*, 143 S. Ct. 2028 (2023), out-of-state insurance companies consent to *general* personal jurisdiction in a state when they appoint the state's director of insurance as their agent for service of process in exchange for a license to do business in the state. Insurer Defendants have done that here, pursuant to the South Carolina Insurance Code, S.C. Code § 38-5-70. Further, and wholly independent of any such consent, Insurer Defendants are subject to *specific* personal jurisdiction in this action, not only because they sold insurance policies to Tyco that include South Carolina within the "coverage territory" for the insured risks at issue, but also because they agreed to defend and indemnify Tyco from the underlying AFFF liabilities in question—thousands of which are pending in this MDL proceeding, and more than 80 of which have been filed either directly in this district and MDL identifying South Carolina as their venue, or removed to this MDL from South Carolina state courts.

*Third*, South Carolina's so-called "door-closing" statute, S.C. Code § 15-5-150, does not govern federal jurisdiction or venue and does not require dismissal. That statute also expressly permits non-residents to sue foreign corporations when the "subject of the action shall be situated within" South Carolina. Here, as just noted, the parties' coverage dispute is situated within South

---

[4] Citations to the "MDL Management Case" refer to the Court's docket in No. 2:18-mn-02873.

Carolina: it centers upon Insurer Defendants' obligation to cover Tyco for its potential liabilities in the AFFF suits that have been consolidated here in this MDL proceeding.

*Fourth*, Insurer Defendants' invocation of abstention doctrines to try to avoid this Court's exercise of jurisdiction are unavailing. The *Brillhart/Wilton* doctrine does not apply, because Tyco's claims do not solely seek declaratory relief. Insurer Defendants instead must satisfy the heightened *Colorado River* doctrine, under which a federal court has a "virtually unflagging obligation" to exercise its jurisdiction. They have not and cannot meet this test, which in any event is, at best for Insurer Defendants, a discretionary ground to decline jurisdiction.

*Lastly*, Insurer Defendants' efforts to invoke *forum non conveniens* is likewise of no avail. That doctrine has no application in this context, and even if it applied, this Court and MDL proceeding, where the underlying claims and evidence are consolidated, hardly present an inappropriate or inconvenient forum.

The Court thus should deny Insurer Defendants' motions to dismiss or stay.

## BACKGROUND

### I.     The AFFF MDL Proceeding and Its Five-Year History

By order dated December 7, 2018, the JPML centralized approximately 90 actions involving allegations that aqueous film-forming foams ("AFFF") products caused damage to groundwater. MDL Management Case, ECF 1 (Dec. 7, 2018). The JPML transferred and consolidated these lawsuits before this Court, and the Court and the parties quickly got to work.

In the five years since the original centralization order, the MDL has grown to include more than 4,000 cases, from 50 states, three territories, and the District of Columbia, encompassing approximately 17,000 plaintiffs. Under the supervision of this Court, the MDL parties have produced tens of millions of pages of documents, undertaken extensive written discovery, and conducted more than 160 depositions. Tyco alone has produced nearly 220,000

documents, spanning more than 875,000 pages, and presented 14 witnesses for deposition. All of this discovery is available to any party to the MDL, including now Insurer Defendants. Indeed, as of the date of this response, Tyco has produced all of the approximately 220,000 documents in its MDL productions to Insurer Defendants. Dyschkant Decl. ¶ 2.

In its 2018 order, the JPML explained that the original AFFF lawsuits should be centralized because they "share factual questions concerning the toxicity of PFOA and PFOS and their effects on human health; the chemical properties of these substances and their propensity to migrate in groundwater supplies; the knowledge of the AFFF manufacturers regarding the dangers of PFOA and PFOS; their warnings, if any, regarding proper use and storage of AFFFs; and to what extent, if any, defendants conspired or cooperated to conceal the dangers of PFOA and PFOS in their products." MDL Management Case, ECF 1 at 3.

Since 2021, the Court has overseen the workup of nine potential bellwether cases by "water providers" (entities that allege that the water supplies they provide to various communities across the country have been impacted by AFFF and PFAS), culminating in two recently-announced class settlements between water providers and 3M and certain Dupont-related entities. Both settlements were achieved through ongoing mediation efforts overseen by retired United States District Judge Layn Phillips. Tyco has been, and remains, an active participant in the Court ordered mediations.

## II.     Tyco's South Carolina State Court Insurance Coverage Action

On October 7, 2022, Tyco filed an insurance coverage action in the South Carolina Court of Common Pleas, *Ansul LLC et al. v. ACE Am. Ins. Co. et al.*, No. 2022CP4005289 (the "South Carolina Action"). *See* S.C. Compl., ECF 24-5 (Oct. 7, 2022). The South Carolina Action named as defendants the current Insurer Defendants (except Starr), as well as other insurance companies that sold general liability insurance policies covering Tyco, including certain insurance

companies in the Chubb family ("Chubb"). Tyco's South Carolina Action sought a resolution of insurance coverage issues encompassing two categories of claims against Tyco: (1) claims alleging bodily injury resulting from exposure to asbestos-containing products and (2) claims alleging AFFF-related liabilities. Tyco filed the South Carolina Action in the South Carolina statewide Asbestos Litigation Docket, supervised by former Chief Justice Jean Toal.

In December 2022, the insurers in the South Carolina Action, including Chubb and all Insurer Defendants here (except Starr), objected to that court as a proper forum for resolving the insurance coverage disputes and filed a series of motions to dismiss. Dyschkant Decl., Exs. 2–4. Insurer Defendants stressed, among other things, that the South Carolina court lacked jurisdiction to hear Tyco's coverage case on its asbestos docket. *See id.*, Ex. 2 at 25; *id.*, Ex. 3 at 27. On the same day that they filed their motion to dismiss, Chubb filed a competing action in Marinette County, Wisconsin (the "Wisconsin Action"). *See* Chubb Wis. Compl., ECF 5-4 (Dec. 12, 2022).

By order dated May 22, 2023, Judge Toal dismissed the South Carolina Action, finding that "the appropriate course of action is to dismiss this case in its entirety, without prejudice," because, at the time of her ruling, the only underlying asbestos bodily injury suit pending in South Carolina against Tyco had been dismissed, and the court perceived that there was a "comprehensive coverage action" pending in the form of the Wisconsin Action. S.C. Dismissal Order, ECF 24-4 at 2 (May 22, 2023). Tyco promptly filed its coverage suit against Insurer Defendants in this Court approximately one week after Judge Toal's without-prejudice dismissal of its South Carolina Action.[5]

---

[5] Tyco's action here includes only AFFF claims, no asbestos-related claims.

### III.    Chubb's Wisconsin State Court Action

As just noted, in December 2022, two months after Tyco filed the South Carolina Action, and on the same day that it filed its motion to dismiss that action, Chubb filed the Wisconsin Action. In Count I of its complaint, Chubb sought a declaration that Tyco had released certain Chubb insurance policies in a 2011 settlement related to a prior Wisconsin litigation, and it sought a temporary and permanent injunction preventing Tyco from proceeding against Chubb in other courts on the released policies. Chubb Wis. Compl., ECF 5-4 ¶¶ 30–36; Wis. Petition for Temporary Injunction, ECF 5-13 (Dec. 16, 2022). Chubb also impleaded all of the insurers Tyco had named in its South Carolina Action, seeking a declaration of all parties' rights regarding insurance for AFFF- and asbestos-related claims. Chubb Wis. Compl., ECF 5-4 ¶¶ 41–54. The additional insurers then *cross-claimed* against Tyco.

To date, the court in the Wisconsin Action has focused on Chubb's claims regarding the release of certain Chubb policies in the 2011 settlement agreement, granting Chubb's motion for a Temporary Injunction in May 2023 (Wis. Temporary Injunction, ECF 5-67 (May 22, 2023)), and directing that "[a]ny party that wishes to make a dispositive motion regarding whether any settlement agreement released or did not release any insurance claim that is the subject of this action must do so no later than July 31, 2023," with a hearing on those issues to be held on October 31, 2023 (Wis. Scheduling Order, ECF 5-48 (April 17, 2023)). On August 11, 2023, Tyco and Chubb resolved the settlement-release issues that prompted Chubb to file the Wisconsin Action and agreed to a stipulated partial judgment. Dyschkant Decl., Exs. 8, 9.

As for the substantive insurance coverage issues, the Wisconsin court has phased them to come *after* its consideration of any policy releases. In its Case Management Order, the court set December 2024 as the date for completion of fact discovery, September 2025 for completion of expert discovery, and November 2025 for dispositive motions. Wis. Case Management Order,

ECF 5-66 (May 22, 2023). As a result, no substantive coverage issues are currently slated to be addressed in the Wisconsin Action until late 2025 at the earliest.

## IV.    This Court's Mediation Orders and Process

On May 4, 2023, as MDL mediations intensified, this Court ordered Tyco's insurers to attend an in-person mediation session in New York City on May 15, 2023, pursuant to Local Rules 16.08 and 16.09, which require attendance at a mediation conference by "the insurance carrier[s]" for "any insured party against whom a claim has been made." *See* Mediation Order, MDL Management Case, ECF 3075 (May 4, 2023). Judge Phillips oversaw that mediation session, which all of Tyco's domestic insurance carriers attended. As is now readily apparent from Insurer Defendants' motions to dismiss, however, Insurer Defendants contend that they are *not* subject to this Court's jurisdiction, calling into question whether they must comply with the Local Rules or participate in any Court-ordered mediation or litigation process beyond their previous voluntary assurances that they will do so.[6]

On May 31, 2023, Tyco filed its complaint against Insurer Defendants in this action, seeking a declaration of the parties' respective rights under Insurer Defendants' policies as respects coverage for AFFF-related claims. On June 1, this Court issued a further mediation order directing Insurer Defendants and another of Tyco's insurers to a further mediation with Judge Phillips, in Washington, DC, on June 15, 2023. MDL Management Case, ECF 3237 (June 1, 2023). That mediation occurred as scheduled, and Tyco and certain of its insurers participated in a further mediation session, in New York City, on July 17, 2023. Yet another session has been requested (but not confirmed) with the AIG Defendants, for next month.

---

[6] While objecting to this Court's jurisdiction, the AIG Defendants have told the Wisconsin court that they "have never challenged the application of the South Carolina District Court's mediation rules," and that Tyco's desire "to shore up jurisdiction for mediation" "simply makes no sense." Dyschkant Decl., Ex. 5 at 3 (AIG Wis. Letter, dated July 6, 2023).

V.      **The AIG Defendants' Effort to Overtake this Coverage Action**

On July 6, 2023, five weeks after Tyco filed its coverage complaint in this MDL action, and notwithstanding the Wisconsin court's focus on the scope-of-release issues that had precipitated the filing of the Wisconsin Action, the AIG Defendants filed a motion for partial summary judgment in the Wisconsin Action. *See* AIG Wis. MSJ Memorandum, ECF 24-16 (July 6, 2023). Their motion focused exclusively on the disputed question whether the claims in the AFFF suits involve—in the words of the AIG Defendants' insurance policies—a single "exposure to substantially the same general conditions" so as to constitute a single "occurrence", or whether (as the AIG Defendants contend) the AFFF suits involve multiple "occurrences". *Id.* at 20–28. This question is a key issue that will likely affect the manner in which Tyco's losses are allocated among its various insurers and the ultimate amount that each must pay. The issue, however, rests on the underlying facts, including the conditions, events, and actual or alleged bodily injury and property damage at issue in the AFFF suits.

On July 13, 2023, the Wisconsin court declined the AIG Defendants' request to enter an expedited briefing schedule on their motion. *See* Dyschkant Decl., Ex. 6 (Wis. Order Declining Briefing Schedule, dated July 13, 2023). And in response to a request from this Court, the Wisconsin court entered a temporary stay of the Wisconsin Action, pending an August 17, 2023, status conference to determine how that action should proceed. Wis. Stay Order, ECF 24-18 (July 13, 2023). Tyco has requested that the Wisconsin court extend its temporary stay to allow the insurance coverage issues to proceed in this Court, except as to Chubb whose claims would remain in the Wisconsin Action while Tyco and Chubb attempt to resolve their remaining insurance disputes. Dyschkant Decl., Ex. 7 at 2 (Letter re: Stay, dated Aug. 11, 2023).

## VI.    Tyco's Amended Complaint in this Coverage Action

Simultaneously with the filing of this Omnibus Response, Tyco has today filed an Amended Complaint to make two modest amendments to its case.[7] *First*, Tyco has added a breach of contract and money damages count against the AIG Defendants, who are Tyco's primary and umbrella insurers in most policy years at issue. Tyco has done this because those AIG Defendants have repudiated and breached their obligations to defend and indemnify Tyco in connection with the AFFF suits. Amended Compl., ECF 32 ¶ 65–71. *Second*, Tyco has added 14 more of its liability insurers, of which 12 are not parties to the Wisconsin Action. *Id.* ¶¶ 12–34. There are now 23 insurer parties to the coverage action pending in this Court, compared with 21 insurer parties to the Wisconsin Action. *Compare* Amended Compl. ¶¶ 12–34, *with* Chubb Wisconsin Compl. ¶¶ 5–13.[8] Tyco informed Insurer Defendants shortly before they filed their motions to dismiss that it would amend its complaint in this manner. Insurer Defendants filed their motions anyway, raising objections that, by their terms and as shown below, fail under both Tyco's Amended Complaint and its original Complaint.

## ARGUMENT

This Court has proper jurisdiction over this action and Insurer Defendants. There are ample reasons for the Court to proceed, and no compelling reasons for the Court to decline its "virtually unflagging obligation" to exercise the jurisdiction it possesses here.

---

[7] Tyco has filed its Amended Complaint under Fed. R. Civ. P. 15(a)(1)(B), which allows amendment at this time without formal leave of court.

[8] Tyco also revised and expanded its citizenship allegation, without impact to the Court's diversity jurisdiction, because, as a limited partnership, it has the citizenship of its partners.

**I.     Insurer Defendants' Argument that the Court Lacks Authority To Proceed Misunderstands Federal Venue Law, JPML Procedures, and this Court's Local Rules, All of Which Are Immaterial in Any Event to the Court's Jurisdiction.**

Insurer Defendants contend that this coverage action is subject to dismissal because Tyco failed to follow the rules when filing its Complaint. The Zurich Defendants go so far as to argue that this purported defect deprives the Court of subject matter jurisdiction. Both arguments fail.

As a threshold matter, this Court's *jurisdiction* is conferred by the federal diversity statute, 28 U.S.C. § 1332, not the JPML Rules or enacting statute. At best for Insurer Defendants, their "MDL objection" is a *venue* objection:  an argument that this case should be in a different federal district and did not properly make its way to this Court. *See* 28 U.S.C. §§ 1390–1413 (including the MDL enacting statute, 28 U.S.C. § 1407, within Chapter 87 of Title 28—the venue chapter of the U.S. Code).

Tellingly, however, Insurer Defendants have not filed a motion challenging venue under Rule 12(b)(3) of the Federal Rules of Civil Procedure, and in any event, venue is self-evidently proper here, in the District of South Carolina, under the terms of 28 U.S.C. §§ 1391(b)(2) and 1391(c)(2). Nor have Insurer Defendants identified any other federal district that they contend would be a more appropriate venue—and there is none.[9] Further, where venue has been laid in a federal district court, the question whether to proceed in that venue versus another (i.e., in cases, *unlike this one*, where defendants have moved to transfer venue) is committed to the sound discretion of the court before which the action has been filed. *See Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988). Here, Insurer Defendants have identified no reason for this Court to exercise its discretion to send this case to any other federal district.

---

[9] Tyco addresses Insurer Defendants' separate arguments that this Court should abstain and defer to the *Wisconsin Action* in Part IV, below.

Insurer Defendants' arguments also rest on the mistaken premise that Tyco needed to file this action in some other (unidentified) federal district and then persuade the JPML (or that hypothetical prior court) to "transfer" the case to this district. *See, e.g.*, AIG Mem. at 11; Great Am. Mem., ECF 22-1 at 13; Zurich Mem., ECF 26-1 at 15. But the JPML Rules expressly provide that Tyco did not need, and should not even have sought, the approval of the JPML in filing this action. As Tyco states in its pleadings, but for this MDL proceeding and CMO 3, Tyco would have filed this action *directly in this Court*: the District of South Carolina. *See* Compl., ECF 1 ¶ 24; Amended Compl., ECF 32 ¶ 38. Under JPML Rule 7.2(a), "[p]otential tag-along actions filed *in the transferee district* [here, the District of South Carolina] *do not require Panel action*." (Emphasis added). Instead, "[a] party should request assignment of such actions to the Section 1407 transferee judge in accordance with applicable *local rules*." *Id.* (emphasis added).

That is precisely what Tyco did when it filed its original complaint in this district and designated the action as associated with the AFFF MDL proceeding. Twelve days after Tyco filed its complaint, the Clerk of Court, in the ordinary course, determined that this action is indeed related to the MDL and thus, docketed it as one associated with the MDL. *See* Docket Entry No. 3, *Tyco Fire Prods LP v. AIU Ins. Co.*, No. 2:18-cv-02873 (D.S.C. June 12, 2023). This case assignment was wholly unremarkable and appropriate, in accordance with the Local Rules of this Court, to which JPML Rule 7.2(a) refers. As Local Rule 26.01(E) confirms, the Court typically makes an administrative assignment of related cases—whether MDL or not—"to a single judge" when such cases "arise from the same or identical transactions, happenings, or events; involve the identical parties or property; or for any other reason would entail substantial duplication of labor if heard by different judges." There can be no real question that this coverage action arises from "the same or identical transactions, happenings, or events" as the

12

AFFF suits, or that there would be "substantial duplication of labor" if this matter was not heard by, and assigned to, the same judge.

Further, CMO 3 itself provides that actions potentially involving common questions of fact with the MDL may be "directly filed" in, and associated with, the AFFF MDL for purposes of efficiency. CMO 3 extends to "all *related actions* originally filed in this Court *or* transferred or removed to this Court and assigned thereto as part of" the MDL. CMO 3 ¶ 1 (emphasis added). It also makes clear that "any plaintiff whose case would be subject to transfer to these MDL proceedings may file his or her case directly in the District of South Carolina." *Id.* ¶ 25.

Contrary to what the Zurich Defendants suggest, these orders (and the procedure that Tyco followed) do not affect, much less impair, this Court's subject matter jurisdiction. As the logic of JPML Rule 7.2(a) recognizes, "[c]ases consolidated for MDL pretrial proceedings ordinarily retain their separate identities," and the MDL-enacting venue statute (28 U.S.C. § 1407) "does not imbue transferred actions with some new and distinctive character." *Gelboim v. Bank of America Corp.*, 574 U.S. 405, 413 (2015). Indeed, "direct filing complaints in MDL proceedings is not uncommon, nor is it *per se* impermissible under the MDL statute, the JPML Rules of Procedure, or interpretive case law." *In re Takata Airbag Prods. Liab. Litig.*, 379 F. Supp. 3d 1333, 1338 (S.D. Fla. 2019). A case filed directly in a district overseeing an MDL does not need the JPML to transfer it, because the case already exists, and will be heard, within that district and may be administratively associated with the MDL for pretrial proceedings, pursuant to the District Court's inherent authority to manage its docket.

None of the cases that the Zurich Defendants rely upon alter these well-recognized principles. This is not a circumstance like the one *In re January 2021 Short Squeeze Trading Litigation*, where the court concluded that plaintiffs had failed to file a cognizable federal action

in the first place when they attempted to assert claims "directly in this MDL." 580 F. Supp. 3d 1243, 1247–48, 1252–53 (S.D. Fla. 2022). As the court noted, the plaintiffs there also did not "file a separate action in this District," and thus were "not affiliated with an underlying civil case number in this District[.]" *Id.* at 1247, 1253. This case likewise does not involve a situation in which the Court "lacks original jurisdiction" over the action, such as *In re Farmers Ins. Exch. Claims Reps. Overtime Pay Litig.*, 2008 WL 4763029 (D. Or. Oct. 28, 2008), or where Article III standing is absent, such as *In re Packaged Ice Antitrust Litigation*, 2011 WL 6178891 (E.D. Mich. Dec. 12, 2011). To the contrary, the Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332, and Tyco plainly has Article III standing to assert its insurance coverage rights.

Similarly, there is no merit to Insurer Defendants' argument that Tyco's action in this district should not be associated with the MDL because it involves insurance coverage issues. The sole case that Insurer Defendants cite for this point, *In re Chinese-Manufactured Drywall Liability Litigation*, contradicts their position and supports association of this insurance action with the related AFFF MDL proceeding here. 2010 WL 11747797 (J.P.M.L. June 15, 2010). In *Drywall* (which involved the proposed transfer of an insurance action to the MDL district *from a different district*), the JPML reasoned that transfer was not warranted because "the cases seem to present strictly legal questions which require little or no centralized discovery." *Id.* at *1. As the JPML explained, however, "different circumstances could create a stronger case for transfer," and "[w]here insurance coverage actions require and rely on the same factual discovery as the underlying tort actions, transfer may be warranted."

Here, there is no proposed transfer from a different district, and many of the key insurance issues in dispute rely on the very same factual issues (and thus, the same fact

discovery) as those in the MDL. As the AIG Defendants' own partial motion for summary judgment in the Wisconsin Action reflects, the question of number of occurrences rests on the precise factual characteristics alleged and proven in the underlying AFFF suits. *See* ECF 24-16 at 20–28 (relying upon alleged characteristics and geographic locations of AFFF-related injuries). Similarly, another of Insurer Defendants' main coverage defenses is the contention that Tyco expected or intended the bodily injury and property damage alleged in the AFFF Suits. *See, e.g.*, AIG Defendants' Wis. Answer, ECF 5-20, Cross-Claim ¶ 30(p) (Jan. 25, 2023). That issue, too, involves the very factual issues that prompted the JPML to centralize the AFFF Suits in this MDL, such as "the knowledge of the AFFF manufacturers regarding the dangers of PFOA and PFOS." ECF 1 at 3. The overlap in factual issues extends throughout the coverage case, as is readily apparently from the AIG Defendants' discovery requests in the Wisconsin Action: of the 31 requests for production the AIG Defendants have served there, 21 of them seek discovery of the underlying facts at issue in the AFFF suits. *See, e.g.*, AIG Wis. Requests for Production, ECF 24-13, RFP Nos. 9–23, 25–27; ECF 24-11, RFP Nos. 1–3.

Further, the JPML has not hesitated to centralize insurance coverage matters with an MDL where, as here, the insurance issues involve common factual issues with the MDL and the policyholder is a defendant within the MDL. *See, e.g.*, *In re Oil Spill by Oil Rig "Deepwater Horizon,"* 764 F. Supp. 2d 1352, 1353 (J.P.M.L. 2011) (common questions involving explosion and fire on oil rig, and policyholder was a defendant in the MDL); *In re Helicopter Crash Near Weaverville, Cal.*, 626 F. Supp. 2d 1355, 1356–57 (J.P.M.L. 2009) (common question involving who was in control of a helicopter at the time of crash).

The JPML did not and does not need to act on this insurance coverage action in order for this Court to hear it, and the issues this action raises are inarguably related to and appropriately addressed within, and in conjunction with, the MDL.

## II.    The Court Has Personal Jurisdiction Over Each Insurer Defendant.

### A.    Insurer Defendants Consented to General Personal Jurisdiction When They Obtained Licenses to Do Business in South Carolina.

Just six weeks ago, in *Mallory*, the Supreme Court clarified that the standard set forth in *International Shoe v. State of Washington*, 326 U.S. 310 (1945), does not supply the sole pathway by which a court can obtain personal jurisdiction over an out-of-state corporation. *Mallory v. Norfolk Southern Railway*, 143 S. Ct. 2028, at 2038–45 (2023). Rather, as *Mallory* confirmed, the rule that the Supreme Court announced 100 years ago in *Pennsylvania Fire Insurance Co. v. Gold Issue Mining & Milling Co.*, 243 U.S. 93 (1917) (an insurance case, no less) still applies with full force: an out-of-state corporation that has consented to in-state suits in order to do business in the forum may be sued there, consistent with due process, while the standard for *non-consenting* corporations is articulated by *International Shoe*. *Id.*

As just reaffirmed by *Mallory*, *Pennsylvania Fire* controls here. In that case, the Supreme Court held that Missouri courts had personal jurisdiction over an insurance company incorporated in Pennsylvania, in a dispute with a policyholder incorporated in Arizona regarding policies covering buildings in Colorado. *Mallory*, 143 S. Ct. at 2035–36; *Pennsylvania Fire*, 243 U.S. at 94. The Supreme Court explained that the insurer had consented to personal jurisdiction in Missouri because, pursuant to Missouri statute, it "had executed a power of attorney that made service on the superintendent [of insurance] the equivalent of personal service." *Id.* at 94; *see also id.* at 95 ("If by a corporate vote [the insurer] had accepted service in this specific case, there would be no doubt of the jurisdiction of the state court of a transitory action of contract").

16

South Carolina has enacted and enforces a similar insurance service statute to the one in

*Pennsylvania Fire*. The South Carolina statute provides, in relevant part:

> Every insurer shall, before being licensed, appoint in writing the [South Carolina] director [of insurance] and his successors in office to be its true and lawful attorney *upon whom all legal process in any action or proceeding against it must be served* and in this writing shall agree that *any lawful process against it which is served upon this attorney is of the same legal force and validity as if served upon the insurer* and that the authority continues in force so long as any liability remains outstanding in the State.

S.C. Code § 38-5-70 (emphasis added).

Insurer Defendants are subject to S.C. Code § 38-5-70 because they are licensed to sell

insurance in South Carolina. Indeed, Tyco served process upon each of the Insurer Defendants in

this action pursuant to this very statute, by delivering the summons to the South Carolina

Director of Insurance who, in turn, acknowledged successful process as the agent of each Insurer

Defendant. *See* Proofs and Acknowledgments of Service, ECF 30-1 through 30-9 in No. 2:23-cv-

02384 (Aug. 11, 2023). By agreeing to and accepting service of process in this manner, Insurer

Defendants have consented to personal jurisdiction in South Carolina. *See White Oak Manor,*

*Inc. v. Lexington Ins. Co.*, 407 S.C. 1, 8 (S.C. 2014) ("The purpose of the summons is to *acquire*

*jurisdiction* of the person of the defendant and to give him notice of the action and an

opportunity to appear and defend." (Emphasis added)).

*Fidrych v. Marriott International, Inc.*, 952 F.3d 124 (4th Cir. 2020), does not shield

Insurer Defendants from personal jurisdiction. That case, which was decided before *Mallory*,

held that a foreign corporation's act of obtaining a certificate of authority to do business in South

Carolina pursuant to two *non-insurance* statutes—S.C. Code §§ 33-15-101 and 33-15-105—did

not reflect consent to personal jurisdiction. *Id.* at 137. Those statutes are not a part of South

Carolina's insurance code and, by their terms, state only that a foreign corporation agrees

17

thereunder to jurisdiction "to determine its South Carolina *tax liability*." S.C. Code § 33-15-105(d) (emphasis added).

By contrast, the relevant statute here applies specifically to insurance companies, for which (given the nature of insurance) the state has a unique regulatory interest, and requires that they agree to be found in South Carolina for "all legal process in any action." S.C. Code § 38-5-70; *see Mallory*, 143 S. Ct. at 2035 ("Yet another group of States applied this all-purpose-jurisdiction rule to a subset of corporate defendants, like railroads *and insurance companies*." (Emphasis added)). As the South Carolina Supreme Court has held, the state's "substituted service or constructive service statutes" were "designed by the legislature to provide a simple and easy method of obtaining jurisdiction over a foreign insurance company." *Equilease Corp. v. Weathers*, 275 S.C. 478, 483 (S.C. 1980). Insurer Defendants duly consented to jurisdiction here.

### B. Insurer Defendants are Subject to Specific Personal Jurisdiction Because They Sold Policies Covering the Risks in South Carolina at Issue.

Even where a foreign corporation has not consented to personal jurisdiction, a federal court still may reach it in a diversity action, "if such jurisdiction is authorized by the long-arm statute of the state in which it sits and application of the long-arm statute is consistent with the due process clause of the Fourteenth Amendment." *ESAB Grp., Inc. v. Zurich Ins. PLC*, 685 F.3d 376, 391 (4th Cir. 2012). Because South Carolina's long-arm statute "is coextensive with the Due Process Clause," the court may "proceed directly to the constitutional analysis." *Id.*

The question "whether the exercise of specific jurisdiction over a party comports with due process" rests on a three-part test: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiff['s] claims arise out of those activities directed at the State; and (3) whether the exercise of personal

18

jurisdiction would be constitutionally reasonable." *Id.* at 391–92 (modifications in original). All three prongs are satisfied here, regardless of Insurer Defendants' consent.

**_Purposeful Availment._** Each Insurer Defendant sold one or more policies to Tyco that cover liabilities nationwide, including in South Carolina.[10] *See* Amended Compl. ¶ 36; Dyschkant Decl. ¶ 7 (summarizing territory-of-coverage provisions). Each Insurer Defendant did so against the backdrop of S.C. Code § 38-61-10, which provides that "[a]ll contracts of insurance on property, lives, or interests in this State are considered to be made in the State." Under that statute, "it is immaterial where the contract was entered into" as an actual fact, and "there is no requirement that the policyholders or insurers be citizens of South Carolina." *Sangamo Weston, Inc. v. Nat'l Sur. Corp.*, 307 S.C. 143, 149 (S.C. 1992). Here, there can be no real question that Insurer Defendants knew their insured sold fire safety products nationwide and that Tyco entities did business in South Carolina.

The Fourth Circuit has long recognized that when an insurer sells a policy with a coverage territory encompassing a forum state (e.g., losses within "the United States of America, its territories or possessions"), that act constitutes purposeful availment sufficient to secure personal jurisdiction there. *See Rossman v. State Farm Mut. Auto. Ins. Co.*, 832 F.2d 282 (4th Cir. 1987). Holding that an automobile liability insurer was subject to suit in Virginia when it sold a nationwide policy to an Illinois policyholder, *Rossman* explained: "Presumably, [the insurer] offers this type of broad coverage to induce customers to buy its policies and to pay

---

[10] Great American's contention that its policy is silent about the coverage territory does not change this fact. *See* ECF 22-1 at 11. By omitting a territorial coverage limitation entirely, the Great American policy provides *worldwide* coverage. *See Marchant v. South Carolina Ins. Co.*, 281 S.C. 585 (S.C. Ct. App. 1984) (holding that insurer's *inclusion* of a territorial limitation clause in uninsured motorist policy was enforceable, as otherwise policy would cover "accidents occurring anywhere on the face of the earth").

19

higher premiums for them. The benefits thereby accruing to [the insurer] are neither fortuitous nor incidental." *Id.* at 287; *see also*, *e.g.*, *Leggett v. Smith*, 386 S.C. 63, 74–77 (S.C. Ct. App. 2009) (New York insurance company, which issued policy to New York resident, "could reasonably expect to be haled into court in South Carolina" due to its "territory-of-coverage clause limiting coverage to the United States . . . and Canada").

Nor is there any merit to the Zurich Defendants' attempt to avoid this principle by claiming that in Tyco's case, unlike *Rossman*, "the policies at issue did not relate to 'movable risks' such as automobiles." Zurich Mem. 21. That is nonsense. Products (like AFFF) that Tyco manufactured are self-evidently "movable." They move across state lines all the time. That is one of the reasons Tyco is facing claims in South Carolina and also one of the reasons Tyco bought nationwide liability insurance. In any event, the Fourth Circuit affirmed as much in *ESAB Group, Inc. v. Zurich Insurance PLC*, where it held that an insurer which sold "worldwide" product liability coverage was subject to personal jurisdiction in South Carolina in connection with nationwide product liability suits, despite the insurer's objections that it "maintains no office, employees, or agents in South Carolina, and it owns no property" in the state. 685 F.3d at 383–84, 392–93; *see also Eli Lilly & Co. v. Home Ins. Co.*, 794 F.2d 710, 720 (D.C. Cir. 1986) ("[Insurers] knew that [their policyholder] distributed products nationwide. They therefore were aware that [their policyholder] was likely to be sued in any jurisdiction in the nation . . . . Moreover, [insurers] were aware that if [the policyholder] was sued it was likely to attempt to implead [them] if a dispute arose over their duty to indemnify or defend.").

Insurer Defendants' sale of policies with a coverage territory including South Carolina is sufficient on its own. But the justification for personal jurisdiction reaches its apex where, as here, an insurer has a duty to defend suits against the policyholder that may arise in the forum.

"Litigation . . . is often a necessary part of the insurance business. . . . Therefore, by agreeing to furnish a defense to its policyholder within a specified policy territory, an insurer indicates its willingness to be haled into court in foreign forums within this territory." *ESAB*, 685 F.3d at 392 (citing *Rossman*, 832 F.2d at 286–87); *see also Farmers Ins. Exch. v. Portage La Prairie Mut. Ins.* Co., 907 F.2d 911, 914 (9th Cir. 1990).

Here, each of the Insurer Defendants promised in their policies either to defend Tyco against suits that may be brought in South Carolina, or reserved the right to participate in Tyco's defense and pay its defense costs incurred in connection with such suits. *See* Dyschkant Decl. ¶ 8 (summarizing defense provisions). The Zurich Defendants' protestation that they "only *reserved the right* to defend does not change the outcome. *See* Zurich Mem. at 21-22. "By reserving the right to defend insured entities and by agreeing to make indemnity payments within the territory of coverage, the Insurers have purposefully availed themselves of the privileges and benefits of conducting business in any forum state within the covered territory." *TH Agric. & Nutrition, LLC v. Ace European Grp. Ltd.*, 488 F.3d 1282, 1291 (10th Cir. 2007).[11]

**_Claims Arising Out of Activities Directed to the State._** Tyco's claims against Insurer Defendants also arise out of activities directed at South Carolina. Tyco seeks insurance coverage under policies that covered the risk of liability nationwide (including South Carolina), for payment of defense expenses and indemnity of any settlements in this South Carolina-based MDL, and in which more than 80 actions have been brought directly in South Carolina. *See, e.g.*,

---

[11] *Lexington Insurance Company v. Hotai Insurance Company*, 938 F.3d 874 (7th 2019), on which the Zurich Defendants rely, offers insurers no refuge. *Lexington* held that *Taiwanese*-based insurers did not purposefully avail themselves of Wisconsin when their *Taiwanese*-based policyholders executed contracts *in Taiwan* to sell goods to a Wisconsin-based manufacturer, thereby adding the Wisconsin company as an "additional insured" to its Taiwanese policies. Indeed, the policies at issue contained Taiwan choice of law provisions and required insureds to submit to the Taiwanese courts (or Taiwanese-seated arbitration). *See id.* at 877.

*Eli Lilly & Co.*, 794 F.2d at 720 (affirming personal jurisdiction in District of Columbia for coverage dispute involving liability for products distributed there and nationwide); *Farmers Ins. Exch. v. Portage La Prairie Mut. Ins. Co.*, 907 F.2d 911, 914 (9th Cir. 1990) ("But for Portage's alleged breach of promise to defend its insured for injuries caused in Montana, this suit would not have arisen. The second prong is satisfied.").

Insurer Defendants miss the mark when they contend that "wherever the underlying claims may have arisen is not relevant to a jurisdictional analysis[.]" *See, e.g.*, Great Am. Mem. at 10; *see also* Starr Mem., ECF 27-1 at 8; Zurich Mem. at 19; AIG Mem. at 27-28. As the authority above demonstrates, an insurer that sells nationwide liability coverage can reasonably expect to be sued over coverage wherever the insured risk—and the duty to provide coverage for it—materializes. None of Insurer Defendants' cases hold to the contrary. Indeed, only two of those cases even involve claims for insurance coverage, and both are inapposite:

In *KCHM, Inc. v. Mid-Continent Cas. Co.* (cited in AIG Mem. at 27), the court found that there was no personal jurisdiction in North Carolina because the insured was seeking coverage under a policy issued in Oklahoma in connection with a lawsuit in West Virginia that arose out of a structural collapse that occurred in West Virginia. 264 F. Supp. 3d 697 (E.D.N.C. 2017). Here, by contrast, the alleged underlying liabilities that Insurer Defendants promised to insure, and for which Tyco seeks coverage, involve over 80 lawsuits alleging bodily injury and property damage brought in South Carolina as part of a nationwide MDL proceeding that has been pending in South Carolina for five years. *Major v. National Indemnity Co.* (cited in Great Am. Mem. at 10) is even farther afield. 267 S.C. 517 (S.C. 1976). There, the court dismissed a suit filed by a third-party claimant against an insurer because the policyholder was a necessary party whom the plaintiff failed to join to the suit. 267 S.C. at 518. *Major* has nothing to do with

personal jurisdiction or claims like those here brought against an insurer by its own insured. The other cases that Insurer Defendants rely upon are likewise irrelevant here.[12]

**_Constitutional Reasonableness._** The Court's exercise of personal jurisdiction over Insurer Defendants is also constitutionally reasonable. This prong protects "a party from litigation so gravely difficult and inconvenient that the party unfairly is at a severe disadvantage in comparison to its opponent." _ESAB Grp._, 685 F.3d at 392. Where, as here, Insurer Defendants have sold insurance with a national or global coverage territory, they have "indicated that the burden of appearing in a forum in South Carolina is not exceedingly onerous." _Id._ at 393. Indeed, Insurer Defendants routinely litigate in South Carolina, and they do not and cannot contend that it would be difficult—let alone, put them at a "severe disadvantage"—to do so here.[13] Further, Tyco has a substantial interest in the convenience of litigating in South Carolina, where it is already defending the vast majority of the lawsuits for which it seeks coverage.

---

[12] _Bristol-Myers Squibb Co. v. Super. Ct._, 582 U.S. 255 (2017), held that a drug company was not subject to personal jurisdiction in California for a product liability suit by patients who were allegedly injured by the defendant's drug because the plaintiffs had neither bought the drug in California nor used or suffered any harm from the drug there. _Fidrych v. Marriott Int'l, Inc._, 952 F.3d 124 (4th Cir. 2020), held that a hotel company was not subject to personal jurisdiction in South Carolina because "none of [the hotel's] actions or omissions that form the basis of the Plaintiffs' claims took place in South Carolina or were otherwise directed at South Carolina residents." _In re Showa Denko K.K._, 953 F.2d 162 (4th Cir. 1992), held that a court did not have the authority to order persons who were not parties to the litigation to contribute to a settlement. _Aviation Assocs. & Consultants, Inc. v. Jet Time, Inc._, 303 S.C. 502 (S.C. 1991), held that a foreign corporation that executed a contract for the sale of an airplane outside South Carolina and did not contemplate any performance or other action in South Carolina did not have sufficient contacts with South Carolina to satisfy due process for personal jurisdiction.

[13] _See, e.g._, _Protopapas v. Zurich Am. Ins. Co._, 2023 WL 2206640 (D.S.C. Feb. 24, 2023); 2022 WL 3224568 (S.C. Ct. App. Aug. 10, 2022) (naming New Hampshire Insurance Company as a defendant); _Est. of Anderson by Brown v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA_., 2018 WL 1428497 (D.S.C. Mar. 22, 2018); _Starr Indem. & Liab. Co. v. Ocean Keyes Dev., LLC_, 2017 WL 6324632 (D.S.C. Dec. 11, 2017); _Baker Roofing Co. v. Am. Guarantee & Liab. Ins. Co._, 2017 WL 710541 (D.S.C. Feb. 23, 2017); _Del Webb Communities, Inc. v. Am. Home Assurance Co._, 2016 WL 5407894 (D.S.C. Sept. 28, 2016).

C.     **American Guarantee Agreed to be Sued Wherever Tyco Requests**

Finally, the objection by American Guarantee (a Zurich Defendant) to personal jurisdiction is especially puzzling. One of its policies expressly promises that, "[i]n the event an action or proceeding arises under the contract, it is agreed that [American Guarantee], at [Tyco's] request, will submit to the jurisdiction of a court of competent jurisdiction within the United States." Ferguson Decl., Ex. 4, ECF 26-5 at printed page 90 of 128 (§ IV(S) in Policy No. IPR 3792307-00). Tyco has made this request by suing American Guarantee, and American Guarantee is bound to honor that choice. *See Eli Lilly*, 794 F.2d at 718 (enforcing similar clause).

III.    **The South Carolina "Door-Closing" Statute Does Not Apply.**

Defendants contend that even if the Court has subject matter and personal jurisdiction, it still lacks the power to hear the case under S.C. Code § 15-5-150 (the "Door-Closing Statute"). *See* AIG Mem. at 30; Great Am. Mem. at 18; Zurich Mem. at 23; Starr Mem. at 10. This argument is likewise meritless.

The Door-Closing Statute is a *state* law that does not speak to *federal* jurisdiction or venue. *See Proctor & Schwartz, Inc. v. Rollins*, 634 F.2d 738, 740 (4th Cir. 1980) (federal courts apply the Door-Closing Statute as a matter of comity subject to federal considerations). Further, even by its terms, that statute allows non-residents to sue foreign corporations in a South Carolina court if either (i) "the cause of action shall have arisen . . . within this State" *or* (ii) "the subject of the action shall be situated within this State." S.C. Code § 15-5-150; As Judge Norton recognized in *Flexi-Van Leasing, Inc. v. Travelers Indem. Co.*, 2017 WL 11707321 (D.S.C. Dec. 7, 2017), both propositions are met in insurance coverage disputes like this one that involve coverage triggered by underlying lawsuits pending in a court within South Carolina.

The first prong is satisfied because a coverage suit to enforce rights to insurance upon a risk of liability that has materialized in South Carolina—like this MDL proceeding—constitutes

a cause of action arising within South Carolina. "[T]he nexus between South Carolina and the Policy is that [the policyholder] . . . is defending itself in a negligence action in this court, for which the Policy provides indemnification and defense on [the insurer's] part." *Id.* at *4. Likewise, the second prong is satisfied because the subject-matter of this coverage action is situated in South Carolina: Tyco's "primary right is the Policy provision providing a defense and indemnification for suits seeking bodily injury damages, the performance of which was triggered in South Carolina upon the filing of the underlying action." *Id.* at *5.

Insurer Defendants do not dispute that *Flexi-Van* is squarely on point. Rather, they contend that the Court should follow *other* cases, with less relevant facts, rather than the persuasive reasoning of *Flexi-Van*. But the principal case on which Insurer Defendants rely, *McCall v. State Farm Mut. Auto. Ins. Co.* (cited in AIG Mem. 30), does not contradict *Flexi-Van*. That case held that the Door-Closing Statute barred suit in South Carolina for a North Carolina resident's claim against a North Carolina insurer under a policy purchased by North Carolina policyholders. 359 S.C. 372, 380–81 (Ct. App. 2004).

The *McCall* court observed that although the case originally included claims against insurance agents in South Carolina for a claimed error in removing a death benefit from the North Carolina policy, those claims were "dismissed with prejudice," leaving only an out-of-state party claiming an error by an out-of-state insurer in modifying the terms of an out-of-state insurance policy. *Id.* at 381. Further, although the decedent was a resident of South Carolina at the time of death, the court noted that the claims at hand were not brought by the decedent or his estate, but instead, by a North Carolina beneficiary in her own capacity based on errors occurring in North Carolina. *Id.* at 383. In that context, the court held that the Door-Closing Statute applied. Here, by contrast, Insurer Defendants sold an insurance policy covering nationwide risks

of liability *including in South Carolina*; those risks thereafter have materialized within the state; and Tyco now seeks to enforce its rights as a policyholder to coverage for them.

Nor does the Door-Closing Statute restrict Tyco's coverage action to just the issue of coverage for the AFFF suits that claim injury within South Carolina. *See* AIG Mem. at 32-33; Zurich Mem. at 23. Insurer Defendants' argument, if accepted, would lead to the absurd result that Tyco must file piecemeal lawsuits in all states and territories at issue in order to fully recover insurance for liabilities encompassed by this MDL proceeding. Nothing in the language of the Door-Closing Statute purports to slice up a party's claim for performance under an insurance contract based on the various places where performance was supposed to have occurred. Rather, if a "cause of action shall have arisen" or its "subject" is "situated within" South Carolina, the statute opens the door to the *full* lawsuit. Nor does *Farmer v. Monsanto Corp.*, impose a contrary limitation. 353 S.C. 553, 557–558 (S.C. 2003). That case concerned the entirely different question whether a class representative with capacity under the Door-Closing Statute may represent absent class members who *lack* capacity under the statute. Here, Tyco *has* capacity under the Door-Closing Statute, and brings this lawsuit pursuant to that capacity.

Insurer Defendants' reliance upon the other cases they cite fares no better. *Tuttle Dozer Works, Inc. v. Gyro-Trac (USA), Inc.* (cited in AIG Mem. at 32) does not "suggest[]" that the Door-Closing Statute splits up the relief that a plaintiff may obtain for performance of a contract once the initial door to suit in South Carolina has been opened. 463 F. Supp. 2d 544 (D.S.C. 2006). Rather, in that case, the defendants filed a motion to dismiss for lack of personal jurisdiction and also argued that the "door-closing statute precludes some of the [plaintiff's] causes of action because they did not arise in South Carolina." *Id* at 549. The court denied the

motion, holding that "th[e] disputes are not ripe because the record is not developed enough to allow a decision on the issues." *Id*. at 548, 551.

In *Snell v. Golden Rule Ins. Co.* (cited in AIG Mem. at 31), the dispute involved whether the plaintiff was, as a matter of fact, a resident of South Carolina such that the Door-Closing Statute would not be relevant in the first place. 2009 WL 185723 (D.S.C. Jan. 23, 2009). The court held that the plaintiff was *not* a South Carolina resident but rather a Virginia resident, and dismissed the lawsuit because it involved a health insurance contract sold by an Indiana insurer to a Virginia resident covering her health at a home address listed in Virginia.

The Door-Closing Statute thus does not apply here, and it does not divest this Court of jurisdiction or venue.

## IV.    The Court Should Not Abstain from Exercising its Jurisdiction.

Once jurisdiction has been conferred on a federal court, the court ordinarily should exercise it. As the Supreme Court has held, abstention is "the exception, not the rule," and federal courts have a "virtually unflagging obligation" to exercise their jurisdiction. *Colorado River Water Conserv. Dist. v. United States*, 424 U.S. 800, 813, 817 (1976). Further, abstention is not appropriate "simply because a pending state-court proceeding involves the same subject matter," *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72 (2013), and "[t]here is no doctrine that . . . pendency of state judicial proceedings excludes the federal courts." *New Orleans Public Service, Inc. v. Council of City of New Orleans,* 491 U.S. 350, 373, (1989).

### A.    The *Colorado River* Test, Not the *Brillhart/Wilton* Test, Applies Here.

Insurer Defendants' main argument for abstention rests upon the *Brillhart/Wilton* test, under which a federal court has discretion whether to exercise jurisdiction over an action that *solely* seeks a declaration of rights pursuant to the federal Declaratory Judgment Act, 28 U.S.C. § 2201. *See* AIG Mem. 14–25 (citing *Med. Mut. Ins. Co. of N.C. v. Littaua*, 35 F.4th 205 (4th

Cir. 2022)). Because Tyco seeks substantial money damages from the AIG Defendants, who sold

Tyco hundreds of millions of dollars of primary and umbrella coverage, in addition to both

declaratory and injunctive relief from all Insurer Defendants, the *Brillhart/Wilton* test does not

apply. While the exercise of jurisdiction would be appropriate under *Brillhart/Wilton*, the more

stringent *Colorado River* test governs and removes any potential doubt. *See VonRosenberg v.

Lawrence*, 781 F.3d 731, 735 (4th Cir. 2015) ("We now join several of our sister circuits in

holding that *Colorado River*, not *Brillhart/Wilton*, must guide a court's decision to abstain from

adjudicating mixed complaints alleging claims for both declaratory and nondeclaratory relief.").

**B.      Under the *Colorado River* Test, the Court has a "Virtually Unflagging
          Obligation" to Exercise Its Jurisdiction over this Action.**

"*Colorado River* permits a court to abstain only in the rare circumstance in which the

needs of judicial administration are so pressing as to supersede the court's otherwise 'virtually

unflagging *obligation*' to exercise its jurisdiction over that federal action." *VonRosenberg*, 781

F.3d at 735 (emphasis in original).

"The threshold question in deciding whether *Colorado River* abstention is appropriate is

whether there are parallel federal and state suits." *Great Am. Ins. Co. v. Gross*, 468 F.3d 199, 207

(4th Cir. 2006). If the suits are "parallel", the Court next must "carefully balance several factors

with the balance heavily weighted in favor of the exercise of jurisdiction." *Id.* Six factors "guide

the analysis":

> (1) whether the subject matter of the litigation involves property
> where the first court may assume in rem jurisdiction to the exclusion
> of others; (2) whether the federal forum is an inconvenient one;
> (3) the desirability of avoiding piecemeal litigation; (4) the relevant
> order in which the courts obtained jurisdiction and the progress
> achieved in each action; (5) whether state law or federal law
> provides the rule of decision on the merits; and (6) the adequacy of
> the state proceeding to protect the parties' rights.

28

*Id.* at 207–08. "In the final analysis, abstention is the exception, not the rule, and it may be considered only when the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties. *Id.* at 208. "[O]nly the clearest of justifications will warrant dismissal in favor of concurrent court proceedings." *VonRosenberg*, 781 F.3d at 735.[14]

Measured against this standard, this Court's exercise of jurisdiction is warranted. As a threshold matter, concurrent lawsuits are "parallel" under this test only when "substantially the same parties litigate substantially the same issues in different forums." *Chase Brexton HealthServs., Inc., v. Maryland*, 411 F.3d 457, 464 (4th Cir. 2005). This requirement is "strictly construed," and "requir[es] that the parties involved be almost identical." *Great Am. Ins. Co.*, 468 F.3d at 208. "In addition, even state and federal claims arising out of the same factual circumstances do not qualify as parallel if they differ in scope or involve different remedies." *VonRosenberg v. Lawrence*, 849 F.3d 163, 168 (4th Cir. 2017). This action and the Wisconsin Action are not "parallel" under Fourth Circuit law, thus ending the abstention analysis.

Here, Tyco's Amended Complaint names 23 insurer parties as defendants, compared with the 21 insurer parties who are currently in the Wisconsin Action initiated by Chubb. Of those numbers, 12 insurer parties named in the Amended Complaint are *not* parties to the Wisconsin Action, and similarly 10 insurer parties in the Wisconsin Action are *not* parties to this action. In short, there is a considerable absence of identity among the parties to the two actions. Further, the Amended Complaint pleads breach of contract and seeks damages from certain AIG

---

[14] Further, when applied to complaints seeking both damages and declaratory relief, the "*Colorado River* abstention doctrine is an all-or-nothing proposition" (i.e., the court does not split the action and proceed with non-declaratory claims while dismissing declaratory claims). *Oldfield Club v. TI Oldfield Dev., LLC*, 2017 WL 5523045, at *3 (D.S.C. Nov. 17, 2017).

Defendants. By contrast, the Wisconsin Action principally is characterized by Chubb's prayer for declaratory and injunctive relief against Tyco, and no party has claimed for damages in Wisconsin.[15] Thus, the two actions also involve different remedies. Under these circumstances, the actions are not "parallel" to support abstention in the first place.

Even if the two actions were parallel, *Colorado River* strongly disfavors abstention here:

**First**, neither action involves property where a court may assume *in rem* jurisdiction, and so this factor is a neutral one that supports the exercise of jurisdiction.

**Second**, this federal forum is not an inconvenient one. The Court has been overseeing this 17,000-plaintiff MDL proceeding for five years, during which time it has developed considerable familiarity with the allegations and facts of the AFFF suits. That expertise will permit the Court to efficiently and effectively address the insurance coverage issues at hand. Indeed, tens of millions of pages of documents already have been produced in this forum, and dozens of depositions taken, all under the Court's supervision, and that discovery is intertwined with many of the key coverage issues at hand here. Additionally, intensive and ongoing mediations are occurring in the MDL proceeding, and Insurer Defendants are required to participate in these mediations—meaning that they will have continuing connections with this federal forum and proceeding, regardless of where the coverage disputes are resolved. Finally, both Wisconsin and South Carolina are equally convenient for Insurer Defendants, who sell insurance nationwide and are not headquartered in either jurisdiction.

**Third**, the overlap between this action and the Wisconsin Action is not any more problematic than it would be in any other matter involving concurrent litigation. *Gannett Co. v.*

---

[15] To be sure, if this Court stayed its hand and the Wisconsin Action proceeded, Tyco would likely amend to add counter- and cross-claims there.

*Clark Const. Grp., Inc.*, 286 F.3d 737, 744 (4th Cir. 2002) ("The threat of inconsistent results and the judicial inefficiency inherent in parallel breach of contract litigation, however, are not enough to warrant abstention."). To date, the Wisconsin Action has focused on resolving Chubb's assertion that certain of their insurance policies were released in a prior 2011 settlement, and that issue has now been fully resolved. *See* Dyschkant Decl., Exs. 8, 9 (Tyco and Chubb Proposed Order & Partial Judgment, dated Aug. 11, 2023). As of the date of this Omnibus Response, the Wisconsin Action has been stayed temporarily, while this Court and the Wisconsin court coordinate regarding resolution of the substantive coverage issues. Any risks of simultaneous or inconsistent resolution of these issues thus can be managed and minimized, especially if this Court intends to move as quickly as it has indicated, potentially resolving the coverage issues by the spring of next year.

*Fourth*, although the Wisconsin Action was filed before this one, that case remains in its earliest stages in respect to the AFFF insurance coverage issues before this Court. The AIG Defendants are simply wrong in representing to this Court that the Wisconsin Action is "in advanced stages." AIG Mem. 1. Further, while it is true that the AIG Defendants have served Tyco with requests for production and interrogatories in Wisconsin—which Tyco has answered—those discovery requests principally seek the same underlying facts *and discovery* that already have been explored and provided during discovery in this MDL proceeding. *See* ECF 24-14, RFP Nos. 9–23, 25–27; ECF 24-11, RFP Nos. 1–3. Tyco has already voluntarily produced to Insurer Defendants in this action 220,158 documents, encompassing 896,601 pages. *See* Dyschkant Decl. ¶ 2.

*Fifth*, while state law will provide the rule of decision on the merits of this coverage action, the question of *which* state's law applies has not been resolved and will likely require a

choice of law analysis and, potentially, discovery. Insurer Defendants simply proclaim that Wisconsin law will apply and, from that premise, contend that Wisconsin courts have a "strong interest" in this insurance coverage dispute. *E.g.* AIG Mem. 18. But Insurer Defendants simultaneously assert that their insurance policies were negotiated and sold in *non-Wisconsin* jurisdictions, where Tyco and its predecessors had headquarters at the time of policy issuance. *See, e.g.*, Great Am. Mem. at 17, Zurich Mem. at 9–10, Starr Mem. at 4. Further, the insurance policies at issue cover nationwide risks of product liability, which has manifested in extensive allegations of bodily injury and property damage occurring, and being resolved through litigation, in South Carolina. *See, e.g.*, S.C. Code § 38-61-10 (applying South Carolina law to contracts of insurance on interests in the state); *Hartsock v. Am. Auto. Ins. Co.*, 788 F. Supp. 2d 447, 450–51 (D.S.C. 2011). Accordingly, there are significant questions about whether Wisconsin law applies that will need to be resolved.

In all events, this Court has considerable experience in deciding choice of law issues and faithfully applying the law of whichever of the 50 states may govern an action, both through its regular exercise of diversity jurisdiction and in connection with the MDL proceeding, and is qualified and well-equipped to handle such issues.[16]

**Sixth**, there is no reason to question the adequacy of either forum in protecting the parties' rights. So, while the factors above favor proceeding here, this factor carries little weight.

Considering that the analysis starts with the presumption that the balance is "heavily weighted in favor of the exercise of jurisdiction," this Court should proceed in exercising its jurisdiction. *See Great Am. Ins. Co.*, 468 F.3d at 207.

---

[16] To the extent that Wisconsin law may be determined not to apply, any interest that Wisconsin might have in the Wisconsin Action would be commensurately diminished.

**C.    The *Brillhart/Wilton* Test Likewise Supports the Exercise of Jurisdiction.**

The *Colorado River* test applies here, but even under *Brillhart/Wilton*, the result would be the same. The *Brillhart/Wilton* test recognizes that when a lawsuit involves *solely* claims for declaratory relief, a district court enjoys greater discretion to decide whether to proceed to adjudicate that request for relief, based on "considerations of practicality and wise judicial administration." *See Wilton v. Seven Falls. Co.*, 515 U.S. 277, 288 (1995).

"[A] declaratory judgment action is appropriate 'when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Penn-Am. Ins. Co. v. Coffey*, 368 F.3d 409, 412 (4th Cir. 2004). The pendency of a related state court proceeding is a factor that "should inform the district court's discretion whether to exercise jurisdiction over a declaratory judgment," but it is not a *dispositive* factor. *Id.* Rather, the overriding concern involves whether a district court would be "indulging in gratuitous interference if it permitted the federal declaratory action to proceed." *Wilton*, 515 U.S. at 283.

Four factors guide the Court's discretionary decision whether to adjudicate a declaratory judgment action, often referred to in this circuit as the "*Nautilus*" factors:

> (1) whether the state has a strong interest in having the issues decided in its courts; (2) whether the state courts could resolve the issues more efficiently than the federal courts; (3) whether the presence of "overlapping issues of fact or law" might create unnecessary "entanglement" between the state and federal courts; and (4) whether the federal action is mere "procedural fencing," in the sense that the action is merely the product of forum-shopping.

*Med. Mut. Ins. Co. of N. Carolina*, 35 F.4th at 208–09. These factors, taken together, support the Court's exercise of jurisdiction in this action for similar reasons that the *Colorado River* factors support that same outcome.

*First*, Wisconsin's interest in this coverage action is at best equal to South Carolina's interest and the broader federal interest, and may be less weighty. The disputed coverage issues arise from Insurer Defendants' sale of insurance policies covering liability risks *nationwide*, not just the risk of claims in Wisconsin, and this is a nationwide MDL proceeding. Indeed, Wisconsin claimants make up no more than approximately 70 of the actions being heard in this MDL; the number AFFF actions hailing from South Carolina alone total more than 80. *See* Dyschkant Decl. ¶¶ 3–4. And if the Court were to determine that Wisconsin law does not apply, then Wisconsin's interest would fall well below that of South Carolina's and the other states.

*Second*, this Court can resolve the insurance issues at hand at least as efficiently as the Wisconsin court. This Court has had the benefit of having supervised this MDL proceeding for the past five years, and has developed significant knowledge of the allegations and facts of the AFFF suits. Because these underlying factual issues are intertwined with many of the key coverage issues, *see* Part I, above, this Court is a logical and efficient forum for resolving the coverage dispute.[17]

*Third*, as noted above, any risk of overlapping issues of fact or law, or entanglement between the two actions, can be effectively mitigated and managed by coordination, which already has been occurring and which Tyco is committed to continuing.

*Fourth*, Insurer Defendants' complaints about alleged "procedural fencing" or "gratuitous interference" ring hollow. Tyco, not Insurer Defendants, originally sought a broad resolution of coverage issues in a South Carolina forum by initiating its South Carolina Action. Insurer Defendants resisted that forum, and Chubb filed a countersuit in Wisconsin precipitated

---

[17] The parties and remedies sought in both actions also do not fully overlap. Furthermore, a substantial number of insurance policies cannot be addressed by either action, due to the presence of arbitration clauses, so neither action can be fully complete. *See* Dyschkant Decl. ¶ 5.

by the (now-resolved) issue of whether certain Chubb policies have been fully released. Since then, the AIG Defendants have sought to undermine this federal action by filing a pre-discovery motion for partial summary judgment on a single issued raised by their *cross-claims* in the Wisconsin Action, but that action has not progressed in a manner that would conflict with this Court's jurisdiction, and this Court has wholly valid (indeed, compelling) reasons to proceed in the interests of efficiency.

## V.     The Forum Non Conveniens Doctrine Does Not Apply or Warrant Dismissal.

Finally, all Insurer Defendants except Great American (to its credit) invoke the doctrine of *forum non conveniens*, arguing that the Wisconsin court is a more appropriate forum. As Insurer Defendants concede, however, "[t]he *forum non conveniens* doctrine is a common law doctrine now largely limited in federal court to cases where the alternative forum for litigating the dispute is *outside of the United States*." *Compania Naviera Joanna SA v. Koninklijke Boskalis Westminster NV*, 569 F.3d 189, 200 (4th Cir. 2009) (emphasis added). In fact, it is only "*perhaps* in rare instances" that the doctrine might apply at all to an alternative forum within the United States. *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007) (emphasis added). Whatever those "rare instances" might be, this action plainly does not present the sort of highly exceptional circumstance that could fit through the eye of *Sinochem*'s needle. Indeed, the same considerations discussed above that strongly disfavor abstention likewise counsel powerfully against dismissal of this action in deference to the Wisconsin Action.

## CONCLUSION

The Court should deny Insurer Defendants' motions to dismiss or stay this action.

Dated: August 14, 2023

COVINGTON & BURLING LLP

By: /s/ Allan B. Moore
Allan B. Moore (admitted *pro hac vice*)
Timothy D. Greszler (admitted *pro hac vice*)
Alexis N. Dyschkant (admitted *pro hac vice*)
850 Tenth Street, NW
Washington, DC 20001
Tel:    (202) 662-5575
Email:  abmoore@cov.com

*Counsel for Tyco Fire Products LP*