# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| IN RE AQUEOUS FILM-FORMING FOAMS PRODUCTS LIABILITY LITIGATION | ) Master Docket No.<br>) 2:18-mn-2873-RMG<br>) |
| CITY OF CAMDEN et al.,<br><br>　　　　　　Plaintiffs,<br><br>　　　v.<br><br>3M COMPANY,<br><br>　　　　　　Defendant. | ) Civil Action No.:<br>) 2:23-cv-03147-RMG<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT, FOR CERTIFICATION OF SETTLEMENT CLASS AND FOR PERMISSION TO DISSEMINATE CLASS NOTICE**

**TABLE OF CONTENTS**

I.    INTRODUCTION .................................................................................................... 1

II.   ARGUMENT ........................................................................................................... 5

        A.    The Class Will Receive Adequate Notice of Potential Recoveries. ....................... 5

        B.    The Settlement's Payment Schedule is Fair and Reasonable. ............................... 6

        C.    The Total Settlement Amount is Fair, Reasonable, and Adequate Considering the Potential Expense, Duration, and Risks of Continued Litigation. ............................................................................................ 10

III.  CONCLUSION ...................................................................................................... 14

Plaintiffs submit this memorandum to reply to the only remaining oppositions to the pending motion for preliminary approval, i.e., (1) Joinder of City of Philadelphia to Sovereigns' Omnibus Opposition to Plaintiffs' Motion for Preliminary Approval of Class Settlement, for Certification of Settlement Class and for Permission to Disseminate Class Notice [ECF 50] ("Phila. Joinder"); and (2) Joinder to Sovereigns' Omnibus Opposition to Motion for Preliminary Approval, Certification of Settlement Class, and Permission to Disseminate Class Notice by City of Airway Heights, City of Dupont, City of Moses Lake, City of Newburgh, Lakewood Water District, Roosevelt County Water Coop, Inc., Security Water District, and Town of New Windsor [ECF 53] ("Airway Heights Joinder").[1]

## I.  INTRODUCTION

At the beginning of this litigation, 3M Company ("3M") took a no-pay position, confident that it would prevail on its legal defenses, particularly its government contractor defense. Today, after four years of intense, hard-fought litigation, the production and review of 37.4 million pages of documents, 164 depositions, over a year of briefing, arguing and defeating 3M's primary legal defense, overcoming dozens of attacks on Plaintiff experts, over 60 days of intense mediation sessions, and a trial-ready team that was poised to present the first bellwether public water provider

---

[1] On August 28, 2023, the Port Authority of New York and New Jersey filed a Notice of Joinder [ECF 58; MDL ECF 3619] (the "Port Authority Joinder") to the States' Omnibus Opposition to Plaintiffs' Motion for Preliminary Approval of Class Settlement, for Certification of Settlement Class and for Permission to Disseminate Class Notice [ECF 37; ECF 3462]. Such filing is untimely; the final deadline for the States to file objections was July 31, 2023, which had already been extended by Court Order [ECF 6; MDL ECF 3408]. For this and other reasons, Plaintiffs do not separately address the Port Authority Joinder, namely: it is moot, given that the States' underlying Omnibus Opposition is withdrawn; the Port Authority of New York and New Jersey is not a Class Member and therefore lacks standing; nothing in the proposed Settlement has any effect on the Port Authority's rights as either a plaintiff or defendant in any other matter; and lastly, its stated concerns about the scope of the proposed Settlement's release and indemnification provision have both been addressed and resolved as reflected by the States' agreement to withdraw their Motion to Intervene and their Omnibus Opposition.

action to a jury, Class Counsel secured a $12.5 billion settlement with 3M on behalf of America's Public Water Systems ("PWS") which must address PFAS detections in their Drinking Water and are subject to strict Drinking Water standards promulgated by the EPA.

The groundbreaking Settlement reached with 3M for $12.5 billion is not just the largest water provider settlement in history; it is the first of many milestones to be reached on the road to holding manufacturers of PFAS accountable for the harm they have caused. *See, e.g.,* Preliminary Approval Order, *City of Camden et al. v. E.I. DuPont Nemours and Company et al,* No. 2:23-cv-03230 (granting preliminary approval of settlement between PWS and DuPont ("DuPont Settlement")).

The terms of the Settlement Agreement with 3M, which were negotiated through a Court-appointed mediation process, are complex.[2] Yet this is because PFAS contamination and Drinking Water remediation needs are complex.

Since the filing of Plaintiffs' Motion for Preliminary Approval, Class Counsel, 3M, and a coalition of States and other sovereigns ("States") actively discussed and addressed concerns and objections raised by the States. The Parties are pleased to report that they have agreed to clarifying amendments of certain Settlement terms to alleviate the States' concerns and the States (and two

---

[2] The original Settlement Agreement is cited to herein as S.A.

2

California agencies) have now withdrawn their objections and related submissions.[3] *See* Consent Motion To Amend Exhibits To Motion For Preliminary Approval.  A summary of the changes includes:

- Drinking Water is defined to clarify that it excludes raw or untreated water not drawn or collected from a Water Source.  A.S.A., ¶ 2.23.

- The definition of Releasing Parties clarifies that the States are not Releasing Parties, and the Amended Agreement clarifies that Claims owned and brought by a State are not released.  A.S.A., ¶¶ 2.61, 11.10.

- The proposed Settlement Class definition now specifically excludes States, and "States" is defined.  *See, e.g.,* A.S.A., ¶ 2.72.

- The deadline for opting out of the Settlement was extended from 60 days to 90 days.  A.S.A., ¶ 8.5.

- The parties agreed to revise the 3M Settlement Agreement to replace the former "Contribution and Indemnity" provision with a "Protection Against Claims-Over" provision.  A.S.A., ¶ 11.6.

- A lien provision has been added. A.S.A., ¶ 11.7.

---

[3] The following submissions have been withdrawn by the States: (1) States' And Sovereigns' Omnibus Opposition To Plaintiffs' Motion For Preliminary Approval Of Class Settlement, For Certification Of Settlement Class And For Permission To Disseminate Class Notice [ECF 37; MDL ECF 3462] ("Omnibus Opp."); (2) Subset Of Sovereigns' Supplemental Opposition To Plaintiffs' Motion For Preliminary Approval Of Class Settlement, For Certification Of Settlement Class And For Permission To Disseminate Class Notice [ECF 38; MDL ECF 3464] ("Subset Supp."); (3) Supplemental Memorandum Of Law By States Maine And Vermont In Opposition To Motion For Preliminary Approval Of Class Settlement [ECF 39; MDL ECF 3465] ("Me. Vt. Opp."); (4) Joinder Of California State Water Resources Control Board And California Department Of Corrections And Rehabilitation To States' And Sovereigns' Omnibus Opposition And Subset Of Sovereigns' Supplemental Opposition To Plaintiffs' Motion For Preliminary Approval Of Class Settlement, For Certification Of Settlement Class And For Permission To Disseminate Class Notice [ECF 40; MDL ECF 3466] ("CA Joinder"); (5) Evidentiary Objections by the People of the State of California To Declaration of Timothy G. Raab [ECF 38-4; MDL ECF 3464-4] ("CA Raab Obj."); (6) Evidentiary Objections by the People of the State of California To Declaration of Rob Hesse [ECF 38-5; MDL ECF 3464-5] ("CA Hesse Obj."); (7) Evidentiary Objections by the People of the State of California To Declaration of Dr. Prithviraj Chavan, PHD [ECF 38-6; MDL ECF 3464-6] ("CA Chavan Obj."); (7) Sovereigns' Motion to Intervene [ECF 39; MDL ECF 3465]. "ECF" refers to the docket in *City of Camden,* No. 2:23-cv-03147-RMG, *e.g.* ECF 1, and "MDL ECF" refers to Master Docket No. 2:18-mn-2873-RMG. *E.g.,* MDL ECF 1.

- Additional amendments were made to 3M's reservation of rights and the most-favored nations clause. A.S.A., ¶¶ 13.3, 13.4.1.

- With the withdrawal of the objections asserted by the States (and California agencies) to preliminary approval of the Settlement, the only remaining objections are those asserted in the Phila. Joinder, the Airway Heights Joinder and the Port Authority Joinder.[4]  Collectively, those Joinders assert six objections: (1) challenges to the indemnity provision of the original Settlement Agreement; (2) arguments that the release provision of the original Settlement Agreement was overbroad; (3) assertions that class members have inadequate time to evaluate the Settlement and decide whether to opt out; (4) contentions that class members would not know their potential recoveries under the Settlement; (5) arguments that payments to class members under the Settlement would be unduly protracted; and (6) contentions that the total settlement amount is inadequate.

- Revisions to the Settlement Agreement resolve the first three of those objections. First, the parties agreed to remove the indemnification provision and replace it with a narrower claims-over provision. A.S.A., ¶ 11.6. Second, the parties agreed to several revisions of release-related provisions that clarify the reach of the release and dispel any notion that it is overbroad in relation to the scope of the Settlement. A.S.A., ¶¶ 2.23, 2.61, 11.10. Third, the parties agreed to increase the opt-out period from 60 days to 90 days, providing more than adequate time to evaluate the Settlement. A.S.A. ¶ 8.5.[5]

None of the other three objections even come close to justifying denial of preliminary approval for a landmark settlement that promises to send billions of dollars to water providers to help them monitor and, if necessary, remove PFAS from Public Water Systems all over the country. As detailed below, class members will have access to ample information about potential

---

[4] The City of Airway Heights and associated municipalities also filed a Response in Support of Sovereigns' Motion to Intervene, but that Response is moot in the wake of the withdrawal of the Sovereigns' Motion to Intervene.

[5] This Court recently approved a 90-day opt-out period for the DuPont Settlement (ECF No. 3603 at 5-6 (Order)), consistent with the decisions that routinely approve even shorter opt-out periods. *See, e.g.*, *In re Bldg. Materials Corp. of Am. Asphalt Roofing Shingle Prod. Liab. Litig.*, No. 8:11-MN-02000-JMC, 2014 WL 12621614, at *9 (D.S.C. Oct. 15, 2014) (citing cases); *City of Long Beach v. Monsanto Co.*, No. 16-cv-3493, ECF No. 293 at 31-32 (C.D. Cal. Mar. 14, 2022) (granting preliminary approval of complex water-contamination class settlement with 60-day opt-out period, *see City of Long Beach v. Monsanto Co.*, No. 16-cv-3493, ECF No. 278-2 at 27-28 (C.D. Cal. June 17, 2021)); *Rowe v. E.I. DuPont de Nemours & Co.*, No. CIV. 06-1810, 2011 WL 3837106, at *6-7 (D.N.J. Aug. 26, 2011) (rejecting challenge to *35-day* opt-out period in PFAS case even though "the issues involved in the settlement [we]re complex").

4

recoveries. The payment schedule is appropriate for the circumstances of this Settlement. And the amount of the Settlement is completely fair and reasonable.

## II.    ARGUMENT

**A. The Class Will Receive Adequate Notice of Potential Recoveries.**

There is no merit to the objections that the proposed notice provides inadequate information about proposed class member recoveries.

Neither due process nor Rule 23(e) requires that each class member know the exact amount that they will receive before deciding whether to opt out, because individual awards are dependent upon the aggregate of claims submitted. *See* ECF No. 3603 at 6 (DuPont Settlement Order: "Roosevelt cites no case law requiring putative class members know exact settlement sums before opting out and, indeed, it appears case law states the opposite."); *McAdams v. Robinson*, 26 F.4th 149, 158 (4th Cir. 2022) ("Nor was the notice inadequate because it didn't estimate the class members' recovery."). Therefore, the Amended Notice provides an overview of the Allocation Procedures and directs putative class members to the Claims Administrator's website, www.PFASWaterSettlement.com, for access to the full Allocation Procedures and any other settlement related information.

Nevertheless, as previewed to the Court, proposed Class Counsel has undertaken to provide more information about potential recoveries by making Allocation Procedure information accessible to putative Class Members. To that end, the Claim Administrator's website includes an Estimated Allocation Range Table for 3M, which is publicly accessible. This Table provides a good faith estimate for any Impacted Water Source (groundwater well or surface water source with PFAS contamination). The Table is the result of synthesizing PFAS data that was publicly available and incorporating reasonable assumptions for flow rates based on population. It is critical to remember that such a tool is a good faith estimate only and not the actual settlement

5

awards because: allocations depend on data that is not publicly available; the extent of participation rates among Class Members is unknown; and the full extent of Impacted Water Sources is unknown. These factors are unknowable until all Claim Forms have been submitted and processed; however, proposed Class Counsel are confident that the tool will prove useful and remain committed to providing Class Members with information necessary to ensure their understanding of the Settlement.[6]

A "notice need only 'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.'" *McAdams*, 26 F.4th at 158. Here, the Notice does that because it gives class members multiple avenues for accessing information about the settlement, Class Counsel's intent to seek attorneys' fees, the Allocation Procedures and distribution method, and "provide[s] them with the means to find more information if they want[] it." *Id.* at 159. Accordingly, and consistent with both *McAdams*, 26 F.4th at 158-59, and the Court's own recent decision overruling a similar objection to the DuPont Settlement, ECF No. 3603 at 6-8, the notice objections here should be overruled.

**B.     The Settlement's Payment Schedule is Fair and Reasonable.**

In objecting to the 13-year duration of the proposed Settlement's payment schedule, the City of Philadelphia and Airway Heights suggest that the schedule shifts 3M's insolvency risk onto Class Members. Quite to the contrary: the payment schedule protects Class Members. The concerns about the Settlement's payment schedule are misguided and should be disregarded for three reasons.

*First*, there are unique aspects of this case that make the proposed payment schedule a

---

[6] In addition, the website contains an online calendaring tool (Calendly) that allows for the scheduling of individual Zoom meetings with proposed Class Counsel.

particularly effective mechanism for providing compensation to resolve the claims of the Settlement Class. Key among them is that "forty percent (40%)" of the proposed Settlement's compensation is intended to reimburse members of the Settlement Class for costs they will incur over time to operate and maintain treatment systems for PFAS.[7] *See* ECF 10-3, at 510. The payment schedule therefore requires payments for upfront costs for testing and infrastructure (roughly 60% of the total payments) to be made in the first few years, as those costs would be incurred by Class Members. Payments for operation and maintenance costs, however, are spread out over a longer time period to roughly match the time periods during which Class Members would incur those costs. In other words, a significant portion of the compensation that the Settlement will provide to Class Members is not needed right now but will be in the future, allowing the proposed payment schedule to help ensure compensation is being delivered when Class Members actually need it.

*Second*, courts have approved class settlements utilizing similar payment schedules where they mitigate the settling defendants' risk of becoming insolvent. *See, e.g.*, *Cortez v. Vieira Custom Chopping, Inc.*, No. 1:17-cv-01647-DAD-SKO, 2020 U.S. Dist. LEXIS 135595, at *13–*14 (E.D. Cal. Jul. 30, 2020) (approving class settlement "structured for installment payments" where class counsel "determined that this payment plan maximizes the recoverable amount while

---

[7] The Declaration of Dr. Prithviraj Chavan, PhD further details the specifics of how and why both capital costs and operation and maintenance ("O&M") costs drive the analysis of the cost of PFAS treatment. (ECF 4-14). The PFAS Modifier of 0.005 represents a key variable in the relative relationship between O&M, flow rates and the level of PFAS concentrations. *Id.* at 5-8. Rather than a "modifier" that was unilaterally and subjectively applied by Dr. Chavan, this is simply the mathematical factor that needs to be applied in order to reflect the fact, supported by "case studies and peer-reviewed literature," that "O&M costs will increase where the unit cost of removal of PFAS decreases as concentrations increase" – or, put differently, to reflect the reality that PFAS treatment on larger or more contaminated systems mean the relationship to cost is not linear but rather, requires adjustment to account for economy-of-scale efficiencies. *Id.*

7

preventing defendants from filing bankruptcy"); *Radosti v. Envision Emi, LLC*, 717 F. Supp. 2d 37, 60 (D.D.C. 2010) (finding that use of "voucher payment system" that allowed settling defendant to pay over time "weigh[ed] in favor of approving the settlement" where "Plaintiffs did not want to bankrupt the company through a lawsuit"). Put differently, far from *shifting* the risk of insolvency to members of the Settlement Class, such an arrangement helps *minimize* the risk of insolvency to members of the Settlement Class.

For this reason, payment schedules like the one here have frequently been viewed as an effective way to strike the balance between "maximiz[ing] the recoverable amount while preventing [the settling defendant] from filing bankruptcy." *Rodriguez v. M.J. Bros.*, No. 1:18-cv-00252-SAB, 2019 U.S. Dist. LEXIS 69825, at *32–*33 (E.D. Cal. Apr. 24, 2019). That consideration is something already noted by the Court here. *See* ECF 10, at 45 (acknowledging the possibility that 3M could "use the bankruptcy system to avoid litigation," and arguing that the "potential inability to pay litigated judgments weighs in favor of the adequacy of the billion-dollar settlement").[8] Indeed, it was only a year ago that certain States signed onto a nationwide settlement with three opioid distributors providing for the payment of $21 billion over a period of 18 years,[9]

---

[8] *See also* Ex. 3 to Mot. ¶ 25 (ECF 10-4) (proposed Class Counsel's declaration acknowledging that a "series of verdicts against 3M could threaten the financial viability of the Company, resulting in a Chapter 11 bankruptcy filings that could leave Plaintiffs without compensation").

[9] *See* Distributor Settlement Agreement between Settling States, Settling Distributors, and Participating Subdivisions §§ IV(E)–(F) (Mar. 25, 2022) ("Distributor Settlement Agreement"), *available at* https://nationalopioidsettlement.com/wp-content/uploads/2023/02/Final-Distributor-Settlement-Agreement-3.25.22-Final-Exhibit-C-as-of-5.27.22-Exhibit-G-and-I-as-of-02.22.23.pdf (last visited Jul. 30, 2023); Order, *Commonwealth v. Amerisourcebergen Corp.*, No. 244 M.D. 2022 (Com. Ct. of Pa. Jul. 12, 2022).

8

five years longer than the schedule negotiated by proposed Class Counsel here.[10]

Thus, this feature of the Settlement only further supports its fairness, reasonableness, and adequacy.

*Third*, the original and Amended Settlement Agreements include terms designed to mitigate the impact of any future 3M bankruptcy on Class Members, including provisions that:

(a) require 3M to provide thirty days' notice and a certificate of solvency should it anticipate any delay in making payments due under the proposed Settlement, with 3M being assessed a $10 million penalty for any failure to meet these requirements, S.A., ¶ 6.11; A.S.A., ¶ 6.11;

(b) require 3M in any future bankruptcy proceeding to schedule the Class Members' claims under the proposed Settlement as liquidated, non-contingent, and undisputed, without prejudice to the members of the Settlement Class filing their Released Claims, S.A., ¶ 12.1.2.1; A.S.A., ¶ 12.1.2.1;

(c) limit any recovery 3M obtains in bankruptcy from Class Members pursuant to 11 U.S.C. § 550 to a credit against unpaid amounts due under the proposed Settlement, S.A., ¶ 12.1.2.2; A.S.A., ¶ 12.1.2.2;

(d) waive any statute-of-limitations defense 3M could assert after filing bankruptcy that might limit or hinder recovery of a member of the Settlement Class's Released Claims under the proposed Settlement, S.A., ¶ 12.1.2.3; A.S.A., ¶ 12.1.2.3; and

(e) render null and void "all agreements, all concessions, all reductions of Qualifying Class Members' Released Claims, and the Release and Covenant Not to Sue" contained in the Settlement Agreement should 3M file for bankruptcy, restoring the Class Members to the same position they were in prior to the proposed Settlement and allowing them to pursue "any and all claims against 3M in the bankruptcy proceeding or otherwise," S.A., ¶ 12.1.2.4; A.S.A., ¶ 12.1.2.4.

Combined with the Court's continuing jurisdiction over the proposed Amended Settlement and its role overseeing its administration, these measures are more than adequate to protect the interests of members of the Settlement Class in the event that 3M becomes insolvent and files for

---

[10] *See, e.g.*, National Association of Attorneys General, *Opioids*, https://www.naag.org/issues/opioids/ (last visited on Jul. 30, 2023) (explaining that in reaching a settlement with three opioids distributors, "[t]he states were represented in negotiations by an executive committee of 14 states" that "included the attorneys general from *California*, … *Pennsylvania*, ….") (emphasis added)).

9

bankruptcy. *See Cantu-Guerrero v. Lumber Liquidators, Inc. (In re Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg., Sales Practices & Prods. Liab. Litig.)*, 952 F.3d 471, 486 (4th Cir. 2020) (rejecting challenges to the fairness and adequacy of a class settlement because the objectors "ignore[d] that the settlement was structured to address any concerns about [the settling defendant's] finances"); *Cook v. S.C. Pub. Serv. Agency of S.*, 2020 S.C.C.P. LEXIS 3690, *38 (S.C. Cir. Ct. Jul. 21, 2020) (finding that the combination of the members of the settlement class's "status as judgment creditors" and the court's oversight of the settlement mitigated any risk that the settling defendant would fail to pay future installments required under class settlement).

Because the Amended Settlement is responsibly crafted to reduce any risk of 3M going bankrupt and provide protections for members of the Settlement Class in the event of bankruptcy, the objections should be overruled.

### C. The Total Settlement Amount is Fair, Reasonable, and Adequate Considering the Potential Expense, Duration, and Risks of Continued Litigation.

Both Airway Heights and the City of Philadelphia attack the total dollar amount of the proposed Settlement. The Airway Heights objectors argue that it is inadequate to compensate the harm caused by 3M's PFAS contamination. Similarly, according to the City of Philadelphia, the "total settlement amount is much less than the anticipated damage from PFAS contamination nationally." Phila. Joinder, at 4 (internal quotation marks omitted).

As an initial matter, the Court's inquiry at the preliminary approval stage is not whether the Settlement is "fair, reasonable, or adequate"—that inquiry is reserved for the final approval stage—but whether it is "sufficiently within the range of reasonableness so that notice should be given" to potential class members. *In re India Globalization Capital, Inc.*, No. DKC 18-3698, 2020 U.S. Dist. LEXIS 77190, at *7 (D. Md. May 1, 2020). As this Court has previously acknowledged, this range of reasonableness standard sets "a pretty low threshold," with the "more

10

substantive" evaluation of a settlement's terms occurring "during the objection period." Jul. 14, 2023, Status Conference Tr. 29:22–30:2. That standard has clearly been met here.

Still, were the Court to apply the more rigorous standard used by the objectors, the proper point of comparison for evaluating whether the Settlement amount is fair, reasonable, and adequate is not, as they suggest, the amount of PFAS-related damages that 3M has caused. In fact, "several courts, including the Fourth Circuit, have stated that a settlement that amounted to only a fraction of the potential recovery would not be *per se* inadequate." *Horton v. Merrill Lynch, Pierce, Fenner & Smith*, 855 F. Supp. 825, 833 (E.D.N.C. 1994) (citing *Flinn v. FMC Corp.*, 528 F.2d 1169, 1173–74 (4th Cir. 1975)).[11] Instead, the Fourth Circuit requires that five factors be considered when evaluating whether a total settlement amount is adequate:

> (1) the relative strength of the plaintiffs' case on the merits; (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial; (3) the anticipated duration and expense of additional litigation; (4) the solvency of the defendant and the likelihood of recovery on a litigated judgment; and (5) the degree of opposition to the settlement.

*1988 Tr. for Allen Children v. Banner Life Ins. Co.*, 28 F.4th 513, 526 (4th Cir. 2022).

With one exception—because the degree of opposition to the settlement cannot be assessed at the preliminary approval stage—the Preliminary Approval Motion addressed each of these

---

[11] *See also Dunleavy v. Nadler (In re Mego Fin. Corp. Sec. Litig.)*, 213 F.3d 454, 459 (9th Cir. 2000) ("It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." (internal quotation marks omitted)); *Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 (2d Cir. 1974) ("The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved."). *Cf. Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998) ("Settlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion.") (cited by the Fourth Circuit with approval for other purposes in *Sharp Farms v. Speaks*, 917 F.3d 276, 298 (4th Cir. 2019), and *Sloan v. Winn-Dixie Raleigh, Inc.*, 25 Fed. Appx. 197, 198 (4th Cir. 2002)).

factors in detail.[12] *See* ECF 10-1, at 40-45. Despite this, the Objectors fail to address *any* of these factors,[13] opting instead to focus their challenge on the estimated costs of PFAS investigation and treatment and the extent of contamination. *See* Airway Heights Joinder at 2; Phila. Joinder at 3. Because the Objectors fail to, first, apply the proper standard for determining whether to grant preliminary approval and, second, address any of the factors used in the Fourth Circuit to evaluate whether a settlement amount is adequate, the Court should disregard their challenge to the Settlement amount.

In any event, the Settlement amount is fair, reasonable, and adequate under relevant standards. $10.5 to $12.5 billion is by no means too small, especially if (as Airway Heights and the City of Philadelphia contend) payment of such an amount over 13 years creates bankruptcy risks. It is the largest Drinking Water remediation settlement in U.S. history. The Settlement will provide the single largest source of funds for PWS and represents substantial resources to Class Members for monitoring and removing PFAS from the Drinking Water they deliver to customers. Further, 3M is not the only party from which water providers have sought to recover PFAS remediation costs; indeed, one set of those parties has entered its own billion-dollar-plus class settlement with the Plaintiffs, which this Court has now preliminarily approved. *See* ECF No. 3393 at 8 (DuPont Prelim Approval Br.); ECF No. 3603 (Order). And federal programs promise still more funding and financing for PFAS remediation efforts. ECF No. 2017 at 18 (11/19/21

---

[12] In fact, the Court itself has already indicated that certain of these factors may weigh in favor of approving the Settlement. *See* July 14, 2023, Status Conference Tr. 17:7-18:7, 28:9-16 (advising that it would be "about a decade before" the Released Claims could be fully litigated absent the proposed Settlement and suggesting that a settlement that forced 3M into bankruptcy would be "terrible for the company" and "terrible for the plaintiffs").

[13] Particularly egregious is the objectors' failure to address the factor focusing on the solvency of the settling defendant given that they rely on 3M's risk of insolvency to challenge the proposed Settlement's payment schedule.

Hrg. Tr.) (attorney for the United States describing federal law making $10 billion available for PFAS issues); ECF No. 2066 at 33-34 (12/17/21 Hrg. Tr.) (same, including an additional $517 million for Department of Defense PFAS clean-up).

Furthermore, the $10.5 to 12.5 billion in settlement funds is only part of the value that the settlement delivers to class members. *See* ECF No. 3370-1 at 47-51 (Prelim. Approval Br.). Settling class members do not have to face the obstacles, risk, and expense associated with proving liability and damages and (where sought) obtaining class certification for litigation purposes. Indeed, 3M has many factual and legal defenses available to it. Settling class members also do not have to incur the substantial additional costs of prosecuting their claims through trial and appeal. And instead of facing an uncertain prospect of recovery at some unknown future date, settling class members are guaranteed payments that would begin shortly after the conclusion of settlement approval proceedings.

On top of that, the Settlement amount and other Settlement terms are the product of extensive, arm's-length negotiations, assisted by a neutral mediator. There is no reason to believe that a settlement more favorable to class members could be achieved or that litigation rather than settlement would make class members better off. And if some class member does believe otherwise, it is free to opt out and undertake the risks, costs, and delays of trying to obtain a better recovery.

For similar reasons, "[c]ourts routinely overrule objections from class members that the anticipated relief they will receive under the settlement is too low." *Sykes v. Harris*, No. 09 CIV. 8486 (DC), 2016 WL 3030156, at *19 (S.D.N.Y. May 24, 2016); *see also Skochin v. Genworth Fin., Inc.*, No. 3:19CV49, 2020 WL 6532833, at *18 (E.D. Va. Nov. 5, 2020) (denying such an objection). "While the class may not receive everything that it desired, such is the nature of a

13

compromise." *In re Thornburg Mortg., Inc. Sec. Litig.*, 912 F. Supp. 2d 1178, 1244 (D.N.M. 2012).

In sum, the Amended Settlement provides adequate consideration for the Settlement Class and should be preliminarily approved.

### III.  CONCLUSION

The Court should grant Plaintiffs' Motion for Preliminary Approval, because the Settlement is within the range of possible approval as fair, adequate, and reasonable and because the Settlement Class meets the requirements of Rule 23(a) and (b)(3), which are uncontested. Upon granting of the Motion, Plaintiffs respectfully request that this Court order that the Amended Long-Form Notice be provided to the Settlement Class in accordance with the Notice Plan, appoint proposed Class Counsel, and Class Representatives, appoint the Notice Administrator, Claims Administrator, and Special Masters, schedule the Final Fairness Hearing, and grant such other and further relief as the Court deems just and appropriate.

Dated:  August 28, 2023

Respectfully submitted,

/s/ Michael A. London
Michael A. London
Douglas and London P.C.
59 Maiden Lane, 6th Floor
New York, NY 10038
212-566-7500
212-566-7501 (fax)
mlondon@douglasandlondon.com

/s/ Paul J. Napoli
Paul J. Napoli
Napoli Shkolnik
1302 Avenida Ponce de León
San Juan, Puerto Rico 00907
Tel: (833) 271-4502
Fax: (646) 843-7603
pnapoli@nsprlaw.com

14

/s/ Scott Summy
Scott Summy
Baron & Budd, P.C.
3102 Oak Lawn Avenue, Suite 1100
Dallas, TX 75219
214-521-3605
ssummy@baronbudd.com

/s/ Elizabeth A. Fegan
Elizabeth A. Fegan
Fegan Scott LLC
150 S. Wacker Dr., 24th Floor
Chicago, IL 60606
312-741-1019
beth@feganscott.com

/s/ Joseph F. Rice
Joseph F. Rice
Motley Rice LLC
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
843-216-9000
Jrice@motleyrice.com

*Proposed Class Counsel*

15

## CERTIFICATE OF SERVICE

I hereby certify that on August 28, 2023, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will send notification of such filing to all attorneys of record.

s/*Michael A. London*
Michael A. London
Douglas and London PC
59 Maiden Lane, 6th Floor
New York, NY 10038
212-566-7500
212-566-7501 (fax)
mlondon@douglasandlondon.com