August 28, 2023

The Honorable Richard M. Gergel
United States District Court
District of South Carolina
Charleston Division
P.O. Box 835
Charleston, SC 29402
843-579-2610
gergel_ecf@scd.uscourts.gov

>Re: *In re: Aqueous Film-Forming Foam Products Liability Litigation*, MDL No. 2-18-mn-2873-RMG. This document relates to: *City of Camden, et al. v. 3M Company*, Case No. 2:23-cv-03147-RMG

Dear Judge Gergel:

By and through their Attorneys General, the People of the States of Arizona, California, Pennsylvania, Wisconsin, and the District of Columbia (collectively, "Sovereign Amici") respectfully submit this letter as amici curiae regarding certain Plaintiffs' Motion for Preliminary Approval of Class Settlement, for Certification of Settlement Class, and for Permission to Disseminate Class Notice ("Motion")[1] which seeks preliminary approval of a proposed class settlement ("Settlement")[2] between 3M and public water systems.

As originally filed, the proposed Settlement was deeply flawed, to such an extent that 23 Attorneys General representing a large and bipartisan coalition of states and sovereign territories (collectively, "Sovereigns") opposed it. With the support of this Court, 3M engaged in negotiations with the Sovereigns and agreed to revise the Settlement to address many of the Sovereigns' concerns, on the condition that the Sovereigns withdraw their Motion to Intervene and related oppositions. Thus, the Sovereigns joined 3M and moving plaintiffs ("Movants") in filing a Consent Motion to Amend Exhibits to the Motion for Preliminary Approval ("Consent Motion").

While the Sovereign Amici appreciate the good faith cooperation of 3M and the Movants in reaching this resolution, they remain concerned with two crucial aspects of the Settlement: the total amount of consideration 3M has agreed to pay class members and the period of time over which 3M has agreed to pay it. That amount is set at between $10.5 and $12.5 billion and is to be paid over a 12-year period, ending in 2036. The amount falls far short of what is needed to address the harm 3M's products have caused public water systems and appears at odds with the scope of release that would be required in exchange for participation in the Settlement.

---

[1] *See* Dkt. 3370, *In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, No. 2:18-mn-2873-RMG (D.S.C. July 3, 2023).

[2] *See* Dkt. 3370-3, *In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, No. 2:18-mn-2873-RMG (D.S.C. July 3, 2023).

Moreover, the protracted payout period increases the risk that 3M will face insolvency before it has fully paid out that amount.

To be clear, the Sovereign Amici do not oppose preliminary approval of the Settlement as modified by the Consent Motion. Nonetheless, they submit this letter to make clear that the Settlement should not serve as a point of reference for future PFAS resolutions, particularly those involving the Sovereigns.

**Relevant Background**

On July 26, 2023, the Sovereigns filed an omnibus opposition to the Motion ("Omnibus Opposition"),[3] addressing four issues with the Settlement: (1) the uncapped and overbroad indemnity provision; (2) the Settlement's ambiguous release provision; (3) a potential antisuit injunction that could affect the Sovereigns' cases; and (4) insufficient class notice.

A subset of the signatories to the Omnibus Opposition also submitted a supplemental opposition to the Motion ("Supplemental Opposition").[4] The Supplemental Opposition raised additional concerns with the Settlement: (1) the unduly protracted payment schedule; (2) the insufficiency of the settlement amount compared to the damages 3M has caused; (3) Eleventh Amendment concerns; and (4) the unrepresentative nature of the proposed class representatives.

After the Oppositions were filed, the Sovereigns continued to negotiate in good faith with the Movants and 3M. To facilitate these discussions, the Court granted three extensions to the deadline for the Movants and 3M to respond to the Oppositions.[5] These negotiations resulted in substantial changes to the Settlement that were conditioned on the Sovereigns' agreement to withdraw their Motion to Intervene and Oppositions to the Motion. The Sovereigns have honored that agreement, and the proposed changes are now before the Court.

**Remaining Concerns**

The Sovereign Amici have two important remaining concerns that they wish to highlight for the Court.

First, the Settlement still includes a protracted payment schedule that makes class members bear the risk of 3M's insolvency for over a decade. These provisions in the Settlement

---

[3] *See* Dkt. 3462, *In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, No. 2:18-mn-2873-RMG (D.S.C. July 26, 2023).

[4] *See* Dkt. 3464, *In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, No. 2:18-mn-2873-RMG (D.S.C. July 26, 2023).

[5] *See* Dkts. 3502, 3532, 3553, *In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, No. 2:18-mn-2873-RMG (D.S.C. Aug.1, Aug. 9, and Aug. 16, 2023).

remain unchanged. The Settlement provides that 3M will pay thirteen annual installments into the Qualified Settlement Fund ("QSF") between 2024 and **2036**. *See* Settlement § 6.11; Settlement Ex. K. The money earmarked for purchasing and installing remediation infrastructure for Phase One class members will be paid in full by mid-2025. *See* Settlement Ex. K. However, funds dedicated to operating and maintaining that infrastructure will not be fully paid until **2033**. *Id.* In fact, 31.5 percent of the operation and maintenance funds for Phase One class members will not be paid until the **2030s**. *Id.* Phase Two class members will face even greater delay: funds for infrastructure will not be paid in full until 2028, and 75 percent of the funds for operation and maintenance will not be paid until the **2030s**. *Id.*

This payment schedule is unfair to class members because there is a risk of 3M's insolvency in the next 13 years, as noted by the Movants themselves.[6] 3M faces mounting liabilities in other areas, such as the "nearly 260,000" lawsuits alleging that its defective military earplugs caused hearing loss in the dedicated members of our armed forces. *See* Dietrich Knauth, *3M CEO Must Attend Mediation in Earplug Litigation, Judge Rules*, Reuters (May 22, 2023), https://perma.cc/36PS-5VBS; *see also In re 3M Combat Arms Earplugs Prods. Liab. Litig.*, No. 3:19-md-2885 (N.D. Fla.).[7] In other words, class members may face the prospect of giving up their claims against 3M for compensation that never arrives in full.

Second, the Settlement amount is small compared to the cost of PFAS damages 3M has caused water suppliers. Several illustrative comparisons demonstrate the Settlement Agreement overreaches in its scope—by covering non-AFFF products—and is insufficient to address the harm caused by 3M's products.

The Settlement addresses *all* PFAS compounds used in *all* PFAS products for *all* water suppliers in the United States, yet the settlement amount of $10.5 billion to $12.5 billion (again, paid out over more than a decade) represents only a small fraction of the costs that water providers will incur because of PFAS contamination. Thus, the proposed consideration does not fully account for 3M's liability.

The American Water Works Association recently estimated U.S. water systems will incur about $47.3 billion in capital costs *alone* to comply with the proposed federal maximum

---

[6] *See, e.g.*, Dkt. 3370-1 at 51, *In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, No. 2:18-mn-2873-RMG (D.S.C. July 3, 2023).

[7] As of the time of filing, several news outlets have reported an anticipated settlement of the 3M earplug litigation for a possible $5.5 billion, to be paid over 5 years. 3M, however, called the settlement a "rumor." *3M May Settle Lawsuits Over Defective Military Earplugs For Over $5.5 Billion, Report Says, available at* https://www.forbes.com/sites/maryroeloffs/2023/08/27/3m-may-settle-lawsuits-over-defective-military-earplugs-for-over-55-billion-report-says/?sh=565f77468234 (last accessed Aug. 28, 2023).

contaminant level ("MCL") for PFOA and PFOS.[8] The annualized costs, which are the *combined* capital, operating, and maintenance costs of complying with the proposed PFOA and PFOS MCL over a 20-year period, are projected to be about $5.2 billion per year.[9]

As just one example, the California State Water Board, which operates financial assistance programs that assist water systems with certain PFAS remediation costs, has received 18 applications to that program, and the collective project costs exceed $633 million for just those 18 projects.[10] Many thousands of California water systems have not even started testing for PFAS contamination.[11] Thus, in California alone, the costs to investigate, monitor, and treat PFAS in drinking water will reach untold billions of dollars.[12]

And the nationwide costs will be far greater: a recent study by the U.S. Geological Survey found that *at least* 45 percent of drinking water in the United States is PFAS-contaminated.[13]

Moreover, the actual costs to address PFAS will be significantly higher than the minimum costs needed to meet the federal MCL. States may adopt stricter or broader MCLs than the federal MCL, covering more compounds than just PFOA and PFOS, and many public water systems may reasonably opt to reduce PFAS concentrations to levels below applicable MCLs to safeguard public health.

Because 3M is a PFAS market leader whose tortious conduct is well-established, 3M must pay its fair share for the harms caused by its conduct. The inadequate settlement amount places the burden of PFAS contamination on ratepayers and taxpayers.

---

[8] *See* Exhibit 1 at 28, tbl. 6-1 to Letter to Hon. Richrd M. Gergel (Aug. 7. 2023). The right-most three columns of the table estimate the number of "Entry Points to the Distribution System" that are impacted by those PFAS, the per-entry-point capital costs, and the total cost for public water systems of various sizes.

[9] *See id.* at App'x A tbl. A-1.

[10] *See* Declaration of Christopher Stevens, filed in support of Subset of Sovereigns' Supplemental Opposition to Plaintiffs' Motion for Preliminary Approval of [3M] Class Settlement, for Certification of Settlement Class and for Permission to Disseminate Class Notice ("Stevens Declaration"), ¶ 6.

[11] *See* Declaration of Andrew Altevogt, filed in support of Subset of Sovereigns' Supplemental Opposition to Plaintiffs' Motion for Preliminary Approval of [3M] Class Settlement, for Certification of Settlement Class and for Permission to Disseminate Class Notice, ¶ 5.

[12] *See generally* Stevens Declaration, ¶ 6.

[13] *See* U.S. Geological Survey, *Tap Water Study Detects PFAS "Forever Chemicals" Across the United States* (July 5, 2023), https://perma.cc/7F9Q-JR72.

**Conclusion**

For the foregoing reasons, the Sovereign Amici respectfully request the Court's consideration of the concerns outlined in this letter as the Court reviews the Settlement for preliminary approval purposes.

Dated: August 28, 2023              Respectfully submitted,

**STATE OF ARIZONA**
**KRISTIN K. MAYES**
**Arizona Attorney General**
State of Arizona
*/s/ Curtis Cox*_____
CURTIS COX
Assistant Attorney General
2005 N. Central Avenue
Phoenix, Arizona 85004
Tel: (602) 542-7781
Email: Environmental@azag.gov

**THE PEOPLE OF THE STATE OF CALIFORNIA**
**ROB BONTA**
**Attorney General of California**
EDWARD H. OCHOA (SBN 144842)
Senior Assistant Attorney General
JEREMY M. BROWN (SBN 269159)
Supervising Deputy Attorney General
NICHOLAS G. CAMPINS (SBN 238022)
BRENDAN J. HUGHES (SBN 333690)
Deputy Attorneys General
1515 Clay Street, 20th Floor
Oakland, California 94612
Tel: (510) 879-0801
Fax: (510) 622-2270
Email: Brendan.Hughes@doj.ca.gov

*/s/ Brendan J. Hughes*_____
BRENDAN J. HUGES
Deputy Attorney General
Attorneys for the People of the State of California,
ex rel. Rob Bonta, Attorney General of California

**DISTRICT OF COLUMBIA**
**BRIAN L. SCHWALB**
**Attorney General for the District of Columbia**
JENNIFER C. JONES
Deputy Attorney General Public Advocacy Division
ARGATONIA D. WEATHERINGTON
Chief, Social Justice Section
By: */s/ Wesley Rosenfeld*
WESLEY ROSENFELD
Assistant Attorney General
LAUREN CULLUM
Special Assistant Attorney General
Office of the Attorney General for the District of Columbia
400 Sixth Street NW, 10th Floor
Washington, District of Columbia 20001
Tel: (202)368-2569
Email: wesley.rosenfeld1@dc.gov
Email: lauren.cullum@dc.gov

EDELSON PC
*By: /s/ Jimmy Rock*
JIMMY ROCK
1255 Union Street NE, 7th Floor
Washington, District of Columbia 20002
Tel: (202) 270-4777

**COMMONWEALTH OF PENNSYLVANIA**
**MICHELLE A. HENRY**
**Attorney General**
*/s/ James A. Donahue, III*
JAMES A. DONAHUE, III
First Deputy Attorney General
Pennsylvania Office of Attorney General
Strawberry Square
Harrisburg, Pennsylvania 17120
Tel: (717) 787-3391
Email: jdonahue@attorneygeneral.gov

**STATE OF WISCONSIN**
**JOSHUA L. KAUL**
**Attorney General of Wisconsin**
*/s/ Bradley J. Motl*
BRADLEY J. MOTL
Assistant Attorney General
State Bar #1074743
SARAH C. GEERS
Assistant Attorney General
State Bar #1066948
Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
Tel: (608) 267-0505 (Motl)
Tel: (608) 266-3067 (Geers)
Fax: (608) 267-2778
Email: motlbj@doj.state.wi.us
Email: geerssc@doj.state.wi.us

## **CERTIFICATE OF SERVICE**

I certify that on August 28, 2023, I electronically filed the foregoing document with the Clerk of the Court using the Court's CM/ECF system, which shall send notice to all counsel of record.

Dated: August 28, 2023                                          */s/ Brendan J. Hughes*
                                                                                   BRENDAN J. HUGHES