**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | | |
|---|---|---|
| In re:  Aqueous Film-Forming Foams | ) | |
| Product Liability Litigation | ) | C.A. No. 2:18-2873-RMG |
| | ) | |
| _____ | ) | |
| | ) | |
| Tyco Fire Products LP, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 2:23-2384-RMG |
| | ) | |
| AIU Insurance Company, *et al*., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## ORDER AND OPINION

This matter comes before the Court on Defendants' motions to dismiss Plaintiff Tyco Fire Products, LP ("Plaintiff" or "Tyco")'s suit against its various liability insurance carriers for failure to defend and indemnify regarding claims asserted against it in the AFFF multidistrict litigation. (Dkt. Nos. 43, 44, 47, 50, 51, 54, 60, 66, 67, 80, 81, 82).[1]  Plaintiff has filed an omnibus response in opposition to the Defendants' numerous motions. (Dkt. No. 86).  Defendants have filed replies. (Dkt. Nos. 88, 92, 93, 94, 95, 96, 97, 98, 99, 100, 101).

## Factual Background

On December 7, 2018, the Judicial Panel on Multidistrict Litigation (the "JPML" or "Panel") centralized in this Court approximately 90 civil actions from eight judicial districts involving claims that aqueous film-forming foams ("AFFF") had contaminated local ground water

---

[1] Unless otherwise noted, the Court's citation to the record will be to the docket in C.A. No. 2:23-2384.

1

and drinking water supplies in numerous communities across the United States. In its transfer order, the JPML noted:

> These actions thus share factual questions concerning *the toxicity of PFOA and PFOS and their effects on human health; the chemical properties of these substances and their propensity to migrate in groundwater supplies; the knowledge of the AFFF manufacturers regarding the dangers of PFOA and PFOS; their warnings, if any, regarding proper use and storage of AFFFs; and to what extent, if any, defendants conspired or cooperated to conceal the dangers of PFOA and PFOS in their products*.

*In re Aqueous Film-Forming Foams Prod. Liab. Litig.*, 357 F. Supp. 3d 1391, 1394 (JPML 2018) (emphasis in original).

Since the creation of the AFFF multidistrict litigation in the District of South Carolina in 2018, the number of cases and plaintiffs has grown exponentially and increases on an almost daily basis. Presently, there are more than 6,000 civil actions before this court for consolidated pretrial proceedings from every state in the union, three territories, and the District of Columbia. Over 17,000 plaintiffs assert claims in this MDL. The plaintiff in this action, Tyco, has over 4,000 cases pending in the AFFF MDL.

Plaintiff initiated this lawsuit against its liability insurance carriers on May 31, 2023, seeking declaratory relief and filed an amended complaint on August 14, 2023 adding a claim for damages. (Dkt. Nos. 1, 32). A plethora of motions followed, asserting multiple arguments for dismissal of this action. Broadly speaking, Defendants argue that (1) Plaintiff improperly direct-filed its insurance coverage dispute in the MDL; (2) this Court lacks general and specific personal jurisdiction over Defendants; (3) Plaintiff's claims are barred by South Carolina's "door closing" statute; (4) the District of South Carolina is an inconvenient forum; and (5) the Court should abstain from exercising jurisdiction over this matter. These issues have been fully briefed and Defendants' motions are ripe for disposition.

## Legal Standards

A.    Motion to Dismiss for Lack of Personal Jurisdiction

Rule 12(b)(2) of the Federal Rules of Civil Procedure allows a party to assert by motion the defense of lack of personal jurisdiction. When a defendant challenges the court's personal jurisdiction under Rule 12(b)(2), a plaintiff has "the burden of proving" that jurisdiction exists "by a preponderance of the evidence." *In re Celotex Corp.*, 124 F.3d 619, 628 (4th Cir. 1997). "[W]hen, as here, a district court rules on a Rule 12(b)(2) motion without conducting an evidentiary hearing or without deferring ruling pending receipt at trial of evidence relevant to the jurisdictional issue, but rather relies on the complaint and affidavits alone, 'the burden on the plaintiff is simply to make a prima facie showing of sufficient jurisdictional basis in order to survive the jurisdictional challenge.'" *Id.*; *see also New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 294 (4th Cir. 2005) (noting that a plaintiff need only make a prima facie showing of jurisdiction when the court does not conduct an evidentiary hearing). In deciding whether a plaintiff has met this burden, the court construes all disputed facts and draws all reasonable inferences from the proof in favor of jurisdiction. *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003).

B.    Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be
        Granted

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits the dismissal of an action if the complaint fails "to state a claim upon which relief can be granted." A claim survives the motion if the complaint provides enough facts to "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This is a test of the legal sufficiency of the complaint and, therefore, Rule 12(b)(6) "does not resolve contests surrounding the facts, the merits of the claim, or the applicability of

defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). Instead, the district court's "inquiry then is limited to whether the allegations constitute a short and plain statement of the claim showing that the pleader is entitled to relief." *Id.* (internal quotation marks and citation omitted). For that analysis, the district court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments"; however, it must "assume the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations." *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).

    C.   <u>Personal Jurisdiction</u>

A district court may assert personal jurisdiction over a non-resident defendant if (1) the long-arm statute of the forum state confers jurisdiction, and (2) the exercise of personal jurisdiction comports with constitutional due process. *Christian Sci. Bd. of Directors of First Church of Christ, Scientist v. Nolan,* 259 F.3d 209, 215 (4th Cir. 2001). The South Carolina long-arm statute "extend[s] to the outer limits of the due process clause." *Hidaria, USA, Inc. v. Delo, d.d.*, 783 S.E.2d 839, 542 (S.C. App. 2016); *see also* S.C. Code Ann. § 36-2-803(A). A court's exercise of jurisdiction over a nonresident defendant comports with due process if the defendant has "minimum contacts" with the forum, such that requiring the defendant to defend its interests in that state "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945) (internal quotation omitted).

Courts have recognized two types of personal jurisdiction: general and specific jurisdiction. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984). A court can assert general jurisdiction over a corporate entity only when the "continuous corporate operation within a state is thought so substantial and of such a nature as to justify suit against it on causes of

action arising from dealings entirely distinct from those activities." *Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1199 (4th Cir. 1993). Thus, general jurisdiction requires a showing that "the defendant's activities in the state" were "continuous and systematic." *Carefirst*, 334 F.3d at 397. Specific jurisdiction is designed to protect a defendant from having to litigate a suit in a forum where it should not have anticipated being sued. *See Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 277-78 (4th Cir. 2009). To determine if specific jurisdiction exists, the court considers "(1) the extent to which the defendant has purposefully availed itself of the privilege of conducting activities in the state; (2) whether the plaintiffs' claims arise out of those activities directed at the state; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Carefirst*, 334 F.3d at 397.   In determining whether the exercise of personal jurisdiction over an out of state defendant is constitutionally reasonable, courts consider the burden on the defendant, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the interest of the states in furthering fundamental social policies. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980).

## Discussion

A.   The decision to include in the AFFF MDL Plaintiff's insurance coverage disputes with its liability insurance carriers is one which should be made by the JPML, not the transferee court.

Plaintiff filed this action directly in the District of South Carolina and indicated in the case caption that it was part of the AFFF MDL.  (Dkt. No. 1 at 1).  Defendants assert that Plaintiff's insurance coverage disputes with its liability carriers are outside the scope of the transfer order of the JPML and that Plaintiff failed to adhere to Rule 7.1(a) of the JPML, which they argue requires that any party filing "tag-along actions" promptly provide notice to the Clerk of the JPML of such

a filing.  Defendants assert that the notice of the filing of a tag-along action to the JPML Clerk provides affected parties the opportunity to file objections and to have those objections addressed by the JPML.  Rule 7.1(a), (b), (c).  Plaintiff argues that it has the right under JPML Rule 7.2(a) to file tag along actions directly in the transferee court and such filings do not require JPML action.

JPML Rules 7.1 and 7.2, read together, do create some uncertainty regarding whether a party filing an action directly in the transferee court must provide notice to the JPML Clerk referenced in Rule 7.1.  Nevertheless, it is obvious that no party by unilateral fiat can include a civil action in an MDL without an opportunity for opposing parties to interpose objections, including whether the newly filed claim exceeds the scope of the transfer order of the JPML.

Over the years, the JPML has addressed periodically the issue of whether insurance coverage disputes involving defendants in an MDL should be transferred to the MDL.  A critical issue in these disputes has been whether insurance coverage issues are beyond the scope of the JPML's transfer order.  The Court has found four cases addressing this issue, all of which were presented to and decided by the JPML.  In *In re Chinese-Manufactured Drywall Products Liability Litigation*, MDL No. 2047, 2010 WL 11747797, at *1 (JPML June 15, 2010) (hereafter "Chinese Drywall Litigation"), the Panel noted that the inclusion of insurance coverage issues in an MDL involving personal injury or product liability claims presents "interesting questions about the scope and role of Section 1407 centralization."  The JPML stated that "centralization of insurance litigation with the underlying claims will always be decided on the particular facts and circumstances of the litigation." *Id*.  The Panel ultimately denied transfer of the insurance claims to the Chinese Drywall MDL because the insurance coverage issues lacked a "common factual backdrop" and "seem to present strictly legal questions which require little or no centralized discovery.  Different circumstances could create a stronger case for transfer." *Id*.

6

A year later, the JPML again addressed the issue of insurance coverage issues within an MDL in *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, 764 F.Supp.2d 1352, 1353 (JPML 2011) (hereafter "Deepwater Horizon Litigation"). The JPML noted that the inclusion of insurance coverage disputes within an MDL "poses a challenging issue for the Panel." *Id.* The JPML stated that it will generally decline to transfer issuance coverage disputes to an MDL where there are strictly legal questions involved which require "little or no discovery. Where, however, such actions require and rely on the same factual discovery as the already-centralized actions, transfer may be warranted." *Id.* (*citing In re: Helicopter Crash Near Weaverville California on Aug. 5, 2008*, 626 F.Supp.2d 1355, 1356-57 (JPML 2009) (hereafter "Helicopter Crash Litigation")). The Panel transferred the insurance coverage disputes in the Deepwater Horizon Litigation, as it had in the Helicopter Crash Litigation, after determining there was significant overlap in the factual record of both the insurance coverage dispute and the underlying tort actions in the MDL. On the other hand, applying these same standards, the JPML recently denied transfer of insurance coverage disputes to the MDL in *In re Acetaminophen - ASD/ADHD Products Liability Litigation*, MDL No. 3043, 2023 WL 2843771, at *2 (JPML April 7, 2023).

These JPML decisions indicate to the Court that the inclusion of insurance coverage disputes in an MDL involving underlying tort claims has been a difficult issue for the JPML, and the Panel's decisions have carefully weighed various factors that go to the effectiveness of the MDL process. The decision of whether to include coverage disputes in an MDL is a matter that has traditionally been, and should be, reserved to the JPML. Consequently, the Court denies the transfer of Plaintiff's insurance coverage suit into the AFFF MDL without prejudice. If Plaintiff

desires to have its disputes with its liability insurance carriers included in the AFFF MDL, it should move before the JPML and have the Panel rule upon that motion.[2]

    B.    <u>Jurisdictional Issues</u>

Defendants assert that this Court lacks general and specific jurisdiction and, with the exception of a single policy of a single Defendant, no Defendant has consented to jurisdiction in South Carolina.  Plaintiff argues that the Court has both general and specific jurisdiction over all Defendants, and, by obtaining licenses to conduct business as insurance carriers in South Carolina, Defendants consented to personal jurisdiction in South Carolina.  The Court address these and other jurisdictional issues below.

    **1.**    ***Defendants are not subject to the general jurisdiction of this Court.***

The "paradigm forums where corporations are fairly regarded as at home are the forums where it is incorporated and where it has its principal place of business." *Fidrych v. Marriott International, Inc.*, 952 F.3d 124, 132 (4th Cir. 2020). Only in the "exceptional case" will "a corporation's operations in a forum other than its formal place of incorporation or principal place of business ... be so substantial and of such a nature as to render the corporation at home in that State." *Daimler AG v. Bauman*, 571 U.S. 117, 139 n.19 (2014).

The Court finds that it lacks general jurisdiction over any of the Defendants to this action. Plaintiff's amended complaint does not allege any defendant is incorporated in South Carolina nor that any defendant has its principal place of business there. *See generally* (Dkt. No. 32).  Further, Plaintiff does not argue that any Defendant's operations are "so substantial and of such a nature as

---

[2]  Although the Court currently declines to include this insurance coverage suit in the AFFF MDL, this matter is a related case to the actions pending against Tyco in the AFFF MDL.  Since this suit is not presently a part of the AFFF MDL, Plaintiff must carry its burden of showing that the Court has jurisdiction over the named Defendants to sustain an action in the District of South Carolina.

to render the corporation at home" in South Carolina. *Bauman*, 571 U.S. at 139 n.19. Accordingly, the Court now addresses whether Defendants are subject to general jurisdiction in South Carolina based on a theory of "consent."

> **2.      *By registering to do business in South Carolina, Defendants have not consented to personal jurisdiction in South Carolina.***

Before being licensed to do business within the state, South Carolina requires every insurer to appoint the Director of the South Carolina Department of Insurance as its agent for service of process. S.C. Code Ann. § 38-5-70.  Plaintiffs assert that this registration statute constitutes a consent to jurisdiction in the courts of South Carolina.  Since all Defendants appointed the state's Director of Insurance as its agent for service, Plaintiff argues this Court has jurisdiction over each Defendant.

Plaintiff contends that the United States Supreme Court's recent decision in *Mallory v. Norfolk S. Railway Co*., 600 U.S. 122 (2023) supports its position.  *Mallory* held that due to the specific language of the Pennsylvania business registration statute, a railroad worker employed by the defendant could sue his employer in Pennsylvania even though the defendant was incorporated in and had its principal place of business in Virginia.  The Pennsylvania business registration statute requires out of state corporations to consent to "general personal jurisdiction" within Pennsylvania. 42 Pa. C.S.A. § 5301.

Defendants argue that *Mallory* is distinguishable because the South Carolina registration statute at issue lacks a provision by which a foreign insurance carrier must consent to jurisdiction in South Carolina as a condition of doing business within the state.  Defendants point to a recent Fourth Circuit decision, *Fidrych v. Marriott International, Inc*., 952 F.3d 124 (4th Cir. 2020), which held that South Carolina's general business registration statute does not contain language

subjecting foreign corporations to personal jurisdiction in South Carolina.  Plaintiff responds that *Mallory* was issued after *Fidrych* and controls.

A review of *Mallory* and the Pennsylvania business registration statute makes clear that the Supreme Court's ruling in *Mallory* is limited to the situation where a state's business registration statute provides that a foreign corporation must consent to personal jurisdiction within the state as a condition of doing business.  Otherwise, *Mallory* would require any foreign corporation registered to do business within a state, regardless of where it was incorporated or had its principal place of business and regardless of its contacts with a state, to submit to personal jurisdiction within the state.  This plainly exceeds the very limited scope of *Mallory*.

The Court finds that the Fourth Circuit's decision in *Fidrych* controls under the facts presented here.  *Fidrych* involved South Carolina's general business registration statute, which requires a foreign corporation to obtain a certificate of authority from the Secretary of State to do business in South Carolina.  *See* S.C. Code §§ 33-15-101, 33-15-105.  South Carolina's general business registration statute, like the state's insurance registration statute applicable to Defendants, contains no consent by foreign corporations to the general jurisdiction of the South Carolina courts. In *Fidrych*, in response to plaintiffs' argument that "foreign corporations who chose to obtain a certificate of authority in South Carolina have consented to general jurisdiction in South Carolina," the Fourth Circuit stated simply "[w]e disagree."  952 F.3d at 135.

The Court notes that a single policy of one of the many Defendants, American Guarantee and Liability Insurance Company ("AGLIC"), contains a service of suit clause in which the insurer consents to the jurisdiction of any state where a claim arises. AGLIC acknowledges that any claim arising from this single policy (Policy No. IPR 3792307-00) is subject to the jurisdiction of this Court. (Dkt. No. 44 at 9 n. 3).

**3.**    *Defendants are subject to specific personal jurisdiction in South Carolina because they purposely availed themselves of the privilege of conducting activities in South Carolina, the claims arise out of the Defendants' forum-related activities, and the exercise of jurisdiction over them is constitutionally reasonable.*

Each of the Defendants sold liability insurance policies to Plaintiff and were on notice that Plaintiff distributed its products in every state, including South Carolina.  The insurance policies Defendants sold to Plaintiff provided coverage to Plaintiff in every state, and Defendants, as well-established insurance carriers, were aware that claims against Plaintiff, their insured, could result in lawsuits subject to their coverage in any and all states.  Defendants purposely contracted to provide nationwide coverage to Plaintiff and Defendant received significant premium payments from Tyco as a result.  Defendants could have limited the territorial reach of their policies but elected to provide broad, nationwide coverage.

The Defendants' decision to contract with Tyco to provide nationwide coverage for liability claims which may arise against its insured during the policy period and their knowledge that such coverage could require them to provide indemnity for claims arising under those policies litigated in South Carolina constitutes purposeful availment of the privilege of conducting activities in South Carolina.  *E.g.*, *ESAB Group, Inc. v. Zurich Ins. Co*., 685 F.3d 376, 392 (4th Cir. 2012); *TH Agriculture & Nutrition v. Ace European Group*, *Ltd.*, 488 F.3d 1282, 1289-91 (10th Cir. 2007); *Rossman v. State Farm Mut. Auto. Ins. Co.*, 832 F.2d 282, 286 (4th Cir. 1987); *Eli Lilly and Co. v. Home Ins. Co.*, 794 F.2d 710, 720 (D.C. Cir. 1986).   As the Ninth Circuit observed in *Farmers Ins. Exchange, v. Portage La Prairie Mutual Ins. Co*., 907 F. 2d 911, 914 (9th Cir. 1990), where an insurance carrier contracted to indemnify and defend its insured nationwide, "litigation requiring the presence of the insurer is not only foreseeable, but it was purposefully contracted for by the insurer.  Moreover, unlike a product seller or distributor, an

11

insurer has the contractual ability to control the territory into which its 'product'—the indemnification and defense of claims—will travel."  Similarly, the D.C. Circuit stated in *Eli Lilly*, "[a]ppellants knew that their insured, Lilly, distributed its products nationwide.  They therefore were aware that *Lilly* was likely to be sued in any jurisdiction in the nation, including the District of Columbia. Moreover, as Lilly's insurers, appellants were aware that if Lilly was sued it was likely to attempt to implead appellants if a dispute arose over their duty to indemnify or defend." 794 F.2d at 720.

Plaintiff must additionally demonstrate that there is a nexus between the Defendants' forum-related activities and the Plaintiff's causes of action.  Plaintiff has established this by demonstrating that at least 80 cases pending in the AFFF MDL were direct filed into the MDL identifying the District of South Carolina as their home venue or were filed by claimants in the state courts in South Carolina and removed to federal court. (Dkt. No. 86 at 41).  In *TH Agriculture & Nutrition LLC*, the Tenth Circuit found the existence of a *single* case in the forum state of Kansas was sufficient to establish the nexus between an out of state insurance carrier's forum related contacts and the plaintiff's causes of action. 488 F.3d at 1291-92.

Finally, Plaintiff has demonstrated that the exercise of personal jurisdiction over the Defendants is constitutionally reasonable.  Plaintiff has a strong interest in obtaining a convenient, timely, and effective forum to adjudicate its coverage claims since it faces an August 23, 2024 day certain trial in a bellwether case in the AFFF MDL which could potentially produce devastating financial consequences to the company. *See* (C.A. No. 2:18-2873, Dkt. No. 3665 at 7). Defendants, as insurers which provided nationwide insurance coverage to Tyco, are not unduly burdened by litigating the coverage issues in the District of South Carolina since they routinely litigate complex coverage and other matters in courts in state and federal courts across the nation.  Moreover, the

federal judicial system has a strong interest in promoting the resolution of the voluminous pending cases against Tyco in the MDL arising out of its manufacture and sale of AFFF. If pretrial resolution of the claims pending against Plaintiff is not accomplished, the over 4,000 pending cases against Plaintiff in the AFFF MDL will flow back to the individual district courts in all 93 federal judicial districts and could potentially result in hundreds of complex, time-consuming jury trials. A timely resolution, one way or the other, of the insurance coverage disputes between Plaintiff and its insurers, could assist in facilitating meaningful and potentially successful settlement discussions in cases pending against Plaintiff in the AFFF MDL.

After carefully weighing the legal standards for specific jurisdiction and the factual circumstances present in this case, the Court finds that Plaintiff has carried its burden of demonstrating that Defendants are subject to the specific jurisdiction of this Court in this action.

**C.**    South Carolina's door closing statute does not bar this action.

Defendants argue that South Carolina's "door closing" statute, S.C. Code Ann. § 15-5-150, bars Plaintiff's action in the District of South Carolina. The statute provides that an action against a foreign corporation may be brought in state court only if the plaintiff is a resident of South Carolina or "the cause of action shall have arisen or the subject of the action shall be situated in South Carolina." *Id.* The Fourth Circuit has held that the statute should be applied in the federal courts unless there is an important countervailing federal policy in conflict with the state door closing statute. *Central Wesleyan College v. W.R. Grace*, 6 F.3d 177, 186 n. 3 (4th Cir. 1993); *Szantay v. Beech Aircraft Corp.*, 349 F.2d 60, 65-66 (4th Cir. 1965). These countervailing federal policies may include the federal interest in providing a convenient forum to adjudicate the plaintiff's actions and in applying liberal joinder rules to allow the consolidation of multi-defendant litigation, such as asbestos litigation. *See Central Wesleyan College*, 6 F.3d at 186 n.3.

The door closing statute has also been held inapplicable in an insurance coverage declaratory judgment case in which the underlying action was pending in the District of South Carolina.  *Flexi-Van Leasing, Inc. v. Travelers Indem. Co.*, No. 2:15-cv-1787-DCN, 2017 WL 11707321, at *4 (D.S.C.  Dec. 7, 2017).  In *Flexi-Van*, the underlying products case was pending in the District of South Carolina and the insurance coverage dispute involved an out of state plaintiff and an out of state insurance company.  The court ruled that since the underlying tort claim arose in South Carolina which required a defense and indemnity within the state, the subject of the action (the failure to provide a defense and indemnity) arose in South Carolina.

The Court finds that the state's door closing statute does not bar this action in the District of South Carolina on two separate and independent bases.  First, there is a strong countervailing federal policy in consolidating actions in multi-district litigation, and this coverage dispute relates to and advances the potential resolution of that litigation.  Second, there are at least 80 pending cases in the AFFF MDL that identified South Carolina as a home venue or which were removed from state court in South Carolina.  Under the reasoning of *Flexi-Van*, the insurance coverage issues arise, at least in part, out of South Carolina based claims.  The Court finds that South Carolina's door closing statute does not bar this litigation in the District of South Carolina.

**D.** <u>This action pending in the District of South Carolina should not be dismissed under the doctrine of *forum non conveniens*.</u>

Defendants seek the dismissal of this action in favor of a parallel Wisconsin state court action under the common law doctrine of *forum non conveniens*.  In the federal system, Congress codified a narrower, modified version of the common law doctrine of *forum non conveniens* and provided for the transfer of a case from one federal district court to another based upon the convenience of the parties and witnesses. 28 U.S.C. § 1404(a).  A dismissal of an action based on an inconvenient forum is a rarely granted remedy, and the plaintiff is normally given its choice of

courts where it has jurisdiction. *Compania Naviera Joanna SA v. Koninklijke Boskalis Westminster NV*, 569 F.3d 189, 200 (4th Cir. 2009). The burden to support a motion to dismiss based on an inconvenient forum rests with the moving party. Courts consider several factors in passing upon such a motion, including (1) the ease of access to sources of proof; (2) the availability of compulsory process for securing the attendance of unwilling witnesses; (3) the costs of obtaining the attendance of witnesses; (4) the ability to view premises; (5) the general facility and cost of trying the case in the selected forum; and (6) the public interest, including administrative difficulties, the local interest of having localized controversies decided at home, and the interest of trying cases where the substantive law applies. *Id.* (citing *American Dredging Co. v. Miller*, 510 U.S. 443, 448 (1994)).

In the declaratory judgment action pending before the Court, none of the above factors weigh significantly against the Plaintiff's chosen forum of the District of South Carolina. On the other hand, adjudicating the case in the District of South Carolina has several distinct advantages, including the Court's extensive background in the AFFF litigation, the high priority placed by this Court on a timely resolution of the coverage issues, and the interplay between the disposition of the coverage issues and the promotion of settlement discussions among the parties in the AFFF MDL. Maintaining the coverage litigation with the court responsible for managing the MDL promotes and furthers the purposes of centralizing pretrial proceedings in a transferee court under 28 U.S.C. § 1407. Consequently, the Court denies the Defendants' motion to dismiss under the doctrine of *forum non conveniens*.

    **E.**    <u>The Court, in the exercise of its discretion, declines to abstain in this matter.</u>

The parties have extensively briefed the doctrine of abstention, giving much attention to whether the Court should apply the "virtually unflagging obligation" to exercise jurisdiction

standard of *Colorado River Conservation District v. United States*, 424 U.S. 800, 817 (1976), or the more relaxed discretionary standard of *Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491 (1942). It is well settled that "our dual system of federal and state governments allows parallel actions to proceed to judgment until one becomes preclusive of the other." *Chase Brexton Health Services, Inc. v. Maryland*, 411 F.3d 457, 462 (4th Cir. 2005). Under both the *Colorado River* and *Brillhart* standards, a federal district court with jurisdiction over a matter retains the discretion to adjudicate a suit notwithstanding the fact that there exist parallel state proceedings.

The circumstances confronted by the Court in this litigation bear little similarity to the factual background of the typical abstention case. The Court has on its docket over 6,000 cases as the transferee court in the AFFF MDL, with the daunting responsibility to address pretrial issues and advance, if possible, settlement discussions among the parties. Tyco is a defendant in a majority of the pending cases in the MDL. Other major defendants, which had no reported coverage disputes with their insurance carriers, have reached a proposed settlement that may exceed $13 billion in claims asserted by public water districts. The absence of a resolution of the major coverage issues between Tyco and its liability carriers has impaired the negotiations between Tyco and the plaintiffs in the MDL.

Plaintiff faces an August 2024 bellwether trial in the AFFF MDL that could potentially produce a devastating financial verdict against it. A timely resolution of those coverage issues, either by finding coverage or the absence of coverage, could provide the negotiating parties in the MDL critical information needed to reach a negotiated settlement.

The Court is mindful that litigation pending in the circuit court of Marinette County, Wisconsin, *Century Indemnity Company, et al. v. Tyco Fire Products LP, et al.*, Case No. 2022-cv-000283, contains overlapping issues with claims made by the parties in this action, and the

16

Wisconsin forum has certain advantages because Tyco is at home in Wisconsin. But there is a fundamental problem with the Wisconsin court schedule, which, though recently expedited, would not have dispositive briefing completed until October 1, 2024.[3] In other words, according to the Wisconsin case management order, there will be no court adjudication of the major coverage issues in advance of the commencement of the August 23, 2024 bellwether trial in which Tyco faces a potentially perilous outcome.[4]

The potential negotiated resolution of the August 2024 bellwether trial carries significant consequence for Tyco, the plaintiffs and defendants in the AFFF MDL, and, ultimately, the hundreds of district courts in all 93 federal judicial districts which would receive these cases for trial if resolution cannot be not achieved within the AFFF MDL. A case management order in this Court which facilitates the adjudication of the major coverage issues in advance of the bellwether trial would likely play an important, and perhaps even decisive, role in resolving the coverage issues between Tyco and its carriers, either by negotiation or a court decision. In turn, the resolution of Tyco's coverage issues with its carriers, whether by determining coverage is or is not available, would likely assist in advancing efforts to resolve the disputes between the plaintiffs and the Telomer defendants pending in the bellwether trial.

---

[3] Under the newly issued Wisconsin state case management order, dispositive motions are not due to be filed until August 13, 2024, with responses due four weeks later, and replies due three weeks thereafter. Assuming the parties file on the last day due in the schedule, briefing on dispositive motions would not be completed until October 1, 2024. (Dkt. No. 94-6 at 5).

[4] The Court intends no disrespect to the Wisconsin state court but recognizes that the burdens of a crowded state trial court docket and demands of numerous litigants for the Court's attention might delay rulings on these complicated coverage issues. With its responsibilities as the transferee court for the AFFF MDL, this Court has a deep understanding of the AFFF litigation and is positioned to prioritize this litigation and issue rulings on key coverage questions in a more timely manner in advance of the August 2024 bellwether trial.

A number of Tyco's carriers have accurately noted their participation in mediation in advance of this action being filed and have expressed their willingness to continue working with Judge Phillips in these ongoing settlement efforts.  The Court applauds and encourages those mediation efforts, but anyone who has been in this business for a while knows that a day certain trial date often has a salutary effect in facilitating settlement negotiations.

Several carriers have disparaged Tyco's filings in South Carolina state court, Wisconsin state court, and this Court as "gamesmanship" and "procedural shenanigans."  (Dkt. No. 94 at 5, 8).  While some of the criticism of Tyco's filings is valid, there is also room for criticism for Tyco's carriers who converted a narrow coverage dispute between Tyco and Chubb in Wisconsin state court into a full-bore coverage war by asserting cross claims against Tyco when there was a pending coverage suit in state court in South Carolina. (Dkt. No. 47-1 at 17).  Whether Tyco or its carriers have engaged in procedural fencing is something of a side show and fails to address the clear need for a court to adjudicate the major coverage disputes in advance of the August 2024 bellwether trial.

The AIG Defendants[5] have dismissed the need for a court adjudication of coverage issues before the bellwether trial, contending that Tyco has the financial ability to "pay and chase." (Dkt. No. 86-8 at 6).  An insurance carrier which contracts to indemnify an insured against a covered claim commits itself to a covenant of good faith and fair dealing, and that does not mean it has the authority under its contract to deny coverage to an insured simply because its insured can afford to cover the loss and then sue the carrier.  On the other hand, all carriers have a right to assert

---

[5]    The AIG Defendants are AIU Insurance Company, American Home Assurance Company, Granite State Insurance Company, Insurance Company of the State of Pennsylvania, National Union Fire Insurance Company of Pittsburgh, Pa., and the New Hampshire Insurance Company. These carriers are referred to collectively as the "AIG Defendants."

coverage disputes and are not obligated to pay on a claim that they believe is outside their coverage. As set forth below, this Court intends to provide the carriers what they claim they seek—an adjudication of their coverage disputes before they are obligated to provide indemnity. Tyco would also obtain what it seeks, a determination of its coverage disputes before going to trial in the bellwether case.

Considering the importance of a timely adjudication of Plaintiff's coverage issues to the potential resolution of the thousands of cases pending against Tyco in the AFFF MDL, the Court has determined it cannot responsibly abstain from the exercise of its jurisdiction over these coverage disputes. Consequently, in the exercise of its discretion, the Court denies Defendants' requests to abstain in this action.

In recognition of the limited time period in which final adjudication of dispositive motions must be ruled upon, the Court intends to employ case management strategies to prioritize rulings on coverage issues that will likely have the greatest practical impact and perhaps provide guidance to the parties on the issues that may not be initially reached in the coverage litigation. Plaintiff has advised the Court that the AIG Defendants "are Tyco's primary and umbrella insurers in most of the policy years at issue." (C.A. No. 2:18-2873, Dkt. No. 3549 at 7). The AIG Defendants have asserted in the Wisconsin state court action a broad array of coverage claims that appear to overlap with the claims of many of the other insurers. (Dkt. No. 5-20 at 33-34).

Consequently, the Court will initially focus on Plaintiff's coverage disputes with the AIG Defendants as the most impactful and efficient way to address the issues raised in this coverage litigation. The Court will also provide Tyco and the other carrier defendants in this action a chance to advise the Court if there are additional policy provisions or coverage issues not raised by the

AIG Defendants that the Court should also have worked up and addressed on an expedited schedule.

The Court directs the parties as follows:

1.      Plaintiff and the AIG Defendants shall promptly meet and confer concerning a joint scheduling order that completes briefing on all dispositive motions on or before June 1, 2024. Within 10 days of this order, the parties are directed either to file with the Court a jointly prepared scheduling order in accord with the Court's stated deadline or, if the parties cannot reach agreement on a proposed scheduling order, to present separate proposed scheduling orders in accord with the Court's stated deadline.[6]

2.      Tyco and its other insurance carriers named as Defendants in this action[7] shall promptly meet and confer concerning whether there are other distinct coverage issues not likely to be addressed by the Court's rulings on the Tyco/AIG Defendants' coverage disputes that need to be addressed by June 1, 2024 in order to better facilitate meaningful settlement discussions. Within 10 days of this order, Tyco and the other carriers shall file with the Court a joint status report that identifies any critical additional issues the parties believe the Court needs to address by the stated deadline.

---

[6]  The Court fully recognizes that a scheduling order with all briefing completed on dispositive motions by June 1, 2024 will impose significant burdens on the litigants.  The parties in this action are represented by law firms with many resources and are fully capable of completing any necessary discovery and the briefing of the issues in dispute in the schedule set by the Court if they place sufficient attention to this litigation.

[7]  Along with the AIG Defendants, the balance of the Defendants in this action are set forth at (Dkt. No. 86 at 44).

## Conclusion

Based on the foregoing, the Court (1) denies the transfer of this action to the AFFF MDL without prejudice; (2) finds that Defendants are subject to the specific jurisdiction in the District of South Carolina; (3) denies Defendants' motions to dismiss under the common law doctrine of *forum non conveniens*; (4) denies Defendants' motions to dismiss under South Carolina's door closing statute; and (5) denies Defendants' motions that the Court abstain in favor of the pending Wisconsin state court action. The parties are further directed to meet and confer and make the directed submissions to the Court within 10 days of this order.

**AND IT IS SO ORDERED**.


s/Richard Mark Gergel
Richard Mark Gergel
United States District Judge


October 17, 2023
Charleston, South Carolina

21