UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| IN RE: AQUEOUS FILM-FORMING FOAM PRODUCTS LIABILITY LITIGATION ) ) ) ) ) ) ) ) ) ) | MDL No. 2:18-mn-2873-RMG<br><br>This document relates to:<br><br>*City of Camden, et al. v. E.I. DuPont de Nemours and Company (n/k/a EIDP, Inc.), et al., Case No. 2:23-cv-03230-RMG* |

### OBJECTIONS OF THE CITY OF NEWBURGH

The City of Newburgh, New York ("City"), by its counsel Knauf Shaw, LLP, submits the following objections to the proposed settlement agreement as amended ("DuPont Agreement") between the DuPont Defendants and public water providers in the above-captioned action. The Affidavit of Amy K. Kendall in support of these Objections, dated November 11, 2023, is attached as Exhibit 1.

The City is an active public water system in the United States providing drinking water to approximately 29,000 people in the City of Newburgh, New York. The City discovered PFAS in its former, primary drinking water source in 2016.

**1. The Release in Section 12 ("Release") is Overly Broad.**

    **A. The Release Covers All Known and Unknown PFAS Chemicals.**
The DuPont Agreement releases claims as to PFAS in drinking water. It in turn defines PFAS as those PFAS on UCMR 5, "any substance asserted to be PFAS in Litigation," and:

> per- and polyfluoroalkyl acids (and any salts thereof), per- and polyfluoroalkyl halides, per- and polyfluoroalkyl alcohols, per- and polyfluoroalkyl olefins, per- and polyfluoroalkane sulfonyl fluorides (including any acids and salts thereof), perfluoroalkyl iodides, per- and polyfluoroalkyl ether-based substances, fluoropolymers, perfluoropolyethers, per- and polyfluoroalkanes, side-chain fluorinated aromatics, per- and polyfluorinated phosphates and phosphonates, per- and polyfluorinated sulfonamides, per-

1

and polyfluorinated urethanes, and chemical precursors and degradation products of all such substances, including fluorinated monomers, polymers and side-chain fluorinated polymers and metabolites of all such substances . . . .

DuPont Agreement § 2.38. This definition then states its "intention" that it "be as broad, expansive, and inclusive as possible." *Id.*

The Release is framed as relating to all current or future Claims related to PFAS. There are thousands of known PFAS compounds, but only a few are reasonably understood. Compensation under the DuPont Agreement is based primarily on PFOS and PFOA, and possibly one other PFAS. The Release would relieve defendants of *all* liability for *all* PFAS compounds, when there are not even available, approved testing methods for many of them, and the impacts of these chemicals on humans are barely understood. The DuPont Agreement is not fair, reasonable or adequate as it is asking the class participants to release DuPont from future unknown liability for thousands of PFAS compounds that have not been effectively studied and understood based upon inadequate compensation for only a limited subset of PFAS compounds which have known treatment costs.

**B. The Release Includes Personal Injury Claims.**

It is unfair and unreasonable to require the Class Members to release claims arising from personal injury actions. *See generally* DuPont Agreement §12.1. Personal injury claims relating to PFAS in drinking water fit within "all Claims" … "that arise from or relate to PFAS that entered Drinking Water of a Public Water System within the Settlement Class, its Water Sources, its facilities or real property, or any of its Test Sites at any time before the Settlement Date." *Id.*

No water providers have alleged or could allege personal-injury claims in litigation against DuPont. But the City has been sued by individuals alleging personal injuries related to PFAS in the City's drinking water in two separate actions which are also pending in this MDL, *Bermo, et*

2

*al. v. DuPont,* 2:18-cv-03522-RMG, and *Hebrank v. City of Newburgh,* 2:18-cv-2219-RMG.[1] The City denies liability for the claims in these actions, and further denies that the claims are viable. By signing the DuPont Agreement as it is currently written, the City would have to release its claims against DuPont in those personal injury actions. This is fundamentally unfair because the DuPont Agreement is purportedly limited to Drinking Water Claims. If the DuPont Agreement extends to cover personal injury claims, the amount of the settlement is wholly inadequate.[2]

The Court has recognized that the claims made by water providers are important and significantly different from those alleging personal injury, such that the Court ordered the claims of water providers proceed through discovery and to a bellwether trial first (though the trial did not proceed due to the settlements). Water providers, including the City, are facing considerable liability while bearing no fault. If they participate in a settlement including the current release language, they would have no contribution recourse against DuPont. For example, if the City participates in the DuPont Agreement as the release language is currently written, it would not be able to recover from DuPont for amounts that may be awarded to personal injury plaintiffs in existing cases in this MDL. The calculations of allocation amounts set forth in the DuPont Agreement are predicated on the operation and maintenance of treatment systems—the drinking water system -- not potential damages associated with personal injury claims. *See generally* DuPont Agreement Exhibit C. Thus there is no identical factual predicate between the release of the water provider's Drinking Water claims and claims for indemnification for personal injury

---

[1] While counsel has attempted to raise this issue before, in order to discharge any potential obligation under Rule 8.3 of the New York Rules of Professional Conduct, counsel advises this tribunal of a conflict of interest between Class Counsel Paul Napoli's representation of the class of "public water suppliers", including the City of Newburgh, and his representation of personal injury plaintiffs against the City of Newburgh in the above-referenced actions which may affect the terms of the DuPont Agreement as described herein.

[2] Another ambiguity is how the responsibility of DuPont in any Claim-Over would be offset. Section 12 references "applicable law" in multiple places. While under Paragraph 13.18 the DuPont Agreement is to be interpreted under South Carolina law, in New York the effect of a release given to a joint tortfeasor is determined by New York General Obligations Law §15-108.

3

claims.

### C. Clause (ii) of Paragraph 12.1.1 of the DuPont Agreement Is Overly Broad.

Paragraph 12.1.1(ii) of the DuPont Agreement releases claims that arise out of, relate to, or involve "the development, manufacture, formulation, distribution, sale, transportation, storage, loading, mixing, application, or use of PFAS alone or in products that contain PFAS as an active ingredient, byproduct, or degradation product, including AFFF…." Exposure to and remediation of PFAS results from DuPont's activities set out in Clause (ii) and therefore any claim against DuPont will be released. This broad release extends impermissibly beyond the scope of alleged claims, which are limited to PFAS in Drinking Water and Public Water Systems.

### D. The Phrase "not related" Contained in Paragraph 12.1.2 Is Overly Broad and Makes the Exceptions Essentially Meaningless.

The City of Newburgh brought its actions as: 1) the owner of real property in the Towns of New Windsor and Newburgh containing the Washington Lake Reservoir ("Washington Lake"), the former primary water supply for the City, portions of the City's drinking water reservoir watershed, and other parts of the City's public water supply and distribution system; 2) as a user of waters that flow through the City's watershed; and 3) as the operator of the public water supply system for City residents, businesses and other water users.

Paragraph 12.1.2 states that the Release does not apply where a Class Member "also owns real property or owns and operates a facility that is *separate from and not related to* a Public Water System and does not provide Drinking Water (emphasis added)."

For the City, its former Water Source, Washington Lake, is real property that it owns, pays taxes on and is contaminated with PFAS. It is not just the water in the lake that is contaminated— water which may never again become Drinking Water if the sources of the PFAS contamination are not removed and remediated. The sediment at the bottom of the lake is contaminated and the

4

contaminants there can continue to move in to and contaminate the water. Washington Lake is "separate from" the City's Public Water System, because it is a "Water Source" or possibly a former "Test Site" but cannot be said to be "not related in any way" to the City's Public Water System. Similarly, property owned by the City in the City's watershed is "separate from" the City's Public Water System, but no property in the watershed meets the requirement of being "not related in any way" to the City's Public Water System. Paragraph 12.1.2.1 references an airport or fire training facility as being "not related," but that ignores how groundwater and surface water flow and how PFAS contamination is spread. The discharge of PFAS-containing AFFF at airports and fire training facilities result in surface, stormwater and groundwater contamination that caused and is still causing the contamination of the City's property and its former water supply. It probably cannot be said that airports and fire training facilities are "not in any way related" to the City's or other water suppliers' public water systems. The fact that they are intimately connected is the reason PFAS contamination is so widespread. This overly broad language carries with it the potential to extinguish all of the Class Members' claims against DuPont related to damage to real property.

This Section also purports to exempt wastewater or stormwater systems, but it probably cannot be said that these systems are "not related to" the City's public water system. For example, the City of Newburgh operates a wastewater treatment facility. Much of the water going into the wastewater treatment facility started in the City's Water Source and moved through its Public Water System as those terms are defined in the DuPont Agreement. Additionally, to operate a Public Water System, filters, including those that become contaminated with PFAS, have to be flushed and the flushed water goes to the wastewater treatment facility. This is likely the case for other class members as well. Therefore, it cannot be said that a wastewater facility is "separate

5

from and not in any way related" to the Public Water System or Water Sources. This again ignores how water flows. The condition in subsection (a) effectively nullifies the exception. The Release is therefore not narrowly tailored to claims for Public Water Systems / Drinking Water and therefore is not fair, reasonable or adequate.

## CONCLUSION

For these reasons, the City of Newburgh requests that the Court reject the DuPont Agreement.

Dated: November 11, 2023

*Amy K. Kendall*
Amy K. Kendall, Esq.
NY Reg. #2932317
Knauf Shaw LLP
2600 Innovation Square
100 S. Clinton Avenue
Rochester, NY 14604
Telephone: (585) 546-8430
Fax: (585) 546-4324
Email: akendall@nyenvlaw.com

6

## DECLARATION

I declare under penalty of perjury that I have been legally authorized to file the foregoing objections on behalf of the City of Newburgh and that the foregoing is true and correct, except as to those statements alleged upon information and belief, and those statements I believe to be true and correct.

*Amy K Kendall*
Amy K. Kendall, Esq.

## CERTIFICATE OF SERVICE

I hereby certify that on November 11, 2023, the foregoing document was filed via CM/ECF and by enclosing a copy of the same in a first-class, postage paid envelope addressed to the parties below and placing the envelope in an official depository of the U.S. Postal Service at 1335 Jefferson Rd, Rochester, NY 14692.

**Clerk of the Court:**

Clerk, United States District Court for the
District of South Carolina
85 Broad Street
Charleston, SC 29401

**DuPont Parties:**

The Chemours Company
Office of the General Counsel
1007 Market Street
Wilmington, DE 19801
Attn: Kristine M. Wellman

Jeffrey M. Wintner
Graham W. Meli
Wachtell, Lipton, Rosen & Katz
51 West 52nd Street
New York, NY 10019

DuPont de Nemours, Inc.
974 Centre Rd.
Wilmington, DE 19806
Attn: Erik T. Hoover

Kevin T. Van Wart
Kirkland & Ellis LLP
300 North LaSalle
Chicago, IL 60654

Corteva Inc.
974 Centre Road
Building 735
Wilmington, DE 19805
Attn: Cornel B. Fuerer

Michael T. Reynolds
Cravath, Swaine & Moore LLP
825 Eighth Avenue
New York, NY 10019

EIDP, Inc.
974 Centre Road
Building 735
Wilmington, DE 19805
Attn: Thomas A. Warnock

**Class Counsel:**

Scott Summy
Baron & Budd, P.C.
3102 Oak Lawn Ave., Ste. 1100
Dallas, Texas 75219

Michael A. London
Douglas & London
59 Maiden Lane, 6th Floor
New York, NY 10038

Paul J. Napoli
Napoli Shkolnik
1302 Av. Ponce de Leon
San Juan, Puerto Rico 00907

Elizabeth A. Fegan
Fegan Scott LLC
150 S. Wacker Drive, 24th Floor
Chicago, IL 60606

Joseph F. Rice
Motley Rice LLC
28 Bridgeside Blvd.
Mt. Pleasant, SC 2946

/s/ *Amy K. Kendall*