UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| IN RE: AQUEOUS FILM-FORMING FOAMS PRODUCT LIABILITY LITIGATION | MDL NO. 2873 |
| | Master Docket No. 2:18-mn-2873 |
| This document relates to: | JUDGE RICHARD GERGEL |
| *City of Camden, et al v. 3M Company,* Case No. 2:23-cv-03147-RMG | |
| *Broward County Florida v. 3M Company, et al.,* Case No. 2:23-cv-05337-RMG | |

**BROWARD COUNTY'S OBJECTIONS TO 3M SETTLEMENT**

Broward County ("Broward"), a political subdivision of the State of Florida, by its undersigned counsel, submits this Objection to the Settlement Agreement Between Public Water Systems and 3M Company ("Settlement") pursuant to Section 8.4 of the Settlement.[1]

**A.  First Objection: Overbroad Releases of Real Property, Stormwater, and Wastewater Claims That May be Traceable in Part to Drinking Water**

1.  The Settlement is unclear concerning the impact of the releases on real property, stormwater, and wastewater claims that can be traced—in however small a part—to Drinking Water. Sections 11.1.2.1 and 11.1.2.2 do not clearly permit (that is, do not clearly exclude from the scope of the release in Section 11.1.1) claims for remediation, testing, monitoring, or treatment of real property if the damage was caused in some part, however small, by contaminated Drinking Water. Further, Sections 11.1.3 and 11.1.4 both require a Releasing Party, in asserting a **non-**Released Claim, to affirm that the Claim does not "arise[] out of, relate[] to, or involve[]"

---

[1]  All defined terms used herein are intended to refer to the terms as defined in the Settlement. Where corrections are suggested herein, bold/underlined text indicates additions and strikethrough text indicates deletions.

1

PFAS that has entered or is associated with Drinking Water. These provisions of the Settlement could be construed to release the entirety of Broward's real property, stormwater, and wastewater claims if some small portion of those claims "arise[s] out of" PFAS-contaminated Drinking Water (e.g., Drinking Water that entered the stormwater or wastewater system or that was discarded on the real property).

2.  To remedy these ambiguities, simple amendments could be made to the paragraphs at issue as follows:

***Proposed Correction:***

11.1.2.1   Paragraph 11.1.1(i)–(iii) does not apply to a Class Member's Claim related to the remediation, testing, monitoring, or treatment of real property to remove or remediate PFAS where (i) the Class Member owns or possesses real property and has legal responsibility to remove contamination from or remediate contamination of such real property; (ii) such real property is separate from and not related in any way to the Class Member's Public Water System (such as an airport or fire training facility); (iii) the Class Member seeks **(A)** damages or other relief unrelated to Drinking Water or a Class Member's Public Water System or Water Sources**, or (B) damages to the real property caused, directly or indirectly, in whole or in part, by PFAS-contaminated Drinking Water**; and (iv) if the Class Member seeks remediation, testing, monitoring, or treatment of groundwater under such real property, the Class Member either . . . .

11.1.2.2   Paragraph 11.1.1(i)–(iii) does not apply to a Class Member's Claim related to the discharge, remediation, testing, monitoring, treatment, or processing of stormwater or wastewater to remove or remediate PFAS at its permitted stormwater system or permitted wastewater facility where (i) the Class Member owns or operates a permitted

stormwater system or permitted wastewater facility; (ii) such facility is separate from and not related in any way to the Class Member's Public Water System (such as a separate stormwater or wastewater system that is not related in any way to a Public Water System) [confirmed we are separate]; (iii) the Class Member seeks **(A)** damages or other relief unrelated to Drinking Water or a Class Member's Public Water System or Water Sources**, or (B) damages to the stormwater or wastewater system(s) caused, directly or indirectly, in whole or in part, by PFAS-contaminated Drinking Water**; and (iv) if the Class Member seeks remediation, testing, monitoring, or treatment of groundwater impacted by a permitted stormwater system or permitted wastewater facility, . . . .

11.1.3    Notwithstanding Paragraphs 11.1.2 through 11.1.2.2, if a Releasing Party pursues a Claim, including any Claim described in Paragraphs 11.1.2 through 11.1.2.2, against any Released Party arising out of, relating to, or involving PFAS or any product (including AFFF) manufactured with or containing PFAS (to the extent such Claim relates to, arises out of, or involves PFAS), the Releasing Party shall affirm in a complaint or similar filing that (i) this Settlement Agreement has fully and finally resolved all its Claims against Released Parties arising out of, related to, or involving **damages to the Public Water System due to** PFAS that has entered or is associated with Drinking Water or any Releasing Party's Public Water System and (ii) its Claims against Released Parties do not arise out of, relate to, or involve (a) PFAS that has entered or is associated with Drinking Water or any Releasing Party's Public Water System (including Claims seeking damages, abatement, or other relief to prevent or pay the cost to prevent PFAS from entering any Public Water System from a Water Source or any other source)**, other than damages to real property, stormwater, or wastewater caused, in whole or in part, by**

3

**PFAS-contaminated Drinking Water,** or (b) treatment, filtration, or remediation to address PFAS in or to prevent PFAS from entering Drinking Water or a Releasing Party's Public Water System.

11.1.4     Notwithstanding Paragraphs 11.1.2 through 11.1.2.2, and consistent with the affirmation described in Paragraph 11.1.3, each Releasing Party that pursues a Claim against any Released Party arising out of, related to, or involving PFAS or any product (including AFFF) manufactured with or containing PFAS (including any Claim described in Paragraphs 11.1.2 through 11.1.2.2):

11.1.4.1     shall specifically and expressly affirm in its complaint or similar filing and in any relevant expert report that it is not seeking damages, treatment, filtration, or remediation that in any way arises out of, relates to, or involves PFAS that has entered or is associated with Drinking Water or any Releasing Party's Public Water System (including Claims seeking abatement or other relief to prevent or pay the cost to prevent PFAS from entering any Public Water System from a Water Source or any other source or seeking treatment, filtration, or remediation to address PFAS in or prevent PFAS from entering Drinking Water or a Releasing Party's Public Water System)**, other than damages to real property, stormwater, or wastewater caused, in whole or in part, by PFAS-contaminated Drinking Water**; . . . .

**B.     Second Objection: Overbroad Releases (Biosolids; Reuse Water; Third-Party Real Property Damages)**

3.     The Settlement arguably prevents Broward from recovering damages from 3M for real property damages caused by distribution of biosolids or reuse water (also referred to as "reclaimed" water) tainted with PFAS, despite the clear intent of the Settlement not to release claims for PFAS-related real property or wastewater treatment and remediation.

4

4.      Biosolids and reuse water are arguably within the broad scope of the Releases in Section 11.1.1(iii) (releasing Claims regarding "disposal of PFAS-containing waste or PFAS-containing wastewater"). Reuse water is essentially treated wastewater, and biosolids are a wastewater byproduct. PFAS-claims arising from reuse and biosolids are clearly "related to the remediation, testing, monitoring, or treatment of real property" (Section 11.1.2.1) or "related to the discharge, remediation, testing, monitoring, treatment or processing of stormwater or wastewater" (Section 11.1.2.2), and thus clearly are intended to be captured by the exceptions; however, the phrasing of Section 11.1.2.1 ("where . . . the Class Member owns or possesses real property") omits these claims because reuse water and wastewater are typically distributed on real property *not owned* by the source water or wastewater system.

5.      The Settlement would also prevent Broward from impleading 3M to bear responsibility if Broward were sued by third parties for real property, stormwater, or wastewater claims. For example, if runoff from use of PFAS-contaminated products at a Broward property (e.g., an airport) damaged adjoining real property or the municipal stormwater system, Broward would be unable to hold 3M responsible for that liability.

6.      To remedy the overbroad releases, Section 11.1.2.1 should be modified as follows:

*Proposed Correction:*

11.1.2.1      Paragraph 11.1.1(i)–(iii) does not apply to a Class Member's Claim related to the remediation, testing, monitoring, or treatment of real property to remove or remediate PFAS where (i) the Class Member owns or possesses **the** real property **or the real property was damaged by PFAS-containing material generated by or migrating from the Class Member's real property, stormwater, or wastewater system,** and **the**

5

**Class Member** has legal responsibility to remove contamination from or remediate contamination of such real property;

**C.    Third Objection: Conflicting Required Affirmations of Compliance with Regulatory Limits**

7.    By Order dated August 29, 2023 [DE 3624], Exhibit P was modified to require Releasing Parties to merely affirm that they have "invested or will invest, if warranted, in keeping PFAS concentrations in Drinking Water to or below federal and state Maximum Containment Levels for PFAS as they may be updated from time to time." However, Section 11.1.5(iii) was <u>not</u> amended, and still requires the Releasing Party to affirm that "the Releasing Party's Public Water System has ensured that PFAS concentrations in its Public Water System's Drinking Water are kept below final federal and final state regulatory limits for PFAS."

8.    As a result, the Settlement imposes conflicting, contradictory demands on the Releasing Party. Moreover, the current verbiage of Section 11.1.5(iii) technically requires Releasing Parties to presently ensure compliance with PFAS concentrations that will likely not be legally required for many years.

*Proposed Correction:*

Section 11.1.5(iii) should be amended as follows:  (iii) the Releasing Party's Public Water System has ~~ensured that~~ **invested or will invest, if warranted, in keeping PFAS** concentrations in its Public Water System's Drinking Water ~~are kept~~ **to or** below ~~final~~ federal and ~~final~~ state ~~regulatory limits~~ **Maximum Containment Levels** for PFAS **as they may be updated from time to time**.

**D.    Fourth Objection: Overbroad Definition of "Releasing Parties"**

9.    Under Section 2.61, as amended, "Releasing Parties" includes the Class Member's past, present, and future agents, board members, employees, and assignees and representatives of

6

any of the foregoing. Applied to Broward, the obligations of Releasing Party would thus include nine County Commissioners, more than 6,000 current employees, thousands more past or future employees, and a vast array of contractors. Class Members cannot practically or legally "covenant not to sue" (Section 11.3), or undertake the vast myriad of other obligations, on behalf of all of those persons and entities.

10.     Similarly, a Class Member—typically a county or municipality—cannot be held responsible for statements made by this long list of persons and entities that are not expressly authorized or made by the Class Member. For example, if a single manager, elected official, employee, or contractor in Broward were to attribute the higher rates for drinking water to 3M, Broward would theoretically be in breach of the ratepayer protection obligations of Section 11.4. Although none of those individuals, acting alone, would have the legal authority to bind Broward absent express delegation by the Board of County Commissioners, the Settlement purports to imbue those individuals with such authority in contravention of black letter law.

11.     This objection could be ameliorated in part by modifying Section 11.4 as follows:

***Proposed Correction:***

11.4    Protection of Ratepayers. . . .

No Releasing Party shall **be authorized by the Class Member to** assert, **on behalf of the Class Member,** that any future rate increase request was attributable to a Released Party's development, manufacture, formulation, distribution, sale, transportation, storage, loading, mixing, application, or use of PFAS or any product (including AFFF) manufactured with or containing PFAS, but may assert generally the need for PFAS treatment.

7

### E.    Fifth Objection: Misstated Allocation of Liability

12.    Section 11.4 requires a Releasing Party to represent and warranty that "future additions, modifications, or improvements to its Public Water System due to PFAS will be the sole responsibility of the Releasing Party and not the Released Parties."

13.    While presumably intended to be limited to an allocation of liability as between the Releasing Parties and the Released Parties, the required representation and warranty as written ignores the liability of at least ten other defendants named in this action and could be used against the Class Members to in an effort to avoid liability by these non-Released parties.

14.    This objection could be ameliorated in part by modifying Section 11.4 as follows:

***Proposed Correction:***

". . . future additions, modifications, or improvements to its Public Water System due to PFAS will be the sole responsibility of the Releasing Party **and/or other non-Released Parties,** and not the Released Parties."

15.    The undersigned is legally authorized to object to the Settlement on behalf of Broward County, Florida. *See* Declaration of Alan Garcia (Exhibit 1) at ¶ 3.

16.    Broward County is an Eligible Claimant under the Settlement: Broward County owns and operates one or more active drinking water systems, including Safe Drinking Water Information System ("SDWIS") Nos. FL4060167 and FL4060163. *See* Garcia Decl., ¶ 2. In addition, Broward County filed a complaint in this action on October 24, 2023, *Broward County, Florida v. 3M Company, et al.,* No. 2:23-cv-05337-RMG (D.S.C.).

17.    The contact information for Broward County is as follows:

a.    Counsel for Broward County:

René D. Harrod, Fla. Bar No. 627666
Ricardo Abraham, Fla. Bar No. 1038488
Matthew S. Haber, Fla. Bar No. 105203

Broward County Attorney's Office
115 South Andrews Avenue, Suite 423, Fort Lauderdale, Florida 33301
Telephone: (954) 357-7600
Facsimile: (954) 357-7641
rharrod@broward.org
rabraham@broward.org
mhaber@broward.org

b. Broward County, by its Water and Wastewater Services:

Broward County Water & Wastewater Services
Director Alan Garcia and Operations Director Mark Darmanin
2555 W. Copans Road, Pompano Beach, Florida 33069
Telephone: (954) 831-3250
Facsimile: (954) 831-0842
agarcia@broward.org
mdarmanin@broward.org

18. In support of the foregoing objections, Broward wishes to appear at the Final Fairness Hearing and would present testimony from: Alan Garcia, Director, Broward County Water and Wastewater Services; and Mark Darmanin, Operations Director, Broward County Water and Wastewater Services.

Date: November 11, 2023                    Respectfully submitted,

/s/ René D. Harrod
René D. Harrod, Fla. Bar No. 627666
Ricardo Abraham, Fla. Bar No. 1038488
Matthew S. Haber, Fla. Bar No. 105203
Broward County Attorney's Office
115 South Andrews Avenue, Suite 423
Fort Lauderdale, Florida 33301
Telephone: (954) 357-7600
rharrod@broward.org
rabraham@broward.org
mhaber@broward.org

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing was electronically filed with this Court's CM/ECF on this 10th day of November, 2023 and was thus served electronically upon counsel of record.

By: */s/ René D. Harrod*
René D. Harrod, Fla. Bar No. 627666
Ricardo Abraham, Fla. Bar No. 1038488
Matthew S. Haber, Fla. Bar No. 105203
Broward County Attorney's Office
115 South Andrews Avenue, Suite 423
Fort Lauderdale, Florida 33301
Telephone: (954) 357-7600
rharrod@broward.org
rabraham@broward.org
mhaber@broward.org

10