UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

|  |  |
|---|---|
| IN RE: AQUEOUS FILM-FORMING FOAMS PRODUCT LIABILITY LITIGATION | MDL NO. 2873 <br><br> Master Docket No. 2:18-mn-2873 |
| This document relates to: | JUDGE RICHARD GERGEL |
| *City of Camden, et al v. E.I. DuPont de Nemours and Company, et al.,* <br> Case No. 2:23-cv-03230-RMG |  |
| *Broward County Florida v. 3M Company, et al.,* <br> Case No. 2:23-cv-05337-RMG |  |

### BROWARD COUNTY'S OBJECTIONS TO DUPONT SETTLEMENT

Broward County ("Broward"), a political subdivision of the State of Florida, by its undersigned counsel, submits this Objection to the Class Action Settlement Agreement ("Settlement") between the Class Representatives on behalf of the Settlement Class Members and defendants The Chemours Company, The Chemours Company FC, LLC, DuPont de Nemours, Inc., Corteva, Inc., and E.I. DuPont de Nemours and Company n/k/a EIDP, Inc. (collectively, "DuPont") pursuant to Section 9.6 of the Settlement.[1]

**A.    First Objection: Overbroad Releases (Real Property, Stormwater, and Wastewater Claims)**

1.    The Settlement is unclear concerning the impact of the releases on real property, stormwater, and wastewater claims that can be traced—in however small a part—to Drinking Water. Section 12.1.3 does not clearly permit (that is, does not clearly exclude from the scope of the release in Sections in Sections 12.1.1 and 12.1.2) claims for remediation, testing, monitoring,

---

[1]    All defined terms used herein are intended to refer to the terms as defined in the Settlement. Where corrections are suggested herein, bold/underlined text indicates additions and strikethrough text indicates deletions.

1

or treatment of stormwater, wastewater, or real property if the damage was caused in some part, however small, by contaminated Drinking Water. Section 12.1.1(i) and (iii) purport to release claims that arise from or relate to PFAS "that entered Drinking Water of a Public Water System within the Settlement Class, its Water Sources, its facilities or real property," without regard to whether the damage to the facility or real property may be only minimally related to contamination by Drinking Water.

2.  Section 12.1.2 states that the releases include claims that arise out of or relate to the "discharge" of water by a Public Water System "(including stormwater or wastewater)" with respect to PFAS that has entered "its facilities or real property." As written, the scope could be argued to include stormwater, wastewater, and real property claims that arise, however minimally, from Drinking Water discharge, directly or indirectly, into the stormwater or wastewater system or onto real property. The exception in subparagraph (a) is clearly intended to retain these claims, but suffers from the ambiguity created by the final phrase: "to the extent such Claims seek damages not arising from or relating to alleged harm to Drinking Water." Almost any stormwater, wastewater, or real property Claim could be argued to arise from or related to—in some small part—Drinking Water.

3.  The release could also be contended to preclude claims relating to biosolids or reuse water (also referred to as "reclaimed" water) tainted with PFAS, despite the clear intent of the Settlement not to release claims for PFAS-related real property or wastewater treatment and remediation. Reuse water is essentially treated wastewater, and biosolids are a wastewater byproduct. PFAS-claims arising from reuse and biosolids clearly relate to the "processing of stormwater or wastewater at or by such separate [non-Drinking Water] real property or facility" and thus clearly are intended to be captured by the exception under Section 12.1.2(a); however,

the phrasing of the releases could be construed to nonetheless waive these claims: e.g., Section 12.1.1 (releasing claims that "relate to PFAS that entered . . . its facilities or real property"); Section 12.1.2 (releasing Claims regarding "processing of water by a Public Water System[2] within the Settlement Class (including stormwater or wastewater) with respect to PFAS that entered its Water Sources, its facilities or real property").

4. Further, Section 12.1.2 exacerbates the ambiguity through the prefatory phrase "[w]ithout limiting Paragraph 12.1.1, . . . ." As thus written, the intended exceptions in Section 12.1.**2**(a) and (b) are not exceptions from Section 12.**1.1**, and could be construed not to save the stormwater, wastewater, and real property claims from the overbreadth of Section 12.1.1, despite the apparent intent to save such claims.

5. To remedy these ambiguities, simple amendments could be made to the Sections 12.1.2 and 12.1.3 as follows:

*Proposed Correction:*

12.1.2. Without limiting Paragraph 12.1.1, the Released Claims include Claims that arise out of or relate to the . . . Public Water System . . . with respect to PFAS that entered its Water Sources, its facilities or real property, . . . except (a) where a Settlement Class Member also owns real property or owns or operates a facility that is separate from and not related to a Public Water System and does not provide Drinking Water . . . , Claims relating to the discharge, remediation, testing, monitoring, treatment or processing of stormwater or wastewater at or by such separate real property or facility**, or damages to**

---

[2] The reference to "Public Water System" does not clarify the ambiguity, because Section 2.40 defines "Public Water System" include "the owner and/or operator of that system," so that any entity—such as Broward—that owns or operates a Public Water System **is** a Public Water System arguably even with respect to its separate stormwater and wastewater systems.

**the real property,** are preserved to the extent such Claims seek damages not arising from or relating to alleged harm to **the Public Water System (other than damages arising from or relating to, directly or indirectly, in whole or in part, by PFAS-contaminated** Drinking Water**)**, or (b) . . . .

12.1.3. Notwithstanding Paragraphs 12.1.1 and 12.1.2, (x) the Released Claims shall not include Claims that arise from or relate to a Test Site as to which PFAS is deemed under Paragraph 12.6 to have entered the water or facilities or real property of the Public Water System after the Settlement Date; ~~and~~ (y) any Releasing Person that is not a Public Water System but that is legally responsible for funding (by statute, regulation, other law, or contract) or that has authority to bring a Claim on behalf of, or to seek recovery for harm to, a Public Water System in the Settlement Class or the Public Water System's ability to provide safe or compliant Drinking Water, gives the release only to the extent of Claims that seek to recover for alleged harm to such Public Water System, and "Released Claims" shall not include other Claims of such Releasing Person**; and (z) the Released Claims shall not include Claims relating to the discharge, remediation, testing, monitoring, treatment, or processing of stormwater or wastewater (or products generated therefrom) by the Settlement Class Member, provided the real property, stormwater system, or wastewater system, as applicable, is separate from the Public Water System and does not provide Drinking Water, and further provided such claims do not seek damages to treat, remediation, test, monitor, or process Drinking Water or otherwise remedy the Public Water System**.

**B.     Second Objection: Overbroad Releases (Third-Party Real Property Damages)**

6.     The scope of the releases could also be construed to prevent Broward from impleading DuPont to bear responsibility if Broward were sued by third parties for real property,

4

stormwater, or wastewater claims. For example, if runoff from use of PFAS-contaminated products at a Broward property (e.g., an airport) damaged adjoining real property or the municipal stormwater system, Broward would be unable to hold DuPont responsible for that liability.

7. To remedy the unintended release of third-party claims, Section 12.1.4 should be modified as follows:

*Proposed Correction:*

12.1.4. This Agreement shall not release any Claims owned by a State or the federal government where brought, respectively, by the State or the federal government**, or any claim for contribution or indemnity by a Releasing Person relating to a third-party claim by a person or entity that is not a Settlement Class Member or a Released Person for PFAS-related damages to the extent such damages do not arise directly from Drinking Water or the Settlement Class Member's Public Water System**.

**C.     Third Objection: Overbroad Catchall**

8. Section 12.1.1(iv) includes in the scope of Released Claims any other claim "that were or could have been asserted in the Litigation." Despite the clear intention of the Settlement to be limited to Drinking Water, this casual catchall arguably includes all real property, personal injury, wastewater, stormwater, biosolid, and every other conceivable PFAS-related claim. Clearly this is not the intent, but the verbiage is overbroad and needs limitation. This should not be a general release that could be construed to end this case against DuPont on all remaining claims.

*Proposed Correction:*

". . . (iv) that were or could have been asserted in this litigation **for damages relating to PFAS for harm to the Public Water System** . . ."

**D.     Fourth Objection: Overbroad Definition of "Releasing Persons"**

9.     Under Section 2.45(c), "Releasing Persons" includes the Settlement Class Member's past, present, and future officers, directors, employees, board members, agents, etc., "individually or in their official, corporate, or personal capacity." Applied to Broward, the obligations of Releasing Persons would thus include nine County Commissioners (in every iteration over the history of Broward), more than 6,000 current employees, thousands more past or future employees, and a vast array of contractors. Settlement Class Members cannot practically or legally release *individual, personal* claims, consent to jurisdiction and covenant not to sue (Section 12.2), or undertake the vast myriad of other obligations on behalf of all of those persons and entities.

10.    This objection could be ameliorated in part by modifying Section 2.45 as follows:

***Proposed Correction:***

2.45    "Releasing Persons" means . . . (c) any past, present, or future officer, director, employee, trustee, board member, shareholder, representative, agent, servant, insurer, attorney, subrogee, predecessor, successor, or assignee of any of the above, ~~individually or~~ in their official, corporate~~, or personal~~ capacity; . . ."

11.    The undersigned is legally authorized to object to the Settlement on behalf of Broward County, Florida. *See* Declaration of Alan Garcia (Exhibit 1) at ¶ 3.

12.    Broward County is an Eligible Claimant under the Settlement: Broward County owns and operates one or more active drinking water systems, including Safe Drinking Water Information System ("SDWIS") Nos. FL4060167 and FL4060163. *See* Garcia Decl., ¶ 2. In addition, Broward County filed a complaint in this action on October 24, 2023, *Broward County, Florida v. 3M Company, et al.,* No. 2:23-cv-05337-RMG (D.S.C.).

13. The contact information for Broward County is as follows:

   a. Counsel for Broward County:

   René D. Harrod, Fla. Bar No. 627666
   Ricardo Abraham, Fla. Bar No. 1038488
   Matthew S. Haber, Fla. Bar No. 105203
   Broward County Attorney's Office
   115 South Andrews Avenue, Suite 423, Fort Lauderdale, Florida 33301
   Telephone: (954) 357-7600
   Facsimile: (954) 357-7641
   rharrod@broward.org
   rabraham@broward.org
   mhaber@broward.org

   b. Broward County, by its Water and Wastewater Services:

   Broward County Water & Wastewater Services
   Director Alan Garcia and Operations Director Mark Darmanin
   2555 W. Copans Road, Pompano Beach, Florida 33069
   Telephone: (954) 831-3250
   Facsimile: (954) 831-0842
   agarcia@broward.org
   mdarmanin@broward.org

14. In support of the foregoing objections, Broward wishes to appear at the Final Fairness Hearing and would present testimony from: Alan Garcia, Director, Broward County Water and Wastewater Services; and Mark Darmanin, Operations Director, Broward County Water and Wastewater Services.

Date: November 11, 2023           Respectfully submitted,

                                  /s/ René D. Harrod
                                  René D. Harrod, Fla. Bar No. 627666
                                  Ricardo Abraham, Fla. Bar No. 1038488
                                  Matthew S. Haber, Fla. Bar No. 105203
                                  Broward County Attorney's Office
                                  115 South Andrews Avenue, Suite 423
                                  Fort Lauderdale, Florida 33301
                                  Telephone: (954) 357-7600
                                  rharrod@broward.org
                                  rabraham@broward.org
                                  mhaber@broward.org

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was electronically filed with this Court's CM/ECF on this 10th day of November, 2023 and was thus served electronically upon counsel of record.

> */s/ René D. Harrod*
> René D. Harrod, Fla. Bar No. 627666
> Ricardo Abraham, Fla. Bar No. 1038488
> Matthew S. Haber, Fla. Bar No. 105203
> Broward County Attorney's Office
> 115 South Andrews Avenue, Suite 423
> Fort Lauderdale, Florida 33301
> Telephone: (954) 357-7600
> rharrod@broward.org
> rabraham@broward.org
> mhaber@broward.org