December 6, 2023

*Via E-Mail (gergel_ecf@scd.uscourts.gov; Cary_Kotcher@scd.uscourts.gov)*

The Honorable Richard M. Gergel
U.S. District Court for the District of South Carolina
J. Waties Waring Judicial Center
83 Meeting Street
Charleston, South Carolina 29401

Re:     *In re Aqueous Film-Forming Foams Products Liability Litigation* (MDL No. 2873)

Dear Judge Gergel:

Telomer Defendants were quite surprised by the length and substance of Plaintiffs' 20-page submission last night regarding water provider bellwether selection, given that it was well in excess of the 5-7 page limit the parties had discussed in advance of filing, it included an expert affidavit that Telomer Defendants had never before seen or understood would be provided, and a number of the alleged facts raised therein directly contradict Plaintiffs' discovery responses and sworn deposition testimony provided just weeks before.  Nevertheless, both the format and substance of Plaintiffs' submission confirms the concern that Telomer Defendants raised in their letter brief—that Plaintiffs seek to advance to Tier Two the cases that they believe to be strategically best for Plaintiffs, rather than the cases that are representative of the water provider docket as a whole and best suited to achieve the Court's goals for the Telomer Bellwether Program.  And strikingly, Plaintiffs' submission confirms several points that Telomer Defendants have stressed for years regarding limits to Telomer Defendants' liability in the water provider cases.  Accordingly, Telomer Defendants submit this brief response to contextualize the various points raised by Plaintiffs.

*First*, Plaintiffs' letter brief is just the latest example of Plaintiffs' "bait and switch" tactics on water provider bellwethers that became manifest in the *City of Stuart* case—namely, Plaintiffs' reliance on late-breaking and previously undisclosed "evidence" of purported Telomer AFFF liability.  Such tactics severely undercut Telomer Defendants' good-faith efforts to appropriately evaluate the bellwether cases and to achieve the aggressive timelines set forth by the Court for a trial on a telomer water provider bellwether case.  For example, although Plaintiffs' letter brief claims that Buckeye AFFF is implicated in *Southeast Morris*, Southeast Morris itself identified no such evidence in its interrogatory responses or Rule 30(b)(6) testimony on that precise issue.  Likewise, the purported "evidence" of Chemguard AFFF use in *Southeast Morris* Plaintiffs cite in their letter brief is a YouTube video of unknown origin that similarly was not disclosed before the close of Tier One Discovery.[1]  As another example,

---

[1] Moreover, this YouTube video purportedly shows usage in 2014, and Plaintiffs apparently now claim that AFFF products manufactured and sold after at least 2010 (if not earlier during the PFOA Stewardship Program) are not "representative" examples because they are highly unlikely to contribute to PFOA in the environment.  Ltr. Br., Docket No. 4152 at 18.

The Honorable Richard M. Gergel
December 6, 2023
Page 2

Plaintiff Village of Farmingdale's Tier One Rule 30(b)(6) representative expressly admitted that he was not prepared to testify about Plaintiff's purchase or use of AFFF (despite being designated to do so)—and Plaintiffs now seek to weaponize that lack of preparation by claiming that "Farmingdale's 30(b)(6) testimony to date" did not provide specific locations for such use and self-select this case out of the bellwether pool on that basis. This type of gamesmanship indicates that Plaintiffs are either strategically holding back evidence in certain cases or grasping at straws to drum up arguments in support of their preferred cases.[2]

*Second*, Plaintiffs' suggestion that Telomer Defendants admitted that *Southeast Morris* was "representative" completely misrepresents the form and substance of the parties' discussions. Plaintiffs inappropriately disclosed and now rely on an email that was part of the parties' discussions regarding a potential compromise for Tier Two case selection.[3] As made clear in the cited correspondence, at the time, Telomer Defendants expressed a willingness—in an effort not to burden the Court with a dispute—to consider *Southeast Morris* (a Plaintiff-proposed case) so long as it was paired with *Farmingdale* (a Defendant-proposed case), as both, collectively, would allow the parties to address a disparate set of issues. But Telomer Defendants did not, and have never, agreed that *Southeast Morris* is representative of the overall water provider docket or would be an appropriate case, standing alone or with *Bakman*, to advance to Tier Two. Further, given the factual complexities inherent in *Southeast Morris* and Plaintiffs' last-minute discovery revelations (including the untimely production of over 300,000 documents noted in Defendants' initial letter and the disclosure of numerous previously undisclosed alleged third-party users of AFFF in their letter to the Court), the parties would undoubtedly require additional time beyond the current Tier Two deadlines to complete fact and expert discovery.

*Finally*, and most importantly, Plaintiffs' brief distorts the goals of the Telomer Bellwether Program in an effort to advance cases that Plaintiffs view as most favorable to them. The aim of this round of water provider bellwether cases is **not** to identify and advance those cases with the clearest arguments for maximum Telomer Defendant liability. Rather, as discussed in Defendants' letter brief, the goal of the Telomer Bellwether Program is to work up cases that raise broadly applicable issues that are relevant to multiple Telomer Defendants and therefore are representative of the water provider docket as a whole. Telomer Defendants have been named in most (if not all) of the cases pending on this docket, yet there is little to no evidence of Telomer AFFF use or liability in many of these matters. This is unsurprising given

---

[2] These are just a few examples of the misrepresentations in Plaintiffs' letter brief. Defendants do not believe extensive briefing on disputed issues of fact is necessary for Tier Two case selection, though Defendants would be happy to provide a more substantive response to Plaintiffs' brief if the Court prefers.

[3] For Plaintiffs to now attempt to distort such good faith negotiations—which have served to keep this MDL moving forward for five years now—will almost certainly chill future discussions between the parties, including in ongoing discussions on personal injury bellwether cases.

The Honorable Richard M. Gergel
December 6, 2023
Page 3

the ubiquity of PFAS chemicals in non-AFFF products and, for those cases involving AFFF use, 3M's large share of the historical AFFF market.[4]

In fact, Plaintiffs' letter brief ***admits*** and ***confirms*** many of the points that Telomer Defendants have been making for years regarding limits to Telomer Defendants' potential liability in the water provider cases, including:

- The presence of PFOA alone does not mean that Telomer AFFF is a source of the contamination at issue, *see* Plaintiffs' 12/5/2023 Letter Brief, Docket No. 4152 at 18;
- Evidence of sales of Telomer AFFF into or around a geographic area is not sufficient by itself to link that AFFF to any PFOA contamination a water provider may have, *see id.*;
- There are cases in the water provider docket where Plaintiffs would themselves admit there is insufficient or no causation evidence connecting Telomer AFFF to the alleged contamination, *see, e.g.*, *id.* at 18–19; and
- There are cases in the water provider docket where no PFOA is present in finished water and the water providers themselves therefore are not planning to put treatment in place, *see, e.g.*, *id.* at 9, 20.

This is true even of cases that Plaintiffs themselves proposed for inclusion in Tier One, as set forth above. Nevertheless, Plaintiffs refuse to acknowledge that cases involving substantial defenses to Telomer Defendant liability are "representative" of this pool. Moreover, one would expect that if Plaintiffs truly believed that Telomer AFFF was not implicated in certain cases (as they now allege in *Farmingdale*) or there were cases where there is no PFOA in the finished water or plans for PFOA treatment (as they now allege in *Watertown*), Plaintiffs would agree to dismiss all Telomer Defendants from such cases with prejudice. They have not done so. Instead, Plaintiffs seek to advance cases with, in their view, the highest possible damages and the strongest alleged connection to Telomer AFFF and will presumably try to apply any results from those cases across the water provider docket as a whole—even to those cases where there is scant if any evidence of Telomer Defendant liability. Permitting Plaintiffs to succeed in their tactics would result in an unrepresentative Telomer Bellwether Program and be counterproductive to the Court's and the parties' attempts to achieve resolution of the overall water provider docket as to Telomer Defendants.

Defendants remain ready and willing to work with Plaintiffs to advance the Telomer Bellwether Program. But the type of "bait and switch" tactics and late-breaking disclosures exemplified in Plaintiffs' filing last night are highly prejudicial to Defendants. If the Court would benefit from a more comprehensive response to the assertions in Plaintiffs' letter brief, Defendants are happy to prepare such a filing within a reasonable timeframe.

---

[4] *See, e.g.*, Mem. of Law in Supp. of Plaintiffs' Mot. for Preliminary Approval of Class Settlement with 3M, Docket No. 3370-1 at 5 ("Prior to exiting the market in 2002, 3M occupied by far the largest market share of AFFF sales to the United States Government."); *see also id.* at 42 ("[P]rior to withdrawing from the market, 3M was the predominant global manufacturer of PFAS, but it was not the sole manufacturer.").

The Honorable Richard M. Gergel
December 6, 2023
Page 4

          Respectfully submitted,

          /s/ *Liam Montgomery*
          on behalf of:

          /s/ *Joseph G. Petrosinelli*

          Joseph G. Petrosinelli
          Williams & Connolly LLP
          680 Maine Avenue, S.W.
          Washington, DC 20024
          P: (202) 434-5547
          F: (202) 434-5029
          jpetrosinelli@wc.com

          *Co-lead Counsel for Defendants*