

28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
**o.** 843.216.9000  **f.** 843.216.9450

**Fred Thompson III**
*Licensed in South Carolina*
direct: 843.216.9118
fthompson@motleyrice.com

www.motleyrice.com

"I will stand for my client's rights.
I am a trial lawyer."
–Ron Motley (1944–2013)

December 7, 2023

**VIA ECF**
Hon. Richard Mark Gergel
U.S. District Court for the District of South Carolina
J. Waites Waring Judicial Center
83 Meeting Street
Charleston, South Carolina 29401

      Re: *In re AFFF Products Liability Litigation*, MDL No. 2:18-mn-2873-RMG

Dear Judge Gergel:

On behalf of the Plaintiffs' Executive Committee ("PEC"), we are compelled to provide a response to the Telomer Defendants' "reply" filed on December 6, 2023.

First and foremost, it is nonsensical to suggest that a case with no currently identifiable Telomer Defendant liability (*Farmingdale*) would be representative of the many cases that do, in fact, strongly implicate the Telomer Defendants, including the other three (3) cases being considered for selection as Tier Two bellwethers (*Southeast Morris County Municipal Utility Authority (SMCMUA)*, *Bakman*, and *Watertown)*, all of which *do* have a strong telomer signal and evidence of use of the Tyco Defendants' AFFF product(s). It appears the Telomer Defendants, contrary to the Court's specific guidance, seek to self-servingly advance only those cases that are best from their perspective and not necessarily the most representative, as seen in the intellectual pretzel of an argument they proffer to convince the Court that an outlier case is somehow representative. On the other hand, the PEC proffers bellwether cases that will be the most informative and instructive to the parties and have even offered an affidavit to help guide the parties as well as the Court in making the best decision as to which cases should move forward to Tier Two.

We should also note that despite the litany of complaints, the parties never agreed to page limits; only a date by which to submit their competing proposals. There were no "bait-and-switch" tactics employed by the PEC with its submission. Knowing their substantive arguments are weak, the Telomer Defendants clearly and unfortunately have resorted to attacking the lawyers, crying foul for no good cause other than perhaps a dislike of the indisputable facts. It is baffling, in fact, that the Telomer Defendants would feign surprise at the PEC's substantive submission, which included an expert analysis, given the importance of providing the Court with information available after expedited Tier One discovery in order to select bellwether cases that are not anomalies, such as the Telomer Defendants' selection of *Farmingdale*, but rather truly representative and capable of informing the parties as to the nature and strength of the cases involving the Telomer Defendants.

To that end, the PEC has laid out three (3) eligible bellwether cases – *SMCMUA*, *Bakman*, and *Watertown* – that can provide meaningful guidance as to liability in a case involving Telomer Defendants' AFFF and its component parts. As explained in the PEC's December 5th submission, during the Tier One discovery



December 7, 2023
Page 2

process, the parties jointly engaged in water sampling to best determine whether telomer-based products were present in the four (4) Tier One cases[1]. Such analysis was necessary as the parties agree that 3M bears the responsibility for the majority of PFAS in most water sources across the country, and, as the Court directed, we were to select cases implicating the Telomer Defendants. Disappointed with the results of the sampling, the Telomer Defendants appear adamant about selecting the one outlier case where groundwater sampling does not currently support the presence of telomer products in its water (i.e., *Farmingdale*).

Although *Farmingdale* seemed a viable candidate at the start of Tier One discovery, the knowledge gained through the joint water sampling and deposition process simply showed it was not. The entire objective of Tier One discovery was to narrow the field to two (2) representative cases, in which Plaintiffs have the burden of proof, and, as laid out in our previous submission, the PEC submits that *SMCMUA* and *Bakman* are the most appropriate to move forward. The Telomer Defendants' second selection of *Watertown* at least has sampling data supporting the presence of telomer-derived PFOA but would not be among the PEC's first two choices for the reasons set forth in our December 5th submission. It is abundantly clear, based on their December 5th submission and "reply," that the Telomer Defendants simply do not want a representative telomer case prepared for trial, as evidenced by their advocating for a case that they believe could potentially be dismissed during dispositive motion practice, and would certainly involve a trial focused entirely on the "empty chair" of the (now settled) Defendant 3M. Such a result would be instructive of nothing.

In order to provide the sought-after guidance expected from the bellwether process, a few aspects of the Telomer Defendants' liability that should go to the jury include, but are not limited to: (a) their knowledge of C8 precursors breaking down to PFOA in the environment; (b) their decision to add C8 to their products, after successfully manufacturing a safer C6 alternative AFFF since at least as early as 1982 and after they knew that PFOA was in the blood of the general population; (c) the decision, after 3M left the market and announced their phase-out of C8 chemistries, to fill the void and continue to manufacture AFFF containing C8-precursor fluorosurfactants until the very moment the EPA Stewardship Program ban on PFOA and its precursors went into effect; and (d) the formation of the Fire Fighting Foam Coalition ("FFFC") to carry out its 15 year campaign of deception – namely, that their AFFF products did not contain PFOA, or precursors that degrade to PFOA in the environment – to their customers and the EPA.

For the reasons set forth above, and in the PEC's December 5, 2023 submission, the PEC again respectfully submits that the Court should select *SMCMUA* and *Bakman* to advance to Tier Two fact discovery.

---

[1] The fact that the parties engaged in joint sampling during Tier 1 discovery also demonstrates that DCC's "surprise" at PEC relying on expert analysis in its submission to the Court is feigned. The parties agreed to "split-sampling" of water from all four potential bellwether plaintiffs to allow both sides to gather samples and conduct analysis before proceeding to Tier 2. Defendants were plainly aware that these samples would be analyzed by each sides' respective experts. It strains credulity for them to now feign shock at the PEC doing just that.



December 7, 2023
Page 3

We thank the Court for its continued time and courtesies,

Respectfully submitted,

Fred Thompson, III
*Plaintiffs' Liaison Counsel*

Encl.

cc:     All Counsel of Record (by ECF)
        Cary Kotcher (by email) (Cary_Kotcher@scd.uscourts.gov)