Jennifer T. Buckman, Esq., Cal. State Bar No. 179143
BARTKIEWICZ KRONICK & SHANAHAN, PC
1011 Twenty-Second Street
Sacramento, California 95816-4907
Telephone: (916) 446-4254
Facsimile: (916) 446-4018
E-Mail: jtb@bkslawfirm.com

Attorneys for Proposed Amicus Curiae
Association of California Water Agencies

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA,

CHARLESTON DIVISION

| | |
|---|---|
| **IN RE: AQUEOUS FILM-FORMING FOAMS PRODUCTS LIABILITY LITIGATION.** | MDL No. 2:18-mn-2873-RMG, <br><br> **This Document Relates to:** <br><br> *City of Camden, et al. v. E.I. DuPont de Nemours and Company (n/k/a EIDP, Inc.), et al.,* <br> Case No. 2:23-cv-03230-RMGww |

**MOTION FOR LEAVE TO ALLOW
PROPOSED *AMICI CURIAE*
ASSOCIATION OF CALIFORNIA WATER AGENCIES,
ASSOCIATION OF METROPOLITAN WATER AGENCIES,
CALIFORNIA MUNICIPAL UTILTIES ASSOCIATION,
AND WESTERN URBAN WATER COALITION
TO FILE AN *AMICI CURIAE* BRIEF
REGARDING ISSUES WITH PROPOSED DUPONT SETTLEMENT;
PROPOSED BRIEF**

## <u>NOTICE OF MOTION AND MOTION</u>

TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD:

NOTICE is hereby given that, pursuant to Rule 6 of the Federal Rules of Civil Procedure, on December 14, 2023, or as soon thereafter as the matter may be scheduled, proposed *amici curiae* Association of California Water Agencies ("ACWA"), Association of Metropolitan Water Agencies ("AMWA"), California Municipal Utilities Association ("CMUA"), and the Western Urban Water Coalition ("WUWC") will, and hereby do, move this court for leave to file the attached *amici curiae* brief.

Due to the timing of the fairness hearing in the DuPont matter, and the sheer number of counsel and parties involved in the multi-district litigation, it was not possible for counsel to comply with this district's Local Rule 7.02, Duty to Consult, before filing this motion.

This motion is based on this notice of motion and motion, the attached memorandum of points and authorities, and the attached proposed *amici curiae* brief.

DATED: December 13, 2023.          BARTKIEWICZ, KRONICK & SHANAHAN, PC

By: _____ /s/ Jennifer T. Buckman_____
JENNIFER T. BUCKMAN
Attorneys for Proposed *Amicus curiae* Association of California Water Agencies

NTC. OF MTN & MTN. FOR LEAVE TO FILE AMICI CURIAE BRIEF; BRIEF OF PROPOSED AMICI

<u>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR LEAVE TO FILE AMICI CURAIE BRIEF**</u>

The Association of California Water Agencies ("ACWA"), Association of Metropolitan

Water Agencies ("AMWA"), California Municipal Utilities Association ("CMUA"), and the

Western Urban Water Coalition ("WUWC") seek this court's authorization to file the attached

*amici curiae* brief to assist the court in understanding the complexities of water systems and

delivery in California and other Western states, so that the proposed settlements may account for

these issues in an appropriate manner. *Amici* urge the court to consider these points before it

rules on the fairness of the settlement, so that these difficult questions do not require multiple

court proceedings to interpret and implement the agreements.

Although there are rules governing the participation of *amicus curiae* on appeal (*see* Fed.

R. App. Proc. 29), none of the Federal Rules of Civil Procedure addresses "the conditions under

which a trial court should permit *amicus* appearances and the restrictions, if any, that should

attend its appearance." *Alliance of Auto. Mfrs. v. Gwadowsky*, 297 F. Supp. 2d 305, 306 (D. Me.

2003). Nevertheless, the district court retains "the inherent authority" to authorize the filing of

briefs by *amicus curiae. Id*. (quoting *Resort Timeshare Resales, Inc. v. Stuart*, 764 F. Supp.

1495, 1500-01 (D. Me. 1991)). Whether to allow filing of *amicus* briefs is within the district

court's "sound discretion." *Strasser v. Doorle*y, 432 F.2d 567, 569 (1st Cir. 1970). An *amicus* is

not a party and "does not represent the parties but participates only for the benefit of the court."

*Resort Timeshare*, 764 F. Supp. at 1501 (quoting *News and Sun-Sentinel Co. v. Cox*, 700 F.

Supp. 30, 31 (S.D. Fla. 1988)).

Proposed *amici curiae* Association of California Water Agencies ("ACWA"),

Association of Metropolitan Water Agencies ("AMWA"), California Municipal Utilities

Association ("CMUA"), and the Western Urban Water Coalition ("WUWC") urge the court to

exercise its discretion to authorize the filing of their *amici curiae* brief in this case. *Amici*

believe their brief will assist the court in understanding the complexities of water systems and

delivery in California and other Western states, so that the proposed settlements may account for these issues in an appropriate manner.

ACWA is the largest statewide coalition of public water agencies in the United States; this organization has over 460 public water agency members, including cities and municipal utilities departments, municipal water districts, irrigation districts, water districts, water storage districts, and county water districts. Collectively, ACWA's members are responsible for more than 90% of the water delivered to agricultural, domestic, and industrial beneficial uses in California.[1]

The Association of Metropolitan Water Agencies ("AMWA") is a nonprofit, tax-exempt organization representing the largest publicly-owned drinking water systems in the United States. AMWA's membership serves more than 160 million people across the United States with safe drinking water. Twenty of California's largest water utilities, including the Metropolitan Water District of Southern California, are AMWA members. AMWA also represents a diverse group of utilities across the rest of the country, including Denver, Las Vegas, Kansas City, Chicago, Miami, New York City, Boston, and Charleston.

California Municipal Utilities Association ("CMUA") represents 78 publicly owned electric utilities, water agencies, and gas and oil services throughout California. Together, CMUA members provide water service to 75 percent of Californians and electric service to 25 percent of the state.

The Western Urban Water Coalition ("WUWC") was established in 1992 to address the West's unique water supply and water quality challenges that threaten the economic sustainability and growth of the Western population centers. WUWC consists of the largest urban water utilities in the West, which together serve more than 40 million urban water

---

[1] ACWA's 2023 Member Directory, which includes a list of all member agencies (at pp. 15-39), affiliates (at p. 40), and associates (at pp. 41-54) is available at https://www.associationofcaliforniawateragencies-digital.com/acwg/2023_member_directory/ (accessed on December 13, 2023).

consumers in twenty major metropolitan areas across seven states.[2]  WUWC members are charged with providing a reliable, high-quality urban water supply for present and future generations in the Western cities.  WUWC members are nonprofit public utilities dedicated to serving the health, environmental, and economic needs of their communities around the clock, every day of the year.

WUWC advocates for effective and practicable approaches to promote the sustainability and resiliency of water supply infrastructure and improve and protect our nation's water supplies in a time when water supplies are becoming increasingly scarce and the development of sustainable supplies is vital.

As set forth below in their proposed *amici* brief, *amici* are concerned that the settlements and release do not accurately reflect the reality of water conveyance, distribution, treatment, and supply in the West.  *Amici* therefore respectfully submit this brief to assist the court in its understanding of the complexities of their industry so that the court may consider these issues in developing appropriate terms for the settlements and their associated releases.

## PROPOSED *AMICI CURIAE* BRIEF

The settlements' assumptions regarding the unitary nature of public water systems and sources simply do not reflect the reality of water conveyance, distribution, treatment, and supply in the West.  First, in Western states, multiple agencies may be involved in the conveyance and delivery of water, and the water may undergo treatment multiple times before it is put to beneficial use.  Second, most water supply agencies in the arid West do not rely on just one source.  Rather, to improve both water quality and supply reliability through multi-year drought cycles, water agencies generally use both surface and groundwater resources, often from multiple sources.  Finally, due to both this complex delivery structure and the fact that many water sources are blended together to ensure delivery consistent with applicable standards, water

---

[2] WUWC offers the perspective herein only on behalf of its members that may be members of the defined settlement class.

supplies are often treated multiple times by unrelated – and legally independent – agencies before they are actually delivered for use.

The settlements and their proposed releases fail to acknowledge these three facts, which form part of the fundamental foundation of Western water systems. Hence, *amici* are concerned that the settlements may not be capable of being implemented successfully, as set forth in more detail below. *Amici* urge the court to take the time to understand these issues so the settlements can avoid ambiguous terms or interpretations that could impact the rights of *amici*'s members. To that end, *amici* offer the court their assistance: should the court schedule a "water day" (similar to the court's prior "science day") to better understand the complexities and structure of water delivery in the West, *amici* will provide experts in the water supply industry to present the court relevant background information about the collection, distribution, and treatment of water and to answer any questions the court may have.

A.    **The Settlements Incorrectly Assume That Each Water System Is Operated by a Limited Number of Water Agencies and That Only One of Those Agencies Is Responsible for Treating the Water.**

Contrary to the assumptions of the proposed settlements and releases, in the West, surface water is often conveyed for long distances (sometimes hundreds of miles), passed through several independent water agencies, and treated multiple times before it is delivered.

In California, as in many other Western states, numerous water supply agencies do not hold the rights to divert the surface water they deliver. Throughout the West, the United States Bureau of Reclamation built water supply projects in the 20th century, particularly during and after the severe 1927-32 drought that caused the Dust Bowl. Within California, Reclamation developed 19 projects, which affect *all* the major surface water streams and rivers in the state. *Projects & Facilities: California*, UNITED STATES BUREAU OF RECLAMATION, https://www.usbr.gov/projects/facilities.php?state=California (accessed on December 11, 2023). These works include the Central Valley Project, the Cachuma Project, the Solano Project, the Santa Maria Project, the All-American Canal System, and the Klamath Project, among many

others – and they supply water that is put to use throughout the entire state, from the Sacramento and San Joaquin Valleys, the San Francisco Bay Area and Silicon Valley, the South Coast from Santa Maria through Santa Barbara to San Diego, and the Imperial Valley.  *Id*.

Similarly, the California Department of Water Resources developed the State Water Project, which includes 22 dams and reservoirs, a Delta pumping plant, and a 444-mile-long aqueduct that carries water from the Delta through the San Joaquin Valley to southern California. STATE WATER PROJECT, Water Education Foundation, https://www.watereducation.org/all-california-water-sources (accessed on December 11, 2023). After being pumped over the Tehachapi Mountains, much of this water is delivered into systems that serve more than 20 million people throughout southern California.  *Id.*

As a practical matter, this history means most surface water in California has already passed through at least two agencies – one of which is often Reclamation or the California Department of Water Resources – before it is delivered to the end-use customers.  Similar structures occur throughout the West, where surface water is often conveyed hundreds of miles from its source to its end-use.  *See, e.g.,* Appendix A, attached following proposed *amici* brief [map showing scale of California water infrastructure]. Due to the range and scale of these water conveyance facilities, multiple agencies have often joined together to create more cost-effective projects, resulting in complex delivery systems where water may pass through several agencies, each of which constitutes a separate and independent legal entity, before being delivered to the ultimate user.[3]

For example, regional water supply agencies that receive water from The Metropolitan Water District of Southern California ("Metropolitan") include wholesale agencies (that is, agencies that sell the water to other agencies), agencies that provide both wholesale and retail

---

[3] In California, for example, statutes authorize more than 20 different types of local agencies to provide water for various beneficial uses.  CONJUNCTIVE MANAGEMENT AND GROUNDWATER STORAGE, California Department of Water Resources, https://water.ca.gov/-/media/DWR-Website/Web-Pages/Programs/California-Water-Plan/Docs/RMS/2016/08_ConjMgt_GW_Storage_July2016.pdf (accessed December 11, 2023).

services, groundwater managers, and retail agencies and municipalities that deliver water to their customers.  Of course, water must be treated to drinking water standards before it is delivered to the ultimate consumers.  However, which agency performs that treatment often depends on local conditions and agreements.  In many areas, wholesale agencies may finance and operate a regional water treatment plant that serves multiple retail agencies, or retail agencies may enter into agreements to treat supplies ultimately delivered by other agencies, to achieve greater cost efficiency.

The releases in the proposed settlements fail to consider the real-world complexity of multi-party treatment arrangements.  According to the Parties' Joint Interpretive Guidance on Interrelated Drinking-Water Systems ("Guidance"), "[I]f a wholesaler opts out of the Settlement Class and its retail customer is a Settlement Class Member, the release would extend to the wholesaler as to the water it provided to the Settlement Class Member except to the extent the wholesaler shows it had the obligation for and bore unreimbursed PFAS-treatment costs for that water independent of the retail customer."

For example, Retail Agency A may receive its water from a wholesaler that treats water for four other agencies within the region.  If Retail Agency A participates as a Settlement Class Member, but the wholesaler that treated the water delivered to Retail Agency A opts out, the Guidance suggests that release signed by Retail Agency A would preclude the wholesaler from recovering the costs associated with treating water it delivers to Retail Agency A – but there is no way for the wholesaler to apportion its PFAS-treatment costs where it has the obligation to treat the same water for *all* its customers (not just Retail Agency A).  The release by Retail Agency A in this context cannot be read to limit the rights of the wholesaler, notwithstanding the language in the Guidance that may suggest otherwise.  Similarly, the Guidance fails to explain how the release will apply when a retail agency treats water for another retail agency and the recipient is a Settlement Class Member but the treating agency opts out.  In both of these examples, the retail agency that opted to participate as a Settlement Class Member is a separate

legal entity than the agency treating the water, and the treating agency does not receive the benefit of any recovery obtained by the retail agency.  The releases and the Guidance should not read to undermine the rights of wholesalers or retailers that treat water conveyed to other agencies, as in the above examples, because such an interpretation would raise grave fairness concerns about the settlement.

**B.    The Settlements Incorrectly Assume That Each Water Supply Comes From a Sole Source.**

Water agencies in the West must be prepared to withstand multi-year drought cycles, and most of them utilize more than one source of water to meet their customers' demands.  For example, California law requires that agencies that serve municipal and industrial uses prepare an urban water management plan, and a water shortage contingency plan, every 5 years.  Cal. Water Code §§ 10620, et seq.  This public planning process is intended to ensure that water supply agencies have sufficient supplies available to serve their anticipated demands, even through prolonged periods of drought.  *See, e.g.*, Cal. Water Code § 10630.5 ("Each plan shall include a simple lay description of how much water the agency has on a reliable basis, how much it needs for the foreseeable future, what the agency's strategy is for meeting its water needs, the challenges facing the agency, and any other information necessary to provide a general understanding of the agency's plan").

Unsurprisingly, then, in all 10 of California's hydrologic regions, both surface water and groundwater supplies are used.  Conjunctive Management and Groundwater Storage, California Department of Water Resources, https://water.ca.gov/-/media/DWR-Website/Web-Pages/Programs/California-Water-Plan/Docs/RMS/2016/08_ConjMgt_GW_Storage_July2016.pdf, Figure 2 at p. 13 (accessed December 11, 2023).  Many agencies include a mix of surface and groundwater in their supply portfolios because (among other reasons) conjunctive water management improves local or regional water supply reliability, blending with higher quality surface water may improve

groundwater quality, and surface water supplies have been utilized to reduce groundwater overdraft. *Id*.

In the arid West, water agencies also try to maximize the efficient use of water. For that reason, water that has been recycled or previously used, with or without treatment, makes up 14 – 23% of California's overall supply, depending on hydrologic conditions. CALIFORNIA WATER PLAN: 2023 UPDATE PUBLIC REVIEW DRAFT, California Department of Water Resources, https://water.ca.gov/-/media/DWR-Website/Web-Pages/Programs/California-Water-Plan/Docs/Update2023/PRD/California-Water-Plan-Update-2023-Public-Review-Draft.pdf (September 23, 2023) at 2-9, 2-12 (accessed December 11, 2023).

Additionally, because hydrologic conditions can vary significantly even within a state, Western water agencies often try to include both local and imported supplies in their portfolios. This allows them to minimize risks associated with a failure of one of those supplies due to dry conditions or unexpected outages, such as can occur with wildfires or earthquakes.

For example, the management programs implemented by the Orange County Water District in California use water imported from the State Water Project and the Colorado River, highly purified recycled water, and surface water flows diverted from the Santa Ana River and its tributaries to replenish an average of more than 230,000 acre-feet of groundwater to the aquifers underlying its service area each year. BASIN 8-1 ALTERNATIVE [to a Groundwater Sustainability Plan], Orange County Water District, City of La Habra, and Irvine Ranch Water District, https://www.ocwd.com/wp-content/uploads/basin-8-1-alternative-final-report-1-1.pdf (2017) at 6-15 – 6-18 (accessed December 13, 2023). Local water retailers in central and northern Orange County rely on the groundwater supply replenished from these various sources; they then withdraw water from the groundwater basin, treat it, and provide it to their customers.

Similarly, a county water district may have a contract for imported supplies, and it may also develop multiple local supplies within the county, such as its own reservoir on a local stream, or a recycled water program. The county water district will likely blend these supplies

and deliver treated water to other agencies within the county. If one of those agencies decides to become a Settlement Class Member, the release should not (and cannot, given the complexities of these overlapping relationships) affect the rights of other agencies that receive water from the county water district, nor should it affect the county water district itself. Any reading of the settlement that would allow one agency's participation to affect the rights of the county water district or other agencies that receive water from the county water district would be unfair and should not be countenanced.

**C.    The Settlements' Counter-Factual Assumption That Each Water Supply Is Treated at Only One Point Before Its Delivery Could Improperly Limit Recovery.**

As shown by the examples above, drinking water may undergo treatment multiple times before it is served to a customer. For example, Metropolitan treats about half of the State Water Project water it delivers. While all the "raw" water will have to be treated before delivery, some of the treated water will also have to be treated again. This occurs because many of the agencies receiving treated water blend it with other sources, which often triggers a need for additional treatment to ensure compliance with all applicable drinking water standards.

As noted above regarding Orange County Water District, California groundwater managers may take in replenishment supplies from numerous sources, including natural percolation, and supplement those with imported water from wholesale agencies, recycled water programs, and water diverted from local stream or flood flows. Depending on the water quality of the sources and the groundwater basin, the water may require treatment before injection into the groundwater basin, as well as wellhead treatment upon extraction from the basin.

In the context of such a groundwater basin, determining which water agencies are considered part of an "interrelated drinking water system" under the settlements may prove impossible. Yet if one retail agency within a basin participates as a Settlement Class Member, that should not preclude agencies that extract from that basin and that opted out of the settlements from bringing future claims.

This is just one example of how California water agencies' common practice of blending water sources may result in the water served by a retail agency having undergone treatment at several different points.  While the settlements properly attempt to prevent double recovery, the provision addressing that issue is drafted overbroadly.  Although they are ambiguous, the settlements and the claim forms appear to require Settlement Class Members to certify that they have authority to release all parties in the chain of the water's conveyance.  Section 6 of the DuPont claims form provides:

> By signing this Claims Form, Settlement Class Member represents and warrants the following for the benefit of the Settling Defendants:
>
> 
>
> The Settlement Class Member has authority to release all Released Claims on behalf of itself and all other Persons who are Releasing Persons by virtue of their relationship or association with it.

Section 2.45 of the proposed DuPont Settlement Agreement defines "Releasing Persons" to include, in addition to the Settlement Class Members:

> (e)    any Person, other than a State or the federal government, that . . . has authority . . . to seek recovery for harm to a Public Water System within the Settlement Class or the ability of such system to provide safe or compliant Drinking Water; and (f) any Person, other than a State or the federal government, . . . seeking recovery for harm to a Public Water System within the Settlement Class or the Public Water System's ability to provide safe or compliant Drinking Water.

As set forth in the Guidance, the Settling Parties interpret this language to mean ". . . Releasing Parties would be bound by § 12.1.1, which states that Claims 'that arise from or relate to PFAS that entered Drinking Water of a Public Water System within the Settlement Class, its Water Sources, its facilities or real property, or any of its Test Sites at any time before the Settlement Date' are released (§ 12.1.1(i))."  ECF 113-1, at 97.

But releasing Claims "for any type of relief . . . associated with any kind of treatment . . . of PFAS by any Settlement Class Member with respect to PFAS that has entered Drinking Water of a Public Water System within the Settlement Class, its Water Sources, its facilities or real

property, or any of its Test Sites at any time before the Settlement Date" goes well beyond "the prohibition on double recovery" it is intended to serve.  *Cf.*, *id.*  As shown by the examples above, many Western water agencies are involved in the conveyance of water, water from multiple sources is routinely blended to create water supplies, and water may be treated at multiple points before it is delivered to the end user.  In this context, it is not clear what constitutes a "Public Water System" that would be subject to the Releases.  Moreover, the Releases appear to incorrectly assume that a Member of the Settlement Class may properly release claims on behalf of other water agencies that rely on some of the same water sources or conveyance systems, even though those other agencies have opted out and will likely experience different damages.  That assumption is unreasonable, unfair, and simply does not reflect the realities of water conveyance and management in California.  The court should clarify that the settlements' terms do not require a Settling Class Member to release claims on behalf of other water agencies drawing water from the same source, or on behalf of any agency that conveys and treats water for multiple agencies even if that group includes the Settling Class Member.

## <u>CONCLUSION</u>

For these reasons, proposed *amici* urge the court to: (1) grant them leave to file this *amici* brief, and (2) consider the complexity of Western public water systems as set forth in their brief. While *amici* understand the need to prevent double recovery, the settlements and their releases should not unintentionally preclude injured parties from seeking recovery for legitimate claims. *Amici* also offer their assistance to the court and are willing to make Western water experts available, should the court wish to set a "water day" to gain a better understanding of the structure and issues of this industry.

DATED: December 13, 2023.    BARTKIEWICZ, KRONICK & SHANAHAN, PC

By: _____ /s/ Jennifer T. Buckman_____
JENNIFER T. BUCKMAN
Attorneys for Proposed *Amici curiae* Association
of California Water Agencies, et al.

**APPENDIX A**



Source: CALIFORNIA WATER PLAN: 2023 UPDATE PUBLIC REVIEW DRAFT, California Department of Water Resources, https://water.ca.gov/-/media/DWR-Website/Web-Pages/Programs/California-Water-Plan/Docs/Update2023/PRD/California-Water-Plan-Update-2023-Public-Review-Draft.pdf (September 23, 2023) at 3-4, (accessed December 13, 2023).

## **CERTIFICATE OF SERVICE**

I, Jennifer Buckman, am over the age of eighteen and not a party to this action.  I work at the law firm of Bartkiewicz, Kronick & Shanahan, APC, located at 1500 K St, Suite 4A, Sacramento, California, 95814.

On December 14, 2023, following ordinary business practices, I electronically filed the foregoing documents with the Clerk of the Court via the CM/ECF system, which will send notification to the attorneys of record in this case.

_____/s/ Jennifer T. Buckman_____
JENNIFER T. BUCKMAN
Attorneys for Proposed *Amici curiae* Association of
California Water Agencies, et al.