IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| THE STATE OF SOUTH CAROLINA, *ex. rel*. Alan M. Wilson, in his official capacity as Attorney General of the State of South Carolina, <br><br>     Plaintiff, <br><br>     vs. <br><br> 3M COMPANY; EIDP, INC., *f/k/a* E.I. DUPONT DE NEMOURS AND COMPANY ("Old DuPont"); THE CHEMOURS COMPANY ("Chemours"); THE CHEMOURS COMPANY FC, LLC ("Chemours FC"); CORTEVA, INC. ("Corteva"); and DUPONT DE NEMOURS, INC. ("New DuPont"), <br><br>     Defendants. | MDL No. 2:18-mn-2873-RMG <br><br> This Document Relates To <br> Civil Action No.: 2:23-cv-05979-RMG <br><br> **STATE OF SOUTH CAROLINA'S MEMORANDUM OF LAW SUPPORTING THE STATE'S MOTION TO REMAND[1]** |

   The State of South Carolina respectfully moves this Honorable Court to remand this case to proper jurisdiction in state court. Remand is appropriate because there is no basis for this Court to exercise jurisdiction over the state law claims alleged in Plaintiff South Carolina's Complaint.

## I. Background

   South Carolina exercised its sovereign right and duty to protect its natural resources by filing this action, which seeks compensation for the Defendants' non-AFFF PFAS contamination and to prohibit further non-AFFF PFAS contamination. The Complaint exclusively alleges state law causes of action: public nuisance, private nuisance, trespass, and violations of the South

---

[1] Pursuant to this Court's prior case management orders, Co-Lead Counsel has authorized the filing of this motion. Counsel for Plaintiff also conferred with Defendant 3M's counsel prior to the filing of this motion pursuant to Local Rule 7.02. Defendants oppose the motion.

Carolina Unfair Trade Practices Act.[2]    3M seeks to remove this matter based upon a mischaracterization of Plaintiff's Complaint and the non-AFFF PFAS contamination it seeks to address, in violation of the well-pleaded complaint doctrine.  3M invokes federal officer removal under U.S.C. § 1442(a)(1) and federal enclave jurisdiction as the basis for federal jurisdiction, predicated on the false notion that all PFAS contamination is AFFF contamination, regardless of its source, molecular structure, or geographic location.[3] For the reasons set forth below, this Court should remand this action to the Richland County Court of Common Pleas.

## II.    Standard of Review

District Courts of the United States are "courts of limited jurisdiction" and "possess only that power authorized by Constitution and statute." Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 552, 125 S. Ct. 2611, 162 L. Ed. 2d 502 (2005) (internal citation omitted).  District courts "may not exercise jurisdiction absent a statutory basis," id., and in turn, Congress may not confer jurisdiction absent a constitutional basis.  Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 108-09, 61 S. Ct. 868, 85 L. Ed. 1214 (1941) ("The power reserved to the states under the Constitution to provide for the determination of controversies in their courts, may be restricted only by the action of Congress in conformity to the Judiciary Articles of the Constitution.").  Thus,

---

[2] Barbour v. International Union, 594 F.3d 315, 327 (4th Cir. 2010) ("Consistent with these principles, we have recognized that state law complaints usually must stay in state court when they assert what appear to be state law claims. See, e.g., Harless v. CSX Hotels, Inc., 389 F.3d 444, 450 (4th Cir. 2004); King, 337 F.3d at 424; Darcangelo v. Verizon Communications, Inc., 292 F.3d 181, 186 (4th Cir. 2002); Cook v. Georgetown Steel Corp., 770 F.2d 1272, 1274 (4th Cir. 1985). ")

[3] In addition to the State's threshold challenge to federal jurisdiction, the State contends this matter is not proper for inclusion in the MDL.  There has been no judicial determination that 3M has met its burden of establishing this lawsuit is an "AFFF" case.  See Order Denying Transfer at 2, MDL No. 2873 (J.P.M.L. Mar. 27, 2020), ECF No. 620 ("Given our continued concern about the manageability of this litigation, *a party seeking transfer of an action that does not on its face raise AFFF claims bears a significant burden to persuade us that transfer is appropriate and will not undermine the efficient progress of the AFFF MDL.*")

"removal jurisdiction raises significant federalism concerns." <u>Mulcahey v. Columbia Organic Chemicals Co.</u>, 29 F.3d 148, 151 (4th Cir. 1994) (citing <u>Shamrock Oil & Gas Corp. v. Sheets</u>, 313 U.S. 100, 61 S. Ct. 868, 85 L. Ed. 1214 (1941)).  For this reason, courts "must strictly construe" removal statutes and resolve all doubts in favor of remanding the case to state court.  <u>Mulcahey</u>, 29 F.3d at 151.  The "burden of establishing federal jurisdiction is placed upon the party seeking removal." <u>Id.</u>

## III.    Argument

### 1.  Factual Threshold – Not All PFAS Contamination is AFFF Contamination

This action was removed upon the errant assertion that all PFAS contamination in South Carolina involves contamination by Aqueous Film Forming Foam ("AFFF").  While certain natural resources in the State are contaminated by AFFF, the State has filed a separate claim to address that contamination ("AFFF Litigation"). That lawsuit is currently pending in the AFFF multidistrict litigation court. AFFF-caused PFAS contamination is distinguishable from other non-AFFF PFAS contamination.  An analysis of a combination of factors including molecular structure, amounts of the recorded contamination, geographic proximity to a variety of sources, and comparable geographic sites allow AFFF contamination to be distinguished from PFAS contamination caused by consumer, textile, and other non-AFFF sources.  <u>See</u> Compl. ¶ 21; <u>see also</u> Exhibit 1, Reynolds Decl. ¶¶ 17-25.  In his declaration, Scott Reynolds, a Senior Scientist in Environmental Affairs Administration at the South Carolina Department of Health and Environmental Control ("DHEC"), discusses several key findings resulting from DHEC's investigation of PFAS contamination in South Carolina.  Reynolds explains that a review of several factors allows DHEC to "examin[e] the distinction between AFFF and other PFAS sources and determin[e] whether AFFF is most probably a source in an area." <u>Id.</u> at ¶ 18.  Crucially, and

contrary to 3M's arguments, Reynolds confirms that "PFAS compounds have been found by DHEC testing in locations where there is no known historical use of AFFF." Id. at ¶ 19.

This action also differs from the AFFF litigation with regard to the parties. Although the AFFF Litigation involves some of the Defendants named in this action, it also includes several additional defendants. See State of South Carolina v. 3M Company, *et. al.*, 2:23-cv-05734-RMG. The instant lawsuit seeks to recover for contamination caused by thousands of PFAS products separate and apart from AFFF. This suit expressly disclaims seeking any relief for AFFF-related contamination: "PFAS as defined in this Complaint expressly excludes Aqueous Film Forming Foam ("AFFF"), a firefighting material that contains PFAS. The State is not seeking to recover through this Complaint any relief for contamination or injury related to AFFF or AFFF products used at airports, military bases, or certain industrial locations." Compl. ¶ 20.

Courts have refused jurisdiction of several suits similar to South Carolina's that distinguish AFFF-caused contamination from contamination caused by other PFAS sources. See State of Vermont v. 3M Co., No. 547-6-19 Cncv (Vt. Super. Ct.) ("Vermont Non-AFFF Compl."); State of Maine v. 3M Co., et. al., 2:23-cv-00210-JAW (D.M.E.), *appeal pending*, No. 23-1709 (1st Cir.) ("Maine Non-AFFF Compl."); State of New Hampshire v. 3M Company, et al., No. 216-2019-CV-00445 (N.H. Super. Ct.), remanded from No. 1:22-cv-00145-LM (D.N.H.), *appeal pending* No. 23-1362 (1st Cir.) ("New Hampshire Non-AFFF Compl."); In those cases, Defendants asserted the contamination was "commingled" rather than distinguishable. That argument was rejected by the courts in the Maine Non-AFFF Compl. and the New Hampshire Non-AFFF Compl. Similarly, in the Maryland Non-AFFF Compl., the JPML denied transfer to the MDL and instead found "3M's arguments that there has been commingling of PFAS contamination from AFFF and non-AFFF sources are, ultimately, too speculative to support transfer." State of Maryland v. 3M

Company, 1:23-cv-01836 (N.D. M.D. 2023); see also Order of JPML, In re: Aqueous Film-Forming Foams Product Liability Litigation, MDL No. 2:18-mn-2873-RMG (MDL No. 2873), ECF 2129 (Oct. 4, 2023) (denying transfer to MDL).

### A. The Well-Pleaded Complaint Doctrine – Defendants Cannot Raise a Defense to a Claim Not Made by the Plaintiff

It is well recognized that the State as plaintiff is the "master" of its complaint.  See The Fair v. Kohler Die and Specialty Co., 228 U.S. 22, 25 (1913).  This precept, known as the "well-pleaded complaint rule," concentrates a court's attention "on the complaint's terms" and its analysis is "unaided by anything alleged in anticipation or avoidance of defenses which it is thought the defendant may interpose."  Taylor v. Anderson, 234 U.S. 74, 75-76 (1914).  Based on this doctrine alone, because the State has drafted its complaints carefully and deliberately to clearly differentiate between the AFFF Litigation and the instant matter, this case should be remanded to state court.

3M erroneously relies on Nessel to support its argument for removal.  In Nessel, the U.S. District Court for the Western District of Michigan denied a motion to remand.  See Notice of Removal, ¶¶ 4, 36, 37, 42, 45 (citing Nessel v. Chemguard, Inc., No. 1:20-cv-1080, 2021 WL 744683, at *3 (W.D. Mich. Jan. 6, 2021)).  But unlike here, the plaintiff in Nessel sought to recover for AFFF contamination.  The plaintiff disclaimed relief for injuries caused by military or "MilSpec" AFFF, but specifically sought to recover for injuries caused by "civilian" AFFF.  The Western District of Michigan rejected the argument that there was no "nexus" between MilSpec AFFF and civilian AFFF, expressing concern that it would be unable to distinguish between the "two types of AFFF."  2021 WL 744683, at *3.  And while the AFFF MDL court also rejected this argument in In re: AFFF Prods. Liab. Litig., MDL No. 2:18-mn-287-RMG, Order (D.S.C. Oct. 1, 2019), AFFF MDL ECF No. 325, that court did not examine the issue central to the State's Motion

to Remand here: whether an outright disclaimer of all AFFF-related damages defeats federal officer jurisdiction.

Since <u>Nessel</u> was decided, however, multiple actions involving outright disclaimers of AFFF-related damages have been properly remanded to their respective state courts for lack of subject matter jurisdiction.  <u>See, e.g.</u>, <u>New Hampshire v. 3M Co.</u>, No. 22-CV-145-LM, 2023 WL 2691376, at *8 (D.N.H. Mar. 29, 2023) (in virtually identical context, remanding non-AFFF PFAS case); <u>Maine v. 3M Co.</u>, No. 2:23-CV-00210-JAW, 2023 WL 4758816, at *10 (D. Me. July 26, 2023) (same).[4] Both courts considered <u>Nessel</u> and found its reasoning unpersuasive for the same reasons that South Carolina provides here. <u>See</u> <u>New Hampshire</u>, 2023 WL 2691376, at *9 ("[T]he court does not find the reasoning of Nessel persuasive[.]"); <u>Maine</u>, 2023 WL 4758816 at *10 ("On balance, the Court concludes that New Hampshire is more persuasive" than <u>Nessel</u>).

Additionally, numerous courts have recognized that, when a plaintiff has "specifically limited" its claims to injuries from products other than those alleged to have been made at the direction of a federal officer, federal officer jurisdiction simply cannot stand.  <u>Hopkins v. Buffalo Pumps, Inc.</u>, No. 09-181, 2009 WL 4496053, at *6–7 (D.R.I. Dec. 1, 2009); <u>see also, e.g.</u>, <u>Batchelor v. Am. Optical Corp.</u>, 185 F. Supp. 3d 1358, 1363–65 (S.D. Fla. 2016); <u>Kelleher v. A.W. Chesterton Co.</u>, No. 15-CV-893, 2015 WL 7422756, at *2-3 (S.D. Ill. Nov. 23, 2015); <u>Maguire v. A.C.&S., Inc.</u>, No. 14 Civ. No. 7578, 2015 WL 4934445, at *2 (S.D.N.Y. Aug. 18, 2015); <u>Hayden v. 3M Co.</u>, No. 15-2275, 2015 WL 4730741, at *3-4 (E.D. La. Aug. 10, 2015); <u>Dougherty v. A.O. Smith Corp.</u>, No. No. 13–1972–SLR–SRF, 2014 WL 3542243, at *9-16 (D. Del. July 16, 2014); <u>Lockwood v. Crane Co.</u>, No. 2:12-cv-01473, 2012 WL 1425157, at *2 (C.D. Cal. Apr. 25, 2012); <u>Westbrook v. Asbestos Defs</u>. <i>(BHC)</i>, No. C-01-1661, 2001 WL 902642, at *3 (N.D. Cal. July 31,

---

[4] The New Hampshire and Maine rulings are currently on appeal, with oral argument having already been conducted in the New Hampshire proceeding.

2001). As these decisions have reasoned, to allow removal of such cases "would affirm [the] right to assert a defense against a claim that does not exist." Kelleher, 2015 WL 7422756, at *2.

Following these decisions' reasoning, the State's disclaimer prevents 3M from raising a defense to a claim which does not exist. By removing this case, 3M is attempting to raise the federal officer defense to claims on AFFF-caused PFAS contamination, but the State specifically disclaimed harms for AFFF contamination in the case at bar, so the well-pleaded complaint rule prevents 3M's assertion. Accordingly, this Honorable Court should remand this case to state court.

## 2. There is No Federal Subject Matter Jurisdiction Over the State's Claims

3M offers two doctrines in support of federal jurisdiction: (1) the federal officer removal statute, 28 U.S.C. § 1442(a)(1); and (2) the assertion that the case arose on "federal enclaves." For the reasons set forth below, both fail to establish federal jurisdiction.

### A. Federal Officer Removal Doctrine Does Not Apply

3M erroneously claims a right to remove this action based on the federal officer removal statute, found in 28 U.S.C. § 1442(a)(1), which generally permits the removal of cases commenced in state court against "[t]he United States or any agency thereof … for or relating to any act under color of such office." 28 U.S.C. §1442(a)(1). While federal courts have exercised "federal officer" jurisdiction over AFFF claims,[5] federal courts lack such jurisdiction over non-AFFF claims, which are the only claims at issue here. The Defendants' jurisdictional theory in AFFF cases is that the military provided design specifications for AFFF, making the AFFF manufacturers federal officers who have been sued "for or relating to" work done at the federal government's behest. See 28 U.S.C. § 1442(a)(1); see also Boyle v. United Techs. Corp., 487 U.S. 500 (1988). However, the contamination at issue in the instant matter is not related to the military specifications or any work

---

[5] These matters have been consolidated into MDL No. 2873 pursuant to Case Management Order No. 3 before The Honorable Richard M. Gergel.

done by the manufacturers in service of the federal government.  Rather, the State seeks recovery for contamination caused by PFAS manufactured and sold by Defendants as components of industrial, commercial, and household products.  Compl. ¶¶ 5, 49.  Because the State expressly disclaims recovery related to *any* AFFF products in this case, there is no nexus between the State's claims and 3M's acts under federal authority.  For that reason, federal officer removal is improper.[6]

The Fourth Circuit captured the requirements of the federal officer removal statute in a three-part test. A private defendant, such as 3M, who seeks to remove a case under § 1442 must show: "(1) that it 'acted under' a federal officer, . . . (2) that it has 'a colorable federal defense,' . . . and (3) that the charged conduct was carried out for on [sic] in relation to the asserted official authority . . . ." Sawyer v. Foster Wheeler LLC, 860 F.3d 249, 254 (4th Cir. 2017).  Defendants cannot meet their burden of proving federal officer jurisdiction by a preponderance of the evidence.

### i. "Acted Under" a Federal Officer

3M cannot establish that it 'acted under' a federal officer by virtue of its manufacture of "MilSpec AFFF" – an entirely different product than those products at issue here – according to government specifications. Notice of Removal, ¶ 41. The State's Complaint clearly and unambiguously disclaims damages or any other relief related to AFFF, which is the subject of a separate pending action.  See discussion, supra.

"The statutory phrase 'acting under' describes 'the triggering relationship between a private entity and a federal officer.'" Mayor & City Council of Baltimore v. BP P.L.C., 952 F.3d 452, 462 (4th Cir. 2020), (quoting Watson, 551 U.S. at 149). Although that phrase is broad, "the Supreme Court has emphasized that [it is] not 'limitless.'" Id. (quoting Watson, 551 U.S. at 147). "In cases involving a private entity, the 'acting under' relationship requires that there at least be

---

[6] The State acknowledges that its claims in the AFFF Litigation relate to 3M's production of MilSpec AFFF.  South Carolina is not contesting the AFFF Litigation being removed to the MDL.

some exertion of 'subjection, guidance, or control' on the part of the federal government." Id. (quoting Watson, 551 U.S. at 151). Moreover, the private entity must be engaging in "an effort to assist, or to help carry out, the duties or tasks of the federal superior." Watson, 551 U.S. at 152. Indeed, a private contractor may "act under" a federal officer when the relationship "is an unusually close one involving detailed regulation, monitoring, or supervision." Id. at 153.

Despite Defendants' efforts to confuse the issues, the only relevant inquiry is whether the Defendants were taking commands from the federal government for its manufacturing, selling, and concealing the dangers of non-AFFF PFAS. In short, the Defendants were not under the control of an agency or federal officer when making different PFAS products for private consumers and commercial uses. See Orthopedic Specialists of New Jersey PA v. Horizon Blue Cross/Blue Shield of New Jersey, 518 F. Supp. 2d 128, 137 (D.N.J. 2007) ("Close analysis of Plaintiff's claim is critical because the Court must determine the specific act upon which Plaintiff's claim is based, and the level of control an agency or officer may have exercised over that act."); N.G. v. Downey Reg'l Med. Ctr., 140 F. Supp. 3d 1036, 1040 (C.D. Cal. 2015) ("Removal under § 1442(a)(1) must be predicated upon a showing that the acts forming the basis of the state suit were performed pursuant to an officer's direct orders or comprehensive and detailed regulations.") (citations and quotations omitted); see also Faulk v. Owens-Corning Fiberglass Corp., 48 F. Supp. 2d 653, 662 (E.D. Tex. 1999) (remanding case and noting that the product "whose manufacture was arguably 'controlled' by the federal government is not the product allegedly causing injury to the Plaintiffs").

### ii. Colorable Federal Defense

3M's "colorable defense" – the government-contractor defense – again hinges on the speculative notion of an indistinguishable comingling of AFFF PFAS contamination with non-

AFFF PFAS contamination. 3M argues that its production of AFFF pursuant to a government-approved design, coupled with this alleged "commingling" with non-AFFF contamination at a handful of locations requires the extension of the government-contractor defense to entirely different products made exclusively for private parties.  Notice of Removal, ¶ 2.  As set forth below, 3M cannot legitimately and reasonably assert a defense to a claim that the State has not raised.

The government-contractor defense precludes state-law tort liability if (1) the federal government exercised its discretion and approved certain warnings for the products supplied by the contractor; (2) the warnings provided by the contractor conformed to the federal specifications; and (3) the contractor warned the government about dangers known to the contractor but not to the government.  See Boyle v. United Techs. Corp., 487 U.S. 500, 512 (1988); see also Rhodes v. MCIC Inc., 210 F. Supp. 3d 778, 781 (D. Md. 2016).

In addition to the first two prongs, a defendant must show that it warned the government about the dangers in the product's use that were known to the contractor but not to the government. Although 3M asserts that "the United States has long understood" that "AFFF constituents can migrate through soil and potentially reach groundwater[] and that this may raise environmental or health issues," Notice of Removal, ¶ 51, 3M's own admissions contradict that assertion. 3M claims that "[s]ince the late 1960s/early 1970s, the United States military began using AFFF that meets military specifications . . . ." Id. ¶ 22.  Yet, by 3M's own account, the earliest point at which the military demonstrated an awareness of any "adverse effects environmentally" from "constituents resulting from fire-fighting exercises" was in a report from 1980 – more than 10 years later.  Id. ¶ 51 (quotation marks omitted).  By 3M's own account, that report did not reference potential *human* health impacts of AFFF, let alone the PFAS it contained.  Id. Aside from a draft report from 2002

indicating vague "environmental or health issues" from "AFFF constituents," 3M does not point to anything evincing the government's awareness of the environmental and human health risks of the PFAS in AFFF until late 2017. Id.  Importantly, 3M does not deny that it was aware of those risks at any point from when it began supplying AFFF to the military in the late 1960s, or claim to have warned the military of those risks.  See id.

As 3M concedes, MilSpec – and all other AFFF – is excluded from the scope of this case, as the Complaint expressly disclaims any relief for contamination or injury related to AFFF. Notice of Removal, ¶ 4; Compl. ¶ 20.  Again, the State's AFFF claims are the subject of a separate lawsuit (which 3M has removed to federal court).  In *this* case, however, the State seeks recovery for the harm caused by thousands of PFAS-containing consumer, household, and commercial products made or sold by defendants. 3M does not assert that the products actually at issue in this case were made to military specifications or were otherwise manufactured under "color of" federal office.  Because this case already excludes AFFF, 3M's asserted government-contractor defense is inapposite.  3M is not entitled to present a federal affirmative defense against a claim that the State has expressly excluded from its Complaint. Even so, 3M's uncontroverted failure to warn the government about PFAS's dangers establishes that such a defense is not colorable.

### iii. Charged Conduct was Carried Out "For or Relating To" the Alleged Official Authority

Even assuming the first two requirements for removal under § 1442 are satisfied, Defendants have failed to plausibly assert the third requirement for removal under this statute is met – that the charged conduct was carried out "for or relating to" the alleged official authority. Id. (citing 28 U.S.C. 1442(a)(1); Sawyer, 860 F.3d at 257-58). The Fourth Circuit has opined that for the charged conduct to relate to the asserted official authority, "there must be 'a connection or association between the act in question and the federal office.'"  Mayor & City Council of

Baltimore v. BP P.L.C., 952 F.3d 452, 466 (4th Cir. 2020) (quoting Sawyer, 860 F.3d at 258).  As the Fourth Circuit explained, "this 'connection or association' standard is broader than the old 'causal nexus' test that [the Fourth Circuit] abandoned after the Removal Clarification Act of 2011, Pub. L. No. 112-51, 125 Stat. 545, expanded § 1442(a)(1) by inserting 'or relating to' into the third requirement for removal."  Cnty. Bd. of Arlington Cnty., Virginia v. Express Scripts Pharmacy, Inc., 996 F.3d 243, 256 (4th Cir. 2021). A "defendant seeking to remove a case under" the federal-officer removal statute "must establish . . . the suit is for an act under color of office, which requires a causal nexus between the charged conduct and asserted official authority." Northrop Grumman Tech. Servs., Inc. v. DynCorp Int'l LLC, 865 F.3d 181, 186 (4th Cir. 2017). 3M cannot meet the nexus requirement for removal because it bases its Notice of Removal on a product that is not an issue in this case.

In the instant matter, none of the "charged conduct" has anything to do with AFFF manufactured for the U.S. government.  To the contrary, the State expressly disclaims any claims or relief related to AFFF in its Complaint.  Such disclaimers are effective at limiting the scope of a case.  See, e.g., New Hampshire v. 3M Co., No. 22-CV-145-LM, 2023 WL 2691376, at *8 (D. N.H. Mar. 29, 2023) (in identical context, holding that New Hampshire's AFFF disclaimer in a statewide PFAS case "is effective and eliminates the connection between the State's broad statewide claims and 3M's production of MilSpec AFFF for the United States military"); Maine v. 3M Co., No. 2:23-CV-00210-JAW, 2023 WL 4758816, at *10 (D. Me. July 26, 2023) (in another identical context, holding that the State of Maine's AFFF disclaimer in statewide PFAS claim "fits within the category of express disclaimers courts have found effective to justify a remand order").  Because this case has nothing to do with AFFF, no "nexus" exists between the "charged conduct" in the complaint and 3M's production of MilSpec AFFF.  See Moore v. Electric

Boat Corp., 25 F.4th 30, 34 n.2 (1st Cir. 2022) (federal-officer removal requires "nexus" between "the allegations in the complaint and conduct undertaken at the behest of a federal officer.") (emphasis added).

    3M nevertheless insists that MilSpec AFFF might "plausibly" have something to do with this case, because "[t]he alleged PFAS contamination at issue in this action" might be "commingled with PFAS from AFFF use at military facilities." Notice of Removal, ¶ 2. However, 3M's speculative "commingling" theory is directly refuted by a sworn declaration from the State demonstrating that AFFF contamination in South Carolina is distinguishable from other PFAS contamination. Ex. 1, Reynolds Decl. In his declaration, Reynolds discusses several key findings that have resulted from DHEC's investigation of PFAS contamination in South Carolina. Reynolds explains that a review of several factors allows DHEC to "examin[e] the distinction between AFFF and other PFAS sources and determine[e] whether AFFF is most probably a source in an area." Id. at ¶ 18. Crucially, and contrary to 3M's arguments, Reynolds confirms that "PFAS compounds have been found by DHEC testing in locations where there is no known historical use of AFFF." Id. at ¶ 19. Accordingly, the State's supporting documentation reveals the frailty in 3M's commingling argument.

    Ultimately, 3M presents no evidence that the concealment of the harms of PFAS was for or related to their purported federally authorized actions. In contrast to Sawyer, there is no suggestion that the government influenced 3M's decision to conceal and misrepresent the safety of PFAS. The fact that the federal government may have also been a target of 3M's concealment with PFAS from AFFF does not manufacture a federal relationship Defendants may now rely upon in an attempt to access federal courts. In the instant matter, 3M has been sued for contaminating South Carolina's environment by manufacturing, selling, and concealing the dangers of non-AFFF

PFAS which have been utilized in, among other things, food packaging, non-stick cookware, and stain repellant upholstery and carpeting. Compl. ¶ 4.  3M has not shown that a federal officer controlled their total production and sales of PFAS, nor is there any indication that the federal government directed them to conceal the hazards of PFAS or prohibited them from providing warnings to consumers in the non-AFFF context. Compl. ¶¶ 111, 113, 144; see also Order of The Honorable Richard M. Gergel, In re: Aqueous Film-Forming Foams Product Liability Litigation, MDL No. 2:18-mn-2873-RMG (ECF No. 2601).  3M's misconduct in *this* matter is not related to any purported direction of a federal officer. Because 3M's purported federal authority is not related to the charged conduct, this Honorable Court should remand as removal on the basis of federal officer removal is not appropriate in this instance.

### 3.  Federal Enclave Jurisdiction Does Not Apply

The State's Complaint does not make allegations about or seek to recover for contamination originating at federal enclaves, so federal enclave jurisdiction under 28 U.S.C. § 1441(a) is inappropriate.

Courts narrowly interpret federal enclave jurisdiction and hold that a complaint "must allege [either] that an injury occurred on a federal enclave or that an injury stemmed from conduct on a federal enclave."  City & Cnty. Of Honolulu v. Sunoco LP, 39 F.4th 1101, 1111 (9th Cir. 2022).  Federal enclave removal, moreover, is appropriate only where "the complaint reveal[s]" that a plaintiff's claims arose on federal enclaves.  Durham v. Lockheed Martin Corp., 445 F.3d 1247, 1250 (9th Cir. 2006) (where "the complaint" refers to the action facing removal).

The Fourth Circuit recently held federal enclave jurisdiction does not support removal in instances in which the actual injury for which the municipality is seeking compensation is injury to its property and residents occurring within its jurisdiction and not within the federal enclaves.

See Mayor of Balt. v. BP P.L.C., 31 F.4th 178, 219 (4th Cir. 2022) ("All of Baltimore's harms are pleaded within the confines and boundaries of Baltimore City. [internal citation omitted]. So given Baltimore's alleged injuries have not occurred on a federal enclave, it seeks relief for harms sustained on non-federal land, which precludes the exercise of federal-question jurisdiction."); see also Bd. of Cnty. Comm'rs of Boulder Cnty v. Suncor Energy (U.S.A.), Inc., 25 F.4th 1238, 1271-1272 (rejecting Defendants' broad theory of federal enclaves and holding federal-question jurisdiction was an improper basis for removal when injuries on federal lands were expressly disclaimed).

Similar to the Fourth Circuit, Courts across the Nation have consistently held that all pertinent events need to have occurred on the federal enclave to trigger jurisdiction. In Rhode Island, defendants sought to assert federal enclave jurisdiction on fossil fuel sales at a few federal enclaves. Rhode Island v. Shell Oil Prod. Co., 35 F.4th 44, 58 (1st Cir. 2022). The First Circuit disagreed, because Rhode Island disclaimed recoveries from federal enclaves, and because "the doctrine of federal enclave jurisdiction generally requires that *all* pertinent events take place on a federal enclave." Id. at 58 (internal quotation marks and brackets omitted, emphasis in original). The court found "some of the pertinent events … occurred *outside* federal enclaves, enclave jurisdiction was improper." Id. (emphasis in original); see also Maine v. 3M Co., No. 2:23-CV-00210-JAW, 2023 WL 4758816, at *11 (D. Me. July 26, 2023) (rejecting assertion of federal-enclave jurisdiction because 3M could not "plausibly" contend "that all" pertinent events took place on a federal enclave" and because, in any event, the State "disclaimed any AFFF claims, including those arising from a federal enclave").

3M asserts that "AFFF and/or other PFAS or PFAS containing products" may have been released from "federal enclaves" like Charleston Naval Shipyard and Parris Island. Notice of

Removal, ¶ 59.  3M's only support for that assertion references *AFFF* use at those bases.  3M proffers nothing that would demonstrate – as it must – that "*all* pertinent events" related to the State's *non*-AFFF PFAS claims "[took] place on a federal enclave."  Mayor & City Council of Baltimore v. BP P.L.C., 31 F.4th 178, 219 (4th Cir. 2022) (emphasis in original).  Rather, 3M asserts the State's claims in this case "arose in part" from the use, storage, or disposal of AFFF and/or other PFAS or PFAS containing products on one or more federal enclaves.  Notice of Removal, ¶ 61.  As discussed above, none of the State's claims pertain to AFFF use at or any activities taking place at federal enclaves and to arise "in part" is not sufficient to satisfy the Rhode Island and Maine standards that all pertinent events must occur on the enclave.  See also BP P.L.C., 31 F.4th at 217-18 (explaining that "federal-question jurisdiction is not conferred merely because some of Defendants' activities occurred on military installations").

3M further supports its argument that federal enclave jurisdiction applies by citation to South Carolina's AFFF Litigation.  Notice of Removal, ¶ 59.  That reliance is improper under Durham because Durham limits "the complaint" to the action being removed, not another complaint in a separate litigation, as the AFFF Litigation is.  Similarly, since the State did not allege, in the Complaint at issue, harms occurring on a federal enclave or injury related to conduct on a federal enclave, Honolulu is not satisfied, and federal enclave jurisdiction cannot be exercised by this Court.

Further, 3M's attempt to combine allegations regarding AFFF-caused contamination from the AFFF Litigation with allegations in the Complaint at bar regarding PFAS contamination from other sources violates the well-pleaded complaint doctrine, as discussed above.  See City of Corona v. 3M Co., No. 5:21-CV-01156-SVW-AS, 2021 WL 3829700, at *4 (C.D. Cal. Aug. 27, 2021) (in remanding PFAS case to state court, rejecting the proposition that "arguments made by Plaintiffs'

16

counsel in a different case . . . are binding on the Plaintiffs in this case.").

Defendants' contention that federal jurisdiction exists based upon a federal enclave is without merit and the State requests this matter be remanded to state court.

### 4. Courts Have Rejected 3M's Arguments in Similar Actions

3M has unsuccessfully raised identical arguments in its efforts to remove other States' complaints alleging non-AFFF contamination.  In New Hampshire v. 3M Co., for example, 3M attempted to remove that State's case under circumstances identical to those at issue here.  As here, New Hampshire filed two parallel lawsuits.  The first suit (like the instant case) sought statewide damages for PFAS contamination, but expressly disclaimed recovery for AFFF contamination. The second suit sought only recovery for contamination caused by AFFF.  3M attempted to remove both New Hampshire cases, asserting an "overlap" between PFAS products and asserting its intention to raise a federal contractor defense for the manufacture of MilSpec AFFF.  New Hampshire v. 3M Co., 2023 WL 2691376, at *1.

In rejecting 3M's argument and remanding the non-AFFF PFAS case to state court, the New Hampshire District Court highlighted that the exclusion of AFFF from that case eliminated any possibility that 3M could plausibly raise a government-contractor defense.  "To the extent AFFF is relevant," the court emphasized, "its presence in the contamination could eliminate recovery for the State—regardless of why or for whom 3M made it." Id. at *8.  "That is," the court continued, "regardless of whether 3M's AFFF conformed to a specification required by the United States military or whether 3M appropriately warned the government about the dangers of PFAS, 3M cannot be liable in this case for contamination resulting from its alleged supply of MilSpec AFFF."  Id.  Accordingly, the court held that because New Hampshire's statewide PFAS case expressly excluded AFFF, New Hampshire's "claims are neither 'for' – nor do they 'relate to' –

3M's actions under federal authority."  Id.  The same is true here.

Even more recently, the federal court in Maine v. 3M Co., No. 2:23-CV-00210-JAW, 2023 WL 4758816 (D. Me. July 26, 2023), similarly rejected 3M's attempt to remove an AFFF-excluded statewide PFAS case.  The circumstances were once again identical to those at issue here.  Maine had filed two separate lawsuits: one covered AFFF, the other covered non-AFFF PFAS contamination.  "[I]n its Non-AFFF lawsuit, the State expressly disclaimed 'seeking relief for AFFF-related contamination.'"  Id. at *3.  Despite that disclaimer, 3M attempted to remove the non-AFFF case.  As here, 3M relied on (1) a purported intention to raise a federal-contractor defense related to the production of MilSpec AFFF, and (2) an assertion that MilSpec contamination might be "commingled" with other PFAS contamination.  See id. at *3.  Adopting the reasoning of the New Hampshire court, the district court in Maine remanded the statewide PFAS case, because AFFF was not at issue there.  "[T]he State's disclaimer" of AFFF relief, the court emphasized, "is express, unambiguous, and plain, and . . . fits within the category of express disclaimers courts have found effective to justify a remand order."  Id. at *10.

Last, although not in the context of a Motion to Remand, the JPML recently rejected 3M's arguments that there has been commingling of PFAS contamination from AFFF and non-AFFF sources in the State of Maryland that warranted transfer to the MDL.  See Order Denying Transfer at 3, MDL No. 2873 (J.P.M.L. Oct. 4, 2023), ECF 2129.  Evidence of the mere potential for commingling is insufficient to warrant transfer of an otherwise non-AFFF complaint.

In its Notice of Removal, 3M repeatedly references overlap between the State's claims regarding contaminated drinking water and other South Carolina cases within the MDL which allege AFFF contamination of drinking water.  See Notice of Removal, ¶ 29.  In doing so, 3M asks the Court to look beyond South Carolina's Complaint and consider other complaints to find federal

jurisdiction.

It is significant that the order denying transfer to the MDL for the State of Maryland's non-AFFF case specifically addresses, and rejects, this assertion within an almost identical context. The JPML points out that Maryland's Complaint does not discuss any individual contamination site which might lead to an assertion of overlapping contamination. Instead, Maryland cites investigations to establish PFAS contamination as widespread and impacting drinking water sources. See Order Denying Transfer at 3, MDL No. 2873 (J.P.M.L. Oct. 4, 2023), ECF 2129. The State of South Carolina's Complaint, similarly, only discusses drinking water contamination within such a context. In fact, the Complaint specifically excludes areas where there might be overlap – such as airports, military bases, and certain industrial locations. See Compl. ¶ 20. As the JPML put it – "[n]othing in plaintiff's complaint clearly incorporates the contamination sites identified." Id. "3M's arguments that there has been commingling of PFAS contamination from AFFF and non-AFFF sources are, ultimately, too speculative." Id. In fact, the damages sought by the State are totally separate from the damages sought in other South Carolina litigation.

Though the New Hampshire and Maine decisions pre-dated 3M's Notice of Removal here, 3M never mentions its attempts to remove these cases. Nor does 3M make any attempt to distinguish the district court decisions that resulted. Instead, 3M's Notice of Removal relies almost exclusively on the Western District of Michigan's decision in Nessel v. Chemguard, Inc., No. 1:20-CV-1080, 2021 WL 744683 (W.D. Mich. Jan. 6, 2021) (discussed supra section III.1.). There, defendants removed to federal court a case initiated by the State of Michigan that purported to seek damages only for "commercial" (i.e., non MilSpec) AFFF. See id. at *1. Defendants – who were manufacturers of MilSpec AFFF – "argue[d] that it will be impossible to determine which of Plaintiffs' injuries were caused by Commercial AFFF and which caused by MilSpec AFFF."

Id. at *1.  The defendants thus removed the case pursuant to a purported federal contractor defense.

Id.  The district court declined to remand the case to state court, holding that because it was unclear "whether the injuries from MilSpec and Commercial AFFF can be distinguished . . . [i]t is entirely possible that Plaintiffs' injuries occurred from actions taken while Defendants were acting under color of federal office: namely, MilSpec AFFF."  Id. at *3.  But the Nessel Court's decision not to remand is a clear outlier.  As an initial matter, the court in Nessel never engaged with the line of cases providing that a defendant cannot assert federal-officer removal where (as here) a plaintiff has specifically limited its claims to injuries from products not made at the direction of a federal officer.  Nor did Nessel address the fact – highlighted in the New Hampshire case – that the limited scope of the Commercial AFFF case meant that defendants could not be held liable for MilSpec AFFF, "regardless of whether" it was "supplied under federal authority."  New Hampshire, 2023 WL 2691376, at *9.  For these and other reasons, subsequent cases have expressly disagreed with the reasoning in Nessel.  See id. (explaining why "the court does not find the reasoning of Nessel persuasive"); Maine, 2023 WL 4758816 at *10 (explaining why "the Court concludes that New Hampshire is more persuasive" than Nessel).

Nessel is plainly distinguishable from South Carolina's Complaint.  Both Michigan complaints focused on AFFF – one was about military AFFF and the other about commercial AFFF.  Here, by contrast, South Carolina has expressly disclaimed relief for any AFFF-related contamination.  That distinction is important, as the Nessel court expressed concern that it would be difficult to distinguish between the "two types of AFFF," which "contain some of the same PFAS compounds."  Nessel, 2021 WL 744683, at *3.  Those concerns are not relevant here, where the State has unambiguously disclaimed all AFFF related claims.  Nessel does not undermine the conclusion that a case cannot have a "nexus" to federal authority if the only conduct even arguably

connected to federal authority is expressly excluded from the case.

## IV.    Conclusion

Defendants have no objectively reasonable basis for removal. The action involves matters that are important to the State of South Carolina to be determined pursuant to a well pled Complaint that is confined to causes of action arising under the law of South Carolina.  For the reasons stated more fully herein, this Court should remand this action to the Richland County Court of Common pleas.

Respectfully submitted,

s/Michael D. Wright

ALAN M. WILSON, Fed. ID# 10457
Attorney General of South Carolina
W. JEFFREY YOUNG, Fed ID# 6122
Chief Deputy Attorney General
C. HAVIRD JONES, JR., Fed. ID# 2227
Senior Assistant Deputy Attorney General
JARED Q. LIBET, Fed. ID# 9882
Assistant Deputy Attorney General
KRISTIN M. SIMONS, Fed. ID# 10167
Senior Assistant Attorney General
DANIELLE A. ROBERTSON, Fed. ID# 14007
Assistant Attorney General
**OFFICE OF THE ATTORNEY GENERAL OF SOUTH CAROLINA**
P.O. Box 11549
Columbia, South Carolina 29211
(803) 734-8044
SJones@scag.gov
KSimons@scag.gov
DaniRobertson@scag.gov

Vincent A. Sheheen, Fed. ID# 7016
Michael D. Wright, Fed. ID# 11452
**SAVAGE ROYALL & SHEHEEN, LLP**
P.O. Drawer 10

1111 Church Street
Camden, South Carolina 29020
(803) 432-4391
VSheheen@thesavagefirm.com


A. Gibson Solomons, III, Fed. ID# 7769
**SPEIGHTS & SOLOMONS, LLC**
P.O. Box 685
100 Oak Street, East
Hampton, South Carolina 29924
(803) 943-4444 (Tel); (803) 943-4599 (Fax)
GSolomons@speightsandsolomons.com

Jonathan M. Robinson, Fed. ID# 7755
Austin T. Reed, Fed. ID# 13405
Frederick N. Hanna, Jr., Fed ID# 13826
**SMITH ROBINSON HOLLER DUBOSE &
MORGAN, LLC**
2530 Devine Street
Columbia, South Carolina 29205
803-254-5445 (Tel)
803-254-5007 (Fax)
Jon@smithrobinsonlaw.com


Pursuant to CMO 2A, filed with the Approval of,


s/Michael A. London
Douglas and London PC
59 Maiden Lane, 6th Floor
New York, NY 10038
Phone: 212-566-7500
mlondon@douglasandlondon.com

Plaintiff's Co-Lead Counsel

December 19, 2023

## CERTIFICATE OF SERVICE

I hereby certify that on this date, I caused the foregoing to be filed with the Clerk of this Court via CM/ECF system, which will send a Notice of Electronic Filing to all counsel of record. I also served copies of the foregoing upon the following parties by Electronic Mail as indicated below:


Brian C. Duffy, Esq.
Duffy & Young, LLC
96 Broad Street
Charleston, SC 29401
bduffy@duffyandyoung.com

Daniel L. Ring, Esq.
Mayer Brown LLP
71 S. Wacker Drive
Chicago, IL 60606
dring@mayerbrown.com
*Counsel for Defendant 3M Company*

Katherin L.I. Hacker, Esq.
Barlit Beck LLP
1801 Wewatta St., 12th Floor
Denver, CO 80202
Kat.hacker@barlitbeck.com
*Counsel for Defendant Corteva, Inc. and DuPont De Nemours, Inc.*

David R. Erickson, Esq.
Shook, Hardy & Bacon LLP
2555 Grand Boulevard
Kansas City, MO 64108
derickson@shb.com
*Counsel for Defendant EIDP, Inc. (f/k/a E.I. DuPont De Nemours and Company), The Chemours Company, and The Chemours Company FC, LLC*


/s/ Michael D. Wright
Savage, Royall, & Sheheen, LLP

December 19, 2023