

**William J. Jackson**

Kelley Drye & Warren LLP
515 Post Oak Boulevard
Suite 900
Houston, TX 77027

Tel: (713) 355-5050
Fax: (713) 355-5001
BJackson@KelleyDrye.com

December 28, 2023

**VIA ECF**

Hon. Richard M. Gergel
U.S. District Court for the District of South Carolina
J. Waties Waring Judicial Center
83 Meeting Street
Charleston, South Carolina 29401

Re:     *In re AFFF Products Liability Litigation*, MDL No. 2:18-mn-2873-RMG
          Proposed Sovereign Case Management Order

Dear Judge Gergel:

    The Sovereign Committee writes to update the Court on the status of a potential Sovereign bellwether process and proposed Sovereign Case Management Order.[1] As detailed below, the Committee requests this issue be addressed at a status conference to be set on February 2, 2024, or sooner if the Court prefers.

    Since the formation of this MDL, Sovereign Committee members have brought suit to represent the public interests of two-thirds of the United States population. Sovereigns play a unique role in protecting their residents, environment, and natural resources from PFAS contamination and in ensuring corporate accountability to address that contamination. For example, Committee members have exercised their broad authority to investigate and address PFAS contamination at numerous AFFF sites and bring statutory and common law claims in their sovereign, proprietary, and *parens patriae* capacities and as trustees of state natural resources. Resolution of Sovereign cases would promote the just and efficient operation of this MDL by determining significant legal and factual disputes that can have an impact on remaining member cases.

---

[1] The Sovereign Committee is a subcommittee of the Plaintiffs' Executive Committee ("PEC") and is comprised of 28 U.S. States and Territories (the "Sovereign Committee" or the "Committee") that have filed cases that have been removed to, transferred to, or otherwise filed in this MDL, including: Alaska, Arizona, California, the Commonwealth of the Northern Mariana Islands, Colorado, the District of Columbia, Guam, Kentucky, Maine, Maryland, Massachusetts, Mississippi, New Hampshire, New Jersey, New Mexico, New York, North Carolina, Ohio, Oregon, Pennsylvania, Puerto Rico, Rhode Island, South Carolina, Tennessee, Texas, Vermont, Washington, and Wisconsin. Four additional Sovereigns have claims pending in the MDL: Arkansas, Florida, Illinois, and Michigan.

The Sovereign Committee has achieved consensus for how to advance their interests in bringing this MDL to a resolution of their cases, and requests the Court initiate a Sovereign bellwether process and resolution track. The Sovereign Committee is pleased to inform the Court that Committee members have agreed to take extraordinary actions, including certain members waiving their right to return home for trial under *Lexecon v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26 (1998). Advancing a Sovereign bellwether process would provide a clear framework for Sovereign cases in this MDL.

For the last five years, this Court has addressed significant common legal issues by establishing bellwether tracks for other plaintiff groups, and most notably the water provider group, whose advancement resulted in the recent Public Water System settlements reached with major Defendants. The Committee has waited patiently until these foundational issues were addressed by the Court and has attempted to find Sovereigns that would be willing to take the step of waiving *Lexecon* and volunteering to be a bellwether. Now, three states have agreed to take this step—Massachusetts, New Hampshire, and New Jersey—and the Committee respectfully submits that it is time to establish a path toward resolution of issues common to the Sovereigns, including but not limited to a Sovereign bellwether track.

Advancing issues common to Sovereigns means that the Plaintiff group with the most expansive claims and rights could have matters resolved that would allow for a swifter resolution of this entire MDL. The Court, the PEC, and the Sovereign Committee have been consistently aligned in that goal—one of foundational importance to the MDL process and the civil judiciary. *See* Fed. R. Civ. P. 1 (the purpose of the Federal Rules is "to secure the just, speedy, and inexpensive determination of every action and proceeding."); *see also In re Infants Born Opioid-Dependent Prods. Liab. Litig.*, 350 F. Supp. 3d 1377, 1380 (J.P.M.L. 2018) (transferee courts are afforded broad discretion to manage MDL dockets as they see fit) (relying on *In re: Oil Spill by the Oil Rig Deepwater Horizon in the Gulf of Mexico, on Apr. 20, 2010 (No. II)*, 961 F. Supp. 2d 1355, 1356–57 (J.P.M.L. 2013).

Bellwether tracks ordered for other plaintiff groups to date "represent a small minority" of the pending cases at issue in this MDL, and this Court has moved these groups into productive bellwether processes, or at a minimum, has ordered meaningful conferral and action items for the parties. *See, e.g.*, ECF No. 4149 at 1 (Dec. 5, 2023 Order). Among other things, Sovereign claims are pleaded to address the contamination left unaddressed by pending public water supplier settlements: namely, the protection of public health for the millions of Americans that drink PFAS from private water wells and the thousands of small systems and state-owned systems that were excluded from the water provider settlements. Additionally, the Sovereigns are the trustees for the natural resources and the chief environmental enforcement agencies in their respective states and territories. The Sovereigns have established important drinking water and remediation standards, are expending substantial monies to remediate PFAS in the environment and restore waters and other State natural resources with PFAS contamination, and are asserting claims against certain Defendants for misleading regulators and consumers regarding the true risks of PFAS to human health and environmental receptors.

For nearly three months, the Sovereign Committee has attempted to confer with Defendants about its proposed process, but Defendants will not engage in **any** effort to move these cases forward. As such, the Sovereign Committee requests a status conference to discuss with the Court the adoption

of a proposed Sovereign Case Management Order ("CMO"). *See* Exhibit 1 (Proposed Sovereign CMO).[2] In addition or alternatively, the Sovereign Committee welcomes working with a Special Master or Magistrate in the conferral process to ease any burdens on this Court.

### A. Proposed Sovereign CMO and Conferral Background

The Proposed Sovereign CMO provides two tracks for Sovereign cases to proceed: (1) a Bellwether Track; and (2) a Resolution Track. Both tracks will result in forward motion of Sovereign issues. *See* Ex. 1. Consistent with previous bellwether CMOs issued by this Court, the Proposed Sovereign CMO also outlines interim dates by which the parties were to confer, make bellwether proposals, and proceed to finalizing a bellwether schedule.[3] That was the only commitment asked of Defendants through this initial CMO. Defendants refused to agree to this—or any—preliminary process.

In October 2023, the Sovereign Committee sent the Proposed Sovereign CMO to Defendants' Co-Lead Counsel, after Committee representatives conferred with and received approval from Plaintiffs' Co-Lead Counsel. Ex. 2 at 7–8 (B. Jackson Oct. 16 Email). Almost two weeks later and following the Committee's additional request for response, Defendants advised Sovereign Committee representatives that they were available to confer. Ex. 2 at 6–7 (L. Montgomery Oct. 27 Email).

On November 3, 2023, Defense Co-Lead representatives and Sovereign Committee representatives, including PEC members and a Plaintiff Co-Lead representative, engaged in an initial conferral regarding the Proposed Sovereign CMO.

During the November 3 discussion with Defendants, Sovereign Committee representatives advised Defendants of the incredible import of a State even considering a *Lexecon* waiver. And, at that time, the Committee shared that several jurisdictions were securing approval for such waiver. That three States—all of which have had cases pending in the MDL for years—are willing to try their cases before this Court and not return to their home jurisdictions tells the Court just how significant this request is to the Sovereigns. The Committee also raised with Defendants:

- The Committee's willingness to consider using a special master or mediator to take some of the load off the Court in overseeing a full Sovereign bellwether process;

- That many State actions are civil law enforcement cases and/or *parens patriae* cases that advance substantial interests among States and that are distinct from personal injury or water provider cases;

---

[2] The Sovereign Committee has conferred with Plaintiffs' Co-Lead Counsel prior to filing this letter, and Plaintiffs' Co-Lead Counsel consents to this submission.

[3] Due to the delay in Defendants' response to the Sovereigns' request to confer, all of these proposed dates have now passed. The Committee includes the initial CMO proposal to provide further context for the Court and remains willing to reach agreement on new dates in a similar structure of the proposed CMO.

- That the principal aim in selecting a bellwether case is to ensure, as the Court has often highlighted, that the selected case is representative of similar actions; and

- Whether Defendants would support a bellwether process that involved sending cases back to their home districts, which would likewise alleviate some of the Court's burden in overseeing all aspects of the Sovereign bellwethers and would not require a *Lexecon* waiver.

Defendants indicated that they would need to discuss the proposed CMO further among themselves, but they would likely oppose it. Specifically, they expressed concern that (1) the Sovereigns could attempt to limit Defendants' role in selecting a bellwether by offering a limited number of states willing to waive *Lexecon*; and (2) their bandwidth to address sovereign claims on any discovery track. Regarding Defendants' first concern, the Sovereign's proposed CMO is the exact same process that was undertaken for water providers and is underway for personal injury plaintiffs. In all instances, the pool of potential bellwethers has been restricted to plaintiffs willing to waive *Lexecon*. Ultimately, Defendants agreed to discuss amongst themselves and respond to the Committee.

Almost a month passed without such a response, and following several communications requesting a response, Defendants finally expressed their unwillingness to discuss a framework for commencing a Sovereign track because—in short—this is a large MDL, and they are working on other aspects of the case. *See* Ex. 2 at 1 (L. Montgomery Nov. 29 Email).

B. **Advancing Sovereign Issues**

The Proposed Sovereign CMO allows for at least two tracks that would significantly advance this MDL. The Bellwether Track in particular would allow for representative claims and issues to be subject to discovery and adjudication. In all prior bellwether processes, the Court has instructed the parties to find representative plaintiffs who are willing to waive *Lexecon* and to confer about a bellwether process for those plaintiffs. Sovereigns have committed and already attempted to do both.

For example, 30 of the 32 Sovereigns have asserted representative claims seeking declaratory relief or abatement of PFAS from drinking water.[4] Adjudication of just this type of claim would promote efficiency for a majority of the Sovereigns and the public health of 77% of the United States populations they are charged with protecting.[5] Indeed, as to these claims, much of the relevant record related to Defendants has likely already been prepared through the common discovery and water provider bellwether process.

Similarly, almost one-third of the Sovereigns have asserted consumer protection claims under their respective state statutes. These claims (a) allow for judicial resolution of wide-ranging relief

---

[4] Sovereigns' drinking water claims are generally distinct from those that are asserted by public water providers in their States. While States can aim to provide support through abatement or other funds to public water providers through States' own claims, Sovereigns also seek to recover for tens of thousands of state-owned water systems and for private well owners in their jurisdictions.

[5] States and U.S. Territories that have pending cases in these MDL represent 77% of the estimated 2022 United States population, excluding Guam and CNMI. *See* https://www2.census.gov/programs-surveys/popest/tables/2020-2022/state/totals/NST-EST2022-POP.xlsx.

including injunctions, civil penalties, and restitution; and (b) can be resolved by a court rather than to a jury in most of these jurisdictions. The majority of Sovereigns have also alleged products liability, fraudulent transfer, and/or negligence claims.

These are merely examples that illustrate the representativeness that this Court has required for each bellwether process it has ordered. As this Court has oft repeated, that ensuring an ultimate bellwether is representative of similar cases is the inquiry of import in this process, not the number of bellwether plaintiffs who are willing to enter a bellwether pool. *See, e.g.*, Oct. 31, 2023 Hrg. Tr. at 14 ("[I]t's very important when picking bellwethers that we pick cases that are truly representative so that a result means something . . . it's very important that we pick cases that are not outliers, that they truly are representative so they provide all of us some guidance as to both liability and potential damages."). Any common issues that are relevant to a particular Sovereign bellwether—with agreement—could advance other Sovereign cases through offensive non-mutual collateral estoppel, traditional estoppel, and other potential issue preclusion. And the adjudication of matters that can advance resolution of a broader set of issues or cases is the entire purpose of a bellwether process. The Sovereign Committee has proposed a process that comports with these principles.

Defendants have failed to identify a compelling reason for not moving forward with a Sovereign bellwether track. The Committee respects the amount of work that all parties have undertaken since the MDL's inception and the tasks the parties are currently pursuing to achieve progress for other case types. Indeed, the majority of the Sovereigns or their counsel, including PEC members and Plaintiffs' Co-Lead Counsel, are involved in the exact same activities that Defendants point to as reasons why they cannot consider a Sovereign CMO at this time. This work and all aspects of the MDL are important; the Sovereigns' claims and right to speedy resolution are no less significant. Sovereign issues should not continue to be shelved simply on the basis that more hard work will be required.

The addition of a Sovereign track to this MDL would not overburden the parties or the Court. The Sovereigns can commit to a track that will be adequately spaced to avoid significant overlap with the existing telomer water provider and personal injury tracks in fact or expert discovery or dispositive briefing time frames. Moreover, the majority of the discovery burden in a Sovereign track is likely to be centered on the bellwether state(s), given the expected need for limited additional discovery from Defendants, and the Sovereigns are open to using a special master or mediator to reach agreement on a CMO and/or to resolve discovery disputes and reduce that burden on the Court.

The Sovereign Committee respectfully requests the Court consider a Sovereign track and also notes that it remains willing to reach agreement with Defendants on a bellwether process and a dispute resolution track. The Committee is available to discuss with the Court such processes and other possibilities to advance Sovereign issues.[6]

---

[6] This includes but is not limited to any conferral requirements or deadlines, Sovereign education days the Court may entertain, provisions of additional information to the Court regarding the Sovereign claims, and plans to select and schedule bellwether tracks, remand motions, or dispositive motions. *See* ECF No. 4149 (Dec. 5, 2023, Order).

KELLEY DRYE & WARREN LLP                                                                                                   5

Respectfully submitted,

William J. Jackson
Sovereign Committee Chair

cc: All Counsel of Record (by ECF)