**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**

| | | |
|---|---|---|
| IN RE: AQUEOUS FILM-FORMING FOAMS PRODUCTS LIABILITY LITIGATION | ) ) | Master Docket No.: 2:18-mn-2873-RMG |

| | | |
|---|---|---|
| CITY OF CAMDEN, et al., | ) ) ) | Civil Action No.: 2:23-cv-03147-RMG |
| *Plaintiffs,* | ) ) | |
| *-vs-* | ) ) | |
| 3M COMPANY, | ) ) | |
| *Defendant.* | ) ) | |

**CLASS COUNSEL'S SUR-REPLY TO CITY OF DUPONT AND CITY OF VANCOUVER'S REPLY IN SUPPORT OF OBJECTIONS**

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ................................................................................................. 1

II.   ARGUMENT ...................................................................................................... 5

   A.     MARTEN LAW MAKES TWO IMPROPER AND SPECIOUS THRESHOLD
ARGUMENTS IN ITS REPLY ..................................................................................... 5

      1.     Marten Law's Specious Argument that the Settlement Lacks Substantial
Support Among Class Members. ............................................................................. 5

      2.     Marten Law's Argument That It Did Not Waive Any Objections. ...................... 8

            a.     Marten Law cannot properly renounce representations in open court
........................................................................................................................... 8

            b.     Marten Law's continued pursuit of Objections that if sustained would
be fatal to class certification shows that the Objections are lawyer-
driven and contrary to the expectations and interests of the two
objectors ........................................................................................................... 10

   B.     OBJECTORS' OBJECTIONS SHOULD BE OVERRULED ................................. 14

      1.     Objectors' Newly Raised Argument Concerning Notice to Opt Outs is Both
Procedurally Improper and Moot. ........................................................................ 14

      2.     The Release is Not Overbroad. ............................................................................ 17

            a.     The Release at issue is narrower than those approved by the Fourth
Circuit ............................................................................................................... 17

            b.     The Release expressly exclude wastewater and stormwater claims ... 19

            c.     The Release appropriately resolves claims for all PFAS compounds. 21

            d.     The Release appropriately includes contribution claims ................. 22

      3.     The Claims-Over Provision is Not Unreasonable. ............................................ 22

III.   CONCLUSION ................................................................................................... 24

# **TABLE OF AUTHORITIES**

## **Cases**

*1988 Trust for Allen Children Dated 8/8/88 v. Banner Life Ins. Co.*, 28 F.4th 527 (4th Cir. 2022) ...................................................................................................................... 6

*Abramson v. Pennwood Inv. Corp.*, 392 F.2d 759 (2d Cir. 1968) . .............................................. 21

*Allen v. Zurich Ins. Co.,* 667 F.2d 1162 (4th Cir. 1982) .................................................................. 9

*Berry v. Schulman*, 807 F.3d 600 (4th Cir. 2015) ................................................................... 17, 18

*Binotti v. Duke Univ.,* No. 1:20-CV-470, 2021 WL 5363299 (M.D.N.C. Aug. 30, 2021) ............ 7

*Caudle v. Sprint/United Management Co.*, No. C 17-06874, 2019 WL 2716291 (N.D. Cal. 2019) ...................................................................................................................... 22

*Cavallo v. Star Enter.*, 100 F.3d 1150 (4th Cir. 1996)). ................................................................ 16

*Clawson v. FedEx Ground Package Sys., Inc.*, 451 F. Supp. 2d 731(D. Md. 2006) ................... 15

*Doe v. DéJà Vu Servs., Inc.*, 925 F.3d 886 (6th Cir. 2019) ......................................................... 20

*Faught v. American Home Shield Corp.*, 2010 WL 10959223 (N.D. Ala. 2010) ................... 20-21

*Flinn v. FMC Corp.*, 528 F.2d 1169 (4th Cir. 1975) ...................................................................... 7

*Green v. Ameritrade, Inc.,* 279 F.3d 590 (8th Cir. 2002) .............................................................. 9

*Grimes v. Vitalink Commc'ns Corp.*, 17 F.3d 1553 (3d Cir. 1994) .............................................. 21

*Haney v. Genworth Life Ins. Co.*, No. 3:22-cv-55, 2023 U.S. Dist. LEXIS 15589 (E.D. Va. Jan. 30, 2023) ........................................................................................................................ 6

*In re Capital One Consumer Data Security Breach Litig.,* MDL No. 19-md-2915, 2022 WL 18107626 (E.D. Va. Sept. 13, 2022) ............................................................................ 7

*In re Diet Drugs*, 2000 WL 1222042 (E.D. Pa. 2000) .................................................................. 22

*In re Literary Works in Electronic Databases Copyright Litig.*, 654 F.3d 242 (2d Cir. 2011). ... 18

*In re Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg. Sales Pracs.,* No. 115MD2627AJTTRJ, 2018 WL 11203065 (E.D. Va. Oct. 9, 2018) ......................... 7

*In re MI Windows and Doors, Inc., Prods. Liab. Litig.*, 860 F.3d 218 (4th Cir. 2017). ............... 20

*In re Nat. Football League Players' Concussion Injury Litig.*, 307 F.R.D. 351 (E.D. Pa. 2015). 18

*In re Prudential Ins. Co. of Am. Sales Practice Litig.*, 261 F.3d 355(3d Cir. 2001). ........... 17, 20

*In re U.S. Oil and Gas Litig.*, 967 F.2d 489 (C.A.11 (Fla.) 1992)................................................. 22

*In re Wachovia Corp. Erisa Litig.,* No. 2-cv-03707, 2011 U.S. Dist. LEXIS 123109 (W.D.N.C. Oct. 24, 2011) ........................................................................................................................ 6

*Kay Co. v. Equitable Production Co.,* 749 F. Supp. 2d 455 (S.D.W. Va. 2010)........................... 6

*Koppers Performance Chemicals, Inc. v. Travelers Indem. Co.*, No. 2:20-CV-2017-RMG, 2022 WL 1138103 (D.S.C. Apr. 18, 2022)....................................................................................... 15

*McAdams v. Robinson*, 26 F.4th 149 (4th Cir. 2022) ....................................................... 17, 19-21

*Moseley v. Branker*, 550 F.3d 312 (4th Cir. 2008) ...................................................................... 16

*Olden v. Gardner*, 294 Fed. Appx. 210, 2008 WL 4297245 (6th Cir. 2008) ..............17-18, 20-21

*Sharp Farms v. Speaks*, 917 F.3d 276 (4th Cir. 2019)....................................................... 17, 19-21

*Sullivan v. DB Investments, Inc.*, 667 F.3d 273 (3d Cir. 2011) .................................................... 20

*TBK Partners, Ltd. v. W. Union Corp.*, 675 F.2d 456 (2d Cir. 1982)........................................... 17

*U.S. Fidelity & Guar. Co. v. Patriot's Point Development Authority*, 788 F. Supp. 880 (D.S.C. 1992) .................................................................................................................................... 22

*United States v. Al-Hamdi*, 356 F.3d 564 (4th Cir. 2004) ........................................................... 16

*United States v. Shaffer Equip. Co.*, 11 F.3d 450 (4th Cir. 1993) ................................................. 9

*United States v. Williams*, 445 F.3d 724 (4th Cir. 2006). ............................................................ 15

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96 (2d Cir. 2005) ....................................... 20

**Rules**

Fed. R. Civ. P. 23(e) ............................................................................................................ 2, 23

## I.    INTRODUCTION

Representing only two objectors, Marten Law seeks to hold up a historic settlement—potentially for years—based on a series of meritless Objections. That delay would inevitably impact the ability of Public Water Systems ("PWS") to remediate a public health problem and thus potentially impact the health of many millions of people around the nation. Ironically, Marten Law touts on its website that it uses its PFAS expertise to "protect communities."[1] It is difficult to understand how a strategy to delay a multi-billion-dollar settlement that would deliver billions of dollars to PWS for years on behalf of two objectors—out of a class of 12,000—could serve to "protect communities."

In its latest filing, which was not authorized by the Court's scheduling order, Marten Law offers mainly a rehash of the same meritless arguments it has already made. The arguments it makes for the first time are both untimely and specious. Plaintiffs respond to all of these arguments below. But first, Plaintiffs address the two most egregiously inaccurate points raised by Marten Law on behalf of City of DuPont and City of Vancouver.

First, Marten Law makes the astonishing argument that even though virtually no Settlement Class Members have objected to the settlement, and only a small number have opted out, these facts  are a "thin reed" for concluding that the class overwhelmingly favors the settlement.[2] However, the case law, which Class Counsel cited in their Memorandum of Law in Support of Class Counsel's Motion for Final Approval of Class Settlement, and for Final Certification of the Settlement Class ("Mot. for Final App."),[3] is to the contrary. Under settled law, a low number of

---

[1] https://www.martenlaw.com/services/pfas-and-emerging-contaminants (last accessed January 23, 2024).
[2] Marten Law Reply in Support of Objections ("Reply")[ECF No. 4346], at 2 n.2.
[3] Mot. for Final App. [ECF No. 4273], at 64-68.

Objections and opt outs overwhelmingly demonstrates that the vast majority of Settlement Class Members approve of the settlement.

Second, Marten Law was absolutely clear in open court that it was *not* attempting to invalidate the PFAS settlements on class certification grounds, an argument that would make it impossible to reach *any* classwide settlement. Instead, it claimed to be only arguing for surgical improvements to the settlement per Rule 23(e). Now, however, without the pressure of oral argument and pointed questions from the Court, Marten Law has done a complete about-face. It is now reasserting *all* of its objections.[4] In other words, Marten Law is once again claiming that no classwide settlement is now —or could ever be—viable.[5] It is impossible to believe that the City of DuPont and City of Vancouver want this Court to hold individual trials of their claims, in queue with thousands of other individual trials of every other PWS in the nation. This raises the concerning question whether these Objections reflect the views of the two objectors themselves or instead are entirely lawyer-driven.[6] As counsel noted at the DuPont fairness hearing, individual

---

[4] Reply, at 2 n.1.

[5] Stated differently, the Marten Law Objections reiterated here in the 3M Settlement context speak directly to the fundamental elements required for the certification of *any* class under Rule 23 (*see e.g.*, City of Vancouver Objection ("Vancouver Obj.")[ECF No. 3961] at 20 (arguing there are "too diffuse an array of individual questions of law and fact, and defenses for common questions to predominate")). If true, and the Objection were sustained, such an Objection would be fatal to final approval. Thus, Marten Law has flip-flopped from their representation in Court during the December 14, 2023, DuPont Fairness Hearing, and is now firmly opposing final approval of the 3M Settlement without offering even the slightest basis for such an egregious reversal.

[6] Moreover, and also underscoring the point of the Objections being lawyer-driven, the City of DuPont has already obtained funding to remediate and treat its PFAS problem. *See* The Suburban Times, *DuPont Water Quality/PFAS Update*, May 20, 2021, *available at:* https://thesubtimes.com/2021/05/20/dupont-water-quality-pfas-update/. Therefore, it has no credible or compelling reason whatsoever to object in any way, shape or form to this historic settlement and arguably barely standing or interest, other than prompting by their lawyers for their lawyers' own purposes. There is simply no plausible reason for the City of DuPont to stand in the way of a historical settlement to which virtually no one else has similarly objected-a settlement which would benefit many millions. This leaves the lawyers as the only possible and obvious driving force behind their Objections.

trials of potentially 16,000 class members could take 16,000 years before a full resolution.[7] Given this, it is difficult to imagine that the City of DuPont and the City of Vancouver want to make it impossible for this Court to ever approve a classwide settlement.[8]

Indeed, as discussed below, publicly available documents for the City of DuPont, recently obtained by Class Counsel, show just the opposite. In particular, on November 28, 2023, the City of DuPont adopted two formal resolutions, published on the City of DuPont's website, which accept both the DuPont and 3M Settlements.[9] Although the PowerPoint that accompanies the resolutions acknowledges that counsel would maintain certain Objections in the hopes of improving, if possible, some of the terms of the settlements, the PowerPoint makes clear that the City of DuPont is clearly unaware that Marten Law has interposed and reasserted in its Reply class certification Objections, which, if sustained, would be fatal to class certification and thus the settlements themselves. These Objections to oppose classwide settlement, rather than interpose a few Objections to allegedly improve the settlement, are in direct conflict with the City of DuPont's

---

[7] Dec. 14, 2023, Fairness H'ring Tr., at 58:18-25.

[8] Indeed, Marten Law has other clients who opted out, but these two objectors chose not to do so. It is difficult to imagine that they chose not to opt out so they could argue that no class could *ever* be certified. And if Marten Law—after its road show campaign to recruit clients—has other clients who have chosen not to opt out *or* object to the settlement, the conflict would be even more egregious. Certainly, any such individuals would not want to destroy any possibility of a classwide settlement. Indeed, the fact that Marten Law's clients have taken such disparate positions raises a serious concern whether Marten Law has a conflict of interest in simultaneously representing objectors with such clear differences in their desired outcome.

[9] Both of these resolutions, (1) A Resolution of the City of DuPont, Washington, Adopting and Accepting the Settlement Agreement Between the Public Water Systems and the 3M Company ("3M Resolution); and (2) A Resolution of the City of DuPont, Washington, Adopting and Accepting the Settlement Agreement Between the Public Water Systems and the Chemours Company et al. ("Chemours Resolution")(collectively "Resolutions"), along with a supporting PowerPoint, are available on the City of DuPont's website at: https://dupont.civicweb.net/document/139471/ (last accessed January 23, 2024).

memorialized City Council Meeting, and its formal approval and acceptance of both the 3M and DuPont settlements.

Moreover, the Resolutions "…conclude[]…the funds received from this offer of settlement will substantially provide for the treatment of the City's water supply both now and in the future…that accepting settlement funds *now* will best address the immediate need for remedying the issue of water utility contamination all of which is the best interest of the health, safety and welfare of citizens…"[10] This conclusion is clearly at odds with Marten Law's Objection as to adequacy of the settlements.[11]

As discussed below, these and other discrepancies between the City of DuPont's public statements and the Marten Law firm's representation to the Court raise serious questions of the merits and/or validity of all of the Objections.[12]

It is clear that the City of DuPont fully contemplates and desires a classwide settlement "now," and appears to be unaware that Marten Law is pursing Objections that, if sustained, run the risk of destroying the 3M settlement, and, again, are in direct conflict with the directives and Resolutions passed by the City of DuPont to accept the settlements.

Again, the City of DuPont's stated goals and formally adopted Resolutions are clearly at odds with positions being advanced by Marten Law. Obviously, there are grave concerns about

---

[10] 3M Resolution, at 106; *see also*, Chemours Resolution, at 124.

[11] Vancouver Obj. [ECF No. 3961], at 25 (stating that the settlement funds are insufficient to redress 3M's harm to water providers); *see also,* City of DuPont Objection ("DuPont Obj.") [ECF No. 3966], at 17 (stating same).

[12] In fact, in the accompanying PowerPoint presented to the City Council during the November 28, 2023 Council Meeting, it was determined that "currently the city is $400,000 dollars short of the needed funds to complete the filtration system….." PowerPoint, at 110. While simultaneously estimating that under the 3M settlement alone they would receive approximately $3.3 million or approximately nine times the amount they were in need of. *Id*. at 117. Clearly, more than an adequate recovery therefore. Indeed, also undermining the claim asserted by the Marten Law that the settlement amount is inadequate.

the City of Vancouver too. As explained below, there are serious concerns if Marten Law is advancing Objections that are actually contrary to the interests of its clients, the purported objectors.

Notwithstanding, it is also important to point out that the law is clear that attorneys cannot make representations to the Court, only to turn around and retract them when it is convenient to do so, which Martin law has now done in its Reply.[13]

This Court should reject Marten Law's baseless Objections and approve the settlement as well as consider inquiry into the scope of the Objections the objectors authorized by convening a hearing at or in advance of the February 2, 2024, Fairness Hearing.

## II.    ARGUMENT

### A.    MARTEN LAW MAKES TWO IMPROPER AND SPECIOUS THRESHOLD ARGUMENTS IN ITS REPLY

#### 1.    Marten Law's Specious Argument that the Settlement Lacks Substantial Support Among Class Members.

The 3M Settlement includes approximately 12,000 Settlement Class Members. Following the opt-out period, only seven (7) Objections on behalf of nine (9) objectors remain, which represents significantly less than 1% of the Settlement Class. Yet, Marten Law makes the astonishing argument that **"Class Counsel's claim of broad support [for the settlement] relies on a thin reed and is likely inaccurate."[14]** This argument is all but frivolous, and it is difficult to imagine how it could even be made in good faith.

Initially, Marten Law argues that some of the attempted opt outs might be rejected, in which case the Objections originally asserted by those opt outs would still be live.[15] And it argues that

---

[13] *See* 7-10, *infra*.
[14] Reply, at 2 n.2 (emphasis added).
[15] *Id.* at 3 n.3.

the Court must consider the populations served by the objectors, not just sheer numbers.[16] But even assuming that some opt outs are rejected and that their Objections are revived, the numbers would still be a tiny fraction of the approximately 12,000 Settlement Class Members. And the total populations served by the objectors and opt outs would be only a tiny fraction of the populations represented by the roughly 12,000 Class Members who did not object or opt out. Marten Law cannot escape the fact that the number of Objections and opt outs is tiny, whether one looks at sheer numbers of class members or the populations served by them.

Thus, the only way Marten Law can even try to claim that there is *not* broad support for the settlement is to suggest that the silence of those who did not object is legally irrelevant and not probative. But Marten Law cannot plausibly advance such an argument.

Plaintiffs cited numerous cases in their Mot. for Final App. that unequivocally hold exactly the opposite. For instance:

- *1988 Trust for Allen Children Dated 8/8/88 v. Banner Life Ins. Co.*, 28 F.4th 527, 527 (4th Cir. 2022) (citations omitted).: "The district court … properly noted that the Allen Trust's concerns, however strongly held, were apparently not widespread. Indeed, the Allen Trust was the only class member to object to the settlement (although it did not opt out of the class)."

- *In re Wachovia Corp. Erisa Litig.,* No. 2-cv-03707, 2011 U.S. Dist. LEXIS 123109, at *20 (W.D.N.C. Oct. 24, 2011) (citations omitted): "The relatively few number of objections demonstrates the satisfaction of Class Members with the settlement result, as well as their implicit approval of its terms."

- *Kay Co. v. Equitable Production Co.,* 749 F. Supp. 2d 455, 465 (S.D.W. Va. 2010): "[T]he minute number of objections and exclusions among a large class, almost all of whom were individually notified, suggests that the class members are overwhelmingly pleased with the settlement result."

- *Haney v. Genworth Life Ins. Co.*, No. 3:22-cv-55, 2023 U.S. Dist. LEXIS 15589, at *19 (E.D. Va. Jan. 30, 2023): "The small number of objections teach that the settlement is viewed favorably by the Class. Accordingly, this factor weighs in favor of finding that the award of attorneys' fees is reasonable."

---

[16] *Id.* at 2 n.2.

- *In re Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg. Sales Pracs.,* No. 115MD2627AJTTRJ, 2018 WL 11203065, at *6 (E.D. Va. Oct. 9, 2018), *aff'd sub nom. In re: Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg., Sales Pracs. & Prod. Liab. Litig.,* 952 F.3d 471 (4th Cir. 2020): "[The] low opt-out and objection rates indicate widespread approval among the class . . . ."

Marten Law does not even acknowledge, let alone distinguish, these cases. Nor does it cite any case that even arguably supports its view that a small number of Objections and opt outs is a "thin reed" for claiming that the class broadly approves the settlement. In fact, the cases cited by Plaintiffs were just a small fraction of hundreds of cases making the same point. Others include:

- *In re Capital One Consumer Data Security Breach Litig.,* MDL No. 19-md-2915, 2022 WL 18107626 at *10 (E.D. Va. Sept. 13, 2022): "Class Counsel negotiated a multi-faceted settlement that was well received by the Class, as evidenced by the minimal objections."

- *Flinn v. FMC Corp.*, 528 F.2d 1169, 1173 (4th Cir. 1975): "The attitude of the members of the class, as expressed directly or by failure to object, after notice, to the settlement, is a proper consideration for the trial court . . . ."[17]

- *Binotti v. Duke Univ.,* No. 1:20-CV-470, 2021 WL 5363299, at *5 (M.D.N.C. Aug. 30, 2021) (citations omitted): "[O]ver 99% of Class Members have chosen to release their claims against Duke in exchange for relief under the Settlement. The small number of exclusion requests is a strong indication of widespread support for the Settlement and that the Settlement is fair, reasonable, and adequate."

Many, many other cases could be cited for the same proposition. And this authority applies *a fortiori* here, because the class members are sophisticated entities with large sums of money at stake. They clearly would have objected had they been unhappy with the settlement. Under settled law, the paucity of Objections and opt outs is proof positive that the class as a whole overwhelmingly approves of the settlement. It is the polar opposite of a "thin reed."

---

[17] *Flinn* was cited for other purposes in Class Counsel's Mot. for Final App.

### 2. Marten Law's Argument That It Did Not Waive Any Objections.

#### a. Marten Law cannot properly renounce its representations in open court.

At the December 14, 2023, fairness hearing on the DuPont settlement, Objectors' counsel was asked directly by the Court whether he was recommending that the Court reject the settlement. He responded: "*We are not, Your Honor*."[18] Yet, in their Reply, Objectors state that they "*reject* Class Counsel's claim that they have abandoned *any* objections or arguments . . . ."[19] This necessarily means that Objectors still intend to pursue their various Objections under Rule 23 to class certification, which include that: (1) common questions of law do not predominate across the class; and (2) profound conflicts exist between class members.[20]

These reasserted Objections, taken to their logical conclusion represent a clear challenge to the viability of classwide relief for the claims in this litigation. Importantly, both of Marten Law's objectors made essentially verbatim arguments in challenging both the DuPont and 3M settlements on class certification grounds. Included in all four Objections by the two objectors was a clear (and verbatim) assertion that in reality, no classwide settlement of this litigation is possible because there are "too diffuse an array of individual questions of law and fact, claims and defenses, for common questions to predominate."[21] Thus, despite its representations to the Court at the DuPont fairness hearing, Marten Law does indeed intend to argue that no class settlement is possible and that only thousands of individual trials can resolve the claims in this case.

---

[18] Dec. 14, 2023, H'ring Tr., at 89:20-90:5 (emphasis added).

[19] Reply, at 2 n. 1 (emphasis added).

[20] Vancouver Obj. [ECF No. 3961], at 20-25; *see also*, DuPont Obj. [ECF No. 3966], at 14-17.

[21] DuPont Obj. [ECF No. 3961], at 20; Vancouver Obj. [ECF No. 3966], at 14; City of DuPont Objection regarding DuPont Settlement [ECF No. 3968], at 13; City of Vancouver Objection regarding DuPont Settlement [ECF No. 3962], at 19.

To be sure, Marten Law's representation was made in the context of the DuPont Settlement, but as noted above, the exact same class certification Objections were lodged by these objectors with respect to the 3M Settlement.[22] If class certification is not possible for the DuPont Settlement, these same Objections dictate that class certification is also unavailable for the 3M Settlement.

By making its concession in open court on December 14, 2023, Marten Law no doubt was trying to avoid any hard questions the Court might have asked had Marten Law insisted that no class could be certified. Now, in the comfort of its law office, Marten Law thinks it can simply retract its concession at will. But it may not properly do so.

As officers of the Court, counsel has an obligation to be truthful in their representations to the Court. *See United States v. Shaffer Equip. Co*., 11 F.3d 450, 457 (4th Cir. 1993) (stating that there is "a general duty of candor to the court . . . in connection with an attorney's role as an officer of the court."); *see also* S.C. Rules of Prof. Conduct 3.3, Candor Towards the Tribunal (stating that a "lawyer shall not knowingly. . .make a false statement of fact"). Indeed, the Fourth Circuit and other courts around the country have long condemned "intentional self contradiction," *Allen v. Zurich Ins. Co.,* 667 F.2d 1162, 1167 (4th Cir. 1982) (citation omitted), and they have emphasized that  "playing 'fast and loose with the courts'" is "an evil that the courts should not tolerate." *Scarano v. Cent. R. Co. of NJ*, 203 F.2d 510, 513 (3d Cir. 1953); *see also, e.g., Green v. Ameritrade, Inc.,* 279 F.3d 590, 598 n.7 (8th Cir. 2002) ("during oral argument … counsel specifically avowed" that the plaintiff was not seeking certain damages; because of those "representations in open court," the plaintiff was "barred from pursuing any such damages").

Given these clear standards governing the effect of representations by counsel, this Court should reject Marten Law's attempt to resurrect arguments that it previously disavowed.

---

[22] DuPont Obj. [ECF No. 3966], at 14-17 and Vancouver Obj. [ECF No. 3961], at 20-25.

        **b.**      **Marten Law's continued pursuit of Objections that if sustained would be fatal to class certification shows that the Objections are lawyer-driven and contrary to the expectations and interests of the two objectors.**

Marten Law's reaffirmation of previously renounced arguments that no class can be certified cannot conceivably be the position of its two objectors.[23] This raises the specter that the class certification Objections are entirely lawyer-driven and do not represent the actual views of the clients. Indeed, publicly available material with respect to the City of DuPont—recently discovered by Class Counsel—makes this clear.  A resolution by the City of DuPont in connection with the 3M settlement provided in relevant part:

> WHEREAS, the Council having opportunity to review the offer of settlement and having further received confidential briefing and advisement on the offer of settlement from the City Attorney and Co-Counsel specializing in PFAS lawsuits, and the Council acknowledges that both entering into settlement as well as rejecting the offer of settlement poses potential risks, including but not limited to, the uncertainty as to the final amount of settlement payment (as a result of the structure of class settlements), the costs of continuing litigation against 3M vs. ending litigation, that continued litigation could result in a greater, lesser, or non-existent financial judgement, that this is a single defendant amongst many and funds offered in settlement may be insufficient to totally compensate the City for all damages incurred, and the release of potential future claims against 3M; and

> WHEREAS, having considered this information, *the Council concludes the best estimates indicate the funds received from this offer of settlement will substantially provide for the treatment of the City's water supply both now and in the near future, will remove the risk of uncertain, costly and potentially fruitless future litigation against 3M and, most importantly, the Council recognizes that accepting settlement funds now will best address the immediate need for remedying the issue of water utility contamination, all of which is in the best interest of the health, safety, and welfare of citizens*;

> NOW THEREFORE, BE IT RESOLVED by the City of DuPont:

> 1. Council accepts the Settlement Agreement Between Public Water Systems and 3M

---

[23] While Marten Law may again pay lip service to the Court at the 3M Fairness Hearing on February 2, 2024, by stating that they are not recommending rejection of the settlement, by virtue of these Objections, they are in fact seeking to do exactly that by asserting Objections that, if sustained by the Court, could be fatal to a settlement, which its client, the City of DuPont, voted to accept.

Company, as a qualifying class member and current plaintiff in the AFFF Multi-District Lawsuit in the United States District Court for the District of South Carolina, Charleston Division, No. 2:18-mm-2873-RMG, and authorizes the Mayor and his staff to authorize and/or engage in any necessary actions for the City to act as a claimant in the 3M Settlement and to further engage in any necessary legal or other action to maximize the amount and value of the City's total settlement payment and any other benefits to the City. …[24]

This resolution—approved by the City of DuPont City Council on November 28, 2023 — makes clear that, while the City of DuPont wanted to continue to pursue ways of maximizing its payment, it was firmly committed to a *classwide* settlement. It understood that a settlement now was "in the best interest of the health, safety, and welfare of citizens."[25]

Given this language, it is inconceivable that the City of DuPont urged Marten Law to try to bust up *any* classwide resolution. Indeed, it probably has no idea that Marten Law is continuing to urge that approach which, if successful, would mean that the City of DuPont and other class members would have to wait potentially for decades to see any money at all—and that is even assuming that City of DuPont has any interest in undertaking the huge burden and expense of litigating separately against a major company like 3M.

If there were any doubt the City of DuPont was unaware of these Objections that would prevent the certification of the class and thus the settlement, the PowerPoint presented to the City of DuPont City Council should put any such doubt to rest.

---

[24] Resolution Adopting 3M Settlement, at 106, *available at*: https://dupont.civicweb.net/document/139471/ (emphasis added) (last accessed January 23, 2024).
[25] *Id*.; *see also*, PowerPoint accompanying the Resolution Adopting 3M Settlement, at 119, *available at*: https://dupont.civicweb.net/document/139471/ (stating that settlement relieves "uncertainty of costly, continued litigation," and "provide[s] adequate funding for immediate treatment needs and the 3M settlement would also provide for near future financial needs.") (last accessed January 23, 2024).



Thus, although the PowerPoint identifies certain Objections that the City of DuPont is pursuing, conspicuously absent from that list is any mention of the class certification Objections, despite such Objections being entirely contrary to the City of DuPont's stated intention to accept the settlement funds.[26] This evidence leads inevitably to the conclusion that the class certification Objections are being lawyer-driven.

Moreover, the PowerPoint lists many "pros,"[27] including: (1) the settlement would "relieve[] uncertainty of costly, continued litigation that could result in more, less or no judgement [sic] amount several years from now;"  (2) the settlement "would provide adequate funding for *immediate* treatment needs;" and (3) the claims-over provisions "does not prevent continued litigation against third-party defendants, particularly the government defendants…"[28]

---

[26] *Id*. at 120
[27] *Id.* at 119.
[28] *Id.* (emphasis added).



While Marten Law has interposed an Objection with respect to the claims-over provision, here it is listed as one of the "pros." While they may also consider this provision a "con," it is only so listed insofar as the settlements prohibit double recovery.[29] Again, the PowerPoint reiterates that the settlements would provide adequate funding, which would be at odds with Marten Law's position that the settlement funds do not provide sufficient funds.

The PowerPoint further notes that the "purpose" of the City's "objections is to make the settlement agreements more equitable for the class members."[30] Again, the idea that the City of DuPont would be interested in securing a holding that no classwide settlement is possible is inconceivable in light these clear statements in the PowerPoint as well as its voted on, and approved, Resolutions.

The Resolution Adopting the DuPont Settlement is identical to the one quoted above that relates to the 3M Settlement.[31] Like the 3M settlement it, too, was approved on November 28,

---

[29] *Id.* at 118.
[30] *Id.* at 120.
[31]    Resolution    Adopting    DuPont    Settlement,    at    123-125,    *available    at*:
https://dupont.civicweb.net/document/139471/ (last accessed January 23, 2024).

2023. The DuPont Settlement Resolution similarly recognizes that settling now "will substantially provide for the treatment of the City's water supply *now*, will remove the risk of uncertain, costly and potentially fruitless future litigation against Settling Defendants and, most importantly, the Council recognizes that accepting settlement funds *now* will *best address the immediate need for remedying the issue of water utility contamination*, all of which is *in the best interest of the health, safety, and welfare of citizens*[.]"[32]

In short, Marten Law's Objections on class certification grounds raise the deeply concerning scenario that Marten Law is advocating a position that is directly contrary to the views and wishes of its clients. **Under the circumstances, it is likely prudent for the Court to order both the City of DuPont and the City of Vancouver to appear at the February 2, 2024, fairness hearing, if not sooner, represented by their city counsel, so the Court can determine whether the Objections filed on behalf of these two objectors in fact represent their views, or instead are directly contrary to the objectors' views and best interests.**[33] Indeed, on its face it certainly appears that Marten Law is asserting Objections that could, if granted, undermine the entire class, which is in direct conflict with the City of DuPont's directive to be a part of a settlement.

### B.    OBJECTORS' OBJECTIONS SHOULD BE OVERRULED.

#### 1.    Objectors' Newly Raised Argument Concerning Notice to Opt Outs is Both Procedurally Improper and Moot.

For the first time in Reply, Objectors challenge the 3M Settlement's silence regarding a means for a PWS to determine whether its opt-out was rejected or accepted. This argument is

---

[32] *Id.* at 124 (emphasis added).

[33] Class Counsel have written to this Court earlier today making this same request.

plainly untimely. Both this Court's Preliminary Approval Order and black letter law dictate that objections not timely raised or raised for the first time in a reply are waived.

First, this Court's Preliminary Approval Order of August 29, 2023, required that all Eligible Claimants' Objections were to be provided by the November 11, 2023, deadline, as follows:

> All Objections must certify, under penalty of perjury and in accordance with 28 U.S.C. § 1746, that the filer has been legally authorized to object on behalf of the Eligible Claimant and must provide: *** (4) _all Objections asserted by the Eligible Claimant_ and the specific reason(s) for each Objection, including all legal support and evidence the Eligible Claimant wishes to bring to the Court's attention[.][34]

This Order is not ambiguous. "All Objections" were to be presented with all their legal and evidentiary support available to the objector at one time. Nowhere in the Order is there an allowance for piecemeal argument of Objections. Notwithstanding this clear directive, the objectors present never-before-seen arguments. Based on this violation of the Court's order, objectors' untimely arguments should be summarily rejected.

Second, wholly apart from this Court's Order, it is fundamental that arguments raised for the first time in a reply brief are improper. S*ee, e.g., Koppers Performance Chemicals, Inc. v. Travelers Indem. Co*., No. 2:20-CV-2017-RMG, 2022 WL 1138103, at *8 n.2 (D.S.C. Apr. 18, 2022) (refusing to consider newly raised argument in a reply brief). "The ordinary rule in federal courts is that an argument raised for the first time in a reply brief or memorandum will not be considered." *Clawson v. FedEx Ground Package Sys., Inc*., 451 F. Supp. 2d 731, 734 (D. Md. 2006) (*citing United States v. Williams*, 445 F.3d 724, 736 n.6 (4th Cir.2006)). This principle is

---

[34] Preliminary Approval Order [ECF No. 3626], at 10 (emphasis added); *see also,* Settlement Agreement [ECF No. 3793-1], at § 8.4.1.4.

accepted in the Fourth Circuit because, "[i]t is a well settled rule that contentions not raised in the argument section of the opening brief are abandoned." *United States v. Al-Hamdi*, 356 F.3d 564, 571 n.8 (4th Cir. 2004) (citing *Edwards v. City of Goldsboro*, 178 F.3d 231, 241 n.6 (4th Cir.1999)); *see also, Moseley v. Branker*, 550 F.3d 312, 325 n.7 (4th Cir. 2008) (stating that [a]s a general rule, arguments not specifically raised and addressed in opening brief, but raised for the first time in reply, are deemed waived.") (citing *Cavallo v. Star Enter.*, 100 F.3d 1150, 1152 n.2 (4th Cir. 1996)). This principle applies *a fortiori* here, where the Reply was not even authorized by the Court's scheduling order. On this basis alone, the Court should refuse to entertain Marten Law's new argument.

Marten Law has no excuse for its egregious delay. The absence in the 3M Settlement Agreement of a process by which an opt out will be notified of whether its opt out was accepted or rejected has been obvious since the Settlement was disclosed. Thus, any Objection on this score should have previously been raised both in connection with preliminary approval and on final approval. It is too late to raise the issue now.

In any event, Marten Law's due process argument is meritless. The Court has overseen the DuPont opt-out process, including as recently as January 22, 2024, issuing an Order providing further guidance with respect to compliant and non-complaint Requests for Exclusion, requiring that the list of PWS "determined by the Notice Administrator to be noncompliant…be fully disclosed on the docket," and providing a procedure for a PWS to object to the alleged noncompliant nature of its opt out.[35] There is no reason to speculate that something similar will not be provided for the 3M Settlement. Objectors' Objection that due process has not been satisfied because a PWS cannot verify if it effectively opted out is meritless.

---

[35]Order regarding opt outs [ECF No. 4368], at 3.

### 2.    The Release is Not Overbroad.

The Reply similarly attempts to reframe its refuted arguments that the Release is overbroad. The two Objectors mistakenly maintain that (a) the claims released do not share the same factual predicate; (b) the Release encompasses wastewater and stormwater claims; (c) capturing all PFAS is improper; and (d) unalleged personal injury claims should be excluded. None of these Objections have merit.

### a.    The Release at issue is narrower than those approved by the Fourth Circuit in other cases.

The Fourth Circuit has approved of extraordinarily broad releases in class action settlements. Indeed, faced with the overwhelming case law cited by Plaintiffs, Marten Law is forced to "acknowledge that courts have approved broad releases."[36] The standard applied by the Fourth Circuit focuses on whether the released claims share an "identical factual predicate" with the claims alleged in the class action complaint. *Berry v. Schulman*, 807 F.3d 600, 616 (4th Cir. 2015). "Claims have an 'identical factual predicate' when they depend upon the very same set of facts." *McAdams v. Robinson*, 26 F.4th 149, 160 (4th Cir. 2022) (*quoting TBK Partners, Ltd. v. W. Union Corp.*, 675 F.2d 456, 460 (2d Cir. 1982)). In practice, the Fourth Circuit finds an "identical factual predicate" even where the claims released extend well beyond those stated in the class complaint,[37] including "a large swath of claims that might have been brought,"[38] and discharges

---

[36] Reply, at 4.

[37] *Sharp Farms v. Speaks*, 917 F.3d 276 (4th Cir. 2019) (affirming approval of release of known or unknown claims that relate in any way to the matters specifically released, to any matter or event "whatsoever," and "any action or inaction" of the defendant). *See also, Olden v. Gardner*, 294 Fed. Appx. 210, 219–20, 2008 WL 4297245 at *9 (6th Cir. 2008) (affirming release of all pollution-related claims against defendant cement plant although the class alleged only property damage and personal injury caused by a cement plant's airborne emissions of cement kiln dust); *In re Prudential Ins. Co. of America Sales Practice Litig.*, 261 F.3d 355, 366 (3d Cir. 2001).

[38] *McAdams*, 26 F.4th at 160–61 (affirming release of actions "in connection with the submission of loss mitigation applications" but not limited to the facts alleged).

claims arising from the use of a product that does not yet exist.[39] A release may also discharge future claims,[40] unknown claims,[41] and the claims of non-parties.[42]

The Release at issue here discharges 3M from any claim:

(i) that may have arisen or may arise at any time in the future out of, relates to, or involves ***PFAS that has entered or may reasonably be expected to enter Drinking Water or any Releasing Party's Public Water System***, including any Claim that (a) was or could have been asserted in the Litigation and that arises or may arise at any time in the future out of, relates to, or ***involves Drinking Water or any Releasing Party's Public Water System***; (b) is for any type of relief with respect to the design, engineering, installation, maintenance, or operation of, or cost associated with, any kind of treatment, filtration, remediation, management, investigation, testing, or monitoring of ***PFAS in Drinking Water or in any Releasing Party's Public Water System***; or (c) has arisen or may arise at any time in the future out of, relates to, or involves any increase in the rates for ***Drinking Water that any Releasing Party or Public Water System*** charges its customers; (ii) any Claim that has arisen or may arise at any time in the future out of, relates to, or involves the ***development, manufacture, formulation, distribution, sale, transportation, storage, loading, mixing, application, or use of PFAS or any product (including AFFF) manufactured with or containing PFAS*** (to the extent such Claim relates to, arises out of, or involves PFAS); (iii) any Claim that has arisen or may arise at any time in the future out of, relates to, or ***involves any Releasing Party's transport, disposal, or arrangement for disposal of PFAS-containing waste or PFAS-containing wastewater***, or ***any Releasing Party's use of PFAS-containing water for irrigation or manufacturing***; (iv) any Claim that has arisen or may arise at any time in the future out of, relates to, or involves ***representations about PFAS or any product (including AFFF) manufactured with or containing PFAS (to the extent such Claim relates to, arises out of, or involves PFAS)***; and (v) any Claim for punitive or exemplary damages that has arisen or may arise at any time in the future out of, relates to, or involves PFAS or any product (including AFFF) manufactured with or containing PFAS (to the extent such Claim relates to, arises out of, or involves PFAS). **The terms "Release" and "Released Claims" do not include any Claim that a Class Member can demonstrate arises solely out of conduct by Released Parties that occurs entirely after the Effective Date.** It is the

---

[39] *Berry*, 807 F.3d at 604 (release of claims arising from LexisNexis Accurint product appropriately discharged claims arising from the company's to-be-developed replacement product).

[40] *In re Nat. Football League Players' Concussion Injury Litig.*, 307 F.R.D. 351, 369 (E.D. Pa. 2015).

[41] *Olden*, 294 Fed. Appx. at 219.

[42] *In re Literary Works in Electronic Databases Copyright Litig.*, 654 F.3d 242, 248 (2d Cir. 2011).

intention of this Agreement that the definitions of "Release" and "Released Claims"
be as broad, expansive, and inclusive as possible.[43]

As the italicized portions demonstrate, the Release is narrower than those approved by the Fourth

Circuit: it does not release claims related to "any action or inaction" of the defendant as in *Sharp*

*Farms*, or release actions "in connection with" the stated claims as in *McAdams*.

> ### b.    The Release expressly excludes wastewater and stormwater claims.

Objectors recognize that the Release specifically excludes claims "related to the discharge,

remediation, testing, monitoring, or processing of stormwater or wastewater to remove or

remediate PFAS" where the Class Member's facility "is separate from and not related in any way

to the [PWS]."[44] The joint interpretive guidance document states that "the words 'separate from'

and 'not related in any way to' in the two clauses italicized above mean 'separate from and not

physically related to.'"[45]

It seems paradoxical that Objectors both argue that the release is overbroad *and* challenge

the narrowing of that release by the express exclusion of stormwater and wastewater claims.

Objectors' gripe is simply that the exclusion will not apply to all Class Members. But if a particular

Class Member's wastewater system is "physically related to" its drinking water system, it cannot

benefit from the exclusion.[46] In such a case, the Class Member could receive settlement money to

fund treatment of its drinking water system, but its stormwater and wastewater claims would be

released unless the particular Class Member opts out. Objectors complain that, as to this

idiosyncratic Class Member, the release would be improperly broad because the Class Action

---

[43] Settlement Agreement [ECF No. 3793-1], at § 11.1.1 (emphasis added).
[44] Reply, at 6.
[45] The Parties' Joint Interpretive Guidance on Certain Release Issues [ECF No. 4107-1], at 1.
[46] Reply, at 6-7.

Complaint does not allege wastewater or stormwater contamination.[47] As discussed above, however, a release may discharge claims that were never asserted in the class complaint.[48] And the interests of any particular Class Member for whom the Settlement is not an appropriate solution were protected through the option to opt out of the Settlement.

Objectors further argue that the release of stormwater and wastewater in this narrow set of facts is improper because these systems are subject to state and federal regulations distinct from those that apply to drinking water, and because proving causation is a case-specific exercise.[49] If either of these could defeat the "identical factual predicate" test, *no* class settlement release would ever be possible. For example, *In re MI Windows and Doors, Inc., Prods. Liab. Litig.* released "any and all claims of Settlement Class members against the Released Parties arising from or related to their [allegedly defective] [MI Windows] Product." 860 F.3d 218, 221 (4th Cir. 2017). That was so despite the different state laws that apply to defective products and the various case-specific causation factors that may apply to various homeowners' claims that their windows failed. Courts regularly apply broader interpretations than Marten Law advances here, requiring "the same integral facts," not identical facts.[50] None of the cases cited by Marten Law takes a different analytical approach.

---

[47] *Id*. at 6.

[48] *McAdams v. Robinson*, 26 F.4th 149, 160–61 (4th Cir. 2022); *Sharp Farms*, 917 F.3d at 276; *Faught v. American Home Shield Corp.*, 2010 WL 10959223 at *15 (N.D. Ala. 2010), *aff'd*, 668 F.3d 1233 (11th Cir. 2011); *Olden*, 294 Fed. Appx. at 219; *In re Prudential Ins. Co.*, 261 F.3d at 366.

[49] Reply, at 6-8.

[50] *Doe v. DéJà Vu Servs., Inc*., 925 F.3d 886, 900 (6th Cir. 2019) (*quoting Wal-Mart Stores, Inc. v. Visa U.S.A., Inc*., 396 F.3d 96, 106 (2d Cir. 2005); *see also, Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 292 (3d Cir. 2011) (en banc) (approving "release of all potential damage claims in all fifty states," including states where the claim is not recognized); *Faught*, No. 07-1928, 2010 WL 10959223 at *15 (N.D. Ala. Apr. 27, 2010) (noting that courts may approve a broad release, even encompassing "claims over which the court lack[s] jurisdiction" ), *aff'd*, 668 F.3d 1233 (11th

c.    The Release appropriately resolves claims for all PFAS compounds.

Objectors also argue that the Release is overbroad because it would resolve claims for thousands of PFASs—beyond the 29 PFASs to be tested for under UCMR 5 and any other PFAS for which Class Members have asserted (or will assert) claims.[51] Again, as a legal principle, the "identical factual predicate" reaches unasserted claims. *McAdams*, 26 F.4th at 160–61; *Sharp Farms*, 917 F.3d 276; *Faught v. American Home Shield Corp.*, 2010 WL 10959223 at *15 (N.D. Ala. 2010), *aff'd*, 668 F.3d 1233 (11th Cir. 2011); *Olden,* 294 Fed. Appx. at 219.

Objectors then challenge as "incorrect" the factual notion that all PFAS in drinking water is subject to the same treatment.[52] This statement is belied by the public statement of the City of DuPont. On the City of DuPont's website, it admits that its new system will address *all* PFAS, not just PFOA or PFOS. Contradicting its Counsel's representations to this Court, the City of DuPont states it is constructing "new treatment systems that will safely filter out PFAS. The new treatment system uses Granular Activated Carbon (GAC) as the filter media. *** Granular Activated Carbon (GAC) is a proven treatment method for filtering out PFAS chemicals."[53] The City of DuPont makes no distinction about the capacity of GAC to address different PFAS. It acknowledges that the exact same treatment technology works to remove all PFAS, yet it takes the opposite position only for purposes of objecting to this Settlement. Such patent self-contradiction should not be accepted. The Court should overrule this objection.

---

Cir. 2011); *Grimes v. Vitalink Commc'ns Corp.*, 17 F.3d 1553, 1563 (3d Cir. 1994) (same); *Abramson v. Pennwood Inv. Corp.*, 392 F.2d 759, 762 (2d Cir. 1968) (same).
[51] Reply, at 9-10.
[52] *Id*. (citing various articles).
[53] DuPont Washington, PFAS, available at PFAS | DuPont, WA - Official Website (dupontwa.gov) (last accessed January 23, 2024).

        **d.**       **The Release appropriately includes contribution claims.**

Finally, Objectors complain that the release is overbroad because it bars future contribution claims asserted by Class Members.[54] This too is meritless. A number of courts have approved releases that bar future contribution and indemnity claims *In re U.S. Oil and Gas Litig.*, 967 F.2d 489, 495 (C.A.11 (Fla.) 1992); *Caudle v. Sprint/United Management Co.*, No. C 17-06874, 2019 WL 2716291 at *1 (N.D. Cal. 2019); *In re Diet Drugs*, 2000 WL 1222042 at *65 (E.D. Pa. 2000); *U.S. Fidelity & Guar. Co. v. Patriot's Point Development Authority*, 788 F. Supp. 880, 884 (D.S.C. 1992) (bar order precludes claims for contribution and indemnity). Releasing such claims does not create "inequity;" the release of all Class Members' claims is the bargained-for consideration for a $12.5 billion settlement. Again, a Class Member who did not accept the terms need not accept this bargain.

        **3.**       **The Claims-Over Provision is Not Unreasonable.**

In identical arguments, the City of DuPont and the City of Vancouver objected to the 3M Settlement Agreement's treatment of third-party claims.[55] Under the same banner, their specific objections were entitled: "The Claims-Over provision functions as an indemnity" and "The Agreement fails to name a settlement crediting method." Class Counsel refuted both arguments in their Response to Objections.[56] Rather than confront Class Counsel's arguments in their Reply, Objectors instead mint new arguments addressing "claims brought by the federal government."[57] As set forth above, these never-before-seen Objections should not be considered based on the

---

[54] Reply, at 10-11.
[55] *See* Vancouver Obj. [ECF No. 3961], at 10-12; DuPont Obj. [ECF No. 3966], at 9-12.
[56] Class Counsel's Response to Objections to 3M Settlement [ECF No. 4319], at 40-42.
[57] Reply, at 12-15.

Settlement Agreement, this Court's Preliminary Approval Order, and controlling authority rejecting arguments made for the first time in a reply brief.[58]

But even if the Court were to consider these late-filed Objections, Class Counsel submit that they are without merit. Class Counsel previously noted, in the context of the DuPont Settlement, the entirety of 42 U.S.C. §9607(a) excludes DuPont or any manufacturer of PFAS as a "covered person" "that did not itself discharge, release or transport hazardous waste."[59] Marten Law posits that §9607(a)(3) could be interpreted to impose CERCLA liability upon DuPont if it "arranged for disposal . . . of hazardous substances." But Marten Law's specific reference to §9607(a)(3), and supposed "arranger" liability, is admittedly untested and purely hypothetical.[60] Further, Marten Law offers no evidence of 3M arranging for the disposal of its PFAS products anywhere, a showing which the Settlement Agreement and this Court's Preliminary Approval Order required of any objector. Even worse, Marten Law obliquely contends that exempting claims from the federal government "could pave the way for *some* PWSs to participate in the settlement."[61] But obscuring the identities of those class members as to which the objection applies simply presents yet another procedural defect in the Objection. *See* Fed. R. Civ. P. 23(e)(5)(A). Accordingly, not only is this Objection procedurally defective under Rule 23(e)(5)(A), but it also fails on its merits. The claim-over provisions are intended to protect 3M from having to pay the same party twice. Claim-over provisions are common in partial settlements involving numerous co-defendants because they encourage and protect the settling defendant. As such, this new Objection should be overruled.

---

[58] *See* discussion, *supra*, at 14-16.
[59] Class Counsel's Reply Brief in Support of Motion for Final Approval [ECF No. 4232], at 11.
[60] Reply, at 14 ("arranger liability to PFAS in AFFF will be a question of first impression.").
[61] Reply, at 15 (emphasis added).

### III.    CONCLUSION

The Objections raised are either moot, meritless, and/or procedurally defective and should be overruled. Class certification should be confirmed, and Final Approval of the Settlement Agreement should be granted, and, given the nature of the Reply and arguments asserted, as well as the newly discovered evidence surrounding the intentions and directives of City of DuPont to its lawyer (*i.e.* to participate in the class settlement and thus not undermine class certification), the Court should consider such other appropriate relief as may be just and appropriate under the circumstances.

Dated: January 24, 2024                                Respectfully submitted,

/s/ Michael A. London
Michael A. London
Douglas & London, P.C.
59 Maiden Lane, 6th Fl.
New York, New York 10038
212-566-7500
212-566-7501
mlondon@douglasandlondon.com

/s/ Paul J. Napoli
Paul J. Napoli
Napoli Shkolnik
1302 Avenida Ponce de Leon
San Juan, Puerto Rico 00907
(833) 271-4502
(646) 843-7603
pnapoli@nsprlaw.com

/s/ Scott Summy
Scott Summy
Baron & Budd, P.C.
3102 Oak Lawn Avenue, Suite 1100
Dallas, Texas 75219
(214) 521-3605
ssummy@baronbudd.com

<u>/s/ Elizabeth A. Fegan</u>
Elizabeth A. Fegan
Fegan Scott LLC
150 S. Wacker Drive, 24th Fl.
Chicago, Illinois 60606
(312) 741-1019
<u>beth@feganscott.com</u>

<u>/s/ Joseph F. Rice</u>
Joseph F. Rice
Motley Rice
28 Bridgeside Blvd.
Mount Pleasant, South Carolina 29464
<u>jrice@motleyrice.com</u>

*Class Counsel*

    -   and -

Robert Klonoff
Lewis & Clark School of Law
Jordan D. Schnitzer, Professor of Law
10101 S. Terwilliger Boulevard
Portland, Oregon 92719
(503) 768-6600
<u>klonoff@usa.net</u>

*On-the-brief*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that a true and correct copy of the foregoing was electronically filed with this Court's CM/ECF on this 24th day of January, 2024 and was thus served electronically upon counsel of record.

*/s/ Michael A. London*
Michael A. London
Douglas and London PC
59 Maiden Lane, 6th Floor
New York, NY 10038
212-566-7500
212-566-7501 (fax)
mlondon@douglasandlondon.com
