

THE METROPOLITAN WATER DISTRICT
OF SOUTHERN CALIFORNIA

*Office of the General Counsel*

February 23, 2024

**VIA ECF**
The Honorable Richard M. Gergel
U.S. District Court for the District of South Carolina
J. Waites Waring Judicial Center
83 Meeting Street
Charleston, South Carolina 29401

RE: *In re AFFF MDL,* Master Docket No. 2:18-mn-2873-RMG; *City of Camden v. 3M Co.*, 2:23-cv-03147-RMG: Class Counsel's Improper February 19, 2024 Email to The Metropolitan Water District of Southern California, a Represented Person

Dear Judge Gergel:

I am writing to notify you about, and suggest that you consider taking action to remedy, an improper and coercive communication sent by Class Counsel to a represented person, The Metropolitan Water District of Southern California ("Metropolitan"). On February 19, 2024, Class Counsel (through the Notice Administrator) contacted Metropolitan's Interim Group Manager of Water System Operations, Mickey Chaudhuri, encouraging Metropolitan to revoke its Request for Exclusion from 3M's settlement with public water systems ("PWSs") in the above matter ("3M Settlement") and "come back into the Settlement Class."[1] Metropolitan has attorneys on staff and is also represented by outside counsel in this matter, but Class Counsel's email was nonetheless directed solely to Mr. Chaudhuri -- no attorney for Metropolitan was included in Class Counsel's email. Thus, Class Counsel's communication violates Rule 4.2 of the Model Rules of Professional Conduct and Rule 4.2 of the South Carolina Rules of Professional Conduct ("SC Professional Conduct Rules"). Model Rules of Prof'l Conduct R. 4.2. (Am Bar. Ass'n 1983) ("Model Rules") (barring lawyers from communicating with a represented person about the subject of the representation); Rule 4.2, RPC, Rule 407, SCACR (same). As explained below, Class Counsel's coercive email is part of a continued pattern of coercive conduct. Thus, this Court should consider taking corrective action.

1. Class Counsel Know Metropolitan is Represented by Outside Counsel

As Class Counsel, this Court, and the Notice Administrator all know (and have known for many months), Metropolitan is represented by outside counsel in this case. Our counsel has appeared

---

[1] A true and correct copy of this email is attached as Exhibit A.

Hon. Richard M. Gergel
Page 2
February 23, 2024

on behalf of Metropolitan several times in this matter, starting with Metropolitan's Motion to Intervene for Limited Purpose [Dkt. No. 3829] and Motion for Extension of Time to Seek Settlement Clarification [Dkt. No. 3830] which were filed on October 20, 2023. Our counsel also filed Objections to the 3M Settlement on behalf of Metropolitan [Dkt. No. 3956] on November 10, 2023. In their response to those objections, Class Counsel mentioned our outside counsel's firm by name more than 40 times. See Dkt. No. 4319, passim. Subsequently, on December 8, 2023, our counsel served Metropolitan's Request for Exclusion from the 3M Settlement on the Notice Administrator and copied the Special Master, the Claims Administrator, 3M's Counsel, Class Counsel, and the Clerk of this Court, as required by Paragraphs 8.5 and 13.15 in the 3M Settlement Agreement. Furthermore, my cover letter to Metropolitan's Request for Exclusion clearly stated, "If you have any questions about this request for exclusion, please contact the System's attorney: Jeff Kray; (206) 292-2608; fax (206) 292-2601; 1191 Second Ave., Suite 220, Seattle, WA 98101; jkray@martenlaw.com" (emphasis added).[2] Thus, Class Counsel: (1) are well aware that Metropolitan is represented by outside counsel; (2) have been told by Metropolitan to contact our outside counsel about Metropolitan's Request for Exclusion; and (3) have, in fact, communicated with our outside counsel about Metropolitan's Request for Exclusion and other issues concerning Metropolitan in this matter.

Despite all this, Class Counsel (through the Notice Administrator) improperly contacted Metropolitan's Interim Group Manager of Water System Operations, Mickey Chaudhuri, to encourage Metropolitan to opt back into the 3M Settlement. Ex. A. Additionally, Class Counsel's notice unethically directs Mr. Chaudhuri -- an agent of a represented person -- to "contact Class Counsel" with any questions related to the settlement instead of suggesting he speak with Metropolitan's own counsel. Id. Lastly, rather than describing the proceedings in neutral terms, the notice includes the text of a Bloomberg Law article that quotes this Court as saying that a PWS's decision to opt out of the settlement "borders on reckless." Id.

2. Class Counsel Violated Model Rule 4.2 and SC Professional Conduct Rule 4.2

Class Counsel's direct, coercive outreach to a represented person is clearly improper. Rule 4.2 of the Model Rules of Professional Conduct generally bars a lawyer from communicating with a represented person about the subject of the representation without the represented person's lawyer being present. See Model Rules R. 4.2; 2 Geoffrey C. Hazard, Jr., et al., *The Law of Lawyering* § 41.02 (4th ed. Supp. 2019) (explaining that Rule 4.2 "prevents a lawyer from taking advantage of a lay person"); Mullen v. GLV, Inc., 334 F.R.D. 656, 665 (N.D. Ill. 2020) (defense counsel's email in class action to a party she knew was represented by counsel violated Rule 4.2). Similarly, comment 7 to SC Professional Conduct Rule 4.2 explains the rule prohibits contact, without consent of the organization's counsel, with "a constituent of the organization who supervises, directs or regularly consults with the organization's lawyer concerning the matter . . . ." Rule 4.2, RPC, Rule 407, SCACR, cmt. 7. Although an exception to these rules can

---

[2] A true and correct copy of my cover letter is attached as Exhibit B.

Hon. Richard M. Gergel
Page 3
February 23, 2024

(in the appropriate circumstances) be made by a court, any such court order should be predicated on an individualized assessment of the attorney-client relationship. See Model Rules R. 4.2; see also United States v. Lopez, 4 F.3d 1455, 1462 (9th Cir. 1993) (explaining that a court must make an "informed decision" regarding whether to authorize lawyer's communication with represented person).

There is no evidence that happened here. This Court's Order granting the parties' joint motion for approval of the proposed supplemental notice to entities that have requested exclusion made no such assessment or finding. See ECF No. 4491. In fact, the evidence is to the contrary.

At the February 2, 2024 Final Fairness Hearing on the 3M Settlement ("3M Final Fairness Hearing"), Metropolitan's counsel (Jeff B. Kray of Marten Law) objected to Class Counsel Gary Douglas' inappropriate and coercive comments that lawyers for opt-outs "need to make sure their malpractice premiums are paid up." Tr. at 68:16-69:6; 82:22-25.[3] When Mr. Kray explained he was "concerned about my city attorneys that I represent and others and feeling that they are not -- they're being alleged not to have done their jobs" (Tr. at 83:16-19), the Court replied, "I don't think anybody's talking about them" (Tr. at 83:22-23). Similarly, Class Counsel Mr. Summy admitted, "There are clearly lawyers that are involved here that have done due diligence, like Mr. Kray with his clients, and who have looked at it from these angles and have made a decision to opt-out. And that's fine." Tr. at 109:9-13. Given this Court's comments and Mr. Summy's admission, Class Counsel's improper attempt to persuade Metropolitan to participate in the 3M Settlement is even more objectionable. We trust the Court shares our concerns about Class Counsel's improper communication with a represented person here, just like this Court was troubled by the inappropriate communications at issue in the class action case Weckesser v. Knight Enters. S.E., LLC, 392 F. Supp. 3d 631, 637-38 (D.S.C. 2019) (noting that under Model Rule 4.2, a lawyer is not permitted to contact a represented person, and Model Rule 8.4 prohibits an attorney from using an agent to breach this rule).

3. Class Counsel's Improper Email Threatens the Proper Functioning of the Litigation

As this Court reasoned and held in the Weckesser case, "[T]he ABA, at the end of its' Formal Opinion cited by Defendant, advised attorneys that they must 'at a minimum, advise [the] client to encourage the other party to consult with counsel before entering into obligations, making admissions or disclosing confidential information.' ABA Formal Op. 11-461. . . . [N]oticeably absent from the letter is any recommendation that the Opt-In Plaintiffs' consult with their counsel. . . . The Court therefore finds, based on clear evidence in the record, that the Plaintiffs have demonstrated that a particular communication occurred and that the communication was abusive in that it threatens the proper functioning of the litigation." Weckesser, 392 F. Supp. 3d at 638 (emphasis added).

---

[3] A true and correct copy of relevant excerpts from the transcript of the February 2, 2024 hearing is attached as Exhibit C.

Hon. Richard M. Gergel
Page 4
February 23, 2024

Similarly, here, "noticeably absent" from Class Counsel's email to Mr. Chaudhuri is any recommendation that he consult with Metropolitan's counsel. Instead (and even worse), Class Counsel directed Mr. Chaudhuri to "contact Class Counsel" with any questions. This Court should therefore find that Class Counsel's email was "abusive in that it threatens the proper functioning of the litigation." See id.

   4. Class Counsel's Coercive Email is Part of a Pattern and Practice

It is well-established that "[a]n opt-out notice must be neutrally drafted." Cox v. American Cast Iron Pipe Co., 784 F.2d 1546, 1555 (11th Cir. 1986); In re Nissan Motor Corp. Antitrust Litig., 552 F.2d 1088, 1104 (5th Cir. 1977) (notice must contain "an adequate description of the proceedings written in objective, neutral terms"). In addition, courts have identified two circumstances in which party communications with class members may be considered coercive: "unilateral communications, in other words, communications made by only one side in the case; and the existence of a business relationship between class members and the class opponent." Mullen, 334 F.R.D. at 662. "A unilateral communication from a party to class members is 'rife with potential for coercion,' because it is a 'one-sided presentation of the facts, without an opportunity for rebuttal.'" Id. (quoting Kleiner v. First Nat'l Bank of Atl., 751 F.2d 1193, 1202-03 (11th Cir. 1985)).

Class Counsel's email to Mr. Chaudhuri, an agent of a represented person, is coercive and part of Class Counsel's pattern and practice of trying to intimidate public water systems not to opt out of the 3M (and the DuPont) Settlements. For example, on December 1, 2023, Baron & Budd, PC, one of the appointed Class Counsel firms in the PFAS Settlements with 3M and DuPont, had the Texas City Attorneys Association send a so-called "emergency email" on Baron & Budd's behalf to all members of that association.[4] According to the unilateral communication, "Class Counsel has received a <u>concerning</u> amount of opt outs from class members from the State of Texas" (emphasis added). The email also stated:

- "There is a serious threat of bankruptcy if the settlements do not go through because of too many opt-outs."
- "<u>It's not about opting out to get more, it's about staying in to get something</u>" (emphasis in original).
- "The settlements were designed to compensate Texas class members despite the bad precedent that exists in Texas, as discussed below."
- "Not obtaining settlement funds from these two settlements now could be viewed as failing to mitigate rate increases to consumers and thus pose an obstacle to approval of a rate increase."

---

[4] A true and correct copy of this email is attached as Exhibit D. The communication contains no visible cc list.

Hon. Richard M. Gergel
Page 5
February 23, 2024

- "... we are very concerned that decisions are being made without the perspective of how these settlements came about, the risks associated with opting out and why these settlements are in your best interests. We want nothing but the best for each of you."

Class Counsel also made misleading and coercive statements at the 3M Final Fairness Hearing, such as claiming that 3M has "gotten out of" the PFAS business. Tr. at 19:15-23. However, a public document from 3M's website indicates that 3M still manufactures PFAS to this day.[5] Although 3M says it will exit PFAS manufacturing and "work to discontinue the use of PFAS across its product portfolio" by the end of 2025, "the Company continues to evaluate whether there may be some circumstances in which the use of PFAS-containing materials . . . may continue beyond 2025." Ex. E (emphasis added). Furthermore, "3M's current annual net sales of manufactured PFAS are approximately $1.3 billion, which is approximately 4% of 3M's annual revenue." Ex. E. In addition to Mr. Douglas' baseless malpractice accusation referred to above, Class Counsel made other comments designed to coerce opt outs to participate in the 3M Settlement, such as saying: (1) opting out "borders on irresponsible" (Tr. at 75:17-19); (2) it is "disturbing" to opt out of the 3M Settlement "without the obvious existence of PFOS in your water system" (Tr. at 33:16-19); and (3) "I'd hate to be the lawyer later who is having to explain that [you opted out and don't have 3M's chemicals in your water]" (Tr. at 35:13-14, 35:25-36:1). There are many reasons why PWSs might want to opt out of the 3M settlement, especially if (as this Court recognized) "they don't have any PFAS right now." Tr. at 108:20-21. Thus, it is inappropriate for Class Counsel to second-guess those decisions and to put pressure on opt-outs to participate in the 3M Settlement.

Lastly, Class Counsel's "supplemental notice" email is improperly coercive. Class Counsel's email characterizes this Court's comments at the 3M Final Fairness Hearing as "focused heavily on the potential benefits for a PWS that elect to opt back into the settlement and stated that failure to perform due diligence before a decision to opt out 'borders on reckless.'" Ex. A. Class Counsel also include a summary of the hearing as reported by Bloomberg Law which quotes this Court: "If utilities opt out of the settlement following due diligence, that's their right, Gergel said. Yet it's hard to understand why utilities that already know they're dealing with PFAS contamination would choose to do so and risk getting nothing, he said. 'That borders on reckless.'" Ex. A. As the Eleventh Circuit made clear in Cox, "In appropriate circumstances a court may extend to class members an opportunity to opt out of a suit; it may not, however, appear to approve or recommend any particular decision on their part." Cox, 784 F.2d at 1555. Nonetheless, Class Counsel's email inappropriately suggests that this Court recommends that PWSs opt back into the 3M Settlement. We hope that the Court would not authorize this kind of behavior, particularly in light of its duties of impartiality. See Code of Conduct for Federal Judges Canons 2 & 3; see also Cox, 784 F.2d at 1555 ("To authorize the sending of such a notice was itself an abuse of discretion").

---

[5] See 3M's "PFAS & Their Uses," attached as Exhibit E.

Hon. Richard M. Gergel
Page 6
February 23, 2024

### 5. Metropolitan Asks This Court to Consider Addressing Class Counsel's Improper Communications

After finding abusive communications occurred in Weckesser, this Court took "appropriate actions to remedy" those communications, including directing plaintiffs' counsel to draft and send (after court approval) a corrective notice to all those who signed any document settling their claims or opting out of the litigation and advising them to consult with their counsel if they have questions regarding the litigation. Weckesser, 392 F. Supp. 3d at 638. In addition, this Court granted a protective order that prohibited defendants, their employees, and agents from communicating with the named plaintiff, opt-in plaintiffs, and their family members regarding the pending lawsuit, settlement, their decision to participate as plaintiffs, or their representation. Id.

Metropolitan requests that the Court consider a similar remedy here, sua sponte. For example, the Court could direct Class Counsel to draft and send (after the Court's review and approval) a corrective notice to PWSs that have opted out (or their counsel, if they are represented) advising them to consult with their counsel if they have questions regarding their decision to opt out of the 3M Settlement. Another possible remedy would be to enter a protective order limiting future communications between Class Counsel and PWSs that have opted out. See Weckesser, 392 F. Supp. 3d at 634 ("'Abusive practices that have been considered sufficient to warrant a protective order include communications that coerce prospective class members into excluding themselves from the litigation; communications that contain false, misleading or confusing statements; and communications that undermine cooperation with or confidence in class counsel'" (quoting Cox Nuclear Med. v. Gold Cup Coffee Servs., Inc., 214 F.R.D. 696, 698 (S.D. Ala. 2003)).

Thank you for your consideration of and attention to these important issues.

Very truly yours,

*/s/ Marcia L. Scully/*

Marcia L. Scully
General Counsel

cc:  Michael A. London, Esq., Class Counsel (via electronic mail)
     Paul J. Napoli, Esq., Class Counsel (via electronic mail)
     Scott Summy, Esq., Class Counsel (via electronic mail)
     Elizabeth Fegan, Esq., Class Counsel (via electronic mail)
     Joseph Rice, Esq., Class Counsel (via electronic mail)
     Fred Thompson, III, Esq., Plaintiffs' Liaison Counsel (via electronic mail)

Hon. Richard M. Gergel
Page 7
February 23, 2024

       Joseph G. Petrosinelli, Esq., Defendants' Co-Lead Counsel (via electronic mail)
       Michael A. Olsen, Esq., Defendants' Co-Lead Counsel (via electronic mail)
       Richard F. Bulger, Esq., Defendants' Counsel (via electronic mail)
       Daniel L. Ring, Esq., Defendants' Counsel (via electronic mail)
       David E. Dukes, Esq., Defendants' Co-Liaison Counsel (via electronic mail)
       Brian C. Duffy, Esq., Defendants' Co-Liaison Counsel (via electronic mail)
       Thomas J. Perrelli, Esq., Counsel for Defendants (via electronic mail)
       Steven Weisbrot, Esq., Notice Administrator (via electronic mail)
       Jeff B. Kray, Esq., Counsel for Metropolitan (via electronic mail)
       Hon. Karen K. Caldwell, Chair of U.S. Judicial Panel on Multidistrict Litigation
       (via Federal Express)