


www.motleyrice.com
"I will stand for my client's rights.
I am a trial lawyer."
–Ron Motley (1944–2013)

28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
**o.** 843.216.9000 **f.** 843.216.9450

**Fred Thompson III**
*Licensed in South Carolina*
direct: 843.216.9118
fthompson@motleyrice.com

February 26, 2024

**VIA ECF AND ELECTRONIC MAIL**
Hon. Richard Mark Gergel
U.S. District Court for the District of South Carolina
J. Waites Waring Judicial Center
83 Meeting Street
Charleston, South Carolina 29401

Re: *In re AFFF Products Liability Litigation*, MDL No. 2:18-mn-2873-RMG

Dear Judge Gergel:

Class Counsel hereby responds to the February 23, 2024, submission from The Metropolitan Water District of Southern California ("Met") ("Letter") [ECF No. 4539]. Despite the Letter's repeated use of adjectives such as "improper," "unethical," "coercive," "inappropriate," "objectionable," and "abusive," this Court's February 15, 2024, Order [ECF No. 4491] authorizing the Notice Administrator to send a Supplemental Notice to Class Members who excluded themselves from the 3M Settlement, and the substance of the Supplemental Notice, are in accordance with the law and facts. Accordingly, the Met Letter's request for corrective notice is unwarranted.

## I. The Communication at Issue.

Initially, and as the Court is aware, the "communication" at issue is the *Court-approved* Supplemental Notice that was sent by the Court-appointed Notice Administrator following the parties' filing of a Joint Motion for Approval of Supplemental Notice to Entities That Have Requested Exclusion ("Joint Motion") [ECF No. 4480]. The parties' Joint Motion included as an attachment the precise language the parties sought to include in the Supplemental Notice that Class Counsel, through the Court-appointed Notice Administrator, intended to provide to Public Water Systems ("PWS") that opted out of the 3M Settlement ("Joint Motion") [ECF No. 4480-1]. No Class Member and/or opt-out responded or objected to the Joint Motion. If outside counsel for Met had any concerns about the content of that Supplemental Notice, they should have raised them in advance of the Court approving it for distribution.

The filing of the Joint Motion was occasioned by concerns expressed by the Court during the 3M Fairness Hearing on February 2, 2024 — namely, that Class Counsel should ensure that

each PWS fully appreciated the implications of its decision to exclude itself.[1] For example, during Class Counsel's presentation, Mr. Summy explained that many opt-outs appear not to have 3M chemicals in their water, and thus Class Counsel had considered reaching out to these opt-outs to explain the risks of excluding themselves. The Court responded, "I think you should."[2] Similarly, in response to Mr. Douglas' explanation that the data reflected that the majority of the opt outs had no current PFAS detections, the Court noted: "I do think ya'll need to inform them about those who have no likely 3M liability."[3]

Following the filing of the Joint Motion, the Court entered its February 15, 2024, Order granting the parties' Joint Motion and directed the Notice Administrator "to disseminate the language as proposed." [ECF No. 4491]. Pursuant to the Order, the Notice Administrator disseminated the Supplemental Notice in accordance with regular practice. As such, this "communication" was not a "coercive email,"[4] as Met characterizes it, but rather it constituted the official, judicially approved and Court-ordered Supplemental Notice. Again, if Met was dissatisfied with the proposed language to be included in the Supplemental Notice, it could have filed an opposition to the parties' Joint Motion. It failed to do so and thus, having waived its opportunity to timely object, cannot properly be heard to complain now.

## II. Neither the Supplemental Notice Nor Class Counsel's Nor the Court's <u>Statements at the Fairness Hearing are Coercive.</u>

It is critical to note at the outset that the language in the Supplemental Notice was drafted jointly by the parties and approved by the Court. To suggest that its contents are somehow coercive in nature is tantamount to insinuating that the parties and the Court engaged in improper and collaborative action intended to put undue pressure on opt-outs to opt back in. This argument could not be further from the truth. Again, the Supplemental Notice was occasioned because both counsel and the Court, as discussed on the record at the Fairness Hearing, thought it prudent to ensure that opt-outs fully understood the ramifications of their decision to opt-out, including by providing such opt-outs time to ensure that they did their full due diligence and informing them that the deadline to withdraw their opt-out had been extended until March 1st.

This Court should be applauded, not condemned, for ensuring that both those remaining in the Settlement Class, as well as those choosing to opt-out, fully understand the implications of

---

[1] *See* February 2, 2024, Fairness H'ring Tr., at 36:7-13, 74:2-75:2 (Court urging Class Counsel to reach out to opt-outs to ensure that such opt-outs are informed of relevant information necessary to make a prudent opt-out decision).
[2] *Id*. at 35:3-36:13.
[3] *Id*. at 74:2-14.
[4] Met Letter at 4.

their decisions. The Court has conscientiously fulfilled its role as a fiduciary of the Settlement Class. As one leading resource for federal judges makes clear:

> The judge's assigned task of approving or disapproving a class settlement presents exceptional challenges. Some courts "have gone so far as to term the district judge in the settlement phase of a class action suit a fiduciary of the class" and to impose "the high duty of care that the law requires of fiduciaries." *Reynolds v. Beneficial National Bank*, 288 F.3d 277, 280 (7th Cir. 2002).[5]

Indeed, the Fourth Circuit has confirmed this salutary principle emphasized by the Federal Judicial Center. *See e.g.*, *1988 Trust for Allen Children Dated 8/8/88 v. Banner Life Ins. Co*., 28 F.4th 513, 521 (4th Cir. 2022) (stating that "the court "act[s] as a fiduciary of the class") (quoting *Sharp Farms v. Speaks*, 917 F.3d 276, 293 (4th Cir. 2019)).

As it pertains to statements made during the 3M Fairness Hearing, and as the Letter itself points out,[6] both counsel[7] and the Court[8] made clear that no one was claiming that Mr. Kray or the Marten Law firm engaged in malpractice. Rather, both the Court and counsel were correctly stating that, *hypothetically*, any lawyer who does not advise his or her client of all the risks of opting out of a settlement is not properly representing that client; and there can be no doubt that counsel is required to apprise their clients of all risks and benefits of any settlement.

Moreover, the Letter fails to provide important context for many statements made during the 3M Fairness Hearing. For example, the Letter repeatedly cites to the Court's statement that opting out "borders on reckless."[9] However, the context for this statement was that it would be reckless to opt out *if* a PWS did not have 3M contribution to its PWS contamination, and its lawyer had failed to undertake due diligence to determine the relevant contributors to any contamination.[10] In this context, there is nothing coercive about such a statement. It is simply a true and important admonition: opting out without undertaking a proper analysis of the PFAS contamination in a PWS's system would be reckless, just as it would be reckless not to consider any of the totality of risks and benefits of the settlement before making any opt-out determination.

---

[5] B. Rothstein & T. Willging, *Managing Class Action Litigation: A Pocket Guide for Judges* (Federal Judicial Center 2005), at 8, *available at:* https://www.uscourts.gov/sites/default/files/classgde.pdf (*last accessed* Feb. 25, 2024).

[6] Letter at 3.

[7] *See* February 2, 2024, Fairness H'ring Tr., at 109:4-15 (Class Counsel noting that no one was stating that Mr. Kray did not do his due diligence).

[8] *See* February 2, 2024, Fairness H'ring Tr., at 82:22-83:23 (Court noting that it did not believe any malpractice claims were intended to be directed to Mr. Kray).

[9] Letter at 2, 5.

[10] *See* February 2, 2024, Fairness H'ring Tr., at 73:6-74:23.






In sum, at the Fairness Hearing, Class Counsel and the Court, to fulfill their fiduciary obligations to the class, were required to provide, and did provide, important factual considerations for opt-outs to contemplate, especially given the misinformation that has been disseminated about these historic settlements.

Despite making baseless assertions of ethical violations, the only relief Met requests is that the Court order that a corrective notice be disseminated that informs PWS to contact their own counsel should they have questions about opting out of the settlement.[11] But the original notice to class members included that very suggestion:

> Any questions concerning this Notice, the Settlement Agreement, or the Settlement may be directed to Class Counsel. ***You may also seek the advice and counsel of your own attorney, at your own expense, if you desire***.[12]

Although the Letter repeatedly uses harsh adjectives, it fails to point to *anything* in the record to justify resort to such invective. Its arguments that either Class Counsel or the Supplemental Notice use coercive language are without merit. All steps complained of by Met were careful, proper, and indeed necessary, efforts to make sure that all Class Members, including those choosing to opt-out, base their decisions on full information, including the information discussed at the Fairness Hearing.

## III. The Supplemental Notice was Appropriately Disseminated.

The Letter cites *zero* case law supporting the proposition that a Court-appointed Notice Administrator must send Court-approved notice to counsel rather than directly to a Class Member. Met marshals no such cases because that is not the law. In *Jackson v. SPS Techs, LLC*, 15-cv-9855, 2018 U.S. Dist. LEXIS 1622329, at *10-*11 (C.D. Cal. Sept. 4, 2018), the court directly addressed the issue of the propriety of a notice administrator sending notice directly to a represented class member, holding:

> Rule 23 specifically outlines the post-certification notice requirements, and using a third-party administrator to mail the required notice is standard practice. *This would appear to be one of the circumstances where a communication would be considered authorized by law, such that it did not violate the rule prohibiting communication with represented parties.*

---

[11] Letter at 6.

[12] Amended Exhibit B to the Settlement Agreement between Public Water Systems and 3M Company, Notice of Proposed Class Action Settlement and Court Approval [ECF No. 3620-2] at 19 (emphasis added).

*Id.* (emphasis added).

As the *Jackson* court makes clear, there is nothing improper about a Notice Administrator disseminating Court-ordered notice directly to Class Members.[13] Met's arguments in this regard are frivolous and should be rejected outright, along with its improper accusations of purported ethical violations.

In this regard, both Rule 4.2 of the Model Rules of Professional Conduct and SC Professional Conduct Rule 4.2, which are nearly identical, and are relied upon by Met, state that: "[i]n representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter unless the lawyer . . . *is authorized to do so by law or court order*. S.C. R. Prof'l. Cond. 4.2; *see also*, Model Rules R. 4.2 (emphasis added). Notably, although the Letter acknowledges exceptions to this rule, it omits the italicized phrase, which completely undermines its ethics challenge. Nor does Met account for the fact that courts within this Circuit have held that under Rule 4.2, courts can properly authorize counsel to communicate directly with a represented party, which further undermines its arguments. *See, e.g., Speaks v. U.S. Tobacco Coop., Inc*., 2020 U.S. Dist. LEXIS 53654, *25-*26 (E.D.N.C. Mar. 27, 2020) (holding that the substantially similar N.C.R. Prof'l Cond. 4.2 allows for communications with represented parties by class counsel pursuant to court orders). The Letter cites nothing to suggest that the crucial language in Rule 4.2 should be disregarded here, or that an ethics violation can occur by *following* the clear text of the rule.

Here, Rule 4.2 was clearly followed. As set forth above, the Supplemental Notice that was sent by the Notice Administrator was sent pursuant to the direction of a Court Order, and thus is a judicially authorized communication to a represented party.[14]

## IV. **Conclusion**

---

[13] Ironically, Met complains in its Letter about direct communications with a Class Member, but nonetheless chose to address the Court directly rather than having its outside counsel file the instant submission.

[14] Met's reliance on *United States v. Lopez*, 4 F.3d 1455, 1462 (9th Cir. 1993) is misplaced. The circumstances in *Lopez*, which was a criminal case involving prosecutorial overreach with respect to communications with a represented criminal defendant concerning a plea agreement, are entirely dissimilar to the factual circumstances presented here. Here, both Met and its outside counsel were privy to the language that was to be included in the Supplemental Notice in advance of it being sent by the Notice Administrator, the Supplemental Notice was Court-approved and the circumstances that occasioned the Supplemental Notice were discussed on the record during the 3M Fairness Hearing. It was an entirely transparent and Court-approved communication, unlike in *Lopez* where Mr. Lopez's counsel was seemingly unaware of the communications between the state and Mr. Lopez concerning the potential plea agreement.






The 3M and DuPont water provider settlements represent the largest water provider settlements in American history. These settlements will benefit millions of Americans and were secured only after more than four years of hard-fought litigation, hundreds of thousands of hours of attorney time, and at the cost of tens of millions of dollars. It is unfortunate that the lawyers who secured these unprecedented settlements, and the Court who oversaw this massive litigation, are now accused of coercion and alleged ethical violations, especially when the model rule cited by Met itself clearly *permits* the type of communications at issue here. Class Counsel has the utmost respect for the Court and defers to the Court on whether any action should be taken in response to these meritless accusations.

We thank the Court for its continued time and courtesies,

Respectfully submitted,

Fred Thompson, III
*Plaintiffs' Liaison Counsel*

cc: Defense Lead and Liaison Counsel (via email & ECF)
Jeff Kray, Esq. (via email & ECF)