**IN THE UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF
SOUTH CAROLINA**

| | | |
|---|---|---|
| IN RE: AQUEOUS FILM-FORMING FOAMS PRODUCTS LIABILITY LITIGATION | ) ) | Master Docket No.: 2:18-mn-2873-RMG |

| | | |
|---|---|---|
| | ) | |
| CITY OF CAMDEN, et al., | ) | Civil Action No.: |
| | ) | 2:23-cv-03230-RMG |
| *Plaintiffs,* | ) | |
| | ) | |
| -vs- | ) | |
| | ) | |
| E.I. DUPONT DE NEMOURS AND COMPANY (n/k/a EIDP, Inc.), et al. | ) ) | |
| | ) | |
| *Defendants.* | ) | |

**CLASS COUNSEL'S MEMORANDUM OF LAW IN SUPPORTS OF CLASS
COUNSEL'S MOTION FOR SANCTIONS AND OTHER RELIEF**

## Table of Contents

INTRODUCTION ................................................................................................ 1

JURISDICTION ................................................................................................ 5

FACTUAL BACKGROUND ............................................................................ 6

   A.   Met and Marten Law have repeatedly engaged in abusive, unreasonable, and vexatious behavior before this Court. ....................................................... 10

      1.   Met issued an ultimatum to Class Counsel rather than properly conferring regarding its proposed motion in violation of Local Rule 7.02. ..................................... 10

      2.   Met and Marten Law have Libeled Class Counsel. .................................. 12

      3.   Met provided knowingly inaccurate information to Class Members in an apparent attempt to drum up opposition ............................................................ 13

   B.   Met and Marten Law Both Have a History of Abuse of this Judicial Process .......... 14

      1.   Marten Law abused the Objection process and burdened the Court and parties with needlessly duplicative filings. ........................................................ 14

      2.   Marten Law has broadcast misinformation regarding the Settlements. ............... 15

      3.   Marten Law has repeatedly advanced frivolous arguments. ................................ 15

      4.   Met repeatedly acts in bad faith, while purporting to support the settlement ...... 16

   C.   This Court has both inherent and statutory authority to sanction counsel for abusive or unreasonable behavior in proceedings occurring before the Court. ............... 17

   D.   The Court should revoke the pro hac vice admission of Mr. Kray, those in his law firm and Ms. Scully. ................................................................................ 19

      1.   Mr. Kray and Ms. Scully have violated the duty of candor. ................................ 20

      2.   Mr. Kray and Ms. Scully have engaged in unprofessional conduct "tending to pollute or obstruct the administration of justice." ......................................... 22

      3.   Mr. Kray's attempt to work behind the scenes of Ms. Teraoka, and her allowance of the theatre, are grounds for pro hac vice revocation. ................................. 24

   E.   The Objection and Basis for Intervention is Speculative and the Prejudice to the Existing Parties is Substantial. ................................................................. 27

CONCLUSION ................................................................................................ 29

## Table of Authorities

### <u>Cases</u>

*A1 Procurement, LLC v. Thermcor*, Inc., No. 2:15-cv-15, 2015 WL 13733927, 2015 U.S. Dist. LEXIS 174898 (E.D. Va. Nov. 18, 2015)................................................................ 19-20, 24, 27

*Baily v. Bernzomatic*, No. 16-cv-7548, 2019 WL 410419 (N.D. Ill. Feb. 1, 2019)..................... 22

*Belue v. Leventhal*, 640 F.3d 567 (4th Cir. 2011)......................................................... 20

*Berry v. Schulman*, 807 F.3d 600  (4th Cir. 2015)....................................................... 17

*Blauinsel Stiftung v. Sumitomo Corp*., No. 99-cv-1108, 2001 U.S. Dist. LEXIS 20746 (S.D.N.Y. Dec. 12, 2001).......................................................................................... 25

*Brewer v. Holder*, No. 08-cv-1747, 2013 U.S. Dist. LEXIS 206556, 2013 WL 12399110 (D.D.C. Aug. 9. 2013) .................................................................................... 23

*Cole et al. v. NIBCO, Inc*., No. 3:13-cv-7871 (D.N.J. Apr. 5, 2019) ........................................ 25

*Cooter & Gell v. Hartmarx Corp*., 496 U.S. 384 (1990)....................................................... 5

*Cromer v. Kraft Foods N. Am. Inc.* 390 F.3d 812 (4th Cir. 2004)................................................. 17

*DeBauche v. Trani*, 191 F.3d 499 (4th Cir. 1999) ........................................................ 18

*Doe v. Pub. Citizen,* 749 F.3d 246 (4th Cir. 2014) ................................................. 5, 16

*Fidrych v. Marriott Int'l, Inc*., 952 F.3d 124 (4th Cir. 2020)......................................... 5

*Gould v. Alleco, Inc*., 883 F.2d 281, 286 (4th Cir. 1989). ......................................... 28

*Guilfu Li v. A Perfect Day Franchise*, 270 F.R.D. 509 (N.D. Cal. 2010)..................................... 23

*Harper v. C.R. England, Inc*., 746 F. App'x 712 (10th Cir. 2018) ............................................. 16

*Harvey v. Cable News Network, Inc*., 48 F.4th 257 (4th Cir. 2022). ........................................... 18

*Impervious Paint Industries, Inc. v. Ashland Oil*, 508 F. Supp. 720 (W.D. Ky. 1981) ............... 23

*In re Hill*, 377 B.R. 8 (Bankr. D. Conn. Oct. 23, 2007).................................................. 25

*In re Kitec Plumbing System Prods. Liab. Litig*., Case No. 09-md2098-F (N.D. Tex). .......... 25-26

*In re Valeant Pharms. Int'l, Inc. Sec. Litig.*, No. 15-7658, 2020 U.S. Dist. LEXIS 240069, 2020 WL 7585741 (D.N.J. Dec. 21, 2020)............................................................................... 25, 26

*In re Volkswagen "Clean Diesel" Marketing, Sales Practices and Prods. Liab. Litig.*, 2018 WL 1588012 (N.D. Cal. 2018)........................................................................................................ 7

*In re WorldCom, Inc.*, 347 B.R. 123 (S.D.N.Y. 2006) ......................................................... 7

*Jenson v. Cont'l Fin. Corp.*, 591 F.2d 477 (8th Cir. 1979) .......................................... 16

*Kloppel v. Homedeliverylink, Inc.*, No. 17-6296, 2022 WL 18491542 (W.D.N.Y. Nov. 29, 2022) ............................................................................................................................................ 11

*La Michoacana Nat., LLC v. Maestre*, 611 F. Supp. 3d 87 (W.D.N.C. 2020) ....................... 21

*Leis v. Flynt*, 439 U.S. 438 (1979) ................................................................................... 19

*Marino v. CACafe, Inc.*, No. 16-cv-6291, 2017 U.S. Dist. LEXIS 64947, 2017 WL 1540717 (N.D. Cal. Apr. 28, 2017) ................................................................................................ 23

*Marino v. Ortiz,* 484 U.S. 301 (1988)............................................................................... 16

*Mayfield v. Barr,* 985 F.2d 1090 (D.C. Cir. 1993) ......................................................... 16

*Reaves v. Washington*, 2023 U.S. Dist. LEXIS 234036 (D.S.C. 2023)......................................... 17

*RLM Communs. Inc. v. Tuschen*, 2015 U.S. Dist. LEXIS 35016 (E.D.N.C 2015)...................... 17

*Robles v. City of Berkeley*, 820 F. App'x 529 (9th Cir. 2020) ....................................... 24

*Robles v. In the Name of Human., We REFUSE to Accept a Fascist Am.*, No. 17-CV-04864-CW, 2018 WL 2329728 (N.D. Cal. May 23, 2018), ....................................................................... 24

*Romano v. SLS Residential Inc.*, 253 F.R.D. 292 (S.D.N.Y. 2008).............................................. 24

*Ryan v. Astra Tech, Inc.*, 772 F.3d 50 (1st Cir. 2014) ................................................... 22

*Silvestri v. General Motors Corp.*, 271 F.3d 583 (4th Cir. 2001)............................................... 17

*Sprague v. Ticonic National Bank*, 307 U.S. 161 (1939). .............................................. 5

*Supreme Court of New Hampshire v. Piper*, 470 U.S. 274 (1985).............................................. 19

*Teague v Bakker*, 931 F. 2d 259 (4th Cir 1991)............................................................... 27

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96 (2d Cir. 2005) ........................................ 7

*Watson v. Charleston Hous. Auth.*, 83 F. Supp. 2d 709 (S.D.W. Va. 2000) ................................. 5

*White v. New Hampshire Dept. of Employment Security*, 455 U.S. 445 (1982)............................ 5

## **Statutes**

28 U.S.C. § 1919 .................................................................................................................... 5

28 U.S.C. § 1927 ............................................................................................................... 1, 18

## **Rules**

D.S.C. Local Rule 7.02 .....................................................................................................1-2, 10-11

D.S.C. Local Rule 83.1.08 ........................................................................................................ 20

Fed. Rule 23 ................................................................................................................... 16, 23

Fed. Rule 24 ............................................................................................................................ 24

S.C. App. Ct. R. 3.3 ................................................................................................................ 21

## INTRODUCTION

Pursuant to 28 U.S.C. § 1927 and the District Court's inherent authority, Class Counsel move for sanctions against Metropolitan Water of Southern California ("Met") and its counsel, Jeff Kray; Marten Law; Marcia Scully, General Counsel for Met, and Jill C. Teraoka, Deputy General Counsel for Met, and request a hearing on the matter as soon as possible. Collectively, Met and its counsel have engaged in a pattern and practice of sanctionable conduct throughout the course of the settlement process, the details of which are described herein,[1] culminating in Met's purposeful failure to comply with its duty to confer, prescribed by Local Rule 7.02, in connection with its recent Motion to intervene and Notice of Appeal.[2]

The combined effect of Met's bad-faith course of conduct has prejudiced the existing parties to such a significant extent that an ample basis exists for sanctions to issue, especially given that Met opted out of these proceedings months ago and is no longer a party to them. The Local Rule was plainly flouted here by out of state counsel, in an obvious, premeditated attempt to *appear* to have met and conferred in good faith, such that Met's counsel could disingenuously assert compliance with the Local Rules. It is clear, however, that it was never their intention to meet and confer in good faith, and in fact, they did not do so. Accordingly, Class Counsel bring the instant motion for sanctions and/or other relief, including the striking of Met's Motion to Intervene ("Motion")[3] which unreasonably and vexatiously multiplies these proceedings.[4]

---

[1] A full resuscitation of this conduct is discussed herein, including: (1) libeling Class Counsel and the Court; (2) knowingly disseminating disinformation directly to Class Members in regard to the Settlement; (3) burdening the Court with abusive and frivolous Objections; and (4) broadcasting disinformation clearly intended to undermine the Settlement.

[2] Local Rule 7.02 requires not only that a party meet and confer with opposing counsel prior to filing a motion, but also that the party attempt "in *good faith* to resolve the matter contained in the motion." (emphasis added).

[3] Motion to Intervene for Limited Purpose of Filing an Appeal [ECF No. 4660].

[4] Prior to filing this motion, Class Counsel complied with Local Rule 7.02 by meeting and conferring two separate times with Met's advisory counsel, Eric Fastiff, Esq. Mr. London first informed Mr.

On Saturday afternoon, March 9, 2024, Ms. Teraoka sent an email to Class Counsel demanding that Class Counsel agree to make certain proposed changes to the DuPont Class Action Settlement Agreement ("Settlement Agreement") by 6 p.m. PST, on Sunday, March 10, 2024, or else Met would move to intervene in this action for the sole purpose of appealing the Settlement Agreement. Ms. Teraoka claimed her email was a "meet and confer;" however, given its threatening nature and unreasonable timeline, it can only be viewed as a sham. Moreover, the disingenuous nature of the meet and confer is bolstered by the fact that on Sunday afternoon, Ms. Teraoka provided Class Counsel with a seven-page draft of the untimely Motion, which clearly had already been prepared, and even if it had been newly prepared, was so bare bones that it could have, and should have, been filed months ago when it became apparent to Met that its interests were not being protected, as its counsel have alleged.[5] Rather than timely file a motion to intervene, Met waited and launched a last minute Saturday afternoon take-it-or-leave-it ultimatum, unilaterally demanding a response within 18 hours to its proposed changes, without any advanced notice to Class Counsel. This latest example of Met's flouting of the Local Rules, together with its counsel's long documented antics of bad-faith conduct, should not be countenanced any longer.

Met's Motion reprises its previously stated Objections to the scope of the term "Releasing Persons" in the Settlement Agreement.[6] Although Met and its counsel concede that it abandoned those Objections by opting out of the settlement, likely fearing that it would lose appellate rights that it does not possess, Met made this last-minute filing. But its failure to maintain standing to object

---

Fastiff of this sanctions motions on during the meet and confer on March 12, 2024, and then again reiterated on March 14, 2024, that the sanctions motions would be filed by the end of the week.

[5] It is hardly lost on Class Counsel that Mr. Kray, who represents Met in this MDL but apparently not for the purpose of this motion, was, in fact, representing Met's interests in this litigation through his pursuit of the precise Objections that he filed on behalf of other clients of his that remained in the DuPont Settlement. Apparently, Met does not believe its own counsel to be capable of adequately protecting its interests through his pursuit of the Met's exact Objections by other Class Members.

[6] Memorandum of Law in Support of Metropolitan's Motion to Intervene for Purposes of Appealing ("Memo") [ECF No. 4660-1 at 2-3] (citing ECF No. 3955).

should not inure to the detriment and prejudice of the class. This recent dilatory conduct is emblematic of the bad faith in which Met and its Counsel have conducted themselves throughout these proceedings, through repeated practices of misconduct and judicial abuse. Moreover,  as their excuse for having waited until the last minute to file an untimely intervention, Met's counsel disingenuously states that their motion to intervene was occasioned by the Court's issuance of the Final Order and Judgment Approving the Settlement Agreement.[7] But *nothing* in the law required them to wait for that Order to issue. Met was free to move to intervene the day after it opted out on November 30, 2023.[8]

     This deliberate dilatory conduct should not be countenanced, especially considering that just a little over two weeks ago, Met seemed *more* concerned over an innocuous Court ordered Supplemental Notice to Class Members, literally accusing the Court and Class Counsel of conspiring to coerce opt outs while hurling baseless accusations of ethical violations against Class Counsel — *to wit*, Joseph Rice, Michael London,  Scott Summy, Elizabeth Fegan and Paul Napoli — baseless allegations that are themselves perhaps worthy of sanctions.

---

[7] Memo, at 4.

[8] Ultimately, the parties did meet and confer on Tuesday, March 12, 2024, but of course by that point it was too late as the Notice of Appeal and the motion to intervene were already filed leaving nothing to confer over. It should be noted that the filing of the Notice of Appeal without meeting and conferring is particularly problematic here since it divested this Court of jurisdiction to hear the motion to intervene, and the matter is now formally with the Fourth Circuit, except, as noted below, with respect to collateral matters for which the Court retains jurisdiction, including this sanctions motion. Moreover, during even this belated meet and confer, Met's in-house counsel remained uncompromising indicating that they would appeal this until they got the exact language they requested and indicated that they would do the same with respect to the 3M Settlement. However, following the March 12th meet and confer, advisory counsel spoke again with Mr. London, and they are working towards a resolution but the matter remains unresolved. However, in reality, it cannot be resolved since the Court has been divested of its jurisdiction underscoring the harm caused by Met's initial failure to meet and confer. The harm caused by their failure to meet and confer is irreparable and cannot be undone unless and until they withdraw their appeal rendering any meet and confers meaningless.

While Class Counsel have addressed Marten Law's past indiscretions in detail in prior motions, until now Class Counsel have refrained from asking this Court to impose sanctions, deferring instead to the Court's discretion. However, this latest and most outrageous abuse of judicial process compels the filing of this present motion for sanctions.

Finally, pursuant to the Court's Text Order,[9] on March 18, 2024, Class Counsel will file an opposition to the Motion that will also request a hearing. Importantly, Met is the sole entity to date to have filed a notice of appeal. Met should be required to post a substantial bond for its appeal, given that Met lacks standing to appeal and its current Motion is objectively untimely, and will greatly prejudice the existing parties and delay the distribution of billions of dollars of settlement funds to thousands Public Water Suppliers ("PWSs") that, unlike Met (which seemingly has neither PFOA nor PFOS detections), desperately need these funds to enable the drinking water of millions of Americans to be treated for PFAS contamination. Given the unprecedented and extraordinary circumstances that a delay occasioned by this appeal could cause to thousands of Class Members and the public health, Class Counsel will be filing a separate a motion to require Met to post a very substantial bond, above the usual costs and requirements.

For the reasons set forth below, Class Counsel submit that Met's appeal[10] and the Motion are new illustrations of both Marten Law and the in-house counsel at Met's continued pattern and practice of obstruction and abuse of this judicial process. Class Counsel asks the Court to impose sanctions, including requesting that Mr. Kray, Ms. Scully and Ms. Teraoka be required to appear personally at a sanctions hearing with respect to their conduct as discussed herein and/or at a minimum revoke the pro hac vice admission of Ms. Scully and Mr. Kray.

---

[9] Text Order [ECF No. 4674].
[10] On March 11, 2014, Met filed its Notice of Appeal [ECF No. 4653].

## JURISDICTION

Met's Notice of Appeal likely divests this Court of jurisdiction but only on the narrow issue of being able to adjudicate the motion to intervene.[11] *Doe v. Public Citizen*, 749 F.3d 246, 258 (4th Cir. 2014) ("an effective notice of appeal divests a district court of jurisdiction to entertain an intervention motion."). Otherwise, the Court retains jurisdiction with respect to all issues not appealed, including (as discussed below) this motion for sanctions.

This Court's jurisdiction to sanction misconduct is broad and long lasting. A federal court may consider collateral issues even when an action is no longer pending. "For example, district courts may award costs after an action is dismissed for want of jurisdiction." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395-396 (1990) (citing 28 U.S.C. § 1919). In fact, the Supreme Court has held "that motions for costs or attorney's fees are 'independent proceedings supplemental to the original proceeding and not a request for a modification of the original decree.'" *Id.* (*citing Sprague v. Ticonic National Bank*, 307 U.S. 161, 170 (1939)). "Thus, even 'years after the entry of a judgment on the merits' a federal court could consider an award of counsel fees." *Id.* (*citing White v. New Hampshire Dept. of Employment Security*, 455 U.S. 445, 451, n.13 (1982)); *see also, Fidrych v. Marriott Int'l, Inc.*, 952 F.3d 124, 145 (4th Cir. 2020) (holding that "a court's power to resolve collateral issues extends beyond its power to resolve the underlying case. ***Because sanction proceedings are collateral to the merits of the underlying case, an otherwise proper sanction award may be imposed even if the court lacks jurisdiction to enter a judgment on the merits*** against the sanctioned party.") (emphasis added); *Watson v. Charleston Hous. Auth.*, 83 F. Supp. 2d 709, 711 (S.D.W. Va. 2000) (holding that "the issue of fees and costs is collateral, a court still has authority to decide the issue after the underlying action has been remanded.").

---

[11] Class Counsel's forthcoming opposition to the Motion to Intervene will address why Met's Motion fails on the merits.

## FACTUAL BACKGROUND

The current filing by Met, discussed above, is the proverbial straw that broke the camel's back. But the pattern of misconduct leading to this sanctions motion is extensive and involves months of misconduct.

The Settlement Agreement was filed on July 10, 2023.[12] Therein, Paragraph 2.45 defined "Releasing Parties" broadly to include "anyone in privity with or acting on behalf of" a Settlement Class Member.[13] On August 22, 2023, the Court preliminarily approved the Settlement Agreement.[14] On October 9, 2023, Marten Law LLP wrote a letter to Plaintiffs' Co-Lead Counsel on behalf of Met, challenging the breadth of the "Releasing Parties" definition.[15] In response, on October 25, 2023, the parties issued a Joint Interpretive Guidance on Interrelated Drinking-Water Systems.[16] Marten Law filed Objections of the Metropolitan Water District of Southern California on November 10, 2023, likewise challenging the scope of the "Releasing Parties" definition and the Interpretive Guidance document.[17] Met subsequently filed a Request for Exclusion on **November 30, 2023**, with respect to the Settlement Agreement, thereby rescinding its pending Objections.[18]

Although Met decided to opt out of the settlement, its Objections (including that challenging the scope of "Releasing Parties") were maintained by other entities represented by Met's counsel, Marten Law.[19] The parties and this Court fully analyzed the Objections posed by Marten Law's remaining clients with standing to object, and others, before overruling those Objections. Class

---

[12] Class Action Settlement Agreement [ECF No. 3393-2].

[13] *Id*. at § 2.45(d).

[14] Preliminary Approval Order [ECF No. 3603].

[15] October 9, 2023 Letter from Marten Law to Co-Class Counsel [ECF No. 3831-2].

[16] The Parties' Joint Interpretative Guidance on Interrelated Drinking-Water Systems [ECF No. 3858-1].

[17] Objections of the Metropolitan Water District of Southern California [ECF No. 3955].

[18] Pursuant to the terms of the Settlement Agreement, a Request for Exclusion nullifies the right to interpose an Objection to the Settlement. Settlement Agreement, at § 9.7.3(b).

[19] *See. e.g*., Objection of the City of Tacoma [ECF No. 3972] whose Objections are identical to those of Met.

Counsel responded to Met's Objections with caselaw and argument supporting the propriety of the class release.[20] And the Court engaged Marten Law attorney Jeff Kray in fulsome discussion of the Objections at the December 14, 2023, fairness hearing. Mr. Kray confirmed that he represented objectors who "do not oppose the settlement concept, nor do they object entirely to the settlement with the DuPont defendants."[21] Critically, he did not use his time before the Court to discuss the purported Objection to the "Releasing Parties" definition;  in fact, neither Mr. Kray nor any other objector mentioned the scope of the "Releasing Parties" definition in open court. Rather, Mr. Kray and Ms. Ferrell discussed only the release's effect on wastewater claims[22] and "the contribution bar as it relates to the federal government specifically."[23]

Following the oral argument, and with the benefit of the parties' and Objectors' written briefs, the Court analyzed and overruled all Objections, issuing a Final Approval Order on February 8, 2024, that specifically addressed the scope of the "Releasing Parties" definition.[24] Met did not seek reconsideration of the Court's ruling, or intervention for purposes of doing so. On February 26, 2024, the Court entered the Final Order and Judgment Approving Settlement Agreement and overruled all Objections.[25]

In the interim, rather than focus on substance, Met and its counsel attacked Class Counsel. On February 23, Met's General Counsel, Marcia Scully, wrote a letter to this Court about Class Counsel, through the Notice Administrator, providing Met with the Court-ordered Supplemental

---

[20] Class Counsel's Memorandum of Law in Support of Class Counsel's Motion for Final Approval of Class Settlement, for Final Certification of the Settlement Class, and in Response to Objections [ECF No. 4080-1], 80-96- (citing *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc*., 396 F.3d 96, 109 (2d Cir. 2005); *In re WorldCom, Inc*., 347 B.R. 123, at 156; *In re Volkswagen "Clean Diesel" Marketing, Sales Practices and Prods. Liab. Litig*., 2018 WL 1588012, at *8 (N.D. Cal. 2018)).
[21] Tr. of Fairness H'ring of the DuPont Settlement, *City of Camden v. DuPont, et al*. (Dec. 14, 2023), at 97:1-6.
[22] *Id*. at 18-24.
[23] *Id*. at 98:1-2.
[24] Order and Opinion [ECF No. 4471], at 29-30.
[25] Final Order and Judgment Approving Settlement Agreement [ECF No. 4543-1].

Notice directly and not by way of its counsel.[26] Ms. Sully purported to be so aggrieved over this Court-ordered Supplemental Notice that she baselessly accused Class Counsel of ethics violations for not communicating with Met's counsel, Mr. Kray. Noticeably absent from the letter was any mention of outrage over the Court's Order overruling Met's prior Objections or the need for intervention and/or appeal.

On Saturday, March 9, 2024, Ms. Jill Teraoka, Met's Deputy General Counsel, wrote directly to Class Counsel requesting that Class Counsel respond by 6 p.m. PST on Sunday, March 10, as to whether Class Counsel would agree to "correct the terms of the settlement agreement to provide for compliant opt outs to reserve their rights as to any and all claims they may have now and in the future as to DuPont."[27] The email further asserted that it constituted a meet and confer with respect to a forthcoming motion to intervene, presumably to provide standing to appeal the Final Order and Judgment Approving the Settlement Agreement.[28] Although the law firm Horvitz & Levy filed the current Motion, as noted, a draft was provided by Ms. Teraoka to Class Counsel on Sunday afternoon, which allowed Class Counsel mere hours to review before Met's unilaterally imposed, Sunday night meet-and-confer deadline was set to expire. Such last-minute sandbagging is so fundamentally inconsistent with notions of fairness and good faith as to be worthy in and of itself of sanctions, or at the very least admonishment.

Upon receiving Ms. Teraoka's email, to be sure Met had dispensed with its prior concerns about unethical direct communications with clients, given Met's February 23 letter to the Court, Class Counsel asked Mr. Kray and Ms. Farrell (1) whether they still represent Met; and (2) whether

---

[26] February 23, 2024, letter from Met to the Court ("Met Letter")[ECF No. 4539].

[27] March 9, 2024, email, from Ms. Teraoka to Class Counsel, attached to Dec. of Michael A. London ("London Dec.") as Ex. A.

[28] *Id*.

they would take any issue with Class Counsel responding directly to Met.[29] As to the first issue, Mr. Kray indicated that he does continue to represent Met in the MDL but, curiously, not "for appeal purposes."[30] It now appears that Mr. Kray also does not represent Met with respect to Met's instant Motion.[31]

Regarding the second issue, Mr. Kray explained that he was aware of the direct communication, and Met's proposed motion and intent to appeal, and that he does *not* object to Class Counsel meeting and conferring directly with Met.[32] Class Counsel, therefore, scheduled a meet and confer with Met over the course of the weekend, and understood Met's position to be an ultimatum that *unless the below proposed redlined changes are made* to the Interpretive Guidance[33] without exception, Met, despite having opted out of the settlement months ago, would appeal its previously-abandoned Objections.

---

[29] March 9, 2024, email from Mr. London to Jeff Kray and Jessica Ferrell, attached to London Dec as Ex. B.

[30] *Id.*

[31] This "selective" representation creates a curious scenario in which Mr. Kray and his firm currently represent Met before this Court, but nonetheless disavow any representation of Met with respect to this particular motion. This purported fragmentation of representation enables Mr. Kray and his law firm to disavow themselves of anything to do with the present motion, leaving Met's Deputy General Counsel to face the consequences. While it is certainly understandable that counsel may hire appellate counsel to handle an appeal, it is also unusual, if it not completely inappropriate, for a current attorney of record to suggest that they are *not* representing their client with respect to a particular motion related to previously asserted (and withdrawn) Objections. Such an unusual position raises serious representational questions. In fact, Class Counsel do not believe it is possible to represent a client in a case and/or litigation but disclaim any connection to a particular affirmative motion made in that same case. In short, Marten Law either is Met's attorney of record, and answerable to this Court, or it is not. Counsel for Met should be compelled to address this matter before the Court.

[32] Ex. B to the London Dec.

[33] The Parties' Joint Interpretive Guidance on Interrelated Drinking-Water Systems [ECF No. 3858-1]

**Scope of Release**

The Settlement Agreement contains detailed release provisions that specify whose claims are released. A core purpose of the release provisions is to prevent double recovery for the same water. In general, by participating in the Settlement, a Settlement Class Member releases claims on behalf of itself and its Releasing Parties (as defined in the Settlement Agreement) with respect to the water provided to (or supplied by) the Settlement Class Member. ~~In general, if a wholesaler opts out of the Settlement Class and its retail customer is a Settlement Class Member, the release would extend to the wholesaler as to the water it provided to the Settlement Class Member except to the extent the wholesaler shows it had the obligation for and bore unreimbursed PFAS-treatment costs for that water independent of the retail customer.~~ Ultimately, whether claims are released will turn on the application of the release provisions of the Settlement Agreement to the specific facts relevant to the wholesaler, the retail customer, and their relationship.[4] Notwithstanding the foregoing, nothing in the Settlement is intended to or will be deemed to impair the rights of wholesalers that opted out of the Settlement to bring any and all Claims they may have now and in the future against the Settling Defendants, and wholesalers that opted out of the Settlement are not bound by any release provisions in the Settlement, including Paragraph 12.1.

Notably, the above language proposed by Met,[34] stating that an opt out preserves "any and all Claims they may have now and in the future," is in fact no different than the language currently in the Settlement Agreement, which states that "[a]ny Person that submits a timely and valid Request for Exclusion s*hall not (i) be bound by any orders or judgments effecting the Settlement*…"[35] The fact that Met's changes are meaningless further buttresses the bad-faith nature of the negotiations engaged in by its counsel.

On March 11, 2024, Met filed its Notice of Appeal[36] and thereafter, its Motion for Intervention.[37]

## ARGUMENT

**A. Met and Marten Law have repeatedly engaged in abusive, unreasonable, and vexatious behavior before this Court.**

**1. Met issued an ultimatum to Class Counsel rather than properly conferring regarding its proposed motion in violation of Local Rule 7.02.**

While there appeared to be some suggestion in Met's original March 9, 2024, email of an interest in a "meet and confer," Met unilaterally imposed, without any advance notice, an 18-hour window[38] for Class Counsel to respond to its requested changes. When Class Counsel explained that scheduling would permit a conference on Tuesday, March 12, it soon became apparent that there was

---

[34] March 10, 2024, Email from Ms. Teraoka to Class Counsel enclosing proposed language to modify the Interpretative Guidance, attached to London Dec. as Ex. C.
[35] Settlement Agreement, at § 9.7.3(i)(emphasis added).
[36] Notice of Appeal [ECF No. 4653].
[37] Motion to Intervene for Limited Purposes of Filing Appeal [ECF No. 4660].
[38] Actually, 17 hours, given the one hour lost to Daylight Savings Time adjustment.

no room for negotiation, and Met simply leveled an ultimatum, which demonstrates how disingenuous its counsel's invitation to meet and confer was. This is further evidenced by the fact that Met went ahead and filed its motion and appeal on Monday, March 11, anyway, prior to even speaking to Class Counsel.

Clearly, the parties were not in a position to respond within that time, and to make such a request is certainly not consistent with negotiating in good faith, especially when one considers that Class Counsel was not even provided a draft of the Motion until Sunday afternoon. Met thus violated Local Rule 7.02, which requires that a movant attempt "in *good faith* to resolve the matter contained in the motion."[39] (Emphasis added.)

With respect to Met's last-minute Motion, it cannot be overstated that this Court already gave full attention and analysis to the Objections posed by Met, as their identical Objections were advanced by other Class Members represented by Marten Law, and others, before overruling those Objections. Met, who has opted out of the DuPont Settlement, now tries to reinstate its standing by filing a motion to intervene[40] and, without explanation, have one of its Objections heard once again. Had Met stood by its Objections by either not opting out of the DuPont Settlement, or by timely intervention, then it would now have standing to appeal the Court's decision with respect to its Objection, but having failed to intervene promptly, *i.e.*, at the time it opted out of the DuPont Settlement in late November 2023, Class Counsel now submits Met has waived its current Objection in its entirety. Moreover, as an opt out, Met's Objections are plainly moot as they are not bound by

---

[39] Local Rule 7.02 (D.S.C.); Duty to Consult Before Filing Any Motion. Notably, the violation of this rule can likewise serve as a basis to strike Met's motion to intervene. *See, e.g., Kloppel v. Homedeliverylink, Inc.,* No. 17-6296, 2022 WL 18491542, at *3 (W.D.N.Y. Nov. 29, 2022) (denying motion to intervene for failure to comply with local rule).

[40] Met's Deputy General Counsel likewise provided Class Counsel with a draft of the motion to intervene on Sunday afternoon, which further underscores that it was prepared but intentionally withheld until the last minute.

the Settlement Agreement and/or the Court's Final Approval Order.[41] At this stage, any contrary conclusion would result in severe prejudice to the Settlement Class.[42]

Met's counsel asserts that their motion to intervene was occasioned by the Court's issuance of the Final Order and Judgment Approving the Settlement Agreement, but nothing in the law required them to wait for that Order to issue, and in fact the necessity of timeliness with respect to any motion to intervene fully undercuts any such argument. For example, even two weeks ago, when Met wrote to express its purported outrage over a direct Court-ordered Supplemental Notice sent by the Claims Administrator, spewing spurious false accusations of ethical violations, Met could have, if this current issue was indeed truly important to it, requested intervention then. The fact that Met felt the need to attribute its delay in moving to intervene to the spurious notion that it was waiting for a final order rings hollow. There is no reason Met could not have moved to intervene long ago.

In fact, other opt outs attempted to do so, that is, intervene while a particular Objection was being heard by the Court. Rather than adopt this approach, Met sat on its hands, dreamed up fictitious ethical violations, opted out, and otherwise remained generally unengaged, which underscores the bad faith underlying its sudden request for intervention. This supports Class Counsel's argument that Met's current Motion is untimely under any measure, including the well-established concept of laches.

### 2.  Met and Marten Law have Libeled Class Counsel.

On February 23, 2024, Met filed an entirely baseless letter concerning purported improper communications by Class Counsel. On February 26, 2024, Class Counsel were forced to respond to the entirely meritless arguments contained therein. Although the February 23rd Met Letter was signed by Met's General Counsel, Marcia Scully, it identifies Mr. Kray as its outside counsel multiple

---

[41] Settlement Agreement, at § 9.7.3.

[42] This issue will be more fully addressed in Class Counsel's formal opposition to Met's motion to intervene.

times and his name appears as a "cc:" recipient. As outside counsel, Mr. Kray was surely aware of the contents of this letter prior to its submission. And even if he was not, his silence with respect to its filing and the serious allegations contained therein has been deafening, and thus can only reflect his tacit agreement with the arguments contained within the submission. As such, the defamatory accusations of ethical violations contained within the Met letter should be added to list of his abuses of the judicial process.

In the letter, Met claimed that a <u>Court-approved</u> Supplemental Notice represented, in essence, a conspiratorial campaign by the parties and the Court to put undue pressure on opt outs to opt back in. As if that were not heinous enough, Met cc'd the Chief Judge of the Judicial Panel on Multidistrict Litigation in an apparent attempt to intimidate this Court.

Moreover, had Met's Objection been important, surely it would have raised the Objection, rather than spout conspiracy theories. Likewise, Met's counsel could have raised the Objection during the DuPont Fairness Hearing but did not. The blatant failure to advance this Objection properly at any time over the course of the last three months is a patent case of laches.

### 3. Met provided knowingly inaccurate information to Class Members in an apparent attempt to drum up opposition.

Since filing its response to Met's Letter, Class Counsel have learned that Met and its counsel sent communications to the Association of Metropolitan Water Agencies (AMWA) alleging that Class Counsel were inappropriately communicating with public water systems. Further, Met and its counsel have been encouraging other water systems to file their own complaints with the Court, and to reach out to Met if they have opted out. Essentially, Met and its counsel have been feverishly occupied with drumming up opposition to the settlement.

The substance of this campaign to undermine the settlement is detailed below:

Colleagues,

I trust this letter finds you well. The Association of Metropolitan Water Agencies (AMWA) is writing to inform you about a situation related to the Metropolitan Water District (Metropolitan) of Southern California and the DuPont Settlement.

Metropolitan opted out of the DuPont Settlement and later received an email from Class Counsel. This email was considered inappropriate as it was addressed to an individual employee --- neither the utility nor the attorney for Metropolitan.

AMWA highly suggests that if you or your utility have been contacted in a manner you consider inappropriate, to connect with Metropolitan or file your own complaint with the Court. As well, Metropolitan would like any other AMWA members who have opted out, to contact their *Senior Deputy General Counsel,* Jill Teraoka, at JTeraoka@mwdh2o.com.

Also, a reminder that if your utility opted out of this settlement, you could withdraw those requests by **Friday, March 1ˢᵗ**. To read further access AMWA's Monday Morning Briefing article here.

If you have any questions or concerns, do not hesitate to contact Erica Brown, AMWA's Chief Policy and Strategy Officer at 202-505-1023 or brown@amwa.net.

Sincerely,

Tom Dobbins CAE
Chief Executive Officer
Association of Metropolitan Water Agencies
Dobbins@amwa.net
202.505.3150
www.amwa.net

This communication[43] was sent out *after* Class Counsel filed its response letter making clear that its communication was *not* an improper email correspondence as the above suggests, but rather a Court-approved Supplemental Notice. Moreover, the communication directed water providers to contact Ms. Teraoka if they opted out. Ms. Teraoka, as Deputy General Counsel for Met, surely was aware that the communication that went to Class Members from the Court-appointed Notice Administrator was a Court-approved Supplemental Notice. As such, Ms. Teraoka is aware of her part in this unethical and inaccurate correspondence. Nowhere does the communication explain that Class Counsel provided the Supplement Notice pursuant to Court Order. Moreover, the communication itself likewise borders on malicious interference with a contract. Met's bad faith in its interactions with both Class Counsel and the Court are unconscionable.

**B. Met and Marten Law Both Have a History of Abuse of this Judicial Process**

    **1. Marten Law abused the Objection process and burdened the Court and parties with needlessly duplicative filings.**

---

[43] Contents of email from Association of Metropolitan Water Agencies to Members of AMWA regarding DuPont Settlement Opt Out Update & Extension, attached to London Dec. as Ex. D.

Additionally, Mr. Kray's Objections have largely wasted the parties' and the Court's time and resources. With respect to the DuPont Settlement, of the mere 23 Objections filed, 17 of them were filed by Mr. Kray's firm, and those Objections consisted almost entirely of a cut-and-paste job, with many but not all arguments appearing verbatim or virtually verbatim.[44]

**2.  Marten Law has broadcast misinformation regarding the Settlements.**

Mr. Kray's firm has been responsible for significant misinformation as it pertains to these matters. As the Court may recall, in one Marten Law slide show presentation, for example, the firm displayed a scale, with one side representing "what you get" and the other side representing "what you give up." The thrust of the slide, depicted below, is that the settlement is essentially all cost and no benefit. It is difficult to imagine a more blatant distortion of the Settlement.



**3.      Marten Law has repeatedly advanced frivolous arguments.**

Moreover, Mr. Kray has repeatedly taken frivolous positions before this Court, including, for example arguing that a bellwether trial is mandatory before any settlement can be secured,[45] or taking the totally unsupported position that an absence of objections does not suggest widespread approval

---

[44] *See* Class Counsel's Memorandum of Law in Support of Class Counsel's Motion for Final Approval of Class Settlement, for Final Certification of the Settlement Class, and in Response to Objections [ECF No. 4080-1], at 62, 65-67.

[45] *See e.g.,* Objection of City of Vancouver [ECF No. 3961], at 27-29 (arguing that the lack of a bellwether trial renders the 3M settlement unfair and inadequate).

of a settlement by class members.[46] Countless hours of briefing and research were expended responding to these baseless arguments.

### 4. Met repeatedly acts in bad faith, while purporting to support the settlement.

Met represents a tiny fraction of one percent of the Settlement Class, yet it has filed an appeal to the Fourth Circuit over an Objection that it abandoned and no longer has standing to pursue. Moreover, the same Objection has been thoroughly addressed in written filings, and Mr. Kray could have raised the specific Objection at issue at the hearing but did not. Met did not move for reconsideration or seek other relief until too late. Its appeal, which it has no standing to pursue, will not benefit Met or any other Class Member. Finally, as noted above, Met's proposed modification to the Settlement Agreement is moot given that § 9.7.3 makes clear that Met is not bound by the Settlement Agreement in any event.[47]

Rather, it will only delay the distribution of billions of dollars to thousands of water providers serving drinking water to millions of Americans whose health and well-being hang in the balance as an impending 2024, federally imposed regulation looms. It has been said that the PFAS catastrophe is one of the worst man-made environmental disaster ever,  and it is notable that this single entity stands in the way of a settlement that will provide relief across the United States — and all over a

---

[46] *See* Reply in Support of Objections [ECF No. 4346], at 2 n.2 (arguing that despite a paucity of Objections to the 3M settlement, Class Counsel's argument that the overall reaction to the settlement was favorable constitutes a "thin reed"). This is a completely baseless argument.

[47] *See* Settlement Agreement at § 9.7.3 ("Any person that submits a timely and valid Request for Exclusion shall not *** (iv) be entitled to submit an Objection."). *See also Newberg and Rubenstein on Class Actions* § 13:22 (6th ed.) ("class members who opt out of the settlement are no longer class members and hence, by opting out of the class, lose the standing to object conferred by Rule 23 upon class members."); *Harper v. C.R. England, Inc*., 746 F. App'x 712, 718 (10th Cir. 2018) ("Opted-out class members lack standing to object to a settlement."); *Jenson v. Cont'l Fin. Corp*., 591 F.2d 477, 482 n.7, (8th Cir. 1979) ("Opt-outs … are not members of the class and hence are not entitled to the protection of Rule 23(e)); *Mayfield v. Barr,* 985 F.2d 1090, 1093 (D.C. Cir. 1993) ("[t]hose who are not class members, because they are outside the definition of the class or have opted out," lack standing to object to class settlement). *Accord Doe v. Pub. Citizen,* 749 F.3d 246, 257 (4th Cir. 2014) ("as a general rule, only named parties to the case in the district court and those permitted to intervene may appeal an adverse order or judgment.") citing *Marino v. Ortiz,* 484 U.S. 301, 304 (1988).

single sentence that has been reviewed and re-reviewed by the Court and multiple other parties.[48] Holding public funds for ransom by filing an exceedingly untimely motion --- after imposing a unilateral deadline of 6 pm on a Sunday for a response --- and a frivolous appeal is the epitome of vexatious and unreasonable behavior. Worse still, Marten Law's tactics are delaying its own clients' receipt of their settlement funds. Continuing to represent Met in the face of such material conflicts further evidences counsel's bad faith.

Finally, Class Counsel strongly suspect that Mr. Kray is acting behind the scenes with respect to Met's recent actions, and in order to facilitate this Court's future ability to obtain a complete record on such matters, request that the Court direct that both Met's in-house counsel, and Marten Law, preserve all communications between them concerning the current motion to intervene, the Met Letter, and the appeal, in addition to all drafts of same.[49]

## C.    This Court has both inherent and statutory authority to sanction counsel for abusive or unreasonable behavior in proceedings occurring before the Court.

"District courts have the inherent power to control the judicial process and to redress conduct that abuses that process." *Reaves v. Washington*, 2023 U.S. Dist. LEXIS 234036, *12 (D.S.C. 2023) (citing *Silvestri v. General Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001)). "When a litigant demonstrates a 'continuous abuse of the judicial process by filing meritless and repetitive actions,' a court is authorized to exercise its authority to employ appropriate sanctions on that litigant." *Id.* (citing *Cromer v. Kraft Foods N. Am. Inc.* 390 F.3d 812, 818 (4th Cir. 2004)); *see also, RLM*

---

[48] In related instances, the Fourth Circuit takes into consideration the fact that a singular objection is intended to disrupt broad class relief. *See, e.g.*, *Berry v. Schulman*, 807 F.3d 600, 618-19 (4th Cir. 2015) (affirming fee award by noting, "Finally, the fact that only one of the approximately 200 million members of the (b)(2) Class objects to the award of attorneys' fees is relevant to our decision.").

[49] Class Counsel believe they have a good-faith basis to make this request as the draft motion provided on Sunday by Met's counsel, Ms. Teraoka, was wiped clean of any and all metadata, making it impossible to determine its origin, raising questions as to why Met would have taken such care to erase any indication of its provenance.

*Communs. Inc. v. Tuschen*, 2015 U.S. Dist. LEXIS 35016, *11 (E.D.N.C 2015) (holding that a "primary aspect of that discretion is the ability to fashion an appropriate sanction for conduct which abuses the judicial process.") (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991)).

In addition to its inherent authority, 28 U.S.C. § 1927 provides that "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." "Section 1927 addresses a narrower field of conduct than that which may be addressed under the court's inherent authority because § 1927 permits sanctions only for bad-faith conduct that wrongfully multiplies proceedings." *Six v. Generations Fed. Credit Union*, 891 F.3d 508, 520 (4th Cir. 2018); *see also Estate of Valentine by and through Grate v. South Carolina*, No. 18-895, 2022 WL 943062, at *17 (D.S.C. March 29, 2022)."The focus of § 1927 is on the attorney's conduct of the litigation, rather than on the merits.*" Continental Casualty Co. v. McCabe Trotter & Beverly, P.C.,* No. 21-1849, 2021 WL 3811383, at *4 (D.S.C. Aug. 26, 2021) (citing *DeBauche v. Trani*, 191 F.3d 499, 511–12 (4th Cir. 1999)). "In both the court's [inherent] authority to impose sanctions and in Section 1927, is an element of bad faith." *Harvey v. Cable News Network, Inc*., 48 F.4th 257, 276 (4th Cir. 2022).

Given Met's continued abuses of the judicial process by filing false, slanderous, meritless, and vexatious conduct, the imposition of sanctions is appropriate. Met and its counsel have unreasonably and repeatedly imposed on Class Counsel and the Court  to respond to recurrent and repetitive harangues.  Where, as here, counsel engage in a subterfuge amounting to unreasonable bad faith behavior which threatens to disrupt an historic nationwide settlement based on the whims of a Class Member that opted out of the settlement and lacks standing to appeal therefrom, a sanction of the most severe nature to satisfy personally the excess costs, expenses and attorneys' fees reasonably incurred because of such conduct is warranted.

18

### D. The Court should revoke the *pro hac* vice admission of Mr. Kray, those in his law firm and Ms. Scully.[50]

Mr. Kray filed his Notice of Appearance on behalf of Met on November 10, 2023.[51] A lawyer admitted to practice law in the State of Washington, Mr. Kray appeared *pro hac vice* as counsel to multiple objectors, including Met, in this case.[52] Ms. Scully put in a Notice of Appearance in this case on February 23, 2024, the same exact day Met's letter was filed.[53]

The ability to appear pro hac vice is a privilege, not a right, "the granting of which is a matter of grace resting in the sound discretion of the presiding judge." *Thomas v. Cassidy*, 249 F.2d 91, 92 (4th Cir. 1957). Thus, "the decision on whether to grant pro hac vice status to an out-of-state lawyer is purely discretionary." *Supreme Court of New Hampshire v. Piper*, 470 U.S. 274, 277 n.2 (1985) (citing *Leis v. Flynt*, 439 U.S. 438, 442 (1979) (per curiam)); *Ginsburg v. Kovrak*, 139 A.2d 889, 892 (1958) ("The practice of law is not open to all and sundry, nor is it an inherent or vested right. It is a personal privilege subject to exacting tests as to moral character and mental grasp of legal principles.").

Once admitted, the court may revoke an attorney's status so long as the court articulates specific grounds to the attorney regarding the possibility of revocation prior to revoking his status.

*A1 Procurement, LLC v. Thermcor, Inc.*, 2015 U.S. Dist. LEXIS 174898, *14 (E.D. Va. Nov. 18, 2015), report and recommendation adopted in part, No. 2:15CV015, 2016 WL 184397 (E.D. Va. Jan. 15, 2016). "There are many reasons that revocation [of pro hac admission] might be appropriate, including violations of applicable rules of professional conduct, fraud, lack of candor with the court, or competence or character issues." *Williams v. Ests. LLC*, No. 1:19-CV-1076, 2022 WL 17450894,

---

[50] Ms. Teraoka has never filed an appearance in this MDL and should not be permitted to in the future.
[51] Notice of Appearance of Jeff B. Kray [ECF 3948].
[52] *See* Preliminary Approval Order [*Camden* ECF 33], ¶ 22 ("An attorney asserting objections on behalf of a Settlement Class Member must…file a notice of appearance").
[53] Notice of Appearance of Marcia Louise Scully [ECF No. 4538].

at *1 (M.D.N.C. Dec. 6, 2022). A district court has discretion to revoke an attorney's pro hac vice privilege so long as counsel is provided notice and an opportunity to respond. *A1 Procurement, LLC v. Thermcor, Inc*., No. 2:15-CV-15, 2015 WL 13733927, at *5 (E.D. Va. Nov. 18, 2015). *See also Collins*, 920 F.2d at 626 (noting that a full-scale hearing is not always necessary to revoke *pro hac vice* admission so long as counsel has notice and an opportunity to respond).

Counsel admitted *pro hac vice* "should not be disqualified 'under standards and procedures any different or more stringent than those imposed upon regular members of the district court bar.'" *Belue v. Leventhal*, 640 F.3d 567, 576 (4th Cir. 2011). Local Rule 83.1.08 sets forth the Rules of Disciplinary Enforcement ("Disciplinary Rules") for counsel, including those admitted *pro hac vice*. Rule IV of the Disciplinary Rules provides:

> For misconduct defined in these rules, and for good cause shown, and after notice and opportunity to be heard, any attorney admitted to practice before this court may be disbarred, suspended from practice before this court for a definite time, fined, and/or reprimanded, either publicly or privately, or subjected to other disciplinary action as the circumstances may warrant.

D.S.C. Local Rule 83.1.08, § IV. Misconduct includes:

> (1) Violation of any provision of the oath of office taken upon admission to the practice of law. (2) Violation of any provision of the South Carolina Rules of Professional Conduct as adopted by this court. (3) Commission of a crime involving moral turpitude. (4) Conduct tending to pollute or obstruct the administration of justice or to bring the courts or the legal profession into disrepute. (5) Conduct demonstrating a lack of professional competence in the practice of law. (6) Conduct tending to obstruct the court's disciplinary investigation. (7) Conduct constituting a serious crime as defined in RDE I(B). (8) Conduct violating applicable rules of professional conduct of another jurisdiction.

*Id.* Mr. Kray and Ms. Scully have engaged in misconduct as defined in, *inter alia,* subparagraphs (2), (4), and (5). Accordingly, their admission to practice before this Court should be revoked and/or denied.

**1. Mr. Kray and Ms. Scully have violated the duty of candor.**

Rule 3.3 of the South Carolina Rules of Professional Conduct provides, in pertinent part:

(a) A lawyer shall not knowingly:

(1) make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer;

\*\*\*

(3) offer evidence that the lawyer knows to be false. If a lawyer, the lawyer's client, or a witness called by the lawyer, has offered material evidence and the lawyer comes to know of its falsity, the lawyer shall take reasonable remedial measures, including, if necessary, disclosure to the tribunal. A lawyer may refuse to offer evidence, other than the testimony of a defendant in a criminal matter, that the lawyer reasonably believes is false.

(b) A lawyer who represents a client in an adjudicative proceeding and who knows that a person intends to engage, is engaging or has engaged in criminal or fraudulent conduct related to the proceeding shall take reasonable remedial measures, including, if necessary, disclosure to the tribunal.

S.C. App. Ct. R. 3.3.

As reflected above, Marten Law and Met's in-house counsel have taken frivolous positions before this Court, submitted false evidence through copying and pasting with respect to Objections, lied to the Court when representing that Marten Law's clients supported the settlement, withdrawing the Met Objection and then lying in wait until after final approval and judgment was entered to seek to revive it through intervention in order to avoid this Court's oversight, engaging in misinformation campaigns, and creating a fictious distance between themselves in an effort to make it appear as though Mr. Kray is not continuing to take discordant positions before this Court.

Courts have revoked *pro hac vice* admissions for similar misconduct and misrepresentations to the tribunal. For example, in *La Michoacana Nat., LLC v. Maestre*, 611 F. Supp. 3d 87, 89 (W.D.N.C. 2020), the court moved to *sua sponte* revoke plaintiffs' counsel's *pro hac vice* status in a trademark infringement case, because the attorney "misled the Court to believe that [*pro se* defendants] never responded to Plaintiff's requests for admission and procured judgment in Plaintiff's

21

favor on that falsehood, made misrepresentations to the Court regarding the contents of a package he received from Defendants, and engaged in unprofessional conduct towards third parties and Defendants." *Id*. The court noted, "revocation of Anderson's pro hac vice admission is warranted not only because of his violations of his duty of candor, but also because of his unprofessional conduct surrounding the preliminary injunction hearing." *Id.*

The duty of candor extends to accurately presenting the law and the facts of the case to the Court. For example, in *Baily v. Bernzomatic*, No. 16-cv-7548, 2019 WL 410419 (N.D. Ill. Feb. 1, 2019), the court revoked an attorney's *pro hac vice* admission, concluding that the attorney in question had made false statements, lied about facts to the court, and misstated the court's orders, and therefore revocation of the attorney's *pro hac* vice admission was necessary to preserve the integrity of the proceedings and to prevent further falsehoods. After initially imposing a lesser sanction (disclosure of the admonishment in future pro hac vice applications in N.D. Ill.), the attorney made additional false statements to the court and to other courts and "cannot be trusted to accurately present the facts and law in this case." *Id. See also Ryan v. Astra Tech, Inc*., 772 F.3d 50, 52 (1st Cir. 2014) (affirming the district court's decision to revoke an attorney's pro hac vice admission where the attorney lied to the court). Given the ample evidence of dishonesty and lack of candor, the pro hac vice admission of Mr. Kray and his law firm and Ms. Scully should be revoked and any attempt by Met's in-house counsel to appear be denied.

### 2. Mr. Kray and Ms. Scully have engaged in unprofessional conduct "tending to pollute or obstruct the administration of justice."

Rule IV of the Disciplinary Rules defines misconduct to include "[c]onduct tending to pollute or obstruct the administration of justice," which is exactly the gamesmanship in which Mr. Kray and Met have engaged. The parties have reached a historical settlement to remediate an emergent public health crisis. Class members have nearly unanimously demonstrated their support for it. Yet Mr. Kray and Met have engaged in tactics intended to destroy the settlement and obstruct the

22

administration of justice. Their gamesmanship is outside the bounds of Rule 23 of the Federal Rules of Civil Procedure — both inside and outside the courtroom.

Just by way of example, inside the courtroom, Met sat on its hands while Mr. Kray advised the Court at the Fairness Hearing that his clients (including Met) supported the Settlement.[54] Met then waited until *after* this Court entered final judgment to attempt to revive its Objection through intervention — through Ms. Teraoka, and with Mr. Kray's support. There is no basis in Rule 23 (governing the process for objecting to a settlement) or Rule 24 (governing intervention) that permits a class member to withdraw its Objection to the settlement, lie in wait for the Court to enter final approval and judgment, and then seek to intervene to revive its withdrawn Objections. Such tactics are dishonest, disingenuous and intended to obstruct this Court's administration of justice.

Outside the courtroom, notwithstanding the abundance of case law prohibiting communications seeking opt outs or discouraging class member participation,[55] Met did just that,

---

[54] Tr. of Fairness H'ring of the DuPont Settlement, *City of Camden v. DuPont, et al*. (Dec. 14, 2023), at 89:7-90:6.

[55] "[A] district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." *Brewer v. Holder*, No. 08-cv-1747, 2013 U.S. Dist. LEXIS 206556, 2013 WL 12399110, at *2 (D.D.C. Aug. 9. 2013) (quoting Bernard, 452 U.S. at 99). Thus, courts will order parties to issue corrective notice when ex parte communications "may have created confusion" or "dissuaded potential class members from joining th[e] litigation." *Mueller*, 2018 WL 1898557, at *8 (ordering new notice to 573 potential class members). *See also Marino v. CACafe, Inc*., No. 16-cv-6291, 2017 U.S. Dist. LEXIS 64947, 2017 WL 1540717, *2 (N.D. Cal. Apr. 28, 2017) (noting that corrective notice is appropriate after ex parte communications seeking opt-outs); *Stransky v. HealthONE of Denver, Inc*., 929 F. Supp. 2d 1100, 1110 (D. Co. 2013) (requiring defendant to compile list of FLSA plaintiffs who were subjected to Defendant's misleading communication so that court-prepared corrective notice could be sent to plaintiffs); *Belt v. Emcare, Inc*., 299 F. Supp 2d 664, 669-70 (E.D. Tex. 2003) (requiring court-prepared corrective notice be sent on defendant's letterhead that provided information to correct defendant's previous misleading information); *Guilfu Li v. A Perfect Day Franchise*, 270 F.R.D. 509, 518 (N.D. Cal. 2010) (invalidating all opt-out forms in FLSA action after Defendant provided opt-out forms at meetings and told employees that if they participated in the lawsuit they would not receive any money, would be fired, and would be unable to work anywhere else due to their "permanent record"); *Romano v. SLS Residential Inc*., 253 F.R.D. 292, 295-300 (S.D.N.Y. 2008) (finding that voiding opt-outs and having corrective notice sent was only way to correct Defendants actions and give members an opportunity to make an informed decision after Defendant called several plaintiffs and told them that their mental health records would be made public if they did not

sending out communications to the Association of Metropolitan Water Agencies (AMWA), and drumming up opposition to the settlement.[56]

Mr. Kray and Met's in-house counsel have demonstrated utter contempt for this Court's oversight and administration of this complex MDL generally, and the class action settlement process specifically. Lack of respect for the judicial process alone should result in the revocation of their privilege to practice before this court. *See A1 Procurement, LLC v. Thermcor*, Inc., No. 2:15-cv-15, 2015 WL 13733927, at *4, 2015 U.S. Dist. LEXIS 174898, at *14 (identifying unprofessional conduct as a ground for revocation of pro hac vice admission); *Robles v. In the Name of Human., We REFUSE to Accept a Fascist Am*., No. 17-CV-04864-CW, 2018 WL 2329728, at *5 (N.D. Cal. May 23, 2018), *aff'd sub nom. Robles v. City of Berkeley*, 820 F. App'x 529 (9th Cir. 2020) (revoking an attorney's PHV where he had "demonstrated 'a pattern of disregard for local rules, ethics, and decorum; and he has demonstrated a lack of respect for the judicial process,' which justifies revoking his pro hac vice admission.").

### 3. Mr. Kray's attempt to work behind the scenes of Ms. Teraoka, and her allowance of the theatre, are grounds for pro hac vice revocation.

Rule 8.4(a) of the South Carolina Rules of Professional Conduct provides:

> It is professional misconduct for a lawyer to:
>
> **(E)** violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another; ….

Courts reflect harshly on attorneys who orchestrate misconduct by their clients or behind the scenes.

*See, e.g*., *Blauinsel Stiftung v. Sumitomo Corp*., No. 99-cv-1108, 2001 U.S. Dist. LEXIS 20746, *28

---

opt-out of the action); *Impervious Paint Industries, Inc. v. Ashland Oil*, 508 F. Supp. 720, 723-24 (W.D. Ky. 1981) (finding all opt-out class members who were contacted by the defendant "must be restored to the class and must be sent a special notice setting forth [the court's] finding of impropriety on [the defendant's] part" where court could not determine if the "class members made a free and unfettered decision").

[56] *See* §A.3, *supra*.

(S.D.N.Y. Dec. 12, 2001) (imposing sanctions on attorney for his client's discovery misconduct where the attorney "play[ed] a key role by orchestrating much of the misconduct described above, but also on numerous occasions he made false representations to this court and to Defendants."); *In re Hill*, 377 B.R. 8, 11 (Bankr. D. Conn. Oct. 23, 2007) (imposing sanctions on attorney where the clients' "misconduct was joined in and/or orchestrated by their attorney").

Here, Mr. Kray has picked up the playbook of an unethical serial objector, Christopher Bandas, a lawyer who appeared on behalf of objectors in numerous MDLs. Bandas' troubling history of misrepresentations and misconduct before MDL courts is outlined at *In re Valeant Pharms. Int'l, Inc. Sec. Litig.*, No. 15-7658, 2020 U.S. Dist. LEXIS 240069, *34-*39, 2020 WL 7585741 (D.N.J. Dec. 21, 2020). That history alone resulted in Bandas individually being denied pro hac vice admission or having his pro hac vice admission revoked in multiple cases. *Id.*

But then, after his misconduct had been revealed, Bandas hired other lawyers to appear in courts and make the arguments from which he was precluded. When courts discovered that Bandas was using third-party lawyers to appear where he could not do so directly, courts revoked or denied pro hac vice admission to the third-party lawyers. *In In re Valeant Pharms. Int'l, Inc. Sec. Litig.*, 2020 WL 7585741, at *38-*42 (denying pro hac vice motion from counsel Robert W. Clore, a new hire for the Bandas Firm, who failed to disclose relevant information about the Bandas firm in his application, and finding "the application to be part of a troubling pattern perpetrated by the Bandas Firm in which 'Bandas has taken to working behind the scenes through another attorney, such as Clore.'"). *See also Cole et al. v. NIBCO, Inc.*, No. 3:13-cv-7871 (D.N.J. Apr. 5, 2019), ECF 223 (denying the pro hac vice motion of Bandas and Robert Clore based in part on the fact that "Mr. Bandas deliberately concealed his role in representing [another attorney] as an objector in *In re Kitec Plumbing System Prods. Liab. Litig.*, Case No. 09-md2098-F (N.D. Tex.) (Pl.'s 4/5/2019 letter;

Docket Entry No. 212).").[57]

The exact same analysis and situation applies here. Mr. Kray stood before this Court and represented that his clients did not oppose the settlement.[58] Met withdrew its Objection and exercised its right to opt-out. Then, on a Saturday afternoon, after final approval was entered, Met's in-house counsel Ms. Teraoka contacted Class Counsel to meet and confer, seeking to intervene in the litigation for purposes of reviving its withdrawn objection and appealing final judgment.[59]

Again, concerned because Met had just accused Class Counsel of communicating with represented Class members through Court-approved notice,[60] Class Counsel contacted Mr. Kray and asked him if he still represented Met.[61] Mr. Kray affirmed that he still represented Met, but advised that Class Counsel should communicate directly with Met's in-house counsel, Ms. Teraoka, for purposes of the intervention and appellate issue.[62] He clearly did so because of his earlier representation to the Court that his client *did not* oppose the settlement.[63] But Mr. Kray cannot use Ms. Teraoka as his puppet to do what he cannot do, nor should Ms. Teraoka (or any other lawyer for Met) be able to carry out Mr. Kray's dishonesty. *In re Valeant*, 2020 U.S. Dist. LEXIS 240069, *41 (denying pro hac vice application of Bandas' colleague where "[i]t is too apparent that the application is part of a pattern that the Bandas Firm has established and which Clore, wittingly or unwittingly, is perpetuating.").

Whether directly through Mr. Kray or indirectly through Ms. Teraoka and/or Ms. Scully (and its other in- house counsel), Mr. Kray has engaged in dishonesty before this Court and is needlessly

---

[57] Letter Order, attached to London as Ex. E.
[58] Tr. of Fairness H'ring of the DuPont Settlement, *City of Camden v. DuPont, et al*. (Dec. 14, 2023), at 89:7-90:6.
[59] Ex. A.
[60] Feb. 23, 2024, Letter from Ms. Scully to the Court [ECF No. 4539]
[61] Ex. B.
[62] *Id.*
[63] Tr. of Fairness H'ring of the DuPont Settlement, *City of Camden v. DuPont, et al*. (Dec. 14, 2023), at 89:7-90:6.

and vexatiously multiplying these proceedings without basis and outside the rules of procedure. Accordingly, Mr. Kray's *pro hac vice* admission should be revoked and that of Ms. Teraoka's and Ms. Scully's (or any other lawyer for Met) should be denied. *A1 Procurement, LLC,* 2015 WL 13733927, at *4 ("This Court finds that even if there is not one bold ground to revoke an attorney's pro hac vice admission, the Court has the discretion to revoke an attorney's pro hac vice status based on the combined effect of an attorney's misconduct and disregard for the Local Rules, so long as the attorney is provided due process.").

### E.    The Objection and Basis for Intervention is Speculative and the Prejudice to the Existing Parties is Substantial.

Met claims that the reason that it seeks to intervene is that the scope of the release has the potential to adversely affect a potential right and/or claim it may have in the future and bar it from pursuing that speculative claim should such a claim arise.[64] It argues that it may intervene as of right because it possesses a "significantly protectable interest," citing *Teague v Bakker*, 931 F. 2d 259, 261 (4th Cir 1991). But Met identifies no actual claim or protectable interest. It's purely hypothetical. Nor does Met even offer a hypothetical set of facts the release language could adversely affect. Its entire argument is based on an ill-defined hypothetical and therefore entirely speculative.

In fact, the likelihood of such a claim actually diminishes over time, as the primary chemicals PFOA and PFOS at issue have been banned for years. In other words, Met seeks to revive a previously abandoned Objection so that it can appeal the spurious argument that somehow the current release provision could adversely affect a yet-to-be-defined claim, that is less and less likely to occur, the result of which, if allowed, would delay distribution of  much needed settlement funds to thousands of Class Members to help provide PFAS-free water to millions of Americans. In effect, Met's eleventh-hour effort to intervene is, to use the Court's very own words, an exercise in "dancing

---

[64] Memo, at 4-5.

27

angels on the head of a pin"[65] — an intellectual exercise with real-world and very serious consequences for the public health. As even Met acknowledges in its motion,[66] the Court may consider the prejudice and resulting delay might cause the existing parties." *Gould v. Alleco, Inc*., 883 F.2d 281, 286 (4th Cir. 1989). If ever there was a case in which a delay would cause prejudice to the existing parties, this is surely it. Millions will be affected. Treatment of what the EPA has determined is a cancer-causing chemical delayed for potentially years. It is also worth pointing out that under the terms of the Settlement Agreement, the deadline to submit Claims Forms is not even established until there is an Effective Date for the Settlement,[67] which only happens once the Final Judgment becomes non-appealable,[68] which now it cannot. Thus, as a practical matter, the allocation of the funds is now permanently on pause, which will likely cause millions of Americans to continue to drink PFAS-contaminated water for longer than they would otherwise have to.

Nor should the Court be asked to provide an improper advisory opinion on a hypothetical issue for an opt-out, like Met. As the Court indicated at the DuPont Fairness Hearing in dealing with this very issue, albeit in the context of the 3M Settlement, such an issue would not be ripe for any court unless and until an actual claim was made, and DuPont asserted the subject release as a defense. It should not go unnoted that in such an event Met has both private counsel and a large in-house legal department. But absent the ability to articulate an actual claim now, or even posit a hypothetical set of facts in which a significantly protectable interest is actually at risk, the instant motion to intervene is entirely speculative and unreasonably presented.

---

[65] Tr. of Fairness H'ring of the DuPont Settlement, *City of Camden v. DuPont, et al*. (Dec. 14, 2023), at 96:25-98:8.
[66] Memo at 4.
[67] Settlement Agreement, at §§ 2.9, 2.17, 2.23, 3.3, Exhibit C (Allocation Procedures), at 1, Exhibit E (Notice), at 18.
[68] Settlement Agreement, at § 2.23.

## CONCLUSION

For all the foregoing reasons, Class Counsel respectfully requests that the Court set a sanctions hearing and require that that Mr. Kray, Ms. Scully and Ms. Teraoka be required to appear in person before the Court in order for the Court to consider Class Counsel's request that sanctions issue and/or the *pro hac vice* admission of both Mr. Kray and Ms. Scully be revoked and/or the motion to intervene stricken.

Dated: March 15, 2024                            Respectfully Submitted,

<div style="margin-left:40%">

s/ Paul J. Napoli
Paul J. Napoli
Napoli Shkolnik
1302 Avenida Ponce de León
San Juan, Puerto Rico 00907
Tel: (833) 271-4502
Fax: (646) 843-7603
pnapoli@nsprlaw.com

s/ Michael A. London
Michael A. London
Douglas and London P.C.
59 Maiden Lane, 6th Floor
New York, NY 10038
212-566-7500
212-566-7501 (fax)
mlondon@douglasandlondon.com

s/ Scott Summy
Scott Summy
Baron & Budd, P.C.
3102 Oak Lawn Avenue, Suite 1100
Dallas, TX 75219
214-521-3605
ssummy@baronbudd.com

s/ Elizabeth A. Fegan
Elizabeth A. Fegan
Fegan Scott LLC
150 S. Wacker Dr., 24th Floor
Chicago, IL 60606
312-741-1019
beth@feganscott.com

</div>

<u>s/ Joseph F. Rice</u>
Joseph F. Rice
Motley Rice
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
jrice@motleyrice.com

*Class Counsel*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing was electronically filed with this Court's CM/ECF on this 15th day of March, 2024 and was thus served electronically upon counsel of record.

<u>s/ Andrew Croner</u>
Andrew Croner
Napoli Shkolnik
360 Lexington Avenue, 11th Fl.
New York, New York 10017
(212) 397-1000
acroner@napolilaw.com