# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| IN RE: AQUEOUS FILM-FORMING FOAMS PRODUCTS LIABILITY LITIGATION | ) ) | Master Docket No.: 2:18-mn-2873-RMG |

| | | |
|---|---|---|
| | ) | |
| CITY OF CAMDEN, et al., | ) ) | Civil Action No.: 2:23-cv-03230-RMG |
| *Plaintiffs,* | ) ) | |
| -vs- | ) ) | |
| E.I. DUPONT DE NEMOURS AND COMPANY (n/k/a EIDP, Inc.), et al. | ) ) ) | |
| *Defendants.* | ) ) | |

## CLASS COUNSEL'S MEMORANDUM IN RESPONSE TO METROPOLITAN WATER DISTRICT OF SOUTHERN CALIFORNIA'S MOTION TO INTERVENE FOR LIMITED PURPOSE OF FILING AN APPEAL

## **<u>Table of Contents</u>**

**INTRODUCTION** ................................................................................................... 1

**BACKGROUND** ..................................................................................................... 2

**ARGUMENT** .......................................................................................................... 7

    **A.  Met's motion is not timely.** .................................................................. 9

        **1.  This suit has progressed to near finality.** ................................ 9

        **2.  The Parties will be prejudiced by delay of intervention.** ......... 11

        **3.  Met cannot justify the timing of its motion.** ............................ 12

    **B.  Met waived any interest in the litigation by opting out.** .................... 13

    **C.  Met's interests are adequately represented by the existing parties.** ........... 14

    **D.  The language Met wants is already in the Settlement Agreement.** ............ 15

    **E.  Fed. R. Civ. P. 62.1 (a)(3) Permits the Court to Issue an Indicative Ruling.** ............. 16

**CONCLUSION** ..................................................................................................... 17

# Table of Authorities

## Cases

*Alaniz v. Tillie Lewis Foods*, 572 F.2d 657 (9th Cir. 1978)). ....................................................... 12

*Alt v. U.S. E.P.A.*, 758 F.3d 588 (4th Cir. 2014)........................................................................ 9

*Associated Builders & Contractors, Inc. v. Herman*, 166 F.3d 1248 (D.C. Cir. 1999)............... 13

*Com. of Va. v. Westinghouse Elec. Corp.*, 542 F.2d 214 (C.A. Va. 1976) ................................... 15

*Doe v. Pub. Citizen,* 749 F.3d 246 (4th Cir. 2014) ................................................................. 1, 10

*Gould v. Alleco, Inc.*, 883 F.2d 281 (4th Cir. 1989) ........................................................... 9-10, 13

*Harper v. C.R. England, Inc.,* 746 F. App'x 712 (10th Cir. 2018) ........................................... 2, 10

*Hill v. Western Elec. Co., Inc.*, 672 F.2d 381 (4th Cir. 1982) ................................................. 12-13

*In re MI Windows & Doors, Inc., Prod. Liab. Litig.,* 860 F.3d 218 (4th Cir. 2017) ............. 10, 15

*In re Volkswagen "Clean Diesel" Marketing, Sales Practices and Prods. Liab. Litig.*, 2018 WL 1588012 (N.D. Cal. 2018)........................................................................................................ 4

*In re WorldCom, Inc.*, 347 B.R. 123 (S.D.N.Y. 2006) ................................................................. 3

*Jenson v. Cont'l Fin. Corp.*, 591 F.2d 477 (8th Cir. 1979) ......................................................... 10

*Marino v. Ortiz,* 484 U.S. 301 (1988)......................................................................................... 10

*Matsushita Elec. Indus. Co., Ltd. v. Epstein*, 516 U.S. 367 (1996) ............................................. 15

*Mayfield v. Barr,* 985 F.2d 1090 (D.C. Cir. 1993) ...................................................................... 10

*NAACP v. New York*, 413 U.S. 345 (1973)................................................................................. 13

*Precision Assocs. v. Panalpina World Transp. (Holding)* LTD, 08-CV-00042, 2012 U.S. Dist. LEXIS 137493 (E.D.N.Y. Sept. 25, 2012) ................................................................................. 7

*Scardelletti v. Debarr*, 265 F.3d 195 (4th Cir. 2001) ........................................................... 9, 11-12

*Scott v. Bond*, 734 Fed. Appx. 188 (4th Cir. 2018)............................................................ 9, 12, 14

*Smith v. L.A. Unified Sch. Dist.*, 830 F.3d 843 (9th Cir. 2016) ............................................. 11-12

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc*., 396 F.3d 96 (2d Cir. 2005) ........................................ 3

**<u>Rules</u>**

Fed. R. Civ. 23(b) ........................................................................................................ 10

Fed. R. Civ. 23(e)......................................................................................................... 10

Fed. R. Civ. P. 24(a) ............................................................................................. 1, 8-9, 14

Fed. R. Civ. P. Rule 24(b)......................................................................................... 1, 8-9

Fed. R. Civ. P. 62.1 ...................................................................................................... 16

**<u>Treatises</u>**

*Newberg and Rubenstein on Class Actions* § 13:22 (6th ed.)...................................... 10

Wright & Miller, 7C Fed. Prac. & Proc. Civ. § 1916 (3d ed. 2023)............................. 13

## <u>INTRODUCTION</u>

Class Counsel hereby responds to Metropolitan Water District of Southern California's ("Met") Motion to Intervene for Limited Purpose of Filing an Appeal ("Motion to Intervene") [ECF No. 4660]. In its supporting Memorandum of Law ("Memo of Law") [ECF No. 4660-1], Met states it is moving to intervene to appeal the final approval orders unless the parties to the DuPont Settlement (*i.e.,* the Class and DuPont entities) capitulate to Met's demands.[1] However, prior to filing its Motion to Intervene, Met filed a Notice of Appeal from the Orders finally approving the DuPont Settlement Agreement.[2]

The general rule is that "an effective notice of appeal divests a district court of jurisdiction to entertain an intervention motion." *See Doe v. Public Citizen*, 749 F.3d 246, 258 (4th Cir. 2014). Met has, therefore, perhaps unwittingly, divested the Court of jurisdiction to grant the motion to intervene.

However, should the Court determine that it has jurisdiction to consider the motion to intervene, Class Counsel asks the Court to *deny* Met's Motion to Intervene as Met's arguments that it meets all requirements to intervene under both 24(a)(2) and 24(b) are wildly inaccurate. The motion is untimely; Met waived its ability to challenge the settlement by opting out; its interests are adequately represented by existing parties; and, perhaps most important, the plain language of the Settlement Agreement already provides Met with the legal protection it seeks. Thus, the Motion to Intervene is unfounded and unnecessary, and should be denied.

---

[1] Memo of Law, at 1.
[2] Notice of Appeal [ECF No. 4653].

## BACKGROUND

The DuPont Class Action Settlement ("Settlement Agreement") was filed on July 10, 2023.[3] Section 2.45 of the Settlement Agreement defined "Releasing Parties" broadly to include "anyone in privity with or acting on behalf of" a Settlement Class Member.[4] On August 22, 2023, the Court preliminarily approved the Settlement Agreement.[5] Thereafter, on October 9, 2023, Marten Law LLP wrote a letter to Plaintiffs' Co-Lead Counsel on behalf of Met, raising the breadth of the "Releasing Parties" definition.[6] In response, on October 25, 2023, the parties issued a Joint Interpretive Guidance on Interrelated Drinking-Water Systems.[7] Notwithstanding the Interpretative Guidance's effort to address Met's concerns, on November 10, 2023, Marten Law filed Objections of the Metropolitan Water District of Southern California, challenging the scope of the "Releasing Parties" definition and the Interpretive Guidance document.[8] Met subsequently filed a Request for Exclusion, i.e., an opt out form, on November 30, 2023, which now makes Met an opted out Class Member that is not bound by the Settlement Agreement, and effectively rescinded its pending Objections.[9] Despite Met opting out of the Settlement, other clients represented by Met's counsel, Jeff Kray of Marten Law (who had cut and pasted the identical argument into their other clients' Objections), continued to pursue the same Objection through their papers filed in contemplation of the Final Fairness determination.

---

[3] Settlement Agreement [ECF No. 3393-2].

[4] *Id*. at § 2.45(d).

[5] Preliminary Approval Order [ECF No. 3603].

[6] October 9, 2023, Letter from Marten Law to Co-Class Counsel [ECF No. 3831-2].

[7] Joint Interpretative Guidance [ECF No. 3858-1].

[8] Objections of the Metropolitan Water District of Southern California [ECF No. 3955].

[9] *See* Settlement Agreement at § 9.7.3 ("Any person that submits a timely and valid Request for Exclusion shall not *** (iv) be entitled to submit an Objection."). *See also, Harper v. C.R. England, Inc.,* 746 F. App'x 712, 718 (10th Cir. 2018) ("Opted-out class members lack standing to object to a settlement.").

For example, Marten Law represents the North Texas Municipal Water District ("North Texas"), which submitted an Objection that raises the same issues Met now raises.[10] North Texas challenged the scope of the "Releasing Persons" definition and the Interpretive Guidance — specifically with reference to how the release would apply to wholesalers and retailers.[11] North Texas neither withdrew its Objection nor opted out of the Settlement; its Objections remained live.[12]

Presumably, Marten Law, as Met's attorney of record in these proceedings, surely advised Met, prior to it deciding to opt-out, that Marten Law would continue to pursue the same Objection on behalf of its other clients, or, at least, this information was available to Met by virtue of its access to the Court's docket. It is also presumed that Met was satisfied that Marten Law adequately represented its interests and would continue to pursue its Objections through Marten Law's other clients as Met has never filed a motion to discharge Marten Law, this Court has not issued any order relieving Marten Law of its duties and obligations as counsel to Met, and, therefore, the firm continues to represent Met in these MDL proceedings.[13]

The parties and this Court fully analyzed the Objections posed by Met's counsel on behalf of its remaining objector clients, and others, before overruling those Objections. Class Counsel addressed the "Releasing Parties" Objections with caselaw and argument supporting the propriety of the class release.[14] And the Court engaged Marten Law attorney Jeff Kray in fulsome discussion

---

[10] Objection of City of North Texas Municipal Water District [ECF No. 3960].

[11] *Id*. at 8, 13-17.

[12] *See* note 19, *infra*.

[13] Conspicuous only by Marten Law's absence, Met is represented in its Motion to Intervene by new Counsel, Mitchell C. Tilner of Horvitz & Levy, LLP.

[14] Class Counsel's Memorandum of Law in Support of Class Counsel's Motion for Final Approval of Class Settlement, for Final Certification of the Settlement Class, and in Response to Objections [ECF No. 4080-1], at 80-96 (citing *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc*., 396 F.3d 96, 109 (2d Cir. 2005); *In re WorldCom, Inc*., 347 B.R. 123,156 (S.D.N.Y. 2006); *In re Volkswagen*

3

of the remaining Objections at the December 14, 2023, fairness hearing. Mr. Kray confirmed that he represented objectors who "do not oppose the settlement concept, nor do they object entirely to the settlement with the DuPont defendants."[15] Critically, he did not use his time before the Court to discuss the purported Objection to the "Releasing Parties" definition; in fact, neither Mr. Kray nor any other objector mentioned the scope of the "Releasing Parties" definition in open court. Rather, Mr. Kray and Ms. Ferrell discussed only the release's effect on wastewater claims[16] and "the contribution bar as it relates to the federal government specifically."[17] For the "Releasing Parties" Objection, Mr. Kray stated, "our clients will rely on their papers."[18] These included the Objections raised by North Texas to the application of the release to wholesalers and retailers.[19] One could argue Met and the other clients represented by Marten waived this very specific basis of the Objection since they failed to advance it at oral argument and now in hindsight are seeking to jettison counsel and argue the waived Objection. Such gamesmanship should not be condoned.

Following oral argument, and with the benefit of the parties' and Objectors' written briefs, the Court analyzed and overruled all Objections, issuing a Final Approval Order on February 8, 2024, including a specific discussion on the scope of the "Releasing Parties" definition.[20] Met did not immediately seek reconsideration of the Court's ruling, nor intervention for purposes of doing

---

*"Clean Diesel" Marketing, Sales Practices and Prods. Liab. Litig.*, 2018 WL 1588012, at *8 (N.D. Cal. 2018)).

[15] Tr. of Fairness Hr'ing of the DuPont Settlement, *City of Camden v. DuPont, et al.* (Dec. 14, 2023), at 97:1-6.

[16] *Id*. at 18-24,

[17] *Id*. at 98:1-2.

[18] *Id.* at 98:8-9.

[19] Objection of City of North Texas Municipal Water District [ECF No. 3960].

[20] Order and Opinion [ECF No. 4471], at 29-30.

so. On February 26, 2024, the Court entered the Final Order and Judgment Approving Settlement Agreement and overruled all Objections.[21]

Months after Met opted out, and after having alleged ethical violations against Class Counsel for having the Notice Administrator issued Court-approved and Court-ordered supplemental notice,[22] Met made an about face after having two weeks to mull over the Court's well-reasoned opinion. After all this delay, and after injecting side-show issues, only on Saturday March 9, 2024, did Met decide to change course and attempt to revive its waived Objection, albeit after realizing it lacked standing to do so, having opted out. This led to last weekend's barrage of attacks not by the attorney of record but by the client itself, through its in-house counsel.

On Saturday, March 9, 2024, Ms. Jill Teraoka, Met's Deputy General Counsel, wrote directly to Class Counsel requesting that Class Counsel respond by 6 pm PST on Sunday, March 10th as to whether Class Counsel would agree to "correct the terms of the settlement agreement to provide for compliant opt outs to reserve their rights as to any and all claims they may have now and in the future as to DuPont."[23] The email further asserted that it constituted a meet and confer with respect to a forthcoming motion to intervene, presumably to provide standing to appeal the Final Order and Judgment Approving the Settlement Agreement.[24] Although the law firm Horvitz & Levy[25] filed the current motion to intervene, a draft of the motion was provided by Ms. Teraoka to Class Counsel on Sunday afternoon, which allowed Class Counsel just hours to review it before Met's unilateral Sunday night meet and confer deadline was set to expire.

---

[21] Final Order and Judgment Approving Settlement Agreement [ECF No. 4543-1].

[22] Letter from Met's General Counsel to Court, dated February 23, 2024 [ECF No. 4539].

[23] March 9, 2024, email, from Ms. Teraoka to Class Counsel [ECF No. 4691-3]

[24] *Id*.

[25] Interestingly, Marten Law is absent from the filing, mistakenly suggesting that this law firm can unilaterally, without court order, disappear and walk away from its ethical obligations arising from its formal appearance before this Court.

Following receipt Ms. Teraoka's email, given Met's February 23, 2024, letter to the Court accusing Class Counsel of improper client communications, Class Counsel asked Mr. Kray and Ms. Farrell (1) whether they still represent Met; and (2) whether they would take issue with Class Counsel responding directly to Met.[26] In his response, Mr. Kray indicated that he does continue to represent Met in the MDL but curiously not "for appeal purposes."[27] Mr. Kray purportedly does not represent Met with respect to Met's instant Motion.[28]

Mr. Kray explained that he was aware of the direct communication, and Met's proposed motion and intent to appeal, and that he did *not* object to Class Counsel responding directly to Met.[29] As such, Class Counsel communicated directly with Met over the weekend of March 9-10, and understood Met's position to be an ultimatum that *unless the below proposed redlined changes are made* to the Interpretive Guidance[30] without exception, Met, despite having opted out of the settlement months ago, would appeal its previously-abandoned Objections.

---

[26] March 9, 2024, email from Mr. London to Jeff Kray and Jessica Ferrell [ECF No. 4961-4].

[27] March 9, 2024, email from Mr. Kray to Class Counsel [ECF No. 4691-4].

[28] To be clear, the Marten Law firm, and Mr. Kray and Ms. Ferrell, have not sought to be relieved as counsel of record, nor have they been relieved as counsel, and for all intents and purposes they are attorneys of record in this litigation for Met. This "selective" representation creates a curious scenario in which Mr. Kray and his firm currently represent Met before this Court, but yet disavow any representation of Met with respect to this particular motion. Such a strategy would enable Mr. Kray and his law firm to disavow themselves of anything to do with the present motion to intervene, leaving Met's Deputy General Counsel to face the consequences, if any, including, for example, Class Counsel's pending motion for sanctions. While it is certainly understandable that counsel may hire appellate counsel to handle an appeal, it is certainly unusual, if it not completely inappropriate, for current attorneys of record to suggest that they are not representing their client with respect to a particular motion. Such an unusual position raises serious questions. In fact, Class Counsel does not believe it is possible to represent a client in a case and/or litigation but not with respect to a particular affirmative motion made in that same case. In short, Marten Law either is Met's counsel of record, and answerable to this Court, or it is not.

[29] March 9, 2024, email from Mr. Kray to Mr. London [ECF No. 4691-4].

[30] The Parties' Joint Interpretative Guidance on Interrelated Drinking-Water Systems [ECF No. 3858-1].

**Scope of Release**

The Settlement Agreement contains detailed release provisions that specify whose claims are released. A core purpose of the release provisions is to prevent double recovery for the same water. In general, by participating in the Settlement, a Settlement Class Member releases claims on behalf of itself and its Releasing Parties (as defined in the Settlement Agreement) with respect to the water provided to (or supplied by) the Settlement Class Member. In general, if a wholesaler opts out of the Settlement Class and its retail customer is a Settlement Class Member, the release would extend to the wholesaler as to the water it provided to the Settlement Class Member except to the extent the wholesaler shows it had the obligation for and bore unreimbursed PFAS treatment costs for that water independent of the retail customer. Ultimately, whether claims are released will turn on the application of the release provisions of the Settlement Agreement to the specific facts relevant to the wholesaler, the retail customer, and their relationship.[4] Notwithstanding the foregoing, nothing in the Settlement is intended to or will be deemed to impair the rights of wholesalers that opted out of the Settlement to bring any and all Claims they may have now and in the future against the Settling Defendants, and wholesalers that opted out of the Settlement are not bound by any release provisions in the Settlement, including Paragraph 12.1.

Ms. Teraoka's email explained that she and Met want the "parties to agree and the Court to order that wholesalers that opted out reserve their rights as to any and all claims they may have now and in the future as to DuPont and are not bound by a release provision in a settlement from which they opted out."[31] The requested language (underlined above), however, is substantively covered by § 9.7.3 of the Settlement Agreement, which explicitly provides that "Any Person that submits a timely and valid Request for Exclusion shall not (i) be bound by any orders or judgments effecting the Settlement . . . ."[32] As such, the proposed intervention would gain nothing for Met.

On March 11, 2024, more than three months after opting out of the settlement, Met filed its Motion for Intervention *after* it had already filed its jurisdiction-divesting Notice of Appeal.

## ARGUMENT

Preliminarily, it should be noted that "Rule 23 requires potential class members to make a trade-off: an individual either decides to remain a class member, bound by any and all judgments rendered in the class action but spared the expense of litigating on her own behalf, or she elects exclusion." *Precision Assocs. v. Panalpina World Transp. (Holding)* LTD, 08-CV-00042, 2012 U.S. Dist. LEXIS 137493, at * 12 (E.D.N.Y. Sept. 25, 2012). Here Met did just that: it objected, then it opted out, which effectively withdrew its Objections. Case closed. Yet, months later, Met

---

[31] March 9, 2024 email from Jill Taraoka to Paul Napoli [ECF No. 4691-5]
[32] Class Action Settlement Agreement [ECF No. 3393-2].

7

has now decided to change course again at the eleventh hour and seek intervention to allow standing to appeal, prejudicing the parties in the process. Having indicated in the meet and confer process on Tuesday March 12th that Met intends to move to intervene and appeal this similar issue in the 3M settlement as well,[33] it is clear that Met's untimely and unfounded actions will delay the distribution of billions of dollars (hundreds of millions in the DuPont settlement alone) to thousands of public water systems providing water to millions of Americans. This, of course, means those Americans will continue to ingest water contaminated with PFAS, a known carcinogen, while putting Class Members potentially in violation of a soon-to-be-enacted federally enforceable regulation, unless those funds are distributed without delay. The conduct of this single opt out,[34] which is not believed to have any detections of PFOA or PFOS, should not be countenanced, and Met's motion should therefore be denied, for the following reasons.

### Met Cannot Intervene Under Rule 24(a)(2) or 24(b)

Met claims it meets all requirements to intervene both as of right under Rule 24(a)(2) and permissively under Rule 24(b). However, even assuming *arguendo* that this Court had jurisdiction to grant the Motion to Intervene, which it does not, for the reasons set forth below, neither Rule 24(a)(2) nor Rule 24(b) provides Met with a proper path to intervene, and thus Met's motion should be denied.

To intervene as a matter of right under Rule 24(a), a movant generally must satisfy four criteria: (1) timeliness, (2) an interest in the litigation, (3) a risk that the interest will be impaired

---

[33] Class Counsel's Memorandum of Law in Support of Class Counsel's Motion for Sanctions and Other Relief ("Sanctions Motion")[ECF No. 4691-1], at 3 n.8.

[34] The totality of Met's conduct throughout the course of the settlement process has been thoroughly set forth in Class Counsel's Sanctions Motions [ECF No. 4691-1], which relevant parts are incorporated by reference as if fully stated herein.

absent intervention, and (4) inadequate representation of the interest by the existing parties. *Scott v. Bond*, 734 Fed. Appx. 188, 191 (4th Cir. 2018).

Similarly, Rule 24(b) gives a district court discretion to grant permissive intervention by a non-party who has a claim or defense that shares with the main action a common question of law or fact. "A party seeking to intervene under either Federal Rule of Civil Procedure 24(a) or 24(b) may do so only upon the filing of a '***timely motion***.'" *Alt v. U.S. E.P.A*., 758 F.3d 588, 591 (4th Cir. 2014) (emphasis added); *see also Gould v. Alleco, Inc*., 883 F.2d 281, 286 (4th Cir. 1989).

Met can satisfy none of these criteria, and thus its motion to intervene must be denied.

### A.    Met's motion is not timely.

To determine "timeliness," courts in the Fourth Circuit must assess three factors: "first, how far the underlying suit has progressed; second, the prejudice any resulting delay might cause the other parties; and third, why the movant was tardy in filing its motion." *Alt v. EPA*, 758 F.3d 588, 591 (4th Cir. 2014). All three factors demonstrate that Met's motion is untimely, although Met barely addresses even the first of these considerations, let alone the other two.[35] Because the Motion is untimely, Met cannot intervene either by right or permissively, both of which require a timely motion.

### 1.    This suit has progressed to near finality.

First, in relation to the stage of the proceedings, the timeliness requirement is intended to prevent an intervenor from "derailing a lawsuit within sight of the terminal." *Alt*, 758 F.3d at 591 (*quoting Scardelletti v. Debarr*, 265 F.3d 195, 202 (4th Cir. 2001)), *rev'd on other grounds*, 536 U.S. 1 (2002)). Where the parties have reached a settlement in principle, courts have found that intervention is untimely. *Scott*, 734 Fed. Appx. at 191–92. The Fourth Circuit "has stressed the

---

[35]  Memo of Law, at 4.

importance of timeliness and the wide discretion afforded the district courts," and held that a motion for intervention "is outside even the most indulgent standard of timeliness" where it was filed three and a half months after the class settlement agreement was first proposed to the district court. *Gould*, 883 F.2d at 286 ("Three and one-half months later, at the last possible moment, the intervention motion was filed. The tardiness of the motion is the strongest reason for its denial.").

Here, Met seeks to intervene eight months after the Settlement Agreement was filed on July 10, 2023 (and after subsequent briefing and oral argument addressing the exact issues raised in its proposed intervention).[36] And even if it still adhered to the Objections it had filed but abandoned by opting-out of the settlement on November 30, 2023,[37] it could have sought, but did not seek, to intervene at that time to attempt to resurrect its standing capacity. Instead, it waited more than three months after that to file the instant motion to derail the settlement within sight of the terminal. Although Met opted out, its Objections were maintained by other entities represented

---

[36] Class Action Settlement Agreement [ECF No. 3393-2].

[37] By opting out of the Settlement, Met lost its standing to object to the Settlement. *See* Settlement Agreement at § 9.7.3 ("Any person that submits a timely and valid Request for Exclusion shall not *** (iv) be entitled to submit an Objection."). *See also Newberg and Rubenstein on Class Actions* § 13:22 (6th ed.) ("class members who opt out of the settlement are no longer class members and hence, by opting out of the class, lose the standing to object conferred by Rule 23 upon class members."); *Harper v. C.R. England, Inc*., 746 F. App'x 712, 718 (10th Cir. 2018) ("Opted-out class members lack standing to object to a settlement."); *Jenson v. Cont'l Fin. Corp*., 591 F.2d 477, 482 n.7, (8th Cir. 1979) ("Opt-outs … are not members of the class and hence are not entitled to the protection of Rule 23(e)); *Mayfield v. Barr,* 985 F.2d 1090, 1093 (D.C. Cir. 1993) ("[t]hose who are not class members, because they are outside the definition of the class or have opted out," lack standing to object to class settlement); *Gould*, 883 F.2d at 284 ("non-class members have no standing to object...to a proposed class settlement."). *Accord Doe v. Pub. Citizen,* 749 F.3d 246, 257 (4th Cir. 2014) ("as a general rule, only named parties to the case in the district court and those permitted to intervene may appeal an adverse order or judgment.") citing *Marino v. Ortiz,* 484 U.S. 301, 304 (1988); *In re MI Windows & Doors, Inc., Prod. Liab. Litig.,* 860 F.3d 218, 223 (4th Cir. 2017) ("[A] judgment entered in a class action is binding on each class member *unless, in a class action certified under Rule 23(b)(3), the class member elects timely to opt out.*") (emphasis added).

by Marten Law.[38] At the December 14, 2023, fairness hearing, Marten Law confirmed that it represented objectors who "do not oppose the settlement concept, nor do they object entirely to the settlement with the DuPont defendants."[39]

Intervention at this late stage would clearly threaten the settlement itself. "[I]ntervention often is disfavored when it would disrupt a proposed settlement late in the litigation process, because such intervention may "threaten the delicate balance reached by existing parties after protracted negotiations." *Smith v. L.A. Unified Sch. Dist.*, 830 F.3d 843, 857 (9th Cir. 2016); *see also Scardelletti*, 265 F.3d at 204 (explaining that danger that settlement might "unravel[ ]" can show prejudice).

In short, Met's motion is not even arguably timely. Met provides no explanation—nor could it in good faith—to justify waiting until the last possible moment to raise the issue of intervention.

### 2. The Parties will be prejudiced by delay of intervention.

The second timeliness factor—the prejudice any resulting delay might cause the other parties—is not even addressed by Met. But the parties, *i.e.,* the class and DuPont, will be prejudiced. Having waited five years for some resolution in these cases, public water systems now have relief in sight. Once the Effective Date is triggered by the expiration of appellate timelines, a deadline is instituted for Class Members to submit their claims to receive proceeds to test and treat their community water systems. Met's intervention—for the purpose of filing its frivolous appeal —will prejudice those water systems and, more importantly, the millions of Americans who drink

---

[38] *See. e.g.*, Objection of City of North Texas Municipal Water District [ECF 3960] (specifically addressing the scope of "Releasing Parties" as applied to wholesalers); Objection of the City of Tacoma [ECF No. 3972] whose Objections are identical to those filed by Met.

[39] Tr. of Fairness Hr'ing of the DuPont Settlement, *City of Camden v. DuPont, et al.* (Dec. 14, 2023), at 97:1-6.

water from those systems. In other words, the many thousands of class members who support this settlement would be prejudiced by the tactics of a single entity that chose to opt out and is no longer a class member, not to mention the prejudice to DuPont that equally wants this settlement to conclude. Settlement Class Members' recoveries would be delayed by months of additional and redundant briefing regarding the scope of the release. Of note, the deadline for the submission of Claims Forms is based on the Settlement Agreement's Effective Date; that date does not arise until the Final Order becomes unappealable,[40] which has now been paused for an unknown amount of time. Not even one claim can be processed until all claims have been submitted to the Claims Administrator, and there is no deadline to submit a Claim Form until the Effective Date is triggered which, again, cannot occur until 30 days after the final order becomes non-appealable.[41] Given these mechanics, the prejudice here to all Class Members is massive.

Courts have properly "emphasized the seriousness of the prejudice which results when relief from long-standing inequities is delayed." *Hill v. Western Elec. Co., Inc.*, 672 F.2d 381, 386 (4th Cir. 1982) (quoting *Alaniz v. Tillie Lewis Foods*, 572 F.2d 657, 659 (9th Cir. 1978)). Indeed, the Fourth Circuit has stated that "[t]he most important consideration in reviewing a motion to intervene is whether the existing parties will suffer prejudice if the motion is granted." *Scott*, 734 Fed. Appx. at 191 (4th Cir. 2018); *Hill*, 672 F.2d at 386. Where a settlement is at risk, intervention is particularly disfavored. *Smith*, 830 F.3d at 857; *see also Scardelletti*, 265 F.3d at 204. Given the historic nature of this settlement, and its importance to the entire nation, it is difficult to imagine a stronger set of facts demonstrating prejudice.

### 3. Met cannot justify the timing of its motion.

---

[40] Settlement Agreement, at §§ 2.9, 2.17, 2.23, 3.3, Exhibit C (Allocation Procedures), at 1, Exhibit E (Notice), at 18.
[41] Settlement Agreement, at § 2.23.

Met fares no better on the third timeliness factor. It argues that its intervention is "timely" simply because it moved to intervene less than two weeks after the Court's final order. That does not even arguably satisfy the Fourth Circuit's requirement that a proposed intervenor move to intervene as soon as it becomes clear that its interests "would no longer be protected by the named class representatives." *Hill,* 672 F.2d at 386. Met has been aware of the "Released Parties" definition for months, has briefed its opposition to that language, and its counsel could have argued that Objection at the December 14 hearing. Rather than stand by its Objection so that it would have standing to appeal the Court's decision, Met abandoned its Objections, and abdicated any active role in the litigation, when it chose to opt out of the settlement on November 30, 2023, and thereby waived any right to pursue its grievances, especially by way of intervention. It should not now be allowed to resume a fight that it conceded simply because the result is now a matter of record. *See e.g., Associated Builders & Contractors, Inc. v. Herman*, 166 F.3d 1248, 1257 (D.C. Cir. 1999); accord Wright & Miller, 7C Fed. Prac. & Proc. Civ. § 1916 (3d ed. 2023) ("There is considerable reluctance . . . to allow intervention after the action has gone to judgment . . . [and] even more reason to deny an application to intervene made while an appeal is pending.").

The lack of timeliness dooms Met's motion under both provisions of Rule 24. The Supreme Court has held that Rule 24's timeliness requirement is enforced by a district court in the exercise of its discretion and that a ruling will not be disturbed on appeal unless this discretion is abused. *NAACP v. New York*, 413 U.S. 345, 365–66 (1973); *Gould*, 883 F.2d at 286. For this reason alone, Met's motion to intervene should be denied.

**B. Met waived any interest in the litigation by opting out.**

As noted above, on November 30, 2023, Met opted out of the Settlement. Pursuant to the Settlement Agreement, "[a]ny person that submits a timely and valid Request for Exclusion shall not (i) be bound by any orders or judgments effecting the Settlement; *** or (iv) be entitled to

submit an Objection."[42] In short, by opting out, Met no longer has an interest in the litigation and thus its rights are not at risk.[43] Moreover, Met failed to identify what specific interest it is even arguing is at risk, other than indicating it is within the scope of the definition of "Releasing Persons."[44] Whatever hypothetical risk Met believes to be at risk pales in comparison to the actual risk to millions of Americans continuing to drink PFAS-contaminated water because settlement funds necessary to implement treatment are being held up.

### C.  Met's interests are adequately represented by the existing parties.

Met's Motion explains that it "brings this limited-purpose motion to intervene for purposes of appealing"[45]—presumably the denial of its Objections—although it opted out of the settlement. On the one hand, as an opt out, it has no standing to appeal the denial of its one-time Objections; on the other hand, because it has already filed its notice of appeal on March 11, 2024, it has no need for intervention.

But to intervene as a matter of right under Rule 24(a), Met must also show that its interests are inadequately represented by the existing parties. *Scott,* 734 Fed. Appx. at 191 (4th Cir. 2018). This strategy is too clever by half, as it seems to put Met in a direct conflict with *its own* attorneys, Marten Law, counsel for the objectors who *do* have standing to appeal the Court's order denying their Objections.[46] Met's Objections were also stated by the cities of Tacoma (an exact duplication of Met's Objections), DuPont, and Vancouver, Washington, and by the North Texas Metropolitan Water District. Those entities, represented by Marten Law, presumably represent the interests of Met vis-à-vis the denial of their Objections. Contrary to this Court's class and fairness findings,

---

[42] Settlement Agreement, at § 9.7.3.
[43] *See* note 37, *supra.*
[44] Motion, at 5.
[45] Memo of Law, at 3.
[46] Order and Opinion [ECF No. 4471].

Met argues that its "interests are not adequately represented *by Plaintiffs*."[47] Even more inexplicable, Met fails to acknowledge that Marten Law continues to represent it and the other Marten Law clients who asserted the same Objection. Query: Does Met intend to suggest that Marten Law is not competent to adequately address these issues on appeal?

"When the party seeking intervention has the same ultimate objective as a party to the suit, a presumption arises that its interests are adequately represented, against which the petitioner must demonstrate adversity of interest, collusion, or nonfeasance." *Com. of Va. v. Westinghouse Elec. Corp.*, 542 F.2d 214, 216 (C.A. Va. 1976). Met cites this case but stops short of accusing the other Marten Law clients of adverse interest, collusion, or nonfeasance.[48] It merely argues that its interests are not adequately represented by the plaintiffs who opposed Met's Objections. *Id*. Such sophistry should not be tolerated. Met's attempted obfuscation of the fact that *its own counsel* are advancing the identical objections it now contends were not properly presented to the Court evidences a lack of good faith.

### D.  The language Met wants is already in the Settlement Agreement.

Perhaps more important than all the other points made above is that what Met says it wants—language confirming that opt outs are not bound by the release provision in the settlement agreement—is already included in the Settlement Agreement. Indeed, § 9.7.3 provides Met even greater protection, not only from the release provision of the Settlement Agreement, but from "*any orders or judgments* effecting the Settlement . . . ."[49] Met's Motion makes no mention of this provision, perhaps because it is well settled that opt outs are not bound by class settlements.[50] Or

[47] Memo of Law at 6 (emphasis added).
[48] *Id.*
[49] Settlement Agreement, at § 9.7.3.
[50] *Matsushita Elec. Indus. Co., Ltd. v. Epstein*, 516 U.S. 367, 379 (1996); *In re MI Windows and Doors, Inc., Prods. Liab. Litig.*, 860 F.3d 218, 223 (4th Cir. 2017).

perhaps the proposed "intervention" is less about a good-faith statement of a position in an actual controversy and more about Met's insatiable desire to challenge this Settlement.

### E.   Fed. R. Civ. P. 62.1 (a)(3) Permits the Court to Issue an Indicative Ruling.

Notwithstanding the above, it may be  possible that by motion or other application pursuant to Fed. R. Civ. P. 62.1,[51] the Court could issue an indicative ruling with respect to the substantive issue that would be addressed by the Fourth Circuit, i.e., opt-outs being bound by the Settlement Agreement.

Although no such motion or application has been filed, Met has made a proposal that could lend itself to the Rule 62.1 procedure.  Class Counsel is evaluating the recent proposal made Met and the feasibility of it under Rule 62.1.

While Class Counsel believes  the request by Met in its recent  proposal is encapsulated by § 9.7.3 of the Settlement Agreement and is, therefore, unnecessary. Class Counsel is still considering Met's recent proposal and suggestion to utilize Rule 61.2 to seek an indicative ruling and will continue to discuss these issues with Met and DuPont.

---

[51] (a) Relief Pending Appeal. If a timely motion is made for relief that the court lacks authority to grant because of an appeal that has been docketed and is pending, the court may:

> (1) defer considering the motion;

> (2) deny the motion; or

> (3) state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue.

> (b) Notice to the Court of Appeals. The movant must promptly notify the circuit clerk under Federal Rule of Appellate Procedure 12.1 if the district court states that it would grant the motion or that the motion raises a substantial issue.

> (c) Remand. The district court may decide the motion if the court of appeals remands for that purpose. (Emphasis added) *Id.*

## **CONCLUSION**

Respectfully, Class Counsel submit that the Court can outright decline to take up the Motion to Intervene because it has been divested of jurisdiction, or, in the alternative, should it determine that it has jurisdiction, should deny the motion to intervene and/or adopt another course that Court might in its discretion find preferable.

Dated: March 18, 2024                    Respectfully Submitted,

s/ Michael A. London
Michael A. London
Douglas and London P.C.
59 Maiden Lane, 6th Fl.
New York, NY 10038
212-566-7500
212-566-7501 (fax)
mlondon@douglasandlondon.com

s/ Paul J. Napoli
Paul J. Napoli
Napoli Shkolnik
1302 Avenida Ponce de
León San Juan, Puerto Rico
00907 Tel: (833) 271-4502
Fax: (646) 843-7603
pnapoli@nsprlaw.com

s/ Scott Summy
Scott Summy
Baron & Budd, P.C.
3102 Oak Lawn Avenue, Suite 1100
Dallas, TX 75219
214-521-3605
ssummy@baronbudd.com

s/ Elizabeth A. Fegan
Elizabeth A. Fegan
Fegan Scott LLC
150 S. Wacker Dr., 24th Floor
Chicago, IL 60606
312-741-1019

17

beth@feganscott.com

s/ Joseph F. Rice
Joseph F. Rice
Motley Rice
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
jrice@motleyrice.com

*Class Counsel*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was electronically filed with this Court's CM/ECF on this 18th day of March, 2024 and was thus served electronically upon counsel of record.

s/ Michael A. London
Michael A. London
Douglas and London P.C.
59 Maiden Lane, 6th Fl.
New York, NY 10038
212-566-7500
212-566-7501 (fax)
mlondon@douglasandlondon.com