**IN THE UNITED STATES**
**DISTRICT COURT DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | | |
|---|---|---|
| **FRANCES F. VALDEZ, INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF JORGE VALDEZ, DECEASED** | ) ) ) ) ) | |
| | ) | **MDL NO. 2873** |
| | ) | |
| **Plaintiff,** | ) | **Master Docket No: 218-mn-2873** |
| | ) | |
| | ) | **JUDGE RICHARD GERGEL** |
| **v.** | ) | |
| | ) | **Civil Action No.: 2:22-cv-00455-RMG** |
| **3M COMPANY; CHEMGUARD, INC.; MATLICK ENTERPRISES, INC. (d/b/a UNITED FIRE EQUIPMENT COMPANY); PERIMETER SOLUTIONS, LP; TYCO FIRE PRODUCTS, LP** | ) ) ) ) ) ) ) | **AMENDED COMPLAINT** |
| | ) | |
| **Defendants.** | ) | |

For her Amended Complaint against Defendants Tyco Fire Products, LP ("Tyco"), 3M Company ("3M"), Chemguard, Inc. ("Chemguard"), Perimeter Solutions, LP ("Perimeter") and Matlick Enterprises, d/b/a United Fire Equipment Company ("United Fire" and, collectively with Tyco, 3M, Chemguard and Perimeter, "Defendants"), Plaintiff Frances F. Valdez, individually and on behalf of the estate of Jorge Valdez ("Decedent" or "Jorge"), through undersigned counsel, hereby alleges, based upon information and belief, as follows:

## INTRODUCTION

1.     Decedent Jorge Valdez ("Jorge") was a firefighter for forty years. From 1978 to about 2011, he worked with aqueous film-forming foams ("AFFFs") containing the toxic

chemicals collectively known as per and polyfluoroalkyl substances ("PFAS"). PFAS include, but are not limited to, perfluorooctanoic acid ("PFOA") and perfluorooctane sulfonic acid ("PFOS") and related chemicals including those that degrade to PFOA and/or PFOS.

2.     AFFFs are used by the Air National Guard Airfield Firefighters to extinguish fires. Jorge was exposed to AFFFs in training sessions, while fighting fires, and, after a fire was extinguished, by "painting" rooms, which entails coating every surface with a thick concentration of foam to prevent fires from rekindling. Throughout his career, Jorge had routine dermal exposure to AFFFs.

3.     Defendants designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise released into the stream of commerce AFFFs with knowledge that they contained highly toxic PFAS, which would expose end users of the product to the risks associated with PFAS. Each of the Defendants supplied AFFFs, either on a manufacturer or distributor basis, to the Air National Guard which employed Jorge.

4.     PFAS accumulates in the blood and bodily tissues of humans exposed to the material and persists for long periods of time. These are highly toxic and carcinogenic chemicals. Defendants knew, or should have known, that PFAS present significant health risks to humans who are exposed to them.

5.     In his role as a firefighter, Jorge used Defendants' AFFFs in their intended manner, without material change in the products' condition, and in a manner that Defendants were aware that firefighters like Jorge would use the product. Jorge was unaware of the toxic nature of the PFAS in AFFFs – indeed, Defendants represented that their AFFFs were inert and posed no health hazard.

2

6.      After over three decades of exposure to AFFFs, in 2018 Jorge was diagnosed with renal carcinoma and lost his battle with cancer on May 17, 2023.  Jorge's exposure to and dermal absorption of Defendants' AFFF products caused him to develop the serious medical conditions and complications alleged herein that eventually led to his death.

**PARTIES, JURISDICTION, AND VENUE**

7.      Plaintiff, Frances F. Valdez, is the widow of Decedent, Jorge Valdez, and is the representative of his estate. She resides in Tucson, Arizona.

8.      Defendant Tyco Fire Products, LP, as successor-in-interest to The Ansul Company ("Tyco") is a Delaware limited partnership and does business throughout the United States, including in Pima County, Arizona.  Tyco manufactured and currently manufactures the Ansul brand of products, including Ansul brand AFFF containing PFAS.  Tyco, and its predecessor in interest Ansul, designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, and/or sold AFFFs containing PFAS that are used in firefighting training and response exercises that are the subject of this Amended Complaint.

9.      Defendant 3M Company ("3M"), is Delaware corporation and conducts business internationally, including in Pima County, Arizona. 3M designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, and/or sold AFFFs containing PFAS that are used in firefighting training and response exercises that are the subject of this Amended Complaint.

10.     Defendant Chemguard, Inc. ("Chemguard") is a Wisconsin corporation and does business throughout the United States, including in Pima County, Arizona.  Chemguard designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional

3

materials, and/or sold AFFFs containing PFAS that are used in firefighting training and response exercises that are the subject of this Amended Complaint.

11.     Defendant Perimeter Solutions, LP, as successor-in-interest to Auxquimia, S.A.U. ("Perimeter") is a Delaware limited partnership and does business throughout the United States, including in Pima County, Arizona.  Perimeter designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, and/or sold AFFFs containing PFAS that are used in firefighting training and response exercises that are the subject of this Amended Complaint.

12.     Defendant Matlick Enterprises, Inc., d/b/a United Fire Equipment Company ("United Fire"), is an Arizona corporation and does business throughout this state, including in Pima County. United Fire marketed, distributed, and/or sold AFFFs containing PFAS that are used in firefighting training and response exercises that are the subject of this Amended Complaint.

13.     Tyco, 3M, Chemguard, and Perimeter are hereafter referred to as the "Manufacturer Defendants."  United Fire is hereafter referred to as the "Distributor Defendant."

14.     The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1332(a)(1), because the Plaintiff and Defendants are citizens of different states and the amount in controversy exceeds $75,000.00, excluding interests and cost.

15.     Venue is proper in this District Court pursuant to this Court's Case Management Order ("CMO") No. 3. Plaintiff states that but for the Order permitting direct filing in the United States District Court for the District of South Carolina, Plaintiff would have filed this Amended Complaint in the United States District Court for the District of Arizona as the home venue. Venue is originally proper in the District Court pursuant to 28 U.S.C. § 1391 because it is the judicial

district in which a substantial part of the events or omissions giving rise to the claims occurred, and Defendants conduct business within the district.

## GENERAL ALLEGATIONS

16.    Aqueous Film-Forming Foam ("AFFF") is a combination of chemicals used to extinguish fires.

17.    AFFF has better firefighting capabilities than water because of its unique properties, which extinguish fires by smothering them, ultimately starving them of oxygen.

18.    AFFFs can be used to fight fires directly in conjunction with or in place of water, or they can be used to insulate a premises that was previously on fire, to prevent fire from reigniting.

19.    AFFF was introduced commercially in the mid-1960s and rapidly became the primary firefighting foam in the United States and other parts of the world.  AFFF contains PFAS, which are highly fluorinated synthetical chemical compounds whose family includes PFOS and PFOA.

20.    PFAS have been used for decades in the manufacture of AFFF.  PFAS chemicals are entirely manmade, and do not naturally occur.

21.    Prior to commercial development and large-scale manufacture and use of AFFF containing PFAS, no such PFAS had been found or detected in humans.

22.    AFFF and PFAS are associated with various adverse health effects in humans.

23.    Exposure to AFFF has been linked to serious medical conditions including, but not limited to, kidney cancer, testicular cancer, testicular tumors, pancreatic cancer, prostate cancer, leukemia, lymphoma, bladder cancer, thyroid disease, and infertility.

24.     In the 1960s, studies by PFAS manufacturers raised concerns about the health risks caused by these substances.[1]

25.     By the 1970s, animal studies of PFAS revealed immunotoxicity and other adverse effects.

26.     By the 1980s, studies by PFAS manufacturers reported immunotoxicity and carcinogenicity effects caused by PFAS.

27.     By the 1990s, certain PFAS manufacturers began monitoring the levels of PFAS in the blood serum of their workers.  Studies began showing an excess occurrence of prostate cancer in individuals exposed to PFAS.

28.     By at least 2010, additional research and testing performed by certain PFAS manufacturers revealed multiple potential adverse health impacts among workers exposed to PFAS, such as increased cancer incidence, hormone changes, lipid changes, and thyroid and liver impacts.

29.     After the USEPA and other entities began asking manufacturers to stop manufacturing and/or using certain PFAS, Defendants began manufacturing and/or distributing more of certain other and/or "new" PFAS, including so-called "Short-Chain PFAS."

30.     Defendants manufacturing and/or distributing Short-Chain PFAS are aware that Short-Chain PFAS have also been found in human blood.  By the mid-2010s, manufacturers were aware that certain Short-Chain PFAS have been found to cause the same triad of tumors, (testicular, liver, and pancreatic), in animals as non-Short-Chain PFAS.

31.     Moreover, by the early 2010s, research on Short-Chain PFAS suggested that the technical performance of these Short-Chain PFAS is lower, requiring larger quantities and/or more

---

[1] https://www.ncbi.nlm.nih.gov/pmc/articles/PMC6172956/

3848285v1

substances to be used to provide the same performance, leading to the same aggregate exposure for affected humans.

32.     Nonetheless, Defendants each downplayed the risks of AFFFs containing PFAS to firefighters like Jorge Valdez. Defendant Perimeter Solutions, for instance, represented that skin contact was "no more than slightly toxic."

33.     Even after an independent science panel, known as the "C8 Science Panel," announced in the 2010s that human exposure to PFAS were associated with certain human diseases, including kidney and testicular cancer,[2] Defendants continued to downplay the risk of AFFFs.

34.     At all relevant times, Manufacturer Defendants, through their acts and omissions, concealed and/or withheld information from their customers, governmental entities, and the public that would have properly and fully alerted Plaintiff to the risks of exposure to AFFFs containing PFAS.

35.     At all relevant times, Defendants encouraged continued and increased use of PFAS by their customers and others and tried to encourage and foster the increased and further use of PFAS through the promotion of AFFFs to fire departments, including the fire department where Jorge Valdez worked, while downplaying the risks.

36.     At all relevant times, Manufacturer Defendants were and/or should have been aware, or knew and/or should have known, that their design, marketing, development, manufacture, distribution, release, training and response of users, production of instructional materials and/or sale of AFFFs containing PFAS would result in the contamination of the blood

---

[2] https://ehp.niehs.nih.gov/doi/pdf/10.1289/ehp.1306615

and/or body of Jorge Valdez with PFAS, causing injury, irreparable harm, and/or unacceptable risk of such injury and/or irreparable harm to Jorge Valdez.

37.     Distributor Defendant distributed AFFFs to the Arizona Air National Guard 162nd Fire Department during all relevant periods. AFFFs distributed by Distributor Defendants were used by firefighters in the Arizona Air National Guard 162nd Fire Department, including Jorge Valdez, in their ordinary course of firefighting activities and in the manner in which these AFFFs were expected to be used by Distributor Defendant, thereby exposing Jorge Valdez to PFAS.

**Defendants' AFFFs were used by the Arizona Air National Guard 162nd Fire Department**

38.     Defendants designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, and/or sold AFFFs containing toxic PFAS that were used by the United States military nationwide.

39.     Defendants each designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, and/or sold AFFFs containing PFAS in such a way as to cause the exposure to and ultimate contamination of Jorge Valdez's blood and body with PFAS, resulting in persistence and accumulation of PFAS in his blood and body.

40.     Each of the Defendants manufactured, sold, and/or distributed AFFFs to the Arizona Air National Guard 162nd Fire Department, thereby causing the contamination of the blood and/or body of Jorge Valdez with PFAS.

41.     Tyco/Ansul manufactured and/or sold AFFFs to the Arizona Air National Guard 162nd Fire Department, based upon information and belief, during all relevant time periods. Tyco/Ansul's AFFFs were used by firefighters in the Arizona Air National Guard 162nd Fire Department, including Jorge Valdez, in their ordinary course of firefighting activities and in the

8

manner in which these AFFFs were expected to be used by Tyco/Ansul, thereby exposing Jorge Valdez to PFAS.

42.    3M manufactured and/or sold AFFFs to the Arizona Air National Guard 162nd Fire Department, based upon information and belief, during all relevant time periods. 3M's AFFFs were used by firefighters in the Arizona Air National Guard 162nd Fire Department, including Jorge Valdez, in their ordinary course of firefighting activities and in the manner in which these AFFFs were expected to be used by 3M, thereby exposing Jorge Valdez to PFAS.

43.    Chemguard manufactured and/or sold AFFFs to the Arizona Air National Guard 162nd Fire Department, based upon information and belief, during all relevant time periods. Chemguard's AFFFs were used by firefighters in the Arizona Air National Guard 162nd Fire Department, including Jorge Valdez, in their ordinary course of firefighting activities and in the manner in which these AFFFs were expected to be used by Chemguard, thereby exposing Jorge Valdez to PFAS.

44.    Perimeter manufactured and/or sold AFFFs, including Phos-Check Class A Foam Concentrate, to the Arizona Air National Guard 162nd Fire Department, based upon information and belief, during all relevant time periods.  Perimeter's AFFFs were used by firefighters in the Arizona Air National Guard 162nd Fire Department, including Jorge Valdez, in their ordinary course of firefighting activities and in the manner in which these AFFFs were expected to be used by Perimeter, thereby exposing Jorge Valdez to PFAS.

45.    United Fire distributed AFFFs to the Arizona Air National Guard 162nd Fire Department, based upon information and belief, during all relevant time periods.  AFFFs distributed by United Fire were used by firefighters in the Arizona Air National Guard 162nd Fire Department, including Jorge Valdez, in their ordinary course of firefighting activities and in the

9

3848285v1

manner in which these AFFFs were expected to be used by United Fire, thereby exposing Jorge Valdez to PFAS.

**The Decedent's exposure to Defendants' AFFFs**

46.     Jorge Valdez began his fire service career in 1978, with the United States Air National Guard in the Arizona Air National Guard 162nd Fire Department. Jorge served as an airfield firefighter for forty years.

47.     Jorge was first exposed to AFFFs in 1978 when went through military training. During training, it was common to have AFFFs on his body from head to toe, and it was common to have direct skin contact with AFFFs while cleaning up after drills.  At the time, he was led to believe that the foam was generally inert and provided no hazard to his health.  After his training, in service for the Arizona Air National Guard 162nd Fire Department, Jorge was exposed to AFFFs while spraying foam during firefighting operations.

48.     Jorge's responsibilities as a firefighter included driving, pumping, and maintaining the fire truck, which included pumping AFFFs, cleaning AFFFs out of the firefighting equipment, and adding new foam as needed.  While operating and cleaning equipment using foam, he was never given any instruction from the manufacturers or distributors to avoid contact with AFFFs, or that the materials were otherwise harmful.

49.     Jorge was also in charge of foam testing for crash trucks and structural pumpers. Foam testing consisted of discharging water and foam from the trucks, collecting the foam by hand, and checking the foam's percentage with a refractometer.

50.     When Jorge received training on Class A and Class B AFFFs, he was instructed that AFFFs were just as safe as dish soap. In fact, after fighting fires, Jorge and his colleagues

10

would cool themselves down with water from the crash trucks after flushing them out, and they could still taste the AFFFs in the water.

51.    Jorge was also instructed that foam should be used as a primary agent for fighting fires. Manufacturers and Distributors, such as the Defendants, provided videos demonstrating that AFFFs suppressed fire more effectively than water. Additionally, he was shown videos encouraging "painting" a room, which is the practice of coating every surface in a room with a thick concentration of AFFFs to prevent reignition of a fire.

52.    These new procedures, actively promoted by Defendants, led Jorge to have extensive direct contact with AFFFs in the course of his ordinary duties as a firefighter.

53.    The Arizona Air National Guard 162nd Fire Department was convinced, at the encouragement of the Defendants, to add AFFF delivery systems to every new Engine ordered. This was an expensive add-on, and it led to an expectation, actively encouraged by Defendants, that Jorge would use AFFFs routinely on common fires.

54.    Over the course of over 30 years as a firefighter with the Arizona Air National Guard 162nd Fire Department, from 1978 to about 2011, Jorge Valdez routinely used, handled, and came in direct contact with AFFFs containing PFOA produced, manufactured, sold, and/or distributed by the Defendants. His exposure to these products was in the ordinary course of his firefighting activities, and was in the standard way that Defendants anticipated that these products would be used and handled.

55.    At no time in his career was Jorge warned by the Defendants that their products carried a substantial risk of adverse medical outcomes, including cancers such as testicular cancer.

3848285v1

56.     In 2018, at the age of 60, Jorge Valdez was diagnosed with renal carcinoma, with a significant tumor.  He had no family history of kidney cancer, nor any genetic predisposition. He is not and has never been a smoker.

57.     On May 17, 2023, Jorge passed away after a five-year-long battle with cancer.

## FIRST CLAIM FOR RELIEF
**(Strict Products Liability-Design Defect and Failure to Warn against All Defendants)**

58.     Plaintiff incorporates the allegations contained in Paragraphs 1 through 57 of this Amended Complaint as if they were fully set forth herein.

59.     Upon information and belief, Defendants are the manufacturers and/or distributors of the AFFFs containing PFAS to which Jorge Valdez was exposed.

60.     Defendants are each the sellers of the AFFFs containing PFAS to which Jorge Valdez was exposed. Defendants sell AFFFs in the ordinary course of their business.

61.     The use of the AFFFs in training activities and routine firefighting activities was the purpose for which the AFFFs were intended and was reasonably foreseeable by Defendants. The AFFFs were used in substantially the same condition in which they were sold.

62.     A reasonable firefighter would not expect the AFFFs used in training activities and routine firefighting activities to expose him to a known carcinogen.

63.     AFFFs failed to perform as safely as an ordinary firefighter would expect when the AFFFs were used in the reasonably foreseeable manner of routine firefighting activities.

64.     Defendants designed an unreasonably harmful product that was inherently defective in that in contained known carcinogens.

65.     Defendants had full knowledge that AFFFs contained known carcinogens and failed to warn Jorge of the unreasonably dangerous risks.

12

66.    Jorge Valdez suffered lasting and ongoing personal injuries that ultimately caused his death which resulted from the defective and unreasonably dangerous nature of the product caused by its defective design.

67.    Jorge Valdez was a healthy middle-aged man with no history of kidney cancer, making his likelihood of developing the disease quite low.

68.    As a direct and proximate result of the foregoing, Jorge Valdez died and suffered damaged via personal injuries in an amount to be proven at trial.

## SECOND CLAIM FOR RELIEF
### (Negligent Failure to Warn Against Manufacturing Defendants)

69.    Plaintiff incorporates the allegations contained in paragraphs 1 through 68 of this Amended Complaint as if they were fully set forth herein.

70.    Manufacturing Defendants knew, through internal and external research, that AFFFs were likely dangerous when used in training activities and routine firefighting activities.

71.    Manufacturing Defendants had no reason to believe that Plaintiff would realize the danger of AFFFs, including their carcinogenic effects.

72.    Manufacturing Defendants failed to exercise reasonable care to inform Plaintiff of AFFFs dangers or of the facts which make it likely to be dangerous.

73.    Because of Defendants' failure to warn Plaintiff about the dangers of AFFFs, Plaintiff died.

## THIRD CLAIM FOR RELIEF
### (Negligent Plan or Design of Product Against All Defendants)

74.    Plaintiff incorporates the allegations contained in paragraphs 1 through 73 of this Amended Complaint as if they were fully set forth herein.

13

3848285v1

75.    AFFFs, products designed by Defendants, are dangerous for use in training activities and routine firefighting activities, which is the intended use of AFFFs.

76.    Defendants failed to exercise reasonable care in continuing to design and failing to re-design AFFFs which contain dangerous carcinogens.

77.    Because of Defendants' defective design of AFFFs Jorge Valdez died.

## FOURTH CLAIM FOR RELIEF
### (Punitive Damages against Tyco/Ansul, 3M, Chemguard, and Perimeter Solutions)

78.    Plaintiff incorporates the allegations contained in paragraphs 1 through 77 of this Amended Complaint as if they were fully set forth herein.

79.    Upon information and belief, Defendants Tyco/Ansul, 3M, Chemguard, and Perimeter Solutions (the "Manufacturer Defendants") first started manufacturing, marketing, and selling AFFFs many years ago.  In the case of Defendant, Tyco/Ansul and 3M, Plaintiff believes that it has been manufacturing, marketing, and selling AFFFs since the 1970s.

80.    Over the ensuing years, the Manufacturer Defendants either knew or should have known that an increasing volume of industry research demonstrated that AFFFs cause serious medical effects in humans who are exposed to them dermally, including tissue cancers such as testicular cancer.  Throughout that period, and up to the present, the Manufacturer Defendants have never warned firefighters or the broader public of the known health risks of AFFFs.

81.    The Manufacturer Defendants had obligations under various laws, including but not limited to 15 U.S.C. § 2607(3), to disclose to various government agencies the health risks of AFFFs containing PFAS, including in particular the carcinogenic effects of these products of which the Manufacturer Defendants were aware.  Nonetheless, the Manufacturer Defendants intentionally withheld from applicable government agencies their knowledge of the hazardous health effects AFFFs can cause to fire fighters like Jorge Valdez.

14

82.    The Manufacturer Defendants consciously pursued this course of conduct – the manufacture, marketing, and sale of a deficient and dangerous product with no representation to expected users of this known danger – in order to serve their own profit motives.

83.    The Manufacturer Defendants pursued the actions set forth above despite their knowledge of the substantial risk that AFFFs posed to firefighters like Jorge Valdez.

84.    The Manufacturer Defendants acted with an evil mind, meriting an award of punitive damages in an amount to be proven at trial.

## FIFTH CLAIM FOR RELIEF
### (Wrongful Death pursuant to A.R.S. 12-612)

85.    Plaintiff incorporates the allegations contained in paragraphs 1 through 84 of this Amended Complaint as if they were fully set forth herein.

86.    Frances F. Valdez was at all times relevant to this action, the legal spouse of Jorge Valdez, and they lived together as husband and wife up until Jorge's death.

87.    Jorge Valdez died on May 17, 2023 and lost his battle against renal cancer.

88.    As a direct and proximate result of one or more of the foregoing negligent acts and/or omissions of Defendants, Jorge Valdez sustained injuries that resulted in his death on May 17, 2023.

89.    As a direct and proximate result of one or more of the foregoing conditions, Frances F. Valdez, as the survivor of Jorge Valdez, has sustained substantial pecuniary loss including the cost and expenses related to Jorge's medical care, treatment, medications, hospitalizations, and hospice along with the cost and expenses related to Jorge's death including funeral and burial expenses. Frances F. Valdez has also sustained the loss of Jorge's society, companionship, services, love, support, and other husbandly duties and actions all of which has resulted in her pain, suffering, and mental and emotional distress and worry.

## SIXTH CLAIM FOR RELIEF
### (Survival Pursuant to A.R.S. § 14-3110)

90.     Plaintiff incorporates the allegations contained in paragraphs 1 through 89 of this Amended Complaint as if they were fully set forth herein.

91.     As a direct and proximate result of Defendants' negligence, Frances F. Valdez, as personal representative of the Estate of Jorge Valdez, has incurred reasonable expenses of necessary medical care, treatment, and services rendered and such expenses are reasonably probable to be incurred in the future.

92.     At the time of Jorge Valdez's death, he was survived by his wife, Frances F. Valdez.

93.     Had Jorge Valdez survived, he would have been entitled to bring an action for the injuries he suffered and that action has survived his death pursuant to A.R.S. § 13-3110, commonly known as the Survival Act, which provides, "Every cause of action, except a cause of action for damages for breach of promise to marry, seduction, libel, slander, separate maintenance, alimony, loss of consortium or invasion of the right of privacy, shall survive the death of the person entitled thereto or liable therefor, and may be asserted by or against the personal representative of such person, provided that upon the death of the person injured, damages for pain and suffering of such injured person shall not be allowed."

### JURY TRIAL DEMANDED

Plaintiff hereby demand a trial by jury.

**WHEREFORE**, Plaintiff Frances F. Valdez hereby requests that the Court enter judgment against all Defendants as follows:

   a. For general, consequential, special, and compensatory damages, including but not limited to Plaintiff's pain and suffering and mental anguish and Jorge Valdez's lost wages and lost future income;

b. For general damages for Plaintiff loss of love, companionship, care, and consortium in an amount to be proven at trial;

c. For the value of the costs of reasonable and necessary medical attention, care and treatments, past and future, loss of household services, and other special damages.

d. For Plaintiff's costs and other expenses incurred in this action; and

e. Such other and further relief as the Court deems just.

**WHEREFORE**, Plaintiff Frances F. Valdez hereby requests that the Court additionally enter judgment against the Manufacturer Defendants as follows:

a. For punitive damages.

Dated:  March 20, 2024

By: */s/ Jason W. Burge*

FISHMAN HAYGOOD LLP
Kerry J. Miller
Jason W. Burge
Danielle Teutonico
201 St. Charles Avenue, Suite 4600
New Orleans, LA 70170-4600
Telephone: (504) 586-5252
Facsimile: (504) 586-5250
Email: kmiller @fishmanhaygood.com
       jburge@fishmanhaygood.com
       dteutonico@fishmanhaygood.com

Lincoln Combs
O'STEEN & HARRISON, PLC
300 W. Clarendon Ave., Suite 400
Phoenix, Arizona  85013-3424
Telephone: (602) 252-8888
Facsimile: (602) 274-1209
lcombs@vanosteen.com

*Counsel for Plaintiff*

17

3848285v1

18

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 20th day of March, 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a copy of the foregoing pleading to all counsel of record by notice of electronic filing.


*/s/ Jason W. Burge*

3848285v1