IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| IN RE: AQUEOUS FILM-FORMING FOAMS PRODUCTS LIABILITY LITIGATION | Master Docket No.: 2:18-mn-2873-RMG <br><br> This document relates to: <br><br> *City of Camden, et al. v. 3M Company* <br> No. 2:23-cv-03147-RMG |

### CITY OF LOS ANGELES'S OBJECTION TO THE CITY'S INCLUSION IN EXHIBIT A TO THE SPECIAL MASTER'S DECLARATION

**OVERVIEW**

The City of Los Angeles (the "City" or "Los Angeles") timely submitted its opt-out for the 3M Settlement. There is no dispute that Los Angeles's opt-out was timely received by the Notice Administrator on December 1, 2023, and that the affidavit submitted with it was in proper form. Despite this, Los Angeles was nonetheless erroneously included in Exhibit A of the Special Master's Declaration regarding opt-outs. *See* Dkt. No. 4701.

Therefore, pursuant to this Court's Order regarding compliance assessments of opt-outs to the 3M Settlement Agreement,[1] Dkt. No. 4425, Los Angeles respectfully objects to 1) the inclusion of Los Angeles's public water systems in Exhibit A,[2] attached to the Special Master's Declaration Regarding Non-Compliant Opt-Outs, and 2) the exclusion of Los Angeles from the Special Master's Declaration Regarding Valid Opt-Outs. Dkt. No. 4701; Dkt. No. 4728, at 2 n.1. The

---

[1] Settlement Agreement Between Public Water Systems and 3M Company (Dkt. No. 3620-1, Aug. 28, 2023).
[2] LADWP Public Water System, PWSID CA1910067, and Mountain View Trailer Court Water System, PWSID CA1400099.

1

inclusion of the City's water systems in Exhibit A, based on information "3M has reported to the Special Master," is both mistaken and irrelevant. Dkt. No. 4701, at 3. Los Angeles respectfully requests that this Court confirm that Los Angeles's opt-out be deemed compliant and effective to exclude Los Angeles from the 3M Settlement.

First, as explained below, Los Angeles did, in fact, serve its opt-out on 3M, per the terms of the 3M Settlement documents, including the Long-Form Notice approved by the Court. *See* Declaration of Gretchen Freeman Cappio in Support of The City of Los Angeles's Objection to the City's Inclusion in Exhibit A to the Special Master's Declaration ("Freeman Cappio Decl."), ¶ 9. As a result, there is no factual basis for the City's inclusion on Exhibit A.

Second, the City's inclusion on Exhibit A is irrelevant because: 1) as noted by the Special Master, this Court's Order did ***not*** include service on 3M's Counsel as a "metric" for assessing opt-outs; and 2) under the black-letter law governing opt-outs, and consonant with a party's Due Process rights, an inconsequential delay between the timely submission of an opt-out to the Notice Administrator and the service of opt-outs on parties cannot be a basis for rejecting the opt-out.

Finally, even were Los Angeles to have failed to meet material terms of the opt-out process, any error is excusable, as any failure is based on an honest oversight, was cured the moment the failure was noted, and will have no impact on this litigation or the position of the parties.

In this submission, Los Angeles first reviews the facts on the timely submission of its opt-out to the Notice Administrator and the details of the service of its opt-out on other parties, including Counsel for 3M (Section I). In Section II it describes the legal standard for the assessment of opt-outs. And in Section III it explains why, under the relevant law, Los Angeles's opt-out was timely, effective, and compliant.

## I. FACTUAL BACKGROUND

Los Angeles, through its Department of Water and Power ("LADWP") owns and operates seven public water systems, including the LADWP Public Water System, PWSID CA1910067 ("LADWP Public Water System"), which provides drinking water to approximately four million residents and businesses in Los Angeles, California.[3]

These facts are undisputed: Los Angeles submitted the opt-out to the Notice Administrator on November 30, 2023, and it was received the next day, December 1, 2023, well before the December 11, 2023 deadline. Freeman Cappio Decl. ¶ 9. While the Notice clearly listed the parties to be served, due to a clerical mistake in our office, for which we apologize, the opt-out was inadvertently not simultaneously served on those other parties, including Counsel for 3M. *Id.* at ¶ 10.

The following explains how we discovered the mistake: As the Court is aware, because the DuPont Settlement had an earlier opt-out deadline, the first filings pertaining to opt-outs were related to the DuPont Settlement and not 3M. On the evening of January 3, 2024, the Notice Administrator filed a Declaration with the Court stating that, of the timely submitted opt-outs to the DuPont Settlement from entities on the Class List, 76% were non-compliant. *See* Dkt. No. 4309. The Notice Administrator's Declaration did not identify the non-compliant opt-outs, but instead encouraged anyone who submitted an opt-out to contact the Notice Administrator by calling a hotline set up for such inquiries. Freeman Cappio Decl. ¶ 11.

---

[3] Los Angeles submitted each opt-out on behalf of both the LADWP Public Water System and each of the six smaller Public Water Systems that it owns and/or operates, including Mountain View Trailer Court Water System, PWSID CA1400099. The LADWP system and the Mountain View system are each listed in Exhibit A to the Special Master's Declaration.

When we saw this Declaration, we did not drag our feet. Seeking to ensure Los Angeles's opt-outs were compliant, the next morning, on January 4, 2024, we contacted the Notice Administrator's hotline to determine whether there was any issue with Los Angeles's opt-outs. Freeman Cappio Decl. ¶ 12. Unfortunately, after many attempts to contact the Notice Administrator, by January 12, 2024, we still had not gotten a definitive response. We then contacted Counsel for the parties by email on January 12, 2024. *Id.* We informed them that Los Angeles's opt-outs had been timely submitted to the Notice Administrator and enclosed copies of the opt-outs with the email. *Id.* at Exh. C. We were then told on January 16, 2024 by the Notice Administrator that Los Angeles's opt-out for the DuPont Settlement had been received and that Los Angeles had "successfully opted out," only to be told two days later that it lacked authority to make such a determination. *Id.* at ¶ 13, Exhs. D and E. Later the same day on January 18, we received yet another email from the Notice Administrator confirming "receipt of the City of LA's opt out request in the Dupont and 3M settlements." *Id.* at ¶ 13, Exh. F. To put it mildly, this process was confusing and delayed our discovery that 3M had any concern with Los Angeles's opt-out.

As a result of our January 12 email, we learned on January 18, 2024, that due to the clerical mistake, while the opt-out clearly listed the individuals entitled to receive a copy of the opt-out (the "Recipients"), *see Id.* at Exh. A, at 2-3, Los Angeles's opt-out had not been served on the Recipients, including Counsel for 3M. *Id.* at ¶ 15. Of course, Counsel for 3M had received the opt-out with the January 12 email, but, on January 18, 2024, the opt-outs were served again via email and certified mail, and in two instances, by process server, because the certified mail service was either delayed or unsuccessful. *Id.* at ¶ 16. In short, Los Angeles's opt-out was served on Counsel for 3M as soon as we learned of the clerical error; in fact, it was served on them by email on January 12, six days before we learned of the error, more than two weeks before the Fairness

4

hearing, and over two months before the Special Master's Declaration was filed on March 20, 2024. Freeman Cappio Decl. ¶ 14.

## II. LEGAL STANDARD

The right to opt out of a proposed class action settlement is protected under the Due Process Clause. As observed by the Supreme Court, "[t]his rule is part of our 'deep-rooted historic tradition that everyone should have his own day in court.' . . . As a consequence, '[a] judgment or decree among parties to a lawsuit resolves issues as among them, but it does not conclude the rights of strangers to those proceedings.'" *Richards v. Jefferson Cnty., Ala.*, 517 U.S. 793, 798, (1996) (citations omitted).

This Court has already addressed the legal standard for assessing opt-outs in its Order Regarding Compliance Assessments of Opt-Outs (the "Order"). Dkt. No. 4425. In that Order, the Court noted two basic principles. *Id.* at 2. First, "an opt out request need not perfectly conform to the format chosen by the district court or the proposed settlement agreement ***to effectively express a desire to opt out*** of a class action settlement."[4] Second, opting out is an "individual right," which "'must be exercised individually' in order to protect the due process rights of class members," thus excluding "mass opt-outs."[5] *Id.*

From these two basic principles the Court provided six specific rules governing the validity of opt-out requests. Order at 2-3. Mass opt-outs are not permitted; likewise, opt-outs that do not include formal declarations that the filer is authorized to make the opt-out decision are ineffective. By contrast, ministerial issues, like opt-outs included in a single envelope, opt-outs for multiple water systems owned by a single municipality, a single opt-out for both settlements, an opt-out

---

[4] Quoting *In re Deepwater Horizon*, 819 F.3d 190,196 (5th Cir. 2016) (emphasis added).
[5] Quoting *In re TikTok Inc. Consumer Privacy Litig.*, 617 F. Supp. 3d 904, 931 (N.D. Ill. 2022).

5

lacking certain language, or one that was received late but sent by the deadline, or in the form of an email, are all permitted and would result in valid opt-outs. And, as the Special Master acknowledged in his Declaration, none of this Court's "metrics" concern service of the opt-outs on interested counsel. Dkt. No. 4701, at 2.

This Court's guidance is consistent with the law generally:

> When, as is inevitable, class members do not follow the letter of the opt out provision and ambiguity arises, courts must interpret whether the class member's actions demonstrate an intent to opt out. The test adopted in most circuits requires that the class members have expressed a '***reasonable indication of a desire to opt out***.'

3 Rubenstein and Newburg on Class Actions § 9:46. (6th ed.) (citations omitted, emphasis added). *Accord* 7AA Wright & Miller, Fed. Prac. & Proc. Civ. § 1787 (3d ed. 2023) ("considerable flexibility is desirable in determining what constitutes an effective expression of a class member's desire to be excluded and any written evidence of that desire should suffice"); *In re Four Seasons Sec. Laws Litig.*, 493 F.2d 1288, 1291 (10th Cir. 1974) (*quoting* Wright & Miller passage above); *Plummer v. Chemical Bank*, 668 F.2d 654, 657 n.2 (2d Cir. 1982) ("Any reasonable indication of a desire to opt out should suffice."). Los Angeles has timely and amply indicated its desire to opt out.

### III. LEGAL ARGUMENTS

#### A. Los Angeles Properly Opted Out

By submitting its opt-out to the Notice Administrator in the form and manner prescribed in the Long-Form Notice, and well before the December 11, 2023 deadline, Los Angeles properly opted out of the 3M Settlement. Not only did Los Angeles comply with its obligation to send its opt-out to the Notice Administrator, it also served that opt-out on the other parties, including 3M, per the terms of the settlement. As a result, Los Angeles's opt-out should be deemed valid and it should not be included on Exhibit A.

6

3M may mistakenly believe that Los Angeles was required to serve notice on the parties simultaneously with its notice to the Notice Administrator. But, that argument is unsupported by the settlement documents here. As shown below, the Long-Form Notice, approved by the Court and sent to Class Members to apprise them of their rights under the proposed 3M Settlement, required that a written and signed opt-out submission "be received by the *Notice Administrator* no later than **December 11, 2023**."[6]

> The Request for Exclusion must be received by the Notice Administrator no later than **December 11, 2023**.
>
> The Request for Exclusion must certify, under penalty of perjury in accordance with 28 U.S.C. § 1746, that the filer has been legally authorized to exclude the Person from the Settlement and must provide:
>
> - an affidavit or other proof of the Settlement Class Member's standing;
> - the filer's name, address, telephone, facsimile number and email address (if available); and
> - the name, address, telephone number, and e-mail address (if available) of the Person whose exclusion is requested.

### B.     There is not a time requirement for the other Recipients.

Los Angeles's opt-out submission was received by the Notice Administrator on December 1, 2023. Freeman Cappio Decl. ¶ 9. As to service on other Recipients, while the Long-Form Notice directs the opt-out submission to also be served on the Recipients, the Notice is silent on a deadline for that service and does not require simultaneous service on the Notice Administrator and parties.[7] The terms of the Long-Form Notice should govern here.

---

[6] *See* Notice of Proposed Class Action Settlement and Court Approval Hearing, PFAS Water Settlement Website, at 8, https://www.pfaswatersettlement.com/wp-content/uploads/2023/09/AFF-3M-Long-Form-Notice-Final.pdf (last visited Mar. 22, 2024) (italics added; bold original).

[7] While service via ECF would be a simple solution to simultaneously advise all parties and the Court of opt-outs, in the DuPont settlement, the Court specifically advised eligible claimants they need not file opt-outs, thus discouraging that practice in this MDL. *See e.g.*, Quality Control Message, Dkt. No. 4106. Nevertheless, and somewhat contradictorily, in the 3M Settlement, the Preliminary Approval Order technically required opt-outs to be served on the Court. *See* Dkt. No. 3626, at 11. Other 3M Settlement documents did not contain this language, however.

Long-Form Notices are a crucial means of communicating opt-out requirements. As Judges Barbara J. Rothstein and Thomas E. Willging observe in their publication *Managing Class Action Litigation: A Pocket Guide for Judges*, "Notices are usually the only way to communicate with unnamed class members and enable them to make informed decisions about whether to participate in a settlement."[8] Courts have issued guidance to parties on how to communicate the right to opt out in a class action notice, writing that the notice "should require only the information needed to opt out of the settlement and no extraneous information or hurdles."[9] This same guidance is reflected in the Federal Judicial Center's *Notice Checklist and Plain Language Guide* for class action settlements.[10]

Moreover, there is no requirement for simultaneous service in Federal Rule of Civil Procedure 5. Thus, because Los Angeles *did* serve its opt-out on the Notice Administrator and all recipients, it has fully complied with all of the requirements to opt out of the 3M Settlement.

To the extent 3M now wishes that simultaneous service was a mandatory part of the opt-out process, it had ample opportunities to request the Court to impose such a clear requirement but did not do so. For example, on January 31, 2024, 3M and Class Counsel filed a joint motion for clarification regarding compliance assessments of opt-outs. Joint Motion for Clarification Regarding Compliance Assessments of Opt-Outs, Dkt. No. 4423. In that joint motion, the parties

---

[8] Federal Judicial Center (2005) at 18, https://www.uscourts.gov/sites/default/files/classgde.pdf.

[9] *See. e.g., Procedural Guidance for Class Action Settlements*, N.D. Cal. (last updated Aug. 4, 2022), https://www.cand.uscourts.gov/forms/procedural-guidance-for-class-action-settlements/ (stating the notice "should clearly advise class members of the deadline, methods to opt out, and the consequences of opting out.").

[10] *See Notice Checklist and Plain Language Guide*, Federal Judicial Center (2010) at 1, https://workplaceclassaction.lexblogplatform.com/wp-content/uploads/sites/214/2013/07/forms.pdf) (stating that "[t]here should be no unnecessary hurdles that make it difficult for class members to exercise their rights to opt out, object, submit a claim, or make an appearance.").

sought "similar guidance" to the guidance issued by the Court in the DuPont Settlement. *Id.* at 1. In filing that joint motion, 3M created the perfect chance to ask the Court to require service on the parties by a particular date. But it chose not to seek such a clear requirement. Indeed, at no time did Counsel for 3M ever seek clarification as to whether service on all parties by a certain date was required to effectively opt out. Following the Parties' joint motion, the Court issued guidance regarding compliance of opt-outs for the 3M settlement that made no mention of the simultaneous service. Dkt. No. 4425.

In short, because Los Angeles's opt-out complied with the requirements set forth in the Long-Form Notice to opt out, the City should not be included on Exhibit A or be forced to participate in the settlement.

### C.   Los Angeles Effectively Expressed a Desire To Opt Out

Even if simultaneous service was clearly required, which it was not, failure to comply with such a term cannot not be sufficient to prevent a party from opting out of a settlement. As this Court has already explained, *supra* pg. 5, an "opt out request need not perfectly conform to the format chosen by the district court." Rather than perfect conformity, the Court explained the question is whether a party has plainly expressed "a desire to opt out." *Id.* Here the question of whether Los Angeles has met the standard is straightforward. Los Angeles plainly expressed "a desire to opt out" by submitting its opt-out to the Notice Administrator on time and in the proper form. Its failure to let other parties know immediately of its desire to opt out does not suggest Los Angeles did not desire to opt out.

Failure to perfectly conform with the terms of the Settlement has not prevented other class members from opting out of this Settlement. For example, although the Settlement requires that an opt-out notice must be received by the Notice Administrator by December 11, 2023 and be in the form of written documents, the Court determined that such requirements were not material for

9

an effective opt-out. *Supra*, pp. 5-6. Instead, the Court held that opt-outs received late by the Notice Administrator or those sent by email would be treated as valid.

Given the reasonable leeway the Court has already granted in those contexts, it would be unfair for Los Angeles's opt-out, which was timely filed and in the proper format, to be rejected simply because it failed to notify the parties simultaneously. In fact, the Court's Order does not even mention issues related to the service on other parties and Los Angeles has been unable to locate a single reported case in which the service of an opt-out was even discussed, much less held to be the basis for non-compliance. That makes sense: in a class action, the court appoints an administrator to issue class notice, receive opt-out requests, and report this information to the court and the parties. *See* Manual for Complex Litigation, Fourth, § 21.321 ("Typically, opt-out forms are filed with the clerk, although in large class actions the court can arrange for a special mailing address and designate an administrator retained by counsel and accountable to the court to assume responsibility for receiving, time-stamping, tabulating, and entering into a database the information from responses (such as name, address, and social security number)"); *see also* 3 Newberg and Rubenstein on Class Actions § 9:46 (6th ed.). While it might be convenient in some cases for class members who are opting out to let the settling parties know directly, and not just through the notice administrator, convenience cannot undermine a party's Constitutional Due Process rights to out of a settlement and pursue its own claims. This is not a close question. Los Angeles's opt-out is compliant and should be honored.

### D.     Even if the Court Found that Simultaneous Service was Required, Los Angeles's Delay in Service Is Excusable

Finally, even if the Court concluded that simultaneous service was required to validly opt out, and that such service was a clear and material requirement of the opt-out process, our error in failing to do so would constitute "excusable neglect."

Whether a mistake is "excusable" is an equitable determination that must take "account of all relevant circumstances surrounding" the mistake. *See Pioneer Inv. Serv. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993). These circumstances include the length of any delay and any impact on judicial proceedings, the reason for the delay, whether the party acted in good faith, and any prejudice to the opposing party. *See In re Brand Name Prescription Drugs Antitrust Litig.*, 171 F.R.D. 213, 216 (N.D. Ill. Jan. 27, 1997) (citing *Pioneer Inv. Servs. Co.*, 507 U.S. at 395). Here, a careful review of "all relevant circumstances" demonstrates that any inadvertent failure of Los Angeles to simultaneously serve its opt-out on all parties was merely an unfortunate clerical oversight that was rectified as soon as it was discovered. *See Pioneer Inv. Servs. Co.*, 507 U.S. at 388 ("[B]y empowering the courts to accept late filings where the failure to act was the result of excusable neglect . . . Congress plainly contemplated that the courts would be permitted, where appropriate, to accept late filings caused by inadvertence, mistake, or carelessness.") (internal quotations omitted).

First, the length of any delay in serving a copy of Los Angeles's opt-out on Counsel for 3M was minimal and has had a negligible impact, if any, on these proceedings. For example, Los Angeles served its opt-outs on Counsel for 3M by January 12, 2024, but the Special Master did not even submit his declaration regarding non-compliant opt-outs until over two months later, on March 20, 2024. It is clear that even if Los Angeles had mailed its opt-out to Counsel for 3M by December 11, 2023, "this matter would have proceeded at essentially the same pace as it will now." *See In re Valeant Pharmaceuticals Int'l, Inc. Sec. Litig.*, No. 3:15-cv-07658, 2021 WL 2161637, at *9 (D.N.J. Apr. 21, 2021). In *In re Valeant Pharmaceuticals*, Plaintiff corrected their exclusion request 29 days after their mistake. *Id.* The Special Master wrote that this was a "*de*

11

*minimis* delay having no cognizable impact on the judicial proceedings."). Here the delay of 31 days is similarly *de minimis*.

Second, Los Angeles has, at all times, acted in good faith in an attempt to comply with the opt-out requirements. This is not a case of gaming the system. This is an innocent mistake. A party's efforts to comply with the stated requirements should be given considerable weight. *See In re Brand Name Prescription Drugs*, 171 F.R.D. at 216 (placing "the most weight on [Plaintiff's] efforts (though perhaps misguided) to comply with the deadline."). Here, Los Angeles timely served the Notice Administrator and listed all required parties as cc's in its opt-out request. As stated above, the reason for any delay was an unfortunate clerical mistake that was remedied as soon as it was discovered. This mistake is merely "a form of human error and not suggestive of some nefarious intent by [Plaintiff] to mislead Defendants." *See In re Valeant Pharm. Int'l, Inc. Sec. Litig.*, No. 3:20-cv-07462-MAS-LHG, 2021 WL 2161637, at *9 (D.N.J. Apr. 21, 2021). Indeed, Los Angeles moved promptly to remedy this mistake as soon as it became aware of it. Los Angeles's good faith efforts to comply with the procedural requirements weigh in favor of finding that any mistake is plainly "excusable."

Finally, 3M was not reasonably prejudiced by the delay in service. Los Angeles timely submitted its opt-out request to the Notice Administrator on December 1, 2023. Los Angeles also served its opt-out on January 12, 2024, with hard copies to all Recipients on January 18, 2024. As of mid-January, the Special Master had not yet provided his determination under Paragraph 9.2 of the Settlement Agreement to the parties. *See* Dkt. No. 4425, at 1. Indeed, as noted in the Court's Order Regarding Compliance Assessments of Opt-Outs, the Special Master had not provided his report to *3M* as of January 31, 2024, *id.*, and the relevant period for 3M to exercise its Walk-Away Right would extend beyond the Final Fairness Hearing held on February 2, 2024. *Id.* 3M was thus

12

well aware of Los Angeles's clearly expressed desire to opt out long before 3M had to decide whether to exercise its Walk-Away Right.[11] Similarly, any delay in service of Los Angeles's opt-out could not have impacted 3M's ability to make any legal arguments to the Court. As explained above, when 3M sought guidance from the Court on how to handle issues regarding the validity of opt-outs, it had the opportunity to tell the Court it believed such a delay did prejudice it, but it did not.

Viewing all relevant circumstances as a whole, Los Angeles made a ministerial mistake and was briefly delayed in serving a copy of its opt-out to all Recipients. Nevertheless, Los Angeles timely served its opt-out request on the Notice Administrator and promptly served its request on all Recipients, including Counsel for 3M, when it learned of its clerical mistake. 3M has not been prejudiced by this delay. Should the Court determine that the failure to serve Counsel for 3M by a particular date was neglect, Los Angeles respectfully requests the Court find that any such neglect is clearly excusable.

## IV. CONCLUSION

For the reasons set forth herein, Los Angeles respectfully requests that the Court confirm that Los Angeles's opt-out be deemed compliant and effective to exclude Los Angeles from the 3M Settlement Agreement.

---

[11] Under the Settlement Agreement, 3M has a right to terminate the settlement ("Walk-Away Right"). *See* Dkt. No. 4425, at 1. Paragraph 9.2 of the 3M Settlement Agreement provides that following review of the opt-outs, the Special Master will determine whether the Required Participation Threshold has been met and inform the parties of this determination. "The timing for 3M's Walk-Away Right is based on 3M's receipt of the Special Master's determination." *Id.*

Dated:  March 23, 2024

Respectfully submitted,

**KELLER ROHRBACK L.L.P.**

By */s/ Gretchen Freeman Cappio*
Gretchen Freeman Cappio
Lynn L. Sarko
Daniel P. Mensher
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
Telephone: (206) 623-1900
Fax (206) 623-3384
gcappio@kellerrohrback.com
lsarko@kellerrohrback.com
dmensher@kellerrohrback.com

*Attorneys for the City of Los Angeles*

14

**CERTIFICATE OF SERVICE**

I hereby certify that on March 23, 2024, the foregoing document was filed using the Court's CM/ECF system, which will automatically send notice of the same to all registered counsel of record.

       /s/ *Gretchen Freeman Cappio*
Gretchen Freeman Cappio
Lynn L. Sarko
Daniel P. Mensher
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
Telephone: (206) 623-1900
Fax (206) 623-3384
gcappio@kellerrohrback.com
lsarko@kellerrohrback.com
dmensher@kellerrohrback.com

***Attorneys for the City of Los Angeles***