**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| **IN RE: AQUEOUS FILM-FORMING FOAMS PRODUCTS LIABILITY LITIGATION** | ) ) ) ) ) ) ) ) ) ) | MDL No. 2:18-mn-2873-RMG<br><br>**This Document Relates to:**<br><br>*City of Camden v. E.I. DuPont De Nemours and Co. (n/k/a EIDP, Inc.), et al.*, No. 2:23-cv-03230-RMG |

**METROPOLITAN'S MEMORANDUM OF LAW IN RESPONSE TO
CLASS COUNSEL'S MOTION TO REQUIRE A RULE 7 COST BOND**

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................... 3

I.      INTRODUCTION ........................................................................................................ 6

II.     ARGUMENT ................................................................................................................ 8

        A.     The motion should be denied because Class Counsel do not affirm they conferred with Metropolitan before filing this motion. ................................... 8

        B.     On its merits, the Rule 7 bond motion should be denied. .................................... 8

                1.     Rule 7 protects appellees from impecunious appellants, not from public agency appellants with multi-billion dollar budgets. ............................. 8

                2.     The *Meabon* factors favor Metropolitan. ................................................. 9

                3.     Metropolitan has standing to appeal, and its appeal is meritorious, not frivolous. ................................................................................................ 10

                4.     Metropolitan has not engaged in bad faith or vexatious conduct. ........ 12

                5.     Separately, as a matter of comity, this Court should exempt Metropolitan from any bonding requirement. ............................................................. 13

                6.     While harm is not a Rule 7 factor to consider, Class Counsel are responsible for the very harm of which they complain. ....................... 13

        C.     If the Court orders a Rule 7 cost bond, it should be minimal. .......................... 14

                1.     The "costs on appeal" are those described in Fed. R. App. P. 39. ........ 14

                2.     The bond amount should not include attorney's fees. ........................... 16

                3.     The bond amount should not include "damages." .............................. 16

        D.     If the Court requires a bond, the Court should stay its order to allow time for Metropolitan to procure a bond or to appeal. ................................................... 18

III.    CONCLUSION ........................................................................................................... 19

CERTIFICATE OF SERVICE ............................................................................................... 20

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Adsani v. Miller*,
    139 F.3d 67 (2d Cir. 1998) ............................................................................................................. 8

*Atanassova v. Gen. Motors LLC*,
    No. 20-cv-01728, 2021 WL 3054723 (D.S.C. Jan. 26, 2021) ...................................................... 8

*Beech Aircraft Corp. v. Rainey*,
    488 U.S. 153 (1988) ....................................................................................................................... 9

*Bigger v. Facebook, Inc.*,
    947 F.3d 1043 (7th Cir. 2020) ..................................................................................................... 12

*City of San Antonio v. Hotels.com, L.P.*,
    593 U.S. 330 (2021) ..................................................................................................................... 16

*Doe v. Pub. Citizen*,
    749 F.3d 246 (4th Cir. 2014) ....................................................................................................... 10

*Fam. PAC v. Ferguson*,
    745 F.3d 1261 (9th Cir. 2014) ..................................................................................................... 16

*Franchise Tax Bd. of Cal. v. Hyatt*,
    538 U.S. 488 (2003) ..................................................................................................................... 13

*Hill v. State St. Corp.*,
    794 F.3d 227 (1st Cir. 2015) ......................................................................................................... 9

*Hirschensohn v. Lawyers Title Ins. Corp.*,
    No. 96–7312, 1997 WL 307777 (3d Cir. June 10, 1997) ............................................................ 15

*In re Am. President Lines, Inc.*,
    779 F.2d 714 (D.C. Cir. 1985) ............................................................................................... 10, 14

*In re Cardizem CD Antitrust Litig.*,
    391 F.3d 812 (6th Cir. 2004) ....................................................................................................... 17

*In re Corrugated Container Antitrust Litig.*,
    756 F.2d 411 (5th Cir. 1985) ....................................................................................................... 11

*In re Krispy Kreme Doughnuts, Inc., Sec. Litig.*,
    No. 04CV00416, 2007 WL 9754407 (M.D.N.C. May 25, 2007) ................................................. 8

*In re Meabon*,
    No. 15-cv-00398, 2017 WL 374921 (W.D.N.C. Jan. 25, 2017) ............................................ *passim*

*Kaiser Aluminum & Chem. Corp. v. Bonjorno*,
  494 U.S. 827 (1990) .................................................................................................................. 16

*Kenny v. Quigg*,
  820 F.2d 665 (4th Cir. 1987) .................................................................................................... 10

*Metro. Water Dist. of S. Cal. v. Winograd*,
  24 Cal.App.5th 881 (2018) ....................................................................................................... 13

*Nken v. Holder*,
  556 U.S. 418 (2009) .................................................................................................................. 18

*Roadway Express, Inc. v. Piper*,
  447 U.S. 752 (1980) .................................................................................................................. 15

*Schmidt v. FCI Enterprises LLC*,
  3 F.4th 95 (4th Cir. 2021) ............................................................................................. 15, 17, 18

*Sky Cable, LLC v. DIRECTV, Inc.*,
  23 F.4th 313 (4th Cir. 2022) ..................................................................................................... 15

*Tennille v. W. Union Co.*,
  774 F.3d 1249 (10th Cir. 2014) ................................................................................................ 17

*United States v. Gray*,
  405 F.3d 227 (4th Cir. 2005) ...................................................................................................... 9

*Vaughn v. Am. Honda Motor Co.*,
  507 F.3d 295 (5th Cir. 2007) .................................................................................................... 14

**Statutes**

28 U.S.C. § 2408 ............................................................................................................................ 13

California Code of Civil Procedure § 995.220 (West 2009) ......................................................... 13

**Rules**

4th Cir. R. 30(b)(5)(A) .................................................................................................................. 15

4th Cir. R. 31(d) ............................................................................................................................. 15

4th Cir. R. 39(a) ............................................................................................................................. 15

Fed. R. App. P. 7 ..................................................................................................................... *passim*

Fed. R. App. P. 38 ...................................................................................................................... 9, 17

Fed. R. App. P. 39 ..................................................................................................... 14, 15, 16, 19

Fed. R. Civ. P. 62(e) ..................................................................................................................... 13

D.S.C. R. 7.02 ................................................................................................................................ 8

**Miscellaneous**

6 William B. Rubenstein, *Newberg and Rubenstein on Class Actions* § 18:32 (6th ed. 2022) ................... 11

*Budget & Finance*, Metro. Water Dist. of S. Cal., https://shorturl.at/jlNY0 ................................................ 9

Fourth Cir., *U.S. Court of Appeals for the Fourth Circuit Bill of Costs Form* (Dec. 1, 2023),
    https://www.ca4.uscourts.gov/docs/pdfs/costs .................................................................................... 15

I. **INTRODUCTION**

Class Counsel's motion for a bond to cover costs on appeal under Fed. R. App. P. 7 rests in large part on the false premise that The Metropolitan Water District of Southern California (Metropolitan) is engaged in "a selfish attempt to frustrate the implementation of the Settlement for thousands of Class Members." (Mot. at 3.) Metropolitan unequivocally denies that inflammatory charge. Its appeal is not designed to frustrate implementation of the settlement or to delay disbursement of settlement proceeds. Metropolitan does not oppose immediate disbursement of the proceeds. Its appeal has nothing to do with those disbursements and, even if successful, will not affect them.

Both before and after opting out of the class action settlement approved by this Court, Metropolitan requested clarification whether it would be bound by the settlement agreement's release provisions despite opting out of the class and the settlement agreement. The need for clarity persists because of discrepancies between the language of the settlement agreement, the Joint Interpretive Guidance that followed, and this Court's final approval order. The parties have resisted Metropolitan's efforts to obtain clarification, leaving Metropolitan with no choice but to appeal.

Class Counsel's attempt to saddle Metropolitan with responsibility for delaying distribution of settlement funds is disingenuous. Class Counsel—not Metropolitan—are responsible for the delay. Class Counsel negotiated an agreement, now approved by the Court, that anticipates appeals and defers distribution of settlement funds pending the outcome of those appeals.

To forestall future disputes, Metropolitan simply seeks clarity concerning the scope and effect of the settlement agreement's release on water wholesalers who have opted out.

Metropolitan is not alone in its concern. The Veolia Entities have voiced similar concerns about the scope of the release. (*See* ECF Nos. 4505, 4744.)

Turning now to the motion, Class Counsel have responded to (some might say retaliated for) Metropolitan's appeal by moving to require Metropolitan to post a multi-million-dollar cost bond under Fed. R. App. P. 7. The request is meritless and should be denied.

First, Class Counsel did not comply with this Court's meet-and-confer rule before filing the motion. This reason alone justifies denying the motion.

Next, the sole purpose of a Rule 7 bond is to protect an appellee's recovery of costs on appeal by ensuring that a possibly impecunious appellant can pay those costs if the appeal is unsuccessful. Metropolitan, a public entity with a multi-billion-dollar budget, can afford to pay taxable costs, which are not likely to exceed a few hundred dollars. Class Counsel do not contend otherwise. Class Counsel invoke the factors from *In re Meabon*, No. 15-cv-00398, 2017 WL 374921 (W.D.N.C. Jan. 25, 2017), but those factors favor Metropolitan. Additionally, as a matter of comity, no bond should be required because Metropolitan is a California government agency relieved of litigation bonding requirements under state law.

In all events, if a Rule 7 bond were ordered, it should be limited to the actual "costs on appeal," as Rule 7's plain text instructs. That sum should not exceed $200, the likely outer limit of taxable costs, *see infra* Part II–C–1, because neither attorney's fees nor damages (such as interest) are properly included in a Rule 7 bond. Indeed, no damages exist. Class Counsel admit the settlement funds are already accruing interest.

For these reasons, this Court should deny the motion outright. If the Court nevertheless decides to order a bond, it should be a modest bond to cover the modest costs likely to be taxable on appeal.

## II.     ARGUMENT

### A.    The motion should be denied because Class Counsel do not affirm they conferred with Metropolitan before filing this motion.

This Court's Rule 7.02 provides that "all motions shall contain an affirmation by the movant's counsel that prior to filing the motion he or she conferred or attempted to confer with opposing counsel and attempted in good faith to resolve the matter contained in the motion."

Class Counsel's bond motion lacks this mandatory affirmation. As this Court has recognized, that is reason enough to deny the motion. *See, e.g.*, *Atanassova v. Gen. Motors LLC*, No. 20-cv-01728, 2021 WL 3054723, at *2 (D.S.C. Jan. 26, 2021) (Gergel, J.). In other filings, Class Counsel have advocated strict consequences for non-compliance with Rule 7.02, even to the point of seeking sanctions. (ECF No. 4741.)

### B.    On its merits, the Rule 7 bond motion should be denied.

#### 1.    Rule 7 protects appellees from impecunious appellants, not from public agency appellants with multi-billion dollar budgets.

A "district court may require an appellant to file a bond or provide other security in any form and amount necessary to ensure payment of costs on appeal." Fed. R. App. P. 7. This Rule has one "apparent purpose": "to protect the rights of appellees brought into appeals courts by appellants" that have "no assets in the United States" and thus could not pay a cost award if the judgment is affirmed. *Adsani v. Miller*, 139 F.3d 67, 75 (2d Cir. 1998); *see also In re Krispy Kreme Doughnuts, Inc., Sec. Litig.*, No. 04CV00416, 2007 WL 9754407, at *1 (M.D.N.C. May 25, 2007) (denying Rule 7 motion—even though the "appeal borders on frivolousness"—because the appellant "has more than sufficient assets to cover any costs incurred on appeal").

Here, Metropolitan has adequate resources to pay appellate costs if the appealed order and judgment are affirmed. "Metropolitan maintains an annual operating budget of nearly $2

8

billion." *Budget & Finance*, Metro. Water Dist. of S. Cal., https://shorturl.at/jlNY0 (last visited Mar. 27, 2024). Metropolitan is simply not the appellant for whom Rule 7 was intended. Class Counsel—the moving party—have introduced no contrary evidence and have not suggested that Metropolitan could not afford to pay an award of appellate costs.

        **2.**     **The *Meabon* factors favor Metropolitan.**

Class Counsel contend that three "*Meabon* factors" justify a Rule 7 bond. (Mot. at 4–6, ECF No. 4696-1, citing *Meabon*, 2017 WL 374921.) The first factor is the risk that the appellant will not pay appellate costs. *Meabon*, 2017 WL 374921, at *2. This is the core issue under Rule 7 (as discussed above) and it does not justify a bond here. Metropolitan has adequate assets to pay a cost award and Class Counsel have introduced no evidence to the contrary.

*Meabon*'s second factor (appellant's bad faith or vexatious conduct) and third factor (the merits of the appeal) have not been recognized by the Fourth Circuit and have no grounding in the text of Rule 7. Instead, this Court ought to focus on the plain language of Rule 7, which is concerned with ability to pay. *See, e.g.*, *United States v. Gray*, 405 F.3d 227, 241 (4th Cir. 2005) ("[W]e turn to the traditional tools of statutory construction in order to construe [Federal Rules]. We begin with the language itself." (quoting *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 163 (1988))). Focusing elsewhere (on bad faith conduct or the merits of the appeal) risks interfering in the operation of other Rules designed for those purposes.

For example, under Fed. R. App. P. 38, circuit courts, not district courts, assess the merit, or lack of merit, of an appeal. *See Hill v. State St. Corp.*, 794 F.3d 227, 230 (1st Cir. 2015) ("[T]he question of whether, or how, to deter frivolous appeals is best left to the courts of appeals. . . . Allowing district courts to impose high Rule 7 bonds . . . risks impermissibly encumber[ing] appellants' right to appeal and effectively preempt[ing] this court's prerogative to

9

make its own frivolousness determination." (alterations in original) (citation omitted)); *In re Am. President Lines, Inc.*, 779 F.2d 714, 717 (D.C. Cir. 1985) (rejecting a Rule 7 bond proposed to protect "against the possibility that Safir's appeal might turn out to be frivolous. The traditional countermeasure for an appeal thought to be frivolous is a motion in the appellate court to dismiss.").

Rule 7 should play no role in resolving these types of disputes. Nevertheless, we now explain why the other *Meabon* factors favor Metropolitan and counsel against requiring a bond.

### 3. Metropolitan has standing to appeal, and its appeal is meritorious, not frivolous.

Class Counsel question Metropolitan's standing to appeal because it opted out of the class and settlement. (Mot. at 3.) The fact that Metropolitan opted out and is not formally a party is no impediment to its appeal. The Fourth Circuit permits appeals by nonparties who have participated in district court proceedings and who are aggrieved by a judgment or order. *See, e.g.*, *Doe v. Pub. Citizen*, 749 F.3d 246, 259–62 (4th Cir. 2014); *Kenny v. Quigg*, 820 F.2d 665, 668 (4th Cir. 1987). Class Counsel must know this rule—they cited *Doe* three times in their motion. (Mot. at 3 n.5, 5, 5 n.8.)

Class Counsel rely on cases saying that opt-outs lack standing and may not appeal (Mot. at 3 n.5, 5–6), but those were cases in which opt-outs had no stake in the case. Metropolitan's situation is critically different because—*despite* having opted out—the Court overruled Metropolitan's objection and ruled that Metropolitan *may* be bound by the release in the settlement agreement to which it is not a party. (ECF No. 4471 at 30.) That adversely implicates Metropolitan's interests and confers standing for appeal.

Further, Metropolitan's merits argument is compelling. As explained in its most recent filing (ECF No. 4726, which we incorporate here), Metropolitan and others (*see* ECF Nos. 4505,

4744) are concerned about an overbroad release provision in the settlement agreement between the Settlement Class and The Chemours Company, The Chemours Company FC, LLC, DuPont de Nemours, Inc., Corteva, Inc., and E.I. DuPont de Nemours and Company n/k/a EIDP, Inc. (collectively, the DuPont Defendants). The Joint Interpretive Guidance says that, even if wholesale water providers (like Metropolitan) opt out of the settlement agreement, the wholesalers' claims against the DuPont Defendants could be released. (ECF No. 3858–1 at 5.) Relying on paragraph 9.7.3 of the settlement agreement, Class Counsel reassure Metropolitan that opt-outs like Metropolitan do *not* release their claims against the DuPont Defendants. (ECF No. 4691–1 at 15.) Metropolitan welcomes that interpretation, of course, but it is wary because paragraph 9.7.3 does not mention the settlement agreement—it refers only to orders and judgments of the Court. Moreover, the discrepancy between paragraph 9.7.3 and the Joint Interpretive Guidance raises serious questions that the parties have yet to satisfactorily address. What is the legal effect of the Joint Interpretive Guidance? Is it an amendment to the settlement agreement? If they conflict, which controls? The Guidance raises more questions than it answers.

 Metropolitan should not be bound by a class settlement agreement after excluding itself from the class and settlement agreement and becoming a non-party. "Indeed, the entire point of opting out of the class action is to escape the binding effect of the class suit." 6 William B. Rubenstein, *Newberg and Rubenstein on Class Actions* § 18:32 (6th ed. 2022). This Court cast doubt on that settled legal principle by approving the settlement agreement over Metropolitan's and others' objections. (ECF No. 4471 at 30.) But the Fourth Circuit is likely to disagree. The release in the class settlement agreement cannot apply to Metropolitan precisely because it opted out. "An opt-out plaintiff is not a party to the class action and is not bound by the class action judgment." *In re Corrugated Container Antitrust Litig.*, 756 F.2d 411, 418–19 (5th Cir. 1985);

*accord, e.g.*, *Bigger v. Facebook, Inc.*, 947 F.3d 1043, 1046 n.1 (7th Cir. 2020) ("[M]embers of a Rule-23 class must opt out not to be bound.").

In fact, no party appears to disagree. Class Counsel have affirmatively agreed in writing. (ECF No. 4691-1 at 16 ("Met is not bound by the Settlement Agreement in any event."); *id.* at 11–12 ("Moreover, as an opt out, Met's Objections are plainly moot as they are not bound by the Settlement Agreement and/or the Court's Final Approval Order.").) And the DuPont Defendants have not contested that point. Metropolitan simply seeks judicial confirmation, which the Fourth Circuit will likely provide. The third *Meabon* factor therefore favors Metropolitan.

### 4.     Metropolitan has not engaged in bad faith or vexatious conduct.

Turning briefly to the second *Meabon* factor, Metropolitan has litigated this dispute in a reasonable manner, as its and Marten Law LLP's recent responses to a sanctions motion recount in detail. (ECF Nos. 4713, 4726.) We will not repeat those responses here but will emphasize a few key points.

Metropolitan has been trying (since October 2023) to resolve its legitimate concern about the overbroad release by explaining the problem to the parties and by proposing solutions. (*Id.* at 3–7.) The parties have responded that Metropolitan's proposed "changes are meaningless." (ECF No. 4691-1 at 10.) If so, the parties should have no substantive objection to Metropolitan's proposals, yet Class Counsel have stonewalled Metropolitan and sought sanctions. It appears Metropolitan's only remaining means of having its concern addressed is through appeal. (ECF No. 4726 at 21–22.) Taken together, these steps demonstrate a forthright effort to preserve Metropolitan's rights, not bad faith or vexatious conduct. Thus, the second *Meabon* factor favors Metropolitan as well.

### 5. Separately, as a matter of comity, this Court should exempt Metropolitan from any bonding requirement.

The California Legislature formed Metropolitan as a government agency to "distribute[ ] water to member water-agencies in Southern California." *Metro. Water Dist. of S. Cal. v. Winograd*, 24 Cal.App.5th 881, 883 (2018). Under California law, state agencies and districts are exempt from posting litigation-related bonds. Cal. Civ. Proc. Code § 995.220(b) (West 2009). California extends the same courtesy to federal officers and agencies. *Id.* § 995.220(c). And in federal court, federal law supplies a similar exemption for federal agencies and officers. 28 U.S.C. § 2408; *see also* Fed. R. Civ. P. 62(e).

As a matter of comity, this Court should treat a California state entity (Metropolitan) as California courts would treat federal and state agencies in similar circumstances. *Cf. Franchise Tax Bd. of Cal. v. Hyatt*, 538 U.S. 488, 499 (2003) (applying principles of comity, Nevada courts would immunize California to the same extent that Nevada law would immunize its own agencies and officials). Metropolitan should therefore be relieved from any bonding requirement.

### 6. While harm is not a Rule 7 factor to consider, Class Counsel are responsible for the very harm of which they complain.

Finally, Class Counsel complain that Metropolitan's appeal will delay the implementation of the settlement and the distribution of funds to class members. (Mot. at 1, 3, 6.) To be clear, Metropolitan has no objection to distributing settlement funds to class members pending its appeal, which even if successful, will have no impact on the distributions.

The *parties*, not Metropolitan, are responsible for the delay of which Class Counsel now complain. Having approved the settlement agreement, the Court knows that it anticipated appeals (like Metropolitan's), and the parties agreed to accept the resulting delays in payment. (*See* ECF

13

No. 3393–2, Settlement Agreement §§ 2.17 (defining "Effective Date" as the date of Final Judgment), 2.23 (defining "Final Judgment" as the point at which "no further appeal is possible"), 11.3 (specifying that the distribution of funds "will be strictly governed by . . . Exhibit C."), Ex. C, § 1(e) (explaining that the Claims Administrator will not "make any payment until after the Effective Date").) Indeed, Class Counsel negotiated a deposit of funds by the DuPont Defendants into an interest-bearing escrow account to compensate class members for the appellate delays they anticipated. Those funds have been deposited and are collecting interest. (Mot. at 7 n.10.) But now Class Counsel, apparently dissatisfied with their bargain, blame the delay on Metropolitan, which played no role in negotiating the settlement agreement, has no incentive to delay payments to class members, and gains no benefit from the delay. Class Counsel should not be heard to complain that Rule 7 relief is needed to ameliorate self-inflicted harm. *See Vaughn v. Am. Honda Motor Co.*, 507 F.3d 295, 299 (5th Cir. 2007) (rejecting a similar argument where "the settlement does not become effective, by its terms, until any appeals are concluded").

      **C.**      **If the Court orders a Rule 7 cost bond, it should be minimal.**

            **1.**      **The "costs on appeal" are those described in Fed. R. App. P. 39.**

Rule 7 states that "the district court may require an appellant to file a bond or provide other security in any form and amount necessary to ensure payment of *costs on appeal*." Fed. R. App. P. 7 (emphasis added). The various types of recoverable appellate costs—photocopy expenses, transcript and filing fees, and so forth—are specified in Fed. R. App. P. 39.

The District of Columbia and Third Circuits have held that the "costs on appeal" to which Rule 7 refers "are simply those that may be taxed against an unsuccessful litigant under Federal Appellate Rule 39, and do not include attorneys' fees that may be assessed on appeal." *Am.*

14

*President Lines*, 779 F.2d at 716 (footnote omitted); *accord Hirschensohn v. Lawyers Title Ins. Corp.*, No. 96–7312, 1997 WL 307777, at *1–3 (3d Cir. June 10, 1997) (relying on *Roadway Express, Inc. v. Piper*, 447 U.S. 752 (1980), as well as the Wright & Miller and Moore's Federal Practice treatises).

Under these authorities, and because there is no contrary Fourth Circuit authority,[1] a Rule 7 cost bond should not exceed the Rule 39 costs that Class Counsel might incur if they succeed in defending the judgment on appeal.

Here, Class Counsel will not be filing a notice of appeal or paying appeal bond premiums. *See* Fed. R. App. P. 39(e)(3)–(4). Nor will Class Counsel be charged a fee for preparing and transmitting the record. *See* Fed. R. App. P. 39(e)(1). And the only pertinent transcript (of the hearing on the motion for final settlement approval) has long since been provided by the reporter and paid for by the parties. *See* Fed. R. App. P. 39(e)(2).

That leaves a single category of recoverable costs—the expense in photocopying briefs and appendices submitted to the Fourth Circuit. *See* Fed. R. App. P. 39(c); *see also* Fourth Cir., *U.S. Court of Appeals for the Fourth Circuit Bill of Costs Form* (Dec. 1, 2023), https://www.ca4.uscourts.gov/docs/pdfs/costs. The Fourth Circuit requires parties to submit a single paper copy of an answering brief and a single paper copy of an appendix. 4th Cir. R. 30(b)(5)(A), 31(d). Parties may request fifteen cents per photocopied page. 4th Cir. R. 39(a). Estimating generously, even if Class Counsel submit a 60-page answering brief and a 1,000-page appendix (highly unlikely, since Metropolitan will submit a thorough appendix with its opening

---

[1] In *Schmidt v. FCI Enterprises LLC*, the court refused to enforce a district court order requiring a Rule 7 bond. 3 F.4th 95, 99–101 (4th Cir. 2021). And in the final footnote in *Sky Cable, LLC v. DIRECTV, Inc.*, the court mentioned in passing that a Rule 7 bond included attorney's fees without either approving or disapproving that approach. 23 F.4th 313, 321 n.8 (4th Cir. 2022).

brief), Class Counsel's recoverable costs would be $159.

Metropolitan is prepared to submit a Rule 7 bond in that amount, though it seems pointless to do so. *See Meabon*, 2017 WL 374921, at *3 (denying Rule 7 motion: "Given the likely low costs for Appellee to litigate the appeal to the Fourth Circuit, there is not a high risk of non-payment, nor would Appellee be at a great loss if non-payment occurred. Appellee has not submitted any evidence that Appellant will not be able to pay any costs").

### 2. The bond amount should not include attorney's fees.

Class Counsel do not argue that a Rule 7 cost bond should include attorney's fees, and rightly so. Rule 7 mentions "costs," but not "attorney's fees," and the circuits are nearly unanimous that "fees" are not "costs" under Rule 39. *See Fam. PAC v. Ferguson*, 745 F.3d 1261, 1266–67 (9th Cir. 2014) (collecting cases and noting "the drafters intended 'costs' under Rule 39 to refer narrowly to administrative costs, not to attorney's fees"). Further, the Supreme Court recently made clear that Rule 39 comprehensively addresses appellate costs, undermining any argument for a special construction of Rule 7's phrase "costs on appeal" that includes attorney's fees. *See City of San Antonio v. Hotels.com, L.P.*, 593 U.S. 330, 332, 336, 341–42 (2021).

### 3. The bond amount should not include "damages."

Class Counsel request that the bond amount include "damages" in the form of interest on the settlement fund. (Mot. at 7–8.) This request should be denied for two reasons.

First, as Class Counsel concede, the DuPont Defendants have already funded the settlement, and those funds are earning interest. (Mot. at 7 n.10.) Metropolitan's appeal will not prevent interest from accruing, thus the parties are protected against the cost of the appellate delay they anticipated. *See Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827, 834–36 (1990) (explaining that the purpose of interest is to compensate for the loss of use of money). A

Rule 7 bond including interest would serve no legitimate purpose.

Second, Rule 7 cannot fairly be construed to require an appellant to bond "damages." Another Rule illustrates why. "If a court of appeals determines that an appeal is frivolous, it may, after a separately filed motion or notice from the court and reasonable opportunity to respond, award just *damages and* single or double *costs* to the appellee." Fed. R. App. P. 38 (emphasis added). By listing "damages" and "costs" separately, the drafters of the Appellate Rules showed that they intended these terms to have separate meaning. Of course, Rule 7 does not include the word "damages." Moreover, as other courts have recognized, Rule 38—not Rule 7—is the proper mechanism for addressing a purportedly frivolous appeal. *See supra* p. 6.

That is why nearly every court has rejected the idea that Rule 7 bonds may include damages. A Rule 7 bond is not a supersedeas bond preventing enforcement of a judgment; it is a cost bond. *E.g.*, *Tennille v. W. Union Co.*, 774 F.3d 1249, 1256 (10th Cir. 2014) ("What Plaintiffs really appear to be seeking is an appeal bond that includes damages due to the delay Objectors' merits appeals might cause. But that is not the purpose of a Rule 7 bond."); *cf. Schmidt*, 3 F.4th at 99 (rejecting the related argument that the amount of a Rule 7 bond may be linked to the amount of the appealed judgment).

The only apparent outlier is the Sixth Circuit (*see* Mot. at 6), which in one case permitted damages (mostly administrative costs) to be included in a Rule 7 bond. *In re Cardizem CD Antitrust Litig.*, 391 F.3d 812, 814–16 (6th Cir. 2004). But *Cardizem* did not cite or acknowledge Rule 38, nor the other authorities we have collected above. And the decision rested on a unique Tennessee statute specifically authorizing recovery of "damages," along with fees and costs, in the event of a frivolous appeal, *id.* at 817–18, a critical feature absent from this and other cases.

For these reasons, the Court should not require a seven- or eight-figure Rule 7 bond.

**D.     If the Court requires a bond, the Court should stay its order to allow time for Metropolitan to procure a bond or to appeal.**

Procuring a bond is not simple. Typically a principal will consult with one or more bond brokers and seek to place a bond with a surety on satisfactory terms, which often includes paying an annual premium and furnishing collateral. This process requires time. If, despite the many arguments above demonstrating that no bond is warranted here, this Court nevertheless orders a bond, Metropolitan requests that the court allow it 90 days to procure and post any bond. As a public entity relieved of the obligation to provide litigation-related bonds, *see supra*, pp. 9–10, Metropolitan lacks a track record of posting similar bonds that could expedite the necessary due diligence undertaken by surety companies potentially willing to underwrite a Rule 7 bond.

Additionally, Metropolitan requests that this Court stay any order requiring a Rule 7 bond pending Metropolitan's appeal from the order. *See Schmidt*, 3 F.4th at 100 (order requiring Rule 7 bond is immediately appealable). The discussion above illustrates that Metropolitan satisfies the usual factors that courts consider in staying orders and judgments pending appeal. *See Nken v. Holder*, 556 U.S. 418, 425–26 (2009) (strong showing on the merits; the balance of harms; and the public interest).

### III.  CONCLUSION

This Court should deny Class Counsel's motion for a Rule 7 bond, or at most require only a low bond amount.

Dated: March 29, 2024

Respectfully submitted:

*/s/ Mitchell C. Tilner*
Mitchell C. Tilner, CA Bar No. 93023
Peder K. Batalden, CA Bar No. 205054
Horvitz & Levy LLP
3601 West Olive Avenue, 8th Floor
Burbank, California
Phone: (818) 995-0800
Fax: (844) 497-6592
mtilner@horvitzlevy.com

*Attorneys for The Metropolitan Water District of Southern California*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was filed with this Court's CM/ECF system and was thus served electronically upon all registered counsel of record.

Dated: March 29, 2024

Respectfully submitted:

<u>/s/ Mitchell C. Tilner</u>
Mitchell C. Tilner, CA Bar No. 93023
Peder K. Batalden, CA Bar No. 205054
Horvitz & Levy LLP
3601 West Olive Avenue, 8th Floor
Burbank, California
Phone: (818) 995-0800
Fax: (844) 497-6592
mtilner@horvitzlevy.com

*Attorneys for The Metropolitan Water District of Southern California*