IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

)
IN RE: AQUEOUS FILM-FORMING )          MDL No. 2:18-mn-2873-RMG
FOAMS PRODUCTS LIABILITY )
LITIGATION )                           **This Document Relates to**
)                                      **ALL CASES**
)
)
)
)
)
)

## REPORT AND RECOMMENDATIONS

On April 23, 2024, the Court entered an Order and Opinion awarding attorneys' fees and costs in *City of Camden, et al. v. E.I. DuPont de Nemours and Co. (n/k/a EIDP, Inc.), et al.*, 2-23-cv-3230-RMG and *City of Camden, et al. v. 3M Company*, 2:23-cv-3147-RMG). Dkt. No. 4885. The Court's award was in the aggregate; it did not allocate the award among the various participating Plaintiff law firms. Pursuant to CMO No. 3 and the Court's instructions, the undersigned Special Master submits the following Report and Recommendations concerning the allocation of the attorneys' fees and costs.

On April 26, 2019, the Court entered CMO No. 3. Dkt. No. 72. Pursuant to CMO 3, the firms began submitting time and expense information to Mr. Jeremy Betsill (the Court-appointed CPA) in June 2019, first retroactively, and then contemporaneously on a monthly basis.

On May 19, 2021, the Court entered CMO 18. Dkt. No. 1618. CMO 18 "provide[d] the parties notice of [the Court's] intent to appoint John W. Perry, Jr. as Special Master relating to the review of plaintiffs' counsel's Common Benefit Fund submissions." On June 8, 2021, the Court followed with CMO 18.A. Dkt. No. 1686. Among other things, CMO 18.A provided that the

Special Master "shall assist in the management and oversight of the Common Benefit Fund time and expense submissions provided by the PEC and associated with plaintiff's counsel."

Since the date of my appointment, I (with the assistance of my partners Daniel J. Balhoff and John W. Perry, III) have coordinated with Mr. Betsill and all counsel to review the participating attorneys' time and expense submissions, as is reflected in my previously filed declarations. Dkt. Nos. 3795-4, 4269-3.

In the second half of 2023, Plaintiffs reached separate tentative agreements with the DuPont defendants and 3M defendants, and they immediately began the process of confirming these as class action settlements. Following approval of each class action settlement, Class Counsel moved for attorneys' fees and costs associated with achieving the two settlements. Dkt. Nos. 3795, 4269. In total, the motions asked for $934,800,000.00 in fees ($888,060,000.00 to be allocated based upon already-completed work, and $46,740,000.00 to be held back for legal fees to administer the settlements in the future ("the 5% holdback")) and $21,387,580.75 in costs. Of note, there were no objections to either motion. On April 23, 2024, the Court granted both motions. Dkt. No. 4885.

As stated above, my office began reviewing fees and costs soon after my appointment to ensure compliance with CMO No. 3. When the settlements became public, my office began to review the data with the further goal of recommending an appropriate allocation of attorneys' fees and reimbursement of costs. As we have done in similar cases, we first hoped to achieve a fair and amicable resolution among all of the more than 40 interested firms. In the ensuing months:

- We reached out to all firms that had submitted time and expenses to Mr. Betsill and asked them to review and, if appropriate, correct the time and expenses on record.

- We asked the firms to provide written narratives of their contributions to the common benefit and/or achievement of the settlements.

- We invited firms to participate in either video or telephonic interviews, and in fact conducted such interviews with all participating firms.

- We met in person with representatives of several firms.

- We coordinated with the Court, both telephonically and in person.

- We communicated with representatives of the firms by telephone or by email on approximately 1,000 occasions.

- We contacted certain defense counsel and mediators for background information concerning the role of the Plaintiff firms.

In arriving at an appropriate fee allocation, we considered the number of hours expended, the professional level of the timekeeper, the nature of the task, and the amount of monetary investment (whether as shared costs or held costs). We were guided by "the governing principles" of CMO No. 3, which (at paragraph 17) cites the controlling jurisprudence. Among the cases cited is *In re Vioxx*, an MDL shepherded by Judge Eldon Fallon. As Judge Fallon stated:

> In a case of this kind, not all types of work are created equal. Hours spent taking depositions, participating in hearings, or trials, actively participating in developing the appropriate litigation strategies and tactics (through moot court presentations or similar practices), drafting briefs, actively participating in Court conferences, arguing motions, negotiating with opposing counsel to reach a settlement, and actively managing and organizing the administrative aspects of the case are some of the more significant types of work that a case of this sort requires and deserves the most recognition. This, of course, is not the only type of work that such a case requires. Documents must be reviewed, categorized, and analyzed; e-mails must be read and responded to; claimants must be kept advised; meetings must be attended and in general the litigation must be monitored. This work, while necessary and often time consuming does not deserve equal treatment when allotting fees.

3

*In re Vioxx Prods. Liab. Litig.*, 802 F.Supp.2d 740, 772 (E.D. La. 2011), quoting *Turner v. Murphy Oil USA, Inc.*, 582 F.Supp.2d 797, 810-11 (E.D. 2008). Judge Fallon summed up: "In short, there is a hierarchy of value for work that tends to have a greater impact on the litigation and generates more 'common benefit.' Such work deserves greater compensation." *Id.*

Utilizing the above methodology, we were able to secure commitments from each firm to accept individualized percentages of the allocable fee (i.e., the remaining fee after deducting the 5% holdback), even though we did not yet know how much the Court would award. Once the Court entered its order, we translated the individual agreements into dollars by multiplying the percentages by $888,060,000.00 (the allocable fee).

The result is reflected in the attached exhibits. Exhibit 1 contains my recommended award, and Exhibit 2 provides commentary for some of the entries on Exhibit 1. Exhibit 1's table indicates the amounts that the firms have agreed to (by percentage and, by extension, in dollars). Independent of the fact that the respective firms have agreed to these amounts, it is my belief (based upon my own work and that done by my team) that these amounts are reasonable and in accordance with the relevant law.

Exhibit 1's table also lists the amounts that the firms should receive for shared costs and held costs. These amounts are based upon information provided by Mr. Betsill. Beginning in October 2023, we gave each firm a chance to comment before assigning final amounts.

The Court has already awarded attorneys' fees totaling $888,060,000 (after deducting the 5% holdback). If this Court should adopt the instant Report & Recommendations, the awards will be final and the fees will be ordered paid to each firm. Some of the law firms have expressed an interest in receiving some or all of their total fee award in periodic payments, rather than in a lump sum. This is solely for convenience and does not provide the Plaintiffs' attorneys with any

4

ownership interest in any portion of the settlement other than the right to receive the fee payments in the future as specified in relevant assignment documents to be completed prior to receipt of fees by Plaintiff attorneys. Therefore, it is recommended that Matthew Garretson, the Court-appointed Qualified Settlement Fund Administrator be permitted to enter into such agreements and to take all steps necessary to facilitate payment of periodic payments, and further, that the Fund Administrator shall be held harmless and indemnified by the attorneys with whom the Fund Administrator enters into such agreements.

It is my recommendation that the Court adopt this Report and Recommendations. Specifically, it is my recommendation that the Court adopt Exhibit 1 as the allocation for the funds available as a result of its April 23, 2024 Order and Opinion. If the Court wishes me to supplement this report or to respond to any inquiries, I would be happy to do so.

Dated: May ___6th___, 2024

John W. Perry, Jr
Perry, Balhoff, Mengis & Burns, LLC
2141 Quail Run Drive
Baton Rouge, LA 70808
P: (225) 767-7730
perry@pbmbllc.com

| Exhibit 1 -- Fee and Cost Recommendations | | | | | |
|---|---|---|---|---|---|
| Firm | Percentage of Allocable Attorneys' Fees | Attorneys' Fees | Reimbursed Assessments (Shared Costs) | Reimbursed Held Costs | Total Recovery (Fees and Costs) |
| Baron & Budd PC | 21.00000% | $ 186,492,600.00 | $ 644,845.11 | $ 639,360.90 | $ 187,776,806.01 |
| Beggs & Lane RLLP | 0.06135% | $ 544,824.81 | $ - | $ 5,451.54 | $ 550,276.35 |
| Bell Legal Group | 0.00844% | $ 74,952.26 | $ 472,886.41 | $ 205.00 | $ 548,043.67 |
| Cohn Lifland Pearlman Hermann & Knopf LLP | 0.03273% | $ 290,662.04 | $ - | $ - | $ 290,662.04 |
| Cossich Sumich Parsiola & Taylor LLC | 12.00000% | $ 106,567,200.00 | $ 644,845.11 | $ 450,443.99 | $ 107,662,489.10 |
| Crueger Dickinson | 0.12298% | $ 1,092,136.19 | $ 300,927.72 | $ 11,788.16 | $ 1,404,852.07 |
| Dema Law Office | 0.05417% | $ 481,062.10 | $ - | $ - | $ 481,062.10 |
| Douglas & London PC | 21.00000% | $ 186,492,600.00 | $ 644,845.11 | $ 1,044,312.80 | $ 188,181,757.91 |
| Edelson PC | 0.02346% | $ 208,338.88 | $ 558,865.76 | $ - | $ 767,204.64 |
| Environmental Litigation Group PC | 0.28014% | $ 2,487,811.28 | $ 472,886.41 | $ 414,381.16 | $ 3,375,078.85 |
| Fears Nachawati Law Firm | 0.52128% | $ 4,629,279.17 | $ 558,865.76 | $ 19,444.80 | $ 5,207,589.73 |
| Fegan Scott LLC | 0.20543% | $ 1,824,341.66 | $ - | $ - | $ 1,824,341.66 |
| Frazer PLC | 0.34018% | $ 3,021,002.51 | $ 644,845.11 | $ 3,855.10 | $ 3,669,702.72 |
| Grant & Eisenhofer PA | 0.21828% | $ 1,938,457.37 | $ - | $ 9,651.65 | $ 1,948,109.02 |
| Hagens Berman Sobol & Shapiro LLP | 0.13857% | $ 1,230,584.74 | $ 85,979.35 | $ - | $ 1,316,564.09 |
| Hausfeld LLP | 0.28722% | $ 2,550,685.93 | $ 705,030.66 | $ 9,707.82 | $ 3,265,424.41 |
| Kanner & Whiteley LLC | 0.07001% | $ 621,730.81 | $ - | $ - | $ 621,730.81 |
| Kelley Drye & Warren LLP | 2.28577% | $ 20,299,009.06 | $ 558,865.76 | $ 75,704.25 | $ 20,933,579.07 |
| Kennedy & Madonna, LLP | 0.10715% | $ 951,517.00 | $ 644,845.11 | $ 2,251.19 | $ 1,122,869.33 |
| Law Office of Kevin Madonna | 0.05357% | $ 475,773.03 | $ - | $ - | $ 951,517.00 |
| Levin Papantonio Thomas Mitchell Rafferty Proctor PA | 11.00000% | $ 97,686,600.00 | $ 644,845.11 | $ 311,928.49 | $ 98,643,373.60 |

| Firm | Percentage of Allocable Attorneys' Fees | Attorneys' Fees | Reimbursed Assessments (Shared Costs) | Reimbursed Held Costs | Total Recovery (Fees and Costs) |
|---|---|---|---|---|---|
| Levin Sedran & Berman | 3.79951% | $ 33,741,928.51 | $ 644,845.11 | $ 135,752.03 | $ 34,522,525.65 |
| Marten Law LLP | 0.00000% | $ - | $ - | $ - | $ - |
| McDivitt Law Firm PC | 0.34298% | $ 3,045,868.19 | $ 85,979.35 | $ 21,174.62 | $ 3,153,022.16 |
| Morgan & Morgan Complex Litigation Group | 1.33314% | $ 11,839,083.08 | $ 257,938.04 | $ 1,027,860.80 | $ 13,124,881.92 |
| Motley Rice LLC | 3.57380% | $ 31,737,488.28 | $ 644,845.11 | $ 235,635.46 | $ 32,617,968.85 |
| Napoli Shkolnik PLLC | 15.20000% | $ 134,985,120.00 | $ 644,845.11 | $ 398,508.03 | $ 136,028,473.14 |
| Plevin Gallucci Company LPA | 0.06667% | $ 592,069.60 | $ 644,845.11 | $ 6,893.37 | $ 1,243,808.08 |
| Pritzker Levine LLP | 0.18610% | $ 1,652,679.66 | $ 515,876.09 | $ 14,395.80 | $ 2,182,951.55 |
| Rigano LLC | 0.07143% | $ 634,341.26 | $ - | $ - | $ 634,341.26 |
| Rogers Patrick Westbrook & Brickman LLC | 0.26452% | $ 2,349,096.31 | $ 644,845.11 | $ 12,401.95 | $ 3,006,343.37 |
| SL Environmental Law Group PC | 0.26322% | $ 2,337,551.53 | $ 644,845.11 | $ 11,126.76 | $ 2,993,523.40 |
| Saltz Mongeluzzi & Bendesky PC | 1.04041% | $ 9,239,465.05 | $ 644,845.11 | $ 94,810.83 | $ 9,979,120.99 |
| Seeger Weiss | 0.04695% | $ 416,944.17 | $ 300,927.72 | $ - | $ 717,871.89 |
| Sher Edling LLP | 1.18369% | $ 10,511,877.41 | $ 644,845.11 | $ 56,963.94 | $ 11,213,686.46 |
| Singleton Schreiber LLP | 0.00214% | $ 19,004.48 | $ 257,938.04 | $ - | $ 276,942.52 |
| Solomon Law Group LLC | 0.09976% | $ 885,928.66 | $ 221,391.71 | $ 5,898.22 | $ 1,113,218.59 |
| Stag Liuzza | 0.11453% | $ 1,017,095.12 | $ 558,865.76 | $ 6,461.71 | $ 1,582,422.59 |
| Taft Stettinus & Hollister LLP | 0.87875% | $ 7,803,827.25 | $ - | $ 26,065.89 | $ 7,829,893.14 |
| The Ferraro Law Firm | 0.76537% | $ 6,796,944.82 | $ 558,865.76 | $ 27,526.15 | $ 7,383,336.73 |
| The Hannon Law Firm LLC | 0.11503% | $ 1,021,535.42 | $ 128,969.02 | $ 7,798.37 | $ 1,158,302.81 |
| The Kuykendall Group LLC | 0.14180% | $ 1,259,269.08 | $ - | $ - | $ 1,259,269.08 |
| Weitz & Luxenberg PC | 0.69947% | $ 6,211,713.28 | $ 644,845.11 | $ 26,064.00 | $ 6,882,622.39 |
| **TOTAL** | **100.00000%** | **$ 888,060,000.00** | **$ 16,273,735.97** | **$ 5,113,824.78** | **$ 909,447,560.75** |

# Exhibit 2

The following comments apply to Exhibit 1:

1. Attorney Lawrence R. Cohan was affiliated with the firm of Anapol Weiss when the MDL began.  He later left Anapol Weiss and joined the firm of Saltz Mongeluzzi Bendesky PC.  Mr. Cohan has confirmed in writing that both firms' awards of fees and costs should be paid to Saltz Mongeluzzi Bendesky PC, and that Mr. Cohan will then be responsible for distributing the fees and costs between the two firms.

2. Attorney Kevin J. Madonna was affiliated with the firm of Kennedy & Madonna when the MDL began.  He later left Kennedy & Madonna and founded the Law Office of Kevin Madonna.  Mr. Madonna has confirmed in writing the appropriate allocation of the fees (in dollars rather than percentages) and costs between the firms, and that allocation is reflected in Exhibit 1.  In this instance only, the percentages of allocable attorneys' fees are rounded to the fifth decimal place, and therefore do not precisely reflect the dollar amount awarded to the two firms.

3. Marten Law LLP has waived in writing its claim to fees and costs.

4. In their motions for fees and costs, Class Counsel requested $2,136,213.21 in costs (both shared and held) in the DuPont settlement, and $19,251,347.54 in costs (both shared and held) in the 3M settlement, totaling $21,387,580.75 in costs (both shared and held).  As I indicated in my previous declarations, my office has continued to audit costs.  See, e.g., Dkt. No. 4269-3 para. 22.  As a result, $49,432.97 in held costs have been voluntarily withdrawn.  At the same time, I have been informed that the Solomon Law Group LLC submitted its $100,000.00 common benefit assessment a few days late in September.  This led to that assessment not being counted in Class Counsel's request for reimbursement of costs.  If the assessment is not reimbursed now, it will be reimbursed as part of the allocation of a future settlement.  I recommend that the $49,432.97 (which is part of the amount that the Court already awarded in its April 23, 2024 Order and Opinion) be paid to the Solomon Law Group as a partial reimbursement of its assessment.  The awards in Exhibit 1 assume that the Court will accept this recommendation.

5. As of September 2023, the total amount that the firms paid in assessments was $18,870,000.00 (not including the $100,000.00 late payment referenced in the previous paragraph).  However, Mr. Betsill reported that only $16,224,303.00 had been paid in shared costs as of that time.  Class Counsel only asked the Court to reimburse the amount that had actually been expended ($16,224,303.00), not the amount that remained in reserve (and which has likely been expended to pay for litigation costs since September 2023).  Presumably, Class Counsel will ask the Court to reimburse the balance of the assessments

as they are spent when they have an opportunity to do so in conjunction with future settlements.  In the meantime, there is only $16,224,303.00 available to reimburse firms that paid $18,870,000.00 in assessments.  Exhibit 1 reflects my recommendation that each firm receive a proportionate amount of the available funds with respect to shared costs.  (Note that the Reimbursed Assessments column in Exhibit 1 shows that it totals $16,273,735.97, not $16,224,303.00.  The reason for the difference is the $49,432.97 that has been included for the Solomon Law Group.)

6.  The total amount available for reimbursing shared costs and held costs was fixed based upon data available in August/September 2023 (when the motions for fees and costs were filed).  There is no more money for this purpose available from these two settlements.  If a firm concludes that it is owed additional shared costs or held costs, the firm should contact the Special Master to arrange for reimbursement (assuming it is consistent with CMO No. 3) from future settlements.