**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA**

| | | |
|---|---|---|
| IN RE: AQUEOUS FILM-FORMING FOAMS PRODUCTS LIABILITY LITIGATION | ) ) | Master Docket No.: 2:18-mn-2873-RMG |

| | | |
|---|---|---|
| CITY OF CAMDEN, et al., | ) ) ) | Civil Action No.: |
| *Plaintiffs,* | ) ) ) | 2:24-cv-02321-RMG |
| *-vs-* | ) ) ) | |
| TYCO FIRE PRODUCTS LP, individually and as successor in interest to The Ansul Company, and CHEMGUARD, INC., | ) ) ) ) ) | |
| *Defendants.* | ) | |

**DEFENDANTS DEEPWATER CHEMICALS, INC. AND CHEMICALS INCORPORATED'S (TOLLING DEFENDANTS) RESPONSE SEEKING CLARIFICATION OF THE SETTLEMENT AGREEMENT PROPOSED IN PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT OR, IN THE ALTERNATIVE, OBJECTING TO SUCH SETTLEMENT**

TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

    I.    TOLLING EXPLAINED .............................................................................................. 2

        a.    Toll Manufacturing ("Tolling"). ......................................................................... 3

        b. Application to the Toller Defendants. ................................................................. 4

    II.    PERTINENT TERMS OF THE PROPOSED SETTLEMENT AGREEMENT ................. 7

ARGUMENT ................................................................................................................................. 8

    I.    TOLLER DEFENDANTS HAVE STANDING TO OBJECT. .......................................... 8

    II.    THE TOLLERS SHOULD EACH BE INCLUDED AS A "RELEASED PARTY." ........ 9

    III.    THE SETTLEMENT AGREEMENT SHOULD BE CLARIFIED TO ENSURE THAT THE TOLLERS' RIGHTS ARE NOT EXTINGUISHED. ....................................................... 10

    IV.    THE TOLLERS ALSO SEEK CLARIFICATION AND, IF NECESSARY, OBJECT TO THE PROPOSED SETTLEMENT AGREEMENT BECAUSE THE SETOFF METHOD IS NOT SPECIFICALLY ENUMERATED IN THE AGREEMENT. .................................... 13

CONCLUSION ............................................................................................................................ 14

i

# TABLE OF AUTHORITIES

**Cases**

*Addy v. Bolton*,
  257 S.C. 28, 183 S.E.2d 708 (1971) .................................................................................... 11

*Alumax Mill Prods. v. Cong. Fin. Corp.*,
  912 F.2d 996 (8th Cir. 1990) ............................................................................................ 9, 12

*Bragg v. Robertson*,
  54 F. Supp. 2d 653 (S.D. W. Va. 1999) .................................................................................. 9

*Carson v. Am. Brands, Inc.*,
  450 U.S. 79 (1981) ................................................................................................................ 12

*Eichenholtz v. Brennan*,
  52 F.3d 478 (3d Cir. 1995) ...................................................................................................... 9

*Flinn v. FMC Corp.*,
  528 F.2d 1169 (4th Cir. 1975) .............................................................................................. 12

*In re Beef Industry Antitrust Litig.*,
  607 F.2d 167 (5th Cir. 1979) .................................................................................................. 9

*In re Jiffy Lube Sec. Litig*,
  927 F.2d 155 (4th Cir. 1991) .......................................................................................... 12, 13

*In re LandAmerica 1031 Exch. Servs., Inc. Internal Revenue Serv. § 1031 Tax Deferred Exch. Litig.*,
  3:09-CV-00054, 2012 WL 13124593(D.S.C. July 12, 2012) ................................................ 12

*In re Zetia (Ezetimibe) Antitrust Litig.*,
  No. 2:18-md-2836, 2019 WL 6122038 (E.D. Va. Oct. 1, 2019) ............................................ 9

*Quad/Graphics, Inc. v. Fass*,
  724 F.2d 1230 (7th Cir.1983) ............................................................................................... 12

*Rhett v. Gray*,
  401 S.C. 478, 736 S.E.2d 873 (Ct. App. 2012) .................................................................... 11

*Riley v. Ford Motor Co.*,
  414 S.C. 185, 777 S.E.2d 824 (2015) ................................................................................... 13

*Town of Winnsboro v. Wiedeman–Singleton, Inc.*,
  307 S.C. 128, 414 S.E.2d 118 (1992) ................................................................................... 11

*U.S. Fid. & Guar. Co. v. Patriot's Point Dev. Auth.*,
  788 F. Supp. 880 (D.S.C. 1992) ............................................................................................ 10

**Statutes**

S.C. Code Ann. § 15-38-50 ........................................................................................................ 11

**Other Authorities**

3 Newberg on Class Actions § 5660b (1977) ............................................................................... 9

Deepwater Chemicals, Inc. ("Deepwater") and Chemicals Incorporated ("CI") (collectively, the "Toller Defendants" or "Tollers"), respectfully submit this response to Plaintiffs' motion for preliminary approval of the proposed Settlement Agreement between a putative class of public water systems and Tyco Fire Products LP, individually and as successor in interest to The Ansul Company, and Chemguard, Inc., Dkt. No. 4911. The Toller Defendants respectfully request clarification of certain terms of the settlement discussed below, or in the alternative, should clarification not be provided, object to the proposed settlement[1].

## PRELIMINARY STATEMENT

Deepwater is a small, privately held toll manufacturer in Woodward, Oklahoma, focused on iodine derivative chemistry for pharmaceutical and mining applications, none of which relate to perfluorooctane sulfonic acid (PFOS), perfluorooctanoic acid (PFOA) or per- and polyfluoroalkyl substances (PFAS). Deepwater has been named as a defendant in thousands of cases in MDL No. 2873 based solely on the limited and derivative tolling services that it performed for Tyco.

CI is a small, family-owned tolling company based in Texas focused on tolling diesel and gasoline additives, none of which has any relation to any PFAS compounds. CI has been named as a defendant in thousands of cases in MDL No. 2873 based solely on the limited and derivative tolling services that it performed for Chemguard over a couple of months in 2008, and in 2010.

The Tollers did not design, formulate, market, promote, distribute, or sell any product at issue in this MDL. Rather, they provided a service upon receiving raw materials sent to them at

---

[1] Nothing contained herein is intended as, nor should it be deemed to constitute, a waiver or relinquishment of any of the Toller Defendants' rights, defenses, arguments or remedies they may have in any cases in this MDL, including jurisdictional defenses, and all such rights, defenses, arguments or remedies – whether legal or equitable—are hereby expressly reserved.

1

the direction of Tyco,[2] and they processed those raw materials under the exclusive control and strict direction of Tyco, never taking ownership or control and always operating in accordance with Tyco's decisions.

The services provided by the Toller Defendants are plainly within the scope and definitions of the proposed Settlement Agreement and make them a "Released Party," especially given the Settlement Agreement's broad mandate that it be construed as liberally and expansively as possible. However, if the Toller Defendants are not released in the proposed Settlement Agreement, their non-release should not expunge their future rights to demand indemnification or contribution from the settling Defendants and, if necessary, offset their liability at trial by the degree to which Tyco is found liable. If these or other Toller rights are extinguished by the Settlement Agreement, such a result will materially and legally prejudice the Toller Defendants and be patently unfair.

As currently written, the Settlement Agreement is both vague as to whether the Toller Defendants are a Released Party and punitive because it extinguishes the Toller Defendants' future rights. As literally the smallest defendants in this multidistrict litigation, both the law and equity require that the Toller Defendants' rights be preserved. As such, the proposed Settlement Agreement should either be clarified to include the Tollers as Released Parties or amended so as not to strip the Tollers of their legal rights upon settlement.

I.     TOLLING EXPLAINED

---

[2] Deepwater performed tolling services for first Chemguard then Tyco after it acquired Chemguard. For simplicity, this response will refer to these entities as Tyco.

To understand why the Tollers will be legally prejudiced, it is important to understand the Toller's role, or rather, lack thereof, in the production of AFFF products or any activities upon which Plaintiffs' claims are based.

a.      *Toll Manufacturing ("Tolling").*  Tolling is the processing of a component chemical or article by the toller at the direction, and under the control of, a manufacturer, following the manufacturer's strict instructions.  A toll manufacturer sells its time and services, not a product.  A traditional manufacturer, such as Tyco, hires a toller to process (or mix) a component material following a trade secret method owned by the manufacturer and resulting from the manufacturer's design, development, and testing.  At all times, the toller acts without discretion and the manufacturer maintains strict control of the toller's actions relating to the component material being tolled.  The toller is not responsible for the design, development, sale, or marketing of the component material.

In exerting its strict control, the manufacturer exclusively decides: (1) what chemicals to make; (2) what raw materials will be delivered to the toller for use; (3) how the component chemical will be mixed (the processes and the specifications); and (4) the timeline and quantities of the mixed batches.  For "renting" its equipment and experienced personnel, the toller is paid a processing fee for its services (it is not selling the product).  The manufacturer, like Tyco, owns the raw materials, chemicals, chemical byproducts and retains title to them throughout the tolling process.  Once the processing is completed, the manufacturer decides where the mixed batches are to be delivered, at its expense.  The manufacturer is the ultimate decision maker and controls all aspects of the component batch's chemistry, development, design, distribution, and end use.

In addition to the manufacturer having complete control over the design and manufacturing of the component material, the manufacturer also intentionally limits the toller's knowledge of the

3

downstream use for the batches/material. Sample batches have already been designed, produced, and tested by the manufacturer before a toller is even engaged. The manufacturer will not necessarily inform the toller whether the material produced at their site was used in a final application. Manufacturers typically require that tollers enter strict non-disclosure agreements, or otherwise agree to communication limits and will safeguard the identity of its customers from a toller. In fact, manufacturers typically set up procedures and "firewalls" to prevent a toller's exposure to a manufacturer's customers.

Ultimately, the manufacturer's only expectation of the toller is that the toller "hit the specification." The manufacturer does not expect a toller to make any claims about the efficacy of the end-product, because the tolled material is likely further processed and may go to a variety of end uses.

*b. Application to the Toller Defendants.* The above general description of tolling accurately represents the Toller Defendants' services for Tyco. The Tollers had no control ████████████████████████████████████████████████████████████████████. The Tollers did not ████████████████████████████████. The Tollers were ████████████████████████████████████████. Tyco ████████████████████████████. 

The Tollers were never informed ████████████████████████████████████████████████. The Tollers ████████████████████████████████

4

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ The Tollers were ▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬ Each of the Tollers, respectively, simply tolled a limited number of materials over a limited duration to Tyco's specifications.

The above representations and facts are fully supported by the evidence in this case. Tyco Fire Products LP and Chemguard Inc.'s Objections and Responses to Plaintiffs' Second Set of Interrogatories, dated February 26, 2021, confirm that ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬ The depositions of Tyco and Chemguard unequivocally support the limited role/ non-actionable role of the Tollers. ▬▬▬▬▬▬▬▬▬▬

▬▬ described ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬:

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
▬▬▬▬▬▬

The deposition testimony of 

The only evidence in MDL 2873 is that the Tollers acted responsibly, performed their assignments consistent with the applicable standard of care, and met the precise requirements and demands requested of them by Tyco.

---

[3] These facts are further supported by expert witness reports submitted in this MDL.

6

In this scenario, the Tollers are, and have always been, "remote to the AFFF process" and an unnecessary defendant. *See* Status Conference Hr'g Tr., Sept. 23, 2022, at 9, 15, 48, 49 (Court advising the PEC to "simplify and streamline these cases" and "trim unnecessary defendants.")

## II.    PERTINENT TERMS OF THE PROPOSED SETTLEMENT AGREEMENT

Under the Settlement Agreement, Tyco has agreed to pay a sum certain in exchange for the release, covenant not to sue, and dismissal of Plaintiffs' claims regarding PFAS contamination arising from the alleged use of AFFF products manufactured and sold by Tyco. The following terms of the proposed settlement are relevant to this discussion:

"Claim" is defined as:

any past, present or future claim—including counterclaims, cross-claims, actions, rights, remedies, causes of action, liabilities, suits, proceedings, demands, damages, injuries, losses, payments, judgments, verdicts, debts, dues, sums of money, liens, costs and expenses (including attorneys' fees and costs), accounts, reckonings, bills, covenants, contracts, controversies, agreements, obligations, promises, requests, assessments, charges, disputes, performances, warranties, omissions, grievances, or monetary impositions of any sort, in each case in any forum and on any theory, whether legal, equitable, regulatory, administrative or statutory, arising under federal, state, or local constitutional or common law, statute, regulation, guidance, ordinance, contract, or principles of equity; filed or unfiled; asserted or unasserted; fixed, contingent, or noncontingent; known or unknown; discovered or undiscovered; suspected or unsuspected; foreseen, foreseeable, unforeseen, or unforeseeable; matured or unmatured; accrued or unaccrued; ripened or unripened; perfected or unperfected; choate or inchoate; developed or undeveloped; liquidated or unliquidated; now recognized by law or that may be created or recognized in the future by statute, regulation, judicial decision or in any other manner, including any of the foregoing for direct damages, indirect damages, compensatory damages, consequential damages, incidental damages, nominal damages, economic loss, punitive or exemplary damages, statutory and other multiple damages or penalties of any kind, or any other form of damages whatsoever, any request for declaratory, injunctive, or equitable relief, strict liability, joint and several liability, restitution, abatement, subrogation, **contribution, indemnity, apportionment,** disgorgement, reimbursement, attorneys' fees, expert fees, consultant fees, fines, penalties, expenses, costs or any other legal, equitable, civil, administrative, or regulatory remedy whatsoever, **whether direct, representative, derivative,** class or individual in nature.

*See* Section 2.7. (emphasis added). "Released Parties" is defined as Tyco's

7

> past, present, or future administrators, advisors, affiliated business entities, affiliates, agents, assigns, attorneys, constituent corporation, or entity (including constituent of a constituent) absorbed by Tyco in a consolidation or merger, counsel, directors, divisions, employee benefit plans, employee benefit plan participants or beneficiaries, employees, executors, heirs, insurers, managers, members, officers, owners, parents, partners, partnerships, predecessors, principals, resulting corporation or entity, servants, shareholders, subrogees, subsidiaries, successors, trustees, trusts, and any other representatives, individually or in their corporate or personal capacity, **and anyone acting on their behalf, including in a representative or derivative capacity**.

*See* Section 2.54 (emphasis added). The only other nonaffiliated Tyco or Chemguard Defendant included as a "Released Party" is ChemDesign Products, Inc., another toller, and its inclusion in the Settlement Agreement is based on conduct that "arises out of or relates in any way to ChemDesign's work with or for Tyco." *See* Section 2.54.1.

Section 2.54 of the Settlement Agreement "mandates" that "[i]t is the intention of this Agreement that the definition of 'Released Parties' or 'Tyco' be as broad, expansive and inclusive as possible."

The Settlement Agreement also addresses claims by non-Released parties:

> The Order Granting Final Approval will specify that the Settlement is a good faith settlement that bars **any Claim by any non-Released Party** against any Released Party **for contribution, for indemnification**, or otherwise seeking to recover any amounts paid by or awarded against that non-Released Party and paid or awarded to any Releasing Party by way of settlement, judgment, or otherwise on any Claim that would be a Released Claim were such non-Released Party a Released Party (a "Claim-Over"), to the extent that a good-faith settlement (or release thereunder) has such an effect under applicable law.

*See* Section 12.7.2. (emphasis added)

## ARGUMENT

### I. TOLLER DEFENDANTS HAVE STANDING TO OBJECT.

8

The Tollers have standing to object because the proposed Settlement Agreement will purportedly extinguish their legal claims for contribution and indemnification. The Parties' Joint Interpretative Guidance on Certain Release Issues specifically states that the term "Claim" as defined in the Settlement Agreement, "include[s] a claim for contribution or indemnity." Dkt. No. 4911-3, p. 178.

A "non-settling defendant suffers formal legal prejudice and can therefore challenge a partial settlement when that settlement 'purports to strip it of a legal claim or cause of action, an action for indemnity or contribution for example, or to invalidate its contract rights.'" *In re Zetia (Ezetimibe) Antitrust Litig.*, No. 2:18-md-2836, 2019 WL 6122038, at *4 (E.D. Va. Oct. 1, 2019) (quoting *Eichenholtz v. Brennan*, 52 F.3d 478, 482 (3d Cir. 1995)); *Bragg v. Robertson*, 54 F. Supp. 2d 653, 664 (S.D. W. Va. 1999) (quoting *Alumax Mill Prods. v. Cong. Fin. Corp.*, 912 F.2d 996, 1002 (8th Cir. 1990)) (internal quotation marks and citations omitted) ("Formal legal prejudice occurs where a non-settling defendant is stripped of a legal claim or cause of action or where the agreement interferes with his contract rights or his ability to seek indemnification or contribution."). Consequently, "non-settling defendants in a partial settlement . . . may object to any terms which preclude them from seeking indemnification from the settling defendants." *In re Beef Industry Antitrust Litig.*, 607 F.2d 167, 172 (5th Cir. 1979) (quoting 3 Newberg on Class Actions § 5660b at 564-65 (1977)).

Accordingly, because the proposed Settlement Agreement purports to extinguish all legal claims by the non-settling defendants, including without limitation claims for indemnity, the Tollers will suffer formal legal prejudice and have standing to object.

**II.    THE TOLLERS SHOULD EACH BE INCLUDED AS A "RELEASED PARTY."**

9

The Tollers are defendants in MDL 2873 due solely to their limited services as tollers for Tyco. The Toller's inclusion in MDL 2873 is entirely derivative of the services which were properly performed at the direction of Tyco for Tyco. In addition, the Tollers are similarly situated in various respects to ChemDesign, another toller, which is a Released Party. As such, the Settlement Agreement should be revised to include each of the Tollers as a Released Party. Failure to do so, while simultaneously extinguishing the Tollers' right to pursue indemnification for their damages associated with having to defend this litigation, would be highly and unduly punitive and prejudicial. It is important to reiterate that these Toller Defendants have no involvement at all with AFFF, and have no control whatsoever on how or if or when any material they processed would ever be integrated into AFFF. They also have no actual knowledge of what happened to any processed material after they shipped it back to Tyco. The processed material, after all, is not their product and they did not sell it; they received a processing fee. As referenced more fully below, this abridged right is distinguishable from other cases that have asserted the same argument unsuccessfully because the Tollers are unique and only included in this litigation due to association with, and imputed fault by, Tyco. *Compare with U.S. Fid. & Guar. Co. v. Patriot's Point Dev. Auth.*, 788 F. Supp. 880, 883 (D.S.C. 1992) (Non–Settling defendants are alleged to have played a more active role in the alleged negligence). Here, equity requires more. The Tollers should be included as Released Parties.

### III.     THE SETTLEMENT AGREEMENT SHOULD BE CLARIFIED TO ENSURE THAT THE TOLLERS' RIGHTS ARE NOT EXTINGUISHED.

The Toller Defendants seek clarification of Section 12.7.2 as to their rights to pursue indemnity for their respective damages sustained in having to defend this action due to imputed

10

fault[4]. The settlement agreement discusses non-Released Parties, such as the Tollers, in Section 12.7.2:

> The Order Granting Final Approval will specify that the Settlement is a good faith settlement that bars **any Claim by any non-Released Party** against any Released Party **for contribution, for indemnification**, or otherwise seeking to recover any amounts paid by or awarded against that non-Released Party **and** paid or awarded to any Releasing Party by way of settlement, judgment, or otherwise on any Claim that would be a Released Claim were such non-Released Party a Released Party (a "Claim-Over"), to the extent that a good-faith settlement (or release thereunder) has such an effect under applicable law.

(emphasis added).

This section seemingly applies only if the Tollers are obligated to pay compensation to Plaintiffs. It should not cover situations where the Tollers are found to be faultless, resulting in no compensation payable to Plaintiffs. Conversely, Section 12.7.2 could be interpreted to preclude all future indemnification claims, which would be highly prejudicial to the Tollers.

Additionally, the inclusion of the phrase - "to the extent that a good-faith settlement has such an effect under applicable law" - implicates contribution and the right to setoff under the South Carolina Uniform Contribution Among Tortfeasors Act (the "Act), S.C. Code Ann. § 15-38-50. The Act does not explicitly preclude the release of indemnity claims of a non-settling defendant in a bar order, and South Carolina law appears to allow the same. *See U.S. Fidelity &*

---

[4] A claim for equitable indemnification allows an innocent party to recover "the amount the innocent party must pay to a third party because of the at-fault party's breach of contract or negligence as well as attorney fees and costs which proximately result from the at-fault party's breach of contract or negligence." *Town of Winnsboro v. Wiedeman–Singleton, Inc.*, 307 S.C. 128, 130–31, 414 S.E.2d 118, 120 (1992). Thus, damages in an equitable indemnification suit include: (1) the damages caused due to the underlying tort; and (2) **the innocent party's attorneys' fees incurred in defending itself in the underlying tort suit**. See, e.g., *Rhett v. Gray*, 401 S.C. 478, 497–98, 736 S.E.2d 873, 883–84 (Ct. App. 2012) (quoting *Addy v. Bolton*, 257 S.C. 28, 33, 183 S.E.2d 708, 709–10 (1971)).

*Guar. Co. v. Patriot's Point Development Authority*, 788 F.Supp. 880 (D.S.C. 1992) (holding that bar order would bar all claims over by nonsettling defendants, including indemnification claims).

If the proposed Settlement Agreement does extinguish their indemnification claims, then the Tollers would suffer significant formal legal prejudice. . **The Tollers were informed that their previous indemnity requests were premature.** If the Settlement Agreement now extinguishes Tollers' indemnification rights, the Tollers will have no remedy. The question then is whether extinguishing the Toller's rights to pursue indemnification is fair considering the overarching goal of the court system to encourage settlements. *See, e.g., Alumax,* 912 F.2d at 1001–02; *Quad/Graphics, Inc. v. Fass*, 724 F.2d 1230, 1232–33 (7th Cir.1983) (noting such a standard properly balances the law's encouragement of voluntary settlements and the court's duty to protect the rights of the parties before it). *In re LandAmerica 1031 Exch. Servs., Inc. Internal Revenue Serv. § 1031 Tax Deferred Exch. Litig.*, 3:09-CV-00054, 2012 WL 13124593, at *2 (D.S.C. July 12, 2012) provides guidance:

> When evaluating whether to grant preliminary approval of a class settlement, this Court need "not decide the merits of the case or resolve unsettled legal questions." *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 (1981). "The trial court should not ... turn the settlement hearing 'into a trial or a rehearsal of the trial' nor need it 'reach any dispositive conclusions on the admittedly unsettled legal issues' in the case." *Flinn v. FMC Corp.*, 528 F.2d 1169, 1172-73 (4th Cir. 1975). Instead, the Court should "limit its proceedings to whatever is necessary to aid it in reaching an informed, just and reasoned decision." *Id.* at 1173.; *see also In re Jiffy Lube Sec. Litig*, 927 F.2d 155, 158 (4th Cir. 1991).

Due to the remote nature of the Tollers in this litigation, the answer is decidedly no: it would not be just to extinguish the Toller's claims. Based on the evidence and facts outlined above, giving up this right is much more substantive than speculative (given that these Tollers have not been able to contest these cases for over 4 years), and the Tollers should have the

opportunity to be made whole through indemnification. Presently, the proposed Settlement Agreement may foreclose this right and therefore, it would not be just.

Consequently, out of an abundance of caution, the Tollers request that the proposed Settlement Agreement be amended to clarify that non-Released Parties are not foregoing future indemnification claims against Tyco, to the extent applicable.

## IV.    THE TOLLERS ALSO SEEK CLARIFICATION AND, IF NECESSARY, OBJECT TO THE PROPOSED SETTLEMENT AGREEMENT BECAUSE THE SETOFF METHOD IS NOT SPECIFICALLY ENUMERATED IN THE AGREEMENT.

As written, the proposed Settlement Agreement extinguishes the Tollers' right to contribution without providing a method of setoff or judgment reduction at trial. Setoff due to settlement is a right that has existed in South Carolina for over 100 years. *Riley v. Ford Motor Co.*, 414 S.C. 185, 195, 777 S.E.2d 824, 830 (2015). This principle is based on the concept that a plaintiff should not receive a double recovery for the same injury. *Id.* There are various methods of setoff that must be considered and should be enumerated in the proposed Settlement Agreement for the benefit of all parties. If the method of setoff is not provided for in the Settlement Agreement, then the impact on the non-settling defendants could be profound. For remote Defendants such as the Tollers, this is highly prejudicial especially because the Tyco Settlement is a resolution on and for the very materials owned by Tyco and processed by the Tollers (assuming they were even later used by Tyco). In the case of *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 161–62 (4th Cir. 1991), the Fourth Circuit vacated a proposed settlement agreement and remanded the case back to the District Court to specify a setoff method.

> As to non-settling defendants such as Ernst & Young, the choice of setoff method determines to a large extent the manner in which a defense should be made at trial. The extent of wrongdoing of the settling defendants in relation to Ernst & Young's liability is either highly relevant (under the "proportionate" rule), minimally

13

important (under the "pro rata" rule), or not important at all (under the "pro tanto" rule). Ernst & Young is entitled to know what the law of the case is in advance of trial, not on the eve, after discovery is concluded and witnesses have been prepared.

Moreover, the court's failure to designate a setoff method exposes Ernst & Young to the risk of receiving inadequate credit for the contribution bar imposed on it. There is certainly some risk involved under any of the methods the court might have chosen—not only for Ernst & Young but for the plaintiffs and settling defendants as well. However, choosing a method at least allows the parties to know what the nature of that risk is. The court assured Ernst & Young that it would use its "inherent equitable powers" to see that Ernst & Young receives an appropriate credit. Yet the court never explained how such powers would work to resolve the potential difficulties Ernst & Young fears *162 without also prejudicing either the plaintiffs or the settling defendants.

For these reasons, we direct that this proposed settlement agreement be vacated and remanded in order that the district court may amend Clause 9 to specify the setoff method to be used.

Therefore, the Tollers seek clarification on this point and respectfully otherwise object to the proposed Settlement Agreement as drafted and request that setoff be specified, and the judgment reduction method be established as the "proportionate" rule.

## CONCLUSION

The Tollers are remote defendants to the AFFF process and did not ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. Thus, the Tollers should be included in the proposed Settlement Agreement as a Released Party. If the Tollers are not released in the proposed Settlement Agreement, they must maintain their right to pursue indemnification. Extinguishing the same in the proposed Settlement Agreement will materially and legally prejudice the Tollers, and the Settlement Agreement should be amended to clarify that non-Released Parties are not foregoing future indemnification claims against Tyco, to the extent applicable. At a bare minimum, this Court should require the method of setoff be specifically detailed in the settlement agreement to address the proportionality of fault, if any.

14

Dated: May 10, 2024                          Respectfully Submitted,

                                                Goldberg Segalla LLP

                                                */s/ Oliver Twaddell*
                                                Oliver E. Twaddell (N.Y. Bar 4994661)
                                                John F. Parker
                                                711 Third Avenue, Suite 1900
                                                New York, NY 10017
                                                Ph.: (646) 292-8700
                                                Fax: (646) 292-8701
                                                Email: otwaddell@goldbergsegalla.com

                                              ***Attorneys for Chemicals Incorporated***


                                              Womble Bond Dickinson (US) LLP
                                              */s/ Kurt Weaver*
                                              Kurt D. Weaver (N.C. Bar No. 27146)
                                              Katherine J. Zimmerman (N.C. Bar No. 46606)
                                              555 Fayetteville Street, Suite 1100
                                              Raleigh, NC 27601
                                              Telephone: (919) 755-8163
                                              Facsimile: (919) 755-6770
                                              Email: kurt.weaver@wbd-us.com

                                              ***Attorneys for Deepwater Chemicals, Inc.***

**CERTIFICATE OF SERVICE**

      I hereby certify that a true and correct copy of the foregoing was electronically filed with this Court's CM/ECF on this 10th day of May, 2024, and was thus served electronically upon counsel of record.

                                                    _/s/ *Katherine Zimmerman*_____
                                                    Katherine J. Zimmerman (N.C. Bar No. 46606)
                                                    **Womble Bond Dickinson (US) LLP**
                                                    555 Fayetteville Street, Suite 1100
                                                    Raleigh, NC 27601
                                                    Ph.:   (919) 755-2100
                                                    Fax:   (919) 755-2150
                                                    Email: Katherine.Zimmerman@wbd-us.com
                                                    *Counsel for Deepwater Chemicals, Inc.*