**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | |
|---|---|
| **IN RE: AQUEOUS FILM-FORMING FOAMS PRODUCTS LIABILITY LITIGATION** | ) **MDL No. 2:18-mn-2873**<br>)<br>) **This Document relates to:**<br>) *City of Camden, et al. v. BASF Corporation*, No. 2:24-cv-03174-RMG |

**SETTLEMENT AGREEMENT FOR WATER SYSTEMS**

This Settlement Agreement (including its Exhibits) is entered into, subject to Final Approval of the Court, as of May 20, 2024 (the "Settlement Date"), by and among the Class Representatives and BASF Corporation ("BASF"), as those parties are further defined below.

## 1. RECITALS

1.1. WHEREAS, Congress enacted the Safe Drinking Water Act ("SDWA"), 42 U.S.C. §§ 300f to 300j-27, to help ensure that the public is provided with safe Drinking Water, and the SDWA or other federal or state regulations may require Public Water Systems to monitor and treat their water supplies;

1.2. WHEREAS, this Settlement Agreement is intended to address Public Water Systems' Claims regarding alleged PFAS-related harm to Drinking Water and associated financial burdens, including Public Water Systems' potential costs of monitoring, treating, or remediating PFAS in Drinking Water;

1.3. WHEREAS, Class Members are Public Water Systems that have asserted or could assert potential Claims against BASF related to PFAS in water supplies;

1.4. WHEREAS, Interim Class Counsel and BASF's Counsel have engaged in extensive, arms-length negotiations, and have—subject to the Final Approval of the Court as provided for herein—reached an agreement to settle and release Class Members' PFAS-related Claims against BASF in exchange for payment and subject to the terms and conditions set forth below;

1.5. WHEREAS, Class Representatives and Interim Class Counsel have concluded, after a thorough investigation and after carefully considering the relevant circumstances, including the Claims asserted, the legal and factual defenses to those Claims, and the applicable law, and the burdens, risks, uncertainties, and expense of litigation, as well as the fair, cost-effective, and assured method of resolving the Claims, that it would be in the best interests of Class Members to enter into this Settlement Agreement in order to avoid the uncertainties of litigation and to assure that the benefits reflected herein are obtained for Class Members, and further, that Class Representatives and Interim Class Counsel

consider the Settlement set forth herein to be fair, reasonable, and adequate and in the best interests of Class Members; and

1.6.    WHEREAS, BASF, while continuing to deny any violation, wrongdoing, or liability with respect to any and all Claims asserted or that could be asserted in the Litigation, either on its part or on the part of any of the Released Parties, and while continuing to specifically deny and dispute the scientific, medical, factual, and other bases asserted in support of those Claims, has nevertheless concluded that it will enter into this Settlement Agreement in order to, among other things, avoid the expense, inconvenience, and distraction of further litigation.

## 2.    DEFINITIONS

As used in this Settlement Agreement and its Exhibits, the following terms have the defined meanings set forth below.  Unless the context requires otherwise, (a) words expressed in the plural form include the singular, and vice versa; (b) words expressed in the masculine form include the feminine and gender neutral, and vice versa; (c) the word "will" has the same meaning as the word "shall"; (d) the word "or" is not exclusive; (e) the word "extent" in the phrase "to the extent" means the degree to which a subject or other thing extends, and such phrase does not simply mean "if"; (f) references to any law include all rules, regulations, and sub-regulatory guidance promulgated thereunder; (g) the terms "include," "includes," and "including" are deemed to be followed by "without limitation"; and (h) references to dollars or "$" are to United States dollars.

2.1.    "Active Public Water System" means a Public Water System whose activity status field in SDWIS states that the system is "Active."

2.2.    "AFFF" means aqueous film-forming foam containing PFAS.

2.3.    "Agreement" means this Settlement Agreement.

2.4.    "Allocated Amount" means the portion of the total Settlement Funds payable to each Qualifying Class Member.

2.5.    "Allocation Procedures" means the process, specified in Exhibit A, for fairly dividing the Settlement Funds to determine the amount payable to each Qualifying Class Member from the Qualified Settlement Fund.

2.6.    "BASF's Counsel" means Matthew A. Holian, John R. Wellschlager, and the law firm of DLA Piper LLP (US), or any other law firm so designated in writing by BASF.

2.7.    "Business Day" means a day other than a Saturday, Sunday, or legal holiday in the United States of America as defined by Federal Rule of Civil Procedure 6(a)(6).

2.8.    "Claim" means any past, present or future claim—including counterclaims, cross-claims, actions, rights, remedies, causes of action, liabilities, suits, proceedings, demands, damages, injuries, losses, payments, judgments, verdicts, debts, dues, sums of money, liens, costs and expenses (including attorneys' fees and costs), accounts, reckonings, bills,

2

covenants, contracts, controversies, agreements, obligations, promises, requests, assessments, charges, disputes, performances, warranties, omissions, grievances, or monetary impositions of any sort, in each case in any forum and on any theory, whether legal, equitable, regulatory, administrative or statutory, arising under federal, state, or local constitutional or common law, statute, regulation, guidance, ordinance, contract, or principles of equity; filed or unfiled; asserted or unasserted; fixed, contingent, or non-contingent; known or unknown; discovered or undiscovered; suspected or unsuspected; foreseen, foreseeable, unforeseen, or unforeseeable; matured or unmatured; accrued or unaccrued; ripened or unripened; perfected or unperfected; choate or inchoate; developed or undeveloped; liquidated or unliquidated; now recognized by law or that may be created or recognized in the future by statute, regulation, judicial decision or in any other manner, including any of the foregoing for direct damages, indirect damages, compensatory damages, consequential damages, incidental damages, nominal damages, economic loss, punitive or exemplary damages, statutory and other multiple damages or penalties of any kind, or any other form of damages whatsoever, any request for declaratory, injunctive, or equitable relief, strict liability, joint and several liability, restitution, abatement, subrogation, contribution, indemnity, apportionment, disgorgement, reimbursement, attorneys' fees, expert fees, consultant fees, fines, penalties, expenses, costs or any other legal, equitable, civil, administrative, or regulatory remedy whatsoever, whether direct, representative, derivative, class or individual in nature. It is the intention of this Agreement that the definition of "Claim" be as broad, expansive, and inclusive as possible.

2.9.   "Claim-Over" has the meaning set forth in Paragraph 12.6 of this Settlement Agreement.

2.10.   "Claims Administrator" means the independent neutral third-party Person(s) selected and Court-appointed pursuant to Paragraph 8.3 of this Settlement Agreement who is responsible for reviewing, analyzing, and approving Claims Forms, and allocating and distributing the Settlement Funds fairly and equitably among all Qualifying Class Members pursuant to the Allocation Procedures described in Exhibit A.

2.11.   "Claims Form" means the paper or online document, in a form substantially similar to the one attached as Exhibit B, that Class Members are required to use to receive a payment under this Settlement Agreement as described in Paragraph 11.2 of this Settlement Agreement and in the Allocation Procedures described in Exhibit A. The term "Claims Form" may refer to any of four (4) separate forms: the Action Fund Claims Form; the Supplemental Claims Form; the Special Needs Fund Claims Form; or the Interrelated Drinking Water System Claims Form addendum.

2.12.   "Claims Period" means the time during which a Class Member may submit a Claims Form.

2.13.   "Class Counsel" means, subject to appointment by the Court, Michael A. London and the law firm of Douglas & London, P.C., 59 Maiden Lane, 6th Floor, New York, New York 10038; Scott Summy and the law firm of Baron & Budd, P.C., 3102 Oak Lawn Avenue, Suite 1100, Dallas, Texas 75219; Paul J. Napoli and the law firm of Napoli Shkolnik, 1302 Avenida Ponce De Leon, San Juan, Puerto Rico 00907; and Joseph F. Rice and the law firm of Motley Rice LLC, 28 Bridgeside Boulevard, Mt. Pleasant, South Carolina 29464.

2.14. "Class Member" means an Eligible Claimant that does not opt out of the Settlement Class. It is the intention of this Agreement that the definition of "Class Member" be as broad, expansive, and inclusive as possible.

2.15.  "Class Representative" means, collectively, California Water Service Company (California); City of Benwood (West Virginia); City of Brockton (Massachusetts); City of Camden Water Services (New Jersey); City of Delray Beach (Florida); City of Freeport (Illinois); City of Sioux Falls (South Dakota); Coraopolis Water & Sewer Authority (Pennsylvania); Dalton Farms Water System (New York); Martinsburg Municipal Authority (Pennsylvania); South Shore (Kentucky); Village of Bridgeport (Ohio); and Township of Verona (New Jersey), or other or different Persons as may be appointed by the Court as representatives of the Settlement Class.

2.16. "Common Benefit Holdback Assessment" means the holdback assessment under Case Management Order No. 3 entered by the MDL Court on April 26, 2019. Such Order requires a holdback assessment of six percent (6%) of the amount of any settlement to be allotted for common benefit attorneys' fees and three percent (3%) of the amount of any settlement to be allotted for reimbursement of permissible common benefit costs and expenses.

2.17. "Community Water System" means a Public Water System that serves at least fifteen (15) service connections used by year-round residents or regularly serves at least twenty-five (25) year-round residents, consistent with the use of that term in the Safe Drinking Water Act, 42 U.S.C. § 300f(15), and 40 C.F.R. Part 141.  A "Community Water System" shall include the owner and/or operator of that system.

2.18. "Court" means the United States District Court for the District of South Carolina.

2.19. "Covenant Not to Sue" has the meaning set forth in Paragraph 12.3 of this Settlement Agreement.

2.20. "Dismissal" has the meaning set forth in Paragraph 12.5 of this Settlement Agreement.

2.21. "Drinking Water" means water provided for human consumption (including uses such as drinking, cooking, and bathing), consistent with the use of that term in the Safe Drinking Water Act, 42 U.S.C.§§ 300f to 300j-27. Solely for purposes of this Agreement, the term "Drinking Water" includes raw or untreated water that a Public Water System has drawn or collected from a Water Source so that the water may then (after any treatment) be provided for human consumption, but does not include raw or untreated water that is not drawn or collected from a Water Source. It is the intention of this Agreement that the definition of "Drinking Water" be as broad, expansive, and inclusive as possible.

2.22. "Effective Date" means the date that occurs five (5) Business Days after the date of Final Judgment.

2.23. "Eligible Claimant" means an Active Public Water System that qualifies as a member of the Settlement Class.  It is the intention of this Agreement that the definition of "Eligible Claimant" be as broad, expansive, and inclusive as possible.

2.24. "Escrow Agent" has the meaning set forth in Paragraph 7.1.2 of this Settlement Agreement.

2.25. "Escrow Agreement" means the agreement by and among Class Counsel, BASF, the Escrow Agent, and the Special Master attached as Exhibit C to this Settlement Agreement.

2.26. "Exhibits" means Exhibits A through P, attached to and incorporated by reference in this Settlement Agreement.

2.27. "Final Approval" means the Court's entry of the Order Granting Final Approval.

2.28. "Final Fairness Hearing" means the Court hearing in which any Class Member that wishes to object to the fairness, reasonableness, or adequacy of the Settlement will have an opportunity to be heard, provided that the Class Member complies with the requirements for objecting to the Settlement as set out in Paragraphs 9.4 through 9.5.3 of this Settlement Agreement. The date of the Final Fairness Hearing shall be set by the Court and communicated to all Eligible Claimants in a Court-approved Notice under Federal Rule of Civil Procedure 23(c)(2).

2.29. "Final Judgment" means that the judgment with respect to Released Parties in this action has become final, which shall be the earliest date on which all the following events shall have occurred: (1) the Settlement is approved in all respects by the Court as required by Federal Rule of Civil Procedure 23(e); (2) the Court enters a judgment that terminates this action with respect to Released Parties and satisfies the requirements of Federal Rule of Civil Procedure 58; and (3) the time for appeal of the Court's approval of this Settlement and entry of the final order and judgment with respect to BASF under Federal Rule of Appellate Procedure 4 has expired or, if appealed, approval of this Settlement has been affirmed by the court of last resort to which such appeal (or petition for a writ of certiorari) has been taken and such affirmance has become no longer subject to further review by the court of appeals (Federal Rule of Appellate Procedure 40) or by the Supreme Court (U.S. Supreme Court Rule 13), or the appeal or petition is voluntarily dismissed (Federal Rule of Appellate Procedure 42 or U.S. Supreme Court Rule 46).

2.30. "Impacted Water Source" means a Water Source that has a Qualifying Test Result showing a Measurable Concentration of PFAS.

2.31. "Interim Class Counsel" means Michael A. London and the law firm of Douglas & London, P.C., 59 Maiden Lane, 6th Floor, New York, NY 10038; Scott Summy and the law firm of Baron & Budd, P.C., 3102 Oak Lawn Avenue, Suite 1100, Dallas, Texas, 75219; Paul J. Napoli and the law firm of Napoli Shkolnik, 1302 Avenida Ponce de Leon, San Juan, Puerto Rico 00907; and Joseph F. Rice and the law firm of Motley Rice LLC, 28 Bridgeside Boulevard, Mt. Pleasant, South Carolina 29464.

2.32. "Litigation" means collectively all MDL Cases in which any Public Water System asserts against any Released Party any Claim related to alleged actual or potential PFAS contamination, as well as any currently pending litigation in the United States of America in which any Public Water System asserts against any Released Party any Claim related to alleged actual or potential PFAS contamination.

2.33.   "MDL Cases" means collectively all cases filed in, transferred to, or associated with *In Re: Aqueous Film-Forming Foams Products Liability Litigation,* MDL No. 2:18-mn-2873 (D.S.C.).

2.34.   "Measurable Concentration" means the lower of a concentration equal to or greater than the limit of detection of the analytical method used (regardless of whether that limit is higher than, lower than, or equal to any limit established for any purpose by federal or state law) or one part per trillion (one nanogram per liter).

2.35.   "Non-Class Potable Water" means water in any active privately owned well providing potable water for human consumption that is not owned or operated by a Releasing Party or water in any active facility or equipment providing potable water for human consumption that is not owned or operated by a Releasing Party, so long as the fate and transport of PFAS released into groundwater poses a threat to such water.

2.36.   "Non-Transient Non-Community Water System" means a Public Water System that is not a Community Water System and that regularly serves at least twenty-five (25) of the same persons over six (6) months per year, consistent with the use of that term in 40 C.F.R. Part 141.  A "Non-Transient Non-Community Water System" shall include the owner and/or operator of that system.

2.37.   "Notice" means the Court-approved notice to Eligible Claimants that is substantially similar to the form attached as Exhibit D.

2.38.   "Notice Administrator" means the independent neutral third-party Person(s) selected and Court-appointed pursuant to Paragraph 8.1 of this Settlement Agreement who is responsible for administering the Notice Plan.

2.39.   "Notice Plan" means the plan for distribution of the Notice, including direct mail and publication, as appropriate, which is set forth in Exhibit E to this Settlement Agreement and is subject to Court approval as set forth in Paragraphs 8.2 and 9.2 of this Settlement Agreement.

2.40.   "Objection" has the meaning set forth in Paragraph 9.4 of this Settlement Agreement.

2.41.   "Opt Out" or "Request for Exclusion" has the meaning set forth in Paragraph 9.6 of this Settlement Agreement.

2.42.   "Opt Out Administrator" has the meaning set forth in Paragraph 8.6 of this Settlement Agreement.

2.43.   "Order Granting Final Approval" means the order entered by the Court approving the terms and conditions of this Settlement Agreement, including the manner and timing of providing Notice and certifying a Settlement Class.

2.44.   "Order Granting Preliminary Approval" means the order entered by the Court conditionally approving the terms and conditions of this Settlement Agreement, including the conditional certification of the proposed Settlement Class, the manner and timing of providing Notice,

the period for filing Objections or Requests for Exclusion, and the date of the Final Fairness Hearing. Class Representatives will submit to the Court a proposed Order Granting Preliminary Approval in the form attached as Exhibit G.

2.45. "Parties" means BASF, Class Representatives, and Class Members. To the extent that BASF, Class Representatives, and Class Members discharge any of their obligations under this Settlement Agreement through agents, the actions of those agents shall be considered the actions of the Parties.

2.46. "Party" means any of the Parties.

2.47. "Person" means a natural person, corporation, company, association, limited liability company, partnership, limited partnership, joint venture, affiliate, any other type of private entity, a county, municipality, any other public or quasi-public entity, or their respective spouse, heir, predecessor, successor, executor, administrator, manager, operator, representative, or assign.

2.48. "PFAS" means, solely for purposes of this Agreement, any per- or poly-fluoroalkyl substance that contains at least one fully fluorinated methyl or methylene carbon atom (without any hydrogen, chlorine, bromine, or iodine atom attached to it). It is the intention of this Agreement that the definition of "PFAS" be as broad, expansive, and inclusive as possible.

2.49. "Preliminary Approval" means the Court's entry of the Order Granting Preliminary Approval.

2.50. "Public Water System" means a system for the provision to the public of water for human consumption through pipes or other constructed conveyances, if such system has at least fifteen (15) service connections or regularly serves an average of at least twenty-five (25) individuals daily at least sixty (60) days out of the year, consistent with the use of that term in the Safe Drinking Water Act 42 U.S.C § 300f(4)(A) and 40 C.F.R. Part 141. The term "Public Water System" includes (i) any collection, treatment, storage, and distribution facilities under control of the operator of such system and used primarily in connection with such system, and (ii) any collection or pretreatment storage facilities not under such control which are used primarily in connection with such system. Solely for purposes of this Settlement Agreement, the term "Public Water System" refers to a Community Water System of any size or a Non-Transient Non-Community Water System that serves more than 3,300 people, according to SDWIS, the owner and/or operator of such Public Water Systems, or any Person (but not any financing or lending institution) that has legal authority or responsibility (by statute, regulation, other law, or contract) to fund or incur financial obligations for the design, engineering, installation, operation, or maintenance of any facility or equipment that treats, filters, remediates, or manages water that has entered or may enter Drinking Water or any Public Water System. It is the intention of this Agreement that the definition of "Public Water System" be as broad, expansive, and inclusive as possible.

2.51. "Qualified Settlement Fund" has the meaning set forth in Paragraph 7 of this Settlement

Agreement and shall be established within the meaning of Treas. Reg. § 1.468B-1 for purposes of receiving the Settlement Funds as set forth in this Settlement Agreement.

2.52.   "Qualifying Class Member" means a Class Member that has submitted a Claims Form satisfying the requirements of Paragraph 11.2 of this Settlement Agreement.

2.53.   "Qualifying Test Result" means any result of a test conducted by or at the direction of a Class Member or of a federal, state, or local regulatory authority, or any test result reported or provided to the Class Member by a certified laboratory or other Person, that used any state or federal agency-approved or validated analytical method to analyze Drinking Water or water that is to be drawn or collected into a Class Member's Public Water System.

2.54.   "Release" or "Released Claims" has the meaning set forth in Paragraph 12.1 and Section 12 of this Settlement Agreement.

2.55.   "Released Parties" means BASF and its respective past, present, or future administrators, advisors, affiliated business entities, affiliates, agents, assigns, attorneys, constituent corporation or entity (including constituent of a constituent) absorbed by BASF in a consolidation or merger, counsel, directors, divisions, employee benefit plans, employee benefit plan participants or beneficiaries, employees, executors, heirs, insurers, managers, members, officers, owners, parents, partners, partnerships, predecessors, principals, resulting corporation or entity, servants, shareholders, subrogees, subsidiaries, successors, trustees, trusts, and any other representatives, individually or in their corporate or personal capacity, and anyone acting on their behalf, including in a representative or derivative capacity, including without limitation BASF SE, BASF Schweiz AG, BASF USA Holding LLC, BASF Nederland BV, BASF Performance Products LLC, Ciba-Geigy Limited, Ciba-Geigy Corporation, Ciba Specialty Chemicals Holding, Inc., Ciba Specialty Chemicals Corporation, Ciba Specialty Chemicals, Inc., Ciba International AG, Ciba Inc., and Ciba Corporation. Released Parties does not include any toller, raw material producer/supplier, surfactant producer or supplier or other defendant in the MDL that is not part of the BASF corporate structure. It is the intention of this Agreement that the definition of "Released Parties" be as broad, expansive, and inclusive as possible as it relates to the BASF corporate structure.

2.56.   "Releasing Parties" means (a) Class Representatives and Class Members; (b) other than a State or the federal government, each of their respective past, present, or future, direct or indirect, affiliated business entities, affiliates, agencies, assigns, boards, commissions, departments, districts, divisions, entities, institutions, instrumentalities, owners, parents, partners, predecessors, subdivisions, subsidiaries, and successors, in their official or corporate capacity; (c) other than a State or the federal government, any past, present, or future administrators, agents, attorneys, board members, counsel, directors, employees, executors, heirs, insurers, managers, members, officers (elected or appointed), predecessors, principals, servants, shareholders, subrogees, successors, trustees, water-system operators, and assignees or other representatives, of any of the foregoing in their official or corporate capacity; (d) any Person, other than a State or the federal government, acting in privity with or acting on behalf of or in concert with any of the foregoing, including in a representative or derivative capacity; (e) any Person, other than a State or

the federal government, that is legally responsible for funding (by statute, regulation, other law, or contract) a Class Member or its Public Water System or that has authority to bring a claim on behalf of a Class Member or seek recovery for alleged harm to a Class Member, its Public Water System, or the Public Water System's ability to provide safe or compliant Drinking Water; (f) any Person, other than a State or the federal government, acting on behalf of or in concert with a Class Member to prevent PFAS from entering a Class Member's Public Water System or to seek recovery for alleged harm to a Class Member, its Public Water System  or the Public Water System's ability to provide safe or compliant Drinking Water; and (g) any Person, other than a State or the federal government, for which a Class Member has the authority to provide a binding release. It is the intention of this Agreement that the definition of "Releasing Parties" be as broad, expansive, and inclusive as possible.

2.57.  "Releasing Party's Public Water System" means the Public Water System that has an Impacted Water Source as of May 15, 2024 and does not Opt Out.

2.58.  "Required Participation Threshold" has the meaning set forth in Paragraph 10 of this Settlement Agreement.

2.59.  "SDWIS" means the U.S. EPA Safe Drinking Water Information System Federal Reporting Services system, as of May 15, 2024.

2.60.  "Settlement" means the settlement of the Released Claims against the Released Parties that is provided for by this Settlement Agreement.

2.61.  "Settlement Agreement" means this document which describes the Settlement between and among the Class Representatives and BASF, and any related Exhibits, including, without limitation, the Allocation Procedures, Claims Forms, Notice and the Parties' Joint Interpretive Guidance documents.

2.62.  "Settlement Amount" means three hundred twelve million five hundred thousand dollars ($ 312,500,000).

2.63.  "Settlement Class" has the meaning set forth in Paragraph 5.1 of this Settlement Agreement.

2.64.  "Settlement Date" means the date on which the Class Representatives and BASF execute this Settlement Agreement.

2.65.  "Settlement Funds" means the amount of funds in the Qualified Settlement Fund paid by BASF pursuant to this Settlement Agreement and any interest that accrues thereon.

2.66.  "Special Master" means the independent neutral third-party Person selected and Court-appointed pursuant to Paragraph 8.7 of this Settlement Agreement who is responsible for overseeing the work of the Notice Administrator, the Opt Out Administrator and the Claims Administrator, providing guidance throughout the allocation and distribution process, and determining appeals and/or other disputes that may arise in the course of the Notice Administrator and Claims Administrator executing their duties.

2.67.   "State" means any state of the United States, the District of Columbia, the Commonwealth of Puerto Rico, American Samoa, Guam, the U.S. Virgin Islands, and the Commonwealth of the Northern Mariana Islands.

2.68.   "Summary Notice" means the Court-approved summary of the Notice to Eligible Claimants that is substantially similar to the form attached as Exhibit F.

2.69.   "Taxes" has the meaning set forth in Paragraph 7.2.2 of this Settlement Agreement.

2.70.   "Tax Expenses" has the meaning set forth in Paragraph 7.2.2 of this Settlement Agreement.

2.71.   "Transient Non-Community Water System" means a Public Water System that is not a Community Water System and that does not regularly serve at least twenty-five (25) of the same persons over six (6) months per year, consistent with the use of that term in 40 C.F.R. Part 141. A "Transient Non-Community Water System" shall include the owner and/or operator of that system.

2.72.   "UCMR-5" means the U.S. EPA's Fifth Unregulated Contaminant Monitoring Rule and all monitoring and testing conducted pursuant to that Rule.

2.73.   "United States of America" means the United States of America, including the states and the District of Columbia, its territories, and possessions, the Commonwealth of Puerto Rico, and other areas subject to its jurisdiction.

2.74.   "U.S. EPA" means the United States Environmental Protection Agency.

2.75.   "Walk-Away Right" has the meaning set forth in Paragraph 10.1 of this Settlement Agreement.

2.76.   "Water Source" means a groundwater well, a surface water intake, or any other intake point from which a Public Water System draws or collects water for distribution as Drinking Water and the raw or untreated water that is thus drawn or collected. Solely for purposes of the Allocation Procedures described in Exhibit A, (i) a Public Water System's multiple intakes from one distinct surface-water source are deemed to be a single Water Source so long as the intakes supply the same water treatment plant; (ii) a Public Water System's intakes from multiple distinct surface-water sources, or a Public Water System's intakes from one distinct surface-water source that supply multiple water treatment plants, are deemed to each be a separate Water Source; and (iii) a Public Water System's multiple groundwater wells (whether from one distinct aquifer or from multiple distinct aquifers) that supply multiple water treatment plants are deemed to each be a separate Water Source.

## 3.   SETTLEMENT AGREEMENT OVERVIEW

3.1.   **Settlement Consideration**.  Subject to the Walk-Away Right, BASF shall make or cause to be made payments that total the Settlement Amount of three hundred twelve million five hundred thousand dollars ($312,500,000), plus a separate payment for notice and administrative costs of four million dollars ($4,000,000), in accordance with this Settlement Agreement, which will serve as the Qualified Settlement Fund. In exchange,

the Released Parties shall receive from the Releasing Parties the Release, Covenant Not to Sue, and Dismissal provided for in this Settlement Agreement. No amounts paid pursuant to this Paragraph 3.1 are in relation to the violation of any civil or criminal law or the investigation or inquiry by any government or governmental entity into the potential violation of any civil or criminal law, within the meaning of Section 162(f)(1) of the Internal Revenue Code of 1986, as amended, and section 1.162-21(a) of the Treasury Regulations thereunder. All amounts paid to Qualifying Class Members pursuant to this Paragraph 3.1 are intended for restitution or remediation (including treatment of contamination of Water Sources and Drinking Water). If a determination were made that a portion of such amounts is in relation to a violation or potential violation of law, that portion constitutes restitution within the meaning of Section 162(f)(2)(A) of the Internal Revenue Code of 1986, as amended and section 1.162-21(a) of the Treasury Regulations thereunder. Class Members and BASF shall bear their own costs, including all legal expenses and attorneys' fees. All legal expenses and attorneys' fees of Class Members will be paid by Class Members from amounts paid from the Settlement Funds. Except as provided for in Paragraphs 9.10 and 11.2 regarding the payment of attorneys' fees and costs from the Qualified Settlement Fund, no portion of any amount paid under this Agreement constitutes the payment of a fine, penalty, or punitive damages, the disgorgement of profits, reimbursement for litigation or investigation costs or attorneys' fees or costs, or an amount paid in settlement of any Claim for any of the foregoing; and if a determination were made to the contrary, the amounts paid would qualify under the exceptions in paragraphs (2) and (3) of Section 162(f).

3.2. **Release of Claims**.  The obligations incurred pursuant to this Agreement shall be in full and final disposition of the Released Claims as against all Released Parties.  Upon the Effective Date, all Class Members, on behalf of the Releasing Parties, shall, with respect to each and every one of the Released Claims, release and forever discharge, and shall forever be enjoined from prosecuting, any and all Released Claims against any of the Released Parties as set forth in Section 12.

3.3. **Operation of the Settlement**.  Class Representatives will seek approval from the Court to certify the Settlement Class under Federal Rule of Civil Procedure 23(b)(3).  Once a Settlement Class is certified, Class Members that wish to receive a portion of the Settlement Funds may complete and submit a Claims Form, in substantially the same form as that attached as Exhibit B.  The Claims Form must be submitted to the Claims Administrator on or before the final date of the relevant Claims Period and must adhere to and follow all other requirements set forth herein and/or by the Claims Administrator, including providing all required information specified on the Claims Form.  The Claims Administrator will distribute the Settlement Funds to Qualifying Class Members pursuant to Paragraphs 6.1 through 7.3, the Allocation Procedures in Exhibit A, and the guidance set forth in the Parties' Joint Interpretive Guidance, attached as Exhibits M through P.

4. **REPRESENTATIONS AND WARRANTIES**

4.1. **Class Representatives' Representations and Warranties**.  Class Representatives represent and warrant to BASF as follows:

11

4.1.1.  Each of the Class Representatives is eligible to be and will become a Class Member.

4.1.2.  Each of the Class Representatives has received legal advice from Interim Class Counsel regarding the advisability of entering into this Settlement Agreement and the legal consequences of this Settlement Agreement.

4.1.3.  No portion of any of the Released Claims possessed by any of the Class Representatives and no portion of any relief under this Settlement Agreement to which any of the Class Representatives may be entitled has been assigned, transferred, or conveyed by or for any of the Class Representatives to any other Person, except pursuant to (i) a contingency fee agreement with Class Counsel or (ii) a mandatory repayment to any government agency of a grant or loan that financed, in whole or in part, the design, engineering, installation, maintenance, or operation of, or cost associated with any kind of treatment, filtration, or remediation of PFAS by the Class Representative.

4.1.4.  None of the Class Representatives is relying on any statement, representation, omission, inducement, or promise by any of BASF, its agents, or its representatives, except those expressly stated in this Settlement Agreement.

4.1.5.  Each of the Class Representatives, through Interim Class Counsel, has investigated the law and facts pertaining to the Released Claims and the Settlement.

4.1.6.  Each of the Class Representatives has carefully read, and knows and understands, the full contents of this Settlement Agreement and is voluntarily entering into this Agreement after having consulted with Interim Class Counsel or other attorneys.

4.1.7.  Each of the Class Representatives has all necessary competence and authority to enter into this Settlement Agreement on its own behalf and on behalf of the Class.

4.1.8.  None of the Class Representatives will Opt Out or file an Objection.

4.2.  **Interim Class Counsel's Representations and Warranties.**  Interim Class Counsel represents and warrants to BASF as follows:

4.2.1.  Interim Class Counsel believes that the Settlement is fair, reasonable, adequate, and beneficial to each Class Member and that participation in the Settlement would be in the best interests of each Class Member.

4.2.2.  Because Interim Class Counsel believes that the Settlement is in the best interests of each Class Member, they will not solicit, or assist others in soliciting, Eligible Claimants to Opt Out, file an Objection, or otherwise challenge the Settlement.

4.2.3.  Interim Class Counsel has all necessary authority to enter into and execute this Settlement Agreement on behalf of Class Representatives and Class Members, including under Case Management Order No. 3.

12

4.2.4.    Each of the Class Representatives has approved and agreed to be bound by this Settlement Agreement.

4.2.5.    The representations in Paragraphs 4.1 through 4.1.8 of this Settlement Agreement are true and correct to the best of Class Counsel's knowledge.

4.3.    **BASF's Representations and Warranties.**  BASF represents and warrants to the Class Representatives as follows:

4.3.1.    BASF has received legal advice from its attorneys regarding the advisability of entering into this Settlement Agreement and the legal consequences of this Settlement Agreement.

4.3.2.    BASF is not relying on any statement, representation, omission, inducement, or promise by any Class Representative, any Eligible Claimant, or Interim Class Counsel, except those expressly stated in this Settlement Agreement.

4.3.3.    BASF, with the assistance of its attorneys, has investigated the law and facts pertaining to the Released Claims and the Settlement.

4.3.4.    BASF has carefully read, and knows and understands, the full contents of this Settlement Agreement and is voluntarily entering into this Agreement after having consulted with its attorneys.

4.3.5.    BASF has all necessary authority to enter into this Settlement Agreement, has authorized the execution and performance of this Settlement Agreement, and has authorized the Person signing this Settlement Agreement on its behalf to do so.

## 5.    CLASS CERTIFICATION FOR SETTLEMENT PURPOSES

5.1.    **Settlement Class Definition**.  For the sole purpose of effectuating this Settlement, Class Representatives and BASF agree that Class Representatives shall request that the Court certify the following "Settlement Class":

> Every Active Public Water System in the United States of America that has one or more Impacted Water Sources as of May 15, 2024.

Excluded from the Settlement Class are the following:

A.    Any Public Water System that is owned by a State government and lacks independent authority to sue and be sued.

B.    Any Public Water System that is owned by the federal government and lacks independent authority to sue and be sued.

C.    Any privately owned well that provides water only to its owner's (or its owner's tenant's) individual household and any other system for the provision of water for human consumption that is not a Public Water

System.

## 6.     CONSIDERATION

6.1.     **Settlement Funds.**  Under the terms of this Settlement Agreement and subject to the Walk-Away Right, BASF shall pay or cause to be paid three hundred twelve million five hundred thousand dollars ($312,500,000) (the "Settlement Amount") plus an additional payment of $4,000,000 (the "Initial Payment") into an interest-bearing "Qualified Settlement Fund" account at a federally insured financial institution established in accordance with Treasury Regulations § 1.468B-1 et seq., which shall be administered and distributed pursuant to this Sections 6 and 7, and Paragraph 8.10 of this Settlement Agreement, and the Allocation Procedures described in Exhibit A.  BASF shall make the payments as follows:

6.1.1.     Within ten (10) Business Days after Preliminary Approval, or on July 15, 2024, whichever is later, BASF shall pay or cause to be paid four million dollars ($4,000,000) for costs or expenses incurred by the Notice Administrator, the Opt Out Administrator, the Claims Administrator, the Special Master, or the Escrow Agent under this Settlement Agreement ("the Initial Payment").

6.1.2.     On March 1, 2025, BASF shall pay or cause to be paid three hundred twelve million five hundred thousand dollars ($312,500,000) ("the Second Payment").

6.2.     **Notice and Administrative Costs**.  BASF shall wire transfer the Initial Payment to the Qualified Settlement Fund account for ultimate distribution in accordance with this Agreement.  If the Qualified Settlement Fund has not been established and approved by the Court by the deadline for such payment, BASF shall not be obligated to make such payment until ten (10) Business Days after the Qualified Settlement Fund is established and approved by the Court.  In no event shall BASF have any liability whatsoever with respect to the Settlement Funds once they are paid to the Qualified Settlement Fund in accordance with this Agreement and as specified in this Section 6.

6.3.     **Use of Qualified Settlement Fund for Notice and Administration Costs**.  The Qualified Settlement Fund may be used to fund the provision of Notice pursuant to the Notice Plan and any reasonable fees, costs, or expenses incurred by the Notice Administrator, the Opt Out Administrator, the Claims Administrator, the Special Master, or the Escrow Agent under this Settlement Agreement.  The Escrow Agent shall disburse funds for such costs upon the parties' joint written request.

6.4.     **Conditions for Settlement Distribution**.  Other than as expressly provided for in Paragraph 6.3, the Claims Administrator may not distribute any money to any Person, including any Qualifying Class Member, unless and until (i) the Court has issued an Order Granting Final Approval, (ii) all deadlines, including those set forth in Paragraph 10.3 for BASF to terminate the Settlement, have passed, and (iii) the Effective Date has passed.

14

## 7.     QUALIFIED SETTLEMENT FUND

### 7.1.     Establishment of Qualified Settlement Fund

7.1.1.     The motion seeking an Order Granting Preliminary Approval described in Paragraph 9.1 shall seek (1) the approval of the Escrow Agreement, (2) the authorization that the escrow account established pursuant to the Escrow Agreement be established as a "qualified settlement fund" within the meaning of Treasury Regulations § 1.468B-1, and (3) the appointment of the Special Master as the "administrator" of the Qualified Settlement Fund within the meaning of Treasury Regulations § 1.468B-2(k)(3).

7.1.2.     Class Counsel and BASF's Counsel will jointly recommend the following Person to serve as Escrow Agent for the Qualified Settlement Fund, who shall be subject to appointment by the Court in the Order Granting Preliminary Approval:

> **Robyn Griffin**
> **The Huntington National Bank**
> **One Rockefeller Center, 10th Floor**
> **New York, NY 10020**

7.1.3.     Any successor to the initial Escrow Agent shall be subject to appointment by the Court, with the consent of all Parties, shall fulfill the same functions from and after the date of succession, and shall be bound by the determinations made by the predecessor(s) to date.

7.1.4.     Upon Court approval of the proposed Escrow Agreement, appointment of the Escrow Agent, and authorization that the Qualified Settlement Fund established pursuant to the Escrow Agreement be established as a qualified settlement fund under § 1.468B-1 of the Treasury Regulations promulgated under IRC Section 468B, Class Counsel, BASF, the Escrow Agent, and the Special Master will execute the Escrow Agreement approved by the Court, thereby creating the Qualified Settlement Fund.

### 7.2.     Tax Treatment of Settlement Fund

7.2.1.     The Qualified Settlement Fund will be structured and operated in a manner such that it qualifies as a "qualified settlement fund" within the meaning of Treasury Regulations § 1.468B-1 from the earliest date possible, and the Special Master, BASF, and all other relevant parties shall file any "relation-back election" (within the meaning of Treasury Regulations § 1.468B-1(j)(2)) required to treat the Qualified Settlement Fund as a qualified settlement fund from the earliest date possible. Such elections shall be made in compliance with the procedures and requirements contained in such regulations. It shall be the sole responsibility of the Special Master to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filings to occur.  The "taxable year" of the Qualified Settlement Fund

15

shall be the "calendar year" as such terms are defined in Section 441 of the Code. The Qualified Settlement Fund shall use the accrual method of accounting as defined in Section 446(c) of the Code.

7.2.2. The Special Master shall be authorized to take any action that it determines necessary to maintain the status of the Qualified Settlement Fund as a "qualified settlement fund" within the meaning of Treasury Regulations § 1.468B-1. The Special Master shall (a) obtain a taxpayer identification number for the Qualified Settlement Fund, (b) prepare and file, or cause to be prepared and filed, all U.S. federal, state, local, and foreign Tax returns (as applicable) required to be filed for the Qualified Settlement Fund, consistent with Treasury Regulations § 1.468B-2(k) and corresponding or similar provisions of state, local, or foreign law, and in accordance with the Settlement Agreement and the Escrow Agreement, (c) prepare and file, or cause to be prepared and filed, any other statement, return, or disclosure relating to the Qualified Settlement Fund that is required by any governmental authority, including but not limited to information reporting as described in Treasury Regulations § 1.468B-2(1) (or any corresponding or similar provision of state, local, or foreign law), (d) obtain from BASF a statement required pursuant to Treasury Regulations § 1.468B-3(e) no later than February 15th of the year following the calendar year in which BASF transfers the Settlement Funds to the Qualified Settlement Fund, and (e) be responsible for responding to any questions from, or audits regarding Taxes by, the IRS or any state or local Tax authority. The Special Master will also be responsible for ensuring the Qualified Settlement Fund complies with all withholding requirements (including by instructing the Escrow Agent to withhold any required amounts) with respect to payments made by the Qualified Settlement Fund, as well as paying any associated interest and penalties. Any amounts deducted or withheld by the Escrow Agent (or any other withholding agent) with respect to payments made by the Qualified Settlement Fund shall be treated for all purposes as though such amounts had been distributed to the Person in respect of which such deduction or withholding was made. The Special Master shall direct the Escrow Agent to timely pay from the Qualified Settlement Fund any taxes (including but not limited to withholding taxes with respect to distributions from the Qualified Settlement Fund), interest, and penalties required to be paid to the IRS or any other governmental authority by the Qualified Settlement Fund (collectively, "Taxes") and any reasonable out-of-pocket expenses incurred to (i) cause any Tax returns and information reports to be prepared and filed, (ii) respond to any questions from, or represent the Qualified Settlement Fund in any audit or similar proceeding regarding Taxes by, the IRS or any state or local governmental authority or (iii) otherwise satisfy any Tax compliance obligation of the Qualified Settlement Fund (such Taxes and other expenses, collectively, the "Tax Expenses"). In addition, the Special Master shall timely file with the IRS any information returns and shall timely provide to BASF any written statements, in each case, collected from Qualifying Class Members. BASF shall provide the Special Master with the statement required pursuant to Treasury Regulations § 1.468B-3(e) no later than February 15th of the year following the calendar year in which BASF transfers the Settlement Funds to the Qualified Settlement Fund.

16

Such returns (as well as the election described in Paragraph 7.2.1) shall be consistent with Paragraphs 7.2.1 through 7.2.4 and in all events shall reflect that all Taxes (including any estimated Taxes, interest, or penalties) on the income earned by the Qualified Settlement Fund shall be paid out of the Qualified Settlement Fund as provided in Paragraph 7.2.3.

7.2.3.    All Taxes arising with respect to the income earned by the Qualified Settlement Fund, including any Taxes or Tax detriments that may be imposed upon BASF, its insurers, or BASF's Counsel with respect to any income earned by the Qualified Settlement Fund for any period during which the Qualified Settlement Fund does not qualify as a "qualified settlement fund" for federal or state income Tax purposes and all Tax Expenses shall be paid out of the Qualified Settlement Fund. In all events, none of Class Representatives, BASF, BASF's Counsel, BASF's insurers, or Class Counsel shall have any liability or responsibility for Taxes or Tax Expenses. Taxes and Tax Expenses shall be treated as, and considered to be, a cost of administration of the Qualified Settlement Fund and shall be timely paid by the Special Master out of the Qualified Settlement Fund without prior order from the Court, and none of BASF, BASF's insurers, BASF's Counsel, Class Representatives, or Class Counsel shall be responsible or have any liability therefor.

7.2.4.    BASF makes no representations to Class Members or any other Person concerning any Tax consequences, Tax loss, or Tax treatment of any allocation or distribution of funds to Class Members or any other Person pursuant to this Settlement Agreement, the Settlement, or the Allocation Procedures. Class Members make no representations to BASF or any other Person concerning any Tax consequences, Tax loss, or Tax treatment of any allocation or distribution of funds to Class Members or any other Person pursuant to this Settlement Agreement, the Settlement, or the Allocation Procedure. Neither Class Members nor BASF shall have any liability to each other with respect to any Tax consequences, Tax loss, or Tax treatment of any amounts paid or received in accordance with the terms of this Settlement Agreement irrespective of how amounts are spent by Class Members.

7.3.    **Payment of Amounts Remaining in Any Fund.** The Claims Administrator shall pay any money remaining Qualified Settlement Fund as of December 31, 2030, to the Qualifying Class Members, in proportion to the sum of the prior payments that each Qualifying Class Member received from all funds established by this Settlement Agreement.

## 8.    ADMINISTRATION

8.1.    **Selection of Notice Administrator**.  Within thirty (30) calendar days after the Settlement Date, Interim Class Counsel will retain, subject to consultation with BASF, a Notice Administrator who shall be formally appointed by the Court. Interim Class Counsel shall propose the following Person, subject to the review of BASF, to serve as Notice Administrator, who shall be subject to appointment by the Court in the Order Granting Preliminary Approval:

17

**Steven Weisbrot**
**President and Chief Executive Officer**
**Angeion Group**
**1650 Arch Street, Suite 2210**
**Philadelphia, PA 19103**

8.2. **Requirements for Notice Administrator.** The Notice Administrator's role shall generally include administering the Notice Plan, which is subject to Court approval as provided in Paragraph 9.1.

    8.2.1. The Notice Administrator may not be a Person who has acted as counsel, or otherwise represented a party, in Claims relating to AFFF or PFAS.

    8.2.2. The Notice Administrator shall have the authority to perform all actions consistent with the terms of this Settlement Agreement that the Notice Administrator deems to be reasonably necessary to effectuate the Notice Plan, which is subject to Court approval as provided in Paragraph 9.1. Subject to the Court's approval, the Notice Administrator may retain any Person that the Notice Administrator deems to be reasonably necessary to provide assistance in administering the Notice Plan.

    8.2.3. Any successor to the initial Notice Administrator shall fulfill the same functions from and after the date of succession and shall be bound by the determinations made by the predecessor(s) to date.

    8.2.4. The Notice Administrator shall have no authority to alter in any way the Parties' rights and obligations under the Settlement Agreement.

    8.2.5. BASF, BASF's Counsel, and Released Parties shall have no involvement with or responsibility for supervising the Notice Administrator and are not subject to the authority of the Notice Administrator.

    8.2.6. All fees, costs, and expenses incurred in the administration or work by the Notice Administrator, including fees, costs, and expenses of the Notice Administrator, shall be paid in accordance with Paragraph 6.3.

8.3. **Selection of Claims Administrator**. Interim Class Counsel shall propose the following Person, subject to the review of BASF, to serve as Claims Administrator who shall be subject to appointment by the Court in the Order Granting Preliminary Approval:

**Dustin Mire**
**Eisner Advisory Group**
**8550 United Plaza Boulevard, Suite #1001**
**Baton Rouge, LA 70809**

8.4. **Requirements for Claims Administrator**. The Claims Administrator's role generally shall include administration of the proposed Settlement, including reviewing, analyzing, and approving Claims Forms, including all supporting documentation, as well as

determining any Qualifying Class Member's Allocated Amount and overseeing distribution of the Settlement Funds pursuant to this Settlement Agreement and the Allocation Procedures described in Exhibit A.

8.4.1. The Claims Administrator may not be a Person who has acted as counsel, or otherwise represented a party, in Claims relating to AFFF or PFAS.

8.4.2. The Claims Administrator shall have the authority to perform all actions consistent with the terms of this Settlement Agreement that the Claims Administrator deems to be reasonably necessary to effectuate the administration of claims. Subject to the Court's approval, the Claims Administrator may retain any Person that the Claims Administrator deems to be reasonably necessary to provide assistance in administering the Allocation Procedures described in Exhibit A.

8.4.3. Any successor to the initial Claims Administrator shall fulfill the same functions from and after the date of succession and shall be bound by the determinations made by the predecessor to date.

8.4.4. The Claims Administrator shall have no authority to alter in any way the Parties' rights and obligations under the Settlement Agreement.

8.4.5. BASF, BASF's Counsel, and Released Parties shall have no responsibility for supervising the Claims Administrator and are not subject to the authority of the Claims Administrator.

8.4.6. All fees, costs, and expenses incurred in the administration or work by the Claims Administrator, including fees, costs, and expenses of the Claims Administrator, shall be paid in accordance with Paragraph 6.3.

8.5. **Selection of Opt Out Administrator**. Interim Class Counsel shall propose the following Person to serve as the Opt Out Administrator, who shall be subject to appointment by the Court in the Order Granting Preliminary Approval:

> **Edward J. Bell**
> **Rubris, Inc.**
> **P.O. Box 3866**
> **McLean, VA 22103**

8.6. **Requirements for Opt Out Administrator**. The Opt Out Administrator's role shall generally include processing of and reporting on Requests for Exclusion, or "Opt Outs" received, as well as processing of and reporting on any withdrawals of Requests for Exclusion. The Opt Out Administrator will be responsible for determining the compliance of any Request for Exclusion with the terms and conditions of this Settlement. Opt Outs must be submitted by filling out the Request for Exclusion, in substantially the same form as the one attached as Exhibit H, which will be available in an online Opt Out portal to which the Opt Out Administrator, the Notice Administrator, the Claims Administrator, the Special Master, BASF's Counsel and Class Counsel will have access. Paper copy

19

submissions will also be permitted and must be served on the Opt Out Administrator; within seven (7) days of receipt of a paper copy Request for Exclusion, the Opt Out Administrator shall ensure that it is uploaded and accounted for within the Opt Out portal. The Opt Out Administrator will issue report(s) to the recipients identified in Paragraph 9.6 and in accordance with the provisions of Section 10.

8.6.1.   The Opt Out Administrator may not be a Person who has acted as counsel, or otherwise represented a party, in Claims relating to AFFF or PFAS.

8.6.2.   The Opt Out Administrator shall have the authority to perform all actions consistent with the terms of this Settlement Agreement that the Opt Out Administrator deems to be reasonably necessary for the efficient and timely processing of the Requests for Exclusion, including the performance of assessing compliance of such Requests for Exclusion, and any related reporting. Subject to the Court's approval, the Opt Out Administrator may retain any Person that the Opt Out Administrator deems to be reasonably necessary to assist in the processing of Opt Outs.

8.6.3.   Any successor to the initial Opt Out Administrator shall fulfill the same functions from and after the date of succession and shall be bound by the determinations made by the predecessor to date.

8.6.4.   The Opt Out Administrator shall have no authority to alter in any way the Parties' rights and obligations under the Settlement Agreement.

8.6.5.   BASF, BASF's Counsel, and Released Parties shall have no responsibility for supervising the Opt Out Administrator and are not subject to the authority of the Opt Out Administrator.

8.6.6.   Any determination by the Opt Out Administrator that could, directly or indirectly, impact any payment that BASF owes under this Settlement Agreement shall be reviewable by the Special Master.

8.6.7.   All fees, costs, and expenses incurred in the administration or work by the Opt Out Administrator, including fees, costs, and expenses of the Opt Out Administrator, shall be paid in accordance with Paragraph 6.3.

8.7.   **Selection of Special Master**.  Interim Class Counsel shall propose the following Person to serve as Special Master, who shall be formally appointed by the Court pursuant to Federal Rule of Civil Procedure 53:

> **Matthew Garretson**
> **Wolf/Garretson LLC**
> **P.O. Box 2806**
> **Park City, UT 84060**

8.8.   **Requirements for Special Master**.  The Special Master's role shall generally include administration of the proposed Settlement by overseeing the work of the Notice

Administrator, the Opt Out Administrator, and the Claims Administrator, and in providing quasi-judicial intervention if and/or when necessary.

8.8.1. The Special Master may not be a Person who has acted as counsel, or otherwise represented a party, in Claims relating to AFFF or PFAS.

8.8.2. The Special Master shall have the authority to perform all actions consistent with the terms of this Settlement Agreement that the Special Master deems to be reasonably necessary for the efficient and timely administration of the Settlement. Subject to the Court's approval, the Special Master may retain any Person that the Special Master deems to be reasonably necessary to provide assistance in effectuating the Settlement.

8.8.3. Any successor to the initial Special Master shall fulfill the same functions from and after the date of succession and shall be bound by the determinations made by the predecessor to date.

8.8.4. The Special Master shall have no authority to alter in any way the Parties' rights and obligations under the Settlement Agreement absent express written agreement by the Parties.

8.8.5. BASF, BASF's Counsel, and Released Parties are not subject to the authority of the Special Master.

8.8.6. Any decision by the Special Master resolving any dispute that could, directly or indirectly, alter the size or timing of any payment that BASF owes under this Settlement Agreement may be reviewed de novo by the Court upon written request from any aggrieved Party or Person. The Court's judgments shall be final, binding, and nonreviewable, except to the extent that they impact the size or timing of any payment that BASF owes under this Settlement Agreement.

8.8.7. Pursuant to Federal Rule of Civil Procedure 53(f), Class Representatives and BASF agree that any objection to the Special Master's factual findings, legal conclusions (including interpretations of this Settlement Agreement), or rulings on procedural matters that is reviewed by the Court must be decided de novo.

8.8.8. All fees, costs, and expenses incurred in the administration or work by the Special Master, including fees, costs, and expenses of the Special Master, shall be paid solely from the Qualified Settlement Fund.

8.9. **Qualified Settlement Fund Administration**.  All fees, costs, and expenses incurred in the administration of the Qualified Settlement Fund, including fees, costs, and expenses of the Escrow Agent, shall be paid in accordance with Paragraph 6.3.

8.10. **Allocation**.  The Settlement Funds shall be allocated pursuant to the Allocation Procedures described in Exhibit A.

21

9.    **APPROVAL AND NOTICE**

9.1.    **Preliminary Approval**.  Within fourteen (14) calendar days after the Settlement Date, Class Representatives shall submit to the Court a motion seeking (a) certification, for settlement purposes only, of the Settlement Class as defined in Paragraph 5.1; (b) Preliminary Approval of the Settlement; (c) approval of Notice (attached as Exhibit D); (d) approval of the Notice Plan (attached as Exhibit E); (e) approval of the Summary Notice (attached as Exhibit F); (f) appointment of Class Counsel; (g) appointment of the Notice Administrator; (h) appointment of the Claims Administrator; (i) appointment of the Opt Out Administrator; (j) appointment of the Escrow Agent; (k) approval of the Escrow Agreement; (l) establishment of the Qualified Settlement Fund; and (m) appointment of the Special Master.

9.2.    **Notice**.

9.2.1.    The Notice process shall commence no later than fourteen (14) calendar days after the entry of the Order granting Preliminary Approval.  Notice shall be provided by the Notice Administrator to Eligible Claimants by first-class U.S. mail where available and by publication elsewhere to meet the requirements of Federal Rule of Civil Procedure 23, incorporate the elements suggested by the Federal Judicial Center, and describe the aggregate Settlement Funds, the consideration described in Section 6, and the Allocation Procedures described in Exhibit A.  Class Representatives and BASF will agree in writing on the form and content of the Notice and Claims Forms, consistent with Exhibit D and Exhibit B, respectively.

9.2.2.    The Notice of the Settlement shall explain that each Eligible Claimant must specify if it (i) objects to the Settlement, as described in Paragraphs 9.4 through 9.5.3, or (ii) wishes to opt out of the Settlement, as described in Paragraphs 9.6 through 9.7.3. The Notice must explain that any Eligible Claimant that does not opt out will be required to test (or to recently have tested) all its Water Sources for PFAS, as described in Exhibit A, and to submit all PFAS test results to the Claims Administrator, as described in Exhibit A and Paragraph 11.3. The Notice must explain that any Eligible Claimant that fails to respond to the Notice will become a Class Member and have its Claims released as described in Section 12.

9.3.    **CAFA Notice**.  Pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715(b), BASF, or the Notice Administrator on BASF's behalf, shall serve notice of the Settlement via first-class U.S. mail on the appropriate federal and state officials no later than ten (10) calendar days after the filing of this Settlement Agreement with the Court.

9.4.    **Objections to Settlement**.  Any Eligible Claimant that wishes to object to the Settlement or to an award of fees or expenses to Class Counsel must file a written and signed statement designated "Objection" with the Clerk of the Court and provide service on BASF and Class Counsel in accordance with Federal Rule of Civil Procedure 5.

9.5.    Any Objection must be properly filed and served by the deadline imposed by the Court. In seeking Preliminary Approval of this Settlement Agreement, the Class Representatives will

22

ask the Court to set that deadline sixty (60) days after the date Notice is mailed.

9.5.1.   All Objections must certify, under penalty of perjury in accordance with 28 U.S.C. § 1746, that the filer has been legally authorized to object on behalf of the Eligible Claimant and must provide:

9.5.1.1.   the Eligible Claimant's SDWIS ID;

9.5.1.2.   an affidavit or other proof of the Eligible Claimant's standing;

9.5.1.3.   the name, address, telephone and facsimile numbers, and email address (if available) of the filer and the Eligible Claimant;

9.5.1.4.   the name, address, telephone and facsimile numbers, and email address (if available) of any counsel representing the Eligible Claimant;

9.5.1.5.   all objections asserted by the Eligible Claimant and the specific reasons for each objection, including all legal support and evidence the Eligible Claimant wishes to bring to the Court's attention;

9.5.1.6.   an indication as to whether the Eligible Claimant wishes to appear at the Final Fairness Hearing; and

9.5.1.7.   the identity of all witnesses the Eligible Claimant may call to testify.

9.5.2.   Any Eligible Claimant may object either on its own or through any attorney hired at its own expense.  If an Eligible Claimant is represented by counsel, the attorney must file a notice of appearance with the Clerk of Court no later than the date ordered by the Court for the filing of Objections and serve BASF's Counsel and Class Counsel in accordance with Federal Rule of Civil Procedure 5 within the same period.

9.5.3.   Any Eligible Claimant that complies with the provisions of Paragraphs 9.4 through 9.5.3 may, in the Court's discretion, appear at the Final Fairness Hearing to object to the Settlement or to the award of fees and costs to Class Counsel.  Any Eligible Claimant that fails to comply with the provisions of Paragraphs 9.4 through 9.5.3 shall waive and forfeit any and all rights and objections the Eligible Claimant may have asserted, and shall be bound by all the terms of the Settlement Agreement and by all proceedings, orders, and judgments with respect to the Settlement.

9.6.   **Opt Outs**.  Any Eligible Claimant that wishes to opt out of the Settlement must complete a Request for Exclusion, in a form substantially similar to the one attached as Exhibit H. The Request for Exclusion form will be available online and allow for electronic submission to the Notice Administrator, the Special Master, the Opt Out Administrator, the Claims Administrator, BASF's Counsel, and Class Counsel. Submission of paper Request for Exclusion forms will be permitted and must be served on the Opt Out Administrator in accordance with Federal Rule of Civil Procedure 5.

9.7. Any Requests for Exclusion must be properly submitted to the Opt Out Administrator by the deadline imposed by the Court. In seeking Preliminary Approval of this Settlement Agreement, the Class Representatives will ask the Court to set that deadline ninety (90) calendar days after the date the Notice is mailed. Any Eligible Claimant that has elected to opt out may withdraw its Request for Exclusion submitted at any time prior to the Final Fairness Hearing and thereby accept all terms of this Settlement Agreement, including its Dismissal provisions. The submission of a Request for Exclusion shall have the effect of waiving and forfeiting any and all objections that were or could have been asserted. The withdrawal of a Request for Exclusion does not permit a Person to assert new objections nor revive previously asserted objections.

9.7.1. Any Eligible Claimant that submits a timely and valid Opt Out shall not (i) be bound by this Settlement Agreement, or by any orders or judgments entered in the MDL Cases with respect to this Settlement Agreement (but shall continue to be bound by other orders entered in the Litigation, including any protective order); (ii) be entitled to any of the relief or other benefits provided under this Settlement Agreement; (iii) gain any rights by virtue of this Settlement Agreement; or (iv) be entitled to submit an Objection.

9.7.2. Any Eligible Claimant that does not submit a timely and valid Opt Out (or submits and then withdraws its Opt Out) submits to the jurisdiction of the Court and shall waive and forfeit any and all rights and objections the Eligible Claimant may have asserted, and shall be bound by all the terms of the Settlement Agreement and by all proceedings, orders, and judgments with respect to the Settlement.

9.7.3. No "mass" or "class" Opt Out shall be valid, and no Eligible Claimant may submit an Opt Out on behalf of any other Eligible Claimant or Class Member.

9.8. **The Final Fairness Hearing.** On the date and time set by the Court, the Class Representatives and BASF shall participate in the Final Fairness Hearing and will reasonably cooperate with one another to obtain an Order Granting Final Approval, with Class Counsel, on behalf of the Class Representatives, expressly moving for Final Approval.

9.9. **Entry of Order Granting Final Approval**. At the Final Fairness Hearing, the Class Representatives will request that the Court: (a) enter an Order Granting Final Approval in accordance with this Settlement Agreement; (b) conclusively certify the Settlement Class; (c) overrule or otherwise resolve any Objections; (d) make a final determination that notice was adequate; (e) approve the Settlement Agreement as final, fair, good faith, reasonable, adequate, and binding on all Class Members; (f) dismiss this action with prejudice; and (g) permanently enjoin any Class Member from bringing any proceeding against any Released Party in any court. Pursuant to Federal Rule of Civil Procedure 23(h), Class Counsel may apply for a Class fee consisting of a portion of the Settlement Funds and for reimbursement of Class costs and expenses. That application shall be filed not less than twenty (20) calendar days before Objections are due pursuant to Paragraph 9.4. Subject to Class Counsel's application for attorneys' fees and costs, and in accordance with the Order Granting Final Approval, the Special Master, after consulting with the Claims

Administrator, shall distribute attorneys' fees and costs approved by the Court (including expert witness fees, consultants' fees, and litigation expenses; any Court-approved class representative service awards; and the cost of class notice and class administration) from the Qualified Settlement Fund.  Any attorneys' fees and costs paid to Class Counsel from the Settlement Funds shall be paid only to the extent awarded by the Court, subject to holdback provisions, if any, and not before the Court has entered the Order Granting Final Approval and dismissed this action with prejudice, with no appeals pending or possible.

9.10.  **Attorneys' Fees, Costs, and Expenses**.  Class Counsel intend to file a motion for a Class award of attorneys' fees and costs to be paid from the Qualified Settlement Fund in lieu of the Common-Benefit Holdback Assessment. Any Class award must be approved by the Court and shall be paid from the Qualified Settlement Fund by the Escrow Agent before any portion of the Settlement Fund is distributed to Class Members, upon production to the Escrow Agent of a copy of the order, on or after such date as the award may become payable under the Court's order. BASF has no obligation for any such award other than its payment obligations under this Settlement Agreement.  For avoidance of doubt, any award of attorneys' fees or costs shall be paid from the Settlement Funds; no Released Party shall pay for any attorneys' fees, costs, or expenses for Class Counsel separate from or in addition to the Settlement Funds. Class Counsel further recognize the Common-Benefit Holdback Assessment provisions in Case Management Order No. 3 and intend to request that they continue to apply to any future individual or private settlements.

9.11.  **Effect of Failure of Final Approval**.  If the Court declines or fails to enter an Order Granting Final Approval in accordance with the terms of this Settlement Agreement, the parties shall proceed as follows:

9.11.1.  If the Court declines to enter the Order Granting Final Approval as provided for in this Settlement Agreement, the Litigation against any Released Party will resume unless within thirty (30) calendar days the parties mutually agree in writing to (a) seek reconsideration or appellate review of the decision denying entry of the Order Granting Final Approval; (b) attempt to renegotiate the Settlement and seek Court approval of the renegotiated settlement; and/or (c) comply with other guidance or directives the Court has provided.

9.11.2.  If the Litigation against any Released Party resumes or the parties seek reconsideration or appellate review of the decision denying entry of the Order Granting Final Approval and such reconsideration or appellate review is denied, this Settlement Agreement shall thereupon terminate.

9.11.3.  If, for any reason, the Settlement is not approved by the Court or does not become subject to Final Approval, then no class will be deemed certified as a result of this Settlement Agreement, and the Litigation against any Released Party for all purposes will revert to its status as of the Settlement Date.  In such event, no Released Party will be deemed to have consented to certification of any class, and the Released Parties will retain all rights to oppose, appeal, or otherwise challenge class certification and any other issue in the Litigation.  Likewise, if the Settlement is not approved by the Court or does not become subject to Final

25

Approval, then the participation in the Settlement by any Class Representative or Class Member cannot be raised as a defense to their Claims.

9.12. **Effect of Failure of Order Granting Final Approval to Become a Final Judgment**. If the Order Granting Final Approval does not become a Final Judgment because an appeal is taken of the Order Granting Final Approval, the parties shall proceed as follows:

9.12.1. If the Order Granting Final Approval is reversed or vacated by the appellate court, the Litigation against any Released Party will resume within thirty (30) calendar days unless the parties mutually agree in writing to (a) seek further reconsideration or appellate review of the decision reversing or vacating the Order Granting Final Approval; and/or (b) attempt to renegotiate the Settlement and seek Court approval of the renegotiated settlement.

9.12.2. If the Litigation against any Released Party resumes or the parties seek further reconsideration or appellate review of the appellate decision reversing or vacating the Order Granting Final Approval and such further reconsideration or appellate review is denied, this Settlement Agreement shall thereupon terminate.

9.12.3. If, for any reason, the Settlement does not become subject to Final Judgment, then no class will be deemed certified as a result of this Settlement Agreement, and the Litigation against any Released Party for all purposes will revert to its status as of the Settlement Date. In such event, no Released Party will be deemed to have consented to certification of any class, and Released Parties will retain all rights to oppose, appeal, or otherwise challenge class certification and any other issue in the Litigation. Likewise, if the Settlement does not become subject to Final Judgment, then the participation in the Settlement by any Class Representative or Class Member cannot be raised as a defense to their Claims.

9.13. **Termination Refund.** If the Agreement terminates for any reason, the Escrow Agent shall, within fourteen (14) calendar days of receiving written notice of termination from BASF, repay to BASF the amount paid into the Qualified Settlement Fund (including any interest accrued thereon) less Court-approved costs of the notice, administrative and other similar costs actually paid or due and payable from the Qualified Settlement Fund as of the date on which the Escrow Agent receives the notice.

## 10. REQUIRED PARTICIPATION THRESHOLD AND TERMINATION

10.1. **Walk-Away Right**. BASF shall have the option, in its sole discretion, to terminate this Settlement Agreement (the "Walk-Away Right") if any one of the following conditions is satisfied:

10.1.1. **Community Water Systems.** With respect to Community Water Systems, timely and valid Requests for Exclusion from the Settlement Class are received from:

a) More than Threshold A of such Community Water Systems that serve 1,000,001 or more people; or

    b) More than Threshold B of such Community Water Systems that serve 500,001 to 1,000,000 people; or

    c) More than Threshold C of such Community Water Systems that serve 250,001 to 500,000 people; or

    d) More than Threshold D of such Community Water Systems that serve 100,001 to 250,000 people; or

    e) More than Threshold E of such Community Water Systems that serve 10,001 to 100,000 people; or

    f) More than Threshold F of such Community Water Systems that serve 3,301 to 10,000 people; or

    g) More than Threshold G of such Community Water Systems that serve 501 to 3,300 people; or

    h) More than Threshold H of such Community Water Systems that serve 500 or fewer people.

10.1.2. **Non-Transient Non-Community Water Systems.** With respect to Non-Transient Non-Community Water Systems that are part of the Settlement Class under Paragraph 5.1, timely and valid Requests for Exclusion from the Settlement Class are received from:

    a) More than Threshold I of such Non-Transient Non-Community Water Systems that serve 500,001 or more people; or

    b) More than Threshold J of such Non-Transient Non-Community Water Systems that serve 100,001 to 500,000 people; or

    c) More than Threshold K of such Non-Transient Non-Community Water Systems that serve 10,001 to 100,000 people; or

    d) More than Threshold L of such Non-Transient Non-Community Water Systems that serve 3,301 to 10,000 people.

10.2. For purposes of any of the conditions in Paragraph 10.1:

10.2.1. Thresholds will be calculated using as the denominator the number of Public Water Systems in each category listed on Annex 1 to Exhibit L, the separate letter agreement between Class Counsel and BASF to be filed under seal with the Court; and

10.2.2. A Public Water System otherwise within the Settlement Class will be counted towards the applicable threshold specified above if a timely and valid Request for Exclusion from the Settlement Class is received from either (a) the Public Water

System itself or (b) from an Entity that has authority to bring a Claim on behalf of a Class Member Public Water System.

10.3. **Process for Exercising or Waiving the Walk-Away Right.** The Opt Out Administrator, the Notice Administrator, the Claims Administrator, the Special Master, BASF's Counsel and Class Counsel will have access to each Request for Exclusion that an Eligible Claimant timely and properly submits via the Opt Out portal or by paper submission. Within fourteen (14) calendar days after receiving the last such Request for Exclusion, the Special Master shall determine whether all twelve (12) parts of the Required Participation Threshold have been satisfied and shall inform the parties of this determination. If the Special Master determines and informs the parties that all parts of the Required Participation Threshold have been satisfied, and BASF in good faith agrees with that determination, BASF shall, as soon as reasonably possible and in any event no later than twenty-one (21) calendar days after receiving the Special Master's determination, file with the Special Master and the Claims Administrator and serve on all parties in accordance with Paragraph 13.15 written notice that BASF's Walk-Away Right was not triggered. If the Special Master determines and informs the parties that some or all parts of the Required Participation Threshold have not been satisfied, or if BASF in good faith disagrees with a determination by the Special Master that all parts of the Required Participation Threshold have been satisfied, BASF may, in its sole discretion, no later than fourteen (14) calendar days after receiving the Special Master's determination, file with the Special Master, the Opt Out Administrator, and the Claims Administrator and serve on all parties in accordance with Paragraph 13.15 written notice that BASF is either (i) exercising its Walk-Away Right or (ii) waiving its Walk-Away Right.

10.4. **Effect of Exercising the Walk-Away Right.** If BASF files and serves a written notice exercising its Walk-Away Right in accordance with Paragraph 10.3, this Settlement Agreement shall thereupon terminate, and this Settlement Agreement, BASF's obligations under it, and all Releases shall become null and void, without prejudice to the ability of each Party, at its own sole option and discretion, to attempt to negotiate a settlement on different terms. In the event of such a termination, no class will be deemed certified as a result of this Settlement Agreement, and the Litigation against any Released Party for all purposes will revert to its status as of the Settlement Date. In such event, no Released Party will be deemed to have consented to certification of any class, and will retain all rights to oppose, appeal, or otherwise challenge class certification and any other issue in the Litigation. Likewise, the participation in the Settlement by any Class Representative or Class Member cannot be raised as a defense to its Claims.

10.5. **Effect of Waiving the Walk-Away Right.** If, in accordance with Paragraph 10.3 BASF filed and serves a written notice stating that its Walk-Away Right was either waived or not triggered, within five (5) Business Days thereafter, the parties shall submit a joint stipulation to the Court requesting a stay of all proceedings against Released Parties in any action designated as a Tier One or Tier Two bellwether case under Case Management Order Nos. 13, 19, and 27 in the MDL Cases (and their related follow-on Case Management Orders, including the actions identified in Exhibit I). In the event the Court enters an Order designating additional actions brought by Public Water Systems as bellwether cases before the Effective Date or termination of the Settlement, the parties shall submit a joint

stipulation requesting a stay of all proceedings against Released Parties in those additional actions within five (5) Business Days after entry of that Order. The parties shall request that any stay of proceedings remain in place until either (a) Dismissal pursuant to Paragraph 12.5; or (b) the Settlement is terminated pursuant to Paragraphs 9.11, 9.12, or 10.3. Where a stay of proceedings is terminated because the Settlement is terminated pursuant to Paragraphs 9.11, 9.12, or 10.3, the parties shall work cooperatively to submit to the Court within thirty (30) calendar days after the stay being terminated proposed modifications to the bellwether schedule to allow Released Parties to participate in those proceedings without being prejudiced.

10.6. **Fee Award Not Grounds for Termination.** The Court's entry of an order awarding Class Counsel an amount for attorneys' fees or expenses less than the amounts requested by Class Counsel shall not be grounds to void this Settlement Agreement. The only remedy in the event of a fee or expense award less than Class Counsel's request shall be a separate appeal by Class Counsel of the fee or expenses award ordered by the Court.

10.7. **Terms Surviving Termination.** The terms provided in Paragraphs 9.11.3, 9.12.3, 10.4, 10.7, 13.1, 13.3, 13.13, 13.15, 13.16, and 13.20 shall survive any termination of this Settlement Agreement.

## 11.    DISTRIBUTIONS

11.1. **Notice and Administration**. All costs of notice and administration of the Settlement shall be paid in accordance with the provisions of Paragraph 6.3.

11.2. **Attorneys' Fees and Costs**. Any award of attorneys' fees, costs, or expenses, under the Order Granting Final Approval or such other order of the Court, shall be paid from the Qualified Settlement Fund by the Escrow Agent, after production to the Escrow Agent of a copy of the order. BASF shall have no obligation for any such award other than its payment obligations under this Settlement Agreement's express terms.

11.3. **Claims Procedure and Claims Forms**. To make a claim against the Qualified Settlement Fund, a Class Member will be required to submit to the Claims Administrator a completed, certified Claims Form, signed under penalty of perjury in accordance with 28 U.S.C. § 1746, that provides that the Person submitting the Claims Form is authorized to submit a claim on behalf of the Class Member, provides the Class Member's name, SDWIS ID, address, telephone and facsimile numbers, and email address (if available); authorizes BASF to obtain all relevant Water Sources' detailed PFAS test results from the laboratory that performed the analyses; and provides, fully and completely, all other information required by the Claims Form including a statement that it tested each of its Water Sources for PFAS. Class Members will be allowed to submit Claims Forms up to the date specified for such purpose in the Notice. Class Counsel will, in its sole discretion, confirm the validity of each Claims Form and confirm that it provides the required information.

11.4. **Submission and Payment of Claims**. The Escrow Agent shall release Settlement Funds from the Qualified Settlement Fund to Class Counsel for the benefit of Qualifying Class Members and Class Counsel will cause the Claims Administrator to distribute the

Settlement Funds from the Qualified Settlement Fund to Qualifying Class Members, consistent with the payment provisions set forth in Section 6 and Exhibit A.

**12.    RELEASE, COVENANT NOT TO SUE, AND DISMISSAL**

12.1.  **Release**.

12.1.1.    Upon entry of the Final Judgment, and regardless of any post-Settlement Date change to any federal or state law or regulation relating to or involving PFAS, the Releasing Parties shall expressly, intentionally, voluntarily, fully, finally, irrevocably, and forever release, waive, compromise, settle, and discharge the Released Parties from each and every one of the following Claims (collectively, the "Released Claims" or the "Release"): (i) any Claim that may have arisen or may arise at any time in the future out of, relates to, or involves PFAS that has entered or may reasonably be expected to enter Drinking Water or any Releasing Party's Public Water System; including any Claim that (a) was or could have been asserted in the Litigation and that arises or may arise at any time in the future out of, relates to, or involves Drinking Water or any Releasing Party's Public Water System; (b) is for any type of relief with respect to the design, engineering, installation, maintenance, or operation of, or cost associated with, any kind of treatment, filtration, remediation, management, investigation, testing, or monitoring of PFAS in Drinking Water or in any Releasing Party's Public Water System; or (c) has arisen or may arise at any time in the future out of, relates to, or involves any increase in the rates for Drinking Water that any Releasing Party or Public Water System charges its customers; (ii) any Claim that has arisen or may arise at any time in the future out of, relates to, or involves the development, manufacture, formulation, distribution, sale, transportation, storage, loading, mixing, application, or use of PFAS or any product (including AFFF) manufactured with or containing PFAS (to the extent such Claim relates to, arises out of, or involves PFAS); (iii) any Claim that has arisen or may arise at any time in the future out of, relates to, or involves any Releasing Party's transport, disposal, or arrangement for disposal of PFAS-containing waste or PFAS-containing wastewater, or any Releasing Party's use of PFAS-containing water for irrigation or manufacturing; (iv) any Claim that has arisen or may arise at any time in the future out of, relates to, or involves representations about PFAS or any product (including AFFF) manufactured with or containing PFAS (to the extent such Claim relates to, arises out of, or involves PFAS); and (v) any Claim for punitive or exemplary damages that has arisen or may arise at any time in the future out of, relates to, or involves PFAS or any product (including AFFF) manufactured with or containing PFAS (to the extent such Claim relates to, arises out of, or involves PFAS). It is the intention of this Agreement that the definitions of "Release" and "Released Claims" be as broad, expansive, and inclusive as possible.

12.1.2.    Paragraph 12.1.1(i)–(iii) does not apply to the following:

12.1.2.1.    Paragraph 12.1.1(i)–(iii) does not apply to a Class Member's Claim

related to the remediation, testing, monitoring, or treatment of real property to remove or remediate PFAS where (i) the Class Member owns or possesses real property and has legal responsibility to remove contamination from or remediate contamination of such real property; (ii) such real property is separate from and not related in any way to the Class Member's Public Water System (such as an airport or fire training facility); (iii) the Class Member seeks damages or other relief unrelated to Drinking Water or a Class Member's Public Water System or Water Sources; and (iv) if the Class Member seeks remediation, testing, monitoring, or treatment of groundwater under such real property, the Class Member either (a) identifies Non-Class Potable Water that may be adversely affected by the fate and transport of PFAS released into the groundwater under such real property or (b) is subject to a state or federal directive, order, or permit condition requiring groundwater remediation or treatment to the extent that the directive, order, or permit condition is not premised on a need to protect a Class Member's Public Water System or Water Sources. If a Class Member pursues such a Claim against any Released Party, the Class Member's Claim and damages shall be limited to the costs of remediating or removing PFAS from the property or groundwater under the property, in accordance with applicable or relevant state or federal regulatory cleanup standards and in a cost-effective manner.

12.1.2.2.　　Paragraph 12.1.1(i)–(iii) does not apply to a Class Member's Claim related to the discharge, remediation, testing, monitoring, treatment, or processing of stormwater or wastewater to remove or remediate PFAS at its permitted stormwater system or permitted wastewater facility where (i) the Class Member owns or operates a permitted stormwater system or permitted wastewater facility; (ii) such facility is separate from and not related in any way to the Class Member's Public Water System such as a separate stormwater or wastewater system that is not related in any way to a Public Water System; (iii) the Class Member seeks damages or other relief unrelated to alleged harm to its Drinking Water or a Class Member's Public Water System or Water Sources; and (iv) if the Class Member seeks remediation, testing, monitoring, or treatment of groundwater impacted by a permitted stormwater system or permitted wastewater facility, the Class Member either (a) identifies Non-Class Potable Water that may be adversely affected by the fate and transport of PFAS released into the groundwater from the separate stormwater system or wastewater facility, or (b) is subject to a state or federal directive, order, or permit condition requiring groundwater remediation or treatment to the extent that the directive, order, or permit condition is not premised on a need to protect a Class Member's Public Water System or Water Sources. If a Class Member pursues such a Claim against any Released Party related to stormwater or wastewater that will not be used for Drinking Water, the Class Member's Claim and damages shall be limited to the costs of remediating or removing PFAS from the stormwater or wastewater in a

cost-effective manner. If a Class Member pursues such a Claim against any Released Party related to groundwater that will not be used for Drinking Water and that has been impacted by stormwater or wastewater, the Class Member's Claim and damages related to groundwater shall be limited to the costs of remediating or removing PFAS from the groundwater, in accordance with any applicable state or federal regulatory groundwater cleanup standards in a cost-effective manner.

12.1.3. Notwithstanding Paragraphs 12.1.2 through 12.1.2.2, if a Releasing Party pursues a Claim, including any Claim described in Paragraphs 12.1.2 through 12.1.2.2, against any Released Party arising out of, relating to, or involving PFAS or any product (including AFFF) manufactured with or containing PFAS (to the extent such Claim relates to, arises out of, or involves PFAS), the Releasing Party shall affirm in a complaint or similar filing that (i) this Settlement Agreement has fully and finally resolved all its Claims against Released Parties arising out of, related to, or involving PFAS that has entered or is associated with Drinking Water or any Releasing Party's Public Water System and (ii) its Claims against Released Parties do not arise out of, relate to, or involve (a) PFAS that has entered or is associated with Drinking Water or any Releasing Party's Public Water System (including Claims seeking damages, abatement, or other relief to prevent or pay the cost to prevent PFAS from entering any Public Water System from a Water Source or any other source) or (b) treatment, filtration, or remediation to address PFAS in or to prevent PFAS from entering Drinking Water or a Releasing Party's Public Water System.

12.1.4. Notwithstanding Paragraphs 12.1.2 through 12.1.2.2, and consistent with the affirmation described in Paragraph 12.1.3, each Releasing Party that pursues a Claim against any Released Party arising out of, related to, or involving PFAS or any product (including AFFF) manufactured with or containing PFAS (including any Claim described in Paragraphs 12.1.2 through 12.1.2.2):

12.1.4.1. shall specifically and expressly affirm in its complaint or similar filing and in any relevant expert report that it is not seeking damages, treatment, filtration, or remediation that in any way arises out of, relates to, or involves PFAS that has entered or is associated with Drinking Water or any Releasing Party's Public Water System (including Claims seeking abatement or other relief to prevent or pay the cost to prevent PFAS from entering any Public Water System from a Water Source or any other source or seeking treatment, filtration, or remediation to address PFAS in or prevent PFAS from entering Drinking Water or a Releasing Party's Public Water System);

12.1.4.2. shall make no argument to any finder of fact that the Releasing Party is entitled to any damages, remedy, or other relief described in Paragraph 12.1.4.1; and

12.1.4.3. shall not seek punitive or exemplary damages against any Released

Party arising out of, related to, or involving PFAS or any product (including AFFF) manufactured with or containing PFAS, as Claims for such damages are released by this Settlement.

12.1.5.  The Parties expressly incorporate into Paragraph 12.1 the guidance set forth in the Parties' Joint Interpretive Guidance documents, attached as Exhibits M, N, O and P.

12.2.  **Exclusive Consideration for Released Claims.**  The distributions described in Section 6 and Exhibit A are the exclusive consideration provided to the Releasing Parties for the Released Claims against the Released Parties.  Each Class Member shall look solely to the Settlement Funds (less reasonable attorneys' fees and costs) for satisfaction of all such Released Claims herein, though each Class Member also may seek payment from other defendants in the Litigation.  Accordingly, the Released Parties shall not be subject to liability or expense of any kind to the Releasing Parties with respect to any Released Claims, other than as set forth in this Settlement Agreement.

12.3.  **Covenant Not to Sue.**  The Releasing Parties shall not at any time hereafter whether directly or indirectly or individually or as a member or representative of a class commence, assign, or prosecute any Claim, demand, or cause of action at law or otherwise for damages, loss, or injury arising out of, related to, or involving any act, error, omission, event, or thing within the scope of the Release set forth in Paragraph 12.1 against any or all Released Parties as to any Released Claims (the "Covenant Not to Sue").  The Releasing Parties consent to the jurisdiction of this Court or, any other court having jurisdiction to enter an injunction barring the Releasing Parties from commencing or prosecuting any action or other proceeding, or seeking other benefits, based upon the Released Claims.

12.4.  **Protection of Ratepayers**.  Upon entry of the Final Judgment, each Releasing Party represents and warrants that (i) this Settlement has compensated it for PFAS allegedly attributable to the Released Party; and (ii) future additions, modifications, or improvements to its Public Water System due to PFAS will be the sole responsibility of the Releasing Party and not the Released Parties.  Upon a Released Party's written request, a Releasing Party shall provide any Released Party a letter substantially in the form of Exhibit J.  No Releasing Party shall assert that any future rate increase request was attributable to a Released Party's development, manufacture, formulation, distribution, sale, transportation, storage, loading, mixing, application, or use of PFAS or any product (including AFFF) manufactured with or containing PFAS, but may assert generally the need for PFAS treatment.  The Releasing Parties reserve the right to change their rates for any reason, so long as they do not attribute the change to any Released Party.

12.5.  **Dismissal**. Subject to Paragraph 12.5.1, in accordance with the Release and Covenant Not to Sue, all pending Litigation brought by or on behalf of a Releasing Party against any Released Party involving any Released Claim shall be dismissed with prejudice, with each party bearing its own costs (the "Dismissal").  The Parties agree that the Releasing Party shall execute a stipulation of Dismissal with prejudice, in a form substantially similar to the one provided for in Exhibit K, within fourteen (14) calendar days after the Effective Date.

33

12.5.1.    To the extent allowed by this Paragraph 12.5.1, Dismissal of pending Litigation that includes a Claim or part of a Claim that would not be released by this Section 12 shall be limited to any Claim or part of a Claim that is released by this Section 12. Any Releasing Party that asserts that it has at least one Claim (or part of a Claim) against a Released Party in the Litigation that would not be released by this Section 12 must notify the Special Master, Class Counsel, and BASF's Counsel before the date of the Final Fairness Hearing if it intends to seek such a limited Dismissal. In accord with any written agreement among such Releasing Party, Class Counsel, and BASF's Counsel regarding the scope of limited Dismissal, such Releasing Party shall execute a stipulation of limited Dismissal with prejudice, in the form provided for in Exhibit K, dismissing with prejudice all Claims and parts of Claims released by this Section 12, with each party bearing its own costs, within fourteen (14) calendar days after the Effective Date. Absent written agreement among such Releasing Party, Class Counsel, and BASF's Counsel about the scope of any limited Dismissal, such Releasing Party must seek leave of court to file a limited Dismissal no later than fourteen (14) calendar days after the date of Final Approval.  Such Releasing Party shall execute a stipulation of Dismissal with prejudice or limited Dismissal with prejudice, as consistent with the Court's ruling on such Releasing Party's request for leave, in the form provided for in Exhibit K, dismissing with prejudice all Claims and parts of Claims released by this Section 12, with each party bearing its own costs,  within the later of fourteen (14) calendar days after the Effective Date or seven (7) calendar days after the court's ruling on the Releasing Party's motion for leave to file a limited dismissal. If a Releasing Party does not timely seek and obtain a written agreement or leave of court permitting a limited Dismissal, Litigation brought by or on behalf of that Releasing Party against any Released Party shall be dismissed in its entirety with prejudice pursuant to Paragraph 12.5.

12.5.2.    If a Releasing Party fails to timely execute a stipulation of Dismissal required by Paragraph 12.5 or Paragraph 12.5.1, BASF may move for Dismissal or limited Dismissal as appropriate.

12.6.    **Protection Against Claims-Over.**

12.6.1.    It is the intent of the Parties that:

12.6.1.1.    The payments BASF makes under this Agreement shall be the sole payments the Released Parties shall make to address alleged PFAS contamination at Class Members' Public Water Systems;

12.6.1.2.    A Claim by a Releasing Party against any non-Party arising out of a Released Claim should not result in any additional payment by any Released Party; and

12.6.1.3.    The Agreement meets the requirements of the Uniform Contribution Among Tortfeasors Act and any similar state law or doctrine that reduces or discharges a released party's liability to any other parties.

12.6.2. The Order Granting Final Approval will specify that the Settlement is a good-faith settlement that bars any Claim by any non-Released Party against any Released Party for contribution, for indemnification, or otherwise seeking to recover any amounts paid by or awarded against that non-Released Party and paid or awarded to any Releasing Party by way of settlement, judgment, or otherwise on any Claim that would be a Released Claim were such non-Released Party a Released Party (a "Claim-Over"), to the extent that a good-faith settlement (or release thereunder) has such an effect under applicable law.

12.6.3. To the extent that on or after the Effective Date any Releasing Party settles any Claim it has against any non-Released Party relating to, or involving the Released Claims and provides a release to such non-Released Party, the Releasing Party shall include in that settlement a release from such non-Released Party in favor of the Released Parties in a form equivalent to the Release contained in this Settlement Agreement.

12.6.4. If a Released Claim asserted by a Releasing Party gives rise to a Claim-Over against a Released Party and a court determines that the Claim-Over can be maintained notwithstanding the order referenced in Paragraph 12.6.2, the Releasing Party shall reduce the amount of any judgment it obtains against the non-Releasing Party who is asserting the Claim-Over by whatever amount is necessary, or take other action as is sufficient, to fully extinguish the Claim-Over under applicable law. Nothing herein prevents a Releasing Party from pursuing litigation against a non-Released Party and collecting the full amount of any judgment, except to the extent it is necessary to protect the Released Party to fully extinguish a Claim-Over under applicable law.

12.6.5. The Claim-Over protections provided in Paragraph 12.6 shall not apply to Claims brought by a State or the federal government.

12.7. **Liens**. Each Class Member agrees to be responsible for any lien, interest, action, or Claim asserted by any third party, in a derivative manner, for or against that Class Member's share of the Settlement Funds, including any derivative action or Claim asserted by any financial institution, lender, insurer, agent, representative, successor, predecessor, assign, attorney, bankruptcy trustee, and any other Person who may claim through them in a derivative manner.

12.8. **Exclusive Remedy**. The relief provided for in this Settlement Agreement shall be the sole and exclusive remedy for all Releasing Parties with respect to any Released Claims, and the Released Parties shall not be subject to liability or expense of any kind with respect to any Released Claims other than as set forth in this Settlement Agreement.

12.9. **Waiver of Statutory Rights**. To the extent the provisions apply, the Releasing Parties expressly, knowingly, and voluntarily waive the provisions of Section 1542 of the California Civil Code, which provides:

> **A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.**

To the extent the provisions apply, the Releasing Parties likewise expressly, knowingly, and voluntarily waive the provisions of Section 28-1-1602 of the Montana Code Annotated, which provides:

> **A general release does not extend to claims that the creditor does not know or suspect to exist in the creditor's favor at the time of executing the release, which, if known by the creditor, must have materially affected the creditor's settlement with the debtor.**

To the extent the provisions apply, the Releasing Parties likewise expressly, knowingly, and voluntarily waive the provisions of Section 20-7-11 of the South Dakota Codified Laws, which provides:

> **A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.**

To the extent the laws apply, the Releasing Parties expressly waive and relinquish all rights and benefits that they may have under, or that may be conferred upon them by, Section 1542 of the California Civil Code, Section 28-1-1602 of the Montana Code Annotated, Section 9-13-02 of the North Dakota Century Code, Section 20-7-11 of the South Dakota Codified Laws, and all similar laws of other States, to the fullest extent that they may lawfully waive such rights or benefits pertaining to the Released Claims. In connection with such waiver and relinquishment, the Releasing Parties acknowledge that they are aware that they or their attorneys may hereafter discover Claims or facts in addition to or different from those that they now know or believe to exist with respect to the Released Claims, but that it is their intention to accept and assume that risk and fully, finally, and forever release, waive, compromise, settle, and discharge all the Released Claims against Released Parties. The Release thus shall remain in effect notwithstanding the discovery or existence of any additional or different Claims or facts.

12.10. This Agreement shall not release any Claims owned by a State or the federal government where brought, respectively, by the State or the federal government. For the avoidance of doubt, consistent with Paragraph 5.1(A) through 5.1(B) of this Settlement Agreement, this Paragraph 12.10 shall not apply to (1) any Claim brought by or on behalf of a Public Water System that is owned by a State government but (a) is not listed in SDWIS as having its sole "Owner Type" a "State government", (b) has independent authority to sue and be sued, or (c) both, or to (2) any Claim brought by or on behalf of a Public Water System that is owned by the federal government but (a) is not listed in SDWIS as having its sole "Owner

36

Type" the "Federal government", (b) has independent authority to sue and be sued, or (c) both.

## 13.     MISCELLANEOUS PROVISIONS

13.1.  **Continuing Jurisdiction**.  The U.S. District Court for the District of South Carolina shall have and retain jurisdiction over the interpretation and implementation of this Settlement Agreement, as well as any and all matters arising out of, or related to, or involving the interpretation or implementation of the Settlement Agreement.

13.2.  **Cooperation**.  The Parties shall cooperate fully with each other and shall use all reasonable efforts to obtain Court approval of the Settlement and all its terms.  BASF shall provide all information reasonably necessary to assist the Class Representatives in the filing of any brief supporting approval of the Settlement.  Class Representatives, Class Counsel, BASF, and BASF's Counsel agree to recommend approval of and to support this Settlement Agreement to the Court and to use all reasonable efforts to give force and effect to its terms and conditions.  Class Representatives, Class Counsel, BASF, BASF's agents, and BASF's Counsel shall not in any way encourage any objections to the Settlement (or any of its terms or provisions) or encourage any Eligible Claimant to elect to opt out.  Class Representatives and Class Counsel shall cooperate fully with BASF, BASF's agents, and BASF's Counsel by providing BASF with (and consenting to the Special Master, the Opt Out Administrator, and Claims Administrator providing BASF with) any non-privileged, non-work-product-protected documents, data, communications, or information that BASF deems necessary to any insurance recovery effort.

13.3.  **No Admission of Wrongdoing or Liability**.  BASF does not admit or concede any liability or wrongdoing, acknowledge any validity to the Claims asserted in the Litigation, acknowledge any scientific, medical, factual, or other basis asserted in support of any of those Claims, acknowledge that certification of a litigation class is appropriate as to any Claim, or acknowledge any weakness in the defenses asserted in the Litigation, and nothing in this Settlement Agreement, the Preliminary Approval, or the Final Approval shall be interpreted to suggest anything to contrary.  Nothing in this Settlement Agreement, any negotiations, statements, communications, proceedings, filings, or orders relating thereto, or the fact that the Parties entered the Settlement Agreement and settled the Released Claims against Released Parties shall be construed, deemed, or offered as an admission or concession by any of the Parties or as evidentiary, impeachment, or other material available for use or subject to discovery in any suit, action, or proceeding (including the Litigation), except (i) as required or permitted to comply with or enforce the terms of this Settlement Agreement, the Preliminary Approval, or the Final Approval, or (ii) in connection with a defense based on *res judicata,* claim preclusion, collateral estoppel, issue preclusion, release, or other similar theory asserted by any of the Released Parties.  Nothing in this Agreement is intended to limit any right, Claim, or defense that any Released Party may have with respect to any litigation or Claim brought by a non-Releasing Party.

13.4.  **Amendment of Settlement Agreement**.  No waiver, modification, or amendment of the terms of this Settlement Agreement, made before or after Final Approval, shall be valid or binding unless in writing, signed by Class Counsel and by duly authorized signatories of

BASF, and then only to the extent set forth in such written waiver, modification, or amendment, and subject to any required Court approval.

13.5.  **Construction of Settlement Agreement**.  The Parties acknowledge as part of the execution hereof that this Settlement Agreement was reviewed and negotiated by their respective counsel and agree that the language of this Settlement Agreement shall not be presumptively construed against any of the Parties.  This Settlement Agreement shall be construed as having been drafted by all the Parties to it, so that any rule of construction by which ambiguities are interpreted against the drafter shall have no force and effect.

13.6.  **Arm's-Length Transaction**.  The Parties each acknowledge that the negotiations leading to this Settlement Agreement were conducted regularly and at arm's length; this Settlement Agreement is made and executed by and of each executing Party's own free will; each such Party knows all the relevant facts and its rights in connection therewith; and such Party has not been improperly influenced or induced to make this settlement as a result of any act or action on the part of any other Party or employee, agent, attorney, or representative of any other Party.

13.7.  **Third-Party Beneficiaries**.  This Settlement Agreement does not create any third-party beneficiaries, except Class Members and the Released Parties other than BASF, which are intended third-party beneficiaries.

13.8.  **Entire Agreement**.  No representations, warranties, or inducements have been made to any of the Parties, other than those representations, warranties, and covenants contained in this Settlement Agreement, which collectively constitute the entire agreement between the Parties with regard to the subject matter contained herein, and supersede and cancel all prior and contemporaneous agreements, negotiations, commitments, and understandings between the Parties with respect to the specific subject matter hereof.

13.9.  **Binding Effect**.  This Settlement Agreement shall be binding upon and inure to the benefit of the Parties, the Released Parties, and their respective heirs, successors, and assigns. Consistent with Paragraph 4.3, the individual signing this Settlement Agreement on behalf of BASF represents and warrants that he or she has the power and authority to enter into this Settlement Agreement on behalf of BASF, on whose behalf he or she has executed this Settlement Agreement, as well as the power and authority to bind BASF to this Settlement Agreement.  Likewise, consistent with Paragraph 4.2, Interim Class Counsel executing this Settlement Agreement represent and warrant that they have the power and authority to enter into this Settlement Agreement on behalf of Class Representatives and Class Members, as well as the power and authority to bind Class Representatives and Class Members to this Settlement Agreement.

13.10.  **Waiver**.  Any failure by any Party to insist upon the strict performance by any of the other Parties of any of the provisions of this Settlement Agreement shall not be deemed a waiver of any of the provisions of this Settlement Agreement and such Party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Settlement Agreement.

38

13.11. **Specific Performance**.  The Parties agree that money damages would not be a sufficient remedy for any breach of this Settlement Agreement by any Party and each non-breaching Party shall be entitled to specific performance and injunctive or other equitable relief as a remedy of any such breach in addition to any other remedy available at law or in equity, without the necessity of demonstrating the inadequacy of money damages.

13.12. **Force Majeure**.  The failure of any Party to perform any of its obligations hereunder shall not subject any Party to any liability or remedy for damages, or otherwise, where such failure is occasioned in whole or in part by Acts of God, fires, accidents, pandemics, other natural disasters, interruptions or delays in communications or transportation, labor disputes or shortages, shortages of material or supplies, governmental laws, rules or regulations of governmental bodies or tribunals, acts or failures to act of any third parties, or any other similar or different circumstances or causes beyond the reasonable control of such Party.

13.13. **Confidentiality**.  The parties shall keep confidential the content of the negotiations, points of discussion, documents, communications, and supporting data utilized or prepared in connection with the negotiations and settlement discussions taking place in the MDL Cases, except as otherwise required by law.  Nothing in this Settlement Agreement shall prevent BASF from disclosing such information to its insurers if demanded by those insurers in the context of their coverage investigation.  The parties may, at their discretion, issue publicity, press releases, or other public statements regarding this Settlement, whether unilaterally or as jointly agreed to in writing by all parties.  Any jointly agreed or other statement shall not limit BASF's ability to provide information about the Settlement to its employees, accountants, attorneys, insurers, shareholders, or other stakeholders or in accordance with legal requirements or to limit Class Counsel's ability to provide Notice or information about the Settlement to Eligible Claimants or in accordance with legal requirements.

13.14. **Exhibits**.  Any Exhibits hereto are incorporated herein by reference as if set forth herein verbatim, and the terms of any Exhibits, including the Parties' Joint Interpretive Guidance documents attached hereto as Exhibits M, N, O, and P, are expressly made a part of this Settlement Agreement.

13.15. **Notices to Parties**.  Any notice, request, instruction, or other document to be delivered pursuant to this Settlement Agreement shall be sent to the appropriate Party by (i) electronic mail; and (ii) overnight courier, delivery confirmation requested:

**If to BASF**:

Matthew A. Holian
DLA Piper LLP (US)
33 Arch Street, 26th Floor
Boston, MA 02110
matt.holian@dlapiper.com

39

John R. Wellschlager
DLA Piper LLP (US)
650 South Exeter Street, Suite 1100
Baltimore, MD 21202
john.wellschlager@dlapiper.com

**If to the Class Representatives, Class Counsel, or Class Members**:

Michael A. London
Douglas & London, P.C.
59 Maiden Lane, 6th Floor
New York, New York 10038
mlondon@douglasandlondon.com

Paul J. Napoli
Napoli Shkolnik
1302 Ponce De Leon Avenue
San Juan, Puerto Rico 00908
PNapoli@NSPRLaw.com

Scott Summy
Baron & Budd
3102 Oak Lawn Avenue, Suite 1100
Dallas, Texas 75219
ssummy@baronbudd.com

Joseph F. Rice
Motley Rice LLC
28 Bridgeside Boulevard
Mt. Pleasant, South Carolina 29464
jrice@motleyrice.com

13.16.  **Governing Law**.  The provisions of this Settlement Agreement and the Exhibits and all actions arising out of, related to, or involving them shall be interpreted in accordance with, and governed by, the laws of the State of South Carolina, without regard to any otherwise applicable principles of conflicts of law or choice-of-law rules (whether of the State of Delaware or any other jurisdiction) that would result in the application of the substantive or procedural rules or law of any other jurisdiction.

13.17.  **Counterparts**.  This Settlement Agreement may be executed in any number of counterparts, each of which shall be an original and all of which shall together constitute one and the same instrument.  It shall not be necessary for any counterpart to bear the signature of all parties hereto.  This Settlement Agreement and any amendments hereto, to the extent signed and delivered by means of a facsimile machine or electronic scan (including in the form of an Adobe Acrobat PDF file format), shall be treated in all manner and respects as an original agreement and shall be considered to have the same binding legal force and effect as if it were the original signed version thereof delivered in person.

13.18. **Captions**.  The captions, titles, headings, or subheadings of the sections and paragraphs of this Settlement Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Settlement Agreement.

13.19. **Electronic Signatures**.  Any executing Party may execute this Settlement Agreement by having its respective duly authorized signatory sign their name on the designated signature block below and transmitting that signature page electronically to counsel for all parties. Any signature made and transmitted electronically for the purpose of executing this Settlement Agreement shall be deemed an original signature for purposes of this Settlement Agreement and shall be binding upon the Party transmitting their signature electronically.

13.20. **No Liability.**  No Person shall have any Claim against the Class Representatives, Class Members, Interim Class Counsel, Class Counsel, BASF, BASF's Counsel, Released Parties, Notice Administrator, Opt Out Administrator, Claims Administrator, Escrow Agent, or Special Master based on actions that Interim Class Counsel, Class Counsel, BASF's Counsel, Notice Administrator, Opt Out Administrator, Claims Administrator, Escrow Agent, or Special Master were required or permitted to take under this Agreement.

Agreed to this 20th day of May, 2024.

| INTERIM CLASS COUNSEL: | BASF: |
|---|---|
| Michael A. London<br>Douglas & London, P.C.<br>59 Maiden Lane, 6th Floor<br>New York, NY 10038<br>mlondon@douglasandlondon.com | Karen Killeen<br>Senior Vice President, General Counsel and<br>Chief Compliance Officer North America<br>BASF Corporation<br>100 Park Avenue<br>Florham Park, NJ 07932 |
| Scott Summy<br>Baron & Budd, P.C.<br>3102 Oak Lawn Avenue, Suite 1100<br>Dallas, TX 75219<br>ssummy@baronbudd.com | |
| Paul J. Napoli<br>Napoli Shkolnik<br>1302 Avenida Ponce de Leon<br>San Juan, Puerto Rico 00907<br>PNapoli@NapoliLaw.com | |
| Joseph F. Rice<br>Motley Rice<br>28 Bridgeside Boulevard<br>Mt. Pleasant, SC 29464<br>jrice@motleyrice.com | |

42

Agreed to this 20th day of May, 2024.

| INTERIM CLASS COUNSEL: | BASF: |
|---|---|
| | *Karen Killeen* |
| Michael A. London | Karen Killeen |
| Douglas & London, P.C. | Senior Vice President, General Counsel and |
| 59 Maiden Lane, 6th Floor | Chief Compliance Officer North America |
| New York, NY 10038 | BASF Corporation |
| mlondon@douglasandlondon.com | 100 Park Avenue |
| | Florham Park, NJ 07932 |
| Scott Summy | |
| Baron & Budd, P.C. | |
| 3102 Oak Lawn Avenue, Suite 1100 | |
| Dallas, TX 75219 | |
| ssummy@baronbudd.com | |
| Paul J. Napoli | |
| Napoli Shkolnik | |
| 1302 Avenida Ponce de Leon | |
| San Juan, Puerto Rico 00907 | |
| PNapoli@NapoliLaw.com | |
| Joseph F. Rice | |
| Motley Rice | |
| 28 Bridgeside Boulevard | |
| Mt. Pleasant, SC 29464 | |
| jrice@motleyrice.com | |

# EXHIBIT A

**EXHIBIT A**
**Allocation Procedures**

**Allocation Procedures Overview**

This Document describes the Allocation Procedures referred to in Section 6 of the Settlement Agreement. The Settlement Amount will be allocated between and among Qualifying Class Members as set forth in the Settlement Agreement and these Allocation Procedures.

The Court will appoint a Special Master and Claims Administrator pursuant to Rule 53 of the Federal Rules of Civil Procedure to oversee the allocation of the Settlement Funds. They will adhere to their duties set forth herein and in the Settlement Agreement. The Special Master will generally oversee the Claims Administrator and make any final decision(s) related to any appeals by Qualifying Class Members or BASF and any ultimate decision(s) presented by the Claims Administrator. The Claims Administrator will perform the actual modeling, allocation, and payment functions. The Claims Administrator will seek assistance from the Special Master when needed. The Claims Administrator may seek the assistance of Interim Class Counsel's consultants who provided guidance in designing the Allocation Procedures.

The Claims Administrator shall not allow for duplicate recoveries for PFAS in or entering Class Members' Public Water Systems.

A Class Member will not be allocated or receive its share of the Settlement Funds if it does not submit a timely and complete Claims Form.

Claims Forms will be available online and can be submitted to the Claims Administrator electronically or on paper. Putative Class Members can begin providing information required by the Claims Forms once an Order Granting Preliminary Approval has been issued, then finalize submission following the Effective Date. The Claims Forms will vary depending on the specific fund(s) from which compensation is sought.

Any Qualifying Class Member who has submitted information through the Claims Administrator's website pursuant to previous Public Water System ("PWS") settlements will not need to re-submit that same information. Qualifying Class Members will have the opportunity to update previously provided information to bring their submission(s) current and/or reflect new information.

**DEFINITIONS**

As used in the Settlement Agreement and this Exhibit, the following terms have the defined meanings set forth below.  Unless the context requires otherwise, (a) words expressed in the plural form include the singular, and vice versa; (b) words expressed in the masculine form include the feminine and gender neutral, and vice versa; (c) the word "will" has the same meaning as the word "shall," and vice versa; (d) the word "or" is not exclusive; (e) the word "extent" in the phrase "to the extent" means the degree to which a subject or other thing extends, and such phrase does not simply mean "if"; (f) references to any law include all rules, regulations, and sub-regulatory guidance promulgated thereunder; (g) the terms "include," "includes," and "including" are deemed to be followed by "without limitation"; and (h) references to dollars or "$" are to United States dollars.

All capitalized terms herein shall have the same meanings set forth in the Settlement Agreement or in the additional definitions set forth below.

"Adjusted Base Score" has the meaning set forth in Paragraph II(6)(f) of these Allocation Procedures.

"Adjusted Flow Rate" has the meaning set forth in Paragraph II(6)(d) of these Allocation Procedures.

"Base Score" has the meaning set forth in Paragraph II(6)(e) of these Allocation Procedures.

"Baseline Testing" has the meaning set forth in Paragraph II(2) of these Allocation Procedures.

"Capital Costs Component" has the meaning set forth in Paragraph II(6)(e)(ii) of these Allocation Procedures.

"Litigation Bump" has the meaning set forth in Paragraph II(6)(f)(iii) of these Allocation Procedures.

"Operation and Maintenance Costs Component" has the meaning set forth in Paragraph II(6)(e)(iii) of these Allocation Procedures.

"PFAS Score" has the meaning set forth in Paragraph II(6)(c) of these Allocation Procedures.

"PFOA" means Chemical Abstracts Service registry number 45285–51–6 or 335–67–1, chemical formula C8F15CO2, perfluorooctanoate, along with its conjugate acid and any salts, isomers, or combinations thereof.

"PFOS" means Chemical Abstracts Service registry number 45298–90–6 or 1763–23–1, chemical formula C8F17SO3, perfluorooctanesulfonate, along with its conjugate acid and any salts, isomers, or combinations thereof.

"Proposed Federal PFAS MCLs" means the maximum level of a specific PFAS analyte (or a mixture containing one or more PFAS analytes) in Drinking Water that can be delivered to any user of a Public Water System without violating the rule proposed in 88 Fed. Reg. 18,638, 18,748 (Mar. 29, 2023) (proposing 40 C.F.R. § 141.61(c)(34)–(36) & n.1).  If the federal PFAS MCLs are finalized before the Court issues Final Approval, the final federal PFAS MCLs will be utilized instead of the Proposed Federal PFAS MCL; otherwise, the Proposed Federal PFAS MCLs will be used.

"Public Water Provider Bellwether Bump" has the meaning set forth in Paragraph II(6)(f)(iv) of these Allocation Procedures.

"Regulatory Bump" has the meaning set forth in Paragraph II(6)(f)(ii) of these Allocation Procedures.

"Settlement Award" has the meaning set forth in Paragraph II(6)(g) of these Allocation Procedures.

"State MCL" means the Maximum Contaminant Level of a specific PFAS analyte (or a mixture containing one or more PFAS analytes) in Drinking Water that can be delivered to any user of a Public Water  System without violating the law of the state where that Public Water System is located as of the Settlement Date.

## I.  Verification of Qualifying Class Members

1.  **The Claims Administrator will verify that each entity that submitted a Claims Form is a Qualifying Class Member.**
    a.  A Qualifying Class Member is an Active Public Water System in the United States that has one or more Impacted Water Sources as of May 15, 2024.

2.  **Exclusions from the Settlement Class:**

a. Non-Transient Non-Community Water Systems serving 3,300 or fewer people,

b. Transient Non-Community Water Systems of any size,

c. Any Public Water System that is owned by a State government and lacks independent authority to sue and be sued,

d. Any Public Water System that is owned by the federal government and lacks independent authority to sue and be sued,

e. Any privately owned well that provides water only to its owner's (or its owner's tenant's) individual household and any other system for the provision of water for human consumption that is not a Public Water System.

3. **Validation of Data**

a. The Claims Administrator will review the information provided on a Qualifying Class Member's Claims Form(s) to ensure it is complete. Information about each Impacted Water Source listed by a Class Member shall be submitted with verified supporting documentation as specified in the Claims Form(s).

b. The Claims Administrator will examine each Impacted Water Source's test results to confirm that all sample results are Qualifying Test Results. This examination will verify membership in the Class and will also be used for scoring purposes as outlined below.

   i. A Qualifying Test Result means the result of a test conducted by or at the direction of a Class Member or of a federal, state, or local regulatory authority, or any test result reported or provided to the Class Member by a certified laboratory or other Person, that used any state- or federal agency-approved or validated analytical method to analyze Drinking Water or water that is to be drawn or collected into a Class Member's Public Water System.

   ii. Qualifying Class Members may submit Qualifying Test Results from untreated (raw) or treated (finished) water samples. However, all samples must be drawn from a Water Source that is or was utilized by the Qualifying Class Member to provide Drinking Water.

c. The Claims Administrator will confirm each Class Member's population served or number of service connections with information provided by the Class Member to the U.S. EPA or a state agency. Any conflicts in population served or service connections data will be resolved in favor of the data most-recently reported to the U.S. EPA or state agency.

d. For each Impacted Water Source, the Claims Administrator will verify the maximum flow rate of a groundwater well or the flow rate of the water that enters the treatment plant of a surface water system. The Claims Administrator will also verify the three (3) highest annual average flow rates of the groundwater well or surface water system over a ten-year period (2014-2023). Documentation related to the flow rates of each Impacted Water Source must be verified by each Qualifying Class Member as part of the Claims Form.

e. Any Qualifying Class Member that has previously submitted information to the Claims

Administrator in connection with another PWS Settlement will not need to submit that same information again. Where such information has been provided and is available, it will be applied to the BASF PWS Settlement in order to allow the Claims Administrator to process verification as efficiently and consistently as possible. Qualifying Class Members will have the opportunity to update information previously provided as needed.

f.  The Claims Administrator will notify Qualifying Class Members with incomplete Claims Forms of the requirements to cure deficiencies.

## II. Allocation Procedures

1. **Verification:**

    The Claims Administrator will verify whether each Qualifying Class Member is a Qualifying Class Member by determining whether the Qualifying Class Member has one or more Impacted Water Sources as of May 15, 2024.

2. **Baseline Testing**

    a.  Each Qualifying Class Member must test each of its Water Sources for PFAS, request from the laboratory that performs the analyses all analytical results, including the actual numeric values, and submit detailed PFAS test results to the Claims Administrator on a Claims Form by dates specified below.  This process is referred to as Baseline Testing.

    b.  Any Qualifying Class Member that has an Impacted Water Source based on a test conducted on or before the Settlement Date does not need to test that Water Source again for purposes of Baseline Testing.

    c.  If a Water Source was tested only prior to January 1, 2019, and its test results do not show a Measurable Concentration of PFAS, that Water Source must be retested to meet Baseline Testing requirements.  If a Water Source was tested on January 1, 2019, or later, and its test results do not show a Measurable Concentration of PFAS, no further testing of that Water Source is required.

    d.  Baseline Testing requires the following:

        i.   PFAS tests must be conducted at a minimum for the 29 PFAS analytes for which UCMR-5 requires testing, and

        ii.  the PFAS test results must report any Measurable Concentration of PFAS, regardless of whether the level of PFAS detected in the water is above or below UCMR-5's relevant minimum reporting level.

    e.  Failure to test and submit Qualifying Test Results for Water Sources will disqualify Water Sources from consideration for present and future payments.

3. **Non-Detect Water Sources**

    a.  The Claims Administrator will maintain the reported Baseline Testing results that have no Measurable Concentration of PFAS submitted by Qualifying Class Members.

    b.  Water Sources reporting no Qualifying Test Result showing a Measurable Concentration

of PFAS may be eligible for funding from the Supplemental Fund.

4. **Supplemental Fund**

   a. The Escrow Agent will transfer into the Supplemental Fund seven percent (7%) of each payment BASF has made into the Action Fund in accordance with the Settlement Agreement.

   b. The Supplemental Fund will be used to compensate the following Qualifying Class Member's Water Sources:

      i. Water Sources that were reported in a Public Water System Settlement Claims Form to have no Qualifying Test Result showing a Measurable Concentration of PFAS and because of later PFAS testing obtain a Qualifying Test Result showing a Measurable Concentration of PFAS;

      ii. Impacted Water Sources that do not exceed an applicable State MCL or the Proposed Federal PFAS MCLs at the time their Claims Forms are submitted and because of later PFAS testing obtain a Qualifying Test Result showing a Measurable Concentration of PFAS that exceeds the Proposed Federal PFAS MCLs or an applicable State MCL;

      iii. Water Sources for which information was previously submitted in connection with another PWS Settlement, but whose data requires updating to account for any changes in circumstance between previous submission(s) and the Claims Period relevant to the BASF PWS Settlement.

   c. A Qualifying Class Member may submit a Supplemental Fund Claims Form to the Claims Administrator at any time up to and including December 31, 2030.

   d. The Claims Administrator will individually calculate for each Impacted Water Source that has submitted a Supplemental Fund Claims Form to approximate, as closely as is reasonably possible, the amount that each Impacted Water Source would have been allocated had it been in the Action Fund (Allocated Amount).

   e. The Claims Administrator shall issue funds from the Supplemental Fund in amounts that reflect the difference between the Impacted Water Source's Allocated Amount and what the Qualifying Class Member has already received, if anything, for the Impacted Water Source.

   f. In the event the Supplemental Fund requires additional funding, the Claims Administrator, with the approval of the Special Master, may exercise discretion to replenish the Supplemental Fund from the Action Fund.

   g. The Claims Administrator shall pay any money remaining in the Supplemental Fund as of December 31, 2033, to the Qualifying Class Members, divided among the Qualifying Class Members in the proportions as prior total payments to each Qualifying Class Member from all funds established by the Settlement Agreement.

5. **Special Needs Fund**

   a. The Escrow Agent will transfer into the Special Needs Fund five percent (5%) of each payment BASF has made into the Action Fund in accordance with the Settlement

Agreement.

b. Over the last decade, Qualifying Class Members have been faced with how to deal with discovering PFAS in their Impacted Water Sources. Many have also faced state PFAS advisories and regulations. Some Qualifying Class Members or affiliated parties may have responded by taking action(s) to limit PFAS impacts to their customers and Water Sources. Without limiting the possible actions taken by Qualifying Class Members, examples include: taking wells offline, reducing flow rates, drilling new wells, pulling water from other sources, and/or purchasing supplemental water.

c. The Special Needs Fund is intended to compensate those Qualifying Class Members that spent money to address PFAS detections in their Impacted Water Sources, including to reimburse or re-pay affiliated parties that took such actions. This is in addition to any other compensation provided by the Settlement.

d. A Qualifying Class Member may submit to the Claims Administrator a Special Needs Fund Claims Form up to forty-five (45) calendar days after submitting its Public Water System Settlement Claims Form.

e. After receiving all timely Special Needs Fund Claims Forms, the Claims Administrator will review such forms and determine which Qualifying Class Members shall receive additional compensation and the amount of compensation. The Claims Administrator will recommend the awards to the Special Master, who must review and ultimately approve or reject them.

f. The Claims Administrator shall pay any money remaining in the Special Needs Fund to the Qualifying Class Members, divided among the Qualifying Class Members in the proportions as prior total payments to each Qualifying Class Member from all funds established by the Settlement Agreement after all Special Needs Claims have been reviewed and paid.

6. **Action Fund**

a. The deadline for Qualifying Class Members to submit a Public Water System Settlement Claims Form for all Impacted Water Sources is sixty (60) calendar days after the Effective Date. This deadline can be extended by the Claims Administrator only if a Qualifying Class Member demonstrates that it has, prior to such deadline, submitted water samples necessary to meet the requirements of Baseline Testing and is awaiting analytical results from a laboratory capable of issuing a Qualifying Test Result.

b. The Claims Administrator will calculate payments from the Action Fund after the Escrow Agent has transferred the amounts described above for the Supplemental Fund and the Special Needs Fund. The Action Fund will be allocated to the Qualifying Class Members' Impacted Water Sources using the following allocation methodology.

c. **PFAS Score**

   i. For purposes of calculating each Impacted Water Source's PFAS Score, the Claims Administer will examine the Qualifying Class Member's Public Water System Settlement Claims Form to determine the highest concentration, expressed in parts per trillion ("ppt," or nanograms per liter), that the Impacted Water Source has shown, according to one or more Qualifying Test Results, for PFOA, for PFOS, and for any other single PFAS

analyte listed on the Claims Form.

ii.    The Claims Administrator will determine each Impacted Water Source's PFAS Score by taking the **GREATER** of either:

        a.    the sum of the maximum levels for PFOA and for PFOS,

$$\text{PFAS Score} = [\text{PFOA (Max Level)} + \text{PFOS (Max Level)}]$$

or

        b.    the sum of the maximum levels of PFOA and PFOS averaged with the square root of the maximum level of any other single PFAS analyte listed on the Claims Form.

$$\text{PFAS Score} = \{[\text{PFOA (Max Level)} + \text{PFOS (Max Level)}] + \text{Other PFAS (Max level)}^{0.5}\} / 2$$

**Examples of Determining PFAS Score:**

CWS 1 owns and operates 4 water sources: Surface Water (SW) System A, Well B, Well C, and Well D.  The maximum levels of each PFAS analyte for each Water Source and the PFAS Scores are listed below.

| Impacted Water Source | Sum of PFOS + PFOA | Avg. of (PFOA + PFOS) & Max Other PFAS | PFAS Score | Max PFOA | Max PFOS | Max PFNA | Max PFHxS | Max PFHxA |
|---|---|---|---|---|---|---|---|---|
| SW System A | **62** | 35.15 | 62 | 15 | 47 | 8.3 | 5 | 0 |
| Well B | **0.95** | .475 | 0.95 | 0.95 | 0 | 0 | 0 | 0 |
| Well C | **0** | **0** | 0 | 0 | 0 | 0 | 0 | 0 |
| Well D | 15.2 | **27.6** | 27.6 | 12 | 3.2 | 0 | 1600 | 5.2 |

    d.  **Adjusted Flow Rate**

        i.    Impacted Water Sources' flow rates can be reported in the Claims Forms in either gallons per minute (gpm) or Million Gallons per Day (MGD).  One thousand (1,000) gpm equals 1.44 MGD because there are one thousand four hundred forty (1,440) minutes in each day.  The Claims Administrator must convert the MGD reported flow rates into gpm for all calculations.

        ii.    Groundwater water sources should report flow rates from the groundwater well. Surface water sources should report the flow rate of the water that enters the treatment plant.

        iii.    The Claims Administrator will determine the Adjusted Flow Rate for each Impacted Water Source by first averaging the three highest annual average flow rates that the Qualifying Class Member drew from the groundwater Impacted Water Source or that entered the surface water treatment plant. The three highest annual average flow rates can be selected from a ten-year period from 2014-2023. This average will then be averaged with the verified maximum flow rate of a groundwater Impacted Water Source or the maximum

flow rate entering a surface water Impacted Water Source.

iv. If the Qualifying Class Member can demonstrate that an Impacted Water Source was taken off-line or reduced its flow rate as a result of PFAS contamination and additional years are needed to obtain accurate flow rates not impacted by PFAS, the Claims Administrator can consider years beyond the 2014-2023 timeframe.

v. For purposes of the Allocation Procedures, a Public Water System's multiple intakes from one distinct surface water source are deemed to be a single Water Source so long as the intakes supply the same water treatment plant.

vi. For purposes of the Allocation Procedures, a Public Water System's intakes from one distinct surface-water source that supply multiple water treatment plants are deemed to each be a separate Water Source.

vii. For purposes of the Allocation Procedures, a Public Water System's multiple groundwater wells (whether from one distinct aquifer or from multiple distinct aquifers) that supply multiple water treatment plants are deemed to each be a separate Water Source.

viii. If a water treatment plant is blending both surface water and groundwater before treatment, only one Adjusted Flow Rate is used.

ix. In the event a Public Water System owns both groundwater wells and surface water system(s) that have separate treatment plants, they shall be deemed to each be a separate Water Source.

e. **Base Score Calculations**

i. The Base Score will be calculated using two primary components: a proxy for capital costs and a proxy for operation and maintenance (O&M) costs. Capital costs are driven primarily by the size of the Impacted Water Source. O&M costs are driven primarily by the size of the Impacted Water Source and the concentration of PFAS.

Base Score = Capital Costs Component + Operation and Maintenance Costs Component

ii. **Capital Costs Component**

a. U.S. EPA published a revision of its "Work Breakdown Structure-Based Cost Model for Granular Activated Carbon Drinking Water Treatment" in March 2023. This publication includes a Work Breakdown Structure (WBS) model that estimates the cost of treating PFAS contamination based on the flow rate of an Impacted Water System. A cost curve can be derived from the U.S. EPA WBS which expresses treatment costs in cost per thousand gallons produced. The below "Flow Rate Adjustment Factor" graph is the cost curve relating the treatment cost per thousand gallons as a function of overall size. This cost curve recognizes a decrease in unit cost as the flow rate for an Impacted Water Source increases. Each Impacted Water Source's Capital Costs Component of the Base Score is

calculated off this cost curve.

Capital Cost Component = (EPA unit cost * flow rate)

Treatment cost per thousand gallons = $7.7245 *(\text{Flow Rate})^{-0.281}$

Capital Cost Score = annual 1000 G units * treatment cost per thousand gallons



iii.    **Operation and Maintenance Costs Component**

      a.   The factors that affect O&M can be complex and depend on a range of factors (including but not limited to influent source quality, pH, temperature, type and concentration of PFAS influent, media used, etc.). However, the volume capacity of treatment media to remove PFAS decreases as the concentration of PFAS increases. This necessitates more frequent replacements of the treatment media, which increases the quantity of spent media that must be discarded. This increases the O&M costs of PFAS treatment.

      b.   There is an observed increase in O&M costs as PFAS concentration increases. The available data suggest that as concentrations increase, O&M costs will increase in a non-linear, curved relationship as it is easier and less expensive to remove higher concentrations up to a certain level. The increase in O&M costs is thus a function of the PFAS levels and the size of the system (reflected in the Capital Cost Component). The following equation represents this relative relationship which considers that all Qualifying Class Members will require basic O&M tied to the Capital Cost Component as well as additional O&M driven by the level of PFAS concentrations.

O&M Cost Component = ((PFAS Modifier*PFAS Score) * Capital Cost Component) + Capital Cost Component

PFAS Modifier = 0.005

c.  The result is an exponential reduction in the unit cost of PFAS removal as PFAS concentrations increase.  This exponential effect is captured in part by the Allocation Procedures' nonlinear approach to flow rates and in part by the Allocation Procedures' use of a square-root factor for certain PFAS analytes.

d.  When the Base Score is calculated where the O&M Costs Component and Capital Costs Component are combined, a roughly three-fold difference is obtained over the regulatory threshold of 4 ppt to 1000 ppt. The results of this calculation are shown in the below example for the EPA WBS standard design system at 1494 GPM as a function of relative PFAS concentrations.

(EPA unit cost * flow rate) + ((PFAS Modifier*PFAS Score) * Capital Cost Component) + Capital Cost Component



**Example of Determining Base Score**

CWS 1's SW System A has a PFAS Score of 62 and an Adjusted Flow Rate of 1,494 gpm.

Cost per 1,000 gallon production = 7.7245 * (1,494) $^{-0.281}$ = .99

Annual 1000 gallons units (1,494 * 60 * 24 *365) / 1,000 = 785,246

Capital Costs Component = 785,246 * .99 = 777,828

O&M Costs Component = ((62 * .005) * 777,828) + 777,828 = 1,018,955

Base Score = 777,828 + 1,018,955 = 1,796,783

f.  **Adjusted Base Score**

i.  After calculating the Base Score of each Impacted Water Source, the Claims Administrator then will apply any Bumps based on certain factors defined below. This will yield the Adjusted Base Score for each Impacted Water Source.

ii. **Regulatory Bump:**

    a. An Impacted Water Source's Base Score will receive a Regulatory Bump if the Impacted Water Source:

        i. exceeds the four (4) ppt Proposed Federal PFAS MCL for PFOS or the four (4) ppt Proposed Federal PFAS MCL for PFOA;

        ii. exceeds the Proposed Federal PFAS MCL Hazard Index (based on 9 ppt PFHxS, 10 ppt GenX chemicals, 10 ppt PFNA, 2000 ppt PFBS – applying the Hazard Index formula set forth in 88 Fed. Reg. 18,638, 18,748 (Mar. 29, 2023) (proposing 40 C.F.R. § 141.61(c)(36) & n.1 (2023)); or

        iii. exceeds an applicable State MCL that is below the Proposed Federal PFAS MCL for the same PFAS analyte, or exceeds an applicable State MCL for a PFAS analyte for which there is no Proposed Federal PFAS MCL.

    b. The Claims Administrator will consider all Proposed Federal PFAS MCLs and existing State MCLs for PFAS analytes existing on the date the Court issues a Final Approval to determine if an Impacted Water Source has ever exceeded any applicable standard.

    c. The Claims Administrator will adjust the Base Score for those Impacted Water Sources that are subject to the Regulatory Bump by a positive adjustment factor of 4.00.

iii. **Litigation Bump**

    a. The Litigation Bump applies to the Impacted Water Sources of any Qualifying Class Member that, as of the Settlement Date, had pending Litigation in the United States of America in which it asserts against any Released Party any Claim related to alleged actual or potential PFAS contamination of Drinking Water.

    b. No more than one Litigation Bump may apply to an Impacted Water Source.

    c. For cases on file by December 31, 2020, the Claims Administrator will adjust the Base Score for those Impacted Water Sources by a positive adjustment factor of 0.25.

    d. For cases filed in 2021, the Claims Administrator will adjust the Base Score for those Impacted Water Sources by a positive adjustment factor of 0.20.

    e. For cases filed in 2022, the Claims Administrator will adjust the Base Score for those Impacted Water Sources by a positive adjustment factor of 0.15.

     f.    For cases filed in 2023, the Claims Administrator will adjust the Base Score for those Impacted Water Sources by a positive adjustment factor of 0.10.

     g.    For cases filed between January 1, 2024 and the Settlement Date, the Claims Administrator will adjust the Base Score for those Impacted Water Sources by a positive adjustment factor of 0.05.

**iv.  Public Water Provider Bellwether Bump**

     a.    The Public Water Provider Bellwether Bump applies to any Impacted Water Source that is owned or operated by a Qualifying Class Member that served as one of the thirteen Public Water Provider Bellwether Plaintiffs listed in Exhibit J as either a Water Provider Bellwether Case and/or a Telomer Water Provider Bellwether Case.

     b.    More than one Public Water Provider Bellwether Bump can be applied to an Impacted Water Source (i.e., the Qualifying Class Members selected as Tier 2 Public Water Provider Bellwether Plaintiffs will receive all two adjustments provided below).

     c.    The Claims Administrator will adjust the Base Scores for Qualifying Class Members that were selected as one of the thirteen Tier One Water Provider Bellwether cases by a positive adjustment factor of 0.15.

     d.    The Claims Administrator will adjust the Base Scores for Qualifying Class Members that were selected as one of the three Tier Two Water Provider Bellwether cases by a positive adjustment factor of 0.20.

     e.    The Claims Administrator will adjust the Base Scores for the Qualifying Class Members that were selected as the Tier 2 Telomer Water Provider Bellwether cases by a positive adjustment factor of 0.30.

  v.  For each Impacted Water Source, the Claims Administrator will sum the applicable Bump adjustments and multiply the summed adjustments by the Base Score. Then, the Claims Administrator will take this total and add it to the Base Score to determine the Adjusted Base Score.

Adjusted Base Score = (Sum of Adjustments * Base Score) + Base Score

**Example of Determining Adjusted Base Score**

CWS 1's SW System A's PFAS levels exceed the Proposed Federal PFAS MCL. CWS 1 filed a lawsuit in the AFFF MDL on November 1, 2022, against BASF and it was not selected as a Public Water Provider Bellwether Plaintiff. System A will receive the following Bumps:

| | |
|---|---|
| Regulatory Bump: | 4.00 |
| Litigation Bump: | 0.15 |
| Total Adjustment: | 4.15 |

Adjusted Base Score = (Sum of Adjustments * Base Score) + Base Score

(4.15 * 1,796,783) + 1,796,783 = **9,253,432.5**

g.  **Settlement Award**

The Claims Administrator will first divide an Impacted Water Source's Adjusted Base Score by the sum of all Adjusted Base Scores. This number gives each Impacted Water Source its percentage of the Action Fund. Then, that percentage is multiplied by the Action Fund to provide the Settlement Award for each Impacted Water Source.

**Allocated Award** = (Adjusted Base Score / Sum of All Adjusted Base Scores) * (Action Fund)

h.  **Claims Administrator Notification to Qualifying Class Members**

The Claims Administrator will notify each Qualifying Class Member of the Settlement Awards for all its Impacted Water Sources. Class Counsel and BASF shall simultaneously receive copies of all such notices, as well as a report on the allocation of all amounts paid to Qualifying Class Members.

i.  **Requests for Reconsideration to the Claims Administrator**

i.  After a Qualifying Class Member receives notification of its Settlement Award from the Claims Administrator, it will have ten (10) Business Days from the receipt of such notification to request that the Special Master reconsider a part of the calculation based on a mistake/error alleged to have occurred. The Qualifying Class Member has no other appellate rights.

ii.  After they receive notification from the Claims Administrator, BASF and Class Counsel shall each have ten (10) Business Days to request that the Special Master reconsider any of the calculations based on a mistake/error alleged to have occurred.

iii.  After the Special Master receives all timely requests for reconsideration, the Special Master within ten (10) Business Days shall make a decision on the request for reconsideration, and, if warranted will request that the Claims Administrator correct any mistakes/errors and run the calculations again. Except when Section 8 of the Settlement Agreement provides otherwise, any decision by the Special Master is final, binding, and non-appealable.

j.  **Payments for the Action Fund**

BASF shall make an Initial Payment for the Action Fund within ten (10) Business Days after Preliminary Approval and a subsequent payment after Final Approval, as set forth in the Settlement Agreement. The total amount of all payments described in this Paragraph will be $316,500,000. Within five (5) Business Days after wire transfer of the Settlement Amount into the Qualified Settlement Fund, the Escrow Agent shall transfer seven percent (7%) of the payment amount into the Supplemental Fund and five percent (5%) of the payment amount into the Special Needs Fund.

# EXHIBIT B

## *Aqueous Film-Forming Foam (AFFF) Products Liability Litigation (MDL 2873)*
## Public Water System Settlement Claims Form

### CLAIM SUBMISSION DEADLINE: 60 DAYS AFTER THE EFFECTIVE DATE

### INSTRUCTIONS
*All capitalized terms not otherwise defined herein shall have the meanings set forth in the Settlement Agreement, available for review at www.PFASWaterSettlement.com*

Please follow the instructions below to submit a claim for the AFFF Products Liability Litigation Settlement Program. A completed copy of this Claims Form must be submitted no later than the Claims Form Deadline. Late Claims Forms will not be considered.

TO RECEIVE BENEFITS FROM THIS SETTLEMENT, YOU MUST PROVIDE ALL OF THE REQUIRED (*) INFORMATION BELOW AND YOU MUST SIGN THIS CLAIMS FORM. THIS CLAIMS FORM SHOULD ONLY BE USED IF A CLAIM IS BEING MAILED IN AND IS NOT BEING FILED ONLINE. YOU MAY ALSO FILE YOUR CLAIM ONLINE AT **www.PFASWaterSettlement.com**.

For the Claims Form to be valid, Claimants must provide ALL information requested concerning the Public Water System (PWS) and its groundwater wells and/or surface water systems ("Water Source").

Baseline Testing: If a Water Source was tested only prior to January 1, 2019, and its test results do not show a Measurable Concentration (any level) of PFAS, that Water Source must be retested to meet Baseline Testing requirements.  If a Water Source was tested on January 1, 2019, or later, and its test results do not show a Measurable Concentration of PFAS, no further testing of that Water Source is required. Test results may be submitted from untreated (raw) or treated (finished) water samples. However, all samples must be drawn from a Water Source that has been used to provide Drinking Water.

A PWS that does not timely return a completed Claims Form forfeits any right to participate in this settlement.  For any questions about this Claims Form, you may contact a Claim Representative at 1-855-714-4341 or info@pfaswatersettlement.com. Claims Forms submitted by mail should be sent to the Claims Administrator at the following address:

AFFF Public Water System Claims
PO Box 4466
Baton Rouge, LA 70821

### SECTION 1. PUBLIC WATER SYSTEM (PWS) INFORMATION

#### SECTION 1.1 PWS GENERAL INFORMATION

| | | | |
|---|---|---|---|
| Public Water System (PWS) Name | | | |
| PWS Identification Number (PWSID) | | Employer Identification Number | __ __ - __ __ __ __ __ __ __ |
| PWS Facility Address | Street | | |
| | City | State | Zip |

#### SECTION 1.2 PWS CONTACT INFORMATION
*Please note that communication for this Settlement may extend into the year 2030. Please provide contact information with this in mind and contact the Claims Administrator if any updates are required.*

| | | | |
|---|---|---|---|
| Name of PWS Primary Contact | | Job Title of PWS Primary Contact | |
| Telephone Number for Primary Contact | ( __ __ __ ) __ __ __ - __ __ __ __ | Fax Number | ( __ __ __ ) __ __ __ - __ __ __ __ |
| Email Address for Primary Contact | | PWS "General" Email (if available) | |

2

| Name of PWS Secondary Contact | | Job Title of PWS Secondary Contact | | |
|---|---|---|---|---|
| Telephone Number for Secondary Contact | ( __ __ __ ) __ __ __ - ___ __ __ | Email Address for Secondary Contact | | |
| PWS Mailing Address *Payments will be sent to this address* | Street/PO Box | | | |
| | City | | State | Zip |

## *Aqueous Film-Forming Foam (AFFF) Products Liability Litigation (MDL 2873)*
## Public Water System Settlement Claims Form

| SECTION 1.3 LAWSUIT INFORMATION (CHECK YES OR NO) | YES | NO |
|---|---|---|
| Has PWS filed a lawsuit to recover damages associated with PFAS contamination of its groundwater wells or surface water systems? | | |
| If yes, is the lawsuit currently pending/filed in the AFFF MDL? | | |
| If the lawsuit is NOT currently in the AFFF MDL, in which court is it pending? | | |
| Case Number | | |
| Date Filed | | |

| SECTION 1.4 ATTORNEY INFORMATION (IF APPLICABLE) | | YES | NO |
|---|---|---|---|
| Is the PWS represented by an attorney? (Check Yes or No) | | | |
| Attorney Name | | Law Firm Name | |
| Telephone Number | ( __ __ __ ) __ __ __ - ___ __ __ | Email Address | |
| Law Firm Employer Identification Number | | | |

| SECTION 2. QUALIFYING PWS INFORMATION | | |
|---|---|---|
| QUALIFYING QUESTIONS (CHECK YES OR NO) | YES | NO |
| Is the PWS required to test under UCMR-5? | | |
| Is the PWS required to test for PFAS by state law? | | |
| Does the PWS serve at least 15 service connections used by year-round residents? | | |
| Does the PWS serve at least 25 year-round residents? | | |
| Does the PWS serve 3,300 people or fewer according to SDWIS as of May 15, 2024? | | |
| Is the PWS in the United States of America or one of its territories? | | |
| Is the PWS owned by a state (or territory of the United States) or the federal government? | | |

3

**PWS CODES WITHIN THE SAFE DRINKING WATER INFORMATION SYSTEM (SDWIS)**

| | |
|---|---|
| **What is the PWS Owner Type Code as listed in SDWIS?** *Please enter one of the following: "L-Local Government" or "M-Public/Private" or "P-Private" or "N-Native American" or "S-StateGovernment" or "F-Federal Government"* | |
| **If the PWS has an Owner Type Code of "P-Private", what is the operation type of the PWS?** *Please enter one of the following: "Private For-Profit Utility", "Nonprofit Utility", or "Ancillary Utility"* | |
| **If the PWS has an Owner Type Code of either "S-State Government" or "F-Federal Government," does the PWS have the authority to sue or be sued in its own name?** *Please enter one of the following: "Yes" or "No"* | |
| **What is the PWS Facility Activity Code as listed in SDWIS?** *\*Please enter one of the following: "Active," "Inactive," "Change from public to non-public," "Merged with another system" or "Potential future system to be regulated"* | |
| **What is the PWS classification as listed in SDWIS?** *Please enter one of the following: "Community Water System" or "Non-Transient Non-Community Water System" or "Transient Non-Community Water System"*  *Note: If (1) your type code is "Transient Non-Community Water System" OR (2) your type code is "Non-Transient Non-Community Water System" AND the PWS serves 3,300 people or fewer, skip to Section 6.* | |

## *Aqueous Film-Forming Foam (AFFF) Products Liability Litigation* (MDL 2873)
## Public Water System Settlement Claims Form

### SECTION 3. WATER SOURCE SUMMARY INFORMATION

| GROUNDWATER WELL SUMMARY | QUANTITY |
|---|---|
| How many groundwater wells are owned or operated by the PWS? | |
| How many of these groundwater wells have been analyzed using a state or federal agency-approved analytical method and showed a Measurable Concentration of PFAS prior to May 15, 2024? | |
| How many of these groundwater wells have been analyzed using a state or federal agency-approved analytical method and DID NOT show a Measurable Concentration of PFAS since January 1, 2019? | |
| SURFACE WATER SYSTEM SUMMARY | QUANTITY |
| How many surface water systems are owned or operated by the PWS? | |
| How many of these surface water systems have been analyzed using a state or federal agency-approved analytical method and showed a Measurable Concentration of PFAS prior to May 15, 2024? | |
| How many of these surface water systems have been analyzed using a state or federal agency-approved analytical method and DID NOT show a Measurable Concentration of PFAS since January 1, 2019? | |

### SECTION 4.    WATER SOURCE INFORMATION

| |
|---|
| **Please complete and submit information from Section 4 for <u>EACH</u> Water Source. See "Addendum X" to provide information for each additional Water Source.**  *Note: Groundwater wells should report flow rates from the groundwater well. Surface water systems should report the flow rate of the water that enters the treatment plant.* |
| **Name or description of the Water Source.**  *Note: this is the name or unique identifier listed on the testing laboratory chain of custody document.* |

4

| | | |
|---|---|---|
| **Is this a groundwater well or surface water system?**<br><br>*Please enter "Groundwater well" or "Surface water system."*<br><br>*Note: Please enter "Surface water system" if a treatment plant is blending groundwater and surface water before treatment. Both systems are considered a surface water system.* | | |
| Estimated date of first PFAS exposure to your water system (be as specific as possible). | | |
| What is the basis for the estimate above? | | |

| WATER SOURCE QUESTIONS (CHECK YES OR NO) | YES | NO |
|---|---|---|
| Does the PWS own this Water Source? | | |
| Does the PWS operate this Water Source? | | |
| Is this Water Source a <u>purchased</u> water connection? | | |
| **Is this Water Source part of an interrelated Drinking Water system ("IDWS")?** If yes, please complete the IDWS Addendum for this source.<br><br>*Note: Detailed IDWS guidance is provided in the Parties' Joint Interpretive Guidance on Interrelated Drinking Water Systems" located at* [www.PFASWaterSettlement.com](www.PFASWaterSettlement.com). | | |
| Has the water from this Water Source ever been used as Drinking Water? | | |
| Was this Water Source tested or otherwise analyzed for PFAS and found to contain any Measurable Concentration of PFAS on or before the May 15, 2024? | | |

5

## *Aqueous Film-Forming Foam (AFFF) Products Liability Litigation (MDL 2873)*
## Public Water System Settlement Claims Form

### FLOW RATE CAPACITY

Please answer the below questions indicating the maximum flow rate capacity for the Water Source. *Please enter the measurement in total gallons per year (GPY), gallons per minute (GPM), or million gallons per day (MGD).*

| FLOW RATE QUESTIONS | GPY | GPM | MGD |
|---|---|---|---|
| If this Water Source is a groundwater well, please enter the maximum flow rate capacity of the groundwater pump. | | | |
| If this Water Source is a surface water system, please enter the maximum flow rate capacity of the water that enters the treatment plant. | | | |
| How was the maximum flow rate capacity determined? | | | |

For the following years, please enter the ACTUAL ANNUAL flow rate for the Impacted Water Source. If the flow rate was reduced or the source was taken offline due to PFAS contamination, please indicate by checking the box corresponding to that year.

<u>Note</u> : Please enter the measurement in total gallons per year (GPY)  <u>OR</u>  gallons per minute (GPM)  <u>OR</u>  million gallons per day (MGD).
If the source was not active in a particular year, please enter "0" (zero) for the Actual Annual Flow Rate. Flow rates should be based on a 12 month period regardless of how many months the source was in operation during the year.

| YEAR | GPY | GPM | MGD | Was the Annual Flow Rate reduced due to PFAS Contamination? |
|---|---|---|---|---|
| *Flow Rate Calculations* | *= GPM * 1,440 Minutes Per Day * 365 Days Per Year* | *= GPY ÷ 1,440 ÷ 365* | *= (GPM * 1,440) ÷ 1,000,000* | *(Yes or No)* |
| **Example: 2013** | **785,246,400** | **1,494** | **2.15** | **No** |
| 2013 | | | | |
| 2014 | | | | |
| 2015 | | | | |
| 2016 | | | | |
| 2017 | | | | |
| 2018 | | | | |
| 2019 | | | | |
| 2020 | | | | |
| 2021 | | | | |
| 2022 | | | | |

### ADDITIONAL FLOW RATE INFORMATION (IF NECESSARY)

**Each PWS is required to provide data for at least 3 years for which the actual annual flow rate (AAFR) was <u>not</u> reduced due to PFAS contamination, if available.** If the PWS did not provide data for at least 3 years in which the AAFR was not reduced due to PFAS contamination (in the table above), please use the space below to provide additional information as needed. For example, if the AAFR for 9 of the previous 10 years has been reduced due to PFAS contamination, the PWS should provide 2 years of data below for the most recent unimpacted years.

| YEAR | GPY | GPM | MGD |
|---|---|---|---|
| *Flow Rate Calculations* | *= GPM * 1,440 Minutes Per Day * 365 Days Per Year* | *= GPY ÷ 1,440 ÷ 365* | *= (GPM * 1,440) ÷ 1,000,000* |
| **Example: 2012** | **785,246,400** | **1,494** | **2.15** |
| | | | |
| | | | |
| | | | |

6

## *Aqueous Film-Forming Foam (AFFF) Products Liability Litigation (MDL 2873)*
## Public Water System Settlement Claims Form

### SECTION 5. PFAS TESTING RESULTS

#### PFOA CONTAMINATION TESTING

Please enter the below information to indicate **PFOA** Qualifying Test Results. *If this Water Source was not found to contain any PFAS at any level since* **January 1, 2019,** *leave this section blank and skip to Section 6: Certification and Signature.*

**See Addendum X to provide information for each additional Water Source.**

| | |
|---|---|
| Highest historical PFOA concentration in lab-issued documentation: | |
| Date of sampling: | |
| Company of the person who took the sample: | |
| Date of analysis: | |
| Highest historical PFOA concentration converted to parts per trillion (PPT): | _____ PPT |
| Name of laboratory that performed the analysis: | |

| Facility address of laboratory that performed the analysis: | Street/PO Box | | |
|---|---|---|---|
| | City | State | Zip |

| | |
|---|---|
| What state or federal agency approved analytical method was used to measure the PFAS concentrations of the Impacted Water Source (e.g., EPA Method 537.1, EPA Method 537M)? | |

#### PFOS CONTAMINATION TESTING

Please enter the below information to indicate **PFOS** Qualifying Test Results. *If this Water Source was not found to contain any PFAS at any level since* **January 1, 2019,** *leave this section blank and skip to Section 6: Certification and Signature.*

**See Addendum X to provide information for each additional Water Source.**

| | |
|---|---|
| Highest historical PFOS concentration in lab-issued documentation: | |
| Date of sampling: | |
| Company of the person who took the sample: | |
| Date of analysis: | |
| Highest historical PFOS concentration converted to parts per trillion (PPT): | _____ PPT |
| Name of laboratory that performed the analysis: | |

| Facility address of laboratory that performed the analysis: | Street/PO Box | | |
|---|---|---|---|
| | City | State | Zip |

| What state or federal agency approved analytical method was used to measure the PFAS concentrations of the Impacted Water Source (e.g., EPA Method 537.1, EPA Method 537M)? | |
|---|---|

## Aqueous Film-Forming Foam (AFFF) Products Liability Litigation (MDL 2873)
### Public Water System Settlement Claims Form

### OTHER PFAS CONTAMINATION TESTING

Please enter the below information to indicate **other PFAS analyte** Qualifying Test Results. *If this Water Source was not found to contain any PFAS at any level since* **January 1, 2019,** *leave this section blank and skip to Section 6: Certification and Signature.*

 **See Addendum X to provide information for each additional Water Source.**

| Highest historical concentration of **one** other PFAS analyte in lab-issued documentation: | |
|---|---|
| Date of sampling: | |
| Company of the person who took the sample: | |
| Date of analysis: | |
| Highest historical concentration of one other PFAS analyte concentration converted to parts per trillion (PPT): | _____ PPT |
| Name of laboratory that performed the analysis: | |

| Facility address of laboratory that performed the analysis: | Street/PO Box | | |
|---|---|---|---|
| | City | State | Zip |

| What state or federal agency approved analytical method was used to measure the PFAS concentrations of the Impacted Water Source (e.g., EPA Method 537.1, EPA Method 537M)? | |
|---|---|

### SECTION 6. CERTIFICATION AND SIGNATURE

By signing this Claims Form, Authorized Representative represents and warrants the following on behalf of the Class Member:

· The Authorized Representative has authority to submit a claim and to release all Released Claims on behalf of the Class Member and all other Persons who are Releasing Persons by virtue of their relationship or association with the Class Member.

· The Class Member has tested each of its Water Sources for PFAS.

· The Class Member authorizes the Claims Administrator and/or Special Master to provide all Claims Form information, including PFAS test result details, to the relevant Parties as required by the terms of the Settlement Agreement.

· The Class Member has consulted with any other entity that has incurred costs in connection with efforts to remove PFAS from, or prevent PFAS from entering, Class Member's Public Water System, and that Class Member's claim is on behalf of any such other entity.

I declare under penalty of perjury subject to 28 U.S.C. § 1746 that all of the information provided within this Claims Form and its attachments are true and correct to the best of my knowledge, information, and belief.

| | |
|---|---|
| Authorized Representative's Signature: | |
| Authorized Representative's Printed Name: | |

Executed this _____day of _____ at _____(County), _____ (State).

### DOCUMENTATION REQUIREMENTS

Please submit **ALL** documentation reflecting the information provided above including the following:

1. Lab-issued documentation demonstrating historical maximum detections of PFOA, PFOS, and other PFAS analyte (including chain of custody document)
2. Documentation to support both annual average and maximum flow rate of the water entering the surface water system.
3. Filed and dated copy of the lawsuit filed by the PWS to recover damages associated with PFAS contamination of its groundwater wells or surface water systems.
4. A completed IRS Form W-9 for the PWS

9

## *Aqueous Film-Forming Foam (AFFF) Products Liability Litigation (MDL 2873)*
## Public Water System Settlement Claims Form

### INSTRUCTIONS
*All capitalized terms not otherwise defined herein shall have the meanings set forth in the Settlement Agreement,*
*available for review at www.PFASWaterSettlement.com*

### ADDENDUM  X

### SECTION 4. WATER SOURCE INFORMATION

**Please complete and submit information from Section 4 for <u>EACH</u> Water Source.**

**See "Addendum X" to provide information for each additional Water Source.**

*Note:*     *Groundwater wells should report flow rates from the groundwater well. Surface water systems should report the flow rate of the water that enters the treatment plant.*

| | |
|---|---|
| **Name or  description of the Water Source.** <br> *Note :*   *This is the name or unique identifier listed  on the testing laboratory chain of custody document.* | |
| **Is this a ground water well or surface water system?** <br> *Please enter "Groundwater well" or "Surface water system."* <br><br> *Note :*   *Please enter "Surface water system" if a treatment plant is blending groundwater and surface water before treatment. Both systems are considered a surface water system.* | |
| Estimated date of first PFAS exposure to your water system (be as specific as possible). | |
| What is the basis for the estimate above? | |

| WATER SOURCE QUESTIONS (CHECK YES OR NO) | YES | NO |
|---|---|---|
| Does the PWS own this Water Source? | | |
| Does the PWS operate this Water Source? | | |
| Is this Water Source a <u>purchased</u> water connection? | | |
| Has the water from this Water Source ever been used as Drinking Water? | | |
| Was this Water Source tested or otherwise analyzed for PFAS and found to contain any Measurable Concentration of PFAS on or before May 15, 2024? | | |

## Aqueous Film-Forming Foam (AFFF) Products Liability Litigation (MDL 2873)
## Public Water System Settlement Claims Form

### FLOW RATE CAPACITY

Please answer the below questions indicating the maximum flow rate capacity for the Water Source. *Please enter the measurement in total gallons per year (GPY), gallons per minute (GPM), or million gallons per day (MGD).*

| FLOW RATE QUESTIONS | GPY | GPM | MGD |
|---|---|---|---|
| If this Water Source is a groundwater well, please enter the maximum flow rate capacity of the groundwater pump. | | | |
| If this Water Source is a surface water system, please enter the maximum flow rate capacity of the water that enters the treatment plant. | | | |
| How was the maximum flow rate capacity determined? | | | |

For the following years, please enter the ACTUAL ANNUAL flow rate for the Impacted Water Source. If the flow rate was reduced or the source was taken offline due to PFAS contamination, please indicate by checking the box corresponding to that year.

*Note : Please enter the measurement in total gallons per year (GPY)  OR  gallons per minute (GPM)  OR  million gallons per day (MGD).*
*If the source was not active in a particular year, please enter "0" (zero) for the Actual Annual Flow Rate. Flow rates should be based on a 12 month period regardless of how many months the source was in operation during the year.*

| YEAR | GPY | GPM | MGD | Was the Annual Flow Rate reduced due to PFAS Contamination? |
|---|---|---|---|---|
| *Flow Rate Calculations* | *= GPM * 1,440 Minutes Per Day * 365 Days Per Year* | *= GPY ÷ 1,440 ÷ 365* | *= (GPM * 1,440) ÷ 1,000,000* | *(Yes or No)* |
| **Example: 2013** | **785,246,400** | **1,494** | **2.15** | **No** |
| 2013 | | | | |
| 2014 | | | | |
| 2015 | | | | |
| 2016 | | | | |
| 2017 | | | | |
| 2018 | | | | |
| 2019 | | | | |
| 2020 | | | | |
| 2021 | | | | |
| 2022 | | | | |

### ADDITIONAL FLOW RATE INFORMATION (IF NECESSARY)

**Each PWS is required to provide data for at least 3 years for which the actual annual flow rate (AAFR) was <u>not</u> reduced due to PFAS contamination, if available.** If the PWS did not provide data for at least 3 years in which the AAFR was not reduced due to PFAS contamination (in the table above), please use the space below to provide additional information as needed. For example, if the AAFR for 9 of the previous 10 years has been reduced due to PFAS contamination, the PWS should provide 2 years of data below for the most recent unimpacted years.

| YEAR | GPY | GPM | MGD |
|---|---|---|---|
| *Flow Rate Calculations* | *= GPM * 1,440 Minutes Per Day * 365 Days Per Year* | *= GPY ÷ 1,440 ÷ 365* | *= (GPM * 1,440) ÷ 1,000,000* |
| **Example: 2012** | **785,246,400** | **1,494** | **2.15** |
| | | | |
| | | | |
| | | | |

## *Aqueous Film-Forming Foam (AFFF) Products Liability Litigation (MDL 2873)*
## Public Water System Settlement Claims Form

### ADDENDUM X

### SECTION 5. PFAS TESTING RESULTS

#### PFOA CONTAMINATION TESTING

Please enter the below information to indicate **PFOA** Qualifying Test Results. *If this Water Source was not found to contain any PFAS at any level on or before* ***May 15, 2024*** *, leave this section blank and skip to Section 6: Certification and Signature.*

**See Addendum X to provide information for each additional Water Source.**

| | |
|---|---|
| Highest historical PFOA concentration in lab-issued documentation: | |
| Date of sampling: | |
| Company of the person who took the sample: | |
| Date of analysis: | |
| Highest historical PFOA concentration converted to parts per trillion (PPT): | _____ PPT |
| Name of laboratory that performed the analysis: | |

| Facility address of laboratory that performed the analysis: | Street/PO Box | | |
|---|---|---|---|
| | City | State | Zip |
| What state or federal agency approved analytical method was used to measure the PFAS concentrations of the Impacted Water Source (e.g., EPA Method 537.1, EPA Method 537M)? | | | |

#### PFOS CONTAMINATION TESTING

Please enter the below information to indicate **PFOS** Qualifying Test Results. *If this Water Source was not found to contain any PFAS at any level on or before* ***May 15, 2024****, leave this section blank and skip to Section 6: Certification and Signature.*

**See Addendum X to provide information for each additional Water Source.**

| | |
|---|---|
| Highest historical PFOS concentration in lab-issued documentation: | |
| Date of sampling: | |
| Company of the person who took the sample: | |
| Date of analysis: | |
| Highest historical PFOS concentration converted to parts per trillion (PPT): | _____ PPT |
| Name of laboratory that performed the analysis: | |

| Facility address of laboratory that performed the analysis: | Street/PO Box | | |
|---|---|---|---|
| | City | State | Zip |

| What state or federal agency approved analytical method was used to measure the PFAS concentrations of the Impacted Water Source (e.g., EPA Method 537.1, EPA Method 537M)? | |
|---|---|

## *Aqueous Film-Forming Foam (AFFF) Products Liability Litigation (MDL 2873)*
## Public Water System Settlement Claims Form

### OTHER PFAS CONTAMINATION TESTING

Please enter the below information to indicate **other PFAS analyte** Qualifying Testing Results. *If this Water Source was not found to contain any PFAS at any level on or before* **May 15, 2024,** *leave this section blank and skip to Section 6: Certification and Signature.*

**See Addendum X to provide information for each additional Water Source.**

| Highest historical concentration of **one** other PFAS analyte in lab-issued documentation: | |
|---|---|
| Date of sampling: | |
| Company of the person who took the sample: | |
| Date of analysis: | |
| Highest historical concentration of one other PFAS analyte concentration converted to parts per trillion (PPT): | _____ PPT |
| Name of laboratory that performed the analysis: | |

| Facility address of laboratory that performed the analysis: | Street/PO Box | | |
|---|---|---|---|
| | City | State | Zip |

| What state or federal agency approved analytical method was used to measure the PFAS concentrations of the Impacted Water Source (e.g., EPA Method 537.1, EPA Method 537M)? | |
|---|---|

### DOCUMENTATION REQUIREMENTS

Please submit **ALL** documentation reflecting the information provided above including the following:
1.      Lab-issued documentation demonstrating historical maximum detections of PFOA, PFOS, and other PFAS analyte (including chain of custody document)
2.      Documentation to support both annual average and maximum flow rate of the water entering the surface water system.
3.      Filed and dated copy of the lawsuit filed by the PWS to recover damages associated with PFAS contamination of its groundwater wells or surface water systems
4.      A completed IRS Form W-9 for the PWS

## *Aqueous Film-Forming Foam (AFFF) Products Liability Litigation (MDL 2873)*
## Supplemental Claims Form

### CLAIM SUBMISSION DEADLINE: 12/31/2030

### INSTRUCTIONS
*All capitalized terms not otherwise defined herein shall have the meanings set forth in the Settlement Agreement, available for review at www.PFASWaterSettlement.com*

Please follow the instructions below to submit a Supplemental claim for the AFFF Products Liability Litigation Settlement Program. A completed copy of this Supplemental Claims Form must be submitted no later than December 31, 2030. Late Supplemental Claims Forms will not be considered.

A PWS should ONLY complete this Supplemental Claims Form for Water Sources that meet one or more of the following criteria: (i) Water Sources that were reported to have no Measurable Concentration (any level) of PFAS as of May 15, 2024 and because of later PFAS testing obtained a Qualifying Test Result showing a Measurable Concentration of PFAS; (ii) Water Sources with a positive PFAS detection as of May 15, 2024 that did not exceed an applicable State MCL or the Proposed Federal PFAS MCLs at the time the PWS submitted its Claims Form but later exceeded the Proposed Federal PFAS MCLs or an applicable State MCL, whether due to new test results or a change in the applicable MCLs.

TO RECEIVE BENEFITS FROM THIS SETTLEMENT, YOU MUST PROVIDE ALL OF THE REQUIRED (*) INFORMATION BELOW AND YOU MUST SIGN THIS CLAIMS FORM. THIS CLAIMS FORM SHOULD ONLY BE USED IF A CLAIM IS BEING MAILED IN AND IS NOT BEING FILED ONLINE. YOU MAY ALSO FILE YOUR CLAIM ONLINE AT **www.PFASWaterSettlement.com**.

For the Supplemental Claims Form to be valid, Claimants must provide ALL information requested concerning the Public Water System (PWS) and its groundwater wells and/or surface water systems ("Water Source").

Baseline Testing: If a Water Source was tested only prior to January 1, 2019, and its test results do not show a Measurable Concentration of PFAS, that Water Source must be retested to meet Baseline Testing requirements. If a Water Source was tested on January 1, 2019, or later, and its test results do not show a Measurable Concentration of PFAS, no further testing of that Water Source is required. Test results may be submitted from untreated (raw) or treated (finished) water samples. However, all samples must be drawn from a Water Source that has been used to provide Drinking Water.

For any questions about this Supplemental Claims Form, you may contact a Claim Representative at 1-855-714-4341 or info@pfaswatersettlement.com. Claims Forms submitted by mail should be sent to the Claims Administrator at the following address:

AFFF Public Water System Claims
PO Box 4466
Baton Rouge, LA 70821

### SECTION 1. PUBLIC WATER SYSTEM (PWS) INFORMATION

#### SECTION 1.1 PWS GENERAL INFORMATION

| | |
|---|---|
| Public Water System (PWS) Name | |

| | | Employer Identification Number | |
|---|---|---|---|
| PWS Identification Number (PWSID) | | | _ _ _ - _ _ _ _ _ _ _ |

### SECTION 2. WATER SOURCE INFORMATION

**Please complete and submit information from Section 2 for EACH Water Source. See "Addendum X" to provide information for each additional Water Source.**

*Note :*    *Groundwater wells should report flow rates from the groundwater well. Surface water systems should report the flow rate of the water that enters the treatment plant.*

| | |
|---|---|
| **Name or description of the Water Source.** <br> *Note :*    *This is the name of unique identifier listed on the testing laboratory chain of custody document.* | |
| **Is this a groundwater well or surface water system?** <br> *\*Please enter "Groundwater well" or "Surface water system."* <br><br> *Note :*    *Please enter "Surface water system" if a treatment plant is blending groundwater and surface water before treatment. Both systems are considered a surface water system.* | |

| Estimated date of first PFAS exposure to your water system (be as specific as possible). | |
|---|---|
| What is the basis for the estimate above? | |

## Aqueous Film-Forming Foam (AFFF) Products Liability Litigation (MDL 2873)
## Supplemental Claims Form

### SECTION 3. PFAS TESTING RESULTS

#### PFOA CONTAMINATION TESTING

Please enter the below information to indicate **PFOA** Qualifying Test Result.

**See Addendum X to provide information for each additional Water Source.**

| | |
|---|---|
| Highest historical PFOA concentration in lab-issued documentation: | |
| Date of Sampling: | |
| Company of the person who took the sample: | |
| Date of analysis: | |
| Highest historical PFOA concentration converted to parts per trillion (PPT): | _____ PPT |
| Name of laboratory that performed the analysis: | |

| Facility address of laboratory that performed the analysis: | Street/PO Box | | |
|---|---|---|---|
| | City | State | Zip |

| What state or federal agency approved analytical method was used to measure the PFAS concentrations of the Impacted Water Source (e.g., EPA Method 537.1, EPA Method 537M)? | |
|---|---|

#### PFOS CONTAMINATION TESTING

Please enter the below information to indicate **PFOS** Qualifying Test Result.

**See Addendum X to provide information for each additional Water Source.**

| | |
|---|---|
| Highest historical PFOS concentration in lab-issued documentation: | |
| Date of Sampling: | |
| Company of the person who took the sample: | |
| Date of analysis: | |
| Highest historical PFOS concentration converted to parts per trillion (PPT): | _____ PPT |

| | |
|---|---|
| Name of laboratory that performed the analysis: | |

| Facility address of laboratory that performed the analysis: | Street/PO Box | | |
|---|---|---|---|
| | City | State | Zip |

| | |
|---|---|
| What state or federal agency approved analytical method was used to measure the PFAS concentrations of the Impacted Water Source (e.g., EPA Method 537.1, EPA Method 537M)? | |

## *Aqueous Film-Forming Foam (AFFF) Products Liability Litigation (MDL 2873)* Supplemental Claims Form

### OTHER  PFAS CONTAMINATION TESTING

Please enter the below information to indicate **other PFAS analyte** Qualifying Test Result.

**See Addendum X to provide information for each additional Water Source.**

| | |
|---|---|
| Highest historical concentration of **one** other PFAS analyte in lab-issued documentation: | |
| Date of Sampling: | |
| Company of the person who took the sample: | |
| Date of analysis: | |
| Highest historical concentration of one other PFAS analyte concentration converted to parts per trillion (PPT): | _____ PPT |
| Name of laboratory that performed the analysis: | |

| Facility address of laboratory that performed the analysis: | Street/PO Box | | |
|---|---|---|---|
| | City | State | Zip |

| | |
|---|---|
| What state or federal agency approved analytical method was used to measure the PFAS concentrations of the Impacted Water Source (e.g., EPA Method 537.1, EPA Method 537M)? | |

### SECTION 4. CERTIFICATION AND SIGNATURE

By signing this Claims Form, Authorized Representative represents and warrants the following on behalf of the Settlement Class Member:

· The Authorized Representative has authority to submit a claim and to release all Released Claims on behalf of the Settlement Class Member and all other Persons who are Releasing Persons by virtue of their relationship or association with the Settlement Class Member.

· The Settlement Class Member has tested each of its Water Sources for PFAS.

· The Settlement Class Member authorizes the Claims Administrator and/or Special Master to provide all Claims Form information, including PFAS test result details, to the relevant Parties as required by the terms of the Settlement Agreement.

· The Settlement Class Member has consulted with any other entity that has incurred costs in connection with efforts to removed PFAS from, or prevent PFAS from entering, Settlement Class Member's Public Water System, and that Settlement Class Member's claim is on behalf of any such other entity.

I declare under penalty of perjury subject to 28 U.S.C. § 1746 that all of the information provided within this Supplemental Claims Form and its attachments are true and correct to the best of my knowledge, information, and belief.

| | |
|---|---|
| Authorized Representative's Signature: | |
| Authorized Representative's Printed Name: | |

Executed this _____day of _____ at _____(County), _____ (State).

**DOCUMENTATION      REQUIREMENTS**

Please submit **ALL** documentation reflecting the information provided above including the following:
1. Lab-issued documentation demonstrating historical maximum detections of PFOA, PFOS, and other PFAS (including chain of custody document)

## *Aqueous Film-Forming Foam (AFFF) Products Liability Litigation (MDL 2873)*
## Special Needs Claims Form

### CLAIM SUBMISSION DEADLINE: 45 DAYS AFTER SUBMITTING THE ACTION FUND CLAIM FORM

### INSTRUCTIONS
*All capitalized terms no otherwise defined herein shall have the meanings set forth in the Settlement Agreement*
*available for review at www.PFASWaterSettlement.com*

Please follow the instructions below to submit a Special Needs claim for the AFFF Products Liability Litigation Settlement Program. A completed copy of this Special Needs Claims Form must be submitted no later than 45 days after submitting the Action Fund Claim Form. Late Special Needs Claims Forms will not be considered.

A Public Water System (PWS) may receive compensation for actions taken to reduce or eliminate the risk of supplying contaminated water. Special Needs may include, but are not limited to, drilling new wells, purchasing supplemental water, taking wells offline or rerouting pipes. Detailed supporting documentation must be submitted.

TO RECEIVE BENEFITS FROM THIS SETTLEMENT, YOU MUST PROVIDE ALL OF THE REQUIRED (*) INFORMATION BELOW AND YOU MUST SIGN THIS CLAIMS FORM. THIS CLAIMS FORM SHOULD ONLY BE USED IF A CLAIM IS BEING MAILED IN AND IS NOT BEING FILED ONLINE. YOU MAY ALSO FILE YOUR CLAIM ONLINE AT **www.PFASWaterSettlement.com.**

For any questions about this Special Needs Claims Form, you may contact a Claim Representative at 1-855-714-4341 or info@pfaswatersettlement.com. Claims Forms submitted by mail should be sent to the Claims Administrator at the following address:

AFFF Public Water System Claims
PO Box 4466
Baton Rouge, LA 70821

### SECTION 1. PUBLIC WATER SYSTEM (PWS) INFORMATION

| | |
|---|---|
| Public Water System (PWS) Name | |
| PWS Identification Number (PWSID) | Employer Identification Number __ __ - __ __ __ __ __ __ __ |

### SECTION 2. SPECIAL NEEDS CLAIM INFORMATION

### NARRATIVE OF NEED/ISSUE

| | |
|---|---|
| **Total Amount Claimed** | $ _____ . ___ ___ |

# *Aqueous Film-Forming Foam (AFFF) Products Liability Litigation (MDL 2873)*
# Special Needs Claims Form

## SECTION 3. CERTIFICATION AND SIGNATURE

By signing this Claims Form, Authorized Representative represents and warrants the following on behalf of the Class Member:

· The Authorized Representative has authority to submit a claim and to release all Released Claims on behalf of the Class Member and all other Persons who are Releasing Persons by virtue of their relationship or association with the Class Member.

· The Class Member has tested each of its Water Sources for PFAS.

· The Class Member authorizes the Claims Administrator and/or Special Master to provide all Claims Form information, including PFAS test result details, to the relevant Parties as required by the terms of the Settlement Agreement.

· The Class Member has consulted with any other entity that has incurred costs in connection with efforts to removed PFAS from, or prevent PFAS from entering, Class Member's Public Water System, and that Class Member's claim is on behalf of any such other entity.

I declare under penalty of perjury subject to 28 U.S.C. § 1746 that all of the information provided within this Claims Form and its attachments are true and correct to the best of my knowledge, information, and belief.

| | |
|---|---|
| Authorized Representative's Signature: | |
| Authorized Representative's Printed Name: | |

Executed this _____day of _____ at _____(County), _____ (State).

### DOCUMENTATION REQUIREMENTS

Please submit **ALL** documentation reflecting the information provided above.

# Aqueous Film-Forming Foam (AFFF) Products Liability Litigation (MDL 2873)
## Interrelated Drinking Water System (IDWS) Addendum

### INSTRUCTIONS

**Please complete and submit the information below for <u>EACH</u> Water Source included in an interrelated Drinking Water system (IDWS).**

<u>Note</u> *: The Class as defined is composed of Public Water System, or "PWS". The term "Public Water System" as defined in the Settlement Agreement, includes owners, operators and/or funders of PWS that meet the Class definition. Those owners, operators and/or funders are in an interrelated Drinking Water system relationship with the PWS they own, operate and/or fund. Additionally, wholesalers and retailers are in an interrelated Drinking Water system relationship, as explained in the Parties' Joint Interpretive Guidance. Without limiting the potential kinds of interrelated Drinking Water system relationships, this form is for entities who wish to explain how their Claims may relate to or be understood within the context of another entity's Claims.*

<u>Please complete this Addendum for each Water Source included in an IDWS</u>*. For those Water Sources not included in an IDWS, the PWS should complete and submit information for each of those Water Sources via the Public Water System Settlement Claims Form and Addendum X as applicable.*

| | |
|---|---|
| **Name or description of the Water Source.**<br><u>Note</u> *: This is the name or unique identifier listed on the testing laboratory chain of custody document.* | |

| TREATMENT RESPONSIBILITY QUESTIONS (CHECK YES OR NO) | YES | NO |
|---|---|---|
| **Is the PWS submitting information in cooperation with its IDWS partner(s) (i.e. owners, operators, funders, wholesalers, retail customers, etc.) that explains the relationship and expresses the joint view of the proper division of an Allocated Amount for this Water Source?**<br><u>Note</u> *: Each IDWS partner should provide documentation of the terms of such Joint Agreement.* | | |
| Is the PWS responsible for costs associated with treatment and/or remediation of PFAS within this Water Source? | | |

### INTERRELATED DRINKING WATER SYSTEM (IDWS) DETAILS

In the following table, please list your IDWS partner(s) (i.e. owners, operators, funders, wholesalers, retail customers, or others as defined as "Releasing Parties", etc.) and the nature of your relationship(s) with regards to this Water Source. The PWS and any IDWS partners of this Water Source must provide supporting documentation which (1) describes how any Allocated Amount should be shared and/or (2) explains the responsibility borne by the PWS for any capital and/or O&M costs PFAS treatment.

*Example:* *The PWS claimant identifies Regional Water as their wholesaler partner with a 50% ownership share in the Allocated Amount for this Water Source via either joint agreement or contractual terms demonstrating responsibility to treat PFAS for the Water Source.*

| PARTNER NAME | PARTNER PWS ID (If available) | PWS'S RELATIONSHIP TO IDWS PARTNER | CLAIMED SHARE (%) OF ALLOCATED AMOUNT FOR THIS WATER SOURCE |
|---|---|---|---|
| <u>Ex.</u>: Regional Water | AB1234567 | Retail Customer of Regional Water | 50% |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

### DOCUMENTATION REQUIREMENTS

Please submit <u>**ALL**</u> documentation reflecting the information provided above including the following:
1. Documentation supporting a joint submission of two (or more) Class Members that explains their relationship and expresses their joint view about the proper division of an Allocated Amount between them.
2. Documentation, such as a contract which provides details regarding how an Allocated Amount should be shared or otherwise explaining what responsibility is borne by each Class Member for any capital and/or O&M costs of treating PFAS.
3. Additional information, as deemed necessary by the Claims Administrator.

# EXHIBIT C

## EXHIBIT C: ESCROW AGREEMENT

## CUSTODIAN/ESCROW AGREEMENT

This Custodian/Escrow Agreement dated May 20, 2024, is made among (i) BASF Corporation ("BASF"), (ii) Michael A. London and the law firm of Douglas & London, 59 Maiden Lane, 6th Floor, New York, NY 10038; Scott Summy and the law firm of Baron & Budd, 3102 Oak Lawn Avenue, Suite 1100, Dallas, Texas, 75219; Paul J. Napoli and the law firm of Napoli Shkolnik, 1302 Avenida Ponce de Leon, San Juan, Puerto Rico 00907; Joseph Rice and the law firm of Motley Rice LLC, 28 Bridgeside Boulevard, Mt. Pleasant, South Carolina 29464 (collectively, "Class Counsel"), Matthew Garretson (the "Special Master") and (iii) **THE HUNTINGTON NATIONAL BANK**, as Custodian/Escrow agent ("Custodian/Escrow Agent").

### Recitals

A.        This Custodian/Escrow Agreement governs the deposit, investment and disbursement of the Settlement Funds pursuant to the Settlement Agreement (the "Settlement Agreement") dated May 20, 2024 attached hereto as Exhibit B, entered into by BASF and certain other parties thereto, which has been submitted for approval to the United States District Court for the District of South Carolina, Charleston Division (the "Court"), in the multi-district litigation captioned *In Re: Aqueous Film-Forming Foams Products Liability Litigation*, MDL No. 2:18-mn-2873 (D.S.C.) (the "MDL").

B.        Pursuant to the terms of the Settlement Agreement, BASF has agreed to pay or cause to be paid the Settlement Amount of $312,500,000 to the Qualified Settlement Fund in full settlement of the claims brought against BASF in the MDL and certain other Litigation. BASF has also agreed to pay or cause to be paid a separate payment for notice and administrative costs of $4,000,000 (the "Initial Payment") to the Qualified Settlement Fund pursuant to the terms of the Settlement Agreement.

C.        The Custodian/Escrow Account established pursuant to this Custodian/Escrow Agreement is intended to qualify as a "qualified settlement fund" within the meaning of Treasury Regulations §1.468B-1 *et seq.* for all U.S. federal and applicable state and local income tax purposes.

D.        The Settlement Amount is to be deposited into the Custodian/Escrow Account and used to satisfy payments to Class Members, payments for attorneys' fees and expenses approved by the Court, payments of tax liabilities and expenses of the Custodian/Escrow Account and certain other costs, in each case, subject to the terms and conditions of the Settlement Agreement and this Custodian/Escrow Agreement.

E.        The Court has approved the Custodian/Escrow Agent and this Custodian/Escrow Agreement.

F.        Unless otherwise defined herein, all capitalized terms shall have the meaning ascribed to them in the Settlement Agreement.

**Agreement**

1.    Appointment of Custodian/Escrow Agent.  The Custodian/Escrow Agent is hereby appointed to receive, deposit and disburse the Settlement Amount upon the terms and conditions provided in this Custodian/Escrow Agreement, the Settlement Agreement and any other exhibits or schedules later annexed hereto and made a part hereof.  The Parties agree that the Custodian/Escrow Agent shall be the "Escrow Agent" as defined in the Settlement Agreement, this Custodian/Escrow Agreement shall be the "Escrow Agreement" as such term is defined in the Settlement Agreement, and the Custodian/Escrow Account shall be the "Qualified Settlement Fund" as such term is defined in the Settlement Agreement.

2.    The Custodian/Escrow Account.  The Custodian/Escrow Agent shall establish and maintain a custodian/escrow account titled as [●] (the "Custodian/Escrow Account").  Pursuant to the Settlement Agreement, BASF shall cause the Initial Payment to be deposited into the Custodian/Escrow Account within the latest of (i) ten (10) "Business Days" (hours and days of the week that Custodian/Escrow Agent is open for business) following entry of the Court's order preliminarily approving the settlement (the "Preliminary Approval"), (ii) July 15, 2024, and (iii) seven (7) Business Days following the establishment by the Custodian/Escrow Agent of the Custodian/Escrow Account and the Court approval of the Custodian/Escrow Agent and this Custodian/Escrow Agreement; provided that if the Custodian/Escrow Agent has not provided to BASF wire transfer instructions and any other documentation reasonably necessary to facilitate payment of the Settlement Amount by the date seven (7) Business Days before the deadline for payment specified herein, BASF shall not be obligated to pay such amount until seven (7) Business Days after receiving such wire transfer instructions and documentation.  Pursuant to the Settlement Agreement, BASF shall cause the Second Payment of the Settlement Amount to be deposited into the Custodian/Escrow Account on March 1, 2025. The Settlement Funds shall be held and invested on the terms and subject to the limitations set forth herein, and shall be released by Custodian/Escrow Agent in accordance with the terms and conditions hereinafter set forth and set forth in the Settlement Agreement.

In no event shall BASF have any liability whatsoever, whether to the Custodian/Escrow Agent, Class Counsel, any Class Member (as defined in the Settlement Agreement) or otherwise, with respect to the Settlement Amount or the Settlement Funds once the Settlement Amount is paid in full to the Custodian/Escrow Account in accordance with the Settlement Agreement and receipt of payment is verified by Custodian/Escrow Agent.

3.    Investment of Settlement Funds.  The Custodian/Escrow Agent shall invest the Settlement Funds exclusively in interest-bearing instruments or accounts backed by the full faith and credit of the United States Government or fully insured by the United States Government or an agency thereof, including a U.S. Treasury Fund or a bank account that is either (a) fully insured by the Federal Deposit Insurance Corporation ("FDIC") or (b) secured by instruments backed by the full faith and credit of the United States Government, in each case, as further provided in this Section 3. Prior to the Effective Date, unless otherwise mutually agreed by the parties, the Custodian/Escrow Agent shall invest the Settlement Funds in compliance with the preceding sentence as follows: (i) except for $3,000,000 covered in clause (ii), upon receipt of the Settlement

Amount, exclusively in successive U.S. Treasury bonds or bills, each with a thirty-day maturity and (ii) $3,000,000 held in immediately available funds. Following the Effective Date, unless otherwise mutually agreed by the Custodian/Escrow Agent, Class Counsel and the Special Master, the Custodian/Escrow Agent shall invest the Settlement Funds, in compliance with this Section 3. To the extent the investment is not otherwise specified herein, the Settlement Funds will be invested conservatively in a manner designed to assure timely availability of funds in accordance with the distribution schedule contemplated by the Settlement Agreement, protection of principal, and avoidance of concentration risk, and shall be invested only in short-term instruments or accounts. To the extent the investment is not otherwise specified herein, the Settlement Funds shall at all times remain available for distribution in accordance with the terms hereof and the Settlement Agreement.

BASF shall not bear any responsibility for or liability related to the investment of the Settlement Funds by the Custodian/Escrow Agent.

4.     Custodian/Escrow Funds Subject to Jurisdiction of the Court.  The Qualified Settlement Fund shall remain subject to the jurisdiction of the Court until such time as the Settlement Funds shall have been distributed, pursuant to the terms of the Settlement Agreement and order(s) of the Court contemplated thereby.

5.     Tax Treatment & Reporting.  The Custodian/Escrow Account shall be structured and operated at all times in a manner such that it qualifies as a "qualified settlement fund" within the meaning of Treasury Regulation §1.468B-1.  The Special Master, BASF, and any other relevant parties shall cooperate to timely make such elections as necessary or advisable to fulfill the requirements of such Treasury Regulation, including making any "relation-back election" under Treasury Regulation § 1.468B-1(j)(2) required to treat the Custodian/Escrow Account as a qualified settlement fund from the earliest permitted date.  For purposes of §468B of the Internal Revenue Code of 1986, as amended (the "Code"), and the Treasury Regulations promulgated thereunder, the "administrator" of the qualified settlement fund shall be the Special Master.  The Special Master shall timely and properly prepare, deliver to all necessary parties for signature, and file all necessary documentation for any elections required under Treas. Reg. §1.468B-1.  The Special Master shall timely and properly prepare and file or cause to be prepared and filed any information and other tax returns necessary or advisable with respect to the Custodian/Escrow Account and the distributions and payments therefrom including without limitation the returns described in Treas. Reg. §1.468B- 2(k), and to the extent applicable Treas. Reg. §1.468B-2(1), and as further provided in the Settlement Agreement.  The "taxable year" of the Custodian/Escrow Account shall be the "calendar year" as such terms are defined in Section 441 of the Code.  The Custodian/Escrow Account shall use the accrual method of accounting as defined in Section 446(c) of the Code.

6.     Tax Payments. All Taxes and Tax Expenses (each as defined in the Settlement Agreement) with respect to the Custodian/Escrow Account, as more fully described in the Settlement Agreement, shall be treated as and considered to be a cost of administration of the Custodian/Escrow Account and the Custodian/Escrow Agent shall timely pay such Taxes and Tax Expenses out of the

Settlement Funds without prior order of the Court, as directed by the Special Master and in accordance with the Settlement Agreement. The Special Master shall be responsible for the timely and proper preparation and delivery of any necessary documentation for signature by all necessary parties, and the timely filing of all tax returns and other tax reports required by law with respect to the Custodian/Escrow Account. The Special Master shall be responsible for ensuring that the Custodian/Escrow Account complies with all withholding requirements (including by instructing the Custodian/Escrow Agent to withhold any required amounts) with respect to payments made by the Custodian/Escrow Account. The Custodian/Escrow Agent, as directed by the Special Master, will deduct and withhold any Taxes required to be deducted and withheld by applicable law, including but not limited to required withholding in the absence of proper Tax documentation, and shall remit such Taxes to the appropriate authorities in accordance with applicable law. Any amounts deducted or withheld by the Custodian/Escrow Agent (or any other withholding agent) with respect to payments made by the Custodian/Escrow Account shall be treated for all purposes as though such amounts had been distributed to the Person in respect of which such deduction or withholding was made. The Custodian/Escrow Agent shall not be responsible for any income reporting to the IRS with respect to income earned on the Settlement Funds, however the Custodian/Escrow Agent shall comply with all instructions received from the Special Master regarding the withholding of any amount on account of Taxes and shall cooperate with other requests made by the Special Master to enable the Special Master to fulfill its responsibilities under the Settlement Agreement with respect to tax matters.

7.   Disbursement Instructions

(a)   The Custodian/Escrow Agent shall hold and release the Settlement Funds as follows:

i.   Solely to the extent the Custodian/Escrow Agent has previously received a notice from an Authorized Representative of BASF confirming the occurrence of the Effective Date: upon receipt of a Special Master Release Instruction with respect to the Settlement Funds, the Custodian/Escrow Agent shall promptly, but in any event within two (2) Business Days after receipt of a Special Master Release Instruction, disburse all or part of the Settlement Funds in accordance with such Special Master Release Instruction. "Special Master Release Instruction" means written instruction executed by an Authorized Representative of the Special Master and by an Authorized Representative of Class Counsel directing the Custodian/Escrow Agent to disburse all or a portion of the Settlement Funds to pay, disburse, reimburse, hold, waive, or satisfy any monetary obligation provided for or recognized under any of the terms of the Settlement Agreement.

ii.   Upon receipt of a Joint Release Instruction with respect to the Settlement Funds, the Custodian/Escrow Agent shall promptly, but in any event within two (2) Business Days after receipt of a Joint Release

Instruction, disburse all or part of the Settlement Funds in accordance with such Joint Release Instruction. A "Joint Release Instruction" means the joint written instruction executed by an Authorized Representative of Class Counsel and by the necessary Authorized Representatives of BASF, directing the Custodian/Escrow Agent to disburse all or a portion of the Settlement Funds.

iii.  Upon receipt of a Termination Release Instruction with respect to the Settlement Funds, the Custodian/Escrow Agent shall promptly, but in any event within two (2) Business Days after receipt of a Termination Release Instruction, disburse all of the Settlement Funds in accordance with such Termination Release Instruction. The Custodian/Escrow Agent will act on such Termination Release Instruction without further inquiry. "Termination Release Instruction" means written instruction executed by the necessary Authorized Representatives of BASF directing the Custodian/Escrow Agent to disburse all or a portion of the Settlement Funds to BASF or their respective designees pursuant to Paragraphs 9.11, 9.12 and/or 10.4 of the Settlement Agreement.

(b)  Any instructions setting forth, claiming, containing, objecting to, or in any way related to the transfer or distribution of any funds on deposit in the Custodian/Escrow Account under the terms of this Agreement must be in writing, executed by the appropriate Party or Parties (pursuant to Section 7(a)) as evidenced by the signatures of the person or persons set forth on Exhibit A-1, Exhibit A-2, and Exhibit A-3 (the "Authorized Representatives") and delivered to the Custodian/Escrow Agent. In the event funds transfer instructions are given (other than in writing at the time of execution of this Agreement), whether in writing, by facsimile, e-mail, telecopier or otherwise, Custodian/Escrow Agent will seek confirmation of such instructions by telephone call back when new wire instructions are established to the applicable Authorized Representatives only if it is reasonably necessary, and Custodian/Escrow Agent may rely upon the confirmations of anyone purporting to be the Authorized Representatives. To assure accuracy of the instructions it receives, Custodian/Escrow Agent may record such call backs.  If Custodian/Escrow Agent is unable to verify the instructions, or is not satisfied with the verification it receives, it shall not execute the instruction until all issues have been resolved.  The persons and telephone numbers for call backs may be validly changed only in a writing that (i) is signed by the party changing its notice designations, and (ii) is received and acknowledged by Custodian/Escrow Agent.  If it is determined that the transaction was delayed or erroneously executed as a result of Custodian/Escrow Agent's error, Custodian/Escrow Agent's sole obligation is to pay or refund the amount of such error and any amounts as may be required by applicable law.  Any claim for interest payable will be at

the then-published rate for United States Treasury Bills having a maturity of 91 days.

(c)     Except in the case of gross-negligence, willful misconduct or bad faith, the Custodian/Escrow Agent shall not be liable for any losses, costs or expenses arising directly or indirectly from the Custodian/Escrow Agent's reliance upon and compliance with such instructions notwithstanding such instructions conflict or are inconsistent with a subsequent written instruction. The party providing electronic instructions agrees; (i) to assume all risks arising out of the use of such electronic methods to submit instructions and directions to the Custodian/Escrow Agent, including, without limitation, the risk of the Custodian/Escrow Agent acting on unauthorized instructions, and the risk of interception and misuse by third parties; (ii) that it is fully informed of the protections and risks associated with the various methods of transmitting instructions to the Custodian/Escrow Agent and that there may be more secure methods of transmitting instructions than the method(s) selected by the Custodian/Escrow Agent; and (iii) that the security procedures (if any) to be followed in connection with its transmission of instructions provide to it a commercially reasonable degree of protection in light of its particular needs and circumstances.

8.     Fees.  The Custodian/Escrow Agent shall be entitled to compensation for its services as stated in the fee schedule attached as Exhibit C. All fees and expenses of Custodian/Escrow Agent shall be paid solely from the Settlement Funds.  The Custodian/Escrow Agent may pay itself such fees from the Settlement Funds only after such fees have been approved for payment pursuant to a Joint Release Instruction. If Custodian/Escrow Agent is asked to provide additional services a separate agreement and fee schedule will be entered into.

9.     Duties, Liabilities and Rights of Custodian/Escrow Agent.  This Custodian/Escrow Agreement sets forth all of the obligations of Custodian/Escrow Agent, and no additional obligations shall be implied from the terms of this Custodian/Escrow Agreement or any other agreement, instrument or document.

(a)     Custodian/Escrow Agent may act in reliance upon any instructions, notice, certification, demand, consent, authorization, receipt, power of attorney or other writing delivered to it by the applicable Authorized Representatives, as provided herein, without being required to determine the authenticity or validity thereof or the correctness of any fact stated therein, the propriety or validity of the service thereof.  Custodian/Escrow Agent may act in reliance upon any signature which is reasonably believed by it to be genuine, and may assume that such person has been properly authorized to do so.

(b)     Custodian/Escrow Agent may consult with legal counsel of its selection in

the event of any dispute or question as to the meaning or construction of any of the provisions hereof or its duties hereunder, and it shall incur no liability and shall be fully protected to the extent Custodian/Escrow Agent acts in accordance with the reasonable opinion and instructions of counsel. Custodian/Escrow Agent shall have the right to reimburse itself for reasonable legal fees and reasonable and necessary disbursements and expenses actually incurred from the Custodian/Escrow Account only (i) upon a Joint Release Instruction or (ii) pursuant to an order of the Court.

(c)     The Custodian/Escrow Agent, or any of its affiliates, is authorized to manage, advise, or service any money market mutual funds in which any portion of the Settlement Funds may be invested.

(d)     Custodian/Escrow Agent is authorized to hold any treasuries held hereunder in its federal reserve account.

(e)     The Custodian/Escrow Agent will furnish monthly statements to the Parties setting forth the activity in the Custodian/Escrow Account.

(f)     Custodian/Escrow Agent shall not bear any risks related to the investment of the Settlement Funds in accordance with the provisions of paragraph 3 of this Custodian/Escrow Agreement.  The Custodian/Escrow Agent will be indemnified by the Settlement Funds, and held harmless against, any and all claims, suits, actions, proceedings, investigations, judgments, deficiencies, damages, settlements, liabilities and expenses (including reasonable legal fees and expenses of attorneys chosen by the Custodian/Escrow Agent) as and when incurred, arising out of or based upon any act, omission, alleged act or alleged omission by the Custodian/Escrow Agent or any other cause, in any case in connection with the acceptance of, or performance or non- performance by the Custodian/Escrow Agent of, any of the Custodian/Escrow Agent's duties under this Agreement, except as a result of the Custodian/Escrow Agent's bad faith, willful misconduct or gross negligence.

(g)     Upon distribution of all of the funds in the Custodian/Escrow Account pursuant to the terms of this Custodian/Escrow Agreement and any orders of the Court, Custodian/Escrow Agent shall be relieved of any and all further obligations and released from any and all liability under this Custodian/Escrow Agreement, except as otherwise specifically set forth herein.

(h)     In the event any dispute shall arise between the parties with respect to the disposition or disbursement of any of the assets held hereunder, the Custodian/Escrow Agent shall be permitted to interplead all of the assets held hereunder into the Court, and thereafter be fully relieved from any and

all liability or obligation with respect to such interpleaded assets. The parties further agree to pursue any redress or recourse in connection with such a dispute, without making the Custodian/Escrow Agent a party to same.

10.     Non-Assignability by Custodian/Escrow Agent.  Custodian/Escrow Agent's rights, duties and obligations hereunder may not be assigned or assumed without the written consent of the persons necessary for a Joint Release Instruction.

11.     Resignation of Custodian/Escrow Agent.  Custodian/Escrow Agent may, in its sole discretion, resign and terminate its position hereunder at any time following 120 days prior written notice to the parties to the Custodian/Escrow Agreement herein.  On the effective date of such resignation, Custodian/Escrow Agent shall deliver this Custodian/Escrow Agreement together with any and all related instruments or documents and all funds in the Custodian/Escrow Account to the successor Custodian/Escrow Agent, subject to this Custodian/Escrow Agreement.  If a successor Custodian/Escrow Agent has not been appointed prior to the expiration of 120 days following the date of the notice of such resignation, then Custodian/Escrow Agent may petition the Court for the appointment of a successor Custodian/Escrow Agent, or other appropriate relief. Any such resulting appointment shall be binding upon all of the parties to this Custodian/Escrow Agreement.

12.     Notices.  Notice to the parties hereto shall be in writing and delivered by hand-delivery, facsimile, electronic mail or overnight courier service, addressed as follows:

If to Class Counsel:     Michael A. London
Douglas & London, P.C. 59
Maiden Lane, 6th Floor
New York, New York 10038
mlondon@douglasandlondon.com

Paul J. Napoli
Napoli Shkolnik
1302 Avenida Ponce de Leon
San Juan, Puerto Rico 00907
PNapoli@NSPRLaw.com

Scott Summy
Baron & Budd
3102 Oak Lawn Avenue, Suite 1100
Dallas, Texas 75219
ssummy@baronbudd.com

                                                  Joseph Rice
Motley Rice LLC
28 Bridgeside Boulevard
Mt. Pleasant, South Carolina 29464
jrice@motleyrice.com

If to BASF:                          Matthew A. Holian
DLA Piper LLP (US)
33 Arch Street, 26th Floor
Boston, MA 02110
Matt.holian@dlapiper.com

John R. Wellschlager
DLA Piper LLP (US)
650 South Exeter Street, Suite 1100
Baltimore, MD 21202
John.wellschlager@dlapiper.com

If to Special Master:         Matthew Garretson
Wolf/Garretson LLC
P.O. Box 2806
Park City, UT 84060

If to Custodian/Escrow Agent:    Robyn Griffin
Senior Managing Director
National Settlement Team
The Huntington National Bank
One Rockefeller Plaza, 10th Floor
New York, NY 10020
Office: (312) 646-7288
Mobile: (646) 265-3817
Robyn.griffin@huntington.com

Susan Brizendine, Trust Officer
Huntington National Bank
7 Easton Oval – EA5W63
Columbus, OH 43219
Office: (614) 331-9804
Susan.brizendine@huntington.com

14.    <u>Patriot Act Warranties</u>. Section 326 of the USA Patriot Act (Title III of Pub. L. 107-56), as amended, modified or supplemented from time to time (the "Patriot Act"), requires financial institutions to obtain, verify and record information that identifies each person or legal entity that opens an account (the "Identification Information"). The parties to this

Custodian/Escrow Agreement agree that they will provide the Custodian/Escrow Agent with such Identification Information as the Custodian/Escrow Agent may request in order for the Custodian/Escrow Agent to satisfy the requirements of the Patriot Act.

15.     <u>Entire Agreement</u>.  This Custodian/Escrow Agreement, including all Schedules and Exhibits hereto, constitutes the entire agreement and understanding of the parties hereto.  Any modification of this Custodian/Escrow Agreement or any additional obligations assumed by any party hereto shall be binding only if evidenced by a writing signed by each of the parties hereto.  To the extent this Custodian/Escrow Agreement conflicts in any way with the Settlement Agreement, the provisions of the Settlement Agreement shall govern.

16.     <u>Governing Law</u>.  This Custodian/Escrow Agreement shall be governed by the law of the State of Delaware in all respects.  The parties hereto submit to the jurisdiction of the Court, in connection with any proceedings commenced regarding this Custodian/Escrow Agreement, including, but not limited to, any interpleader proceeding or proceeding Custodian/Escrow Agent may commence pursuant to this Custodian/Escrow Agreement for the appointment of a successor Custodian/Escrow Agent, and all parties hereto submit to the jurisdiction of such Court for the determination of all issues in such proceedings, without regard to any principles of conflicts of laws, and irrevocably waive any objection to venue or inconvenient forum.

17.     <u>Termination of Custodian/Escrow Account</u>.  The Custodian/Escrow Account will terminate after all funds deposited in it, together with all interest earned thereon, are disbursed in accordance with the provisions of the Settlement Agreement and this Custodian/Escrow Agreement.

18.     <u>Miscellaneous Provisions</u>.

(a)     <u>Counterparts</u>.  This Custodian/Escrow Agreement may be executed in one or more counterparts, each of which counterparts shall be deemed to be an original and all of which counterparts, taken together, shall constitute but one and the same Custodian/Escrow Agreement.

(b)     <u>Further Cooperation</u>.  The Parties hereto agree to do such further acts to execute and deliver such other documents as Custodian/Escrow Agent may reasonably request from time to time in connection with the administration, maintenance, enforcement or adjudication of this Custodian/Escrow Agreement.

(c)     <u>Electronic Signatures</u>.  The parties agree that the electronic signature (provided by the electronic signing service DocuSign initiated by the Custodian/Escrow Agent) of a party to this Escrow Agreement shall be as valid as an original signature of such party and shall be effective to bind such party to this Escrow Agreement. The parties agree that any electronically signed document shall be deemed (i) to be "written" or "in writing," (ii) to have been signed, and (iii) to constitute a record established

and maintained in the ordinary course of business and an original written record when printed from electronic files.

(d)    <u>Non-Waiver</u>. The failure of any of the parties hereto to enforce any provision hereof on any occasion shall not be deemed to be a waiver of any preceding or succeeding breach of such provision or any other provision.

[*Signature Page Follows*]

**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement as of the date first above written.

THE HUNTINGTON NATIONAL BANK, as Custodian/Escrow Agent

By: _____
       Robyn Griffin, Senior Managing Director

CLASS COUNSEL

By: _____

    Michael A. London
    Douglas & London, P.C.
    59 Maiden Lane, 6th Floor
    New York, NY 10038

By: _____

    Scott Summy
    Baron & Budd, P.C.
    3102 Oak Lawn Avenue
    Suite 1100
    Dallas Texas, 75219

By: _____

    Paul J. Napoli
    Napoli Shkolnik
    1302 Avenida Ponce de Leon
    San Juan, Puerto Rico 00907

By: _____

    Joseph Rice
    Motley Rice LLC
    28 Bridgeside Boulevard
    Mt. Pleasant, South Carolina 29464

THE SPECIAL MASTER

By: _____

    Name: Matthew Garretson

CLASS COUNSEL

By: _____

        Michael A. London
        Douglas & London, P.C.
        59 Maiden Lane, 6th Floor
        New York, NY 10038

By: _____

        Scott Summy
        Baron & Budd, P.C.
        3102 Oak Lawn Avenue
        Suite 1100
        Dallas Texas, 75219

By: _____

        Paul J. Napoli
        Napoli Shkolnik
        1302 Avenida Ponce de Leon
        San Juan, Puerto Rico 00907

By: _____

        Joseph Rice
        Motley Rice LLC
        28 Bridgeside Boulevard
        Mt. Pleasant, South Carolina 29464

THE SPECIAL MASTER

By: _____

        Name: Matthew Garretson

By: _Karen Killeen_____
      Karen Killeen
      Senior Vice President, General Counsel and Chief
      Compliance Officer North America
      BASF Corporation

By: _Karen Killeen_____

**Exhibit A-1**

**AUTHORIZED REPRESENTATIVES**

Each of the Authorized Representatives is, with respect to Class Counsel, authorized to issue instructions, confirm funds transfer instructions by callback, and effect changes in Authorized Representatives of Class Counsel, all in accordance with the terms of the Escrow Agreement.

**Class Counsel**

By:         */s/ Michael London*

Name:      Michael London

Law Firm:   Douglas & London

Email:      mlondon@douglasandlondon.com

Phone:      (917) 921-0193


By:         */s/ Scott Summy*

Name:      Scott Summy

Law Firm:   Baron & Budd

Email:      ssummy@baronbudd.com

Phone:      (214) 384-1913


By:         */s/ Paul Napoli*

Name:      Paul Napoli

Law Firm:   Napoli Shkolnik

Email:      pnapli@nsprlaw.com

Phone:      (516) 639-6909

By:        */s/ Joseph Rice*

Name:      Joseph Rice

Law Firm:  Motley Rice

Email:     jrice@motleyrice.com

Phone:     (843) 327-1996

**Exhibit A-2**

**AUTHORIZED REPRESENTATIVES**

Each of the Authorized Representatives is, with respect to BASF, authorized to issue instructions, confirm funds transfer instructions by callback, and effect changes in Authorized Representatives of BASF, all in accordance with the terms of the Escrow Agreement.

**BASF**

By:        */s/ Matthew A. Holian*

Name:      Matthew A. Holian

Law Firm:  DLA Piper LLP (US)

Email:     Matt.holian@dlapiper.com

Phone:     (617) 406-6009


By:        */s/ John R. Wellschlager*

Name:      John R. Wellschlager

Law Firm:  DLA Piper LLP (US)

Email:     John.wellschlager@dlapiper.com

Phone:     (410) 580-4281

**Exhibit A-3**

## AUTHORIZED REPRESENTATIVES

Each of the Authorized Representatives is, with respect to Special Master Matthew Garretson, authorized to issue instructions, confirm funds transfer instructions by callback, and effect changes in Authorized Representatives of Matthew Garretson, all in accordance with the terms of the Escrow Agreement.

**Matthew Garretson**

By: _____

Name: **Matthew L. Garretson**

Law Firm: **The Garretson Law Firm, LLC**

Email: **Matt@GarretsonTeam.com**

Phone: **513-300-9867**


By: _____

Name: _____

Law Firm: _____

Email: _____

Phone: _____


By: _____

Name: _____

Law Firm: _____

Email: _____

Phone: _____

**Exhibit B**

**Settlement Agreement**

**Exhibit C**

**Fees of Custodian/Escrow Agent**

| | |
|---|---|
| **Acceptance Fee:** | **Waived** |

The Acceptance Fee includes the review of the Custodian/Escrow Agreement, acceptance of the role as Custodian/Escrow Agent, establishment of Custodian/Escrow Account(s), and receipt of funds.

| | |
|---|---|
| **Annual Administration Fee:** | **Waived** |

The Annual Administration Fee includes the performance of administrative duties associated with the Custodian/Escrow Account including daily account management, generation of account statements to appropriate parties, and disbursement of funds in accordance with the Custodian/Escrow Agreement. Administration Fees are payable annually in advance without proration for partial years.

| | |
|---|---|
| **Out of Pocket Expenses:** | **Waived** |

Out of pocket expenses include postage, courier, overnight mail, wire transfer, and travel fees.

# EXHIBIT D

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | |
|---|---|
| **IN RE: AQUEOUS FILM-FORMING FOAMS PRODUCTS LIABILITY LITIGATION** | MDL No. 2:18-mn-2873-RMG <br><br> **This Document relates to**: <br><br> *City of Camden, et al., v. BASF Corporation,* <br> No. 2:24-cv-03174-RMG |

**NOTICE OF PROPOSED CLASS ACTION SETTLEMENT AND**
**COURT APPROVAL HEARING**

TO: All Active Public Water Systems in the United States of America that have one or more Impacted Water Sources as of May 15, 2024.

> **A FEDERAL COURT APPROVED THIS NOTICE. PLEASE READ THIS NOTICE CAREFULLY, AS THE PROPOSED SETTLEMENT DESCRIBED BELOW MAY AFFECT YOUR LEGAL RIGHTS AND PROVIDE YOU WITH POTENTIAL BENEFITS. THIS IS *NOT* A NOTICE OF A LAWSUIT AGAINST YOU OR A SOLICITATION FROM A LAWYER.**

**All capitalized terms not otherwise defined herein shall have the meanings set forth in the Settlement Agreement, available for review at www.PFASWaterSettlement.com.**

    **I.**       **WHAT IS THE PURPOSE OF THIS NOTICE?**

The purpose of this Notice is (i) to advise you of a proposed settlement (referred to as the "Settlement") that has been reached with the defendant, BASF Corporation ("BASF" or "Defendant") in the above-captioned lawsuit (the "Action") pending in the multi-district litigation in the United States District Court for the District of South Carolina (the "Court"); (ii) to summarize your rights in connection with the Settlement; and (iii) to inform you of a Court hearing to consider whether to grant final approval of the Settlement, to be held on DATE at TIME, before the Honorable Richard M. Gergel, United States District Judge of the United States District Court for the District of South Carolina, located at 85 Broad Street, Charleston, South Carolina 29401.

2

**If you received this Notice about the proposed Settlement in the mail, then you have been identified as a potential Class Member according to the Parties' records.**
**Please read this Notice carefully.**

## II.     WHAT IS THE ACTION ABOUT?

Class Representatives are Active Public Water Systems that have filed actions against BASF and other defendants, which actions are currently pending in the above-referenced multidistrict litigation ("MDL").

Class Representatives have alleged that they have suffered harm resulting from the presence of PFAS in Drinking Water and/or the need to monitor for the presence of PFAS in Drinking Water, and that BASF is liable for damages and other forms of relief to compensate for such harm and costs.

In addition to the MDL, certain other cases asserting Released Claims are pending against BASF (collectively with the MDL, the "Litigation").

There are numerous defendants in addition to BASF in the MDL and the cases that comprise the Litigation. Those other defendants are not part of this Settlement Agreement. The Class Representatives and Class Members will remain able to seek separate and additional PFAS-related recoveries from those other defendants in addition to the Settlement Funds here.

BASF denies the allegations in the Litigation and all other allegations relating to the Released Claims; denies that it has any liability to Class Representatives, the Settlement Class, or any Class Member for any Claim of any kind; and would assert a number of legal and factual defenses against such Claims if they were litigated to conclusion (including against certification of any purported class for litigation purposes).

This Notice should not be understood as an expression of any opinion by the Court as to the merits of the Class Representatives' Claims or the Defendant's defenses.

## III.     WHO IS PART OF THE PROPOSED SETTLEMENT?

The Class Representatives and BASF have entered into the Settlement Agreement to resolve Claims relating to PFAS contamination of Drinking Water in Public Water Systems. The Court has preliminarily approved the Settlement Agreement as fair, reasonable, and adequate. The Court will hold a Final Fairness Hearing, as described below, to consider whether to grant final approval of the Settlement.

**The Settlement Class is defined as follows:**

**Every Active Public Water System in the United States of America that has one or more Impacted Water Sources as of May 15, 2024.**

3

Not all Active Public Water Systems are potential Class Members; specifically excluded from the Settlement Class are:

i.  Any privately owned well that provides water only to its owner's (or its owner's tenant's) individual household and any other system for the provision of water for human consumption that is not a Public Water System.

ii.  Non-Transient Non-Community Water Systems serving 3,300 or fewer people;

iii.  Transient Non-Community Water Systems of any size;

iv.  Any Public Water System that is owned by a State government and lacks independent authority to sue and be sued.

v.  Any Public Water System that is owned by the federal government and lacks independent authority to sue and be sued.

Per the Settlement Agreement, "Public Water System" means: a system for the provision to the public of water for human consumption through pipes or other constructed conveyances, if such system has at least fifteen (15) service connections or regularly serves an average of at least twenty-five (25) individuals daily at least sixty (60) days out of the year, consistent with the use of that term in the Safe Drinking Water Act 42 U.S.C § 300f(4)(A) and 40 C.F.R. Part 141. The term "Public Water System" includes (i) any collection, treatment, storage, and distribution facilities under control of the operator of such system and used primarily in connection with such system, and (ii) any collection or pretreatment storage facilities not under such control which are used primarily in connection with such system.  Solely for purposes of this Settlement Agreement, the term "Public Water System" refers to a Community Water System of any size or a Non-Transient Non-Community Water System that serves more than 3,300 people, according to SDWIS, the owner and/or operator of such Public Water Systems, or any Person (but not any financing or lending institution) that has legal authority or responsibility (by statute, regulation, other law, or contract) to fund or incur financial obligations for the design, engineering, installation, operation, or maintenance of any facility or equipment that  treats, filters, remediates, or manages water that has entered or may enter Drinking Water or any Public Water System.  It is the intention of this Agreement that the definition of "Public Water System" be as broad, expansive, and inclusive as possible.

Community Water System means a Public Water System that serves at least fifteen (15) service connections used by year-round residents or regularly serves at least twenty-five (25) year-round residents, consistent with the use of that term in the Safe Drinking Water Act, 42 U.S.C. § 300f(15), and 40 C.F.R. Part 141.  Included in this definition are the owner and/or operator of such a system.

Non-Transient Non-Community Water System means a Public Water System that is not a Community Water System and that regularly serves at least twenty-five (25) of the same persons over six (6) months per year, consistent with the use of that term in 40 C.F.R. Part 141. Included in this definition are the owner and/or operator of such a system.

4

Transient Non-Community Water System means a Public Water System that is not a Community Water System and that does not regularly serve at least twenty-five (25) of the same persons over six (6) months per year, consistent with the use of that term in 40 C.F.R. Part 141. Included in this definition are the owner and/or operator of such a system.

SDWIS means the U.S. EPA Safe Drinking Water Information System Federal Reporting Services system, as of May 15, 2024.

## IV.    WHAT ARE THE KEY TERMS OF THE PROPOSED SETTLEMENT?

The key terms of the proposed Settlement are as follows.

1.    *Settlement Amount.* BASF has agreed to pay $312,500,000 (the "Settlement Amount"), subject to final approval of the Settlement by the Court and certain other conditions specified in the Settlement Agreement. BASF shall additionally pay $4,000,000 (the "Initial Payment") to cover costs incurred by the Notice Administrator in the course of executing the Notice Plan. Together, these payments from BASF constitute the "Settlement Funds." Payments to Qualifying Class Members will be referred to as "Settlement Awards."  In no event shall BASF be required under the Settlement Agreement to pay any amounts above the Settlement Funds.  Any fees, costs, expenses, or incentive awards payable under the Settlement Agreement shall be paid out of, and shall not be in addition to, the Settlement Funds.

2.    *Settlement Benefit.* Each Class Member that has not excluded itself from the Settlement Class will be eligible to receive a settlement check(s) from the Claims Administrator based on the Allocation Procedures developed by Class Counsel, which are subject to final approval by the Court as fair and reasonable.

3.    *Settlement Administration.* The Court has appointed a Special Master and Claims Administrator pursuant to Rule 53 of the Federal Rules of Civil Procedure (FRCP) to oversee the allocation of the Settlement Funds.  They will adhere to their duties set forth herein and in the Settlement Agreement.  The Special Master will generally oversee the Claims Administrator and make any final decision(s) related to any appeals by Qualifying Class Members or BASF and any ultimate decision(s) presented by the Claims Administrator.  The Claims Administrator will perform the actual modeling, allocation, and payment distribution functions.  The Claims Administrator will seek assistance from the Special Master when needed.  The Claims Administrator may also seek the assistance of the Class Counsel's consultants who assisted in providing guidance in designing the Allocation Procedures. The Opt Out Administrator is in charge of the Opt Out portal and will track and report on all Requests for Exclusion received.

4.    *Allocation Procedures Overview.* The Allocation Procedures (attached as Exhibit A to the Settlement Agreement) were designed to fairly and equitably allocate the Settlement Funds among Qualifying Class Members to resolve PFAS contamination of Drinking Water in Public Water Systems in such a way that reflects factors used in designing a water treatment system in connection with such contamination.  The volume of impacted water and the degree of impact are the main factors in

5

calculating the cost of treating PFAS; the Allocation Procedures use formulas to arrive at the amounts due to equitably compensate Qualifying Class Members for PFAS-related treatment.

     **5.**     ***Claims Form Process.***  The Claims Administrator will verify that each entity that submits a Claim Form is a Qualifying Class Member.

- o   A Qualifying Class Member is an Active Public Water System in the United States that has one or more Impacted Water System as of May 15, 2024.  Each Qualifying Class Member must test each of its Water Sources for PFAS; request from the laboratory that performs the analyses all analytical results, including the actual numeric values of all analytical results; and submit or cause the testing laboratory to submit detailed PFAS test results to the Claims Administrator.  Claims Form(s) must be submitted by the dates specified below and on the Settlement website, available at www.PFASWaterSettlement.com.  The Claims Administrator will establish three separate funds for the benefit Qualifying Class Members.  Such Class Members will be eligible for compensation from at least one and potentially more of these funds.  These funds and the criteria the Claims Administrator will use to determine the amount each Qualifying Class Member will receive from them are fully described in the Allocation Procedures in Exhibit A to the Settlement Agreement.

     The initial step for establishing Settlement Class eligibility for compensation from the Settlement Funds is the completion of the relevant Claims Form.  The term "Claims Form" may refer to any of four separate forms:

1. Action Fund Claims Form;
2. Supplemental Fund Claims Form;
3. Special Needs Fund Claims Form;
4. Interrelated Drinking Water System Claims Form addendum.

     These Claims Forms will be available online at the Settlement website and can be submitted to the Claims Administrator electronically or on paper. The Claims Forms will vary depending on the specific fund or funds from which compensation is sought.

     The Claims Administrator will review each Claims Form, verify the completeness of the data it contains, and follow up as appropriate, including notifying Class Members of the need to cure deficiencies in their submission(s), if any.  Based on the data in the Claims Forms, the Claims Administrator will then confirm Class membership and determine the amount each Class Member is owed from each fund from which the Class Member seeks compensation.  Should any portion of the Settlement Funds remain following the completion of the Claims Forms process, it will be distributed to Qualifying Class Members on a pro rata basis as explained in the Settlement Agreement and Allocation Procedures.  None of any such remaining Settlement Funds shall be returned to BASF.

     Any Qualifying Class Member who has submitted information through the Claims Administrator's website pursuant to previous PWS settlements will not need to re-submit that same

information. Qualifying Class Members will have the opportunity to update previously provided information to bring their submission(s) current and/or reflect new information.

5.     ***Payment of Settlement Funds.***  BASF shall pay or cause to be paid the Settlement Funds in accordance with the Settlement Agreement in full, in accordance with the payment terms set forth in the Settlement Agreement. If the Settlement does not become final, BASF is entitled to a refund of the unused Settlement Funds, and no distribution to Class Members will occur.

6.     ***Release.***  All Class Members that have not excluded themselves from the Settlement Class will release certain Claims against BASF, its affiliates, predecessors, and successors, and certain other Persons and entities as set forth in the Settlement Agreement.  This is referred to as the "Release." Generally speaking, the Release will prevent any Class Member from bringing any lawsuit against BASF or making any Claims resolved by the Settlement Agreement.

The Release, as set forth in Section 12 of the Settlement Agreement, will be effective as to every Class Member that has not excluded itself from the Settlement Class, regardless of whether or not that Class Member files a Claims Form or receives any distribution from the Settlement.

7.     ***Attorney Fee/Litigation Cost and Class Representative Awards.***  The Court will determine the amounts of attorneys' fees and expenses to award to Class Counsel from the Settlement Funds for investigating the facts and law in the Action, the massive amount of litigation surrounding the Action, the trial preparations, and negotiating the proposed Settlement.  Class Counsel will request a Class award of attorneys' fees and costs.  Class Counsel will make their Class award request in a motion for attorneys' fees and costs in accordance with Section 9.10 of the Settlement Agreement.  Class Counsel intend to file a motion for a Class award of attorneys' fees and costs, to be paid from the Qualified Settlement Fund, in lieu of the Common Benefit Holdback provided for under Case Management Order No. 3.

> Class Counsel will make their request in a motion to be filed with the Court not less than twenty (20) calendar days before Objections are due pursuant to Paragraphs 9.4, 9.9, and 9.10 of the Settlement Agreement.  After the motion is filed, copies will be available from Class Counsel, the Settlement website (www.PFASWaterSettlement.com), or the Court docket for *City of Camden, et al., v. BASF Corporation*, No. 2:24-cv-03174-RMG. Any attorneys' fees, costs, and expenses approved by the Court will be paid from the Settlement Funds.

8.     ***Settlement Administration.***  All fees, costs, and expenses incurred in the administration and/or work by the Notice Administrator, including fees, costs, and expenses of the Notice Administrator, as well as the costs of distributing notice, shall be paid from the Settlement Funds.  All fees, costs, and expenses incurred in the administration and/or work by the Claims Administrator, including fees, costs, and expenses of the Claims Administrator, shall be paid from the Settlement Funds. All fees, costs, and expenses incurred in the administration of the Requests for Exclusion and/or work by the Opt Out Administrator, including fees, costs, and expenses of the Opt Out Administrator, shall be paid from the Settlement Funds. All fees, costs, and expenses incurred in the administration and/or work

7

by the Special Master, including fees, costs, and expenses of the Special Master, shall be paid from the Settlement Funds.  All fees, costs, and expenses incurred in the administration and/or work for the Qualified Settlement Fund, including fees, costs, and expenses of the Escrow Agent, shall be paid from the Settlement Funds. BASF shall have no obligation to pay any such fees, costs, and expenses other than the Settlement Funds.

**9.** _**Dismissal of the Litigation.**_   If the Settlement is approved by the Court and becomes final, all pending Litigation will be dismissed with prejudice to the extent it contains Released Claims. If the Settlement is not approved by the Court or does not become final for any reason, the Litigation will continue, and Class Members will not be entitled to receive any Settlement Award.

**10.** _**Interpretive Guidance.**_ Additional documents are available to provide guidance on how to apply the Settlement Agreement in specific scenarios, which can be accessed by Class Members at www.PFASwatersettlement.com. The Interpretive Guidance provided on the website is particularly relevant for gaining a comprehensive understanding of various aspects related to the Settlement Agreement. The Interpretive Guidance documents are:

**i.     The Parties' Joint Interpretive Guidance on Interrelated Drinking Water Systems.** This Guidance details the Joint Claims Form submission process available to entities that have an interest in the same Water Source. It also provides important guidance on Claims by wholesalers and retailers.

**ii.     The Parties' Joint Interpretive Guidance on Entities That Own and/or Operate Multiple Public Water Systems.** This Guidance details the mechanism by which entities that own and/or operate multiple Public Water Systems should interpret the Settlement, and specifically, the opt-out provisions.

**iii.     The Parties' Joint Interpretive Guidance on Federally Recognized Indian Tribes and Public Water Systems That They Own or Operate.** This Guidance confirms that Public Water Systems owned or operated by Indian tribes are not categorically excluded or otherwise afforded differential treatment, such that a PWS owned by a Tribe that otherwise meets the Settlement Class definition is an Eligible Claimant unless the System opts itself out.

**iv.     The Parties' Joint Interpretive Guidance on Certain Release Issues.** This Guidance is a resource for interpreting the Release provisions.

**THE PARAGRAPHS ABOVE PROVIDE ONLY A GENERAL SUMMARY OF THE TERMS OF THE PROPOSED SETTLEMENT.  YOU SHOULD REVIEW THE SETTLEMENT AGREEMENT ITSELF FOR MORE INFORMATION ABOUT THE EXACT TERMS OF THE SETTLEMENT. THE SETTLEMENT AGREEMENT IS AVAILABLE AT WWW.PFASWATERSETTLEMENT.COM.**

### V.     HOW WILL THE SETTLEMENT FUNDS BE DIVIDED AMONG CLASS MEMBERS?

#### 1. *Baseline Testing*.

#### 1.     *Qualifying Class Members*

Each Qualifying Class Member must perform Baseline Testing.  Baseline Testing requires each Qualifying Class Member to test each of its Water Sources for PFAS; request from the laboratory that performs the analyses all analytical results, including the actual numeric values of all analytical results; and submit or cause the testing laboratory to submit detailed PFAS test results to the Claims Administrator on a Claims Form(s) by dates specified below.

Any Water Source tested on or before May 15, 2024, using a state- or federal-approved methodology and found to contain a Measurable Concentration of PFAS, does not need to be tested again for purposes of Baseline Testing.

Any Water Source tested prior to **January 1, 2019**, that did not result in a Measurable Concentration of PFAS, must retest to meet Baseline Testing requirements.  If a Water Source was tested **January 1, 2019**, or later, and it did not result in a Measurable Concentration of PFAS, no further testing of that Water Source is required.

Baseline Testing requires the following:

    i.   PFAS tests must be conducted at a minimum for PFAS analytes for which UCMR-5 requires testing, and

    ii.  the PFAS test results must report any Measurable Concentration of PFAS, regardless of whether the level of PFAS detected in the water is above or below UCMR-5's relevant minimum reporting level.

Each Qualifying Class Member will verify in its Claims Form that it has tested all its Water Sources for PFAS.  Failure to test and submit Qualifying Test Results for Water Sources will disqualify Water Sources from consideration for present and future payments.

Baseline Testing may be performed by any laboratory accredited or certified by a state government or federal regulatory agency for PFAS analysis that uses any state or federal agency approved or validated PFAS analytical method that is consistent with (or stricter) than the requirements of UCMR-5.

Class Counsel has arranged for discounted testing with the following laboratory to assist Class Members with Baseline Testing. The listed laboratory will forward the test results to the Claims Administrator.  There is no requirement to use the listed laboratory.

**Eurofins**
Telephone Number: 916-374-4499
Website: https://www.eurofinsus.com/environment-testing/pfas-testing/pfas-waterprovider-settlement/

2.    *Base Scores for Water Sources.* The Allocation Procedures are designed to allocate money based on factors that dictate the costs of water treatment.  It is well documented in the scientific literature and well known throughout the public water industry that the costs associated with water treatment consist of 1) capital costs and 2) operations and maintenance costs.   Capital costs are mainly driven by the Impacted Water Source's flow rate.  Operations and maintenance costs are mainly driven by flow rate and the levels of PFAS in the water.  The Allocation Procedures utilize proxies for capital costs and operations and maintenance costs to generate a Base Score for each Impacted Water Source. The Claims Administrator will input the flow rates and PFAS concentrations from the Claims Forms into an EPA-derived formula that calculates a Base Score for each Impacted Water Source.

3.    *Adjusted Base Scores.*  Certain Class Members will be eligible for increases, or bumps, to their Base Scores.  Based on the Claims Forms submitted, the Claims Administrator will determine if a Class Member is eligible for three available enhancements to the score: the Litigation Bump, the Public Water Provider Bellwether Bump (or Bellwether Bump), and the Regulatory Bump.  A Class Member may qualify for none, one, or multiple bumps.

The Litigation Bump applies to all Qualifying Class Members that have a pending lawsuit filed in a state or federal court asserting Claims against BASF related to alleged PFAS contamination of Drinking Water in Public Water Systems.  The Bellwether Bump applies to the Impacted Water Sources that are owned or operated by Qualifying Class Members that served as one of the thirteen Public Water Provider Bellwether Plaintiffs.  The Regulatory Bump will apply when an Impacted Water Source exceeds (i) an applicable state Maximum Contaminant Level (MCL) for a PFAS analyte or (ii) the proposed federal MCL for a PFAS analyte.  The Claims Administrator will consider all Proposed Federal PFAS MCLs and existing state MCLs for PFAS chemicals existing on the date the Court issues a Final Approval to determine if an Impacted Water Source has ever exceeded any applicable standard during the Class Period.

After the Claims Administrator applies the appropriate bumps to each Impacted Water Source, the Claims Administrator will use the new Adjusted Base Scores to determine how much of the Settlement Funds each Impacted Water Source will receive.

4.    *Settlement Awards.*  The information required to calculate Settlement Awards is not publicly available and is only obtainable through the Claims Forms submitted by Class Members.  Thus, the Settlement Awards that each Class Member will receive are not determinable until the Claims Administrator analyzes all the Claims Forms submitted by the Claims Form deadline.  Notwithstanding, Estimated Allocation Range Tables are available for review on www.PFASWaterSettlement.com.

5.    *Special Needs Funds.* Special Needs Funds will be established by the Claims Administrator for Qualifying Class Members that have expended monetary resources on extraordinary

10

efforts to address PFAS detections in their Impacted Water Sources. Class Members can file a Special Needs Fund Claims Form to be considered for reimbursement of these expenditures.

**6.** ***Supplemental Funds*.** The Claims Administrator will also establish Supplemental Funds so that a Qualifying Class Member that did not initially exceed a state or federal MCL when it submitted its Claims Form can request additional funds if it later exceeds a state or federal MCL, and so that a Qualifying Class Member with a Water Source that initially did not have a Qualifying Test Result showing a Measurable Concentration of PFAS and later had such a Qualifying Test Result can request additional funds.

## VI.     WHO REPRESENTS THE SETTLEMENT CLASS?

The Court has appointed the attorneys from the following law firms to act as counsel for the Class (referred to as "Class Counsel" or "Plaintiffs' Counsel") for purposes of the proposed Settlement:

| | |
|---|---|
| Scott Summy<br>**Baron & Budd, P.C.**<br>3102 Oak Lawn Ave., Ste. 1100<br>Dallas, Texas 75219 | Michael A. London<br>**Douglas & London**<br>59 Maiden Lane, 6th Floor<br>New York, NY 10038 |
| Paul J. Napoli<br>**Napoli Shkolnik**<br>1302 Av. Ponce de Leon<br>San Juan, Puerto Rico 00907 | Joseph F. Rice<br>**Motley Rice LLC**<br>28 Bridgeside Boulevard<br>Mt. Pleasant, South Carolina 29464 |

## VII.     WHAT ARE THE REASONS FOR THE PROPOSED SETTLEMENT?

Class Counsel, Class Representatives, and BASF have engaged in extensive, arm's-length negotiations, including negotiations facilitated by a Court-appointed mediator, and have, subject to the Preliminary and Final Approval of the Court, reached an agreement to settle and release all Released Claims, on the terms and conditions set forth in the Settlement Agreement.

Class Representatives and Class Counsel have concluded, after a thorough investigation and after carefully considering the relevant circumstances, including the Claims asserted, the legal and factual defenses thereto, the applicable law, the burdens, risks, uncertainties, and expense of litigation, as well as the fair, cost-effective, and assured method of resolving the Claims, that it would be in the best interests of Class Members to participate in the Settlement in order to avoid the uncertainties of litigation and to ensure that the benefits reflected herein are obtained for Class Members. Further, Class Representatives and Class Counsel consider the Settlement set forth herein to be fair, reasonable, and adequate and in the best interests of Class Members.

BASF, while continuing to deny any violation, wrongdoing, or liability with respect to any and all Claims asserted in the Litigation and all Released Claims, either on its part or on the part of any of

the Released Parties, entered into the Settlement Agreement to avoid the expense, inconvenience, and distraction of further litigation.

## VIII.    WHAT DO YOU NEED TO DO NOW?

*YOU CAN PARTICIPATE IN THE SETTLEMENT.* You must file a Claims Form to be eligible to receive a payment under the Settlement Agreement. You can submit your Claims Form online at www.PFASWaterSettlement.com, or you can download, complete, and mail your Claims Form to the Claims Administrator at AFFF Public Water System Claims, PO Box 4466, Baton Rouge, Louisiana 70821. The deadline to submit a Claims Form is DEADLINE DATE.

Regardless of whether you file a Claims Form or receive any distribution under the Settlement, unless you timely opt out as described below, you will be bound by the Settlement and any judgment or other final disposition related to the Settlement, including the Release set forth in the Settlement Agreement, and will be precluded from pursuing Claims against BASF separately if those Claims are within the scope of the Release.

*YOU CAN OPT OUT OF THE SETTLEMENT.* If you do not wish to be a Class Member, and do not want to participate in the Settlement and receive funds from the Settlement, you may exclude yourself from the Settlement Class by completing and submitting the form of intention to opt-out (referred to as a "Request for Exclusion" or an "Opt-Out"), which will be available online for electronic submission and in paper copy. Anyone within the Settlement Class that wishes to opt out of the Settlement Class and Settlement must submit the "Request for Exclusion" form online, or, if submitting a paper copy, provide service on the Opt Out Administrator in accordance with Federal Rule of Civil Procedure 5, and comply with all Opt-Out provisions of the Settlement Agreement.

Any Class Member that submits a timely and valid Request for Exclusion shall not (i) be bound by any orders or judgments effecting the Settlement; (ii) be entitled to any of the relief or other benefits provided under the Settlement Agreement; (iii) gain any rights by virtue of the Settlement Agreement; or (iv) be entitled to submit an Objection.

As discussed in the Parties' Joint Interpretive Guidance on Entities That Own and/or Operate Multiple Public Water Systems, if you own or operate more than one Active Public Water System and are authorized to determine whether to submit Requests for Exclusion on those Active Public Water Systems' behalf, you may submit a Request for Exclusion on behalf of some of those Active Public Water Systems but not the other(s). You must submit a Request for an Exclusion on behalf of each such Active Public Water System that you wish to opt out of the Settlement Class. Any Active Public Water System that is not specifically identified in a Request for Exclusion will remain in the Settlement Class.

Any Class Member that does not submit a timely and valid Request for Exclusion submits to the jurisdiction of the Court and, unless the Class Member submits an Objection that complies with the provisions of the Settlement Agreement, shall waive and forfeit any and all objections the Class Member may have asserted. The submission of a Request for Exclusion shall have the effect of waiving and forfeiting any and all objections the Class Member did assert or may have asserted.

12

Requests for Exclusion may be withdrawn at any time prior to the Final Fairness Hearing. However, the withdrawal of a Request for Exclusion shall neither permit a Person to assert new Objections, nor to revive previously asserted ones.

*YOU CAN OBJECT OR TAKE OTHER ACTIONS.*  Any Class Member who has not successfully excluded itself ("opted out") may object to the Settlement.  Any Class Member that wishes to object to the Settlement or to an award of fees or expenses to Class Counsel must file a written and signed statement designated "Objection" with the Clerk of the Court, provide service on BASF's Counsel and Class Counsel at the addresses below in accordance with Federal Rule of Civil Procedure 5, and comply with all Objections provisions of the Settlement Agreement.  Objections submitted by any Class Member to incorrect locations shall not be valid.  Objections submitted by any Class Member that later excludes itself shall be deemed withdrawn.

**Clerk of the Court:**

Clerk, United States District Court for the
District of South Carolina
85 Broad Street
Charleston, SC 29401

**Counsel for BASF Corporation**:

Matthew A. Holian
DLA Piper LLP (US)
33 Arch Street, 26th Floor
Boston, MA 02110
Matt.holian@dlapiper.com

John R. Wellschlager
DLA Piper LLP (US)
650 South Exeter Street, Suite 1100
Baltimore, MD 21202
John.wellschlager@dlapiper.com

13

**Class Counsel**:

| | |
|---|---|
| Scott Summy<br>**Baron & Budd, P.C.**<br>3102 Oak Lawn Ave., Ste. 1100<br>Dallas, Texas 75219 | Michael A. London<br>**Douglas & London**<br>59 Maiden Lane, 6th Floor<br>New York, NY 10038 |
| Paul J. Napoli<br>**Napoli Shkolnik**<br>1302 Av. Ponce de Leon<br>San Juan, Puerto Rico 00907 | Joseph F. Rice<br>**Motley Rice LLC**<br>28 Bridgeside Boulevard<br>Mt. Pleasant, South Carolina 29464 |

All Objections must certify, under penalty of perjury in accordance with 28 U.S.C. § 1746, that the filer has been legally authorized to object on behalf of the Class Member and must provide:

- the Eligible Claimant's SDWIS ID;

- an affidavit or other proof of the Class Member's standing;

- the filer's name, address, telephone, facsimile number and email address (if available);

- the name, address, telephone, facsimile number and email address (if available) of the Class Member whose Objection is submitted;

- all objections asserted by the Class Member and the specific reason(s) for each objection, including all legal support and evidence the Class Member wishes to bring to the Court's attention;

- an indication as to whether the Class Member wishes to appear at the Final Fairness Hearing; and

- the identity of all witnesses the Class Member may call to testify.

The deadline to submit an Objection is DEADLINE DATE.

Class Members may object either on their own or through any attorney hired at their own expense. If a Class Member is represented by counsel, the attorney must file a notice of appearance with the Clerk of Court no later than the date ordered by the Court for the filing of Objections and serve such notice in accordance with Federal Rule of Civil Procedure 5 within the same time period.

Any Class Member that fully complies with the provisions for objecting may, at the Court's discretion, appear at the Final Fairness Hearing to object to the Settlement or to the award of fees and costs to Class Counsel. Any Class Member that fails to comply with the provisions of the Settlement

14

Agreement for objecting shall waive and forfeit any and all objections the Class Member may have asserted.

## IX.    WHAT WILL HAPPEN AT THE FINAL FAIRNESS HEARING?

Before deciding whether to grant final approval to the Settlement, the Court will hold the Final Fairness Hearing in Courtroom XX of the U.S. Courthouse, 85 Broad Street, Charleston, South Carolina 29401, on DATE. At that time, the Court will determine, among other things, (i) whether the Settlement should be granted final approval as fair, reasonable, and adequate, (ii) whether the Action should be dismissed with prejudice pursuant to the terms of the Settlement Agreement, (iii) whether the Settlement Class should be conclusively certified for settlement purposes only, (iv) whether Class Members should be bound by the Release set forth in the Settlement Agreement, (v) the amount of attorneys' fees and costs to be awarded to Class Counsel, if any, and (vi) the amount of the award to be made to the Class Representatives for their services, if any. The Final Fairness Hearing may be postponed, adjourned, or continued by Order of the Court without further notice to the Class.

## X.    HOW CAN YOU GET ADDITIONAL INFORMATION ABOUT THE ACTION, THE PROPOSED SETTLEMENT, THE SETTLEMENT AGREEMENT, OR THE NOTICE?

The descriptions of the Action, the Settlement, and the Settlement Agreement in this Notice are only a general summary.  In the event of a conflict between this Notice and the Settlement Agreement, the terms of the Settlement Agreement control.  All papers filed in this case, including the full Settlement Agreement, are available for you to inspect and copy (at your cost) at the office of the Clerk of Court, the Settlement website, or online through the Court's electronic docket.  A copy of the Settlement Agreement may also be obtained from Class Counsel by contacting them at the addresses or telephone numbers set forth above.  Any questions concerning this Notice, the Settlement Agreement, or the Settlement may be directed to Class Counsel.  You may also seek the advice and counsel of your own attorney, at your own expense, if you desire.

**DO NOT WRITE OR TELEPHONE THE COURT, THE CLERK'S OFFICE, COUNSEL FOR DEFENDANT, OR DEFENDANT WITH ANY QUESTIONS ABOUT THIS NOTICE, THE SETTLEMENT, OR THE SETTLEMENT AGREEMENT.**

15

## XI.     WHAT ARE THE ADDRESSES YOU MAY NEED?

**If to the Notice Administrator:**

In re: Aqueous Film-Forming Foams Products

c/o BASF Notice Administrator
1650 Arch Street, Suite 2210
Philadelphia, PA 19103

**If to the Claims Administrator:**

AFFF Public Water System Claims
PO Box 4466
Baton Rouge, LA 70821

**If to the Clerk of the Court:**

Clerk, United States District Court for the
District of South Carolina
85 Broad Street
Charleston, SC 29401

**If to the Special Master:**

Matthew Garretson
Wolf/Garretson LLC
P.O. Box 2806
Park City, UT 84060

16

**If to the Class Representatives, Class Counsel, or Class Members**:

| | |
|---|---|
| Scott Summy<br>**Baron & Budd, P.C.**<br>3102 Oak Lawn Ave., Ste. 1100<br>Dallas, Texas 75219 | Michael A. London<br>**Douglas & London**<br>59 Maiden Lane, 6th Floor<br>New York, NY 10038 |
| Paul J. Napoli<br>**Napoli Shkolnik**<br>1302 Av. Ponce de Leon<br>San Juan, Puerto Rico 00907 | Joseph F. Rice<br>**Motley Rice LLC**<br>28 Bridgeside Boulevard<br>Mt. Pleasant, South Carolina 29464 |

**If to Counsel for BASF Corporation**:

Matthew A. Holian
DLA Piper LLP (US)
33 Arch Street, 26th Floor
Boston, MA 02110
Matt.holian@dlapiper.com

John R. Wellschlager
DLA Piper LLP (US)
650 South Exeter Street, Suite 1100
Baltimore, MD 21202
John.wellschlager@dlapiper.com

**XII.    WHAT YOU MUST INCLUDE IN ANY DOCUMENT YOU SEND REGARDING THE ACTION.**

In sending any document to the Notice Administrator, Claims Administrator, the Court, Class Counsel, or BASF's Counsel, you must include the following case name and identifying number on any documents and on the outside of the envelope:

*In re: Aqueous Film-Forming Foams Products Liability Litigation*, MDL No. 2:18-mn-2873 (D.S.C.), this document relates to: City of Camden, et al. v. BASF Corporation, 2:24-cv-03174-RMG.

You must also include the name(s) and SDWIS ID(s) of the Class Member(s) that are the subject of the correspondence, as well as your full name, address, email address, and a telephone number where you can be reached.

17

## XIII.    WHAT IMPORTANT DEADLINES YOU NEED TO KNOW.

| Deadline Description | Deadline Trigger | Deadline Date |
|---|---|---|
| Public Water System Settlement Claims Form | Effective Date + 60 Days | MM/DD/YYYY |
| Special Needs Claims Form | Claims Form Deadline + 45 Days | MM/DD/YYYY |
| Supplemental Fund Claims Form | TBD | 12/31/2030 |

_____

The Honorable Richard M. Gergel         DATED:    _____
UNITED STATES DISTRICT JUDGE

18

# NOTICE OF BASF CLASS ACTION SETTLEMENT

## IN RE: CITY OF CAMDEN, ET AL. V. BASF CORPORATION
## CASE NO. 2:24-cv-03174-RMG

United States District Court, District of South Carolina – Charleston Division
MDL No. 2:18-mm-2873

**PLEASE NOTE,** the enclosed correspondence relates to
the Settlement with BASF.

**YOU MAY RECEIVE ADDITIONAL CORRESPONDENCE RELATING TO ADDITIONAL SETTLEMENTS WITH OR JUDGMENTS INVOLVING OTHER DEFENDANT(S).**

Please be aware that documents associated with one Settling Defendant may appear similar to documents associated with another Settling Defendant.
However, **each Settlement has its own specific terms and conditions, and each set of documents should be carefully reviewed with this in mind**.
Please visit www.PFASWaterSettlement.com for more information and to review settlement related documents.

## SETTLEMENT WEBSITE FOR FILING YOUR CLAIM FOR SETTLEMENT PAYMENT

### WWW.PFASWATERSETTLEMENT.COM
**Login ID: [insert from PNN]**
**Password: [insert from PNN]**

19

# EXHIBIT E

**Notice Plan**

As detailed below, the Notice Plan provides for individual direct notice via USPS mail to all reasonably identifiable Eligible Claimants, outreach to national and local water organizations, a comprehensive media plan, and the implementation of a dedicated Settlement website and toll- free telephone line where Eligible Claimants can learn more about their rights and options pursuant to the terms of the Settlement.  Additional details are provided in the accompanying Declaration of the Notice Administrator, Steven Weisbrot of Angeion Group, who will implement the Notice Plan. All capitalized terms not otherwise defined herein shall have the meaning set forth in the Settlement Agreement, available for review at www.PFASWaterSettlement.com.

**MAILED NOTICE**

- Class Counsel will provide Angeion with a list of Public Water Systems that Class Counsel believes may be Eligible Claimants, based on information available to Class Counsel as of the Settlement Date (the "Class List").  The Class List will include, at a minimum, (1) all Active Public Water Systems that, according to Class Counsel's information as of the Settlement Date, draw or otherwise collect water from any Water Source that has a Qualifying Test Result showing a Measurable Concentration (*i.e.*, any detection at any level) of PFAS.  The Class List will be updated if Class Counsel becomes aware of additional Public Water Systems that may be Eligible Claimants.

- The Class List will also include mailing addresses and email addresses for each Eligible Claimant on the Class List, based on address information maintained in the U.S. EPA's Safe Drinking Water Information System ("SDWIS") or relevant state data sources.  Where SDWIS, relevant state data sources, or information available to Class Counsel specifies an owner or operator of a Public Water System on the Class List whose mailing or email address is different from that of the Public Water System itself, the Class List will include the additional mailing and/or email address(es) as well.

- Notice will be sent via USPS certified mail with tracking and signature required to all

2

Eligible Claimants for whom mailing addresses are included on the Class List. Notice will be mailed via USPS first-class mail, postage prepaid, to any P.O. Box addresses.

- Angeion will employ the following best practices to increase the deliverability rate of the mailed Notices:

  o Angeion will cause the mailing address information for Eligible Claimants to be updated utilizing the USPS National Change of Address database, which provides updated address information for individuals or entities that have moved during the previous four (4) years and filed a change of address with the USPS;

  o Angeion will also identify the address information included in SDWIS specified above, as well as relevant state data sources, and will monitor SDWIS and such sources for any updates;

  o Notices returned to Angeion by the USPS with a forwarding address will be re-mailed to the new address provided by the USPS, and the Class List will be updated accordingly;

  o Notices returned to Angeion by the USPS without forwarding addresses will be subjected to an address verification search (commonly referred to as "skip tracing") utilizing a wide variety of data sources, including public records, real estate records, electronic directory assistance listings, etc., to locate updated addresses; and

  o Notices will be re-mailed to Eligible Claimants for whom updated addresses were identified via the skip tracing process.

- Any mailed Notices that remain undeliverable after the above-described efforts will be subjected to manual internet searches, phone calls to obtain updated addresses, and/or the identification of email addresses for providing backup notice if efforts to obtain a mailing address are not successful or where the Eligible Claimant requests notice be sent via email.

- A reminder postcard will be sent prior to certain applicable deadlines.

**EMAIL NOTICE**

- The Summary Notice will be sent via email to all Eligible Claimants for whom email addresses are available.

3

- The email sending the Summary Notice will be designed to avoid many common "red flags" that might otherwise cause a spam filter to block or identify the email notice as spam. For example, the email will not include attachments like the long-form Notice, because attachments are often interpreted by various Internet Service Providers ("ISP") as spam.

- Additional methods will be employed to help ensure that as many recipients as possible receive the Summary Notice via email. Specifically, prior to distributing the Summary Notice by email, an email updating process will be undertaken to help ensure the accuracy of recipient email addresses. Angeion will review email addresses for mis-transcribed characters and perform other data hygiene as appropriate. This process will include review of email address information available in SDWIS or relevant state data sources.

- The email notice process will also account for the reality that some emails will inevitably fail to be delivered during the initial delivery attempt. Therefore, after the initial noticing campaign is complete and after an approximate 24- to 72-hour rest period (which allows any temporary block at the ISP level to expire) a second round of email noticing will continue to any email addresses that were previously identified as soft bounces and not delivered.

- Angeion will also send a reminder email prior to certain applicable deadlines.

**OUTREACH EFFORTS**

- Angeion will perform personalized outreach to national and local water organizations, including to entities such as the Association of Metropolitan Water Agencies ("AMWA") and the American Water Works Association ("AWWA") and similar third-party organizations that have a connection to the case, along with a request that they assist in providing notice, where appropriate.

**MEDIA CAMPAIGN**

*Publication Notice*

- The Summary Notice of the Settlement will be published one (1) time in key industry- specific titles, such as *Journal AWWA*, *Rural Water*, *The Municipal*, and *Water Environment & Technology.*

4

- The Summary Notice of the Settlement will also be published one (1) time each in national publications such as the *Wall Street Journal*, *USA Today*, and the *New York Times*.

- To satisfy the requirements of California's Consumer Legal Remedies Act, Angeion will cause the Summary Notice to be printed in the California regional edition of *USA Today* for four (4) consecutive weeks.

*Digital Notice*

- Angeion will undertake a digital publication campaign utilizing key industry-specific titles, such as *American Water Works Association*, *National Rural Water Association*, *The Municipal*, *Water Environment & Technology, Water Quality Association, AWWA Opflow*, and/or *AWWA Source Book*.

*Paid Search Campaign*

- Angeion will implement a paid search campaign on Google to help drive Eligible Claimants that are actively searching for information about the Settlement to the dedicated Settlement website.

*Press Release*

- Angeion will distribute a press release over PR Newswire's national and public interest circuits to further disseminate news of the Settlement. A second press release will also be issued before the Objection and Opt Out deadlines.

**SETTLEMENT WEBSITE AND TOLL-FREE TELEPHONE SUPPORT**

- The Notice Plan will also involve a Settlement website, [www.PFASWaterSettlement.com](www.PFASWaterSettlement.com), where Eligible Claimants can easily view general information about this Settlement, review relevant Court documents, and view important dates and deadlines pertinent to the Settlement. The website is designed to be user-friendly and make it easy for Eligible Claimants to find information about the case. The website also has a "Contact Us" page whereby Eligible Claimants can send an email with any additional questions to a dedicated email address.

- A toll-free hotline devoted to this case will be established to further apprise Eligible

5

Claimants of their rights and options under the Settlement Agreement. The toll-free hotline will utilize an interactive voice response ("IVR") system to provide Eligible Claimants with responses to frequently asked questions and will also provide other essential information regarding the Settlement. This hotline will be accessible 24 hours a day, 7 days a week, with live operator support during normal business hours.

# EXHIBIT F

**SUMMARY NOTICE OF PROPOSED CLASS ACTION SETTLEMENT
AND COURT-APPROVAL HEARING**

*In re: Aqueous Film-Forming Foams Products Liability Litigation,* MDL No.
2:18-mn-02873 This Document relates to: *City of Camden, et al., v. BASF
Corporation*, No. 2:24-cv-03174-RMG

UNITED STATES DISTRICT COURT, DISTRICT OF SOUTH CAROLINA,
CHARLESTON DIVISION

---

**TO THE SETTLEMENT CLASS:**  All Active Public Water Systems in the United States of America that have one or more Impacted Water Sources as of May 15, 2024.

All capitalized terms not otherwise defined herein shall have the meanings set forth in the Settlement Agreement, available for review at **www.PFASWaterSettlement.com**.

**Active Public Water System** means a Public Water System whose activity-status field in SDWIS states that the system is "Active."

**Impacted Water Source** means a Water Source that has a Qualifying Test Result showing a Measurable Concentration of PFAS.

**Public Water System** means a system for the provision to the public of water for human consumption through pipes or other constructed conveyances, if such system has at least fifteen (15) service connections or regularly serves an average of at least twenty-five (25) individuals daily at least sixty (60) days out of the year, consistent with the use of that term in the Safe Drinking Water Act, 42 U.S.C § 300f(4)(A) and 40 C.F.R. Part 141. The term "Public Water System" includes (i) any collection, treatment, storage, and distribution facilities under control of the operator of such system and used primarily in connection with such system, and (ii) any collection or pretreatment storage facilities not under such control which are used primarily in connection with such system.  Solely for purposes of this Settlement Agreement, the term "Public Water System" refers to a Community Water System of any size or a Non-Transient Non-Community Water System that serves more than 3,300 people, according to SDWIS, the owner and/or operator of such Public Water Systems, or any Person (but not any financing or lending institution) that has legal authority or responsibility (by statute, regulation, other law, or contract) to fund or incur financial obligations for the design, engineering, installation, operation, or maintenance of any facility or equipment that  treats, filters, remediates, or manages water that has entered or may enter Drinking Water or any Public Water System. It is the intention of this Agreement that the definition of "Public Water System" be as broad, expansive, and inclusive as possible.

---

**What Is the Purpose of this Notice?**  The purpose of this Notice is (i) to advise you of a proposed settlement of certain Claims against BASF Corporation ("BASF" or "Defendant") in the United States District Court for the District of South Carolina (the "Court"); (ii) to summarize your rights

in connection with the Settlement; and (iii) to inform you of a Court hearing to consider whether to grant final approval of the Settlement (the "Final Fairness Hearing"), to be held on DATE at TIME, before the Honorable Richard M. Gergel, United States District Judge of the United States District Court for the District of South Carolina, located at 85 Broad Street, Charleston, South Carolina 29401.

**What Are the Key Terms of the Proposed Settlement?**  BASF has agreed to pay $312,500,000 (the "Settlement Amount"), subject to final approval of the Settlement by the Court and certain other conditions specified in the Settlement Agreement. BASF shall additionally pay $4,000,000 (the "Initial Payment") to cover costs incurred by the Notice Administrator in the course of executing the Notice Plan. Together, these payments from BASF constitute the "Settlement Funds." In no event shall BASF be required under the Settlement Agreement to pay any amounts above the Settlement Funds. Any fees, costs, or expenses payable under the Settlement Agreement shall be paid out of, and shall not be in addition to, the Settlement Funds. Each Class Member that has not excluded itself from the Class will be eligible to receive a settlement check(s) from the Claims Administrator based on the Allocation Procedures developed by Class Counsel, which are subject to final approval by the Court as fair and reasonable and whose administration is under the oversight of the Special Master.

**What Are My Options?**

> **YOU CAN PARTICIPATE IN THE SETTLEMENT.**  You must file a Claims Form to be eligible to receive a payment under the Settlement.  You can submit your Claims Form online at **www.PFASWaterSettlement.com**, or you can download, complete, and mail your Claims Form to the Claims Administrator at AFFF Public Water System Claims, P.O. Box 4466, Baton Rouge, Louisiana 70821.  The deadline to submit a Claims Form is **DEADLINE DATE**.

> Regardless of whether you file a Claims Form or receive any distribution under the Settlement, unless you timely opt out as described below, you will be bound by the Settlement and any judgment or other final disposition related to the Settlement, including the Release set forth in the Settlement Agreement, and will be precluded from pursuing claims against BASF separately if those Claims are within the scope of the Release.

> **YOU CAN OPT OUT OF THE SETTLEMENT.**  If you do not wish to be a Class Member and do not want to participate in the Settlement and receive a settlement check, you may exclude yourself, or "opt out" from the Class by completing and submitting a Request for Exclusion. The Request for Exclusion form will be available online and may be submitted electronically; if it is submitted via paper copy it must be served on the Opt Out Administrator no later than **DEADLINE DATE**. Requests for Exclusion may be withdrawn at any time before the Final Fairness Hearing.

> **YOU CAN OBJECT TO THE SETTLEMENT.** Any Class Member that has not successfully excluded itself ("opted out") may object to the Settlement.  Any Class Member that wishes to object to the Settlement or to an award of fees or expenses to Class Counsel must file a written and signed statement designated "Objection" with the Clerk of the Court and provide service on BASF's Counsel and Class Counsel no later than **DEADLINE DATE**. No Class Member who has submitted a Request for Exclusion may object, and any

Objections submitted by any Class Member that later excludes itself shall be deemed withdrawn.

**VISIT WWW.PFASWATERSETTLEMENT.COM FOR
COMPLETE INFORMATION ABOUT YOUR RIGHTS**

**The Court's Final Fairness Hearing.** The Court will hold the Final Fairness Hearing in Courtroom XX of the United States District Court for the District of South Carolina, located at 85 Broad Street, Charleston, South Carolina 29401, on DATE. At that time, the Court will determine, among other things, (i) whether the Settlement should be granted final approval as fair, reasonable, and adequate, (ii) whether the Litigation should be dismissed with prejudice pursuant to the terms of the Settlement Agreement, (iii) whether the Settlement Class should be conclusively certified, (iv) whether Settlement Class Members should be bound by the Release set forth in the Settlement Agreement, (v) the amount of attorneys' fees and costs to be awarded to Class Counsel, if any, and (vi) the amount of the award to be made to the Class Representatives for their services, if any. The Final Fairness Hearing may be postponed, adjourned, or continued by Order of the Court without further notice to the Class.

**How Do I Get More Information?** Please visit **www.PFASWaterSettlement.com** or call toll free **1-855-714-4341.** You may also contact Class Counsel for more information:

| | |
|---|---|
| Scott Summy<br>**Baron & Budd, P.C.**<br>3102 Oak Lawn Ave., Ste. 1100<br>Dallas, Texas 75219 | Michael A. London<br>**Douglas & London**<br>59 Maiden Lane, 6th Floor<br>New York, NY 10038 |
| Paul J. Napoli<br>**Napoli Shkolnik**<br>1302 Av. Ponce de Leon<br>San Juan, Puerto Rico 00907 | Joseph F. Rice<br>**Motley Rice LLC**<br>28 Bridgeside Boulevard<br>Mt. Pleasant, South Carolina 29464 |

| **Notice Administrator** | **Claims Administrator** |
|---|---|
| In re: Aqueous Film-Forming Foams Products Liability Litigation<br>c/o Notice Administrator<br>1650 Arch Street, Suite 2210<br>Philadelphia, PA 19103 | AFFF Public Water System Claims PO Box 4466<br>Baton Rouge, LA 70821 |
| **Opt Out Administrator**<br>Rubris Inc.<br>P.O. Box 3866<br>McLean, VA 22103 ||

4

**Clerk of the Court:**

Clerk, United States District
Court for the District
of South Carolina
85 Broad Street
Charleston, SC 29401

**Counsel for BASF Corporation**:

Matthew A. Holian
DLA Piper LLP (US)
33 Arch Street, 26th Floor
Boston, MA 02110
Matt.holian@dlapiper.com

John R. Wellschlager
DLA Piper LLP (US)
650 South Exeter Street, Suite 1100
Baltimore, MD 21202
John.wellschlager@dlapiper.com

# EXHIBIT G

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| IN RE: AQUEOUS FILM-FORMING FOAMS PRODUCTS LIABILITY LITIGATION | ) Master Docket<br>) No.: 2:18-mn-<br>   2873-RMG |

| | |
|---|---|
| CITY OF CAMDEN, et al., | ) Civil Action No.: |
| *Plaintiffs,* | ) 2:24-cv-03174-RMG |
| -*vs*- | ) |
| BASF CORPORATION, individually and as successor in interest to Ciba Inc., | ) |
| *Defendant.* | ) |

Before the Court is the Motion of proposed Class Counsel for Preliminary Approval of Settlement Agreement (the "Preliminary Approval Motion"), pursuant to Rules 23(a), 23(b), and 23(e) of the Federal Rules of Civil Procedure, which seeks: (1) Preliminary Approval of the Settlement Agreement; (2) preliminary certification, for settlement purposes only, of the Settlement Class; (3) approval of the form of Notice to the Settlement Class; (4) approval of the Notice Plan; (5) appointment of Class Counsel; (6) appointment of Class Representatives; (7) appointment of the Notice Administrator; (8) appointment of the Opt Out Administrator; (9) appoint of the Claims Administrator; (10) appointment of the Special Master; (11) appointment of the Escrow Agent; (12) approval of the Escrow Agreement; (13) establishment of the Qualified Settlement Fund; (14) scheduling of a Final Fairness Hearing; and (15) a stay of all proceedings brought by Releasing Persons in the MDL and in other Litigation in any forum as to BASF Corporation ("BASF"), and an injunction against the filing of any new such proceedings. (Dkt. No. XXX).

WHEREAS, a proposed Settlement Agreement has been reached by and among (i) Class

2

Representatives, individually and on behalf of the Eligible Claimants, by and through Class Counsel, and (ii) defendant BASF;

WHEREAS, the Court, for the purposes of this Order Granting Preliminary Approval, adopts all defined terms as set forth in the Settlement Agreement;

WHEREAS, this matter has come before the Court pursuant to the Preliminary Approval Motion;

WHEREAS, BASF does not oppose the Court's entry of this Order Granting Preliminary Approval;

WHEREAS, the Court finds that it has jurisdiction over the action and each of the Parties for purposes of settlement and asserts jurisdiction over the Class Representatives for purposes of considering and effectuating the Settlement Agreement;

WHEREAS, the Court has considered all of the presentations and submissions related to the Preliminary Approval Motion and, having presided over and managed the proceedings in the MDL as Transferee Judge since December 7, 2018, pursuant to the Transfer Order of the same date, is familiar with the facts, contentions, claims, and defenses as they have developed in these proceedings, and is otherwise fully advised of all relevant facts in connection therewith.

**IT IS HEREBY ORDERED AS FOLLOWS:**

## I.    PRELIMINARY APPROVAL OF SETTLEMENT AGREEMENT

1.    The Court finds that the requirements of Rules 23(a)(1)-(4), 23(b), and 23(e) of the Federal Rules of Civil Procedure have been satisfied for purposes of preliminary approval of the Settlement Agreement such that notice of the Settlement Agreement should be directed to Eligible Claimants and a Final Fairness Hearing should be set.

2.    The Settlement Agreement, including all Exhibits and Parties' Joint Interpretive Guidance documents attached thereto, is preliminarily approved by the Court.

## II.    FINDINGS REGARDING THE SETTLEMENT CLASS

3.     The Settlement Class consists of, only for purposes of the Settlement Agreement:

(a)     Every Active Public Water System in the United States of America that has one or more Impacted Water Sources as of May 15, 2024.

An "Impacted Water Source" means a Water Source that has a Qualifying Test Result showing a Measurable Concentration of PFAS.

4.     The following are excluded from the Settlement Class:

(a)     Any Public Water System that is owned and operated by a State government and cannot sue or be sued in its own name.

(b)     Any Public Water System that is owned and operated by the federal government and cannot sue or be sued in its own name.

(c)     Any privately owned well that provides water only to its owner's (or its owner's tenant's) individual household and any other system for the provision of water for human consumption that is not a Public Water System.

5.     The Court finds that it will likely be able to certify the Settlement Class for purposes of judgment on the proposed Settlement Agreement. The Settlement Class is likely to meet the numerosity, commonality, typicality, and adequacy requirements of Rule 23(a)(1)-(4) of the Federal Rules of Civil Procedure and the predominance and superiority requirements of Rule 23(b)(3) of the Federal Rules of Civil Procedure.

6.     The following Class Representatives are preliminarily appointed for purposes of the Settlement: City of Camden; California Water Service Company; City of Benwood; City of Brockton; City of Sioux Falls; City of Delray Beach; City of Freeport; Coraopolis Water & Sewer Authority; Dalton Farms Water System; Martinsburg Municipal Authority; South Shore; Township of Verona; and Village of Bridgeport.

4

7.      Subject to final approval by the Court of class certification, the Court provisionally appoints: Michael A. London and the law firm of Douglas & London; Scott Summy and the law firm of Baron & Budd; Paul J. Napoli and the law firm of Napoli Shkolnik; and Joe Rice and the law firm of Motley Rice, LLC as Class Counsel under Rule 23(g)(3) of the Federal Rules of Civil Procedure.

## III.     FINDINGS REGARDING THE SETTLEMENT AGREEMENT

8.      Under Rule 23(e)(2) of the Federal Rules of Civil Procedure, in order to approve the proposed Settlement Agreement, the Court must determine whether it is fair, reasonable, and adequate. Rule 23(e)(2) sets forth factors that the Court must consider in reaching that determination.

9.      The Parties have provided the Court sufficient information, including in the Preliminary Approval Motion and related submissions and presentations, to enable the Court to determine whether to give notice of the proposed Settlement Agreement to the Settlement Class. The proposed Settlement Agreement is the product of intensive, arm's-length, non-collusive negotiations overseen by the Court-appointed mediator, Honorable Layn Phillips; has no obvious deficiencies; does not improperly grant preferential treatment to the Class Representatives; and is fair, reasonable, and adequate.  Accordingly, the Court has taken the Rule 23(e)(2) factors and applicable precedent into account in finding that it will likely be able to approve the proposed Settlement Agreement as fair, reasonable, and adequate.

10.      [*Analysis and ruling on Objections, if any*]

11.      The Court finds that it will likely be able to approve, under Rule 23(e)(2) of the Federal Rules of Civil Procedure, the proposed Settlement Agreement.

## IV.     NOTICE TO ELIGIBLE CLAIMANTS

12.      Under Rule 23(c)(2) of the Federal Rules of Civil Procedure, the Court finds that the Notice set forth in Exhibit D to the Settlement Agreement, the Notice Plan set forth in Exhibit E to the Settlement Agreement, and the Summary Notice set forth in Exhibit F to the Settlement Agreement  (a) is the best practicable notice; (b) is reasonably calculated under the circumstances to apprise Eligible

5

Claimants of the pendency of this action and the Settlement Agreement and of their right to object to or exclude themselves from the proposed Settlement Class; (c) is reasonable and constitutes due, adequate, and sufficient notice to all Persons entitled to receive notice; and (d) meets all applicable requirements of Rule 23 of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), and other applicable laws and rules.

13.    The Court approves the Notice, the Summary Notice, and the Notice Plan, and hereby directs that the Notice and the Summary Notice be disseminated pursuant to the Notice Plan to Eligible Claimants under Rule 23(e)(1) of the Federal Rules of Civil Procedure.

14.    The Notice Plan shall commence no later than fourteen (14) calendar days after entry of this Order Granting Preliminary Approval—namely, no later than **X, 2024** so as to commence the period during which Eligible Claimants may opt out from the Settlement Class and Settlement or object to the Settlement.

## V.    PROCEDURE FOR REQUESTS FOR EXCLUSION AND OBJECTIONS

15.    The procedure for Requests for Exclusion set forth in Paragraph 9.7 of the Settlement Agreement and the instructions in the Notice regarding the procedures that must be followed to opt out of the Settlement Class and Settlement are approved.

16.    Any Eligible Claimant wishing to opt out of the Settlement Class and Settlement must complete a Request for Exclusion, in a form substantially similar to the one attached as Exhibit I to the Settlement Agreement. The Request for Exclusion will be available online and allow for electronic submission to the designated recipient list. Eligible Claimants may also submit the Request for Exclusion form via paper copy and serve it on the Opt Out Administrator at the address set forth in the Notice. Such written request must be received no later than the date ninety (90) calendar days following the commencement of the Notice Plan (as described in Paragraph 13 of this Order), which is the last day of the opt out period. The last day of the opt out period is **X, 2024**.

17.     Any Class Member that does not submit a timely and valid Request for Exclusion submits to the jurisdiction of the Court and, unless the Class Member submits an Objection that complies with the provisions of Paragraphs 20 through 22 of this Order, shall waive and forfeit any and all objections the Class Member may have asserted. The submission of a Request for Exclusion shall have the effect of waiving and forfeiting any and all objections the Class Member did assert or may have asserted. Requests for Exclusion may be withdrawn at any time prior to the Final Fairness Hearing. However, the withdrawal of a Request for Exclusion shall neither permit a Person to assert new Objections, nor to revive previously asserted ones.

18.     Pursuant to Section 10 of the Settlement Agreement, BASF shall have the option, in its sole discretion, to terminate the Settlement Agreement following notice of Requests for Exclusion if any of the conditions set forth in Paragraph 10.1 of the Settlement Agreement are satisfied. The Special Master shall determine whether all parts of the Required Participation Threshold have been satisfied and shall inform the parties of such determination within fourteen (14) calendar days after the deadline for submitting Requests for Exclusion set forth in Paragraph 16 of this Order. BASF shall then have until fourteen (14) calendar days after the Special Master's determination to provide Class Counsel notice of its exercise of the Walk-Away Right.

19.     The procedure for objecting to the Settlement or to an award of fees or expenses to Class Counsel, as set forth in Paragraph 9.5 of the Settlement Agreement, is approved.

20.     A Class Member who wishes to object to the Settlement or to an award of fees or expenses to Class Counsel must file a written and signed statement designated "Objection" with the Clerk of the Court and serve a copy of such Objection on Class Counsel and BASF's Counsel at the addresses set forth in the Notice. All Objections must certify, under penalty of perjury in accordance with 28 U.S.C. § 1746, that the filer has been legally authorized to object on behalf of the Class Member and must provide (a) the Class Member's SDWIS ID; (b) an affidavit or other proof of the Class

Member's standing; (c) the name, address, telephone and facsimile number and email address (if available) of the filer and the Class Member; (d) the name, address, telephone, and facsimile number and email address (if available) of any counsel representing the Class Member; (e) all objections asserted by the Class Member and the specific reason(s) for each objection, including all legal support and evidence the Class Member wishes to bring to the Court's attention; (f) an indication as to whether the Class Member wishes to appear at the Final Fairness Hearing; and (g) the identity of all witnesses the Class Member may call to testify.

21.     All Objections shall be filed and served no later than the date sixty (60) calendar days following the commencement of the Notice Plan (as described in Paragraph 14 of this Order), which is the last day of the objection period.  The last day of the objection period is **X, 2024**.  Any Objection not filed and served by such date shall be deemed waived.

22.     A Class Member may object either on its own or through an attorney hired at that Class Member's own expense, provided the Class Member has not submitted a written Request for Exclusion.  An attorney asserting objections on behalf of a Class Member must, no later than the deadline for filing Objections specified in Paragraph 21 of this Order, file a notice of appearance with the Clerk of Court and serve a copy of such notice on Class Counsel and BASF's Counsel at the addresses set forth in the Notice.

23.     Any Class Member who fully complies with the provisions of Paragraph 9.5 of the Settlement Agreement and Paragraphs 20 through 22 of this Order may, in the Court's discretion, appear at the Final Fairness Hearing to object to the Settlement or to the award of fees and costs to Class Counsel.  Any Class Member who fails to comply with the provisions of Paragraph 9.5 of the Settlement Agreement and Paragraphs 20 through 22 of this Order shall waive and forfeit any and all objections the Class Member may have asserted.

24.     The assertion of an Objection does not operate to opt the Person asserting it out of, or otherwise exclude that Person from, the Settlement Class. A Person within the Settlement Class can opt out of the Settlement Class and Settlement only by submitting a valid and timely Request for Exclusion in accordance with the provisions of Paragraph 9.7 of the Settlement Agreement and Paragraphs 15 to 16 this Order. Requests for Exclusion may be withdrawn at any time prior to the Final Fairness Hearing. However, the withdrawal of a Request for Exclusion does not permit a Person to assert new Objections nor revive previously asserted Objections.

25.     No later than **X**, **2024**, the Special Master shall prepare and file with the Court, and serve on Class Counsel and BASF's Counsel, a list of all Persons who have timely filed and served Requests for Exclusion or Objections.

## VI.     FINAL FAIRNESS HEARING

26.     A Final Fairness Hearing shall take place on the **Xth day of X**, **2024 at 10 o'clock in the a.m.**, U.S. Court House, 85 Broad St., Charleston, South Carolina, at which the Court will consider submissions regarding the proposed Settlement Agreement, including any Objections, and whether: (a) to approve thereafter the Settlement Agreement as fair, reasonable, and adequate, pursuant to Rule 23 of the Federal Rules of Civil Procedure, (b) to certify the Settlement Class, and (c) to enter the Order Granting Final Approval; (d) enter judgment dismissing the Released Claims as set forth in the Settlement Agreement; and (e) permanently enjoin any Class Member from asserting or pursuing any Released Claim against any Released Person in any forum as provided in Paragraph 9.9 of the Settlement Agreement. The Final Fairness Hearing shall be subject to adjournment by the Court without further notice, other than that which may be posted by the Court on the Court's website.

27.     Class Counsel shall file a motion for attorneys' fees, costs, and Class Representative service awards no later than **X**, **2024**.

9

28.     Class Counsel and BASF's Counsel shall file any papers in support of Final Approval of the Settlement Agreement, and any responses to any Objections, no later than **X**, __2024__.

## VII.     STAY ORDER AND INJUNCTION

29.     All litigation in any forum brought by or on behalf of a Releasing Person and that asserts a Released Claim, and all Claims and proceedings therein, are hereby stayed as to the Released Persons, except as to proceedings that may be necessary to implement the Settlement. All Releasing Persons are enjoined from filing or prosecuting any Claim in any forum or jurisdiction (whether federal, state, or otherwise) against any of the Released Persons, and any such filings are stayed; provided, however, that after the Final Fairness Hearing, the stay and injunction shall not apply to any Person who has filed (and not withdrawn) a timely and valid Request for Exclusion. This Paragraph also shall not apply to any lawsuits brought by a State or the federal government in any forum or jurisdiction. The stay and injunction provisions of this Paragraph will remain in effect until the earlier of (i) the Effective Date, in which case such provisions shall be superseded by the provisions of the Order Granting Final Approval, and (ii) the termination of the Settlement Agreement in accordance with its terms. This Order is entered pursuant to the Court's Rule 23(e) findings set forth above, in aid of its jurisdiction over the members of the proposed Settlement Class and the settlement approval process under Rule 23(e). All statutes of limitations, statutes of repose, or other limitations period imposed by any jurisdiction in the United States are tolled to the extent permitted by law with respect to each Released Party for any Claim of a Releasing Party that is subject to the stay and injunction provisions of this Paragraph from (i) May 20, 2024 until (ii) thirty (30) calendar days after the stay and injunction provisions cease to apply to such Claim under the terms of this Paragraph, after which the running of all applicable statutes of limitations, statutes of repose, or other limitations periods shall recommence. Nothing in the foregoing sentence shall affect any arguments or defenses existing as of the entry of this Order, including but not limited to any prior defenses based on the timeliness of the Claims such as defenses based on

statutes of limitation and statutes of repose.

## VIII.   OTHER PROVISIONS

30.    Matthew Garretson of Wolf/Garretson LLC, P.O. Box 2806, Park City, UT 8406 is appointed to serve as the Special Master and is appointed as the "administrator" of the Qualified Settlement Fund escrow account within the meaning of Treasury Regulations § 1.468B-2(k)(3).

31.    Dustin Mire of Eisner Advisory Group, 8550 United Plaza Boulevard, Suite #1001, Baton Rouge, LA is appointed to serve as the Claims Administrator.

32.    Robyn Griffin, The Huntington National Bank, One Rockefeller Center, 10th Floor, New York, NY 10020 is appointed to serve as the Escrow Agent.

33.    Steven Weisbrot, Angeion Group, is appointed to serve as the Notice Administrator.

34.    Edward J. Bell, Rubris Inc., is appointed to serve as the Opt Out Administrator.

35.    The Court has reviewed the proposed Escrow Agreement and Section 7 of the Settlement Agreement and approves the Escrow Agreement and Section 7 of the Settlement Agreement and authorizes that the escrow account established pursuant to the Escrow Agreement be established as a "qualified settlement fund" within the meaning of Treasury Regulations § 1.468B-1. Such account shall constitute the Qualified Settlement Fund as defined in the Settlement Agreement.

36.    If the Settlement Agreement is terminated or is not consummated for any reason, the Court's findings with respect to certification of the Settlement Class shall be void, the Litigation against the Released Persons for all purposes will revert to its status as of the Settlement Date, and any unexpended Settlement Funds shall be returned to BASF as provided for in Paragraphs 9.11, 9.12, 9.13 or 10.4 of the Settlement Agreement, as applicable. In such event, BASF will not be deemed to have consented to certification of any class, and will retain all rights to oppose, appeal, or otherwise challenge, legally or procedurally, class certification or any other issue in the Litigation. Likewise, if

11

the Settlement does not reach Final Judgment, then the participation in the Settlement by any Class Representative or Class Member cannot be raised as a defense to their claims.

37.     The deadlines set forth in Paragraphs 14, 16, 21, and 25 of this Order may be extended, and the Final Fairness Hearing may be adjourned, by Order of the Court, for good cause shown, without further notice to the Class Members, except that notice of any such extensions or adjournments shall be posted on a website maintained by the Claims Administrator, as set forth in the Notice.

38.     Class Counsel, BASF's Counsel, the Special Master, the Notice Administrator, the Opt Out Administrator and the Escrow Agent are authorized to take, without further Court approval, all actions under the Settlement Agreement that are permitted or required to be taken following entry of this Order Granting Preliminary Approval and prior to entry of the Order Granting Final Approval, including effectuation of the Notice Plan.

39.     Class Counsel and BASF's Counsel are authorized to use all reasonable procedures in connection with administration and obtaining approval of the Settlement Agreement that are not materially inconsistent with this Order Granting Preliminary Approval or the Settlement Agreement, including making, without further approval of the Court or notice to Eligible Claimants, minor changes to the Settlement Agreement, to the form or content of the Notice, or otherwise to the extent the Parties jointly agree such minor changes are reasonable and necessary.

40.     The Court shall maintain continuing jurisdiction over these proceedings (including over the administration of the Qualified Settlement Fund) for the benefit of the Settlement Class.

  **SO ORDERED** this ___ day of _____, 2024.

s/Richard Mark Gergel
The Honorable Richard M. Gergel
United States District Judge

12

# EXHIBIT H

**EXHIBIT H**
**Opt Out Form**

*In accordance with Paragraph 9.6 of the Settlement Agreement, any Eligible Claimant that wishes to opt out of the Settlement must complete the Request for Exclusion form, below. The Request for Exclusion form will be available online and allow for electronic submission to the Notice Administrator, the Special Master, the Claims Administrator, BASF's Counsel, and Class Counsel. Submission of paper Request for Exclusion forms will be permitted and must be served on the Opt Out Administrator in accordance with Federal Rule of Civil Procedure 5, who shall ensure that all such paper forms are made available in the portal in accordance with the Settlement Agreement.*

*Anyone completing this form should carefully review both the Settlement Agreement and all its exhibits, including the guidance set forth in the Parties' Joint Interpretive Guidance documents.*

*All capitalized terms herein shall have the same meaning as in the Settlement Agreement.*

**REQUIREMENTS**:

- <u>Timeliness</u> – All Requests for Exclusion must be properly submitted to the Opt Out Administrator by the deadline, [DATE]. PAO § X.

- <u>Eligible Claimant information</u> – All Requests for Exclusion must provide all required information about the Eligible Claimant Public Water System.

- <u>Filer information</u> – All Requests for Exclusion must provide all required information about the filer (i.e. the Person completing and submitting the Request for Exclusion).

- <u>Certification of legal authority</u> – Any entity submitting a Request for Exclusion must complete the affidavit in Section D below, certifying under penalty of perjury in accordance with 28 U.S.C. § 1746 the Eligible Claimant's standing, and that the filer has been legally authorized to exclude the Eligible Claimant from the Settlement.

  - The filer must be the affiant. Upon submission of the completed Request for Exclusion, all recipients indicated in the CC field in Section C below shall receive an email confirming receipt of the submitted Request for Exclusion as well as a PDF copy of same.

2

**EFFECT OF REQUESTING EXCLUSION**:

- Opting out voids Objections – The submission of a Request for Exclusion shall have the effect of waiving and forfeiting any and all objections that were or could have been asserted. MSA § 9.7.

- Opt Outs are not bound – Any Eligible Claimant that submits a timely and valid Opt Out shall not:

  (i)     be bound by the Settlement Agreement, or by any orders or judgments entered in the MDL Cases with respect to this Settlement Agreement (but shall continue to be bound by other orders entered in the Litigation, including any protective order);

  (ii)    be entitled to any of the relief or other benefits provided under the Settlement Agreement;

  (iii)   gain any rights by virtue of the Settlement Agreement; or

  (iv)    be entitled to submit an Objection.

  MSA § 9.7.1.

**WITHDRAWAL OF OPT OUT**:

- Opt Outs may be withdrawn – Any Eligible Claimant that has elected to opt out may withdraw its Request for Exclusion submitted at any time prior to the Final Fairness Hearing and thereby accept all terms of this Settlement Agreement, including its Dismissal provisions.

- Effect of withdrawal – The withdrawal of a Request for Exclusion does not permit a Person to assert new objections nor revive previously asserted objections.

**REQUEST FOR EXCLUSION FORM WITH FILLABLE FIELDS**:

Please complete each field below in order to submit a Request for Exclusion. Fields that state "if available" or "if applicable" are optional; all others are required.

Filers will create a log-in to the Opt Out portal. The log-in will be associated with the email address they provide.

Filers must submit one Request for Exclusion per Eligible Claimant. In the event that filers have authority over and intend to request exclusion for multiple Eligible Claimants, they will have the opportunity to carry over their filer information from sections B and C into subsequent Requests on behalf of additional Eligible Claimants.

3

A. <u>Eligible Claimant information</u> – This section requests information about the Public Water System requesting exclusion.

   1. Eligible Claimant name.

      _____

   2. Eligible Claimant SDWIS ID.

      _____

   3. Eligible Claimant address.

      _____

   4. Eligible Claimant telephone number (if available).

      _____

   5. Eligible Claimant facsimile number (if available).

      _____

   6. Eligible Claimant email address (if available).

      _____

   7. Eligible Claimant counsel name (if applicable).

      _____

   8. Eligible Claimant counsel email address (if applicable).

      _____

*[The online form will automatically transfer information provided in the fields for Sections A.7 and A.8 above to Section C below so that any counsel identified receives confirmation of the submitted Request for Exclusion and a PDF copy of same.*]

B. <u>Filer information</u> – This section requests information about the person completing the Request for Exclusion on the Eligible Claimant's behalf.

   1. Filer name.

      _____

   2. Filer law firm (if applicable).

      _____

   3. Filer address.

      _____

   4. Filer telephone number.

      _____

   5. Filer facsimile number (if available).

      _____

   6. Filer email address.

      _____

C. <u>Recipients of confirmation (optional)</u> – This section requests the name(s) and email address(es) of the Persons to whom confirmation of the submission of a Request for Exclusion should be sent, along with a copy of the submitted Request for Exclusion. If this section is left blank, only the filer, and counsel identified in Sections A.7 and A.8, if any, will receive confirmation and a copy of the submitted Request for Exclusion.

4

1.  Name.

    _____

2.  Email.

    _____

*[The online form will allow for addition of as many confirmation email recipients as desired.]*

D.  Certification of legal authority – Please complete each field in the affidavit below.

1.  My name is _____ [FILER'S NAME]. I am _____ [TITLE/ROLE] and legally authorized to request exclusion from the BASF PWS Settlement on behalf of _____ [ELIGIBLE CLAIMANT NAME], with SDWIS ID _____ [ELIGIBLE CLAIMANT SDWIS ID].

2.  _____ [ELIGIBLE CLAIMANT] has standing to request exclusion because it is an Eligible Claimant as such term is defined in the Settlement Agreement because it is an Active Public Water System in the United States of America that has one or more Impacted Water Sources as of May 15, 2024, and does not fall under any of the exclusions to the Settlement Class definition.

    a)  _____ [ELIGIBLE CLAIMANT] is not owned by a State government.
    b)  _____ [ELIGIBLE CLAIMANT] is not owned by the federal government.
    c)  _____ [ELIGIBLE CLAIMANT] has independent authority to sue and be sued.
    d)  _____ [ELIGIBLE CLAIMANT] is not a privately owned well that provides water only to its owner's (or its owner's tenant's) individual household.

3.  I understand that submission of this Request for Exclusion waives and forfeits any and all objections that _____ [ELIGIBLE CLAIMANT] did or could have asserted.

4.  I understand that submission of this Request for Exclusion means that _____ [ELIGIBLE CLAIMANT] is not bound by the Settlement Agreement, or by any orders or judgments entered in the MDL Cases with respect to this Settlement Agreement (but that _____ [ELIGIBLE CLAIMANT] shall continue to be bound by other orders entered in the Litigation, including any protective order). I further understand that by virtue of submission of this Request for Exclusion, _____ [ELIGIBLE CLAIMANT] is not entitled to any of the relief or other benefits provided under the Settlement Agreement, and is not entitled to gain any rights by virtue of the Settlement Agreement.

I declare under penalty of perjury under 28 U.S.C. § 1746 that the foregoing is true and correct. Executed this _____ day of _____ [MONTH], 2024, at _____ [CITY, STATE].

Signature:

_____

# EXHIBIT I

## **Bellwether Plaintiffs**

*The list of Eligible Claimants that have served as one of the thirteen (13) Public Water System Bellwether Plaintiffs in the MDL Cases*

1.  Bakman Water Company
2.  City of Dayton
3.  City of Sioux Falls
4.  City of Stuart
5.  City of Watertown
6.  Emerald Coast Utilities Authority
7.  Hampton Bays Water District
8.  Southeast Morris County Municipal Utilities Authority
9.  Town of Ayer
10. Town of Maysville
11. Village of Farmingdale
12. Warminster Township Municipal Authority
13. Warrington Township

# EXHIBIT J

**<u>Letter from Releasing Party</u>**

Dear [*Person or Entity*]:

This letter regards [*name and SDWIS ID of Releasing Party/Water System*] ("[*System*]"), BASF Corporation ("BASF") and entities affiliated with BASF, and certain provisions in the Settlement Agreement Between Public Water Systems and BASF approved by a federal judge on [*date of Final Approval*] ("the Settlement" or the "Settlement Agreement"). The Settlement involves Drinking Water and the group of chemicals commonly known as "PFAS." All capitalized terms not otherwise defined herein shall have the meaning set forth in the Settlement Agreement.

The purpose of this letter is to provide information about the broad, inclusive, and expansive release that [*System*] has provided to BASF and certain entities affiliated with BASF as part of a Settlement between Public Water Systems across the country and BASF.

This letter does not provide or purport to provide you with legal advice. Nothing in this letter modifies or purports to modify any part of the Settlement. Rather, this letter explains certain rights and responsibilities of [*System*] and BASF in light of the Settlement. If you would like to review the terms of the Settlement itself, it is available at www.PFASWaterSettlement.com.

**<u>Claims Released by [*System*] Under the Settlement</u>**

Under the Settlement, [*System*] has released certain Claims against BASF and entities affiliated with BASF (collectively, the "Released Parties") such that those Claims are fully, finally, and forever resolved. Subject to certain exceptions, under the Settlement, [*System*] has released as broadly, expansively, and inclusively as possible **<u>any</u>** Claim:

1. That may have arisen or may arise at any time in the future out of, relates to, or involves PFAS that has entered or may reasonably be expected to enter Drinking Water or any Releasing Party's Public Water System; including any Claim that:

   a) was or could have been asserted in the Litigation and that arises or may arise at any time in the future out of, relates to, or involves Drinking Water or [*System*]'s Public Water System;

   b) is for any type of relief with respect to the design, engineering, installation, maintenance, or operation of, or cost associated with, any kind of treatment, filtration, remediation, management, investigation, testing, or monitoring of PFAS in Drinking Water or in [*System*]'s Public Water System; or

   c) has arisen or may arise at any time in the future out of, relates to, or involves any increase in the rates for Drinking Water that [*System*] charges its customers;

2. Arising out of, relating to, or involving the development, manufacture, formulation, distribution, sale, transportation, storage, loading, mixing, application, or use of PFAS or any product (including aqueous film-forming foam ("AFFF")) manufactured with or

containing PFAS (to the extent such Claim relates to, arises out of, or involves PFAS);

3. That has arisen or may arise at any time in the future out of, relates to, or involves the development, manufacture, formulation, distribution, sale, transportation, storage, loading, mixing, application, or use of PFAS or any product (including AFFF) manufactured with or containing PFAS (to the extent such Claim relates to, arises out of, or involves PFAS);

4. That has arisen or may arise at any time in the future out of, relates to, or involves [*System*]'s transport, disposal, or arrangement for disposal of PFAS-containing waste or PFAS-containing wastewater, or [*System*]'s use of PFAS-containing water for irrigation or manufacturing;

5. That has arisen or may arise at any time in the future out of, relates to, or involves representations about PFAS or any product (including AFFF) manufactured with or containing PFAS (to the extent such Claim relates to, arises out of, or involves PFAS); and

6. For punitive or exemplary damages that has arisen or may arise at any time in the future out of, relates to, or involves PFAS or any product (including AFFF) manufactured with or containing PFAS (to the extent such Claim relates to, arises out of, or involves PFAS).

**BASF and the Other Released Parties Have No Further Obligation to Pay**

Through its payments under the Settlement, BASF has fully resolved any and all duties and obligations that it or the other Released Parties might have to contribute funds toward or otherwise address any alleged damages, treatment, filtration, or remediation that in any way arises out of, relates to, or involves PFAS that has entered or may enter Drinking Water or the Public Water System of [*System*] or any other Releasing Party.

**[*System*] Has Invested or Will Invest, if Warranted, in Keeping PFAS Concentrations Below Maximum Contaminant Levels**

[*System*] has invested or will invest, if warranted, in treatment to reduce PFAS concentrations in its Drinking Water to or below federal and state Maximum Contaminant Levels for PFAS as they may be updated from time to time.

Sincerely,

[*signature of authorized representative of Releasing Party/Water System*]

3

# EXHIBIT K

## Dismissal with Prejudice

*Model Dismissals with prejudice per Paragraph 12.5*

Pursuant to Paragraph 12.5 of the Settlement Agreement, each Releasing Party shall execute a stipulation of dismissal with prejudice of all Released Claims (the "Dismissal") in the form provided by this Exhibit K within fourteen (14) calendar days after the Effective Date.

This Exhibit K provides two model Dismissals:

- **Exhibit K.1** is a full Dismissal of all Claims brought in the Litigation by the Releasing Party against any Released Party.

- **Exhibit K.2** is a limited Dismissal of Claims brought in the Litigation by the Releasing Party against any Released Party, which may be used only upon written agreement among the Releasing Party, Class Counsel, and BASF's Counsel, or by leave of court, pursuant to Section 12.5.1 of the Agreement.

Exhibits K.1 and K.2 are styled as stipulated Dismissals. However, under either circumstance set forth in this paragraph, a Dismissal may be differently styled and still satisfy the requirements set forth in Paragraph 12.5. First, if a voluntary Dismissal by the Releasing Party will properly effectuate the required Dismissal with prejudice, the Releasing Party and the Released Parties may agree that the Releasing Party will file a voluntary Dismissal and, if so, shall agree to such changes to the appropriate model Dismissal as are reasonably necessary for it to be so filed.

Second, if an applicable rule of procedure or other applicable law requires either that the Dismissal be styled as something other than a stipulated Dismissal or that parties in addition to the Releasing Party and the Released Parties would need to join the stipulation, for the stipulation to become effective, the Releasing Party and the Released Parties shall make such changes to the appropriate model Dismissal as are reasonably necessary to conform to the applicable rule(s) or law(s) (*e.g.*, by restyling the model Dismissal as an agreed motion to dismiss). For the avoidance of doubt, any Dismissal must be a Dismissal with prejudice of all Claims required to be dismissed by the Settlement Agreement, including by Paragraph 12.5, and must be filed with the appropriate court(s) within the later of fourteen (14) calendar days after the Effective Date or seven (7) calendar days after the Court's ruling on any motion for leave to file a limited dismissal.

2

**EXHIBIT K.1**
**Full Dismissal with Prejudice**

**[INSERT COURT]**

| [Insert Case Caption] | [Insert Case Number] |
|---|---|
| | |

**STIPULATION OF DISMISSAL PURSUANT TO [insert applicable rule(s) of procedure]**

Pursuant to [insert applicable rule(s) of procedure], Plaintiff in the above-captioned action and Defendant BASF Corporation ("BASF") hereby stipulate and agree to a dismissal with prejudice of all Plaintiff's Claims against BASF and any other Released Parties[1] in this action pursuant to Plaintiff's decision to participate in the Settlement Agreement Between Public Water Systems and BASF dated May 20, 2024 (the "Settlement Agreement"), which received final approval on _____, 2024, from the Court overseeing *In Re: Aqueous Film-Forming Foams Products Liability Litigation,* MDL No. 2:18-mn-2873 (D.S.C.). The Released Parties in this action are BASF and the following defendants: [insert other Released Parties in above-captioned action].

Each party shall bear its own costs.

Dated: _____, 2024                                    Respectfully submitted,

/s/_____          /s/_____
[Plaintiff Counsel Signature Block]                [BASF Counsel Signature Block]
*Counsel for Plaintiff*                                    *Counsel for BASF Corporation*

---

[1] Unless otherwise indicated, all capitalized terms in this motion have the meaning given to them in the Settlement Agreement.

3

## CERTIFICATE OF SERVICE

[Insert certificate of service, if appropriate.]

**EXHIBIT K.2**
**Limited Dismissal with Prejudice**

**[INSERT COURT]**

| | |
|---|---|
| **[Insert Case Caption]** | [Insert Case Number] |

**STIPULATION OF DISMISSAL PURSUANT TO [insert applicable rule(s) of procedure]**

Pursuant to [insert applicable rule(s) of procedure], Plaintiff in the above-captioned action and Defendant BASF Corporation ("BASF") hereby stipulate and agree to a dismissal with prejudice of certain of Plaintiff's Claims against BASF and any other Released Parties[2] in this action pursuant to Plaintiff's decision to participate in the Settlement Agreement Between Public Water Systems and BASF dated May 20, 2024 (the "Settlement Agreement"), which received final approval on _____, 2024, from the Court overseeing *In Re: Aqueous Film-Forming Foams Products Liability Litigation,* MDL No. 2:18-mn-2873 (D.S.C.). The Released Parties in this action are BASF and the following defendants: [insert other Released Parties in above-captioned action].

The certain Claims or portions thereof that are <u>not</u> dismissed pursuant to this stipulation are the following: [insert non-dismissed Claims or portions of Claims listed as to the Plaintiff (or its affiliated entity) as agreed among the Releasing Party, Class Counsel, and BASF's Counsel, or as ordered by the court upon Releasing Party's motion for leave, consistent with Paragraph 12.5.1 of the Settlement Agreement] The Claims or portions of Claims specified above are not dismissed in this action as to the Released Parties. The parties stipulate and agree to a dismissal with prejudice

---

[2] Unless otherwise indicated, all capitalized terms in this stipulation have the meaning given to them in the Settlement Agreement.

4

of all other Claims and portions of Claims that Plaintiff has brought against any and all Released Parties.

Each party shall bear its own costs.

Dated: _____, 2024                              Respectfully submitted,

/s/_____          /s/_____
[Plaintiff Counsel Signature Block]          [BASF Counsel Signature Block]
*Counsel for Plaintiff*                      *Counsel for BASF Corporation*

5

## CERTIFICATE OF SERVICE

[Insert certificate of service, if appropriate.]

# EXHIBIT L

**<u>Required Participation Thresholds</u>**

**Agreement to be Filed Under Seal**

Confidential Document Contemporaneously Submitted to the Court for In Camera Review
in Compliance with CMO No. 17

# EXHIBIT M

**MEMORANDUM:**

**THE PARTIES' JOINT INTERPRETIVE GUIDANCE ON INTERRELATED DRINKING WATER SYSTEMS**

This memorandum provides guidance on how the Settlement Agreement between Public Water Systems and BASF Corporation applies in interrelated Drinking Water systems where there is not a single entity that draws water from a source, treats the water for any contaminants, and distributes the water to residential customers and other end users. This memorandum uses as its chief example of an interrelated Drinking Water system the scenario where one water system (a "retail customer") purchases water from another entity (a "wholesaler"). The principles set forth here may also apply to other interrelated-system scenarios where more than one entity is involved in providing Drinking Water.

**BASIC PRINCIPLES**

- The Settlement Agreement applies to Public Water Systems that operate as wholesalers. Most wholesalers are registered with the EPA as Public Water Systems[1] and/or fall within the Settlement Agreement's definition of "Public Water System."

- Public Water Systems, including wholesalers and their retail customers, are Class Members if they fall within the definition of the "Settlement Class." A Public Water System is in the Settlement Class if it detects PFAS at any level on or before May 15, 2024 or otherwise falls within the Settlement Class definition.

- Purchased water is covered by the Settlement and will be taken into account by the Claims Administrator under the Allocation Procedures.

- Consistent with a fundamental precept of the Settlement, the Settlement Agreement provides for one payment for each respective Water Source, not a double recovery by both the wholesaler and its retail customer. The payment may be divided between the wholesaler and the retail customer as described below.

- The Settlement Agreement provides the Claims Administrator with sufficient discretionary authority, subject to the Special Master's oversight and authority to decide appeals, to apply the terms of the Settlement Agreement (including its Exhibits) to the unique facts presented by each interrelated Drinking Water system, in order to expeditiously allocate and distribute the Settlement Funds among all Qualifying Class Members in a manner that is fair and equitable and accords with the procedures and timing described in the Allocation Procedures. Appeals of the Claims Administrator's decisions regarding apportionment of an award between two or more claimants will be

---

[1] In determining the number of people that a wholesaler serves, data from SDWIS's "Population Served Count" field should be considered for both the wholesaler and related entities such as its customers, as indicated by SDWIS's "Seller PWS ID" and "Seller PWS Name" fields.

2

governed by the appeals process described in paragraph 2.66 and section 8 of the Settlement Agreement.

## OPERATION OF ALLOCATION PROCEDURES

- In almost all circumstances where a Public Water System purchases water from a wholesaler, both will be in the Settlement Class as to that water. Because the Settlement provides that there will be one amount allocated to that water to avoid double recovery or duplicative allocation, the following principles will apply to dividing the Allocated Amount between the wholesaler and the retail customer:

  o If the wholesaler and the retail customer come to an agreement as to how to divide the Allocated Amount, they should inform the Claims Administrator (either by submitting a Joint Claims Form, as described below, or otherwise).

  o Absent such an agreement, the Claims Administrator will divide the Allocated Amount based on relative capital and O&M costs of PFAS treatment borne by the wholesaler and the retail customer, respectively. The Claims Administrator shall determine how such costs are "borne" by assessing and taking into account which entity does, or has responsibility for, the PFAS treatment[2] and, to the extent it is the wholesaler, whether the retail customer paid all or part of the costs indirectly through the purchase price, under the applicable contract, or otherwise.[3]

- Where the wholesaler opts out (or, hypothetically, is not in the Settlement Class), but the retail customer is in the Settlement Class, the retail customer receives the recovery for the water if it shows that it bears the PFAS treatment costs for that water.

- Where the retail customer opts out (or, hypothetically, is not in the Settlement Class), but the wholesaler is in the Settlement Class, the wholesaler receives the recovery for the water if it shows that it bears the PFAS treatment costs for that water.

In applying these principles, the Claims Administrator will use information supplied in Claims Forms as described below.

## MECHANICS FOR SUBMISSION OF CLAIMS FORMS

Class Members in a wholesaler-retailer relationship will have three options for submitting Claims Forms relating to the purchased water: (1) submit a Joint Claims Form to the Claims

---

[2] In this memorandum, PFAS "treatment" refers to PFAS treatment, filtration, and remediation, removal of PFAS from water or a system, and any effort to prevent PFAS from entering water or a system.

[3] In this memorandum, references to "borne" and "bear" will be interpreted consistent with these principles. In determining whether a retail customer bears the cost of PFAS treatment, the Claims Administrator also may take into account whether the retail customer shows that water was re-contaminated with PFAS after sale by the wholesaler.

3

Administrator; (2) unilaterally submit other documentation to the Claims Administrator; or (3) do not make any special submission to the Claims Administrator (beyond the individual Claims Form that all Class Members must submit to qualify for payments). The effect of each option will be described next.

**Option One:**
**Submit a Joint Claims Form with Another Class Member**

To assist the Claims Administrator in making decisions where two or more Class Members handle the same water, the Claims Administrator shall make available a Joint Claims Form that any two (or more) Class Members may submit to provide information to help the Claims Administrator assess relevant claims. The Joint Claims Form will enable the Class Members to explain their relationship and express their joint view about the proper division of an Allocated Amount between them. For example, the Class Members submitting this Joint Claims Form may report on any contractual relationship that dictates (or at least suggests) how payments should be shared. The Claims Administrator ordinarily will adhere to any division of funds that the Class Members jointly suggest in their timely Joint Claims Form, provided the agreement is consistent with the principles and terms of the Settlement Agreement.

The Joint Claims Form is in addition to the other Claims Forms required by the Settlement Agreement, which each Class Member must still submit to obtain payment. In addition, if a wholesaler owns Impacted Water Sources that are independent of and unrelated to the water that it sells to a retail customer, the wholesaler can make independent claims for those Impacted Water Sources. Likewise, if a retail customer draws or collects water from Impacted Water Sources that are independent of and unrelated to the water that it purchases from a wholesaler, the retail customer can make independent claims for those Impacted Water Sources.

**Option Two:**
**Submit Other Documentation Unilaterally**

If, for any reason, two or more Class Members that could have submitted a Joint Claims Form do not do so, then the Claims Administrator may consider any relevant documents that either Class Member timely submits to the Claims Administrator. To facilitate the submission and review of such documents, the Claims Administrator shall make available an Addendum Form to be used by any Class Member submitting such documents. These documents could include, for example, a contract dictating or suggesting how such funding should be shared or at least explaining what responsibility is borne by each Class Member for any capital and/or O&M costs of treating PFAS.

**Option Three:**
**Make No Special Submission**

If Class Members that could submit a Joint Claims Form for a specific Water Source do not submit such a Form (Option One), and if none of those Class Members submits relevant documentation (Option Two), the Claims Administrator has full discretionary authority to request additional information that he deems necessary to determine which entity or entities bear

4

the PFAS treatment costs for that water. Absent adequate information about how PFAS treatment costs will be borne, the Claims Administrator may divide an Allocated Amount equally between or among Class Members.

The expectation is that Class Members eligible to file a Joint Claims Form will timely do so, likely rendering unnecessary any request for additional information. Of course, to access funds from the Settlement Agreement, a Class Member also must submit an individual Claims Form and thus become a Qualifying Class Member.

## CLARIFICATIONS

### Scope of Release

The Settlement Agreement contains detailed release provisions that specify whose claims are released. A core purpose of the release provisions is to prevent double recovery for the same water. In general, by participating in the Settlement, a Class Member releases claims on behalf of itself and its Releasing Parties (as defined in the Settlement Agreement) with respect to the water provided to (or supplied by) the Class Member. In general, if a wholesaler opts out of the Settlement Class and its retail customer is a Class Member, the release would extend to the wholesaler as to the water it provided to the Class Member except to the extent the wholesaler shows it had the obligation for and bore unreimbursed PFAS-treatment costs for that water independent of the retail customer. Ultimately, whether claims are released will turn on the application of the release provisions of the Settlement Agreement to the specific facts relevant to the wholesaler, the retail customer, and their relationship.[4]

### Definition of "Water Source"

The Settlement Agreement defines "Water Source" as, among other things, "a groundwater well, a surface water intake, or any other intake point from which a Public Water System draws or collects water for distribution as Drinking Water." This definition is intended to be broad and includes any point from which a Public Water System may draw or collect water, regardless of whether the Water Source is owned by a retail customer or by a wholesaler.

The Settlement Agreement's definition of "Water Source" contains a clause expressly including "the raw or untreated water" that a Public Water System draws or collects from an intake point for distribution as Drinking Water. Such clause was intended to bar duplicative recovery for the same water. It was not intended, and should not be interpreted by the Claims Administrator, to preclude a retail customer from recovering for water that it purchases from a wholesaler, to the extent that the retail customer bears all or part of the PFAS treatment costs for that water. Nor should the clauses be interpreted to bar two or more Class Members from sharing the Allocated Amount for the water if they both bear part of the PFAS treatment costs for that water.

---

[4] Nothing in this guidance supersedes the provisions of the Settlement Agreement about the States, the federal government, or certain Public Water Systems owned by States or the federal government.

5

\* \* \*

Because each interrelated Drinking Water system presents unique facts, ultimately the Claims Administrator, under the Special Master's oversight, will need to exercise sound discretion to ensure fair and equitable outcomes that comport with the principles and terms of the Settlement Agreement.

6

# EXHIBIT N

**MEMORANDUM:**

**THE PARTIES' JOINT INTERPRETIVE GUIDANCE ON ENTITIES THAT OWN AND/OR OPERATE MULTIPLE PUBLIC WATER SYSTEMS**

This memorandum provides guidance on how the Settlement Agreement between Public Water Systems and BASF Corporation applies where a single entity owns and/or operates multiple Public Water Systems.

The Settlement involves a nationwide Settlement Class of individual Public Water Systems. If one Public Water System that is an Eligible Claimant opts out (i.e., submits a Request for Exclusion) and thus does not become a Class Member,[1] that action alone would not automatically result in all Eligible Claimants with the same owner, the same operator, or both, opting out. The Settlement Agreement's Exhibit D (Notice) expressly states:

> [I]f you own or operate more than one Active Public Water System and are authorized to determine whether to submit Requests for Exclusion on those Active Public Water Systems' behalf, you may submit a Request for Exclusion on behalf of some of those Active Public Water Systems but not the other(s).  You must submit a Request for an Exclusion on behalf of each such Active Public Water System that you wish to opt out of the Settlement Class.

Likewise, as to the Release, if an entity that owns and/or operates multiple Public Water Systems becomes a Class Member as to some of them, but opts out as to others, that entity's claims are released as to the former Public Water Systems and their Drinking Water and are not released as to the latter Public Water Systems and their Drinking Water. And if a Class Member is owned by one entity but is operated by a second entity that owns and/or operates multiple Public Water Systems, the Class Member's decision not to opt out would result in releasing the second entity's claims related to the Class Member and its Drinking Water but would not, by itself, result in releasing the claims of other Public Water Systems owned and/or operated by the second entity.

---

[1] Under the Settlement Agreement, "Eligible Claimant" refers to a Public Water System that qualifies as a member of the Settlement Class, while "Class Member" means Eligible Claimant that does not opt out of the Settlement Class. *See* Settlement Agreement §§ 2.14 and 2.23.

# EXHIBIT O

MEMORANDUM:

**THE PARTIES' JOINT INTERPRETIVE GUIDANCE ON FEDERALLY RECOGNIZED INDIAN TRIBES AND PUBLIC WATER SYSTEMS THAT THEY OWN OR OPERATE**

This memorandum provides guidance on how the Settlement Agreement between Public Water Systems and BASF Corporation applies to federally recognized Indian Tribes and Public Water Systems that they own or operate.

The Settlement Agreement does not categorically exclude or otherwise afford differential treatment to Public Water Systems owned or operated by federally recognized Indian Tribes. While the Settlement Agreement expressly excludes from the class definition certain Public Water Systems owned by the federal government or by state governments, it contains no such exclusion for Public Water Systems owned or operated by Tribes. Indeed, the Settlement Agreement contains no provisions whatsoever specifically addressing or differentiating Public Water Systems owned or operated by Tribes.

The effect of the Settlement Agreement is therefore clear: If a Public Water System owned by a Tribe otherwise meets the Settlement Class definition, that system is an Eligible Claimant and, unless the system opts out, that system will be a Class Member and the Settlement will apply in the same manner as it does to every other Class Member. This result—inclusion in the Settlement with the option to opt out—pays respect to Tribal self-government and self-determination and provides Tribe-owned Public Water Systems with a degree of flexibility not afforded to the subset of federal- and state-owned systems that are categorically excluded from the Settlement.

If one Public Water System that is owned or operated by a federally recognized Indian Tribe and is an Eligible Claimant opts out (i.e., submits a Request for Exclusion) and thus does not become a Class Member, that action alone would not automatically result in all Eligible Claimants owned or operated (or owned and operated) by the same Tribe, opting out. The Settlement Agreement's Exhibit D (Notice) expressly states:

> [I]f you own or operate more than one Active Public Water System and are authorized to determine whether to submit Requests for Exclusion on those Active Public Water Systems' behalf, you may submit a Request for Exclusion on behalf of some of those Active Public Water Systems but not the other(s). You must submit a Request for an Exclusion on behalf of each such Active Public Water System that you wish to opt out of the Settlement Class. Any Active Public Water System that is not specifically identified in a Request for Exclusion will remain in the Settlement Class

Likewise, as to the Release, if a federally recognized Indian Tribe that owns or operates (or owns *and* operates) multiple Public Water Systems becomes a Class Member as to some of them, but opts out as to others, that Tribe's claims are released as to the former Public Water Systems and their Drinking Water and are not released as to the latter Public Water Systems and their Drinking Water. And if a Class Member is owned by one federally recognized Indian Tribe

2

but is operated by an entity that owns and/or operates multiple Public Water Systems, the Class Member's decision not to opt out would result in releasing that entity's claims related to the Class Member and its Drinking Water but would not, by itself, result in releasing the claims of other Public Water Systems owned and/or operated by that entity.

Finally, the Parties' mutual understanding is that a Release on behalf of a Tribe-owned Class Member, consistent with the terms of the Settlement Agreement, would not release a Claim that the Tribe might bring, in its sovereign capacity as a natural-resource trustee, for natural-resource damages that are wholly unrelated to Drinking Water or any Public Water System.

# EXHIBIT P

**MEMORANDUM:**

**THE PARTIES' JOINT INTERPRETIVE GUIDANCE ON CERTAIN RELEASE ISSUES**

This memorandum provides guidance on certain issues relating to the interpretation of the release provisions in the Settlement Agreement between Public Water Systems and BASF Corporation.

1.      Paragraphs 12.1.2.1 and 12.1.2.2 of the Settlement Agreement describe certain Claims to which certain parts of the definition of the Release (at Paragraph 12.1.1(i)–(iii)) do not apply. Paragraph 12.1.2.1 provides in part:

> Paragraph 12.1.1(i)–(iii) does not apply to a Class Member's Claim related to the remediation, testing, monitoring, or treatment of real property to remove or remediate PFAS where (i) the Class Member owns or possesses real property and has legal responsibility to remove contamination from or remediate contamination of such real property; (ii) such real property is *separate from and not related in any way to* the Class Member's Public Water System (such as an airport or fire training facility); . . . . (emphasis added)

Paragraph 12.1.2.2 provides in part:

> Paragraph 12.1.1(i)–(iii) does not apply to a Class Member's Claim related to the discharge, remediation, testing, monitoring, treatment,  or processing of stormwater or wastewater to remove or remediate PFAS at its permitted stormwater system or permitted wastewater facility where (i) the Class Member owns or operates a permitted stormwater system or permitted wastewater facility; (ii) such facility is *separate from and not related in any way to* the Class Member's Public Water System such as a separate stormwater or wastewater system that is not related in any way to a Public Water System); . . . .  (emphasis added)

It is the parties' joint understanding that the words "separate from" and "not related in any way to" in the two clauses italicized above mean "separate from and not physically related to."

2.      Paragraph 2.8 of the Settlement Agreement defines the term "Claim" to include a claim for "contribution" or "indemnity." Such a Claim is released only to the extent that it is within the definition of "Release" or "Released Claims" in Paragraph 12.1 of the Settlement Agreement. Accordingly, a Claim for contribution or indemnity that relates to matters that are excluded from the definition of Release or Released Claims (e.g., a Claim that falls within the exceptions in Paragraph 12.1.2 of the Settlement Agreement) is not released.

3.      Paragraph 2.56(c) of the Settlement Agreement defines the term "Releasing Parties" to include, among others, "any past, present, or future administrators, agents, attorneys, board members, counsel, directors, employees, executors, heirs, insurers, managers, members, officers (elected or appointed), predecessors, principals, servants, shareholders, subrogees, successors, trustees, water-system operators, and assignees or other representatives, of any of the

2

foregoing in their official or corporate capacity." It is the parties' joint understanding that this language does not mean that such individual persons release personal Claims (i.e., for personal injury).

3