July 10, 2024

**Via ECF**

Hon. Richard M. Gergel
U.S. District Court for the District of South Carolina
J. Waties Waring Judicial Center
83 Meeting Street
Charleston, SC 29401

> RE:   ***In re Aqueous Film-Forming Foam Products Liability Litigation,***
> **MDL No. 2873, The Sovereigns' AFFF Claims and Damages**

The states and U.S. territories in this MDL (the "Sovereigns"), through the Sovereign

subcommittee of the Plaintiffs' Executive Committee, respectfully provide this informational letter

to address the Court's questions at recent status conferences about the Sovereigns' claims and

damages related to PFAS contamination from AFFF.


                                                      With assent from PEC, respectfully
                                                      submitted,


_/s/ William J. Jackson_                              _/s/ Ashley B. Campbell_
William J. Jackson                                    Ashley B. Campbell
KELLEY DRYE & WARREN LLP                              SHER EDLING LLP
515 Post Oak Blvd., Ste. 900                          100 Montgomery St., Ste. 1410
Houston, Texas 77027                                  San Francisco, California 94104
Telephone: (713) 355-5000                             Telephone: (628) 231-2500
Facsimile: (713) 355-5001                             E-mail: ashley@sheredling.com
E-mail: bjackson@KelleyDrye.com
                                                      *Co-Chair of the Sovereigns Subcommittee of*
*Co-Chair of the Sovereigns Subcommittee of*          *the Plaintiffs Executive Committee*
*the Plaintiffs Executive Committee*

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................ 1

I.    PART ONE: THE SOVEREIGNS' AFFF CLAIMS ............................................ 2

II.   PART TWO: THE SOVEREIGNS' DAMAGES AND REMEDIES ................. 3

    A.    Group 1 – AFFF Damages Common to All the Sovereigns ........................... 5

        1.    Costs to Address AFFF Impacts to Drinking Water ............................. 5

            a.    State-Owned Water Systems. ............................................. 6

            b.    Funds for Public Water System Sampling and Treatment. ....... 6

            c.    Funds and Sampling Regimes for Private Well Sampling and Treatment ............................................................... 9

            d.    Provision of Infrastructure and Alternate Water Supplies. ..... 10

        2.    AFFF Site Remediation Costs. ......................................................... 11

        3.    Groundwater and Other Natural Resources Injured by PFAS from AFFF ................................................................................. 12

            a.    Groundwater and Surface Waters. ................................... 13

            b.    Loss of Human Uses. .................................................... 13

        4.    Budgetary and Administrative Costs. ................................................ 15

            a.    AFFF Take-Back Programs and Bans. ............................... 15

            b.    Increased Agency Staffing Needs. .................................... 15

            c.    Administrative Enforcement. .......................................... 16

            d.    Health Care Costs and Costs of Public Education. ............... 17

    B.    Group 2 – Damages Common to Most. ..................................................... 17

        1.    Statutory Damages and Penalties ..................................................... 17

        2.    Injunctive and Related Relief .......................................................... 18

CONCLUSION ......................................................................................................... 19

## INTRODUCTION

The MDL Sovereign subcommittee provides this document to describe the claims asserted in the Sovereigns' aqueous film-forming foam ("AFFF") cases and the common claims and damages among them.[1] Collectively, our states and territories represent more than 74 percent of the United States population and 66 percent of its geography.[2] We include the largest and smallest states by population and land area, and we span the political spectrum. Some of our cases have been in this MDL since its inception and others are more recent arrivals.

All of us, however, have had our waters, lands, and/or people injured by PFAS from AFFF Defendants' products.[3] Whether used as drinking water, as habitat for fish or benthic creatures, as irrigation source waters for crops, as groundwater or surface water, or as recreational waters for our children, PFAS has contaminated water impacting over 100 million Americans, the majority of whom are residents of the Sovereigns in this MDL. PFAS from AFFF Defendants' products persists in the soils and sediments of the AFFF sites in our lands. Addressing PFAS contamination, caused by Defendants' AFFF products, will cost hundreds of billions of dollars, much of which will fall to the Sovereigns to protect the residents we serve. It is difficult to overstate the public health and fiscal impacts the AFFF Defendants have caused. The Sovereigns seek redress for those injuries and the damages from AFFF products.

Although our cases in this MDL number relatively few compared to the thousands of consolidated causes, our claims arise from PFAS contamination by AFFF at thousands of sites.[4] As the chief environmental and law enforcement authorities within our respective jurisdictions,

---

[1] **Appendix 1** identifies each of the Sovereigns' cases and their MDL case number. At present, the Sovereign subcommittee is comprised of: Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, the District of Columbia, Florida, Guam, Hawaii, Indiana, Kentucky, Maine, Maryland, Massachusetts, Mississippi, New Hampshire, New Jersey, New Mexico, New York, North Carolina, the Commonwealth of the Northern Mariana Islands, Ohio, Oklahoma, Oregon, Pennsylvania, Puerto Rico, Rhode Island, South Carolina, Tennessee, Texas, Vermont, Washington, and Wisconsin. Two other states have claims pending in the MDL: Illinois and Michigan. Including their populations, the sovereigns combined represent over 80 percent of the United States population. *See infra.* n.2.

[2] U.S. Census Bureau, *2020 Census Results*, https://www.census.gov/programs-surveys/decennial-census/decade/2020/2020-census-results.html (statistic calculated by adding 2020 census results for each state and territory, compared to aggregated census results for the United States and Island Areas).

[3] AFFF Defendants as used herein includes those companies that manufactured and marketed AFFF, its component ingredients or "feedstocks," including the telomer defendants, and others in the AFFF market.

[4] *See* **Appendix 2**.

1

the Sovereigns are in a position to undertake and require investigation and remediation at a large scale to address this ongoing harm across our territories.

**Part One** of this document describes the Sovereigns' cases and identifies common claims and causes of action. **Part Two** describes the damage categories (or "types of damages") and requested remedies in our cases. We do not describe the specific claims or damages of any individual sovereign. However, we believe the examples provided here will illustrate the claims we assert and the damages and remedies we seek.

## I.    PART ONE: THE SOVEREIGNS' AFFF CLAIMS

Like all plaintiffs in this MDL, the Sovereigns' claims seek relief for the impacts caused by AFFF Defendants' products. Unlike other plaintiffs, however, we play a unique and expansive role in protecting the health of our residents and natural resources within our borders. Based on current findings, the Sovereigns' actions concern thousands of sites where AFFF was the source of PFAS-contamination, including 273 State-owned and Part 139 airports; 298 fire training facilities; and 343 Department of Defense sites and other federal facilities. **Appendix 2** provides a summary of the number of these AFFF sites for each of the Sovereigns in the MDL Sovereigns' Committee, based on site lists submitted pursuant to case management orders.

The Sovereigns' cases in this MDL vary in their particulars. Some, such as North Carolina, have brought individual actions directed to specific AFFF sites. Others, like California, have brought a single complaint to address the statewide impacts of PFAS, including AFFF. Three states currently have pending actions against the United States.[5] Such differences aside, all the Sovereigns' cases share common legal claims against the AFFF Defendants. For example, all the Sovereigns assert tort claims, including for public nuisance and/or negligence on the basis that the AFFF Defendants caused or contributed to PFAS-contamination that has resulted in significant

---

[5] New Jersey (Safe Drinking Water Act) Compl. No. 2:21-cv-146 ¶¶8–16, 32–75. New Mexico (Resource Conservation and Recovery Act) N.M. U.S. Am. Compl., No. 2:20-cv-2115 ¶¶ 1–5, 13–14, 142–50. New York (Federal Tort Claims Act) Third Am. Compl., No. 2:19-cv-01022 ¶¶ 168–81. The recent designation of PFOA and PFOS as "hazardous substances" under CERCLA waives federal sovereign immunity and may give rise to new claims by these and other Sovereigns in addition to those already pending. At the Court's direction, we are actively meeting with U.S. DOJ regarding these CERCLA claims and will provide updates through the Joint Status Report process.

harm to the public. Most of the Sovereigns also assert claims under other tort theories, including trespass and restitution/unjust enrichment.[6]

Additionally, almost all Sovereigns assert products liability claims for defective products and/or failure to warn against the AFFF Defendants, alleging that the AFFF Defendants knew or should have known the public health and environmental risks that PFAS pose. Almost all Sovereigns also assert claims under uniform fraudulent transfer laws against the DuPont entities for the 2015 and/or 2019 series of transactions moving tens of billions of dollars of assets away from "old DuPont's" PFAS-liabilities and transferring performance chemical liabilities to Chemours.

Furthermore, many of the Sovereigns assert state statutory claims against the AFFF Defendants seeking, among other remedies, statutory penalties. At least thirteen states and territories bring claims under their consumer protection laws, alleging that unfair or deceptive business practices—such as marketing AFFF products as safe while misleading, misrepresenting, or omitting their risks—injured state fire departments, airports, and other AFFF consumers.[7]

## II.    PART TWO: THE SOVEREIGNS' DAMAGES AND REMEDIES

The Sovereigns' damages and requests for relief share more in common than not. The table below summarizes our damages and requests for relief based on their degree of commonality. **Group 1** are remedies sought by all the Sovereigns. **Group 2** damages include forms of relief sought by many but not all of us.

---

[6] Several of the Sovereigns are also pursuing cases outside the MDL that seek recovery exclusively for non-AFFF-related PFAS contamination. Nothing herein—such as references to PFAS in general or to categories of sites or damages—is intended to suggest that PFAS contamination at any site, or concerning any issue or resource in those cases outside this MDL is attributable to AFFF. While this letter provides a general description of the Sovereigns' claims and damages, not every statement represents the individual position of every Sovereign on the subcommittee.

[7] These include: Alaska, Arizona, Arkansas, Connecticut, Guam, Illinois, Massachusetts, New Jersey, New Mexico, Pennsylvania, Rhode Island, South Carolina, and Washington. *See* Alaska Compl., No. 2:21-cv-2804 ¶¶ 130–41; Ariz. Compl., No. 2:23-cv-3249 ¶¶ 109–15; Ark. Compl., No. 2:23-cv-3829 ¶¶ 109–21; Conn. Compl., No. 2:24-cv-01217 ¶¶ 393–404; Guam First Am. Compl., No. 2:19-cv-3602 ¶¶ 252–56; Ill. Compl., No. 2:23-cv-3908 ¶¶709–10; Mass. Compl., No. 2:22-cv-01649 ¶¶ 279–92; N.J. Second Am. Compl., No. 2:19-cv-2199 ¶¶ 303–14; N.M. Compl., No. 2:23-cv-4187 ¶¶ 304–12; Penn. Compl., No. 2:23-cv-3649 ¶¶ VI:1–19; R.I. Compl., No. 2:23-cv-3634 ¶¶ 356–66; S.C. Compl., No. 2:23-cv-5734 ¶¶ 197–205; Wash. Compl., No. 2:23-cv-3262 ¶¶ 5.53–5.63.

| Group 1<br>Common to All<br>Brought in our regulatory, proprietary, public trust, and/or *parens patriae* capacities, although not every Sovereign seeks every sub-category of remedy under each more general category. | Group 2<br>Common to Many |
|---|---|
| Past and future costs of drinking water impacts to, for example:<br>• State-owned public water systems ("PWS");<br>• PWS not addressed by other PWS settlements;<br>• PWS seeking treatment funds from Sovereigns; and/or<br>• Private well testing and/or provision of substitute water and household treatment systems.<br><br>Past and future costs of addressing AFFF site impacts to, for example:<br>• State-owned fire training facilities;<br>• State-owned airports;<br>• Military facilities;<br>• State-owned lands and/or public lands; and/or<br>• Abandoned and underfunded sites.<br><br>Damages for injury to natural resources, for example:<br>• Groundwater;<br>• Surface waters;<br>• Fish and wildlife; and/or<br>• Recreational losses.<br><br>State/Agency budget costs, for example:<br>• AFFF takeback and destruction;<br>• AFFF-related investigations and remediation;<br>• Costs to test PWS and private wells; and/or<br>• Loans and grants to PWS. | Injunctive relief<br>State statutory environmental claims and remedies<br><br>State statutory consumer protection claims and penalties |

To date, our costs to investigate and respond to AFFF impacts to our resources have been substantial. Moreover, these past costs are certain to be eclipsed by future costs as we continue to discover, delineate, and address significant PFAS contamination from AFFF at numerous locations. Some recent State settlements, arising from PFAS contamination at four industrial (and direct discharge) sites, illustrate the substantial quantum of damages States have sustained:

- *Minnesota v. 3M* (2018): 3M agreed to pay **$850 million** for injuries to drinking water, with more than $700 million in drinking water projects for 14 communities in the Twin Cities Metropolitan Area.

4

- *New Jersey Department of Environmental Protection v. Solvay* (2023): Solvay agreed to provide **$394 million** in financial commitments, with $101 million for remedial projects like public water system upgrades. Another defendant, Arkema, settled for $33.950 million, including $21.25 million for drinking water treatment and other remedial projects and $12.7 million for natural resource damages, and a remediation reserve fund in the initial amount of $75 million.

- *Ohio v. DuPont* (2023): DuPont agreed to pay **$110 million** for remediation of contaminated drinking water around its manufacturing facility and to mitigate natural resource damages statewide.

- *Michigan DEQ v. Wolverine Worldwide* (2023): A leather tannery agreed to sample and treat residential wells and pay **$69.5 million** to extend municipal water to over 1,000 households.

These examples illustrate the scope of the problem yet to be addressed across thousands of sites.

### A.    Group 1 – AFFF Damages Common to All the Sovereigns.

Among other things, all the Sovereigns seek: (1) past and future costs to address treatment of drinking water resources not already covered by the PWS settlements,[8] which may include impacts to state-owned water systems, additional funds for public systems that still require assistance despite PWS settlements, and private wells; (2) remediation of contaminated sediments and soils at AFFF sites where the Sovereigns have and will incur response costs; (3) natural resource damages; and (4) administrative and agency costs expended in response to PFAS contamination from AFFF products within each of our jurisdictions. Time will only increase these costs as PFAS contamination persists in place.

### 1.    Costs to Address AFFF Impacts to Drinking Water.

The Sovereigns are acting to protect the public and prevent our residents from drinking PFAS-contaminated potable water sources. When sampling reveals PFAS impacts to our public and private drinking water supplies, significant public funds have been and will be required to

---

[8] For purposes of this briefing, "treatment costs" arise from the testing and installation of filtration systems onto potable water systems, thus filtering PFAS out of drinking water before it is consumed. "Remediation costs" refer to costs to investigate and clean up the sources of contamination (e.g., PFAS-contaminated soils where AFFF was applied or underlying groundwater contaminated with PFAS). Treatment allows water that was contaminated to be consumed. Remediation attempts to remove PFAS from the natural environment.

make water consumable.[9] The past and future costs the Sovereigns and our taxpayers have incurred and will incur to investigate, implement treatment technologies, and provide continued operations and maintenance for safe drinking water are significant and recoverable as damages. We seek to recover these damages as past and future costs, which may include costs: (a) to test and treat state-owned water systems; (b) to support small PWS and additional funds for public systems that still require assistance despite PWS systems; (c) directed to private well owners; and (d) to provide alternative water supplies to communities affected by PFAS from AFFF, either as a temporary measure or as a longer-term response to water-contamination issues.

Due to the extent of PFAS contamination resulting from AFFF use, storage, and disposal at and around a vast number of military bases, airports, and firefighting training facilities, the Sovereigns have prioritized investigation of sites that could impact drinking water and public health, at substantial cost and administrative burden.

### a.  *State-Owned Water Systems.*

The Sovereigns own and operate water systems across the nation that serve hospitals, universities, correctional institutions, and parks affected by PFAS from AFFF sites, among others, that were not included in the PWS settlements.[10] The Sovereigns seek to recover the costs of sampling, investigation, monitoring, and/or treating water supplied by these systems that collectively serve millions of users across the country.

### b.  *Funds for Public Water System Sampling and Treatment.*

Through our claims, the Sovereigns seek damages to recover the costs we have incurred to assist public water systems, both large and small, to sample and treat PFAS from AFFF. To date, only operators of systems serving at least 3,300 users have been eligible to recover under the PWS settlements with the AFFF Defendants. The PWS settlements, however, did not cover all the costs that PWS will incur to treat the drinking water they serve to the public. Also, public water systems

---

[9] The technologies to treat raw drinking water are well established, e.g., granulated-activated carbon (GAC) filters, ion-exchange resins, and centralized reverse-osmosis and nanofiltration systems. U.S. Environmental Protection Agency, *Reducing PFAS in Drinking Water with Treatment Technologies* (Aug. 23, 2018), https://www.epa.gov/sciencematters/reducing-pfas-drinking-water-treatment-technologies.

[10] By way of example, Arizona owns 49 PWS, Alaska 17, Arkansas 13, Connecticut 59, Mississippi 39, Hawaii 21, Maryland 198, New Jersey 452, New Mexico 135, Pennsylvania 30, Oregon 252, Rhode Island 53, Washington over 100, and Wisconsin 991.The DuPont and 3M settlements excluded *thousands* of state-owned water systems; the DuPont settlement excluded over 2,700 state-owned water systems in 13 of our states, and the 3M settlement excluded over 1,700 state-owned water systems in these same states.

serving fewer than 3,300 people are not covered by those settlements. There are approximately 133,000 small systems in the United States that serve over 38 million residents.[11] Due to their size, these systems are generally not required to sample, but for those that have sampled, the rate of detection is significant.[12] For systems impacted by AFFF, the Sovereigns seek to recover their costs of sampling and treatment and also bring suit in our *parens patriae* and/or public trust capacities (our authority to act to protect the public and public trust resources within our territories) to recover damages concerning public water systems serving 3,300 people or fewer.

The Sovereigns have funded public water sampling in many ways. For example, Arizona, Kentucky, and Wisconsin have instituted programs that provide funding for public water systems to conduct testing or submit no-cost samples.[13] California recently began providing free testing for vulnerable and disadvantaged communities that otherwise lack funding.[14]

The Sovereigns are using substantial taxpayer funds, both federal and state, to treat PFAS-contamination from PWS well above the amounts received through the PWS settlements to protect public health. We have provided loans and grants to PWS for treatment of PFAS from AFFF and funds to assist water suppliers with the cost of complying with state MCLs, at high cost to Sovereign budgets. In some states, PWS are collectively seeking hundreds of millions of dollars more in PFAS treatment costs from state revolving funds and statutory programs using taxpayer funds to assist water providers. For example, Pennsylvania has funded $30 million worth of PFAS

---

[11] U.S. EPA: SDWIS, *GPRA Inventory Summary Report*, https://obipublic.epa.gov/analytics/saw.dll?PortalPages (last visited May 31, 2024) (query: SUBMISSIONYEARQUARTER is equal to **2024Q1** and POP_CAT_2_DESCRIPTION is equal to **<10,000** and PWS_ACTIVITY_DESCRIPTION is equal to **Active** and NPM_CANDIDATE is equal to / is in **Y**. Calculations include aggregated numbers of very small water systems, defined as those serving 3,300 people or less); Final Order and Judgment Approving 3M Settlement, No. 4754, at 4–5; Order and Opinion re DuPont Settlement, No. 4471, at 6; Proposed Tyco Settlement Agreement for Water Systems, No. 4911, at 3.

[12] For example, California has 2,502 drinking water systems with fewer than 3,300 service connections. Of the ten percent of these systems that have tested for PFAS, 44 percent have detected PFAS compounds. *See* Altevogt Decl., No. 3464-3, at 2. In Pennsylvania, 82 percent of public water systems are small systems that serve 8 percent of the population.

[13] *See* Wis. Dep't of Nat. Res., *Voluntary Drinking Water PFAS Sampling Project for Municipal Systems*, https://dnr.wisconsin.gov/topic/PFAS/PWSampling (last visited July 9, 2024); Ariz. Dep't of Env't Quality:PFAS Resources, *PFAS in Drinking Water*, https://www.azdeq.gov/industry-public-water-system-screening-pfas-resources (last updated Apr. 16, 2024).

[14] *See generally* Cal. Water Bds., *Drinking Water Resources*, https://www.waterboards.ca.gov/pfas/drinking_water.html (last visited July 9, 2024).

infrastructure projects to date. New York recently made $325 million available for municipalities to fund critical wastewater and drinking water infrastructure projects (including to offset the cost of testing).[15] Wisconsin allocated $100 million in grants to municipalities for PFAS testing and remediation.[16] New Jersey and New Hampshire established similar grant and loan programs for public water suppliers.[17] Maryland has combined state and federal funds to provide $172 million in low-interest loans and other financial subsidies to provide PFAS-related drinking water capital improvements to more than 6,500 residential users.[18] Significant portions of each of these loan and grant programs will address PFAS impacts from AFFF Defendants' products.

Even where the Sovereigns have utilized federal monies to fund portions of these loan and grant programs, our needs vastly exceed available federal funding. The Sovereigns are eligible to receive $10 billion under the Bipartisan Infrastructure Law ("BIL") over five years to address emerging contaminants, including PFAS. California, for example, received $76 million of BIL funds for fiscal year 2023–24, but 17 applications for that same time period requested $625 million for capital projects to address PFAS contamination to drinking water, which includes impacts from AFFF sites.[19] The BIL funding to the states, moreover, has limits. Half of this federal aid flows through existing State revolving loan funds created under the Safe Drinking Water and Clean Water Acts, and the other half is awarded to States as grants to address emerging contaminants in small, disadvantaged communities. But the estimated costs for public water system compliance with federal MCLs is $3.8 billion *annually* for PFAS alone, totaling almost $80 billion over the next 20

---

[15] *See* N.Y. State Env't Facs. Corp., *State Water Grants*, https://efc.ny.gov/wiia (last visited July 9, 2024).

[16] *See* Wis. Dep't of Nat. Res., *Executive Budget* at 13, https://doa.wi.gov/budget/SBO/2023-25%20370%20DNR%20ExASEecutive%20Budget.pdf.

[17] *See* N.J. Dep't of Env't Protection, *Affirming National Leadership Role, New Jersey Publishes Stringent Drinking Water Standards for PFOA and PFOS* (June 1, 2020), https://www.nj.gov/dep/newsrel/2020/20_0025.htm; N.H. Dep't of Env't Servs., *Public Water Systems*, https://www.pfas.des.nh.gov/drinking-water/public-water-supply-wells (last visited July 9, 2024).

[18] *See* Md. Dep't of the Env't, *Maryland Water Infrastructure Financing Admin. Drinking Water Revolving Loan Fund Program Intended Use Plan* at 7–8, (July 31, 2023), https://mde.maryland.gov/programs/water/WQFA/Documents/DW%20FFY2023%20IUP%20Document-FINAL.pdf.

[19] *See* Cal. Water Bds., *Supplemental Intended Use Plan, State Fiscal Year 2023–24* at 13–14, https://www.waterboards.ca.gov/water_issues/programs/grants_loans/srf/docs/2023/2023-24-supp-iup-ec.pdf.

years.[20] Moreover, the federal funding for the two State Revolving Funds is largely limited to public systems of substantial size—not private wells or small systems, which are already excluded from relevant settlements.

### c. Funds and Sampling Regimes for Private Well Sampling and Treatment.

Approximately 43 million people in the United States consume water from private drinking water wells that are not regulated under state or federal law.[21] Some Sovereigns have initiated robust sampling regimes to better understand the impact of PFAS from AFFF sites to private wells. New Jersey requires either the buyer or seller of real property to test the well water and review the results prior to closing of title. PFAS data gathered from December 2021 to December 2022, which includes private wells in proximity to AFFF sites, shows exceedances of New Jersey's PFAS MCLs in over 12 percent of the private water wells across the state.[22] New Hampshire uses an incentive program to encourage PFAS testing in residential wells by offering rebates to private well owners with PFAS detections to install treatment or connect to a public water system.[23] New Hampshire also provides sampling at no cost to residents who draw water from private drinking wells at locations most susceptible to PFAS contamination, such as those near AFFF sites.[24] Colorado provides no-cost PFAS sampling through a state-implemented grant program, which has

---

[20] American Water Works Association analyzed the cost for public water systems to comply with the recently promulgated MCLs by EPA for six PFAS. That evaluation estimates annual costs of $3.8 billion for public water system compliance over at least 20 years—totaling almost $80 billion. Am. Water Works Ass'n, *AWWA Statement on Proposed PFAS Drinking Water Standards* (Mar. 14, 2023), https://www.awwa.org/AWWA-Articles/awwa-statement-on-proposed-pfas-drinking-water-standards.

[21] USGS: Water Res. Mission Area, *Domestic (Private) Supply Wells* (Mar. 1, 2019), https://www.usgs.gov/mission-areas/water-resources/science/domestic-private-supply-wells#:~:text=More%20than%2043%20million%20people,their%20source%20of%20drinking%20water; In Pennsylvania, 12 percent of the population is served by private wells representing approximately 1.5 million residents.

[22] *See* N.J. Dep't of Env't Prot., *NJ Private Well Testing Act PFAS Results Summarized By 2 Mile Grid*, https://www.arcgis.com/apps/mapviewer/index.html?webmap=1e1a42ee276e4cefaf7dc743739f2446 (last updated June 21, 2023).

[23] N.H. Dep't of Env't Servs., *PFAS Removal Rebate for Program for Private Wells*, https://www.pfas.des.nh.gov/funding/pfas-removal-rebate-program-private-wells#:~:text=New%20Hampshire%20residents%20using%20a,for%20Private%20Wells%20Request%20Form (last visited July 9, 2024).

[24] *See, e.g.*, State of N.H., *PFAS Testing for Private Wells Request Form*, https://onlineforms.nh.gov/app/?allowAnonymous=true#/formversion/e1da8589-8c0b-4dcc-bfea-0f932341e50c?formtag=nhdes-s-03-008 (last visited July 9, 2024).

demonstrated a 22 percent occurrence rate for private wells sampled through this program.[25] New Mexico has offered free testing for all private wells in the State,[26] and has also performed state-wide testing for 28 specific PFAS in conjunction with the U.S. Geological Survey.

Other Sovereigns conduct private well testing at our own cost while investigating and characterizing known or suspected contaminated site areas, including those where AFFF was used. For example, New York has provided no-cost point of entry treatment systems, funded ongoing maintenance costs, and provided bottled water to private well owners affected by a known AFFF site. Pennsylvania tested impacted residences near an AFFF training site and provided alternative water to households after discovering that 41 of 50 properties neighboring the site had contaminated drinking water wells. These costs are ascertainable and were expended in response to PFAS contamination caused by use of AFFF Defendants' products. The Sovereigns also bring suit in our *parens patriae* and/or public trust capacities (our authority to act to protect the public and public trust resources within our territories) to recover damages concerning private wells.

### d.  Provision of Infrastructure and Alternate Water Supplies.

As indicated by some of the examples just covered, there have been many instances where the Sovereigns have stepped in to provide alternative water to residents whose drinking water was impacted by PFAS from AFFF sites. We have undertaken these efforts at sites where we are overseeing investigation, mitigation, and remediation efforts by a variety of parties, including Department of Defense facilities. For example, in 2016, New York funded the construction of an interconnection from the New York City Watershed to communities supplied by the City of Newburgh's water system, which has been contaminated by PFAS-containing AFFF products from the Stewart International Airport and Stewart Air National Guard Base. New York also funded and constructed three GAC systems to remove PFAS from the primary water source for the surrounding communities. New York's capital costs for this work have approached $100 million in addition to annual operation and maintenance costs of over $3 million. Similarly, Wisconsin provides bottled

---

[25] Colo. Dep't of Pub. Health and Envi., *PFAS Sampling Request Form for Private Well Owners*, https://docs.google.com/forms/d/1dApknCSfM6tDJAnbk8oE9YMrxuZL5prydxHcjYeqANo/viewform?edit_requested=true (last visited July 9, 2024); *see also*, Colo. Dep't of Pub. Health and Env't, *PFAS Mapping*, https://cdphe.colorado.gov/pfas-mapping (last visited July 9, 2024).

[26] *See* N.M. Env't Dep't, *Environment Department testing for PFAS in Private Groundwater Wells across New Mexico,* (Apr. 17, 2023), https://www.env.nm.gov/wp-content/uploads/2023/04/2023-04-17-NMED-Statewide-Private-Well-PFAS-Sampling-final.pdf.

water for three communities, including at least one community with impacts resulting directly from AFFF manufacturing contamination, totaling $570,000 per year, to continue until permanent replacement water is available.[27] These varied expenditures are necessary to protect public health and are recoverable.

### 2.    AFFF Site Remediation Costs.

The Sovereigns have incurred and will incur substantial costs to investigate and remediate impacts to both state-owned properties and privately-owned properties where AFFF has been used, stored, disposed, and/or caused offsite contamination. Through site lists served with the Sovereigns' fact sheets in this MDL, we have identified thousands of known AFFF-related sites with PFAS contamination that give rise to our claims and damages, including 273 airports; 298 fire training facilities; and 343 Department of Defense facilities with off-site impacts.[28]

The Sovereigns are seeking damages to recover costs to remediate soil and sediment on these properties. These efforts are challenging, and although the technologies to effectively remediate PFAS-impacted soils are being developed for widespread use, they will be costly.[29] At Anchorage International Airport, the chief engineer conservatively estimates a cost of $1,000 per cubic yard to remediate or dispose of PFAS-contaminated soil. These costs are likely to be far higher for remote rural airports that also face PFAS contamination from historic AFFF use.

The Sovereigns also incur significant costs to oversee and remediate AFFF-contaminated sites owned by other entities, such as municipal governments and private landowners. For example, Kentucky has incurred state costs to remediate suspected PFAS sources, including "orphan" facilities: sites of known AFFF contamination where there is no known solvent owner/operator on the site. Pennsylvania conducted a pilot study at one site with historic AFFF contamination by injecting colloidal carbon into the aquifer to stop the PFAS plume from spreading while it evaluates potential remedies for the soil contamination at the site. Pennsylvania has

---

[27] *See* Wis. Dep't of Nat. Res., *PFAS Contamination in the Marinette and Peshtigo Area*, https://dnr.wisconsin.gov/topic/PFAS/Marinette.html (last visited July 9, 2024); Wis. Dep't of Nat. Res., *PFAS Contamination in the Town of Stella*, https://dnr.wisconsin.gov/topic/PFAS/Stella.html (last visited July 9, 2024); Wis. Dep't of Nat. Res., *PFAS Contamination in the Town of Campbell and French Island*, https://dnr.wisconsin.gov/topic/PFAS/Campbell.html (last visited July 9, 2024).

[28] *See* **Appendix 2**.

[29] Ramona Darlington et al., *The Challenges of PFAS Remediation*, 110 NAT'L LIBR. OF MED. 58 (2018), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5954436/#R2 (last visited June 10, 2024).

confirmed with quarterly groundwater sampling that PFAS migration has decreased downgradient. Sovereign investigation of contaminated sites remains ongoing. We will continue to incur significant costs to investigate and remediate the impacts to soil, sediment, and other environmental media on these properties.

> **3.     Groundwater and Other Natural Resources Injured by PFAS from AFFF.**

All the Sovereigns seek damages for PFAS contamination to natural resources from AFFF Defendants' products. The public trust doctrine and other state trust responsibilities in the laws of almost all the Sovereigns provide that natural resources, such as the vital waters of our states, are held in trust for the benefit of our residents. Pursuant to this doctrine and related trust responsibilities, the Sovereigns have standing and legal authority, and some of the Sovereigns have an affirmative obligation, to maintain and restore natural resources within the public trust, which include critical sources of drinking water, groundwater, surface waters, and wildlife.[30]

The Sovereigns have broad discretion to implement our trustee responsibilities to protect these resources from harm, and in the event of injuries to or destruction of such resources, to sue to recover natural resource damages ("NRD"). AFFF-related PFAS contamination is a substantial cause of degradation of the public's natural resources, especially including our water resources. Categories of NRD generally include the following remedies: (1) the costs to restore the injured resource to its pre-discharge condition (known as primary restoration); (2) the costs for the loss of use, value, and impairment of a natural resource during the time period that it was or will continue to be injured (known as compensatory restoration); and (3) in some jurisdictions, the costs of assessing, investigating, and quantifying the NRD.[31] NRD recovery serves to restore injured natural resources, compensate the public for the loss of use, value, and impairment of these

---

[30] *See, e.g.*, *N.J. Dep't of Env't Prot. v. Jersey Cent. P. & L. Co.*, 308 A.2d 671, 674 (N.J. Super. Ct. Law Div. 1973) ("The State has not only the right but also the *affirmative fiduciary obligation* to ensure that the rights of the public to a viable marine environment are protected, and *to seek compensation for any diminution in that trust corpus*.") (emphasis added), *aff'd*, 336 A.2d 750 (N.J. Super. Ct. App. Div. 1975), *rev'd on other grounds*, 351 A.2d 337 (N.J. 1976); *Sanders-Reed ex rel. Sanders-Reed v. Martinez*, 2015-NMCA-063, 350 P.3d 1221, 1225 (New Mexico's constitution "recognizes that a public trust duty exists for the protection of New Mexico's natural resources . . . for the benefit of the people of this state.").

[31] *See, e.g.*, *N.J. Dep't. of Env't Prot. v. Exxon Mobil Corp.*, 923 A.2d 345, 349 (N.J. Super. Ct. App. Div. 2007).

resources, and it protects the public's financial resources by requiring those responsible for the pollution, rather than the public, to pay for the injuries they have caused.

### a. Groundwater and Surface Waters.

The use, handling, and disposal of AFFF has caused injury to groundwater and surface water resources (e.g., rivers, lakes, streams), held in trust by the Sovereigns. Sampling to date reveals PFAS impacts to the groundwater at and near AFFF sites that significantly exceed any applicable drinking water standard. For example, groundwater at the Daniel K. Inouye International Airport in Hawai'i, where AFFF was used and discharged over many years, has levels of PFOS as high as 1,900,000 ppt and PFOA at 110,000 ppt.[32] In New Mexico, the groundwater at Cannon Air Force Base has levels of PFOS as high as 24,000 ppt and PFOA at 3,100 ppt, and at Holloman Air Force Base as high as 48,400 ppt (PFOS and PFOA combined).[33] Likewise, sampling in Colorado indicates extensive contamination of its surface waters by PFAS.[34]

### b. Loss of Human Uses.

In our capacity as trustees of natural resources, the Sovereigns are also situated to recover damages from lost human uses, including recreational opportunities, such as fishing and hunting, due to the presence of PFAS from AFFF products in fish and game tissue. Many of the Sovereigns have developed consumption advisories and safe-eating guidelines due to PFAS contamination in fish and game, which in part form the basis of some of the Sovereigns' NRD damages. For example, Pennsylvania's Departments of Agriculture, Health, and its Fish and Boat Commission announced a "DO NOT EAT" advisory for all fish species caught in the Neshaminy Creek basin in Bucks and Montgomery counties, including two state parks.[35] Similarly, Texas's sampling of

---

[32] Haw. Compl., No. 2:24-cv-00488 ¶ 159.

[33] Surface waters at both Air Force Bases are also contaminated. At Holloman, the State has also detected PFAS at startling high levels in wildlife. Christopher Witt et al., *Extraordinary levels of per- and polyfluoroalkyl substances (PFAS) in vertebrate animals at a New Mexico desert oasis: Multiple pathways for wildlife and human exposure*, 249 Env't Rsch. (May 15, 2024), https://pubmed.ncbi.nlm.nih.gov/38325785/

[34] *See* Colo. Dep't of Pub. Health and Env't, *2020 PFAS Sampling Project Results, Surface Water*, https://cohealthviz.dphe.state.co.us/t/EnvironmentalEpidemiologyPublic/views/PFAS_results_DRAFT/Samplelocationsdash (last visited July 9, 2024).

[35] *See* Pa. Dep't of Env't Prot., *Neshaminy Creek Fish Advisory*, https://www.dep.pa.gov/About/Regional/SoutheastRegion/Community%20Information/Pages/Neshaminy-Creek-Fish-Advisory.aspx (last visited July 9, 2024).

13

fish species in the Lower Leon Creek, which flows through two military facilities, Kelly Field and Lackland Air Force Base, led to the State issuing a consumption advisory recommending no consumption of fish from that creek.[36] In many instances, environmental justice communities who depend on locally caught fish for sustenance and/or their livelihood, including certain indigenous communities, rely on advisories the Sovereigns have issued.[37]

As data emerges about the uptake of PFAS by other wildlife, we are implementing similar testing and advisories that limit the public's use of natural resources due to PFAS contamination. For example, Wisconsin issued a "Do Not Eat Advisory" for the liver of white-tailed deer near Tyco's Marinette AFFF manufacturing facility.[38]

The Sovereigns have also expended resources to research, develop, and publicize guidance for swimming and water recreation in surface waters contaminated with PFAS.[39]

---

[36] Tex. Dep't of State Health Servs., *Addendum 1, Characterization of Potential Adverse Health Effects Associated with Consuming Fish from Lower Leon Creek* (2022), https://www.dshs.texas.gov/sites/default/files/seafood/PDF2/Risk-Characterization/Lower%20Leon%20Creek%20Risk%20Characterization%20Addendum%202022.pdf.

[37] *See* Nadia Barbo et al., *Locally caught freshwater fish across the United States are likely a significant source of exposure to PFOS and other perfluorinated compounds*, 220 Env't Rsch. 115165 (Mar. 1, 2023), https://doi.org/10.1016/j.envres.2022.115165; *see also* Cooper, *The Predicament of Subsistence Fishing and Seafood Contaminants*, Sea Grant California, https://caseagrant.ucsd.edu/news/the-predicament-of-subsistence-fishing-and-seafood-contaminants (last visited July 9, 2024); Alaska Dep't of Fish & Game, *Subsistence in Alaska*, https://www.adfg.alaska.gov/index.cfm?adfg=subsistence.definition (last visited June 7, 2024) (noting that the legislature established subsistence as the "priority use of Alaska's fish and wildlife" based on the traditional and customary harvest and processing of wild resources for food and raw materials by many groups including Aleut, Athabascan, Alutiiq, Euro-American, Haida, Inupiat, Tlingit, Tsimshian, and Yupik).

[38] Wis. Dep't of Nat. Res., *Safely Eating Wild Game*, https://dnr.wisconsin.gov/topic/wildlifehabitat/eatsafe. (last visited July 9, 2024); Mich. Dep't of Env't Quality, *Fish Tissue PFAS Sampling Guidance,* https://www.michigan.gov/-/media/Project/Websites/PFAS-Response/Sampling-Guidance/Fish-Tissue.pdf?rev=f5f585fd3f5f4ff6a1d6ca7920a6cdc7 (last visited July 9, 2024); Conn. Dep't of Energy & Env't Prot., *PFAS Monitoring in Surface Water and Fish Tissue*, https://portal.ct.gov/deep/water/inland-water-monitoring/pfas-surface-water-and-fish-tissue-monitoring; Hannah Norman, *'Forever Chemicals' Found in Freshwater Fish, Yet Most States Don't Warn Residents*, KFF Health News (Dec. 1, 2023), https://kffhealthnews.org/news/article/pfas-forever-chemicals-freshwater-fish-regulatory-gap/.

[39] *See*, *e.g.*, Mass.gov, *PFAS and Swimming*, https://www.mass.gov/info-details/pfas-and-swimming#can-i-swim-in-water-that-may-have-pfas-levels-above-a-safe-level-in-drinking-water?-how-can-i-limit-my-exposure-while-swimming; N.M. Env't Dep't, *Risk Assessment Guide for Site Investigations and Remediation* (Nov. 2022), https://www.env.nm.gov/hazardous-waste/wp-content/uploads/sites/10/2022/11/NMED_SSG_VOL_I_Nov_2022.pdf.

14

Lost recreational trips also result in lost revenue to the Sovereigns from PFAS contamination.

### 4. Budgetary and Administrative Costs.

Sovereigns also incur significant agency costs to respond to and address AFFF contamination. These costs arise in different ways, including: (a) operating programs to take back and/or destroy AFFF to prevent future releases; (b) hiring additional personnel to oversee and implement AFFF- and PFAS-related programs, site investigations, remediation, and restoration; (c) expending resources through administrative oversight and enforcement; and (d) incurring costs related to health care and public education initiatives.

#### a. AFFF Take-Back Programs and Bans.

Many of the Sovereigns have implemented "take-back" programs to remove AFFF products from service and to prevent discharges. By providing fire departments with a way to dispose of AFFF, these programs help ensure that PFAS will not be released into the environment through training, leaking, or other AFFF discharges. These programs come with major financial burdens, as state agencies must arrange for collection and disposal of AFFF. States have already spent an estimated $31,000,000 on take-back programs to collect 553,449 gallons of foam[40]—and collections are ongoing.[41]

#### b. Increased Agency Staffing Needs.

The Sovereigns have spent and continue to expend significant personnel resources implementing AFFF-related programs. Some of us have already budgeted for and hired additional full-time agency staff to address PFAS contamination, due in substantial part to AFFF products. Rhode Island is requesting $859,000 from its legislature to implement PFAS drinking water regulations, which include funding for community outreach, laboratory equipment, and 4.5 full-

---

[40] Iain Hoey, *US States Implement Take-Back Programs to Address Foam Disposal*, Fire & Safety J. Ams. (Apr. 2, 2024), https://fireandsafetyjournalamericas.com/us-states-implement-take-back-programs-to-address-foam-disposal/.

[41] Together with these take-back programs, many of the Sovereigns have banned AFFF sales and use in training exercises to prevent further releases. Bans or use restrictions have been imposed by Alaska, Arizona, California, Colorado, Connecticut, Hawai'i, Kentucky, Louisiana, Maine, Maryland, Minnesota, New Hampshire, New Jersey, New York, Ohio, Vermont, Washington, and Wisconsin.

time employees to implement the program.[42] Wisconsin requested in its 2024-25 biannual budget for 22 additional agency staff to develop and implement regulations regarding airborne PFAS, soil testing standards and redevelopment procedures related to PFAS, standards for PFAS disposal, PFAS water quality guidelines and standards, and wildlife sampling for PFAS.[43] Other Sovereigns have engaged in agency education and outreach efforts to develop investigative techniques for PFAS-related investigations, at significant cost.[44]

### c.  Administrative Enforcement.

The Sovereigns have expended significant resources overseeing large-scale natural resource cleanup efforts in response to AFFF contamination. These oversight costs are recoverable. For example, New York has entered into administrative orders with AFFF site operators to remediate contaminated soils and groundwater, including a consent order with Westchester County Airport, which the State is currently overseeing.[45] Rhode Island is also entering into a series of consent agreements with public water systems, where PFAS levels exceed state standards, to design an action plan for each system to come into compliance.[46] For years, New Mexico has been overseeing the Air Force's PFAS cleanup at Cannon Air Force Base.[47]

---

[42] *See also*, Assoc'n of State Drinking Water Adm'rs, *Lessons Learned from States and Challenges Ahead in Setting State-Level Per- and Polyfluoroalkyl Substances (PFAS) Standards*, at 22 (Nov. 2021), https://www.asdwa.org/wp-content/uploads/2021/11/ASDWA-PFAS-MCLs-White-Paper-November-2021-Final.pdf.

[43] State of Wis., *Executive Budget 2023–25*, at 455 (Feb. 2023), https://doa.wi.gov/budget/SBO/2023-25%20Executive%20Budget%20Complete%20Document%20ASE.pdf, this is in addition to creating a whole new office to address emerging contaminants, with a predominant focus on PFAS. Wis. Dep't of Nat. Res., *Office of Emerging Contaminants*, https://dnr.wisconsin.gov/taxonomy/term/10456 (last visited July 9, 2024).

[44] *See e.g.*, Wash. State Dep't of Ecology, *Guidance for Investigating and Remediating PFAS Contamination in Washington State* (June, 2023), https://apps.ecology.wa.gov/publications/summarypages/2209058.html.

[45] *See* N.Y. State Dep't of Env't Conservation, Order on Consent, CO 3-20180308-44, *In the Matter of Water Quality Violations and Site Characterization for Westchester County Airport* (June 7, 2019), https://extapps.dec.ny.gov/data/DecDocs/360174/Consent%20Order.HW.360174.2019-06-06.Executed_Order_Westchester_County_Airport_Case_NoCO_3-20180308-44.pdf.

[46] R.I. Dep't of Pub. Health, *Update on Public Water System Compliance with the Rhode Island PFAS in Drinking Water, Groundwater, and Surface Waters Act*, at 5–6 (Mar. 2024), https://health.ri.gov/publications/reports/Update-on-PFAS-Act-Compliance.pdf.

[47] As the Court is aware, New Mexico is litigating its authority to enforce is regulations relating to PFAS. *See* Pls.' Opp'n U.S. Site-Specific Mot. Dismiss. (ECF 4851). New Mexico seeks recovery for its oversight costs under RCRA and (now) CERCLA.

#### d.  Health Care Costs and Costs of Public Education.

The Sovereigns expect to be saddled with increasing costs to monitor, treat, and manage the proliferation of diseases and healthcare costs associated with PFAS exposure. California has developed public health surveillance of PFAS impacts by studying the presence of PFAS in blood serum, which has revealed near-universal PFAS contamination in blood serum across disparate geographic and demographic populations.[48] Associated health effects are expected to impact public health for decades, costing public support systems and government-funded Medicare and Medicaid systems untold sums.[49] Indeed, treating public employees injured by AFFF will increase costs to governmental health programs and government-funded pensions.

Sovereigns have also incurred the cost of undertaking extensive public education campaigns to inform the public about PFAS, what they can do to avoid PFAS exposure, and to provide information about state programs relating to PFAS and health.[50]

All the Sovereigns seek relief for agency costs we have incurred and will continue to incur to carry out the various initiatives discussed above, including more not yet developed.

### B.    Group 2 – Damages Common to Most.

#### 1.    Statutory Damages and Penalties.

The AFFF Defendants' conduct also violates a number of state statutes barring unfair and deceptive acts in commerce, commonly known as consumer protection laws. In enforcing these

---

[48]  Biomonitoring California, *Results for Perfluoroalkyl and Polyfluoroalkyl Substances (PFASs)*, https://biomonitoring.ca.gov/results/chemical/2183; Cal. Compl., No. 2:23-cv-01531 ¶¶ 87–89.

[49]  Gretta Goldenman et al., *The cost of inaction: A socioeconomic analysis of environmental and health impacts linked to exposure to PFAS*, Nordic Council of Ministers 191 (2019), http://norden.diva-portal.org/smash/record.jsf?pid=diva2%3A1295959&dswid=6826.

[50]    *See*,    *e.g.*,    Pa.    Dep't    of    Health,    *PFAS    Projects*, https://www.health.pa.gov/topics/envirohealth/Pages/PFAS.aspx; Or. Health Auth., *Per- and Polyfluoroalkyl    Substances    (PFAS)*, https://www.oregon.gov/oha/ph/healthyenvironments/drinkingwater/operations/pages/pfas.aspx; Colo. Dep't of Pub. Health & Env't, *PFAS and Your Health*, https://cdphe.colorado.gov/pfas-health; R.I. Dep't of Health, *What to Know About PFAS*, https://health.ri.gov/publications/factsheets/What-to-Know-About-PFAS.pdf; Ariz. Dep't of Health Servs., *PFAS, Per and Polyfluoroalkyl Substances*, https://www.azdhs.gov/documents/preparedness/epidemiology-disease-control/environmental-toxicology/well-water/pfas-flyer.pdf.

17

statutes in this litigation, many of the Sovereigns also seek civil penalties for these violations.[51] For example, at least thirteen of the Sovereigns have alleged causes of action under the consumer protection laws of our respective states and territories.[52] These claims all share the underlying allegations that AFFF Defendants: engaged in unfair or deceptive business practices, including marketing AFFF products as safe or "biodegradable" to consumers of their products, such as fire departments, airports, and municipal governments; sold their PFAS-containing AFFF while misrepresenting or omitting the risks associated with PFAS; and that these practices ultimately injured consumers and the public.[53] The Sovereigns seek civil penalties and restitution for these violations.[54]

Several of the Sovereigns also bring claims alleging violation of federal and/or state environmental statutes to address defendants' unlawful discharge of AFFF-related PFAS into surface water and/or groundwater and seek similar relief for these claims.[55]

## 2.    Injunctive and Related Relief.

Some Sovereigns seek relief through abatement of the public nuisance created and maintained by AFFF Defendants through their products and/or the creation of funds for the abatement of this public nuisance; restitution; unjust enrichment; and the disgorgement of profits.[56]

---

[51] *See, e.g.*, Conn. Compl., No. 2:24-cv-01217 ¶¶ 11–15; N.M. Compl., No. 2:23-cv-4187 ¶ VII (H); Wash. Compl., No. 2:23-cv-3262 ¶ 6.11.

[52] *See supra*, n. 7.

[53] *See, e.g.*, Conn. Compl., No. 2:24-cv-01217 ¶¶ 387–404; Mass. Compl., No. 2:22-cv-1649 ¶¶ 279–92; N.J. Second Am. Compl., No. 2:19-cv-2199 ¶¶ 303–14; N.M. Compl., No. 2:23-cv-4187 ¶¶ 304–12; R.I. Compl., No. 2:23-cv-3634 ¶¶ 356–66; Wash. Compl., No. 2:23-cv-3262 ¶ 5.53–5.63.

[54] *See, e.g.*, Conn. Compl., No. 2:24-cv-01217 ¶¶ 11–15; N.M. Compl., No. 2:23-cv-4187 ¶ VII(H); Wash. Compl., No. 2:23-cv-3262 ¶ 6.11.

[55] For example, Massachusetts, New Jersey, and the Northern Mariana Islands bring claims for violation of the Safe Drinking Water Act. Maryland brings claims under the Maryland Environmental Article Title 9, subtitles 3 and 4, and the state-analogs to the Clean Water Act and Safe Drinking Water Act, respectively. Compl., No. 2:23-cv-03635 ¶¶ 324–37. Similarly, Rhode Island seeks damages for violations of the State Water Pollution Act, including unlawful discharges of PFAS into state waters without a permit, and unlawful pollution of groundwater. Compl., No. 2:23-cv-03634 ¶¶ 332–44. Vermont brings claims under the its Groundwater Protection Act. Compl., No. 2:19-cv-02281 ¶¶ 309–17.

[56] For example, New Mexico—like many other states—seeks an order directing the defendants to abate the public nuisance through investigations, cleanups, restoration, treatment, and monitoring. N.M. Compl., No. 2:23-cv-4187 ¶ VII(I); N.M. U.S. Am. Compl., No. 2:20-cv-2115, prayer for relief.

# CONCLUSION

As detailed here, the Sovereigns play a unique and expansive role in protecting the health of our residents and natural resources, and the claims we assert and the damages and relief we seek share more in common than not. We welcome further engagement with the Court about our cases with a view towards establishing a bellwether track or pathway to remand for the Sovereign cases in this MDL.


Dated: July 10, 2024                                    Respectfully submitted,

/s/ William J. Jackson                                  /s/ Ashley B. Campbell
William J. Jackson                                      Ashley B. Campbell
KELLEY DRYE & WARREN LLP                                SHER EDLING LLP
515 Post Oak Blvd., Ste. 900                            100 Montgomery St., Ste. 1410
Houston, Texas 77027                                    San Francisco, California 94104
Tel. (713) 355-5000                                     Tel. (628) 231-2500
Fax. (713) 355-5001                                     ashley@sheredling.com
bjackson@KelleyDrye.com
                                                        *Co-Chair of the Sovereigns Subcommittee of*
*Co-Chair of the Sovereigns Subcommittee of*            *the Plaintiffs Executive Committee*
*the Plaintiffs Executive Committee*


**FOR THE STATE OF ALASKA**              **FOR THE STATE OF ARIZONA**

**TREG TAYLOR**                          /s/ Shelley D. Cutts
**Alaska Attorney General**              SHELLEY D. CUTTS
                                         Acting Section Chief Counsel
/s/ Jane S. Mores                        **Office of the Attorney General**
JANE S. MORES                            **Environmental Enforcement Section**
Senior Assistant Attorney General        2005 N. Central Ave., Phoenix, AZ  85004
Alaska Department of Law                 Tel. (602) 542-8526
123 4th Street, Dimond Courthouse        Shelley.Cutts@azag.gov
P.O. Box 110300
Juneau, AK 99811-0300
Tel. (907) 465-3600
jane.mores@alaska.gov

19

**FOR THE STATE OF ARKANSAS**

*/s/ Charles J. Harder*
CHARLES J. HARDER, Ark. Bar No. 86080
Deputy Attorney General
Tel. (501) 682-4058
Fax: (501) 682-8118
Chuck.Harder@ArkansasAG.gov

**FOR THE STATE OF CALIFORNIA**

**ROB BONTA**
**Attorney General of California**
JEREMY M. BROWN (SBN 269159)
Supervising Deputy Attorney General
NICHOLAS G. CAMPINS (SBN 238022)
DIJE NDREU (SBN 251278)
THOMAS C. SCHUMANN (SBN 324559)
BRENDAN J. HUGHES (SBN 333690)

*/s/ NICHOLAS G. CAMPINS*
NICHOLAS G. CAMPINS
Deputy Attorney General
*Attorneys for the People of the State of California, ex rel. Rob Bonta, Attorney General of California*

**FOR THE STATE OF COLORADO**

**PHILIP J. WEISER**
**Attorney General**

*/s/ Leslie Eaton*
LESLIE EATON, Atty Reg. No. 17791*
Special Counsel
HEATHER KELLY, Atty Reg. No. 36052*
First Assistant Attorney General
Ralph L. Carr Judicial Center
1300 Broadway, 10th Floor
Denver, CO 80203
Tel. (720) 508-6000
Fax. (720) 508-6040
Leslie.Eaton@coag.gov
Heather.Kelly@coag.gov
*Counsel of Record

**FOR THE STATE OF CONNECTICUT**

**WILLIAM TONG**
**Attorney General**

*/s/ Matthew I. Levine*
MATTHEW I. LEVINE
Deputy Associate Attorney General
Christopher P. Kelly
Michael W. Lynch
Kaelah M. Smith
Assistant Attorneys General
Office of the Attorney General
165 Capitol Avenue
Hartford, CT 06106
Tel. (860) 808-5250
matthew.levine@ct.gov

20

**FOR THE STATE OF DELAWARE**

*/s/ Ralph K. Durstein III*
RALPH K. DURSTEIN III
Deputy Attorney General
Delaware Department of Justice

**FOR THE STATE OF FLORIDA**

**ASHLEY MOODY**
**Attorney General, State of Florida**

*/s/ Andrew H. Butler*
ANDREW H. BUTLER
Assistant Attorney General
Florida Office of the Attorney General
PL-01 The Capitol
Tallahassee, FL 32399-1050
Tel. (850) 414-3833
Fax. (850) 488-9134
andrew.butler@myfloridalegal.com

**FOR THE STATE OF HAWAII**

**ANNE E. LOPEZ**
**Attorney General**

*/s/ Wade H. Hargrove III*
WADE H. HARGROVE, III
Deputy Attorney General
465 S. King Street, #200
Honolulu, Hawaii 96813
Tel. (808) 587-3050
Wade.H.Hargrove@hawaii.gov

**FOR THE DISTRICT OF COLUMBIA**

**BRIAN L. SCHWALB**
**Attorney General for the District of Columbia**

JENNIFER JONES
Deputy Attorney General
Public Advocacy Division

ARGATONIA D. WEATHERINGTON
Chief, Social Justice Section

*/s/ Wesley Rosenfeld*
WESLEY ROSENFELD (#1002428)
Assistant Attorney General
LAUREN CULLUM (#90009436)
Special Assistant Attorney General
Office of the Attorney General for the District of
Columbia
400 Sixth Street NW, 10th Floor
Washington, D.C. 20001
Tel. (202) 368-2569
wesley.rosenfeld1@dc.gov
lauren.cullum@dc.gov

**FOR THE STATE OF INDIANA**

**THEODORE E. ROKITA**
**Attorney General of Indiana**
Attorney No. 18857-49

*/s/ Betsy M. DeNardi*
BETSY M. DENARDI (Attorney No. 23856-71)
Scott L. Barnhart (Attorney No. 25474-82)
Cory C. Voight (Attorney No. 23180-49)
Office of the Indiana Attorney General
Indiana Gov't Center South
302 West Washington St., 5th Floor
Indianapolis, IN 46204

21

**FOR THE COMMONWEALTH OF KENTUCKY**

*/s/ Jarrod L. Bentley*
JARROD L. BENTLEY
Staff Attorney III
Energy and Environment Cabinet
Office of Legal Services
300 Sower Boulevard, 3rd Floor
Frankfort, KY 40601
Tel. (502) 782-0568
jarrod.bentley@ky.gov

**FOR THE STATE OF MAINE**

**AARON M. FREY**
**Attorney General**

*/s/ Scott W. Boak*
SCOTT W. BOAK
Robert L. Martin
Assistant Attorneys General
Natural Resources Division
Office of the Maine Attorney General
6 State House Station
Augusta, Maine 04333
Tel. (207) 626-8566
Scott.boak@maine.gov
Robert.martin@maine.gov

**FOR THE STATE OF MARYLAND**

**ANTHONY G. BROWN**
**Attorney General of Maryland**

*/s/ Patricia V. Tipon*
PATRICIA V. TIPON
Attorney No. 0806170244
JULIE KUSPA
Attorney No. 0912160009
MATTHEW ZIMMERMAN
Attorney No. 8005010219
Assistant Attorneys General
Office of the Attorney General
1800 Washington Boulevard, Suite 6048
Baltimore, Maryland 21230
Tel. (410) 537-3061
Fax. (410) 537-3943
patricia.tipon@maryland.gov
matthew.zimmerman@maryland.gov
julie.kuspa@maryland.gov
ADAM D. SNYDER
Attorney No. 9706250439
Assistant Attorney General
Office of the Attorney General
301 West Preston Street, Suite 1101
Baltimore, Maryland 21201
Tel. (410) 767-1409
adam.snyder1@maryland.gov

**FOR THE COMMONWEALTH OF MASSACHUSETTS**

*/s/ Louis Dundin*
LOUIS DUNDIN
Deputy Division Chief
Assistant Attorney General
**Environmental Protection Division**
**Office of the Attorney General**
One Ashburton Place
Boston, MA 02108

22

**FOR THE STATE OF MISSISSIPPI**

**LYNN FITCH, ATTORNEY GENERAL**
**STATE OF MISSISSIPPI**

*/s/ Tricia L. Beale*
Tricia L. Beale (MSB #99113)
Consumer Protection Division
Mississippi Attorney General's Office
1141 Bayview Ave., Suite 402
Biloxi, Mississippi 39530
Tel. (228) 386-4404
Tricia.Beale@ago.ms.gov

Garrett S. Mascagni (MSB #106670)
Consumer Protection Division
Mississippi Attorney General's Office
Post Office Box 220
Jackson, Mississippi 39205
Tel. (601) 359-3807
Garrett.Mascagni@ago.ms.gov

**FOR THE STATE OF NEW HAMPSHIRE**

**JOHN M. FORMELLA,**
**ATTORNEY GENERAL**

*/s/ Christopher G. Aslin*
Christopher G. Aslin, NH Bar #18285
Senior Assistant Attorney General
Environmental Protection Bureau
NEW HAMPSHIRE DEPT. OF JUSTICE
33 Capitol Street
Concord, NH 03301
Tel. (603) 271-3650
christopher.g.aslin@doj.nh.gov

**FOR THE STATE OF NEW JERSEY**

**MATTHEW J. PLATKIN**
**Attorney General**

*/s/ Gwen Farle*
GWEN FARLEY
Deputy Attorney General
Department of Law and Public Safety
Division of Law
Environmental Enforcement and
Environmental Justice Section
P.O. Box 093
25 Market Street, 7th Floor
Trenton, NJ 08625-0093
Tel. (609) 376-2740
Gwen.Farley@law.njoag.gov

**FOR THE STATE OF NEW MEXICO**

**RAÚL TORREZ**
**Attorney General**

*/s/ William Grantham*
William Grantham
Assistant Attorney General
408 Galisteo Street
Santa Fe, New Mexico 87501
Tel. (505) 717-3520
wgrantham@nmdoj.gov

**FOR THE STATE OF NEW YORK**

**LETITIA JAMES**
**Attorney General**

*/s/ Muhammad Umair Khan*
Muhammad Umair Khan
Senior Advisor and Special Counsel
Philip Bein
Watershed Inspector General & Senior
Counsel
Mihir A. Desai
Assistant Attorney General
28 Liberty Street
New York, New York 10005


**FOR THE COMMONWEALTH OF THE**
**NORTHERN MARIANA ISLANDS**

OFFICE OF THE ATTORNEY GENERAL
COMMONWEALTH OF THE NORTHERN
MARIANA ISLANDS

*/s/ Alison M. Nelson*
Alison M. Nelson
Chief, Civil Division
Hon. Juan A. Sablan Memorial Bid., Fl. 2
Caller Box 10007, Capitol Hill
Saipan, MP 96950
Tel. (670) 237-7500
alison_nelson@cnmioag.org


**FOR THE STATE OF NORTH CAROLINA**

**JOSHUA H. STEIN**
**Attorney General**

*/s/ Daniel S. Hirschman*
Daniel S. Hirschman
Senior Deputy Attorney General
Marc Bernstein
Special Deputy Attorney General
North Carolina Department of Justice
P.O. Box 629
Raleigh, NC 27602
Tel. (919) 716-6400
dhirschman@ncdoj.gov
mbernstein@ncdoj.gov


**FOR THE STATE OF OHIO**

ON BEHALF OF THE OFFICE OF OHIO
ATTORNEY GENERAL, DAVE YOST

*/s/ Viola Vetter*
Viola Vetter
GRANT & EISENHOFER P.A.
123 Justison Street
Wilmington, DE 19801
Tel: (302) 622-7041
vvetter@gelaw.com


24

**FOR THE STATE OF OKLAHOMA**

**GENTNER DRUMMOND**
**ATTORNEY GENERAL**

*/s/ Jennifer L. Lewis*
Garry M. Gaskins, II
Solicitor General
Jennifer L. Lewis
Deputy Attorney General
Stephanie Acquario
Assistant Attorney General
Office of the Attorney General of Oklahoma
313 NE Twenty-First St.
Oklahoma City, OK 73105
Tel. (405) 521-3921
garry.gaskins@oag.ok.gov
jennifer.lewis@oag.ok.gov

**FOR THE COMMONWEALTH OF**
**PENNSYLVANIA**

**MICHELLE A. HENRY**
**Attorney General**

*/s/ Neil Mara*
NEIL MARA
Chief Deputy Attorney General
Special Litigation Unit
Public Protection Division
Office of Attorney General
1000 Madison Ave.
Suite 310
Norristown, PA 19403
Tel. (717) 787-3391
nmara@attorneygeneral.gov

**FOR THE STATE OF OREGON**

**ELLEN F. ROSENBLUM**
**ATTORNEY GENERAL**

*/s/ Tim Nord*
TIM NORD
Special Counsel
PAUL GARRAHAN
Sr. Assistant Attorney General
Oregon Department of Justice
1162 Court Street NE
Salem, Oregon 97301-4096
Tel. (503) 934-4400
Tim.D.Nord@doj.oregon.gov
Paul.Garrahan@doj.oregon.gov

**FOR THE COMMONWEALTH OF**
**PUERTO RICO**

**DOMINGO EMANUELLI HERNÁNDEZ**
**SECRETARY OF JUSTICE**
**DEPARTMENT OF JUSTICE OF PUERTO**
**RICO**

*/s/ Guarionex Díaz Martínez*
GUARIONEX DÍAZ MARTÍNEZ
Assistant Secretary
Department of Justice
PO Box 9020192
San Juan, PR 00902-0192
Tel. (787) 721-2900
gdiaz@justicia.pr.gov

25

**FOR THE STATE OF RHODE ISLAND**

**PETER F. NERONHA**
**ATTORNEY GENERAL**

*/s/ Sarah W. Rice*
SARAH W. RICE
ADI GOLDSTEIN
ALISON CARNEY
**DEPARTMENT OF THE ATTORNEY**
**GENERAL**
150 South Main Street
Providence, RI 02903
Tel. (401) 274-4400
srice@riag.gov
acarney@riag.gov

**FOR THE STATE OF SOUTH CAROLINA**

*/s/ Danielle A. Robertson*
ALAN M. WILSON, Fed. ID# 10457
Attorney General of South Carolina
DANIELLE A. ROBERTSON, Fed. ID# 14007
Assistant Attorney General
**OFFICE OF THE ATTORNEY GENERAL**
**OF SOUTH CAROLINA**
P.O. Box 11549
Columbia, South Carolina 29211
Tel. (803) 734-0274
DaniRobertson@scag.gov

Vincent A. Sheheen, Fed. ID# 7016
Michael D. Wright, Fed. ID# 11452
**SAVAGE ROYALL & SHEHEEN, LLP**
VSheheen@thesavagefirm.com

A. Gibson Solomons, III, Fed. ID# 7769
**SPEIGHTS & SOLOMONS, LLC**
GSolomons@speightsandsolomons.com

Jonathan M. Robinson, Fed. ID# 7755
**SMITH ROBINSON HOLLER DUBOSE &**
**MORGAN, LLC**
Jon@smithrobinsonlaw.com

**FOR THE STATE OF TENNESSEE**

**JONATHAN SKRMETTI**
(BPR No. 31551)
**ATTORNEY GENERAL AND
REPORTER**

*/s/ Amanda E. Callihan*
AMANDA E. CALLIHAN
(BPR No. 035960)
Senior Assistant Attorney General
Sohnia W. Hong (BPR No. 17415)
Deputy Attorney General
Office of the Tennessee Attorney General
Environmental Division
P.O. Box 20207
Nashville, Tennessee 32707
Amanda.Callihan@ag.tn.gov
Sohnia.Hong@ag.tn.gov

**FOR THE STATE OF TEXAS**

**KEN PAXTON**
**Attorney General of Texas**

BRENT WEBSTER
First Assistant Attorney General
JAMES LLOYD
Deputy Attorney General for Civil Litigation
KELLIE BILLINGS-RAY
Chief, Environmental Protection Division

*/s/ Katie B. Hobson*
KATIE B. HOBSON
State Bar No. 24082680
BRITTANY WRIGHT
State Bar No. 2413001
JAKE MARX
State Bar No. 24087989
Assistant Attorneys General
Environmental Protection Division
P.O. Box 12548, MC-066
Austin, Texas 78711-2548
Tel. (512) 463-2012
Fax. (512) 320-0911
Katie.Hobson@oag.texas.gov
Brittany.Wright@oag.texas.gov
Jake.Marx@oag.texas.gov

**FOR THE STATE OF VERMONT**

**CHARITY R. CLARK**
**Attorney General**

*/s/ Laura B. Murphy*
LAURA B. MURPHY
Assistant Attorney General
Environmental Protection Unit
Vermont Attorney General's Office
109 State Street
Montpelier, VT 05609
Tel. (802) 828-1059
laura.murphy@vermont.gov

**FOR THE STATE OF WASHINGTON**

**ROBERT W. FERGUSON**
**Washington State Attorney General**

*/s/ Timothy E. Allen*
*/s/ Junine So*
TIMOTHY E. ALLEN, WA Bar No. 29415
JUNINE SO, WA Bar No. 58779
Assistant Attorneys General
Washington State Attorney General's Office
Environmental Protection Division
800 Fifth Ave., Ste. 2000
Seattle, WA 98104
Tel. (206) 464-7744
timothy.allen@atg.wa.gov
junine.so@atg.wa.gov

27

**FOR THE STATE OF WISCONSIN**

**JOSHUA L. KAUL**
**Attorney General**

*/s/ Bradley J. Motl*
BRADLEY J. MOTL
*/s/ Tressie K. Kamp*
TRESSIE K. KAMP
*/s/ Sarah C. Geers*
SARAH C. GEERS
Assistant Attorneys General
Wisconsin Department of Justice
Post Office Box 7857
Madison, WI 53707-7857
Tel. (608) 267-0505 (Motl)
Tel. (608) 266-9595 (Kamp)
Tel. (608) 266-3067 (Geers)
motlbj@doj.state.wi.us
kamptk@doj.state.wi.us
geerssc@doj.state.wi.us

## Appendix 1 – Sovereign Case list

- Alaska: *State of Alaska v. 3M Company, et al.*, No. 2:21-cv-02804.

- Arizona: *Arizona, State of v. 3M Company, et al.*, No. 2:23-cv-03249.

- Arkansas: *State of Arkansas v. 3M Company, et al.*, No. 2:23-cv-03829.

- California: *The People of the State of California, ex rel. Rob Bonta, Attorney General v. 3M Company, et al.*, No. 2:23-cv-01531.

- Colorado: *State of Colorado Attorney General v. E. I. Du Pont De Nemours and Company, et al.*, No. 2:22-cv-01195.

- Connecticut: *State of Connecticut v. 3M Company, et al.*, No. 2:24-cv-01217.

- Delaware: *The State of Delaware v. 3M Company, et al.*, No. 2:23-cv-06975.

- District of Columbia: *District of Columbia v. 3M Company, et al.*, No. 2:23-cv-04505.

- Florida: *State of Florida v. Tyco Fire Products LP, et al.*, No. 2:23-cv-00229.

- Guam: *Government of Guam v. The 3M Company, et al.*, No. 2:19-cv-03602.

- Hawaii: *State of Hawaii, The, ex rel. Anne E. Lopez, Attorney General v. 3M Company, et al.*, No. 2:24-cv-00488.

- Indiana: *State of Indiana v. 3M Company, et al.*, No. 2:24-cv-03124.

- Kentucky: *Commonwealth of Kentucky, Energy and Environment Cabinet v. 3M Company, et al.*, No. 2:23-cv-03535.

- Maine: *State of Maine v. 3M Company, et al.*, No. 2:23-cv-02573.

- Maryland: *State of Maryland v. 3M Company, et al.*, No. 2:23-cv-03635.

- Massachusetts: *Commonwealth of Massachusetts v. 3M Company, et al.*, No. 2:22-cv-01649.

- Mississippi: *Mississippi, State of v. 3M Company, et al.*, No. 2:20-cv-04370.

- New Hampshire: *New Hampshire, State of v. 3M Company, et al.*, No. 2:19-cv-02285.

- New Jersey: *Gurbir S Grewal, Attorney General of the State of New Jersey, et al., v. 3M Company, et al.*, No. 2:19-cv-02199; *State of New Jersey, Dep't of Environmental Protection v. United States of America*, No. 2:21-cv-00146.

- New Mexico: *State of New Mexico, ex rel., et al., v. 3M Company, et al.*, No. 2:23-cv-04187; *State of New Mexico, et al., v. United States, et al.*, No. 2:20-cv-02115 ("U.S. Am. Compl.").

- New York: *State of New York v. 3M Company, et al.*, No. 2:19-cv-01022; *State of New York v. 3M Company, et al.*, No. 2:19-cv-02123; *State of New York v. 3M Company, et al.*, No. 2:19-cv-02607; *State of New York v. 3M Company, et al.*, No. 2:20-cv-00048.

- North Carolina: *State of North Carolina v. 3M Company, et al.*, No. 2:22-cv-00014; *State of North Carolina, ex rel., v. 3M Company, et al.*, No. 2:22-cv-00015; *State of North*

*Carolina v. 3M Company, et al.*, No. 2:22-cv-00040; *State of North Carolina v. 3M Company, et al.*, No. 2:22-cv-00041; *State of North Carolina, et al., v. 3M Company, et al.*, No. 2:22-cv-04416; *State of North Carolina v. 3M Company, et al.*, No. 2:22-cv-04431.

- Commonwealth of the Northern Mariana Islands: *Commonwealth of Northern Mariana Islands v. 3M Company, et al.*, No. 2:20-cv-01399.

- Ohio: *State of Ohio, ex rel., v. 3M Company, et al.*, No. 2:19-cv-00990.

- Oklahoma: *State of Oklahoma v. 3M Company, et al.*, No. 2:24-cv-00308

- Oregon: *State of Oregon v. 3M Company, et al.*, No. 2:23-cv-03633.

- Pennsylvania: *Commonwealth of Pennsylvania, et al., v. EIDP, Inc., et al.*, No. 2:23-cv-03649.

- Puerto Rico: *Commonwealth of Puerto Rico, The v. 3M Company, et al.*, No. 2:23-cv-02351.

- Rhode Island: *State of Rhode Island, By and Through Peter F. Neronha, Attorney General v. 3M Company, et al.*, No. 2:23-cv-03634.

- South Carolina: *The State of South Carolina v. 3M Company, et al.*, No. 2:23-cv-05734.

- Tennessee: *State of Tennessee, et al., v. 3M Company, et al.*, No. 2:23-cv-03632.

- Texas: *The State of Texas v. 3M Company, et al.*, No. 2:23-cv-04294.

- Vermont: *State of Vermont v. 3M Company, et al.*, No. 2:19-cv-02281.

- Washington: *State of Washington v. 3M Company, et al.*, No. 2:23-cv-03262.

- Wisconsin: *State of Wisconsin v. 3M Company, et al.*, No. 2:23-cv-00028.

2

## Appendix 2 – Sovereign Site lists

| State | Federal Sites | Airports | Fire-Training Facilities | Other* | Total for State |
|---|---|---|---|---|---|
| Alaska | 14 | 26 | 4 | 20 | 57 |
| Arizona | 8 | 11 | 24 | 12 | 55 |
| Arkansas | 5 | 2 | | 1 | 8 |
| California | 73 | 26 | 67 | 2,060 | 2,226 |
| Colorado | 10 | 14 | 8 | 70 | 102 |
| CNMI | 1 | 3 | | 1 | 5 |
| Connecticut | 5 | 4 | 68 | 1,070 | 1,147 |
| Delaware | 2 | 1 | 1 | | 4 |
| D.C. | 3 | 2 | | | 5 |
| Florida | | | 13 | | 13 |
| Guam | 3 | 1 | | 1 | 5 |
| Hawaii | 19 | 8 | | | 27 |
| Indiana | 13 | 12 | | | 25 |
| Kentucky | 7 | 8 | 25 | 3 | 43 |
| Maine | 5 | 1 | | 3 | 9 |
| Maryland | 13 | 4 | 2 | | 19 |
| Massachusetts | 6 | 5 | 4 | 14 | 29 |
| Mississippi | 7 | 3 | 1 | 1 | 12 |
| New Hampshire | 2 | 2 | 11 | | 15 |
| New Jersey | 5 | 5 | | | 10 |
| New Mexico | 8 | 10 | 5 | | 23 |
| New York | 15 | 13 | 16 | 16 | 60 |
| North Carolina | 2 | 3 | 1 | | 6 |
| Ohio | 6 | 2 | 2 | | 10 |
| Oklahoma | 9 | 4 | | | 13 |
| Oregon | 16 | 7 | 2 | | 25 |
| Pennsylvania | 11 | 14 | 3 | 11 | 39 |
| Puerto Rico | 11 | 6 | | | 17 |
| Rhode Island | 3 | 1 | | | 4 |
| South Carolina | 10 | 49 | 30 | 415 | 504 |
| Tennessee | 6 | 5 | | | 11 |
| Texas | 31 | 9 | 7 | | 47 |
| Vermont | 4 | 1 | 1 | 5 | 11 |
| Washington | 10 | 11 | 3 | 7 | 31 |
| Wisconsin | | | | 42 | 42 |
| TOTAL | 343 | 273 | 298 | 3,752 | 4,659 |

These figures represent AFFF-related sites identified either at the time of filing under CMO 5, as supplemented, or as of this date. *"Other" sites are those that did not fit within federals sites, airports, or fire training facility categories.

1