**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | |
|---|---|
| The City of Columbia d/b/a Columbia Water | MDL No. 2:18-mn.2873-RMG |
| Plaintiff, | This Document Relates to: 2:24-cv-03794-RMG |
| vs. | |
| 3M Company, Inc.; Daikin America, Inc.; Daikin Applied Americas, Inc.; EIDP, Inc. f/k/a E.I. du Pont de Nemours and Company; DuPont De Nemours, Inc.; Cri-Tech, Inc.; MDA Manufacturing, Inc; The Chemours Company; Ascend Performance Materials, Inc.; Ascend Performance Materials Operations, LLC; BASF Corporation; Burlington Industries, Inc.; Cintas Corporation No. 2 d/b/a Cintas Cleanroom Corporation; Cone Mills Receiver, LLC; Comp X, LLC; CompX International, Inc.; CompX Marine, Inc.; CompX Security Products, Inc.; CPJ Technologies, Inc.; Jan-Chem, Ltd.; Ulterion International, LLC; Ulterion International Exports, II, Inc.; Masha, LLC; DayStrong Rubber Products, LLC; Dodge Industrial, Inc. f/k/a Dodge Mechanical Power Transmission Company, Inc.; Elevate Textiles, Inc. f/k/a Safety Components International, Inc. f/k/a International Textile Group, Inc.; Fibertex Nonwovens, Inc.; FUJIFILM Holdings America Corporation; FUJIFILM Manufacturing U.S.A., Inc; GE Gas Turbines (Greenville), L.L.C.; Greif Packaging, LLC; Holly Oak Chemical, Inc.; Milliken & Company; Mitsubishi Chemical America, Inc.; Nicca USA, Inc.;  Oppermann Webbing, Inc.;  QualaWash Holdings, LLC; Roll Technology Corporation f/k/a Carolina Plating Company, Inc.; Royal Adhesives & Sealants, LLC; Saati Advanced Chemicals, LLC; Saati Americas Corporation; Safety Components Fabric Technologies, Inc.; Shaw Industries Group, Inc.; Solvay | **THE CITY OF COLUMBIA'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO REMAND** |

i

Specialty Polymers USA, LLC; Saint-
Gobain Abrasives, Inc.; T & S Brass and
Bronze Works, Inc.; Teijin Carbon America,
Inc.; Tietex International, LTD; Toray
Composite Materials America, Inc.; Toray
Industries (America), Inc.; Unichem
Specialty Chemicals, LLC; Unifirst
Corporation; and VLS Piedmont, LLC;

       Defendants.

## THE CITY OF COLUMBIA'S MEMORANDUM OF LAW
## IN SUPPORT OF MOTION TO REMAND

Amy L.B. Hill, Fed Id. 7696
William C. Lewis, Fed Id. 12076
Richardson Thomas, LLC
1513 Hampton Street
Columbia, South Carolina 29201
T: 803-281-8150
F: 803-632-8263
amy@richardsonthomas.com
will@richardsonthomas.com

*Attorneys for Plaintiff*

ii

## TABLE OF CONTENTS

TABLE OF AUTHORITIES……………………………………………………………………..iv

I. INTRODUCTION……………………………………………………………………...1

II. FACTUAL AND LEGAL BACKGROUND……………………………………………..2

    A.    *The City of Columbia v. 3M, et al*……………………...……...……………………2

            1. 3M's Notice of Removal………...…………………………………………4

    B.    The South Carolina Attorney General's Non-AFFF State Court Action versus the South Carolina Attorney General's AFFF Federal Action……………………6

    C.    The Law Favors Remand Where There Is An Express Disclaimer………………7

III. STANDARD OF REVIEW……………………...…………………………….……..8

IV. ARGUMENT……………...…………………………………………..…………..8

    A.    An express disclaimer of federal claims is sufficient to justify remand. …………………...……….………………9

    B.    3M cannot meet its burden to establish federal officer removal is proper………...13

            1. 3M presents a misleading factual predicate………………………….…13

            2. Being subject to a performance specification is not "acting under" the direction of a federal officer…………………………………………16

            3. There is no nexus between 3M's actions and the direction of a federal officer.. …………….…...……….……...............21

            4. There can be no "colorable federal defense" to exclusively state law claims…………….…...……………………….23

            5. Misplaced reliance on *Nessel* and *Ayo*………………………...………………25

    C.    Columbia is entitled to recover fees under 28 U.S.C. § 1447(c). …………………....27

V. CONCLUSION………………...………………………...…………….…………………27

## TABLE OF AUTHORITIES

**C**ASES                                                                                          **P**AGE(S)

*Anne Arundel County., Maryland v. BP P.L.C.,*
    94 F.4th 343, 346 (4th Cir. 2024)…………………………………………….14, 16, 18, 19

*Ayo v. 3M Co.*, No 18-CV-0373 (JS)(AYS)
    2018 WL 4781145 (E.D.N.Y. Sept. 30, 2018)……………………………………………26

*Baker v. Atlantic Richfield Co.,*
    962 F.3d 937 (7th Cir. 2020))…………………………………………………………..21

*Batchelor v. American Optical Corp.,*
    185 F. Supp. 3d 1358, 1363(S.D. Fla. 2016)…………………………………………...10

*Bennett v. Bally Mfg. Corp.,*
    785 F. Supp. 559 (D.S.C.1992)……………………………………………………………8

*Boyle v. United Techs. Corp.,*
    487 U.S. 500, 512 (1988)……………………………………………………………24, 25

*Carlson v. Boston Sci. Corp.,*
    856 F.3d 320 (4th Cir. 2017)……………………………………………………………..6

*City & Cnty. of Honolulu v. Sunoco LP,*
    39 F.4th 1101, 1107 (9th Cir. 2022). …………………………………………………20

*Coury v. Air & Liquid Sys. Corp. (Coury II)*,
    Case No. 20-cv-264-JR, 2020 WL 2405838……………………………………………...11

*Coury Air & Liquid Sys. Corp. (Coury III)*,
    2020 WL 3405204 (D. Or. June 19,  2020)……………………………………………11

*Exxon Mobil Corp. v. Allapattah Servs., Inc.,*
    545 U.S. 54 (2005)……………………………………………………………………...8

*Goncalves By & Through Goncalves v. Rady Children's Hosp. San Diego,*
865 F.3d 1237, 1245 (9th Cir. 2017)…………………………………………………………22

*Graves v. 3M Company*,
    17 F.4th 764  (8th Cir. 2021)………………………………………………...16, 22, 23

*Grosch v. Tyco Fire Products LP*,
    No. cv-23-01259, 2023 WL 5993548  (D. Arizona Sept. 15, 2023)…...............9, 14, 21, 22

*Hayden v. 3M Company*,
　No. 15-2275, 2015 WL 4720741 (E.D. La., Aug. 10, 2015)…………………………10, 21

*Illinois ex rel. Raoul v. 3M Co.*,
　693 F.Supp.3d 948 (C.D. Ill. Sept. 21, 2023)……………………………………...7, 9, 10

*In re Aqueous Film-Forming Foams Prod. Liab. Litig.*,
　MDL No. 2:18-MN-2873-RMG, 2022 WL 4291357
　(D.S.C. Sept. 16, 2022)……………………………………………5, 16, 17, 18, 23, 25

*In re Aqueous Film-Forming Foams Prod. Liab. Litig.*,
　MDL 2:18-MN-2873-RMG, 2023 WL 10998036
　(D.S.C. Feb. 8, 2023)…………………………………………………………………6

*Jefferson Cnty. v. Acker*,
　527 U.S. 423 (1999)……………………………………………………………...13

*Joseph v. Fluor Corp.*,
　513 F. Supp. 2d 664, 673 (E.D. La. 2007)…………………………………………...16

*Kelleher v. A.W. Chesterton Co.*,
　No 15-cv-893, 2015 U.S. Dist. LEXIS 159783  (S.D. Ill. Nov. 23, 2015)………………..11

*Leite v. Crane Co.*,
　749 F.3d 1117 (9th Cir. 2014)…………………………………………………13, 14

*Long v. 3M Company*,
　3:23-cv-1325-R, 2024 WL 866819…………………………………………...10, 11

*Maine v. 3M Co.*,
　No. 2:23-cv-00210-JAW,  2023 WL 4758816
　(D. Me. July 26, 2023)……………………………………………7, 9, 10, 11, 23, 27

*Maryland v. 3M Company, et al.*,
　CV. No. RDB-23-1836, 2024 WL 1152568 (D. Md. Feb. 12, 2024)………7, 9, 10, 24, 25

*Mayor and City Council of Baltimore v. BP P.L.C.*,
　31 F.4th 178, 230 (4th Cir. 2022)………………………………………14, 16, 17, 19

*Martin v. Franklin Capital Corp.*,
　546 U.S. 132, 136 (2005)……………………………………………………...27

*Mulcahey v. Columbia Organic Chem. Co.*,
　29 F.3d 148 (4th Cir. 1994)………………………………………………………8

v

*Nessel v. Chemguard*,
  No. 1:20-CV-1080, 2021 WL 744683 (W.D. Mich. Jan. 6, 2021)...............5, 25, 26, 27

*New Hampshire v. 3M Co.*,
  665 F.Supp.3d 215 (D.N.H. 2023)..........................7, 9, 10, 11, 12, 21, 23, 24, 26, 27

*Papp v. Fore-Kast Sales Co.*,
  842 F.3d 805, 815 (3d Cir. 2016)..........................................................................25

*Parks v. Guidant Corp.*,
  402 F. 964, 968 (N.D. Ill., Hamond Div. Nov. 21, 2005).....................................17

*Reaves v. Crow*,
  3:22-cv-0732-TLW-TER, 2022 WL 2673066
  (D.S.C., Columbia Div. May 10, 2022)................................................................14

*Reinbold v. Advanced Auto Parts, Inc.*,
  No.18-CV-605-SMY-DGW, 2018 WL 3036026, at * 2 (S.D. Ill. June 19, 2018)..........7

*Ripley v. Foster Wheeler, LLC*,
  841 F.3d 207 (4th Cir. 2016).................................................................................13

*Sawyer v. Foster Wheeler, LLC*,
  860 F.3d 249 (4th Cir. 2017)...........................................................................18, 19

*Siders v. 20th Century Glove Corp. of Texas*,
  No. 2:15-cv-13278, 2016 WL 1733473 (S.D.W.V. Apr. 29, 2016)........................10

*State v. Meadows*,
  88 F.4th 1331, 1338 (11th Cir. 2023)...............................................................20, 21

*The State of South Carolina v. 3M Company, et al.*, ("*S.C. A.G. Non-AFFF Case*")
  No. 2:23-cv-05979-RMG, 2014 WL 1470056
  (D.S.C. Feb 29, 2024) ...................................................6, 7, 9, 12, 21, 24, 27

*The State of South Carolina v. 3M Co.*, ("*S.C. A.G. Federal AFFF Case*")
  No.23-cv-5734 (D.S.C. Nov. 9, 2023)....................................................................6

*Watson v. Philip Morris Cos.*,
  551 U.S. 142, 147 (2007)..........................................................................13, 16

*Young v. Chemguard*,
  No. CV-21-00568 PHX-SPL, 2021 WL 2070445 (D. Ariz. May 24, 2021)...............21

*Young v. Tyco Fire Prod., LP*,
  No. 21-15912, 2022 WL 486632 (9th Cir. Feb. 17, 2022)....................................21

vi

**STATUTES**                                                                                    **PAGE(S)**

28 U.S.C. § 1442(a)(1)…………………………………………………………...4, 13
28 U.S.C. § 1447(c)……………………………………………………………...27

**OTHER AUTHORITIES**                                                                **PAGE(S)**

*All 3M Products*; 3M.COM,
     https://www.3m.com/3M/en_US/p/ (last accessed 7/17/2024)…………………………22

3M Company, Form 10-Q for the Quarterly Period Ended September 30, 2023
 submitted to U.S. Sec. and Exch. Comm'n (2023)…………………………………………...18

Transcript of Fairnesss Hearing of the 3M Settlement in the Case of Camden vs. 3M, et al,
     *In re Aqueous Film-Forming Foams Prod. Liab. Litig.*,
     No. MDL 2:18-MN-2873-RMG (February 2, 2024)……………………………………..24

State of South Carolina's Memorandum of Law
     Supporting the State's Motion to Remand
     and Reynolds Declaration attached as Exhibit 1,
     *The State of South Carolina v. 3M Company, et al.*, ("*S.C. A.G. Non-AFFF Case*")
     No. 2:23-cv-05979-RMG, 2014 WL 1470056 (D.S.C. Feb 29, 2024) …………………24

### THE CITY OF COLUMBIA'S MEMORANDUM OF LAW
### IN SUPPORT OF MOTION TO REMAND

The City of Columbia ("Columbia") respectfully moves this Honorable Court to remand this case to where jurisdiction is proper: The Richland County Court of Common Pleas. Remand is appropriate in this circumstance because there is no basis for this Court to exercise jurisdiction over what are exclusively state law claims. Defendant 3M's arguments supporting its removal action have already been rejected by other courts and specifically this Court. As grounds for remand, Columbia sets forth and states as follows:

## I. INTRODUCTION

Through no fault of its own, Columbia must take steps to remove PFAS[1] contamination from its drinking water to meet drinking water standards. To do so requires sophisticated treatment technology at a very significant cost, and Columbia does not wish to pass these expenses on to their customers. As a result, Columbia filed suit against 3M and others in attempt to recover PFAS-related expenses and lower or eliminate the PFAS remediation cost to its ratepayers.

3M now attempts to remove Columbia's case on the basis of federal officer removal. Specifically, 3M takes the position that Columbia's damages are at least in part caused by MilSpec

---

[1] PFAS refers to a family of chemicals used to impart non-stick, stain resistant, and heat resistant properties to textiles and other mediums. Columbia's Complaint defines PFAS as follows: "Unless otherwise delineated, the term "PFAS" or "PFAS Chemicals" in this Complaint refers to any per- or poly-fluoroalkyl substance that contains at least one fully fluorinated methyl or methylene carbon atom (without any hydrogen, chlorine, bromine, or iodine atom attached to), collectively, related chemicals that degrade to PFAS/PFOA/PFOS, and any precursors to PFAS/PFOA/PFOS, including, but not limited to, PFOA, PFOS, Gen-X, HFPO-DA, NEtFOSAA, NMeFOSAA, PFBS, PFDA, PFDoA, PFHpA, PFHxS, PFNA, PFTrDA, PFTA, PFUnA, 11Cl0PF3OUdS, 9Cl-PF3ONS, ADONA, PFPeS, PFHpS, 4:2 FTS (1H, 1H, 2H, 2H,-perfluorohexane sulfonic acid), 6:2 FTS (1H, 1H, 2H, 2H,-perfluorohexane sulfonic acid), 8:2 FTS (1H, 1H, 2H, 2H,-perfluorohexane sulfonic acid), PFBA, PFPeA, PFMBA, PFMPA, PFEESA, and NFDHA. It is Columbia's intention that this definition is as broad, expansive, and inclusive as possible."

Aqueous Film-Forming Foam ("AFFF") containing PFAS, a firefighting foam designed for military use, which accounts for a miniscule fraction of 3M's PFAS commercial product line. Because this small component of 3M's PFAS business fell under the performance specifications of the federal government, 3M argues that it acted under the control of the government, and is entitled to federal jurisdiction.

But, Columbia has explicitly disclaimed any damages relating to MilSpec AFFF, and all firefighting foam for that matter. The same arguments and authorities 3M presently raise have been considered and rejected by many Courts, including this Court. Columbia's case is due to be remanded on the same grounds.

## II. <u>FACTUAL AND LEGAL BACKGROUND</u>

### A. *The City of Columbia v. 3M, et al.*

Columbia, doing business as Columbia Water, filed suit against 3M and others for damages related to PFAS pollution of its source water and wastewater. (*See* Complaint and Amended Complaint, State Court Documents, Exhibits 1 & 2 of the Notice of Removal.) The Defendants are all, in various capacities, either manufacturers, users, or dischargers of PFAS that have contributed to the pollution. (*See* Amended Complaint ¶¶ 1-10, 21-65.) Columbia's Complaint exclusively alleges state law theories of Negligence (Amended Complaint ¶¶ 139-149), Continuing Nuisance (Amended Complaint ¶¶ 150-16), Public Nuisance (Amended Complaint ¶¶ 161-171), and Trespass (Amended Complaint ¶¶ 172-184).

Columbia alleges that many of South Carolina's "textile manufacturers used a family of chemicals, referred to as 'PFAS' or 'forever chemicals,' to impart stain resistant and non-stick properties to textiles. PFAS is also commonly used in metal finishing, paper finishing, plastics coating, and aerospace industries, among others for the ability to repel water, dirt, and oil, among

other things." (Amended Complaint at ¶ 1.) Columbia explains that the named Defendants "have manufactured, sold, used, and/or released PFAS upstream of Columbia's drinking water intake points, or are responsible for wastewater containing PFAS in Columbia's wastewater treatment plant." (Amended Complaint at ¶ 4.)  Columbia even identifies the specific exposure pathways from which Defendants' PFAS reaches Columbia's drinking water intakes, which include: "direct discharge from an industrial point source; pass through contamination from wastewater containing PFAS introduced into conventional wastewater treatment plants; and groundwater contamination from manufacturing facilities."  (Amended Complaint at ¶ 5.)  There is no allegation that MilSpec AFFF, or even non-MilSpec AFFF firefighting foam, caused or contributed to causing Columbia's damages. (Amended Complaint at ¶ 69.)

In fact, Columbia's Complaint expressly disclaims all federal claims, all claims arising from the manufacture, use or sale of AFFF, including MilSpec AFFF, and all claims potentially arising from a federal enclave[2]:

> This lawsuit is brought under the laws of The State of South Carolina. Columbia asserts no federal cause of action, invokes no federal statutes, and seeks no relief that is based on any federal statute or laws. (Amended Complaint at ¶ 66.)
>
> Any federal claim is expressly disclaimed by Columbia. (Amended Complaint at ¶ 67.)
>
> Columbia makes no claim, and asserts no cause of action, to implicate that the manufacture, sale, or use of PFAS containing firefighting foam (often referred to as "AFFF") in any way caused or contributed to cause the damages, or the claims, asserted in this lawsuit. Columbia expressly disclaims any cause of action or damages arising from or associated with AFFF manufacture, sale, use or disposal by the named Defendants, or by any unnamed defendant or entities, including any legal or factual claim based on alleged "Mil Spec AFFF" as well as any potential claims arguably arising from any federal enclaves. (Amended Complaint at ¶ 69.)

---

[2] 3M does not specifically assert a federal enclave removal argument, but alludes to MilSpec AFFF potentially being used and released from military facilities and other federal facilities. (Notice of Removal at ¶¶ 32, FN. 16.)  Any claims arguably arising from a federal enclave are expressly disclaimed in Columbia's Complaint. (Amended Complaint at ¶ 69.)

This lawsuit is brought under the laws of South Carolina. Columbia asserts no federal causes of action, invokes no federal statutes, and seeks no relief that is based on any federal statute or laws. Any federal claims are expressly disclaimed. (Amended Complaint at ¶ 73.)

Complete diversity does not exist between Columbia and all Defendants. This case arises out of the manufacture, supply, use, and disposal of PFAS in the carpet, textile, chemical, metal and plastics finishing, and other related industries utilizing or containing PFAS. Columbia makes no claim that the manufacture or use of AFFF in any way caused or contributed to its damages or the claims asserted in this lawsuit. (Amended Complaint at ¶ 74.)

### 1. 3M's Notice of Removal

Despite Columbia's express disclaimers to the contrary, 3M filed its Notice of Removal, invoking federal officer removal under 28 U.S.C. § 1442(a)(1).  (Notice of Removal at ¶ 20.) 3M argues that federal officer removal is proper here because of the possibility that some of the PFAS contamination *plausibly* could have resulted from firefighting foam used by the United States Military, known as MilSpec AFFF.  (Notice of Removal at ¶ 27.)  3M alleges that because it produced MilSpec AFFF, and it is *plausible* that MilSpec could have contributed to Columbia's damages, it is entitled to federal officer removal. (Notice of Removal at ¶¶ 31, 32.)

3M contends that MilSpec AFFF is "governed by rigorous military specifications created and administered by Naval Sea Systems Command, which is part of the DoD." (Notice of Removal at ¶ 24.)  According to 3M, MilSpec AFFF is required to contain "fluorocarbon surfactants" which "expressly contemplates the presence of PFOA and PFOS (subject to recently imposed limits) in AFFF formulations." (Notice of Removal at ¶ 25.)  However, 3M's brief recitation of the history of MilSpec AFFF omits key facts, which this Court has already considered:

- MilSpec AFFF is a performance specification, rather than a design specification.

-  MilSpec AFFF is designed to give manufacturers the "greatest flexibility as to how they would meet AFFF MilSpec's requirements."

- MilSpec AFFF manufacturers are left to determine their own proprietary chemical formula.

- MilSpec AFFF does not specify a particular formula or require C-8 chemistry, including PFOA or PFOS.

- Hundreds of different PFAS compounds meet the "fluorocarbon surfactants" guidance, which was left up to each individual manufacturer.

*In re Aqueous Film-Forming Foams Prod. Liab. Litig.*, No. MDL 2:18-MN-2873-RMG, 2022 WL 4291357, at *6-8 (D.S.C. Sept. 16, 2022).

3M contends "the alleged PFAS contamination of the Broad River and Lake Murray plausibly resulted in at least in part from AFFF use at military facilities, such as Fort Jackson, that are in the vicinity of those water supplies."  (Notice of Removal at ¶ 2.)  3M further asserts that "PFAS from MilSpec AFFF use plausibly has commingled with any PFAS from non-AFFF sources in the drinking water supplies for which the City seeks to recover." (Notice of Removal at ¶ 2.)  3M then concludes that "PFAS from MilSpec AFFF is indistinguishable from PFAS from other sources, and the City has not explained how to segregate out the PFAS covered by the City's purported disclaimer" and as a result "the City cannot prevent 3M 'from raising the production of MilSpec AFFF as a defense or alternate theory."  (Notice of Removal ¶ 4)(relying on *Nessel v. Chemguard*, 2021 WL 744683, at *3).

 Despite these broad statements, a cursory review of the geography of Fort Jackson and South Carolina shows that it would be virtually impossible for any water from Fort Jackson to impact Plaintiff's drinking water.  However, even if that were a possibility, this Court has made it clear in the South Carolina Attorney General's case that such legal arguments do not support removal.

### B. The South Carolina Attorney General's Non-AFFF State Court Action versus the South Carolina Attorney General's AFFF Federal Action.

3M's removal is predicated "in part on the *State's* allegations of PFAS contamination from AFFF use in the action currently pending against 3M and other defendants in the MDL." (Notice of Removal ¶ 27.) Given this, it is necessary to note the South Carolina State Attorney General has filed two different cases seeking to recover for PFAS-related damages. There is a pending state court action, which is pursuing only non-AFFF damages, and a pending federal action, which is pursuing exclusively AFFF-related damages.

The South Carolina Attorney General's state court action ***expressly disclaimed any federal claims including AFFF claims.*** 3M's attempt to remove of the South Carolina Attorney General's state court case, which is analogous to Columbia's case, has already been considered by this Court, rejected, and ultimately remanded. Order on Motion to Remand, *The State of South Carolina v. 3M Company, et al.*, No. 2:23-cv-05979-RMG, 2014 WL 1470056 (D.S.C. Feb 29, 2024)(Dkt. No. 13). Although this Order is currently being challenged by 3M on appeal, this decision remains law of the case. *See In re Aqueous Film-Forming Foams Prod. Liab. Litig.*, No. MDL 2:18-MN-2873-RMG, 2023 WL 10998036, at *1 (D.S.C. Feb. 8, 2023) (quoting *Carlson v. Boston Sci. Corp.*, 856 F.3d 320, 325 (4th Cir. 2017)) ("The law-of-the case doctrine provides that in the interest of finality, 'when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'"). In contrast, the South Carolina Attorney General's federal action is purely limited to AFFF-related damages. *See The State of South Carolina v. 3M Co.*, 23-cv-5734 (D.S.C. Nov. 9, 2023) (Dkt. No. 1-1).

3M repeatedly directs the Court to the Attorney General's federal AFFF action and ignores its state court counterpart to create the false impression that Columbia's claims for damages derive from AFFF contamination. (Notice of Removal at ¶¶ 27, 28, 30, FN 16.) A plain reading of

Columbia's Complaint shows otherwise.  (Amended Complaint at ¶ 69.) Columbia's claims are more akin to the claims in the South Carolina Attorney General's state court case, which expressly disclaims damages arising from AFFF-related contamination and seeks damages arising exclusively from non-AFFF sources; a case which this Court has already remanded.

### C.  Similar Cases Have Favored Remand Where There Is An Express Disclaimer.

Five courts, including this Court, have recently considered identical arguments by 3M and found in favor of remand where there has been an express disclaimer of federal jurisdiction:

| | |
|---|---|
| *New Hampshire v. 3M Co.*,665 F.Supp.3d 215, 227 (D.N.H. 2023) | "The State disclaimed in this suit recovery for harm from AFFF contamination, which eliminates any connection between the State's claims in this suit and 3M's production of MilSpec AFFF." |
| *Maine v. 3M Co.*, No. 2:23-cv-00210-JAW, 2023 WL 4758816 at *10 (D. Me. July 26, 2023) | "Here, the State's disclaimer is express, unambiguous, and plain, and in the Court's view, fits within the category of express disclaimers courts have found effective to justify a remand order." |
| *Illinois ex rel. Raoul v. 3M Co.*, 693 F.Supp.3d 948, 957 (C.D. Ill. Sept. 21, 2023)(quoting *Reinbold v. Advanced Auto Parts, Inc.,* No.18-CV-605-SMY-DGW, 2018 WL 3036026, at * 2 (S.D. Ill. June 19, 2018). | "[C]ourts have consistently granted motions to remand where the plaintiff expressly disclaimed the claims upon which federal officer removal was based." |
| *Maryland v. 3M Company, et al.*, CV. No. RDB-23-1836 2024 WL 1152568, at *3 (D. Md. Feb. 12, 2024) | "Because the State has expressly disclaimed any AFFF-related claims, 3M cannot establish the requisite nexus between charged conduct and asserted official authority." |
| *AFFF MDL; The State of South Carolina v. 3M Company* et al., No. 2:23-cv-05979-RMG, 2014 WL 1470056, * 3 (United States District of South Carolina, Charleston Division) | "The Court here agrees that the disclaimers moot 3M's government contractor defense because, whether or not 3M meets the requirements for the defense, it cannot be held liable in this case for PFAS contamination originating from AFFF. Because it does not matter that 3M acted in accordance with federal authority, the charged conduct here is not connected to the alleged federal authority. Accordingly, there is no nexus and federal officer removal is not available. . . Additionally, the Court finds that South Carolina's disclaimer of any AFFF claims, |

|  | which includes those arising from MilSpec AFFF use and storage on military bases, is a compelling reason to decline supplemental jurisdiction. Accordingly, federal enclave removal is not available." |
|---|---|

## III. <u>STANDARD OF REVIEW</u>

It is 3M's burden to establish proper removal from state court. *Mulcahey v. Columbia Organic Chem. Co.*, 29 F.3d 148, 151 (4th Cir. 1994); *see also Bennett v. Bally Mfg. Corp.*, 785 F. Supp. 559, 560 (D.S.C.1992). District Courts of the United States are "courts of limited jurisdiction" and "may not exercise jurisdiction absent a statutory basis." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 54, 552 (2005) (internal citation omitted). District Courts should apply strict construction to removal jurisdiction because it "raises significant federalism concerns." *Mulcahey*, 29 F.3d at 151. Any doubt as to the Court's jurisdiction weighs in favor of remand to state court. *Id.*

## IV. <u>ARGUMENT</u>

3M recycles the same MilSpec AFFF and federal officer arguments that have already been considered and rejected by a multitude of reviewing courts, including this Court. This case should be no different. The law is clear that where there is an express disclaimer of federal jurisdiction, the case should be remanded. Columbia's disclaimers moot the federal contractor defense because in this matter, 3M cannot be held liable for PFAS contamination emanating from MilSpec AFFF as these claims were expressly disclaimed. Even assuming, *arguendo*, that Columbia's disclaimers were insufficient to warrant remand, 3M still cannot meet its burden for removal, as set forth in detail herein. Given that these issues have already been decided by this Court and many others in Columbia's favor, this case should be summarily remanded.

**A.  An express disclaimer of federal claims is sufficient to justify remand.**

Where there is an express disclaimer of MilSpec AFFF related damages, there can be no federal officer removal, and the case must be remanded to state court.  *See e.g. New Hampshire*, 665 F.Supp.3d at 227; *Maine v. 3M Co.*, 2023 WL 4758816 at *10;  *Illinois,* 693 F.Supp.3d at 958 (C.D. Ill. Sept. 21, 2023); *Maryland*, 2024 WL 1152568, at *3; *Grosch v. Tyco Fire Products LP*, No. cv-23-01259, 2023 WL 5993548, at *4 (D. Arizona Sept. 15, 2023);  and *AFFF MDL; The State of South Carolina v. 3M Company* et al., No. 2:23-cv-05979-RMG (D.S.C., Charleston Div.). Alone, an express disclaimer is sufficient to justify remand.

Courts have even recognized disclaimer language where a disclaimer was ascertained, clarified, and subsequently asserted in post-complaint briefing:

> [T]his case is not subject to removal pursuant to the federal officer removal statute. The first reason is that, in light of Plaintiffs' theory of liability as expressed in the FAC and further refined in the motion-to-remand briefing, Plaintiffs are not seeking to hold Tyco liable for the design, manufacture, and distribution of MilSpec AFFF. Instead, Plaintiffs are seeking to hold Tyco liable for the design, manufacture, and distribution of other forms of AFFF. Given that narrow theory of liability, Tyco's argument that it may be able to raise a federal defense to any product liability claim arising from its design, manufacture, and distribution of MilSpec AFFF—and that it should be allowed the remove this action to federal court so it may pursue such a defense—is a red herring.

*Grosch,* 2023 WL 5993548, at * 4.  From the outset, there has been no ambiguity that Columbia is seeking no damages related to MilSpec AFFF.[3] (First Amended Complaint ¶¶ 66, 67, 69, 73 and 74.)  Where a disclaimer is express, unambiguous, and clear, courts have unanimously found in

---

[3] 3M points to an EPA graphic featuring the PFAS lifecycle to make the argument that the "[the City] acknowledges that 'firefighting foam' has contributed to ***claimed*** PFAS contamination of surface and groundwater." Notice of Removal at ¶ 10 (emphasis added). To be clear, this is not Columbia's position and Columbia has never claimed any damages arising from firefighting foam, AFFF, or MilSpec AFFF.  Furthermore, firefighting foam is distinguishable from the MilSpec AFFF upon which 3M's argument is predicated. *See Grosch*, 2023 WL 5993548, at *3 (distinguishing MilSpec AFFF from non-MilSpec, commercial AFFF).

9

favor of remand.  *See Maine v. 3M Co.*, No. 2:23-cv-00210-JAW, 2023 WL 4758816 at \*10 (D. Me. July 26, 2023) ("Here, the State's disclaimer is express, unambiguous, and plain, and in the Court's view, fits within the category of express disclaimers courts have found effective to justify a remand order.").

The gravamen of a disclaimer is that it eliminates the nexus between state court claims and any damages arising from MilSpec AFFF.  *See New Hampshire*, 665 F.Supp.3d at 227-28 ("The State disclaimed in this suit recovery for harm from AFFF contamination, which eliminates any connection between the State's claims in this suit and 3M's production of MilSpec AFFF."); *see also Maine*, 2023 WL 4758816, at \*10 ("[T]he federal officer defense will not be applicable in the State's Non-AFFF lawsuit because the State by its express disclaimer has imposed upon itself a burden to demonstrate that its claim involves Non-AFFF sources."); *Raoul*, 693 F.Supp.3d at 957-58, and *Maryland*, 2024 WL 1152568, at \*3.

This precept is true not only in the context of PFAS, MilSpec AFFF, and federal officer jurisdiction, but anywhere a plaintiff's disclaimer severs the relationship between a defendant's conduct and its federal acts.  *See e.g. New Hampshire*, 665 F.Supp.3d at 227 (citing *Hayden v. 3M Company*, No. 15-2275, 2015 WL 4720741, at \* 3-4 (E.D. La., Aug. 10, 2015)) (holding that the plaintiff's disclaimer of federal claims precluded federal jurisdiction); *see also e.g. Maine*, 2023 WL 4758816 at \* 10 ("Federal courts addressing disclaimer provisions in similar actions have recognize[d] a distinction between artful pleading for purposes of circumventing federal office jurisdiction, and express disclaimers of the claims that serve as the ground for removal under Section 1442(a)(1).") (citing *Batchelor v. American Optical Corp.*, 185 F. Supp. 3d 1358, 1363(S.D. Fla. 2016) (quoting *Siders v. 20th Century Glove Corp. of Texas*, No. 2:15-cv-13278, 2016 WL 1733473 (S.D.W.V. Apr. 29, 2016))(additional citations omitted)); and *Long v. 3M*

*Company*, 3:23-cv-1325-R, 2024 WL 866819, at * (D. Or. January 31, 2024)(post removal disclaimer valid in context of asbestos litigation where plaintiff disclaimed damages arising from military exposure or federal sites) (citing *Coury v. Air & Liquid Sys. Corp. (Coury II)*, Case No. 20-cv-264-JR, 2020 WL 2405838, report and recommendation adopted, *Coury Air & Liquid Sys. Corp. (Coury III)*, 2020 WL 3405204 (D. Or. June 19, 2020)) (additional citations omitted). Comparatively, Columbia's disclaimers also preclude from consideration any damages arising from MilSpec AFFF or federally mandated activity, and are therefore sufficient.

Importantly, the disclaimer language in Columbia's Complaint is nearly identical to disclaimer language that has considered and upheld in similar cases dealing with federal officer removal on the basis of MilSpec AFFF.   *Maine*, 2023 WL 4758816 at * 3 ("The State is not seeking to recover through this Complaint any relief for contamination or injury related to Aqueous Film Forming Foam, a firefighting material that contains PFAS."); *New Hampshire*, 665 F.Supp.3d at 211 ("Through this action, the State is not seeking damages, remediation, restoration or any other relief with respect to any contamination related to Aqueous Film-Forming Foam, which is a specialized category of products that contain PFAS compounds, as that is the subject of a separate action."); and State of South Carolina Attorney General's Non-AFFF case ("PFAS as defined in this Complaint expressly excludes Aqueous Film Forming Foam ("AFFF"), a firefighting material that contains PFAS. The State is not seeking to recover through this Complaint any relief for contamination or injury related to AFFF or AFFF products used at airports, military bases, or certain industrial locations.").

Due to express disclaimer language of MilSpec AFFF-related damages, the primary concern of federal officer removal—that federal claims and defenses are litigated in a federal forum—is rendered moot. *Maine*, 2023 WL 4758816 at * 10 (quoting *Kelleher v. A.W. Chesterton*

*Co.*, No 15-cv-893, 2015 U.S. Dist. LEXIS 159783, at *11 (S.D. Ill. Nov. 23, 2015)("Plaintiff's waiver has rendered any federal defenses moot."). It is impossible for 3M to be held liable for MilSpec AFFF contamination in this lawsuit due to Columbia's disclaimer language. Where there are no federal claims, "there is no scenario under which 3M could be found liable for any damages caused by AFFF." *New Hampshire,* 665 Supp. at 227-28. If 3M were to prove that a portion of its damages arose from MilSpec AFFF, 3M could prevail without any need to assert a federal defense theory. *See id.* ("If the evidence, for example, shows that AFFF caused any of the damages in this case, the portion attributable to AFFF would be subtracted from any damages awarded the State. And if no apportionment is possible, no damages could be awarded. 3M would prevail without any need to assert a defense premised on its acts under federal authority.") Where there is a disclaimer, 3M's Milspec AFFF argument is merely a causation defense, not an independent basis for removal.

This Court considered many of the above-mentioned authorities when evaluating remand of the South Carolina Attorney General's state court, non-AFFF case, which features nearly identical disclaimer language as the Columbia case. Specifically, this Court held:

> The Court here agrees that the disclaimers moot 3M's government contractor defense because, whether or not 3M meets the requirements for the defense, it cannot be held liable in this case for PFAS contamination originating from AFFF. Because it does not matter that 3M acted in accordance with federal authority, the charged conduct here is not connected to the alleged federal authority. Accordingly, there is no nexus and federal officer removal is not available.

*S.C. A.G. Non-AFFF Case*, 2014 WL 1470056, at * 3. As is the case here, 3M cannot show a nexus between its non-AFFF business ventures and any sort of federal authority or directive.

Due to the express, unambiguous disclaimers in Columbia's Complaint, 3M cannot be held liable for PFAS contamination originating from MilSpec AFFF, or any AFFF for that matter. Columbia has not alleged any claims originating from AFFF in this case. If does one day decide

to pursue AFFF claims, it may do so in federal court, like the numerous state Attorney General cases, and will be well within its rights to do so.  However, due to the disclaimers in the Complaint, 3M's conduct cannot be connected to any federal authority, rendering moot 3M's federal officer argument.  Thus, federal officer removal is not available to 3M.

**B.  3M cannot meet its burden to establish federal officer removal is proper.**

3M cannot satisfy its burden for federal officer removal.  The federal officer removal statute authorizes "any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office." 28 U.S.C. § 1442(a)(1).  Any party seeking to remove who seeks to remove a case under § 1442 (a)(1) must show (1) that it was a "person acting under" a federal officer, *see e.g., Watson v. Philip Morris Cos.*, 551 U.S. 142, 147 (2007); *Ripley v. Foster Wheeler LLC*, 841 F.3d 207, 209 (4th Cir. 2016); (2) that it has a "colorable federal defense," *Jefferson Cnty. v. Acker*, 527 U.S. 423, 431 (1999); and (3) that the charged conduct was carried out for or in relation to the asserted official authority, *see* 28 U.S.C. § 1442(a)(1).

**1.    3M presents a misleading factual predicate.**

In seeking removal pursuant to federal officer jurisdiction, 3M cannot "offer mere legal conclusions; it must allege the underlying facts supporting each of the requirements for removal jurisdiction."  *Leite v. Crane Co.,* 749 F.3d 1117, 1122 (9th Cir. 2014).  On motion to remand, plaintiffs "may raise either a facial attack or a factual attack on the defendants' jurisdictional allegations." *Id.*  Columbia raises both facial and factual attacks on 3M's notice of removal.

As a starting point, 3M's factual argument is built upon an improper piling of inferences, largely taken from the South Carolina's State Attorney General's *federal* AFFF case (which disclaims all state law theories of recovery).  (Notice of Removal ¶¶ 27, 28, 30, FN 16.)  The

operative pleading is Columbia's First Amended Complaint. *See Reaves v. Crow*, 3:22-cv-0732-TLW-TER, 2022 WL 2673066 at *3 (D.S.C., Columbia Div. May 10, 2022) ("Nevertheless, none of these claims are included in the Amended Complaint which is the operative pleading in this case.")  Under the law, "[e]xtrinsic documents will rarely, if ever, affect a federal court's subject matter jurisdiction in federal question cases because the jurisdictional inquiry is normally limited to the plaintiff's well-pleaded complaint."  *Id*. at * 2.  It is improper for 3M to attempt to use an "other paper" to "create a federal question where there are no federal claims alleged." *Id.*

3M cannot bind Columbia with factual allegations made by another party in a separate proceeding.  *See Anne Arundel Cnty., Maryland v. BP P.L.C.*, 94 F.4th 343, 350 (4th Cir. 2024) (refusing to look beyond the face of the complaints at issue to consider an alternative liability theory presented by defendants) (applying *Baltimore*, 31 F.4th at 233-34.)  Regardless, the same factual allegations 3M now attributes to Columbia's case were insufficient to prevent remand of the South Carolina Attorney General's state court case.

Furthermore, 3M bears a heightened burden of supporting its factual allegations. *Grosch*, 2023 WL 5993548, at * 2 (quoting *Leite.,* 749 F.3d at 1121-22) ("Where a remand motion raises a factual attack 'by contesting the truth of' the allegations in the notice of removal, the removing defendant 'must support its allegations with competent proof' and 'bears the burden of proving by a preponderance of the evidence' that 'each of the requirements for subject-matter jurisdiction has been met.'").  3M presents no competent proof of any facts that would support federal officer removal—only a very speculative factual theory.

3M alleges: "[u]pon information and belief, there exist pathways by which PFAS from AFFF use at Fort Jackson, the McEntire Joint National Guard Base, and the McCrady Training Center (possibly among other sites of MilSpec AFFF use) plausibly migrated off of the military

sites to impact the City's drinking water supply intakes at the Broad River and/or Lake Murray."
(Notice of Removal ¶ 2.)  3M then asserts "[o]nce PFAS from AFFF use has migrated off-base
from those military facilities to the surrounding surface waters and groundwater, the PFAS
plausibly commingles with and becomes indistinguishable from PFAS from any other non-AFFF
sources." (Notice of Removal at ¶ 2.)

However, 3M does not support this theory with any proof whatsoever, and certainly not by
a preponderance of the evidence, because 3M's theory is a factual impossibility.  Fort Jackson,
McEntire Joint National Guard Base, and the McCrady Training Center all are downgradient of
Columbia's Drinking Water intakes.  Any discharge that made its way into groundwater at these
sites would not impact the upgradient surface water of the Broad River or Lake Murray which
Columbia uses for drinking water.  Given this, there could be no comingling of MilSpec AFFF
PFAS and other and non-AFFF PFAS from these facilities as 3M contends.[4]  3M's conclusory and
speculative allegations are an insufficient basis for federal officer removal.

Similarly, 3M also overstates the import of the military's oversight role pertaining to
MilSpec AFFF.  (Notice of Removal ¶ 2)(arguing the firefighting foam that 3M and others sold to
the U.S. military was designed to "rigorous military specifications.").  However, the MilSpec
directive was simply a performance specification, and the military did not dictate or control the
means and methods of production, was designed to "greatest flexibility as to how they would meet
AFFF MilSpec's requirements," did not require the use of C-8 chemistry including PFOA an

---

[4] 3M also notes that the "City of Charleston has filed a putative class action against 3M and others
to recover from PFAS contamination alleged to have resulted from AFFF use" and that these
allegations "likewise indicate that PFAS deriving from the use of AFFF in South Carolina,
including MilSpec AFFF, plausibly has impacted areas of PFAS contamination alleged in this
case." Notice of Removal at ¶ FN 15.  The suggestion that PFAS contamination from military
facilities in Charleston has resulted in the upstream contamination of the Broad River and Saluda
River is equally devoid of any factual basis.

PFOS. *In re Aqueous Film-Forming Foams Prod. Liab. Litig.*, No. MDL 2:18-MN-2873-RMG, 2022 WL 4291357, at *7 (D.S.C. Sept. 16, 2022).

Nevertheless, 3M argues it is entitled to federal officer removal. Even assuming 3M's improper factual allegations to be true, 3M still cannot satisfy its legal burden.

### 2. Being subject to a performance specification is not "acting under" the direction of a federal officer.

To qualify for federal officer removal, "a defendant must show . . . that a suit is 'against' any person acting under [an] 'officer' 'for or relating to any act under color of a federal office." *Anne Arundel Cnty.,* 94 F.4th at 347-348. Simply because the federal government or a regulatory agency "directs, supervises, and monitors a company's activities in considerable detail" does not entitle to a party to federal officer removal. *Graves v. 3M Company*, 17 F.4th 764, 769 (8th Cir. 2021)(citing *Watson v. Phillip Morris Cos.*, 551 U.S. 142, 147 S.Ct. 2301 (2007). A business is not "acting under" a federal officer whenever it produces a product for a federal agency in compliance with the agency's specifications. *See, e.g., Joseph v. Fluor Corp*., 513 F. Supp. 2d 664, 673 (E.D. La. 2007) ("[I]t is simply not the case that private entities are entitled to a federal forum whenever litigation arises concerning products sold to the federal government."); *see also Mayor and City Council of Baltimore v. BP P.L.C.*, 31 F.4th 178, 230 (4th Cir. 2022) (oil company that provided gasoline for resale on military bases was not "acting under" a federal officer; holding otherwise "would bring every seller of contracted goods and services within the ambit of § 1442 when the government is a customer").

3M must demonstrate that it was acting under the "subjection, guidance, or control" of the federal government. *Watson*, 551 U.S. at 143, 147 S. Ct. 2301. Close supervision or regulation by the federal government is insufficient to satisfy the "acting under" requirement. The 4th Circuit clarifies that the contractor must be subject to "intense direction and control"— and simply being

subject to "specifications" that "required compliance" is insufficient to satisfy this element. *Mayor & City Council of Baltimore,* 31 F.4th at 230-31. A federal performance standard does not confer the necessary level of detail, direction, or control for federal officer removal, and such a broad interpretation would undermine its purpose. *See Parks v. Guidant Corp.*, 402 F. 964, 968 (N.D. Ill., Hamond Div. Nov. 21, 2005)(holding that a performance standard without "detailed instruction or direction" was insufficient to satisfy the "acting under" element required for federal officer removal, and allowing federal officer removal in this context would lead to an "unprecedented expansion of federal jurisdiction.").

3M cannot show it was subject to the "intense direction and control" necessary to establish the "acting under" element of federal officer removal and seeks to relitigate factual issues already decided by this Court. For instance, 3M asserts, with no evidence in support, that "[t]he design, manufacture, and sale of MilSpec AFFF is governed by rigorous military specifications created and administered by Naval Sea Systems Command." (Notice of Removal ¶ 24.) Yet, this Court has already rejected this claim. As this Court previously held in rejecting 3M's assertion of the governmental contractor immunity defense in the AFFF products liability litigation, even after years of fact discovery, 3M "ha[d] not put forth evidence of such extensive collaboration with the government in the design of [3M's] MilSpec AFFF." *In re Aqueous Film-Forming Foams Prod. Liab. Litig.*, No. MDL 2:18-MN-2873-RMG, 2022 WL 4291357, at *7 (D.S.C. Sept. 16, 2022).

Rather, as this Court found at the summary judgment stage in the AFFF litigation, the government simply provided *performance* specifications for MilSpec AFFF, and not detailed *design* specifications. *See id.* at *8 ("After carefully considering the parties' arguments, the record before the Court, and the relevant case law, the Court finds as a matter of law that the AFFF MilSpec is not a reasonably precise specification."). In other words, as long as performance criteria

were satisfied, the Navy did not make any specific recommendation as to chemical composition beyond containing "fluorocarbon surfactants." *Id.* at *6. In fact, as this Court found, PFAS, including PFOS and PFOA, "are not necessary as primary ingredients in MilSpec AFFF." *Id.* at *7.

The Navy gave wide latitude for each Mil Spec AFFF manufacturer to create a product that satisfied the Mil Spec Performance requirements and "did not specify the use of a particular formula or the use of C8 chemistry." *Id.* at *6 (citing Darwin Dep. at 45:20-46:13, 82:6-20; USA's Responses to Plfs.' First Set of Am. RFAs, *In re: Aqueous Film-Forming Foams Prod. Liab. Litig.*, No. 2:18-mn-2873 (D.S.C.), Dkt. No. 2063-4, Resp. 3.) Simply because 3M produces a product that is on the Navy's Qualified List does not mean that 3M is subject to the requisite level of "subjugation, guidance, or control" required for it to show that it was "acting under" a federal mandate. 3M's attempts to relitigate these legal and factual issues should be rejected.

For example, in *Anne Arundel Co.*, two Maryland local governments brought actions against BP P.L.C. and others under Maryland's Consumer Protection Act and other state tort law causes of action based on damages flowing from climate change and defendants alleged efforts to obfuscate the relationship between their products and climate change. Defendants attempted removal under 28 U.S.C. § 1442 (a)(1) on the basis that they were subject to "pervasive federal control" which included "producing specialized fuels for the military" among other things. 94 F.4th at 349 (4th Cir. 2024). Ultimately, the 4th Circuit rejected this argument. *Id.* at 350.

The *Anne Arundel Co.* court applied the holding in *Sawyer v. Foster Wheeler, LLC*, 860 F.3d 249 (4th Cir. 2017) to articulate its reasoning. *Id.* at 349. In *Sawyer*, the estate of a worker who died from asbestos exposure while assembling boilers in the Navy brought claims for failure to warn claims against the manufacturer of the boilers at issue. *Id.* (citing *Sawyer*, 860 F.3d at

258).  However, "the Navy *dictated the content of warnings." Id.* (quoting *Sawyer*, 860 F.3d at 258) (emphasis in original).  Given this, the manufacturer's conduct was "directly related to the asserted official authority."  *Id.*  In contrast, the defendants in *Anne Arundel* "do not argue the federal government required them to market or describe their products a certain way."  *Id.*

The present action is more akin to *Anne Arundel Co.* than *Sawyer.*  While MilSpec AFFF is on the Navy Qualified List, this federal initiative is a performance-based standard, not a design mandate.  The military nor the federal government controls the means and the methods of MilSpec AFFF production.  3M retained wide latitude to manufacture, advertise, and produce MilSpec AFFF as it saw fit. Furthermore, Milspec AFFF accounts for a small fraction of 3M's commercial product offerings, and the vast majority of 3M's product offerings containing PFAS are subject to zero federal or military guidance at all.

Certainly, 3M cannot blame its concealment and misrepresentations about PFAS on the federal government or the military.   Here, as in *Baltimore*, "the 'source of tort liability' was not any production-related activities but the defendants' 'concealment and misrepresentation of [their] products' known dangers—and the simultaneous promotion of their unrestrained use."  *Anne Arundel Co.*, 94 F.4th at 350 (quoting *Baltimore*, 31 F. 4th at 233-34).  The 4th Circuit joined the First, Second, Eighth, and D.C. Circuits "in holding that allegations like those here do not support federal officer removal." *Id.* (additional citations omitted).

Other circuits have applied similar tests to reach the same conclusions in the context of federal officer removal on the basis of MilSpec AFFF production. For example, to determine whether a party was "acting under the instruction of a federal officer, the 9th Circuit considers whether examines whether the removing party is: " (1) working under an officer in a manner akin to an agency relationship, (2) being subject to the officer's close direction, such as acting under the

guidance, or control of the officer or having an unusually close relationship involving detailed regulation, monitoring, or supervision, (3) helping fulfill basic [federal] governmental tasks, and (4) conducting activities so closely related to the government's implementation of its federal duties that the person faces a significant risk of state-court prejudice." *City & Cnty. of Honolulu v. Sunoco LP,* 39 F.4th 1101, 1107 (9th Cir. 2022). Applying this framework, Courts have determined manufacturers of MilSpec AFFF "did not act under a federal officer" for similar conduct at issue. *See Grosch*, 2023 WL 5993548 at * 6.

The 11th Circuit bars federal-officer removal where the statute applies solely to past conduct and former officers. *State v. Meadows*, 88 F.4th 1331, 1338 (11th Cir. 2023) ("The meaning of 'officer' does not include 'former officer.'")(internal citations omitted). Recently, 3M admitted in an SEC filing that it has not manufactured or used PFAS-containing AFFF anywhere since 2002. *See* 3M Company, Form 10-Q for the Quarterly Period Ended September 30, 2023 submitted to U.S. Sec. and Exch. Comm'n, at p. 41 (2023). Thus, according to the 11th Circuit's rule, 3M cannot currently be "acting under" a federal directive in regard to MilSpec AFFF production, and therefore, federal officer jurisdiction is not available.[5]

Regardless of the test applied, 3M cannot show that its conduct occurred at the "intense direction and control" of a federal officer. This Court found, as a matter of law, that the military specifications pertaining to MilSpec AFFF was not reasonably precise so as to support this argument. Thus, 3M cannot meet the "acting under" element required for federal officer removal.

---

[5] 3M may argue that *Meadows* should not apply because 3M was a contractor "acting under" a federal officer, not a federal officer itself. This is a distinction without a difference. 3M cannot dispute that *Meadows* limits federal officer removal to *current* federal officers, and 3M cannot provide a logical explanation for why former non-governmental contractors who were allegedly "acting under" a federal officer would receive expanded protection.

### 3.     There is no nexus between 3M's actions and the direction of a federal officer.

Even if 3M were to show it was "acting under" a federal directive, 3M still must "demonstrate that . . . there is a casual nexus between its actions, taken pursuant to a federal officer's directions, and plaintiff's claims." *Grosch*, 2023 WL 5993548, at * 4; *see also New Hampshire v. 3M Company*, 665 F. Supp. at 227 (citing *Baker v. Atlantic Richfield Co.*, 962 F.3d 937, 943-44 (7th Cir. 2020)).   In making this showing, 3M "cannot manufacture a claim that does not already exist in the complaint, so that [it] can then assert a federal defense to that claim to serve as a basis for federal jurisdiction." *Id. at* * 5, (quoting *Young v. Chemguard*, No. CV-21-00568 PHX-SPL, 2021 WL 2070445 (D. Ariz. May 24, 2021), *aff'd sub nom. Young v. Tyco Fire Prod., LP*, No. 21-15912, 2022 WL 486632 (9th Cir. Feb. 17, 2022)).   Here, 3M attempts to assert a federal defense to a phantom federal claim never asserted by Columbia.

On its face, 3M's argument fails. Where there are no claims giving rise to a federal defense, there is no "nexus" between Columbia's claims and acts arising under federal authority:

> "The court lacks removal jurisdiction under § 1442(a)(1) because 3M has not shown that a "nexus" exists between the State's claims in this case and 3M's alleged acts under federal authority. Like the plaintiff in Hayden, the State has consistently disclaimed any recovery for contamination resulting from 3M's production of AFFF. That disclaimer is effective and eliminates the connection between the State's broad statewide claims and 3M's production of MilSpec AFFF for the United States military."

*New Hampshire*, 665 F. Supp. at 227 (additional citations omitted).  This Court agreed with the ruling and rationale. *S.C. A.G. Non-AFFF Case*, 2014 WL 1470056, at *3.  Under the law, 3M's attempt to manufacture a claim that does not exist in the complaint in order to assert a federal defense must fail. *See Grosch,* 2023 WL 5993548 at * 5 (additional citations omitted).  Regarding the claims that are in the Complaint, 3M cannot demonstrate any nexus to federal activity.

3M's own website purports to sell the following products: abrasives; adhesives, sealants & fillers; advanced materials; automotive parts & hardware; building materials; cleaning supplies, coatings, communications; compounds and polishes, dental and orthodontics; electrical; electrical materials and components; films and sheeting; filtration & separation; home; insulation; lab supplies and testing; personal protective equipment; signage and marking; tapes; and tools and equipment.[6] By and large, these are consumer products that have zero nexus to MilSpec AFFF, and are produced for commercial and not military purposes.

Considering the same issues, Courts have found no nexus to military purposes where products are largely manufactured for commercial purposes:

> Although Tyco asserts in conclusory fashion that "[a]ll MilSpec AFFF is military equipment, no matter where or by whom it is used" (Doc. 9 at 5), there is no evidence that the military has mandated that AFFFs supplied to non-federal entities (such as municipal fire departments like the Phoenix Fire Department) must conform to military specifications. If Tyco's contention is that it provided the exact same product to the Phoenix Fire Department that it previously designed for and provided to the military, that choice—*i.e.*, a choice not to redesign an already-designed product but rather to use that already-designed product as a commercially available stock product—was a business decision, not a decision compelled by the military. The product that Tyco supplies to non-military clients may be dubbed "MilSpec" AFFF, but mere nomenclature cannot supply the requisite causal nexus. *Cf. Graves v. 3M Company*, 17 F.4th 764 (8th Cir. 2021) (agreeing with the district court's determination that it "would be hard-pressed to find that 3M could reasonably say 'the government made me do it' " in relation to commercial sales of a product originally designed for the military). The bottom line is that Tyco was not doing what it was "asked to do by the Government," *Goncalves*, 865 F.3d at 1245, when it chose, decades after MilSpec AFFF was initially designed for and supplied to the military, to supply a product that met MilSpec AFFF's design specifications to the Phoenix Fire Department.

*Grosch,* 2023 WL 5993548 at * 7.

Even for MilSpec AFFF, the military has not given a strict design mandate, controlled the means and methods of manufacture, nor required that 3M use PFOA or PFOS. Similarly, the

---

[6] *All 3M Products*; 3M.COM, https://www.3m.com/3M/en_US/p/ (last accessed 7/17/2024)

military did not direct 3M to use PFAS in regard to any of the above-mentioned commercial products, and the military certainly did not mandate 3M conceal more than 1,200 studies demonstrating the toxic nature of PFAS from the general public, military, and regulators alike. *In re Aqueous Film-Forming Foams Prod. Liab. Litig.*, No. MDL 2:18-MN-2873-RMG, 2022 WL 4291357 (D.S.C. Sept. 16, 2022), Entry 2601, pp. 17-18. The suit at issue does not blame the military, and it is repugnant that 3M now blames the military for its conduct.

### 4.    There can be no "colorable federal defense" to exclusively state law claims.

3M improperly seeks to assert an affirmative federal defense to exclusively state law claims. The burden of proof is "on the removing party as making a 'plausible' claim of federal officer defense." *Maine*, 2023 WL 4758816 at * 9 (citing *Graves*, 17 F.4[th] at 771)(additional citations omitted). 3M cannot make this showing. Where a party explicitly limits its claims to state law, there can be no nexus between its conduct and any "colorable federal defense." *See New Hampshire,* 665 F.Supp.3d at 227-28.

As explained above, the plain language of the AFFF disclaimer in Columbia's Complaint eliminates from consideration any "colorable federal defense" by destroying the nexus between Columbia's claims and any action taken pursuant to a federal directive. Yet, even if Columbia's disclaimer was somehow deemed insufficient, 3M cannot make the factual showings necessary to give rise to a plausible or colorable defense, or even a realistic defense.

For 3M's argument to be plausible and sufficient for removal, two facts must be true: (1) there must be *plausible* comingling of AFFF released from military bases with non-AFFF PFAS; and (2) MilSpec AFFF-related PFAS is indistinguishable from other PFAS. As illustrated above, 3M's factual allegations pertaining to comingling of MilSpec AFFF and other PFAS are unlikely,

if not a factual impossibility.  Similarly, 3M's argument is built upon the false statement that "MilSpec AFFF is indistinguishable from PFAS from other sources." (Notice of Removal at ¶ 4.)

3M is knowingly and demonstrably wrong on this point. It is entirely possible to identify and "branch" different isomers of PFAS to distinguish their origin.  (*See* State of South Carolina's Memorandum of Law Supporting the State's Motion to Remand and Reynolds Declaration attached as Exhibit 1 thereto, at 3-4, *S.C. A.G. Non-AFF Case*; *See also* Discussion on Branched PFAS, 3M Final Fairness Hearing Transcript, pp. 33-35.)  Even if some of the damages alleged were ostensibly related to MilSpec AFFF, this is simply a causation defense for 3M and not an independent basis for removal. *See New Hampshire.*, 665 F.Supp.3d at 227-28. However, given that 3M has now taken the position that "MilSpec AFFF is indistinguishable from other PFAS," 3M should be estopped from raising the issue of "PFAS branching" as a causation defense later in the case.

Finally, even assuming 3M's factual arguments to be true, 3M cannot make the legal showing to demonstrate it is entitled to assert a "colorable" federal defense to Columbia's claims. Notwithstanding the fact that Columbia has not raised any federal claims, a "colorable" defense exists only "where (1) the federal government approved reasonably precise specifications, (2) the manufactured equipment conformed to the government's specifications, and (3) the contractor warned the federal government about the equipment dangers that were unknown to the government."  *Maryland*,  2024 WL 1152568 at * 3 (quoting *Boyle v. United Techs. Corp.*, 487 U.S. 500, 512 (1988)).   In other words, 3M must be able to demonstrate that it can present evidence for each element of the *Boyle* government contractor defense.

 Yet, this very Court concluded that after years of litigation and discovery, 3M still was not able to establish those elements in the context of AFFF. *In re Aqueous Film-Forming Foams Prod.*

*Liab. Litig.*, No. MDL 2:18-MN-2873-RMG, 2022 WL 4291357, *5-8 (D.S.C. Sept. 16, 2022) (denying 3M and other Defendants' Motion for Summary Judgment on Government Contractor Defense under *Boyle*). For instance, this Court found "as a matter of law that the AFFF MilSpec is not a reasonably precise specification under the first prong of *Boyle*." *Id.* at *8.[7] Moreover, "3M's late disclosure of over 1,200 reports and studies" related to PFOS and PFOA, including "particularly significant" internal studies related to the effects of C-8 chemistries on human health and the environment, stands as a bar to the third prong of *Boyle*.[8] *See id.* at *9–*10. 3M's federal officer removal defense on the basis of MilSpec AFFF is not viable here.

### 5.    Misplaced reliance on *Nessel* and *Ayo*.

3M relies principally on *Nessel v. Chemguard*[9] to support its argument of a "colorable federal defense." (Notice of Removal at ¶ 7) ("The City cannot prevent 3M from raising the production of MilSpec AFFF as a defense or an alternative theory."). 3M stretches the *Nessel* decision to assert that "Courts have held that AFFF manufacturers properly removed cases to federal court on the ground that the plaintiffs' claims plausibly arose at least in part from MilSpec AFFF." (Notice of Removal, ¶ 3.) However, *Nessel* does not apply here, because the plaintiff in *Nessel* sought to only recover damages from AFFF contamination. *Id.* at *3. Given that Columbia explicitly disclaimed damages arising from MilSpec AFFF, 3M's application of the *Nessel* holding

---

[7] This ruling is fatal to 3M, which admits that a government contractor defense is only "colorable" if "legitimate and reasonably [] asserted, given the facts presented and the current law." Notice of Removal ¶ 42 (quoting *Papp v. Fore-Kast Sales Co.*, 842 F.3d 805, 815 (3d Cir. 2016)). This Court's ruling "**as a matter of law** that the MilSpec AFFF is not a reasonably precise specification under the first prong of *Boyle*" necessarily precludes any finding that 3M's government contractor defense is colorable.

[8] As this Court noted, these actions resulted in 3M being levied with a $1.5 million fine under the Toxic Control Substances Act ("TCSA"). *In re Aqueous Film-Forming Foams Prod. Liab. Litig.*, No. MDL 2:18-MN-2873-RMG, 2022 WL 4291357, at *9 (D.S.C. Sept. 16, 2022).

[9] 1:20-cv-1080, 2021 WL 744683, at *3-4 (W.D. Mich. Jan. 6, 2021).

25

is misleading in this context.  Several reviewing Courts, including this Court, have already rejected this recycled argument.

In *Nessel*, the Plaintiffs brought claims arising exclusively from AFFF contamination according to the plain language of the Complaint.  *Id*. at *3.  Plaintiffs attempted to distinguish between "Commercial AFFF" and "MilSpec AFFF" in order to recover for Commercial AFFF but not Milspec.  *Id.* at 3-4. The court expressed concern that it could not distinguish between the two, and therefore 3M could plausibly assert a MilSpec defense.  *Id.* at 4-5.  Columbia's claims cannot plausibly be construed as arising from MilSpec AFFF case due to the express disclaimer language in the Complaint.  In fact, Columbia's Complaint expressly disclaims all AFFF firefighting foam, including MilSpec AFFF.  As a result, the *Nessel* court's concerns that the plaintiffs could not distinguish between MilSpec AFFF and non-MilSpec AFFF are not applicable here.  The *Ayo*[10] case is equally distinguishable:  it is also purely an AFFF case and therefore not applicable here.

Most importantly, there was no clear express disclaimer in *Nessel* or *Ayo* like there is in this case and the above-mentioned cases upon which Columbia relies. Where Defendants could potentially raise a MilSpec defense in *Nessel*, because it was explicitly an AFFF case, Defendants cannot plausibly raise such a defense to disclaimed phantom claims.   *Nessel* is plainly distinguishable from the case at bar.

In *New Hampshire*, 3M cited *Nessel* for the same propositions they do now, and the Court rejected 3M's arguments relying on *Nessel*.  *See New Hampshire*,  ("3M relies primarily on *Nessel v. Chemguard, Inc.* to support its position." . . . Here, unlike *Nessel*, whether an alternative source

---

[10]   *Ayo v. 3M Co.*, No 18-CV-0373 (JS)(AYS), 2018  WL  4781145  (E.D.N.Y. Sept. 30, 2018)("Plaintffs aver that the decades of use, storage, and disposal of Manufacturing Defendants' PFC-based AFFF products at Gabreski have caused the chemical to enter the groundwater and contaminate the Aquifer.") *Id.* At * 3.

of contamination was MilSpec AFFF is irrelevant because this suit does not involve AFFF, regardless of whether it is MilSpec or another version of AFFF."). The *New Hampshire* court stated that it did not "find the reasoning of *Nessel* persuasive." *Id. at* 229. In *Maine*, the court agreed. *Maine*, 2023 WL 4758816 at * 11. This Court also rejected 3M's rationale for removal. *S.C. A.G. Non-AFFF Case*, 2014 WL 1470056, at *3. In short, *Nessel* is plainly distinguishable, and 3M's misplaced reliance on *Nessel* and *Ayo* should once again be rejected.

### C.  Columbia is entitled to recover fees under 28 U.S.C. § 1447(c).

It is within this Court's discretion to award fees under 28 U.S.C. § 1447(c). *Id.* ("An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal.") (*see also Martin v. Franklin Capital Corp*., 546 U.S. 132, 136 (2005)).  On motion to remand, the "standard for awarding fees should turn on the reasonableness of the removal. . . courts may award fees under § 1447(c) where the removing party lacked an objectively reasonable basis for seeking removal." *Martin,* 546 U.S. at 136.  In this circumstance, this Court in this calendar year has ruled on this exact issue, and beyond this Court the law is clear:  an express disclaimer carries the day.  Columbia understands this issue is now on appeal, but 3M's Notice of Removal goes beyond simply trying to preserve its legal position.  3M seeks to re-litigate and re-hash *factual findings* which have already been considered and rejected by this Court, which is a poor use of judicial and the parties' resources.  Given this, Columbia respectfully requests an award of costs and fees under 28 U.S.C. § 1447(c).

## V.  <u>CONCLUSION</u>

Allowing federal officer removal in this context would undermine the rationale of the doctrine and the previous rulings of this Court and multiple other courts that have considered and determined similar arguments did not support removal.  Because Columbia expressly disclaims

any recovery related to MilSpec AFFF, there can be no nexus between Columbia's claims and federal authority. Further, even in the absence of a disclaimer, 3M cannot meet its burden due. 3M has not acted under a federal officer, cannot demonstrate a nexus between its behavior and a federal directive, and cannot raise a "colorable" federal defense to what are exclusively state law claims. The same legal and factual arguments now raised by the Defendants have already been considered and rejected by this Court and others.

Respectfully, Columbia's case should be summarily remanded, and Columbia should recover the fees and costs required to re-litigate an issue previously decided by this Court.

Respectfully submitted,

s/Amy L.B. Hill
Amy L.B. Hill, Fed Id. 7696
William C. Lewis, Fed Id. 12076
Richardson Thomas, LLC
1513 Hampton Street
Columbia, South Carolina 29201
T: 803-281-8150
F: 803-632-8263
amy@richardsonthomas.com
will@richardsonthomas.com

**_Attorneys for Plaintiff_**

July 29, 2024