**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| **IN RE: AQUEOUS FILM-FORMING FOAMS PRODUCTS LIABILITY LITIGATION** | MDL No. 2:18-mn-2873-RMG<br><br>**This Document Relates to ALL CASES** |

**REPLY IN SUPPORT OF UNITED STATES'
GLOBAL MOTION TO DISMISS FOR LACK OF JURISDICTION
BASED ON CERCLA SECTION 113(h)**

Dated: August 16, 2024

TODD KIM
Assistant Attorney General

ANDREW D. KNUDSEN
U.S. Department of Justice
Environment & Natural Resources Division
Environmental Defense Section
P.O. Box 7611
Washington, DC 20044
(202) 353-7466
Andrew.Knudsen@usdoj.gov

*Counsel for the United States*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. iii

GLOSSARY ...................................................................................................................... viii

I.     The United States' Response Actions at the Relevant Facilities Are Removal or
     Remedial Actions Selected under Section 104 of CERCLA. ............................. 1

    A.    Section 120 Does Not Provide a Separate Source of Statutory Authority for DoD's
         CERCLA Response Actions. ...................................................................... 3

    B.    DERP Does Not Provide a Separate Source of Statutory Authority for DOD's
         CERCLA Response Actions. ...................................................................... 9

II.    Plaintiffs' Claims Against the United States under State Environmental Laws Are
     Not Excused from Section 113(h)'s Withdrawal of Federal Jurisdiction. ......... 11

    A.    Plaintiffs' Reading Is Contrary to the Statutory Text. .................................. 11

    B.    The Court Need Not, and Should Not, Decide Whether Plaintiffs' Cited State
         Laws Are ARARs for Any Particular Cleanup. ......................................... 14

III.   The Remedial Claims are "Challenges" to CERCLA Response Actions under
     Section 113(h). ............................................................................................ 16

    A.    Plaintiffs' Arguments Simply Illustrate the Ways in Which All of the Remedial
         Claims Challenge the United States' CERCLA Response Actions. ............ 17

    B.    No Plaintiff Is Pursuing an Enforcement Action Like Those Contemplated in
         *United States v. Colorado*. ...................................................................... 19

    C.    The United States Has Not Moved for Dismissal of Claims for Monetary Relief
         under Section 113(h). ................................................................................. 24

    D.    Plaintiffs' Arguments for Preserving Nuisance Claims Are Inapposite Here. ............. 25

    E.    Claims Regarding the Scope of a Response Action Are Quintessential
         "Challenges" under Section 113(h). ......................................................... 26

IV.   Further Jurisdictional Discovery Is Not Warranted. ......................................... 29

CONCLUSION ............................................................................................................... 30

# TABLE OF AUTHORITIES

**Cases**

*Alabama v. EPA*,
    871 F.2d 1548 (11th Cir. 1989) ............................................................. 23

*Atlantic Richfield Co. v. Christian*
    590 U.S. 1 (2020) .................................................................................. 14, 25

*APWU v. Potter*,
    343 F.3d 619 (2d Cir. 2003) ................................................................. 29, 30

*Ark. Peace Ctr. v. Ark. Dep't of Pollution Control & Ecology*,
    999 F.2d 1212 (8th Cir. 1993) ............................................................. 18, 19

*Broward Gardens Tenants Ass'n v. EPA*,
    311 F.3d 1066 (11th Cir. 2002) .............................................. 16, 26, 27, 28

*Cannon v. Gates*,
    538 F.3d 1328 (10th Cir. 2008) ................................................................. 10

*City of Fresno v. United States*,
    709 F. Supp. 2d 888 (E.D. Cal. 2010) ...................................................... 10

*City of Salina v. United States*,
    No. 10-2298-CM-DJW, 2011 WL 1107107 (D. Kan. Mar. 25, 2011) ...... 10

*Clinton Cnty. Comm'rs v. EPA*,
    116 F.3d 1018 (3d Cir. 1997) .................................................................... 30

*El Paso Nat. Gas Co. v. United States*,
    750 F.3d 863 (D.C. Cir. 2014) ................................................... 19, 27, 29

*Fort Ord Toxics Project, Inc. v. Cal. EPA*,
    189 F.3d 828 (9th Cir. 1999) ................................................. 3, 5, 6, 7, 11, 12

*Frey v. EPA*,
    403 F.3d 828 (7th Cir. 2005) .................................................................... 29

*Giovanni v. U.S. Dep't of Navy*,
    906 F.3d 94 (3d Cir. 2018) ........................................................ 4, 5, 7, 26

*Hall v. United States*,
    44 F.4th 218 (4th Cir. 2022) ...................................................................... 25

*Heart of Am. Nw. v. Westinghouse Hanford Co.*,
    820 F. Supp. 1265 (E.D. Wash. 1993) ................................................. 8

*Koppers Co. v. Garling & Langlois*,
    594 F.2d 1094 (6th Cir. 1979) ......................................................... 14

*Long Island Pure Water Ltd. v. Cuomo*,
    375 F. Supp. 3d 209 (E.D.N.Y. 2019) .............................................. 10

*McClellan Ecological Seepage Situation v. Perry*,
    47 F.3d 325 (9th Cir. 1995) ......................................... 12, 16, 17, 19, 24

*New Mexico v. Gen. Elec. Co.*,
    467 F.3d 1223 (10th Cir. 2006) ............................... 12, 13, 15, 18, 23, 26

*N. Shore Gas Co. v. EPA*,
    753 F. Supp. 1413 (N.D. Ill. 1990) .................................................. 25

*N. Shore Gas Co. v. EPA*,
    930 F.2d 1239 (7th Cir. 1991) ..................................................... 12, 13

*OSI Inc. v. United States*,
    525 F.3d 1294 (11th Cir. 2008) ................................................. 4, 7, 10

*Pollack v. U.S. Dep't of Def.*,
    507 F.3d 522 (7th Cir. 2007) .................................................... 4, 7, 10

*Pub. Serv. Co. of Colo. v. Schrader Oil Co.*,
    2007 WL 2962747 (D. Col. Oct. 10, 2007) ........................................ 28

*R.E. Goodson Constr. Co. v. Int'l Paper Co.*,
    No. 4:02-cv-4184-RBH, 2005 WL 2614927 (D.S.C. Oct. 13, 2005) ........... 10

*Razore v. Tulalip Tribes of Wash.*,
    66 F.3d 236 (9th Cir. 1995) ................................................... 16, 18, 28

*Redland Soccer Club, Inc. v. Dep't of Army of the U.S.*,
    801 F. Supp. 1432 (M.D. Penn. 1992) .............................................. 12

*Reynolds v. Lujan*,
    785 F. Supp. 152 (D.N.M. 1992) ..................................................... 8

*River Vill. West LLC v. Peoples Gas Light & Coke Co.*,
    618 F. Supp. 2d 847 (N.D. Ill. 2008) ................................................ 23

*Shea Homes Ltd. P'ship v. United States*,
   397 F. Supp. 2d 1194 (N.D. Cal. 2005) ........................................................................ 10, 11

*Talbert v. United States*,
   932 F.2d 1064 (4th Cir. 1991) ............................................................................................. 25

*United States v. Colorado*,
   990 F.2d 1565 (10th Cir. 1993) .............................................. 13, 19, 20, 21, 22, 24

*United States v. Park Place Assocs., Ltd.*,
   563 F.3d 907 (9th Cir. 2009) ................................................................................................ 14

*Wash. Env't Council v. Mt. Baker-Snoqualmie Nat. Forest*,
   2009 WL 1543452 (W.D. Wash. June 2, 2009)....................................................... 28

*Werlein v. United States*,
   746 F. Supp. 887 (D. Minn. 1990)
   *vacated in part on other grounds*, 793 F. Supp. 898 (D. Minn. 1992) ................................. 4, 8

*WorldWorks I, Inc. v. U.S. Dep't of Army*,
   22 F. Supp. 2d 1204 (D. Colo. 1998)........................................................................ 8

**Federal Statutes**

10 U.S.C. § 2701(a)(1)....................................................................................................... 9

10 U.S.C. § 2701(c)(1)....................................................................................................... 9

10 U.S.C. § 2701(d)-(e) ................................................................................................... 10

10 U.S.C. § 2703 ............................................................................................................... 10

10 U.S.C. § 2705 ................................................................................................................. 9

10 U.S.C. §§ 2714-16 ....................................................................................................... 9

10 U.S.C. §§ 2700-2710 ................................................................................................... 2

28 U.S.C. § 1332.............................................................................................................. 14

28 U.S.C. § 1346(b) ......................................................................................................... 25

42 U.S.C. § 300i(a) .................................................................................................. 21, 24

42 U.S.C. § 300j-8(a) ....................................................................................................... 21

42 U.S.C. § 6928(a)(1).................................................................................................... 20

42 U.S.C. § 6972(a) ............................................................................................ 22, 23

42 U.S.C. § 6972(a)(1)(A) .................................................................................. 20, 21

42 U.S.C. § 6972(a)(1)(B) .............................................................................. 20, 21, 22

42 U.S.C. § 6972(b)(2)(B) ........................................................................................ 22

42 U.S.C. § 9601(6) .................................................................................................. 25

42 U.S.C. § 9601(23)-(25) .......................................................................................... 8

42 U.S.C. § 9604(a) ................................................................................................. 27

42 U.S.C. § 9604(a)(1) ............................................................................................... 3

42 U.S.C. § 9604(c)(2) ............................................................................................... 3

42 U.S.C. § 9607 ....................................................................................................... 25

42 U.S.C. § 9613(h) ............................................................................................ 2, 12

42 U.S.C. § 9613(h)(1) .............................................................................................. 25

42 U.S.C. § 9613(h)(4) .............................................................................................. 30

42 U.S.C. § 9614(a) ................................................................................................... 23

42 U.S.C. § 9620 ......................................................................................................... 3

42 U.S.C. § 9620(a)(2) ................................................................................................ 5

42 U.S.C. § 9620(d)(3) ................................................................................................ 6

42 U.S.C. § 9620(e) ..................................................................................................... 2

42 U.S.C. § 9620(e)(1) ............................................................................................. 4, 9

42 U.S.C. § 9620(e)(2) ............................................................................................. 4, 6

42 U.S.C. § 9620(g) ..................................................................................................... 7

42 U.S.C. § 9621 ......................................................................................................... 3

42 U.S.C. § 9621(d) ................................................................................................... 13

42 U.S.C. § 9621(d)(2)(A)(ii) ................................................................... 15

42 U.S.C. § 9621(f)(2)(B) ........................................................................ 14

42 U.S.C. § 9621(f)(3)(B) ........................................................................ 14

42 U.S.C. § 9659 ............................................................................... 29, 30

**State Statutes**

Colo. Rev. Stat. § 25-15-308(2)(a) ...................................................... 20, 22

N.J.S.A. § 58:12A-6 ........................................................................... 21, 24

N.J.S.A. § 58:12A-10 .............................................................................. 21

N.M.S.A. § 74-4-10(A) ............................................................................ 21

N.M.S.A. § 74-4-13 ................................................................................. 21

**Code of Federal Regulations**

40 C.F.R. pt. 300, subpt. E ....................................................................... 3

40 C.F.R. § 300.400(g) ......................................................................... 3, 13

40 C.F.R. § 300.430 ............................................................................. 3, 13

40 C.F.R. § 300.515 ................................................................................. 3

**Federal Registers**

52 Fed. Reg. 2923 (Jan. 23, 1987) ............................................................ 27

89 Fed. Reg. 32532 (Apr. 26, 2024) ......................................................... 16

**Legislative Materials**

132 Cong. Rec. S14929 (daily ed. Oct. 3, 1986) ......................................... 13

132 Cong. Rec. H9582 (daily ed. Oct. 8, 1986) .......................................... 13

H.R. Rep. No. 253(I), 99th Cong., 1st Sess. 266 (1985) ............................... 23

## GLOSSARY

| | |
|---|---|
| ARAR | Applicable or Relevant and Appropriate Requirement |
| CERCLA | Comprehensive Environmental Response, Compensation, and Liability Act |
| DERP | Defense Environmental Restoration Program |
| DoD | U.S. Department of Defense |
| EPA | U.S. Environmental Protection Agency |
| FS | Feasibility Study |
| MDL | Multidistrict Litigation |
| NCP | National Contingency Plan |
| NJDEP | New Jersey Department of Environmental Protection |
| NPL | National Priorities List |
| PFAS | Perfluoroalkyl Substances |
| PFOA | Perfluorooctanoic Acid |
| PFOS | Perfluorooctane Sulfonic Acid |
| RCRA | Resource Conservation and Recovery Act |
| RI | Remedial Investigation |
| SDWA | Safe Drinking Water Act |

Plaintiffs do not dispute that the U.S. Department of Defense ("DoD") and its agencies are carrying out response actions under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") at each of the facilities at issue in the United States' Motion.[1]  Nor do they dispute that the protection CERCLA Section 113(h) provides against "challenges" to response actions attaches during the investigative phase, before the agency has selected a remedy for a site.  Instead, they argue that the DoD is carrying out its responses under different sources of statutory authority than Section 104 of CERCLA and that cleanup activities under those different authorities are not subject to Section 113(h).  Plaintiffs are wrong.  The DoD is responding to releases of perfluoroalkyl substances ("PFAS") pursuant to its authority under Section 104, and neither of the other provisions Plaintiffs cite provides a separate source of response authority.

Plaintiffs also argue that their challenges to the DoD's response actions fall within various purported exceptions to Section 113(h).  But none of these supposed exceptions is supported by the statute or the case law.  Rather, all of Plaintiffs' arguments for allowing their Remedial Claims to go forward simply illustrate the myriad ways in which their suits would interfere with the DoD's ongoing nationwide efforts to address PFAS contamination, for which the DoD has already spent over $2.5 billion and is expected to spend over $7 billion more.  Mot. 13.  The Court should reject Plaintiffs' attempts to predetermine or delay the outcome of the CERCLA process and dismiss the Remedial Claims.

## I.     The United States' Response Actions at the Relevant Facilities Are Removal or Remedial Actions Selected under Section 104 of CERCLA.

The DoD response actions that Plaintiffs challenge in their Remedial Claims are all being carried out pursuant to the DoD's Presidentially delegated authority under CERCLA Section 104.

---

[1] Memorandum of Points & Authorities Supporting United States' Global Motion to Dismiss for Lack of Jurisdiction Based on CERCLA Section 113(h), ECF No. 4550-1 (Feb. 26, 2024) ("Mot.").

A handful of the facilities at issue in this motion are subject to additional requirements and involvement by the U.S. Environmental Protection Agency ("EPA") under CERCLA Section 120(e) because at least a portion of the site is listed on the National Priorities List ("NPL"). 42 U.S.C. § 9620(e). And the DoD's response actions at *all* the facilities in this Motion are also subject to the requirements of the Defense Environmental Restoration Program ("DERP"). Mot. 4; 10 U.S.C. §§ 2700-2710. But neither Section 120 nor DERP provides a separate source of statutory authority for the DoD's CERCLA responses at these facilities. Because the DoD's activities are "removal or remedial action[s] selected under" Section 104, they are protected from challenge by Section 113(h). 42 U.S.C. § 9613(h).

Plaintiffs' assertion that the DoD's response actions are actually being carried out under these other statutory provisions, and not under Section 104, are misguided. Plaintiffs' arguments with respect to Section 120 are unsupported by the statutory text and rely on a wrongly decided case that has been rejected or distinguished by subsequent courts. Likewise, Plaintiffs fail to distinguish the numerous cases applying Section 113(h)'s protection to DoD response actions carried out in accordance with DERP and identify no contrary authority supporting their view.

Faced with these flaws in their legal arguments, Plaintiffs ultimately fall back on arguing that the DoD somehow cannot be trusted to faithfully implement its Presidentially delegated cleanup authority under CERCLA at sites where the releases are attributable to the DoD's activities. *See* Opp'n 1, 9, 12-14. As an initial matter, Section 113(h) does not distinguish between response actions to releases from federal facilities or non-federal facilities, just as it does not distinguish between response actions taken by EPA or by other federal agencies. But at bottom, Plaintiffs' portrayal of the DoD as a rogue actor with "unbridled power" in need of an "essential check" could not be farther from the truth. Opp'n 14.

The DoD is subject to (and complies with) numerous statutory and regulatory requirements governing its CERCLA response actions—including many of the very same requirements that apply to EPA when it is the lead agency carrying out a Section 104 response pursuant to Presidentially-delegated authority. *See* Mot. 4-9. The DoD's response actions must be consistent with the National Contingency Plan ("NCP") promulgated by EPA, which (among other requirements) includes detailed procedures for investigating releases and for evaluating and selecting among potential remedies. *Id.* at 4-7; 42 U.S.C. § 9604(a)(1); 40 C.F.R. pt. 300, subpt. E. The DoD must select cleanup standards for any remedial action that are consistent with Section 121, including compliance with any federal or state "applicable or relevant and appropriate requirements" ("ARARs"). Mot. 7-8; 42 U.S.C. § 9621; 40 C.F.R. §§ 300.400(g), 300.430. The DoD must provide opportunities for public input on its selection of any remedial action, as well as opportunities for state input at specific points in the process. Mot. 8-9; 42 U.S.C. § 9604(c)(2); 40 C.F.R. §§ 300.430, 300.515. And for facilities listed on the NPL, Section 120 requires additional EPA involvement in the response process. 42 U.S.C. § 9620. Plaintiffs fail to show why the Court should ignore the plain text of Section 113(h)—even if it could—and allow Plaintiffs' challenges to proceed despite the comprehensive framework guiding the DoD's response actions.

## A. Section 120 Does Not Provide a Separate Source of Statutory Authority for DoD's CERCLA Response Actions.

The DoD's response authority for facilities listed on the NPL derives from Section 104 of CERCLA, not Section 120. Contrary to Plaintiffs' assertion, Sections 104 and 120 do not provide separate grants of response authority. Plaintiffs' view is unsupported by the statutory text, and the Ninth Circuit decision on which Plaintiffs rely is an outlier that was wrongly decided and has not been adopted by any other circuit. *See Fort Ord Toxics Project, Inc. v. Cal. EPA*, 189 F.3d 828 (9th Cir. 1999).

As numerous courts have found, Section 120 "merely describes additional procedures unique to federal land, and does not confer any authority outside of that already granted in § 104." *Giovanni v. U.S. Dep't of Navy*, 906 F.3d 94, 115 (3d Cir. 2018); *see also Pollack v. U.S. Dep't of Def.*, 507 F.3d 522, 525-26 (7th Cir. 2007) ("Critically, § 120 does not provide a separate grant of authority for the President to initiate cleanups of federal sites …."). Nothing in that provision purports to create a separate source of authority for the federal government to carry out response actions at federal facilities. *See OSI, Inc. v. United States*, 525 F.3d 1294, 1298 (11th Cir. 2008) ("While § 9620's discussion of federal facilities is extensive, we have searched the language of the section in vain for a general authorization for the federal government to engage in remedial actions on federal facilities.").

Plaintiffs fail to identify any language in Section 120 providing authority to act separate from the power granted under Section 104. Rather, the sole statutory language Plaintiffs rely on from Section 120 sets forth additional *requirements* for how the federal government is to exercise its existing Section 104 response authority with respect to federal facilities listed on the NPL. *See* Opp'n 15. Specifically, these provisions require the relevant department or agency to expeditiously commence a remedial investigation ("RI") and feasibility study ("FS") for the facility and enter an interagency agreement with EPA governing completion of all necessary remedial action. 42 U.S.C. § 9620(e)(1), (2). These provisions do not establish a discrete source of cleanup authority, but simply define *when* (commencing within set timelines) and *how* (with consultation and oversight from EPA) the federal government's response actions under Section 104 must proceed at federal facilities on the NPL. *See Werlein v. United States*, 746 F. Supp. 887, 891 (D. Minn. 1990), *vacated in part on other grounds*, 793 F. Supp. 898 (D. Minn. 1992) ("Section 9620 provides a road map for application of CERCLA to federal facilities.").

Contrary to Plaintiffs' argument, Sections 117(a) and 113(g) do not "identify Section 120 as an independent grant of authority." Opp'n 16. The references to Section 120 in those provisions simply acknowledge the different procedures and timelines by which the federal government must carry out its responses where Section 120(e) applies. Plaintiffs' resort to the canon of surplusage is similarly unavailing, as they fail to explain how either of the statutory provisions they cite would be rendered "duplicative" by the United States' reading.[2] Opp'n 20. For example, one of the provisions Plaintiffs cite is the United States' waiver of sovereign immunity from CERCLA requirements for *all* federal facilities, which has no relation to whether Section 104 or 120 is the source of response authority for federal facilities on the NPL. *Id.* (citing 42 U.S.C. § 9620(a)(2)).

Plaintiffs rely heavily on the Ninth Circuit's decision in *Fort Ord* and a single in-circuit case that followed it as binding precedent. Opp'n 17-18. But *Fort Ord* is not binding on this Court, and numerous courts have found its reasoning unpersuasive.[3] In fact, the Ninth Circuit itself recognized its holding as "troubling" and "intuitively unappealing" because it "would allow plaintiffs to sue to enjoin many cleanups on federal property even though plaintiffs could not sue to enjoin a similar cleanup on private property." 189 F.3d at 832. The court nonetheless reluctantly found that CERCLA "seems to require" this counterintuitive result based on its reading of the statutory text. *Id.* at 834. But the Ninth Circuit's cursory statutory analysis was unsound. The

---

[2] In fact, it is *Plaintiffs'* interpretation that creates surplusage, as it reads Section 120 to create a separate grant of response authority specific to federal facilities that is wholly unnecessary given that the President's broad Section 104 response authority already extends to such facilities. *See Giovanni*, 906 F.3d at 115-16 ("[T]he text of § 104 authorizes the President to take response actions at any facility … including a federal facility listed on the NPL.").

[3] Plaintiffs point out that of the four facilities potentially implicated by its Section 120 argument, two are located in the Ninth Circuit. Opp'n 18-19; *see id.* at 15 nn.11, 12. Of course, this MDL is governed by Fourth Circuit precedent. Mot. 19. But notably, the *other* two facilities implicated by Plaintiffs' Section 120 argument are located in the Third Circuit, which has explicitly *rejected* the reasoning of *Fort Ord* on this issue. Opp'n 15 n.13; *Giovanni*, 906 F.3d at 117 n.24.

court asserted, without elaboration, that Section 120(e)(2) "grant[s] [EPA] authority to conduct remedial actions on federal property." *Id.* Yet there is no such authority in Section 120(e)(2), which instead sets out requirements for the *agency that owns or operates* the facility (not EPA) to carry out remedial action. 42 U.S.C. § 9620(e)(2) (requiring federal facility's owner or operator to "enter into an interagency agreement with the Administrator [of EPA] for the expeditious completion *by such department, agency, or instrumentality* of all necessary remedial action at such facility") (emphasis added).

The Ninth Circuit also focused on Section 120's provision that "no authority vested in the [EPA] Administrator under this section may be transferred" to another agency. 189 F.3d at 833 (quoting 42 U.S.C. § 9620(g)). But the court simply *assumed* that the referenced "authority" meant a separate source of implied response authority from Section 104, without considering the numerous *other* authorities explicitly granted to EPA in Section 120. *See, e.g.*, 42 U.S.C. § 9620(d)(3) (authority to establish schedule for evaluation and listing of federal facilities), (e)(1) (authority to publish timetables for completion of RI and FS for federal facilities on NPL), (e)(6) (authority to enter agreements with potentially responsible parties to carry out RI, FS, or remedial action at federal facilities on NPL), (h)(2) (authority to promulgate notice regulations for transfer of federal property). Given the Ninth Circuit's conclusory and flawed statutory analysis, the Court should reject *Fort Ord*'s interpretation of Section 120.

As Plaintiffs acknowledge, *Fort Ord* was already an outlier when it was decided. *See* Opp'n 17 n.15; *Fort Ord*, 189 F.3d at 833 (recognizing all previous courts to address the issue had found Section 120 cleanups "do not proceed under a separate grant of authority"). And in the years since, that case has routinely been rejected or distinguished by subsequent courts.

Most notably, the Third Circuit expressly considered and rejected *Fort Ord*'s interpretation of Section 120 as a separate grant of response authority, emphasizing that in the nearly 20 years since the decision "no other circuit court has adopted" its reasoning. *Giovanni*, 906 F.3d at 117 n.24. The court engaged with the statute in greater depth than the Ninth Circuit, starting with the observation that Section 104 grants response authority "in the broadest terms" and does not "distinguish between federal and non-federal facilities." *Id.* at 115, 116. By contrast, Section 120 "provides a number of *specific duties and procedures* for [EPA] with respect to federal facilities." *Id.* (emphasis added). The Third Circuit concluded that the statute's reference to authority "vested" in EPA under Section 120 does not necessarily mean a new and separate grant of authority and is more logically read to refer to authorities that "already exist in some form, under § 104 or some other section of CERCLA." *Id.* (quoting 42 U.S.C. § 9620(g)). Thus, the court concluded that Section 120 "is best understood as clarifying the application of already existing CERCLA authority, like § 104, to federal facilities." *Id.* And while the court acknowledged the possibility of some "tension" between Sections 104 and 120, the Third Circuit—unlike the Ninth Circuit in *Fort Ord*—adopted the reading of CERCLA that best gives effect to "the likely intent of Congress." *Compare id.* at 117 (noting contrary reading would have the "odd result" of allowing plaintiffs to "run rampant with challenges" to cleanups at federal facilities but not private ones); *with Fort Ord*, 189 F.3d at 833 (acknowledging its interpretation is contrary to legislative history).

The Seventh and Eleventh Circuits have likewise expressed skepticism of the interpretation of Section 120 set forth in *Fort Ord*, although those cases did not directly reach the issue because the federal facilities involved were not listed on the NPL. *See Pollack*, 507 F.3d at 526 (noting "[n]o other circuit has cited" *Fort Ord*'s "intuitively unappealing and troubling" decision); *OSI, Inc.*, 525 F.3d at 1299 (noting Section 104 "is broad enough to be read as an authorization for all

remedial actions, regardless of the land upon which the action takes place"). Numerous other federal courts have similarly held that Section 113(h)'s withdrawal of jurisdiction protects response actions at federal facilities listed on the NPL.[4] This Court should do the same.

Finally, even if this Court were to adopt *Fort Ord*, under the reasoning of that case Plaintiffs' Remedial Claims should still be dismissed for lack of jurisdiction because they all challenge the DoD's *removal* actions at the relevant facilities. Response actions under CERCLA take the form of either "removal" or "remedial" actions. *See* Mot. 3 (explaining distinction); 42 U.S.C. § 9601(23)-(25) (defining response, removal, and remedial action). Although *Fort Ord* found that Section 120 provides a separate grant of authority for *remedial* actions at NPL-listed federal facilities, even the Ninth Circuit was unable to find any "analogous authority under § 120 for the commencement of *removal* actions," finding instead that such actions "must fall under the general provisions of § 104." 189 F.3d at 834 (emphasis added). Accordingly, the court concluded that Section 113(h) still "preclude[s] challenges to a CERCLA *removal* action on federal property." *Id.* Here, it is undisputed that the DoD is carrying out removal actions at all the facilities at issue in this MDL in the form of providing alternative drinking water, treating affected municipal wells, constructing groundwater treatment systems, or monitoring and assessing releases as part of an RI. *See* Mot. 13-18, 21-22; Opp'n 18 n.16 (noting courts characterize RI/FS as "removal actions"). Because Plaintiffs' Remedial Claims challenge these removal actions, they are barred by Section 113(h) even under *Fort Ord*.

In response, Plaintiffs ask this Court to go farther than the Ninth Circuit and become the first court to find that Section 120 also provides a separate source of authority for removal actions.

---

[4] *See, e.g.*, *Werlein*, 746 F. Supp. at 891-92; *Reynolds v. Lujan*, 785 F. Supp. 152, 154 (D.N.M. 1992); *Heart of Am. Nw. v. Westinghouse Hanford Co.*, 820 F. Supp. 1265, 1278 (E.D. Wash. 1993); *WorldWorks I, Inc. v. U.S. Dep't of Army*, 22 F. Supp. 2d 1204, 1207 (D. Colo. 1998).

Opp'n 18 n.16.  The Court should decline that invitation, as the language Plaintiffs rely on does not *authorize* any removal action but merely *requires* the government to commence an RI and FS under its existing Section 104 authority within a set time.  *Id.* (citing 42 U.S.C. § 9620(e)(1)).

### B. DERP Does Not Provide a Separate Source of Statutory Authority for DOD's CERCLA Response Actions.

Plaintiffs similarly argue that for those facilities not listed on the NPL, the DoD's response actions are selected under DERP rather than Section 104.  Opp'n 21-26.  Plaintiffs are incorrect. As with Section 120, DERP is not a stand-alone source of cleanup authority, but simply establishes requirements that the government must follow when it carries out CERCLA responses at facilities under the DoD's jurisdiction.  *See* 10 U.S.C. § 2701(c)(1).

Plaintiffs fail to identify any provision of DERP purporting to convey any cleanup authority not already provided by Section 104.  The sole statutory text they offer is general language in Section 2701 stating that the DoD "shall carry out a program of environmental restoration at facilities under the jurisdiction of the Secretary and at National Guard facilities."[5]  Opp'n 21 (quoting 10 U.S.C. § 2701(a)(1)).  But the use of the word "shall" here is not a grant of new authority to respond to releases; it creates an obligation to exercise authority already conveyed in CERCLA Section 104.  A closer read of Section 2701 and the other provisions of DERP reveals that the statute assigns "responsibility" to the DoD for carrying out CERCLA cleanups related to certain facilities and provides instructions for how the DoD is to do so, *see id.* § 2701(c)(1), including by specifying public notice requirements, *id.* § 2705, establishing accounts to be used

---

[5] Plaintiffs also point to recent amendments to DERP requiring the DoD to take various actions with respect to PFAS.  Opp'n 22-23 (citing 10 U.S.C. § 2714-16).  Like the other provisions of DERP, these amendments require the DoD to take action under its existing authorities and do not convey any new response authority.

for cleanups, *id.* § 2703, and setting out provisions for contractors and entities that assist with response activities, *id.* § 2701(d)-(e).

This reading is consistent with the numerous courts that have considered this issue and found that DERP "is not a separate grant of authority to conduct response actions, but instead functions together with" CERCLA Section 104. *City of Salina v. United States*, No. 10-2298-CM-DJW, 2011 WL 1107107, at *3 (D. Kan. Mar. 25, 2011); *see also Long Island Pure Water Ltd. v. Cuomo*, 375 F. Supp. 3d 209, 221 (E.D.N.Y. 2019) (holding "the DERP statute implicates § 104"); *City of Fresno v. United States*, 709 F. Supp. 2d 888, 901 (E.D. Cal. 2010) (applying Section 113(h) because "the cleanup is proceeding under E.O. 12580 and the DERP statute, implicating § 104"). Because Section 104 provides the underlying response authority for DERP cleanup actions, courts (including this Court) have uniformly and consistently applied Section 113(h) to protect these response actions from challenges.[6]

By contrast, Plaintiffs cannot identify a single case adopting their view of DERP or declining to extend Section 113(h)'s protection to cleanups carried out by the DoD. Instead, they simply assert that the Ninth Circuit's reasoning in *Fort Ord* somehow supports their reading of DERP. Opp'n 25. But *Fort Ord* did not suggest that DERP provided an independent source of cleanup authority for the DoD. To the contrary, in the portion of its opinion addressing the source of the DoD's authority for removal action (as opposed to remedial action) for the Army facility at

---

[6] *See, e.g.*, *R.E. Goodson Constr. Co. v. Int'l Paper Co.*, No. 4:02-cv-4184-RBH, 2005 WL 2614927, at *24 (D.S.C. Oct. 13, 2005) (holding U.S. Army Corps of Engineers' cleanup efforts under DERP were "removal actions authorized under §104(a) of CERCLA" and protected from challenge by Section 113(h)); *Cannon v. Gates*, 538 F.3d 1328 (10th Cir. 2008); *OSI, Inc.*, 525 F.3d at 1299 (Air Force's remedial action under DERP "was 'selected under' § 9604 and is subject to the jurisdictional bar of § 9613(h)"); *Pollack*, 507 F.3d at 526 (holding Section 104 was source of cleanup authority in case involving Navy cleanup under DERP); *Shea Homes Ltd. P'ship v. United States*, 397 F. Supp. 2d 1194, 1203 (N.D. Cal. 2005) (holding Corps' response actions under DERP "were authorized by § 104 and thus are governed by § 113(h)").

issue, the Ninth Circuit explicitly held that *Section 104* (not DERP) provided the relevant statutory authority. 189 F.3d at 834; *see also Shea Homes*, 397 F. Supp. 2d at 1203 (stating *Fort Ord*'s holding "is simply not applicable" in case involving DERP cleanup and finding Section 113(h) barred challenge).

In sum, Plaintiffs' arguments regarding the source of the DoD's response authority for the facilities referenced in this Motion are simply mistaken. The DoD is carrying out each of the response actions at issue in this Motion under the authority of CERCLA Section 104, and Plaintiffs' Remedial Claims challenge these ongoing actions because they request relief that would interfere with the DoD's investigative efforts or otherwise dictate the DoD's response to PFAS releases. Thus, this Court is deprived of jurisdiction to hear Plaintiffs' Remedial Claims by Section 113(h) and should dismiss those claims pursuant to Federal Rule of Civil procedure 12(b)(1).

## II. Plaintiffs' Claims Against the United States under State Environmental Laws Are Not Excused from Section 113(h)'s Withdrawal of Federal Jurisdiction.

Plaintiffs also argue that Section 113(h) "explicitly excepts from its application a claim under" state laws that are applicable or relevant and appropriate for a particular remedial action under Section 121, also known as "ARARs." Opp'n 26. This argument reads the statute entirely backwards. By its plain terms, Section 113(h) specifically withdraws federal jurisdiction over claims under such laws when they challenge any response action. Thus, the Court need not reach the question of whether any of the specific state laws Plaintiffs cite are ARARs within the meaning of CERCLA, since classifying them as such would not save them from dismissal.

### A. Plaintiffs' Reading Is Contrary to the Statutory Text.

Plaintiffs read Section 113(h) to mean the exact opposite of what it says. The text states:

No Federal court shall have jurisdiction under Federal law other than under section 1332 of Title 28 (relating to diversity of citizenship jurisdiction) or under State law which is applicable or relevant and appropriate under section 9621 of this title (relating to cleanup standards) to review any challenges to removal or remedial

action selected under section 9604 of this title … in any action except [one of five enumerated exceptions].

42 U.S.C. § 9613(h).  Plaintiffs read the phrase "other than" to refer to both suits under diversity jurisdiction *and* suits under state laws that are ARARs.  Opp'n 26.  But this misreads the statute entirely.  The correct reading, as supported by precedent and legislative history, is that "[n]o Federal court shall have jurisdiction [1] under Federal law other than under section 1332 of Title 28 … or [2] under State law which is applicable or relevant and appropriate under section 9621 of this title …."  42 U.S.C. § 9613(h).

Accepting Plaintiffs' reading would allow federal courts to hear precisely the kind of challenges that Section 113(h) was enacted to foreclose.  *See McClellan Ecological Seepage Situation v. Perry*, 47 F.3d 325, 329 (9th Cir. 1995) ("*MESS*") ("Congress concluded that the need for [uninterrupted response actions] was paramount, and that peripheral disputes, including those over what measures actually are necessary to clean-up the site and remove the hazard, may not be brought while the cleanup is in process.") (internal quotation marks omitted).  Suits claiming that the government has failed to comply with state laws that are ARARs inherently go to "what measures actually are necessary to clean-up the site."  *Id.*

For that reason, courts have uniformly read Section 113(h) to prohibit—rather than allow—claims brought under such state laws.[7]  These holdings are consistent with CERCLA's legislative

---

[7] *See Fort Ord*, 189 F.3d at 831 ("We believe Congress chose the 'applicable or relevant and appropriate' language for § 113(h) because Congress wanted to protect CERCLA cleanups from disputes regarding the applicable environmental standards."); *New Mexico v. Gen. Elec. Co.*, 467 F.3d 1223, 1249 (10th Cir. 2006) (reading statute to provide "No Federal Court shall have jurisdiction … under State law … to review any challenges") (alterations in original); *Redland Soccer Club, Inc. v. Dep't of Army of the U.S.*, 801 F. Supp. 1432, 1436 (M.D. Penn. 1992) ("The plain language of the statute divests federal courts of jurisdiction over actions '…under State law….'"); *Werlein*, 746 F. Supp. at 892-93 ("The statute by its very terms states that the Court has no subject matter jurisdiction to hear 'any challenges' 'under Federal law … or under state law.'"); *N. Shore Gas Co. v. EPA*, 930 F.2d 1239, 1241-42 (7th Cir. 1991) (upholding dismissal of both federal and state law claims under Section 113(h)).

history, which confirms that Congress intended to foreclose suits in federal court under state laws that are ARARs. *See* 132 Cong. Rec. S14929 (daily ed. Oct. 3, 1986) (statement of Sen. Thurmond) ("The timing of review section is intended to be comprehensive. It covers all lawsuits, under any authority …."); 132 Cong. Rec. H9582 (daily ed. Oct. 8, 1986) (statement of Rep. Glickman) (stating same).

Accordingly, Plaintiffs' reading is not "more consistent with the statute as a whole," Opp'n 27, but is instead entirely inconsistent with the statute's "blunt withdrawal of federal jurisdiction" over cases that might interfere as a practical matter with selection or implementation of any response action. *N. Shore Gas Co.*, 930 F.2d at 1244. It is also inconsistent with the process CERCLA lays out for identifying which state laws constitute ARARs and must be incorporated into cleanups as remedial standards. *See* 42 U.S.C. § 9621(d). In Plaintiffs' view, any party may sue in federal court to *force* a state law's use as a cleanup standard before the point in the response process at which the lead agency is even supposed to *identify* such laws. *Id.*; 40 C.F.R. §§ 300.400(g), 300.430. This cannot be correct.

Indeed, although Plaintiffs believe it would "make little sense" if state ARARs could only be enforced under Section 121 after completion of the cleanup, that is *precisely* what CERCLA envisions. *See United States v. Colorado*, 990 F.2d 1565, 1581 (10th Cir. 1993) (recognizing Section 121 "only allows states to ensure [remedial action's] compliance with state law *at the completion* of the remedial action") (emphasis added); *Gen. Elec. Co.*, 467 F.3d at 1249 n.38. Nor is Plaintiffs' reading necessary to give effect to some purported enforcement authority in Section 121(f). Opp'n 27. That provision does not generally "authorize[] suits to enforce ARARs," *id.*, but provides a time-limited cause of action in which a State may challenge the President's exercise of discretion under Section 121(d)(4) at the remedial selection phase to choose a remedy that does

not conform to a State ARAR. *See id.* (citing 42 U.S.C. § 9621(f)(2)(B), (f)(3)(B)); Mot. 8 (discussing authority to waive ARAR compliance). Plaintiffs do not contend that the government has made such a proposal under Section 121(d)(4), and they cannot, as the DoD's response efforts at each facility implicated by this Motion have not yet reached remedy selection.

Plaintiffs' reliance on *Atlantic Richfield Co. v. Christian* is misplaced. Opp'n 26 (citing 590 U.S. 1 (2020)). *Atlantic Richfield* primarily addressed whether CERCLA strips *state courts*, not federal courts, of jurisdiction to hear tort claims challenging a CERCLA response action. *See* 590 U.S. at 5-6 (considering whether CERCLA "strips the Montana courts of jurisdiction" over plaintiffs' tort claims), 14-15 (holding that "by its own terms, § 113(h) speaks of 'Federal court[s],' not state courts"). As part of that analysis, the Court noted that "Section 113(h) permits federal courts *in diversity cases* to entertain state law claims regardless of whether they are challenges to cleanup plans." *Id.* at 15 (emphasis added). But regardless of whether that general observation extends to claims under state laws that are ARARs (which the Court did not address), it is irrelevant here because this case does not involve diversity jurisdiction under 28 U.S.C. § 1332. As Plaintiffs acknowledge, Opp'n 51 n.44, diversity jurisdiction cannot be invoked in cases against the United States. *E.g.*, *United States v. Park Place Assocs., Ltd.*, 563 F.3d 907, 919 n.7 (9th Cir. 2009); *Koppers Co. v. Garling & Langlois*, 594 F.2d 1094, 1097 n.1 (6th Cir. 1979). Thus, whether a federal court sitting in diversity could hear claims under state laws that are ARARs has no bearing on the Remedial Claims for which the United States is seeking dismissal.

## B. The Court Need Not, and Should Not, Decide Whether Plaintiffs' Cited State Laws Are ARARs for Any Particular Cleanup.

Plaintiffs devote considerable effort in their Opposition to arguing that some of their Remedial Claims are brought under state laws that qualify as ARARs under Section 121. Opp'n 27-38. But because Section 113(h) does not provide any exception for claims brought under state

laws that are ARARs, *supra* pp. 11-14, the Court does not need to reach that issue, since that determination would not save them from dismissal.

Indeed, the fact that Plaintiffs' reading of Section 113(h) would require this Court to determine what state laws are or are not applicable as ARARs for specific cleanups demonstrates why that reading cannot be correct. The entire purpose of this provision is to "protect[] the execution of a CERCLA plan *during its pendency* from lawsuits that might interfere with the expeditious cleanup effort," including lawsuits involving "dispute[s] over environmental cleanup methods and standards." *Gen. Elec. Co.*, 467 F.3d at 1249, 1250. Section 113(h) would be completely ineffective as a protection against challenges to CERCLA responses if it could not be applied without a court first conducting a mini-trial to decide which state laws are ARARs and must be incorporated in a given response.

Accordingly, in this Reply the United States is not addressing the merits of each of Plaintiffs' arguments on this issue. The United States reserves the right to disagree with the identification of any of these state laws as ARARs under Section 121 at the appropriate time in the CERCLA process for each facility.[8] However, the United States does note two overarching flaws in Plaintiffs' arguments.

First, Plaintiffs assert (with no supporting authority) that whether any particular state law has been "timely identified" to the DoD is "not germane" to whether that law qualifies as an ARAR. Opp'n 29. Plaintiffs are incorrect, as the statutory text clearly provides that any state law must be "identified to the [lead agency] by the State in a timely manner" in order to constitute an ARAR under Section 121. 42 U.S.C. § 9621(d)(2)(A)(ii). Moreover, accepting Plaintiffs'

---

[8] As noted above and in the United States' Motion, Mot. 7-8, ARARs are to be identified during the RI phase of the NCP process based on a determination made by the lead agency. That administrative process has not occurred yet for any of the facilities at issue here.

argument would once again lead to results that are inconsistent with CERCLA's overall design: where a state fails to timely identify a state law to the lead agency for a cleanup, Plaintiffs' reading would allow the state to sue for application of that state law to the cleanup, even though Section 121 would not require the lead agency to use that state law as a cleanup standard. Plaintiffs fail to address the timeliness prong for any of their Remedial Claims.

Second, Plaintiffs concede that a state requirement must be more stringent than any federal requirement in order to qualify as a state ARAR. Opp'n 27; 42 U.S.C. § 9621(d)(2)(A)(ii). Plaintiffs' arguments generally rely on the assertion that "the federal government has not yet made effective any enforceable standards for PFAS." Opp'n 29. But as this Court is aware, EPA recently finalized national primary drinking water standards under the Safe Drinking Water Act for several PFAS (including PFOS and PFOA), which took effect on June 25, 2024. *See* ECF No. 4833; 89 Fed. Reg. 32532 (Apr. 26, 2024). These federal standards—which are generally more stringent than the state requirements Plaintiffs identify—obviate Plaintiffs' arguments. *See* 89 Fed. Reg. at 32532 (promulgating PFOS and PFOA standards of 4.0 parts per trillion); Opp'n 31-38 (discussing state provisions).

## III. The Remedial Claims are "Challenges" to CERCLA Response Actions under Section 113(h).

Plaintiffs cannot plausibly deny that their Remedial Claims challenge the DoD's response actions. Courts construe Section 113(h)'s prohibition on "challenges" broadly to include any claim that "is related to the goals of the cleanup" or requests relief that "will impact the remedial action selected." *Razore v. Tulalip Tribes of Wash.*, 66 F.3d 236, 239 (9th Cir. 1995); *Broward Gardens Tenants Ass'n v. EPA*, 311 F.3d 1066, 1072 (11th Cir. 2002); *see* Mot. 25-32. Nowhere in their Opposition do Plaintiffs deny that their Remedial Claims "seek[] to improve on the CERCLA cleanup" at the relevant facilities, *MESS*, 47 F.3d at 330, by requiring the DoD to, *inter alia*,

16

perform specific investigations, take specific actions to prevent offsite migration, utilize different standards as thresholds for cleanup or provision of alternative drinking water, or otherwise act to abate contamination.  Mot. 25-26.  Indeed, Plaintiffs' arguments helpfully illustrate all the ways in which Plaintiffs seek to alter the DoD's response actions at these facilities.  Plaintiffs simply argue that their challenges should be excused because they fall within various purported careve-outs from Section 113(h)'s "blunt withdrawal of jurisdiction." *MESS*, 47 F.3d at 328.  Plaintiffs are wrong, and their Remedial Claims should be dismissed.

### A. Plaintiffs' Arguments Simply Illustrate the Ways in Which All of the Remedial Claims Challenge the United States' CERCLA Response Actions.

In arguing against dismissal of their Remedial Claims, Plaintiffs have actually demonstrated why dismissal is necessary to give effect to the protection afforded by Section 113(h) to the government's cleanup efforts.  Plaintiffs' Opposition brief serves as a comprehensive overview, in their own words, of the various challenges that their Remedial Claims present to the DoD's CERCLA response actions at the relevant facilities.  Although the exact contours of Plaintiffs' challenges vary, the Opposition makes clear that the common thread of their complaints is the purported "inadequacy of the DoD's cleanups" at the facilities at issue in this Motion.  Opp'n 44.  Accordingly, each of the Plaintiffs seeks to improve, speed up, or expand the scope of the DoD's responses in some way.

For example, nearly all of these cases seek to require the DoD to use more stringent standards as screening levels to identify areas for further investigation, as thresholds for provision of alternative drinking water, or as cleanup standards for the ultimate remedial action.[9] *Id.* at 31

---

[9] These Plaintiffs generally object to the DoD's use to date of 70 parts per trillion of PFOS or PFOA (individually or combined) as a benchmark for short-term removal actions based on EPA's 2016 lifetime health advisory.  Opp'n 4-5; Mot. 11-12 & n.4.  EPA has now promulgated final drinking water standards for PFOS and PFOA.  *Supra* p. 16. As the United States noted in its Motion, the DoD will incorporate these standards into the CERCLA process.  Mot. 12 n.4.

(New Jersey), 32-33 (New Mexico), 34 (Lakewood Water District), 35-37 (Newburgh, New Windsor, and Suffolk County), 37-38 (Elsinore Valley Municipal Water District); *see Ark. Peace Ctr. v. Ark. Dep't of Pollution Control & Ecology*, 999 F.2d 1212, 1217 (8th Cir. 1993) (applying Section 113(h) to claim that sought specific removal efficiency for incinerator). At least one Plaintiff even goes so far as to second-guess such minute technical details as the specific EPA screening level that DoD used in evaluating soil contamination. Opp'n 36 (discussing Suffolk County's criticism of DoD efforts at Gabreski Air National Guard Base). Several Plaintiffs also attack the DoD's investigative efforts and argue that the government should include additional contaminants or off-base sampling locations. Opp'n 53 (Newburgh), 56 (New Windsor), 57 (Suffolk County), 57-58 (New Mexico); *see Gen. Elec. Co.*, 467 F.3d at 1250 (holding Section 113(h) barred claim alleging that "a portion of the contaminated groundwater lies outside the parameters of the remediation"). Likewise, some Plaintiffs are seeking to compel interim cleanup actions to halt further discharge of contaminants, Opp'n 6 (Newburgh), or remediate specific locations, *id.* at 56 (New Windsor), while others object to the removal actions the DoD has already taken, *id.* at 37 (Suffolk County complaining DoD "installed a largely ineffective and undersized GAC/Resin 'Pilot' system to treat water"). *See Razore*, 66 F.3d at 239 (holding Section 113(h) bars claims that would "dictate specific remedial actions and … alter the method and order for cleanup"). And many Plaintiffs challenge the timeline for the DoD's CERCLA responses. Opp'n 55 (Newburgh), 56 (New Windsor), 58 (New Mexico).

Plaintiffs contend (incorrectly) that these challenges are permissible by reading various purported carve-outs into Section 113(h). But they cannot (and do not) dispute that the relief they request "is related to the goals of the cleanup" and "will impact the remedial action selected." *Supra* p. 16. As a result, the Remedial Claims must be dismissed.

**B. No Plaintiff Is Pursuing an Enforcement Action Like Those Contemplated in *United States v. Colorado*.**

Plaintiffs argue that the statutory claims advanced by New Mexico and the New Jersey Department of Environmental Protection ("NJDEP") are permissible challenges because they are "enforcement action[s]" under the Tenth Circuit's decision in *Colorado*, 990 F.2d at 1576-79.[10] Opp'n 39-45. As an initial matter, this Court is not obligated to follow *Colorado*, and numerous other courts have disagreed with or distinguished the Tenth Circuit's reasoning on this point. *See MESS*, 47 F.3d at 329-31; *El Paso Nat. Gas Co. v. United States*, 750 F.3d 863, 882 (D.C. Cir. 2014); *Ark. Peace Ctr.*, 999 F.2d at 1217-18. But even if the Court agrees with *Colorado*, Section 113(h) would still bar the Remedial Claims because neither New Mexico, NJDEP, nor any other Plaintiff is pursuing an enforcement action within the meaning of that case. Instead, these Plaintiffs are all pursuing the same kinds of "imminent hazard" claims that the Tenth Circuit held are *not* excluded from Section 113(h)'s protection.

In *Colorado*, the Army operated a facility that was subject to RCRA permitting requirements under Colorado's state hazardous waste program, which EPA had authorized the state to carry out in lieu of the federal program. 990 F.2d at 1571. The Army was carrying out an RI and FS for the site under CERCLA. *Id.* Colorado issued an administrative compliance order to the Army requiring it to submit a new permit application addressing specific state law requirements for a portion of the facility known as "Basin F," including an amended closure plan

---

[10] It is unclear whether Plaintiffs argue that *Colorado* only preserves the citizen suit claims asserted by New Mexico and NJDEP, or also preserves the citizen suit claims asserted by non-state Plaintiffs under the Resource Conservation and Recovery Act ("RCRA") and other statutes. *Compare* Opp'n 41 (focusing on "the cases brought by New Mexico and NJDEP"); *with id.* at 45 (stating *Colorado* "appl[ies] with equal force to RCRA suits brought by other Plaintiffs"); *see also* Mot. App'x A (listing RCRA citizen suit claims asserted by City of Newburgh, County of Suffolk, and Lakewood Water District, and Clean Water Act citizen suit claims asserted by City of Newburgh and County of Suffolk). To the extent Plaintiffs assert *Colorado* preserves non-state Plaintiffs' citizen suit claims, they are wrong for the same reasons articulated in this section.

for that area as well as plans and schedules required for addressing contamination at areas containing Basin F hazardous waste. *Id.* at 1573. The United States filed suit seeking a declaration that the compliance order was null and void, invoking Section 113(h), while Colorado counterclaimed for an injunction to enforce the order. *Id.* at 1574.

The Tenth Circuit held that "*enforcement actions* under state hazardous waste laws which have been authorized by the EPA to be enforced by the state in lieu of RCRA do not constitute 'challenges' to CERCLA response actions." *Id.* at 1579 (emphasis added). The court noted that Colorado had issued its compliance order under the state law's enforcement provision authorizing suits to enforce violations of any permit, rule, regulation, or requirement, analogous to RCRA's provision authorizing enforcement by the EPA Administrator. *Id.* at 1579 (citing Colo. Rev. Stat. § 25-15-308(2)(a) (Supp. 1992)); *see also* 42 U.S.C. § 6928(a)(1). The court also noted that RCRA provides for two different types of citizen suit actions: "citizen enforcement suits" to enforce "any permit, standard, regulation, condition, requirement, prohibition, or order" under 42 U.S.C. § 6972(a)(1)(A), and "citizen imminent hazard suits" to abate an "imminent and substantial endangerment to health or the environment" under 42 U.S.C. § 6972(a)(1)(B). *Id.* at 1577-78. Of particular importance here, the Tenth Circuit distinguished Colorado's enforcement claims in that case from RCRA imminent hazard suits under § 6972(a)(1)(B), which it found are explicitly "prohibit[ed] … where a CERCLA response action is underway." *Colorado*, 990 F.2d at 1578.

Contrary to Plaintiffs' assertions, Opp'n 41-43, none of the Remedial Claims asserted by New Mexico, NJDEP, or any other Plaintiff involves the kinds of enforcement claims that the Tenth Circuit allowed to proceed in *Colorado*. Plaintiffs make much of the fact that one of the two Air Force facilities at issue in New Mexico's complaint (Cannon AFB) is subject to a state

RCRA permit containing provisions addressing PFAS releases.[11]  *Id.* at 8, 33; Site-Specific Opp'n 17-20 (ECF No. 4851).  But New Mexico *has never asserted* any enforcement claims for alleged violations of that permit's requirements under the enforcement provisions of its state hazardous waste law, N.M.S.A. § 74-4-10(A), or even through a RCRA "citizen enforcement suit," 42 U.S.C. § 6972(a)(1)(A).[12]  Nor has it asserted enforcement claims under those provisions for purported violations of any other specific provision of RCRA, its implementing regulations, or their state equivalents at Cannon AFB or Holloman AFB.  Likewise, NJDEP is not asserting claims under the enforcement provisions of New Jersey's drinking water law or the federal Safe Drinking Water Act's ("SDWA") own "citizen enforcement suit" provision for any of the three DoD facilities involved in its complaint.  *See* N.J.S.A. § 58:12A-10; 42 U.S.C. § 300j-8(a).

Instead, New Mexico and NJDEP are exclusively pursuing "imminent hazard suits" under RCRA, SDWA, and their state equivalents.  *See* Mot. App'x A, A-5 to A-6.  These suits do not seek to "enforce" any particular provision of federal or state law, but instead seek a free-standing judicial determination on whether the DoD's past or present activities "may present an imminent and substantial endangerment to health or the environment." [13]  42 U.S.C. § 6972(a)(1)(B); *see also* N.M.S.A. § 74-4-13; N.J.S.A. § 58:12A-6 (authorizing suit where contaminant in water system "may present an imminent and substantial endangerment to the health of persons").

---

[11] The Air Force is challenging this permit, specifically disputing New Mexico's authority to address PFAS under the state's hazardous waste law, and that litigation is currently pending in the Tenth Circuit.  *United States v. N.M. Env't Dep't*, No. 22-2132 (10th Cir.).

[12] *Colorado* did not decide whether Section 113(h) precludes citizen enforcement suits under 42 U.S.C. § 6972(a)(1)(A) that challenge a CERCLA response action.  990 F.2d at 1578.  Because no Plaintiff here asserts a claim under that provision, the Court need not address that issue.

[13] As noted in the United States' Motion, SDWA does not actually afford NJDEP a cause of action to address "imminent and substantial endangerment."  Mot. 30 n.11; 42 U.S.C. § 300i(a).

These claims do not "fall squarely under the facts of *Colorado*." Opp'n 45. To the contrary, they are precisely the kinds of claims that the Tenth Circuit distinguished from the narrow enforcement claims that Colorado was allowed to pursue. In reaching its decision, the Tenth Circuit clearly stated that "imminent hazard suits" like those under 42 U.S.C. § 6972(a)(1)(B) are not permissible enforcement suits and are "prohibit[ed] … where a CERCLA response action is underway." 990 F.2d at 1578. Consistent with the Tenth Circuit's reasoning, courts have uniformly held that Section 113(h) precludes federal jurisdiction over citizen imminent hazard suits under § 6972(a)(1)(B)—as well as other citizen suit provisions—that challenge a CERCLA response action.[14] *See* Mot. 30-31.

Moreover, there is good reason why Congress would have wanted Section 113(h) to preclude "imminent hazard" suits challenging a CERCLA response even if (as *Colorado* held) it did not preclude "enforcement" suits under state hazardous waste laws. Statutory enforcement provisions like the one in *Colorado* provide an avenue to ensure compliance with a specific "permit, rule, regulation, or requirement" adopted by the state pursuant to an EPA-approved regulatory program. *See* Colo. Rev. Stat. § 25-15-308(2)(a). In such actions, courts generally perform the relatively limited role of determining whether a violation of a particular requirement has occurred and ordering compliance with that requirement. *See* 42 U.S.C. § 6972(a) (authorizing court in RCRA citizen enforcement action to "enforce the permit, standard, regulation, condition,

---

[14] In fact, the text of Section 6972 itself precludes such citizen suits where the government is engaging in a CERCLA removal or remedial action. 42 U.S.C. § 6972(b)(2)(B); Mot. 30-31. Although the text refers to response actions by EPA's "Administrator," courts (including this Court) have consistently interpreted this provision to include responses carried out by other federal agencies, and Plaintiffs identify no contrary authority limiting it to EPA cleanups. *See* Mot. 31 (citing cases). And while the state statutes in New Mexico's and NJDEP's complaints do not have similar explicit carveouts for CERCLA responses, this Court should read 42 U.S.C. § 6972(b)(2)(B) as evidence that Congress believed "imminent hazard" suits generally interfere with CERCLA response actions and are properly barred by Section 113(h). *See* Mot. 31.

requirement, prohibition, or order"). Thus, allowing courts to hear these suits arguably gives effect to CERCLA's provisions respecting states' authority to impose "additional liability or requirements within such State." *Id.* § 9614(a). By contrast, "imminent hazard" suits invite *courts* to "determine what remediation is required and what standards should be applied." *River Vill. W. LLC v. Peoples Gas Light & Coke Co.*, 618 F. Supp. 2d 847, 854 (N.D. Ill. 2008); *see* 42 U.S.C. § 6972(a) (authorizing court in imminent hazard suit to order "such other action as may be necessary"). Unlike agencies, which have "the scientific understanding and resources necessary to investigate and remediate alleged hazards," courts have "neither the special resources nor the special expertise necessary to properly address or understand the myriad of scientific and policy issues presented" in these cases. *River Vill. W.*, 618 F. Supp. 2d at 854-55. Accordingly, the state interests considered in *Colorado* are not implicated by imminent hazard suits.

Separate from their reliance on *Colorado*, Plaintiffs generally ask for solicitude for New Mexico and NJDEP because of their status as states. Opp'n 39, 43, 45. But CERCLA does not provide any special allowance for "challenges" brought by states. Multiple courts have applied Section 113(h) to suits brought by states—including New Mexico. *See Gen. Elec. Co.*, 467 F.3d at 1249; *Alabama v. EPA*, 871 F.2d 1548 (11th Cir. 1989). Likewise, Plaintiffs' reliance on legislative history is misplaced. Throughout their Opposition, Plaintiffs repeatedly invoke a report purportedly showing that the purpose of Section 113(h) was to "prevent private responsible parties"—and by implication, not states—"from filing dilatory, interim lawsuits." Opp'n 1, 14, 39 (quoting H.R. Rep. No. 253(I), 99th Cong., 1st Sess. 266 (1985), *reprinted in* 1986 U.S.C.C.A.N. 2835, 2941)). But Plaintiffs' reliance on snippets of legislative history is telling, as their position is contradicted by the plain statutory text. Indeed, the Tenth Circuit in *Colorado* considered this very same language before proceeding to conclude:

> Nonetheless, the language of § 9613(h) does not differentiate between challenges
> by private responsible parties and challenges by a state. Thus, to the extent a state
> seeks to challenge a CERCLA response action, the plain language of § 9613(h)
> would limit a federal court's jurisdiction to review such a challenge.

990 F.2d at 1576; *see also MESS*, 47 F.3d at 328 ("The prohibitory language of Section 113(h)

does not distinguish between plaintiffs."). Because New Mexico's and NJDEP's Remedial Claims

challenge the DoD's response actions, they must be dismissed just like any other plaintiff's.

### C. The United States Has Not Moved for Dismissal of Claims for Monetary Relief under Section 113(h).

The United States made clear in its Motion that it is not moving to dismiss claims for

monetary relief for lack of subject matter jurisdiction under Section 113(h). Mot. 26 n.6; *see id.*

at 1 (noting Motion seeks dismissal of specific Remedial Claims seeking injunctive relief listed in

Mot. App'x A). Thus, there is no need for this Court to address whether claims seeking monetary

relief can ever constitute "challenges" under Section 113(h).

The United States did note that to the extent any Remedial Claim for injunctive relief

brought under federal or state environmental laws *also* seeks monetary relief, the Court should

proceed to dismiss that claim in its entirety if the request for monetary relief is clearly deficient as

a matter of law. Mot. 26 n.6. For example, NJDEP's complaint includes requests for recovery of

various investigation and abatement costs despite the fact that neither cause of action that NJDEP

asserts authorizes cost recovery. *N.J. Dep't of Env't Prot. v. United States*, No. 2:21-cv-00146-

RMG, ECF No. 1 pp. 22-24, 25-27; 42 U.S.C. § 300i(a); N.J.S.A. § 58:12A-6. Although the

United States' argument on that point may not strictly fall within Rule 12(b)(1), dismissing such

claims in their entirety promotes the efficient management of the Court's docket.

Plaintiffs' Opposition brief also contains several misstatements. First, Plaintiffs incorrectly

state that the United States admitted that "requests for monetary relief are not 'challenges' under

Section 113(h)." Opp'n 45 n.39. That statement does not appear anywhere in the United States'

Motion, and the United States has not made any such admission. The United States reserves the right to assert that any particular claim for monetary relief constitutes a "challenge" to a CERCLA response action that is barred under Section 113(h).

Second, Plaintiffs incorrectly assert that the text of Section 113(h)(1) excludes *all* claims seeking "response costs or damages or for contribution" from its withdrawal of jurisdiction. Opp'n 47, 48. Section 113(h)(1) only provides an exception for "[a]n action *under section 9607 of* [CERCLA] to recover response costs or damages or for contribution." 42 U.S.C. § 9613(h)(1); *see also id.* § 9601(6) (defining "damages" narrowly for purposes of CERCLA). Accordingly, this exclusion does not apply to claims that are *not* pleaded under 42 U.S.C. § 9607.[15]

## D. Plaintiffs' Arguments for Preserving Nuisance Claims Are Inapposite Here.

Contrary to Plaintiffs' claims, courts have routinely interpreted Section 113(h) to require dismissal of state law tort claims in federal court.[16] *See N. Shore Gas Co. v. EPA*, 753 F. Supp. 1413, 1416 (N.D. Ill. 1990) (dismissing "state law claims … for creation of a statutory public nuisance and a common law public nuisance" under Section 113(h)). Plaintiffs' arguments for recognizing a new exception for state law nuisance claims fail on their own terms, since both of the "two broad exclusions" they cite are simply inapplicable here, as Plaintiffs themselves admit. Opp'n 50-51. These cases are plainly not in state court. *Id.* at 50 (citing *Atl. Richfield Co.*, 590 U.S. at 14)). And this Court does not have diversity jurisdiction over any of the cases against the United States. *Id.* at 51 n.44; *supra* p. 14. Thus, Plaintiffs' Remedial Claims pleaded under state

---

[15] Although some Plaintiffs in this MDL have asserted claims under 42 U.S.C. § 9607, the United States has not moved to dismiss any of those claims here.

[16] Moreover, even if Section 113(h) did not withdraw federal jurisdiction over these claims, the Federal Tort Claims Act's sovereign immunity waiver does not extend to the injunctive and equitable relief sought in the nuisance claims addressed by this Motion. 28 U.S.C. § 1346(b); *Talbert v. United States*, 932 F.2d 1064, 1065-66 (4th Cir. 1991); *Hall v. United States*, 44 F.4th 218, 230 (4th Cir. 2022).

tort law are not excused from Section 113(h) and should be dismissed because they challenge the DoD's CERCLA response actions.  Mot. 31-32.

E. **Claims Regarding the Scope of a Response Action Are Quintessential "Challenges" under Section 113(h).**

Plaintiffs argue that their Remedial Claims are permissible because they seek to expand the geographic scope of the DoD's response actions to additional areas or force the DoD to address additional pollutants.  Opp'n 51-62.  Once again, Plaintiffs' arguments simply demonstrate the ways in which their suits "call[] into question the [DoD's] remedial response plan" and require dismissal under Section 113(h).  *Gen. Elec. Co.*, 467 F.3d at 1249.

Contrary to Plaintiffs' assertions, there is no general rule limiting Section 113(h)'s protection to cleanups that are proceeding at the same precise "locations addressed by the claim."  Opp'n 52.  The prohibition on challenges includes claims that seek to expand the federal government's CERCLA response to include additional areas.  Any claim that "demands that a defendant engage in activities that *could have been* a part of the cleanup plan" constitutes an impermissible challenge under Section 113(h).  *Giovanni*, 906 F.3d at 112 (emphasis added); *see also Broward Gardens*, 311 F.3d at 1073 ("Asserting that a remedial plan is inadequate because it fails to include a measure that it could have included is challenging the plan for section 113(h) purposes.").  The scope of contamination to be addressed is a key determination in any CERCLA response action, and disputes over that issue go to the heart of what actions could have been—or could still be—part of the site's cleanup plan.  Thus, numerous courts have dismissed claims seeking remedial action at locations that are outside of the boundaries of a planned response action.

For example, in *Broward Gardens* plaintiffs asked that the remedial plan for a site be modified to include relocation of neighboring residents to new homes.  311 F.3d at 1073.  The plaintiffs argued that their requested relief did not "challenge" the selected remedy because the

housing complex was outside the site's boundaries in an area that the remedial plan did not address. *Id.* But the Eleventh Circuit disagreed, holding that because the government *could have* adopted remedial measures addressing the housing complex and chose not to, the plaintiffs' request for that relief constituted an impermissible challenge under Section 113(h).[17] *Id.* at 1073-74.

Allowing Plaintiffs' Remedial Claims to proceed would be particularly inappropriate here because at each of the facilities at issue, the DoD is still investigating the scope of contamination and assessing what remedial action is warranted. *See* Mot. 13-18. Unlike *MESS*, *see* Opp'n 52, where the remedial action had already been selected and the limits of its coverage were clear, the DoD is still in the process of determining what remedial actions it will select for each facility. Plaintiffs' requested relief ordering the DoD to investigate or remediate at specific locations would impermissibly "alter *how* [the agency] monitors and assesses the extent of contamination" and "threaten to preempt [the lead agency's] ability to choose the best remedial action among a panoply of remedial alternatives that have been analyzed in a completed remedial investigation and feasibility study according to criteria articulated in CERCLA." *El Paso Nat. Gas*, 750 F.3d at 881.

Moreover, the DoD has not ruled out any remedial action involving the specific locations for which they are seeking relief because the DoD's investigative efforts are ongoing. Plaintiffs misread the administrative record documents cited in their Opposition. For example, Plaintiffs assert that the DoD has ruled out several specific water bodies and outfalls from further study or remediation at Stewart Air National Guard Base. Opp'n 53, 54. But the memorandum they rely

---

[17] For at least one of the Remedial Claims, Plaintiffs assert that the DoD cannot carry out response actions on off-base areas because DERP purportedly only authorizes response actions at facilities owned by the United States and under the DoD's jurisdiction. Opp'n 54. Setting aside whether Plaintiffs read DERP correctly, the DoD is carrying out its response actions under Section 104 of CERCLA, and the President's authority under that provision—as delegated to the DoD—is not limited to releases within the boundaries of federal facilities. 42 U.S.C. § 9604(a); Exec. Order No. 12580 § 2(d), 52 Fed. Reg. 2923 (Jan. 23, 1987).

on actually states that while these locations are not considered "potential PFAS *release* locations," they are still considered "potential pathways to receptors" for exposure and therefore "*should* be considered during the RI." Opp'n Ex. 8 at 4 ¶ 7 (emphases added). The memorandum also states that additional "[d]ata collected during the RI/FS may identify the need for a removal action or remedial action at a later date," making clear that the DoD has not made any final determination as to where remedial action will or will not be necessary. *Id.*

Plaintiffs' arguments regarding the scope of pollutants covered by the DoD's response actions are also erroneous. Plaintiffs cite no authority for the proposition that a suit seeking remediation of additional pollutants is not a "challenge" to a CERCLA response action. In fact, lawsuits seeking to force the government to address additional pollutants beyond those in its current plan are plainly "related to the goals of the cleanup" and constitute challenges under Section 113(h). *See Razore*, 66 F.3d at 239; *see also Wash. Env't Council v. Mt. Baker-Snoqualmie Nat'l Forest*, No. C06-1249-JCC, 2009 WL 1543452 (W.D. Wash. June 2, 2009) (applying Section 113(h) to suit seeking to require government to obtain permits addressing release of certain pollutants from certain abandoned mine facilities), *Pub. Serv. Co. of Colo. v. Schrader Oil Co.*, No. 05-cv-785, 2007 WL 2962747, at *10 (D. Col. Oct. 10, 2007) (applying Section 113(h) to suit challenging response that left some contamination on property in place and undisturbed).

Indeed, Plaintiffs implicitly concede that expanding a facility's response action to include additional PFAS compounds beyond PFOS and PFOA would "impact the remedial action selected." *Broward Gardens*, 311 F.3d at 1072. Plaintiffs themselves assert that some PFAS treatment technologies have different levels of effectiveness for different PFAS compounds. Opp'n 61. Thus, the DoD may need to select a different remedy or design a treatment system differently if it is required to address additional PFAS compounds beyond PFOS and PFOA.

Finally, Plaintiffs rely on *Frey v. EPA*, 403 F.3d 828 (7th Cir. 2005), to suggest that their challenges should be permitted because the DoD is not proceeding as quickly as Plaintiffs would like.[18]  But *Frey* is inapposite, involving both a different legal issue and different factual circumstances.  First, *Frey* dealt with the timing of CERCLA citizen suits under 42 U.S.C. § 9659, which no Plaintiff has brought here.  403 F.3d at 833; *see El Paso Nat. Gas*, 750 F.3d at 878 (finding *Frey* inapplicable outside context of CERCLA citizen suits).  Second, in *Frey* EPA had *completed* remedial actions at several units within the site, thus allowing a citizen suit to challenge the remedial action taken.  403 F.3d at 833.  By contrast, the DoD has not completed any of the removal actions at issue here.  Finally, in *Frey* the Seventh Circuit found that there was no evidence that EPA would be doing anything.  *Id.* at 835.  Here, the DoD is actively proceeding through the NCP process, with clear target dates for each facility.  Mot. 13-18.

## IV.     Further Jurisdictional Discovery Is Not Warranted.

In a last-ditch effort to further delay resolution of this matter, Plaintiffs argue that they need an opportunity for additional jurisdictional discovery.  But Plaintiffs fail to identify any issue relevant to this Court's jurisdiction for which they have any plausible need for further site-specific discovery.  *See APWU v. Potter*, 343 F.3d 619, 627 (2d Cir. 2003) (rejecting request for additional jurisdictional discovery where plaintiffs did not articulate how requested evidence was relevant to jurisdictional question).

Plaintiffs suggest discovery is needed to ascertain "which of Plaintiffs' claims … may fall into recognized exceptions to Section 113(h)."  Opp'n 62.  Presumably Plaintiffs are referring to their assertion that Section 113(h) allows suits to enforce state environmental laws and suits

---

[18] Oddly, Plaintiffs complain that the DoD is "delay[ing] finalization of cleanup plans until the end of the investigative and planning process," while simultaneously objecting that the DoD has acted prematurely at facilities where it has taken prompt interim actions.  Opp'n 51 n.45, 60.

seeking to broaden the scope of the DoD's response actions. As an initial matter, these are not "recognized exceptions to Section 113(h)," for the reasons discussed above. *Supra* pp. 19-29. But in any event, no discovery is needed to address these arguments. The Court can determine whether any Plaintiff has brought a state environmental enforcement claim from looking at the complaints themselves. And any questions about "the extent of the cleanup plans at issue" here, Opp'n 62, can be answered by the administrative record for each response action.

Plaintiffs also suggest that with more discovery, some Plaintiffs may be able to assert new "citizen enforcement suit" claims under RCRA. Opp'n 44. But the purpose of jurisdictional discovery is simply to "secure and present evidence relevant to the existence of jurisdiction" over the claims asserted. *APWU*, 343 F.3d at 627. It is not to serve as a fishing expedition for additional claims that Plaintiffs might be able to assert in the future.

Finally, Plaintiffs argue discovery is necessary to "determine which plaintiffs may have claims under" CERCLA's citizen suit provision, 42 U.S.C. § 9659. Opp'n 63-64. This argument is perplexing, as it is unclear how fact discovery could possibly help identify what causes of action Plaintiffs have asserted in this case. The Court need look no further than the operative complaints to see that no Plaintiff has asserted a cause of action under 42 U.S.C. § 9659. Moreover, even if they had, any such claims would still be subject to dismissal because Section 113(h) only permits them to be filed *after* the removal or remedial action has been taken. 42 U.S.C. § 9613(h)(4); *see Clinton Cnty. Comm'rs v. EPA*, 116 F.3d 1018, 1022 (3d Cir. 1997).

## CONCLUSION

For the foregoing reasons, the Court should dismiss the Remedial Claims listed in Appendix A to the United States' memorandum in support of this Motion (ECF No. 4550-1).

Respectfully submitted,

Dated: August 16, 2024                    TODD KIM
                                          Assistant Attorney General


                                          */s/  Andrew D. Knudsen*
                                          ANDREW D. KNUDSEN
                                          U.S. Department of Justice
                                          Environment & Natural Resources Division
                                          Environmental Defense Section
                                          P.O. Box 7611
                                          Washington, DC 20044
                                          (202) 353-7466
                                          Andrew.Knudsen@usdoj.gov

                                          *Counsel for the United States*

## CERTIFICATE OF SERVICE

I hereby certify that on August 16, 2024, a copy of the foregoing was filed via the Court's ECF system and served on counsel of record through the ECF system.

Dated:  August 16, 2024

　　　　　　　　　　　　　　　　　　 /s/ *Andrew D. Knudsen*
　　　　　　　　　　　　　　　　　　 ANDREW D. KNUDSEN