**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| **IN RE: AQUEOUS FILM-FORMING FOAMS PRODUCTS LIABILITY LITIGATION** | MDL No. 2:18-mn-2873-RMG<br><br>**This Document Relates to ALL CASES** |

**UNITED STATES OF AMERICA'S REPLY BRIEF
IN SUPPORT OF ITS OMNIBUS MOTION TO DISMISS PURSUANT TO
<u>FEDERAL RULE OF CIVIL PROCEDURE 12(b)(1)</u>**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................... ii

INTRODUCTION ............................................................................................... 1

ARGUMENT ...................................................................................................... 3

I.    Plaintiffs Do Not Dispute the Jurisdictional Facts ..................................... 3

II.   The FTCA—Not the CWA—Governs Whether Immunity Has Been Waived for Plaintiffs' Tort Claims Seeking Money Damages. ........................................... 5

      A.  The CWA Does Not "Save" Plaintiffs' Tort Claims for Money Damages. ................ 5

          1.  *The CWA does not waive sovereign immunity for claims seeking money damages from the United States.* ..................................... 7

          2.  *Plaintiffs may not obtain money damages under the FTCA by "mixing and matching" the waiver of immunity in the FTCA with the waiver of immunity in the CWA.* ....................................................................... 8

      B.  The DFE Does Not Contain a Carveout for Trespass. ................................. 11

          1.  *The Intentional Tort Exception is not at issue in this Motion.* ........... 12

          2.  *Courts routinely bar trespass claims pursuant to the DFE.* ................ 13

      C.  Under the Two-Step Analysis in *Gaubert*, the FTCA Claims Are Barred Because They Challenge Discretionary Conduct that Is Grounded in Policy .......................... 15

          1.  *Step one of the DFE test is met because Plaintiffs do not dispute that the challenged conduct was discretionary.* .................................... 18

          2.  *Step two of the DFE test is met because the challenged conduct was, objectively, grounded in policy considerations.* ............................ 20

III.  After Five Years of Exhaustive Discovery, which They Chose Not to Review, Plaintiffs Are Not Entitled to a Fishing Expedition to Find Facts that Might Hypothetically Support Jurisdiction. ................................................................ 27

CONCLUSION .................................................................................................... 30

# TABLE OF AUTHORITIES

Cases

*Anderson v. United States,*
    669 F.3d 161 (4th Cir. 2011) ........................................................................... 9

*Aragon v. United States,*
    146 F.3d 819 (10th Cir. 1998) ............................................................... 22, 27

*Baum v. United States,*
    986 F.2d 716 (4th Cir. 1993) ...................................................... 17, 20, 26

*Berkovitz v. United States,*
    486 U.S. 531 (1988) ........................................................................... *passim*

*Billups v. United States,*
    854 F. App'x 514 (4th Cir. 2021) ................................................................ 14

*Birnbaum v. United States,*
    588 F.2d 319 (2d Cir. 1978) ........................................................................ 14

*Black v. Sheraton Corp. of Am.,*
    564 F.2d 531 (D.C. Cir. 1977) .................................................................... 14

*Blanco Ayala v. United States,*
    982 F.3d 209 (4th Cir. 2020) ......................................................................... 7

*Bolinder Real Estate, L.L.C. v. United States,*
    2002 WL 732155 (D. Utah Apr. 24, 2002) ............................................... 22

*Bolt v. United States,*
    509 F.3d 1028 (9th Cir. 2007) ............................................................... 22, 23

*Bulger v. Hurwitz,*
    62 F.4th 127 (4th Cir. 2023) ................................................................... 27, 29

*Burrows v. United States,*
    120 F. App'x 448 (4th Cir. 2005) (per curiam) ................................... 14, 21

*Callahan v. United States,*
    329 F. Supp. 2d 404 (S.D.N.Y. 2004) ....................................................... 15

*Carroll v. United States,*
    661 F.3d 87 (1st Cir. 2011) ......................................................................... 20

*CHoPP Comput. Corp. v. United States,*
   5 F.3d 1344 (9th Cir. 1993) .................................................................................. 14

*City of Lincoln v. United States,*
   283 F. Supp. 3d 891 (E.D. Cal. 2017) ............................................................. 14, 15

*Clark v. Sec'y of U.S. Navy,*
   102 F.4th 658 (3d Cir. 2024) ............................................................................. 26

*Clendening v. United States,*
   19 F.4th 421 (4th Cir. 2021) ............................................................................. 22

*Cohen v. United States,*
   813 F. App'x 864 (4th Cir. 2020) (per curiam) ................................................. 14

*Coulthurst v. United States,*
   214 F.3d 106 (2d Cir. 2000) ............................................................................. 27

*DeOrio v. United States,*
   2021 WL 3856207 (D.S.C. Aug. 30, 2021) (Gergel, J.) ..................................... 4

*Doe v. Cannon,*
   2017 WL 663815 (D.S.C. Feb. 15, 2017) (Gergel, J.) ....................................... 2

*DOE v. Ohio,*
   503 U.S. 607 (1992) .......................................................................................... 9

*FAA v. Cooper,*
   566 U.S. 284 (2012) ....................................................................................... 6, 7

*Fagot Rodriguez v. Rep. of Costa Rica,*
   297 F.3d 1 (1st Cir. 2002) ................................................................................. 14

*FDIC v. Meyer,*
   510 U.S. 471 (1994) .......................................................................................... 10

*Golden Pac. Bancorp v. Clarke,*
   837 F.2d 509 (D.C. Cir. 1988) ......................................................................... 13

*Goldstar (Panama) S.A. v. United States,*
   967 F.2d 965 (4th Cir. 1992) ............................................................................. 19

*Gonzalez v. United States,*
   690 F. Supp. 251 (S.D.N.Y. 1988) ................................................................... 23

*Gotha v. United States,*

iii

115 F.3d 176 (3d Cir. 1997) ................................................................................................ 26

*Gray v. Bell*,
  712 F.2d 490 (D.C. Cir. 1983) ......................................................................................... 12

*Hall v. United States*,
  149 F.3d 1183, 1998 WL 344050, at *3 (6th Cir. 1998) (per curiam) (unpublished table
  decision) ............................................................................................................................ 20

*Hatahley v. United States*,
  351 U.S. 173 (1956) .......................................................................................................... 13

*Hercules, Inc. v. United States*,
  516 U.S. 417 (1996) ............................................................................................................ 6

*Hinck v. United States*,
  550 U.S. 501 (2007) ............................................................................................................ 9

*Huff v. Neal*,
  555 F. App'x 289 (5th Cir. 2014) (per curiam) ......................................................... 13, 14

*In re Camp Lejeune N.C. Water Contamination Litig.*,
  263 F. Supp. 3d 1318 (N.D. Ga. 2016) ............................................................................ 22

*In re Katrina Canal Breaches Litig.*,
  616 F. App'x 659 (5th Cir. 2015) (per curiam) ................................................................ 19

*Lam v. United States*,
  979 F.3d 665 (9th Cir. 2020) ............................................................................................ 23

*Lane v. Peña*,
  518 U.S. 187 (1996) ....................................................................................................... 6, 12

*Lehman v. Nakshian*,
  453 U.S. 156 (1981) ............................................................................................................ 6

*Levin v. United States*,
  568 U.S. 503 (2013) .......................................................................................................... 14

*Loeffler v. Frank*,
  486 U.S. 549 (1988) .......................................................................................................... 10

*Loughlin v. United States*,
  286 F. Supp. 2d 1 (D.D.C. 2003) ...................................................................................... 22

*Magnate, LLC v. EPA*,

678 F. Supp. 3d 767 (W.D. Va. 2023) ..................................................................... 13

*Medina v. United States*,
259 F.3d 220 (4th Cir. 2001) ................................................................................... 12

*Middlesex Cnty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n*,
453 U.S. 1 (1981) ................................................................................................... 7, 8

*North Carolina ex rel. Cooper v. TVA*,
515 F.3d 344 (4th Cir. 2008) ............................................................................. 10, 11

*Oxendine v. United States*,
2009 WL 3757517 (D.S.C. Nov. 9, 2009) .............................................................. 22

*Pastene v. Long Cove Club of HHI, SC*,
2019 WL 6712077 (D.S.C. Dec. 10, 2019) (Gergel, J.) ........................................... 4

*Patty v. United States*,
2015 WL 1893584 (S.D. Tex. Apr. 27, 2015) ........................................................ 14

*Pieper v. United States*,
713 F. App'x 137 (4th Cir. 2017) (per curiam) ...................................................... 22

*Pornomo v. United States*,
814 F.3d 681 (4th Cir. 2016) ................................................................................... 19

*Reynolds v. United States*,
2015 WL 12817676 (D.S.C. Aug. 14, 2015) (Gergel, J.) ................................... 26, 27

*Rich v. United States*,
811 F.3d 140 (4th Cir. 2015) ............................................................................. 26, 27

*Robinson v. U.S. Dep't of Educ.*,
917 F.3d 799 (4th Cir. 2019) ..................................................................................... 7

*Roman v. Velarde*,
428 F.2d 129 (1st Cir. 1970) ................................................................................... 14

*S.R.P. ex rel. Abunabba v. United States*,
676 F.3d 329 (3d Cir. 2012) .................................................................................... 26

*Sánchez v. United States*,
671 F.3d 86 (1st Cir. 2012). .................................................................................. 8, 9

*Sánchez v. United States*,
    707 F. Supp. 2d 216 (D.P.R. 2010) ........................................................................ 8

*Sauders v. S.C. Pub. Serv. Auth.*,
    856 F. Supp. 1066 (D.S.C. 1994) ....................................................................... 14

*Savage Servs. Corp. v. United States*,
    25 F.4th 925 (11th Cir. 2022) ............................................................................. 9

*Seaside Farm, Inc. v. United States*,
    842 F.3d 853 (4th Cir. 2016) ..................................................................... *passim*

*Simons v. United States*,
    413 F.2d 531 (5th Cir. 1969) ................................................................ 13, 14, 15

*Smith v. Wash. Metro. Area Transit Auth.*,
    290 F.3d 201 (4th Cir. 2002) ............................................................... 17, 20, 22

*Soo Line R.R. v. Werner Enters.*,
    2013 WL 2434880 (D. Minn. June 4, 2013) ..................................................... 10

*Sydnes v. United States*,
    523 F.3d 1179 (10th Cir. 2008) .......................................................................... 20

*Tiffany v. United States*,
    931 F.2d 271 (4th Cir. 1991) .............................................................................. 17

*United States v. Bormes*,
    568 U.S. 6 (2012) ................................................................................................. 9

*United States v. Demko*,
    385 U.S. 149 (1966) ........................................................................................... 10

*United States v. Gaidys*,
    194 F.2d 762 (10th Cir. 1952) ........................................................................... 13

*United States v. Gaubert*,
    499 U.S. 315 (1991) ..................................................................................... *passim*

*United States v. Nordic Vill., Inc.*,
    503 U.S. 30 (1992) ............................................................................................... 7

*United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*,
    467 U.S. 797 (1984) ................................................................................. 16, 17, 24

*United States v. Testan,*
    424 U.S. 392 (1976) ................................................................... 6

*Waverley View Invs., LLC v. United States,*
    79 F. Supp. 3d 563 (D. Md. 2015) ................................... 19, 22

*Welch v. United States,*
    409 F.3d 646 (4th Cir. 2005) .......................................... 11, 12

*Wood v. United States,*
    845 F.3d 123 (4th Cir. 2017) ........................................... *passim*

<u>Statutes</u>

16 U.S.C. § 831c ................................................................... 10

28 U.S.C. § 1346(b) ..................................................... *passim*

28 U.S.C. § 2674 ................................................................... 8

28 U.S.C. § 2680 ..................................................... *passim*

Clean Water Act, 33 U.S.C. § 1251 ............................... 7, 9

Clean Water Act, 33 U.S.C. § 1323 ........................ *passim*

Clean Water Act, 33 U.S.C. § 1365 ................................... 9

Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ........ 9

Little Tucker Act, 28 U.S.C. § 1346(a)(2) ........................ 9

<u>Rules</u>

Fed. R. Civ. P. 12 ................................................................ 2

Fed. R. Evid. 702 ................................................................ 4

Fed. R. Evid. 703 ................................................................ 4

## INTRODUCTION

Plaintiffs' Opposition does not contest *any* of the jurisdictional facts in the United States' Motion. Instead of engaging with the facts and the law, Plaintiffs do everything they can to avoid reaching the Discretionary Function Exception (§ 2680(a)) ("DFE") analysis at all. *First*, five years after filing complaints alleging subject-matter jurisdiction under the FTCA, Plaintiffs now ask this Court to be the first court in the country to find that the Clean Water Act ("CWA") waives sovereign immunity over tort claims for money damages. Opp'n to Omnibus Mot. (ECF No. 4849) at 11–17 (hereafter, "Opp'n"). *Second*, Plaintiffs ask this Court to rule—although Congress has not said—that the DFE has a carveout for trespass claims seeking money damages. *Id.* at 18–25. These categorical waiver arguments are wrong and ignore well-established canons of statutory construction.

When the Opposition finally reaches the United States' DFE argument, Plaintiffs do not meaningfully respond to it. Instead, Plaintiffs insist that the United States has simply misunderstood the nature of their claims, which—according to Plaintiffs—do not challenge the military's decisions regarding how to use and handle AFFF at all. Opp'n at 4 ("[A]ll these lawsuits seek to do is hold the Government liable for its pollution of the water flowing to its neighbors on account of its failure to adequately contain the AFFF used on its property *after* its use[.]" (emphasis original)). Contrary to Plaintiffs' position, the FTCA Complaints expressly challenge the military's decision to train with AFFF and to use AFFF in hangar systems, equipment testing, and emergency responses, over the course of decades. The military's AFFF disposal practices are within these "umbrella" decisions, which are protected by the DFE. *Wood v. United States*, 845 F.3d 123, 130–31 (4th Cir. 2017); *Berkovitz v. United States*, 486 U.S. 531, 536–37 (1988). Even if the Court were to view the disposal of AFFF in isolation, dismissal

1

would still be warranted because—like the overarching decisions concerning the military's use and handling of AFFF—no mandatory and specific federal directive required the military to dispose of AFFF in a particular way, and the military's decisions about AFFF disposal were policy-based.

Lacking any substantive basis to oppose the United States' Motion to Dismiss, Plaintiffs ask the Court to defer ruling so that they can take more discovery in search of a meritorious argument. Plaintiffs are not entitled to this relief. The United States has produced millions of pages of documents. Plaintiffs have not reviewed the United States' productions. Opp'n at 59 n.35. The United States also provided detailed declarations from key witnesses; Plaintiffs elected not to depose many of them. Finally, Plaintiffs have had access to the CERCLA administrative records, which contain detailed information about the historic use and disposal of AFFF at each of the sites at issue. Plaintiffs insist—without any basis—that they could defeat the United States' Motion to Dismiss if they had *more* discovery. But discovery is not a fishing expedition, and the bounds of jurisdictional discovery must be rigorously enforced where, as here, the United States' immunity is at issue. *Doe v. Cannon*, 2017 WL 663815, at *3 (D.S.C. Feb. 15, 2017) (Gergel, J.); *Seaside Farm, Inc. v. United States*, 842 F.3d 853, 860–61 (4th Cir. 2016).

The Motion to Dismiss should be granted. Fed. R. Civ. P. 12(b)(1). However, the fact that Plaintiffs cannot proceed under the FTCA does not mean that they are left to bear the costs of AFFF cleanup. In April 2024, the Environmental Protection Agency ("EPA") designated PFOS and PFOA as hazardous substances under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), which allows Plaintiffs to seek recovery for necessary costs incurred cleaning up these AFFF constituents. The Parties are conferring over the possibility of resolving viable CERCLA claims without litigation. Moreover, as discussed in the

Motion, the Department of Defense ("DoD") has voluntarily undertaken response actions for PFAS contamination, and additional cleanup funding is available under the 2021 Bipartisan Infrastructure Law. These avenues may provide relief for contamination resulting from AFFF, but the FTCA does not.

## ARGUMENT

### I.    Plaintiffs Do Not Dispute the Jurisdictional Facts.

The Motion to Dismiss explained, with supporting evidence, how and why the military developed, used, and handled AFFF in all the activities challenged by Plaintiffs: fire training, hangar fire-suppression systems, emergency responses, and equipment testing. Memo. ISO Mot. to Dismiss (ECF No. 4548-1) at 4–25 (hereafter, "Motion"). The Motion explained how and why the military chose to dispose of AFFF in each of these activities, including how the military dealt with accidental releases or "spills." *Id.* at 10–20. The Motion further explained, with supporting evidence, that AFFF was mission-critical; therefore, the military retained substantial discretion over how to use, handle, and dispose of it. *Id.* at 6–23. Namely, when PFAS became known as a potential environmental contaminant, DoD deferred to EPA to conduct national water sampling, evaluate the science, and make regulatory determinations related to PFAS. *Id.* at 21–23.

Because the military's use and handling of AFFF was discretionary, there is a rebuttable presumption that the relevant conduct was also subject to policy considerations. *Seaside Farm*, 842 F.3d at 858. And the evidence establishes that the DoD in fact considered competing policy considerations when making decisions relating to the use and handling of AFFF. Mot. at 10–12 (discussing policy considerations implicated in fire training, including discharges of AFFF used at fire training areas), 12–18 (discussing policy considerations implicated in hangar fire-suppression systems, including the integration of disposal methods for AFFF hangar systems), 18

3

(discussing policy considerations relevant to emergency responses, including post-crash AFFF cleanup), 19–20 (discussing policy considerations implicated by equipment testing, including AFFF releases into the environment).

The Opposition does not address the jurisdictional facts, let alone refute them. Instead, the Opposition offers a "Factual Background of Exemplar Case" that has nothing to do with jurisdictional issues, which is supported by affidavits of named Plaintiff Art Schaap (ECF No. 4849-3) and "environmental professional" James Bearzi (ECF No. 4849-2). Opp'n at 7–10. The "facts" in these affidavits address the merits of Mr. Schaap's putative tort claims—not the DFE—and are irrelevant to this Motion.[1] Therefore, the United States did not depose either affiant in connection with jurisdictional briefing. *See* CMO 25A (ECF No. 4610) ¶ C.[2]

"When a Rule 12(b)(1) challenge is raised to the factual basis for subject matter jurisdiction, the burden of proving subject matter jurisdiction is on the plaintiff." *Pastene v. Long Cove Club of HHI, SC*, 2019 WL 6712077, at *2 (D.S.C. Dec. 10, 2019) (Gergel, J.). "[T]he nonmoving party must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists." *Id.* On a factual attack to subject-matter jurisdiction, "the district court may decide disputed issues of fact." *DeOrio v. United States*, 2021 WL 3856207, at *1 (D.S.C. Aug. 30, 2021) (Gergel, J.) (quotation marks omitted). Plaintiffs' refusal to engage with the

---

[1] Plaintiff Schaap and Mr. Bearzi testify that: (i) AFFF was historically used at Cannon Air Force Base ("CAFB"); (ii) some of the AFFF was discharged into the environment; (iii) some of the AFFF discharged into the environment "contaminated" the groundwater; and (iv) the Schaaps' dairy business, adjacent to the historic fire training areas, was harmed. Opp'n at 7–10.

[2] Mr. Bearzi "was retained by the Napoli Law Firm to assess data, reports, documents, and other information to determine and opine on the source, nature, and extent of contamination from the use of [AFFF] at CAFB." Bearzi Aff. (ECF No. 4849-2) ¶ 6. If the United States were to remain in this litigation, the United States does not concede, and expressly reserves the right to challenge, Mr. Bearzi's opinions (as needed), including the right to dispute that Mr. Bearzi: (i) was properly disclosed as an expert witness, (ii) is qualified to offer expert opinions, or (iii) satisfies any other provision of Federal Rules of Evidence 702 and 703.

jurisdictional facts is fatal to their Opposition.

## II.    The FTCA—Not the CWA—Governs Whether Immunity Has Been Waived for Plaintiffs' Tort Claims Seeking Money Damages.

Finding themselves unable to challenge the applicability of the DFE, Plaintiffs try to avoid it. Namely, the Opposition argues that this Court need not reach the two-step DFE analysis, for two reasons. *First*, Plaintiffs argue that the CWA—which has its own limited waiver of sovereign immunity—establishes subject-matter jurisdiction over all their state-law claims (including the tort claims), which relate to "water pollution." Opp'n at 11–17. *Second*, Plaintiffs argue that some FTCA Complaints contain claims for common-law trespass, which (according to Plaintiffs) are somehow carved out from the DFE. *Id.* at 18–25. Binding law defeats both theories. When the Opposition reaches the two-step DFE analysis, it continues to insist that the CWA is a mandatory and specific directive (it is not), and mischaracterizes Plaintiffs' claims as involving "mundane matters" of scientific analysis and "garden-variety" negligence. *Id.* at 25–50.

### A.    The CWA Does Not "Save" Plaintiffs' Tort Claims for Money Damages.

Plaintiffs contend that the United States "overlook[ed] this Court's undoubted subject-matter jurisdiction over all of Plaintiffs' state-law claims in all 27 cases, based on the Clean Water Act." Opp'n at 18; *see id.* at 11–17 (discussing CWA Section 313, 33 U.S.C. § 1323). The United States did not "overlook" this putative basis for jurisdiction—Plaintiffs failed to plead it. Only one of the 27 FTCA Complaints arguably mentions the CWA's waiver in its jurisdictional averments (*H54b Inc. DBA Moose Creek* (¶ 5)).[3] We nonetheless address the argument here.

---

[3] Although the *City of Newburgh* cites jurisdiction under the CWA (¶ 49), *Newburgh* brings a traditional CWA citizen suit claim seeking injunctive relief—not a tort claim for money damages. The United States does not concede that there is jurisdiction over this citizen suit.

CWA Section 313 provides, in part, that federal agencies are to comply with federal, State, interstate, and local "requirements" that "respect[] the control and abatement of water pollution," in the same manner as non-governmental entities. Distilled, Plaintiffs' argument is that: (1) each FTCA Complaint alleges at least one violation of a state law "respecting water pollution"; (2) because Plaintiffs' state-law claims "respect[] water pollution," they are incorporated by reference via CWA Section 313; and (3) Section 313 contains a waiver of sovereign immunity that supplants the FTCA's exceptions, such as the DFE. Opp'n at 11. Plaintiffs' logic is flawed in many respects. *See* Mot. at 38–40. But the Court need not address whether Plaintiffs' state-law claims are within the scope of Section 313. Even if they were, the CWA does not allow for compensatory damages. Moreover, to the extent Plaintiffs are attempting to "mix and match" the FTCA waiver of sovereign immunity with the CWA waiver of sovereign immunity to establish jurisdiction, that argument is meritless. *Id.* at 40–41.

The United States "is immune from suit save as it consents to be sued . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *Hercules, Inc. v. United States*, 516 U.S. 417, 422 (1996) (quoting *United States v. Testan*, 424 U.S. 392, 399 (1976)). A waiver of sovereign immunity must be "unequivocally expressed" in statutory text, and the scope of the waiver "will be strictly construed . . . in favor of the sovereign." *Lane v. Peña*, 518 U.S. 187, 192 (1996); *Lehman v. Nakshian*, 453 U.S. 156, 161 (1981) ("[L]imitations and conditions upon which the Government consents to be sued must be strictly observed and exceptions thereto are not to be implied." (quotation marks omitted)). "Legislative history cannot supply a waiver that is not clearly evident from the language of the statute." *FAA v. Cooper*, 566 U.S. 284, 290 (2012).

Further, "it is an elemental canon of statutory construction that where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it." *Middlesex Cnty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 14–15 (1981) (quotation marks omitted). "As a general rule, the United States is immune from claims for money damages in civil suits." *Blanco Ayala v. United States*, 982 F.3d 209, 214 (4th Cir. 2020); *accord Robinson v. U.S. Dep't of Educ.*, 917 F.3d 799, 801 (4th Cir. 2019). Thus, if there is *any* plausible interpretation of a statute that would not authorize money damages against the United States, the United States is immune from such claims. *Cooper*, 566 U.S. at 290–91; *United States v. Nordic Vill., Inc.*, 503 U.S. 30, 34, 37 (1992).

1. *The CWA does not waive sovereign immunity for claims seeking money damages from the United States.*

The Court should reject Plaintiffs' invitation to become the first court in the country to rule that the CWA waives sovereign immunity for tort claims for money damages against the United States. The CWA is a comprehensive regulatory statute that is specifically designed to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). Among other things, the CWA requires the federal government to comply with "all Federal, State, interstate, and local requirements, administrative authority, and process and sanctions respecting the control and abatement of water pollution in the same manner, and to the same extent as any nongovernmental entity." § 1323(a).

The CWA contains "unusually elaborate enforcement provisions." *Sea Clammers*, 453 U.S. at 13; *id.* at 13–14 (enumerating CWA enforcement provisions). The CWA's "unusually elaborate" enforcement scheme does not allow suits for monetary damages. Rather, the remedies for CWA violations, available against the federal government, are "strictly limited" to injunctive relief and the assessment of civil penalties and attorney's fees in certain instances. *Id.*

7

at 14–15; *Sánchez v. United States*, 707 F. Supp. 2d 216, 233 (D.P.R. 2010), *aff'd*, 671 F.3d 86 (1st Cir. 2012). The Supreme Court has explicitly declined to authorize remedies beyond those that Congress set forth in the statute. *Sea Clammers*, 453 U.S. at 15 ("In the absence of strong indicia of a contrary congressional intent, we are compelled to conclude that Congress provided precisely the remedies it considered appropriate."); *id.* at 14–15. Plaintiffs do not seek injunctive relief; they seek money damages. Opp'n at 29. Because the remedy Plaintiffs seek is precluded by the clear statutory language, the CWA's waiver does not provide a basis for subject-matter jurisdiction over Plaintiffs' FTCA claims for money damages. *Sánchez*, 671 F.3d at 94–95 ("Congress did not intend that the CWA authorize civil tort actions against the federal government for damages. The plaintiffs' theory that they may sue under the FTCA for alleged CWA violations is expressly barred by the intent of Congress."; dismissing FTCA claims that were predicated on the EPA's issuance of notice of 102 CWA permit violations to the Navy).

Moreover, because the CWA does not allow compensatory damages as a form of relief against any party, Plaintiffs' request for leave to re-plead their tort claims for money damages under CWA Section 313 should be denied as futile. *See* Opp'n at 16 n.12.

> 2.    *Plaintiffs may not obtain money damages under the FTCA by "mixing and matching" the waiver of immunity in the FTCA with the waiver of immunity in the CWA.*

Plaintiffs also cannot establish jurisdiction by mixing and matching the FTCA waiver with the CWA waiver. The FTCA, in contrast to the CWA, is not a comprehensive, detailed, regulatory statute. Instead, it merely provides that—subject to certain exceptions—the United States may be held monetarily liable for the negligent or wrongful acts or omissions of its employees acting within the scope of their official duties. 28 U.S.C. §§ 1346(b)(1), 2674.

As addressed in the United States' Motion, a plaintiff cannot "mix and match" a statute containing a *general* waiver of sovereign immunity (such as the FTCA) with the provisions of another federal statute containing a *specific* waiver of sovereign immunity (such as the CWA), to "create an action against the United States." *United States v. Bormes*, 568 U.S. 6, 15 (2012).[4] Where two waivers of sovereign of immunity are at issue, only the statute containing the detailed remedial scheme on "*its own* text" can determine "whether the damages liability Congress crafted extends to the Federal Government." *Id.* (emphasis original). A "precisely drawn, detailed statute" displaces "more general remedies." *Hinck v. United States*, 550 U.S. 501, 506 (2007) (quotation marks omitted). "And that makes sense: when the legislature has attacked a specific problem—and crafted a detailed and precise remedy to address that problem—we should generally assume that the law represents Congress's considered and exclusive judgment on that issue." *Savage Servs. Corp. v. United States*, 25 F.4th 925, 938–39 (11th Cir. 2022).

The CWA was precisely drawn to protect the integrity of the Nation's waters. 33 U.S.C. § 1251(a); *see, e.g.*, *Sánchez*, 671 F.3d at 94–95. The CWA reflects Congress's considered and exclusive judgment that, if federal agencies do not comply with the statutory requirements respecting water pollution, the *remedy* is injunctive relief or certain penalties—not compensatory damages. §§ 1323(a), 1365(a); *DOE v. Ohio*, 503 U.S. 607, 611 (1992). Courts "must refrain from imposing liability on the government when doing so would subvert a congressional decision to preclude regulated entity liability in the statute creating the mandatory directive." *Abreu v. United States*, 468 F.3d 20, 30 (1st Cir. 2006); *Sánchez*, 671 F.3d at 94–95 (applying

---

[4] In *Bormes*, plaintiffs attempted to "mix and match" the general waiver of sovereign immunity in the Little Tucker Act, 28 U.S.C. § 1346(a)(2), with the specific waiver of sovereign immunity in the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* Like the Tucker Act, the FTCA waives sovereign immunity *without* creating substantive rights. 28 U.S.C. § 1346(b); *Anderson v. United States*, 669 F.3d 161, 164 (4th Cir. 2011).

*Abreu* to CWA-based claim); *Soo Line R.R. v. Werner Enters.*, 2013 WL 2434880, at \*14–16 (D. Minn. June 4, 2013) (applying *Abreu* to RCRA-based claim), *objections overruled*, 2013 WL 3771391 (D. Minn. July 17, 2013). Because the remedy Plaintiffs desire—money damages—is precluded by the clear statutory language, CWA Section 313 does not provide a basis for jurisdiction over Plaintiffs' FTCA claims for money damages. *See United States v. Demko*, 385 U.S. 149, 152–54 (1966) (recovery under statute providing specific redress for injury is exclusive remedy and bars FTCA suit).

The Fourth Circuit's Clean Air Act decision in *North Carolina ex rel. Cooper v. TVA*, 515 F.3d 344 (4th Cir. 2008), on which Plaintiffs rely, supports the United States' argument. North Carolina brought a common-law nuisance claim against the Tennessee Valley Authority ("TVA"), **seeking an injunction** prohibiting the TVA from operating its powerplants in a harmful manner. *Id.* at 347. The Fourth Circuit held that the TVA "does not benefit from the discretionary function exception embodied in the FTCA because [the TVA's] sovereign immunity is not waived by the FTCA but by [the TVA's] own organic act"—specifically, a "sue-and-be-sued" clause. *Id.* (quoting 16 U.S.C. § 831c(b)). The court emphasized that, *unlike* other waivers of sovereign immunity, sue-and-be-sued clauses "'should be *liberally* construed.'" *Id.* (emphasis added) (quoting *Loeffler v. Frank*, 486 U.S. 549, 554 (1988)). Indeed, "'agencies authorized to "sue and be sued" are presumed to have *fully* waived immunity.'" *Id.* at 348 (quoting *FDIC v. Meyer*, 510 U.S. 471, 480 (1994)). The Fourth Circuit rejected the TVA's contention that separation-of-powers concerns were an independent reason to bar the suit, noting that the TVA "is a corporate entity, separate and distinct from the Federal Government itself." *Id.* at 348–49 (quotation marks omitted). "A lawsuit against the TVA is not a suit against the United

States itself or one of its agencies subject to the direct executive control which is granted to the President by Article II of the Constitution." *Id.* at 349.

Here, unlike in the TVA case, there is no "sue-and-be-sued" clause to be liberally construed, and Plaintiffs seek *money damages* as opposed to injunctive relief—from the United States itself, not a corporate entity distinct from the government. Even if the CWA allowed for money damages (which it does not), the material distinctions in the TVA case support, rather than contradict, why the CWA's waiver of sovereign immunity does not trump the sovereign immunity enshrined in the FTCA's DFE for tort claims seeking money damages.

   B.    The DFE Does Not Contain a Carveout for Trespass.

Next, Plaintiffs argue that the United States has "overlooked" the FTCA's "specialized waiver of immunity for common-law trespass claims." Opp'n at 18–25. Plaintiffs advance two rationales for this novel theory. First, they contend that trespass must be carved out from the DFE because trespass is not covered by the *Intentional Tort Exception* to the FTCA (§ 2680(h)). Second, Plaintiffs rely on a 55-year-old Fifth Circuit decision, which has been widely discredited (including by the Fifth Circuit), to argue that trespass claims are outside the scope of the DFE.

Neither theory has merit.

As noted previously, "[t]he FTCA effects a limited waiver" of sovereign immunity, *Welch v. United States*, 409 F.3d 646, 651 (4th Cir. 2005), for "personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of [their] office or employment," 28 U.S.C. § 1346(b)(1). Plaintiffs devote significant attention to the straw man argument that trespass claims are within the § 1346(b)(1) waiver. Opp'n at 19–21. This has never been in dispute. However, the scope of the FTCA's waiver is "limited by a series of specific exceptions outlined in the Act, *each* of which is

11

considered jurisdictional." *Welch*, 409 F.3d at 651 (emphasis added) (citing *Medina v. United States*, 259 F.3d 220, 223–24 (4th Cir. 2001)). The exceptions are listed in § 2680, which states that the waiver in § 1346(b) "shall not apply" if *any* of the exceptions are applicable. At issue in the United States' Motion to Dismiss is the DFE, which appears in subparagraph (a).

        *1.    The Intentional Tort Exception is not at issue in this Motion.*

      The statutory basis for Plaintiffs' trespass-carveout argument is 28 U.S.C. § 2680(h), which contains the FTCA's Intentional Tort Exception. Plaintiffs unremarkably observe that the list of intentional torts for which immunity is preserved in § 2680(h) does not include trespass. Opp'n at 19–20, 22–24, 24 n.18 (citing cases construing § 2680(h)). This argument is a red herring, because the United States' Motion to Dismiss does not challenge jurisdiction under the Intentional Tort Exception. The Motion challenges jurisdiction under the DFE, which is a distinct statutory provision in § 2680(a). The DFE bars any claim arising out of "the exercise or performance or the failure to exercise or perform a discretionary function or duty." 28 U.S.C. § 2680(a). Nothing in this provision indicates a carveout for trespass claims. *Lane*, 518 U.S. at 192 (statutory waiver must be "unequivocally expressed").

      Just as Plaintiffs may not mix and match immunities *across* statutes, nor may they mix and match immunities *within* the FTCA to establish subject-matter jurisdiction. *Medina*, 259 F.3d at 225–26 (explaining that § 2680(h) and § 2680(a) "exist independently"; holding that plaintiff's "FTCA claims of intentional torts under § 2680(h) must clear the § 2680(a) discretionary function hurdle"); *Gray v. Bell*, 712 F.2d 490, 493, 507 (D.C. Cir. 1983) (adopted by the Fourth Circuit in *Medina*; eschewing theory that § 2680(h) overrides § 2680(a), insofar as the DFE bars *any* claim based upon a discretionary function). Therefore, the Intentional Tort Exception does not salvage Plaintiffs' trespass claims.

2.    *Courts routinely bar trespass claims pursuant to the DFE.*

Caselaw also does not support Plaintiffs' argument. *See* Opp'n at 20 n.16, 21–22.

Plaintiffs principally rely on *Hatahley v. United States*, 351 U.S. 173 (1956), which involved a

trespass claim based on the Department of the Interior's ("DOI") decision to round up the

plaintiff Native Americans' horses under Utah's abandoned horse statute. *Id.* at 175–76. The

Supreme Court held that the DOI had failed to comply with notice requirements in the federal

Taylor Grazing Act. *Id.* at 177–80. Because the DOI had violated a mandatory and specific

federal directive, there was jurisdiction over the trespass claim. *Id.* at 181. *Hatahley* thus stands

for the unremarkable proposition that, where there is no discretion, the DFE does not apply. *See,

e.g.*, *Magnate, LLC v. EPA*, 678 F. Supp. 3d 767, 776 (W.D. Va. 2023) ("[C]onduct falling

clearly outside the legal authority delegated to a federal agency or employee is, by its nature,

non-discretionary and will not allow the United States to claim immunity under the

discretionary-function exception." (citing *Hatahley*)), *aff'd as modified*, 2024 WL 2355374 (4th

Cir. May 23, 2024) (per curiam).[5]

The Fifth Circuit's pre-*Gaubert* decision in *Simons v. United States*, 413 F.2d 531 (5th

Cir. 1969), also does not aid Plaintiffs. Opp'n at 20 n.16, 22. *Simons*—like *Hatahley*—held that,

"actions sounding in trespass may be brought under the Tort Claims Act." 413 F.2d at 533. To

the extent that *Simons* further construed *Hatahley* to create a blanket carveout for trespass claims

from the DFE, its interpretation was erroneous—as the Fifth Circuit later recognized. *Huff v.*

---

[5] *Accord, e.g.*, *Golden Pac. Bancorp v. Clarke*, 837 F.2d 509, 512–13 (D.C. Cir. 1988)
(explaining that, in *Hatahley*, "the Supreme Court permitted an FTCA claim against the
government because the challenged actions . . . were illegal on their face and . . . did not involve
a delegated exercise of discretion."); *cf. United States v. Gaidys*, 194 F.2d 762, 764 (10th Cir.
1952) (cited in Opp'n at 21 n.17; holding that United States was not immune for conduct that
violated a provision of a federal statute that specifically prescribed a certain minimum height
above which planes can safely fly).

*Neal*, 555 F. App'x 289, 298 n.9 (5th Cir. 2014) (per curiam) ("Regardless of whether [plaintiff] purports to rely on a negligence theory or intentional-tort theory, the conduct underlying [the plaintiff's] FTCA claims falls within the discretionary function exception" because "[t]he exception does not depend on the [plaintiff's] theory." (citing *Gaubert*)); *Patty v. United States*, 2015 WL 1893584, at *13 & n.4 (S.D. Tex. Apr. 27, 2015) (emphasizing that *Simons* "has never been cited by a subsequent Fifth Circuit panel" and was issued before *Gaubert*, which "broadened the discretionary function exception's scope"), *aff'd*, 633 F. App'x 238 (5th Cir. 2016) (mem.) (per curiam) (affirming "for the reasons given in the opinion of the district court"), *cert. denied*, 137 S. Ct. 332 (2016) (mem.).[6]

Many courts—including this one and the Fourth Circuit—have applied the DFE to bar trespass claims. *Sauders v. S.C. Pub. Serv. Auth.*, 856 F. Supp. 1066, 1069, 1075 (D.S.C. 1994); *Cohen v. United States*, 813 F. App'x 864, 869 (4th Cir. 2020) (per curiam) (on appeal from D.S.C.); *Burrows v. United States*, 120 F. App'x 448, 449–50 (4th Cir. 2005) (per curiam); Opp'n at 24 n.18 (noting but discounting the "occasional" decisions in this Circuit dismissing trespass claims for lack of subject-matter jurisdiction under the DFE); *see also, e.g.*, *Fagot Rodriguez v. Rep. of Costa Rica*, 297 F.3d 1, 9–10 (1st Cir. 2002) (rejecting claim defendants had no discretion to violate trespass law because "if a tortious act were, by definition, non-discretionary, the [DFE] would be a dead letter"); *City of Lincoln v. United States*, 283 F. Supp.

---

[6] The remaining cases Plaintiffs cite on this topic support, at most, the unobjectionable (and unobjected-to) proposition, previously discussed, that trespass claims are within the scope of the § 1346(b) waiver. Opp'n at 22–23; *see, e.g.*, *Roman v. Velarde*, 428 F.2d 129, 132 (1st Cir. 1970); *CHoPP Comput. Corp. v. United States*, 5 F.3d 1344, 1347 (9th Cir. 1993). Or they support the uncontroversial point, also previously discussed, that trespass is outside the scope of the Intentional Tort Exception, § 2680(h), which is not at issue in this Motion. *E.g.*, *Black v. Sheraton Corp. of Am.*, 564 F.2d 531, 539 (D.C. Cir. 1977); *Birnbaum v. United States*, 588 F.2d 319, 328 (2d Cir. 1978); *Levin v. United States*, 568 U.S. 503, 507 n.1 (2013); *Billups v. United States*, 854 F. App'x 514, 516 n.2 (4th Cir. 2021). *But see supra* § II.B.1.

3d 891, 900, 902–05 (E.D. Cal. 2017) (holding that the City's argument that the United States "never has discretion to commit a trespass" is "untenable" given "the sheer number of cases that have applied the discretionary function exception to bar trespass claims"; citing cases); *Callahan v. United States*, 329 F. Supp. 2d 404, 410 (S.D.N.Y. 2004) (citing negatively *Simons*).

Because Plaintiffs' "categorical" waiver arguments fail, we now turn to the governing standard: the two-step DFE analysis.

C.     Under the Two-Step Analysis in *Gaubert*, the FTCA Claims Are Barred Because They Challenge Discretionary Conduct that Is Grounded in Policy.

Beginning at page 25, the Opposition finally addresses the substance of the United States' DFE arguments; however, it mischaracterizes the allegations that Plaintiffs have made in their FTCA Complaints, and having done so, misapplies governing law.

The FTCA Complaints directly challenge the military's use and handling of AFFF in four activities: (i) fire training, (ii) hangar fire-suppression systems, (iii) emergency responses, and (iv) equipment testing for preparedness. Decl. of Annie Dou (ECF No. 4548-7). For example, in the FTCA Complaints concerning CAFB, Plaintiffs allege: "During routine training exercises, AFFF was sprayed directly on the ground and/or tarmac at several fire training areas allowing PFOA/PFOS to travel to the surrounding groundwater, causing contamination of various water supply wells, in various locations, in varying amounts, at various times." *Schaap d/b/a Highland Dairy v. United States*, No. 2:19-cv-03288, ECF No. 1 ¶ 5.[7] "[A]dditional releases of AFFF have occurred at CAFB through testing of the equipment, false alarms, equipment malfunctions, and

---

[7] Plaintiffs' own purported expert, James Bearzi, similarly characterizes the activities causing AFFF releases at CAFB, which are representative of Plaintiffs' FTCA claims. Bearzi Aff. ¶ 25 ("Since approximately 1970, PFAS-containing AFFF has been used at CAFB in [i] live firefighting scenarios, [ii] response actions to flightline aircraft crashes, [iii] firefighting training exercises, and [iv] fire-suppression systems installed in hangars and maintenance facilities.").

other incidental releases in the hangars, fire stations and other locations." *Id.* ¶ 6. Likewise, in the

FTCA Complaints concerning Fairchild AFB, one of the principal bases at issue, Plaintiffs

allege: "As part of firefighting training exercises, Fairchild, like many other U.S. military bases,

has used Aqueous Film Forming Foam[.]" *Fiattarone, et al. v. United States*, No. 2:19-cv-01119,

ECF No. 1 ¶ 4.3. The lawsuits in this MDL against the United States are, and always have been,

about the United States military's use and handling of AFFF in these activities—particularly, fire

training. ECF No. 2600 (Aug. 19, 2022 Hr'g on Gov't K Defense, at 84:13–15) (Plaintiffs' Lead

Counsel: "I don't think there's any dispute that we're talking about 90-plus percent use [of

AFFF] is in [fire] training . . . .").[8]

Despite their express allegations, and representations to the Court, Plaintiffs now say that

they do not challenge the military's use and handling of AFFF; they challenge only the natural

*consequence* of the use and handling: the release of AFFF into the environment. Opp'n at 32

("Plaintiffs are merely suing, in tort under state law, based on the impact the Government, as the

owner or lessee of land, had on them as a result of the failure of the environmental safety

employees to adequately contain the AFFF that was used."); *id.* at 29. According to the

Opposition, Plaintiffs' claims challenge "mundane matters of scientific and professional

analysis" or "garden-variety negligence," which the DFE does not protect. *Id.* at 37–50.

Plaintiffs' argument draws a distinction without a difference under the DFE law. The

relevant decision, for DFE step one, is the "umbrella" decision under which the alleged

individual negligent acts fall. *See United States v. S.A. Empresa de Viacao Aerea Rio Grandense*

---

[8] Plaintiffs' sudden suggestion that their FTCA Complaints relate to disposal and not use is
baseless. As discussed in the Motion, for at least 25 years the military trained in unlined pits
where AFFF was directly discharged into the ground. Mot. at 10–11. Plaintiffs and their experts
have consistently acknowledged that the use of AFFF in fire training drives their claims against
the United States. *Id.* at 26.

*(Varig Airlines)*, 467 U.S. 797, 810–12, 816–20 (1984) (discussing *Dalehite* and the fact that individual negligent actions cannot be artificially separated from the overall program in which they occurred for purposes of DFE); *accord, e.g.*, *Wood*, 845 F.3d at 130–31 (relying on *Varig Airlines*). For instance, as discussed in the United States' Motion, for decades AFFF was directly discharged into unlined pits during fire training exercises. Mot. at 10–11. Similarly, through the late 1990s, the military designed aircraft hangar fire-suppression systems to contain AFFF and recommended releasing spent AFFF to sanitary sewer systems (and expressly discouraged off-site waste disposal). *Id.* at 12–18. Therefore, addressing Plaintiffs' claims of improper "disposal" would necessarily involve questioning the military's training and systems designs—something the Court is ill-equipped to do. *Tiffany v. United States*, 931 F.2d 271, 276 (4th Cir. 1991). The *actual* decisions at issue in the Plaintiffs' FTCA Complaints—i.e., whether, when, and how to use AFFF in fire training, hangars, emergencies, and testing—were all discretionary, meeting step one of the DFE analysis. Mot. at 34–44. Regardless, even if the Court were to view them in isolation, the military's decisions regarding how to *dispose* of spent AFFF were discretionary. *See, e.g.*, Mot. at 34–35.

As for step two, it is irrelevant whether Plaintiffs purport to "critique" the military's justification for using AFFF in firefighting. Opp'n at 29. Application of the DFE is not limited to circumstances where plaintiffs' allegations overtly criticize or "second-guess" military decisions. *Id.* Nor is it limited to circumstances where the government is regulating private conduct or providing public services. *Id.* at 26–29. The only question at step two is whether the allegedly wrongful decisions were, objectively, grounded in policy. *United States v. Gaubert*, 499 U.S. 315, 322–23 (1991); *Smith v. Wash. Metro. Area Transit Auth.*, 290 F.3d 201, 208 (4th Cir. 2002); *Baum v. United States*, 986 F.2d 716, 721 (4th Cir. 1993). Here, they were.

1. *Step one of the DFE test is met because Plaintiffs do not dispute that the challenged conduct was discretionary.*

The 27 FTCA Complaints do not cite a single federal directive that mandated, in specific terms, how the military was to use, handle, **or dispose** of AFFF. Nor does the Opposition. That failure is unsurprising, as the jurisdictional evidence shows that no such directive existed.[9] Because no federal mandatory and specific directive required the military to contain or dispose of AFFF in a particular way during the relevant period, the United States is immunized from Plaintiffs' claims, including those alleging wrongful disposal.

Although only eight of the FTCA Complaints allege that the CWA is a mandatory and specific federal directive that the United States "violated" (Mot. at 37–38), Plaintiffs now insist that the CWA's waiver provision defeats step one of the DFE for all 27 cases. *See* Opp'n at 33–37 (arguing that § 1323(a) "operates to impose a mandatory duty on all federal employees, stripping them of any 'policy' latitude to ignore state-law requirements bearing on water pollution"). Even if all Plaintiffs had pleaded it as such, Section 313 does not defeat step one of the DFE for the threshold reason that it is not relevant at all to Plaintiffs' claims. There are currently no CWA disposal regulations of PFAS—only guidelines, issued in 2022. Mot. at 38–39; Ex. CC to Mot. (ECF No. 4548-141). Further, even if the CWA's Section 313 waiver were

---

[9] *See, e.g.*, Decl. of Frederick Walker Decl. (ECF No. 4548-67) ¶ 51 ("At no time during my tenure in the USAF from 1978 through my retirement in 2014 was there any USAF regulation or environmental rule or guideline forbidding the USAF from using legacy AFFF or requiring the USAF to treat it as a hazardous substance for purposes of disposal."); Ex. 16 to Decl. of Jeffrey A. Wagner (ECF No. 4548-64), AF02-000002524 (Deputy Assistant Secretary of the Air Force explaining in 2017 that "PFOS/PFOA are neither 'hazardous substances' nor 'hazardous wastes'"; therefore, "existing statutes or regulations largely do not address how to manage wastes derived from PFOS/PFOA releases"); Ex. 10 to Decl. of Armando Eversley (ECF No. 4548-35), FF_ARM02_00011975 at 975 (explaining Army understanding as of June 2017 that "AFFF is not considered a hazardous waste and is not required to be treated as such during disposal").

relevant and mandatory, it is not specific because the statute identifies *what* federal agencies are to achieve, generally—i.e., compliance with requirements pertaining to water pollution—but not *how* the agencies are to achieve it. *Waverley View Invs., LLC v. United States*, 79 F. Supp. 3d 563, 571 (D. Md. 2015) (Blake, J.) (holding that the Court "need not decide" whether the CWA provisions were mandatory or applied to the Army's conduct because "none of the provisions were sufficiently specific to bind the Army" insofar as they did not provide "*specified* instructions" that the Army was compelled to follow); *see also Pornomo v. United States*, 814 F.3d 681, 691 (4th Cir. 2016) (only an "express[] proscri[ption]" that "flatly bar[s]" a "particular course of action" removes discretion); *Goldstar (Panama) S.A. v. United States*, 967 F.2d 965, 970 (4th Cir. 1992) (to restrict an agency's discretion, a federal directive must contain an "expressly articulated standard"); *In re Katrina Canal Breaches Litig.*, 616 F. App'x 659, 660–661, 661 n.2 (5th Cir. 2015) (per curiam) (dismissing claims based on CWA regulations under the DFE; noting that plaintiffs did not cite any language "that ordered the government to dredge in a particular manner" and concluding that the CWA's regulations "exhort but do not compel").

Plaintiffs also seem to argue that, although CWA Section 313 itself is not specific, it incorporates by reference state-law "requirements" that are—namely, "common-law tort principles." Opp'n at 37. Plaintiffs offer no authority that a common-law principle prohibiting "negligence" is specific for purposes of the DFE. There is no case, of which the United States is aware, adopting such a position. This makes sense, since "common-law tort principles" do not "*specifically* prescribe a course of action." *Berkovitz*, 486 U.S. at 536, *quoted in Waverley View*, 79 F. Supp. 3d at 573. Further, Plaintiffs must identify a mandatory and specific *federal* directive—state-law torts do not suffice. *Id.* ("[T]he discretionary function exception will not apply when a *federal* statute, regulation, or policy specifically prescribes a course of action for

an employee to follow" (emphasis added)); *Carroll v. United States*, 661 F.3d 87, 101 (1st Cir. 2011) ("State law cannot override the FTCA's grant of immunity for discretionary conduct."); *Sydnes v. United States*, 523 F.3d 1179, 1184 (10th Cir. 2008) ("Considering state tort law as a limit on the federal government's discretion at the jurisdictional stage impermissibly conflates the merits of plaintiffs' claims with the question whether the United States has conferred jurisdiction on the courts to hear those claims in the first place."); *accord Hall v. United States*, 149 F.3d 1183, 1998 WL 344050, at *3 (6th Cir. 1998) (per curiam) (unpublished table decision).

> 2.    *Step two of the DFE test is met because the challenged conduct was, objectively, grounded in policy considerations.*

Step two of the DFE is met if the decisions at issue are "of the kind that [DFE] was designed to shield," *Gaubert*, 499 U.S. at 322–23, meaning that the decisions are ones that "we would expect inherently to be grounded in considerations of policy," *Baum*, 986 F.2d at 721. This inquiry is objective. *Smith*, 290 F.3d at 208 (courts do not examine "whether policy considerations *were actually* contemplated" (emphasis original)). Step two is presumed to be met where, as here, there is no evidence of a relevant, federal, mandatory *and* specific directive that was violated. *Seaside Farm*, 842 F.3d at 858. Plaintiffs cannot, and do not, dispute that the military's decisions concerning whether, how, and when to use and handle AFFF in firefighting, hangar fire-suppression systems, emergency responses, and equipment testing all satisfy step two of the DFE analysis. Mot. at 44–48; *see* Opp'n at 29 (arguing that "nothing" in Plaintiffs' FTCA claims "take[s] any issue with the Government's past decisions regarding *which* fire-suppressant products to use (that is, the chemical composition of the products), *how often* to use them (e.g., the frequency of their use for training purposes), and *how many years* to keep using them, while exploring alternatives" (emphases original)).

Unable to refute this conclusion, Plaintiffs attempt to distinguish binding caselaw because it involved circumstances where the United States had "regulated private conduct" or "provided public services." Opp'n at 26; *id.* at 26–32. By contrast, Plaintiffs argue, the FTCA Complaints in this MDL simply challenge the United States' conduct as an "*owner or lessee of property*." *Id.* at 29–30 (emphasis original). Plaintiffs also argue that their claims involve "mundane matters of scientific and professional analysis in the specific field of water-pollution control" and "garden-variety negligence," which are not protected by the DFE. *Id.* at 37–50. Plaintiffs' theories are directly contrary to the factual allegations in Plaintiffs' FTCA Complaints and controlling law.

### a. Plaintiffs' "government regulator-versus-property owner" distinction is without a legal difference for purposes of the DFE.

Plaintiffs argue that the "principal" decisions cited in support of the Motion "involve the Government as the *regulator* of private conduct, or the *provider* of public goods or services"— contexts in which "it is inevitable that multiple policy factors will be taken into account by federal employees carrying out these public functions, so that the DFE is routinely found applicable." Opp'n at 26 (emphasis original). The FTCA Complaints are different, Plaintiffs assert, because they only challenge the military's conduct as an "owner or lessee of property"— an area of tort law in which the United States must "refrain from tortious activity harming others in the normal course of life." *Id.* at 29.

Like their trespass theory, Plaintiffs' putative property-owner carveout lacks any legal basis. Although some cases cited by the United States involved circumstances where the United States had regulated private conduct or provided public services, nothing in those decisions indicates that the scope of the DFE is limited to such situations. Courts in the Fourth Circuit— including this one—routinely apply the DFE to bar tort claims where the United States is sued as a property owner. *E.g.*, *Burrows*, 120 F. App'x at 449–50 (trespass and nuisance claims, based

on claims of excessive noise from neighboring post office); *Clendening v. United States*, 19
F.4th 421, 436 (4th Cir. 2021) (claim of failure to warn former military members who resided on
base housing about alleged contaminated water); *Wood*, 845 F.3d at 124–25, 129 ("premises
liability" claim brought by invitee to a Navy military base who was injured during training);
*Pieper v. United States*, 713 F. App'x 137, 138 (4th Cir. 2017) (per curiam) (claims alleging
harm from negligent disposal of hazardous materials from Army base); *Smith*, 290 F.3d at 212
(claim for failure to maintain escalator); *Oxendine v. United States*, 2009 WL 3757517, at *2, *5
(D.S.C. Nov. 9, 2009) (claims of private well contamination arising from TCE releases from
nearby Air Force base).[10]

    Plaintiffs cite several cases in support of their property-owner-carveout theory. Opp'n at
29–30. None are from the Fourth Circuit. More important, no cited case holds that the DFE is *per
se* inapplicable where the United States has been sued as a property owner. For example,
Plaintiffs rely on *Bolt v. United States*, 509 F.3d 1028, 1031 (9th Cir. 2007), where a plaintiff
slipped and fell on snow and ice at an Army apartment complex. The Ninth Circuit held that the
Army had violated a mandatory and specific military Snow Removal Policy, and that the
considerations underlying the Policy—principally budgetary constraints—were not policy-based.

---

[10] Plaintiffs attempt to distinguish *Pieper* and *Waverley View* on the ground that the CWA's
waiver of sovereign immunity, § 1323, put the military on "notice" of "its obligation to abide by
state-law requirements regarding water pollution." Opp'n at 31 n.19. However, whether the
military was on "notice" has nothing to do with the DFE inquiry. What matters to this Motion is
that the CWA does not contain a mandatory and specific directive that defeats the DFE.
*Waverley View*, 79 F. Supp. 3d at 571.
    The Fourth Circuit's rulings are consistent with a long line of cases applying DFE to bar
military waste disposal cases alleging contamination to adjacent landowners and/or personal
injury claims. *Aragon v. United States*, 146 F.3d 819, 827 (10th Cir. 1998); *In re Camp Lejeune
N.C. Water Contamination Litig.*, 263 F. Supp. 3d 1318, 1360 (N.D. Ga. 2016), *aff'd*, 774 F.
App'x 564 (11th Cir. 2019) (per curiam); *Loughlin v. United States*, 286 F. Supp. 2d 1, 2–3
(D.D.C. 2003), *aff'd*, 393 F.3d 155 (D.C. Cir. 2004); *Bolinder Real Estate, L.L.C. v. United
States*, 2002 WL 732155, at *8–9 (D. Utah Apr. 24, 2002).

*Id.* at 1032, 1033–34. *But see Lam v. United States*, 979 F.3d 665, 679 (9th Cir. 2020) (tree removal policy that provided budget and schedule for removing dead trees protected by DFE because park employee had discretion as to selection and timing of tree removal).

At most, the case law cited by Plaintiffs reflects that when a mandatory and specific directive is violated, the United States "is generally liable to the same extent as other property owners for personal injuries to invitees on federal property"—a proposition that is undisputed. *Gonzalez v. United States*, 690 F. Supp. 251, 253 (S.D.N.Y. 1988). Further, the Fourth Circuit *does* view budgetary constraints as a policy consideration. *Wood*, 845 F.3d at 130. Contrary to Plaintiffs' assertion, costs were one of many competing policy considerations the military weighed in its disposal decisions. *See, e.g.*, Walker Decl. (ECF No. 4548-67) ¶ 28; Ex. 14 to Walker Decl. (ECF No. 4548-85) p. A-12, § 7.1 & p. A-14, § 7.4 (discussing regulation that expressly discouraged shipping AFFF waste offsite as too costly and allowed for bases to choose from a variety of alternative disposal methods, including direct discharge to sanitary sewers).

> #### b. *Plaintiffs' claims challenge conduct far beyond "mundane matters of scientific and professional analysis" and "garden-variety negligence."*

Plaintiffs argue that step two is not met because their claims involve "mundane matters of scientific and professional analysis" and "garden-variety negligence," which do not implicate policy considerations. Opp'n at 37–50. According to Plaintiffs, only a decision made by the President of the United States could satisfy step two of the DFE in this case. *Id.* at 38, 39.

***Plaintiffs' "scientific and professional analysis" argument.*** As grounds for their "scientific and professional analysis" argument, Plaintiffs cite an excerpt from the deposition of CAFB's former Water Quality Program Manager and civil engineer, John Rebman. Opp'n at 37–39, 39 n.23. In 2002, Mr. Rebman authored an operating instruction (OI 32-11) for CAFB that

contained "policy and guidance for a myriad of people allowing a myriad of options and choices on how to deal with AFFF in the event . . . that AFFF was released." *See* Rebman Dep. Tr. (ECF No. 4551-16) 246:24–247:17. As discussed in the Site-Specific Motion to Dismiss (and Site-Specific Reply brief, filed contemporaneously herewith), Mr. Rebman's testimony demonstrates the discretion and policy considerations that underlay the Air Force's use, handling, and disposal of AFFF. Plaintiffs characterize Mr. Rebman as a "base-level bureaucrat[]" emblematic of unidentified "Government agents" who "wholly lack authority to consider matters of military necessity, or any other matters bearing on social, economic, or political policy." Opp'n at 37–38; *id.* at 39 (arguing that there is "nothing" to suggest that individual employees at CAFB were "involved in weighing environmental concerns against military concerns").

Plaintiffs miss the point. "'[I]t is the nature of the conduct, rather than the status of the actor' that governs whether the exception applies." *Gaubert*, 499 U.S. at 325 (quoting *Varig Airlines*, 467 U.S. at 813) (rejecting the very operational and planning distinction the Plaintiffs now urge). Therefore, it does not matter if Mr. Rebman—or any other federal employee, at Cannon or elsewhere—subjectively considered policy in deciding whether and how AFFF would be used, contained, and/or released into the environment at a given base. What matters to the analysis is that, *objectively*, the complex decision matrix reflected in OI 32-11—and in other military guidance concerning AFFF usage—implicated policy considerations of consequence to the DoD. Mot. at 44–48; Site-Specific Reply, filed herewith, at 8–10; *Gaubert*, 499 U.S. at 325 ("The focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by statute or regulation, but on the nature of the actions taken and on whether they are

24

susceptible to policy analysis.").[11]

In this argument, as in many others in their Opposition, Plaintiffs' position rests on an inaccurate characterization of their FTCA Complaints. Plaintiffs contend that their tort claims surround "the prosaic task of managing waste products," which is "ministerial" in nature. Opp'n at 40. That argument rests on a mischaracterization of Plaintiffs' own allegations, which expressly and implicitly challenge the military's programmatic decisions regarding whether, when, and how to use and handle AFFF, particularly fire training. *See supra* at 16–17. These decisions are anything but "ministerial." Indeed, the United States' Motion to Dismiss detailed, in 20+ pages of undisputed jurisdictional facts, the risks, benefits, resources, harms, and other complexities entailed in the DoD's use, handling, **and disposal** of AFFF, dating back to the 1970s. Mot. at 4–25. It strains credulity to describe these decisions as ministerial and akin to the decision whether to erect guardrails and otherwise maintain a curvy road. *See* Opp'n at 40–42 (discussing Ninth Circuit caselaw).

***Plaintiffs' "garden-variety negligence" argument.*** Plaintiffs' final effort to avoid the DFE appears on pages 42–50 of the Opposition, where they insist that certain (unidentified) allegations in the "Dairy Plaintiffs'" FTCA Complaints allege mere "garden-variety negligence"

---

[11] None of the cases on which Plaintiffs seemingly rely—albeit, only in passing in a footnote (Opp'n at 39 n.23)—are to the contrary. *Berkovitz* was a facial (not factual) motion to dismiss that involved a plaintiff who had contracted polio after vaccination and who contended that the vaccine had been improperly licensed. 486 U.S. at 533, 540. The Supreme Court remanded and held that if the plaintiff's contention were that the agency failed to take certain *statutorily required* steps before certifying the vaccine lot, that conduct would not be subject to DFE; however, if the agency performed the requisite steps but erroneously certified the vaccine anyway, that conduct would be protected because the agency regulations gave employees latitude on vaccine certification decisions. *Id.* at 534–35. *Berkovitz* simply indicates that the DFE does not protect a violation of a mandatory and specific statute. No federal mandatory and specific directive applied to the challenged conduct in this case. *Supra* § II.C.1. The remaining cases in Plaintiffs' footnote 23 are out-of-circuit and inapposite.

that does not implicate policy. Specifically, Plaintiffs argue that unidentified federal employees'
"lack of care" "resulted in releases of large amounts of AFFF, contaminating neighbors'
property—releases which, because of their accidental nature, cannot plausibly be portrayed as
the deliberately intended product of a 'policy' choice." Opp'n at 42.

     Plaintiffs conflate the merits of their claims with the Court's subject-matter jurisdiction.
The DFE immunizes discretionary governmental conduct, "whether or not the discretion
involved be abused." § 2680(a). Therefore, negligence is "irrelevant" to DFE. *Baum*, 986 F.2d at
722 n.2. To the extent Plaintiffs argue individual acts of negligence can never satisfy step two,
they are wrong. A "mistake" is still protected by the DFE where, as here, it was made in the
broader context of a discretionary and policy-based decision (i.e., how to dispose of AFFF). Mot.
at 45–46 (discussing *Wood*, 845 F.3d 123); *Berkovitz*, 486 U.S. at 545–46.

     The decisions in *Reynolds v. United States*, 2015 WL 12817676 (D.S.C. Aug. 14, 2015)
(Gergel, J.), *Gotha v. United States*, 115 F.3d 176 (3d Cir. 1997), and *Rich v. United States*, 811
F.3d 140 (4th Cir. 2015), do not support Plaintiffs' argument. Opp'n at 42–45. In *Reynolds*, a
simple slip-and-fall case, this Court held that the decision whether to use mats in a walk-in
cooler did not implicate policy concerns sufficient to satisfy step two. 2015 WL 12817676, at
*4–5. As for *Gotha* (another slip-and-fall case), the Third Circuit limited *Gotha* to situations
where a government agent failed to take "garden-variety remedial steps" to guard against a
"specific risk" of which the United States was aware. *Clark v. Sec'y of U.S. Navy*, 102 F.4th 658,
662 (3d Cir. 2024) (quoting *S.R.P. ex rel. Abunabba v. United States*, 676 F.3d 329, 338 (3d Cir.
2012)) (acknowledging that its holding in *Gotha* is "hard to justify" and clarifying that the
"garden-variety" carveout "applies only to truly mundane problems, such as failures to install
lights, stairways, or railings"). But the AFFF MDL is not a slip-and-fall case, and Plaintiffs spent

the first two years of this litigation arguing that the government was not aware of the specific

risks the manufacturers' products posed. *E.g.*, ECF No. 2063. Moreover, the policy concerns

implicated by the military's decades-long use of AFFF go far beyond "budgetary concerns." *See*

*Reynolds*, 2015 WL 12817676, at *5; *Aragon*, 146 F.3d at 824–25 (while plaintiffs characterized

the conduct at issue as "run[ning] its TCE-laden waste water in an open ditch," the court

reframed the challenged conduct as a policy-based decision "to place security and military

concerns above any other concerns").

Finally, in *Rich*, the plaintiff was a prisoner who alleged that prison officials did not

adequately protect him from other inmates. 811 F.3d at 141–42. The Fourth Circuit remanded for

discovery—there had not been any, and plaintiffs had evidence that a specific policy existed on

the issue of whether the officials properly searched the inmates for weapons. *Id.* at 142. In dicta,

the Fourth Circuit opined that the plaintiff "may" be able to establish jurisdiction if the officials

were "carelessly inattentive." *Id.* at 147 (quoting *Coulthurst v. United States*, 214 F.3d 106, 110

(2d Cir. 2000)). *But see, e.g.*, *Bulger v. Hurwitz*, 62 F.4th 127, 144–45 (4th Cir. 2023) (limiting

*Rich*). Plaintiffs in this MDL have had five years to prove that their claims are mere "garden-

variety" negligence predicated on "careless inattentiveness." There is absolutely nothing in the

record to support any such proposition—assuming it is legally sound.

### III.    After Five Years of Exhaustive Discovery, which They Chose Not to Review, Plaintiffs Are Not Entitled to a Fishing Expedition to Find Facts that Might Hypothetically Support Jurisdiction.

Plaintiffs' assertion that the United States has "obstruct[ed]" their fact-finding is

demonstrably inaccurate. Opp'n at 51. Since the first case against the United States was

transferred into the MDL in 2019, the United States has searched for, collected, reviewed, and

produced documents from approximately twelve different agencies. Decl. of Haroon Anwar

(ECF No. 4548-4) ¶¶ 2–3. The United States' efforts included extensive custodial searches, based on broad terms. *Id.* ¶¶ 2, 4. The United States searched for documents concerning, but not limited to, (1) the research, testing, and procurement of AFFF; (2) the military's use of AFFF in actual fire or emergency situations; (3) the disposal of any wastes, spent fuel, or AFFF discharged during fire training exercises or during actual fire events or emergencies; (4) the fate and transport of PFAS in the environment; and (5) AFFF instructions and/or warnings. *Id.* ¶ 4. The United States' document searches encompassed sites or military bases at issue in cases against the United States. *Id.* ¶ 7. These efforts yielded productions totaling over 675,000 documents and 11 million pages, bearing on both jurisdictional and merits issues. *Id.* ¶¶ 3, 8. This figure does not include the detailed declarations with lengthy exhibits from key U.S. witnesses, some of whose depositions lasted two days. *Id.* ¶ 10. Nor does it include the publicly accessible CERCLA administrative records.

This Court has repeatedly acknowledged the extent of the United States' efforts, which—given its immunity from litigation in these cases—is remarkable. *E.g.*, Apr. 24, 2024 Hr'g Tr. 39:19–24. Nonetheless, when, in 2022, the United States indicated it was prepared to brief the global jurisdictional issues, Plaintiffs claimed the record was insufficient. Therefore, the Court gave Plaintiffs an *additional* 120 days to take site-specific discovery of CAFB—predicated on Plaintiffs' express promise to first review the existing record. CMO 25 (ECF No. 3030) ¶ D. **Plaintiffs openly admit that, in five years—and contrary to CMO 25—they have not reviewed the United States' productions.** Opp'n at 59 n.35.

This was Plaintiffs' opportunity to identify directives that had not been previously produced, and the existence of which could, in theory, establish subject-matter jurisdiction under the FTCA. *See* Anwar Decl. ¶ 9. Plaintiffs failed. Now, they ask for a discovery do-over. Opp'n

at 51–59. Specifically, Plaintiffs ask the Court to allow site-specific discovery for the 23 lawsuits that encompass at least two dozen additional military installations. *See* App'x A to Mot. (ECF No. 4548-2). Plaintiffs' request is unjustified and defies binding law. *Bulger*, 62 F.4th at 144 (rejecting plaintiff's argument "that some 'unknown facts and policies' potentially revealed through discovery 'could very well directly impact the FTCA claims'").

Beyond contending that the United States has obstructed discovery, which the record disproves, Plaintiffs offer three bases for their putative fishing expedition. None has merit.

*First*, Plaintiffs observe that jurisdictional discovery is important where "the record" contains information "suggest[ing]" that more specific documents exist. Opp'n at 52. But no evidence in this case hints at such a document. Given 120 days to pursue more discovery from CAFB, Plaintiffs came up with one document, which was produced years ago, before any additional site-specific discovery was ever contemplated. Anwar Decl. ¶ 9. Plaintiffs also claim to have found a 2010 Eielson Air Force Base instruction "through no help from the Government" (Opp'n at 54 & n.33) when, in reality, the document is publicly available and the United States produced a similar document containing identical language in August 2020, in production FF_P_0031. Plaintiffs also cite NPDES permits for Joint Base Lewis-McChord and Naval Air Station Whidbey Island, *id.* at 55, which are also publicly available.[12] *Second*, Plaintiffs argue that more discovery is needed because jurisdiction and the merits are intertwined. *Id.* This is wrong. Deciding whether mandatory and specific directives existed is distinct from the issue of

---

[12] These documents do not support subject-matter jurisdiction under the DFE. Instead, they confirm the Motion's point that the military was concerned with excess foaming and other characteristics that could interfere with the wastewater treatment plant's efficacy—not with environmental risks of PFAS-containing AFFF. *E.g.*, Mot. at 9. In addition to not being "specific" for purposes of DFE step one, these two documents have no nexus, whatsoever, to Plaintiffs' claims or jurisdiction in this case. Plaintiffs seem to concede this, as they did not cite any of these documents in their argument regarding DFE step one.

whether government employees negligently handled AFFF. *Seaside Farm*, 842 F.3d at 861.

Moreover, the United States' millions of pages of discovery to date are not limited to

jurisdictional issues. Plaintiffs *third* argument—that more discovery is necessary to "uncover the

history and circumstances of uncontrolled releases of AFFF into the environment from each

military installation at issue" (Opp'n at 56)—fails for the same reason. *Supra* at 25–27

(explaining why Plaintiffs' "garden-variety" negligence theory is meritless).[13]

## CONCLUSION

"The value of any kind of immunity, applied here as a jurisdictional bar, declines as

litigation proceeds." *Seaside* Farm, 842 F.3d at 861. Although the United States appreciates and

is eager to work towards resolution of viable CERCLA response cost claims, we respectfully

urge the Court to rule expeditiously on the instant Motion. **To be clear: the viability of relief**

**under CERCLA does not make this Motion any less meritorious, or consequential.** There is

no subject-matter jurisdiction over the FTCA claims, and their continued pendency irreparably

harms the immunity to which the United States has been entitled since these cases were brought

in 2019. For these reasons, the United States' Motion to Dismiss should be granted, and the

FTCA claims in the 27 Complaints listed in Appendix A to the Motion to Dismiss (ECF No.

4548-2) should be dismissed in their entirety as against the United States. The Court should also

dismiss the FTCA Plaintiffs' inverse condemnation claims, as Plaintiffs now concede they were

improperly brought. Opp'n at 63, 64.

---

[13] The United States addressed Plaintiffs' remaining arguments (Opp'n Part V at 59–65) in its
Motion and rests thereon.

Dated: August 16, 2024                    Respectfully submitted,

                                          J. PATRICK GLYNN
                                          Director

                                          CHRISTINA FALK
                                          Assistant Director

                                          MARIANNE F. KIES
                                          HAROON ANWAR
                                          DAVID HAMMACK
                                          Trial Attorneys

                                          /s/ Christina Falk
                                          CHRISTINA FALK
                                          United States Department of Justice
                                          Civil Division, Torts Branch
                                          Environmental Tort Litigation
                                          1100 L Street, NW
                                          Washington, DC 20005
                                          Phone: 202-616-4216
                                          E-mail: Christina.Falk@usdoj.gov

### CERTIFICATE OF SERVICE

I hereby certify that on August 16, 2024, a copy of the foregoing was filed via the Court's ECF system and served on counsel of record through the ECF system.


Dated:  August 16, 2024                    /s/ Christina Falk
                                           CHRISTINA FALK