# EXHIBIT 1

i

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| IN RE: AQUEOUS FILM-FORMING FOAMS PRODUCTIONS LIABILITY LITIGATION | ) ) ) ) ) ) | MDL No. 2:18-mn-2873-RMG<br><br>This Document Relates to:<br>ALL CASES |

**PLAINTIFFS' SUR-REPLY BRIEF IN FURTHER
OPPOSITION TO THE GOVERNMENT'S
OMNIBUS MOTION TO DISMISS BASED ON
THE DISCRETIONARY-FUNCTION EXCEPTION**

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................... 1

I.    THE WAIVER PROVISION IN CWA § 313 OPERATES
      ENTIRELY INDEPENDENT OF THE FTCA, TO PERMIT
      PLAINTIFFS TO PURSUE THEIR FREESTANDING
      STATE-LAW TORT CLAIMS AGAINST THE GOVERNMENT ........................ 1

      A.    One "Requirement" of State Tort Law as to Which Immunity is Waived
            by CWA § 313 is the Requirement That Damages Be Paid for a Breach.................. 3

      B.    That Plaintiffs Cannot Seek Compensatory Damages
            Under the CWA's "Citizen-Suit" Section is Not
            Relevant to the Government's Motion to Dismiss........................................... 6

      C.    That Plaintiffs May Not "Mix and Match" a Substantive Claim
            Under the FTCA With an Immunity Wavier in a Separate
            Statute is Not Relevant to the Government's Motion to Dismiss ............................... 8

II.   INDEPENDENTLY, THIS COURT HAS SUBJECT-MATTER JURISDICTION
      OVER THE 19 CASES ALLEGING TRESPASS, GIVEN CONGRESS'S
      CATEGORICAL WAIVER OF IMMUNITY ON TRESPASS CLAIMS .............................. 9

      A.    As the Supreme Court Concluded in 1953, the FTCA Categorically
            Waives the United States' Immunity Against Trespass Claims................................. 10

      B.    All Appellate Decisions Analyzing the Issue Have Uniformly Adhered to
            to Supreme Court Precedent Recognizing That the FTCA Categorically
            Waives Immunity on Common-Law Trespass Claims ............................................... 13

      C.    The Government Has Unearthed Only Two Decisions, by District
            Courts, Rejecting the Analysis of the FTCA Advocated by Plaintiffs Here............... 14

CONCLUSION............................................................................................................................ 15

# INTRODUCTION

Plaintiffs respectfully submit this sur-reply brief, which is limited to two issues that the Government addressed for the first time in its reply brief (ECF No. 5621 at 5-15).

**I.    THE WAIVER PROVISION IN CWA § 313 OPERATES ENTIRELY INDEPENDENT OF THE FTCA, TO PERMIT PLAINTIFFS TO PURSUE THEIR FREESTANDING STATE-LAW TORT CLAIMS AGAINST THE GOVERNMENT**

The first waiver argument set forth in Plaintiffs' brief, see Pl. Opp. Mem. at 11-17, can be boiled down to five propositions. Only the last one is contested by the Government. Plaintiffs' argument is squarely based on the plain language of Section 313 of the Clean Water Act ("CWA"), 33 U.S.C. § 1323(a), which the U.S. Supreme Court has termed the "federal-facilities" section. *U.S. Dept. of Energy v. Ohio*, 503 U.S. 607, 620 (1992). As the Court has made clear, this section functions entirely independent of the CWA's "citizen-suit" section. *Id*. at 613; see also **Part I-B**, *infra*. It also functions entirely independent of the jurisdictional and immunity provisions of the FTCA. See **Part I-C**, *infra*. Therefore, if Plaintiffs' state-law claims fall within the immunity waiver provision in CWA § 313, this Court has subject-matter jurisdiction *regardless* of whether it would have subject-matter jurisdiction under the FTCA.

The five propositions underlying Plaintiffs' CWA § 313 argument are as follows:

First, the military bases and other properties implicated in Plaintiffs' complaints are obviously **"federal facilities"** as defined by Section 313.

Second, the relevant federal agencies are alleged to have engaged in activity which resulted "in the **discharge or runoff of pollutants**," an additional reason why Plaintiffs' state-law tort claims fall under Section 313.[1]

---

[1] *See, e.g.,* Complaint, *Schaap v. United States*, Case No. 2:19-cv-03288-RMG (D. S. Car.), ECF No. 1, ¶¶ 5-8, 31-33, 88, 91, 101, 122-125, 141-145.

1

Third, Plaintiffs' complaints plead various **violations of state tort law**. Consider, for example, the complaint in the exemplar lawsuit, brought by Art and Renee Schaap. It sets forth freestanding allegations (with *no* reference to the Federal Tort Claims Act) that the Government's actions at Canon Air Force Base violated the tort law of New Mexico, specifically, violations of its duty owed neighbors not to trespass, or to cause harm through negligence, or to create a public or private nuisance.[2]

Fourth, the Government concedes, as it must, that this "federal-facilities" section of the CWA effects **a waiver of sovereign immunity** regarding *freestanding* lawsuits based on state tort law (that is, lawsuits not brought under the FTCA, which merely incorporate state substantive law as a component of the federal-law claim). The plain language of CWA § 313 compels this conclusion. It states, in relevant part, that the Government "shall be subject to, and comply with, all . . . State . . . requirements . . . respecting the control and abatement of water pollution in the same manner, and to the same extent as any nongovernmental entity . . . ." Emphasizing the broad nature of the waiver, it continues, in sweeping language (added by Congress in 1977, rejecting the Supreme Court's narrow reading of the original language), by stating that the waiver encompasses "*any* requirement whether substantive or procedural"—"*any* requirement . . ., *whatsoever*"—and that this broad waiver of immunity on lawsuits targeting water pollution "shall apply notwithstanding *any* immunity" the Government enjoys "under *any* law or rule of law." Pl. Opp. Mem. at 12-13 (quoting Section 313) (all emphasis added).

---

[2] Pl. Opp. Mem. at 9-10 (citing Complaint, *supra* note 1, ¶¶ 136-150 (trespass), 94-114 (negligence), 115-135 (public and private nuisance). Other complaints, to the degree they allege only federal-law, FTCA claims (incorporating state law by reference), obviously can be repleaded to present freestanding state-law claims, similar to the Schaap complaint, as noted in Pl. Opp. Mem. at 16-17, note 12. The Government does not contest this procedural point; it merely asserts (incorrectly) that repleading would be substantively "futile." Govt. Reply at 8.

2

Fifth and finally, Plaintiffs contend, one of the "**requirements**" of state tort law as to which immunity has been waived is the requirement that if a defendant has *breached its duty* to the plaintiff, the defendant is *required to pay damages* for the injuries proximately caused by that breach. Pl. Opp. Mem. at 13-16. This is the only aspect of Plaintiffs' argument contested by the Government. And here it has very little to say in opposition, a point to which we now turn.

### A. One "Requirement" of State Tort Law as to Which Immunity is Waived by CWA § 313 is the Requirement That Damages Be Paid for a Breach

For clarity, in analyzing the scope of the waiver of immunity contained in CWA § 313, imagine for a moment that there was no provision for a federal-law citizen suit under the CWA, and that the FTCA did not exist, so that the *sole* basis for suit by Plaintiffs was a lawsuit based on state tort law benefitting from the immunity waiver contained in CWA § 313. (We will next show, in **Part I-B** and **Part I-C**, that the possibility of alternate remedies under the "citizen-suit" section of the CWA, or the FTCA, does not alter the analysis.) The only question to be resolved here is whether the demand in Plaintiffs' complaints, that the Government pay damages for the water pollution caused by activities at its facilities, constitutes a "requirement" of state tort law within the meaning of CWA § 313.

The answer, as set out in Pl. Opp. Mem. at 13-16, is obvious: **Yes**."

As the Government does not dispute, Fourth Circuit precedent requires that in construing the word "requirement" (in the specific context of an immunity waiver) a court "must accord the term its 'ordinary, contemporary, common meaning, absent an indication Congress intended [it] to bear some different import." *North Carolina ex rel. Cooper v. TVA*, 515 F.3d 344, 351 (4th Cir. 2008) (quoting *Markovski v. Gonzales*, 486 F.3d 108, 110 (4th Cir. 2007)). Applying this rule, the Fourth Circuit observed that "[i]n common parlance, 'requirement' means '[s]omething

3

that is required; something obligatory.' 'Require,' in turn, means '[t]o impose an obligation on; compel.'" *Id*. (quoting *American Heritage Dictionary* 1050 (2d coll. ed. 1991)).

This ordinary dictionary definition would be, on its own, sufficient for Plaintiffs to prevail, as the obligation of a defendant found liable for a tort to pay damages is obviously one requirement of state law. Further, controlling case law supports Plaintiffs' position. In the *TVA* case, the Fourth Circuit buttressed its view of the ordinary meaning of the word "requirement" by citing two U.S. Supreme Court decisions (including one decision involving a statute enacted prior to the CWA) squarely holding that the obligation to pay damages under state tort law constitutes a "requirement" under federal statutes, even in the context of preemption, where the Court applies a presumption that the term should be construed narrowly, so as to avoid unduly broad preemption of state law. *Id*. at 351-52 & n.8 (citing *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 521 (1992), and *Medtronic, Inc. v. Lohr*, 518 U.S. 470 (1996)).

This case law was covered in Pl. Opp. Mem. at 14-16, and the Government does not take issue with it. The Government does not even mention the *Cipollone* decision.

Rather, the Government simply asserts that this detailed analysis by the Fourth Circuit, of the meaning of the word "requirement" in the specific context of a statutory waiver of immunity from lawsuits predicated on state law, is somehow irrelevant, because the federal entity sued in the *TVA* case was not sued for damages—the plaintiff there was "**seeking an injunction** prohibiting the TVA from operating its powerplants in a harmful manner." Govt. Reply Br. at 10 (citing 515 F.2d at 347) (emphasis in original). *See also id*. at 11 ("Plaintiffs seek *money damages* as opposed to injunctive relief—from the United States itself, not a corporate entity distinct from the government.") (emphasis in original).

But this is a distinction without a difference. Nowhere in its decision did the Fourth Circuit suggest that the definition of a "requirement" under state law might vary depending on

4

the particular relief sought in a lawsuit invoking state law, or depending on the particular federal entity involved. Indeed, both Supreme Court cases it cited specifically held that the obligation to pay damages under state law constitutes a "requirement" of state law. Most tellingly, in a footnote overlooked by the Government, the Fourth Circuit specifically rejected TVA's argument that the definition of "requirement" might vary depending on the relief sought. *TVA*, 515 F.2d at 352 n.5 ("The fact that North Carolina seeks to hold the TVA liable in tort by seeking injunctive relief rather than damages does not lessen *Cipollone*'s relevance here. *Cipollone* itself noted that a state requirement can be manifested in damages and 'preventive relief.'").

The only other ground offered by the Government for ignoring the Fourth Circuit's explication of the term "requirement"—in a decision that construed an immunity waiver in a statute containing language identical to CWA § 313—is unavailing. The Government points out that the *TVA* case happened to involve a "sue-and-be-sued" clause, and it points out that waivers based on such clauses are liberally construed. Govt. Reply Br. at 10-11. Evidently the Government is implying that the Fourth Circuit's definition of "requirement" in the *TVA* case may have somehow been influenced by that feature of the case. But there is no hint in Fourth Circuit's decision that it was *broadly* construing the term "requirement," to effect a liberal scope of the immunity waiver. To the contrary, the Fourth Circuit noted that it was applying the definition of "requirement" that the Supreme Court had explicated in a context requiring that the term be *narrowly* construed. 515 F.2d at 351-52 & n.8.

In sum, as to all claims by Plaintiffs that have been or can be pleaded as freestanding state-law tort claims, under CWA § 313 the Government is barred from claiming immunity.

The Government also suggests that Plaintiffs' ability to benefit from the waiver provision set out CWA § 313 is somehow impacted by the separate section of the CWA authorizing citizen

5

suits, or by the FTCA. This argument is baseless, because it is clear that all three statutory provisions involved—the "federal-facilities" section and the "citizen-suit" section of the CWA, as well as the FTCA—make *separate* provision for lawsuits in federal court, each with *its own* immunity waiver, so that each type of lawsuit, and the concomitant immunity issues, must be separately analyzed.

### B. That Plaintiffs Cannot Seek Compensatory Damages Under the CWA's "Citizen-Suit" Section is Not Relevant to the Government's Motion to Dismiss

Faced with Plaintiffs' showing that for lawsuits predicated on *state* law, CWA § 313 waives immunity on claims for compensatory damages, the Government's first rejoinder is that an entirely separate section of the CWA—the "citizen-suit" section, 33 U.S.C. § 1365(a)—does not provide for the recovery of compensatory damages under *federal* law. Govt. Reply Br. at 6-8. This analysis is irrelevant to the remedies available under *state* law that are authorized by CWA § 313. As the Supreme Court has noted, these separate provisions of the CWA each have their own unique remedies and immunity waivers. *U.S. Dept. of Energy v. Ohio*, 503 U.S. 607, 613-20 (1992). That Plaintiffs cannot seek compensatory damages under *federal* law is simply not relevant to whether Plaintiffs can seek compensatory damages via an entirely separate *state-law* claim.

The Government correctly cites *Middlesex Cnty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 13-15 (1981), as holding that because Congress authorized private citizens to obtain only injunctive relief via citizen suits, a court may not on its own imply the existence of a federal-law right to obtain damages under the "citizen-suit" section. Rather, a court is "compelled to conclude that Congress provided precisely the remedies it considered appropriate." *Id.* at 15. Based on the *Sea Clammers* holding, the First Circuit subsequently held that a plaintiff may not "sue under the FTCA for alleged CWA violations," because that, too,

6

would conflict with Congress's determination to permit only *injunctive* relief in citizen suits invoking the CWA as substantive federal law. *Sanchez v. United States*, 671 F.2d 86, 94-95 (1st Cir. 2012) (cited in Govt. Reply Br. at 8).

But Plaintiffs are *not* engaging in any such sleight of hand, in some sort of effort to add to the remedies available in a CWA citizen suit. As the Government acknowledges, only one of the 27 complaints filed by Plaintiffs invokes the CWA as substantive federal law, and that lawsuit seeks only injunctive relief.[3] Rather than claiming that the CWA, as federal *substantive* law, permits them to seek damages for water pollution, Plaintiffs' argument is that state substantive law permits them to seek damages, and that federal *procedural* law, set forth in CWA § 313, waives the immunity the Government would otherwise enjoy against such state-law claims.

That Plaintiffs' ability to sue the Government for damages under state tort law is entirely independent of both the "citizen-suit" section of the CWA, and the FTCA, is made clear by the fact that Plaintiffs are not even required to file their state-law claims in federal court. Take, for example, the exemplar complaint filed by Art and Renee Schaap (see note 1, *supra*). With the CWA § 313 waiver in hand, the Schaaps could have filed their lawsuit in New Mexico state court (although the Government would then have been entitled to remove, as explicitly provided for in CWA § 313 itself). This point vividly illustrates that Plaintiffs' state-law claims are in no sense a creature of federal law (that is, they are not federal claims that incorporate state law). They are state-law claims that Congress has permitted to go forward, based on the waiver set forth in CWA § 313, in whatever court Plaintiffs wish to file them.

---

[3] *See* Govt. Reply Br. at 5, note 3 (*City of Newburgh* complaint). The other complaint, in *H54b Inc. DBA Moose Creek*, merely cites CWA § 313's waiver provision. *Id*. at 5.

7

### C. That Plaintiffs May Not "Mix and Match" a Substantive Claim Under the FTCA With an Immunity Wavier in a Separate Statute is Not Relevant to the Government's Motion to Dismiss

The Government's final argument is that Plaintiffs "cannot establish jurisdiction by mixing and matching the FTCA waiver with the CWA waiver." Govt. Reply Br. at 8. Here, Plaintiffs agree with the two legal points made by the Government, but neither point is relevant to the Government's motion to dismiss Plaintiffs' freestanding state-law claims which, given the waiver in CWA § 313, are not subject to immunity. Plaintiffs do not depend on any "mixing and matching" of a claim under the FTCA with the waiver element of any other federal statute.

The main case cited in support of the Government's "mix and match" objection is *United States v. Bormes*, 568 U.S. 6 (2012). Plaintiff Bormes brought a class action against the Government alleging a violation of the Fair Credit Reporting Act, but rather than establish an immunity waiver in the Act itself (an issue the lower courts did not reach), he sought to match his substantive claim under this *specialized* statute with the immunity provision in a *general* statute, the Little Tucker Act, 28 U.S.C. § 1346(a)(2). *Id*. at 7-11. This, Justice Scalia held for a unanimous Court, was impermissible: "Where, as in FCRA, a statute contains its own self-executing remedial scheme, we look only to that statute to determine whether Congress intended to subject the United States to damages liability." *Id*. at 11.

Of course, Plaintiffs are fully compliant with this holding. As summarized in **Part I-A**, *infra*, Plaintiffs are asserting freestanding state-law tort claims as to which the Government has waived immunity under CWA § 313. Plaintiffs do not ask this Court to look to any other statute in determining that Congress intended to subject the United States to damages liability for water pollution caused by operations on federal facilities.  CWA § 313, by itself, establishes that.

The Government's only other point is to reiterate that under the "citizen-suit" section of the CWA, the recovery of money damages "is precluded by the clear statutory language." Govt.

8

Reply Br. at 10. Again, Plaintiffs concur, but this point is irrelevant. Plaintiffs are not suing for money damages under *federal* law via a citizen suit. They are suing for money damages under *state law*, invoking the clear statutory language in CWA § 313, which requires the Government to comply with "any requirement" of state law respecting water pollution, "whatsoever"— including the requirement to pay damages for a breach of a duty under tort law—and specifying that this mandate "shall apply notwithstanding any immunity" the Government enjoys "under any law or rule of law." See p. 2, *supra*.

**II.     INDEPENDENTLY, THIS COURT HAS SUBJECT-MATTER JURISDICTION OVER THE 19 CASES ALLEGING TRESPASS, GIVEN CONGRESS'S CATEGORICAL WAIVER OF IMMUNITY ON TRESPASS CLAIMS**

The second waiver argument set forth in Plaintiffs' brief, see Pl. Opp. Mem. at 18-25, rests on three main propositions. The Government does its best to avoid confronting them, focusing on lower court decisions having little, if anything, to do with the core analysis. We summarize, and further defend, these three main points as follows:

In **Part II-A**, we summarize our argument based on the *structure* of the FTCA, in particular, its two distinct immunity waivers (one for "negligent" conduct, the other for "wrongful" conduct) and the two separate sections cutting back on these distinct waivers. Here we show that there is no logical basis for construing the discretionary function exception ("DFE"), involving "negligent" conduct, as having any relevance to a common-law trespass claim, involving "wrongful" conduct. This reading of the plain language of the FTCA is buttressed by the Supreme Court's reliance on legislative history to conclude that Congress clearly meant to *categorically* waive immunity on all claims involving common-law trespass.

In **Part II-B**, we show that, contrary to the Government's assertions, the federal circuit court decisions that have applied the Supreme Court's decisions addressing trespass claims under the FTCA have consistently recognized this categorical waiver of immunity. In particular, the

9

Fifth Circuit has reaffirmed its holding that the DFE *does not apply at all* to the intentional wrongs not involving negligence on which Congress has seen fit to categorically waive immunity. The Government is unable to cite even one circuit court holding to the contrary.

In **Part II-C**, we then summarize that, with only two exceptions, in none of the district court decisions relied on by the Government in which trespass claims were dismissed based on sovereign immunity did the plaintiffs make the argument Plaintiffs are making here (and both decisions were poorly reasoned; indeed, they each violated controlling circuit precedent).

### A. As the Supreme Court Concluded in 1953, the FTCA Categorically Waives the United States' Immunity Against Trespass Claims

Before revisiting the Supreme Court's analysis of the legislative history of the Federal Tort Claims Act, it is worth emphasizing how the structure of the statutory provisions defining both the waiver of immunity and exceptions thereto support Plaintiffs' argument based on the plain language of the FTCA. In the core waiver section, Congress explicitly distinguished between its waiver of immunity to lawsuits based on an employee's "**negligent**" act or omission and its waiver of immunity to lawsuits based on an employee's "**wrongful**" act or omission. 28 U.S.C. § 1346(b)(1). Exceptions to these separate waivers were set forth in distinct subsections.

The main exception to the waiver regarding **negligence** is set forth in the DFE, 28 U.S.C. § 2680(a), which specifies that there is no waiver if the negligent act or omission occurred in the performance of a "discretionary function or duty," even if "the discretion involved [is] abused."

That the DFE only functions to cut back on Section 1346(b)(1)'s waiver of immunity involving "negligent" conduct, and not "wrongful" conduct, is made clear from 28 U.S.C. § 2680(h), which cuts back on the waiver regarding wrongful conduct *not* involving negligence (with some exceptions, "assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights").

10

From the manner in which the exceptions to waiver are structured in the FTCA, the conclusion based on the plain language of the statute is obvious: **(1)** Section 1346(b)(1) waives immunity for "wrongful" conduct, including common-law trespass; **(2)** trespass is obviously not "negligent" conduct, so the DFE (Section 2680(a)), which only pertains to conduct involving some aspect of negligence, is therefore inapplicable to trespass claims; **(3)** Section 2680(h), which cuts back on the waiver regarding "wrongful" conduct, does not mention trespass; and therefore, **(4)** with respect to trespass, the Section 1346(b)(1) waiver stands, and trespass is categorically excluded from immunity under the FTCA.

Plaintiffs' opening brief explained why it makes no sense to look to the DFE in Section 2680(a), involving negligence, to view it as cutting back on a waiver of immunity on claims involving "wrongful" conduct *not* involving negligence (i.e., intentional or strict liability torts). Pl. Opp. Mem. at 19-20. The Government ignores our textual argument, calling it "a red herring," and asserting that the DFE applies to every imaginable claim. Govt. Reply Br. at 12.

The Government completely ignores our point that it is oxymoronic to even inquire into whether an official can have "discretion" to commit a trespass, as the rule against trespass is a paradigmatic example of a bright-line "property rule" which applies mechanically, denying the defendant any range of discretion. Pl. Opp. Mem. at 20, note 16. On its face, the DFE controls claims based on negligence, so it would make no sense to apply it to a claim of common-law trespass, which of course has no negligence component. "Trespass is a strict liability tort, 'both exceptionally simple and exceptionally rigorous.'" *Boring v. Google Inc.*, 362 Fed. App'x 273, 280 (3d Cir. 2010) (quoting William R. Prosser, *Law of Torts* 63 (4th ed. 1971)). Under the common law of trespass in New Mexico (the applicable law for the state-law claims involving Canon AFB), "strict liability . . . irrespective of negligence," applies. *Thigpen v. Skousen & Hise*, 327 P.2d 802, 804-05 (N.M. 1958); *see also* Pl. Opp. Mem. at 9-10 & note 4.

Even if this were not the only plausible reading of the plain language of the FTCA (we submit it is), the central significance of the Supreme Court's decision in *Dalehite v. United States*, 346 U.S. 15 (1953), is that, during an era in which the Court still scrutinized legislative history as a chief means of determining congressional intent, the Court concluded that in enacting Section 1346(b)(1), Congress *specifically intended* to waive immunity for common-law trespass. *Id*. at 45 (citing *Hearings before a Subcommittee of the Senate Committee on the Judiciary* on S. 2690, 76th Cong., 3d Sess. 43-44 (1940)).

In *Hatahley v. United States*, 351 U.S. 73 (1956), of course, the Court built on that interpretation of Section 1346(b)(1) to hold the Government subject to liability for its destruction of horses owned by Navajo Indians, which had not been abandoned. *Id*. at 177, 179. Viewing Section 1346(b)(1) as a *categorical* waiver of immunity, triggered by the trespass itself, the Court set aside the DFE as irrelevant: there was no point to asking whether the government agents had been exercising a "discretionary function," given that "[t]hese acts were wrongful trespasses not involving discretion on the part of the agents . . . ." *Id*. at 181. The liability holding in *Hatahley* squarely relied on the FTCA's categorical waiver of immunity for trespass claims; the Government's claim to the contrary rests on a district court decision mischaracterizing *Hatahley*.[4]

---

[4] In *Magnate, LLC v. EPA*, 678 F. Supp. 3d 767, 776 (W.D. Va. 2023), *aff'd as modified*, 2024 WL 2355374 (4th Cir. May 23, 2024) (per curiam) (cited in Govt. Reply Br. at 13), the court fixated on "the legal authority delegated" to the government agents at issue in *Hatahley*, and ignored that their actions constituted trespass and the Court's holding that "discretionary function" analysis was therefore irrelevant.

12

### B. All Appellate Decisions Analyzing the Issue Have Uniformly Adhered to to Supreme Court Precedent Recognizing That the FTCA Categorically Waives Immunity on Common-Law Trespass Claims

Plaintiffs have catalogued the uniform array of appellate court decisions in six circuits holding, consistent with *Hatahley*, that the United States has no immunity from lawsuits alleging common-law trespass. Pl. Opp. Mem. at 22-24. That summary stands unrebutted.

*Fifth Circuit*. In the leading decision, the Fifth Circuit pointed out the obvious: if, in fact, a trespass has occurred, "the Government has no authority or discretion" to commit a trespass, so that the DFE is irrelevant, as the Supreme Court held in *Hatahley* and *Simons v. United States*, 413 F.2d 531, 534 (5th Cir. 1969). The Government asserts that the Fifth Circuit "later recognized" that *Simons* wrongly "construed *Hatahley* to create a blanket carveout for trespass claims from the DFE," Govt. Reply Br. at 13-14, but the Fifth Circuit case it cites (*Huff v. Neal*, 555 F. App'x 289, 298 n.9 (5th Cir. 2014) (per curiam), involving discretionary transfers within a prison system) did not involve a trespass claim, nor did it even mention *Simons*. Far from recognizing error in *Simons*, the Fifth Circuit has in fact extended its *Simons* holding, to create a blanket carveout from the DFE for *all* claims against law enforcement personnel permitted by a 1974 amendment to the FTCA. *Sutton v. United States*, 819 F.2d 1289, 1295 (5th Cir. 1987).

*First, Second, Fourth, Ninth, and D.C. Circuits*. As detailed in our opening brief, each of these circuits has held the Government subject to suits for trespass under the FTCA. The Government asserts they should be ignored, as supposedly routine applications of Section 1346(b) and/or 2680(h). But the vital point here, to quote Sir Arthur Conan Doyle, is "the dog that didn't bark": the absence of any mention of the DFE. All five circuits have uniformly held that the United States has no immunity to a trespass claim, with no reference to the DFE, in accord with the holdings in *Hatahley* and *Simons* (that the DFE is irrelevant to a trespass claim). Indeed, the D.C. Circuit decision noted that the absence of any immunity on trespass claims was

13

so well established by 1974 that in amendments to the FTCA authorizing expanded litigation against federal law enforcement agents, Congress did not list trespass as one of the claims on which immunity was being waived, given the understanding that "existing law provided for such liability." *Black v. Sheraton Corp. of America*, 564 F.2d 531, 539 (D.C. Cir. 1977).[5]

### C. The Government Has Unearthed Only Two Decisions, by District Courts, Rejecting the Analysis of the FTCA Advocated by Plaintiffs Here

Plaintiffs' opening brief noted that occasional decisions in this Circuit have granted the Government immunity against toxic tort lawsuits predicated, in part, on trespass claims—but also that, because the plaintiffs in these cases failed to make the argument advanced by Plaintiffs here, those decisions are neither controlling nor persuasive. Pl. Opp. Mem. at 24, note 18.

In response, the Government, having apparently searched far and wide for supportive precedent at the district court level, calls this Court's attention to three additional decisions, one from this District, one from New York, and one from California. Govt. Reply Br. at 14-15.

The South Carolina case, *Saunders v. S.C. Pub. Serv. Auth.*, 856 F. Supp. 1066, 1069 (D.S.C. 1994), alleged harm from a dam project, based on negligence and trespass. The district court invoked DFE to dismiss the tort claims, taking no account of *Hatahley*. *Id*. at 1070-75.

---

[5] In the additional decisions from three of these circuits cited in Govt. Reply Br. at 13-14 & n.5, none of the cases addressed the question of whether trespass claims are categorically exempt from the DFE. The **First Circuit** decision, *Fagot Rodriguez v. Rep. of Costa Rice*, 297 F.3d 1, 9-10 (1st Cir. 2002), is not even an FTCA case; it did not cite the 1970 *Roman* decision recognizing the FTCA's categorical exception from immunity for trespass claims; and the court failed to consider *Hatahley*. The **Fourth Circuit** decisions, *Cohen v. United States*, 813 F. App'x 864, 869 (4th Cir. 2020) (per curiam), and *Burrows v. United States*, 120 F. App'x 448, 449-50 (4th Cir. 2020) (per curiam), both cited in Pl. Opp. Mem. at 24, note 18, likewise failed to consider *Hatahley*. The **D.C. Circuit** decision, *Golden Pac. Bancorp v. Clarke*, 837 F.2d 509, 512-13 (D.C. Cir. 1988), is even less pertinent, as it did not even involve a trespass claim. It involved a lawsuit brought by bank, challenging the reasonableness of a bank regulator's decision to place the bank in receivership; *Hatahley* was mentioned in only one sentence; and nothing in that sentence was inconsistent with the D.C. Circuit's *Black* decision which cited the categorical exemption from immunity for trespass claims recognized in *Hatahley*.

14

The district judge in the New York case, *Callahan v. United States*, 329 F. Supp. 2d 404, 410 (S.D.N.Y. 2004), evidently straining to protect the U.S. Marshals Service from second-guessing of its work protecting a federal judge who faced death threats, found immunity based on the DFE by citing decisions from the First and Ninth Circuits, contrary to the Second Circuit's holding that "Congress intended the Government to be liable for trespasses.'" *United States v. Artieri*, 491 F.2d 440, 446 n.2 (2d Cir. 1974) (citing *Dalehite*, 346 U.S. at 45)).

The district judge in the California case, *City of Lincoln v. United States*, 283 F. Supp. 3d 891 (E.D. Cal. 2017), a toxic tort case alleging trespass caused by the dumping of hazardous waste, found immunity without citing *Hatahley* or *Simon* (even though the plaintiff had cited them), based on "the sheer number of cases that have applied the discretionary function exception to bar trespass claims." *Id*. at 900. This reasoning was shaky, as in only one case cited, *Callahan*, was the issue even briefed. Further, the decision violated the Ninth Circuit's decision (regrettably *not* cited by the plaintiff) in the case that relied on *Hatahley* to hold that both trespass and conversion are categorically excepted from immunity under the FTCA. *ChoPP Computer Corp. v. United States*, 5 F.3d 1344, 1347 (9th Cir. 1992).

## CONCLUSION

Plaintiffs respectfully request that this Court reject the Government's claim of immunity on all of their state-law claims, based on CWA § 313 and related provisions (see Pl. Opp. Mem. at 17-18, note 14), and that this Court also reject the Government's claim of immunity on their trespass claims, based on 28 U.S.C. § 1346(b)(1) as construed in *Hatahley* and the decisions from the Fourth Circuit and five other circuits that apply *Hatahley* as recognizing that Congress intended to categorically waive immunity for trespass claims brought under the FTCA.

15

Dated: September 6, 2024

Respectfully submitted,

*/s/ Paul J. Napoli*
Paul J. Napoli
Napoli Shkolnik
1302 Avenida Ponce de León
Santurce, PR  00907
P: (833) 271-4502
F: (646) 843-7603
pnapoli@nsprlaw.com

Michael A. London
Douglas and London PC
59 Maiden Lane
6th Floor
New York, NY 10038
P: (212)-566-7500
F: (212)-566-7501
mlondon@douglasandlondon.com

Scott Summy
Baron & Budd, P.C.
3102 Oak Lawn Avenue
Suite 1100
Dallas, TX 75219
P: (214)-521-3605
ssummy@baronbudd.com

Joseph F. Rice
Motley Rice LLC
28 Bridgeside Blvd.
Mount Pleasant, SC  29464
P: (843) 216-9000
jrice@motleyrice.com

*Co-Lead Counsel for Plaintiffs*