**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| IN RE: AQUEOUS FILM-FORMING FOAMS PRODUCTS LIABILITY LITIGATION | MDL No. 2:18-mn-2873-RMG |
| | **This Document Relates to:** |
| | *Woodruff-Roebuck Water District v. AFL Telecommunications, LLC et al.* No. 2:24-cv-04618-RMG |

**PLAINTIFF'S MOTION TO REMAND**

Pursuant to 28 U.S.C. § 1447, Plaintiff moves to remand this action back to South Carolina state court and for an award of expenses and costs against the removing Defendant, Roebuck Disposal, LLC ("RD").

## I.  INTRODUCTION

Remand can be the only outcome following RD's removal. Procedural defects exist on the face of its notice: RD filed it both outside the 30-day time limit and without its co-Defendants' consent or joinder. These procedural missteps are neither waived nor inconsequential, and they require remand even if RD's jurisdictional grounds had merit. But none of them do.

RD relies exclusively on jurisdiction over a "slim" and "special" set of cases that turn on substantial federal questions—and none are implicated here. The Complaint's mere reference to federal laws is no "password opening federal courts" to Plaintiff's case. Nor would even a specter of federal preemption pave the way. A federal question arises only if a necessary element of Plaintiff's nuisance, trespass, and negligence claims—quintessential state-law torts—hinges on the interpretation of federal law. RD's notice identifies nothing of the sort. "Few cases can be squeezed

1

into the slim category" of substantial federal question jurisdiction, and Plaintiff's is not one of them.

## II.  BACKGROUND

Plaintiff is a South Carolina water utility that faces contamination of its property and water sources with six types of per- and polyfluoroalkyl substances ("PFAS").[1] *See* Doc. 1-1, ¶¶ 1, 3, 8–10.[2] It filed suit against RD and others in state court, alleging that their discharges have caused the contamination. Plaintiff's case is one of four water utility PFAS cases assigned to a single circuit court judge for disposition by order of the Supreme Court of South Carolina, with more expected to join in the near future. *See* Ex. 1, PFAS Litigation Order.

Here, Plaintiff claims that Defendants have discharged and continue to discharge at least one of these PFAS into the North, Middle, and South Tyger Rivers (collectively "Tyger River System"), which flow downstream to Plaintiff's property and its water intakes on the North and South Tyger Rivers in Spartanburg County. *See* Doc. 1-1, at ¶¶ 2, 4–7.

Plaintiff's Complaint walks through the history and evolution of the U.S. Environmental Protection Agency ("EPA")'s stance on PFAS, beginning in 2009 and culminating in final regulatory action in April 2024. *See id.* at ¶¶ 35–46. It sets out EPA's assembly and publication of scientific data that led it both (1) to conclude there are concentrations at which consuming these PFAS is unsafe, and (2) to regulate all six types of PFAS under the Safe Drinking Water Act ("SDWA"). *See id.* at ¶¶ 40-46. Under the final rule, all are subject to maximum contaminant levels ("MCLs") and maximum contaminant level goals ("MCLGs"). *Id.* at ¶¶ 44-45. More important is

---

[1] Perfluorooctanoic acid (PFOA); perfluorooctane sulfonic acid (PFOS); perfluorohexane sulfonic acid (PFHxS); perfluorononanoic acid (PFNA); perfluorobutane sulfonic acid (PFBS); and hexafluoropropylene oxide dimer acid (HFPO-DA or GenX Chemicals).

[2] Plaintiff adopts the corrected paragraph numbering in the First Amended Complaint attached to RD's notice of removal. *See* Doc. 1-1.

what EPA's publications mean for Plaintiff: with PFAS in its property and water sources, Plaintiff must implement new technologies to remove them. *See, e.g.*, *id.* at ¶ 50.

Plaintiff's claims arise exclusively under South Carolina law. This is plain in its causes of action: private and public nuisance, trespass, and negligence. *See id.* at ¶¶ 60–98. Each seeks to vindicate Plaintiff's state law property rights.[3] Going further, Plaintiff expressly states: "All Plaintiff's causes of action arise under South Carolina law, and Plaintiff brings no cause of action and seeks no relief under federal law or statute." *Id.* at ¶ 9.

Nonetheless, RD removed Plaintiff's case under 28 U.S.C. § 1331, alleging that "Plaintiff's claims for damages will require the determination of substantial, disputed federal questions regarding the actual and proposed regulations of EPA under federal law." Doc. 1, ¶ 8. RD appears to raise three federal issues justifying removal: (1) a Resource Conservation and Recovery Act ("RCRA") corrective action on its property at issue in this case; (2) the possible existence of Mil-Spec aqueous film-forming foam ("AFFF") in the Tyger River System; and (3) a third-party challenge to EPA's SDWA regulations in the D.C. Circuit Court of Appeals. *See id.* at ¶¶ 4–6, 8.

---

[3] *See, e.g.*, *id.* at ¶ 65 (alleging Defendants' contamination is a private nuisance that "substantially and unreasonably interferes with Plaintiff's use and enjoyment of its property, interferes with Plaintiff's property and its riparian rights, damages Plaintiff's property, and causes Plaintiff additional inconvenience, annoyance, and harm"); ¶ 76 (alleging special injuries for public nuisance, including "lost use of [Plaintiff's] property; inability to provide potable water to customers with reasonably safe concentrations of PFOA, PFOS, PFHxS, PFNA, and/or GenX Chemicals; expenses associated with future acquisition, installation, and operation of required treatment technologies to remove unsafe concentrations of these PFAS from water; expenses incurred in discovering and identifying sources of Defendants' contamination; interference with Plaintiff's riparian right to use the North and South Tyger Rivers; interference with the use of Plaintiff's [surface water treatment plant] and water distribution system; and lost revenue"); ¶ 91 (alleging Defendants' trespasses results in "invasion of [Plaintiff's] property rights and damages, including loss in value, the cost of removing Defendants' PFAS, and other damages to be proved at trial"); ¶ 97 (alleging Defendants' negligence caused "losses resulting from injury to [Plaintiff's] properties, including but limited to loss in value, the cost of removing Defendants' PFOA, FPOS, PFHxS, PFNA, PFBS, and GenX Chemicals, future costs of acquiring, installing, and operating adequate water treatment technologies, and other damages to be proved at trial").

RD first became a defendant in Plaintiff's First Amended Complaint, *see* Doc. 1-1, at ¶ 21, and it acknowledges receiving service on July 22, 2024. Doc. 1, ¶ 12. Despite that, RD filed its notice of removal on August 22nd—31 days later. *See id.* Likewise, RD's notice does not certify that its co-Defendants consent to or join in its removal. *See generally id.* Instead, RD states that their consent is unnecessary under 28 U.S.C. § 1441(c)(2). *Id.* at ¶ 14.

### III.  ARGUMENT

Now challenged in this Motion, RD must establish both that its removal was procedurally proper and that federal jurisdiction exists. *See Mayor & City Council of Baltimore v. BP P.L.C.*, 31 F.4th 178, 197 (4th Cir. 2019) ("The party seeking removal bears the burden of showing removal is proper." (quoting *Prince v. Sears Holdings Corp.*, 848 F.3d 173, 176 (4th Cir. 2017))); *see also Marler v. Amoco Oil Co., Inc.*, 793 F. Supp. 656, 658 (E.D.N.C. 1992) (stating that the removing party must establish "the right to removal, including compliance with the [procedural] requirements of [28 U.S.C.] § 1446(b)"). RD's removal is indefensible on both fronts.

### A.    Procedural defects require remand.

Effective removal requires that notices be filed within 30 days of receiving a copy of the complaint "through service or otherwise." 28 U.S.C. § 1446(b)(1). And in most cases, including here, the rule of unanimity makes joinder or consent of other served defendants equally mandatory. *See id.* § 1446(b)(2); § 1441(c)(2). RD's notice skirts both rules.

First, while it considers its notice timely, RD concedes that "[i]t was served with the Amended Complaint on July 22, 2024." Doc. 1, ¶ 12. But RD filed its notice on August 22, 2024—31 days later. *See generally id.* Plaintiff did not, and more importantly cannot, stipulate to a late removal. *See Wachovia Bank, N.A. v. Deutsche Bank Trust Co. Americas*, 397 F. Supp. 2d 698, 705 (W.D.N.C. 2005) (providing that § 1446(b)'s 30-day time limit cannot be enlarged by stipulation

or otherwise); *Stone Street Capital, Inc. v. McDonald's Corp.*, 300 F. Supp. 2d 345, 350 (D. Md. 2003) ("[T]he court cannot extend the time for filing removal because it simply does not have the authority to extend the removal period.").

It makes no difference that the removal is one day late. Because compliance is mandatory, "[a]ny delay beyond the thirty-day window cannot be overlooked." *McPhatter v. Sweitzer*, 401 F. Supp. 2d 468, 472 (M.D.N.C. 2005). As a result, courts remand cases removed late even by a thin margin. *See, e.g.*, *Spelta v. Bakker*, No. 20-1164, 2020 WL 2732070, at *2 (D. Md. May 26, 2020) (at least two days late); *Brown v. Balt. City Police Dept.*, No. 15-1288, 2016 WL 125596, at *2 (D. Md. Jan. 11, 2016) (five days late); *Atrium, Ltd. v. Steve Hendrick & Assocs., Inc.*, No. 5:12-CV-00046, 2012 WL 2374712, at *1 (W.D.N.C. June 22, 2012) (two days late); *see also Formichella v. Fisher*, No. 1:12-cv-85, 2012 WL 2501110, at *2 (W.D.N.C. June 28, 2012) (stating that the 30-day time limit is "mandatory and is strictly construed in favor of state court jurisdiction" (quoting *Lovins-Kapler v. Teva Pharms., USA, Inc.*, No. 11-0661-CV-W, 2012 WL 208321, at *2 (W.D. Mo. Jan. 24, 2012))). RD's delay compels the same result.

RD's notice also fails to unambiguously confirm its co-Defendants' consent. *See generally* Doc. 1. While RD finds their consent unnecessary "[u]nder 28 USC § 1441(c)(2)," Doc 1, ¶ 14, the rule of unanimity remains active under § 1441(c)(2) at least for co-Defendants that are also subject to a claim presenting a federal question under § 1331. *See* 28 U.S.C. § 1441(c)(2). That means if any of RD's grounds for federal question jurisdiction apply to any claim against a co-Defendant, then that co-Defendant's consent or joinder could not be discarded.

The rule of unanimity thus poses at least two problems. First, assuming *arguendo* that either (1) the possible existence of AFFF in the Tyger River System or (2) challenges to EPA's SDWA regulations created federal jurisdiction, *see* Doc. 1, ¶¶ 5–6, 8 (and neither do), then by RD's own

logic, those issues inject the same federal questions into *all* counts against its co-Defendants and require their consent to removal. *See id.* §§ 1331; 1441(c); 1446(b).

The same applies to RD's reference to RCRA corrective action on its property. *See* Doc. 1, at ¶ 4. Again, if RCRA created federal question jurisdiction here (it does not), then that federal claim would not be unique to RD. Its co-Defendant, Synthomer USA, LLC, is also its neighbor. *See* Doc. 1-1, at ¶¶ 21, 23. And by agreement between a prior owner and the South Carolina Department of Health and Environmental Control, Synthomer's property is also subject to a remedial action plan in accordance with the South Carolina Hazardous Waste Management Act and accompanying regulations.[4] *See* Ex. 2, ABCO Agreement; *see also* U.S.E.P.A., Detailed Facility Report, Synthomer USA, LLC, *available at* https://echo.epa.gov/detailed-facility-report?fid=110000353206.[5] So if RD is correct, and Plaintiff's claims present a substantial federal question under RCRA as applied to RD, then so too for Synthomer. But it neither joined RD's notice of removal nor filed its own.

Non-waived violations of § 1446(b) and § 1441(c) are no less fatal to removal than the absence of jurisdiction. *See Gates at Williams-Brice Condo. Ass'n v. Quality Built, LLC*, No. 3:16-cv-02022, 2016 WL 4646258, at *3 (D.S.C. Sept. 7, 2016) ("The same rule [of strict construction] applies to procedural deficiencies as jurisdictional deficiencies, so long as the procedural challenge

---

[4] The South Carolina Hazardous Waste Management Act is this State's EPA-approved hazardous waste management program that operates "in lieu of" the federal RCRA program. *See* 42 U.S.C. § 6926 (authorizing approval of state hazardous waste programs); U.S.E.P.A., South Carolina; Authorization of State Hazardous Waste Program, 50 Fed. Reg. 46437-01, 46440 (1985) ("Final authorization is hereby granted to South Carolina to operate its hazardous waste management program in lieu of the Federal program subject to the limitation of its authority by the Hazardous and Solid Waste Amendments of 1984"). RD's permit is also issued pursuant to the South Carolina Hazardous Waste Management Act. *See* Ex. 3, at 1.

[5] *See United States v. Garcia*, 855 F.3d 615, 621 (4th Cir. 2017) ("This court and numerous others routinely take judicial notice of information contained on state and federal government websites.").

is timely raised by a party."). This outcome reconciles with strict construction of the removal statutes, meaning that if even the *procedural* propriety is doubtful, then remand is required. *BRAVO! Facility Servs., Inc. v. Kaiser Found. Health Plan of Mid-Atl. States, Inc.*, 256 F. Supp. 3d 653, 658 n.7 (E.D. Va. 2017); *see also Stasio v. Saxon Mortg. Servs.*, No. 2:12-cv-02797, 2013 WL 178704J1, at *2 (D.S.C. Apr. 26, 2016) (noting that strict construction applies to "all rules governing removal" (quoting *Russell Corp. v. Am. Home Assurance Co.*, 264 F.3d 1040, 1046–47 (11th Cir. 2001))). Remand can be the only result here.

**B.    RD invokes no valid ground for federal jurisdiction.**

RD's removal doesn't fail on procedure alone, as none of its jurisdictional grounds justify snatching this case from state court.

Because "removal jurisdiction is disfavored and strictly construed," RD's jurisdictional burden is not "an easy [one] to carry." *Aegis Def. Servs., LLC v. Chenega-Patriot Grp., LLC*, 141 F. Supp. 3d 479, 484 (E.D. Va. 2015). All the more so here, where Plaintiff asserts exclusively state law causes of action. *See generally Lontz v. Tharp*, 413 F.3d 435, 440 (4th Cir. 2005) ("[S]tate law complaints usually must stay in state court when they assert what appear to be state law claims.").

Plaintiff is the "master of [its] claim" and is free to "'avoid federal jurisdiction by exclusive reliance on state law' in drafting" it. *Pinney v. Nokia, Inc.*, 402 F.3d 430, 442 (4th Cir. 2005) (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987)). While Plaintiff has done just that, RD asserts that Plaintiff's claims nonetheless "will require the determination of substantial, disputed federal questions." Doc. 1, ¶ 8.

It's axiomatic that "the mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction." *Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 813 (1986). For the same reason, Plaintiff's reference to EPA regulations is by itself no

"password opening federal courts" to its case. *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005).

Instead, RD must fit Plaintiff's claims within the "'slim category' of cases" where federal courts have jurisdiction over state law causes of action "because 'the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.'" *Burrell v. Bayer Corp.*, 918 F.3d 372, 380 (4th Cir. 2019) (quoting *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 28 (1983)); *see also W. Va. ex rel. McGraw v. Rite of Aid of W. Va., Inc.*, No. 2:09-0956, 2010 WL 454488, at *2 (S.D. W. Va. Feb. 1, 2010) (noting that "[f]ew cases can be 'squeezed into the slim category'" of substantial federal question jurisdiction (quoting *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 704 (2006))); *see also id.* ("Obviously, not every state-law claim raising a federal issue can invoke federal jurisdiction. Indeed, such cases will be exceptional." (quoting 14C Charles Alan Wright & Arthur R. Miller, *Fed. Practice and Procedure* § 3562 (4th ed. 2009))).

That places four hurdles in RD's path: establishing that Plaintiff's claims (1) "necessarily raise" a federal issue (2) that is "actually disputed" by the parties, (3) the issue is "substantial" in that its resolution is "important . . . to the federal system as a whole", and (4) it can be heard in federal court "without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Burrell*, 918 F.3d at 380 (citing *Gunn v. Milton*, 568 U.S. 251, 260 (2013); *Grable*, 545 U.S. at 314). None of RD's grounds can clear the first few of these requirements. *See Pinney*, 402 F.3d at 442 ("If the defendant fails to establish [any] of these elements, the claim does not arise under federal law pursuant to the substantial federal question doctrine, and removal cannot be justified under [it].").

1.       **RCRA does not establish federal jurisdiction.**

RD's first attempt at manufacturing federal jurisdiction arises under RCRA. RD's notice of removal says only this in support: "The entirety of [its] activities at the facility identified in the Complaint . . . since 1998 have been remediation activities pursuant to permits issued by the South Carolina Department of Health and Environmental Control . . . under [RCRA] and related federal statutes and regulations." Doc. 1, ¶ 4.

But starting with the bedrock principle that Plaintiff is the master of its complaint, "[a] federal question is 'necessarily raised' under § 1331 'only if it is a "necessary element of one of the well-pleaded state claims."'" *BP*, 31 F.4th at 209 (quoting *Burrell*, 918 F.3d at 381); *See Pinney*, 402 F.3d at 442. So the relevant question is: can Plaintiff prove its nuisance, trespass, and negligence claims without a court interpreting RCRA? The answer, of course, is yes. Whether RD breached a common law duty of care and damaged, trespassed upon, and interfered with Plaintiff's property requires no resolution of federal law—RCRA or otherwise. *See W. Va. State Univ. Bd. of Governors v. Dow Chem. Co.*, No. 2:17-cv-3558, 2020 WL 2842057, at *8 (S.D. W. Va. June 1, 2020) (finding that state law tort claims did not require resolution of RCRA questions), *aff'd*, 23 F.4th 288 (4th Cir. 2022); *Hood v. Meritor, Inc.*, No. 4:17CV74, 2018 WL 1309722, at *4 (N.D. Miss. Mar. 13, 2018) (same).

Because a substantial federal issue can only "necessarily" arise from Plaintiff's own claims, it's not enough for RD to raise a federal defense—even preemption.[6] *See, e.g., Caterpillar*, 482 U.S. at 393 ("[I]t is now settled law that a case may *not* be removed to federal court on the basis

---

[6] And even that does not appear possible for RD under RCRA. The opening section of RD's permit states: "Issuance of this Permit does not convey property rights of any sort or any exclusive privilege; nor does it authorize any injury to persons or property, any invasion of other rights, or any infringement of state or local law or regulations." Ex. 3, RD Permit, § I.A; *see also* S.C. CODE ANN. REGS. 61-79.270.4(c) (same).

of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue."); *Hood*, 2018 WL 1309722, at *6 (holding that to the extent RCRA compliance established a preemption defense, that defense did not merit removal).

It's equally clear that RCRA's citizen-suit provisions do not foreclose state-law claims. In fact, they do the opposite by providing:

> Nothing in this section shall restrict any right which any person (or class of persons) may have under any statute or common law to seek enforcement of any standard or requirement relating to the management of solid waste or hazardous waste, or to seek any other relief.

42 U.S.C. § 6972(f). This savings clause "undercuts" any argument that "Plaintiff's complaint raises a substantial federal question." *Dow*, 23 F.4th at 311; *see also Hood*, 2018 WL 1309722, at *5 ("The [RCRA] savings clause undercuts the Defendants' argument that, though artfully pled, the Plaintiff's complaint raises actually disputed substantial federal questions.").

Nothing in Plaintiff's claims requires resolving any question under RCRA, and by its terms, nothing in RCRA stops Plaintiff from obtaining the state-law relief it seeks. South Carolina state courts should decide whether Plaintiff is entitled to such relief.

### 2.    Federal litigation concerning AFFF and Safe Drinking Water Act regulations do not establish federal jurisdiction.

RD's remaining jurisdictional grounds resolve just as easily in favor of remand. First, RD alleges that Mil-Spec AFFF supplied by third parties to the Department of Defense ("DoD") has possibly contaminated the Tyger River System. *See* Doc. 1, ¶¶ 5–6. But possible or not, AFFF's presence implicates § 1331 jurisdiction if, and only if, it poses a *federal* issue—i.e., if it makes Plaintiff's claims "turn or 'hinge' upon interpreting federal law." *BP*, 31 F.4th at 210. But RD's notice doesn't connect these dots, and there isn't a colorable link.

RD reveals no contractual relationship between *itself* and DoD, and its notice of removal omits any reference to the federal officer removal statute, 28 U.S.C. § 1442.[7] *See generally* Doc. 1. RD invokes only substantial federal question jurisdiction under § 1331. Doc. 1 ¶¶ 7-8. But even if Plaintiff's claims "necessarily" or "substantially" raise a "disputed" issue that AFFF pollution exists in the Tyger River System—and again, they do not[8]—that issue is not *federal* in the first place.[9]

Finally, the fact that EPA's SDWA regulations are "the subject of federal litigation" in the U.S. Court of Appeals for the D.C. Circuit does not move the needle any further in RD's favor. Doc. 1, ¶ 8. Setting aside whether Plaintiff's claims "necessarily" raise a federal issue in whether it can comply with MCLs covering PFAS,[10] that issue is neither "disputed" nor "substantial."

---

[7] RD's removal is distinguishable from those made under the federal officer statute by third-parties who manufactured Mil-Spec AFFF for DoD. But district and appellate courts—including this Court—have unanimously rejected even those removals where, as here, the plaintiff disclaims all damage from all types of AFFF. *See People ex rel. Raoul v. 3M Co.*, 111 F.4th 846, 848-49 (7th Cir. 2024); *In re: Aqueous Film-Forming Foams Prods. Liab. Litig.*, No. 2:23-cv-05979, 2024 WL 1470056, at *2-3 (D.S.C. Feb. 29, 2024); *Maryland v. 3M Co.*, No. 23-1836, 2024 WL 1152568, at *2-3 (D. Md. Feb. 12, 2024); *Maine v. 3M Co.*, No. 2:23-cv-00210, 2023 WL 4758816, at *6-11 (D. Me. July 26, 2023); *New Hampshire v. 3M Co.*, 665 F. Supp. 3d 215, 220 (D.N.H. 2023). RD's reference to third-party AFFF contamination is even more attenuated than the removal grounds in those cases, and the fate of its removal should be the same.

[8] Because Plaintiff disclaims all damages related to any type of AFFF, their presence in the Tyger River System, or lack thereof, is irrelevant to Plaintiff's claims. *See* Doc. 1-1, at ¶ 8.

[9] Nor can the mere existence of an AFFF MDL create federal jurisdiction. *See, e.g.*, *In re: Jan. 2021 Short Squeeze Trading Litig.*, 580 F. Supp. 3d 1243, 1252 (S.D. Fla. 2022) ("[A] transferee court 'does not have subject matter jurisdiction to adjudicate an action that is lacking in original federal jurisdiction.'" (quoting *In re Mortg. Elec. Registration Sys. (Mers) Litig.*, No. MD-09-021119-PHX, 2016 WL 3931820, at *8 (D. Ariz. July 21, 2016))); *City of Holly Springs v. Johnon & Johnson*, 477 F. Supp. 3d 547, 549 (N.D. Miss. 2020) ("For jurisdiction purposes, the most important point for this court is that the MDL court is a *federal* court, and, if federal jurisdiction is lacking, then an MDL court likewise has no jurisdiction to hear this matter.").

[10] Plaintiff makes no concession here because its nuisance, trespass, and negligence claims can each be resolved without ever answering this question. Whether Defendants damaged Plaintiff through negligence, trespassed upon, or interfered with the use of Plaintiff's property and water rights under South Carolina law does not "hinge" on Plaintiff facing MCL violations. *See Pinney*,

First, RD identifies no disagreement as to what the MCLs say or mean. *See generally* Doc. 1. RD merely notes that third parties now argue elsewhere that those regulations *shouldn't* be the law. That creates no dispute here, either (1) between Plaintiff and RD, or more importantly, (2) as to *what the law is*. *See BP*, 31 F.4th at 209 ("A federal issue is 'actually disputed' when *the parties* disagree about *the effect of* federal law." (emphasis added)).

Plaintiff's MCL compliance is not a "substantial" issue either. A "substantial" federal issue is a "pure question of law," and its defining feature is its "importan[ce] to the federal system as a whole"—for instance, where the decision "would be controlling in numerous other cases." *Burrell*, 918 F.3d at 385 (quoting *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 700–01 (2006)). That is not Plaintiff's case. Whether it can meet MCLs—that is, whether concentrations of applicable PFAS are above or below defined levels—is a "fact-bound and situation-specific" question applicable only to a "particular part[y] in [this] immediate suit." *Id.* (quoting *Gunn v. Minton*, 568 U.S. 251, 260 (2013); *McVeigh*, 547 U.S. at 700–01). This "bear[s] none of the hallmarks of substantiality." *Id.*

Even without procedural defects, then, RD's notice of removal presents no valid ground for federal jurisdiction.

---

402 F.3d at 442 ("If a plaintiff can establish, without the resolution of an issue of federal law, all of the essential elements of his state law claim, then the claim does not necessarily depend on a question of federal law."). Notwithstanding regulations, it's now clear that these PFAS present significant risk to human and environmental safety. *See, e.g.,* U.S.E.P.A., *Frequently Asked Questions and Answers: Final PFAS Nat'l Drinking Water Regulation* (Apr. 10, 2024) ("The science is clear: exposure to these six PFAS is linked to significant health risks" that include "certain cancers and heart impacts in adults, and immune and developmental impacts in infants and children."). Needless to say, their unwanted presence throughout Plaintiff's property and its water sources clearly interferes with and injures Plaintiff's property and riparian rights. This is precisely what South Carolina tort law protects against.

**C.    An award of costs and expenses is appropriate.**

This Court "may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of [RD's] removal." 28 U.S.C. § 1447(c). The decision is in this Court's discretion, and an award is appropriate where the removing party "lacked an objectively reasonable basis for seeking removal." *Stein v. Eonsmoke LLC*, 423 F. Supp. 3d 162, 170 (M.D.N.C. 2019) (quoting *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 136 (2005)). This is one of those instances.

First, RD's jurisdictional basis is entirely unsupported by law. Decades of precedent firmly holds that substantial federal questions must arise from the essential elements of a *plaintiff's* cause of action—not a defense. *See Stein*, 423 F. Supp. 3d at 170 ("Long-established precedent indicates affirmative defenses are not 'substantial federal questions' that confer federal jurisdiction." (citing *Caterpillar*, 482 U.S. at 393)); *id.* at 171 (awarding costs and fees). Because Plaintiff's claims have nothing to do with RCRA, a related defense is all RD can muster. Worse still, based on the language of RD's permit and of RCRA itself, even a RCRA defense is hardly on firm footing. *See supra* note 6; 42 U.S.C. § 6972(f).

RD's RCRA ground is only the best of a bad bunch. The notion that a third-party challenge to SDWA regulations raises substantial federal questions here likewise sidesteps foundational principles of this doctrine. Plaintiff's case hinges on whether RD has damaged, trespassed upon, and interfered with Plaintiff's property—not whether EPA properly enacted laws. Removal due to AFFF contamination is even shakier ground. Plaintiff has disclaimed AFFF-related injuries as a matter of *fact*, making it impossible for Plaintiff's claims to turn on its presence. Setting that aside—even if Plaintiff pled an explicitly AFFF pollution case against these Defendants—there is still no federal *law* that specifically concerns AFFF potentially at issue.

Unmet procedural requirements should also have counseled against this removal where the untenable grounds did not. Instead, the removal has imposed undue delay and expense on Plaintiff and this Court, as it also needlessly disrupts the state-court proceedings. Intentional or not, RD's motive isn't the metric for awarding costs and fees. *See Carter v. Acadia Healthcare Co., Inc.*, 705 F. Supp. 3d 597, 603 (S.D. W. Va. 2023) ("[I]t is not necessary for the Court to find 'bad faith' on the part of the removing party before making such awards." (quoting *Allen v. Monsanto Co.*, 396 F. Supp. 2d 728, 733 (S.D.W. Va. 2005))). Fee awards turn only "on the reasonableness of the removal" and serve, primarily, "to reimburse a party for the costs associated with responding to an improper removal." *Id.* Here, RD's removal is procedurally defective and advances multiple, objectively unreasonable jurisdictional grounds. Under these circumstances, the Court would be well within its discretion in awarding fees to Plaintiff for RD's improper removal. *See generally Young v. Lopez-Humes*, No. 24-0452, 2024 WL 1641033, at *5 (D. Md. Apr. 16, 2024) ("[A fee award] should recognize the desire to deter removals sought for the purpose of prolonging litigation and imposing costs on the opposing party . . . ." (quoting *Martin*, 546 U.S. at 140)).

## IV.  CONCLUSION

RD's removal is both procedurally defective and lacks objectively reasonable jurisdictional grounds. Remand is required, and a fee award is appropriate.

Respectfully submitted,

*/s/ John B. White, Jr.*
John B. White, Jr. (Fed. Bar No. 04619)
Marghretta H. Shisko (Fed. Bar No. 11601)
Christopher R. Jones (Fed. Bar No. 13204)
John B. White, Jr., P.A.
291 S. Pine Street (29302)
P.O. Box 2465
Spartanburg, SC 29304
(864) 594-5988

jwhite@johnbwhitelaw.com
mshisko@johnbwhitelaw.com
cjones@johnbwhitelaw.com

*Attorneys for Plaintiff*

Pursuant to CMO 2A, filed with the approval of:

 */s/ Michael A. London*
Michael A. London
Douglas & London, P.C.
59 Maiden Lane, 6th Fl.
New York, NY 10038
(212) 566-7500
mlondon@douglasandlondon.com

 */s/ Paul J. Napoli*
Napoli Shkolnik PLLC
360 Lexington Ave., 11th Fl.
New York, NY 10017
(212) 397-1000
pnapoli@napolilaw.com

*/s/ Scott Summy*
Scott Summy
Baron & Bud, P.C.
3102 Oak Lawn Ave., #1100
Dallas, TX 75219
(214) 521-3605
ssummy@baronbudd.com

*MDL Plaintiffs' Co-Lead Counsel*

September 19, 2024