IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

|   |   |
|---|---|
| IN RE: AQUEOUS FILM-FORMING FOAMS PRODUCTS LIABILITY LITIGATION | ) ) ) ) ) ) ) ) ) |  MDL No. 2:18-mn-2873-RMG<br><br>**ORDER AND OPINION**<br><br>**This Order Relates to:**<br>**2:24-cv-2321-RMG**<br>**2:24-cv-3174-RMG** |

Before the Court are Class Counsel's motions for attorneys' fees and costs in *City of Camden, et al. v Tyco Fire Products LP, et al.*, 2-24-cv-2321-RMG and *City of Camden, et al. v. BASF Corporation*, 2:24-cv-3147-RMG. (Dkt. No. 5379). Both motions are unopposed. For the reasons set forth below, the motions are granted.

I.      **Background**

On December 7, 2018, the Judicial Panel on Multidistrict Litigation (the "JPML") centralized in this Court approximately 90 civil actions from eight judicial districts involving claims that aqueous film-forming foams ("AFFF") had contaminated local ground water and drinking water supplies in numerous communities across the United States. In its transfer order, the JPML noted:

> These actions thus share factual questions concerning the toxicity of PFOA and PFOS and their effects on human health; the chemical properties of these substances and their propensity to migrate in groundwater supplies; the knowledge of the AFFF manufacturers regarding the dangers of PFOA and PFOS; their warnings, if any, regarding proper use and storage of AFFFs; and to what extent, if any, defendants conspired or cooperated to conceal the dangers of PFOA and PFOS in their products.

*In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, 357 F. Supp. 3d 1391, 1394 (JPML 2018).

Following the creation of this multidistrict litigation ("MDL"), and pursuant to Case Management Orders 2 and 3, the Court appointed Plaintiffs' Co-Lead Counsel, the initial slate of Plaintiffs' Executive Committee ("PEC") members, and Advisory Counsel to the PEC. (Dkt. No. 4080-1 at 15). Over the next four-and-a-half years, Plaintiffs in this MDL, led by Plaintiffs' Co-Lead Counsel and the PEC, conducted approximately "480,000 hours of work working on 'intertwined' tasks that synergistically yielded the largest drinking water settlements in United States history." (Dkt. No. 5379-2 at 8).

On April 22, 2024, on behalf of themselves and all other similarly situated Public Water Systems ("PWS"), Plaintiffs filed a class action complaint against Tyco claiming one or more of the following types of damages: (1) the costs of testing and monitoring of the ongoing contamination of their Drinking Water wells and supplies; (2) the costs of designing, constructing, installing and maintaining a filtration system to remove or reduce levels of PFAS detected in Drinking Water; (3) the costs of operating that filtration system; and (4) the costs of complying with any applicable regulations requiring additional measures. (*City of Camden, et al. v. Tyco Fire Products LP, et al.*, C.A. No. 2:24-cv-2321-RMG, Dkt. No. 1) (the "Tyco Action"). The Parties intended that the complaint be used as the mechanism for a class-wide settlement and the complaint identifies each Class Representative, defines the Settlement Class, and states the claims intended to become Released Claims and concluded by the Final Judgment.

On May 23, 2024, on behalf of themselves and all other similarly situated PWS, Plaintiffs filed a separate class action complaint against BASF claiming one or more of the following types of damages: (1) the costs of testing and monitoring of the ongoing contamination of their Drinking Water wells and supplies; (2) the costs of designing, constructing, installing and maintaining a filtration system to remove or reduce levels of PFAS detected in Drinking Water; (3) the costs of

operating that filtration system; and (4) the costs of complying with any applicable regulations requiring additional measures. (*City of Camden, et al. v. BASF Corporation*, C.A. No. 2:23-cv-3174-RMG, Dkt. No. 1) (the "BASF Action"). The Parties intended that the complaint be used as the mechanism for a class-wide settlement and the complaint identifies each Class Representative, defines the Settlement Class, and states the claims intended to become Released Claims and concluded by the Final Judgment.

On July 22, 2024, Class Counsel moved for attorneys' fees and costs in the both the Tyco Action and BASF Action. (Dkt. No. 5379). No party opposes the motion.

On November 22, 2024, the Court approved Plaintiffs' settlement with Tyco and BASF. Under the Settlement Agreement with Tyco, Tyco agreed to pay or cause to be paid $750 million. Under the Settlement Agreement with BASF, BASF agreed to pay or cause to be paid $316.5 million.

Class Counsel's motion for attorneys' fees and costs is fully briefed and ripe for the Court's review.

**II.    Legal Standard**

For well over a century, the United States Supreme Court has recognized the "common fund" exception to the general rule that a litigant bears his or her own attorney's fees. *Trustees v. Greenough*, 105 U.S. 527 (1882). The rationale for the common fund principle was explained in *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980), "that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorneys' fee from the fund as a whole." In *Blum v. Stevenson*, the Supreme Court expressed its preference for determining reasonable fees as a percentage of the fund under the common fund doctrine. 465 U.S. 886, 900, n.16 (1984).

Within this Circuit, the percentage of the fund approach is not only permitted, but is the preferred approach to determining attorneys' fees. *See Goldenberg v. Marriott PLP Corp.*, 33 F.Supp.2d 434, 438 (D. Md. 1998) (noting endorsement of percentage-of-recovery method by several courts in the Fourth Circuit); *In re Microstrategy, Inc.*, 172 F. Supp. 2d 778, 786–87 (E.D. Va. 2001); *Strang v. JHM Mortgage Sec. Ltd. Partnership*, 890 F. Supp. 499, 503 (E.D. Va. 1995) ("the percentage method is more efficient and less burdensome that the traditional lodestar method, and offers a more reasonable measure of compensation for common fund cases"); *Jones v. Dominion Res. Servs.*, 601 F. Supp. 2d 756, 760 (S.D. W.Va. 2009).

The common fund method is particularly appropriate where, as here, the settlement confers a substantial benefit on members of a class. *Boeing Co.,* 444 U.S. at 479. *See also Teague v. Bakker*, 213 F. Supp. 2d 571, 584 (W.D.N.C. 2002) ("an award of attorneys' fees from a common fund depends on whether the attorneys' specific services benefitted the fund—whether they tended to create, increase, protect or preserve the fund").

Accordingly, this Court determines the reasonableness of the requested fee using the percentage of the fund approach.

Under Local Civil Rule 54.02(A) D.S.C., "[a]ny petition for attorney's fees shall comply with the requirements set out in *Barber v. Kimbrell's, Inc.*, 577 F.2d 216 (4th Cir. 1978)," which specifies the following factors for analysis:

(1) The time and labor expended;
(2) The novelty and difficulty of the questions raised;
(3) The skill required to properly perform the legal services rendered;
(4) The attorney's opportunity costs in pressing the instant litigation;
(5) The customary fee for like work;
(6) The attorney's expectations at the outset of the litigation;
(7) The time limitations imposed by the client or circumstances;
(8) The amount in controversy and the results obtained;
(9) The experience, reputation and ability of the attorney;

(10) The undesirability of the case within the legal community in which the suit arose;
(11) The nature and length of the professional relationship between attorney and client; and
(12) Attorneys' fees awards in similar cases.

*Barber*, 577 F.2d at 226, n.28.

### III.  Discussion

In their motion, Class Counsel recount how the PEC undertook extensive, coordinated discovery to advance the claims consolidated in this MDL. Class Counsel emphasize the interconnected relationship of the discovery obtained by Plaintiffs in this MDL as between all Defendants. (Dkt. No. 5379-2 at 23 ("It is of the utmost importance . . . to underscore again that the eligibility efforts with respect to each Defendant has continuously helped make the liability case against *all other* Defendants. There is such inextricable interplay between each Defendant's liability that it would be impossible to parse specific efforts that relate to only one Defendant and played no role in the larger overall liability picture. This has been true through the course of the MDL, including with respect to both Defendants Tyco and BASF, and has remained a constant truth.")). Class Counsel provided examples of discovery produced by one Defendant that helped buttress the liability case against another Defendant. The examples included discovery obtained from 3M that was relevant to Tyco and discovery obtained from Tyco and BASF that "demonstrate clearly that BASF's liability is fully woven into Tyco's liability fabric." (*Id.* at 23-26).

Because the Defendants are so interconnected and because Class Counsel filed one Fee Petition for both the Tyco and BASF Settlements, the Court finds it appropriate to address the fee requests for both settlements jointly.

Class Counsel ask for a Class Fee of 8% of the total of the Tyco and BASF Settlement Amounts, or $85,320,000. Class Counsel ask for $10,471,081.51 in total Class Costs. Class Counsel state the Class Fee will "be allocated to those whose work was performed for the common

5

benefit of all litigants." (*Id.* at 10). Class Counsel state that Class Costs is for the reimbursement of "total out-of-pocket costs expended to fund the prosecution of this litigation since August 30, 2023, to June 30, 2024, all of which contributed to the success of the Class's claims." (*Id.* at 12). Class Counsel request "that the Class Fee be treated like a common benefit assessment as was requested in the previous Fee Petitions . . . . Thus, the contingency fee set forth represented Plaintiffs' individual contingency fee agreements would be reduced to account for the Class Fee of 8%. For example, a class member who has hired a private lawyer at a 25% contingency agreement will have its contingency agreement reduced to 17% because the Class Fee will have already come off the top." (*Id.* at 22).

With the above in mind, and after a review of the record and the parties' briefings, and given no party objected to the instant motion, the Court finds that all pertinent *Barber* factors weigh in favor of approving Class Counsel's request for attorneys' fees and costs in both the Tyco and BASF Actions.

1. **The Time and Labor Required**

This factor weights in favor of approving Class Counsel's motions. As noted above, the PEC expended approximately "480,000 hours of work working on 'intertwined' tasks that synergistically yielded the largest drinking water settlements in United States history." (Dkt. No. 5379-2 at 8). In connection with the 3M and DuPont Fee Petitions, the PEC reported expending a approximately 430,000 hours by 40 law firms and 650 timekeepers from the beginning of the MDL through August 29, 2023, the date the Court granted preliminary approval for the 3M settlement. (*Id.* at 42). The PEC expended an additional 50,000 hours by more than 40 law firms and 650 timekeepers between August 30, 2023, and May 31, 2024. (*Id.*) The combined hours worked directly led to the results achieved here. This factor thus weighs in Class Counsel's favor.

> 2. **The Novelty and Difficulty of the Questions Involved, the Requisite Skill to Perform the Legal Service Properly, and the Experience, Reputation, and Ability of the Attorneys**

These three factors also weigh in favor of Class Counsel. The issues involved in this MDL are numerous and difficult, complicated by the large number of defendants sued. Class Counsel's motions highlight the varied and often complex questions raised in this litigation over the past nearly half-decade. (*Id.* at 43-46 (noting, *inter alia*, the difficulty of briefing and defeating Defendants' motion for summary judgment on the government contractor defense and, as it related to *Stuart*, the difficulty of proving the city's wells were contaminated by Defendants' products, establishing which companies' products were responsible for the alleged harm, establishing PFAS are toxic to humans and that the same was known or foreseeable to Defendants, and that Defendants' AFFF products were in fact defectively designed). Additionally, only highly qualified counsel could have navigated these issues. Throughout this litigation the Court has praised the quality of lawyering on both sides. As it relates to the work performed by the PEC and at issue in Class Counsel's motions, Class Counsel correctly state that "[t]rial preparation, bellwether efforts and settlement negotiations required a thorough understanding of the scientific, legal, and factual issues, as well as a sophisticated familiarity with how PWS operate and how to compensate them for their PFAS contamination." (*Id.* at 47). Class Counsel and the PEC possess such attributes and are some of the most qualified mass tort litigators in America. A different group of lawyers may not have been able to achieve the same result. Accordingly, these factors weigh in favor of the requested fee award.

> 3. **The Preclusion of Other Employment by the Attorneys Due to Acceptance of the Case and the "Undesirability" of the Case**

As Class Counsel explain in their briefing, "[m]any members of the firms leading the common benefit efforts on Plaintiffs' behalf, by necessity, had to forgo other cases and potential

fees" to organize and prosecute this MDL. (*Id.* at 53-54 (noting that "[a]lmost all Plaintiffs prosecuted this litigation entirely on a contingent fee basis and self-funded the litigation through assessments on the PEC")). Further, given the complexity of this matter, which the Court described above, and the substantial litigation costs incurred without any guarantee of recovery the Court finds the case "undesirable" under *Barber*. *See Burford v. Cargill, Inc.*, No. 05-283, 2012 WL 5471985, at *5 (W.D. La. Nov. 8, 2012). Thus, these two factors weigh in favor of the fee award requested here.

4. **The Customary Fee and Whether the Fee is Fixed or Contingent**

As Class Counsel establish in their briefing, relying on the affidavit of Professor Brian T. Fitzpatrick of Vanderbilt University, a review of attorneys' fees awards in billion-dollar class actions reveals that the average and median percentages for attorneys' fee awards are 9.3% and 13.7%, respectively. (*Id.* at 54-55). Given these ranges, the requested fee of 8% in both the 3M and DuPont Actions is reasonable. Further, the contingent nature of the fee also weighs in favor of awarding the requested relief. *In re LandAmerica 1031 Exch. Servs., Inc. I.R.S. 1031 Tax Deferred Exch. Litig.*, No. 3:09-CV-00054, 2012 WL 5430841, at *5 (D.S.C. Nov. 7, 2012) ("Class Counsel could have lost their entire investment in out-of-pocket expenses . . . . Such 'burdens are relevant circumstances' that support the requested award.") (citing *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1377 (9th Cir.1993)).

5. **Time Limitations Imposed by the Client or the Circumstances**

To the extent relevant here, this factor weighs in favor of granting Class Counsel's motions. As Class Counsel note, despite the COVID pandemic which began at a crucial juncture in this MDL, the PEC continued to prosecute this case vigorously and was ready to try the first bellwether PWS case, *City of Stuart*, within four-and-a-half years. (Dkt. No. 4269-1 at 75-76). Despite the

challenging circumstances and breadth of work to be done, the PEC achieved settlements in the 3M, Dupont, Tyco, and BASF Actions. Accordingly, this factor weighs in favor of the requested fee.

6. **The Amount Involved and the Results Obtained, and Awards in Similar Cases**

This "most critical factor" weighs in favor of the requested fee. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983); *see also Brodziak v. Runyon*, 145 F.3d 194, 196 (4th Cir. 1998). The settlements Class Counsel have obtained are larger, $750 million for Tyco and $316.5 million for DuPont. (Dkt. No. 5379-2 at 57). Further, the Settlements provide timely relief to thousands of PWS facing PFAS contamination. (*Id.*) The results obtained—including the Allocation Procedures in both Settlement Agreements—are finely tuned to the present and future needs of Class Members. Relatedly, Class Counsel have established that the fee award they request is on the smaller end as "mean and median percentage-method awards were around 25%" in the Fourth Circuit, far great than the requested 8% fee here. (*Id.* at 60).

In sum, all relevant *Barber* factors clearly weigh in favor of granting Class Counsel's motions in both the 3M and DuPont actions.

7. **Lodestar Cross-Check**

Under the "lodestar" method, a district court identifies a lodestar figure by multiplying the number of hours expended by class counsel by a reasonable hourly rate. *Grissom v. The Mills Corp.,* 549 F.3d 313, 320 (4th Cir. 2008). The court may then adjust the lodestar figure using a "multiplier" derived from a number of factors, including the benefit obtained for the settlement class, the complexity of the case, and the quality of the representation. *See The Kay Company v. Equitable Prod. Co.*, 749 F.Supp.2d 455, 462 (S.D. W.Va. 2010); *see also In re Microstrategy, Inc. Sec. Litig.*, 172 F.Supp.2d 778, 786–87 (E.D.Va.2001).

9

The purpose of a lodestar cross-check is to determine whether a proposed fee award is excessive relative to the hours reportedly worked by counsel, or whether the fee is within some reasonable multiplier of the lodestar. *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 306 (3d Cir. 2005) ("The lodestar cross-check serves the purpose of alerting the trial judge that when the multiplier is too great, the court should reconsider its calculation under the percentage-of-recovery method"); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002) ( "[T]he lodestar may provide a useful perspective on the reasonableness of a given percentage award."). Importantly, "where the lodestar fee is used 'as a mere cross-check' to the percentage method of determining reasonable attorneys' fees, 'the hours documented by counsel need not be exhaustively scrutinized by the district court.'" *In re Royal Ahold N.V. Sec.*, 461 F.Supp.2d 383, 385 (D. Md. 2006) (quoting *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000)).

A lodestar crosscheck confirms the reasonableness of the fee request. The lodestar for the total cumulative work performed by Class Counsel, which includes the additional 50,182.7 hours worked by Class Counsel since the preliminary approval of the 3M and DuPont Settlements, ranges between $348,972,660.00 and $397,106,820.00. (Dkt. No. 5379-2 at 63-64). These figures are based on and a blended hourly rate of $725-$825. (*Id.*) This yields a multiplier range between 2.56 to 2.92 when considering the combined 8% aggregate from the DuPont, 3M, Tyco, and BASF actions. (*Id.*).

**IV.   Conclusion**

For the foregoing reasons, Class Counsel's motion for attorneys' fees and costs (Dkt. No. 5379) is **GRANTED** as follows:

- 8% in attorneys' fees from the Tyco PWS Settlement for a Class Fee award in the amount of $60,000,000;
- Reimbursement of costs from the Tyco PWS Settlement for a Class Costs award in the amount of $7,329,757.06

10

- 8% in attorneys' fees from the BASF PWS Settlement for a Class Fee award in the amount of $25,320,000; and
- Reimbursement of costs from the BASF PWS Settlement for a Class Costs award in the amount of $3,141,324.45.

The 8% attorneys' fee award is to be credited against any individual counsel's retainer fee, such that any private contract will be reduced by 8%.

**AND IT IS SO ORDERED.**

s/ Richard Mark Gergel
Richard Mark Gergel
United States District Judge

November 22, 2024
Charleston, South Carolina