**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | |
|---|---|
| **ALICE ATKINSON,** | ) |
| | ) **MDL NO. 2873** |
| **Plaintiff,** | ) **Master Docket No.: 2:18-mn-2873** |
| | ) |
| **v.** | ) **JUDGE RICHARD M. GERGEL** |
| | ) |
| | ) **Civil Action No. 2:23-cv-05982-RMG** |
| | ) |
| **3M COMPANY, INC.,** | ) **DIRECT FILED COMPLAINT AND** |
| | ) **JURY DEMAND PURSUANT TO** |
| **Defendant.** | ) **CASE MANAGEMENT ORDER NO. 3** |
| | ) |

## AMENDED COMPLAINT

1. COMES NOW, Plaintiff ALICE ATKINSON ("Plaintiff"), by and through undersigned attorneys, and for her Amended Complaint against 3M Company Inc., f/k/a Minnesota Mining and Manufacturing Co., as a related action in the matter entitled IN RE: AQUEOUS FILM-FORMING PRODUCTS LIABILITY LITIGATION, MDL No. 2873, and as permitted by Case Management Order No. 3 ("CMO 3") issued by Judge Richard M. Gergel of this Court, and alleges as follows:

## INTRODUCTION

2. Plaintiff brings this action for Defendant's intentional, malicious, knowing, reckless and/or negligent acts and/or omissions that have resulted in harm to Plaintiff from exposure to per- and polyfluoroalkyl substances ("PFAS") that were

manufactured, designed, distributed, and/or disposed of by the Defendant.

3. PFAS includes, but is not limited to, perfluorooctanoic acid ("PFOA") and perfluorooctane sulfonic acid ("PFOS") and related chemicals including those that degrade to PFOA and/or PFOS.

4. PFAS are known as "forever chemicals" because they are immune to degradation, bio-accumulate in individual organisms and humans, and increase in concentration up the food chain.[1] Indeed, scientists are unable to estimate an environmental half-life (i.e., the time it takes for 50% of the chemical to disappear) for PFAS.[2] PFAS exposure to humans can occur through inhalation, ingestion, and dermal contact.[3] PFAS are nearly indestructible and are highly transportable.[4]

5. To date, there is no safe, acceptable, or "normal" level of PFAS in the human body. PFAS exposure affects nearly every system in the human body[5] and has been associated with multiple and serious adverse health effects in humans including, but not limited to, cancer, tumors, liver damage, immune system and endocrine disorders, thyroid disease, ulcerative colitis, birth defects, decreased

[1] *Perfluoroalkyl and Polyfluoroalkyl Substances (PFAS)*, National Institute of Environmental Health Sciences (last visited September 30, 2021), https://www.niehs.nih.gov/health/topics/agents/pfc/index.cfm.
[2] *Id.*
[3] Suzanne E. Fenton, MS, PhD, *PFAS Collection, Environmental Health Perspectives* (February 22, 2019), https://ehp.niehs.nih.gov/curated-collections/pfas.
[4] *Toxicological Profile for Perfluoroalkyls*, see Relevance to Public Health, Agency for Toxic Substances & Disease Registry, (last visited October 19, 2021), https://www.atsdr.cdc.gov/toxprofiles/tp200.pdf.
[5] Kelly Lenox, PFAS Senate Hearing, Birnbaum's Expert Scientific Testimony, Environmental Factor, National Institute of Environmental Health Sciences (May 2019), https://factor.niehs.nih.gov/2019/5/feature/1-feature-pfas/index.htm.

fertility, pregnancy-induced hypertension, accelerated changes in gene expression, and increases in oxidative stress which can contribute to DNA changes, tumor promotion, and other health conditions.[6]

6. PFAS has also been found to concentrate in human blood, bones, and organs, and to reduce the effectiveness of certain vaccines, a significant concern in light of COVID-19.[7]

7. Through this action, Plaintiff seeks to recover compensatory and punitive damages arising out of the permanent and significant damages to herself as a direct result of exposure to Defendant's PFAS products in Guin, Marion County, Alabama. Plaintiff further seeks injunctive, equitable, and declaratory relief arising from the same

## JURISDICTION AND VENUE

8. This Honorable Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because complete diversity exists between Plaintiff and Defendant

[6] A. Koskela et al., *Perfluoroalkyl substances in human bone: concentrations in bones and effects on bone cell differentiation*, Scientific Reports, (July 28, 2017), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5533791/pdf/41598_2017_Article_7359.pdf; *National Toxicology Program Technical Report on the Toxicology and Carcinogenesis Studies of Perfluorooctanoic Acid Administered in Feed to Sprague Dawley* (Hsd: Sprague Dawley SD) Rats, National Toxicology Program, (May 2020), https://ntp.niehs.nih.gov/ntp/htdocs/lt_rpts/tr598_508.pdf; Jaclyn Goodrich et al., *Per- and Polyfluoroalkyl Substances, Epigenetic Age and DNA Methylation: A Cross-Sectional Study of Firefighters*, Epigenomics (October 2021), https://pubmed.ncbi.nlm.nih.gov/34670402/.

[7] *Id*. (Koskela study); Tasha Stolber, *PFAS Chemicals Harm the Immune System, Decrease Response to Vaccines, New EWG Review Finds*, Environmental Working Group (November 12, 2020), https://www.ewg.org/news-and-analysis/2020/11/pfas-chemicals-harm-immune-system-decrease-response-vaccines-new-ewg.

and the amount in controversy exceeds $75,000.00.

9. Venue of this case is appropriate in the United States District Court for the District of South Carolina. Plaintiff states that but for the Order permitting direct filing into the District of South Carolina pursuant to Case Management Order No. 3, Plaintiff would have filed in the United States District Court for the Northern District of Alabama. Therefore, Plaintiff respectfully requests that at the time of transfer of this action back to the trial court for further proceedings that this case be transferred to the above referenced District Court.

## PARTIES

### A. PLAINTIFF

10. Plaintiff ALICE ATKINSON is currently a resident and citizen of Winfield, Marion County, Alabama.

11. Plaintiff was born in 1989.

12. Plaintiff resided and worked in Guin, Marion County, Alabama for over 20 years.

13. Plaintiff was diagnosed with Thyroid Disease as a result of exposure to Defendant's PFAS products.

### B. DEFENDANT

14. Defendant 3M Company, Inc. ("3M") is a foreign corporation organized and existing under the laws of the State of Delaware with its principal place of business located at 3M Center, St. Paul, Minnesota 55144. 3M is authorized

to do business in the State of Alabama and has been doing business in Marion County, Alabama at all times relevant hereto at its chemical and manufacturing plant located at 6675 U.S. Highway 43, Guin, Marion County, Alabama 35563. Defendant 3M is therefore a citizen of the State of Alabama. In addition to its plant, 3M owns and operates the 3M Guin Industrial Landfill ("3M Landfill") as a subsidiary of the 3M Company, Inc. The 3M Landfill is located on County Highway 83 near Twin in Marion County, Alabama, and operates under Alabama Department of Environmental Management Solid Waste Landfill Permit 47-06. The 3M Landfill has been doing business in Marion County at all times relevant hereto.

## FACTUAL ALLEGATIONS

## THE FLUOROCHEMICALS: PFAS

15. Plaintiff realleges all of the above and foregoing paragraphs as if fully set forth herein.

16. With over 5,000 individual chemicals, PFAS are a large and ever-growing category of man-made chemicals composed of a chain of carbon atoms in which all but one of the carbon atoms are bonded to fluorine atoms, and the last carbon atom is attached to a functional group. The carbon-fluorine bond is one of the strongest chemical bonds that occur in nature, which is a reason why these molecules are so persistent.

17. PFAS chemicals travel for miles in groundwater and surface water, do not bind with other compounds, and last virtually forever in the environment, which

is why scientists refer to PFAS as "forever chemicals."

18. PFAS compounds have been used for decades to produce products that are heat resistant, stain resistant, long lasting, and water and oil repellant, and have been found to have negative health effects.

19. Exposures to PFAS or PFAS-containing materials have resulted in serious and life-threatening diseases to human beings and animals alike and continue to pose a significant health threat to them given the bioaccumulation, pervasiveness, and persistence of PFAS.

20. 3M Company has discharged wastewater containing PFAS at Purgatory Creek, the water source for Marion County, Alabama, causing pollution to ground and surface waters. Defendant 3M has also been disposing solid waste containing PFAS chemicals at the 3M Landfill adjoining the Marion County cities of Guin and Twin, with a resultant chemical runoff into the sanitary sewer system owned and operated the Guin Water Works and Sewer Board ("GWWSB") and into watersheds, creeks, streams, and private spring water and wells.

21. GWWSB provides drinking water to residents in and around Guin, Marion County, Alabama, including the cities of Twin, Hamilton, and Winfield, and the water provided to ratepayers and other consumers by GWWSB is known to be contaminated by PFAS discharged by Defendant 3M from its manufacturing process in Guin, Marion County, Alabama, as well as PFAS in water runoff from the 3M

Landfill.

22. Plaintiff is a ratepayer and consumer of the GWWSB and used water from that utility for drinking and other domestic purposes.

23. A prior legal action with substantial identity of the party-defendant and claims, was filed by the GWWSB in The Circuit Court of Marion County, Alabama, on September 8, 2020: CITY OF GUIN WATER WORKS & SEWER BOARD v. 3M COMPANY, INC. ET AL., Civil Action No. CV-2020-900082. This case was dismissed (with leave to re-file) upon the execution of a settlement agreement executed by and between the parties. Plaintiff was not party to this state court action.

24. Plaintiff's water supply has been contaminated with PFAS and related chemicals released from Defendant's manufacturing processes and waste disposal operations located in Guin, Marion County, Alabama, which have migrated to her water supply.

25. Plaintiff's consumption, inhalation and/or dermal absorption of PFAS from Defendant's PFAS products has caused Plaintiff to develop the serious medical conditions and complications alleged herein.

26. As a result of Defendant's negligent acts and omissions, Plaintiff ALICE ATKINSON has been diagnosed with thyroid disease.

27. Plaintiff continues to suffer severe pain and suffering, and emotional distress.

## DEFENDANT'S HISTORY OF PRODUCTION OF PFAS

28. 3M began producing aqueous film forming foams ("AFFF") as part of a process called electrochemical fluorination (ECF) in the 1940s. This process results in a product that contains and/or breaks down into compounds containing PFAS.

29. For most of the past 30 years, the primary manufacturer of PFAS has been 3M, through its supply of AFFF. 3M manufactured, marketed, and sold AFFF and the raw materials for production of AFFF from the 1960s to the early 2000s.

30. In 2000, in response to pressure from the United States Environmental Protection Agency ("EPA"), 3M announced it would begin to phase out production its PFAS products.

31. On May 16, 2000, 3M issued a news release asserting that "our products are safe," citing the company's "principles of responsible environmental management" as the reason to cease production.

32. On the same day as 3M's phase out announcement, an EPA press release stated: "3M data supplied to EPA indicated that these chemicals are very persistent in the environment, have a strong tendency to accumulate in human and animal tissues and could potentially pose a risk to human health and the environment over the long term."

## DEFENDANT'S KNOWLEDGE OF THE DANGERS OF PFAS

33. For decades Defendant has been aware of the toxic nature of PFAS and

the harmful impact these substances have on human health. On information and belief, by the early 1980s, Defendant knew, or reasonably should have known, among other things, that:

(a) PFAS are toxic; and

(b) when introduced into the open environment per the instructions given by the manufacturer, PFAS readily migrate through the subsurface, mix easily with groundwater, resist natural degradation, render drinking water unsafe and/or non-potable, and can be removed from public drinking water supplies only at substantial expense.

34. Defendant also knew or reasonably should have known that PFAS could be absorbed into the lungs and gastrointestinal tract, potentially causing severe damage to the liver, kidneys, and central nervous system, in addition to other toxic effects, and that PFAS are known carcinogens which cause genetic damage.

35. 3M has long known about the serious and significant impacts to health caused by exposure to PFAS, having conducted study after study on the exposure and health effects of PFAS on animals, and in some cases, even on their own employees. The findings of these studies are known within the company internally yet were never made public in Guin and surrounding communities. Among the findings:

(a) A 1950 3M study showed that PFAS could build up in the blood of

mice and that PFAS could bind to proteins in human blood suggesting that PFAS would not only remain, but also persist and accumulate in the body of the exposed individuals with each additional exposure.[8]

(b) In 1963, 3M's technical handbook classified PFAS as toxic and advised that "due care should be exercised in handling these materials."[9]

(c) In 1970, a company that purchased 3M's firefighting foam had to abandon a test of the product because all the fish died.[10]

(d) By the end of the 1970s, studies performed by, at least 3M, indicated that PFAS materials were resistant to environmental degradation and would persist in the environment.[11]

(e) In 1981, 3M found that ingestion of PFAS caused birth defects in rats. 3M reported this information to DuPont. DuPont then tested the children of pregnant employees in its Teflon division and found that of seven births, two children had eye defects. Dupont reassigned the female employees but did not inform the EPA or make this information public.[12]

---

[8] Timeline - *For 50 Years, Polluters Knew PFAS Chemicals Were Dangerous But Hid Risks From Public*, Environmental Working Group, (2019), https://static.ewg.org/reports/2019/pfa-timeline/3M-DuPont-Timeline_sm.pdf; see also, https://www.ewg.org/pfastimeline/.

[9] *Id.*, at fn. 25.

[10] *Id.*

[11] PFCS: *Global Contaminants*: PFCs Last Forever, Environmental Working Group, (April 3, 2003), https://www.ewg.org/research/pfcs-global-contaminants/pfcs-last-forever.

[12] *Id.*, at fn. 25.

(f) In 1988, a company that purchased AFFF firefighting foam complained to 3M because the product was not biodegradable as 3M represented.[13] Subsequently, a 3M employee wrote an internal memo that "3M should stop perpetrating the myth that these fluorochemical surfactants are biodegradable, but the company continued to sell them."[14]

36. In the face of these findings, and despite passage of the Toxic Substances Control Act in 1976, which requires companies that manufacture, process or distribute chemicals to immediately report to the EPA information that "reasonably supports the conclusion" that a chemical presents a substantial risk to health or the environment, 3M did not inform the EPA, Plaintiff, or the public about the health impacts resulting from exposure to PFAS.[15] Indeed, in at least some instances, Defendant's own attorneys advised the companies to conceal its damaging findings on PFAS, which it did for decades.[16]

37. In June 2018, the Agency for Toxic Substances and Disease Registry (ASTDR), a division of the Centers for Disease Control and Prevention at the US Department of Health and Human Services released an 852-page draft toxicology report analyzing scientific data about the most common PFAS chemical variants,

[13] *The Devil S/he Knew: PFAS Contamination and the Need for Corporate Accountability, Part II*, Transcript of Hearing Before the Subcommittee on Environment of the Committee on Oversight and Reform, House of Representatives (September 19, 2019), https://docs.house.gov/meetings/GO/GO28/20190910/109902/HHRG-116-GO28-Transcript-20190910.pdf.

[14] *Id.*, at fn. 25.

[15] *Id.*.

[16] *Id.*. at fn. 33.

finding that PFAS "are potentially more hazardous than previously known, are particularly concerning because of these compounds' persistence in the environment and widespread prevalence."[17]

38. In 2000, 3M announced that it would cease manufacturing a specific PFAS chemical, PFOS, as well as Class B foam. On the same day, the EPA announced that PFOA and PFOS, two chemicals in the PFAS family, had a "strong tendency to accumulate in human and animal tissues and could potentially pose a risk to human health and the environment over the long term."[18]

39. However, Defendant 3M continued to manufacture, develop, market, promote, distribute, and sell PFAS chemicals and PFAS-containing products, and did so without any warning to the public that these products contained PFAS which posed a serious health risk to human health.

40. By the 2000s, Defendant's own research of its employees revealed multiple adverse health effects among workers who had been exposed to PFAS, including increased cancer incidence, hormone changes, lipid changes, and thyroid and liver impacts.[19]

---

[17] A Toxic Threat: Government Must Act Now on PFAS Contamination at Military Bases, Center for Science and Democracy (September 2018), https://www.ucsusa.org/sites/default/files/attach/2018/09/a-toxic-threat-pfs-military-fact-sheet-ucs-2018.pdf.
[18] EPA and 3M Announce Phase Out of PFOS, Press Release, United States Environmental Protection Agency (May 16, 2000), https://archive.epa.gov/epapages/newsroom_archive/newsreleases/33aa946e6cb11f35852568e1005246b4.html.
[19] *Id.*, at fn. 25

41. As alleged above, Defendant knew that PFAS are persistent, highly toxic, and carcinogenic bio-accumulating chemicals, and that exposure to PFAS can cause serious and life-threatening diseases, including thyroid disease.

42. Defendant, by its actions or inactions, proximately caused Plaintiff's injuries.

43. As a result, Plaintiff has suffered injuries and damage to her health as shall be set forth in Plaintiff's Fact Sheet and other responsive documents provided to the Defendant and are incorporated by reference herein.

44. As a result of the injuries Plaintiff sustained, she is entitled to recover compensatory damages for the pain and suffering, emotional distress, and for economic loss that she has suffered, as well as equitable and injunctive relief that the Court or jury may deem appropriate for punitive damages.

## FIRST CAUSE OF ACTION

## NEGLIGENCE, GROSS NEGLIGENCE/MALICE

45. Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

46. Defendant had a duty to individuals, including the Plaintiff, to exercise reasonable, ordinary, and appropriate care in the manufacturing, warning of the handling, control, use and disposal of Defendant's PFAS products.

47. Defendant knew or should have known that the release, storage, and disposal of waste containing toxic PFAS chemicals was hazardous to human health

and the environment.

48. Despite knowing that its PFAS products are toxic, can contaminate soil and water resources, and present significant risks to human health and the environment, Defendant breached its duty of care and was negligent, grossly negligent, reckless, and willful as described herein in the design, manufacture, labeling, warning, instruction, training, release, and disposal of its PFAS containing chemicals.

49. Defendant breached its duty of care and was negligent, grossly negligent, reckless, and willful as described herein in the disposal of Defendant's PFAS waste products in one or more of the following respects:

(a) Failing to use reasonable care in the disposal of PFAS waste products so as to avoid an unreasonable risk of harm to individuals, including the Plaintiff;

(b) Failing to use appropriate care in storing and disposal of its PFAS waste products so as to avoid an unreasonable risk of harm to individuals, including the Plaintiff;

(c) Failing to use appropriate care in instructing and/or warning the public as set forth herein of risks associated with its products, so as to avoid unreasonable risk of harm to individuals, including the Plaintiff; and

(d) Otherwise negligently or carelessly manufacturing, distributing,

warning about, and disposing of waste PFAS products which were inherently dangerous to the public and to Plaintiff.

50. Plaintiff was a foreseeable victim of the harm caused by Defendant's disposal of its PFAS waste products.

51. But for Defendant's negligent acts and/or omissions, Plaintiff would not have been exposed to unhealthy levels of fluorochemicals.

52. A reasonable manufacturer or distributor under the same or similar circumstances would have warned of the danger.

53. Defendant's disposal of its toxic PFAS products, despite its knowledge of the potential of harm to the unknowing public and Plaintiff, was so reckless or wanting in care that it constituted a conscious disregard and/or indifference to the life, safety, or rights of Plaintiff.

54. As a direct and proximate result of Defendant's negligence, the Plaintiff has been injured, sustained severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, comfort, economic loss, and damages including, but not limited to medical expenses, lost income, and/or other damages.

55. Defendant's conduct was so reckless or wanting in care that it constituted intentional or grossly negligent conduct.

56. As a direct and proximate result of Defendant's negligent acts and

omissions, Plaintiff has been diagnosed with thyroid disease and continues to suffer severe pain and suffering, and emotional distress.

57. The acts and omissions of the Defendant were negligent, intentional, reckless, malicious, willful and/or wanton, and as a direct and proximate result of Defendant's conduct, Plaintiff was exposed to hazardous and toxic chemicals which caused Plaintiff's injuries, and all accompanying pain, suffering, mental anguish, disability, impairment, loss of enjoyment of life, loss of care, comfort, economic loss and damages including but not limited to medical expenses, lost income, and/or other damages.

WHEREFORE, Plaintiff prays judgments against the Defendant for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.

## SECOND CAUSE OF ACTION
## NEGLIGENCE PER SE

58. Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

59. One or more federal statutes, including but not limited to 15 U.S.C. §§ 2607 and 2614, 33 U.S.C. §§ 1311(a) and 1342, and 42 U.S.C. §§ 300i-1 and 6921-6939e, impose duties of care on Defendant with regard to Defendant's actions and/or omissions towards Plaintiff and/or Plaintiff's safety.

60. By Defendant's acts and/or omissions resulting in harm to Plaintiff, Defendant violated and/or continues to violate and/or breach one or more federal statutes and/or duties, including but not limited to 15 U.S.C. §§ 2607 and 2614, 33 U.S.C. §§ 1311(a) and 1342, and 42 U.S.C. §§ 300i-1 and 6921-6939e, constituting negligence per se, including liability for all injuries to Plaintiff associated with the PFAS products.

61. As a direct and proximate result of Defendant's negligence per se, Plaintiff has been diagnosed with thyroid disease and continues to suffer severe pain and suffering, and emotional distress.

62. As a direct and proximate result of Defendant's violation of law and breach of its statutory duties, Plaintiff was exposed to hazardous and toxic PFAS chemicals which proximately caused Plaintiff's injuries, and all accompanying pain, suffering, mental anguish, disability, impairment, loss of enjoyment of life, loss of care, comfort, economic loss, and damages including but not limited to medical expenses, lost income, and/or other damages.

WHEREFORE, the Plaintiff prays judgments against the Defendant for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.

## <u>THIRD CAUSE OF ACTION</u>

## NEGLIGENT FAILURE TO WARN

63. Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

64. Defendant had a duty to warn of the foreseeable risks associated with the reasonably foreseeable uses of and/or exposure to her products.

65. Defendant knew or should have known:

(a) exposure to PFAS was hazardous to human health;

(b) the manner in which it was designing, developing, manufacturing, distributing, releasing, and disposing of its PFAS products was hazardous to human health: and

(c) the manner in which it was designing, developing, manufacturing, distributing, releasing, and disposing of PFAS products would result in the contamination of Plaintiff's blood and/or body as a result of exposure.

66. Had Defendant provided adequate instructions and warnings, Plaintiff's exposure to toxic and carcinogenic PFAS chemicals would have been reduced, avoided, or eliminated.

67. Adequate instructions and warnings on risk associated with exposure to PFAS chemicals could have alerted the local governments to take steps to reduce or prevent the release of PFAS chemicals into the blood and/or body of Plaintiff and

others in the community.

68. Defendant's failure to warn was a direct and proximate cause of Plaintiff's injuries from PFAS that came from the use, storage, and disposal of Defendant's PFAS products.

69. As a direct and proximate result of Defendant's failure to warn against the negative health effects of exposure to its PFAS products, Plaintiff has been diagnosed with thyroid disease and continues to suffer severe pain and suffering, and emotional distress.

70. The acts and omissions of Defendant were negligent, intentional, reckless, malicious, willful and/or wanton, and as a direct and proximate result of Defendant's conduct, Plaintiff was exposed to hazardous and toxic chemicals which proximately caused Plaintiff's injuries, and all accompanying pain, suffering, mental anguish, disability, impairment, loss of enjoyment of life, loss of care, comfort, economic loss, and damages including but not limited to medical expenses, lost income, and/or other damages.

WHEREFORE, the Plaintiff prays judgments against the Defendant for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.

## FOURTH CAUSE OF ACTION
## FRAUDULENT CONCEALMENT

71. Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

72. Defendant had, and continues to have, a duty of care to provide Plaintiff and users of Defendant's PFAS products with truthful representations regarding the actual and potential harm to their persons as a direct and proximate result of Defendants' acts and/or omissions.

73. Defendant has had and continues to have a general duty of care to disclose to Plaintiff, and the public at large, the actual and potential harm to their persons as a direct and proximate result of Defendant's acts and/or omissions, including a general duty of care to disclose to Plaintiff that Defendant had exposed, and was continuingly exposing Plaintiff to harmful levels of PFAS.

74. Defendant knowingly, intentionally, maliciously, willfully, wantonly, recklessly and/or negligently failed and/or refused to advise Plaintiff and the public at large of the dangers and/or health risks posed by Defendant's disposal of toxic PFAS products.

75. Defendant negligently, knowingly, maliciously, willfully, wantonly, recklessly, intentionally, and/or negligently withheld, misrepresented, and/or concealed information regarding Defendant's PFAS products from Plaintiff and the public at large, who had a right to know of information which would have prevented

Plaintiff from being exposed and/or continuing to be exposed to PFAS products.

76. For at least several decades, Defendant had knowledge or the means of knowledge that Defendant's PFAS products were causally connected with or could increase the risk of causing damage to humans and animals, including knowledge of statistically significant findings showing a causal connection between exposure to PFAS products and physical injuries in humans and animals.

77. Through Defendant's superior knowledge, responsibility, and/or control over the PFAS products, and Defendant's voluntary actions and/or representations, a relationship of trust and confidence existed between Defendant and Plaintiff, and between Defendant and the people of Marion County, Alabama.

78. Despite Defendant's knowledge regarding PFAS exposure, and despite Defendant's duties to disclose to Plaintiff, Defendant negligently, maliciously, knowingly, willfully, wantonly, recklessly and/or intentionally withheld, misrepresented, and/or concealed information from Plaintiff regarding exposure to PFAS products.

79. Defendant withheld, misrepresented, and/or concealed information regarding PFAS exposure from Plaintiff and users of its PFAS products, with the intention to mislead and/or defraud Plaintiff and others who came in contact with Defendant's PFAS products into believing that PFAS exposure was not harmful, and to mislead and/or defraud Plaintiff into continuing to endure exposure to PFAS

products.

80. Defendant's withholding, misrepresentation, and/or concealment of information regarding PFAS exposure was a substantial factor in causing Plaintiff's harm.

81. As a direct and proximate result of the aforesaid acts and/or omissions by Defendant, acting for and on its own behalf and as agent, ostensible agent, employee, conspirator and/or joint venture of others, Plaintiff was exposed to Defendant's PFAS products and was injured.

82. As a direct and proximate result of Defendant's withholding, misrepresentation, and/or concealment of information regarding the negative health effects of exposure to its PFAS products, Plaintiff has been diagnosed with thyroid disease and continues to suffer severe pain and suffering, and emotional distress.

83. The acts and omissions of Defendant were negligent, intentional, reckless, malicious, willful and/or wanton, and as a direct and proximate result, Plaintiff was exposed to hazardous and toxic chemicals which caused Plaintiff's injuries, and all accompanying pain, suffering, mental anguish, disability, impairment, loss of enjoyment of life, loss of care, comfort, economic loss, and damages including but not limited to medical expenses, lost income, and/or other damages.

WHEREFORE, Plaintiff prays judgments against the Defendant for actual,

compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.

## FIFTH CAUSE OF ACTION
## TRESSPASS AND BATTERY

84. Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

85. Defendant has known for several decades that its PFAS products are harmful and toxic to humans and animals, and once ingested, will remain in a person's body for a long time, including through binding to blood and/or tissues.

86. Despite such knowledge, Defendant continued to manufacture and dispose of its PFAS products, which caused harmful physical contact with Plaintiff.

87. Defendant's continued actions with knowledge that such actions will result in harmful physical contact with Plaintiff demonstrate intent and/or reckless indifference by Defendant without regard to the harm it has caused and will cause.

88. Defendant's intentional acts and/or omissions have resulted in the introduction of PFAS in the body of Plaintiff or otherwise unlawful and harmful invasion, contact, and/or presence of PFAS in Plaintiff's body, which interfered with Plaintiff's rightful use and possession of her body.

89. The PFAS present in and/or on Plaintiff's body originating from Defendant's PFAS products were at all relevant times hereto, and continue to be, the

property of Defendant.

90. The invasion and presence of the PFAS products in and/or on Plaintiff's body was unconsented and without permission or authority from Plaintiff or anyone who could grant such permission or authority.

91. Defendant's intentional acts and/or omissions were done with the knowledge and/or belief that the invasion, contact, and/or presence of PFAS products onto, and/or into Plaintiff's body were substantially certain to result from those acts and/or omissions.

92. Harmful contact with Plaintiff's body was the direct and/or indirect result of Defendant's intentional acts and/or omissions.

93. The presence and continuing presence of the PFAS products in and/or on Plaintiff's body is offensive, unreasonable, and/or harmful, and constitutes a continuing and/or permanent trespass and battery.

94. As a direct and proximate result of Defendant's past and continuing trespass and battery upon Plaintiff's body, Plaintiff has been diagnosed with thyroid disease and continues to suffer severe pain and suffering, and emotional distress.

95. As a direct and proximate result of Defendant's past and continuing trespass and battery upon Plaintiff's body, Plaintiff was exposed to hazardous and toxic chemicals which caused Plaintiff's injuries, and all accompanying pain, suffering, mental anguish, disability, impairment, loss of enjoyment of life, loss of

care, comfort, economic loss, and damages including but not limited to medical expenses, lost income, and/or other damages.

WHEREFORE, Plaintiff prays judgments against the Defendant for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.

## SIXTH CAUSE OF ACTION

## NEGLIGENT, INTENTIONAL, AND RECKLESS INFLICTION OF EMOTIONAL DISTRESS

96. Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

97. Defendant's acts and/or omissions were negligent, intentional, and/or reckless, including Defendant's continued pollution of the environment and resultant exposure of Plaintiff to harmful PFAS products, despite knowing for decades that such exposure was causing and would continue to cause harm and/or unacceptable risk of harm to Plaintiff.

98. Defendant negligently, knowingly and/or intentionally withheld and concealed material information from Plaintiff and others who came in contact with Defendant's PFAS products that they were exposed to harmful PFAS products and/or that the PFAS products were causing or creating risk of harm to them, despite knowing at the time of these concealments that the PFAS products were causing and

would continue to cause harm and/or unacceptable risk of harm to persons, including Plaintiff.

99. At the time of Defendant's negligent, knowing, and/or intentional acts and/or omissions, it was foreseeable to Defendant, and Defendant was certain and/or substantially certain that its actions and/or omissions would cause emotional distress to Plaintiff.

100. Defendant's acts and/or omissions were extreme, outrageous, intolerable, and/or offended the generally accepted standards of decency and morality.

101. By continuing to expose Plaintiff to harmful PFAS products, and/or continuing to withhold and/or conceal material information on such issues from Plaintiff and other users who come in contact with Defendant's PFAS products, despite knowing that the PFAS products were causing and would continue to cause harm and/or risk of harm, Defendant acted in an extreme, outrageous, and intolerable manner which offended any generally accepted standard of decency and morality.

102. Defendant's acts and/or omissions resulting in Defendant's concealment, directly and proximately caused physical harm, and continue to cause physical harm to Plaintiff.

103. Defendant's extreme, outrageous and intolerable actions were a substantial factor in causing Plaintiff to suffer severe physical, mental, and

emotional distress.

104. No reasonable person could be expected to endure the mental anguish caused by the knowledge that Defendant has negligently, knowingly, and/or intentionally exposed them to years of harmful contact with PFAS chemicals, and has furthermore actively concealed such danger from them, while reaping hundreds of millions of dollars in profits as a direct and proximate result.

105. As a direct and proximate result of Defendant's extreme, outrageous and intolerable actions, Plaintiff has suffered severe physical, mental, and emotional distress.

WHEREFORE, Plaintiff prays judgments against the Defendant for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.

## SEVENTH CAUSE OF ACTION
## DESIGN DEFECT

106. Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

107. Defendant knew or should have known that:

(a) exposure to PFAS is hazardous to human health;

(b) the nature of the design and properties of PFAS if not properly transported, stored and/or disposed was hazardous to human health; and

(c) the nature of the design and properties of PFAS if not properly transported, stored and/or disposed could and would release PFAS into Plaintiff' and cause the exposure and bioaccumulation of these toxic and poisonous chemicals in the blood and/or body of Plaintiff.

108. Knowing of the dangerous and hazardous properties of its PFAS products, Defendant could have designed, manufactured, transported, stored, and disposed alternative designs or formulations of products that did not contain hazardous and toxic PFAS. These alternative designs and formulations were already available, practical, and technologically feasible. The use of these alternative designs would have reduced or prevented reasonably foreseeable harm to Plaintiff caused by the Defendant's design, manufacture, marketing, distribution, and disposal of hazardous and toxic PFAS products.

109. Defendant's PFAS products and its disposed waste were so hazardous, toxic, and dangerous to human health that the act of designing, formulating, manufacturing, transporting, storing, and disposing of the waste was unreasonably dangerous under the circumstances.

110. Defendant's PFAS products were defectively designed, formulated, manufactured, stored and/or disposed and the foreseeable risk of harm could and would have been reduced or eliminated by the adoption of a reasonable alternative design that was not unreasonably dangerous.

111. Defendant's defective design and formulation of its PFAS products was a direct and proximate cause of the contamination of the blood and/or body of

Plaintiff and the persistence and accumulation of PFAS in Plaintiff's blood and/or body.

112. As a direct result of the harm and injury caused by Defendant's defective design and the contamination described herein, Plaintiff was exposed to PFAS and developed conditions which caused or contributed to her injuries.

113. As a direct and proximate result of Defendant's conduct, Plaintiff was exposed to hazardous and toxic chemicals which caused Plaintiff's injuries, and all accompanying pain, suffering, mental anguish, disability, impairment, loss of enjoyment of life, loss of care, comfort, economic loss, and damages including but not limited to medical expenses, lost income, and/or other damages.

WHEREFORE, the Plaintiff prays judgments against the Defendant for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.

## **EIGHTH CAUSE OF ACTION**

## **STRICT LIABILITY (STATUTORY)**

114. Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

115. Plaintiff asserts any and all remedies available under statutory causes of action from Plaintiff's state for strict liability against each Defendant.

116. The Defendant was engaged in designing, manufacturing,

transportation, storage, distribution and/or disposal of PFAS products which are unreasonably dangerous to users and/or consumers.

117. As a direct and proximate result of Defendant's conduct, Plaintiff was exposed to hazardous and toxic chemicals which proximately caused Plaintiff's injuries, and all accompanying pain, suffering, mental anguish, disability, impairment, loss of enjoyment of life, loss of care, comfort, economic loss, and damages including but not limited to medical expenses, lost income, and/or other damages.

118. The Defendant had available reasonable alternative designs which would have made for safer products and would have most likely prevented the injuries and damages to the Plaintiff, thus violating state law and the Restatement of Torts.

119. The Defendant's PFAS products are inherently dangerous and defective, unfit, and unsafe for the intended and reasonably foreseeable uses, and do not measure up to expectations.

120. As a direct and proximate result of Defendant's conduct, Plaintiff was exposed to hazardous and toxic chemicals which caused Plaintiff's injuries, and all accompanying pain, suffering, mental anguish, disability, impairment, loss of enjoyment of life, loss of care, comfort, economic loss, and damages including but not limited to medical expenses, lost income, and/or other damages.

121. The Defendant is strictly liable in tort for its wrongful conduct.

WHEREFORE, the Plaintiff prays judgments against the Defendant for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.

## TOLLING OF THE STATUTE OF LIMITATIONS

## DISCOVERY RULE TOLLING

122. Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

123. Plaintiff had no way of knowing about the risks of serious injury associated with the use of and exposure to PFAS until very recently.

124. All applicable statute of limitations have also been tolled by Defendant's knowing and active fraudulent concealment and denial of the facts alleged herein throughout the time period relevant to this action.

125. Within the time period of any applicable statute of limitations, Plaintiff could not have discovered, through the exercise of reasonable diligence, that exposure to PFAS is harmful to human health.

126. Plaintiff did not discover and did not know of facts that would cause a reasonable person to suspect the risk associated with the use of and exposure to PFAS; nor would a reasonable and diligent investigation by Plaintiff have disclosed that PFAS could cause personal injury.

127. For these reasons, all applicable statutes of limitations have been tolled by operation of the discovery rule with respect to Plaintiff's claims.

**FRAUDULENT CONCEALMENT TOLLING**

128. Defendant has consistently and falsely represented the safety of its PFAS products instead of disclosing critical safety information.

129. This fraudulent concealment continues till present day.

130. Due to this fraudulent concealment, all applicable statutes of limitations have been tolled by operation of the discovery rule.

**ESTOPPEL**

131. Defendant was under a continuous duty to end users, and other persons coming into contact with its products, including Plaintiff, to accurately provide safety information concerning its PFAS products and the risk associated with the use of and exposure to PFAS.

132. Instead, Defendant knowingly and actively concealed safety information concerning PFAS and the serious risks associated with the use of and exposure to PFAS.

133. Based on the foregoing, Defendant is estopped from relying on any statute of limitations in defense of this action.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgments against Defendant on each of the above-referenced claims and Causes of Action as follows:

(a) Awarding compensatory damages to Plaintiff for past and future damages, including but not limited, to pain and suffering for severe and permanent personal injuries sustained by the Plaintiff, health care costs, medical monitoring, together with interest and costs as provided by law;

(b) Punitive and/or exemplary damages for the wanton, willful, fraudulent, and/or reckless acts of the Defendant who demonstrated a complete disregard and reckless indifference for the safety and welfare of the Plaintiff and of the general public and to the Plaintiff in an amount sufficient to punish Defendant and deter future similar conduct;

(c) Awarding Plaintiff's attorneys' fees;

(d) Awarding Plaintiff the costs of these proceedings; and

(e) Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff ALICE ATKINSON hereby demands a trial by jury as to all claims in this action.

Respectfully submitted this 16th day of June 2025.

Respectfully Submitted,

/s/ *John Benochi*

John Benochi
**BENOCHI LAW FIRM, LLC**
P.O. Box 55211
Birmingham, AL 35255
(502) 257-3700
jbenochi@benochilaw.com