**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| **IN RE: AQUEOUS FILM-FORMING FOAMS PRODUCTS LIABILITY LITIGATION** | MDL No. 2:18-mn-2873-RMG<br><br>**This Document relates to:**<br><br>*Donnelly v. 3M, et al.*, No. 2:20-cv-00209-RMG<br>*Speers v. 3M, et al.*, No. 2:21-cv-03181-RMG<br>*Voelker v. 3M, et al.*, No. 2:18-cv-03438-RMG |

**DEFENDANT BASF CORPORATION'S MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**

Matthew A. Holian
**DLA PIPER LLP (US)**
33 Arch Street, 26th Floor
Boston, Massachusetts 02110-1447
T: (617) 406.6009
F: (617) 406.6109
matt.holian@us.dlapiper.com

John Wellschlager
**DLA PIPER LLP (US)**
650 South Exeter Street Suite 1100
Baltimore, Maryland 21202
T: (410) 580.4281
F: (410) 580.3281
john.wellschlager@us.dlapiper.com

*Counsel for Defendant BASF Corporation*

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................1

STATEMENT OF UNDISPUTED FACTS ........................................................................1

I.    Plaintiffs' Claims Against BASF/Ciba Fail Because They Have Not Identified A Defective Ciba Product That Was a Substantial Cause of the PFOA to Which Plaintiffs Were Exposed. .......................................................................................4

    A.    Plaintiffs Have Not Identified A Defective Ciba Product That Was a Component of the Ansulite Used at the Bases. .............................................5

    B.    Plaintiffs Have Not Met Their Burden to Prove That a Defective Ciba Product Was a Substantial Contributing Cause of Plaintiffs' Kidney Cancer. ..................................................................................................8

II.    BASF/Ciba Is Entitled to Summary Judgment under the Government Contractor Defense.. ......................................................................................................9

    A.    As A Subcontractor, Ciba Is Entitled to the Government Contractor Defense. ...................................................................................10

    B.    Ciba Lacked Actual Knowledge of Any Defect. .......................................10

CONCLUSION...............................................................................................................11

## TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)................................................................................................7

*Barton v. Lowe's Home Centers, Inc.*,
124 A.3d 349 (Pa. Super. Ct. 2015)...................................................................5, 8

*Curtis v. Pneumo Abex Corp. (In re Asbestos Prods. Liab. Litig.)*,
801 F. Supp. 2d 342(E.D. Pa. 2011) .................................................................7, 8

*Eckenrod v. GAF Corp.*,
544 A.2d 50 (Pa. Super. Ct. 1988) .........................................................................5

*Galullo v. Fed. Exp. Corp.*,
937 F. Supp. 392 (E.D. Pa. 1996) ..........................................................................8

*Getz v. Boeing Co.*,
654 F.3d 852 (9th Cir. 2011) ................................................................................10

*Goodie v. United States*,
2013 WL 968198 (D. Md. Mar. 12, 2013)..............................................................8

*Gregg v. V-J Auto Parts, Inc.*,
943 A.2d 216 (Pa. 2007) ....................................................................................5, 8

*Griffin v. JTSI, Inc.*,
2009 WL 8761211 (D. Haw. July 28, 2009).........................................................10

*Jobe v. W.P. Metz Ref.*,
664 A.2d 1015 (Pa. Super. Ct. 1995)......................................................................5

*Kerstetter v. Pac. Sci. Co.*,
210 F.3d 431 (5th Cir. 2000) ................................................................................10

*LaForge v. ECC Operating Servs.*,
2010 WL 497657 1 (E.D. La. Feb. 5, 2010) .........................................................10

*Maguire v. Hughes Aircraft Corp.*,
725 F. Supp. 821 (D.N.J. 1989), *aff'd* 912 F.2d 67 (3d Cir. 1990)......................10

*Ramey v. Martin-Baker Aircraft Co.*,
874 F.2d 946 (4th Cir. 1989) ................................................................................10

*Weible v. Allied Signal Inc.*,
963 A.2d 521 (Pa. Super. Ct. 2008).......................................................................8

**Other Authorities**

Restatement (Second) of Torts (1965) ..........................................................................8

## INTRODUCTION

Defendant BASF Corporation ("BASF"), sued individually and as a successor-in-interest to Ciba Inc. ("Ciba"), respectfully moves for summary judgment on all claims in these bellwether cases for three reasons.[1] ***First***, Plaintiffs have failed to identify a defective Ciba-manufactured product that was a component in the telomer AFFF used at the military bases at issue in these bellwether cases. ***Second***, Plaintiffs have failed to prove that a defective Ciba product is a substantial contributing cause of their cancer. ***Third***, as Tyco's subcontractor, the government contractor defense immunizes Ciba on the facts specific to these cases.

## STATEMENT OF UNDISPUTED FACTS

███████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████  ████████████████████████

██████████████████████████████████████████████████████

█████████████████████████████████████████████████

    █████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

---

[1] Although Ciba no longer exists as a separate entity, this brief generally will refer to Ciba because it was the entity that sold the surfactant Lodyne to Tyco/Ansul for use in AFFF.

[2] JX refers to the joint exhibits filed in connection with Defendants' Omnibus Summary Judgment and *Daubert* motions on this date.

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████

Neither BASF nor Ciba ever manufactured AFFF, PFOS, or PFOA. *See* Ex. BASF-5 (BASF Resp. to Pls.' 1st Interrogs.) at 8–9. From the mid-1970s until 2003, Ciba manufactured fluorosurfactant products sold under the Lodyne brand name for use as a component in FT-AFFF, but Ciba never made the telomers used to manufacture its fluorosurfactants. *See id.* at 21–22. ██

████████████████████████████████████████████████████

████████████████ In 2003, Ciba sold the Lodyne product line for AFFF to Chemguard, and in 2009, BASF acquired Ciba. *See* BASF Resp. to Pls.' 1st Interrogs. 8–9; Ex. BASF-6 (Munsell Dep.) at 88:21–25.

Plaintiffs' product identification expert, Dr. Christopher Higgins, ████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

2

███████████████████████████████████████████████

██████████████████████████████████████

      ██████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████.

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████.

      In the absence of sales records or data analysis, Plaintiffs have not demonstrated that *any* allegedly defective Ciba Lodyne product was in the Ansulite at issue. ███████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████

      ███████████████████████████████████████████

███████████████████████████████████████████

████████████████████.

      ██████████████████████████████████████

███████████████████████████████████████████████

.

This record makes plain that Dr. Higgins does not propose to offer expert testimony at trial identifying as defective any particular Ciba Lodyne product or formulation that was in fact incorporated into any Ansulite released at the bases. *See supra* at 3. Nor does he intend to present any empirical or analytical evidence that could support such identification. *See id.* Instead, he would merely speculate—without a scientific foundation—about which Lodyne product *might* have been present in Ansulite that *might* have been used at the bases at the relevant times.

## ARGUMENT

I.   **Plaintiffs' Claims Against BASF/Ciba Fail Because They Have Not Identified A Defective Ciba Product That Was a Substantial Cause of the PFOA to Which Plaintiffs Were Exposed.**

Lodyne that contains *some* amount of C8 chemistry, standing alone, cannot be deemed defectively designed.  Instead, the alleged defect arises, if at all, only after the component has been incorporated into a FT-AFFF formulation in which C8 (the 8:2 telomer Plaintiffs claim breaks down to PFOA) exceeds the 25% threshold identified by Plaintiffs. Consequently, to carry their burden of proof against BASF/Ciba, Plaintiffs must establish that: (1) Ciba manufactured a Lodyne product formulated with C8 for use in AFFF applications that was incorporated into a finished AFFF formulation used at the bases; (2) when the finished foam was

blended, C8 constituted at least 25% of the total fluorotelomer content; (3) the C8 present in the finished foam derived from the Lodyne component; and (4) the finished foam containing that concentration of C8 was released at the relevant bases in quantities sufficient to be a substantial contributing cause of the PFOA detected in Plaintiffs' drinking water, and ultimately their blood. Plaintiffs fail to satisfy any of these essential elements, and their claims fail as a matter of law.

### A.  Plaintiffs Have Not Identified A Defective Ciba Product That Was a Component of the Ansulite Used at the Bases.

In a Pennsylvania products-liability action, a plaintiff must prove that the defendant's specific product—not merely a product that resembles it—was present at the relevant site and was a substantial factor in producing the alleged harm. *See, e.g.*, *Eckenrod v. GAF Corp.*, 544 A.2d 50, 52-53 (Pa. Super. Ct. 1988); *Gregg v. V-J Auto Parts, Inc.*, 943 A.2d 216, 226-27 (Pa. 2007). Generalized product identification is insufficient to withstand summary judgment. *Jobe v. W.P. Metz Ref.*, 664 A.2d 1015, 1017 (Pa. Super. Ct. 1995). When multiple suppliers are responsible for a product, a plaintiff must provide evidence of exposure to a specific defendant's product. *Id.*, 664 A.2d at 1017 (generalized site-wide evidence or speculation of product identification is insufficient). And the mere presence of a defendant's product is not enough, as the "threshold inquiry in all products liability cases is whether there is a defect." *Barton v. Lowe's Home Centers, Inc.*, 124 A.3d 349, 355 (Pa. Super. Ct. 2015). Here, Ciba is entitled to summary judgment because Plaintiffs have not identified a defective Ciba product used at the bases during the relevant years that degraded into the PFOA that forms the basis of Plaintiffs' claims.

First, ████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████.

Faced with this record, Plaintiffs offer no proof that the Ansulite used at the bases contained anything other than C6-based Lodyne during the relevant time. ████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████

Dr. Higgins' own testimony underscores the speculative nature of his opinions. ██████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

Such admissions illustrate that Dr. Higgins has no reliable basis for opining on the presence of a

specific Lodyne blended into an Ansulite product containing any appreciable concentration of C8 that was used at the bases during the relevant years.

[REDACTED]

Further, [REDACTED]

[REDACTED] Because Dr. Higgins did none of this, Plaintiffs lack any forensic chemistry basis for tracing PFOA at the bases back to Ansulite, let alone to a C8 Lodyne component made by Ciba. This decision to forego a forensic analysis leaves Plaintiffs' experts resorting to speculation, but a "mere existence of a scintilla of evidence" is insufficient as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 266 (1986); *see Curtis v. Pneumo Abex Corp. (In re Asbestos Prods. Liab. Litig.)*, 801 F. Supp. 2d 342, 345-46 (E.D. Pa. 2011); *Weible v. Allied Signal Inc.*, 963 A.2d 521, 529 (Pa. Super. Ct. 2008).

Accordingly, there is no triable issue of material fact as to BASF/Ciba's alleged liability, and BASF/Ciba is entitled to judgment as a matter of law on all of Plaintiffs' claims. *See, e.g.*, Restatement (Second) of Torts § 402A(1) (1965) ("defective condition" required for strict liability claim); *Goodie v. United States*, 2013 WL 968198, at *5–6 (D. Md. Mar. 12, 2013) (granting summary judgment as to negligence claim where plaintiffs' own experts admitted no violation of the standard of care); Tyco MSJ at 10, n. 6 (Plaintiffs' other claims).

**B.      Plaintiffs Have Not Met Their Burden to Prove That a Defective Ciba Product Was a Substantial Contributing Cause of Plaintiffs' Kidney Cancer.**

In addition to showing a defective Ciba product was used at the bases, Plaintiffs also must show that *each* specific defendant's product was a "substantial" factor in causing the alleged injury. *See* Tyco MSJ at 5 (noting further that expert proof is required for cases involving medical causation). "[G]eneralized opinions do not suffice to create a jury question in a case where exposure to the defendant's product is de minimus, particularly in the absence of evidence excluding other possible sources of exposure or in the face of evidence of substantial exposure from other sources." *Gregg v. V-J Auto Parts Co.*, 943 A.2d 216, 226-27 (Pa. 2007); *see also In re Asbestos Prods. Liab. Litig.* (No. VI), 801 F. Supp. 2d 342, 346 (E.D. Pa. 2011); *Galullo v. Fed. Exp. Corp.*, 937 F. Supp. 392, 396 (E.D. Pa. 1996). Mere possibility is not enough. *Galullo*, 937 F. Supp. at 396 (citing Restatement (Second) of Torts § 433B (1965)).

Not one of Plaintiffs' experts opines that a Ciba Lodyne product specifically caused Plaintiffs' kidney cancer, let alone was a substantial factor. ████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ██████████████████████████████████████ Plaintiffs' failure to shoulder their burden on causation mandates judgment in favor of BASF/Ciba on all of Plaintiffs' claims.



Plaintiffs have not quantified any amount of C8 present in the Ansulite used at the bases because of a defective Ciba Lodyne product. Without even an assessment of the C8 concentration in the Lodyne allegedly contained in the blend of Ansulite used at the bases, Plaintiffs cannot establish that a Ciba Lodyne product was a substantial factor in causing their alleged injuries. Accordingly, because no evidence creates a genuine dispute of material fact on causation, Plaintiffs' claims against BASF/Ciba fail as a matter of law.

## II.     BASF/Ciba Is Entitled to Summary Judgment under the Government Contractor Defense.

BASF/Ciba is also entitled to summary judgment under the government contractor defense. Ciba incorporates by reference Tyco's prior briefing on the subject, *see* Dkt. Nos. 1965-1, 2141, 2346, 2348, 2438, as well as Tyco's MSJ.  *See* Tyco MSJ at 10-15.  Two additional points are

worth mentioning: (1) Ciba is entitled to the defense even though it did not contract directly with the government; and (2) Ciba also lacked actual knowledge of any defect during the relevant time.

**A.    As A Subcontractor, Ciba Is Entitled to the Government Contractor Defense.**

Federal courts, including the Fourth Circuit, have held that government contractor immunity passes through from general contractors to subcontractors. *See, e.g.*, *Ramey v. Martin-Baker Aircraft Co.*, 874 F.2d 946, 951 (4th Cir. 1989) (extending government contractor immunity to a subcontractor of an allegedly defective aircraft ejection seat designed for the United States Navy); *LaForge v. ECC Operating Servs.*, 2010 WL 497657, at *1 (E.D. La. Feb. 5, 2010) (dismissing plaintiff's argument that a subcontractor cannot assert the government contractor defense); *Griffin v. JTSI, Inc.*, 2009 WL 8761211, at *12, n.35 (D. Haw. July 28, 2009) ("Subcontractors are afforded the same protections under the government contractor defense as prime contractors."); *Maguire v. Hughes Aircraft Corp.*, 725 F. Supp. 821, 825 (D.N.J. 1989), *aff'd* 912 F.2d 67 (3d Cir. 1990) (granting a subcontractors' motion for summary judgment based on government contractor immunity). That is sensible, because "[i]f plaintiff's position is accepted, subcontractors exposed to liability will pass those increased costs to the prime contractors who will subsequently pass them to the government." *LaForge*, 2010 WL 497657, at *1. Thus, the "same policies which support the defense for the [general contractor] are applicable to the [subcontractor]." *Maguire*, 725 F. Supp. at 825.

**B.    Ciba Lacked Actual Knowledge of Any Defect.**

*Boyle* requires that Ciba must lack *actual* knowledge of any potential defect. *See Getz v. Boeing Co.*, 654 F.3d 852, 865 (9th Cir. 2011); *Kerstetter v. Pac. Sci. Co.*, 210 F.3d 431, 436 (5th Cir. 2000). Before 3M exited the AFFF market, Ciba—which did not manufacture the telomers it used to make Lodyne—had no knowledge that the telomer iodides it used in Lodyne could degrade to PFOA in the environment. █████████████████████████████



## CONCLUSION

For the foregoing reasons, Defendant BASF respectfully requests that the Court enter summary judgment in its favor on all claims.

11

Dated: June 17, 2025                    Respectfully submitted,

                                        */s/ Matthew A. Holian*
                                        Matthew A. Holian
                                        DLA PIPER LLP (US)
                                        33 Arch Street, 26th Floor
                                        Boston, Massachusetts 02110-1447
                                        T: (617) 406.6009
                                        F: (617) 406.6109
                                        matt.holian@us.dlapiper.com

                                        John Wellschlager
                                        DLA PIPER LLP (US)
                                        650 South Exeter Street Suite 1100
                                        Baltimore, Maryland 21202
                                        T: (410) 580.4281
                                        F: (410) 580.3281
                                        john.wellschlager@us.dlapiper.com

                                        **Attorneys for Defendant BASF Corporation**


## <u>CERTIFICATE OF SERVICE</u>

I certify that on June 17, 2025, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify the foregoing document is being served this day on all counsel of record in this case via transmission of Notice of Electronic Filing generated by CM/ECF.

                                        */s/ Matthew A. Holian*
                                        Matthew A. Holian