IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| In Re: AQUEOUS FILM-FORMING FOAMS PRODUCTS LIABILITY LITIGATION | MDL No. 2:18-mn-2873-RMG<br><br>**This Document Relates to:**<br><br>*Brock Donnelly v. 3M Company et al.*, No. 2:20-cv-00209-RMG<br><br>*Clinton Speers & Gail Speers v. 3M Company et al.*, No. 2:21-cv-03181-RMG<br><br>*Kevin Voelker v. 3M Company et al.*, No. 2:18-cv-03438-RMG |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 1

ARGUMENT ...................................................................................................................... 2

I.     Plaintiffs Cannot Prove Causation. ......................................................................... 2

      A.    Plaintiffs Have No Admissible Evidence Of General Causation ........................... 4

            1.    Plaintiffs Have No Evidence Of An Association Between PFOS/PFOA And Kidney Cancer At Relevant Exposure Levels .............. 5

            2.    Dr. Braun's Opinion That "Any Amount" Of Exposure To PFOS And PFOA Increases The Risk Of Kidney Cancer Does Not Raise a Genuine Issue of Material Fact. ............... 7

      B.    Plaintiffs Have No Admissible Evidence Of Specific Causation. ......................... 8

            1.    Because Plaintiffs Have Not Ruled Out Alternative Causes Of Their Kidney Cancer, The Court Should Grant Summary Judgment. ................ 9

            2.    Because Plaintiffs Have No Admissible Evidence Of Exposure To Harmful Levels Of PFOS Or PFOA, Defendants Are Entitled To Summary Judgment. ............ 11

      C.    Plaintiffs Have No Evidence That AFFF Made By Any Specific Defendant Caused Their Cancer. ............ 13

II.    Defendants Are Entitled To Summary Judgment On Plaintiffs' Strict-Liability Claim And Mr. Speers's Misrepresentation Claims. ............ 15

CONCLUSION .................................................................................................................. 18

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Allegheny Gen. Hosp. v. Philip Morris, Inc.*,
   228 F.3d 429 (3d Cir. 2000)...........................................................................................2

*In re Asbestos Prods. Liab. Litig. (No. VI)*,
   801 F. Supp. 2d 342 (E.D. Pa. 2011) ..............................................................3, 14, 15

*Betz v. Pneumo Abex, LLC*,
   44 A.3d 27 (Pa. 2012) .....................................................................................................8

*Bonilla v. Am. Heritage Fed. Credit Union*,
   2021 WL 3612166 (3d Cir. Aug. 16, 2021)...............................................................17

*Buzzerd v. Flagship Carwash of Port St. Lucie, Inc.*,
   2009 WL 105501 (M.D. Pa. Jan. 16, 2009)........................................................11, 12

*City of Philadelphia v. Lead Indus. Ass'n*,
   994 F.2d 112 (3d Cir. 1993)........................................................................................15

*In re Deepwater Horizon BELO Cases*,
   119 F.4th 937 (11th Cir. 2024) .....................................................................................5

*Edelen & Boyer Co. v. Kawasaki Loaders, Inc.*,
   1994 WL 483436 (E.D. Pa. Sept. 7, 1994) ..............................................................17

*Feudale v. Aqua Pa., Inc.*,
   122 A.3d 462 (Pa. Commw. Ct. 2015) ......................................................................17

*Gregg v. V-J Auto Parts, Co.*,
   943 A.2d 216 (Pa. 2007)............................................................................3, 7, 9, 11, 13

*Hoefling v. U.S. Smokeless Tobacco Co., LLC*,
   576 F. Supp. 3d 262 (E.D. Pa. 2021) .....................................................................3, 10

*Krik v. Exxon Mobil Corp.*,
   870 F.3d 669 (7th Cir. 2017) ........................................................................................7

*In re Lipitor (Atorvastatin Calcium) Mktg., Sales Pracs. & Prods. Liab. Litig.*
   ("*Lipitor II*"),
   150 F. Supp. 3d 644 (D.S.C. 2015)....................................................................6, 8, 9

*In re Lipitor (Atorvastatin Calcium) Mktg., Sales Pracs. & Prods. Liab. Litig.*
   ("*Lipitor III*"),
   174 F. Supp. 3d 911 (D.S.C. 2016)...............................................................................6

*In re Lipitor (Atorvastatin Calcium) Mktg., Sales Pracs. & Prods. Liab. Litig.*
   ("*Lipitor IV*"),
   227 F. Supp. 3d 452 (D.S.C. 2017), *aff'd*, 892 F.3d 624 (4th Cir. 2018)..................3

**TABLE OF AUTHORITIES**
(*continued*)

Page(s)

*In re Lipitor (Atorvastatin Calcium) Mktg., Sales Pracs. & Prods. Liab. Litig.*
  ("*Lipitor V*"),
  892 F.3d 624 (4th Cir. 2018) ...............................................................5, 6, 7, 9, 11

*McMunn v. Babcock & Wilcox Power Generation Grp., Inc.*,
  869 F.3d 246 (3d Cir. 2017)..................................................................................12

*Menkes v. 3M Co.*,
  2018 WL 2298620 (E.D. Pa. May 21, 2018) ...................................................16, 17

*In re Paoli R.R. Yard PCB Litig.*,
  35 F.3d 717 (3d Cir. 1994)................................................................................3, 10

*Pegg v. Gen. Motors Corp.*,
  391 A.2d 1074 (Pa. Super. 1978).........................................................................17

*Perry v. Novartis Pharms. Corp.*,
  564 F. Supp. 2d 452 (E.D. Pa. 2008) ...................................................................10

*Pritchard v. Dow Agro Sciences*,
  430 F. App'x 102 (3d Cir. 2011) .............................................................................5

*Robertson v. Allied Signal, Inc.*,
  914 F.2d 360 (3d Cir. 1990)...........................................................................13, 15

*Robinson v. Delta Int'l Mach. Corp.*,
  274 F.R.D. 518 (E.D. Pa. 2011)..............................................................................2

*Rost v. Ford Motor Co.*,
  151 A.3d 1032 (Pa. 2016) ....................................................................................13

*Skipworth by Williams v. Lead Indus. Ass'n*,
  690 A.2d 169 (Pa. 1997).......................................................................................15

*Soldo v. Sandoz Pharms. Corp.*,
  244 F. Supp. 2d 434 (W.D. Pa. 2003)............................................................2, 3, 8

*Tincher v. Omega Flex, Inc.*,
  104 A.3d 328 (Pa. 2014).......................................................................................16

*Van Buskirk ex rel. Van Buskirk v. W Bend Co.*,
  100 F. Supp. 2d 281 (E.D. Pa. 1999) ...................................................................16

*Viterbo v. Dow Chem. Co.*,
  826 F.2d 420 (5th Cir. 1987) ................................................................................10

*Webb v. Zern*,
  220 A.2d 853 (Pa. 1966) ................................................................................16, 17

**TABLE OF AUTHORITIES**
(*continued*)

Page(s)

*Zellers v. NexTech Ne., LLC*,
   533 F. App'x 192 (4th Cir. 2013) ............................................................................12

**Other Authorities**

Restatement (Second) of Torts § 402A(1) (1965) ...................................................15, 16

## INTRODUCTION

The Court should grant Defendants summary judgment on all claims asserted by Plaintiffs Kevin Voelker, Clinton Speers, and Brock Donnelly. Their claims all suffer from a common and fundamental defect: Plaintiffs do not have sufficient evidence to raise a genuine issue of material fact as to whether Defendants' products caused their kidney cancer. Defendants are also entitled to summary judgment on Plaintiffs' strict-liability claims for an additional, independent reason: As a matter of Pennsylvania law, only the end user of a product may bring a strict-liability claim, and it is undisputed that Plaintiffs never used the products at issue here. And Defendants are entitled to summary judgment on Mr. Speers's claim for misrepresentation because Mr. Speers, who did not use AFFF, did not receive or rely on any purported misrepresentations by Defendants.

## BACKGROUND

All three Plaintiffs bring claims for negligence and strict products liability under Pennsylvania law. In addition, Mr. Speers brings a claim for misrepresentation, and his wife brings a claim for loss of consortium.[1] All of Plaintiffs' claims are premised on the same basic theory. They allege that Defendants each made (or supplied component parts of) AFFF that the Department of Defense has used since the 1960s on military bases, including two bases near Plaintiffs' residences, the Willow Grove Naval Air Station Joint Reserve Base in Horsham Township, Pennsylvania ("Willow Grove Base"), and the Warminster Naval Air Warfare Center in Warminster Township, Pennsylvania ("Warminster Base"). *See, e.g.*, Voelker Second Am. Compl. ¶ 3. Certain AFFF formulations contain both PFOS (or compounds that may degrade into PFOS) and PFOA (or compounds that may degrade into PFOA); other AFFF formulations contain only precursors that allegedly degrade into PFOA. *Id.* ¶ 4. Plaintiffs maintain that AFFF used at

---

[1] The claims remaining in these cases are reflected in Appendix A to this Motion.

the Willow Grove and Warminster Bases got into the local groundwater and traveled to certain municipal wells, that Plaintiffs ingested PFOS and PFOA in water supplied by those wells, and that their exposure caused them to develop kidney cancer.

## ARGUMENT

### I.    Plaintiffs Cannot Prove Causation.

Pennsylvania law requires Plaintiffs to prove that each Defendant's product caused their kidney cancer, in order to meet their burden on their negligence and strict-liability claims.  *Soldo v. Sandoz Pharms. Corp.*, 244 F. Supp. 2d 434, 524 (W.D. Pa. 2003) ("Absent a causal relationship between the defendant's product and the plaintiff's injury the defendant cannot be held liable on a theory of negligence [or] strict product liability").  And Mr. Speers must prove causation to meet his burden on his additional claims.  *See Allegheny Gen. Hosp. v. Philip Morris, Inc.*, 228 F.3d 429, 445 (3d Cir. 2000) (requiring proof of causation for fraudulent misrepresentation, fraudulent concealment, negligent misrepresentation and omission); *Robinson v. Delta Int'l Mach. Corp.*, 274 F.R.D. 518, 524 (E.D. Pa. 2011) (requiring same showing for loss-of-consortium claim as for negligence and strict-liability claims).[2]

It is a high threshold to establish causation—particularly in a case like this one, where Plaintiffs have sued multiple defendants that allegedly manufactured different products or components over a period of decades.  Plaintiffs cannot meet it.

*First*, in cases alleging that a product caused cancer, the plaintiff must establish through expert analysis of epidemiological evidence that the product is *capable* of causing the cancer the

---

[2] Because all of Mr. Speers's underlying claims fail for lack of causation, the Court should grant Defendants summary judgment on his loss-of-consortium claim.  That claim is a "derivative" claim that cannot proceed absent a meritorious underlying claim, which Mr. Speers does not have.  *See, e.g.*, *Robinson*, 274 F.R.D. at 524.

plaintiff developed at a sufficient exposure level (general causation).  *Second*, the plaintiff must establish that exposure to the product at issue actually caused *his* cancer (specific causation). *Soldo*, 244 F. Supp. 2d at 524–25.  Specific causation in turn requires proof that: (1) the plaintiff's expert reliably applied a valid methodology to rule out alternative causes, and (2) the plaintiff was exposed to levels sufficient to be capable of causing the type of cancer he developed.  *See Gregg v. V-J Auto Parts, Co.*, 943 A.2d 216, 226–27 (Pa. 2007); *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 765–71 (3d Cir. 1994).  *Third*, in multi-defendant cases, Pennsylvania law requires a plaintiff to establish that *each* defendant's product was a substantial factor in causing his cancer by quantifying his exposure to *each* defendant's product.  *In re Asbestos Prods. Liab. Litig. (No. VI)*, 801 F. Supp. 2d 342, 345–46 (E.D. Pa. 2011).

These requirements are all essential building blocks in proving that each defendant caused the plaintiff's cancer.  If Plaintiffs cannot meet their burden on any one of them, then Defendants are entitled to summary judgment.  And Plaintiffs must establish each of these elements with the aid of expert testimony.  *Hoefling v. U.S. Smokeless Tobacco Co.*, 576 F. Supp. 3d 262, 270 (E.D. Pa. 2021) (Plaintiffs must prove general and specific causation through admissible expert testimony because their claims "involv[e] complex issues of causation not readily apparent to the finder of fact."); *see also In re Lipitor (Atorvastatin Calcium) Mktg., Sales Pracs. & Prods. Liab. Litig.* ("*Lipitor IV*"), 227 F. Supp. 3d 452, 469 (D.S.C. 2017) ("[A]ll jurisdictions require expert testimony at least where the issues are medically complex and outside common knowledge and lay experience."), *aff'd*, 892 F.3d 624 (4th Cir. 2018).

Plaintiffs' experts—on general causation (Dr. Joseph Braun), on specific causation (Dr. Robert Bahnson), and on dose exposure (Dr. David MacIntosh)—are essential to every component of Plaintiffs' causation proof.  For the reasons described in the contemporaneously filed motions

to exclude, their opinions are inadmissible under Rule 702. The opinions of Plaintiffs' expert on hydrogeologic pathways (Mr. Anthony Brown) are likewise inadmissible. But with or without his testimony, Plaintiffs lack the requisite expert evidence to establish that each Defendant's specific product was a substantial cause of Plaintiffs' kidney cancer.

Failure at even one of these building blocks requires summary judgment in Defendants' favor. But Plaintiffs cannot establish any of the required building blocks with admissible expert evidence, so they have not met, and cannot meet, *any* of their burdens: none of the "evidence" underlying their causation argument is sufficient to get to a jury. The Court should grant summary judgment in favor of all Defendants as to all Plaintiffs' claims.

### A. Plaintiffs Have No Admissible Evidence Of General Causation.

Because Plaintiffs' sole general causation expert, Dr. Braun, cannot identify *any* study showing a statistically significant association between PFOS or PFOA and kidney cancer at the levels of Plaintiffs' alleged exposure, his opinions are both (1) legally insufficient to establish causation and (2) inadmissible under Rule 702.[3] Because Dr. Braun's testimony is both legally insufficient and inadmissible, Plaintiffs cannot raise a genuine issue of material fact on general causation, and Defendants are entitled to summary judgment. *See* Mot. to Exclude I, Sec. I (Braun).

Dr. Braun's  Courts have repeatedly held that testimony of this kind is insufficient to show that exposure to a product can be a substantial

contributing factor in causing a particular disease. ████████████████████
███████████████████████

### 1.    Plaintiffs Have No Evidence Of An Association Between PFOS/PFOA And Kidney Cancer At Relevant Exposure Levels.

Courts routinely grant summary judgment for the defendant where the plaintiff cannot show a statistically significant association between the defendant's product and the plaintiff's cancer. In *In re Lipitor (Atorvastatin Calcium) Marketing, Sales Practices & Products Liability Litigation* ("*Lipitor V*"), 892 F.3d 624 (4th Cir. 2018), the Fourth Circuit affirmed this Court's decisions excluding the plaintiffs' general-causation expert and granting summary judgment where, like here, none of the studies on which the general causation expert relied showed a statistically significant association between diabetes and Lipitor at the relevant dose.

Applying Pennsylvania law, the Third Circuit reached a similar result in *Pritchard v. Dow Agro Sciences*, 430 F. App'x 102 (3d Cir. 2011). There, the court affirmed judgment in the defendants' favor on tort claims where the plaintiffs' expert "ha[d] not presented any statistically significant evidence showing an association between any of the chemical agents at issue and non-Hodgkins lymphoma." *Id.* at 104 (cleaned up). The district court had granted judgment for the defendants after the parties "stipulated that the exclusion of" the testimony of plaintiffs' general-causation expert "doomed the [plaintiffs'] lawsuit." *Id.* at 103. Similarly, in *In re Deepwater Horizon BELO Cases*, 119 F.4th 937 (11th Cir. 2024), the Eleventh Circuit affirmed summary judgment for the defendants on claims that chemicals in crude oil caused chronic sinusitis where the plaintiffs' expert "failed to identify a statistically significant association in the literature." *Id.* at 946–47. The plaintiffs had to present "reliable expert general causation testimony," and their failure to do so entitled the defendants to summary judgment. *Id.* at 944.

In each of these cases, the court granted summary judgment to the defendants based at least

in part on the plaintiffs' failure to offer statistically significant evidence of a causal relationship between the alleged harm and the product.  The reason courts exclude such evidence is simple: First, evidence that fails to meet the basic requirement of statistical significance is generally not sufficient to support a reasonable jury finding that the defendant is liable for the plaintiff's injuries.  *See Lipitor V*, 892 F.3d at 640–42.  Second, opinions based only on non-statistically significant study results are unreliable where an expert in the relevant field would not exclusively rely on such studies.  *In re Lipitor (Atorvastatin Calcium) Mktg., Sales Pracs. & Prods. Liab. Litig.* ("*Lipitor III*"), 174 F. Supp. 3d 911, 926 (D.S.C. 2016).

Dr. Braun did precisely what the law prohibits: 

*Lipitor III*, 174 F. Supp. 3d at 926.  Plaintiffs accordingly have no evidence of even a statistically significant *association* between PFOS or PFOA and kidney cancer at any dose relevant to these cases.  Without such evidence they cannot even attempt to prove general causation using the Bradford Hill factors.  *Lipitor III*, 174 F. Supp. 3d at 925.  Defendants are entitled to summary judgment on all claims.[4]

---

[4] Of course, even if Plaintiffs were able cite studies that showed a statistically significant relationship between PFOS or PFOA and kidney cancer at the levels to which Plaintiffs were exposed, that would not be the end of the analysis of whether Dr. Braun's opinions on general causation are reliable.  *Cf. In re Lipitor (Atorvastatin Calcium) Mktg., Sales Pracs. & Prods. Liab. Litig.* ("*Lipitor II*"), 150 F. Supp. 3d 644, 649–50 (D.S.C. 2015) (acknowledging "confounding factors, bias, etc." might limit the extent to which study results can be used to establish causation).

### 2.     Dr. Braun's Opinion That "Any Amount" Of Exposure To PFOS And PFOA Increases The Risk Of Kidney Cancer Does Not Raise a Genuine Issue of Material Fact.

Unable to show a relevant statistically significant association, Dr. Braun resorts ████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████[5] But opinions that "any" exposure to a product may increase the risk of an illness are legally insufficient for plaintiffs to withstand summary judgment because they run counter to "[o]ne of the central tenets of toxicology"—that "the dose makes the poison." *Lipitor V*, 892 F.3d at 639. Even Plaintiffs' dose exposure expert, Dr. MacIntosh, █████████████████████████████████████████████████████

████████████████████████

By the Seventh Circuit's count, "more than thirty" federal and state courts have rejected the "any exposure" theory of causation because this theory "ignore[s] fundamental principles of toxicology that illnesses like cancer are dose dependent." *Krik v. Exxon Mobil Corp.*, 870 F.3d 669, 675, 677 (7th Cir. 2017); *see also Lipitor V*, 892 F.3d at 639 ("[I]n order to carry the burden of proving a plaintiff's injury was caused by exposure to a specified substance, the plaintiff must demonstrate the levels of exposure that are hazardous to human beings generally as well as the plaintiff's actual level of exposure.") (citation omitted).

Pennsylvania courts have followed suit in holding that plaintiffs cannot use the "any exposure" theory to establish general causation in tort cases brought under Pennsylvania law, like Plaintiffs' claims here. In *Gregg*, the Pennsylvania Supreme Court held that a plaintiff cannot

---

[5] "JX" refers to the joint exhibits filed concurrently in support of this Motion for Summary Judgment and Defendants' Omnibus Motions to Exclude, also filed concurrently.

salvage his claims with "generalized opinions" by an expert that "any exposure . . . no matter how minimal, is a substantial contributing factor in . . . disease." 943 A.2d. at 226. Because the plaintiff's expert did not offer an opinion about what level of exposure to asbestos could cause mesothelioma, the court held that the defendant was entitled to summary judgment. *Id.* at 226–27. In another case, *Betz v. Pneumo Abex LLC*, 44 A.3d 27 (Pa. 2012), the Pennsylvania Supreme Court similarly held that the defendants were entitled to summary judgment on claims that they caused the plaintiff's mesothelioma where the expert asserted that he did not need to "discuss individual exposure histories, so long as [plaintiffs] could establish exposure to at least a single fiber from each defendant's product." *Id.* at 55. The court explained that the expert's "any-exposure opinion [was] in irreconcilable conflict with itself"—the expert could not "simultaneously maintain that a single fiber among millions is substantially causative, while also conceding that a disease is dose responsive." *Id.* at 56.

Dr. Braun's unsupported ████████████████████████████████████
████████████████████████████████████████ Therefore, Defendants' motion should be granted.

**B.     Plaintiffs Have No Admissible Evidence Of Specific Causation.**

Without proving general causation, Plaintiffs cannot even proceed to specific causation. *See Soldo*, 244 F. Supp. 2d at 525; *accord Lipitor II*, 150 F. Supp. 3d at 649 ("[W]ithout general causation, there can be no specific causation."). But taking specific causation in isolation, Plaintiffs additionally cannot establish a genuine dispute of material fact for two independently sufficient reasons.

*First,* Plaintiffs lack admissible evidence to prove specific causation ████████████████
████████████████████████████████████████████████████████████

8



*Second*, the only evidence Plaintiffs have on the amount of their alleged exposure to PFOS

or PFOA comes

This leaves

Plaintiffs with no evidence that their cancer was caused by PFOS or PFOA.

Without evidence that their exposure to PFOS or PFOA (as opposed to some other factor) caused their cancer, and without evidence that they were exposed to a substantial amount of PFOS or PFOA, Plaintiffs raise no genuine dispute of material fact on any of their claims, and Defendants are entitled to summary judgment.

**1.    Because Plaintiffs Have Not Ruled Out Alternative Causes Of Their Kidney Cancer, The Court Should Grant Summary Judgment.**

To establish specific causation, Plaintiffs must offer testimony by an expert, using a "valid methodology, applying it reasonably and relying on sufficient data to support [his] opinions," that PFOS or PFOA caused each Plaintiff's kidney cancer. *See Lipitor II*, 150 F. Supp. 3d at 650. Plaintiffs' specific causation expert, Dr. Bahnson, purported

But a reliable differential etiology "must at least consider other factors that could have been the sole cause of the plaintiff's injury" and

9

"offer an explanation as to why these other recognized causes, alone, are not responsible for the disease in a particular plaintiff." *Lipitor V*, 892 F.3d at 643–44. The expert must take "serious account" of those "other potential causes." *Id.* at 644. Where a plaintiff's "symptoms could have numerous causes," the expert cannot "simply pick[] the cause that is most advantageous to [plaintiff's] claim." *Viterbo v. Dow Chem. Co*., 826 F.2d 420, 424 (5th Cir. 1987). As discussed in Defendants' First Omnibus Motion to Exclude Plaintiffs' Causation and Plausibility Expert Testimony, Dr. Bahnson did not █████████████████████████████████████████ █████████████████████████████████████████████████████████ ████████████████████

Courts frequently grant summary judgment for the defendant where the plaintiff's specific-causation expert did not consider and reliably rule out other recognized causes of the plaintiff's illness. For instance, the Third Circuit, applying Pennsylvania law, affirmed summary judgment where the plaintiffs' expert did not explain why PCBs rather than other factors caused the plaintiffs' cancer. *In re Paoli*, 35 F.3d at 765–71. Another court, also applying Pennsylvania law, granted summary judgment where the plaintiff's expert failed to exclude the likelihood that the plaintiff's lymphoma "had no known cause." *Perry v. Novartis Pharms. Corp.*, 564 F. Supp. 2d 452, 469 (E.D. Pa. 2008). A third court applying Pennsylvania law granted summary judgment on the plaintiff's claim that smokeless tobacco caused his tonsil cancer because the plaintiff's expert could not rule out HPV as an alternative cause. *Hoefling*, 576 F. Supp. 3d at 284.

Instead of conducting the required reliable differential etiology, ██████████████████ █████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████



Without Dr. Bahnson's opinion on specific causation, there is no genuine issue of material fact as to whether Defendants' products caused Plaintiffs' cancer. *See Lipitor V*, 892 F.3d at 643. Defendants are again entitled to summary judgment on all claims.

### 2.    Because Plaintiffs Have No Admissible Evidence Of Exposure To Harmful Levels Of PFOS Or PFOA, Defendants Are Entitled To Summary Judgment.

To prove specific causation, Plaintiffs must also present evidence concerning the "frequency, regularity, and proximity of [their] asserted exposure" to PFOS or PFOA sufficient for a jury to infer that PFOS or PFOA was "a substantial factor in causing [their injury]." *Gregg*, 943 A.2d at 227.  In other words, Plaintiffs must "prove that the dosage and duration of their exposure were at levels that were hazardous to them." *Buzzerd v. Flagship Carwash of Port St. Lucie, Inc.*, 2009 WL 105501, at *2 (M.D. Pa. Jan. 16, 2009).  But they cannot do so because they have no admissible evidence of the amount of PFOS or PFOA from Defendants' AFFF they were exposed to—

This is an independent reason why Defendants are entitled to summary judgment.

Courts regularly grant summary judgment in circumstances like these, and even do so in cases where the plaintiffs are able to point to *some* evidence of exposure.  For instance, the Third Circuit held that the defendants were entitled to summary judgment on tort claims brought under

Pennsylvania law because the plaintiffs attempted to meet their burden on causation with testimony that "anyone who lived in the area" around a nuclear facility was exposed to "sufficient" levels of radiation, without offering testimony on the "specific level of exposure" required to cause cancer. *McMunn v. Babcock & Wilcox Power Generation Grp.*, 869 F.3d 246, 271 (3d Cir. 2017) (emphasis omitted). The Fourth Circuit similarly granted summary judgment in a case where the plaintiff's expert could not quantify the intensity and duration of her exposure to refrigerant gas, though she offered evidence that she was "exposed for a duration of time for several weeks or months." *Zellers v. NexTech Ne., LLC*, 533 F. App'x 192, 198 & n.8 (4th Cir. 2013).

Plaintiffs' evidence of exposure is similarly insufficient here. Plaintiffs offer the testimony of Dr. MacIntosh



Plaintiffs accordingly cannot use his testimony to "prove that the dosage and duration of their exposure were at levels that were hazardous to them." *Buzzerd*, 2009 WL 105501, at *2.

Without Dr. MacIntosh's testimony, Plaintiffs are left to merely argue that "anyone who lived in the area" was exposed to "a sufficient amount" of PFOS or PFOA to cause kidney cancer. *McMunn*, 869 F.3d at 271 (emphasis omitted). This is not sufficient under Pennsylvania law. *Id.* In short, Plaintiffs do not have enough evidence of exposure for a jury to draw any inferences

between Defendants' products and Plaintiffs' asserted harm. This is yet another independent basis on which the Court should grant summary judgment.

### C. Plaintiffs Have No Evidence That AFFF Made By Any Specific Defendant Caused Their Cancer.

Each Plaintiff also lacks evidence sufficient to meet his burden of proving that any particular product manufactured by a specific defendant caused his kidney cancer. The Pennsylvania Supreme Court has "definitively established" that Plaintiffs must "demonstrate that [their] harm was proximately caused by the product of a *particular* defendant." *Robertson v. Allied Signal, Inc.*, 914 F.2d 360, 378–39 (3d Cir. 1990) (emphasis added); *see also Rost v. Ford Motor Co.*, 151 A.3d 1032, 1048 (Pa. 2016) (the causation "assessment . . . requires a focus on the precise nature of the plaintiff's exposure *to the defendant's product*"). As discussed in the other contemporaneously filed summary judgment motions, Plaintiffs have fallen well short of this mark.

Pennsylvania law requires that each Plaintiff prove that each Defendant contributed so much PFOS or PFOA to the drinking water that the product manufactured by that Defendant was a "substantial factor in causing the harm." *See Gregg*, 943 A.2d at 227. But Plaintiffs have no competent evidence that PFOS or PFOA from the bases reached the municipal wells serving Plaintiffs. *See* Mot. to Exclude II, Sec. II.B (Brown). Nor can Plaintiffs raise a genuine issue of material fact regarding how much AFFF the military used from each Defendant; how much PFOS or PFOA (or alleged PFOA precursor) from each Defendant's product made it into the water supply; or how much PFOS or PFOA from each Defendant's product each Plaintiff ingested. To the contrary, Plaintiffs' expert Dr. Christopher Higgins conceded that ██████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████

     Mr. Donnelly and Mr. Voelker even conceded *in their complaints* that "it is not possible to determine the identity of the manufacturer whose AFFF/Component Product contributed to the groundwater contamination impacting Plaintiff's water supply." Donnelly Am. Compl. ¶ 240; *accord* Voelker Second Am. Compl. ¶ 219. And longtime firefighters at the Willow Grove Base testified that they paid little attention to what brand of AFFF they were using because "they were all pretty much interchangeable." JX 56 (King Dep.) at 199:13–200:5; *see also* JX 57 (Steere Dep.) at 32:17–34:3 (AFFF products from different brands could be used interchangeably, and firefighters did not request specific brands of firefighting foam).[6]

     This deficiency is even more pronounced for Mr. Speers. As discussed in Defendants' Second Omnibus Motion to Exclude Expert Testimony, ████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████

     Plaintiffs' inability to show that PFOS or PFOA from any particular Defendant's products was on its own a substantial causative factor is fatal to Plaintiffs' claims. Without such evidence,

---

████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████

"a jury would not be able to determine, apart from impermissible speculation, that [any Plaintiff] was exposed to any particular . . . Defendant's [AFFF] . . . on a frequent and regular basis." *In re Asbestos Prods. Liab. Litig. (No. VI)*, 801 F. Supp. 2d at 346–47.

Controlling Pennsylvania law makes clear that causation requirements are not relaxed in mass-tort cases. For example, Pennsylvania courts have "declined to adopt the market share, enterprise or concerted action theories of liability" in products-liability cases. *Robertson*, 914 F.2d at 379. This is so even in cases where, like here, it may be difficult for a plaintiff to identify the specific manufacturer responsible for his injury because multiple defendants may or may not have contributed. *See id.*; *see also*, *e.g.*, *Skipworth ex rel. Williams v. Lead Indus. Ass'n*, 690 A.2d 169, 173 (Pa. 1997) (declining to apply market-share liability); *City of Philadelphia v. Lead Indus. Ass'n*, 994 F.2d 112, 129 (3d Cir. 1993) ("Pennsylvania courts consistently have rejected [the enterprise] theory of joint liability.").

Plaintiffs' inability to establish that any particular Defendant caused their cancer is yet another independent reason Defendants are entitled to summary judgment.

## II. Defendants Are Entitled To Summary Judgment On Plaintiffs' Strict-Liability Claim And Mr. Speers's Misrepresentation Claims.

This Court should grant Defendants summary judgment on Plaintiffs' strict-liability claims (failure to warn and design defect) because Pennsylvania law does not recognize bystander liability for those claims, and it is undisputed that Plaintiffs did not use Defendants' products. Defendants are also entitled to summary judgment on Mr. Speers's misrepresentation claims because Defendants made no statements to him, and he did not rely on any such statements, given that he was not a user of the products at issue.

Pennsylvania long ago adopted Section 402A of the Restatement (Second) of Torts, which limits strict products liability claims to the "ultimate user or consumer" of a product. *See*

Restatement (Second) of Torts § 402A(1) (1965); *Webb v. Zern*, 220 A.2d 853, 854 (Pa. 1966) (adopting Section 402A "as the law of Pennsylvania"); *Tincher v. Omega Flex, Inc.*, 104 A.3d 328, 399 (Pa. 2014) (noting that "Pennsylvania remains a Second Restatement jurisdiction"). In doing so, Pennsylvania restricted strict products liability claims brought by so-called "bystanders" like the Plaintiffs—none of whom allege they ever used AFFF—in these cases. *Van Buskirk ex rel. Van Buskirk v. W. Bend Co.*, 100 F. Supp. 2d 281, 284–85 (E.D. Pa. 1999).

Applying this rule in an early AFFF ruling issued before the JPML formed this MDL, a Pennsylvania district court judge dismissed strict products liability claims precisely like those alleged here. *Menkes v. 3M Co.*, 2018 WL 2298620, at *10 (E.D. Pa. May 21, 2018). In *Menkes*, the plaintiff alleged that he was exposed to PFAS in his drinking water from the public water supply, that the exposure resulted from AFFF use at the Willow Grove and Warminster Bases, and that PFAS caused him to develop cancer. *Id.* at *1–2. The court held that the plaintiff did not come within the scope of Section 402A because he was not a "user[] or consumer[] of AFFF." *Id.* at *10. The court also rejected the argument that the plaintiff was the rare bystander who could recover under the Second Restatement, noting that the plaintiff was "not present on the Bases where the AFFF was used" and that "no Pennsylvania federal or state court has allowed [a strict products liability] claim where the plaintiff was not in direct proximity to the defective product." *Id.*

Here, like in *Menkes*, Plaintiffs claim injury from their exposure to drinking water contaminated with PFOS and PFOA, not direct contact with AFFF. Donnelly Am. Compl. at ¶¶ 18–19; Voelker Second Am. Compl. ¶¶ 16–17; Speers Compl. ¶¶ 7–8. Also like in *Menkes*, Plaintiffs allege that their exposure was the result of AFFF use by the military at the Willow Grove and Warminster Bases. Donnelly Am. Compl. at ¶¶ 3–6, 17–19; Voelker Second Am. Compl.

¶¶ 3–6, 15–17; Speers Compl. ¶¶ 7–8, 94, 98–100.  And finally, like in *Menkes*, Plaintiffs do not allege that they were present on the military bases or that they ever came into direct contact with AFFF.[7]  And, conversely, these cases are entirely unlike cases where exceptions were found for true bystanders who were injured by a product in both close proximity with and at the same time as the injured user or consumer of that product.  *See, e.g.*, *Webb*, 220 A.2d at 854 (family member of user/consumer); *Pegg v. Gen. Motors Corp.*, 391 A.2d 1074 (Pa. Super. 1978) (passenger injured in vehicle with user/consumer).

The same reasoning applies to Mr. Speers's misrepresentation claim:  he (as opposed to an AFFF purchaser or user) was not the recipient of and did not rely on any allegedly false statements, so Defendants are entitled to summary judgment on this claim, too.  A plaintiff cannot "recover for a misrepresentation made to and relied upon by another party." *Feudale v. Aqua Pa., Inc.*, 122 A.3d 462, 466 n.5 (Pa. Commw. Ct. 2015), *aff'd*, 135 A.3d 580 (2016); *Bonilla v. Am. Heritage Fed. Credit Union*, 2021 WL 3612166, at *3 n.5 (3d Cir. Aug. 16, 2021) ("[W]e are not aware of[] any Pennsylvania authority permitting a claim for . . . misrepresentation where the plaintiff's injury did not result from the plaintiff's own justifiable reliance").  For example, in *Edelen & Boyer Co. v. Kawasaki Loaders, Inc.*, 1994 WL 483436 (E.D. Pa. Sept. 7, 1994), the court granted summary judgment on the plaintiff's fraud claim because the misrepresentation at issue was made to a court—not to the plaintiff.  *Id.* at *5–6.  Here, because Plaintiffs have adduced no evidence that alleged misrepresentations were made to Mr. Speers, the Court should grant summary judgment on his misrepresentation claim.

---

This is an independent reason, separate from the causation infirmities, why Defendants are entitled to summary judgment on Plaintiffs' strict liability and misrepresentation claims.

## CONCLUSION

Because Plaintiffs have no admissible evidence of general or specific causation, the Court should enter summary judgment in Defendants' favor on all of Plaintiffs' claims.

In addition, because it is undisputed that Plaintiffs were not end users of any of Defendants' products and because Mr. Speers was not the recipient of and did not rely on any allegedly false statements, the Court should enter summary judgment in Defendants' favor on Plaintiffs' strict liability claim and Mr. Speers's misrepresentation claim, independent of the causation issues.

Dated: June 17, 2025

Joseph G. Petrosinelli
WILLIAMS & CONNOLLY LLP
680 Maine Ave. S.W.
Washington, D.C.  20024
Tel.: (202) 434-5547
Fax: (202) 434-5029
jpetrosinelli@wc.com

David E. Dukes
NELSON MULLINS RILEY &
SCARBOROUGH LLP
1320 Main Street, 17th Floor
P.O. Box 11070
Columbia, SC  29201
Tel.: (803) 799-2000
Fax: (803) 256-7500
david.dukes@nelsonmullins.com

Respectfully submitted,

*/s/ Brian Duffy*
Brian Duffy
DUFFY & YOUNG LLP
96 Broad Street
Charleston, SC  29401
Tel.: (843) 720-2044
Fax: (843) 720-2047
bduffy@duffyandyoung.com

Michael A. Olsen
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL  60606
Tel.: (312) 701-7120
Fax: (312) 706-8742
molsen@maybrown.com

*Defense Co-Leads*

**Appendix A: Chart of Plaintiffs' Remaining Claims**

| Plaintiff | Count | Claim |
|-----------|-------|-------|
| Brock Donnelly | I | Strict Products Liability—Failure to Warn |
| Brock Donnelly | II, III | Strict Products Liability —Design Defect |
| Brock Donnelly | IV | Negligence |
| Kevin Voelker | I | Strict Products Liability Defective Product—Failure to Warn |
| Kevin Voelker | II, III | Strict Products Liability Defective Product—Design Defect |
| Kevin Voelker | IV | Negligence |
| Clinton Speers | I, II | Strict Products Liability—Design Defect |
| Clinton Speers | III | Strict Products Liability—Failure To Warn |
| Clinton Speers | IV | Negligence |
| Clinton Speers | V | Concealment, Misrepresentation, and Fraud |
| Gail Speers | IX | Loss of Consortium |

## CERTIFICATE OF SERVICE

On June 17, 2025, I electronically submitted the foregoing document with the Clerk of Court, using the electronic case filing system of the Court. I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).


*/s/ Brian Duffy*
Brian Duffy