## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## CHARLESTON DIVISION

| | |
|---|---|
| **In Re: AQUEOUS FILM-FORMING FOAMS PRODUCTS LIABILITY LITIGATION** | MDL No. 2:18-mn-2873-RMG |
| | **This Document Relates to:** |
| | *Brock Donnelly v. 3M Company et al.*, No. 2:20-cv-00209-RMG |
| | *Clinton Speers & Gail Speers v. 3M Company et al.*, No. 2:21-cv-03181-RMG |
| | *Kevin Voelker v. 3M Company et al.*, No. 2:18-cv-03438-RMG |

## <u>DEFENDANTS' SECOND OMNIBUS MOTION TO EXCLUDE PLAINTIFFS' EXPERT TESTIMONY</u>

# TABLE OF CONTENTS

Page

INTRODUCTION ............................................................................................... 1

ARGUMENT ..................................................................................................... 1

I.  Dr. MacIntosh's Blood-Serum Reconstruction Opinions Should Be
    Excluded. ............................................................................................... 1

    A.  Dr. MacIntosh's Opinions Based On His Personal Serum Hindcast
        and Municipal Serum Hindcast Methods Should Be Excluded. ................. 6

        1.  Dr. MacIntosh's Approach Is Impermissibly Results-
            Driven. ........................................................................................ 6

        2.  Hindcasting PFOS And PFOA Serum Levels Is Not
            Generally Accepted.......................................................................... 7

        3.  Dr. MacIntosh Did Not Validate His Model Or
            Measurements, Offered Inappropriately Precise Estimates,
            And Estimated A High Error Rate. ................................................... 8

        4.  Dr. MacIntosh Failed To Tailor His Methodologies To
            Plaintiffs' Individual Characteristics. ............................................. 10

    B.  Dr. MacIntosh's Exposure Dose Method Is Unscientific And
        Unreliable.......................................................................................... 12

        1.  The Shin Study Undermines Dr. MacIntosh's
            Methodology.................................................................................. 12

        2.  The Exposure Dose Method Is Premised On A Long Chain
            Of Attenuated And Speculative Assumptions. ............................... 14

    C.  Dr. MacIntosh's Blood-Serum Estimates For Mr. Donnelly Should
        Be Excluded. ..................................................................................... 15

    D.  Dr. MacIntosh Cannot Opine That PFOA Is Attributable To
        Telomer AFFF. ................................................................................... 16

II. Mr. Brown's Testimony Should Be Excluded From Trial. ............................... 16

    A.  Mr. Brown's Use Of A Sharpie To Determine Flow Paths Is
        Unreliable.......................................................................................... 16

    B.  Mr. Brown Cannot Connect Willow Grove To Ambler. ......................... 18

C.    Mr. Brown Himself Admits There Are Non-AFFF Sources Of PFAS. ................................................................................. 20

III.   Mr. Petty's Opinions On The Adequacy Of Defendants' MSDSs Should Be Excluded. ........................................................................... 21

IV.   Court's Prior Exclusion Of Plaintiff's Experts' Opinions In *Stuart* Regarding A Public Health Standard Of Care, The Precautionary Principle, And Defendants' Mental States Should Apply Here............................ 22

V.   Defendants Preserve Their Arguments To Exclude Certain Expert Testimony Related To The Source And Allocation Of PFOS And PFOA........... 22

CONCLUSION ........................................................................................ 23

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Att'y Gen. of Okla. v. Tyson Foods, Inc.*,
565 F.3d 769 (10th Cir. 2009) ................................................................ 13

*Bourelle v. Crown Equip. Corp.*,
220 F.3d 532 (7th Cir. 2000) .................................................................. 21

*Buser v. Eckerd Corp.*,
2015 WL 1438618 (E.D.N.C. Mar. 27, 2015) ........................................ 11

*Butler v. Mallinckrodt LLC*,
2022 WL 970876 (E.D. Mo. Mar. 31, 2022) .......................................... 11

*Cooper v. Smith & Nephew, Inc.*,
259 F.3d 194 (4th Cir. 2001) ............................................................. 7, 17

*EEOC v. Freeman*,
778 F.3d 463 (4th Cir. 2015) .................................................................. 6

*Eshelman v. Puma Biotechnology, Inc.*,
2019 WL 1092572 (E.D.N.C. Mar. 8, 2019) .......................................... 13

*In re Foreign Exchange Benchmark Rates Antitrust Litig.*,
407 F. Supp. 3d 422 (S.D.N.Y. 2019) .................................................... 10

*Justice Farms of N.C., LLC v. Claas of Am., Inc.*,
2024 WL 473715 (D.S.C. Feb. 1, 2024) .................................................. 9

*In re Lipitor Mktg., Sales Practices & Prods. Liab. Litig. ("Lipitor III")*,
174 F. Supp. 3d 911 (D.S.C. 2016) .......................................................... 8

*In re Lipitor Mktg., Sales Practices & Prods. Liab. Litig. ("Lipitor V")*,
892 F.3d 624 (4th Cir. 2018) ......................................................... 6, 7, 8, 15

*United States ex rel. Lutz v. Lab'y Corp. of Am. Holdings*,
2021 WL 2801736 (D.S.C. July 6, 2021) ................................................ 14

*McMunn v. Babcock & Wilcox Power Generation Grp., Inc.*,
869 F.3d 246 (3d Cir. 2017) ................................................................... 11

*Nease v. Ford Motor Co.*,
848 F.3d 219 (4th Cir. 2017) ......................................................... 7, 8, 9, 10

*In re: Pella Corp. Architect & Designer Series*,
214 F. Supp. 3d 478 (D.S.C. 2016) ........................................................ 21

*Peters-Martin v. Navistar Int'l Transp. Corp.*,
410 F. App'x 612 (4th Cir. 2011) ........................................................... 17

## TABLE OF AUTHORITIES
(*continued*)

Page(s)

*Precision Fabrics Grp, Inc. v. Tietex Int'l, Ltd.*,
    2016 WL 6839394 (M.D.N.C. Nov. 21, 2016).................................................................17, 18

*Rosen v. Ciba-Geigy Corp.*,
    78 F.3d 316 (7th Cir. 1996) ............................................................................................8

*Sardis v. Overhead Door Corp.*,
    10 F.4th 268 (4th Cir. 2021) ....................................................................................15, 16

*SAS Inst., Inc. v. World Programming Ltd.*,
    2015 WL 13878192 (E.D.N.C. Nov. 5, 2015) .............................................................9, 10

*Turfgrass Grp. v. Carolina Fresh Farms, Inc.*,
    2013 WL 1010383 (D.S.C. March 14, 2013) ..................................................................11

*Valente v. Textron, Inc.*,
    931 F. Supp. 2d 409 (E.D.N.Y. 2013), *aff'd*, 559 F. App'x 11 (2d Cir. 2014).......................21

*Walsh/Granite, JV v. HDR Eng'g, Inc.*,
    2020 WL 13876908 (W.D. Pa. June 15, 2020) ...............................................................20

## INTRODUCTION

The Court should exclude the opinions of Dr. David MacIntosh, Mr. Anthony Brown, and Mr. Stephen Petty under Federal Rule of Evidence 702.  Their opinions are not the product of reliable methods:  (1) Dr. MacIntosh's opinions estimating Plaintiffs' PFOS and PFOA blood-serum levels at the time of their cancer diagnosis were reached by applying methodologies that were cherry-picked, unprecedented, untested, and likely resulted in an impermissibly high error rate; (2) Mr. Anthony Brown's hydrology opinions, reached by using a sharpie and ruler, are contradicted by the United State Geological Survey (USGS) and his own admissions in deposition; and (3) Mr. Stephen Petty lacks the requisite expertise to reach his conclusions on the adequacy of warnings, he never tested how end users understood existing warnings, and he offered no opinion on alternative warning language.  For these reasons and those discussed in greater detail below, these opinions of Dr. MacIntosh, Mr. Brown, and Mr. Petty are inadmissible.

Defendants separately request that the Court enter an order as described below regarding expert testimony challenged by Defendants, and considered by this Court, in *City of Stuart*.

## ARGUMENT

**I.  Dr. MacIntosh's Blood-Serum Reconstruction Opinions Should Be Excluded.**

The Court should exclude the opinions of Plaintiffs' exposure expert, Dr. MacIntosh, under Rule 702.  Dr. MacIntosh ███████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████

Dr. MacIntosh's reconstruction methodologies carry nearly every red flag that *Daubert* warns against in assessing reliability of an expert's opinions.  His methodologies were baldly results-driven, with inputs and ultimate values cherry-picked to serve Plaintiffs; were without precedent or support in his field; were subject to extremely high estimated error rates; and included almost no data inputs (and in some instances, zero data inputs) specific to the Plaintiffs in these cases.  His methodologies were not valid or reliable and should be excluded.

### Background:  Dr. MacIntosh Devised Untested Methodologies For Reconstructing Past Blood-Serum PFOS And PFOA Levels.[1]

1.      **Personal Serum Hindcast.**  Dr. MacIntosh applied ████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

█████████████████████████████

*Calculating Drinking Water Attributable Serum Level.*  To perform the first step, Dr. MacIntosh started ████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

---

[1] Dr. MacIntosh also estimated Plaintiffs' blood-serum levels for perfluorohexanesulfonic acid ("PFHxS").  Plaintiffs are not pursuing claims premised on exposure to PFHxS. *See, e.g.*, *Voelker* Am. Compl. ¶ 5; *Speers* Am. Compl. ¶98; *Donnelly* Am. Compl. ¶ 5 .  But all the same problems that plague his opinions as to PFOS and PFOA also apply to his PFHxS results.

[2] "JX" refers to the joint exhibits filed concurrently in support of Defendants' Omnibus Motions to Exclude and Defendants' Motion for Summary Judgment.

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

█████████████████████████████

*Backwards Extrapolating Drinking Water Attributable Serum Level.* To perform the second step, Dr. MacIntosh then ████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████

2. **Municipal Serum Hindcast.** For Dr. MacIntosh's ████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████

**3.       Exposure Dose Method.** ██████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████

**4.       Nationwide Average Applied To Mr. Donnelly.** While Dr. MacIntosh purported

to ██████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████

**Results.** At his deposition, Dr. MacIntosh admitted ██████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████

████████████████████████████████████████

████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████

████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████

### A. Dr. MacIntosh's Opinions Based On His Personal Serum Hindcast and Municipal Serum Hindcast Methods Should Be Excluded.

Dr. MacIntosh's results-oriented opinions fail nearly every Rule 702 factor. The cumulative effect of his cherry-picked, unsupported, non-peer reviewed, never-been-validated, and error-prone methodologies renders his opinions unreliable. Considering "the entire process that produced" Dr. MacIntosh's opinions, with each additional flaw "casting a specter of unreliability" on the testimony he would provide at trial, it is evident that his work does not "satisf[y] *Daubert*'s fundamental command: that expert testimony be reliable and relevant." *In re Lipitor Mktg., Sales Practices & Prods. Liab. Litig. ("Lipitor V")*, 892 F.3d 624, 638 (4th Cir. 2018). These cumulative methodological defects warrant exclusion.

### 1. Dr. MacIntosh's Approach Is Impermissibly Results-Driven.

The Fourth Circuit has explained that courts routinely "exclude[] expert testimony that 'cherry-picks' relevant data," *EEOC v. Freeman*, 778 F.3d 463, 469 (4th Cir. 2015), because "cherry-picking[] undermines principles of the scientific method and is a quintessential example of applying methodologies (reliable or otherwise) in an unreliable fashion," *Lipitor V*, 892 F.3d at 634. In *Lipitor V*, for instance, the expert conducted multiple tests but used only one of them— the mid-p test—once the other test "returned a non-significant result." *Id.* at 634–35. The Fourth Circuit affirmed the exclusion of that expert's testimony, holding that his selection of results was "results driven" and "lacked the hallmark of science properly performed." *Id.* at 635.

So too here. Dr. MacIntosh's analytical choices were designed to justify a predetermined result rather than test hypotheses objectively—a fundamental violation of the scientific method. Dr. MacIntosh worked backward from a desired conclusion, selecting methodologies and data that supported that conclusion, rather than working forward from sound methodology. Like the expert

in *Lipitor V*, he "performed a variety of calculations" but opportunistically chose to rely on the results of the method that best served his purposes: reporting the highest blood-serum values. *See id.* at 634–35. 

Dr. MacIntosh also impermissibly cherry-picked within a given methodology.

This is quintessential "cherry-pick[ing]" of "relevant data" that requires exclusion. *See Lipitor V*, 892 F.3d at 634.

### 2. Hindcasting PFOS And PFOA Serum Levels Is Not Generally Accepted.

Plaintiffs have not demonstrated that "hindcasting" is anywhere close to a generally accepted methodology for estimating past PFOS and PFOA blood-serum levels, which is one key basis for excluding expert testimony. *See Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199–201 (4th Cir. 2001) (affirming exclusion of expert whose opinions were an outlier in the relevant community). "[A] known technique which has been able to attract only minimal support within the community may properly be viewed with skepticism." *Nease v. Ford Motor Co.*, 848 F.3d

219, 229, 232–33 (4th Cir. 2017) (quoting *Daubert*) (reversing district court for admitting testimony of an expert who "[did] not establish that [his] theory [was] widely accepted").

Just as the Fourth Circuit affirmed exclusion of an expert who "could not identify any organizations or peer-reviewed texts that contain this methodology, nor any colleagues who used the methodology," *Lipitor V*, 892 F.3d at 643, so, too, should this Court exclude Dr. MacIntosh's blood-serum opinions for the same flaws. Dr. MacIntosh cannot ███████████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████

███ Far from general acceptance, it seems that no other researcher has ever used his hindcast methods to reconstruct PFOS or PFOA blood-serum levels. Even if hindcasting in this context someday becomes accepted, "[l]aw lags science; it does not lead it." *In re Lipitor Mktg., Sales Practices & Prods. Liab. Litig.* ("*Lipitor III*"), 174 F. Supp. 3d 911, 926 (D.S.C. 2016) (quoting *Rosen v. Ciba-Geigy Corp.*, 78 F.3d 316, 319 (7th Cir. 1996)).

### 3. Dr. MacIntosh Did Not Validate His Model Or Measurements, Offered Inappropriately Precise Estimates, And Estimated A High Error Rate.

Dr. MacIntosh's hindcast methodologies are unvalidated, yet he purported to offer highly specific estimates while guessing that a high error rate would apply if he had validated his methods. These three issues together further undermine the reliability of his methods.

**Unvalidated.** Dr. MacIntosh admitted ████████████████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ████████████████████████

Testimony may be excluded where an expert "concede[s] that he never ran any tests to

confirm his theory" because an expert's "failure to test his hypothesis renders his opinions . . . unreliable." *Nease*, 848 F.3d at 23 (holding an expert's opinion inadmissible where the expert failed to "validate it with testing"); *see also Just. Farms of N.C., LLC v. Claas of Am., Inc.*, 2024 WL 473715, at *1, *4 (D.S.C. Feb. 1, 2024) (excluding testimony where expert "did not conduct a single test to determine whether" his methods were accurate).

      **Highly Precise Estimate.** "An opinion conveying to the jury a precise calculation demands more than an expert's *ipse dixit*," and the "more specific [an] expert's proffered opinion, the more concrete" his basis for that opinion must be. *SAS Inst., Inc. v. World Programming Ltd.*, 2015 WL 13878192, at *8 (E.D.N.C. Nov. 5, 2015). Where an expert's opinion provides "an air of precision or exactness, a court should not open the gate unless the expert can connect his calculation" to "a specific instance from his experience, training, or education." *Id.* at *9. Dr. MacIntosh is unable to do so.

      In his report, Dr. MacIntosh offered



"The danger created by" Dr. MacIntosh's precision is that it "stems from his attempt to punctuate an otherwise imprecise, high-level opinion"—that past levels were higher than current levels—"with a precise conclusion." *See SAS Inst.*, 2015 WL 13878192, at *8.

      Dr. MacIntosh's deposition testimony underscores problems with Dr. MacIntosh's

approach:  He claimed ████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████    But that is the point:  Dr. MacIntosh's model does not permit validation for specific individuals at a particular point in time, through repetition or otherwise, meaning his specificity provides a false sense of certainty.  Like the expert's opinions in *SAS Institute*, Dr. MacIntosh's opinions are "very specific," but without "similarly specific" justifications, his opinions do not "allow the court to fully evaluate [their] reliability."  2015 WL 13878192, at *8.

**Error Rate.**  Courts routinely exclude expert testimony based on methodologies for which the expert does not provide an error rate.  *See, e.g.*, *Nease*, 848 F.3d at 232 (holding an expert's opinion inadmissible where the expert "failed to validate it with testing" or provide a "potential error rate").  In his report, Dr. MacIntosh ████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████    Such a high estimated error rate demonstrates that Dr. MacIntosh's methods are unreliable.  *See In re Foreign Exch. Benchmark Rates Antitrust Litig.*, 407 F. Supp. 3d 422, 435 (S.D.N.Y. 2019) ("[A] 50% error rate would be a valid basis to exclude . . . ." (internal quotation omitted)).

### 4.  Dr. MacIntosh Failed To Tailor His Methodologies To Plaintiffs' Individual Characteristics.

Dr. MacIntosh is also willfully blind to the individual characteristics of each Plaintiff.  Dr.

MacIntosh ignored ████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████ Courts in this Circuit routinely exclude

expert testimony that is insufficiently tailored to plaintiffs. *See, e.g.*, *Turfgrass Grp. v. Carolina*

*Fresh Farms, Inc.*, 2013 WL 1010383, at *3 (D.S.C. March 14, 2013); *Buser v. Eckerd Corp.*,

2015 WL 1438618, at *5 (E.D.N.C. Mar. 27, 2015).[3]

Dr. MacIntosh ignored Plaintiffs' characteristics despite interviewing them and having

access to their health records and history. Rather than use Plaintiffs' information, Dr. MacIntosh's

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████

While any one of these defects—cherry-picked data, the lack of acceptance in the scientific

community, the lack of validation, high estimated error rates, and failure to tailor the methodology

to Plaintiffs' individual characteristics—would raise serious concerns about Dr. MacIntosh's

---

[3] Courts outside of the Fourth Circuit take a similar approach. *See, e.g.*, *McMunn v. Babcock & Wilcox Power Generation Grp., Inc.*, 869 F.3d 246, 271, 273 (3d Cir. 2017) (expert must provide "individualized testimony" and "individualized assessment" in the radiation-exposure context, testimony about a geographic population's exposure to radiation generally was insufficient); *Butler v. Mallinckrodt LLC*, 2022 WL 970876, at *14–15 (E.D. Mo. Mar. 31, 2022) (excluding exposure calculations applying average values "without tailoring the methodology to each Plaintiff").

████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████

hindcast methodologies, taken together they render the results wholly unreliable. Dr. MacIntosh's opinions should be excluded.

### B. Dr. MacIntosh's Exposure Dose Method Is Unscientific And Unreliable.

Dr. MacIntosh's exposure dose method is likewise unreliable. Dr. MacIntosh identified ▮



His exposure dose method further rests on a series of speculative assumptions that doom its ability to provide a specific result as to a specific Plaintiff.

#### 1. The Shin Study Undermines Dr. MacIntosh's Methodology.

Dr. MacIntosh's exposure dose method purportedly used the method applied by H.M. Shin and colleagues to a population of thousands of people.[5] But the Shin study cannot be used to estimate an *individual's blood-serum values* and instead reveals that Dr. MacIntosh's method is subject to shocking rates of error, further highlighting that it is unreliable.

Although the Shin researchers made similar types of calculations to Dr. MacIntosh, the Shin study drew starkly different kinds of conclusions from those calculations. The Shin study assessed PFOA concentrations at the overall *population* level. Specifically, Shin and his researchers used estimated water and air PFOA concentrations, along with individual residential histories and water-supply maps, to predict the historical PFOA serum concentrations in a population of around 45,000 residents and compared those predicted serum values with the participants' past measured blood-serum values. *See* JX 46 at 1761–63. The study did not purport

---

[5] JX 46 (H. M. Shin et al., *Retrospective Exposure Estimation and Predicted versus Observed Serum Perfluorooctanoic Acid Concentrations for Participants in the C8 Health Project*, Environmental Health Perspectives vol. 119, no. 12 (December 2011)) at 1760–65.

to validate any method of predicting results for a *single individual*, as Dr. MacIntosh attempted to do here. *See Eshelman v. Puma Biotechnology, Inc.*, 2019 WL 1092572, at *6 (E.D.N.C. Mar. 8, 2019) (rejecting a methodology even though it was "subjected to peer review and publication" because "the application of that methodology [did] not fit the facts" of that case); *Att'y Gen. of Okla. v. Tyson Foods, Inc.*, 565 F.3d 769, 780 (10th Cir. 2009) (an expert may take an analytical "step" that "completely changes a reliable methodology" such that it is no longer reliable).

The graph below illustrates this critical distinction. While the PFOA values predicted by the Shin study's method roughly correlate with the observed PFOA values, such that a statistically significant correlation line can be drawn through an entire subject population, the individual dots (representing individual people) are scattered all over the graph, departing widely from the population-level calculated correlation. ███████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████



**Supplemental Material, Figure 2. A log-log plot of predicted vs. observed concentrations from a random sample of 1000 participants drawn from all participants. Linear trends are shown as a solid line and predicted and observed concentrations are shown as points.**

*See* JX 46, Supplemental Material, Figure 2.

In other words, at most, the Shin study shows that across a whole population, the over- and underestimation errors roughly cancel out to generate reasonable agreement between measured and predicted values on average. It does not demonstrate that the exposure dose method, as adapted here, can reliably say anything about a *specific person's* likely amount of exposure—quite the opposite. At most, the Shin study shows unacceptable error rates for Dr. MacIntosh's adaptation of it.

### 2. The Exposure Dose Method Is Premised On A Long Chain Of Attenuated And Speculative Assumptions.

Dr. MacIntosh's exposure dose method employed a long and attenuated chain of assumptions. At each step, more uncertainty, speculation, and over-generalization were baked in. This Court has found that where "questionable assumptions and methods are combined in a multi-step formula, the result simply lacks any semblance of reliability" under Rule 702. *United States ex rel. Lutz v. Lab'y Corp. of Am. Holdings*, 2021 WL 2801736, at *5 (D.S.C. July 6, 2021).

So, too, here. For example, Dr. MacIntosh █████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
█████████████████████

In short, each of the many data points input into the exposure dose method was of dubious reliability and relevance, as they were not tethered to the actual Plaintiffs in this case, but instead to averages—even national averages. At each step, this attenuated chain of assumptions and variables provided an unreliable and thus unhelpful, misleading, and irrelevant conclusion.

### C. Dr. MacIntosh's Blood-Serum Estimates For Mr. Donnelly Should Be Excluded.

Dr. MacIntosh's opinions as to Mr. Donnelly— ███████████████████████████ ███████████████████████████████ —should be excluded because they are no more relevant to him than any other man in the country.

Applying the 2005 national average is also inappropriate because it improperly inflates ██ ███████████████████████████████ Dr. MacIntosh explained that ██ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████

Thus, not only did Dr. MacIntosh cherry-pick Mr. Donnelly's results, *see Lipitor V*, 892 F.3d at 634, but he also presented those results as a misleading "'apples-to-oranges' comparison" that is likely to confuse the jury, *Sardis v. Overhead Door Corp.*, 10 F.4th 268, 288–89 (4th Cir. 2021) (reversing a district court that "violated Rule 702's gatekeeping requirement" by permitting

an expert to compare cardboard containers to a standard governing wooden containers).

### D. Dr. MacIntosh Cannot Opine That PFOA Is Attributable To Telomer AFFF.

Dr. MacIntosh should not be permitted to attribute any portion of the PFOA levels that he hindcast to telomer AFFF.  In his deposition, Dr. MacIntosh confirmed ███████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████ Any attempt by Dr. MacIntosh to attribute PFOA in Plaintiffs' blood to telomer AFFF should be precluded.

## II.  Mr. Brown's Testimony Should Be Excluded From Trial.

Plaintiffs' hydrology expert, Mr. Anthony Brown, used a results-driven blunt instrument—literally a sharpie—in purporting to measure highly specific water pathways that are typically measured with highly sophisticated technology.  His resulting opinions conflict with the USGS and his own admissions during his deposition and must be excluded.

### A. Mr. Brown's Use Of A Sharpie To Determine Flow Paths Is Unreliable.

Connecting groundwater "flow paths" to particular drinking water wells is a complex undertaking, involving such considerations as the nature of local geology, the direction of flow through that variable and complex geology, the depth of groundwater, the well's "capture zone," and more.  Given the government's decades-long study of the area at issue in these cases, Plaintiffs' hydrology expert Mr. Brown had at his disposal a sophisticated USGS computer model to accomplish this task. ███████████████████████████████

███████████████████████████████████████████

███████████████████████ And he did not bother to run the USGS model even to see how those results compared to his manually drawn paths or to account for any discrepancies.

The USGS published its three-dimensional hydrogeologic computer model in 2020.[6]  The model incorporated data spanning nearly 20 years.  Mr. Brown conceded, ███████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████

Using a sharpie over a sophisticated, calibrated, government-developed hydrogeologic model is, standing alone, unreliable.  But his failure even to run the model to see how it compared to his hand-drawn flow paths and account for any differences requires exclusion.  The reality is that Mr. Brown's choice had dramatic results: ████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████

In this light, it is obvious why Mr. Brown chose his sharpie.  Mr. Brown's reliance on this subjective methodology without even considering the alternative pathways identified by the objective USGS model renders these opinions unreliable and inadmissible.  *See, e.g.*, *Peters-Martin v. Navistar Int'l Transp. Corp.*, 410 F. App'x 612, 623 (4th Cir. 2011) ("[I]f an expert utterly fails to consider alternative causes . . .  a district court is justified in excluding the expert's testimony." (quoting *Cooper,* 259 F.3d at 202)).   Using such a subjective, unverified, and speculative method constitutes "no more than an *ipse dixit* declaration unsupported by testable, reliable science."  *Precision Fabrics Grp., Inc. v. Tietex Int'l, Ltd.*, 2016 WL 6839394, at *8

---

[6] JX 48 (Daniel J. Goode & Lisa A. Senior, *Groundwater Withdrawals and Regional Flow Paths at and near Willow Grove and Warminster, Pennsylvania—Data Compilation and Preliminary Simulations for Conditions in 1999, 2010, 2013, 2016, and 2017*, USGS (2020)).

(M.D.N.C. Nov. 21, 2016).  The Court should not allow Mr. Brown to confuse the jury with his sharpie-derived conclusions.

**B.  Mr. Brown Cannot Connect Willow Grove To Ambler.**

Mr. Brown should also be precluded from telling the jury that AFFF usage at Willow Grove impacted the wells in the Ambler water district.[7] ███████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████         That is unsurprising given that Ambler is in a separate watershed from the bases.

Below is Mr. Brown's ████████████████████████

████████████████████████████████████████████

████████████████████████████████████

████████████████████████████

████████████████████████████

████████████████████████████

████████████████████████████

████████████████████████████

████████████████████████████████████████████

---

[7] Plaintiff Speers alleges to have received his water entirely from the Ambler water district.



Nevertheless, Mr. Brown purported ███████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████ This is as reliable as

concluding that similar-appearing PFAS in Charleston groundwater demonstrates that it must have

originated from Willow Grove.  Ambler may be closer to Willow Grove than Charleston, but it is

a physical impossibility for groundwater to have flowed from Willow Grove to either of them.[8]

This lays bare Mr. Brown's results-oriented approach.  On the one hand, applying his own

---

[8] Mr. Brown also did not ███████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████

claimed area of expertise (hydrology), he concludes it is ████████████████████

███████████████████████████ But then he parrots claims from another expert—

without any independent analysis—to reach the opposite conclusion.  Mr. Brown admitted ███

███████████████████████████ That is the extent of his expertise and therefore

the only thing he should be permitted to tell the jury on this point.  *Walsh/Granite, JV v. HDR*

*Eng'g, Inc.*, 2020 WL 13876908, at *6 (W.D. Pa. June 15, 2020).[9]

### C.  Mr. Brown Himself Admits There Are Non-AFFF Sources Of PFAS.

Mr. Brown makes the extreme claim that ████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███ This opinion should be excluded because it contradicts his own admissions during deposition.

As a Naval Development Center, the Warminster base was used for research, development,

testing, and evaluation for Naval aircraft systems.  ████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████ At his deposition, Mr.

Brown ████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

---

[9] Indeed, his opinions on similar topics have been excluded.  JX 52 (*City of Norwalk v. Five PointU-Serve, Inc.*, Sup. Ct. Cal. 2006).

██████████████████████████████████████████

 In light of Mr. Brown's own admission that other sources contributed to at least some wells, his expansive opinion that ████████████████████████████████████████████ ██████████████████████ must be excluded.

### III. Mr. Petty's Opinions On The Adequacy Of Defendants' MSDSs Should Be Excluded.

 Mr. Stephen Petty seeks to opine that Defendants failed to comply with the industry standard of care or governmental regulations in preparing MSDSs and other technical data sheets for AFFF telomer products.  These opinions should be excluded for two independent reasons.

 *First*, Mr. Petty lacks the necessary qualifications.  "'[A]n expert witness may not offer an opinion where the subject matter goes beyond the witness's area of expertise.'"  *In re: Pella Corp. Architect & Designer Series*, 214 F. Supp. 3d 478, 496 (D.S.C. 2016) (quotation omitted).  Mr. Petty has never authored or drafted a data sheet for any chemical product; never authored any warning that has ever been used for any type of product; never been published in the field of warnings design; never worked in any capacity where he had responsibility for reporting compliance with AFFF telomer products; and, never worked in any capacity where he had any responsibility for toxic compliance and reporting.  JX 53 (Petty Dep.) at 18:13–19:4, 130:8–131:7.

 *Second*, Mr. Petty "could not offer an opinion to a reasonable degree of engineering certainty that a different warning would have prevented" Plaintiffs' harm and "did not draft an alternative warning."  *See, e.g.*, *Valente v. Textron, Inc.*, 931 F. Supp. 2d 409, 430–31 (E.D.N.Y. 2013), *aff'd*, 559 F. App'x 11 (2d Cir. 2014); *see also Bourelle v. Crown Equip. Corp.*, 220 F.3d 532, 539 (7th Cir. 2000) (similar).  Mr. Petty proposes no alternative warning language in his report and admitted that he has never performed any work in the area of crafting warnings.  JX 53 at 123:3–15, 130:8–131:7.  Further, Mr. Petty has no data or testing of how end users understood these warnings or whether these warnings were unclear to chemical users.  *Id.* at 77:15–78:8;

119:14–23.  Without this information, Mr. Petty's opinion that Defendants' data sheets were vague, ambiguous, or lacked certain necessary information is nothing more than his *ipse dixit* personal belief.  As such, his opinions should be excluded.

## IV. Court's Prior Exclusion Of Plaintiff's Experts' Opinions In *Stuart* Regarding A Public Health Standard Of Care, The Precautionary Principle, And Defendants' Mental States Should Apply Here.

In *Stuart*, the Court granted Defendants' Rule 702 motion "to the extent that Plaintiff's experts opine that a public health standard of care or the precautionary principle impose legal duties in this case."  *Stuart* Omnibus Daubert Order, Dkt. No. 3059 at 4.  Plaintiffs here presented many of the same or similar opinions from the same experts, including Drs. Siegel and MacIntosh, and Mr. Petty, to whom the Court's prior ruling applied.

The Court also granted Defendants' Rule 702 motion "[t]o the extent Plaintiff's experts opine on a defendant's intent, motive, or state of mind," as "such testimony is improper."  *Id.* at 6. Plaintiffs here have presented many of the same or similar opinions from the same experts, including Dr. Siegel, Mr. Petty, Dr. MacIntosh, Dr. Higgins, Dr. Martin, and Dr. Lowder. Defendants respectfully request this Court exclude these opinions here.

## V. Defendants Preserve Their Arguments To Exclude Certain Expert Testimony Related To The Source And Allocation Of PFOS And PFOA.

This Court has advised that the "Parties shall consider the Court's prior rulings and guidance generally from *Stuart* regarding" evidentiary issues.  CMO 26.I, Dkt. 7248 at 2.  This Court further noted that "[a]ll parties reserve their rights on those prior rulings and their precedent in this trial."  *Id.* at 2 n.2.  To that end, Defendants seek to preserve for appeal the following Rule 702 challenges raised and rejected in *Stuart*:  (1) Mr. Brown's source opinions (Dkt. 2696-1 at 11–16); (2) Dr. Jonathan Martin's B/L/T method (*id.* at 16–21); and (3) Mr. Brown's, Dr. Martin's, and Dr. Christopher Higgins's PFOA transformation opinions (*id.* at 21–28).  This Court

previously rejected Defendants' motion. Defendants maintain that these opinions remain unreliable under Rule 702 and should be excluded for the reasons identified in the *Stuart* action. Nonetheless, mindful of the Court's admonition, Defendants respectfully request that the Court enter an order on Defendants' requested relief, to preserve their arguments for appeal.[10]

## CONCLUSION

For these reasons, the Court should exclude the opinions of Dr. MacIntosh, Mr. Brown, and Mr. Petty and enter similar orders from *Stuart* as discussed above.

---

[10] Defendants stand ready to address in more detail any arguments raised in this section, should the Court so request.

Dated: June 17, 2025

Respectfully submitted,

_/s/ Brian Duffy_

| | |
|---|---|
| Joseph G. Petrosinelli | Brian Duffy |
| WILLIAMS & CONNOLLY LLP | DUFFY & YOUNG LLP |
| 680 Maine Ave. S.W. | 96 Broad Street |
| Washington, D.C. 20024 | Charleston, SC 29401 |
| Tel.: (202) 434-5547 | Tel.: (843) 720-2044 |
| Fax: (202) 434-5029 | Fax: (843) 720-2047 |
| jpetrosinelli@wc.com | bduffy@duffyandyoung.com |

David E. Dukes
NELSON MULLINS RILEY &
SCARBOROUGH LLP
1320 Main Street, 17th Floor
P.O. Box 11070
Columbia, SC 29201
Tel.: (803) 799-2000
Fax: (803) 256-7500
david.dukes@nelsonmullins.com

Michael A. Olsen
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
Tel.: (312) 701-7120
Fax: (312) 706-8742
molsen@maybrown.com

*Defense Co-Leads*

**CERTIFICATE OF SERVICE**

On June 17, 2025, I electronically submitted the foregoing document with the Clerk of Court, using the electronic case filing system of the Court. I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).


*/s/* Brian Duffy
Brian Duffy