

ANDREW W. CRONER – *PARTNER*
360 Lexington Avenue, 11th Floor,
New York, NY 10017
(212) 397-1000 ext. 2573
acroner@NapoliLaw.com

June 30, 2025

<u>VIA ECF</u>
Hon. Richard Mark Gergel
U.S. District Court for the District of South Carolina
J. Waties Waring Judicial Center
83 Meeting Street
Charleston, SC 29401

Re:   *In re AFFF Products Liability Litigation*, MDL No. 2:18-mn-2873-RMG

Dear Judge Gergel:

On behalf of the FTCA Plaintiffs and the Section 113(h) Plaintiffs (collectively, "Plaintiffs"), I write to report on recent, unfortunate developments in the parties' negotiations concerning the scope and schedule for completing the jurisdictional discovery and briefing this Court ordered in the ruling it issued on Defendant United States of America's (the "Government") global motions to dismiss on February 27, 2025. Dkt. No. 6730 at 4–5. As conveyed in the Joint Status Report the parties recently submitted, Plaintiffs believed as recently as a week ago that the parties were on the precipice of resolving their disputes over these issues via a negotiated CMO and stipulation. This past Tuesday, however, the FTCA Plaintiffs were informed that, based on comments the Court made at the Status Conference held in this MDL on June 20, 2025, the Government had removed any language in the draft CMO obligating it to produce custodial documents and electronically stored information ("ESI") in response to Plaintiffs' pending discovery requests. Because this discovery has proven to be a critical component of Plaintiffs' efforts to oppose the Government's forthcoming jurisdictional motions, this recent change in the Government's position has upended the parties' months-long negotiations and left them at an impasse that only the Court can resolve. Likewise, the Section 113(h) Plaintiffs learned for the first time on Wednesday that the Government would only consent to one deposition for each of the 113(h) Sites, due to the Government's staffing limitations.

As described later in this letter, throughout their negotiations with the Government, Plaintiffs have consistently made concessions in hopes of ensuring the continued advancement of their claims against the Government. But Plaintiffs' willingness to compromise has its limits and the Government's newly adopted positions are simply a bridge too far at this point. Accordingly, for the reasons set forth below, Plaintiffs request that the Court reject the Government's positions

on these two issues and instead issue a ruling that: (1) custodial productions are within the scope of the jurisdictional discovery it has ordered and need to be accounted for the parties' proposed phasing CMO; and (2) that the Section 113(h) Plaintiffs are entitled to at least three depositions per 113(h) Site.

## I.    This Court's Site-Specific Ruling for CAFB Established that Custodial Productions Are Critical to Defending Against the Government's Jurisdictional Motions

At the outset, it is important to clarify the nature of the disputed discovery and why it is critical to Plaintiffs' efforts to oppose the Government's forthcoming jurisdictional motion. As mentioned, the present dispute concerns site-specific custodial productions, which in this context refers to the production of documents and other information, whether stored electronically (e.g., on an email server or computer) or in hard copy, from individuals known or believed to be in the possession, custody, or control of evidence relevant to the parties' forthcoming jurisdictional briefing. Importantly, the Government's discovery production for Cannon Air Force Base ("CAFB")—the exemplar site the Court relied on to determine site-specific discovery and briefing were necessary at the remaining FTCA Sites—included documents and ESI produced from ten (10) custodians.[1]  In refusing to commit to producing such discovery, the Government has taken the position that the non-custodial production of AFFF-related policies and accidental discharge reports for the various sites is enough to satisfy its discovery obligations.

The Government's position, however, is entirely at odds with the Court's February 2025 order denying its site-specific motion to dismiss the FTCA claims brought by plaintiff dairy farmers regarding AFFF-related PFAS contamination at CAFB. In that order, the Court determined that the DFE did not apply to two categories of conduct that occurred at CAFB related to AFFF: (1) violations of a CAFB-specific operating instruction governing how to respond to AFFF releases from hangar suppression systems at the Base; and (2) accidental or negligent releases of AFFF at the Base. *See* Dkt. No. 6728 at 19–24. In both instances, custodial documents/ESI included in the Government's discovery production for CAFB played a critical role in convincing the Court that the DFE did not immunize the Government from liability for those categories of conduct.

Starting with the operating instruction, the Court determined that it was a "mandatory directive" for purposes of the DFE and therefore the DFE did not apply to conduct at CAFB that violated the operating instruction. In reaching that conclusion, the Court devoted an entire section of its order to summarizing the events that led to the adoption of the operating instruction, citing as support four email chains produced from custodial files where CAFB officials described those events.[2]  Most importantly, the Court later relied on the events chronicled in the emails to conclude:

---

[1] *See* Ltr. from Christina M. Falk, Asst. Dir., Civil Div., Envt'l Torts, U.S. Dept. of Justice, to Andrew Croner and Paul J. Napoli, Napoli Shkolnik, dated May 11, 2023, attached hereto as Exhibit 1 ("Ex. 1").

[2] Those four email chains are Exhibits NS97, NS99, NS100, and NS101 to the January 2024 deposition of John Rebman, CAFB's former Water Quality Program Manager. *See* Dkt. Nos. 6621-20, 6621-22, 6621-23, 6621-24. The metadata the Government provided for those four emails identifies the custodian as Joel Pignataro, one of ten such custodians from whom the Government produced documents for CAFB. *See* Ex. 1.

> In addition to the language of OI 32-11, the context in which the instruction was issued shows its mandatory nature. As outlined in detail above, the issuance of OI 32-11 was driven by a series of environmental incidents, institutional resistance, and mounting regulatory pressure to address AFFF contamination. The need for a formal directive emerged because CAFB's water quality manager Mr. Rebman's efforts to prevent AFFF releases through informal guidance and internal communications did not work. This led to the CAFB Commander issuing the OI and charging the flight commanders to enforce it.

Dkt. No. 6728 at 21.

Likewise, the Court relied on custodial documents/ESI to support its conclusion that the DFE did not apply to accidental AFFF releases. Specifically, the Court referenced certain "notable incidents" involving AFFF releases that included "four separate hangar activations due to portable generators being started too close to hangars equipped with AFFF suppression systems; a foam release caused by an individual grabbing onto and breaking an AFFF pipe in an attempt to keep himself from falling off a platform; and a foam release resulting from the accidental closure of the pressure release valve." *Id.* at 23–24. Once again, the Court relied on custodial documents/ESI in describing the inciting circumstances for at least two of those "incidents." *Id.* (citing Dkt. Nos. 6621-13, 6621-23).

Clearly, documents and information from custodial productions were integral to the Court's denial of the Government's site-specific motion to dismiss for CAFB, which makes the Government's refusal to commit to similar productions for the remaining sites even more unreasonable. In essence, the Government seeks to withhold from Plaintiffs at the remaining FTCA sites an entire category of discovery that was not only provided to the CAFB plaintiffs but shown to be critical to the Court's ruling preserving their claims. Considering the parties have been instructed to focus the present discovery on the same issues that proved determinative for the CAFB site (*i.e.*, the existence of a mandatory AFFF-related directive and evidence of accidental AFFF releases), Plaintiffs see no reason they should agree to a discovery proposal that provides them with anything less than what the CAFB plaintiffs received. For this reason alone, the Court should reject the Government's position and require that it commit to making custodial productions like it did at the CAFB Site.

## II. Plaintiffs Have Already Agreed to Substantial Concessions Addressing the Government's Concerns About the Scope of Their Jurisdictional Discovery Requests

The second reason the Court should reject the Government's position is Plaintiffs have already made substantial concessions that adequately address any concerns about the scope of the discovery they are seeking. As background, because the Court's original discovery order instructed the parties to focus on the same issues at each site, Plaintiffs promptly served a master set of discovery requests on the Government that included 18 interrogatories and 23 requests for production. In response, the Government raised concerns about the feasibility of completing the ordered discovery on such a compressed schedule due to recent staffing losses and the purportedly expansive scope of Plaintiffs' requests. Soon thereafter, the Court addressed these concerns at a

Status Conference, acknowledging that the Government's staffing concerns were "real" and advising the parties to consider giving it a "little bit of leeway" and "accommodation" on jurisdictional discovery.

Consistent with that guidance, Plaintiffs have devoted the past three months to negotiating a framework for the subject discovery that gives Plaintiffs what they need to oppose the Government's jurisdictional defenses while also remaining feasible for the Government to produce on a reasonable timetable. Early in their negotiations, the parties settled on a two-pronged approach for attempting to establish such a framework, with the first prong being a stipulation proposed by Plaintiffs where they agreed to withdraw certain of their pending discovery requests in exchange for the Government's rather uncontroversial commitment not to pursue a causation argument best reserved for merits stage of these cases. In the lead up to the most recent Status Conference, the parties finalized the terms of the stipulation, which ultimately provides for the withdrawal of *more than half* of the master discovery requests Plaintiffs originally served on the Government.[3]  In addition, the final terms provide for the withdrawal of another 40 site-specific requests served by Plaintiffs at four of the FTCA Sites. Although the number of requests Plaintiffs have agreed to withdraw under the stipulation is both staggering and representative of their willingness to compromise in these negotiations, more important is that these concessions directly address the Court's comments at the most recent status conference, which failed to even mention custodial productions and instead focused on the volume of requests pending before the Government.[4]

The second prong of the parties' approach to resolving these issues consists f a proposed CMO suggested by the Government that provides a framework for phasing the completion of jurisdictional discovery and briefing at the remaining FTCA Sites. Although the parties have been unable to reach agreement on the proposed CMO,[5] that is not for lack of trying on Plaintiffs' part given the substantial concessions they've made in negotiations to this point. Chief among the Plaintiffs' concessions is accepting the phasing of discovery as an overall concept, which is a stark departure from the Court's original order that provided for simultaneous discovery and briefing at *all* of the nearly two dozen remaining FTCA Sites. Further, the amount of time the proposed CMO provides to complete jurisdictional discovery and briefing at just the four sites in the first wave is *more than double* what the Court provided in its original order for all of the FTCA Sites.

Plaintiffs' willingness to compromise is also reflected in the incremental concessions they have made on the one issue that remains in dispute. Specifically, an early condition of Plaintiffs agreeing to the phasing proposal was the inclusion of set deadlines for the Government to

---

[3] Specifically, under the terms of the stipulation, Plaintiffs agreed to withdraw eight of their master interrogatories (Interrogatory Nos. 2–3, 10–13, 15, and 17) and thirteen of their master document requests (Request for Production Nos. 2–5, 10–15, 17, 20, and 23).

[4] Plaintiffs still submit that those figures are misleading and principally a function of there being roughly two dozen FTCA Sites where jurisdictional discovery has been ordered. Regardless, Plaintiffs fail to see how the Court's comments at the most recent status conference could provide a basis for the Government to revise its position on custodial productions when the Court fail to even mention such productions in its comments.

[5] A redlined copy of the proposed CMO highlighting the areas where the parties' positions on custodial productions differ is attached as Exhibit 2 to this letter brief.

substantially complete its document productions for *all* of the FTCA Sites, not just those included in the first wave. When the Government raised concerns about applying that requirement to custodial productions for sites outside the first wave, Plaintiffs made an alternative proposal allowing them to select a small subset of those sites to receive custodial productions to prepare them for the next discovery wave. Of course, the Government ultimately rejected not only this alternative proposal but the very concept of accounting for custodial productions at *any* of the remaining FTCA Sites, even the four selected for the first wave.

As the above discussions demonstrates, Plaintiffs have more than done their part in attempting to find a compromise solution that addresses the Government's concerns about the feasibility of completing the jurisdictional discovery and briefing this Court has ordered. Considering that, along with the fact Plaintiffs' concessions to date directly address the Court's concerns from the last status conference, the Court should reject the Government's attempt to deprive Plaintiffs of the benefit of custodial productions and order that such productions must be accounted for in the parties' proposed phasing CMO.

## III.     The Section 113(h) Plaintiffs are Entitled to Adequate Discovery and Depositions, Notwithstanding the Government's Staffing Issues

As mentioned above, it was only recently that the Section 113(h) Plaintiffs learned of the Government's position that depositions should be limited in number to one per site. Prior to that, the § 113(h) Plaintiffs were hopeful of being able to reach an agreement on a CMO[6] and were unaware of no major disputes, as noted to the Court.

The Section 113(h) Plaintiffs and the Government have discussed depositions continually since the Court ordered this discovery, with the § 113(h) Plaintiffs consistently reserving the right to depose appropriate witnesses—those with relevant information concerning "the current cleanup efforts" at the sites, the subject of this Court's analysis under CERCLA § 113(h), *see* Dkt. No. 6730 at 4—at each site. In an effort to reach agreement, the § 113(h) Plaintiffs even agreed to the Government's proposal to first attempt FRCP 30(b)(6) depositions, and even proposed to presumptively limit any other depositions to no more than three in number (per case/site). The Government failed to object until last Wednesday (June 25th, 2025), when the Government transmitted a proposed CMO that presumptively limits the Section 113(h) Plaintiffs to but one deposition per case/site (including any FRCP 30(b)(6) depositions). This is unacceptable to the Section 113(h) Plaintiffs, who need a complete record on the scope and nature of the Government's cleanup efforts in order to diligently defend against the Government's motions. A single deposition per case/site is also inconsistent with the federal rules, which entitle plaintiffs to 10 depositions without leave of court. Fed. R. Civ. P 30(2)(A)(i).

In its brief, the Government will likely cite staffing issues, and the need to defend so many depositions. The Section 113(h) Plaintiffs have been sensitive to the Government's staffing issues, and have agreed to all of the United States' requests for additional time to complete this

---

[6] A redlined copy of the CMO showing where the positions of the Section 113(h) Plaintiffs and the Government diverge is attached as Exhibit 3 to this letter brief.

jurisdictional discovery and briefing, which the parties noted as the major outstanding issue in the most recent Joint Status Report. Indeed, like the FTCA Plaintiffs, the Section 113(h) Plaintiffs have consented to a timeframe for this discovery and briefing that more than doubles what the Court ordered. However, the Government's staffing issues cannot trump the § 113(h) Plaintiffs right to the discovery which they are entitled to under the Court's February 27, 2025 Order, the Federal Rules of Civil Procedure, and general principles of equity. Nor would it be just to deprive the Section 113(h) Plaintiffs of the full scope of discovery that was provided to the State of New Mexico during the site-specific discovery conducted under CMO 25 for Cannon Air Force Base (New Mexico took three depositions of Air Force employees).

The Government's position on depositions also appears to be a result of its general position (as reflected in the Government's responses to certain written discovery)[7] that the only information relevant to its motions under CERCLA § 113(h) is contained in the administrative records for the sites. Of course, the Court has already rejected that approach in denying the Government's Global Motion to Dismiss, finding that "the Court appreciated the fact intensive nature of both jurisdictional defenses" and ordering the parties to "conduct site-specific discovery." Dkt. No. 6730, at 4.[8]  From the § 113(h) Plaintiffs' perspectives, it is axiomatic that such site-specific discovery must extend beyond the administrative records for the sites (which is not discovery at all since that information is publicly available). It should also be noted that the administrative records do *not* evidence "the current cleanup efforts" at the sites. By mere example, the most recent document in the administrative record for Holloman Air Force Base in New Mexico is over a year old—a Work Plan that says nothing of the current status of the cleanup.

In conclusion, Plaintiffs respectfully request that the Court reject the Government's recently adopted discovery positions and enter an order providing for custodial productions at the FTCA Sites and three depositions per 113(h) Site.


Respectfully submitted,


Andrew W. Croner

---

[7] The § 113(h) Plaintiffs do not attempt to litigate that discovery dispute here—they will likely file a Motion to Compel on the subject, unless the Government changes position.

[8] The Government's Global Motion to Dismiss, Dkt. No. 4550, relied almost exclusively on the Declaration of Alexandria Long (Exhibit 1 to the Government's Global Motion) which in turn was based largely on the administrative records for the sites. *See* Dkt. No. 4550-2 at Appendix A.