

**U.S. Department of Justice**
Civil Division, Torts Branch
Environmental Torts Litigation

---

Haroon Anwar, Trial Attorney
Telephone: (202) 598-3946
Email: Haroon.Anwar@usdoj.gov

**VIA ECF [gergel_ecf@scd.uscourts.gov]**                                      June 30, 2025

The Honorable Richard M. Gergel
United States District Court for the District of South Carolina
85 Broad Street
Charleston, SC 29401

Re:     *In re: Aqueous Film-Forming Foams Products Liability Litigation*,
        MDL No. 2:18-mn-2873-RMG (D.S.C.)

Dear Judge Gergel:

For the Court's consideration, the United States attaches two proposed Case Management Orders ("CMOs") governing the jurisdictional discovery and briefing for the remaining Federal Tort Claims Act ("FTCA") and Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") § 113(h) claims (Exhibits A and B, respectively). The discussion below details the United States' reasons for each of its proposed CMOs.

## FTCA CLAIMS

After months of negotiations, the FTCA Plaintiffs and the United States (collectively, the "Parties") made significant strides in reaching an agreement on how to complete jurisdictional discovery on the discretionary function exception ("DFE") issues. The Parties had agreed that the FTCA Plaintiffs would withdraw (1) certain discovery requests from its Master Set of Interrogatories and Requests for Production ("Master Set") (Exhibit C) that fall outside of the scope of jurisdictional discovery, and (2) all other pending, site-specific written discovery requests. In exchange, the United States agreed to not argue in any jurisdictional DFE motions that the FTCA Plaintiffs must establish causation, *i.e.*, show that their injuries were caused by AFFF releases relating to conduct not subject to the DFE, which will be addressed at a later time if a case or site proceeds to a merits phase. Such concession does not impact the United States' right to advance the jurisdictional argument that an alleged violation of a mandatory and specific directive lacks a causal nexus to the FTCA Plaintiffs' claim(s).[1] However, the Parties could not reach agreement on all sections of the proposed CMO. For the reasons explained below, the United States

---

[1] *See, e.g.*, *Loughlin v. United States,* 286 F. Supp. 2d 1, 18 (D.D.C. 2003) ("To cancel discretionary function immunity, a directive must not only be specific and mandatory, it must also be relevant to the claims underlying the suit."); *Dichter-Mad Fam. Partners, LLP v. United States*, 709 F.3d 749, 751 (9th Cir. 2013) ("Those policies that are arguably mandatory lack the causal relationship to the plaintiffs' alleged injuries required to establish jurisdiction, even under a generous reading of the complaint.").

respectfully asks the Court to enter its proposed CMO governing jurisdictional discovery and briefing of the FTCA claims, which is attached as Exhibit A.

The Parties largely agreed to a jurisdictional discovery process that would phase site-specific discovery, four sites at a time. After each phase, briefing would be completed, and the process would continue until either the remaining sites were exhausted or until it becomes illogical to continue. The Parties agree to nearly all provisions of this CMO, except on one issue: the necessity, scope, and timing of custodial ESI productions of base personnel to resolve the remaining DFE issues.

The Court's February 27, 2025, DFE orders (Dkt. Nos. 6728, 6730) direct the Parties to complete site-specific jurisdictional discovery and briefing on the remaining two dozen or so cases involving about two dozen sites. Consistent with the Court's orders, the United States began working immediately with the Air Force, Army, Navy, Air National Guard, and Department of Energy to locate site-specific AFFF policies and materials about accidental releases for all non-Cannon sites. This information collection is in addition to the substantial discovery that has occurred over the past six years. Since 2019, the United States has produced hundreds of thousands of documents consisting of millions of pages of global and site-specific documents and has offered and produced multiple government witnesses for depositions, even while contesting jurisdiction. (Dkt. No. 4548-4, ¶¶ 3, 10–11). Forthcoming productions of available site-specific information will only add to the millions of pages of global and site-specific documents that the United States has already produced in this litigation.

Now, the FTCA Plaintiffs seek custodial ESI from two individuals for every site, regardless of whether the site has an applicable policy or evidence of an accidental release. Such an across-the-board approach is extremely burdensome and not proportional to the needs of the case, particularly in light of the "fairly narrow path" that remains for these claims. *See* 4/4/2025 Stat. Conf. Tr., 11:19-22 (cautioning the Parties not to "redo[] discovery"); *see generally* (Dkt. Nos. 6728, 6730).

The United States proposes a narrower approach that aligns with the Court's February 27, 2025, DFE Orders: The United States respectfully submits that custodial ESI discovery may be appropriate in one or both of the following instances: (1) where there is evidence of an established policy governing the use or disposal of AFFF at the site in question and/or (2) if there is evidence of an accidental release of AFFF at the site in question. In such a case, the Parties should meet and confer to discuss an agreement on (a) the custodian(s) from whom ESI is sought is/are identified, (b) the scope of the search to be performed, and (c) the timing of any productions from the search. *See* Exhibit A, ¶ 7(b). If the parties are unable to agree, either side may file a motion with the Court.

FTCA Plaintiffs have "the burden of showing that the discretionary function exception does not foreclose their claim." *Seaside Farm, Inc. v. United States*, 842 F.3d 853, 857 (4th Cir. 2016) (citing *Welch v. United States*, 409 F.3d 646, 651 (4th Cir. 2005); *Williams v. United States*, 50 F.3d 299, 304 (4th Cir. 1995)). "The discretionary function exception is a jurisdictional threshold that must be considered before moving to the merits of an FTCA claim," and the Court is "well within its discretion to limit discovery to this dispositive issue." *Id.* at 860 (internal

2

citations omitted). At the June 20, 2025, status conference, the Court also reminded the FTCA Plaintiffs' counsel that the applicability of the DFE to the remaining FTCA claims "is a narrow issue of discovery" before continuing to pose questions to demonstrate the scope of the jurisdictional discovery: "Are there policies at other bases like the one we had in our principal case[,Cannon]? . . . [D]o we have information in other places for accidental discharges? Mistaken neglectful charges?" 6/20/2025 Stat. Conf. Tr., 13:2–6.

Here, just as in *Seaside Farm, Inc. v. United States*, where the Government produced substantially fewer documents (*i.e.*, tens of thousands of pages of documents vs. millions of pages of documents and materials), the FTCA Plaintiffs have been afforded "more than adequate discovery"—by more than two orders of magnitude when compared to *Seaside Farm*—to make a determination as to whether the relevant agency "had some nondiscretionary duty or otherwise exercised discretion that was not susceptible to policy analysis." 842 F.3d at 861. Additionally, the United States, as provided in Paragraph 7(a) of the proposed CMO, will continue to produce responsive documents and materials to discovery requests of the FTCA Plaintiffs' Master Set that are relevant to the jurisdictional issue, for the sites that are not chosen within the first phase.

Finally, we note that throughout negotiations, the United States has reiterated its willingness to consider narrowly tailored requests for custodial ESI discovery on a case-by-case basis, depending on whether the relevant custodial data still exists for time periods dating back decades. However, wholesale custodial ESI productions from multiple custodians are not necessary for the narrow, site-specific DFE issues. Moreover, the collection and production of custodial ESI is expensive and time-consuming, and engaging in such expansive discovery for two dozen sites will make it virtually impossible to resolve the remaining DFE issues within a reasonable timeframe.

## CERCLA § 113(h) CLAIMS

Shortly after the Court's February 27, 2025, CERCLA § 113(h) Orders (Dkt. Nos. 6728, 6730) directing the Parties to complete site-specific discovery at the remaining CERCLA § 113(h) sites, the Parties commenced written discovery. To date, the CERCLA § 113(h) Plaintiffs ("CERCLA Plaintiffs") have served, and the United States has responded to, CERCLA Plaintiffs' master set of interrogatories on site-specific jurisdictional issues. The CERCLA Plaintiffs' master set of interrogatories relate to all eight remaining sites with claims seeking injunctive relief. CERCLA Plaintiff New Jersey Department of Environmental Protection ("NJDEP") has served Requests for Production ("RFP") and Requests for Admission ("RFA") related to the three sites located in New Jersey: Joint Base McGuire-Dix-Lakehurst, Former Naval Air Warfare Center Trenton, and Naval Weapons Station Earle. On June 25, 2025, the United States responded to the NJDEP Plaintiffs' RFPs and RFAs. The CERCLA Plaintiffs have informed the United States of their intent to serve more RFPs and depose fact witnesses for each site.

The United States has also served interrogatories and RFAs on the CERCLA Plaintiffs related to all eight remaining sites. CERCLA Plaintiffs and the United States have agreed to extend the CERCLA Plaintiffs' deadline to respond to the United States' interrogatories and RFAs to July 18, 2025.

To facilitate the resolution of any remaining CERCLA § 113(h) discovery and site-specific briefing, the Parties attempted to negotiate a CMO to govern the remaining site-specific jurisdictional discovery and briefing ordered by the Court, *see* Dkt. No. 6730. The Parties reached an impasse related to the number of depositions appropriate for the narrow discovery ordered by the Court, *see id*. at 4. The United States' proposed CMO is attached as Exhibit B. While the United States believes the evidence contained in the administrative records for each site's CERCLA cleanup thoroughly details the current cleanup efforts at each site, as a compromise the United States offered to produce one fact witness per site for deposition, either a Fed. R. Civ. P. 30(b)(6) witness or a fact witness with knowledge of the CERCLA cleanup efforts related to PFAS from AFFF. *See* Ex. B ¶ 4(b). The United States also offered to permit additional depositions to be taken by agreement of the Parties or by order of the Court following letter briefing with the Court if the Parties cannot agree. *See id.* ¶ 4(c). CERCLA Plaintiffs rejected the United States' offer and demanded agreement to at least three fact witness depositions, including "Fed. R. Civ. P. 30(b)(6) depositions," per site to address the narrow CERCLA § 113(h) jurisdictional question at issue. *See* CERCLA Plaintiffs' letter brief and proposed CERCLA § 113(h) CMO.

To determine whether the CERCLA § 113(h) jurisdictional bar applies to CERCLA Plaintiffs' claims to injunction relief, the Court must assess two questions. *See* Dkt. No. 6728 at 27. First, "whether the cleanup efforts at [the relevant site] are being conducted under CERCLA Section 104," *see id*. Second, "whether [the Plaintiff's] claims seeking injunctive relief should be considered 'challenges' to the remedial action," *see id*.

As to the first question about the current CERLCA cleanup efforts at each site, the evidence contained in the administrative record for the cleanup efforts at each site amply detail those efforts. That said, any ambiguity the CERCLA Plaintiffs may find in the written records for each site can be resolved through a deposition of one fact witness or one Fed. R. Civ. P. 30(b)(6) witness related to each site. *See* FED. R. CIV. P. 30(b)(6) ("The persons designated must testify about information known or reasonably available to the organization."). And the ability to depose more fact witnesses by agreement of the Parties or through letter briefing should resolve any concerns about the quality of the deposition for each site. Permitting numerous fact witness depositions for each site is thus unnecessary to resolve the CERCLA § 113(h) jurisdictional question related to the remaining eight sites. Indeed, numerous fact witness depositions for each site would require significant time and personnel resources and almost certainly will require more than the 120 days proposed for depositions in both Parties' proposed CMOs. *See* Ex. B ¶ 4; *see also* Plaintiffs' letter brief and proposed CERCLA § 113(h) CMO.

The second question turns to the injunctive relief that the CERCLA Plaintiffs are seeking. Similar to the discovery related to the current CERCLA cleanup efforts, written discovery is also sufficient to respond to this inquiry. The United States, therefore, does not anticipate deposing any fact witnesses related to this issue. Still the United States has not yet received the CERCLA Plaintiffs' responses to its written discovery and thus seeks to reserve the right to depose at least one fact witness per site as contemplated in the United States' proposed CMO. *See* Ex. B ¶ 4(b). The United States is confident it can resolve any fact witness deposition needs beyond one deposition per site by agreement of the Parties or through letter briefing with the Court.

Resolution of this narrow CERCLA § 113(h) jurisdictional issue requires imposing a reasonable limit on the number of fact witness depositions per site for each Party. That limit should be one fact witness deposition, including Fed. R. Civ. P. 30(b)(6) depositions, per site for each Party to ensure the Parties focus on obtaining information relevant to the CERCLA § 113(h) jurisdictional question at issue.

On top of adding redlined language related to the presumptive limit on the number of depositions for each Party, CERCLA Plaintiffs also added language to Paragraph 2 related to (a) written discovery, custodial files, and ESI and (b) the right to take more discovery on the merits should their claims to injunctive relief survive the United States' motion to dismiss. As stated in the Court's February 27, 2025, CERCLA § 113(h) Orders (Dkt. Nos. 6728, 6730) and as discussed above, given the narrow focus of the CERCLA § 113(h) jurisdictional issue written discovery for the sites at issue should be limited to the facts related to the current CERCLA cleanup efforts. That information is located in the administrative record for the CERCLA cleanup at each site. There is no need to expand written discovery to custodial files or ESI as that information is not proportional to the narrow issue before the Court. Expanding written discovery to include custodial records and ESI would also increase the time needed to respond to written discovery well beyond the 90 days contemplated by both Parties for the completion of written discovery. *See* Ex. B ¶ 2; *see also* Plaintiffs' letter brief and proposed CERCLA § 113(h) CMO.

CERCLA Plaintiffs also added redlined language to Paragraph 5 that would permit depositions of "person(s)" who provided "information" to "expert or non-deposition testimony"—declarants or affiants who will be relied upon in a site-specific brief. Resolution of the CERCLA § 113(h) jurisdictional issue does not require depositions of declarants or affiants who provide "expert or non-deposition testimony" that will be relied upon in site-specific briefs. As a compromise, the United States offered to agree to allow depositions of declarants or affiants who will provide testimony relied upon in the site-specific briefing as set out in the attached Exhibit B, Paragraph 5. The redline language CERCLA Plaintiffs proposed is not proportionate to the narrow issue before the Court and could perpetually extend the depositions period for this matter. Each deponent could have relied on one person or more and a Party could elect to depose each person leading to a never-ending cycle. Depositions of declarants or affiants who give "expert or non-deposition testimony" should not be expanded in the manner proposed in the CERCLA Plaintiffs' redlined language in their proposed CERCLA § 113(h) CMO.

The redlined language added by Plaintiffs to Paragraphs 2 and 5 of the proposed CERCLA § 113(h) CMO should be rejected because it will expand discovery beyond the limited scope necessary to resolve the CERCLA § 113(h) jurisdictional issue.

[*Signature blocks on following page.*]

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General,
Civil Division
JONATHAN GUYNN
Deputy Assistant Attorney General,
Civil Division
J. PATRICK GLYNN
Director
HAROON ANWAR
Lead Trial Counsel

*/s/ Haroon Anwar*
Michelle T. Domingue II
Michele S. Greif
Lucas R. White
*Trial Attorneys*
U.S. Department of Justice
Civil Division, Torts Branch
Environmental Torts Litigation

ADAM R.F. GUSTAFSON
Acting Assistant Attorney General

*/s/ Shari Howard*
Shari Howard
U.S. Department of Justice
Environment & Natural Resources Division
Environmental Defense Section
P.O. Box 7611
Washington, D.C. 20044
Tel: (202) 598-9407
Fax: (202) 514-8865
shari.howard@usdoj.gov

Enclosures:   Exhibit A: The United States of America's Proposed FTCA Claims Case Management Order

Exhibit B: The United States of America's Proposed CERCLA § 113(h) Case Management Order

Exhibit C: FTCA Plaintiffs' Master Set of Interrogatories and Requests for Production

cc:   Counsel of Record in the *In re: Aqueous Film-Forming Foams Products Liability Litigation*

6