# Exhibit 3

*Excerpts from Deposition of Ronald Thames*
*October 1 & 18, 2024*

- *Pages 1-9*
  - *Appearances and indexes, Oct. 1, 2024*

- *Pages 44-47*
  - *Mr. Thames describes the corporate structure of FSP, including "wind-down mode"*

- *Pages 179-187*
  - *Appearances and indexes, Oct. 18, 2024*

- *Pages 420-431*
  - *Mr. Thames further describes FSP's "wind-down mode"*

PURSUANT TO PROTECTIVE ORDER

Page 1

1           UNITED STATES DISTRICT COURT
         FOR THE DISTRICT OF SOUTH CAROLINA
2               CHARLESTON DIVISION
3    IN RE: AQUEOUS          )
     FILM-FORMING FOAMS      )
4    (AFFF) PRODUCTS         )   MDL NO.
     LIABILITY LITIGATION    )   2:18-mn-2873-RMG
5    _____    )
     THIS DOCUMENT RELATES   )
6    TO ALL CASES            )
7
            TUESDAY, OCTOBER 1, 2024
8
     CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER
9
                        - - -
10
11          Remote videotaped deposition of Ron
12   Thames, held remotely at the location of the
13   witness in Atlanta, Georgia, commencing at
14   9:30 a.m. Eastern Time, on the above date,
15   before Carrie A. Campbell, Registered
16   Diplomate Reporter, Certified Realtime
17   Reporter, Illinois, California & Texas
18   Certified Shorthand Reporter, Missouri,
19   Kansas, Louisiana & New Jersey Certified
20   Court Reporter.
21                      - - -
22
23
24
25   Job No. 6943994

PURSUANT TO PROTECTIVE ORDER

```
                                        Page 2
 1      R E M O T E    A P P E A R A N C E S :
 2
 3      NAPOLI SHKOLNIK PLLC
        BY:   ANDREW CRONER
 4            ACroner@NapoliLaw.com
              JOSE RIOS GONZALEZ
 5            JGonzalez@NapoliLaw.com
              MARISA FONT-ROBERT
 6            CORAL ODIOT-RIVERA
              codiot@napolilaw.com
 7            CRISTINA RODRIGUEZ
              crodriguez@nsprlaw.com
 8            NICHOLAS MINDICINO
              NMindicino@NapoliLaw.com
 9      270 Muñoz Rivera Avenue, Suite 201
        Hato Rey, Puerto Rico  00918
10      (833) 271-4502
11
        and
12
13      KENNEDY AND MADONNA, LLP
        BY:  KEVIN J. MADONNA
14      48 Dewitt Mills Rd
        Hurley, New York  12443-6213
15      (845) 481-2622
16
        and
17
18      THE FERRARO LAW FIRM
        BY:   JAMES L. FERRARO, JR.
19            jferraro@ferrarolaw.com
              NATALIA SALAS
20            nsalas@ferrarolaw.com
        600 Brickell Avenue, Suite 3800
21      Miami, Florida  33131
        (305) 547-9800
22      Counsel for Plaintiffs
23
24
25
```

Page 3

```
 1      DOUGLAS & LONDON, P.C.
        BY:  REBECCA NEWMAN
 2           rnewman@douglasandlondon.com
             TATE J. KUNKLE
 3           tkunkle@douglasandlondon.com
             LARA SAY
 4           lsay@douglasandlondon.com
        59 Maiden Lane, 6th Floor
 5      New York, New York  10038
        (212) 566-7500
 6      Counsel for Plaintiffs and the
        Plaintiff Executive Committee
 7
 8

        MAYER BROWN LLP
 9      BY:  DANIEL ROTTENBERG
             DRottenberg@mayerbrown.com
10      71 South Wacker Drive
        Chicago, Illinois  60606
11      (312) 782-0600
        Counsel for 3M Company
12
13

        KAZMAREK, MOWREY, CLOUD & LASETER
14      BY:  JENNIFER A. SIMON
             jsimon@kmcllaw.com
15      1230 Peachtree Street, N.E., Suite 900
        Atlanta, Georgia  30309
16      (404) 812-0839
        Counsel for Amerex Corporation
17
18

        PARKER POE
19      BY:  MALLORY S. SPARKS
             mallorysparks@parkerpoe.com
20           MICHAEL GOLDSTICKER
             michaelgoldsticker@parkerpoe.com
21      200 Meeting Street, Suite 301
        Charleston, South Carolina  29401-3156
22      (843) 727-2670
        Counsel for Clariant Corporation and
23      Archroma US, Inc.
24
25
```

PURSUANT TO PROTECTIVE ORDER

Page 4

```
 1        SHOOK, HARDY & BACON L.L.P.
          BY:  DAVID BRENT DWERLKOTTE
 2             dbdwerlkotte@shb.com
               AMY M. CROUCH
 3             amcrouch@shb.com
               ZACHARY S. BEACH
 4             zbeach@shb.com
          2555 Grand Boulevard
 5        Kansas City, Missouri  64108
          (816) 474-6550
 6
 7        and
 8
          HOOD LAW FIRM
 9        BY:  MOLLY CRAIG
               molly.craig@hoodlaw.com
10        172 Meeting Street
          Charleston, South Carolina  29401
11        (843) 577-1223
          Counsel for E.I. du Pont de Nemours
12        and Company; The Chemours Company,
          and The Chemours Company, FC LLC
13
14
          DLA PIPER LLP (US)
15        BY:  DANIEL LARKINS
               daniel.larkins@dlapiper.com
16        6225 Smith Avenue
          Baltimore, Maryland  21209-3600
17        (410) 580-3000
18
          and
19
20        DLA PIPER LLP (US)
          BY:  BUFFY MIMS
21             buffy.mims@dlapiper.com
          500 Eighth Street, NW
22        Washington, DC  20004
          (202) 799-4000
23        Counsel for BASF Corporation
24
25
```

PURSUANT TO PROTECTIVE ORDER

Page 5

```
 1      GRAY LAYTON KERSH SOLOMON FURR &
        SMITH, P.A.
 2      BY:  MICHAEL L. CARPENTER
             MCarpenter@gastonlegal.com
 3      516 South New Hope Road
        Gastonia, North Carolina  28054
 4      (704) 865-4400
        Counsel for Defendant Buckeye Fire
 5      Equipment Co.
 6
 7      GOLDBERG SEGALLA
        BY:  GEORGE H. BUERMANN
 8           gbuermann@goldbergsegalla.com
        1037 Raymond Boulevard,  Suite 1010
 9      Newark, New Jersey  07102-5423
        (973) 681-7000
10
11      and
12
        GOLDBERG SEGALLA
13      BY:  OLIVER E. TWADDELL
             otwaddell@goldbergsegalla.com
14      711 3rd Avenue, Suite 1900
        New York, New York  10017-4013
15      (646) 292-8700
16
        and
17
18      ALSTON & BIRD
        BY:  LEAH FIORENZA MCNEILL
19           leah.mcneill@alston.com
        1201 West Peachtree Street, Suite 4900
20      Atlanta, Georgia  30309
        (404) 881-7000
21      Counsel for Chemicals Incorporated
22
23
24
25
```

PURSUANT TO PROTECTIVE ORDER

Page 6

1    GORDON REES SCULLY MANSUKHANI, LLP
     BY:  ANDRE HUNTER JR.
2         ahunter@grsm.com
     One North Franklin, Suite 800
3    Chicago, Illinois  60606
     (312) 565-1400
4    Counsel for ChemDesign, Inc.
5
6    SMITH ANDERSON
     BY:  ADDIE S. RIES
7         aries@smithlaw.com
     150 Fayetteville Street, Suite 2300
8    Raleigh, North Carolina  27601
     (919) 821-1220
9    Counsel for Dynax Corporation
10
11   BAKER & HOSTETLER LLP
     BY:  JILLIAN TIMKO
12        jtimko@bakerlaw.com
     1050 Connecticut Avenue NW, Suite 1100
13   Washington, DC  20036-5403
     (202) 861-1681
14
15   and
16
     BAKER & HOSTETLER LLP
17   BY:  GREGORY C. ULMER
          gulmer@bakerlaw.com
18   811 Main Street, Suite 1100
     Houston, Texas  77002
19   (713) 751-1600
     Counsel for Perimeter Solutions, LP
20
21
   ALSO PRESENT:
22
        KIM VEGA CIOFFI, Williams & Connolly
23
        GABRIEL VÁZQUEZ SEGARRA
24
        RODNEY NUTT
25

Page 7

1          IZABELLE GONZALEZ, paralegal, Napoli
   Shkolnik

2
          VIANKA BERNARDI, paralegal, Napoli
3    Shkolnik

4          SOFIA RAMÍREZ, paralegal, Napoli
   Shkolnik

5
          CARLOS CARRERAS, Paralegal, Napoli
6    Shkolnik, PLLC

7          EVAN J. WOLFE, trial technician,
   Precision Trial Solutions

8

9    V I D E O G R A P H E R :
        CHRIS RITONA,
10       Golkow Litigation Services

11                           - - -

12

13

14

15

16

17

18

19

20

21

22

23

24

25

PURSUANT TO PROTECTIVE ORDER

Page 8

```
 1                      INDEX
 2                                         PAGE
 3    APPEARANCES.................................   2
 4    EXAMINATIONS
 5       BY MR. CRONER............................  12
 6
 7                    EXHIBITS
 8     No.      Description                      Page
 9    Exh 144   Notice of Deposition of Ron        22
                Thames Pursuant to Federal Rule
10              of Civil Procedure 30
11    Exh 145   November 10, 2022 deposition       42
                transcript of Fire Services Plus
12              designee John Barb
13    Exh 146   TUV Produkt und Umwelt GmbH,       58
                Report No. 424-222750/110675/2.000,
14              Acute Fish Toxicity (OECD 203)
                from FireAde 2000,
15              FSP00076457 - FSP00076468
16    Exh 147   RCC Study Number 843675, FireAde   77
                2000: Acute Oral Toxicity Study
17              in Rats,
                FSP00076470 - FSP00076515
18
      Exh 148   Fire Service Plus, Inc.,           96
19              invoices and checks,
                FSP00080982 - FSP00081008
20
      Exh 149   Fire Service Plus, Inc.,          114
21              invoices and checks,
                FSP00080938 - FSP00080981
22
      Exh 150   Material Safety Data Sheet,       122
23              FireAde AFFF Fire Fighting Foam,
                FSP00075806 - FSP00075809
24
      Exh 151-153                         NOT MARKED
25
```

Page 9

1   Exh 154    E-mail(s),                                102
            FSP00077744

2

3       (Exhibits attached to the deposition.)

4

5   CERTIFICATE.................................. 138

6   ACKNOWLEDGMENT OF DEPONENT................... 140

7   ERRATA...................................... 141

8   LAWYER'S NOTES.............................. 142

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

PURSUANT TO PROTECTIVE ORDER

Page 44

1    reason to dispute any of the testimony that

2    Mr. Barb gave at this deposition about FSP?

3         A.    No.

4         Q.    Okay.  And do you recall that

5    one area that Mr. Barb testified about was

6    FSP's corporate structure?

7         A.    No, I don't recall that.

8         Q.    Okay.  Well, I want to ask you

9    some questions, and we -- see if it's

10   consistent with what Mr. Barb has told us in

11   the past.

12        A.    All right.

13        Q.    How many employees does FSP

14   have today?

15        A.    None.

16        Q.    None.  Okay.

17        A.    Zero.  No employees.

18        Q.    So does FSP still exist today?

19        A.    Currently, yes, but it's in a

20   wind-down mode.

21        Q.    And what do you mean by

22   "wind-down mode"?

23        A.    There's no sales being

24   generated through it.

25        Q.    Okay.  Well, and when did FSP

PURSUANT TO PROTECTIVE ORDER

Page 45

1    enter wind-down mode, approximately?  What

2    year?

3            A.       I don't remember the exact time

4    of that.

5            Q.       Okay.  Before FSP entered

6    wind-down mode, roughly how many employees

7    did it have?

8            A.       All together, about 21, 22, 25

9    total.

10           Q.       Okay.  And from the time it was

11   founded in 1999, did the number of employees

12   at FSP fluctuate from that, you know, 21, 22

13   number?

14           A.       It did, yes.

15           Q.       What's the most -- sorry,

16   strike that.

17                    Were there times where there

18   were more than 21 or 22 employees at FSP?

19           A.       Yes.

20           Q.       And approximately what was the

21   maximum number of employees that FSP had from

22   the time it was founded until it went into

23   wind-down mode?

24           A.       Around 31, 32 --

25           Q.       Okay.

PURSUANT TO PROTECTIVE ORDER

Page 46

1          A.      -- in that area.

2          Q.      Okay.  But either way, we can

3    agree that FSP was a relatively small

4    company.

5                  Is that fair?

6          A.      Yes.

7          Q.      Okay.  And as far as FSP's

8    corporate structure, were you at the very top

9    as the CEO of Fire Service Plus?

10         A.      Yes.

11         Q.      Okay.  And within FSP, were

12   there various departments that existed

13   focusing on different parts of the business?

14         A.      No.

15         Q.      Okay.  Were there employees

16   that focused on certain areas of the

17   business?

18         A.      I want you to clarify that,

19   please.

20         Q.      Well, I guess what I'm asking,

21   Mr. Thames, is, for instance, was there --

22   were there employees at FSP that focused on

23   sales?

24         A.      Yes.

25         Q.      Okay.  And how many employees,

PURSUANT TO PROTECTIVE ORDER

Page 47

1  approximately, focused on sales at FSP?

2            MR. BUERMANN:  Just objection

3       to form regarding time frame.

4            MR. CRONER:  Okay.

5  QUESTIONS BY MR. CRONER:

6       Q.    Well, I guess I'd ask, did the

7  number of employees focusing on sales at FSP

8  fluctuate between 1999 and the wind-down?

9       A.    Yes.

10      Q.    Were there -- well, what was

11 the maximum number of employees you had at

12 FSP that focused on sales at any given point?

13      A.    Everyone in the company was a

14 salesman.  In a small company, you don't --

15 you do have designated, but I'd say maybe six

16 or seven of us just on sales.

17      Q.    Okay.  And did those employees

18 report directly to you as the CEO?

19      A.    Only if it pertained of

20 information I needed.

21      Q.    Okay.  And did you also serve

22 as a sales agent for some of FSP's direct

23 customers?

24      A.    Yes.

25      Q.    Okay.  And were there employees

PURSUANT TO PROTECTIVE ORDER

Page 179

1          IN THE UNITED STATES DISTRICT COURT
          FOR THE DISTRICT OF SOUTH CAROLINA
2                  CHARLESTON DIVISION
3                       -   -   -
4
                                      :
5     IN RE: AQUEOUS               :
      FILM-FORMING FOAMS           :
6     (AFFF) PRODUCTS              :   MDL No.
      LIABILITY LITIGATION         :   2:18-mn-2873-
7                                  :   RMG
      _____      :
8     THIS DOCUMENT RELATES        :
      TO ALL CASES                 :
9                                  :
10                      -   -   -
11               October 18, 2024
12                      -   -   -
13              CONFIDENTIAL -
          PURSUANT TO PROTECTIVE ORDER
14
                        -   -   -
15
               Continued remote videotape
16    deposition of RON THAMES, taken pursuant
      to notice, was held at the location of
17    the witness in Atlanta, Georgia,
      beginning at 9:09 a.m. Eastern, on the
18    above date, before Kimberly A. Cahill, a
      Federally Approved Registered Merit
19    Reporter and Notary Public.
20
                        -   -   -
21
22
23
24    Job No. 6972016

PURSUANT TO PROTECTIVE ORDER

Page 180

```
 1   APPEARANCES:
 2
 3   NAPOLI SHKOLNIK PLLC
     BY:   ANDREW CRONER, ESQUIRE
 4   BY:   NICHOLAS MINDICINO, ESQUIRE
     BY:   JOSE RIOS GONZALEZ, ESQUIRE
 5   BY:   HUNTER SHKOLNIK, ESQUIRE
     BY:   MARISA FONT-ROBERT, ESQUIRE
 6   BY:   CRISTINA RODRIGUEZ, ESQUIRE
     360 Lexington Avenue, 11th Floor
 7   New York, New York 10017
     (212) 397-1000
 8   acroner@napolilaw.com
     nmindicino@napolilaw.com
 9   jgonzalez@napolilaw.com
     hshkolnik@napolilaw.com
10   mfont@napolilaw.com
     crodriguez@napolilaw.com
11   Representing Plaintiffs
12
     DOUGLAS & LONDON, P.C.
13   BY:   TATE J. KUNKLE, ESQUIRE
     BY:   LARA SAY, ESQUIRE
14   BY:   TESS GODDARD, ESQUIRE
     59 Maiden Lane
15   6th Floor
     New York, New York 10038
16   (212) 566-7500
     tkunkle@douglasandlondon.com
17   lsay@douglasandlondon.com
     tgoddard@douglasandlondon.com
18   Representing Plaintiffs
19
     KENNEDY & MADONNA, LLP
20   BY:   KEVIN J. MADONNA, ESQUIRE
     48 Dewitt Mills Road
21   Hurley, New York  12443
     (845) 461-2622
22   kmadonna@kennedymadonna.com
     Representing Plaintiffs
23
24
```

PURSUANT TO PROTECTIVE ORDER

Page 181

```
 1    THE FERRARO LAW FIRM
      BY:  JAMES L. FERRARO, JR., ESQUIRE
 2    BY:  NATALIA SALAS, ESQUIRE
      19 East Cimarron Street
 3    Colorado Springs, Colorado  80903
      (877) 994-5887
 4    jferraro@ferrarolaw.com
      nsalas@ferrarolaw.com
 5    Representing Plaintiffs
 6
      SALTZ MONGELUZZI BENDESKY P.C.
 7    BY:  DAVID C. MAGAGNA, JR., ESQUIRE
      One Liberty Place
 8    52nd Floor
      1650 Market Street
 9    Philadelphia, Pennsylvania  19103
      (215) 839-0456
10    dmagagna@smbb.com
      Representing Plaintiffs
11
12    LEVIN PAPANTONIO RAFFERTY PROCTOR
      BUCHANAN O'BRIEN BARR MOUGEY P.A.
13    BY:  MADELINE PENDLEY, ESQUIRE
      316 South Baylen Street
14    Suite 600
      Pensacola, Florida 32502
15    (850) 435-7000
      mpendley@levinlaw.com
16    Representing Plaintiffs
17
      KAZMAREK MOWERY CLOUD LASETER LLP
18    BY:  JENNIFER A. SIMON, ESQUIRE
      1914 4th Avenue North
19    Suite 400
      Birmingham, Alabama  35203
20    (205) 478-1717
      jsimon@kmcllaw.com
21    Representing Amerex Corporation
22
23
24
```

PURSUANT TO PROTECTIVE ORDER

Page 182

```
 1     SHOOK, HARDY & BACON
       BY:  DAVID BRENT DWERLKOTTE, ESQUIRE
 2     BY:  AMY M. CROUCH, ESQUIRE
       2555 Grand Boulevard
 3     Kansas City, Missouri  64108
       (816) 474-6550
 4     dbdwerlkotte@shb.com
       amcrouch@shb.com
 5     Representing E.I. du Pont de Nemours &
       Company (n/k/a EIDP), Corteva Inc., The
 6     Chemours Company and The Chemours Company
       FC, LLC
 7
 8     GORDON REES SCULLY MANSUKHANI, LLP
       BY:  ANDRE A. HUNTER, JR., ESQUIRE
 9     One North Franklin
       Suite 800
10     Chicago, Illinois  60606
       (312) 796-2980
11     ahunter@grsm.com
       Representing ChemDesign, Inc.
12
13     PARKER POE ADAMS & BERNSTEIN LLP
       BY:  MICHAEL A. GOLDSTICKER, ESQUIRE
14     PNC Plaza
       301 Fayetteville Street
15     Suite 1400
       Raleigh, North Carolina  27601
16     (919) 828-0564
       michaelgoldsticker@parkerpoe.com
17     Representing Clariant Corporation and
       Archroma US, Inc.
18
19     DLA PIPER LLP (US)
       BY:  DANIEL LARKINS, ESQUIRE
20     500 Eighth Street, NW
       Washington, D.C.  20004
21     (202) 799-4000
       daniel.larkins@dlapiper.com
22     Representing BASF Corporation
23
24
```

PURSUANT TO PROTECTIVE ORDER

Page 183

```
1    GRAY, LAYTON, KERSH, SOLOMON, FURR &
     SMITH, P.A.
2    BY:  MICHAEL L. CARPENTER, ESQUIRE
     516 South New Hope Road
3    Gastonia, North Carolina  28053
     (704) 865-4400
4    mcarpenter@gastonlegal.com
     Representing Buckeye Fire Equipment Co.
5
6    MAYER BROWN LLP
     BY:  DANIEL ROTTENBERG, ESQUIRE
7    71 South Wacker Drive
     Chicago, Illinois  60606
8    (312) 782-0600
     drottenberg@mayerbrown.com
9    Representing 3M
10
     GOLDBERG SEGALLA LLP
11   BY:  GEORGE H. BUERMANN, ESQUIRE
     1037 Raymond Boulevard
12   Suite 1010
     Newark, New Jersey  07102-5423
13   (973) 681-7000
     gbuermann@goldbergsegalla.com
14   Representing the Deponent and Chemicals
     Incorporated
15
16   GOLDBERG SEGALLA LLP
     BY:  OLIVER E. TWADDELL, ESQUIRE
17   711 3rd Avenue
     Suite 1900
18   New York, New York  10017
     (646) 292-8751
19   otwaddell@goldbergsegalla.com
     Representing the Deponent and Chemicals
20   Incorporated
21
22
23
24
```

PURSUANT TO PROTECTIVE ORDER

Page 184

1    ALSTON & BIRD
     BY:  LEAH FIORENZA McNEILL, ESQUIRE
2    1201 West Peachtree Street
     Suite 4900
3    Atlanta, Georgia  30309
     (404) 881-7000
4    leah.mcneill@alston.com
     Representing the Deponent and Chemicals
5    Incorporated
6

     SMITH ANDERSON
7    BY:  ADDIE S. RIES, ESQUIRE
     150 Fayetteville Street
8    Suite 2300
     Raleigh, North Carolina  27601
9    (919) 821-6710
     aries@smithlaw.com
10   Representing Dynax Corporation
11

     BAKER & HOSTETLER LLP
12   BY:  JILLIAN TIMKO, ESQUIRE
     1050 Connecticut Avenue NW
13   Suite 1100
     Washington, D.C.  20036-5403
14   (202) 861-1681
     jtimko@bakerlaw.com
15   Representing Perimeter Solutions, LP
16

     SIDLEY AUSTIN LLP
17   BY:  DANIEL A. SPIRA, ESQUIRE
     One South Dearborn
18   Chicago, Illinois  60603
     (312) 853-7000
19   dspira@sidley.com
     Representing Arkema, Inc.
20
21   VIDEOTAPE TECHNICIAN:
             Chris Ritona
22

     TRIAL TECHNICIAN:
23           Evan Wolfe
24

PURSUANT TO PROTECTIVE ORDER

Page 185

1    ALSO PRESENT:

2

          Kim Vega Cioffi

3         Williams & Connolly

4         Vianka Bernardi, Paralegal

          Napoli Shkolnik PLLC

5

6                    -   -   -

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

Page 186

```
1                          -   -   -
2                      I  N  D  E  X
3                          -   -   -
4
5    Testimony of:   RON THAMES
6      By Mr. Croner                    190
       By Ms. Crouch                    433
7
8                          -   -   -
9                 E  X  H  I  B  I  T  S
10                         -   -   -
11
     NO.              DESCRIPTION              PAGE
12
13   Exh NS-157       2010 E-Mail Chain    275
                      Among Farley,
14                    Hunstad, Thames,
                      etc.,
15                    FF_NAVY02_000000528
16   Exh NS-158       FireAde 2000         284
                      Mil-Spec 6%
17                    Brochure,
                      FSP00079160
18
     Exh NS-159       1/30/12 Material     306
19                    Safety Data Sheet
                      for FireAde
20                    MIL/FireAde AFFF
                      Fire Fighting Foam,
21                    FSP00075457 through
                      FSP00075460
22
     Exh NS-160       FireAde2000 MIL      320
23                    SPEC6 Brochure,
                      FSP00079144
24
```

PURSUANT TO PROTECTIVE ORDER

Page 187

```
 1    Exh NS-161        7/18/13 E-Mail from 330
                        Hubert to Thames,
 2                      FSP00074503
 3    Exh NS-162        10/29-10/30/13      335
                        E-Mail Chain Among
 4                      BJ Lawson, Mark
                        Lawson, Thames,
 5                      etc., FSP00075928
 6    Exh NS-163        7/17/14 E-Mail from 343
                        Raessler to Thames,
 7                      FSP00077752 and
                        FSP00077753
 8
      Exh NS-164        8/11/14 E-Mail      352
 9                      Chain Among
                        Westerhoff, Pagano,
10                      Thomas, etc.,
                        FSP00074485 and
11                      FSP00074486
12    Exh NS-165        Fire Service Plus,  365
                        Inc. Work Orders,
13                      FSP00077754 through
                        FSP00077777
14
      Exh NS-166        July 2015 E-Mail    383
15                      Chain Between
                        Thames and Tanzil,
16                      FSP00075974 through
                        FSP00075976
17
      Exh NS-167        Excel Spreadsheet,  394
18                      FSP00075435
19    Exh NS-168        10/28/13 E-Mail     402
                        from Cortina to
20                      Thames, FSP00078252
21    Exh NS-169        "Exhibit 1, Unsworn 412
                        Declaration Under
22                      Penalty of Perjury
                        Ronald Thames,"
23                      FSP00076060 through
                        FSP 00076286
24
```

PURSUANT TO PROTECTIVE ORDER

Page 420

1              and see where we can, you know,

2              answer your questions without

3              violating it.

4                   MR. CRONER:  Well, I really

5              want to ask about another document

6              in this compilation.

7                   MR. BUERMANN:  Sure.

8                   MR. CRONER:  Could we skip a

9              bit ahead here to the page with

10             Bates ending 6213, please?

11                  (Pause.)

12                  THE WITNESS:  What does that

13             say, sir?  Blow it up so I can see

14             it.

15                  MR. BUERMANN:  It's not

16             there yet.  Just hold on for a

17             second.

18                  THE WITNESS:  Oh.

19                  MS. McNEILL:  They're going

20             to blow it up.

21     BY MR. CRONER:

22             Q.    And this is an e-mail

23     exchange between Steven Fletcher and John

24     Barb.  You're cc'd on it.  It's in June

PURSUANT TO PROTECTIVE ORDER

Page 421

1    2020.

2              And Mr. Fletcher, if you

3    look here, says:  This will serve to

4    respond to FSP's e-mails of May 15th,

5    June 2nd and June 5th.  NAVSEA is not

6    dealing with the Navy Acquisition

7    Integrity Office on FSP's behalf.  It is

8    up to FSP to send NAIO any correspondence

9    or documentation you wish NAIO to have.

10             Then it says:  We are not

11   satisfied with the level of information

12   that FSP has provided thus far regarding

13   identification of persons responsible and

14   the corrective actions taken against

15   them.  Mr. Thames promised to provide

16   this information to NAVSEA and the TWH

17   based her temporary conditional

18   forbearance on the promises he made last

19   fall.

20             Do you see that, Mr. Thames?

21        A.    Fair enough.

22        Q.    Do you remember promising

23   NAVSEA at some point in 2020 to identify

24   the persons responsible for the

PURSUANT TO PROTECTIVE ORDER

Page 422

1     nonconforming mil-spec AFFF and the

2     corrective actions taken --

3           A.     Every bit of it -- every bit

4     of it, and which I did, the second day to

5     the United States Navy.

6           Q.     When you say the second day,

7     you mean second day after this e-mail?

8           A.     No, sir, 2019, when I got

9     the first paper.

10          Q.     That's when you made the

11    promise?

12          A.     I found -- no, sir.  I found

13    the mistake.  Steven Fletcher misquoted

14    what he did here.  He went back and redid

15    it and straightened it out.

16                 This was talking about the

17    test parameters, had nothing to do with

18    the formulation.  Steven Fletcher

19    involved -- he worked with John Farley.

20    He had nothing to do with the subject

21    over here.  It's two different

22    directions.  Yes, sir.

23          Q.     Well, let's --

24          A.     It's complicated.  It really

PURSUANT TO PROTECTIVE ORDER

Page 423

1    -- George, this is very complicated,

2    George.

3                    MR. BUERMANN:  Ron, Ron,

4        please just wait for a question.

5                    THE WITNESS:  All right.

6                    MR. CRONER:  Just if we

7        could go to the next page, please?

8    BY MR. CRONER:

9        Q.    And I actually want to go to

10   the bottom e-mail because it's actually

11   in reverse order.

12                    This is another -- this is a

13   -- this is Mr. Barb's response three days

14   later on June 12th to Mr. Fletcher's

15   e-mail --

16        A.    Yes.

17        Q.    -- and he says:  Stephen,

18   thank you.  I supplied corrective action

19   moving forward implementing safeguards to

20   prevent future errors, double and triple

21   checking work, enabling existing team

22   members responsibility to holding each

23   other accountable to the portions of

24   quality/process they own.  I am happy to

PURSUANT TO PROTECTIVE ORDER

Page 424

```
 1    identify the current team and their roles
 2    moving forward.
 3                  Then he says:  Today the
 4    language reads more like request for
 5    disciplinary action.  Is that correct?
 6                  Do you see all that?
 7         A.    I do.
 8         Q.    And then if we move up to
 9    the top e-mail, this is Mr. Fletcher's
10    response and he says:  JC, recommend you
11    consult with Mr. Thames as he is the one
12    that made the promises to NAVSEA
13    regarding identification and disclosure
14    to the Navy of the persons responsible
15    for the delivery of nonconforming AFFF
16    and the corrective actions FSP has taken
17    against them.
18                  Do you see that?
19         A.    Yes, sir.
20         Q.    And so you mentioned testing
21    and formulation, but I want to focus
22    here.  It seems that Mr. Fletcher's issue
23    is that you had made a promise to NAVSEA
24    to identify the people responsible for
```

PURSUANT TO PROTECTIVE ORDER

Page 425

1    delivery of the nonconforming AFFF and

2    what corrective actions the company was

3    taking against them; and according to Mr.

4    Fletcher, you didn't make good on that

5    promise.

6            A.    That's not correct, sir.  I

7    made good on that promise and --

8                 MR. BUERMANN:  Ron, there

9            wasn't -- Ron, there wasn't a

10           question.  He didn't even ask a

11           question yet.  He just made a

12           statement.  Please wait.

13                THE WITNESS:  I identified

14           it.  Okay.  Go ahead.

15   BY MR. CRONER:

16           Q.    Well, I take it from what

17   you just said that you disagree that you

18   never filled this promise that Mr.

19   Fletcher's referring to; is that correct?

20           A.    I want to be sure you finish

21   before I start.  I don't want to be

22   interrupting.

23                Steven Fletcher was involved

24   in the mil-spec, sir.  I immediately

PURSUANT TO PROTECTIVE ORDER

Page 426

1    found the problem that caused this

2    discrepancy, notified Mary Hunstad, who

3    was in charge, and Steven Fletcher was

4    under her.

5                    Steven Fletcher was involved

6    with us setting up the proper procedures

7    with test pans and things of this nature

8    to test a mil-spec product of which we'd

9    never been shown.

10                   But no, sir, I took full

11   responsibility for this mistake,

12   identified it, and we corrected it.  100

13   percent, I took full responsibility.

14          Q.    So you said that you

15   identified the problem and I get that,

16   but that seems different than what Mr.

17   Fletcher is asking about.  He seems to be

18   asking about who were the people that

19   were responsible for the delivery of the

20   nonconforming AFFF and what corrective

21   actions were taken against those people.

22                   Are you telling me now that

23   you did that as well, that you fulfilled

24   that promise?

PURSUANT TO PROTECTIVE ORDER

Page 427

1          A.    I did.

2          Q.    Okay.  And who were the

3     people that you identified?

4          A.    My staff, we had a situation

5     where we had to test the product under

6     certain parameters that we did not know

7     of at this time.

8               What I'm trying to explain

9     carefully is two different things join

10    into one.  Steven Fletcher was not hooked

11    up in the discrepancy.  Even though he

12    mentioned it, it was out of his

13    jurisdiction.

14               However, he was in the

15    middle of it because he's involved in the

16    fire test with John Farley and I -- boom,

17    I had my legal team.  I signed the thing

18    where I found the problem and it was

19    short fluorine, boom, identified it the

20    second day.

21               And there again, it was

22    going from a C8 to a C6 and one of them

23    being stronger than the other.

24                    But anyway, identified the

PURSUANT TO PROTECTIVE ORDER

Page 428

1    problem, took responsibility, corrected

2    it, pulled the product back, the whole

3    nine yards, fixed it.

4        Q.    We saw the reference to the

5    notice of proposed disbarment.  What was

6    the ultimate result of the proposed

7    debarment?  Was the company disbarred

8    from selling AFFF to the military going

9    forward?

10        A.    Just like it said, sir,

11   potential debarment until it was

12   corrected.  It was corrected, finished, I

13   had to pay my fine and that's the end of

14   it.

15            The conclusion was drawn up

16   by the DOJ who handled it.  My team of

17   attorneys, all of us come together,

18   completed it.  The debarment -- I've got

19   a letter from the United States Navy,

20   I'll be glad to send it to you, releasing

21   me from everything.  You should have it.

22   Be happy to send it to you.

23        Q.    Fair enough.

24            During the last session, you

PURSUANT TO PROTECTIVE ORDER

Page 429

1    mentioned that the company is currently

2    in I think what you called wind-down

3    mode --

4              A.    Correct -- which company,

5    sir?

6              Q.    Fire Service Plus.

7              A.    Yes, sir.

8              Q.    And did these events in 2019

9    and 2020 have any impact on Fire Service

10   Plus going into wind-down mode?

11             A.    I want you to clarify what

12   "impact" means.  I want you to identify

13   what you're asking me.  Monetary or this?

14   I want you to clear it up for me.

15             Q.    Well, let me ask it this

16   way:  Absent these issues with the

17   nonconforming mil-spec AFFF, would the

18   company be in wind-down mode today?

19             A.    100 percent yes.

20             Q.    And can you tell us what the

21   biggest contributing factor was to the

22   company entering wind-down mode?

23                   MR. BUERMANN:  I'm just

24         going to -- I'm just going to

PURSUANT TO PROTECTIVE ORDER

Page 430

1         object and instruct Mr. Thames not

2         to testify as to any

3         communications with respect of his

4         attorneys relative to the

5         determination with respect to the

6         wind-down process.

7             You can answer.

8             THE WITNESS: I'm relying on

9         my attorney team to give me the

10        direction of our next decisions.

11 BY MR. CRONER:

12        Q. Does Fire Service Plus still

13 have the ability to sell AFFF to the U.S.

14 Government if it wanted to?

15        A. No.

16        Q. And why is that?

17        A. Based on what you just said,

18 we're in wind-down mode.

19        Q. So these events in 2019 and

20 2020 involving the nonconforming mil-spec

21 AFFF --

22        A. Yes.

23        Q. -- did they have a

24 significant negative financial impact on

PURSUANT TO PROTECTIVE ORDER

Page 431

1    the company?

2             A.    Yes.

3             Q.    And did that significant

4    negative financial impact lead to the

5    company making the decision to enter

6    wind-down mode?

7                  MR. BUERMANN:  Objection;

8             asked and answered.

9                  You can answer.

10                 THE WITNESS:  Sir, there was

11            a lot of reasons why and I

12            presented it to my legal team to

13            help me answer that question; and

14            this one right now, I'm currently

15            not in a position to answer.

16                 MR. BUERMANN:  For the

17            reasons I stated, Andrew, the

18            attorney-client privilege, yeah.

19                 MR. CRONER:  Understood.

20                 Well, let me take -- I think

21            I'm -- George, let me take a

22            five-minute break.  We can

23            reconvene, but I'm pretty sure

24            that I'm finished here.