# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| IN RE: AQUEOUS FILM-FORMING FOAMS<br>PRODUCTS LIABILITY LITIGATION | MDL No. 2:18-mn-02873-RMG |

| | |
|---|---|
| ART SCHAAP AND RENEE SCHAAP d/b/a HIGHLAND DAIRY,<br><br>*Plaintiffs,*<br><br>v.<br><br>UNITED STATES OF AMERICA, *et al*.<br><br>*Defendants*. | **This Document Relates to:**<br>**No. 2:24-cv-07040-RMG** |

**MEMORANDUM IN SUPPORT OF THE UNITED STATES' MOTION TO DENY OR DEFER RULING ON PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 56(d)**

ADAM R.F. GUSTAFSON
ACTING ASSISTANT ATTORNEY GENERAL
Environment & Natural Resources Division

Shari Howard
Sanya Shahrasbi
U.S. Department of Justice
Environment & Natural Resources Division
Environmental Defense Section
P.O. Box 7611
Washington, D.C. 20044
Tel: (202) 598-9407 (Howard)
shari.howard@usdoj.gov
sanya.shahrasbi@usdoj.gov

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION .............................................................................................................. 1

BACKGROUND ................................................................................................................ 2

    I.     LEGAL BACKGROUND .................................................................................. 2

    II.    FACTUAL BACKGROUND ............................................................................. 3

         A.    Cannon Air Force Base, New Mexico ........................................................ 3

         B.    Highland Dairy, New Mexico .................................................................... 4

    III.   PROCEDURAL BACKGROUND ...................................................................... 5

STANDARD OF REVIEW ................................................................................................. 7

ARGUMENT ....................................................................................................................... 8

    I.     The United States has not yet had a chance to conduct any discovery in this case. ............................................................................................... 8

         A.    Allocation of liabiity under CERCLA section 107(a) ................................ 9

         B.    Double Recovery under CERCLA section 114(b) .................................. 10

    II.    The United States is Seperately Seeking an Abeyance of All CERCLA Cost Recovery Claims and Contribution Claims until EPA's Evaluation of the Rule Designating PFOA and PFOS Hazardous Substances is Complete. ....................................................... 11

CONCLUSION ................................................................................................................. 13

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ...................................................................................................7

*Ashley II of Charleston, LLC v. PCS Nitrogen, Inc.*,
   791 F. Supp. 2d 431 (D.S.C. 2011), *aff'd,* 714 F.3d 161 (4th Cir. 2013) ..............................2, 12

*Braswell Shipyards, Inc. v. Beazer E., Inc.*,
   2 F.3d 1331 (4th Cir. 1993) .....................................................................................11

*Burlington N. & Santa Fe Ry. Co. v. United States*,
   556 U.S. 599 (2009) ............................................................................................3, 10

*Burlington N. Santa Fe Ry. Co. v. The Assiniboine and Sioux Tribes*,
   323 F.3d 767 (9th Cir. 2003) .....................................................................................7

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986).................................................................................................7, 9

*CenTra, Inc. v. Estrin*,
   538 F.3d 402 (6th Cir. 2008) .....................................................................................7

*Evans v. Techs. Applications & Serv. Co.*,
   80 F.3d 954 (4th Cir. 1996) ....................................................................................7, 8

*Exxon Corp. v. Hunt*,
   475 U.S. 355 (1986) ............................................................................................3, 10

*First Chi. Int'l v. United Exchange Co.*,
   836 F.2d 1375 (D.C. Cir. 1988) ................................................................................8

*Harrods Ltd. v. Sixty Internet Domain Names*,
   302 F.3d 214 (4th Cir. 2002) .....................................................................................8

*Hellstrom v. U.S. Dep't of Veterans Affairs*,
   201 F.3d 94 (2d Cir. 2000) .......................................................................................7

*Key Tronic Corp. v. United States*,
   511 U.S. 809 (1994) ..................................................................................................2

*Landis v. N. Am. Co.*,
   299 U.S. 248 (1936) ................................................................................................12

*Meghrig v. KFC W., Inc.*,
   516 U.S. 479 (1996) ..................................................................................................2

*Minyard Enters., Inc. v. Se. Chem. & Solvent Co.*,
    184 F.3d 373 (4th Cir. 1999) ............................................................................................. 10

*NCR Corp. v. George A. Whiting Paper Co.*,
    768 F.3d 682 (7th Cir. 2014) ............................................................................................. 11

*PCS Nitrogen Inc. v. Ashley II of Charleston LLC*,
    714 F.3d 161 (4th Cir. 2013) ......................................................................................... 3, 10

*Stanton Rd. Assocs. v. Lohrey Enters.*,
    984 F.2d 1015 (9th Cir. 1993) ........................................................................................... 10

*Temkin v. Frederick Cnty. Comm'rs*,
    945 F.2d 716 (4th Cir. 1991) ............................................................................................... 7

*United States v. Atl. Rsch. Corp.*,
    551 U.S. 128 (2007) ............................................................................................................ 2

*Webster v. Rumsfeld*,
    156 F. App'x 571 (4th Cir. 2005) ............................................................................... 7, 8, 9

**Statutes**

42 U.S.C. §§ 9601-9675 .............................................................................................................. 2

42 U.S.C. § 9601(9) ..................................................................................................................... 2

42 U.S.C. § 9601(14) ............................................................................................................. 2, 12

42 U.S.C. § 9607(a) ................................................................................................... 2, 5, 8, 9, 12

42 U.S.C. § 9607(a)(4)(B) ........................................................................................................... 2

42 U.S.C. § 9614(b) ..................................................................................................... 3, 8, 10, 11

**Rules**

Fed. R. Civ. P. 56(d) ................................................................................................................ 7, 8

**Code of Federal Regulations**

40 C.F.R. pt. 300 .......................................................................................................................... 2

**Federal Register**

89 Fed. Reg. 39124 (May 8, 2024) ............................................................................................ 11

iii

## INTRODUCTION

The United States has not had an opportunity to conduct discovery in this case. Yet Plaintiffs Art Schaap and Renee Schaap, doing business as Highland Dairy, have moved for partial summary judgment as to the United States' liability under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") section 107(a). Plaintiffs seek a finding that the United States is liable for 100 percent of Plaintiffs alleged past CERCLA response costs and all future costs. Plaintiffs' motion ignores Plaintiffs' undisputed releases of perfluorooctane sulfonate ("PFOS") and perfluorooctanoic acid ("PFOA") contaminated milk, cow manure, and cow carcasses on the Highland Dairy Property which must factor into any liability allocation under CERCLA section 107(a). Their motion also disregards the prohibition against double recovery under CERCLA section 114(b) and the claims, costs, and/or damages that Plaintiffs have already recovered or may recover from the United States Department of Agriculture's ("USDA") Dairy Indemnity Payment Program ("DIPP"), the New Mexico Environment Department ("NMED"), and other sources for the same costs they are claiming under CERCLA. These facts are not readily available to the United States and discovery is needed to obtain facts required to inform a proper response to Plaintiffs' motion for partial summary judgment. The United States thus requests that this Court deny (or defer ruling on) Plaintiffs' motion for partial summary judgment under Federal Rule of Civil Procedure 56(d).[1]

---

[1] The United States is not requesting that this Court order discovery immediately after denying or deferring ruling on the Plaintiffs' motion. Rather, as explained in a separate motion, the United States is seeking an abeyance of all CERCLA cost recovery claims in this multidistrict litigation because the United States Environmental Protection Agency ("EPA") is now evaluating whether to reconsider the rule designating PFOS and PFOA as CERCLA hazardous substances under CERCLA section 101(14). In the event EPA reconsiders and ultimately vacates the rule and thus the hazardous substance designation, that would impact whether Plaintiffs could recover costs related to PFOS or PFOA under CERCLA. The significance of EPA's decision on

1

# BACKGROUND

## I. LEGAL BACKGROUND

CERCLA establishes a comprehensive statutory scheme to address and bring about the cleanup of actual or threatened releases of hazardous substances into the environment. *See* 42 U.S.C. §§ 9601-9675; *see also Meghrig v. KFC W., Inc.*, 516 U.S. 479, 483 (1996). CERCLA section 107(a)(4)(B), 42 U.S.C. § 9607(a)(4)(B), permits private parties to bring claims against responsible parties for recovery of response costs. 42 U.S.C. § 9607(a)(4)(B); *see United States v. Atl. Rsch. Corp.*, 551 U.S. 128, 135–41 (2007). To establish a prima facie case under CERCLA section 107(a), 42 U.S.C. § 9607(a), a plaintiff must establish the following: (1) that the defendant is a responsible person under CERCLA section 107(a); (2) that a facility exists under CERCLA section 101(9), 42 U.S.C. § 9601(9); (3) that the release or threatened release from the facility of a "hazardous substance" under CERCLA section 101(14), 42 U.S.C. § 9601(14) has occurred; and (4) that the release or threatened release has caused the plaintiff to incur response costs. *Ashley II of Charleston, LLC v. PCS Nitrogen, Inc.*, 791 F. Supp. 2d 431, 479–80 (D.S.C. 2011), *aff'd,* 714 F.3d 161 (4th Cir. 2013). CERCLA plaintiffs must also demonstrate that their claimed costs are necessary and consistent with the national contingency plan, 40 C.F.R. pt. 300, to recover those costs under CERCLA section 107(a), 42 U.S.C. § 9607(a). *See Key Tronic Corp. v. United States*, 511 U.S. 809, 813 (1994) (CERCLA "Section 107(a) provides that responsible parties are liable for 'any ... necessary costs of response incurred by any other person consistent with the national contingency plan.'").

---

Plaintiffs' claim to recover costs under CERCLA section 107(a) militates in favor of an abeyance until EPA's evaluation is complete.

CERCLA is an equitable cost recovery statute that does not mandate a "'scorched earth,' all-or-nothing approach to liability." *Burlington N. & Santa Fe Ry. Co. v. United States*, 556 U.S. 599, 615 (2009). Indeed, allocation of liability under CERCLA is "a fact-intensive, site-specific determination [and] any reasonable basis for apportionment must include reliable evidence as to *both* the initial disposals of hazardous substances *and* any secondary disposals that occurred over time." See *PCS Nitrogen Inc. v. Ashley II of Charleston LLC*, 714 F.3d 161, 183 (4th Cir. 2013).

CERCLA also prohibits double recovery. *See* CERCLA section 114(b), 42 U.S.C. § 9614(b) ("Any person who receives compensation for removal costs or damages or claims pursuant to any other Federal or State law shall be precluded from receiving compensation for the same removal costs or damages or claims as provided in this chapter."). To be sure, the United States Supreme Court has acknowledged CERCLA's ban on double recovery. *Exxon Corp. v. Hunt*, 475 U.S. 355, 370 (1986) ("Congress has already banned double compensation in [CERCLA] § 114(b) … .").

## II.     FACTUAL BACKGROUND

### A. Cannon Air Force Base, New Mexico

Cannon Air Force Base ("Cannon") is located on 3,789 acres less than ten miles west of Clovis, New Mexico. Dkt. No. 4551-3 at 2 in 2:18-mn-02873. In 1970, the United States Air Force ("Air Force") started using aqueous film-forming foam ("AFFF") for fire training exercises and suppressing fires on Cannon. Dkt No. 4551-7 at 17 § 2.5.1 in 2:18-mn-02873. AFFF was stored "in aboveground storage tanks … or smaller containers at hangars and was used in underwing fire suppression systems, in equipment testing and maintenance areas, and in fire training areas" as well as "firefighting vehicles." *Id*. Cannon voluntarily stopped training with AFFF before the end of 2011. *Id*. at 37 § 3.5.3.2 in 2:18-mn-02873. And the Air Force banned

3

the use of AFFF for fire training and limited AFFF use to "real world emergencies only" in 2016. *Id*. at 17 § 2.5.1 in 2:18-mn-02873.

In 2015, because of the use of AFFF on Cannon and suspected releases of PFOS and PFOA therefrom, the Air Force commenced a CERCLA response process for Cannon. Dkt. No. 4550-2 ¶¶ 20, 36-43 in 2:18-mn-02873. The Air Force completed the CERCLA preliminary assessment ("PA") in 2015 and the CERCLA site investigation ("SI") in 2019. *Id*. ¶¶ 36-37. The SI showed PFOS and PFOA on Cannon and established the need for the next steps in the CERCLA process, the remedial investigation ("RI") and feasibility study ("FS"). *Id*. ¶¶ 38-39. The Air Force started the RI/FS on Cannon in 2020, and the process should be completed in August 2026. *Id*. ¶ 39. The Air Force is also constructing "a full-scale groundwater treatment system [on Cannon] which will be used initially to test treatment technologies, and subsequently to intercept and to capture [per- and polyfluoroalkyl substances ("PFAS")]-impacted water." *Id*. ¶ 41. The Air Force will also construct a second ground water treatment system on Cannon "to limit off-base migration" of water impacted by PFAS. *Id*. ¶¶ 41-42. To date, the Air Force has obligated over $110 million "to investigate and perform removal actions to respond to PFAS releases at Cannon." *Id*. ¶ 43.

### B. Highland Dairy, New Mexico

Plaintiff Art Schaap submitted an affidavit in support of Plaintiffs' motion for partial summary judgment. Dkt. No. 7-2 in 2:24-cv-07040. In his affidavit, Mr. Schaap asserts that Highland Dairy is a 3,593-acre dairy farm located within two miles of the Southeastern corner of Cannon. *Id.* at 2. Mr. Schaap further states that he and Ms. Renee Schaap, doing business as Highland Dairy, have owned and operated Highland Dairy since 1992. *Id*. Mr. Schaap also asserts that between October 2018 and March 2021, Plaintiffs disposed of "between 60,000,000 and 80,000,000 pounds" of milk containing PFOS and PFOA by "dumping the milk from the trucks

4

into [Highland Dairy's] washout system and [Highland Dairy's] dairy lagoon … on the Highland property." *Id.* at 9 ¶ 42. Mr. Schaap also states that Plaintiffs used manure from Highland Dairy's cattle, which was contaminated with PFOS and PFOA, to fertilize the soils on Highland Dairy for years. *Id.* at 21 ¶ 95. Mr. Schaap further asserts they disposed of thousands of dead cows contaminated with PFOS and PFOA in a "dedicated PFAS carcass containment zone and composting facility" on an unlined field "approximately the size of a football field … 20 feet deep in the center" on Highland Dairy. *Id*. at 16 ¶ 83, 17 ¶ 90. Plaintiffs recovered costs or damages from the USDA's DIPP, s*ee id*. at 11-17, and the NMED's "Hazardous Waste Fund," *see id*. at 20 ¶ 92. The United States has not had the opportunity to depose Plaintiffs or otherwise engage in any discovery related to the statements in Mr. Schaap's affidavit, Dkt. No. 7-2, or declaration, Dkt. No. 7-4, in support of Plaintiffs' motion for partial summary judgment.

### III.     PROCEDURAL BACKGROUND

On December 5, 2024, Plaintiffs filed a complaint against the United States of America, the United States Department of Defense, and the United States Air Force (collectively, "United States"), Case No. 2:24-cv-07040 (D.S.C.). *See* Dkt. No. 1. In their complaint, Plaintiffs seek recovery under section 107(a) of CERCLA, 42 U.S.C. § 9607(a) of "the costs incurred, and to be incurred, by Plaintiffs in responding to releases or substantial threats of releases of hazardous substances at or from Cannon Air Force Base … , located in Curry County, New Mexico." *See id* at 1. On December 13, 2024, Plaintiffs' complaint was direct-filed as a member case in the AFFF Products Liability Litigation Multidistrict Litigation ("MDL"), Case No. 2:18-mn-02873 (D.S.C.). Dkt. No. 3 in 2:24-cv-07040.

Plaintiffs have also sued the United States under the Federal Tort Claims Act ("FTCA") in Case No. 2:19-CV-3288-RMG (D.S.C.) (also pending in the AFFF MDL) for damages related to

5

the same costs Plaintiffs seek as CERCLA response costs from the United States in Case No. 2:24-cv-07040-RMG (D.S.C.). In accordance with AFFF MDL Case Management Order ("CMO") No. 20, *see* Dkt. No. 2003 in 2:18-mn-02873, the United States has not responded to either of Plaintiffs' complaints and as ordered has set forth a statement of defenses that apply to each of the cases against the United States in the AFFF MDL, *see* Dkt. No. 6899 in 2:18-mn-02873, Third Amended Statement of Defenses by the United States of America. The United States has also not yet had a chance to conduct any discovery related to Plaintiffs' CERCLA section 107(a) claims.

On January 3, 2025, Plaintiffs moved for partial summary judgment on CERCLA liability and recovery of response costs incurred to date. *See* Dkt. No. 4. On January 14, 2025, Plaintiffs sought leave to move for partial summary judgment, *see* Dkt. No. 4. *See* Dkt. No. 5. On January 15, 2025, the Court denied Plaintiffs' motion for leave to move for partial summary judgment at Dkt. No. 4 because Plaintiffs failed to follow CMO No. 2. *See* Dkt. No. 6, "ORDER." Plaintiffs' January 2025 motion for partial summary judgment was stricken from the docket. *See id.*

On June 25, 2025, Plaintiffs moved again for partial summary judgment on CERCLA liability and recovery of response costs incurred to date. Dkt. No. 7. The United States with the consent of Plaintiffs moved for a 60-day extension of time to the United States' July 9, 2025 deadline to respond to Plaintiffs' motion for partial summary judgment until September 8, 2025 so the parties could explore resolving the claims in the motion informally. Dkt. No. 8. The Court granted the United States' motion and extended the United States' deadline to respond to Plaintiffs' motion for partial summary judgment until September 8, 2025. The parties could not agree on a resolution of Plaintiffs' motion for partial summary judgment.

6

## STANDARD OF REVIEW

Rule 56(d)[2] provides that the Court may deny or defer its ruling on a motion for summary judgment to allow further discovery, enabling the nonmoving party to obtain information necessary to show the existence of a material issue of fact. *See* Fed. R. Civ. P. 56(d). Summary judgment should "be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, n.5 (1986); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (noting that summary judgment should be entered only "after adequate time for discovery"); *see also Temkin v. Frederick Cnty. Comm'rs*, 945 F.2d 716, 719 (4th Cir. 1991). Generally, "summary judgment is not appropriate prior to the completion of discovery." *See Webster v. Rumsfeld*, 156 F. App'x 571, 576 (4th Cir. 2005); *see also Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996) (Courts "are concerned about granting summary judgment when the opposing party has not had a fair opportunity to discover essential information.").

Where "a summary judgment motion is filed . . . early in the litigation, before a party has had any realistic opportunity to pursue discovery relating to its theory of the case, district courts should grant any Rule 56[d] motion fairly freely." *Burlington N. Santa Fe Ry. Co. v. The Assiniboine and Sioux Tribes*, 323 F.3d 767, 773 (9th Cir. 2003). "Only in the rarest of cases may summary judgment be granted against" a nonmoving party "who has not been afforded the opportunity to conduct discovery." *Hellstrom v. U.S. Dep't. of Veterans Affairs*, 201 F.3d 94, 97 (2d Cir. 2000). Typically, when a party has had no opportunity for discovery, "denying a Rule 56[d] motion and ruling on a summary judgment motion is likely to be an abuse of discretion." *CenTra, Inc. v. Estrin*, 538 F.3d 402, 420 (6th Cir. 2008).

---

[2] Fed. R. Civ. P. 56(d) was formerly Fed. R. Civ. P. 56(f), but in substance the rule is unchanged.

A party filing a Rule 56(d) motion must show by affidavit or declaration that, for specified reasons, it cannot present facts necessary to justify its opposition. Fed. R. Civ. P. 56(d); *see also Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (A party requesting relief under Rule 56(d) must file an affidavit or declaration demonstrating the party "could not properly oppose a motion for summary judgment without a chance to conduct discovery.") (citing *Evans,* 80 F.3d at 961. The affidavit or declaration is to "invoke the protections of [Fed. R. Civ. P. 56(d)] in good faith and to afford the trial court the showing necessary to assess the merit of a party's opposition." *See Harrods Ltd.*, 302 F.3d at 244 (citing *First Chi. Int'l v. United Exchange Co.,* 836 F.2d 1375, 1380 (D.C.Cir.1988)). Indeed, Courts "have held that summary judgment was premature even when the opposing party failed to file a [Fed. R. Civ. P. 56(d)] affidavit" or declaration. *See Harrods Ltd.*, 302 F.3d at 244 (collecting cases).

**ARGUMENT**

As explained below and in the accompanying Rule 56(d) declaration in support of the United States' motion to deny Plaintiffs' motion for partial summary judgment, the Court deny or defer ruling on Plaintiffs' motion for partial summary judgment. The United States needs discovery about facts essential to the equitable allocation of liability under CERCLA section 107(a), 42 U.S.C. § 9607(a), and to comply with CERCLA section 114(b)'s, 42 U.S.C. § 9614(b), prohibition on double recovery.

**I.    The United States has not yet had a chance to conduct any discovery in this case.**

To begin with, the Court should not resolve Plaintiffs' motion until the United States has had an opportunity to engage in any discovery. *See Webster*, 156 F. App'x at 576. (In general, "summary judgment is not appropriate prior to the completion of discovery."). This is the second time Plaintiffs have moved for partial summary judgment prior to any discovery. Shortly after

filing their complaint, and without leave of the Court or concurrence of the Plaintiffs' Co-Lead Counsel as required by CMO No. 2, Plaintiffs moved for partial summary judgment, *see* Dkt. No. 6. Although Plaintiffs later fulfilled the requirements of CMO No. 2 before filing this motion for partial summary judgment, no discovery has occurred in the interim. Written discovery has not commenced on CERCLA liability, and there has been no opportunity to depose Mr. Art Schaap, who provided an affidavit, *see* Dkt. No. 7-2, and declaration, *see* Dkt. No. 7-4, in support of the motion, or Mr. James P. Bearzi, who also provided an affidavit in support of this motion, *see* Dkt. 7-3. Plaintiffs' motion for partial summary judgment is premature at this juncture and should be denied. *See Webster*, 156 F. App'x at 576 (Rule 56(d) gives courts the discretion to "deny a premature motion for summary judgment where the nonmoving party demonstrates that he has not had adequate time for discovery or needs additional time to complete it.").

    A. **Allocation of liability under CERCLA section 107(a)**.

The United States should be allowed to conduct discovery into facts essential to allocation of liability under CERCLA section 107(a), 42 U.S.C. § 9607(a) before summary judgment briefing commences. *Celotex Corp.,* 477 U.S. at 322 ("Under Rule 56(c), summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'"). Here, Plaintiffs are requesting that the Court resolve the issue of CERCLA liability as to the United States, and order the United States to pay all of the costs of "the Schaaps' initial costs of site evaluation" and issue a declaratory judgment that the United States "is liable under CERCLA for any response costs the Schaaps may seek in the future that are necessary and consistent with the NCP." Dkt. No. 7-1 at 25. All without a shred of discovery.

9

Plaintiffs' approach ignores the United States Supreme Court's finding that CERCLA does not direct a "scorched earth all-or-nothing approach to liability." *Burlington N. & Santa Fe Ry. Co.*, 556 U.S. at 615 (internal quotations omitted). Plaintiffs' approach likewise disregards that "a fact-intensive, site-specific determination" is required for CERCLA allocation. *PCS Nitrogen Inc.*, 714 F.3d at 183. Indeed, Mr. Schapp's affidavit acknowledges that three types of releases of PFOS and PFOA have occurred on the Highland Dairy Property at the direction of Plaintiffs. *See* Dkt. No. 7-2 ¶¶ 42, 83, 90, and 95 (noting (1) "60,000,000 and 80,000,000 pounds" of milk containing PFOS and PFOA"; (2) manure from Highland Dairy's cattle contaminated with PFOS and PFOA; and (3) dead cows contaminated with PFOS and PFOA deposited on the land at Highland Dairy). All releases and disposals of a hazardous substance must be considered when determining the appropriate equitable allocation of liability under CERCLA section 107(a), 42 U.S.C. § 9607(a). *See PCS Nitrogen Inc.*, 714 F.3d at 183 (finding "any reasonable basis for apportionment must include reliable evidence as to *both* the initial disposals of hazardous substances *and* any secondary disposals that occurred over time"). Here, the parties have yet to begin the fact-intensive discovery needed to understand the proper allocation of liability for response costs incurred (if any) by all parties in connection with the site. The Court should thus deny or defer ruling on Plaintiffs' motion for partial summary judgment.

### B. Double Recovery under CERCLA section 114(b).

CERCLA section 114(b), 42 U.S.C. § 9614(b) prohibits plaintiffs from recovering costs under CERCLA when they have recovered the same costs, damages, or claims under any other state or federal law. *See Exxon Corp.*, 475 U.S. at 370; *see also Minyard Enters., Inc. v. Se. Chem. & Solvent Co.*, 184 F.3d 373, 382 (4th Cir. 1999) ("CERCLA ... precludes a plaintiff from recovering cost of repair damages under both CERCLA and state law.") (quoting *Stanton Rd.*

*Assocs. v. Lohrey Enters.,* 984 F.2d 1015, 1021–22 (9th Cir.1993)). In his affidavit, Mr. Schaap claims that Plaintiffs received payments of costs, damages, or claims from the United States DIPP program and NMED's "Hazardous Waste Fund." *See* Dkt. No. 7-2 at 11-17, 20. The United States has not been permitted to conduct any discovery related to these alleged payments or any other sources of payments that Plaintiffs have received including insurance payments and other forms of reimbursement that may preclude recovery pursuant to CERCLA section 114(b)'s, 42 U.S.C. § 9614(b), prohibition on double recovery. *NCR Corp. v. George A. Whiting Paper Co.*, 768 F.3d 682, 708 (7th Cir. 2014) (finding "that ignoring insurance settlements when it would lead to double recovery is inconsistent with [CERCLA's] purpose").

In addition, Plaintiffs also have FTCA claims pending against the United States in AFFF MDL Member Case No. 2:19-CV-3288-RMG (D.S.C.). CERCLA section 114(b) requires the United States to assess any FTCA claims when evaluating their CERCLA costs recovery claims to ensure Plaintiffs are not compensated twice for the same costs, damages, or claims. *Braswell Shipyards, Inc. v. Beazer E., Inc.*, 2 F.3d 1331, 1337 (4th Cir. 1993) (finding "when pursued together" damages sought under tort claims and costs sought under CERCLA "are inextricably intertwined because a CERCLA cleanup will most assuredly increase the value of the damaged property at issue"). These double recovery assessments are fact specific and require discovery.

The United States is charged with protecting the public fisc and must guard against double recovery in accordance with the mandate in CERCLA section 114(b), 42 U.S.C. § 9614(b).

II.     **The United States is Separately Seeking an Abeyance of All CERCLA Cost Recovery Claims and Contribution Claims until EPA's Evaluation of the Rule Designating PFOA and PFOS Hazardous Substances is Complete.**

EPA is evaluating the rule designating PFOS and PFOA hazardous substances, *see* 89 Fed. Reg. 39124 (May 8, 2024) ("Designation of Perfluorooctanoic Acid (PFOA) and

11

Perfluorooctanesulfonic Acid (PFOS) as CERCLA Hazardous Substances"), to determine whether to reconsider the designation. *See* Doc. No. 2130679, Unopposed Motion to Continue Abeyance, *Chamber of Com. of the United States of Am. v. EPA*, No. 24-1193 (D.C. Cir. Aug. 18, 2025). The United States is separately moving to hold this case, and all other CERCLA cost recovery and contribution claims, in abeyance until after EPA's evaluation of the rule designating PFOS and PFOA hazardous substances is complete. The Court should also deny or defer ruling on Plaintiffs motion for partial summary judgment because if EPA decides to reconsider the rule designating PFOS and PFOA hazardous substances and ultimately vacates that rule, that could impact Plaintiffs' ability to establish a prima facie case for cost recovery under CERCLA section 107(a), 42 U.S.C. § 9607(a). *See Ashley II of Charleston, LLC*, 791 F. Supp. 2d at 479–80 (proving the release or threatened release of a "hazardous substance" under CERCLA section 101(14), 42 U.S.C. § 9601(14), is one element of the four elements of a prima facie case under CERCLA section 107(a), 42 U.S.C. § 9607(a)).

Judicial economy, preservation of the parties' resources, and protection of the public fisc support an abeyance in this case until after EPA completes its evaluation of the hazardous substance designation for PFOS and PFOA. *See Landis v. N. Am. Co.*, 299 U.S. 248, 256 (1936) ("[I]n cases of extraordinary public moment, the individual may be required to submit to delay not immoderate in extent and not oppressive in its consequences if the public welfare or convenience will thereby be promoted."). Continuing to litigate a case that may be moot after a pending decision from a federal agency could require the Court and the parties to spend time and money without any potential for return on the expended resources. The discovery in CERCLA cases is typically extensive, and that required here would be expected to follow the usual model. Multiple expert witnesses are often necessary to adequately resolve even the sorts of issues already advanced by

12

Plaintiffs. The public interest in protecting public funds and resources (judicial, federal agency funds, and the Federal Judgment Fund) thus weigh rather heavily in favor of holding this case in abeyance until after EPA completes its evaluation of the hazardous substance designation for PFOS and PFOA.

## CONCLUSION

The United States respectfully requests that this Court deny or defer ruling on Plaintiffs' motion for partial summary judgment in accordance with Fed. R. Civ. P. 56(d) because the United States needs discovery into facts essential to the United States' response in opposition to Plaintiffs' motion.

Date: September 8, 2025

        Respectfully submitted,

        ADAM R.F. GUSTAFSON
        ACTING ASSISTANT ATTORNEY GENERAL
        Environment & Natural Resources Division

        */s/ Shari Howard*
        Shari Howard
        Sanya Shahrasbi
        U.S. Department of Justice
        Environment & Natural Resources Division
        Environmental Defense Section
        P.O. Box 7611
        Washington, D.C. 20044
        Tel: (202) 598-9407 (Howard)
        shari.howard@usdoj.gov
        sanya.shahrasbi@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on September 8, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which shall send notification of such filing to all known counsel of record.

           */s/ Shari Howard*
           Shari Howard
           Trial Attorney