**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| IN RE: AQUEOUS FILM-FORMING FOAMS PRODUCTS LIABILITY LITIGATION | MDL No. 2-18-mn-2873-RMG<br><br>Hon. Richard M. Gergel |

**PLAINTIFFS' EXECUTIVE COMMITTEE STATUS REPORT**

The Plaintiffs' Executive Committee ("PEC") respectfully submits this Status Report to raise and report a significant matter that the PEC will continue to investigate and may seek judicial intervention in the very near future.[1] Nefarious corporate machinations threatening this MDL by removing tens of billions of dollars in assets from the reach of thousands of Plaintiffs have recently been publicly disclosed. The PEC is compelled to bring to the Court's attention these new corporate divestiture transactions whose purpose is to insulate from liability Defendants participating in this MDL, *i.e.,* DuPont de Nemours, Inc. ("New DuPont") and Corteva, Inc. ("Corteva"). Because attention must be paid, these actions demand immediate inquiry. The PEC requests judicial consent to engage in targeted discovery of New DuPont, Corteva, and their newly contemplated corporate affiliations, which now appears necessary in aid of this Court's jurisdiction and as noted below may also seek additional relief shortly.

As the Court may recall, Corteva is a holding company that owns E.I. du Pont de Nemours & Company (now known as EIDP, Inc. ("Old DuPont")). Corteva recently announced that it plans to insulate the majority of Old DuPont's assets from PFAS liabilities by transferring those assets

---

[1] The issues set forth herein have been urgently raised to the PEC leadership by both PEC members and non-PEC members. In addition, the State/Sovereign sub-committee has expressed significant concern over these developing issues, but as noted below, *all MDL Plaintiffs* could be adversely impacted by the actions of these Defendants.

1

to a new entity and spinning it off as a separate company. This new entity will receive assets that are projected to generate $2.6 billion in operating Earnings Before Interest, Taxes, Depreciation, and Amortization (EBITDA) this year alone, but according to Corteva, the company will *not* take on any PFAS liabilities whatsoever.

Additionally, New DuPont is in the process of liquidating billions of dollars' worth of its own assets. Since 2019, New DuPont has distributed more than $14 billion in cash to its shareholders in the form of dividends and stock buybacks. It is now engaging in transactions that will generate more than $5 billion in cash in exchange for its "electronics" business and "aramids" business. We believe New DuPont will likely seek to distribute a substantial portion of those proceeds to its shareholders, removing them from the reach of creditors, which includes thousands of MDL Plaintiffs.

The DuPont Entities, including Old DuPont, Corteva, and New DuPont, have a long history of engaging in restructuring transactions attempting to evade responsibility for PFAS liability and shield assets from creditors. By way of brief background and as the Court will recall, in 2015, Old DuPont spun off its "Performance Chemicals" business into a newly created publicly traded company called The Chemours Company ("Chemours"), which is also a defendant in these cases (the "Chemours Spinoff"). In 2019, litigation ensued between Chemours and Old DuPont, Corteva and New DuPont in Delaware Chancery Court (the "Delaware Action"), where Chemours made allegations that are virtually identical to the PEC's fraudulent transfer allegations relating to the Chemours Spinoff.

Despite their obvious conflicting interests in the Delaware Action, Old DuPont and Chemours resisted producing to the PEC in this MDL documents that they produced to each other in the Delaware Action on the grounds that they allegedly shared an attorney-client privilege prior

to the Spinoff. This Court overruled their objection and compelled the production of thousands of documents that Old DuPont and Chemours produced to each other in that Delaware Action. ECF No. 2687, at 5-6. Those documents—and the other discovery the PEC has taken concerning the Chemours Spinoff—confirmed the PEC's assertions and Chemours's allegations in the Delaware Action were true, *i.e.*, that Chemours was insolvent at the time it was spun off, it cannot satisfy the vast liabilities at issue in the cases, and the transaction constitutes, what is still alleged to be a fraudulent conveyance.

After the Chemours Spinoff, Old DuPont engaged in further corporate restructurings with Dow, Inc. between 2017 and 2019. New DuPont and Corteva were created in connection with those transactions. Before the transactions, Old DuPont, whose origins date back to 1802, was a large major publicly traded chemical company that designed, marketed and sold PFAS-containing products that are at issue in this MDL. As a result of the 2019 restructuring, however, Old DuPont became a wholly-owned subsidiary of Corteva, whose new business focused on agriculture. New DuPont acquired assets relating to Old DuPont and Dow's "material science" businesses.

New DuPont and Corteva initially argued that they were not proper defendants in this MDL because they were recently formed and, according to their counsel, allegedly did not inherit any liabilities. ECF No. 497, at p. 46. But these arguments have been disproven and are inaccurate. Discovery of the restructuring transactions revealed that Corteva and New DuPont each assumed Old DuPont's legacy liabilities relating to its manufacture, use and discharge of PFAS. Several courts, including the North Carolina Supreme Court, have confirmed this liability assumption. *See, e.g., State ex rel. Stein v. E. I. du Pont de Nemours & Co.*, 382 N.C. 549, 563 (2022) ("the Business Court's interpretation of the plain language of the Agreements is well supported, and we uphold its finding that Corteva and New DuPont expressly assumed Old DuPont's PFAS liabilities").

Specifically, Corteva assumed 29% of Old DuPont's PFAS liabilities and New DuPont assumed 71%, making them jointly and severally responsible with Old DuPont.

Notwithstanding the Court's expression of concern that the Defendants' assets are already likely insufficient to fully address the devastating consequences that their conduct has had on the environment and human health, ECF No. 5364, at 14:4-18, New Dupont and Corteva are plotting divestiture transactions that will further deplete billions of their assets.

On October 1, 2025, Corteva announced its intent to separate the majority of its assets from its PFAS liabilities by splitting into two companies in the second half of 2026.[2] Corteva is a holding company and its primary asset is its shares in Old DuPont, which owns the business lines Corteva plans to separate. Thus, the transaction will intentionally deplete the assets of Old DuPont, which remains directly 100% liable for its own historic conduct.

According to an investor presentation prepared by Corteva, a new company—referred to as "New Corteva"—will retain Corteva's "Crop Protection" business, which accounts for approximately one-third of Corteva's operating EBITDA. A separate new company, referred to as "SpinCo," will acquire Corteva's agricultural "Seeds" business, which accounts for the other two-thirds of Corteva's operating EBITDA. During an October 1, 2025 investor call, Corteva's CEO stated that it intends for the smaller company, New Corteva, to retain Old DuPont's historical liabilities, including the DuPont pension plan and PFAS obligations.[3] Corteva does not intend, however, for the larger of the two companies, SpinCo, to take on any such liabilities. Buried in this messaging is Corteva's scheme to remove its entire Seeds business—which generates the vast

---

[2] An investor presentation describing the planned transaction are available on Corteva's website, https://investors.corteva.com/static-files/aad0694e-1f04-4e56-8dcf-43faf2a3e6aa (last visited October 16, 2025).

[3] See https://investors.corteva.com/static-files/c8981a90-ab01-45d5-ac2a-f8a09a18c755 (last visited October 16, 2025).

4

majority of its profits—from the reach of creditors, thereby depriving thousands of MDL plaintiffs of needed assets available to satisfy their claims.

In furtherance of their scheme, New DuPont—which, again, assumed 71% of Old DuPont's PFAS liabilities—is also concocting multi-billion-dollar divestiture transactions. On November 1, 2025, New DuPont will spin off its electronics business into a new independent company called Qnity Electronics.[4] Inc. ("Qnity"). In exchange for New DuPont's electronic business, Qnity will incur approximately $4.1 billion in debt and distribute the proceeds to New DuPont. Qnity will also assume a portion of New DuPont's PFAS liabilities.[5] New DuPont also announced that it intends to sell its "Aramids" business for $1.8 billion, including $1.2 billion in cash.[6] As a result of these two transactions, New DuPont's operating EBITDA will be cut in half, from approximately $3.1 billion to $1.5 billion.

New DuPont has not announced what it intends to do with the proceeds of these transactions, which will total more than $5 billion in cash. However, New DuPont has historically made substantial cash distributions to its shareholders in the form of stock repurchases and dividends. Indeed, New DuPont has returned $14.4 billion to its shareholders since 2019.[7] Thus, there is a substantial likelihood that it intends to distribute the proceeds of these transactions to

---

[4] *See* New DuPont Press Release, dated October 15, 2025 (available at https://www.investors.dupont.com/news-and-media/press-release-details/2025/DuPont-Board-of-Directors-Approves-Qnity-Distribution/default.aspx) (last visited October 20, 2025).

[5] *See* Separation and Distribution Agreement, § 2.2(c) titled "Transfer of Assets; Assumption and Satisfaction of Liabilities," (available at http://pdf.secdatabase.com/2574/0001193125-25-223466.pdf) (last visited October 20, 2025).

[6] *See* New DuPont Press Release, dated August 29, 2025 (available at https://www.dupont.com/news/dupont-announces-agreement-to-divest-aramids-business-to-arclin.html).

[7] *See* New DuPont "Investor Day Presentation," at p. 62 (available at https://s23.q4cdn.com/116192123/files/doc_events/2025/Sep/18/DuPont-Investor-Day-2025-Final.pdf) (last visited, October 20, 2025).

shareholders as well. This too means New DuPont would be removing recoverable assets from creditors, like the tens of thousands of MDL plaintiffs.

At present the PEC merely reports to the Court of its intent to serve targeted discovery into the Qnity spinoff transaction, including production of the final executed transaction documents, any and all non-public schedules, all conveyancing and assumption instruments, and all other ancillary documents or agreements relating to the transaction.   The PEC may also seek the following relief shortly:   (1) leave to add Qnity as a defendant globally in all cases in which New DuPont is currently named, based on Qnity's assumption of New DuPont's liabilities;(; (2) other relief as to the Corteva separation, which was just recently announced, for which the PEC is still assessing that situation; and (3) such other and further  relief as the circumstances may warrant given this these urgent and developing matters.

Dated:  October 23, 2025                                         Respectfully Submitted,

s/Fred Thompson III
Fred Thompson III
Motley Rice
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
843-216-9658
fthompson@motleyrice.com

*Plaintiffs' Liaison Counsel*              -

-and-

s/Michael A, London
Michael A. London
Douglas and London PC
59 Maiden Lane, 6th Floor
New York, NY 10038
212-566-7500
212-566-7501 (fax)
mlondon@douglasandlondon.com

Scott Summy
Baron & Budd, P.C.
3102 Oak Lawn Avenue, Suite 1100

6

Dallas, TX 75219
214-521-3605
ssummy@baronbudd.com

Joseph F. Rice
Motley Rice
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
843-216-9159
jrice@motleyrice.com

*Plaintiffs' Co- Lead Counsel*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was electronically filed with this Court's CM/ECF on this 23rd day of October, 2025, and was thus served electronically upon counsel of record.

s/Fred Thompson III
Fred Thompson III
Motley Rice
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
843-216-9118
fthompson@motleyrice.com

*Plaintiffs' Liaison Counsel*
