**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | | |
|---|---|---|
| IN RE: AQUEOUS FILM-FORMING FOAMS PRODUCTS LIABILITY LITIGATION | ) ) ) ) ) ) ) | MDL No. 2:18-mn-2873-RMG **This Document Relates to:** The Cases Listed in the Attached Exhibit A |

**CERCLA PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT UNITED STATES' MOTION TO HOLD IN ABEYANCE
<u>CERCLA COST RECOVERY AND CONTRIBUTION CLAIMS</u>**

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................ ii

TABLE OF AUTHORITIES ..................................................................................................... iii

INTRODUCTION ......................................................................................................................... 1

LEGAL STANDARD ................................................................................................................... 4

ARGUMENT ................................................................................................................................. 5

   I.  EPA's Decision to Retain the CERCLA Designation Rule Has Mooted the Government's Primary Argument for Abeyance........................................................ 5

  II.  The Government's Concerns About "Double Recovery" Under CERCLA Are Illusory and Fail to Justify Its Request for an Abeyance in These CERCLA Actions................ 7

 III. The *Landis* Factors Do Not Support a Stay. ................................................................. 11

      A. Judicial Economy is Not Served by a Stay. ................................................................. 11

      B. There Would Be No Hardship or Inequity to the Government if the Court Denies the Stay. .......................................................................................................................... 13

      C. There Would Be Severe Prejudice to the CERCLA Plaintiffs if the Court Were to Order a Stay. ............................................................................................................... 14

  CONCLUSION ......................................................................................................................... 17

# TABLE OF AUTHORITIES

*Page(s)*

**Cases**

*Ashworth v. Albers Med., Inc.*,
  229 F.R.D. 527 (S.D. W. Va. 2005) ...................................................................... 5

*Clinton v. Jones*,
  520 U.S. 681 (1997)......................................................................................... 4, 5

*Crowley Marine Servs., Inc. v. Fednav Ltd.*,
  915 F. Supp. 218 (E.D. Wash. 1995) ................................................................ 14

*Doe v. South Carolina*,
  No. 2:24-6420-RMG, 2025 U.S. Dist. LEXIS 161125 (D.S.C. July 8, 2025) ............... 4, 5, 17

*Landis v. N. Am. Co.*,
  299 U.S. 248 (1936)................................................................................... 4, 5, 13

*Santa Clarita Valley Water Agency v. Whittaker Corp.*,
  99 F.4th 458 (9th Cir. 2024) ......................................................................... 9, 10

*Stratton v. Merck*,
  No. 2:21-cv-2211-RMG, 2022 U.S. Dist. LEXIS 237429 (D.S.C. May 25, 2022)................... 4

*United States v. Monsanto Co.*,
  858 F.2d 160 (4th Cir. 1988) .......................................................................... 12

*Williford v. Armstrong World Indus., Inc.*,
  715 F.2d 124 (4th Cir. 1983) ..................................................................... 4, 13

**Statutes**

42 U.S.C. § 9607(a) ............................................................................................ 6

42 U.S.C. § 9613(g)(2)(B) .................................................................................. 9

42 U.S.C. § 9620(a)(1)....................................................................................... 12

42 U.S.C. § 9620(a)(4)....................................................................................... 14

42 U.S.C. §§ 9607, 9613....................................................................................... 1

## INTRODUCTION

Plaintiffs with claims against the Government[1] for cost recovery and/or contribution under Section 107 and/or 113 of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9607, 9613, (collectively, the "CERCLA Plaintiffs")[2] oppose the Government's Motion to Hold in Abeyance CERCLA Cost Recovery and Contribution Claims, Dkt. No. 7987 (the "Motion").

The very point of CERCLA's statutory design is to quickly establish the immediate liability of responsible parties for the costs of cleaning up pollutants—"hazardous substances" under the statute—so that affected parties can undertake the necessary clean up without delay and in the confidence that they will be reimbursed. Holding the CERCLA actions against the Government in this MDL in abeyance while other cases progress is thus entirely backwards and prevents CERCLA from performing its most essential role in our nation's pollution abatement scheme.

The Government perhaps had an argument for abeyance when it appeared that the pollutants at issue might be removed from the CERCLA regime entirely, but it has now unambiguously represented, in separate litigation, that it will leave the designation in place.[3] The Government's alternative excuse for abeyance (that there is a risk of double-recovery) applies only

---

[1] For purposes of this Opposition, Defendants United States of America, United States Department of Defense (now the Department of War), the Department of the Air Force, the Department of the Army, the Department of the Navy, the Department of Homeland Security, the Federal Aviation Administration are collectively referred to as the "Government."

[2] For purposes of this Opposition, the term "CERCLA Plaintiffs" collectively refers to all plaintiffs in this MDL with pending cost recovery and contribution claims against the United States under sections 107 and 113 of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), 42 U.S.C. §§ 9607, 9613. Attached as Exhibit A to this Opposition is a complete list of all those plaintiffs and the cases they brought against the United States that assert cost recovery or contribution claims under CERCLA.

[3] Declaration of John Evans, *Chamber of Com. v. EPA*, Case No. 24-1193 (D.C. Cir. Sep. 17, 2025), Doc. No. 2135418 ("Evans Declaration"). Attached as Exhibit B to this Opposition.

1

when it comes to making *final* determinations about victims' *total* recovery—a matter which is not before this Court, and can and should be left for later. Indeed, the hope is that establishing the Government's liability under CERCLA will obviate the need for at least some of the complex tort and other claims that plaintiffs are pursuing, thereby eliminating not only any risk of double-recovery, but the prospect of pointlessly duplicative litigation as well.

Meanwhile, as this Court has recognized, the participation of the Government is critical for resolving this litigation.[4] CERCLA is the ideal vehicle through which to promote that reconciliation. That is because, unsurprisingly, the "Comprehensive Environmental Response, Compensation, and Liability Act" provides a comprehensive framework that, in no uncertain terms, recognizes the Government's liability for releases at its facilities, while also providing a mechanism for the Government to seek contribution from any other parties that are potentially responsible. Accordingly, following the designation of perfluorooctanoic acid ("PFOA") and perfluorooctane sulfonic acid ("PFOS") as hazardous substances under CERCLA, this Court noted that "a study about how we can maximize CERCLA reimbursements is probably the highest and best use of our time."[5] That was correct then, and it remains correct now.

The Government's effort to indefinitely hold up a determination of its CERCLA liability is therefore likely to delay even further a proper resolution of this complex litigation and is consistent with its generally lackadaisical approach towards seeking such a resolution. For well over a year, plaintiffs have attempted to resolve their CERCLA claims against the Government

---

[4] Indeed, at the earliest stages of this litigation, the Court noted there is "no question" that the Government and its military facilities were an "active participant" in, and have responsibility for, nationwide releases of PFAS into the environment and the CERCLA Plaintiffs' properties. *See* July 26, 2019, Status Conference Tr., attached as Exhibit C, at 71:12−16; *id.* at 71:23−72:1 ("[T]here needs to be some careful consideration of whether in [a] potential resolution of this case the United States should not participate.").

[5] April 25, 2024, Status Conference Tr., attached as Exhibit D, at 54:2−4.

without litigation. This Court has made clear that, in the absence of progress in settlement, the only appropriate option is for plaintiffs to litigate and the Court to adjudicate their claims. As this Court put it at a previous status conference:

> [I]t's not unusual, Mr. London, for me to hear one party complain the other party is not settling the case . . . . And, you know, the solution to that always is, well, let's just litigate the thing. . . . [I]n an ideal world, if there's a sort of recognition that because of the designation there's going to be coverage and compensation, we would all rather not spend time doing that. But I can't make the Department of Justice move any faster than it is. You have some influence on that by just litigating the claims.[6]

Having already shown little interest and even less urgency in negotiating a resolution, the Government should not be able to indefinitely suspend the only other option, which is to "litigate the thing."

At this point, two dozen plaintiffs have asserted CERCLA claims against the Government without any meaningful progress, and seeing that situation, two of those plaintiffs have now filed motions for partial summary judgment on the Government's CERCLA liability. As the Court is aware, one of those motions (filed by the State of New Mexico) led to an agreement in principle to mediate the CERCLA claims at issue, while in response to the other (filed by the owners of Highland Dairy) the Government has, consistent with its delay tactics here, moved to deny or defer a ruling by invoking Fed. R. Civ. P. 56(d). The Government has offered no valid justification for delaying the resolution of those motions nor the advancement of the CERCLA portion of this litigation more broadly, notwithstanding that the abeyance it has requested would unquestionably prejudice not only the CERCLA Plaintiffs but the public good. For these and the other reasons

---

[6] February 7, 2025, Status Conference Tr., attached as Exhibit E, at 9:19−10:15. This followed a similar statement from the Court at the prior status conference: "You've got to get the litigation pending. And, you know, file the complaint. Do the discovery. Deal with these issues like [the Government's counsel] was mentioning about liability. And let's get to the end of this." November 1, 2024, Status Conference Tr., attached as Exhibit F, at 42:9–18.

discussed below, the Government's Motion should be denied.

## LEGAL STANDARD

Although the Fourth Circuit Court of Appeals has not adopted a standard applicable to motions for an abeyance (*i.e.*, to stay), this Court typically considers three factors: (1) the interests of judicial economy; (2) the hardship and inequity to the moving party absent a stay; and (3) potential prejudice to the non-moving party. *E.g.*, *Stratton v. Merck*, No. 2:21-cv-2211-RMG, 2022 U.S. Dist. LEXIS 237429, at *2 (D.S.C. May 25, 2022) (citation omitted). Courts call these the "*Landis* factors," referring to the Supreme Court's decision in *Landis v. N. Am. Co.*, 299 U.S. 248 (1936).

The discretionary authority to stay a case is incident to the Court's inherent power to control its docket. *Clinton v. Jones*, 520 U.S. 681, 706 (1997). "This discretion is not unlimited, however." *Doe v. South Carolina*, No. 2:24-6420-RMG, 2025 U.S. Dist. LEXIS 161125, at *7 (D.S.C. July 8, 2025) (Gergel, J.). It "calls for the exercise of judgment," with the factors to consider being "counsels of moderation." *Landis*, 299 U.S. at 254−55. In ruling on a stay, the Court "must weigh competing interests and maintain an even balance." *Id.* (internal quotation omitted); *see also Clinton*, 520 U.S. at 683 (reversing the trial court's grant of a stay in part because it took no account of the plaintiff's interest in bringing the case to trial).

"The proponent of a stay bears the burden of establishing its need." *Clinton*, 520 U.S. at 708 (citing *Landis*, 299 U.S. at 255). Specifically, "the suppliant for a stay must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else." *Landis*, U.S. 299 at 255; *Williford v. Armstrong World Indus., Inc.*, 715 F.2d 124, 127 (4th Cir. 1983) ("The party seeking a stay must justify it by clear and convincing circumstances outweighing potential harm to the party against whom it is operative.").

Courts disfavor a stay of indeterminate length. "[A]ny stay should be fixed within reasonable time limits to avoid a stay of indefinite duration." *South Carolina*, 2025 U.S. Dist. LEXIS 161125, at *7 (Gergel, J.) (citing *McKnight v. Blanchard*, 667 F.2d 477, 479 (5th Cir. 1982)); *Ashworth v. Albers Med., Inc.*, 229 F.R.D. 527, 533 n.4 (S.D. W. Va. 2005) ("An indefinite stay is an extreme measure which *Landis* strongly discourages."); *see also Clinton*, 520 U.S. at 707 (noting that a stay should not be "immoderate in extent"); *Landis*, 299 U.S. at 256 (holding that a court abuses its discretion if the stay is "not kept within the bounds of moderation").

## ARGUMENT

The Government has made two arguments for an abeyance: (1) the potential repeal of the rule designating PFOA and PFOS as "hazardous substances" under CERCLA; and (2) the possibility that plaintiffs may obtain potentially duplicative relief through other claims. As explained below, the first argument is moot and the second is meritless. Moreover, even if these arguments held any weight, the Government has failed to fully address—let alone satisfy—the *Landis* factors. The Motion identifies no hardship to the Government from advancing these CERCLA actions (there is none) and says nothing at all about the prejudice to the CERCLA Plaintiffs (which is great). And while the motion references judicial economy, even that concern cuts against the Government's request for an abeyance here. The Court should thus deny the Government's Motion and allow the CERCLA Plaintiffs to continue advancing their claims toward a resolution.

## I.     EPA's Decision to Retain the CERCLA Designation Rule Has Mooted the Government's Primary Argument for Abeyance.

The Government's Motion and Memorandum in Support are devoid of any reason why this Court should grant the relief it seeks—a stay *sine die* of all CERCLA proceedings in which the

Government is a named defendant.[7] This is particularly true (obvious, even) now that, in parallel litigation, the Government has filed a sworn statement indicating that it is not seeking to reconsider the rule that brought PFOS and PFOA into CERCLA's liability scheme. While the interests of judicial economy never supported the Government's Motion, now that its first and best argument is moot this Court should summarily deny the Government's request.

For context, the root of the Government's once-best argument for an abeyance is a rulemaking that occurred in May 2024, when EPA designated PFOA and PFOS as "hazardous substances" under CERCLA and brought them into the statute's liability scheme.[8] *See also* 42 U.S.C. § 9607(a). Almost immediately, interested parties challenged the CERCLA Designation Rule in an appeal before the D.C. Circuit. *See Chamber of Com. v. EPA*, Case No. 24-1193 (D.C. Cir.). After the federal administration changed on January 20, 2025, EPA requested and received a stay from the D.C. Circuit while it evaluated whether to reconsider the CERCLA Designation Rule. *See* Mot. to Hold Cases in Abeyance, *Chamber of Com. v. EPA*, No. 24-1193 (D.C. Cir. Feb. 11, 2025). EPA later filed for multiple additional stays, lasting through September 2025. *See, e.g.,* Unopposed Motion to Continue Abeyance, *Chamber of Com. v. EPA*, No. 24-1193 (D.C. Cir. Aug. 18, 2025), ECF No. 2130679.

The Government cited these filings in support of its Motion here, noting that EPA had "announced its intent to evaluate whether to reconsider" the CERCLA Designation Rule. Memo. in Support of Def. United States' Mot. to Hold in Abeyance CERCLA Cost Recovery and

---

[7] The CERCLA Plaintiffs recognize that the federal government is currently in a shutdown. Plaintiffs will address any motion for a stay of deadlines based on the ongoing shutdown if the Government makes such a motion.

[8] *See* EPA, "Designation of Perfluorooctanoic Acid (PFOA) and Perfluorooctanesulfonic Acid (PFOS) as CERCLA Hazardous Substances," 89 Fed. Reg. 39124 (May 8, 2024) (codified at 40 C.F.R. pt. 302), *available at* https://www.govinfo.gov/app/details/FR-2024-05-08/2024-08547 (the "CERCLA Designation Rule").

Contribution Actions, Dkt. No. 7987-1 ("Gov't Br."), at 4. Pointing to this development, the Government argued that "[u]ntil there is more clarity on the hazardous substance designation, it would be inefficient to continue moving forward on Plaintiffs' cost recovery and contribution claims." Gov't Br. at 6. That clarity has now been supplied.

On September 17, 2025, EPA filed two documents in the D.C. Circuit appeal which unambiguously represent that the agency will uphold and support the designations of PFOS and PFOA as hazardous substances under CERCLA. Specifically, in a declaration from John Evans, a Senior Advisor for Implementation at EPA, Mr. Evans averred that "[c]onsistent with EPA's commitment to combat PFAS contamination, EPA has decided to keep the CERCLA Designation Rule in place." Evans Declaration, attached as Exhibit B, at ¶ 11. The other document, an Unopposed Motion to Govern signed by an attorney at the U.S. Department of Justice, likewise represented that the Government "has decided to keep the [CERCLA Designation] Rule in place." Unopp. Mtn. to Govern, *Chamber of Com. v. EPA*, Case No. 24-1193 (D.C. Cir. Sep. 17, 2025), Doc. No. 2135418, attached as Exhibit B, at ¶ 5.

Thus, the Government's primary argument for its requested abeyance—which was speculative to begin with—is now moot. The Government has clearly stated that it remains committed to combatting PFAS contamination and that it is retaining the CERCLA Designation Rule. To remain consistent with that position and mandate, the Government should now withdraw its Motion. If it fails to do so, this Court should deny it, without hesitation, as having been overtaken by events.

## II. The Government's Concerns About "Double Recovery" Under CERCLA Are Illusory and Fail to Justify Its Request for an Abeyance in These CERCLA Actions.

The second basis the Government identifies for its request for an abeyance of all CERCLA actions against it in this MDL is that it would allow time to advance the CERCLA Plaintiffs' *other*

claims and thus ensure compliance with CERCLA's mandate against double recovery. *See* Gov't Br. at 6−7 (citing 42 U.S.C. § 9614(b) ("Any person who receives compensation for removal costs or damages or claims pursuant to any other Federal or State law shall be precluded from receiving compensation for the same removal costs or damages or claims as provided in this chapter.")). According to the Government, because "Plaintiffs are in ongoing litigation against the manufacturers of PFAS, insurance companies, and other parties (including the United States) to recover compensation under statutes other than CERCLA," this Court "should hold [their] cost recovery and contribution claims in abeyance to ensure United States taxpayers do not compensate Plaintiffs for costs that are or will be obtained through other claims." Gov't Br. at 6–7. This request is both premature and backwards.

First, the mere *possibility* of a double recovery at some undetermined point in the future is insufficient to justify an abeyance. While the Government cites numerous cases where courts have enforced CERCLA's double recovery bar, it fails to cite *any* authority that supports holding CERCLA claims in abeyance before the risk of double recovery has materialized. Here, the CERCLA Plaintiffs' other claims are pending in *the exact same court*, which will have ample opportunity at the appropriate time to ensure that it does not grant a judgment awarding compensation for the same clean-up costs twice. Indeed, that is precisely what the courts did in the cases the Government cites: They policed against double recovery at the point when a second tranche of compensation was to be awarded, not when plaintiffs were merely trying to advance their various, not-yet-satisfied claims. *See, e.g.*, Gov't Br. at 7 n.4 (citing *K.C. 1986 Ltd. P'Ship v. Reade Mfg.*, 472 F.3d 1009, 1017 (8th Cir. 2007) for its "holding that the district court abused its discretion in refusing to credit settlement amounts in calculating the amount of the judgment for CERCLA claim").

The Government also fails to discuss or even cite the case that is most instructive on these issues, which is the Ninth Circuit's decision in *Santa Clarita Valley Water Agency v. Whittaker Corp.*, 99 F.4th 458 (9th Cir. 2024) ("*SCVWA*"). In *SCVWA*, a regional water supply agency brought an action against a manufacturer of munitions and explosives asserting both state-law tort claims and a CERCLA cost recovery claim arising from the contamination of its water system and sources with perchlorate, perchloroethylene (PCE), and trichloroethylene (TCE), all designated as hazardous substances under CERCLA and released by the manufacturer before entering groundwater sources. The state law tort claims were tried before a jury, which found the manufacturer liable on all counts and awarded damages to the plaintiff totaling approximately $65 million. Thereafter, the district court issued findings of fact and conclusions of law concerning the plaintiff's CERCLA cost recovery claim, which had been tried to the bench. The court determined that it could not establish CERCLA liability against the manufacturer for certain costs because "it would be duplicative of the jury award, and thus precluded by CERCLA's bar on double recovery." *Id.* at 469.

The Ninth Circuit reversed after determining that the district court "misconstrued" the plaintiff's claim as seeking "an award of damages under CERCLA" when it actually sought "a finding that [the manufacturer] is *liable* for those damages." *Id.* at 477 (emphasis in original). Finding this distinction critical, the Court observed that a "finding of liability under CERCLA for past response costs ensures that a party can recover those costs if the damage award otherwise remains unsatisfied, and it provides the party access to other remedies under CERCLA that it may be entitled to in the future." *Id.*[9] After explaining that it had not "had an opportunity to clarify

---

[9] CERCLA requires courts to "enter a declaratory judgment on liability for response costs or damages that will be binding on any subsequent action or actions to recover further response costs or damages." 42 U.S.C. § 9613(g)(2)(B).

whether a finding of liability for incurred response costs under CERCLA is precluded by § 9614(b)'s bar on double recovery," the court held that "a finding of liability is not barred by § 9614(b) so long as the district court frames the relief such that the recovering party does not receive compensation for costs or damages that they have already received pursuant to state or federal law." *Id.* at 477–78.

Although most of the plaintiffs in the CERCLA actions in this MDL have not even had the opportunity to establish the Government's liability under CERCLA in their respective cases, there are two aspects of the Ninth Circuit's decision in *SCVWA* that are instructive in evaluating the Government's request for an abeyance. First, the Ninth Circuit's ruling in *SCVWA* recognizes that CERCLA's prohibition against double recovery does not prevent a court from determining a party's liability under CERCLA for response costs. *Id.* at 478 (holding that a "finding of liability" under CERCLA "is not barred" by the statute's provision prohibiting double recovery). For that reason, CERCLA's double recovery bar cannot be used to justify the Government's requested abeyance, at least so far as it would apply to the determination of whether the Government is liable to Plaintiffs for response costs under CERCLA.

Second, the Ninth Circuit's decision in *SCVWA* acknowledges that CERCLA's double recovery bar only becomes a concern where a court is unable to *frame relief* under CERCLA in such a way "that the recovering party does not receive compensation for costs or damages that they have already received pursuant to state or federal law." *Id.* Far from granting any kind of abeyance, the district court in *SCVWA* took both CERCLA and non-CERCLA claims all the way to trial and was faulted only because it failed to ensure that plaintiffs obtained the CERCLA liability determination to which they were entitled. Here, the Court remains far from trying the multiple different claims at issue, let alone granting duplicative relief thereon. Most importantly,

10

the Government offers no explanation whatsoever for why this Court would be unable to craft non-duplicative relief when the time comes.

## III.    The *Landis* Factors Do Not Support a Stay.

All three of the *Landis* factors counsel that a stay of these cases would be inappropriate. Now that EPA has decided to retain the CERCLA Designation Rule, it would be in the interests of judicial economy not only to allow the claims to continue, but to expeditiously advance them. Moreover, any delay in the resolution of CERCLA claims would be extremely prejudicial to the CERCLA Plaintiffs, who need remediation funding as federal funds and settlements with third parties fall short. That prejudice far outweighs any hardship or inequity to the Government, both because the Government has failed to identify any and because there is none. Rapid determinations of liability are built into CERCLA's fabric and a key aspect of its ability to serve the public by promoting timely remediation efforts.

### A.    <u>Judicial Economy is Not Served by a Stay.</u>

Staying the CERCLA Plaintiffs' cost recovery claims would not advance judicial economy. Rather, there is reason to believe that this Court's prompt adjudication of CERCLA claims will affirmatively *serve* judicial economy by potentially mooting or partially mooting pending claims against the Government under the Federal Tort Claims Act ("FTCA").[10]

This Court has noted that recovering from the Government under the FTCA is "always a challenge."[11] Plaintiffs have proven that the challenge can be overcome, having survived the

---

[10] Shortly after the designation of PFOA and PFOS under CERCLA the Court asked how many of the pending tort claims against the Government would be covered by CERCLA, disposing of some of the challenges of FTCA litigation. Counsel to the Government answered that a great majority could now be potentially viable CERCLA claims. April 25, 2024, Status Conference Tr., attached as Exhibit D, at 41:23–42:5.

[11] April 25, 2024, Status Conference Tr., attached as Exhibit D, at 47:10.

Government's jurisdictional motions to dismiss the FTCA claims arising from releases at Cannon Air Force Base. Dkt. No. 6728. But as the Court is aware, doing so was a painstaking effort that required extensive written discovery, multiple depositions, hundreds of pages of briefing, and lengthy oral argument. Because the Court has found that FTCA cases in the MDL present site-specific issues, all twenty-three of the FTCA cases involving sites other than Cannon Air Force Base must now complete site-specific jurisdictional discovery and briefing, a burdensome proposition for both the parties and the Court. *See* Dkt. No. 6730.[12]

CERCLA, however, is a different matter. CERCLA contains a broad waiver of the Government's sovereign immunity, and liability is strict. 42 U.S.C. § 9620(a)(1) (waiver of sovereign immunity); *United States v. Monsanto Co.*, 858 F.2d 160, 167 (4th Cir. 1988) (holding that CERCLA establishes a strict liability scheme). As this Court has put it, "all the assumptions that go one way [in FTCA claims] seem to go the opposite way in a CERCLA claim."[13] Accordingly, this Court has correctly observed that the parties' and the Court's resources are likely best economized by focusing on CERCLA liability, because "a lot of time [spent] talking about the [FTCA]" will become "academic if you've got CERCLA coverage."[14] The Court has even "encourage[d] the Government to get on with it about CERCLA," and notified the parties that "if it doesn't, we're going to have it here. I'll deal with it here."[15] There is accordingly little merit to the argument that this Court's resources would be best served by now derailing the CERCLA process altogether and indefinitely in favor of making progress exclusively on the more complex

---

[12] The parties have previously acknowledged that the cases will likely need to be handled in tranches just to make that burden manageable. Dkt. Nos. 7441, 7442.

[13] April 25, 2024, Status Conference Tr., attached as Exhibit D, at 47:12−13.

[14] February 7, 2025, Status Conference Tr., attached as Exhibit E, at 12:23-13:3.

[15] February 7, 2025, Oral Argument Tr., attached as Exhibit G, at 54:1-6.

FTCA aspects of the litigation.

Recognizing the relatively straightforward nature of CERCLA litigation and its capacity to advance this MDL, two plaintiffs have already brought motions for partial summary judgment. *See* Dkt. Nos. 7420, 7421. If successful, those motions will show that CERCLA claims can proceed efficiently with no jurisdictional defenses and few if any liability defenses. *Id.* The CERCLA Plaintiffs expect that, like most CERCLA litigation, the most challenging aspect of these cases will be proving (or negotiating) the recoverability of specific response costs. But even assuming the Government chooses to litigate that issue, it will represent a relatively narrow inquiry amenable to this Court's speedy resolution.[16]

B.     There Would Be No Hardship or Inequity to the Government if the Court Denies the Stay.

*Landis* requires the Government to "make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which [it] prays will work damage to some one else." U.S. 299 at 255. In the words of the Fourth Circuit, the Government must justify a stay by demonstrating "clear and convincing circumstances outweighing potential harm to the party against whom it is operative." *Williford*, 715 F.2d at 127.

Here, not only is there far more than a "fair possibility" of prejudice to the CERCLA Plaintiffs, as discussed below, but there is also nothing against which to weigh that prejudice because the Government has failed to identify *any* hardship or inequity it will face. Instead, the Government has chosen to rest its Motion solely on judicial economy. *E.g.* Mot. at 1 ("An abeyance is warranted in the interest of judicial economy."). The closest the Government comes to identifying a hardship or inequity is in arguing that the requested abeyance is needed to avoid

---

[16] As noted above, should CERCLA cases reach the damages phase of litigation the Court and parties would then be well-positioned to address any double-recovery issues.

double recovery, which it claims could unjustly enrich plaintiffs at the expense of the American taxpayer. Gov't Br. at 7. As discussed above, however, this Court is perfectly positioned to avoid any such result at the appropriate time in the damages phase of litigation, and abeyance is not remotely necessary or appropriate to avoid that concern.

Finally, it should be noted that even were this Court to grant the requested abeyance the Government would still be required to defend claims under state law analogs to CERCLA, such as the Washington Model Toxics Control Act, which can serve as an additional basis for liability for the CERCLA Plaintiffs' response costs.[17] Because these state statutes are closely modelled after CERCLA, resolution of claims under CERCLA and these CERCLA analogues requires parallel showings and defenses by the parties. Resolving claims under CERCLA and its state law analogs in unison is the most efficient way for the Court to resolve the outstanding claims. Numerous CERCLA Plaintiffs are prepared to file for partial summary judgment to establish the Government's liability under such laws, and holding the CERCLA litigation in particular in abeyance would thus needlessly multiply the proceedings in this already complex MDL.

C.     There Would Be Severe Prejudice to the CERCLA Plaintiffs if the Court Were to Order a Stay.

The Government's requested abeyance would severely prejudice the CERCLA Plaintiffs' ability to address PFAS contamination in a timely manner, and to ensure that a responsible party bears the cost—the very purpose of CERCLA. *Burlington N. & Santa Fe Ry. Co. v. United States*, 556 U.S. 599, 602 (2009) (noting that CERCLA was "designed to promote the timely cleanup of hazardous waste sites and to ensure that the costs of such cleanup efforts were borne by those responsible for the contamination.") (internal quotations and citations omitted). Such actions are

---

[17]  CERCLA itself waives sovereign immunity for claims under state analogs based on contamination at federally owned or operated sites. 42 U.S.C. § 9620(a)(4); *see also, e.g., Crowley Marine Servs., Inc. v. Fednav Ltd.*, 915 F. Supp. 218, 221–22 (E.D. Wash. 1995).

desperately needed—the Government has now systematically delayed its own PFAS cleanups at over 140 military facilities, by five years on average and by nearly a decade in some cases.[18] That includes delays of **at least six years** at **seven** current or former military facilities—Peterson Space Force Base (f/k/a Peterson Air Force Base), Barnes Air National Guard Base, Cannon Air Force Base, Francis S. Gabreski Air National Guard Base, former Plattsburgh Air Force Base, Stewart Air National Guard Base, and Fairchild Air Force Base—that are the subject of CERCLA claims which the Government now seeks to hold in abeyance through its motion.[19]

CERCLA reimbursements are likely the only federal funding that will be available and adequate to fully address PFAS contamination at and around federal facilities. For example, the current administration has proposed decimating the Clean Water and Drinking Water State Revolving Fund—used to fund water quality improvement projects—by reducing it from almost $3 billion to a mere $305 million.[20] Water providers among the CERCLA Plaintiffs urgently need to finance PFAS treatment systems, both as a matter of public health and in order to comply with

---

[18] *See, e.g.*, Hiroko Tabuchi, *Defense Department Delays Cleanup of 'Forever Chemicals' Nationwide*, NEW YORK TIMES (Sept. 23, 2025), https://www.nytimes.com/2025/09/23/climate/military-defense-pfas-forever-chemicals-cleanup-delay.html (last visited Oct. 23, 2025), attached as Exhibit H.

[19] *Compare* U.S. Dept. of Defense, *Progress at the 723 Installations Being Assessed for PFAS Use or Potential Release* (Mar. 31, 2025) (reporting on the status of the Government's cleanup efforts at military facilities with existing PFAS contamination as of March 31, 2025), *available at* https://www.acq.osd.mil/eie/eer/ecc/pfas/docs/data/DoD-PFAS-Progress-31MAR25.pdf (last visited Oct. 23, 2025), attached as Exhibit J, *with* Appendix A to U.S. Dept. of Defense, *FY 2024 Report on Status of Per- and Polyfluoroalkyl Substances Preliminary Assessment/Site Inspection Testing* (Apr. 2025) (reporting on the status of the Government's cleanup efforts at military facilities with existing PFAS contamination as of September 30, 2024), *available at* https://www.acq.osd.mil/eie/eer/ecc/pfas/docs/reports/FY24-PFAS-PA_SI-Testing-Report.pdf (last visited Oct. 23, 2025), attached as Exhibit I.

[20] *See* Office of Management and Budget, Letter to Senator Susan Collins (May 2, 2025), *available at* https://www.whitehouse.gov/wp-content/uploads/2025/05/Fiscal-Year-2026-Discretionary-Budget-Request.pdf (last visited Oct. 23, 2025), attached as Exhibit K.

state and federal drinking water standards. Absent the ability to recover costs from responsible parties, those costs will either be borne by ratepayers or will imperil the financial stability of the water providers themselves. To give just one example, Lakewood Water District has incurred $14 million in unreimbursed costs to filter water contaminated by the Air Force and Army. Multiple other wellhead treatment response actions are currently in the planning and design phases. If unable to pursue claims to recover the costs of such response actions, water providing CERCLA Plaintiffs like Lakewood may face delays in being able to provide the public with safe drinking water.

Importantly, the funding provided through settlements with AFFF and PFAS manufacturers is insufficient to cover plaintiffs' costs. From the earliest days of this MDL, the Court has recognized that plaintiffs' damages could present an "existential threat" to AFFF and PFAS manufacturers.[21] The Court has often repeated those concerns, including at the fairness hearing for the 3M settlement: "[E]ven if the plaintiffs maxed out and won every issue, there [is] not enough money among [industry] defendants to pay for the damages alleged by the plaintiffs."[22] The Court has also indicated that because of these concerns it has "long thought [the Government] needs to be at the table" as a "potential contributing solution" for the shortfall in damages that the manufacturers are able to pay.[23] As discussed above, the CERCLA Plaintiffs have been trying to bring the Government to the table since September 2024 but those efforts have been almost completely unsuccessful. It is only through litigation that the CERCLA Plaintiffs have been able to make any meaningful progress. A stay of these cases would deprive the CERCLA Plaintiffs of their ability to timely litigate these claims and/or obtain any discovery that is needed from the

---

[21] July 26, 2019, Status Conference Tr., attached as Exhibit C, at 71:8.

[22] Feb. 2, 2024, Fairness Hearing Tr., attached as Exhibit L, at 14:11−14.

[23] Apr. 25, 2024, Status Conference Tr., attached as Exhibit M, at 47:22-48:16.

Government.[24]

Finally, the prejudice to the CERCLA Plaintiffs posed by the Government's Motion is particularly severe because the Government has failed to identify any circumstances which would justify lifting the stay, instead proposing merely to "provide updates at the joint status conferences to the Court." Gov't Br. at 8. Thus, the Government has in essence proposed an indefinite stay, which is strongly disfavored by this Court. *E.g. South Carolina*, 2025 U.S. Dist. LEXIS 161125, at *7 ("[A]ny stay should be fixed within reasonable time limits to avoid a stay of indefinite duration.").

## CONCLUSION

At present, the Government's only apparent tactic in this litigation is to delay its resolution for as long as possible. With respect to CERCLA liability, however, it has nothing to hide behind. EPA has reaffirmed its commitment to addressing PFAS contamination and declared that it will retain the CERCLA designation of PFOA and PFOS. The Government's double recovery arguments are meritless. The balance of the *Landis* factors also counsel against the requested abeyance, particularly because the rapid settlement of liability is the whole point of the CERCLA regime. The Court should not endorse the Government's latest attempt at delay, which would not serve the interests of judicial economy and would severely prejudice plaintiffs. The Government's motion should be denied.

---

[24] Access to evidence is a persistent obstacle to bringing CERCLA claims since—as in the cases before the Court—the relevant contamination often dates back decades and the ensuing passage of time causes witnesses to forget key facts and documents to be lost or destroyed.

Dated: October 23, 2025                          Respectfully submitted,

                                                 */s/ Andrew W. Croner*
                                                 Andrew W. Croner
                                                 Napoli Shkolnik
                                                 360 Lexington Avenue, 11th Fl.
                                                 New York, New York 10017
                                                 (212) 397-1000
                                                 acroner@napolilaw.com

                                                 Paul J. Napoli
                                                 Hunter Shkolnik
                                                 Sean Murphy
                                                 Napoli Shkolnik
                                                 1302 Avenida Ponce de León
                                                 Santurce, Puerto Rico 00907
                                                 (833) 271-4502
                                                 pnapoli@nsprlaw.com
                                                 hunter@nsprlaw.com
                                                 smurphy@nsprlaw.com

                                                 *Counsel for the Highland Dairy Plaintiffs
                                                 and Representative Counsel for the
                                                 CERCLA Plaintiffs*

                                                 Allan Kanner
                                                 David Ivy-Taylor
                                                 Kanner & Whitely, L.L.C.
                                                 701 Camp Street
                                                 New Orleans, LA 70130
                                                 (504) 524-5777
                                                 a.kanner@kanner-law.com
                                                 d.ivy-taylor@kanner-law.com

                                                 *Counsel for the State of New Mexico and
                                                 Representative Counsel for the CERCLA
                                                 Plaintiffs*

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that on October 23, 2025, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify the foregoing document is being served this day on all counsel of record in this case via transmission of Notice of Electronic Filing generated by CM/ECF.

*/s/ Andrew W. Croner*
Andrew W. Croner