**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| IN RE: AQUEOUS FILM-FORMING FOAMS PRODUCTS LIABILITY LITIGATION | MDL No. 2:18-mn-2873-RMG<br><br>**ORDER AND OPINION**<br><br>**This Order Relates to Case Nos.**<br>**2:25-cv-09486-RMG**<br>**2:25-cv-10305-RMG**<br>**2:25-cv-10635-RMG**<br>**2:25-cv-11014-RMG**<br>**2:25-cv-11043-RMG**<br>**2:25-cv-11180-RMG**<br>**2:25-cv-11655-RMG**<br>**2:25-cv-11669-RMG**<br>**2:25-cv-11725-RMG** |

Before the Court are two related motions to remand. (Dkt. No. 8111) (Joint Motion to Remand for nine cases DuPont[1] removed); (Dkt. No. 8182) (additional motion to remand by Plaintiff Gaffney Water Board of Public Works against Defendant Everest Textile USA, LLC). For the reasons stated below, the Court grants in part and denies in part the Joint Motion to remand and grants Plaintiff Gaffney Water Board's additional motion to remand.

## I. Legal Standards

### a. *Removal-Generally*

The rules governing removal to federal court provide that a defendant "shall have 30 days after receipt by or service . . . of the initial pleading or summons . . . to file the notice of removal."

---

[1] "DuPont" refers to DuPont de Nemours, Inc., EIDP, Inc., The Chemours Company, and Corteva, Inc.

28 U.S.C. § 1446(b)(2)(B). If "the case stated by the initial pleading is not removable," however, a defendant may remove the action "within 30 days after receipt . . . of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." *Id.* at § (b)(3). "Under either scenario, a defendant's 30-day removal clock doesn't begin until the basis for removal jurisdiction becomes 'apparent within the four corners of the initial pleading or subsequent paper.' " *Skidmore v. Norfolk S. Ry. Co.*, 1 F.4th 206, 210 (4th Cir. 2021) (quoting *Lovern v. Gen. Motors Corp.*, 121 F.3d 160, 162 (4th Cir. 1997)).

    b. *Federal Officer Removal*

28 U.S.C. § 1442(a)(1) is "commonly referred to as the federal officer removal statute." *Maryland v. 3M Co.*, 130 F.4th 380, 384 (4th Cir. 2025), *cert. denied*, No. 25-517, 2026 WL 568301 (U.S. Mar. 2, 2026).  To sustain removal under § 1442(a)(1), the defendant must "plausibly allege[] '(1) that it acted under a federal officer, (2) that it has a colorable federal defense, and (3) that the charged conduct was carried out for or in relation to the asserted official authority.' " *Id.* at 388 (quoting *Anne Arundel Cnty. v. BP P.L.C.*, 94 F.4th 343, 347-48 (4th Cir. 2024)).

"[W]hen a plaintiff sues a defendant that can plausibly invoke removal under § 1442(a)(1), he relinquishes his otherwise ubiquitous power to select a state forum instead of a federal one by writing his complaint a certain way." *Id.* "[T]he federal officer removal statute 'is an exception to the well-pleaded complaint rule' insofar as it 'allows suits against federal officers to be removed despite the nonfederal cast of the complaint, and reflects a congressional policy that federal officers, and indeed the Federal Government itself, require the protection of a federal forum.' " *Id.* (quoting *Kircher v. Putnam Funds Tr.*, 547 U.S. 633, 644 n.12 (2006) (cleaned up)). "[T]he ordinary presumption against removal does not apply," meaning "[g]eneral removal principles are . . . inverted when § 1442(a)(1) is at issue." *Id.*

2

Importantly, the Fourth Circuit has rejected "the notion that [a plaintiff's] . . . purported disclaimers" of a defendant's federal conduct are "dispositive." *Maryland*, 130 F.4th at 389. A "plaintiff in the § 1442(a)(1) removal context is no longer the master of its complaint [and] . . . cannot preempt removal" by "gloss[ing the complaint] only in state law." *Id.* Instead, courts must "look to a defendant's well-pleaded facts of removal to see if it is entitled to a federal forum." *Id.* This is because federal courts "must credit a removing defendant's theory of the case as to whether the conduct with which it has been charged is related to its federal work." *Id.* (citing *Cnty Bd. Of Arlington Cnty., Va. v. Express Scripts Pharmacy*, 996 F.3d 243, 256 (4th Cir. 2021)).

## II. **Background**

Plaintiffs are nine water utilities which sued, inter alia, DuPont in state court and whose cases were consolidated by order of the South Carolina Supreme Court. (Dkt. No. 8111 at 5). Plaintiffs sued over PFAS contamination related to local industries' use of "non-AFFF products." (*Id.* at 6). DuPont removed these cases, however, claiming entitlement to the government contractor immunity defense.

DuPont's theory is that it made components incorporated into 3M's MilSpec AFFF and that this MilSpec AFFF comingled with non-AFFF PFAS contamination of Plaintiffs' respective water sources. (*Id*. at 7, 13-14) (noting that, for most cases, DuPont alleged MilSpec AFFF at specific airports and military bases migrated via ground and surface water to plaintiffs' water supplies). As to three specific cases[2], DuPont's federal officer removal theory is different. In these cases, DuPont argues that Plaintiffs' have separate suits pending solely against 3M which have

---

[2] *Gaffney Board of Public Works v. AGC Chemicals Americas, Inc., et al.*, Case No. 2:25-cv-10635; *City of Union, South Carolina v. AGC Chemicals Americas, Inc., et al.*, Case No. 2:25-cv-11014-RMG; and *Woodruff Roebuck Water District v. AFL Telecommunications, LLC*, Case No. 2:25-cv-11043-RMG.

been transferred into this MDL based on "alleged contamination of *identical* water sources." (Dkt. No. 8358). Thus, DuPont concludes, it "makes little sense to permit one set of cases to continue outside the MDL while a second set of cases brought by the same plaintiffs and involving identical water sources continue within." (*Id.* at 17). DuPont also relies on the State of South Carolina AFFF-related case, filed in this MDL, which alleged that "PFAS contamination is 'ubiquitous' in South Carolina." (*Id.*).

Also before the Court is a sperate motion to remand in *Gaffney*. (Dkt. No. 8182). Plaintiff Gaffney Board of Public Works contests Defendant Everest Textile USA, LLC's separate federal officer removal of this case. (Dkt. No. 8182).

Plaintiffs' motions to remand are fully briefed and ripe for disposition.

### III. Legal Analysis

To sustain removal under § 1442(a)(1), a party must "plausibly allege[] '(1) that it acted under a federal officer, (2) that it has a colorable federal defense, and (3) that the charged conduct was carried out for or in relation to the asserted official authority.' " *Maryland*, 130 F.4th at 388 (quoting *Anne Arundel Cnty.*, 94 F.4th at 347-48).

The federal defense here is the government contractor immunity defense. To invoke this defense, the defendant must show that: "(1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." *Sawyer v. Foster Wheeler LLC*, 860 F.3d 249, 255–56 (4th Cir. 2017) (quoting *Boyle v. United Techs. Corp.*, 487 U.S. 500, 512 (1988)).

*Gaffney Board of Public Works v. AGC Chemicals Americas, Inc., et al*

4

In *Gaffney*, both DuPont and Everest filed notices of removal pursuant to § 1442. As to Everest, it alleges that its use/disposal of PFAS was related to its "finishing of fabrics . . . for use by the U.S. Military." (Case No. 2:25-cv-10635, Dkt. No. 3 at 2). Absent from Everest's notice of removal, however, is any plausible factual allegation that it finished fabrics according to a specific, reasonably precise specification. *See, e.g.*, (*id.* at 10) ("Upon information and belief, Everest finished various fabrics in accordance with MilSpec requirements and/or as required and specified by the U.S. military."). Said differently, Everest has not plausibly alleged the existence of a reasonably precise specification. At a minimum, Everest has not shown a colorable federal defense, and federal officer removal is improper.

DuPont's notice of removal is likewise defective. DuPont alleges Gaffney's water supply was polluted with MilSpec AFFF to which DuPont contributed component parts, and which then comingled with non-AFFF PFAS. (Case No. 2:25-cv-10635, Dkt. No. 1 at 4). DuPont's allegations, however, do not plausibly support such a theory. *See* (*id.* at 3) (alleging only that PFAS contamination is "ubiquitous" in South Carolina's waters and that "AFFF is a significant contributing factor in the widespread contamination" found across the state). DuPont's remaining argument is unavailing because it has nothing to do with federal officer removal, the only basis on which DuPont removed this case. (*Id.* at 4) (arguing that because Gaffney's separate suit against 3M was transferred into this MDL, *this* action must be as well). In sum, the Court grants Gaffney's motions to remand.

*City of Union, South Carolina v. AGC Chemicals Americas, Inc., et al.* and *Woodruf-Roebuck Water District v. AFL Telecommunications, LLC et al.*

The Court likewise grants Plaintiffs' joint motion to remand as to *City of Union* and *Woodruf-Roebuck Water District*. As in *Gaffney*, DuPont removed both cases pursuant to the

federal officer removal statute. Again, however, DuPont did not plausibly allege a theory of comingling. (Dkt. No. 8358 at 17) (alleging DuPont' removal is supported not only by allegations that PFAS contamination in South Carolina is ubiquitous, but because both plaintiffs have separate actions against 3M which were transferred into this MDL). The Court therefore remands *Union* and *WRWD*.

*The Joint Motion to Remand's Remaining Cases*

As to the remaining cases which Plaintiffs' joint motion to remand concerns, the crux of Plaintiffs' argument is the following: DuPont has not plausibly alleged a colorable federal defense because it was only a subcontractor or component parts manufacture who was not directly "acting under" government supervision. (Dkt. No. 8111 at 8-12) (arguing DuPont simply sold an "off-the-shelf product"). Plaintiffs also claim that DuPont did not allege plausibly that the charged conduct was carried out for or in relation to the asserted official authority. (*Id.* at 12-16); *see also* (*id.* at 18-20) (arguing DuPont has no colorable federal defense because the Government "never approved any specification" with a DuPont product).

The Court finds that DuPont has alleged a colorable federal defense as to these remaining cases. To begin, this Court has held numerous times that 3M properly removed similar actions based on the federal office removal statute, adequately pleading a colorable federal defense. *See, e.g.*, *IN RE: AQUEOUS FILM-FORMING FOAMS PRODUCTS LIABILITY LITIGATION*, No. 2:23-CV-05979-RMG, 2026 WL 898450, at *3 (D.S.C. Apr. 1, 2026) (denying remand of State of South Carolina's action where it "disclaimed" all AFFF-related PFAS); *id.* at *2-3 (noting 3M alleged "that specific military installations and Part 139 airports in the vicinity of Plaintiff's drinking water sources used MilSpec AFFF" and that South Carolina likewise alleged contamination at military facilities "where MilSpec AFFF would have been used"); *IN RE:*

6

*AQUEOUS FILM-FORMING FOAMS PRODUCTS LIABILITY LITIGATION*, No. 2:24-CV-03794-RMG, 2026 WL 883873, at *1-2 (D.S.C. Mar. 31, 2026) (denying motions to remand by nine South Carolina public water providers on similar basis). Further, the government contractor immunity defense applies to subcontractors. *See, e.g.*, *Ramey v. Martin–Baker Aircraft Co.,* 656 F.Supp. 984 (D.Md.1987), *aff'd,* 874 F.2d 946 (4th Cir.1989); *Maguire v. Hughes Aircraft Corp.,* 725 F.Supp. 821, 825 (D.N.J.1989), *aff'd* 912 F.2d 67 (3d. Cir.1990) ("The fact that MPB was a subcontractor and dealt with Allison, rather than directly with the government, is not sufficient to defeat MPB's motion. The same policies which support the defense for Allison are applicable to MPB. The government contractor defense can apply to subcontractors, as well as general contractors"). Here, DuPont plausibly alleged it acted in just such a role vis-à-vis to 3M. (Dkt. No. 8358 at 12-14, 15-17) (noting DuPont provided between 1973 and 2020 telomer intermediates and telomer fluorocarbon surfactants for use in MilSpec AFF).  DuPont also alleged plausibly that MilSpec AFFF migrated from specific airports or military bases to Plaintiffs' respective water sources. The remaining portion of Plaintiffs' joint motion to remand is therefore denied. *See, e.g.*, (Case No. 2:25-cv-9486-RMG, Dkt. No. 1 at 3) ("Here, the alleged PFAS contamination of the Enoree River plausibly resulted at least in part from nearby use of MilSpec AFFF, including at the Greenville-Spartanburg International Airport . . . near Greer, South Carolina. In fact, the State of South Carolina has filed an action against 3M, DuPont, and other Defendants to recover for alleged PFAS contamination of groundwater and surface waters encompassing Plaintiff's water supply, and the State expressly alleges that such PFAS resulted from MilSpec AFFF use at (among other locations) the GSP Airport.").

## IV.    **Conclusion**

7

For the above reasons, Plaintiffs' joint motion to remand (Dkt. No. 8111) is **GRANTED IN PART AND DENIED IN PART**.  The motion is granted as to Case Nos. 2:25-cv-10635, 2:25-cv-11014, and 2:25-cv-11043. The motion is otherwise denied. Plaintiff Gaffney Board of Public Work's motion to remand (Dkt. No. 8182) is also **GRANTED**.

 **AND IT IS SO ORDERED.**

       **s/Richard Mark Gergel**
       Richard Mark Gergel
       United States District Judge

May 7, 2026
Charleston, South Carolina