**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| IN RE: AQUEOUS FILM-FORMING FOAMS PRODUCTS LIABILITY LITIGATION | ) ) ) ) | MDL No. 2:18-mn-2873-RMG |

) **This Document Relates to:**

)

) *City of Clinton, South Carolina v. AGC Chemicals*
) *Americas, Inc. et al.*
) No. 2:25-cv-09486-RMG

)

) *South Carolina Public Service Authority, a/k/a*
) *Santee Cooper, an agency of the State of South*
) *Carolina v. AGC Chemicals Americas, Inc. et al.*
) No. 2:25-cv-10305-RMG

)

) *Grand Strand Water and Sewer Authority v. AGC*
) *Chemicals Americas, Inc. et al.*
) No. 2:25-cv-11180-RMG
) No. 2:26-cv-00864-RMG

)

) *Laurens County Water and Sewer Commission v.*
) *AGC Chemicals Americas, Inc. et al.*
) No. 2:25-cv-11655-RMG

)

) *Greenwood Commissioners of Public Works v.*
) *AGC Chemicals Americas, Inc. et al.*
) No. 2:25-cv-11669-RMG

)

) *City of Florence, South Carolina v. AGC*
) *Chemicals Americas, Inc. et al.*
) No. 2:25-cv-11725-RMG

)

1

**PLAINTIFFS' MOTION FOR RECONSIDERATION
OR, IN THE ALTERNATIVE,
TO CERTIFY ORDER FOR INTERLOCUTORY APPEAL**

Pursuant to Fed. R. Civ. P. 59(e) and 28 U.S.C. § 1292(b), Plaintiffs in the above-captioned actions[1] respectfully request reconsideration of the Court's May 7, 2026 Order and Opinion, Dkt. No. 9363 (the "Remand Order") or, in the alternative, that the Court certify it for interlocutory appellate review.

**INTRODUCTION**

It is undisputed that Section 1442 requires federal "subjection, guidance, or control" over the removing party. The heart of Plaintiffs' Joint Motion to Remand is that DuPont identified no contract with the government or a contractor, no federal supervision, and no other source of federal authority over its conduct. Respectfully, the Remand Order does not appear to identify any such authority over DuPont either, but it nonetheless permits DuPont's removals to proceed.

The Remand Order is the only decision Plaintiffs have encountered extending federal officer removal to the sale of commercial components to government contractors down the stream of commerce, absent any federal oversight. That is DuPont's position by admission in this MDL. Caselaw overwhelmingly indicates that remand should occur for this reason alone. Because the Remand Order does not appear to address the absence of federal authority at the heart of Plaintiffs' motion, they respectfully urge the Court to reconsider its ruling in light of governing authority.

---

[1] City of Clinton, South Carolina ("Clinton"); Grand Strand Water and Sewer Authority ("GSWSA"); City of Florence, South Carolina ("Florence"); Greenwood Commissioners of Public Works ("Greenwood"); Laurens County Water and Sewer Commission ("Laurens"); South Carolina Public Service Authority ("Santee Cooper").

The Remand Order also appears to rest on factual and legal premises that Plaintiffs respectfully submit warrant reconsideration. It seems to link DuPont's causal-connection theory to 3M despite DuPont never alleging that 3M purchased DuPont ingredients, and it concludes that DuPont plausibly alleged a colorable government contractor defense without addressing Plaintiffs' arguments that DuPont identified neither a subcontract nor any government specification governing its own work.

Because these issues go to the existence of federal subject-matter jurisdiction itself, Plaintiffs urge the Court to reconsider its ruling. In the alternative, given the importance of these questions and the substantial grounds for disagreement regarding the scope of federal officer removal, Plaintiffs request certification for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

## BACKGROUND

Plaintiffs filed these actions in South Carolina state court, asserting South Carolina tort claims to abate and recover damages for PFAS contamination of its water supplies and water treatment infrastructure caused by Defendants' improper disposal of non-AFFF PFAS-containing products from their industrial operations. Defendants DuPont de Nemours, Inc. and EIDP, Inc. ("DuPont") subsequently removed the actions pursuant to 28 U.S.C. § 1442(a)(1), and Plaintiffs filed a Joint Motion to Remand, arguing this Court lacks subject matter jurisdiction over the actions because no Defendant satisfies section 1442(a)(1). Dkt. Nos. 8111 ("Joint Motion"), 8182. On May 7, 2026, this Court entered the Remand Order granting Gaffney's remand motion concerning Everest's removal and granting in part and denying in part Plaintiffs' consolidated remand motion concerning DuPont's removal.

In denying Plaintiffs' Joint Motion in part, the Remand Order provided that DuPont raised a colorable federal defense because it plausibly alleged it acted as a subcontractor to 3M

3

and MilSpec AFFF migrated from certain airports or military bases to certain Plaintiffs' water sources. Remand Order, at 6–7.

**ARGUMENT**

## I.      Reconsideration is appropriate.

### A.      The Court did not address Plaintiffs' primary argument that DuPont cannot show government subjection, guidance, or control over its conduct.

The primary defect in DuPont's removals comes down to federal authority. Plaintiffs' motion therefore focused on § 1442's threshold "acting under" question: **Where is the federal authority over DuPont?** According to the Supreme Court and the Fourth Circuit, this requires nothing less than the removing party's "unusually close" relationship with the federal government, under its "subjection, guidance, or control." *Mayor and City Council of Baltimore v. BP P.L.C.*, 31 F.4th 178, 229 (4th Cir. 2022). But the Remand Order does not address Plaintiffs' argument and permits an unprecedented expansion of federal officer removal.

The Remand Order approaches this issue from a different angle, holding that subcontractors may invoke the government contractor defense and that DuPont plausibly alleged a supplier relationship with 3M. Remand Order, at 6–7. Respectfully, neither proposition resolves the decisive question presented in the Joint Motion. The issue is not whether DuPont participated in the MilSpec AFFF supply chain, but whether DuPont acted under federal authority. The Remand Order identifies no contract, directive, supervisory relationship, or other source of federal authority over DuPont. Without this essential element of § 1442, there can be no subject matter jurisdiction.

DuPont's removals all rest on allegations that it sold components used by MilSpec AFFF contractors and therefore acted as a subcontractor. Remand Order, at 3–4. Yet Plaintiffs demonstrated what remains unrebutted: that the components were commercial, off-the-shelf

4

products that DuPont sold apart from any contract with either the federal government or a government contractor, and apart from any direct or indirect government supervision.  Indeed, Plaintiffs have repeatedly emphasized DuPont's admissions in this MDL that it merely sold its components "down the stream of commerce, never having any control over the final product, which was formulated, labeled, packaged, and distributed by third parties." DuPont MSJ, *City of Stuart v. 3M Co.*, No. 2:18-cv-03487-RMG, Dkt. No. 160, at 4 (D.S.C. Dec. 2, 2022); DuPont MSJ re: *Speers*, *Donnelly*, and *Voelker*, MDL Dkt. No. 7386-1, at 6 (D.S.C. June 17, 2025). Yet DuPont was silent where it matters. It did not allege the existence of any subcontract or a single instance or mechanism of government oversight concerning any DuPont conduct.

Plaintiffs have not identified a single decision holding that a company acts under federal authority simply by selling commercial products to a government contractor. Rather, there is overwhelming, if not universal agreement—including in the Fourth Circuit—that such conduct does ***not*** fulfill this element. *See, e.g., W. Va. State Univ. Bd. of Governors v. Dow Chemical Co.*, 23 F.4th 288, 299–301 (4th Cir. 2022); *BP*, 31 F.4th at 228–231; *see also City & Cnty. of Honolulu v. Sunoco LP*, 39 F.4th 1101, 1108–09 (9th Cir. 2022); *Cnty. of San Mateo v. Chevron Corp.*, 32 F. 4th 733, 757–58 (9th Cir. 2022); *Washington v. Monsanto Co.*, 738 F. App'x 554, 555 (9th Cir. 2018); *Balderas v. Monsanto Co.*, 454 F. Supp. 3d 1132, 1141 (D.N.M. 2020); *Dann v. Sherwin-Williams Co.*, 2008 WL 4115706, at \*7 (S.D. Ohio Aug. 28, 2008), R. & R., *adopted sub nom. Rogers v. Sherwin-Williams Co.*, 2008 WL 4279579 (S.D. Ohio Sept. 17, 2008).

To the extent the Court relied on MilSpec AFFF contractors' government relationships, Plaintiffs respectfully submit that this was erroneous. Government supervision over MilSpec AFFF contractors is insufficient. The Fourth Circuit requires that ***the removing party***

demonstrate federal supervision ***over itself***. *See Cnty. Bd. of Arlington Cnty. v. Express Scripts Pharm., Inc.*, 996 F.3d 243, 251–54 (4th Cir. 2021); *W. Va. State Univ. Bd. of Governors v. CaremarkPCS Health, LLC*, 140 F.4th 188, 197–98 (4th Cir. 2025). As shown recently, Express Scripts and Caremark were successful in their removals as subcontractors only because the government exercised authority ***over their own conduct***.[2] *See id.*

The Fifth Circuit reads Fourth Circuit caselaw the same way. *See Plaquemines Parish v. Chevron USA, Inc.*, No. 22-30055, 2022 WL 9914869, at \*3–4 (5th Cir. 2022), *cert. denied*, 143 S. Ct. 991 (2023). Rejecting the argument that crude-oil producers "acted under" federal authority as "subcontractors" vis-à-vis government-contracted oil refineries, it explained that even assuming "subcontractor" status, removal still required showing that a ***supplier itself*** was "subject to the federal government's guidance and control." *Id.* at \*3–4. The producers cited *Express Scripts* and *BP*, yet the Fifth Circuit rightly held that these cases "suggest[] that subcontractors need to indicate ***how they themselves*** were 'subject to the federal government's guidance and control' to remove under § 1442." *Id.* (emphasis added) (citing *Express Scripts*, 996 F.3d at 253; *BP*, 952 F.3d at 452). And because the producers fell outside contractual direction or other accountability to the government, removal failed. *Id.* (citing *Express Scripts*, 996 F.3d at 253; *PetroTel*, 33 F.4th at 199); *see also id.* ("As the district court noted, the 'refineries, who had federal contracts and acted pursuant to those contracts, can likely remove [under § 1442], but that does not extend to [parties] not under that contractual direction.'")

---

[2] Unlike DuPont, both also established the existence of subcontractor relationships in the first place.

(quoting *Par. of Plaquemines v. Riverwood Prod. Co.*, No. 18-5217, 2022 WL 101401, at *7 (E.D. La. Jan. 11, 2022))).[3]

The Fifth Circuit's conclusion reflects Plaintiffs' core argument. There has never been dispute that contractors like 3M can remove based on their own relationship with the federal government. But that authority "does not extend to parties not under contractual direction", *id.* at *4, or otherwise without federal "subjection, guidance, or control." *Caremark*, 140 F.4th at 197; *Dow*, 23 F.4th at 299; *BP*, 31 F.4th at 229; *Express Scripts*, 996 F.3d at 251. Respectfully, the Remand Order should have applied this to DuPont's flawed position.

Section 1442 requires federal "subjection, guidance, or control" over the removing party, and nothing less. ***DuPont*** is the removing party. It therefore bears the burden of identifying some contract, directive, or other source of federal authority over its own conduct. Plaintiffs respectfully submit that neither DuPont nor the Remand Order identified one.

To the extent the Court found DuPont's arguments persuasive, Plaintiffs ask that the Court revisit them because they cannot be reconciled with Fourth Circuit precedent.

The Fourth Circuit flatly rejects DuPont's primary argument that, by selling necessary fluorosurfactants, it provided a product "that otherwise 'the Government would have had to produce itself.'" Dkt. No. 8358 ("DuPont Opp'n"), at 6 (quoting *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 137 (2d Cir. 2008)). Namely, this dictum presupposes the federal authority that is

---

[3] The district court had further rejected a theory of acting under federal authority by supplying products necessary for contractors to fulfill federal contracts. *See* 2022 WL 101401, at *8. While acknowledging it was "necessary" for the producers to supply crude-oil for the contractor refineries to fulfill their contracts, the district court held that supplier relationships did not create subcontractor relationships, and the producers' argument produced no evidence of a subcontractor relationship or that the producers took over any portion of the contracts. *Id.* It also expressed skepticism that a subcontractor relationship itself could establish acting under a federal officer "absent special circumstances demonstrating ***significant federal control over a particular subcontractor.***" *Id.* (emphasis added).

absent here: "[W]e must then ask whether the private actor's conduct is helping or assisting federal officers fulfill a basic governmental task, ***under the government's control or subjection***, that the government would otherwise have to perform itself." *Dow*, 23 F.4th at 301–02 (emphasis added).

Without federal authority over DuPont itself, it does not matter if DuPont's ingredients were useful or even necessary for MilSpec AFFF. *BP* confirms this. If supplying commercial products were "acting under" federal authority for the bare reason that it gave the government what it would otherwise have to get elsewhere, then it would "bring every seller of contracted goods and services within the ambit of § 1442 when the government is a customer." *BP*, 31 F.4th at 230. The Fourth Circuit "refuse[d] to adopt such a sweeping interpretation," but respectfully, the Remand Order appears to do so. Accepting DuPont's notion of "acting under" would extend federal officer removal beyond any circumstance Plaintiffs have been able to locate in caselaw.

DuPont's remaining argument is worse. In a single sentence, DuPont asserted that it formulated its products "specifically to allow" AFFF to satisfy the MilSpec. DuPont Opp'n, at 9. That assertion is nowhere in its notices of removal. *See Carter v. Monsanto Co.*, 635 F. Supp. 2d 479, 487 (S.D.W. Va. 2009) (observing that a removing defendant must provide "candid, specific and positive" jurisdictional facts supporting federal officer removal). And when Plaintiffs challenged it, Dupont still produced no evidence supporting that claim—citing nothing but the MilSpec itself. DuPont Opp'n, at 9 n.7. There is no evidence that DuPont designed, developed, or manufactured any fluorotelomer intermediate specifically for military procurement. Its claim is even less tenable as to Forafac™. DuPont acquired this pre-existing commercial product line from Atofina and continued marketing it commercially thereafter. *See* Dkt. No. 600, at 3; Dkt.

8

No. 3393, at 5–6. DuPont could not have "specifically formulated" a product for the military that was commercial before and after DuPont acquired it.

Federal authority is an indispensable hurdle for federal officer removal, without which there can be no subject-matter jurisdiction. Commercial product sales, untethered to any federal contract, supervision, direction, or control over the removing party itself, cannot clear it. Plaintiffs respectfully request that the Court reconsider its conclusion to the contrary and remand these cases to state court.

**B.     The Court appears to have erroneously linked DuPont's causal connection theory to 3M.**

The Remand Order concluded that DuPont plausibly alleged it acted as a subcontractor "vis-à-vis to 3M" and that MilSpec AFFF migrated from specific military installations and airports to Plaintiffs' water sources. Remand Order, at 7. Plaintiffs respectfully submit that this conclusion does not fit DuPont's allegations or its factual contentions in remand briefing.

Plaintiffs acknowledge that 3M successfully established causal connection in other cases. But 3M did so by alleging that its own MilSpec AFFF was present at specific military bases and airports connected to the waters at issue. That allegation was the backbone of 3M's commingling theory that the Fourth Circuit found plausible in *Maryland*. *See Maryland v. 3M Co.*, 130 F.4th 380, 390 (4th Cir. 2025) ("Both States plead general PFAS contamination near military bases where 3M alleges it sold Military AFFF. On this record, we have no trouble considering as plausible 3M's allegations that some of the PFAS contamination at issue even in the non-AFFF complaints may come from their Military AFFF production."). Had DuPont alleged that 3M's MilSpec AFFF formulations used DuPont ingredients, Plaintiffs have no problem conceding that 3M's alleged sales to facilities upstream of Plaintiffs' water sources could support a causal theory for DuPont vis-à-vis 3M—albeit still lacking the necessary federal authority.

9

But DuPont never alleged that 3M purchased DuPont ingredients. Instead, in opposing Plaintiffs' motion, DuPont only identified other manufacturers—Ansul, National Foam, Tyco, and Chemguard—as customers that incorporated DuPont-made components. DuPont Opp'n, at 11. Thus, the Remand Order appears to have relied on a causal connection that DuPont never alleged. Again, were it shown that Ansul, National Foam, Tyco, or Chemguard sold MilSpec AFFF products to a facility upstream of Plaintiffs' water sources, Plaintiffs readily concede that DuPont's causal theory would resemble 3M's—but again, without the necessary federal authority. But that is not the case.

To the extent the Remand Order linked DuPont's causal theory to Plaintiffs' water sources vis-à-vis 3M, Plaintiff respectfully request that it reconsider it.

**C.     The Remand Order did not address Plaintiffs' arguments that DuPont failed to establish subcontractor status or approval over its own work.**

The Remand Order states that 3M has pleaded a colorable federal defense, that the contractor defense can also apply to subcontractors, and that DuPont plausibly alleges a subcontractor relationship vis-à-vis 3M. Remand Order, at 6–7. The Court is doubtless correct that the contractor defense can, in appropriate circumstances, apply to subcontractors. But respectfully, Plaintiffs raised a different issue: that even if DuPont were a subcontractor—which it did not establish—subcontractors must still satisfy the elements of the defense themselves, including that the government approved reasonably precise specifications governing the subcontractor's own work.

First, DuPont never established the existence of any subcontract. Its notices of removal identify no contract with 3M or any other MilSpec AFFF manufacturer. Nor did DuPont produce one when challenged on its removal. *See* Joint Motion, at 9 n.4 (citing Federal Acquisitions

Regulations for the meaning of "subcontractor" and stating that DuPont identified no contracts in its notices of removal). The Remand Order appears to overlook this threshold problem.

Second, the Remand Order correctly concludes that subcontractors may invoke contractor defenses, but Plaintiffs' motion instead challenged whether DuPont plausibly alleged the facts necessary to do so. The government contractor defense requires more than a product finding its way into a government procurement chain. DuPont must satisfy requisite elements as to its own conduct, including that the government approved reasonably precise specifications governing the very work or product at issue. *See Badilla v. Nat'l Air Cargo, Inc.*, No. 12-cv-1066A, 2013 WL 5723324, at *10 (W.D.N.Y. Oct. 21, 2013) ("Even if the government contractor defense is applicable to [subcontractors, the subcontractor] must still establish that the government 'exercised *significant* control over its relevant actions.'" (quoting *Densberger v. United Techs. Corp.*, 297 F.3d 66, 75 (2d Cir. 2002))); *see also Jackson v. Avondale Indus. Inc.*, 469 F. Supp. 3d 689, 704 (E.D. La. 2020) ("The Court . . . refuses to categorically deny the applicability of *Boyle* to at least certain subcontractors who perform work that is *specifically authorized by and provided for in government contracts*."). Respectfully, the Remand Order does not appear to address those arguments.

DuPont's own authority spotlights the issue. It argued that *Guerinot v. Rockwell International Corp.* is "on point," where the removing defendant made an ejection seat sensor using Loctite adhesive that failed. 923 F.3d 862 (9th Cir. 1991). It is true that the sensor manufacturer could invoke the contractor defense because the Navy approved sensor specifications calling for a locking agent, even if it did not require Loctite specifically. *Id.* at *4. But only MilSpec AFFF contractors stand in the sensor manufacturer's position here. DuPont, on the other hand, *is analogous to the Loctite manufacturer*. Loctite's manufacturer would have no

11

contractor defense for its role in the sensor's failure because the government did not approve any design or formulation for Loctite. Just like Forafac™ and all other DuPont products at issue, Loctite is a commercial product sold to the private sector and military contractors alike. By DuPont's reasoning, as long as specifications contemplate #8 screws in an end product, the screw manufacturer inherits a contractor defense any time a military contractor buys them off Home Depot shelves for contract performance. This is too untenable to be colorable. *See Boyle v. United Techs. Corp.*, 487 U.S. 500, 509 (1988) ("If, for example, a federal procurement officer orders, by model number, a quantity of stock helicopters that happen to be equipped with escape hatches opening outward, *it is impossible* to say that the Government has a significant interest in that particular feature." (emphasis added)).

Respectfully, the Remand Order does not appear to grapple with the implications of DuPont's theory or Plaintiffs' argument that it lacks any supporting authority or boundary. Plaintiffs respectfully request that the Court reconsider its conclusion that DuPont has plausibly alleged a colorable federal contractor defense.

## II. In the alternative, Plaintiffs ask that the Court certify the Remand Order for interlocutory appeal.

A district court may certify an interlocutory decision for immediate appeal if it decides that (1) its order involves a controlling question of law; (2) there is substantial ground for disagreement concerning it; and (3) immediate appeal may materially advance the ultimate termination of the litigation. 28 U.S.C. § 1292(b). Courts can and have done so concerning remand denials. *See, e.g.*, *Sonoco Prods. Co. v. Physicians Health Plan, Inc.*, 338 F.3d 366, 369–70 (4th Cir. 2003) (reviewing an order denying remand after the district court granted "a motion to alter or amend the Order, requesting that the court certify the remand decision for immediate appeal under 28 U.S.C. § 1292(b)"); *Watson v. Philip Morris Companies, Inc.*, 551 U.S. 142, 147

(2007) (reversing the district court's and Eighth Circuit's rulings that Phillip Morris acted under federal officers, thus conferring the federal courts with subject-matter jurisdiction, following the district court's certification of its order denying remand for interlocutory review). If the Court is not inclined to reconsider the Remand Order, Plaintiffs respectfully request that it certify these denials for immediate appellate review.

### A.    Subject-matter jurisdiction is a controlling question of law.

"A question of law is generally considered to be controlling within the meaning of § 1292(b) if the action would have been terminated had the district court ruled the opposite way." *City of Charleston, S.C. v. Hotels.com, LP*, 586 F. Supp. 2d 538, 542 (D.S.C. 2008). "A controlling question of law [includes] every order [that], if erroneous, would be reversible error on final appeal." *Lynn v. Monarch Recovery Mgmt., Inc.*, 953 F. Supp. 2d 612, 623 (D. Md. 2013) (emphasis removed) (quoting *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 755 (3d Cir. 1974)).

Here, had the Court ruled in Plaintiffs' favor, all of these actions would have been remanded to South Carolina state court, thereby terminating the litigation in federal court. *See Joyner v. A.C. & R. Insulation Co.*, No. CIV. CCB-12-2294, 2013 WL 2460537, at *7 (D. Md. June 6, 2013) (noting "remand terminates the federal litigation"), *aff'd sub nom. Wood v. Crane Co.*, 764 F.3d 316 (4th Cir. 2014); *Dashields v. Robertson*, 215 F.3d 1318 (4th Cir. 2000) (observing "the district court's remand order terminated all proceedings in federal court"). Additionally, an erroneous finding that federal jurisdiction lies over these actions when no such jurisdiction exists would certainly be reversible on appeal. *See Caterpillar Inc. v. Lewis*, 519 U.S. 61, 76–77 (1996) ("Despite a federal trial court's threshold denial of a motion to remand, if, at the end of the day and case, a *jurisdictional* defect remains uncured, the judgment must be vacated.").

13

**B.      There is substantial ground for difference of opinion.**

"An issue presents a substantial ground for difference of opinion if courts, as opposed to parties, disagree on a controlling legal issue." *Butler v. DirectSAT USA, LLC*, 307 F.R.D. 445, 454 (D. Md. 2015). This is present for each element of federal officer removal for the reasons discussed above—most notably acting under a federal officer. Cases are uniform that commercial sales apart from federal subjection, guidance, or control do not constitute acting under federal authority. And as noted above, courts have required that, for subcontractors to invoke a contractor defense, they must both be subcontractors and have their own work approved. *See Plaquemines*, 2022 WL 101401, at *8; *Jackson*, 469 F. Supp. 3d at 704; *Badilla*, 2013 WL 5723324, at *10.

As to causal connection, Plaintiffs have not uncovered decisions discussing the differences between (1) a MilSpec AFFF contractor linking its products to a water source by alleging it sold MilSpec AFFF to an upstream facility, and (2) linking MilSpec AFFF to a water source simply by market share probability inference. Under *Maryland*, the former is clearly sufficient. But Plaintiffs respectfully submit that the latter is a different animal—particularly here, where DuPont provides no information from which to evaluate the market share it wants the Court to plausibly infer resulted in its AFFF products' presence in each Plaintiff's water intake.

**C.      Immediate review would materially advance the termination of this litigation.**

Immediate review would materially advance these actions because federal jurisdiction is a threshold issue. If the Fourth Circuit disagrees with the Remand Order, the remaining actions will be remanded, and federal litigation will terminate immediately. This is not limited to a single

14

action but six. Immediate review would likely prevent years of litigation and delay in a forum that likely lacks subject matter jurisdiction, at least under the "acting under" element.

The consequences of an erroneous jurisdictional ruling are particularly significant here because the actions remain in a vast, nationwide MDL. Several companion South Carolina actions have already been remanded and will resume proceeding in a coordinated state-court forum. Immediate review would determine whether these actions proceed alongside those cases or remain subject to further federal and MDL-related litigation. That decision is highly consequential because the cases remaining in the MDL will be subject to the necessary delays entailed in the MDL's breadth, whereas state court litigation will proceed promptly towards merits resolution.

Resolving the jurisdictional question now would eliminate uncertainty regarding the proper forum, avoid potentially duplicative litigation efforts, and promote the efficient administration of closely related actions. As courts have recognized, certification is particularly appropriate where immediate review may avoid protracted and expensive litigation. *See Fannin v. CSX Transp., Inc.*, 873 F.2d 1438, 1989 WL 42583, at *2 (4th Cir. 1989).

## CONCLUSION

Based on the foregoing, Plaintiffs respectfully request that this Court reconsider its Remand Order and enter an order remanding these cases to state court. In the alternative, Plaintiffs request that the Court enter an order certifying the Remand Order for immediate appeal or amend the Remand Order so as to include the necessary findings prescribed by 28 U.S.C. § 1292(b).

Respectfully submitted,

 */s/ John B. White. Jr.*
John B. White, Jr. (Fed. Bar No. 4619)
Marghretta H. Shisko (Fed Bar No. 11601)
Christopher R. Jones (Fed. Bar No. 13204)
Griffin L. Lynch (Fed. Bar No. 9580)
JOHN B. WHITE, JR., P.A.
101 W. St. John Street, Ste. 200
P.O. Box 2465 (29304)
Spartanburg, SC 29306
(864) 594-5988
jwhite@johnbwhitelaw.com
mshisko@johnbwhitelaw.com
cjones@johnbwhitelaw.com
glynch@johnbwhitelaw.com

Frank Jerome Tapley
Hirlye R. "Ryan" Lutz, III
Brett Cooper Thompson
Robert Akira Watson
CORY WATSON, P.C.
2131 Magnolia Avenue South
Birmingham, AL 35205
(205) 328 2200
jtapley@CoryWatson.com
rlutz@CoryWatson.com
bthompson@CoryWatson.com
awatson@corywatson.com

*Attorneys for Plaintiffs*

June 4, 2026

16