

One State Street, 35th Floor
New York, NY 10004

935 Gravier Street, Ste. 2120
New Orleans, LA 70112

57 Union Street, Ste. 1007
Concord, NC 28025

Phone: (212) 566-7500
Fax: (212) 566-7501
douglasandlondon.com

Gary J. Douglas [P]
Michael A. London [*]

Stephanie O'Connor [*]
Randolph D. Janis [°]
Virginia E. Anello [^]
Rebecca G. Newman [*]

*Partners*

Alicia Ellsayed [°]
Lara J. Say [n]
Tate J. Kunkle [t]
Kristin Padden [c]
Sara Castronuova [*]
Chloe Makowsky [FL]
Joseph Grenner [L]

Philippa Ratzki [*]
*Managing Attorney*

[°] Admitted in NY
[*] Admitted in NY & NJ
[P] Admitted in NY & PA
[c] Admitted in NJ & CA
[^] Admitted in NY, LA & MA
[n] Admitted in NY, NJ & NC
[t] Admitted in NY & CT
[L] Admitted only in LA
[FL] Admitted in NY & FL

*The attorney in charge of New Jersey practice is Michael A. London*

July 31, 2026

**VIA ECF**
Hon. Richard Mark Gergel
U.S. District Court for the District of South Carolina
J. Waites Waring Judicial Center
83 Meeting Street
Charleston, South Carolina 29401

Re: *In re AFFF Products Liability Litigation*, MDL No. 2:18-mn-2873-RMG

Dear Judge Gergel:

On behalf of the Plaintiffs Executive Committee ("PEC"), we write to provide the Court with the PEC's position regarding further proceedings for the twelve (12) CMO 32 Real Property Product ID Site cases ("CMO 32 Sites").[1]

### The Meet and Confer Product Identification Process

Pursuant to CMO 32.A [ECF No. 9340], the Parties engaged in an extended meet and confer process, which was intended to assist the Parties in identifying the proper Defendants relevant to each CMO 32 Site. Despite Plaintiffs' good faith effort to identify proper Defendants with sufficient evidence of their involvement at a given Site and to dismiss those Defendants where product identification is lacking, *every* single Defendant, other than 3M, is contesting the product identification evidence to date at *every* CMO 32 Site. As such, Appendix A to CMO 32.A, which was submitted by the Parties on July 8, 2026, reflects 3M as the only Defendant not presently contesting product identification.

---

[1] The twelve (12) CMO 32 Sites are identified in the Order Regarding Parties' Designated Real Property ID Sites [ECF No. 6892].

1

Plaintiffs understand that Defendants intend to hold them to their burden of proof, however, it is difficult to believe that every single Defendant, other than 3M, genuinely maintains that there is insufficient product identification evidence at this stage of the proceeding for every CMO 32 Site.[2] While expert discovery, including, *inter alia*, water sampling, soil sampling, information concerning where the AFFF was used at the CMO 32 Site and/or information as to the hydrology of the CMO 32 Site will certainly buttress existing product identification evidence, Plaintiffs nonetheless contend that for each Defendant listed on Plaintiffs' respective Final Product ID Lists, Plaintiffs presently have a good faith evidentiary basis to establish product identification.

To this end, on June 11, 2026, Plaintiffs tendered to Defendants their Final Product ID Lists for each of the twelve CMO 32 Sites. These lists greatly narrow the number of relevant Defendants for each CMO 32 Site and will result in a significant number of Defendant dismissals.[3]

**<u>Defendants Attempt to Impose Improper Evidence Standards for Product Identification</u>**

The extensive number of dismissals with respect to each CMO 32 Site is proof positive that Plaintiffs engaged in this limited product identification discovery and subsequent meet and confer process with the intention of dismissing Defendants where product identification evidence was lacking and only continuing to pursue those Defendants where a good faith evidentiary basis for product identification existed.[4] Plaintiffs have met the good faith basis requirement by citing to record evidence establishing the presence of AFFF agents, the upstream component part(s) suppliers for those agents, and the use / release of AFFF agents generally at the CMO 32 Sites.

Conversely, irrespective of the strength of the product identification evidence at this phase, not one Defendant outside of 3M is willing to acknowledge the patent preliminary evidence identifying them as a properly named Defendant. Of course, it cannot be the case that every telomer-Defendant is correct in their resolve that they were incorrectly named in every single case. Such a result is both impossible and outlandish. Indeed, every telomer-Defendant taking such an extreme position at every CMO 32 Site weakens the strength of any individual telomer-Defendants' product identification defense.

To illustrate the extreme-nature of the telomer Defendants' positions, take, for example,

---

[2] It is also worth noting that pursuant to CMO 32.A, a Defendant that does not contest product identification at this stage of the proceedings reserves the right to contest product identification at a later stage of the litigation, including with respect to motions for summary judgment following general and expert discovery. *See* CMO 32.A ¶ 3.

[3] Attached hereto as Ex. A, is a chart identifying both the Defendants for which dismissals are being effectuated for each CMO 32 Site and the Defendants for each CMO 32 Site for which there is sufficient evidence of product identification.

[4] It is important to underscore as the PEC did in its prior submission on this subject that the question of whether there is an evidentiary basis for a particular Defendant to be properly named, and the question of whether such Defendant was a proximate cause (*i.e.*, substantial factor) to the PFOA and/or PFOS contamination at any particular Site are different questions, with the latter requiring expert discovery and testimony, including but not limited to water sampling, soil sampling, information concerning where the AFFF was used at the CMO 32 Site and/or information as to the hydrology of the CMO 32 Site. *See* PEC's Apr. 8, 2026, Ltr-Brf. [ECF No. 9089], at 6.

the CMO 32 Site, Alaska-Deadhorse Airport, where photographic evidence confirms the presence of Buckeye AFFF, and Fed. R. Civ. 30(b)(6) witness testimony made clear that at the Site there was "spraying of Buckeye that was happening…that went on for, at least…, close to a decade."[5] The witness further testified that one employee that he spoke with in preparation for his 30(b)(6) deposition personally remembered spraying Buckeye from 2009 through at least 2017, multiple times a year.[6] Despite this unambiguous testimony, Buckeye is contesting product identification at this CMO 32 Site claiming that the evidence of discharge is limited to secondhand testimony. First, this is not secondhand testimony, this is the testimony of a Fed. R. Civ. 30(b)(6) witness, who, as part of his duty to prepare for his deposition, interviewed employees at the Site who actually used the AFFF.[7] Not only was it proper for him to do so but as a 30(b)(6) witness he was required to be "'prepared to testify beyond matters in which [he] was personally involved.'" *M.D. Russell Constr., Inc. v. Consol. Staffing, Inc.*, 2022 U.S. Dist. LEXIS 50418, at *12 (E.D.N.C. Mar. 21, 2022) (quoting *Beach Mart, Inc. v. L & L Wings, Inc.*, 302 F.R.D. 396, 406 (E.D.N.C. 2014)). The fact that Buckeye does not think this sworn testimony along with photographic evidence of its AFFF at the CMO 32 Site is sufficient product identification evidence at this stage strongly brings into question the extent to which certain Defendants engaged in good faith meet and confers throughout this process.

By way of another example, with respect to the City of Hialeah, the Fed. R. Civ. 30(b)(6) witness there testified that National Foam's Universal Gold 1%/3% AFFF was present at that Site between 1999-2014,[8] and that it was used weekly during that same timeframe.[9] Moreover, deposition testimony of National Foam witness, Anne Regina, confirmed that at times entire lines of Universal Gold were formulated using DuPont's Forafac 1157N.[10] In fact, in 2013, one of the years where Universal Gold was being used by City of Hialeah, discovery illustrated that the entire National Foam product line was based on DuPont's Forafac 1157N.[11] ████████████ ████████████████████████,[12] also both years that Universal Gold was used by the City of Hialeah. Finally, MDL discovery likewise indicates that prior to 2002, when the Forafac product line was purchased by DuPont, including as relevant here between 1999-2002, Defendant Arkema manufactured Forafac 1157N and believes the fluorosurfacant was incorporated into AFFF,[13] and

---

[5] Fed. R. Civ. 30(b)(6) Dep. Tr. of Christopher Goins, dated Dec. 9, 2025, at 226:9-24; 230:4-10; 241:13-19, attached as Ex. B.

[6] *Id.* at 239:16-240:22.

[7] It is also worth noting that it was at Defendants' request that Plaintiffs produced Fed. R. Civ. 30(b)(6) witnesses rather than individual fact witnesses.

[8] Fed. R. Civ. 30(b)(6) Dep. Tr. Scott Disbrow, dated Dec. 4, 2026, at 55:16-23, attached as Ex. C. *Id.* at 63:24-64:19 (testifying as to his personal knowledge of Universal Gold being present at the site between 1999-2014)

[9] *Id.* at 85:1-15; 110:22-111:6 (testifying as to his personal knowledge of Universal Gold being used at the site between 1999-2014).

[10] Dep. Tr. of Anne Regina, dated Dec. 1, 2020, at 85:24 - 86:5-10, attached as Ex. D.

[11] NF000437188, attached as Ex. E.

[12] Kidde_Defendants_00044584-85 and Kidde_Defendants_00018877 at 903-904, attached as Exs. F and G, respectively.

[13] Defendant Arkema Inc.'s Responses and Objections to Plaintiffs' First Set of Requests for Admission, at Response No. 5, attached as Ex. H.

hundreds of thousands of pounds of 1157N were shipped to Universal Gold AFFF manufacturer National Foam between 1999 and 2002.

Despite the testimony and discovery documents, DuPont claims that there is no testimony or documentation of presence of Universal Gold at the site prior to 2010, and no documentation of which surfactant was used. Both arguments are wrong. As cited above, there is sworn testimony both as to use and presence of National Foam's Universal Gold at City of Hialeah, and discovery documents identify multiple years where DuPont's Forafac 1157N was the surfactant of choice for formulating Universal Gold, which are likewise years that Universal Gold was used by City of Hialeah, thereby making DuPont a properly identified Defendant in the City of Hialeah.

Similarly, Arkema's own discovery responses acknowledge that it manufactured 1157N during the time National Foam's Universal Gold was used at City of Hialeah, and, again, hundreds of thousands of pounds were sold to National Foam between 1999-2002, when National Foam's Universal Gold was used by the City of Hialeah.

Again, while Plaintiffs believe that product identification is complex in these cases requiring both expert and further fact discovery (beyond the presumptive limits set forth in CMO 32) given the multiple layers of Defendants along the AFFF market supply chain, Plaintiffs nonetheless have been able to tie upstream Defendants, including both raw material and fluorosurfactant manufacturers, to particular AFFF products in most cases, using both direct and circumstantial evidence, as the City of Hialeah example illustrates. The requisite level of proof that Defendants appear to be requiring with respect to product identification, even before a full discovery record has been developed, however, is beyond what the law requires and likely cannot be met in some circumstances. The law does not require 100% certitude for Plaintiffs to carry their burden of proof. The evidence adduced to date satisfies Plaintiffs' burden.

### CMO 32 Should Continue to the Next Phase

Plaintiffs anticipate that Defendants will suggest that no further proceedings should take place with respect to the CMO 32 Sites because focus should be on the personal injury docket and/or that every Defendant in every case should be entitled to make summary judgment motions now with respect to product identification.

First, it is Plaintiffs' position that summary judgment motions at this stage are premature because expert discovery is needed to buttress the product identification evidence as noted in footnote 4, *supra*. In fact, summary judgment briefing should not occur until after a full fact and expert discovery record is established as summary judgment is generally only appropriate after fulsome discovery. *See Givens v. Awtry*, 2025 U.S. Dist. LEXIS 271772, at *9 (D.S.C. Dec. 9, 2025)(noting that "[s]ummary judgment [should] be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition…"). As noted above, CMO 32 limited the number of depositions and written discovery permitted as part of the product identification discovery protocol. Further, because of the complexities involved in determining

product identification, which often will require both fact and expert discovery,[14] a full expert discovery record is critical to opposing any potential summary judgment motion.

Second, respectfully, many of the product identification arguments that have been raised to date, as illustrated by examples above, are entirely baseless, and thus engaging in a summary judgment-type briefing with respect to such meritless arguments regarding twelve (12) CMO 32 Sites and with at least nine (9) different Defendants does not seem to be a prudent use of time. Rather, as set forth below, Plaintiffs submit that a narrowed pool of bellwether cases should be selected to undergo additional fact discovery followed by a second narrowing of the bellwether pool that will undergo expert discovery and trial workup.

Finally, any arguments about distraction caused by the personal injury docket must be put to rest as those cases have been stayed for close to a year, and thus the time to move forward with the CMO 32 Sites on behalf of municipal property owners and Sovereigns is now.

### Proposed Next Steps

As noted above, and in their prior briefing on this subject, the PEC believes that now that the meet and confer process is complete and dismissals are in the process of being effectuated for those Defendants for which product identification is lacking, that a subset of the twelve (12) CMO 32 Sites should now go through a bellwether process undertaking additional fact discovery followed by expert discovery with respect to a smaller subset number of CMO 32 Sites.

With respect to the first narrowing of cases, Plaintiffs believe that four (4) cases should become the Tier One CMO 32 Bellwether Cases and that number should be whittled down to two (2) or three (3) following the conclusion of additional fact discovery. Then the final two or three Sites would proceed through expert discovery and trial workup, including *Daubert* and summary judgment with those cases being the Tier Two CMO 32 Bellwether Cases.

With respect to the selection of the Tier One CMO 32 Cases, Plaintiffs believe that certain considerations are paramount in the selection of these cases, including: (1) the extent to which the CMO 32 Site has any state regulation(s) that require(s) remediation and/or cleanup of the CMO 32 Site; (2) the strength of the product identification evidence to date; (3) the overall number of Defendants that are captured in a particular CMO 32 Site; and (4) the damages/dollars spent on clean up and remediation efforts.

It is Plaintiffs' position that as the party bearing the burden of proof, they should be entitled to select the four (4) CMO 32 Sites that become the Tier One CMO 32 Bellwether Cases and go through the Tier One discovery process ("Core Discovery").[15] The selection of these cases would take into account the four considerations identified above, which Plaintiffs believe are critically

---

[14] Importantly, again, because expert discovery will likely require sampling events, there are significant logistical challenges that will be encountered, including the likely drafting of sampling protocols to ensure all necessary sampling is obtained.

[15] Prior to the close of Core Discovery, the parties would submit a proposed process for the selection of these Tier Two Cases, as well as a scheduling order to govern same.

important to litigating these cases. This Core Discovery would include limited written discovery allowing the parties to propound a maximum of twenty (20) interrogatories and twenty (20) requests for production. Likewise, deposition discovery would be subject to a presumptive limit of three (3) depositions taken by Defendants and three (3) taken by Plaintiffs of each Defendant listed on the Plaintiffs' Final Product ID List.

Alternatively, if the Court is inclined to allow Defendants to likewise make bellwether selections, then Plaintiffs propose that the parties meet and confer to try to reach agreement on which of the CMO 32 Sites should become the Tier One CMO 32 Bellwether Cases, and to the extent there is disagreement with respect to any of the four, then each side would be entitled to submit a brief articulating why it believes its CMO 32 Site selection(s) are appropriate representative bellwethers.

## <u>Conclusion</u>

The PEC recognizes the Parties are continuing to work hard on personal injury docket control issues but understand this process to be at or nearing completion, which makes room for furthering the process of moving these property damage cases along at a reasonable pace. Progress on the CMO 32 Sites is important because: (1) it keeps the MDL moving; (2) it allows representative cases involving airports and fire training facilities (owned by both local and state governments) to complete the discovery process; and (3) it will buttress the very important identification of upstream Defendants through the expert discovery process.

We thank the Court for its continued time and courtesies.

Respectfully submitted,

s/*Michael A. London*
Michael A London
Douglas and London PC
One State Street
35th Floor
New York, NY 10004
P: (212)-566-7500
F: (212)-566-7501
mlondon@douglasandlondon.com

Scott Summy
Baron & Budd, P.C.
3102 Oak Lawn Avenue
Suite 1100
Dallas, TX 75219
P: (214)-521-3605
ssummy@baronbudd.com

Joseph F. Rice

Motley Rice
28 Bridgeside Boulevard
Mt. Pleasant, SC 29464
P: (800) 768-4026
jrice@motleyrice.com

*Co-lead Counsel for Plaintiffs*

Enclosures

cc: All Counsel of Record (via ECF)