

28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
**o.** 843.216.9000   **f.** 843.216.9450

www.motleyrice.com

"I will stand for my client's rights.
I am a trial lawyer."
–Ron Motley (1944–2013)

**Fred Thompson III**
*Licensed in South Carolina*
direct:  843.216.9118
fthompson@motleyrice.com

August 7, 2026

<u>**VIA ECF**</u>

Hon. Richard Mark Gergel
U.S. District Court for the District of South Carolina
83 Meeting Street
Charleston, South Carolina 29401

Re: *In re AFFF Products Liability Litigation*, MDL No. 2:18-mn-2873-RMG

Dear Judge Gergel:

On behalf of the Plaintiffs' Executive Committee ("PEC"), we briefly respond to the July 31, 2026, Letter-brief submitted by Defendants [ECF No. 10527] ("submission").

The PEC will not repeat the arguments set forth in its July 31, 2026, Letter-brief ("Plaintiffs' Brief") [ECF No. 10526]. Instead, we address the portions of Defendants' submission that mischaracterize Plaintiffs' position on two issues: what constitutes a "defective" AFFF and what constitutes a "safer alternative" AFFF design.[1, 2]

First, as to what constitutes a "defective" AFFF, Plaintiffs have consistently maintained that telomer-derived AFFFs are defective because they intentionally incorporated fluorosurfactants containing C8 molecules capable of degrading to PFOA (i.e., C8 molecules that are PFOA precursors). Contrary to Defendants' submission, defectiveness is not based on a specific percentage of C8 molecules in the final product. Rather, it turns on whether the AFFF contained a fluorosurfactant(s) containing intentionally added PFOA precursors, which resulted in telomer-derived PFOA contamination in the environment.

Generally, that will *not* include AFFFs with only trace, unintended levels of PFOA or its precursors and will include AFFFs with greater percentages of PFOA precursors. But even lower percentage levels of PFOA precursors can result in PFOA contamination from AFFF if there is sufficient volume of AFFF use, and no other PFOA source exists at a particular CMO 32 Site. There is, therefore, no specific threshold of PFOA precursor molecules to determine "defectiveness" as Defendants suggest.

---

[1] Much of the discussion regarding a safer alternative AFFF is dependent on whether applicable state law requires proof of a safer alternative design as an element of a design defect claim.

[2] Of note, Defendants argue the CMO 32 cases should be stayed because of the personal injury docket and the newly proposed water provider settlements. But, again, the personal injury CMO 35/37 process is nearing completion, and water provider settlements and their administration have been ongoing since 2023, while the parties continued to litigate. Thus, neither provides a valid basis to further delay CMO 32 proceedings.

MT. PLEASANT, SC | MORGANTOWN, WV | CHARLESTON, WV | PROVIDENCE, RI | WASHINGTON, DC | CHERRY HILL, NJ
PHILADELPHIA, PA | HARTFORD, CT | NEW ORLEANS, LA | KANSAS CITY, MO | NEW YORK, NY



Second, as it pertains to what constitutes a "safer alternative" AFFF design, the same principle applies. Contrary to Defendants' submission, a "C6-based" AFFF is not *ipso facto* non-defective. "C6 based" does not mean PFOA free, and "C6 based" foams can and do cause PFOA pollution. Whether a specific AFFF is a safer alternative is a fact-specific inquiry and cannot be resolved simply by characterizing a particular AFFF as C6-based or C8-based. Take, for example, Tyco/Ansul's AFC-5 and AFC-5A. As early as 1982, these AFFFs were approved for inclusion on the Department of Defense's Qualified Product List ("QPL"), included predominantly C6-surfactants, and met the AFFF MilSpec.

).[5]

In short, Defendants' oversimplification of the distinction between a "C8" versus "C6" AFFF entirely misses the mark. This also demonstrates the importance of expert discovery, including soil and water sampling identifying telomer-derived PFOA, to confirm the use of telomer-derived AFFFs at a particular CMO 32 Site and the extent to which such telomer-derived AFFFs contained PFOA precursors.

Finally, because Plaintiffs have identified Defendant(s) for which a good faith evidentiary basis to establish product identification exists, and dismissed those Defendants where product identification was lacking, Plaintiffs respectfully reiterate their request that the CMO 32 Sites begin a bellwether process as set forth in Plaintiffs' Brief.

We thank the Court for its continued time and courtesies.

Respectfully submitted,

---

[3] Excerpts of the Expert Report of Chris Higgins, dated Feb. 5, 2025; at 42 – 46 attached as Ex. A.
[4] *Id.* Table 7; at 44.
[5] Kidde Defendants 00151887-89                                                        attached as Ex. B;
*see also*, AFFFTC00146539-54, at 41, 45-46; 51-54
                    attached as Ex. C.
[6] AFFFTC00001528-33, at 1528
                attached as Ex. D.



August 7, 2026
Page 3


Fred Thompson, III

***Plaintiffs' Liaison Counsel***

Michael A London
Douglas and London PC
One State Street
35th Floor
New York, NY 10004
P: (212)-566-7500
F: (212)-566-7501
mlondon@douglasandlondon.com

Scott Summy
Baron & Budd, P.C.
3102 Oak Lawn Avenue
Suite 1100
Dallas, TX 75219
P: (214)-521-3605
ssummy@baronbudd.com

Joseph F. Rice
Motley Rice
28 Bridgeside Boulevard
Mt. Pleasant, SC 29464
P: (800) 768-4026
jrice@motleyrice.com

*Co-lead Counsel for Plaintiffs*

Enclosures

cc: All Counsel of Record (via ECF)

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was electronically filed with this Court's CM/ECF on this 7th day of August, 2026 and was thus served electronically upon counsel of record.

/s/ Fred Thompson, III