**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | |
|---|---|
| **IN RE: AQUEOUS FILM-FORMING FOAMS PRODUCTS LIABILITY LITIGATION** | **MDL No. 2873**<br><br>**Master Docket No. 2:18-mn-2873**<br><br>**This Document Relates to:**<br><br>***The People of the State of California, ex rel. Rob Bonta, Attorney General of California v. 3M Company et al.***<br><br>**Case No. 2:23-cv-01531-RMG** |

**DECLARATION OF BENJAMIN STANPHILL IN SUPPORT OF THE PEOPLE OF THE STATE OF CALIFORNIA'S MOTION FOR TEMPORARY RESTRAINING ORDER AND FOR PRELIMINARY INJUNCTION**

I, Benjamin Stanphill, declare as follows:

1. The facts stated in this declaration are based on my personal knowledge and information from California Department of Toxic Substances Control ("DTSC") staff on the sites named below.

2. I have been employed by DTSC since August 9, 2022. I am the Southern California Division Chief for the California Department of Toxic Substances Control's Site Mitigation and Restoration Program. I oversee approximately one hundred staff in the Site Mitigation and Restoration Program, described further below.

3. DTSC's Site Mitigation and Restoration Program is responsible for overseeing the evaluation and cleanup of contaminated properties throughout the state of California, including brownfields and voluntary agreements, State Superfund, military facilities, school construction and expansion projects, and corrective action facilities. The Site Mitigation and Restoration Program is divided into four regions, along with branches for special projects and technically focused groups. The Site Mitigation and Restoration Program includes project management staff

along with subject-matter experts such as geologists, toxicologists, and California Environmental Quality Act specialists.

4. DTSC's Site Mitigation and Restoration Program conducts and/or oversees response actions under various state laws in Divisions 20 and 45 of the California Health and Safety Code, including but not limited to the Hazardous Substances Account Act ("HSAA"), California Health and Safety Code section 78000 et seq., and the Hazardous Waste Control Law ("HWCL"), California Health and Safety Code section 25100 et seq. Our program also supports cleanup work under the HSAA's federal counterpart, the Comprehensive Environmental Response, Compensation and Liability Act of 1980, 42 U.S.C. § 9601 et seq. ("CERCLA") and the HWCL in lieu of its federal counterpart, the Resource Conservation and Recovery Act of 1976, 42 U.S.C. § 6901 et seq. ("RCRA"). While I am not a lawyer and offer no legal opinion, I am familiar with how these laws function in the program I supervise.

5. Under CERCLA, the United States Environmental Protection Agency ("USEPA") may place a site on the National Priorities List ("NPL") and implement environmental cleanups at the federal government's cost if no Responsible Party is identified and the risk to human health and the environment is sufficient. At these types of sites, known as "fund-lead" NPL sites, the State of California is liable for a 10% cost share of building and implementing the chosen environmental remedy, and is responsible for 100% of any ongoing operation and maintenance costs after the remedy has been certified as operational and functional per a transfer agreement between USEPA and DTSC.

6. The State of California may also implement environmental remedies on projects under the HSAA at the State's costs if an imminent and substantial endangerment is present due to a release of hazardous substances to the environment.

7. As noted on our public website[1], when Responsible Parties cannot be found or are unable or unwilling to provide a timely cleanup, DTSC uses California State funding to conduct

[1] California Dept. of Toxic Substances Control, Site Mitigation & Restoration Program, https://perma.cc/JM98-7TUL (last accessed on Sept. 11, 2026).

the appropriate response actions and later seeks to recover costs from Responsible Parties. Hazardous substances release sites or properties without financially viable Responsible Parties are known as "Orphan Sites." Orphan Sites include an array of projects that come from California's industrial past, including fund-lead NPL and State-lead HSAA sites, and as such, these represent a diverse scale and scope of hazardous substances releases that DTSC is tasked to work on each day. DTSC's response actions at Orphan Sites are funded annually from the Site Remediation Account ("SRA"). The SRA receives funds transferred through the annual State Budget Act, upon appropriation by the Legislature, pursuant to Health & Safety Code section 25337(a).

8. DTSC currently spends approximately $40 million per year on direct site remediation costs for Orphan Sites.[2]

9. DTSC has recently published the Human and Ecological Risk Office Human Health Risk Assessment ("HHRA") Note 13: Guidance for Evaluating Human Health Risk at Sites Contaminated by Per- and Polyfluoroalkyl Substances ("PFAS").[3] This HHRA Note addresses the characterization and evaluation of the potential risks and hazards at sites contaminated with PFAS, including perfluorooctanoic acid ("PFOA") and perfluorooctanesulfonic acid ("PFOS"). Some of the actions to address PFAS detailed in the HHRA Note include determining sources of PFAS contamination; taking samples of water, soil, and air; conducting a risk assessment to determine the potential effects on human health and the environment; and setting remediation goals to guide remediation activities.

10. I understand that on May 8, 2024, USEPA issued a final rule designating PFOA and PFOS as hazardous substances under CERCLA, with an effective date of July 8, 2024.[4] The

---

[2] *See* California Dept. of Toxic Substances Control, 2026-2027 Estimated Direct Site Remediation Costs (2026), https://perma.cc/W37Z-MVH4 (last accessed on Sept. 11, 2026).

[3] *See* California Dept. of Toxic Substances Control, Human and Ecological Risk Office (HERO) Human Health Risk Assessment (HHRA) Note 13, June 2026, https://perma.cc/33MR-JYQ4 (last accessed on Sept. 11, 2026).

[4] Designation of Perfluorooctanoic Acid (PFOA) and Perfluorooctanesulfonic Acid (PFOS) as CERCLA Hazardous Substances, 89 FR 39124-01 (May 8, 2024).

United States Court of Appeals for the D.C. Circuit recently upheld that designation under CERCLA in *Chamber of Commerce of the United States of America, et al. v. Environmental Protection Agency, et al.* No. 24-1193, 2026 WL 2409748 (D.C. Cir. Aug. 18, 2026).

11. In light of that designation, the State of California will have to bear high costs to clean up PFAS at Orphan Sites, both to meet remedial action objectives for the protection of human health and the environment, and to meet discharge standards for disposal of treated groundwater. As these PFAS are widespread in the environment, adding them to the list of contaminants already addressed by remediation efforts at Orphan Sites will significantly increase the costs of those efforts.

12. I provide the following recent example of a groundwater treatment project that DTSC oversees to illustrate the possible scale of additional costs that the State of California will incur in remediating Orphan Sites. DTSC operates two large, groundwater treatment plants for the San Gabriel Valley Superfund site: a 3,680 gallon per minute ("gpm") groundwater treatment plant for the South El Monte Operable Unit ("SEMOU") and a 2,800-gpm groundwater treatment plant for the Whittier Narrows Operable Unit ("WNOU"). The SEMOU and WNOU Treatment Plants treat extracted groundwater for volatile organic compounds ("VOCs") using liquid granular activated carbon ("LGAC") prior to discharging the treated water. As a result of PFOS and PFOA being designated as hazardous substances, DTSC must now use a higher grade of LGAC to treat extracted groundwater to remove these constituents as well as VOCs, and the usage rate for that LGAC has increased, meaning costs have increased. DTSC estimates that the annual cost increase attributable to PFAs will be $430,700 at SEMOU and $189,600 at WNOU. These increased costs would likely be required for any groundwater extraction and treatment system that addressed these PFAS and that DTSC operates now or will operate in the future.

13. While the San Gabriel Valley Superfund site's primary contaminants of concern are VOCs, PFAS contamination in groundwater will be remediated in a similar manner: using LGAC. Since 2013, DTSC has spent $20,609,000 on remediation at the San Gabriel Valley Superfund site. While this site is one of the larger sites DTSC administers, it provides a rough

scale of the funds the State has been required spend to remediate a single contaminated site. In my experience, even smaller remediation sites for VOCs in groundwater require at least $5 million to remediate over the life of the site.

14. The costs that DTSC is likely to incur are very large.

(a) Total treatment costs for the South El Monte and Whittier Narrows Operable Units of the San Gabriel Valley Superfund Site over the projected 70-year (or longer) duration of the remediation are projected to be on the order of $5,000,000 per year going forward, which equates to $350,000,000 over this time frame (not adjusted for present value). The incremental PFAS treatment cost increases at San Gabriel Valley Superfund site are at least $600,000 per year for at least 70 years, which equates to $42,000,000 over this time frame (not adjusted for present value). PFAS treatment costs are expected to increase the cost to treat the San Gabriel Valley Superfund Site costs by at least 12 percent.

(b) DTSC also manages or expects to manage six or more regional groundwater remediation projects. Because these remedies take several decades to complete, and because PFAS dissolve and migrate rapidly and persistently, these additional remediation projects may see costs rise more than 12 percent due to PFAS remediation measures, i.e. 12 percent likely understate DTSC's potential costs for this work.

15. The above examples do not include costs for remediation of PFAS in soil or soil vapor. DTSC is not currently implementing PFAS cleanup in soil or soil vapor at any Orphan Site. If DTSC were to clean up PFAS in soil or soil vapor, significant additional costs would be incurred. Because no comprehensive investigation of PFAS contamination in all California soil and waters presently exists, an estimate would necessarily and significantly undervalue DTSC's potential statewide costs to address PFAS at known and unknown release sites.

16. DTSC's EnviroStor database[5], which contains information regarding all active and completed site investigations that DTSC oversees, includes 51 sites with PFAS listed as a contaminant of concern. DTSC will incur costs overseeing the remediation at each site and may have to contract for and fund some of these remediation efforts.

17. I expect the number of sites requiring remediation due to PFAS contamination to grow markedly due to the CERCLA listing of PFOS and PFOA.

18. In my professional opinion and based on my experience with DTSC, I expect the number of Orphan Sites DTSC oversees and the costs DTSC bears to clean up PFAS at those sites to significantly increase as DTSC receives more PFAS sampling data to identify sites needing cleanup.

19. DTSC works closely with the California State Water Resources Control Board ("Water Board") on coordinating cleanup activities at contaminated sites. The Water Board maintains the GeoTracker[6] database, which is similar to DTSC's EnviroStor database, in that it contains information on site cleanups and investigations the Water Board oversees. The GeoTracker database currently lists more than 400 sites with PFAS as contaminants of concern. I anticipate that DTSC's expertise and oversight will be required to address PFAS contamination at many of these sites in light of the CERCLA listing of PFOS and PFOA. Accordingly, I expect that DTSC will expend significant resources to manage sites with PFAS contamination, especially sites that are Orphan Sites.

20. Finally, DTSC expects to incur additional administrative costs to manage PFAS sites across the State. PFAS sites produce complex, multi-media datasets requiring ongoing updates to DTSC's data systems, tracking tools, and reporting platforms. Such site remediation work also requires expanded community engagement to provide the necessary updates, including translation services, technical assistance, and coordination with vulnerable communities. Finally,

[5] California Dept. of Toxic Substances Control, EnviroStor, https://envirostor.dtsc.ca.gov/public/ (last accessed on Sept. 11, 2026).

[6] Cal. State Water Resources Control Board, GeoTracker, https://geotracker.waterboards.ca.gov/ (last accessed on Sept. 11, 2026).

DTSC's staff will require ongoing training as the science, regulations, and cleanup technologies surrounding PFAS continue to evolve. All of these administrative activities involve significant expense.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 11th day of September, 2026, in Cypress, California.

By: ______________________________

Benjamin Stanphill
Southern California Division Chief
Department of Toxic Substances Control