**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| **IN RE: AQUEOUS FILM-FORMING FOAMS PRODUCTS LIABILITY LITIGATION** | MDL No. 2:18-mn-2873-RMG<br><br>**ORDER**<br><br>**This Order Relates to:**<br>*The People of State of California, ex. rel. Rob Bonta, Attorney General of California v. 3M Company et al.*<br>**Case No. 2:23-cv-1531-RMG** |

This matter comes before the Court on Plaintiff the State of California's motion for a temporary restraining order and temporary injunction enjoining the splitting of Defendant Corteva, Inc. into two companies, with assets relating to crop protection products remaining with Corteva and assets relating to seed products spun off into a company to be known as Vylor, Inc. (Dkt. No. 11582, 2:18-mn-2873-RMG); (2:23-cv-1531-RMG, Dkt. No. 61). Plaintiff alleges that this proposed split of Corteva into two separate companies represents "the next step in the Dupont Defendants' continuing scheme to shed their profitable assets beyond the reach of creditors." Corteva filed a response in opposition to Plaintiff's motion. (Dkt. No. 11616).

Plaintiff has alleged since its original complaint, (Dkt. No. 1-1), filed in this Court on December 20, 2022, that various Dupont-related entities have engaged in a methodical scheme to transfer assets to avoid exposure to massive alleged liabilities from their role in the manufacture of products related to Aqueous Film-Forming Foams (AFFF). Plaintiff has challenged as fraudulent transfers the spinning off of assets among a broad range of Dupont-related entities, including Corteva, Inc., E.I. Du Pont de Nemours and Company (a/k/a EIDP, Inc., referred to as "Old DuPont"), Chemours Company, Chemours Company FC, LLC, DuPont de Nemours, Inc.

(f/k/a DowDupont Inc, and referred to as "New Dupont"), and Qnity Electronics, Inc. (Dkt. No. 61-1 n. 2).

In Plaintiff's original complaint and in both its amended complaints, Plaintiff has alleged a cause of action for fraudulent transfer based upon California Civil Code § 3439 *et seq*. (Dkt. No. 1-1 at 74-78; 53 at 118-125; 58 at 118-125). In its Second Amended Complaint, filed just weeks ago on September 10, 2026, Plaintiff described in even greater detail what it alleges to be a series of fraudulent schemes to transfer assets off from Old Dupont "to evade creditors, like the People, by covering up the transfer of Old Dupont's valuable assets" and receiving inadequate consideration in return. (Dkt. No. 58 at 69). Plaintiff's Seventh Cause of Action in its current complaint, directed solely at the Dupont Entities, alleges claims arising under a variety of sections of California Civil Code § 3439 for actual fraudulent transfer and constructive fraudulent transfer. (*Id*. at 118-125). Plaintiff seeks, as a remedy for these alleged fraudulent transfers by the Dupont Entities, to void all of the transfers of assets "to the extent necessary to satisfy the People's claims." (*Id*. at 126). The recently filed Second Amended Complaint makes no mention, however, of the Corteva/Vylor transaction.

The record before the Court demonstrates that Plaintiff began raising objections to Corteva's proposed spinning off of assets to the company to be known as Vylor since at least December 4, 2025. (Dkt. No. 63-1). Further, in an email to counsel for the Dupont Entities dated May 29, 2026, Plaintiff's counsel expressed disappointment with the unwillingness of Corteva to modify its planned transaction and indicated that Plaintiff would file a motion challenging the transaction "at the appropriate time." (Dkt. No. 63-2 at 2-3).

Despite Plaintiff's long asserted objections to the proposed Corteva/Vylor transaction, it did not file its motion to enjoin the transaction with this Court until September 14, 2026, 17 days

before the announced closing date of the transaction. In addition to its memorandum in support of its motion, Plaintiff filed voluminous documents totaling more than 1,200 pages. (Dkt. No. 61). Moreover, Plaintiff fails to explain in its motion for temporary injunctive relief how the Corteva/Vylor transaction differs in any substantive way from the other Dupont Entity transactions it has challenged since the inception of this litigation or why the State does not have an adequate remedy at law under California Civil Code § 3439 to challenge and potentially void transfers of assets "to the extent necessary to satisfy the People's claims," as it plainly has asserted in each of its three complaints.

Rule 65 of the Federal Rules of Civil Procedure provides that the Court may issue a TRO or a preliminary injunction based upon the following four factors: (1) the movant's likelihood of success on the merits, (2) whether the movant will face irreparable harm in the absence of preliminary relief, (3) whether the balance of equities favors preliminary relief, and (4) whether injunctive relief is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *see also Moore v. Kempthorne*, 464 F. Supp. 2d 519, 525 (E.D. Va. 2006) ("The standard for granting either a TRO or a preliminary injunction is the same."). In general, a party is not entitled to a preliminary injunction unless it can show that there could be no adequate remedy at law. *Pulliam v. Allen*, 466 U.S. 522, 538 (1984). Further, "a party requesting a preliminary injunction must generally show reasonable diligence." *Benisek v. Lamone*, 585 U.S. 155, 159 (2018) (per curiam) (noting principal applies "in election law cases *as elsewhere*") (emphasis added). Parties may not "manufacture a sense of urgency that is not supported by plaintiff's own conduct." *See Krueger Int'l, Inc. v. Nightingale Inc.*, 915 F. Supp. 595, 613 (S.D.N.Y. 1996) (Sotomayor, J.). Accordingly, in *Benisek*, the Supreme Court affirmed the denial of a preliminary

injunction where "plaintiffs' unnecessary, years-long delay in asking for preliminary injunctive relief weighed against their request." 585 U.S. at 159-60.

Here, multiple reasons exist for denying Plaintiff's motion. First, though Plaintiff has known about the challenged transaction since at least December 4, 2025, it waited until 17 days before the challenged transaction was to close to file the instant motion. This was not the "appropriate time" to file such a motion—a motion with over 1200 pages of exhibits, including expert reports obviously prepared well in advance. Said simply, Plaintiff's actions do not evidence "reasonable diligence." *Benisek*, 585 U.S. at 159. Instead, they appear to be a tactical choice aimed at manufacturing urgency, limiting Corteva's time to respond, and impeding reasoned judicial decision making. In sum, Plaintiff's self-imposed delay was unreasonable, and implies a lack of irreparable injury—a point the Court elaborates on below. *Cf. Beame v. Friends of the Earth*, 434 U.S. 1310, 1313 (1977) (Marshall, J., in chambers) ("The applicants' delay in filing their petition and seeking a stay vitiates much of the force of their allegations of irreparable harm."); *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 276 (2d Cir. 1985) (noting the "failure to act sooner undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief").

A separate, independent reason exists for denying Plaintiff's motion. Plaintiff has not shown irreparable harm. In its amended complaint, filed just days before the motion for TRO, Plaintiff pleaded a fraudulent transaction claim under state law against the DuPont Entities. *See* (Dkt. No. 58 at 118). To the extent Corteva's pending transaction is consummated on October 1, 2026, Plaintiff can seek the identical relief against the new entities *it already seeks*, in its operative complaint, against the existing DuPont Entities. Said simply, remedies at law will be available to Plaintiff to compensate any alleged harm, defeating the appropriateness of injunctive relief. *Pulliam*, 466 U.S. at 538 (moving party must show "an inadequate remedy at law and of a serious

risk of irreparable harm"); *Am. Fed'n of State, Cnty. & Mun. Emps., AFL-CIO v. Soc. Sec. Admin.*, 172 F.4th 361, 372 (4th Cir. 2026) ("If there is even a 'possibility' that 'adequate compensatory or other corrective relief will be available at a later date,' a court should hesitate before concluding a plaintiff's harm is 'irreparable' for purposes of granting a preliminary injunction.").

In sum, for the reasons stated above, Plaintiff's motion for TRO and preliminary injunction (Dkt. No. 11582) is **DENIED**.

**AND IT IS SO ORDERED.**

s/ Richard Mark Gergel
Richard Mark Gergel
United States District Judge

September 30, 2026
Charleston, South Carolina