**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| **IN RE: AQUEOUS FILM-FORMING FOAMS PRODUCTS LIABILITY LITIGATION** | **MDL No. 2:18-mn-2873-RMG**<br><br>*This Document Relates To*:<br>See Exhibit A Attached Hereto |

**PLAINTIFFS' OBJECTIONS TO SPECIAL MASTER'S REPORT AND RECOMMENDATION
(As To Plaintiffs Listed In Exhibit A)**

On September 24, 2026 the Court appointed Judge Seymore to act as a Special Master regarding Defendants' Motions to Dismiss Under Case Management Order (CMO) 37, filed at ECF No. 10692. On October 13, 2026 Special Master Seymour issued a Report and Recommendation addressing this motion. (ECF No. 11839). (The "Special Master's Report" and/or "the R&R"). Plaintiffs listed in Exhibit A, through undersigned counsel, respectfully object to the Special Master's Report, to the extent it recommends dismissal without prejudice of personal injury Plaintiffs who have timely submitted Plaintiff Fact Sheets but have not yet completed production of medical records. These Plaintiffs have litigated in good faith and stand ready to participate in discovery to ascertain the full extent of their injuries. The mere fact that they have not yet been able to produce medical records does not reflect a lack of merit to their claims. The fact that Plaintiffs have simply not yet obtained compliance from third party medical offices does not justify dismissal of their claims without an opportunity to be heard on the merits.

## I. STANDARD OF REVIEW

The Court retains ultimate responsibility for determining whether dismissal is an appropriate sanction. While the Special Master recommends dismissal under Rule 41(b), dismissal

remains an extraordinary remedy that should be employed only where lesser alternatives are inadequate and where the equities justify depriving plaintiffs of their claims. As the Fourth Circuit has explained, there is a "strong policy that cases be decided on the merits" and "dismissal without deciding the merits is the most extreme sanction". *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 462 (4th Cir. 1993). Before considering such a dismissal, the Court must consider factors including:

> (1) the degree of the wrongdoer's culpability; (2) the extent of the client's blameworthiness if the wrongful conduct is committed by its attorney . . .; (3) the prejudice to the judicial process and the administration of justice; (4) the prejudice to the victim; (5) the availability of other sanctions to rectify the wrong by punishing culpable persons, compensating harmed persons, and deterring similar conduct in the future; and (6) the public interest.

*Id.* Plaintiffs respectfully submit that these factors do not support dismissal in this case, particularly where the Court has less extreme sanctions available to it as discussed below.

## II. THE REPORT ERRONEOUSLY TREATS PLAINTIFFS WHO SUBMITTED FACT SHEETS THE SAME AS PLAINTIFFS WHO FAILED TO PARTICIPATE IN THE LITIGATION

The R&R recommends dismissal of two very distinct groups: those who failed to submit a Plaintiff Fact Sheet, and those submitted a complete Plaintiff Fact Sheet but continue to seek medical records to support that discovery document. While the R&R addresses both groups, it does not meaningfully recognize the very real distinction between those two groups. The R&R states that plaintiffs listed in Exhibit B "have failed to provide the requisite PFS and/or medical records". R&R at 3. But the Special Master did not distinguish between those Plaintiffs who failed to submit anything, versus those like Plaintiffs listed in Exhibit A hereto that only failed to produce supporting medical records. That distinction matters a great deal.

A plaintiff who has submitted a completed Plaintiff Fact Sheet has demonstrated an intent to prosecute his or her claim, has provided individualized claim information, has identified the alleged injury, and has substantially complied with the Court's case management procedures. The Special Master's Report effectively eliminates the distinction between a plaintiff who ignored Court orders and a plaintiff who has actively participated in the litigation but remains dependent upon third parties for medical records. Such treatment is inconsistent with the graduated framework established by the Court's Case Management Orders as well as fundamental notions of proportionality and fairness.

## III. PLAINTIFFS SHOULD NOT BE PENALIZED FOR DELAYS ATTRIBUTABLE TO THIRD-PARTY MEDICAL PROVIDERS

The Special Master's Report fails to account for the reality that production of medical records often rests entirely in the hands of non-parties. Obtaining medical records necessarily depends upon hospitals, physicians, clinics, record custodians, retrieval vendors, and other third parties over whom neither plaintiffs nor their counsel can exercise control. Plaintiffs who diligently request records, execute authorizations, and repeatedly follow up with their providers can still encounter substantial delays due to provider backlogs, record-retention issues, facility closures, mergers, ownership changes, or administrative failures.

The R&R acknowledges that many plaintiffs sought additional time because counsel was still obtaining information needed to evaluate claims. Nevertheless, it recommends dismissal because counsel purportedly "have had months, if not years, to obtain and supply" information about their clients. R&R at 3. That argument oversimplifies the issue where the relevant inquiry is not whether counsel has devoted sufficient time pursuing the missing records but if the plaintiffs themselves should forfeit their claims because independent medical providers have failed to timely respond to requests for records. The answer should be no since dismissing otherwise compliant

plaintiffs on this basis would merely punish them for the sins of third-party custodians who have failed to timely respond to their records requests.

## IV. THE REPORT FAILS TO ADEQUATELY CONSIDER LESSER ALTERNATIVES TO DISMISSAL

The Fourth Circuit requires consideration of available alternatives before dismissal. Plaintiffs expressly proposed numerous alternatives in their opposition, including:

- Providing additional time for production;
- Issuant of judicial subpoenas directed to record custodians;
- A Case Management Order for an expert review processes;
- Scheduling of independent medical examinations;
- Ongoing status reporting requirements; and
- Placement of cases on an inactive or administrative docket pending supplementation.

Each of these tools would allow the parties to assess these cases while avoiding the severe consequences inherent in a dismissal without consideration of the merits of the case.

The Special Master's Report  does not meaningfully address these alternatives. Instead, it concludes that dismissal is warranted because the Court must efficiently manage the MDL and because missing records allegedly prejudice defendants. However, administrative remedies can achieve those same goals without extinguishing potentially meritorious claims.

Indeed, the record before the Court demonstrates that continued efforts to obtain records have borne fruit and that a less extreme approach can be effective here. Plaintiffs in their opposition to Defendants' motions represented that records continued to be obtained every day and that numerous plaintiffs cured their alleged deficiencies after the motions were filed. In fact, the history of motions brought pursuant to CMO 37 proves that to be true. Defendants' June 2026 motions originally sought dismissal of approximately 18,000 Plaintiffs, they later withdrew those motions with respect to approximately 5,000 plaintiffs who either voluntarily dismissed or cured the deficiencies while the motions remained pending. (ECF No. 11371). In fact, after Judge Seymore

issued her Report and Recommendation regarding those motions, Defendants filed another motion to withdraw their efforts to dismiss another approximately 800 plaintiffs. (See ECF No. 11667). In other words, in the three-month period since the motions were filed, they became moot as to about one-third of the plaintiffs for whom Defendants originally sought dismissal. This demonstrates that records continue to be produced on a rolling basis and plaintiffs whose efforts ultimately prove futile are opting out of the litigation without the need for the Court to enter dismissal orders. This means the discovery tools are working. The Court has not yet reached the point where it needs to employ the drastic remedy of dismissing cases on procedural grounds. This is particularly true as the Court should have various less severe tools available which it has yet to employ.

## V. THE ABSENCE OF PRESENTLY AVAILABLE MEDICAL RECORDS DOES NOT ESTABLISH THAT A CLAIM LACKS MERIT

The R&R appears to assume that the absence of records at present justifies removal of claims from the litigation as lacking merit. That assumption is unfounded. Injury and causation issues in complex toxic-tort litigation are routinely established through multiple forms of evidence, including medical records, pharmacy records, insurance records, treating physician testimony, lay testimony, expert opinions, and other documentary evidence.

Many AFFF plaintiffs received diagnoses years or decades before learning of any connection between PFAS exposure and their injuries. As Plaintiffs previously noted, locating historical records presents unique challenges because records may have been archived, destroyed pursuant to retention policies, or otherwise rendered difficult to obtain by the passage of time.

Of course, this issue is compounded by Defendants' long history of concealing the true dangers of their product. As this Court recognized, over a period of decades there were "numerous instances in which 3M knowingly withheld highly material information about the defects and risks

associated with its AFFF product". (See Order Dated September 16, 2022, ECF No. 2601 at 14-15). Those actions hid from Plaintiffs the existence of their claims and prevented many from preserving historical medical records before they were archived or destroyed. Dismissing claims for Plaintiffs who now cannot promptly produce those historical records only rewards Defendants' decades of concealing their wrongdoing and encourages other tortfeasors to act similarly.

Put simply, production of medical records is a discovery requirement. But the inability to immediately obtain decades-old records should not be used a proxy for whether a claim is meritorious. Lack of currently available documents does not establish that the injury never existed, that alternative evidence is unavailable, or that the plaintiff ultimately cannot satisfy his or her burden of proof. The R&R improperly transforms a case-management mechanism into a decision on the merits.

## VI. DISMISSAL WOULD FRUSTRATE THE GOAL OF RESOLVING CLAIMS ON THEIR MERITS

The Court's legitimate interest in efficient administration must be balanced against the rights of individual plaintiffs. Plaintiffs who completed fact sheets have demonstrated participation in the litigation, identified their claims, and attempted compliance. Unlike plaintiffs who have abandoned their cases altogether, these plaintiffs remain actively engaged and continue efforts to gather records from third parties. Dismissing such claims, even without prejudice, imposes substantial burdens on plaintiffs, risks the loss of claims that may ultimately prove meritorious, and does little to address the underlying problem of third-party record delays. The more equitable approach is to implement additional case-management measures designed to verify the existence of injuries and continue record collection efforts without removing plaintiffs from the litigation.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court decline to adopt the Special Master's recommendation as to plaintiffs who have submitted completed Plaintiff Fact Sheets but who remain engaged in good-faith efforts to obtain medical records from third-party providers. The Court should instead deny dismissal as to those plaintiffs or, alternatively, impose a less severe administrative remedy that permits continued record collection and development of alternative proof of injury before any dismissal is considered.

WHEREFORE, Plaintiffs represented by Napoli Shkolnik respectfully request that the Court overrule the Special Master's Report and deny Defendants' motions to dismiss in full or, in the alternative, grant the limited and tailored relief set forth above.

Dated: October 27, 2026

Respectfully submitted,

*/s/ Nicholas Mindicino.*
Nicholas Mindicino, Esq.
Napoli Shkolnik
360 Lexington Avenue, 11th floor
New York, NY 10017
(212) 937-1000, Ext. 1033
NMindicino@NapoliLaw.com

CERTIFICATE OF SERVICE

The undersigned hereby certifies that on October 27, 2026, a copy of the foregoing was filed electronically using the Court's Case Management/Electronic Case Filings System (CM/ECF). Notice of and access to this filing will be provided to all parties through CM/ECF.

*/s/ Nicholas Mindicino*
Nicholas Mindicino
Napoli Shkolnik PLLC
360 Lexington Avenue, 11th Floor
New York, NY 10017
(212) 937-1000, Ext. 1033
NMindicino@napolilaw.com