**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | |
|---|---|
| **IN RE: AQUEOUS FILM-FORMING FOAMS PRODUCTS LIABILITY LITIGATION** | **MDL No. 2:18-mn-2873-RMG**<br><br>**CASE MANAGEMENT ORDER NO. 40**<br><br>**This Order Relates to All Actions** |

# CASE MANAGEMENT ORDER NO. 40
**(Case Management Order for any Ongoing or Future Personal Injury Litigation against 3M)**

1. This Case Management Order ("CMO") No. 40 (the "Order"), which addresses any ongoing or future personal injury litigation against Defendant 3M Company ("3M")[1] applies to:

   a. All individuals alleging personal injury claim(s)[2] who were identified pursuant to the Court's CMO No. 39 (the "Identification Order") but who have not elected to participate in the Settlement Program or to become a Dismissal-Only Claimant, as outlined in the Master Settlement Agreement entered between the Negotiating Plaintiffs' Counsel ("NPC") and 3M on November 3, 2026 (the "3M PI MSA"); and

   b. All individuals alleging PFAS-related personal injury claim(s) of any nature against 3M who were not identified pursuant to the Court's Identification Order and whose cases are filed or pending in, refiled in, removed to, or transferred to this MDL on or after the date of this Order.

---

[1] For ease of reference, the Court uses the same defined terms herein as in the Master Settlement Agreement entered between the NPC and 3M on November 3, 2026.

[2] For purposes of this order "personal injury claim(s)" include derivative claims alleging personal injury to another person filed in or transferred to this Court.

2. Collectively, the individuals whose cases fall within any of the categories outlined in Paragraphs 1a and 1b above shall be referred to as "Litigating Plaintiffs." The obligations and requirements set forth in this Order are personal and binding on the individual Litigating Plaintiffs regardless of their use of counsel or subsequent changes in representation by counsel.

3. Consistent with the Court's inherent authority to manage these judicial proceedings, and in light of the 3M PI MSA entered in this MDL, the Court finds it appropriate at this time to exercise its discretion to enter this Order to fairly, effectively, and efficiently manage any cases going forward against 3M by the Litigating Plaintiffs.

4. This Order requires all Litigating Plaintiffs to produce certain specified information regarding their claim(s) and provides deadlines to meet certain requirements relating to alleged injury, causation, time-based defenses, and related motions practice, prior to any further supplemental discovery. All Litigating Plaintiffs, including those who represent themselves *pro se*, shall be bound by the requirements of this Order and shall fully comply with all obligations required by this Order, including all obligations required of Counsel by this Order, unless otherwise stated.

5. With the exception of complaints (see Paragraphs 15-18 below), all documents, reports, statements, verifications, and other materials or other information required to be served on 3M pursuant to this Order shall be served through the AFFF MDL Portal (www.afffmdlportal.com). Instructions for such submissions will be provided through the AFFF MDL Portal website.

6. Failure to comply with the requirements of this Order absent good cause may result in Court action, including dismissal consistent with the terms of this Order.

7. This Court maintains exclusive jurisdiction over all matters and decisions related

to the interpretation or enforcement of this Order, including any dispute over the interpretation of any part of this Order.

## I. **BACKGROUND AND STATUS OF PROCEEDINGS**

8. On December 7, 2018, the United States Judicial Panel on Multidistrict Litigation (the "JPML") established MDL No. 2873 to centralize cases against defendants, including 3M, concerning injuries or damages allegedly related to exposure to PFAS through alleged contamination of groundwater, drinking water supplies, or other resources by aqueous film-forming foam ("AFFF") products.[3] In addition, the JPML has transferred cases involving allegations of exposure from facilities manufacturing or using AFFF and cases involving firefighters or others claiming direct exposure to AFFF and to various PFAS in turnout gear or other personal protective equipment. In establishing this MDL, the JPML recognized that "this MDL undoubtedly will be a complex litigation from a judicial management perspective." December 7, 2018 Transfer Order 6, *In re: Aqueous Film-Forming Foams Products Liability Litigation* (MDL No. 2873), ECF No. 41.

9. District courts have inherent powers to manage their cases, especially with respect to "massive litigation" such as this. *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 107 (2017) ("[f]ederal courts possess certain inherent powers, not conferred by rule or statute, to manage their own affairs so as to achieve the orderly and expeditious disposition of cases") (internal quotations omitted); *In re Asbestos Prods. Liab. Litig.* (No. VI), 718 F.3d 236, 243 (3d Cir. 2013) (*quoting In re Fannie Mae Sec. Litig.*, 552 F.3d 814, 822-23 (D.C. Cir. 2009)) ("[d]istrict judges 'must have authority to manage their dockets, especially during [a] massive

[3] PFAS is a per- or poly-fluoroalkyl substance that contains at least one fully fluorinated methyl or methylene carbon atom (without any hydrogen, chlorine, bromine, or iodine atom attached to it).

litigation'").

10. The district court's power extends to, for example, "controlling and scheduling discovery, including orders affecting disclosures and discovery under Rule 26 and Rules 29 through 37," "adopting special procedures for managing potentially difficult or protracted actions that may involve complex issues, multiple parties, difficult legal questions, or unusual proof problems," and "facilitating in other ways the just, speedy, and inexpensive disposition of the action." Fed. R. Civ. P. 16(c)(2)(F), (L) & (P). New Rule 16.1 likewise confirms the broad powers of this Court to oversee this MDL. Fed. R. Civ. P. 16.1.

11. Multidistrict litigation, in particular, "'presents a special situation, in which the district judge must be given wide latitude with regard to case management in order to effectively achieve the goals set forth by the legislation that created the Judicial Panel on Multidistrict Litigation.' This wide latitude applies, in particular, to issuing discovery orders, and to dismissing actions for non-compliance with such orders." *In re Avandia Mktg., Sales Pracs. & Prods. Liab. Litig.*, 687 F. App'x 210, 214 (3d Cir. 2017) (citation omitted). *See also, e.g., In re Zostavax (Zoster Vaccine Live) Prod. Liab. Litig.*, No. 23-1032, 2024 WL 3423709, at *3 (3d Cir. July 16, 2024) (citation omitted) ("'[A]n MDL court needs to have broad discretion' to enter *Lone Pine* orders that drive disposition on the merits" and have an "express 'goal'" of "'winnow[ing] non-compliant cases from an MDL.'").

12. The wide latitude and broad discretion afforded to MDL courts enables them to enter rigorous case management orders after substantial discovery has taken place when a defendant has taken steps to settle a significant portion of the claims pending against it. *See Avila*, 633 F.3d at 833; *see also* Case Management Order No. 57 at 11, *In re: 3M Combat Arms Earplug Products Liab. Litig.* (MDL No. 2885), ECF No. 3811 (N.D. Fla. Aug. 29, 2023) (finding it

"reasonable and imperative to require Litigating Plaintiffs" to fulfill "stringent discovery obligations" given, inter alia, the "advanced stage" of the litigation). And entry of these management orders routinely applies to some, but not all, defendants in an MDL where only some defendants have settled their claims. *See, e.g., In re: Proton-Pump Inhibitor Products Liability Litigation* (No. II), MDL No. 2789, ECF No. 955 at 1 (D. N.J. Oct. 2, 2023) ; *In re Testosterone Replacement Therapy Prods. Liab. Litig.*, MDL No. 2545, 2018 WL 6258898 at *3 (N.D. Ill. June 11, 2018). Absent clear language to the contrary, the provisions of these Orders shall apply only to claims against 3M and not to claims against non-settling Defendants.

13. The Court is aware that, without admission of fault or liability, 3M has entered into a settlement agreement to resolve the cases brought by personal injury plaintiffs asserting Eligible Injuries. Consistent with its broad discretion and inherent authority to manage the "complex issues, multiple parties, difficult legal questions, [and] unusual proof problems" involved in a litigation of this magnitude, the Court finds it necessary and appropriate to enter this Order. *Adinolfe v. United Tech. Corp.*, 768 F.3d 1161, 1167 (11th Cir. 2014) (quoting Fed. R. Civ. P. 16(c)(2)(L)). The Court finds it particularly appropriate to enter this Order so the Court can efficiently manage an MDL that is proceeding on a settlement front as to 3M.

14. For the foregoing reasons, and other good cause appearing therefor, the Court orders as follows:

## II. CASE INITIATION AND COMPLAINT

15. Counsel for any Litigating Plaintiff shall ensure that the following have been fully and properly completed:

a. Complaint. Regardless of whether filed directly in this MDL in accordance with the procedures set forth in CMO 3 (ECF No. 72) or filed elsewhere and later

transferred into this MDL, a Litigating Plaintiff's complaint must contain factual allegations sufficient to plead any personal injury or property damage claim, any allegation that the Litigating Plaintiff has been exposed to PFAS, the date of diagnosis of any alleged injury, and any allegations as to the circumstances of Litigating Plaintiff's exposure to PFAS causing personal injury or property damage.

b. With respect to a Litigating Plaintiff's allegation that the Litigating Plaintiff has been exposed to PFAS, the Litigating Plaintiff must make factual allegations as to the circumstances of their exposure to PFAS, including (i) the dates and duration of exposure, (ii) the route of exposure (*e.g.*, through drinking water (if a public water system drinking water source, the PWSID for the system), private well, or through occupational exposure or dermal contact with PFAS), and (iii) for PFAS exposure in connection with employment, the name of their employer and nature and duration of that employment (*e.g.*, military or firefighting).

c. For complaints filed directly in this MDL or not served prior to transfer to this MDL, once the complaint of any Litigating Plaintiff is filed in or transferred to this court, ECF generates an individual case docket for each complaint, assigns it an individual case number, and associates the case with this MDL Proceeding's docket. After the complaint has been filed and the individual case and docket created, Counsel for the Litigating Plaintiff must download a copy of the file-stamped complaint from PACER, showing a PACER timestamp, and serve Counsel for 3M by email as set forth in Case Management Order No. 6, *et seq*.

16. To the extent a Litigating Plaintiff already has a complaint on file in this MDL and

this complaint does not fully or properly comply with the requirements outlined in Section II, the Litigating Plaintiff must direct-file an amended complaint in this MDL that does so comply, no later than thirty (30) days after the date the Litigating Plaintiff elects not to settle his or her claims. Any such Litigating Plaintiff is hereby granted leave pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure to file an amended complaint ***solely for this purpose***. For the avoidance of doubt, no new claims, causes of action, or damages may be added as part of this amendment.

17. To the extent that the Litigating Plaintiff was formerly included in a multi-plaintiff complaint, Litigating Plaintiff may move to sever or voluntarily dismiss and direct-file a new single-plaintiff action in the MDL, as appropriate. The newly filed complaint shall identify in its first paragraph the prior case number and state that it is being refiled pursuant to this Order. The new complaint shall be filed within thirty (30) days after the later of Litigating Plaintiff's election not to participate, or the date such action is filed in or transferred to this MDL, subject to extension by agreement or for good cause. If filed timely pursuant to this paragraph, the new action shall relate back to the original filing to the fullest extent permitted by applicable law, and no party waives any position concerning relation back and 3M waives no defenses to the claims.

18. If a Litigating Plaintiff does not comply with Section II, 3M may seek dismissal with prejudice on the basis of non-compliance with this Order.

## III. LITIGATING PLAINTIFFS' REQUIREMENTS TO PRODUCE CERTAIN SPECIFIED INFORMATION REGARDING THEIR CLAIMS

19. Counsel for all Litigating Plaintiffs shall serve the below-listed documents and information upon 3M no later than sixty (60) days after the date he or she elects not to settle his or her claims or, in the case of a new plaintiff as outlined in Section II above, no later than sixty (60) days after the date a Litigating Plaintiff files or refiles his or her case in, is removed to, or is transferred to this Court, unless otherwise stated (the "Production Period"). All Litigating

Plaintiffs' productions shall comply with the requirements of the Court's Order Establishing Protocol for Document Collection and Production, ECF No. 99, Attachment A (the "ESI Protocol").

20. The production requirements of Section III of this Order are not limited to documents and materials within the possession, custody, and control of the Litigating Plaintiff. The Litigating Plaintiff shall diligently and affirmatively take steps to collect and produce the required documents from all sources in the Litigating Plaintiff's possession, custody, or control, and where not directly in Litigating Plaintiff's possession, custody or control, through and from third parties reasonably believed to have relevant records. Such steps shall include, at a minimum, obtaining records through use of authorizations to custodians of records (such as health care providers) or, where an authorization is insufficient to ensure production of records on the timelines set forth herein, through the use of third-party subpoenas. Where a Litigating Plaintiff uses an authorization to collect records, s/he shall obtain and produce confirmations from records custodians of collection of such records or, where appropriate, "No records" statements from such providers.

21. To the extent that an authorization does not permit the Litigating Plaintiff to produce documents consistent with the timelines set forth herein or an authorization is not sufficient to obtain some or all of the records set forth, Litigating Plaintiffs must issue third-party subpoenas to the holders of the records and produce them on the timelines set forth herein. Subpoenas issued for purposes of producing records under this Section shall comply with the Federal Rules of Civil Procedure and all other applicable law and shall request the production of all records related to the Litigating Plaintiff within thirty (30) days of the date of the subpoena. Litigating Plaintiffs unrepresented by counsel shall move the Court to issue subpoenas. A copy of

each subpoena should be served on 3M via the AFFF MDL Portal.

22. The obligations of this Section are on the Litigating Plaintiff. A Litigating Plaintiff may not satisfy this requirement for records not yet obtained by providing executed, HIPAA-compliant authorizations to 3M.

23. **Litigating Plaintiffs' Production, Proof of Exposure, and Proof of Injury Requirements.**

a. Plaintiff Fact Sheet.[4] Litigating Plaintiff shall fully complete and execute any fact sheets required by CMOs 5, 5G, and/or 31, as well as a 3M Litigating Personal Injury Plaintiff Fact Sheet Supplement in the form attached hereto as Exhibit A, signed under penalty of perjury (the "PFS Supplement"). Responses to the PFS Supplement shall be supplemented based on new information as required by the applicable CMOs or Federal Rule 26. Responses and information contained in verified Fact Sheets shall be treated as judicial admissions binding on Plaintiff unless the Court, on motion, permits the admission to be withdrawn or amended.

b. Medical Records. Full and complete sets of all relevant medical records establishing the alleged injury and all documents relating to medical diagnoses, testing, and/or treatment for any conditions or diseases the Litigating Plaintiff claims to be caused by PFAS exposure, as well as any other medical records in Litigating Plaintiff or their counsel's possession.

c. Pharmacy Records. All pharmacy records and medical records relating to the

[4] In the event of conflict or ambiguity created between this Order and CMO No. 5, including with respect to the deadline of fact sheet submissions, this Order supersedes and controls.

dispensation of any prescription medication and/or samples to the Litigating Plaintiff, to the extent these prescriptions and/or samples were dispensed to treat the alleged PFAS exposure-related condition or disease and for a period of ten (10) years prior to the diagnosis of the alleged PFAS exposure-related condition or disease; and all documents relating to medical diagnoses, testing, and/or treatment for any PFAS exposure-related conditions or diseases, as well as any other pharmacy and medical records in Litigating Plaintiff or their counsel's possession.

d. Personnel and/or Employment Records. If the Litigating Plaintiff has served in the military or as a civilian firefighter (whether employed or volunteer) or asserts exposure to PFAS through his or her employment, all documentation establishing that the Litigating Plaintiff used, handled, was involved in the storage and/or disposal of, and/or was otherwise in proximity to PFAS, including but not limited to:

   i. All military personnel records, including but not limited to the Litigating Plaintiff's DD214, Enlisted Record Brief or Officer Record Brief, enlistment records (including enlistment physical), and any records related to any change in service as a result of any injury or disability or, if not available to the Litigating Plaintiff currently, evidence that the records have been sought from the U.S. government and a representation that they shall be produced when received.

   ii. All employment records for all employment involving the use, storage, disposal, handling, and/or proximity to PFAS, including but not limited

to an IRS Form W-2, tax returns, pay stubs, and official verification from the employer of the Litigating Plaintiff's employment, job title and responsibilities, and dates of employment. This includes all records related to all trainings involving the use, storage, disposal, and/or handling of AFFF and/or any other PFAS or PFAS-containing product.

iii. All records of firefighter turnout gear used, stored, disposed, handled, and/or which Litigating Plaintiff was in proximity to during their employment, including records evidencing product identification.

iv. If the Litigating Plaintiff asserts claims for personal injury through exposure to turn-out gear, records from all entities that purchased and/or issued such turn-out gear to the Litigating Plaintiff that is alleged to be a cause of the injury.

v. All relevant photographs and audio or audiovisual recordings including those relating to products to which the Litigating Plaintiff claims exposure as well as photographs and audio or visual recordings from the Litigating Plaintiff's relevant time in employment showing the locations where they were allegedly exposed to PFAS, including but not limited to photographs and recordings of the Litigating Plaintiff that have been posted on any social media account (*e.g.*, Facebook, Instagram, YouTube, X (formerly known as Twitter), etc.) which the Litigating Plaintiff has access to or controls.

vi. A signed declaration by the Litigating Plaintiff setting forth the first date, the last date, and the intervening date ranges when the Litigating

Plaintiff believes he/she used, handled, was involved in the storage and/or disposal of, and/or was otherwise in proximity to PFAS.

vii. Further, if the Litigating Plaintiff asserts (1) exposure to PFAS through his or her military service and/or employment, and (2) that this exposure occurred through exposure to AFFF, and (3) that all such exposure occurred entirely after 2002, all documentation in Litigating Plaintiff's possession establishing that 3M's brand(s) of AFFF were used during his or her military service and/or employment.

e. Water Records. The following documentation establishing that the Litigating Plaintiff has consumed water contaminated with PFAS prior to any diagnosis:

i. Documentation showing the Litigating Plaintiff's presence, prior to diagnosis, at a home, facility, or other site serviced by a contaminated water source, including but not limited to a water utility record, utility bill, or property deed.

ii. For any Litigating Plaintiff claiming exposure through a private well, testing records demonstrating the presence of PFAS in the alleged private well.

f. Marriage, Death, and Probate Records. If the Litigating Plaintiff asserts a wrongful death or loss of consortium claim, all relevant marriage and death records or certificates, as well as documents sufficient to show the Litigating Plaintiff's authority to proceed on behalf of a decedent or estate.

g. Property Records. If the Litigating Plaintiff asserts claims for property damage, all records relating to property ownership and any alleged property damage,

including but not limited to appraisals, real estate listings, mortgages, refinancing documents, property tax statements and any property tax appeals, inspection reports, repair orders, any remodeling projects, and relevant contracts and invoices. Such records include records held by 1) contractors that performed testing, estimating the cost of repairs, remediation or damage, repairs, remediation, remodeling, clean-up or other services in connection with the alleged property damage; 2) insurers of the property concerning claims made to such insurer and records relating to the actual value or an appraisal of the property; and 3) realtors, banks, or other entities holding mortgages or liens on the property alleged to have been damaged, including records related to the actual value or an appraisal of the property.

h. Other Records Relating to PFAS Exposure. All other documents relating to or evidencing possible exposure to PFAS. Such documents may include PFAS testing results from any public or private entity, photographs and audio or audiovisual recordings of the Litigating Plaintiff relating to the use of any product containing PFAS and/or the consumption of any contaminated water.

i. Other Records Relating to Injury. All other documents relating to or evidencing any alleged PFAS exposure-related conditions or diseases. Such documents may include photographs and audio or audiovisual recordings of the Litigating Plaintiff relating to or discussing the cause, extent, impact, diagnosis, testing, and/or treatment of any alleged PFAS exposure-related conditions or diseases including but not limited to photographs and recordings of the Litigating Plaintiff that have been posted on any social media account (*e.g.*, Facebook,

Instagram, YouTube, X (formerly known as Twitter), etc.).

j. Non-Privileged Communications Relating to Litigation. Non-privileged communications in the Litigating Plaintiff's possession, custody, or control that concern the Plaintiff's alleged PFAS exposure, injury, damages, or factual evidence supporting the Plaintiff's own claims.

k. Identification of Choice of Law. If not otherwise provided and alleged in the Litigating Plaintiff's Complaint, Counsel for the Litigating Plaintiff must affirmatively identify the choice of law and home district the Litigating Plaintiff asserts should apply to his or her claim(s) and provide an explanation for the choice based on the Litigating Plaintiff's alleged exposure to PFAS. This choice of law statement shall be filed in the individual Litigating Plaintiff's case. Counsel for the Litigating Plaintiff must download a copy of the file-stamped choice of law statement from PACER, showing a PACER timestamp, and serve that statement on 3M.

l. Declaration. A declaration signed by Counsel for the Litigating Plaintiff attesting that to Counsel's knowledge and belief after diligent inquiry:

   i. The Litigating Plaintiff has provided a fully completed and executed Fact Sheet and all applicable Fact Sheets under this Order, CMO 5 *et seq.*, CMO 31, and/or CMO 35 (and all other fact sheets required for the claims asserted by the Litigating Plaintiff).

   ii. The Litigating Plaintiff's production complies with all the requirements of this Order and all applicable CMOs of this Court.

   iii. Counsel or its designee has met with the Litigating Plaintiff in person,

by videoconference, and/or by telephone to assess the claims alleged and has provided the Litigating Plaintiff a copy of this Order.

24. Litigating Plaintiffs shall produce to 3M all records received in response to a subpoena consistent with the requirements of Case Management Order No. 9 (ECF No. 524). Within this same time period, Litigating Plaintiffs shall produce to 3M any "No Records Statement" received from a third-party in response to a subpoena, authorization or a request for documents described in Section II. The Litigating Plaintiff and his or her Counsel shall also produce to 3M any proof of return to sender from the United States Postal Service received in connection with a subpoena or a request for documents described in Section II.

25. Counsel for Litigating Plaintiffs who fail to fully comply with the requirements outlined in Section III shall be given notice by email and shall be provided thirty (30) additional days to cure such deficiency (the "Cure Period"). After the Cure Period, upon a motion by 3M, the Court, absent good cause, will dismiss that Litigating Plaintiff's claims with prejudice.

26. A Litigating Plaintiff may not seek to introduce into the record for purposes of any motion or at trial any document or information required to be obtained and produced pursuant to this Order and which were not obtained and produced pursuant to this Order. Nothing in this Order shall preclude Defendants from seeking additional discovery.

## IV. LITIGATING PLAINTIFFS' EXPERT REPORTS.

27. No later than one hundred twenty (120) days after the date he or she elects not to settle his or her claims or, in the case of a new plaintiff, no later than one hundred twenty (120) days after the date a Litigating Plaintiff files or refiles his or her case in, is removed to, or is transferred to this Court, all Litigating Plaintiffs shall serve upon 3M their expert reports in compliance with Federal Rule of Civil Procedure 26. Such reports must "support plaintiff's

allegation of general causation and specific causation for the specific disease(s) or condition(s) he or she alleges," *see* Case Management Order No. 35 (Dkt. No. 7823) at 9, and in the case of alleged property damage, must support plaintiff's allegation of causation and damages for the specific damage or diminution in value to property he or she alleges. Such reports shall detail any examination of the plaintiff conducted by the expert as well as any non-protected communications with the plaintiff regarding the claims. For property damage claims, the report shall identify and fully describe any inspection of or testing of the property conducted by the expert. Such reports shall include a complete set of records relied upon in forming the expert's opinion.

28. In addition, Litigating Plaintiffs shall provide an expert report on fate and transport of PFAS demonstrating the probable source(s) of PFAS into their drinking water supply or into their property (if they allege drinking water exposure or property damage), including the source or sources of PFAS and the transport of PFAS from the alleged sources into their drinking water supply or their property.

29. Expert reports must also include a representation that the expert has entered into a retention agreement specific to the Litigating Plaintiff's case and is willing and able to testify on the Litigating Plaintiff's behalf at deposition and trial.

30. Form or template expert reports are not permitted and will be stricken by the Court. Each Litigating Plaintiff's expert report(s) should be specific to his or her allegations and circumstances; expert reports cannot be copied and pasted from one Litigating Plaintiff to another. Experts shall disclose the use of generative AI tools in preparation of any such reports.

31. Failure to provide notice of a deficiency is not a waiver of any defects or arguments opposing the expert reports that 3M may have, and 3M may raise such defects and arguments at any time should the case continue to be litigated.

32. Litigating Plaintiffs who fail to timely produce the required information and fail to fully comply with the requirements outlined in Section IV shall be given notice by email and shall be provided thirty (30) additional days to cure such deficiency (the "Cure Period"). After the Cure Period, upon a motion by 3M, the Court, absent good cause, will dismiss that Litigating Plaintiff's claims with prejudice.

## V. STATUTE OF LIMITATIONS AND OTHER TIME-BASED DEFENSES

33. Each Litigating Plaintiff shall execute and submit via the AFFF MDL Portal within the Production Period the declaration attached hereto at Exhibit B (the "SOL Declaration"), sworn to under penalty of perjury, providing the following information:

a. The personal injury/ies the Litigating Plaintiff has been diagnosed with and that the Litigating Plaintiff asserts were caused by PFAS.

b. The date(s) such injury/ies was or were diagnosed.

c. The date the Litigating Plaintiff first learned his or her alleged injury, damage, and/or property damage may be related to PFAS.

d. How the Litigating Plaintiff first learned his or her alleged injury, damage, and/or property damage may be related to PFAS.

e. The date the Litigating Plaintiff first spoke to or corresponded with an attorney about potential litigation related to PFAS exposure.

f. The date the Litigating Plaintiff first retained counsel to investigate a claim related to PFAS exposure.

g. The date the Litigating Plaintiff first spoke to or corresponded with their current counsel about potential litigation related to PFAS exposure.

h. The date the Litigating Plaintiff first retained their current counsel to investigate a

claim related to PFAS exposure.

i. The date the Litigating Plaintiff first used, handled, and/or was involved in the storage and/or disposal of, and/or was otherwise in proximity to AFFF. If not applicable, the Litigating Plaintiff shall indicate N/A.

j. The date the Litigating Plaintiff first saw any documents, advertisements, or packaging relating to PFAS, including a description of the documents, advertisements, or packaging.

34. The obligations set forth in Paragraph 33 and contained in Exhibit B are personal to the individual Litigating Plaintiff and encompass any and all counsel who have represented the Plaintiff and require the Litigating Plaintiff to fully disclose and, where necessary, investigate the topics required to be addressed by the SOL Declaration.

## VI. FURTHER PROCEEDINGS AND STATUS REPORT

35. To assess how best to manage and resolve any claims by Litigating Plaintiffs and to give adequate time for the process set forth in this Order to take effect, the Court will direct further reporting as follows. Within 45 days after the exhaustion or waiver of Termination Rights under the 3M PI MSA, the Court directs 3M to confer with Plaintiffs' Co-Lead Counsel to submit a report to the Court in camera concerning the status of claims being pursued by Litigating Plaintiffs, if any. Based on the submission and in consultation with the PEC and 3M, the Court may order further reporting from 3M and/or Plaintiffs' Co-Lead Counsel regarding the management of such cases. The Court will not set further schedules in any Litigating Plaintiff's case that would take priority over or conflict with schedules set to manage the implementation of the 3M PI Settlement and any such schedules will require coordination across any schedules set for existing cases and bellwethers, if any, in this MDL.

36. All discovery by the Litigating Plaintiff not otherwise required by this Order and all further proceedings in the claims of a Litigating Plaintiff is stayed as to 3M until after the requirements outlined in this Section have been fully complied with and until the Court has entered an order regarding further proceedings.

## VII. STAY OF PERSONAL INJURY PROCEEDINGS AGAINST 3M COMPANY.

37. The Court believes that the focus of the Plaintiffs' and 3M's efforts should be on the implementation of the Settlement, which will take significant time and effort. Accordingly, the Court issues the following stay of all proceedings as to 3M with respect to claims brought by plaintiffs that have filed a personal injury claim against 3M in this MDL.

38. Except for the requirements and procedures described in the Identification Order and this Order, all proceedings in this MDL in cases asserting a personal injury claim against 3M are hereby stayed as to 3M. This stay applies to all such cases currently pending in this MDL as well as any such cases filed in or transferred to this MDL following the entry of this Order. For the avoidance of doubt, the stay imposed by this order does not apply to any claims asserted against any other defendants. This stay as to 3M shall remain in effect until it is lifted by order of this Court. Either upon motion by relevant plaintiff(s) or *sua sponte*, and if appropriate, the Court will sever stayed claims against 3M to permit claims against other defendants to move forward.

## VIII. CERTIFICATION FOR CASES FILED AFTER THE ID ORDER RESPONSE DATE

39. For all cases filed or refiled in, removed to, or transferred to this Court after the ID Order Response Date set forth in the Identification Order, and which were not included on an ID Order Response, Counsel for the Litigating Plaintiffs shall, within the Production Period, serve upon Counsel for 3M through the AFFF MDL Portal a certification that:

a. Attests that the Litigating Plaintiffs had not retained said Counsel as of or before

the date of the Identification Order.

b. Identifies the date on which said Counsel was first retained by the Litigating Plaintiffs.

c. Certifies that said Counsel did not intentionally delay being retained by the Litigating Plaintiffs for any reason, including but not limited to attempting to avoid the deadlines for the 3M Settlement Program.

40. To be clear, plaintiffs identified pursuant to the Court's Identification Order do not need to comply with the requirements in Section VIII.

## IX. SCHEDULING OF FUTURE MATTERS

41. The Settlement reached by the NPC and 3M in this matter will require significant long-term implementation efforts by counsel, plaintiffs, 3M, and the Court. It is the intent of the Court to support those settlement implementation efforts and, consistent with this Order and the stay implemented herein, to defer consideration of further proceedings as to 3M while those long-term efforts to implement the 3M PI MSA are ongoing and while aspects of the Settlement are ongoing.

42. Specifically, this Court recognizes the substantial work the Parties have exerted to resolve both the PWS claims on a class wide basis and the resolution of the Eligible Injuries for the PFAS personal injury claims represented in the Settlement entered into yesterday. In setting future bellwether tracks over the next several years, the MDL Court will take into account the work done by 3M to resolve both PWS and personal injury claims and the need to address and resolve claims as to various other parties in this MDL.

43. This Case Management Order will remain in effect for at least 9 years and will continue thereafter unless and until altered by this Court to ensure efficient management of any

Litigating Plaintiffs.

**IT IS SO ORDERED.**

s/Richard M. Gergel
Hon. Richard M. Gergel
United States District Judge

Dated: November 4, 2026
Charleston, South Carolina